IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010- |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**PLAINTIFFS' STATUS REPORT AND PROPOSAL FOR PROTECTIVE ORDER**

The Parties met and conferred regarding the appropriate scope of the protective order that should govern this action but were unable to reach complete agreement. The Parties agreed as to a number of factors, but there were two main elements in dispute. The primary issue involves in-house counsel access to sensitive materials. The United States and Plaintiff States (collectively, "Plaintiffs") propose allowing third parties to designate their most sensitive confidential information as "highly confidential," which would prevent access to those materials by Google's in-house counsel absent consent or a court order. Google proposes a protective order that would provide designated Google in-house counsel with unfettered access to third parties' most competitively sensitive information. To protect competition, the Court should adopt Plaintiffs' proposal. A second issue involves whether Google is entitled to advanced notice if its materials are used in other matters; because such use is fully consistent with the law, the Court should not require the notice sought by Google.

This case challenges the conduct of a monopolist—and one of the world's largest companies—based on extensive and significant anticompetitive conduct. Adopting Google's proposal would undermine third parties' confidence in the treatment of their confidential

information, chill third-party cooperation in current and future Government investigations, and unfairly advantage Google in the marketplace if third-party confidential information is disclosed or used.

Plaintiffs' proposed Protective Order is structured to protect the interests of these third parties but also would not hamper Google's ability to defend itself. The proposed limitations on disclosure allow in-house counsel access to confidential but less competitively-sensitive materials. It would also give unfettered access to Google's outside counsel, who have nearly a decade of experience defending the company against similar actions around the world.

As such, Plaintiffs respectfully request that the Court enter the proposed Protective Order attached as Exhibit A. [1]

## I.     BACKGROUND

During the course of Plaintiffs' investigations, third parties produced highly sensitive business information, including (a) strategic analyses, (b) plans for negotiating complex business relationships, including with Google, and (c) highly sensitive commercial agreements. Many of these third parties are Google's customers, competitors, or distribution partners, and as the complaint alleges, a number have been the targets of Google's anticompetitive conduct.

Many third parties routinely negotiate with Google; the internal preparation for these negotiations—some of which are ongoing—is reflected in documents produced to Plaintiffs. Not surprisingly, these communications contain extremely sensitive competitive information. Many third parties, compelled to produce documents during Plaintiffs' investigations, expressed concern about the potential for disclosure to Google, a company that by any measure wields enormous power in the marketplace. These third parties provided information to Plaintiffs on the

---

[1] For ease of review, attached as Exhibit B is a comparison of the Parties' proposals.

understanding their documents and data would be protected from unnecessary disclosure.

Moreover, many documents produced by third parties relate to products and conduct that

ultimately have not been put at issue in this litigation.

## II.   ARGUMENT

### A.   Litigation Instigated by the Government Frequently Proceeds with Protective Orders That Limit In-House Access to Highly Confidential Information

The Court should adopt Plaintiffs' Protective Order because it better protects third parties

from the possibility that their sensitive information will be used by Google for a competitive

advantage or to punish them. Disclosure to inside counsel is not a legal or practical imperative,

and litigation brought by the Government frequently proceeds with protective orders that limit

in-house counsel's access to third-party confidential information.[2] In many of these cases, the

court entered protective orders providing a two-tiered approach to confidentiality (like the one in

Exhibit A) that provides a mechanism by which third parties can preclude particularly sensitive

information from in-house counsel review.[3] Indeed, courts in this district have allowed an even

---

[2] *See, e.g.,* Stipulation and Protective Order at 9, *United States v. Microsoft Corp.*, No. 98-cv-1232, Dkt. No. 928 (D.D.C. May 27, 1998) (access to highly confidential material restricted to outside counsel); *United States v. Anthem, Inc.*, No. 16-cv-1493, 2016 WL 11164026, *4 (D.D.C. Sept. 15, 2016) ("does not permit disclosure to Defendants' in-house counsels").

[3] *See, e.g.,* Stipulated Protective Order Concerning Confidentiality at 9, *United States v. US Airways Group, Inc.*, No. 13-cv-01236, Dkt. No. 55 (D.D.C. Aug. 30, 2013); Stipulated Protective Order at 11-12, *United States v. Sabre Corp.*, No. 19-cv-01548, Dkt. No. 24 (D. Del. Sept. 10, 2019); Stipulated Protective Order at 12-13, *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133, Dkt. No. 35 (N.D. Cal. Mar. 4, 2013); *see also* Stipulation and Protective Order at 12, *United States v. American Express Company, et al.*, No. 10-cv-4496, Dkt. No. 102 (E.D.N.Y. April 7, 2011) (excluding in-house counsel from being able to access materials designated as Highly Confidential); Stipulated Protective Order at 10, *Fed. Trade Comm'n v. Vyera Pharmaceuticals, et al.*, No. 20-cv-00706, Dkt. No. 92 (S.D.N.Y. April 20, 2020) (same); Amended Protective Order Regarding Confidentiality at 15-16, *United States v. Carolinas Healthcare System*, No. 16-cv-311, Dkt. No. 57 (W.D.N.C. Oct. 16, 2017) (same); Stipulated Protective Order at 11, *United States v. Twin America, LLC, et al.*, No. 12-cv-8989, Dkt. No. 29 (S.D.N.Y. March 14, 2013) (same).

stricter approach to confidentiality. For example, in *FTC v. Whole Foods Mkt., Inc.*, the court limited in-house counsel to draft and final versions of court filings, transcripts, and expert reports—including portions of such filings that quoted or paraphrased "Confidential [] Material"; but in-house counsel could not see underlying discovery material, including any exhibits, designated as "Confidential." No. 07-1021, 2007 U.S. Dist. LEXIS 53567 *4-5 (July 6, 2007) (emphasis added); *see also United States v. AB Electrolux*, 1:15-cv-01039, Dkt. 140 (Oct. 05, 2016 D.D.C).

In issuing a protective order in this case, the Court should adopt an approach consistent with that of other courts in this district in cases with similar potential risks to third parties. Indeed, in cases where courts have allowed even limited disclosure to in-house counsel, courts first required that the party seeking such disclosure make certain showings. Google's proposed protective order does not require such showings, and for that reason it should be rejected.

**B.    Defendant Has Not Demonstrated a Need for In-House Counsel to Have Unrestricted Access to Third-Party Confidential Information**

In determining whether to allow disclosure of third-party confidential information, courts must balance the need for in-house counsel to have such access against the risk of inadvertent disclosure. *United States v. Aetna Inc.*, No. 16-cv-1494, 2016 U.S. Dist. LEXIS 191730, *17 (D.D.C. Sept. 5, 2016) (denying request to modify protective order to provide in-house counsel access) (denying defendant's motion to modify the protective order to allow for in-house counsel disclosure).[4] In *Aetna*, the court considered, among other things, (a) the sensitive nature of the

---

[4] The *Aetna* court later provided that defendants could make a motion to a special master requesting in-house disclosure by identifying the specific third-party whose information was needed, noticing said third party, and demonstrating that specified in-house counsel would not be involved in defendants' competitive decision making.  *See* Second Am. Protective Order at 11, *United States v. Aetna Inc.,* No. 16-cv-1494, Dkt. No. 132 (D.D.C. Sept. 30, 2016).

confidential information to be disclosed, (b) the appropriateness of the designated in-house counsel gaining access, (c) the litigation needs of the party requesting in-house counsel disclosure, and (d) the deterrent effect on third-party cooperation in future Government investigations. *See id.* *17-33.

Given the highly factual nature of this analysis, "courts not surprisingly have arrived at different results." *Silversun Indus. v. PPG Indus.*, 296 F. Supp. 3d 936, 939 (N.D. Ill. 2017). Here, given the highly-sensitive nature of the third-party confidential information and potential adverse effects on future Government investigations, the risk of inadvertent disclosure greatly outweighs Google's desire for in-house counsel's blanket access to third-party information.

      1.     *The confidential nature and broad scope of the information produced in this case necessitates strong protections*

Given the nature of Plaintiffs' investigations, much of the information produced by third-parties contains highly sensitive competitive information. *See, e.g.*, Complaint at ¶¶ 34, 47, 61, 94, 102, 108, 140. For example, Google's competitors produced assessments of the resources needed to develop and maintain a search engine, and strategic plans related to rival voice assistants, and other commercially sensitive information and strategy related to competing products to Google. That these third parties were "not targets of government action," yet compelled "to give up exceedingly confidential information in response to a government [investigative request]," strongly weighs against in-house counsel disclosure. *See Aetna*, 2016 U.S. Dist. LEXIS 191730 at *20 (quoting *Fed. Trade Comm'n v. Advocate*, 162 F. Supp. 3d 666, 671-72 (N.D. Ill. 2016)). Google's proposal would allow in-house counsel to have access to *all* of the third parties' commercially sensitive information.[5] There is simply no basis for allowing

---

[5] Google's proposed protective order only limits in-house counsel by requiring the use of a secure electronic data room or document review platform.

this unfettered access.

Google mistakenly relies on the protective order issued in *Fed. Trade Comm'n v. Sysco Corp.*, 83 F. Supp. 3d 271, 275 (D.D.C. 2015). But this is not a merger case. Instead, it involves challenging a monopolist based on allegations of anticompetitive conduct aimed at some of the third parties that produced information to Plaintiffs.

The information at issue here is far more competitively sensitive than in *Sysco*. *Sysco* involved a merger of two wholesale food distributors whose businesses deployed trucks and provisioned warehouses; in contrast, this case addresses anticompetitive conduct involving a range of agreements between Google and third parties. *See id.* Many of these agreements involve complex ongoing interactions between Google and third parties—including interactions that involve contract interpretation and disputes which often involve in-house lawyers. Disclosure of this information is potentially much more damaging to the third parties, who must negotiate and deal with, or compete against, Google. Sharing of confidential future-looking strategy documents with in-house counsel is also a particular concern here as part of Google's monopoly strategy is to squash potential competition in its incipiency, including in next generation technology.

Given the nature of the third-party confidential information produced in this case, the heightened risk of injury to these third parties, and Google's dominant position in the marketplace, Defendant must show sufficient need for in-house counsel to access this highly confidential information. As described below, Google cannot make this showing.

        2.    *There must be a process to determine whether designated in-house counsel can have access to confidential information*

The Court should not permit in-house counsel access to highly sensitive materials, without a showing of need and an evaluation of in-house counsels' proximity to competitive decision-making. As courts recognize, "analysis of the risk of inadvertent disclosure involves a

careful and sensitive assessment of the entire setting in which in-house counsel functions[.]" *Advocate*, 162 F. Supp. 3d at 669 (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).[6]

Google's proposed protective order provides no mechanism by which a "careful and sensitive assessment" can take place. Instead, Google simply asserts that its in-house counsel will certify that they are not involved in competitive decision making. That is not enough. *See id.* ("[M]erely insisting that one is not 'involved in competitive decision-making' cannot pretermit inquiry into the underling facts or serve as a shibboleth the mere invocation of which permits access to Highly Confidential information."). The better approach is reflected in Plaintiffs' proposed Protective Order. This approach allows the Court to assess whether permitting Google's designated in-house counsel to view highly confidential and confidential information would present an unacceptable, unnecessary risk of inadvertent disclosure in a manner which is consistent with the caselaw of this district. *See, e.g.*, *Aetna*, 2016 U.S. Dist. LEXIS 191730.

Plaintiffs' concerns do not assume bad intent or mischief on the part of designated in-house counsel. "The issue is that of inadvertent disclosure, and whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis[.]" *U.S. Steel*, 730 F.2d at 1468. Because Google's proposed protective order ignores the "complex inquiry" courts recognize as necessary in determining access by designated in-house counsel, *Advocate*, 162 F. Supp. 3d at 669, the Court should reject Google's proposal.

---

[6] In other cases, Google argued that disclosure of its materials to certain in-house counsel must be strictly limited because of their proximity to competitive decision-making. *See* Joint Ltr. Regarding Oracle's Req. for In-House Counsel Access to AEO Information T 9, Oracle Am., Inc. v. Google, Inc., Case No. 3:10-cv-03561 (N.D. Cal. May 18, 2011).

       3.      *Granting Google's in-house counsel wholesale access to confidential information is not necessary or appropriate*

There is no reason Google's in-house counsel needs access to *all* third-party confidential information for Google to litigate this case. And, of course, Google cannot demonstrate such a need at this point "in the abstract, without reference to any particular information or document, particularly when the information that is being withheld concerns companies that the in-house counsel do not represent." *Aetna*, 2016 U.S. Dist. LEXIS 191730, at *28 (rejecting defendants' vague assertions of need, where defendants had retained highly qualified and sophisticated outside counsel with experience in similar cases.); *see also Advocate*, 162 F. Supp. 3d at 672 ("[G]iven the extraordinarily sophisticated, experienced and talented counsel in this case, the critical question is: why is it 'essential,' as the defendants put it, that in-house counsel, as opposed to outside counsel, review [third party confidential information]?").

     Here, Google has retained highly qualified outside counsel. Indeed, Google's lead counsel have represented Google in high-profile antitrust lawsuits and investigations for years. [7] There is no question these outside counsel, along with their colleagues, have the resources and experience necessary to sift through and analyze the most sensitive third-party documents. "Requiring a party to rely on its competent outside counsel does not create any 'undue or unnecessary burden.'" *Intel Corp. v. VIA Technologies, Inc.* 198 F.R.D. 525, 528 (N.D. Cal. 2000).[8] Moreover, "preventing in-house counsel from viewing [highly] confidential information

---

[7] *See, e.g.*, Jan Wolfe, *Meet the lawyers behind the U.S. versus Google antitrust showdown*, REUTERS, Oct. 20, 2020, https://www.reuters.com/article/us-tech-antitrust-google-lawyers/meet-the-lawyers-behind-the-u-s-versus-google-antitrust-showdown-idUSKBN2752M0.

[8] *See also Akzo N.V. v. U.S. Intern. Trade Comm'n*, 808 F. 2d 1471, 1482-83 (Fed. Cir. 1986) (rejecting as "groundless" Akzo's arguments that denying in-house counsel access to confidential information "deprived it of its rights to confrontation, to rebuttal, and to effective assistance of counsel").

does not prevent them from assisting Defendant['s] retained counsel. To the contrary, in-house counsel may certainly assist outside counsel—they must just rely upon redacted versions of submissions, expert reports and exhibits." *Aetna*, 2016 U.S. Dist. LEXIS 191730, at *29 (citing *Sysco*, 83 F. Supp. 3d at 3). "To the extent that outside counsel require in-house counsel assistance with respect to particular documents, nothing prevents outside counsel from requesting that in-house counsel have access to that particular information based upon more specific and compelling grounds than are present at this juncture." *Id.*

> 4. *Defendant's proposed protective order deters third-party cooperation and undermines future Government investigations*

Disclosing to Google the most sensitive materials of third parties would chill cooperation with future antitrust investigations and harm future enforcement efforts to the detriment of American consumers. *See Akzo*, 808 F. 2d at 1483 ("Disclosure of sensitive materials to an adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the [Government's] fact-finding processes.").

Third parties may reasonably fear economic harm if Google learns their competitive secrets. Google exercises enormous market power, and protecting sensitive, competitive third-party information from disclosure within Google is crucial to the Government's ability to investigate anticompetitive conduct. Google's alleged exclusionary conduct includes (a) limiting manufacturers from distributing devices that do not comply with Google's technical standards, (b) precluding partners from preloading rival search engines and from setting competing voice assistants as the default, and (c) positioning itself to control the new search access points on emerging technologies. *See* Complaint at ¶¶ 54, 78, 81, 140, 160. Exposing sensitive third-party information to Google's employees undermines third parties' incentives and willingness to engage with the Government to keep markets competitive.

### C.      The Significant Risks this Action Entails Supports Additional Safeguards.

The Plaintiffs' proposal contains measures meant to ensure that in-house counsel does not use confidential, third-party information during or after this litigation to give Google an unfair advantage. Of note, the proposal defines "competitive decision-making" so that Google cannot take advantage of the vagueness of that. Furthermore, the proposed protective order imposes a personal penalty on in-house counsel if he or she violates the protective order. This adds teeth to the penalty provision as Plaintiffs are doubtful that a general penalty (that applies to Google) will have any deterrent effect on a company that has been subject to million- and billion-dollar penalties for violating consent decrees, antitrust laws, and privacy regulations.

Conversely, the Court should reject the penalty provision in Google's draft, which would apply the penalty provision to federal and state agencies, and their attorneys. In *Sysco* and *Whole Foods*—where the penalty provision originated—the concern being addressed by the court was with improper use by in-house counsel. Federal and state agencies are simply not in a position to use confidential information for competitive purposes. Applying the penalty to Google, and not to Plaintiffs, merely recognizes that reality.

Lastly, the Court should reject Google's proposal that Plaintiffs must disclose use of Google's materials for other legitimate enforcement purposes. There is no basis for such a provision other than to advantage Google in separate, unrelated matters. Requiring notice to Google under a protective order in this matter would contradict the Plaintiffs' authority, reveal sensitive unrelated investigative activity, and undermine legitimate law enforcement.

### CONCLUSION

For the foregoing reasons, the Plaintiffs ask the Court to reject Google's proposed protective order, and enter the Protective Order Plaintiffs have attached as Exhibit A.

Dated: November 13, 2020                    Respectfully submitted,

                                            By:_____*/s/ Kenneth M. Dintzer*_____

                                            Kenneth M. Dintzer
                                            U.S. Department of Justice, Antitrust Division
                                            Technology & Financial Services Section
                                            450 Fifth Street NW, Suite 7100
                                            Washington, DC 20530
                                            Kenneth.Dintzer2@usdoj.gov

                                            *Counsel for Plaintiff United States*

                                            By:_____*/s/ Leslie Rutledge*_____
                                            Leslie Rutledge, Attorney General
                                            Johnathan R. Carter, Assistant Attorney General
                                            Office of the Attorney General, State of Arkansas
                                            323 Center Street, Suite 200
                                            Little Rock, Arkansas 72201
                                            Johnathan.Carter@arkansasag.gov

                                            *Counsel for Plaintiff State of Arkansas*

                                            By:_____*/s/ Ashley Moody*_____
                                            Ashley Moody, Attorney General
                                            R. Scott Palmer, Interim Co-Director, Antitrust
                                            Division
                                            Nicholas D. Niemiec, Assistant Attorney General
                                            Lee Istrail, Assistant Attorney General
                                            Office of the Attorney General, State of Florida
                                            PL-01 The Capitol
                                            Tallahassee, Florida 32399
                                            Scott.Palmer@myfloridalegal.com

                                            *Counsel for Plaintiff State of Florida*

By: ___ */s/ Christopher Carr* _____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: ___ */s/ Scott L. Barnhart* _____
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Curtis Hill, Attorney General
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: ___ */s/ Justin D. Clark* _____
Justin D. Clark, Deputy Director of Consumer
Protection
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Assistant Attorney General
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Justind.Clark@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By:＿＿＿*/s/ Jeff Landry*＿＿＿＿＿＿＿＿
Jeff Landry, Attorney General
Stacie L. Deblieux, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
Deblieuxs@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:＿＿＿*/s/ Kimberley G. Biagioli*＿＿＿＿＿
Kimberley G. Biagioli
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Kimberley.Biagioli@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:＿＿＿*/s/ Lynn Fitch*＿＿＿＿＿＿＿＿＿
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:＿＿＿*/s/ Timothy C. Fox*＿＿＿＿＿＿＿
Timothy C. Fox, Attorney General
Mark Mattioli, Chief, Office of Consumer
Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By: _____ /s/ Rebecca M. Hartner_____
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*


By: _____ /s/ Bret Fulkerson_____
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*