**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA, *et al.*,

                *Plaintiffs*,

     v.

GOOGLE LLC,

                *Defendant*.

Civil Action No. 1:20-cv-03010

HON. AMIT P. MEHTA

## NON-PARTIES' POSITION STATEMENT ON THE PROTECTIVE ORDER

Non-Parties were required to produce in Plaintiffs' investigation extremely sensitive business documents concerning how they compete against and negotiate with Google. Disclosing these particularly sensitive documents to any Google employee risks serious harm to the Non-Parties and to the strong public interest in competition. Thus, Non-Parties respectfully request the Court adopt a two-tiered protective order as Plaintiffs propose. Google disagrees, relying principally on the protective order entered in *FTC v. Sysco Corporation*. But this monopolization case—and the confidential materials involved—are fundamentally different from those at issue in *Sysco*, and the unique risks of inadvertent disclosure and improper use of the Non-Parties' highly confidential materials substantially outweighs any need identified by Google.

### A. Non-Parties Have Produced Extremely Sensitive Materials that Warrant Heightened Protections

The Non-Parties have produced thousands of sensitive documents concerning their business relationships and efforts to compete with Google. While some of these documents can safely be made available to selected Google in-house counsel (and would be, under Plaintiffs' proposed two-tiered order), disclosure of the Non-Parties' most sensitive documents would

afford Google an unfair advantage in competition, commercial negotiations, and, in some cases, ongoing litigation against Non-Parties.[1]

The highly sensitive documents produced by the Non-Parties in the Plaintiffs' investigation include:

- Forward-looking business plans regarding new product development, business strategy, and plans to respond to Google's marketplace conduct;

- Documents outlining negotiation strategies regarding business relationships with Google, including in negotiations that are ongoing;

- Documents analyzing the ways in which certain Non-Parties are dependent on Google, and the potential adverse impact of Google's actions on those Non-Parties; and

- Internal documents in which the Non-Parties evaluate the strengths and vulnerabilities of their competitive offerings, and in particular how those offerings might be vulnerable to actions by Google.[2]

Disclosure of Highly Confidential materials to in-house counsel without adequate protections could present unique risks because "their continuing employment often intimately involves them in the management and operation of the corporation of which they are a part." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).  With access to Highly Confidential information, certain in-house counsel could be placed "in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal [a competitor's] trade secrets."  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992).

---

[1]  As Plaintiffs' counsel noted at the November 18 hearing, Non-Parties also produced confidential information related to alleged anticompetitive conduct not encompassed in this Complaint.  Although the definition of "Investigative Materials" in the Parties' proposed protective orders does not distinguish between these separate investigations (*see* ¶ A(i-j)), confidential materials not related to the allegations in the complaint should not be produced in this litigation at all, much less to Google's in-house counsel.  Non-Parties reserve all objections to forthcoming discovery requests and ask to be heard if Google seeks discovery of these unrelated and highly sensitive materials.

[2]  Non-Parties can produce examples of such documents for *in camera* review if the Court wishes.

Here, disclosure of Non-Parties' Highly Confidential documents to Google employees would provide Google with a playbook on issues such as attacking its would-be competitors and other market participants, gaining leverage in negotiations with the Non-Parties, and countering the Non-Parties' future business plans.  *See United States v. Aetna, Inc.* No. 16-cv-01494, 2016 WL 8738420, *5-6 (D.D.C. Sept. 5, 2016) (providing Aetna's in-house counsel with access to "confidential information of other insurers undoubtedly risks giving Defendants an unfair advantage in competition" and confidential information from healthcare providers "could provide the Defendants with a significant advantage in future negotiations with these providers").  In a case brought to protect competition and consumers from Google's alleged anticompetitive behavior, it would be a perverse result if disclosure of strategic documents in this litigation enabled Google to maintain or even expand its advantage over competitors and commercial counterparties.

Google contends that the safeguards adopted in *FTC v. Sysco* are sufficient to protect the Non-Parties' interests, but this case is fundamentally different.  Whereas *Sysco* involved a merger challenge, Plaintiffs here allege that Google "willfully maintained and abused its monopoly power" through "anticompetitive and exclusionary distribution agreements" that foreclose competition.  Compl. ¶ 175.  Much of the anticompetitive conduct alleged in the Complaint is directed at some of the same Non-Parties whose documents are at issue.  And courts regularly impose stricter limitations on in-house counsel access where a defendant is alleged to have engaged in anticompetitive conduct.  *See, e.g.*, *United States v. Apple, Inc.*, No. 11-md-02293, Dkt. No. 149 (S.D.N.Y. May 9, 2012); *United States v. American Express Co.*, No. 10-cv-004496, Dkt. No. 102 (E.D.N.Y. Apr. 7, 2011); *United States v. Hillsdale Community Health Center*, No. 15-cv-12311, Dkt. No. 49 (E.D. Mich. Dec. 15, 2015).

Moreover, the Highly Confidential materials at issue here are more sensitive than those in *Sysco*, and thus, the risk of harm to competition is greater. While *Sysco* involved the merger of two food distribution companies whose main assets were trucks and warehouses, Non-Parties here are developing high-technology products and services in rapidly evolving markets. Confidential plans concerning this future innovation require a higher degree of vigilance than documents concerning the mature food distribution business. Notably, in *New York v. Deutsche Telekom AG* ("*T-Mobile*"), itself a merger matter but which concerned the evolving mobile telecommunications industry, the court adopted a two-tiered protective order that shielded the most sensitive materials of third parties (including Google) from defendants' in-house counsel. Order ¶ A.1, No. 1:19-cv-05434, Dkt. No. 185 (S.D.N.Y. Aug. 14, 2019). Here, Non-Parties' highly confidential information pertains to advanced technology in online search, artificial intelligence, mobile devices, deep machine learning, and internet-of-things devices (*see e.g.*, Compl. ¶¶ 2, 12), information that warrants at least as much protection as the telecommunications information at issue in *T-Mobile*.

### B. Plaintiffs' Two-Tiered Proposal Will Not Impair Google's Defense

Google does not even attempt to show that Plaintiffs' proposed protective order will prejudice its ability to litigate this case, nor could it credibly do so. Google's outside counsel are highly competent and experienced with antitrust litigation generally and Google's business specifically, having represented Google in antitrust matters for many years. Moreover, under Plaintiffs' two-tiered structure, Google's in-house designee would have access to Confidential material produced in the litigation. Google does not offer even a boilerplate explanation for "why it would be essential for [its in-house counsel] to pore over the [Non-Parties'] Highly Confidential Information." *FTC v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 671 (N.D. Ill. 2016).

4

Instead, Google states only that "it was concluded [in *Sysco*] that it was appropriate to grant in-house attorneys access to confidential material." Google's Submission at 3. That is correct as a description of *Sysco*, but says nothing about Google's real needs here. As explained above, this case is fundamentally different from *Sysco*, and two-tiered protective orders like the one proposed by Plaintiffs are common in cases alleging anticompetitive conduct.

Furthermore, to the extent that the Court may be concerned that certain Highly Confidential documents may need to be disclosed to an in-house designee, the Court could revise Plaintiffs' proposal to grant such access on a document-by-document basis upon a showing of particularized need that outweighs the confidentiality interest of the producing party. *See, e.g.*, *T-Mobile* Order ¶ E.2 (allowing access on a document-by-document basis upon showing by defendant that there was good cause for the disclosure that would not be outweighed by the possible prejudice to the third party). But it should be Google's burden (as the defendant accused of anticompetitive conduct) to demonstrate that particularized need, and not the Non-Parties', who are only here because they have produced documents under compulsory process, to defend their Highly Confidential materials.

Google argues that a two-tiered structure will hamper discovery because Google presumes third parties will over-designate materials as Highly Confidential. But that is baseless speculation, and it provides no reason to adopt Google's proposed order. As an initial matter, especially for Non-Parties that compete directly with Google, many documents produced could well require the highest level of protection because they present the greatest risk of competitive harm. But there is no basis to presume that Non-Parties will abuse this system. Moreover, Plaintiffs' proposed order provides a mechanism to address any over-designation. Google's experienced outside counsel is fully capable of challenging designations, and because those

outside counsel will have access to all discovery materials during any dispute, there is no risk of delay.  Similar challenge procedures are commonplace in two-tiered protective orders, and Google does not explain why they would be insufficient here.

The Non-Parties do request one modification to Plaintiffs' proposed designation process to ease the burden on Non-Parties who have already spent considerable resources responding to compulsory process in this investigation.  Non-Parties should be permitted to effect that designation via written notice applying the designation to existing control number range(s) rather than re-stamping every page, or portions of every page, with a new designation.

### C.  Google Must Identify Its In-House Designees Now So That the Court Can Evaluate the Risks of Disclosure With Input from Non-Parties

The Court can only properly evaluate the risk of disclosure to in-house counsel by considering, on a counsel-by-counsel basis, whether the individuals are involved in any aspect of competitive decision-making.  *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).  As this Court recognized in *Sysco*, the question is not one of in-house counsel's "integrity, ethics or willingness to comply with the Protective Order," but rather "whether a designated in-house lawyer is 'positioned to advise the client as to business decisions that the client would make regarding [competitive decision-making].'"  83 F. Supp. 3d 1, 3 (D.D.C. 2015) (quoting *FTC. v. Whole Foods Market, Inc.*, No. 07-1021, 2007 WL 2059741, at *2 (D.D.C. July 6, 2007)).

Yet Google's proposed order keeps secret the identity of its in-house designees.  And even Plaintiffs' proposal only contemplates notice of Google's designees to Plaintiffs.  Plaintiffs' Proposed Protective Order ¶¶ 17-18.  But the Non-Parties—whose most sensitive documents are at issue—must have an opportunity to review and (if necessary) object to Google's in-house designations.  Indeed, Non-Parties may be in the best position to explain how granting access to

certain Google employees risks misuse of Confidential Information in other contexts.  Google must identify its in-house designees now, prior to any disclosure, so that the Court can conduct (as it did in *Sysco*) a "careful and sensitive assessment of the entire setting in which in-house counsel functions."  *Advocate*, 162 F. Supp. 3d at 669.

"Competitive decision-making" is not a "self-defining test" but a "serviceable *shorthand* for a counsel's activities, association, and relationship with a client."  *Id.* (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).  Plaintiffs' proposed definition appropriately accounts for the myriad ways that in-house counsel could use confidential information to disadvantage Non-Parties or harm competition and consumers.  By contrast, Google would require only that in-house counsel attest that they are not involved in "formulating or implementing strategies to compete with [Google's] competitors" or "pricing strategies."  Google's Proposed Protective Order App'x B.  Google's cramped formulation risks harm to non-price competition and disadvantaging companies that contract with, but do not directly compete with, Google.

Moreover, involvement in competitive decision-making is only "*one* basis for limiting access."  *Advocate*, 162 F. Supp. 3d at 669.  As one example, several Non-Parties are embroiled in separate litigation with Google.  If Google's same in-house counsel responsible for that ongoing litigation were granted access to its adversary's confidential information through this litigation, that asymmetric access would cause those Non-Parties additional undue prejudice.

* * *

For the reasons set forth above, the Court should adopt a two-tiered protective order.  The Court should require Google to identify its in-house designees (with notice to Non-Parties) so that the Court can evaluate their roles within Google and with respect to this litigation.

Dated:   November 20, 2020                Respectfully submitted,

*/s/ Kristen C. Limarzi*
Kristen C. Limarzi (D.C. Bar No. 485011)
Matthew Guice Aiken (D.C. Bar No. 1616755)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. NW
Washington, D.C. 20036
Phone: (202) 887-3518
Fax: (202) 530-4225
klimarzi@gibsondunn.com
maiken@gibsondunn.com

*Counsel for non-party AT&T, Inc.*

/s/ Richard G. Parker
Richard G. Parker (D.C. Bar No. 327544)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Phone: (202) 955-8500
Fax:  (202) 467-0539
rparker@gibsondunn.com

*Counsel for non-Party Amazon.com, Inc.*

/s/ Arthur J. Burke
Arthur J. Burke
Christopher Lynch
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Phone: (212) 450-4000
christopher.lynch@davispolk.com

*Counsel for non-party Comcast Corporation*

/s/ Megan Gray
Megan Gray (D.C. Bar No. 478479)
General Counsel and Vice-President of Public
Policy
DUCK DUCK GO, INC.
20 Paoli Pike
Paoli, Pennsylvania 19301
megan@duckduckgo.com

*Counsel for non-party Duck Duck Go, Inc.*

/s/ Amy W. Ray
Amy W. Ray (D.C. Bar No. 489086)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Phone: (202) 339-8400
Fax: (202) 339-8500
amyray@orrick.com

*Counsel for non-party
Microsoft Corporation*

/s/ Stephen M. Nickelsburg
Stephen M. Nickelsburg
CLIFFORD CHANCE US LLP
2001 K Street NW
Washington, DC 20006
Phone: (202) 912-5108
Fax: (202) 912-6000
steve.nickelsburg@cliffordchance.com

John D. Friel (admitted *pro hac vice*)
CLIFFORD CHANCE US LLP
31 West 52 Street
New York, NY 10019
Phone: (212) 878-8000
Fax: (212) 878-8375
john.friel@cliffordchance.com

*Counsel for non-party Oracle Corporation*

/s/ John A. Jurata, Jr.
John A. Jurata, Jr. (D.C. Bar No. 478602)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Phone: (202) 339-8400
Fax: (202) 339-8500
jjurata@orrick.com

*Counsel for non-party Sonos Inc.*

*/s/ Michael E. Kipling*
Michael E. Kipling (Washington State Bar
   No. 7677, admitted *pro hac vice*)
Marjorie A. Walter (Washington State Bar
   No. 40078, admitted *pro hac vice*)
WALTERKIPLING PLLC
5608 17th Ave NW #735
Seattle, WA 98107
Phone: (206) 545-0346
Fax: (206) 545-0347
mike@walterkipling.com
marjorie@walterkipling.com

Helgi Walker
Russel Balikian
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Phone: (202) 955-8500
Fax:  (202) 467-0539
hwalker@gibsondunn.com
rbalikian@gibsondunn.com

*Counsel for non-party T-Mobile US, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 20, 2020, the foregoing document was electronically submitted with the clerk of the court for the United States District Court, District of Columbia, using the electronic case file system of the court.  The electronic case file system sent a "Notice of Electronic Filing" to all counsel of record.


*/s/ Matthew Guice Aiken*
Matthew Guice Aiken