**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*, <br><br>       Plaintiffs, <br><br> v. <br><br> Google LLC, <br><br>       Defendant. | Case No. 1:20-cv-03010-APM <br><br> HON. AMIT P. MEHTA |

**NON-PARTY DUCK DUCK GO, INC.'S POSITION STATEMENT**
**REGARDING PROPOSED PROTECTIVE ORDER**

Non-party Duck Duck Go, Inc. ("DuckDuckGo")—one of Google's only direct competitors in the general search engine market—respectfully urges the Court to enter Plaintiffs' proposed protective order and reject Defendant Google LLC's ("Google") proposal.

DuckDuckGo is a privacy technology company headquartered in Pennsylvania. Its business centers on protecting the privacy of its users as they use the Internet. It offers a number of privacy products, including a general search engine that does not collect, share, or sell users' personal data. DuckDuckGo also distributes browser extensions and mobile browsers that block the most prevalent third-party trackers (including Google's) by default and provides automatic https upgrades whenever possible, all to help users easily safeguard their online privacy.

DuckDuckGo joins in and fully supports the Position Statement submitted jointly today by the coalition of non-parties (the "Joint Statement"). Unlike the Joint Statement's other signatories, the vast majority of DuckDuckGo Search users were previously Google Search users and the vast majority of DuckDuckGo's revenue comes from private advertising displayed to those users. Thus, the potential competitive harm resulting from the disclosure to Google employees of DuckDuckGo's most sensitive documents, including its confidential business strategies, poses a particular threat to DuckDuckGo.

**Error! Unknown document property name.**

1

In addition to the points raised in the Joint Statement, DuckDuckGo invites the Court's attention to the need for Plaintiffs' comprehensive definition of "Competitive Decision-Making" from which Google's designated in-house counsel should be barred.  *See* Dkt. 34-1 § A.1(c). While Google, in decrying Plaintiffs' proposal as unnecessarily "broad," mischaracterizes the definition by referring to only "antitrust" and "litigation" work (Dkt. 33, at 4-5), Plaintiffs' proposed definition is much broader—and appropriately so.  That definition encompasses decision-making relating to "*contracts, marketing,….product or service development or design, product or service offerings,* [and] *research and development*."  Dkt. 34-2 § A.1(c) (emphasis added).

Distribution contracts, marketing, and product design/development are precisely the areas in which Google has concentrated its anticompetitive tactics to build and maintain its monopoly. For example, as set forth in the Complaint, Google uses a complex web of interlocking anti-forking, pre-installation, and revenue sharing or mobile incentive agreements to block competitors from accessing vital pathways to user adoption, hampering DuckDuckGo's growth. Dkt. 1 ¶¶ 123-165.  Permitting Google in-house counsel with responsibilities in these areas to access DuckDuckGo's business plans and other highly sensitive documents would enable Google, through the exclusionary tactics at issue in this case, to develop and market its search products in a manner that would exacerbate the competitive harm described in the Complaint.

Google's proposed protective order, by contrast, contains no definition of "competitive decision-making," but merely requires in-house counsel to certify their exclusion from decisions regarding competitive strategies or "pricing strategies," "competition-related issues that are the subjects of confidential information in this case," and "advice to management" regarding such topics.  Dkt. 33-1, App. B ¶ 1.  This proposed certification ignores the reality that many of

Google's anticompetitive practices are not developed through "advice to management," but rather, through distribution contracts, as well as product design, development, and marketing. Google's in-house counsel would be quite capable of using DuckDuckGo's confidential information in an anticompetitive manner without advising "management" at all —the Google employees need only advise Google's design teams, product engineers, and business development teams.[1]

For the reasons set forth above, DuckDuckGo respectfully urges the Court to enter Plaintiffs' proposed protective order.

Dated:  November 20, 2020                    Respectfully submitted,


By:  __
     _____

     Megan Gray (D.C. Bar No. 478479)
     **DUCK DUCK GO, INC.**
     20 Paoli Pike
     Paoli, Pennsylvania 19301
     Tel: (267) 690-7758
     Fax: (202) 280-1225
     Email: megan@duckduckgo.com

     *Counsel for Non-Party Duck Duck Go, Inc.*

---

[1] Google's proposed assurance that in-house counsel will not be involved in "pricing strategies," (Dkt. 33-1, App. B ¶ 1), is particularly ineffectual, given that Google's search engine does not charge any cash price to users.

**Error! Unknown document property name.**