**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**DEFENDANT'S REPLY SUBMISSION**
**REGARDING PROPOSED PROTECTIVE ORDER**

The Court's protective order in *Federal Trade Comm'n v. Sysco Corporation* struck an appropriate balance between protecting a third party's confidential competitive information and giving the defendant itself—not merely its outside counsel—limited access to the evidence that may be offered against it.  The Court struck that balance by limiting access to two in-house counsel who (i) are not positioned to, do not, and will not provide advice concerning business decisions involving competitors, and (ii) are subject to severe sanctions if they disclose confidential information in violation of the protective order.  The *Sysco* protective order should be the template for a protective order in this case.  The two in-house lawyers designated by Google satisfy the strictures of the order entered in *Sysco* (*see* Part A), which is not distinguishable in any material respect from this litigation (*see* Part B).

**ARGUMENT**

**A.     The Designated In-House Lawyers Are Not "Within the Orbit of" Google's Competitive Decision-Making Activities.**

Should the Court enter Google's proposed protective order, the company would designate Shaudy Danaye-Elmi and Lara Kollios as the in-house lawyers who would be entitled to review Confidential Information.  As they explain in their Declarations (attached as Exhibits 1 & 2), neither is "within the orbit" of Google's competitive decision-making—i.e., neither has participated in, or given advice regarding, Google's business decisions regarding product design, marketing, or competition more generally.

Google employs various in-house lawyers who have specialized knowledge regarding one or more of the company's products, who are essentially embedded in product groups providing "front-line" legal advice to those groups, or who regularly advise the business on competition-related matters.  Those lawyers could be deemed involved in competitive decision-making, but neither Ms. Danaye-Elmi nor Ms. Kollios have been part of those groups of lawyers or functioned in those roles.  Instead, as they explain, their roles are confined to government investigations and litigation arising from such investigations. Ex. 1 ¶¶ 5-6; Ex. 2 ¶¶ 5-6.

Ms. Danaye-Elmi joined the Google legal department in 2012 and since 2018 has served as Senior Counsel in the Regulatory Litigation and Investigations group.  Ex. 1 ¶ 3.  In that role, she supervises outside counsel and participates in all aspects of litigation and government investigations.  *Id.* ¶ 5.  She does not participate in formulating or implementing competitive strategies.  *Id.* ¶ 6.  That is, she (i) is not involved in pricing, marketing, distribution, product or service design or development,[1] (ii) is not positioned to advise management regarding the

---

[1]     Thus, DuckDuckGo's concern—disclosure to in-house counsel who advise Google's "design team, product engineers, and business development teams" on issues regarding "distribution

negotiation of commercial agreements with third parties,[2] and (iii) does not give advice on these topics.  *Id.*  Rather, the focus of Ms. Danaye-Elmi's role is on regulatory investigations and potential enforcement actions that follow.  *Id.* ¶ 5.  The same is true for Ms. Kollios, who joined Google as a lawyer in the Regulatory Litigation and Investigations group in April 2019.  Ex. 2 ¶¶ 3, 5-6.  Both lawyers agree not to make use of Confidential Information for any purpose other than the defense of this action, and both, having read Google's proposed Protective Order, agree to be bound by its terms, including sanctions.  Ex. 1 ¶¶ 10-12; Ex. 2 ¶¶ 10-12.

Both lawyers easily meet the *Whole Foods* standard.  *See F.T.C. v. Whole Foods Mkt.*, *Inc.*, No. 07-1021-PLF, 2007 WL 2059741, at *2-3 (D.D.C. July 6, 2007).  Both occupy positions like the in-house lawyers approved by the Court in *Sysco*.  And both are unlike the lawyer disapproved by the Court in *Sysco*, who by reason of his position as Sysco's Chief Legal Officer and Executive Vice President was "too close" to and "within the orbit of" the company's competitive decision-making activities.  *Sysco*, 83 F. Supp. 3d at 3.[3]  Ms. Danaye-Elmi and Ms.

---

contracts" and "product design, development, and marketing," Dkt. 52 at 3—does not apply to Ms. Danaye-Elmi and Ms. Kollios.

[2]  Google therefore has addressed Apple's concern that disclosure not be made to in-house counsel involved in business negotiations.  Dkt. 47 at 2.

[3]  The cases cited by Plaintiffs and third parties that denied access to in-house counsel involved lawyers in senior positions who advised the business—i.e., lawyers who sat on executive/leadership committees or were otherwise actively involved in competitive decision-making activities.  *See Silversun Indus. v. PPG Indus.*, 296 F. Supp. 3d 936, 938 (N.D. Ill. 2017) (disqualified counsel was the "corporate Secretary," who "attends meetings of the Board of Directors in an 'advisory capacity'" and had "responsibilities for the *majority* of [Defendant]'s business units"); *Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 671 (N.D. Ill. 2016) (disqualified counsel were involved in strategic and business decisions); *Oracle Am., Inc. v. Google, Inc.*, No. 3:10-CV-03561, Dkt. No. 145 (N.D. Cal. May 18, 2011) (disqualified counsel was "General Counsel, Senior Vice President, and Secretary"); *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 529-30 (N.D. Cal. 2000) (disqualified counsel was "involved in negotiating the terms of licensing agreements").  The one exception, *United States v. Aetna Inc.*, No. 16-CV-1494, 2016 WL

Kollios are not "in close proximity" to Google competitive business decision-making, *id*. at 4,

which protects the confidentiality interests of competitors.  But they are experienced in

supervising Google's litigation, which facilitates outside counsel's ability to discuss strategic

decisions, including the strengths and weaknesses of the case, informed by the evidence.  Ex. 1

¶¶ 2, 8-9; Ex. 2 ¶¶ 2, 8-9.

> **B.      This Case Is Not "Fundamentally Different" From *Sysco*.**

The third parties argue that "[t]his case is not a case like *Sysco*," Dkt. 47 at 2—indeed,

that it is "fundamentally different[,]" Dkt. 50 at 3.  That argument is misguided, because the

balance struck by the Court in *Sysco* did not turn on the nature of the case.  Nor did the Court's

reasoning turn on the nature of the confidential information or its commercial sensitivity.

Rather, the Court accepted the representations that third parties had produced confidential

business information to the Government that was worthy of protection, and focused on the need

to strike the proper balance regarding the defendant's "ability to prepare and present its defense

and the interest of the third parties in avoiding the inadvertent use or disclosure of their

confidential information."  *Sysco*, 83 F. Supp. 3d at 4.  The Court stated in *Sysco* that "[i]t would

be unfair … for the government to attempt to prevent a private business transaction based, even

in part, on evidence that is withheld from the actual Defendants (as distinct from their outside

counsel)."  *Id*. at 5.  All the more so here, it would be unfair for the government to seek to enjoin

a broad range of pro-competitive business agreements, and potentially more, based on evidence

available only to outside counsel.

---

8738420, at *6 (D.D.C. Sept. 5, 2016), should be distinguished for several reasons.  *See infra* at 6-7.

It would be unworkable, and is unnecessary, to depart from *Sysco* and create two-tiers of confidentiality protection.  It would be unworkable because the distinction between the two tiers is vague,[4] the designation of documents as "Highly Confidential" is likely to be arbitrary and time consuming, and to create the distinction invites disputes over the designations that will be a distraction and waste of the Court's time.

It is unnecessary because the *Sysco* template affords adequate protections.  In those cases where courts have created two tiers, either (1) the parties consented;[5] (2) the proposed protective order did not include the *Sysco* order's enhanced protections against inadvertent disclosure;[6] or

---

[4]   Plaintiffs' proposed protective order defines "Confidential Information" as "any trade secret or other confidential research, development, or commercial information, … or any document, transcript, or other material containing such information that has not been published or otherwise made publicly available" and "Highly Confidential Information" as "any Confidential Information that the parties or any third parties reasonably believe to be so competitively or commercially sensitive that it is entitled to extraordinary protections that a lesser designation cannot provide."  The latter definition is entirely subjective and allows third parties to so designate any documents they choose.

[5]   *See, e.g.*, *FTC v. Vyera Pharms.*, No. 20-CV-00706, Dkt. No. 92 (S.D.N.Y. Apr. 20, 2020) (*stipulated order*; no penalty provision; no disclaimer of involvement in competitive decision-making); *United States v. Bazaarvoice, Inc.*, No. 13-CV-00133, Dkt. No. 35 (N.D. Cal. Mar. 4, 2013) (*stipulated order*; no penalty provision; disclaimer of involvement in competitive decision-making only for length of litigation); *United States v. Am. Express Co.*, No. 10-CV-4486, Dkt. No. 102 (E.D.N.Y. Apr. 7, 2011) (*stipulated order*; no penalty provision; no disclaimer of involvement in competitive decision-making); *United States v. Sabre Corp.*, No. 19-CV-1548, Dkt. No. 24 (D. Del. Sept. 10, 2019) (*stipulated order*; no penalty provision, disclaimer of involvement in competitive decision-making only for six months); *United States v. US airways Group, Inc.*, No. 13-CV-01136, Dkt. No. 55 (D.D.C. Aug. 30, 2013) (*stipulated order*; no penalty provision; no disclaimer of involvement in competitive decision-making); *United States v. Twin America, LLC, et al.*, No. 12-CV-8989, Dkt. No. 29 (S.D.N.Y. Mar. 14, 2013) (*stipulated order*; no penalty provision; no disclaimer of involvement in competitive decision-making).

[6]   *See New York v. Deutsche Telekom AG*, No. 1:19-CV-05434, Dkt. No. 185 (S.D.N.Y. Aug. 14, 2019) (no penalty provision; disclaimer of involvement in competitive decision-making only for nine months); *United States v. Carolinas Healthcare System*, No. 16-CV-311, Dkt. No. 57 (W.D.N.C. Oct. 16, 2017) (unopposed amended order; no penalty provision; limitation to two in-house not involved in contracting and negotiations).

(3) there were particular objections to the designated in-house counsel.[7]  Similarly, where courts have created only one tier, but limited in-house counsel's access, either (1) the parties consented or (2) there were particular objections to the designated in-house counsel.[8]  Third parties are mistaken that courts "regularly impose stricter limitations on in-house counsel access where a defendant is alleged to have engaged in anticompetitive conduct."  Dkt. 50 at 3.  Two of the three cases cited for this proposition involved stipulated orders.[9]  And, in the third case, the court said nothing that indicated its ruling turned on the specific allegations in the case.[10]

Among these cases, *United States v. Aetna Inc.*, No. 16-CV-1494, 2016 WL 8738420, at *7-8, is out of step in disqualifying two in-house lawyers because of their participation in "litigation matters."  To deny disclosure both to in-house counsel involved in business decision-making and counsel involved in litigation effectively and improperly denies disclosure to in-house counsel altogether.  In any event, the facts in *Aetna* are very different from those in *Sysco*

---

[7]   *See Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 671 (designated in-house counsel involved in strategic and business decisions); *Silversun Indus. v. PPG Indus.*, 296 F. Supp. 3d 936, 938 (N.D. Ill. 2017) (designated counsel was the "corporate Secretary," who "attends meetings of the Board of Directors" and had "responsibility for [Defendant]'s Architectural Coatings Business unit"); *Oracle Am., Inc. v. Google, Inc.*, No. 3:10-CV-03561, Dkt. No. 163 (June 6, 2011) (designated counsel was the "General Counsel" who "participates in competitive decision-making"); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (designated "Senior Counsel" was "actively involved in negotiating the terms of licensing agreements as part of settling lawsuits.").

[8]   *See Whole Foods Mkt., Inc.*, 2007 WL 2059741, at *1 (stipulated order; defendant requested access for its general counsel); *United States v. Aetna Inc.*, No. 16-CV-1494, 2016 WL 8738420, at *6 (D.D.C. Sept. 5, 2016) (in-house counsel were not "sufficiently removed from the competitive decision-making process"); *United States v. AB Electrolux*, 1:15-CV-01039, Dkt. 140 (D.D.C. Oct. 05, 2016) (parties "agreed to" the conditions).

[9]   Additionally, neither in *United States v. Apple, Inc.*, No. 11-MD-02293, Dkt. No. 149 (S.D.N.Y. May 9, 2012), nor *United States v. American Express Co.*, No. 10-CV-004496, Dkt. No. 102 (E.D.N.Y. Apr. 7, 2011), did the protective orders include penalty provisions.

[10]   *United States v. Hillsdale Community Health Center*, No. 15-CV-12311, Dkt. No. 50 (E.D. Mich. Dec. 21, 2015).

and proposed by Defendant here.  First, the *Aetna* protective order did not include a penalty provision that "might provide some level of deterrence against improper disclosure," and the "Defendants expressed an unwillingness to accept such a provision."  *Id.* at *10.  Second, the *Aetna* protective order did not require in-house counsel to disclaim involvement in competitive decision-making during, and for two years after, the litigation.  Third, designated in-house-counsel in *Aetna* had advised management regarding mergers and acquisitions, raising competitive concerns.  *Id.* at *7.

> **C.     Sanctions for Violations of the Protective Order Should Apply to All.**

Google has produced a large volume of confidential information as part of the pre-complaint investigation relating to this action.  Accordingly, unauthorized disclosure of confidential information—no matter who discloses it in violation of the protective order—has the potential of doing them competitive harm.  Plaintiffs should be held accountable if they are the ones who violate the order by publicly or otherwise disclosing information to unauthorized person(s).  There is no basis for granting Plaintiffs immunity from misconduct.  As in *Sysco*, sanctions should apply to all.

> **D.     Confidential Information Should Not Be Used in Other Proceedings Without Advance Notice to the Producing Party.**

Apple and GroupM Worldwide agree with Google that confidential information should not be disclosed in other proceedings without advance notice.  Plaintiffs claim vaguely that notice serves only "to advantage Google in separate, unrelated matters" and to "undermine legitimate law enforcement."  Dkt. 34 at 10.  But Plaintiffs do not explain how that is so, particularly when Plaintiffs' proposed order does not prevent or otherwise delay disclosure for law enforcement purposes.

## CONCLUSION

For the foregoing reasons, Google requests that the Court adopt its proposed terms and enter the order attached as Exhibit A to Google's Submission Regarding Proposed Protective Order, Dkt. 33-1.


Dated: November 25, 2020                Respectfully submitted,

                                        WILLIAMS & CONNOLLY LLP

                                        By:   /s/ *John E. Schmidtlein*
                                        John E. Schmidtlein
                                        Benjamin M. Greenblum
                                        725 12th Street, NW
                                        Washington, DC 20005
                                        Tel: 202-434-5000
                                        jschmidtlein@wc.com
                                        bgreenblum@wc.com

                                        WILSON SONSINI GOODRICH & ROSATI P.C.
                                        Franklin M. Rubinstein
                                        1700 K St, NW
                                        Washington, DC 20006
                                        Tel: 202-973-8833
                                        frubinstein@wsgr.com

                                        ROPES & GRAY LLP
                                        Mark S. Popofsky
                                        2099 Pennsylvania Avenue, NW
                                        Washington, DC 20006
                                        Tel: 202-508-4624
                                        Mark.Popofsky@ropesgray.com

                                        *Counsel for Defendant Google LLC*