IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA, ET AL.,    )
                                      )
          Plaintiffs,                 )
                                      )      CV No. 20-3010
        vs.                           )      Washington, D.C.
                                      )      December 2, 2020
GOOGLE LLC,                           )      11:00 a.m.
                                      )
          Defendant.                  )
_____)


TRANSCRIPT OF
STATUS CONFERENCE VIA TELECONFERENCE PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:          Kenneth M. Dintzer
                             Adam Severt
                             Daniel Principato
                             U.S. DEPARTMENT OF JUSTICE
                             1100 L Street, NW
                             Washington, D.C.
                             (202) 307-0340
                             Email:
                             kenneth.dintzer2@usdoj.gov

                             Thomas Greene
                             Diana Aguilar
                             U.S. DEPARTMENT OF JUSTICE
                             450 Golden Gate Ave
                             Suite 10-0101
                             San Francisco, CA 94102
                             (415) 583-9211

APPEARANCES CONTINUED:

For Plaintiff
State of Arkansas:                  Johnathan R. Carter
                                    Assistant Attorney General
                                    OFFICE OF THE
                                    ATTORNEY GENERAL
                                    323 Center Street
                                    Suite 200
                                    Little Rock, AR 72201
                                    (501) 682-8063
                                    Email:  Johnathan.carter
                                    @arkansasag.gov


For Plaintiff
State of Florida:                   R. S. Palmer
                                    FL ATTORNEY GENERAL
                                    Pl-01 The Capitol
                                    Tallahassee, FL 32399-1050
                                    (850) 414-3847
                                    Email:
                                    scott.palmer
                                    @myfloridalegal.com


For Plaintiff
Commonweath of Kentucky:            Justin Clark
                                    OFFICE OF THE
                                    ATTORNEY GENERAL
                                    COMMONWEALTH OF KENTUCKY
                                    1024 Capital Center Drive
                                    Suite 200
                                    Frankfort, KY 40601
                                    (502) 696-5300
                                    Email: justin.clark@ky.gov

```
APPEARANCES CONTINUED:

For Plaintiff
State of Indiana:              Matthew Michaloski
                              Deputy Attorney General
                              OFFICE OF THE
                              ATTORNEY GENERAL
                              State of Indiana
                              Indiana Government
                              Center South
                              Fifth Floor
                              302 West Washington Street
                              Indianapolis, IN 46204
                              (317) 232-6309

For Plaintiff
State of Mississippi:          Elisabeth Hart Pepper Martin
                              OFFICE OF THE
                              ATTORNEY GENERAL/MS
                              Consumer Protection
                              550 High Street
                              Jackson, MS 39201
                              (601) 359-4223
                              Email: hart.martin@ago.ms.gov

For Plaintiff
State of Missouri:             Kimberley G. Biagioli
                              OFFICE OF THE ATTORNEY
                              GENERAL/MO
                              Consumer Protection Division
                              615 E 13th Street
                              Suite 401
                              Kansas City, MO 64106
                              816-889-3090
                              Email:
                              kimberley.biagioli@ago.mo.gov
```

APPEARANCES CONTINUED:

For Plaintiff
State of Montana:                   Mark Mattioli
                                    Chief
                                    Office of
                                    Consumer Protection
                                    OFFICE OF THE
                                    ATTORNEY GENERAL
                                    State of Montana
                                    P.O. Box 200151
                                    555 Fuller Avenue
                                    2nd Floor
                                    Helena, MT 59620-0151
                                    (406) 444-2026
                                    Email: mmattioli@mt.gov

For Plaintiff
State of South Carolina:            Rebecca M. Hartner
                                    Assistant Attorney General
                                    OFFICE OF THE
                                    ATTORNEY GENERAL
                                    State of South Carolina
                                    1000 Assembly Street
                                    Rembert C. Dennis Building
                                    P.O. Box 11549
                                    Columbia, SC 29211-1549
                                    (803) 734-3970
                                    rhartner@scag.gov

For Plaintiff
State of Texas:                     Bret Fulkerson
                                    OFFICE OF THE
                                    ATTORNEY GENERAL
                                    State of Texas
                                    300 West 15th
                                    Austin, Texas 78701
                                    (512) 936-1674
                                    Bret.Fulkerson@oag.texas.gov

APPEARANCES CONTINUED:

For the Defendant:            John E. Schmidtlein
                              Benjamin M. Greenblum
                              WILLIAMS & CONNOLLY LLP
                              725 12th Street, NW
                              Washington, D.C. 20005
                              (202) 434-5000
                              Email: jschmidtlein@wc.com
                              Email: bgreenblum@wc.com

                              Franklin M. Rubinstein
                              Susan Creighton
                              WILSON SONSINI
                              1700 K Street, NW
                              5th Floor
                              Washington, D.C. 20012
                              (202) 973-8800
                              Email:  frubinstein@wsgr.com
                              Email:  screighton@wsgr.com

                              Mark S. Popofsky
                              ROPES & GRAY LLP
                              2099 Pennsylvania Avenue, NW
                              Washington, D.C. 20006
                              (202) 508-4624
                              Email:
                              mark.popofsky@ropesgray.com

APPEARANCES CONTINUED:

For Non-Party
Amazon.com, Inc.:              Richard G. Parker
                               GIBSON DUNN & CRUTCHER, LLP
                               1050 Connecticut Avenue, N.W.
                               Washington, D.C. 20036
                               (202) 955-8503
                               Email: rparker@gibsondunn.com

For Non-Party Apple, Inc.:     Steven C. Sunshine
                               Joseph M. Rancour
                               SKADDEN, ARPS, SLATE,
                               MEAGHER & FLOM LLP
                               1440 New York Avenue, NW
                               Washington, D.C. 20005
                               (202) 371-7860
                               Email:
                               steven.sunshine@skadden.com

For Non-Party AT&T, Inc.:      Kristen C. Limarzi
                               GIBSON DUNN & CRUTCHER LLP
                               1050 Connecticut Avenue, NW
                               Washington, D.C. 20036
                               (202) 887-3518
                               Email: klimarzi@gibsondunn.com

For Non-Party
Comcast Corporation:           Jesse Solomon
                               Christopher Lynch
                               DAVIS POLK & WARDWELL LLP
                               901 15th Street, NW
                               Washington, D.C. 20005
                               (202) 962-7138
                               Email:
                               jesse.solomon@davispolk.com

For Non-Party
DuckDuckGo, Inc.:              Megan Gray
                               DUCKDUCKGO, INC.
                               20 Paoli Pike
                               Paoli, PA 19301
                               (202) 265-2738
                               Email: megan@duckduckgo.com

APPEARANCES CONTINUED:

For Non-Party
GroupM Worldwide LLC:           James D. Sadowski
                                GREENSTEIN
                                DELORME & LUCHS, P.C.
                                1620 L Street, NW
                                Suite 900
                                Washington, D.C. 20036
                                (202) 452-1400 ext. 5407
                                Email: jds@gdllaw.com


For Non-Party Oracle:           Stephen M. Nickelsburg
                                CLIFFORD CHANCE US LLP
                                2001 K Street, NW
                                Washington, D.C. 20006
                                (202) 912-5108
                                Email:
                                steve.nickelsburg
                                @cliffordchance.com


For Non-Party
T-Mobile USA, Inc.:             Michael Edward Kipling
                                Marjorie A. Walter
                                WALTERKIPLING PLLC
                                5608 17th Avenue, NW
                                #735
                                Seattle, WA 98107
                                (206) 545-0346
                                Email: mike@walterkipling.com


Court Reporter:                 William P. Zaremba
                                Registered Merit Reporter
                                Certified Realtime Reporter
                                Official Court Reporter
                                U.S. Courthouse
                                333 Constitution Avenue, NW
                                Room 6503
                                Washington, D.C. 20001
                                (202) 354-3249
                                WilliamPZaremba@gmail.com


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1            P R O C E E D I N G S

2            THE COURT:  Hi.  Good morning, everyone.

3            DEPUTY CLERK:  Good morning, Your Honor.  This is

4    Civil Action 20-3010, United States of America, et al.,

5    versus Google LLC.

6            Kenneth Dintzer, Thomas Greene, Adam Severt,

7    Diana Aguilar, and Daniel Principato for the United States

8    of America.

9            R. Scott Palmer for the State of Florida.

10           Matthew Michaloski for the State of Indiana.

11           Justin Clark for the Commonwealth of Kentucky.

12           Jonathan Carter for the State of Arkansas.

13           Elizabeth Hart Pepper Martin for the State of

14   Mississippi.

15           Kimberley Biagioli for the State of Missouri.

16           Mark Mattioli for the State of Montana.

17           Rebecca Hartner for the State of South Carolina.

18           And Bret Fulkerson for the State of Texas.

19           John Schmidtlein, Benjamin Greenblum,

20   Franklin Rubinstein, Mark Popofsky and Susan Creighton for

21   Defendant Google LLC.

22           Kristen Limarzi for Non-Party AT&T, Inc.

23           Stephen Nickelsburg for Non-Party Oracle

24   Corporation.

25           Michael Kipling and Marjorie Walter for Non-Party

1    T-Mobile USA, Inc.

2              Megan Gray for DuckDuckGo, Inc.

3              Richard Parker for Non-Party Amazon.com, Inc.

4              James D. Sadowski for Non-Party GroupM Worldwide,

5    LLC.

6              Steven Sunshine and Joseph Rancour for Non-Party

7    Apple Inc.

8              And Jesse Solomon and Christopher Lynch for

9    Non-Party Comcast Corporation and NBCUniversal Media, LLC.

10             THE COURT:  Okay.  Good morning again, everybody.

11   Its nice to be with all of you this morning.  I hope

12   everybody is doing well.

13             All right.  So we're on the schedule this morning

14   to discuss the protective order that the parties have been

15   negotiating some remaining disputes about the terms of that

16   protective order.  Various third parties have filed position

17   papers, letting their concerns be known about aspects of the

18   protective order and the sharing of third-party information

19   with the defendant in this case.

20             Before we proceed, let me just make one quick

21   disclosure before we get to the substance of the issues

22   before me today.  And that is, you know, Mr. Parker,

23   Richard Parker has entered his appearance on behalf of

24   Amazon as a non-party.  As most of you probably know,

25   Mr. Parker was the counsel before me in the *Sysco* matter

1    years ago.  But we've also become friends.  My wife and I

2    have been social friends with Mr. Parker and his wife and

3    have seen them on more than one occasion over the last few

4    years.  And I just wanted to put that on the record.  I

5    don't know if that is cause for concern for anybody, but I

6    wanted to make sure everybody was aware of that relationship

7    before we proceed.

8           All right.  With that, let's talk about the issues

9    that arise out of this protective order.  And I think maybe

10    the way to do this is -- obviously, I've read everything

11    carefully, I've considered what the various positions are of

12    the parties.  I've also reviewed what Google submitted

13    effectively as a reply.

14           Let me just sort of tell you what my thinking is

15    on the various issues and then I'll turn to the parties for

16    their reactions and where we go from here.

17           The first is the following, which is, it's been

18    helpful to get from everyone -- and I should say at the

19    outset, I appreciate all the time and the effort that the

20    parties have put in in trying to manage -- excuse me, to

21    hammer out the protective order.  So I wanted to say that.

22    And I also appreciate the submissions from the non-parties;

23    in particular, the fact that a number of the non-parties

24    have provided a single submission, that was very helpful,

25    from my perspective.

 1             But of all the various cases and efforts to

 2    compare this to *Sysco* and the model that was used in that

 3    case, the one thing that has sort of stood out to me -- and

 4    I'm not sure there's any -- I don't know that any judge has

 5    really written about this or whether there's any appellate

 6    court that has written about this in particular, and that is

 7    whether there's a due-process concern here with what the

 8    government is proposing, which is that there would be some

 9    number of documents -- and we don't know how many -- that

10    would be designated by third parties as essentially for

11    attorneys' eyes only.

12             You know, as I think I made clear in one of my

13    opinions in *Sysco*, I mean, I think when the government of

14    the United States is bringing us this civil enforcement

15    action, which is what this is, and particularly one in which

16    the government has reserved on what its proposed remedies

17    would be in this case, you know, I think there are

18    due-process concerns that get implicated here.

19             And I've not read a single decision that addresses

20    that issue and whether the United States Government can

21    bring an action against even a large corporation and tell

22    that large corporation, well, we're going to deny you some

23    amount of material for review by the client, by the actual

24    defendant.  And I don't know that limiting that availability

25    only to lawyers' eyes only is sufficient for due-process

1   purposes.  That's sort of one observation.

2          The second observation that I have is, I have real

3   concerns about the definition that's been put forward for

4   "highly confidential information" and that designation.

5          Let me say, I'm sensitive to the concerns of the

6   non-parties and the material that has been asked of them and

7   what they've produced.  But as defined, the term "highly

8   confidential information" is wildly subjective.

9          And, in fact, if I were to be asked to at some

10  point make a determination whether something is confidential

11  or highly confidential, the definition is not an objective

12  one.

13         The proposed definition is, "Any confidential

14  information that the parties or any third party reasonably

15  believes to be so competitively or commercially sensitive

16  that it is entitled to extraordinary protections that a

17  lesser designation cannot provide."

18         You know, in some sense, it's tautological,

19  because what kind of information is so sensitive and so

20  competitive that it is deserving of greater protection than

21  the confidential designation itself provides is really,

22  obviously, ambiguous and within the eye of the beholder.

23         And beyond that, you know, I'm not even being

24  asked to objectively determine whether the information is

25  competitively sensitive or commercially sensitive, but,

1    rather, whether somebody reasonably believes it is so.

2            You know, as we move forward in this case, we may

3    have some dust-ups about these types of designations, but I

4    certainly would like to minimize them.

5            And a definition like this, to the extent we have

6    disputes, it seems to me, really provides almost no guidance

7    to me in how I can make this kind of assessment or how a

8    third party can make an assessment.

9            There are obviously significant third parties

10   involved in this case and they are concerned about the

11   material that's at issue.  And there's almost no way, based

12   on this definition, that any third party -- or that the

13   third parties can uniformly have some -- can uniformly,

14   through some objective means, determine what constitutes

15   confidential information or is it highly confidential

16   information.

17           Really, this is sort of an

18   it's-in-the-eye-of-the-beholder-type definition, as such

19   that one third party might have an entirely different view

20   of what's highly confidential from another third party,

21   which I think create all sorts of problems.

22           The final observation I have concerns the

23   definition that's been proposed as competitive

24   decision-making.  It is quite broad.  And it leads me to

25   wonder whether, if this is the definition that gets adopted,

1  whether there could be anybody inside the company that would

2  meet the definition or fall outside the definition, I should

3  say.

4          You know, the two in-house counsel that have been

5  proposed by Google have been working on this case, the

6  investigative phase, advising outside counsel in their

7  capacities as investigative -- as designated counsel

8  in-house for investigations in government compliance.  But

9  yet even this definition would exclude them, because the

10 definition would exclude counsel that has participated in

11 advising on a broad range of antitrust issues, including

12 litigation investigations and mergers and acquisitions.

13         I mean, the definition is so broad that, for

14 example, someone who's in-house at Google who does nothing

15 other than employment issues, for example, would fall within

16 the definition of competitive decision-making.  And so I've

17 got real concerns about the breadth of that definition, as

18 well as whether anyone could actually satisfy it.

19         All of which is to say that I'm not necessarily

20 opposed to having a two-tier structure for this type of

21 information, but it's not going to be on the terms that have

22 been proposed.

23         I fear that there will be over-designation of

24 material that's considered highly confidential.  That's not

25 at all meant to suggest any bad faith on the part of any

1   third parties.  I just think when you've got two levels of

2   designation, there's a natural tendency to want to err on

3   the side of more protection than less protection, and that's

4   understandable.

5           Two, you know, I'm not given a lot of guidance

6   here in terms of definitionally should there be disputes

7   about various designations.

8           And then third, you know, to the extent that there

9   needs to be some mechanism in here for the defendant to be

10  able to come forward and say, we'd like to present the

11  following information to the -- to our in-house designee,

12  there's no mechanism, at least as I -- I might have missed,

13  but there's no mechanism in the protective order for the

14  defendant to do that.  And what that looks like.

15          I mean, is this going to be like -- are they going

16  to make in-camera submissions that have to justify why that

17  information is something they need to show to an in-house

18  lawyer?

19          I think we sort of need to look over the horizon

20  here.  We can look at, this can get very messy and very

21  cumbersome and complicated.  And that's something that I'm

22  prepared to do, but don't want it to swallow up all of our

23  time, efforts, and resources here as we move forward.

24          So that's -- and there are a number of sort of

25  subsidiary issues that concern timing and the like that

1    we'll get to in a moment, but I wanted to share with you my

2    sort of big-picture thoughts about sort of what the main

3    dispute is between the parties, and then get your reactions

4    to all of that and then see where we are.

5              So why don't we start with the government,

6    Mr. Dintzer.  And I'll hear from you first.

7              MR. DINTZER:  Thank you, Your Honor.

8              We're joined by Thomas Greene, who's also from our

9    office, and he's going to be addressing this issue for the

10   Court.

11             THE COURT:  Okay.

12             Mr. Greene, good morning.

13             MR. GREENE:  Good morning, Your Honor.

14             Thank you very much initially for the opportunity

15   to peek into your thinking.

16             So let me see if I can take on these various

17   issues in turn, and certainly ask questions throughout, of

18   course.

19             But I think the first issue, is there some sort of

20   due-process concern or an equity that needs to be protected

21   here in terms of Google having some sort of right or an

22   equity to allow in-house counsel to review, in this

23   instance, highly confidential information of third parties.

24             I think that the case law is quite clear here that

25   there is no such due-process right.  If you look at

1    either -- I think the two best cases are *Advocate* and the

2    *Akzo*, A-k-z-o, case, in which --

3                THE COURT:  I'm sorry, what were those cases?

4                MR. GREENE:  -- those courts looked at -- *Akzo,*

5    A-k-z-o -- *Advocate*.

6                I think Akzo --

7                THE COURT:  *Akzo* and *Advocate*?

8                MR. GREENE:  Yeah.

9                *Akzo*, at 1482-83, speaks to this issue.

10               The Court there -- I mean, this is a Circa 1980s

11   case, but at least in that time frame, the Court could find

12   no due-process right with respect to in-house access to

13   confidential information of others.

14               *Silversun* is also quite helpful at 947 [sic].

15               I think the Court may also want to look again at

16   Rule 26(c)(1)(G), that's the provision, obviously, that

17   allows the Court to impose orders with respect to trade

18   secrets, and it allows specifically that commercial

19   information not be revealed or be revealed only in a

20   specified way.

21               I think, at least from our perspective, the

22   implication of that section is that that gives this Court

23   authority to do what it thinks it needs to do to protect the

24   rights of the government, in this instance, and the third

25   parties, in this instance.

1      I mean, I wouldn't say there are due-process

2 rights here, amongst others, but certainly there are

3 equities that, when you look at the case law, have to be

4 also protected with respect to the third parties, almost all

5 of whom are on the line with Your Honor.  We're talking

6 about some of their most sensitive secrets.  We're talking

7 about forward-looking business plans, forward-looking

8 technology plans, negotiating strategies, weaknesses,

9 vis-à-vis Google.  That is an equity that the cases also

10 recognize and protect, and we've, of course, cited a number

11 of those cases.

12      The other set of equities lie with the plaintiffs

13 and the government.  We need to be able to protect, and

14 I think the Court needs to protect, at least from our

15 perspective this is true, the equity, the public equity in

16 effective antitrust enforcement.

17      And we have alleged, and obviously that will be

18 subject to proof, that Google has engaged in monopolization,

19 it is actively suppressing competition, it uses a variety

20 of, from our perspective, exclusionary contracts to do that.

21      And that equity, the ability to bring to you, in a

22 bifold way, which does not endanger the equities of the

23 third parties, that also is an equity that, from our

24 perspective, needs to be protected.

25      So I think --

1          THE COURT:  So, Mr. Greene, can I --

2          MR. GREENE:  Yeah.

3          THE COURT:  -- if I can interject?

4          MR. GREENE:  Sure.  Of course.

5          THE COURT:  Is the government -- so say I were to

6    agree to this two-tiers level of confidentiality -- we can

7    talk about the definitional issue in a moment, but is the

8    government opposed to a mechanism by which Google could

9    petition the Court or obtain consent from a third party and

10   the government, to, on a case-by-case basis, show records to

11   an in-house lawyer?

12          I mean, the reason I ask is that, look, I can --

13   you know, hypothesize a situation in which there's key

14   evidence that needs to be presented to an in-house lawyer to

15   get guidance in term of strategy, whether that's litigation

16   strategy or whether to even resolve the case.

17          And I don't think it's unreasonable to think that

18   the defendant may find itself in a position at some point

19   where some important evidence -- there's no real substitute

20   to actually looking at it and understanding it.

21          And so is the government opposed to that kind of

22   mechanism on a case-by-case basis?

23          MR. GREENE:  No, Your Honor.

24          Actually, we thought we'd included that in our

25   draft order, but -- as you were speaking, I was trying to

1    grab it.

2           But no, conceptually, we believe we've included

3    it.  And the notion that if Google were to show a

4    particularized need, just to give an example, for example, a

5    situation in which somehow source code was an issue, and the

6    only person that knew about source code within Google was a

7    particular employee, so needed to look at somebody else's

8    confidential information in that regard, I think that what

9    we would -- I thought that what we proposed here is that

10   those kinds of showings of particularized need would be

11   appropriate and would be the best way to go forward, subject

12   to notice to the third parties so that they knew that there

13   was a discussion of their highly sensitive information.  So

14   no.  Absolutely.  We think that that would be a good way to

15   proceed.

16          And, in fact, one of the concerns we have with the

17   advocacy we're seeing from our friends on the other side is

18   that we don't see Google having shown a particular need for

19   two people to look at essentially the most important secrets

20   of the technology industry in the United States.  I mean,

21   you know, they -- the folks are on so they can speak to this

22   more directly, but they have not shown a particularized need

23   which is part of a balancing test that Your Honor used in

24   *Sysco*.

25          But we think particularized need, individual

1    showings certainly should be possible and we would support,

2    if we have not already included, a provision along those

3    lines.

4              THE COURT:  Okay.

5              You know, and, look, I may have missed it, but

6    I was reviewing the redlined Exhibit B to your submission,

7    and I didn't see that -- I mean, the mechanism, at least the

8    concept that we've been talking about, was mentioned in your

9    submission, but I didn't see it in the protective order.

10   And I may have missed it and overlooked it.  But if it's

11   there --

12             MR. GREENE:  Yeah, let me keep looking.

13             But rather than delay my responses to --

14             THE COURT:  Yeah, maybe one of your colleagues can

15   take a look and point me to it if it's there.  If it's not,

16   we can talk about whether it's appropriate to include one.

17             But why don't you continue, Mr. Greene.

18             MR. GREENE:  Sure.

19             So the next point I think you made was concerns

20   about competitive decision-making.

21             And I think the thing to look at here is the -- we

22   drew that almost verbatim.  I think we mentioned antitrust

23   counsel as an example of a potential problem.

24             But when you actually compare the definition of

25   competitive decision-making, that is a paraphrase, and

1    hopefully -- I thought we were accurate, but it's a

2    paraphrase -- indeed, it's actually quotes, the specific

3    language from *United States Steel*.  And that speaks in terms

4    of, in essence, the question of whether an individual

5    in-house counsel, in their sort of ordinary course, looking

6    at what they do -- I'm searching here for the actual

7    language -- when you look at what they actually do, is there

8    an occasion, an opportunity, it's sort of a

9    means-and-opportunity situation, where, as part of their

10   day-to-day activities within the company, they would be

11   talking about or counseling on something that pertains to

12   the confidential information provided by the third parties.

13         Let me just read that definition from *U.S. Steel*.

14   And you can certainly compare what we've written.  But

15   I think they're identical, if not very, very close.

16         So it includes competitive decision-making.  This

17   is essentially a phrase that is -- describes something

18   that's much more complex.

19         But I think the key is, it includes, "Counsel's

20   activities, association, and relationship with a client that

21   are such as to involve counsel's advice and participation in

22   any or all of the clients' decisions (pricing, product, and

23   design, et cetera) made in light of similar or corresponding

24   information about a competitor."

25         So the basic idea, from your perspective,

1    Your Honor, is that if the person that is the candidate

2    counsels on something that relates to information

3    corresponding -- similar corresponding information from a

4    third party, then that creates the problem.

5              So I think that's --

6              THE COURT:  Right.

7              I take it, Mr. Greene, that -- I'm sorry to

8    interrupt.

9              I take it --

10             MR. GREENE:  Yeah.  Go ahead.

11             THE COURT:  -- you -- is the government objecting,

12   then, for example, to the two in-house lawyers that were

13   identified by Google in its supplemental filing?

14             At least it seems to me that --

15             MR. GREENE:  We -- yeah.  We have --

16             THE COURT:  -- they would not fit this definition.

17             MR. GREENE:  Well, it's hard to say.

18             Frequently -- I mean, I'm not saying that we need

19   to do this in this precise situation, but, you know, at

20   least in the cases, there's discovery and you can figure out

21   what they actually do.

22             The sources we have to us are the descriptions in

23   the filings, which indicate that these two individuals do

24   regulatory activity, and they discuss and are involved with

25   managing litigation that arises from that litigation and

1    those investigative activities.  It strikes us that -- so

2    that's one source of information.

3            The other source of information that we have is

4    that the privilege logs are provided to us by Google, and

5    we've, no surprise, taken a look at if either of these

6    individuals, as mentioned on the priv. logs, and they

7    certainly are.

8            So our impression, looking at what we've seen from

9    our friends from the other side, is that these folks deal

10   with government investigations and related litigation.  One

11   of the obvious places that that occurs is government

12   investigations or potential government investigations

13   dealing with mergers and acquisitions.

14           So we think that when you look at what a counselor

15   does in that kind of context, if they're looking at a

16   potential acquisition and the lawyer involved has seen the

17   secrets of third parties that may relate to that

18   acquisition, then they may be able to implicitly use that

19   knowledge in the counsel that they give the client.  I mean,

20   that's really the essence of the test in *U.S. Steel*.

21           The other source of information for us is our

22   privilege logs.  And what we're seeing there is that there

23   are two individuals, one of whom is the more experienced of

24   the two, and she is listed as having provided counsel to,

25   amongst others -- this is Ms. Danaye-Armstrong.  So Circa

1    October of 2019, she was advising the CEO of Google,

2    Mr. Pichai, on contractual issues, at least according to the

3    log.  She's also listed as having provided guidance to

4    Jim Kolotouros, who's a very senior Google executive and who

5    himself deals with third parties, 12 times in acquisitions.

6              And then we also have Ms. Kollios.

7              THE COURT:  Mr. Greene, let me interrupt you and

8    see if I can redirect us back.

9              MR. GREENE:  Sure.  Of course.  Yeah.

10             THE COURT:  We can get into the actual individuals

11   a little bit later here.

12             But can I ask you to focus, then, on the

13   definition of "highly confidential information" and the

14   concerns that I've expressed?

15             I mean, I will tell you that that is really very

16   much the source of my concern here of having this two-tiered

17   structure, again, I'm not opposed to it.  But I know the

18   definition is one that's been used in other cases.  And I

19   don't know whether other judges have grappled with how

20   expansive this is, and, frankly, how standard this is.

21             And what I want to avoid here is an

22   over-designation of highly confidential information and a

23   lot of litigation over what constitutes highly confidential

24   information.

25             MR. GREENE:  Right.  Absolutely a fair point,

1    I think, Your Honor.

2          So I think two thoughts.  And let me give you the

3    underlying thought.

4          I mean, what we were endeavoring to do here, and,

5    you're right, there are several orders which use precisely

6    this language and we thought they made sense.

7          So the first thing to keep in mind is that this is

8    part of a process.  And this definition is embedded in a

9    process by which Google has explicit rights -- and, of

10    course, their outside counsel have access to everything --

11    if there is over-designation, then Google could raise its

12    hand.  And presumably what would happen is they would

13    communicate with their counterparty and that represents the

14    third party, and say, look, you guys are over the top here.

15    And that would lead to a conversation, which would then lead

16    to a potential challenge.  So that's a very important aspect

17    of this.

18          The second is that what we're endeavoring to

19    identify was -- or provide was a definition that really went

20    to harm.  You know, is this going to harm competition?  Is

21    this going to harm the equity interest, obviously, that the

22    third parties have and the secrecy of this core of highly

23    confidential information that can hurt them?

24          Given the complexity of this industry, we thought

25    that a definition -- that definitionally, that would be very

```
 1    difficult to really express in writing.  So we left it the

 2    way it is in this particular provision, in the expectation

 3    that that would -- that process, together with what

 4    we believe to be the good-faith effort on the part of the

 5    third parties -- I mean, various of the filings that you

 6    have before you that you've read, obviously, they indicate

 7    that they understand what is crucial.  And there's a second

 8    tier of information confidential, which gets significant

 9    protection, but not the same level of protection as the

10    highly confidential information.

11              So I think, Your Honor, that what we're looking at

12    and what the goal here is, is to identify -- give you a

13    definition which would require some sense that any

14    information would provide -- would potentially create real

15    harm to the third parties if it were turned over to someone

16    inside Google.  And if we have not done a good enough job in

17    terms of that definition, you know, send us back to the

18    drawing board, I think, would be the right conclusion here.

19              But I do think Your Honor could also rely on the

20    fact that this is embedded in a process which Google clearly

21    has been given a role.

22              And I think at least pragmatically in cases --

23              THE COURT:  Mr. Greene.

24              MR. GREENE:  Yes.

25              THE COURT:  It's certainly useful to have the
```

1  process.  I think what I'm concerned about is everyone will

2  become over-reliant on the process as a means of trying to

3  sift through between what's highly confidential and what is

4  not.

5          As I said, the definition is a subjective one,

6  and, in many ways, is asking someone, who's trying to decide

7  what is confidential versus highly confidential, to use

8  their own perspective in making that determination, which I

9  recognize is not always -- which is -- you can't avoid; on

10 the other hand, the sort of reasonable-belief standard can

11 lead to a lot of subjectivity and a lot of dust-ups that,

12 I think, everybody would just as well rather avoid.

13         All right.  Anything else you want to add,

14 Mr. Greene, before I turn to Mr. Schmidtlein?

15         MR. GREENE:  I think those are the principal

16 points, Your Honor.

17         I mean, we do want to oppose this notion of having

18 prosecutors subject to a $250,000 fine.  And we also

19 certainly disagree with Google's point that somehow they

20 should get notice of any time that we send information

21 about, say, potential price fixing to one of our

22 prosecutorial teams, that that's something that we think is

23 important to do here.

24         But I think on the core points that you've raised,

25 I think that probably gives you my best perspective on those

1    points.

2              THE COURT:  Okay.  I appreciate it.

3              Yeah, we'll talk about the other issue

4    momentarily.

5              But, Mr. Schmidtlein, let me get your reaction to

6    my observations and what Mr. Greene has had to say, and then

7    we can figure out a path forward on this issue.

8              MR. SCHMIDTLEIN:  Thank you, Your Honor.

9              Your Honor, I think the points that you have

10   raised, I think, aptly capture both the substantive problems

11   that the protective order that's been proposed here by the

12   government are placed before us or created for us in terms

13   of trying to defend this case.

14             And they also highlight, in addition to just sort

15   of the substantive roadblocks it's going to provide for us,

16   the cure -- and we have gone, I think, above and beyond to

17   try to meet and exceed the tests that you set forth in

18   *Sysco*, all of the mechanisms that they sort of propose that

19   I think Your Honor is kind of struggling with to try to

20   address these, are going to be worse than the problems that

21   they claim will be created.

22             So in terms of the due-process concern and the

23   substantive sort of how we go about defending ourselves in

24   this case, you know, where we sit today is, you know,

25   several dozen parties have produced information to the

1    government as part of the investigation.  We've been told

2    it's roughly one and a half million documents.  They still

3    won't tell us how many have been produced by each entity, we

4    don't have access to that, even on an outside-counsel basis,

5    today.  When we get that information, we are going to want

6    to review it and then begin making strategic decisions about

7    how we build our case.

8            I have every expectation that for those companies,

9    and a small handful -- a relatively small handful of them

10   have appeared thus far.  But I -- based on my experience of

11   doing these cases and having been involved in cases with all

12   of the -- many of the lawyers who represent the third

13   parties here, who are all excellent lawyers and very

14   experienced, but my experience is, they're going to

15   designate all or nearly all of the information they produced

16   in connection with the investigation "highly confidential."

17   And certainly the definition that's been set forth here

18   would protect them entirely in doing that.

19           So that's what's going to happen.  They're not

20   going to go back and re-review page by page and say that the

21   overwhelming majority of this material is confidential and

22   can be shared with an in-house lawyer for Google.  I just

23   don't expect that -- they're not going to want to take the

24   time; they're not going to want to go through the expense,

25   depending on the size of their production, to likely want to

 1    do that.

 2            And they very -- well, again, with the definition,

 3    they may very well believe that all or nearly all of that

 4    information is highly confidential and, so, therefore,

 5    should be so designated.

 6            So then, you know, we're going to be facing a

 7    situation where we have to make strategic decisions in

 8    defending a case:  Do we issue additional subpoenas to those

 9    companies?  Do we begin taking depositions of people for

10    those companies?  Do we begin doing internal analyses within

11    Google based on the information that's in those documents?

12    How do we begin formulating the defense of our case?  Our

13    experts?  Summary judgment?  Trial?  All the things that

14    Your Honor is well aware go into the strategy and the

15    substance of defending a case of this size and complexity.

16            THE COURT:  Mr. Schmidtlein, if I can just

17    interrupt you for one moment.

18            Look, you know, some of this I'm sort of punching

19    in the dark, but it seems to me that there may be, in this

20    case, some discrete category of information that's been

21    provided by the third parties that really is sort of

22    ultrasensitive, something I would sort of compare to the

23    recipe for Coca-Cola, it really goes to the essence of the

24    business, it really is the kind of information that, if

25    shared and inadvertently disclosed, could compromise a

1   business's competitive position.

2            Would you agree that there's likely to be such

3   information?  And what is the problem if we can agree to

4   some definition of something that would capture that very

5   narrow category of information?

6            Even recognizing that naturally, lawyers may want

7   to try and put something in that category to protect their

8   clients' interests; that we try and sort of carve out that

9   smaller category of information that is that sensitive and

10  really does go to the essence of the competitive position of

11  any of these businesses.

12           MR. SCHMIDTLEIN:  I think, Your Honor, unlike, you

13  know, in maybe a patent-litigation case or, you know, a very

14  narrow -- something -- Mr. Greene made reference to source

15  code, you know, things of that nature, given the nature of

16  the allegations in this case, at this moment, I don't think

17  these third parties have in mind a very, very narrow

18  selection of that type of information, a source-code type of

19  information.

20           I'm not saying that there might not be a couple of

21  third parties that might have something that qualifies like

22  that.  But I don't believe that the nature of -- the

23  overwhelming bulk of the material that's been produced in

24  this case fits that.  And I don't think these third parties

25  are going to agree that all of the information -- the rest

1    of this information they've produced shouldn't be afforded

2    the exact same treatment of the Coca-Cola formula that you

3    are talking about here.

4              So respectfully, Your Honor, I don't think that's

5    what the third parties in this case are going to have in

6    mind.  I don't think it's what I would have in mind if I was

7    representing them.  I think they're going to want to

8    designate, as I said, all or nearly all.

9              If we could come up with something that was truly

10   narrow, that would allow us access to the overwhelming

11   majority of the things, I'd certainly be open to trying to

12   solve the problem that way.  I just don't see that.

13             And I see this process that we've been talking

14   about or that Your Honor has raised about, you know, am I

15   going to then be in a position where I have to disclose to

16   everybody, here are the particular things I'm focusing on in

17   their production, I need to go to them and reveal that, I

18   need to go come to you and have, you know, protracted

19   battles, you know, over trying to fight over the

20   designations.  That seems to me to be a very cumbersome and

21   unworkable process as we try to litigate this case, you

22   know, as effectively and as efficiently as we'd like.

23             THE COURT:  Okay.

24             So go ahead, Mr. Schmidtlein, if there's anything

25   else you want to add, I think we can sort of, then, figure

1    out what we're going to do here going forward.

2            MR. SCHMIDTLEIN:  So I think that captures it,

3    Your Honor.  I think you've put your finger on the issues

4    that, as a practical matter as well, are going to be very

5    difficult to solve, which is, is this definition of "highly

6    confidential," which I don't see any -- the government or

7    any third party having proposed a workable solution on that

8    that would satisfy, you know, and get to what you are,

9    I think, trying to achieve here.

10           And then the last point, I guess I would just say

11   is, on the definition of competitive decision-making and the

12   provision that Mr. Greene read from the *U.S. Steel* case,

13   we've read those cases and the two people we have chosen are

14   litigation- and government-investigation focused.  They are

15   not the in-house lawyers who are doing the day-to-day

16   advising, consulting, providing legal advice on business

17   issues, these are litigators who have been involved in

18   overseeing this case.  And when Your Honor, I think, said

19   that the definition that's been proposed would essentially

20   exclude everybody -- every in-house lawyer within Google,

21   you are absolutely correct.

22           The lawyers we have chosen here are, given their

23   backgrounds and given the involvement they've had, frankly,

24   pose, I think, fewer issues than the lawyers we've seen

25   proposed in other cases where this has been permitted.  And

1    we've imposed even additional restrictions in terms of, for

2    two years after, that these restrictions would remain on

3    them.

4          So we've done everything we can to try to assuage

5    any concerns about who these individuals are and what use

6    they could potentially make of information.

7          Thank you, Your Honor.

8          THE COURT:  So let me just pause here for a

9    moment.

10         We have a number of third parties on the line and

11   counsel for those third parties.  And I'm happy to, if

12   there's anything anybody would like to raise on this issue,

13   I would prefer to avoid a lineup of lawyers here that's

14   going to keep us here all afternoon.  But if there's

15   something discrete any of the counsel from the third parties

16   wish to raise that hasn't been discussed or that I may not

17   have considered, I'd be happy to hear from you at this

18   point.

19         MR. PARKER:  Your Honor, this is Rick Parker from

20   Gibson Dunn.  And I am, for efficiency's sake, speaking on

21   behalf of the eight parties who signed our joint brief, and

22   I just have a couple of points to make.

23         Let me just reiterate that there are some very

24   highly sensitive documents here.  They may not be the

25   formula for Coke, but they are what, to use a sports

1    analogy, I would call a playbook.  It is future product

2    plans to compete with the defendant.  Or, many of us have

3    commercial relationships with the defendant, and these would

4    be documents that say, this is how you negotiate with

5    Google, this is what your number is.  We've got to have

6    this, we don't have to have that.

7              What I'm suggesting is, these are highly sensitive

8    documents, they are the playbook, and that is what we are

9    talking about.  And we have no intention of doing anything

10   other than designating highly confidential documents that

11   fall into that type of category.

12             The second point I want to make and that

13   distinguishes *Sysco*, where the issue was market structure

14   and what the market might look like after a merger.  This is

15   a different ballgame here, where there are -- and we express

16   no opinion whatsoever on this complaint, but there are

17   allegations of exclusionary conduct by the defendant against

18   some of the very people who have produced a lot of documents

19   here.  And the folks I'm speaking to for, Your Honor, have

20   done nothing other than comply with a subpoena, and are only

21   here to protect those documents.

22             THE COURT:  Mr. Parker, do you think --

23             MR. PARKER:  Yeah.

24             THE COURT:  Mr. Parker, do you think there's a

25   tighter definition of "highly confidential information" that

1    could be formulated here that would either get to the narrow

2    scope of the type of information that you've just

3    identified?  Because I'll say this again, my -- and, again,

4    I'm not suggesting bad faith on the part of anyone --

5                MR. PARKER:  No.

6                THE COURT:  -- but, you know, I don't want to be

7    in a position where 1.3 million of the 1.5 million documents

8    are being designated as "highly confidential" because it's

9    just easier to do it that way.

10               MR. PARKER:  Your Honor, we are -- as I said, our

11   interest is a very practical one and it is in protecting our

12   documents and we would participate in any redefinition or

13   tighter definition effort that Your Honor would prefer, of

14   course we would.

15               I would simply say that the subjective, what you

16   call the subjective definition was the one that was used in

17   the *Sprint-T-Mobile* matter and it's been used, I believe, in

18   other cases.

19               And that is my final point here:  These two-tier

20   protective orders, such as what we're talking about here,

21   happen every day.  If you look at Google's papers, page 5

22   and 6, they go on and on and on about one case after the

23   other that has done precisely what the DOJ wants to do here.

24               We did it up in -- I was representing *Deutsche*

25   *Telekom*.  And we did in the *Sprint-T-Mobile* matter.  And,

1   Your Honor, I'm telling you, I'm wracking my brain, I don't

2   recall a single problem that counsel, antitrust counsel,

3   particularly -- if I was in the courtroom, I'd point at

4   their table and say, particularly of the type of lawyers

5   that know how to do this.  We all know how to do this, and

6   we can make it work.

7           And I respectfully suggest that Mr. Schmidtlein's

8   parade of horribles on their ability to defend Google to me

9   is overstated, because --

10          THE COURT:  Okay.

11          MR. PARKER:  It's done literally every day in the

12  antitrust world.

13          THE COURT:  Okay.

14          MR. PARKER:  All right.

15          THE COURT:  All right.  So here's where I am on

16  this, and here's what I think we ought to do:

17          I would like the parties to go back to the drawing

18  board on this definition of "highly confidential

19  information."  I'm just not satisfied with the definition,

20  I think it's too broad, I think it's too subjective, and

21  I think it opens us up to -- and I think it's, frankly, in

22  everyone's interest, to a whole lot of litigation over what

23  bucket a particular document belongs in.

24          You know, I don't want to be involved in that

25  litigation; I don't think any of the parties here want to be

1    involved in that.  I think it's a distraction and is ripe

2    for inefficiencies.  And so let's not invite it.  And

3    I think this definition does just that.  So I'm not saying

4    "no" to a two-tiered designation, but what I am saying is

5    that I'd like to see a better definition before I am

6    prepared to agree to it.

7            I also think that the parties ought to think about

8    narrowing the definition of competitive decision-making.

9    I've reviewed the declarations of the two lawyers that

10   Google has proposed.  There may be more specific objections

11   that the government or third parties have not had an

12   opportunity to yet make, but it strikes me that somebody in

13   the position of the two lawyers that have been identified

14   would be an appropriate in-house contact.

15           You know, look, the company has got to defend

16   itself and it needs people on the inside who have

17   understanding of this litigation and the company's strategy

18   going forward, and the two folks who've been identified seem

19   to fit that bill.

20           Now, if they are involved in more than just simple

21   litigation and they are involved in mergers and that kind of

22   thing, maybe we'll have to revisit it or maybe that poses

23   additional, heightened concerns, because, if I remember

24   correctly in *Sysco*, you know, *Sysco* had proposed someone who

25   was involved in mergers on behalf of the company, and I

1    found that to be too close to sort of the business

2    operations of the company to authorize that person to

3    receive sensitive information of competitors or of

4    customers.  So I'll ask you all to go back and work on that

5    as well.

6          If there are specific reasons why the two folks

7    who have been -- who've been identified are really

8    problematic, then we can take that up next time.  But, you

9    know, at least based upon what's been presented to me, they

10   seems like appropriate in-house counsel who will serve in

11   this function.

12         I do think it is appropriate to have two rather

13   than one.  And so to the extent there's a difference on that

14   issue, I think it's appropriate to have two in-house counsel

15   designated instead of one.

16         I may have missed it, and we talked about this

17   earlier, but there does need to be some mechanism in here by

18   which Google is able to, if we do have a two-tiered

19   confidentiality designation, that Google is able to come to

20   the Court, after meeting and conferring with both the

21   government and the third parties, to try and request

22   disclosure of highly confidential information to the

23   designated in-house lawyers.

24         And let me say that I think I'm -- I'm a big,

25   you know, it was in *Sysco* for the first time that these

1    sanctions had ever come to my attention or been involved in

2    a case.  But, you know, any lawyer that would dare try and

3    misuse information, and I recognize it can be done

4    inadvertently, but these lawyers, I'm not sure I'd raise my

5    hand, if I were a lawyer on the inside, to want to sign up

6    for this.  I mean, not only are you putting yourself at

7    serious risk with a substantial financial penalty, but

8    you're putting your very livelihood at issue if you misuse

9    the information.  And so I think those restrictions are

10   fairly strong and, I think, really do de-incentivize anyone

11   who might think about using this information in a way that's

12   inappropriate.

13        All right.  So I think those are the issues that

14   sort of concern the two-tiered designation that really none

15   of the parties dispute.

16        I think there were a couple other things about the

17   protective order that I wanted to raise to the parties for

18   your consideration when you go back to the drawing board.

19        One was, there was a time period of 60 days that

20   would be available to the third parties to designate highly

21   confidential and confidential information.  That struck me

22   as long, a long period of time, particularly since I'm

23   interested in getting discovery started here.

24        And right now, I've not, notwithstanding Google's

25   request, sort of allowed a wholesale production of records.

1    But if we're in a position where Google's got to make

2    document requests and then the government has to identify

3    documents that are responsive, then go to third parties to

4    get them to designate the documents that are responsive, you

5    know, that's really going to prolong the production of

6    records here.  And so that 60 days strikes me as just too

7    long, unless the government has reason to tell me why that's

8    an appropriate amount of time for those designations to be

9    made.

10             MR. GREENE:  Yeah.  Your Honor, Tom Greene again.

11             It could be shorter, frankly.  The thought there,

12   though, to speak to one of Mr. Schmidtlein's points:  We do

13   think this requires, when we focus on the highly

14   confidential materials, we are looking for the kinds of --

15   pieces of information that really would potentially injure

16   the third parties.  We wanted to give the third parties

17   sufficient amount of time to actually do the hard work to

18   identify, sift through, and come back to the Court with

19   designations which were narrow and focused.

20             Our general sense was that the two-tiered system,

21   the confidential set of materials, reading most of the

22   materials and highly confidential would be a subset.  But we

23   thought giving folks an appropriate amount of time to make

24   those designations would aid the process in the long term,

25   in terms of making sure that they identified the really

1   highly confidential stuff.

2           Of course, one point, and it may be the obvious

3   one but let me just make it, throughout this process,

4   outside counsel have complete access.  So there's, from our

5   perspective, the question is exactly what the in-house folks

6   can do that's different from what the firms can do.

7           But we do think this 60 days, whether you could

8   consider dropping it to 45, we would be open to those

9   discussions, but we'd want to consult with the third parties

10  on whether that made sense.

11          THE COURT:  Okay.

12          Well, you know, look, my interest here is in

13  keeping things moving forward and not putting in mechanisms

14  here that unnecessarily delay matters.  You know, 60 days

15  seems like too long a time to me.

16          I will say that parties, and the lawyers who are

17  on this call for the third parties, as everybody has

18  recognized, are sort of cream-of-the-crop antitrust counsel.

19  And so I would suggest that they get started now in

20  identifying what they think is going to meet a tighter

21  definition of "highly confidential information" so that

22  we're not waiting for whatever the trigger may have been for

23  60 days to start.  You know, there's no reason to not start

24  thinking about that now and figuring out which records

25  they're going to -- are going to get a higher confidential

1    designation, if I allow it.

2            Let me take a look here at my notes.  There were a

3    couple of other issues.

4            Apple, I think, in their submission had asked for

5    ten days to object to the designation of in-house counsel.

6    I think the government's redline, at least as I read it,

7    permitted only the government to object to that designation,

8    and I think it's appropriate to have the third parties be

9    able to do so as well.  So I'll just ask that the protective

10   order be amended to reflect that third parties can object

11   within ten days of receiving notice.

12           Now, you know, arguably -- you know, I'll leave it

13   to you all to figure out what the trigger is for that ten

14   days, and whether, you know, the filing that was made,

15   I think, on Friday or earlier this week, that starts that

16   trigger, but certainly it seems to me that -- I think once

17   the protective order is signed, I think -- and certainly no

18   later than that date -- that that time would start running

19   to object to the designation of any in-house lawyer.

20           Bear with me.  I'm just looking at my notes here.

21           There's also, it looks like, some -- you know,

22   again, I'm looking at the redline that the government has

23   proposed here, this is on page 18 of that redline, it's ECF

24   34-2, page 18, which sort of sets forth some of the

25   restrictions on in-house counsel.

1          You know, I'm a little bit concerned that -- this

2     is Subsection D -- with both the time periods -- and I'll

3     leave it to the parties to ultimately try and negotiate

4     whether it's five years or two years -- but also that this

5     limits in-house counsel's ability to engage in competitive

6     decision-making with any other employer.  I recognize what

7     the government is trying to get at here, but, you know,

8     I want to think through whether that's too restrictive.

9          You know, say one of these in-house lawyers

10    decides that she's going to leave and open up a flower shop,

11    I had a friend who did that and has now a very successful

12    flower business.  Certainly, this protective order shouldn't

13    be limiting a lawyer's ability to do something like that.

14    And I know that's not the intention, but it's written so

15    broadly that it certainly would encompass that kind of

16    scenario.

17          I think that covers nearly everything, with the

18    exception of this issue of government-information sharing.

19    And so unless there's anything else about the

20    confidentiality of information, if you could get access to

21    that, why don't we turn to that last issue.

22          Is there anything else concerning the

23    confidentiality issue that I've missed before we turn to

24    this disclosure issue?

25          MR. GREENE:  Yeah, this is Tom Greene again,

1    Your Honor.

2              As we understand -- thank you for your guidance,

3    and we'll certainly go back to the drawing board and sharpen

4    our pencils.  But some of this will turn -- how this is

5    drafted will turn on this issue.

6              As I understand what you told us is that you do

7    think that if we can narrow the definition of highly

8    confidential, that that tiny bit subset would be denied to

9    in-house counsel.  That is what I think you're telling us;

10   is that correct?

11             THE COURT:  Yes.

12             I mean, what I am saying is that if you can work a

13   definition that narrows what -- you know, that narrows to

14   the sort of core subset of materials that I have in mind

15   that I think that Mr. Parker has identified which is it, you

16   know, then yes, I think that -- I would be open to having

17   this two-tiered approach.

18             And then obviously there has to be a safety valve

19   of that approach that would enable Google, if either by

20   consent or by court order, to present that information to

21   the designated in-house counsel.

22             MR. GREENE:  Thank you, Your Honor.  That's very

23   helpful.

24             MR. SCHMIDTLEIN:  Your Honor, this is John

25   Schmidtlein.

1          I think the other issue that Mr. Greene had

2    alluded to, and I don't know if this is something you're

3    going to raise next or what's kind of within the subject

4    matter but we were just discussing, is this question of in

5    the -- of who the sanction provision is going to apply to.

6          In *Sysco*, the sanction provision applied generally

7    to anybody who violated the protective order.  The

8    government has proposed that the sanction provision work

9    only against Google and not against the government.

10         THE COURT:  Let me put a pause on that,

11   Mr. Schmidtlein, and I'll turn to it, because there are --

12   there are these two other issues, the one you've identified,

13   and the issue of disclosure.

14         I want to just add one additional thought, and

15   I don't need reactions to it necessarily, but one mechanism

16   that I thought of that's not included in the protective

17   order for potentially discouraging over-designation of

18   highly confidential information is a fee-shifting provision,

19   such that, you know, if designation becomes an issue that's

20   litigated, that the loser pays, might sort of discourage

21   folks, or at least cause folks to take a hard look at the

22   document and figure out whether it actually fits a narrower

23   definition.

24         You know, if the definition itself is narrow

25   enough that it doesn't invite the temptation of litigating,

1   then perhaps we don't need one.  But I thought I'd put that

2   out there for your consideration to include as a --

3          MS. GRAY:  Your Honor?

4          THE COURT:  Yes.

5          MS. GRAY:  This is Megan Gray with DuckDuckGo.

6          THE COURT:  Hi, Ms. Gray.

7          MS. GRAY:  We would want to be heard on any

8   possible fee-shifting provision, where DuckDuckGo would be

9   paying fees for trying to protect its highly confidential

10  information with fees paid to Google.

11         THE COURT:  Well, let me just say this:

12         It's not something I'm requiring.  It's something

13  that -- a thought that occurred to me to, I think, put

14  certain mechanisms in place to discourage over-designation,

15  and that's just something I thought about.  I'm not

16  suggesting that it needs to be included, but I want to put

17  that out there for general consumption, and you all can

18  think about whether that's something that makes sense to

19  include.

20         If the definition is narrow enough that we're not

21  likely to have a lot of dust-ups about what constitutes

22  highly confidential information, then okay.  On the other

23  hand, if the definition that was presented to me certainly

24  raised enough concerns in my mind that I thought about a

25  potential fee-shifting provision in order to discourage

1    over-designation and for people to be a little bit more

2    modest about what actually constitutes "highly confidential

3    information."

4            All right.  Let's turn, then, to this last issue

5    about to whom the sanctions would apply and then also

6    notice.

7            Let me ask the government on the notice question.

8    Look, I don't think Google is objecting, and,

9    Mr. Schmidtlein, you tell me if you are but -- because I'd

10   already presumed that the Attorney General's -- Attorneys

11   General who already have joined this suit have had access to

12   the materials that you all have collected in the course of

13   this litigation.

14           And so are you suggesting that the government

15   should be able to share the investigative file with law

16   enforcement agencies that are beyond those that are already

17   part of this suit?

18           MR. GREENE:  No.

19           This is Tom Greene again.

20           No, Your Honor.

21           The sharing -- it's paragraph 15 of the order,

22   which actually protects -- there's a requirement that the

23   confidentiality of the information be protected, first off.

24           But it would be kept in-house for law enforcement

25   purposes or with respect to litigation, that we, the

```
 1    Department of Justice, and our co-plaintiffs, decides may

 2    be --

 3              THE COURT:  I think this last -- you know, this

 4    paragraph or subparagraph brief, for law enforcement

 5    purposes that is causing the consternation of both Google

 6    and some of the third parties, that they would not receive

 7    notice if, for instance, the government was inclined to

 8    share information with an Attorney General of the state

 9    that's not listed in paragraph 15.

10              And so is the government opposed to making that

11    kind of disclosure or providing notice?  I mean, they're

12    simply asking for seven days.

13              MR. GREENE:  The focus of that -- I think the

14    answer is no, we would not object, subject to Mr. Dintzer

15    correcting me, but the focus there is an internal, and a

16    very important, interest of the part of the United States

17    and our co-plaintiffs.

18              For example, if we -- not to say that we've seen

19    anything like this from Google, but the interest we're

20    trying to protect here primarily is a law enforcement

21    interest.

22              So, for example, if we saw evidence of price

23    fixing in the context of documents that we receive, those

24    are secret conspiracies.  As Your Honor knows, the last

25    thing you'd want to do is provide notice that you're
```

1    starting an investigation.  So it's those kinds of things

2    that we're particularly interested in protecting.

3              So we would keep it within the law enforcement

4    family.  And I think we can certainly say it's within the

5    Department of Justice and within the individual states.

6              THE COURT:  Okay.

7              I mean, I guess what I hear you saying is that

8    you're not opposed to some kind of notice provision to the

9    extent that there would be document sharing being done

10   outside the Department of Justice or any of the list of

11   states' Attorneys General who are co-plaintiffs in this

12   action.

13             So I'm hearing that would be a --

14             MR. GREENE:  Yeah, I think that's a fair

15   reflection of our position.

16             I mean, let me visit with Main Justice on that

17   question and our co-plaintiffs, but I think we're

18   comfortable with that.

19             Let us get back to you since you've cast us to go

20   back to the drawing board on a couple other things,

21   Your Honor, we can certainly sharpen our pencils here, too.

22             THE COURT:  Okay.

23             So I don't know -- you know, I'll leave it to you,

24   Mr. Schmidtlein, to sort of try and hammer that out.

25             But, Mr. Schmidtlein, would that address your

 1   concern, and that of any third parties, because if the

 2   concern -- at least the concern you would express would seem

 3   to me to be the sharing of information outside the

 4   plaintiffs in this case.

 5            MR. SCHMIDTLEIN:  That's exactly right,

 6   Your Honor.

 7            THE COURT:  Okay.

 8            All right.  So I'll leave it to the parties to

 9   hammer that out and size the language in a way that

10   satisfies them and any third parties that are concerned

11   about that notice provision or the absence of a notice

12   provision.

13            All right.  Then finally, that leaves the issue of

14   sanctions and who would be subject to sanctions.

15            And I guess I'm trying to recall how we did this

16   in *Sysco*.  I certainly recall that we had a very harsh

17   sanctions provision in place for the individuals who were

18   entitled to receive information in-house.

19            I don't recall how we dealt with any sanctions

20   provision with respect to government counsel, either for the

21   Department of Justice or for the states' Attorneys General,

22   and whether they were subject to any sanctions provision as

23   well.

24            And so I'm happy to have my memory refreshed on

25   that and what the concerns are.

1          MR. SCHMIDTLEIN:  Yes, Your Honor.  This is John

2     Schmidtlein.

3          The provision that you entered in *Sysco* provided

4     that -- and I'm quoting it -- "any violation of this order

5     may be deemed a contempt and punished by a fine of up to

6     $250,000.  Any imposed fine will be paid individually by the

7     person who violates this order.  A violator may not seek to

8     be reimbursed or indemnified for the payment the violator

9     has made.  If the violator is an attorney, the Court may

10    recommend to the appropriate professional disciplinary

11    authority that the attorney be sanctioned, suspended, or

12    disbarred."

13         That's the entire provision from the *Sysco* order.

14    And, you know, to our reading of that, it does not

15    distinguish between lawyers for the plaintiffs in this case

16    and the in-house lawyers for Google or the outside counsel

17    for Google.

18         We all take this very seriously, the information

19    that Google has produced in this investigation and will

20    produce in the litigation, is also equally, highly

21    sensitive, competitively valuable information.

22         And so we think, particularly in a case like this

23    where there is a great deal of press interest and there may

24    be temptations by those on the other side to talk about this

25    case in the press and release details, we think it is very

```
 1    important that everybody understand the severity of the
 2    potential sanctions that could arise here if there's a
 3    violation of the protective order.
 4              THE COURT:  Okay.
 5              MR. GREENE:  If I may, Your Honor, this is
 6    Tom Greene.
 7              THE COURT:  Sure.
 8              MR. GREENE:  Yes.
 9              I mean, in Sysco and Whole Foods, the focus was,
10    obviously, on concerns about in-house counsel, and properly
11    so.
12              I mean, you know, the idea that an in-house
13    individual would have access to competitors' and
14    counterparties' highly confidential information.  That was
15    thought to require -- of course, in Whole Foods and then, of
16    course, in Your Honor's own order in Sysco -- protection
17    with this $250,000 fine.
18              The interests are completely different.  I mean,
19    the concern in both cases was abuse of confidential
20    information by the party who was receiving them.  And the
21    interest of government lawyers and the government generally,
22    we don't have that same interest.  I mean, there is no value
23    to individuals involved here.
24              THE COURT:  Well, I guess, Mr. Greene,
25    I'm not sure I -- look, everyone -- depending on what your
```

1   position is, your incentives are different.

2          But, you know, the incentives, in some ways, are

3   equally applicable.  Not that I would suggest that -- not

4   that I could imagine a government lawyer would do this, but

5   there are government lawyers who are now in possession of

6   very valuable information that they could -- in theory, a

7   malefactor could seek to sell.

8          And that's not -- I can't imagine a lawyer from

9   the Department of Justice would even conceive of that, but,

10  nevertheless, that is a risk, given the nature of this case

11  and given the kind of information the government has in its

12  possession.

13         So, you know, I --

14         MR. GREENE:  If I may, Your Honor, I'm so sorry.

15         I think that the other point that I really wanted

16  to make was that both amongst our state partners and in the

17  Department of Justice, there's a webwork of constraints,

18  personnel rules and things of that nature, that constrain

19  our folks from releasing anything.

20         I mean, we have had, for example, highly

21  confidential information from both Google and the third

22  parties.  For six months to a year, we are in that same

23  situation, hundreds, literally hundreds of other

24  investigations and matters, and that information doesn't

25  leak.  I mean, that fact is, I think, the crucial aspect

1   here, and that is -- one of the reasons for that, I think,

2   is the professionalism of our folks.

3           But, in addition, there is this set of restraints

4   and confidentiality requirements, indeed, criminal

5   penalties, for releasing information, for example, that we

6   get under our CID authority.

7           So we are not without penalties that are

8   substantial and have worked.  So, from our perspective,

9   there's absolutely no need for this $250,000 penalty.

10          THE COURT:  Okay.

11          Look, I think the way we handled this in *Sysco* was

12  the right way to do this.  I don't think the potential

13  penalties ought to be asymmetrical.

14          You know, Mr. Greene is right that there are

15  certainly consequences and protections in place to avoid

16  this kind of behavior on the part of a Department of Justice

17  lawyer.  On the other hand, nothing is bulletproof.  And

18  I think adding this additional layer of protection, it is

19  simply what it is for all sides:  An attempt at an

20  additional protective measure to avoid the kind of conduct

21  that we all want to make sure does not happen and expect

22  will not happen in this case.

23          So I'll agree to an order that sort of imposes the

24  potential sanction to lawyers on all sides and not limit it

25  to simply the in-house counsel that's designated by the

1  defendant.

2          All right.  With that, is there anything else we

3  ought to talk about other than kind of next steps?  I think

4  we are all scheduled to be back together in the next few

5  weeks, I don't have the date in front of me, it looks like

6  on the 18th, to discussing scheduling.

7          So how about can you all get something to me, as a

8  revised protection order with the guidance that I've given

9  you, by the 14th?  And hopefully, you will have reached

10 agreement on that -- by that date and can simply submit an

11 order as to which there are no disputes.  If there are

12 disputes, you'll obviously have the opportunity to raise

13 those with me on the 14th.

14         What I'd ask, just in the interest of efficiency,

15 is that any -- that any draft of this be shared with the

16 third parties who've entered an appearance before the 14th

17 so that they too can make any objections known by the 14th

18 so that I have enough time to consider all of this, because

19 I'm really very interested in trying to resolve both the

20 protective order, finalize it, and then finalize our

21 schedule by the 18th so that everyone can hit the ground

22 running at the start of the new year.

23         Does that work as a schedule for everyone?

24         MR. GREENE:  Tom Greene again.

25         Yes, I think that works.

1              So a document on the 14th resolving, to the extent

2     we can, the issues you've presented to us, Your Honor.

3              And then discussion on the 18th, or is that what

4     you in mind?

5              THE COURT:  Yes.

6              And we have already set on the calendar on the

7     18th at 11:00 to discuss scheduling.  So that's why I was

8     asking for any -- to the extent there are going to be

9     additional issues with this revised protective order that

10    you just raised, that that be raised by the 14th.

11             MR. GREENE:  Certainly, Your Honor.

12             For the plaintiffs, we're good to go.

13             THE COURT:  Mr. Schmidtlein, does that work for

14    you?

15             MR. SCHMIDTLEIN:  It does, Your Honor.  Thank you.

16             THE COURT:  Okay.

17             All right.  Mr. Parker, does that time --

18             MS. GRAY:  Your Honor, this is -- I'm sorry.  This

19    is Megan Gray on behalf of DuckDuckGo again.

20             So I appreciate that you want the protective order

21    with DOJ and Google filed on the 14th.  But in my

22    experience, oftentimes things come down to the last minute.

23    And I'm concerned that we would have to file something, if

24    we saw something objectionable, within a couple of hours.

25             Would might the non-parties have until

```
1    December 15th to file something, if necessary?

2              THE COURT:  That's fine.

3              I mean, my hope is that the Department and Google

4    will share with you their draft in advance of the 14th so

5    that any objections that need to be made can be made by the

6    14th.

7              But I'm happy to give the third parties until the

8    15th, if you wanted that additional day, to submit any

9    concerns, okay?

10             MS. GRAY:  Thank you.

11             THE COURT:  Mr. Parker, does that schedule work

12   for you and the other third parties?

13             MR. PARKER:  Yes, it does, Your Honor.

14             THE COURT:  All right.  Very good.

15             All right, everyone.  Is there anything else we

16   need to take up this morning?

17             I think there's already a schedule in place for

18   you all to submit a proposed scheduling order, and then we

19   have the date -- we have the next date on the calendar for

20   the 18th.

21             So anything else for us to talk about this

22   morning -- or we're now in the afternoon.

23             MR. GREENE:  That's it, Your Honor.

24             MR. DINTZER:  Not on behalf of the United States.

25             THE COURT:  Mr. Green?
```

1           MR. GREENE:  No.

2           THE COURT:  Okay.

3           On behalf of Google, anything further?

4           MR. SCHMIDTLEIN:  No, Your Honor.  Thank you.

5           THE COURT:  Okay.

6           All right.  Thank you, all, very much, stay safe

7   and stay healthy and we'll look to getting back together in

8   a few weeks.

9           Thanks, everyone.

10           MR. DINTZER:  Thank you, Your Honor.

11           (Proceedings concluded at 12:24 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Please note:  This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.


Date:__December 3, 2020_____   /S/__William P. Zaremba_____

                               William P. Zaremba, RMR, CRR

DEPUTY CLERK: [1]
8/3
MR. DINTZER: [3]
16/7 59/24 60/10
MR. GREENE: [28]
16/13 17/4 17/8 19/2
19/4 19/23 21/12 21/18
23/10 23/15 23/17 25/9
25/25 27/24 28/15
42/10 45/25 46/22
49/18 50/13 51/14 54/5
54/8 55/14 57/24 58/11
59/23 60/1
MR. PARKER: [7]
35/19 36/23 37/5 37/10
38/11 38/14 59/13
MR. SCHMIDTLEIN:
[8] 29/8 32/12 34/2
46/24 52/5 53/1 58/15
60/4
MS. GRAY: [5] 48/3
48/5 48/7 58/18 59/10
THE COURT: [50] 8/2
9/10 16/11 17/3 17/7
19/1 19/3 19/5 21/4
21/14 23/6 23/11 23/16
25/7 25/10 27/23 27/25
29/2 31/16 33/23 35/8
36/22 36/24 37/6 38/10
38/13 38/15 43/11
46/11 47/10 48/4 48/6
48/11 50/3 51/6 51/22
52/7 54/4 54/7 54/24
56/10 58/5 58/13 58/16
59/2 59/11 59/14 59/25
60/2 60/5

$

$250,000 [4] 28/18
53/6 54/17 56/9

/

/S [1] 61/10

0

01 [1] 2/10
0101 [1] 1/20
0151 [1] 4/7
0340 [1] 1/16
0346 [1] 7/15

1

1.3 million [1] 37/7
1.5 million [1] 37/7
10-0101 [1] 1/20
1000 [1] 4/12
1024 [1] 2/16
1050 [3] 2/10 6/3 6/12
1100 [1] 1/15
11549 [1] 4/13
11:00 [2] 1/6 58/7
12 [1] 25/5
12:24 [1] 60/11
12th [1] 5/3
13th [1] 3/16
1400 [1] 7/5
1440 [1] 2/16

14th [9] 57/9 57/13
57/16 57/17 58/1 58/10
58/21 59/4 59/6
15 [2] 49/21 50/9
1549 [1] 4/14
15th [4] 4/18 6/16 59/1
59/8
1620 [1] 7/4
1674 [1] 4/19
1700 [1] 5/8
17th [1] 7/13
18 [2] 44/23 44/24
18th [5] 57/6 57/21
58/3 58/7 59/20
19 [1] 61/6
19301 [1] 6/21
1980s [1] 17/10

2

20 [1] 6/21
20-3010 [2] 1/4 8/4
200 [2] 2/5 2/16
20001 [1] 7/20
20005 [3] 5/4 6/8 6/17
20006 [2] 5/13 7/8
2001 [1] 7/8
20012 [1] 5/9
200151 [1] 4/6
20036 [3] 6/4 6/12 7/5
2019 [1] 25/1
202 [12] 1/16 5/4 5/9
5/13 6/4 6/9 6/13 6/17
6/22 7/5 7/9 7/20
2020 [2] 1/5 61/10
2026 [1] 4/8
206 [1] 7/15
2099 [1] 5/12
232-6309 [1] 3/7
26 [1] 17/16
265-2738 [1] 6/22
2738 [1] 6/22
29211-1549 [1] 4/14
2nd [1] 4/7

3

300 [1] 4/18
3010 [2] 1/4 8/4
302 [1] 3/6
307-0340 [1] 1/16
3090 [1] 3/17
317 [1] 3/7
323 [1] 2/4
32399-1050 [1] 2/10
3249 [1] 7/20
333 [1] 7/19
34-2 [1] 44/24
3518 [1] 6/13
354-3249 [1] 7/20
359-4223 [1] 3/12
371-7860 [1] 6/9
3847 [1] 2/11
39201 [1] 3/11
3970 [1] 4/14

4

401 [1] 3/16
406 [1] 4/8

414-3847 [1] 2/11
415 [1] 1/21
4223 [1] 3/12
434-5000 [1] 5/4
444-2026 [1] 4/8
45 [1] 43/8
450 [1] 1/19
452-1400 [1] 7/5
46204 [1] 3/7
4624 [1] 5/13

5

5000 [1] 5/4
501 [1] 2/6
502 [1] 2/17
508-4624 [1] 5/13
5108 [1] 7/9
512 [1] 4/19
5300 [1] 2/17
5407 [1] 7/5
545-0346 [1] 7/15
550 [1] 3/11
555 [1] 4/6
5608 [1] 7/13
583-9211 [1] 1/21
59620-0151 [1] 4/7
5th [1] 5/8

6

60 [5] 41/19 42/6 43/7
43/14 43/23
601 [1] 3/12
615 [1] 3/16
6309 [1] 3/7
64106 [1] 3/17
6503 [1] 7/19
682-8063 [1] 2/6
696-5300 [1] 2/17

7

7138 [1] 6/17
72201 [1] 2/5
725 [1] 5/3
734-3970 [1] 4/14
735 [1] 7/14
7860 [1] 6/9
78701 [1] 4/19

8

803 [1] 4/14
8063 [1] 2/6
816-889-3090 [1] 3/17
83 [1] 17/9
850 [1] 2/11
8503 [1] 6/4
8800 [1] 5/9
887-3518 [1] 6/13

9

900 [1] 7/4
901 [1] 6/16
912-5108 [1] 7/9
9211 [1] 1/21
936-1674 [1] 4/19
94102 [1] 3/17
947 [1] 17/14
955-8503 [1] 6/4
962-7138 [1] 6/17

98107 [1] 7/14

A

a.m [1] 1/6
ability [4] 18/21 38/8
45/5 45/13
able [7] 15/10 18/13
24/18 40/18 40/19 44/9
49/15
about [50] 9/15 9/17
10/8 11/5 11/6 12/3
13/3 13/10 14/17 15/7
16/2 18/6 18/7 19/7
20/6 21/8 21/16 21/20
22/11 22/24 28/1 28/21
29/3 29/23 30/6 33/3
33/14 33/14 35/5 36/9
37/20 37/22 39/7 40/16
41/11 41/16 43/24
45/19 48/15 48/18
48/21 48/24 49/2 49/5
52/11 53/24 54/10 57/3
57/7 59/21
above [2] 29/16 61/4
above-titled [1] 61/4
absence [1] 52/11
absolutely [4] 20/14
25/25 34/21 56/9
abuse [1] 54/19
access [8] 17/12 26/10
30/4 33/10 43/4 45/20
49/11 54/13
according [1] 25/2
accurate [1] 22/1
achieve [1] 34/9
acquisition [2] 24/16
24/18
acquisitions [3] 14/12
24/13 25/5
action [4] 8/4 11/15
11/21 51/12
actively [1] 18/19
activities [3] 22/10
22/20 24/1
activity [1] 23/24
actual [3] 11/23 22/6
25/10
actually [11] 14/18
19/20 19/24 21/24 22/2
22/7 23/21 42/17 47/22
49/2 49/22
Adam [2] 1/13 8/6
add [3] 28/13 33/25
47/14
adding [1] 56/18
addition [2] 29/14 56/3
additional [8] 31/8
35/1 39/23 47/14 56/18
56/20 58/9 59/8
address [2] 29/20
51/25
addresses [1] 11/19
addressing [1] 16/9
adopted [1] 13/25
advance [1] 59/4
advice [2] 22/21 34/16
advising [4] 14/6 14/11

advocacy [1] 20/17
Advocate [3] 17/1 17/5
17/7
afforded [1] 33/1
after [4] 35/2 36/14
37/22 40/20
afternoon [2] 35/14
59/22
again [12] 9/10 17/15
25/17 31/2 37/3 37/3
42/10 44/22 45/25
49/19 57/24 58/19
against [4] 11/21 36/17
47/9 47/9
agencies [1] 49/16
ago [1] 10/1
ago.mo.gov [1] 3/18
ago.ms.gov [1] 3/12
agree [6] 19/6 32/2
32/3 32/25 39/6 56/23
agreement [1] 57/10
Aguilar [2] 1/18 8/7
ahead [2] 23/10 33/24
aid [1] 42/24
aided [1] 7/2
Akzo [5] 17/2 17/4 17/6
17/7 17/9
al [2] 1/3 8/4
all [50] 9/11 9/13 10/8
10/19 11/1 13/21 14/19
14/25 15/22 16/4 18/4
22/22 28/13 29/18
30/11 30/13 30/15
30/15 31/3 31/3 31/13
32/25 33/8 33/8 35/14
38/5 38/14 38/15 40/4
41/13 44/13 48/17 49/4
49/12 52/8 52/13 53/18
56/19 56/21 56/24 57/2
57/4 57/7 57/18 58/17
59/14 59/15 59/18 60/6
60/6
All right [2] 52/8 59/15
allegations [2] 32/16
36/17
alleged [1] 18/17
allow [3] 16/22 33/10
44/1
allowed [1] 41/25
allows [2] 17/17 17/18
alluded [1] 47/2
almost [4] 13/6 13/11
18/4 21/22
along [1] 21/2
already [6] 21/2 49/10
49/11 49/16 58/6 59/17
also [19] 10/1 10/12
10/22 16/8 17/14 17/15
18/4 18/9 18/23 25/3
25/6 27/19 28/18 29/14
39/7 44/21 45/4 49/5
53/20
always [1] 28/9
am [6] 33/14 35/20
38/15 39/4 39/5 46/12
Amazon [1] 9/24
Amazon.com [2] 6/2

# A

**Amazon.com... [1]** 9/3
**ambiguous [1]** 12/22
**amended [1]** 44/10
**AMERICA [3]** 1/3 8/4 8/8
**AMIT [1]** 1/10
**amongst [3]** 18/2 24/25 55/16
**amount [4]** 11/23 42/8 42/17 42/23
**analogy [1]** 36/1
**analyses [1]** 31/10
**another [1]** 13/20
**answer [1]** 50/14
**antitrust [6]** 14/11 18/16 21/22 38/2 38/12 43/18
**any [35]** 11/4 11/4 11/5 12/13 12/14 13/12 14/25 14/25 22/22 27/13 28/20 32/11 34/6 34/7 35/5 35/15 37/12 38/25 41/2 44/19 45/6 48/7 51/10 52/1 52/10 52/19 52/22 53/4 53/6 57/15 57/15 57/17 58/8 59/5 59/8
**anybody [4]** 10/5 14/1 35/12 47/7
**anyone [3]** 14/18 37/4 41/10
**anything [12]** 28/13 33/24 35/12 36/9 45/19 45/22 50/12 55/19 57/2 59/15 59/21 60/3
**appearance [2]** 9/23 57/16
**APPEARANCES [7]** 1/12 1/22 2/18 3/19 4/20 5/15 6/23
**appeared [1]** 30/10
**appellate [1]** 11/5
**Apple [3]** 6/6 9/7 44/4
**applicable [1]** 55/3
**applied [1]** 47/6
**apply [2]** 47/5 49/5
**appreciate [4]** 10/19 10/22 29/2 58/20
**approach [2]** 46/17 46/19
**appropriate [10]** 20/11 21/16 39/14 40/10 40/12 40/14 42/8 42/23 44/8 53/10
**aptly [1]** 29/10
**AR [1]** 2/5
**are [84]**
**arguably [1]** 44/12
**arise [2]** 10/9 54/2
**arises [1]** 23/25
**Arkansas [2]** 2/2 8/12
**arkansasag.gov [1]** 2/7
**Armstrong [1]** 24/25
**ARPS [1]** 6/7
**as [51]** 9/24 9/24 10/13 11/10 11/12 12/7 13/2

14/17 14/18 15/12 15/23 19/25 21/23 22/9 22/21 24/6 24/24 25/3 27/9 28/2 28/5 28/12 30/1 33/8 33/21 33/22 33/22 33/22 34/4 34/4 37/8 37/10 37/20 40/5 41/22 42/6 43/17 44/6 44/9 46/2 46/6 48/2 50/24 52/22 57/7 57/11 57/23
**ask [7]** 16/17 19/12 25/12 40/4 44/9 49/7 57/14
**asked [4]** 12/6 12/9 12/24 44/4
**asking [3]** 28/6 50/12 58/8
**aspect [2]** 26/16 55/25
**aspects [1]** 9/17
**Assembly [1]** 4/12
**assessment [2]** 13/7 13/8
**Assistant [2]** 2/3 4/10
**association [1]** 22/20
**assuage [1]** 35/4
**asymmetrical [1]** 56/13
**attempt [1]** 56/19
**attention [1]** 47/7
**attorney [16]** 2/3 2/4 2/9 2/15 3/3 3/4 3/10 3/14 4/5 4/10 4/11 4/17 49/10 50/8 53/9 53/11
**Attorney General [1]** 50/8
**Attorney General's [1]** 49/10
**Attorneys [3]** 49/10 51/11 52/21
**attorneys' [1]** 11/11
**Austin [1]** 4/19
**authority [3]** 17/23 53/11 56/6
**authorize [1]** 40/2
**availability [1]** 11/24
**available [1]** 41/20
**Ave [1]** 1/19
**Avenue [7]** 4/6 5/12 6/3 6/8 6/12 7/13 7/19
**avoid [6]** 25/21 28/9 28/12 35/13 56/15 56/20
**aware [2]** 10/6 31/14

# B

**back [12]** 25/8 27/17 30/20 38/17 40/4 41/18 42/18 46/3 51/19 51/20 57/4 60/7
**backgrounds [1]** 34/23
**bad [2]** 14/25 37/4
**balancing [1]** 20/23
**ballgame [1]** 36/15
**based [4]** 13/11 30/10 31/11 40/9
**basic [1]** 22/25

30/4
**battles [1]** 33/19
**be [93]**
**Bear [1]** 44/20
**because [10]** 12/19 14/9 37/3 37/8 38/9 39/23 47/11 49/9 52/1 57/18
**become [2]** 10/1 28/2
**becomes [1]** 47/19
**been [32]** 9/14 10/2 10/17 12/13 12/6 13/23 14/4 14/5 14/22 21/8 25/18 27/21 29/11 30/1 30/3 30/11 30/17 31/20 32/23 33/13 34/17 34/19 34/25 35/16 37/17 39/13 39/18 40/7 40/7 40/9 41/1 43/22 45/23 57/16
**before [12]** 1/10 9/20 9/21 9/22 9/25 10/7 27/6 28/14 29/12 39/5 45/23 57/16
**begin [4]** 30/6 31/9 31/10 31/12
**behalf [6]** 9/23 35/21 39/25 58/19 59/24 60/3
**behavior [1]** 56/16
**beholder [2]** 12/22 13/18
**being [3]** 12/23 37/8 51/9
**belief [1]** 28/10
**believe [5]** 20/2 27/4 31/3 32/22 37/17
**believes [2]** 12/15 13/1
**belongs [1]** 38/23
**Benjamin [2]** 5/2 8/19
**best [3]** 17/1 20/11 28/25
**better [1]** 39/5
**between [3]** 16/3 28/3 53/15
**beyond [3]** 12/23 29/16 49/16
**bgreenblum [1]** 5/5
**Biagioli [2]** 3/14 8/15
**bifold [1]** 18/2
**big [2]** 16/2 40/24
**big-picture [1]** 16/2
**bill [1]** 39/19
**bit [4]** 25/11 45/1 46/8 49/1
**board [5]** 27/18 38/18 41/18 46/3 51/20
**both [8]** 29/10 40/20 45/2 50/5 54/19 55/16 55/21 57/19
**Box [2]** 4/6 4/13
**brain [1]** 38/1
**breadth [1]** 14/17
**Bret [2]** 4/16 8/18
**Bret.Fulkerson [1]** 4/20
**brief [2]** 35/21 50/4
**bring [2]** 11/21 18/21
**bringing [1]** 11/14

**broadly [1]** 14/13 38/20
**broadly [1]** 45/15
**bucket [1]** 38/23
**build [1]** 30/7
**Building [1]** 4/13
**bulk [1]** 32/23
**bulletproof [1]** 56/17
**business [5]** 18/7 31/24 34/16 40/1 45/12
**business's [1]** 32/1
**businesses [1]** 32/11

# C

**CA [1]** 1/20
**calendar [2]** 58/6 59/19
**call [3]** 36/1 37/16 43/17
**camera [1]** 15/16
**can [45]** 11/20 13/7 13/8 13/13 13/13 15/20 15/20 16/16 19/1 19/3 19/6 19/12 20/21 21/14 21/16 22/14 23/20 25/8 25/10 25/12 26/23 28/10 29/7 30/22 31/16 32/3 33/25 35/4 38/6 40/8 41/3 43/6 43/6 44/10 46/7 46/12 48/17 51/4 51/21 57/7 57/10 57/17 57/21 58/2 59/5
**can't [2]** 28/9 55/8
**candidate [1]** 23/1
**cannot [1]** 12/17
**capacities [1]** 14/7
**Capital [1]** 2/16
**Capitol [1]** 2/10
**capture [2]** 29/10 32/4
**captures [1]** 34/2
**carefully [1]** 10/11
**Carolina [3]** 4/10 4/12 8/17
**Carter [2]** 2/2 8/12
**carve [1]** 32/8
**case [37]** 9/19 11/3 11/17 13/2 13/10 14/5 16/24 17/2 17/11 18/3 19/10 19/10 19/16 19/22 19/22 29/13 29/24 30/7 31/8 31/12 31/15 31/20 32/13 32/16 32/24 33/5 33/21 34/12 34/18 37/22 41/2 52/4 53/15 53/22 53/25 55/10 56/22
**cases [14]** 11/1 17/1 17/3 18/9 18/11 23/20 25/18 27/22 30/11 30/11 34/13 34/25 37/18 54/19
**cast [1]** 51/19
**category [5]** 31/20 32/5 32/7 32/9 36/11
**cause [2]** 10/5 47/21
**causing [1]** 50/5
**Center [3]** 2/4 2/16 3/5
**CEO [1]** 25/1
**certain [1]** 48/14

**certainly [21]** 13/4 16/17 18/2 21/1 22/14 24/7 27/25 28/19 30/17 33/11 44/16 44/17 45/12 45/15 46/3 48/23 51/4 51/21 52/16 56/15 58/11
**Certified [1]** 7/17
**certify [1]** 61/2
**cetera [1]** 22/23
**challenge [1]** 26/16
**CHANCE [1]** 7/7
**Chief [1]** 4/3
**chosen [2]** 34/13 34/22
**Christopher [2]** 6/15 9/8
**CID [1]** 56/6
**Circa [2]** 17/10 24/25
**cited [1]** 18/10
**City [1]** 3/17
**civil [2]** 8/4 11/14
**claim [1]** 29/21
**Clark [2]** 2/14 8/11
**clear [2]** 11/12 16/24
**clearly [1]** 27/20
**client [3]** 11/23 22/20 24/19
**clients' [2]** 22/22 32/8
**CLIFFORD [1]** 7/7
**cliffordchance.com [1]** 7/10
**close [2]** 22/15 40/1
**co [4]** 50/1 50/17 51/11 51/17
**co-plaintiffs [4]** 50/1 50/17 51/11 51/17
**Coca [1]** 31/23 33/2
**Coca-Cola [2]** 31/23 33/2
**code [4]** 20/5 20/6 32/15 32/18
**Coke [1]** 35/25
**Cola [1]** 31/23 33/2
**colleagues [1]** 21/14
**collected [1]** 49/12
**COLUMBIA [2]** 1/1 4/14
**Comcast [2]** 6/15 9/9
**come [7]** 15/10 33/9 33/18 40/19 41/1 42/18 58/22
**comfortable [1]** 51/18
**commercial [2]** 17/18 36/3
**commercially [2]** 12/15 12/25
**COMMONWEALTH [2]** 2/15 8/11
**Commonweath [1]** 2/14
**communicate [1]** 26/13
**companies [3]** 30/8 31/9 31/10
**company [5]** 14/1 22/10 39/15 39/25 40/2
**company's [1]** 39/17
**compare [2]** 11/2

# C

compare... [3] 21/24 22/14 31/22
compete [1] 36/2
competition [2] 18/19 26/20
competitive [11] 12/20 13/23 14/16 21/20 21/25 22/16 32/1 32/10 34/11 39/8 45/5
competitively [3] 12/15 12/25 53/21
competitor [1] 22/24
competitors [1] 40/3
competitors' [1] 54/13
complaint [1] 36/16
complete [1] 43/4
completely [1] 54/18
complex [1] 22/18
complexity [2] 26/24 31/15
compliance [1] 14/8
complicated [1] 15/21
comply [1] 36/20
compromise [1] 31/25
computer [1] 7/22
computer-aided [1] 7/22
conceive [1] 55/9
concept [1] 21/8
conceptually [1] 20/2
concern [11] 10/5 11/7 15/25 16/20 25/16 29/22 41/14 52/1 52/2 52/2 54/19
concerned [5] 13/10 28/1 45/1 52/10 58/23
concerning [1] 45/22
concerns [15] 9/17 11/18 12/3 12/5 13/22 14/17 20/16 21/19 25/14 35/5 39/23 48/24 52/25 54/10 59/9
concluded [1] 60/11
conclusion [1] 27/18
conduct [2] 36/17 56/20
CONFERENCE [1] 1/9
conferring [1] 40/20
confidential [48] 12/4 12/8 12/10 12/11 12/13 12/21 13/15 13/15 13/20 14/24 16/23 25/22 25/23 26/23 27/8 27/10 28/3 28/7 28/7 30/16 30/21 31/4 34/6 36/10 36/25 37/8 38/18 40/22 41/21 41/21 42/14 42/21 42/22 43/1 43/21 43/25 46/8 47/18 48/9 48/22 49/2 54/14 54/19 55/21
confidentiality [6] 19/6 40/19 45/20 45/23 49/23 56/4
Connecticut [2] 6/3 6/12

CONNOLLY [1] 5/3
consent [2] 19/9 46/20
consequences [1] 56/15
consider [2] 43/8 57/18
consideration [2] 41/18 48/2
considered [3] 10/11 14/24 35/17
conspiracies [1] 50/24
consternation [1] 50/5
constitutes [4] 13/14 25/23 48/21 49/2
Constitution [1] 7/19
constrain [1] 55/18
constraints [1] 55/17
consult [1] 43/9
consulting [1] 34/16
Consumer [3] 3/10 3/15 4/4
consumption [1] 48/17
contact [1] 39/14
contempt [1] 53/5
context [2] 24/15 50/23
continue [1] 21/17
CONTINUED [6] 2/1 3/1 4/1 5/1 6/1 7/1
contracts [1] 18/20
contractual [1] 25/2
conversation [1] 26/15
core [3] 26/22 28/24 46/14
corporation [5] 6/15 8/24 9/9 11/21 11/22
correct [3] 34/21 46/10 61/3
correcting [1] 50/15
correctly [1] 39/24
corresponding [3] 22/23 23/3 23/3
could [17] 14/1 14/18 17/11 19/8 26/11 27/19 31/25 33/9 35/6 37/1 42/11 43/7 45/20 54/2 55/4 55/6 55/7
counsel [28] 9/25 14/4 14/6 14/7 14/10 16/22 21/23 22/5 24/19 24/24 26/10 30/4 35/11 35/15 38/2 38/2 40/10 40/14 43/4 43/18 44/5 44/25 46/9 46/21 52/20 53/16 54/10 56/25
counsel's [1] 22/19 22/21 45/5
counseling [1] 22/11
counselor [1] 24/14
counsels [1] 23/2
counterparties' [1] 54/14
counterparty [1] 26/13
couple [6] 32/20 55/22 41/16 44/3 51/20 58/24
course [11] 16/18 18/10 19/4 22/5 25/9 26/10 37/14 43/2 49/12

court [17] 1/1 7/16 7/18 11/6 16/10 17/10 17/11 17/15 17/17 17/22 18/14 19/9 40/20 42/18 46/20 53/9 61/7
Courthouse [1] 7/18
courtroom [1] 38/3
courts [1] 17/4
covers [1] 45/17
COVID [1] 61/6
COVID-19 [1] 61/6
cream [1] 43/18
create [2] 13/21 27/14
created [2] 29/12 29/21
creates [1] 23/4
Creighton [2] 5/7 8/20
criminal [1] 56/4
crop [1] 43/18
CRR [2] 61/2 61/11
crucial [2] 27/7 55/25
CRUTCHER [2] 6/3 6/11
cumbersome [2] 15/21 33/20
cure [1] 29/16
customers [1] 40/4
CV [1] 1/4

# D

D.C [12] 1/5 1/15 5/4 5/9 5/13 6/4 6/8 6/12 6/17 7/5 7/8 7/20
Danaye [1] 24/25
Daniel [2] 1/14 8/7
dare [1] 41/2
dark [1] 31/19
date [6] 44/18 57/5 57/10 59/19 59/19 61/10
DAVIS [1] 6/16
davispolk.com [1] 6/18
day [7] 22/10 22/10 34/15 34/15 37/21 38/11 59/8
days [9] 41/19 42/6 43/7 43/14 43/23 44/5 44/11 44/14 50/12
de [1] 41/10
de-incentivize [1] 41/10
deal [2] 24/9 53/23
dealing [1] 24/13
deals [1] 25/5
dealt [1] 52/19
December [1] 1/5 59/1 61/10
December 15th [1] 59/1
decide [1] 28/6
decides [2] 45/10 50/1
decision [9] 11/19 13/24 14/16 21/20 21/25 22/16 34/11 39/8 45/6
decision-making [8] 13/24 14/16 21/20

decisions [3] 22/22 30/6 31/7
declarations [1] 39/9
deemed [1] 53/5
defend [3] 29/13 38/8 39/15
defendant [12] 1/7 5/2 8/21 9/19 11/24 15/9 15/14 19/18 36/2 36/3 36/17 57/1
defending [3] 29/23 31/8 31/15
defense [1] 31/12
defined [1] 17/21
definition [47] 12/3 12/11 12/13 13/5 13/12 13/18 13/23 13/25 14/2 14/2 14/9 14/10 14/13 14/16 14/17 21/24 22/13 23/16 25/13 25/18 26/8 26/19 26/25 27/13 27/17 28/5 30/17 31/2 32/4 34/5 34/1 34/19 36/25 37/13 37/16 38/18 38/19 39/3 39/5 39/8 43/21 46/7 46/13 47/23 47/24 48/20 48/23
definitional [1] 19/7
definitionally [1] 15/6 26/25
delay [2] 21/13 43/14
DELORME [1] 7/3
denied [1] 46/8
Dennis [1] 4/13
deny [1] 11/22
DEPARTMENT [10] 1/14 1/19 50/1 51/5 51/10 52/21 55/9 55/17 56/16 59/3
depending [2] 30/25 54/25
depositions [1] 31/9
Deputy [1] 3/3
describes [1] 22/17
descriptions [1] 23/22
deserving [1] 12/20
design [1] 22/23
designate [4] 30/15 33/8 41/20 42/4
designated [8] 11/10 14/7 31/5 37/8 40/15 40/23 46/21 56/25
designating [1] 36/10
designation [18] 12/4 12/17 12/21 14/23 15/2 25/22 26/11 39/4 40/19 41/14 44/1 44/5 44/7 44/19 47/17 47/19 48/14 49/1
designations [6] 13/3 15/7 33/20 42/8 42/19 42/24
designee [1] 15/11
details [1] 53/25
determination [2]

determine [2] 12/24 13/14
Deutsche [1] 37/24
Diana [2] 1/18 8/7
Diana Aguilar [1] 8/7
did [4] 37/24 37/25 45/11 52/15
didn't [2] 21/7 21/9
difference [1] 40/13
differences [1] 13/19 36/15 43/6 54/18 55/1
difficult [2] 27/1 34/5
Dintzer [4] 1/13 8/6 16/6 50/14
directly [1] 20/22
disagree [1] 28/19
disbarred [1] 53/12
disciplinary [1] 53/10
disclose [1] 33/15
disclosed [1] 33/13
disclosure [5] 9/21 40/22 45/24 47/13 50/11
discourage [3] 47/20 48/14 48/25
discouraging [1] 47/17
discovery [2] 23/20 41/23
discrete [2] 31/20 35/15
discuss [3] 9/14 23/24 58/7
discussed [1] 35/16
discussing [2] 47/4 57/6
discussion [2] 20/13 58/3
discussions [1] 43/9
dispute [2] 16/3 41/15
disputes [5] 9/15 13/6 15/6 57/11 57/12
distinguish [1] 53/15
distinguishes [1] 36/13
distraction [1] 39/1
DISTRICT [3] 1/1 1/1 1/10
Division [1] 3/15
do [42] 10/10 15/14 15/22 17/23 17/23 18/20 22/6 22/7 23/19 23/21 23/23 26/4 27/19 28/17 28/23 31/1 31/8 31/9 31/10 31/12 34/1 36/22 36/24 37/9 37/23 38/5 38/5 38/16 40/12 40/18 41/10 42/12 42/17 43/6 43/6 43/7 44/9 45/13 46/6 50/25 55/4 56/12
document [5] 38/23 42/2 47/22 51/9 58/1
documents [11] 9/19 30/2 31/11 35/24 36/4 36/8 36/10 36/18 36/21 37/7 37/12 42/3 42/4 50/23

## D

does [14] 14/14 18/22 24/15 32/10 39/3 40/17 53/14 56/21 57/23 58/13 58/15 58/17 59/11 59/13
doesn't [2] 47/25 55/24
doing [6] 9/12 30/11 30/18 31/10 34/15 36/9
DOJ [2] 37/23 58/21
don't [34] 10/5 11/4 11/9 11/24 15/22 16/5 19/17 20/18 21/7 25/19 30/4 30/23 32/16 32/22 32/24 33/4 33/6 33/12 34/6 36/6 37/6 38/1 38/24 38/25 45/21 47/2 47/15 48/1 49/8 51/23 52/19 54/22 56/12 57/5
done [7] 27/16 35/4 36/20 37/23 38/11 41/3 51/9
down [1] 58/22
dozen [1] 29/25
draft [3] 19/25 57/15 59/4
drafted [1] 46/5
drawing [5] 27/16 38/17 41/18 46/3 51/20
drew [1] 21/22
Drive [1] 2/16
dropping [1] 43/8
DuckDuckGo [6] 6/20 6/20 9/2 48/5 48/8 58/19
duckduckgo.com [1] 6/22
due [8] 11/7 11/18 11/25 16/20 16/25 17/12 18/1 29/22
due-process [8] 11/7 11/18 11/25 16/20 16/25 17/12 18/1 29/22
DUNN [2] 6/3 6/11 35/20
during [1] 61/5
dust [3] 13/3 28/11 48/21
dust-ups [3] 13/3 28/11 48/21

## E

each [1] 30/3
earlier [2] 40/17 44/15
easier [1] 37/9
ECF [1] 44/23
Edward [1] 7/12
effective [1] 18/16
effectively [2] 10/13 33/22
efficiency [1] 57/14
efficiency's [1] 35/20
efficiently [1] 33/22
effort [3] 10/19 27/4 37/13
efforts [2] 11/1 15/23
eight [1] 35/21

either [5] 4/12 24/5 37/1 46/19 52/20
Elisabeth [1] 3/9
Elizabeth [1] 8/13
else [7] 28/13 33/25 45/19 45/22 57/2 59/15 59/21
else's [1] 20/7
Email [20] 1/16 2/6 2/11 2/18 3/12 3/18 4/8 5/5 5/5 5/10 5/15 5/14 6/5 6/9 6/13 6/18 6/22 7/6 7/9 7/15
embedded [2] 26/8 27/20
employee [1] 20/7
employer [1] 45/6
employment [1] 14/15
enable [1] 46/19
encompass [1] 45/15
endanger [1] 18/22
endeavoring [2] 26/4 26/18
enforcement [7] 11/14 18/16 49/16 49/24 50/4 50/20 51/3
engage [1] 45/5
engaged [1] 18/18
enough [5] 27/16 47/25 48/20 48/24 57/18
entered [3] 9/23 53/3 57/16
entire [1] 53/13
entirely [2] 13/19 30/18
entitled [2] 12/16 52/18
entity [1] 30/3
equally [2] 53/20 55/3
equities [3] 18/3 18/12 18/22
equity [8] 16/20 16/22 18/9 18/15 18/15 18/21 18/23 26/21
err [1] 15/2
essence [4] 22/4 24/20 31/23 32/10
essentially [4] 11/10 20/19 22/17 34/19
et [3] 1/3 8/4 22/23
et cetera [1] 22/23
even [8] 11/21 12/23 14/9 19/16 30/4 32/6 35/1 55/9
ever [1] 41/1
every [4] 30/8 34/20 37/21 38/11
everybody [8] 9/10 9/12 10/6 28/12 33/16 34/20 43/17 54/1
everyone [8] 8/2 10/18 28/1 54/25 57/21 57/23 59/15 60/9
everyone's [1] 38/22
everything [4] 10/10 26/10 35/4 45/17
evidence [3] 19/14 19/19 50/22
exact [1] 33/2

example [10] 14/14 14/15 20/4 20/4 21/23 23/12 50/18 50/22 55/20 56/5
exceed [1] 29/17
excellent [1] 30/13
exception [1] 47/18
exclude [3] 14/9 14/10 34/20
exclusionary [2] 18/20 36/17
excuse [1] 10/20
executive [1] 25/4
Exhibit [1] 21/6
expansive [1] 15/20
expect [2] 30/23 56/21
expectation [2] 27/2 30/8
expense [1] 30/24
experience [3] 30/10 30/14 58/22
experienced [2] 24/23 30/14
experts [1] 31/13
explicit [1] 26/9
express [2] 27/1 36/15 52/2
expressed [1] 25/14
ext [1] 7/5
extent [6] 13/5 15/8 40/13 51/9 58/1 58/8
extraordinary [1] 12/16
eye [2] 12/22 13/18
eyes [2] 11/11 11/25

## F

facing [1] 31/6
fact [5] 10/23 12/9 20/16 27/20 55/25
fair [2] 25/25 51/14
fairly [1] 41/10
faith [3] 14/25 27/4 37/4
fall [3] 14/2 14/15 36/11
family [1] 51/4
far [1] 30/10
fear [1] 14/23
fee [3] 47/18 48/8 48/25
fee-shifting [3] 47/18 48/8 48/25
fees [2] 48/9 48/10
few [3] 10/3 57/4 60/8
fewer [1] 34/24
Fifth [1] 3/6
fight [1] 33/19
figure [5] 23/20 29/7 33/25 44/13 47/22
figuring [1] 43/24
file [3] 49/15 58/23 59/1
filed [2] 9/16 58/21
filing [2] 23/13 44/14
filings [2] 23/23 27/5
final [2] 13/22 37/19

finally [1] 52/13
financial [1] 41/7
find [2] 17/11 19/18
fine [5] 28/18 53/5 53/6 54/17 59/2
finger [1] 34/3
firms [1] 40/11
first [6] 10/17 16/6 16/19 26/7 40/25 49/23
fit [2] 23/16 39/19
fits [2] 32/24 47/22
five [1] 45/4
fixing [2] 28/21 50/23
FL [2] 2/9 2/10
FLOM [1] 6/7
Floor [2] 3/6 4/7 5/8
Florida [2] 2/9 8/9
flower [2] 45/10 45/12
focus [5] 25/12 42/13 50/13 50/15 54/9
focused [2] 34/14 42/19
focusing [1] 33/16
folks [11] 20/21 24/9 36/19 39/18 40/6 42/23 43/5 47/21 47/21 55/19 56/2
following [2] 10/17 15/11
Foods [2] 54/9 54/15
foregoing [1] 61/3
formula [2] 33/2 35/25
formulated [1] 37/1
formulating [1] 31/12
forth [3] 29/17 30/17 44/24
forward [11] 12/3 13/2 15/10 15/23 18/7 18/7 20/11 29/7 34/1 39/18 43/13
forward-looking [2] 18/7 18/7
found [1] 40/1
frame [1] 17/11
Francisco [1] 1/20
Frankfort [1] 2/17
Franklin [2] 5/6 8/20
Franklin Rubinstein [1] 8/20
frankly [4] 25/20 34/23 38/21 42/11
Frequently [1] 23/18
Friday [1] 44/15
friend [1] 45/11
friends [4] 10/1 10/2 20/17 24/9
front [2] 57/5
frubinstein [1] 5/10
Fulkerson [2] 4/16 8/18
Fuller [1] 4/6
function [1] 40/11
further [1] 60/3
future [1] 36/1

## G

Gate [1] 1/19

Gdllaw.com [1] 7/6

general [18] 2/3 2/4 2/9 2/15 3/3 3/4 3/10 3/15 4/5 4/10 4/11 4/17 42/20 48/17 49/11 50/8 51/11 52/21
General's [1] 49/10
GENERAL/MO [1] 3/10
GENERAL/MS [1] 3/10
generally [2] 47/6 54/21
get [9] 9/21 10/18 11/18 15/20 16/1 16/3 19/15 25/10 28/20 29/5 30/5 34/8 37/1 42/4 43/19 43/25 45/7 45/20 51/19 56/6 57/7
gets [2] 13/25 27/8
getting [3] 41/23 60/7
GIBSON [3] 6/3 6/11 35/20
Gibson Dunn [1] 35/20
gibsondunn.com [2] 6/5 6/13
give [6] 20/4 24/19 26/2 27/12 42/16 59/7
given [9] 15/5 26/24 27/21 32/15 34/22 34/23 55/10 55/11 57/8 58/3
gives [2] 17/22 28/25
giving [1] 42/23
gmail.com [1] 7/21
go [19] 10/16 20/11 23/10 29/23 30/20 30/24 31/14 32/10 33/17 33/18 33/24 37/22 38/17 40/4 41/18 42/3 46/3 51/19 58/12
go ahead [2] 23/10 33/24
goal [1] 27/12
goes [1] 31/23
going [33] 11/22 14/21 15/15 15/15 16/9 26/20 26/21 29/15 29/20 30/5 30/14 30/19 30/20 30/23 30/24 31/6 32/25 33/5 33/7 33/15 34/1 34/1 34/4 35/14 39/18 42/5 43/20 43/25 43/25 45/10 47/3 47/5 58/8
Golden [1] 1/19
gone [1] 29/16
good [10] 8/2 8/3 9/10 16/12 16/13 20/14 27/4 27/16 58/12 59/14
good morning [3] 8/2 8/3 16/12
good-faith [1] 27/4
GOOGLE [42] 1/6 8/5 8/21 10/12 14/5 14/14 16/21 18/9 18/18 19/8 20/3 20/6 20/18 23/13 24/4 25/1 25/4 26/9 26/11 27/16 27/20 30/22 31/11 34/20 36/5 38/8 39/10 40/18 40/19 46/19 47/9 48/10 49/8

**G**

GOOGLE... [9] 50/5 50/19 53/16 53/17 53/19 55/21 58/21 59/3 60/3

Google LLC [2] 8/5 8/21

Google's [4] 28/19 37/21 41/24 42/1

got [5] 14/17 15/1 36/5 39/15 42/1

government [41] 3/5 11/8 11/13 11/16 11/20 14/8 16/5 17/24 18/13 19/5 19/8 19/10 19/21 23/11 24/10 24/11 24/12 29/12 30/1 34/6 34/14 39/11 40/21 42/2 42/7 44/7 44/22 45/7 45/18 47/8 47/9 49/7 49/14 50/7 50/10 52/20 54/21 54/21 55/4 55/5 55/11

government's [1] 44/6

government-informati on [1] 45/18

government-investigat ion [1] 34/14

grab [1] 20/1

grappled [1] 25/19

GRAY [6] 5/12 6/20 9/2 48/5 48/6 58/19

great [1] 53/23

greater [1] 12/20

Green [1] 59/25

Greenblum [2] 5/2 8/19

Greene [21] 1/18 8/6 16/8 16/12 19/1 21/17 23/7 25/7 27/23 28/14 29/6 32/14 34/12 42/10 45/25 47/1 49/19 54/6 54/24 56/14 57/24

GREENSTEIN [1] 7/3

ground [1] 57/21

GroupM [2] 7/2 9/4

guess [4] 34/10 51/7 52/15 54/24

guidance [6] 13/6 15/5 19/15 25/3 46/2 57/8

guys [1] 26/14

**H**

had [11] 29/6 34/23 39/11 39/24 41/1 44/4 45/11 47/1 49/11 52/16 55/20

half [1] 30/2

hammer [3] 10/21 51/24 52/9

hand [5] 26/12 28/10 41/5 48/23 56/17

handful [2] 30/9 30/9

handled [1] 56/11

happen [5] 26/12 30/19 37/21 56/21 56/22

happy [4] 35/11 35/17 52/24 59/7

hard [1] 2/1

harm [4] 26/20 26/20 26/21 27/15

harsh [1] 52/16

Hart [2] 3/9 8/13

hart.martin [1] 3/12

Hartner [2] 4/10 8/17

has [28] 9/23 11/3 11/4 11/6 11/16 12/6 14/10 18/18 24/16 26/9 27/21 29/6 33/14 34/25 37/23 39/10 39/15 42/2 42/7 43/17 44/22 45/11 46/15 46/18 47/8 53/9 53/19 55/11

hasn't [1] 35/16

have [93]

having [10] 14/20 16/21 20/18 24/24 25/3 25/16 28/17 30/11 34/7 46/16

he's [1] 16/9

healthy [1] 60/7

hear [3] 16/6 35/17 51/7

heard [1] 48/7

hearing [2] 51/13 61/5

heightened [1] 39/23

Helena [1] 4/7

helpful [4] 10/18 10/24 17/14 46/23

here [55] 10/16 11/7 11/18 15/6 15/9 15/20 15/23 16/21 16/24 18/2 20/9 21/21 22/6 25/11 25/16 25/21 26/4 26/14 27/12 27/18 28/23 29/11 30/13 30/17 33/3 33/16 34/1 34/9 34/22 35/8 35/13 35/14 35/24 36/15 36/19 36/21 37/1 37/19 37/20 37/23 38/25 40/17 41/23 42/6 43/12 43/14 44/2 44/20 44/23 45/7 50/20 51/21 54/2 54/23 56/1

here's [2] 38/15 38/16

Hi [2] 8/2 48/6

High [1] 3/11

higher [1] 43/25

highlight [1] 29/14

highly [38] 12/4 12/7 12/11 13/15 13/20 14/24 16/23 20/13 25/13 25/22 25/23 26/22 27/10 28/3 28/7 30/16 31/4 34/5 35/24 36/7 36/10 36/25 37/8 38/18 40/22 41/20 42/13 42/22 43/1 43/21 46/7 47/18 48/9 48/22 49/2 53/20 54/14 55/20 55/25 59/3

himself [1] 25/5

his [2] 9/23 10/2

hit [1] 57/21

Honor [4] 8/3 16/7 16/13 18/5 19/23 20/23

28/16 29/9 29/9 29/19 31/14 32/12 33/4 33/14 34/3 34/18 35/7 35/19 36/19 37/10 37/13 38/1 42/10 46/1 46/22 46/24 48/3 49/20 50/24 51/21 52/6 53/1 54/5 55/14 58/2 58/11 58/15 58/18 59/13 59/23 60/4 60/10

Honor's [1] 54/16

HONORABLE [1] 1/10

hope [2] 9/11 59/3

hopefully [2] 22/1 57/9

horizon [1] 15/19

horribles [1] 38/8

hours [1] 58/24

house [32] 14/4 14/8 14/14 15/11 15/17 16/22 17/12 19/11 19/14 22/5 23/12 30/22 34/15 34/20 39/14 40/10 40/14 40/23 43/5 44/5 44/19 44/25 45/5 45/9 46/9 46/21 49/24 52/18 53/16 54/10 54/12 56/25

how [16] 11/9 13/7 13/7 25/19 25/20 29/23 30/3 30/7 31/12 36/4 38/5 38/5 46/4 52/15 52/19 57/7

hundreds [2] 55/23 55/23

hurt [1] 26/23

hypothesize [1] 19/13

**I**

I also [1] 10/22

I am [3] 35/20 39/4 46/12

I believe [1] 37/17

I can [2] 13/7 19/12

I can't [1] 55/8

I didn't see [2] 21/7 21/9

I don't [2] 32/22 47/15

I don't have [1] 57/5

I don't recall [1] 52/19

I don't think [7] 19/17 32/16 32/24 33/4 33/6 38/25 49/8

I guess [1] 34/10 51/7 52/15 54/24

I have [6] 12/2 12/2 13/22 30/8 33/15 46/14

I hope [1] 9/11

I just [5] 10/4 15/1 30/22 33/12 35/22

I know [1] 25/17

I mean [15] 15/15 20/20 21/7 23/18 24/19 26/4 27/5 51/7 51/16 54/9 54/12 54/18 55/20 55/25 59/3

I should [2] 10/18 14/2

I take [1] 23/7

I think [75]

I understand [1] 46/6

I want [5] 25/21 36/12 45/8 47/14 48/16

I wanted [2] 10/21 41/17

I was [4] 19/25 21/6 37/24 58/7

I will [1] 25/15

I'd [8] 33/11 35/17 38/3 39/5 41/4 48/1 49/9 57/14

I'll [11] 10/15 16/6 37/3 40/4 44/9 44/12 45/2 47/11 51/23 52/8 56/23

I'm [42] 11/4 12/5 12/23 14/19 15/5 15/21 17/3 22/6 23/7 23/18 25/17 28/1 31/18 32/20 33/16 35/11 36/7 36/19 37/4 38/1 38/1 38/19 39/3 40/24 40/24 41/4 41/22 44/20 44/22 45/1 48/12 48/15 51/13 52/15 52/24 53/4 54/25 55/14 57/19 58/18 58/23 59/7

I'm just [2] 38/19 44/20

I'm not [7] 12/23 14/19 15/5 25/17 32/20 39/3 48/15

I'm not sure [2] 41/4 54/25

I'm sorry [2] 23/7 58/18

I've [10] 10/10 10/11 10/12 11/19 14/16 25/14 39/9 41/24 45/23 57/8

idea [2] 22/25 54/12

identical [2] 22/15

identified [8] 23/13 37/3 39/13 39/18 40/7 42/25 46/15 47/12

identify [4] 26/19 27/12 42/2 42/18

identifying [1] 43/20

imagine [2] 55/4 55/8

implicated [1] 11/18

implication [1] 17/22

implicitly [1] 24/18

important [6] 19/19 20/19 26/16 28/23 50/16 54/1

impose [1] 17/17

imposed [2] 35/1 53/6

imposes [1] 56/23

impression [1] 24/8

inadvertently [2] 31/25 41/4

inappropriate [1] 41/12

Inc [11] 6/2 6/6 6/11 6/20 6/20 7/12 8/22 9/1 9/2 9/3 9/7

incentives [1] 55/1 55/2

incentivize [1] 41/10

inclined [1] 50/7

include [3] 21/16 48/2 48/19

included [5] 19/24 20/2 21/2 47/16 48/16

includes [2] 22/16 22/19

including [1] 14/11

indeed [2] 22/2 56/4

indemnified [1] 53/8

Indiana [4] 3/2 3/4 3/5 8/10

Indianapolis [1] 3/7

indicate [2] 23/23 27/6

individual [4] 20/25 22/4 51/5 54/13

individually [1] 53/6

individuals [7] 23/23 24/6 24/23 25/10 35/5 52/17 54/23

industry [2] 20/20 26/24

inefficiencies [1] 39/2

information [77]

initially [1] 16/14

injure [1] 42/15

inside [4] 14/1 27/16 39/16 41/5

instance [4] 16/23 17/24 17/25 50/7

instead [1] 40/15

intention [2] 36/9 45/14

interest [11] 26/21 37/11 38/22 43/12 50/16 50/19 50/21 53/23 54/21 54/22 57/14

interested [3] 41/23 51/2 57/19

interests [2] 32/8 54/18

interject [1] 19/3

internal [2] 31/10 50/15

interrupt [3] 23/8 25/7 31/17

investigation [5] 30/1 30/16 34/14 51/1 53/19

investigations [6] 14/8 14/12 24/10 24/12 24/12 55/24

investigative [4] 14/6 14/7 24/1 49/15

invite [2] 39/2 47/25

involve [1] 22/21

involved [12] 13/10 23/24 24/16 30/11 34/17 38/24 39/1 39/20 39/21 39/25 41/1 54/23

involvement [1] 34/23

is [184]

is there [4] 22/7 45/22 57/2 59/15

issue [24] 11/20 13/11 16/9 16/19 17/9 19/7 20/5 29/3 29/7 31/8

**I**

issue... **[14]** 35/12 36/13 40/14 41/8 45/18 45/21 45/23 45/24 46/5 47/1 47/13 47/19 49/4 52/13

issues **[16]** 9/21 10/8 10/15 14/11 14/15 15/25 16/17 25/2 34/3 34/17 34/24 41/13 44/3 47/12 58/2 58/9

it **[86]**

it would be **[1]** 49/24

it's **[34]** 10/17 12/18 13/18 14/21 19/17 21/10 21/15 21/15 21/16 22/1 22/2 22/8 23/17 27/25 29/15 30/2 33/6 37/8 37/17 38/11 38/20 38/20 38/21 39/1 40/14 44/8 44/23 45/4 45/14 48/12 48/12 49/21 51/1 51/4

it's-in-the-eye-of-the-b eholder-type **[1]** 13/18

its **[6]** 9/11 11/16 23/13 26/11 48/9 55/11

itself **[12]** 12/21 19/18 39/16 47/24

**J**

Jackson **[1]** 3/11

James **[2]** 7/2 9/4

jds **[1]** 7/6

Jesse **[2]** 6/15 9/8

jesse.solomon **[1]** 6/18

Jim **[1]** 25/4

Jim Kolotouros **[1]** 25/4

job **[1]** 27/16

John **[4]** 5/2 8/19 46/24 53/1

Johnathan **[1]** 2/2

Johnathan.carter **[1]** 2/6

joined **[2]** 16/8 49/11

joint **[1]** 35/21

Jonathan **[1]** 8/12

Joseph **[2]** 6/6 9/6

jschmidtlein **[1]** 5/5

judge **[2]** 1/10 11/4

judges **[1]** 25/19

judgment **[1]** 31/13

just **[30]** 9/20 10/4 10/14 15/1 20/4 22/13 28/12 29/14 30/22 31/16 33/12 34/10 35/8 38/19 39/3 39/20 42/6 43/3 44/9 44/20 47/4 47/14 48/11 48/15 57/14 58/10

JUSTICE **[10]** 1/14 1/19 50/1 51/5 51/10 51/16 52/21 55/9 55/17 56/16

justify **[1]** 15/16

justin.clark **[1]** 2/18

**K**

Kansas **[1]** 3/17

keep **[4]** 21/12 26/7 35/14 51/3

keeping **[1]** 43/13

Kenneth **[2]** 1/13 8/6

kenneth.dintzer2 **[1]** 1/17

Kentucky **[3]** 2/14 2/15 8/11

kept **[1]** 49/24

key **[2]** 19/13 22/19

Kimberley **[2]** 3/14 8/15

kimberley.biagioli **[1]** 3/18

kind **[15]** 12/19 13/7 19/21 24/15 29/19 31/24 39/21 45/15 47/3 50/11 51/8 55/11 56/16 56/20 57/3

kinds **[3]** 20/10 42/14 51/1

Kipling **[2]** 7/12 8/25

klimarzi **[1]** 6/13

knew **[2]** 20/6 20/12

know **[68]**

knowledge **[1]** 24/19

known **[2]** 9/17 57/17

knows **[1]** 50/24

Kollios **[1]** 25/6

Kolotouros **[1]** 25/4

Kristen **[2]** 6/11 8/22

KY **[1]** 2/17

ky.gov **[1]** 2/18

**L**

language **[4]** 22/3 22/7 26/6 52/9

large **[2]** 11/21 11/22

last **[7]** 10/3 34/10 45/21 49/4 50/3 50/24 58/22

later **[2]** 25/11 44/18

law **[7]** 16/24 18/3 49/15 49/24 50/4 50/20 51/3

lawyer **[12]** 15/18 19/11 19/14 24/16 30/22 34/20 41/2 41/5 44/19 55/4 55/8 56/17

lawyer's **[1]** 45/13

lawyers **[20]** 23/12 30/12 30/13 32/6 34/15 34/22 34/24 35/13 38/4 39/9 39/13 40/23 41/4 43/16 45/9 53/15 53/16 54/21 55/5 56/24

lawyers' **[1]** 11/25

layer **[1]** 56/18

lead **[3]** 26/15 26/15 28/11

leads **[1]** 13/24

leak **[1]** 55/5

least **[13]** 15/12 17/11

23/20 25/2 27/22 40/9 44/6 47/21 52/8

leave **[5]** 44/12 45/3 45/10 51/23 52/8

leaves **[1]** 52/13

left **[1]** 27/1

legal **[1]** 34/16

less **[1]** 15/3

lesser **[1]** 12/17

let **[19]** 9/20 10/14 12/5 16/16 21/12 22/13 25/7 26/2 29/5 35/8 35/23 40/24 43/3 44/2 47/10 48/11 49/7 51/16 51/19

let's **[3]** 10/8 39/2 49/4

letting **[1]** 9/17

level **[2]** 19/6 27/9

levels **[1]** 15/1

lie **[1]** 18/12

light **[1]** 22/23

like **[19]** 13/4 13/5 15/10 15/14 15/15 15/25 32/21 33/22 35/12 36/14 38/17 39/5 40/10 43/15 44/21 45/13 50/19 53/22 57/5

likely **[3]** 30/25 32/2 48/21

Limarzi **[2]** 6/11 8/22

limit **[1]** 56/24

limitations **[1]** 61/7

limiting **[2]** 11/24 45/13

limits **[1]** 45/5

line **[2]** 18/5 35/10

lines **[1]** 21/3

lineup **[1]** 35/13

list **[1]** 51/10

listed **[3]** 24/24 25/3 50/9

literally **[2]** 38/11 55/23

litigate **[1]** 33/21

litigated **[1]** 47/20

litigating **[1]** 47/25

litigation **[15]** 14/12 19/15 23/25 23/25 24/10 25/23 32/13 34/14 38/22 38/25 39/17 39/21 49/13 49/25 53/20

litigators **[1]** 34/17

little **[4]** 2/5 25/11 45/1 49/1

livelihood **[1]** 41/8

LLC **[6]** 1/6 7/2 8/5 8/21 9/5 9/9

LLP **[7]** 5/3 5/12 6/3 6/7 6/11 6/16 7/7

log **[1]** 25/3

logs **[3]** 24/4 24/6 24/22

long **[5]** 41/22 41/22 42/7 42/24 43/15

look **[26]** 15/19 15/20 16/25 17/15 18/3 19/12 20/7 20/19 21/5 21/15 21/21 22/7 24/5 24/14

37/21 39/15 43/12 44/2 47/21 49/8 54/25 56/11 60/7

looked **[1]** 17/4

looking **[11]** 18/7 18/7 19/20 21/12 22/5 24/8 24/15 27/11 42/14 44/20 44/22

looks **[3]** 15/14 44/21 57/5

loser **[1]** 47/20

lot **[7]** 15/5 25/23 28/11 28/11 36/18 38/22 48/21

LUCHS **[1]** 7/3

Lynch **[2]** 6/15 9/8

**M**

made **[11]** 11/12 21/19 22/23 26/6 32/14 42/9 43/10 44/14 53/9 59/5 59/5

main **[2]** 16/2 51/16

majority **[2]** 30/21 33/11

make **[18]** 9/20 10/6 12/10 13/7 13/8 15/16 31/7 35/6 35/22 36/12 38/6 39/12 42/1 42/23 43/3 55/16 56/21 57/17

makes **[1]** 48/18

making **[12]** 13/24 14/16 21/20 21/25 22/16 28/8 30/6 34/11 39/8 42/25 45/6 50/10

malefactor **[1]** 55/7

manage **[1]** 10/20

managing **[1]** 23/25

many **[5]** 11/9 28/6 30/3 30/12 36/2

Marjorie **[2]** 7/12 8/25

Mark **[4]** 4/2 5/11 8/16 8/20

mark.popofsky **[1]** 5/14

market **[2]** 36/13 36/14

Martin **[2]** 3/9 8/13

material **[6]** 11/23 12/6 13/11 14/24 30/21 32/23

materials **[5]** 42/14 42/21 42/22 46/14 49/12

matter **[6]** 9/25 34/4 37/17 37/25 47/4 61/4

matters **[2]** 43/14 55/24

Matthew **[2]** 3/2 8/10

Mattioli **[2]** 4/2 8/16

may **[23]** 13/2 17/15 19/18 21/5 21/10 24/17 24/18 31/3 31/19 32/6 35/16 35/24 39/10 40/16 43/2 43/22 50/1 53/5 53/7 53/9 53/23 54/5 55/14

maybe **[5]** 10/9 21/14

me **[46]** 9/20 9/22 9/25 10/14 10/20 11/3 12/5 13/6 13/7 13/24 16/16 21/12 21/15 22/13 23/14 25/7 26/2 29/5 31/19 33/20 35/8 35/23 38/8 39/12 40/9 40/24 41/21 42/6 42/7 43/3 43/15 44/2 44/16 44/20 47/10 48/11 48/13 48/23 49/7 49/9 50/15 51/16 52/3 57/5 57/7 57/13

MEAGHER **[1]** 6/7

mean **[26]** 11/13 14/13 15/15 17/10 18/1 19/12 20/20 21/7 23/18 24/19 25/15 26/4 27/5 28/17 41/6 46/12 50/11 51/7 51/16 54/9 54/12 54/18 54/22 55/20 55/25 59/3

means **[3]** 13/14 22/9 28/2

meant **[1]** 14/25

measure **[1]** 56/20

mechanical **[1]** 7/22

mechanism **[8]** 15/9 15/12 15/13 19/18 19/22 21/7 40/17 47/15

mechanisms **[3]** 29/18 43/13 48/14

Media **[1]** 9/9

meet **[3]** 14/2 29/17 43/20

meeting **[1]** 40/20

megan **[5]** 6/20 6/22 9/2 48/5 58/19

MEHTA **[1]** 1/10

memory **[1]** 52/24

mentioned **[3]** 21/8 21/22 24/6

merger **[1]** 36/14

mergers **[4]** 14/12 24/13 39/21 39/25

Merit **[1]** 7/17

messy **[1]** 15/20

Michael **[2]** 7/12 8/25

Michaloski **[2]** 3/2 8/10

might **[8]** 13/19 15/12 32/20 32/21 36/14 41/11 47/20 58/25

mike **[1]** 7/15

million **[3]** 30/2 37/7 37/7

mind **[7]** 26/7 32/17 33/6 33/6 46/14 48/24 58/4

minimize **[1]** 13/4

minute **[1]** 58/22

missed **[5]** 15/12 21/5 21/10 40/16 45/23

Mississippi **[2]** 3/9 8/14

Missouri **[3]** 3/14 8/15

misuse **[2]** 41/3 41/8

mmattioli **[1]** 4/8

MO **[2]** 3/15 3/17

**M**

Mobile [4] 7/12 9/1
37/17 37/25
model [1] 11/2
modest [1] 49/2
moment [5] 16/1 19/7
31/17 32/16 35/9
momentarily [1] 29/4
monopolization [1]
18/18
Montana [3] 4/2 4/5
8/16
months [1] 55/22
more [8] 10/3 15/3
20/22 22/18 24/23
39/10 39/20 49/1
morning [9] 8/2 8/3
9/10 9/11 9/13 16/12
16/13 59/16 59/22
most [4] 9/24 18/6
20/19 42/21
move [2] 13/2 15/23
moving [1] 43/13
Mr. [36] 9/22 9/25 10/2
16/6 16/12 19/1 21/17
23/7 25/2 25/7 27/23
28/14 28/14 29/5 29/6
31/16 32/14 33/24
34/12 36/22 36/24 38/7
42/12 46/15 47/1 47/11
49/9 50/14 51/24 51/25
54/24 56/14 58/13
58/17 59/11 59/25
Mr. Dintzer [2] 16/6
50/14
Mr. Green [1] 59/25
Mr. Greene [13] 16/12
19/1 21/17 23/7 25/7
27/23 28/14 29/6 32/14
34/12 47/1 54/24 56/14
Mr. Parker [8] 9/22
9/25 10/2 36/22 36/24
46/15 58/17 59/11
Mr. Pichai [1] 25/2
Mr. Schmidtlein [9]
28/14 29/5 31/16 33/24
47/11 49/9 51/24 51/25
58/13
Mr. Schmidtlein's [2]
38/7 42/12
MS [2] 3/10 3/11
Ms. [3] 24/25 25/6 48/6
Ms. Danaye-Armstrong
[1] 24/25
Ms. Gray [1] 48/6
Ms. Kollios [1] 25/6
MT [1] 4/7
mt.gov [1] 4/8
much [4] 16/14 22/18
25/16 60/6
my [23] 10/1 10/14
10/25 11/12 16/1 21/13
25/16 28/25 29/6 30/10
30/14 37/3 37/19 38/1
41/1 41/4 43/12 44/2
44/20 48/24 52/24
58/21 59/3
myfloridalegal.com [1]
2/12

**N**

N.W [1] 6/3
narrow [9] 32/5 32/14
32/17 33/10 37/1 42/19
46/7 47/24 48/20
narrower [1] 47/22
narrowing [1] 39/8
narrows [2] 46/13
46/13
natural [1] 15/2
naturally [1] 32/6
nature [5] 32/15 32/15
32/22 55/10 55/18
NBCUniversal [1] 9/9
nearly [3] 30/15 31/3
33/8 45/17
necessarily [2] 14/19
47/15
necessary [1] 59/1
need [17] 15/17 15/19
18/13 20/4 20/10 20/18
20/22 20/25 23/18
33/17 33/18 40/17
47/15 48/1 56/9 59/5
59/16
needed [1] 20/7
needs [8] 15/9 16/20
17/23 18/14 18/24
19/14 39/16 48/16
negotiate [2] 36/4 45/3
negotiating [1] 9/15
18/8
nevertheless [1] 55/10
new [2] 6/8 57/22
next [6] 21/19 40/8
47/3 57/3 57/4 59/19
nice [1] 9/11
Nickelsburg [1] 7/7
8/23
no [26] 1/4 13/6 13/11
15/12 15/13 16/25
17/12 19/19 19/23 20/2
20/14 24/5 36/9 36/16
37/5 39/4 43/23 44/17
49/18 49/20 50/14
54/22 56/9 57/11 60/1
60/4
non [20] 6/2 6/6 6/11
6/14 6/19 7/2 7/7 7/11
8/22 8/23 8/25 9/3 9/4
9/6 9/9 9/24 10/22
10/23 12/6 58/25
non-parties [4] 10/22
10/23 12/6 58/25
non-party [16] 6/2 6/6
6/11 6/14 6/19 7/2 7/7
7/11 8/22 8/23 8/25 9/3
9/4 9/6 9/9 9/24
none [1] 41/14
not [62]
note [1] 61/5
notes [2] 44/2 44/20
nothing [3] 14/14
36/20 56/17
notice [11] 20/12 28/20
44/11 49/6 49/7 50/7
50/11 50/25 51/8 52/11
52/11
notwithstanding [1]
41/24
now [8] 39/20 41/24
43/19 43/24 44/12
45/11 55/5 59/22
number [6] 10/23 11/9
15/24 18/10 35/10 36/5
NW [11] 1/15 5/3 5/8
5/12 6/8 6/12 6/16 7/4
7/8 7/13 7/19

**O**

oag.texas.gov [1] 4/20
object [5] 44/5 44/7
44/10 44/19 50/14
objecting [2] 23/11
49/8
objectionable [1]
58/24
objections [3] 39/10
57/17 59/5
objective [2] 12/11
13/14
objectively [1] 12/24
observation [3] 12/1
12/2 13/22
observations [1] 29/6
obtain [1] 19/9
obvious [2] 24/11 43/2
obviously [10] 10/10
12/22 13/9 17/16 18/17
26/21 27/6 46/18 54/10
57/12
occasion [2] 10/3 22/8
occurred [2] 48/13
61/5
occurs [1] 24/11
October [1] 25/1
off [1] 49/23
office [10] 2/3 2/14 3/3
3/9 3/14 4/3 4/4 4/11
4/17 16/9
Official [1] 7/18
oftentimes [1] 58/22
okay [18] 9/10 16/11
21/4 29/2 33/23 38/10
38/13 43/11 48/22 51/6
51/22 52/7 54/4 56/10
58/16 59/9 60/2 60/5
once [1] 44/16
one [34] 9/20 10/3 11/3
11/12 11/15 12/1 12/12
13/19 20/16 21/14
21/16 24/2 24/10 24/23
25/18 28/5 28/21 30/2
31/17 37/11 37/16
37/22 40/13 40/15
41/19 42/12 47/14 47/15
48/1 56/1
only [9] 11/11 11/25
11/25 17/19 20/6 36/20
41/6 44/7 47/9
open [4] 33/11 43/8
45/10 46/16
opens [1] 38/21
operations [1] 40/2
opinion [1] 59/16
opinions [1] 11/13
opportunity [5] 16/14
22/8 22/9 39/12 57/12
oppose [1] 28/17
opposed [6] 14/20
19/8 19/21 25/17 50/10
51/8
Oracle [2] 7/7 8/23
order [30] 9/14 9/16
9/18 9/19 10/21 15/13
19/25 21/9 29/11 41/17
44/10 44/17 45/12
46/20 47/7 47/17 48/25
49/21 53/4 53/7 53/13
54/3 54/16 56/23 57/8
57/11 57/20 58/9 58/20
59/18
orders [3] 17/17 26/5
37/20
ordinary [1] 22/5
other [28] 14/15 18/12
20/17 24/3 24/9 24/21
25/18 25/19 28/10 29/3
34/25 36/10 36/20
37/18 37/23 41/16 44/3
45/6 47/1 47/12 48/22
51/20 53/24 55/15
55/23 56/17 57/3 59/12
others [3] 17/13 18/2
24/25
ought [4] 38/16 39/7
56/13 57/3
our [34] 15/11 15/22
16/8 17/21 18/14 18/20
18/23 19/24 20/17 24/8
24/9 24/21 28/21 30/7
31/12 31/12 35/21
37/10 37/11 42/20 43/4
46/4 50/1 50/17 51/15
51/17 51/21 53/14
55/16 55/19 56/2 56/6
56/8 57/20
ourselves [1] 29/23
out [14] 10/9 10/21
11/3 23/20 29/7 32/8
34/1 43/24 44/13 47/22
48/2 48/17 51/24 52/9
outset [1] 10/19
outside [8] 14/2 14/6
26/10 30/4 43/4 51/10
52/3 53/16
outside-counsel [1]
30/4
over [15] 10/3 14/23
15/19 25/22 25/23
26/11 26/14 27/15 28/2
33/19 33/19 38/22
47/17 48/14 49/1
over-designation [6]
14/23 25/22 26/11
47/17 48/14 49/1
over-reliant [1] 28/2
overlooked [1] 21/10
overseeing [1] 34/18
overstated [1] 38/9
overwhelming [3]
30/21 32/23 33/10
own [2] 28/8 54/16

**P**

P.C [1] 7/3
p.m [1] 60/11
P.O [2] 4/6 4/13
PA [1] 6/21
page [5] 30/20 30/20
37/21 44/23 44/24
paid [2] 48/10 53/6
Palmer [2] 2/9 8/9
pandemic [1] 61/6
Paoli [2] 6/21 6/21
papers [2] 9/17 37/21
parade [1] 38/8
paragraph [3] 49/21
50/4 50/9
paraphrase [2] 21/25
22/2
Parker [12] 6/2 9/3
9/22 9/23 9/25 10/2
35/19 36/22 36/24
46/15 58/17 59/11
part [10] 14/25 20/23
22/9 26/8 27/4 30/1
37/4 49/17 50/16 56/16
participate [1] 37/12
participated [1] 14/10
participation [1] 22/21
particular [7] 10/23
11/6 20/7 20/18 27/2
33/16 38/23
particularized [4] 20/4
20/10 20/22 20/25
particularly [6] 11/15
38/3 38/4 41/22 51/2
53/22
parties [62]
partners [1] 55/16
party [27] 6/2 6/6 6/11
6/14 6/19 7/2 7/7 7/11
8/22 8/23 8/25 9/3 9/4
9/6 9/9 9/18 9/24 12/14
13/8 13/12 13/19 13/20
19/9 23/4 26/14 34/7
54/20
patent [1] 32/13
patent-litigation [1]
32/13
path [1] 29/7
pause [2] 35/8 47/10
paying [1] 48/9
payment [1] 53/8
pays [1] 47/20
peek [1] 16/15
penalties [3] 56/5 56/7
56/13
penalty [2] 41/7 56/9
pencils [2] 46/4 51/21
Pennsylvania [1] 5/12
people [6] 20/19 31/9
34/13 36/18 39/16 49/1
Pepper [3] 3/9 8/13
perhaps [1] 48/1
period [2] 41/19 41/22
periods [1] 45/2
permitted [2] 34/25
44/7

**P**

person [4] 20/6 23/1 40/2 53/7
personnel [1] 55/18
perspective [10] 10/25 17/21 18/15 18/20 18/24 22/25 28/8 28/25 43/5 56/8
pertains [1] 22/11
petition [1] 19/9
phase [1] 14/6
phrase [1] 22/17
Pichai [1] 25/2
picture [1] 16/2
pieces [1] 42/15
Pike [1] 6/21
PI [1] 2/10
PI-01 [1] 2/10
place [4] 48/14 52/17 56/15 59/17
placed [1] 29/12
places [1] 24/11
Plaintiff [9] 2/2 2/8 2/13 3/2 3/8 3/13 4/2 4/9 4/16
plaintiffs [10] 1/4 1/13 18/12 50/1 50/17 51/11 51/17 52/4 53/15 58/12
plans [3] 18/7 18/8 36/2
playbook [2] 36/1 36/8
Please [1] 61/5
PLLC [1] 7/13
point [13] 12/10 19/18 21/15 21/19 25/25 28/19 34/10 35/18 36/12 37/19 38/3 43/2 55/15
points [6] 28/16 28/24 29/1 29/9 35/22 42/12
POLK [1] 6/16
Popofsky [2] 5/11 8/20
pose [1] 34/24
poses [1] 39/22
position [10] 9/16 19/18 32/1 32/10 33/15 37/7 39/13 42/1 51/15 55/1
positions [1] 10/11
possession [2] 55/5 55/12
possible [2] 21/1 48/8
potential [9] 21/23 24/12 24/16 26/16 28/21 48/25 54/2 56/12 56/24
potentially [4] 27/14 35/6 42/15 47/17
practical [2] 34/4 37/11
pragmatically [1] 27/22
precise [1] 23/19
precisely [2] 26/5 37/23
prefer [2] 35/13 37/13
prepared [2] 15/22 39/6
present [2] 15/10

presented [4] 19/14 40/9 48/23 58/2
press [2] 53/23 53/25
presumably [1] 26/12
presumed [1] 49/10
price [2] 28/21 50/22
pricing [1] 22/22
primarily [1] 50/20
principal [1] 28/15
Principato [1] 1/14 8/7
priv [1] 24/6
privilege [2] 24/4 24/22
probably [1] 9/24 28/25
problem [5] 21/23 23/4 32/3 33/12 38/2
problematic [1] 40/8
problems [3] 13/21 29/10 29/20
proceed [3] 9/20 10/7 20/15
proceedings [1] 1/9 7/22 60/11 61/4
process [18] 11/7 11/18 11/25 16/20 16/25 17/12 18/1 26/8 26/9 27/3 27/20 28/1 28/2 29/22 33/13 33/21 42/24 43/3
produce [1] 53/20
produced [9] 7/22 12/7 29/25 30/3 30/15 32/23 33/1 36/18 53/19
product [2] 22/22 36/1
production [4] 30/25 33/17 41/25 42/5
professional [1] 53/10
professionalism [1] 56/2
prolong [1] 42/5
proof [1] 18/18
properly [1] 54/10
propose [1] 29/18
proposed [15] 11/16 12/13 13/23 14/5 14/22 20/9 29/11 34/7 34/19 34/25 39/10 39/24 44/23 47/8 59/18
proposing [1] 11/8
prosecutorial [1] 28/22
prosecutors [1] 28/18
protect [9] 17/23 18/10 18/13 18/14 30/18 32/7 36/21 48/9 50/20
protected [4] 16/20 18/4 18/24 49/23
protecting [2] 37/11 51/2
protection [11] 3/10 3/15 4/4 12/20 15/3 15/3 27/9 27/9 54/16 56/18 57/8
protections [2] 12/16 56/15
protective [20] 9/14 9/16 9/18 10/9 10/21 15/13 21/9 29/11 37/20

protects [1] 49/22
protracted [1] 33/18
provide [5] 12/17 26/19 27/14 29/15 50/25
provided [7] 10/24 22/12 24/4 24/24 25/3 31/21 53/3
provides [2] 12/21 13/6
providing [2] 34/16 50/11
provision [18] 17/16 21/2 27/2 34/12 47/5 47/6 47/8 47/18 48/8 48/25 51/8 52/11 52/12 52/17 52/20 52/22 53/3 53/13
public [1] 18/15
punching [1] 31/18
punished [1] 53/5
purposes [3] 12/1 49/25 50/5
put [9] 10/4 10/20 12/3 32/7 34/3 47/10 48/1 48/13 48/16
putting [3] 41/6 41/8 43/13

**Q**

qualifies [1] 32/21
question [5] 22/4 43/5 47/4 49/7 51/17
questions [1] 16/17
quick [1] 9/20
quite [3] 13/24 16/24 17/14
quotes [1] 22/2
quoting [1] 53/4

**R**

raise [7] 26/11 35/12 35/16 41/4 41/17 47/3 57/12
raised [6] 28/24 29/10 33/14 48/24 58/10 58/10
Rancour [2] 6/6 9/6
range [1] 14/11
rather [4] 13/1 21/13 28/12 40/12
re [1] 30/20
re-review [1] 30/20
reached [1] 57/9
reaction [1] 29/5
reactions [3] 10/16 16/3 47/15
read [7] 10/10 11/19 22/13 27/6 34/12 34/13 44/6
reading [2] 42/21 53/14
real [4] 12/2 14/17 19/19 27/14
really [20] 11/5 12/21

26/19 27/1 31/21 31/23 31/24 32/10 40/7 41/10 41/14 42/5 42/15 42/25 55/15 57/19
Realtime [1] 7/17
reason [3] 19/12 42/7 42/23
reasonable [1] 28/10
reasonable-belief [1] 28/10
reasonably [2] 12/14 13/1
reasons [2] 40/6 56/1
Rebecca [1] 4/10 8/17
recall [4] 38/2 52/15 52/16 52/19
receive [4] 40/3 50/6 50/23 52/18
receiving [2] 44/11 54/20
recipe [1] 31/23
recognize [4] 18/10 28/9 41/3 45/6
recognized [1] 43/18
recognizing [1] 32/6
recommend [1] 53/10
record [2] 10/4 61/3
recorded [1] 7/22
records [4] 19/10 41/25 42/6 43/24
redefinition [1] 37/12
redirect [1] 25/8
redline [3] 44/6 44/22 44/23
redlined [1] 21/6
reference [1] 32/14
reflect [1] 44/10
reflection [1] 51/15
refreshed [1] 52/24
regard [1] 20/8
Registered [1] 7/17
regulatory [1] 23/24
reimbursed [1] 53/8
reiterate [1] 35/23
relate [1] 24/17
related [1] 24/10
relates [1] 23/2
relationship [2] 10/6 22/20
relationships [1] 36/3
relatively [1] 30/9
release [1] 53/25
releasing [2] 55/19 56/5
reliant [1] 28/2
rely [1] 27/19
remain [1] 35/2
remaining [1] 9/15
Rembert [1] 4/13
remedies [1] 11/16
remember [1] 39/23
remotely [1] 61/7
reply [1] 10/13
Reporter [2] 7/16 7/17 7/17 7/18
reporting [1] 61/7
represent [1] 30/12

representing [2] 33/7 37/24
represents [1] 26/13
request [2] 40/21 41/25
requests [1] 42/2
require [2] 27/13 54/11
requirement [1] 49/22
requirements [1] 56/4
requires [1] 42/13
requiring [1] 48/12
reserved [1] 11/16
resolve [2] 19/16 57/19
resolving [1] 58/1
resources [1] 15/23
respect [5] 17/12 17/17 18/4 49/25 52/20
respectfully [2] 33/4 38/7
responses [1] 21/13
responsive [2] 42/3 42/4
rest [1] 32/25
restraints [1] 56/3
restrictions [4] 35/1 35/2 41/9 44/25
restrictive [1] 45/8
reveal [1] 33/17
revealed [2] 17/19 17/19
review [4] 11/23 16/22 30/6 30/20
reviewed [2] 10/12 39/9
reviewing [1] 21/6
revised [2] 57/8 58/9
revisit [1] 39/22
rhartner [1] 4/15
Richard [3] 6/2 9/3 9/23
Richard Parker [1] 9/23
Rick [1] 35/19
right [25] 9/13 10/8 16/21 15/9 17/12 23/6 25/25 26/5 27/18 28/13 38/14 38/15 41/13 41/24 49/4 52/5 52/8 52/13 56/12 56/14 57/2 58/17 59/14 59/15 60/6
rights [3] 17/24 18/2 26/9
ripe [1] 39/1
risk [2] 41/7 55/10
RMR [2] 61/2 61/11
roadblocks [1] 29/15
Rock [1] 2/5
role [1] 27/21
Room [1] 7/13
ROPES [1] 5/12
ropesgray.com [1] 5/14
roughly [1] 30/2
rparker [1] 6/5
Rubinstein [2] 5/6 8/20
Rule [1] 17/16
Rule 26 [1] 17/16
rules [1] 55/18

**R**

running [2] 44/18
57/22

**S**

Sadowski [2] 7/2 9/4
safe [1] 60/6
safety [1] 46/18
said [4] 28/5 33/8
34/18 37/10
sake [1] 35/20
same [4] 27/9 33/2
54/22 55/22
San [1] 1/20
sanction [4] 47/5 47/6
47/8 56/24
sanctioned [1] 53/11
sanctions [8] 41/1 49/5
52/14 52/14 52/17
52/19 52/22 54/2
satisfied [1] 38/19
satisfies [1] 52/10
satisfy [2] 14/18 34/8
saw [2] 50/22 58/24
say [24] 10/18 10/21
12/5 14/3 14/19 15/10
18/1 19/5 23/17 26/14
28/21 29/6 30/20 34/10
36/4 37/3 37/15 38/4
40/24 43/16 45/9 48/11
50/18 51/4
saying [6] 23/18 32/20
39/3 39/4 46/12 51/7
SC [1] 4/14
scag.gov [1] 4/15
scenario [1] 45/16
schedule [5] 9/13
57/21 57/23 59/11
59/17
scheduled [1] 57/4
scheduling [3] 57/6
58/7 59/18
Schmidtlein [13] 5/2
8/19 28/14 29/5 31/16
33/24 46/25 47/11 49/9
51/24 51/25 53/2 58/13
Schmidtlein's [2] 38/7
42/12
scope [1] 37/2
Scott [1] 8/9
scott.palmer [1] 2/12
screighton [1] 5/10
searching [1] 22/6
Seattle [1] 7/14
second [4] 12/2 26/18
27/7 36/12
secrecy [1] 26/22
secret [1] 50/24
secrets [4] 17/18 18/6
20/19 24/17
section [1] 17/22
see [10] 16/4 16/16
20/18 21/7 21/9 25/8
33/12 33/13 34/6 39/5
seeing [2] 20/17 24/22
seek [2] 53/7 55/7
seem [2] 39/18 52/2
seems [7] 13/6 23/14

seen [5] 10/3 24/8
24/16 34/24 50/18
selection [1] 32/18
sell [1] 55/7
send [2] 27/17 28/20
senior [1] 25/4
sense [6] 12/18 26/6
27/13 42/20 43/10
48/18
sensitive [12] 12/5
12/15 12/19 12/25
12/25 18/6 20/13 32/9
35/24 36/7 40/3 53/21
serious [1] 41/7
seriously [1] 53/18
serve [1] 40/10
set [6] 18/12 29/17
30/17 42/21 56/3 58/6
sets [1] 44/24
seven [1] 50/12
several [2] 26/5 29/25
severity [1] 54/1
Severt [2] 1/13 8/6
share [4] 16/1 49/15
50/8 59/4
shared [3] 30/22 31/25
57/15
sharing [5] 9/18 45/18
49/21 51/9 52/3
sharpen [2] 46/3 51/21
she [2] 24/24 25/1
she's [2] 25/3 45/10
shifting [3] 47/18 48/8
48/25
shop [1] 45/10
shorter [1] 42/11
should [7] 10/18 14/2
15/6 21/1 28/20 31/5
49/15
shouldn't [2] 33/1
45/12
show [3] 15/17 19/10
20/3
showings [2] 20/10
21/1
shown [2] 20/18 20/22
sic [1] 17/14
side [4] 15/3 20/17
24/9 53/24
sides [2] 56/19 56/24
sift [2] 28/3 42/18
sign [1] 41/5
signed [2] 35/21 44/17
significant [2] 13/9
27/8
Silversun [1] 17/14
similar [2] 22/23 23/3
simple [1] 39/20
simply [5] 37/15 50/12
56/19 56/25 57/10
since [2] 41/22 51/19
single [3] 10/24 11/19
38/2
sit [1] 29/24
situation [6] 19/13
20/5 22/9 23/19 31/7

six [1] 55/22
size [3] 30/25 31/15
52/9
SKADDEN [1] 6/7
skadden.com [1] 6/10
SLATE [1] 6/7
small [2] 30/9 30/9
smaller [1] 32/9
so [82]
so I think [5] 18/25
26/2 34/2 41/9 41/13
So it's [1] 51/1
social [1] 10/2
Solomon [2] 6/15 9/8
solution [1] 34/7
solve [2] 33/12 34/5
some [27] 9/15 11/8
11/22 12/9 12/18 13/3
13/13 13/14 15/9 16/19
16/21 18/6 19/18 19/19
27/13 31/18 31/20 32/4
35/23 36/18 40/17
44/21 44/24 46/4 50/6
51/8 55/2
somebody [3] 13/1
20/7 39/12
somehow [2] 20/5
28/19
someone [4] 14/14
27/15 28/6 39/24
something [24] 12/10
15/17 15/21 22/11
22/17 23/2 28/22 31/22
32/4 32/7 32/14 32/21
33/9 35/15 45/13 47/2
48/12 48/12 48/15
48/18 57/7 58/23 58/24
59/1
SONSINI [1] 5/7
sorry [4] 17/3 23/7
55/14 58/18
sort [30] 10/14 11/3
12/1 13/17 15/19 15/24
16/2 16/2 16/19 16/21
22/5 22/8 28/10 29/14
29/18 29/23 31/18
31/21 31/22 32/8 33/25
40/1 41/14 41/25 43/18
44/24 46/14 47/20
51/24 56/23
sorts [1] 13/21
source [8] 20/5 20/6
24/2 24/3 24/21 25/16
32/14 32/18
source-code [1] 32/18
sources [1] 23/22
South [4] 3/5 4/10 4/12
8/17
speak [2] 20/21 42/12
speaking [3] 19/25
35/20 36/19
speaks [2] 17/9 22/3
specific [3] 22/2 39/10
40/6
specifically [1] 17/18
specified [1] 17/20
sports [1] 35/25

Sprint-T-Mobile [2]
37/17 37/25
standard [2] 25/20
28/10
start [5] 16/5 43/23
43/23 44/18 57/22
started [2] 41/23 43/19
starting [1] 51/1
starts [1] 44/15
state [22] 2/2 2/9 3/2
3/4 3/9 3/14 4/2 4/5
4/10 4/12 4/16 4/18 8/9
8/10 8/12 8/13 8/15
8/16 8/17 8/18 50/8
55/16
states [12] 1/1 1/3 1/10
8/4 8/7 11/14 11/20
20/20 22/3 50/16 51/5
59/24
states' [2] 51/11 52/21
STATUS [1] 1/9
stay [2] 60/6 60/7
Steel [4] 22/3 22/13
24/20 34/12
stenography [1] 7/22
Stephen [2] 7/7 8/23
steps [1] 57/3
steve.nickelsburg [1]
7/10
Steven [2] 6/6 9/6
steven.sunshine [1]
6/10
still [1] 30/2
stood [1] 11/3
strategic [2] 30/6 31/7
strategies [1] 18/8
strategy [4] 19/15
19/16 31/14 39/17
Street [11] 1/15 2/4 3/6
3/11 3/16 4/12 5/3 5/8
6/16 7/4 7/8
strikes [3] 24/1 39/12
42/6
strong [1] 41/10
struck [1] 41/21
structure [1] 14/20
25/17 36/13
struggling [1] 29/19
stuff [1] 43/1
subject [8] 18/18 20/11
28/18 47/3 50/14 52/14
52/22 61/6
subjective [5] 12/8
28/5 37/15 37/16 38/20
subjectivity [1] 28/11
submission [4] 10/24
21/6 21/9 44/4
submissions [2] 10/22
15/16
submit [3] 57/10 59/8
59/18
submitted [1] 10/12
subparagraph [1] 50/4
subpoena [1] 36/20
subpoenas [1] 31/8
Subsection [1] 45/2
subset [3] 42/22 46/8

subsidiary [1] 15/25
substance [2] 9/21
31/15
substantial [2] 41/7
56/8
substantive [3] 29/10
29/15 29/23
substitute [1] 19/19
successful [1] 45/11
such [6] 13/18 16/25
22/21 32/2 37/20 47/19
sufficient [2] 11/25
42/17
suggest [4] 14/25 38/7
43/19 55/3
suggesting [4] 36/7
37/4 48/16 49/14
suit [2] 49/11 49/17
Suite [5] 1/20 2/5 2/16
3/16 7/4
Summary [1] 31/13
Sunshine [3] 6/6 9/6
supplemental [1]
23/13
support [1] 21/1
suppressing [1] 18/19
sure [10] 10/6 11/4
19/4 21/18 25/9 41/4
42/25 54/7 54/25 56/21
surprise [1] 24/5
Susan [2] 5/7 8/20
suspended [1] 53/11
swallow [1] 15/22
Sysco [16] 9/25 11/2
11/13 20/24 29/18
36/13 39/24 39/24
40/25 47/6 52/16 53/3
53/13 54/9 54/16 56/11
system [1] 42/20

**T**

T-Mobile [2] 7/12 9/1
table [1] 38/4
take [10] 16/16 21/15
23/7 23/9 30/23 40/8
44/2 47/21 53/18 59/16
taken [1] 24/5
taking [1] 31/9
talk [7] 10/8 19/7 21/16
29/3 53/24 57/3 59/21
talked [1] 40/16
talking [8] 18/5 18/6
21/8 22/11 33/3 33/13
36/9 37/20
Tallahassee [1] 2/10
tautological [1] 12/18
teams [1] 28/22
technological [1] 61/7
technology [2] 18/8
20/20
TELECONFERENCE
[1] 1/9
Telekom [1] 37/25
tell [6] 10/14 11/21
25/15 30/3 42/7 49/9
telling [2] 38/1 46/9
temptation [1] 47/25

**T**

temptations [1] 53/24
ten [3] 44/5 44/11 44/13
tendency [1] 15/2
term [3] 12/7 19/15 42/24
terms [10] 9/15 14/21 15/6 16/21 22/3 27/17 29/12 29/22 35/1 42/25
test [2] 20/23 24/20
tests [1] 29/17
Texas [4] 4/16 4/18 4/19 8/18
than [13] 10/3 12/20 14/15 15/3 21/13 29/20 34/24 36/10 36/20 39/20 40/13 44/18 57/3
thank [11] 16/7 16/14 29/8 35/7 46/2 46/22 58/15 59/10 60/4 60/6 60/10
thank you [8] 29/8 35/7 46/2 46/22 58/15 59/10 60/4 60/10
Thank you very much [1] 16/14
Thanks [1] 60/9
that [408]
that's [47] 12/1 12/3 13/11 13/23 14/24 14/24 15/3 15/21 15/24 17/16 19/15 22/18 23/5 24/2 24/20 25/18 26/16 28/22 29/11 30/17 30/19 31/11 31/20 32/23 33/4 34/19 35/13 41/11 42/5 42/7 43/6 45/8 45/14 46/22 47/16 47/19 48/15 48/18 50/9 51/14 52/5 53/13 55/8 56/25 58/7 59/2 59/23
their [18] 9/17 10/16 14/6 18/6 20/13 22/5 22/9 26/10 26/13 28/8 30/25 32/7 33/17 34/22 38/4 38/8 44/4 59/4
them [13] 10/3 12/6 13/4 14/9 26/23 30/9 30/18 33/7 33/17 35/3 42/4 52/10 54/20
then [31] 10/15 15/8 16/3 16/4 23/4 23/12 24/18 25/6 25/12 26/11 26/15 29/6 30/6 31/6 33/15 33/25 34/10 40/8 42/2 42/3 46/16 46/18 48/1 48/22 49/4 49/5 52/13 54/15 57/20 58/3 59/18
theory [1] 55/6
there [52] 11/8 11/17 13/9 14/1 14/23 15/6 15/8 15/24 16/19 16/25 17/10 18/1 18/2 20/12 21/11 21/15 22/7 24/2 24/22 26/5 26/11 31/19 32/20 35/23 36/15

those [25] 17/3 17/4 18/11 20/10 21/2 24/1 28/15 28/25 30/8 31/8 31/10 31/11 34/13 35/11 36/21 41/9 41/13 42/8 42/24 43/8 49/16 50/23 51/1 53/24 57/13
though [2] 42/12
thought [15] 19/24 20/9 22/1 26/3 26/6 26/24 42/11 42/23 47/14 47/16 48/1 48/13 48/15 48/24 54/15
thoughts [2] 16/2 26/2
through [5] 13/14 28/3 30/24 42/18 45/8
throughout [2] 16/17 43/3
thus [1] 30/10
tier [3] 14/20 27/8 37/19
tiered [6] 25/16 39/4 40/18 41/14 42/20 46/17
tiers [1] 19/6
tighter [3] 36/25 37/13 43/20
time [17] 10/19 15/23 17/11 28/20 30/24 40/8 40/25 41/19 41/22 42/8 42/17 42/23 43/15 44/18 45/2 57/18 58/17
times [1] 25/5
timing [1] 15/25
tiny [1] 46/8
titled [1] 61/4
today [3] 9/22 29/24 30/5
together [3] 27/3 57/4 60/7
told [2] 30/1 46/6
Tom [5] 42/10 45/25 49/19 54/6 57/24
Tom Greene [1] 54/6
too [8] 38/20 38/20 40/1 42/6 43/15 45/8 51/21 57/17
top [1] 26/14
trade [1] 17/17
transcript [3] 1/9 7/22 61/3
transcription [1] 7/22
treatment [1] 33/2
Trial [1] 31/13
trigger [3] 43/22 44/13 44/16
true [1] 18/15
truly [1] 33/9
try [10] 29/17 29/19 32/7 32/8 33/21 35/4 42/16 42/22 43/9 43/17 44/8 44/10 50/6 52/1 52/10 55/21 57/16 59/7 59/12

turned [1] 27/15
two [29] 14/4 14/20 15/1 15/5 17/1 19/6 20/19 23/12 23/23 24/23 24/24 25/16 26/2 34/13 35/2 37/19 39/4 39/9 39/13 39/18 40/6 40/12 40/14 40/18 41/14 42/20 45/4 46/17 47/20
two-tier [2] 14/20 37/19
two-tiered [6] 25/16 39/4 40/18 41/14 42/20 46/17
two-tiers [1] 19/6
type [7] 13/18 14/20 32/18 32/18 36/11 37/2 38/4
types [1] 13/3

**U**

U.S [6] 1/14 1/19 7/18 22/13 24/20 34/12
ultimately [1] 45/3
ultrasensitive [1] 31/22
under [1] 56/6
underlying [1] 26/3
understand [4] 27/7 46/2 46/6 54/1
understandable [1] 15/4
understanding [2] 19/20 39/17
uniformly [2] 13/13 13/13
UNITED [11] 1/1 1/3 1/10 8/4 8/7 11/14 11/20 20/20 22/3 50/16 59/24
United States [6] 11/14 11/20 20/20 22/3 50/16 59/24
United States of [1] 8/4
unless [2] 42/7 45/19
unlike [1] 32/12
unnecessarily [1] 43/14
unreasonable [1] 19/17
until [2] 58/25 59/7
unworkable [1] 33/21
up [9] 15/22 33/9 37/24 38/21 40/8 41/5 45/10 53/5 59/16
upon [1] 40/9
ups [3] 13/3 28/11 48/21
us [22] 7/7 11/14 23/22 24/1 24/4 24/21 25/8 27/17 29/12 29/22 29/15 30/3 33/10 35/14 36/2 38/21 46/6 46/9 51/19 51/19 58/2 59/21
USA [2] 7/12 9/1

U.S.doj.gov [1] 1/17
use [5] 24/18 26/5 28/7 35/5 35/25
used [5] 11/2 20/23 25/18 37/16 37/17
useful [1] 27/25
uses [1] 18/19
using [1] 41/11

**V**

valuable [2] 53/21 55/6
value [1] 54/22
valve [1] 46/18
variety [1] 18/19
various [7] 9/16 10/11 10/15 11/1 15/7 16/16 27/5
verbatim [1] 21/22
versus [2] 8/5 28/7
very [33] 10/24 15/20 15/20 16/14 22/15 22/15 25/4 25/15 26/16 26/25 30/13 31/2 31/3 32/4 32/13 32/17 32/17 33/20 34/4 35/23 36/18 37/11 41/8 45/11 46/22 50/16 52/16 53/18 53/25 55/6 57/19 59/14 60/6
VIA [1] 1/9
view [1] 13/19
violated [1] 47/7
violates [1] 53/7
violation [2] 53/4 54/3
violator [3] 53/7 53/8 53/9
vis [2] 18/9 18/9
vis-à-vis [1] 18/9
visit [1] 51/16
vs [1] 1/5

**W**

WA [1] 7/14
waiting [1] 43/22
Walter [2] 7/12 8/25
WALTERKIPLING [1] 7/13
walterkipling.com [1] 7/15
want [26] 15/2 15/22 17/15 25/21 28/13 28/17 30/5 30/23 30/24 30/25 32/6 33/7 33/25 36/12 37/6 38/24 38/25 41/5 43/9 45/8 47/14 48/7 48/16 50/25 56/21 58/20
wanted [8] 10/4 10/6 10/21 16/1 41/17 42/16 55/15 59/8
wants [1] 37/23
WARDWELL [1] 6/16
was [36] 9/25 10/6 10/24 11/2 19/25 20/5 20/6 20/13 21/6 21/8 21/19 25/1 26/19 26/19 33/6 33/9 36/13 37/16 37/16 37/24 38/3 39/25

**W**

**was...** [14] 40/25 41/19 41/19 42/20 44/14 48/23 50/7 54/9 54/14 54/19 54/20 55/16 56/11 58/7
**Washington** [13] 1/5 1/15 3/6 5/4 5/9 5/13 6/4 6/8 6/12 6/17 7/5 7/8 7/20
**way** [13] 10/10 13/11 17/20 18/22 20/11 20/14 27/2 33/12 37/9 41/11 52/9 56/11 56/12
**ways** [2] 28/6 55/2
**wc.com** [2] 5/5 5/5
**we** [129]
**we believe** [2] 20/2 27/4
**we can** [1] 51/21
**we would** [1] 51/3
**we'd** [4] 15/10 19/24 33/22 43/9
**we'll** [5] 16/1 29/3 39/22 46/3 60/7
**we're** [20] 9/13 11/22 16/8 18/5 18/6 20/17 24/22 26/18 27/11 31/6 34/1 37/20 42/1 43/22 48/20 50/19 51/2 51/17 58/12 59/22
**we've** [15] 10/1 18/10 20/2 21/8 22/14 24/5 24/8 30/1 33/13 34/13 34/24 35/1 35/4 36/5 50/18
**weaknesses** [1] 18/8
**webwork** [1] 55/17
**week** [1] 44/15
**weeks** [2] 57/5 60/8
**well** [15] 9/12 11/22 14/18 23/17 28/12 31/2 31/3 31/14 34/4 40/5 43/12 44/9 48/11 52/23 54/24
**went** [1] 26/19
**were** [16] 12/9 17/3 19/5 19/25 20/3 22/1 23/12 26/4 27/15 41/5 41/16 42/19 44/2 47/4 52/17 52/22
**West** [2] 3/6 4/18
**what** [69]
**what's** [5] 13/20 28/3 30/19 40/9 47/3
**whatever** [1] 43/22
**whatsoever** [1] 36/16
**when** [10] 11/13 15/1 18/3 21/24 22/7 24/14 30/5 34/18 41/18 42/13
**where** [15] 10/16 16/4 19/19 22/9 29/24 31/7 33/15 34/25 36/13 36/15 37/7 38/15 42/1 48/8 53/23
**whether** [22] 11/5 11/7 11/20 12/10 12/24 13/1 13/25 14/1 14/18 19/15

43/7 43/10 44/14 45/4 45/8 47/22 48/18 52/22
**which** [30] 10/17 11/8 11/15 11/15 13/21 14/19 17/2 18/22 19/8 19/13 20/5 20/23 23/23 26/5 26/9 26/15 27/8 27/13 27/20 28/8 28/9 34/5 34/6 40/18 42/19 43/24 44/24 46/15 49/22 57/11
**who** [25] 14/14 25/4 30/12 30/13 34/15 34/17 35/5 35/21 36/18 39/16 39/24 40/7 40/10 41/11 43/16 45/11 47/5 47/7 49/11 51/11 52/14 52/17 53/7 54/20 55/5
**who's** [4] 14/14 16/8 25/4 28/6
**who've** [3] 39/18 40/7 57/16
**whole** [3] 38/22 54/9 54/15
**Whole Foods** [2] 54/9 54/15
**wholesale** [1] 41/25
**whom** [3] 18/5 24/23 49/5
**why** [7] 15/16 16/5 21/17 40/6 42/7 45/21 58/7
**wife** [2] 10/1 10/2
**wildly** [1] 12/8
**will** [14] 14/23 18/17 25/15 28/1 29/21 40/10 43/16 46/4 46/5 53/6 53/19 56/22 57/9 59/4
**William** [4] 7/16 61/2 61/10 61/11
**WilliamPZaremba** [1] 7/21
**WILLIAMS** [1] 5/3
**WILSON** [1] 5/7
**wish** [1] 35/16
**within** [12] 12/22 14/15 20/6 22/10 31/10 34/20 44/11 47/3 51/3 51/4 51/5 58/24
**without** [1] 56/7
**won't** [1] 30/3
**wonder** [1] 13/25
**work** [8] 38/6 40/4 42/17 46/12 47/8 57/23 58/13 59/11
**workable** [1] 34/7
**worked** [1] 56/8
**working** [1] 14/5
**works** [1] 57/25
**world** [1] 38/12
**Worldwide** [2] 7/2 9/4
**worse** [1] 29/20
**would** [78]
**wouldn't** [1] 18/1
**wracking** [1] 38/1
**writing** [1] 27/1
**written** [4] 11/5 11/6

**wsgr.com** [2] 5/10 5/10

**Y**

**yeah** [12] 17/8 19/2 21/12 21/14 23/10 23/15 25/9 29/3 36/23 42/10 45/25 51/14
**year** [2] 55/22 57/22
**years** [5] 10/1 10/4 35/2 45/4 45/4
**yes** [9] 27/24 46/11 46/16 48/4 53/1 54/8 57/25 58/5 59/13
**yet** [2] 14/9 39/12
**York** [1] 6/8
**you** [143]
**you know** [7] 11/17 29/24 31/18 39/24 40/25 45/1 50/3
**you'd** [1] 50/25
**you'll** [1] 57/12
**you're** [6] 26/5 41/8 46/9 47/2 50/25 51/8
**you've** [8] 15/1 27/6 28/24 34/3 37/2 47/12 51/19 58/2
**your** [63]
**Your Honor** [45] 8/3 16/7 16/13 18/5 19/23 20/23 23/1 26/1 27/11 27/19 28/16 29/8 29/9 29/19 31/14 32/12 33/4 33/14 34/3 34/18 35/7 35/19 36/19 37/10 37/13 42/10 46/1 46/22 46/24 48/3 49/20 50/24 51/21 52/6 53/1 54/5 55/14 58/2 58/11 58/15 58/18 59/13 59/23 60/4 60/10
**Your Honor's** [1] 54/16
**yourself** [1] 41/6

**Z**

**Zaremba** [4] 7/16 61/2 61/10 61/11