**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE GOOGLE ANTITRUST LITIGATION** | MDL No. 2981 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
TRANSFER PURSUANT TO 28 U.S.C. § 1407**

## I.     INTRODUCTION

Resolution of the motion of Plaintiff-Movant J. Jackson Paige ("Plaintiff" or "Paige") is unusually, if not uniquely, consequential even in this august forum, which considers so many monumental and sprawling cases in the United States Court system.  Just as with the important mass tort, securities, and cartel cases that this Panel frequently considers, the current circumstances counsel immediate centralization.  Because the United States and eleven States[1] have filed their civil enforcement complaint in Washington, DC, the center of gravity in the related private cases is in the Nation's Capital.  This Panel should assign all recently-filed, Google-related antitrust litigation to the United States District Court for the District of Columbia.

Google is one of the most successful business enterprises in the history of capitalism.  Its ubiquitous business is multifarious and complex.  Its operations reach desks, pockets, and purses in every continent.  Its stock price moves markets. Its name has become a verb in the English language.[2]

RECEIVED
Mail Room

DEC 1 4 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

---

[1] Among the eleven States is the Commonwealth of Kentucky.

[2] According to Google, the term "google" means "to use the Google search engine to obtain information about (someone or something) on the World Wide Web." "google." Merriam-Webster Online Dictionary. 2020. http://www.merriam-webster.com (5 Dec. 2020).

All cases encompassed by this motion have in common one overarching issue: each case challenges the core business practices of perhaps the world's leading information enterprise. For this reason, consistency of rulings in these cases is vital. While it is possible for multiple cases addressing the same issues to proceed on parallel schedules in various jurisdictions with each case involving only a limited a number of parties, there is a genuine risk of inconsistent rulings, unnecessary complexity, and costly coordination of issues between multiple Courts. It would be more efficient for the parties, witnesses, Courts, and ultimately the Nation if private litigation about Google's alleged monopolistic practices were all to proceed in the same forum as the case of the United States and the States.

Not at issue, in Plaintiff's view, are the qualifications, capabilities, or efforts of any of the three exemplary federal jurists with Google cases in their courtrooms. All three judges in these cases, Judge Mehta (District of Columbia), Judge Donato (Northern District of California—San Francisco) and Judge Freeman (Northern District of California—San Jose) are experienced and have begun to move the cases before them with skill. Also not at issue is the accessibility of the various fora. The District of Columbia is convenient. As Google will be participating in the Government case in District of Columbia in any event, any extra burden on Google is at best at the margins.

A key consideration is the burden of these cases on the Federal Court system. Litigated antitrust cases in general,[3] and government monopoly cases in particular, tend to be protracted.

---

[3] "From 2009-2019, most antitrust class actions that reached final approval did so within 5-7 years." *See* Ex. A to Declaration of Jonathan W. Cuneo, Davis, Josh Paul and Kohles, Rose, 2019 Antitrust Annual Report: Class Action Filings in Federal Court (August 2020). Experience teaches that the Government's civil enforcement action in Washington is likely to be pending for a period of years as Google has indicated that it will answer the Justice Department of Justice's complaint on December 21, 2020, and not move to dismiss it.

The Panel is likely aware that the Government's antitrust case against IBM consumed almost thirteen years[4] and that the Government's AT&T case lasted eight years from inception to the announcement of a settlement.[5] The Government's monopolization case against Microsoft lasted at least four years.[6]

By antitrust standards, the cases sought to be transferred are in their infancy.[7]  As more cases are likely to be filed, resolution of the appropriate venue now is in everyone's and the judiciary's interest. Although the motion's opponents make forceful arguments, those arguments are mostly based on the parochial interests of the litigants and their attorneys in particular cases, not the interests of the court system or the Nation. Consistency, harmony, efficiency, and convenience all favor centralization in Washington, DC:

- Consistency: One Court, not multiple Courts, will undertake to understand Google's complicated business, its myriad agreements with suppliers, and its arrangements with customers and developers worldwide; the markets in which it functions; how it exercises its market power; and its relation to competitors.

- Harmony: The cases will develop through the tools of complex litigation, such as protective orders, discovery orders, search criteria, information preservation protocols and deposition conventions.  Having a single Court address these issues will avoid duplication of judicial resources and increase consistency.

- Efficiency: A single venue avoids inconsistent ground rules, duplication of the same evidence, and use of repeated expert testimony.  There is significant overlap between the Government's case and each of the private cases.

---

[4] *See* Tim Wu, A simple plan to dissolve Facebook, Google, and Amazon, *available at* https://www.vox.com/the-goods/2018/11/8/18076440/facebook-monopoly-curse-of-bigness-tim-wu-interview.

[5] *See* Wikipedia, *Breakup of Bell System*, https://en.wikipedia.org/wiki/Breakup_of_the_Bell_System (as of Dec. 6, 2020, 00:30 GMT).

[6] *See* Wikipedia, *United States v. Microsoft Corp.*, https://en.wikipedia.org/wiki/United_States_v._Microsoft_Corp. (as of Dec. 6, 2020, 00:30 GMT).

[7] *See* Ex A., *supra* note 2.

- Convenience: Washington, DC is an accessible and available forum. Google has an entire DC-based legal team for the government's case. Many, if not most, of the firms in the California actions have a Washington, DC or East Coast presence. Further, hearings and conferences via Zoom make the arguments of the opposition even weaker.

To be clear, Plaintiff is not seeking to consolidate the private cases with the cases brought by the United States and the eleven States. If any States or governments bring further actions, Paige will not seek to consolidate these actions with the private actions, either as tag-along actions or otherwise. Rather, placing the private civil actions before the same Judge who handles the Government's case will eliminate significant transaction costs, and ensure that all actions proceed expeditiously and efficiently as possible.

## II.     THE WEIGHT OF THE ACTIONS IS IN THE DISTRICT OF COLUMBIA.

Currently pending in the California District Courts are approximately a dozen cases filed by app purchasers, developers, and advertisers. The app purchaser and developer cases are before Judge Donato and the advertiser case is before Judge Freeman. All are in their beginning stages. To date, no case has survived a motion to dismiss; no answers have been filed; no class motions are pending; and no class or classes have been certified. Also, no issues have been joined. Ironically, almost half of the identified plaintiffs in the California actions reside closer to Washington, DC, than to San Francisco, CA, as is apparent from their complaints, attached to Plaintiff's initial motion to transfer.

As against these individual actions, the United States and eleven States (including two of the three most populous States in the country) filed their enforcement cases in the District Court for the District of Columbia. (The United States has informed Judge Mehta that several other States

4

may bring cases.[8]). Antitrust cases are frequently transferred to the district where the Government's enforcement action is pending or where the grand jury investigated. See *In re: Am. Exp. Anti-Steering Rules Antitrust Litig.*, 764 F. Supp. 2d 1343, 1345 (J.P.M.L. 2011); *In re Cuisinart Food Processor Antitrust Litigation*, 506 F. Supp. 651, 654 (J.P.M.L. 1981); *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017).

The existence and impact of the Government action has been largely ignored by opponents to the Paige Motion to Transfer. That action will proceed with the full weight of the Federal Government and State resources. Government enforcers may well want to avail themselves of private resources when feasible (*e.g.*, sharing database and discovery costs), and will want to ensure that private cases do not impede with Government cases.[9] The most effective and efficient way to accomplish this goal is to place both the public enforcement cases and all the relevant private civil cases before the same Court.[10]

---

[8] *See* Ex. B to Declaration of Jonathan W. Cuneo, Transcript of November 18, 2020 Hearing, *United States, et al. v. Google LLC*, No. 1:20-cv-03010 (D.D.C.).

[9] *See Dunlavey v Takeda Pharmaceuticals America, Inc.*, 2012 WL 3715456, *2 (W.D. La. 2012) (stating that cooperation between state and federal judges is advised and will often aid in the efficiency of discovery).

[10] Indeed, it has been argued that the crucial issue in determining whether to order MDL treatment is not whether there are common questions or whether the parties will be inconvenienced, but whether "the economies of transfer outweigh the resulting inconvenience to the parties." *In re Data General Corp. Antitrust Litigation*, 510 F. Supp. 1220, 1225 (J.P.M.L. 1979); *In re Air Crash at Schenley Golf Course, Pittsburgh, Pa., on August 21, 1977.*, 509 F. Supp. 252, 253 (J.P.M.L. 1979).

III.    **JUDGE MEHTA HAS MADE SIGNIFICANT PROGRESS IN ADVANCING THE GOVERNMENTAL ENFORCEMENT ACTIONS.**

The Government entities filed their case in Washington, DC on October 20, 2020, and it was assigned to Judge Amit Mehta on October 21, 2020. In the approximately 45 days since filing, Judge Mehta has already held three hearings and made significant progress in the case.

- On October 30, 2020, Judge Mehta set an answer date for December 21, 2020.  Judge Mehta asked about Google's intent to file a Motion to Dismiss or Answer. Google promised to notify the Court of its decision by November 13, 2020. [11]

- Under the Judge's guidance, the parties have discussed the following issues

  o   The need for, and the details of, a protective order;

  o   Initial disclosures;

  o   Google's request that the Government begin producing investigative materials, including documents produced by third parties, declarations and depositions; and

  o   A joint status report due by November 6.

- On November 18, 2020, Judge Mehta held another hearing at which Google stated it would not move to dismiss, but would file an answer by December 21, 2020.  Third parties have appeared and asked for additional time to file position papers on the protective order.

  o   At the same hearing, the Justice Department stated that the States of Iowa, Nebraska, Colorado, Tennessee, New York, North Carolina, and Utah are

---

[11] *See* Ex. C to Declaration of Jonathan W. Cuneo, Transcript of October 30, 2020 Hearing, *United States, et al. v. Google LLC*, No. 1:20-cv-03010 (D.D.C.).

completing Google investigations.  If any of these jurisdictions file cases, they will move to consolidate their actions with the existing Government enforcement action and would litigate and consolidate cooperatively.

- o   At the same hearing, the Court requested that parties begin processing Rule 16.3 statements to focus on issues including the scope of discovery, the length of discovery, the limitations and modes of discovery, depositions and so forth. The Court also guided a discussion of materials that third parties have prepared for the Department of Justice.  At the conclusion, the Judge set a hearing for December 2, 2020 and another hearing on December 18, 2020. [12]

- o   The Justice Department expected to include an estimated 100 witnesses in its initial disclosures and informed Google that third parties had produced roughly 1.5 million documents in the government investigation.

- • At the December 2 hearing, Judge Mehta arranged for the following:

  - o   A due date of a revised proposed protective order of December 14, 2020.  Third-Party Submission(s) are due by December 15, 2020;

  - o   A status conference on December 18, 2020; and

  - o   Google will file an answer by December 21, 2020. [13]

---

[12] *See* Ex. B to Declaration of Jonathan W. Cuneo.

[13] *See* Ex. D to Declaration of Jonathan W. Cuneo, Transcript of December 2, 2020 Hearing, *United States, et al. v. Google LLC*, No. 1:20-cv-03010 (D.D.C.).

IV.     **SIGNIFICANT OVERLAP AND COMMON ISSUES OF FACT EXIST BETWEEN THE GOVERNMENT, DIGITAL ADVERTISING, AND GOOGLE PLAY ACTIONS.**

Although opponents of transfer concede that the Google Play actions brought by developers and consumers are factually very similar,[14] various parties suggest that the Government, Digital Advertising, and Google Play actions do not overlap and have no common factual issues. However, "[s]ection 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, 2013 WL 1635469, *1 (J.P.M.L. 2013).

Although the three sets of actions focus on different portions of Google's business, the two sets of private actions—the Digital Advertising and Google Play actions—are both offshoots encompassed within the Government Action. Comparisons of the various complaints reveal considerable overlap.[15] Beyond these similarities, testimony and other evidence on overlapping factual and legal issues will also be required in all three sets of cases. All of the actions are likely to involve expert testimony on similar substantive and economic issues, including testimony by experts about Google's allegedly anticompetitive conduct and the economic effects of its Search, Digital Advertising, Android, and Google Play operations and platforms. In this case, the similarities and efficiencies will outweigh the differences. See *In re: Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d 1369, 1370 (J.P.M.L. 2010) ("To be sure, there are

---

[14] *See* Ex. E to Declaration of Jonathan W. Cuneo (Comparison of the Digital Advertising and Government complaints).

[15] See Ex. F to Declaration of Jonathan W. Cuneo (Comparison of Developer and App Purchaser Google Play complaints with the Government complaint); Ex. E.

differences among the cases. However, as a general rule, the similarities seem to outweigh the differences.").

Although the Digital Advertising action has progressed further than the other actions have, it is still at an early stage, and is only seven months old.[16] A consolidated amended complaint was just filed on December 4th, and no motions are pending against it.[17] It makes sense from both efficiency and coherence of law perspectives to adjudicate the Digital Advertising action in an MDL.

Transfer opponents point to the differing market definitions in the various complaints. While it is true that the two private complaints focus on narrower markets than does the Government complaint, this difference is not determinative. The presence of several individual issues will not necessarily result in the denial of transfer. See *In re Generic Digoxin and Doxycycline Antitrust Litigation*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017). In Digital Advertising, the larger context is that Google directs a huge proportion of Internet traffic (and therefore viewership that is monetizable via advertising) with its Search franchise.

The Google Play actions are even more similar to the Government action. At stake in the Google Play actions will be how Google acquired its dominant position in the open-source mobile operating system market and, in turn, the app store market. Google is alleged to have advanced Android and the Google Play Store using funds from Google's Search business. To bring this full circle, Google's dominance in the mobile operating system market serves to create a feedback loop that reinforces the dominance of its Search franchise when users search for content on their mobile

---

[16] *See* Complaint, *In re Google Digital Advertising Antitrust Litig.*, No. 5:20-cv-03556-BLF, ECF No. 1.

[17] *See* Devaney Opp., at 3.

phones. As with the Digital Advertising action, a fundamental question will be whether Google enjoys a dominant position in a certain market (in the case of Google Play, the mobile OS and app store market) because it made a better mousetrap, or because it has essentially subsidized the product with money and/or competitive advantage derived from its dominance in Search.

The Government complaint, as currently written, does not yet identify the particular injunctive relief sought. There is no reason to assume that the relief sought will be limited to Google's business practices concerning its Search platform. In fact, to the extent that Google is alleged to have leveraged its monopoly in Search in order to engage in conduct in related markets, it is reasonable to expect that the Government parties will likely seek relief that is not strictly cabined to Google's Search franchise. In addition, there is reason to believe that the scope of the Government parties' case against Google may expand.[18]

## V.   GOOGLE'S FORUM SELECTION CLAUSE, EVEN IF VALID, DOES NOT BIND THIS PANEL.

In the *Paige* action, Google has made a motion to transfer, relying principally on a forum selection clause in its contract. Plaintiff Paige intends tomorrow to file an opposition to that motion which demonstrates that that forum selection clause does not apply. Even if it were applicable, it is not binding on this Panel. *See In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009) (quoting *In re Falstaff Brewing Corp. Antitrust Litigation*, 434 F. Supp. 1225, 1229 (J.P.M.L.1977) ("the Panel 'is not encumbered by considerations of venue'"). Google has adduced no authority even suggesting that such a clause is persuasive on the subject of JPML transfer and consolidation.

---

[18] John D. McKinnon, Facebook, *Google to Face New Antitrust Suits in U.S.*, Wall Street Journal (Nov. 30, 2020), https://www.wsj.com/articles/facebook-google-to-face-new-antitrust-suits-in-u-s-11606742163.

Forum selection clauses in no way limit the authority of this Panel. Section 1407(a) provides that cases may be consolidated "in any district," 28 U.S.C. § 1407(a) (2018), and the Panel has consistently held that it is not required to abide by the terms of a forum-selection clause. In *In re Medical Resources Securities Litigation*, the Panel explained that "contractual forum selection clauses do not limit the Panel's authority with respect to the selection of a transferee district." *In re Med. Res. Sec. Litig.*, MDL No. 1247, 1998 U.S. Dist. LEXIS 15832, at *3 (J.P.M.L. Oct. 7, 1998). Similarly, in *In re Disposable Contact Lens Antitrust Litigation*, the Panel rejected the argument that the collection of actions in which the defendant was involved had to be transferred to the Northern District of California per the parties' forum-selection clause. *In re Disposable Contact Lens Antitrust Litig.*, 109 F. Supp. 3d 1369, 1371 (J.P.M.L. 2015).

The same is true for orders transferring "tag-along" actions filed after the consolidation of an existing MDL. In its transfer order consolidating two cases with a preexisting MDL in *Park West Galleries, Inc.*, the Panel reiterated that "[w]hen civil actions satisfy the criteria set forth in 28 U.S.C. § 1407(a), the statute authorizes the Panel to centralize those actions (as well as any subsequently identified tag-along actions) in 'any district.'" *Park West Galleries*, 655 F. Supp. 2d at 1379. The Panel has recently reaffirmed this principle. *See In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017) (citing *In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 655 F.Supp.2d 1378, 1379 (J.P.M.L. 2009)) ("[F]orum selection clauses do not limit the Panel's authority under Section 1407.").

**VI.    OPPONENTS' ARGUMENTS AGAINST THE PAIGE §1407 MOTION ARE WITHOUT MERIT.**

**A.    No California Case Has Progressed Past a Motion to Dismiss Whereas Google's Answer in the District of Columbia Will be Filed Later this Month.**

Transfer opponents argue that progress in the California cases precludes transfer. Yet, the parties in those cases have only taken initial steps in what promises to be protracted, complex, multiparty litigation. *See In re Blue Buffalo Co., Ltd., Marketing and Sales Practices Litigation*, 53 F. Supp. 3d 1385, 1386 (J.P.M.L. 2014) (Panel ordered MDL treatment of cases despite the argument that one of the cases was poised to proceed at a faster pace than the others). There is no reason why much of the progress that the parties have made could not be easily incorporated into an action in Washington, D.C.  Some parties argue that the California actions are on a faster track. Judge Mehta's prompt attention to the Government cases shows that these arguments are misconceived. In the California actions, there have been no answers filed and no decisions on any motions to dismiss, and of course no class certification motions have been filed in any California actions.  In contrast, Google has agreed to file its Answer in the Washington action before the end of December 2020.  Thus, while, in the Government case, Google will answer before the end of the year; the same cannot be said of any California action.

**B.    The Epicenter of This Litigation Is in the District of Columbia.**

The suggestion that the "epicenter of the litigation is in California" is not an accurate statement of current affairs.  The Government case shifted the center of gravity to Washington, DC.  That is why counsel filed here.

**C.    Opponents Erroneously Argue that the Effect of the Government Action is Limited.**

Opponents' arguments that the location of the Government action has little or no effect is contrary to established law.  As the decisions of numerous prior panels dictate, private actions

should be placed in the same court as public ones, when doing so is feasible. *In re: Am. Exp. Anti-Steering Rules Antitrust Litig.*, 764 F. Supp. 2d 1343, 1345 (J.P.M.L. 2011); *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017) ("Also pending in the district is the FTC's enforcement action"); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prod. Liab. Litig.*, 273 F. Supp. 3d 1377, 1378 (J.P.M.L. 2017).

### D.      Transfer Would Not Be Disruptive.

Certain opponents of the transfer suggest that the motions to transfer would be disruptive to certain agreements between the plaintiffs in the actions before Judge Donato, who have consolidated their cases.  This argument has nothing to do with the proper forum for this case. There is no reason to believe that progress made in the actions pending before Judge Donato could not be transferred to Washington, DC.

### E.      Opposing Parties Fail to Respond to The Vast Majority of the Caselaw cited by Plaintiff.

Certain opponents assert that pendency of the Government action in the District of Columbia does not require transfer.   While this single factor may not indeed be outcome determinative, it is undeniable that the existence of the enforcement action in DC must be taken into consideration—particularly here—considering the fact that this case focuses on the conduct of a single company: Google.  The pendency of the Government action in Washington, DC may not be dispositive, but it is indeed weighty, and its significance is being overlooked. Opposing parties fail to address the vast majority of the considerable authority cited by Plaintiff in his initial brief.[19]

---

[19] Paige Mot. at 8-10.

13

**F.      California Is Not Necessarily A More Convenient Forum for Witnesses.**

Some parties argue that the convenience of witnesses factor dictates denial of the motion to transfer, pointing out that Google is headquartered in the Northern District of California.  In examining this argument however, it is important to note that Google witnesses will not be the only witnesses in these cases.  There will be third-party developers, like Epic, headquartered in North Carolina, and Callsome, located in New York, competitors, such as Smartapp, located in Rhode Island, as well as others who have business relationships with Google.[20] As stated above, many of the parties are located closer to Washington, DC than they are to San Francisco. Google witnesses will necessarily appear in the DC action anyway.  The question is whether they will have to appear once or twice. Two fora cannot be more convenient for Google than one.

**G.      Transfer Under § 1407 is Superior to Transfer Under § 1404.**

There is a great deal of interest in the Google antitrust matters, and, as Google notes "millions of users in the United States use Google Play to access apps and in-app services"[21] and are therefore affected by its conduct set forth in the complaints at issue. Additional actions have been filed in the Northern District of California, and it is highly likely that additional actions will be filed in other districts as well. Serial *ad hoc* motion practice and transfer pursuant to § 1404 of every case filed is not only a waste of judicial resources; it is also unlikely to be sufficient to transfer all of the relevant actions before the same judge for efficient adjudication. The proposal to deny Paige's motion in favor of these § 1404 motions, none of which have been granted, requires an assumption that each Google Play user agreed to a valid and applicable forum selection clause,

---

[20] Google argues that third-party witnesses will be drawn from all over the world, citing LG and Samsung. Both of these entities have U.S. offices. In fact, LG's offices are in New Jersey.

[21] Google Opp., at 12.

and that the forum selection clause applied to each user's purchases. Google's argument also rests on the untenable assumption that there will not be multiple judges who reach different conclusions about forum selection clauses cited by Google—indeed the purpose of 1407 transfer is to avoid these judicial inconsistencies. In addition, Google neither suggests that every Google Play user signed an agreement containing a forum selection clause, nor that all purchases made on the Google Play platform were made only after users entered into an agreement containing a valid forum selection clause.

Google cites this Panel's decision in *Capacitors*, a case that had been going on for *two years* in the transferor district at the time the Motion to Transfer was made, making the creation of a centralized multidistrict litigation at that juncture impracticable. *In re Capacitors Antitrust Litig. (No. II)*, 223 F. Supp. 3d 1340, 1342 (J.P.M.L. 2016). Further, the proceedings in that case involved only three actions, meaning that "the proponent bears a heavier burden to demonstrate that centralization is appropriate." *Id.* Here, there are over a dozen private cases, in three districts, and multiple government cases. *Id.* Therefore, unlike in *Capacitors*, where the Panel decided that "if transfer ultimately cannot be effectuated through Section 1404, voluntary cooperation and coordination among the parties and the involved courts may be feasible," *id.,* here that is not the case.

This Panel has previously denied an attempt by a defendant to avoid centralization under § 1407 in favor of its pending motion under § 1404. In *Schnuck Markets*, the defendant argued, as Google does here, that the plaintiffs' § 1407 Motion should be denied because defendant had pending motions under § 1404, and 1404 was the superior mechanism for transfer for trial and pre-trial purposes. *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013). However, the Panel held that a 1404 motion would be unlikely to

15

moot the multidistrict character of the litigation, finding, that "[w]ith an estimated 2.4 million affected customers and stores in five states, additional tag-along actions also may be filed in this litigation" and decided that "centralization is most appropriate now." *Schnuck Markets*, 978 F. Supp. 2d at 1381 (distinguishing *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F.Supp.2d 1378 (J.P.M.L. 2012), relied upon by Google and the *Capacitors* opinion cited *supra*). The Panel distinguished other cases where it had denied § 1407 motions in favor of §1404 motions, on that bases that, in those cases, the parties had agreed to transfer pursuant to §1404 or the § 1404 motion had already been granted, neither of which is true here. *Id.*

Google's argument should be seen for what it is—an attempt to advance its own motion to transfer, pursuant to its forum selection clause, filed in a separate forum, and circumvent the settled law that "forum selection clauses do not limit the Panel's authority under Section 1407." *Park W. Galleries*, 655 F.Supp.2d at 1379. Google's attempts to argue its 1404 motion (Google Opposition, at 10-15) that is pending before Judge Mehta are inappropriate, not relevant to this motion and should be disregarded. Mr. Paige intends to oppose Google's 1404 motion and will provide its opposition to this Panel, upon request, if the Panel is inclined to consider these arguments.

Google also argues that Paige does not reside in the District of Columbia, citing *Jewell*, but the court in that case held that even a non-resident's choice of the District of Columbia deserved certain deference "because of the District of Columbia's meaningful ties" to the case. *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 312 (D.D.C. 2015). With the Government Litigation proceeding in the District of Columbia, it is unarguable that this District has "meaningful ties" to the forum.

**H.      The Arguments Attacking *Paige* Counsel Are Irrelevant and Without Support in the Record.**

Neither Paige nor his counsel are at issue in this motion.  The suggestion that *Paige's* counsel filed the motion under § 1407 in order for his counsel to become Court-appointed lead counsel is without any support in the record and the Court should disregard these *ad hominem* attacks.

**VII.   CONCLUSION**

For the above reasons, Paige's Motion for Transfer should be granted.

Dated: December 7, 2020                                Respectfully submitted,

                                                                         */s/ Jonathan W. Cuneo*
                                                                         Jonathan W. Cuneo
                                                                         Victoria Sims
                                                                         Blaine Finley
                                                                         **CUNEO GILBERT & LADUCA, LLP**
                                                                         4725 Wisconsin Ave., NW Suite 200
                                                                         Washington, DC 20016
                                                                         202-789-3960
                                                                         jonc@cuneolaw.com
                                                                         vicky@cuneolaw.com
                                                                         bfinley@cuneolaw.com

                                                                         Gerard V. Mantese
                                                                         Kathryn Eisenstein
                                                                         **MANTESE HONIGMAN, P.C.**
                                                                         1361 E. Big Beaver Road
                                                                         Troy, MI 48083
                                                                         Phone: (248) 457-9200 ext. 203
                                                                         Fax: (248) 457-9201
                                                                         gmantese@manteselaw.com
                                                                         keisenstein@manteselaw.com

                                                                         *Counsel for Plaintiff J. Jackson Paige*

17