# Exhibit E

| Subject | Advertiser Complaint<br>*Grand Atlas Tours, et al. v. Google LLC and Alphabet Inc.*, No. 5:20-cv-03556, ECF No. 1 | DOJ Complaint<br>*United States v. Google LLC, et al.*, No. 1:20-cv-03010, ECF No. 1 |
|---|---|---|
| Google's Advertising Monopoly | Search-engine giant Google has through unlawful means acquired and maintained a monopoly in digital advertising markets. Over the past several years, Google leveraged its stranglehold on online search and search advertising to gain an illegal monopoly in brokering display advertising on other companies' websites. Google achieved this market dominance in part by acquiring rivals in the online advertising space, conditioning access to its search-results data and YouTube video advertising platform upon the purchase of its separate display advertising services, and ensuring those systems were not compatible with those of its competitors in online advertising.<br><br>Compl. at ¶ 1. | There are barriers to entry in these advertising markets that protect Google's advertising monopolies. Most critically, search advertising of any kind requires a search engine with sufficient scale to make advertising an efficient proposition for businesses. Specialized search engines require significant investment, including the cost of populating and indexing relevant data, distribution, developing and maintaining a search algorithm, and attracting users. Search advertising of any kind also requires (1) a user interface through which advertisers can buy ads, (2) software to facilitate the sales process, and (3) a sales and technical support staff. The same barriers to entry that apply to general search services also protect Google's general search text advertising monopoly.<br><br>Compl. at ¶110. |
| Google's Monopoly Harms Competition and Raises Advertising Prices | Because of Google's pervasive monopoly conduct, companies who wish to place online advertisements have little choice but to pay Google for its advertising services. The result of Google's extraction of monopoly rents has been higher advertising prices, higher consumer prices, lower payments to publishers of online advertisements, and reduced competition in the purchase and | Few advertisers would find alternative sources a suitable substitute for search advertising. Thus, there are no reasonable substitutes for search advertising, and a search advertising monopolist would be able to maintain prices above the level that would prevail in a competitive market.<br><br>Compl. at ¶ 100. |

| | | placement of online advertisements.<br><br>Compl. at ¶ 2. | Few general search text advertisers would find alternative sources a suitable substitute for general search text advertising. Thus, there are no reasonable substitutes for general search text advertising, and a general search text advertising monopolist would be able to maintain prices above the level that would prevail in a competitive market.<br><br>Compl. at ¶ 106. |
|---|---|---|---|
| | Search Advertising | Search advertising, which accounts for more than half of the U.S. digital advertising market, is the advertising that appears on the results page after a user runs a search on a search engine. On Google Search, these ads appear as text immediately above or below the actual or "organic" search results.<br><br>Compl. at ¶ 16. | There also is a relevant product market for general search text advertising that is wholly contained within the broader search advertising market. General search text ads are sold by general search engines, typically placed just above or below the organic search results on a SERP, and resemble the organic results that appear on a general search engine's SERP, with a subtle notation that they are "ads" or "sponsored." In contrast, other types of search ads—specifically, specialized search ads—typically are visually different from general search text ads and convey different types of information. For example, a Google Shopping Ad normally includes an image of the product, its price, and star-based ratings (see Figure 3). In 2018, general search text ads accounted for close to 85 percent of Google's search ad revenue.<br><br>Compl. at ¶ 101. |

2

| | | |
|---|---|---|
| Google's Monopoly in Search Advertising | Digital advertising accounted for more than 70% of Google's revenue in 2018. Google is the dominant supplier in the search advertising market and has moved rapidly to control all stages of the display advertising market.<br><br>Compl. at ¶ 23. | 108. Google has monopoly power in the search advertising market. Based on public estimates of total search advertising spending in the United States, Google's share of the U.S. search advertising market is over 70 percent. This market share understates Google's market power in search advertising because many search-advertising competitors offer only specialized search ads and thus compete with Google only in a limited portion of the market. |
| Google's Auction Process for Search Advertising | Google makes space on its search result pages available to advertisers through an auction process that occurs each time a user runs a search. Google starts the auction by first finding all the ads with keywords matching the search. It then excludes ads that are considered ineligible based on certain criteria, such as country restrictions. Google then only displays ads with a sufficiently high "rank" based on a combination of factors, such as the advertiser's bid, the quality of the ad, user location, and the device the user is using. Because the auction process is repeated for every search performed on Google Search, different auctions may lead to different advertisements being displayed.<br><br>Compl. at ¶ 27. | To sell ads on its SERP, in 2002, Google adopted auctions for keywords; advertisers would bid on selected keywords, and when those keywords arose in a query, the winning bidder's ad was shown. At that time, Google also started using a compensation scheme where advertisers pay only when the user clicks on the ad, known as cost-per-click pricing. Some SERP displayed multiple ads. Eventually, Google discovered that it could increase the number of clicks—and its own profits—by ranking ads to promote those with greater relevance and therefore higher expected click-through rates. To help determine placement of ads, Google still uses a "quality score" based on various factors.<br><br>Compl. at ¶ 27. |
| The Lack of Substitutes for Google's Advertising Services | There are no reasonable substitutes for search advertising services or display advertising services, respectively. While an advertiser may connect directly | Other search tools, platforms, and sources of information are not reasonable substitutes for general search services. Offline and online resources, such as |

3

| | | |
|---|---|---|
| | with a publisher to negotiate the placement of advertisements onto the publisher's supply of advertising space, for the vast majority of advertisers and publishers doing so is impractical. Aside from the limited circumstances in which publishers and advertisers negotiate directly, publishers and advertisers must use third-party display advertising services.<br><br>Compl. at ¶ 69. | books, publisher websites, social media platforms, and specialized search providers such as Amazon, Expedia, or Yelp, do not offer consumers the same breadth of information or convenience. These resources are not "one-stop shops" and cannot respond to all types of consumer queries, particularly navigational queries. Few consumers would find alternative sources a suitable substitute for general search services. Thus, there are no reasonable substitutes for general search services, and a general search service monopolist would be able to maintain quality below the level that would prevail in a competitive market.<br><br>Compl. at ¶ 90. |
| High Barriers to Entry and Google's Conduct has Made it Infeasible for Competitors to Emerge | There are high barriers to entry for both the search advertising services market, the display advertising market, and the component display advertising submarkets. Entering any of these markets requires a substantial investment to develop and implement the technology necessary to compete. Google's conduct, such as leveraging its internet search platform dominance and denying interoperability in several respects, as described above, has made it exponentially more difficult for would-be market participants to effectively enter these markets and compete with Google. Google has accordingly used its market dominance to ensure that | There are significant barriers to entry in general search services. The creation, maintenance, and growth of a general search engine requires a significant capital investment, highly complex technology, access to effective distribution, and adequate scale. For that reason, only two U.S. firms—Google and Microsoft—maintain a comprehensive search index, which is just a single, albeit fundamental, component of a general search engine.<br><br>Compl. at ¶ 94.<br><br>Google has maintained unlawful monopolies in the general search services, search |

| | | |
|---|---|---|
| | market entry by would-be competitors is infeasible. And Google's conduct has made it impractical for existing market participants to compete, which has resulted in large numbers of companies exiting the relevant markets.<br><br>Compl. at ¶ 70. | advertising, and general search text advertising markets through its many exclusionary agreements and other conduct that have separately and collectively harmed competition by:<br>a. Substantially foreclosing competition in general search services and protecting a large majority of search queries in the United States against any meaningful competition;<br>b. Excluding general search services rivals from effective distribution channels, thereby denying rivals the necessary scale to compete effectively in the general search services, search advertising, and general search text advertising markets;<br>c. Impeding other potential distribution paths for general search services rivals;<br>d. Increasing barriers to entry and excluding competition at emerging search access points from nascent competitors on both computers and mobile devices;<br>e. Stunting innovation in new products that could serve as alternative search access points or disruptors to the traditional Google search model; and<br>f. Insulating Google from significant competitive pressure to improve its general search, search advertising, and general search text advertising products and services.<br><br>Compl. at ¶ 166. |

5