## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

### JOINT STATUS REPORT

In accordance with the Court's February 16, 2021 Minute Order, the parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report summarizing the state of discovery and identifying issues, and the parties' respective positions, that will be raised at the status hearing on February 25, 2021.

## I.   Case No. 1:20-cv-03010

### A.   Plaintiffs' and Google's Joint Summary of the State of Discovery

*Plaintiff United States' Production of Investigation Materials.* In accordance with the Amended Scheduling & Case Management Order (ECF No. 108-1), Plaintiff United States avers

that it has produced all Investigative Materials obtained from third parties listed in Plaintiffs' Initial Disclosures. On January 15 and January 29, 2021, Plaintiff United States produced documents and data obtained from third parties in the course of its pre-Complaint investigation. On February 12, Plaintiff United States produced correspondence with third parties listed in Plaintiffs' Initial Disclosures, as well as additional documents and data obtained from third parties in the course of its pre-Complaint investigation. On February 19, Plaintiff United States produced the CIDs that it served during the pre-Complaint investigation, as well as correspondence and smaller productions of miscellaneous documents received from third parties. The February 19, 2021 production completed Plaintiff United States' required production of Investigative Materials set forth in Paragraphs 7(i) and (ii) of the CMO. The United States has completed production of documents from 39 third parties, data from 30 third parties, and all correspondence exchanged during the pre-Complaint Investigation with third parties listed on Plaintiffs Initial Disclosures.[1]

*Plaintiff States' Production of Investigation Materials.* In accordance with the Amended Scheduling & Case Management Order (ECF No. 108-1): 1) the States of Arkansas, Florida, Georgia, Indiana, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Montana, South Carolina, Texas, and Wisconsin produced all their respective materials from parties listed in Plaintiffs' Initial Disclosures on January 15, 2021, with a supplemental production on February 1, 2021; and 2) the State of California joined the Plaintiffs' Initial Disclosures on January 15, 2021, and produced all of its respective materials from parties listed in Plaintiffs' Initial Disclosures on January 22, 2021. The production by Plaintiff States totaled more than

---

[1] Consistent with the definition in the CMO, "Investigation" here means the pre-Complaint inquiry by Plaintiffs into potential anticompetitive conduct by Google.

600 documents. Plaintiff States did not re-produce documents produced by co-Plaintiff United States.

*Third Party Confidentiality Designations.* Pursuant to the Stipulated Protective Orders (ECF Nos. 98 & 86), Plaintiffs sent the then-operative Order to each third party providing Investigation Materials to Plaintiffs. In accordance with the procedures in that Order, Plaintiffs continue to receive and process the third parties' Highly Confidential designations.

*Third Party Discovery.* Plaintiffs have issued document subpoenas to 40 third parties. Google has served cross-notices to 22 of those third parties. Google expects to serve additional cross-notices now that it has received from Plaintiffs the CIDs Plaintiffs served during the Investigation. Plaintiffs and Google anticipate that they will continue to issue additional document subpoenas as discovery progresses. The parties are exchanging notice of modifications, extensions, or postponements to discovery requests served on non-parties on a weekly basis.

*Google's Discovery to Plaintiffs.* Google served Plaintiffs with its First Set of Requests for Production on February 2, 2021. Plaintiffs' responses are due on or before March 4, 2021.

*Plaintiffs' Discovery to Google.* Plaintiffs served Google with Requests for Production on January 5 and January 11. Google submitted its respective Responses and Objections on February 4 and February 10. On February 22, Google sent its first production to Plaintiffs, consisting of approximately 4.6 terabytes of partially encrypted data, via hard drive; at the time of this filing, Plaintiffs have not yet received the FedEx and so are unable to confirm the production.

The parties met and conferred regarding the requests on February 12, 18, and 19. The parties' statements regarding open discovery issues are stated separately below.

### B.     Plaintiffs' Statement Regarding Its Document Requests to Google

Nearly 50 days have passed since the United States first subpoenaed Google for documents. Google has not produced a single document in response, nor has it provided a benchmarked production schedule.[2] This delay, as well as Google's negotiation tactics along the way, undermine the Plaintiffs' efforts to keep discovery on schedule. Plaintiffs respectfully request assistance from the Court to ensure that Google (1) produces documents as required by the two requests for production Plaintiffs have served and (2) meaningfully engages with Plaintiffs to resolve discovery disputes, avoiding unnecessary delays in the discovery schedule.

### 1.     Background

Plaintiffs served their First Requests for Production of Documents ("First RFP") on January 5. The First RFP included one document request,[3] which provided (1) a subset of search terms that Google had previously used during the Investigation, and (2) a list of custodians, most of which were used by Google during the previous investigation or identified in Google's initial disclosures, along with some new custodians identified by the Plaintiffs. The purpose of this request was to obtain new documents created since the issuance of the Investigation subpoena and to expedite the production of documents in this litigation by using search terms that Google had already agreed to during the Investigation.

---

[2] On February 23, at 7:45 PM, Google sent its first production of documents to Plaintiffs via DOJ's JEFs system. Google tendered what it said were approximately 3,000 documents, without any explanation as to the source of these documents; the production could not be confirmed before this filing was due. Similarly, Google purports to have sent Plaintiffs several terabytes of search-query data on the same day. Plaintiffs have not received the data and are not optimistic about its value. Despite Plaintiffs' requests otherwise, Google has encrypted roughly 50% of the search strings in the data, rendering several forms of analysis impossible. Although the parties continue to negotiate the appropriateness of Google's encryption, Plaintiffs agreed to accept Google's production after Google assured Plaintiffs that the acceptance would not prejudice the ongoing negotiations.

[3] The First RFP also included one request for data, which the parties continue to negotiate. Although Plaintiffs may at a later hearing seek the Court's assistance, no issue regarding the request is ripe for the upcoming hearing.

Given the targeted scope of the First RFP, Plaintiffs also served a Second Requests for Production of Documents ("Second RFP") on January 11, which included requests for documents and data not requested or obtained during the Investigation. The main focus of Plaintiffs' Second RFP is to obtain documents and data relevant to specific issues raised by this litigation. Plaintiffs have not served any additional RFPs on Google.

Thirty days after receiving the First and Second RFPs, Google returned its Responses and Objections. Google's response to the First RFP declared outright that Google would not produce any documents and that Plaintiffs would instead have to obtain documents under the Second RFP only. Google's response to the Second RFP asserted a litany of objections but ultimately indicated a willingness to produce documents. The response committed Google to substantially completing its production of these documents by May 31—five months after Google received the First RFP.

After Google provided its Responses and Objections, the parties held three meet and confers and exchanged several letters (1) to address the issues raised by Google's responses, and (2) to discuss appropriate search protocols. During these exchanges, Plaintiffs learned that Google's refusals were even more extensive than Google's initial written responses had suggested. In addition to refusing to produce any documents under the First RFP, Google refuses to proffer a good-faith proposal of search terms and custodians for the Second RFP and refuses to cooperate on procedural matters.

Google has refused to proffer a good-faith proposal of search terms and custodians for the Second RFP. Initially, Google proposed using the search terms and custodians in the First RFP as Google's means of complying with the custodial requests in the Second RFP. Plaintiffs explained that this proposal was inadequate because the search terms in the First RFP were

drafted during the Investigation and were not tailored to the dozens of individual requests in the Second RFP. Plaintiffs repeatedly asked that Google to engage in a good faith effort to create an appropriate and reasonable search protocol (for example, by speaking to employees most knowledgeable about the relevant subject and proposing individualized search terms and custodians based on those discussions for each custodial request in the Second RFP). Each time, Google denied Plaintiffs' request.

With this status report pending, Google yesterday wrote the United States with a last-minute attempt to improve its position. Unfortunately, Google's offer has little substance and cannot resolve the issues in dispute. Google has now proposed individualized search terms and custodians for 20% of the requests in the Second RFP. For the remaining 80%, Google continues to rely on the Investigation search terms and custodians that Plaintiffs identified under the First RFP. Similarly, Google's latest offer maintains Google's May 31 production deadline with no production milestones in the interim.

As to procedure, Google refused to work collaboratively with Plaintiffs to develop a reasonable production protocol. Plaintiffs requested that Google move its production timeline from May 31 to April 30; Google refused. Plaintiffs asked that Google propose interim milestones for completing its production (e.g., at least 50% produced by March 21); Google orally committed not to "dump" on Plaintiffs on May 31, but otherwise refused to offer any concrete commitments. Plaintiffs asked Google to evidence the progress it has made so far, including identifying (1) a list of custodians whose documents Google has collected; (2) the date range of the documents collected for each of those custodians; (3) a list of custodians whose documents have been processed and are ready for review; (4) the document count for each of those custodians using Google's proposed search terms; (5) the number of documents that have

been reviewed for relevance by Google attorneys; and (6) how many documents Google plans to produce during the week of February 22, 2021. For each request, Google refused to answer, declaring that Plaintiffs were not entitled to information about Google's progress.

## 2.   Issues and Positions

With this background information, Plaintiffs respectfully request that the Court resolve the following issues at the upcoming hearing.

### a)   Google's Outright Refusal to Produce Documents Responsive to the First RFP

The First RFP asks that Google produce documents in the folders of specific custodians hitting on specific search terms. This approach was adopted to start the documents flowing as quickly as possible; instead, although Google agreed to most of these custodians and all these search terms during the Investigation, Google has refused outright to produce documents responsive to this request. Google objected that the request is overly broad, but Google offered no proposal for narrowing the request.

Plaintiffs have indicated a willingness for Google (1) to conduct a relevance review on the documents responsive to the request, (2) to identify unnecessary custodians, and (3) to identify overbroad search terms. Google has declined all these offers. Plaintiffs therefore respectfully request that this Court instruct Google to apply the keywords in the First RFP to the custodians in the First RFP, immediately producing all non-privileged documents. Further, the Court should instruct Google to complete this production by April 1, 2021, with significant milestone productions along the way.

### b)   Google's Refusal to Generate Meaningful Search Terms and Custodians for the Second RFP

Although Plaintiffs' Second RFP contains dozens of distinct custodial requests, Google has refused to proffer custodians or search terms tailored to the vast majority of the requests.

Instead, Google insists on using the Investigation search terms and custodians, and at the last minute, proposed tailored search terms and custodians for only 20% of the custodial requests. Not surprisingly, the search terms in the First RFP—which were negotiated before Plaintiffs issued the Second RFP—do not align with the requests in the Second RFP. And Google's last-minute search-term additions—which ignore 80% of the custodial requests in the second RFP—fail to correct the problem.

Plaintiffs therefore request that the Court instruct Google to engage in good-faith negotiations with Plaintiffs. As the party most familiar with the requested documents, Google must generate—for each custodial request, not just 20%—(1) a list of custodians likely to have responsive documents, and (2) search terms likely to capture responsive documents. Google should generate this proposal independently based on discussions with the employees most knowledgeable about the relevant subject.

### c)     Google's Sluggish Production Timeline and Refusal to Commit to Production Milestones

Even while agreeing to produce only a narrow set of documents, Google has not committed to substantially complete its production before May 31, nearly five months after Plaintiffs served their RFPs. Google's proposal also contains no milestones for measuring Google's progress before May 31. By contrast, Plaintiffs, who were required under the CMO to produce certain Investigative files, agreed to a series of milestones for their production, and substantially completed production roughly one month after the CMO's issuing.

Plaintiffs respectfully request that the Court instruct Google to complete its productions under the Second RFP by April 30, with at least 25% of materials produced by the end of February, at least 50% by March 21, and at least 75% by April 1.

### d) Google's Refusal to Evidence Its Progress and Objections

Finally, Google has refused to produce any information Plaintiffs need to evaluate either Google's progress or Google's objections based on burden and proportionality. Accordingly, Plaintiffs respectfully request that the Court order Google to identify (1) a list of custodians whose documents Google has collected; (2) the date range of the documents collected for each of those custodians; (3) a list of custodians whose documents have been processed and are ready for review; (4) the document count for each of those custodians using Google's proposed search terms; (5) the number of documents that Google's attorneys have reviewed; and (6) at least one week before any production, roughly how many documents Google plans to produce.

### C.    Google's Statement Regarding Plaintiffs' Document Requests

The purported disputes that the DOJ Plaintiffs ("DOJ") describe are meritless, and in any case, premature. The parties should continue to meet and confer to try to resolve or narrow any disputes; and if motions practice is necessary, it can occur once that process has completed.

First, there is no justification for DOJ to bypass the Federal Rules of Civil Procedure and demand that Google produce any document that hits on one or more of dozens of search terms across nearly 100 document custodians, untied to a substantive document request. DOJ's unorthodox approach is particularly problematic and inappropriate here, where Google already has produced more than 2 million documents during the pre-Complaint investigation. DOJ has not explained why it is entitled to the wholesale production of documents that only hit on search terms, other than to suggest that Google could quickly produce such documents—a proposition that is incorrect because Google still will have to review all the documents for privilege and designation under the Protective Order.

Second, with regard to the 77 substantive requests (comprising over 250 requests when including sub-parts) from the Second Set of Requests for Production, DOJ has not articulated

any deficiency in Google's proposed collection and production process. DOJ does not, for example, contend that the searches Google has agreed to run (including all of the dozens of searches DOJ identified in the First Request for Production and many more that Google independently has proposed) do not adequately capture documents potentially responsive to the Second Requests. Given the fact that DOJ already has received enormous productions from Google, one would have expected that DOJ's document requests would be targeted and narrow—covering only discrete subject areas not previously subject to pre-Complaint discovery or a more recent time period after the time when Google collected and produced documents during the pre-Complaint investigation. DOJ has instead served sweeping requests, including but not limited to requests directed to many subjects already covered by the CID, and it is seeking materials from time periods that predated the CID productions. Notwithstanding DOJ's unreasonable approach, Google proposed a reasonable method for responding to those 77 requests precisely to avoid the sorts of disputes and delays that DOJ appears intent on raising. DOJ has not responded to Google's multiple requests that DOJ explain how Google's proposed method for responding to these requests is not reasonable or adequate. Google specifically told DOJ that it would consider additional search terms proposed by DOJ and additional custodians if DOJ could adequately explain why they were necessary and reasonable. DOJ has not responded to those requests during the parties' meet and confers to date.

1.    **DOJ's Request For All Documents Hitting On Search Terms, Regardless of Relevance to Claims and Defenses in the Litigation (RFP Set 1, No. 1)**

DOJ demands that Google produce all non-privileged documents that hit on any one of the proposed search strings contained in Appendix A to the First Requests for Production, regardless of their relevance to the claims and defenses in the litigation and untied to any substantive request for production. Specifically, DOJ requested that Google run a series of 43

search strings across the files of more than 90 custodians for over a decade, and produce every non-privileged document that hits on any one of those terms. DOJ's unbounded request violates Fed. R. Civ. P. 26(b), which limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." On its face, DOJ's request would sweep in reams of irrelevant information, as DOJ cannot possibly make the case that just because a document contains a particular search term it must be relevant to this case; indeed, the fact that DOJ served a voluminous second set of substantive requests identifying specific topics confirms this. When pressed to explain the basis for these requests, DOJ has offered only that it would be simple for Google to produce any documents that hit on search terms. But even if that were true (and it is not), that is not how discovery works: a party must make substantive document requests that are designed to obtain information relevant to a claim or defense and proportional to the needs of the case.

Notwithstanding the impropriety of DOJ's request, Google has agreed to produce documents that hit on any of DOJ's proposed search terms that are responsive to any of the 77 individual requests DOJ posed in its Second Requests for Production, subject to Google's responses and objections to those specific requests. DOJ has not explained which documents that hit on its proposed search terms, but are not otherwise responsive to its 77 individually numbered requests, are nonetheless relevant to the litigation, or why DOJ should not have to serve substantive document requests to justify the use of such terms.

## 2. DOJ's Request for Additional Tailored Search Strings in Connection with Its Second Requests for Production (RFP Set 2, Nos. 1-77)

To expedite the collection and production of documents responsive to DOJ's Second Requests, Google agreed to apply the protocol attached to DOJ's First Requests with only minimal modifications. Specifically, Google agreed to use all of DOJ's 43 proposed strings

without modification.  DOJ also attached to its First Request a list of 92 custodians, many of whom were not part of the document productions that Google performed in response to DOJ's extraordinarily broad pre-Complaint CID.  Google agreed to produce documents from 76 of those custodians, as these custodians are the ones most likely to have non-privileged, responsive information of those included on DOJ's list.  Google agreed to this extensive collection and production—on top of the extensive collection and production performed during the investigation that resulted in production of more than 2.1 million documents—to avoid discovery disputes and to allow it to begin a full-scale review now instead of engaging in a protracted back-and-forth over search term proposals with DOJ.

Rather than identifying any substantive deficiencies in Google's proposed approach, DOJ now claims that the use of the very search terms and custodians that DOJ had proposed in its First Requests is not sufficient.  Rather than allowing Google to proceed expeditiously using the broad search protocol propounded by DOJ, it now wants Google to prepare a tailored list of custodians and search terms for each of DOJ's 77 individually numbered requests.  But DOJ's proposed search term strings are plainly relevant to its individually numbered requests, and are sufficiently broad that any more "tailored" proposal would result in a protocol that is narrower than what Google has already agreed to do.  To provide a specific example, DOJ's Second Request for Production No. 2 seeks, among other things, "all documents addressing or discussing … Google's market share of the general search market" for the last 19 years.  The search terms that DOJ proposed and that Google agreed to apply include at least six strings that contain the word "market" in proximity to the word "share" or possible synonyms, such as "percent" or "portion."  Any reasonable proposal for a combination of search terms and custodians that is specifically tailored to this request would be narrower than what is embodied by the protocol that

Google has agreed to apply.

When DOJ surprisingly objected to Google's generous proposed approach on a meet-and-confer call on February 18, Google invited DOJ to identify any request in its Second Requests that DOJ believes might not be covered by the search strings and custodians that it already proposed in the First Request. DOJ has not yet identified any such request, and it has not taken Google up on its offer of a follow-up call to walk through the requests individually. In other words, DOJ has refused to articulate why it believes Google's agreement to use all of DOJ's proposed search terms and 76 of its proposed custodians is inadequate. As DOJ already has access to an enormous trove of Google's documents, if DOJ had any concern that the search terms were not adequate, it could propose additional terms, or at a minimum, identify specific requests where it believed the search strings might be inadequate.

Nevertheless, in light of DOJ's vaguely expressed concern, Google offered to perform supplemental searches in response to 11 of the requests in DOJ's Second Set of Requests for Production, and it has provided to DOJ 13 additional search strings that it proposes to run. In response, DOJ did not identify any substantive deficiencies, and instead repeated its request that Google develop a new set of search terms "specifically tailored" to each of its 77 requests.

### 3.    The Timing of Google's Collection, Review, and Production

Google's collection and review of the extraordinary volume of material encompassed by DOJ's broad requests is well underway. With respect to data, Google made its first production available to DOJ and expects to substantially complete its production of data by the end of March. With respect to documents, Google made the first of its rolling productions this week, and it anticipates substantially completing its document production (using the search strings and custodians it has proposed to DOJ) by the end of May. That is an aggressive timeline for a

review of this size, and it will leave approximately ten months between the substantial completion of its document production and the close of fact discovery in March 2022.

Upon receipt of DOJ's First and Second Requests for Production, Google began the process of collecting and processing emails and other electronically stored information from the dozens of custodians proposed by DOJ. Collection is now substantially complete for all custodians proposed by Google, and processing is well underway. The processing step is time consuming given the number of custodians and the long time periods at issue, and the process is entirely dependent on the amount of machine time required—it is not a process that can be expedited by adding attorneys or other legal personnel to the process. Google had a document review team ready to begin as soon as the first batches of documents were processed and able to be reviewed, and it is making the first of its productions this week, even as the processing remains ongoing due to the volume of material requested. In short, Google is expediting its production by proceeding on multiple parallel tracks instead of completing one phase before moving onto the next.

While Google is not in a position to be able to agree to DOJ's proposed schedule at this stage given that material is still processing, Google is working as expeditiously as possible and will produce responsive documents on a rolling basis. Google will have a better sense of the approximate timeline of its rolling productions in the coming weeks, once the data is fully processed, and it will update DOJ as soon as it is able.

## II.   Case No. 1:20-cv-03715

### A.   Colorado Plaintiff States' and Google's Joint Summary of the State of Discovery

*Colorado Plaintiff States' Production of Investigation Materials.* Pursuant to the Court's Minute Order of January 21, 2021, the Colorado Plaintiff States began production of their

Investigation Materials on February 4, 2021. The February 4 production included the majority of their Investigation Materials, including over 445,000 documents obtained from 12 third parties, which were produced to Google pursuant to Paragraph 7(ii) of the Amended Scheduling & Case Management Order, ECF No. 108-1 ("CMO"). The Colorado Plaintiff States have substantially completed production in response to Paragraph 7(ii) of the CMO (i.e., the documents, data, and materials obtained from third parties in response to CIDs or voluntary requests for information issued by any of the Plaintiffs in that action before the filing of their Complaint on December 17, 2020).

The Colorado Plaintiff States are in the process of preparing to produce documents in response to Paragraph 7(i) of the CMO, including all CIDs or other requests for information issued to third parties in connection with their Investigation as well as their correspondence with those third parties. The Colorado Plaintiff States do not have any documents responsive to Paragraph 7(iii) or (iv) of the CMO (i.e., declarations, affidavits, or transcripts of testimony from third parties identified in their initial disclosures). The Colorado Plaintiff States expect to make another small production before the status conference on February 25 of Investigation Materials responsive to Paragraphs 7(i) of the CMO.

The Colorado Plaintiff States have sought consistency with Plaintiff United States' production of Investigation Materials and are centralizing all correspondence exchanged during the pre-Complaint Investigation with third parties listed on the Colorado Plaintiff States' Initial Disclosures. The remaining materials yet to be produced consist largely of email communications subject to privilege and work product reviews. The Colorado Plaintiff States expect to complete their production of Investigation Materials on or before March 8, 2021.

*Colorado Plaintiff States' Discovery on Google*. The Colorado Plaintiff States will serve

their First Requests for Production ("First RFPs") to Google on or before February 24, 2021. The Colorado Plaintiff States have conferred with the Department of Justice regarding the First RFPs to avoid, as much as practicable, serving RFPs seeking materials that overlap with or duplicate the Department of Justice's First and Second Sets of Requests for Production to Google. The Department of Justice and the Colorado Plaintiff States will thereafter confer jointly with Google on the pending requests to further the efficiency of the discovery process.

*Google's Discovery on the Colorado Plaintiff States*. Google served its First Set of Requests for Production on February 5, 2021. The Colorado Plaintiff States' responses are due on or before March 8, 2021.

*Third-Party Discovery*. The Colorado Plaintiff States have begun serving subpoenas on the 40 third parties to whom the Department of Justice has issued subpoenas so that negotiations with and responses of third parties can proceed efficiently and on approximately the same schedule. Once served, the Department of Justice and the Colorado Plaintiff States will confer jointly with third parties on the pending requests to further the efficiency of the discovery process. The Colorado Plaintiff States expect to have served subpoenas on at least half of the 40 third parties to whom the Department of Justice has issued subpoenas by the time of the status conference. By February 26, 2021, the Colorado Plaintiff States expect to have served subpoenas on most, if not all, of these third parties. The Colorado Plaintiff States will then proceed to issuing subpoenas to third parties that have not received requests from the Department of Justice, and the Colorado Plaintiff States and Google anticipate that they will continue to issue additional subpoenas as discovery progresses.

*Notice to Third Parties and Confidentiality Designations*. Pursuant to the Stipulated Protective Order (ECF Nos. 98), the Colorado Plaintiff States sent the Protective Order to each

third party providing Investigation Materials to the Colorado Plaintiff States. In accordance with the procedures in that Order, the Colorado Plaintiff States continue to receive and process the third parties' Highly Confidential designations.

Dated: February 23, 2021                    Respectfully submitted,


By:    _/s/ Kenneth M. Dintzer_
Kenneth M. Dintzer
Elizabeth S. Jensen
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*


By:    _/s/ Jonathan R. Carter_
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*


By:    _/s/ Adam Miller_
Xavier Becerra, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*


By:    _/s/ Lee Istrail_
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust

Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com

Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By: ___/s/Daniel Walsh_____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: ___/s/ Scott L. Barnhart_____
Theodore Edward Rokita, Attorney General Scott L.
Barnhart, Chief Counsel and Director, Consumer
Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: ___/s/ Justin D. Clark_____
Justin D. Clark, Deputy Director of Consumer
Protection
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of Consumer
Protection
Philip R. Heleringer, Assistant Attorney General
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Justind.Clark@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By:_____/s/ Stacie L. Deblieux_____
Jeff Landry, Attorney General
Stacie L. Deblieux, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
Deblieuxs@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:_____/s/ Wisam E. Naoum_____
Dana Nessel, Attorney General
Wisam E. Naoum, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
NaoumW1@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:_____/s/ Kimberley G. Biagioli_____
Kimberley G. Biagioli
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Kimberley.Biagioli@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:_____/s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:_____/s/ Mark Mattioli_____
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By: _____/s/ Rebecca M. Hartner_____
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy Attorney
General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By: _____/s/ Bret Fulkerson_____
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By: _____/s/ Gwendolyn J. Lindsay Cooley_____
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By:      */s/ Jonathan B. Sallet*

Jonathan B. Sallet, Special Assistant Attorney
General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General
(D.C. Bar No. 1022365 *inactive*)
Diane R. Hazel, First Assistant Attorney General
(D.C. Bar No. 1011531 *inactive*)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff Colorado*


Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*


Brunn W. (Beau) Roysden III, Solicitor General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney
General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff Arizona*

Max Merrick Miller
Attorney General's Office for the State of Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*


Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*


Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*


J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*


Jeff Pickett
Senior Assistant Attorney General
jeff.pickett@alaska.gov
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100

*Counsel for Plaintiff Alaska*


Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*


Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*


Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection
Division
Benjamin Bernard Paholke, Assistant Attorney
General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*


Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*


Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Erin L. Shencopp
Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
eshencopp@atg.state.il.us
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff Illinois*


Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*


Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*


Matthew B. Frank, Assistant Attorney
General Antitrust Division
William T. Matlack, Assistant Attorney
General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*


Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*


Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*


Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*


Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*


Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio,
Antitrust Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*


Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*


Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*


Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*


David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*


Yvette K. Lafrentz
Office of The Attorney General of South
Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*


Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*


Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*


Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West
Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Wyoming*

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
725 12th Street, NW
Washington, DC 20005
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K St, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*