## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

### JOINT STATUS REPORT

In accordance with the Court's Minute Order of March 11, 2021, the parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report updating the Court on the progress concerning search protocols and search terms.

### I.     Case No. 1:20-cv-03010

As the parties indicated in their Joint Status Reports of March 5, 2021 (ECF No. 116) and March 10, 2021 (ECF No. 117), the parties have continued to meet and confer. Plaintiffs submitted to Google on March 1 a proposed search protocol. On March 4, Google proffered its own proposal.

On March 8, Plaintiffs submitted a modified search term proposal to Google. On March 9, Google provided hit reports for Plaintiffs' Second Proposal.

On March 12, Plaintiffs submitted a modified search proposal to Google. On March 15, Google provided hit reports for that proposal.

On March 9, Plaintiffs submitted correspondence regarding disputed custodians. On March 15, Google submitted correspondence regarding additional agreed custodians. On March 16, Plaintiffs submitted a further modified search proposal to Google. On March 18, Google provided hit counts for that proposal.

On March 18, Google also submitted a modified version of its March 4 Proposal to Plaintiffs.

The parties have not been able to agree on a protocol for identifying documents responsive to Plaintiffs' Requests for Production. Accordingly, the parties have set forth in Sections III and IV their respective positions regarding the issues that they believe remain unresolved following the meet-and-confer process.

## II.      Case No. 1:20-cv-03715

As the parties noted in their Joint Status Report of March 5, 2021 (ECF No. 116) and March 10, 2021 (ECF No. 117), the Plaintiff States have an interest in the search terms and custodians selected through the process described above and therefore are participating in the meet-and-confer process, including the exchange of information and development of modified proposals.

## III.     Plaintiffs' Statement Regarding Its Document Requests to Google

### A.      Introduction

Over the last three weeks, Plaintiffs have worked to create a reasonable search-term proposal that balances the twin goals of (1) locating sufficient information responsive to

Plaintiffs' Second Request for Production, dated January 11, 2021 ("Second RFP"), and (2) avoiding any unnecessary burden to Google in reviewing and producing responsive information. Using the information available, Plaintiffs estimate that their Current Search Protocol, attached herein as Exhibit 1, would lead to a document production of fewer than 4.85 million documents (including documents for *all* currently disputed custodians).[1] A production of this size is appropriate when viewed in light of Rule 26 factors and comparable antitrust cases.

Google, however, has taken the position Plaintiffs' Current Search Protocol leads to more documents than is "reasonable to review." Email from Colette Connor to Diana Aguilar (Mar. 17, 2021). Instead, Google has refused to deviate in any meaningful way from a search protocol that would produce approximately 1.1 million documents. To avoid a larger production of documents, Google (1) has not attempted to identify search terms that address many of Plaintiffs' document requests, (2) has declared that it will not accept any of the currently disputed custodians Plaintiffs' propose, and (3) has unilaterally limited the date ranges for which it is willing to pull responsive information. Google has failed to provide significant justification for these actions, and its general claims of burden are quickly dispelled given the reasonable documents counts yielded by Plaintiffs' Current Search Proposal.

Aside from Google's unwillingness to negotiate a search-and-custodian protocol that would result in a reasonably sized document production, Google has taken an impermissible approach to drafting search terms. Instead of offering search terms that correspond to Plaintiffs' specific discovery demands, Google has drafted search strings for broad categories of

---

[1] Plaintiffs have estimated all production volumes using a responsiveness rate of 25% (which is consistent with the responsiveness rate for Google's production during the Investigation).

information—categories created by Google, unilaterally. A troubling byproduct of Google's approach is that the proposal is opaque and difficult to analyze for sufficiency. Specifically, Google's approach makes it impossible to track Google's search terms to the Plaintiffs' actual document requests. For many individual requests, it is difficult to discern which (if any) search strings Google is offering as sufficient to locate responsive information. This approach, moreover, conflicts with the Federal Rules of Civil Procedure; as a responding party, Google cannot simply rewrite Plaintiffs' discovery requests as it sees fit.

Lastly, it is important to consider Google's proposed production volume in light of its anticipated rate of production (and current pace of production). To date, over two months since it received Plaintiffs' Second RFP, Google has produced only 3,000 documents. Google has informed the Court that—using its March 4 Search Protocol—Google anticipates producing 50% of its documents by early April and 75% by early May. In short, Google's plan is to produce only approximately 800,000 documents over four months. This is a glacial pace of production for a party with Google's resources, especially when considered in light of similarly situated litigants in past cases. Plaintiffs are concerned that Google's proposed production timeline will undermine the schedule set forth in the Case Management Order.

To avoid any further delays, the Plaintiffs respectfully seek the Court's assistance (1) to mandate that Google adopt Plaintiffs' Current Search Protocol (Exhibit 1), (2) to move forward with additional custodian negotiations and reach an agreement by the March 30 Status Conference, and (3) to accelerate Google's production schedule.

**B.    The Court Should Adopt Plaintiffs' Search Protocol and Reject Google's Search Protocol**

The Court should adopt, in full, Plaintiffs' proposed search terms because they produce a reasonable count of documents in relation to the nature of this case and because they provide

clarity as to how the keywords relate to specific document requests; Google's proposal misses both of these marks.

> 1.   *Google's Search Framework Is Structurally Impermissible and Deficient and, If Adopted, Would Lead to the Exclusion of Responsive and Relevant Information*

On March 4th, Google provided Plaintiffs with an updated search protocol for how it would locate information responsive to the Plaintiffs Second RFP.[2] In this proposal, Google ignored the structure of the Plaintiffs' specific requests for documents; instead, Google fused Plaintiffs' individual requests into twelve general categories and one "catch all" category, sometimes placing individual requests in multiple categories.[3] Google then proposed multiple search strings for each category.

On March 18, Google proffered a modified version of this proposal. Google's March 18 Proposal retains the same unwieldy "category" framework. As an example, the first category in Google's March 18 Proposal melds eighteen of Plaintiffs' requests[4] into a single category of "search strings for documents relating to markets, competition, quality, and scale in search and

---

[2] Google had initially proposed adopting the search "protocol attached to DOJ's First Requests with only minimal modifications." Joint Status Report (ECF 111), Feb. 23, 2021. "Specifically, Google agreed to use all of DOJ's 43 proposed strings without modification against 76 custodians." *See id*. Since then, Google has significantly altered that initial proposal, ensuring a low production volume. Instead of adopting the protocol attached to DOJ's First Requests "with minimal modifications," it has severely limited the scope of that search protocol by imposing unilateral date restrictions and removing several designated custodial groups.

[3] Google has not explained how it came up with its groupings, and at times, it's hard to decipher any clear logic. For example, Request Nos. 9 and 49 are joined together in the first category: RFP 9 seeks documents relating to exclusive agreements with web hosting companies or publishers to crawl websites; RFP 49 seeks documents relating to Google's introduction and use of product listing ads. These topics are unrelated, and identifying documents for these topics will require entirely different custodial sets and search terms. Despite this, Google proposes straining to join search strings together to address disparate topics such as these, which only presents the opportunity for further disagreement between the parties.

[4] Plaintiffs' Requests Nos. 2, 4, 5, 6, 7, 8, 9, 18, 20, 21, 22, 31, 34, 39, 43, 46, 48, and 49.

search advertising." Google's March 18 Search Term Proposal, Exhibit 2. Google then proposes 34 search strings to generally address this enormous category.

Aside from the many practical issues that arise from this novel, ill-conceived framework (detailed below), Google's proposal fails because it does not use Plaintiffs' actual requests as a basis for drafting search terms. Federal Rule of Civil Procedure 26(g) requires Google's counsel to certify that it has "made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to *[Plaintiffs'] discovery demand*," not the discovery demands as rewritten by Google. 1983 Advisory Comm. Note to Rule 26(g) (emphasis added).

Google's framework also produces inefficiencies and obscures deficiencies. For example, to evaluate whether Google's search terms capture the information Plaintiffs seek for Request No. 8, the parties will need to review 34 different search strings listed in Google's proposed first category; under Plaintiffs' proposal, the parties would need to evaluate only three search strings specifically tailored to this request. The problem is amplified for requests that are split over multiple categories. Consider Request No. 31 which seeks documents relating to "how forked versions of Android would or could affect Google's search and search advertising business." Under Google's proposal, the parties would have to evaluate 41 different search strings, and the concomitant groups of custodians, to understand whether Google has offered search terms and custodians sufficient to locate responsive information to Plaintiffs' request. Under Plaintiffs' proposal, the parties would evaluate one proposed search string. Google's proposal thus needlessly complicates the review of search strings by eschewing the traditional request-by-request approach in favor of a process that offers little clarity or efficiency.

Unfortunately, Google has not used the last three weeks to refine its proposal, despite concerns raised by the Plaintiffs. Of the 41 Investigation search strings Google is proposing to use to locate information responsive to Plaintiffs' Second Requests, Google has offered minimal modifications for eleven of them, even though the Investigation search terms were drafted for requests not present here. Cynically, Google waited until 9:30 a.m. on March 18, 2021—the morning this JSR was due—to present Plaintiffs with a modified proposal. This gamesmanship has merely made this process take longer.

Google's March 18 Proposal, moreover, fails to address the failings of its March 4 Proposal. In fact, it illustrates Google's unwillingness to meaningfully expand its proposal in light of Plaintiffs' efforts to identify deficiencies in Google's original proposal. After nearly three weeks of considering Plaintiffs' iterative requests, Google accepted enough of Plaintiffs' proposed search string to increase Google's estimated production volume by approximately *8,000 documents*. That is, Google designed both its March 4 Proposal and its March 18 Proposal to yield a document production volume that would not exceed approximately 1.1 million documents.

During the last status conference, this Court instructed the parties:

> [T]he focus really ought to be, it seems to me, and this is directed to both sides, on crafting the search terms that are necessary, and identifying the custodians who possess the records that are responsive to the second RFP.
>
> Now, there very well may be an overlap and the search strings that were used in the investigation may provide a useful starting point. But there's no reason to think that those search strings alone are going to capture everything that the second RFP requests.

February 22 Status Conference Hearing Transcript, Tr. at 22:24-23:7.

Google has ignored this instruction. Given Google's impermissible approach to drafting

search terms and its unwillingness to provide a clear and workable search proposal, Plaintiffs request that the Court reject Google's proposal.

   2.   *Plaintiffs' Search Protocol is Reasonable and Tailored to Locate Information Responsive to Plaintiffs' Second RFP*

The Court should adopt the Plaintiffs' search terms because they will reasonably and efficiently ensure the document production required under the Federal Rules.

From the outset of the parties' discovery negotiations, Plaintiffs have sought Google's engagement in identifying appropriate search terms and custodians to locate information responsive to Plaintiffs' Second RFP. During multiple meet and confers, Plaintiffs requested that Google propose search terms and custodians on a request-by-request basis to respond to Plaintiffs' Second RFP. Google refused, calling this traditional approach to search term and custodian negotiations "make-work." Instead, Google insisted that the Investigation search terms (with minor additions) as a whole satisfied the individual request in Plaintiffs' Second RFP. When Plaintiffs objected given the lack of specificity in Google's proposal, Google demanded that Plaintiffs identify any holes in Google's vague proposal. [5]

To avoid further delay, Plaintiffs did just that. Two business days after the Status Conference, on March 1, 2021, Plaintiffs sent Google a set of search terms and custodians which—when combined with those used during the Investigation—would provide information responsive to Plaintiffs' Second RFP ("Plaintiffs' First Proposal"). For visibility, Plaintiffs provided the terms on a request-by-request basis and identified specific custodial groups that each search string should be run against.

---

[5] *See* February 22 Status Conference Hearing Transcript, Tr. at 26:1-12 ("We said, if you have additional search strings that you want [Google] to consider that . . . you think are missing think are missing, please let [Google] know, [Google will] evaluate those. If there are particular other issues or things that [Plaintiffs] think aren't covered, let us know. It's your obligation.").

Plaintiffs' First Proposal hit on approximately 40 million documents for 76 of the already-agreed-upon custodians. Using document counts and deconstructed search terms provided by Google, Plaintiffs have iteratively refined and improved their First Proposal four times, each time reducing the document hit count to avoid any unnecessary burden to Google in reviewing and producing responsive information.

Accordingly, Plaintiffs' Current Search Protocol now hits on fewer 9.7 million documents for those same 76 custodians. Using the responsiveness rate of 25% (which is consistent with the responsiveness rate for Google's production during the Investigation), Plaintiffs' Current Search Protocol would lead to a document production totaling approximately 2.43 million documents. Although—as discussed further below—the parties have not agreed to a full set of custodians, even if Google accepted all of the additional custodians requested by Plaintiffs, Plaintiffs estimate that at most that number would double, leading to a production of 4.85 million documents.

A production of this size is suitable for a case of this size and significance. *See, e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-897, MDL 997, 1996 U.S. Dist. LEXIS 1908, at *13 (N.D. Ill. Feb. 20, 1996) ("Tens of millions of documents have been produced to the plaintiffs alone."); *Keene Corp. v. United States*, 12 Cl. Ct. 217, 220 n.2 (1987) (noting that AT&T produced 12 million documents in a 1970s antitrust action against MCI); *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2020 U.S. Dist. LEXIS 37140, at *1 (N.D. Ill. Mar. 4, 2020) (noting that with discovery ongoing, defendants had already reviewed and produced 8 million documents).

Google made no effort to justify its refusal to accept Plaintiffs' Search Term Protocol. The company, for example, has not argued that any particular search string is overbroad or not

designed to lead to relevant, responsive information. Google has simply stated that it refuses to accept Plaintiffs' Current Search Protocol, because "[i]t produces far more documents than [Google] believe[s] is reasonable to review." Email from Colette Connor to Diana Aguilar (Mar. 17, 2021). Google further argues that any current production must be viewed in light of the two million documents it produced during the Investigation. This is a diversion. First, those documents were produced in response to several administrative subpoenas that had a much broader and different scope than the current litigation. So, many of those documents will not be relevant here. Second, even if the Court were to consider all two million documents in addition to the approximately five million documents Plaintiffs' Current Search Protocol would yield (again, for all custodians, including those currently disputed), that volume would still be appropriate given the circumstance of this case.

Moreover, the scope and significance of this litigation weigh against Google's position. Indeed, the Rule 26(b) factors dictate that the scope of discovery in this case should be of at least the same magnitude as the cases listed above. Fed. R. Civ. P. 26(b) (explaining that "the importance of the issues at stake in the action" and "the parties' resources" should be considered when evaluating discovery request). Google is one of the largest, well-resourced, and technology-savvy companies in the world. It has unparalleled in-house resources[6] and counts on three of the largest law firms to manage its document collection, review, and production processes. It cannot hide behind general and unsupported claims of burden.

Because Google's proposed search framework is deficient and opaque, and because Google has failed to participate in a reasonable negotiation regarding the Plaintiffs' approach—

---

[6] For example, outside counsel indicated that Google has an in-house team that can run search terms over custodial documents.

an approach generally adopted in the caselaw—the Court should conclude that the Plaintiffs' search terms should govern Google's response to Plaintiffs' Second RFP.

### C.    Google's Refusal to Include Additional Custodians Is Unjustified

The Court should order Google back to the negotiation table regarding 80 custodians which the Plaintiffs have sought and which Google has refused.

First, it must be noted that, if the Court adopts the Plaintiffs' Search Protocol and all 80 disputed custodians are included in Google's production, the anticipated production volume would still be reasonable. Still, Plaintiffs have stated to Google that Plaintiffs are willing to negotiate the remaining custodians. Google has walked away from negotiations on custodians, stating that it will add no more.

To the extent Google's argument regarding the addition of new custodians is based on burden, Google has not provided the Plaintiffs with enough information to evaluate those claims. Plaintiffs have requested that Google provide data—most importantly, hit counts—to support its unwillingness to accept the disputed custodians. Google has declined to provide this information.

Given the lack of data to test Google's burden arguments, Plaintiffs cannot brief the Court on every one of the 80 disputed custodians. Although the need for some of the disputed custodians, such as Chris Barton, is clear from the public record,[7] other custodians require closer review and, where a dispute remains, individualized briefing after Google has provided the necessary information.

Plaintiffs understand Google intends to raise (in addition to its burden arguments) that, in Google's words, Plaintiffs' have not "explain[ed] why th[e] proposed [custodians] are not

---

[7] Email from rejected custodian Chris Barton, Google (2011) ("Our philosophy is that we are paying revenue share *in return for* exclusivity."), *available at* https://www.documentcloud.org/documents/20512575-google#document/p11/a2022355.

duplicative of custodians already agreed to by Google." Letter from F. Rubenstein to Diana Aguilar (March 15, 2021). This argument impermissibly seeks to shift Google's burden to Plaintiffs, asking Plaintiffs to prove a negative, while denying the Plaintiffs the data that would make the discussion regarding custodians worthwhile. Of course, it is Google, not Plaintiffs, who is best situated to know whether, and to what extent, certain custodial documents overlap with other custodians. Because Google has refused to provide those numbers to Plaintiffs, the Court should conclude that Google's position is unreasonable.[8]

Google's argument also misconstrues the relevant discovery standard, under which mere duplication is not a sufficient basis to object to the production of documents from a particular custodian; only *unreasonably* duplicative discovery is prohibited. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . ."). Naturally, some overlap between custodians is not only likely, but to be expected, particularly from custodians who work together in a particular department or division. What Plaintiffs seek here, as in other cases, is the relevant documents unique to these custodians. *See Clayton Corp. v. Altachem NV*, 4:12-CV-01349-AGF, 2015 WL 2412178, at *3 (E.D. Mo. May 20, 2015) ("Though there will likely be some overlap between documents that Defendants have already produced and the documents that [Plaintiff] now requests, that does not mean that no new responsive documents would be found such that the discovery would be *unreasonably* duplicative . . . .").

---

[8] Google's duplication objection and any related burden argument also fall flat since Google performs a de-duplication process before reviewing any documents for responsiveness. "[W]here the key objection is unnecessarily duplicative discovery, [Defendant]'s burden can be substantially mitigated by application of appropriately narrow search terms and de-duplication of ESI across custodians." *Williams v. Apple, Inc.*, 19CV04700LHKVKD, 2020 WL 5107639, at *2 (N.D. Cal. Aug. 31, 2020).

At this time, rather than declare 80 disputed custodians improper based on an undeveloped record, Plaintiffs respectfully request the Court order Google to provide hit reports to Plaintiffs for the disputed custodians, injecting much needed transparency and efficiency into a negotiation that has suffered long enough from Google's delay tactics. Google's hit reports will allow the parties to accurately assess any burden or duplication arguments with data in hand, rather than rely on Google's one-sided speculation and conjecture. Following receipt of their hit reports, Plaintiffs would submit a modified custodian list to Google. Should any disagreements remain, the parties would submit their position statements to the Court in advance of the March 30 Status Conference.

Similarly, Google has insisted that it will not re-review documents that it deemed unresponsive (to a different set of document requests) during the investigation. Google asserts that such an effort would be a waste of resources. Plaintiffs have asked Google to provide a statistically significant sample of these documents for us to confirm Google's conclusions. Google has refused. Accordingly, Plaintiffs also ask the Court to order Google to provide such a sample.

**D.    Google's Production Schedule is Unreasonably Slow Given Its Resources and Should Be Accelerated to Avoid Delays**

The Plaintiffs are deeply concerned about the pace of even the limited production that Google has already undertaken. More than two months have passed since Plaintiffs served their Second Request for Production of Documents on January 11, 2021. Since then, Google has produced only 3,000 documents—roughly 1 banker's box. Google has informed the Court that it anticipates that making 50% of its document production by early April, and 75% by early May. Using the document count provided by Google to Plaintiffs for its March 4 Proposal (ran against 76 of the already-agreed-upon custodians), Google plans to produce approximately 800,000

documents over four months. This is a glacial pace of production—even the limited production undertaken by Google—for a party of Google's resources, especially when considered in light of similarly situated litigants. *Cf. FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 21 (D.D.C. 2015) (stating that parties exchanged approximately 14.8 million documents in 2 months).[9]

Plaintiffs are concerned that Google's proposed production timeline jeopardizes the schedule set forth in the Case Management Order. To complete a production using Plaintiffs' Current Search Protocol, Google will not conclude its document productions until well after fact discovery closes in March 2022.

### E.    Conclusion

For all of the foregoing reasons, Plaintiffs respectfully ask the Court to intervene to ensure that Google adopts a reasonable, negotiated approach. Plaintiffs respectfully request that the Court order:

- The parties to adopt Plaintiffs' Current Search Protocol, attached as Exhibit 1.[10]

- The parties to continue negotiations over the disputed custodians using hit reports provide by Google.

- The parties to reach agreement on additional custodians to be added to the search protocol by the March 30 Status Conference.

---

[9] During the Parties' March 4 meet and confer, Google stated, without explanation, that it believes it is differently situated and does not have the same "incentives" as merger defendants in the antitrust litigations to produce documents quickly.

[10] There is a narrow set of documents that Google's modified March 18 proposal hits on but Plaintiffs' current proposal does not hit on. Plaintiffs respectfully request the Court order Google to produce these documents after appropriate review for responsiveness.

- Google to produce all responsive, non-privileged documents using the Plaintiffs' Current Search Protocol run against the 96 already-agreed-upon custodians by early May (50% by early April).

- Google to produce all responsive, non-privileged documents using the Plaintiffs Current Search Protocol run against additional custodians by early June (50% by early May).

- Google to provide Plaintiffs a statistically significant number of randomly selected documents from the previously reviewed set, by March 30.

## IV. Google's Position Position Regarding the DOJ Plaintiffs' Document Request

### A.    Google's Statement Regarding DOJ Plaintiffs' Document Requests

As Google explained at the last status conference, it has agreed to conduct extensive searches in response to the DOJ Plaintiffs' Second Request for Production in this litigation, beyond the many searches and large productions performed in response to the broad CID requests issued by DOJ during its pre-Complaint investigation. Since that time, Google has met and conferred extensively with the DOJ Plaintiffs and, in an effort to reach compromise, has agreed to a number of additional search strings and custodians. In total, under Google's proposal, it will have reviewed more than *12 million* documents in response to the DOJ's extraordinarily broad pre- and post-Complaint requests: 7.2 million documents collected from 122 custodial files and reviewed during the investigation; 4.4 million new documents collected from 76 custodial files and currently under review in the litigation; and an estimated 1.1 million new documents from 20 additional custodians that Google has agreed to add to the original group of 76 as a result of the meet and confer process.

The DOJ Plaintiffs have rejected Google's proposal, and instead demand massive additional document gathering and review. First, they have requested that Google collect from an **additional 73 custodians** beyond the 96 custodians agreed to by Google, for a total of **169** custodians. The DOJ Plaintiffs' requested custodian list has nearly doubled in size from the list of 92 custodians they provided with their First Request for Production on January 4, and includes more than 100 new custodians who were not among the custodians whose files DOJ sought during its investigation. Second, they insist that Google run 90 additional search strings, separate and apart from the 47 search strings they proposed with their First Request on January 4. Even after multiple rounds of revisions, the DOJ Plaintiffs' terms are so broad that they hit on **9.7 million additional documents** when run across **only the original 76** custodians. Assuming the hit counts hold constant for the additional 20 custodians Google has agreed to add to the original 76, the 9.7 million would grow to an estimated 12.3 million documents (and to a projected **25.8 million** were the custodians to increase to 169). Importantly, these document counts are above and beyond the more than 12 million documents reviewed in the investigation and that Google has agreed to review for the litigation.

The DOJ Plaintiffs' proposal is unreasonable and not proportional to the needs of this case, nor is it calculated to retrieve relevant, non-cumulative information within the schedule that the Plaintiffs agreed to in this case. The facial unreasonableness of the DOJ Plaintiffs' requests is compounded by their failure to identify any deficiency in Google's proposed collection and production process. The DOJ Plaintiffs still have not responded to Google's multiple requests to explain how Google's proposed method for responding to their Second Request for Production is not reasonable, and there is no basis to dramatically expand the scope of document discovery in the manner that the DOJ Plaintiffs demand.

## BACKGROUND

**DOJ's CID Requests.** Google conducted an extensive collection, review, and production in response to the CIDs issued during the DOJ investigation.   Google's efforts in this regard were the product of extensive discussions with DOJ.

First, Google provided information concerning approximately 500 current and former employees and participated in more than two dozen teleconferences regarding the identification and negotiation of document custodians during the pre-Complaint investigation.   Throughout this process, Google made extensive efforts to provide the information that DOJ requested so that DOJ could make an informed decision about which custodians were material to the investigation. Following this meet-and-confer process, DOJ and Google agreed to 122 custodians, including many of the company's most senior executives, to address CIDs that were broader in subject matter and scope than the allegations set forth in the operative Complaint in this case.

Second, DOJ had full visibility into the search terms used by Google to identify documents responsive to the CID requests.  DOJ and Google negotiated those search terms over the course of several months, with Google testing terms proposed by DOJ and providing hit counts to arrive at the final set of documents to be reviewed.  Google ultimately collected and reviewed more than 7.2 million documents from the 122 custodians, yielding a production of approximately 1.5 million documents.[11]  In addition, Google separately collected and produced a number of data sets in response to DOJ's data requests, totaling more than 6.5 terabytes of data.

In this litigation, the DOJ Plaintiffs' Second Request for Production contains dozens of broad document requests, many of which overlap with the CID requests.  Appendix A to the DOJ Plaintiffs' First Request listed 47 search strings (comprising more than 25,000 individual

---

[11] Google also produced approximately 600,000 documents from other collection sets; the total number of documents produced during the investigation exceeded 2.1 million.

searches once deconstructed), and Appendix B to the First Request identified 92 custodians. *See* D.I. 114-1. The search strings drew heavily from the search strings that the parties developed in the investigation.

In connection with responding to the Second Request for Production, Google agreed to collect documents from the vast majority of the 92 custodians on the DOJ Plaintiffs' list and to run all of the search strings in the manner that the DOJ Plaintiffs requested in Appendix A. When the DOJ Plaintiffs expressed concern that those search strings may not be sufficient to capture all of the information sought by their Second Requests, Google offered to perform supplemental searches to address particular requests.

**February 25, 2021 Status Conference.** The parties submitted a joint status report and position statements outlining their disputes prior to the last status conference, and the Court provided guidance to the parties at that conference. The Court observed that the strings listed in Appendix A to the DOJ Plaintiffs' First Request represent "as good a starting point as any," 2/25/21 Tr. at 38:1–2, and suggested that the parties start, "perhaps, from the search strings that have already been identified in connection with the first RFP and continue to work at it and figure out . . . what don't they capture, and continu[e] to make proposals in order to capture everything that's in that second RFP," *id.* 39:7–12. The Court further noted that the parties "don't have the luxury to have 250 search strings that precisely match up each of the 250 categories of records that are being sought in that second request for production." *Id.* 38:13–15.

**DOJ Plaintiffs' Proposal.** Notwithstanding all of the work done by the parties during the investigation, as well as the direction provided by the Court, the DOJ Plaintiffs' proposal bears little relation to the search strings used in the investigation and set forth in Appendix A to the DOJ Plaintiffs' First Request. Instead, the DOJ Plaintiffs prepared an entirely different

search term set, containing more than 100 different strings, comprising more than 30,000 individual searches once deconstructed. When Google asked whether any of those new strings were taken in part or whole from the Appendix A search strings, the DOJ Plaintiffs responded that their new proposal contained different searches and were to be run *in addition to* the strings from Appendix A.

Not only do the DOJ Plaintiffs' proposals depart from the searches run in the investigation and identified in their First Request for Production, but they also depart from the custodians previously requested by the DOJ Plaintiffs. In total, their proposals add *77* new custodians beyond the 92 identified on Appendix B to the First Request. None of the 77 new custodians were among the dozens of current and former Google employees that the DOJ Plaintiffs identified in their initial disclosures as potential sources of relevant information, and the vast majority (63 of the 77) were not among the 122 agreed custodians in the DOJ's pre-Complaint investigation. In total, the DOJ Plaintiffs' proposal requests that Google run more than 90 additional search strings over 169 custodians' documents, in addition to all of the search strings Google has already agreed to.

The DOJ Plaintiffs' search strings are extraordinarily broad and consequently return a massive number of documents. The DOJ Plaintiffs' latest proposal, dated March 16 (attached as Exhibit 1), hits on *9.7 million* new documents for review for only the 76 custodians whose documents Google previously agreed to collect and review. In other words, the 9.7 million new documents covered by Plaintiffs' March 16 proposal do *not* include the files of the 20 custodians who Google has agreed to add since the last status conference or the 73 other custodians whose documents the DOJ Plaintiffs have requested (as Google has not yet finished the time-consuming process of harvesting and processing all of those custodians' files). And the 9.7 million new

documents that would be added to the review set do **not** include any of the 7.2 million documents that Google already reviewed during the investigation or the 4.4 million documents that it is currently reviewing for the 76 custodians. In short, the search terms provided in the DOJ Plaintiffs' latest proposal contemplate that Google will review well over 20 million documents in connection with this investigation and litigation for the first 76 custodians alone.[12]

**Google's Proposal.** In response to the DOJ Plaintiffs' March 1 proposal and subsequent correspondence, Google has agreed to 20 custodians in addition to the 76 previously agreed custodians, and has agreed to numerous of Plaintiffs' newly proposed search strings. *See* Exhibit 2 (Google's March 18 proposal).[13] In total, Google has now agreed to collect from 96 custodians, including approximately 40 custodians whose files were not included in the investigation.

Google has agreed to run more than 60 search strings (amounting to more than 25,000 individual searches when deconstructed), generating 4.4 million **new** documents for review on just the original 76 agreed custodians.[14] The searches that Google has agreed to run—which

---

[12] The new document counts that the Parties are using are based on an assumed de-duplication rate of 20%. For example: Plaintiffs' March 16 terms hit on 12,184,587 new documents—*i.e.*, documents that were not previously reviewed by Google during the investigation and do not hit on the search terms Google has already agreed to run. If the deduplication rates that Google observed during the investigation hold, then this set of 12,184,587 new documents would reduce by another 20% to approximately 9.7 million following deduplication across custodians. Google has used this same 20% deduplication rate in estimating that the search strings it has agreed to apply will ultimately require review of approximately 4.4 million documents for the 76 previously agreed custodians.

[13] Google's March 4 proposal followed the same format as the March 18 proposal attached as Exhibit 2; the difference between the two proposals is the addition of the 20 custodians that Google has agreed to over the last two weeks and several additional search strings from Plaintiffs' latest proposal.

[14] The number of new documents that Google must review will continue to increase in the coming weeks as Google adds custodians and search terms in response to the First Requests for Production served on February 24 by the Plaintiffs in *State of Colorado v. Google*. In the

encompass (1) all search terms the DOJ Plaintiffs originally requested in Appendix A to their First Request, (2) additional searches constructed by Google in response to the Second Request, and (3) certain of the searches proposed by the DOJ Plaintiffs since March 1—will bring the total number of documents reviewed in the investigation and litigation to more than 12 million. Google anticipates that, if Google's proposal is adopted, it will have substantially completed this review and production by the end of May 2021 for the 76 agreed custodians, and by the end of June for the additional 20 custodians that Google has agreed to over the last week.

**Comparison of Proposals with Projections for Additional Custodians.** The below chart compares the parties' proposals, including projections based on the document counts obtained from testing the search terms across the first 76 custodians.[15]

| | New Document Count When Run Against First 76 Custodians | Projected New Document Count When Run Against Agreed 96 Custodians | Projected New Document Count If Run Against DOJ's 169 Custodians |
|---|---|---|---|
| **Google's Proposed Terms** | 4.4 Million | 5.5 Million | 9.8 Million |
| **DOJ's Proposed Terms** | 4.4 Million + 9.7 Million = 14.1 Million | 17.8 Million | 31.3 Million |
| | *All document counts exclude the 7.2 million documents reviewed during the investigation, and assume a 20% de-duplication rate* | | |

## DISPUTED ITEMS

1. **The Process Google Should Follow to Develop Its Search Methodology in Response to DOJ's Requests**

---

interest of moving forward as quickly as possible, Google has agreed to propose a list of custodians to the Colorado Plaintiffs on March 22 and a list of search strings on March 29.
[15] As noted above, Google is in the process of collecting the files of the additional custodians most recently requested by the DOJ Plaintiffs. Google therefore has made projections and estimates for these additional custodians.

The DOJ Plaintiffs have indicated that they will seek the Court's guidance on the process the parties should follow to develop an agreed search methodology. Google submits that the parties already were provided the necessary guidance by the Court at the last status conference and that Google's proposals adhere to that guidance: Google used as a starting point the set of search strings developed during the investigation and contained on Appendix A to the DOJ Plaintiffs' First Request, and supplemented them reasonably with additional terms and strings to capture information the DOJ Plaintiffs seek in their Second Requests that is not already captured by those search terms and strings. Specifically, Google's proposals group the Appendix A search strings by the relevant categories of information sought; identify the specific Requests from Plaintiffs' Second Requests to which they relate; and then propose additional terms and strings of terms to capture additional information sought by the Requests. *See* Exhibit 2 (Google's March 18 proposal).[16] Google's approach ensures that the parties leverage the months-long efforts undertaken in the investigation to test search terms, while enabling the parties to broaden out the strings or propose new strings as needed to capture additional information.

The only criticism the DOJ Plaintiffs have raised of Google's proposal is stylistic: the DOJ Plaintiffs demand a proposal that has a unique search string for each of the individual document requests. But Google's approach is a function of Google's use of the DOJ Plaintiffs' own Appendix A as a starting point (which, again, leverages the work the parties did in the investigation to identify relevant terms), and the fact that many of the DOJ Plaintiffs' requests are closely related to requests from the DOJ's CID. Google's proposal clearly identifies which search strings relate to which requests, so that the DOJ Plaintiffs can assess whether there are

---

[16] As noted above, Google's March 4 proposal followed the same format as the March 18 proposal attached as Exhibit 2.

any *substantive* deficiencies in Google's approach. They have not identified any such deficiencies during the meet-and-confer process. Instead of engaging with the investigative search terms and Google's proposed additions to those terms, Plaintiffs insist on devising an entirely new set of search strings.

### 2.   The Reasonableness and Adequacy of Google's Proposed Search Protocol

As set forth above, Google has agreed to search the files of 96 custodians, including approximately 40 who were not custodians in the investigation; to run every one of the search strings that DOJ proposed in Appendix A to the DOJ Plaintiffs' First Request; to run additional search strings developed by Google in response to the DOJ Plaintiffs' Second Request; to incorporate certain terms the DOJ Plaintiffs have proposed into a number of those search strings; and to run certain of the search strings proposed by the DOJ Plaintiffs.[17] Google's proposal satisfies its obligation to conduct a reasonable search in response to the DOJ Plaintiffs' requests. *See, e.g., Prasad v. Geo. Wash. Univ.*, 323 F.R.D. 88, 93 (D.D.C. 2017) ("To be adequate under the Federal Rules, a search in response to a discovery request must be reasonable.").

Google remains willing to meet and confer with the DOJ Plaintiffs regarding proposals for discrete expansion of searches, to the extent that Plaintiffs can identify relevant, non-cumulative information that is not captured by Google's proposal. *See, e.g., Arconic Inc. v. Novelis Inc.*, No. 17-cv-1434, 2019 WL 5802365, at *4 (W.D. Pa. Sept. 6, 2019) ("It simply does not do to lodge a complaint about being denied sufficient discovery, but then default when given the opportunity to say what else a party needs to discover."); *Enslin v. Coca-Cola Co.*, No. 14-cv-6476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (explaining that the "burden

---

[17] Google has additionally agreed to the collection and production of a number of data sets requested by the DOJ Plaintiffs.

appropriately lies with the requesting party to show that the responding party's search was inadequate"); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09-cv-2137, 2013 WL 4838796, at *3 (S.D.N.Y. Sept. 11, 2013) (describing the burden of the party seeking additional discovery to show "that the burden of review—including the burden of reviewing false search hits—would justify expanding the search").

The DOJ Plaintiffs' proposal of starting over with an entirely new set of search strings would create unnecessary delay. Even after multiple rounds of edits by the DOJ Plaintiffs, their proposals sweep in an extraordinary number of documents. The DOJ Plaintiffs' March 16 proposal still returned more than 9.7 million new documents; that number is in addition to the more than 12 million documents that Google has already agreed to review and does not account for the additional custodians beyond the 76 that Google offered last month. In short, the DOJ Plaintiffs' proposals far exceed the bounds of proportional discovery. *See, e.g.*, *Prasad*, 323 F.R.D. at 91 (observing that although the scope of discovery under Fed. R. Civ. P. 26 "has been construed broadly," "'the relevance standard of Rule 26 is not without bite,'" and "the rule was amended in 2015 to emphasize the need for proportionality in discovery and to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse'"); *Enslin*, 2016 WL 7042206, at *3 ("It must also be remembered that the Federal Rules of Civil Procedure require only a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy.'... 'There is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files.'").

**Search Strings.** The DOJ Plaintiffs have not articulated why they believe Google's proposals are inadequate. To date, the DOJ Plaintiffs have not identified any request that they believe is not reasonably captured by Google's proposal.

**Custodians.**  The custodians from whom Google has agreed to collect and produce include many of Google's most senior executives, covering a number of different product areas, as well as dozens of current and former employees who do not hold executive positions.  The DOJ Plaintiffs have not explained why ***any*** of the disputed custodians are likely to lead to relevant, non-duplicative information in light of the extensive discovery that occurred during the investigation and that Google has already agreed to here.  *See, e.g.*, *In re 3M Combat Arms Earplug Prod. Liability Litig.*, No. 19-md-2885, 2020 WL 3100016, at *1 (N.D. Fla. June 11, 2020) (explaining that "Plaintiffs, as the requesting party, must demonstrate each [additional] custodian would provide 'unique relevant information not already obtained'" and that "[t]he Court weighs this showing against the obvious burden on Defendants to collect, review, and produce a new custodial file"); *Mortg. Resolution Serv., LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-293, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (observing that "[a]bsent agreement among the parties … the responding party is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals," and concluding that "[u]nless that choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or, as here, designating custodians").

On the parties' meet and confer call following receipt of the DOJ Plaintiffs' March 1 proposal identifying 74 new custodians beyond the 92 custodians identified in their First Request for Production, Google offered to walk through the new custodians and to hear from the DOJ Plaintiffs what additional information they are seeking that is not already covered by the existing custodian list.  The DOJ Plaintiffs declined that invitation.  On March 9, they transmitted a

document entitled "Relevance of Plaintiffs' Disputed Custodians" that includes the 74 custodians first proposed on March 1 (along with three more). The document, however, does not even attempt to address the task at hand: failing to identify categories of potentially relevant documents that are not captured by the dozens of custodians whose documents Google has already agreed to produce.

Notwithstanding the DOJ Plaintiffs' inability to justify the expansive discovery that they seek, Google has carefully evaluated all 77 of the new custodians that the DOJ Plaintiffs proposed in relation to the DOJ Plaintiffs' Second Request. In an effort to resolve any dispute, Google has agreed to collect documents from 20 additional custodians, in addition to the 76 custodians whose documents it is currently reviewing and producing. Google also explained in a March 15 letter why the other custodians identified by the DOJ Plaintiffs are unlikely to be a source of material, relevant, non-duplicative information, and has not received any further information to the contrary.

### 3. The Pace of Google's Collection, Review, and Production

Google has continued to move forward with its review of the documents collected from the 76 agreed custodians while the parties have met and conferred regarding additional search terms and custodians. As Google explained in the February 23 Status Report (D.I. 111 at 13–14), a primary obstacle to further expediting its document review was and is the amount of machine time required to process the vast quantities of data collected from such a large number of custodians over the long time periods requested by the DOJ Plaintiffs. Google's document review team is conducting review of documents identified using technology assisted review to expedite review and production of documents most likely to be deemed responsive.

Consistent with its statements in the February 23 and March 5 Status Reports, Google anticipates that it will substantially complete production of responsive, non-privileged documents collected from the 76 agreed custodians from Appendix B using the search terms that Google has proposed by the end of May. Google remains committed to maintaining that substantial completion deadline. As noted in the March 5 Status Report (D.I. 116), Google anticipates that it will have produced approximately 50% of the responsive, non-privileged documents collected from those custodians by early April, and it anticipates that it will have produced approximately 75% of those documents by early May (both benchmarks are based on application of the search strings in Google's proposals).

With respect to the additional 20 custodians that Google has agreed to add to the collection and review, Google anticipates it will substantially complete production of the responsive, non-privileged documents from those custodians by the end of June 2021 (as with the above benchmarks, this is based on use of the search terms proposed by Google). These very aggressive timelines reflect Google's commitment to completing its production as quickly as possible.

Dated: March 18, 2021                                   Respectfully submitted,


By:_____/s/ Kenneth M. Dintzer_____
Kenneth M. Dintzer
Jesús M. Alvarado-Rivera
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*

By:    */s/ Jonathan R. Carter*

Leslie Rutledge,  Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite  200
Little  Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

By:    */s/ Adam Miller*

Matthew Rodriquez,  Acting  Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller,  Deputy Attorney General
Paula Blizzard,  Supervising  Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California  Department of Justice
455 Golden  Gate Avenue
Suite  11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By:    */s/ Lee Istrail*

Ashley Moody,  Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas  D. Niemiec, Assistant Attorney  General
Lee Istrail,  Assistant Attorney  General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida  32399
Lee.Istrail@myfloridalegal.com

Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:_____/s/Daniel Walsh_____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:_____/s/ Scott L. Barnhart_____
Theodore Edward Rokita, Attorney General Scott
L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By:_____/s/ Justin D. Clark_____
Justin D. Clark, Deputy Director of Consumer
Protection
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Assistant Attorney General
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Justind.Clark@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By:____ /s/ Stacie L. Deblieux_____
Jeff Landry, Attorney General
Stacie L. Deblieux,  Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana  70802
Deblieuxs@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:____ /s/ Wisam E. Naoum_____
Dana Nessel, Attorney General
Wisam E. Naoum, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
NaoumW1@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:____ /s/ Kimberley G. Biagioli_____
Kimberley G. Biagioli
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Kimberley.Biagioli@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:____ /s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:____ /s/ Mark Mattioli_____
Austin Knudsen, Attorney General
Mark Mattioli,  Chief, Office of Consumer

Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By:    */s/ Rebecca M. Hartner*
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:    */s/ Bret Fulkerson*
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:    */s/ Gwendolyn J. Lindsay Cooley*
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

31

By:  */s/ Jonathan B. Sallet*

Jonathan B. Sallet, Special Assistant
Attorney General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General
(D.C. Bar No. 1022365 *inactive*)
Diane R. Hazel, First Assistant Attorney
General (D.C. Bar No. 1011531 *inactive*)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff Colorado*

Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*

Brunn W. (Beau) Roysden III, Solicitor
General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney
General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff Arizona*

32

Max Merrick Miller
Attorney General's Office for the State of
Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*


Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*


Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*

J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*


Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*


Jeff Pickett
Senior Assistant Attorney General
jeff.pickett@alaska.gov
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100

*Counsel for Plaintiff Alaska*

Nicole Demers
State of Connecticut Office of the Attorney General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*


Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*


Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*

Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection
Division
Benjamin Bernard Paholke, Assistant
Attorney General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*

Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*

Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Erin L. Shencopp
Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
eshencopp@atg.state.il.us
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff Illinois*


Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*


Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*


Matthew B. Frank, Assistant Attorney
General Antitrust Division
William T. Matlack, Assistant Attorney
General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*


Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*


Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*


Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*

Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*


Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*


Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio,
Antitrust Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*


Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*


Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*


Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*


Yvette K. Lafrentz
Office of The Attorney General of
South Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*


Ryan G. Kriger
Office of The Attorney General of
Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*


Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*


Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West
Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*


Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Wyoming*

WILLIAMS & CONNOLLY LLP

By:   /s/ *John E. Schmidtlein*
John E. Schmidtlein  (D.C. Bar No. 441261)
Benjamin M. Greenblum  (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
725 12th Street, NW
Washington, DC 20005
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton  (D.C. Bar No. 978486)
Franklin M. Rubinstein  (D.C. Bar No. 476674)
1700 K St, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*