## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| United States of America, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

|  |  |
|---|---|
| State of Colorado, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

### JOINT STATUS REPORT

In accordance with the Court's Minute Order of March 8, 2021, the parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report (1) summarizing the state of discovery, and (2) identifying issues, and the parties' respective positions as to those issues, to be raised at the status hearing scheduled for March 30, 2021.

1

I.      **Case No. 1:20-cv-03010**

    A.      **Google's Discovery of Plaintiffs**

On February 2, Google issued its first set of RFPs to Plaintiffs. Plaintiffs served their Responses and Objections to Google's first set of RFPs on March 3 (Department of Justice) and March 4 (Plaintiff States). On March 10, Plaintiffs and Google met and conferred regarding Plaintiffs' Responses and Objections. Plaintiffs produced their first sets of documents[1] responsive to Google's RFPs on March 12. This production included materials received by Plaintiffs during the pre-Complaint Investigation from ten third parties which were not listed on Plaintiffs' Initial Disclosures. The production also included Civil Investigative Demand (CID) schedules; cover letters; emails; submission indices exchanged with third parties Plaintiffs contacted during the Investigations but did not list on their Initial Disclosures; and correspondence with Congress. On March 22, pursuant to Paragraph 19 of the CMO requiring production of a privilege log three months after the start of fact discovery, Plaintiffs notified Google that Plaintiffs' productions of documents responsive to Google's requests (taking into account objections) did not include privileged documents and therefore no documents were withheld. On March 26, Plaintiffs produced their second sets of documents responsive to the RFPs, including correspondence exchanged during the pre-Complaint Investigation with third parties not identified on Plaintiffs' initial disclosures.

    B.      **Plaintiffs' Discovery of Google**

The parties have received the Court's March 23 Order and Plaintiffs are developing their 20 targeted search strings and their 20 custodians. Google continues to review and produce

---

[1] Plaintiffs United States and the State of California separately produced sets of documents, and the remaining State Plaintiffs produced an additional set of documents from their respective Investigations.

documents in response to Plaintiffs' First and Second Request for Production. On March 19, Google made a second document production of approximately 105,000 documents.  Google also continues to produce data in response to Plaintiffs' document requests.  On February 23 and 26, Google produced approximately 11.3 terabytes of data in response to Plaintiffs' First Requests for Production No. 2.  On February 24 and March 25, Google produced data in response to Plaintiffs' Second Requests for Production Nos. 15 and 68.  And on March 26, Google produced data in response to Plaintiffs' Second Requests for Productions Nos. 10, 40, 42, and 66.

The parties have set forth in Sections III and IV their respective positions regarding three issues.

### C.      The Parties' Discovery on Third Parties

The DOJ Plaintiffs have issued document subpoenas to 41 third parties, including the 40 third-party subpoenas issued as of the February 23, 2021 status report, and anticipate that they will continue to issue additional document subpoenas as discovery progresses.  Since the last status conference, the Colorado plaintiffs issued subpoenas to all the original (40) third parties subpoenaed by the Government.  In compliance with the letter and spirit of the Court's Amended Case Management Order, ECF #108-1 at 11, the Government and the Colorado plaintiffs coordinated their requests to avoid duplication and, where feasible, are jointly negotiating the third parties' productions.

Google has cross-subpoenaed 28 of the 41 third parties subpoenaed by Plaintiffs, and has issued two additional subpoenas.  Google anticipates that it will continue to issue additional document subpoenas as discovery progresses.

## II.      Case No. 1:20-cv-03715

### A.      CO Plaintiff States' Production of Investigation Materials

On March 8, 2021, the CO Plaintiff States completed the production of their Investigation

Materials pursuant to Paragraph 7 of the Amended Scheduling & Case Management Order, ECF No. 108-1 ("CMO"). The production included documents and information responsive to Paragraph 7(i) (i.e., CIDs or voluntary requests for information issued by any of the Plaintiffs in that action before the filing of their Complaint on December 17, 2020) and Paragraph 7(ii) (i.e., the documents, data, and materials obtained from third parties in response to CIDs or voluntary requests for information). To ensure consistency with the U.S. Department of Justice's production of Investigation Materials, the CO Plaintiff States produced correspondence exchanged during the pre-Complaint Investigation with third parties listed on the CO Plaintiff States' Initial Disclosures. The CO Plaintiff States do not have any documents responsive to Paragraph 7(iii) or Paragraph 7(iv) of the CMO (i.e., declarations, affidavits, or transcripts of testimony from third parties identified in their initial disclosures).

### B.      CO Plaintiff States' Discovery on Google

On February 24, 2021, the CO Plaintiff States served their First Requests for Production ("First RFPs") on Google. The CO Plaintiff States conferred with the U.S. Department of Justice ("U.S. DOJ") on the First RFPs to avoid, as much as practicable, serving RFPs seeking materials that overlap with or duplicate the U.S. DOJ's First and Second sets of RFPs to Google. Google's deadline to respond to the CO Plaintiff States' First RFPs is March 26, 2021.

The CO Plaintiff States conferred with Google, and the parties agreed that Google would provide proposed custodians to the CO Plaintiff States on or before March 22, 2021 and propose search strings on or before March 29, 2021. Google provided proposed custodians to the CO Plaintiff States on March 22 and, in accordance with the parties' agreement, will provide its proposed search strings to the CO Plaintiff States on March 29. The CO Plaintiff States and Google plan to meet and confer regarding any outstanding issues raised by these proposals during the week of April 5.

The CO Plaintiff States also have participated in the meet and confers regarding the U.S. DOJ's Second Requests for Production, as the CO Plaintiff States request materials responsive to the U.S. DOJ's First and Second RFPs in the CO Plaintiff States' First RFPs.

### C.    Google's Discovery on CO Plaintiff States

Google served the CO Plaintiff States with its First Requests for Production ("Google First RFPs") on February 5, 2021.  On March 8, 2021, the CO Plaintiff States served their responses and objections to Google's First RFPs.  The CO Plaintiff States and Google met and conferred on March 16, 2021 regarding the CO Plaintiff States' responses and objections, and the CO Plaintiff States provided their positions regarding the points of dispute in a letter of March 25, 2021.

### D.    Third-Party Discovery

As of March 1, 2021, the CO Plaintiff States had served subpoenas on all 40 of the third parties the U.S. DOJ previously subpoenaed.  The CO Plaintiff States have been meeting and conferring with the third parties about the subpoenas and have been doing so in coordination with the U.S. DOJ.  Google has issued subpoenas to 30 third parties and has been meeting and conferring with third parties regarding those subpoenas.  The CO Plaintiff States and Google anticipate that they will continue to issue additional document subpoenas as discovery progresses.  The parties are exchanging notice of modifications, extensions, or postponements to discovery requests served on non-parties on a weekly basis.

## III.    The DOJ Plaintiffs' Position Statement

Under the Court's March 23, 2021 Order, Plaintiffs are working to identify 20 additional search strings and custodians. Plaintiffs expect to craft a targeted proposal, in accordance with the Court's instruction, and present it to Google in the coming week. In the meantime, Plaintiffs address three issues that are ripe for the Court's consideration: (1) the limited periods over which

Google has indicated it will run its search terms[2]; (2) Google's refusal to heed the Court's instruction to incorporate code names into its search strings; and (3) Google's refusal to review any documents it deemed non-responsive to the investigative subpoena.

**A.     Google's Refusal to Produce Information for Select Periods**

Google has refused to search for documents covering the relevant periods described in Plaintiffs' Complaint, although these periods are clearly spelled out in Plaintiffs' Second Requests for Production ("Second RFP"). Indeed, for many of the searches that Google has agreed to perform, it has cut off document retrieval at 2014, even though the relevant events happened years before. Accordingly, the Court should order Google to comply with the periods listed in the original request.

More than two months ago, on January 11, 2021, Google received Plaintiffs' Second RFP. Each of these requests included a date range of requested documents, based on the subject sought. Generally, these date ranges can be broken into two parts: (1) requests that seek information from 2010 to present; and (2) requests that seek information before 2010. Plaintiffs' request for information and documents from these periods are targeted and seek information clearly relevant to the claims or defenses in the case. Plaintiffs have attached a chart detailing its relevancy arguments for each of its requests subject to a time-period dispute. *See* Exhibit 1.

On February 10, 2021, Plaintiffs received Google's Responses and Objections to the Second RFP. For many of Plaintiffs' requests, Google asserted improper boilerplate proportionality objections regarding the period for which Plaintiffs' sought information, without

---

[2] Google has also limited the custodial groups against which it is willing to run its search terms. Thus, although Google indicated to the Court that the company is providing 96 custodians, it is not running all relevant search terms against each custodian. Because Plaintiffs' plan to address this with Google when Plaintiffs provide Google with the additional custodians, we do not believe the issue is ripe.

more. *See DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) ("'Boilerplate' general objections to plaintiffs' discovery requests, without more, fail to satisfy the District's burdens under the Federal Rules of Civil Procedure to justify its objections to discovery."). Google then offered—without rhyme or reason—shorter production ranges for many of the relevant searches. As such, Rule 26 factors weigh in favor granting Plaintiffs' requests for the production of documents from these periods, especially in light of the issues at stake in this case. *See generally Oxbow Carbon & Minerals LLC v. Union Pac. R.R.*, 322 F.R.D. 1, 7 (D.D.C. 2017) ("This first *Rule 26* factor calls for the Court to examine the significance of the substantive issues at stake in the litigation, as measured in philosophic, social, or institutional terms." (internal quotation marks and citations omitted)).

> 1. *The Court Should Order Google to Comply with the 2010 Document Production Dates*

The Court should conclude that Google improperly cut off document production for some requests at 2014, instead of 2010, as listed in the request for production. Plaintiffs' requests for information from 2010 to present are targeted to locate relevant information to the claims or defenses in the case, and are limited temporally to minimize burden. *See* Exhibit 1 (containing Plaintiffs' explanation for the relevancy of each of its requests seeking information from 2010 to present still in dispute). For these requests, regarding third-party specialized search services and search ads market definition and pricing, Google's practices before 2010—e.g., its early search distribution strategy and early market power in both search and advertising—are highly relevant to the claims in this case. *See* Amended Complaint at ¶¶ 6–8, 92–93, 110, 111–165. Nevertheless, we limited the requests from 2010 to the present.

Moreover, Plaintiffs' 2010 requests are reasonable in light of Google's business activities and market conditions. Most notably, on February 18, 2010, the United States announced the

closure of its investigation into a Microsoft–Yahoo! agreement that "combine[d] the back-end search and paid search advertising technology of both parties."[3] Additionally, voice assistants were in early development. Apple introduced Siri in 2011 and Google introduced its Google Voice Search in 2012. For these reasons, Plaintiffs seek documents back to 2010 for requests regarding third party specialized search services, search ads market definition and pricing, and voice assistants and IoT devices.

Google has offered no support for restricting production on the 2010 document requests and the Court should reject Google's position.

> 2.   *The Court Should Reject Google's Refusal to Produce Relevant Information from Before 2010 Based Only on Boilerplate Proportionality Objections*

Plaintiffs' requests for documents before 2010 are limited and targeted to locate information relevant to the claims or defenses in the case. Plaintiffs provide additional detail regarding each of their requests seeking information for this time still in dispute in Exhibit 1. For brevity, here, Plaintiffs discuss three general pre-2010 periods that are highly relevant to the claims in this case.

First, Plaintiffs' requests seek information from 2005 to the present for two disputed requests regarding Google's search partnerships and market shares.[4] As alleged in the Complaint,

---

[3] Department of Justice, *Statement of the Department of Justice Antitrust Division on Its Decision to Close Its Investigation of the Internet Search and Paid Search Advertising Agreement Between Microsoft Corporation and Yahoo! Inc.*, *available at* https://www.justice.gov/opa/pr/statement-department-justice-antitrust-division-its-decision-close-its-investigation-internet.

[4] *See* Request Nos. 2 and 4; Amended Complaint at ¶¶ 26–27 (discussing Google's introduction of search advertising in 2000 and adoption of auctions for keywords in 2002); Plaintiffs have proposed to modify the relevant period for Request Nos. 2 and 4 to "2005–Present" without prejudice to seek information relevant to these RFPs dating back to 2002 at a later date.

Google's search distribution strategy and restrictive conduct dates back to the early/mid-2000s. *See generally* Amended Compliant ¶¶ 4–10, 88, 97, 101, 108–10, 111–65. Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search advertising revenue share agreements with distribution partners began at least as early as 2005. With respect to market shares, because of the nature of this case, it is important to examine the market conditions that existed from 2005 and changes thereafter. Accordingly, documents dating back to 2005 seeking information about how Google's conduct and partnerships affected its market share are relevant and within the reasonable temporal scope for these requests.

Second, Plaintiffs' requests seek information from 2005 to present for two disputed requests regarding Google's acquisition of Android and its revenue sharing with partners.[5] As alleged in the Complaint, Google's acquisition of Android and its restrictive conduct regarding the licensing of Android led to Google's monopolization of the search market and eventual unlawful maintenance of its search monopoly. *See generally* Amended Complaint ¶¶ 4–10, 88, 97, 101, 108–10, 111–65. Google purchased Android in 2005. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. Accordingly, documents dating back to 2005 are relevant and within the reasonable temporal scope for these requests.

Third, Plaintiffs seek information from 2005 to the present for one disputed request for information regarding the importance of scale (e.g., data or user queries) to search and search advertising in one disputed request for information.[6] Plaintiffs allege in their Complaint that

---

[5] *See* Request Nos. 4, 7 and 12; Amended Complaint at ¶¶ 58–87

[6] *See* Request Nos. 8.

scale and data are critical to a search engine's success because they feed the search engine—making it more reliable. The Complaint explains that Google's anticompetitive practices—which include its distribution practice dating back to at least 2005—have denied rivals the scale and data needed to compete effectively. *See generally* Amended Complaint ¶¶ 8, 35–38, 57, 95, 100, 113, 119–122, 155, 166(b). The 2005 period is also relevant given Google's public comments during that time regarding the importance (or lack thereof) of scale (data) to machine learning and search. *See* Franz Oz, *The Machines do the translating*, GOOGLE OFFICIAL BLOG, Aug. 22, 2005 (providing an example of how one element in building better language models is using more data collected over longer periods of time); Paul Haahr & Steve Baker, *Making search better in Catalonia, Estonia, and everywhere else*, GOOGLE OFFICIAL BLOG, Mar. 25, 2008, https://googleblog.blogspot.com/2008/03/making-search-better-in-catalonia.html ("One element in building better [search] language models is using more data collected over longer periods of time."); Michael Learmonth, *How Google is Trying to Hold Up the Microsoft-Yahoo Deal*, BUSINESS INSIDER, Oct. 13, 2009, https://www.businessinsider.com/how-google-is-trying-to-hold-up-the-microsoft-yahoo-partnership-2009-10 ("[Google] hasn't taken an official position on the proposed deal, but it is quietly disseminating a view to regulators, politicians, analysts and journalists: that the need for scale is not a valid case for approving Microsoft's search deal with Yahoo. . . . In public, Google's message is being carried forth by top Google executives such as last month when Google chief economist Hal Varian told CNET he thinks the scale argument is 'bogus.'").

Further, an early temporal view is necessary to examine the market conditions that existed in the early- and mid-2000s. *See Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 218 (D. Del. 1985) (allowing discovery dating back to when scheme of monopolization may have

begun even though it antedated the limitation period); *Maritime Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 591 (S.D.N.Y. 1973) ("In an antitrust action where the essence of the charge is that defendants have engaged in activity in restraint of competition, it is not unusual to touch on, or even probe, matters at the heart of the business dealing and competitive relationships of the parties.").

Accordingly, because information dating back to these earlier periods is highly relevant to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, market power, restrictive conduct, and competitive effects, and Google's sole objection to producing documents for these periods are boilerplate proportionality objections, the Rule 26 factors weigh in favor of producing documents from these earlier periods. *See generally Oxbow Carbon & Minerals LLC v. Union Pac. R.R.*, 322 F.R.D. 1, 7 (D.D.C. 2017).

Therefore, Plaintiffs' respectfully request that the Court order Google to produce information dating back to the periods prescribed in Plaintiffs' Second RFPs, except where otherwise modified by the parties.

3.     *Google's Search Proposal Limits the Periods Over Which It Will Run Search Strings It Has Already Concede Were Relevant*

In its Responses and Objections to Plaintiffs' Second RFP, Google did not make *any* date-range objections to many of Plaintiffs' requests, namely Requests Nos. 5, 13, 16, 19, 21, 23 and 32. Yet, Google's March 18 Search Proposal limited the period over which Google is now willing to run search terms that correspond to those requests (see Exhibit 2). On March 26, Plaintiffs raised this issue with Google. Google responded that "any inconsistency between [its]

response and objection and Google's search proposal was unintentional."[7] However, Google has only agreed to run the document searches over the full requested period for Requests Nos. 23 and 32. Google has indicated that they are reviewing Plaintiffs "analysis" with respect to the Requests No. 5,13, 16, 19 and 2. Plaintiffs, however, are concerned with Google's selective willingness to run its search strings over the periods that Google has already conceded are appropriate; accordingly, we raise the issue with the Court now.

It is inappropriate for Google to introduce (through its March 18 Search Term Proposal) time-period objections it has already conceded are appropriate. *See In re Papst Licensing GMBH & Co. KG Litig.*, 550 F. Supp. 2d 17, 22 (D.D.C. 2008) ("As a general rule, when a party fails to object timely to discovery requests, such objections are waived." (citations omitted)). As such, Plaintiffs request that the Court order Google to extend the periods over which it will agree to run its offered search strings, as identified in Exhibit 2.

### B.  Google's Failure to Heed the Court's Instruction and Identify Code Names and Other Google Lexicon to Be Incorporated into Its Search Strings

The Court should order Google to comply with the Courts order and provide code names and other inside-Google terms for use in its search strings.

In the February 25, 2021 hearing, the Court instructed Google to "do its homework to figure out if there are code words or other types of particular lexicon or lingo that is particular to

---

[7] There are additional inconsistencies between Google's March 18 Search Proposal and its Response and Objection. There are instances where Google in its Response and Objections objected to the period for which Plaintiffs requested information. However, in its March 18 Search Proposal Google agreed to search for information for the period as requested by Plaintiffs. Google has now indicated that "any inconsistency between Google's responses and objections and Google's search proposal was unintentional on [its] part." Given the representations Google made to the Court regarding which periods it would run its proposed search strings, the company should not now be able to backtrack and limit the period over which those search strings will be run and the responsive information that will be produced.

Google and that Google is aware of that would capture this information, to make sure the Department of Justice is aware of it." Hr'g Tr., ECF # 113, at 38–39. To date, Google has not provided Plaintiffs with a list of code names and relevant lexicon and instead has identified only four new code names that is has inserted into some search strings.

       *1.*     *Code Names and Lexicon*

Following the Court's instruction, on March 1, 2021, to augment Google's effort, Plaintiffs proposed search terms and strings to Google that included code names and Google lexicon which Plaintiffs identified as relevant to each request in Plaintiffs' Second RFP. On March 4, 2021, Google submitted its search term proposal and identified *fewer* code names than Plaintiffs did, ignoring dozens of code words identified by Plaintiffs. As of its most recent proposal, dated March 18, 2021, Google has still only identified four new code names, and it has ignored over 70 code names that Plaintiffs identified, as depicted in the table below.

| Category | Code Names Identified by Plaintiffs |
|---|---|
| Voice Assistants and Internet-of-Things (IoT) Devices | ██████████████████████████ |
| Search Ads | ██████████████████████████ |

| Distribution and Defaults[8] | ███████████████████████ |
| Third Party Communications | ██████ |

The code names Plaintiffs identified are highly relevant to this case. By way of example, Plaintiffs identify here a sample of the project names:



Plaintiffs heed this Court's instruction that discovery in this case is not about "output." ECF # 120 at 2 (Order following the March 18, 2021 Joint Status Report) (Mar. 23, 2021). However, Plaintiffs point to (1) Google's paltry proffering of just four code names for a company its size and of its demonstrated proclivity for employing code names, and (2) its unexplained rejection of over 70 relevant code names Plaintiffs identified, as strong evidence that Google has not complied with this Court's instruction.

These code names are not trivial. Because these are the terms by which Google's employees discuss their work, the failure of Google's search strings to capture these terms renders the search strings inadequate. The Court recognized this when it first ordered Google to do its "homework."

---

[8] ████████████████████████████████████████████████████
█████████████████████████████████████

### 2. Use of Code Words and Lexicon in Search Strings

Additionally, Google has not included in its search terms the code words and lexicon that its employees use to refer to admittedly relevant topics. Given Google's failure, Plaintiffs provided the below table and asked Google to confirm it would include these variations in its search strings. For example, where Google's search strings reference the term "Yahoo!," Plaintiffs asked that Google also use "Y!" and the code name "Yale," because that is the lexicon its employees sometimes use to refer to Yahoo!. Google refused.[9] The Court should order Google to include the following lexicon additions to the search strings Google has agreed to perform.

| Search Term Already In Search String | Name Permutations and Code Names Google Should Add |
|---|---|
| Apple | AAPL, APL, Andes, Cupertino, NYC, Tim Cook |
| Amazon | AMZ, AMZN, AZN, Bezos |
| Bing | Bink |
| Facebook | FB, Zuckerberg |
| Microsoft | MSFT, MS, Redmond |
| Yahoo! | Y!, Yale |

Because Google has not fully complied with this Court's instruction, Plaintiffs respectfully ask the Court to order Google to comply with the company's obligation to identify: (1) Google-internal code names for relevant third parties; (2) code names of Google projects on issues relevant to Plaintiffs' Complaint and Google's defenses; and (3) Google-specific lexicon on issues relevant to Plaintiffs' Complaint and Google's defenses. Additionally, Plaintiffs

---

[9] Email from C. Connor to D. Aguilar (March 26, 2021).

respectfully ask the Court to order Google to include all agreed upon code names and name

permutations in each search string referencing a given search term.

### C. Plaintiffs' Request Information, Solely in Google's Possession, to Assess the Suitability of Google's Investigation Review for Identifying Information Responsive to Plaintiffs' Second RFP

The Court should order Google to provide sufficient information to Plaintiffs to permit

confirmation that documents reviewed during the investigation are not producible under the

Second RFP.

As Plaintiffs explained in the March 18 Joint Status Report, Google has refused to review

any document it deemed non-responsive to the 2019 investigation subpoena preceding this

action. Google asserts that reviewing any of those documents for responsiveness to the Second

RFP is wasteful because any document Google's attorneys marked not responsive to the 2019

investigation subpoena is not responsive to the Second RFP. This is mistaken.

As this Court noted in the February 25, 2021 hearing, there are important differences

between the investigation subpoena and Plaintiffs' Second RFP. Hr'g Tr., ECF # 113, 23:5–7

("[T]here's no reason to think that [the investigation] search strings alone are going to capture

everything that the second RFP requests.").[10] These differences likely led to exclusion of

documents in 2019 or 2020 that are responsive to Plaintiffs' Second RFP. Google alone controls

the information Plaintiffs need to test the discrepancy, but Google refuses to provide Plaintiffs

---

[10] The United States drafted the investigation subpoena and served it on Google in October 2019. The subpoena contained several dozen specifications addressing a variety of theories of anticompetitive behavior, many of which are not relevant to this litigation. After fifteen months of investigating and reviewing documents, Plaintiffs drafted and served the Second RFP on Google in January 2021. The Second RFP comprises independently drafted requests—not mere restatements of, or even rewordings of—the investigation requests. The Second RFP is targeted to the issues relevant to this litigation, and given the benefit of time and review of investigative materials, the Second RFP describes the requested documents with more specificity than was feasible during the 2019 investigation.

with the necessary information. As such, Plaintiffs request that the Court order Google to make available to Plaintiffs a randomly generated set of 5,000 documents marked non-responsive during the investigation. Alternatively, Plaintiffs request that the Court direct Google to re-review all documents hitting on search terms that correspond to the most material differences between the investigation subpoena and the Second RFP. Plaintiffs look forward to discussing this issue with the Court at the next status Conference, *see* Order at 4 n.2, ECF # 120, and offer this statement to further inform the discussion.

Although there is some overlap between the topics covered by the investigation subpoena and Plaintiffs' Second RFP, there are many important differences. The three most significant differences involve (1) search advertising, (2) scale, and (3) voice assistants/IoT.

The starkest discrepancy between the investigation subpoena and the Second RFP is the focus on search advertising. Because search advertising is central to this litigation, *see* Amended Complaint ¶¶ 97–110, 168, 180–193, ECF # 94, the Second RFP contains nine custodial requests for search advertising documents.[11] Although the investigation subpoena discussed search services generally, it never mentioned "search advertising"; indeed, even the definition of "relevant product" in the investigation subpoena omitted "search advertising." Thus, an attorney reviewing documents during the investigation may not have marked documents on search advertising as responsive.

Another important discrepancy between the investigation subpoena and Plaintiffs' Second RFP relate to the issue of scale. Plaintiffs' Complaint alleges that scale and data are critical to a search engine's success because they feed the search engine—making it more

---

[11] The Second RFP contains custodial requests for search advertising documents in Request Nos. 2(b), 4, 8, 31, 39, 41, 44–46, and 52.

reliable. The Complaint explains that Google's anticompetitive practices have denied rivals the scale and data needed to compete effectively. *E.g.*, Amended Complaint ¶¶ 8, 35–38, 57, 95, 100, 113, 119–122, 155, 166(b). Accordingly, Request No. 8 in the Second RFP seeks "all documents addressing or discussing the impact of data or scale on the quality of search or search advertising products or services." The investigation subpoena had no similar request. Thus, it is likely that an attorney reviewing documents during the investigation would have marked most documents responsive to Plaintiffs' Second RFP scale request—for example, emails and presentations assessing the importance of scale—as not responsive to the investigation subpoena.

A third, important example of the discrepancy between the investigation subpoena and the Second RFP relates to voice assistants. As explained in the Complaint, voice assistants serve as an important method of distribution for general search services. Google has called voice assistants "the future of search" and foreclosed rivals from accessing this important distribution channel. Amended Complaint ¶¶ 13, 41, 44, 80, 86, 139, 141, 169. Voice assistants are particularly important search access points on IoT devices, which is yet another category not included in the investigation subpoena. Amended Complaint ¶¶ 12, 39, 163. Because the investigation subpoena does not address voice assistants or IoT devices, an attorney reviewing documents during the investigation would likely have marked as documents relating to these subjects as non-responsive.

Google asserts that every request in the Second RFP is subsumed within the investigation subpoena because of the breadth of the investigation subpoena.[12] Plaintiffs hope that Google

---

[12] The investigation subpoena began with this offer: "In the Department's experience, modifications to this Demand may reduce the burden of searching for responsive documents and information in a way that is consistent with the Department's needs. The Company is encouraged to propose such modifications, but all modifications must be agreed to in writing by the Department." Google never proposed narrowing modifications.

interpreted the investigation subpoena as broadly as it publicly characterizes the subpoena, but there is good reason suggests otherwise. Google's responsiveness review during the investigation culled nearly 80% of the reviewed documents from the set Google produced.[13] This low production rate dispels any notion that Google's responsiveness review relied on a broad reading of the investigation subpoena.

In any event, Plaintiffs cannot test Google's assertion without more information—information solely in Google's possession. Plaintiffs have never seen any documents Google marked as not responsive to the investigation subpoena, and Plaintiffs have not seen (and have not requested to see) the materials Google used to train its responsiveness-review attorneys. Stated differently, neither Plaintiffs nor the Court can verify that Google's investigation document review was broad enough to cover the requests in Plaintiffs' Second RFP unless and until Google provides transparency into the non-responsive set. *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135 (S.D.N.Y. 2009) ("The implementation of the methodology selected [to find responsive documents] should be tested for quality assurance; and the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented.").

Only a statistically significant random sample of documents marked non-responsive during the investigation will enable Plaintiffs to evaluate Google's proposal. Accordingly, Plaintiffs request that the Court order Google to permit Plaintiffs to review 5,000 randomly selected documents marked as non-responsive during the investigation. If the sample set reveals

---

[13] During the investigation, Google reviewed 7.2 million documents for responsiveness and produced only 1.5 million of those documents.

insufficiencies with Google's initial review, Plaintiffs will present the evidence to Google and request that Google re-review documents containing search terms tailored to identify documents Google withheld from its investigation productions.

Although the exact circumstances of this action are unique, Plaintiffs' proposal to review a sample of documents marked non-responsive is neither novel nor burdensome. Indeed, allowing the requesting party to review a sample of non-responsive documents is a routine step in verifying the accuracy of technology-assisted review, and in the context of search terms, random samples of non-responsive documents are "commonly used" "for validation to defend the search and production process." *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 494 (N.D. Ill. 2018); *see also Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 128–29 (S.D.N.Y. 2015) ("[R]equesting parties can [e]nsure that training and review was done appropriately by . . . quality control review of samples from the documents categorized as non-responsive.").

Further, allowing Plaintiffs to review a random sample of non-responsive documents "will not be unreasonably expensive or burdensome," and in any case, the costs will "not outweigh [the] likely benefit of ensuring proper and reasonable—not perfect—document disclosure." *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 495 (N.D. Ill. 2018).[14]

If the Court prefers to avoid a sampling exercise, Plaintiffs request in the alternative that the Court direct Google to review the previously sorted documents hitting on Google's and Plaintiffs' search terms corresponding to the three topics identified above (i.e., search advertising, scale, and voice assistants/IoT). This will allow for a narrowly tailored re-review of

---

[14] *City of Rockford* weighed several additional factors in determining whether to allow the requesting party to review a random sample of documents marked non-responsive: the importance of the litigation, the size of the controversy, whether one party had more relevant documents than the other, and the resources of the producing party. 326 F.R.D. at 495. As in *City of Rockford*, these factors all weigh heavily in favor of review.

documents that were likely marked not responsive to the investigation subpoena, but are likely to be responsive to Plaintiffs' Second RFP.

### D.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court order Google to:

- Extend the periods over which Google will run its search strings, as identified in Exhibits 1 and 2;

- Identify Google-internal code names and lexicon for entities and issues relevant to this litigation, and include all agreed-upon code names and name permutations in each Google search string referencing a given search term; and

- Make available to Plaintiffs a random sample of documents marked non-responsive to the United States' investigation subpoena.

## IV.    Google's Position Statement

The DOJ Plaintiffs' purported disputes concerning the time periods proposed by Google for searching for documents responsive to particular requests and the manner in which Google identified and incorporated code and project names into its document review proposal were identified to Google for the first time at 7 pm yesterday evening—after more than six weeks of extensive negotiation between the parties—and are an attempted end-run around the Court's March 23 Order.  The other disputed issue, regarding documents previously reviewed in response to requests issued by DOJ during its pre-Complaint investigation, was also raised for the first time late in the parties' negotiations (on March 16) and then only as a bargaining chip—not a requirement for Google to meet its discovery obligations.  Google will briefly recite the relevant history of the parties' negotiations here before specifically addressing these newly raised issues, which the Court should decline to resolve in Plaintiffs' favor.

Google served its responses and objections to the DOJ Plaintiffs' First Request for Production on February 4, 2021, and its responses and objections to the DOJ Plaintiffs' Second Request for Production on February 10, 2021.  Over the ensuing six weeks, the parties engaged in extensive discussions regarding the parameters of the search and review Google would perform in response to Plaintiffs' Second Requests.  The Parties have had seven telephonic meet and confer sessions, and have exchanged numerous emails and letters (including on a near-daily basis over the last several weeks).

Consistent with the Court's directive that the parties promptly raise and address discovery disputes, the parties have twice brought to the Court's attention disputes regarding the appropriate parameters of Google's document search and production in response to Plaintiffs' Requests: first in position statements filed on February 23, 2021 (ECF 111), and second in position statements filed on March 18, 2021 (ECF 118).  At the February 25 status conference, the Court provided principles to guide the parties' further discussions, and instructed the parties to report back to the Court on their progress.  The parties continued their negotiations, and submitted joint status reports regarding their progress on March 5, March 10, and March 18.  The March 18 Joint Status Report notified the Court that, following extensive discussions, the parties could not reach final agreement and required the Court's further guidance on the unresolved issues.[15]  The parties identified three remaining issues in dispute regarding the parameters of Google's search for responsive documents—the appropriate structure or process for Google conducting its search for documents, the reasonableness and adequacy of search terms, and the

---

[15] ECF 118 at 2 ("The parties have not been able to agree on a protocol for identifying documents responsive to Plaintiffs' Requests for Production.  Accordingly, the parties have set forth in Sections III and IV their respective positions regarding the issues they believe remain unresolved following the meet-and-confer process.").

reasonableness and adequacy of document custodians—and submitted position statements addressing each issue.

In an order issued March 23, 2021, the Court resolved these remaining disputes regarding the protocol and search terms to be used by Google in responding to Plaintiffs' Second Requests. March 23, 2021 Order (ECF 120) at 1.  With respect to search terms, the Court ordered: "Plaintiffs may propose up to 20 additional *targeted* search strings (in addition to the more than 60 to which Google has agreed) to generate a comprehensive universe of records potentially responsive to the Second Request….  The proposed search strings must be tailored to identify potentially responsive records that are not likely to be captured by the searches to which Google already has agreed." *Id.* at 3 (emphasis in original).  With respect to custodians, the Court ordered that it "will afford Plaintiffs some leeway and allow them to identify up to 20 additional custodians." *Id.* at 3.

The DOJ Plaintiffs have not yet identified 20 additional custodians; nor have they proposed additional search strings.  Instead, yesterday at 7:01 pm, Plaintiffs raised two ***new*** issues related to the search protocol and advised Google that they intended to include them as disputed issues to be briefed in the present submission.  Plaintiffs' email attached a letter addressing the issue relating to code and project names.  Plaintiffs sent another email at 10:22 pm, attaching a separate letter related to the time periods issue.

### A.     The Time Periods to Which Google Objected in its February 10 Responses and Objections to the DOJ Plaintiffs' Second Requests for Production

The DOJ Plaintiffs' Second Requests proposed as a default time period 2010-present, but many individual requests went back even further, to 2008, 2007, 2005, 2002, and in one instance to 2000.  In its responses and objections, served February 10, 2021, Google agreed to the DOJ Plaintiffs' requested time period for the majority of their requests.  For those requests where

Google objected to the time period, it identified a narrower date range for which it would be willing to collect and produce responsive documents.  During the parties' first meet and confer regarding Plaintiffs' Second Requests on February 18, 2021, Google explained that it had given the time periods issue significant consideration in preparing its responses and objections, and that they reflected its view as to the appropriate period for discovery for particular subject matter areas.  Google offered to discuss date ranges request by request, but Plaintiffs declined to do so.  Plaintiffs instead asked that Google provide comparative volume amounts for the objected-to time periods.  Google declined to do so, given the burdens involved in running many voluminous hit reports.  Google invited the DOJ Plaintiffs to identify what, if anything, they believed was relevant that would not be captured by Google's narrower proposed time periods.  Google heard nothing more from Plaintiffs on this issue for five weeks, until their letter of yesterday evening.

In addition to its formal responses and objections, on March 4, Google sent a detailed search term proposal that included the date ranges over which Google proposed to run each search string.[16]  Plaintiffs did not respond to Google's proposed date ranges, or identify any perceived mismatch between Google's proposed date ranges and Google's responses and objections, until last night.  The only (passing) reference made by Plaintiffs to time periods was their unexplained assertion that Google was "unilaterally" imposing time period limitations (an assertion made for the first time in a March 16 letter and repeated in footnote 2 of their March 18 position statement).[17]

---

[16] Google's proposal includes running groups of search strings over date ranges of 2002-present, 2005-present, 2006-present, 2007-present, 2010-present, 2014-present and 2015-present, depending on the topic addressed by the string. These time periods remained unchanged in Google's March 18 proposal (ECF 118-2).

[17] Google's date period objections are no more "unilateral" than the DOJ Plaintiffs' time period demands in the Second Requests for Production.

In their letter of last night, Plaintiffs stated for the first time their view on the relevance of the earlier time periods to which Google objected.  Plaintiffs offered a "compromise" for certain requests seeking information back to 2002 by offering to agree to begin with 2005, but only if Google would in exchange agree to drop all of its time period objections to every request. Plaintiffs' proposed "compromise" includes no real concessions on their part: out of five 2002-or-earlier requests, Plaintiffs excluded three from their proposal altogether; and for the remaining two, Plaintiffs reserved the right to seek documents going back to 2002 "at a later date." Plaintiffs also identified perceived inconsistencies between the time periods in Google's responses and objections and the time periods connected to the search strings in Google's proposed search protocol.

With respect to the first issue, Google stands on its responses and objections regarding time periods.  With respect to the latter issue, any inconsistency was unintentional, and Google has since confirmed to Plaintiffs that it will run the document searches for relevant custodians over the full requested period for RFPs 23 and 32, consistent with its responses and objections. With respect to the other search strings identified by Plaintiffs, Google is reviewing Plaintiffs' analysis and will adjust its search protocol as necessary to ensure that the time periods Google has agreed to in its responses and objections are captured.[18]

### B.       Plaintiffs' Request that Google Add Additional Project and Code Names to Its Search Proposal

Google's March 4 search term proposal identified in red text search terms that Google proposed to add to the search strings set forth by Plaintiffs in Appendix A to their First Request

---

[18] In the meantime, Google continues to review and produce documents in response to Plaintiffs' RFPs.  On March 24, Google notified Plaintiffs that it expects to upload on March 29 another production of approximately 150,000 documents.

for Production.  Those same additions to the March 4 proposal also appear in red text on its

March 18 proposal, attached as Exhibit 2 to the parties' March 18 Joint Status Report (ECF 118-

2).  Consistent with the Court's instruction at the February 25, 2021 hearing, Google's March 4

red-text additions to the Appendix A strings included pertinent project names and code words.

In the subsequent near-daily exchanges between the parties regarding their respective

search term proposals, the DOJ Plaintiffs never raised any issue with Google's project name and

code word additions.  The first time Plaintiffs raised this issue was last night, when they

informed Google by email that Plaintiffs "plan to address" in this Status Report Google's

purported "failure to add code words and project names to its search terms."  Plaintiffs' March

25 email attached a letter, which incorrectly asserted that Google had not included code and

project names in its own proposal, and provided a chart of 74 additional terms and phrases with

the request that Google include "at least" those terms in its search protocol—***not*** as part of the 20

additional strings Plaintiffs have been allotted by the Court's March 23 Order, but as ***separate***

additions to Google's protocol.  Plaintiffs' eleventh-hour assertion regarding project names and

code words is meritless.

First, the DOJ Plaintiffs are incorrect that Google did not add code words and project

names to its search terms; Google did so, as is apparent from the red text additions in the March

4 (and March 18) proposals.  *See* ECF 118-2.  Second, the DOJ Plaintiffs' 74 additional

proposed terms and phrases do not appear to be "tailored to identify potentially responsive

records that are not likely to be captured by the searches to which Google already has agreed."

March 23 Order at 3.  For example, Plaintiffs propose a laundry list of terms they identify as

relating to Search Ads, many of which correspond to the project names of product launches.  The

inclusion of every project name for a new product launch irrespective of its relevance to the

issues in the litigation, or to other search terms tailored to particular issues, does not comply with the Court's instructions.

Plaintiffs' March 25 letter also asked Google to confirm that it will include all permutations of certain names into each of its search strings (for example, "MS" in addition to "Microsoft").  Here, again, Plaintiffs are asking for a do-over of Google's proposal without any demonstration that these additions are warranted.  Where their proposed permutations are absent, in many cases it is because Google accepted ***Plaintiffs'*** proposed search string that did not include these code names.  Again, to the extent that Plaintiffs now seek another belated expansion of the search protocol, they are able to do that by following the process the Court outlined in its March 23 Order.

### C.    Plaintiffs' Request that Google Re-Review the Materials Previously Reviewed and Deemed Not Responsive

Google's responses and objections to the DOJ Plaintiffs' First and Second Requests, served February 4 and 10, made clear Google's position that it would not re-review materials that were reviewed during the DOJ's pre-Complaint investigation and deemed not responsive to the DOJ's broad CID requests.  Over the course of weeks of meet and confers, Plaintiffs did not raise any objection to Google exempting these previously-reviewed materials from the document review set for the Second Requests.  The only issue Plaintiffs raised regarding the previously-reviewed materials was to seek clarification that Google would only exempt documents actually reviewed by attorneys (which Google confirmed).  Accordingly, as the parties exchanged proposals and search term hit counts, the documents reviewed during the pre-Complaint investigation were excluded from the hit counts associated with the parties' respective proposals.

The first time Plaintiffs ever suggested they had any objection to the exclusion of the previously-reviewed documents was in a letter sent on March 16, as the parties were exchanging

27

final proposals in advance of the Joint Status Report filed on March 18.  In that letter, Plaintiffs'
counsel stated that *if* Google would agree to Plaintiffs' proposed search protocol regarding
newly-collected, previously un-reviewed documents (which the Court subsequently rejected),
*then* "Plaintiffs will not insist that Google re-review documents that were already reviewed by
Google attorneys during the Investigation; as an alternative, we would require Google to provide
a randomly selected representative null set of those documents for Plaintiffs' inspection."  March
16, 2021 Letter from D. Aguilar to F. Rubinstein.  When Google declined to accept Plaintiffs'
search protocol (which would have required the review of *9.7 million additional documents*,
above and beyond what Google had agreed to do), Plaintiffs in their March 18 position statement
asked the Court to order Google to provide a sample of the previously-reviewed materials—
without explaining their failure to meaningfully raise this issue during the parties' meet and
confers.  The DOJ Plaintiffs' belated demand for production of a sample of non-responsive
documents is another example of Plaintiffs trying to litigate issues that they have never timely
(or seriously) raised during the legion of phone calls and correspondence that have occurred on a
near-daily basis for almost two months.

Google incurred substantial burden and expense in responding to DOJ's pre-Complaint
investigation, and up until March 16, the DOJ Plaintiffs never indicated they would seek a re-
review of the documents that were marked as non-responsive to the CIDs issued during that
investigation.  If Plaintiffs believed Google's position on this issue was unreasonable, then
Plaintiffs could have raised it promptly and brought it to the Court's attention on February 25,
rather than at the eleventh hour in an attempt to leverage Google to give up its objections to the
DOJ Plaintiffs' other (unreasonable) requests.  The Court has made clear that the parties should
move forward with resolving document discovery disputes in a timely fashion consistent with the

schedule in this case.  Had Google known that the DOJ Plaintiffs were leaving open the possibility of demanding that Google re-review millions of documents from the pre-Complaint investigation, it would have taken that into account in the numerous proposals and hit reports the parties exchanged since the last status conference, and it would not have compromised as significantly as it has by agreeing to review millions of documents that Plaintiffs did not seek during the pre-Complaint investigation.  The DOJ Plaintiffs' request should be denied and the parties should move forward consistent with the Court's March 23 Order, rather than going backward by litigating new issues that were not properly raised or discussed during the meet and confer process.

Dated: March 26, 2021      Respectfully submitted,

           WILLIAMS & CONNOLLY LLP

           By: /s/ *John E. Schmidtlein*
           John E. Schmidtlein (D.C. Bar No. 441261)
           Benjamin M. Greenblum (D.C. Bar No. 979786)
           Colette T. Connor (D.C. Bar No. 991533)
           725 12th Street, NW
           Washington, DC 20005
           Tel: 202-434-5000
           jschmidtlein@wc.com
           bgreenblum@wc.com
           cconnor@wc.com

           WILSON SONSINI GOODRICH & ROSATI P.C.
           Susan A. Creighton (D.C. Bar No. 978486)
           Franklin M. Rubinstein (D.C. Bar No. 476674)
           1700 K St, NW
           Washington, DC 20006
           Tel: 202-973-8800
           screighton@wsgr.com
           frubinstein@wsgr.com

           ROPES & GRAY LLP
           Mark S. Popofsky (D.C. Bar No. 454213)
           2099 Pennsylvania Avenue, NW
           Washington, DC 20006
           Tel: 202-508-4624
           Mark.Popofsky@ropesgray.com

           *Counsel for Defendant Google LLC*

By: _____*/s/ Kenneth M. Dintzer*_____
Kenneth M. Dintzer
Elizabeth S. Jensen
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*

By: _____*/s/ Jonathan R. Carter*_____
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

By: _____*/s/ Adam Miller*_____
Xavier Becerra, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By: _____*/s/ Lee Istrail*_____
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com

Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:_____/s/Daniel Walsh_____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:_____/s/ Scott L. Barnhart_____
Theodore Edward Rokita, Attorney General Scott L.
Barnhart, Chief Counsel and Director, Consumer
Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By:_____/s/ Justin D. Clark_____
Justin D. Clark, Deputy Director of Consumer
Protection
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of Consumer
Protection
Philip R. Heleringer, Assistant Attorney General
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Justind.Clark@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By:_____/s/ Stacie L. Deblieux_____
Jeff Landry, Attorney General
Stacie L. Deblieux, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
Deblieuxs@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

32

By:    */s/ Wisam E. Naoum*
Dana Nessel, Attorney General
Wisam E. Naoum, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
NaoumW1@michigan.gov

*Counsel for Plaintiff State of Michigan*


By:    */s/ Kimberley G. Biagioli*
Kimberley G. Biagioli
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Kimberley.Biagioli@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:    */s/ Hart Martin*
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:    */s/ Mark Mattioli*
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By:    */s/ Rebecca M. Hartner*
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy Attorney General
Mary Frances Jowers, Assistant Deputy Attorney

General
Office of the Attorney General, State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By: _____*/s/ Bret Fulkerson*_____
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By: _____*/s/ Gwendolyn J. Lindsay Cooley*_____
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By:      /s/ Jonathan B. Sallet

Jonathan B. Sallet, Special Assistant Attorney
General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General
(D.C. Bar No. 1022365 *inactive*)
Diane R. Hazel, First Assistant Attorney General
(D.C. Bar No. 1011531 *inactive*)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff Colorado*


Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*


Brunn W. (Beau) Roysden III, Solicitor General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney
General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff Arizona*

Max Merrick Miller
Attorney General's Office for the State of Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*


Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*


Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*


J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Scott R. Ryther
Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
sryther@agutah.gov
tpincock@agutah.gov

*Counsel for Plaintiff Utah*


Jeff Pickett
Senior Assistant Attorney General
jeff.pickett@alaska.gov
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100

*Counsel for Plaintiff Alaska*


Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*


Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*


Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection
Division
Benjamin Bernard Paholke, Assistant Attorney
General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*


Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*


Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Erin L. Shencopp
Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
eshencopp@atg.state.il.us
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff Illinois*


Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*


Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*


Matthew B. Frank, Assistant Attorney
General Antitrust Division
William T. Matlack, Assistant Attorney
General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*


Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*


Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*


Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*


Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

41

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio,
Antitrust Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*


Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*


David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*


Yvette K. Lafrentz
Office of The Attorney General of South
Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*


Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*


Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*


Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West
Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Plaintiff Wyoming*