# EXHIBIT 1

| Request Number | Google's Proposed Time Period[1] | Plaintiffs' Response |
|---|---|---|
| 2. From January 1, 2002, to the present, produce all documents addressing or discussing:<br>a. Google's market share of the general search market, including those documents addressing or discussing third party estimates or analysis of Google's market share of that market; and<br>b. Google's market share of the search advertising or digital advertising markets, including those documents addressing or discussing third party estimates or analysis of Google's market share of those markets. | 2010–Present | Information related to markets dating back to 2002 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search-advertising-revenue-share agreements with distribution partners began at least as earlier as 2005. Further, this early temporal view is particularly important to examine the more competitive market conditions that existed in 2002 and on. Accordingly, documents dating back to 2002 are relevant and within the reasonable temporal scope for this RFP. Nevertheless, Plaintiffs have offered to compromise and adjust the time period for RFP Nos. 2 and 4 to 2005. Google has not responded to that offer. |
| 4. From January 1, 2002, to the present, produce all documents addressing or discussing barriers to entry or expansion in general search services, general search text advertising, or search advertising, including documents addressing or discussing:<br>a. The possible entry of Apple, or any other third party, into general search services (including the development or potential development of search engines), general search text advertising, or search advertising;<br>b. Efforts by Apple, or any other third party, to crawl the web or otherwise index websites; and<br>c. The possible entry of specialized search services into general search services, general search text advertising, or search advertising. | 2014–Present | |

[1] Despite Google's stated position in its Response and Objections, Google's March 18 Search Proposal indicates it will run some (but not all) search strings over broader time periods than those it proposed in its objections. Google has indicated that "any inconsistency between Google's responses and objections and Google's search proposal was unintentional on [its] part." Given the representations Google made to the Court it should not now be able to backtrack and limit the period over which those search strings will be run and the responsive information that will be produced.

| | | |
|---|---|---|
| 3. From January 1, 2002, to the present, produce all minutes, recordings, summaries, or reports of meetings, whether formal or informal, of your company's (and each of its divisions' or subsidiaries') board of directors (including committees or subgroups), addressing or discussing:<br>a. Search distribution;<br>b. Competition, competitors, strategy, or market analyses in search advertising; or<br>c. Competition, competitors, strategy, or market analyses in digital advertising. | 2010–Present | For the same reasons as stated above for RFP 2 and 4, information related to markets, and competition in search and search advertising dating back to 2002 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case.<br><br>In addition, former Google CEO Eric Schmidt was a member of the board of directors for both Google and Apple from 2006–2009. Mr. Schmidt resigned from Apple's board of directors after numerous of conflicts of interest. *See* Apple Press Release, https://www.apple.com/newsroom/2009/08/03Dr-Eric-Schmidt-Resigns-from-Apples-Board-of-Directors/ ("Unfortunately, as Google enters more of Apple's core businesses, with Android and now Chrome OS, Eric's effectiveness as an Apple Board member will be significantly diminished, since he will have to recuse himself from even larger portions of our meetings due to potential conflicts of interest. Therefore, we have mutually decided that now is the right time for Eric to resign his position on Apple's Board."). Google's proportionality argument also fails because Plaintiffs are amenable to accepting Google's offer of "one copy of nonprivileged responsive minutes, recordings, and formal reports of meetings of Google's board of directors (including committees or subgroups)." Google's Responses and Objections to Plaintiffs' Second RFP. Plaintiffs simply request that Google pull such documents back to 2002. |

| | | |
|---|---|---|
| 7. From January 1, 2005, to the present, produce all documents addressing or discussing:<br>a. User preferences regarding privacy protections and advertisements with regard to general search services;<br>b. Google's requests for, or receipt of, consumer or third party data as part of Google's provision of general search services;<br>c. The use of technology to limit or block ads provided by Google's search engine, and Google's efforts to avoid or defeat these efforts, including agreements with companies that develop and sell ad-blocking technology; and<br>d. Google's competitive response to the privacy innovations of alternative search engines. | 2014–Present | Information related to competition and quality in search and search advertising dating back to 2005 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search-distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. Google purchased Android in 2005 and released a licensable version of Android in 2007. Google released its Chrome browser in 2008.<br><br>Documents discussing Google's search engine, as well as the lead up to the development of Chrome, in relation to ads, data, and privacy issues are plainly relevant to this case. *See, e.g.*, Preston Gralla, *Chrome: Google's biggest threat to your privacy,* COMPUTERWORLD, Sept. 4, 2008, https://www.computerworld.com/article/2480353/chrome--google-s-biggest-threat-to-your-privacy.html. Further, this early temporal view is particularly important to examine the more competitive market conditions that existed in 2005 and on. Accordingly, documents dating back to 2005 are relevant and within the reasonable temporal scope for this RFP. |

| | | |
|---|---|---|
| 8. From January 1, 2005, to the present, produce all documents addressing or discussing the impact of data or scale on the quality of search or search advertising products or services, including the use of data to improve search or search advertising products or services. | 2014–Present | For the same reasons stated above in RFP 7, information related to quality and scale in search and search advertising dating back to 2005 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects.<br><br>Further, Google's distribution of Android and Chrome are inextricably linked to issues related to data and scale. Further, this early temporal view is particularly important to examine the more competitive market conditions that existed in 2005 and on. Accordingly, documents dating back to 2005 are relevant and within the reasonable temporal scope for this RFP.<br><br>The 2005 time period is also relevant given Google's public comments during that time period regarding the importance (or lack thereof) scale (data) to machine learning and search. *See* Franz Oz, *The Machines do the translating*, GOOGLE OFFICIAL BLOG, Aug. 22, 2005 (providing an example of how one element in building better language models is using more data collected over longer periods of time); Paul Haahr & Steve Baker, *Making search better in Catalonia, Estonia, and everywhere else*, GOOGLE OFFICIAL BLOG, Mar. 25, 2008, https://googleblog.blogspot.com/2008/03/making-search-better-in-catalonia.html ("One element in building better [search] language models is using more data collected over longer periods of time."); Michael Learmonth, *How Google is Trying to Hold Up the Microsoft-Yahoo Deal*, BUSINESS INSIDER, Oct. 13, 2009, https://www.businessinsider.com/how-google-is-trying-to-hold-up-the-microsoft-yahoo-partnership-2009-10 ("[Google] hasn't taken an official position on the proposed deal, but it is quietly disseminating a view to regulators, politicians, analysts and journalists: that the need for scale is not a valid case for approving Microsoft's search deal with Yahoo. . . . In public, Google's message is being carried forth by top Google executives such as last month when Google chief economist Hal Varian told CNET he thinks the scale argument is 'bogus.'"). |

| | | |
|---|---|---|
| 12. From January 1, 2005, to the present, produce all documents addressing or discussing:<br>a. Google's strategy related to the development of the Chrome browser;<br>b. The effect of the United States v. Microsoft consent decree on the success of Chrome;<br>c. The quality of Chrome browser and any comparisons to alternative web browsers, including for factors such as ease of use, speed, relevance of results, the protection, safety, and security of consumers' identities and information, and consumers' control over tracking and advertising (e.g., providing "ad blocking");<br>d. Any studies, surveys, or analyses conducted on browser usage and switching between browsers (including any underlying data); and<br>e. The effect of the European Union's 2010 Microsoft browser choice screen remedy on Chrome usage or adoption in the European Union | 2010–Present | Information dating back to 2005 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>In addition, the Consent Decree in *United States v. Microsoft* was issued in 2001. Google thereafter developed its Chrome browser, ultimately releasing the product to the general public in 2008. Further, this early temporal view is important to examine the more competitive market conditions that existed in 2005 and on. Accordingly, documents dating back to 2005 are relevant and within the reasonable temporal scope for this RFP.<br><br>Further, Plaintiffs have offered to limit the time period for search strings targeting 12(e) to 2009 to the present. |
| 14. From January 1, 2008, to the present, produce all documents or data addressing or discussing the frequency with which Chrome browser users (1) enter search queries into the monobar (or "address bar"), and (2) navigate to a search engine before entering a search query. | 2010–present | Information related to the Monobar dating back to 2008 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>Additionally, Google released its Chrome browser in 2008. Accordingly, documents dating back to 2008 regarding Chrome users' search habits are relevant and within the reasonable temporal scope for this RFP. *See, e.g.*, Preston Gralla, *Chrome: Google's biggest threat to your privacy*, COMPUTERWORLD, Sept. 4, 2008, https://www.computerworld.com/article/2480353/chrome--google-s-biggest-threat-to-your-privacy.html. |

| | | |
|---|---|---|
| 17. From January 1, 2007, to the present, produce all documents addressing or discussing how Google's payments to third parties have affected, or are intended to affect, device prices. | 2010–Present | Information related to the effect of Google's agreements on device prices dating back to 2007 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>Google purchased Android in 2005 and released a licensable version of Android in 2007. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. Further, this early temporal view is particularly important to examine the more competitive market conditions that existed in 2007 and on. Accordingly, documents dating back to 2007 are relevant and within the reasonable temporal scope for this RFP. |
| 18. From January 1, 2007, to the present, produce all documents addressing or discussing the efficacy of different channels for advertising, promoting, or distributing search engines, including documents comparing or contrasting different channels. | 2010–Present | Information relating to competition in search and search advertising dating back to 2007 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. Google purchased Android in 2005 and released a licensable version of Android in 2007. The efficacy of different channels for advertising, promoting, or distributing search engines on mobile devices and elsewhere, is plainly relevant to the claims in this case. Further, this early temporal view is particularly important to examine the more competitive market conditions that existed in 2007 and on. Accordingly, documents dating back to 2007 are relevant and within the reasonable temporal scope for this RFP. |

| | | |
|---|---|---|
| 20. From January 1, 2004, to the present, produce all documents addressing or discussing:<br>a. Any agreements and payments between Google and any third party, including Apple, regarding the provision of map-based searches; and<br>b. The functionality or usage of general search services as compared to map-based search services (such as Google Maps, Waze, Apple Maps, and Bing Maps), local search services (such as Yelp), or any other specialized search service. | 2010–Present | Information relating to Google's agreements with third-parties for the provision of map-based searches dating back to 2004 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. In addition, Google launched Google Maps in February 2005. *See* Bret Taylor, *Mapping Your Way*, GOOGLE OFFICAL BLOG, Feb. 8 2005, https://googleblog.blogspot.com/2005/02/mapping-your-way.html. Further, this early temporal view is particularly important to examine the more competitive market conditions that existed in 2004 and on. Accordingly, documents dating back to 2004 are relevant and within the reasonable temporal scope for this RFP. |

| | | |
|---|---|---|
| 21. From January 1, 2007, to the present, produce all documents addressing or discussing:<br>a. Competition between Google's Android OS and Apple's iOS operating systems;<br>b. Consumer switching behavior between Android and iOS on mobile devices;<br>c. Competition between Apple Maps and Google Maps/Waze; and<br>d. Consumer switching behavior between Apple Maps and Google Maps/Waze. | Google intends to limit its document collection for Subpart 21(c) to 2012 to the present. | Information relating to competition between Android and Apple's operating systems dating back to 2007 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. Google purchased Android in 2005 and released a licensable version of Android in 2007, the same year Apple released the iPhone and its mobile OS. Further, this early temporal view is important to examine the more competitive market conditions that existed in 2007 and on. Accordingly, documents dating back to 2007 are relevant and within the reasonable temporal scope for this RFP.<br><br>In addition, Plaintiffs accept Google's limited time period (2012 to the present) for search strings targeting 21(c). |
| 34. Produce all documents addressing or discussing:<br>a. Any considerations of or plans to develop or acquire specialized search services; and<br>b. The effect of Google's agreements with third parties on the success or failure of competing specialized search services. | 2014–Present | Information relating to markets and competition, quality, and scale in search and search advertising dating back to 2010 is relevant and proportional to Plaintiffs' allegations, theories, and presentation of the case related to Google's early search distribution strategy, restrictive conduct, and competitive effects. *See generally* AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>In particular, Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. Google purchased Android in 2005 and released a licensable version of Android in 2007. Accordingly, documents dating back to 2010 are relevant and within the reasonable temporal scope for this RFP. |

<table>
<tr>
<td>35. Produce all documents:<br>a. Comparing the relative qualities or desirability of Google Assistant and alternative assistants; and<br>b. Addressing or discussing required “hotwords” or dedicated hardware buttons used to activate Google Assistant or alternative assistants.</td>
<td>2014–Present</td>
<td rowspan="2">Information relating to voice assistants and internet of things devices dating back to 2010 is relevant and proportional to Plaintiffs’ allegations, theories, and presentation of the case related to Google’s early search distribution strategy, restrictive conduct, and competitive effects. See generally AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.<br><br>In particular, Apple’s voice assistant Siri was released in 2011. Google Now, a predecessor voice assistant service to Google Assistant, was released in 2012. Amazon’s voice assistant, Alexa, was released in 2014. Accordingly, documents dating back to 2010 are relevant and within the reasonable temporal scope for this RFP.</td>
</tr>
<tr>
<td>36. Produce all documents addressing or discussing the distribution of Google Assistant or Google search services on IoT devices, including smart speakers, smart TVs, wearables, and automotive devices. For clarity, this includes:<br>a. Google’s product plans for IoT devices;<br>b. Google’s rationale for distributing IoT devices, or for partnering to distribute Google products such as Google Assistant on third parties’ IoT devices;<br>c. Google’s decision to manufacture its own IoT devices, including devices that distribute Google Assistant;<br>d. Google’s strategy for controlling search access points on IoT devices;<br>e. The advantages of preinstallation of Google Assistant on IoT devices; and<br>f. Voice assistant concurrency and Google’s lack of participation in the Voice Interoperability Initiative.</td>
<td>2014–Present</td>
</tr>
<tr>
<td>39. Produce all documents addressing or discussing the similarities or differences between forms of advertising, including search advertising, general search text advertising, display advertising, social-media advertising, and any other forms of digital or non-digital advertising.</td>
<td>2014–Present</td>
<td>Information relating to competition and quality in search advertising and the advertiser auction dating back to 2010 is relevant and proportional to Plaintiffs’ allegations, theories, and presentation of the case related to Google’s early search distribution strategy, restrictive conduct, and competitive effects. See generally AC ¶¶ 4–10, 88, 97, 101, 108–10, 111–65.</td>
</tr>
</table>

| | | |
|---|---|---|
| 44. Produce all documents describing Google's methodology in selecting which advertiser wins each search ad slot, including:<br>a. All components of Google's search advertising auction and algorithms;<br>b. The nature and effect of any changes or modifications thereto (including all reports describing the measures of any such inputs such as beta, or the quality cost of an ad used in the LTV auction scoring formula over time). By way of example and not limitation, some exemplar measurements can be found in GOOG-DOJ-10776576;<br>c. Respond simulation tools, including AR-SIM; and<br>d. Advertiser experiment framework, including advertiser experiments. | 2014–Present | In particular, Google's search distribution and strategic relationships with partners, including Apple, began as early as 2002. Google's search-advertising-revenue-share agreements with distribution partners began at least as early as 2005. Accordingly, documents dating back to 2010 are relevant and within the reasonable temporal scope for this RFP. |
| 45. Produce all documents addressing or discussing search advertising headroom and price indices, including:<br>a. How Google calculates search advertising headroom and price indices;<br>b. The role of customer data (including ROI or ROAS information) in calculating or capturing search advertising headroom and price indices;<br>c. Any studies or analyses related to search advertising headroom and price indices; and<br>d. Any documents discussing the impact of Google's search advertising auction or algorithms on search advertising headroom and price indices (including the impact of changes such as Holy Load, Holy Grail, and any change to the number or size of the search ads). | 2014–Present | |