## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

### JOINT STATUS REPORT

In accordance with the Court's Minute Order dated April 30, 2021, the parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report summarizing the state of discovery and identifying any issues, and the parties' respective positions, that will be raised at the status hearing scheduled for May 27, 2021.

I.      **Case No. 1:20-cv-03010**

A.      **Google's Discovery of Plaintiffs**

A summary of Google's First Set of Requests for Production and the document

productions made by Plaintiffs to date are set forth in the parties' earlier Joint Status Reports,

including their report dated February 23 (ECF No. 111), their report dated March 26 (ECF No.

124) and their report dated April 23 (ECF No. 131). There have been no additional productions

made by Plaintiffs and no additional discovery sought by Google since the parties submitted their

last report on April 23.

B.      **Plaintiffs' Discovery of Google**

*Document and Data Production*. A summary of Plaintiffs' First and Second Sets of

Requests for Production and the document productions made by Google prior to April 23 are set

forth in the parties' earlier Joint Status Reports, including their report dated February 23 (ECF

No. 111), their report dated March 26 (ECF No. 124) and their report dated April 23 (ECF No.

131). Google produced additional documents in response to Plaintiffs' First and Second Requests

for Production on April 27 (83,000 documents) and May 13 (120,000 documents). Google also

produced additional data in response to Plaintiffs' First and Second Requests for Production on

April 30, May 4 and May 7.

*Open Discovery Issues*. Since the April 30 status conference, the parties have continued

to negotiate the scope of a manual collection of documents responsive to Plaintiffs' Second

Requests for Production and certain data requests. Although the parties have made significant

progress on a number of issues, some disputed issues remain.

The parties have set forth in Sections III and IV their respective positions regarding three

issues.

### C.  The Parties' Discovery of Third-Parties

A summary of the third-party discovery requests issued by the parties prior to April 23 is set forth in the parties' earlier Joint Status Reports. *See* February 23, 2021 Joint Status Report (ECF No. 111); March 26, 2021 Joint Status Report (ECF No. 124); April 23, 2021 Joint Status Report (ECF No. 131). Since April 23, the parties have subpoenaed and cross-subpoenaed seven additional third parties. The parties have issued document subpoenas to approximately 54 third parties in total. All third parties that have received a subpoena from Plaintiffs have received a cross-subpoena from Google, and vice versa. The parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.

### D.  Parties' Proposed Amendment to CMO

The parties have agreed to a proposed revision to the Case Management Order ("CMO") regarding the sharing of certain materials across cases. The additional language (which the parties propose be added as paragraph 31 to a Second Amended CMO) is:

> A Party may provide to all other Parties: (a) materials produced in response to a subpoena issued in the DOJ Action or the Colorado Action; (b) materials produced in response to a request for production made in the DOJ Action or the Colorado Action. Such materials shall retain the designation the producing party made under the Protective Order or during the investigation if the producing party has not yet designated under the Protective Order. A Party shall provide to all other Parties: (c) Investigation Materials produced by Google in response to U.S Department of Justice CID Nos. 30092 and 30120; (d) materials originally produced by Google in response to CID Nos. 30121, 30178, 30357, 30358, or the Second Request issued to Google in connection with Google's acquisition of Fitbit that are re-produced by agreement of the Parties in this litigation or are otherwise agreed, or found by the Court, to be part of the litigation; (e) Investigation Materials produced by Google in response to Utah CID Nos. 2007211 and 2007212 and Nebraska CIDs and Subpoenas dated January 17, 2020 and August 15, 2020; and (f) Investigation Materials produced by any third party.

The parties can provide the Court with a revised CMO in Word containing this language and/or provide any other briefing on this issue that the Court requests.

II.     **Case No. 1:20-cv-03715**

    A.  **Google's Discovery of Plaintiff States**

A summary of Google's First Set of Requests for Production and the document

productions made by Plaintiffs to date are set forth in the parties' earlier Joint Status Reports,

including their report dated March 26 (ECF No. 124) and their report dated April 15 (ECF No.

130).

    B.  **Plaintiff States' Discovery of Google**

A summary of Plaintiff States' First Set of Requests for Production and the parties' meet

and confer discussions prior to April 15 are set forth in the parties' earlier Joint Status Reports,

including their report dated March 26 (ECF No. 124) and their report dated April 15 (ECF No.

130).

The Parties continue to negotiate Google's response to the CO Plaintiffs' First Requests

for Production ("First RFPs"). The Parties met and conferred regarding Plaintiff States' First

Requests for Production on April 26, May 5, May 11, May 18, and May 21. As a result of these

meet and confers, the Parties resolved whether Google would use search terms or the manual

collection of documents to identify responsive documents to the First RFPs and agreed on a set

of search terms, custodians, and date ranges that will be used to satisfy all of the requests that

will not be addressed through manual collections.[1] On April 14, the Parties began a parallel

---

[1] Google sent proposed search strings for a subset of the RFPs on March 28. Plaintiff States proposed
search strings for additional RFPs on April 27, May 7, and May 14. As part of their May 7 proposal,
Plaintiff States also sent proposed search strings for the documents Google marked as non-responsive
during the DOJ investigation. Google sent Plaintiff States their counter proposal for search terms on May
14, and Plaintiff States responded with their proposal on May 19 and added a custodian to that proposal
on May 20. Google also provided Plaintiff States hit reports on May 3, May 14, and May 20. Google
agreed on May 24 to accept the search strings, custodians, and date ranges proposed by Plaintiff States on
May 19 and 20.

series of meet and confers about Plaintiff States' data requests, including certain preliminary data requests intended to inform a data request that Plaintiff States intend to make on a future date. The Parties met and conferred about Plaintiff States' data requests on April 26, May 11, and May 21. During these discussions, the Parties identified information in Google's possession that Plaintiff States believe is necessary for the resolution of Plaintiff States' data requests. On May 21, Plaintiff States requested, and Google agreed to supply, this information and Google's related proposal on data in writing. The parties intend to continue to confer regarding the outstanding data requests with the goal of reaching resolution as soon as possible. The Parties propose submitting a joint status report on June 10 updating the Court on their progress with respect to Plaintiff States' requests with the goal of confirming resolution of all document and data requests.

### C.  The Parties' Discovery of Third Parties

The parties have issued document subpoenas to approximately 54 third parties. All third parties that have received a subpoena from Plaintiff States have received a cross-subpoena from Google. Similarly, all third parties that have received a subpoena from Google have received a cross-subpoena from Plaintiff States. Both parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.

## III.  The DOJ Plaintiffs' Position Statement

Plaintiffs continue to negotiate the scope of a manual collection of documents responsive to Plaintiffs' Second Requests for Production and certain data requests. Two issues, however, are ripe for the Court's consideration: (1) Google's refusal to produce communications between Google (including its outside counsel) and third-party subpoena recipients, and (2) Google's refusal to produce performance reviews and self-assessments of Google's custodians. Plaintiffs

also address one issue Google intends to raise with the Court: (3) Plaintiffs' purported failure to provide Google with Plaintiffs' deposition plan, including the identification of which Google employees Plaintiffs will depose first and a schedule for those depositions.[2] For the reasons stated below, Plaintiffs respectfully request that the Court order Google to produce (a) correspondence between Google (including outside counsel) and third-party subpoena recipients, and (b) the self-assessments and performance reviews of Google's custodians. Further, the Court should deny Google's improper and premature demand that Plaintiffs create a deposition plan for Google.

### A.     Google's Refusal to Provide Reciprocal Communications with Third Parties

The Court should conclude that Google is improperly withholding communications between Google (including its outside counsel) and third-party subpoena recipients regarding this litigation. These communications are clearly relevant and easy to produce, and mirror the communications Google has sought—and received—from the United States.

Plaintiffs' Request No. 1 seeks communications discussing the lawsuit, including communications between Google (including its outside counsel) and third parties (including the third-parties' counsel) "identified in Plaintiffs' initial disclosures or likely to have discoverable information regarding Google's defenses." Similarly, Google sought, through its Request No. 10 "[a]ll documents relating to any communications between any Plaintiff and any Third Parties relating to the legal claims against Google in this litigation."

In response to Google's request, the United States agreed to produce all communications between the United States and any third-party subpoena recipient regarding the legal claims

---

[2] On May 20, Google identified two purported issues it intended to raise in this Joint Status Report: "(a) which Google current/former employees DOJ is going to ask for depositions first, and (b) a time frame for when DOJ wants to start taking those depositions." Since these issues seek the same thing—Plaintiffs' deposition plan—Plaintiffs address these issues as one in this joint status report.

against Google in this litigation. The United States has already begun making rolling productions of these documents (producing 3,679 documents on April 9, 2021).[3] This production includes every written communication with subpoena recipients without applying any filter to identify "substantive" communications.

In contrast, Google has refused to produce all its communications with third-party subpoena recipients regarding this litigation. Instead, Google has agreed to produce only a scattershot collection of what Google deems "substantive" communications:

> (i) proposed or agreed modifications to any subpoena, including any proposal or agreement contemplating that a subpoena recipient need not produce documents in response to a particular request or that documents previously produced will be deemed sufficient to satisfy a particular request; (ii) proposed or agreed protocols for responding to a subpoena, including lists of search terms or custodians; (iii) responses and objections served by subpoena recipients; (iv) correspondence with subpoena recipients regarding actual or alleged non-compliance with a subpoena; and (v) draft or executed declarations or affidavits exchanged with subpoena recipients.

Google refuses to produce categories of external communications beyond these.

Google has offered no explanation as to how it can demand documents with one hand and deny production of the same documents with the other. Instead, Google has repeatedly misconstrued Plaintiffs' request as merely seeking "administrative" or "ministerial" communications that "are not relevant."[4] That is not the scope of Plaintiffs' request. Plaintiffs' request focuses on communications regarding the legal claims and defenses in this litigation, and those communications are relevant. *See, e.g.*, *United States v. Blue Cross Blue Shield of Mich.*, 2012 WL 4513600, at *4 (E.D. Mich. Oct. 1, 2012) (ordering Defendant to produce all

---

[3] USDOJ-GOOG-00070552 to USDOJ-GOOG-00085610. The United States will make its next production in July.

[4] Google also makes a meritless burden claim. It is far more burdensome to collect the same emails and— rather than produce them all—individually review each one to determine whether it fits into a list of five categories.

communications "between Defendant's counsel (inside and outside) and persons other than employees or agents of Defendant, relating to the investigations and cases" outlined in Plaintiff's RFP); *Multimedia Pat. Tr. v. DirecTV, Inc.*, 2011 WL 13100742, at *2 (S.D. Cal. Feb. 2, 2011) (request for defendant's communications with third parties "whether made by the defendant or <u>counsel on its behalf</u> are sufficiently relevant to the claims and defenses in the litigation. [Defendant] has not shown that the production or identification of this category of communications would be so burdensome as to outweigh its relevance." (emphasis in the original)). Yet, Google's narrowed proposal would exclude important substantive discussions about legal claims and defenses with third-party subpoena recipients, including communications regarding (1) third parties' views on Plaintiffs' claims or Google's defenses; (2) potential witnesses, declarations, affidavits, or other evidence for trial; (3) how this litigation affects Google's business relationships with third parties; (4) the relevance of Google's subpoenas in light of Plaintiffs' claims or Google's defenses; and (5) the credibility of potential witnesses (including any biases and potential influence by Google over a non-party's testimony). Put differently, there is a large gap between the categories of documents Google promises to produce and relevant documents. And that gap contains far more than "ministerial" communications.[5]

Google has no basis to refuse to properly respond to Plaintiffs' Request No. 1 and, further, refuse to reciprocate Plaintiffs' productions of communications with third-party subpoena recipients regarding this litigation. Considering that Google sought the exact same scope of communications from Plaintiffs, the Court should reject as meritless Google's claim that Plaintiffs' request is "overbroad."

---

[5] In addition, it is possible that ministerial communications (a meeting invite) might also include substantive information (the identity and role of meeting participants and agenda for the meeting).

Plaintiffs respectfully request that the Court order Google to produce *all* communications between Google (including outside counsel) and third-party subpoena recipients regarding this litigation.

**B.     Google's Refusal to Produce Custodian Performance Reviews and Self-Assessments**

For more than 120 days, Google has refused to produce its custodians' performance reviews and self-assessments, called for under Request No. 63. Indeed, Google will not even identify the location of these documents, as required under this Court's ESI Order.[6] Google justifies its recalcitrance by mischaracterizing Plaintiffs' request as a burdensome and unnecessary demand for irrelevant and sensitive human-resource personnel files. Google is mistaken on all accounts. Accordingly, Plaintiffs request that the Court order Google to produce its custodians' self-assessments and performance reviews for 2010 to the present.

"Generally speaking, 'relevance' for discovery purposes is broadly construed." *Food Lion, Inc. v. United Food & Com. Workers Intern. Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). Self-assessments and performance reviews for the custodians agreed to under Plaintiffs' Second RFP are plainly relevant. *First*, these files often identify company goals (for example, growing market-share for a product), an employee's acts to further those goals, and the company's success in achieving those goals. *Second*, these files often discuss market facts as well as the employer's and employee's interpretation of those facts, which bear on relevant issues such as barriers to entry, market shares, and market definition. *Third*, these files often

---

[6] Google must provide "information sufficient for the Requesting Party to assess whether the chosen Custodial and non-Custodial Data Sources are appropriate" and "other disclosures reasonably necessary for the parties to meet and confer and resolve disputes related to search methodologies." ESI Order (ECF No. 99) at 6. *See also* The Case for Cooperation, 10 Sedona Conf. J. 339, 354 (2009) ("[C]ounsel may not use his superior information as to the location or nature of responsive documents to thwart good faith discovery requests by refusing to engage cooperatively to identify the sources likely to contain relevant information and the search terms likely to produce responsive documents.").

discuss an employee's roles and responsibilities as well as the employee's familiarity with important subjects. These insights can undermine or bolster an employee's writings and testimony on particular subjects. *See U.S. ex rel Krahling v. Merck & Co., Inc.*, 2016 WL 7042203, at *3 (E.D. Pa. Feb. 5, 2016) ("Relator's performance reviews . . . may be relevant to assess [the] credibility of any testimony she might provide about her knowledge and abilities regarding testing methodology, testing protocols, and quality assurance."); *see also Kerr v. U.S. Dist. Ct. for N. Dist. of Cali.*, 511 F.2d 192, 196–97 (9th Cir. 1975) ("In addition to discovering information pertaining to a party's case in chief, it is entirely proper to obtain information for other purposes such as cross-examination of adverse witnesses."), *aff'd*, 426 U.S. 394 (1976).

Google's refusal to identify the location of these files is inexcusable. Self-assessments and performance reviews are not only relevant but also easy to produce. Since at least February 18, seven days after Google first asserted a burden objection to Request No. 63, Plaintiffs have asked Google for evidence of burden. In particular, Plaintiffs asked whether personnel files are centrally kept and thus easily retrieved. Google has consistently ignored the request.[7] Most recently, Google criticized Plaintiffs for speculating that Google's collection burden is low, but Google again offered no evidence of burden. The time to present evidence of burden—particularly for such an implausible assertion of burden—has passed. *See Telecom Tech. Servs. Inc. v. Rolm Co.*, 1997 WL 34636705, at *2 (N.D. Ga. Dec. 30, 1997) ("If ATC maintains a 'personnel file' . . . , the burden of producing such a file to defendant would be slight."); *Disability Rts. Council of Greater Wash. v. Wash. Metro. Transit Auth.*, 242 F.R.D. 139, 147 n.11 (D.D.C. 2007) ("[T]he party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."). At this time,

---

[7] Plaintiffs asked for this information on Feb. 18, Feb. 26, Mar. 5, Apr. 9, May 6, and May 17.

Plaintiffs' Request No. 63 seeks a targeted pull of select files. Google has provided no reason to believe that Plaintiffs' request cannot be satisfied fully with minimal, if any, burden.

Lacking a defensible relevance or burden objection, Google touts a purported compromise as sufficient to identify the files Plaintiffs need. However, Google's "compromise"—that it will produce personnel files if they (1) are collected by coincidence during custodial document pulls, and (2) contain search terms that are responsive to another request (i.e., a request other than Request No. 63)—is insufficient.[8]

First, Google has offered no evidence or assertion that these documents are stored in custodial files in the ordinary course, such that search terms could surface them for review.[9] Accordingly, Plaintiffs have no assurances that Google will collect (much less produce) the requested files.

Second, even if Google collects the files using search terms, many will not be produced because they will not contain the search terms the parties have agreed to. Even in the best circumstances, "[s]imple keyword searching is often not enough," because "'[k]eyword search[ing] is not nearly as effective at identifying relevant information as many lawyers would like to believe.'" *Natl. Day Laborer Organizing Network v. U.S. Immig. & Cust. Enf't Agency*, 877 F. Supp. 2d 87, 108–09 (S.D.N.Y. 2012). That is particularly true here. None of the search terms Google is using were designed to capture documents responsive to Request No. 63.[10]

---

[8] Notably, Google's offer constitutes a tacit admission that self-assessments and performance reviews are properly discoverable—they can contain relevant information and are not exempt from discovery.

[9] In the absence of any assurances from Google, good reason suggests that these documents are not kept in employees' custodial files. For example, to encourage candid assessments, Google may not share written performance reviews with employees.

[10] Recognizing that these types of documents are typically centrally stored and search terms are not an efficient method for collection, neither party proposed using search terms for this request during the parties' three-month search term negotiation.

Indeed, search terms are ill-suited for self-assessments and performance reviews because they contain unique relevant information discussed above, such as an employee's roles and responsibilities, and familiarity with important subjects.

Finally, Google has, at times, refused to produce documents responsive to Request No. 63 based on an assertion that the documents contain sensitive information about employees. Plaintiffs accounted for such potential concerns by narrowing their request to self-assessments and performance reviews—the documents most likely to contain relevant information about Google's business, instead of employee private information. To the extent an employee's self-assessment or performance review nonetheless contains sensitive information, protections are in place. Google can redact much of the information under Instruction 8 to Plaintiffs' Second RFP (protecting sensitive PII and SHI, and allowing for redactions), as it does with any document produced in this litigation. In addition, the Court's protective order safeguards all remaining sensitive information from improper disclosure or use. *See* Protective Order (ECF No. 98) at 2–3 (protecting confidential information from improper disclosure or use, including Highly Confidential Information such as personnel files); *Hill v. Auto Owners Ins. Co.*, 2015 WL 2092680, at *13–14 (D.S.D. May 5, 2015) ("Auto Owners argues that sensitive information weighs against discovery, but the court has entered a protective order in this case to alleviate privacy concerns."); *see also Moya v. City of Clovis*, 2019 WL 4193427, at *3 (D.N.M. Sept. 4, 2019) ("The Court is cognizant of the many highly personal and sensitive materials in personnel files, but the appropriate remedy is to craft a protective order for the Court's consideration that protects those materials from public consumption, not unilaterally barring access to information.").

Accordingly, Plaintiffs ask that the Court order Google to produce all self-assessments and performance reviews from 2010 to the present for each Google custodian.

### C.      Google's Improper and Premature Demands for Plaintiffs' Deposition Plan

Google's demand for Plaintiffs' deposition plan, including a list of initial deponents and a schedule, is both improper, as it contravenes the clear requirements of the Federal Rules of Civil Procedure and this Court's Local Rules, and premature, as Google unilaterally created a last-minute dispute with Plaintiffs and raised it to the Court's attention without even attempting to meet and confer to resolve the issue.

During the April 30 status conference, this Court denied Plaintiffs' request for an expedited production schedule, but stated to Plaintiffs, "To the extent that you would like to have documents for a particular deponent that you're interested in deposing by August, then, by all means, you ought to communicate that to Mr. Schmidtlein and let him know." Hr'g Tr. at 18 (April 30, 2021). Weeks later, Google referenced this suggestion from the Court by offering on May 7 that "if Plaintiffs provide a list of custodians whose depositions they wish to take first, then we will make every reasonable effort to prioritize completing production of all of the responsive documents collected from those custodians." In response, Plaintiffs sought metrics regarding the number of unreviewed documents by custodian so that Plaintiffs could understand for which custodians, if any, Plaintiffs had already accumulated a critical mass of documents.

A week later, on May 18, Google claimed that it did not have such metrics "readily available" and converted its offer to consider prioritizing custodial productions into a demand for a list of "current or former Google employees that Plaintiffs expect will be in their first set of deposition notices." Plaintiffs note that in that letter, Google did not proffer a list of their own planned depositions.

Plaintiffs responded two days later, on May 20, and requested that Google complete document productions for the first 76 custodians, whose documents Google stated it had been prioritizing in only a limited fashion. Although Plaintiffs could not commit to providing Google a deposition plan on such short time, Plaintiffs offered to discuss additional production prioritization and deposition-related issues. Google refused.

### 1.    *Google's Alleged Dispute Is Not Ripe for The Court's Consideration*

Google's demand for Plaintiffs' deposition plan is not yet ripe for the Court's review, as Google refused Plaintiffs' offer to meet and confer on the issue. Google first made its demand for a deposition plan on May 18, leaving Plaintiffs only two days to consider, evaluate, and respond.[11] This was an unreasonable demand, particularly since the CMO requires coordination among all Plaintiffs in the DOJ and Colorado actions. *See* Amended Scheduling and Case Management Order, ECF No. 108 at 13 (requiring the DOJ Plaintiffs and Colorado Plaintiffs to coordinate in "noticing and scheduling of all depositions").

Compounding the problem, Google has repeatedly refused to provide *any* metrics on production by custodian to aid Plaintiffs' review and deposition plan. Instead, Google, a self-proclaimed expert in "how to do these massive document productions,"[12] claimed it did not have such information available (despite the fact that Google was able to provide such information during search term negotiations in the present litigation).

Plaintiffs responded to Google's May 18 demand letter on May 20 providing some additional information regarding custodian production prioritization and offering to meet and

---

[11] Given Google thought it proper to request Plaintiffs' deposition list, Plaintiffs asked the same of Google. Google has remained silent on whether it intends to propose any depositions, but demands from Plaintiffs their list. Google again impermissibly seeks a special set of rules that apply to all other parties but not to Google.

[12] Hr'g Tr. at 16 (Apr. 30, 2021).

confer. Google ignored Plaintiffs' offer and instead raised this issue with the Court. Plaintiffs remain willing to meet and confer with Google to address these issues.

> ### 2. *Google's Improper Demand That Plaintiffs Prematurely Provide A Deposition Plan*

If the Court seeks to address Google's demand for Plaintiffs' deposition plan more than two months prior to any potential deposition, Plaintiffs ask the Court to reject Google's demand because (1) this Court's Local Rule 30.1 requires only fourteen days' notice of a deposition, and (2) Google has not substantially completed document productions for any custodian.

First, Google is demanding that it receive a list of Plaintiffs' planned depositions and schedule more than two months before those depositions may take place. Rule 30 of the Federal Rules of Civil Procedure and Rule 30.1 of this Court's Local Rules determine the notice period. Rule 30(b)(1) requires parties seeking a deposition to "give reasonable written notice to every other party." Local Rule 30.1 makes clear that "seven days . . . shall constitute 'reasonable notice' to a party as required by Fed. R. Civ. P. 30(b)." If the deposition is to take place more than 50 miles from the District of Columbia, then "14 days shall constitute reasonable notice." Put simply, Google is asking for the Court to rule that Google is entitled to notice far greater notice than the Rules prescribe.[13]

Second, Google's demand, in contravention of the Federal and Local Rules, would force Plaintiffs to make strategic deposition decisions without the benefit of a substantial number of documents that would inform their decisions as to *when* to take the deposition of a certain deponent and *whether* to use one of their limited depositions on a particular deponent. Google

---

[13] Plaintiffs separately note that the Court does have the ability to increase this notice period, "on application of a party for good cause shown." Local Rule 30.1 Google has not informed Plaintiffs that it is seeking to demonstrate good cause and increase this notice period. To the extent Google separately seeks to make this argument, Plaintiffs ask for the opportunity to brief this separate issue.

has yet to complete production of documents containing the initial search strings for the 76 priority custodians. Further, Google has not identified when it anticipates producing documents containing the April 28, 2021 search strings for those same 76 priority custodians.[14] Despite repeated requests, Google has not even provided estimates to Plaintiffs as to how many documents remain to be produced for the 76 priority custodians, which would allow Plaintiffs to consider Google's production progress in selecting potential custodians to depose. Thus, although Plaintiffs acknowledge they do not need every document from a custodian in order to notice a deposition, Plaintiffs cannot reasonably choose priority deponents when substantial portions of each custodian's documents remain unproduced. Plaintiffs have asked Google for the information necessary to streamline this process. Google refuses to provide it.[15]

Finally, although Plaintiffs have told the Court that we aspire to take depositions in August, Plaintiffs cannot guarantee such a schedule because it relies on Google fulfilling its commitments regarding a productions schedule and Plaintiffs' review of those productions. Google made clear at the last hearing that its production timing is sensitive, noting that even conducting document review "by custodian" could "slow the production down." Hr'g Tr. at 16 (Apr. 30, 2021). Because the deposition schedule is dependent upon Google's production schedule, commitment to any deposition—let alone specific deponents—is premature at this time. Further, Google's suggestion that it is owed anything beyond what the Federal Rules, the

---

[14] Google has committed to completing its production of documents responsive to the April 28 search protocol by the "end of July." Hr'g Tr. at 31 (Apr. 30, 2021). But, Google has not provided an estimate as to when it will complete the production of the priority custodians.

[15] Had Google sought to expedite its document production, Plaintiffs would be in a better position to choose priority deposition witnesses. Thus, Google is demanding accelerated deposition notices while having denied Plaintiffs the tools to accelerate those notices.

Local Rules, and this Court's orders require is wishful thinking. The Court should reject it as such.

### D. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Google's improper and untimely demand for Plaintiffs' deposition plan and order Google to:

- Produce Google's (including outside counsel's) communications with third-party subpoena recipients regarding this litigation; and

- Produce the performance reviews and self-assessments of Google's 116 custodians from 2010 to present.

## IV. Google's Position Statement

### A. Plaintiffs Are Not Entitled to the "Personnel File" of Every Custodian

Plaintiffs demand collection and production of *all* "performance reviews, self-assessments, and similar personnel files" for every one of the 116 Google document custodians. May 17, 2021 Ltr. from A. Cohen to F. Rubinstein. Plaintiffs have argued that these personnel documents "will describe the custodian's competence, which can bolster or discredit the custodian's writings and testimony." May 6, 2021 Ltr. from A. Cohen to F. Rubinstein. Courts have repeatedly rejected this reasoning, even in cases where the "competence" of the witness is squarely at issue. *See, e.g.*, *In re Del-Val Fin. Corp. Sec. Litig.*, 158 F.R.D. 275, 276–77 (S.D.N.Y. 1994) (denying motion to compel production of "personnel records and evaluations pertaining to all of the matters worked on by" accountants accused of having "recklessly failed to perform" required audit procedures because, among other things, plaintiffs have "the opportunity to depose the accountants whose records are now being sought and to develop other sources of information regarding their qualifications" and "the potential harm of releasing [the evaluations] outweighs their possible relevance"). In this case, Plaintiffs cannot establish that the

"competence" of each document custodian is relevant to the disputed issues, let alone that it would have some bearing on the veracity of their testimony.

Plaintiffs also have asserted that "personnel files" are relevant because they may contain descriptions of "the employee's roles and responsibilities regarding the relevant products," "company goals," and "the employee's efforts and success in achieving those goals."  May 6, 2021 Ltr. from A. Cohen to F. Rubinstein.  That kind of information surely can be gleaned from numerous other sources, including the large volume of internal documents Google has already produced to Plaintiffs in connection with this litigation and the pre-suit investigation.  Plaintiffs do not need to scrutinize every self-assessment and performance review for more than 100 current and former employees in order to ascertain Google's goals or to determine which products a particular employee worked on.  *See, e.g.*, *Prof'l Recovery Servs., Inc. v. Gen. Elec. Cap. Corp.*, No. 06-cv-2829, 2009 WL 137326, at *1, 4 (D. N.J. Jan. 15, 2009) (denying discovery of the personnel file of a "key witness" where "Plaintiff had access to other sources for the same information through prior discovery" because "personnel files, even of a party's agent, may contain information that is both private and irrelevant to the case," such that "special care must be taken before personnel files are turned over to an adverse party").

Even if Plaintiffs could articulate some possible relevance of the materials sought, the private and sensitive nature of personnel files counsels against expanding the collection to include all of these documents.  As courts in this District and elsewhere have explained, "an employee's personnel file contains private and sensitive information," and "a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove his case."  *Washington v. Thurgood Marshall Academy*, 232 F.R.D. 6, 12 (D.D.C. 2005); *see, e.g.*, *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997) (observing "that

the mere fact that a person may be a witness in a case does not automatically warrant access to their personnel file" and concluding that "production of the files in their entirety should not be ordered where the relevant information may be obtained by resort to less intrusive means of discovery").  In particular, discovery of the "performance reviews" and "self-assessments" demanded by Plaintiffs is disfavored not only "because disclosure would invade [the] employees' privacy," but also because "firms might cease to frankly criticize and rate their own performance, for fear that any written evaluations they make might be used against them or their employees in a lawsuit." *In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 580 (E.D. Pa. 1989) (holding that "discovery of personnel records is permissible if (1) the material sought is 'clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable").

For these reasons, Plaintiffs' request to expand discovery to include the collection and production of personnel files should be rejected.

### B.    Plaintiffs Are Not Entitled to All Communications Between Outside Counsel and Subpoena Recipients

Plaintiffs also insist that Google's outside counsel produce every last email that they exchange with counsel for subpoena recipients in this case, in addition to the categories of correspondence that Google has already agreed to produce.  Specifically, Google has offered to produce the following categories of documents exchanged with subpoena recipients:

(i) proposed or agreed modifications to any subpoena, including any proposal or agreement contemplating that a subpoena recipient need not produce documents in response to a particular request or that documents previously produced will be deemed sufficient to satisfy a particular request;

(ii) proposed or agreed protocols for responding to a subpoena, including lists of search terms or custodians;

(iii) responses and objections served by subpoena recipients;

19

(iv) correspondence with subpoena recipients regarding actual or alleged non-compliance with a subpoena; and

(v) draft or executed declarations or affidavits exchanged with subpoena recipients.

*See* May 19, 2021 Ltr. from F. Rubinstein to A. Cohen.

Plaintiffs have not identified any arguably relevant categories of correspondence that are not captured by Google's proposal. Instead, they have asserted without qualification that Google should "produce *all* communications regarding the subpoenas," including every mundane email about scheduling a meet and confer or negotiating a deadline. May 17, 2021 Ltr. from A. Cohen to F. Rubinstein. There is simply no reason for Google to incur the expense of collecting and producing these run-of-the-mill communications, particularly given that the parties already exchange on a weekly basis all extensions granted to subpoena recipients.

The only apparent justification Plaintiffs have offered during the meet-and-confer process for demanding "*all* communications regarding the subpoenas" is their assertion that "Plaintiffs have already begun producing these materials to Google." May 17, 2021 Ltr. from A. Cohen to F. Rubinstein. But that is no justification at all, as Google neither asked Plaintiffs to produce "all communications" with subpoena recipients irrespective of their subject matter nor expected that Plaintiffs would do so based on their statement that they would produce "communications with subpoena recipients regarding the legal claims against Google in this litigation." Even if Plaintiffs determined it is less burdensome for them to turn over every communication with subpoena recipients without filtering for responsiveness, that is not the case for Google, which should not be forced to produce irrelevant communications between its outside counsel and subpoena recipients. *See English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 16–17 (D.D.C. 2017) (describing the fundamental axiom that "the moving party … bears the burden of proving the relevance of the information whose production she seeks to compel").

### C.   Plaintiffs Should Be Required to Identify the Current or Former Google Employees They Seek to Depose First, and Their Intended Time Frame for Beginning Those Depositions

In light of the DOJ Plaintiffs' statement at the last status conference that they now intend to ask for depositions of Google document custodians in August, Google requested that Plaintiffs identify now those current or former Google employees that Plaintiffs expect will be in their first wave of deposition notices, so that Google can try to prioritize production of their documents and begin discussing scheduling for such depositions.  Plaintiffs' initial response was to resist even the proposal that the Google custodians first deposed be among the first 76 agreed document custodians (as opposed to the two later rounds of 20 additional custodians, additions which brought the total number of document custodians to 116).  May 11, 2021 Email from A. Cohen to C. Connor (writing that "the Court did not limit Plaintiffs' ability to request prioritization to the first 76 custodians," while asserting that Plaintiffs were "reserv[ing] their right to request prioritization of any of the 116 agreed upon custodians").  Plaintiffs further declined to identify *any* witness for deposition.  When Google invited Plaintiffs to reconsider their position, Plaintiffs again declined to identify any witness, and instead proposed that Google prioritize the completion of all documents for every one of the first 76 custodians.

Plaintiffs' insistence on postponing the identification of those Google witnesses who they seek to depose first introduces needless delay and threatens to exacerbate the inevitable scheduling difficulties that accompany August depositions.  Plaintiffs' position is that they "will review any prioritized custodian productions and make deposition determinations based on, and only after, such review."  May 20, 2021 Letter from K. Dintzer to J. Schmidtlein.  There is no good reason Plaintiffs cannot identify these witnesses now.  Plaintiffs already have in their possession nearly 3 million documents, and more than sufficient information to enable them to identify those custodians they wish to depose first.  Google has been producing documents

collected from the original 76 custodians for more than two months[16] and, in many instances, Plaintiffs have had access to large volumes of their documents since last year given that many of the 76 priority custodians were also among the CID custodians.  In addition, Google has committed (and remains on track) to have substantially completed production of the responsive, non-privileged documents collected from running the March 18 terms for those 76 custodians by the end of this month.  Further, in Google's May 7 and May 19 correspondence to Plaintiffs, Google offered that if Plaintiffs promptly identify which of first 76 custodians they propose to depose first, Google will make every reasonable effort to expedite the remainder of the production of documents collected from the additional search terms that were later agreed to for those custodians.  As stated above, Plaintiffs declined that invitation.[17]

For these reasons, Google requests the Court's assistance in requiring Plaintiffs to identify now the Google witnesses they plan to notice for deposition in August and/or September so that the parties can begin discussing scheduling of such depositions.

## V.      Plaintiff States' Position Statement

Plaintiff States continue to have discussions with a major third party regarding compliance with their subpoenas and significant disagreements remain. While Plaintiff States are working to resolve those disagreements, they may need to seek the court's assistance in the near future and wanted to alert the Court to that possibility.

---

[16] Google produced 265,000 documents in March, 397,000 documents in April, and another 118,000 on May 13, all from the files of the first 76 custodians.

[17] Plaintiffs have also requested whether Google has metrics regarding the number of unreviewed documents by custodian.  While Google does not have that information readily available, Google has advised Plaintiffs that if they identify who they wish to depose first, Google can focus its resources on expediting production accordingly.

Dated: May 24, 2021

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  /s/ *John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
725 12th Street, NW
Washington, DC 20005
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K St, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*

By: */s/ Kenneth M. Dintzer*
Kenneth M. Dintzer
Jesús M. Alvarado-Rivera
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*

By: _____*/s/ Jonathan R. Carter*_____
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

By: _____*/s/ Adam Miller*_____
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By: _____*/s/ Lee Istrail*_____
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:_____/s/Daniel Walsh_____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:_____/s/ Scott L. Barnhart_____
Theodore Edward Rokita, Attorney General Scott
L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: ___/s/ Philip R. Heleringer_____
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: 502-696-5647
philip.heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

25

By:____/s/ Stacie L. Deblieux_____
Jeff Landry, Attorney General
Stacie L. Deblieux, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
Deblieuxs@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:____/s/ Wisam E. Naoum_____
Dana Nessel, Attorney General
Wisam E. Naoum, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
NaoumW1@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:____/s/ Kimberley G. Biagioli_____
Kimberley G. Biagioli
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Kimberley.Biagioli@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:____/s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:____/s/ Mark Mattioli_____
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer

Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By:____*/s/ Rebecca M. Hartner*_____
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:____*/s/ Bret Fulkerson*_____
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:____*/s/ Gwendolyn J. Lindsay Cooley*____
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By:   */s/ Jonathan B. Sallet*

Jonathan B. Sallet, Special Assistant
Attorney General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General
(D.C. Bar No. 1022365 *inactive*)
Diane R. Hazel, First Assistant Attorney
General (D.C. Bar No. 1011531 *inactive*)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff Colorado*

Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*

Brunn W. (Beau) Roysden III, Solicitor
General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney
General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff Arizona*

Max Merrick Miller
Attorney General's Office for the State of Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*

Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*

Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*

J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*

Jeff Pickett
Senior Assistant Attorney General
jeff.pickett@alaska.gov
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100

*Counsel for Plaintiff Alaska*

Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*

Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection Division
Benjamin Bernard Paholke, Assistant Attorney General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*

Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*

Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Erin L. Shencopp
Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
eshencopp@atg.state.il.us
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff Illinois*

Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202

410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*

Matthew B. Frank, Assistant Attorney
General Antitrust Division
William T. Matlack, Assistant Attorney
General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*

Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*

Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio,
Antitrust Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*

35

Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*

Yvette K. Lafrentz
Office of The Attorney General of
South Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of
Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West
Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Plaintiff Wyoming*