**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

|  |  |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**JOINT STATUS REPORT**

In accordance with the Court's Minute Order dated June 29, 2021, the parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report summarizing the state of discovery and identifying any issues between the parties, and the parties' respective positions, that will be raised at the status hearing scheduled for July 30, 2021.[1]

---

[1] In accordance with the Court's Minute Order dated July 12, 2021, Google will submit under separate cover a discovery dispute between Google and a third party that is ripe for resolution at the hearing scheduled for July 30, 2021.

## I.      Case No. 1:20-cv-03010

### A.      Google's Discovery of Plaintiffs

A summary of Google's First Set of Requests for Production and prior document productions made by Plaintiffs are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 26 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), and June 24 (ECF No. 149). On July 9, Plaintiffs produced to Google correspondence with subpoena recipients regarding the legal claims against Google in this litigation.

### B.      Plaintiffs' Discovery of Google

A summary of Plaintiffs' First and Second Sets of Requests for Production and the document productions made by Google prior to May 24 are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 26 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), and June 24 (ECF No. 149). Google produced additional documents in response to Plaintiffs' First and Second Requests for Production on June 30, July 19 and July 22. Together these productions included approximately 227,000 documents. Plaintiffs served their Third Set of Requests for Production on June 21, and Google served its responses and objections on July 21. On July 20, Google produced to Plaintiffs correspondence from outside counsel with third-party subpoena recipients.

Pursuant to the Court's instruction at the June 29 status conference, the parties have met and conferred and exchanged correspondence regarding the production, distribution, and use of Google employees' self-assessments and performance reviews. The parties have reached agreement on the production of these materials. The parties continue to negotiate the procedures to be followed after these documents are used in depositions. The parties anticipate reaching

resolution on this issue shortly. If the parties cannot reach resolution on this issue, the parties will raise any disputed issues with the Court.

### C.     The Parties' Discovery of Third-Parties

A summary of the third-party discovery requests issued by the parties prior to May 24 is set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 26 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), and June 24 (ECF No. 149). The parties have issued document subpoenas to approximately 82 third parties in total. The parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.

## II.     Case No. 1:20-cv-03715

### A.  Google's Discovery of Plaintiff States

A summary of Google's First Set of Requests for Production and the document productions made by Plaintiffs to date are set forth in the parties' earlier Joint Status Reports, including their reports dated March 26 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), and June 24 (ECF No. 149).

### B.  Plaintiff States' Discovery of Google

A summary of Plaintiff States' First Set of Requests for Production and the parties' meet and confer discussions are set forth in the parties' earlier Joint Status Reports, including their reports dated March 26 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), and June 24 (ECF No. 149). Google has continued to produce to Plaintiff States the documents and data produced to the U.S. Department of Justice and its co-plaintiffs in Case No. 1:20-cv-03010.

Since the last status conference on June 29, the parties have continued to meet and confer regarding Plaintiff States' data requests. On July 14, Plaintiff States and Google submitted a joint

status report updating the Court on their progress with respect to Plaintiff States' data requests. Although the parties have made progress on the data requests, some disputed issues remain. The parties have set forth in Sections III and IV their respective positions regarding these issues.

### C.  The Parties' Discovery of Third Parties

The parties have issued document subpoenas to approximately 82 third parties. All third parties that have received a subpoena from Plaintiff States have received a cross-subpoena from Google. Similarly, all third parties that have received a subpoena from Google have received a cross-subpoena from Plaintiff States. Both parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.

## III.    The Plaintiffs States' Position Statement

The Plaintiff States' Complaint alleges that "Google throttles consumer traffic to specialized vertical providers" as a means of maintaining its search-related monopolies. Compl. ¶ 57, No. 20-cv-03715, ECF No. 3 ("Compl."). Specialized vertical providers, such as familiar companies like Expedia or Yelp, do not provide general search services but they do pose a unique threat to Google. This is because these companies offer additional functionalities, such as the ability to buy an airline ticket or make a restaurant reservation, which might lead consumers to stop going to Google search on their way to completing a transaction. However, as a result of the anticompetitive conduct alleged in Plaintiff States' Complaint, "consumers do not as readily bypass general search by going directly to a specialized vertical provider's website in the way they could in a more competitive marketplace." Compl. ¶ 172. Providing such an alternative route is one way in which specialized vertical providers "could become more valuable partners for general search engines, which could strengthen such Google competitors and weaken barriers to expansion or entry in search-related markets." Compl. ¶ 38. The emphasis on the specialized

vertical providers is one way that the Plaintiff States' Complaint, as this Court recognized, "builds on and expands the theories of liability from those" contained within the complaint filed by the Department of Justice. Tr. of Dec. 18, 2020 Status Conference at 12:13-4.

Thus, the journeys that consumers take—from the entry of keywords into Google search to the moment they complete their transactions (or decide not to complete one)—are critical to the Plaintiff States' case. For example, the pending data that has been requested would allow Plaintiff States to determine how users journey from Google search to other Google owned and operated properties and/or to other third-party websites. Understanding what users (1) search for; (2) see in response to those searches (*e.g.*, advertisements and organic links); (3) click on; and (4) subsequently search for, is critical to Plaintiff States' case. These data are needed to analyze the effects of Google's discriminatory conduct against specialized vertical providers and to define the distinct market alleged by Plaintiff States. Google understands this need because Google itself analyzes such journeys as part of its ordinary commercial activities, and Google's own economists will likely review such data to challenge the Plaintiff States' contentions.

Despite Google's enormous resources[2] and its role as a company designed to "organize the world's information," *see* https://blog.google/products/search/information-sources-google-search/, Google has repeatedly failed to meet its own commitments to provide Plaintiff States with the data they need to move forward.

Importantly, and as Google has recognized, *see* July 14, 2021 Joint Status Report, ECF No. 158, the current process is in part a preliminary one, designed to provide the Plaintiff States

---

[2] On the morning of July 27, Google's market cap stood at $1.79 trillion, *see* https://www.bing.com/search?q=google+market+cap&cvid=338cabe1f87a4921ad62d60eb6dfc00f&aqs=edge.0.69i59j0l6.2840j0j4&FORM=ANAB01&PC=U531.

with an adequate enough understanding of Google's data resources to conduct the kind of analyses of users' journeys that Google itself conducts.

And time is running out. Plaintiff States served the pending preliminary data requests as part of its First Requests for Production ("First RFPs") in February, and the parties have held at least twelve detailed meet and confers since April 14. Yet as of today, Google has failed to fully shoulder its discovery obligations.[3] And that poses a long-term threat. Expert reports are due in April 2022, which is less than nine months away. Between now and then, (1) Google needs to finish providing the preliminary data and related documents, (2) Plaintiff States will submit their full-fledged data requests, (3) Google will need to produce the data, and then (4) the economists will need to complete their analyses and prepare their export reports.

This is already a tall order but one that can be accomplished if the Court directs Google to complete its preliminary production of data and related documents by August 27 (as detailed more specifically below) and plan now to have the resources available to speedily process the full-fledged requests, which the Plaintiff States hope to serve by the end of September, assuming Google completes its preliminary production by August 27.

The Plaintiff States know of no objective reason that Google cannot move quickly if it wishes to do so. For Plaintiff States to formulate full-fledged data requests, Google must stop delaying and establish deadlines that it will actually meet in order to produce the following data and related documents without undue further delay.

Plaintiff States detail below the leading examples of Google's failures.

---

[3] As part of its efforts to nail down its understanding of Google's data, the Plaintiff have noticed a 30(b)(6) deposition for September 14 to understand, inter alia, what data sets Google uses to analyze user journeys.

A.      **Google's has unreasonably delayed in producing a meaningful sessions data sample.**

First, and most importantly, Google has resisted producing a meaningful sample of its sessions data for several months. Sessions data include the sequence of searches that users make. For example, this data can determine if a set of users searched for "hotels in Denver," clicked on Google's Hotel Unit, then later searched for "Hotels in Denver Expedia," and finally reached an online travel agency by clicking through on a particular type of advertisement or organic link. All of this is relevant to Plaintiff States' claims that Google has raised costs to specialized vertical providers.[4]

On June 2, after the sessions data sample had been discussed on several meet and confers,[5] Plaintiff States proposed a methodology that Google could use to generate the sessions data sample. Several weeks later, on June 23, Google asserted that it needed two to three weeks to conduct a manual review to assess whether Plaintiff States' proposed sampling methodology would adequately protect user privacy, in its view.[6] Google also noted that it would determine by mid-July whether it needs to collect sessions data manually (which would cause further delay), as opposed to through an automated process. Email from F. Rubinstein to J. Conrad, June 23, 2021.

---

[4] Both the Plaintiff States and Google are working carefully to ensure that no individual user will ever be able to be identified.

[5] Prior to June 2, the sessions data sample was discussed during meet and confers on April 14, May 11, and May 21.

[6] Plaintiff States do not concede this manual review process was necessary, particularly since Google failed to respond with adequate specificity to Plaintiff States' request for a description of how the process was conducted.

However, Google did not complete its manual review within two to three weeks, as promised; it only agreed to use Plaintiff States' proposed sampling methodology yesterday, July 26. Moreover, Google did not determine by mid-July whether it needs to collect sessions data manually, as promised; as of today, July 27, Google is still investigating the timing for production. There is no deadline in place.

> **B.      Google has failed to conduct a reasonable search for data dictionaries, which are both useful for understanding sample sessions data (once produced) and will inform Plaintiff States' full-fledged data request.**

Plaintiff States have also requested that Google produce data dictionaries for its sessions data. Data dictionaries serve as documentation of the organization and structure of data sets, which include the size, definition of variables, and general description of the data sets. Such documents are critical for our economic experts to understand the data Google maintains in the ordinary course of business, both to inform Plaintiff States' full-fledged data request and also as a matter of fairness—Google's own economic experts will no doubt be thoroughly informed about Google's data.

After Google failed to produce any documents that could reasonably substitute for data dictionaries, Plaintiff States identified and shared with Google selected data dictionaries that Google produced during the Federal Trade Commission's investigation. *See* Letter from J. Conrad to F. Rubinstein at 2, June 13, 2021. Because Google does in fact maintain data dictionaries in the ordinary course of business (contrary to its prior representations), Plaintiff States reasserted their request for responsive documents. Although Google produced five documents (in total) in response to Plaintiff States' request for updated versions of the data dictionaries produced to the FTC, it has not responded to a request that it conduct a reasonable search for other responsive documents. As a result, Plaintiff States have been left without documents describing Google's sessions data for several months.

### C.     Google has unreasonably delayed in producing launch reports, which are needed before Plaintiff States can serve certain full-fledged data requests.

Google routinely prepares launch reports that describe the changes it makes to its search engine results page and related experiments it conducts, for example, when it tries out a new feature. These reports are critically important because Plaintiff States plan to use the reports to identify important Google changes that their expert economists will analyze, which will inform certain full-fledged data requests they intend to make. On July 9, after discussing launch reports during five meet and confers,[7] Google stated that it would try to produce most launch reports by the end of July. Letter from F. Rubinstein to J. Conrad at 2, July 9, 2021. Yet despite this commitment, Google informed Plaintiff States on July 22 that the production of launch reports has been delayed and most reports will not be produced until mid-August or the end of August. These types of delays have been indicative of this process.

### D.     Google has unreasonably delayed in producing aggregated search data.

Separately, Plaintiff States' First RFPs served on February 24 contain several requests (Request Nos. 36-38) for more aggregated search data. These RFPs seek specific metrics related to users' journeys on Google search (*e.g.*, queries, clicks on organic links, ads, and SERP features) for different types of queries, including queries related to Google's verticals and specific brands, such as specialized vertical providers—topics central to Plaintiff States' case theories. On June 8, after discussing these data requests during four meet and confers,[8] Google

---

[7] Prior to July 9, launch reports were discussed during meet and confers on June 10, June 14, June 17, June 22, and June 28.

[8] Prior to June 8, Request No. 36 was discussed during meet and confers on April 14, May 11, May 21, and June 3, and Request Nos. 37 and 38 were discussed during meet and confers on April 14, May 5, May 11, and May 21.

informed us that it anticipated completing collection of the data by mid-July with delivery of hard drives to follow. Letter from F. Rubinstein to J. Conrad at 2, June 8, 2021.

Google, however, failed to meet its promised production schedule. On July 21, Google informed Plaintiff States that it did not expect to produce data responsive to Request Nos. 37 and 38 until the middle of August. Letter from F. Rubinstein to J. Conrad at 1, July 21, 2021. For Request No. 36, Google stated during the July 22 meet and confer that it will likely produce much of the requested data by the end of July or early August, but not variables relating to Google's verticals. And Google could not provide a date by which it would produce these variables, which are critically important to Plaintiff States' case. The reason for this delay is obvious: Google admitted on July 12 that it had not yet even identified data sources that may be needed to respond to Plaintiff States' requests regarding Google's verticals. As of today, Google has not committed to produce these data at any time certain.

* * *

To ensure that Plaintiff States begin receiving data promptly and avoid any other delays, Plaintiff States request the Court order that Google (1) provide production schedules for the outstanding data requests and related documents by August 2, (2) begin producing responsive data and documents by no later than August 13, and (3) complete production of these materials by no later than August 27.

## IV.   Google's Position Statement

The parties have not reached an impasse on any of Plaintiffs' requests and Google has agreed to fulfill nearly all of Plaintiffs' requests by the end of August.  Contrary to the Colorado Plaintiffs' ("Plaintiffs") submission, Google is not delaying production or withholding data responsive to Plaintiffs' questions that it has at its fingertips.  The countless requests for data and information that Plaintiffs make on a weekly basis are complex and Google has worked tirelessly

to obtain (and has produced much) responsive information.  While Plaintiffs now take issue with the pace of some of Google's responses, the fact is that every one of the data requests Plaintiffs now raise has required Google to create a bespoke technical solution to answer.  For example, a number of the requests required Google's engineers to write special scripts to compile the requested data.

Over the past three months, Google has produced reams of documents and massive amounts of data, all while entertaining scores of follow-on informal requests from Plaintiffs.  Google has engaged in near-weekly (sometimes bi-weekly), lengthy discussions with Plaintiffs, during which Google has attempted to answer every question posed.  Google has also provided dozens of pages of written correspondence on these topics, again in an effort to answer Plaintiffs' many inquiries.  Responding to these types of requests, and the inevitable follow up-questions, takes considerable time and requires information from multiple sources.

Plaintiffs argue that Google has delayed producing documents or data responsive to (i) Plaintiffs' Request No. 15 (launch reports); (ii) Request 33 (sessions logs and data dictionaries); (iii) Request 36 (search query and ad data); and (iv) Requests 37-38 (search and ads data for queries for 74 "Selected Brands").  Google has been consistently engaged with Plaintiffs to agree on the scope and parameters of Google's productions in response to these requests and has kept Plaintiffs apprised of its progress through the parties' many calls and lengthy written correspondence.  Google has not "delayed"—rather, Google has worked diligently to create custom technical solutions to respond to each request, and building those solutions has taken time.  Google has already begun producing documents and data responsive to these requests, and for the requests where the parties have agreed on scope, anticipates substantially completing its production in August.

Google provides more detailed responses to each of Plaintiffs' issues below.

### A.   Google's Response to RFP 15 (Search and Search Ads Launch Reports)

Plaintiffs' Request 15 relates to Google's Search and Search Ads "launch reports." Each Search and Search Ads launch report describes a specific product design change and includes information to be considered in deciding whether to launch the change.  Google has agreed to produce to Plaintiffs *all* launch reports relating to search and search advertising going back to 2010. This effort requires Google to extract and review tens of thousands of documents.  Google made an initial production of launch reports on July 22, 2021, and Google anticipates completing a rolling production of the launch reports by end of August.

Plaintiffs are dissatisfied with the pace of Google's production, but Google has been working diligently to resolve technical issues associated with extracting, reviewing, and producing these reports.  Extracting the launch reports from Google's internal, custom-built database is not a simple matter. Google had to enlist engineering resources to build a bespoke technical solution to extract the reports en masse. Even after the tool was built, certain sets of launch reports caused errors and required additional trouble-shooting.  Google has kept Plaintiffs apprised of these issues, and with its collection and review now well underway, expects to complete production by the end of August.

### B.   Google's Response to RFP 33 (Sessions Logs Sampling Methodology; Data Dictionaries)

Plaintiffs' RFP 33 asks for all data in a "sessions data log" for three different days.   The "sessions logs" reflect data on individual user searches.  The logs are massive.  A single day of session logs is over ████████ per day worldwide (about ████████████████ ████████ ) and the U.S. portion is ████████ .  Sessions logs are not maintained in a human-readable format - ████████████████ .  Even after being translated into a technically human-

readable format, the logs are complex and difficult to parse.

Google objected to Plaintiffs' request on both burden and privacy grounds (due to the sensitive nature of user query data).  In the parties' *first* meet and confer in April regarding data requests, Google proposed that Plaintiffs articulate the specific information they were seeking, which would allow Google to collect and produce only that specific information from the sessions logs—rather than producing the voluminous sessions logs themselves.  Plaintiffs declined, insisting that they did not know enough information to be able to specify the information they were seeking in their request.  Plaintiffs have since requested data dictionaries, data samples, and have asked highly technical follow-on questions over the past months.  Google has attempted to answer every single request while at the same time responding to Plaintiffs' data RFPs 36-38 (see the next section) that have required writing new computer scripts and generating information that it does not maintain in the ordinary course of business.

In short, Plaintiffs made the requests for sessions logs data without understanding what the sessions logs are.  Plaintiffs' bottom-up approach was bound to result in an iterative process.  To date, Plaintiffs still have not identified the specific information from the sessions logs they seek.  Instead, they are trying to digest and analyze the entire beach by asking Google to describe every grain of sand on it, and then asking questions about those answers.  By way of example, Plaintiffs have followed up on their request for sample sessions logs with iterations of questions:

- After receiving a listing of the over ████ fields in the sessions logs, Plaintiffs asked Google to identify every one of the fields ███████████.  After consulting with multiple people on the logs teams, Google explained that it could not answer that question with precision given the ████ fields, and the most reliable information in

response to Plaintiffs' questions is the sample itself (which Google already provided).[9]

- Plaintiffs asked Google to provide the "proto" files associated with the sample sessions logs.[10]  Google provided over ███████ of these files.  Google also answered numerous other questions about the structure and contents of the logs.

With respect to the specific purported delays Plaintiffs identified in their notice of disputed issues—regarding data dictionaries and sessions logs sampling—Google has produced the documents it could locate and has agreed to proceed with the production of a 5% sample of sessions logs.  As detailed below, Google has already responded to Plaintiffs' iterative requests with either the information requested or an agreement to produce it—again, there is no dispute requiring Court intervention.

### 1.   Data Dictionaries

Plaintiffs asked for a "Data Dictionary" explaining all the fields in a sessions log.  Google explained that it did not have a comprehensive data dictionary due to the ███████████████ ████████████████████ in the sessions logs, nor did it have centrally stored documents defining the sessions log fields.  On June 13, 2021, Plaintiffs identified a few documents that discussed sessions logs (documents that Google had produced to Plaintiffs 16 months earlier) and asked Google to provide updated or similar versions of those previously produced documents.  In response to this request, Google investigated and confirmed that no updated versions existed.  Then, on June 21, Plaintiffs asked Google to search for documents that might provide

---

[9] ███████████████████████ can add fields to be logged in sessions logs at any time; those fields are not removed even if the field is no longer used or the data are not kept.

[10] Google stores most of its data, including logs, in a compact, fast format called protocol buffers (protobufs for short). Protobufs are structured as messages which contain fields, which can be numeric, text, or another message. Fields can also have metadata attached, such as data policy annotations. Protobufs are defined by "proto files", which can be used to generate interfaces for programs to access protobuf data.

an explanation of the variables in the sessions logs or live experiments.  Google conducted a

reasonable search and produced additional responsive documents within three weeks of this

request.  Plaintiffs then asked Google to produce additional documents that were linked in the

documents Google provided, and Google produced those within one week.  Plaintiffs also asked

for a list of all the "fields" in the sessions logs.  Google generated a list of the approximately

███████ fields that could be in a sessions log and provided it.   As Google has responded to every

one of Plaintiffs' follow up requests regarding "Data Dictionaries," Google does not understand

there to be a dispute.

### 2.      Sessions Logs Sampling

Plaintiffs asked for a "sample" of sessions logs and Google agreed to provide 270 sample

sessions containing queries within the categories of search "verticals" Plaintiffs identified as

relevant to their claims.  Google also explained that it would need to manually review the sample

to address privacy concerns and exclude any sessions where an individual user could be

identified based on the searches in the session.  After enlisting an engineer to write a script to

download and process the 270 sessions, and after reviewing each, Google provided the sample

on June 18, 2021.  As expected, the sample sessions data have generated extensive additional

follow up questions that required Google to do more custom engineering work and research to

answer.

After Google began working on the 270-session sample, Plaintiffs then informed Google

that they "anticipated" that the sample would be "inadequate" (to assess what, Plaintiffs did not

say) and demanded that Google also provide a 5% sample of sessions logs from several

days.  That sample will likely mean producing millions of search sessions for each day

requested.  The parties then spent weeks discussing a methodology to redact or remove sessions

that could identify a specific user.  Since a 5% sample is too large to review manually, Google

had to design an experiment to test Plaintiffs' proposed methodology for privacy concerns.   That process is now complete, and Google has agreed to Plaintiffs' proposal.  Google is now assessing how long it will take to extract and process the data into a human-readable format on a much larger scale than the original 270-session sample.

C.      **Google's Response to RFP 36 (Search Sessions Logs Data)**

Request 36 is a voluminous and very complex data request that requires Google to write custom code to collect information from the relevant data sources.  Plaintiffs have also continued to add to this request.  In connection with RFP 36, Plaintiffs have raised concerns regarding the identification and collection/production of data.  We address these issues below.

Plaintiffs' Request 36 added 52 fields to a data request that DOJ had served two months earlier.  Whereas DOJ's request was based on a data response that Google had provided during DOJ's investigation, Plaintiffs' 52 additional fields were entirely new; thus, Google did not have existing code written to respond to it and had to spend time manually reviewing the log data in order to see which variables could be provided in response to RFP 36 (and 37-38).  On June 2, 2021, Plaintiffs added another 16 fields to this request.  Google agreed to provide that information as well.  Google is currently burning a hard drive with the ███ terabytes of data for its initial response to this request.

In response to recent discussions with Plaintiffs, Google has worked to identify additional data sources outside of the sessions logs on specific "search verticals" such as flights, hotels, and shopping, and preserve any such data that is responsive to RFP 36. These verticals ████ ████████████████████████, and have necessitated time-consuming diligence ███████████. To date, Google has not identified any information responsive to RFP 36 that is not in the sessions logs or that is not otherwise being maintained in the ordinary course of business for the period covered by RFP 36.  To the extent that Google's investigation identifies

16

additional data responsive to RFP 36, Google anticipates supplementing its original data production.

**D.      Google's Response to RFP 37 and 38**

Plaintiffs' Request 37 asked for 68 different categories of information whenever 74 different "Selected Brands" appear in the search query (37) or on the search page (38). Request 38 asked Google to identify "all searches" that met any of four criteria for all 74 Selected Brands, asked Google to "us[e] reasonable efforts to combine variants (e.g., stemmings, misspellings, singular or plural forms, etc.)" and asked Google to then produce all the data for Request 37, broken down by device type.  As with RFP 36, RFPs 37-38 have required Google to write new code to respond to these requests—Google does not have this information available in the form requested by Plaintiffs.  Google is currently engaged in drafting and quality checking the new code, and anticipates producing the responsive data by the middle of August.

Dated: July 27, 2021

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
725 12th Street, NW
Washington, DC 20005
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*

18

By: */s/ Kenneth M. Dintzer*
Kenneth M. Dintzer
Jesús M. Alvarado-Rivera
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*

By: */s/ Jonathan R. Carter*
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

By: */s/ Adam Miller*
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By: */s/ Lee Istrail*
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:_____/s/Daniel Walsh_____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:_____/s/ Scott L. Barnhart_____
Theodore Edward Rokita, Attorney General Scott
L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: ____/s/ Philip R. Heleringer_____
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: 502-696-5647
philip.heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

20

By:＿＿＿＿*/s/ Stacie L. Deblieux*＿＿＿＿＿＿＿＿

Jeff Landry, Attorney General
Stacie L. Deblieux, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
Deblieuxs@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:＿＿＿＿*/s/ Wisam E. Naoum*＿＿＿＿＿＿＿＿

Dana Nessel, Attorney General
Wisam E. Naoum, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
NaoumW1@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:＿＿＿＿*/s/ Kimberley G. Biagioli*＿＿＿＿＿

Kimberley G. Biagioli
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Kimberley.Biagioli@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:＿＿＿＿*/s/ Hart Martin*＿＿＿＿＿＿＿＿＿

Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By: ___ */s/ Mark Mattioli*
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer
Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By: ___ */s/ Rebecca M. Hartner* _____
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By: ___ */s/ Bret Fulkerson* _____
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By: ___ */s/ Gwendolyn J. Lindsay Cooley* ____
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By:    */s/ Jonathan B. Sallet*

Jonathan B. Sallet, Special Assistant
Attorney General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General
(D.C. Bar No. 1022365 *inactive*)
Diane R. Hazel, First Assistant Attorney
General (D.C. Bar No. 1011531 *inactive*)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff Colorado*

Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*

Brunn W. (Beau) Roysden III, Solicitor
General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney
General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff Arizona*

23

Max Merrick Miller
Attorney General's Office for the State of
Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*

Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*

Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*

J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*

Jeff Pickett
Senior Assistant Attorney General
jeff.pickett@alaska.gov
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100

*Counsel for Plaintiff Alaska*

Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*

Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection Division
Benjamin Bernard Paholke, Assistant Attorney General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*

Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*

Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Erin L. Shencopp
Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
eshencopp@atg.state.il.us
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff Illinois*

Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202

410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*

Matthew B. Frank, Assistant Attorney
General Antitrust Division
William T. Matlack, Assistant Attorney
General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*

Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*

Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio,
Antitrust Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*

Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*

Yvette K. Lafrentz
Office of The Attorney General of
South Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of
Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West
Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Plaintiff Wyoming*