## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America, *et al.*, | | |
| | Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | | HON. AMIT P. MEHTA |
| Google LLC, | | |
| | Defendant. | |

| | | |
|---|---|---|
| State of Colorado, *et al.*, | | |
| | Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | | HON. AMIT P. MEHTA |
| Google LLC, | | |
| | Defendant. | |

**DEFENDANT GOOGLE LLC'S STATEMENT REGARDING
DISPUTES INVOLVING COMPLIANCE WITH
A SUBPOENA TO MICROSOFT**

Google and Microsoft have been negotiating for several months over the latter's

compliance with a document subpoena Google served on it.  The companies are currently at an

impasse on one threshold issue: the document custodians whose files Microsoft will search for

responsive documents.  In particular, there are nineteen Microsoft employees (identified and

described in Appendix A) who held important positions relating to activities at the core of this

case but whose files Microsoft refuses to commit to search at this time.  In accordance with the

July 12, 2021 Minute Order, Google alerts the Court that it intends to raise this dispute at the

July 30, 2021 hearing.

      **I.**        **Background**

      No third party is more central to this litigation than Microsoft.  The DOJ and Colorado

Complaints refer to it or its products dozens of times.  Plaintiffs identify Microsoft's Bing search

engine as Google's most significant competitor in online search, and Microsoft's other products,

including its Internet Explorer and Edge browsers, as competing vehicles for distribution of Bing

because Microsoft sets Bing as the default search engine on its browsers.  Microsoft also supplies

search results in response to customer queries on Yahoo! and DuckDuckGo, who Plaintiffs

contend are Google's only other search engine competitors.  *See, e.g.*, DOJ Compl. ¶¶ 23, 92.

      Plaintiffs allege that Microsoft's ability to compete was stifled by Google, and Plaintiffs'

lawsuits are premised on the notion that Microsoft would be a more significant competitor absent

Google's alleged unlawful conduct.  How Microsoft has competed historically in search—and

the reasons for its successes and failures—are therefore indisputably central to Plaintiffs' claims.

Google does not by any stretch seek as custodians every executive who worked on Microsoft's

search and search advertising products for the nearly two-decade period for which Plaintiffs have

sought discovery from Google.  Microsoft is one of the world's largest companies, and as its

counsel put it, there were "hundreds, if not thousands, who have [] worked at Microsoft in search

or search advertising sometime from 2000-present."  July 25, 2021 Ltr. from C. Simons

(Microsoft's Counsel) at 3.  What Google seeks is a targeted set of nineteen additional custodians

whose documents are highly likely to yield discoverable material.

      In responding to Plaintiffs' pre-litigation Civil Investigative Demands and/or subpoenas

(collectively, the "CIDs"), Microsoft was more than willing to help Plaintiffs: Microsoft

produced approximately 400,000 documents from 15 selected document custodians, and based on limited search terms and a narrow time period (generally, March 2018 – March 2020) agreed to by Plaintiffs, not Google.  In connection with this selective production, ███████████ ████████████████████████████████████████████████ ████████████████████████████████.

Now faced with a litigation subpoena from Google, Microsoft has taken a decidedly different approach.  After gaining access to the documents produced subject to the limitations described above, Google served its own subpoena on Microsoft on April 13, expanding the field of inquiry to address Plaintiffs' broad allegations, as well as discovery pertinent to Google's defenses, including older documents that will shed light on whether Microsoft was actually restrained from competing with Google, or whether it simply failed to compete successfully on the merits.

It has been three and a half months since Google served a subpoena on Microsoft, and it is now apparent that Microsoft does not intend to perform a reasonable search for documents responsive to Google's requests.  As of the last previously scheduled status conference, Microsoft had not even made a complete proposal as to which custodians and search terms it would search; to avoid motion practice, Microsoft agreed (on the eve of submissions for the hearing previously scheduled to address third-party subpoena compliance) to make such a proposal by July 21.

That proposal was to address the three key areas of an ESI search: (i) the date range for the search, (ii) the search terms to be used, and (iii) the custodians against whose documents the terms will be run.  As to date range, Microsoft initially objected to searching for documents covering the earlier time period when Plaintiffs allege that Microsoft fell behind Google in

search, but eventually acceded to searching for documents going back to the early 2000s.  As to

search terms, Microsoft's July 21 proposal rewrote the vast majority of search strings that

Google had proposed, without disclosing the impact of the revisions on the volumes of

documents that would be collected.  At Google's request, on July 25, Microsoft finally produced

*that* information, which reflects that Microsoft's revisions would drastically reduce the volume

of documents to be searched, in many cases by more than 90%; the parties continue to confer and

negotiate over search strings, and Google aims to bring those issues to the Court by the end of

August, if need be.  Finally, as to custodians, Microsoft has agreed to only eight of the

custodians that Google has sought to add to Microsoft's prior document collection, preferring to

otherwise limit its search to nineteen custodians (for a total of twenty-seven) that it negotiated

with Plaintiffs in pre-complaint discovery or whom Microsoft apparently believes will help

Plaintiffs tell Microsoft's side of the story.[1]

## I.      The Nineteen Custodians At Issue Are Highly Likely To Possess Relevant, Non-Cumulative Documents

Google's discovery requests, among other things, seek to shed light on the reasons why

Microsoft allegedly fell further behind Google in search as consumers began running more of

their search queries on mobile devices rather than desktops, a shift Plaintiffs describe as having

begun in 2011.  Colo. Compl. ¶ 44.  Plaintiffs allege that Google's purportedly exclusionary

conduct is responsible for Microsoft's poor performance, despite that: (1) like Google, Microsoft

---

[1] Plaintiffs served Microsoft with subpoenas beginning in January 2021, seeking (for the first time) Microsoft documents going back to 2010.  We understand that no formal agreement has been reached on what searches Microsoft will run to comply with Plaintiffs' subpoenas, but that Microsoft has been engaged in informal back-and-forth with Plaintiffs to produce certain additional documents that Plaintiffs seek.  Contrary to the burdensome demands by Plaintiffs to Google regarding custodians, search terms and date ranges, Plaintiffs apparently have taken a very different approach with Microsoft.

"maintain[s] a comprehensive search index" of its own, DOJ Compl. ¶ 94; (2) Microsoft sets its

search engine as the default on Windows machines it ships; (3) Microsoft reached search

███████████████████ partnerships of its own with companies such as Amazon, Verizon

and Yahoo!, *e.g.*, *id.* ¶¶ 23, 103, 130; and (4) Microsoft distributed Bing on its own "Windows

Phone."

Microsoft has not disputed the *relevance* of the nineteen custodians at issue to these

allegations.  It could hardly do so.  These executives cover issues at the core of the case: the

development and distribution of Microsoft's various search engines, Microsoft's search

advertising business, and Microsoft's effort to market devices that would give it yet more search

access points beyond the ever-present Windows desktop.  Each custodian, along with the

information about his or her job responsibilities that Google has been able to glean from the

public record or Microsoft's productions, is identified in Appendix A hereto.  While the

appendix is necessarily constrained by the fact that Microsoft previously limited its document

productions to the period *after* 2017, and by the fact that Microsoft has likewise been unable to

locate organization charts for the time period 2013-2018, the appendix represents Google's

counsel's best effort to identify a targeted set of additional custodians necessary to address the

relevant issues.

Microsoft's refusal to agree to search these custodians' files is perplexing.  Several

examples are illustrative.  First is Harry Shum, formerly the executive vice president of

Microsoft's Artificial Intelligence (AI) and Research group.  Dr. Shum was "responsible for

Bing search product development from 2007 to 2013," a period that includes Bing's public

release.[2]  In 2011, it was Dr. Shum who defended Microsoft's apparent effort to copy Google's

---

[2] *See* https://www.microsoft.com/en-us/research/people/hshum/ (last visited July 27, 2021).

search results.[3]  The relevance of his documents is beyond serious question; ██████████████

███████████████████████████.  To take another example, Stephen Sirich,

who has been at Microsoft since 1999,[4] publicly stated in 2019 that Microsoft's Bing "[has]

demonstrated that there can be a competitive player in the industry that is a viable alternative to

the incumbent for consumers, publishers and advertisers," which "has spurred innovation and

helped to keep pricing in check."[5]  A third such example is Derrick Connell, a Microsoft Vice

President who "[led] product strategy and establish[ed] ways for Bing and Cortana"—

Microsoft's digital assistant product, which competes with Amazon's Alexa and Google

Assistant—"to partner with companies such as Facebook, Amazon, Apple, Yahoo."[6]  As Mr.

Connell described it, Microsoft's "products are deeply integrated with all of these partners, and

between us Bing has 30% consumer market share for Web Search in the United States;"[7]

(Plaintiffs, in contrast, describe Bing as having "about seven percent" of an alleged "general

search services market."  DOJ Compl. ¶ 92; Colo. Compl. ¶ 90).

---

[3] *See* Harry Shum, *Thoughts on Search Quality*, MICROSOFT BING BLOGS (Feb. 1, 2011),
*available at* https://blogs.bing.com/search/2011/02/01/thoughts-on-search-quality.

[4] Steve Sirich, LINKEDIN (last visited July 27, 2021), *available at*
https://www.linkedin.com/in/steve-sirich/.

[5] George Nguyen, *Bing Turns 10: Why It's Been More Disruptive Than You Think*, SEARCH
ENGINE LAND (May 28, 2019), *available at* https://searchengineland.com/bing-turns-10-why-its-
been-more-disruptive-than-you-think-317510.

[6] *See* Derrick Connell, LINKEDIN (last visited July 27, 2021), *available at*
https://www.linkedin.com/in/derrickc/.

[7] *Id.*

**II.      Microsoft's Grounds for Refusing These Custodians Fail Scrutiny**

As noted above, Microsoft does not dispute the relevance or discoverability of the

documents of the nineteen custodians at issue.  Microsoft has argued instead that, because it has

agreed to collect documents from other persons, including in some instances the person to whom

the requested custodian reported, the requested custodian's documents would be cumulative.

There are no numbers behind this argument: Microsoft has not cited custodian-specific hit

counts, and so there is no way to discern whether, in fact, the requested custodians would be

purely cumulative.  There are, however, at least two indicia that these custodians are likely to

possess documents uniquely relevant to the case.

*First*, the manner in which Microsoft seeks to circumscribe its collection, in several

instances, to certain more senior executives, will necessarily conceal documents that may

contextualize or undermine the testimony that Plaintiffs (or Microsoft) would seek to elicit from

those executives about Microsoft's ability to compete with Google.  For example, Microsoft has

repeatedly relied on its willingness to collect documents from Jon Tinter, a Corporate Vice

President who has been at the company since 2007, and ████████████████████

████████████████████████████ a proposed (and eventually consummated) transaction

between Microsoft and Yahoo to join forces in search; ███████████████  therein bear on

allegations Plaintiffs have made in this case.  Obviously, production of the ████████████

████████ does not mitigate the need for Microsoft to produce the internal emails and

documents behind the submission; if anything, it heightens the need for a thorough search for

such documents.  For the same reasons, it heightens the need to produce documents from

employees behind or adjacent to the executive ██████████████████████████

████████, which employees may (or may not) have agreed with ██████████.  Microsoft

is required to produce what its personnel said about these subject matters internally—and the

7

first step is fashioning a list of custodians that will constitute a reasonable search for such documents.

*Second*, the majority of the custodians proposed by Microsoft are *current* employees of the company.  In contrast, among the nineteen custodians that Google raises on this motion, at least ten are former employees, who are important to understand Microsoft's repeated efforts over the years to rebrand and reinvent its search product.  Google simply seeks discovery commensurate with Plaintiffs' allegations, which reach back two decades.

We also expect Microsoft will argue that it is premature to commit to custodians, because that issue is inextricably intertwined with which search strings Microsoft will agree to run.  Google served its subpoena on April 13, and did not receive a complete set of proposed search strings from Microsoft to address Google's subpoena until within the last week.  It is Microsoft's own delays that have deprived it of the option to decide these search parameters simultaneously, and its preferred course would only drag these issues on yet further.  Consistent with the Court's directives, Google seeks to move the process forward expeditiously, and getting clarity on custodians now will remove one significant point of disagreement.

Finally, Microsoft has not identified any basis to suggest that the nineteen custodians at issue would pose an undue burden under these circumstances.  While Microsoft has estimated that its proposed searches of other custodians would yield 1.45 million documents, that figure is considerably overstated: it has not been deduplicated along any of three dimensions—between custodians, between search strings, or against the documents that Microsoft produced in the pre-litigation phase.  And this volume of documents is just a fraction of the documents that hit on the search terms run over the 120 plus custodians that Google searched.

Microsoft has repeatedly emphasized to Google the number (twenty-seven) of custodians that Microsoft has agreed to collect from.  Google recognizes that twenty-seven custodians is not *de minimis*, though in fact, in several instances Microsoft is actually offering to run only a handful of the requested searches across a custodian's files.  And Google is no stranger to the burdens of ESI collection: it has collected documents from more than 120 custodians in this case. The question, however, is whether Microsoft's search will sufficiently address the many and significant fact questions in which Microsoft plays a key role.  Over the relevant time period, it has had "hundreds, if not thousands" of personnel engaged in its search and search ads businesses that compete with Google, and so by any measure, even the addition of the nineteen custodians at issue will still leave scores of potentially relevant employees' files untouched. Having so obviously pressed for and cooperated in the preparation of the present Complaints to be filed against Google, Microsoft cannot credibly avoid significant discovery in these cases.

*       *       *

Although Google and Microsoft continue to meet and confer over other parameters of Microsoft's subpoena compliance obligation, the parties have reached impasse on the critical issue of document custodians.  For the reasons set forth herein, the Court should order Microsoft to include the nineteen custodians identified in Appendix A as part of its response to Google's subpoena.

Dated: July 27, 2021                    Respectfully submitted,

                                     WILLIAMS & CONNOLLY LLP

                                     By: */s/ John E. Schmidtlein*
                                     John E. Schmidtlein (D.C. Bar No. 441261)
                                     Benjamin M. Greenblum (D.C. Bar No. 979786)
                                     Colette T. Connor (D.C. Bar No. 991533)
                                     725 12th Street, NW
                                     Washington, DC 20005
                                     Tel: 202-434-5000
                                     jschmidtlein@wc.com
                                     bgreenblum@wc.com
                                     cconnor@wc.com

                                     WILSON SONSINI GOODRICH & ROSATI P.C.
                                     Susan A. Creighton (D.C. Bar No. 978486)
                                     Franklin M. Rubinstein (D.C. Bar No. 476674)
                                     1700 K St, NW
                                     Washington, DC 20006
                                     Tel: 202-973-8800
                                     screighton@wsgr.com
                                     frubinstein@wsgr.com

                                     ROPES & GRAY LLP
                                     Mark S. Popofsky (D.C. Bar No. 454213)
                                     2099 Pennsylvania Avenue, NW
                                     Washington, DC 20006
                                     Tel: 202-508-4624
                                     Mark.Popofsky@ropesgray.com

                                     *Counsel for Defendant Google LLC*

# APPENDIX A

### Appendix A: Descriptions of Proposed Additional Custodians

1.  **Harry Shum** worked for Microsoft for 23 years, including in roles "leading engineering for Bing."[1]  Dr. Shum was integrally involved in Microsoft's search products, including its development, distribution, quality, competition with Google, and, more recently, innovation and artificial intelligence (AI).  Then CEO of Microsoft, Steve Ballmer, reportedly "handpicked [Dr.] Shum to lead the then-struggling Bing search quality team in 2007," and he was subsequently recognized by Microsoft for his "transformative impact on Search Development at Bing."[2]  It was also Dr. Shum who drafted Microsoft's response when it was publicly disclosed that Bing had copied Google's search results and used them on Bing.[3] In public comments in 2013, Dr. Shum noted Google's increased popularity and use by consumers from 2005 to 2009 and attributed it to Google being "really good."[4]

2.  N███ P███ was Senior Director and is now a General Manager of Business Development.[5] Given his position, it is no surprise that he has discoverable information and that his documents will confirm as much.  In one recent exchange revealed by Microsoft's document production to date, ████████████████████████████████████████████████



3.  S███ R███████ is a Corporate Vice President at Microsoft, and is knowledgeable about Microsoft's recent mobile search distribution opportunities and the quality of its mobile platform.  She was a Principal Group Program Manager for the Windows Phone platform from 2011-2013, where Microsoft preloaded Bing on every Microsoft device and did not preload Google (or Chrome).[7]  Whereas Plaintiffs focus on Google's distribution of search on Android

---

[1] Harry Shum, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/harryshum/.

[2] Pradeep Viswanathan, *Bing's Harry Shum Bags The 2014 Outstanding Technical Leadership Award At Microsoft*, MS POWER USER (Mar. 16, 2014), *available at* https://mspoweruser.com/bings-harry-shum-bags-the-2014-outstanding-technical-leadership-award-at-microsoft/.

[3] Harry Shum, *Thoughts on Search Quality*, MICROSOFT BING BLOGS (Feb. 1, 2011), *available at* https://blogs.bing.com/search/2011/02/01/thoughts-on-search-quality.

[4] *View from the Top: Harry Shum, Microsoft*, YOUTUBE (uploaded Mar. 7, 2013), *available at* https://www.youtube.com/watch?v=3v3CnEOdXH4.

[5] MSFT-0000000006.

[6] MSFT-0000032562 (emphasis added).

[7] S███ R███████, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in████████

**Appendix A: Descriptions of Proposed Additional Custodians**

devices, their Complaints omit reference to this competing mobile operating system marketed by Microsoft that provided opportunities for distribution of competing search technologies. Ms. R███████ was also involved in the distribution of Microsoft Launcher, a mobile application available on Android that used Bing as its default search engine.[8]  She appears to have been attuned to the ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████[9]

4.   **Stephen Sirich** is a General Manager at Microsoft who "lead[s] the Microsoft Advertising marketing team."[10]  He recently stated in an interview that Bing "[has] demonstrated that there can be a competitive player in the industry that is a viable alternative to the incumbent for consumers, publishers and advertisers," which "has spurred innovation and helped to keep pricing in check."[11]

5.   **W████ T█** is a Vice President at Microsoft involved with Microsoft's Ad Platform. Microsoft's document production to date suggests that she ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████[12]

6.   **Mat Velloso** is a technical adviser to Microsoft's CEO,[13] and therefore possesses documents bearing on Microsoft's ability to attain greater usage of Bing.  As ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████[14]

---

[8] Mauro Huc, *How to Set Google on Microsoft Launcher as Default Search Engine on Android*, PUREINFOTECH (Mar. 12, 2018), *available at* https://pureinfotech.com/set-google-microsoft-launcher-default-search-android/ ("On Android, the Microsoft Launcher uses Bing as the default search engine when using the search box in the home screen . . . .").

[9] MSFT-0000272065.

[10] Steve Sirich, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/steve-sirich/.

[11] George Nguyen, *Bing Turns 10: Why It's Been More Disruptive Than You Think*, SEARCH ENGINE LAND (May 28, 2019), *available at* https://searchengineland.com/bing-turns-10-why-its-been-more-disruptive-than-you-think-317510.

[12] MSFT-0000560796.

[13] Mat Velloso, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/matvelloso/.

[14] MSFT-0000045727.

**Appendix A: Descriptions of Proposed Additional Custodians**

7. **Christopher Payne** was a Corporate Vice President at Microsoft from 2001-2007, who "led [the] company's efforts in web search" and was involved in the development of Microsoft's legacy search products, including Live Search.[15]  According to public reporting, Mr. Payne pressed his superiors, including Bill Gates, to invest more in search, and in particular, "show[ed] in painstaking detail how MSN was making a monumental mistake outsourcing its search function to third parties."[16]  He reportedly explained to his superiors **"**how Google was developing a great search engine, and how its minimalist design and consistently relevant results—better than those delivered by MSN's cluttered site—were attracting legions of Internet users."[17]  At the time of his departure, it was reported that "[u]nder Payne's leadership, Microsoft's search site has lost market share since the company launched its own homegrown search in early 2005, attempting to challenge Google."[18]

8. **Brian MacDonald** was a Corporate Vice President at Microsoft until 2020; he spent nearly five years as the Corporate Vice President for Bing beginning in 2007.[19]  According to an interview he gave in 2011, he was involved in creating the user interface for Bing, in which he explained that Bing sought to "reimagine" Google's "10 blue links" approach to search (*see, e.g.*, DOJ Compl. ¶ 30), and in particular, how Bing would change that "paradigm" as "more and more" searches were being done on mobile phones.[20]  Mr. MacDonald's documents will reflect the decisions that he and others made historically in competing with Google in these respects.

9. **Derrick Connell** spent decades at Microsoft, serving as Corporate Vice President for Bing from September 2011 to March 2020 and in several other roles before that.[21]  According to public reporting, he was deeply involved in building the Bing product, and he "and his team

---

[15] Christopher Payne, LINKEDIN (last visited July 27, 2011), *available at* www.linkedin.com/in/christopherpayne.

[16] Fred Vogelstein, *Search and Destroy:  Bill Gates is on a mission to build a Google killer. What got him so riled? The darling of search is moving into software—and that's Microsoft's turf*, FORTUNE MAGAZINE (May 2, 2005), *available at* https://money.cnn.com/magazines/fortune/fortune_archive/2005/05/02/8258478/index.htm.

[17] *Id.*

[18] Todd Bishop, *Microsoft's Top Search Executive Leaving Company*, SEATTLE PI (Mar. 6, 2007), *available at* https://www.seattlepi.com/business/article/Microsoft-s-top-search-executive-leaving-company-1230409.php.

[19] Brian Macdonald, LINKEDIN (last visited July 27, 2011), *available at* www.linkedin.com/in/brian-macdonald-42b4114.

[20] E.B. Boyd, *Bing Battles Google by Re-Designing Search*, FAST COMPANY (Feb. 17, 2011), *available at* https://www.fastcompany.com/1728528/bing-battles-google-re-designing-search.

[21] Derrick Connell, LINKEDIN (last visited July 27, 2021), *available at* www.linkedin.com/in/derrickc.

**Appendix A: Descriptions of Proposed Additional Custodians**

worked to iron out the kinks in a search engine that, at first, spit out search results noticeably worse than Google."[22]   He described himself as having "[led] product strategy and establish[ed] ways for Bing and Cortana to partner with companies such as Facebook, Amazon, Apple, Yahoo . . . ."[23]  His documents would shed light on Bing's ability to gain distribution, as he wrote that Microsoft's "products are deeply integrated with all of these partners, and between us Bing has 30% consumer market share for Web Search in the United States[.]"[24]

10. **G███ N████** is a Vice President who has been with Microsoft since 1995.  Between 2010 and 2013, he reportedly led the "alliance with Yahoo! and Bing for web search," and from 2013 to 2015 "[w]ork[ed] with [the company's] monetization teams and partners for MSN and Bing."[25]

11. **M███ B████** was involved with "international strategic partnerships and business development on behalf of Microsoft's Online Services Division" from 2001 through 2012, and works in other capacities at the company today.[26]

12. **P████ K████** was SVP of Microsoft's Mobile Communications Business from 2003 until 2008, when he left the company. We expect that his documents would include information regarding Microsoft's development of Windows Mobile, Microsoft's first mobile operating system for smartphones (and the precursor to the Windows Phone) that Microsoft offered in competition with, among others, Google's Android operating system.  He reportedly worked to win over third-party manufacturers to "Windows Mobile [as] it became the third largest volume Microsoft product" during that time period.[27]

13. **Andrew Lees**, who held a variety of leadership roles, including as President of the Windows Phone Division from 2008-2012, left the company in 2013.  He was responsible for the "multi-billion dollar deal with Nokia to make them exclusive to Windows Phone."[28]  In 2011, he is reported to have viewed "Microsoft's mobile operating system as the answer to big problems

---

[22] Matt Day, *Bing No Longer a Search-Engine Blip*, SEATTLE TIMES (May 21, 2015), *available at* https://www.seattletimes.com/business/microsoft/bing-no-longer-a-search-engine-blip/.

[23] Derrick Connell, LINKEDIN (last visited July 27, 2021), *available at* www.linkedin.com/in/derrickc.

[24] *Id.*

[25] G██ N███, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/████████

[26] M█████ B███, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/█████████████

[27] P███ K███, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/██████

[28] Andrew Lees, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/leesandrew/.

**Appendix A: Descriptions of Proposed Additional Custodians**

facing iOS and Android," and to have argued that "[w]here Google and Apple are failing, Microsoft is excelling."[29]   Microsoft subsequently discontinued the Windows Phone, and reportedly wrote off $7.6 billion related to the Nokia acquisition, one year after it paid $7.2 billion for Nokia.

14. **J██ K██████** was involved in various aspects of Bing from 2009 until 2019 (when he left the company), and reportedly had "[a]ccountability for all aspects of the local search experience (data, relevance, and user experience)."[30] Bing's development, design, and introduction of a local search offering that competes directly with Google local search is relevant to the States' allegation that Google engages in self-preferencing of its local search functionalities.

15. **H██ R███** has been a Director at Microsoft since 2008, and reportedly "lead[s] and negotiate[s] strategic deals in support of Search Advertising."  Historically, she "[m]anaged global Publishers & Supply business" in connection with the "Microsoft-Yahoo Search Alliance" and Bing distribution partners.[31]

16. **Terry Myerson** was Executive Vice President at Microsoft until 2018.[32]  According to at least one press account, Myerson was tapped in 2009 to help revitalize Microsoft's mobile group in the face of the iPhone threat.[33] His role in redirecting the Windows Phone strategy to better compete with iPhone and Android indicates that he surely possesses strategy documents on Microsoft's efforts to compete with Google and Apple as a mobile platform.

17. **G██████ S███ P██** held several Bing-related roles at Microsoft between 2011 and his 2018 departure, including Vice President for the Bing Products Global Ecosystem.[34]  He was involved in the development and oversight of Bing's vertical search offerings, including Bing

---

[29] Zach Epstein, *Microsoft Exec: Windows Phone Is The Cure For iPhone's Monotony, Android's Chaos*, BGR (Oct. 10, 2011), *available at* https://bgr.com/general/microsoft-exec-windows-phone-is-the-cure-for-iphones-monotony-androids-chaos/.

[30] J██ K██████, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in████████

[31] H██ R███, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in████████

[32] Terry Myerson, LinkedIn (last visited July 27, 2021), *available at* www.linkedin.com/in/tmyerson.

[33] Adrianne Jeffries, *Meet Terry Myerson, The Most Important Man at Microsoft*, THE VERGE (July 12, 2013), *available at* https://www.theverge.com/2013/7/12/4515830/terry-myerson-microsoft-windows-reorganization.

[34] G██████ S███ P██, LinkedIn (last visited July 27, 2021), *available at* https://www.linkedin.com/in/████████████

**Appendix A: Descriptions of Proposed Additional Custodians**

Local, Travel, and Shopping, as well as Bing's search distribution and syndication.[35]  In his telling, Bing Local "was so rich and differentiated[] that established competitors like Google had to react to catch-up to the Bing offering."[36]  He also "[l]ed the development of global ecosystem for product distribution/syndication of Bing search services to strategic partners," including "Oath (Yahoo), Amazon, [and] Apple," among several others.[37]

18. **Erik Jorgensen** was a CVP of Online Services.  He was involved in the development of both Microsoft search products and Bing mobile at various points during his tenure, from 1995 until his departure in 2015.[38]  He reportedly was responsible for "MSN worldwide" and "creating and running Bing Mobile, Maps and Local," and was involved in "return[ing] MSN to profitability and buil[ding] Bing from the ground up."[39]  In a 2009 interview, he described "seeing that about 60 percent of our users were regular Google and Yahoo searchers.  So we've got a leakage problem where people aren't able to stay and get one great experience from a single spot."[40]

19. **D███ B████** is a Microsoft employee who reportedly helped ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[41]

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] Erik Jorgensen, LINKEDIN (last visited July 27, 2021), *available at* https://www.linkedin.com/in/erik-jorgensen-544539/.

[39] *Id.*

[40] Todd Bishop,  *Q&A: MSN chief Jorgensen on future of Microsoft's Web portal*, Puget Sound BUSINESS JOURNAL (July 10, 2008), *available at* https://www.bizjournals.com/seattle/blog/techflash/2009/07/QA_MSN_chief_on_the_future_of_Microsofts_Internet_portal_50478617.html

[41] MSFT-0001165938.