# EXHIBIT B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| State of Colorado, et al. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 1:20-cv-03715 (APM) |
| | ) | |
| Google LLC | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Apple Inc., One Apple Park Way, Cupertino, CA 95014

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached schedule.

| Place: Location to be agreed upon | Date and Time: 03/25/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/23/2021

| *CLERK OF COURT* | OR | /s/Erin L. Shencopp |
|---|---|---|
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* State of Illinois , who issues or requests this subpoena, are:

Erin L. Shencopp, Illinois Attorney General's Office, 100 W. Randolph St., Chicago, IL 60601, eshencopp@atg.state.il.us
312-793-3891

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-03715 (APM)

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____     _____
                                 *Server's signature*

                         _____
                                 *Printed name and title*

                         _____
                                 *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE TO SUBPOENA TO APPLE INC.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce all documents you produced to the DOJ in response to any civil investigative demand or subpoena, or that you provided voluntarily to DOJ, in connection with its investigation of Google.

2.      Produce all documents requested by the DOJ's subpoena issued to you on February 1, 2021 in *United States v. Google LLC*, 20-cv-3010 (D.D.C.) ("DOJ's Requests").

3.      Documents sufficient to show all terms and conditions, to the extent they are not reflected in contracts or agreements produced in response to DOJ's Request No. 2, relating to: (a) Google's appearing as the default general search engine on Apple devices; (b) purchasing digital ads from Google; (c) placing digital ads on any Google website, application, or service; (d) appearing on any Google search engine results page; or (e) the ability of Apple devices or software to be used in a manner compatible with devices other than those provided by MNOs, such as home speakers or automobiles.

4.      All documents discussing any instances where the price or other terms and conditions of the purchase, licensing, or use of a Google product, service, or feature has been contingent upon (a) the purchase, licensing, or use of another Google product, service, or feature, (b) the purchase, licensing, or use of a certain volume or percentage of a Google product, service, or feature, or (c) the purchase, licensing, or use of a Google product, service, or feature in a certain volume or percentage of your own products, services, or business.

5.      Documents sufficient to identify the individuals at Apple responsible for: (1) determining the platforms Apple uses for its digital advertising and (2) determining the tools and

services (e.g., a search engine marketing tool) to use to bid on, purchase, or place digital advertising.

6. From January 1, 2004, produce documents sufficient to show any payments made by Apple to Google stated by month, by region (e.g., US, EU, ME, Asia, Russia, etc.), by purpose of the payment, and by how the payment amount was calculated (e.g., flat fee, percentage, commission, etc.).

7. All communications with Google relating to:

   a. Terms or conditions for purchasing digital ads from Google or placing ads on any Google website, application, or service;

   b. The location, priority, or ranking of your digital ads or organic or other unpaid search results appearing on any Google website, application, or service;

   c. The content of your digital ads on any Google website, application, or service, including the ability to use your own name, the ability to control the content or your ad, the ability to link to your websites or applications, and any restrictions on the content or appearance of your ads;

   d. Google directing users of its search services to its own websites, applications, or services or Google diverting users from your websites or applications;

   e. The access to or use of your data, websites, or applications or data generated by users of your websites or applications or by customers of your products or services; and

   f. The use of Search Ads 360, including the features, functionality, or interoperability of general search engines with Search Ads 360 or any limitations thereof.

 8. Documents sufficient to show your digital advertising spending stated by the following at the most disaggregated level you maintain: dollar amount; number of ads, clicks, and/or impressions; company where the advertising was placed (e.g., Google, Bing, Amazon); type of ad (e.g., general search ad, general search text ad, digital ad on a specialized vertical provider); location of the ad (e.g., top, bottom, right, left of a website); and how the payment was calculated (e.g., auction, per click, per impression, flat fee, percentage, commission, etc.).

 9. Documents sufficient to show any analysis of the sources of user traffic (e.g., general search advertising, organic search results, users going directly to the Company's websites or applications on a desktop or mobile device, voice assistants) for your websites and applications, including analysis of any relationship or effect between the source of user traffic and the Company's business, or the cost, quality, or return on investment of digital advertising.

 10. Documents sufficient to show any analysis of where your organic or other unpaid search results appear on any general search engine's website, application, or service, including any analysis of how the location of those results impact the flow or volume of user traffic to the Company's websites or applications or the Company's business.

 11. Documents sufficient to show all limitations on the types or content of digital ads that you can bid on or purchase from any general search engine or place on any general search engine's website, application, or service, and any impact those limitations have on the Company's business.

12. Documents sufficient to show:

    a. The access that each general search engine has to your data, websites, and applications;

    b. Whether you have agreed to provide each general search engine such access and why;

    c. Whether and how any general search engine accesses or uses any of your data, websites, or applications without permission or without attribution; and

    d. Any limitations that any general search engine places on your accessing data generated on the general search engine by users of your websites or applications or by customers of your products or services, including in response to digital ads you bid on or purchase from the general search engine or place on any website, application, or service of the general search engine.

13. Documents sufficient to show any actions or business practices of any general search engine that have the effect of diverting or disintermediating users or customers from your websites, applications, or business.

14. Documents sufficient to show any advertising agencies the Company uses to purchase digital advertising and the dollar amount and volume of the Company's digital advertising that is purchased through each agency at the most disaggregated level you maintain.

15. Documents sufficient to show your consideration of passing on changes in the costs of advertising to your customers.

16. Documents sufficient to show:

    a. All contracts, agreements, terms and conditions, business proposals, and sales and marketing materials relating to any search engine marketing tools you use or have considered using.

    b. The tools (e.g., Search Ads 360 or other search engine marketing tools, Google Ads, Microsoft Advertising) you use to bid on and purchase digital ads;

    c. Why you use those tools compared to other available tools;

    d. How you use those tools to compare and contrast potential placement of the Company's advertising dollars;

    e. The Company's preferences and changes in preferences among search engine marketing tools and native tools over time, and the reasons why; and

    f. The Company's comparative reliance on search engine marketing tools and native tools over time.

17. Documents sufficient to show any limitations in the features or functionality of, or any concerns or complaints about, Search Ads 360, and how any such limitations affect your digital advertising choices or strategy.

18. Data sufficient to show the Company's use of search engine marketing tools (e.g., Search Ads 360) and native tools (e.g., Microsoft Advertising), including the following for each tool used at the most disaggregated level you maintain:

    a. Dollar amount of digital ads purchased;

    b. Volume of digital ads purchased;

c.  Where the ad was placed (e.g., Google, Bing, Expedia);

d.  Type of ad (e.g., general search ad, general search text ad, specialized search ad offered by a specialized vertical provider);

e.  Location of the ad (e.g., top, bottom, right, left of a website);

f.  Price for the digital ads, including how the price was determined; and

g.  For digital ads bid on:

   i.  Bid date;

   ii.  Bid amount; and

   iii.  Bid outcome (i.e., whether the bid was successful).

## **INSTRUCTIONS**

1. Prior to producing any documents, please contact the attorney listed on the Subpoena to discuss the logistics of submitting your productions.

2. These requests seek all responsive documents within your possession, custody, or control, whether or not prepared by you or a third party.

3. Unless otherwise specified, these requests are for all documents in your possession, custody, or control that were created, altered, or received at any time from January 1, 2010, to the present. Unless otherwise stated, these requests are for all otherwise responsive documents relating to the United States or any part thereof, regardless of where those documents are kept.

4. In addition to the specific instructions set forth herein, these document requests incorporate the instructions set forth in Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Columbia, and the Stipulation and Order Regarding Discovery Procedure ("ESI Order") (ECF #99) or the operative version of that order in place at the time production is made. Subject to a valid claim of privilege, the entire document must be produced if any part of that document is responsive.

5. Produce a legible copy of each document requested together with all non-identical copies and drafts of that document. Subject to the ESI Order (ECF #99), all metadata of electronic documents must also be produced. You must retain all of the original documents for inspection or copying throughout the pendency of this case, any appeal(s), and any related proceedings.

6.      You must supplement your responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. Plaintiffs specifically reserve the right to seek supplementary responses and the additional supplementary production of documents before trial.

7.      Where a claim of privilege or other protection from discovery is asserted in objecting to any request or sub-part thereof, and any document is withheld (in whole or in part) on the basis of such assertion, provide a log ("Privilege Log") in accordance with the Case Management Order (ECF #108-1) and ESI Order (ECF #99), or the operative versions of those orders in place at the time you provide a log.

8.      Do not produce any sensitive PII or SHI before discussing the information with Department representatives. If any document or data responsive to a particular request contains sensitive PII or SHI that is not responsive to that request, redact the unresponsive sensitive PII or SHI before producing the document or data. Provide an index that lists such redacted documents by document control number. If the index is available in electronic form, provide the index in that form.

## DEFINITIONS

The following Definitions incorporate by reference the Definitions contained in the DOJ's Requests, but include the following additional and supplemental definitions below to provide clarity for the application of those Definitions to the Plaintiff States' complaint. Where the Plaintiff States' Definitions differ from Definitions included in the DOJ's Requests, those differences are noted in bold.

1.      The term "DOJ" means the U.S. Department of Justice.

2.      The terms "digital ad" or "digital advertising" include all types of ads filled by way of the internet—as opposed to out-of-home, broadcast television, or print—including video

ads, display (desktop and mobile) ads, social ads, search ads, in-app ads, native/rich text ads, and any other ad categorized as a type of digital advertising by the company in its ordinary course of business. The terms "digital ad" and "digital advertising" shall be construed broadly and shall include at a minimum the various types of advertising described in the **complaints in *United States v. Google LLC*, 20-cv-3010 (D.D.C.) and *State of Colorado v. Google LLC*, 20-cv-3715 (D.D.C.), including general search text advertising and general search advertising**.

3. The terms "general search advertising" or "general search ads" mean all paid placements supplied by a general search engine in connection with a general search query. General search advertising includes general search text advertising and specialized search advertising offered by general search engines.

4. The term "general search engine" means a tool that enables consumers to search the contents of the internet by collecting and indexing data from a variety of different sources on the internet, including commercial and non-commercial sources, to produce results in response to a consumer's query. Google, Bing, DuckDuckGo, and Yahoo constitute general search engines. General search engines do not include specialized vertical providers that provide results for a specific, narrow range of queries, often confined to a single commercial segment. Amazon, Expedia and Yelp are examples of specialized vertical providers.

5. The term "general search service**s**" means **the results that a general search engine produces in response to a consumer query.** Consumers may use general search services to perform several types of searches, including navigational queries (seeking a specific website), informational queries (seeking knowledge or answers to questions), and commercial queries (seeking to make a purchase). Examples of general search services include **those offered by** Google, Bing, Yahoo, and DuckDuckGo.

6. The term "general search text ads" refers to ads sold by general search engines such as Bing and Google, typically appearing just above or below the organic search results on a search engine results page, which appear in text format. General search text ads are "click out" ads that link to a website selected by the advertiser (usually the advertiser's own website). The term does not include advertisements provided by specialized vertical providers such as Amazon, Kayak, or Yelp, and does not include "click in" ads that link another page on the search provider's own website.

7. The term "native tool" means a tool or service from which a person can directly purchase advertising on a general search engine. Examples of native tools include Google Ads (formerly AdWords) and Microsoft Advertising (formerly Bing Ads).

8. The term "organic search results" means non-advertisement results in response to an entry into a search engine that are generally derived algorithmically from hyperlinked web data. "Organic search results" are often (colloquially) referred to as "10 blue links," irrespective of the actual number of links. "Organic search results" excludes results in any display or search feature showing a result in response to a search query in a particular format for the user and that appears on the search engine results page above, below, or to the side of organic search results and general search text advertising, however derived.

9. The term "OneBox" means the portion of the initial Google search results page on the Google website that displays a map and a list of businesses (e.g., hotels, restaurants, and local services), flight information, or other information typically below any text ads and above organic search results, as well as pages on Google.com to which a consumer can navigate to when clicking on a link in OneBox on the initial Google search results page. The OneBox displayed on

the initial Google search results page is depicted in Figures 1 and 2 of the Complaint filed in *State of Colorado v. Google LLC*, 20-cv-3715 (D.D.C.).

10. The terms "search ad" or "search advertising" mean all types of ads generated in response to online search queries, including general search text ads (offered by general search engines such as Google and Bing) and other, specialized search ads (offered by general search engines and specialized search providers such as Amazon, Expedia, or Yelp). These definitions shall be at least as broad as the description of "search ads" in paragraphs 97 and 98 of the **DOJ's** complaint **in** *United States v. Google LLC***, 20-cv-3010 (D.D.C.)**.

11. The term "search engine marketing tool" means a tool or service that allows an advertiser to evaluate digital search advertising options and purchase digital advertising.

12. The terms "specialized search advertising offered by general search engines" or "specialized search ads offered by general search engines" mean ads other than general search text ads that are placed on a general search results page, including but not limited to ads that appear in connection with Google OneBox (or similar feature offered by other general search engines as well shopping ads and product listing ads ("PLAs").

13. The terms "specialized search advertising offered by specialized vertical providers" or "specialized search ads offered by specialized vertical providers" mean ads placed on a website or application of a specialized vertical provider.

14. The term "specialized vertical providers" means providers that offer users a narrower, focused set of answers to a narrower set of queries, typically in a particular commercial segment (e.g., travel, shopping) compared to general search engines, that rely on a finite set of content rather than the broad content available on the internet, and that often offer consumers ways to find and connect with merchants or service providers, such as airline ticket

sellers or local electricians, and often allow them to complete or book transactions with those merchants. The DOJ calls these companies "specialized search engines."

15. The term "website" means a location connected to the internet that maintains one or more pages on the World Wide Web, and it includes all pages, features (e.g., OneBox), and content available on or within any pages of the website.