# EXHIBIT 1



**U.S. Department of Justice**

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20001*

June 4, 2021

**BY EMAIL DELIVERY**

Franklin Rubinstein
Williams & Connelly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
frubinstein@wsgr.com

Re: ***United States, et al. v. Google LLC*, No. 1:20-cv-03010 (D.D.C)**

Dear Mr. Rubinstein:

We write to present for discussion several important issues concerning Google's application of attorney-client privilege to produced documents in this litigation. Having asserted claims of privilege, Google bears the burden of presenting "sufficient facts to establish the privilege."[1] This letter identifies eight issues where we are concerned that Google is overzealously and improperly claiming privilege. Google's overreach frequently covers matters that are central to this case—such as contracts through which Google effectuated its anticompetitive conduct—and implicate both tactics by Google's employees and document review practice by Google's outside counsel. By presenting the issue, overviewing the applicable law, and offering examples, we hope to reach a reasonable resolution without the need for court intervention.

**Apparent Deficiencies in Google's Privilege Claims and Privilege Logs**

1. Documents Shared Externally with Third Parties

**3,206** of Google's privilege log entries identify authors or recipients of files who are affiliated neither with Google nor a law firm retained by Google. Instead, these individuals work for outside companies like AT&T, Motorola, Microsoft, Intuit, Samsung, and various consulting firms. **Attachment A** provides copies of the relevant privilege log entries and a list of third parties whose presence appears to waive the attorney-client privilege.

---

[1] *See, e.g., Bartholdi Cable Co., Inc. v. FCC*, 114 F.3d 274, 280 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d, 94, 99 (D.C. Cir. 1984)).

A company asserting attorney-client privilege must show that the communication "is the product of an attorney-client relationship and is maintained as confidential between attorney and client."[2] In general, where "the information has been or is later shared with third parties, the privilege does not apply."[3] In each of the identified privilege log entries, at least one author or recipient worked for an outside third party. By including third parties in these communications, Google has waived any claim to privilege.[4]

Google has frequently withheld files shared with third parties during arms-length negotiations. For example, in GOOG-DOJ-12373589, Christine Moon, a non-lawyer working for Google, emails Samsung's Hankil Yoon and other Samsung employees. The attachment (GOOG-DOJ-12373590) has been entirely withheld for privilege. Because the document was sent intentionally to an outside party, it does not include confidential attorney advice and the privilege has been waived. Google has similarly withheld documents received from third parties. In GOOG-DOJ-01767890, Google entirely withheld a redlined contract that it received from an employee at Apple (*see* GOOG-DOJ-01767889).[5]

In its recent May 27, 2021 privilege log, Google has continued its practice of withholding and redacting documents shared with third parties. For example, in GGPL-4021293918, Google entirely withheld an email from a third party (Samsung) claiming "Draft agreement revealing legal advice of counsel regarding contract negotiation." But this is a document received directly from an outside third party and is therefore not privileged. Similarly, in GGPL-4153349702, Google entirely withheld an email from AT&T, claiming "Email containing legal advice of counsel re contractual issues."

The attorney-client privilege does not entitle Google to withhold as privileged drafts of contracts exchanged between companies during arms-length business negotiations. These overzealous privilege assertions are particularly concerning as these types of contracts and negotiations with search distribution partners are at the core of Google's alleged anticompetitive conduct.

Google must promptly produce unredacted versions of the redacted or withheld documents that have been shared with or received from third parties, including those identified in **Attachment A**. If Google believes that any files identified are nonetheless entitled to privilege, it must provide a detailed statement explaining with particularity the nature of the relationship between Google and the third party, and why that relationship is legally sufficient to prevent waiver.[6]

---

[2] *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980).
[3] *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977).
[4] *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997); *United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).
[5] We are also missing privilege log entries for both GOOG-DOJ-12373589 and GOOG-DOJ-01767890.
[6] *See Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (explaining that privilege claims are rejected if the asserting party does not provide information required to establish the claim in a privilege log, affidavit, or deposition testimony, including "the reasons for any disclosures of the document to individuals not normally within the privileged relationship"); *see also Chevron Corp. v. Weinberg Group*, 286 F.R.D. 95, 98 (D.D.C. 2012) ("From the entry itself the opposing party . . . should be able to tell that the information

2. Documents Without Any Attorney Involvement

Over the course of its productions, Google has redacted or withheld **51,738** documents where no attorney is identified as the author, sender, or recipient of the communication, and no attorney is identified in the column describing the basis on which Google is claiming privilege. These privilege log entries without an attorney involved are listed in **Attachment B**.

"The attorney-client privilege attaches only to communications between an attorney and his or her client."[7] Communications between non-lawyers are protected only in the narrow circumstance where information is compiled expressly for the purpose of seeking legal advice, and legal advice is actually sought. In other words, the claimant of privilege must show that the communicating parties not only intended to seek legal advice, but actually did so.[8] "Such a requirement makes abundant sense, as factual information not communicated to an attorney cannot aid in that attorney's provision of legal advice."[9]

Google's privilege claims for these 51,738 communications do not all appear to enjoy protection under the narrow exception for protected communications between non-lawyers. The documents identified in **Attachments B** fail to even name a specific attorney (ESQ), much less indicate that legal advice was eventually sought or received from an attorney.

Many of the entries include vague references to "counsel." Several entries on Google's May 27, 2021 privilege log even include placeholders where Google's document reviewers were unable to find an involved attorney to substantiate the privilege claim:

- GGPL-4030737290 – "Draft agreement containing legal advice of add 'Attorney Name' regarding contractual issues."
- GGPL-4090792828 – "Draft presentation containing legal advice of add 'Attorney Name' re intellectual property issues."
- GGPL-4021289397 – "Email seeking, containing and revealing legal advice of add 'Attorney Name' regarding contractual issues."
- GGPL-4030734722 – "Agreement seeking, containing and revealing legal advice of add 'Attorney Name' re contractual issues."

These entries demonstrate that Google's outside counsel knows to identify a particular attorney to substantiate its privilege claims. The failure by reviewers to find attorneys to justify these and the other numerous entry logs in **Attachment B** casts doubt over Google's privilege review process.

---

not being disclosed is properly claimed as privileged, since it was a communication from a client, intended to be confidential, that sought legal advice").

[7] *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 512 (2009).

[8] *Mischler v. Novagraaf Grp. BV,* No. 1:18-cv-2002 (TJK/GMH), 2019 WL 6135447, at *7 (D.D.C. Nov. 19, 2019) ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice *and later communicated to counsel* are protected by the attorney-client privilege." (quoting *AT&T*, 2003 WL 21212614, at *3).)

[9] *Id.*

A review of the redacted documents further confirms Google's overreach in withholding documents between non-lawyers.

For example, GOOG-DOJ-01160763 is a thread of emails, the subject line of which is "[LMG] Google's Varian: Search scale is 'bogus[.]'" Ramsey Homsany, a lawyer, initiates the conversation by excerpting an online article. Kent Walker, both a businessperson and lawyer, responds. However, redactions are also present in subsequent emails between Hal Varian and Betsy Masiello, both non-lawyers. Neither Mr. Homsany nor Mr. Walker (nor any other attorney) appear to have received these emails, as illustrated here:



**From:** Hal Varian [redacted] n behalf of Hal Varian
**Sent:** Saturday, August 15, 2009 10:49 PM
**To:** Betsy Masiello
**Subject:** Re: [LMG] Google's Varian: Search scale is 'bogus'

On Sat, Aug 15, 2009 at 2:19 PM, Betsy Masiello [redacted] wrote:

Redacted

On Sat, Aug 15, 2009 at 1:37 PM, Hal Varian [redacted] wrote:

Redacted

http://searchengineland.com/google-calls-yahoo-microsofts-explanation-of-search-scale-bogus-23998

http://www.roughtype.com/archives/2009/08/the_diminishing.php

http://thenoisychannel.com/2009/08/14/googles-chief-economist-hal-varian-talks-stats-101/http://www.roughtype.com/archives/2009/08/the_diminishing.php

Redacted

Where attorneys have been intentionally removed from the conversation, Google cannot claim privilege because no legal advice can be sought absent a lawyer.

Another illustrative example is GOOG-DOJ-1175129. This document, which is entirely withheld for privilege, is an attachment to an email between Hal Varian, a non-lawyer, and an outside economist about a soon-to-be published article in the *Antitrust Law Journal*. The withheld document appears to be the draft article. In its privilege log, Google claims that the

privileged attached was "prepared at the direction & demonstrating legal advice of counsel regarding regulatory issues." But there is no indication of what attorney directed Mr. Varian to draft the article, nor that the near-final version of the article would reveal confidential legal advice. To the contrary, the draft article is intended for public consumption.[10] Further, because this document was shared with an outside third party, the attorney-client privilege has been waived.[11]

Google's most recent privilege log continues to make questionable privilege calls between non-lawyers. In GGPL-4071146127, Google entirely withheld an email from Dan Seet, a non-lawyer, to Jim Kolotouros, another non-lawyer, with several more non-lawyers (Eugene Zee, Bernie Hsu, David Sill, Ben Breen) carbon copied. Google's basis for withholding the entire document is: "Draft agreement revealing legal advice of counsel regarding contract negotiation."[12] Draft business agreements are not automatically privileged, and the fact that so many non-lawyers are involved in the communication without an attorney present suggests instead that this was a business rather than legal discussion. Even if the draft agreement revealed specific legal advice, Google must redact the legal advice rather than withhold the entire document as privileged.[13]

Similarly, in GGPL-4021279552, Google entirely withheld an email between two non-lawyers, Ethan-young Chang and Christopher Li, on the ground that it was an "email seeking and revealing legal advice of counsel re contractual issues." Google fails, however, to identify the attorney from whom legal advice was being sought and revealed.

As noted above, we are concerned that Google's overzealous privilege claims concern issues core to this litigation.

Google must reproduce unredacted versions of non-attorney communications, including those identified in **Attachment B**. If Google believes that any files identified are nonetheless entitled to privilege, it must provide a detailed statement naming the involved attorney(s) and explaining with particularity how that attorney's involvement results in privilege under the applicable law.[14]

---

[10] *Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 13 (D.D.C. 1991) ("If Coast to Coast intended that the information communicated to Berliner would be revealed to third parties by publication of the final drafts of the documents, the preliminary drafts may not be privileged.").

[11] *See supra* Part 1.

[12] US v. Google Privilege Log, Vol. 2

[13] *See* Stipulation and Order Regarding Discovery Procedure, *United States v. Google LLC*, 1:20-cv-03010 (D.D.C. Jan. 21, 2021) ("ESI Order") at IV.1, V.3.

[14] *Chevron*, 286 F.R.D. at 98 ("From the entry itself the opposing party . . . should be able to tell that the information not being disclosed is properly claimed as privileged, since it was a communication from a client, intended to be confidential, that sought legal advice"); *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000) (concluding that the "privilege log fail[ed] to establish that the documents are properly being withheld" because "the descriptions of the documents are so brief and of such a general nature that they fail to give the court any basis for determining whether the privilege was properly invoked").

3. Attorneys in Business Roles

a. Attorneys Who Have Relinquished Their Legal Role

In **3,257** privilege log entries, Google has claimed privilege over files where the only attorney listed as an author or recipient was not working in an "attorney role" at the time of the communication, according to Google's own admission. **Attachment C** provides copies of the relevant entries and a copy of Google's representations regarding the periods during which individual attorneys acted in an "attorney role" during their tenure at Google.

The fact that an individual possesses a law degree and is admitted to the bar is "not enough to establish a person as an attorney for purposes of determining whether the attorney-client privilege applies."[15] To assert privilege, an attorney must act as a legal advisor and the "advice given must be predominately legal, as opposed to business, in nature."[16] Because an in-house lawyer often has "certain responsibilities outside the lawyer's sphere," a corporation "can shelter [the attorney's] advice only upon a *clear showing* that [the attorney] gave it in a professional legal capacity."[17] Attorneys who work for a "seemingly management or business side" of a company are presumed to be giving non-legal advice.[18]

In privilege logs submitted during the pre-complaint investigation and in the May 27, 2021 privilege log, Google acknowledged that several of the lawyers on its privilege log transitioned to a non-legal business or policy role.[19] For example, Zahavah Levine currently serves as the Vice President of Android Partnerships and was listed by Google as "in an attorney role through 10/27/2010." In Google's second litigation privilege log, Zahavah Levine is not listed as an "ESQ" at all. The admissions provided by Google delineate when these individuals were acting primarily in a *legal* capacity, and when they transitioned to a *business* role (despite possessing a law degree). Accordingly, Google cannot rely on individuals like Zahavah Levine as an "ESQ" for the purpose of claiming privilege after they transitioned from their legal position. A review of the documents involving Zahavah Levine and the other Google employees confirms that they were acting in a business, rather than legal, capacity.

For example, GOOG-DOJ-07461733 redacts several emails between Jamie Rosenberg, David Rosenberg, and Zahavah Levine. Levine is the only "ESQ" noted on the privilege log. However, this email exchange occurred in January 2017, six years *after* the October 27, 2010

---

[15] *Boca Investerings P'ship v. United States*, 31 F. Supp. 2d 9, 11–12 (D.D.C. 1998) (citation and quotation omitted).

[16] *Id.; see also Gonzalez Ramos v. ADR Vantage, Inc.*, No. 18-CV-01690 (APM), 2020 WL 409283, at *3–4 (D.D.C. Jan. 26, 2020) (Mehta, J.) (differentiating between legal advice and non-legal advice and explaining that "not every communication with a lawyer is protected").

[17] *In re Sealed Case*, 737 F.2d 94, 99 (D.C.Cir. 1984) (emphasis added); *Neuder v. Battelle Pacific Nw. Nat'l Lab.*, 194 F.R.D. 289, 295 (D.D.C. 2000); *see also Gonzalez Ramos*, 2020 WL 409283, at *3.

[18] *Boca Investerings*, 31 F. Supp. 2d at 12.

[19] *See* "(Group A) CID No 30120 – Alphabet Inc. Privilege Log Vol. 1 - HIGHLY CONFIDENTIAL", "(Group B) CID No 30120 – Alphabet Inc. Privilege Log Vol. 2 - HIGHLY CONFIDENTIAL", and "(Group C) CID No 30120 – Alphabet Inc. Privilege Log – Volume 4"; "United States v. Google – Privilege Log Vol. 2 (revised) – Confidential" (using ESQ* to denote attorneys who acted in an "attorney role" only "through" or "from" specific dates).

date that Levine ceased working in an "attorney role," per Google's own admissions. Nor does the email's context suggest that Google employees were seeking Levine's legal as opposed to her business input.

Google must reproduce unredacted versions of the documents identified in **Attachment C**. If Google believes that any files identified are nonetheless entitled to privilege, it must provide a more detailed statement explaining with particularity how these individuals were providing *legal* rather than *business* advice in the identified communications.[20] Where attorneys provide both legal and business advice, the legal advice must *predominate* for the communication to be protected."[21] "[W]hen the legal advice is merely incidental to business advice, the privilege does not apply."[22]

b. Attorneys Offering Business Input Rather Than Legal Advice

Google has also redacted communications from attorneys that concern business matters, rather than legal advice.

Not all input from a lawyer is legal advice entitled to attorney-client privilege.[23] A lawyer can offer business advice, which is not protected by privilege, and "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected."[24] A lawyer's presence either at a meeting or on a chain of emails does not by itself shield otherwise unprivileged communications from disclosure.[25]

We are concerned that Google has redacted or withheld documents merely because information was presented to a lawyer even though no privileged legal advice was involved. For example, Google appears to have withheld documents [redacted] does not create a wholesale privilege. Instead, Google must make a "clear showing" for each communication that an in-house attorney is consulted for *legal* advice as opposed to business advice.[26] Google has not done so.

---

[20] *Chevron*, 286 F.R.D. at 98 ("From the entry itself the opposing party . . . should be able to tell that the information not being disclosed is properly claimed as privileged, since it was a communication from a client, intended to be confidential, that sought legal advice."); *Alexander*, 192 F.R.D. at 45 (concluding that the "privilege log fail[ed] to establish that the documents are properly being withheld" because "the descriptions of the documents are so brief and of such a general nature that they fail to give the court any basis for determining whether the privilege was properly invoked").

[21] *Neuder v. Battelle Pac. Nw. Nat. Lab'y*, 194 F.R.D. 289, 292 (D.D.C. 2000).

[22] *Id*.

[23] *Gonzalez Ramos*, 2020 WL 409283, at *3; *see also FTC v. Boehringer Ingelheim Pharm., Inc.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018) (attorney-client privilege might exist "if the communication was made for the purpose of obtaining or providing legal advice").

[24] *Neuder*, 194 F.R.D. at 292 (D.D.C. 2000); *see also Boca Inveserings*, 31 F. Supp. 2d at 12 (a lawyer must give "predominantly legal" advice for attorney-client privilege to attach).

[25] *United States ex rel. Barko v. Halliburton Co.*, 74 F.R.D. 183, 188–89 (D.D.C. 2014); *Neuder*, 194 F.R.D. at 293.

[26] *Boca Investerings*, 31 F. Supp. 2d at 12 (citing *In re Sealed Case*, 737 F.2d at 99).

Indeed, inconsistent redacting shows how Kent Walker often acted only in his business capacity. In GOOG-DOJ-01906435, Susan Wojcicki begins an email "atty client priv + Kent . . . Hi Amit[.]" Thus, Ms. Wojcicki appears to claim the privilege through Mr. Walker, and her message has been redacted. However, GOOG-DOJ-01906443 reveals that Ms. Wojcicki's email includes no request for legal advice:



| GOOG-DOJ-01906435 | GOOG-DOJ-01906443 |
|---|---|
| On Sat, Oct 22, 2011 at 11:11 AM, Susan Wojcicki wrote:<br>atty client priv + Kent<br><br>Hi Amit,<br><br>REDACTED<br><br>Susan | On Sat, Oct 22, 2011 at 11:11 AM, Susan Wojcicki wrote:<br>atty client priv + Kent<br><br>Hi Amit,<br><br>Susan |

Subsequent redacted emails in the -435 chain also do not warrant privilege.

Donald Harrison is another Google employee who appears to act in a business rather than legal role. Donald Harrison is the President of Global Partnerships, Corporate Development. Although he was denoted as an "ESQ" in earlier privilege logs, Google (correctly) did not list him as an "ESQ" in the most recent May 27, 2021 privilege litigation log. A review of Donald Harrison's redacted emails further confirm that he does not act primarily in an attorney role.

For example, in GOOG-DOJ-01906478, Alan Eustace, a non-lawyer, writes "Privileged and confidential . . . +Matt,Don," referring to Matt Cutts and Donald Harrison. Mr. Cutts is not a lawyer. Mr. Harrison is a lawyer but served in the business role as President for Global Partnerships and Corporate Development. Mr. Eustace's email is redacted, as are responses from Mr. Cutts and Amit Singhal (also a non-lawyer). But GOOG-DOJ-01906487 illustrates that Mr. Harrison was not acting in a legal capacity and these latter redactions did not warrant privilege.

| GOOG-DOJ-01906478 | GOOG-DOJ-01906487 |
|---|---|
| **From:** Amit Singhal n behalf of Amit Singhal<br>**Sent:** Sunday, October 23, 2011 11:23 PM<br>**To:** Matt Cutts<br>**Cc:** Alan Eustace; harrison; Rachel Whetstone; Kent Walker; Larry Page; Susan Wojcicki<br>**Subject:** Re: Latest Danny Article, Not Good.<br><br>REDACTED<br><br>- Amit<br><br>On Sun, Oct 23, 2011 at 10:54 AM, Matt Cutts wrote:<br><br>REDACTED<br><br>Matt | **From:** Amit Singhal on behalf of Amit Singhal<br>**Sent:** Sunday, October 23, 2011 11:23 PM<br>**To:** Matt Cutts<br>**Cc:** Alan Eustace; harrison; Rachel Whetstone; Kent Walker; Larry Page; Susan Wojcicki<br>**Subject:** Re: Latest Danny Article, Not Good.<br><br>- Amit<br><br>On Sun, Oct 23, 2011 at 10:54 AM, Matt Cutts wrote: |

A later email from Mr. Eustace to Mr. Harrison remains unredacted. But the demonstrated impropriety of the redactions raises serious doubts about whether that email to Mr. Harrison—and other emails involving Mr. Harrison—have any basis for privilege.

4. Communications with An Attorney Carbon-Copied (CC'd)

Google has redacted or withheld **81,122** documents where an attorney is merely carbon-copied, or "CC'd", on a communication between non-lawyers. **Attachment D** provides copies of privilege log entries where an attorney appears only as a carbon-copied recipient.

Because in-house counsel often provide business rather than legal advice, the involvement of an in-house attorney on an email thread does not automatically create privilege. "[I]t is well settled that the mere presence of counsel on a communication does not render that communication or a document attached to that communication privileged."[27] This is particularly true where an in-house attorney is merely carbon-copied on a communication between non-lawyers. As such, "the fact that an attorney either is copied on or is one of multiple recipients of an email does not on its own support a claim of attorney-client privilege."[28] Moreover, "documents provided to an attorney to keep counsel informed, without an implied request for legal advice, will not be privileged."[29] Google has failed to meet its burden to establish privilege over the numerous communications where an attorney is merely CC'd without a clear request for legal advice or evidence that the attorney subsequently provided such legal advice.

Indeed, we are concerned that Google employees frequently add an attorney to a communication *for the purpose of* shielding information from future discovery and not for seeking legal advice. But companies may not use lawyers as mail drops, routing documents through them to prevent the disclosure of what would otherwise be non-privileged communications.[30]

Produced documents reveal Google employees laying bare that this is their objective. In emails, employees' discussion of non-legal business matters is frequently accompanied by an "Attorney-Client Privileged" tag or a warning to include an attorney to claim privilege on the document.[31] Many times, employees admit that the material in the document is likely to be sensitive business information and do not indicate any request for or reference to legal advice.

---

[27] *In re Domestic Airline Travel Antitrust Litig*., No. MC 15-1404 (CKK), 2020 WL 3496748, at *6–7 (D.D.C. Feb. 25, 2020), *report and recommendation adopted*, 2020 WL 3496448 (D.D.C. May 11, 2020). *See Jordan v. U.S. Dep't of Labor*, 308 F. Supp. 3d 24, 43-44 (D.D.C. 2018) ("simply copying an attorney on a communication does not make that communication privileged"), *aff'd*, 2018 WL 5819393 (D.C. Cir. Oct. 19, 2018).
[28] *Halliburton*, 74 F.Supp 3d at 188-89.
[29] *United States v. Philip Morris USA, Inc*., No. Civ.A.99-2496(GK), 2004 WL 5355972, at *6 (D.D.C. Feb. 23, 2004).
[30] *See Western Trails*, 139 F.R.D. 4, 13.
[31] *United States v. Singhal*, 800 F. Supp. 2d 1, 10 (D.D.C. 2011) ("the attorney-client privilege label stamped on each of the e-mail strings makes no difference. Whatever other properties 'Attorney-client privilege' stamps may have, they certainly do not carry the talismanic power to relieve a party of its obligation to prove each of the privilege's elements in order to take shelter under its protection.").

For example, in GOOG-DOJ-06399233, a conversation between David Rolefson and Dave Burke, both non-lawyers, is redacted. Jim Kolotourous, also a non-lawyer, is carbon-copied. Rolefson asks Burke about a business negotiation strategy and tags his email "PRIVILEGED."

But an unredacted version of this same thread, GOOG-DOJ-06399230, reveals the impropriety of both Rolefson's privilege claim and the later redaction. Burke responds and reminds Rolefson that "you need a lawyer on the thread for this [conversation] to be actually privileged[.]" Mr. Rolefson subsequently adds a Google attorney and adds "I guess I should say 'confidential' :)."

The unredacted version of this thread demonstrates that Google employees intentionally and erroneously tag business conversations as privileged and include in-house counsel as a prophylactic shield for sensitive discussions. It also reveals that Google's document review protocol makes improper redactions of non-legal discussions.

| GOOG-DOJ-06399233 | GOOG-DOJ-06399230 |
| --- | --- |
| Message<br>From: David Rolefson [redacted]<br>Sent: 2/26/2016 3:15:27 AM<br>To: Dave Burke [redacted]; Tim Taylor [redacted]<br>CC: Jim Kolotouros [redacted]<br>Subject: Re: "Forking FireOS further" question<br><br>*I guess I should say 'confidential' :)*<br>Redacted - Privilege<br><br>I appreciate the quick response.<br>Dave<br><br>On Thu, Feb 25, 2016 at 6:36 PM, Dave Burke [redacted] wrote:<br>**Redacted - Privilege**<br><br>On Thu, Feb 25, 2016 at 4:10 PM, David Rolefson [redacted] wrote:<br>PRIVILEGED<br><br>Dave -<br><br>**Redacted - Privilege** | Message<br>From: Dave Burke [redacted]<br>Sent: 2/26/2016 2:36:27 AM<br>To: David Rolefson [redacted]<br>CC: Jim Kolotouros [redacted]<br>Subject: Re: "Forking FireOS further" question<br><br>[redacted]<br><br>On Thu, Feb 25, 2016 at 4:10 PM, David Rolefson [redacted] wrote:<br>PRIVILEGED<br><br>Dave -<br><br>[redacted]<br><br>Thanks in advance,<br>Dave |

GOOG-DOJ-12864417 offers another example. Here, Google employees discuss an analysis comparing monetization versus user value for ads. After a few responses, David Goodman writes: "Just to be cautious, I'm . . . adding legal to make this [conversation] privileged due to the sensitive nature of the data." This email thus shows how Google employees "add[] legal" to conversations—even when no legal advice is sought—to later claim privilege for "sensitive" business information.

Similarly, in GOOG-DOJ-07801741, a Google employee responds to an email thread regarding [redacted] asking "could we please include a lawyer in this thread and make the doc A&C Privileged please." In GOOG-DOJ-18895045, a Google employee writes "+Milana McCullagh to make this thread Attorney-Client Privileged." In GOOG-DOJ-01168862, an employee shares meeting notes with a listserv to which another employee responds that they

should "cc Daphne, our lawyer, on team meeting notes going forward" because [redacted] The thread shows that no employee sought legal advice from Daphne Keller and that she was included because the information was business sensitive ("touchy").

Because "documents prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice,"[32] Google must produce unredacted copies of the documents identified in **Attachment D**. This is particularly true here where Google employees are known to add a strawman attorney to a business discussion to shield documents from discovery.

If Google believes it is nonetheless entitled to privilege for these communications, it must provide a more detailed statement—for each document—explaining with particularity how the attorney on that document was consulted for legal advice and that the request for legal advice was a "*significant* purpose" of the email.[33]

5. Communications with an Attorney Blind Carbon-Copied (BCC'd)

Google's Privilege Logs also have **30** communications in which the only lawyer identified is blind copied, or "BCC'd." These are identified in **Attachment E**. Where the attorney is not even visible on the communication to the other recipients, it cannot be claimed that it seeks legal advice from that attorney.

For example, in GGPL-4192436923 and GGPL-4192455720, Google entirely withheld documents from Rachel Whetstone, a non-lawyer, to a large group of recipients, including an email group for "public policy." The only ESQ noted on the log is Donald Harrison, but he is only BCC'd.[34]

Google must produce unredacted versions of the documents in **Attachment E** or provide further reasoning for why each of the communications are nonetheless privileged. If Google believes it is nonetheless entitled to privilege for these communications, it must provide a more fulsome statement explaining with particularity how the attorney was consulted for legal advice and that the request for legal advice was a "*significant* purpose" of the email.

6. Documents Withheld That Should Have Been Redacted or Produced in Full

Google has also entirely withheld a number of documents that should have been redacted or produced in full.

**Attachment F** provides copies of **2,323** privilege log entries where Google has stated in the Redacted/Withheld column that the entry is "Redacted" but has failed to provide a

---

[32] *Neuder*, 194 F.R.D. at 295 (citation and quotations omitted).

[33] *In re Kellogg Brown & Root, Inc.,* 756 F.3d 754, 760 (D.C. Cir. 2014) ("Sensibly and properly applied, the test boils down to whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication.").

[34] Additionally, as discussed above, it appears that Donald Harrison is not even listed as an ESQ on Google's most recent May 27, 2021 "Names List" and acts primarily in a business role as President of Global Partnerships, Corporate Development.

corresponding production Bates number. We are unable to locate the produced versions of these purportedly redacted documents.

Nor does it appear that these documents should be fully withheld or, in some cases, privileged at all. For example, GGPL-4173425470 lists an email between two non-lawyers and claims privilege on the basis that it is an "Email revealing legal advice of counsel re proposed RSA agreement." The entry says that the email was "Redacted" but there is no corresponding Bates number, and the document does not appear in redacted form in Google's productions. Moreover, because the email is a communication between two non-lawyers, it is not clear that the email should be privileged.[35] Even if the email did reveal legal advice from an attorney, that advice should be narrowly redacted rather than withholding the entire communication.

More broadly, we are concerned that Google has entirely withheld documents that contain both business and legal discussions instead of providing redacted versions.

For example, Google has withheld numerous documents on the basis of "incorporating" or "demonstrating" legal advice. In well-counseled companies, most corporate documents and decisions in some way "incorporate[e]" or "demonstrate[e]" legal advice. But it is an overly broad interpretation of the attorney-client privilege to shield any file that merely incorporates, demonstrates, or otherwise implements legal advice. Instead, the proper focus is on whether disclosure would reveal the underlying confidential legal advice or request for such advice.[36] Moreover, the fact that a document contains legal advice does not typically entitle Google to withhold the entire document.

Google's privilege logs identify thousands of files where the basis for withholding was "incorporating" or "demonstrating" legal advice. Rather than withholding an entire document on these broad grounds, Google must redact any privileged legal content in the document, if and where it exists, and then produce the remainder without redaction. Where such legal confidences are not present, unredacted versions of the files must be produced.

7. Additional Missing Privilege Log Entries

Google produced **3,067** documents with privilege designations, including redactions and slips sheets indicating that the files were withheld on the basis of privilege. But Google has not provided a description of the basis for its claim of privilege for these documents. We have already identified some of these missing privilege designations in our email on May 11.[37] **Attachment G** provides the document identification number and other relevant metadata for these files.

Google must reproduce unredacted copies of the files listed in **Attachment G**. If Google believes it is nonetheless entitled to privilege for these communications, it must provide

---

[35] *See supra* Part 2.

[36] *See Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 70–71 (D.D.C. 2017) ("Attorney-client privilege is narrowly construed by the D.C. Circuit because of its adverse effects on the full disclosure of truth.") (internal quotations omitted).

[37] Email from A. Cohen to C. Connor (Google), May 11, 2021.

sufficient information to assess Google's privilege claims over the individual files by producing a supplemental privilege log.

8. Missing Privilege Logs from the Federal Trade Commission Investigations

Finally, given the severity of the issues identified above, we remain concerned that after being asked three times, Google has refused to produce a copy of its privilege logs from the investigations by the Federal Trade Commission (FTC) and other competition authorities.[38] Google's failure to provide the FTC privilege logs is particularly problematic given that Google has used the existence of the millions of pages produced from prior FTC investigation to argue to the court for limitations on the date ranges and overall document count for the Plaintiff's litigation requests.[39] Google cannot use prior investigations as both a sword and a shield: asserting (1) that the prior production to the FTC permits a more limited production here, but also (2) that Google need not even provide a privilege log to enable us to assess Google's questionable privilege claims on those same documents.[40] The fact that the FTC did not have the opportunity to challenge Google's overly aggressive privilege claims in their investigation does not foreclose us from doing so now as part of this litigation. Google must justify the gaps in its FTC production with a copy of the privilege log developed for that purpose.

## Conclusion

Google has overzealously and improperly claimed privilege over documents produced over the course of this investigation and litigation. As shown, Google's errors are attributable both to Google's employees, who erroneously assert privilege and use in-house counsel as shields, and also to Google's document reviewers, who inappropriately grant privilege and apply redactions.

---

[38] Google's prior privilege logs should have been produced as responsive to CID 300092, which required "*all* documents, data, white papers, or *other submissions* provided in connection with" prior investigations. Civil Investigative Demand 30092.

[39] March 30, 2021 Status Conference at 38:02-09 ("To this earlier time period, part of our thinking, and certainly part of our proportionality objection to some of these broad topics, was, in 2010, 2011, and 2012 and then, I guess, concluding in 2013, the Federal Trade Commission investigated these same subject matters, and we made voluminous productions to the Federal Trade Commission in 2011 and 2012, in that time period, during that investigation . . . . We reproduced – and as you might imagine, that touches on a lot of the same subjects went back earlier in time prior to them that the FTC was looking at. We reproduced all of those documents, hundreds and hundreds of thousands of documents to the DOJ as part of its investigation here . . . . So, you know, from our perspective, part of our thinking was, you all are almost, like, going back and reinvestigating and asking us to reinvent the wheel from the FTC's investigation which resulted in huge productions, and we've already produced those to you. So the incremental 'why do we need to go back' was really a combination of all of these things, from our perspective.").

[40] *See, e.g.*, GOOG-DOJ-00054938 (redacting email sent from third-party Samsung and business discussions between non-lawyers); GOOG-DOJ-01142781 (redacting portions of an email sent to a Google employee from a New York Times journalist); GOOG-DOJ-01157543 (redacting emails between two non-lawyers (Hal Varian and Ellen Kona) discussing market share data); GOOG-DOJ-00136528 (withholding as privilege presentation not authored by an attorney and circulated to broad group of primarily non-attorneys for business review); GOOG-DOJ-00012843 (withholding as privileged attachment to an email sent by third party Apple).

Claiming privilege in litigation is necessarily an opaque process and requires both earnest effort by the producing side and trust by the receiving side. As overviewed in this letter, however, such trust in this instance is impaired by questionable privilege calls on tens of thousands of documents, many of which are entirely withheld, accompanied by meager and insufficient privilege descriptions.

Moreover, many of the documents at issue appear to touch on matters that are central to this case. This letter has used examples of documents where Google has claimed privilege "regarding contractual issues," including agreements and negotiations with search distribution partners. The alleged anticompetitive conduct in this case was effectuated by contracts, thus underscoring the importance of a fair balance of privilege and production for these documents. Similarly, Google's privilege logs include 14,704 entries "regarding privacy issues." Reduced privacy for consumers is alleged as a consumer harm in this case, and there is nothing inherent to "regarding privacy issues" that leads to the conclusion that legal advice, rather than policy or business advice, was provided in these communications.

"Courts tolerate the privilege only to the extent necessary to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice."[41] It does not serve the public interest and administration of justice for Google to hide relevant evidence in this litigation behind erroneous assertions of privilege.

Although we expect Google to begin promptly reproducing documents that have been improperly claimed as privileged, we stand ready to work with Google to resolve issues without the need for court intervention. We also hope that, in light of the concerns raised, Google and its counsel will be more circumspect with its privilege claims and logs in the course of this litigation.

Please respond by Friday, June 11, 2021, with Google's plan to respond to each of these eight issues and a proposed schedule by when Google will reproduce the non-privileged material and provide supplemental privilege log information as requested.

Sincerely,

*/s/ Lauren S. Willard*

cc:
John E. Schmidtlein, Esq. (jschmidtlein@wc.com)
Mark S. Popofsky, Esq. (Mark.Popofsky@ropesgray.com)
Colette T. Connor, Esq. (cconnor@wc.com)

---

[41] *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 17 (D.D.C. 2016), *aff'd* 892 F.3d 1264 (D.C. Cir. 2018); *see also In re Sealed Case*, 676 F.2d 793, 807 & n.44 (D.C. Cir. 1982) (attorney-client privilege construed narrowly and strictly).