IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br><br>**FILED UNDER SEAL** |
| State of Colorado, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**POSITION STATEMENT OF U.S. PLAINTIFFS' REQUEST FOR THE COURT TO COMPEL DISCOVERY FROM APPLE, INC.**

In accordance with the Court's August 13, 2021 Minute Order, Plaintiffs in *United States v. Google LLC* ("U.S. Plaintiffs") submit the following Position Statement on the status of discovery with Apple, Inc. ("Apple").

**POSITION STATEMENT**

U.S. Plaintiffs issued a subpoena to Apple on February 1, 2021. Apple's compliance with that subpoena has been deficient in both the scope and timing of its custodial document productions, and the parties are now at an impasse.

I.      Introduction

Apple's role in this matter cannot be overstated. As Google's most significant distribution partner, Apple is a critical third party in this case. In exchange for default search status on iPhones and other Apple products, Google pays Apple annual search revenues ranging around $8-12 billion, which is 15 to 20 percent of Apple's worldwide net income.[1] Apple now represents the majority of mobile device operating systems (approximately 60 percent),[2] so the exclusive Apple search contract, by itself, effectively closes off general search competitors from about 60 percent of general search queries on mobile devices. Accordingly, Apple's efforts to delay and limit its production reverberate throughout the case.

U.S. Plaintiffs seek an order directing Apple to (1) produce the documents identified as producible by U.S. Plaintiffs' 12 outstanding search strings, (2) complete its document production by September 30, and (3) provide the codewords for the relevant products and issues in the case that are necessary for U.S. Plaintiffs to ensure that Apple properly completes its production responsibilities.

*First*, the Court should order Apple to produce the documents requested by U.S. Plaintiffs in 12 search strings.[3] U.S. Plaintiffs have negotiated at length with Apple, reaching agreement on 33 search strings; the remaining 12 search strings cannot be narrowed any further without depriving U.S. Plaintiffs of documents necessary to pursuing its case against Google. Apple has provided no evidence, other than vague references to burden, for why U.S. Plaintiffs' search

---

[1] Amended Complaint, ECF No. 94, at ¶ 118. *See Mowat Const. Co. v. Dorena Hydro, LLC*, No. 6:14-cv-00094, 2015 WL 13867691 (D. Or. May 18, 2015) (requiring production from a non-party "is especially appropriate given that [the non-party] has a financial interest in the outcome of the case and there is no argument or evidence indicating that the production of these materials will result in [the non-party] paying unreasonable discovery costs").

[2] *Mobile Operating System Market Share in United States Of America - July 2021*, StatCounter GlobalStats (last visited Aug. 17, 2021), https://gs.statcounter.com/os-market-share/mobile/united-states-of-america.

[3] *See* Ex. 1 (chart with outstanding search strings and hit counts).

strings are objectionable. Apple has provided no data showing that documents hitting on the terms in U.S. Plaintiffs' search strings are non-responsive.

*Second*, the Court should order Apple to complete its production by September 30. Apple has produced fewer than 40,000 documents in six-and-a-half months and now estimates that it will not conclude its document production until *mid-November*.[4] Under that timing, after U.S. Plaintiffs complete a reasonable review, depositions of Apple witnesses would not begin before 2022.

*Finally*, the Court should order Apple to (a) immediately identify relevant codewords, and (b) produce additional documents from strings that hit on those codewords within 30 days of identification. During the six months Apple and U.S. Plaintiffs have been negotiating the subpoena, Apple failed to disclose codewords used within the company. This failure undermined the negotiations then taking place. Apple still contends these codewords are not relevant.

## II. The Court Should Order Apple To Produce Documents Sought By U.S. Plaintiffs In 12 Disputed Search Strings

The Court should order Apple to produce the documents sought in the remaining 12 search strings on which U.S Plaintiffs and Apple have been unable to agree. After six months of negotiation—an iterative process that has resulted in compromises on custodians, dates, and search terms—the parties have agreed on 33 out of 45 search strings. Granting further concessions would prejudice U.S. Plaintiffs from obtaining documents that are critical to the presentation of its case.

---

[4] Ex. 3-O, Letter from K. Lent (Apple) to C. Sommer (DOJ) at 5 (Aug. 9, 2021). Page numbers in citations are to the page numbers provided by ECF.

Apple has offered an earlier completion date of mid-October conditioned entirely on further concessions by U.S. Plaintiffs. *Id.*

### A. The Tailored And Narrow Outstanding Search Strings Seek Essential Documents

Apple is a crucial third party in this case because it is Google's most significant distribution partner; Apple's financial interests are deeply aligned with the defendant.



The 12 outstanding search strings target documents that directly impact these issues. For example, one of the outstanding search strings addresses Request 6 in the subpoena, which seeks "documents discussing or addressing any of Apple's efforts to develop, acquire, or partner with a general search service, specialized search service, or other search access point(s) or capabilities." U.S. Plaintiffs' proposed search string is tailored to match the subpoena request through search terms addressing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. U.S. Plaintiffs cannot narrow the existing search string without undermining their ability to obtain documents responsive to the subpoena.

Similarly, U.S. Plaintiffs' complaint alleges that default status is a significant and coveted advantage in internet search because consumers are unlikely to change defaults, presets, and other preinstalled features.[5] Preinstallation and default status is important to Google, and

---

[5] *See* Amended Complaint at ¶¶ 3, 41, 47, 51, 85–86, 118–119.

particularly so on Apple devices.[6] Two other outstanding search strings address Request 22 in the subpoena. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Each of the 12 search strings plays an equally important role.

Any further modification of the 12 search strings would be arbitrary. Put simply: the fat is long gone, only muscle remains. Apple has not provided information to the contrary. It has not indicated that U.S. Plaintiffs' proposed search strings are hitting on non-responsive documents. U.S. Plaintiffs thus ask the Court to resolve this impasse by ordering Apple to produce the documents requested by U.S. Plaintiffs on 12 search strings.

### B. Further Negotiation On Search Terms Will Not Be Productive And Will Only Cause Delay

The outstanding 12 search strings have been tailored to this case, the complaint, and the subpoena through negotiations that have resulted in meaningful compromise. The parties have reached an impasse on those strings after more than six months of negotiations encompassing the exchange of two complete sets of search terms by each party and compromises involving additional term proposals for discrete requests. The parties also participated in approximately 25 calls addressing all manner of outstanding issues, and U.S. Plaintiffs provided, at Apple's request, extensive relevance and search term explanations.[7]

Apple now wishes to engage in an indeterminate number of calls to discuss the outstanding search strings.[8] Given the numerous calls and negotiations that have occurred, U.S.

---

[6] *Id.* at ¶¶ 84–86, 114, 116–117, 118–122.

[7] *See* Ex. 3-B, Letter from C. Sommer (DOJ) to K. Lent (Apple) (Mar. 23, 2021); Ex. 3-J, Letter from C. Sommer (DOJ) to K. Lent (Apple) (June 17, 2021); Ex. 3-K, Letter from C. Sommer (DOJ) to K. Lent (Apple) (July 19, 2021).

[8] Ex. 3-O, Letter from K. Lent (Apple) to C. Sommer (DOJ) at 5 (Aug. 9, 2021).

Plaintiffs do not believe that further negotiation will be productive. More discussions will only cause more delay. The Court has made it clear to U.S. Plaintiffs and Google that discovery must proceed on schedule. Apple's desire to extend negotiations is neither practical nor feasible.

### C. U.S. Plaintiffs Negotiated Search Strings With Apple for Months And Reached Reasonable Compromises

The Court should reject any suggestion by Apple that U.S. Plaintiffs have been unwilling to meet or compromise—indeed, such arguments are risible. Since the subpoena was issued, U.S. Plaintiffs have engaged in approximately *25 meet and confers with Apple* and sent more than 20 letters. In just three of those letters, U.S. Plaintiffs provided almost 50 pages of explanations for subpoena requests and justifications for search string proposals. Indeed, U.S. Plaintiffs have worked diligently to reduce any undue burden imposed on Apple by the subpoena.

For example, Apple objected to the subpoena's definition of "Relevant Product or Services." In response, U.S. Plaintiffs agreed not to pursue discovery on several products or services unless necessary later.[9] Apple characterized this as a "meaningful limitation" that would enable Apple to "expeditiously move forward" with custodians, search terms, and a plan for production.[10]

Similarly, Apple objected to nearly every date in the subpoena; in response, U.S. Plaintiffs explained the relevance of each date range.[11] To resolve Apple's remaining objections, U.S. Plaintiffs acquiesced, agreeing that Apple would produce documents predating 2010 for only five requests.[12]

---

[9] *See* Ex. 3-B, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 4–6, 8 (Mar. 23, 2021).

[10] Ex. 3-C, Letter from S. Sunshine (Apple) to C. Sommer (DOJ) at 2 (Mar. 25, 2021).

[11] *See* Ex. 3-B, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 3 (Mar. 23, 2021).

[12] Ex. 3-I, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 2 (May 28, 2021).

Finally, in late April, Apple unilaterally ended negotiations regarding custodians by giving U.S. Plaintiffs a "best and final" offer.[13] Apple (a) demanded that U.S. Plaintiffs exclude Apple executives from multiple requests, even though these executives participated in search-related negotiations, (b) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs acceded to Apple's demands—which were made without the protracted negotiations Apple now seems to prize.

Accordingly, the Court should reject any suggestion from Apple that U.S. Plaintiffs have truncated the negotiation process, and the Court should order Apple to produce the documents called for by the remaining 12 search strings.[14]

### III. The Court Should Order Apple To Complete Its Document Production By September 30

The Court should order Apple to complete its production by September 30 so that the documents may be reviewed and depositions of Apple's employees can begin this year. Clearly, Apple has information that U.S. Plaintiffs must access before completing its depositions of Google (and perhaps other third parties) in the new year.

Cries of burden should not be heard from Apple, particularly in light of the many delays Apple introduced into this process. Apple received U.S. Plaintiffs' subpoena in February; Apple

---

[13] Ex. 3-G, Letter from K. Lent (Apple) to C. Sommer (DOJ) at 2 (Apr. 29, 2021) ("To be clear, this is not a counterproposal subject to further negotiation, but rather a package deal that represents Apple's best and final offer . . . .").

[14] U.S. Plaintiffs have twice offered to cap Apple's custodial document production. On May 25, 2021, U.S. Plaintiffs proposed a 1.5 million document cap. Ex. 3-H, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 2 (May 25, 2021). With that cap in place, the parties could have worked together to facilitate Apple's review and production of custodian documents. Apple refused. On July 30, 2021, U.S. Plaintiffs offered another document cap to expedite remaining negotiations and provide Apple with certainty on its burden. U.S. Plaintiffs increased the cap to 1.85 million documents to account for pending uncertainty with attachment filtering. Ex. 3-N, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 2 (Aug. 4, 2021). Once again, Apple refused U.S. Plaintiffs' offer. Both caps represented significant concessions by U.S. Plaintiffs, offered in attempts to secure Apple's prompt compliance with the subpoena. Because those efforts were futile, the proffered concessions' utility has dissipated.

immediately refused to conduct custodial interviews or document pulls until it received Google's subpoena in mid-March. Next, Apple refused to begin custodian negotiations until the parties reached *total* agreement on the subpoena's scope.[15] Apple's stated position—that it would not review a single custodial document until the entire search proposal was resolved—was intended to create leverage on U.S. Plaintiffs, as Apple's attorney explained. Apple did not begin reviewing documents until threatened with Court involvement.

At this time, Apple still has refused to tell U.S. Plaintiffs at what pace it is reviewing documents. Apple's statement that it will not complete production until mid-November is a black box. Apple's November proposal is unacceptable and creates precisely the challenges that Apple likely intended when it refused to begin pulling and reviewing months earlier. The Court should order Apple to complete production in a manner that will allow U.S. Plaintiffs to review the documents and begin depositions this year.

## IV. The Court Should Order Apple To Identify All Relevant Codewords

The Court should order Apple to provide the codewords used within the company to refer to projects, people, and other companies, so that those codewords may be included in the searches of Apple's documents. Apple has refused to identify all relevant codewords.

Apple had a burden to provide a prompt and full list of codewords because, as the Court has explained, for U.S. Plaintiffs to "figure out exactly what it needs and figure out what words need to be used to get that information," the producing party has to "do its homework to figure out if there are code words or other types of particular lexicon or lingo that is particular to [the

---

[15] *See* Ex. 3-A, Letter from K. Lent (Apple) to C. Sommer (DOJ) at 3 (Mar. 8, 2021).

producing party] and that . . . would capture this information, to make sure the Department of Justice is aware of it."[16]

Apple has failed to meet this burden, and as a result, it is possible that many, if not all, of the search strings the parties have negotiated are deficient. On three separate occasions in March and April, U.S. Plaintiffs asked Apple to identify all codewords that were relevant to U.S. Plaintiffs' complaint and subpoena.[17] During a meet and confer on May 13, Apple identified just four codewords. For two-and-a-half months, as the parties negotiated search terms, U.S. Plaintiffs relied on Apple's representation that these were the only relevant codewords—tailoring the search terms in reliance on Apple's representation. In late July, however, after reviewing some of Apple's documents and publicly available information, U.S. Plaintiffs discovered that Apple employees used codewords for other, plainly relevant terms, including codewords for "Spotlight" (a search access point for Apple devices), "Safari" (Apple's web browser), and "iOS 14" (the first Apple mobile operating system that allowed users to change browser defaults, e.g., from Safari to Chrome).

After U.S. Plaintiffs raised these missing codewords to Apple, Apple admitted that it had failed to identify them.[18] Nevertheless, Apple has resisted both identifying further codewords and reviewing documents that include codewords.[19] Apple has justified its conduct by claiming that employees stop using a codeword after the corresponding product or service has been launched. But this is both incorrect and irrelevant. To the former, as just one example, U.S. Plaintiffs have

---

[16] Transcript of Feb. 25, 2021 Status Conference, ECF No. 113, at 38–39.

[17] Ex. 3-D, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 4 (Mar. 29, 2021); Ex. 3-E, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 4 (Apr. 5, 2021); Ex. 3-F, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 3 (Apr. 16, 2021).

[18] *See* Ex. 3-M, Letter from K. Lent (Apple) to C. Sommer (DOJ) at 4–5 (July 29, 2021).

[19] *See id.* at 2–3 (claiming that Apple had undertaken a codeword investigation and that Apple was "willing to consider" and further investigate "as needed" any additional codewords that U.S. Plaintiffs provided).

identified a document where Apple employees used a codeword *six years* after Apple launched the related product. As to the latter, for purposes of discovery it does not matter if employees stopped using a codeword—U.S. Plaintiffs seek documents created when the codewords were in use.

To resolve this issue without Court intervention, U.S. Plaintiffs asked Apple to (1) list all relevant codewords; (2) explain the process Apple used to identify those codewords; and (3) explain how Apple determined which codewords were relevant.[20] Apple refused.

U.S. Plaintiffs do not know the extent of Apple's omission and cannot be confident that—without including these codewords—Apple's productions will return all relevant documents. Accordingly, U.S. Plaintiffs ask the Court to order Apple to (1) provide codewords for the words and terms listed in Exhibit 2,[21] and then, (2) produce in 30 days any additional documents resulting when the codewords are inserted into the existing search strings.

## CONCLUSION

For the foregoing reasons, the Court should order Apple to (1) produce the documents requested by U.S. Plaintiffs in 12 search strings, (2) complete document production by September 30, and (3) identify relevant codewords and then produce additional documents from strings that hit on those codewords within 30 days of identification.

Dated: August 17, 2021

                                            Respectfully submitted,

                                            By: */s/ Kenneth M. Dintzer*
                                                Kenneth M. Dintzer
                                                Jesús M. Alvarado-Rivera

---

[20] Ex. 3-L, Letter from C. Sommer (DOJ) to K. Lent (Apple) at 2 (July 27, 2021).

[21] Each request in Exhibit 2 is derived from terms that have been agreed upon in the parties' search term negotiations.

U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*

By:   */s/ Jonathan R. Carter*
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

By:   */s/ Adam Miller*
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By:   */s/ Lee Istrail*
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com

Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By: */s/Daniel Walsh*
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: */s/ Scott L. Barnhart*
Theodore Edward Rokita, Attorney General Scott L. Barnhart, Chief Counsel and Director, Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: */s/ Justin D. Clark*
Justin D. Clark, Deputy Director of Consumer Protection
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of Consumer Protection
Philip R. Heleringer, Assistant Attorney General
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Justind.Clark@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

12

By:   */s/ Stacie L. Deblieux*
Jeff Landry, Attorney General
Stacie L. Deblieux, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
Deblieuxs@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:   */s/ Wisam E. Naoum*
Dana Nessel, Attorney General
Wisam E. Naoum, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
NaoumW1@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:   */s/ Kimberley G. Biagioli*
Kimberley G. Biagioli
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Kimberley.Biagioli@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:   */s/ Hart Martin*
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:   */s/ Mark Mattioli*
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer

Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By:   /s/ *Rebecca M. Hartner*
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy Attorney General
Mary Frances Jowers, Assistant Deputy Attorney General
Office of the Attorney General, State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:   /s/ *Bret Fulkerson*
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:   /s/ *Gwendolyn J. Lindsay Cooley*
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

14

# CERTIFICATE OF SERVICE

I, Kenneth M. Dintzer, hereby certify that on August 17, 2021, I caused a true and correct copy of the foregoing Position Statement of U.S. Plaintiffs' Request for the Court to Compel Discovery from Apple, Inc., with exhibits, to be served on Apple, Inc. by mailing the document electronically to the duly authorized representatives of Apple, Inc. on this case.

By: */s/ Kenneth M. Dintzer*
Kenneth M. Dintzer
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*