# Exhibit A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| United States of America et al. | ) | State of Colorado et al. | ) | Civil Action No. |
|---|---|---|---|---|
| *Plaintiff* | ) | *Plaintiff* | ) | |
| v. | ) | v. | ) | **1:20-cv-03010 (APM)** |
| Google LLC | ) | Google LLC | ) | **1:20-cv-03715 (APM)** |
| *Defendant* | ) | *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Microsoft Corporation, One Microsoft Way, Redmond, WA 98052

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached schedule.

| Place: Williams & Connolly LLP<br>          725 Twelfth Street NW<br>          Washington, DC  20005 | Date and Time:<br><br>          05/13/2021 9:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      4/13/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | /s/ John E. Schmidtlein |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*          Google LLC
_____ , who issues or requests this subpoena, are:

John E. Schmidtlein, 725 Twelfth Street NW, Washington, DC 20005, jschmidtlein@wc.com, 202-434-5901

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:20-cv-03010 (APM); 1:20-cv-03715 (APM)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                           *Server's signature*

                                                    _____
                                                           *Printed name and title*

                                                    _____
                                                           *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**

**DEFINITIONS**

The terms defined below should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure.  These definitions are provided solely for purposes of this Subpoena.

1.    "Addressing" means, in whole or in part, analyzing, constituting, summarizing, reporting on, considering, recommending, setting forth, or describing a subject.  Documents that contain reports, studies, forecasts, analyses, plans, proposals, evaluations, recommendations, directives, procedures, policies, or guidelines regarding a subject should be treated as documents that address the subject.  However, documents that merely mention or refer to a subject without further elaboration should not be treated as documents that address that subject.

2.    "Agreement" means any contract, agreement, or understanding, whether written or oral, formal or informal, express or implicit, including any amendments thereto.

3.    "All" and "any" shall be construed to mean each and every.

4.    "Amazon" means Amazon.com, Inc., its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

5.    "And" and "or" shall be construed to mean "and/or."

6.    "App" or "Application" means any computerized program or software application designed to run on any device for consumer use.

7.    "Apple" means Apple Inc., its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

1

8.      "Bing" refers to Bing and/or Microsoft Bing and any predecessors, including MSN Search, Windows Live Search, and Live Search, as context requires.  It also includes any Microsoft vertical search services or apps.

9.      "Bing toolbar" refers to any Bing toolbar (including Bing Bar) and any predecessors thereof, including the MSN Toolbar.

10.     "Concurrency" means technology that enables the integration of more than one voice assistant on a single device, which can be activated through multiple, simultaneously active hotwords or hardware buttons.

11.     "Communication" means any actual or attempted dissemination, disclosure, transfer or exchange of information, and includes oral discussions, written and electronic correspondence, and voice, telephone and other recorded messages.

12.     "Customer" or "consumer" means an end user, as opposed to a distribution partner.

13.     "Device(s)" means any physical object or device or network of objects or devices, such as a desktop or laptop computer, mobile devices, automotive device, or other physical device, that is capable of running an operating system or connecting to and exchanging data with other devices and systems.

14.      "Discussing" means, in whole or in part, analyzing, constituting, summarizing, reporting on, considering, recommending, setting forth, or describing a subject.  Documents that contain reports, studies, forecasts, analyses, plans, proposals, evaluations, recommendations, directives, procedures, policies, or guidelines regarding a subject should be treated as documents that discuss the subject.  However, documents that merely mention or refer to a subject without further elaboration should not be treated as documents that discuss that subject.

15.     "Digital ad" or "digital advertising" includes all types of ads filled by way of the internet—as opposed to out-of-home, broadcast television, or print—including video ads, display (desktop and mobile) ads, social ads, search ads, in-app ads, native/rich text ads, and any other ad categorized as a type of digital advertising by Microsoft in its ordinary course of business. The terms "digital ad" and "digital advertising" shall be construed broadly and shall include at a minimum the various types of advertising described in the DOJ and Colorado complaints.

16.     "Document" shall be construed in the broadest possible sense consistent with the Federal Rules of Civil Procedure.  "Document" shall mean any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, that is in your possession, custody, or control.  The term includes (without limitation) agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.  The term "document" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form.  The term "document" includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original.  The term also includes information stored in, or

3

accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.  A document is deemed to be in your control, and must be produced, if you have the right to secure the document or a copy thereof from another person.

17.    "Documents sufficient to show" means documents sufficient to provide a true and correct disclosure of the factual matter requested.

18.    "DOJ" means the U.S. Department of Justice and any divisions, employees, agents and representatives, and any other person acting on their behalf.

19.    "Each" and "every" shall be construed to mean each and every.

20.    "Facebook" means Facebook, Inc., its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

21.    "Google" means defendant Google LLC, as well as its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

22.    "Google Assistant" means Google's proprietary voice assistant.

23.    "Including" shall be construed to mean "including, but not limited to."

24.    "DOJ lawsuit" or "DOJ complaint" means the lawsuit or complaint filed by the United States of America, and the States of Arkansas, California, Florida, Georgia, Indiana, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Montana, South Carolina, Texas, and Wisconsin against Google and pending in the United States District Court for the District of Columbia, No. 1:20-cv-03010-APM.

25.    "Colorado lawsuit" or "Colorado complaint" means the lawsuit or complaint filed by the States of Colorado, Nebraska, Arizona, Iowa, New York, North Carolina, Tennessee, Utah, Alaska, Connecticut, Delaware, Hawaii, Idaho, Illinois, Kansas, Maine, Maryland, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Dakota, Vermont, Washington, West Virginia, and Wyoming; the Commonwealths of Massachusetts, Pennsylvania, Puerto Rico, and Virginia; the District of Columbia; and the Territory of Guam against Google and pending in the United States District Court for the District of Columbia, No. 1:20-cv-03715-APM.

26.    "Lawsuit" or "complaint" without further specification means the DOJ lawsuit/DOJ complaint or the Colorado lawsuit/Colorado complaint.

27.    "Local ad" means a local ad as defined by Microsoft or by Google, and similar ads on any other search engine.

28.    "Mobile OS" means system software for a mobile wireless device (e.g., Android, iOS) that manages device hardware and supports application software.

29.    "Nokia" means Nokia Corporation, its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

30.    "Nokia X" means the line of Nokia mobile devices developed to run on a non-CDD compliant version of Android that was commercially launched in or around February 2014.

31.    "OEM" means any manufacturer of a device, including without limitation, all manufacturers of cell phones, tablets, personal digital assistants, laptop computers, desktop computers, and any other device.

32.     "Operating system" means software that controls the operation of a computer or other Device or directs the processing of programs as by assigning storage space in memory and controlling input and output functions.  "Operating System" includes mobile operating systems, operating systems that function on desktops (e.g., Microsoft Windows, macOS, and Linux), operating systems that function on automotive devices, operating systems that function on internet-connected devices, and operating systems that function on all other computers or devices.

33.     "Person" shall include any natural person, corporation, partnership, proprietorship, association, business, company, joint venture, government unit, and other public or private entity or organization.

34.     "Plans" includes preliminary proposals, recommendations, or considerations, whether finalized or adopted.

35.     "Relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

36.     "Search service," "search engine," or "search provider" means a service that allows consumers to find responsive information on the internet by entering keyword queries. Consumers may use search services to perform several types of searches, including navigational queries (seeking a specific website), informational queries (seeking knowledge or answers to questions), and commercial queries (seeking to make a purchase).  Examples of search services include Google, Bing, Yahoo, DuckDuckGo, as well as search engines on social media sites (such as Facebook), retail marketplaces (such as Amazon), and specialized search engines (such as Kayak and Yelp).

37.     "Search access point" means any application, software, or service that is capable of using or invoking an internet search engine.  Examples of search access points include web browsers (mobile and desktop), applications, widgets, and voice assistants.

38.     "Sensitive Personally Identifiable Information" or "sensitive PII" means information or data that would identify an individual, including a person's Social Security Number; or a person's name, address, or phone number in combination with one or more of his/her (a) date of birth; (b) driver's license number or other state identification number, or a foreign country equivalent; (c) passport number; (d) financial account number; or (e) credit or debit card number.

39.     "Sensitive Health Information" or "SHI" mean information or data about an individual's health, including medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally.  SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

40.     "Specialized search engines" or "specialized search services" means any entity that provides a specialized search service, including, but not limited to, Amazon, Pinterest, Rakuten, eBay, Etsy, Craigslist, LinkedIn, Indeed, CareerBuilder, Indeed, Monster, ZipRecruiter, Facebook, Yelp, OpenTable, Foursquare, Urbanspoon, Expedia and affiliates, Priceline and affiliates, Skyscanner, TripAdvisor, and Hipmunk.

41.     "Text ad" or "text advertising" means a search text ad.  Text ads are sold by search engines, typically placed just above or below the organic search results on a search engine results page (SERP), and resemble the organic results that appear on a search engine's SERP,

with a notation that they are "ads" or "sponsored." These definitions shall be at least as broad as the descriptions of "general search text ad" in Paragraphs 30, 97, and 101-105 of the DOJ Complaint.

42.    "Third parties" means any person other than you.

43.    "Third-party browsers" means a browser distributed under a brand that is neither Google nor yours.

44.    "Vertical search service units" means boxes or carousels within a SERP where specialized results from a search are compiled.

45.    "Verizon" means Verizon Communications Inc., its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

46.    "Voice assistant" means the artificial intelligence software accessed by a button or voice command and designed to answer voice-initiated queries.

47.    "Voice Interoperability Initiative" means the program announced on September 24, 2019 by Amazon and described in further detail at https://developer.amazon.com/en-US/alexa/voice-interoperability.

48.    "Web browser" or "browser" means any software that allows the user of a desktop or laptop computer, mobile device, tablet, or similar technology to access or interact with information on the World Wide Web.

49.    "Microsoft," "you," and "your," means Microsoft Corporation, as well as any and all current and former parents, subsidiaries, affiliates, divisions, predecessors, joint-ventures, partners, partnerships, officers, directors, employees, agents and representatives, and any other person acting on Microsoft's behalf.

50.     "Microsoft Advertising" refers to Microsoft's online advertising platform, including ads shown on Bing and through the Yahoo! Bing Network, and including all predecessors (e.g., Microsoft adCenter and Bing Ads).

51.     "Microsoft Search Engine Marketing Tool" refers to any product, service, feature, tool, or functionality you offer customers for search engine marketing, for example, tools described at https://about.ads.microsoft.com/en-us/solutions/tools.

52.     The singular includes the plural and vice versa.

## INSTRUCTIONS

1.      All documents already produced to DOJ in connection with its investigation of Google, and not clawed back, need not be reproduced in response to these document requests, provided you identify the full range of Bates numbers produced to DOJ to allow Google to ensure it has received all such documents.

2.      In addition to the specific instructions set forth below, these document requests incorporate the instructions set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Columbia, and the Stipulation and Order Regarding Discovery Procedure (ESI Order) on January 21, 2021 (ECF #99 in Case No. 1:20-cv-03010-APM) or the operative version of that order in place at the time production is made.  Subject to a valid claim of privilege, the entire document must be produced if any part of that document is responsive.

3.      Unless otherwise stated, these requests are for all otherwise responsive Documents relating to the United States or any part thereof, regardless of where those Documents are kept.

4.      Produce a legible copy of each document requested together with all non-identical copies and drafts of that document.  You should produce all metadata of electronic documents

specified in the ESI Order.  You must retain all of the original documents for inspection or copying throughout the pendency of this case, any appeal(s), and any related proceedings.

5.      These requests are continuing in nature.  Google specifically reserves the right to seek supplementary responses and the additional supplementary production of documents before trial.

6.      Where a claim of privilege or other protection from discovery is asserted in objecting to any request or sub-part thereof, and any document is withheld (in whole or in part) on the basis of such assertion, provide a log (Privilege Log) in accordance with the Amended Scheduling and Case Management Order (ECF #108 in Case No. 1:20-cv-03010-APM) and ESI Order (ECF #99 in Case No. 1:20-cv-03010-APM), or the operative versions of those orders in place at the time you provide a log.

7.      If any document responsive to a particular request contains sensitive PII or SHI that is not responsive to that request, redact the unresponsive sensitive PII or SHI before producing the document.  To indicate that a redaction is on the basis of PII or SHI, rather than privilege, either mark the redaction "PII/SHI" or provide an index that lists such redacted documents by document control number.  If the index is available in electronic form, provide the index in that form.

8.      If documents, data, or other information responsive to a particular request no longer exists for reasons other than your document retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost, list the request to which it was responsive, and list persons with knowledge of such documents, data, or other information.

## DOCUMENTS REQUIRED TO BE PRODUCED

1.      All documents that relate to Microsoft's strategic or business plans regarding search engines, search access points, and search advertising.  Documents within this request

include all documents that discuss or reflect Microsoft's decision to develop, launch, and/or maintain Bing as a search engine.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

2.      All documents that reflect the cost of or investment in any Microsoft search engine, browser, voice assistant, other innovation or application with search functionality, or mobile OS, as well as documents regarding decisions to invest in those products.  Documents within this request include documents sufficient to show yearly cost of and investment in such products.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2000, to present.

3.      All documents that relate to Microsoft's access to and use of click data, query data, or other search-related data or results from third parties or from Microsoft Edge, Internet Explorer, Microsoft toolbars, LinkedIn, or technology within the Windows Operating System. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

4.      All documents that relate to any instance in which Microsoft copied or used Google search results, directly or indirectly, or in which Microsoft attempted to do so. Documents within this request include any discussion, analysis, or consideration of any actual or potential plan to copy Google search results and present them to users as Bing search results. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

5.      All documents that relate to Microsoft's provision of search results or search advertisements to any contractually designated party.  Documents within this request include

actual and draft syndication agreements with DuckDuckGo, Yahoo, Verizon, Amazon and Ecosia, and documents that memorialize or reflect negotiations with any of those companies. Documents within this request also include any documents that relate to any analysis of the impact of syndication agreements on Bing's quality, performance, or monetization.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

6.      All documents that relate to the efficacy of different channels for distributing search engines.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

7.      All documents that relate to agreements, draft agreements, proposals, negotiations, analyses, and communications with Apple, Yahoo, Facebook, Amazon, Verizon, or any third-party browser provider regarding search or search advertising.  Documents within this request include any studies concerning any impact of such agreements on the quality of, pricing for, demand for, or revenue associated with Microsoft's search or search advertising services. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

8.      All documents that relate to any Microsoft attempt or proposal to purchase some or all of Yahoo's business.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2007, to present.

9.      All documents that relate to any consideration, discussion, plan, or proposal to enter into a partnership, joint venture, or other business relationship with another company

12

relating to search or search advertising.  Documents within this request include any internal analyses or presentations relating to a potential sale of Bing, even if not shared with any potential acquirer or other third party.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

10.     All documents that relate to any analysis concerning the number and location of search advertisements on the SERP for Bing or any search engine that relies on Microsoft for search services or search advertising services.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

11.     All documents concerning any proposed or actual licensing or sale of any mapping technology to any auto manufacturer whether as part of a bundle or otherwise, or any collaboration with any provider of mapping software, at any time from January 1, 2018, to present.

12.     All documents that relate to any proposed, potential, or contractual arrangement with another party involving the promotion, preinstallation, or distribution of any Microsoft search engine, browser, voice assistant, or other application with search functionality or access to search functionality on internet-enabled devices.  Documents within this request include all documents relating to Microsoft's strategy and licensing terms with respect to its Jumpstart program.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

13.     All documents that relate to any proposed, potential, or actual arrangement under which another party would agree not to promote, not to preinstall, or not to distribute any non-

Microsoft search engine, browser, voice assistant, or other application with search functionality or access to search functionality on internet-enabled devices.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

14.    All documents that relate to users' ability to change the default search engine on any desktop or mobile device.  This request includes all data and documents that evidence or otherwise disclose the number of occasions or frequency with which users have changed the default search engine to something other than Bing, the number of users who have done so, and the device on which users did so.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

15.    All documents that relate to the download or use of the Chrome browser on devices running any Microsoft operating system or on devices that come with a Microsoft browser preinstalled.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2008, to present.

16.    All documents that relate to the use of Google Toolbar on Internet Explorer.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2000, to present.

17.    All documents that relate to Microsoft's strategy for or reasons for developing the Bing toolbar, including documents that relate to agreements, draft agreements, proposals, negotiations, analyses, and communications with third parties to distribute the Bing toolbar or to integrate or incorporate it within other software.  This request seeks all responsive, non-

14

privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2004, to present.

18.     All documents that relate to the ability of users of Microsoft products to change a default search engine or their behavior in accessing a non-default search engine on any search access point.  Documents within this request include all documents that relate to information on the number of occasions or frequency with which users of Microsoft products accessed or used Google Search or any other non-default search.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

19.     Documents sufficient to show the browsers (including their default search engines) and the Microsoft applications preinstalled on Microsoft devices at any point since January 1, 2005, including any devices with Windows or any other operating system, distributed in the United States.  Documents produced in response to this request shall be sufficient to identify both the preinstalled browsers and applications and, for each browser and application, the number of devices on which that browser or application has been preinstalled.

20.     All documents that relate to any plan or effort by Microsoft to impact users' ability to change the default search engine on any device, browser, or application to a search engine other than Bing or that relate to how easy or difficult it is for users to change the default search engine on any device, browser, or application to a search engine other than Bing.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

21.    All documents that relate to the installation or use of Bing extensions on Chrome. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2009, to present.

22.    All documents that relate to user complaints or confusion regarding Bing's status as a default search engine.  Documents within this request include documents that relate to user complaints concerning users' ability to change the default search engine on Microsoft devices and documents that relate to users' belief that they are using Google Search when they are actually using Bing.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

23.    All presentations, including any PowerPoint presentations, and notes or scripts associated with them made to investors or at conferences relating to Bing's performance, and all documents or data underlying any statements about Bing's performance.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from May 28, 2009, to present.

24.    All documents that relate to Microsoft's promotion or marketing of any search engine, browser, voice assistant, or other application with search functionality.  Documents within this request include documents that relate to the ways in which Microsoft advertises or otherwise encourages downloads and usage of Bing.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

25.    All documents that relate to any analyses or experiments concerning the quality or performance of Google or the quality or performance of Bing.  Documents within this request

include documents relating to any analyses or experiments comparing the quality or performance of Bing with any other general search engine, specialized search engine, social network, online retailer, website, or application.  Documents within this request also include comparisons of quality or performance with respect to specific categories of search (such as travel or shopping, Facebook's "Places" functionality, Walmart's website) and any analyses or experiments relating to the impact of Bing's local, travel, or shopping vertical search service units on Bing's local, travel, or shopping search quality.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2000, to present.

26.     All documents that relate to any comparison of the relevance or precision of advertisements displayed on Microsoft Advertising to the relevance or precision of advertisements displayed on Google.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2006, to present.

27.     All documents that relate to the effect of any contractual agreement on Microsoft's ability to evaluate or improve Microsoft's search services or search advertising services, including with respect to quality, pricing, demand, query volume, and revenue.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

28.     All documents that relate to any analysis or consideration by Microsoft of any search innovation or search advertisement innovation by Google.  Documents within this request include any analyses or consideration of newly released Google Search features and any analyses or consideration of any improvements to Google's search services, including the incorporation of

new Natural Language Processing technologies.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

29.     All documents regarding the quality and performance of Internet Explorer and Edge, including comparisons to the quality of Chrome and/or other browsers.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

30.     All documents that relate to user preferences for search engines.  Documents within this request include surveys, studies, or analyses concerning or comparing user preferences for Google as opposed to Bing.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

31.     All documents that relate to requests for, receipt of, and use of consumer or third-party data as part of Microsoft's provision of search or search advertising services.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

32.     Documents sufficient to show, on an annual basis, the number of Microsoft employees who work or worked on the development and improvement of Bing and their educational and professional backgrounds.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

33.     All documents that relate to the possible or actual launch of a search service or search advertising services by a third party.  This request seeks all responsive, non-privileged

documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

34.     All documents that relate to the projected or actual amount of click and query data available for use by Microsoft's algorithms, the source of any such data, and Microsoft's use of such data.  Documents within this request include all documents that relate to the use of click data, historical queries, or search logs to assess, test and/or improve the Bing search product, search results, or search ad results.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

35.     All documents that relate to the amount, source, and time period of click and query data that Microsoft uses to improve the quality of its advertising algorithm(s), including the impact on Bing quality of any increase or decrease in click and query data used.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

36.     Documents sufficient to show the extent to which Bing's overall quality is attributable to algorithms trained with user click or query data.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

37.     All documents that relate to agreements with third parties to improve Bing's quality or to the potential of agreements with third parties to improve Bing's search or search ads quality.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

38.     To the extent not produced in response to Request 37, all documents that relate to any effect of any third-party agreements or transactions on Bing's search or search ads quality, including improving Microsoft's ability to enhance its scale in search and search advertising. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

39.     All documents and data concerning Microsoft's investment in its web crawler and search index, the size of its search index, the number of webpages that its web crawler accesses, and the frequency with which Microsoft re-crawls existing pages.  Documents within this request include all documents that relate to any impact on search quality resulting from the frequency and extent of web crawling and indexing.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

40.     All documents that relate to or identify the firms and products Microsoft considers its competitors for the provision of search services or search advertising.  Documents within this request include all documents that relate to or identify competition between Google and Microsoft with regard to search engines, browsers, voice assistants, connected cars, or other applications with search functionality.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

41.     All documents that concern competition between any Microsoft operating system and any operating system that runs on a mobile device.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2003, to present.

42.     All documents that relate to analyses or experiments concerning how users decide where to initiate specific categories of search.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

43.     All documents that relate to analyses or experiments concerning multihoming and user substitution across general search engines, specialized search engines, social networks, online retailers, and other websites and applications to conduct specific categories of searches. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

44.     All documents that relate to or identify Microsoft Advertising advertisers that also advertise using Google.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

45.     All documents that relate to the substitutability or complementarity of Microsoft's search advertising products with other forms of advertising.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

46.     All documents that relate to or identify Microsoft's share of any market relating to or including Bing, any Microsoft browser product or any Microsoft advertising product that Microsoft tracks in the ordinary course of business.  Documents within this request include any documents that relate to or identify third-party estimates or analysis of the company's market share.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

47.     Documents sufficient to show how Microsoft has measured the extent of Bing's profitability since 2005.

48.     All documents that relate to any investments, actions, or changes Microsoft made to its search engine in response to other general search engines, specialized search engines, social networks, online retailers, and other websites and applications.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

49.     All documents that relate to any comparison between the quality or performance of the Windows Phone Operating System and Android.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2010, to present.

50.     All documents that relate to Microsoft's decision to discontinue development of the Windows Phone Operating System.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2017, to present.

51.     All documents that relate to any analysis of the projected or actual effect of acquiring Nokia's Devices and Services division on Microsoft's search or search advertising business or the deployment of the Windows Phone Operating System.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2013, to present.

52.     All documents that relate to Microsoft's decision to use the Android operating system on certain Microsoft devices, including the Surface Duo.  This request seeks all

responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2017, to present.

53.     To the extent not produced in response to Request 52, all documents relating to the distribution of Bing on any Microsoft device.  Documents within this request include any documents forecasting usage of Bing or revenue associated with the use of Bing on any Microsoft device.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

54.     All documents that relate to negotiations with Google respecting any device running the Android operating system.  Documents within this request include all documents that relate to any analysis by Microsoft to enter or not to enter into any Android-related agreement— including a Mobile Application Distribution Agreement or a revenue-sharing agreement—with Google.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2008, to present.

55.     All documents that relate to the Anti-Fragmentation Agreement or the Android Compatibility Commitment, or relate to Microsoft's ability or desire to develop incompatible Android devices or distribute its applications on incompatible Android devices.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2008, to present.

56.     To the extent not produced in response to Request 55, all documents that relate to any benefits to Microsoft, Microsoft applications or services, developers, or users associated with devices that comply with the Google Compatibility Definition Document (CDD) as compared with devices that are incompatible with the CDD.  This request seeks all responsive,

non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2008, to present.

57.     To the extent not produced in response to Request 56, all documents that relate to the benefits to Bing or other Microsoft services of promotion on compatible devices rather than on incompatible devices.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2008, to present.

58.     All documents that relate to Symbian, including incompatible implementations of Symbian by implementers and the reasons for Symbian's decline.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2007, to present.

59.     All documents that relate to Microsoft's decision to cease support for or sales of Nokia X mobile devices.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2014, to present.

60.     Documents sufficient to show the characteristics of each type of digital advertising that Microsoft has sold on its own properties or has syndicated to third-party publishers since January 1, 2006.

61.     All documents that relate to analyses or experiments concerning the number of ad slots on Microsoft's properties.  Documents within this request include documents or data that relate to the impact of changing the number of ad slots on search ad revenues or on search quality.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present

62.     Documents sufficient to show the rules and design of any auction used since January 1, 2006, to price or allocate advertisements on Microsoft's properties.  To the extent that Microsoft used different auction mechanisms for different Microsoft properties or different types of advertisements, produce documents sufficient to show the rules and design of each auction mechanism.

63.     To the extent not produced in response to Request 62, all documents that relate to the impact of changing the auction reserve price on search ad revenues.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2006, to present.

64.     All documents that relate to competition between Microsoft's search advertising services and other advertising services or advertising types.  Documents within this request include any communications concerning advantages of Bing search advertisements over Google's, Amazon's, or Facebook's advertising platforms.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2006, to present.

65.     All documents that relate to the substitutability or complementarity between search-engine optimization (SEO) and search-engine marketing (SEM).  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2009, to present.

66.     All documents that relate to whether Microsoft has made any algorithm changes to facilitate or discourage SEO.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2009, to present.

67.     All documents that relate to Microsoft Advertising ad monetization rates, ad click-through rates, or return on investment.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2006, to present.

68.     All documents that relate to or identify any specialized search products contemplated or offered by Microsoft or as part of Bing.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

69.     All documents not produced in response to Request 68 that relate to any analysis by Microsoft whether to develop internal specialized search functionalities and whether to partner with a third party to provide specialized search content.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

70.     All documents that relate to or identify competition between Bing and any specialized search engines, social networks, online retailers, or other websites and applications.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

71.     All documents that relate to or identify competition between and among Microsoft Advertising and search ads offered by any specialized search engines, social networks, online retailers, or other websites and applications.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

72.    All documents that relate to any potential or actual partnerships between and among Microsoft and specialized search engines pertaining to search or search advertising.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

73.    All documents that relate to the extent to which specialized search services, whether created by Microsoft or provided by a third party, are the top organic search result on any SERP.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

74.    All documents that relate to how Microsoft determines whether to promote its own or another third party's specialized search products in response to a query.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

75.    All documents that contain information on the criteria used by Microsoft to select the results displayed in Bing's vertical search service units.  Documents within this request include all documents that relate to any payments made to Microsoft to display content in a vertical search service unit.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

76.    All documents that relate to experiments Microsoft conducted on its vertical search service units.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2005, to present.

77.    All documents requested by or produced in response to any request of any Plaintiff in the DOJ lawsuit or the Colorado lawsuit.  Documents within this request include all documents requested by or produced in response to the January 26, 2021 subpoena served by the United States Department of Justice and fourteen states and all documents requested by or produced in response to the February 24, 2021 subpoena served by the States of Colorado, Nebraska, Arizona, Iowa, New York, North Carolina, Tennessee, Utah, Alaska, Connecticut, Delaware, Hawaii, Idaho, Illinois, Kansas, Maine, Maryland, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Dakota, Vermont, Washington, West Virginia, and Wyoming; the Commonwealths of Massachusetts, Pennsylvania, Puerto Rico, and Virginia; the Territory of Guam; and the District of Columbia.

78.    All documents that relate to communications with any domestic or foreign government agency relating to an investigation into alleged anticompetitive practices by Google or any market study relating to mobile OSs, web browsers, internet search engines, digital advertising, mobile devices, or applications for mobile devices.  Documents within this request include documents, data, testimony, declarations, and affidavits submitted to the foregoing entities in connection with such an investigation or market study.

79.    All documents that relate to communications addressing or discussing any Plaintiff's investigation into Google, or this litigation.

80.    All documents and assessments concerning Microsoft's participation in choice screens in European Union countries.  Documents within this request include all analyses concerning the impact of the European Commission's "browser ballot."  Documents within this request also include all analyses concerning Microsoft's choice to participate or not participate in

choice-screen auctions in European Union countries and the impact of inclusion in the choice

screen on Bing users and query volume in those countries.  This request seeks all responsive,

non-privileged documents in Microsoft's possession, custody, or control created, altered, or

received at any time from January 1, 2010, to present.

81.    All documents that relate to Microsoft's decision to end voice assistant products,

services, applications, functionality, or support for integration with any third party.  This request

seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control

created, altered, or received at any time from January 1, 2019, to present.

82.    All documents that relate to concurrency or the Voice Interoperability Initiative,

including but not limited to documents relating to Microsoft's decision to become or not become

a member of the Voice Interoperability Initiative, as well as any changes in participation or

membership over time.  This request seeks all responsive, non-privileged documents in

Microsoft's possession, custody, or control created, altered, or received at any time from January

1, 2019, to present.

83.    All documents that relate to customer preferences among voice assistants, use of

voice assistants to complete actions, use of multiple voice assistants (i.e., multihoming), or the

ability to switch between voice assistants, including documents and/or data relating to the

relative importance, if any, of preinstallation or default settings on customer selection or use of a

voice assistant.  This request seeks all responsive, non-privileged documents in Microsoft's

possession, custody, or control created, altered, or received at any time from January 1, 2014, to

present.

84.    All documents that relate to interest in, the effect of, challenges associated with,

or customer demand for concurrency.  This request seeks all responsive, non-privileged

documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2018, to present.

85.     From January 1, 2015 to present, on a monthly basis, number of queries on Bing by voice assistants, separately by voice assistant, by device type, OS, OEM, access point (e.g., Edge, Bing search app, Alexa app).

86.     All documents that relate to any actual or potential program for offering consumers rewards for using Bing.  This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, or received at any time from January 1, 2010, present.

87.     Documents sufficient to show the following aspects of Microsoft's search organization:

   a.     The organizational structure of Microsoft's product development group responsible for online search, search advertising, mobile search distribution, and desktop search distribution;

   b.     The individuals at Microsoft in management or supervisory positions with responsibility for: (1) development, sales, and marketing of Microsoft's digital advertising services; (2) communicating or working with Google relating to Search Ads 360; and (3) developing or maintaining relationships with specialized vertical providers;

   c.     The number of Microsoft employees whose job responsibilities relate to search, with numbers broken out separately by type of employee and by category of search;

d.      The number of Microsoft employees whose job responsibilities relate to search ads;

e.      The number of Microsoft employees whose job responsibilities relate to search text ads;

f.      The number of Microsoft employees whose job responsibilities relate to both search and search ads;

g.      The number of Microsoft employees whose job responsibilities relate to non-search forms of digital ads;

h.      Whether Microsoft has a dedicated engineering team devoted to search ads, and the extent to which Microsoft's search engineers and search ads engineers overlap;

i.      The extent to which Microsoft's search engineers and search ad engineers overlap; and

j.      The extent to which Microsoft's search ads engineers and Microsoft's engineers devoted to other forms of digital ads overlap.

88.     Documents sufficient to show return on investment or return on advertising spend from advertising through any source of inventory where Microsoft's Search Engine Marketing Tool allocates spend, including Google Search or Bing, from January 1, 2007 to the present.

89.     Documents sufficient to show the features supported by Microsoft's SEM for any general search engines, and any limitations on the interoperability of Microsoft's SEM with any general search engines, from January 1, 2007 to the present.

90.     All documents and data that relate to or identify any Microsoft tools, functionality, or product features used by advertisers to direct advertising to particular customers or groups of customers, and the adoption of such features by advertisers, from January 1, 2007 to the present.

91.     All documents that relate to or identify the tools, functionality, or product features offered by Microsoft used to determine the effectiveness of a particular advertisement or advertising campaign.  Documents within this request include tools available to advertisers to track such metrics as click-through rate or conversions, from January 1, 2007 to the present.

92.     All documents that relate to communications regarding Search Ads 360 with:

   a.     any domestic or foreign government agency concerning an investigation into alleged anticompetitive practices by Google or any market study concerning SEM tools or Search Ads 360, or

   b.     any other third party.

93.     All documents that relate to Microsoft's own development of any auction-time or auto-bidding feature(s) for Microsoft Advertising, Microsoft SEM, Bing Ads, or any other Microsoft advertising product or service, from January 1, 2007 to the present.  Documents responsive to this request include documents relating to:

   a.     Time period for the development of the feature(s);

   b.     Total costs associated with the development of the feature(s);

   c.     Functionality of the feature(s);

   d.     Customer demand for the feature(s);

   e.     Number of Microsoft's employees working on the feature(s) during each calendar year of the feature development;

   f.     Advantages or disadvantages for customers using the feature(s); and

     g.     Any SEM tool, demand-side platform (DSP), or other third party that has integrated or sought to integrate the feature(s).

94.     All communications between Microsoft and any SEM tool, DSP, or other third party regarding the development of any auction-time or auto-bidding feature(s) for Microsoft Advertising, Bing Ads, or any other Microsoft advertising product or service, including documents sufficient to show, from January 1, 2007 to the present:

     a.     Identity of each third party with whom Microsoft communicated about development;

     b.     Time period for the development of the features(s) by the third party;

     c.     Total costs associated with the development of the feature(s);

     d.     Functionality of the feature(s);

     e.     Customer demand for the feature(s);

     f.     Number of Microsoft employees working on the feature(s) during each calendar year of the feature development; and

     g.     Advantages or disadvantages for customers using the feature(s).

95.     All documents comparing Microsoft's auction-time or auto-bidding feature(s) with any other bidding strategies available via SEM tools, DSPs, or native tools that allow advertisers to buy advertising inventory directly, from January 1, 2007 to the present.  Documents within this request include any comparison between Microsoft's auction-time or auto-bidding feature(s) and another platform's auction-time bidding or intraday bidding.

96.     All complaints Microsoft has received about the quality or effectiveness of Bing Ads and/or Microsoft search advertising, the return on investment (ROI) from spend on Bing as

compared to other platforms, or the features or functionalities of Microsoft search advertising, from January 1, 2007 to the present.

97.     All documents that relate to customer requests Microsoft received for the development of an auction-time or auto-bidding feature, or call extensions, for Bing by Google, Marin, Kenshoo, Adobe, or any other provider of SEM tools or DSP, from January 1, 2007 to the present.

98.     All documents that relate to customer communications to Microsoft or Google regarding support for Bing functionality in Search Ads 360, from January 1, 2007 to the present.

99.     All documents that relate to studies, analyses, or reports discussing optimization of search engine marketing campaigns using auction-time bidding rather than intraday or other bidding strategies, and/or advertisers' ROI when using auction-time bidding rather than intraday or other bidding strategies, from January 1, 2007 to the present.

100.     All documents that relate to estimates Microsoft has prepared or caused to be prepared regarding the total cost of developing an auction-time bidding integration for Search Ads 360 or any other SEM tool, from January 1, 2007 to the present.

101.     All technical design documents and specifications Microsoft has prepared or caused to be prepared regarding the development of an auction-time bidding integration for Search Ads 360 or other SEM tool, from January 1, 2007 to the present.

103.    To the extent not produced in response to Request 94, all documents that identify features offered by each SEM tool that integrates with Microsoft and/or Bing, and customer demand for such features, from January 1, 2007 to the present.

104.    All internal documents or analyses Microsoft has conducted showing that auction-time bidding features "steer" or direct bidding opportunities from one search engine to another, from January 1, 2007 to the present.

### Data Requests

105.    From January 1, 2009, to present, on a daily basis produce data broken out for the United States and worldwide, separately by device type (e.g., desktop, laptop, mobile phone, tablet), operating system, browser, mobile search app, search syndication partner, computer OEM, query category (e.g., apparel, real estate, vehicles), any query sub-category Microsoft tracks (e.g., shopping clothes, shopping electronics), for all ads and then separately by ad type (e.g., text, product, local ads) and independent software vendor and toolbar distribution partner, for Bing, comprising the following amounts:

   a.    Number of unique search advertisers[1];

   b.    Number of queries performed;

   c.    Search ad revenue generated;

   d.    Number of search ads;

   e.    Number of search ads that received clicks (excluding spam clicks);

   f.    Number of conversions;

   g.    Number of navigational queries;

---

[1] For purposes of this request, an advertiser should be considered the final purchaser of the ad, not the ad agency.  If advertisers are not tracked in this way, please provide a description of how a unique advertiser is defined in the data.

h.      The average click-through rate for search ads;

i.      Number of queries performed on a Surface Duo device, with figures for the Edge Browser and all other browsers broken out separately;

j.      Number of fresh and long-tail queries received on (a) Apple iPhones & iPads, (b) Apple MacBooks, (c) Android smartphones and tablets, (d) Microsoft smartphones and tablets, (e) Amazon tablets and (f) Windows PCs, and (g) other devices;

k.      The number of queries with no ads (i.e., search results only include organic results);

l.      The average number of ads shown;

m.      The average number of ads appearing above organic results, overall and by ad type (e.g., search ad, display ad);

n.      The total number of clicks;

o.      The organic click-through-rate;

p.      Number of queries with vertical search service units shown on the SERP, location of those vertical search service units on the SERP, and identity of those vertical search service units;

q.      Number of clicks on Bing's vertical search service units and identity of vertical search service units; and

r.      Number of queries that did not lead to a click on the SERP.

106.    Submit data sufficient to show for each year from 2020 to present the number of web pages indexed by Bing.

36

107.    Provide data from June 1, 2020 to present reflecting the costs and margins for each of Microsoft's owned and operated subsidiaries.

108.    Provide data from June 1, 2020 to present reflecting the costs and margins for Bing.

109.    On a monthly basis starting June 2020, provide product telemetry data (including reports or analyses of telemetry data) maintained by Microsoft from any operating system, operating system component, web browser, or search engine.

110.    From January 2015, to the present, on a daily basis, data on Bing search ad auctions, broken out for the United States and worldwide, and separately by device type (e.g., desktop, tablet, or mobile phone), type of search ad auction (e.g., auctions for text, product, or local ads), and specialized category of bidded keywords that are held for the search engine's first results page, comprising the following:

    a.    Average auction reserve price in USD;

    b.    Average number of ad slots per auction;

    c.    Average auction reserve quality score, if different from the average reserve price;

    d.    Average number of bidders[2] per auction;

    e.    Total number of unique bidders for the month;

    f.    Average total search advertising spend per bidder in the month;

    g.    Average winning bid for the highest positioned ad in USD;

---

[2] For purposes of this request, a bidder should be considered the final purchaser of the ad, not the ad agency.  For example, if an ad is shown for the Nike webpage, the advertiser would be Nike, Inc. and not an ad agency that Nike pays to manage its campaigns. If advertisers are not tracked in this way, please provide a description of how a unique advertiser is defined in the data.

h.      Average winning bid for the second highest positioned ad in USD;

i.      Average winning bid for the third highest positioned ad in USD;

j.      Average clearing price, or cost-per-click if clicked, for the highest positioned ad in USD;

k.      Average clearing price, or cost-per-click if clicked, for the second highest positioned ad in USD;

l.      Average clearing price, or cost-per-click if clicked, for the third highest positioned ad in USD;

m.      Average cost-per-click paid in USD;

n.      Percent of auctions where the lowest positioned ad shown had a clearing price that was equal to the reserve price;

o.      Percent of auctions where a product or service of an advertiser whose search ad was shown also showed up as an organic search result; and

p.      Percent of auctions where a product or service of an advertiser whose search ad was shown also showed up as an organic search result and the organic link was clicked on.

111.    On a daily basis for the period January 1, 2010 to present, provide data on each Bing search advertising customer for the United States separately by device type comprising the following:

a.      Name of the customer;

b.      Category or industry of the customer;

c.      Total search advertising spend;

d.      Total search advertising spend on text ads;

     e.      Total search advertising spend on product ads;

     f.      Total search advertising spend on local ads;

     g.     Total number of ads;

     h.     Total number of text ads;

     i.      Total number of product ads;

     j.      Total number of local ads;

     k.     Total number of clicks;

     l.      Total number of text ad clicks;

     m.    Total number of product ad clicks;

     n.     Total number of local ad clicks; and

     o.     Total number of navigational queries.

112.    From January 1, 2020 to present, on a daily basis, produce data on ad load and navigational queries on Bing broken out for the United States and worldwide, and separately by device type (e.g., desktop, tablet, mobile phone), query category, and ad type comprising the following:

     a.     Number of commercial queries;

     b.     Number of non-commercial queries;

     c.     Number of queries for which no top text ads were served;

     d.     Number of queries receiving at least one top ad;

     e.     Number of queries for which 1 top text ad was served;

     f.      Number of queries for which 2 top text ads were served;

     g.     Number of queries for which 3 or more top text ads were served;

     h.     Total revenue for highest positioned text ad on queries for which at least one

text ad was served;

i.      Total search advertising revenue from top ads;

j.      Number of top text ads;

k.      Number of top text ad clicks;

l.      Number of navigational queries for which no top text ads were served;

m.      Number of navigational queries for which 1 top text ad was served;

n.      Number of navigational queries for which 2 top text ads were served;

o.      Number of navigational queries for which 3 or more top text ads were served;

p.      Number of navigational queries that received organic clicks that referred the user to each of the specialized search services (e.g., Amazon, Expedia, Yelp, and any Google or Microsoft specialized search services);

q.      Number of navigational queries that received search ad clicks that brought the user to each of the specialized search services (e.g., Amazon, Expedia, Yelp, and any Google or Microsoft specialized search services);

r.      Number of non-navigational queries that received organic clicks that referred the user to each of the specialized search services (e.g., Amazon, Expedia, Yelp, and any Google or Microsoft specialized search services); and

s.      Number of non-navigational queries that received search ad clicks that brought the user to each of the specialized search services (e.g., Amazon, Expedia, Yelp, and any Google or Microsoft specialized search services).

113.      From January 1, 2020 to the present, on a daily basis, produce data on navigational queries and referrals, broken out for the United States and worldwide, and

separately for the specialized search service operated by the companies listed in the footnote[3] and Google, by device type (e.g., desktop, tablets, and mobile phones), search category (e.g., shopping, local, and travel), ad type (e.g., text, product listing, and local) and search service owned or supported by Microsoft (e.g., Yahoo, Bing, etc.), comprising the following amounts:

     a.    The number of navigational queries that received organic clicks referring the user to the specialized search service;

     b.    The number of navigational queries that received organic clicks referring the user to Google.com;

     c.    The number of navigational queries that received search ad clicks referring the user to the specialized search service, and the total dollar amount associated with such clicks;

     d.    The number of non-navigational queries that received organic clicks referring the user to the specialized search service; and

     e.    The number of non-navigational queries that received search ad clicks referring the user to the specialized search service, and the total dollar amount associated with such clicks.

114.    From January 1, 2010 to present, on a monthly basis, produce data on user traffic for each Microsoft owned and operated specialized search service (e.g., Bing Shopping, MSN Travel) broken out for the United States and worldwide, and separately by device type, operating system, and source of traffic (including direct navigation, paid referral from each search engine,

---

[3] Amazon; Walmart; Target; Kohl's; eBay; Yelp; TripAdvisor; ANGI; Houzz; Thumbtack; Facebook; Expedia; Booking; Hotels.com; Airbnb; United Airlines; Southwest Airlines; Delta Airlines; American Airlines; Marriott; Hilton; and any specialized search service offered by Google.

organic referrals from each search engine, and access through mobile applications) comprising the following:

      a.      Number of users;

      b.      Number of queries;

      c.      Number of page visits;

      d.      Organic click-through-rate;

      e.      Ad click-through-rate;

      f.      Number of ad clicks;

      g.      Number of ads;

      h.      Average number of ads shown, overall and by ad type (e.g., search ad, display ad);

      i.      Search ad revenue;

      j.      Search ad spend, separately for each platform if applicable;

      k.      Search text ad spend, separately for each platform if applicable;

      l.      Digital ad spend, if applicable;

      m.      Total advertising spend, if applicable;

      n.      Display ad revenue;

      o.      Display ad spend, if applicable; and

      p.      Purchase revenue, or revenue received from conversions.

115.    From January 2010, to present, on a monthly basis, provide data for top text ads on Bing in the United States separately by device type (e.g., desktop, tablet, and mobile phone) and query specialized category (e.g., auto, finance, travel) comprising the following:

      a.      For queries that showed exactly one top text ad:

i.      Number of queries (i.e., queries that had exactly one top text ad shown);

ii.     Number of non-top text ads;

iii.    Revenue from non-top text ads;

iv.    Number of clicks on non-top text ads;

v.     For the top-ranked eligible bids for text ads:

     1.   Revenue earned from bids that received the top rank;

     2.   Number of clicks on ads that received the top rank;

     3.   Total bids for bids that received the top rank (i.e., the sum of the dollar amounts of all the bids of the top rank); and

     4.   Total bid revenue for bids that received the top rank (i.e., the sum of revenue if advertisers had paid their bid per click);

vi.    Number of queries with more than 1 eligible bid;

vii.   Total bids by second-ranked eligible bids (i.e., the sum of the dollar amounts of all the bids of the 2nd rank);

viii.  Average reserve price, expressed in USD and as a percentage of the top-ranked bids;

ix.    Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result; and

x.     Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result and the organic link was clicked on.

b.   For queries that showed exactly two top text ads:

 i.   Number of queries (i.e., queries that had exactly two top text ads shown);

 ii.   Number of non-top text ads;

 iii.   Revenue from non-top text ads;

 iv.   Number of clicks on non-top text ads;

 v.   For the top-ranked eligible bids for text ads:

  1.   Revenue earned from bids that received the top rank;

  2.   Number of clicks on ads that received the top rank;

  3.   Total bids for bids that received the top rank (i.e., the sum of the dollar amounts of all the bids of the top rank);

  4.   Total bid revenue for bids that received the top rank (i.e., the sum of revenue if advertisers had paid their bid per click);

 vi.   For the second-ranked eligible bids for text ads:

  1.   Revenue earned from bids that received the second rank;

  2.   Number of clicks on ads that received the second rank;

  3.   Total bids for bids that received the second rank (i.e., the sum of the dollar amounts of all the bids of the second rank);

  4.   Total bid revenue for bids that received the second rank (i.e., the sum of revenue if advertisers had paid their bid per click);

 vii.   Number of queries with more than 2 eligible bids;

 viii.   Total bids by third-ranked eligible bids (i.e., the sum of the dollar amounts of all the bids of the 3rd rank);

      ix.      Average reserve price, expressed in USD and as a percentage of the top- and second-ranked bids;

      x.      Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result; and

      xi.      Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result and the organic link was clicked on.

c.      For queries that showed exactly three top text ads:

      i.      Number of queries (i.e., queries that had exactly three top text ads shown);

      ii.      Number of non-top text ads;

      iii.      Revenue from non-top text ads;

      iv.      Number of clicks on all non-top text ads;

      v.      For the top-ranked eligible bids for text ads:

        1.    Revenue earned from bids that received the top rank;

        2.    Number of clicks on ads that received the top rank;

        3.    Total monthly bids for bids that received the top rank (i.e., the sum of the dollar amounts of all the bids of the top rank);

        4.    Total bid revenue for bids that received the top rank (i.e., the sum of revenue if advertisers had paid their bid per click);

      vi.      For the second-ranked eligible bids for text ads:

        1.    Revenue earned from bids that received the second rank;

2.   Number of clicks on ads that received the second rank;

3.   Total bids for bids that received the second rank (i.e., the sum of the dollar amounts of all the bids of the second rank);

4.   Total bid revenue for bids that received the second rank (i.e., the sum of revenue if advertisers had paid their bid per click);

vii.   For the third-ranked eligible bids for text ads:

1.   Revenue earned from bids that received the third rank;

2.   Number of clicks on ads that received the third rank;

3.   Total bids for bids that received the third rank (i.e., the sum of the dollar amounts of all the bids of the third rank);

4.   Total bid revenue for bids that received the third rank (i.e., the sum of revenue if advertisers had paid their bid per click);

viii.   Number of queries with more than 3 eligible bids;

ix.   Total bids by fourth-ranked eligible bids (i.e., the sum of the dollar amounts of all the bids of the 4th rank);

x.   Average reserve price, expressed in USD and as a percentage of the top-, second-, and third-ranked bids;

xi.   Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result; and

xii.   Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result and the organic link was clicked on.

    d.    For queries that showed exactly four top text ads:

        i.    Number of queries (i.e., queries that had exactly four top text ads shown);

        ii.    Number of non-top text ads;

        iii.    Revenue from non-top text ads;

        iv.    Number of clicks on all non-top text ads;

        v.    For the top-ranked eligible bids for text ads:

            1.    Revenue earned from bids that received the top rank;

            2.    Number of clicks on ads that received the top rank;

            3.    Total bids for bids that received the top rank (i.e., the sum of the dollar amounts of all the bids of the top rank); and

            4.    Total bid revenue for bids that received the top rank (i.e., the sum of revenue if advertisers had paid their bid per click);

        vi.    For the second-ranked eligible bids for text ads:

            1.    Revenue earned from bids that received the second rank;

            2.    Number of clicks on ads that received the second rank;

            3.    Total bids for bids that received the second rank (i.e., the sum of the dollar amounts of all the bids of the second rank); and

            4.    Total bid revenue for bids that received the second rank (i.e., the sum of revenue if advertisers had paid their bid per click);

        vii.    For the third-ranked eligible bids for text ads:

            1.    Total revenue earned from bids that received the third rank;

            2.    Number of clicks on ads that received the third rank;

3. Total bids for bids that received the third rank (i.e., the sum of the dollar amounts of all the bids of the third rank); and

4. Total bid revenue for bids that received the third rank (i.e., the sum of revenue if advertisers had paid their bid per click);

viii. For the fourth-ranked eligible bids for text ads:

1. Total revenue earned from bids that received the fourth rank;

2. Number of clicks on ads that received the fourth rank;

3. Total bids for bids that received the fourth rank (i.e., the sum of the dollar amounts of all the bids of the fourth rank); and

4. Total bid revenue for bids that received the fourth rank (i.e., the sum of revenue if advertisers had paid their bid per click);

ix. Number of queries with more than 4 eligible bids;

x. Total bids by fifth-ranked eligible bids (i.e., the sum of the dollar amounts of all the bids of the 5th rank);

xi. Average reserve price, expressed in USD and as a percentage of the top-, second- , third-, and fourth-ranked bids;

xii. Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result; and

xiii. Percent of auctions where a product or service of an advertiser whose text ad was shown also showed up as an organic search result and the organic link was clicked on.

116.    For the first page of the search results for each search query done in the United

States, separately for each internet search engine owned, controlled, or supported by Microsoft

(e.g., Bing, MSN, Yahoo, Ecosia, DuckDuckGo), from (i) February 3, 2020, to February 9, 2020,

and (ii) February 2, 2015, to February 8, 2015, produce the following data:

   a.    search event ID;

   b.    date of the search;

   c.    time of the search in Pacific Time Zone;

   d.    unhashed search query string;

   e.    indicator for whether the search query was a head, torso, or tail
         query;

   f.    indicator (0 or 1) for if each of the highest positioned, second highest
         positioned, third highest positioned, fourth highest positioned, fifth
         highest positioned, sixth highest positioned, seventh highest
         positioned, eighth highest positioned, ninth highest positioned, and
         tenth highest positioned organic result was clicked;

   g.    number of SERP features on the first page of the SERP;

   h.    for each SERP feature, an indicator (0 or 1) for the presence of the
         SERP feature;

   i.    for each SERP feature, the predicted click-through rate for the SERP
         feature;

   j.    for each SERP feature, an indicator (0 or 1) for if the SERP feature
         was clicked;

   k.    Destination domain of each of the highest positioned, second highest

positioned, third highest positioned, fourth highest positioned, fifth

highest positioned, sixth highest positioned, seventh highest

positioned, eighth highest positioned, ninth highest positioned, and

tenth highest positioned organic results;

l. Destination domain of each SERP feature;

m. indicator (0 or 1) for whether the search was a navigational search;

n. indicator (0 or 1) for whether the search was a commercial query;

o. specialized searches (i.e., category of the search query with top

levels and more granular subgroups such as "Science/Astronomy" or

"Science/Chemistry");

p. device type (e.g., computer, tablet, or mobile phone);

q. browser;

r. operating system;

s. search access point;

t. total number of top text ad spots available;

u. number of text ads;

v. number of text ads that appeared above the organic results;

w. number of right-hand side text ads;

x. number of product ads;

y. number of local ads;

z. indicator (0 or 1) for if a Google map showed up on the results page;

aa. total number of all ads (including text, products, local, etc.);

bb. number of clicks on text ads;

cc.     number of clicks on right-hand side text ads;

dd.     number of clicks on product ads;

ee.     number of clicks on local ads;

ff.     total number of clicks on all ads; and

gg.     zip code for IP address of the search.

117.    From 2005 to present, on a monthly basis, query volume and distribution payments, including gross and net revenues, pursuant to arrangements with Apple for Bing distribution, by device type and operating system and separately by:

a.     Safari homepage;

b.     Feature on Safari bookmark;

c.     Default menu on Safari;

d.     Siri;

e.     Spotlight; and

f.     Any other distribution.

118.    From 2012, to the present, on a monthly basis, produce data on Bing Maps user traffic separately by device type (e.g., desktop, tablet, and mobile phone), operating system, and method of access (e.g., Bing Maps app or search on Bing.com) comprising the following amounts:

a.     number of users;

b.     number of queries:

i.     for a specific numeric address; and

ii.     not for a specific numeric address (e.g., gas station);

c.     for each category identified in b.i and b.ii above, the total number of queries:

     i.     resulting in the user requesting map-based directions to a site in the query results;

     ii.    resulting in the user calling a phone number shown in the query results;

     iii.   resulting in the user visiting a website shown in the query results;

     iv.   resulting in the user taking any other action available (e.g., ordering food or making a reservation); identify each such action and provide the total number of queries for each action; and

    d.    for each category identified in c.i through c.iv above, any ad revenue associated with such queries.

119.    From 2008 to present, on a monthly basis, data sufficient to determine ad spend Bing receives through each campaign management tool, including Marin, Kenshoo, and SA360, by device type and OS.

120.    From January 1, 2010, to present, on a monthly basis produce data broken out for the United States and worldwide:

    a.    the percentage of Edge and Internet Explorer users who performed search queries  on Bing.com and also visited Amazon.com, Facebook.com, Twitter.com, Pinterest.com, eBay.com, Yelp.com, and Expedia.com in the same period;

    b.    the percentage of Edge and Internet Explorer users who performed search queries on Google.com and also visited Amazon.com, Facebook.com, Twitter.com, Pinterest.com, eBay.com, Yelp.com, and Expedia.com in the same period; and

c.      the percentage of Edge and Internet Explorer users who performed search

queries  on both Bing.com and Google.com.