# Exhibit C

| | |
|---|---|
| **From:** | Arteaga, Juan |
| **Sent:** | Thursday, September 30, 2021 3:58 PM |
| **To:** | Herrmann, Karl (ATR); DeBernardis, Alexis Victoria |
| **Cc:** | Murdock-Park, Erin (ATR); Wright, Catharine (ATR); Ballou, Brendan (ATR); Spinelli, Nicholas (ATR); Feder, Morgan |
| **Subject:** | RE: Samsung and Samsung Next |

Karl:

We are deeply disappointed that Plaintiffs have decided to return to their unproductive tactic of seeking to unilaterally impose unreasonable deadlines and preconditions to the parties' discussions. In addition, we are deeply troubled by the fact that Plaintiffs appear to be reneging on the parties' prior agreements. For instance, the parties expressly agreed to engage in good faith negotiations regarding potential modifications to the search strings based on the custodian hit reports. *See* 8/25/21 SEA Ltr. to DOJ at 4 ("As also agreed during our August 20 meet and confer, these hit reports will be used by SEA and Plaintiffs to determine whether any changes need to be made to the search strings and whether any individuals should be dropped based on low search term hit counts. Both sides have agreed to engage in these discussions in good faith."). In direct contradiction to this agreement, Plaintiffs now seek to require SEA to agree within 48 hours to several surprise preconditions before even being "willing to consider" any proposed search string modifications despite the fact that the draft search strings would require SEA to incur the significant cost and burden of reviewing approximately 1.2 million documents for just the first seven agreed-upon custodians.

Likewise, Plaintiffs' current position is contrary to the parties' prior agreement to "negotiate a 'timely' and 'reasonable' production schedule that contains target dates by which SEA would complete 25%, 50%, 75%, and 100% of its document production" provided that such a schedule "balance[s] the timing needs of Plaintiffs with the cost and burden on non-party SEA and SEA's discovery obligations in other matters." 9/13/21 SEA Ltr. to DOJ at 6. Notably, after agreeing to Plaintiffs' request to negotiate a "timely" and "reasonable" production schedule, SEA committed, as a sign of cooperation and good faith, to move forward with producing material for the first seven agreed-upon custodians and to make an "initial production within two weeks of the search strings being finalized after each side review[ed] the hit reports and ma[de] any necessary adjustments [to the search strings]." 9/15/21 J. Arteaga Email to K. Hermann. Despite these agreements and commitments, Plaintiffs now demand that SEA agree within 48 hours to complete its entire production within six weeks, while we still have no agreement regarding search strings given Plaintiffs' latest maneuvering.

We are confident that the Court will find Plaintiffs' current negotiation tactics and disregard for their prior commitments to be not only unreasonable but inconsistent with their Rule 45 obligation to minimize unnecessary cost and burden on third parties. We are also confident that the Court will find Plaintiffs' six week production schedule to be both unreasonable and impractical for several reasons. As you know, the Court has found Plaintiffs' discovery requests to be overly broad and unreasonable on multiple occasions already.

*First*, SEA cannot be expected to agree to a six week production deadline without first knowing the total universe of documents that will need to be reviewed. As you know, SEA is still in the process of preparing hit reports (a process that requires SEA to collect and export the ESI to a third-party vendor) for the two final custodians, who were identified as agreed-upon custodians by Plaintiffs only a few weeks ago. Based on the volume of material in the custodial files for these individuals and the hit return rates for the other custodians, we fully expect that a significant amount of documents will need to be reviewed for each of these custodians.

*Second*, Plaintiffs' position ignores the fact that the parties expressly agreed to have separate search string negotiations for the final two agreed-upon custodians based on the hit reports for these custodians.  *See* 9/15/21 J. Arteaga Email to K. Hermann.  Under Plaintiffs' current position and compressed schedule, there would be no room for such negotiations.

*Third*, as we have told Plaintiffs, SEA has not yet completed its custodian negotiations with Google.  Based on our discussions with Google's counsel to date, we believe it is highly likely that Google will insist on the addition of other custodians.  (Our hope is to finalize our custodian negotiations with Google in the coming days.)  SEA should have the benefit of knowing the total number of custodians for whom it will need to produce material before being forced to agree to an expedited production schedule for a large volume of material that is similar to the schedules reserved for emergency proceedings.

*Fourth*, Plaintiffs' insistence that SEA complete its review of nearly 1.2 million documents – a figure that will significantly increase when the material for the two other agreed-custodians and any additional custodians requested by Google are added – within six weeks shows a complete disregard for the steps needed to collect, process and review documents and thereafter prepare for them production.  Plaintiffs' position also shows a complete disregard for the cost and burden that such a compressed production schedule would impose on non-party SEA, which has discovery obligations in many other matters.

*Finally*, Plaintiffs assert that the six week production schedule that they seek to unilaterally impose on SEA is reasonable because Apple was supposedly required to "complete substantial production of documents from a review set estimated at 1.5 million documents in six weeks."  As an initial matter, we note that there is a significant difference between a party being required to *substantially complete* its document production and *complete* its production, which is what Plaintiffs are demanding of SEA.  Moreover, while we do not know all of the details of Plaintiffs' dispute with Apple, it is our understanding that the 1.5 million figure cited by Plaintiffs was pre-duplication and/or pre-search strings.  Thus, we believe the amount of documents that Apple had to review may have been lower than 1.5 million.  In any event, if the current search strings are used, we anticipate that SEA will need to review more than 1.5 million documents given that (i) the search strings hit on 1.2 million documents for the first seven agreed-upon custodians, (ii) there is a significant amount of material available for the other two agreed-upon custodians, and (iii) Google is highly likely to request the addition of other custodians.  Given that SEA is not a party to this litigation, we ask that Plaintiffs provide us the transcripts for the hearings cited in their email, as well as copies of transcripts for any other hearings that Plaintiffs believe are relevant to assessing the reasonableness of their scheduling demand.  We also ask that Plaintiffs identify any public filings that they believe are relevant to the reasonableness of their scheduling demand in order to allow SEA to have the benefit of reviewing these filings.

With respect to the TAR issue, Plaintiffs fully know that we asked whether Plaintiffs would be open to exploring the possibility of using TAR because we thought it provided the best option to ensuring that SEA could accommodate Plaintiffs' request for a speedy production while minimizing the cost and burden that would be imposed on non-party SEA given that SEA would otherwise have to review more than a million documents.  As we indicated, if Plaintiffs were open to the possibility of using TAR, our plan would be to use as a template a previously DOJ-approved TAR protocol to help expedite the parties' ability to reach an agreement.  Thus, we are perplexed by Plaintiffs' claim to have found it "deeply frustrating" that SEA asked whether Plaintiffs would be open to using TAR due to the high hit returns for the first seven agreed-upon custodians – a claim that is deeply at odds with the tone and substance of the parties' conversations on this topic.  We are surprised by Plaintiffs' feigned frustration is compounded by the fact that the ESI Order expressly contemplates the potential use of TAR.  *See* ESI Order Section III, ¶ 9.

In citing their supposed frustration, Plaintiffs reference the significant work that has been done with respect to the search strings.  But most of this work was done by SEA.  We drafted the search strings and thereafter prepared revised versions based on Plaintiffs' request.  In addition, the parties spent minimal time negotiating the search strings because we accommodated almost all of Plaintiffs' edits as part of SEA's good faith efforts to reach a final resolution that would allow it to move forward with producing documents.  Plaintiffs also complain that SEA did not inquire about Plaintiffs' willingness to use TAR earlier in the process.  However, we raised this question immediately upon seeing the large hit

returns for the first seven agreed-upon custodians. We ask Plaintiffs to identify an earlier point when they believe this question should have been raised.

Lastly, we want to address a few incorrect statements in Plaintiffs' email. Plaintiffs claim that SEA has produced "fewer than 1,100 documents to date." This statement is false because SEA has produced a higher number of documents in response to the subpoenas. In addition, this statement conveniently ignores the large volume of data that SEA has produced, as well as the material that SEA produced in response to Plaintiffs' CID. Furthermore, Plaintiffs make much of the fact that they issued their subpoena in February but fail to acknowledge that they wasted several months trying to circumvent the Hague Convention by improperly seeking to use their SEA subpoenas to obtain discovery of SEA's Korean parent company all while failing to make any effort to negotiate a more appropriate scope of the subpoena for third-party SEA. When Plaintiffs finally requested SEA custodians in July, we made more than a good faith effort to reach a final agreement as quickly as possible even though Plaintiffs' scorched earth negotiation tactics created unnecessary delays and disputes.

Please advise us as to Plaintiffs' availability to have a call tomorrow.

███████████████████████████████████████████████████████

Best,
Juan

---

**From:** Herrmann, Karl (ATR) <Karl.Herrmann@usdoj.gov>
**Sent:** Wednesday, September 29, 2021 6:23 PM
**To:** Arteaga, Juan <JArteaga@crowell.com>; DeBernardis, Alexis Victoria <ADeBernardis@crowell.com>
**Cc:** Murdock-Park, Erin (ATR) <Erin.Murdock-Park@usdoj.gov>; Wright, Catharine (ATR) <Catharine.Wright@usdoj.gov>; Ballou, Brendan (ATR) <Brendan.BallouKelley@usdoj.gov>; Spinelli, Nicholas (ATR) <Nicholas.Spinelli@usdoj.gov>; Feder, Morgan <Morgan.Feder@ag.ny.gov>
**Subject:** RE: Samsung and Samsung Next

External Email

Juan,

I write to follow up on our call yesterday. As we have repeatedly explained, it is vital for Samsung to begin production and to finalize a production schedule for our Feb. 8 subpoena. To that end, we ask Samsung to commit to the following deadlines.

First, to meet the deadlines required by the CMO entered by the Court, we ask Samsung to commit to completing its production by Nov. 7, 2021. We ask to receive this commitment by October 1, 2021. We have some flexibility in helping Samsung reach this production date; however, if Samsung cannot commit to this production date by October 1, we will turn to the Court next week and ask the Court to intervene and set a deadline for Samsung's production. Samsung's suggestion that it might turn to the TAR process this late in the process is deeply frustrating given the time invested in the custodian/search string approach and the availability of TAR as an alternative to search strings for the past eight months. However, if Samsung has a proposal by which it can make the necessary production by November 7 using the TAR approach, we are willing to listen to this. However, it is vital that Samsung understand that any discussion of TAR will not change the November 7, deadline.

Second, we understand Samsung is considering proposing modifications to the search strings that we have negotiated. Although we believe the hit results obtained from the search strings as negotiated are reasonable given the nature of the case, we are willing to consider these alternative search strings provided (1) Samsung will commit to immediately begin review of documents under the current proposed search strings for custodians ████████████████, and ███████, and Samsung will also produce documents under the search strings identified as DOJ RFP 10; DOJ RFP 14;

and DOJ RFP 15, and (2) Samsung make these alternative proposals by October 1. Moreover, changes to the search strings should not compromise the November 7 production date. Accordingly, any modified search strings that the Plaintiffs accept should immediately be put to use in preparing Samsung's production. For modified search strings that we reject, we will provide a best and final offer on October 4. Any impasse will immediately be raised to the Court. Also, on October 1, Samsung should provide a hit report that shows de-duplicated hits by search string. This hit report will include the final two custodians, ███████████. This will permit us to properly evaluate Samsung's modified search strings and the actual burden arising from the current search strings.

Samsung has had our subpoena in hand since February 8; we have received fewer than 1,100 documents to date. We absolutely insist that Samsung complete the production before the subpoena's 9-month anniversary; if Samsung is not prepared to do this, it should be prepared to explain to the Court why it cannot do so. We note that, based upon our understanding of Samsung's estimated review set, the proposal we set forth above is precisely what the Court expects from important third parties such as Samsung, Google's largest Android partner. For example, the Court ordered Apple to complete substantial production of documents from a review set estimated at 1.5 million documents in six weeks. Hr'g. Tr. at 11:24-12:12:3, 22:20-22:22, 29:25-30:2 (Aug. 19, 2021). Indeed, the Court has been consistently clear that third parties cannot delay and has invited the parties to enlist its help at any time. Hr'g Tr. at 47:11-48:1 (May 27, 2021).

Best,
Karl

---

**From:** Herrmann, Karl (ATR)
**Sent:** Friday, September 24, 2021 4:26 PM
**To:** Arteaga, Juan <JArteaga@crowell.com>; DeBernardis, Alexis Victoria <ADeBernardis@crowell.com>
**Cc:** Murdock-Park, Erin (ATR) <Erin.Murdock-Park@usdoj.gov>; Wright, Catharine (ATR) <Catharine.Wright@usdoj.gov>; Ballou, Brendan (ATR) <Brendan.BallouKelley@usdoj.gov>; Spinelli, Nicholas (ATR) <Nicholas.Spinelli@usdoj.gov>; Feder, Morgan <Morgan.Feder@ag.ny.gov>
**Subject:** Samsung and Samsung Next

Juan,

We address the Samsung and ████████████ subpoenas below. We think a meet-and-confer on these subjects would be helpful for resolving any outstanding issues on the two subpoenas. We are available before 2pm on Wednesday, September 29.

I.   **Samsung**

Thank you for passing along the hit reports for the SEA search strings:

First, we appreciate and accept the modifications Alexis outlined in her Sept. 21, 2021 email.

Second, we believe that the hit reports demonstrate that these are well-crafted search strings, however, we will consider in good faith any modifications SEA proposes (by way of example, replacing "AND" with the limiter of "w/20," or modifying individual terms that are returning very large hits). We ask that SEA propose modifications prior to the meet-and-confer so we may productively discuss such proposals.

Third, per our discussion earlier this week, I raised the issue of Technology Assisted Review (TAR) with our team and our experts on the topic. The Division strongly discourages the use of search terms to collect documents that will then go through TAR. TAR requires a broader corpus of documents to ensure the proper operation of the platform, and search terms—themselves an inexact tool for document collection—may exclude many responsive documents that will render TAR ineffective. Thusly, and because we have cooperatively negotiated search strings to date and will consider in good faith any modification designed to reduce burden without excluding relevant documents, we believe that continuing to finalize our search strings will be the fastest path forward.

Nevertheless, if SEA has a TAR proposal to replace the parties' negotiated search terms, we will consider such a proposal in good faith, however, we would expect: (1) to quickly reach agreement on terms acceptable to DOJ and (2) for Samsung to make a demonstrably faster production under TAR that would make up for the extra time needed to negotiate and finalize TAR details. I note that the Division maintains a publicly available predictive coding model agreement located within the Electronic Discovery page. *See* https://www.justice.gov/atr/electronic-discovery. If SEA would like to pursue this route, we would ask that you send your TAR proposal in advance of our call next week to facilitate a productive discussion.





\*        \*        \*

We look forward to a productive discussion.

Best,
Karl


Karl Herrmann
Trial Attorney
U.S. Department of Justice, Antitrust Division
Technology and Digital Platforms Section
450 Fifth Street, NW
Washington, DC 20001
(202) 476-0316 (mobile)