# Exhibit D

| | |
|---|---|
| **From:** | Herrmann, Karl (ATR) <Karl.Herrmann@usdoj.gov> |
| **Sent:** | Friday, October 8, 2021 10:41 AM |
| **To:** | Arteaga, Juan; DeBernardis, Alexis Victoria |
| **Cc:** | Murdock-Park, Erin (ATR); Wright, Catharine (ATR); Spinelli, Nicholas (ATR); Feder, Morgan |
| **Subject:** | RE: U.S./Colorado v. Google: SEA Subpoena |

External Email

Juan,

We have received your response. We cannot agree to the terms in your counter proposal. As indicated in our October 6 email, given this impasse, we will contact the Court this morning and request its assistance in setting the terms and schedule for production. Because these issues are time sensitive but also complicated, we will request an expedited briefing schedule in advance of any hearing. Patterned off of the approach the Court sought in prior disputes, we propose that, on October 13, the parties file simultaneous 10-page briefs addressing the issues explained in our October 6 email. The Plaintiff States in *State of Colorado, et al.* v. *Google* join in these positions.

We also will notify Google before we contact the Court. We have already notified the Plaintiff States in *State of Colorado, et al.* v. *Google*, who are copied here.

Best,
Karl

---

**From:** Arteaga, Juan <JArteaga@crowell.com>
**Sent:** Thursday, October 7, 2021 6:56 PM
**To:** Herrmann, Karl (ATR) <Karl.Herrmann@usdoj.gov>; DeBernardis, Alexis Victoria <ADeBernardis@crowell.com>
**Cc:** Murdock-Park, Erin (ATR) <Erin.Murdock-Park@usdoj.gov>; Wright, Catharine (ATR) <Catharine.Wright@usdoj.gov>; Spinelli, Nicholas (ATR) <Nicholas.Spinelli@usdoj.gov>; Feder, Morgan <Morgan.Feder@ag.ny.gov>
**Subject:** [EXTERNAL] RE: U.S./Colorado v. Google: SEA Subpoena

Karl:

We are deeply disappointed with Plaintiffs' unreasonable and unrealistic position.  While SEA's proposal reflected a careful balancing of Plaintiffs' timing interests and Plaintiffs' Rule 45 obligation to minimize undue cost and burden on non-party SEA, Plaintiffs' immediate rejection of this proposal shows that Plaintiffs are unfortunately determined to burden the Court with an unnecessary discovery dispute.  If Plaintiffs opt to litigate this issue, we want to ensure that the record is abundantly clear and thus address below each point raised in your email.

In a final attempt to reach a compromise, we have set forth below a proposed shortened production schedule which is extremely aggressive given that there are nearly 4 million documents available for the agreed-upon custodians and the high costs that would have be incurred in order to produce the responsive material within weeks as Plaintiffs are demanding.  If Plaintiffs reject this compromise and seek to compel SEA to comply with their five-week production schedule, SEA will make a cost-shifting request under Federal Rule of Civil Procedure 45(d)(2)(B)(ii), which courts have held makes cost-shifting mandatory where, as here, a non-party has incurred "significant expenses" in responding to a subpoena.

   A.   Plaintiffs' Timing Arguments Find No Support In The Record

In demanding that SEA agree to review the nearly 4 million documents available for the nine agreed-upon custodians and complete its production of responsive material within five weeks, Plaintiffs have repeatedly referenced the time that has elapsed since serving their subpoenas on SEA. In doing so, Plaintiffs have conveniently ignored the fact that any supposed delay has been caused by their own actions. As you know, Plaintiffs served SEA with overly broad subpoenas that sought to require SEA to search the files of all Samsung entities worldwide for material that may be responsive to over 100 "all" documents and data requests for nearly a 15-year period. Despite serving such unduly burdensome subpoenas, Plaintiffs refused for weeks to identify their priority requests or otherwise limit the scope of the subpoenas.

After subjecting SEA to the costs associated with several unproductive meet and confers, Plaintiffs finally decided to identify their priority requests and take steps to narrow certain aspects of their facially improper subpoenas. Notably, Plaintiffs did not request any SEA custodians when identifying their priority requests and proposing certain custodians. Instead, Plaintiffs chose to focus their discovery efforts on SEA's Korean parent company, Samsung Electronics Co., Ltd. ("SEC"), by requesting material from the files of seven current and former non-U.S. SEC employees. Consistent with its written response and objections to the subpoenas, SEA objected to Plaintiffs' SEC-related discovery requests because SEA lacks possession, custody and control over its parent company's files and because any discovery of SEC – which is not a recipient of the subpoena – must be pursued under the Hague Convention. As you know, the parties fully addressed these issues over the course of multiple meet and confers.

While preserving its objections, SEA sought to reach a compromise with Plaintiffs by agreeing to inquire about SEC's willingness to voluntarily make material from the files of the requested employees available to SEA. Thereafter, SEA informed Plaintiffs that SEC was willing to provide SEA with responsive material from the files of two current SEC employees but warned Plaintiffs that the volume of material produced for these employees could be small due to SEC's limited document retention. With this express warning, Plaintiffs accepted this compromise and chose to continue focusing their discovery efforts on SEC. Again, Plaintiffs did not raise the topic of SEA custodians, let alone identified any potential SEA custodians, which, as noted below, did not occur until early July 2021 (*i.e.,* approximately six months after Plaintiffs issued their overly broad subpoenas).

After being informed that SEC found a limited amount of responsive material in the files of the two agreed-upon SEC employees, Plaintiffs embarked on a scorched earth campaign that sought to unilaterally impose on SEA completely unrealistic production schedules. For instance, on July 6, 2021, Plaintiffs sent a letter to SEA demanding for the first time that SEA commence producing documents for 10 custodians – who had never been previously discussed and included non-SEA employees – within three weeks. Prior to this letter, Plaintiffs had not requested any SEA custodians because their focus had been on trying to improperly obtain discovery of SEC – a non-U.S. company and non-recipient of the subpoenas – without going through the Hague Convention process.

Despite the unreasonableness of Plaintiffs' demand, SEA sought to reach a compromise by informing Plaintiffs that it was willing to agree to a reasonable number of appropriate SEA custodians but could not agree to non-SEA custodians because SEA does not have access to or control over the files of other Samsung entities. While initially agreeing to limit their custodian requests to SEA employees, Plaintiffs quickly backtracked and once again began demanding that SEA agree to produce material for (i) the 10 previously requested custodians plus (ii) custodians that SEA had proposed as a potential compromise for Plaintiffs agreeing to withdraw their request for certain custodians. In addition, Plaintiffs began threatening to seek a court order requiring SEA to produce materials for SEC employees who Plaintiffs had previously dropped as requested custodians. These are only a few examples of the counter-productive tactics employed by Plaintiffs that only served to delay the parties' ability to reach agreement on custodians.

On September 13, 2021, SEA agreed to produce responsive material for nine custodians after Plaintiffs finally decided which custodians being discussed they wanted to select. To ensure the parties' ability to reach agreement, SEA exceeded its discovery obligations by agreeing to produce emails for non-SEA employees where these employees appeared on the "from," "to," or "cc" lines of emails contained in the email mailboxes of SEA and/or Samsung Telecommunications America ("STA") employees. (As we have explained, SEA and STA merged in 2015.) In addition, SEA sought to expedite the parties' ability to reach agreement on search strings by undertaking the burden of drafting

the search strings as requested by Plaintiffs and thereafter accepting almost all of Plaintiffs' edits. All of this occurred within the last few weeks.

As requested by Plaintiffs, SEA promptly produced the hit reports for the first seven agreed-upon custodians while it continued to gather and process the incredibly large volume of data that is available for the final two custodians selected by Plaintiffs. Given that the negotiated search strings captured approximately 1.2 million documents for the first seven custodians alone, SEA immediately asked whether Plaintiffs would be open to exploring the possibility of using TAR in order to ensure that Plaintiffs would receive documents in an expeditious manner while minimizing the cost and burden on non-party SEA. Despite initially indicating an openness to TAR, Plaintiffs sent an email to SEA on September 29, 2021 claiming to be "frustrated" by SEA's inquiry about the possibility of using TAR and demanding that SEA agree within 48 hours to complete its review and production of all the documents captured by the negotiated search strings for all nine custodians – which SEA estimates to be nearly 2.5 million documents – within five weeks. Consistent with its efforts to avoid burdening the Court with any unnecessary discovery disputes, SEA met and conferred with Plaintiffs and subsequently provided Plaintiffs with an aggressive production schedule that takes into account the resources and processes needed to collect, process, review, and produce millions of documents that hit on Plaintiffs' preferred search terms, including a proposal to use TAR, rather than manual review, to prioritize and expedite the identification and production of responsive documents. Reflecting a complete disregard for these realities and the cost and burden they are seeking to unilaterally impose on SEA, Plaintiffs described this good faith and reasonable proposal as "unworkable," apparently believing that their demand that SEA manually review and produce millions of documents within five weeks is much more workable.

Finally, we note that Plaintiffs' assertion that SEA's proposal "leaves Plaintiffs with only 3 months left of fact discovery to process, review, and make use of these documents" is baseless. As noted above, any timing issues that now supposedly exist are due to Plaintiffs' own conduct, especially Plaintiffs' conscious decision to try to evade the federal rules by improperly seeking to use the subpoenas issued to SEA to obtain discovery of SEC. Furthermore, Plaintiffs' assertion ignores the fact that SEA's proposal provides for rolling productions and that SEA's document production would be 50% complete in November. Thus, Plaintiffs would have many more than three months to review and use SEA's documents before the close of fact discovery.

    **B.    Plaintiffs' Current Proposal Is Unrealistic And Would Subject SEA To Unnecessary And Wasteful Expenses**

In rejecting SEA's proposal to use TAR, Plaintiffs' counter-propose that SEA can conduct a linear (document-by-document) manual review of the more than 1.2 million documents captured by the search strings for responsiveness, privilege, and confidentiality provided that SEA (i) agree within 24 hours to Plaintiffs' search string modifications and (ii) commit to substantially completing its document production by November 14. As Plaintiffs fully know, the option of conducting a linear review of this volume of documents within this timeframe is not realistic. As we have explained, it would cost SEA more than $3.5 million and require several months to complete a linear review of the documents captured by the search strings, even if SEA were to immediately accept all of Plaintiffs search string modifications. Furthermore, Plaintiffs are well aware that SEA cannot employ any modified search strings without first securing Google's agreement to the modifications. As we have made clear, SEA cannot predict if and how quickly Google would agree to any search string modifications.

In their current proposal, Plaintiffs also indicate that SEA can use TAR provided that SEA (i) agrees within 24 hours to apply TAR across all of the approximately 4 million documents collected from the nine agreed-upon custodians and (ii) refrains from using the negotiated search strings to narrow the review set. Plaintiffs' position is belied by the fact that Plaintiffs are willing to cull the data set using search terms before manual review, so have already agreed to forego production of documents that do not hit on those terms. Moreover, it is well-established that TAR is more effective on a "richer" data set (*i.e.,* where the portion of responsive to non-responsive documents is greater), as will inevitably result following application of the search strings, so SEA's proposed process will both increase overall effectiveness and timing of production. Further, SEA's proposed TAR workflow will allow the identification of the documents most likely to be responsive (*i.e.,* highly ranked) earliest. Thus, unlike Plaintiffs' manual review proposal, SEA's TAR proposal will allow Plaintiffs' to receive the most likely responsive documents earlier among SEA's rolling production.

To support their position, Plaintiffs assert that DOJ has never agreed to the use of TAR after the application of search strings. Earlier today, I provided you an example of an investigation where DOJ did in fact agree to the use of TAR after the application of search strings. Moreover, courts have held that the use of TAR after the application of search strings is appropriate in order to permit parties to more efficiently identify relevant material and minimize unnecessary cost and burden.

Under Plaintiffs' TAR proposal, SEA would have to incur several hundreds of thousands of dollars more in costs to process and review material that by definition is irrelevant to this litigation because it was not captured by Plaintiffs' extremely broad search strings. We are confident that the Court would view Plaintiffs' insistence that SEA be subjected to this large and wasteful cost as wholly unreasonable and would grant SEA's cost-shifting request under Federal Rule of Civil Procedure 45(d)(2)(B)(ii), which, as noted above, courts have construed to require cost-shifting where, as here, a non-party has incurred "significant expenses" in responding to a subpoena. We also want to make clear that SEA's cost-shifting request would not be limited to these unjustifiable expenses.

Furthermore, Plaintiffs' demand that SEA waste significant time and resources dealing with a large volume of documents that were not captured by their preferred search strings is directly contrary to Plaintiffs' efforts to secure substantial completion of SEA's production on an expedited basis. If Plaintiffs want to insist on a production schedule typically reserved for emergency proceedings, they should be willing to employ a process that allows SEA to focus on the relevant material rather than expending an extraordinary amount of time and money dealing with material that has been ruled out as responsive by Plaintiffs' broad search strings.

### C. SEA's Good Faith Counter-Proposal

As an initial matter, we want to make clear that SEA's October 5, 2021 proposal was not only a good faith proposal but it set forth a very aggressive production schedule given the volume of material that must be reviewed and produced. Thus, we believe that Plaintiffs' rejection of SEA's proposal was wholly unreasonable and counter-productive. In any event, in an effort to avoid burdening the Court with an unnecessary discovery dispute, SEA will agree to the below shortened production schedule provided that Plaintiffs agree that SEA can apply TAR to the documents that are captured by the negotiated search strings when applied to the ESI for the nine agreed-upon custodians. As you will see, this shortened production schedule accepts Plaintiffs' initial production date of October 22 and moves up SEA's substantial completion date to December 7. After speaking with our vendor, we believe that this is the most aggressive production schedule that SEA is able to propose given the volume of material that must be reviewed and produced and the resources and processes that are required for such a large document production project.

- **October 22, 2021**: Initial production

- **November 5, 2021**: 25% of SEA production

- **November 19, 2021**: 50% of SEA production

- **December 1, 2021**: 75% of SEA production

- **December 8, 2021**: Substantial completion of SEA production

Rather than waste the Court and parties' time and resources, we believe Plaintiffs should agree to this reasonable and realistic proposal so that SEA can focus on beginning its rolling productions to Plaintiffs. To the extent that it would be helpful, we are available to meet and confer.

Best,
Juan

**From:** Herrmann, Karl (ATR) <Karl.Herrmann@usdoj.gov>
**Sent:** Wednesday, October 6, 2021 4:28 PM
**To:** Arteaga, Juan <JArteaga@crowell.com>; DeBernardis, Alexis Victoria <ADeBernardis@crowell.com>
**Cc:** Murdock-Park, Erin (ATR) <Erin.Murdock-Park@usdoj.gov>; Wright, Catharine (ATR) <Catharine.Wright@usdoj.gov>; Spinelli, Nicholas (ATR) <Nicholas.Spinelli@usdoj.gov>; Feder, Morgan <Morgan.Feder@ag.ny.gov>
**Subject:** RE: U.S./Colorado v. Google: SEA Subpoena

External Email

Juan,

Samsung's proposal is unworkable.

First, and most critically, Samsung's proposed substantial completion date will have provided Samsung nearly 11 months to satisfy its obligations in response to our subpoena and leaves Plaintiffs with only 3 months left of fact discovery to process, review, and make use of these documents.

Second, Samsung's proposal to use search strings to narrow the TAR review set is not acceptable, and Plaintiffs have previously made this clear to Samsung. Samsung makes vague reference to DOJ's use of both search terms and TAR; DOJ is not aware of any case in which this occurred and asks Samsung to identify the instance it is referencing. We also note that Plaintiffs have entertained Samsung's 11th hour TAR proposal in order to secure a reasonable production timeframe from Samsung, and so it is disappointing to receive a proposal from Samsung that only serves to delay by proposing unacceptable terms, and more critically, does not address Plaintiffs' production timing concerns.

Plaintiffs have repeatedly demonstrated a willingness to limit requests to reduce Samsung's burden. Plaintiffs cannot accept many of the revised search strings, which result in search strings that eviscerate the intent of the RFP. We instead attach counter-proposed revised search strings; the attached reflects track changes except where we rejected your changes. We note that in one search string responsive to RFP 12, we expanded the limiter w/5 to w/15 because there were zero results returned from the original search.

Plaintiffs provide the following best-and-final offer:
1. SEA commit to substantial completion of its production by Nov. 14, with initial production to begin by Oct. 22;
2. SEA may use either TAR or linear review to make this production:
    a. If SEA chooses linear review, SEA will use Plaintiffs' counter-proposed search strings; or
    b. If SEA chooses TAR, SEA will run the TAR processes across all document collected from the custodians and will not employ search strings to narrow the review set. SEA will also work cooperatively with DOJ to finalize all remaining terms pending DOJ review, and will finalize the remaining terms no later than October 11.
3. Plaintiffs can agree to jointly seek an FRE 502(d) order to help streamline SEA's privilege review and further reduce Samsung's burden.

If Samsung cannot accept these terms by COB tomorrow (EST), Plaintiffs will seek the Court's assistance in setting a production deadline and finalizing the terms proposed by Plaintiffs, and will do so as soon as practicable. If helpful to Samsung, we are available to answer questions regarding our above offer.

Best,
Karl

**From:** Arteaga, Juan <JArteaga@crowell.com>
**Sent:** Tuesday, October 5, 2021 9:21 PM
**To:** Herrmann, Karl (ATR) <Karl.Herrmann@usdoj.gov>
**Cc:** DeBernardis, Alexis Victoria <ADeBernardis@crowell.com>; Murdock-Park, Erin (ATR) <Erin.Murdock-Park@usdoj.gov>; Wright, Catharine (ATR) <Catharine.Wright@usdoj.gov>; Spinelli, Nicholas (ATR) <Nicholas.Spinelli@usdoj.gov>; Feder, Morgan <Morgan.Feder@ag.ny.gov>; Ballou, Brendan (ATR) <Brendan.BallouKelley@usdoj.gov>
**Subject:** [EXTERNAL] U.S./Colorado v. Google: SEA Subpoena

Karl:

As requested, we are writing to provide SEA's proposal for completing its response to Plaintiffs' subpoenas. As you will see, we have proposed employing a TAR protocol that DOJ has approved in other matters to complete the review and production of the approximately 1.2 million documents captured by the negotiated search strings when applied to the ESI for the agreed-upon custodians. (Based on the hit rates for the first eight custodians, we expect a significant increase in the number of documents that will need to be reviewed when the data for ▮▮▮▮▮ – who has approximately 500 GB of data – is processed.) Under our proposal, SEA would begin producing documents on October 29, 2021 and would substantially complete its production of non-privileged responsive documents by December 15, 2021. Our proposal also includes interim dates by which SEA would complete 25%, 50% and 75% of its production.

For the reasons set forth below and during last week's discussions, we believe that our TAR proposal provides the most viable path for ensuring that SEA can complete its production under the expedited timeframe requested by Plaintiffs. We also believe that our TAR proposal strikes the appropriate balance between Plaintiffs' timing interests and Plaintiffs' Rule 45 obligation to minimize undue cost and burden on non-parties such as SEA.

A. **SEA's TAR Proposal**

The first attachment to this email contains SEA's proposed TAR protocol. To help expedite the parties' ability to reach agreement, we have based this protocol on TAR protocols that DOJ has approved in other antitrust matters. If approved, we would commit to the following schedule for completing SEA's production of the non-privileged responsive documents captured by the negotiated search strings in the ESI for the nine agreed-upon custodians:

- **October 29, 2021**: Initial production

- **November 12, 2021**: 25% of SEA production

- **November 24, 2021**: 50% of SEA production

- **December 8, 2021**: 75% of SEA production

- **December 15, 2021**: Substantial completion of SEA production

- **December 30, 2021**: Production of any outstanding non-privileged material

B. **Linear Review Alternative**

Based on our current estimates, we believe that it would cost SEA approximately $3.5 million to complete a linear review of the documents captured by the negotiated search strings when applied to the ESI for the nine agreed-upon custodians. We also believe that SEA – which has significant discovery obligations in numerous other matters – would need several months to complete such a review. To the extent Plaintiffs opt to pursue a linear review over a TAR process, SEA would propose that the current search strings be modified as set forth in the second attachment. Even assuming that SEA and Plaintiffs could reach agreement on these or other modifications, SEA would still need to get

Google's agreement to any modifications. SEA is not in a position to estimate how long the search term modification negotiations with Plaintiffs and Google would take, which, of course, would impact the timing of SEA's document production.

To assist Plaintiffs' assessment of these proposed search string modifications, we have provided the requested hit reports using the negotiated search strings for the ESI collected for the first eight agreed-upon custodians. *See* third attachment. The negotiated search strings hit on 286,934 documents expanded to 1,149,644 including families.

We have also provided the requested hit reports using the proposed modified search strings for the ESI collected for the first eight agreed-upon custodians. *See* fourth attachment. The proposed modified search strings hit on 122,770 documents expanded to 758,276 including families.

Below is a breakdown of the number of documents captured by the negotiated search strings and proposed modified search strings for each of the first eight agreed-upon custodians. As explained, SEA cannot provide this information for the ninth agreed-upon custodian (█████████) at this time because his data is still being processed. SEA expects to be able to provide this information to Plaintiffs by this Friday.

1. **Custodian Breakdown Using Negotiated Search Strings**

| Custodian | Total with hits | Total with hits including families |
|---|---|---|
| ███ | 38,867 | 247,690 |
| ███ | 73,780 | 178,172 |
| ███ | 13,367 | 42,376 |
| ███ | 292 | 360 |
| ███ | 90,865 | 460,787 |
| ███ | 36,146 | 52,332 |
| ███ | 16,492 | 32,750 |
| ███ | 23,039 | 147,915 |

2. **Custodian Breakdown Using Proposed Modified Search Strings**

| Custodian | Documents with hits | Documents with hits including families |
|---|---|---|
| ███ | 18,533 | 171,265 |
| ███ | 29,424 | 98,418 |
| ███ | 4,271 | 15,449 |
| ███ | 60 | 81 |
| ███ | 41,882 | 344,009 |
| ███ | 12,575 | 18,514 |
| ███ | 7,029 | 17,802 |

| | 11,105 | 100,343 |

We note that SEA will strongly consider filing a fee shifting motion with the Court if Plaintiffs insist on a linear review.

### C. Plaintiffs' Proposed 5-Week Production Schedule Is Unreasonable And Unrealistic

As we have explained, we strongly believe that Plaintiffs' demand that SEA complete its review and production of approximately 1.2 million documents (a number that does not includes ▓▓▓▓▓ data) within five weeks is both unreasonable and unrealistic. Indeed, such an expedited production schedule – the type of schedule that typically is reserved for emergency proceedings – ignores the time, resources, and processes that are necessary to collect, process, review and prepare for production an extremely large volume of competitively sensitive and highly confidential material. Moreover, such a production schedule fails to take into account the cost and burden that would be imposed on non-party SEA, which, again, has significant discovery obligations in many other matters.

While we are hopeful that Plaintiffs will cease demanding that SEA agree to a five-week production schedule, we want to reiterate that Plaintiffs' prior reliance on their dispute with Apple to support such a demand is wholly misplaced. In requesting that Apple be required to complete its document production within six weeks, Plaintiffs argued that "Apple sort of engineered this urgency throughout the [subpoena negotiation process]" by:

- "refus[ing] to do anything" for "a month" until it received "Google's subpoena;"

- declining to "talk about [search strings] until [the parties] resolved custodians;"

- rejecting requests to test agreed-upon search strings "[u]ntil . . . all [search strings were] agreed to;" and

- refusing to provide Plaintiffs with any "deconstructed hit reports."

8/19/21 Tr. at 16-19. None of these facts are present here. (We will refrain from addressing Plaintiffs' suggestion that any supposed delay here has been caused by SEA, rather than Plaintiffs, because, while we believe the record supports our position, we think it would be counter-productive to reaching a resolution to get into those details.)

More importantly, Plaintiffs repeatedly emphasized that Apple would not truly be required to review 1.5 million documents because this figure was calculated prior to the running of search strings. *Id.* at 7 "[Mr. Dintzer]: So the number that your talking about is input, not output. Apple won't give us insight into what their production is, so we don't know how much the machine turns out. But if we assume 25 percent, then we're talking about, if there's 1.5 million going in, then we're talking about 375,000 coming out. And we don't even know if that's that; it could be less."). Of course, the assumptions Plaintiffs presented to the Court about the overall number of documents that Apple could ultimately have to review are less than half of the emails collected for only one of the agreed-upon custodians (▓▓▓▓▓) here. Moreover, the approximately 1.2 million documents in question – which do not reflect ▓▓▓▓▓ data – are *post*-deduplication and *post*-search string application.

Equally as important is the fact that Apple had already completed its review of a substantial portion of the 1.5 million documents that were captured by the search strings. *Id.* at 23 (stating that Apple had reviewed approximately "600,000" documents). Here, Plaintiffs have proposed requiring SEA to review a much larger volume of material within a shorter period.

If Plaintiffs insist on having SEA complete its document production within five weeks or a similarly compressed schedule, SEA will seriously consider filing a fee shifting motion with the Court.

*   *   *   *   *

To the extent it would be helpful, we are available to meet and confer tomorrow between 2 and 3 pm EST.  Our hope is to reach an agreement as soon as possible because the production schedule under our TAR proposal is premised on the assumption that we will reach a final agreement with Plaintiffs this week.  Until an agreement is reached, SEA cannot begin implementing its TAR proposal and producing documents to Plaintiffs pursuant to the proposed schedule.

Best,
Juan

**Juan A. Arteaga | Crowell & Moring LLP**
590 Madison Avenue | 20th Floor | New York, NY 10022-2524
T: +1 212.803.4053 | F: +1 212.223.4134
jarteaga@crowell.com | www.crowell.com

CONFIDENTIALITY NOTE:

The information contained in this email message and any attachments is legally privileged and confidential information intended only for the use of the individual or entity to whom it is addressed.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this message or its attachments is strictly prohibited.  If you have received this email in error, please immediately notify us by telephone, fax, or email and delete the message.  Thank you.

==========================================================