## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND DISCOVERY DEADLINES

Plaintiffs in *United States v. Google LLC* ("Plaintiffs") respectfully submit this memorandum in support of their motion pursuant to Federal Rule of Civil Procedure 16(b)(4) to modify the deadline for the close of fact discovery and certain related deadlines in the Court's February 3, 2021 Amended Scheduling and Case Management Order (the "Scheduling Order"). ECF No. 108-1. Defendant Google LLC ("Google") opposes this motion.

## I.    INTRODUCTION

The Court should extend fact discovery to June 22, 2022, while leaving unchanged the post-discovery deadlines, including the scheduled trial date. Currently, the Court's Scheduling Order provides that the parties will complete fact discovery by March 22, 2021, but good cause exists for extending that deadline. First, Plaintiffs have diligently sought to complete discovery within the contours of the Scheduling Order. Second, Plaintiffs could not have anticipated the cumulative effect of the production delays encountered during this case. Third, extending fact discovery would permit Plaintiffs to review and receive additional relevant documents and conduct more effective depositions. Fourth, absent the extension, Plaintiffs would not be able to efficiently and effectively complete the remaining depositions. Finally, because the scheduled trial date is nearly two years away and is not affected by Plaintiffs' request, Google will not be prejudiced by an extension in fact discovery. Accordingly, the Court should conclude that good cause exists to grant Plaintiffs' requested extension.

## II.    LEGAL ARGUMENT

### A.  Good Cause Exists To Extend Discovery

The Court should find that good cause exists for the requested extension to allow the Plaintiffs to prepare for and complete their allotted depositions in an orderly, efficient manner. "The Court may modify the scheduling order at any time upon showing of good cause." LCvR 16.4(a); *see also* Fed. R. Civ. P. 16(b)(4). In determining whether good cause exists to extend discovery deadlines, "the Court primarily considers the diligence of the party seeking discovery before the deadline." *Barnes v. District of Columbia*, 289 F.R.D. 1, 7 (D.D.C. 2012) (collecting cases). The Court also considers (a) the foreseeability of the need for additional discovery given the time allotted by the court, (b) the likelihood that the discovery sought will lead to relevant

evidence, (c) whether trial is imminent, (d) whether the non-moving party consents, and (e)

whether the non-moving party would be prejudiced. *See Childers v. Slater,* 197 F.R.D. 185, 188

(D.D.C. 2000)*.* The balance of those six factors weighs firmly in favor of granting Plaintiffs'

requested extension.

### i.  Plaintiffs Have Diligently Pursued Discovery

Plaintiffs have diligently sought to complete discovery within the deadlines set by the

Court in the Scheduling Order, and to date, have issued seven requests for production ("RFPs")

to Google and over 100 Rule 45 document subpoenas to third parties; taken 18 depositions and

noticed 18 more;[1] reviewed millions of documents; and examined thousands of privilege log

entries.

### 1.  *Documents and Data Requests*

Plaintiffs expeditiously sought documents and data from Google and third parties in order

to meet the deadlines set in the Court's Scheduling Order. In early January, shortly after fact

discovery began, Plaintiffs served Google with Plaintiffs' core document and data requests,

covering a broad range of information necessary for proving Plaintiffs' claims. Between June 21

and September 30, 2021, Plaintiffs issued five additional, targeted requests for documents and

data. In each instance, Plaintiffs immediately engaged with Google to address its responses and

objections ("R&Os"). For some periods, Plaintiffs met and conferred with Google on an almost

weekly basis to reach agreements on the breadth of the requests and the custodians, terms, and

periods Google would use to identify responsive documents. For example:

- Plaintiffs issued their first request for production ("RFP 1") on January 5. They
  received Google's R&Os on February 4, and on February 8—four days later—
  requested a meet-and-confer to discuss Google's objections.

---

[1] The number of depositions noticed by Plaintiffs includes depositions noticed by plaintiffs in
*Colorado v. Google LLC*, 1:20-cv-03715-APM.

- Plaintiffs issued their second request for production ("RFP 2") on January 10. They received Google's R&Os on February 10, and on February 12—two days later—requested a meet-and-confer to discuss Google's objections.

- Plaintiffs issued their third request for production ("RFP 3") on June 21, 2021. They received Google's R&Os on July 21 and on July 22—the next day— requested a meet-and-confer to discuss Google's objections.

During these meet-and-confers, Plaintiffs pursued various strategies to ensure the efficient production of documents, including (1) the frontloading of documents Google had agreed to produce, and (2) the production of documents by custodians. Google refused. *See e.g.*, April 30, 2021 Status Conference Tr., ECF No. 133, at 12-17. Google's approach ensured that a full set of documents for any custodian was not available until the entire production was completed; this delayed the initial depositions.

Similarly, Plaintiffs have sought discovery to date from over 100 third parties, including Google's largest distribution partners and key search competitors. Many of these subpoenas were issued just weeks after commencement of fact discovery. For instance:

- On or before February 1, 2021, Plaintiffs subpoenaed 10 of Google's largest search distribution partners in the U.S., including manufacturers (Apple, Samsung, LG, and Motorola), and carriers (Verizon, T-Mobile, and AT&T). These partners collectively represent over 98 percent of the recent revenue share payments that Google made to third parties to distribute search in the U.S.

- On or before February 1, 2021, Plaintiffs subpoenaed Google's largest search rivals, *i.e.*, Microsoft and Yahoo.

- On or before February 1, 2021, Plaintiffs subpoenaed third parties Google has claimed as competitors, including Amazon and Yelp.

As they did with Google, Plaintiffs engaged in extensive meet-and-confers with third-party subpoena recipients. To take one example, between February 1 and August 17, 2021, Plaintiffs engaged in approximately 25 meet-and-confers with Apple and sent the company more than 20 letters. In three of those letters, Plaintiffs provided 45 pages of explanations for subpoena

requests and justifications for search string proposals. Moreover, when necessary, the Plaintiffs have asked the Court for assistance in speeding Google and third-party document productions.

### 2. Depositions

Plaintiffs have sought to depose potential Google and third-party trial witnesses as quickly as the document productions and witnesses' schedules would permit. Google completed the bulk of its document production in August 2021, and Plaintiffs began deposing Google's witnesses in September 2021. As of November 23, 2021, Plaintiffs have completed 18 depositions of current or former Google employees and one third party. Plaintiffs have noticed an additional 18 depositions, scheduled for December and January. Plaintiffs have also taken Rule 30(b)(6) testimony from three Google representatives and, on November 1, 2021, issued a notice containing additional Rule 30(b)(6) topics.

### 3. Privilege Disputes

Plaintiffs successfully pursued production of tens of thousands of documents that Google inappropriately withheld or redacted, including (a) communications with third parties that were clearly non-privileged, and (b) non-legal communications, including instances in which an attorney was just carbon-copied or was not a recipient of the communication at all.

After Google provided its initial privilege log, Plaintiffs reviewed Google's privilege claims (hundreds of thousands) and, in a letter on June 4, 2021, identified concerns regarding overbroad designations. During the next three months, Plaintiffs sent five additional letters and engaged with Google on three meet-and-confers to address our concerns. In September—three months after Plaintiffs' initial letter—Google began reproducing nearly *40,000* depriveleged documents. Many of these originally-withheld documents touch on issues central to Plaintiffs'

allegations, including documents relating to Google's search distribution deals. Plaintiffs expect that future reproductions will likely yield similarly relevant material.

The challenges to Google's faulty privilege claims are ongoing, as Google's most recent privilege logs contain the same overbroad privilege designations and errors. After reviewing Google's privilege reproductions and the newly produced privilege logs, Plaintiffs sent Google a letter on November 15 with concerns about tens of thousands additional, problematic privilege log entries and privilege designations. Google has agreed to start reviewing a subset of the challenged documents.

Google's overbroad privilege claims, which delayed production of relevant, non-privileged materials, have undermined Plaintiffs' document review efforts and deposition preparation, and Google's persistence in improperly asserting privilege continues to delay and further prejudice Plaintiffs.

Because Plaintiffs have tirelessly pursued discovery in this case, the Court should conclude that good cause exists for the requested extension.

### ii. Plaintiffs Could Not Have Foreseen the Additional Time Needed to Conduct Discovery at the Time of the Scheduling Conference

The fifteen months for fact discovery requested in the initial Scheduling Order was, at best, an educated estimate. *See* December 18, 2020 Status Conference Tr., ECF No. 88, at 47:22-48:1 ("[A]ny judge that's involved in a case like this recognizes that the schedule at the outset oftentimes . . . is not the schedule that actually comes to fruition[.]"). When the Scheduling Order was entered, it was impossible to accurately predict how discovery on this scale, during a pandemic, would unfold. Plaintiffs could not foresee that it would take Google and major third parties more than half a year to substantially complete document productions responsive to Plaintiffs' initial requests served in January.

Google contributed to the delay of third-party productions by waiting weeks, and in some cases months, to issue their subpoenas to the same third parties. Many third parties refused to collect, much less review and produce documents responsive to Plaintiffs' subpoenas before receiving Google's subpoena and negotiating a discovery plan with both Plaintiffs and Google simultaneously. These delays continued until this Court entered its order requiring timely service of cross-subpoenas. *See* March 30, 2021 Status Conference Tr., ECF No.126, at 64:12-65:2.

Plaintiffs received approximately 1.8 million documents between February and July 2021, and received approximately 3 million documents between August through the present, almost half of which (approximately 1.4 million) were received just last month.[2] The cumulative effect of Google's and third parties' delayed production of documents ensured that Plaintiffs would have to sift through tens of thousands of documents to determine the completeness of Google's and third-parties' document productions in the later part of fact discovery. Plaintiffs, moreover, have now identified serious, unforeseeable omissions in Google and third-party fact discovery which, coupled with the outstanding productions, will result in Plaintiffs not having access to highly relevant information to use during the forthcoming depositions if an extension is not granted.

It was not foreseeable that Plaintiffs' efforts to keep discovery moving forward would face these and other delays. Accordingly, the Court should conclude that good cause exists to extend the discovery schedule.

---

[2] These numbers are approximations that may include document overlays and reproduced documents.

### iii.  An Extension Of Fact Discovery Would Likely Lead To The Discovery Of Relevant Evidence and Ensure An Orderly End To Fact Discovery

An extension of time to receive and review outstanding productions—and then pursue depositions based on those productions—will lead to relevant evidence concerning central claims in Plaintiffs' complaints.

First, permitting Plaintiffs sufficient time to review these documents and notice the most knowledgeable witnesses will certainly result in the discovery of relevant evidence. The extension of time will ensure that all parties have the ability to conduct depositions with sufficient time to evaluate the testimony before the next set of depositions is noticed, avoiding duplication. Under the current schedule, this process would prove impossible; for the parties to take advantage of the remaining depositions allotted to them in the Scheduling Order, the parties would have to schedule multiple depositions per weekday through the close of discovery.

Second, the outstanding productions from Google and from third parties are likely to contain highly relevant information regarding (1) Google's exclusionary search distribution agreements, and (2) market definition.[3] For example:

- Samsung—the largest manufacturer of Android devices sold in the U.S.—began producing documents in earnest only a few days ago. Much of Samsung's document production remains outstanding, although Plaintiffs issued their subpoena on January 7.

- Document productions from Apple—Google's largest search distribution partner—are missing communications related to Apple's latest distribution agreement with Google.

---

[3] *See e.g.*, *See* Compl. ¶ 4 ("Google pays billions of dollars each year to distributors—including popular-device manufacturers such as Apple, LG, Motorola, and Samsung; major U.S. wireless carriers such as AT&T, T-Mobile, and Verizon; and browser developers such as Mozilla, Opera, and UCWeb— to secure default status for its general search engine and, in many cases, to specifically prohibit Google's counterparties from dealing with Google's competitors.").

- Google has yet to produce documents related to the negotiation, operation, and enforcement of some of its operative search distribution agreements.

- Document productions from third parties Google has claimed are its competitors are still outstanding.

Although these parties assure Plaintiffs that these productions are forthcoming, Plaintiffs cannot make the best use of those documents unless fact discovery is extended. Moreover, should the production dates slip, Plaintiffs' depositions will necessarily be delayed.

### iv. Plaintiffs Would Suffer Severe Hardship And Be Prejudiced Without An Extension of Time

Without an adequate amount of time to receive and review Google's and third-parties' productions, Plaintiffs will not be able to access highly relevant documents when planning and performing the allotted depositions. This will undermine Plaintiffs' ability to gather important evidence.

Under the current schedule, Plaintiffs are caught in a catch-22: either (1) move forward with noticed depositions despite not having had time to review (or in some cases, receive) relevant documents, or (2) delay depositions until relevant documents are received and reviewed, but risk the possibility of not having enough time to complete the planned depositions. Indeed, the current schedule does not provide enough time for a set of depositions to be completed and evaluated before the next set is noticed—a necessary process to ensure that the most knowledgeable witnesses are noticed, duplication is avoided, and gaps in the evidentiary record are addressed. This concern is particularly salient because Google has, thus far, failed to adequately prepare its 30(b)(6) witnesses.

Accordingly, the Court should conclude that the Plaintiffs would be prejudiced without the requested extension.

### v.   Because The Trial Date Is Not Imminent and Plaintiffs Do Not Seek to Expand Allotted Discovery Mechanisms, Google Would Not Be Prejudiced by the Proposed Extension

Trial is not "imminent." The scheduled trial date is more than twenty-one months away, during which a twelve-month pause exists between the end of expert discovery and the beginning of trial. Moreover, dispositive motions from either party are not due for close to a year. For that reason, although Google opposes this request to extend fact discovery, the prejudice to Google from the extension would be minimal. Certainly, Google would not need to course-correct its deposition strategy because, to date, Google has only issued seven subpoenas, leaving 73 remaining depositions allotted to it under the Scheduling Order.

Moreover, Plaintiffs are not seeking to expand any of the already agreed-upon discovery tools. For example, Plaintiffs do not seek any more depositions, interrogatories, or requests for production than those presently allotted to the parties in the Scheduling Order and under the Federal Rules. The only impact of the proposed extension is to shift the end-date for fact discovery (and corresponding expert discovery and summary judgment motion deadlines) by three months.

In light of Plaintiffs' good cause showing for the need to extend the discovery schedule and the lack of prejudice to Google from a three-month extension, the factors, weighed together, favor granting Plaintiffs' request for an extension of time.

## II.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court modify the scheduling order to extend the pretrial deadlines by three months, as reflected in the attached proposed order. All other dates, including the trial date, would remain unchanged.

Dated: November 23, 2021                    Respectfully submitted,


By: */s/ Kenneth M. Dintzer*_____
Kenneth M. Dintzer
Jeremy M. P. Goldstein
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*

By:____*/s/ Jonathan R. Carter*_____
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

By:____*/s/ Adam Miller*_____
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By:____*/s/ Lee Istrail*_____
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By: _____ */s/ Daniel Walsh* _____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: _____ */s/ Scott L. Barnhart* _____
Theodore Edward Rokita, Attorney General Scott
L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: _____ /s/ *Philip R. Heleringer* _____
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: 502-696-5647
philip.heleringer@ky.gov

12

*Counsel for Plaintiff Commonwealth of Kentucky*
By:_____*/s/ Christopher J. Alderman*_____
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:_____*/s/ Scott Mertens*_____
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:_____*/s/ Stephen Hoeplinger*_____
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:_____*/s/ Hart Martin*_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By: ___*/s/ Mark Mattioli*___
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer
Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By: ___*/s/ Rebecca M. Hartner*___
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By: ___*/s/ Bret Fulkerson*___
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By: ___*/s/ Gwendolyn J. Lindsay Cooley*___
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

14