## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

### JOINT STATUS REPORT

The parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report summarizing the state of discovery and identifying any issues between the parties, and the parties' respective positions, that will be raised at the status hearing scheduled for January 7, 2022.

### I.    Case No. 1:20-cv-03010

### A.    Google's Discovery of Plaintiffs

A summary of Google's First Set of Requests for Production and prior document productions made by Plaintiffs are set forth in the parties' earlier Joint Status Reports, including

their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256).

**B.     Plaintiffs' Discovery of Google**

A summary of Plaintiffs' First through Seventh Sets of Requests for Production and the document productions previously made by Google are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256). Google produced additional documents on December 6, 8, 10, 17, 20, 22, 23, 27, and 29 and Google produced additional data on December 3, 6, 17, and 22. Plaintiffs served their Eighth Requests for Production to Google on December 9, 2021. The parties continue to negotiate document and data requests, as well as supplementation in connection with refresh requests served by Plaintiffs on September 30 and October 26.

Plaintiffs have completed twenty-three depositions of current or former Google employees. The parties have scheduled eight for the coming weeks, and the parties are in the process of scheduling three more.  Plaintiffs have also completed depositions pursuant to two 30(b)(6) notices issued in July.

Following the status conference held on December 6, the parties continued to meet and confer regarding Plaintiffs' November 1 30(b)(6) Notice and reached resolution on a number of issues. On December 22, Google identified a witness and provided a deposition date for Topic 2 and advised Plaintiffs that it would seek relief from the Court with respect to Topic 3. Google provided written responses to Topics 1, 4, 5, and 7 on December 31. The parties' position

statements regarding Topic 3 of Plaintiffs' November 30(b)(6) notice are set forth in Sections III and IV.

### C.    The Parties' Discovery of Third-Parties

A summary of the third-party discovery requests previously issued by the parties is set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256). The parties have issued document subpoenas to approximately 108 third parties in total. The parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.

The parties have completed two third-party depositions that were noticed by both Plaintiffs and Google. Plaintiffs have noticed four depositions of third-parties for dates in January and February, and Google has issued cross-notices to those four witnesses. In addition, Google has noticed two depositions of other third-parties for dates in January, and Plaintiffs have cross-noticed one of them. The parties anticipate that they will continue to issue additional deposition subpoenas as discovery progresses.

## II.    Case No. 1:20-cv-03715

### A.    Google's Discovery of Plaintiff States

A summary of Google's First Set of Requests for Production and the document productions made by Plaintiffs to date are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256).

### B.    Plaintiff States' Discovery of Google

A summary of Plaintiff States' First and Second Sets of Requests for Production and the document productions previously made by Google are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256). Google has continued to produce to Plaintiff States the documents and data produced to the U.S. Plaintiffs and its co-plaintiffs in Case No. 1:20-cv-03010 in addition to producing documents and data in response to Plaintiff States' First and Second Sets of Requests for Production.

On October 27, Plaintiff States submitted a request for supplementation of documents in response to Plaintiff States' First Request for Production. The parties have reached agreement on Plaintiff States' October 27 supplementation request.  Plaintiff States and Google have also reached agreement on Google's response to Plaintiff States' Second RFP, which involves adding certain requested custodians, and the parties will continue to discuss the timing of Google's production of documents retrieved from those custodians.

Plaintiff States served Google with their Third Set of Requests for Production containing Plaintiff States' full-fledged data requests on November 2, and Google served its responses and objections on December 2. The Parties met and conferred on December 6 and December 9 and continue to exchange information. Plaintiff States served Google with their Fourth Set of Requests for Production on December 23. Google's responses and objections are due on January 24.

A summary of the depositions of current and former Google employees and third parties is set forth above in Section I.B. In accordance with the Scheduling and Case Management Order, Plaintiff States and the U.S. Plaintiffs are coordinating in the noticing and scheduling of

all depositions. In addition to depositions of witnesses addressing issues common to both cases, to date, Plaintiff States have taken or noticed depositions of ten Google employees and third parties focused primarily on issues related to the Plaintiff States' case.

Following the status conference held on December 6, the parties continued to meet and confer regarding Plaintiffs' November 1 30(b)(6) Notice and reached resolution on a number of issues.  For Topics 8 and 11, Google has identified a witness and the parties are in the process of identifying a mutually agreeable date in January for the deposition. On December 31, Google served supplemental responses and objections that include a written response to Topic 13 and dates by which it will provide written responses to Topics 9, 10, and 12.

### C.    The Parties' Discovery of Third Parties

The parties have issued document subpoenas to approximately 108 third parties. All third parties that have received a subpoena from Plaintiff States have received a cross-subpoena from Google. Similarly, all third parties that have received a subpoena from Google have received a cross-subpoena from Plaintiff States. Both parties anticipate that they will continue to issue additional document subpoenas as discovery progresses. A summary of the third-party depositions that have been recently scheduled is set forth above in Section I.C. The parties anticipate that they will continue to issue additional deposition subpoenas as discovery progresses.

## III.    U.S. Plaintiffs' Position Statement

More than two months after Plaintiffs served the November 30(b)(6) Notice to Google, and in contravention of the Court's December 6 Minute Order, Google has refused to provide a witness to address the subject identified as "Topic 3". The examination topic at issue concerns the methodology Google uses to calculate the amount it pays (or is willing to pay) to its search

distribution partners—a central issue to this case, as Google has employed these payments to maintain its monopoly over general search services. Google's refusal to produce a witness on this examination topic based on an overbreadth objection rings hollow given that Plaintiffs' have offered to limit their inquiry to only Google's top distribution partners and Google's proffer to provide a written submission for this topic. Accordingly, the Court should order Google to provide a witness to testify on Topic 3 no later than January 21.

Pursuant to the Court's September 28, 2021 Minute Order, Plaintiffs issued a Rule 30(b)(6) Notice on November 1, 2021, seeking narrowly tailored information related to several discrete subjects. Following several meet-and-confers and written correspondence, the parties have reached an initial agreement on all but one topic.[1] The disputed topic, Topic 3, seeks "the methodology by which Google calculates the amount it is willing to pay search distribution partners in revenue share agreements," including how Google's measures the long-term revenue, incremental revenue, and "defensive value" (i.e., the value of the distribution channel not being available to a rival) associated with these deals.[2]

During the parties' negotiations, Google explained that it enters revenue share agreements with too many partners to discuss in a deposition. Plaintiffs accordingly narrowed Topic 3 to the methodologies used with a narrow set of Google's top distribution partners.[3] Upon

---

[1] U.S. Plaintiffs negotiated Topics 1 through 7, and the Colorado Plaintiffs negotiated Topics 8 through 13. This position statement only addresses Topics 1 through 7. Google has agreed to testify about Topic 2. U.S. Plaintiffs have agreed (1) to withdraw Topic 6, and, (2) at Google's request, to provisionally accept interrogatory responses for Topics 1, 4, 5, and 7, which Google served on December 31. The parties have agreed that these topics and written responses do not count against Plaintiffs' interrogatory allotment under the CMO. Further, Plaintiffs have reserved the right to seek testimony on Topics 1, 4, 5, and 7 for any deficiencies in Google's written responses.

[2] A copy of Plaintiffs' November 30(b)(6) Notice is attached as Exhibit A.

[3] In particular, of Google's dozens of distribution partners, Plaintiffs narrowed the relevant partners to twelve (12): Apple, Samsung, LG, Motorola, Vivo, Huawei, AT&T, Verizon, T-Mobile, Sprint, Mozilla, and Opera.

this narrowing, Google offered to submit a written substantive response to Topic 3.[4] By making this offer, Google acknowledges that Plaintiffs' Topic 3 describes a deposition subject with sufficient particularity to be answerable. Nevertheless, without addressing this seemingly important concession, Google continues to refuse to produce a witness to testify orally in response to Topic 3.

Google's objection is based on the argument that Topic 3 is overbroad and unduly burdensome because "no single 'methodology' governs financial analysis of revenue share agreements" across the at-issue revenue sharing agreements and amendments. Google's Responses and Objections to Plaintiffs' November 30(b)(6) Notice. Google's objection is misguided and meritless.

Indeed, to evaluate Google's burden objection to Topic 3, Plaintiffs posed several straightforward and pertinent questions related to the narrow set of distribution partners identified: (1) how many different methodologies has Google used to analyze revenue share agreements; (2) how much, if at all, have the methodologies differed from agreement to agreement; and (3) does Google perform a financial analysis for each new agreement or amendment? For instance, Plaintiffs asked Google whether the methodology for calculating the long-term value of a revenue share agreement differs from partner to partner over the relevant period. Plaintiffs posited that if the methodology for calculating the long-term value of a deal is relatively consistent across agreements, for example, then the scope of Topic 3 is far narrower than Google's objection would suggest.

Google refused to answer any of Plaintiffs' questions. Instead, Google repeatedly

---

[4] Google has not argued (and could not reasonably argue) that, absent Plaintiffs' consent, written responses to Topic 3 could substitute for oral testimony. *See In re Subp. Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (collecting cases and observing that "[d]istrict courts have . . . typically treated oral depositions as a means of obtaining discoverable information that is preferable to written interrogatories").

emphasized that even after Plaintiffs narrowed their inquiry to only Google's top distribution

partners, Topic 3 still implicates "at least a couple hundred agreements (including extensions and

amendments)."[5] Letter from J. Schmidtlein (Dec. 13, 2021). But Topic 3 focuses on

methodologies, which would be expected to remain consistent across agreements. Thus, the

breadth of Topic 3 corresponds to the number of methodologies used, not the number of

agreements, extensions, or amendments assessed with those methodologies. On this critical

issue, Google has represented only that "no *single* 'methodology' governs financial analysis of

revenue share agreements." Email from G. Safty (Dec. 12, 2021) (emphasis added). This vague

representation—which leaves open the possibility that Topic 3 covers as few as two

methodologies—fails to justify narrowing Topic 3 any further.

Plaintiffs have "described with reasonable particularity the matters on which examination

is requested," Fed. R. Civ. P. 30(b)(6), if not through the text of Topic 3, then by specifically

enumerating the methodologies of interest and narrowing the scope to Google's top partners.

Google is now responsible for conducting a reasonable investigation into this topic by, among

other things, talking to the employees tasked with performing the analyses for the narrow list of

partners and designating one or more individuals to respond. To the extent Google had a valid

objection, Google should have stated that objection with particularity and engaged with Plaintiffs

to alleviate any undue burden. By refusing to do so during the meet-and-confer process and

failing to adhere to the Court's December 6 Minute Order, Google has waived its right to any

further relief.

Finally, because it is unclear whether Google maintains an objection to the timeframe and

---

[5] Google's lumping of extension, amendments and agreements is but a thin-veiled attempt to make the scope of Topic 3 appear more burdensome than it is—most amendments and extension are simple boilerplate time extension with no substantive deal term modifications.

geographic scope of Topic 3, Plaintiffs briefly address the issue here.

Topic 3 seeks information back to 2005 covering the United States, European Union, Russia, and Japan. With regard to timeframe, Plaintiffs allege that (1) Google's anticompetitive conduct dates from at least as early as 2010, and (2) relevant events leading to that conduct occurred as far back as the early 2000s; Plaintiffs are entitled to depositions to support these claims. *See Prasad v. George Washington Univ.*, 325 F.R.D. 1, 3 (D.D.C. 2018) ("The topics on which a litigant must produce and prepare a 30(b)(6) deponent to testify are limited by the familiar relevance standard of Rule 26(b)(1) of the Federal Rules of Civil Procedure, which allows discovery of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" (citations omitted)). Indeed, the search distribution contracts at the heart of this case and the focus of Topic 3 date back to at least 2005. Under such circumstances, inquiry back to 2005 is relevant and proportional, as this Court previously found in connection with Plaintiffs' July 30(b)(6) Notice. *See* Court's September 28, 2021 Minute Order.

The geographic scope of Topic 3 is plainly relevant and proportional to the needs of the case. First, most of Google's search distribution contracts with its top partners (including Apple) are worldwide, or multi-jurisdictional, agreements. Second, information pertaining to business operations outside the United States is further relevant because Russia, Japan, and the European Union have government-imposed remedies upon Google and significant search competitors such as Yandex. Thus, agreements covering these other locations may serve as an informative contrast to the United States. Given the scope of the revenue sharing agreements, the already narrowed list of Google's top distribution partners, and Google's failure to state any burden with particularity, no further limitations, including geographic limitations, are warranted.

For the foregoing reasons, the Court should order Google to provide a witness to testify on Topic 3 no later than January 21.

IV.    **Google's Position Statement**

**Google Should Not Be Required to Provide Rule 30(b)(6) Testimony in Response to Topic 3 of Plaintiffs' November Notice**

Plaintiffs' November Rule 30(b)(6) Notice contains 13 sweeping topics and more than 30 distinct subtopics, all but one of which span more than a decade.  *See* Exhibit A.  In serving the Notice, Plaintiffs defied Rule 30(b)(6)'s requirement that the Notice "describe with reasonable particularity the matters for examination" as well as this Court's "expectation that there will be precision in these 30(b)(6) notices," which should be limited to "more discrete, identifiable topics as to which a 30(b)(6) witness is actually required."  Sept. 28, 2021 Hr'g Tr. 44:23–45:6.  Despite the unjustifiable overbreadth of the topics, Google has worked diligently to devise a reasonable approach to provide information responsive to the Notice.  Google has designated witnesses to testify regarding three of the topics in January, in addition to providing written responses to five of the topics on December 31 and committing to provide written responses to three more in January.[6]

The lone remaining dispute stemming from the objectionable Notice relates to Topic 3, which asks Google to prepare a witness to testify regarding various financial analyses (to the extent they were performed and/or are available) relating to negotiated terms in agreements with at least a dozen third parties around the world dating back to 2005 across various types of devices:

From 2005 to the present, the methodology by which Google calculates the amount it is willing to pay search distribution partners in revenue share agreements, including:

---

[6] Plaintiffs withdrew one of the topics in light of information and testimony provided in response to Plaintiffs' July Rule 30(b)(6) notice.

      a.  how Google measures the "defensive value" of the deal (*see, e.g.*, GOOG-DOJ-13127914);

      b.  how Google calculates the lifetime value or long-term revenue of various features that either act as search access points or drive search traffic including the source of any inputs and basis for any assumptions used in the calculations; and

      c.  how Google estimates the incremental revenue created by a search distribution deal including (i) any methods of estimating the expected proportion [of] users or revenue from a given search access point that Google would retain if it were to lose default status (e.g., "winback" rate or "clawback" rate) and (ii) the results of any analyses utilizing these methods.

As Google has explained to Plaintiffs, there is no single methodology for any such analysis, and no single set of inputs or outputs that a witness could be prepared to convey by deposition. *See, e.g.*, Dec. 1, 2021 Resp. & Obj. to Nov. 30(b)(6) Notice; Dec. 13, 2021 Ltr. from J. Schmidtlein. The only respect in which Plaintiffs have been willing to pare back the topic is to "limit" it to 12 different counterparties. *See* Dec. 8, 2021 Ltr. from A. Cohen. In light of the topic's timespan, however, it still potentially puts hundreds of different agreements, amendments, and extensions at issue. Plaintiffs have inexplicably refused Google's invitation to identify a reasonable number of specific agreements about which they seek further information, and they have likewise refused to accept a high-level written response to the topic in lieu of live testimony. Researching the existence of numerous potential analyses of terms of these myriad agreements, negotiated by different Google employees at different points in time, is overbroad, unduly burdensome and practically not feasible for testimony by a single Rule 30(b)(6) deponent. Plaintiffs well understand this, for they have been asking Rule 30(b)(1) witnesses about such analyses, and about documents that Plaintiffs believe pertain to Topic 3. Plaintiffs' insistence that a witness now be educated on any document touching upon the scores of agreements covered Topic 3 is without foundation, and their request for Rule 30(b)(6) testimony on the topic should be denied.

## A.      Topic 3 Is Overbroad and Imposes an Undue Burden

"An overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).  For that reason, "[t]he initial burden under this rule falls on the plaintiffs," who are required to "'describe[] with reasonable particularity the matters on which examination is requested.'"  *Alexander v. FBI*, 186 F.R.D. 137, 139 (D.D.C. 1998).   With respect to Topic 3, Plaintiffs have entirely failed to do so.

Topic 3 requests testimony regarding "the methodology by which Google calculates the amount it is willing to pay search distribution partners in revenue share agreements" for a 17-year period.  Even limited to the 12 counterparties that Plaintiffs have identified during the meet-and-confer process, the scope is still remarkably broad, as it encompasses at least a couple hundred agreements, amendments, and extensions with those counterparties since 2005.  *See Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 18 (D.D.C. 2004) (explaining that a Rule 30(b)(6) notice "certainly does not describe with 'reasonable particularity the matters on which examination is requested'" when "each of the topics reads like an interrogatory or a section of a request for production of documents").  The topic is impermissibly broad in large part because there is no single methodology that governs financial analysis of revenue share agreements, many of which are individually negotiated against the backdrop of a long-standing relationship between Google and the partner as well as prior agreements with that partner.  Many of the agreements also provide a range of different terms of value to Google and the counterparty that are determined by bilateral negotiation.  At any given point in time, the agreements with the 12 counterparties identified by Plaintiffs are not uniform, and neither are the ways in which Google calculates "the amount it is willing to pay" in a particular agreement.

None of this is news to Plaintiffs, who have received the agreements together with financial analyses (to the extent they were performed) and testimony from multiple Google employees about

these issues.  For example, when a Google Finance Director was asked during her deposition last month "what kind of … analyses [she and her] team run on specific RSA [*i.e.*, revenue share agreement] deals," she explained that "to an extent, it varies deal by deal, because … each partner that has an agreement with us may have a different set of terms that are part of the contract."  Dec. 15, 2021 Dep. Tr. 74:13–25.  And when a different Finance Director who supports a different Google business unit was asked at deposition how he "perform[s] a financial evaluation of a distribution deal or a proposed distribution deal," he likewise explained "[t]hat is hard to answer, because it often depends case by case, depending on the partner and the situation and the specifics."  Oct. 8, 2021 Dep. Tr. 28:6–14.[7]

The nonexhaustive list of terminology included in the three subparts of Topic 3 does not narrow its scope in any respect.  Searches for the terms referenced in the subparts—"defensive value," "lifetime value," "long-term revenue," "incremental revenue," "winback rate," and "clawback rate"—collectively yield tens of thousands of documents among those that Google has produced.  These documents do not neatly derive from a single "methodology" that can be taught to a Rule 30(b)(6) witness; rather, the "inputs" and "assumptions" are circumstance-specific.  As a Google Finance Director recently testified in deposition, the term "incremental revenue" does not have "a well-known universal definition," and the definition of the term "winback rate" "depends on the context in which the terms are brought up."  Dec. 15, 2021 Dep. Tr. 105:16–22, 172:17–21.  Moreover, the only specific document that Plaintiffs have identified in connection with this topic (GOOG-DOJ-13127914), was (on its face) not even created in connection with the

---

[7] As discussed below, those witnesses and others have answered Plaintiffs' questions about particular agreements or analyses that they are familiar with, and Plaintiffs have noticed depositions of other witnesses who are familiar with different sets of agreements that are encompassed by Topic 3.

negotiation of a particular revenue share agreement. If anything, the subparts of the topic exacerbate its unnecessary breadth and ambiguity instead of providing the necessary precision.

Under these circumstances, it would be unduly burdensome to require a Google employee to try to learn and recount the details of even the currently operative agreements with the 12 counterparties identified by Plaintiffs. The request is even more unjustified, however, in reaching back to every revenue share agreement with those counterparties since 2005, and thereby sweeping in contracts that were negotiated and analyzed by employees who left Google years ago, some of whom Plaintiffs have already deposed pursuant to Rule 30(b)(1). The overbreadth is compounded by the fact that the request applies to varied counterparties that have offered an array of products and services over that period, from web browsers to smartphones, and desktop computers to smart home devices. Plaintiffs have not even established the relevance of all of these agreements and any associated analyses spanning a 17-year period, let alone that the probative value of another deposition on the subject outweighs the substantial burden of educating a witness on such a wide-ranging topic. *See, e.g.*, *Prasad v. Geo. Wash. Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017) (rejecting Plaintiff's request for a Rule 30(b)(6) deposition on "sweeping topics [that] would intensify the already time-consuming and inefficient nature of such depositions, so that the burden on Defendant of designating and preparing a witness would almost certainly outweigh the benefit to Plaintiff" (internal citation omitted)); *Lockheed Martin Corp. v. United States*, 2013 WL 1968372, at *5 (D.D.C. May 13, 2013) (concluding that a Rule 30(b)(6) topic "is vague and overly broad and it would be burdensome for the Government to produce witnesses to explain the history of" a particular government policy over the course of two decades, "particularly where the Plaintiff has been unable to clearly demonstrate its need for such information within the context of this case").

14

Given the number and diversity of agreements implicated by Topic 3, Google repeatedly urged Plaintiffs to identify a handful of specific agreements about which they seek additional information. *See* Dec. 13, 2021 Ltr. from J. Schmidtlein. Plaintiffs refused to do so. Alternatively, Google offered to provide a written response to the topic based on a reasonable inquiry. *See* Dec. 17, 2021 Email from G. Safty. Again, Plaintiffs refused, in favor of insisting on subjecting a designee to an impermissible "memory contest" about a wide array of agreements, analyses, and other documents. *Alexander*, 186 F.R.D. at 143.

**B.     Rule 30(b)(6) Testimony Regarding Topic 3 Is Unnecessary and Unwarranted**

In addition to being overbroad, Topic 3 also seeks testimony concerning subject matters that Plaintiffs have addressed and can continue to address through the Rule 30(b)(1) depositions that they have been taking for months—or years, if taking into account the depositions conducted during the pre-Complaint investigation. "Rule 30(b)(6) is intended to streamline the discovery process" by, among other things, "curb[ing] the bandying by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the organization." *Prasad*, 323 F.R.D. at 99. "It is not appropriate, however, to use a 30(b)(6) deposition as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period." *Id.* That is particularly true here, where Plaintiffs have requested and received millions of documents from well over 100 custodians who occupied a wide variety of roles over the last two decades, and have also requested and received the opportunity to conduct dozens of Rule 30(b)(1) depositions of Google employees.

The problem here is not that Plaintiffs are unclear about who to ask the multitude of potential questions encompassed by Topic 3, as they already have deposed or noticed depositions

of numerous individuals knowledgeable about the agreements covered by Topic 3. And to the extent Plaintiffs had any doubts about the right witnesses to inquire of on these points, Google offered them the opportunity weeks ago to identify specific agreements that purportedly warranted Rule 30(b)(6) testimony. *See, e.g.*, Dec. 13, 2021 Ltr. from J. Schmidtlein. Contrary to this Court's guidance, Topic 3 would not conserve resources by eliminating the need for a multitude of fact witness depositions. Instead, it is being used here to cause unnecessary duplication of effort through yet another deposition of the same individuals who have already been or will be deposed in their individual capacities about the same subject matter described in the topic.

For example, during its pre-Complaint investigation, the DOJ asked a Finance Director within Google's Platforms & Ecosystems group and a Partner Development Manager within that group all manner of questions regarding financial analysis of revenue share agreements with Android partners. *See, e.g.*, Sept. 11, 2020 Dep. Tr. 49:9–55:7 (discussing a revenue share analyses and monthly reports describing revenue share payments); *id.* 70:25–76:15 (discussing how Google establishes expected revenue); *see also* July 18, 2020 Dep. Tr. 262:23–265:4. Such testimony has continued in fact discovery during this litigation. Plaintiffs recently deposed another Finance Director within Google's Platforms & Ecosystems group, whose role includes analyzing "the size of the deal or what the payment would look like" in revenue share agreements with certain Android partners. Dec. 15, 2021 Dep. Tr. at 74:5–12. Although the witness explained that the financial analyses "var[y] deal by deal," she also described the types of analyses her team periodically conducts to the extent that Plaintiffs asked about them. *E.g.*, *id.* at 74:17–76:21. Similarly, Plaintiffs have deposed another Finance Director at Google who is familiar with financial analyses of certain agreements with third-party browser providers with whom Google has negotiated revenue sharing agreements. *See, e.g.*, Oct. 8, 2021 Dep. Tr. 27:8–15 (testifying

16

about usage of the term "incremental revenue"); 185:24–186:8 (testifying about usage of the term "lifetime value"); 191:5–193:23 (testifying about "winback" and "clawback" rate analyses). The same witness also testified that he had made recommendations in the past about "a maximum revenue share that Google should offer to [a] proposed distribution partner," *id*. at 29:25–30:10, and although he explained that his team's analysis varies deal-by-deal, he described the sorts of analyses they typically conduct in response to Plaintiffs' questions, *e.g.*, *id*. at 30:22–32:13.

Moreover, Plaintiffs have taken several depositions of employees involved in the negotiations of revenue share agreements, and they had the opportunity to ask them about what Google seeks in those negotiations, and how it determines the financial terms it is willing to offer in connection with each deal. For example, Plaintiffs deposed a Vice President of Partnerships regarding negotiations with wireless carriers, as well as a Vice President of Android Platform Partnerships, who had already been deposed during Plaintiffs' pre-Complaint investigation regarding agreements with smartphone manufacturers. Plaintiffs have not offered any reasonable justification for requiring Google to educate a witness to testify about an overbroad topic shortly after conducting numerous Rule 30(b)(1) depositions where they had the opportunity to inquire about the subject matter encompassed by the topic. *See, e.g.*, *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, 312 F.R.D. 560, 563–64 (N.D. Cal. 2016) (concluding that a Rule 30(b)(6) topic would unjustifiably burden the defendant "by requiring it to make one of its witnesses available for a second day of deposition," and adding that "[t]his is especially true in light of the recently revised Federal Rule of Civil Procedure 26(b)(1), which balances the proportional needs of the case"); *Banks*, 222 F.R.D. at 19 (precluding plaintiff's attempt to use a Rule 30(b)(6) deposition to "ask questions that duplicate questions previously asked of other witness[es] or seek information that he already has by virtue of responses to other discovery devices"); *see also* Sept. 28, 2021 Hr'g

Tr. 46:1–22 (observing that although "Rule 30(b)(6) witnesses perform … a function and create admissions that a fact witness does not," this "is an unusual case" in that Plaintiffs have "up to 80 fact depositions").

Nor are Plaintiffs by any stretch done with taking Rule 30(b)(1) testimony on these subjects.  In February, for example, Plaintiffs will take the deposition of Google's Chief Financial Officer; in conferral over the need for a deposition of such a senior executive, Plaintiffs represented that they needed such a deposition to inquire about "how she evaluated proposed deals, the relative importance of deal terms, details material to her consideration, and any deal models she approved."  Nov. 29, 2021 Email from A. Cohen.  Similarly, Plaintiffs have noticed a two-day deposition of Google's Chief Business Officer, predicated in part on their assertion that he "personally negotiated, approved negotiation strategy, and/or was the signatory on several relevant Google [revenue share] agreements."  Dec. 20, 2021 Email from A. Cohen.

In allowing Plaintiffs to serve four Rule 30(b)(6) notices over the course of the discovery period, the Court specifically cautioned Plaintiffs to avoid a "kitchen-sink-type 30(b)(6) notice" and focus on "topics as to which a 30(b)(6) witness *is actually required*."  Sept. 28, 2021 Hr'g Tr. 44:23–45:6 (emphasis added).  Topic 3 runs afoul of that guidance, as Plaintiffs had, and will continue to have, ample opportunity to obtain testimony on the subject matter covered by Topic 3.  Plaintiffs cannot now obtain testimony through a Rule 30(b)(6) deposition simply because they chose not to pose questions that would elicit that testimony in individual fact depositions or want to generate unnecessary burden by posing the same questions again.  Asking Google to prepare a witness to testify with respect to the wide swath of information that falls within the purview of Topic 3 is wholly impracticable, and Plaintiffs' request for Rule 30(b)(6) testimony on the topic should be denied.

Dated: January 4, 2022     Respectfully submitted,

By: */s/ Kenneth M. Dintzer*   
Kenneth M. Dintzer
Jeremy M. P. Goldstein
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States*

By:  */s/ Jonathan R. Carter*   
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

By:  */s/ Adam Miller*    
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By:  */s/ Lee Istrail*     
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol

Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:    */s/ Daniel Walsh*
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Dale Margolin Cecka, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
dcecka@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:    */s/ Scott L. Barnhart*
Theodore Edward Rokita, Attorney General Scott
L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By:    */s/ Philip R. Heleringer*
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: 502-696-5647
philip.heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By:_____/s/ Christopher Alderman_____
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:_____/s/ Scott Mertens_____
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lasing, MI 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:_____/s/ Stephen Hoeplinger_____
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:_____/s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:_____/s/ Mark Mattioli_____
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer

21

Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, MT 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By:_____*/s/ Rebecca M. Hartner*_____
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:_____*/s/ Bret Fulkerson*_____
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:_____*/s/ Gwendolyn J. Lindsay Cooley*_____
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, WI 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By: */s/ Jonathan B. Sallet.*

Jonathan B. Sallet, Special Assistant
Attorney General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General
(D.C. Bar No. 1022365 *inactive*)
Diane R. Hazel, First Assistant Attorney
General (D.C. Bar No. 1011531 *inactive*)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff Colorado*

Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*

Brunn W. (Beau) Roysden III, Solicitor
General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney
General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff Arizona*

23

Max Merrick Miller
Attorney General's Office for the State of
Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*

Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*

Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*

J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter
P.O. Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*

Jeff Pickett
Senior Assistant Attorney General
jeff.pickett@alaska.gov
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100

*Counsel for Plaintiff Alaska*

Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No.
1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*

Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection
Division
Benjamin Bernard Paholke, Assistant
Attorney General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*

Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*

Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

26

*Counsel for Plaintiff Idaho*

Erin L. Shencopp
Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
eshencopp@atg.state.il.us
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff Illinois*

Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202

410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*

Matthew B. Frank, Assistant Attorney
General Antitrust Division
William T. Matlack, Assistant Attorney
General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

28

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*

Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*

Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio,
Antitrust Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*

Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*

Yvette K. Lafrentz
Office of The Attorney General of
South Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of
Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West
Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Plaintiff Wyoming*

By:  /s/ *John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
Williams & Connolly LLP
725 12th Street, NW
Washington, DC 20005
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wilson Sonsini Goodrich & Rosati P.C.
1700 K St, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

Mark S. Popofsky (D.C. Bar No. 454213)
Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*