## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>████████████████<br>████████████████ |
| State of Colorado, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>████████████████ |

### JOINT STATUS REPORT

In accordance with the Court's Minute Order dated January 7, 2022, the parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report summarizing the state of discovery and identifying any issues between the parties, and the parties' respective positions, that will be raised at the status hearing scheduled for February 11, 2022.

I.     **Case No. 1:20-cv-03010**

    A.     **Google's Discovery of Plaintiffs**

A summary of Google's First Set of Requests for Production and prior document productions made by Plaintiffs are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), and January 4 (ECF No. 271).

Google served its First Set of Interrogatories on January 21, and Plaintiffs' responses and objections are due on February 22.

Plaintiffs served their First Amended Initial Disclosures on January 14.  Google and Plaintiffs respectfully seek the Court's guidance on a dispute relating to the initial disclosures. Google's position statement on this issue is set forth below in Section III.A, and Plaintiffs' statement is set forth in Section III.B.

Google respectfully requests that the Court amend two provisions of the Stipulated Protective Order (ECF No. 98).  Google's position statement on this issue is set forth below in Section VI.A.  Plaintiffs take no position on the matter.

    B.     **Plaintiffs' Discovery of Google**

A summary of Plaintiffs' First through Eighth Sets of Requests for Production and the document productions previously made by Google are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), and January 4 (ECF No. 271).  Google produced additional

documents on January 6, 11, 13, 17, 19, 24, 26, and 31 as well as February 2, and Google produced additional data on January 14, 24, 28, 29, and 31 as well as February 2.

Plaintiffs served their First Set of Interrogatories on December 9, and Google served responses and objections on January 10, which it supplemented on January 31.

Plaintiffs have completed twenty-seven depositions of current or former Google employees.  The parties have scheduled eight for the coming weeks, and the parties are in the process of scheduling four more.  The parties dispute the propriety of two forms of conduct that have occurred at certain depositions of Google witnesses and respectfully seek the Court's guidance on the matter.  Google's position statement on this issue is set forth below in Section IV.A, and Plaintiffs' statement is set forth in Section IV.B.

Plaintiffs have also completed depositions pursuant to Rule 30(b)(6) notices issued in July 2021 and November 2021.  At this time, Plaintiffs have completed approximately sixteen hours of Rule 30(b)(6) depositions.

Plaintiffs respectfully seek the Court's guidance on a dispute relating to the timing of Google's written response to Topic 3 of the Rule 30(b)(6) Notice issued in November 2021. Plaintiffs' position statement on this issue is set forth below in Section V.A, and Google's statement is set forth in Section V.B.

C.     **The Parties' Discovery of Third-Parties**

A summary of the third-party discovery requests previously issued by the parties is set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), and January 4 (ECF No. 271).  The parties have issued document subpoenas to approximately 125 third parties in total.  The parties

anticipate that they will continue to issue additional document subpoenas as discovery progresses.

The parties have completed six third-party depositions that were noticed by both Plaintiffs and Google as well as one that was noticed only by Google.  Plaintiffs have noticed four depositions of third-parties for dates in February and March, and Google has issued cross-notices to three of those witnesses.  In addition, Google has noticed twenty-three depositions of other third-parties for dates in February, March, and April, and Plaintiffs have cross-noticed two of them.  The parties anticipate that they will continue to issue additional deposition subpoenas as discovery progresses.

## II.     Case No. 1:20-cv-03715

### A.     Google's Discovery of Plaintiff States

A summary of Google's First Set of Requests for Production and the document productions made by Plaintiffs to date are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), and January 4 (ECF No. 271).

Google served its First Set of Interrogatories on January 21, and Plaintiffs States' responses and objections are due on February 22.

Plaintiff States served their First Amended Initial Disclosures on January 14.  As indicated above, Google respectfully seeks the Court's guidance on a dispute relating to the initial disclosures.  Google's position statement on this issue is set forth below in Section III.A, and Plaintiff States' statement is set forth in Section III.C.

4

### B.       Plaintiff States' Discovery of Google

A summary of Plaintiff States' First through Fourth Sets of Requests for Production and the document productions previously made by Google are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256), and January 4 (ECF No. 271).  Google has continued to produce to Plaintiff States the documents and data produced to the U.S. Plaintiffs and its co-plaintiffs in Case No. 1:20-cv-03010 in addition to producing documents and data in response to Plaintiff States' First, Second, Third, and Fourth Sets of Requests for Production.

Plaintiff States served their Fifth Set of Requests for Production on February 1.  Google's responses and objections are due on March 3.

A summary of the depositions of current and former Google employees and third parties is set forth above in Section I.B.  In accordance with the Scheduling and Case Management Order, Plaintiff States and the U.S. Plaintiffs are coordinating in the noticing and scheduling of all depositions.  In addition to depositions of witnesses addressing issues common to both cases, to date, Plaintiff States have taken or noticed depositions of fourteen Google employees and third parties focused primarily on issues related to the Plaintiff States' case.  As indicated above, the parties dispute two matters relating to deposition proceedings that have occurred at certain depositions of Google witnesses and respectfully seek the Court's guidance on the matter. Google's position statement on this issue is set forth below in Section IV.A, and Plaintiffs' statement is set forth in Section IV.C.

C.      **The Parties' Discovery of Third Parties**

The parties have issued document subpoenas to approximately 116 third parties.  Both parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.  A summary of the third-party depositions that have been recently scheduled is set forth above in Section I.C.  The parties anticipate that they will continue to issue additional deposition subpoenas as discovery progresses.

III.  **The Parties' Dispute Regarding Amended Initial Disclosures**

A.      **Google's Position Statement**

At last month's status conference, the DOJ Plaintiffs indicated they would "narrow" their initial disclosures because they have "gathered information and there's certain individuals that [they] don't need to have on the disclosures anymore."  Jan. 7, 2022 Hr'g Tr. 5:5-7, 13:13-18.  Although both groups of Plaintiffs served amended initial disclosures on January 14, they cannot be considered "narrow."  The DOJ Plaintiffs identified more than 150 individuals associated with dozens of third-party entities.  *See* Ex. A (DOJ Plaintiffs' First Amended Initial Disclosures).  The Colorado Plaintiffs, meanwhile, increased rather than decreased the number of individuals and entities on their disclosures.  *See* Ex. B (Colorado Plaintiffs' First Amended Initial Disclosures).  After more than a year of fact discovery, which followed more than a year of pre-complaint discovery, Plaintiffs still have not identified which witnesses they reasonably expect to rely upon to support their claims.  Their approach has undermined the fundamental "purpose of initial disclosures," which are designed "to assist other parties in deciding which depositions will actually be needed," and "should result in narrowing and sharpening the issues."  *United States ex rel. Raggio v. Jacintoport Int'l, LLC*, 2015 WL 13708452, at *6 (D.D.C. Oct. 26, 2015) (internal quotation marks and brackets omitted).  The Court should order Plaintiffs promptly to

further amend their disclosures to identify the third-party witnesses whose testimony they reasonably expect to rely upon to support their claims.

### 1.     Plaintiffs Have Not Meaningfully Narrowed Their Disclosures

The amended initial disclosures that Plaintiffs served on January 14 are overbroad and uninformative.  Although the DOJ Plaintiffs trimmed the total number of third-party *entities* on their disclosures from 136 to 58, the number of third-party *individuals* identified by name barely changed.  The DOJ Plaintiffs' amended disclosures still list more than 150 individuals associated with dozens of third-parties—a figure that does not include the dozens of current or former Google employees they have also identified.  In several instances, the DOJ Plaintiffs significantly increased the number of individual witnesses associated with a particular third party.  For example, the number of "[c]urrent and former employees of Microsoft" on the DOJ Plaintiffs' disclosures nearly doubled, from 9 on the disclosures served more than a year ago to 17 on the amended disclosures delivered last month.  And the number of "[c]urrent and former employees of Samsung and its subsidiaries" listed on the amended disclosures increased to 14, only 2 of whom appeared on the disclosures that the DOJ Plaintiffs served last year.

The Colorado Plaintiffs, for their part, did not "narrow" their disclosures, but rather increased both the number of third-party entities on their disclosures (from 38 to 51) and the number of individuals witnesses associated with those entities (from 42 to 72).  Taken together, Plaintiffs' amended initial disclosures identify by name more than 300 individuals, consisting of more than 175 individuals associated with third-party entities, in addition to approximately 140 current and former Google employees.

In preparing the amended disclosures, Plaintiffs refused to distinguish the witnesses who they presently believe they may rely upon to support their claims from those who have been

included as a kind of recordkeeping exercise.  For instance, the DOJ Plaintiffs identified by name five "[c]urrent and former employees of State Farm," an insurance company that probably is not expecting to make at least five of its employees available for deposition in this case.  And that is not an isolated example, as the DOJ Plaintiffs have also disclosed two or more individual witnesses associated with companies such as Bank of America, Fiat Chrysler, Ford, GEICO, General Motors, Progressive, Southwest Airlines, and Wells Fargo.  In these instances and others, it is unclear whether Plaintiffs are merely cataloging the document custodians that they negotiated with these third-party entities, or whether they may call upon these individuals to testify in support of their claims.  To offer another example, the DOJ Plaintiffs' disclosures include approximately 20 individuals who are described as the CEO of their respective businesses.  It is unclear whether Plaintiffs expect to rely upon the testimony of some or all of these chief executives, or whether Plaintiffs decided to list the name of a natural person associated with particular third-party entities and found it most convenient to identify the chief executive.

Plaintiffs' failure to provide more accurate disclosures is most vexing as it relates to the companies involved in instigating this litigation.  On January 14, Plaintiffs collectively disclosed 19 individual witnesses associated with Microsoft, leaving Google to guess which of those 19 individuals Plaintiffs actually expect to rely upon to support their claims at trial.  Plaintiffs have already made clear that they do not intend to use the discovery period to elicit the testimony of those witnesses, as they have cross-noticed only one of the nine Microsoft depositions noticed by Google to date.  Given that Plaintiffs cannot realistically call 19 Microsoft witnesses at trial, they should promptly identify those individuals whose testimony they presently intend to rely upon.

The same overbreadth affects Plaintiffs' disclosure of witnesses affiliated with other third-party entities that were identified by name in their Complaints.  For example, the DOJ Plaintiffs' amended initial disclosures list 14 current and former employees of Samsung, none of whom has been noticed for deposition.  The DOJ Plaintiffs' disclosures also identify 10 witnesses associated with Apple, 7 with AT&T, 6 with Verizon, 5 with Amazon, 4 with T-Mobile, and 3 with U.S. Cellular.  Again, Plaintiffs are not using their depositions to identify which witnesses they intend to rely upon to support their claims, as they have issued notices to only 6 of the 35 individuals associated with these companies.

### 2. Google's Request for More Accurate Disclosures Is Not Premature

By listing more than 175 individual third-party witnesses at this stage of discovery, Plaintiffs have obscured their intentions in a manner that defeats the purpose of the disclosures. *See* Fed. R. Civ. P. 26 Advisory Committee's Note (1993) (noting that the initial disclosures required by Rule 26(a)(1) are intended to "assist other parties in deciding which depositions will actually be needed"); *Raggio*, 2015 WL 13708452, at *6; *Klayman v. Barmak*, 2009 WL 10695670, at *1 (D.D.C. Oct. 28, 2009) (explaining that "the Rule 26(a)(1)(A) disclosure should provide enough information that would allow the opposing party to help focus the discovery that is needed").  With respect to at least some of the third parties identified, Plaintiffs have not distinguished those witnesses they presently believe they "may use to support [their] claims" from those who merely bear some relation to the vast number of documents produced in this case.  That overbreadth renders the disclosures deficient.  *See, e.g.*, *City of Chicago v. Purdue Pharma L.P.*,  2017 WL 2819948, at *2 (N.D. Ill. Mar. 3, 2017) (observing that a number of courts have interpreted Rule 26(a)(1) "to require disclosure of the witnesses a party may use, not every individual who might have relevant knowledge," and noting that "in a case challenging

some corporate-wide policy, conceivably every employee would have some useable information about the policy, but it would cut against the purpose of the Rule, which is to streamline discovery, if the Rule required the disclosure to reach that far").

To be clear, Google is not seeking a premature disclosure of Plaintiffs' trial witness list, even though that would not necessarily be an unreasonable request given the amount of time Plaintiffs have already devoted to document and deposition discovery during their investigation and this litigation. *See D'Onofrio v. SFX Sports Grp., Inc.*, 247 F.R.D. 43, 53-54 (D.D.C. 2008) (describing circumstances under which a "party may be compelled to disclose during discovery the identity of trial witnesses," while acknowledging that this is not the "majority view" in the mine run of cases). Rather, Google merely seeks to compel Plaintiffs to serve initial disclosures that are free from the excessive overbreadth that makes it unnecessarily difficult to discern which witnesses Plaintiffs reasonably expect to rely upon to support their claims. *See, e.g.*, *CFTC v. Montano*, 2019 WL 10375477, at *3 (M.D. Fla. Mar. 6, 2019) (directing plaintiff to amend initial disclosures that list more than 100 witnesses, as this approach "fails to enable [the defendant] to either adequately prepare his case"); *United States ex rel. Brown v. Celgene Corp.*, 2015 WL 12731923, at *3 (C.D. Cal. July 24, 2015) (concluding that plaintiff's "list of 130 potential witnesses, without any indication of the subject matter of their anticipated testimony, does not further the purposes of Rule 26(a)(1)(A)(1)," and ordering plaintiff to serve "a revised witness list pursuant to Rule 26(a)(1)(A)(i) narrowing the list of witnesses to those she now believes in good faith she 'may use' to support her claims"). Simply put, Plaintiffs should serve disclosures that provide "a useful framework to ensure that [the] parties are reading from the same playbook" during the remainder of discovery. Jan. 7, 2022 Hr'g Tr. 55:7-9.

3.      **Plaintiffs' Arguments Regarding Google's Initial Disclosures Are Misplaced**

In correspondence about this issue, Plaintiffs have deflected Google's request by insisting that Google amend its own initial disclosures.  In doing so, Plaintiffs have overlooked the fact that the parties are differently situated in several important respects.

Because Google is the defendant, the particular witnesses that it may rely upon to support its defenses are determined in part by the details of Plaintiffs' claims and the witnesses that they may rely upon to support them.  Google has attempted to bridge this gap by serving interrogatories designed to elicit crucial information that Plaintiffs decided not to include in their Complaints.  For example, Plaintiffs' claims are predicated in part on their assertion that "Google has entered into exclusionary agreements" with "popular-device manufacturers," "major U.S. wireless carriers," and "browser developers."  DOJ Plaintiffs' Am. Compl. ¶ 4.  Google has asked Plaintiffs to specify, among other things, which agreements they allege to have harmed competition.  The answer to that interrogatory and others will necessarily affect which non-party witnesses Google may rely upon to support its defenses.[1]  In the absence of that kind of detailed disclosure from Plaintiffs, Google identified potentially pertinent categories of non-party entities at the same level of generality that Plaintiffs deemed appropriate in their Complaints, in addition to specifying by name the approximately 30 current and former Google employees that it may use to support its defenses.  And Google has noticed the depositions of dozens of third-party witnesses whose testimony Google may rely upon at trial.  Google will of course amend its

---

[1] To offer another example, the claims that are unique to the Colorado Plaintiffs' Complaint are predicated in part on Google's alleged conduct with respect to some number of unspecified "commercial segments."  *See, e.g.*, Colorado Plaintiffs' Compl. ¶ 52 (asserting that "Google takes advantage of certain specialized vertical providers' dependence on Google, treating them differently than participants in other commercial segments").  Google's interrogatories ask the Colorado Plaintiffs to specify, among other things, which "commercial segments" are the subject of the purportedly exclusionary conduct that they seek to remedy.

initial disclosures—whether by adding or deleting individual witnesses, or replacing more general categories with the names of individual witnesses—if it receives information that warrants supplementation.  At present, however, it is waiting on the two most likely sources of that information, namely a reasonable narrowing of Plaintiffs' initial disclosures and substantive responses to its interrogatories, which are due February 22.

### B.   U.S. Plaintiffs' Position Statement Regarding Their Initial Disclosures

The Court should deny Google's request that U.S. Plaintiffs amend and narrow their initial disclosures to identify witnesses whose fact testimony U.S. Plaintiffs expect to rely on at trial, because Google's request conflicts with Federal Rule of Civil Procedure 26(a).

The Federal Rules provide a clear distinction between the disclosure of individuals with information and likely trial witnesses. First, Rule 26(a)(1)(A)(i) requires broad disclosure of "each individual likely to have discoverable information" that the party *may* "use" to support its claims or defenses. A party must amend its initial disclosures throughout discovery, but need not narrow beyond those individuals "likely to have discoverable information."

Then, after discovery closes, Rule 26(a)(3)(A)(i) requires a pretrial disclosure of witnesses the party may call at trial. *See also* ECF No. 108-1 (Amended Scheduling and Case Management Order ("CMO")), ¶¶ 5, 8 (witness lists first exchanged in pretrial disclosures). Well over a year ago, Google agreed that the framework laid out in the Federal rules should govern this case (ECF No. 70; *see also* ECF No. 85 at ¶¶ 2, 5); indeed, this agreement was reached *after* Google received U.S. Plaintiffs' original initial disclosures. Similarly, Google raised no concerns for the first 12 months of discovery.

U.S. Plaintiffs provided their initial disclosures to Google on November 20, 2020, and a slightly narrowed list on January 29, 2021.[2] In the January 29, 2021 disclosures, U.S. Plaintiffs identified 136 third parties and 190 individuals from those third parties. Google had more than a year to articulate any concerns with those disclosures, but stood silent. On January 14, 2022, pursuant to Federal Rule of Civil Procedure 26(a)(1)(E), U.S. Plaintiffs amended their disclosures; on the whole, U.S. Plaintiffs reduced the number of organizations and individuals, adding some new organizations and individuals that U.S. Plaintiffs concluded—through the discovery process—may have discoverable information. U.S. Plaintiffs' disclosures now only list individuals from 58 entities—fewer than half of the 125 third parties subpoenaed in this case.

U.S. Plaintiffs' voluntary amendment underscores their cognizance of the Federal Rules' ongoing discovery obligations and good-faith approach to discharging those obligations.[3] In contrast, Google's initial disclosures identify only Google employees, and Google indicates it has no intention of amending these disclosures, despite the Rules' requirements that they do. Google argues that they are not required to disclose third parties—a position with no support in the rules.

Google now claims U.S. Plaintiffs must refine their initial disclosures, only listing "individuals Plaintiffs reasonably anticipate relying upon to support their claims at trial,"[4] Jan.

---

[2] The January 29, 2021 supplemented discloses added states who had joined DOJ's complaint since the November 20, 2020 disclosures, replaced one individual, and removed four entities.

[3] U.S. Plaintiffs also added 23 Google employees, and 3 former Google employees to their 1/14/2022 Amended Disclosures, bringing the total disclosed to 60 Google employees and 19 former Google employees. Google presumably has access to these individuals outside the deposition chair.

[4] Google later confirmed this would require U.S. Plaintiffs to specifically "identify the individual fact witnesses whose testimony they reasonably expect to rely upon." Feb 4, 2022 email from Graham Safty.

24, 2022 Ltr. from Schmidtlein, a position which would wholly excise the words "likely to have discoverable information" from Rule 26(a)(1)(A)(i). Google's position misreads the rules and would unfairly box the U.S. Plaintiffs into trial positions before expert discovery has even begun.

Plain language aside, Rule 26(a)(1)(A)(i) contains no requirement that U.S. Plaintiffs reduce their disclosures to a witness list—even a tentative list. Indeed, this Court suggested in *Sysco* that the law is precisely the opposite, stating that the broad scope of initial disclosures "is 'based on the principle that persons having knowledge of relevant facts are not necessarily the witnesses of any particular party.'" *FTC v. Sysco Corp.*, 308 F.R.D. 19, 22 (D.D.C. 2015) (citation omitted). Even when a party properly seeks preliminary disclosure of potential trial witnesses—which Google has not—the "traditional view" is that such requests should fail absent a particular need. *D'Onofrio v. SFC Sports Grp., Inc.*, 247 F.R.D. 43, 53–54 (D.D.C. 2008) (denying disclosure and collecting cases for the "traditional view"). *See also Brock v. R.J. Auto Parts and Serv., Inc*., 864 F.2d 677, 679 (10th Cir. 1988) ("Ordinarily . . . discovery is not the state of litigation at which a party identifies its prospective witnesses.").

Here, the Court has already set the date for U.S. Plaintiffs and Google to exchange initial witness lists: June 20, 2023—nearly 18 months from now. CMO ¶¶ 5, 8. Google presents no reason to modify the existing schedule, let alone the sufficient "good cause" required under Rule 16(b)(4) and Local Civil Rule 16.4(a); *see also D'Onofrio*, 247 F.R.D. 43 at 54 ("particular need" necessary for early witness disclosure). Instead, Google's only self-identified need is a garden-variety dilemma of civil litigation: "[i]n every case, a party, having received her opponent's initial disclosures, must husband the limited number of depositions and choose the most important or significant witnesses." *ASPCA v. Feld Entm't, Inc.*, 03-cv-2006 (EGS/JMF), 2007 U.S. Dist. LEXIS 98654, at *3 (D.D.C. Dec. 18, 2007).

Notably, Google does not propose a reciprocal exchange, but instead contends it should be exempt from the heightened disclosure obligations it seeks to impose on U.S Plaintiffs. Google has informed the Court it has no plans to amend its disclosures because Google believes it need not name any specific third parties if those third parties were subject to discovery. Hr'g Tr. at 55:3–5 (Jan. 7, 2022). It is thus Google—not U.S. Plaintiffs—whose disclosures contain overbroad "categories of potential witnesses, with no names or addresses, that could contain thousands of possible persons or companies" that fail to satisfy Rule 26. *Guantanamera Cigar Co. v. Corporacion Habanos, S.A*., 263 F.R.D. 1, 4 (D.D.C. 2009). Google's deficiency exacerbates the impropriety of its proposed one-way disclosure obligation.

In any event, U.S. Plaintiffs' disclosures satisfy their Rule 26 obligations. Google has not suggested to U.S. Plaintiffs that their disclosures lack reasonable inquiry, as required by Federal Rule of Civil Procedure 26(g)(1). Google's single-minded emphasis on the number of persons and entities listed in U.S. Plaintiffs' disclosures is misguided. "The sheer volume of a part[y's Rule 26(a) disclosures] cannot by itself, constitute a violation of Rule 26(a)" because "the size of self-executing initial disclosure statements necessarily depends on the type of case involved. Logically, therefore, the more complex the case . . . , the larger the disclosure statements should be." *United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 223 F.R.D. 330, 333 (E.D. Pa. 2004) (finding that the United States' amended disclosures, listing more than 3,900 individuals, satisfied Rule 26(a)). Here, U.S. Plaintiffs' disclosures are proportional to the vast scope of this case, which itself is based on Google's own conduct—resulting in it becoming one of America's largest companies—and its interactions with (and unilateral effects on) innumerable other entities. In this context, the volume of U.S. Plaintiffs' disclosures is manifestly reasonable. And U.S.  Plaintiffs' disclosures provide sufficient detail, including

individuals' titles, contact information, and the topics on which they are likely to have discoverable information.

In sum, this Court should reject Google's request. If it does grant the request in whole or in part, the Court should order Google to provide reciprocal equivalent disclosures to U.S. Plaintiffs.

### C.      Plaintiff States' Position Statement Regarding Their Initial Disclosures

The Court should deny Google's request that Plaintiffs amend their initial disclosures. Plaintiff States do not understand Google's current dispute with Plaintiff States' Rule 26(a)(1) amended initial disclosures because Plaintiff States' amended initial disclosures are tailored and proportional to a case of this magnitude.

Plaintiff States served Google with its amended initial disclosures on January 14 pursuant to the Court's order during the January 7 Status Conference. Hr'g. Tr. at 53:14-24. That amendment included 14 additional companies and 30 additional current or former employees of third parties. Accordingly, Plaintiff States' Amended Initial Disclosures now include a total of 52 companies and 72 current or former employees from third parties. On January 24, Plaintiff States received correspondence from Google requesting Plaintiffs to promptly serve second amended disclosures to address the purported overbreadth of their amended initial disclosures. Plaintiff States disagree with Google's characterizations and contend that their amended initial disclosures are consistent and appropriate for a case of this magnitude.

Plaintiff States have taken a tailored approach to their initial disclosures since the beginning of this litigation. Plaintiff States served its original initial disclosures on January 20, 2021, which contained 38 companies and 42 current or former employees from those companies. For nearly 12 months, Google made no objections to Plaintiff States' initial disclosures

After more than a year of extensive third-party discovery, the issuance of more than 100 third-party subpoenas, and the commencement third-party depositions, Plaintiff States voluntarily amended their initial disclosures to include 14 new companies and 30 current or former employees of third parties.

Despite these narrow additions to Plaintiff States' initial disclosures, Google now erroneously contends that Plaintiff States' initial disclosures lists nearly every document custodian that Plaintiffs have negotiated with every third-party subpoena recipient. To the contrary, Plaintiff States' Amended Initial Disclosures merely list 52 entities — far fewer than the more than 100 third parties that have received subpoenas in this case – and the number of individuals listed on Plaintiff States' amended initial disclosures pales in comparison to the number of document custodians in this case.

Accordingly, the Court should reject Google's request.

## IV. The Parties' Dispute Regarding the Proper Progression of Questioning at Depositions

### A. Google's Position Statement

Plaintiffs recently have engaged in two forms of deposition conduct that are unorthodox as well as contrary to the Federal and Local Rules.  First, the DOJ has used two different attorneys to question the same witness during the same deposition.  Second, a DOJ attorney took multiple turns at questioning the same witness without any intervening examination from Google (allowing an attorney from the Colorado Plaintiffs to question in the interim).  In each instance, Google allowed Plaintiffs to complete the deposition at issue but noted its objection on the record and asked Plaintiffs to refrain from these two practices in the future.  Plaintiffs refused and indicated that they will continue to engage in the same conduct at upcoming depositions of

Google witnesses.  Google therefore seeks an order requiring Plaintiffs to refrain from engaging in these improper tactics going forward.

### 1.      A Party Should Not Use Multiple Questioners During a Single Deposition

First, the DOJ maintains that it may use more than one of its attorneys to examine the same witness during a single deposition in contravention of the applicable Rules.  Under Fed. R. Civ. P. 30(c)(1), the "examination and cross-examination of a deponent proceed as they would at trial…."  Local Civil Rule 83.3, in turn, provides that "[e]xcept by permission of the Court only one attorney on each side shall examine a witness, address the Court on a question arising in a trial, or address the Court or jury in final argument."  Taken together these two Rules dictate that, absent leave of Court, a single attorney for a party should conduct each deposition.  *See, e.g.*,  7 Moore's Federal Practice - Civil § 30.42 (2021) (observing that "[i]n light of the rule that examination and cross-examination proceeds as permitted at trial, counsel should consider any local rules governing the examination of witnesses," such as "local rules permit[ting] only one attorney to examine a witness at trial"); *see also Kadant Johnson, Inc. v. D'Amico*, 2012 WL 38319, at *2 (E.D. La. Jan. 9, 2012) (denying plaintiff's motion to permit two attorneys to question deponents on two distinct legal issues in consolidated case, and noting that the Court "discerns no reason why" a single lawyer for plaintiff "cannot also question deponents" concerning all issues in the case); *Riley v. Murdock*, 156 F.R.D. 130, 132 (E.D.N.C. 1994) (requiring the same attorney who conducted the first session of a deposition to conduct the second session because "[t]he practice in this judicial district is to allow only one attorney to examine a witness").

The DOJ did not seek permission from the Court before dividing its questions among two DOJ attorneys, and it did not even notify Google of its plan to use multiple examiners until

moments before the deposition began.  The only justification that Plaintiffs have offered for this tactic is "efficiency."  That standard is not reflected in the applicable Rules, and Plaintiffs have offered no explanation why a single attorney for each party cannot adequately complete a deposition.

To be clear, Google has not objected to one attorney for the DOJ Plaintiffs handling a portion of the questioning before yielding the remaining time to one attorney for the Colorado Plaintiffs, or vice versa.  That has occurred in many of the depositions to date, and Google has not insisted that the two groups of Plaintiffs collectively funnel their questions through one attorney.  A single group of Plaintiffs, however, cannot attempt to gain a tactical advantage by using multiple attorneys to conduct the examination.

## 2.    The Two Groups of Plaintiffs Should Not Alternate Their Questioning

Plaintiffs likewise have refused Google's request that they refrain from taking multiple turns at examining the same witness during the same deposition.  For example, during a two-day deposition in January of a Google witness who had already been deposed by the DOJ during the investigative phase, a DOJ attorney examined the witness for approximately ten hours before yielding to an attorney for the Colorado Plaintiffs, who examined the witness for approximately three hours.  Although the deposition should have ended there, the DOJ attorney instead resumed questioning the witness for another hour, without any intervening examination from Google's counsel.  Again, Fed. R. Civ. P. 30(b) provides that "examination and cross-examination of a deponent proceed as they would at trial," and at trial the DOJ would not have two opportunities to question a witness absent an intervening cross or re-direct examination.  Plaintiffs did not point to any authority that would justify their conduct during or after the deposition in question, citing only the purported "efficiency" of their unusual and improper approach.

The objective of efficiency would be better served by the DOJ Plaintiffs and the Colorado Plaintiffs deciding in advance how they intend to divide up their ample deposition time; conducting their respective examinations consistent with the rules; and then bringing the deposition to a close.  That objective is not advanced by allowing two examiners to trade off questions, or by permitting an attorney to take a second pass at the witness during the 13th hour of a deposition after both groups of Plaintiffs have already engaged in extensive questioning. There is no reasonable basis for giving the same party a second bite at the apple, and Plaintiffs should be barred from doing so in future depositions of both Google witnesses and third parties.

**B.     U.S. Plaintiffs' Position Statement: Google's Improper Deposition Limitations**

The Court should reject Google's request that the Court adopt limits on how deposition time may be apportioned, because the limitations would create inefficiencies and would conflict with the CMO.

More than one year into discovery and 6 months after the first depositions in this matter, Google asks the Court to impose new limits on Plaintiffs' ability to efficiently staff and conduct depositions. Namely, Google seeks to limit (i) the number of attorneys who may examine a witness during a deposition, and (ii) the manner in which attorneys from the U.S. and Colorado Plaintiffs divide deposition questioning time amongst themselves. To support its request, Google accuses U.S. Plaintiffs of misconduct at two recent depositions. Google's claims are groundless. U.S. Plaintiffs have conducted all depositions in an appropriate and efficient manner, consistent with all applicable rules and the Case Management Order in this litigation.

Google's proposed limitations not required by either the local or Federal Rules, and its efforts to dictate Plaintiffs' allocation of time amongst themselves for questioning at depositions is inconsistent with the CMO's plain language. Moreover, Google has failed to show any

prejudice requiring a change in rules. Accordingly, the Court should reject Google's belated attempt to add new deposition limitations at this late stage of discovery.

### 1. Google's Proposed Limitations on Deposition Staffing are Unsupported by the Rules and Contrary to Practice in this Litigation

The Court should reject Google's demand that Plaintiffs limit deposition questioning to a single attorney from each of the U.S. Plaintiffs and Colorado Plaintiffs. Nothing in the Federal Rules of Evidence requires a single attorney to examine a witness at trial or deposition, and Google has been unable to articulate any prejudice arising from the practice, even as the efficiencies are manifest.

Google's proposed rule is based on its mischaracterization of Plaintiffs' conduct at the deposition of a Google executive in December. The executive was deposed for fourteen hours over two days, as permitted by the CMO and as requested in the deposition notice, to which Google did not object. At the beginning of the deposition's first day, U.S. Plaintiffs notified Google that one DOJ attorney would examine the witness on the first day, and a second DOJ attorney would examine the witness during the deposition's second day. Google objected, but could not identify any prejudice to itself or the witness from having two attorneys each conduct a separate day of questioning. Indeed, dividing responsibility for the deposition among two attorneys was the most efficient way for U.S. Plaintiffs to accommodate the witness' request to reschedule the deposition one week earlier than originally noticed.

The applicable rules do not support Google's position that using two attorneys to conduct successive examinations during deposition is prohibited. Federal Rule of Civil Procedure 30(c)(1) requires only that "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . ." Fed. R. Civ. P. 30(c)(1). Nothing

in the Federal Rules of Evidence dictate the number of attorneys who may question a witness at deposition. Google fares no better under the local rules.

Although Local Civil Rule 83.3 does limit questioning at trial to a single attorney except by permission of the Court, the rules contain no similar restrictions on the number of attorneys who may question a witness at deposition. *Compare* L.Cv.R. 83.3 ("Except by permission of the Court only one attorney on each side shall examine a witness, address the Court on a question arising in a trial, or address the Court or jury in final argument.") *with* L.Cv.R. 26.2 (local rule governing discovery). The courtroom rule, of course, avoids the confusion that might arise with multiple attorneys on one side arguing or questioning in a ping-pong fashion. No such concern is present here, where attorneys are conducting successive rather than simultaneous examinations.

Google's own conduct in discovery belies any implicit understanding to the contrary. At a deposition in early November, Google did not object to two attorneys for the Colorado Plaintiffs questioning a Google employee during a one-day deposition, even though it resulted in attorneys switching during a single day of questioning.

Google's delay in noticing depositions has resulted in an overly-crowded spring calendar, and the parties have noticed or scheduled depositions for nearly every day in late February and March. Under these circumstances, dividing preparation and questioning for certain upcoming depositions between two attorneys is the most efficient way for U.S. Plaintiffs to proceed.

Nonetheless, for all upcoming depositions except one, U.S. Plaintiffs have agreed— absent agreement from Google or leave of Court—to limit questioning to one DOJ attorney during a Rule 30(b)(1) deposition. For a fourteen-hour deposition of a Google executive scheduled to take place in early March, U.S. Plaintiffs have reserved the right to have up to two DOJ attorneys conduct U.S. Plaintiffs' portion of the deposition, each on  a single day.

Because having two attorneys question a deponent on successive days creates efficiencies and does not create any prejudice, the Court should reject Google's request to prevent such an approach in the upcoming deposition.

### 2. The Case Management Order Grants Plaintiffs Discretion to Divide Deposition Time Amongst Themselves

The Court should reject Google's attempts to orchestrate the manner in which the two sets of Plaintiffs allocate deposition time amongst themselves.

An example will explain why the Plaintiffs need the flexibility Google seeks to undermine. To most efficiently allocate time in some depositions, an attorney from the U.S. Plaintiffs may start the questioning and proceed through her outline. After four hours, she may hand off questioning to the Colorado Plaintiffs, to proceed through their questions. When the Colorado Plaintiffs have completed their questioning, they may hand the last hour back to the U.S. Plaintiffs to complete the deposition. This approach ensures that none of the permitted time is left unused.

Google asks the Court to limit U.S. and Colorado Plaintiffs each to one round of questioning per deposition, absent intervening questioning by Google. Google's position runs counter the plain language of the Case Management Order, which provides: "Plaintiffs in the DOJ Action and Plaintiffs in the Colorado Action may divide the time allotted to their side in any manner they choose, provided they . . . make reasonable efforts to coordinate their examination in order to avoid duplicative question." ECF No. 108-1 (Amending Scheduling and Case Management Order) ¶ 14. If Google wished to place limits on Plaintiffs' ability to allocate their use of questioning time in depositions, Google should have bargained for this restriction in the CMO; they did not. Moreover, alternating questioning sessions in an orderly way between counsel for the U.S. and Colorado Plaintiffs increases efficiency and is consistent with the Case

Management Order's direction that Plaintiffs take reasonable steps to avoid duplicative examinations.

Google has waived any argument to the contrary. During an October deposition, Google did not object when the DOJ attorney ceded questioning to his Colorado Plaintiff counterpart for approximately one hour and forty-five minutes, before resuming questioning for the remainder of the deposition. By alternating questioners, Plaintiffs streamlined their examination and accommodated the witness' request to end the deposition early. Google's failure to object to alternating questioners when it benefitted Google waives any objection to the practice; certainly, there is no basis for Google's claim that the practice violates the CMO or the relevant rules of civil procedure.

Accordingly, the Court should reject Google's proposed limitations on Plaintiffs' ability to efficiently staff and conduct the upcoming depositions in this matter.

### C.    Plaintiff States' Position Statement on Google's Attempt to Limit Plaintiffs' Ability to Efficiently Conduct Depositions

Plaintiff States have conducted depositions in this case in manner that is consistent with the Federal Rules of Civil Procedure and the Amended Scheduling and Case Management Order ("CMO").  For pretrial purposes, including all discovery and related proceedings, the Court consolidated the Plaintiff States' and U.S. Plaintiffs' actions.  As a result, the CMO, provides the framework for how the Plaintiff States and U.S. Plaintiffs (collectively the "Plaintiffs") notice and conduct shared depositions of Google employees. Dkt 108-1 (Amending Scheduling and Case Management Order) ¶ 14. Importantly, the CMO states that Plaintiffs "may divide the time allotted to their side in any manner they choose, provided that they do not collectively exceed the time allotted to their side and make reasonable efforts to coordinate their examination in order to avoid duplicative questioning." *Id.*

Plaintiffs have heeded the guidance of the CMO and have coordinated depositions in an effective and efficient manner.  Plaintiffs have coordinated in conducting 27 depositions of former or current Google employees.  As part of that coordination, Plaintiff States and U.S. Plaintiffs have necessarily had to make determinations about how much time each plaintiff would need to address conduct relevant to their respective actions.  Given that it is impossible to determine a witnesses' knowledge and recollection of relevant events or documents before a deposition, those pre-deposition determinations are inevitably not always accurate.

Importantly, care has been taken to avoid duplication. Typically, the DOJ Plaintiffs have gone first, leaving sufficient time for the State Plaintiffs to then question the witness on the separate allegations of their complaint. Where that questioning can be completed in less time than anticipated, the U.S. Plaintiffs have resumed questioning on other issues relevant to both actions.

There has been no prejudice to Google. By contrast, State Plaintiffs would be prejudiced were this form of cooperation among the plaintiffs barred, because of the risk that some deposition time could not be used at all, if questioning happened to be completed in less than the contemplated time. Google has no legitimate interest in preventing the plaintiffs from using all of the deposition time that the CMO provides to them jointly. As such, the Court should allow Plaintiffs to conduct shared depositions in an efficient manner and divide time allotted to their side as they see fit.

Google also indicated that it would address as a contested issue whether Plaintiff States should be limited to using a single attorney to examine a witness during a given deposition moving forward in discovery.  However, Plaintiff States indicated on February 2, 2022 that they

do not intend to use more than one attorney to examine a given deponent in future depositions. As such, Plaintiff States do not believe there to be a ripe dispute with Google on this issue.

## V. The Parties' Dispute Regarding the Timing of Google's Response to Topic 3 of the November Rule 30(b)(6) Notice

### A. U.S. Plaintiffs' Position Statement: Google's Unwarranted Delay in Serving Written Responses to 30(b)(6) Topics Has Delayed Discovery

Because of Google's delays in responding to Plaintiffs' November 30(b)(6) notice, the Court should move the due date for the Plaintiffs' next non-data notice to February 28 and order Google to provide any responses or witnesses within 30 days of receiving that notice.

During the January 7 status conference, Google sought and received permission from the Court—over the Plaintiffs' objections—to initially serve written responses to Topic 3 of the November 30(b)(6) notice. This specification sought the methodology Google uses to calculate the amount it pays (or is willing to pay) to its search distribution partners—a central issue to this case. In allowing Google to first serve written responses, the Court noted that Plaintiffs would then have the opportunity to evaluate Google's response and narrow any potential follow up via live testimony. Jan. 7, 2022 Hr'g Tr. at 47 ("[T]here is an advantage to doing it this way to the plaintiffs, in that you're getting something in writing, you have something in writing, something that's an admission, and then something to shoot at, for purposes of a deposition, if there's one to be had, down the road.").

Google, however, has refused to provide a timely response—timing their production to the date this JSR is due. Because of Google's delay, Plaintiffs have been deprived of the opportunity to incorporate the information—and possible deposition—into our next 30(b)(6) notice as well as the Rule 30(b)(1) depositions that are continuing. Google's delay means the parties will come before the Court on February 11 having made little progress on this crucial topic with the end of fact discovery on the horizon.

At the last status conference, Google told the Court that it could not provide written responses by January 21, Plaintiffs' proposed date for live testimony; Google represented that it would confer with Plaintiffs and propose an alternative date. Jan. 7, 2022 Hr'g Tr. at 52–53. Google, however, never made any proposal. After ten days of silence from Google, Plaintiffs followed up on January 18 with a list of specific questions within the scope of Topic 3 and requested Google's written response by January 25. Google's silence continued. Plaintiffs followed up again on January 28 to request that Google serve its response to Topic 3 and the specific questions under Topic 3 by February 4. One week later, on February 4, Google replied that it would provide its written response on February 8, the date of this filing. At the time of this writing, the response has not been received.

The Court should reject Google's pattern and practice of delay which now threatens the 30(b)(6) process ordered by this Court, as well as the overall discovery schedule.[5] Plaintiffs are currently due to serve their final non-data 30(b)(6) notice on February 14, 2022.

For the aforementioned reasons, the Court should (1) order Google to serve its response to Topic 3 if it has not been served, (2) move the due date for the non-data 30(b)(6) notice to February 28, 2022, and (3) order Google to complete its responses to that 30(b)(6) notice (either in writing or with the presentation of witnesses, as the parties may agree) within 30 days after receipt.

---

[5] Google's unreasonable delay in serving cross notice third-party document subpoenas, which delayed the start of third-party discovery, ultimately required the Court to amend the Case Management Order to require that parties serve a subpoena on a third-party already in receipt of a subpoena within 7 days. *See* March 30, 2021 Order Amending Scheduling and Case Management Order. Similarly, Google's lengthy delay in serving responses and objections to Plaintiffs' 30(b)(6) notices required the Court to order that responses and objections to future notices must be served with ten days. *See* Sept. 28, 2021 Minute Order. More recently, Google's delay in serving deposition notices required Court intervention. *See* Jan. 7, 2022 Hr'g Tr. at 38–39.

### B.   Google's Position Statement

Google informed Plaintiffs last week that it would provide a written response to Topic 3 of Plaintiffs' most recent Rule 30(b)(6) notice on February 8.  Consistent with that commitment, Google delivered the response on February 8, shortly before this report was filed.  In correspondence about the matter, Plaintiffs nevertheless have asserted—without reference to any rule, order, or agreement—that the response was "overdue" and that they would raise with the Court the purported "delay" in serving it.  Plaintiffs have not described to Google any form of relief that they intend to seek, and none is warranted.  Plaintiffs have the written response to Topic 3, which Google diligently prepared following last month's hearing and served in a reasonable amount of time following the Court's resolution of the parties' dispute regarding the topic.  Plaintiffs were not authorized to establish a unilateral deadline for providing the response, and they cannot credibly argue that they were prejudiced by receiving it two weeks after their proposed date of January 25.  That should be the end of the matter.  In light of Plaintiffs' insistence on briefing the issue, however, Google respectfully sets forth the following details concerning the timing of its response to Topic 3.

Google informed Plaintiffs more than two months ago that it could not reasonably be expected to prepare one or more witnesses to testify regarding Topic 3, which encompasses "the methodology by which Google calculates the amount it is willing to pay search distribution partners in revenue share agreements" over a 17-year period.  *See* Dec. 1, 2021 Resp. & Obj. to Nov. 30(b)(6) Notice.  During the meet-and-confer process in December, Google offered two reasonable alternatives: Plaintiffs could identify a handful of specific agreements about which they seek additional testimony so that Google could identify a suitable witness and prepare that person accordingly, or Google could draft a written response to Topic 3 based on a reasonable inquiry.  *See* Dec. 13, 2021 Ltr. from J. Schmidtlein; Dec. 18, 2021 Email from G. Safty.  Under

either alternative, Google likely would have been able to provide a complete written response or live witness testimony by the end of January, as it did with every other topic in Plaintiffs' most recent Rule 30(b)(6) notice.  Plaintiffs refused both of these reasonable options and insisted on litigating their position that Google should provide live witness testimony regarding Topic 3 as written.  *See* Jan. 4, 2022 JSR (ECF No. 271) at 5-18.

At last month's hearing, the Court directed Google to provide a written response to Topic 3.  *See* Jan. 7, 2022 Hr'g Tr. 42:4-45:7, 50:15-51:2.  In the interest of avoiding an unnecessary dispute over timing, Google's counsel specifically observed that a written response to Topic 3 is "not something that we're going to be able to prepare in 7 days or 14 days."  *Id.* 52:21-53:3.  The Court thereafter left it to the parties "to negotiate, in the first instance … a reasonable deadline by which … a written response will be forthcoming."  *Id.* 53:5-9.

After the hearing, Plaintiffs neither conferred with Google nor suggested a reasonable deadline by which it should provide a written response.  Instead, Plaintiffs impermissibly attempted to elicit deposition testimony regarding Topic 3 from a witness who was designated to testify on January 11 regarding an altogether different Rule 30(b)(6) topic, and who had already been deposed several months ago in his personal capacity, such that he could not be deposed again as a fact witness without leave of Court.  *See* Fed. R. Civ. P. 30(a)(2).  In other words, Plaintiffs effectively moved forward with their proposal of seeking live testimony from a Rule 30(b)(6) witness on Topic 3, notwithstanding the Court's ruling on the matter only a few days earlier.[6]

---

[6] To offer one example of Plaintiffs' repeated attempts to seek live testimony regarding Topic 3 at the January 11 Rule 30(b)(6) deposition, Plaintiffs' counsel read an entire module of prepared questions relating to Topic 3(c), which seeks information regarding "how Google estimates the incremental revenue created by a search distribution deal including (i) any methods of estimating the expected proportion [of] users or revenue from a given search access point that Google

As indicated, Google served its written response to Topic 3 on February 8, and it considers the matter resolved.  There was no unreasonable delay, and Plaintiffs are not entitled to whatever relief they may seek in connection with this purported dispute.

## VI.     Google's Request to Amend the Stipulated Protective Order

### A.        Google's Position Statement

Finally, Google respectfully requests that the Court amend the Stipulated Protective Order (ECF No. 98) to clarify that during a deposition counsel may show any document designated "Highly Confidential" or "Confidential" by a Party or Non-Party to "persons who are current employees of the Party or Non-Party that produced the document."  *See* Ex. C (Proposed Order).  This revision is intended to minimize the total number of depositions and avoid potential disputes that may arise from the subjective standard set forth in Sections 11(f) and 12(g), which authorize counsel to show a "Highly Confidential" or "Confidential" document to persons who the document "itself indicates, or who the receiving party has a good-faith basis to believe, were the author, addressee, recipient, custodian, or source of the document, to the extent they have previously had lawful access to the document."

Although the existing language is suitable in many instances, it is not always possible to determine whether a particular individual employee of a third-party entity was an "author, addressee, recipient, custodian, or source" of a particular document produced by the entity.  For example, the third-party entity may have produced incomplete metadata that does not identify

---

would retain if it were … to lose default status (e.g. 'winback' rate or 'clawback' rate)…."  *See, e.g.*, Jan. 11, 2022 Dep. Tr. 91:16-97:13 (Plaintiffs' counsel asking a series of questions regarding "Google's estimates of the search revenue that Google would claw back if Apple switched Safari's default search engine away from Google" and "the loss of Google's revenue following the switch on [Mozilla] Firefox … from Google to Yahoo"); *id.* 97:16-99:18 (Google's counsel observing that Plaintiffs' counsel is "reading from an outline that [he] prepared" in asking the witness "hours of questions beyond the scope" of the Rule 30(b)(6) topic on which the witness was designated).

some or all of the custodians of the document.  Or the metadata may indicate that the document

was stored in a shared drive or database, without revealing which individual employees uploaded

and accessed the files.  In other instances, it may be possible to reduce the number of depositions

by having a single third-party witness testify about a particular document or data set produced by

her employer, even though that witness has not personally seen the pertinent document before

the deposition.  For example, a manager who occasionally accesses a particular database may be

able to describe certain terminology that appears in a data set extracted from that repository, even

if she was not the person tasked with extracting the data for production in this case.  In these

circumstances and others, there is no apparent benefit to preventing a fact witness from viewing

documents produced by her current employer.

For avoidance of doubt, this proposed amendment has no bearing on whether a third-

party document may be disclosed to a Google employee (or an employee of another third party).

Moreover, the amendment would apply only to witnesses who are current employees of the

producing party at the time of the deposition.  Witnesses who were formerly employed by an

entity that produced documents in this case would still be limited to viewing a document that

"itself indicates, or who the receiving party has a good-faith basis to believe, were the author,

addressee, recipient, custodian, or source of the document, to the extent they have previously had

lawful access to the document."

Google has disclosed this proposed amendment to Plaintiffs and the third parties that

have entered a notice of appearance in this matter.  Plaintiffs indicated that they take no position

on the amendment.  A proposed order is attached as Exhibit C.

Dated: February 8, 2022

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
725 12th Street, NW
Washington, DC 20005
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*

By:____*/s/ Kenneth M. Dintzer*_____
Kenneth M. Dintzer
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States of America*


By:____*/s/ Jonathan R. Carter*_____
Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*


By:____*/s/ Adam Miller*_____
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

By:_____/s/ Lee Istrail_____
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:_____/s/ Daniel Walsh_____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:_____/s/ Scott L. Barnhart_____
Theodore Edward Rokita, Attorney General Scott
L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: ___/s/ *Philip R. Heleringer*_____
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: 502-696-5647
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By:___/s/ *Christopher J. Alderman*_____
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:___/s/ *Scott Mertens*_____
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:___/s/ *Stephen Hoeplinger*_____
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
615 E. 13th Street, Suite 401
Kansas City, Missouri 64106
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By: _____/s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By: _____/s/ Mark Mattioli_____
Austin Knudsen, Attorney General
Mark Mattioli, Chief, Office of Consumer
Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, Montana 59620-0151
mmattioli@mt.gov

*Counsel for Plaintiff State of Montana*

By: _____/s/ Rebecca M. Hartner_____
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:    */s/ Bret Fulkerson*
Bret Fulkerson
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:    */s/ Gwendolyn J. Lindsay Cooley*
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By:    */s/ Jonathan B. Sallet*
Jonathan B. Sallet, Special Assistant Attorney
General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General (D.C.
Bar No. 1022365 inactive)
Diane R. Hazel, First Assistant Attorney General
(D.C. Bar No. 1011531 inactive)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff State of Colorado*

Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*

Brunn W. (Beau) Roysden III, Solicitor General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff State of Arizona*

Max Merrick Miller
Attorney General's Office for the State of Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*

Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*

Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*

J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter P.O.
Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*

Jeff Pickett
Senior Assistant Attorney General
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100
jeff.pickett@alaska.gov

*Counsel for Plaintiff Alaska*

Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*

Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection
Division
Benjamin Bernard Paholke, Assistant Attorney
General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*

Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*

Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff State of Illinois*

Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*

Matthew B. Frank, Assistant Attorney General
Antitrust Division
William T. Matlack, Assistant Attorney General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*

Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*

Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio, Antitrust
Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

44

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*

Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*

Yvette K. Lafrentz
Office of The Attorney General of South Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Plaintiff Wyoming*