## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | **FILED UNDER SEAL** |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | **FILED UNDER SEAL** |
| Defendant. | |

### JOINT STATUS REPORT

In accordance with the Court's Minute Order dated January 7, 2022, the parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report summarizing the state of discovery and identifying any issues between the parties, and the parties' respective positions, that will be raised at the status hearing scheduled for March 9, 2022.

## I.      Case No. 1:20-cv-03010

### A.      Google's Discovery of Plaintiffs

A summary of Google's First Set of Requests for Production and prior document productions made by Plaintiffs are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285).

Plaintiffs served responses and objections to Google's First Set of Interrogatories on February 22. Google respectfully seeks the Court's guidance on a dispute relating to Plaintiffs' responses to Google's interrogatories. Google's position statement on this issue is set forth below in Section IV.A, and Plaintiffs' position statement is set forth in Section IV.B.

Plaintiffs served their Second Amended Initial Disclosures on February 25.

### B.      Plaintiffs' Discovery of Google

A summary of Plaintiffs' First through Eighth Sets of Requests for Production and the document productions previously made by Google are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285). Google produced additional documents on February 7, 10, 11, 14, 15, 17, 18, 21, 24, 26, and 28, and additional data on February 4, 16, 17, 18, 23, and 25.

Google served its First Supplemental Initial Disclosures on February 25.

Plaintiffs served their Ninth Request for Production of Documents to Google on March 2. Google's responses and objections are due April 1.

Plaintiffs served their First Set of Interrogatories on December 9, and Google served responses and objections on January 10, which it supplemented on January 31. Plaintiffs served their Second Set of Interrogatories on March 3, and Google's responses and objections are due April 4.

Plaintiffs served their final non-data 30(b)(6) notice to Google on February 22. Google's responses and objections are due March 4.

Plaintiffs have completed thirty-three depositions of current or former Google employees. The parties have scheduled five for the coming weeks, and the parties are in the process of scheduling one more.

Plaintiffs have also completed depositions pursuant to Rule 30(b)(6) notices issued in July 2021 and November 2021.  Plaintiffs respectfully seek the Court's guidance on a dispute relating to Topic 3 of the November Rule 30(b)(6) Notice. Plaintiffs' position statement on this issue is set forth below in Section III.A, and Google's statement is set forth in Section III.B.

C.    **The Parties' Discovery of Third-Parties**

A summary of the third-party discovery requests previously issued by the parties is set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285). The parties have issued document subpoenas to approximately 127 third parties in total.  The parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.

The parties have completed seven third-party depositions that were noticed by both Plaintiffs and Google as well as six that were noticed only by Google.  Plaintiffs have noticed nine depositions of third-parties for dates in March and April, and Google has issued cross-notices to eight of those witnesses.  In addition, Google has noticed twenty-three depositions of other third-parties for dates in March and April, and Plaintiffs have cross-noticed two of them. The parties anticipate that they will continue to issue additional deposition subpoenas as discovery progresses.

## II.    Case No. 1:20-cv-03715

### A.    Google's Discovery of Plaintiff States

A summary of Google's First Set of Requests for Production and the document productions made by Plaintiffs to date are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285).

Plaintiffs served responses and objections to Google's First Set of Interrogatories on February 24. Google respectfully seeks the Court's guidance on a dispute relating to Plaintiffs' responses to Google's interrogatories. Google's position statement on this issue is set forth below in Section IV.A, and Plaintiffs' position statement is set forth in Section IV.C.

### B.    Plaintiff States' Discovery of Google

A summary of Plaintiff States' First through Fourth Sets of Requests for Production and the document productions previously made by Google are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131),

May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285). Google provided its responses and objections to Plaintiff States' Fifth Request for Production on March 3. Google has continued to produce to Plaintiff States the documents and data produced to the U.S. Plaintiffs and its co-plaintiffs in Case No. 1:20-cv-03010 in addition to producing documents and data in response to Plaintiff States' First, Second, Third, and Fourth Sets of Requests for Production.

A summary of the depositions of current and former Google employees and third parties is set forth above in Section I.B.  In accordance with the Scheduling and Case Management Order, Plaintiff States and the U.S. Plaintiffs are coordinating in the noticing and scheduling of all depositions.  In addition to depositions of witnesses addressing issues common to both cases, to date, Plaintiff States have taken or noticed depositions of thirteen Google employees and third parties, along with several 30(b)(6) topics, focused primarily on issues related to the Plaintiff States' case.

C.     **The Parties' Discovery of Third Parties**

The parties have issued document subpoenas to approximately 127 third parties.  Both parties anticipate that they will continue to issue additional document subpoenas as discovery progresses.  A summary of the third-party depositions that have been recently scheduled is set forth above in Section I.C.  The parties anticipate that they will continue to issue additional deposition subpoenas as discovery progresses.

III.    **The Parties' Dispute Regarding Topic 3 of Plaintiffs' November Rule 30(b)(6) Notice**

    A.    **U.S. Plaintiffs' Position Statement**

        **Google's Refusal to Provide 30(b)(6) Testimony Is Unwarranted**

After four months of delay and obstruction, Google's refusal to provide 30(b)(6) testimony on Topic 3 of Plaintiffs' November 1 notice is unwarranted and contrary to the Court's instruction. In light of Google's failure to provide "thorough and comprehensive"[1] written responses and refusal to sit for follow-up testimony, the Court should order Google to provide 30(b)(6) testimony on Topic 3 no later than March 15.

During the January 7 status conference, Google sought and received permission from the Court—over the Plaintiffs' objections—to serve initial, written responses to Topic 3 of Plaintiffs' November 30(b)(6) notice. Topic 3 sought the methodology Google uses to calculate the amount it pays (or is willing to pay) to its search distribution partners—a central issue to this case. After this Court permitted Google to respond initially to Topic 3 in writing, Plaintiffs sent Google on January 18 seven written questions within the scope of Topic 3 to facilitate receiving a substantive written response.

Google served its written responses only after the parties exchanged position statements (and just hours before filing) the February 8 Joint Status Report.[2] More than three months after receiving Topic 3, Google's responses were vague and incomplete, addressing some of Plaintiffs' questions only partially and ignoring other questions altogether. Accordingly, on February 10, Plaintiffs returned eight written questions (a combination of follow-up questions

---

[1] Jan. 7, 2022 Status Hr'g Tr. 47:9–13.

[2] Google's Fourth Supplemental Responses & Objections to Plaintiffs' November Rule 30(b)(6) Notice (Feb. 8, 2022) (attached as Exhibit A).

and restatements of previous unanswered questions) to Google.[3] At the February 11 status conference, Plaintiffs advised the Court that Google's responses were deficient and asked the Court to order Google to sit for testimony on February 21, if Google's response to Plaintiffs' February 10 questions were inadequate. The Court ordered Google to provide supplemental written responses to Plaintiffs' February 10 letter by February 18 and denied Plaintiffs' request to set a date for testimony, instead advising the parties to "work towards scheduling that." Feb. 11 Status Hr'g Tr. 27:20–24.

On February 18, Google served a supplemental written "response" comprising only objections.[4] Google objected to providing any substantive answers to Plaintiffs' questions in writing and objected to providing 30(b)(6) testimony on Topic 3 in any form.[5] Instead, Google proposed that Plaintiffs seek 30(b)(1) testimony from future deponents. Additionally, Google's February 18 letter identified various 30(b)(1) depositions where Plaintiffs have asked questions that may overlap with some Topic 3 questions (validating Plaintiffs' position that these are important issues), but Google's letter ignored that the witnesses failed to provide anything that resembles a "thorough and comprehensive" answer. For example, Plaintiffs recently deposed Google's signatory to several revenue share agreements who testified, under oath, that he did not

---

[3] Letter from Kenneth Dintzer, Counsel for the United States, to John Schmidtlein, Counsel for Google (Feb. 10, 2022) (attached as Exhibit B).

[4] Letter from John Schmidtlein, Counsel for Google, to Kenneth Dintzer, Counsel for the United States (Feb. 18, 2022) (attached as Exhibit C).

[5] Google objects to, among other things, the timeframe of 2010 to the present, even though Plaintiffs offered that timeframe and limited the number of distribution partner agreements as a reasonable compromise, given that 2005 to the present is the appropriate and relevant timeframe in this case. *See* Sept. 28, 2021 Minute Order (limiting the timeframe for Plaintiffs' July 30(b)(6) notice to 2005 to the present).

know (1) why or how his signature came to be placed on the agreements,[6] (2) any of the specific terms of the agreements bearing his signature,[7] or (3) how Google calculated or approved the partner payments prescribed in the signed contracts.[8] Google's position flouts not only the Federal Rules but also this Court's instruction to schedule a date for 30(b)(6) testimony on the topic. *See Prasad v. George Washington U.*, 325 F.R.D. 1, 5–6 (D.D.C. 2018) (collecting cases and explaining that it is "clear . . . that Plaintiff is entitled to take a Rule 30(b)(6) deposition on [a] topic notwithstanding the fact that she ha[d] taken Rule 30(b)(1) depositions of witnesses who had personal knowledge [on the topic]"); Feb. 11, 2022 Hr'g Tr. 27:20–24; Jan. 7, 2022 Hr'g Tr. at 47:13–16 (instructing Google to provide "thorough and comprehensive" written responses "without prejudice to getting somebody in a seat to answer any specific questions that may be relevant – that [Plaintiffs] may want to follow up in light of the written response").

Four months of delay is enough. Less than 60 days of fact discovery remain; the schedule does not allow for more wasted time. To facilitate the orderly completion of remaining discovery, the Court should order Google to sit immediately for testimony on Topic 3 of the November 30(b)(6) notice to provide the "thorough and comprehensive" responses and "follow up" testimony ordered by this Court.

For the aforementioned reasons, the Court should order Google to provide 30(b)(6) testimony on Topic 3 of Plaintiffs' November 30(b)(6) notice no later than March 15.

---

[6] Lockheimer Dep. Tr. 359:19–360:12, 367:24–373:8.

[7] Lockheimer Dep. Tr. 374:14–375:12.

[8] Lockheimer Dep. Tr. 353:17–354:8.

**B.      Google's Position Statement**

Google explained to Plaintiffs more than three months ago that Topic 3 of their November Rule 30(b)(6) notice is not reasonably susceptible to a response because "Google has entered into hundreds of revenue share agreements (including amendments thereto) since 2005 and there is no single 'methodology' that governs financial analysis of revenue share agreements."  Dec. 1, 2021 Resp. & Obj. to Nov. Rule 30(b)(6) Notice.  As the Court observed at the January status conference, these agreements are not the output of "a scientific process," but rather tend to be "a product of negotiations among different parties over the course of years that involve[] a whole host of different inputs."  Jan. 7, 2022 Hr'g Tr. 42:16-23.  In light of the number of agreements implicated by the topic and the inherent give-and-take of business negotiations, it is not reasonable for a Rule 30(b)(6) response to describe each factor or input that may have been considered in each instance.  That is why Google "repeatedly urged Plaintiffs to identify a handful of specific agreements about which they seek additional information."  Jan. 4, 2022 JSR (ECF No. 271) at 15; *see* Dec. 13, 2021 Ltr. from J. Schmidtlein.  Plaintiffs refused that proposal at every turn, including in asking the Court in January to compel Google to provide a witness to testify regarding Topic 3.  *See* Jan. 4, 2022 JSR (ECF No. 271) at 5-10.

Following the January status conference, Google prepared a written response consistent with the way in which Topic 3 is framed and the guidance provided by the Court at hearing.  *See* Jan. 7, 2022 Hr'g Tr. 52:13-23.  The written response squarely addresses the substance of Topic 3 and its subparts, and Google respectfully submits that nothing more is required.

**1.      Google Has Responded to Topic 3 of the November Rule 30(b)(6) Notice**

To the extent that Plaintiffs contend that Google's response is too "general" or "high level," that is a consequence of the breadth of the topic itself.  The response addresses

considerations or analyses that typically have been applied in a number of contexts with a multitude of partners over the last 17 years because Plaintiffs refused to focus their inquiry on a particular agreement (or reasonable number of agreements). The broad framing of the topic, and the resulting response, was a deliberate choice on Plaintiffs' part, as they have already deposed at least a dozen witnesses who were involved in the negotiation, financial analysis, or approval of different subsets of the agreements encompassed by Topic 3 and asked them all manner of questions about their analysis of those specific deals.[9]

In addition to that testimony about particular revenue share agreements, Plaintiffs have now received a response to Topic 3 writ large. Google's written response reflects the input of multiple employees who have worked with different partners encompassed by the topic, and who have been involved in negotiating or analyzing revenue share agreements at different points in time over the last 17 years. In that way and others, the response reflects the "information known or reasonably available to" Google about Topic 3 as it was written. Fed. R. Civ. P. 30(b)(6). They are not entitled to anything more under Rule 30(b)(6).

### 2. Plaintiffs' Follow-up Questions Are Unreasonable and Improper

Instead of accepting Google's reasonable response to their overbroad topic, Plaintiffs have presented a series of "follow-up questions." Feb. 10, 2022 Ltr. from K. Dintzer. There is no basis in the Federal Rules or the Case Management Order for Plaintiffs' insistence on an *ad*

---

[9] *See, e.g.*, Oct. 8, 2021 Dep. Tr. 16:23-17:13, 20:12-20 (deposition of witness who has "provided financial analysis relating to Google Search on Apple devices," "financial analysis for Google Search on Android phones," and "financial analysis related to Google's distribution agreement with Mozilla"); Dec. 13, 2021 Dep. Tr. 16:23-18:9 (deposition of witness whose team was "responsible for negotiation" of revenue share agreements with T-Mobile, AT&T, and Verizon); Dec. 15, 2021 Dep. Tr. 83:20-84:21, 180:25-181:8 (deposition of financial director whose team "has worked on analysis related to Samsung"); Jan. 25, 2022 Dep. Tr. 18:25-20:7, 46:7-19 (two-day deposition of witness involved in "negotiating a number of revenue share agreements with partners" including Apple).

*hoc* written exchange about these subjects, and none of their follow-up questions is a proper subject of Rule 30(b)(6) testimony.

   *First*, Plaintiffs continue to disregard the Court's Order that they "endeavor to craft their 30(b)(6) notices on discrete subjects and seek to avoid redundancies with their depositions of fact witnesses."  Sept. 28, 2021 Minute Order.  For example, follow-up question number 4 asks whether "Google calculate[s] the maximum revenue-share percentage it is willing to pay a prospective Search RSA [i.e., revenue share agreement] partner at any time in negotiation," and "how … the maximum revenue-share percentage [is] calculated."  Feb. 10, 2022 Ltr. from K. Dintzer at 2.  Plaintiffs have already asked variations of these questions of multiple witnesses at their depositions,[10] and they have faced no obstacle in asking the same question of other witnesses involved in different negotiations.  The same is true of Plaintiffs' other follow-up questions.[11]  In effect, Plaintiffs have taken Rule 30(b)(1) depositions that are focused on the agreements or negotiations that were of interest to them, and they are now attempting to use Rule 30(b)(6) to retread that ground *and also* obtain detailed information about a broader swath of contracts with additional counterparties covering additional time periods.  That is contrary to

---

[10] *See, e.g.*, Oct. 8, 2021 Dep. Tr. 29:25-30:19 (asking whether the witness "typically recommend[s] a maximum revenue share that Google should offer to the proposed distribution partner," and whether he did so in connection with particular revenue share agreements with Mozilla and Apple); Jan. 25, 2022 Dep. Tr. 45:12-46:19, 122:21-123:16 (asking the witness about "the variables that affect the decision to pay one partner X amount and another partner Y amount," and whether the witness has ever worked on a revenue share deal "where Google was willing to put more on the table to make sure that one of its rivals didn't get the deal").

[11] *Compare, e.g.*, Feb. 10, 2022 Ltr. from K. Dintzer at 2 (asking Google to describe "each major benefit Google receives under its current revenue share agreement and explain how, if at all, Google calculates the benefit" for a list of partners) *with, e.g.*, Dec. 13, 2021 Dep. Tr. 29:2-15 (asking the witness "what type of contributions … the carriers make to Google under the revenue share agreements") *and* Dec. 13, 2021 Dep. Tr. 67:4-71:17 (asking a different witness involved with different revenue share agreements about which commitments Google requested from partners and its "priorities" in renewing those agreements).

both the requirements of Rule 30(b)(6) and the Court's guidance on the subject. *See, e.g.*, *Prasad v. Geo. Wash. Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017) (observing that although Rule 30(b)(6) "is a useful tool to inquire about, for example, matters within the peculiar knowledge of the receiving corporate entity," it "is not appropriate … to use a 30(b)(6) deposition as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period"); Sept. 28, 2021 Hr'g Tr. 44:23-45:7 (describing the Court's "expectation that there will be precision in these 30(b)(6) notices," such that they will focus on "more discrete, identifiable topics as to which a 30(b)(6) witness is actually required").

*Second*, Plaintiffs' follow-up questions ignore the fact that they are seeking information about a significant number of individually negotiated agreements, not a "scientific process" that is reducible to a formula. *See* Jan. 7, 2022 Hr'g Tr. 42:19-23. Again, the point is illustrated by follow-up question number 4, which seeks information about when and how during a negotiation "Google calculate[s] the maximum revenue-share percentage" it is willing to pay. Feb. 10, 2022 Ltr. from K. Dintzer. The amount that a contracting party is "willing to pay" in even a single negotiation can change based on any number of factors. Any attempt to characterize the multitude of dynamics that have played out across dozens of negotiations involving an array of Google employees and counterparties will necessarily be framed in general terms and subject to exceptions or caveats because there is no uniform method of negotiating a business deal. Google has already provided a response that cuts across the array of agreements covered by Topic 3.

*Third*, the follow-up questions conflate "information known or reasonably available to" Google with information known only to some number of unspecified employees. Fed. R. Civ. P. 30(b)(6). For example, follow-up question number 5 asks, "In the context of a Search RSA, what do the following terms mean, how are they calculated, and how are they used: TAC and net

12

revenue?" Feb. 10, 2022 Ltr. from K. Dintzer at 2. Plaintiffs have asked those questions of multiple witnesses during their depositions in this case.[12] If Plaintiffs now seek to discover how those terms were used in the context of particular documents that they have not already addressed through those depositions, then they may consider asking the author of the documents or another witness who was in a position to speak to how the terms were used, as they have in their depositions to date. Or if Plaintiffs seek to determine how Google as a company has used those terms (such as in a financial statement or regulatory filing), then they may consider serving an interrogatory. Plaintiffs cannot, however, use Rule 30(b)(6) to determine what some unspecified number of different employees may have had in mind when they used a term— particularly one that appears in many thousands of documents produced in this case. *See, e.g.*, *Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373 (D.D.C. 2007) (rejecting the suggestion that Rule 30(b)(6) gives rise to an "expectation that the deponent must investigate not just facts reasonably known to the corporation, but *any* fact potentially relevant to the described topic known by any employee of the corporation").

*Fourth*, some of Plaintiffs' follow-up questions are not even within the scope of Topic 3 as drafted. For example, Plaintiffs' follow-up question number 3 seeks a description of "the standard ceiling for revenue share payments"; how "this ceiling and approval process changed over the past 10 years"; and "what contracts, worldwide, exceed this ceiling." Feb. 10, 2022 Ltr. from K. Dintzer at 2. It sweeps well beyond Topic 3 and is essentially a separate interrogatory

---

[12] *See, e.g.*, Oct. 8, 2021 Dep. Tr. 18:19-24:23, 147:10-149:20, 170:18-172:6 (asking questions such as "[w]hat are traffic acquisition costs"; whether "traffic acquisition costs include revenue share payments that Google makes to distribution partners"; and which "TAC rate" is reflected in various agreements); *id.* 144:5-149:24 (asking whether particular agreements reflect "positive net revenue"); Dec. 15, 2021 Dep. Tr. 106:11-21, 108:6-109:3 (asking questions such as "[w]hat is net revenue").

with multiple subparts.  A Rule 30(b)(6) topic which "reads like an interrogatory or a section of a request for production of documents … certainly does not describe with 'reasonable particularity the matters on which examination is requested.'"  *Banks v. Office of the Senate Sergeant-At-Arms*, 222 F.R.D. 7, 18 (D.D.C. 2004).  It should be beyond dispute, then, that a "follow-up question" to a Rule 30(b)(6) topic likewise cannot be framed in that manner.

Google is not denying Plaintiffs any discovery to which they are entitled, whether under Rule 30(b)(6) or otherwise.  Plaintiffs have already conducted approximately 16 hours of Rule 30(b)(6) testimony on a range of topics, *see* Feb. 8, 2022 JSR (ECF No. 280) at 3, and last week they served another Rule 30(b)(6) notice that includes 12 new topics consisting of more than 50 subparts.[13]  Plaintiffs have received written responses to eight more topics, most of which also included multiple subparts, *see* Jan. 4, 2022 JSR (ECF No. 271) at 10, and Google has answered other follow-up questions relating Rule 30(b)(6) depositions, *see, e.g.*, Nov. 2, 2021 JSR (ECF No. 251) at 1.  Google has been more than reasonable in facilitating the flow of factual information that Plaintiffs have requested—not only in response to their Rule 30(b)(6) notices, but also in answering countless questions about the data requested by Plaintiffs and other details that Google could have insisted that Plaintiffs pursue through interrogatories.   With respect to Topic 3, however, Plaintiffs have exceeded all bounds in posing broad questions about large numbers of agreements that do not merit further response under Rule 30(b)(6), whether by live testimony or through a written exchange.

---

[13] Google will serve responses and objections to that Rule 30(b)(6) notice on March 4.

IV.     **The Parties' Dispute Regarding Google's Interrogatory Nos. 4 and 5**

A.      **Google's Position Statement**

After a pre-Complaint investigation and more than a year of fact discovery, Plaintiffs remain largely unwilling to articulate important facts underpinning their claims or describe the relief that they seek.  In response to interrogatories served by Google on January 21, 2022, Plaintiffs provided little more than stock objections and references to assertions in their Complaints.  Although Google has agreed to allow Plaintiffs an opportunity to supplement eight of their responses, in two instances Plaintiffs have refused altogether to provide substantive responses to Google's interrogatories.  Google therefore seeks the Court's assistance in compelling Plaintiffs to respond to those interrogatories.

1.      **Interrogatory No. 4**

The DOJ Plaintiffs' Complaint concludes with a boilerplate demand for vaguely defined remedies, including "structural relief as needed to cure any anticompetitive harm"; an order "[e]njoin[ing] Google from continuing to engage in the anticompetitive practices described herein and from engaging in any other practices with the same purpose and effect as the challenged practices"; and "any other preliminary or permanent relief necessary and appropriate to restore competitive conditions in the markets affected by Google's unlawful conduct."  DOJ Pls.' Am. Compl. (ECF No. 94) ¶ 194.  The Plaintiffs States' Complaint is similarly non-specific in requesting, among other things, "any relief, as needed, to cure any anticompetitive harm from Google's conduct, prevent any future harm, and undo the continuing effects of past harm to competition"; "such relief to remove any ability of Google to harm competition by disadvantaging any current, potential, or nascent threat to its monopoly maintenance"; and an order "[p]reliminarily and permanently enjoin[ing] Google from continuing to engage in similar and related conduct in the future."  Pl. States' Compl. (ECF No. 1-2 in Case No. 20-cv-03715-

APM) ¶ 233.  Google's Interrogatory No. 4 accordingly asks that Plaintiffs: "Identify the relief

sought, including but not limited to any injunctive relief [Plaintiffs] contend is warranted.  *See*

DOJ Compl. ¶ 194; Colorado Compl. ¶ 233."

Plaintiffs refuse to provide any information in response to Interrogatory No. 4 beyond the

vague allegations in the concluding paragraphs of their Complaints.  In particular, they assert that

the interrogatory "is premature at this stage of the proceeding because the relief sought will

necessarily depend on any liability adjudged," and "the Court has already ordered that … there

will be separate trials on the issues of liability and remedies."  DOJ Pls.' Resp. & Obj. to

Google's Interrog. No. 4 (citing Order to Bifurcate Proceedings (ECF No. 264)).  Contrary to

Plaintiffs' assertions, however, the December 6, 2021 Order providing for separate proceedings

regarding remedies does not preclude all discovery relating to the relief sought by

Plaintiffs.  Instead, the Order provides that "[d]uring the liability phase, expert discovery and

testimony need not offer specific opinions regarding particular remedies beyond that necessary to

demonstrate liability under Section 2 of the Sherman Act."  Order to Bifurcate Proceedings (ECF

No. 264) ¶ 2.[14]  As the Court observed shortly before it entered the Order, that paragraph should

not be read "to necessarily be either compulsory or preclusive," and it does not "box anybody in

or hamstring [the parties] one way or another in terms of what [they] do want to offer now versus

what [they] might need to offer later if there is a remedies phase."  Dec. 6, 2021 Hr'g Tr. 34:3-

13; *see also id.* 33:17-34:2 ("[I]f the parties want to offer an expert that does, for whatever

reason, provide an opinion about remedies, then they're free to do that.").  Nothing in the Order

---

[14]  The two interrogatories addressed here were directed to the Plaintiff States as well as the DOJ
Plaintiffs.  Although the Plaintiff States served separate responses to Interrogatory Nos. 4 and 5,
they did not provide any unique information, but rather "incorporate[d] by reference the U.S.
Department of Justice's Objections and Responses to" these two interrogatories.

to Bifurcate Proceedings requires Google to wait until after the Court enters a final judgment on liability to ask Plaintiffs what exactly they seek to accomplish through this litigation.

Relatedly, Plaintiffs cannot refuse to respond to Interrogatory No. 4 on the basis "that a separate and subsequent proceeding on remedies is contingent upon and will occur only if Google is first found liable." DOJ Pls.' Resp. & Obj. to Google's Interrog. No. 4. The fact that Plaintiffs may not be in a position to seek any relief at all after a trial on liability does not allow them to withhold responsive information presently known to them, or to refrain from answering until the moment they are required to make a final or irrevocable statement concerning which remedies they will ask the Court to impose. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 2018 WL 4381070, at *3-4 (D.D.C. June 15, 2018) (directing the plaintiffs to respond to certain interrogatories based on a consideration of "whether answering interrogatories, however denominated, now will clarify and narrow the issues in dispute," including by "focusing the issues and establishing the significant facts relevant and pertinent to Plaintiffs' claims and allegations" and "aid[ing] all the parties in assessing the strengths and weaknesses of their cases"). If Plaintiffs assert that the scope of relief depends on the contours of any liability determination, it remains incumbent upon them to describe the range of remedial alternatives they envision. And if Plaintiffs truly do not know what relief they seek in bringing this litigation, then they must respond accordingly. *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4111728, at *4 (N.D. Cal. Sept. 17, 2012) (explaining that "[a]t bottom, the party answering interrogatories must furnish 'such information as is available to the party,'" and "[i]f they are unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information" (quotation marks omitted)).

In any event, there are a number of ways in which an answer to Interrogatory No. 4 potentially will inform issues that Plaintiffs may or must address in order to establish liability.  For example, if enjoining conduct that Plaintiffs claim is anticompetitive will, in fact, harm competition more than promote it, that is relevant evidence for the Court to consider when evaluating whether Google's conduct harms competition and is unlawful in the first place.  Furthermore, Plaintiffs presumably will attempt to demonstrate that the markets purportedly affected by the conduct alleged in the Complaints would function differently if Google were enjoined from operating in some manner Plaintiffs contend is unlawful.  *See, e.g.*, DOJ Pls.' Am. Compl. (ECF No. 94) ¶ 154 (asserting that certain agreements are "depriving" unspecified "rivals of the quality, audience, and financial benefits of scale that would allow them to mount an effective challenge to Google").  As Google explained at the hearing that preceded entry of the Order to Bifurcate Proceedings, "a full liability showing in this case … must include some assessment of what the world looks like with the conduct and what the world will look like without whatever the supposed conduct is that they say is unlawful … and what the world they think going forward should be, and that does overlap, to some degree, with remedy."  Dec. 6, 2021 Hr'g Tr. 34:19-35:9.  Irrespective of how Plaintiffs conceive of their liability burden or intend to frame their case, Google should be allowed to discover which remedies Plaintiffs seek to impose for the purpose of evaluating whether the conduct at issue on balance harms competition.

### 2.  Interrogatory No. 5

Plaintiffs have also refused to respond to Google's Interrogatory No. 5, which asks them to "[i]dentify any circumstances from 2005 to present under which Google could lawfully contract to be the default search engine for a third-party browser, or to be the default or exclusive search engine preloaded for any search access point on an iOS or Android device."  Plaintiffs'

assertion in their responses and objections that they "have formed no *conclusions* about hypothetical circumstances not at issue in this case" is not a response at all; the interrogatory is designed to elicit responsive information about what specific conduct Plaintiffs claim harms competition in these cases.  DOJ Pls.' Resp. & Obj. to Google's Interrog. No. 5 (emphasis added).  Interrogatory No. 5 does not ask Plaintiffs to speculate about innumerable or hypothetical agreements, but rather to delineate the facts that supposedly made the agreements at the center of the Plaintiffs' Complaints unlawful.  That is neither improper nor unusual.  *See, e.g.*, *ACLU v. Gonzales*, 2005 WL 8178698, at *4 (E.D. Pa. Dec. 29, 2005) (compelling the Attorney General to respond to interrogatories such as "[i]dentify any 'other reasonable measures that are feasible under the available technology' within the meaning of [a particular statute] that can be used as a successful affirmative defense to prosecution under [that statute]," and "[i]dentify any [particular products] known to you that can be used to establish a successful affirmative defense within the meaning of [the statute]").

More specifically, there is no legitimate basis for Plaintiffs' refusal to articulate at this stage of the case whether they contend that Google could lawfully have entered some alternative version of some or all of the agreements that it contends are unlawful or, conversely, whether any contract between Google and all of the third parties identified in the Complaint would have been unlawful at all points in time since 2005.  If there are in fact circumstances under which Plaintiffs contend that Google could have lawfully entered into the types of agreement at issue in this case, then Plaintiffs need not detail every "hypothetical" term of every agreement with every counterparty.  *See* DOJ Pls.' Resp. & Obj. to Google's Interrog. No. 5.  They must, however, identify the circumstances that they contend are material to whether Google could lawfully enter the types of agreement described in the interrogatory.  *See, e.g.*, *Largan Precision Co., Ltd. v.*

*Samsung Elecs. Co., Ltd.*, 2015 WL 11251730, at *2-3 (S.D. Cal. May 2, 2015) (observing that "courts sometimes convert interrogatories seeking 'all facts' into requests for 'the material or principal facts'" and concluding that the defendant "is entitled to the material facts and circumstances and material documents underlying [the plaintiff's] claim for injunctive relief" rather than merely the "general explanations of the legal theories underlying its claims"). At this stage of discovery, Plaintiffs cannot refuse to divulge the bases for the claims by attesting that they "have formed no conclusions about" what purportedly prevents the challenged agreements from being permissible or impermissible. *See* DOJ Pls.' Resp. & Obj. to Google's Interrog. No. 5.

### B.    U.S. Plaintiffs' Position Statement

The Court should deny Google's request for further supplementation regarding its Fourth and Fifth Interrogatories. Plaintiffs' responses stand complete. Google seeks to require the U.S. Plaintiffs to (A) prematurely identify the specific injunctive relief they intend to seek in the remedy phase of litigation and (B) provide an array of legal positions regarding an undefined— and likely infinite—set of hypothetical circumstances.

#### 1.    Google's Fourth Interrogatory is Premature and Unwarranted

In its Fourth Interrogatory Google asks that U.S. Plaintiffs "[i]dentify the relief sought, including but not limited to any injunctive relief You contend is warranted." U.S. Plaintiffs responded by objecting to the Interrogatory because, among other reasons, Google's Fourth Interrogatory seeks premature discovery regarding the remedies that may ultimately be sought by Plaintiffs.[15] On December 6, 2021, at the request of all parties to these actions, this Court issued an Order to Bifurcate Proceedings. ECF No. 264. In doing so, the Court provided that "[n]othing

---

[15] *See* U.S. Plaintiffs' Objections and Responses to Defendant Google LLC's First Set of Interrogatories to Plaintiffs at pp. 9-10 (attached as Exhibit D).

in this Order shall . . . prohibit or limit discovery during the liability phases of these actions **on issues relevant to liability** under Section 2 of the Sherman Act." *Id*. at 2 (emphasis added). Google itself argued to the Court that bifurcation precluded remedies discovery, stating that "[t]he whole point of this bifurcation issue is, we push off any conversations and specifics about remedy until we know whether there's anything to remedy, and if so, what the scope of it is." 11/30/2021 Status Conference at 48:21-24. And this Court agreed it made sense to "take the issue of remedies off the table for the time being." *Id*. at 17-18

Google has been unable—despite multiple requests from Plaintiffs—to explain how Interrogatory 4 is tethered to liability in any way. Google now seeks discovery *solely* related to the remedy phase. Google has provided no justification for its about-face regarding bifurcation and has failed to explain why it failed to raise its concerns when the Court considered bifurcation in the first place. Similarly, Google now seeks exactly that which it argued and agreed should be pushed off until the remedy phase. In sum, Google cannot on one hand agree to bifurcate the issues and on the other argue to merge them when it sees fit. Thus, U.S. Plaintiffs should not be required to supplement their response to Google's Fourth Interrogatory.

      **2.**      **Google's Fifth Interrogatory Calls for a Legal Conclusion and is Vague, Ambiguous, Impermissibly Hypothetical, Overly Broad, and Unduly Burdensome.**

In its Fifth Interrogatory Google asks that U.S. Plaintiffs "[i]dentify any circumstances from 2005 to the present under which Google could lawfully contract to be the default search engine for a third-party browser, or to be the default or exclusive search engine preloaded for any search access point on an iOS or Android device."  U.S. Plaintiffs responded by objecting to the Interrogatory because, among other reasons, Google's Fifth Interrogatory seeks information U.S. Plaintiffs are not required to prove, calls for a legal conclusion, seeks expert materials, and

because it is vague, ambiguous, impermissibly hypothetical, overly broad, and unduly burdensome.[16]

Google's Fifth Interrogatory seeks an unending series of advisory opinions identifying "any circumstances," whether real, hypothetical, or somewhere in between—under which Google could legally contract for default search placement. This request is fanciful. In response to another interrogatory, Plaintiffs have provided (and, indeed, have agreed to supplement with Bates numbers) the actual contracts that have contributed to Google's anticompetitive scheme— that is, the actual set of contracts at issue in this case. But here, Google demands U.S. Plaintiffs invent contracts from whole cloth. U.S. Plaintiffs instead responded fully and accurately, stating "U.S. Plaintiffs have formed no conclusions about hypothetical circumstances not at issue in this case" and directed Google to U.S. Plaintiffs' response to the First Interrogatory for the details regarding the case before the Court.

Fundamentally, Interrogatory 5 requests a legal conclusion regarding unidentified business arrangements. U.S. Plaintiffs contend that Google's *actual* conduct was unlawful and as such is not required to allege facts in support of claims that some other conduct might have been lawful.

Although Fed. R. Civ. P. 33(a)(2) permits an interrogatory that asks for a contention that relates to a fact, it does not permit the discovery of a party's legal position. *Escamilla v. Nuyen*, No. 14-CV-00852-AK, 2015 WL 4245868, at *8 (D.D.C. July 14, 2015). Parties are not required to respond to legal questions unconnected to the facts of the case at issue whether through requests for admission or by interrogatory. *See Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997) (finding that parties are not required to respond to requests for admission based

---

[16] *See id.* at pp. 10-11.

on hypothetical situations); *see also Williams v. Krieger*, 61 F.R.D. 142, 144 (S.D.N.Y. 1973)

(recognizing that requests for admission requiring application of law to the facts of the case are

appropriate, questions seeking "pure legal conclusions which are related not to the facts, but to

the law of the case" are not). Because Google's Fifth Interrogatory expressly calls for a legal

conclusion, U.S. Plaintiffs should not be required to supplement its response.

Similarly, even if Google's Fifth Interrogatory were actually a contention interrogatory,

which it is not, U.S. Plaintiffs would only be obligated to provide facts supporting the

contentions they have actually made in this litigation. *See Barnes v. District of Columbia*, 270

F.R.D. 21, 24 (D.D.C. Sept. 22, 2010) (citing *King v. E.F. Hutton & Co., Inc.*, 117 F.R.D. 2, 5 n.

3 (D.D.C.1987)). "Contention interrogatories generally ask a party: to state what it contends, or

to state the facts upon which it bases a contention." *Id*. (quoting *Everett v. USAir Group, Inc.*,

165 F.R.D. 1, 3 (D.D.C.1995)). "This type of request 'can be most useful in narrowing and

sharpening the issues, which is a major purpose of discovery.'" *Id*. Google's request has the

opposite effect and turns the idea of a contention interrogatory on its head; it requests

information that broadens and expands the issues beyond what U.S. Plaintiffs contend. U.S.

Plaintiffs contend that Google's anticompetitive conduct was unlawful and cannot reasonably be

required to opine on whether some hypothetical conduct was lawful.

Moreover, the burden involved in the exercise Google asks U.S. Plaintiffs to undertake

cannot be justified or proportional to the needs of this—or any—case. Google appears to assert

that U.S. Plaintiffs are required to prove both unlawful and lawful behavior. Google has not

provided any legitimate basis for requiring U.S. Plaintiffs the burden of imagining circumstances

under which some unidentified conduct might be lawful since 2005. There are truly an infinite

number of possible hypothetical scenarios that could be imagined, none of which could be fully

analyzed in the abstract, as the Fifth Interrogatory demands.

If Google truly wants to know whether some business conduct is legal, it is free to seek a

business review letter from the Department of Justice pursuant to the Department's Business

Review Procedure. *See* 28 C.F.R. Section 50.6. Under that process, Google may indeed seek a

determination regarding a business arrangement not in effect, but only after providing detailed

information regarding the nature of the planned arrangement and the gathering of all required

facts by the Department. Google was, of course, free to pursue a determination at any time and

remains free to do so now. But even in that context of a business review, the burden is not on

U.S. Plaintiffs to develop a lawful business plan for Google or to dream of scenarios, real or

imagined, that might have existed and provide legal determinations at some unknown number of

points in time between 2005 and the present.

For the foregoing reasons, the Court should deny Google's request for further

supplementation regarding its Fourth and Fifth Interrogatories.

### C.   **Plaintiff States' Position Statement**

Plaintiff States have incorporated by reference the U.S. Department of Justice's responses

and objections to Google's Fourth and Fifth Interrogatory and therefore have an interest in this

dispute. For all the reasons explained in the U.S. Department of Justice's position statement, the

Court should deny Google's request for further supplementation regarding its Fourth and Fifth

Interrogatories to the Plaintiffs.

Dated: March 4, 2022                          Respectfully submitted,

                                              By: ____/s/ Kenneth M. Dintzer_____
                                              Kenneth M. Dintzer
                                              Karl E. Herrmann
                                              U.S. Department of Justice, Antitrust Division
                                              Technology & Digital Platforms Section
                                              450 Fifth Street NW, Suite 7100
                                              Washington, DC 20530
                                              Telephone: (202) 227-1967
                                              Kenneth.Dintzer2@usdoj.gov

                                              *Counsel for Plaintiff United States of America*

                                              By: ____/s/ Bret Fulkerson_____
                                              Bret Fulkerson, Deputy Chief, Antitrust Division
                                              Kelsey Paine, Assistant Attorney General
                                              Office of the Attorney General, Antitrust Division
                                              300 West 15th Street
                                              Austin, Texas 78701
                                              Bret.Fulkerson@oag.texas.gov

                                              *Counsel for Plaintiff State of Texas*

                                              By: ____/s/ Adam Miller_____
                                              Rob Bonta, Attorney General
                                              Ryan J. McCauley, Deputy Attorney General
                                              Adam Miller, Deputy Attorney General
                                              Paula Blizzard, Supervising Deputy Attorney
                                              General
                                              Kathleen Foote, Senior Assistant Attorney General
                                              Office of the Attorney General,
                                              California Department of Justice
                                              455 Golden Gate Avenue, Suite 11000
                                              San Francisco, California 94102
                                              Adam.Miller@doj.ca.gov

                                              *Counsel for Plaintiff State of California*

                                              Leslie Rutledge, Attorney General
                                              Johnathan R. Carter, Assistant Attorney General
                                              Office of the Attorney General, State of Arkansas
                                              323 Center Street, Suite 200
                                              Little Rock, Arkansas 72201
                                              Johnathan.Carter@arkansasag.gov

                                              *Counsel for Plaintiff State of Arkansas*

Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

Austin Knudsen, Attorney General
Rebekah J. French, Assistant Attorney General,
Office of Consumer Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, Montana 59620-0151
Rebekah.french@mt.gov

*Counsel for Plaintiff State of Montana*

Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

28

Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By:      */s/ Jonathan B. Sallet*
Jonathan B. Sallet, Special Assistant Attorney
General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General (D.C.
Bar No. 1022365 inactive)
Diane R. Hazel, First Assistant Attorney General
(D.C. Bar No. 1011531 inactive)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff State of Colorado*

Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*

Brunn W. (Beau) Roysden III, Solicitor General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff State of Arizona*

29

Max Merrick Miller
Attorney General's Office for the State of Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*


Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*


Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*


J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter P.O.
Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*

Jeff Pickett
Senior Assistant Attorney General
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100
jeff.pickett@alaska.gov

*Counsel for Plaintiff Alaska*

Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*

Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection
Division
Benjamin Bernard Paholke, Assistant Attorney
General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*

Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*

Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff State of Illinois*

Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*

Matthew B. Frank, Assistant Attorney General
Antitrust Division
William T. Matlack, Assistant Attorney General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*

Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*

Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio, Antitrust
Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*

Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*

Yvette K. Lafrentz
Office of The Attorney General of South Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Plaintiff Wyoming*

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_____
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
725 12th Street, NW
Washington, DC 20005
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*