# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**DEFENDANT'S FOURTH SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
PLAINTIFFS' NOVEMBER 1, 2021 NOTICE OF DEPOSITION OF GOOGLE LLC**

Defendant Google LLC hereby supplements its responses and objections to Plaintiffs' November 1, 2021 Notice of Rule 30(b)(6) Deposition of Google LLC ("Notice"), as follows.

## GENERAL OBJECTIONS AND OBJECTIONS TO DEFINITIONS

Google incorporates by reference the general objections and objections to definitions set forth in its December 1, 2021 Responses and Objections to the Notice.

## SPECIFIC RESPONSES AND OBJECTIONS TO TOPICS

3. From 2005 to the present, the methodology by which Google calculates the amount it is willing to pay search distribution partners in revenue share agreements, including:

    a. how Google measures the "defensive value" of the deal (*see e.g.*, GOOG-DOJ-13127914);

    b. how Google calculates the lifetime value or long-term revenue of various features that either act as search access points or drive search traffic including the source of any inputs and basis for any assumptions used in the calculations; and

    c. how Google estimates the incremental revenue created by a search distribution deal including (i) any methods of estimating the expected proportion users or revenue from a given search access point that Google would retain if it were it to lose default status (e.g. "winback" rate or "clawback" rate) and (ii) the results of any analyses utilizing these methods.

**RESPONSE:** Google incorporates by reference the objections to Topic 3 set forth in its December 1, 2021 Response and Objections to the Notice. Subject to and without waiving these objections, and subject to the clarifications and explanations provided by Plaintiffs during the meet-and-confer process, Google responds as follows:

Since 2005, Google has negotiated and entered into hundreds of revenue share agreements (including amendments thereto) with dozens of third parties. There has been no single "methodology" that governs the calculation of the amount Google is "willing to pay" regarding each of the negotiated revenue share agreements. Those revenue share agreements are individually negotiated against the backdrop of the strategic relationship and prior agreements with Google's counterparty. Moreover, certain of the agreements are not limited to terms related to placement of or default setting for search and payment of shares of revenue from search

██████████████████████████████████████

advertising; such agreements may also include terms related to █████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████. For these reasons, in deciding whether to enter into any particular agreement, Google considers factors unique to that particular context. Nonetheless, this response identifies factors that Google has taken into account as a general matter.

      In general, Google models ████████████████████████████ ████████████████. To do so, Google finance teams rely on ███████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████. Google business personnel negotiating with the counterparty in question also look at ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████.

      In determining whether to enter into a particular revenue share agreement, Google does not as a matter of course █████████████████████████████████ ████████████████████████████████████████████ Google

3

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ employees periodically have discussed that issue internally in connection with some revenue share agreements. And personnel have periodically attempted ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

However, incremental revenue is a theoretical construct and not a precise measure, both prospectively and retrospectively. As a general matter, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Google further responds as follows with respect to the particular terms identified in the subparts of Topic 3:

**"Defensive value"**: Google does not as a matter of course ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In some instances, "defensive value" ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

**"Lifetime value" or "lifetime revenue"**: The concept of "lifetime value" generally incorporates some direct costs, whereas "lifetime revenue" includes only revenues. Both lifetime value and lifetime revenue are theoretical constructs that provide, at most, directional estimates of user or product values, based on specific assumptions. They are not intended to be precise measurements.

4

▇▇▇

Google does not as a matter of course ▇▇▇ ▇▇▇ in the context of revenue share agreement negotiations. In some instances, Google's finance teams ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇.

**"Winback" or "clawback" rate**: In certain instances, Google personnel have ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇.

Although there have been ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇ ▇▇▇.

5

| | |
|---|---|
| Dated: February 8, 2022 | Respectfully submitted,<br><br>WILLIAMS & CONNOLLY LLP<br><br>By: */s/ John E. Schmidtlein*<br>John E. Schmidtlein (D.C. Bar No. 441261)<br>Benjamin M. Greenblum (D.C. Bar No. 979786)<br>Colette T. Connor (D.C. Bar No. 991533)<br>725 12th Street, NW<br>Washington, DC 20005<br>Tel: 202-434-5000<br>jschmidtlein@wc.com<br>bgreenblum@wc.com<br>cconnor@wc.com<br><br>WILSON SONSINI GOODRICH & ROSATI P.C.<br>Susan A. Creighton (D.C. Bar No. 978486)<br>Franklin M. Rubinstein (D.C. Bar No. 476674)<br>1700 K Street, NW<br>Washington, DC 20006<br>Tel: 202-973-8800<br>screighton@wsgr.com<br>frubinstein@wsgr.com<br><br>ROPES & GRAY LLP<br>Mark S. Popofsky (D.C. Bar No. 454213)<br>2099 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>Tel: 202-508-4624<br>Mark.Popofsky@ropesgray.com<br><br>*Counsel for Defendant Google LLC* |