# EXHIBIT C

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

JOHN E. SCHMIDTLEIN
(202) 434-5901
jschmidtlein@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 18, 2022

**BY EMAIL DELIVERY**

Kenneth M. Dintzer, Esq.
U.S. Department of Justice
450 Fifth Street, NW
Washington, DC 20530
Kenneth.Dintzer2@usdoj.gov

Re:     ***United States, et al. v. Google LLC*, No. 20-cv-03010 (D.D.C.**)

Dear Ken:

I write in response to your letter of February 10, 2022 regarding Google's response to Topic 3 of Plaintiffs' November Rule 30(b)(6) notice.

Your letter is incorrect in asserting that Google "fail[ed] to satisfy its Rule 30(b)(6) obligation" with respect to Topic 3 and in suggesting that some "remedy" is warranted. As we explained from the outset, Topic 3 is impermissibly broad and vague because "Google has entered into hundreds of revenue share agreements (including amendments thereto) since 2005 and there is no single 'methodology' that governs financial analysis of revenue share agreements, many of which are individually negotiated." Dec. 1, 2021 Resp. & Obj. to Nov. Rule 30(b)(6) Notice. In light of the background that we have addressed in our correspondence with you and in our submissions to the Court, and given Plaintiffs' refusal to limit the topic in any meaningful way, Google provided a response based on reasonable inquiry that addressed commonalities applicable to agreements encompassed by the Topic as well as the specific subparts of Topic 3. That is consistent with what we described to you and the Court, and with our understanding of the Court's guidance on the matter. *See, e.g.*, Jan. 7, 2021 Hr'g Tr. 43:15–44:16 (referencing "the common variables and considerations that go into the negotiation of these agreements from Google's perspective"); *id.* 49:7–21 (indicating that Plaintiffs' example of even a single hypothetical "factor" or "variable" is "a very difficult one to either respond to in writing or to prepare someone for a deposition"); *id.* 52:13–23 (explaining that Google "will put together … a response, as we initially offered to do, and … will be guided by exactly how [the Court has] guided us," and confirming that Google is not "going to go back and uncover every consideration or every technical variable or every little aspect of every one of these deals").

WILLIAMS & CONNOLLY LLP
February 18, 2022
Page 2

There is no basis for Plaintiffs' request that Google supplement its response to Topic 3 by answering the "follow-up questions" in your February 10 letter. A number of the questions are not even within the scope of Topic 3 as drafted by Plaintiffs. For example, neither your February 10 letter nor the January 18 letter that it references explains how a request "that Google enumerate each major benefit (including any non-financial benefits) Google believes it receives from entering into revenue share agreement[s]" is encompassed by Topic 3 of the November Rule 30(b)(6) notice. Several of the other questions—including Plaintiffs' request relating to "the standard ceiling for revenue share payments," the ways in which "this ceiling and approval process changed over the past 10 years," and which "contracts, worldwide, exceed this ceiling"—likewise run beyond the scope of Topic 3.

To the limited extent that Plaintiffs' "follow-up questions" are within the scope of Topic 3, they are unwarranted and improper. Neither Rule 30(b)(6) nor Plaintiffs' additional written questions give rise to an obligation to catalogue what an unspecified number of individual employees have in mind when they use a particular term or to recount in detail the negotiation and analysis of dozens of agreements and amendments over a 12-year period. *See, e.g.*, *Banks v. Office of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373 (D.D.C. 2007) (rejecting the unreasonable "expectation that the deponent must investigate not just facts reasonably known to the corporation, but *any* fact potentially relevant to the described topic known by any employee of the corporation").

As we have previously indicated, Plaintiffs know which individuals were involved in negotiating and analyzing revenue share agreements that they may consider relevant, and many of their questions have been asked in the dozens of depositions that Plaintiffs have conducted to date. For example, Plaintiffs have asked multiple witnesses about the use of the terms "TAC and net revenue." Feb. 10, 2022 Ltr. at 2; *see, e.g.*, Oct. 8, 2021 Dep. Tr. 18:19–24:23, 147:10–149:20, 170:18–172:6 (asking numerous questions relating to TAC, including whether "traffic acquisition costs include revenue share payments that Google makes to distribution partners," which "TAC rate" is reflected in various agreements, and how "TAC payments" to particular partners have changed over time); *id.* 144:5–149:24 (asking whether particular agreements reflect "positive net revenue"); Dec. 15, 2021 Dep. Tr. 106:11–21, 108:6–109:3 (asking questions such as "[w]hat is net revenue"). To offer another example, Plaintiffs have asked witnesses when and how they  Feb. 10, 2022 Ltr. at 3; *see, e.g.*, Oct. 8, 2021 Dep. Tr. 191:12–193:7 (asking questions relating to the search access points for which the witness and his team have "analyzed the potential or likely clawback rate" and the ). In some instances, Plaintiffs have even asked the same witness those questions more than once. *See, e.g.*, Jan. 11, 2022 Dep. Tr. 71:22–72:20 (asking the same witness again ).

Furthermore, Plaintiffs have had the opportunity to ask numerous witnesses about Topic 3 itself, both before and after the Court addressed that Topic. *See, e.g.*, Sept. 11, 2020 Dep. Tr.

WILLIAMS & CONNOLLY LLP
February 18, 2022
Page 3

124:24–126:9 (asking how "the finance team determine[s] the absolute base of what you would
be willing to pay ███████████████████████████████████ "); Oct. 8, 2021 Dep. Tr.
28:22–37:6 (asking how the witness "determine[s] whether a default distribution agreement is
going to be worth the money to Google" and whether the witness "typically recommend[s] a
maximum revenue share that Google should offer to the proposed distribution partner"); Jan. 25,
2022 Dep. Tr. 45:11–54:25, 122:21–126:18 (asking about "the variables that affect the decision
to pay one partner X amount and another partner Y amount" and whether the witness was
involved in any deals "where Google was willing to put more on the table to make sure that one
of its rivals didn't get the deal").

    If Plaintiffs have further questions about the subjects addressed in your February 10
letter, they can consider posing them at one or more of the Rule 30(b)(1) depositions that they
have scheduled for the coming weeks.  In preparing their final Rule 30(b)(6) notice, Plaintiffs
should limit their topics to "discrete subjects and seek to avoid redundancies with their
depositions of fact witnesses."  Sept. 28, 2021 Minute Order.

                                        Sincerely,

                                        John E. Schmidtlein