```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA, ET AL.,   )
                                    )
          Plaintiffs,               )
                                    )    CV No. 20-3010
       vs.                          )    Washington, D.C.
                                    )    March 9, 2022
GOOGLE LLC,                         )    11:00 a.m.
                                    )
          Defendant.                )
_____)


                      TRANSCRIPT OF
          STATUS CONFERENCE VIA ZOOM PROCEEDINGS
            BEFORE THE HONORABLE AMIT P. MEHTA
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

For DOJ Plaintiffs:            Kenneth M. Dintzer
                               U.S. DEPARTMENT OF JUSTICE
                               1100 L Street, NW
                               Washington, D.C.
                               (202) 307-0340
                               Email:
                               kenneth.dintzer2@usdoj.gov


For Plaintiff
State of Colorado:             Jonathan Bruce Sallet
                               COLORADO DEPARTMENT OF LAW
                               Consumer Protection Section,
                               Antitrust Unit
                               Ralph L. Carr
                               Colorado Judicial Center
                               1300 Broadway
                               Suite 7th Floor
                               Denver, CO 80203
                               (720) 508-6000
                               Email: jon.sallet@coag.gov
```

APPEARANCES CONTINUED:

For Defendant Google:          John E. Schmidtlein
                               WILLIAMS & CONNOLLY LLP
                               725 12th St., NW
                               Washington, D.C. 20005
                               (202) 434-5000
                               Email: jschmidtlein@wc.com


Court Reporter:                William P. Zaremba
                               Registered Merit Reporter
                               Certified Realtime Reporter
                               Official Court Reporter
                               E. Barrett Prettyman CH
                               333 Constitution Avenue, NW
                               Washington, D.C. 20001
                               (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

2       COURTROOM DEPUTY:  Good morning, Your Honor.

3   This is Civil Action 20-3010, United States of America

4   versus Google LLC.

5           Kenneth Dintzer for the DOJ plaintiffs.

6           William Cavanaugh and Jonathan Sallet for the

7   Colorado Plaintiffs.

8           And John Schmidtlein on behalf of Google.

9           And, Your Honor, you're currently muted.

10          Thank you.

11          THE COURT:  Okay.  Good morning, everyone.  Nice

12  to be with you all again.  I hope everybody is doing well.

13          All right.  So we're back for our monthly status

14  conference, see where things stand.  I've reviewed the Joint

15  Status Report and the disputes that are presented in there

16  and we'll get to all that in a minute.

17          But why don't we just start where we usually do

18  and just get a quick roundup of discovery and where things

19  stand.  And if there's anything that already isn't flagged

20  in the Joint Status Report, now would be an appropriate time

21  to do it.

22          And I would include in that whether the parties,

23  I assume you all have, exchanged or updated your initial

24  disclosures with the witness designations that were the

25  subject of our last hearing, and then also, I think,

1  Mr. Dintzer, if you would just, as part of your

2  presentation, just discuss -- I think last time you alluded

3  to a potential issue involving Apple and whether there's

4  anything I need to do about that or whether that's ripening

5  into something that may need to be addressed by me.

6          MR. DINTZER:  Thank you, Your Honor.  May it

7  please the Court.

8          So depos are humming along.  We're at -- we've

9  noticed 58 of the 80 that we've been entitled to.  There are

10  58 days left in fact discovery, and so we are -- we have

11  40 completed, 18 noticed, and then two more of the 30(b)(6)

12  variety, we do 16 hours, and they add up to two more of

13  them.  So we're on schedule on depositions to get everything

14  completed.

15          Interrogatories, we've issued our second set of

16  rogs., and we served those on March 3rd.  So we're waiting

17  for Google's response.

18          Docs, we're continuing to negotiate the previous

19  request for productions, and we've served our ninth RFP on

20  March 2nd.  It's very narrow.  It's regarding financial

21  docs.  And we're continuing to negotiate with Google

22  regarding everything else.

23          We have some -- Google does owe us still some

24  productions and some data.  But we are working with them,

25  and right now there's nothing to report about that, and so

1    that's moving forward.

2              Let's see.  We issued a deposition notice, this

3    was our February 30(b)(6) notice that we were allowed to

4    issue.  We issued that on the date that we were allowed,

5    February 22nd.

6              And we've received Google's objections, they

7    issued those on the day they were supposed to.  But we

8    received them on the day the JSR was filed, which meant that

9    we couldn't address some concerns we have in those that we

10   would like to the raise to the court.

11             Specifically, we would ask the Court for an order

12   that -- in their -- they have a variety of positions and

13   objections and the like.  But the thing that we're really

14   concerned about -- we'll be able to negotiate, presumably,

15   about the scope of the 30(b)(6).  But the thing we're

16   concerned about is that they have awarded themselves the

17   right to decide whether they want to reply by answer or by

18   witness.  And if they choose to reply by written answer,

19   they want it to count against our interrogatory count.  So

20   they've basically -- they've taken over our 30(b)(6).

21             So our position, Your Honor, and what we'd ask the

22   Court for more would be that we would like witnesses for

23   this, we would like the choice.  And so we would ask the

24   Court for an order that Google make its witnesses available

25   on our final 30(b)(6) notice on March 22nd -- I mean,

 1   I'm sorry, March 29th, with the understanding that then we

 2   can negotiate with them if they come up with a proposal.  As

 3   far as written responses, those have worked for some

 4   questions and they haven't worked for others, as we'll

 5   detail more when we get into the challenged issues.  But it

 6   is our 30(b)(6) and we should have the right to choose which

 7   route they take, but also a date certain when we will get a

 8   witness in the chair.  We only have 58 days left, and we

 9   have to be able to come back, there are issues raised.

10         I will note that while it's our final fact

11   30(b)(6) to Google, we are still entitled to a data

12   30(b)(6), which we are preparing.  There's no date attached

13   as far as when that's due, we are preparing it and we hope

14   to have it out forthwith.  So that's one issue that we have

15   for the Court that's not in our JSR.

16         A second issue is -- and I don't know if the Court

17   is aware of it or not, we filed a motion to compel and for

18   sanctions yesterday.  And it's sealed, so I'm not going

19   to -- I'll see if the Court has questions, but I wasn't

20   going into it until we have a chance to file an unredacted

21   copy and the like.

22         But we would ask for an argument schedule that we

23   get the argument for that motion scheduled.  Given the

24   number of depositions that we have on our plate, we want to

25   make sure that we have that available so that that can -- so

1   that it fits.

2          THE COURT:  Okay.

3          Yeah, I was going to -- once we got through these

4   discovery updates, I was going to talk about that very issue

5   about a schedule for that.

6          MR. DINTZER:  Okay.

7          THE COURT:  And also just the point -- I only have

8   read the motion, I haven't read the memo, and we'll talk

9   through what an appropriate schedule is and potential

10  hearing date for the motion, okay?  But let's just put a pin

11  on that for now and we'll return to that after we hear from

12  Mr. Schmidtlein on discovery.

13         MR. DINTZER:  Thank you, Your Honor.

14         Both sides updated their initial disclosures, and

15  followed, of course, the guidelines that the Court provided.

16         We will note that the only third parties that

17  Google has put an asterisk by are the third parties that

18  they have already either deposed or already have noticed for

19  deposition.  So they haven't identified anybody that they're

20  thinking about or that they have identified as important.

21  So it is -- their asterisks are of limited value.

22         And we have a refresh on the initial disclosures

23  coming up, but we're hoping that there are no surprises,

24  given what we've seen from them so far.  So the short answer

25  on the issue of disclosures, we don't have anything for the

1    Court, and the asterisk process seemed to work.

2            Let's see.  We are working -- separate from our

3    filing, we are working with Google's counsel to resolve

4    other privilege concerns that may eventually come bubbling

5    up but they are not ready right now.

6            We have also had privilege issues with third

7    parties, several of them, that are not ripe.  But we've had

8    difficulty getting privilege logs, we've had

9    over-designation by third parties, and we've had trouble

10   getting redacted copies when they've identified documents as

11   privileged.  So we're pushing back on these.  We may not be

12   able to wait until the next status conference, given the

13   shrinking amount of time that we have, but we don't have

14   anything ripe right now for them.

15           Apple, we have had some concerns.  We have --

16   I think we've reached a point of détente where we're going

17   to -- I'm hopeful that we're going to get what we want.

18   If not, then that'll probably be something that we would

19   raise sooner rather than later to make sure that we get --

20   we haven't done the Apple depositions because we need to

21   resolve some document issues.

22           And so we won't be able to wait until the next

23   status conference.  If we can't get through these document

24   issues, we'll need to ask for the Court's help so that we

25   can make sure that we get these depositions done.  We've

1  noticed them and we've scheduled, but we can't do them until

2  document issues are resolved.

3        The next thing involves a document recipient,

4  Etsy, E-t-s-y, who has refused to produce documents pursuant

5  to a Rule 35 subpoena that they've received.  We understand

6  that they've gathered the documents and are ready.

7        They have made their production contingent upon

8  either a modification to the protective order or some

9  significant burdensome agreement on our part, neither of

10  which are acceptable.  We believe that the protective order

11  provides sufficient coverage for -- it only has 120 third

12  parties who have received document requests.  But anyway, I

13  do not know whether they were on the line right now or not,

14  but it is our plan to file a motion to compel regarding --

15  as quickly as possible regarding the production so that we

16  can get it in hand.

17        THE COURT:  Okay.

18        MR. DINTZER:  Are you - I'm sorry, Your Honor.

19        THE COURT:  No, that's okay.

20        Let's just save the issue with Etsy till the end

21  here and figure out what makes the most sense.

22  I'm not sure -- well, let's just put a pause on it, and

23  maybe this is something we can resolve through an oral

24  hearing, rather than having the parties exchange pleadings,

25  but maybe having something in writing might be helpful.  But

 1    let's just put a hold on that, and I don't know whether

 2    counsel for Etsy is on or not.

 3              MR. DINTZER:  Of course, Your Honor.

 4              And then let's see.

 5              And then finally we have the two disputed issues

 6    that we've briefed.  So that sort of runs through where we

 7    are, Your Honor.

 8              THE COURT:  Okay.

 9              All right.  Well, thank you.  That's helpful.

10              And so let me turn then to Mr. Cavanaugh.

11              MR. CAVANAUGH:  Good morning, Your Honor.

12              THE COURT:  Good morning.

13              MR. CAVANAUGH:  The depositions are continuing

14    apace.  We anticipate we'll have a few additional deposition

15    notices that we'll serve in the near future in order to get

16    dates on the calendar.

17              We did exchange amended initial disclosures with

18    Google.  Largely our list overlaps with the Department of

19    Justice list.  We have two additional Microsoft witnesses

20    relating to our claims on SA 360 and a handful of other

21    witnesses from specialized vertical providers.

22              In terms of the document production in February,

23    I mentioned we had issued a fifth request for production on

24    a limited set of strategic documents that we learned about

25    that are generated in the Office of the Chief Executive of

Google.

Google is going to produce those documents.  We've requested that these strategic documents be produced to us as quickly as possible, but certainly by March 21st, which is two weeks before Mr. Pichai's deposition, he's the chief executive officer of Google.  And these documents are generated by his office, dealing with strategic planning, key results, objectives, and we anticipate those are important documents to have sufficient time to review before his deposition.

I think that's it for us, Your Honor.

THE COURT:  Okay.

All right.  Let me -- all right.  I was pausing to look back at something.

All right.  Let me turn to Mr. Schmidtlein.

MR. SCHMIDTLEIN:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. SCHMIDTLEIN:  We also are --

THE COURT:  Hang on.

Mr. Schmidtlein, can you hang on one second?

We may have lost -- Oh, there he is, Mr. Dintzer.  We lost you for a moment.  I wasn't sure if you had fallen off.

MR. DINTZER:  I apologize, Your Honor.  I'm having a little bit of bandwidth problem, so I just turned down my

1    camera when I didn't have to present just to hope that it

2    wouldn't test --

3            THE COURT:  No problem.  The entire square fell

4    off the screen.

5            All right.  Mr. Schmidtlein.

6            MR. SCHMIDTLEIN:  Yes, Your Honor.

7            We have also had issued interrogatories to both

8    plaintiff groups.  We have gotten responses.  The states

9    asked for a short extension, which we granted them.

10           But we have now gotten responses from both groups.

11   We have sent them deficiency -- we've sent deficiency

12   letters to the DOJ.  Frankly, with respect to just about

13   every single one of their response, was, in our judgment,

14   deficient.  They have agreed to supplement nearly all of

15   them.  The two that remain outstanding -- and we're still

16   waiting for the supplemental answers.  So we're still

17   waiting to evaluate whether, in fact, their responses are

18   going to be sufficient.

19           But the two that they have refused to answer

20   outright are on the agenda for today, and we are -- because

21   we got the states' responses later, we are working with them

22   and trying to meet and confer with them to get

23   supplementation with respect to a number of additional

24   interrogatories that were only relevant to the states'

25   claims.  So that process is still unfolding, and if we need

1   to, we will come back to you promptly for other answers.

2          This does, I think, bleed a little bit into the

3   initial disclosures conversation.  As you may remember last

4   time, we had tried to get -- we wanted the updated initial

5   disclosures to be pegged to getting fulsome responses from

6   both groups of plaintiffs.

7          We believe -- we've been frustrated a little bit

8   by that, so we're waiting and we are hopeful that we are

9   going to get fulsome responses in advance of this last

10  supplemental initial disclosure date that we have later in

11  March, as that may impact our views about witnesses and the

12  like, but we are working closely with him to try get those

13  resolved.

14          As to the initial disclosures that the plaintiffs

15  served, again, I don't know that they've cured all the

16  problems and issues we had with the last go-around.  There's

17  still a variety of companies and sort of vague and, I think,

18  frankly, over-designations, but we're working through that

19  as best we can and we will look forward to getting their

20  amended initial disclosures later in March.

21          As to the 30(b)(6) that Mr. Dintzer recounted, we

22  did provide our responses and objections.  They have not

23  yet -- had not yet reached out to us to meet and confer

24  about any of those.  So as we have done in the past, we will

25  certainly do that with them and see if we can narrow areas

1   of contention or dispute.  We have indicated for a number of

2   them that we are willing and we're ready -- we're going to

3   produce sort of witnesses.

4          These are very, very broad, candidly, Your Honor,

5   I think this process whereby the DOJ has been permitted to

6   backload 30(b)(6) topics and deposition notices has been a

7   real inefficient use of discovery here.  It is borderline

8   abusive what they're doing.

9          Of the topics that they have identified, the areas

10  that they are now asking for testimony on, do not, as they

11  promised earlier on, relate to things that they've just

12  learned or things that are narrow or targeted as if these

13  were very rifle-shot issues, sort of cleanup issues.

14         These are all issues and things that were knowable

15  and known to them at the very outset of the case,

16  we believe, and we've now gone through dozens and dozens of

17  witnesses, who have been asked in some forms, or fashions,

18  in some cases, aspects of these questions, and we're now

19  facing, you know, issues where they're coming back and

20  saying, oh, no, we want to now pose more questions on the

21  exact same topics that may pertain to witnesses that have

22  already been deposed.  So, again, I don't think it's ripe

23  for you today because we haven't even met and conferred, but

24  we are very frustrated by this process.

25         And as I said, we continue to pursue and deal with

 1    third-party discovery as well.  We're in the middle of

 2    depositions with various third parties listed on the

 3    plaintiff's initial disclosures.  And as I said, we're

 4    trying to work out all the issues we've got with them on

 5    following up on document issues, privilege issues, and the

 6    like.  And if we have any of those to bring to the Court,

 7    we will do so promptly.

 8            THE COURT:  Mr. Schmidtlein, can you address the

 9    request that Mr. Dintzer made earlier or at least what he

10    suggested was your response to the second 30(b)(6), which is

11    that I think the way he put it is that Google has arrogated

12    to itself the right to decide whether to answer by written

13    -- provide a written answer or provide deposition testimony.

14    Is that accurate from your perspective?

15            MR. SCHMIDTLEIN:  We believe, as we have in the

16    past, that a variety of the noticed topics are really not

17    appropriate 30(b)(6) sort of testimony topics.  They're sort

18    of things that are almost impossible for a single witness to

19    sort of give testimony on, because these span such broad

20    topics over such long time periods across varying different

21    subject matters, that these really are.

22            What they've done is they have granted themselves

23    sort of significant extensions on the limits of

24    interrogatories in this case.  And we've worked with them

25    and we've, I think -- you know, we've basically allowed this

1   and suffered through this and provided written responses in

2   the past to deal with some of these, and none of these have

3   counted towards the interrogatory limits that are in place

4   in the case.  And they've sort of done it again.

5           And we've kind of reached a point where, you know,

6   they need to -- if they're going to pose these type of

7   inquiries, which, again, as I say, are not true 30(b)(6)

8   inquiries, then our position is, you need to start counting

9   these against the interrogatories that are afforded under

10  the limits in the case.

11          We can't be -- I view this as not as sort of us

12  taking over the 30(b)(6), I view this as them granting

13  themselves additional interrogatories, because these can't

14  possibly be addressed by any one or even a slew of

15  witnesses.

16          THE COURT:  I guess what I'm hearing, and you all

17  will correct me if I am wrong, is that, look, there's still

18  much to discuss about these 30(b)(6) topics on the second

19  notice.  DOJ is open to Google giving written responses to

20  some of these topics, and for other topics it sounds like

21  Google is prepared to make witnesses available.

22          I haven't quite heard Mr. Schmidtlein say that we

23  can decide, Judge, whether to respond in writing or with a

24  witness, and he'll correct me if I am wrong about that.

25          But to the extent that you all are asking me to

1    resolve anything today, it's not clear to me there is

2    anything specific to resolve, but you'll correct me if I'm

3    misreading the situation.

4              MR. SCHMIDTLEIN:  I think --

5              MR. DINTZER:  Your Honor, if I may be heard.

6    I'm sorry.  Go ahead.

7              THE COURT:  That's okay.

8              Go ahead, Mr. Schmidtlein.

9              MR. SCHMIDTLEIN:  I think that's right,

10   Your Honor.

11             I mean, just to be clear, we're prepared to sit

12   down and talk to them about these.  We're not sure, as

13   currently drafted, we don't believe, as currently drafted,

14   some of these are appropriate as sort of 30(b)(6)s.

15             If they're willing to talk with us and work with

16   us upon sort of a narrowing, as we've been able to do with

17   respect to some of the other topics and prior notices and

18   get to a point where a written response makes sense, you

19   know, we're willing to sort of do that.

20             If we obviously can't come to an agreement and

21   they're going to say, no, no, no, no, we think you have to

22   somehow prepare a witness on this, we may be in a position,

23   Your Honor, where we have a dispute that we have to come

24   back to you and have you resolve.

25             But we have not yet met and conferred.  As you may

 1   remember, you asked that we respond to these within ten

 2   days, you know, sort of a truncated, a shortened response

 3   period.  We did that.  It's a long -- you know -- it's

 4   another long set of topics with many, many subparts to it.

 5   But we worked hard to evaluate those, and we're getting --

 6   we're gathering information, even as we speak, to be able to

 7   deal with those substantively in whatever fashion we're able

 8   to work out.

 9           So I think you are right that there's nothing that

10   can be resolved formally today, but it may well be that

11   we're going to need your assistance down the road as to

12   maybe certain aspects that we can't resolve.

13           THE COURT:  Okay.

14           Mr. Dintzer.

15           MR. DINTZER:  Yes, Your Honor.

16           I think one thing that probably -- I mean, I think

17   if it's -- I didn't hear Mr. Schmidtlein say one way or the

18   other about whether they feel like they can force written

19   answers on us.  I don't know whether they do or they don't.

20           But assuming that they don't, because Your Honor

21   asked him, our position, and one thing that we think is ripe

22   today, Your Honor, is that if they decide -- if we decide

23   with them that we will accept written answers, that they

24   won't count toward our interrogatories; that if we want -- I

25   mean, we have interrogatories and if we wanted to issue an

1    interrogatory, we would have.

2          We really -- by doing this by 30(b)(6), it's a

3    stated preference that we rather have a witness, and that

4    letting them do a written response is -- it facilitates

5    their answering it and what they come back and decide is the

6    easiest way.

7          And to be fair to them, it has worked for some.

8    I mean, we had, I think, seven issues in the November

9    30(b)(6); we took written responses and accepted four, we

10   dropped one, we had a witness for one, and we have one still

11   in dispute.

12         So I'm not saying that the written responses can't

13   work, but I think it would help the parties to know that if

14   we do accept written responses, that they're not going to

15   count towards our interrogatories.

16         MR. SCHMIDTLEIN:  All I would say on that issue,

17   Your Honor, is, without -- without having anything in front

18   of Your Honor to actually look at and assess like whether

19   this is a proper 30(b)(6) versus an interrogatory, I don't

20   see that you're in a position to make a blanket ruling on

21   that this morning.

22         THE COURT:  Yeah, I don't think I'm inclined to do

23   that either.

24         Although I will say the following, which is, you

25   know, look, there are a lot of different incentives at play

1    here, and my goal ultimately is to try and get the

2    information exchanged in a way that's efficient and that

3    reduces the number of conflicts.

4            And so, you know, a rule that, for example, would

5    count an interrogatory against any written response to a

6    30(b)(6), you know, might disincentivize the Department of

7    Justice from agreeing to -- did we lose Mr. Dintzer again?

8    I can't quite tell if he's dropped off or he's just -- there

9    he is.  Okay.  You know, it might disincentivize them from

10   agreeing to something in writing, and even if that may be

11   the most efficient or appropriate way forward.

12           You know, at the same time, Mr. Dintzer, you know,

13   encouraging or being agreeable to doing something in

14   writing, you know, saves the government from the risk of

15   Google coming to me and saying, look, you know, you need to

16   issue a protective order as to this topic, Judge, and me

17   granting it.

18           So, you know, there are a number of competing

19   incentives here, and I think probably it doesn't make much

20   sense for me to issue a ruling without something more

21   concrete in front of me.  And if it turns out that I need to

22   do that, I will, but, you know, these are, I think, better

23   left to negotiations between the parties.

24           And you all understand the incentives and what's

25   happening far better than I do, and so I think it makes the

 1   most sense to just leave it there at this point.  And if

 2   something comes up in a more concrete way, I'll obviously

 3   then consider it.

 4            MR. DINTZER:  Thank you, Your Honor.

 5            THE COURT:  Okay.

 6            All right.  Mr. Schmidtlein, is there anything

 7   else that you wanted to discuss about third parties or any

 8   other discovery issues before we turn to the next topic?

 9            MR. SCHMIDTLEIN:  No, Your Honor.

10            THE COURT:  Okay.

11            All right.  Let's just talk quickly about the

12   motion that was filed.  I guess I'd like to -- I assume,

13   Mr. Dintzer, you're not asking for some kind of expedited

14   consideration and that the ordinary 14 days, at least as a

15   starting point, is acceptable to DOJ?

16            MR. DINTZER:  It is.

17            Our take is that the response is due on the 22nd,

18   our reply is due the 29th, and we'd ask for argument two

19   days or three days, either the 31st or the 1st, and in

20   person.

21            THE COURT:  Okay.  Well, you're not leaving me a

22   lot of time to read everything and digest it.

23            MR. DINTZER:  Or days after that, Your Honor.

24            Just to --

25            THE COURT:  Well, look, it's okay, I get it.

1    I know everything as we get closer to the deadline has

2    greater urgency.

3            The good news for you all, and please don't take

4    this as an invitation to call upon me any more frequently

5    than you do, is that I had one of these January 6th trials

6    that was supposed to take place in April and it's been

7    vacated.

8            MR. DINTZER:  And just so that the Court

9    understands, we have a deposition of a senior Google

10   executive taking place on -- Mr. Schmidtlein can correct

11   me -- I believe it's April 5th and 6th, that we hope to do

12   in person, which would put me out in California for those

13   dates.  Other than those dates, of course, Your Honor, we

14   are at the Court's convenience on the oral argument.

15           THE COURT:  Well, help me understand how this

16   could work from a practical standpoint then.  In other

17   words, if you're deposing somebody in California on the 5th

18   and 6th, then I presume, at a minimum, you're going to

19   travel -- and you want to do it in person -- you know,

20   you're going to travel on the 4th, so that sort of takes the

21   4th out.

22           MR. DINTZER:  Yes, Your Honor.

23           THE COURT:  You're going to travel back probably

24   on the 7th --

25           MR. DINTZER:  Yes, Your Honor.

1    THE COURT:  -- because, I gather, this is a

2  two-day deposition, which puts us, at the earliest,

3  you know, even the week before, which, if the briefing ends

4  the 29th, you know, realistically the earliest we could do

5  it is April 1.  Let's see if I can --

6    Yeah.  I mean, I'll tell you, it's not ideal for

7  me, and I'll tell you why.  You know, as you all may know,

8  we have these twice-a-year deadlines to get motions done on

9  our lists, and March 31st is that deadline, and so I'm

10  trying to keep that week free of other commitments.

11    MR. DINTZER:  We could, Your Honor, make it part

12  of the JSR.  I believe we have a JSR status conference on

13  the 8th.  I don't have that in front of me, but --

14    THE COURT:  We do.

15    MR. DINTZER:  -- I believe we do.

16    And so if we extended the time for that, we could

17  go through the normal business and we could then argue the

18  motion.

19    THE COURT:  That would be fine by me.  If you all

20  want to start -- I think right now we're scheduled to start

21  at 2:00; instead, we could start at 1:00 and we can do it in

22  person.

23    MR. DINTZER:  That would be great, Your Honor.

24    THE COURT:  Okay.

25    Does that work for everyone?

```
 1              MR. SCHMIDTLEIN:  Yes, Your Honor.

 2              THE COURT:  Okay.

 3              All right.  So why don't we do it that way.

 4   We will -- and if, as a result of that, you want a little

 5   bit more time in the schedule, that's fine, although I will

 6   ask that everything be completed by April 1 so that I have

 7   it squarely before me on April 4, so I have time to get

 8   ready for it that week.

 9              So let's -- so if the current schedule is till

10   May, I can't remember -- I'm sorry, March 29th, I think you

11   said, Mr. Dintzer, feel free to talk amongst yourselves

12   about stretching that out a few days.  That's fine by me.

13              MR. DINTZER:  We appreciate that, Your Honor.

14              THE COURT:  Okay.  So I think that issue is then

15   resolved.

16              And why don't -- before we get to disputes, is

17   counsel for Etsy on?

18              Okay.  Hearing no response, Mr. Dintzer, why don't

19   you do this.  Why don't you or one of your colleagues just

20   reach out to Etsy.  If this is something that truly needs my

21   attention, why don't you just contact chambers and we can

22   get something on the calendar to have that conversation.

23   I don't know whether Google thinks it needs to be part of

24   that conversation or not, but why don't we leave it there

25   for now since Etsy's counsel isn't on, okay?
```

1           MR. DINTZER:  We appreciate that, Your Honor.

2    We'll get something scheduled.  And we'll talk to Google's

3    counsel to see if they want to participate.

4           THE COURT:  All right.  I think that then brings

5    us to the disputed issues that are set forth in the Joint

6    Status Report.

7           So the first of those concerns, the issue that's

8    been persisting for some time now, that's topic 3 of the

9    30(b)(6).  And we've reached a point where there was an

10   initial answer provided in writing, Google -- and then the

11   Department of Justice responded with some additional

12   inquiries, and Google has objected to responding to those.

13          So I guess let me just kind of start with an

14   observation, and then let's talk about how to proceed.

15          The first is that a rule 30(b)(6) request is

16   obviously for a deposition, it's for testimony.  And so, you

17   know, if there is a valid 30(b)(6) request issue, it is for

18   testimony, and a written response is not a full substitute,

19   absent the Court granting some sort of protective order that

20   would allow that.  I guess that's one.

21          Two is, you know, the written answers that we've

22   talked about along the way and that Google has provided was

23   meant to -- for two things.  One, it was an acknowledgment,

24   I think, by me of Google's objection to this topic; that it

25   was too broad; that a request for information about

1   methodology, when the reality is seemingly that there isn't

2   one, at least not in the sense of scientific methodology or

3   something that would be analogous to that; and that, you

4   know, having a witness testify about such a methodology over

5   dozens and dozens, if not hundreds, of agreements, over a

6   decade-long period, was just not feasible.

7        And so, you know, we came to this notion of doing

8   a written response to try and -- the sort of second

9   observation is to narrow the field of topics or to at least

10  narrow the field in a way that could make this a more

11  palatable topic and a more reasonable topic and one that, if

12  necessary, could be followed up with written -- excuse me,

13  with an actual deposition.  You know, and I've looked at the

14  response -- or the questions of the Department and Google's

15  response, and I guess the question -- so those are my

16  observations.

17       And the question I have is this:  Mr. Dintzer, you

18  know, is the Department of Justice amenable, and this

19  actually, obviously, is true for the states as well, to --

20  and Google had suggested this previously -- to identifying

21  some subset of agreements that would be the subject of the

22  30(b)(6), that we would have some sample -- not even a

23  sample probably, that's not the right word, but what the

24  Department of Justice would identify as, perhaps, the most

25  significant agreements, the real agreements of interest.

 1           And that seemed to me what you were trying to move

 2    toward.  In your questions back to Google, you had

 3    identified 1, 2, 3, 4, 5, 6 revenue-sharing agreements or at

 4    least partners in revenue-sharing agreements, I don't know

 5    how many actual agreements that would amount to, that you

 6    had particular questions about.

 7           And so do I take from that that you are making --

 8    or at least you're prepared to consider a deposition

 9    which -- that would focus on a limited number of

10    counterparties and the agreements with those counterparties?

11           MR. DINTZER:  Yes, Your Honor, we'd be willing to

12    accept a deposition focused on those six counterparties.

13           And we made major efforts to narrow.  I'll give

14    you an example for question 2A.

15           THE COURT:  Can I ask, Mr. Dintzer, have you --

16    and I'm not asking this to cast aspersions one way or

17    another, but has that specific proposal been made to Google,

18    to limit any deposition on this topic to these six

19    counterparties and the agreements with those counterparties?

20           And then, you know, I'll ask Mr. Schmidtlein his

21    reaction to this and what that means in terms of trying to

22    get somebody ready for something like that even if it's

23    limited in the way that we've talked about.

24           MR. DINTZER:  It has, Your Honor.

25           And just to give the Court -- I mean, the Court's

 1   looked at some of the questions that we gave that Google did

 2   not answer.

 3          So I'll just give you an example:  List each major

 4   benefit Google receives under its current revenue-sharing

 5   agreement with those six and explain how, if at all, Google

 6   calculates the value of the benefit.

 7          I mean, presumably they like these agreements

 8   because they keep entering into them, and someone should

 9   know -- this is just the current one, so this cuts out all

10   the -- and they wouldn't answer that one.

11          So we think that the best thing to do would be to

12   have a witness in the chair, we will limit our questioning

13   to these six.

14          And Mr. Schmidtlein, you know, he repeatedly says

15   we've asked other people these questions.  What he doesn't

16   say is that we've gotten non-responsive answers,

17   insufficient answers, incomplete answers, which is why we've

18   done -- I mean, we have no interest in pursuing information

19   we've already got, which is why we've done the 30(b)(6).

20          And also, of course, we're entitled to answers

21   from Google, but that's really not the focus of all of it.

22   The focus is we need complete answers.  So we would focus on

23   these six and figure out how Google calculates that.

24          THE COURT:  And when you -- I'm sorry,

25   Mr. Dintzer.

1          When you say "focus on these six," are you

2     focusing just -- you know, what you proposed or agreed to

3     just focus on the current agreements?

4          MR. DINTZER:  We would want it to go farther back,

5     Your Honor, because we want to know how the methods that

6     they've analyzed the value of those agreements has changed

7     over time.  So that delta, the change in process, is

8     something that's important to us because it tells us where

9     they're at and how they're thinking about these.

10          Also, some of the current agreements are just

11     extensions of the previous agreements.  So to talk about the

12     current ones by definition means to talk about the previous

13     ones.

14          THE COURT:  Okay.

15          Mr. Schmidtlein, your reaction to this discussion.

16     And, you know, part of that, you can give me a sense of

17     whether you think it's feasible that one witness could be

18     brought up to speed about all of these agreements.

19          I don't know, for example, how -- you obviously

20     know or would be in a better position to understand how

21     Google manages all of this; in other words, is there a

22     single point of -- is there a single person, for example, as

23     to each of these six agreements, or is there someone who

24     oversees these relationships who might have a broader

25     understanding across all six of them?

 1          MR. SCHMIDTLEIN:  Your Honor, it is going to be

 2   different people for different corporate parties.

 3          There may be some that's handled by the same

 4   person, but this is not a one or even two people are

 5   knowledgeable about sort of the specific kind of

 6   negotiations and strategies around each --

 7          And they change over time.  So the idea that

 8   you're going to get one person, sort of educate them across

 9   all these breadth of topics which, is why, again, I think

10   our objection, Your Honor, was -- to these follow-up

11   questions was, these are actually much broader and more

12   in-depth than the original notice.  We answered the notice.

13   We provided responsive information.  Now they're asking

14   follow-up questions.

15          THE COURT:  Right.

16          MR. SCHMIDTLEIN:  And, again, our position was,

17   well, these are much broader and outside the scope of the

18   notice.

19          If you want to issue us interrogatories for all of

20   this information, then, you know, we can -- we may be able

21   to deal with it that way.

22          But the idea that we provide the information in

23   response to the 30(b)(6) about this methodology, which we've

24   explained to them there's not some single methodology,

25   they've now come back with a bunch of very, very specific

1   detailed follow-up questions that are outside the notice.

2   And now they want to -- I think the idea that you're going

3   to put a witness, one witness, or even two witnesses, you

4   know, to somehow teach them about everything across all of

5   these different agreements across all these years, I don't

6   think is going to be a good way to try to get at this

7   information.

8          And to Mr. Dintzer's question --

9          THE COURT:  So can I --

10         MR. SCHMIDTLEIN:  -- they have had access to

11   people who are involved in these.

12         THE COURT:  Can I ask, Mr. Schmidtlein, the

13   following, which is:  Would the Department of Justice and

14   the states, would they be able to identify at this point --

15   you've suggested that there would be multiple people who

16   would be the people with the most -- in the best position to

17   testify about these six agreements -- or these six

18   relationships with these six counterparties.

19         Is the Department of Justice in a position to know

20   who these people are?  And the reason I ask is, I guess the

21   question would be then to Mr. Dintzer, you know,

22   I understand there's some benefit to a 30(b)(6), but if, for

23   example, you knew who Google identified as the person with

24   the most personal knowledge -- with the actual knowledge as

25   to each of those agreements, wouldn't it just make sense to

 1    depose that person straightaway away on this topic, rather

 2    than have somebody brought up to speed over -- about a bunch

 3    of -- as to various agreements that they may not have

 4    firsthand knowledge about?

 5              MR. DINTZER:  Your Honor -- oh, I'm sorry.

 6              MR. SCHMIDTLEIN:  No.  Go ahead, Ken.

 7              I wasn't sure if that was to me or to you.

 8              THE COURT:  No, I guess it's to both of you.

 9              And whether that -- whether that knowledge has

10    been exchanged in a way that -- you know, look, if what

11    really the Department of Justice and the states are after

12    here is somebody to answer questions about these six

13    agreements, it seems to me the more straightforward way to

14    do this, and I understand it may have an impact in terms of

15    the number of depositions it requires, but in terms of

16    getting the information you want and having the right person

17    in the seat who can actually answer the questions, instead

18    of somebody who has to be educated about some of this, it

19    just seems to me that there's a more direct way to get to

20    the information, and that would be to know who it is that

21    has the information and depose that person.

22              MR. SCHMIDTLEIN:  Well, Your Honor, I'll give you

23    my answer and I'll let Mr. Dintzer give his answer.

24              They absolutely know who these people are, and

25    they've deposed them already, either during the

1    investigation or during the litigation.  They've deposed

2    numerous people who are involved in the negotiations of

3    these agreements.

4         So they absolutely know who these people are, and

5    they've got the documents sort of going back and forth

6    regarding the negotiations, which is, again, why we thought

7    if I had gotten these at the very beginning of the case,

8    I would have said, oh, okay, I'll designate this person, and

9    I'll also produce them for the 30(b)(1) deposition and we're

10   going to be all done, you know, everything done all that

11   once here.  And for some reason, they've done it sort of

12   backwards, is our position.  So that is one of the real

13   frustrations for us.

14        MR. DINTZER:  Your Honor, we have tried exactly

15   that.  We actually deposed people who signed the agreements.

16   We got a fellow, Hiroshi Lockheimer, with the specific goal.

17        THE COURT:  Can I interrupt you, Mr. Dintzer.

18        You know, it is not always the case, and you all

19   will understand better than I do, but the fact that somebody

20   is a signatory to the contract doesn't mean that they have

21   the knowledge about the negotiations of the terms of the

22   contract and what all the factors and considerations are.

23        I mean, you know -- for example, you know, it may

24   be that of these contracts are signed by Mr. Pichai or

25   Mr. Brin -- Mr. Sergey Brin or his other co-founder.  But

1   they weren't actually involved in the nuts and bolts of the

2   negotiating.  So I'm not sure just saying that we've deposed

3   the signatory answers the question of whether, in fact, you

4   know who it is that would be most knowledgeable about

5   negotiating of these agreements.

6           MR. DINTZER:  We have talked to people who have

7   negotiated.  I deposed Joan Braddi, who was integral in at

8   least one of these six, and she didn't -- you know, she

9   disclaimed any knowledge about how these agreements were

10  valued.

11          Your Honor, we have invested a tremendous amount

12  of effort in trying to figure out and ask these people.

13  They've been evasive, they've denied knowledge, they've

14  denied memory, which is why -- ultimately, I mean, the whole

15  point of a 30(b)(6).  I mean, you can find the cases that

16  say, when there's finger-pointing, this is -- I mean, it's

17  at its highest and best use.  This is what we're using it

18  for.  If we had this information, I wouldn't be sitting

19  here, Your Honor.  But we don't; we've asked for it

20  repeatedly.

21          And Mr. Schmidtlein says, well, they shouldn't be

22  allow to ask follow-up questions.  Well, the point whole

23  point of a 30(b)(6), the whole point --

24          THE COURT:  I understand that.

25          MR. DINTZER:  -- is that we get to ask the

 1   follow-up question.

 2           So we've sent them --

 3           THE COURT:  That's all right.  Mr. Dintzer, you

 4   sort of faded out there for a second.

 5           In any event --

 6           MR. DINTZER:  I'm sorry, Your Honor.

 7           THE COURT:  That's okay.  You're going in and out.

 8           Look, I guess I don't quite understand the state

 9   of play; in other words, the two things that have been

10   described both can't be true; in other words, that there are

11   people with knowledge and that those people with knowledge

12   have sat down in a chair and disclaimed knowledge.  I just

13   don't understand how that can be.

14           In other words, if Google, for instance -- if I

15   were to say, for example, no, Mr. Schmidtlein, you've got to

16   identify one person or two people, well, presumably what

17   that means is that Google would go to the people who

18   actually have the most knowledge to gather the information

19   to educate the person who's been designated for the

20   30(b)(6).

21           And I guess I just don't understand why we can't

22   identify specifically -- and maybe you have and maybe

23   there's just some miscommunication about this -- take each

24   one of these six agreements, there's got to be at least one

25   person who can be identified as somebody who has the

1   greatest amount of knowledge about the history of Google's

2   relationship with these parties and the negotiation of these

3   agreements.  It's not necessarily the signatory.

4           But if Google identifies somebody and says it's,

5   you know, Joe Smith, and then you depose Joe Smith and

6   Joe Smith disclaims all knowledge, you know, well, shame on

7   Google, and I think you would be right to come back to me

8   and say, Judge, you know, look, they sort of hoodwinked us,

9   because this guy didn't know anything about these

10  agreements.

11          MR. DINTZER:  Respectfully, Your Honor, if -- we

12  have done everything in our power; we have read thousands

13  and thousands of documents; we have asked everybody who we

14  can find who's involved in these agreements; we've deposed

15  everybody on Google's initial disclosures and we've come up

16  where we don't have this information, and we've used the

17  30(b)(6) as we're supposed to to gather this information.

18          And if -- I mean, if Mr. Schmidtlein is sitting

19  right here, if he knows who these people are.  I mean,

20  they're his client.  If he knows who these people are, he's

21  saying that I know.  We've tried, we can't find them.  If he

22  knows sitting right here, he should tell us and the Court

23  who these people are.

24          But we've done everything in our power and

25  expended a lot of depositions.  And if we have to go back

1  and do fact depositions, then we'd have to ask the Court for
2  more of those, because we've tried and we've come up empty
3  because of their witnesses.
4          I mean, we've seen the documents.  The documents
5  say Fred knows.  We ask Fred, I don't know.  We ask
6  Joan Braddi.  She says, I don't remember this.  So we need
7  to --
8          THE COURT:  So I guess -- I'm sorry to interrupt
9  you, Mr. Dintzer.
10         But, look, what I'm hearing the plaintiffs say is
11 that we have a core interest in these six agreements and
12 getting as much detailed information as we can about these
13 six agreements -- or six relationships, I should say,
14 doesn't strike me the most efficient way to get those
15 answers is through one or two 30(b)(6) witnesses.
16         Just by the very nature of the 30(b)(6)
17 deposition, you're having to educate somebody, that person
18 may not have firsthand knowledge and, so, therefore, you are
19 more apt to get nonresponsive answers to questions,
20 particularly those that involve details.  I mean, it just --
21 it doesn't lend to that.
22         However, if we do know who the sort of six people
23 are and Google identifies them and now plaintiffs can say,
24 okay, we now know who these people are, you can get the
25 answers you want through those depositions.  And if you find

1    out that this is somebody that -- you know, if Google

2    represents that it's someone that you've already deposed and

3    that person disclaimed knowledge, well, that's a separate

4    issue.

5             But, I mean, it just seems to me that is the most

6    straightforward and easiest way to handle all of this,

7    although I understand it might require -- it's less

8    efficient in the sense that it's not one deposition; on the

9    other hand, you're likely to get more information for

10   multiple depositions with people who have actual knowledge.

11            MR. DINTZER:  Well, if --

12            MR. SCHMIDTLEIN:  Your Honor --

13            MR. DINTZER:  Respectfully, Your Honor, Google

14   doesn't have a duty to prepare if it's a 30(b)(1) witness.

15            But if the process that the Court is suggesting is

16   that Google provide a list of names for us to do 30(b)(1)

17   witnesses and Google certifies that these individuals will

18   have information about these agreements, both present and

19   past, and the information that we've asked for about the

20   methodology and how they're calculating it and how Google

21   values them and then we get extra depositions so that we can

22   take those 30(b) -- because the 30(b)(6)s are done by the

23   hour and the individuals are done by the deposition.  So we

24   have slotted how we're going to use most or all of our

25   depositions.

1        So if the Court is suggesting that approach as a

2   precursor to us doing a 30(b)(6) to see if we can make that

3   work, we'd be willing to consider that, we'd be willing to

4   go back and talk to Google about that approach.

5        MR. SCHMIDTLEIN:  Your Honor, if what I'm hearing

6   is you think that there's some subset of questions of these

7   follow-up questions that you're entitled -- that you're

8   inclined to let them pose or we have to answer as to a

9   limited number of agreements, you know, we can find a way to

10   do that in writing, rather than me have to go out and

11   prepare another six or eight or ten witnesses, however many

12   it's going to be, for more depositions, when, frankly, the

13   deposition calendar is already backed up like rush hour.

14        THE COURT:  I think -- look, what I'm trying to

15   avoid -- look, here's the problem with that solution, which

16   is that, you know, written answers, you know, they can be a

17   substitute for a 30(b)(6) actual deposition, but ultimately

18   they are an inadequate substitute and you don't have the

19   opportunity to follow up on people's responses.

20        And this idea that you all are going to go back

21   and forth with answers and follow-up questions and answers

22   and follow-up questions that aren't going to draw the kind

23   of objections we've been talking about, I mean, that's just

24   not just realistic.

25        And so this is why I'm suggesting what I've

1    suggested.  And maybe it's not the most efficient way to do

2    it, but if at the end of the day what the Department of --

3    if what the plaintiffs want is information about six of --

4    these six relationships and Google can identify the people

5    who will have the most knowledge about these relationships,

6    whether we call those 30(b)(6)s or we call those 30(b)(1)s,

7    we can figure that out later.

8            But, you know, I think, you know, the plaintiffs

9    have a right to ask specific questions about these specific

10   relationships to people who are most knowledgeable about

11   them.  And that's ultimately what I'm trying to accomplish

12   here.  And I just don't think that doing this in writing is

13   going to get it done.

14           MR. SCHMIDTLEIN:  I still don't understand what's

15   the time period that they're going to specify, because these

16   go back years, and there are -- the people who deal with

17   them change over the years, too.

18           THE COURT:  Well, at least I'm staring at the

19   last -- or their Exhibit B, which is the letter to you, and

20   they've identified 2010 as the pertinent year.

21           MR. DINTZER:  We're comfortable with this approach

22   that you've described, Your Honor.

23           They give us the list of the individuals who have

24   this information, they make them available for depositions

25   about this information.

1         The depositions don't count towards our total
2   because we're swapping out our 30(b)(6) instead.  But
3   we will work with Google to get these scheduled and to get
4   these questions asked and answered.  We appreciate that.
5         THE COURT:  Mr. Schmidtlein, you're shaking your
6   head.  So what's on your mind?
7         MR. SCHMIDTLEIN:  No, this notice should have been
8   served nine months ago, is why I'm shaking my head,
9   Your Honor.
10        MR. DINTZER:  It was served four months ago,
11  Your Honor.
12        MR. SCHMIDTLEIN:  No, it was served after all
13  these people were deposed.
14        And we disagree vehemently with his
15  characterization that people were not -- many people were
16  not even asked these questions.
17        So we will obviously do as Your Honor orders, but
18  we think this is a real -- this is a very problematic
19  process and we're going to be back in front of you is my
20  prediction.
21        THE COURT:  All right.
22        Well, here's what I suggest.  Let's do the
23  following:
24        Why don't you all, at a minimum, do what I've
25  suggested, which is for Google to identify a person or

1    persons who would be most knowledgeable about these

2    relationships, talk amongst yourselves about what that means

3    in terms of scheduling, whether this involves somebody who's

4    already been deposed.  I'm not privy to any of that.  And

5    then let's get back together in a short amount of time to

6    figure out where things stand, and then we can reach a final

7    solution on this.

8           I am sensitive to wanting to make sure plaintiffs

9    are gathering the information they think they are entitled

10   to, but at the same time, ensuring that the burden here is

11   not too great, and particularly as we proceed to the

12   deadline, you know, that pressure only increases on

13   everybody.

14          So today is March the 9th.  How long do you all

15   think you need to sort of talk this through and be in a

16   position to get back to me?  And the reason I ask is I'm in

17   trial next week, so it will be helpful for me to hear from

18   you and then I can try and carve out some time to do this.

19          MR. DINTZER:  If Google has the names -- I mean --

20   available, we can do this within a week max.

21          MR. SCHMIDTLEIN:  Yeah, we can report back to you

22   a week from today, Your Honor.

23          THE COURT:  Okay.

24          How about 4:30 Eastern Time on March the 16th?

25          MR. DINTZER:  Just checking my calendar,

1    Your Honor.

2          That works for the plaintiffs, Your Honor.

3          MR. SCHMIDTLEIN:  I think that will work for

4    Google, Your Honor.  If for some reason it doesn't, we will

5    let you know, but I think that should work.

6          THE COURT:  All right.  Well, just let me know.

7    As I said, I'm going to be in trial next week, so I've

8    got -- it's got to be either first thing in the morning or

9    late in the afternoon.  So that's why I'm suggesting the

10   time that I have.

11         So let's do it that way.  And hopefully we can

12   make the some progress on this and get to a resolution that

13   accommodates everyone's interests here.  And if we can't,

14   then I'll have to make some calls, okay?

15         MR. DINTZER:  We appreciate that, Your Honor.

16         THE COURT:  Let's talk then about two Google

17   interrogatories that -- 4 and 5.

18         Let me just start with the following observation.

19         COURT REPORTER:  Judge, can you repeat that?

20   You cut in and out.

21         THE COURT:  That's okay.  Sorry about that, Bill.

22         No.  So let's just turn then to interrogatories 4

23   and 5 that are in dispute.  These are Google's

24   interrogatories 4 and 5 to plaintiffs.

25         Let me just start with one observation, which is

1    that, it strikes me that at the core of both interrogatories

2    is a desire or the effort to identify specifically what

3    conduct -- or what conduct plaintiffs contend is unlawful.

4         I think that seems to be certainly the upshot, in

5    some sense, of interrogatory 5, which asked, well, if,

6    essentially, we hadn't done the following things, tell us if

7    that -- you know, if we would have been on the right side of

8    the law.

9         And so the similar sentiment comes to me in terms

10   of 4, and that if, for example, what Google wants to know

11   is, well, what kind activities might the Department of

12   Justice be seeking to enjoin, well, it would be the unlawful

13   activities, it would be the activities that the Department

14   is claiming is anti-competitive.

15        And so that's the sense I got on both of these.

16   Now, I also recognize that there's a much easier and much

17   more direct way and I suspect there are other

18   interrogatories and other efforts to get to that same

19   information, if it's not already evident to Google.

20        So with that observation in my mind, let me just

21   ask Mr. Schmidtlein first, just starting with 5, I guess I'm

22   sympathetic to what the Department has said in response,

23   which is that, how are we supposed to answer a question

24   about what might be legal in a hypothetical world when it is

25   just that, a hypothetical world, but much like Google's

1    negotiations involving its partners, involve a number of

2    variables and factors and ultimately asking them to make

3    some predictions about what the world would look like in

4    this alternative scenario.

5           Now, I understand that is part of what happened --

6    you know, that's what makes antitrust different than most

7    cases, most areas of the law, is that there is some

8    predictive quality to it, but it just seems hard for them to

9    respond to that in any meaningful way.

10          MR. SCHMIDTLEIN:  So, Your Honor, I think you're

11   correct that both of these interrogatories are sort of

12   trying to get at, from slightly different angles, the

13   question of what precisely is it that the plaintiffs'

14   position is that we can't do; in other words, they've

15   identified -- they still haven't identified, by the way, the

16   specific agreements that they claim are in play in the

17   lawsuit.  They continue to identify categories of

18   agreements.

19          But we've said to them, and they're now,

20   apparently, going to agree and tell us with Bates numbers,

21   like identify the specific agreement that you claim is

22   illegal in the case, which ones, going back how far, and

23   we've tried to get at what specifically is it about the

24   agreement that's illegal.

25          And kind of an outgrowth of that is, so what in

```
 1   your view would the competitive world supposedly look like
 2   if we weren't engaged in the alleged unlawful conduct?
 3   Because we're allowed to try to compare whether that world
 4   is more competitive or actually less competitive than the
 5   world they envision now, and I'll give you an example.
 6           One of the categories of contracts that they've
 7   identified in their complaint are agreements that Google has
 8   with browser companies whereby a browser company designs its
 9   product to have a default search engine set to the browser
10   so that when you open the browser and if you type something
11   in other than a --
12           THE COURT:  Right.
13           MR. SCHMIDTLEIN:  -- website, a URL, you want to
14   have a search engine backing up to actually be able to
15   provide responses, because a browser can't do that all by
16   itself.
17           THE COURT:  Yeah.
18           MR. SCHMIDTLEIN:  So it has been a common practice
19   for browser companies to enter into agreements.  And in
20   exchange for that, they ask for revenue share to be -- for a
21   company to be set.
22           And we're -- this question is, in part, designed
23   in that setting to say, what is it that you're saying that
24   we've done when we win a competition to become the default
25   browser for a third party, what is it that we've done that's
```

1    illegal?  What is the world supposed to look like, according

2    to you, if we're not allowed to enter into this sort of

3    agreement?  And they won't tell us.

4            THE COURT:  So I have to say, it surprises me to

5    hear you say what you've just said, which is that, I mean,

6    here we are now months and months into this case, well over

7    a year -- not well over a year, over a year into this since

8    the complaint's been filed, and I'm a little surprised to

9    hear that there's some question remaining about precisely

10   what it is the Department and the plaintiffs think Google

11   has done that is unlawful; in other words, what type of

12   behavior, conduct, agreements, what have you, that that

13   still remains shrouded in mystery.  That's so hard to

14   believe at this point.

15           MR. SCHMIDTLEIN:  Well, what they've identified,

16   as they did in the complaint, are categories of agreements.

17           And we've said to them -- they'll identify the

18   specific co-party to the agreement, and then tell us

19   specifically what it is that's illegal.

20           And they've come back with things like the default

21   search provision.  And so this is sort of trying to get at,

22   well, tell us specifically what it is you say we can -- what

23   we can't do going forward.  Are we not allowed to compete at

24   all to be the default search engine?  Are we -- what exactly

25   is it?

1          And that is what -- so what is it you're going to

2   enjoin us from being able to do going forward?  And that's

3   the question we want answered.

4          That's an example of a question.  We've got other

5   aspects to other parts of other agreements that are at issue

6   in the case, but that's just to give you an example of what

7   we're trying to get at.

8          THE COURT:  Okay.

9          Mr. Dintzer, Mr. Cavanaugh.

10          MR. DINTZER:  Yes, Your Honor.

11          So Google issued interrogatory 1, which

12   specifically asks us to list -- identify by Bates number

13   each of the agreements you allege have harmed competition.

14          Okay.  We've provided some information, they've

15   asked for more; we are going to give them Bates numbers, an

16   actual list of every single contract that we know of at this

17   time, we're going to reserve our rights because we may not

18   know of them all, so we may need to add to that, but the

19   ones that we have and the categories or provisions from

20   those agreements which are illegal.

21          Section 2 is not like Section 1 where there's this

22   clause that says, hey, let's divide the market.  Section 2

23   is an intersection of the agreements and conduct, and

24   so it's a lot more complicated than that.

25          So when they say what can we do in some

1   hypothetical world, it's like, well, do you own Android,

2   do you own Play Store, are you signing this agreement with

3   this company and this agreement with this company and

4   taking -- and offering --

5           THE COURT:  If I could just interrupt you.

6           I mean, let's take the --

7           MR. DINTZER:  -- this company -- and do -- I mean,

8   they're talking about --

9           THE COURT:  Mr. Dintzer, you're breaking up a

10  little bit and I think, as a result, you and I talked over

11  one another a little bit.

12          Just take the hypothetical that Mr. Schmidtlein --

13  maybe it's not even a hypothetical, but the scenario he's

14  described.  And I'm looking at this from 30,000 feet.  But,

15  you know, if asked the question, what does plaintiff -- what

16  does the Department of Justice consider unlawful about what

17  I understand to be an exclusivity agreement with a browser

18  company, is it the fact of the exclusivity, is it the fact

19  that it's not -- it should be easier to change the default

20  browser?

21          I mean, I haven't heard, for example, that a user

22  can't change the default browser.  I mean, I've looked at

23  this in the past and I know you can do that; it's not always

24  easy.

25          But, I mean, I think that's what Mr. Schmidtlein

1    is trying to get at.

2              And, you know, if for example -- look, it's one

3    theory to say that any kind of exclusive agreement, even if

4    it's produced -- even if it's the product of the competitive

5    process, is unlawful and Google has acted unlawfully.

6              It's another theory to say, well, the agreement

7    didn't have the kind of safeguards that would allow for more

8    competition among search engines.

9              And I guess that's what he's trying to get at and

10   trying to understand, and it strikes me as a fair inquiry.

11             I'm not sure questions 4 and 5 are the best way to

12   get at it.  I mean, but it's certainly a creative way to get

13   at it, certainly question 5 is.

14             But -- go ahead.

15             MR. SCHMIDTLEIN:  Maybe I should issue a 30(b)(6)

16   notice, Your Honor.

17             THE COURT:  Just don't name me.

18             MR. DINTZER:  Your Honor, the conduct is the

19   interplay between them obtaining and controlling all the

20   default search options throughout all the -- a variety of

21   different platforms in the United States and the size that

22   they have and the use of specific agreements for entities

23   that are participating in the Android ecosystem.

24             And so, I mean, it is an interplay that any answer

25   that we gave to interrogatory 5 would not answer --

 1    I understand what Your Honor is asking, it has nothing to do

 2    with interrogatory 5, which says -- which turns it on its

 3    head and asks what could they legally do.

 4              And I mean --

 5              THE COURT:  So let me ask this, which is, I mean,

 6    you know -- and maybe this is a better question put to an

 7    expert, I don't know the answer to that, but -- and, again,

 8    just my very rudimentary understanding of all of this, you

 9    know, if the concern is with the exclusivity of these

10    agreements -- and what I understand Mr. Schmidtlein to be

11    saying is that these exclusivity agreements, at least in

12    some cases, if not all, have been the result of a

13    competitive process; in other words, take Mozilla, for

14    example.  Presumably, Mozilla asked -- considered Bing, it

15    considered Google, it considered, I don't know, DuckDuckGo,

16    whatever the case may be.  I don't know if that's true or

17    not, but just, again, I'm spitting out possibilities.

18              Is the mere fact that it's awarded the exclusivity

19    to Google the problem or is it -- and maybe it's that in

20    addition to the fact that the agreements don't contain

21    enough safeguards of the kind that I'm talking about, which

22    is greater ability for users to change the default setting.

23    I mean, you can do that, it's hard to do it, I find, and

24    others find.  But if that's a problem, then it strikes me

25    that they ought to know about that, that you consider that

1    aspect of the agreement to be problematic.

2          MR. DINTZER:  A lot of what you're asking does

3    enter the realm of the economic side, Your Honor, and the

4    expert testimony.

5          Your observations about defaults is very

6    important, because it is -- I mean, the fact that a default

7    can be changed doesn't mean people will change it.  And

8    Google knows this, which is why they're willing to spend so

9    much time to lock up the default.  But by locking up the

10   default, they are -- especially given their market share and

11   the like, they are excluding competitors.

12         So it revolves around the default and the

13   contracts that Google enters into that kind of create a moat

14   around Google's conduct to make it more difficult for search

15   competitors or search rifles to compete for those defaults.

16         So there are agreements that are not the ones

17   where they actually pay for the default.  But by -- on the

18   Android side, by getting people who want Android to sign

19   up -- if you want Android, you're going to sign certain

20   agreements, then at that point it makes it very difficult

21   for anybody to compete for the defaults.

22         And so the Android --

23         THE COURT:  I guess that's precisely what -- and,

24   again, I'm not taking a position on whether Mr. Schmidtlein

25   and Google ought to know this or not by now.  But at least

1    what I'm hearing from you is that there is a -- not one but

2    perhaps a constellation of different aspects of these

3    agreements, perhaps not as to each of them, but some number

4    of aspects of the agreement that either in combination or

5    alone, in your view, makes these agreements

6    anti-competitive.

7                MR. DINTZER:  Yeah.

8                THE COURT:  And, you know, again, I'm not sure

9    4 and 5, the interrogatories the way that they're worded is

10   the way to get at it.  But on the other hand, there's got to

11   be some way to get at that information.

12               MR. DINTZER:  To the extent that it's expert

13   information, I mean, it's for our expert report.

14               THE COURT:  But why -- I'm sorry to interrupt, but

15   why is that expert information?  I mean, we can't leave it

16   to the experts to come up with the legal theory.

17               MR. DINTZER:  No, not legal --

18               THE COURT:  The legal theory is that of the

19   lawyers and the representatives of the United States and

20   these states, not some expert.

21               MR. DINTZER:  I completely agree, Your Honor.

22               The experts will explain the economic impact and

23   the economic effect of the conduct.

24               THE COURT:  Right.

25               MR. DINTZER:  The simple --

1           THE COURT:  And presumably -- I'm sorry to

2     interrupt you.

3           And presumably what I think Mr. Schmidtlein is

4     saying is that the expert will also opine on what the world

5     would look like had these agreements had different features.

6           You know, for example, the one example I can think

7     of and know of, which is that, had the agreement involved an

8     easier way to switch the default browser, the world would

9     look differently in the following respect, and I assume that

10    we'll hear some testimony about that from the experts.

11          MR. DINTZER:  Well, if I could -- Google's conduct

12    suppressing competition makes it impossible to know what the

13    world would have looked like without the conduct, which is

14    why the *Microsoft* court, the Court in the *Microsoft*

15    decision, said, "The monopolist can't win by simply

16    destroying competition so completely that it's difficult to

17    reconstruct what would have happened."

18          So the burden on the plaintiff isn't exactly as

19    Your Honor described it, but the burden on the plaintiff is

20    to show enough of the suppression of competition that its

21    harm -- that there's a harm that is created to competition,

22    and that's the genuine burden that we face, not to dis --

23          THE COURT:  Look, fair enough.

24          On the other hand -- let's put it this way:

25    It would be relevant to -- it would be relevant evidence if

1  an expert were to opine on what the sort of counterfactual

2  world looked like.

3         The Department of Justice can decide whether or

4  not it wants to present that evidence and ultimately it will

5  be up to me to decide whether -- how relevant that is and

6  what it means.

7         But anyway, we're sort of getting well ahead of

8  ourselves.  My point is simply -- and it's actually useful

9  for me to engage in these conversations -- as I said last

10  time, getting a better factual understanding of what the

11  issues are is going to become very important at some point.

12         But anyway, back to the original question, which

13  is, you know, look, Google has a right to find out and

14  understand what the Department and the plaintiffs' theories

15  are about their conduct that is unlawful.  If, for example,

16  you contend certain agreements or these exclusivity

17  agreements are unlawful, what is it about them?  Is it the

18  fact of the exclusivity?  What is it about the agreements

19  that makes them anti-competitive?

20         And maybe it's just -- maybe it's a number of

21  things, maybe it's not just one thing, but it does seem to

22  me that they are entitled to know the answers to those

23  questions.

24         MR. DINTZER:  I don't disagree with you,

25  Your Honor, which is -- but all I can say is that we believe

 1    that they're getting that in interrogatory 1.

 2          The problem with us trying to provide that

 3    information for interrogatory 4 or 5 is that if we --

 4    I mean --

 5          THE COURT:  Well, let's leave 4 and 5 out.

 6    I mean, I'm not --

 7          MR. DINTZER:  Okay.  That makes it easier for us.

 8          THE COURT:  I've gotten a little bit past the

 9    point of trying to provide precise answers to those

10    interrogatories.

11          But to get to the core of this, which is, you

12    know, is there an interrogatory or some mechanism by which

13    Google is asking what it -- tell us what the features of

14    this agreement are that you consider together or

15    individually or in combination as anti-competitive.  And

16    I think we're all in agreement that Google has the right to

17    know that.

18          MR. SCHMIDTLEIN:  Well, Your Honor --

19          THE COURT:  And it's not, let's wait for the

20    experts to tell us.

21          MR. DINTZER:  That is exactly, Your Honor, the

22    discussion that we're having about interrogatory 1.

23          So what I would say, Your Honor, is this:  We hear

24    what you're saying, we do.

25          Interrogatory 1 asks for the agreement, asks for

```
 1   the elements.  And we are going back and we've talked --
 2   Google hasn't raise that because we've agreed to go back and
 3   provide more information.
 4            So what I would say is, with respect -- if we're
 5   putting 4 and 5 aside with respect to interrogatory 1, we
 6   are providing the information that you're describing.  And
 7   so we would say that one's not ripe because I think we're on
 8   the path, if not to complete it, to narrow it so that -- but
 9   that is still something that's under discussion.
10            THE COURT:  Well, let me ask Mr. Schmidtlein.
11   I mean, would you be satisfied with -- well, let me put it
12   differently.
13            If the plaintiffs' response to interrogatory 1 or
14   some other interrogatory provides the kind of information
15   that I've just been discussing --
16            MR. SCHMIDTLEIN:  Yes.
17            THE COURT:  -- does that satisfy what you are
18   seeking and not require me to specify that you have to
19   answer interrogatory 4 or have to answer interrogatory No.
20   5?
21            I think we're all in agreement or some
22   understanding of what the information ought to be.  I don't
23   really, frankly, care which interrogatory it's responsive
24   to.
25            MR. SCHMIDTLEIN:  So, yeah, interrogatory 1 asks
```

1   for each of the agreements they allege of harm of

2   competition, what specific provision of each of the

3   agreements harmed competition, and how it has done so.

4         If I get a fulsome answer to that, that probably

5   will get me, presumably, what it is that they think they

6   would be seeking to enjoin later in the case.

7         THE COURT:  Right.  Right.

8         MR. SCHMIDTLEIN:  If I can actually get an answer

9   to that, the answer I got was these very broad, you know,

10   sort of categories of agreements, with no reference to

11   specific provisions in each of the agreements or any

12   explanation as to how they've harmed competition, because,

13   you know, we talked about this in this example of the

14   default search for a browser.  I mean, you could only --

15   there can only be one default.  There's no exclusivity

16   because there can only be one.  We're all competing to be

17   the one.

18         So we want to know, are you saying we can't

19   compete to be the one?  Are you saying, is there something

20   else about the agreement that is somehow anti-competitive

21   that we're not allowed -- that we've done that we're not

22   allowed to do?

23         If we get answers to those questions, then I think

24   that will address, I think, our concerns, Your Honor.

25         THE COURT:  Okay.

 1          All right.  Well, I think it sounds like we've

 2     landed where Mr. Dintzer has suggested we have; that, you

 3     know, the information that Google is trying to get at

 4     through 4 and 5, in theory, is going to be offered through a

 5     response to 1.  And whether Google is satisfied with that

 6     response or not remains to be seen.

 7          I'll just say the following, which is that, it

 8     does seem to me given where we are at this point in time in

 9     this case, given the government's investigation, both

10     plaintiffs' investigations, the amount of time we've been at

11     discovery, that it ought to be in a position to provide that

12     kind of specificity so that Google knows what it's defending

13     against and isn't some moving target that's left to the

14     experts to figure out, because, you know, that's not their

15     job, in my view.

16          But in any event, I think that's where we are.

17     So why don't we -- we'll table that and you all will let me

18     know, perhaps we'll talk about it a week from today, if

19     there's been some progress made on that.  So why don't we

20     sort of reserve further discussion about that for next week

21     and see where things stand, okay?

22          MR. DINTZER:  We appreciate that, Your Honor.

23          MR. SCHMIDTLEIN:  Thank you, Your Honor.

24          THE COURT:  All right.

25          Is there anything else anybody wants to raise?

1        Mr. Cavanaugh, you've sort of been silent through

2   all of this.  Anything you'd like to discuss or bring up?

3        MR. CAVANAUGH:  No, Your Honor.

4        I thought the discussion between Mr. Schmidtlein

5   and Mr. Dintzer -- I mean, their issue -- this effort to try

6   to get at remedies, I don't think is appropriate at this

7   stage.

8        You know, remedies are to address the harm as to

9   the future.  Understanding what the unlawful conduct is

10  that's alleged -- I understand their right to know that

11  information.  But once we start getting to, well, what are

12  the remedies, when we start to say, what relief would we

13  seek, is a different phase of the case.

14       And I would just point out that the D.C. Circuit

15  in *Microsoft*, they decided liability and remanded remedies.

16  They were able to resolve the issue of liability without

17  deciding the issue of, well, what should the remedies be.

18       THE COURT:  Right.

19       MR. CAVANAUGH:  So it's a complete thing.

20       THE COURT:  I understood 4 to ask less about, are

21  you going to seek an injunction, are you going to seek

22  something else, whether disgorgement is a proper remedy, for

23  example.

24       In any event, I mean, I think what they really

25  want to know is what are you going to seek a remedy as to?

 1    You know, what are you going to seek to remediate?  Less so

 2    than what the specific remedy would be.

 3            To the extent that they're asking the plaintiffs

 4    what specific remedy are you going to ask for, you're

 5    probably right that it may be premature, although don't hold

 6    me to that.

 7            But what they really are getting at, it seems to

 8    me, is wanting to know what it would be you're trying to

 9    remediate, what conduct or what aspect of the conduct, and

10    that's, at the end at day, what I'm simply trying to get at

11    here.

12            MR. CAVANAUGH:  I understand.

13            THE COURT:  Okay.

14            All right.  So we've got another date set in about

15    a week to deal with these couple of outstanding issues and

16    we'll see where we are and hopefully everybody's made some

17    progress towards it.

18            All right.  It's nice to see you all, we'll look

19    forward to chatting in a week.

20            MR. DINTZER:  Thank you very much, Your Honor.

21            MR. CAVANAUGH:  Thank you, Your Honor.

22            MR. SCHMIDTLEIN:  Thank you, Your Honor.

23            (Proceedings concluded at 12:33 p.m.)

24

25

# C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Please note:  This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

Date:__March 10, 2022_____      

William P. Zaremba, RMR, CRR

COURT REPORTER:
[1] 43/19
COURTROOM
DEPUTY: [1] 3/2
MR. CAVANAUGH: [6]
10/11 10/13 60/3 60/19
61/12 61/21
MR. DINTZER: [50]
4/6 7/6 7/13 9/18 10/3
11/24 17/5 18/15 21/4
21/16 21/23 22/8 22/22
22/25 23/11 23/15
23/23 24/13 25/1 27/11
27/24 29/4 32/5 33/14
34/6 34/25 35/6 36/11
38/11 38/13 40/21
41/10 42/19 42/25
43/15 48/10 49/7 50/18
52/2 53/7 53/12 53/17
53/21 53/25 54/11
55/24 56/7 56/21 59/22
61/20
MR. SCHMIDTLEIN:
[32] 11/16 11/18 12/6
15/15 17/4 17/9 19/16
21/9 24/1 30/1 30/16
31/10 32/6 32/22 38/12
39/5 40/14 41/7 41/12
42/21 43/3 45/10 46/13
46/18 47/15 50/15
56/18 57/16 57/25 58/8
59/23 61/22
THE COURT: [75]

0
0340 [1]  1/15

1
10 [1]  62/10
1100 [1]  1/14
11:00 [1]  1/6
120 [1]  9/11
12:33 [1]  61/23
12th [1]  2/3
1300 [1]  1/20
14 [1]  21/14
16 [1]  4/12
16th [1]  42/24
18 [1]  4/11
19 [1]  62/6
1:00 [1]  23/21
1st [1]  21/19

2
20-3010 [2]  1/4 3/3
20001 [1]  2/9
20005 [1]  2/3
2010 [1]  40/20
202 [3]  1/15 2/4 2/9
2022 [2]  1/5 62/10
21st [1]  11/4
22nd [3]  5/5 5/25 21/17
29th [4]  6/1 21/18 23/4
24/10
2:00 [1]  23/21
2A [1]  27/14
2nd [1]  4/20

30 [44]  4/11 5/3 5/15
5/20 5/25 6/6 6/11 6/12
13/21 14/6 15/10 15/17
16/7 16/12 16/18 17/14
19/2 19/9 19/19 20/6
25/9 25/15 25/17 26/22
28/19 30/23 31/22 33/9
34/15 34/23 35/20
36/17 37/15 37/16
38/14 38/16 38/22
38/22 39/2 39/17 40/6
40/6 41/2 50/15
30,000 [1]  49/14
3010 [2]  1/4 3/3
307-0340 [1]  1/15
31st [2]  21/19 23/9
3249 [1]  2/9
333 [1]  2/8
35 [1]  9/5
354-3249 [1]  2/9
360 [1]  10/20
3rd [1]  4/16

4
4 and [1]  53/9
40 completed [1]  4/11
434-5000 [1]  2/4
4:30 [1]  42/24
4th [2]  22/20 22/21

5
5000 [1]  2/4
508-6000 [1]  1/22
58 [3]  4/9 4/10 6/8
5th [2]  22/11 22/17

6
6000 [1]  1/22
6th [3]  22/5 22/11
22/18

7
720 [1]  1/22
725 [1]  2/3
7th [2]  1/21 22/24

8
80 [1]  4/9
80203 [1]  1/21
8th [1]  23/13

9
9th [1]  42/14

A
a.m [1]  1/6
ability [1]  51/22
able [12]  5/14 6/9 8/12
8/22 17/16 18/6 18/7
30/20 31/14 46/14 48/2
60/16
about [78]
above [1]  62/4
above-titled [1]  62/4
absent [1]  25/19
absolutely [2]  32/24
33/4

about [303]
accept [3]  18/23 19/14
27/12
acceptable [2]  9/10
21/15
accepted [1]  19/9
access [1]  31/10
accommodates [1]
43/13
accomplish [1]  40/11
according [1]  47/1
accurate [1]  15/14
acknowledgment [1]
25/23
across [5]  15/20 29/25
30/8 31/4 31/5
acted [1]  50/5
Action [1]  3/3
activities [1]  44/11
44/13 44/13
actual [6]  26/13 27/5
31/24 38/10 39/17
48/16
actually [12]  19/18
26/19 30/11 32/17
33/15 34/1 35/18 46/4
46/14 52/17 55/8 58/8
add [2]  4/12 48/18
addition [1]  51/20
additional [5]  10/14
10/19 12/23 16/13
25/11
address [5]  5/9 15/8
58/24 60/8
addressed [2]  4/5
16/14
advance [1]  13/9
afforded [1]  16/9
after [4]  7/11 21/23
32/11 41/12
afternoon [1]  43/9
again [13]  3/12 13/15
14/22 16/4 16/7 20/7
30/9 30/16 33/6 51/7
51/17 52/24 53/8
against [4]  5/19 16/9
20/5 59/13
agenda [1]  12/20
ago [2]  41/8 41/10
agree [2]  45/20 53/21
agreeable [1]  20/13
agreed [2]  12/14 29/2
57/2
agreeing [2]  20/7
20/10
agreement [20]  9/9
17/20 28/5 45/21 45/24
47/3 47/18 49/2 49/3
49/17 50/3 50/6 52/1
53/4 54/7 56/14 56/16
56/25 57/21 58/20
agreements [59]  26/5
26/21 26/25 26/25 27/3
27/4 27/5 27/10 27/19
28/7 29/3 29/6 29/10
29/11 29/18 29/23 31/5
31/17 31/25 32/3 32/13
33/3 33/15 34/5 34/9

about [73]
37/11 37/13 38/18 39/9
45/16 45/18 46/19
47/12 47/16 48/5 48/13
48/20 48/23 50/22
51/10 51/11 51/20
52/16 52/20 53/3 53/5
54/5 55/16 55/17 55/18
58/1 58/3 58/10 58/11
ahead [5]  17/6 17/8
32/6 50/14 55/7
aided [1]  2/11
AL [1]  1/3
all [66]
all right [2]  35/3 61/14
allege [2]  48/13 58/1
alleged [2]  46/2 60/10
allow [3]  25/20 34/22
50/7
allowed [8]  5/3 5/4
15/25 46/3 47/2 47/23
58/21 58/22
alluded [1]  4/2
almost [1]  15/18
alone [1]  53/5
along [2]  4/8 25/22
already [10]  3/19 7/18
7/18 14/22 28/19 32/25
38/2 39/13 42/4 44/19
also [11]  3/25 6/7 7/7
8/6 11/18 12/7 28/20
29/10 33/9 44/16 54/4
alternative [1]  45/4
although [4]  19/24
24/5 38/7 61/5
always [2]  33/18 49/23
am [3]  16/17 16/24
42/8
amenable [1]  26/18
amended [2]  10/17
13/20
AMERICA [2]  1/3 3/3
AMIT [1]  1/10
among [1]  50/8
amongst [2]  24/11
42/2
amount [6]  8/13 27/5
34/11 36/1 42/5 59/10
analogous [1]  26/3
analyzed [1]  29/6
Android [6]  49/1 50/23
52/18 52/18 52/19
52/22
angles [1]  45/12
another [6]  18/4 27/17
39/11 49/11 50/6 61/14
answer [23]  5/17 5/18
7/24 12/19 15/12 15/13
25/10 28/2 28/10 32/12
32/17 32/23 32/23 39/8
44/23 50/24 50/25 51/7
57/19 57/19 58/4 58/8
58/9
answered [3]  30/12
41/4 48/3
answering [1]  19/5
answers [20]  12/16
13/1 18/19 18/23 25/21

about [72]
37/16 28/17 28/17
28/20 28/22 34/3 37/15
37/19 37/25 39/16
39/21 39/21 55/22 56/9
58/23
anti [5]  44/14 53/6
55/19 56/15 58/20
anti-competitive [5]
44/14 53/6 55/19 56/15
58/20
anticipate [2]  10/14
11/8
antitrust [2]  1/19 45/6
any [16]  13/24 15/6
16/14 20/5 21/7 22/4
27/18 34/9 35/5 42/4
45/9 50/3 50/24 58/11
59/16 60/24
anybody [3]  7/19 52/21
59/25
anything [11]  3/19 4/4
7/25 8/14 17/1 17/2
19/17 21/6 36/9 59/25
60/2
anyway [3]  9/12 55/7
55/12
apace [1]  10/14
apologize [1]  11/24
apparently [1]  45/20
APPEARANCES [2]
1/12 1/24
Apple [3]  4/3 8/15 8/20
appreciate [5]  24/13
25/1 41/4 43/15 59/22
approach [3]  39/1 39/4
40/21
appropriate [6]  3/20
7/9 15/17 17/14 20/11
60/6
April [5]  22/6 22/11
23/5 24/6 24/7
apt [1]  37/19
are [126]
areas [3]  13/25 14/9
45/7
aren't [1]  39/22
argue [1]  23/17
argument [4]  6/22 6/23
21/18 22/14
around [4]  13/16 30/6
52/12 52/14
arrogated [1]  15/11
as [67]
aside [1]  57/5
ask [25]  5/11 5/21 5/23
6/22 8/24 21/18 24/6
27/15 27/20 31/12
31/20 34/12 34/22
34/25 37/1 37/5 37/5
40/9 42/16 44/21 46/20
51/5 57/10 60/20 61/4
asked [14]  12/9 14/17
1/18 18/21 28/15 34/19
36/13 38/19 41/4 41/16
44/5 48/15 49/15 51/14
asking [10]  14/10
16/25 21/13 27/16
30/13 45/2 51/1 52/2

**A**

asking... [2] 56/13 61/3
asks [5] 48/12 51/3
56/25 56/25 57/25
aspect [2] 52/1 61/9
aspects [5] 14/18
18/12 48/5 53/2 53/4
aspersions [1] 27/16
assess [1] 19/18
assistance [1] 18/11
assume [3] 3/23 21/12
54/9
assuming [1] 18/20
asterisk [2] 7/17 8/1
asterisks [1] 7/21
attached [1] 6/12
attention [1] 24/21
available [5] 5/24 6/25
16/21 40/24 42/20
Avenue [1] 2/8
avoid [1] 39/15
awarded [2] 5/16 51/18
aware [1] 6/17
away [1] 32/1

**B**

back [27] 3/13 6/9 8/11
11/14 13/1 14/19 17/24
19/5 22/23 27/2 29/4
30/25 33/5 36/7 36/25
39/4 39/20 40/16 41/19
42/5 42/16 42/21 45/22
47/20 55/12 57/1 57/2
backed [1] 39/13
backing [1] 46/14
backload [1] 14/6
backwards [1] 33/12
bandwidth [1] 11/25
Barrett [1] 2/8
basically [2] 5/20
15/25
Bates [3] 45/20 48/12
48/15
be [97]
because [2] 8/20
12/20 14/23 15/19
16/13 18/20 23/1 28/8
29/5 29/8 36/9 37/2
37/3 38/22 40/15 41/2
46/3 46/15 48/17 52/6
57/2 57/7 58/12 58/16
59/14
become [2] 46/24
55/11
been [25] 4/9 13/7 14/5
14/6 14/17 14/22 17/16
22/6 25/8 27/17 32/10
34/13 35/9 35/19 39/23
41/7 42/4 44/7 46/18
47/8 51/12 57/15 59/10
59/19 60/1
before [7] 1/10 11/5
11/9 21/8 23/3 24/7
24/16
beginning [1] 33/7
behalf [1] 3/8
behavior [1] 47/12
being [2] 20/13 48/2

believe [10] 9/10 14/7
14/16 15/15 17/13
22/11 23/12 23/15
47/14 55/25
benefit [3] 28/4 28/6
31/22
best [5] 13/19 28/11
31/16 34/17 50/11
better [6] 20/22 20/25
29/20 33/19 51/6 55/10
between [3] 20/23
50/19 60/4
Bill [1] 43/21
Bing [1] 51/14
bit [7] 11/25 13/2 13/7
24/5 49/10 49/11 56/8
blanket [1] 19/20
bleed [1] 13/2
bolts [1] 34/1
borderline [1] 14/7
both [11] 7/14 12/7
12/10 13/6 32/8 35/10
38/18 44/1 44/15 45/11
59/9
Braddi [2] 34/7 37/6
breadth [1] 30/9
breaking [1] 49/9
briefed [1] 10/6
briefing [1] 23/3
Brin [2] 33/25 33/25
bring [2] 15/6 60/2
brings [1] 25/4
broad [4] 14/4 15/19
25/25 58/9
broader [3] 29/24
30/11 30/17
Broadway [1] 1/20
brought [2] 29/18 32/2
browser [12] 46/8 46/8
46/9 46/10 46/15 46/19
46/25 49/17 49/20
49/22 54/8 58/14
Bruce [1] 1/17
bubbling [1] 8/4
bunch [2] 30/25 32/2
burden [42] 42/10 54/18
54/19 54/22
burdensome [1] 9/9
business [1] 23/17

**C**

calculates [2] 28/6
28/23
calculating [1] 38/20
calendar [4] 10/16
24/22 39/13 42/25
California [2] 22/12
22/17
call [3] 22/4 40/6 40/6
calls [1] 43/14
came [1] 26/7
camera [1] 12/1
can [53] 6/2 6/25 8/25
9/16 9/23 11/20 13/19
13/25 15/8 16/23 18/10
18/18 22/10 23/5 23/21
24/21 27/15 29/16
30/20 31/9 31/12 32/17

can't [20] 8/23 9/1
16/11 16/13 17/20
18/12 19/12 20/8 24/10
35/10 35/21 36/21
43/13 45/14 46/15
47/23 49/22 53/15
54/15 58/18
candidly [1] 11/4
care [1] 57/23
Carr [1] 1/19
carve [1] 42/18
case [13] 14/15 15/24
16/4 16/10 33/7 33/18
45/22 47/6 48/6 51/16
58/6 59/9 60/13
cases [4] 14/18 34/15
45/7 51/12
cast [1] 27/16
categories [5] 45/17
46/6 47/16 48/19 58/10
Cavanaugh [4] 3/6
10/10 48/9 60/1
Center [1] 1/20
certain [4] 6/7 18/12
52/19 55/16
certainly [5] 11/4 13/25
44/4 50/12 50/13
Certified [1] 2/7
certifies [1] 38/17
certify [1] 62/2
CH [1] 2/8
chair [3] 6/8 28/12
35/12
challenged [1] 6/5
chambers [1] 24/21
chance [1] 6/20
change [7] 29/7 30/7
40/17 49/19 49/22
51/22 52/7
changed [2] 29/6 52/7
characterization [1]
41/15
chatting [1] 61/19
checking [1] 42/25
chief [2] 10/25 11/5
choice [1] 5/23
choose [2] 5/18 6/6
Circuit [1] 60/14
Civil [1] 3/3
claim [2] 45/16 45/21
claiming [1] 44/14
claims [2] 10/20 12/25
clause [1] 48/22
cleanup [1] 14/13
clear [2] 17/1 17/11
client [1] 36/20
closely [1] 13/12
closer [1] 22/1
co [3] 1/21 33/25 47/18

co-counsel [1] 47/18
co-party [1] 47/18
coag.gov [1] 1/22
colleagues [1] 24/19
Colorado [4] 1/17 1/18
1/20 3/7
COLUMBIA [1] 1/1
combination [2] 53/4
56/15
come [13] 6/2 6/9 8/4
13/1 17/20 17/23 19/5
30/25 36/7 36/15 37/2
47/20 53/16
comes [2] 21/2 44/9
comfortable [1] 40/21
coming [3] 7/23 14/19
20/15
commitments [1]
23/10
common [1] 46/18
companies [3] 13/17
46/8 46/19
company [6] 46/8
46/21 49/3 49/3 49/7
49/18
compare [1] 46/3
compel [2] 6/17 9/14
compete [4] 47/23
52/15 52/21 58/19
competing [2] 20/18
58/16
competition [10] 46/24
48/13 50/8 54/12 54/16
54/20 54/21 58/2 58/3
58/12
competitive [10] 44/14
46/1 46/4 46/4 50/4
51/13 53/6 55/19 56/15
58/20
competitors [2] 52/11
52/15
complaint [2] 46/7
47/16
complaint's [1] 47/8
complete [3] 28/22
57/8 60/19
completed [3] 4/11
4/14 24/6
completely [2] 53/21
54/16
complicated [1] 48/24
computer [1] 2/11
computer-aided [1]
2/11
concern [1] 51/9
concerned [2] 5/14
5/16
concerns [5] 5/9 8/4
8/15 25/7 58/24
concluded [1] 61/23
concrete [2] 20/21
21/2
conduct [14] 44/3 44/3
46/2 47/12 48/23 50/18
52/14 53/23 54/11
54/13 55/15 60/9 61/9
61/9
confer [2] 12/22 13/23

conference [5] 1/9
3/14 8/12 8/23 23/12
conferred [2] 14/23
17/25
conflicts [1] 20/3
CONNOLLY [1] 2/2
consider [6] 21/3 27/8
39/3 49/16 51/25 56/14
consideration [1]
21/14
considerations [1]
33/22
considered [3] 51/14
51/15 51/15
constellation [1] 53/2
Constitution [1] 2/8
Consumer [1] 1/18
contact [1] 51/20
contain [1] 51/20
contend [2] 44/3 55/16
contention [1] 14/1
contingent [1] 9/7
continue [2] 14/25
45/17
CONTINUED [1] 2/1
continuing [3] 4/18
4/21 10/13
contract [1] 33/20
33/22 48/16
contracts [1] 33/24
46/6 52/13
controlling [1] 50/19
convenience [1] 22/14
conversation [3] 13/3
24/22 24/24
conversations [1] 55/9
copies [1] 8/10
copy [1] 6/21
core [3] 37/11 44/1
56/11
corporate [1] 30/2
correct [6] 16/17 16/24
17/2 22/10 45/11 62/3
could [3] 22/16 23/4
23/11 23/16 23/17
23/21 26/10 26/12
29/17 49/5 51/3 54/11
58/14
couldn't [1] 5/9
counsel [5] 8/3 10/2
24/17 24/25 25/3
count [5] 5/19 5/19
18/24 19/15 20/5 41/1
counted [1] 16/3
counterfactual [1] 55/1
counterparties [6]
27/10 27/10 27/12
27/19 27/19 31/18
counting [1] 16/8
couple [1] 61/15
course [4] 7/15 10/3
22/13 28/20
court [24] 1/1 2/6 2/7
4/7 5/10 5/11 5/22 5/24
6/15 6/16 6/19 7/15 8/1
15/6 22/8 25/19 27/25
36/22 37/1 38/15 39/1
54/14 54/14 62/7

**C**

Court's [3] 8/24 22/14 27/25
coverage [1] 9/11
COVID [1] 62/6
COVID-19 [1] 62/6
create [1] 52/13
created [1] 54/21
creative [1] 50/12
CRR [2] 62/2 62/11
cured [1] 13/15
current [6] 24/9 28/4 28/9 29/3 29/10 29/12
currently [3] 3/9 17/13 17/13
cut [1] 43/20
cuts [1] 28/9
CV [1] 1/4

**D**

D.C [4] 1/5 1/14 2/3 2/9
D.C. [1] 60/14
D.C. Circuit [1] 60/14
data [2] 4/24 6/11
date [7] 5/4 6/7 6/12 7/10 13/10 61/14 62/10
dates [3] 10/16 22/13 22/13
day [5] 5/7 5/8 23/2 40/2 61/10
days [8] 4/10 6/8 18/2 21/14 21/19 21/19 21/23 24/12
deadline [3] 22/1 23/9 42/12
deadlines [1] 23/8
deal [6] 14/25 16/2 18/7 30/21 40/16 61/15
dealing [1] 11/7
decade [1] 26/6
decade-long [1] 26/6
decide [8] 5/17 15/12 16/23 18/22 18/22 19/5 55/3 55/5
decided [1] 60/15
deciding [1] 60/17
decision [1] 54/15
default [16] 46/9 46/24 47/20 47/24 49/19 49/22 50/20 51/22 52/6 52/9 52/10 52/12 52/17 54/8 58/14 58/15
defaults [3] 52/5 52/15 52/21
Defendant [2] 1/7 2/2
defending [1] 59/12
deficiency [2] 12/11 12/11
deficient [1] 12/14
definition [1] 29/12
delta [1] 29/7
denied [2] 34/13 34/14
Denver [1] 1/21
DEPARTMENT [19] 1/13 1/18 10/18 20/6 25/11 26/14 26/18 26/24 31/13 31/19 32/11 40/2 44/11 44/13

depos [1] 4/8
depose [3] 32/1 32/21 36/5
deposed [11] 7/18 14/22 32/25 33/1 33/15 34/2 34/7 36/14 38/2 41/13 42/4
deposing [1] 22/17
deposition [20] 5/2 7/19 10/14 11/5 11/10 14/6 15/13 22/9 23/2 25/16 26/13 27/8 27/12 27/18 33/9 37/17 38/8 38/23 39/13 39/17
depositions [16] 4/13 6/24 8/20 8/25 10/13 15/2 32/15 36/25 37/1 37/25 38/10 38/21 38/25 39/12 40/24 41/1
depth [1] 30/12
described [4] 35/10 40/22 49/14 54/19
describing [1] 57/6
designate [1] 33/8
designated [1] 35/19
designation [1] 8/9
designations [2] 3/24 13/18
designed [1] 31/1 37/12
designs [1] 46/8
desire [1] 44/2
destroying [1] 54/16
detail [1] 6/5
detailed [2] 31/1 37/12
details [1] 37/20
did [6] 10/17 13/22 18/3 20/7 28/1 47/16
didn't [5] 12/1 18/17 34/8 36/9 50/7
different [11] 15/20 19/25 30/2 30/2 31/5 45/6 45/12 50/21 53/2 54/5 60/13
differently [2] 54/9 57/12
difficult [3] 52/14 52/20 54/16
difficulty [1] 8/8
digest [1] 21/2
Dintzer [24] 1/13 3/5 4/1 11/21 13/21 15/9 18/14 20/7 20/12 21/13 24/11 24/18 26/17 27/15 28/25 31/21 32/23 33/17 35/3 37/9 48/9 49/9 59/2 60/5
Dintzer's [1] 31/8
direct [2] 32/19 44/17
dis [1] 54/22
disagree [2] 41/14 55/24
disclaimed [3] 34/9 35/12 38/3
disclaims [1] 36/6
disclosure [1] 13/10
disclosures [11] 3/24

55/14
13/3 13/5 13/14 13/20 15/3 36/15
discovery [8] 3/18 4/10 7/4 7/12 14/7 15/1 21/8 59/11
discuss [4] 4/2 16/18 21/7 60/2
discussing [1] 57/15
discussion [5] 29/15 56/22 57/9 59/20 60/4
disgorgement [1] 60/22
disincentivize [2] 20/6 20/9
dispute [4] 14/1 17/23 19/11 43/23
disputed [2] 10/5 25/5
disputes [2] 3/15 24/16
DISTRICT [3] 1/1 1/1 1/10
divide [1] 48/22
do [57] 3/17 3/21 4/4 4/12 9/1 9/13 13/25 14/10 15/7 17/16 17/19 18/19 19/4 19/14 19/22 20/22 20/25 22/5 22/11 22/19 23/4 23/14 23/15 23/21 24/3 24/19 27/7 28/11 32/14 33/19 37/1 37/22 38/16 39/10 40/1 41/17 41/22 41/24 42/14 42/18 42/20 43/11 45/14 46/15 47/23 48/2 48/25 49/1 49/2 49/7 49/23 51/1 51/3 51/23 51/23 56/24 58/22
do you [3] 42/14 49/1 49/2
docs [2] 4/18 4/21
document [7] 8/21 8/23 9/2 9/3 9/12 10/22 15/5
documents [12] 8/10 9/4 9/6 10/24 11/2 11/3 11/6 11/9 33/5 36/13 37/4 37/4
does [9] 4/23 13/2 23/25 49/15 49/16 52/2 55/21 57/17 59/8
doesn't [8] 20/19 28/15 33/20 37/14 37/21 38/14 43/4 52/7
doing [7] 3/12 14/8 19/2 20/13 26/7 39/2 40/12
DOJ [6] 1/13 3/5 12/12 14/5 16/19 21/15
don't [48] 3/17 6/16 7/25 8/13 10/1 13/15 14/22 17/13 18/19 18/19 18/20 19/19 19/22 22/3 23/13 24/3 24/16 24/18 24/19 24/21 24/23 24/24 27/4 29/19 31/5 34/19 35/8 35/13 35/21 36/16 37/5

41/1 41/24 50/17 51/7 51/15 51/16 51/20 55/24 57/22 59/17 59/19 60/6 61/5
done [22] 8/20 8/25 13/24 15/22 16/4 23/8 28/18 28/19 33/10 33/10 33/11 36/12 36/24 38/22 38/23 40/13 44/6 46/24 46/25 47/11 58/3 58/21
down [4] 11/25 17/12 18/11 35/12
dozens [4] 14/16 14/16 26/5 26/5
drafted [2] 17/13 17/13
draw [1] 39/22
dropped [2] 19/10 20/8
DuckDuckGo [1] 51/15
due [3] 6/13 21/17 21/18
during [3] 32/25 33/1 62/5
duty [1] 38/14
détente [1] 8/16

**E**

E-t-s-y [1] 9/4
each [10] 28/3 29/23 30/6 31/25 35/23 48/13 53/3 58/1 58/2 58/11
earlier [2] 14/11 15/9
earliest [2] 23/2 23/4
easier [4] 44/16 49/19 54/8 56/7
easiest [2] 19/6 38/6
Eastern [1] 42/24
easy [1] 49/24
economic [2] 52/3 53/22 53/23
ecosystem [1] 50/23
educate [3] 30/8 35/19 37/17
educated [1] 32/18
effect [1] 53/23
efficient [5] 20/2 20/11 37/14 38/8 40/1
effort [3] 34/12 44/2 60/5
efforts [2] 27/13 44/18
eight [1] 39/11
either [7] 7/18 9/8 19/23 21/19 32/25 43/8 53/4
elements [1] 57/1
else [5] 4/22 21/7 58/20 59/25 60/22
Email [3] 1/15 1/22 2/4
empty [1] 37/2
encouraging [1] 20/13
end [3] 9/20 40/2 61/10
ends [1] 23/3
engage [1] 55/9
engaged [1] 46/2
engine [3] 46/9 46/14 47/24
engines [1] 50/8

enjoin [3] 44/12 48/2 58/6
enough [3] 51/21 54/20 54/23
ensuring [1] 42/10
enter [3] 46/19 47/2 52/3
entering [1] 28/8
enters [1] 52/13
entire [1] 12/3
entities [1] 50/22
entitled [6] 4/9 6/11 28/20 39/7 42/9 55/22
envision [1] 46/5
especially [1] 52/10
essentially [1] 44/6
ET [1] 1/3
Etsy [5] 9/4 9/20 10/2 24/17 24/20
Etsy's [1] 24/25
evaluate [2] 12/17 18/5
evasive [1] 34/13
even [13] 14/23 16/14 18/6 20/10 23/3 26/22 27/22 30/4 31/3 41/16 49/13 50/3 50/4
event [3] 35/5 59/16 60/24
eventually [1] 8/4
every [2] 12/13 48/16
everybody [4] 3/12 36/13 36/15 42/13
everybody's [1] 61/16
everyone [2] 3/11 23/25
everyone's [1] 43/13
everything [9] 4/13 4/22 21/22 22/1 24/6 31/4 33/10 36/12 36/24
evidence [2] 54/25 55/4
evident [1] 44/19
exact [1] 14/21
exactly [4] 33/14 47/24 54/18 56/21
example [20] 20/4 27/14 28/3 29/19 29/22 31/23 33/23 35/15 44/10 46/5 48/4 48/6 49/21 50/2 51/14 54/6 54/6 55/15 58/13 60/23
exchange [1] 9/24 10/17 46/20
exchanged [3] 3/23 20/2 32/10
excluding [1] 52/11
exclusive [1] 50/3
exclusivity [8] 49/17 49/18 51/9 51/11 51/18 55/16 55/18 58/15
excuse [1] 26/12
executive [2] 10/25 11/6 22/10
Exhibit [1] 40/19
Exhibit B [1] 40/19
expedited [1] 21/13
expended [1] 36/25
expert [1] 51/7 52/4

**E**

expert... [6] 53/12
53/13 53/15 53/20 54/4
55/1
experts [5] 53/16 53/22
54/10 56/20 59/14
explain [2] 28/5 53/22
explained [1] 30/24
explanation [1] 58/12
extended [1] 23/16
extension [1] 12/9
extensions [2] 15/23
29/11
extent [3] 16/25 53/12
61/3
extra [1] 38/21

**F**

face [1] 54/22
facilitates [1] 19/4
facing [1] 14/19
fact [12] 4/10 6/10
12/17 33/19 34/3 37/1
49/18 49/18 51/18
51/20 52/6 55/18
factors [2] 33/22 45/2
factual [1] 55/10
faded [1] 35/4
fair [3] 19/7 50/10
54/23
fallen [1] 11/22
far [5] 6/3 6/13 7/24
20/25 45/22
farther [1] 29/4
fashion [1] 18/7
fashions [1] 14/17
feasible [1] 26/6 29/17
features [2] 54/5 56/13
February [3] 5/3 5/5
10/22
feel [2] 18/18 24/11
feet [1] 49/14
fell [1] 12/3
fellow [1] 33/16
few [2] 10/14 24/12
field [2] 26/9 26/10
fifth [1] 10/23
figure [6] 9/21 28/23
34/12 40/7 42/6 59/14
file [2] 6/20 9/14
filed [4] 5/8 6/17 21/12
47/8
filing [1] 8/3
final [3] 5/25 6/10 42/6
finally [1] 10/5
financial [1] 4/20
find [8] 34/15 36/14
36/21 37/25 39/9 51/23
51/24 55/13
fine [3] 23/19 24/5
24/12
finger [1] 34/16
finger-pointing [1]
34/16
first [4] 25/7 25/15 43/8
44/21
firsthand [2] 32/4
37/18

flagged [1] 3/19
Floor [1] 1/21
focus [6] 27/9 28/21
28/22 28/22 29/1 29/3
focused [1] 27/12
focusing [1] 29/2
follow [9] 30/10 30/14
31/1 34/22 35/1 39/7
39/19 39/21 39/22
follow-up [8] 30/10
30/14 31/1 34/22 35/1
39/7 39/21 39/22
followed [2] 7/15 26/12
following [8] 15/5
19/24 31/13 41/23
43/18 44/6 54/9 59/7
force [1] 18/18
foregoing [1] 62/3
formally [1] 18/10
forms [1] 14/17
forth [3] 25/5 33/5
39/21
forthwith [1] 6/14
forward [6] 5/1 13/19
20/11 47/23 48/2 61/19
founder [1] 33/25
four [2] 19/9 41/10
frankly [4] 12/12 13/18
39/12 57/23
Fred [2] 37/5 37/5
free [2] 23/10 24/11
frequently [1] 22/4
front [4] 19/17 20/21
23/13 41/19
frustrated [2] 13/7
14/24
frustrations [1] 33/13
full [1] 25/18
fulsome [3] 13/5 13/9
58/4
further [1] 59/20
future [2] 10/15 60/9

**G**

gather [3] 23/1 35/18
36/17
gathered [1] 9/6
gathering [2] 18/6 42/9
gave [2] 28/1 50/25
generated [2] 10/25
11/7
genuine [1] 54/22
get [60] 3/16 3/18 4/13
6/5 6/7 6/23 8/17 8/19
8/23 8/25 9/16 10/15
12/22 13/4 13/9 13/12
17/18 20/1 21/25 22/1
23/8 24/7 24/16 24/22
25/2 27/22 30/8 31/6
32/19 34/25 37/14
37/19 37/24 38/9 38/21
40/13 41/3 41/3 42/5
42/16 43/12 44/18
45/12 45/23 47/21 48/7
50/1 50/9 50/12 50/12
50/13 53/11 56/11 58/4
58/5 58/8 58/23 59/3

getting [13] 8/8 8/10
13/5 13/19 18/5 32/16
37/12 52/18 55/7 55/10
56/1 60/11 61/7
give [11] 15/19 27/13
27/25 28/3 29/16 32/22
32/23 40/23 46/5 48/6
48/15
given [6] 6/23 7/24
8/12 52/10 59/8 59/9
giving [1] 16/19
go [14] 13/16 17/6 17/8
23/17 29/4 32/6 35/17
36/25 39/4 39/10 39/20
40/16 50/14 57/12
go ahead [4] 17/6 17/8
32/6 50/14
go-around [1] 13/16
goal [2] 20/1 33/16
going [48] 6/18 6/20
7/3 7/4 8/16 8/17 11/2
12/18 13/9 14/2 16/6
17/21 18/11 19/14
22/18 22/20 22/23 30/1
30/8 31/2 31/6 33/5
33/10 35/7 38/24 39/12
39/20 39/22 40/13
40/15 41/19 43/7 45/20
45/22 47/23 48/1 48/2
48/15 48/17 52/19
55/11 57/1 59/4 60/21
60/21 60/25 61/1 61/4
gone [1] 14/16
good [8] 3/2 3/11
10/11 10/12 11/16
11/17 22/3 31/6
Good morning [5]
3/11 10/11 10/12 11/16
11/17
GOOGLE [67]
Google LLC [1] 3/4
Google's [12] 4/17 5/6
8/3 25/2 25/24 26/14
36/1 36/15 43/23 44/25
52/14 54/11
got [15] 7/3 12/21 15/4
28/19 33/5 33/16 35/15
35/24 43/8 43/8 44/15
48/4 53/10 58/9 61/14
gotten [5] 12/8 12/10
28/16 33/7 56/8
government [1] 20/14
government's [1] 59/9
granted [2] 12/9 15/22
granting [3] 16/12
20/17 25/19
great [2] 23/23 42/11
greater [2] 22/2 51/22
greatest [1] 36/1
groups [3] 12/8 12/10
13/6
guess [13] 16/16 21/12
25/13 25/20 26/15
31/20 32/8 35/8 35/21
37/8 44/21 50/9 52/23
guidelines [1] 7/15
guy [1] 36/9

**H**

had [23]  8/6 8/7 8/8 8/9
8/15 10/23 11/22 12/7
13/4 13/16 13/23 19/8
19/10 22/5 26/20 27/2
27/6 31/10 33/7 34/18
54/5 54/5 54/7
hadn't [1] 44/6
hand [4] 9/16 38/9
53/10 54/24
handful [1] 10/20
handle [1] 38/6
handled [1] 30/3
hang [2] 11/19 11/20
happened [2] 45/5
54/17
happening [1] 20/25
hard [4] 18/5 45/8
47/13 51/23
harm [4] 54/21 54/21
58/1 60/8
harmed [3] 48/13 58/3
58/12
has [29] 6/19 7/17 9/4
9/11 14/5 14/6 15/11
19/7 22/1 25/12 25/22
27/17 27/24 29/6 32/9
32/18 32/21 35/25
42/19 44/22 46/7 46/18
47/11 50/5 51/1 55/13
56/16 58/3 59/2
hasn't [1] 57/2
have [123]
haven't [6] 6/4 7/8 7/19
8/20 14/23 16/22 45/15
49/21
having [8] 9/24 9/25
11/24 19/17 26/4 32/16
37/17 56/22
he [10] 11/21 15/9
15/11 20/9 28/14 28/15
36/19 36/20 36/21
36/22
he'll [1] 16/24
he's [6] 11/5 20/8 20/8
36/20 49/13 50/9
head [3] 41/6 41/8 51/3
hear [7] 7/11 18/17
42/17 47/5 47/9 54/10
56/23
heard [3] 16/22 17/5
49/21
hearing [9] 3/25 7/10
9/24 16/16 24/18 37/10
39/5 53/1 62/1
help [3] 8/24 19/13
22/15
helpful [3] 9/25 10/9
42/17
here [14] 9/21 14/7
20/1 20/19 32/12 33/11
34/19 36/19 36/20
40/12 42/10 43/13 47/6
61/11
here's [2] 39/15 41/22
hey [1] 48/22
highest [1] 34/17
him [2] 13/12 18/21

Hiroshi [1] 33/16
his [7] 11/7 11/10
27/20 32/23 33/25
36/20 41/14
history [1] 36/1
hold [2] 10/1 61/5
Honor [76]
HONORABLE [1] 1/10
hoodwinked [1] 36/8
hope [4] 3/12 6/13 12/1
22/11
hopeful [2] 8/17 13/8
hopefully [2] 43/11
61/16
hoping [1] 7/23
hour [2] 38/23 39/13
hours [1] 4/12
how [21] 12/15 25/14
27/5 28/5 28/23 29/5
29/9 29/19 29/20 34/9
35/13 38/20 38/20
38/24 42/14 42/24
44/23 45/22 55/5 58/3
58/12
however [2] 37/22
39/11
humming [1] 4/8
hundreds [1] 26/5
hypothetical [5] 44/24
44/25 49/1 49/12 49/13

**I**

I also [1] 44/16
I am [1] 42/8
I assume [3] 3/23
21/12
I believe [3] 22/11
23/12 23/15
I can [3] 42/18 54/6
55/25
I can't [1] 20/8
I didn't [1] 18/17
I don't [9] 14/22 19/22
24/23 31/5 35/8 37/6
55/24 57/22 60/6
I don't have [1] 23/13
I guess [5] 16/16
21/12 25/13 25/20
26/15 32/8 35/21 37/8
44/21 50/9 52/23
I have [5] 24/6 24/7
26/17 43/10 47/4
I haven't [1] 7/8
I hope [1] 3/12
I just [4] 11/25 35/12
35/21 40/12
I know [3] 22/1 36/21
49/23
I mean [25] 17/11 19/8
27/25 28/7 33/23 34/14
34/15 34/16 36/18
36/19 37/4 37/20 39/23
42/19 49/22 50/12
50/24 51/5 52/6 53/13
56/4 56/6 57/11 58/14
60/5
I mentioned [1] 10/23
I should [2] 37/13

**I**

**I should...** [1] 50/15
**I think** [40] 3/25 4/2
8/16 11/11 13/2 13/17
14/5 15/11 17/4 17/9
18/16 18/16 19/8 19/13
20/19 20/22 23/20
24/10 24/14 25/4 25/24
30/9 31/2 36/7 39/14
40/8 43/3 43/5 44/4
45/10 49/10 49/25 54/3
56/16 57/7 57/21 58/23
59/1 59/16 60/24
**I understand** [10]
31/22 32/14 34/24 38/7
45/5 49/17 51/1 51/10
60/10 61/12
**I was** [2] 7/3 11/13
**I will** [4] 6/10 19/24
20/22 24/5
**I would** [1] 33/8
**I wouldn't** [1] 34/18
**I'd** [1] 21/12
**I'll** [14] 6/19 21/2 23/6
23/7 27/13 27/20 28/3
32/22 32/23 33/8 33/9
43/14 46/5 59/7
**I'm** [43] 6/1 6/18 8/17
9/18 9/22 11/24 16/16
17/2 17/6 19/12 19/22
23/9 24/10 27/16 28/24
32/5 34/2 35/6 37/8
37/10 39/5 39/14 39/25
40/11 40/18 41/8 42/4
42/16 43/7 43/9 44/21
47/8 49/14 50/11 51/17
51/21 52/24 53/1 53/8
53/14 54/1 56/6 61/10
**I'm going** [1] 43/7
**I'm not** [7] 6/18 19/12
27/16 34/2 42/4 52/24
56/6
**I'm not sure** [2] 9/22
53/8
**I'm sorry** [6] 6/1 17/6
24/10 28/24 32/5 35/6
**I've** [8] 3/14 26/13
39/25 41/24 43/7 49/22
56/8 57/15
**idea** [4] 30/7 30/22
31/2 39/20
**ideal** [1] 23/6
**identified** [12] 7/19
7/20 8/10 14/9 27/3
31/23 35/25 40/20
45/15 45/15 46/7 47/15
**identifies** [2] 36/4
37/23
**identify** [11] 26/24
31/14 35/16 35/22 40/4
41/25 44/2 45/17 45/21
47/17 48/12
**identifying** [1] 26/20
**illegal** [5] 45/22 45/24
47/1 47/19 48/20
**impact** [3] 13/11 32/14
53/22
**important** [5] 7/20 11/9

**impossible** [2] 15/18
54/12
**inadequate** [1] 39/18
**incentives** [3] 19/25
20/19 20/24
**inclined** [1] 19/22 39/8
**include** [1] 3/22
**incomplete** [1] 28/17
**increases** [1] 42/12
**indicated** [1] 14/1
**individually** [1] 56/15
**individuals** [3] 38/17
38/23 40/23
**inefficient** [1] 14/7
**information** [35] 18/6
20/2 25/25 28/18 30/13
30/20 30/22 31/7 32/16
32/20 32/21 34/18
35/18 36/16 36/17
37/12 38/9 38/18 38/19
40/3 40/24 40/25 42/9
44/19 48/14 53/11
53/13 53/15 56/3 57/3
57/6 57/14 57/22 59/3
60/11
**initial** [12] 3/23 7/14
7/22 10/17 13/3 13/4
13/10 13/14 13/20 15/3
25/10 36/15
**injunction** [1] 60/21
**inquiries** [3] 16/7 16/8
25/12
**inquiry** [1] 50/10
**instance** [1] 35/14
**instead** [3] 23/21 32/17
41/2
**insufficient** [1] 28/17
**integral** [1] 34/7
**interest** [2] 26/25
28/18 37/11
**interests** [1] 43/13
**interplay** [2] 50/19
50/24
**interrogatories** [18]
4/15 12/7 12/24 15/24
16/9 16/13 18/24 18/25
19/15 30/19 43/17
43/22 43/24 44/1 44/18
45/11 53/9 56/10
**interrogatory** [21] 5/19
16/3 19/1 19/19 20/5
44/5 48/11 50/25 51/2
56/1 56/3 56/12 56/22
56/25 57/5 57/13 57/14
57/19 57/19 57/23
57/25
**interrupt** [5] 33/17 37/8
49/5 53/14 54/2
**intersection** [1] 48/23
**invested** [1] 34/11
**investigation** [2] 33/1
59/9
**investigations** [1]
59/10
**invitation** [1] 22/4
**involve** [2] 37/20 45/1
**involved** [5] 31/11 33/2

**involves** [2] 9/3 42/3
**involving** [2] 4/3 45/1
**is** [206]
**is there** [6] 29/21 29/22
29/23 56/12 58/19
59/25
**isn't** [5] 3/19 24/25
26/1 54/18 59/13
**issue** [21] 4/3 5/4 6/14
6/16 7/4 7/25 9/20
18/25 19/16 20/16
20/20 24/14 25/7 25/17
30/19 38/4 48/5 50/15
60/5 60/16 60/17
**issued** [7] 4/15 5/2 5/4
5/7 10/23 12/7 48/11
**issues** [20] 6/5 6/9 8/6
8/21 8/24 9/2 10/5
13/16 14/13 14/13
14/14 14/19 15/4 15/5
15/5 19/8 21/8 25/5
55/11 61/15
**it** [144]
**it would be** [5] 44/12
44/13 54/25 54/25 61/8
**it's** [54] 4/20 4/20 6/10
6/18 14/22 17/1 18/3
18/3 18/17 19/2 21/25
22/6 22/11 23/6 25/16
27/22 29/17 32/8 34/16
36/3 36/4 38/2 38/7
38/8 38/14 39/12 40/1
43/8 44/19 48/24 49/1
49/13 49/19 49/23 50/2
50/4 50/4 50/6 50/12
51/18 51/19 51/23
53/12 53/13 54/16 55/8
55/20 55/20 55/21
56/19 57/23 59/12
60/19 61/18
**its** [7] 5/24 28/4 34/17
45/1 46/8 51/2 54/20
**itself** [2] 15/12 46/16

**J**

**January** [1] 22/5
**January 6th** [1] 22/5
**Joan** [2] 34/7 37/6
**Joan Braddi** [1] 37/6
**job** [1] 59/15
**Joe** [3] 36/5 36/5 36/6
**Joe Smith** [3] 36/5
36/5 36/6
**John** [2] 2/2 3/8
**Joint** [3] 3/14 3/20 25/5
**jon.sallet** [1] 1/22
**Jonathan** [2] 1/17 3/6
**jschmidtlein** [1] 2/4
**JSR** [1] 5/8 6/15 23/12
23/12
**JUDGE** [5] 1/10 16/23
20/16 36/8 43/19
**judgment** [1] 12/13
**Judicial** [1] 1/20
**just** [62] 3/17 3/18 4/1
4/2 7/7 7/10 9/20 9/22
10/1 11/25 12/1 12/12

**K**

**keep** [2] 23/10 28/8
**Ken** [1] 32/6
**Kenneth** [1] 1/13 3/5
**kenneth.dintzer2** [1]
1/16
**key** [1] 11/8
**kind** [13] 16/5 21/13
25/13 30/5 39/22 44/11
45/25 50/3 50/7 51/21
52/13 57/14 59/12
**knew** [1] 31/23
**know** [109]
**knowable** [1] 14/14
**knowledge** [17] 31/24
31/24 32/4 32/9 33/21
34/9 34/13 35/11 35/11
35/12 35/18 36/1 36/6
37/18 38/3 38/10 40/5
**knowledgeable** [4]
30/5 34/4 40/10 42/1
**known** [1] 14/15
**knows** [6] 36/19 36/20
36/22 37/5 52/8 59/12

**L**

**landed** [1] 59/2
**Largely** [1] 10/18
**last** [7] 3/25 4/2 13/3
13/9 13/16 40/19 55/9
**late** [1] 43/9
**later** [6] 8/19 12/21
13/10 13/20 40/7 58/6
**law** [1] 1/18 44/8 45/7
**lawsuit** [1] 45/17
**lawyers** [1] 53/19
**learned** [2] 10/24 14/12
**least** [11] 15/9 21/14
26/2 26/9 27/4 27/8
34/8 35/24 40/18 51/11
52/25
**leave** [4] 21/1 24/24
53/15 56/5
**leaving** [1] 21/21
**left** [4] 4/10 6/8 20/23
59/13
**legal** [4] 44/24 53/16
53/17 53/18
**legally** [1] 51/3
**lend** [1] 37/21

**less** [4] 38/7 46/4
60/20 61/1
**let** [15] 10/10 11/13
11/15 25/13 32/23 39/8
43/5 43/6 43/18 43/25
44/20 51/5 57/10 57/11
59/17
**let's** [21] 5/2 7/10 8/2
9/20 9/22 10/1 10/4
21/11 23/5 24/9 25/14
41/22 42/5 43/11 43/16
43/22 48/22 49/6 54/24
56/5 56/19
**let's see** [4] 5/2 8/2
10/4 23/5
**letter** [1] 40/19
**letters** [1] 12/12
**letting** [1] 19/4
**liability** [2] 60/15 60/16
**like** [28] 5/10 5/13 5/22
5/23 6/21 13/12 15/6
16/20 18/18 19/18
21/12 27/22 28/7 39/13
44/25 45/3 45/21 46/1
47/1 47/20 48/21 49/1
52/11 54/5 54/13 55/2
59/1 60/2
**likely** [1] 38/9
**limit** [2] 27/18 28/12
**limitations** [1] 62/7
**limited** [5] 7/21 10/24
27/9 27/23 39/9
**limits** [3] 15/23 16/3
16/10
**line** [1] 9/13
**list** [7] 10/18 10/19
28/3 38/16 40/23 48/12
48/16
**listed** [1] 15/2
**lists** [1] 23/9
**litigation** [1] 33/1
**little** [8] 11/25 13/2
13/7 24/4 47/8 49/10
49/11 56/8
**LLC** [1] 1/6 3/4
**LLP** [1] 2/2
**lock** [1] 52/9
**Lockheimer** [1] 33/16
**locking** [1] 52/9
**logs** [1] 8/8
**long** [5] 15/20 18/3
18/4 26/6 42/14
**look** [22] 11/14 13/19
16/17 19/18 19/25
20/15 21/25 32/10 35/8
36/8 37/10 39/14 39/15
45/3 46/1 47/1 50/2
54/5 54/9 54/23 55/13
61/18
**looked** [5] 26/13 28/1
49/22 54/13 55/2
**looking** [1] 49/14
**lose** [1] 20/7
**lost** [2] 11/21 11/22
**lot** [5] 19/25 21/22
36/25 48/24 52/2

**M**

**major [2]** 27/13 28/3
**make [17]** 5/24 6/25
8/19 8/25 16/21 19/20
20/19 23/11 26/10
31/25 39/2 40/24 42/8
43/12 43/14 45/2 52/14
**makes [9]** 9/21 17/18
20/25 45/6 52/20 53/5
54/12 55/19 56/7
**making [1]** 27/7
**manages [1]** 29/21
**many [5]** 18/4 18/4
27/5 39/11 41/15
**March [13]** 1/5 4/16
4/20 5/25 6/1 11/4
13/11 13/20 23/9 24/10
42/14 42/24 62/10
**market [2]** 48/22 52/10
**market share [1]** 52/10
**matter [1]** 62/4
**matters [1]** 15/21
**max [1]** 42/20
**may [25]** 4/5 4/6 8/4
8/11 11/21 13/3 13/11
14/21 17/5 17/22 17/25
18/10 20/10 23/7 24/10
30/3 30/20 32/3 32/14
33/23 37/18 48/17
48/18 51/16 61/5
**maybe [13]** 9/23 9/25
18/12 35/22 35/22 40/1
49/13 50/15 51/6 51/19
55/20 55/20 55/21
**me [59]** 4/5 10/10
11/13 11/15 16/17
16/24 16/25 17/1 17/2
20/15 20/16 20/20
20/21 21/21 22/4 22/11
22/12 22/15 23/7 23/13
23/19 24/7 24/12 25/13
25/24 26/12 27/1 29/16
32/7 32/13 32/19 36/7
37/14 38/5 39/10 42/16
42/17 43/6 43/18 43/25
44/1 44/9 44/20 47/4
50/10 50/17 51/5 51/24
55/5 55/9 55/22 57/10
57/11 57/18 58/5 59/8
59/17 61/6 61/8
**mean [42]** 5/25 17/11
18/16 18/25 19/8 23/6
27/25 28/7 28/18 33/20
33/23 34/14 34/15
34/16 36/18 36/19 37/4
37/20 38/5 39/23 42/19
47/5 49/6 49/7 49/21
49/22 49/25 50/12
50/24 51/4 51/5 51/23
52/6 52/7 53/13 53/15
56/4 56/6 57/11 58/14
60/5 60/24
**meaningful [1]** 45/9
**means [5]** 27/21 29/12
35/17 42/2 55/6
**meant [2]** 5/8 25/23
**mechanical [1]** 2/10
**mechanism [1]** 56/12
**MEHTA [1]** 1/10
**memo [1]** 7/8
**memory [1]** 34/14
**mentioned [1]** 10/23
**mere [1]** 5/18
**Merit [1]** 2/6
**met [2]** 14/23 17/25
**methodology [6]** 26/1
26/2 26/4 30/23 30/24
38/20
**methods [1]** 29/5
**Microsoft [4]** 10/19
54/14 54/14 60/15
**middle [1]** 15/1
**might [7]** 9/25 20/6
20/9 29/24 38/7 44/11
44/24
**mind [2]** 41/6 44/20
**minimum [2]** 22/18
41/24
**minute [1]** 3/16
**miscommunication [1]**
35/23
**misreading [1]** 17/3
**moat [1]** 52/13
**modification [1]** 9/8
**moment [1]** 11/22
**monopolist [1]** 54/15
**monthly [1]** 3/13
**months [4]** 41/8 41/10
47/6 47/6
**more [25]** 4/11 4/12
5/22 6/5 14/20 20/20
21/2 22/4 24/5 26/10
26/11 30/11 32/13
32/19 37/2 37/19 38/9
39/12 44/17 46/4 48/15
48/24 50/7 52/14 57/3
**morning [8]** 3/2 3/11
10/11 10/12 11/16
11/17 19/21 43/8
**most [17]** 9/21 20/11
21/1 26/24 31/16 31/24
34/4 35/18 37/14 38/5
38/24 40/1 40/5 40/10
42/1 45/6 45/7
**motion [7]** 6/17 6/23
7/8 7/10 9/14 21/12
23/18
**motions [1]** 23/8
**move [1]** 27/1
**moving [2]** 5/1 59/13
**Mozilla [2]** 51/13 51/14
**Mr. [56]** 4/1 7/12 10/10
11/5 11/15 11/20 11/21
12/5 13/21 15/8 15/9
16/22 17/8 18/14 18/17
20/7 20/12 21/6 21/13
22/10 24/11 24/18
26/17 27/15 27/20
28/19 28/24 29/15 31/8
31/12 31/21 32/23
33/17 33/24 33/25
33/25 34/21 35/3 35/15
36/18 37/9 41/5 44/21
48/9 48/9 49/9 49/12
49/25 55/11 52/24 54/3
**Mr. Brin [1]** 33/25
**Mr. Cavanaugh [3]**
10/10 48/9 60/1
**Mr. Dintzer [22]** 4/1
11/21 13/21 15/9 18/14
20/7 20/12 21/13 24/11
24/18 26/17 27/15
28/25 31/21 32/23
33/17 35/3 37/9 48/9
49/9 59/2 60/5
**Mr. Dintzer's [1]** 31/8
**Mr. Pichai [1]** 33/24
**Mr. Pichai's [1]** 11/5
**Mr. Schmidtlein [26]**
7/12 11/15 11/20 12/5
15/8 16/22 17/8 18/17
21/6 22/10 27/20 28/14
29/15 31/12 34/21
35/15 36/18 41/5 44/21
49/12 49/25 51/10
52/24 54/3 57/10 60/4
**Mr. Sergey [1]** 33/25
**much [10]** 16/18 20/19
30/11 30/17 37/12
44/16 44/16 44/25 52/9
61/20
**multiple [2]** 31/15
38/10
**muted [1]** 3/9
**my [12]** 11/25 20/1
24/20 26/15 32/23 41/8
41/19 42/25 44/20 51/8
55/8 59/15
**mystery [1]** 47/13

**N**

**name [1]** 50/17
**names [2]** 38/16 42/19
**narrow [7]** 4/20 13/25
14/12 26/9 26/10 27/13
57/8
**narrowing [1]** 17/16
**nature [1]** 37/16
**near [1]** 10/15
**nearly [1]** 12/14
**necessarily [1]** 36/3
**necessary [1]** 26/12
**need [14]** 4/4 4/5 8/20
8/24 12/25 16/6 16/8
18/11 20/15 20/21
28/22 37/6 42/15 48/18
**needs [2]** 24/20 42/15
**negotiate [4]** 4/18 4/21
5/14 6/2
**negotiated [1]** 34/7
**negotiating [2]** 34/2
34/5
**negotiation [1]** 36/2
**negotiations [6]** 20/23
30/6 33/2 33/6 33/21
45/1
**neither [1]** 9/9
**news [1]** 22/3
**next [7]** 8/12 8/22 9/3
21/8 42/17 43/7 59/20
**nice [2]** 3/11 61/18
**ninth [1]** 4/19
**no [24]** 1/4 6/12 7/23
9/19 12/3 14/20 17/21
17/21 17/21 17/21 21/9
24/18 28/18 32/6 32/8
35/15 41/7 41/12 43/22
53/17 57/19 58/10
58/15 60/3
**non [1]** 28/16
**non-responsive [1]**
28/16
**none [1]** 16/2
**nonresponsive [1]**
37/19
**normal [1]** 23/17
**not [82]**
**note [3]** 6/10 7/16 62/5
**nothing [2]** 4/25 18/9
51/1
**notice [10]** 5/2 5/3 5/25
16/19 30/12 30/12
30/18 31/1 41/7 50/16
**noticed [5]** 4/9 4/11
7/18 9/1 15/16
**notices [2]** 10/15 14/6
17/17
**notion [1]** 26/7
**November [1]** 19/8
**now [25]** 3/20 4/25
7/11 8/5 8/14 9/13
12/10 14/10 14/16
14/18 14/20 23/20
24/25 25/8 30/13 30/25
31/2 37/23 37/24 44/16
45/5 45/19 46/5 47/6
52/25
**number [12]** 6/24
12/23 14/1 20/3 20/18
27/9 32/15 39/9 45/1
48/12 53/3 55/20
**numbers [2]** 45/20
48/15
**numerous [1]** 33/2
**nuts [1]** 34/1
**NW [3]** 1/14 2/3 2/8

**O**

**objected [1]** 25/12
**objection [2]** 25/24
30/10
**objections [4]** 5/6 5/13
13/22 39/23
**objectives [1]** 11/8
**observation [5]** 25/14
26/9 43/18 43/25 44/20
**observations [2]** 26/16
52/5
**obtaining [1]** 50/19
**obviously [6]** 17/20
21/2 25/16 26/19 29/19
41/17
**occurred [1]** 62/5
**off [3]** 11/23 12/4 20/8
**offered [1]** 59/4
**offering [1]** 49/4
**office [2]** 10/25 11/7
**officer [1]** 11/6
**official [1]** 2/7
**oh [4]** 11/21 14/20 32/5
33/8
**okay [33]** 3/11 7/2 7/6
7/10 9/17 9/19 10/8
11/12 17/7 18/13 20/9
21/5 21/10 21/21 21/25
23/24 24/2 24/14 24/18
24/25 29/14 33/8 35/7
37/24 42/23 43/14
43/21 48/8 48/14 56/7
58/25 59/21 61/13
**once [3]** 7/3 33/11
60/11
**one [41]** 6/14 11/20
12/13 16/14 18/16
18/17 18/21 19/10
19/10 19/10 22/5 24/19
25/20 25/23 26/2 26/11
27/16 28/9 28/10 29/17
30/4 30/8 31/3 33/12
34/8 35/16 35/24 35/24
37/15 38/8 43/25 46/6
49/11 50/2 53/1 54/6
55/21 58/15 58/16
58/17 58/19
**one's [1]** 57/7
**ones [5]** 29/12 29/13
45/22 48/19 52/16
**only [9]** 6/8 7/7 7/16
9/11 12/24 42/12 58/14
58/15 58/16
**open [2]** 16/19 46/10
**opine [2]** 54/4 55/1
**opportunity [1]** 39/19
**options [1]** 50/20
**oral [2]** 9/23 22/14
**order [7]** 5/11 5/24 9/8
9/10 10/15 20/16 25/19
**orders [1]** 41/17
**ordinary [1]** 21/14
**original [1]** 30/12
55/12
**other [29]** 8/4 10/20
13/1 16/20 17/17 18/18
21/8 22/13 22/16 23/10
28/15 29/21 33/25 35/9
35/10 35/14 38/9 44/17
47/11 48/4 48/5 48/5
51/13 53/10 54/24
57/14
**others [2]** 6/4 51/24
**ought [4]** 51/25 52/25
57/22 59/11
**our [40]** 3/13 3/25 4/15
4/19 5/3 5/19 5/20 5/21
5/25 6/6 6/10 6/15 6/24
8/2 9/9 9/14 10/18
10/20 12/13 13/11
13/22 16/8 18/21 18/24
19/15 21/17 21/18 23/9
28/12 30/10 30/16
33/12 36/12 36/24
38/24 41/1 41/2 48/17
53/13 58/24
**ourselves [1]** 55/8
**out [27]** 6/14 9/21

**O**

out... [25]  13/23 15/4 18/8 20/21 22/12 22/21 24/12 24/20 28/9 28/23 34/12 35/4 35/7 38/1 39/10 40/7 41/2 42/6 42/18 43/20 51/17 55/13 56/5 59/14 60/14
outgrowth [1]  45/25
outright [1]  12/20
outset [1]  14/15
outside [2]  30/17 31/1
outstanding [2]  12/15 61/15
over [15]  5/20 8/9 13/18 15/20 16/12 26/4 26/5 29/7 30/7 32/2 40/17 47/6 47/7 47/7 49/10
over-designation [1]  8/9
over-designations [1]  13/18
overlaps [1]  10/18
oversees [1]  29/24
owe [1]  4/23
own [2]  49/1 49/2

**P**

p.m [1]  61/23
palatable [1]  26/11
pandemic [1]  62/6
part [7]  4/1 9/9 23/11 24/23 29/16 45/5 46/22
participate [1]  25/3
participating [1]  50/23
particular [1]  27/6
particularly [2]  37/20 42/11
parties [13]  3/22 7/16 7/17 8/7 8/9 9/12 9/24 15/2 19/13 20/23 21/7 30/2 36/2
partners [2]  27/4 45/1
parts [1]  48/5
party [3]  15/1 46/25 47/18
past [6]  13/24 15/16 16/2 38/19 49/23 56/8
path [1]  57/8
pause [1]  9/22
pausing [1]  11/13
pay [1]  52/17
pegged [1]  13/5
people [31]  28/15 30/2 30/4 31/11 31/15 31/16 31/20 32/24 33/2 33/4 33/15 34/6 34/12 35/11 35/11 35/16 35/17 36/19 36/20 36/23 37/22 37/24 38/10 40/4 40/10 40/16 41/13 41/15 41/15 52/7 52/18 57/8 59/18
people's [1]  39/19
perhaps [4]  26/24 53/2 53/3 59/18
period [3]  18/3 26/6 40/15

permitted [1]  14/5
persisting [1]  25/8
person [18]  21/20 22/12 22/19 23/22 29/22 30/4 30/8 31/23 32/1 32/16 32/21 33/8 35/16 35/19 35/25 37/17 38/3 41/25
personal [1]  31/24
persons [1]  42/1
perspective [1]  15/14
pertain [1]  14/21
pertinent [1]  40/20
phase [1]  60/13
Pichai [1]  33/24
Pichai's [1]  11/5
pin [1]  7/10
place [2]  16/3 22/6 22/10
plaintiff [5]  1/17 12/8 49/15 54/18 54/19
plaintiff's [1]  15/3
plaintiffs [16]  1/4 1/13 3/5 3/7 13/6 13/14 37/10 37/23 40/3 40/8 42/8 43/2 43/24 44/3 47/10 61/3
plaintiffs' [4]  45/13 55/14 57/13 59/10
plan [1]  9/14
planning [1]  11/7
plate [1]  6/24
platforms [1]  50/21
play [4]  19/25 35/9 45/16 49/2
pleadings [1]  9/24
please [3]  4/7 22/3 62/5
point [20]  7/7 8/16 16/5 17/18 21/1 21/15 25/9 29/22 31/14 34/15 34/22 34/23 34/23 47/14 52/20 55/8 55/11 56/9 59/8 60/14
pointing [1]  34/16
pose [3]  14/20 16/6 39/8
position [14]  5/21 16/8 17/22 18/21 19/20 29/20 30/16 31/16 31/19 33/12 42/16 45/14 52/24 59/11
positions [1]  5/12
possibilities [1]  51/17
possible [2]  9/15 11/4
possibly [1]  16/14
potential [2]  4/3 7/9
power [2]  36/12 36/24
practical [1]  22/16
practice [1]  46/18
precise [1]  56/9
precisely [3]  45/13 47/9 52/23
precursor [1]  39/2
prediction [1]  41/20
predictions [1]  45/3
predictive [1]  45/8

premature [1]  61/5
prepare [3]  17/22 38/14 39/11
prepared [3]  16/21 17/11 27/8
preparing [2]  6/12 6/13
present [3]  12/1 38/18 55/4
presentation [1]  4/2
presented [1]  3/15
pressure [1]  42/12
presumably [7]  5/14 28/7 35/16 51/14 54/1 54/3 58/5
presume [1]  22/18
Prettyman [1]  2/8
previous [3]  4/18 29/11 29/12
previously [1]  26/20
prior [1]  17/17
privilege [6]  8/4 8/6 8/8 15/5
privileged [1]  8/11
privy [1]  42/4
probably [7]  8/18 18/16 20/19 22/23 26/23 58/4 61/5
problem [6]  11/25 12/3 39/15 51/19 51/24 56/2
problematic [2]  41/18 52/1
problems [1]  13/16
proceed [2]  25/14 42/11
proceedings [4]  1/9 2/10 61/23 62/4
process [9]  8/1 12/25 14/5 14/24 29/7 38/15 41/19 50/5 51/13
produce [4]  9/4 11/2 14/3 33/9
produced [3]  2/11 11/3 50/4
product [2]  46/9 50/4
production [4]  9/7 9/15 10/22 10/23
productions [1]  4/19 4/24
progress [3]  43/12 59/19 61/17
promised [1]  14/11
promptly [2]  13/1 15/7
proper [2]  19/19 60/22
proposal [2]  6/2 27/17
proposed [1]  29/2
Protection [1]  1/18
protective [4]  9/8 9/10 20/16 25/19
provide [10]  13/22 15/13 15/13 30/22 38/16 46/15 56/2 56/9 57/3 59/11
provided [6]  7/15 16/1 25/10 25/22 30/13 48/14
providers [1]  10/21
provides [2]  9/11

providing [1]  57/6
provision [2]  47/21 58/2
provisions [2]  48/19 58/11
pursuant [1]  9/4
pursue [1]  14/25
pursuing [1]  28/18
pushing [1]  8/11
put [10]  7/10 7/17 9/22 10/1 15/11 22/12 31/3 51/6 54/24 57/11
puts [1]  23/2
putting [1]  57/5

**Q**

quality [1]  45/8
question [17]  26/15 26/17 27/14 31/8 31/21 34/3 35/1 44/23 45/13 46/22 47/9 48/3 48/4 49/15 50/13 51/6 55/12
questioning [1]  28/12
questions [26]  6/4 6/19 14/18 14/20 26/14 27/2 27/6 28/1 28/15 30/11 30/14 31/1 32/12 32/17 34/22 37/19 39/6 39/7 39/21 39/22 40/9 41/4 41/16 50/1 55/23 58/23
quick [1]  3/18
quickly [3]  9/15 11/4 21/11
quite [3]  16/22 20/8 35/8

**R**

raise [4]  5/10 8/19 57/2 59/25
raised [1]  6/9
Ralph [1]  1/19
rather [5]  8/19 9/24 19/3 32/1 39/10
reach [2]  24/20 42/6
reached [4]  8/16 13/23 16/5 25/9
reaction [2]  27/21 29/15
read [4]  7/8 7/8 21/22 36/12
ready [5]  8/5 9/6 14/2 24/8 27/22
real [4]  14/7 26/25 33/12 41/18
realistic [1]  39/24
realistically [1]  23/4
reality [1]  26/1
really [9]  5/13 15/16 15/21 19/2 28/21 32/11 57/23 60/24 61/7
realm [1]  52/3
Realtime [1]  2/7
reason [4]  31/20 33/11 42/16 43/4
reasonable [1]  26/11
received [4]  5/6 5/8 9/5

receives [1]  28/4
recipient [1]  9/3
recognize [1]  44/16
reconstruct [1]  54/17
record [1]  62/3
recorded [2]  2/10
recounted [1]  13/21
redacted [1]  8/10
reduces [1]  20/3
reference [1]  58/10
refresh [1]  7/22
refused [2]  9/4 12/19
regarding [4]  4/20 4/22 9/14 9/15 33/6
Registered [1]  2/6
relate [1]  14/11
relating [1]  10/20
relationship [1]  36/2
relationships [7]  29/24 31/18 37/13 40/4 40/5 40/10 42/2
relevant [4]  12/24 54/25 54/25 55/5
relief [1]  60/12
remain [1]  12/15
remaining [1]  47/9
remains [2]  47/13 59/6
remanded [1]  60/15
remediate [2]  61/1 61/9
remedies [5]  60/6 60/8 60/12 60/15 60/17
remedy [4]  60/22 60/25 61/2 61/4
remember [4]  13/3 18/1 24/10 37/6
remotely [1]  62/7
repeat [1]  43/19
repeatedly [2]  28/14 34/20
reply [3]  5/17 5/18 21/18
report [6]  3/15 3/20 4/25 25/6 42/21 53/13
Reporter [2]  2/6 2/6 2/7 2/7
reporting [1]  62/7
representatives [1]  53/19
represents [1]  38/2
request [6]  4/19 10/23 15/9 25/15 25/17 25/25
requested [1]  11/3
requests [1]  9/12
require [2]  38/7 57/18
requires [1]  32/15
reserve [2]  48/17 59/20
resolution [1]  43/12
resolve [8]  8/3 8/21 9/23 17/1 17/2 17/24 18/12 60/16
resolved [2]  9/2 13/13 18/10 24/15
respect [6]  12/12 12/23 17/17 54/9 57/4 57/5
Respectfully [2]  36/11 38/13

**R**

**respond** [3]   16/23 18/1
45/9
**responded** [1]   25/11
**responding** [1]   25/12
**response** [18]   4/17
12/13 15/10 17/18 18/2
19/4 20/5 21/17 24/18
25/18 26/8 26/14 26/15
30/23 44/22 57/13 59/5
59/6
**responses** [15]   6/3
12/8 12/10 12/17 12/21
13/5 13/9 13/22 16/1
16/19 19/9 19/12 19/14
39/19 46/15
**responsive** [3]   28/16
30/13 57/23
**result** [3]   24/4 49/10
51/12
**results** [1]   11/8
**return** [1]   7/11
**revenue** [4]   27/3 27/4
28/4 46/20
**revenue-sharing** [3]
27/3 27/4 28/4
**review** [1]   11/9
**reviewed** [1]   3/14
**revolves** [1]   52/12
**RFP** [1]   4/19
**rifle** [1]   14/13
**rifle-shot** [1]   14/13
**rifles** [1]   52/15
**right** [44]   3/13 4/25
5/17 6/6 8/5 8/14 9/13
10/9 11/13 11/13 11/15
12/5 15/12 17/9 18/9
21/6 21/11 23/20 24/3
25/4 26/23 30/15 32/16
35/3 36/7 36/19 36/22
40/9 41/21 43/6 44/7
46/12 53/24 55/13
56/16 58/7 58/7 59/1
59/24 60/10 60/18 61/5
61/14 61/18
**rights** [1]   48/17
**ripe** [5]   8/7 8/14 14/22
18/21 57/7
**ripening** [1]   4/4
**risk** [1]   20/14
**RMR** [2]   62/2 62/11
**road** [1]   18/11
**rogs** [1]   4/16
**roundup** [1]   3/18
**route** [1]   6/7
**rudimentary** [1]   51/8
**rule** [3]   9/5 20/4 25/15
**ruling** [2]   19/20 20/20
**runs** [1]   10/6
**rush** [1]   39/13

**S**

**SA** [1]   10/20
**safeguards** [2]   50/7
51/21
**said** [11]   14/25 15/3
24/11 33/8 43/7 44/22
45/19 47/5 47/17 54/15

**Sallet** [2]   1/17 3/6
**same** [5]   14/21 20/12
30/3 42/10 44/18
**sample** [2]   26/22 26/23
**sanctions** [1]   6/18
**sat** [1]   35/12
**satisfied** [2]   57/11 59/5
**satisfy** [1]   57/17
**save** [1]   9/20
**saves** [1]   20/14
**say** [28]   16/7 16/22
17/21 18/17 19/16
19/24 28/16 29/1 34/16
35/15 36/8 37/5 37/10
37/13 37/23 46/23 47/4
47/5 47/22 48/25 50/3
50/6 55/25 56/23 57/4
57/7 59/7 60/12
**saying** [11]   14/20
19/12 20/15 34/2 36/21
46/23 51/11 54/4 56/24
58/18 58/19
**says** [6]   28/14 34/21
36/4 37/6 48/22 51/2
**scenario** [2]   45/4 49/13
**schedule** [6]   4/13 6/22
7/5 7/9 24/5 24/9
**scheduled** [5]   6/23 9/1
23/20 25/2 41/3
**scheduling** [1]   42/3
**Schmidtlein** [28]   2/2
3/8 7/12 11/15 11/20
12/5 15/8 16/22 17/8
18/17 21/6 22/10 27/20
28/14 29/15 31/12
34/21 35/15 36/18 41/5
44/21 49/12 49/25
51/10 52/24 54/3 57/10
60/4
**scientific** [1]   26/2
**scope** [2]   5/15 30/17
**screen** [1]   12/4
**sealed** [1]   6/18
**search** [9]   46/9 46/14
47/21 47/24 50/8 50/20
52/14 52/15 58/14
**seat** [1]   32/17
**second** [2]   4/15 6/16
11/20 15/10 16/18 26/8
35/4
**Section** [4]   1/18 48/21
48/21 48/22
**Section 1** [1]   48/21
**see** [13]   3/14 5/2 6/19
8/2 10/4 13/25 19/20
23/5 25/3 39/2 59/21
61/16 61/18
**seek** [5]   60/13 60/21
60/21 60/25 61/1
**seeking** [3]   44/12
57/18 58/6
**seem** [2]   55/21 59/8
**seemed** [2]   8/1 27/1
**seemingly** [1]   26/1
**seems** [6]   32/13 32/19
38/5 44/4 45/8 61/7
**seen** [3]   7/24 37/4 59/6

**sense** [10]   9/21 17/18
20/20 21/1 26/2 29/16
31/25 38/8 44/5 44/15
**sensitive** [1]   42/8
**sent** [2]   12/11 12/11
35/2
**sentiment** [1]   44/9
**separate** [2]   8/2 38/3
**Sergey** [1]   33/25
**serve** [1]   10/15
**served** [6]   4/16 4/19
13/15 41/8 41/10 41/12
**set** [7]   4/15 10/24 18/4
25/5 46/9 46/21 61/14
**setting** [2]   46/23 51/22
**seven** [1]   19/8
**several** [1]   8/7
**shaking** [2]   41/5 41/8
**shame** [1]   36/6
**share** [2]   46/20 52/10
**sharing** [3]   27/3 27/4
28/4
**she** [3]   34/8 34/8 37/6
**short** [3]   7/24 12/9
42/5
**shortened** [1]   18/2
**shot** [1]   14/13
**should** [9]   6/6 28/8
36/22 37/13 41/7 43/5
49/19 50/15 60/17
**shouldn't** [1]   34/21
**show** [1]   54/20
**shrinking** [1]   8/13
**shrouded** [1]   47/13
**side** [3]   44/7 52/3
52/18
**sides** [1]   7/14
**sign** [2]   52/18 52/19
**signatory** [1]   33/20
34/3 36/3
**signed** [2]   33/15 33/24
**significant** [3]   9/9
15/23 26/25
**signing** [1]   49/2
**silent** [1]   60/1
**similar** [1]   44/9
**simple** [1]   53/25
**simply** [5]   54/15 55/8
61/10
**since** [2]   24/25 47/7
**single** [6]   12/13 15/18
29/22 29/22 30/24
48/16
**sit** [1]   17/11
**sitting** [3]   34/18 36/18
36/22
**situation** [1]   17/3
**six** [21]   27/12 27/18
28/5 28/13 28/23 29/1
29/23 29/25 31/17
31/17 31/18 32/12 34/8
35/24 37/11 37/13
37/13 37/22 39/11 40/3
40/4
**size** [1]   50/21
**slew** [1]   16/14
**slightly** [1]   45/12

**Smith** [3]   36/5 36/5
36/6
**so** [114]
**so I think** [2]   18/9
20/25
**so it's** [1]   48/24
**so this cuts** [1]   28/9
**so this is** [2]   39/25
47/21
**So why** [1]   59/17
**solution** [2]   39/15 42/7
**some** [52]   4/23 4/23
4/24 5/9 6/3 8/15 8/21
9/8 14/17 14/18 16/2
16/20 17/14 17/17 19/7
21/13 25/8 25/11 25/19
26/21 26/22 28/1 29/10
30/3 30/24 31/22 32/18
33/11 35/23 39/6 42/18
43/4 43/12 43/14 44/5
45/3 45/7 47/9 48/14
48/25 51/12 53/3 53/11
53/20 54/10 55/11
56/12 57/14 57/21
59/13 59/19 61/16
**somebody** [11]   22/17
27/22 32/2 32/12 32/18
33/19 35/25 36/4 37/17
38/1 42/3
**somehow** [1]   17/22
31/4 58/20
**someone** [3]   28/8
29/23 38/2
**something** [19]   4/5
8/18 9/23 9/25 11/14
20/10 20/13 20/20 21/2
24/20 24/22 25/2 26/3
27/22 29/8 46/10 57/9
58/19 60/22
**sooner** [1]   8/19
**sorry** [11]   6/1 9/18
17/6 24/10 28/24 32/5
35/6 37/8 43/21 53/14
54/1
**sort** [33]   10/6 13/17
14/3 14/13 15/17 15/17
15/19 15/23 16/4 16/11
17/14 17/16 17/19 18/2
22/20 25/19 26/8 30/5
30/8 33/5 33/11 35/4
36/8 37/22 42/15 45/11
47/2 47/21 55/1 55/7
58/10 59/20 60/1
**sounds** [2]   16/20 59/1
**span** [1]   15/19
**speak** [1]   18/6
**specialized** [1]   10/21
**specific** [15]   17/2
27/17 30/5 30/25 33/16
40/9 40/9 45/16 45/21
47/18 50/22 58/2 58/11
61/2 61/4
**specifically** [7]   5/11
35/22 44/2 45/23 47/19
47/22 48/12
**specificity** [1]   59/12
**specify** [2]   40/15 57/18

**speed** [2]   29/18 32/2
**spend** [1]   52/8
**spitting** [1]   51/17
**square** [1]   12/3
**squarely** [1]   24/7
**St** [1]   2/3
**stage** [1]   60/7
**stand** [3]   3/14 3/19
42/6 59/21
**standpoint** [1]   22/16
**staring** [1]   40/18
**start** [10]   3/17 16/8
23/20 23/20 23/21
25/13 43/18 43/25
60/11 60/12
**starting** [2]   21/15
44/21
**state** [2]   1/17 35/8
**stated** [1]   19/3
**states** [11]   1/1 1/3 1/10
3/3 12/8 26/19 31/14
32/11 50/21 53/9
53/20
**states'** [2]   12/21 12/24
**status** [8]   1/9 3/13 3/15
3/20 8/12 8/23 23/12
25/6
**stenography** [1]   2/10
**still** [12]   4/23 6/11
12/15 12/16 12/25
13/17 16/17 19/10
40/14 45/15 47/13 57/9
**Store** [1]   49/2
**straightaway** [1]   32/1
**straightforward** [2]
32/13 38/6
**strategic** [3]   10/24
11/3 11/7
**strategies** [1]   30/6
**Street** [1]   1/14
**stretching** [1]   24/12
**strike** [1]   37/14
**strikes** [3]   44/1 50/10
51/24
**subject** [4]   3/25 15/21
26/21 62/6
**subparts** [1]   18/4
**subpoena** [1]   9/5
**subset** [2]   26/21 39/6
**substantively** [1]   18/7
**substitute** [3]   25/18
39/17 39/18
**such** [3]   15/19 15/20
26/4
**suffered** [1]   16/1
**sufficient** [3]   9/11 11/9
12/18
**suggest** [1]   41/22
**suggested** [6]   15/10
26/20 31/15 40/1 41/25
59/2
**suggesting** [4]   38/15
39/1 39/25 43/9
**Suite** [1]   1/21
**supplement** [1]   12/14
**supplemental** [2]
12/16 13/10
**supplementation** [1]

**S**

supplementation... [1]
12/23

supposed [5] 5/7 22/6
36/17 44/23 47/1

supposedly 46/1

suppressing [1] 54/12

suppression [1] 54/20

sure [11] 6/25 8/19
8/25 9/22 11/22 17/12
32/7 34/2 42/8 50/11
53/8

surprised [1] 47/8

surprises [2] 7/23 47/4

suspect [1] 44/17

swapping [1] 41/2

switch [1] 54/8

sympathetic [1] 44/22

**T**

table [1] 59/17

take [6] 6/7 21/17
22/3 22/6 27/7 35/23
38/22 49/6 49/12 51/13

taken [1] 5/20

takes [1] 22/20

taking [4] 16/12 22/10
49/4 52/24

talk [15] 7/4 7/8 17/12
17/15 21/11 24/11 25/2
25/14 29/11 29/12 39/4
42/2 42/15 43/16 59/18

talked [6] 25/22 27/23
34/6 49/10 57/1 58/13

talking [3] 39/23 49/8
51/21

target [1] 59/13

targeted [1] 14/12

teach [1] 31/4

technological [1] 62/7

tell [11] 20/8 23/6 23/7
36/22 44/6 45/20 47/3
47/18 47/22 56/13
56/20

tells [1] 29/8

ten [2] 18/1 39/11

terms [7] 10/22 27/21
32/14 32/15 33/21 42/3
44/9

test [1] 12/2

testify [2] 26/4 31/17

testimony [8] 14/10
15/13 15/17 15/19
25/16 25/18 52/4 54/10

than [14] 8/19 9/24
20/25 22/5 22/13 30/12
32/2 33/19 39/10 45/6
46/4 46/11 48/24 61/2

thank [9] 3/10 4/6 7/13
10/9 21/4 59/23 61/20
61/21 61/22

thank you [7] 3/10 4/6
7/13 10/9 61/20 61/21
61/22

that [407]

that'll [1] 8/18

that's [48] 4/4 5/1 6/13
6/14 6/15 9/19 10/9

24/5 24/12 25/7 25/8
25/20 26/23 28/21 29/8
30/3 35/3 35/7 38/3
39/23 40/11 43/9 43/21
44/15 45/6 45/24 46/25
47/13 47/19 48/2 48/4
48/6 49/25 50/9 51/16
51/24 52/23 54/22 57/9
59/13 59/14 59/16
60/10 61/10

their [16] 5/12 7/14
7/21 9/7 12/13 12/17
13/19 19/5 37/3 40/19
46/7 52/10 55/15 59/14
60/5 60/10

them [50] 4/13 4/24 5/8
6/2 7/24 8/7 8/14 9/1
9/1 12/9 12/11 12/15
12/21 12/22 13/25 14/2
14/15 15/4 15/24 16/12
17/12 18/23 19/4 19/7
20/9 28/8 29/25 30/8
30/24 31/4 32/25 33/9
35/2 36/21 37/23 38/21
39/8 40/11 40/17 40/24
45/2 45/8 45/19 47/17
48/15 48/18 50/19 53/3
55/17 55/19

themselves [3] 5/16
15/22 16/13

then [32] 3/25 4/11 6/1
8/18 10/4 10/5 10/10
16/8 21/3 22/16 22/18
23/17 24/14 25/4 25/10
25/14 27/20 30/20
31/21 36/5 37/1 38/21
42/5 42/6 42/18 43/14
43/16 43/22 47/18
51/24 52/20 58/23

theories [1] 55/14

theory [5] 50/3 50/6
53/16 53/18 59/4

there [32] 3/15 4/9 6/9
7/23 11/21 17/1 19/25
20/8 20/18 21/1 21/6
24/24 25/9 25/17 26/1
29/21 29/22 29/23 30/3
31/15 35/4 35/10 40/16
44/17 45/7 52/16 53/1
56/12 58/15 58/16
58/19 59/25

there's [21] 3/19 4/3
4/25 6/12 13/16 16/17
18/9 30/24 31/22 32/19
34/16 35/23 35/24 39/6
44/16 47/9 48/21 53/10
54/21 58/15 59/19

therefore [2] 37/18
62/6

these [92]

they [76]

they'll [1] 47/17

they're [20] 7/19 14/8
14/19 15/17 16/6 17/15
17/21 19/14 29/9 29/9
30/13 36/20 38/20
40/15 45/19 49/8 52/8

they've [25] 5/20 5/20
8/10 9/5 9/6 13/15
14/11 15/22 16/4 29/6
30/25 32/25 33/1 33/5
33/11 34/13 34/13
34/13 40/20 45/14 46/6
47/15 47/20 48/14
58/12

thing [9] 5/13 5/15 9/3
18/16 18/21 28/11 43/8
55/21 60/19

things [13] 3/14 3/18
14/11 14/12 14/14
15/18 25/23 35/9 42/6
44/6 47/20 55/21 59/21

think [60] 3/25 4/2 8/16
11/11 13/2 13/17 14/5
14/22 15/11 15/25 17/4
17/9 17/21 18/9 18/16
18/16 18/21 19/8 19/13
19/22 20/19 20/22
20/25 23/20 24/10
24/14 25/4 25/24 28/11
29/17 30/9 31/2 31/6
36/7 39/6 39/14 40/8
40/12 41/18 42/9 42/15
43/3 43/5 44/4 45/10
47/10 49/10 49/25 54/3
54/6 56/16 57/7 57/21
58/5 58/23 58/24 59/1
59/16 60/6 60/24

thinking [2] 7/20 29/9

thinks [1] 24/23

third [9] 7/16 7/17 8/6
8/9 9/11 15/1 15/2 21/7
46/25

third-party [1] 15/1

this [104]

This is Civil [1] 3/3

those [35] 4/16 5/7 5/9
6/3 11/2 11/8 13/12
13/24 15/6 18/5 18/7
22/12 22/13 25/7 25/12
26/15 27/10 27/12
27/19 28/5 29/6 31/25
35/11 37/2 37/14 37/20
37/25 38/22 40/6 40/6
48/20 52/15 55/22 56/9
58/23

thought [2] 33/6 60/4

thousands [2] 36/12
36/13

three [1] 21/19

through [15] 7/3 7/9
8/23 9/23 10/6 13/18
14/16 16/1 23/17 37/15
37/25 42/15 59/4 59/4
60/1

throughout [1] 50/20

till [2] 9/20 24/9

time [25] 3/20 4/2 8/13
11/9 13/4 15/20 20/12
21/22 23/16 24/5 24/7
25/8 29/7 30/7 40/15
42/5 42/10 42/18 42/24
43/10 48/17 52/9 55/10
59/8 59/10

today [8] 12/20 14/23
17/1 18/10 18/22 42/14
42/22 59/18

together [2] 42/5 56/14

too [3] 25/25 40/17
42/11

took [1] 19/9

topic [8] 20/16 21/8
25/8 25/24 26/11 26/11
27/18 32/1

topics [13] 14/6 14/9
14/21 15/16 15/17
15/20 16/18 16/20
16/20 17/17 18/4 26/9
30/9

total [1] 41/1

toward [2] 18/24 27/2

towards [4] 16/3 19/15
41/1 61/17

transcript [3] 1/9 2/10
62/3

transcription [2] 2/11

travel [2] 22/19 22/20
22/23

tremendous [1] 34/11

trial [2] 42/17 43/7

trials [1] 22/5

tried [5] 13/4 33/14
36/21 37/2 45/23

trouble [1] 8/9

true [4] 16/7 26/19
35/10 51/16

truly [1] 24/20

truncated [1] 18/2

try [7] 13/12 20/1 26/8
31/6 42/18 46/3 60/5

trying [19] 12/22 15/4
23/10 27/1 27/21 34/12
39/14 40/11 45/12
47/21 48/7 50/1 50/9
50/10 56/2 56/9 59/3
61/8 61/10

turn [4] 10/10 11/15
21/8 43/22

turned [1] 11/25

turns [2] 20/21 51/2

twice [1] 23/8

two [17] 4/11 4/12 10/5
10/19 11/5 12/15 12/19
21/18 23/2 23/5 25/21 25/23
30/4 31/3 35/9 35/16
37/15 43/16

two-day [1] 23/2

type [3] 16/6 46/10
47/11

**U**

U.S [1] 1/13

ultimately [6] 20/1
34/14 39/17 40/11 45/2
55/4

under [3] 16/9 28/4
57/9

understand [21] 9/5
20/24 22/15 29/20
31/22 32/14 33/19
34/24 35/8 35/13 35/21

71

the/7 40/14 45/5 49/17
50/10 51/1 51/10 55/14
60/10 61/12

understanding [6] 6/1
29/25 51/8 55/10 57/22
60/9

understands [1] 22/9

understood [1] 60/20

unfolding [1] 12/25

Unit [1] 1/19

UNITED [6] 1/1 1/3
1/10 1/3 50/21 53/19

United States [2]
50/21 53/19

United States of [1]
3/3

unlawful [9] 44/3 44/12
46/2 47/11 49/16 50/5
55/15 55/17 60/9

unlawfully [1] 50/5

unredacted [1] 6/20

until [4] 6/20 8/12 8/22
9/1

up [29] 4/12 6/2 7/23
8/5 15/5 21/2 26/12
29/18 30/10 30/14 31/1
32/2 34/22 35/1 36/15
37/2 39/7 39/13 39/19
39/21 39/22 46/14 49/9
52/9 52/9 52/19 53/16
55/5 60/2

updated [3] 3/23 7/14
13/4

updates [1] 7/4

upon [3] 9/7 17/16
22/4

upshot [1] 44/4

urgency [1] 22/2

URL [1] 46/13

us [30] 4/23 11/3 11/11
13/23 16/11 17/15
17/16 18/19 23/2 25/5
29/8 29/8 30/19 33/13
36/8 36/22 38/16 39/2
40/23 44/6 45/20 47/3
47/18 47/22 48/2 48/12
56/2 56/7 56/13 56/20

usdoj.gov [1] 1/16

use [14] 14/7 34/17
38/24 50/22

used [1] 36/16

useful [1] 55/8

user [1] 49/21

users [1] 51/22

using [1] 34/17

usually [1] 3/17

**V**

vacated [1] 22/7

vague [1] 13/17

valid [1] 25/17

value [3] 7/21 28/6
29/6

valued [1] 34/10

values [1] 38/21

variables [1] 45/2

variety [5] 4/12 5/12
13/17 15/16 50/20

**V**

**various [2]** 15/2 32/3
**varying [1]** 15/20
**vehemently [1]** 41/14
**versus [2]** 3/4 19/19
**vertical [1]** 10/21
**very [18]** 4/20 7/4 14/4
14/4 14/13 14/15 14/24
30/25 30/25 33/7 37/16
41/18 51/8 52/5 52/20
55/11 58/9 61/20
**VIA [1]** 1/9
**view [5]** 16/11 16/12
46/1 53/5 59/15
**views [1]** 13/11
**vs [1]** 1/5

**W**

**wait [3]** 8/12 8/22
56/19
**waiting [4]** 4/16 12/16
12/17 13/8
**want [23]** 5/17 5/19
6/24 8/17 14/20 18/24
22/19 23/20 24/4 25/3
29/4 29/5 30/19 31/2
32/16 37/25 40/3 46/13
48/3 52/18 52/19 58/18
60/25
**wanted [3]** 13/4 18/25
21/7
**wanting [2]** 42/8 61/8
**wants [3]** 44/10 55/4
59/25
**was [22]** 5/3 5/8 7/3
7/4 11/13 12/13 15/10
21/12 22/6 25/9 25/22
25/23 25/25 26/6 30/10
30/11 30/16 32/7 34/7
41/10 41/12 58/9
**Washington [4]** 1/5
1/14 2/3 2/9
**wasn't [3]** 6/19 11/22
32/7
**way [31]** 15/11 18/17
19/6 20/2 20/11 21/2
24/3 25/22 26/10 27/16
27/23 30/21 31/6 32/10
32/13 32/19 37/14 38/6
39/9 40/1 43/11 44/17
45/9 45/15 50/11 50/12
53/9 53/10 53/11 54/8
54/24
**wc.com [1]** 2/4
**we [268]**
**we believe [4]** 9/10
14/16 15/15 55/25
**we will [12]** 6/7 7/16
13/1 13/19 13/24 15/7
18/23 24/4 28/12 41/3
41/17 43/4
**we would [2]** 5/22 44/7
**we'd [6]** 5/21 21/18
27/11 37/1 39/3 39/3
**we'll [15]** 3/16 5/14 6/4
7/8 7/11 8/24 10/14
10/15 25/2 25/2 54/10
59/17 59/18 61/16

**we're [51]** 3/13 4/8
4/13 4/16 4/18 4/21
5/13 5/15 7/23 8/11
8/16 8/17 12/15 12/16
13/8 13/18 14/2 14/2
14/18 15/1 15/3 17/11
17/12 17/19 18/5 18/6
18/7 18/11 23/20 28/20
33/9 34/17 36/17 38/24
40/21 41/2 41/19 46/3
46/22 47/2 48/7 48/17
55/7 56/16 56/22 57/4
57/7 57/21 58/16 58/21
58/21
**we've [58]** 4/8 4/9 4/15
4/19 5/6 7/24 8/7 8/8
8/9 8/16 8/25 9/1 10/6
11/2 12/11 13/7 14/16
15/4 15/24 15/25 15/25
16/5 17/16 25/9 25/21
27/23 28/15 28/16
28/17 28/19 28/19
30/23 34/2 34/19 35/2
36/14 36/15 36/16
36/21 36/24 37/2 37/2
37/4 38/19 39/23 45/19
45/23 46/24 46/25
47/17 48/4 48/14 57/1
57/2 58/21 59/1 59/10
61/14
**website [1]** 46/13
**week [11]** 23/3 23/10
24/8 42/17 42/20 42/22
43/7 59/18 59/20 61/15
61/19
**weeks [1]** 11/5
**well [38]** 3/12 9/22
10/9 15/1 18/10 21/21
21/25 22/15 26/19
30/17 32/22 34/21
34/22 35/16 36/6 38/3
38/11 40/18 41/22 43/6
44/5 44/11 44/12 47/6
47/7 47/15 47/22 49/1
50/6 54/11 55/7 56/5
56/18 57/10 57/11 59/1
60/11 60/17
**weren't [2]** 34/1 46/2
**what [102]**
**what's [3]** 20/24 40/14
41/6
**whatever [2]** 18/7
51/16
**when [15]** 6/5 6/7 6/13
8/10 12/1 26/1 28/24
29/1 34/16 39/12 44/24
46/10 46/24 48/25
60/12
**where [20]** 3/14 3/17
3/18 8/16 10/6 14/19
16/5 17/18 17/23 25/9
29/8 36/16 42/6 48/21

59/21 61/16
**whereby [2]** 14/5 46/8
**whether [25]** 3/22 4/3
4/4 5/17 9/13 10/1
12/17 15/12 16/23
18/18 18/19 19/18
24/23 29/17 32/9 32/9
34/3 40/6 42/3 46/3
52/24 55/3 55/5 59/5
60/22
**which [43]** 5/8 6/6 6/12
9/10 11/4 12/9 15/10
16/7 19/24 22/12 23/2
23/3 27/9 28/17 28/19
30/9 30/23 31/13 33/6
34/14 39/15 40/19
41/25 43/25 44/5 44/23
45/22 47/5 48/11 48/20
51/2 51/2 51/5 51/21
52/8 54/7 54/13 55/12
55/25 56/11 56/12
57/23 59/7
**while [1]** 6/10
**who [35]** 9/4 9/12
14/17 29/23 29/24
31/11 31/15 31/20
31/23 32/17 32/18
32/20 32/24 33/2 33/4
33/15 34/4 34/6 34/7
35/17 35/25 35/25
36/13 36/19 36/20
36/23 37/22 37/24
38/10 40/5 40/10 40/16
40/23 42/1 52/18
**who's [3]** 35/19 36/14
42/3
**whole [3]** 34/14 34/22
34/23
**why [24]** 3/17 23/7
24/3 24/16 24/18 24/19
24/21 24/24 28/17
28/19 30/9 33/6 34/14
35/21 39/25 41/8 41/24
43/9 52/8 53/14 53/15
54/14 59/17 59/19
**will [29]** 6/7 6/10 7/16
13/1 13/19 13/24 15/7
16/17 18/23 19/24
20/22 24/4 24/5 28/12
33/19 38/17 40/5 41/3
41/17 42/17 43/3 43/4
52/7 53/22 54/4 54/4
58/5 58/24 59/17
**William [4]** 2/6 3/6 62/2
62/11
**WILLIAMS [1]** 2/2
**willing [7]** 14/2 17/15
17/19 27/11 39/3 39/3
52/8
**win [2]** 46/24 54/15
**within [2]** 18/1 42/20
**without [5]** 19/17
19/17 20/20 54/13
60/16
**witness [14]** 3/24 5/18
6/8 15/18 16/24 17/22
19/3 19/10 26/4 28/12

**witnesses [15]** 5/22
5/24 10/19 10/21 13/11
14/3 14/17 14/21 16/15
16/21 31/3 37/3 37/15
38/17 39/11
**won't [3]** 8/22 18/24
47/3
**word [1]** 26/23
**worded [1]** 53/9
**words [8]** 22/17 29/21
35/9 35/10 35/14 45/14
47/11 51/13
**work [11]** 8/1 15/4
17/15 18/8 19/13 22/16
23/25 39/3 41/3 43/3
43/5
**worked [5]** 6/3 6/4
15/24 18/5 19/7
**working [6]** 4/24 8/2
8/3 12/21 13/12 13/18
**works [1]** 43/2
**world [12]** 44/24 44/25
45/3 46/1 46/3 46/5
47/1 49/1 54/4 54/8
54/13 55/2
**would [62]** 3/20 3/22
4/1 5/10 5/11 5/22 5/22
5/23 5/23 6/22 8/18
19/1 19/13 19/16 20/4
22/12 23/19 23/23
25/20 26/3 26/21 26/22
26/24 27/5 27/9 28/11
28/22 29/4 29/20 31/13
31/14 31/15 31/16
31/21 32/20 33/8 34/4
35/17 36/7 42/1 44/7
44/12 44/13 45/3 46/1
50/7 50/25 54/5 54/8
54/13 54/17 54/25
54/25 56/23 57/4 57/7
57/11 58/6 60/12 60/14
61/2 61/8
**wouldn't [4]** 12/2
28/10 31/25 34/18
**writing [7]** 9/25 16/23
20/10 20/14 25/10
39/10 40/12
**written [19]** 5/18 6/3
15/12 15/13 16/1 16/19
17/18 18/18 18/23 19/4
19/9 19/12 19/14 20/5
25/18 25/21 26/8 26/12
39/16
**wrong [2]** 16/17 16/24

**Y**

**yeah [7]** 7/3 19/22 23/6
42/21 46/17 53/7 57/25
**year [5]** 23/8 40/20
47/7 47/7 47/7
**years [3]** 31/5 40/16
40/17
**Yes [8]** 12/6 18/15
22/22 22/25 24/1 27/11
48/10 57/16
**yesterday [1]** 6/18
**yet [3]** 13/23 13/23

**you [194]**
**You cut [1]** 43/20
**you know [3]** 20/15
23/3 25/21
**you'd [1]** 60/2
**you'll [1]** 17/2
**you're [27]** 3/9 19/20
21/13 21/21 22/17
22/18 22/20 22/23 27/8
30/8 31/2 35/7 37/17
38/9 39/7 39/7 41/5
45/10 46/23 48/1 49/9
52/2 52/19 56/24 57/6
61/4 61/8
**you've [6]** 31/15 35/15
38/2 40/22 47/5 60/1
**your [89]**
**Your Honor [75]**
**yourselves [2]** 24/11
42/2

**Z**

**Zaremba [3]** 2/6 62/2
62/11
**ZOOM [1]** 1/9