## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

                              Plaintiffs,

v.

GOOGLE LLC,

                              Defendant.

Case No. 1:20-cv-03010-APM

HON. AMIT P. MEHTA

███████████████

### MEMORANDUM IN SUPPORT OF
### PLAINTIFFS' MOTION TO SANCTION GOOGLE AND COMPEL DISCLOSURE OF
### DOCUMENTS UNJUSTIFIABLY CLAIMED
### BY GOOGLE AS ATTORNEY-CLIENT PRIVILEGED

Plaintiffs respectfully request the Court to sanction Google LLC (Google) for its extensive and intentional efforts to misuse the attorney-client privilege to hide business documents relevant to this case. Google has explicitly and repeatedly instructed its employees to shield important business communications from discovery by using false requests for legal advice. These efforts directly harmed Plaintiffs, undermined their discovery efforts, and subverted the judicial process. The Court should sanction Google and order the full production of withheld and redacted emails where in-house counsel was included in a communication between non-attorneys and did not respond. Alternatively, the Court should hold these silent-attorney emails are not privileged and immediately order their production.

**INTRODUCTION**

For almost a decade, Google has trained its employees to use the attorney-client privilege to hide ordinary business communications from discovery in litigation and government investigations. Specifically, Google teaches its employees to add an attorney, a privilege label, and a generic "request" for counsel's advice to any sensitive business communications the employees or Google might wish to shield from discovery. Google has referred to this practice as "Communicate with Care." Documents produced by Google make the existence of this corporate strategy undeniable and demonstrate the prevalence of this practice throughout the company.

As part of Google's larger efforts to shield documents from production, Google employees were expressly directed to add artificial indicia of privilege on *all* written communications relating to the exclusionary search-distribution agreements at the heart of Google's monopolies. Google's employees followed the Communicate-with-Care training, routinely adding in-house counsel to business communications, affixing privilege labels, and including pretextual requests for legal advice when no advice was actually needed, sought, or thereafter received. In these email chains, the attorney frequently remains silent, underscoring that these communications are not genuine requests for legal advice but rather an effort to hide potential evidence.

Google's strategy worked. Google's outside counsel often accepted Google employees' artificial claims of privilege at face value. After Plaintiffs' extensive efforts to uncover and challenge erroneous privilege claims, Google's outside counsel eventually deprivileged tens of thousands of documents initially withheld or redacted on the basis of privilege. These efforts, however, do not—and cannot—cure the misconduct inherent in Google's efforts to hide relevant communications. Indeed, many more challenged documents remain outstanding.

Accordingly, the Court should invoke its inherent authority to sanction Google and order

the production of all emails between non-attorneys where the included in-house counsel did not reply.

Alternatively, the Court should (1) hold that Google has not, and cannot, make the necessary showing to support its privilege claims over any email created pursuant to the Communicate-with-Care program, and (2) order Google to produce withheld emails where the included in-house counsel did not bother to reply. These silent-attorney emails lack all indicia of privilege and should be produced. Although Google's policy of pretextually including attorneys on business communications has affected a far larger set of documents that Google has withheld or redacted—and Plaintiffs reserve their rights on this broader set of documents—immediate production of Google's silent-attorney emails is the minimum relief appropriate given Google's abuse of the discovery process.

## STATEMENT OF FACTS

I. **At Google's Instruction, Google Employees Deliberately Create Artificial Indicia Of Privilege To Shield "Sensitive" Business Communications**

For years, Google has systematically trained its employees to camouflage ordinary-course business documents to look like privileged discussions. Google's efforts to avoid discovery have included express training and direction on how to imbue "sensitive" documents (including those documents highly relevant to this case) with the appearance of attorney-client privilege.

A. **Google Directs Employees To Privilege "Any Written Communication" About Agreements Central To Google's Anticompetitive Scheme**

Google's documents reveal that Google directs employees to add in-house counsel, make a pretextual request for legal advice, and apply attorney-client privilege labels to shield "sensitive" business discussions from discovery, even when the author has no actual interest in seeking or receiving legal advice.

This practice is referred to as "Communicate with Care" and began no later than 2015, when Google's new employee orientation included the slide in Figure 1.[1]

**Figure 1**



The speaker notes accompanying this presentation direct new employees: "If you're dealing with a sensitive issue, it's important to communicate with care over email. You can follow these steps to ensure your email communication is privileged in these circumstances."[2] There is no discussion about when or whether legal advice is actually needed or should be sought.

Training of this sort was not limited to new employees. It was also provided to teams negotiating the search-distribution at the center of this case. In 2016, after the European Commission opened a formal investigation into Google's search-distribution practices on

---

[1] Declaration of Meagan K. Bellshaw (Bellshaw Decl.) Ex. 1 (GOOG-DOJ-06890329, at -363) (per Google's metadata, date of document is 10/8/2015); Bellshaw Decl. Ex. 2 (Raghavan Dep. 280:1-8, Dec. 14, 2021). Throughout this memorandum, Plaintiffs will refer to this practice as Communicate with Care as that appears to be how it was frequently referred to by Google. It may have had different names at different times and to different employees.
[2] Bellshaw Decl. Ex. 1

Android,[3] Google held a two-day "Android Mobile Search & Assistant Revenue Share

Agreement Training." Google presented the slides in Figures 2 and 3 to attendees of this

training.[4]

**Figure 2**



**Figure 3**



---

[3] Press Release, European Commission, "Antitrust: Commission opens formal investigation against Google in relation to Android mobile operating system" (Apr. 15, 2015), *available at* https://ec.europa.eu/commission/presscorner/detail/en/MEMO_15_4782.
[4] Bellshaw Decl. Ex. 3 (GOOG-DOJ-10619658, at -665–66) (per Google's metadata, date of document is Dec. 7, 2016).

As the slides show, attendees were asked "what else should you always keep in mind?" The answer: camouflage "**any written communication** regarding Rev Share and MADA" to look like a request for legal advice by adding "Legal" and marking content "Confidential – Attorney Client Privileged."[5] Google then instructed its employees to "request guidance" from an attorney.[6] Again, employees were directed to portray business communication as privileged regardless of whether any legal advice was genuinely sought.

Specific reference to the Mobile Application Distribution Agreements (MADAs) and revenue-sharing agreements (RSAs) was no accident. These agreements—between Google and its search distribution partners—are central to Google's efforts to monopolize the search and search advertising markets at issue in this case. As Plaintiffs' Amended Complaint explains, the RSAs and MADAs (along with other supporting agreements) lock up search distribution on mobile devices and foreclose competition.[7]

The Communicate-with-Care training surfaced again when the United States began reviewing Google's conduct.[8] Six days after the United States Department of Justice issued its first Civil Investigative Demand in the investigation into Google's search monopoly,[9] Google again warned its employees to take steps to immunize from disclosure in discovery "any written

---

[5] *Id.* at -666 (emphasis in original).
[6] *Id.* Helen Tsao (██████) is in-house counsel for Google. Bellshaw Decl. Ex. 4.
[7] Am. Compl. ¶¶ 52–87, 166 (ECF No. 94).
[8] The Antitrust Division announced the opening of its review of market-leading online platforms on July 23, 2019. *See* Press Release, U.S. Dep't of Justice, "Justice Department Reviewing the Practices of Market-Leading Online Platforms" (July. 23, 201), *available at* https://www.justice.gov/opa/pr/justice-department-reviewing-practices-market-leading-online-platforms.
[9] The Antitrust Division issued its initial Civil Investigative Demand to Google's parent company, Alphabet, Inc., on August 30, 2019 (CID No. 30092). Bellshaw Decl. at ¶ 5.

communication" relating to RSAs and MADAs.[10]

**Figure 4**



As before, Google directed employees to create the appearance of privilege on all written communications about its search distribution agreements by including counsel on the email, marking content as "Confidential – Attorney Client Privileged," and requesting "guidance." Again, no effort was made to distinguish between authentic requests for advice and efforts to shield business communications from production.

### B.    Google Employees Followed The Instructions To Create Artificial Indicia Of Privilege On Business Communications

Communications produced in response to Plaintiffs' privilege challenges show that Google's employees complied with Google's instructions to camouflage business communications. Indeed, Google employees at every level followed the company's three-step formula of (1) including in-house counsel on sensitive business discussions, (2) adding privilege

---

[10] Bellshaw Decl. Ex. 5 (GOOG-DOJ-21790045, at -046) (per Google's metadata, date of document is Sept. 5, 2019). Kate Lee (⬛⬛⬛⬛) is another in-house counsel for Google. Bellshaw Decl. Ex. 4.

headings, and (3) making pretextual requests for legal guidance.

For example, on July 16, 2019, a Google product manager updated two supervisors on negotiations for Google's RSA with LG, a mobile-device manufacturer. In the email, the product manager offered his recommendation and sought input from the supervisors, both non-attorneys, on the *business* discussion with LG. Nevertheless, the product manager prefaced the email by writing "**PRIVILEGED & CONFIDENTIAL** . . . Kate – please advise as needed."[11] Kate Lee, the in-house counsel, was included (as Google taught) on the "To" line but never responded.[12] Google, nevertheless, originally withheld the entire email thread, including the subsequent emails that *dropped* the attorney from the discussion and were sent solely between two non-attorneys.[13]

Similarly, on June 14, 2017, a vice president responded to an email discussion about a slide deck that was being prepared for Google's CEO Sundar Pichai.[14] The discussion concerned whether to ██████████████████████████████████████████████████████ ████████████████████████████████████████████████. As shown in Figure 5, the

---

[11] Bellshaw Decl. Ex. 6 (GOOG-DOJ-28350269, at -271) (emphasis in original); *see also* Bellshaw Decl. Ex. 7 (GOOG-DOJ-27771584) (showing Kate Lee listed on the "To" line).
[12] Bellshaw Decl. Ex. 7 (GOOG-DOJ-27771584); Bellshaw Decl. Ex. 8 (GGPL-2060441155) (Google privilege log entry showing that document was originally fully withheld); Bellshaw Decl. Ex. 9 (GOOG-DOJ-28350262) and Bellshaw Ex. 8 (GGPL-1081901687); Bellshaw Decl. Ex. 10 (GOOG-DOJ-28350265) and Bellshaw Decl. Ex. 8 (GGPL-1081901608); Bellshaw Decl. Ex. 6 (GOOG-DOJ-28350269) and Bellshaw Decl. Ex. 8 (GGPL-1081901607).
[13] *Id.*
[14] Bellshaw Decl. Ex. 11 (GOOG-DOJ-26758239, at -243).

vice president followed the Communicate-with-Care guidance:[15]

**Figure 5**



On Wed, Jun 14, 2017 at 7:51 AM, Jamie Rosenberg <​█████████​> wrote:
ATTORNEY CLIENT PRIVILEGED

(with Matthew for legal advice)

+ pgennai, chris li, matthew

Hi all,

I assume you're referring to these slides.  I'm not sure if they've been updated following the discussion I had with a few folks yesterday afternoon.

This email, which Google deprivileged only after repeated efforts by Plaintiffs, reflects all of the hallmarks of Google's Communicate-with-Care strategy: marking the email as privileged, copying in-house counsel, and requesting unspecified "legal advice." Over the next fifteen hours, the Google employees on this email exchanged eight responses about negotiating strategy, yet the in-house counsel apparently never responded and no actual legal advice was sought or disclosed.[16] Nevertheless, Google's employees included some form of "Privileged" marking on *every* subsequent email, including the top-level emails that removed the in-house counsel from the thread and were sent exclusively between two non-attorneys.[17]

This practice of portraying ordinary business communications as privileged is followed at Google's highest levels. Google's CEO (and now also Alphabet's CEO), Sundar Pichai sent the

---

[15] *Id*.

[16] *Id*.

[17] *Id.* Google's outside counsel initially fully withheld the entire thread, including the top emails between two non-attorneys. *See* Bellshaw Decl. Ex. 8 (GGPL-1081174382).

following email about an upcoming press story to Susan Wojcicki (a non-attorney):[18]

### Figure 6



Although the email was directed to a non-attorney (Susan Wojcicki) about a non-legal press issue, Mr. Pichai wrote at the top "Attorney Client Privileged" and "Kent pls advice." Kent Walker, a Google Senior Vice President and General Counsel (now Google's Chief Legal Officer), apparently never replied to the email thread. This email was initially withheld by Google and only deprivileged after Plaintiffs challenged.[19]

Google's production contains numerous examples of Google employees carrying out the Communicate-with-Care directions, where the emails revolve around RSAs, MADAs, and other "sensitive" issues at the heart of Plaintiffs' case. Indeed, generic statements such as "[attorney,]

---

[18] Bellshaw Decl. Ex. 12 (GOOG-DOJ-28509324, at -324).
[19] *Id.*

please advise,"[20] "adding legal,"[21] or "adding [attorney] for legal advice"[22] appear in thousands

of Google documents.[23] These emails lack any specific request for legal advice and the attorneys

rarely respond. Tellingly, when Google attorneys fail to respond to these generic requests, the

non-attorneys do not follow-up with more specific requests for advice or even remind the

attorney to respond.

### C.   Google Employees, Including Its Leaders, Encourage Coworkers To Communicate With Care By Asking Them To "Make It Privileged"

In following the Communicate-with-Care guidance, Google employees, including

Google's leaders, frequently express their intent to hide documents from discovery by directing

---

[20] *See, e.g.*, Bellshaw Decl. Ex. 13 (GOOG-DOJ-18636836, at -836) (email from non-attorney, redacted because top of email includes header "Privileged and Confidential, Seeks advice of counsel – Kate pls advise," followed by a business communication directed explicitly to another non-attorney about the Samsung RSA negotiation); Bellshaw Decl. Ex. 7 (GOOG-DOJ-27771584, at -854) (non-attorney starts an email sent to other non-attorneys, regarding a "follow-up conversation with LG" on revenue-share business negotiations, with "Privileged & Confidential Kate – please advise as needed," and Google initially withheld the document on that basis).

[21] *See, e.g.*, Bellshaw Decl. Ex. 14 (GOOG-DOJ-24020181, at -182) (Google vice president starts email to other non-attorneys about business deals with "**attorney client privileged** adding Legal for counsel," with no attorney responding to any email in the remainder of the thread).

[22] Bellshaw Decl. Ex. 15 (GOOG-DOJ-09059783, at -785) (deprivileged communication in which a Google vice president responds to a thread about Android business issues with "Attorney Client Privileged (Adding Tristan for Legal advice)," resulting in response emails using a "Privileged" header even though the added attorney does not respond in any of the subsequent 11 emails); Bellshaw Decl. Ex. 16 (GOOG-DOJ-28416766, at -768) (largely deprivileged communication, beginning with "Privileged and Confidential – Adding Tristan for legal advice Please Don't Share," in which a non-attorney emails other non-attorneys about █████████████████████████████, but the included attorney does not respond to any of the subsequent 11 emails that each relate to business considerations).

[23] To illustrate, a search of Google's produced documents (including deprivileged files) for the generic phrases "please advise," "pls advise," "for advice," "for legal advice," "for any legal advice," "for guidance," or "seeks advice of counsel" within five words of the first names of five attorneys from the examples cited in this brief returned 9,329 documents. Bellshaw Decl. ¶ 7. This is only from the documents that Plaintiffs can currently review. Many more such documents containing generic and pretextual requests for legal advice are likely still withheld or redacted.

colleagues to create privileged communications or "make it privileged."[24] For example, in a 2019 email thread, a Google product-management director asked, "[c]an someone put a lawyer on this thread and make it ACP by asking for advice?"[25] In another 2019 email thread, as shown in Figure 7, Google engineers and analysts discussed the business tradeoff of "████████ ████████." After reviewing the revenue data, a non-attorney employee added an attorney to the email "to make this privileged":[26]

**Figure 7**



The added attorney apparently never responded, confirming there was no legal question to be answered.[27]

Similarly, in Figure 8, a Google vice president explained that he was including an attorney in an email about business negotiations ████████ because his message would contain "trigger words," presumably terms that Google employees are taught to avoid (like "leverage")

---

[24] Bellshaw Decl. Ex. 17 (GOOG-DOJ-21646392, at -392) (in an email thread, responding to a colleague's request to "threadkill please," a Google employee wrote "instead of threadkill, please copy lawyer and make it privileged thread to get internal consultation."); *see also, e.g.*, Bellshaw Decl. Ex. 18 (GOOG-DOJ-18895045, at -045) (adding an attorney to an email with meeting notes "to make this thread Attorney-Client Privileged"); Bellshaw Decl. Ex. 19 (GOOG-DOJ-09750925, at -925) ("Let's make the [slide] deck attorney client privileged and share with a lawyer asap").

[25] Bellshaw Decl. Ex. 20 (GOOG-DOJ-23945666, at -668). Google initially produced redacted versions of the five subsequent emails but then produced an unredacted version of the thread after Plaintiffs' challenge. *Id.*

[26] Bellshaw Decl. Ex. 21 (GOOG-DOJ-12864417, at -418).

[27] *Id.*

and that regulators might look for:[28]

**Figure 8**



The included attorney did not respond in any of the subsequent roughly 25 emails in the string and was eventually dropped from the email thread entirely, confirming that his inclusion was not for the legitimate purpose of seeking legal advice.[29]

Often, Google employees will correct and discipline colleagues' misfires in attempts to claim privilege. For example, on a 2016 email thread in which Google employees discussed a business negotiation ▮▮▮▮, one employee reminded another that an attorney was needed for the Communicate-with-Care formula to work (see Figure 9). He warned "I think you need a lawyer on the thread for this to be actually privileged." After being reminded, his colleague replied and, as directed, added in-house counsel, Tim Taylor. Google withheld this document on

---

[28] Bellshaw Decl. Ex. 22 (GOOG-DOJ-21815059, at -065).
[29] *Id.*

a privilege claim until challenged by Plaintiffs.[30]

**Figure 9**



Google's use of attorneys to shield business communications pervades the entire company, including its leadership, and continued unabated after the company was on notice of the Department of Justice's investigation and even after the filing of the complaint in this action.

For example, after the Department of Justice issued Civil Investigative Demands to Google, Prabhakar Raghavan, a senior Google executive, sent a list of business ideas to his non-attorney subordinates. Figure 10 shows that on April 3, 2020, Mr. Raghavan requested a

---

[30] Bellshaw Decl. Ex. 23 (GOOG-DOJ-06399233, at -233). Responding several months later to Plaintiffs' privilege challenge, Google reproduced the document, without redactions. *Id.*

colleague create a "privileged deck" addressing the business issues in the email.[31]

**Figure 10**



The requested "privileged deck" involved search advertising—one of the markets Google is alleged to have monopolized—and was intended for "Sundar," Google's CEO. Of note, the recipient did not respond with a query as to what a "privileged deck" was. The nomenclature was understood.

Likewise, one of Google's most senior executives—Philipp Schindler, Google's Chief Business Officer—repeatedly asks for non-legal communications to be relayed to him in a "privileged" form. On November 3, 2020, after the complaint was filed in this case and Google had an ongoing duty to produce materials in response to discovery requests, Mr. Schindler

---

[31] Bellshaw Decl. Ex. 24 (GOOG-DOJ-20830033).

received an email from a non-lawyer describing how █████████████████████

████████. As shown in Figure 11, Mr. Schindler responded, asking for a "privileged email" with

the employee's perspective:[32]

**Figure 11**



## II.    Plaintiffs Have Been, And Continue To Be, Harmed By Google's Conduct

Google's strategy of creating the appearance of privilege on sensitive business documents

has had its intended effect: tens of thousands of documents were improperly withheld or redacted

in this litigation and many more challenged documents remain withheld or redacted. The burden

Plaintiffs have faced in seeking the improperly withheld documents and unwinding Google's

misconduct has interfered with the Plaintiffs' preparation of their case.

Plaintiffs began challenging Google's overstatement of privilege claims in June 2021. At

the time, careful scrutiny of Google's privilege logs showed that tens of thousands of privileged

documents merely included in-house counsel on the carbon-copy line, even though it is well

settled that copying an attorney does not confer privilege. Over the subsequent months, Plaintiffs

repeatedly challenged Google's privilege claims, even as Plaintiffs worked to understand

---

[32] Bellshaw Decl. Ex. 25 (GOOG-DOJ-21476426); *see also* Bellshaw Decl. Ex. 26 (GOOG-DOJ-30899052, at -053) (Philipp Schindler asks a non-attorney colleague to send him an update on a business partner "in a privileged separate email"); *Id*. (GOOG-DOJ-30899052, at -055 (Mr. Schindler asks a non-attorney colleague to send more details about a business partner in advance of a meeting "in a separate privileged thread").

Google's ongoing efforts to falsely claim privilege on common business documents. During this time, Google has been slow to respond to Plaintiffs' requests, taking months to reproduce challenged documents. When Google did concede the veracity of Plaintiffs' privilege challenges, the previously withheld documents often arrived after depositions of the relevant Google custodians.[33] Finally, Google refused to re-review categories of documents directly implicated by Google's abuse of the attorney-client privilege.[34]

Although Google has, ultimately, deprivileged numerous documents, many other questionable documents remain fully withheld or redacted.[35] The full universe of unresolved documents is obscured by the fact that Google has refused, despite repeated requests, to provide an accounting of which documents it has re-reviewed and which documents it has deprivileged.[36]

---

[33] *See, e.g.*, Bellshaw Decl. Ex. 27 (GOOG-DOJ-21672259) (Yuki Richardson email challenged on November 15, 2021, as improperly redacted, but Google did not produce a deprivileged unredacted version until January 11, 2022, *after* the December 15 deposition of Ms. Richardson); Bellshaw Decl. Ex. 28 (GOOG-DOJ-21129755) (email about RSAs with carriers originally redacted because it included "ATTORNEY CLIENT PRIVILEGED (Kate, please advise)" was challenged by Plaintiffs on November 15, 2021, but Google did not produce a deprivileged, unredacted version of the document until January 13, 2022, *after* the deposition of all three Google deponents on the thread—Jamie Rosenberg (Dec. 13–14, 2021), Adrienne McCallister (Dec. 13, 2021), and Yuki Richardson (Dec. 15, 2021)).

[34] It was not until March 1, 2022, that Google agreed to review a subset of these communications, and this was only after Plaintiffs informed Google of its intent to file a motion to compel.

[35] *See, e.g.*, Bellshaw Decl. Ex. 29 (GOOG-DOJ-24380202, at -204) (redacted email in which employee adds attorney Matthew Bye to the "CC" line of an email relating to "Carrier Search Rev Share" along with several non-attorneys, but Mr. Bye never replies over the course of the subsequent eight emails between non-attorneys, each of which Google redacted and has not deprivileged despite Plaintiffs' challenge on November 15, 2021). For reference, Google has fully withheld over 80,000 documents where an attorney is merely carbon-copied on an email between non-attorneys. Because these are fully withheld, Plaintiffs lack any visibility as to whether an attorney responded with legal advice during the thread.

[36] Google has produced tens of thousands of previously fully withheld and redacted documents as part of its privilege re-review, Bellshaw Decl. ¶ 8, but Google has not provided Plaintiffs with the necessary information to match newly produced documents to privilege log entries for the fully withheld version. Plaintiffs repeatedly asked Google for this information in August,

Google, moreover, has offered no formula by which it can—upon re-review—separate out the Communicate-with-Care emails from those (if any) carrying a genuine request for attorney advice. As such, re-review efforts have not remedied Google's misconduct or the burden and delay it created.

## ARGUMENT

Google's actions under the Communicate-with-Care program are misconduct that demand sanction to protect the integrity of the investigative and judicial processes. Even if the Court holds that Google's conduct is not sanctionable, the Court should conclude that (1) all emails created under Communication with Care are not privileged, and (2) Google cannot make the necessary showing to maintain its privilege claims over the silent-attorney emails. Under either framework, the Court should order Google to produce *all* the silent-attorney emails without redaction.

**I.      The Court Should Sanction Google For Its Abuse Of The Attorney-Client Privilege By Compelling Disclosure Of All Silent-Attorney Emails**

The Court should exercise its inherent authority to sanction Google's misconduct by ordering the production of the silent-attorney emails presently withheld or redacted under claims of privilege. Specifically, the Court should hold that (1) Google's conduct is sanctionable, and (2) an appropriate sanction is the immediate production of all withheld or redacted emails where no attorney responded to the purported request for legal advice.

**A.      Google's Conduct Is Sanctionable Under The Court's Inherent Authority**

The Court should conclude that Google's years-long effort to hide business

_____

November, and January. See Bellshaw Decl. ¶ 6, Ex. 36 (Plaintiffs' November 15, 2021 Letter) and Ex. 37 (Plaintiffs' January 25, 2022 Letter). Nor has Google updated its privilege logs to accurately reflect which privilege claims have been withdrawn. As a result, Plaintiffs have no way to check Google's work and discern which privilege challenges remain outstanding.

communications under the cloak of attorney-client privilege is sanctionable misconduct.

### 1.     Google's Communicate-With-Care Program Is Sanctionable

In Google's Communicate-with-Care program, new employees were taught to hide "sensitive" business communications with false requests for assistance from counsel. As part of their ordinary orientation, these employees were directed to protect sensitive communications by adding an attorney to the email, directing a pretextual question to the attorney, and marking the communication privileged. These directions made no allowance for whether legal advice was necessary or desired. The Communicate-with-Care program had no purpose except to mislead anyone who might seek the documents in an investigation, discovery, or ensuing dispute.

Indeed, when regulators—including the European Commission and the United States Department of Justice—began investigating Google's search-distribution agreements, Google took steps to ensure its Communicate-with-Care training addressed communications relating to those agreements. The company explicitly directed its employees to route "any written communication" relating to RSAs and MADAs—the agreements central to this action—through counsel with requests for advice included. Google believed that these efforts would facially support a privilege claim and shield the communications from being produced in future litigation. Google knew these agreements created significant antitrust risk for the company and presented significant concerns to antitrust regulators worldwide. The slide in Figure 12 appeared *four* times in a single presentation used during the Android Mobile Search & Assistant Revenue

Share Agreement Training.[37]

**Figure 12**



These directions to misuse the attorney-client privilege were misconduct, as were the efforts by Google's employees to follow them—either by falsely seeking legal advice or instructing subordinates to take a business communication and "make it privileged."

To be clear, those following Google's Communicate-with-Care program were not acting out of an abundance of caution but instead were acting—as directed—to hide specific communications about subjects being investigated by regulators. For example, in July 2021, Mr. Schindler—a top executive at Google—reviewed draft notes in preparation for a business conference on Google's "███████████."[38] ████████████████████

---

[37] Bellshaw Decl. Ex. 30 (GOOG-DOJ-29824601, at -605, -617, -681, -702).
[38] Bellshaw Decl. Ex. 31 (GOOG-DOJ-30900278).

███████████████, Mr. Schindler made a request in a comment:[39]

**Figure 13**

> Can someone send me in a privileged separate email the current (where known, or guesses) and last known status on their "unhappiness".

Thus, Mr. Schindler—a non-attorney—expressly asked for a business update but one shielded by privilege. More importantly, Mr. Schindler tips his hand that he wants things routed through counsel to hide the communications; there is no request for legal guidance. These same preparation notes included a separate point about a telecommunications company. Mr. Schindler requested "more details" on this point in a "privileged thread":[40]

**Figure 14**

> Can I have a few more details in a separate privileged thread as this was a big issue the last time I talked ███████

These were express efforts by Google's Chief Business Officer to wrap business communications in the cloak of attorney-client privilege.

Google's Communicate-with-Care program was successful: in this case, Google designated tens of thousands of business communications as privileged and withheld these documents from Google's initial production. These over-designations created enormous, unnecessary costs for Plaintiffs, both (1) in delay in receiving the improperly withheld documents, and (2) in resources spent investigating and challenging the improper withholding.

Plaintiffs' efforts to unwind Google's privilege claims began on June 4, 2021, when

---

[39] *Id.* at -279.
[40] *Id.* at -280–281.

Plaintiffs sent Google a letter raising a series of privilege concerns based on the first volumes of Google's litigation privilege logs.[41] In this letter, Plaintiffs expressed concern over Google's withholding of 81,122 documents as privileged where an attorney was merely carbon-copied.[42] Although Plaintiffs had not yet uncovered evidence regarding the Communicate-with-Care training, Plaintiffs pointed to evidence that Google employees appeared to be adding attorneys to communications, not for legal advice, but to shield information from discovery. The June 4 letter cited examples such as emails asking "could we please include a lawyer in the thread and make the doc A&C Privileged please"[43] and "+ ███████████ to make this thread Attorney-Client Privileged."[44]

As Google's production continued, however, the company advanced the same unfounded privilege claims for documents identified on subsequent privilege logs. This required Plaintiffs to send new challenges in July, November, and January.

Subsequently, deprivileged documents revealed that the scope of this abuse was more pervasive and intentional than Plaintiffs realized. At the time of this filing, Google has reversed its claims of privilege on tens of thousands of documents. This is no tribute to Google's efforts to cure their prior conduct, but a measure of the harm the company's misconduct has wrought, and the effort expended by Plaintiffs in challenging Google's misconduct. This harm continues as many more challenged silent-attorney emails remain withheld and redacted.

---

[41] Bellshaw Decl. Ex. 35 (Plaintiffs' June 4, 2021 Letter).
[42] *Id.* at 9.
[43] Bellshaw Decl. Ex. 32 (GOOG-DOJ-07801741, at -741).
[44] Bellshaw Decl. Ex. 18 (GOOG-DOJ-18895045, at -045).

> **2.  Google's Efforts To Hide Relevant Evidence Under The Pretense Of Attorney-Client Communications Raise The Same Concerns As Spoliation And Misrepresentation**

Sanctions are warranted where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Google's conduct checks all of those boxes. Google engaged deliberately in deceptive conduct—directing its employees to include pretextual requests for legal advice—for the purpose of shielding documents from discovery in this litigation. Google's policy did not require destroying documents or deleting emails. But orchestrating the use of fraudulent requests for legal advice to camouflage non-privileged business email has much the same result— documents that would otherwise be discoverable are denied to plaintiffs—and, if not remedied, inflicts the same harm on the factfinding process. The discovery process, of course, is essential to the search for truth in judicial proceedings and ultimately to the Court's ability to reach conclusions based on an accurate and complete representation of the facts.

Google's institutionalized manufacturing of false privilege claims is egregious, spanning nearly a decade and permeating the company from the top executives on down. The breadth and calculation of Google's Communicate-with-Care program renders it commensurate with other sanctionable conduct, including elements of both spoliation and misrepresentation. Google's conduct is cut from the same cloth as actions in the caselaw that have been sanctioned—even if the fabric is cut in a more intricate pattern.

The Court's inherent authority enables the Court "to protect [its] institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir.

1995).

When "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings," courts have the inherent authority to impose severe sanctions. *See Anheuser-Busch*, 69 F.3d at 348. Here, there can be no doubt Google's deception was deliberate and has undermined this proceeding. The requests for legal advice under Communicate with Care were misrepresentations made when it was foreseeable that the emails would be relevant to litigation brought by regulators, including the Department of Justice. Google's instruction that employees make these misrepresentations increased the likelihood that a business communication would be withheld as privileged in subsequent government investigations or litigation. But for the anticipation of litigation, Google's Communicate-with-Care instructions serve no purpose.

In *Johnson v. BAE Systems*, a case concerning both spoliation and misrepresentation, the court sanctioned the plaintiff, finding that she had "repeatedly obfuscated the truth," "altered medical records," and "failed to preserve and produce relevant documents during discovery." 106 F. Supp 3d. 179, 189–90 (D.D.C. 2015). Although Google has not destroyed evidence, it has deliberately obfuscated the truth with each request for legal advice when none was needed, resulting in a failure to produce relevant documents to Plaintiffs during discovery.[45] The *Johnson* court further held that recoverability of destroyed files was "irrelevant" because "[t]he potential for future compliance with discovery requirements is not an excuse for attempting to destroy computer files." *Id.*

As in *Johnson*, the fact that Google's privilege gamesmanship has not destroyed the

---

[45] *See Paavola v. Hope Vill.*, No. CV 19-1608 (JDB), 2021 WL 4033101, at *5 (D.D.C. Sept. 4, 2021) (sanctioning a party that "organized a specific effort to shred documents and dispose of records while it was actively engaged in litigating this case").

relevant non-privileged communications forever is "irrelevant." Google employees recognize that adding artificial indicia of privilege has the same effect as deleting documents. For example, in responding to a colleague's request to "threadkill please," a Google employee wrote "instead of threadkill, please copy lawyer and make it privileged thread to get internal consultation."[46]

Sanctions are appropriate not only to remedy Google's abuse but also to deter Google and others from engaging in this deceptive practice in the future. The D.C. Circuit has explained, "[t]he district court's interest in deterrence is a legitimate one, 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). If Google's conduct goes "unpunished, other litigants might be tempted to abuse the discovery process in the future." *Monroe v. Ridley*, 135 F.R.D. 1, 6–7 (D.D.C. 1990).

Neither Google nor any other large corporation with deep pockets and an army of in-house lawyers should be able to subvert the attorney-client privilege to hide potential evidence. Google's efforts to hide documents make a mockery of the attorney-client privilege—a centerpiece of legal practice. Accordingly, the conduct is particularly problematic and deserving of proportional sanctions.

### B.   Compelled Disclosure Of Silent-Attorney Emails Is A Just And Proportional Sanction For Google's Misconduct

The Court should order Google to produce the silent-attorney emails as a reasonable sanction for the company's misconduct. Specifically, the Court should compel Google to

---

[46] Bellshaw Decl. Ex. 17 (GOOG-DOJ-21646392).

produce all withheld or redacted communications (including attachments and linked documents) where in-house counsel was included in a communication between non-attorneys but the in-house counsel never responded.

This sanction is narrowly tailored and proportional to Google's misconduct. "To be just . . . the sanction must never be any more severe than it need be to correct the harm done and to cure the prejudice created to the other party, unless the opposing party's behavior has so been so flagrant or egregious that deterring similar conduct in the future in itself warrants the sanction sought." *Zenian v. District of Columbia*, 283 F. Supp. 2d 36, 38 (D.D.C. 2003) (quoting *Walker v. District of Columbia*, 1998 WL 429834, at *1 (D.D.C. June 12, 1998)). Here, Plaintiffs seek to compel the production of documents directly implicated by Google's abuse of the attorney-client privilege. Although we seek no more than what is needed to correct the harm done by Google's misconduct, the egregiousness of Google's conduct also warrants this remedy to deter similar conduct in the future. This sanction is consistent with the caselaw. For example, in *Cohn v. Guaranteed Rate, Inc*., 318 F.R.D. 350, 353–55 (N.D. Ill. 2016), the court found plaintiff acted in bad faith and engaged in sanctionable conduct by moving damaging emails to her personal email account and deleting them before filing suit. Accordingly, the *Cohn* court granted defendants "full access" to the plaintiff's personal email account to permit a transparent determination of whether any ostensibly deleted emails could be retrieved. 318 F.R.D. at 356.

It is possible that the proposed sanction could result in the production of documents where individuals genuinely sought legal advice. However, if a few privileged documents are contained within the set of silent-attorney emails, it is a consequence of Google's own misconduct and a warranted penalty. "[P]reventing a party from asserting the attorney-client privilege is a legitimate sanction for abusing the discovery process." *In re Teleglobe Commc'ns*

*Corp.*, 493 F.3d 345, 386 (3d Cir. 2007), *as amended* (Oct. 12, 2007). Waiver of privilege is generally reserved for cases involving "inexcusable conduct" and "bad faith." *DL v. District of Columbia*, 274 F.R.D. 320, 325–26 (D.D.C. 2011). If Google's intentional misuse of the attorney-client privilege is not both "inexcusable" and in "bad faith," Plaintiffs are unsure what would qualify.[47]

Finally, this sanction is necessary as a first step in curing the harm that Google has inflicted on Plaintiffs and to deter Google from misusing the attorney-client privilege to shield relevant evidence in the future. Because of Google's misconduct, Plaintiffs had to wait many months to receive deprivileged documents. Some deprivileged reproductions even arrived after the depositions of the relevant Google custodians. Further, Plaintiffs spent significant resources uncovering and challenging these abuses.[48] Many more challenged documents are outstanding with limited time in discovery remaining. Immediate disclosure of all the silent-attorney communications is necessary to correct Google's abuses. Plaintiffs also reserve the right to seek adverse inferences and re-open depositions, if necessary.

---

[47] Courts have also held that a party may have a "culpable state of mind" to support sanctions relating to spoliation "even if the party did not act in bad faith or purposefully destroy records." *Paavola v. Hope Vill.*, No. CV 19-1608 (JDB), 2021 WL 4033101, at *12 (D.D.C. Sept. 4, 2021); *see also United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 268–69 (2007) ("Guided by logic and considerable and growing precedent, the court concludes that an injured party need not demonstrate bad faith in order for the court to impose, under its inherent authority, spoliation sanctions.").

[48] Courts have held that late and missing productions of documents prejudice plaintiffs. *See DL*, 274 F.R.D. at 328–29 (holding that plaintiffs suffered prejudice where "delayed production" of documents "likely left plaintiffs with a compromised trial strategy"); *3E Mobile, LLC v. Glob. Cellular, Inc.*, 222 F. Supp. 3d 50, 56–57 (D.D.C. 2016) ("Global has not only incurred unnecessary costs by having to file a motion to compel and motion for sanctions as a result of 3E's failure to fulfill its discovery obligations, but Global will also incur additional expenses if it decides to re-depose witnesses using 3E's newly-produced documents.").

**II.     Compelled Disclosure Of The Silent-Attorney Emails Is Warranted Because Google Failed To Establish They Are Privileged Communications**

Even if the Court declines to find that Google engaged in sanctionable conduct, compelled disclosure of the silent-attorney emails is warranted because Google has failed to meet its burden to establish that these communications are privileged.

**A.     Documents Created Under The Communicate-With-Care Program Are Not Privileged And Must Be Produced**

Google employees adopting the Communicate-with-Care strategy did not seek actual advice from counsel. Accordingly, the Court should hold that all emails with pretextual requests for legal advice where an attorney did not respond are not privileged and immediately producible.

The D.C. Circuit has adopted the "significant purpose" test to evaluate whether a document is protected as an attorney-client communication. "Sensibly and properly applied, the test boils down to whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication." *In re Kellogg Brown & Root, Inc.,* 756 F.3d 754, 760 (D.C. Cir. 2014). Emails adopting the Communicate-with-Care instructions inherently fail this test. Google's employees following instructions to "request guidance" or "make it privileged" are not genuinely seeking legal advice. Instead, these employees are adding counsel's name and a mock request for advice merely because they have been directed to do so on all sensitive communications. Thus, neither seeking nor receiving legal advice is a "significant" purpose of these emails.

Accordingly, the Court should conclude that any document created under the Communicate-with-Care rubric cannot be withheld or redacted under a claim of privilege. *See Philip Morris USA, Inc.*, No. Civ.A.99-2496(GK), 2004 WL 5355972, at *6 (Feb. 23, 2004) ("[D]ocuments provided to an attorney to keep counsel informed, without an implied request for

legal advice, will not be privileged"). An example demonstrates the point. On April 29, 2020, a

non-attorney Google employee sent the email in Figure 15.[49]

**Figure 15**



As instructed, the Google employee included the talismanic language of "Privileged and

Confidential" and "Seeks advice of counsel – Kate pls. advise," but then proceeds to directly

address the non-attorney to whom the email is really directed ("Hi Andrei"). Unsurprisingly, the

non-attorney, rather than the attorney, responds.[50] This email, originally withheld on a claim of

privilege, cannot qualify for privilege protection: the intent was not to obtain legal advice from

in-house attorney Kate Lee but, rather, to use Ms. Lee to shield from discovery the email to

---

[49] Bellshaw Decl. Ex. 13 (GOOG-DOJ-18636836).
[50] The included attorney does not chime in at any point in the thread. *See* Bellshaw Dec. Ex. 33
(GOOG-DOJ-18636847).

Andrei Popescu.

None of the Communicate-with-Care emails are entitled to privilege protection. Google "may not shield otherwise discoverable documents from disclosure by including an attorney on a distribution list." *United States ex rel. Barko v. Halliburton Co*., 74 F. Supp. 3d 183, 188 (D.D.C. 2014). The caselaw is clear: an attorney recipient, alone, cannot create a privilege. *See Minebea Co. v. Papst,* 228 F.R.D. 13, 21 (D.D.C. 2005) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel." (citation omitted)).[51] The D.C. Circuit has warned that, "[i]n cases that involve in-house counsel, it is necessary to apply the privilege cautiously and narrowly 'lest the mere participation of an attorney be used to seal off disclosure.'" *Neuder v. Battelle Pac. Nw. Nat'l Lab'y*, 194 F.R.D. 289, 295 (D.D.C. 2000). "[D]ocuments prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged because they are not communications made primarily for legal advice." *Id.* (quoting *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 511 (D.N.H. 1996)); *see also Western Trails, Inc. v. Camp Coast to Coast, Inc*., 139 F.R.D. 4, 13 (D.D.C. 1991)  ("As a general rule, 'corporate dealings are not made confidential merely by funneling them routinely through an attorney'" (citation omitted)).

Because Google's employees were not genuinely seeking legal advice, any emails sent pursuant to the Communicate-with-Care program are not protected by the attorney-client privilege and must be produced.

---

[51] Nor does privilege attach just because the communication's author marks the document "privileged." *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig*., No. MC 15-1404 (CKK), 2020 WL 3496748, at *6, 15 (D.D.C. Feb. 25, 2020), *report and recommendation adopted*, 2020 WL 3496448 (D.D.C. May 11, 2020).

**B.      Because Google Cannot Meet Its Burden To Establish Privilege Over *Any* Silent-Attorney Emails, All Those Documents Must Be Produced Unredacted**

The Court should conclude that Google's Communicate-with-Care program undermines the company's privilege claims on emails where the attorney did not bother to respond to purported requests for advice. Such emails should be produced unredacted because it is impossible to establish that such communications genuinely sought legal advice.

"It is settled law that the party claiming the privilege bears the burden of proving that the communications are protected." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998). To meet this burden, a party must "present the underlying facts demonstrating the existence of the privilege" and "conclusively prove each element of the privilege." *Id*. (citations omitted)

For the silent-attorney emails, Google cannot make the necessary proofs. Google has polluted the record regarding which documents contain genuine requests for legal advice to such an extent that Google cannot make the necessary showing to maintain privilege over many of its communications. This, of course, was the entire purpose of Google's Communicate-with-Care strategy: camouflage the business communications to look like privileged requests for legal advice. The result, however, is to throw into doubt all of Google's privilege claims over attorney communications. Given Google's conduct, the fact that an email included an attorney and a request for legal advice proves nothing. Accordingly, such documents cannot—without more— be withheld on claims of privilege.

An example will make this clear. On February 27, 2021, after this litigation began, a non-attorney Google employee (Ariel Spivak) emailed another non-attorney (Philipp Schindler) about a contract negotiation with a third party and carbon-copied several people, including an attorney, Kate Lee, one of the attorneys appearing on the Communicate-with-Care slides. This email

appears on Google's privilege log as a fully withheld document.[52] If, hypothetically, the email includes the line "Kate, please advise on any legal issues," Google's Communicate-with-Care program makes the simple privilege review of this email impossible. Was the request for advice genuine or pretextual? Google, of course, has the burden of establishing privilege; therefore, the document's ambiguity—created by Google's own conduct—must undermine Google's privilege claim.

The Communicate-with-Care program also renders Google's privilege log useless as a functional tool to evaluate privilege claims. A common entry in the log, as for the Kate Lee email described in the previous paragraph, is "Email seeking legal advice of counsel regarding contract interpretation." This offers no insight into the privilege claim when *every* email regarding MADAs and RSAs were designed to look like "Email[s] seeking legal advice of counsel regarding contract interpretation."

The most vulnerable of Google's privilege claims are those where the attorney did not respond to the email allegedly seeking their advice, *i.e.*, the silent-attorney emails. For example, in Figure 15 above, an attorney (Kate Lee) was included on the "to" line even though the communication was clearly directed to a non-attorney (Andrei Popescu). Ms. Lee recognized that there was no genuine request for legal advice, so she simply ignored the email altogether. Thus, the attorney's silence is a clear sign that the email did not actually seek legal advice.

After learning of our plans to file a motion to compel, Google offered to re-review its privilege log for improper privilege claims. Google's offer, however, misses the point: how will Google distinguish between genuine requests for legal advice and those adopted under the Communicate-with-Care formula? The Court should conclude that the attorney's response on

---

[52] *See* Bellshaw Decl. Ex. 34 (GGPL-1060262406).

these emails is the best indicia of the authenticity of the request for legal advice. In short, the best, minimum indication of whether Google's internal communications genuinely sought legal advice is whether Google's in-house counsel actually responded.

For the category of withheld documents—the email chains where the attorney stayed silent—the Court should conclude that Google cannot meet its burden to establish privilege because Google cannot provide sufficient facts "to permit the court to conclude with reasonable certainty that the privilege applies." *In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010); *see also Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 280 (D.C. Cir. 1997) ("We have repeatedly held that the party claiming privilege has the burden of presenting to the court sufficient facts to establish the privilege." (internal citation and quotation omitted)).

Plaintiffs' proposed remedy is the most reasonable solution; it recognizes the ambiguity Google has created in the privilege process and provides a solution that does not require Plaintiffs to devote more resources to tracking and uncovering Google's misconduct. Indeed, the requested relief is narrowly tailored to documents directly implicated by Google's gamesmanship that do not appear to contain any privileged legal advice.

Accordingly, the Court should order the production of all emails (including attachments and linked documents) in any email chain withheld under a claim of privilege where the included counsel remained silent. The Court should hold that Google cannot meet its burden to support its privilege claims over these silent-attorney emails.[53]

---

[53] Nor can Google assert work-product protection over this category of documents for substantially the same reasons. Google has not provided any evidence that an attorney directed the creation of these silent-attorney emails nor has Google identified specific litigations for which these business emails were created. *See Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C. 1987) (holding that work-product protection does not shield from discovery documents

### III.    Google Must Provide An Updated And Useful Privilege Log

Google's Communicate-with-Care program has rendered the company's privilege log useless. It should be replaced. Moreover, Google has deprivileged documents in response to Plaintiffs' privilege challenges without updating its privilege log. This leaves Plaintiffs without the ability to assess the sufficiency of its efforts.

Whether the Court compels disclosure pursuant to sanctions or Google's failure to meet its burden to establish privilege, Google must provide Plaintiffs with the ability to verify compliance with the Court's order and the company's ongoing privilege obligations. Despite repeated requests, Google has refused to provide Plaintiffs with the ability to assess the adequacy of Google's privilege review, one of many reasons why re-review is an inadequate remedy. Plaintiffs, therefore, respectfully request the Court order Google to provide (1) a single, comprehensive privilege log that combines all remaining privilege claims Google is continuing to assert in this litigation—with any corrections they have made—and removes any entries that Google is no longer claiming; and (2) an index including all documents Google has deprivileged thus far and all documents it deprivileges as a result of the Court's order with information sufficient to match each original privilege log identifier to the new Bates number. Where any part of a deprivileged document is still redacted, Google also must provide a revised privilege log entry justifying the redaction.

### CONCLUSION

The Court should sanction Google for its deliberate and deceptive misuse of privilege and order the company to produce, unredacted, all emails wherein counsel does not reply. If the

---

that were "prepared in the regular course of compiler's business, rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation").

Court does not sanction Google, the Court should still conclude all emails with pretextual requests for legal advice are not privileged and Google cannot make the necessary showing to maintain privilege claims over such emails.


Dated: March 8, 2022                           Respectfully submitted,


                                               By:_____/s/ Kenneth M. Dintzer_____
                                               Kenneth M. Dintzer
                                               Karl E. Herrmann
                                               U.S. Department of Justice, Antitrust Division
                                               Technology & Digital Platforms Section
                                               450 Fifth Street NW, Suite 7100
                                               Washington, DC 20530
                                               Telephone: (202) 227-1967
                                               Kenneth.Dintzer2@usdoj.gov

                                               *Counsel for Plaintiff United States of America*


                                               By:_____/s/ Johnathan R. Carter_____
                                               Leslie Rutledge, Attorney General
                                               Johnathan R. Carter, Assistant Attorney General
                                               Office of the Attorney General, State of Arkansas
                                               323 Center Street, Suite 200
                                               Little Rock, Arkansas 72201
                                               Johnathan.Carter@arkansasag.gov

                                               *Counsel for Plaintiff State of Arkansas*


                                               By:_____/s/ Adam Miller_____
                                               Rob Bonta, Attorney General
                                               Ryan J. McCauley, Deputy Attorney General
                                               Adam Miller, Deputy Attorney General
                                               Paula Blizzard, Supervising Deputy Attorney
                                               General
                                               Kathleen Foote, Senior Assistant Attorney General
                                               Office of the Attorney General,
                                               California Department of Justice
                                               455 Golden Gate Avenue, Suite 11000
                                               San Francisco, California 94102
                                               Adam.Miller@doj.ca.gov

                                               *Counsel for Plaintiff State of California*

By:_____*/s/ Lee Istrail*_____
Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:_____*/s/ Daniel Walsh*_____
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:_____*/s/ Scott L. Barnhart*_____
Theodore Edward Rokita, Attorney General Scott
L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By:     /s/ *Philip R. Heleringer*
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By:     /s/ *Christopher J. Alderman*
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:     /s/ *Scott Mertens*
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By:     /s/ *Stephen M. Hoeplinger*
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov
*Counsel for Plaintiff State of Missouri*

By:___/s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:___/s/ Rebekah J. French_____
Austin Knudsen, Attorney General
Rebekah J. French, Assistant Attorney General,
Office of Consumer Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, Montana 59620-0151
Rebekah.french@mt.gov

*Counsel for Plaintiff State of Montana*

By:___/s/ Rebecca M. Hartner_____
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:_____*/s/ Bret Fulkerson*_____
Bret Fulkerson, Deputy Chief, Antitrust Division
Kelsey Paine, Assistant Attorney General
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:_____*/s/ Gwendolyn J. Lindsay Cooley*_____
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*