# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

## DECLARATION OF BRADLEY T. TENNIS

I, Bradley T. Tennis, declare as follows:

1. I am a partner at the law firm of Wilson, Sonsini, Goodrich & Rosati PC.

2. I submit this declaration in support of Google LLC's Opposition to DOJ Plaintiffs' Motion to Sanction Google and Compel Disclosure of Documents Unjustifiably Claimed by Google as Attorney-Client Privileged. I have personal knowledge of the facts set forth in this declaration, and, if called to testify, could and would do so under oath.

3. I have been involved on a day-to-day basis in responding to the DOJ Plaintiffs' document requests, challenges to privilege designations, and production of documents.

Google's Document Production

4. Google's productions during the Plaintiffs' investigation ("CID Phase") and litigation have been immense. They comprise more than 4.5 million documents belonging to 122 custodians covering at least a fifteen-year time period.

5. The volume of the custodians and associated documents for review required enormous contract, in-house, and outside counsel attorney resources to complete an initial privilege review quality control process, and the supervision of the same. There were often more than 100 attorneys reviewing documents on a full-time basis for privilege and responsiveness at any given time during both the CID Phase and the litigation.

6. Google and outside counsel also implemented a comprehensive quality control process of the first-level review coding that involved extensive sampling and review by outside counsel. Outside counsel conducted numerous training sessions and refreshers for these reviewers. Attorneys were instructed not to base privilege determinations solely on the presence of attorneys or on headers like "privileged and confidential" or "seeking legal advice."

7. During the litigation, Google has re-collected documents from the custodians to provide refresh productions, including documents created during the time period of the investigation leading to this litigation and created during the pendency of the litigation itself.

8. Google began producing rolling volumes of its privilege logs in September 2020 for documents covered by the CID document requests. Google started producing rolling volumes of its privilege logs in April 2021 for documents covered by litigation requests for production.

9. Given the breadth of the collection and the nature of Google's business, more than 1,000 different in-house Google attorneys appear across the privilege entries of Google's privilege logs from the CID Phase and the litigation.

Re-Review of Documents at Plaintiffs' Request

10. Google has accommodated many requests by Plaintiffs in this case for re-review of documents originally listed as privileged on Google's logs.

11. In total, we estimate that as of March 1, 2022 attorneys at Williams & Connolly LLP, Ropes & Gray LLP, and Wilson, Sonsini, Goodrich & Rosati PC had collectively spent a total of more than 12,000 hours on privilege-related quality control and privilege re-review. Contract attorneys operating under the direction of outside counsel had spent approximately 9,000 hours on privilege-related quality control and privilege re-review.

12. Google and Plaintiffs started to meet and confer regarding Google's privilege log in June 2021. In particular, on June 4, 2021, Plaintiffs sent a letter requesting that Google re-review numerous categories of documents for privilege. These requests included a set of 81,122 logged communications in which an attorney appeared only in the CC line. This request covered logs for the CID Phase as well as the first two volumes of Google's log in the litigation. The next month, on July 29, 2021, Plaintiffs reiterated these requests with respect to a subsequent volume of Google's log that had been produced July 21, 2021.

13. Google agreed in early August to re-review communications identified in Plaintiffs' June 4, 2021 and July 29, 2021 letters in which an attorney remained on the CC line throughout the email thread. Google produced documents for upcoming deponents from this set in August 2021 and completed its re-review and production of documents in this tranche in mid-September 2021.

14. As Google has completed its re-reviews, it has produced to Plaintiffs updated versions of its privilege log volumes. On August 20, 2021, following a request from Plaintiffs on August 11, 2021, Google agreed to specially identify documents produced following re-review with a unique metadata tag in the production.

15. Throughout the re-review process, Google has prioritized the review of documents associated with custodians noticed for upcoming depositions, and it produced documents

resulting from such accelerated re-review on a rolling basis. Google has produced logs associated with such expedited re-review in advance of the relevant depositions.

16. On November 15, 2021, Plaintiffs sent a letter requesting that Google re-review, among other documents, many of the same categories of documents identified in earlier letters. These requests included an additional 23,861 logged communications where an attorney appeared only in the CC line. The documents subject to these requests had appeared on logs that had been produced on a rolling basis in the months since Plaintiffs' July 29, 2021 letter.

17. Google promptly agreed to undertake a re-review of communications on the terms that had previously been agreed to with respect to the June 4, 2021 and July 29, 2021 letters. This re-review included logged communications where the attorney remained in the CC line throughout the email chain.

18. Google completed its re-review of the agreed upon documents and provided Plaintiffs with productions by mid-January 2022.  As with earlier re-reviews, Google prioritized noticed deposition witnesses and re-reviewed and produced their documents expeditiously and on a rolling basis.

19. After Google received Plaintiffs' February 28 letter, Google immediately began re-reviewing logged communications that it believes match the criteria described in the letter.

20. As of the date of this declaration, Google has completed approximately two-thirds of this re-review and anticipates that it will have completed productions totaling approximately 9,000 documents to Plaintiffs by March 25, 2022.  Google estimates that the re-review and production for the remaining documents will be complete by April 1, 2022.

21. As before, Google has prioritized the current re-review for custodians noticed for depositions and production of those documents was substantially complete by March 18, 2022.

22. For context, the categories of documents challenged in DOJ's motion may implicate approximately 140,300 documents. Of those documents, by March 1, 2022, Google had already produced in full approximately 111,800 communications that it believes match the criteria described in the Plaintiffs' letter of February 28, 2022. Google produced approximately 98,000 of those communications in its initial productions and approximately 13,800 in the re-review process.  As of that date, Google's privilege logs contained approximately 18,500 fully withheld communications matching those criteria and approximately 10,000 redacted documents matching those criteria.

*     *     *     *

23. Attached hereto are true and correct copies of the following documents produced by Google during this litigation:

    a. **Exhibit 4** consists of a presentation entitled "Play + Friends All Hands," bearing the Bates stamp GOOG-DOJ-16974608.

    b. **Exhibit 5** consists of a presentation entitled "Noogler Cards," bearing the Bates stamp GOOG-DOJ-07746117.

    c. **Exhibit 6** consists of a presentation entitled "Legal Update: Privilege + Covid-19 Hot Topics," bearing the Bates stamp GOOG-DOJ-21004668.

    d. **Exhibit 7** consists of a document entitled "Google Internal Webmaster & Marketing SEO Policy," bearing the Bates stamp GOOG-DOJ-31153588.

    e. **Exhibit 8** consists of a document captioned "Project Sidewinder Overview & Guidelines," bearing the Bates stamp GOOG-DOJ-27161395.

24. Attached hereto are true and correct copies of the following additional exhibits:

    a. **Exhibit 9** consists of pages 1, 2, 262, and 309 from the deposition transcript of Google employee Yuki Richardson taken in this matter on December 15, 2021. The full deposition transcript is available at the Court's request.

    b. **Exhibit 10** consists of pages 1, 2, 150, 151, and 171 of the deposition transcript of Google employee Adam Juda taken in this matter on October 19, 2021. The full deposition transcript is available at the Court's request.

    c. **Exhibit 11** consists of pages 1, 216, 217, and 262 of the deposition transcript of Google employee Jamie Rosenberg taken in this matter on December 13, 2021. The full deposition transcript is available at the Court's request.

    d. **Exhibit 12** consists of pages 1, 2, 239, and 258 of the deposition transcript of Google employee James Kolotouros taken in this matter on December 16, 2021. The full deposition transcript is available at the Court's request.

    e. **Exhibit 13** consists of pages 1, 2, 305, and 309 of the deposition transcript of Google employee Philipp Schindler taken in this matter on February 9, 2022. The full deposition transcript is available at the Court's request.

    f. **Exhibit 14** consists of a letter sent by Lauren S. Willard of the Antitrust Division of the U.S. Department of Justice to my colleague Franklin Rubinstein of Wilson, Sonsini, Goodrich & Rosati PC, dated July 29, 2021.

    g. **Exhibit 15** consists of a letter from my colleague Franklin Rubinstein of Wilson, Sonsini, Goodrich & Rosati PC to Lauren S. Willard of the Antitrust Division of the U.S. Department of Justice, dated August 4, 2021.

    h. **Exhibit 16** consists of a letter from my colleague Franklin Rubinstein of Wilson, Sonsini, Goodrich & Rosati PC to Lauren S. Willard of the Antitrust Division of the U.S. Department of Justice, dated November 22, 2021.

    i. **Exhibit 17** consists of a letter sent by Lauren S. Willard of the Antitrust Division of the U.S. Department of Justice to my colleague Franklin Rubinstein of Wilson, Sonsini, Goodrich & Rosati PC, dated February 28, 2022.

* * * *

25. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 24th Day of March, 2022, in Washington, D.C.

_____

Bradley T. Tennis