# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                                       Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                                       Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

## **DECLARATION OF CHRISTIAN VEER**

I, Christian Veer, declare as follows:

1. My name is Christian Veer. I am the Director of Platforms & Ecosystem Strategy at Google. I currently work in Google's office in Berlin, Germany.

2. I submit this declaration in support of Google LLC's Opposition to DOJ Plaintiffs' Motion to Sanction Google and Compel Disclosure of Documents Unjustifiabily Claimed by Google as Attorney-Client Privileged. I have personal knowledge of the facts set forth in this declaration, and, if called to testify, could and would do so under oath.

3. I have worked at Google for over 11 years in various Strategy and Operations roles.

4. Starting in approximately October 2015, I worked on building the strategy team for Android, which included strategy surrounding partnership agreements.

5. From time to time, Google modifies template contracts pertaining to Android Revenue Share Agreements ("RSA") and the Mobile Application Distribution Agreement ("MADA") that governs the distribution of Android compatible versions of various Google applications including Google Search.

6. Google's in-house lawyers work closely with my team to develop modifications to these template contracts, they draft the modifications to these template contracts, and they must also approve any modifications to these agreements that result from negotiations with partners before final contract execution.

7. In 2016 and again in 2019, Google implemented modifications to the RSA and MADA template agreements. My team was responsible for training Google employees in business development roles on those modifications. The employees in business

development roles at Google are tasked with interfacing and negotiating with partners, including to implement revised contractual terms into Google's agreements with partners.

8. In 2016, my team and I, as well as in-house lawyers, trained in Mountain View, California on the modifications to the RSA and MADA templates using the presentation beginning with the Bates number GOOG-DOJ-10619658 (Exhibit 3 to the DOJ Plaintiffs' motion). To the best of my recollection, these three trainings collectively included approximately 60 to 70 Google employees with business development responsibilities. The goal of this training was to help the relevant Google employees understand the modifications to the partnership agreements and provide them with enough context and information to effectively discuss and negotiate with partners.

9. We understood that business development employees would have many questions relating to the meaning of the new terms in the template contracts as they negotiated the new terms with Google's partners.

10. Given the in-house lawyers' responsibility for approving the content of the template agreements and given that in-house lawyers would have to approve all final negotiated agreements with partners, my team wanted to ensure that internal communications regarding the RSA and MADA modifications and related negotiations were directed to and included in-house counsel so that in-house counsel could intervene and provide legal advice in the event that negotiators planned or took positions that were not consistent with the principles of the templated agreements.

11. As such, when my team cautioned the trainees to include in-house Google lawyers, to request guidance, and to mark communications as "Confidential – Attorney Client Privileged," we were trying to ensure that legally sensitive inquiries regarding the RSA and MADA modifications were properly routed to Google's in-house lawyers for legal guidance.

12. To the best of my recollection, when I presented this slide, I informed those attending the training that the modifications potentially implicated a lot of legal questions, and requested that they include lawyers if and when they had questions about the changes to the term sheets or template agreements.  I also wanted team members to keep in-house counsel informed of any negotiations, including to seek appropriate legal guidance on any offer that might require significant modifications to the templates.

13. My team also conducted training in 2019 regarding additional modifications to the RSA and MADA template agreements.  Trainings on the new templates and term sheets took place in Tokyo, Japan; Mountain View, California; and Paris, France. To the best of my recollection, these three trainings collectively included approximately 80 to 90 Google employees with business development responsibilities.  The goal of these trainings again was to help the relevant Google employees understand the modifications to the agreements and provide them with enough context and information to effectively discuss and negotiate with partners.

14. As part of these trainings, my team prepared and used the presentation beginning with the Bates number GOOG-DOJ-21790045 (Exhibit 5 to the DOJ Plaintiffs' motion).

15. As with the 2016 presentation, when my team cautioned the trainees to include in-house Google lawyers, to request guidance, and to mark content as "Confidential – Attorney Client Privileged," we were trying to ensure that legally sensitive inquiries regarding the RSA and MADA modifications were properly routed to Google's in-house lawyers for legal guidance.

16. As reflected in the schedules set forth on GOOG-DOJ-21790047, GOOG-DOJ-21790048, and GOOG-DOJ-21790049, the day included a legal training component conducted by an in-house lawyer.

*     *     *     *

17. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 22nd Day of March, 2022, in Berlin, Germany.

_____
Christian Veer