## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

### JOINT STATUS REPORT

The parties in *United States v. Google LLC* and *State of Colorado v. Google LLC* submit the following Joint Status Report summarizing the state of discovery and identifying any issues between the parties, and the parties' respective positions, that will be raised at the status hearing scheduled for May 12, 2022.

**I.      Case No. 1:20-cv-03010**

**A.      Google's Discovery of Plaintiffs**

A summary of Google's First Set of Requests for Production and prior document productions made by Plaintiffs are set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No.

131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF

No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No.

256), January 4 (ECF No. 271), and February 8 (ECF No. 285), March 4 (ECF No. 315), and

April 4 (ECF No. 333).

 Plaintiffs served supplemental responses to Google's First Set of Interrogatories and

Responses and Objections to Google's Second Set of Interrogatories on May 6.

 Plaintiffs produced additional documents in response to Google's First Set of Requests

for Production on April 12.

  **B.**  **Plaintiffs' Discovery of Google**

 A summary of Plaintiffs' First through Twelfth Sets of Requests for Production and the

document productions previously made by Google are set forth in the parties' earlier Joint Status

Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124),

April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No.

165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248),

November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285), March 4

(ECF No. 315), and April 4 (ECF No. 333). Google produced additional documents on April 4,

6, 7, 11, 13, 15, 17, 18, 19, 20, 21, 27, 28, 29, 30, as well as May 2, 4, 5, 6, and 7. Google

produced additional data on April 6, 13, 22, 27, and 28, as well as May 4 and 6.

 Google served its responses and objections to Plaintiffs' Tenth Requests for Production

on April 18.

 Google served its responses and objections to Plaintiffs' Eleventh Requests for

Production on April 25.

 Google served its responses and objections to Plaintiffs' Twelfth Requests for Production

on May 2.

Plaintiffs served their Thirteenth Requests for Production on April 5. Google served its responses and objections to Plaintiffs' Thirteenth Requests for Production on May 5.

Google served its responses and objections to Plaintiffs' Second Set of Interrogatories on April 4.

Google served its responses and objections to Plaintiffs' Fourth Set of Interrogatories on April 27.

Google served its responses and objections to Plaintiffs' Second Set of Contention Interrogatories on April 27.

Google served its responses and objections to Plaintiffs' First Set of Requests for Admission on April 27.

Google served its responses and objections to Plaintiffs' data 30(b)(6) notice on April 7.

Plaintiffs have completed fifty-four depositions of current or former Google employees.

Plaintiffs have also completed depositions pursuant to Rule 30(b)(6) notices issued in July 2021, November 2021, February 2022, and March 2022.

The parties respectfully seek the Court's guidance on a dispute regarding an evidentiary cut-off date. The U.S. Plaintiffs' position statement on this issue is set forth below in Section III.A, the Plaintiff States' position statement is set forth in Section III.B, and Google's position statement is set forth in Section III.C.

The parties respectfully seek the Court's guidance on a dispute regarding a proposed deadline to file motions to compel regarding fact-discovery disputes. The U.S. Plaintiffs' position statement on this issue is set forth below in Section IV.A, the Plaintiff States' position statement is set forth in Section IV.B, and Google's statement is set forth in Section IV.C.

The parties respectfully seek the Court's guidance on a dispute regarding requests for additional documents and information relating to certain data. Plaintiffs' position statement on this issue is set forth below in Section V.A, and Google's statement is set forth in Section V.B.

### C.     The Parties' Discovery of Third-Parties

A summary of the third-party discovery requests previously issued by the parties is set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285), March 4 (ECF No. 315), and April 4 (ECF No. 333). The parties have issued document subpoenas to approximately 130 third parties in total. A small number of third parties were unable to complete their document productions prior to the scheduled close of fact discovery on May 6, 2022, but they anticipate doing so shortly.

The parties have completed twenty-five third-party depositions that were noticed by both Plaintiffs and Google as well as thirty that were noticed only by Google.

## II.     Case No. 1:20-cv-03715

### A.     Google's Discovery of Plaintiff States

A summary of Google's First Set of Requests for Production and the document productions made by Plaintiffs to date are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), January 4 (ECF No. 271), February 8 (ECF No. 285), March 4 (ECF No. 315), and April 4 (ECF No. 333).

Plaintiff States served Responses and Objections to Google's Second Set of Interrogatories on May 6.

Plaintiff States produced additional documents in response to Google's First Set of Requests for Production on April 12.

B.     **Plaintiff States' Discovery of Google**

A summary of Plaintiff States' First through Fifth Sets of Requests for Production and the document productions previously made by Google are set forth in the parties' earlier Joint Status Reports, including their reports dated March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), and November 23 (ECF No. 256), January 4 (ECF No. 271), February 8 (ECF No. 285), March 4 (ECF No. 315), and April 4 (ECF No. 333). Google has continued to produce to Plaintiff States the documents and data produced to the U.S. Plaintiffs and its co-plaintiffs in Case No. 1:20-cv-03010 in addition to producing documents and data in response to Plaintiff States' First, Second, Third, Fourth, and Fifth Sets of Requests for Production.

Google served its responses and objections to Plaintiffs States' Sixth Requests for production on April 22.

Google served its responses and objections to Plaintiffs States' Seventh Requests for production on May 4.

Google served its responses and objections to Plaintiffs' Third Set of Interrogatories on April 18.

Google served its responses and objections to Plaintiffs' Fifth Set of Interrogatories on May 4.

Google served its responses and objections to Plaintiffs' Third Set of Contention Interrogatories on May 4.

Google served its responses and objections to Plaintiffs' Second Set of Requests for Admissions on May 4.

As indicated above, the parties respectfully seek the Court's guidance on a dispute regarding an evidentiary cut-off date, and the parties' position statements are set forth in Section III.

As indicated above, the parties respectfully seek the Court's guidance on a dispute regarding a proposed deadline to file motions to compel regarding fact discovery disputes, and the parties' position statements are set forth in Section IV.

### C.      The Parties' Discovery of Third-Parties

A summary of the third-party discovery requests previously issued by the parties is set forth in the parties' earlier Joint Status Reports, including their reports dated February 23 (ECF No. 111), March 28 (ECF No. 124), April 23 (ECF No. 131), May 24 (ECF No. 135), June 24 (ECF No. 149), July 27 (ECF No. 165), August 27 (ECF No. 191), September 24 (ECF No. 223), October 26 (ECF No. 248), November 23 (ECF No. 256), January 4 (ECF No. 271), and February 8 (ECF No. 285), March 4 (ECF No. 315), and April 4 (ECF No. 333). The parties have issued document subpoenas to 125 third parties in total. A small number of third parties were unable to complete their document productions prior to the scheduled close of fact discovery on May 6, 2022, but they anticipate doing so shortly.

The parties have completed twenty-five third-party depositions that were noticed by both Plaintiffs and Google as well as thirty that were noticed only by Google.

### III.    The Parties' Dispute Regarding a Proposed Evidentiary Cut-Off Date

### A.    U.S. Plaintiffs' Position Statement

The Court should issue an order barring Google from relying upon documents and data
(1) created after December 31, 2021, or (2) that came into Google's possession, custody, or
control after December 31, 2021, but which were not produced during fact discovery.[1] This
evidentiary cut-off is necessary to prevent Google from gaining an unfair advantage by using
new, internal documents and data in its expert reports, at summary judgment, and at trial.
Consistent with that, the Court should order Google to complete its productions of documents
and data responsive to outstanding Requests for Productions ("RFPs"), along with other
discovery requests, by May 23, 2022.

On January 7, 2022, Plaintiffs requested that Google supplement its document
productions for certain RFPs through February 28, 2022. Google refused, stating that it would
only supplement document productions through December 31, 2021. Plaintiffs offered to accept
Google's proposed evidentiary cutoff date of December 31, 2021, so long as Google agreed to
amend the CMO to bar Google from using documents and data created by Google after the same
date. Google refused. Following another compromise attempt by Plaintiffs, Google confirmed on
May 3 that it refused to agree to an evidentiary cut-off and refused to supplement its productions
for a sub-set of RFPs after December 31, 2021.

---

[1] The prohibition would apply if (a) the documents were produced before May 23, 2022, in response to
one of Plaintiffs' discovery requests, (b) the documents were produced pursuant to a Court order, or (c)
the parties otherwise agree the documents should be excepted. Further, this limitation would not bar either
parties' use of or reliance upon (i) publicly available documents and data; (ii) commercially available
data; (iii) documents or data produced by a third party; (iv) third party declarations; or (v) documents or
data used solely for purposes of impeachment. Further, any Party would still be permitted to file a motion
to compel the production of documents or data, including after the end of fact discovery, to remedy
defects in any producing party's prior productions, including moving to compel the production of
documents or data withheld based on claims of privilege. Exceptions to the provisions in this paragraph
would be granted only upon a showing of good cause.

Google's position is not equitable; it deprives Plaintiffs of documents and data dated after December 31, 2021, yet reserves to Google the right to use these same materials. The Court should issue an order preventing this tilted playing field.

As an initial matter, district courts have "wide discretion" to manage discovery and evidentiary deadlines. *Flynn v. Dick Corp.*, 481 F.3d 824, 834 (D.C. Cir. 2007); *see also Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted. At the same time, a district court has broad discretion in structuring discovery.").[2] District courts may exercise that discretion to impose an evidentiary cut-off, barring parties from introducing materials created or acquired after a certain date, such as the close of fact discovery. *See* Fed. R. Civ. P. 37(c); *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 30 & n.4 (D. Mass. 2006) (court imposing evidentiary cut-off date and noting "[t]he cut-off was obviously necessary. Permitting Defendants to offer evidence acquired after the close of discovery would leave Plaintiffs unprepared to challenge the newly-acquired material."); *Qualcomm Inc.*, 2018 WL 6597273, at *5 (granting FTC's motion for evidentiary cut-off in Section 2 monopolization case).[3]

Here, the Court should prohibit Google from relying on any data or documents Google created or acquired after December 31, 2021, which were not disclosed to Plaintiffs during fact

---

[2] *FTC v. Qualcomm Inc.*, 2018 WL 6597273, at *2 (N.D. Cal. Dec. 13, 2018) ("The Court has broad discretion to manage the conduct of a trial and the evidence presented by the parties."); *United States v. McKenzie*, 2010 WL 11508012, at *2 (S.D. Iowa Apr. 22, 2010) ("A district court has broad discretion in determining whether or not to exclude evidence in question 'in an effort to avoid an unfair surprise and to achieve substantial justice in the present case.'" (quotation omitted)).

[3] *See also Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (affirming post-discovery evidentiary cut-off); *J.S.X. through D.S.X. v. Foxhoven*, 2019 WL 13167116, at *2 (S.D. Iowa Mar. 13, 2019) ("Clearly, an evidentiary cut-off date is necessary to avoid undue prejudice to the parties, to maintain the orderly operation of trial, and to promote substantial justice."); *Apple Inc. v. Samsung Elecs. Co.*, 2016 WL 524904, at *3 (N.D. Cal. Feb. 10, 2016) (similar); *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 2013 WL 1155420, at *9 (S.D.N.Y. Mar. 20, 2013) (similar).

discovery (which ended May 6, 2022), unless (a) the documents were produced before May 23, 2022, in response to one of Plaintiffs discovery requests, (b) the documents were produced pursuant to a Court order, or (c) the parties otherwise agree the documents should be excepted.[4] The Federal Rules do not permit Google to litigate with documents which were not the subject of fact discovery. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring disclosure of "all documents . . . that the disclosing party has . . . and may use to support its claims or defenses, unless the use would be solely for impeachment."). Similarly, the caselaw warns against "trial by ambush." *Fed. Trade Comm'n v. Sysco Corp.*, 308 F.R.D. 19, 21–22 (D.D.C. 2015) ("One of the key features of our civil justice system is that parties to a lawsuit are required to exchange information relevant to their dispute before a trial. . . An open exchange of information prevents trial by ambush."); *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998) ("The very purpose of discovery is to avoid trial by ambush.").

Google has generally refused to supplement documents beyond December 31, 2021. Plaintiffs are willing to accept that limitation. In the interest of fairness, however, Google cannot then cherry pick select internal documents from after that date to support its defense. It would severely prejudice Plaintiffs if Google were permitted to rely on a curated set of internal documents that Plaintiffs had no opportunity to consider and test through the normal discovery process, including depositions. *See Qualcomm,* 2018 WL 6597273 at *5 (imposing evidentiary cut-off as the "FTC would be prejudiced by Qualcomm's attempt to introduce evidence of post-discovery events" because, among other reasons, the "[plaintiffs] have never had the opportunity to depose anyone about the documents.").[5]

---

[4] With the limitations described in *supra* fn. 1.
[5] It is no answer for Google to say Plaintiffs could move the Court for additional discovery based on post-January 1, 2022 documents or data that Google discloses before trial. Such an ad-hoc approach would disrupt Plaintiffs' ability to prepare for trial and be unworkable for both the parties and the Court in a case

Indeed, under Rule 26(a) and (e), Google is required to produce responsive documents and supplement its document productions up through and potentially past the close of fact discovery.[6] Google cannot refuse to provide documents required by Rule 26(a) or (e) and then use those same documents to an unfair advantage in expert reports, at summary judgment, or at trial. *See* Fed. R. Civ. P. 37(e) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Dayton Valley Investors, LLC v. Union Pacific R. Co.*, 2010 WL 3829219, at *3 (D. Nev. Sept. 24, 2010) (Rule 26(e) "creates a duty to supplement, not a right" and does not "create a loophole" to be exploited by a party to its advantage).

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order barring Google from offering as evidence at summary judgment, trial, or otherwise, documents and data created after December 31, 2021, or that came into Google's possession, custody, or control, after December 31, 2021, but which were not produced during fact discovery, unless (a) the documents were produced before May 23, 2022, in response to one of Plaintiffs discovery requests, (b) the documents were produced pursuant to a Court order, or (c) the parties otherwise agree the documents should be excepted. The Court should further order Google to complete its

---

of this size and complexity. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("A party might be able to scramble to make up for the delay, but last-minute discovery may disrupt other plans. And if the discovery cutoff has passed, the party cannot conduct discovery without a court order permitting extension. This in turn threatens whether a scheduled trial date is viable. And it impairs the ability of every trial court to manage its docket.").

[6] *Pizza Pub. Co. v. Tricon Glob. Restaurants, Inc.*, 2000 WL 1457010, at *1 (S.D.N.Y. Sept. 29, 2000) (holding that, under Rule 26(e), defendant was required to produce documents created or acquired after the close of fact discovery); *United States v. Dish Network, L.L.C.*, 2016 WL 29244, at *7 (C.D. Ill. Jan. 4, 2016) (same).

productions in response to all outstanding discovery requests by May 23, 2022, unless otherwise ordered by the Court.

To assist the Court, Plaintiffs have included a proposed order. *See* Ex. A.

### B.      Plaintiff States' Position Statement

An evidentiary cut-off is necessary to promote judicial economy, fairness, and certainty for the Parties. More than 15 months will pass between the end of fact discovery and the beginning of trial. During those 15 months, Google will have the ability to create documents and massive amounts of data anytime it wishes. By contrast, the Plaintiffs States will be without the ability to seek documents, data, and discovery responses that they had during the recently-expired period of fact discovery. For Google to retain the ability to offer evidence created after the date by which it completes the production of pending discovery requests would be unreasonable and unfair to the administration of justice.

It is no answer to assert that the interests of Plaintiffs can be adequately protected by future evidentiary objections and motions in *limine*. No doubt both will come into play, but rather than forcing Plaintiff States to chase an ever-shifting collection of Google-created documents and data, the better process is for the Court to use its inherent authority to manage the discovery process to determine now what of Google's newly created documents and data will be usable. A prophylactic evidentiary cut-off will both be in the interest of judicial economy and fundamental fairness.

Indeed, the Court's ability to enter the requested order is established under its authority to manage the discovery process. Courts have broad authority to manage discovery as they see fit. *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002). Pursuant to their discretion, courts have set evidentiary cut-off dates for the use of documents acquired or created post-discovery. *See, e.g., Rosie D. v. Romney*, 410 F. Supp. 2d 18, 30 n.4 (D. Mass. 2006) (concluding "[p]ermitting

[d]efendants to offer evidence acquired after the close of discovery would leave [p]laintiffs unprepared to challenge the newly acquired materials."). In doing so, courts intend to reduce the possibility of surprise and ensure that parties do not have new information sprung upon them and undermine the fairness of the proceedings. *J.S.X. through D.S.X. v. Foxhoven*, 2019 WL 13167116, at *2 (S.D. Iowa Mar. 13, 2019).

Here, the opportunity for surprise and prejudice is magnified because of the time between the close of fact discovery and trial. The Parties mutual knowledge of the relevant facts is necessary for a proper litigation. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Without an evidentiary cut-off, however, Google is the only party with access to the records and data that it creates between the close of fact discovery and trial. Allowing Google to use evidence for which only one party has access is unreasonable and unfair.

### C.      Google's Position Statement

Plaintiffs' proposed "evidentiary cut-off" contemplates that "[a]t trial, Google shall only offer as evidence, or otherwise rely upon, documents or data that were created by Google, or that came into Google's possession, custody, or control, on or before December 31, 2021, and that were produced during fact discovery."  Mar. 18, 2022 Ltr. from D. Aguilar (Ex. B) at 1.  In other words, even though Plaintiffs have conducted extensive discovery of Google since December 31, 2021—including serving eight additional sets of requests for production during that period— Google would not be permitted to rely on non-public documents or data that postdate the end of last year, irrespective of when they were produced.  And even though trial in this case is 16 months away, Google would not be permitted to offer as evidence any developments that may occur in the interim, regardless of whether the parties or the Court deem them necessary to a complete presentation of the issues.  Furthermore, Plaintiffs apparently envision that their "evidentiary cut-off" would apply only to Google, as Plaintiffs purport to reserve for themselves

the right to continue seeking any further documents from Google or third parties through "a motion to compel, threat of a motion to compel, or order of the Court," even if those documents were created after December 31, 2021. *Id.* at 1-2. The proposed "evidentiary cut-off" is overbroad and unnecessary, and Google respectfully requests that the Court decline to enter it.[7]

> 1. **Questions of Admissibility Should Be Resolved When They Arise and in Accordance with Governing Law, Not Based on an Arbitrary "Cut-Off" Date**

There is no need for an absolute "evidentiary cut-off," over a year before trial, because the Court can resolve any questions about the admissibility of evidence that may arise in the ordinary course of pre-trial proceedings. At present there is no concrete dispute relating to the allegedly untimely disclosure of documents or data, but if such a dispute arises in the future, the parties and the Court can address it through reference to any applicable rules and case law. *See, e.g.*, Fed. R. Civ. P. 37(c)(1) (providing that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"). In some cases, of course, documents that are not disclosed in a timely manner will be excluded during the pre-trial process. *See, e.g.*, *Norden v. Samper*, 544 F. Supp. 2d 43, 49-51 (D.D.C. 2008) (concluding that "all testimony and evidence relating to" a particular letter should "be stricken from the record" because, among other things, the letter was "never produced by either party in discovery, although their respective document requests to each other would have encompassed it," there was no "substantial justification" for

---

[7] The only proposed "evidentiary cut-off" order that Plaintiffs provided to Google is the March 18, 2022 version submitted as Ex. A, and Plaintiffs have not indicated that they intend to submit a different proposal with this filing. After the parties conferred about the proposed order, Google told Plaintiffs on March 30, 2022 that it would not agree to the proposal. Plaintiffs did not raise the issue again until May 2, 2022, when Plaintiffs referenced their earlier "evidentiary cut-off" proposal and "reserve[d] the right to raise the issue with the Court." May 2, 2022 Email from D. Aguilar.

the failure to produce the letter in a timely manner, and "allowing the letter to be part of the record this late in the case would prejudice" the opposing party).  Under other circumstances, however, a purportedly untimely production of documents or data may be substantially justified, or remedies other than exclusion may be more appropriate.  *See, e.g.*, *United States ex rel. Morsell v. NortonLifeLock, Inc.*,  2021 WL 7540297, at *13 (D.D.C. Aug. 25, 2021) (concluding that "[t]he Court will not preclude [the producing party] from using" certain documents even though the opposing party "was prevented from using these documents in its depositions and motions" because, among other things, the opposing party "has not provided specifics about the harm it would face" beyond what "could be said for any late-disclosed documents or witnesses," and if the opposing party "believes that [a particular] deposition should be reopened or that other measures should be taken to properly prepare for trial relating to these documents, [the opposing party] may seek leave as appropriate").

Rather than address any issues, if any arise, regarding discovery of facts or information generated after the close of fact discovery in the context of a specific dispute, Plaintiffs seek a blanket order that any disclosure of documents or data by Google that they would characterize as untimely should inherently be subject to a particular sanction, without consideration of the content of the documents or data in question; the reason for the timing of the disclosure; or the prejudice to Plaintiffs.  Although an order to that effect would be improper standing alone, the proposed "evidentiary cut-off" order sweeps even more broadly, as it apparently would apply not only to documents or data that arguably should have been produced earlier, but also to disclosures that would otherwise be considered timely.  For example, Plaintiffs' proposed order purports to preclude Google's reliance on documents or data created after December 31, 2021, even if those documents or data were produced prior to the close of fact discovery.  The

proposed order also could be read to preclude Google's reliance on documents and data that the CMO specifically provides should be produced following the service of expert reports, rather than at any earlier date. *See, e.g.*, Am. Scheduling & Case Mgmt. Order (ECF No. 108-1) at 18 (requiring disclosure of, among other things, "a list of all documents relied upon by the expert in forming any opinions in his or her report, including Bates numbers of documents previously produced" and "for all calculations appearing in the report, all data and programs underlying the calculations"). And the proposed order envisions that the parties and the Court effectively will ignore any events or developments that may occur in the period from January 2022 through September 2023, regardless of whether the Court or the parties may conclude that they are necessary to a full understanding or resolution of the issues. There is no justification for sweeping away all of the rules and principles that govern the timing of document and data disclosures and that would allow for the fact-specific adjudication of any disputes about the admissibility of evidence.

At this time, it is not possible to predict whether there will be any disputes about the admissibility of evidence that a party purportedly did not disclose in a timely manner. This uncertainty is often present during the time between the close of discovery and the beginning of trial, and it should not be resolved by entering an Order that would have the effect of preemptively ruling against Google and in favor of Plaintiffs on a wide range potential questions of admissibility that have not even arisen yet, and may never arise at all.

### 2. There Is No Factual Basis for the Proposed Order

The only factual basis that Plaintiffs offered for their "evidentiary cut-off" proposal during the meet-and-confer process centered on the December 31, 2021 collection date used by Google in responding to certain custodial "refresh" requests. Throughout the last few months of 2021, Plaintiffs served a series of refresh requests that called for production of a substantial

volume of emails and other documents created by dozens of custodians in the period following the prior custodial collections in early 2021.  Plaintiffs argued at the time that those custodial refreshes would ensure that they had recently created custodial documents in hand when conducting depositions.  *See, e.g.*, Oct. 28, 2021 Hr'g Tr. at 62:1-8; Oct. 26, 2021 JSR at 7-8.  In connection with some, but not all, of the refresh requests, Plaintiffs requested that Google produce all responsive documents created through the end of February 2022 no later than March 14, 2022.  *See* Jan. 7, 2022 Ltr. from D. Aguilar at 2.  Google explained that two weeks is not enough time to collect all of the ESI recently generated by dozens of custodians in the ordinary course of business; apply search terms to generate a review set; review the tens of thousands of resulting documents for responsiveness and privilege; and complete production.  See Jan. 21, 2022 Ltr. from F. Rubinstein at 2.  Google instead proposed that it collect the ESI generated by the custodians in question through the end of December 2021 and produce the responsive materials on a rolling basis in January and February 2022.  *See id.*  Plaintiffs did not reject this counterproposal or seek relief from the Court, and Google completed the refresh productions in the manner indicated.

As Google explained to Plaintiffs during and after the meet and confer on their proposed order, the collection date used to "refresh" a particular subset of document requests does not give rise to an "evidentiary cut-off" date.  *See* Mar. 30, 2022 Email from G. Safty.  There is nothing unusual about the fact that Google's collection of the vast amount of custodial ESI requested by Plaintiffs was completed before the end of discovery, particularly given Plaintiffs' stated preference to have a given custodian's documents in hand when taking that person's deposition. Because of Google's willingness to "refresh" so many of its custodial productions during the fact

discovery period, Plaintiffs have more documents from relatively recent time periods than ordinarily would be expected in a case featuring such a lengthy fact discovery period.

The collection date used for certain custodial refresh productions has no bearing on the multitude of potential issues that Plaintiffs seek to resolve preemptively through their "evidentiary cut-off" order.  For example, Plaintiffs' proposed order seems intended to preclude Google from relying at trial on some technological development that comes to light in late 2022 or a new contract that is signed in early 2023.  If those hypothetical circumstances were to arise, it would make no difference whether Google had produced certain custodial documents created in the first couple months of 2022 instead of using a collection date of December 31, 2021.  As indicated, a dispute about the admissibility of evidence that a party contends was not timely disclosed should be resolved with reference to the particular evidence at issue.  The two-month delta between the parties' positions on a particular subset of refresh requests is not dispositive of a range of unrelated (and at this point purely hypothetical) potential disputes regarding admissibility.

### 3.      There Is No Sound Legal Basis for the Proposed Order

During a meet and confer on March 29, 2022, Plaintiffs indicated that they would not identify for Google any precedent or other authority that purportedly supports their proposed "evidentiary cut-off" date, and they did not do so at any point prior to the filing of this joint submission.  Although Plaintiffs' reticence may be understandable given the unusual and unnecessary nature of their request, it bears mention that there are some instances in which courts have set an "evidentiary cut-off" date.  For instance, in some cases courts have held that a retrial should not feature evidence generated by the parties after the first trial on the basis that "fairness, efficiency, and the need for a coherent record on appeal outweigh any harm caused by" the inevitable "exclusion of some amount of relevant, probative evidence."  *Apple, Inc. v.*

*Samsung Elecs. Co., Ltd.*, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 23, 2013).  In other instances, courts have determined during pre-trial proceedings that evidence generated after the close of fact discovery should be inadmissible in view of concerns about a party "introduc[ing] for the first time at trial issues on which Plaintiffs have not had an opportunity to take discovery or otherwise prepare."  *J.S.X. through D.S.X. v. Foxhaven*, 2019 WL 13167116, at *2 (S.D. Iowa Mar. 13, 2019).

These cases are distinguishable on any number of grounds.  For example, there is a considerable difference between the sweeping prophylactic order that Plaintiffs seek to impose more than a year before trial and a ruling on a motion in limine that is made in view of the actual evidence that came to light after the close of discovery or was not timely disclosed.  In this case, Plaintiffs' proposal deprives the Court of the opportunity to evaluate the nature and probativeness of any such evidence, which undermines at least one potential justification for excluding the evidence.  *See, e.g.*, *Apple*, 2013 WL 5737310, at *2 (relying on Fed. R. Evid. 403 and the Court's inherent authority to "exclude the parties' experts' reliance on certain evidence" created after a particular date); *J.S.X.*, 2019 WL 13167116, at *2 (granting a motion in limine after a litigant expressly stated that its trial testimony "'may involve some new information'" that was not disclosed to its adversary either during fact discovery or sufficiently in advance of trial to permit reopening discovery).  Although Google has not "refreshed" its production of certain custodial documents created thus far in 2022, Plaintiffs have requested and received written discovery responses, deposition testimony, and documents and data that run past the December 31, 2021 "evidentiary cut-off" date that they are attempting to impose on Google.  And even more to the point, Plaintiffs continue to assert that they have an expansive right to move to compel production of additional documents and data after the close of fact discovery,

irrespective of when the requests were served or whether the documents or data at issue were created after the proposed "evidentiary cut-off" date.

For any or all of these reasons, the Court should deny Plaintiffs' requested "evidentiary cut-off" order.

## IV.    The Parties' Dispute Regarding a Proposed Deadline to File Motions to Compel Regarding Fact Discovery Disputes

### A.    U.S. Plaintiffs' Position Statement

The Court should hold that, until August 4, 2022, the parties may file motions to compel to address issues related to fact discovery.[8] A 90-day post-discovery deadline is warranted given the pace of discovery in this case, Google's delayed production of materials responsive to Plaintiffs' RFPs, and delay caused by Google's improper claims of privilege.[9]

Plaintiffs' August 4, 2022 deadline for all remaining motions to compel gives the parties sufficient time to properly negotiate and refine disputes regarding late-filed discovery responses, while still ensuring those disputes are resolved well in advance of summary judgment. The 90-day post-fact-discovery period to file motions to compel is particularly appropriate given Google's dilatory discovery practices. For example, last week Google produced agreements which were requested in Plaintiffs' First Request for Production, to which Google issued its R&Os in *February 2021*. Setting the motion-to-dismiss cutoff at 90 days will permit the parties

---

[8] This deadline would not apply to motions to compel related to expert discovery, and motions to compel filed after the deadline would be allowed for good cause.

[9] The Court has discretion to consider motions to compel filed after the close of fact discovery. *See Barnes v. D.C.*, 289 F.R.D. 1, 5-6 (D.D.C. 2012) ("Courts may, if appropriate, consider motions to compel filed after discovery has closed."); *Lurie v. Mid-Atlantic Permanente Medical Group*, 262 F.R.D. 29, 31 (D.D.C. 2009) (rejecting arguing that motion to compel filed outside the discovery period was untimely and noting that "courts routinely consider motions related to discovery, even though they are filed outside the discovery period.").

to (1) evaluate the discovery responses received near the end of fact discovery, and (2) ensure any deficiencies are addressed.

In addition, on the last day of fact discovery, Google finally produced its completed and revised privilege log clarifying which documents are still withheld on claims of privilege. Similarly, Google has belatedly deprivileged tens of thousands of documents at the very end of fact discovery, including producing 8,232 deprivileged documents on May 7. A 90-day period for motions to compel will permit Plaintiffs to evaluate Google's present claims of privilege and assess which might properly face challenge.

Given that initial expert reports are due June 5, 30 days after the close of fact discovery, time must be allocated to permit the parties (1) to identify areas where fact discovery has been incomplete, (2) to meet and confer, and (3) to move to compel, if necessary. Anything short of 90 days may force the parties to accelerate issues to the Court that could otherwise be resolved through negotiation. In light of Google's significant productions at the end of fact discovery, Plaintiffs' proposal for an August 4 deadline to file any remaining motions to compel is reasonable and necessary to ensure Plaintiffs have enough time to identify deficiencies and raise them with the Court.

In contrast, Google proposes a floating series of 45-day deadlines that are triggered by the date Google served its initial Responses & Objections ("R&Os") to specific discovery requests. This is unworkable for several reasons. First, in practice, Google's proposal bars Plaintiffs from moving to compel materials responsive to any RFP Plaintiffs issued before March 2022. Such a cut off—without advanced notice—would unfairly limit Plaintiffs' ability to complete fact discovery. If Google had wanted to cut off Plaintiffs' right to challenge Google's earlier productions, the company needed to have put Plaintiffs on notice months ago.

Second, Google's production practices make it impossible to discern when Google's production of materials in response to a particular RFP is complete. For example, up to and after the close of fact discovery, Google continued to produce materials without indicating which specific RFP they are responsive to, including 958 documents produced on May 7; 5,329 documents produced on May 4; 3,206 documents produced on April 21; and 22,734 documents produced on April 11. Indeed, Google frequently produces documents responsive to Plaintiffs' "various RFPs." As such, before the close of fact discovery, it has not been possible for Plaintiffs to ascertain which document request had been completed.

Third, Google's proposed deadlines are not clear. Google has regularly produced incomplete responses and sought (and received) permission to provide late responses to certain RFPs. Whether a deadline, under Google's proposal, is based on the initially incomplete response or later supplemented responses would invite litigation and waste the parties' and the Court's time. Fourth, Google's proposed deadlines would fall in early- to mid-June, shortly after a busy period in the case schedule when initial expert reports are due.[10]

For these reasons, Plaintiffs' proposed 90-day deadline to file motions to compel strikes the correct balance between providing the parties sufficient time to resolve disputes, while ensuring that motions to compel are briefed well in advance of summary judgment. Plaintiffs respectfully request the Court order that any remaining motions to compel must be filed by August 4, 2022.

**B.     Plaintiff States' Position Statement**

Plaintiff States agree with and incorporate by reference U.S. Plaintiffs' Position Statement in Section IV.A.

---

[10] Under one reading of Google's current proposal, the DOJ Plaintiffs alone could have eight separate twice-weekly deadlines throughout June.

### C.      Google's Position Statement

At the end of November 2021, the Court allowed Plaintiffs an extra 45 days to complete fact discovery, notwithstanding Google's well-founded objections to the extension and the fact that Plaintiffs had already taken nearly a year of fact discovery in addition to their pre-Complaint investigations.  *See* Nov. 30, 2021 Hr'g Tr. 56:2-3.  The Court cautioned, however, that it would "be hard-pressed to give [Plaintiffs] any more time" beyond the 45-day extension, noting that Plaintiffs have "certainly had a lot of time and opportunity to learn th[e] facts" and should begin "to prioritize what really matters."  *Id.* 55:12-56:5.  Now that discovery has closed, Plaintiffs effectively seek to extend it further by establishing what they characterize as "a 90-day cut-off to file motions to compel after the close of fact discovery, excluding motions related to expert discovery and motions made pursuant to good cause shown."  May 2, 2022 Email from D. Aguilar.  Plaintiffs' proposal unjustifiably undermines the fact discovery deadline, which serves not only to prevent the service of new discovery requests, but also to bring an end to litigation over discovery requests that were served many months earlier.  *See, e.g.*, *United States v. All Assets Held at Bank Julius Bear & Co., Ltd.*, 2019 WL 1167743, at *3 (D.D.C. Mar. 13, 2019) (describing a number of cases in which "motions to compel were denied because they were filed after the close of discovery (or too close to the close of discovery to be resolved prior to the deadline)"); *Bethea v. Comcast*, 218 F.R.D. 328, 331-32 (D.D.C. 2003) (concluding that "[i]t is illogical to deduce that plaintiff would be permitted to file a motion to compel so late in the discovery process that it might not even be fully briefed before the discovery period closed").

### 1.      Any Further Motions to Compel Should Be Filed Promptly and Limited to Recently Served Discovery Requests

Although the Court would be justified in refusing to entertain further motions to compel altogether, Google has offered Plaintiffs a reasonable amount of time to work through recently

served discovery responses and, if necessary, seek relief from the Court.  Specifically, Google

has proposed that any motions to compel filed after the close of fact discovery, by either side,

will be deemed timely if they are filed up to 45 days after service of the responses and objections

to the discovery request at issue.  *See* May 3, 2022 Email from G. Safty.  Discovery has already

stretched for more than 16 months, and Plaintiffs waited until the final weeks to serve a

significant number of requests.  The requests served by Plaintiffs during only the final two

months of fact discovery include:

- Six sets of requests for production, with more than 50 individually numbered requests
  and dozens of additional subparts;

- Six sets of interrogatories consisting of 68 individually numbered requests, many of
  which (impermissibly) contain multiple subparts;

- A total of 55 requests to admit; and

- A Rule 30(b)(6) notice with 20 individually numbered topics and more than 100
  subparts.

Google has served responses and objections to all of those requests, and many of them

have been fully resolved, notwithstanding Google's objections to their timing and scope.  In

some instances, Google has either indicated it does not intend to provide further responses to

those requests or the parties are working through the meet-and-confer process in order to identify

opportunities for compromise.  If any of those requests cannot be resolved, then Plaintiffs should

seek relief within 45 days of Google's service of its initial responses and objections or at a June

2022 status conference.  There is simply no basis to further prolong the process.  *See, e.g.*, *Young

v. Covington & Burling, LLP*, 2011 WL 13274125, at *1 (D.D.C. Feb. 4, 2011) (observing that

"even motions to compel filed within the discovery period can be denied as untimely," such that

"the denial of a motion to compel filed after the close of discovery is well within [the Court's] discretion" (emphasis in original)).[11]

> ## 2. Plaintiffs Should Not Be Permitted to File Further Motions to Compel Arising from Requests That Google Responded to Months Ago

Plaintiffs have rejected Google's offer of a reasonable opportunity to follow up on recently served requests and instead seek an order that would be tantamount to a 90-day extension of fact discovery for any and all discovery requests.  Plaintiffs have served 20 sets of requests for production over the last 16 months, and in recent weeks they have attempted to shoehorn new demands into that sprawling network of requests and to reopen old agreements that resolved those requests months ago.  Consider the following partial list of recent examples of requests that Plaintiffs have attempted to reopen, agreements they have attempted to rescind, or challenges that they have attempted to reserve the right to raise in an untimely manner:

- Two weeks ago, Plaintiffs asked Google for the first time to apply additional search terms to certain ESI collected in response to the DOJ Plaintiffs' Second Set of Requests for Production, which were served in January 2021.  Apr. 26, 2022 Ltr. from D. Aguilar.  The parties reached agreement on the appropriate search terms approximately a year ago, and Google substantially completed production of the responsive documents identified using the agreed-upon parameters approximately eight months ago.

- Two weeks ago, Plaintiffs purported to "reserve [the] right" to raise "any privilege disputes with the Court after May 6," Apr. 26, 2022 Email from L. Willard, even

---

[11] For its part, Google served one set of interrogatories with 29 individually numbered requests during the final two months of fact discovery.  If it proves necessary for Google to enforce its own requests, then Google will adhere to the same timeline it has proposed by seeking any necessary relief either within 45 days of Plaintiffs' service of their initial responses and objections or at a status conference set for June 2022.

though there are no pending challenges to particular log entries apart from those

encompassed by Plaintiffs' March 8, 2022 Motion.  Nearly half of the privilege log

entries served in connection with this matter stem from Plaintiffs' pre-Complaint

CIDs, and Plaintiffs have had those logs for approximately 18 months.  The majority

of the documents logged during the fact discovery period were included on logs

served by the end of September 2021, and almost 90% were included on logs served

by the end of December 2021.[12]

- Last week, Plaintiffs requested for the first time "that Google refresh all its RFP

  supplementations thru April 15, 2022."  May 2, 2022 Email from D. Aguilar.

  Although Plaintiffs did not explain what exactly is encompassed by this one-sentence

  request, they presumably intended to convey that Google should collect all of the ESI

  created by dozens of custodians over the last several months, apply the search terms

  used in prior rounds of "refresh" requests, and produce all responsive documents

  thereby identified.

With respect to these last-minute requests and others in the same vein, there is no basis to

allow Plaintiffs even more time to raise further demands and seek relief from the Court if Google

does not agree to such belated and expansive discovery.  Plaintiffs have had every opportunity to

---

[12] As with the discovery requests recently served by Plaintiffs, Google has acknowledged that Plaintiffs are differently situated with respect to the relatively small number of log entries that they are now receiving for the first time.  *See* May 2, 2022 Email from G. Safty.  Plaintiffs may still be receiving new log entries at this point only because of the timing of their own requests, including their requests to "refresh" RFPs served last year and the service of new RFPs that call for the large-scale reviews of documents identified using search terms.  Nevertheless, Google has allowed, and will continue to allow, a reasonable opportunity for Plaintiffs to ask questions about recently served log entries, just as it has offered a reasonable amount of time for Plaintiffs to follow up on recently served discovery requests.  It is a different matter altogether, however, when Plaintiffs have had the log entries in question for at least several months, and have had at least several opportunities to raise any purported issues with Google and, if necessary, seek relief from the Court.

raise their discovery disputes with the Court, including through the status conferences that the Court has held at least once a month since fact discovery commenced 16 months ago. Plaintiffs should not be given carte blanche to file any motion to compel of their choosing for the next 90 days, without regard to whether the request at issue was served months ago or the purported dispute reasonably could have been raised before the end of fact discovery. Over the next several weeks, the parties should focus on expeditiously resolving the significant number of requests that Plaintiffs served in the final weeks of fact discovery. Any purported disputes that stem from responses and objections that Google served more than 45 days ago should be deemed untimely. *See Barnes v. District of Columbia*, 289 F.R.D. 1, 19 (D.D.C. 2012) (observing that although the Court may "exercise its discretion to permit motions to compel coming after the close of discovery," the Court is also "perfectly justified in denying an untimely motion if it comes too late").

## V.     The Parties' Dispute Regarding Google Display Network Data

### A.     U.S. Plaintiffs' Position Statement

The Court should order Google to produce the information and materials called for by Plaintiffs' Interrogatories 27 and 28 (the "GDN Interrogatories") and Plaintiffs' Eleventh Request for Production, Request No. 2 (the "GDN RFP"). This evidence relates directly to Google's ongoing efforts to calculate its share of the market for general search services.

#### 1.     Background

In addition to its search and search advertising businesses, Google operates a unit that sells "display advertisements" for placement on third-party websites. These display advertisements are shown to consumers on websites across the Internet in conjunction with content, such as articles and videos. They include, for example, ads that may appear on the side

or top of a newspaper's website. Google refers to the third parties for which it manages and sells display ad inventory as the "Google Display Network" or "GDN."

Importantly for purposes of this litigation, Google tracks information regarding visits to its GDN partners' websites. This information includes detailed data on where users come from. Google labels the website containing the link a user clicked on to reach the GDN partner's website as the "referrer" of that user's traffic. Google aggregates information on these "referrals" across visits to its many GDN partners' websites into a single, large dataset (the "GDN Referrer Data"). Taken in the aggregate, the GDN Referrer Data shows the points of origin for traffic to GDN partner websites—including whether the point of origin is a general search engine, and if so, which one.

Based on the available evidence, Google employees routinely use GDN Referrer Data to estimate the market shares of general search engines, including Google itself.[13] In an email to colleagues, a Finance Director for Google's search business called the GDN Referrer Data "███

███████████████████████████████████"[14] The data appear in recurring reports.[15] Google also makes the data available to employees through "dashboards"— internal resources resembling intranet pages that allow employees to access, manipulate, and display the data. Two Google documents refer to the data as ████████████ for search

---

[13] Plaintiffs interpret Google's use of this information as calculating its share of the market for general search services. Google's documents often refer to these figures as "search share" or "query share" because of the company's longstanding effort to avoid the term "market share" in internal correspondence.

[14] GOOG-DOJ-16745537.

[15] *See, e.g.*, GOOG-DOJ-03597654 at -668 (████████████████████████████████████ ██████████████████████████ based on GDN Referrer Data).

engine market shares.[16] After months of delay, Google eventually produced the raw GDN
Referrer Data in response to an RFP.

### 2. The Evidence Requested by the GDN Interrogatories and GDN RFP Is Highly Relevant to Core Issues in This Case

Shortly after receiving and reviewing Google's initial production of the raw GDN
Referrer Data, Plaintiffs issued the GDN Interrogatories and GDN RFP, seeking information
regarding how Google employees have *used* and *relied on* these data to estimate figures relevant
to search engine market shares.[17] Interrogatory 27 asks Google (1) to identify each dashboard,
dataset, and recurring report in which Google's employees have used and relied on the data to
perform calculations relevant to market shares, and (2) to indicate the period and variables
covered by these dashboards, datasets, and reports.[18] Interrogatory 28 asks Google to describe
the formulas and processes that its employees applied to the raw GDN Referrer Data to calculate
the figures in these dashboards, datasets, and reports.[19] The GDN RFP calls for Google to

---

[16] In one exchange, a member of Google's finance team responsible for analyzing Android partnership agreements asked colleagues what he should use as ███████████████████████████ ██████  In response, the individual who is now Google's Finance Director for Search Analytics and Product Finance responded: ████████████████████████ based on GDN Referrer Data. GOOG-DOJ-16076886; *see also* GOOG-DOJ-08613813, Tools tab, cell G26 (providing descriptions of various data sources and describing █████████ ████"

[17] Google's initial production of GDN Referrer Data included data for the last three years.

[18] Interrogatory 27 states: "Identify, from 2008 to present, each dashboard, dataset, and recurring report in which Google or any of its employees used GDN data (or any predecessor to GDN data) to estimate the number of queries, clicks, or pageviews associated with any search engine (including Google); the share of queries, clicks, or pageviews associated with any search engine; or the number or share of any particular type of queries, clicks, or pageviews associated with any search engine (e.g., queries in a given country or queries on a given platform, device, or browser). For each dashboard, dataset, and recurring report, identify the Bates numbers of the materials where applicable, and indicate the time period that the associated data covered, the format in which the data were presented or available, and the dimensions (e.g. country, platform, device, browser) across which the data were presented or available."

[19] Interrogatory 28 states: "For each dashboard, dataset, and recurring report identified in response to Interrogatory No. 27 that estimated one or more search engines' share of any set of queries, clicks, or pageviews, specify the formulas and processes that Google or its employees used to estimate these shares (e.g. what numbers were used as the numerator and denominator for such shares, whether and how any spam was filtered, whether any weighting was performed, and how referrals were assigned to countries when calculating country-specific shares), including for purposes of the shares available in ██████████"

produce the documents and data in which its employees have performed these calculations.[20] Taken together, these requests seek materials in which Google employees have used the GDN Referrer Data to measure and use search engine market shares and information regarding how they have done so.

Google's share of the market for general search services is a core issue in this litigation. *See Geneva Pharm. Tech. Corp. v. Barr Laboratories Inc.*, 386 F.3d 485, 500 (2d Cir. 2004) (explaining that market shares are "highly relevant to the determination of monopoly power"). Google employees' use of and reliance on the GDN Referrer Data to estimate the shares of Google and other general search engines are highly relevant to this issue. Nevertheless, Google refuses to provide any information in response to the GDN Interrogatories or any materials in response to the GDN RFP. After learning of Google's position, Plaintiffs requested meet-and-confers to discuss a path forward on these requests. Google did not agree to participate.

### 3.  Google's Objections to the GDN Interrogatories and GDN RFP Lack Merit

Google does not dispute that the evidence called for by these requests is directly relevant to this case. Instead, Google claims that the requests are untimely, duplicative of past requests, and overbroad. For the reasons discussed below, these objections do not provide a basis for Google to withhold this highly relevant evidence.

---

███████████████████████████ (e.g. GOOG-DOJ-24082359, GOOG1-00000595), and ███████████████ (e.g. GOOG-DOJ-03597654)."

[20] *See* Plaintiffs' Eleventh Request for Production of Documents to Defendant Google LLC, Request No. 2 (March 24, 2022) ("From January 1, 2008, to the present, produce all documents and data in which Google or any of its employees used GDN data (or any predecessor data) to estimate the number of queries, clicks, or pageviews associated with any search engine (including Google and other search engines); the share of queries, clicks, or pageviews associated with any search engine; or the number or share of any particular type of queries, clicks, or pageviews associated with any search engine (e.g., queries in a given country or queries on a given platform, device, or browser)").

*First*, Google's timeliness objection ignores the months of delay that preceded Google's production of the raw GDN Referrer Data that led to the present requests. Plaintiffs initially requested the data underlying Google's internal dashboards (which include the GDN Referrer Data) on August 13, 2021.[21] After clarifying discussions in November, Google did not begin producing the GDN Referrer Data until March 16, 2022, more than seven months after Plaintiffs' original RFP. This delayed Plaintiffs' ability to review the data and determine whether follow-up requests were necessary.

On March 24, just *eight days* after Google began producing the raw data itself, Plaintiffs issued the GDN RFP requesting materials in which Google employees have used and relied on the GDN Referrer Data. On March 28, just *four days* later, Plaintiffs issued the GDN Interrogatories seeking additional information on how the data were used. These requests were issued 43 and 39 days, respectively, before the end of fact discovery. They are, without question, timely. To the extent that Google seeks to truncate fact discovery—arguing that it somehow closed before May 6, 2022—the Court should reject such a position as inconsistent with the CMO. To the extent that Google objects to the Plaintiffs' GDN requests as not being issued earlier in discovery, this should also be rejected because (1) the Plaintiffs had no obligation to structure their discovery in the manner described by Google, and (2) the reason the GDN requests were issued in March 2022 was because of Google's own months-long delay in producing the raw GDN Referrer Data.[22]

---

[21] Plaintiffs' Fifth Request for Production of Documents to Defendant Google LLC, Request No. 16. (August 13, 2021).

[22] Google further contends that Plaintiffs' requests are untimely because certain documents that it produced during the DOJ's investigation that preceded this litigation contained market share information based on GDN Referrer Data. But the fact that individual documents among the millions produced by Google contained some of this information does not bar Plaintiffs from issuing additional discovery requests for other materials in the later part of fact discovery.

*Second*, Google provides no support for its contention that Plaintiffs' requests are overbroad. The evidence produced thus far indicates that Google's use of the GDN Referrer Data is highly relevant to the question of Google's market share. Google has not identified any subset of the requested information and materials that is irrelevant to this issue. Google suggests it may believe that the date range of the requests (which captures materials beginning in 2008) is overbroad, but Google's sustained market share over a long period is relevant to the determination of monopoly power. *See United States v. Dentsply Intern., Inc.*, 399 F.3d 181, 188 (3d Cir. 2005) (finding monopoly power where the defendant had "held its dominant share for more than ten years"). Upon receiving Google's breadth objection, Plaintiffs requested that Google provide additional information on the scope of materials that Google would be required to produce under the GDN RFP, such as a "hit count" or the estimated total file size of potentially responsive documents. Google declined to provide this information. Accordingly, the Court should reject Google's overbreadth argument.

*Third,* Google's objection that Plaintiffs' requests are duplicative of past requests fails because, to Plaintiffs' knowledge, Google has never conducted a targeted search for materials in which employees have used the GDN Referrer Data. Google points to search strings that it used to retrieve materials in response to past discovery requests in this litigation and in the preceding DOJ investigation, but none of these strings include terms directly related to the GDN Referrer Data. And Plaintiffs are not aware of Google performing a manual collection of these materials by means other than search terms.[23] Certainly, some materials responsive to the GDN RFP were

---

[23] Google also claims that the GDN Interrogatories call for information that is duplicative of certain contextual information that it provided when it produced the raw GDN Referrer Data. It points specifically to a letter in which it explained how DOJ could calculate shares based on these data. But to the extent this letter discusses materials in which Google employees have used the data, the letter only addresses the examples identified by DOJ rather than the full scope of materials covered by the GDN Interrogatories. The letter also does not provide specific information called for in the GDN

captured by searches that Google conducted in response to past requests. This does not, however, foreclose Plaintiffs from later issuing targeted requests for a complete set of these materials. Such logic would foreclose any follow-on requests once document review had begun. Upon receiving Google's objection, Plaintiffs asked Google to identify the Bates numbers of materials responsive to the GDN RFP that Google had previously produced in response to other requests. Google declined to identify these materials. Thus, the Court should reject Google's duplication argument.

For the foregoing reasons, the Court should order Google to produce the information and materials called for by the GDN Interrogatories and the GDN RFP.

### B.      Google's Position Statement

DOJ Plaintiffs have sought and obtained discovery on the issue of Google's market share for more than two years, dating to the beginning of their pre-Complaint investigation in 2019. This dispute concerns a narrow aspect of this discovery that DOJ Plaintiffs refer to as GDN data. The Google Display Network (GDN) is a set of third-party websites that have contracted to display Google ads with content contained on their webpages.  When a user visits a GDN webpage with Google ads, the GDN site provides Google with information about the website that the user visited immediately prior to viewing the page with Google ads, called the referrer site.  The referrer information can be used to calculate shares for any set of referrer sites, including search engines (*i.e.*, for the sites in the GDN network, the fraction of users that were referred to such websites by each search engine). DOJ Plaintiffs have received extensive discovery on GDN data to date, including documents, deposition testimony, written correspondence and interrogatory responses, and daily GDN data from 2008 to the present.

---

Interrogatories, such as the date range and variables covered by each dashboard, dataset, and recurring report, and the formulas and processes used to calculate the information that these sources contain.

Now, at the close of fact discovery, DOJ Plaintiffs seek additional documents and interrogatory responses regarding GDN data covering a 14-year period. The Court should reject DOJ Plaintiffs' document requests and interrogatories as unduly burdensome, untimely, and duplicative of discovery already taken in this matter.

### 1.      Background

In October 2021, DOJ Plaintiffs began deposing witnesses about documents reflecting use of GDN data to calculate search engine share of GDN referrals.[24]  Plaintiffs subsequently sought additional specific discovery relating to GDN data, and in turn Google has provided substantial information, data and documents on GDN for more than six months. The topic of Google's use of GDN data as well as the data itself has been extensively covered in discovery up to this point, including:

- **Civil Investigative Demands**: Google first produced documents relating to GDN data during DOJ's pre-Complaint investigation, including as part of the set of documents that DOJ requested in 2019 that were previously produced to the Federal Trade Commission approximately a decade ago.  In addition, Google agreed during the investigation to apply broad search terms directed to "market shares" and related topics over the files of dozens of custodians.  Those search terms and others captured documents relating to GDN data (among many other things) that were produced in 2020, before the Complaints were filed.

- **Initial Search terms and custodians:** Google produced millions of documents as a result of the parties' initial agreement on search terms and custodians. This agreement included search terms on "market shares" that were applied to dozens of custodians.

---

[24] *E.g.*, Oct. 6, 2021 Dep. Tr. at 89, 90, 93.

A search for "(GDN or ███████ or ███████) and (share or click or query)" in the documents produced to Plaintiffs in this case results in approximately 120,000 documents.[25]

- **Fact deposition testimony:** Plaintiffs elicited deposition testimony about GDN data from at least seven Google deponents.[26]

- **Rule 30(b)(6) deposition testimony:** Plaintiffs inquired about GDN data during three 30(b)(6) depositions.[27]

- **Subsequent RFPs:** Google produced documents in response to requests for specific GDN-related reports referenced in DOJ Plaintiffs' Eighth RFP Nos. 1-4.

- **Data productions:** Google produced GDN data found in current and deprecated dashboards (███████ and ███████) as well as data collected directly from data logs in response to DOJ Plaintiffs' request for GDN data for every day from 2008 through 2022.

- **Interrogatories:** Google produced a written interrogatory response on this topic on April 27, 2022 (Contention Interrogatory 27 regarding potential biases in GDN referrer data).

- **Written correspondence:** Google addressed this topic in substantive written correspondence after a 30(b)(6) deposition in fall 2021, providing detail on specific

---

[25] ███████ is an internal Google dashboard containing GDN data. ███████ is a predecessor dashboard to ███████.

[26] *E.g.*, Dec. 15, 2021 Dep. Tr. at 250-52; Jan. 28, 2022 Dep. Tr. at 232; Feb. 10, 2022 Dep. Tr. at 430-31; Feb. 17, 2022 Dep. Tr. at 479-480; Mar. 1, 2022 Dep. Tr. at 61-63; Mar. 30, 2022 Dep. Tr. at 48-49; May 6, 2022 Dep. Tr. at 188.

[27] *E.g.*, Oct. 6, 2021 Dep. Tr. at 89, 90, 93; Oct. 19, 2021 Dep. Tr. at 29-38; Apr. 29, 2022 Dep. Tr. at 124-172.

uses of GDN data.  And in March 2022, Google explained in written correspondence how Google calculated GDN shares in certain dashboards and reports.

Despite all of this discovery, DOJ Plaintiffs waited until the end of March to issue new document requests for all documents related to GDN data and new interrogatories covering all instances in which any employee used GDN data to calculate shares of queries, clicks, or pageviews.

- **DOJ Plaintiffs' Eleventh RFP No. 2 (March 24, 2022):** Produce all documents and data in which any Google employee used GDN data to estimate any type of share.[28]

- **DOJ Plaintiffs' Interrogatory No. 27 (March 28, 2022):** Identify each dataset and recurring report in which any Google employee used GDN data to estimate any type of share as well as the time period covered and the fields.[29]

- **DOJ Plaintiffs' Interrogatory No. 28 (March 28, 2022):** For each dataset and report identified, list the formulas and processes used to estimate shares.[30]

---

[28] **DOJ Plaintiffs' Eleventh RFP No. 2 (March 24, 2022):** "From January 1, 2008, to the present, produce all documents and data in which Google or any of its employees used GDN data (or any predecessor data) to estimate the number of queries, clicks, or pageviews associated with any search engine (including Google and other search engines); the share of queries, clicks, or pageviews associated with any search engine; or the number or share of any particular type of queries, clicks, or pageviews associated with any search engine (e.g., queries in a given country or queries on a given platform, device, or browser)."

[29] **DOJ Plaintiffs' Interrogatory No. 27 (March 28, 2022):**  "Identify, from 2008 to present, each dashboard, dataset, and recurring report in which Google or any of its employees used GDN data (or any predecessor to GDN data) to estimate the number of queries, clicks, or pageviews associated with any search engine (including Google); the share of queries, clicks, or pageviews associated with any search engine; or the number or share of any particular type of queries, clicks, or pageviews associated with any search engine (e.g., queries in a given country or queries on a given platform, device, or browser). For each dashboard, dataset, and recurring report, identify the Bates numbers of the materials where applicable, and indicate the time period that the associated data covered, the format in which the data were presented or available, and the dimensions (e.g. country, platform, device, browser) across which the data were presented or available."

[30] **DOJ Plaintiffs' Interrogatory No. 28 (March 28, 2022):**  "For each dashboard, dataset, and recurring report identified in response to Interrogatory No. 27 that estimated one or more search engines' share of any set of queries, clicks, or pageviews, specify the formulas and processes that Google or its employees used to estimate these shares (e.g. what numbers were used as the numerator and denominator for such

In essence, DOJ Plaintiffs now want Google to identify every single instance over a 14-year period when any Google employee calculated GDN referrer shares and to provide all related documents and data.

### 2.    The Requests are Unduly Burdensome, Duplicative, and Untimely

First, the requests are overbroad and unduly burdensome.  DOJ Plaintiffs seek information about any Google employee's use of GDN referrer data, including from dashboards such as the ▮▮▮▮▮▮▮ dashboard.  Google estimates that at least 600 entities (*i.e.*, employees and aliases that represent entire groups of employees) have access to the ▮▮▮▮▮ database.  Google cannot possibly account for each employee's use of that data as requested in DOJ Plaintiffs' interrogatories.  DOJ Plaintiffs also seek, in the Eleventh RFP, "all documents and data" relating to this topic.  Far from the targeted requests that DOJ Plaintiffs told the Court a few weeks ago were "extremely narrow,"[31] DOJ Plaintiffs would have Google begin a new round of search term and custodian negotiations and begin interviewing a broad set of employees to respond to the RFPs and interrogatories after the close of fact discovery.

Second, DOJ Plaintiffs' document request and interrogatories are duplicative of the voluminous discovery taken to date. As discussed above, Google has already provided extensive information about GDN data through document and data productions, deposition testimony, and written discovery. Through discovery taken to date, DOJ Plaintiffs have multiple productions of

---

shares, whether and how any spam was filtered, whether any weighting was performed, and how referrals were assigned to countries when calculating country-specific shares), including for purposes of the shares available in ▮▮▮▮▮▮▮ (e.g. GOOG-DOJ-24082359, GOOG1-00000595), and ▮▮▮▮▮▮▮▮▮▮▮ (e.g. GOOG-DOJ-03597654)."

[31] Apr. 8, 2022 Hr'g Tr. at 6:13-23 ("THE COURT: "[I]t seems that there have been additional requests for production that were issued since our last time together.  It looks like the 10th, 11th, and 12th sets of requests for production.  They're obviously not due yet, but I'm curious what those look like and are we going to run into issues with those potentially, given how late they're being -- or the timing of which they're being issued.  MR. DINTZER: They are extremely narrow, Your Honor.")

GDN data from dashboards and logs, including daily data back to 2008, the deposition testimony of numerous witnesses, and written responses addressing the calculation of shares using GDN data and potential biases in the data as well as tens of thousands of documents on the topic across the many custodians whose files were searched for market share related information. Any additional discovery will be unnecessarily duplicative of discovery taken to date.

Third, these requests are untimely. Many of the documents cited by Plaintiffs in their recent correspondence with Google over this dispute were produced to DOJ *more than two years ago*. Some of the very first documents produced during the pre-Complaint investigation and that were originally produced to the Federal Trade Commission approximately 10 years ago covered GDN data used to calculate shares. Certainly, DOJ Plaintiffs were well aware of these documents when they introduced them in deposition in October 2021. Yet DOJ Plaintiffs waited until a month before the close of fact discovery to begin anew with these broad requests. Further, the breadth of these requests would conceivably require weeks or months of additional time and effort to negotiate search parameters, collect and review documents, and attempt to identify every instance over the past 14 years when any employee at Google might have used GDN data to calculate shares. DOJ Plaintiffs could easily have issued these types of broad requests much earlier in the litigation; instead, they decided to wait until the very end of fact discovery. There is no justification for the delay.

For the foregoing reasons, the Court should deny Plaintiffs' request.

Dated: May 10, 2022

Respectfully submitted,

By:_____/s/ Kenneth M. Dintzer_____
Kenneth M. Dintzer
Karl E. Herrmann
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States of America*

By:_____/s/ Bret Fulkerson_____
Bret Fulkerson, Deputy Chief, Antitrust Division
Kelsey Paine, Assistant Attorney General
Office of the Attorney General, Antitrust Division
300 West 15th Street
Austin, Texas 78701
Bret.Fulkerson@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:_____/s/ Adam Miller_____
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Adam Miller, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Adam.Miller@doj.ca.gov

*Counsel for Plaintiff State of California*

Leslie Rutledge, Attorney General
Johnathan R. Carter, Assistant Attorney General
Office of the Attorney General, State of Arkansas
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Johnathan.Carter@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

Ashley Moody, Attorney General
R. Scott Palmer, Interim Co-Director, Antitrust
Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Erica Sullivan, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Scott.Barnhart@atg.in.gov

*Counsel for Plaintiff State of Indiana*

Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

Austin Knudsen, Attorney General
Rebekah J. French, Assistant Attorney General,
Office of Consumer Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, Montana 59620-0151
Rebekah.french@mt.gov

*Counsel for Plaintiff State of Montana*

Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

By:  /s/ Jonathan B. Sallet
Jonathan B. Sallet, Special Assistant Attorney
General (D.C. Bar No. 336198)
Steven Kaufmann, Deputy Attorney General (D.C.
Bar No. 1022365 inactive)
Diane R. Hazel, First Assistant Attorney General
(D.C. Bar No. 1011531 inactive)
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000
Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Diane.Hazel@coag.gov

*Counsel for Plaintiff State of Colorado*

Joseph Conrad
Office of the Attorney General of Nebraska
Consumer Protection Division
2115 State Capitol Building
Lincoln, NE 68509
402-471-3840
joseph.conrad@nebraska.gov

*Counsel for Plaintiff Nebraska*

Brunn W. (Beau) Roysden III, Solicitor General
Michael S. Catlett, Deputy Solicitor General
Dana R. Vogel, Unit Chief Counsel
Christopher M. Sloot, Assistant Attorney General
Arizona Office of the Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004
Tel: (602) 542-3725
Dana.Vogel@azag.gov

*Counsel for Plaintiff State of Arizona*

42

Max Merrick Miller
Attorney General's Office for the State of Iowa
1305 East Walnut Street, 2nd Floor
Des Moines, IA 50319
(515) 281-5926
Max.Miller@ag.Iowa.gov

*Counsel for Plaintiff Iowa*


Elinor R. Hoffmann
John D. Castiglione
Morgan J. Feder
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
elinor.hoffmann@ag.ny.gov
john.castiglione@ag.ny.gov
morgan.feder@ag.ny.gov

*Counsel for Plaintiff New York*


Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
Jmarx@Ncdoj.Gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*


J. David McDowell
Jeanette Pascale
Christopher Dunbar
Office of The Attorney General & Reporter P.O.
Box 20207
Nashville, TN 37202
615-741-3519
david.mcdowell@ag.tn.gov
jenna.pascale@ag.tn.gov
chris.dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

Tara Pincock
Attorney General's Office Utah
160 E 300 S, Ste 5th Floor
PO Box 140874
Salt Lake City, UT 84114
801-366-0305
tpincock@agutah.gov

*Counsel for Plaintiff Utah*

Jeff Pickett
Senior Assistant Attorney General
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100
jeff.pickett@alaska.gov

*Counsel for Plaintiff Alaska*

Nicole Demers
State of Connecticut Office of the Attorney
General
165 Capitol Avenue, Ste 5000
Hartford, CT 06106
860-808-5202
nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*

Catherine A. Jackson (D.C. Bar No. 1005415)
Elizabeth Gentry Arthur
David Brunfeld
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
catherine.jackson@dc.gov
elizabeth.arthur@dc.gov
david.brunfeld@dc.gov

*Counsel for Plaintiff District of Columbia*

Leevin Taitano Camacho, Attorney General
Fred Nishihira, Chief, Consumer Protection
Division
Benjamin Bernard Paholke, Assistant Attorney
General
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671)-475-3324
bpaholke@oagguam.org

*Counsel for Plaintiff Guam*

Rodney I. Kimura
Office of the Attorney General of Hawaii
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawaii*

Brett DeLange
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Fl.
PO Box 83720
Boise, ID 83720-0010
208-334-4114
brett.delange@ag.idaho.gov

*Counsel for Plaintiff Idaho*

Blake Harrop
Joseph Chervin
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
312-793-3891
bharrop@atg.state.il.us
jchervin@atg.state.il.us

*Counsel for Plaintiff State of Illinois*

Lynette R. Bakker
Office of the Attorney General of Kansas
Consumer Protection & Antitrust
120 S.W. 10th Avenue, Ste 2nd Floor
Topeka, KS 66612-1597
785-368-8451
lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
Augusta, ME 04333-0006
207-626-8838
christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
swalker@oag.state.md.us

Gary Honick
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*

Matthew B. Frank, Assistant Attorney General
Antitrust Division
William T. Matlack, Assistant Attorney General
Chief, Antitrust Division
Michael B. MacKenzie, Assistant Attorney
General
Deputy Chief, Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
Matthew.Frank@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

Justin Moor, Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2130
(651) 757-1060
justin.moor@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

Marie W.L. Martin
Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
Bureau of Consumer Protection
100 N. Carson Street
Carson City, NV 89701
775-624-1244
mwmartin@ag.nv.gov
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*

Robert Holup
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
239-822-6123
robert.holup@law.njoag.gov

*Counsel for Plaintiff New Jersey*

Mark F. Swanson
Cholla Khoury
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505.490.4885
mswanson@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

Parrell D. Grossman
Director
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of the Attorney General
1050 E. Interstate Ave., Suite 200
Bismarck, ND 58503
701-328-5570
pgrossman@nd.gov
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

Beth Ann Finnerty
Mark Kittel
Jennifer Pratt
Office of The Attorney General of Ohio, Antitrust
Section
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
beth.finnerty@ohioattorneygeneral.gov
mark.kittel@ohioattorneygeneral.gov
jennifer.pratt@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

Caleb J. Smith Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
503-934-4400
cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*

Johan M. Rosa Rodríguez
Assistant Attorney General Antitrust Division
Puerto Rico Department of Justice
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201
jorosa@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

David Marzilli
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
dmarzilli@riag.ri.gov

*Counsel for Plaintiff Rhode Island*

49

Yvette K. Lafrentz
Office of The Attorney General of South Dakota
1302 E. Hwy 14, Suite1
Pierre, SD 57501
605-773-3215
yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*

Ryan G. Kriger
Office of The Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

Sarah Oxenham Allen
Tyler Timothy Henry
Office of the Attorney General of Virginia
Antitrust Unit/Consumer Protection Section
202 N. 9th Street
Richmond, VA 23219
804-786-6557
soallen@oag.state.va.us
thenry@oag.state.va.us

*Counsel for Plaintiff Virginia*

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

Douglas Lee Davis
Tanya L. Godfrey
Office of Attorney General, State of West Virginia
P.O. Box 1789
812 Quarrier Street, 1st Floor
Charleston, WV 25326
304-558-8986
doug.davis@wvago.gov
tanya.l.godfrey@wvago.gov

*Counsel for Plaintiff West Virginia*

Benjamin Mark Burningham
Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
ben.burningham@wyo.gov
amy.pauli@wyo.gov

*Counsel for Plaintiff Wyoming*

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*