IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>  Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S OPPOSITION TO DOJ PLAINTIFFS' MOTION
TO EXTEND THE DEADLINE TO RESPOND TO THE REPORT OF EDWARD A. FOX**

On July 11, 2022, five weeks after receiving Google's opening expert reports, the DOJ Plaintiffs requested for the first time a 30-day extension to the August 6 deadline to respond to the expert report of Professor Edward A. Fox. The request is predicated on the DOJ Plaintiffs' inaccurate contention that Google's disclosure of certain materials relating to Professor Fox's report was delayed or incomplete, which prejudiced DOJ Plaintiffs' ability to timely respond to this report. *See* ECF No. 368-1. Contrary to the DOJ Plaintiffs' assertions, however, Google timely disclosed the materials required under the Federal Rules of Civil Procedure and the Amended Scheduling and Case Management Order (ECF No. 108-1) with Professor Fox's report on June 6. And when the DOJ Plaintiffs subsequently sought additional underlying data and information, Google promptly responded to those requests.

Under these circumstances, there is no basis for the DOJ Plaintiffs' latest extension request, which further jeopardizes a case schedule that has been compressed by the 45-day extension of fact discovery that Plaintiffs already received. If the DOJ Plaintiffs now obtain a 30-day extension to respond to Professor Fox's report, then a similar extension for his reply report is triggered by the expert schedule and expert discovery will not be completed within the

current schedule—a schedule that must be completed before summary judgment and Daubert motions are filed.  The Court should deny the DOJ Plaintiffs' unjustified request for an extension that will unnecessarily compromise the negotiated timetable for expert discovery.

        **A.**        **Google Provided the Materials Required by the Federal Rules and the CMO**

On June 6, 2022, Google served its opening expert reports in this matter, including Professor Fox's report.  His report has a singular focus: an experiment that compares the quality of Google search results, trained using Google search result click-and-query data, to those results from a version of Google Search trained using a smaller sample, equivalent to Microsoft's current stream of available search result click-and-query data.[1]  The comparison was performed using human raters, in the same way that Google regularly conducts experiments when considering changes to its systems and tracks its quality compared to certain rival search engines.

Professor Fox's report sets forth in extraordinary detail how the experiment was performed and its results.  Although essentially reporting on just a single experiment, it spans 63 pages, and further includes a 34-page technical appendix.[2]  In view of the detail included in the report and technical appendix, the report and accompanying materials satisfied the requirements of Paragraph 24 of the CMO.

On June 14, the DOJ Plaintiffs suggested that, beyond the aggregate metrics and data that were provided in the report and its appendix, they were entitled to obtain the ratings for each of the 25,000 individual queries rated in the experiment.  The DOJ Plaintiffs alluded to that request at the last status conference, where they claimed that "Google did not provide any of the backup

---

[1] Professor Fox's experiment also compares the results to a version of the Google search engine trained on twice the amount of mobile queries that Microsoft presently obtains.

[2] A copy of Professor Fox's report, including its technical appendix, is attached as Exhibit A.

material for one of their experts." June 17, 2022 Hr'g Tr. 4:4-5.  Google had already produced on June 6 the design of the experiment and the aggregate rater results.  How the raters assessed any particular search result (blind to which search results came from which search engine) was highly unlikely to be a basis of future contention and thus had not been produced.  And although Google disagreed with the DOJ Plaintiffs' characterization, Google explained to the Court at the conference that Google was in the process of preparing to produce the requested information that day.  *Id.* at 9:15-10:10.  Google completed that production later in the day on June 17—three days after the DOJ Plaintiffs requested the data, and four days after they contend it should have been produced under their interpretation of the CMO.[3]

      Although that should have been the end of any argument about required data productions, what followed was a series of interrogatory-style requests from the DOJ Plaintiffs regarding Professor Fox's report.  At each step, Google made clear that the information sought by the DOJ Plaintiffs was beyond that required under the CMO, but in the interest of resolving the matter, Google nonetheless responded to the inquiries.  In particular, on June 24, 2022, the DOJ Plaintiffs asserted that they were not satisfied with the search result ratings information for each individual query, and also wanted the system used to calculate the rating scores—topics that are more properly explored at deposition or through an informal request.  While the report itself provided formulae for calculating the search quality scores and DOJ Plaintiffs and their experts could also use standard computer science techniques to assess the aggregation of the ratings that were provided, Google nevertheless agreed to provide bespoke programs for doing so.  On July

---

[3] As Google indicated at the status conference, it took a couple days for Google to produce the data after receiving Plaintiffs' request because of the need to scrub certain queries that potentially reflected users' personal information.  *See* June 17, 2022 Hr'g Tr. 9:19-10:4.  Those queries were not viewed by Professor Fox at any point.

5, the DOJ Plaintiffs asked for a "full accounting" of any remaining materials necessary to recreate all calculations in Professor Fox's report from the data Google had already provided. Although the DOJ Plaintiffs did not raise any particular issue with those materials, the following day Google provided an additional spreadsheet containing the same search queries that Google had previously produced to Plaintiffs, along with an indication of which of those queries originated from mobile devices rather than desktop computers.

      The back-and-forth that has transpired over the last several weeks in no way justifies a disruption of the schedule in this case and appears pretextual given the nature of the data at issue. The DOJ Plaintiffs have sought and received more granular data than is required by the CMO. The DOJ Plaintiffs' brief does not identify any particular materials that they contend are "necessary to recreate" any particular calculations that were not disclosed in Professor Fox's report or, at the very latest, produced on June 17, 2022. Instead, the DOJ Plaintiffs have recounted Google's willingness to answer questions and provide information that may make it easier to recreate certain calculations and now use that extra degree of cooperation to justify an extension of time. Some amount of follow-up regarding back-up data is commonplace, and it has occurred with respect to Plaintiffs' experts as well. For example, after reviewing one of the DOJ Plaintiffs' expert reports, Google inquired about certain files that were not produced even though they appeared to be examples of the kind of "intermediate working-data files that are generated from the raw data files and used in performing the calculations appearing in the report." ECF No. 108-1 ¶ 24(e). The DOJ Plaintiffs responded that they "have no obligation to produce these temporary files and Google should generate[] the files itself," but nevertheless agreed "as a courtesy" to generate the files at issue. By the same token, Google's willingness to

5, the DOJ Plaintiffs asked for a "full accounting" of any remaining materials necessary to recreate all calculations in Professor Fox's report from the data Google had already provided. Although the DOJ Plaintiffs did not raise any particular issue with those materials, the following day Google provided an additional spreadsheet containing the same search queries that Google had previously produced to Plaintiffs, along with an indication of which of those queries originated from mobile devices rather than desktop computers.

The back-and-forth that has transpired over the last several weeks in no way justifies a disruption of the schedule in this case and appears pretextual given the nature of the data at issue. The DOJ Plaintiffs have sought and received more granular data than is required by the CMO. The DOJ Plaintiffs' brief does not identify any particular materials that they contend are "necessary to recreate" any particular calculations that were not disclosed in Professor Fox's report or, at the very latest, produced on June 17, 2022. Instead, the DOJ Plaintiffs have recounted Google's willingness to answer questions and provide information that may make it easier to recreate certain calculations and now use that extra degree of cooperation to justify an extension of time. Some amount of follow-up regarding back-up data is commonplace, and it has occurred with respect to Plaintiffs' experts as well. For example, after reviewing one of the DOJ Plaintiffs' expert reports, Google inquired about certain files that were not produced even though they appeared to be examples of the kind of "intermediate working-data files that are generated from the raw data files and used in performing the calculations appearing in the report." ECF No. 108-1 ¶ 24(e). The DOJ Plaintiffs responded that they "have no obligation to produce these temporary files and Google should generate[] the files itself," but nevertheless agreed "as a courtesy" to generate the files at issue. By the same token, Google's willingness to

field similar inquiries and provide more information than is required by the CMO is not a proper basis for a 30-day extension of time.

### B.     The Requested Extension Undermines the Expert Discovery Schedule

The DOJ Plaintiffs seek to postpone service of their response to Professor Fox's report until September 6, 2022—three full months after Google served Professor Fox's report. The Amended Scheduling Order entered by the Court on December 6, 2021 provides that final reply reports are due 50 days after rebuttal reports, *see* ECF No. 263 at 2, such that Professor Fox's reply would be due October 28, 2022 if the DOJ Plaintiffs' request is granted.  That is less than two weeks before the November 10, 2022 close of expert discovery under the operative scheduling order, with the summary judgment deadline following closely after, on December 12. *See id*.  The requested extension is not only unjustified, but also threatens to further undermine a schedule that has already been compressed by the extension of the 15-month fact discovery period that Plaintiffs previously received.

Dated: July 14, 2022                                  Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW

Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*