# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

United States of America, *et al.*,

<table>
<tr><td></td><td>Plaintiffs,</td><td>Case No. 1:20-cv-03010-APM</td></tr>
<tr><td>v.</td><td></td><td>HON. AMIT P. MEHTA</td></tr>
<tr><td>Google LLC,</td><td></td><td>███████████</td></tr>
<tr><td></td><td>Defendant.</td><td></td></tr>
</table>

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA CITED IN EXPERT REPORTS OF EDWARD A. FOX AND MARK A. ISRAEL

Plaintiffs request that the Court compel Google to produce withheld materials cited in Google's expert reports: (1) documents regarding a lawyer-directed 2020 data experiment, which Google improperly withheld on privilege grounds under Federal Rule of Evidence 502(a), and (2) raw data underlying calculations performed by a Google economist, which Google improperly withheld under the Amended Scheduling and Case Management Order (the "CMO") (ECF No. 108-1).

*First*, Google's expert, Dr. Edward Fox, cited and relied upon a 2020 data experiment that Google performed "at the request of European lawyers." Expert Report of Edward Fox, June 3, 2022 ("Fox Report") at 45. Dr. Fox's expert report failed to cite a single document regarding this experiment, even though he disclosed in his report that he had "reviewed" material related to it. *See, e.g., id.* at 42, 61. Google affirmatively included the lawyer-directed experiment in its expert report, but withholds related documents on claims of privilege. *See id.* According to Google, aside from two documents Google selected, every other document about the experiment is privileged. But under Federal Rule of Evidence 502(a), Google cannot use privilege as a sword

and a shield—providing one privileged document to its expert, while withholding from Plaintiffs

all others on the same subject matter. The Court should find that, under Rule 502(a), Google has

waived privilege on the subject matter of the 2020 data experiment and order Google to:

> (1) Produce the four documents, currently withheld for privilege by Google, that Google itself identified as related to the 2020 data experiment including all the previously withheld and/or redacted linked attachments to those documents;

> (2) Conduct a reasonable search of Google's privilege log to locate and produce any additional withheld documents that pertain to the 2020 data experiment; and

> (3) Permit Plaintiffs to question three knowledgeable Google witnesses—Prabhakar Raghavan, Philipp Schindler, and Hal Varian—about the European experiment at their upcoming depositions, within the time the Court has allotted to Plaintiffs.

*Second*, Google flouts the CMO by refusing to produce "all data" underlying calculations

appearing in two tables of Dr. Mark Israel's initial expert report. *See* CMO at 18. Dr. Israel's

calculations rely on an altered and curated dataset that Google employees generated for Dr. Israel

from raw, underlying data. Testing Dr. Israel's calculations requires access to the full underlying

data, not just the curated data. Nonetheless, Google refuses to provide the full underlying data

because (1) its employees (rather than, e.g., Dr. Israel's support staff) generated the altered and

curated dataset for Dr. Israel, and (2) the underlying data contains "private" information. Neither

the CMO nor the logic underlying it justifies Google's claimed exemptions from the requirement

to disclose "all data" underlying Dr. Israel's calculations.

## I.  GOOGLE HAS WAIVED PRIVILEGE ON THE EUROPEAN DATA EXPERIMENT

The Court should conclude that, by showing the results of a data experiment "conducted

at the request of European lawyers" to its expert and allowing him to use that experiment in his

report, *see* Fox Report at 45, Google has waived privilege on documents and testimony related to

that experiment.  Accordingly, Google should produce documents related to that experiment that

have previously been withheld on claims of privilege. Furthermore, having decided to waive privilege during expert discovery, Plaintiffs were deprived of the ability to use these documents during fact discovery and Plaintiffs should be allowed to question witnesses in the upcoming depositions about the experiment.

### A. Background

The importance of user data, including whether having more users making more queries gives Google's search engine an advantage over the company's rivals, is a relevant issue in this case. Plaintiffs allege that Google's distribution agreements preclude rival search engines from acquiring users—and hence the query data—they need to compete effectively against Google's search monopoly. Am. Compl. (ECF No. 94) ¶ 8 ("By using distribution agreements to lock up scale for itself and deny it to others, Google unlawfully maintains its monopoly."); *see also id.* ¶¶ 35-38.

Accordingly, Plaintiffs sought documents and data from Google on how scale grants Google an advantage over its competitors. In January 2021, Plaintiffs requested production of all Google documents "discussing the impact of data or scale on the quality of search or search advertising products or services."[1] Plaintiffs also took a Rule 30(b)(6) deposition focused on scale. Instead of producing the documents or information regarding the 2020 data experiment, however, Google withheld responsive documents on the basis of privilege.

In response to Plaintiffs' allegations regarding scale, Google put forward Dr. Fox to address the importance of scale for general search engines like Google and Bing. In his opening report, Dr. Fox relied on four so-called "data reduction experiments" to support his opinions about scale. Fox Report at 43-48.[2]

---

[1] Plaintiffs' Second Request for the Production of Documents, RFP No.8 (Jan. 11, 2021).
[2] The Fox Report is available on the docket at ECF No. 369-1.

Three of these experiments, according to Dr. Fox, were created by Google employees before Dr. Fox was involved in the litigation and he subsequently took them "off the shelf." *See* Status Conference Tr., July 14, 2022, at 34:18-19. One of the off-the-shelf experiments, performed in 2020, was "conducted at the request of European lawyers," "for the purposes of policy advocacy." *Id.* at 45.[3] Dr. Fox used the results of that lawyer-directed experiment to bolster the validity of his own data experiment, asserting that "[a]lthough I was not involved in the [2020 data experiment], their results shown above are generally consistent with the results of my [data reduction experiment] study that is explained below and in Appendix A." *Id.* at 46.

Dr. Fox noted that all of his opinions were based in part on "[his] review of production materials," which includes the materials related to the 2020 lawyer-directed experiment. *Id.* at 61. Dr. Fox, however, failed to cite to *any* materials reviewed regarding that experiment. Instead, Dr. Fox included two screenshots from a document summarizing the results of the lawyer-directed experiment. *Id.* at 45-46 (Figs. 4 & 5). In its initial production of backup materials for the Fox Report, Google provided no documents or data related to this experiment. Last week, in response to Plaintiffs' repeated requests, Google agreed to produce the two documents that Dr. Fox excerpted in his report. Ex. A at 2. Google, however, has refused to produce any other documents related to the 2020 lawyer-direct data experiment, including at least the four documents Google identified on its privilege log as related to the experiment and the previously withheld or redacted linked attachments to those documents. *Id.* at 4.

---

[3] Google has since claimed that the experiment was "conducted in connection with Google's consideration of a particular provision of the European Digital Markets Act (DMA)." Ex. A, Letter from F. Rubinstein (Google) to D. Aguilar (U.S. DOJ) (July 25, 2022) at 2.

### B.  Legal Argument

The Court should order Google to produce documents related to the lawyer-directed experiment that are presently withheld on claims of privilege. Google cannot strategically supply its expert with information regarding this experiment, while asserting privilege over and denying Plaintiffs access to all other documents and information. Under Rule 502(a), Google has waived privilege over the subject matter of this 2020 data experiment—an experiment that *Google* chose to inject in this litigation by supplying it to Dr. Fox.

Google's decision to claim privilege during fact discovery and then selectively withdraw those claims during expert discovery, places Plaintiffs at a significant disadvantage. Had Plaintiffs received the deprivileged and withheld documents during fact discovery, Plaintiffs could have sought testimony and information related to the 2020 experiment and provided that information to its own experts for review. Accordingly, Google should produce the withheld documents and Plaintiffs should be permitted to use those documents—and otherwise question Google's employees about the experiment—in the upcoming depositions. This narrow relief ensures Plaintiffs are not prejudiced by Google's selective release of information about the lawyer-directed experiment.

Federal Rule of Evidence 502(a) mandates waiver of privilege over "communications or information concern[ing] the same subject matter" if three conditions are met: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 31 (D.D.C. 2011) (citing Fed. R. Evid. 502(a)).

Here, all three conditions are met. First, Google deliberately disclosed a set of documents related to the lawyer-directed experiment to Dr. Fox, who then relied on the experiment's purported outcome and excerpted that document in his report. There was nothing unintentional or

accidental afoot here, and Google has made no effort to claw this document or information back. *See US Airline Pilots*, 274 F.R.D. at 31 (holding that "the undisputedly deliberate disclosure of [a] report constituted an intentional waiver."); *see also Minebea Co. v. Papst*, 2005 WL 8179732, at *2 (D.D.C. June 23, 2005) (explaining that disclosure to an expert constitutes waiver under Fed. R. Civ. P. 26(a)(2)(B)).[4]

As to the second element, the disclosed communications (the documents excerpted in the Fox Report) and the undisclosed communications (the withheld documents concerning the lawyer-directed experiment) relate to the same subject matter. Indeed, Google itself "identified" the four withheld documents as "relat[ing] substantively to the European DRE," Ex. A at 4, which concerns the same subject matter raised and relied upon in the Fox Report.

As to the third factor, fairness, courts apply the sword-shield principle: A "party's strategic use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter." *US Airline Pilots*, 274 F.R.D. at 32. Rule 502(a) "serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones." *In re Papst Licensing GMBH & Co.*, *KG Litig.*, 250 F.R.D. 55, 58 (D.D.C. 2008) (quotation omitted).

The sword-shield principle requires disclosure here. By Google's own telling, the 2020 data experiment was done at the direction of counsel and is, therefore, privileged. *See* Fox Report at 45. ("I understand the experiment was conducted at the request of European lawyers."). Indeed, Google apparently relies upon the experiment's provenance to maintain privilege on the

---

[4] Federal Rule of Civil Procedure 26(a)(2)(B) requires disclosure of the "facts or data considered by" the expert witness, but under the CMO, disclosure is required only for documents that an expert relies upon. *See* CMO at 16. For the reasons explained in this motion, Dr. Fox relied upon the 2020 data experiment.

related documents. Thus, Google has given privileged documents to its expert to bolster his analysis and withheld the related documents under claims of privilege. This is the paradigm sword-shield concern addressed in the Federal Rules.

Rule 502(a) bars Google from reaching around the privilege screen and pulling out the evidence it considers most advantageous to its defense. *Minebea*, 2005 WL 8179732, at *2 (finding that, "in providing [an expert] with privileged documents," the party "waived the attorney-client privilege with respect to those documents and any other documents relating to the same subject matter."). And for good reason: other withheld documents could undermine Dr. Fox's conclusions and provide important context regarding the supposedly "robust and meaningful" European data experiment. *See US Airline Pilots*, 274 F.R.D. at 32 (sword-shield principle applies where "additional materials [] could provide important context for proper understanding of the privileged materials.); *In re Sealed Case*, 676 F.2d 793, 826 (D.C. Cir. 1982) (Wald, J., concurring) (it is "inequitable" for a party to disclose some documents while withholding others "that are properly characterized as underlying documents").

Confusingly, Google now argues that the previously undisclosed document excerpted by Dr. Fox was "not withheld as privileged during fact discovery." Ex. A at 4. That is, Google seeks to avoid subject-matter waiver by claiming Dr. Fox's reliance on the lawyer-directed experiment did not disclose privileged material. This position is untenable because Google asserts that *every other document* relating to this 2020 experiment is withheld on claims of privilege. Google's basis for asserting privilege over the withheld documents is that the entire experiment was conducted at the request of counsel. *See* Fox Report at 45. If the document cited by Dr. Fox— which describes the experiment and shows its results—is not privileged, then Google improperly withholds the related documents, and should have produced them at least a year ago.

Subject-matter waiver is all the more appropriate here because had Google not claimed privilege over the experiment prior to expert discovery, Plaintiffs would have had the opportunity to ask fact witness about the experiment's development and results. Permitting Google to rely on this 2020 data experiment now, based on cherry-picked documents, would reward Google's gamesmanship of discovery and privilege.[5]

Plaintiffs seek narrow relief under Rule 502(a). With respect to documents, Plaintiffs only seek an order requiring Google to: (1) produce the four documents Google has already identified as relating to the lawyer-directed experiment including all previously withheld and/or redacted linked attachments to those documents and (2) review its privilege log to identify any other withheld documents that are substantively related to the 2020 data experiment.

Further, Plaintiffs should be entitled to ask three potentially knowledgeable witnesses—Prabhakar Raghavan, Philipp Schindler, and Hal Varian—about the 2020 data experiment at their upcoming depositions (along with the use of any deprivileged documents relating to that experiment). Plaintiffs do not seek more time with these witnesses. This remedy results in no prejudice Google and is necessary because of Google's decision to deprivilege this subject-matter after the close of fact discovery. As a result, Plaintiffs never had the opportunity to question any Google witnesses about it.

## II.     GOOGLE HAS FAILED TO PRODUCE ALL DATA FOR CALCULATIONS APPEARING IN DR. ISRAEL'S REPORT

The Court should order Google to produce the raw data underlying calculations in Dr. Israel's report because this data is necessary for Plaintiffs to reproduce the report's calculations. Rather than produce the raw underlying Google Panels data (along with a

---

[5] Indeed, when discussing data reduction experiments, Google's Rule 30(b)(6) witness on scale did not disclose the 2020 example later raised in the Fox Report. Deposition of Google (Pandu Nayak), April 7, 2022, 91:8-92:4.

corresponding data dictionary explaining the coded language in the data), Google seeks to satisfy its responsibility by producing a limited, curated subset of the data. Ex. B, Letter from F. Rubinstein (Google) to D. Aguilar (U.S. DOJ) (July 29, 2022). This is unacceptable. The CMO expressly requires the parties to produce *all data and programs* underlying all calculations *appearing* in an expert's report. *See* CMO at 18 (¶ 24(e)). Google cannot provide curated and altered versions of data to its expert or claim privacy considerations as a way of hiding the underlying raw data from Plaintiffs.[6]

### A.    Background

Between May 1, 2021, and April 30, 2022, Google conducted a Google Panels program in which it tracked and collected users' desktop, mobile web, and app usage activities (i.e., queries and site visits). *See* Expert Report of Mark A. Israel, June 4, 2022 (the "Israel Report"), at 114, n.191. In this litigation, Google retained Dr. Israel to, among other things, "assess Plaintiffs' relevant antitrust markets on both the user and advertiser sides of the industry, . . . the extent to which Google has monopoly power in any well-defined antitrust market(s) on either side of the industry." *See* Israel Report at 3. On June 6, 2022, Google submitted Dr. Israel's report, which included analyses, conclusions, and calculations from Google Panels program. *Id*. at 114-117, 192-196. Although Google produced altered and curated Google Panels datasets,[7] the company failed to produce the full set of underlying raw Google Panels data as required by the CMO.

---

[6] Plaintiffs request a data dictionary or some other some ordinary course documentation used by Google analysts to interpret and use these data. Without such documentation, Plaintiffs have no way of interpreting coded language in the data.

[7] Google undertook an initial step of processing the raw data and turning it into an intermediate data file which aggregates, alters, and curates the underlying data set.

After Plaintiffs repeatedly asked for the underlying raw Google Panels data, Google finally proposed to provide a subset of this raw data set, specifically four fields of Google's choosing: user identifier, time stamp for the query, vertical of the query, and domain visited. *See* Ex. B. Google contends that privacy considerations prevent it from producing the remaining fields in the raw underlying data.[8] *Id*. To date, Google has yet to produce even this subset of the raw dataset. Google has further refused to provide Plaintiffs with a corresponding data dictionary that would, at a minimum, allow Plaintiffs to identify the data that remains undisclosed.

### B.    Legal Argument

The Court should order Google to produce (1) the raw Google Panels data, including all query data as well as site and app visit data, and (2) a corresponding data dictionary. Paragraph 24 of the CMO states in relevant part:

> [T]he parties agree that the following materials will be disclosed . . . (e) ***for all calculations appearing in the report***, all data and programs underlying the calculations, including all programs and codes necessary to recreate the calculations from the initial ("raw") data files, and including the intermediate working-data files that are generated from the raw data files and used in performing the calculations appearing in the report.

*See* CMO at 18 (emphasis added). The standard in section (e) is notably different from the standard in section (a), which requires disclosure of documents "relied upon by the expert in forming any opinions." For subsection (e), the calculations merely need to *appear* in the report to trigger disclosure of the underlying data. Allowing the disclosing party to curate and alter the produced datasets, as Google has done here, prevents the receiving party from reviewing calculations in full and from analyzing an expert's results in any meaningful way. Indeed, allowing Google to limit the raw dataset in any way invites gamesmanship. Thus, the CMO

---

[8] Plaintiffs are not requesting consumers' personally identifying information ("PII") and are willing to work with Google to address any concerns related to PII. Google has not raised any privacy concerns regarding the data dictionary.

requires full disclosure of the underlying data.

The CMO's plain language is no accident. If Google was allowed to alter the raw data, and disclose only that curated data, then Google's experts could cherry pick selected data and dispense with the remaining raw data in secrecy. Similarly, Google could aggregate or otherwise alter the raw data in a flawed manner, whether intentionally or by accident, and no one would know.

Accordingly, Google's claim that neither "Dr. Israel nor the support staff working at his direction accessed or referenced any underlying, non-aggregated Google Panels datasets" is irrelevant. Ex. A at 3. *Someone* took the raw data set, developed an aggregated set, and gave that to Dr. Israel and his team. The act of aggregating the dataset before the expert used it involved acts of discretion and manipulation that Plaintiffs are entitled to consider and test. A plain reading of the CMO requires each party to produce the raw data without regard to whether that data were "relied upon" by an expert or his staff. The underlying data may disprove Dr. Israel's conclusions, and unless Google discloses it for Plaintiffs' review, only Google and Dr. Israel would know.

Google also contends that privacy considerations prevent it from producing the underlying data. *See id.*; Ex B at 2. However, Google fails to articulate with any specificity what those privacy concerns are and, to the extent they exist, why those concerns exempt the underlying data from the CMO's requirement. More generally, given the CMO, if there were privacy concerns regarding the Google Panels raw data set, why did Google provide this data— even in abbreviated form—to its expert for processing?

This case's Protective Order provides sufficient safeguards to protect the data from unnecessary disclosure. Moreover, it is Google that affirmatively allowed the Panels data to be

used in one of its expert's reports, therefore making the data subject to disclosure. Google cannot cry foul to prevent Plaintiffs from obtaining necessary data as called for in the CMO.

## III.    CONCLUSION

For the foregoing reasons, the Court should order Google to: (1) produce the four withheld documents Google has identified as being related to the lawyer-directed experiment, including the previously or withheld linked attachments to those document; (2) conduct a reasonable search of its privilege log for additional documents on the same subject matter and produce any that it finds; and (3) permit Plaintiffs to question Prabhakar Raghavan, Philipp Schindler, and Hal Varian at their upcoming depositions about the European experiment, within the time previously allotted by the Court.

Moreover, the Court should order Google to produce: (1) the raw underlying Google Panel data, including all query data as well as site visit data, and (2) a corresponding data dictionary.

Dated: August 3, 2022                    Respectfully submitted,


                                         By: */s/ Kenneth M. Dintzer*
                                         Kenneth M. Dintzer
                                         Jeremy M. P. Goldstein
                                         U.S. Department of Justice, Antitrust Division
                                         Technology & Digital Platforms Section
                                         450 Fifth Street NW, Suite 7100
                                         Washington, DC 20530
                                         Kenneth.Dintzer2@usdoj.gov

                                         *Counsel for Plaintiff United States*

                                         By:      */s/ Kelsey Paine*
                                         Kelsey Paine, Assistant Attorney General
                                         Margaret Sharp, Assistant Attorney General
                                         Office of the Attorney General, Antitrust Division
                                         300 West 15th Street
                                         Austin, Texas 78701
                                         Kelsey.Paine@oag.texas.gov

                                         *Counsel for Plaintiff State of Texas*

                                         By:      */s/ Matthew Michaloski*
                                         Theodore Edward Rokita, Attorney General
                                         Scott L. Barnhart, Chief Counsel and Director,
                                         Consumer Protection Division
                                         Matthew Michaloski, Deputy Attorney General
                                         Christi Foust, Deputy Attorney General
                                         Office of the Attorney General, State of Indiana
                                         Indiana Government Center South, Fifth Floor
                                         302 West Washington Street
                                         Indianapolis, Indiana 46204
                                         Matthew.Michaloski@atg.in.gov

                                         *Counsel for Plaintiff State of Indiana*

                                         By:      */s/ Johnathan R. Carter*
                                         Leslie Rutledge, Attorney General
                                         Johnathan R. Carter, Assistant Attorney General
                                         Office of the Attorney General, State of Arkansas
                                         323 Center Street, Suite 200
                                         Little Rock, Arkansas 72201
                                         Johnathan.Carter@arkansasag.gov

                                         *Counsel for Plaintiff State of Arkansas*

13

By:    */s/ Brian Wang*          
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Brian Wang, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Brian.Wang@doj.ca.gov

*Counsel for Plaintiff State of California*

By:    */s/ Lee Istrail*          
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:    */s/ Daniel Walsh*          
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: ___/s/ *Philip R. Heleringer*_____
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of
Consumer Protection
Philip R. Heleringer, Deputy Executive Director of
Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of
Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By: ___/s/ *Christopher J. Alderman*_____
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By: ___/s/ *Scott Mertens*_____
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By: ___/s/ *Stephen M. Hoeplinger*_____
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov
*Counsel for Plaintiff State of Missouri*

By:＿＿＿＿*/s/ Hart Martin*＿＿＿＿＿＿＿＿＿＿
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:＿＿＿＿*/s/ Rebekah J. French*＿＿＿＿＿＿＿
Austin Knudsen, Attorney General
Rebekah J. French, Assistant Attorney General,
Office of Consumer Protection
Office of the Attorney General, State of Montana
P.O. Box 200151
555 Fuller Avenue, 2nd Floor
Helena, Montana 59620-0151
Rebekah.french@mt.gov

*Counsel for Plaintiff State of Montana*

By:＿＿＿＿*/s/ Rebecca M. Hartner*＿＿＿＿＿＿＿
Rebecca M. Hartner, Assistant Attorney General
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
RHartner@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:____/s/ Gwendolyn J. Lindsay Cooley____
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*