# Exhibit A

███████████



Wilson Sonsini Goodrich & Rosati
Professional Corporation

1700 K Street NW
Fifth Floor
Washington, D.C. 20006-3817

O: 202.973.8800
F: 202.973.8899

FRANKLIN M. RUBINSTEIN
Internet: frubinstein@wsgr.com
Direct dial: 202.973.8833

**CONFIDENTIAL**

July 25, 2022

**VIA E-MAIL**
Diana A. Aguilar
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Room 10-0101
San Francisco, CA 94102

Re: *United States v. Google*, 1:20-cv-03010 (D.D.C.)

Dear Diana:

I write in response to your letter of July 19, 2022. Although we will address each of your further requests for production below, we note at the outset that none of them arises from any "deficiencies" in Google's expert productions. As we have explained previously, we have disclosed all of the materials specified in the Federal Rules and the CMO for each expert report served on June 6, 2022. The requests in your letter extend well beyond any required disclosure, and in many cases they have never been submitted previously in any form.

**I.  Google Has Complied with Paragraph 24 of the CMO**

**A.  Google Has Produced the "Backup Material" Associated with Professor Fox's Report to the Full Extent Required by the Federal Rules and the CMO**

With respect to Plaintiffs' assertions regarding the "back-up materials" associated with Professor Fox's report, we reiterate that Google has disclosed all such materials, and it has also provided additional data and information far beyond Google's obligations under the CMO in response to Plaintiffs' multiple rounds of requests over the last several weeks.

> 1) Plaintiffs' request for "All materials Dr. Fox relied upon to conclude that the experiments listed on pages 42-45 of his report conformed to 'generally

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

1

WILSON SONSINI

Page 2

>   *accepted principles in the industry' and that 'the results [of those experiments] are robust and meaningful'"*

As stated in Google's July 15, 2022 correspondence, Professor Fox's opinions do not rely upon the European data reduction experiment (DRE) or underlying data associated with that experiment. In the course of designing the experiment fully described in Appendix A of his report, Professor Fox reviewed a document describing the 10% sample experiment conducted in connection with Google's consideration of a particular provision of the European Digital Markets Act (DMA). Although Google is under no obligation to do so, it is producing that document along with this letter. That document has been uploaded to Plaintiffs' respective FTP sites. Professor Fox also reviewed the numeric results of the 1% sample experiment referenced in his report, but he did not review any written summary of that experiment, and no such summary exists.

Professor Fox's opinions also do not rely upon the results of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ experiments that were conducted by Google in the ordinary course of business and cited in sections 5.1.1 and 5.1.2 of Professor Fox's report. Professor Fox did not rely upon any materials relating to those experiments other than documents and deposition testimony that were produced to Plaintiffs in the course of discovery. Google is under no obligation to produce additional materials with respect to ▮▮▮▮▮▮▮▮▮▮▮▮ experiments.

>   2) *Plaintiffs' request for "The underlying data and code used to calculate the information represented in Figures 2, 3, 4, and 5 (pages 43-46, Fox Report)"*

As previously indicated, Professor Fox did not rely upon the information referenced in Figures 2, 3, 4, or 5 for the opinions offered in his report, and Google is under no obligation to produce any further data, code, or other information. Nevertheless, as noted above, we are producing a document reviewed and excerpted by Dr. Fox regarding the 10% sample experiment conducted in connection with Google's consideration of a particular provision of the DMA.

>   3) *Plaintiffs' request for "The underlying data and code used to calculate the information represented in Table 2 (page 8, Fox Report Appendix)"*

The technical appendix to Dr. Fox's report already explained, in detail, the methodology for Table 2 as well as the formulae for producing Table 2. And in response to a prior request from Plaintiffs, Google produced the code used to calculate the information represented in Table 2. Please see the file labeled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ produced on June 28, 2022. Given Plaintiffs' most recent request, Google will undertake to export to Plaintiffs data

WILSON SONSINI

Page 3

underlying Table 2.  Google's expectation is that that process can be completed by Friday, July 29.

> 4) *Plaintiffs' request for the "Definition of 'PQ rating,' as used on page 4 of Google's July 19, 2020 letter*

This term was defined in Professor Fox's report.  *See* Fox Report at 36 and App. A at 17 (citing Google's public search rater guidelines, available at https://static.googleusercontent.com/media/ guidelines.raterhub.com/en//searchqualityevaluatorguidelines.pdf).

### B. Google Has Produced the "Backup Material" Associated with Professor Israel's Report to the Full Extent Required by the Federal Rules and the CMO

> 1) *Plaintiffs' Request for "Data dictionaries defining each column in the files located in the following folders:* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Neither Dr. Israel nor the support staff working at his direction relied upon any data dictionaries relating to the referenced files that have not already been produced to Plaintiffs.  Although the meaning of the referenced columns should be self-explanatory, particularly in view of the code that has been produced, Dr. Israel's support staff will prepare a data dictionary for Plaintiffs as a courtesy.  We will deliver the data dictionary tomorrow, July 26.

> 2) *Plaintiffs' Request for "Complete Google Panels Datasets and any other datasets from which the files listed in (1) were generated"*

Consistent with the Federal Rules and the CMO, Dr. Israel disclosed on and before June 13, 2022 the data that he relied upon in forming the opinions in his report, including in connection with Tables 9 and 10 as well as Figures 31 and 32.  In accordance with Google's privacy policies and agreements with panel participants, neither Dr. Israel nor the support staff working at his direction accessed or referenced any underlying, non-aggregated Google Panels datasets.  Google is under no obligation to produce that data, and it does not intend to do so in response to this untimely and unjustified request.

> 3) *Plaintiffs' request for "Data dictionaries defining each column in all datasets identified in (2)"*

Page 4

Please see the response immediately above regarding Plaintiffs' request (2) relating to Dr. Israel's report.

> 4) *Plaintiffs' request for "Code—including all data and inputs required to run the code—used to generate the files listed in (1)"*

This request sweeps far beyond Paragraph 24(e) of the CMO, which is directed to "programs and codes necessary to recreate [certain] calculations," and does not create any obligation to produce code "used to generate the files" in question. Nevertheless, as a courtesy, we will produce the code used to extract the data in the two files referenced in Plaintiffs' request (1) relating to Dr. Israel's report. We will deliver the code tomorrow, July 26.

## II.   There Was No "Privilege Waiver"

The assertions in your letter relating to Google's privilege claims are inaccurate, and there is no basis for your request for further document productions or deposition testimony. The results of the European DRE set forth on pages 45-46 of Professor Fox's report were not withheld based on an assertion of privilege. Likewise, the particular document summarizing the 10% sample experiment that Professor Fox reviewed and excerpted, and that we are now producing as a courtesy, was not withheld as privileged during fact discovery. That document was not disclosed with Professor Fox's report because, as we have already explained, it is not among the documents that he relied upon in forming the opinions in his report.

As we indicated in our correspondence of July 15, 2022, we conducted a reasonable search for documents withheld as privileged that relate substantively to the European DRE, and we identified four such documents. None of those documents was even reviewed by Professor Fox, let alone relied upon by him. Plaintiffs have been raising vague and shifting assertions of "privilege waiver" for weeks, but they have not explained the basis for their apparent assertion that an expert's recounting of non-privileged facts relating to an experiment somehow vitiates a claim of privilege with respect to other documents and communications relating to that experiment.

The broader suggestion in your letter that there has been a "subject-matter waiver" relating to "considerations of the Digital Markets Act" or any other subject is completely baseless. The DMA includes numerous provisions, and various versions of the Act have been contemplated or proposed. The experiment referenced in Professor Fox's report relates to a particular application of a specific provision of the DMA. Google has sought and obtained legal advice relating to various facets of the DMA that have no meaningful connection to the European DRE and that are in no way implicated by Professor Fox's report. The privileged documents

...

**WILSON SONSINI**

Page 5

identified by Bates number or privilege log identifier in your letter involve a range of analyses of various provisions of the DMA.  Moreover, some of the referenced documents relate to investigations or litigations in non-European jurisdictions or are distinct from the DMA altogether. There are no grounds for revisiting any of those claims of privilege, and no additional documents will be produced in response to Plaintiffs' unfounded assertions of waiver.

### III.     Google Has Completed the Requested Privilege Re-Review

We have re-reviewed the 39 privilege claims identified by Plaintiffs.  Although a majority of Plaintiffs' challenges are unfounded, we have determined that some of the documents in question include content that arguably is not privileged, and we are in the process of reproducing those documents to Plaintiffs.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ Franklin M. Rubinstein