**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S MOTION TO EXCLUDE THE REPORT AND
TESTIMONY OF DOJ PLAINTIFFS' UNTIMELY DISCLOSED EXPERT**

The parties are four months into a five-month expert discovery period, with depositions beginning today, October 10.  As the Court is aware from the parties' reports at the regular status conferences, each side has disclosed several experts, and the parties exchanged voluminous expert reports in the opening round on June 6 and the rebuttal round on August 5.  The parties served their third and final round of reply expert reports on September 26.  This last round of expert disclosures were, in Plaintiffs' own words when they requested that the Case Management Order (CMO) allow for three rounds of reports instead of two, a "chance to serve a reply *in support of the opening report*."  ECF 70 at 4 (emphasis added).  DOJ Plaintiffs now offer – in this third round – Dr. Kirsten Martin, a new expert witness who offers opinions on privacy issues entirely unconnected to the opinions offered by the DOJ Plaintiffs' witnesses in the opening round of reports.  DOJ Plaintiffs' failure to disclose Dr. Martin earlier requires that her opinions be struck.[1]

---

[1] Google notified DOJ Plaintiffs on October 3 that Google intended to brief this issue in the JSR that is due to be filed on October 12 in advance of the October 14 status conference.  DOJ Plaintiffs did not agree to brief the issue in the JSR, prompting Google to file this motion.

There is no excuse for DOJ Plaintiffs offering a new privacy-focused expert in the third and final round of expert reports.  DOJ Plaintiffs put privacy at issue in the case, and whatever expert testimony they wished to offer, the time to make the required disclosures was in the first round of expert reports exchanged four months ago.  It is certainly far too late in the reply round, and this late disclosure unfairly disadvantages Google because it has no opportunity to offer a responsive report to the opinions first disclosed in this reply round.  Not only was Dr. Martin never previously disclosed, but her report advances an entirely new theory with respect to privacy, not introduced by any of DOJ Plaintiffs' other experts, some of whom *opined on privacy during the initial round of expert disclosures*.  DOJ Plaintiffs' strategy of hiding the ball until the last round of reports is not permitted under the CMO or Federal Rule of Civil Procedure 26, and under Rule 37, the appropriate remedy is exclusion.

## BACKGROUND

The CMO provides for three simultaneous rounds of expert reports.  The third "reply" round was a provision of the CMO that Plaintiffs proposed and that was litigated as one of the disputed issues with respect to the CMO.  In requesting that the Court permit a third "reply" round, DOJ Plaintiffs represented: "*Plaintiffs' proposed schedule does not give either Party an unfair advantage*.  The Parties will serve their opening reports simultaneously, the other side will serve a rebuttal, and then each side will have the chance to serve a reply *in support of the opening report*."  ECF 70 at 4 (emphasis added).  And in ruling on the issue and allowing for the three rounds of reports, the Court stated, "I do think it may be useful to have those just if for no other reason than to *sharpen the issues*, and frankly, I think it will be helpful for the parties to have replies, and, at the end of the day, will probably provide for a . . . *sharpening of the lines of inquiry* during depositions and ultimately trial."  ECF 88 at 28 (emphasis added).

On June 6, DOJ Plaintiffs disclosed five experts; the Colorado Plaintiffs disclosed two experts; and Google disclosed eight experts.  Google's opening round of expert disclosures included the report of Dr. Catherine Tucker, a Ph.D economist who offers opinions specifically relating to data privacy and competition regarding data privacy.  The entire focus of Dr. Tucker's 54-page report was a response to the DOJ and Colorado Plaintiffs' claims that "in the absence of Google's alleged conduct, consumers would have enjoyed superior privacy and search."  Ex. A, Tucker June 6 Report ¶ 7.[2]  Specifically, Dr. Tucker described her assignment as follows:

> Based on my expertise in the economics of digital markets and data privacy, I have been asked by counsel to address the following questions:
>
> - To what extent do firms collect data on consumers and how is consumer data typically used by firms in the ordinary course of business?
> - What are peoples' attitudes regarding data collection and data privacy and what factors determine peoples' decisions to share data with firms?
> - To what extent, if at all, can increased competition be expected to result in less data collection and increased data privacy?

Ex. A, Tucker June 6 Report ¶ 6.  Dr. Tucker offers opinions on each of those questions.  Summarized briefly, she opines that (a) Google, like other firms, collects data from users to provide search and search advertising services and to improve the quality of those services; (b) peoples' attitudes towards data privacy vary, and their considerations and behavior can also vary by context; (c) Google offers data privacy controls so that users can balance their individualized

---

[2] Specifically, the DOJ Plaintiffs allege, in the opening paragraphs of their operative Complaint, that "American consumers are forced to accept Google's policies, privacy practices, and use of personal data." ECF 94 ¶ 13.  The DOJ Plaintiffs' Complaint further alleges that the challenged conduct has harmed consumers by "reducing the quality of general search services."  The Complaint is short on specifics; the most provided is that this "include[s] dimensions such as privacy, data protection, and use of consumer data."  *Id.* ¶ 167.  The Colorado Plaintiffs made similar allegations in their Complaint.  *State of Colorado v. Google, LLC*, No. 1:20-cv-03715-APM (D.D.C.), ECF 3 ¶¶ 36, 204.  Dr. Martin is designated only by DOJ Plaintiffs; therefore this brief is directed only at DOJ Plaintiffs.

desires for data privacy and personalized services; and (d) the academic literature and associated empirics do not support the claim that more competition would lead to more data privacy.  *Id.* ¶ 9.

In contrast, DOJ Plaintiffs did not disclose a standalone expert on privacy in the initial round; instead, they proffered expert economists offering opinions on a range of subjects, including opinions on privacy.  Specifically, two of the five experts disclosed by the DOJ Plaintiffs opined on matters relating to privacy.[3]  The first, economist Dr. Michael Whinston, submitted a report spanning 535 pages and 1,404 numbered paragraphs; the discussion of privacy comprises seven pages and 16 numbered paragraphs.  Whinston June 6 Report at 483–90.  Dr. Whinston opines that what he calls "the absence of search competition" has caused Google to "not improve[] its Search privacy policies as significantly or quickly as it would have in a more competitive market."  *Id.* ¶ 1224.  The second, behavioral economist Dr. Antonio Rangel, includes an "opinion on the impact of these search engine defaults on how consumers weigh privacy in their search engine choices."  Rangel June 6 Report ¶ 6.  Dr. Rangel's privacy-specific analysis spans seven paragraphs.  He concludes that "consumers' current search engine choices do not provide a sound metric of the value of consumer privacy" because consumers are biased in favor of default search engines and "confused" about privacy in search.  *Id.* ¶ 134.

In the second/rebuttal round of expert reports exchanged August 5, the DOJ Plaintiffs did not disclose a new expert focused specifically on privacy to rebut Dr. Tucker.  Rather, DOJ Plaintiffs' rebuttal to Dr. Tucker consisted of opinions from their previously-disclosed economists, Drs. Whinston and Rangel.  Dr. Whinston's response to Dr. Tucker comprises two

---

[3] The Colorado Plaintiffs' proffered expert economist, Dr. Jonathan Baker, made passing references to privacy in his report disclosed June 6; it contains even less specifics than the DOJ Plaintiffs' experts.

pages of his 230-page report; Dr. Rangel's response to Dr. Tucker is the singular focus of his 24-page report.  Dr. Tucker submitted a rebuttal report (Ex. B, Tucker Aug. 5 Report) responding to the privacy-related opinions offered by Drs. Whinston and Rangel in their opening reports.[4]

The parties exchanged reply reports on September 26.  As in the rebuttal round, Google's privacy-focused expert Dr. Tucker responded to the privacy-related rebuttal opinions offered by the DOJ Plaintiffs' experts Drs. Whinston and Rangel, and vice versa.  This time, however, DOJ Plaintiffs also disclosed a new expert, Dr. Kirsten Martin, who submitted a "reply" report focused exclusively on privacy.  *See* Ex. C, Martin Sept. 26 Report.  Dr. Martin's report is styled as a response to Dr. Tucker's rebuttal of Drs. Whinston and Rangel, but that is a charade.  Surely recognizing the impropriety of offering new opinions by a new expert witness in the final round of reports, Dr. Martin's report tries to dress up her new opinions as points that Dr. Tucker supposedly "fails to consider."[5]  Dr. Martin opines regarding "consumer privacy preferences and expectations regarding non-contextual, secondary uses of online data."  Martin Sept. 26 Report ¶ 9(a).  She contends that certain uses of Google search profile data for the purpose of returning personalized advertising would constitute a "non-contextual, secondary" data use that would violate users' privacy expectations.  *Id.* ¶¶ 19, 20.  These contentions have never before been made by Plaintiffs, whether through their experts, allegations in DOJ Plaintiffs' Amended Complaint, or interrogatory responses.

---

[4] Dr. Tucker also responded to the Colorado Plaintiffs' expert.

[5] Dr. Martin also responds to Google's economist Dr. Kevin Murphy in paragraphs 35-38 of her report.  *See* Ex. C.  The rebuttal is grouped together with, and contains the same analysis as, her response to Dr. Tucker.  It is untimely for all of the same reasons.

**LEGAL STANDARD**

Federal Rule of Civil Procedure Rule 26(a)(2) requires a party to make its expert disclosures "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D). A party may not rely on witnesses not disclosed in accordance with Rule 26(a)(2) "unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).

Rule 26(a)(2) anticipates a two-step process for expert disclosures.  Rebuttal reports are limited to expert testimony "intended *solely* to contradict or rebut evidence on the same subject matter" identified by another disclosure.  Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). When authorized by the court, parties may also file a "sur-rebuttal" or "reply" report.  Ordinarily, because the expert disclosure process contemplates a narrowing of issues, parties may not designate a new expert at the reply stage.  *Lopez v. Travelers Home & Marine Ins. Co.*, 2020 WL 13490513, at *3 (D. Colo. June 19, 2020) ("[I]f expert B rebuts expert A, expert A will be able to address the defects in expert B's testimony"); *see Ford Motor Co. v. Versata Software, Inc.*, 2018 WL 5306637, at *5 (E.D. Mich. Feb. 8, 2018) (reasoning parties should not be able "to secretly prepare rebuttal experts whose work would not be subject to a direct response from an opposing expert").[6]

That narrowing of the issues is what the parties and the Court contemplated here.  As described by DOJ Plaintiffs, the purpose of the third round was to afford the parties "the chance to serve a reply *in support of the opening report*."  ECF 70 at 4 (emphasis added).  And the Court

---

[6] Since plaintiffs usually bear the burden of proof and the party with the burden of proof on an issue addresses the matter in its initial disclosure, plaintiffs' expert disclosures are generally aimed at proving the elements of their claim.  *U.S. Bank, N.A. v. Glogowski L. Firm, PLLC*, 339 F.R.D. 579, 581 (W.D. Wash. 2021).  Accordingly, if a plaintiff's designated "rebuttal" expert opines for the first time on a topic "essential to proving [their] case-in-chief," their opinions are not proper rebuttal.  *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1192 (S.D. Cal. 2016).

observed that it expected the third round would allow the parties to "sharpen" the issues and lines of inquiry regarding the opinions previously disclosed.  *See* ECF 88 at 28.

Responsive reports that are, in fact, "untimely and improperly disclosed initial expert report[s] in violation of Rule 26(a)(2)" must be excluded unless the violation was "substantially justified or harmless."  *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 19 (D.D.C. 2013). The disruption resulting from the untimely disclosure of experts is not harmless.  *See Kinder Morgan*, 159 F. Supp. 3d at 1193 (holding that plaintiff's late disclosure was "not harmless when [the "rebuttal" expert] should have been disclosed as an initial expert, which would have given [defendant's] experts months to prepare rebuttal reports"); *see also Antoine v. J.P. Morgan Chase Bank*, 2009 WL 5842054, at *3 (D.D.C. Aug. 13, 2009) (emphasizing that untimely disclosures undercut the opposing party's ability to make strategic decisions and may result in additional litigation costs).  And a party cannot cure the prejudice resulting from their untimely expert disclosure by offering the opposing party a chance to depose the new expert as "some sort of concession or compromise."  *Lytes v. D.C. Water & Sewer Auth.*, 2007 WL 9718949, at *2 (D.D.C. May 9, 2007).

## ARGUMENT

Under the guise of a "reply" report, DOJ Plaintiffs introduced a new expert and advanced a new theory in support of their case-in-chief that they failed to timely disclose.  This tactic violates both the letter and the spirit of the CMO and the Federal Rules of Civil Procedure.

Dr. Martin's report offers the never-before-disclosed theory that certain uses of data would comprise a "secondary, non-contextual use" and thus allegedly harm consumers by violating their privacy expectations.  This report pertains to new issues that should have been disclosed in the opening round of reports; indeed, it does not even properly respond to Dr.

Tucker's rebuttal of DOJ Plaintiffs' experts' opening round reports (the only allowed purpose for reply reports).  Parties may not subvert the expert disclosure process by secretly preparing and strategically designating new "rebuttal" experts during the final round of expert disclosures. *Lopez*, 2020 WL 13490513, at *2 ("[N]either the Scheduling Order nor the Federal Rules of Civil Procedure contemplate sur-rebuttal expert witnesses."); *see also Williams v. Aviles*, 2022 WL 2643559, at *4 (D.D.C. July 8, 2022) (excluding expert where the party made a "strategic choice" that gave rise to the late disclosure).

Plaintiffs' untimely disclosure contravenes the CMO, as well as the requirements of Rule 26(a).  Accordingly, Plaintiffs must demonstrate their violation of was "substantially justified" or "harmless" to evade the "self-executing sanction" of Rule 37(c)(1).  *Williams v. Aviles*, 2022 WL 2643559, at *3.

Plaintiffs have not provided any explanation, much less a "substantial justification," for failing to timely designate a privacy expert to support their privacy arguments.  The Court should exclude the Martin Report on this basis alone.  *See Blake*, 292 F.R.D. at 19 ("Plaintiff has never argued that [the] report could be viewed as an excusably late initial expert report, and, consequently, he has not shown that his failure to timely and properly disclose the testimony 'was substantially justified or harmless.'").

Exclusion is also appropriate because the untimely disclosure resulted from, at best, DOJ Plaintiffs' "lack of diligence."  *Hajjar-Nejad v. George Washington Univ.*, 2012 WL 13168550, at *3 (D.D.C. Nov. 13, 2012).  The Martin Report does not rely on any information that was not available when DOJ Plaintiffs filed their initial and rebuttal expert disclosures, and it was not unforeseeable that DOJ Plaintiffs would rely on expert testimony to support its argument that, notwithstanding Google's data privacy controls that allow users to control how their data is

collected and used, consumers are somehow harmed by Google's privacy practices.[7]  *See Kinder Morgan*, 159 F. Supp. 3d at 1193 (excluding the plaintiff's "rebuttal" expert because the expert opined on topics "essential to proving the [plaintiff's] case-in-chief" that the plaintiff should have expected to prove by introducing such expert testimony and noting plaintiff's designation of the expert as "rebuttal" was "disingenuous, at best").   "[T]he trial court is under no obligation . . . to rescue a party from its own lack of diligence," *Williams*, 2022 WL 2643559, at *4, and there is no reason the Court should do so here.

Because DOJ Plaintiffs' failure to timely disclose Dr. Martin is neither substantially justified nor harmless, the appropriate remedy is exclusion.  The parties have gone back and forth over several months with multiple rounds of expert reports spanning thousands of pages, and are now in the midst of expert depositions on a tight time schedule in the period leading up to summary judgment and *Daubert* motions.  Untimely disclosed expert reports under this schedule are highly prejudicial and surely are not harmless.  Moreover, any lesser sanction would reward DOJ Plaintiffs for their attempt to sandbag Google at the eleventh hour with a "reply" report that should have been disclosed many months ago.

## CONCLUSION

For the foregoing reasons, Dr. Martin's expert report should be struck.

Dated: October 10, 2022

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  /s/ John E. Schmidtlein
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024

---

[7] For their part, DOJ Plaintiffs would not suffer any prejudice from exclusion of Dr. Martin's opinions because their timely-disclosed experts have offered opinions on privacy.

Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*