IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

        Plaintiffs,

v.

GOOGLE LLC,

        Defendant.

Case No. 1:20-cv-03010-APM

HON. AMIT P. MEHTA

**U.S. PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF U.S. PLAINTIFFS' PRIVACY EXPERT**

  The Court should reject Google LLC's motion to exclude the report and testimony of Dr. Kirsten Martin because her report was properly disclosed pursuant to the Federal Rules of Civil Procedure ("Federal Rules") and the Court's Amended Case Management Order ("CMO"). Dr. Martin, a privacy professor at the University of Notre Dame, is a well-published scholar and director of Notre Dame's Technology Ethics Center. U.S. Plaintiffs ("Plaintiffs") disclosed Dr. Martin as an expert witness on data privacy issues and served her reply report on September 26, 2022, consistent with the CMO.

  Google's argument to exclude Dr. Martin's testimony on procedural grounds—a drastic remedy in any case—finds no support in the CMO, the Federal Rules, or the relevant precedent. Put simply, there is nothing improper or even particularly novel about a reply report from an expert who did not file an initial report. Similarly, by arguing that Dr. Martin's reply report is not really a reply, Google ignores the document's contents. Every opinion offered by Dr. Martin directly and explicitly addresses the rebuttal reports of Google's experts Dr. Catherine Tucker and, to a lesser degree, Dr. Kevin Murphy. Dr. Martin did not need to be disclosed as one of

1

Plaintiffs' initial experts because her testimony is not part of Plaintiffs' case-in-chief. Rather, her opinions are solely responsive in nature. At trial, Plaintiffs would only call Dr. Martin to address and rebut testimony from Dr. Tucker.

Google's motion should be denied for the additional reason that Google cannot show any prejudice. Plaintiffs disclosed Dr. Martin's reply report on the date required by the CMO, six weeks before the end of expert discovery, and a full year before trial. Any prejudice Google claims here results from its own gamesmanship. Plaintiffs have proposed two separate deposition dates for Dr. Martin, neither of which Google has accepted. And Plaintiffs offered to provide Dr. Tucker an opportunity to serve a sur-reply to Dr. Martin's report (without disrupting the expert discovery schedule). Google likewise refused this offer. With these tactics, Google has sought to curate its prejudice claim at the cost of resolving any genuine concerns.

The Court should deny Google's request to exclude Dr. Martin's report and testimony.

## BACKGROUND

Plaintiffs' initial expert reports explain the privacy harms caused by Google's monopolization of general search. Plaintiffs' expert Dr. Michael Whinston, an economist specializing in microeconomics and industrial organization, concluded in his initial report that privacy is an axis of competition among general search engines, and that Google's monopolization of general search both (1) prevents privacy-focused search engines from gaining the scale they need to improve their offering and (2) insulates Google from the competitive pressure that would force it to improve its own privacy practices. Dr. Antonio Rangel, an economist specializing in behavioral economics, neuroeconomics, and decision neuroscience, explained in his initial report how default effects (users' tendency to stick with default settings) and choice friction (the effort or complexity involved in switching from one choice option to

another) can frustrate users that would prefer a more private, general-search experience.

In countering these initial privacy opinions, Google served the rebuttal report of Dr. Tucker. Dr. Tucker purports to bring specialized academic expertise in privacy to bear in attacking Plaintiffs' experts' initial opinions. Her rebuttal report (the "Tucker Rebuttal") alleges that Dr. Whinston's and Dr. Rangel's initial reports failed, in analyzing privacy competition and users' privacy preferences, to consider scholarship and other evidence regarding users' "heterogeneous" attitudes towards privacy and regarding the tradeoffs between privacy and search engine functionality. Google also served the rebuttal report of Dr. Kevin M. Murphy ("Murphy Rebuttal"), which incorporated aspects of Dr. Tucker's initial report in criticizing Plaintiffs' experts' initial privacy opinions.

The Tucker Rebuttal argues—counterintuitively—that consumers do not prefer more privacy to less. Leveraging her opinion that search users are largely indifferent to privacy concerns, she argues that increased search competition would *not* necessarily result in increased privacy. The Tucker Rebuttal cites a host of academic articles in support of rebuttal opinions that purport to define "data privacy," divine users' true privacy preferences, and tout the "privacy paradox" as an explanation for users' online choices.

Both Dr. Whinston and Dr. Rangel filed reply reports, and each addressed the Tucker Rebuttal primarily by pointing out the irrelevance of its arguments to their initial conclusions. To combat those aspects of the Tucker Rebuttal that purport to rely on privacy expertise, Plaintiffs engaged Dr. Martin. Dr. Martin's short (24 page) reply report does not offer any opinions that would be part of Plaintiffs' case in chief at trial. Indeed, if Dr. Tucker did not appear at trial, neither would Dr. Martin. What Dr. Martin's reply report does do is explain—from the perspective of one privacy expert evaluating the work of another—the serious flaws in the

3

Tucker Rebuttal. Specifically, the Tucker Rebuttal (1) fails to account for how users' preferences regarding data privacy change depending on how their data is used (e.g., whether Google is using personal data for a primary or secondary use); and (2) presents an outdated and misleading perspective on the academic scholarship concerning users' privacy preferences.

Although expert reply reports were not due under the CMO until September 26, the parties began discussing expert deposition schedules earlier in the month. As part of that process, on September 23, 2022, Plaintiffs notified Google that Plaintiffs intended to serve an expert report from a privacy expert, and proffered her for deposition on November 15 and 16, 2022. (Plaintiffs later offered November 9 and 10, 2022, as alternate dates.). On September 26, 2022, Plaintiffs timely provided Dr. Martin's reply report. On October 3, 2022, Google informed Plaintiffs that it intended to move to strike Dr. Martin's reply report. After Plaintiffs asked Google for the specific bases of its motion, Google provided a two-sentence response citing the Federal Rules and the CMO without detailing any specific harm Google suffered or laying out ways to address Google's concerns short of a motion to strike.

On October 10, 2022, two weeks after receiving the Tucker Rebuttal, Google filed its motion to exclude Dr. Martin's reply report. Google did not request a meet-and-confer call before filing, as required by Local Rule 7(m), depriving Plaintiffs of an opportunity to understand any prejudice Google suffered and attempt to resolve the issue without Court intervention. On October 16, 2022, in an attempt to resolve the dispute, Plaintiffs offered Google the opportunity to file a sur-reply responding to Dr. Martin's report if Google agreed to withdraw its motion. On October 17, 2022, Google declined Plaintiffs' offer.

# ARGUMENT

I. **Dr. Martin's Reply Report Is Proper And Timely Under The CMO And Federal Rules**

The Court should conclude that Dr. Martin's reply report was timely and, accordingly, reject Google's motion.

The Federal Rules provide that litigants must disclose expert witnesses "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Through the CMO, the Court in this case set deadlines for disclosing experts and exchanging expert reports. ECF No. 108-1, 263. The CMO required the parties to serve expert reply reports on September 26, 2022. Plaintiffs followed the CMO, timely serving Google with Dr. Martin's reply report on the September 26 deadline, along with all other reply reports. Thus, Google's arguments for excluding Dr. Martin's report are unavailing.

*First*, Google's argument that reply reports under the CMO are limited to reports from previously disclosed experts has no support in the CMO's text. Def. Google LLC's Mot. to Exclude the Report and Testimony of DOJ Pls.' Untimely Disclosed Expert ("Google's Mot. to Exclude"), ECF No. 398, at 1, 2 (arguing reply reports are limited to reports "in support of the opening report"). The CMO contains no ban or limitation on disclosing properly cabined reply reports from a new expert: the CMO merely sets a date—September 26, 2022—as the "Deadline for Parties to serve reply expert report(s)." *See* ECF No. 263 at 2. That plain language is straightforward and dispositive. If Google wanted a CMO provision barring the disclosure of new experts in the reply round, it should have sought such a prohibition.

Google points to nothing in the Federal Rules, the CMO, or the relevant case law that prevents a new expert from filing a properly limited reply report. On the contrary, courts have found that a new expert is particularly appropriate, as with Dr. Martin, where the response relies

5

on qualifications that a party's initial experts do not possess or concerns issues raised in second-round rebuttal reports. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2015 WL 4451579, at *4 (N.D. Cal. July 20, 2015) (rejecting argument that newly disclosed rebuttal expert was untimely, where the expert provided only rebuttal opinions and used specialized expertise to address arguments made by the opposing party's experts); *Masimo Corp. v. Philips Elec. N.A. Corp.*, No. 09-cv-80, 2016 WL 4394359, at *2 (D. Del. Aug. 15, 2016) (finding that a new expert was appropriately disclosed in the reply round, when that expert responded to issues raised by the defendant's rebuttal expert).

Google's motion puts misplaced emphasis of Plaintiffs' statement in the December 11, 2020, Joint Status Report that reply reports should be "in support of the opening report." Google's Mot. to Exclude, ECF No. 398, at 1, 2 (citing ECF No. 70 at 4). Nothing in that statement suggests that reply reports must come only from previously disclosed experts.

*Second*, Google's argument that Dr. Martin's report is not a proper reply report—and is instead an "untimely and improperly disclosed *initial* expert report," Google's Mot. to Exclude at 7 (emphasis added)—fares no better. Courts have held that expert reports must be disclosed in the initial round only if that expert's testimony is "essential" to Plaintiffs' case-in-chief. *See California v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1193 (S.D. Cal. 2016). Indeed, the Federal Rules contemplate a separate, later-in-time disclosure deadline for rebuttal experts that do not fall within the party's case-in-chief. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (establishing later deadlines for experts used "solely to contradict or rebut").

Here, Dr. Martin is not an initial expert—and did not need to be disclosed as such—because her testimony is not part of Plaintiffs' case-in-chief. Rather, her testimony is intended solely to address testimony by Dr. Tucker. In other words, had Dr. Tucker not relied on

6

specialized academic expertise in data privacy to criticize Plaintiffs' initial experts, Dr. Martin's opinions would not be necessary at all. Of course, Google does not argue that Dr. Martin's opinions are irrelevant or would not be helpful to the Court in understanding how privacy is important to consumers when they enter queries into general search engines.

Dr. Martin's reply report contains three primary opinions, each squarely aimed at flaws in the rebuttal arguments of Google's experts:

- *The Tucker Rebuttal is flawed* in its critiques of the Whinston and Rangel Reports because it fails to account for consumer privacy preferences and expectations regarding non-contextual, secondary uses of online data;
- *The Tucker and Murphy Rebuttals are flawed* in their critique of the Whinston and Rangel Reports, because they rely on outdated studies to conclude that consumers are indifferent to privacy policies, trade privacy for functionality, or act according to the privacy paradox; and
- *The Tucker Rebuttal's criticism* of the Whinston and Rangel Reports for overlooking Google's existing Search privacy options *fails* to acknowledge that Google Search's default privacy settings are poorly matched to the privacy preferences of most users and fails to explain why Google couldn't simplify the process by which users could choose options that better match their privacy preferences.[1]

Martin Reply Report, ¶ 9 (emphasis added). These opinions are quintessentially the type that need not be disclosed as an initial report because they critique the opinions offered by Google's experts and it is "not always possible for a party fully and accurately to predict the full scope of its adversary's expert testimony." *In re CRT*, 2015 WL 4451579, at *4 (declining expert disclosure requirement that would "foreclose the possibility of a party responding to unanticipated expert testimony").

To the extent Google argues that Dr. Martin's reply report should have been served in the

---

[1] Dr. Martin's Reply Report was attached as Exhibit C to Google's Motion to Exclude.

rebuttal round (rather than the reply round), that too is incorrect.[2] Every argument that Dr. Martin addressed was raised in the rebuttal reports of Dr. Tucker and Dr. Murphy. The fact that some of those arguments were also raised, in some form, in Google's initial expert reports does not make those arguments off-limits when Google's experts expanded and reframed them to attack Plaintiffs' experts in the rebuttal round. Further, if Google's dispute boils down to whether Plaintiffs should have disclosed Dr. Martin's report in August (rebuttal round) or September (reply round), Google's lack of prejudice—as discussed more fully below—is all the more clear.

Google's approach invites gamesmanship into the expert disclosure process. Under Google's theory, Google could have leveled any attack at Plaintiffs' experts in Google's rebuttal reports—and Plaintiffs would have been blocked from enlisting an additional expert in the field to rebut those attacks. That approach would undermine rather than serve the reason expert testimony exists: to sharpen the issues and provide helpful insights to the fact-finder. *In re CRT*, 2015 WL 4451579, at *4 (rejecting argument to exclude rebuttal expert on procedural grounds because it "would work a substantial unfairness and deny the jury a complete picture of the parties' contentions.").

None of Google's cases supports Google's attempt to exclude Dr. Martin's testimony on procedural grounds. In two, the challenged reports were not served until after expert discovery had closed entirely. *See Williams v. Aviles*, No. 20-cv-931, 2022 WL 2643559 (D.D.C. July 8, 2022) (challenged report served three months after close of expert discovery); *Hajjar-Nejad v. George Washington Univ.*, No. 10-cv-00626, 2012 WL 13168550 (D.D.C. Nov. 13, 2012) (challenged report served one month after close of expert discovery). Here, by contrast, Dr.

---

[2] Google argues that Dr. Martin's report should have been submitted "earlier," Google's Mot. To Exclude at 1, but does not say whether it believes Dr. Martin's reply properly could have been submitted in the rebuttal round.

Martin's report was served with more than six weeks remaining in expert discovery.

In another case cited by Google, the challenged disclosure occurred well after the court's deadline for the final round of expert reports. *See Lopez v. Travelers Home & Marine Ins. Co.*, No. 19-cv-02456, 2020 WL 13490513 (D. Colo. June 19, 2020) (challenged expert report disclosed after deadline to disclose rebuttal reports). Google's motion mistakenly attributes a quotation to *Lopez* that cannot be found in the opinion: "[I]f expert B rebuts expert A, expert A will be able to address the defects in expert B's testimony." *See* Google's Mot. to Exclude at 6. Although not in *Lopez*, the quotation appears to be from *Houle v. Jubilee Fisheries, Inc.*, No. 04-cv-2346, 2006 WL 27204, at *2, n.4 (W.D. Wash. Jan. 5, 2006), and concerned an expert declaration filed several weeks after the deadline for the last round of expert reports.

Google's reliance on *Ford Motor Co. v. Versata Software, Inc.*, is also misplaced. In *Ford*, the challenged reply report was "largely redundant" of a reply filed by another expert, and the sponsoring party "offer[ed] no reason why [the challenged expert] was uniquely qualified," to reply to the other side's rebuttal expert. No. 15-cv-10628 (consolidated with No. 15-cv-11624), 2018 WL 5306637, at *6 (E.D. Mich. Feb. 8, 2018). That is not true here: Dr. Martin possesses expert qualifications in data privacy that are not duplicative of any of Plaintiffs' other experts. Finally, *U.S. Bank, N.A. v. Glogowski L. Firm, PLLC* is inapposite because, there, the court decided to *admit* challenged expert testimony to the extent it properly contradicted an opposing expert. 339 F.R.D. 579, 583 (W.D. Wash. Aug. 3, 2021).

Plaintiffs' disclosure of Dr. Martin and service of her reply report occurred on the date the Court mandated in the CMO. Her report is appropriately limited in scope, intended solely to contradict Google's rebuttal opinions on privacy. Her particular expertise allows her to fully address Google's expert, thereby supporting Plaintiffs' experts' initial privacy opinions. For

9

these reasons, Dr. Martin's reply report is timely and proper under the CMO and Federal Rules.

## II. Exclusion of Dr. Martin's Reply Report Is Not Warranted Even If It Is Found To Be Untimely

Even if Plaintiffs' disclosure of Dr. Martin's reply report was somehow untimely—and it was not, as explained above—Google's bid to strike her report on procedural grounds still fails. Federal Rule 37 does not require exclusion of Dr. Martin's reply report because any error was harmless and Google has suffered no prejudice.

Under Federal Rule 37, a party that fails to disclose information required by Rule 26(a) is not permitted to use that information as evidence at a hearing or trial *unless* the failure to disclose is harmless. Fed. R. Civ. P. 37(c)(1); *Lytes v. D.C. Water & Sewer Auth.*, Civ. No. 05-402, 2007 WL 9718949, at *2 (D.D.C. May 9, 2007). When deciding whether to exclude proffered evidence under Rule 37, a district court should consider (1) prejudice to the moving party, (2) prejudice to the judicial system requiring the district court to modify its own docket and operations to accommodate the delay, and (3) the need to prevent conduct that is disrespectful to the court and to deter similar conduct in the future. *Id.*

Because preclusion of evidence is an "extreme sanction," a court "must consider less drastic responses before imposing this sanction." *Richardson v. Korson*, 905 F. Supp. 2d 193, 200 (D.D.C. 2012) (internal quotation marks omitted). Courts may permit submission of an expert report "[w]here there is sufficient time to provide the prejudiced party with an opportunity to cure the prejudice," for instance by permitting that party to depose the expert about her opinions in the new report or to submit a sur-reply in response to it. *Id.* (internal quotation marks omitted); *see also In re CRT*, 2015 WL 4451579, at *5 (parties seeking exclusion can "cure[] any prejudice by taking [the expert's] deposition and submitting sur-rebuttal reports").

Rule 37 does not require exclusion of Dr. Martin's report because Google has suffered no

prejudice. First, Google has an opportunity to depose Dr. Martin on her opinions next month, eliminating any harm Google might claim to suffer. *See SD3, LLC v. Rea*, 71 F. Supp. 3d 189, 194 (D.D.C. 2014) ("Another key consideration . . . is whether discovery can be briefly reopened to allow the opposing party to depose the expert" in response to newly disclosed opinions); *see also Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 28 n.16 ("Any harm they do experience . . . can be minimized by allowing defendants to depose the expert if they so choose."); *In re CRT*, 2015 WL 4451579, at *5 (denying motion to strike expert disclosed in third round of expert reports where defendants had opportunity to depose expert on his opinions).[3]

Second, Google has suffered no harm because it has ample time before trial to adjust its litigation strategy based on Dr. Martin's report. *See SD3*, 71 F. Supp. 3d at 194 ("An important consideration . . . is whether the late filed report is submitted well in advance of trial, leaving the opposing party time to adjust its trial preparation"). Dr. Martin's reply report was submitted more than a month and a half before the close of expert discovery, more than two and a half months before the deadline for motions for summary judgment, and nearly a year before the start of trial. Because Google has many months to recalibrate its trial strategy, if needed, Google has no cognizable claim of harm from the alleged untimely disclosure of Dr. Martin's report.

Excluding Dr. Martin's report under these circumstances would be inconsistent with Rule 26(a)(2), which was designed to prevent unfair surprise at trial. *See Dormu*, 795 F. Supp. 2d at 28 n.16 (denying motion to exclude untimely expert report submitted "several months prior to trial, leaving defendants with sufficient time to adjust their trial preparation"); *Estate of Gaither ex rel. Gaither v. District of Columbia*, Civ. No. 03-1458, 2008 WL 5869876 (D.D.C. Oct. 23,

---

[3] Plaintiffs offered Google a chance to depose Dr. Martin *after* the close of expert discovery—on a date seven weeks after they served her reply report—if needed. Such a deposition would not affect the other dates in the CMO.

2008) (denying motion to exclude supplementation of expert report where trial was not imminent and supplementation did not result in unfair surprise); *Minebea Co. v. Papst*, 231 F.R.D. 3, 5–6 (D.D.C. 2005) ("The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose expert in advance of trial, and to prepare for depositions and cross-examination at trial.").

Finally, Plaintiffs' disclosure of Dr. Martin's report did not prejudice the judicial system or necessitate exclusion to deter similar conduct. Dr. Martin's reply report was fully consistent with the CMO and the Federal Rules and will not affect any significant deadlines in the CMO. Indeed, because of Google's delays in producing back up data for Dr. Edward Fox's initial report, his productions and deposition are on a later track than the other experts, with his deposition now scheduled for November 14 and 15, 2022. There is no reason Google cannot depose Dr. Martin on or before that date.

Google has not articulated any specific prejudice caused by Dr. Martin's report.[4] Google states summarily that the parties are "now in the midst of expert depositions on a tight time schedule in the period leading up to summary judgment and *Daubert* motions" and "[u]ntimely disclosed expert reports under this schedule are highly prejudicial and surely are not harmless." Google's Mot. to Exclude at 9. Those pronouncements do not identify the specific prejudice that would be necessary to support the drastic remedy sought in Google's motion. Courts have permitted untimely expert reports disclosed even after the close of discovery, *see SD3*, 71 F. Supp. 3d at 194, 195, and also where the disclosure required a party to prepare for a deposition on a condensed timeline while drafting a sur-reply, *see In re CRT*, 2015 WL 4451579, at *2, *5.

---

[4] Because Google failed to meet and confer with Plaintiffs before filing its motion, Plaintiffs' awareness of Google's prejudice claims is limited to what is stated in its brief.

In *In re CRT*, for instance, the court rejected a similar claim of prejudice from a purportedly untimely report submitted by a new expert during the third round of expert reports. Although the defendants had only five weeks to investigate the new expert and prepare for his deposition, the court held that:

> [T]he Defendants are represented by a large team of able and experienced counsel for whom five weeks would be adequate to conduct a thorough investigation, prepare for and take Dr. Lys' deposition[,] and draft sur-rebuttal reports. Indeed, defendants [already] cured any prejudice by taking Dr. Lys' deposition and submitting sur-rebuttal reports.

*In re CRT*, 2015 WL 4451579, at *5. That reasoning applies with equal force here, given Google's immense resources and large legal teams.

Google cites a number of cases in which courts excluded untimely expert testimony, but all of those cases are distinguishable because they concerned disclosures made well after the close of discovery, shortly before trial, or after the same expert's report was previously struck; they involved harm that could not be remedied by allowing a deposition or responsive report; or the party opposing the motion failed to argue that untimely disclosure was substantially justified or harmless.[5]

Given Google's refusal to work with Plaintiffs to reduce any of the alleged prejudice

---

[5] *See Williams*, 2022 WL 2643559, at *3, *5 (excluding expert report disclosed three months after close of discovery and six months after deadline for rebuttal reports); *Lopez*, 2020 WL 13490513, at *1 (excluding expert report disclosed after deadline to disclose rebuttal reports, which had been extended once already); *Ford Motor Co.*, 2018 WL 5306637, at *3-*4 (excluding expert report where prejudice could not be "remedied by allowing a deposition and a responsive expert report" because expert's opinion was conclusory and required further supplementation at an indefinite later date); *California*, 15 F. Supp. 3d at 1182 (excluding expert report where plaintiff "did not attempt to make a showing" that its untimely disclosure was substantially justified or harmless); *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 18-19 (D.D.C. 2013) (excluding expert report where court previously granted motion to exclude same expert's testimony and plaintiff failed to argue that untimely disclosure was substantially justified or harmless); *Hajjar-Nejad*, 2012 WL 13168550, at *2-*3 (excluding expert report disclosed after close of discovery); *Antoine v. J.P. Morgan Chase Bank*, Civ. No. 08-615, 2009 WL 5842054, at *1, *3 (D.D.C. Aug. 13, 2009) (excluding expert where failure to disclose had left defendant unsure whether it needed to retain an expert to rebut the plaintiff's claims); *Lytes*, 2007 WL 9718949, at *2, *3 (striking an expert witness designation made after the close of discovery and before even a report had been filed).

(including a meet and confer), the Court should reject Google's motion to strike. The Court does not need to modify dates in the CMO, as the deadline for filing motions for summary judgment and *Daubert* motions is still two months away and trial does not begin for nearly a year. Plaintiffs' conduct was consistent with the CMO, but should the Court find Plaintiffs erred, any error arose from a fair misreading of the Court's scheduling order regarding rebuttal reports. Certainly, Google has not provided any basis for striking Dr. Martin's report.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Google's motion to exclude Dr. Martin's reply report.

Dated: October 18, 2022                                     Respectfully submitted,

By:     */s/ Kenneth M. Dintzer*

Kenneth M. Dintzer
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States of America*

By:    */s/ Kelsey Paine*
Ken Paxton, Attorney General
James Lloyd, Chief, Antitrust Division
Kelsey Paine, Assistant Attorney General
Margaret Sharp, Assistant Attorney General
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Kelsey.Paine@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:  /s/ Matthew Michaloski
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director, Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Matthew.Michaloski@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By:  /s/ David A.F. McCoy
David A.F. McCoy, Ark. Bar No.2006100
Senior Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Direct phone: (501) 682-7506
David.McCoy@ArkansasAG.gov

*Counsel for Plaintiff State of Arkansas*

By:  /s/ Brian Wang
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Brian Wang, Deputy Attorney General
Henry Cornillie, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney General
Kathleen Foote, Senior Assistant Attorney General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Brian.Wang@doj.ca.gov

*Counsel for Plaintiff State of California*

15

By:    */s/ Lee Istrail*
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex Enforcement Chief, Antitrust Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:    */s/ Daniel Walsh*
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By:    */s/ Philip R. Heleringer*
Daniel Cameron, Attorney General
J. Christian Lewis, Executive Director of Consumer Protection
Philip R. Heleringer, Deputy Executive Director of Consumer Protection
Jonathan E. Farmer, Assistant Attorney General
Office of the Attorney General, Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

16

By: */s/ Christopher J. Alderman*
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By: */s/ Scott Mertens*
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By: */s/ Stephen M. Hoeplinger*
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By: */s/ Hart Martin*
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By:  /s/ Derek Oestreicher
Derek Oestreicher
Chief Deputy Attorney General
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT 59620-0151
derek.oestreicher@mt.gov
Phone: (406) 444-4500
Fax: 406-442-1894

*Counsel for Plaintiff State of Montana*

By:   /s/ Mary Frances Jowers
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy Attorney General
Mary Frances Jowers, Assistant Deputy Attorney General
Rebecca M. Hartner, Assistant Attorney General
Office of the Attorney General, State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

By:   /s/ Gwendolyn J. Lindsay Cooley
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*