IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br>                         Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br>                         Defendant. | Case No. 1:20-cv-03010-APM <br><br> HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF
<u>DOJ PLAINTIFFS' UNTIMELY DISCLOSED EXPERT</u>**

Much is undisputed about the pending motion: Dr. Martin's report advances an entirely new theory of alleged purported harm to competition, never before advanced by DOJ Plaintiffs during fact discovery or in the reports of their other, timely disclosed experts; Dr. Martin's opinions are unconnected to the opinions offered by the DOJ's timely disclosed experts (indeed, by DOJ Plaintiffs' own admission, those experts do not have the requisite privacy expertise); the portions of Dr. Martin's opinions that are directly responsive to Dr. Tucker address opinions that Dr. Tucker first made in the initial round of reports; and there was no change in circumstance that could give rise to a "substantial justification" for the late disclosure. Where the parties disagree is (i) whether the reply report is permitted under the rules, caselaw, and CMO, and (ii) if not, whether the late disclosure was harmless.[1] For the reasons set forth below and in Google's motion, Dr. Martin's report is impermissible, and DOJ Plaintiffs' late disclosure is not harmless.

---

[1] DOJ Plaintiffs' brief misdescribes the substance of Dr. Tucker's opinions (*e.g.*, Opp. Br. at 3), but the Court need not delve into those issues for the purpose of resolving this motion.

First, Plaintiffs' decision to withhold Dr. Martin's report until the final day of the third round of expert disclosures renders it untimely under any reading of the law and CMO. Dr. Martin's testimony introduces a new theory in support of the DOJ's case-in-chief and responds to opinions that Dr. Tucker advanced in the first round. DOJ Plaintiffs have no response to this, other than to confirm that they will not call Dr. Martin until their rebuttal case. But even if one accepts that Dr. Martin is a proper "rebuttal" expert, the time for her disclosure was the second round, not the third. A careful read of DOJ Plaintiffs' brief makes plain that they have no answer to Google's argument that Dr. Martin's report is styled as a "reply" in name only, as it in fact addresses the opinions that Dr. Tucker offered in her *first-round* report. DOJ Plaintiffs claim only that Dr. Tucker *also* included those opinions in her second-round report. But that does not justify withholding Dr. Martin's report until round three. The closest DOJ Plaintiffs come to explaining their late disclosure is acknowledging that their other experts who opined on privacy in the first and second (and third) rounds lack the requisite credentials. They do not, however, contend that some aspect of Dr. Tucker's second-round report suddenly caused them to realize this fact.

Second, DOJ Plaintiffs fault Google for declining their "compromise" proposals to set a date for Dr. Martin's deposition and to allow Dr. Tucker to submit a sur-rebuttal report. Neither proposal renders the late disclosure harmless, given that the parties are in the midst of a tight expert deposition schedule. DOJ Plaintiffs flip the rules on their head—under their argument, a party could disregard a court's orders, without any justification, and face no consequence. Given the absence of any justification for the strategic surprise disclosure, the appropriate remedy in this circumstance is exclusion.[2]

---

[2] DOJ Plaintiffs' focus on the parties' meet-and-confer process is misplaced. There can be no

# ARGUMENT

### A. DOJ Plaintiffs' Disclosure of Dr. Martin is Untimely and Improper

DOJ Plaintiffs backtrack from their earlier representations to the Court regarding the purpose of the reply round. Opp. Br. at 6. The very same text of the CMO that they previously represented as offering the parties the opportunity to serve reply reports "in support of the opening report," they now say cannot be so read. Remarkably, they contend that it was on Google to have written into the CMO specific language prohibiting the disclosure of new experts in the third round. That the parties and the Court saw no need to add language specifically prohibiting a practice that is not generally permitted (or even attempted) in other cases is unremarkable. In any case, Google's position is certainly not dependent on DOJ Plaintiffs' prior statements. Even on DOJ Plaintiffs' argument, any reply report must be "properly cabined." Opp. Br. at 5.

There are at least two problems with DOJ Plaintiffs' argument that a new expert may file "a properly limited reply report." Opp. Br. at 5. First, despite contending that "there is nothing improper or even particularly novel about a reply report from an expert who did not file an initial report" (Opp. Br. at 1), DOJ Plaintiffs identify only two cases where a reply report from a new expert was permitted—itself an admission that it is not a common practice. Opp. Br. at 5–6 (citing *Masimo Corp. v. Philips Elec. N.A. Corp.*, 2016 WL 4394359 (D. Del. Aug. 15, 2016)

---

dispute that Google provided DOJ Plaintiffs more-than-adequate notice of the motion and the basis for it, and an opportunity to course correct. *At no point did DOJ Plaintiffs ask for any additional explanation or seek to confer further.* Specifically, Google first notified DOJ Plaintiffs of its expected challenge to Dr. Martin on October 3, and gave them the opportunity to withdraw her report. When on October 4 DOJ Plaintiffs asked for further information about the basis for the challenge, Google promptly provided it (that same day). When DOJ Plaintiffs would not agree to brief the issue as part of the JSR, Google on October 6 advised DOJ Plaintiffs that it was going to proceed with filing this motion, and further that it expected to do so early the following week. Google filed the motion Monday of the following week as scheduled.

and *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 4451579 (N.D. Cal. July 20, 2015)). As Google set forth in its opening motion, because the guiding principle in sequencing of expert disclosures is a *narrowing* of the issues, reply reports from new experts with are not ordinarily permitted.

Second, DOJ Plaintiffs' statement begs the question of what constitutes a "properly limited reply report." On that issue, DOJ Plaintiffs provide no support in the caselaw for a reply report that does what Dr. Martin does here. Far from supporting the propriety of allowing Dr. Martin's opinions, the cases DOJ Plaintiffs cite *confirm* that the limited circumstances under which a new expert may be permitted in the reply round are very different than those present here. The *Masimo* court authorized a new expert during the reply round upon finding (i) the new expert testimony "appropriately addresses issues . . . that were *first raised* in Defendants' rebuttal reports"; and (ii) the party seeking to introduce the expert did not "unreasonably withhold arguments or opinions for presentation in a future report." 2016 WL 4394359, at *2 (emphasis added). Similarly, in *In re (CRT) Antitrust Litigation*, the court noted that the testimony to which the new expert was responding was "unanticipated," and further that there was no contention that the rebuttal testimony was new testimony as opposed to proper rebuttal testimony. 2015 WL 4451579, at *4. By contrast, here the issues to which Dr. Martin responds were raised in Dr. Tucker's first-round report, and the DOJ Plaintiffs' decision to withhold their new "secondary use" theory for the third round can only be described as sandbagging. Further, there is nothing unanticipated about the need for DOJ Plaintiffs to substantiate the privacy assertions made in their own complaint or respond to the opinions rendered by Dr. Tucker in her initial report.

DOJ Plaintiffs seek to have their cake and eat it too. They contend that their initial expert reports "explain the privacy harms" purportedly caused by the alleged conduct. Opp. Br. at 2.

But they do not dispute that their "non-contextual, secondary use" theory appears nowhere in those reports, and they readily concede that they retained Dr. Martin because their initial experts lack privacy expertise. Opp. Br. at 3-4. Their arguments may make sense if (i) they didn't have the burden of proof on an issue for which they are introducing a new theory into the third round; *and* (ii) Google first disclosed Dr. Tucker in the second/rebuttal round. But neither is true, and Dr. Martin therefore is doubly improper.

Because DOJ Plaintiffs have the burden of proof on this issue, whatever privacy expertise they believed they needed to prove their case should have been identified earlier than the final round. *See* Mot. at 6 n.6. DOJ Plaintiffs note that initial round disclosures are only required where the testimony falls within the party's case-in-chief. Opp. Br. at 6. That is precisely the point: this is an element on which DOJ Plaintiffs have the burden of proof. Indeed, their lone cited case on this issue, *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1193 (S.D. Cal. 2016), confirms that exclusion is appropriate where, as here, the plaintiff offers a new expert in rebuttal to opine on an element the plaintiff has to prove.[3]

As set forth in Google's motion and not disputed by DOJ Plaintiffs, rebuttal expert evidence is limited to testimony "intended *solely* to contradict or rebut evidence on the same subject matter" identified by another disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). Far beyond offering opinions responsive to Dr. Tucker's opinions, Dr. Martin introduces an entirely new theory of harm, purportedly relevant to Plaintiffs' case-in-chief, regarding what

---

[3] In *Kinder Morgan*, the plaintiff's theory of damages for its nuisance claim was based on the alleged deprivation of water resources. Yet the plaintiff did not initially disclose a water expert, whereas, the defendant disclosed two. In response, the plaintiff disclosed a new water expert in "rebuttal" to the defendant's water experts, which the court excluded. *Kinder Morgan*, F. Supp. 3d at 1193 (excluding expert because the new expert's "opinion and testimony are essential to proving the [plaintiff's] case-in-chief—its entitlement to 'loss of use' water damages—and are not proper rebuttal").

she calls "non-contextual, secondary uses of online data." Ex. C to Google's Mot. (Martin Sept. 26 Report) ¶ 9(a). Dr. Martin cannot transform her report into a "rebuttal" by submitting it under the guise that Dr. Tucker "failed to consider" the then-undisclosed theory. Otherwise, virtually any new theory on which a plaintiff bears the burden may be included in an entirely new expert's "rebuttal" report by claiming the other side's experts "failed to consider" it. It is no answer to say, as DOJ Plaintiffs do, that they will only call Dr. Martin in their rebuttal case. Calling her as a rebuttal witness does not justify withholding her newly-minted opinions on harm when, as here, the first and second rounds provided an opportunity earlier to propound them.

Second, as to the remaining portions of Dr. Martin's report (that is, apart from the new theory of harm), they are improper for similar reasons: they were not disclosed until the third round. Beyond the new theory of harm, DOJ Plaintiffs' opposition describes the principal additional focus of Dr. Martin's report as criticizing the scholarship Tucker relies on. Opp. Br. at 4. *However, every one of the articles that Dr. Martin addresses was relied on by Dr. Tucker in her first-round report.*[4]

DOJ Plaintiffs' primary defense of Dr. Martin's opinions as proper rebuttal is to quote from Dr. Martin's report, which frames her opinions in terms of what Dr. Martin calls "flaws" in the Tucker Rebuttal. Opp. Br. at 7. To be clear, Google agrees that the report is *styled* as a reply and that Dr. Martin's opinions are—on their face—couched as rebuttal to Dr. Tucker's rebuttal of Drs. Whinston and Rangel. But as Google stated in its motion and as DOJ Plaintiffs do not directly address, that is a charade. The concepts and opinions that Dr. Tucker relies on in rebutting Drs. Whinston and Rangel in her second-round report are the very same concepts and

---

[4] There is only one article cited in the Tucker Rebuttal Report that was not cited in the Tucker Initial Report (*see* Ex. B to Google's Mot. at 14, fn. 26), and that article is not mentioned or addressed by Dr. Martin.

opinions that Dr. Tucker relied on in her opening report. DOJ Plaintiffs concede as much: rather than point to anything *new* that Dr. Tucker disclosed in her second-round report, they say (only generically) that "Google's experts expanded and reframed [their opinions in the initial reports] to attack Plaintiffs' experts in the rebuttal round." Opp. Br. at 8. Once again, DOJ Plaintiffs leave Google and the Court to guess at what they are referring to. If DOJ Plaintiffs had specifics on any new developments that could justify a third-round report by a new expert, they would have identified them—instead, they essentially concede that the opinions that Dr. Martin's third-round report responds to were present in Dr. Tucker's first-round report.

DOJ Plaintiffs' brief reads as though Dr. Tucker did not submit a first-round report. For example, DOJ Plaintiffs argue, "had Dr. Tucker not relied on specialized academic expertise in data privacy to criticize Plaintiffs' initial experts, Dr. Martin's opinions would not be necessary at all." Opp. Br. at 6–7. Elsewhere DOJ Plaintiffs say, "[t]o combat those aspects of the Tucker Rebuttal that purport to rely on privacy expertise, Plaintiffs engaged Dr. Martin." Opp. Br. at 3. Just as Dr. Tucker's opinions did not change between her first and second round reports, neither did her privacy expertise or her reliance on that expertise to offer her opinions in this case. Again, DOJ Plaintiffs give no specifics about the "aspects" of the Tucker Rebuttal that they are referring to—because to do so would reveal that those same opinions were contained in the Dr. Tucker's first-round report.

Upholding the distinction between second round/rebuttal and third round/reply reports by excluding the Martin Report does not mean "Google could have leveled any attack at Plaintiffs' experts in Google's rebuttal reports—and Plaintiffs would have been blocked from enlisting an additional expert in the field to rebut those attacks." Opp. Br. at 8. That is a red herring. Dr. Tucker's second-round/rebuttal report employs the same principles and opinions from her initial

7

report to respond to the privacy-related arguments made by DOJ Plaintiffs' experts. If DOJ Plaintiffs thought they needed an expert with privacy credentials to bolster the opinions of their other non-privacy experts in responding to Dr. Tucker's privacy opinions, the time to do so was (at latest) the second round. DOJ Plaintiffs simply do not confront this flaw in their argument.

DOJ Plaintiffs go to great lengths to try and distinguish the cases cited by Google where courts struck untimely disclosures in similar circumstances.[5] But they miss the forest for the trees—the overwhelming weight of authority forbids exactly the sandbagging that DOJ Plaintiffs engage in here, and they are left without any authority that approves of their tactics. DOJ Plaintiffs' belated disclosure violates Rule 26(a)(2), subjecting their expert to exclusion under Rule 37(c)(1). *See Williams v. Aviles*, 2022 WL 2643559, at *3 (D.D.C. July 8, 2022).

### B. The Appropriate Remedy is Exclusion

DOJ Plaintiffs do not dispute the applicable legal standard: they must demonstrate their violation of Rule 26 was "substantially justified" or "harmless" to evade the self-executing sanction of Rule 37(c)(1). *See* Mot. at 8; Opp. Br. at 10. DOJ Plaintiffs do not argue substantial justification (nor could they). They contend only that "any error was harmless and Google has suffered no prejudice." Opp. Br. at 10.

---

[5] For example, DOJ Plaintiffs contend that *Kinder Morgan*, where the court excluded an expert who was untimely disclosed before the close of discovery, is distinguishable because, there, the plaintiff 'did not attempt to make a showing' that its untimely disclosure was substantially justified or harmless." Opp. Br. at 13 n.5. But the court explicitly recognized that the plaintiff "*argued that the late disclosure was harmless*." *Kinder Morgan*, 159 F. Supp. 3d at 1193 (emphasis added). And according to DOJ Plaintiffs, *Lopez v. Travelers Home & Marine Ins. Co.*, 2020 WL 13490513 (D. Colo. June 19, 2020), is also distinguishable even though the untimely disclosure occurred before discovery closed because the "expert report [was] disclosed after [the] deadline to disclose rebuttal reports, which had been extended once already." Opp. Br. at 13 n.5. The fact that the untimely disclosure was characterized as a supplemental report does not make the case meaningfully distinguishable.

DOJ Plaintiffs improperly seek to convert their burden to show that their late disclosure is harmless into a burden on *Google* to show insurmountable prejudice. But prejudice need not be debilitating to trigger Rule 37(c)(1) sanctions. It is not Google's job to "articulate[] any specific prejudice," Opp. Br. at 12—rather it is DOJ Plaintiffs' burden to show *harmlessness*.

In any case, Google's motion outlined how the late disclosure is not harmless, and prejudices Google. If Dr. Martin was properly disclosed in the first, or even second, round of expert reports, Google would have had the opportunity to prepare a responsive report addressing her new theory of harm (and would have been allocated either 60 or 50 days to do so, depending whether it was a first or second round report), and would have been able to plan for the depositions of experts on those issues.

DOJ Plaintiffs fault Google for not agreeing to their proposals that they say will "reduce" any prejudice. Opp. Br. at 2, 13. The first point DOJ Plaintiffs make is that they have offered dates for Dr. Martin to sit for a deposition. Opp. Br. at 2, 11. That is certainly no cure for the untimely disclosure. DOJ Plaintiffs also note their proposal—made after Google filed its motion, and not during the parties' exchange the week leading up to Google's filing—that, if Google agreed to withdraw its motion, they "would not oppose" a sur-reply from Dr. Tucker to be submitted "no later than October 24." Email from K. Herrmann to C. Connor (Oct. 12, 2022); Opp. Br. at 2, 13-14. DOJ Plaintiffs' offer is no cure, because it proposed to give Dr. Tucker a fraction of the time that responsive experts had to prepare reports in this case. *See Kinder Morgan*, 159 F. Supp. 3d at 1193 (holding that untimely disclosure was harmful because it limited opposing party's time to respond).

DOJ Plaintiffs mistake the fact-intensive inquiry courts often undertake to determine the appropriate sanction for an untimely disclosure as a bright line rule against exclusion here.

9

Exclusion is warranted where, as here, the untimely disclosure results from a party's "own strategic choices." *Williams*, 2022 WL 2643559, at *4. DOJ Plaintiffs deliberately waited until the last round of disclosures to reveal their new expert and new theory so that Google would not have the opportunity to respond. Accordingly, allowing DOJ Plaintiffs to present Dr. Martin's testimony would "subvert[] the expert disclosure process." *Lopez*, 2020 WL 13490513, at *3 (internal quotation marks omitted) (recognizing that "any prejudice defendants suffer may be curable" but nonetheless striking testimony from a new witness disclosed under the guise of a "supplemental report"). "[T]reating the Scheduling Order as a frivolous piece of paper to be disregarded whenever a party so chooses harms the administration of justice and flies in the face of the parties' obligations." *Id.* at *2.

Google does not dispute the Court's broad discretion in resolving discovery matters and recognizes that exclusion may not be the appropriate sanction in every case. However, DOJ Plaintiffs have not shown why exclusion is not warranted here, and the "'overwhelming weight of authority is that preclusion is *required* and *mandatory* absent some unusual or extenuating circumstances—that is, a substantial justification.'" *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 19 (D.D.C. 2013) (emphasis in original).

## CONCLUSION

For the foregoing reasons, Dr. Martin's expert report should be struck.

Dated: October 25, 2022                    Respectfully submitted,

                                           WILLIAMS & CONNOLLY LLP

                                           By: */s/ John E. Schmidtlein*
                                           John E. Schmidtlein (D.C. Bar No. 441261)
                                           Benjamin M. Greenblum (D.C. Bar No. 979786)
                                           Colette T. Connor (D.C. Bar No. 991533)

680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

*Counsel for Defendant Google LLC*