## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                      Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                      Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>▓▓▓▓▓▓▓▓▓▓▓ |

**DEFENDANT GOOGLE LLC'S MOTION TO EXCLUDE THE**
**OPINION OF PLAINTIFFS' EXPERT MICHAEL A. M. DAVIES**

Pursuant to Federal Rule of Evidence 702, Defendant Google LLC ("Google") respectfully moves to exclude the opinions of DOJ Plaintiffs' proffered expert Michael A. M. Davies as set forth below, and any reliance thereon.

## <u>INTRODUCTION</u>

The testimony and opinions of Plaintiffs' proposed expert, Mr. Davies, should be excluded because his opinions do not meet the reliability or relevancy requirements of Rule 702.  Plaintiffs have proffered Mr. Davies as a purported expert on smartphones, and retained him to offer opinions as to (i) "*why* smartphone vendors and wireless carriers agree to" certain contractual arrangements with Google (the "Android Agreements"), and (ii) *how* those agreements allegedly impact vendors' and carriers' ability to offer "differentiated" smartphones.  *See* Ex. 1, June 6, 2022 Expert Report of Michael A. M. Davies ¶¶ 10, 12 (emphasis added); *see also* Ex. 2, Sept. 26, 2022 Reply Report of Michael A. M. Davies ¶¶ 1–2.  For each of the independently sufficient reasons provided below, Mr. Davies' testimony should be excluded.

***First***, Plaintiffs have not satisfied their burden to show that Mr. Davies has the requisite "reliable basis in the knowledge and experience of [the relevant] discipline" to offer testimony in the present action in the first place.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  As Mr. Davies' deposition testimony makes apparent, neither his training, teaching experience, work experience, nor anything else qualify him to offer opinions about the Android Agreements.  Plaintiffs also have not demonstrated that Mr. Davies' opinions are the product of reliable principles and methodologies.

***Second***, Mr. Davies' testimony is not reliable because it guesses at the reasons and motivations for third-party witnesses' actions in a thinly veiled attempt to impermissibly use expert testimony as a substitute for fact testimony that Plaintiffs failed to elicit during discovery.  The

principal conclusions of Mr. Davies' reports amount to nothing more than speculation about the reasons why smartphone vendors and wireless carriers enter into the Android Agreements, and the effect those agreements have on their decisions with respect to smartphone features and offerings. *See* Ex. 1 ¶ 12.  These opinions violate the well-settled precept that an expert may not simply offer conjecture about the motivations underlying third parties' actions.  *See In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004).  Nor can a party substitute expert testimony for available percipient witness evidence.  *See LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-cv-7242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (citation omitted) (explaining testimony from fact witness familiar with documents in question would be "far more appropriate" than expert's "secondhand knowledge").  Tellingly, Mr. Davies himself admitted that those third-party fact witnesses—all of whom were deposed in this case—are the appropriate source of evidence on motivations and impact, *see* Ex. 3, Deposition of Michael A. M. Davies (Oct. 26–27, 2022) at 330:15–20, and conceded that he did not speak with a single smartphone vendor or wireless carrier about the Android Agreements in preparing his reports, *see id.* at 62:5–22.

      ***Third***, Mr. Davies' testimony is irrelevant to the issues in this case.  This case concerns alleged monopoly maintenance of general search services; but Mr. Davies repeatedly admitted that he does *not* offer opinions on the impact of Google's conduct on search competition.  *See*, *e.g.*, *id.* at 84:1–5 ("I am not offering any opinion on competition amongst search services."); *id.* at 359:18–360:2 ("I am not offering any opinions on search services.").  Nor can Plaintiffs salvage Mr. Davies' testimony by relying on it to support the opinions of others:  Mr. Davies' opinions either have no connection to issues in this litigation (such as his opinion on deprecation of certain open-source Android applications) or are superfluous of available fact witness testimony.  Mr. Davies' opinions cannot assist the trier of fact in resolving factual disputes, and they should be excluded.

Put simply, Plaintiffs cannot carry their burden to establish that Mr. Davies' opinions are reliable and relevant.  For all of the reasons provided below, his testimony should be excluded.

## BACKGROUND

**1.    Testimony by Relevant Fact Witnesses During Discovery**

As the Court is aware, fact discovery in this matter was extensive.  Representatives of each of the two major U.S. Android smartphone manufacturers (or what Davies calls "smartphone vendors," Ex. 1 ¶ 16 n.4) and the three major U.S. wireless carriers were all deposed, including: (1) ███████████████████████████████████████████████████████████████ ████ ; (2) Samsung Electronics America's former President and CEO; (3) Samsung Electronics America's former Senior Vice President of Product Marketing; (4) T-Mobile's Vice President of Partnerships and Business Development; (5) AT&T's Vice President of Business Development; and (6) Verizon's Senior Vice President of Device Marketing and Consumer Products.

These smartphone vendor and carrier depositions addressed the reasons why smartphone vendors and wireless carriers enter into the so-called Android Agreements—namely, (i) the Anti-Fragmentation Agreements (the "AFAs") or Android Compatibility Commitments (the "ACCs"); (ii) the Mobile Application Distribution Agreements (the "MADAs"); and (iii) the Revenue Sharing Agreements (the "RSAs," and together with the AFAs/ACCs and MADAs, the "Android Agreements")—as well as the effect that the Android Agreements have on their consumer offerings.[1]

---



2.      **Mr. Davies' Opening Report**

On June 6, 2022, Plaintiffs served Mr. Davies' Opening Report, which contains five interconnected conclusions centered on the Android Agreements.  Mr. Davies first opines that what he calls "Google's proprietary Android" is "the only compelling licensable OS" available in the United States.  Ex. 1 ¶¶ 12–13, 115; *see generally id.* ¶¶ 14–31.  In support, he alleges that Google made its version of Android the only viable solution for smartphone vendors by offering certain must-have services, such as Google Play, only through the MADA.  *See id.* ¶¶ 67, 83; Ex. 2 ¶ 37.  Mr. Davies also asserts that Google "degraded" and "removed" a number of "core apps" from the open-source version of the Android platform known as AOSP.  Ex. 1 ¶¶ 39–42, 49–52.  Mr. Davies then offers four more opinions:

*Conclusion 2:*



*Conclusion 3:*



*Id.* ¶ 12.  While Conclusions 2 and 3 purport to explain the reasons ***why*** smartphone vendors and wireless carriers enter into the Android Agreements, Conclusions 4 and 5 attempt to address ***how*** those agreements have impacted smartphone vendors' and wireless carriers' decisions and ability to offer differentiated smartphone offerings to consumers.  *Id.* ¶¶ 10, 12–13.

3.    **Mr. Davies' Reply Report**

On September 26, 2022, Mr. Davies served a Reply Report containing four Reply Conclusions that ostensibly respond to the opinions of Google's expert economist, Professor Kevin M. Murphy.  These Reply Conclusions effectively restate his Opening Report Conclusions and make clear that his opinions have not changed in light of Mr. Murphy's reports.  *See* Ex. 2 ¶ 4. Specifically, Reply Conclusions 1, 2, and 3 reiterate Mr. Davies' views on ***why*** smartphone vendors and wireless carriers enter into the Android Agreements and their resulting impact.  *See, e.g.*, *id.*  Reply Conclusion 4 effectively repeats Opening Report Conclusion 4, contending that

█████████████████████████████████████████████████████████████

█████████████████████████████████████  *Id.*  According to Mr. Davies, the Android

Agreements do this by ████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████

Mr. Davies' reports disclose no opinions on the impact of Google's conduct on search competition in any proposed relevant antitrust market.

4.      **Mr. Davies' Deposition**

Mr. Davies was deposed on October 26 and 27, 2022.  He testified that he is an engineer by training who now primarily serves as an expert witness in patent cases and a consultant for a variety of technology companies.  *See* Ex. 3 at 15:21–17:7, 26:7–20.  While he has done past work for wireless carriers and smartphones vendors, ***he refused to disclose the details of any of that work.***   *Id.*  at  18:14–19:1 ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████; *id.* at 21:14–20 ████████████████████

████████████████████████████████████████████████

████████████████.  He further admitted that he did not have any prior relevant experience with the Android Agreements.  *See id.* at 309:12–310:5 ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████.  He also conceded that he had never even seen an ACC or RSA prior to this engagement, *see id.* at 57:22–58:2, 59:8–10, and only once briefly encountered an AFA and MADA ████

███████████████████ *id.*  at  58:17–22 ████████████████████████

████████████████████████████████████████████

And other than that ████████████████████, Mr. Davies said that he had never spoken with a smartphone vendor or wireless carrier about the Android Agreements.  *See id.* at 63:14–64:19

████████████████████████████████████████████████

█████████████████████████████████████

## ARGUMENT

In deciding a motion to exclude expert testimony, the Court acts as a "gatekeep[er]" to ensure that the requirements of Rule 702 are met.  *See Daubert*, 509 U.S. at 597–98.  Plaintiffs

bear the burden of establishing Mr. Davies' qualifications and the admissibility of each of his opinions. *Sykes v. Napolitano*, 634 F. Supp. 2d 1, 6 (D.D.C. 2009). Under Rule 702, an expert must have "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). Moreover, the testimony must be "the product of reliable principles and methods" that "the expert has reliably applied . . . to the facts of the case." Fed. R. Evid. 702(c)–(d); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999) (explaining that the requirements of Rule 702 apply to all forms of expert testimony, including that based on experience).

Despite bearing the burden of establishing Mr. Davies' qualifications and the admissibility of his testimony, *see Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 n.9 (D.C. Cir. 2001), Plaintiffs cannot demonstrate that Mr. Davies is qualified to offer his proffered opinions, which require him to speculate on the motivations of smartphone vendors and wireless carriers and the impact of the Android Agreements on their efforts to offer differentiated smartphones. Mr. Davies also does not offer any relevant testimony, as he admits that he does not opine on the impact of the Android Agreements on search competition.

## I.    PLAINTIFFS CANNOT POINT TO ANY KNOWLEDGE OR EXPERIENCE THAT QUALIFIES MR. DAVIES TO TESTIFY AS AN EXPERT ON THE ANDROID AGREEMENTS AND SMARTPHONES

Plaintiffs cannot establish that Mr. Davies, a self-described expert on smartphones, *see* Ex. 1 ¶ 6, is qualified to offer his proffered opinions. *See Sykes*, 634 F. Supp. 2d at 6 ("The burden is on the proponent of the testimony to show by a preponderance of the evidence that the proffered expert witness is qualified, that his proposed testimony would be useful to the finder of fact, and that the testimony is reliable." (citing *Meister*, 267 F.3d at 1127 n.9)). It is black letter law that expert testimony must be based on "a reliable foundation"—not "subjective belief" and "unsupported speculation." *Daubert*, 509 U.S. at 580, 590. In other words, expert testimony must

be "properly grounded, well-reasoned and not speculative before it can be admitted." *Estate of Gaither v. District of Columbia*, 831 F. Supp. 2d 56, 62 (D.D.C. 2011) (citation and quotation marks omitted).

Moreover, the expert's qualifications must be closely related to the subject matter in question. *See id.* at 69. If an expert relies "primarily" on his "experience" as the alleged basis for his qualification to testify, "then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)). In other words, the party offering an expert witness cannot merely point to the expert's credentials and the fact that the expert "gets it," as these positions are "not only conclusory, but also inadmissible *ipse dixit* in its most classic form." *See Campbell v. AMTRAK*, 311 F. Supp. 3d 281, 302 (D.D.C. 2018).

Here, exclusion is warranted because "[t]he record is devoid of any *meaningful measure of detail* about the extent of" Mr. Davies' relevant knowledge and experience beyond "some knowledge" that was "largely secondhand." *See Gaither*, 831 F. Supp. 2d at 65, 66. Plaintiffs hold Mr. Davies out as an expert on the reasons why smartphone vendors and wireless carriers enter into the Android Agreements with Google and the resulting impact of those Android Agreements on their behavior. As Mr. Davies testified:



Ex. 3 at 25:20–26:6.   But Mr. Davies was unable to provide any basis for these conclusory assertions.   To the contrary, as Mr. Davies made apparent at his deposition, he lacks the requisite foundational personal knowledge or experience to offer opinion testimony in this action.

> **A.     Mr. Davies' Formal Training Does Not Render Him an Expert on the Android Agreements or Related Smartphone Vendor and Carrier Conduct.**

As a threshold matter, Mr. Davies cannot point to any formal training or education as the basis for his expertise.   Mr. Davies is an engineer by training.   *See id.* at 394:17–395:15; Ex. 1 at Ex. A at 2.   Although his credentials may certainly qualify him to serve as an expert in some areas, Mr. Davies has not pointed to anything in his educational background that would qualify him to serve as an expert in this case, particularly with respect to the motivations and conduct of smartphone vendors and wireless carriers in light of the Android Agreements.   *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 17 (D.D.C. 2013) ("Although Dr. Wolfson has impressive credentials, the plaintiffs have not demonstrated how his academic and professional experiences make him qualified to testify" about the issue before the court.); *see also S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) (rejecting expert that "does appear to have expertise in the general area of structured finance, but that is so broad a category as to become meaningless when particularized here to synthetic CDOs, a very specific type of security").   Nor does Mr. Davies' experience teaching ████████████████ ████████████████████████████████████ Ex. 3 at 43:5–11—which may very well qualify him to serve as an expert in patent litigation—qualify him as an expert on the impact of the Android Agreements in an antitrust case.   Rather, as he admitted, his interactions with smartphone vendors and wireless carriers in this capacity have been limited to case studies, student employment opportunities, and university events.   *Id.* at 44:9–17.

**B.      Plaintiffs Cannot Rely on Mr. Davies' Industry Consulting Work to Establish His Expertise Because Mr. Davies Refused to Disclose His Experience.**

While Mr. Davies suggested that he acquired the necessary experience to opine on issues related to smartphones through ███████████ and his prior experience working with smartphone vendors, suppliers, and partners, Mr. Davies could not identify any such experience at his deposition. *See id.* at 25:17–26:6; 30:3–31:6. For example, in connection with his work as founder and chairman of his consulting firm, Endeavour Partners, Mr. Davies was unable or unwilling to detail any relevant prior experience. *Id.* at 18:20–19:9. Mr. Davies instead described ████████████████████████████████████████████████████ ███████████████. *Id.* at 15:21–17:7. Mr. Davies also repeatedly refused to provide details regarding his purported experience working with smartphones, claiming the information is protected by non-disclosure agreements. *See id.* at 21:21–22:13 ██████████████████ ███████████████████████████████████████████; *id.* at 30:13–17 ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.[2]

Plaintiffs cannot claim that Mr. Davies is qualified to testify based on his prior experience when he refused to identify any of that experience. *See DL v. District of Columbia*, 730 F. Supp. 2d 78, 81 (D.D.C. 2010) (finding plaintiffs' proffered expert not qualified to testify as a computer programming expert because he "cited sparse evidence of his experience, and [he] has conclusively

---

[2] *See also* Ex. 3 ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████

stated that he has 35 years experience, without further explanation of what that experience entails"). Having failed to provide "any meaningful measure of detail" regarding how Mr. Davies' prior "experience is a sufficient basis for" any of his opinions, Plaintiffs fall short of their burden of establishing Mr. Davies' expertise. *Gaither*, 831 F. Supp. 2d at 66, 68–69 (emphasis omitted).

And in all events, because Mr. Davies refused to identify the substance of his prior experiences, much less the basis on which those experiences qualify him as an expert on the Android Agreements and smartphones, *see e.g.*, Ex. 3 at 21:21–22:13, 30:13–19, 35:8–11, 64:2– 5, 65:2–8, he cannot rely on that experience as a basis for any purported expertise here, *see Jennings v. Thompson*, 792 F. Supp. 2d 1, 6 (D.D.C. 2011) ("If a party fails to follow the disclosure requirements of Rule 26, the court can prevent the expert from testifying unless the failure to disclose is harmless or substantially justified.").

### C. Mr. Davies' Available Experience Does Not Render Him an Expert on the Android Agreements or Related Smartphone Vendor and Carrier Conduct.

Mr. Davies also admitted that he does ***not*** possess any relevant practical experience with the Android Agreements. *See* Ex. 3 at 309:12–310:5. Mr. Davies never saw an ACC or RSA prior to his engagement in the present action, *id.* at 57:22–58:2, 59:8–10, and while ████████████ ████████████████████████████, *id.* at 58:17–22, ████████████████████ ████████████████████ *id.* In addition, despite seeking to offer several opinions as to the behavior of smartphone vendors and wireless carriers in connection with the Android Agreements, Mr. Davies admitted that he has not spoken with smartphone vendors or wireless carriers about those agreements. *See id.* at 64:10–19 ████████████████████ ████████████████████████████████████ ; *id.* at 63:14–64:1 ████████████████████ ; *id.* at 58:17–19 ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████; *id.* at 59:8–10 ████████████████████

████████████████████████████████; *id.* at 57:22–58:2 ████████████████

███████████████████████████████████

Instead, Mr. Davies admitted that his knowledge of the Android Agreements comes through his engagement by Plaintiffs in the present action. *Id.* at 261:9–11 ████████████████

████████████████████████████████████████████████████████████████████

██████████████; *id.* at 55:9–11 ████████████████████████████████████

████████████████████████████; *id.* at 57:14–15 ████████████████████

██████████████████████. An expert cannot base an opinion on *why* parties enter into an agreement and *how* those agreements affect those parties entirely on his review of documents provided in the litigation. *See, e.g.*, *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 289 F. Supp. 3d 145, 158 (D.D.C. 2018) (excluding expert "opinions on [defendant's] quality control procedures" because the expert "has not established any specialized expertise in quality control procedures beyond reading internal [defendant] documents").

### D. Mr. Davies' Opinions Are Untethered from Any Established Principle or Method.

Nor have Plaintiffs even tried to satisfy their Rule 702 obligations to demonstrate that Mr. Davies' testimony "is the product of reliable principles and methods" applied "reliably to the facts of the case." *Campbell*, 311 F. Supp. 3d at 296–97 (assessing the reliability of expert testimony by "focus[ing] solely on principles and methodology, not on the conclusions that they generate" (citation and quotation marks omitted)). To be reliable, "testimony must be supported by appropriate validation—*i.e.*, 'good grounds,'" *Daubert*, 509 U.S. at 590; *see also Parsi v. Daioleslam*, 852 F. Supp. 2d 82, 89 (D.D.C. 2012) (holding that expert seeking to testify about

professional standards must "identify specific and objective standards, not rely on his personal opinions about what professional standards should be").  An expert witness may not rely solely on a "generic methodology" of "reading" documents to support his conclusions.  *Parsi*, 852 F. Supp. 2d at 89.  Thus, in *Parsi*, the Court excluded expert testimony where plaintiffs failed to detail the specific methodology used by that expert, concluding that the expert's purported methodology of "reading" select documents "was driven less by objective sources and more by his personal views."  *Id*. at 87–90; *see also Chesapeake Climate Action Network v. Export-Import Bank*, 78 F. Supp. 3d 208, 219 (D.D.C. 2015) (finding unreliable an expert's process of reviewing documents and rendering opinions without explaining precisely how those materials led the expert to reach those opinions).

Here, Mr. Davies repeatedly presents conclusions unmoored from any particular principle or methodology.  For example, Mr. Davies declares that Google "removed" or "deprecated" certain "core apps" from AOSP. Ex. 1 ¶¶ 49–52.  In support, he merely cites selective portions of Google's Supplemental Responses and Objections to Plaintiffs' February 20, 2022 Notice of Deposition of Google LLC (the "Google Supplemental 30(b)(6) Response").  *Id.* ¶¶ 50–51 nn.75–85.  This "generic methodology" of "reading" the Google Supplemental 30(b)(6) Response to develop an expert opinion is inadequate.  *See Parsi*, 852 F. Supp. 2d at 87–90.

Mr. Davies' opinions with respect to alleged impacts on smartphone differentiation are deficient for the same reason.  He acknowledges that smartphone vendors and wireless carriers can*,* in fact, offer differentiated smartphones consistent with the Android Agreements. Ex. 3 at 341:17–342:2.  But he nonetheless claims they are prevented from offering ███████████████████████ ████████████████████████████████████████████████ Ex. 2 ¶ 46.  Mr. Davies does not identify any established or commonly accepted industry or academic usage or methodology associated with this ambiguous term.  And his assessment of what qualifies as

█████████████████████████████████████████, is dependent wholly on his "personal views." *See Parsi,* 852 F. Supp. 2d at 87–90.   Absent application of any particular "principles and methodology" associated with his testimony, *see id.* at 85 (citation omitted), the Court cannot assess whether his conclusions are reliable, and they should be excluded.

*      *      *

In sum, the record is "devoid of any meaningful measure of detail" about Mr. Davies' knowledge of and experience with the Android Agreements.   *Gaither*, 831 F. Supp. 2d at 66 (emphasis omitted).  Plaintiffs have not carried their burden to establish that Mr. Davies is qualified to offer any opinions in this action.

## II.   MR. DAVIES' SPECULATION ABOUT THE REASONS FOR SMARTPHONE VENDOR AND CARRIER CONDUCT IS NOT RELIABLE EXPERT TESTIMONY

The Court also should exclude Mr. Davies' Conclusions 2 through 5 of the Opening Report, as well as all opinions in the Reply Report, because they are unreliable conjecture about the motivations of third parties.  "Expert opinions about beliefs, intents, or motives are inadmissible" as "[t]he drawing of inferences, particularly in respect of an intent-implicating question . . . is peculiarly within the province of the fact finder that observed the witnesses." *Kewazinga Corp. v. Microsoft Corp.*, No. 18-cv-4500, 2021 WL 4066597, at *15 (S.D.N.Y. Sept. 1, 2021) ("Because science has not yet invented a way to read minds, inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." (citation and quotation marks omitted)); *see also Daubert*, 509 U.S. at 590, 597.  For that reason, courts consistently "exclude bald conclusions based on the documentary record regarding [a party's] intent or motivations or other topics beyond the scope of [the expert's] expertise." *Westrick*, 289 F. Supp. 3d at 158.

Courts exclude expert opinions "as to the intents or motives underlying the conduct of" third parties because they seek "improperly to assume the role of advocates." *See Rezulin*, 309 F.

Supp. 2d at 546.  Experts may not "simply theorize as to a party's intent based on the factual record," as such "musings" and "inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."  *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 412 (S.D.N.Y. 2015) (citation and quotation marks omitted); *see also Rezulin*, 309 F. Supp. 2d at 546 ("[T]he opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.").  In addition, "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology."  *Tourre*, 950 F. Supp. 2d at 675; *see also Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 183 (S.D.N.Y. 2008) (excluding "factual narrative of events" by expert where expert had "no personal knowledge of these facts and they are lay matters that the [fact finder] is capable of understanding and deciding without [expert] testimony").

Put simply, when the fact finder "is just as competent to consider and weigh the evidence as is an expert witness . . . it is improper to use opinion evidence for [that] purpose."  *See Gilmore v. Palestinian Interim Self-Government Auth.*, 843 F.3d 958, 973 (D.C. Cir. 2016) (citation and quotation marks omitted); *see also DePaepe v. General Motors Corporation*, 141 F.3d 715, 720 (7th Cir. 1998) (Easterbrook, J.) ("[T]he whole point of *Daubert* is that experts can't 'speculate.' They need analytically sound bases for their opinions. District courts must be careful to keep experts within their proper scope[.]").  Thus, in *Westrick*, the court excluded an expert's testimony about defendants' reactions to "the pressure from the business and sales part of [defendant's] organization over [a] period of time," explaining that the finder-of-fact "is competent to read and interpret the evidence relevant to these topics without [the expert's] proffered opinions."  289 F. Supp. 3d at 158; *see also Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) (granting

motion to exclude because expert's "views as to the credibility of defendants' witnesses and defendants' 'real' motivations are simply not relevant").

Mr. Davies' opinions suffer from this same defect.  In Conclusions 2 and 3 of his Opening Report, he seeks to speculate about *why* smartphone vendors and wireless carriers enter into the Android Agreements.  Ex. 1 ¶¶ 53–60, 81–87.  Mr. Davies then goes on to hypothesize about the Android Agreements' impact on smartphone vendors' and wireless carriers' business decisions, claiming that the agreements ████████████████████████████████████████ ████████, *id.* ¶ 81, and ████████████████████████████████████████ ████████     *id.* ¶ 85.  He then contends that the Android Agreements prevent smartphone vendors and carriers from ████████████████████████████████ *Id.* ¶ 117.

Each of these speculative "inferences about the intent or motive of" third parties in signing the Android Agreements impermissibly seeks to substitute Mr. Davies' personal views for evidence that Plaintiffs failed to develop (or did not like) from fact witnesses.  *See Kewazinga*, 2021 WL 4066597, at *16 (excluding testimony where expert "provide[d] his opinions on what Microsoft thought was important by drawing inferences based on Microsoft's public and internal statements").  Mr. Davies, who has no meaningful prior experience with the Android Agreements, reached these conclusions by reviewing the documentary record in this case, and then offering his own views as to *why* the smartphone vendors and wireless carriers entered into those agreements, and how those agreements then allegedly impacted their conduct going forward.  But experts may not "simply theorize as to a party's intent based on the factual record," *On Track Innovations*, 106 F. Supp. 3d at 413, because "the opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of

knowledge or expertise," *Rezulin*, 309 F. Supp. 2d at 547; *see also Highland*, 551 F. Supp. 2d at 183 ("Opining about a party's state of mind, as [the expert witness] does here, is impermissible.").

Nor can such "expert" opinions serve as a substitute for fact testimony. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (expert testimony "is not a substitute for" fact testimony); *see also LinkCo*, 2002 WL 1585551, at *2 (excluding expert testimony on subjects where fact witness testimony would be "far more appropriate" and "renders the expert witness's secondhand knowledge unnecessary for the edification of the jury" (citation and quotation marks omitted)). Importantly, there is already ample factual testimony from representatives of the two major U.S. smartphone vendors and three major U.S. wireless carriers regarding the actual reasons why they enter into the Android Agreements as well as the impact those agreements have on their product offerings. *See, e.g.*, *supra* note 1. And as Mr. Davies himself admitted, the testimony of these smartphone vendors and wireless carriers is the more appropriate source for both motivations and effects. *See* Ex. 3. at 330:15–20 █████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

For example, a representative of ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ And a representative of ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Mr. Davies' testimony is accordingly duplicative of (and not even consistent with) the actual factual testimony of smartphone vendors and wireless carriers. *See also supra* note 1; *Brooke*, 509 U.S. at 242; *LinkCo*, 2002 WL 1585551, at *2.

This is not the first time Mr. Davies violated settled principles by seeking to substitute his "expert" testimony for that of fact witnesses. In *On Track Innovations*, a New York federal court excluded portions of Mr. Davies' opinions in a patent infringement case for improperly presenting opinions drawn exclusively from statements by other fact witnesses. 106 F. Supp. 3d at 412. In doing so, the court noted, for example, that several paragraphs of Mr. Davies' report "simply parrot[ed] the testimony" of a fact witness and that there is "absolutely no reason" that Mr. Davies should be allowed to opine on facts in place of the fact witness, nor any reason that the underlying research demonstrating the fact could not have been introduced directly. *Id.* at 413. Accordingly, the court found that Mr. Davies' testimony "must be excluded." *Id.* For precisely the same reason, this Court should bar Mr. Davies from offering purported expert testimony on the motivations of, or impact of, the Android Agreements.

## III.   MR. DAVIES' OPINIONS ARE NOT RELEVANT TO SEARCH COMPETITION

Even if Mr. Davies were permitted to speculate about smartphone vendors' and wireless carriers' motivations for entering into, or the impact of, the Android Agreements, his testimony should nonetheless be excluded as irrelevant. Testimony is relevant if there is a "fit" between the expert opinion rendered and the issues presented in the case. *Daubert*, 509 U.S. at 591. In assessing relevance, courts "must determine whether the proffered expert testimony is sufficiently tied to the

facts of the case that it will aid the [trier of fact] in resolving a factual dispute." *Ambrosini v. Labarraque*, 101 F.3d 129, 134 (D.C. Cir. 1996) (citation and quotation marks omitted).

Here, Mr. Davies' testimony could only be relevant if it supported Plaintiffs' theory that Google engaged in "anticompetitive conduct" to maintain a purported search monopoly. *See* Am. Compl., ECF No. 94, at 4. Mr. Davies' testimony does no such thing. ***First***, as Mr. Davies stated at his October 2022 deposition, he is "not offering any opinion on competition amongst search services." Ex. 3 at 84:1–5; *see also id.* at 359:18–360:2 ("I am not offering any opinions on search services.").

***Second***, Plaintiffs have not demonstrated that Mr. Davies' testimony could help support the testimony of another expert proffered by Plaintiffs. For example, Mr. Davies' testimony concerning Google's retirement of certain obsolete open-source apps from AOSP is not relevant to liability in this matter because Plaintiffs' lead economic expert (like Plaintiffs' other experts) is not "offer[ing] any opinions in this case about whether Google's development and licensing of the Android operating system is anticompetitive or exclusionary." Ex. 10, Excerpts of the Deposition of Michael D. Whinston (Nov. 9–10, 2022) at 250:16–21. Davies' opinion, in other words, is a bridge to nowhere.

***Third***, none of Mr. Davies' opinions with respect to the supposed impact of the Android Agreements on differentiation relate to ***internet search engines***, which he acknowledges. Ex. 3 at 147:3–13 ("In conclusion 5 I offer no opinion about competition among search providers."); *id.* at 359:4–360:2 ("I am not offering any opinions on search services."). And to the extent Mr. Davies identifies any instance related to the Android Agreements that potentially touches on search services, the Court will, as with the smartphone vendors and wireless carriers, be able to consider available fact witness testimony on these issues, including from witnesses who were already deposed, without the need for superfluous expert testimony. *See LinkCo*, 2002 WL 1585551, at *2 (explaining testimony from fact witness familiar with contracts in question would be "far more appropriate" than

expert's "secondhand knowledge").

There is thus no bridge by which Plaintiffs can link Mr. Davies' testimony to the issues in this case.  Such "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, not helpful."  *See Daubert*, 509 U.S. at 591 (citation and internal quotation marks omitted).

## **CONCLUSION**

For the foregoing reasons, Google's Motion to Exclude the Opinion of Plaintiffs' Expert Michael A. M. Davies should be granted, and his opinions should be excluded.

Dated: December 12, 2022                          Respectfully submitted,

                                                  WILLIAMS & CONNOLLY LLP

                                                  By: _/s/ John E. Schmidtlein_
                                                  John E. Schmidtlein (D.C. Bar No. 441261)
                                                  Benjamin M. Greenblum (D.C. Bar No. 979786)
                                                  Colette T. Connor (D.C. Bar No. 991533)
                                                  680 Maine Avenue, SW
                                                  Washington, DC 20024
                                                  Tel: 202-434-5000
                                                  jschmidtlein@wc.com
                                                  bgreenblum@wc.com
                                                  cconnor@wc.com

                                                  WILSON SONSINI GOODRICH & ROSATI P.C.
                                                  Susan A. Creighton (D.C. Bar No. 978486)
                                                  Franklin M. Rubinstein (D.C. Bar No. 476674)
                                                  Wendy Huang Waszmer (D.C. Bar No. 1631078)
                                                  1700 K Street, NW
                                                  Washington, DC 20006
                                                  Tel: 202-973-8800
                                                  screighton@wsgr.com
                                                  frubinstein@wsgr.com
                                                  wwaszmer@wsgr.com

                                                  ROPES & GRAY LLP
                                                  Mark S. Popofsky (D.C. Bar No. 454213)
                                                  2099 Pennsylvania Avenue, NW
                                                  Washington, DC 20006
                                                  Tel: 202-508-4624
                                                  Mark.Popofsky@ropesgray.com

                                                  Matthew McGinnis (admitted *pro hac vice*)
                                                  Prudential Tower
                                                  800 Boylston Street
                                                  Boston, MA 02199
                                                  Tel: 617-951-7703
                                                  Matthew.McGinnis@ropesgray.com

                                                  *Counsel for Defendant Google LLC*