# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**■■■■■■■■■■■**

**PLAINTIFF STATES' OPPOSITION TO GOOGLE'S MOTION TO PARTIALLY
EXCLUDE THE OPINION OF PLAINTIFFS' EXPERT JONATHAN BAKER**

# TABLE OF CONTENTS

INTRODUCTION .............................................................................................................. 1

RELEVANT BACKGROUND .......................................................................................... 1

   A.    Prof. Baker's qualifications as an economist. ................................................... 1

   B.    Prof. Baker's opinions regarding scale. .......................................................... 3

   C.    Prof. Baker's opinions related to privacy. ....................................................... 7

ARGUMENT ...................................................................................................................... 8

   A.    Legal Standard .................................................................................................... 8

   B.    Prof. Baker is qualified to give economic opinions about competitive effects in any industry, including the search engine industry. ............................ 9

   C.    Prof. Baker properly rebuts Prof. Murphy's economic opinion related to scale, which is based on the work of a computer science expert, Prof. Fox. ....................................... 11

   D.    Prof. Baker's statements about scale and his acknowledgement that search firms differentiate themselves by offering different levels of privacy protection are not improper narration. ....................................................... 14

   CONCLUSION .................................................................................................................. 16

# INTRODUCTION

Google seeks to exclude antitrust economist Prof. Jonathan Baker's opinions on economies of scale, network effects and market differentiation because Google disputes the factual bases that support them. Google's motion should be denied for three reasons. *First*, Google claims that Prof. Baker must be qualified as a search engine expert to provide *economic* opinions about the search engine industry, but no such requirement exists. Qualified antitrust economists routinely apply economic principles to different industries without being separately qualified as experts in the underlying industry – which is also true for the three economists Google has retained in this case. *Second*, based on his understanding supported by Google documents, Google and ███████ deposition testimony, and an interview with a ███████ witness, Prof. Baker properly critiques Google economist Prof. Murphy's reliance on a technical study put forth by a computer science professor. *Third*, Prof. Baker appropriately discloses the factual basis for his assumptions and explains how they support his economic opinions as required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii) – he is not merely narrating the facts. The appropriate way for Google to challenge Prof. Baker's factual assumptions is "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not by seeking to exclude Prof. Baker's opinions. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 596 (1993). Google's motion to partially exclude the opinions of Prof. Baker should be denied.

## RELEVANT BACKGROUND

### A. Prof. Baker's qualifications as an economist.

Prof. Baker is an economist specializing in antitrust, industrial organization economics, and regulation with over 35 years of experience in academia and government service. Ex. A,

Expert Report of Jonathan Baker (June 6, 2022) ("Baker Opening Rep.") ¶¶ 73-75 & Appendix B. He has served in senior U.S. government positions involving antitrust and regulation, which include serving as the Chief Economist of the Federal Communications Commission from 2009 to 2011 and as the Director of the Bureau of Economics at the Federal Trade Commission from 1995 to 1998. *Id.* ¶ 74. Prof. Baker received an A.B. and a J.D from Harvard University, and a Ph.D. in economics from Stanford University. *Id.* ¶ 73. Google recognizes Prof. Baker's expertise as an economist. Defendant Google LLC's Mot. to Partially Exclude the Op. Plaintiffs' Expert Jonathan Baker ("Google Mot.") at 6 ("Professor Baker is an economist by training."), 10 ("Professor Baker's credentials as an economist may qualify him to serve as an expert on certain economic matters . . .").

Prof. Baker submitted three reports which provide opinions on the economic issues relating to all facets of the States' claims that Google's conduct harmed competition. These opinions concern market definition, market power, exclusionary conduct, and competitive effects. Ex. A, Baker Opening Rep. ¶¶ 1-68 (executive summary), ¶ 69 (assignment). He also provides background on the general search industry and explains how the economic concepts of scale economies and network effects apply to an assessment of competitive effects in that industry. *Id.* ¶¶ 76-147. Prof. Baker also identifies ways that general search firms may compete against one another, one of which is through offering improved privacy protections. *Id.* ¶¶ 86, 149, 214, 219, 237, & 341. Prof. Baker notes that his "conclusions are based on [his] review and analysis of materials in the case record, public documents, and economic literature" and that "[f]actual assertions based on those materials should be understood as assumptions on which [his] economic analysis is based." *Id.* ¶ 70.

**B.  Prof. Baker's opinions regarding scale.**

Prof. Baker explains that as a matter of economic theory, Google's scale advantage has limited the ability of rivals and potential entrants to compete away Google's market power. *See* Ex. B, Reply Report of Jonathan B. Baker (Sept. 25, 2022) ("Baker Reply Rep.") ¶ 110. Google accounts for nearly ███████████████ the general search queries as its next closest rival, Bing. Ex. A, Baker Opening Rep. ¶ 317. Prof. Baker explains that no general search rival can make up this scale gap with users, even if it offers them a better search experience, without attracting users whose devices are already subject to one of Google's exclusive default agreements. *Id.* ¶ 318. Moreover, Google's pre-existing massive scale advantage and high market share make it far less likely that a search access provider like █████ would accept a bid from a much smaller rival, because the search access provider would understand that the rival's ability to expand and increase scale would be limited by Google's other exclusive default agreements. *Id.* ¶ 320.

Prof. Baker makes the factual assumption that the scale gap matters because user side data can have a substantial effect on search quality. Prof. Baker notes that "[g]reater scale, in terms of the number of users and search queries, ultimately helps a general search firm improve the quality of the search results it provides in response to specific search queries," because greater scale allows the general search firm to more quickly accumulate information on what users are looking for. *Id.* ¶¶ 20, 142. In support of this assumption, Prof. Baker cites to multiple sources of record evidence, including internal Google correspondence on the "Role of Scale in Google's Business," which states, "[e]very search query conducted on Google yields more data that lets us continue to refine our search engine algorithms . . . ." Ex. C, Varian (Google) March 1, 2022 Deposition Ex. 17 (GOOG-DOJ-03357872-874 at -872) cited at Ex. A, Baker Opening

Rep. ¶ 142 n.160; *see also* Ex. A, Baker Opening Rep. ¶ 142 n.161; Ex. B, Baker Reply Rep. ¶ 115 & n.286; ¶ 122 & n.305; ¶ 123 & nn.306-10; ¶ 124 & nn.311-13; ¶ 125 & nn.314-16. Based on the assumption that user data scale contributes to search quality, Prof. Baker notes that "in terms of economic concepts, this effect can be understood alternatively as a scale economy . . . . A firm experiences scale economies in supply if its average costs decrease as its output rises (within some time period)." Ex. A, Baker Opening Rep. ¶ 142 n.161. Prof. Baker opines that absent Google's conduct restricting competition, ad-supported general search rivals to Google such as Bing would find it easier to increase their scale in search. *See, e.g., id.* ¶¶ 317 & 343. In short, Prof. Baker explains that Google's rivals need scale to compete against Google's market power, but Google's anticompetitive conduct ensures that Google's rivals do not achieve that scale.

Prof. Baker also analyzes how Google's general search advertising business benefits from its scale advantage in search, relying in part on the economic concept of indirect network effects, also known as demand-side scale economies. *Id.* ¶ 143 n.162 (explaining that the value of advertising to an advertiser increases as the number of search users grows); *id.* ¶ 238 ("Google's high user share also gives it a substantial advantage in attracting advertisers, many of which value advertising on a search firm more the more users it has (network effects)"); *see id.* ¶ 61 ("Google's high share in the general search services market means that it operates at a scale that is a substantial multiple of any other firm's scale" which "contributes substantially to Google's advantages in search result quality, ad targeting quality, and revenues per search over its rivals."). As one source of support, Prof. Baker cites to a presentation given by Google's chief economist Hal Varian, discussing demand- and supply- side economies of scale. *Id.* ¶ 143 n.162 (citing Varian (Google) March 1, 2022 Deposition Ex. 9 (GOOG-DOJ-033913-962 at -917)

attached as Ex. D); *see also* Ex. E, Excerpts from Varian Dep. Tr. 22:5-10; 141:16-143:13, March 1, 2022 (testimony establishing Varian's position with Google and confirming that he gave the presentation in Exhibit 9). Prof. Baker further notes that, "[a]s a general matter, network effects and scale economies make it difficult for a rival to achieve comparable advantages in demand and supply when there are user switching costs . . . ." Ex. A, Baker Opening Rep. ¶ 238, n.315.

Prof. Baker further opines that the increase in Google's scale attributable to Google's exclusive search default agreements would not have improved the quality of Google's own search results by much because of diminishing returns. *Id.* ¶ 62. Prof. Baker relies on evidence that the scale of user data matters materially until a general search firm's market share reaches approximately ▮. Ex. B, Baker Reply Rep. ¶ 122 n.305. Google's market share is well above this threshold.

Google challenges the factual assumption that scale matters to search quality. As noted in its motion, Google elicited testimony from fact witnesses intended to minimize the importance of user query scale in search engine development. Google Mot. at 3-4. Google also submitted expert reports from a computer scientist, Prof. Edward Fox.[1]  Prof. Fox interprets a Google internal data reduction experiment to opine that scale is not a "barrier to entry," while recognizing that "click and query data is important and useful for modern search engines . . . ." Ex. F, Excerpts from Expert Report of Edward A. Fox (June 3, 2022) ("Fox Opening Rep.") p. 62.

---

[1] Google also submitted expert reports from another computer scientist, Prof. Ophir Frieder. Prof. Baker does not address Prof. Frieder's reports.

Prof. Kevin Murphy, one of Google's retained economists, relies on Prof. Fox's technical study as an assumption underlying his opinion that in the but-for world, additional search volume (i.e., scale) that rivals would receive would not have enhanced their ability to compete. Ex. G, Excerpts from Expert Report of Kevin M. Murphy (June 6, 2022) ("Murphy Opening Rep.") ¶¶ 781-88. Prof. Murphy makes this claim despite having no background in computer science. Ex. H, Excerpts from Murphy Dep. Tr. 225:16-21, Nov. 21, 2022 ("Q. Some amount of click-ad-query data is a valuable input into the provision of high-quality search services? Again, I'm not the best person to ask for that. That's more of a technical question."); *Id.* 231:21-22 ("I'm an economist; **I'm not a search technical expert.**" (emphasis added)). Prof. Murphy interprets Prof. Fox's study to conclude that "the results of [Prof. Fox's] data reduction experiment are contrary to what one would expect if the value of incremental click and query data were material at ▮▮▮▮ scale." Ex. G, Murphy Opening Rep. ¶ 787.

Prof. Baker rebuts Prof. Murphy's claims by relying on the factual record and his expertise as an economist to reach the conclusion that "search result quality increases with firm scale" and that this effect can compound over time. Ex. B, Baker Reply Rep. ¶¶ 123, 126 & n.317. In particular, he relies on the testimony of multiple witnesses, including ▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮.[2] *Id.* ¶ 123 n.306 (citing ▮▮▮ Dep. Tr. at 183-89, 226, April 21, 2022). He also relies on an interview with ▮▮▮▮▮, as well as an internal Google discussion noting that Google tends to "under-estimate the effect of only seeing a fraction of the overall query stream, compounded over decades." *Id.* ¶ 126 n.317 (quoting GOOG-DOJ-

---

[2] Prof. Baker also relies on the testimony of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, along with multiple other sources. Ex. B, Baker Reply Rep. at ¶ 123 n.306 & 310; ¶ 127 n.320.

18925605 at 617-18). On this basis, Prof. Baker critiques Prof. Murphy's opinion based on Prof.

Fox's study because the study fails to account for the fact that Google's search algorithm has

benefitted from a long series of improvements over many years. *Id.* ¶ 126. Google cannot have it

both ways – it proffered Prof. Murphy's opinion relying upon Prof. Fox and cannot now deny

Prof. Baker the opportunity to critique Prof. Murphy's use of that study as a part of his economic

analysis.

### C. Prof. Baker's opinions related to privacy.

Product differentiation is well established in economics as a key aspect of competition.[3]

Prof. Baker states that one way that search firms may differentiate themselves from others in the

market is by offering different levels of privacy protection (Ex. A, Baker Opening Rep. ¶ 9); in

particular, he notes that the general search firm DuckDuckGo "promotes itself as offering greater

protection for personal data and privacy than Google and Bing" as "it does not store user search

histories" (*Id.* ¶ 86). Citing Google's own internal presentations, Prof. Baker supports this factual

assumption with record evidence, including the fact that ███████████████████

████████████████████. Ex. B, Baker Reply Rep. ¶

190 n.535 (citing, *e.g.*, GOOG-DOJ-13115029-106 at 039, excerpt attached as Ex. L (illustrating

that ██████████████████████████████

███. Prof. Baker then offers the economic opinion that, given that some search firms market

themselves as offering more privacy protections than Google, they could likely "compete more

on privacy in a more competitive market." *Id.* ¶ 190. Contrary to Google's assertions, Prof.

---

[3] Ex. I, DENNIS W. CARLTON & JEFFREY M. PERLOFF, MODERN INDUSTRIAL ORGANIZATION 194 (3rd ed. 2000); Ex. J, JEAN TIROLE, THE THEORY OF INDUSTRIAL ORGANIZATION 277 (7th prtg. 1994); Ex. K, CARL SHAPIRO & HAL R. VARIAN, INFORMATION RULES: A STRATEGIC GUIDE TO THE NETWORK ECONOMY 28-31 (1998) (ebook).

Baker does not "gauge DuckDuckGo's or Google's offerings in privacy." Google Mot. at 14. Rather, he observes that privacy is one dimension on which search engines attempt to compete – a form of product differentiation that some consumers may prefer. Ex. A, Baker Opening Rep. ¶ 9. This is standard economic analysis.

## ARGUMENT

Google's motion to partially exclude Prof. Baker's opinions under Federal Rule of Evidence 702 should be denied for three reasons: (1) Google incorrectly claims Prof. Baker cannot render any opinions related to the importance of scale to search quality because he is an economist, not a computer science expert, despite the fact that Google's own economist does the same; (2) Prof. Baker properly rebuts Google's economist's opinion that scale is not materially relevant to search quality by applying economic analysis to the factual record; and (3) Prof. Baker does not merely narrate the factual record but rather properly discloses the facts that support his economic opinions on issues of scale and privacy, as required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii).

### A. Legal Standard

In considering whether to exclude expert testimony under Rule 702, the court assumes only a "limited gate-keep[ing] role directed at excluding expert testimony that is based upon subjective belief or unsupported speculation." *Harris v. Koenig*, 815 F. Supp. 2d 6, 8 (D.D.C. 2011) (internal quotations and citation omitted).  Even this limited gatekeeping requirement "is substantially relaxed when the judge will serve as factfinder in a trial, as the court will in this case . . . ."  *EIG Energy Fund XIV, L.P. v. Petróleo Brasileiro S.A.*, No. 1:16-cv-00333 (APM), 2022 WL 3153861, at *35 n.22 (D.D.C. Aug. 8, 2022) (Mehta, J.) (internal quotations omitted). "Rejection of an expert's testimony is the exception rather than the rule." *Heller v. District of Columbia*, 952 F. Supp. 2d 133, 141 (D.D.C. 2013) (internal quotations omitted). The

appropriate way to challenge an expert's allegedly "shaky" factual assumptions is "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596.

### B. Prof. Baker is qualified to give economic opinions about competitive effects in any industry, including the search engine industry.

Google does not, and cannot, argue that that Prof. Baker is not a qualified economist and Google does not challenge the vast majority of Prof. Baker's opinions in this case. Google only asserts that Prof. Baker is not qualified to offer an opinion "on the issue of how search engine quality and performance is impacted by additional user data." Google Mot. at 10. But Prof. Baker does not offer an opinion that requires computer science expertise; rather, he applies his economic analysis to factual assumptions supported by the record. It is "sound economic practice to review the factual record and formulate a hypothesis that can be tested using economic theory . . . ." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 53 (D.D.C. 2017) (quoting *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 424 (E.D. Pa. 2015)). Under Rule 702, qualified economists like Prof. Baker (and Google's three retained economists) need not be separately qualified as an expert in the underlying industry at issue. *See Premier Comp Sols. LLC v. UPMC*, No. 2:15cv703, 2019 WL 480480, at *5 (W.D. Pa. Feb. 7, 2019) (holding that economist's lack of specific expertise in the "workers' compensation insurance industry is of no moment" because his "academic qualifications and experience as an antitrust economist certainly gives him the ability to analyze" the markets at issue); *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, No. 13-cv-1215, 2016 U.S. Dist. LEXIS 184126, at *5-7 (D.D.C. Sept. 21, 2016) (holding that economic expert was qualified to testify despite his lack of expertise in and independent knowledge of the particular conduct in the case).

Specifically, Prof. Baker applies the economic concepts of scale economies and network effects to the factual assumptions drawn from the case record and opines that greater scale – a greater number of general search users and search queries – helps a general search firm learn how to respond better to specific search queries and makes itself more valuable to advertisers.[4] Ex. A, Baker Opening Rep. ¶¶ 142-47 (citing internal Google documents, testimony from multiple ███████ witnesses, and a public source); Ex. B, Baker Reply Rep. ¶¶ 121-28 (citing internal Google documents, an internal ███████ document, testimony from multiple witnesses, an interview with a ███████████, and a public article). Based on these facts, Prof. Baker concludes that absent Google's anticompetitive conduct, Google's general search rivals would find it easier to increase their scale in search and therefore be in a position to compete more effectively. Ex. A, Baker Opening Rep. ¶ 343.

Under the guise of challenging Prof. Baker's qualifications, Google merely disputes the factual support for Prof. Baker's economic opinions. Google does not challenge the "general concepts of economies of scale," but claims that they do not apply to the search engine industry. Google Mot. at 2. To support its own version of the facts, Google also cites to testimony it elicited during discovery that merely shows that factors other than scale can improve search quality. *See* Google Mot. at 3-4. As discussed above, Prof. Baker cites ample support for his assumption that scale materially impacts a search engine's quality and attractiveness as a competitor, raising a factual dispute. Google's critiques of Prof. Baker's factual assumptions underlying his economic opinions are not sufficient to exclude those opinions under Rule 702.

---

[4] Ex. M, HAL R. VARIAN, INTERMEDIATE MICROECONOMICS: A MODERN APPROACH 678-92 (J. Repcheck ed., 8th ed. 2010.); Ex. N, LUIS M. B. CABRAL, INTRODUCTION TO INDUSTRIAL ORGANIZATION 254-55, 399 (2nd ed. 2017); Ex. O, B. DOUGLAS BERNHEIM & MICHAEL D. WHINSTON, MICROECONOMICS 271-73 (2nd ed. 2014).

*See Bocoum v. Daimler Trucks N. Am. LLC*, No. 17 Civ. 7636, 2022 WL 902465, at *16 (S.D.N.Y. Mar. 28. 2022) (stating that criticism of the expert's "methodology and assumptions . . . may be explored at trial," and collecting cases); *In re Disposable Contact Lens Antitrust Litig.*, 329 F.R.D. 336, 372 (M.D. Fla. 2018) (holding that the sufficiency of the basis for an economist's opinion can be "explore[d] . . . on cross examination and argument for the benefit of the trier of fact"); *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 1855980, at *13 (D. Md. May 1, 2013) (denying motion to exclude expert's testimony because "if the Defendants believe that [the expert] neglected some crucial piece of evidence . . . then they may raise those issues at trial"); *In re Urethane Antitrust Litig.,* MDL No. 1616, No. 04-1616-JWL, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) (refusing to exclude expert testimony on the basis that the expert had considered only certain evidence when forming his opinion because "the extent to which [the expert] considered the entirety of the evidence in the case is a matter for cross-examination"); *United States v. H & R Block, Inc.*, 831 F. Supp. 2d 27, 32-33 (D.D.C. 2011) (plaintiff's concerns about survey relied on by defendants' economist "go to the weight, not the admissibility, of the evidence, especially in this bench hearing where there is no concern about jury confusion or prejudice.").

### C. Prof. Baker properly rebuts Prof. Murphy's economic opinion related to scale, which is based on the work of a computer science expert, Prof. Fox.

In its motion, Google omits the fact that it has also put forth the opinion of an economist, Prof. Murphy, who has no expertise in computer science but expresses opinions on precisely the same subject matter that Google now seeks to exclude from Prof. Baker's reports – the role of scale in search engine quality. To support his own opinions about scale in the search engine industry, Prof. Murphy claims to apply economic principles to the evidence in the case, including evidence from a computer science engineer, Prof. Fox.  Ex. G, Murphy Opening Rep. (excerpts)

at ¶¶ 781-88 (Murphy relying almost exclusively on Prof. Fox's analysis to conclude that Google's rivals could not gain sufficient search volume scale to improve search quality). Prof. Murphy interprets Prof. Fox's study as being "contrary to what one would expect if the difference in Google's and Bing's search quality were driven by differences in scale." *Id.* ¶ 109. He therefore concludes that Prof. Fox's study suggests that Google's superior quality is driven by factors other than its greater user data scale relative to Bing. *Id.* Applying economic principles to the evidence is the same methodology Prof. Baker, and any antitrust economist, employs.

Google asks that Prof. Baker be prevented from critiquing Prof. Murphy's reliance on Prof. Fox's study. Google Mot. at 13. In particular, Prof. Baker explains that that Prof. Murphy failed to incorporate into his economic analysis the possibility that Google's search algorithm benefitted from the scale advantage that Google held for a long period of time. Ex. B, Baker Reply Rep. ¶¶ 123, 126. As support for his critique, Prof. Baker reviewed Prof. Fox's report and noted that there was no basis to conclude that Prof. Fox's study accounted for this factor, thus reinforcing his criticism of Prof. Murphy. *Id.* ¶ 126. Google attacks Prof. Baker's understanding of the benefits of scale and argues that the evidence instead suggests that search engines can achieve quality results without scale. Google Mot. at 3-4. But Prof. Baker simply assumes the veracity of evidence for the purposes of offering his expert opinion because it is the Court, not Prof. Baker, who is the fact-finder. Google may attack the credibility of this or any other evidence at trial but there is no basis to seek to disqualify such evidence as part of a *Daubert* motion. *Am. Soc'y for Testing & Materials*, 2016 U.S. Dist. LEXIS 184126, at *7 (noting that a court should "not strike an expert report simply because the expert did not rely on the particular assumptions or data [the opposing party] thought was necessary" and that such "issues are more

properly addressed through 'vigorous cross-examination [and] presentation of contrary evidence'") (quoting *Daubert*, 509 U.S. at 596).

Google further ignores the full scope of Prof. Baker's support for his understanding that Google benefitted from an historical scale advantage. Google Mot. at 13. Prof. Baker cited multiple sources of support for his factual assumptions, including an internal Google email acknowledging that Google tends to underestimate the benefits it has obtained from amassing queries over decades. Ex. B, Baker Reply Rep. ¶¶ 121-28, ¶ 126 n.317 (citing Ex. P, GOOG-DOJ-18925605 at 617-18). Prof. Baker also cites to the deposition of ███████████, ████████████████████████ and the deposition of a Google employee. *See, e.g., id.* ¶ 123 n.306. Finally, Prof. Baker interviewed ██████ on September 16, 2022, and learned more details about ████████████████████████████nto ███████████████████████████ *See, e.g., id.* ¶ 126 n.317 & A-2.

Third, with respect to Prof. Baker's interview with ██████, Google claims that States are attempting to "bootstrap an expert opinion." Google Mot. at 14. ██████ is not disclosed as an expert in this case and Prof. Baker references his testimony to establish certain factual assumptions, not expert opinion. Google is well aware that ██████n's fact testimony is highly relevant to this case. He was deposed for two days in discovery, and Google spent multiple hours cross-examining him. The States have disclosed ██████ as a witness "more likely to be called at trial." Ex. Q, Third Am. Initial Disclosures, ¶ 3 n.1, ¶ 31. If Google has grounds to challenge ██████ view, or believes that scale advantage does not apply to Google's search engine, the proper forum to bring forth such facts is at trial. The fact that Prof. Baker, like Google's economists, relies on a witness interview along with deposition testimony

and documents as a basis for developing an economic opinion does not render his opinions concerning scale unreliable or unhelpful.[5]

### D. Prof. Baker's statements about scale and his acknowledgement that search firms differentiate themselves by offering different levels of privacy protection are not improper narration.

Google seeks to prevent Prof. Baker from providing any testimony relating to scale and privacy because, Google argues, they constitute "improper narration." Google Mot. at 11-13, 14-15. However, as explained above, Prof. Baker does not merely narrate the factual record; he properly describes the factual assumptions on which his opinion is based. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in this case that the expert has been made aware of or personally observed"); Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring a testifying expert to disclose "the facts or data considered by the witness" in forming her opinion). When an expert's references to the factual record are used as support for her opinions and are offered in combination with her expert analysis, courts should not exclude them under Rule 702. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-1720, 2022 WL 15044626, at *47-50 (E.D.N.Y. Oct. 26, 2022) (declining to exclude any portions of expert's report as improper narration because, among other reasons, they provide the underlying facts and basis for expert's opinion that company posed a competitive threat); *Furnituredealer.net, Inc. v. Amazon.com, Inc.*, No. 18-232, 2022 U.S. Dist. LEXIS 54510, at *52-53 (D. Minn. Mar. 25, 2022) (declining to exclude expert's recitation of the facts where they support his expert opinion); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F.

---

[5] It is of no moment that Prof. Fox is a testifying expert in this case and ▮▮▮▮▮▮▮ is a fact witness. Rule 703 allows an expert witness to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed," including hearsay. Fed. R. Evid. 703. Indeed, one of Google's retained economic experts also relied on fact witness interviews in forming his opinions. *See, e.g.,* Ex. R, Expert Report of Professor Kenneth Elzinga (June 6, 2022) at pp. 314-15 (excerpts) (disclosing reliance on three interviews of Google employees).

Supp. 2d 213, 236-37 (S.D.N.Y. 2004) (denying motion to exclude based on alleged evidence narration where expert economist had "applied his expertise to the facts of the case, and drawn conclusions from those facts" and his "ultimate conclusions are based on the application of standard economic methodology to the facts at hand"(internal quotations omitted)).

In particular, as detailed above, Prof. Baker applies economic theory to opine that Google's exclusionary course of conduct prevented other search firms from obtaining the necessary scale they needed to be competitive. To support this opinion, he relies on evidence that search engines benefit from the user data that flow from their scale in users and queries to improve search quality. Because the factual record Prof. Baker discusses supports his economic opinion, his testimony on this matter should not be excluded. *Furnituredealer.net, Inc.*, 2022 U.S. Dist. LEXIS 54510, at *52-53.

With respect to Prof. Baker's opinions related to privacy, he does not, as Google claims, simply recite facts to support "Plaintiffs' claim that Google is less protective of privacy than competitors like DuckDuckGo." Google Mot. at 15. Rather, Prof. Baker opines that that search engines differentiate themselves to compete, and one of the ways some search engines seek to differentiate themselves is through different levels of privacy protections. Ex. A, Baker Opening Rep. ¶¶ 149, 214. Prof. Baker illustrates this point by referring to DuckDuckGo's promotion of its privacy protections and ███████████████████████████████████████ ████████████████████████████. *Id.* ¶¶ 86, 341; Ex. B, Baker Reply Rep. ¶ 190. Google is free to challenge the factual assumptions that support Prof. Baker's opinions at trial.

Finally, the court's gatekeeper role under Rule 702 is greatly diminished in a bench trial because "there is no risk of tainting the trial by exposing a jury to unreliable evidence" and there is no danger of jury confusion. *See Window Specialists, Inc. v. Forney Enters., Inc.*, 47 F. Supp.

3d 53, 60 (D.D.C. 2014) (quoting *H & R Block, Inc.*, 831 F. Supp. 2d at 30). The present case is a bench trial, and this court has previously found no issue with an economic expert describing the factual record that supports his opinions in a bench trial. *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 34 (D.D.C. 2015) (Mehta, J.) (noting that the FTC's economist, Dr. Israel, properly "synthesiz[ed]" the "mass of testimonial and documentary evidence gathered by the FTC" in a bench trial). The cases Google cites that exclude expert testimony because it amounted to mere factual narration were all jury trials. *See SEC v. Tourre*, 950 F. Supp. 2d 666, 675, 681 (S.D.N.Y. 2013) (court did not allow expert to act "simply as a narrator of the facts," including the state of mind of a witness, in a jury trial); *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 10-cv-00976, 2017 WL 5905509, at *15 (D.D.C. Nov. 28, 2017) (excluding expert witness in a jury trial from offering an opinion about the credibility of witnesses); *Highland Cap. Mgmt., L.P. v. Schneider,* 551 F. Supp. 2d 173, 183 (S.D.N.Y. 2008) (excluding expert testimony in a jury trial that opined on the credibility of a witness and summarized a factual narrative that gave rise to the witness's actions); *In re Rezulin Products Liability Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding expert's recitation of selected regulatory events concerning the drug at issue from jury trial "because the expert would do no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of [defendant]'s conduct").

## CONCLUSION

For the foregoing reasons, Plaintiff States respectfully request that Google's Motion to Partially Exclude the Opinion of Plaintiffs' Expert Jonathan Baker be denied.

Dated: January 25, 2023                    Respectfully submitted,


                                           FOR PLAINTIFF STATE OF COLORADO:

                                           PHILIP WEISER
                                           Attorney General

                                           Jonathan B. Sallet
                                           Special Assistant Attorney General

                                           /s/ Jonathan B. Sallet
                                           Jonathan B. Sallet, DC Bar No. 336198
                                           Jon.Sallet@coag.gov
                                           Steven M. Kaufmann,  DC Bar No. 1022365
                                           *(inactive)*
                                           Steve.Kaufmann@coag.gov
                                           Carla Baumel
                                           Carla.Baumel@coag.gov
                                           Colorado Office of the Attorney General
                                           1300 Broadway, 7th Floor
                                           Denver, CO 80203
                                           Tel: 720-508-6000

                                           William F. Cavanaugh , Jr.
                                           PATTERSON BELKNAP WEBB & TYLER
                                           LLP
                                           1133 Avenue of the Americas
                                           Suite 2200
                                           New York, NY 10036-6710
                                           212-335-2793
                                           Email: wfcavanaugh@pbwt.com

                                           *Counsel for Plaintiff Colorado*


                                           FOR PLAINTIFF STATE OF NEBRASKA:

                                           MIKE HILGERS
                                           Attorney General

                                           Joseph M. Conrad, Assistant Attorney General
                                           Colin P. Snider, Assistant Attorney General
                                           Matthew K. McKinley, Special Assistant
                                           Attorney General
                                           Nebraska Department of Justice

17

Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3840
Joseph.Conrad@nebraska.gov
Colin.snider@nebraska.gov
Matt.Mckinley@nebraska.gov

William F. Cavanaugh , Jr.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
Suite 2200
New York, NY 10036-6710
212-335-2793
Email: wfcavanaugh@pbwt.com

*Counsel for Plaintiff Nebraska*


FOR PLAINTIFF STATE OF ARIZONA:

KRISTIN K. MAYES
Attorney General

Robert A. Bernheim, Unit Chief Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-315
Tucson, Arizona 85701
Tel: (520) 628-6507
Robert.bernheim@azag.gov

*Counsel for Plaintiff Arizona*


FOR PLAINTIFF STATE OF IOWA:

BRENNA BIRD
Attorney General

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Tel: (515) 725-1018
Noah.goerlitz@ag.iowa.gov

18

*Counsel for Plaintiff Iowa*


FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General

Elinor R. Hoffmann
Morgan J. Feder
Michael Schwartz
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff New York*


FOR PLAINTIFF STATE OF NORTH
CAROLINA:

JOSH STEIN
Attorney General

Kunal Janak Choksi
Joshua Daniel Abram
Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
kchoksi@ncdoj.gov
jabram@ncdoj.gov
jmarx@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*

FOR PLAINTIFF STATE OF TENNESSEE:

JONATHAN SKRMETTI
Attorney General

J. David McDowell
Chris Dunbar
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville.TN 37202
(615) 741-8722
David.McDowell@ag.tn.gov
Chris.Dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*


FOR PLAINTIFF STATE OF UTAH:

SEAN D. REYES
Attorney General

Scott R. Ryther
Tara Pincock
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 142320
Salt Lake City, Utah 84114
385-881-3742
sryther@agutah.gov
tpincock@agutah.gov

*Counsel for Plaintiff Utah*


FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
Attorney General

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100

Jeff.pickett@alaska.gov

*Counsel for Plaintiff Alaska*


FOR PLAINTIFF STATE OF
CONNECTICUT:
WILLIAM TONG
Attorney General

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
860-808-5202
Nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*


FOR PLAINTIFF STATE OF DELAWARE:

KATHY JENNINGS
Attorney General

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
Michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*


FOR PLAINTIFF DISTRICT OF COLUMBIA:

BRIAN SCHWALB
Attorney General

Elizabeth Gentry Arthur
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001

21

202-724-6514
Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*


FOR PLAINTIFF TERRITORY OF GUAM:

DOUGLAS MOYLAN
Attorney General

Fred Nishihira, Chief, Consumer Protection
Division
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671) 475-3324

*Counsel for Plaintiff Guam*


FOR PLAINTIFF STATE OF HAWAI'I:

ANNE E. LOPEZ
Attorney General

Rodney I. Kimura
Department of the Attorney General, State of
Hawai'i
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawai'i*


FOR PLAINTIFF STATE OF IDAHO:

RAÚL LABRADOR
Attorney General

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division

22

954 W. State St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
208-334-4114
Brett.delange@ag.idaho.gov
John.olson@ag.idaho.gov

*Counsel for Plaintiff Idaho*


FOR PLAINTIFF STATE OF ILLINOIS:

KWAME RAOUL
Attorney General

Elizabeth Maxeiner
Brian Yost
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
773-590-7935
Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov

*Counsel for Plaintiff Illinois*


FOR PLAINTIFF STATE OF KANSAS:

KRIS W. KOBACH
Attorney General

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue., 2nd Floor
Topeka, KS 66612
Tel: (785) 296-3751
Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*


FOR PLAINTIFF STATE OF MAINE:

AARON M. FREY
Attorney General

23

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
207-626-8800
Christina.moylan@maine.gov

*Counsel for Plaintiff Maine*


FOR PLAINTIFF STATE OF MARYLAND:

ANTHONY G. BROWN
Attorney General

Schonette J. Walker
Gary Honick
Office of the Attorney General of Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*


FOR PLAINTIFF COMMONWEALTH
MASSACHUSETTS:

ANDREA CAMPBELL
Attorney General

William T. Matlack
Michael B. MacKenzie
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
William.matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

FOR PLAINTIFF STATE MINNESOTA:

KEITH ELLISON
Attorney General

Zachary William Biesanz
Office of the Minnesota Attorney General
Consumer, Wage, and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
651-757-1257
Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff Minnesota*


FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General

Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
775-684-1164
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*


FOR PLAINTIFF STATE OF NEW
HAMPSHIRE:

JOHN FORMELLA
Attorney General

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
Brandon.h.garod@doj.nh.gov

25

*Counsel for Plaintiff New Hampshire*


FOR PLAINTIFF STATE OF NEW  JERSEY:

MATT PLATKIN
Attorney General

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
973-648-7819
Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff New Jersey*


FOR PLAINTIFF STATE OF NEW MEXICO:

RAUL TORREZ
Attorney General

Judith E. Paquin
Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505-490-4885
jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*


FOR PLAINTIFF STATE NORTH DAKOTA:

DREW WRIGLEY
Attorney General

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of the Attorney General of North Dakota

1720 Burlington Drive, Suite C
Bismarck, ND 58504
701-328-5570
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

FOR PLAINTIFF STATE OHIO:

DAVE YOST
Attorney General

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

FOR THE PLAINTIFF STATE OKLAHOMA:

GENTNER DRUMMOND
Attorney General

Caleb J. Smith
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

FOR PLAINTIFF STATE OREGON:

ELLEN ROSENBLUM
Attorney General

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
503-934-4400
Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*


FOR PLAINTIFF COMMONWEALTH
PENNSYLVANIA:

MICHELLE HENRY
Attorney General

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*


FOR PLAINTIFF TERRITORY PUERTO
RICO:

DOMINGO HERNANDEZ
Attorney General

Guarionex Diaz Martinez
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Tel: (787) 721-2900, ext. 1201
gdiaz@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

28

FOR PLAINTIFF STATE RHODE ISLAND:

PETER NERONHA
Attorney General

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
SProvazza@riag.ri.gov

*Counsel for Plaintiff Rhode Island*


FOR PLAINTIFF STATE SOUTH DAKOTA:

MARTY J. JACKLEY
Attorney General

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
605-773-3215
Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*


FOR PLAINTIFF STATE VERMONT:

CHARITY R. CLARK
Attorney General

Christopher J. Curtis
Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
Ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

FOR PLAINTIFF COMMONWEALTH
VIRGINIA:

JASON S. MIYARES
Attorney General

Tyler T. Henry
thenry@oag.state.va.us
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Tel: (804) 692-0485

*Counsel for Plaintiff Virginia*


FOR PLAINTIFF STATE WASHINGTON:

BOB FERGUSON
Attorney General

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
Amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*


FOR PLAINTIFF STATE WEST VIRGINIA:

PATRICK MORRISEY
Attorney General

Douglas Lee Davis
Office of the Attorney General, State of West
Virginia
1900 Kanawha Boulevard, East
Building 6, Suite 402
P.O. Box 1789
Charleston, WV 25305
304-558-8986
Douglas.l.davis@wvago.gov

*Counsel for Plaintiff West Virginia*


FOR PLAINTIFF STATE WYOMING:

BRIDGET HILL
Attorney General

Benjamin Peterson
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
Benjamin.peterson2@wyo.gov

*Counsel for Plaintiff Wyoming*