# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | |
| GOOGLE LLC, | HON. AMIT P. MEHTA |
| Defendant. | |

| | |
|---|---|
| STATE OF COLORADO *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | |
| GOOGLE LLC, | HON. AMIT P. MEHTA |
| Defendant. | |

**MOTION BY BEHAVIORAL ECONOMISTS GEORGE LOEWENSTEIN, KLAUS M. SCHMIDT, AND PAUL HEIDHUES FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS[1]**

---

[1] This motion and related papers, including the attached proposed amicus brief, were prepared with the assistance of Eleanor Runde, Kartikeya Kandula, and Mohamad Batal, law students participating in the Tech Accountability & Competition Project, a clinical offering at the Yale Law School. Nothing in this motion or related papers, including the proposed amicus brief, represents or purports to represent the institutional views of Yale University or Yale Law School, if any.

Pursuant to Local Civil Rule 7(o), Professors George Loewenstein, Klaus M. Schmidt, and Paul Heidhues (collectively, "Movants") respectfully move this Court for leave to file a brief as *amici curiae* in support of the United States' and the Plaintiff States' joint opposition to Google's motion for summary judgment in the above-captioned cases. The proposed brief is lodged herewith as Exhibit A. Plaintiffs, through their respective counsel, have advised Movants' undersigned counsel that they will not oppose this motion. Defendant Google LLC, through its counsel, has advised that it intends to oppose this motion.

**I.      IDENTITY AND INTEREST OF MOVANTS**

Movants are economists with substantial experience in and knowledge of behavioral economics. This discipline supplies important concepts for the accurate assessment of consumer decision-making in the real world, including explanations of how consumer decision-making can interact with certain business practices to generate anticompetitive and exclusionary effects. One such business practice is called a default, which is the assigning of a product or service or setting to a consumer without their input, but in a context in which the consumer has the ability to switch to a different product or service or setting, if they make the affirmative decision and takes the affirmative steps necessary to do so. In other words, a default is a pre-selected option.[2]

Decades of theoretical and empirical research in the field credibly demonstrate the significant effects of defaults on consumer behavior—namely, that defaults significantly reduce

---

[2] In this case, it is alleged that Google secured the default position at most access points at which consumers access search services. This means, for example, that most people reading this motion on a screen rather on paper can navigate to a web browser, click into the address bar, and type, "What is a default?" For most of us, Google will conduct that search and provide results even though, for most of us, we did not take any affirmative steps to select or install Google Search as the default search engine for that address bar. That decision was made for us. We understand a central question in this case to be whether the defaults Google has secured at search access points are exclusionary and anticompetitive, thus facilitating Google's acquisition and maintenance of its monopoly.

the likelihood that a consumer will explore alternatives, engage in quality-adjusted price comparison, or switch away from the default. In other words, defaults are "sticky." Default stickiness has direct economic implications for non-default rivals.

The proposed brief explains that, from the standpoint of behavioral economics, consideration of the stickiness of the defaults alleged and described by the parties is both central and necessary—not optional—to the task of understanding the dynamics of competition in the market for general services. The brief further discusses how the default positions Google has secured for itself, as alleged and described by the parties, are highly likely to generate stickiness that has anticompetitive and exclusionary effects.

Proposed *Amici* are Professor George Loewenstein, Professor Klaus M. Schmidt, and Professor Paul Heidhues. Together, Proposed Amici are leading economists with substantial experience in and knowledge of behavioral economics.

**Professor Loewenstein** is the Herbert A. Simon University Professor of Economics and Psychology at Carnegie Mellon University. His academic work focuses on applications of psychology to economics; he has published over 300 articles and six books on these and related subjects, many of which have been cited thousands of times. Professor Loewenstein is also the former president of the Society for Judgment and Decision Making and a fellow of the American Academy of Arts and Sciences.

**Professor Schmidt** is a Full Professor of Economics at the University of Munich. His academic work focuses on behavioral and experimental economics, industrial organization, and competition policy. He was a member of the European Advisory Group on Competition Policy of the European Commission's Directorate-General for Competition and he is president-elect of

3

the German Economic Association ("Verein für Socialpolitik"). He has held Visiting Professorships at Harvard, Yale, University of California Berkeley, Stanford, and MIT.

**Professor Heidhues** is a Professor of Behavioral and Competition Economics at the Düsseldorf Institute for Competition Economics of the Henrich-Heine University. His academic work focuses on industrial organization and behavioral economics. He serves on the European Advisory Group on Competition Policy of the European Commission's Directorate-General for Competition and was a Member of the Academic Panel for the United Kingdom Competition & Markets Authority.

## II. MOVANTS' EXPERTISE IN THE FIELD OF BEHAVIORAL ECONOMICS PROVIDES IMPORTANT INSIGHT INTO THE DYNAMICS BY WHICH COMPETITION ACTUALLY PRESENTS ITSELF IN THE MARKET FOR GENERAL SEARCH SERVICES.

District courts grant motions for leave to file amicus briefs where, *inter alia*, "the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Jin v. Ministry of State Sec'y*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008) (internal quotes omitted). An amicus brief is appropriate where it "present[s] ideas, arguments, theories, insights, facts[,] or data that are not . . . found in the parties' briefs." *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 518 F. Supp. 3d 448, 453 n.2 (D.D.C. 2021) (quoting *N. Mariana Islands v. United States*, No. 08-CV-1572, 2009 WL 596986, at *1 (D.D.C. Mar. 6, 2009)).

Here, Movants have decades of expertise in the field of behavioral economics that may assist the Court in assessing the nature and magnitude of the anticompetitive and exclusionary effects at issue in this case.

Movants are unusually well-positioned to explain to the Court the nature of default effects, default stickiness, the economic consequences of that stickiness, and their application to

the market for general search services. Movants are leading scholars in the field of behavioral economics, which places them in a relatively small group of economists who are specially qualified to inform the Court's assessment of economic decision-making in complex settings that may obtain in the real world, including as it pertains to the anticompetitive and exclusionary effects of defaults.

Movants' proposed brief discusses the likely anticompetitive and exclusionary effects of defaults' stickiness in the market for general search services in a manner not fully addressed by the Parties' briefs.

### III. THIS MOTION IS MADE LESS THAN 24 HOURS AFTER THE PUBLIC FILING OF THE BRIEF IT SUPPORTS AND IS THEREFORE TIMELY.

In this Court, a motion for leave to file an amicus brief "shall be filed in a timely manner such that it does not unduly delay the Court's ability to rule on any pending matter." Local Civ. R. 7(o)(2). Despite the unusual circumstances of this case, in which the Parties' briefs were filed under seal and not unsealed until yesterday, this motion is timely and will not delay proeedings in these cases.

The proposed brief supports the Joint Opposition of the United States and the Plaintiff States to Google's Motion for Summary Judgment. Although that Joint Opposition was filed some time ago, it was filed under seal. Movants and their counsel therefore had no access to it until yesterday and could only speculate as to the manner in which the brief might respond to Google's motion. Movants therefore prepared the proposed brief with the hope, but not the certainty, that the Joint Opposition would be framed in such a way that Movants' insights would lend support to the arguments it sets forth. Movants did so because they were cognizant of the Local Rule's directive that motions for leave to file amicus briefs should be "timely" and not delay the Court's consideration of pending motions, and that the proposed brief, if it were to be

submitted, ought to be submitted as soon after the filing of the public version of the Joint Opposition as possible. Unless Google would have had Movants file this motion before seeing the Joint Opposition, and without knowing whether the proposed brief would even have been relevant to the issues the Court must address, Movants submit that the less-than-24-hour turnaround between the filing of the Joint Opposition and the filing of this motion, along with a proposed amicus brief that focuses specifically on the issues as articulated by the Joint Opposition, renders this motion at least as timely as could be expected under the circumstances.

Moreover, counsel for Movants took extra care to ensure that this motion will not delay proceedings or the Court's ruling on the pending motion for summary judgment. Movants' counsel notified Google's counsel of the intent to file this motion well in advance of its filing, on Monday, February 13, 2023, and 11 days before Google's reply brief deadline of February 24, 2023. Moreover, and specifically to give Google a head-start in considering the arguments Movants expected to make, counsel gave notice not just of the topic of the proposed brief, which would be standard practice, but also, as a courtesy, took the additional and atypical step of providing a detailed outline of proposed *amici*'s expected argument to further minimize any timeliness concerns. *See* Exhibit B.

In other words, Movants provided Google a reasonable opportunity to digest and incorporate responses to the arguments of their proposed brief before the company's reply brief next week. Because Movants file this motion less than 24 hours after the public filing of the brief it supports and before the conclusion of the parties' briefing, it will not delay this Court's decision on the pending summary judgment motion.

###

For the foregoing reasons, Movants respectfully request that the Court grant this motion, enter the attached proposed order, and direct the Clerk of the Court to file Movants' proposed brief on the dockets for the above-captioned cases.

DATED: February 17, 2023

Respectfully submitted,

TECH ACCOUNTABILITY & COMPETITION PROJECT, a division of the Media Freedom & Information Access (MFIA) Clinic at the Yale Law School

David A. Schulz (DC Bar No. 459197)
MFIA Clinic, Yale Law School
127 Wall Street
P.O. Box 208215
New Haven, CT 06520
(203) 436-5827
david.schulz@yale.edu

David Dinielli (*pro hac vice* application forthcoming)
MFIA Clinic, Yale Law School
127 Wall Street
P.O. Box 208215
New Haven, CT 06520
(323) 547-6325
david.dinielli@yale.edu

*and*

/s/ Joseph J. Wardenski
Joseph J. Wardenski (DC Bar No. 995549)
WARDENSKI P.C.
195 Plymouth Street, Suite 519
Brooklyn, NY 11201
(347) 913-3311
joe@wardenskilaw.com

*Attorneys for Movants*