# Exhibit 28

# FILED UNDER SEAL

**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

1700 K Street NW
Fifth Floor
Washington, D.C. 20006-3817

O: 202.973.8800
F: 202.973.8899

FRANKLIN M. RUBINSTEIN
Internet: frubinstein@wsgr.com
Direct dial: 202.973.8833

April 26, 2021

**VIA E-MAIL**
Diana A. Aguilar
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *United States v. Google*, 1:20-cv-03010 (D.D.C.)

Dear Diana:

On behalf of Google LLC ("Google"), I write in response to your April 9, 2021 letter. Given that we have been negotiating Google's discovery efforts for more than two months prior to your letter, we are surprised to see Plaintiffs raising these purportedly "open discovery issues" at such a late date. Google served its Responses and Objections on February 10, 2021; had an initial meet and confer regarding Plaintiffs' RFPs on February 18; and addressed Plaintiffs' various arguments regarding the scope of document discovery in submissions to the Court on March 18 and March 26. Yet we did not receive your letter addressing these purported issues until April 9.

**I. Google's Purported Failure to Substantiate Its Objections**

**RFP 1 (documents discussing the lawsuit):** You requested that Google provide a proposed method for identifying documents responsive to RFP 1. Regarding subpart (a) (internal communications), Google stands on its objections. Internal company discussions of a lawsuit filed by the Department of Justice and State Attorneys General are highly likely to be privileged and will not yield much, if any, relevant information. Regarding subpart (b) (communications with third parties), we stated that we would not withhold responsive documents located pursuant to other searches, and we agreed last week to conduct extensive additional searches proposed by Plaintiffs following the Court's March 23 order and the March 30 hearing. We will not perform additional searches for communications between Google and third parties regarding this lawsuit. As for communications between Google's outside counsel and third parties regarding this lawsuit, we will comply with Paragraph 13 of the Case Management Order, and we will agree to produce any substantive communications regarding any negotiated limitations on a third party's response to any Google subpoena. We are available to meet and confer with Plaintiffs further regarding this request.

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

USDOJ-GOOGEX-000009

**WILSON SONSINI**

Page 2

**RFP 3 (board of directors documents):** You requested that Google produce board documents from 2002-present rather than 2010-present as Google agreed in its Responses and Objections. In light of the burden of further expanding the time period and the broad custodial searches that we are already conducting, including numerous custodians who are or were board members, such as Larry Page, Sundar Pichai, Sergey Brin and Eric Schmidt, we will not perform a separate search for responsive board documents before 2010. To the extent, however, that documents responsive to RFP 3 are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

**RFP 7(b) (Google's requests for, or receipt of, consumer or third party data):** You requested that Google produce data collection policies, terms of service and analyses of "user and third-party data collection" from 2010-present. In Google's Responses and Objections, we agreed to produce terms of service from 2014-present. We agree to produce data collection policies and terms of service from 2010-present. With respect to any additional documents encompassed by Plaintiffs' RFP 7(b), we stand on our Responses and Objections. To the extent, however, that additional documents responsive to RFP 7(b) are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

**RFP 9 (exclusive agreements with web hosting companies or publishers to crawl their websites):** You requested that Google agree to provide copies of these agreements from 2005-present. It is our understanding that Google has no responsive agreements.

**RFP 20(a) ("Any agreements and payments between Google and any third party, including Apple, regarding the provision of map-based searches"):** You requested that Google produce "all agreements, and documents showing all payments, between Google and any third party, including Apple, regarding the provision of map-based searches, from January 1, 2014, to the present." Google agrees to produce responsive agreements from 2004-present and documents or data sufficient to show any payments between Google and Apple arising from the agreements. Google otherwise stands on its objections. Your RFPs requesting payment information related to Google's Revenue Share Agreements and other paid distribution agreements includes queries relating to maps. To the extent that additional documents responsive to RFP 20(a) are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

**RFP 25 (documents addressing various types of agreements):** You requested that Google "manually retrieve" draft and executed agreements. Google agrees to collect and produce responsive executed agreements to the extent that they have not already been produced. Drafts of the agreements, communications regarding the agreements, and "[d]ocuments addressing or discussing the agreements" are addressed by the numerous extensive searches that Google has already agreed to perform.

**RFP 27 (Google's revenue sharing agreements):** You requested that Google produce responsive agreements by no later than May 1, 2021 and disclose its search methodology. We have already produced the bulk of the responsive agreements. We will produce any remaining responsive agreements by the May 31, 2021 substantial completion date.

WILSON SONSINI

Page 3

**RFP 33 (agreements preventing preinstallation of other applications or preventing a third party from using any Google products):** You requested that Google produce agreements from 2007-present that "prevent a third party from . . . (a) preinstalling an application, (b) distributing a device containing an application, or (c) using any Google products or services on all or a defined subset of devices the third party manufactures or sells." Google previously agreed in its Responses and Objections to produce a more limited set of agreements that prevent the third party from "(a) preinstalling a specific third-party application on devices sold in the United States; (b) distributing a device in the United States with a specific third-party application installed; or (c) using specific Google products or services on all or a defined subset of devices that the third party sells," should they exist, and stands on its objections with respect to any other agreements. We will not conduct additional searches for the agreements that we have objected to. To the extent, however, that additional documents responsive to RFP 33 are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

**RFP 38 (Google employees responsible for sales listed in initial disclosures):** You contend that Google's agreement in its Responses and Objections to identify a "point of contact" rather than all responsible Google employees excludes relevant information. We agreed to provide a single point of contact for each advertiser in your initial disclosures. We fail to see the need for an exhaustive search for every employee who could have ever had contact with numerous third parties. We will not perform exhaustive searches to locate documents that mention every employee who has had sales contact with every company listed in your initial disclosures.

**RFP 44(a), (c) (search auction methodology); RFP 45 (a), (b) (headroom and price indices):** You requested that Google produce documents sufficient to show for these RFPs from 2010-present rather than 2014-present. Google agrees to produce documents sufficient to show how Google's search advertising methodology has worked from 2014-present and any material change that occurred during the 2010 to 2013 period. To the extent, however, that additional documents responsive to RFPs 44 and 45 are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

**RFP 57 ("All recordings (audio or visual) containing or discussing employee training or education on search or search advertising"):** You stated that search terms are insufficient to capture responsive material. Plaintiffs have not identified any specific relevant materials. Google does not have a centralized repository of training materials and there is no easy method to locate recordings on specific topics. Thus, the custodial searches that Google has agreed to perform are the most appropriate way to locate responsive materials. Google stands on its objections.

**II. Google's Purportedly Improper Relevance Objections**

**RFPs 35 (comparisons of assistants, hotwords) and 36 (distribution of Google Assistant and IoT devices):** To the extent that documents responsive to RFPs 35 and 36 are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

USDOJ-GOOGEX-000011

WILSON SONSINI

Page 4

### III. Google's Purported Rejection of Search Term and Custodial Searches for Certain RFPs

**RFP 54 (Google blog posts and other pages):** You requested that Google produce responsive documents related to more than 25 different blog posts or other Google pages. This set of URLs is overbroad and includes blog posts from more than a decade ago. Most of the authors of the blog posts are custodians whose documents Google has agreed to collect, and Google has already agreed to numerous extensive custodial searches proposed by Plaintiffs.

**RFP 58 ("Google's guidance to its employees to avoid using certain words, terms, or phrases"):** You offered a compromise that Google produce all final, non-privileged versions of antitrust compliance and training materials and employee handbooks from 2010-present that are located after a reasonable search. We agree to this compromise.

**RFP 62 (removal of Blix from the Play Store):** You requested that Google provide a proposed method to identify responsive documents for RFP 62. Google stands on its objections for RFP 62, including its relevance objection.

**RFP 63 (personnel files for custodians):** You requested that Google provide a proposed method for identifying responsive documents. The search protocol Google agreed to is sufficient to search for potentially relevant materials responsive to this request; for example, the discussions and self-assessments regarding product growth that you mentioned in our meet and confer discussion.  In light of the extensive custodial searches that Google has agreed to conduct, a separate search for and production of "personnel files" is not likely to yield significant additional relevant information.

### IV. Timing of Productions for RFPs 55, 59, 60 and 61

**RFP 55 (funding of think tanks and other institutions); RFP 59 (Kent Walker blog post responding to DOJ complaint); RFP 60 (documents supporting some statements and affirmative defenses in the Answer); RFP 61 (procompetitive justifications and benefits to consumers):** You requested that Google confirm that:

> (1) Google will not limit its responses to Request Nos. 55, 59, and 61 solely to information Google intends to rely on for its defense;

To the extent that documents responsive to RFPs 55, 59 and 61 are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

> (2) Google will not withhold from production information responsive to Request Nos. 55, 59, 60, and 61 that are located pursuant to search efforts in response to Plaintiffs' other requests;

As stated immediately above for RFPs 55, 59 and 61, to the extent that additional documents responsive to RFP 60 are located pursuant to the agreed search protocol with DOJ, we confirm that we will produce (and not withhold) them.

USDOJ-GOOGEX-000012

WILSON SONSINI

Page 5

> (3) Google will immediately begin producing information responsive to Request Nos. 55, 59 and 60, and it will complete production of these documents by May 1, 2021; and

Google has already produced documents responsive to these RFPs and will continue to do so on a rolling basis, but it will not agree to the arbitrary deadline proposed by Plaintiffs, which is more than ten months before the close of fact discovery.

> (4) Google will immediately begin producing documents responsive to Request No. 61, and to minimize the number of documents produced near or at the end of fact discovery, Google will produce on a rolling basis documents that are later identified as responsive to this Request.

Google has already produced documents responsive to this RFP and will continue to do so on a rolling basis.

## V. Plaintiffs' Requests for Data and Document Sources

**RFP 2 (market shares); RFP 43 (IS 4 and other metrics); RFP 46 (search advertising pricing or competition in vertical search):** You requested that Google provide information on data sources for these requests. These RFPs were included in our negotiation over custodians and search strings, and Google has already agreed to make extensive document productions and produced voluminous datasets. Google will not perform yet more searches for responsive material, but Google will provide the data sources requested.

## VI. Google's Search Methodology

In response to your request regarding 'search methodology,' Google confirms that it is producing responsive documents from the same custodial data sources as was done during the DOJ's pre-custodial investigation (G Suite files: Gmail, Docs, Sheets, Hangouts, Slides, Drive). Google explained that process to DOJ during the investigation. As was the case during the investigation, it is significantly more burdensome for Google to collect non-duplicative text or instant messages from mobile devices from each of the numerous custodians. We propose to meet and confer with DOJ regarding the scope of such collections.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ Franklin M. Rubinstein