# Exhibit 29

# FILED UNDER SEAL

**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

1700 K Street NW
Fifth Floor
Washington, D.C. 20006-3817

O: 202.973.8800
F: 202.973.8899

FRANKLIN M. RUBINSTEIN
Internet: frubinstein@wsgr.com
Direct dial: 202.973.8833

May 19, 2021

<u>VIA E-MAIL</u>
Alex Cohen
Technology and Financial Services Section
U.S. Department of Justice
450 5th St. NW
Washington, DC 20530

Re:   *United States v. Google*, 1:20-cv-03010 (D.D.C.)

Dear Alex:

On behalf of Google LLC ("Google"), I write in response to your May 17, 2021 letter. As before, your characterizations of Google's efforts to comply with Plaintiffs' extensive discovery requests are both inaccurate and counterproductive. Google has not, for example, "delayed negotiations over various RFPs". And Google has not "withheld information that would aid in the resolution of the issues in dispute" simply because it has not immediately complied with all of Plaintiffs' arbitrary and unwarranted demands, some of which are more properly suited to an interrogatory than a request for information made during the meet-and-confer process. Many of Plaintiffs' requests for information have proved highly time-consuming to address and have not "aid[ed] in the resolution of the issues in dispute" at all. To the contrary, Plaintiffs' unnecessary requests for further information--on top of their formal requests for production of documents--have themselves developed into a source of disputes. As we stated before, Google has been more than accommodating in response to Plaintiffs' numerous and burdensome requests for production, and Plaintiffs' spurious claims do not seem calculated to narrow the range of discovery disputes or to obtain further relevant documents from Google.

Nevertheless, we address below the RFPs you identified in your May 17 letter in good faith in an attempt to reach resolution.

I.   **RFPs 1, 7(b) and 38**

**RFP 1 (documents discussing the lawsuit):** Your May 17 letter misinterprets what we have already offered to do in response to Plaintiffs' RFP No. 1. We have neither "refused to produce communications with subpoena recipients" nor "attempt[ed] to narrow the commitment … made to the court in Paragraph 13 of the Case Management Order." Instead, we

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

USDOJ-GOOGEX-000014

WILSON SONSINI

Page 2

have offered to produce "substantive" correspondence between Google's outside counsel and subpoena recipients in exchange for a reciprocal commitment from Plaintiffs.

Specifically, we have offered to produce the following communications between Google's outside counsel and subpoena recipients, provided that Plaintiffs agree to do the same: (i) proposed or agreed modifications to any subpoena, including any proposal or agreement contemplating that a subpoena recipient need not produce documents in response to a particular request or that documents previously produced will be deemed sufficient to satisfy a particular request; (ii) proposed or agreed protocols for responding to a subpoena, including lists of search terms or custodians; (iii) responses and objections served by subpoena recipients; (iv) correspondence with subpoena recipients regarding actual or alleged non-compliance with a subpoena; and (v) draft or executed declarations or affidavits exchanged with subpoena recipients.

By contrast, we do not intend to produce other communications, such as the "administrative" or "ministerial" communications that outside counsel and subpoena recipients commonly exchange in any litigation, for example communications regarding scheduling meet-and-confer calls or negotiating deadlines. These routine communications are not relevant--particularly given that the parties are exchanging information regarding extensions of deadlines on a weekly basis--and producing these documents accomplishes nothing beyond shifting the burden to the reviewing party to sort through them.

Provided that Plaintiffs agree to produce their "substantive" communications with subpoena recipients in the manner indicated above, we anticipate producing by the end of June all such communications that occurred through the end of May, and we would plan to update that production approximately every three months. If Plaintiffs maintain that they are entitled to discovery of all communications, including the "administrative" or "ministerial" communications referenced above, then we are at an impasse.

**RFP 7(b) (Google's requests for, or receipt of, consumer or third party data):** As indicated in your May 17 letter, "[f]or over three months . . . Google stated that Request 7(b) should be addressed by non-custodial search methods." That is because, as Google stated in its Responses and Objections that we served more than three months ago, it would produce only "the Terms of Service that govern Google's receipt of user data" in response to RFP 7(b). Consistent with Google's Responses and Objections and our prior correspondence, the responsive Terms of Service will be located using "non-custodial search methods" and produced to Plaintiffs.

Google did *not* agree to perform any searches in response to Plaintiffs' request in RFP 7(b) for "all documents" relating to the "receipt of[] consumer or third party data." Likewise, Google did *not* agree to perform any searches in response to Plaintiffs' modified version of that request, which seeks "documents addressing or discussing changes . . . to Google's (1) user terms of service, and (2) data collection policies." If Plaintiffs disagreed with Google's position on these requests, their recourse was using one or more of the 20 additional search strings permitted in the Court's March 23 Order for "documents addressing or discussing" any topic in Plaintiffs'

WILSON SONSINI

Page 3

RFPs including this one. Indeed, Plaintiffs proposed several search strings directed to other RFPs for which Google had not agreed to run custodial searches. Google is moving forward with performing the agreed-upon searches and reviewing the resulting documents. Plaintiffs have no basis to relitigate whether any of their 20 additional strings are sufficient to capture "all documents" described in RFP 7(b) or whether they should be entitled to provide yet another search string seeking even more "documents addressing or discussing" any topic.

**RFP 38 (Google employees responsible for sales to companies in initial disclosures):** You requested that Google provide a "list of only the lead employee(s) responsible for search advertising sales to each third party . . . for the entirety of the period from 2010 through present." This request is burdensome and demands that Google create a summary that is not maintained in the ordinary course of business, as Google would have to undertake extensive diligence to determine the succession of "lead employee(s)" from more than a decade ago for more than 100 companies without any justification from Plaintiffs as to why that would be necessary. Consistent with its objections, Google will provide a point of contact for each third party. Google's agreement to provide this information already exceeds our obligation to respond to a document request under the Federal Rules.

II.   RFP 63

**RFP 63 (personnel files for custodians):** As we stated in our previous letter, Plaintiffs have not justified discovery into formal company personnel files or explained how that discovery would provide unique relevant information that Plaintiffs do not already have from the millions of documents that Google has produced. You have stated that you believe that statements about market shares might be found in performance reviews or self-assessments, but Google has also agreed to run many custodial searches that would return statements regarding market shares. More generally, performance assessments and self-assessments that contain other relevant information are likely to be picked up by the many custodial searches that Google has agreed to run. In your most recent letter, you offer only that personnel files "fit the basic definition of non-custodial requests" and speculate that they can be accessed "without trouble." This does not make them uniquely relevant, nor does it justify the burden of manually retrieving and reviewing every document in every personnel file that Plaintiffs demand.

III.   RFPs 2, 43 and 47

**RFP 2 (market shares); RFP 43 (IS 4 and other metrics); RFP 47 (advertiser complaints):** Per your request, Google is continuing to investigate your questions and anticipates providing a response by May 24, 2021.

IV.   Google's Search Methodology

You requested that Google "walk through the processes of how instant messages are being collected, processed, and divided or aggregated for purposes of running search terms." We

WILSON SONSINI

Page 4

reiterate that we are collecting and searching Google Hangouts as part of the same process we are using for email collection.  We will respond to your previous communication regarding text messages as soon as practicable.

    We look forward to a prompt resolution of these issues.

    Sincerely,

    WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation


    /s/ Franklin M. Rubinstein

USDOJ-GOOGEX-000017