# Exhibit 32

# FILED UNDER SEAL



U.S. Department of Justice

Antitrust Division

---

*Alex Cohen*
*450 5th Street, N.W.*
*Washington, DC 20001*
*(347) 244-2502*

May 6, 2021

Franklin M. Rubinstein
Wilson Sonsini Goodrich Rosati
1700 K St NW
Washington, D.C. 20006

      Re:    *United States, et al. v. Google LLC*, No. 1:20-cv-03010-APM

Dear Mr. Rubinstein:

We write in response to your April 26 and April 29, 2021 letters regarding open discovery issues.

As an initial matter, Plaintiffs note Google's mischaracterization of the timing of these disputes and negotiations. Plaintiffs have been engaging with Google on a near-weekly basis since Google submitted its Responses and Objections ("Google's R&Os") on February 10, 2021. Plaintiffs raised the issues below in numerous meet and confers in February and March; in letters dated February 26, March 5, March 15, and April 9; and in search proposals on March 1, 8, 12, and 16. These issues are pending because Google has failed to properly address them despite Plaintiffs' continued efforts to move the discovery forward. As detailed below, Plaintiffs are still waiting for answers on simple requests made as early as February 18.

Google has repeatedly asked for more time to respond to Plaintiffs' requests. Google asked Plaintiffs to "prioritize" their requests during search-term-and-custodian negotiations and Google claimed it could not simultaneously negotiate search terms and custodians while negotiating other aspects of discovery. Plaintiffs accommodated Google's request. Now that the parties have resolved the search-term-and-custodian protocol, Plaintiffs seek to finalize negotiations over the manual document collections and resolve the remaining discovery issues.

### I.   *Google's Failure to Substantiate Its Objections*

Plaintiffs address each disputed Request in turn.

      *a.  Request No. 1*

Plaintiffs' Request No. 1 seeks, among other things, Google's outside counsel communications with third parties "likely to have discoverable information regarding Google's defenses. For the avoidance of doubt, such communications include draft and executed declarations and affidavits." Notably, Google has requested nearly every communication between Plaintiffs and any third party. Google's Request No. 10, for

instance, sought "[a]ll documents relating to any communications between any Plaintiff and any Third Parties relating to the legal claims against Google in this litigation." Google sought far more than what is required under the CMO and Plaintiffs agreed to produce more than what is required under the CMO. Plaintiffs' response to Google's Request No. 10 agrees to produce "information regarding extensions, modifications, or postponements of non-Party's response to or compliance with any discovery request, as required by Paragraph 13 of the Case Management Order" and "other communications with subpoena recipients regarding the legal claims against Google in this litigation."

Google nevertheless refuses to produce more than what is required under the CMO. On April 9, Plaintiffs explained Google's failure to properly respond to this Request and requested that Google provide its proposed method to identify documents responsive to this request. By letter on April 26, Google replied that it would agree "to produce any substantive communications [between Google's outside counsel and third parties] regarding any negotiated limitations on a third party's response to any Google subpoena."

During the May 3 meet and confer, Google stated that it would only produce communications required under the CMO, specifically communications with third-parties regarding subpoena modifications. Subpoena modifications are an entirely separate issue. Plaintiffs' Request No. 1 seeks the same type of communications that Google sought of Plaintiffs in its request for production and which Plaintiffs have already made a production. Further, there is minimal burden associated with such a production, as counsel can readily identify all their communications with subpoenaed third-parties with a simple manual e-mail pull. Google's refusal to provide reciprocal productions on a comparable timeline is therefore without merit. As such, by May 13, 2021, please confirm (1) that Google will provide reciprocal productions and (2) Google's proposed schedule for production.

   b. *Request No. 3*

Plaintiffs appreciate Google's confirmation that it will conduct a reasonable search for responsive documents from 2002 to the present. Plaintiffs ask that by May 13, 2021, Google provide a proposed date by which it intends to complete production of documents responsive to this Request.

   c. *Request No. 7(b)*

Plaintiffs' Request No. 7(b) seeks documents "addressing or discussing: (b) Google's requests for, or receipt of, consumer or third-party data as part of Google's provision of general search services." In Google's responses and objections, Google objected to the phrase "third-party data" and proposed excluding it from the request. Next, Google proposed a targeted document collection for Request No. 7(b). Specifically, Google proposed collecting user terms of service and data collection policies, but excluded documents *addressing or discussing* such documents. During the May 3 meet and confer, Google explained that it believes the parties' search string protocol would sufficiently capture such documents. Plaintiffs disagree.

First, Google claims it identified the core of what it believes Request No. 7(b) is seeking by proposing a production of user terms of service and data collection policies, yet none of the finalized search strings include terms designed to capture documents discussing

USDOJ-GOOGEX-000019

such policies.[1] Indeed, although there are search strings explicitly designed to captured documents responsive to Request No. 7(a) and 7(c), these strings seek documents responsive to different requests regarding user preferences on privacy protections and Google's attempts to thwart the use of ad blockers, respectively. These search strings would not capture documents addressing or discussing Google's requests for user data as part of its provision of general search services.

Second, Google's consistent position was that a targeted collection should be used to identify documents responsive to Request No. 7(b). Plaintiffs relied on Google's representation when crafting their search-term proposal and, as such, did not include search terms to capture information responsive to Request No. 7(b). Google cannot now claim a misunderstanding. Google clearly shared Plaintiffs' understanding as Google reiterated its search methodology on March 4 and again on March 18, proposing search strings to address only Request Nos. 7(a) and 7(c). Plaintiffs should not be prevented from obtaining documents they have sought because Google now regrets its prior position.

In the interest of moving discovery forward, however, Plaintiffs are willing to accept documents addressing or discussing changes to *only* Google's (1) user terms of service, and (2) data collection policies. Plaintiffs ask Google to confirm whether it accepts this compromise offer and to propose a search methodology for locating such documents by May 13, 2021.

  d. **Request No. 9**

In your April 26 letter, Google stated that it has no responsive agreements regarding Request No. 9. During the May 3 meet and confer, Plaintiffs asked whether this response considers ███████████████████████████████████████████████████ ███████████████ Google stated it would conduct another review. Plaintiffs ask Google to provide a response by May 13, 2021.

  e. **Request No. 20(a)**

Plaintiffs' Request No. 20(a) seeks documents "addressing or discussing: a. Any agreements and payments between Google and any third party, including Apple, regarding the provision of map-based searches." By letter on April 26, Google countered with a proposal "to produce responsive agreements from 2004-present and documents or data sufficient to show ███████████████████████████████████████ ████████████

During the May 3 meet and confer, Google asked whether Plaintiffs Request No. 20(a) covers agreements concerning third-party payments to Google for access to map APIs. Plaintiffs confirm that Request No. 20(a) does not cover those agreements. Instead, Request No. 20(a) seeks all agreements under which Google pays a third party for distributing maps services, including but not limited to revenue sharing agreements concerning map services. Plaintiffs understand that ████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████

---

[1] The terms relating to CID Spec 34 do include the phrase "terms of service" and "ToS," but only when included in proximity to subjects not specifically relevant this request (developers and Google's Play Store).

3

In the interest of moving discovery forward, Plaintiffs are willing to accept from Google (1) all agreements in which Google pays third parties for distributing maps services from 2004 to the present, and (2) documents or data sufficient to show any payments from Google to third parties arising from such agreements.

### f. *Request No. 25*

On April 26, Google confirmed that it will "collect and produce responsive executed agreements to the extent that they have not already been produced." Plaintiffs look forward to Google's production of all executed agreements responsive to this request.

### g. *Request No. 27*

Plaintiffs accept Google's proposed date to complete production of these agreements by May 31, 2021. Plaintiffs continue to reserve the right to seek the production of responsive agreements concerning foreign jurisdictions at a later time.

### h. *Request No. 33*

On April 26, Google restated its position that Google will produce only "a more limited set of agreements that prevent the third party from '(a) preinstalling a specific third-party application on devices sold in the United States; (b) distributing a device in the United States with a specific third-party application installed; or (c) using specific Google products or services on all or a defined subset of devices that the third party sells,' should they exist, and stands on its objections with respect to any other agreements."

During the May 3 meet and confer, Google claimed that its search protocol would likely capture information responsive to the request, as modified by Google. In the interest of moving discovery forward, Plaintiffs request that Google identify the agreements responsive to this request that it intends to produce. Please confirm by May 13, 2021, that Google will do so.

### i. *Request No. 38*

Plaintiffs' Request No. 38 seeks, for each company listed in Plaintiffs' initial disclosures, the identification of Google employees responsible for sales. Google has offered to identify only a single point of contact for each company. Plaintiffs are considering Google's offer but ask that Google clarify how it intends to select these points of contact. Specifically, Plaintiffs ask whether Google intends to identify as a single point of contact those employees that: (1) are more senior, and (2) have worked with a particular advertiser for a significant period of time. Plaintiffs request that Google provide this information by May 13, 2021.

### j. *Request No. 44(a), (c) and Request No. 45(a), (b)*

Plaintiffs' Requests Nos. 44 and 45 seek certain documents going back to January 1, 2010, addressing or discussing "Google's methodology in selecting which advertiser wins each search ad slot" and "search advertising headroom and price indices," respectively. By letter on April 26, Google offered to produce "documents sufficient to show how Google's search advertising methodology has worked from 2014-present and any material change that occurred during the 2010 to 2013 period."

During the May 3 meet and confer, Google explained that Google's written proposal covers only "material change[s]" for 2010-2013 because Google is concerned that, given

the date of the changes, Google may not be able to identify all changes for 2010-2013. To reiterate Plaintiffs' request during the meet and confer, Plaintiffs ask Google to confirm by May 13, 2021, that it will not withhold information on known changes based on Google's assessment that the changes were immaterial.

For clarity, Plaintiffs are willing to accept documents sufficient to show the evolution of Google's search advertising methodology from 2010 to the present, including documents sufficient to show all changes to the methodology that Google identifies upon a reasonable search.

   k. *Request No. 57*

Plaintiffs' appreciate Google's confirmation that it will conduct a reasonable search for recordings, as described in your April 29 letter.

 II. *Google's Improper Relevance Objections*

Plaintiffs appreciate Google's confirmation that it will produce documents responsive to Requests Nos. 35 and 36 that are located pursuant to the agreed upon search protocol.

 III. *Google's Failure to Identify a Reasonable Methodology for Locating Responsive Information*

Plaintiffs address each request in turn.

   a. *Request No. 54*

Plaintiffs accept Google's April 29 counter-proposal to produce "earlier published versions of the specific Google web pages cited in [Plaintiffs'] April 9 letter to the extent that Google maintains them," provided that Plaintiffs may seek documents addressing or discussing specific revisions to the specified web pages at a later date.

   b. *Request No. 58*

Plaintiffs appreciate Google's confirmation that it will produce all final, non-privileged versions of antitrust compliance and training materials and employee handbooks from 2010-present that are located after a reasonable search.

   c. *Request No. 62*

Plaintiffs accept Google's proposal to use Plaintiffs' previously proposed search string to locate documents responsive to this request. For the avoidance of doubt, please confirm that Google will run the following string across all custodians (excluding Behavioral Economists) from January 1, 2020-present: ((Blix OR bluemail* OR Volach) /50 (retal* OR (App OR Apps OR application OR Applications) OR Remov* OR #Play OR Store OR restor* OR "take down" OR termin* OR "put up" OR "Putback" OR antitrust OR "anti-trust" OR flagged OR "policy enforcement" OR "congressional hearing" OR kick*)).

   d. *Request No. 63*

Plaintiffs' Request No. 63 seeks the personnel files "for each person selected as a custodian under these Requests for Production." As Plaintiffs have explained, personnel files such as self-assessments and performance reviews are likely to contain relevant and responsive information, including but not limited to, descriptions of (1) the employee's

roles and responsibilities regarding the relevant products in Plaintiffs' Amended Complaint; (2) company goals, including the securing of and assessment of the distribution agreements at issue in this case and sales of digital advertising; and (3) the employee's efforts and success in achieving those goals. Accordingly, the personnel files of litigation custodians are highly relevant.[2]

In the interest of moving discovery forward, Plaintiffs have offered to limit Request No. 63 to performance reviews, self-assessments, and any similar personnel files. Despite this offer and the files' clear relevance, Google has stated unsupported burden claims and has refused to produce any documents responsive to Request No. 63 (except to the extent they happen to appear in Google's search-term review). During the May 3 meet and confer, Plaintiffs reiterated their request for Google to evidence the burden that a go-get response to Request No. 63 places on Google. In particular, Plaintiffs again asked—as we have asked repeatedly since February 18—whether the custodians' performance reviews, self-assessments, and similar personnel files are centrally stored or maintained.

Please confirm by May 13, 2021 whether custodians' performance reviews, self-assessments, and similar personnel files are centrally stored or maintained, if not, where are they stored (both electronically and in hard copy), and whether Google will produce them.

### IV. *Google's Proposed Production and Timing of Production for Requests Nos. 55, 59, 60, and 61*

Plaintiffs accept Google's proposed timing of productions for Requests Nos. 55, 59, 60, and 61: Google informed the Court that it will substantially complete its production of documents responsive to these requests by July 31, 2021. For the remaining documents (including those later identified), Google has proposed to produce these on a rolling basis and to minimize the production of such documents near or at the end of fact discovery. Plaintiffs expect Google to stand by its representation to the Court at the last Status Conference and complete substantial production of documents by July 31, 2021. If Google now intends to make productions after this date, please so advise and explain the cause for delay with specificity.

Additionally, Plaintiffs appreciate Google's clarification during the May 3 meet and confer that the documents Google intends to produce include: (1) responsive documents that are located pursuant to the agreed-upon search strings and custodians, and (2) responsive documents located by other means in connection with this litigation. For the latter category, Plaintiffs reiterate their request that Google identify any non-privileged search methodology it intends to use to identify such documents.

### V. *Google's Failure to Answer Plaintiffs' March 1 Requests*

Plaintiffs have asked Google to disclose sources of relevant information related to Requests Nos. 2, 43, and 46. These requests were made on March 1, 8, 12, 16, and reiterated on April 9. Specifically, Plaintiffs' requests include:

---

[2] For example, as Plaintiffs have explained, a custodian's performance review—even when lacking search terms—will describe the custodian's competence, which can bolster or discredit the custodian's writings and testimony.

- Request No. 2: "Plaintiffs request that Google identify any other third-party sources of market share data which Google regularly purchases or obtains or subscribes to."

- Request No. 43: "Plaintiffs request that Google identify any database, dashboard, system, structured data, or other repository comparing search quality."

- Request No. 46: "Plaintiffs request that Google identify the names of any systems, databases, structured data for advertiser complaints."

On April 26, Google stated that it will provide the data sources Plaintiffs requested but that it would not conduct additional searches beyond what has been agreed to for these requests. During the parties' May 3 meet and confer, Google stated that it was still working on identifying the responsive data sources. Plaintiffs made clear that their requests to identify these data sources have been pending for months and Plaintiffs reserve their rights to seek additional data, documents, and information based on Google's answers. Please identify by May 13, 2021, the data sources related to Requests Nos. 2, 43, 46.

## VI.   *Google's Proposed Search Methodology*

On April 9, Plaintiffs requested that Google confirm that the "documents" it is collecting include electronically stored information such as computer files, emails, instant messages, and text messages. During the May 3 meet and confer, Google confirmed that its employees use instant messaging services such as Hangouts, and similar or predecessor services commonly referred to as Google Chat. Google further confirmed that (1) these instant messages are centrally stored in a database, (2) Google has collected the database for messages stored in the cloud, and (3) Google intends to review and produce responsive material from the database. Plaintiffs appreciate this confirmation, but maintain their request for the search methodology Google is applying to collect and review responsive material. For example, Plaintiffs maintain their request for Google to explain whether it is using search terms for its review and, if so, how.

During the May 3 meet and confer, Google also confirmed that its employees use a variety of mobile phone-based communication services for business purposes such as SMS text messages, WhatsApp, or similar messaging services, some of which may only be stored locally on the individual employee's mobile device. Google asserted that the collection and review of such material is burdensome, in part due to the logistical hurdles associated with physically collecting employees' mobile phones during the COVID-19 pandemic. In an effort to reach a compromise and move discovery forward, Plaintiffs are amendable to limiting their request to a subset of the 116 agreed-upon custodians, provided that Google continues its efforts to maintain these materials for all 116 custodians. Plaintiffs will propose a list to Google by May 13, 2021.

We look forward to your response and obtaining a prompt resolution to these issues.

Sincerely,

*/s/ Alex Cohen*

7

cc:
John E. Schmidtlein, Esq. (jschmidtlein@wc.com)
Mark S. Popofsky, Esq. (Mark.Popofsky@ropesgray.com)
Colette T. Connor, Esq. (cconnor@wc.com)

USDOJ-GOOGEX-000025