Exhibit 41

FILED UNDER SEAL

1   Brian C. Rocca, S.B. #221576
    brian.rocca@morganlewis.com
2   Sujal J. Shah, S.B. #215230
    sujal.shah@morganlewis.com
3   Michelle Park Chiu, S.B. #248421
    michelle.chiu@morganlewis.com
4   Minna Lo Naranjo, S.B. #259005
    minna.naranjo@morganlewis.com
5   Rishi P. Satia, S.B. #301958
    rishi.satia@morganlewis.com
6   **MORGAN, LEWIS & BOCKIUS LLP**
    One Market, Spear Street Tower
7   San Francisco, CA 94105
    Telephone: (415) 442-1000
8
    Richard S. Taffet, *pro hac vice*
9   richard.taffet@morganlewis.com
    **MORGAN, LEWIS & BOCKIUS LLP**
10  101 Park Avenue
    New York, NY 10178
11  Telephone: (212) 309-6000
12
    *Counsel for Defendants Google LLC et al.*
13

    Glenn D. Pomerantz, S.B. #112503
    glenn.pomerantz@mto.com
    Kuruvilla Olasa, S.B. #281509
    kuruvilla.olasa@mto.com
    Nicholas R. Sidney, S.B. #308080
    nick.sidney@mto.com
    **MUNGER, TOLLES & OLSON LLP**
    350 South Grand Avenue, Fiftieth Floor
    Los Angeles, California 90071
    Telephone: (213) 683-9100

    Kyle W. Mach, S.B. #282090
    kyle.mach@mto.com
    Justin P. Raphael, S.B. #292380
    justin.raphael@mto.com
    Emily C. Curran-Huberty, S.B. #293065
    emily.curran-huberty@mto.com
    Dane P. Shikman, S.B. #313656
    dane.shikman@mto.com
    **MUNGER, TOLLES & OLSON LLP**
    560 Mission Street, Twenty Seventh Floor
    San Francisco, California 94105
    Telephone: (415) 512-4000

    Jonathan I. Kravis, *pro hac vice*
    jonathan.kravis@mto.com
    **MUNGER, TOLLES & OLSON LLP**
    601 Massachusetts Avenue NW, Suite 500E
    Washington, D.C. 20001
    Telephone: (202) 220-1100

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA,**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| This Document Relates To: | **DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES** |
| *Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | |
| *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Judge:      Hon. James Donato |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | |
| *Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | |

USDOJ-GOOGEX-000308

Google submits this brief to address the questions posed by the Court following the January 12, 2023, hearing. Civil Minutes, MDL ECF No. 415 (Jan. 13, 2022). Section I of this brief summarizes Google's answers to the first five questions raised by the Court regarding the preservation of Google Chat messages ("chats"). Next, Section II addresses the Court's final question regarding appropriate remedies and the potential remedies discussed by the Court at the January 12 hearing.

## I. GOOGLE'S RESPONSES TO THE COURT'S QUESTIONS REGARDING CHAT PRESERVATION

Google has filed concurrently with this brief written declarations that respond to the Court's first five questions regarding chat preservation. Civil Minutes, MDL ECF No. 415 (Jan. 13, 2022). To assist the Court, Google summarizes its responses below.

- *How many recipients of the litigation hold notice in this case personally elected to turn the history to "on" for any of their Google Chats?*

- *On what dates did the hold notice recipients do so?*

- *If they later turned the chat history back to "off," when did they do that?*

This question is answered in the attached Declarations of Devin Chen and Duy Ho. In brief: over 90 percent (355 out of 383) of the employees on legal hold in this case have, since receiving the legal hold notice, participated in chats where history was turned on by one of the chat participants. Google does not maintain log data to determine, for any meaningful time period, when any specific legal hold recipient toggled history on or off for a chat conversation. *See* Declaration of Devin Chen ("Chen Decl.") at ¶ 4. To assist the Court in understanding this issue, Google has provided data for each employee subject to the legal hold in this case regarding the Google Chats that were preserved on account of one of the chat participants individually turning history "on" for a specific conversation, starting from the date of the initial legal hold notice to the present. Specifically, Exhibit A to the Declaration of Duy Ho shows in Column A the number of one-to-one or group chats—that is, those chats that allow an individual user to enable history "on"—that were preserved for each employee on legal hold. *See* Declaration of Duy Ho ("Ho Decl.") at ¶ 4, Ex. A. In that same table in Exhibit A, Column D shows for each employee on legal

-1-

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

USDOJ-GOOGEX-000309

hold the number of preserved chats within threaded rooms/spaces (chats that are always history "on" by product design with no ability for employees to turn history "off"). *See id.* at ¶ 4, Ex. A.

- ***In any case filed in the United States in the past five years, did Google preserve all Google Chats for relevant individuals (with Google turning the history to "on" for all of those individuals' Google Chats, rather than leaving the preservation decision to the discretion of each individual employee)?***

This question is answered in the attached Declaration of Gregory Johnson. In brief: No. For at least the last five years, Google has maintained a consistent approach to preserving chats for legal hold recipients in all matters. *See* Declaration of Gregory Johnson ("Johnson Decl.") at ¶¶ 7-9. Specifically, Google preserves (a) automatically (with no user action required) the chat threads within threaded rooms/spaces in which an employee on legal hold participates, and (b) any one-on-one or group chats in which any participant turned history on. *See id.*, at ¶ 8. For these one-on-one or group chats, Google distributed a legal hold notice and a later reminder that instructed recipients *not to use* Google Chat to discuss topics listed in the hold notice, and if necessary to turn history "on" if the recipient does use chats to discuss such topics. *See id.*, at ¶¶ 4-6; *see also* 1/12/23 Hr'g Tr. at 43:13-20; DXCH-2 at 2, MDL ECF No. 423-2 (directing employees to turn history "on" "[w]hen you are discussing a topic identified in any legal hold notice").

- ***When did this issue first come up in this case and how?***

This question is answered in the attached Declaration of Brian Rocca. In brief: The parties first addressed the issue of chat preservation during meet-and-confer discussions in mid-October 2020, as one component of their overall negotiations over the proposed stipulated ESI order. *See* Declaration of Brian Rocca ("Rocca Decl.) at ¶¶ 3-5. The issue did not arise again until Plaintiffs sent Google a letter on April 22, 2021, regarding the status of Google's production of chats.

- ***Did Google take "appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action" as it represented to the Court in a case management statement on October 1, 2020? See Case No. 20-5761, ECF No. 45 at 11.***

This question is answered in the attached Declarations of Brian Rocca and Gregory Johnson. In brief: Yes. At the time of the parties' joint submission on October 1, 2020, Google believed (and continues to believe) that it had taken "appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action." ECF No. 45 at 11. As of October 1, 2020,

-2-

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

USDOJ-GOOGEX-000310

before the parties held their Rule 26(f) conference, Google had taken multiple steps to preserve potentially relevant information. For example, Google had (1) implemented a back-end legal hold that indefinitely preserved all available emails, history "on" chats, slide decks, and any other documents in Google Drive for employees subject to the legal hold, and (2) distributed a legal hold notice, and a subsequent reminder, that included instructions not to use Google Chat to discuss topics listed in the hold notice and, if the employee nonetheless needed to use Google Chat to discuss such topics, to turn history "on" for these discussions. *See* Rocca Decl. at ¶¶ 8-9; Johnson Decl. at ¶¶ 4-6. Further details about why Google believes it had taken appropriate steps are set forth in the Rocca and Johnson Declarations. *See* Rocca Decl. at ¶¶ 6-11; Johnson Decl. at ¶¶ 3-6.

- ***Did Google plainly advise plaintiffs' counsel or the Court that it was choosing an approach to the preservation of Google Chats that could lead to the loss of potentially relevant evidence if an individual employee decided not to preserve a relevant chat?***

This question is answered in the attached Declaration of Brian Rocca. In brief: Google informed Plaintiffs on October 21, 2021, that it had not suspended the 24-hour retention policy for history "off" chats. *See* Rocca Decl. at ¶¶ 12-13.

## II.   POTENTIAL REMEDIES

The Court instructed the parties to respond to the following question:

**"If the Court concludes that Google did not meet its preservation obligations, what is the appropriate remedy?"**

Civil Minutes at 2, MDL ECF No. 415. And the Court advised the parties that any "proposed remedies must be specific and proportionate." *Id.*

If the Court concludes that Google did not meet its preservation obligations with respect to chats, any remedy must be no greater than necessary to cure any prejudice to Plaintiffs arising from the loss of such chats. *See* Section II.A. As discussed in Section II.B, the prejudice here, if any, is limited to the period after Epic filed the first Complaint in this action in August 2020, limited to certain custodians, and limited by the scope and magnitude of other discovery taken in this action.

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

USDOJ-GOOGEX-000311

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC et al*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| This Document Relates To: | **DECLARATION OF DUY HO IN SUPPORT OF DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES** |
| *Epic Games, Inc. v. Google LLC et al., Case No. 3:20-cv-05671-JD* | |
| *In re Google Play Consumer Antitrust Litigation, Case No. 3:20-cv-05761-JD* | |
| *State of Utah et al. v. Google LLC et al., Case No. 3:21-cv-05227-JD* | Judge:     Hon. James Donato |
| *Match Group, LLC et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD* | |

USDOJ-GOOGEX-000312

DocuSign Envelope ID: 39B1530A-D48E-4589-B580-3A29D259CB9A

**DECLARATION OF DUY HO**

I, Duy Ho, declare as follows:

1.     I am a Project Manager on the Legal Discovery team at Google.  I make this declaration based on personal knowledge.  If called as a witness, I could testify competently to the facts stated herein.

2.     My job-specific responsibilities include managing the technical aspects of discovery in connection with litigation matters.  In connection with this matter, I have managed vendor operation of the document review database, overseen processes for producing large datasets, and assisted with analysis of review and production metrics.   As a member of the Legal Discovery team supporting this case, I have reviewed the list of custodians whose documents the parties have agreed will be searched in this case ("agreed-upon custodians"), including the date ranges that the parties have agreed will be applied to those searches.

**Collection of Preserved Chats for Each Legal Hold Notice Recipient**

3.     In connection with this declaration, my team collected all preserved chat messages for all employees on legal hold for this matter, from the date of the initial legal hold notice, September 11, 2020, to the present.  I have been asked to analyze those chats and, working with members of my team, I have prepared a chart identifying the number of Google chats that were preserved for each employee on legal hold, and to the extent possible, to identify the chat as (1) from a threaded room, with history always on (a feature of the product) and is thus automatically preserved in connection with a legal hold; or (2) a chat that requires an individual user to personally elect to enable "history on" to preserve the conversation.  Counsel further requested that I include the approximate date of the first and last preserved Google chat, for both threaded chats and one-on-one or group chats, for each person.

4.     Attached as **Exhibit A** is a table showing this information.  Specifically, for each employee on legal hold for this matter, the table shows in Columns A and D the number of "One-to-One or Group" chats and "Threaded" chats, respectively, that Google has preserved, and in the remaining columns the approximate dates of the first and last preserved chats for each category.  The table is also  divided into three groups of employees on legal hold:  (1) those who

1

DocuSign Envelope ID: 39B1530A-D48E-4589-B58D-3A39D359CPDA

1  were agreed-upon custodians with an agreed-upon date range for searching custodial documents

2  that *post*-dated the filing of the initial lawsuit in this case (August 13, 2020) ("post-complaint

3  custodians"); (2) those who were agreed-upon custodians with an agreed-upon date range for

4  searching custodial documents that *pre-dated* the lawsuit's filing; and (3) all other employees on

5  legal hold for this matter (i.e., non-custodians).  Having reviewed some of the collected chats and

6  our external-facing materials describing how chats are stored, I understand that each "chat"

7  collected and shown in this table represents a snapshot of a chat conversation (either bound by

8  time or by a number of individual messages sent close in time to each other).

9  **Produced Documents for Post-Complaint Custodians**

10       5.     I have also prepared a separate table, attached as **Exhibit B**, showing the total

11  number of documents that Google has produced for each of the post-complaint custodians (i.e., the

12  agreed-upon custodians with an agreed-upon date range for searching custodial documents that

13  *post*-dated the filing of the initial lawsuit in this case).  This table shows the number of

14  documents—including emails, slide decks, and other documents—dated after the filing of the

15  initial lawsuit in this case.  The numbers in this table accurately show what I am able to see in our

16  document management database.  Based on our document database, Google has produced 93,199

17  unique custodial documents—or 1,263,688 pages—for these post-complaint custodians in

18  particular.

19  **Produced Documents on New Developments After Filing of Complaint**

20       6.     Finally, I have also analyzed our production to determine the number of documents

21  that Google has produced, at Plaintiffs' request, relating to new developments arising after the

22  filing of the initial lawsuit on August 13, 2020  For this analysis, Google's counsel provided to

23  me a list of new developments that prompted a production request by Plaintiffs, and the agreed-

24  upon search terms for those developments.   I then used those search terms and applied them to the

25  universe of post-complaint custodians' documents dated after the filing of the initial complaint, to

26  determine the number of produced documents that relate to those new developments.

27       7.     After running this analysis, I found that Google produced, for example:  28,322

28  documents relating to its extension of the compliance deadline for the Play payments policy;

USDOJ-GOOGEX-000314

DocuSign Envelope ID: 39D1530A-D48E-4589-B58D-2A49D359CBBA

1  17,183 documents relating to Google's announcement of its user choice billing pilot program;

2  8,942 documents relating to Google's announcement and consideration of service fee reductions;

3  2,744 documents relating to a specific action Google took in connection with a Korean app

4  developer in Korea; and 2,500 documents relating to Google's release of a new version of

5  Android.[1]

6      I declare under penalty of perjury under the laws of the United States that the foregoing is

7  true and correct.

8      Executed on this 24th day of January, 2023, in California.

9

10  _____

11  Duy Ho

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27  [1] The specific descriptions of these developments were simply provided to me by counsel.  My role was to analyze our production data based on the agreed-upon search terms that were

28  associated with these developments.

-3-

DocuSign Envelope ID: 39B1530A-D48E-4589-B58O-2A29D369CB9A

# EXHIBIT A

USDOJ-GOOGEX-000316

DocuSign Envelope ID: 39B1530A-D49E-4589-B589-2A39D359CB9A

**Exhibit A** – Declaration of Duy Ho

|  | **A** | **B** | **C** | **D** | **E** | **F** |
|---|---|---|---|---|---|---|
| **Post-Complaint Custodian** | **One-to-One or Group #** | **First Chat (month)** | **Last Chat (month)** | **Threaded #** | **First Chat (month)** | **Last Chat (month)** |
| 1 | 102 | 9-2020 | 2-2021 | 406 | 9-2020 | 10-2021 |
| 2 | 348 | 9-2020 | 1-2023 | 6 | 10-2020 | 8-2021 |
| 3 | 469 | 9-2020 | 1-2023 | 320 | 9-2020 | 1-2023 |
| 4 | 451 | 9-2020 | 1-2023 | 3,866 | 10-2020 | 7-2022 |
| 5 | 267 | 9-2020 | 1-2023 | 2,205 | 9-2020 | 1-2023 |
| 6 | 739 | 9-2020 | 1-2023 | 2,314 | 9-2020 | 1-2023 |
| 7 | 181 | 9-2020 | 1-2023 | 1,023 | 9-2020 | 1-2023 |
| 8 | 74 | 9-2020 | 1-2023 | 1,825 | 9-2020 | 1-2023 |
| 9 | 27 | 9-2020 | 12-2022 | 166 | 9-2020 | 1-2023 |
| 10 | 627 | 9-2020 | 1-2023 | 904 | 9-2020 | 1-2023 |
| 11 | 274 | 9-2020 | 1-2023 | 984 | 9-2020 | 1-2023 |
| 12 | 465 | 9-2020 | 1-2023 | 346 | 9-2020 | 12-2021 |
| 13 | 85 | 10-2020 | 12-2022 | 10 | 10-2020 | 11-2021 |
| 14 | 175 | 9-2020 | 1-2023 | 1,595 | 9-2020 | 1-2023 |
| 15 | 10 | 11-2020 | 1-2023 | 162 | 10-2020 | 12-2022 |
| 16 | 474 | 9-2020 | 1-2023 | 90 | 9-2020 | 1-2023 |
| 17 | 512 | 9-2020 | 1-2023 | 287 | 9-2020 | 1-2023 |
| 18 | 644 | 9-2020 | 1-2023 | 10,017 | 9-2020 | 1-2023 |
| 19 | 509 | 9-2020 | 1-2023 | 1,364 | 9-2020 | 1-2023 |
| 20 | 453 | 11-2021 | 1-2023 | 15 | 9-2022 | 1-2023 |
| 21 | 642 | 9-2020 | 1-2023 | 2,014 | 9-2020 | 1-2023 |
| **Other Custodians** | **One-to-One or Group #** | **First Chat (month)** | **Last Chat (month)** | **Threaded #** | **First Chat (month)** | **Last Chat (month)** |
| 22 | 583 | 9-2020 | 1-2023 | 621 | 9-2020 | 11-2022 |
| 23 | 1,975 | 9-2020 | 12-2022 | 174 | 10-2020 | 12-2021 |
| 24 | 1,367 | 9-2020 | 1-2023 | 25,145 | 9-2020 | 1-2023 |
| 25 | 288 | 9-2020 | 1-2023 | 1,108 | 9-2020 | 1-2023 |
| 26 | 105 | 10-2020 | 12-2022 | 1,600 | 9-2020 | 1-2023 |
| 27 | 444 | 9-2020 | 1-2023 | 1,949 | 9-2020 | 1-2023 |
| 28 | 814 | 9-2020 | 1-2023 | 333 | 9-2020 | 1-2023 |
| 29 | 184 | 9-2020 | 1-2023 | 4,791 | 9-2020 | 1-2023 |
| 30 | 725 | 9-2020 | 1-2023 | 3,272 | 9-2020 | 1-2023 |
| 31 | 591 | 12-2020 | 1-2023 | 15,813 | 9-2020 | 1-2023 |
| 32 | 26 | 9-2020 | 11-2020 | 181 | 9-2020 | 5-2021 |
| 33 | 140 | 9-2020 | 12-2022 | 81 | 3-2021 | 12-2022 |
| 34 | 403 | 9-2020 | 1-2023 | 203 | 9-2020 | 1-2023 |
| 35 | 496 | 9-2020 | 1-2023 | 44,079 | 9-2020 | 1-2023 |

USDOJ-GOOGEX-000317

**Exhibit A** – Declaration of Duy Ho

| Others on Legal Hold | One-to-One or Group # | First Chat (month) | Last Chat (month) | Threaded # | First Chat (month) | Last Chat (month) |
|---|---|---|---|---|---|---|
| 36 | 7 | 7-2022 | 1-2023 | 0 | N/A | N/A |
| 37 | 515 | 9-2020 | 1-2023 | 548 | 10-2020 | 1-2023 |
| 38 | 1,008 | 9-2020 | 1-2023 | 8,754 | 9-2020 | 1-2023 |
| 39 | 0 | N/A | N/A | 0 | N/A | N/A |
| 40 | 265 | 11-2020 | 1-2023 | 2,441 | 9-2020 | 1-2023 |
| 41 | 0 | N/A | N/A | 0 | N/A | N/A |
| 42 | 335 | 9-2020 | 1-2023 | 150 | 10-2020 | 1-2023 |
| 43 | 1,767 | 9-2020 | 1-2023 | 974 | 9-2020 | 1-2023 |
| 44 | 522 | 9-2020 | 1-2023 | 3,124 | 9-2020 | 1-2023 |
| **Others on Legal Hold** | **One-to-One or Group #** | **First Chat (month)** | **Last Chat (month)** | **Threaded #** | **First Chat (month)** | **Last Chat (month)** |
| 45 | 944 | 9-2020 | 1-2023 | 4,104 | 9-2020 | 1-2023 |
| 46 | 315 | 9-2020 | 1-2023 | 503 | 12-2020 | 1-2023 |
| 47 | 920 | 9-2020 | 1-2023 | 13,928 | 9-2020 | 1-2023 |
| 48 | 731 | 9-2020 | 1-2023 | 1,912 | 9-2020 | 1-2023 |
| 49 | 358 | 9-2020 | 1-2023 | 8 | 12-2020 | 5-2021 |
| 50 | 3,177 | 9-2020 | 1-2023 | 4,200 | 9-2020 | 1-2023 |
| 51 | 0 | N/A | N/A | 0 | N/A | N/A |
| 52 | 928 | 9-2020 | 1-2023 | 2,123 | 9-2020 | 1-2023 |
| 53 | 0 | N/A | N/A | 0 | N/A | N/A |
| 54 | 548 | 9-2020 | 1-2023 | 500 | 9-2020 | 1-2023 |
| 55 | 306 | 9-2020 | 1-2023 | 5,032 | 9-2020 | 1-2023 |
| 56 | 527 | 10-2020 | 1-2023 | 1,036 | 9-2020 | 1-2023 |
| 57 | 1,550 | 9-2020 | 1-2023 | 1,414 | 9-2020 | 1-2023 |
| 58 | 239 | 11-2020 | 1-2023 | 2,725 | 9-2020 | 1-2023 |
| 59 | 2,282 | 9-2020 | 1-2023 | 7,840 | 9-2020 | 1-2023 |
| 60 | 289 | 5-2022 | 1-2023 | 3,611 | 11-2020 | 1-2023 |
| 61 | 1,565 | 9-2020 | 10-2022 | 50 | 1-2021 | 11-2022 |
| 62 | 268 | 9-2020 | 1-2023 | 7 | 1-2021 | 9-2021 |
| 63 | 532 | 9-2020 | 1-2023 | 1,720 | 9-2020 | 1-2023 |
| 64 | 1,198 | 9-2020 | 1-2023 | 1,176 | 9-2020 | 1-2023 |
| 65 | 0 | N/A | N/A | 0 | N/A | N/A |
| 66 | 0 | N/A | N/A | 0 | N/A | N/A |
| 67 | 960 | 9-2020 | 1-2023 | 7,946 | 9-2020 | 1-2023 |
| 68 | 2,397 | 9-2020 | 1-2023 | 2,533 | 9-2020 | 1-2023 |
| 69 | 603 | 9-2020 | 1-2023 | 1,611 | 9-2020 | 1-2023 |
| 70 | 392 | 10-2020 | 1-2023 | 2,731 | 9-2020 | 1-2023 |
| 71 | 183 | 9-2020 | 1-2023 | 64 | 9-2020 | 12-2022 |
| 72 | 1,164 | 9-2020 | 1-2023 | 955 | 9-2020 | 1-2023 |
| 73 | 510 | 9-2020 | 1-2023 | 1,360 | 9-2020 | 1-2023 |
| 74 | 434 | 9-2020 | 8-2021 | 197 | 3-2021 | 11-2022 |
| 75 | 1,054 | 9-2020 | 10-2022 | 3,543 | 9-2020 | 1-2023 |

USDOJ-GOOGEX-000318

Case 1:20-cv-03010-APM   Document 512-43   Filed 02/23/23   Page 13 of 108

DocuSign Envelope ID: 39B1530A-D49E-458B-B58Q-2A39D359CB9A
Case 3:21-md-02981-JD   Document 429-2   Filed 01/24/23   Page 8 of 17

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 76 | 2,126 | 9-2020 | 1-2023 | 531 | 10-2020 | 1-2023 |
| 77 | 657 | 9-2020 | 1-2023 | 1,308 | 9-2020 | 1-2023 |
| 78 | 34 | 12-2020 | 6-2021 | 1 | 7-2021 | 7-2021 |
| 79 | 519 | 4-2021 | 1-2023 | 22 | 9-2020 | 4-2022 |
| 80 | 1,171 | 9-2020 | 1-2023 | 6,209 | 9-2020 | 1-2023 |
| 81 | 1,028 | 9-2020 | 1-2023 | 2,929 | 9-2020 | 1-2023 |
| 82 | 2,469 | 9-2020 | 1-2023 | 3,126 | 9-2020 | 1-2023 |
| 83 | 578 | 9-2020 | 1-2023 | 14 | 7-2021 | 11-2021 |
| 84 | 509 | 9-2020 | 12-2022 | 11,519 | 9-2020 | 1-2023 |
| 85 | 2,902 | 9-2020 | 1-2023 | 1,095 | 9-2020 | 1-2023 |
| 86 | 1,003 | 9-2020 | 1-2023 | 1,768 | 9-2020 | 1-2023 |
| 87 | 1,435 | 9-2020 | 1-2023 | 7,202 | 9-2020 | 1-2023 |
| 88 | 285 | 12-2020 | 1-2023 | 5,504 | 9-2020 | 1-2023 |
| 89 | 702 | 9-2020 | 1-2023 | 377 | 9-2020 | 1-2023 |
| 90 | 221 | 9-2020 | 1-2022 | 1,175 | 9-2020 | 1-2023 |
| 91 | 353 | 9-2020 | 1-2023 | 47 | 11-2020 | 11-2021 |
| 92 | 229 | 9-2020 | 1-2023 | 104 | 11-2020 | 1-2023 |
| 93 | 1,114 | 9-2020 | 1-2023 | 354 | 1-2020 | 1-2023 |
| 94 | 611 | 9-2020 | 1-2023 | 13 | 9-2020 | 12-2020 |
| 95 | 345 | 9-2020 | 1-2023 | 1,851 | 9-2020 | 1-2023 |
| 96 | 1,285 | 9-2020 | 1-2023 | 11,134 | 9-2020 | 1-2023 |
| 97 | 848 | 9-2020 | 1-2023 | 1,090 | 9-2020 | 1-2023 |
| 98 | 931 | 9-2020 | 1-2023 | 4,360 | 9-2020 | 1-2023 |
| 99 | 93 | 12-2020 | 1-2022 | 67 | 9-2020 | 6-2022 |
| 100 | 815 | 9-2020 | 9-2022 | 2,111 | 9-2020 | 1-2023 |
| 101 | 934 | 9-2020 | 1-2023 | 10,068 | 9-2020 | 1-2023 |
| 102 | 361 | 11-2020 | 1-2023 | 1,761 | 9-2020 | 1-2023 |
| 103 | 1,078 | 9-2020 | 1-2023 | 1,312 | 9-2020 | 1-2023 |
| 104 | 1,161 | 9-2020 | 1-2023 | 11,741 | 9-2020 | 1-2023 |
| 105 | 556 | 9-2020 | 1-2023 | 27,144 | 9-2020 | 1-2023 |
| 106 | 705 | 11-2020 | 1-2023 | 2,973 | 9-2020 | 1-2023 |
| 107 | 0 | N/A | N/A | 0 | N/A | N/A |
| 108 | 162 | 9-2020 | 12-2022 | 129 | 9-2020 | 9-2022 |
| 109 | 219 | 9-2020 | 1-2023 | 1,420 | 10-2020 | 1-2023 |
| 110 | 489 | 9-2020 | 1-2022 | 13 | 9-2020 | 7-2021 |
| 111 | 0 | N/A | N/A | 0 | N/A | N/A |
| 112 | 1,309 | 12-2020 | 1-2023 | 7,022 | 9-2020 | 1-2023 |
| 113 | 0 | N/A | N/A | 0 | N/A | N/A |
| 114 | 1,931 | 9-2020 | 1-2023 | 3,425 | 9-2020 | 1-2023 |
| 115 | 1,578 | 9-2020 | 1-2023 | 762 | 9-2020 | 1-2023 |
| 116 | 320 | 9-2020 | 1-2023 | 246 | 9-2021 | 1-2023 |
| 117 | 1,086 | 9-2020 | 1-2023 | 77 | 9-2020 | 12-2022 |
| 118 | 20 | 9-2020 | 10-2020 | 6 | 9-2020 | 12-2020 |

3

USDOJ-GOOGEX-000319

DocuSign Envelope ID: 39B1530A-D49E-4589-B58Q-2A39D259CB9A

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 119 | 1,654 | 9-2020 | 1-2023 | 150 | 10-2020 | 1-2023 |
| 120 | 480 | 9-2020 | 1-2023 | 8,377 | 9-2020 | 1-2023 |
| 121 | 1,210 | 9-2020 | 1-2023 | 23,532 | 9-2020 | 1-2023 |
| 122 | 144 | 11-2020 | 1-2023 | 48 | 9-2020 | 12-2022 |
| 123 | 1,477 | 9-2020 | 1-2023 | 900 | 9-2020 | 1-2023 |
| 124 | 677 | 9-2020 | 1-2023 | 3,725 | 9-2020 | 1-2023 |
| 125 | 260 | 9-2020 | 10-2021 | 177 | 9-2020 | 9-2021 |
| 126 | 1,019 | 9-2020 | 1-2023 | 1,617 | 9-2020 | 1-2023 |
| 127 | 709 | 11-2020 | 1-2023 | 58 | 9-2020 | 1-2023 |
| 128 | 582 | 2-2021 | 1-2023 | 1,040 | 9-2020 | 1-2023 |
| 129 | 337 | 9-2020 | 1-2023 | 98 | 10-2020 | 12-2022 |
| 130 | 644 | 9-2020 | 1-2023 | 535 | 9-2020 | 1-2023 |
| 131 | 142 | 9-2020 | 1-2023 | 3,044 | 9-2020 | 1-2023 |
| 132 | 81 | 9-2020 | 1-2023 | 57 | 3-2021 | 1-2023 |
| 133 | 9 | 9-2020 | 3-2021 | 123 | 9-2020 | 11-2022 |
| 134 | 82 | 8-2022 | 1-2023 | 56 | 8-2022 | 1-2023 |
| 135 | 413 | 9-2020 | 1-2023 | 4,164 | 9-2020 | 1-2023 |
| 136 | 1,454 | 9-2020 | 1-2023 | 1,844 | 9-2020 | 1-2023 |
| 137 | 0 | N/A | N/A | 0 | N/A | N/A |
| 138 | 0 | N/A | N/A | 0 | N/A | N/A |
| 139 | 937 | 9-2020 | 1-2023 | 4,832 | 9-2020 | 1-2023 |
| 140 | 537 | 9-2020 | 1-2023 | 1,677 | 9-2020 | 1-2023 |
| 141 | 1,797 | 9-2020 | 1-2023 | 2,227 | 10-2020 | 1-2023 |
| 142 | 293 | 2-2021 | 1-2023 | 80 | 9-2020 | 1-2023 |
| 143 | 406 | 11-2020 | 1-2023 | 5,975 | 9-2020 | 1-2023 |
| 144 | 829 | 12-2020 | 1-2023 | 1,456 | 9-2020 | 1-2023 |
| 145 | 179 | 9-2020 | 12-2022 | 165 | 9-2020 | 1-2023 |
| 146 | 1,234 | 9-2020 | 1-2023 | 7,838 | 9-2020 | 1-2023 |
| 147 | 549 | 9-2020 | 1-2023 | 4,717 | 9-2020 | 1-2023 |
| 148 | 606 | 9-2020 | 1-2023 | 1,386 | 9-2020 | 1-2023 |
| 149 | 148 | 9-2021 | 1-2023 | 449 | 9-2020 | 12-2022 |
| 150 | 624 | 9-2020 | 1-2023 | 701 | 9-2020 | 1-2023 |
| 151 | 1,054 | 9-2020 | 1-2023 | 1,670 | 9-2020 | 1-2023 |
| 152 | 874 | 9-2020 | 1-2023 | 401 | 9-2020 | 12-2022 |
| 153 | 635 | 9-2020 | 1-2023 | 768 | 9-2020 | 1-2023 |
| 154 | 1,143 | 9-2020 | 1-2023 | 793 | 9-2020 | 1-2023 |
| 155 | 525 | 9-2020 | 1-2023 | 539 | 9-2020 | 3-2022 |
| 156 | 4,666 | 9-2020 | 1-2023 | 2,635 | 9-2020 | 1-2023 |
| 157 | 0 | N/A | N/A | 0 | N/A | N/A |
| 158 | 703 | 9-2020 | 1-2023 | 11,098 | 9-2020 | 1-2023 |
| 159 | 1,498 | 9-2020 | 1-2023 | 0 | N/A | N/A |
| 160 | 754 | 10-2020 | 1-2023 | 354 | 10-2020 | 1-2023 |
| 161 | 71 | 11-2020 | 10-2021 | 5,766 | 9-2020 | 1-2023 |

USDOJ-GOOGEX-000320

DocuSign Envelope ID: 3DD1530A-D48E-458B-B588-8A39D359CD9A

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 162 | 575 | 9-2020 | 1-2023 | 270 | 11-2020 | 1-2023 |
| 163 | 289 | 9-2020 | 12-2020 | 134 | 9-2020 | 7-2022 |
| 164 | 241 | 9-2020 | 1-2023 | 201 | 11-2020 | 1-2023 |
| 165 | 0 | N/A | N/A | 5 | 9-2020 | 11-2020 |
| 166 | 1,100 | 9-2020 | 1-2023 | 1,924 | 9-2020 | 1-2023 |
| 167 | 848 | 9-2020 | 1-2023 | 417 | 9-2020 | 1-2023 |
| 168 | 1,609 | 9-2020 | 1-2023 | 71 | 9-2020 | 12-2021 |
| 169 | 3,167 | 9-2020 | 1-2023 | 1,154 | 9-2020 | 1-2023 |
| 170 | 679 | 9-2020 | 1-2023 | 1,150 | 9-2020 | 1-2023 |
| 171 | 104 | 11-2020 | 1-2023 | 365 | 9-2020 | 1-2023 |
| 172 | 633 | 12-2020 | 1-2023 | 6 | 3-2021 | 11-2021 |
| 173 | 983 | 9-2020 | 1-2023 | 399 | 9-2020 | 1-2023 |
| 174 | 0 | N/A | N/A | 0 | N/A | N/A |
| 175 | 198 | 12-2020 | 11-2022 | 808 | 9-2020 | 7-2022 |
| 176 | 872 | 9-2020 | 1-2023 | 4,587 | 9-2020 | 1-2023 |
| 177 | 273 | 9-2020 | 2-2021 | 211 | 9-2020 | 1-2023 |
| 178 | 623 | 9-2020 | 1-2023 | 623 | 9-2020 | 1-2023 |
| 179 | 0 | N/A | N/A | 0 | N/A | N/A |
| 180 | 2,173 | 9-2020 | 1-2023 | 2,051 | 9-2020 | 1-2023 |
| 181 | 664 | 9-2020 | 1-2023 | 12,324 | 9-2020 | 1-2023 |
| 182 | 257 | 9-2020 | 1-2023 | 59 | 9-2020 | 12-2022 |
| 183 | 1,118 | 9-2020 | 1-2023 | 4,793 | 9-2020 | 1-2023 |
| 184 | 180 | 10-2020 | 11-2022 | 28 | 10-2020 | 1-2023 |
| 185 | 215 | 12-2020 | 1-2023 | 280 | 9-2020 | 1-2023 |
| 186 | 1,399 | 9-2020 | 1-2023 | 157 | 9-2020 | 11-2022 |
| 187 | 164 | 9-2020 | 1-2023 | 1,809 | 9-2020 | 1-2023 |
| 188 | 968 | 9-2020 | 1-2023 | 3,676 | 9-2020 | 1-2023 |
| 189 | 332 | 9-2020 | 12-2022 | 282 | 9-2020 | 1-2023 |
| 190 | 1,277 | 9-2020 | 7-2022 | 1,322 | 9-2020 | 1-2023 |
| 191 | 1,037 | 9-2020 | 1-2023 | 916 | 9-2020 | 1-2023 |
| 192 | 414 | 9-2020 | 1-2023 | 1,219 | 9-2020 | 1-2023 |
| 193 | 40 | 9-2020 | 12-2022 | 3 | 12-2020 | 3-2022 |
| 194 | 633 | 9-2020 | 1-2023 | 82 | 9-2020 | 9-2021 |
| 195 | 406 | 11-2020 | 1-2023 | 650 | 9-2020 | 1-2023 |
| 196 | 1,054 | 9-2020 | 1-2023 | 851 | 9-2020 | 1-2023 |
| 197 | 1,538 | 9-2020 | 1-2023 | 2,756 | 9-2020 | 1-2023 |
| 198 | 203 | 3-2022 | 1-2023 | 0 | N/A | N/A |
| 199 | 0 | N/A | N/A | 0 | N/A | N/A |
| 200 | 696 | 9-2020 | 1-2023 | 6,520 | 9-2020 | 1-2023 |
| 201 | 456 | 9-2020 | 1-2023 | 427 | 9-2020 | 1-2023 |
| 202 | 1,417 | 9-2020 | 1-2023 | 6,420 | 9-2020 | 1-2023 |
| 203 | 1,620 | 9-2020 | 1-2023 | 336 | 9-2020 | 1-2023 |
| 204 | 218 | 8-2021 | 12-2022 | 27 | 9-2020 | 4-2022 |

USDOJ-GOOGEX-000321

DocuSign Envelope ID: 3DD1530A-D49E-458B-B588-8A39D359GD9A

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 205 | 577 | 9-2020 | 1-2023 | 22 | 9-2020 | 3-2022 |
| 206 | 1,372 | 9-2020 | 1-2023 | 480 | 9-2020 | 1-2023 |
| 207 | 660 | 9-2020 | 1-2023 | 680 | 9-2020 | 1-2023 |
| 208 | 1,497 | 9-2020 | 1-2023 | 2,190 | 9-2020 | 1-2023 |
| 209 | 227 | 9-2020 | 1-2023 | 263 | 9-2020 | 1-2023 |
| 210 | 509 | 9-2021 | 1-2023 | 169 | 2-2021 | 1-2023 |
| 211 | 517 | 11-2020 | 1-2023 | 938 | 9-2020 | 1-2023 |
| 212 | 483 | 9-2020 | 1-2023 | 285 | 9-2020 | 1-2023 |
| 213 | 263 | 10-2020 | 5-2022 | 168 | 9-2020 | 8-2022 |
| 214 | 220 | 9-2020 | 1-2023 | 348 | 9-2020 | 1-2023 |
| 215 | 1,803 | 9-2020 | 1-2023 | 477 | 9-2020 | 1-2023 |
| 216 | 382 | 9-2020 | 1-2023 | 2,378 | 9-2020 | 1-2023 |
| 217 | 398 | 12-2020 | 1-2023 | 123 | 9-2020 | 6-2022 |
| 218 | 460 | 9-2020 | 1-2023 | 333 | 9-2020 | 1-2023 |
| 219 | 1,019 | 11-2020 | 1-2023 | 407 | 9-2020 | 1-2023 |
| 220 | 0 | N/A | N/A | 0 | N/A | N/A |
| 221 | 902 | 9-2020 | 10-2022 | 1,025 | 9-2020 | 1-2023 |
| 222 | 1,545 | 9-2020 | 1-2023 | 689 | 9-2020 | 1-2023 |
| 223 | 884 | 9-2020 | 1-2023 | 1,957 | 9-2020 | 1-2023 |
| 224 | 285 | 9-2020 | 1-2023 | 145 | 9-2020 | 12-2022 |
| 225 | 1,551 | 9-2020 | 1-2023 | 1,770 | 9-2020 | 1-2023 |
| 226 | 791 | 9-2020 | 1-2023 | 4,501 | 9-2020 | 1-2023 |
| 227 | 58 | 10-2020 | 6-2021 | 14 | 1-2021 | 3-2022 |
| 228 | 881 | 9-2020 | 1-2023 | 249 | 9-2020 | 1-2023 |
| 229 | 84 | 9-2020 | 4-2021 | 1,986 | 9-2020 | 1-2023 |
| 230 | 989 | 9-2020 | 1-2023 | 733 | 9-2020 | 1-2023 |
| 231 | 148 | 6-2021 | 1-2023 | 1,016 | 9-2020 | 1-2023 |
| 232 | 501 | 9-2020 | 12-2022 | 73 | 9-2020 | 3-2022 |
| 233 | 1,051 | 9-2020 | 1-2023 | 326 | 3-2021 | 1-2023 |
| 234 | 716 | 12-2020 | 1-2023 | 1,759 | 9-2020 | 1-2023 |
| 235 | 626 | 9-2020 | 1-2023 | 2,021 | 9-2020 | 1-2023 |
| 236 | 745 | 7-2021 | 1-2023 | 2,176 | 9-2020 | 1-2023 |
| 237 | 1,961 | 10-2020 | 1-2023 | 256 | 3-2021 | 1-2023 |
| 238 | 744 | 9-2020 | 1-2023 | 3,259 | 9-2020 | 1-2023 |
| 239 | 286 | 9-2020 | 1-2023 | 11 | 1-2021 | 11-2021 |
| 240 | 176 | 9-2020 | 1-2023 | 4,487 | 9-2020 | 1-2023 |
| 241 | 245 | 9-2020 | 1-2023 | 873 | 9-2020 | 1-2023 |
| 242 | 638 | 9-2020 | 1-2023 | 240 | 2-2021 | 1-2023 |
| 243 | 415 | 3-2021 | 1-2023 | 43 | 9-2020 | 1-2023 |
| 244 | 149 | 9-2021 | 1-2023 | 471 | 9-2020 | 8-2022 |
| 245 | 254 | 11-2020 | 1-2023 | 439 | 9-2020 | 1-2023 |
| 246 | 111 | 9-2020 | 1-2023 | 977 | 9-2020 | 1-2023 |
| 247 | 0 | N/A | N/A | 0 | N/A | N/A |

USDOJ-GOOGEX-000322

DocuSign Envelope ID: 3DD1530A-D49E-4589-B588-2A39D359GD9A

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 248 | 213 | 9-2020 | 1-2023 | 609 | 9-2020 | 1-2023 |
| 249 | 567 | 9-2020 | 1-2023 | 3,358 | 9-2020 | 1-2023 |
| 250 | 577 | 10-2020 | 1-2023 | 521 | 9-2020 | 1-2023 |
| 251 | 959 | 9-2020 | 1-2023 | 73 | 9-2020 | 5-2022 |
| 252 | 0 | N/A | N/A | 0 | N/A | N/A |
| 253 | 692 | 9-2020 | 1-2023 | 8,095 | 9-2020 | 1-2023 |
| 254 | 787 | 10-2020 | 1-2023 | 3,892 | 9-2020 | 1-2023 |
| 255 | 14 | 11-2020 | 12-2022 | 0 | N/A | N/A |
| 256 | 0 | N/A | N/A | 0 | N/A | N/A |
| 257 | 232 | 9-2020 | 1-2023 | 65 | 9-2020 | 5-2022 |
| 258 | 151 | 9-2020 | 1-2023 | 30 | 11-2022 | 12-2022 |
| 259 | 686 | 9-2020 | 1-2023 | 243 | 9-2020 | 12-2022 |
| 260 | 17 | 12-2020 | 3-2021 | 2 | 12-2020 | 9-2021 |
| 261 | 1,403 | 9-2020 | 1-2023 | 1,556 | 9-2020 | 1-2023 |
| 262 | 286 | 9-2020 | 1-2023 | 5 | 1-2021 | 3-2022 |
| 263 | 14 | 9-2020 | 7-2021 | 39 | 10-2020 | 10-2021 |
| 264 | 1,276 | 9-2020 | 1-2023 | 408 | 9-2020 | 1-2023 |
| 265 | 958 | 9-2020 | 1-2023 | 497 | 10-2020 | 1-2023 |
| 266 | 204 | 9-2020 | 3-2021 | 1,696 | 9-2020 | 1-2023 |
| 267 | 479 | 9-2020 | 1-2023 | 1,513 | 9-2020 | 1-2023 |
| 268 | 1,251 | 9-2020 | 1-2023 | 5,473 | 9-2020 | 1-2023 |
| 269 | 92 | 9-2020 | 7-2022 | 5,617 | 9-2020 | 1-2023 |
| 270 | 428 | 9-2020 | 1-2023 | 1,310 | 9-2020 | 1-2023 |
| 271 | 522 | 9-2020 | 1-2023 | 3,198 | 9-2020 | 1-2023 |
| 272 | 702 | 9-2020 | 1-2023 | 695 | 9-2020 | 12-2022 |
| 273 | 879 | 9-2020 | 1-2023 | 3,252 | 9-2020 | 1-2023 |
| 274 | 818 | 9-2020 | 1-2023 | 1,319 | 9-2020 | 1-2023 |
| 275 | 0 | N/A | N/A | 0 | N/A | N/A |
| 276 | 41 | 9-2020 | 1-2023 | 2,117 | 9-2020 | 1-2023 |
| 277 | 0 | N/A | N/A | 0 | N/A | N/A |
| 278 | 0 | N/A | N/A | 0 | N/A | N/A |
| 279 | 665 | 9-2020 | 1-2023 | 1,422 | 9-2020 | 1-2023 |
| 280 | 931 | 11-2020 | 1-2023 | 4,427 | 9-2020 | 1-2023 |
| 281 | 620 | 12-2020 | 1-2023 | 600 | 10-2020 | 1-2023 |
| 282 | 2,380 | 9-2020 | 1-2023 | 5 | 3-2021 | 11-2021 |
| 283 | 2,162 | 9-2020 | 1-2023 | 612 | 10-2020 | 1-2023 |
| 284 | 480 | 9-2020 | 1-2023 | 1,856 | 9-2020 | 1-2023 |
| 285 | 786 | 9-2020 | 1-2023 | 2,349 | 9-2020 | 1-2023 |
| 286 | 1,039 | 9-2020 | 1-2023 | 294 | 9-2020 | 1-2023 |
| 287 | 757 | 9-2020 | 1-2023 | 10 | 10-2020 | 8-2022 |
| 288 | 666 | 9-2020 | 1-2023 | 14,854 | 9-2020 | 1-2023 |
| 289 | 743 | 11-2020 | 1-2023 | 594 | 3-2021 | 1-2023 |
| 290 | 498 | 9-2020 | 1-2023 | 388 | 10-2020 | 1-2023 |

USDOJ-GOOGEX-000323

DocuSign Envelope ID: 3DD1530A-D49E-4589-B580-8A39D359GD9A

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 291 | 747 | 9-2020 | 1-2023 | 452 | 9-2020 | 1-2023 |
| 292 | 138 | 9-2020 | 2-2021 | 0 | N/A | N/A |
| 293 | 1,260 | 9-2020 | 1-2023 | 5,718 | 9-2020 | 1-2023 |
| 294 | 5 | 9-2020 | 9-2020 | 1,711 | 9-2020 | 1-2023 |
| 295 | 630 | 9-2020 | 1-2023 | 700 | 9-2020 | 1-2023 |
| 296 | 1,238 | 9-2020 | 1-2023 | 1,885 | 9-2020 | 1-2023 |
| 297 | 711 | 9-2020 | 1-2023 | 450 | 9-2020 | 1-2023 |
| 298 | 524 | 9-2020 | 1-2023 | 1,688 | 9-2020 | 1-2023 |
| 299 | 1,154 | 9-2020 | 1-2023 | 1,565 | 9-2020 | 1-2023 |
| 300 | 193 | 10-2020 | 1-2023 | 3,892 | 9-2020 | 1-2023 |
| 301 | 228 | 9-2020 | 1-2023 | 71 | 9-2020 | 5-2022 |
| 302 | 3 | N/A | N/A | 0 | N/A | N/A |
| 303 | 1,242 | 9-2020 | 1-2023 | 1,031 | 9-2020 | 1-2023 |
| 304 | 131 | 10-2020 | 1-2023 | 64 | 9-2020 | 5-2022 |
| 305 | 458 | 9-2020 | 1-2023 | 80 | 1-2021 | 12-2022 |
| 306 | 1,364 | 9-2020 | 1-2023 | 23,690 | 9-2020 | 1-2023 |
| 307 | 81 | 12-2020 | 3-2021 | 48 | 9-2020 | 7-2021 |
| 308 | 845 | 9-2020 | 11-2022 | 374 | 9-2020 | 1-2023 |
| 309 | 1,825 | 9-2020 | 1-2023 | 10,705 | 9-2020 | 1-2023 |
| 310 | 48 | 9-2020 | 1-2023 | 246 | 10-2020 | 1-2023 |
| 311 | 331 | 9-2020 | 1-2023 | 2,345 | 9-2020 | 1-2023 |
| 312 | 2,749 | 9-2020 | 1-2023 | 6,360 | 9-2020 | 1-2023 |
| 313 | 432 | 9-2020 | 7-2022 | 4,450 | 10-2020 | 1-2023 |
| 314 | 699 | 10-2020 | 1-2023 | 2,900 | 9-2020 | 1-2023 |
| 315 | 559 | 9-2020 | 1-2023 | 186 | 9-2020 | 12-2022 |
| 316 | 122 | 9-2020 | 12-2022 | 133 | 9-2020 | 6-2022 |
| 317 | 154 | 9-2020 | 1-2023 | 133 | 9-2020 | 12-2022 |
| 318 | 2,417 | 9-2020 | 1-2023 | 21,500 | 9-2020 | 1-2023 |
| 319 | 200 | 9-2020 | 2-2021 | 63 | 9-2020 | 10-2021 |
| 320 | 103 | 3-2021 | 6-2022 | 2,204 | 9-2020 | 1-2023 |
| 321 | 2,112 | 9-2020 | 1-2023 | 3,586 | 9-2020 | 1-2023 |
| 322 | 85 | 12-2020 | 12-2022 | 87 | 9-2020 | 9-2022 |
| 323 | 519 | 9-2020 | 1-2021 | 47 | 9-2020 | 2-2021 |
| 324 | 0 | N/A | N/A | 0 | N/A | N/A |
| 325 | 138 | 9-2020 | 1-2023 | 8,452 | 10-2020 | 1-2023 |
| 326 | 845 | 9-2020 | 1-2023 | 104 | 11-2020 | 12-2022 |
| 327 | 379 | 9-2020 | 12-2022 | 35 | 9-2020 | 12-2022 |
| 328 | 298 | 9-2020 | 1-2023 | 1,188 | 9-2020 | 1-2023 |
| 329 | 847 | 9-2020 | 1-2023 | 216 | 9-2020 | 12-2022 |
| 330 | 355 | 10-2020 | 1-2023 | 11,755 | 9-2020 | 1-2023 |
| 331 | 3,132 | 9-2020 | 1-2023 | 631 | 9-2020 | 1-2023 |
| 332 | 1,231 | 9-2020 | 1-2023 | 2,783 | 9-2020 | 1-2023 |
| 333 | 1,950 | 9-2020 | 1-2023 | 44 | 9-2020 | 4-2021 |

USDOJ-GOOGEX-000324

Case 1:20-cv-03010-APM   Document 512-43   Filed 02/23/23   Page 19 of 108

DocuSign Envelope ID: 3DD1530A-D49E-458B-B588-8A39D359GD9A   Case 3:21-md-02981-JD   Document 429-2   Filed 01/24/23   Page 14 of 17

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 334 | 0 | N/A | N/A | 0 | N/A | N/A |
| 335 | 179 | 9-2020 | 10-2021 | 6 | 10-2020 | 1-2021 |
| 336 | 93 | 9-2020 | 7-2021 | 3,686 | 9-2020 | 1-2023 |
| 337 | 407 | 9-2020 | 9-2021 | 92 | 9-2020 | 6-2021 |
| 338 | 139 | 9-2020 | 1-2023 | 285 | 9-2020 | 12-2022 |
| 339 | 166 | 2-2022 | 1-2023 | 13 | 10-2020 | 11-2021 |
| 340 | 1,551 | 9-2020 | 1-2023 | 896 | 9-2020 | 1-2023 |
| 341 | 0 | N/A | N/A | 0 | N/A | N/A |
| 342 | 174 | 9-2020 | 1-2023 | 358 | 9-2020 | 1-2023 |
| 343 | 733 | 1-2021 | 1-2023 | 1,165 | 9-2020 | 1-2023 |
| 344 | 145 | 9-2020 | 1-2023 | 533 | 2-2021 | 1-2023 |
| 345 | 824 | 11-2020 | 1-2023 | 370 | 9-2020 | 1-2023 |
| 346 | 1,222 | 9-2020 | 1-2023 | 1,606 | 9-2020 | 1-2023 |
| 347 | 1,026 | 9-2020 | 1-2023 | 2,094 | 9-2020 | 1-2023 |
| 348 | 101 | 10-2020 | 1-2023 | 7,938 | 9-2020 | 1-2023 |
| 349 | 529 | 9-2020 | 1-2023 | 525 | 9-2020 | 1-2023 |
| 350 | 542 | 10-2020 | 1-2023 | 5,581 | 9-2020 | 1-2023 |
| 351 | 1,519 | 9-2020 | 1-2023 | 35,016 | 9-2020 | 1-2023 |
| 352 | 2,758 | 9-2020 | 1-2023 | 1,463 | 9-2020 | 1-2023 |
| 353 | 0 | N/A | N/A | 0 | N/A | N/A |
| 354 | 856 | 9-2020 | 1-2023 | 233 | 9-2020 | 11-2022 |
| 355 | 525 | 9-2020 | 1-2023 | 2,006 | 9-2020 | 1-2023 |
| 356 | 131 | 9-2020 | 1-2023 | 1,374 | 9-2020 | 1-2023 |
| 357 | 1,190 | 9-2020 | 1-2023 | 1,905 | 9-2020 | 1-2023 |
| 358 | 1,794 | 9-2020 | 1-2023 | 538 | 9-2020 | 1-2023 |
| 359 | 3,154 | 9-2020 | 1-2023 | 6,419 | 9-2020 | 1-2023 |
| 360 | 371 | 9-2020 | 1-2023 | 2,335 | 9-2020 | 1-2023 |
| 361 | 889 | 9-2020 | 1-2023 | 6,875 | 9-2020 | 1-2023 |
| 362 | 164 | 9-2020 | 1-2023 | 155 | 9-2020 | 1-2023 |
| 363 | 1,427 | 9-2020 | 1-2023 | 8,619 | 9-2020 | 1-2023 |
| 364 | 109 | 10-2020 | 1-2023 | 3,740 | 10-2020 | 1-2023 |
| 365 | 3 | N/A | N/A | 0 | N/A | N/A |
| 366 | 1,460 | 9-2020 | 1-2023 | 7,759 | 9-2020 | 1-2023 |
| 367 | 1,943 | 9-2020 | 1-2023 | 2,309 | 9-2020 | 1-2023 |
| 368 | 0 | N/A | N/A | 0 | N/A | N/A |
| 369 | 384 | 9-2020 | 1-2023 | 7,592 | 9-2020 | 1-2023 |
| 370 | 1,626 | 9-2020 | 1-2023 | 3,878 | 9-2020 | 1-2023 |
| 371 | 611 | 9-2020 | 1-2023 | 130 | 9-2020 | 1-2023 |
| 372 | 510 | 9-2020 | 1-2023 | 26,206 | 9-2020 | 1-2023 |
| 373 | 1,781 | 9-2020 | 1-2023 | 641 | 10-2020 | 1-2023 |
| 374 | 687 | 9-2020 | 1-2023 | 3,332 | 9-2020 | 1-2023 |
| 375 | 1,174 | 9-2020 | 1-2023 | 2,932 | 9-2020 | 1-2023 |
| 376 | 1,084 | 9-2020 | 1-2023 | 1,046 | 9-2020 | 1-2023 |

9

USDOJ-GOOGEX-000325

DocuSign Envelope ID: 39D1530A-D49E-4589-B588-8A39D359G59A

**Exhibit A** – Declaration of Duy Ho

| | | | | | | |
|---|---|---|---|---|---|---|
| 377 | 148 | 3-2021 | 1-2023 | 4,853 | 9-2020 | 1-2023 |
| 378 | 822 | 9-2020 | 1-2023 | 190 | 9-2020 | 12-2022 |
| 379 | 497 | 9-2020 | 1-2023 | 1,097 | 12-2020 | 1-2023 |
| 380 | 231 | 9-2020 | 1-2023 | 181 | 9-2020 | 6-2022 |
| 381 | 0 | N/A | N/A | 0 | N/A | N/A |
| 382 | 500 | 9-2020 | 1-2023 | 411 | 9-2020 | 8-2022 |
| 383 | 814 | 9-2020 | 1-2023 | 643 | 9-2020 | 1-2023 |

USDOJ-GOOGEX-000326

DocuSign Envelope ID: 39D1530A-D49E-4589-B580-2A39D359GD9A

# EXHIBIT B

USDOJ-GOOGEX-000327

DocuSign Envelope ID: 39D1530A-D48E-4589-B586-2A39D359GD9A

**Exhibit B** – Declaration of Duy Ho

| Post-Complaint Custodian | Produced Documents Dated After 8-13-2020 |
|---|---|
| 1 | 7,676 |
| 2 | 3,731 |
| 3 | 8,941 |
| 4 | 3,478 |
| 5 | 2,581 |
| 6 | 8,305 |
| 7 | 14,431 |
| 8 | 13,687 |
| 9 | 6,135 |
| 10 | 23,465 |
| 11 | 2,742 |
| 12 | 1,358 |
| 13 | 7,137 |
| 14 | 15,207 |
| 15 | 377 |
| 16 | 3,538 |
| 17 | 2,140 |
| 18 | 3,856 |
| 19 | 8,757 |
| 20 | 564 |
| 21 | 439 |

USDOJ-GOOGEX-000328

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC et al*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>*Epic Games, Inc. v. Google LLC et al., Case No. 3:20-cv-05671-JD*<br><br>*In re Google Play Consumer Antitrust Litigation, Case No. 3:20-cv-05761-JD*<br><br>*State of Utah et al. v. Google LLC et al., Case No. 3:21-cv-05227-JD*<br><br>*Match Group, LLC et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD* | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF GREGORY JOHNSON IN SUPPORT OF DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES**<br><br>Judge:     Hon. James Donato |

USDOJ-GOOGEX-000329

1  **DECLARATION OF GREGORY JOHNSON**

2      I, Gregory Johnson, declare as follows:

3      1.    I am a Legal Specialists Manager at Google, and have been a Legal Specialist at

4  Google since 2012.  My responsibilities as a Legal Specialist include working with in-house

5  counsel, outside counsel, members of the Google Discovery team, and business and product teams

6  across various litigation matters to conduct fact-finding investigations, gather information, identify

7  documents and data to preserve and/or collect in response to litigation discovery.  I make this

8  declaration based on personal knowledge.  If called as a witness, I could testify competently to the

9  facts stated herein.

10      **Legal Hold Notices & Instructions About Google Chat Preservation**

11      2.    I am familiar with the process for creating and circulating legal hold notices at

12  Google, and I am personally responsible for implementing the legal hold notices and reminders to

13  Google employees in this case.  I am familiar with Google's practices with regard to preservation

14  obligations and document collection.

15      3.    As a matter of process, Google has a template legal hold notice that it uses for some

16  of its litigation matters.  Typically, when a case is filed, Google litigation counsel, usually working

17  with outside counsel, revises the template to include background information about the case, as

18  well as the topics that are covered by the legal hold notice.  After that, a Legal Specialist, such as

19  myself, will incorporate the case background information and covered topics drafted by counsel

20  into an internal discovery operations tracking system and utilize this system to apply the legal hold

21  and send the legal hold notice, resulting in an email to the list of individuals that counsel has

22  identified to receive the legal hold notice.

23      4.    That is what happened in this case.  A silent "back end" hold was implemented in

24  the system for an initial set of employees on September 3, 2020, automatically preserving their

25  documents including history-on chats.  Then, after the content of the initial hold notice was

26  finalized by litigation counsel, I entered counsel's case background information and covered

27  topics into the discovery operations tracking system which disseminated it to recipients identified

28  for legal hold at the time on September 11, 2020.  As the case progressed, and counsel identified

Case 1:20-cv-03010-APM   Document 512-43   Filed 02/23/23   Page 25 of 108

DocuSign Envelope ID: 9FE8E45A-B192-45FD-AEF7-B3500E5F0312
Case 3:21-md-02981-JD   Document 429-3   Filed 01/24/23   Page 3 of 4

new individuals that may have information relevant to the claims, I would apply the legal hold and send the legal hold notice through the discovery operations tracking system to those new individuals.  Subsequently, I also received updated legal hold notice language from counsel that reflected additional parties and legal theories and was responsible for sending those updated legal hold notices to all legal hold custodians.  As of now, Google has placed 383 employees on legal hold for this matter.

5.      In addition to sending numerous amended legal hold notices over time, I also sent repeated emails to a list of Google employees in this matter, at the instruction of counsel, reminding them that they are on legal hold.  In almost every such reminder, we emphasized that Google has an obligation to preserve chat messages for this case, or specifically reminded employees that to the extent they use chats, they should take steps, such as turning "history on," to preserve them.

6.      On at least one occasion in July 2021, consistent with the testimony of our Information Governance Lead (Genaro Lopez) at the evidentiary hearing—an excerpt of which was provided to me by counsel for review—I reminded legal hold notice recipients by email that they should avoid Chat for any topic covered by the legal hold.  I also told them, consistent with Mr. Lopez's testimony, that if they needed to use Google Chat to talk about topics covered by the litigation hold, then they needed to turn history on to make sure their communications would be preserved.

**Preservation Approach for Past Five Years**

7.      I understand that the Court has asked the following question:

*"In any case filed in the United States in the past five years, did Google preserve all Google Chats for relevant individuals (with Google turning the history to "on" for all of those individuals' Google Chats, rather than leaving the preservation decision to the discretion of each individual employee)?"*

8.      I have been a Litigation Paralegal at Google for over 10 years and have participated in hundreds of litigation matters while in this position, and my understanding is that Google has, at least for the past five years, maintained the same approach to preserving Google Chats for legal hold recipients in all of its cases.  That general approach is that Google preserves (a) automatically

-2-

DocuSign Envelope ID: 9FE8E45A-B392-45ED-AEF7-B3500E5F0312

1 (no user action required) the threads in which a legal hold recipient participates in threaded

2 rooms/spaces, and (b) any unthreaded chats (either one-on-one or among a group) in which a

3 participant turned history on.

4       9.     I have taken a number of steps to confirm this. First, over the course of my more

5 than 10 years as a Litigation Paralegal at Google, I have never been involved in a case in which

6 Google automatically preserved all chats, without individual user action, beyond those in threaded

7 room/spaces. Second, I have surveyed the team of Google paralegals that handle all U.S. litigation

8 matters at Google, and to the best of my understanding, none is aware of any case in which

9 Google automatically preserved all chats automatically beyond threaded rooms/spaces. I spoke

10 with almost all members of that group, and they confirmed that Google's practice in all their cases

11 is to instruct legal hold recipients to not use Google Chat for topics covered by the legal hold, and

12 if necessary to turn history on for any such chat (which would not be necessary if all their Google

13 Chats were being automatically preserved). Finally, I have confirmed with our Information

14 Governance Lead, Genaro Lopez, who confirmed he is not aware of any instance in which the

15 legal team has asked his team to force "history on" for all Google Chats for legal hold recipients.

16

17       I declare under penalty of perjury under the laws of the United States that the foregoing is

18 true and correct.

19

20 Executed on this 24th day of January, 2023, in San Francisco, California.

21

22

23 Gregory Johnson

24

25

26

27

28

USDOJ-GOOGEX-000332

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC et al*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA,

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

This Document Relates To:

*Epic Games, Inc. v. Google LLC et al., Case No. 3:20-cv-05671-JD*

*In re Google Play Consumer Antitrust Litigation, Case No. 3:20-cv-05761-JD*

*State of Utah et al. v. Google LLC et al., Case No. 3:21-cv-05227-JD*

*Match Group, LLC et al. v. Google LLC et al., Case No. 3:22-cv-02746-JD*

Case No. 3:21-md-02981-JD

**DECLARATION OF DEVIN CHEN IN SUPPORT OF DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES**

Judge:      Hon. James Donato

USDOJ-GOOGEX-000333

DocuSign Envelope ID: FA99E711-5C62-4C92-BC03-A868D07FD3SA

**DECLARATION OF DEVIN CHEN**

I, Devin Chen (Zhi Chen), declare as follows:

1.     I am a backend engineer on the Chat Backend team at Google.  I make this declaration based on personal knowledge and per discussion with the Chat Admin team.  If called as a witness, I could testify to the best of my knowledge to the facts stated herein.

2.     The function of my team at Google is to develop and improve the Google Chat product.  My responsibilities include feature development for the Chat backend.

3.     I understand that the Court has asked Google to respond to the following question:

- *How many recipients of the litigation hold notice in this case personally elected to turn the history to "on" for any of their Google Chats?*
  - *On what dates did the hold notice recipients do so?*
  - *If they later turned the chat history back to "off," when did they do that?*

4.     Google does not ordinarily maintain the information to answer this question for any meaningful time period.  Google does maintain a system-wide backend log spanning certain Google products, with restricted security access for a rolling period of 55 days only.  This log is designed to assist in addressing bugs in Google Chat from the backend and includes limited data about changes to Google Chat history settings.  The data in that log, however, would not show whether or when an employee changed his or her chat history settings for a particular conversation before the rolling 55-day window—*i.e.*, if an employee had toggled the "history on" setting prior to the 55-day window, the log would not show that activity.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 24th day of January, 2023, in Sunnyvale, California.



Devin Chen

1

USDOJ-GOOGEX-000334

Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B. #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B. #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000

*Counsel for Defendants Google LLC et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA,**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| This Document Relates To: | **DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSES TO MINUTE ORDER QUESTIONS** |
| *Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | |
| *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Judge: Hon. James Donato<br>Date: January 31, 2023 at 1:30 p.m.<br>Courtroom: 11 |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | |
| *Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | |

USDOJ-GOOGEX-000335

1  that they may have lost access to helpful post-Complaint chats without explaining how any

2  conduct before August 2020 could have been affected by the loss of those chats. *See id.* at 11. But

3  as Google explains above and in its prior brief, regardless of the time period, an order limiting

4  Google's defense based on Plaintiffs' lack of evidence would be disproportionate in light of

5  extensive discovery on every important issue in the case and the, at most, minimal prejudice to

6  Plaintiffs. *See* Google's Responses at 12-14.

7  **III.   GOOGLE'S STATEMENTS ABOUT THE FUNCTIONALITY OF GOOGLE
         CHAT AND ITS LEGAL HOLD TOOL WERE ACCURATE**

8

9        Plaintiffs claim that certain statements made by Google in a November 11, 2021 letter to

10  Plaintiffs and the December 9, 2021 Joint Case Management Statement were false. That is wrong.

11  Google accurately described the technological functionality of its internal tools and plainly

12  disclosed to Plaintiffs that history "off" chats were not subject to an automatic hold. Plaintiffs also

13  do not explain how Google's statements prejudiced them, particularly in light of the fact that they

14  acknowledge that Google informed them in October 2021, before any depositions began, that it

15  does not automatically preserve history "off" chats. *See* Plaintiffs' Responses at 6.

16        **A.   Google's Statements in the November 11, 2021 Letter Were Accurate**

17        Google's November 11, 2021 letter responded to Plaintiffs' question, in an October 29,

18  2021, letter regarding "[t]he step-by-step technological processes required to be taken by

19  individuals who received litigation hold notices to preserve instant messages." MDL ECF No.

20  429-1 at 119. In describing that process, Google noted that it "does not have the ability to change

21  default settings for individual custodians with respect to the chat history setting. See Exhibit B,

22  Google Workspace Admin Help page re: chat history." *Id.* at 135. This statement was accurate.

23  *See* Declaration of Genaro Lopez ("Lopez Decl.") ¶¶ 2-3. The Google Chat product and Vault—

24  Google's legal hold tool—do not have functionality that allows Google to control default history

25  settings on an individual-by-individual basis. *Id.* ¶ 3. The publicly available help page regarding

26  chat history and the Vault product that Google cited in and attached to its letter explained that chat

27  history can be set at the group level. *See* MDL ECF No. 429-1 at 145 (describing how to set chat

28  history for an "organizational unit"). Although it is possible to work around the limitations of the

USDOJ-GOOGEX-000336

1   Google Chat product by creating groups, such as organizational units, and changing the chat

2   settings for those groups, those potential solutions have their own limitations and drawbacks. *See*

3   Lopez Decl. ¶ 4.

4        This is confirmed by Mr. Lopez's testimony. Mr. Lopez did not testify that Google could

5   change default settings for individual custodians or that it was possible to set defaults on a

6   custodian-by-custodian basis. Rather, he acknowledged that it is possible "to set 'History on' as

7   the default for all employees on legal hold," 1/12/23 Hr'g Tr. at 43:22-24, and he explained that

8   this would occur at a group level. *See id.* at 48:21-49:2. Mr. Lopez further testified that Google has

9   not taken this approach for logistical and technical reasons. *See id.* at 49:8-16, 60:17-22.

10       **B.    Google's Statements in the December 9, 2021 Statement Were Accurate**

11       Google's statement in the December 9, 2021 Joint Case Management Statement that it had

12   employed "all available preservation methods via its legal hold tool, and active management by

13   legal counsel at every step of the process" was accurate. MDL ECF No. 159 at 10. There is no

14   dispute that Google's "back-end hold" automatically preserves documents including history "on"

15   chats. Johnson Decl. ¶ 4. But Google's legal hold tool, Vault, is not able to collect or retain history

16   "off" chats—preserving history "off" chats is therefore not an "available preservation method via

17   its legal hold tool." Google disclosed that fact to Plaintiffs, attaching a copy of publicly available

18   information about Vault to the November 11, 2021 letter.[4] That attachment states: "If you turn

19   history [o]ff, messages are deleted after 24 hours. *Vault can't hold, retain, or search direct*

20   *messages that are sent with history turned off.*" MDL ECF No. 429-1 at 145 (emphasis added).

21   Nor do Plaintiffs contend that Vault can preserve history "off" chats. Indeed, this entire dispute is

22   about what steps Google should have taken in light of Vault's technical limitation. Google has

23   also actively managed the legal hold process, including with respect to chats. *See* Johnson Decl.

24   ¶¶ 4-6 (explaining instructions and reminders to custodians related to chat preservation).

25

26

27   ─────────────────

   [4] "Turn chat history on or off for users," Google Workspace Admin Help,

28   https://support.google.com/a/answer/7664184?hl=en (last accessed Jan. 27, 2023).

USDOJ-GOOGEX-000337

1  Brian C. Rocca, Bar No. 221576
   brian.rocca@morganlewis.com
2  Sujal J. Shah, Bar No. 215230
   sujal.shah@morganlewis.com
3  Michelle Park Chiu, Bar No. 248421
   michelle.chiu@morganlewis.com
4  Minna Lo Naranjo, Bar No. 259005
   minna.naranjo@morganlewis.com
5  Rishi P. Satia, Bar No. 301958
   rishi.satia@morganlewis.com
6  **MORGAN, LEWIS & BOCKIUS LLP**
   One Market, Spear Street Tower
7  San Francisco, CA 94105
   Telephone: (415) 442-1000
8
   Richard S. Taffet, *pro hac vice*
9  richard.taffet@morganlewis.com
   **MORGAN, LEWIS & BOCKIUS LLP**
10 101 Park Avenue
   New York, NY 10178
11 Telephone: (212) 309-6000

12 *Counsel for Defendants*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, Bar No. 281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, Bar No. 282090
kyle.mach@mto.com
Justin P. Raphael, Bar No. 292380
justin.raphael@mto.com
Emily C. Curran-Huberty, Bar No. 293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Fl.
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave. NW, Ste 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

13

14

15                    **UNITED STATES DISTRICT COURT**

16                    **NORTHERN DISTRICT OF CALIFORNIA**

17                        **SAN FRANCISCO DIVISION**

18 **IN RE GOOGLE PLAY STORE**
   **ANTITRUST LITIGATION**                    Case No. 3:21-md-02981-JD
19
20 THIS DOCUMENT RELATES TO:
   *Epic Games, Inc. v. Google LLC et al.*, Case    **DECLARATION OF GENARO LOPEZ**
21 No. 3:20-cv-05671-JD                             **IN SUPPORT OF DEFENDANTS'**
   *Match Group, LLC et al. v. Google LLC et al.*,  **REPLY TO PLAINTIFFS' RESPONSES**
22 Case No. 3:22-cv-02746-JD                        **TO MINUTE ORDER QUESTIONS**
   *In re Google Play Consumer Antitrust*
23 *Litigation*, Case No. 3:20-cv-05761-JD
   *State of Utah et al v. Google LLC et al.*, Case  Judge:  Hon. James Donato
24 No. 3:21-cv-05227-JD

25

26

27 _____
   DECLARATION OF GENARO LOPEZ IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSES TO
   MINUTE ORDER QUESTIONS
28 Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:22-cv-02746-JD

USDOJ-GOOGEX-000338

DocuSign Envelope ID: D3B579E6-B552-4943-BB02-841E45C5A95E

1    I, Genaro Lopez, declare as follows

2        1.      I am currently the Information Governance Lead for Defendant Google, LLC

3    (along with Google-affiliated entities, "Google").  I have been employed by Google since

4    October 2019 and have held my current position since the beginning of my employment.  Over

5    the course of my employment at Google, I have acquired personal knowledge of Google's

6    practices and procedures concerning information governance programs to ensure that Google

7    appropriately manages the information that it maintains and uses for business operations.

8        2.      I have reviewed the portion of Plaintiffs' January 24, 2023 filing that says that the

9    following statement in a November 11, 2021 letter from Google to Plaintiffs is inaccurate:

10   "With respect to the technological processes required to be taken by individuals to preserve chats

11   or instant messages following their receipt of litigation holds, Google responds that the

12   technological settings on Google's chat retention policy (see Exhibit A) did not change, as

13   Google does not have the ability to change default settings for individual custodians with respect

14   to the chat history setting. See Exhibit B, Google Workspace Admin Help page re: chat history.

15   Specifically:

16       i.    Google's default settings for chat history for the entire organization is set to
             off;
17       ii.   Google employees need to apply the "history on" setting on a chat-by-chat
             basis; and
18       iii.  Settings for chat history are set by each individual custodian."

19       3.      I have also read that Plaintiffs point to my testimony at the January 12, 2023

20   hearing to suggest that I agree that the November 11, 2021 statement is inaccurate. Plaintiffs are

21   incorrect, as I believe the above November 11, 2021 statement is accurate.  Neither the Google

22   Chat product nor Google's legal hold tool, Vault, have functionality that would allow Google to

23   change default history settings on an individual-by-individual basis.

24       4.      Consistent with my testimony provided on January 12, 2023, there are

25   organizational units or groups, to which users can be added and default history can be changed at

26   a group level.  To the best of my knowledge, Google does not use, and has never used these

27

28

DECLARATION OF GENARO LOPEZ IN SUPPORT OF DEFENDANTS' BRIEF IN RESPONSE TO THE
COURT'S QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES
Case No. 3:21-md-02981-JD

USDOJ-GOOGEX-000339

DocuSign Envelope ID: D3B579E6-B552-4943-BB02-841E46C5A99E

1  groups for chat preservation.  And, consistent with my testimony, these groups have limitations

2  and drawbacks.

3          I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

4  26th day of January 2023 in San Francisco.

5

6                                                              DocuSigned by:

7                                                              *Genaro Lopez*

8                                                              _____
                                                               89E3F19290474B0...
                                                                        Genaro Lopez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                     2
        DECLARATION OF GENARO LOPEZ IN SUPPORT OF DEFENDANTS' BRIEF IN RESPONSE TO THE
               COURT'S QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES
                              Case No. 3:21-md-02981-JD

USDOJ-GOOGEX-000340

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **PLAINTIFFS' RESPONSE TO GOOGLE'S BRIEF IN RESPONSE TO THE COURT'S MINUTE ORDER QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES** |
| *Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | |
| *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD | Date:  January 31, 2023 at 1:30 p.m. Courtroom:  11, 19th Floor Judge:  Hon. James Donato |
| *State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD | |
| *Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | |

USDOJ-GOOGEX-000341

It is now clear that Google has been deliberately deleting "off the record" Chats for years, including throughout this litigation.  At every step, Google has attempted to keep its misconduct from coming to light.  Google's willful destruction of documents has deprived Plaintiffs of critical evidence regarding agreements with potential competitors, changes to Google's prices, and changes to its tie of Google Play Billing—all critical issues in this litigation.  To make matters worse, the remedies Google proposes show that it does not take this issue seriously.  Google's proposed "remedies" would be nothing more than a slap on the wrist.  Google cannot be allowed to get away with its spoliation.  Only a serious trial remedy—like the instructions and order of preclusion Plaintiffs proposed—will deter Google from continuing to destroy evidence and cure the prejudice Google has inflicted.

## A.   Question 1:  Google Fails to Answer How Many—and Whether Any—of the 383 Litigation Hold Recipients Turned and Kept On Their Chat History.

Google's response to the Court's first question dances around and attempts to distract from what would otherwise be a simple answer:  It has no idea how many "recipients of the litigation hold notice in this case personally elected to turn the history to 'on,'" or when they chose to do so.  (Dkt. 415 at 1; Google Br. 1-2.)  Google previously represented to Plaintiffs in sworn interrogatory responses that it "has no way to systematically track which Custodians preserved Chats by turning 'history on' or in any other manner."  (Zaken Decl Ex. 1 at 14.)  Its response now confirms that Google "does not ordinarily maintain the information to answer this question for any meaningful time period." (Chen Decl. ¶ 4; *see also* Tr. 116:11-16 (Rope) (agreeing that Google does not have a systematic way to track the "actual record of who elected to do the preservation")).)

Google could have asked litigation hold recipients whether they recall turning on their Chat history or changing their default settings to history "on."[1]  But it did not—likely because its sworn interrogatory responses confirm that only 11 of 37 custodians recalled *ever* turning history "on" for even one Chat during the custodial period.[2]  (Dkt. 427-03 ¶ 34.)  Or Google could have provided the

---

[1]  Google does not even attempt to answer which, if any custodian, ever changed default settings for Chats to history on as opposed to turning history "on" on a conversation-by-conversation basis.

[2] Deposition testimony confirms that many custodians never turned history "on".  (*See, e.g.*, Tr. 103:8-17 (Rosenberg) ("[Q.] During your time at Google, you kept your chat history off the entire time; correct?  [A.] Correct.  I didn't change the default."); Lim Tr. 43:12-14 ("Q. You had history off by default and never turned it on, correct?  A. That's right."); Dkt. 389-05 at 74 (Mattson Tr.) ("[Q.]

USDOJ-GOOGEX-000342

1   Court data for the past 55 days indicating whether hold recipients toggled history "on" or "off".  (*See*

2   Chen Decl. ¶ 4 (admitting that Google maintains such records).)  It chose not to do that either.

3       Instead of providing a straightforward answer to the Court's question, Google relies on the

4   Declaration of Duy Ho, which purports to show the number of Chats "that were preserved for each

5   employee on legal hold" in Exhibit A.  (Google Br. 1.)  This data is not responsive to the Court's

6   question and is presented in a way that conceals more than it reveals.

7       **First**, Exhibit A does not tell the Court **anything** about how many **legal hold recipients** had

8   ever turned history "on" for any of their Chats.  Chats reflected on the chart would have been

9   preserved whether the hold recipient **or another Chat participant** turned history "on."  (Google Br. 1.)

10      **Second**, as Google admits, each Chat reflected in the Ho Declaration is only "a snapshot of a

11  chat conversation."  (Ho Decl. ¶ 4.)  That means a single Chat that lasted for days or weeks could have

12  been counted multiple times, greatly inflating the numbers.

13      **Third**, there is no indication that Google took steps to avoid double-counting Chats that

14  involved multiple hold recipients (*i.e.*, if those employees were chatting with each other, that Chat

15  would be counted twice—once for each participant).

16      **Fourth**, Google has hidden the identities of the hold recipients, preventing the Court from

17  examining the number of Chats preserved for witnesses who testified that they typically used Google

18  Chat every day (Tr. 80:6-8 (Rosenberg); Lim Tr. 26:9-14) but never once turned on their Chat history

19  (Tr. 103:8-17 (Rosenberg); Lim Tr. 43:12-14).

20      **Finally**, Google does not indicate how many of the preserved Chats were relevant to this case.

21      To the extent the numbers in Google's Exhibit A can be comprehended, the data only reflects

22  that the number of Chats preserved for each individual is **exceedingly low**.  For example, the number

23  of preserved Chats for the 21 "Post Complaint Custodian[s]" ranges from 10 to 739.  (Ho Decl.,

24  Ex. A.)  Those numbers pale in comparison to the number of Threaded Room Chats (where history is

25

26

27  _____

    After receiving those litigation hold notices, do you remember having to do anything to adjust the

28  preservation settings for chats that you send and receive?  . . .  [A] I do not."); Dkt. 389-04 at 30-31
    (Kolotouros Tr.) ("Q. Have you ever turned history on in Google Chat?  A. Not that I can recall.").)

USDOJ-GOOGEX-000343

on) preserved from these same individuals over the same period.  (*See, e.g.*, *id.*, Custodian No. 8 (74 Chats versus 1,825 Threaded Rooms); Custodian No. 18 (644 Chats versus 10,017 Threaded Rooms).)

**B.    Question 2:  Google Admits to Pervasive Chat Destruction That Has Broad, Sweeping Effects in Multiple Cases.**

Google admits that it has not automatically preserved "off the record" Chats for relevant individuals in *any* case filed in the United States in the past five years.[3]  (Google Br. 2.)  Because many of the custodians in this case were also subject to *other* litigation holds in cases with related subject matter, Google has been destroying Chats that may have been relevant to this case for many years.  Plaintiffs can only assume that Google successfully concealed its systematic deletion of Chats in other cases (and in federal, state and foreign regulatory investigations), just as it attempted to do here.[4]

This course of conduct further confirms that Google's destruction of Chats was knowing and intentional.  Google is an extraordinarily sophisticated litigant that knows how to retain data.  Google apparently made a calculated decision that the risk of producing Chats outweighed the risk of getting caught destroying them.  At least so far, its calculation has proved to be correct.  That is yet another reason that a meaningful trial remedy—not the toothless suggestions Google offered—is required.

**C.    Question 3:  Google Admits that Plaintiffs Specifically Asked Google to Preserve Chats in October 2020.**

Google admits that when the parties negotiated an ESI Protocol in October 2020, Plaintiffs informed Google of "their position that chats and instant messages should not be excluded from the categories of ESI that should be preserved."  (Rocca Decl. ¶ 3.d.)  Google accepted this position, as reflected in the ESI Protocol, without alerting Plaintiffs or the Court that Google did not intend to preserve Chats.  (*Id.* ¶ 3.f; *see* Dkt. 72, ¶ 4(a) (ESI Protocol).)  Plaintiffs then raised concerns regarding the preservation of Chats beginning in April 2021, after noticing a dearth of Chats in Google's initial

---

[3] In fact, Google's declarant wrote that "over the course of my *more than 10 years* as a Litigation Paralegal at Google, I have *never* been involved in a case in which Google automatically preserved all chats," and that he "surveyed the team of Google paralegals that handle all U.S. litigation matters at Google" and they were not aware of any case either.  (Johnson Decl. ¶ 9 (emphasis added).)

[4] For example, the Department of Justice, which is litigating an antitrust case involving Google Search in Washington, D.C., ordered a copy of the January 12, 2023 hearing transcript.  (Dkt. 368, *Epic Games, Inc. v. Google, LLC*, Case No. 3:20-cv-05671-JD (Jan. 17, 2023).)

USDOJ-GOOGEX-000344

1  document productions.  As Google admits in response to Question 5, it was not until after *six months*

2  *later*—after months of persistent inquiry by Plaintiffs—that Google was finally forced to disclose that

3  it was continuing to destroy Chats daily throughout the pendency of this litigation.  (Google Br. 3.)

4       **D.**     **Question 4:  Google Did Not Take Appropriate Steps to Preserve Chats.**

5       Google reiterates the claim that it took "appropriate steps to preserve" relevant evidence.

6  (Google Br. 2 (quoting ECF No. 45 at 11).)  That is plainly not true.

7       Google does not dispute numerous facts establishing that it knowingly and intentionally failed

8  to preserve relevant Chats, including:  (1) In October 2020, Plaintiffs asked Google to preserve Chats,

9  and Google agreed (Rocca Decl. ¶ 3.d; Dkt. 72 ¶ 4(a)); (2) Google could "flip a switch and preserve all

10  chats" if it wanted to (Tr. 44:18-45:10 (Lopez)); (3) Google never flipped that switch for any of the

11  hold recipients in this case (Johnson Decl. ¶¶ 4, 9; Tr. 45:14-17 (Lopez)); (4) Google employees knew

12  that off-the-record Chats were not preserved (Tr. 68:11-13 (Lopez); Tr. 47:21-48:17 (Lopez); Lim Tr.

13  38:16-22); (5) Google employees were not sufficiently familiar with the details of the case to decide

14  what should be preserved (Tr. 89:18-20 (Rosenberg); Tr. 121:12-15 (Rope)); and (6) Google never

15  monitored or enforced employees' compliance with the legal hold (Tr. 46:8-17 (Lopez)).  Google

16  provides no explanation for why it concealed the true state of facts for months.

17       Google's pattern of deception and misdirection belies its insistence that it took appropriate

18  steps to preserve relevant evidence.  To the contrary, Google's conduct makes clear that its failure to

19  preserve relevant Chats was intentional and unreasonable.

20       **E.**     **Question 5:  Google Made False and Misleading Statements Regarding Its Chat-Destruction Policy.**

21

22       Google does not provide a straight "yes" or "no" answer to whether it "plainly advise[d]" the

23  Court or Plaintiffs that its approach to Chat preservation would lead to the loss of potentially relevant

24  evidence.  That is not surprising:  A "yes" would be untruthful, and a "no" would warrant sanctions.

25       Google admits that, even though Plaintiffs "inquired about the status of Google's production of

26  chat messages" in an April 22, 2021 letter (Rocca Decl. ¶ 4), Google failed to inform Plaintiffs for *six*

27  *more months*—until October 21, 2021—that it "had not suspended the 24-hour retention policy for

28  'history off' chats" and *was continuing to delete Chats every 24 hours*  (*id.* ¶ 12.c; Google Br. 3).  But

USDOJ-GOOGEX-000345

1    Google fails to provide any justification for the misleading statements it made therein.  Google does

2    not explain its failure to acknowledge that it continued its "usual course of business" practice of

3    destroying Chats **after** these lawsuits were filed.  (Dkt. 428-1 ¶ 17.)  Nor does Google explain its

4    (at-best-incomplete) statement in the same letter "that chats are subject to the litigation hold and that

5    Google has collected and produced relevant chats."  (*Id.*)  Google also does not explain its

6    October 18, 2021 representation that it has "no reason to believe that Google's production of relevant

7    instant messages for all agreed-upon custodians for the agreed-upon time periods is in any way

8    deficient." (*Id.* ¶ 21.)

9          Google also fails to explain the misrepresentations that it made **after** its failure to suspend its

10   24-hour purge policy came to light on October 21, 2021.  For example, Google does not address its

11   false statement in a November 11, 2021 letter that "Google does not have the ability to change default

12   settings for individual custodians with respect to the chat history setting."  (*Id.* ¶ 25.)

13         And finally, Google does not explain or even **acknowledge** the statement it made to the Court

14   in the December 9, 2021 Joint Case Management Statement (Dkt. 159).  Specifically, in response to

15   concerns Plaintiffs raised about Google's failure to preserve relevant Chats, Google represented that it

16   employed "**all available preservation methods** via its legal hold tool, and active management by legal

17   counsel at every step of the process."  (Dkt. 428-1 ¶ 29 (emphasis added).)  That was simply false;

18   Google could have enabled Chat history for its litigation hold recipients, but it chose not to.

19   (Tr. 58:19-21 (Lopez) ("Q. Technologically, Google could change the default to history on for all

20   custodians; right?  A. That's right.").)  Google also represented to the Court that "relevant instant

21   message or chat communications are subject to preservation, and Google in fact took reasonable steps

22   to preserve such messages."  (Dkt. 428-1 ¶ 29.)  This is impossible to square with Google's policy of

23   relying on individual custodians to take affirmative steps to identify and preserve relevant Chats.

24         Google went to great lengths to hide both its decision to destroy Chats and (once that decision

25   came to light) its ability to preserve them.  The only reasonable explanation is that Google understood

26   that it was not complying with its preservation obligations and sought to conceal its misconduct.

27   Google's effort to conceal its destruction of Chats is strong evidence that its systemic spoliation was

28   both knowing and intentional and that a substantial penalty is warranted.

PLAINTIFFS' RESPONSE RE:  MINUTE ORDER QUESTIONS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD, 3:22-cv-02746-JD

5

USDOJ-GOOGEX-000346

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br><br>**DECLARATION OF MICHAEL J. ZAKEN IN SUPPORT OF PLAINTIFFS' RESPONSE TO GOOGLE'S BRIEF IN RESPONSE TO THE COURT'S MINUTE ORDER QUESTIONS REGARDING PRESERVATION OF CHAT MESSAGES**<br><br><br>Date:  January 31, 2023 at 1:30 p.m.<br>Courtroom:  11, 19th Floor<br>Judge:  Hon. James Donato |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

USDOJ-GOOGEX-000347

I, Michael J. Zaken, declare as follows:

1.      I am a Partner at Cravath, Swaine & Moore LLP, counsel to Epic Games, Inc. ("Epic") in the above-captioned actions.  I am admitted to appear before this Court *pro hac vice*.

2.      I have personal, first-hand knowledge of the facts set forth in this Declaration.  If called as a witness, I could and would competently testify to these facts under oath.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of Google's Responses and Objections to Plaintiffs Document Preservation Interrogatories, dated January 14, 2022.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of a Civil Investigative Demand issued by the United States Department of Justice to Alphabet, Inc. dated October 7, 2019.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY4-007020192-206.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-010028199.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-011126651-652.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-006355148-149.

9.      Attached hereto as **Exhibit 7** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-005428116-117.

10.     Attached hereto as **Exhibit 8** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-007213451-458.

11.     Attached hereto as **Exhibit 9** is a true and correct copy of an excerpt from the transcript of the May 12, 2022 deposition of Paul Bankhead in this matter.

12.     Attached hereto as **Exhibit 10** is a true and correct copy of an excerpt from the transcript of the August 31, 2022 deposition of Purnima Kochikar in this matter.

13.     Attached hereto as **Exhibit 11** is a true and correct copy of an excerpt from the transcript of the February 3, 2022 deposition of James Kolotouros in this matter.

USDOJ-GOOGEX-000348

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on January 27, 2023 in New York, NY.

*/s/ Michael J. Zaken*
Michael J. Zaken

USDOJ-GOOGEX-000349

# Exhibit 1

USDOJ-GOOGEX-000350

1    Brian C. Rocca, S.B. #221576                Glenn D. Pomerantz, S.B. #112503
     brian.rocca@morganlewis.com                 glenn.pomerantz@mto.com
2    Sujal J. Shah, S.B. #215230                 Kuruvilla Olasa, S.B. #281509
     sujal.shah@morganlewis.com                  kuruvilla.olasa@mto.com
3    Michelle Park Chiu, S.B. #248421            **MUNGER, TOLLES & OLSON LLP**
     michelle.chiu@morganlewis.com               350 South Grand Avenue, Fiftieth Floor
4    Minna Lo Naranjo, S.B. #259005              Los Angeles, California 90071
     minna.naranjo@morganlewis.com               Telephone: (213) 683-9100
5    Rishi P. Satia, S.B. #301958
     rishi.satia@morganlewis.com                 Kyle W. Mach, S.B. #282090
6    **MORGAN, LEWIS & BOCKIUS LLP**             kyle.mach@mto.com
     One Market, Spear Street Tower              Justin P. Raphael, S.B. #292380
7    San Francisco, CA 94105                     justin.raphael@mto.com
     Telephone: (415) 442-1000                   Emily C. Curran-Huberty, S.B. #293065
8                                                emily.curran-huberty@mto.com
     Richard S. Taffet, pro hac vice             Marianna Y. Mao, S.B. #318070
9    richard.taffet@morganlewis.com              marianna.mao@mto.com
     **MORGAN, LEWIS & BOCKIUS LLP**             **MUNGER, TOLLES & OLSON LLP**
10   101 Park Avenue                             560 Mission Street, Twenty Seventh Floor
     New York, NY 10178                          San Francisco, California 94105
11   Telephone: (212) 309-6000                   Telephone: (415) 512-4000

12   Ian Simmons, pro hac vice                   Jonathan I. Kravis, pro hac vice
     isimmons@omm.com                            jonathan.kravis@mto.com
13   Benjamin G. Bradshaw, S.B. #189925          **MUNGER, TOLLES & OLSON LLP**
     bbradshaw@omm.com                           601 Massachusetts Avenue NW, Suite 500E
14   **O'MELVENY & MYERS LLP**                   Washington, D.C. 20001
     1625 Eye Street, NW                         Telephone: (202) 220-1100
15   Washington, DC 20006
     Telephone: (202) 383-5300                   Daniel M. Petrocelli, S.B. #97802
16                                               dpetrocelli@omm.com
     *Attorneys for Defendants*                  Stephen J. McIntyre, S.B. #274481
17                                               smcintyre@omm.com
                                                 **O'MELVENY & MYERS LLP**
18                                               1999 Avenue of the Stars
                                                 Los Angeles, California 90067
19                                               Telephone: (310) 553-6700

20

21

22

23

24

25

USDOJ-GOOGEX-000351

CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*,<br>Case No. 3:20-cv-05761-JD<br><br>*In re Google Play Developer Antitrust Litigation*,<br>Case No. 3:20-cv-05792-JD<br><br>*State of Utah et al. v. Google LLC et al.*,<br>Case No. 3:21-cv-05227-JD | Case No. 3:21-md-02981-JD<br><br>**DEFENDANTS GOOGLE LLC, GOOGLE IRELAND LIMITED, GOOGLE COMMERCE LTD., GOOGLE ASIA PACIFIC PTE. LTD. AND GOOGLE PAYMENT CORP.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' DOCUMENT PRESERVATION INTERROGATORIES**<br><br>Judge: Hon. James Donato |

**CONFIDENTIAL**

1   to the extent it purports to seek documents protected by the attorney-client privilege, the work

2   product doctrine, or any other applicable privilege or protection.

3   <center>**SPECIFIC RESPONSES AND OBJECTIONS**</center>

4   **INTERROGATORY NO. 1:**

5       Identify when and to whom Google issued a litigation hold notice in connection with this

6   Case, and, for each such recipient of a litigation hold notice, state the categories of information

7   and data the recipient was instructed to preserve and collect, and the specific actions the recipient

8   was instructed to take to that end.

9   **RESPONSE TO INTERROGATORY NO. 1:**

10      Google incorporates by reference all General Objections into this Interrogatory as if

11  stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

12  with respect to the undefined term "in connection with." Plaintiffs have no right to discovery of

13  information that is not relevant to a party's claims or defenses, particularly so when "the

14  discovery sought is collateral to the relevant issues (i.e. discovery on discovery)." *See* Fed. R.

15  Civ. P. 26(b)(1); *Perez v. DirecTV Grp. Holdings, LLC*, No. SA CV 16-01440-JLS (DFMX),

16  2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020); *see also Epic Games, Inc. v. Apple Inc.*, No.

17  20-cv-05640-YGR (TSH), 2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020). Google also

18  objects to this Interrogatory as overly broad and unduly burdensome as it requests Google to

19  identify every person who received a legal hold notice in connection in this Case, and when they

20  received it, regardless of whether that individual is an agreed-upon custodian. Accordingly,

21  Google will limit its Response to the legal hold notices issued to agreed-upon custodians in this

22  Case. Google also objects to this Interrogatory to the extent that it seeks information protected by

23  the attorney-client privilege and/or work product doctrine or is otherwise privileged or protected

24  from discovery. *See, e.g., Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL

25

<center>7</center>

USDOJ-GOOGEX-000353

**CONFIDENTIAL**

1    697663, at *6 (D. Md. Feb. 21, 2017) ("[T]he manner in which [a party] and its attorneys

2    conducted discovery (e.g. who was involved and 'all documents concerning same')—'discovery

3    on discovery'—is not an appropriate topic of discovery and numerous courts have disallowed

4    such discovery.").

5          Subject to and without waiving the foregoing General and Specific Objections, Google

6    responds that it first issued legal hold notices to Custodians for these matters on the dates

7    reflected in Exhibit *A*. With respect to Plaintiffs' request for "the categories of information

8    and data the recipient was instructed to preserve and collect, and the specific actions the recipient

9    was instructed to take to that end," Google is willing to discuss a possible non-waiver agreement

10   with Plaintiffs that would allow all parties to exchange specified legal hold instructions without

11   the risk that another party may claim that such a disclosure waives any privilege or work product

12   protections.

13   **INTERROGATORY NO. 2:**

14         Identify when and to whom Google issued a litigation hold notice or document

15   preservation notice in connection with the Civil Investigative Demands served on Google by the

16   United States beginning on January 1, 2019 (e.g., Civil Investigative Demand Nos. 30092,

17   30120, and 30121); Nebraska on January 17, 2020; and Utah on July 31, 2020, this Case, and,

18   for each such recipient of a litigation hold notice or document preservation notice, state the

19   categories of information and data the recipient was instructed to preserve and collect, and the

20   specific actions the recipient was instructed to take to that end.

21   **RESPONSE TO INTERROGATORY NO. 2:**

22         Google incorporates by reference all General Objections into this Interrogatory as if

23   stated fully herein. Google objects to this Interrogatory as irrelevant to the extent it purports to

24   seek information about investigations that are separate and distinct from the current litigation.

25                                          8

**CONFIDENTIAL**

1  Steps that Google has taken to meet its discovery obligations in *other* matters are irrelevant and

2  thus outside the scope of even potentially discoverable information. Google also objects to this

3  Interrogatory as overbroad, vague, and ambiguous with respect to the undefined term "in

4  connection with." Plaintiffs have no right to discovery of information that is not relevant to a

5  party's claims or defenses, particularly so when "the discovery sought is collateral to the relevant

6  issues (i.e. discovery on discovery)." *See* Fed. R. Civ. P. 26(b)(1); *Perez v. DirecTV Grp.*

7  *Holdings, LLC*, No. SA CV 16-01440-JLS (DFMX), 2020 WL 5875026, at *2 (C.D. Cal. Aug.

8  17, 2020); *see also Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), 2020 WL

9  7779017, at *1 (N.D. Cal. Dec. 31, 2020). Google also objects to this Interrogatory to the extent

10  it purports to seek discovery of information not relevant and disproportionate to the needs of this

11  litigation. Google also objects to this Interrogatory as overly broad and unduly burdensome due

12  to its request to identify every person who received "a legal hold notice or document

13  preservation notice in connection with the Civil Investigative Demands served on Google by the

14  United States beginning on January 1, 2019 (e.g., Civil Investigative Demand Nos. 30092,

15  30120, and 30121); Nebraska on January 17, 2020; and Utah on July 31, 2020, this Case" and

16  when they received it. Google also objects this Interrogatory to the extent that it is duplicative of

17  INTERROGATORY NO. 1, to the extent it is requesting Google "identify when and to whom

18  Google issued a litigation hold notice in connection with … this Case." Google also objects to

19  this Interrogatory to the extent that it seeks information protected by the attorney-client privilege

20  and/or work product doctrine or is otherwise privileged or protected from discovery. *See, e.g.,*

21  *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *6 (D. Md. Feb. 21,

22  2017) ("[T]he manner in which [a party] and its attorneys conducted discovery (e.g. who was

23  involved and 'all documents concerning same')—'discovery on discovery'—is not an

24  appropriate topic of discovery and numerous courts have disallowed such discovery.").

25
<div align="center">9</div>

CONFIDENTIAL

1      Subject to the foregoing General and Specific Objections, Google will not respond to this

2  Interrogatory.

3  **INTERROGATORY NO. 3:**

4      For each Custodian, state whether the Custodian used Google Chat for business purposes

5  during the Custodial Period applicable to the Custodian and Your basis for making that

6  determination.

7  **RESPONSE TO INTERROGATORY NO. 3:**

8      Google incorporates by reference all General Objections into this Interrogatory as if

9  stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

10  with respect to the undefined terms "business purposes" and "applicable." Plaintiffs have no

11  right to discovery of information that is not relevant to a party's claims or defenses. *See* Fed. R.

12  Civ. P. 26(b)(1); *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), 2020 WL

13  7779017, at *1 (N.D. Cal. Dec. 31, 2020); *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF

14  (VKD), 2020 WL 5106707, at *2 (N.D. Cal. Aug. 31, 2020). Thus, Google objects to Plaintiffs'

15  use of the undefined term "business purposes" as not relevant, overly broad, ambiguous, and

16  disproportionate to the needs of this litigation, particularly to the extent that it purports to suggest

17  that Google is obligated preserve all documents created for "business purposes" regardless of its

18  subject matter. The Federal Rules of Civil Procedure do not require that a party preserve such a

19  vast scope of documents. Despite Google's objection to the scope of this request, Google will

20  interpret the term "business purposes" to mean "anything related to work," as Plaintiffs' counsel

21  defined the term in the deposition of Tian Lim (Lim Dep. Tr. 448:6-8), including logistical

22  communications. Google further objects to the use of the term "Custodial Period" as overly

23  broad, unduly burdensome, and ambiguous, particularly to the extent that it purports to require

24  that Google preserve documents for the entire "agreed timeframe for which Google has agreed to

25                                      10

<span style="color:red">CONFIDENTIAL</span>

1   collect, search for, and produce documents for that Custodian." Despite the fact that Google's

2   obligation to preserve began only when it could have reasonably anticipated that documents and

3   files would be the subject of litigation, i.e., no earlier than the date that Plaintiffs filed their

4   complaints, Google will respond to this request based on Plaintiffs' definition of Custodial

5   Period. Google also objects to this Interrogatory to the extent that it seeks information protected

6   by the attorney-client privilege and/or work product doctrine or is otherwise privileged or

7   protected from discovery. *See, e.g.*, *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017

8   WL 697663, at *6 (D. Md. Feb. 21, 2017) ("[T]he manner in which [a party] and its attorneys

9   conducted discovery (e.g. who was involved and 'all documents concerning same')—'discovery

10  on discovery'—is not an appropriate topic of discovery and numerous courts have disallowed

11  such discovery.").

12       Subject to and without waiving the foregoing General and Specific Objections and

13  without conceding that Google had an obligation to preserve all chats used "for business

14  purposes" regardless of subject matter during Plaintiffs' broadly defined "Custodial Period",

15  Google responds that after performing a reasonable and diligent investigation, including, but not

16  limited to, speaking to Custodians, Google determined that all Custodians used Google Chat at

17  least once for business purposes during their Custodial Period, which includes anything related to

18  work and/or logistical communications.

19  **INTERROGATORY NO. 4:**

20       For each Custodian, state the start and end date, if applicable, of each litigation hold

21  applicable to the Custodian during the Custodial Period for that Custodian.

22  **RESPONSE TO INTERROGATORY NO. 4:**

23       Google incorporates by reference all General Objections into this Interrogatory as if

24

25                         11

USDOJ-GOOGEX-000357

**CONFIDENTIAL**

1   stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

2   with respect to the undefined term "applicable." Plaintiffs have no right to discovery of

3   information that is not relevant to a party's claims or defenses, particularly so when "the

4   discovery sought is collateral to the relevant issues (i.e. discovery on discovery)." *See* Fed. R.

5   Civ. P. 26(b)(1); *Perez v. DirecTV Grp. Holdings, LLC*, No. SA CV 16-01440-JLS (DFMX),

6   2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020); *see also Epic Games, Inc. v. Apple Inc.*, No.

7   20-cv-05640-YGR (TSH), 2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020). Google also

8   objects to this Interrogatory to the extent that it seeks information protected by the attorney-client

9   privilege and/or work product doctrine or is otherwise privileged or protected from discovery.

10  *See, e.g.*, *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *6 (D. Md.

11  Feb. 21, 2017) ("[T]he manner in which [a party] and its attorneys conducted discovery (e.g.

12  who was involved and 'all documents concerning same')—'discovery on discovery'—is not an

13  appropriate topic of discovery and numerous courts have disallowed such discovery."). Google

14  also objects to this Interrogatory to the extent that it is duplicative of INTERROGATORY NO. 1

15  and INTERROGATORY NO. 2. Google also objects to this Interrogatory as irrelevant and

16  unduly burdensome to the extent it purports to seek information about investigations or

17  litigations that are separate and distinct from the current litigation. Steps that Google has taken to

18  meet its discovery obligations in *other* matters are irrelevant and thus outside the scope of even

19  potentially discoverable information. Accordingly, Google will only provide the start and end

20  date for each legal hold received by Custodians that are related to this Case.

21       Subject to and without waiving the foregoing General and Specific Objections, Google

22  responds that the start and end dates for each legal hold Custodians received in this litigation are

23  set forth in Exhibit <u>*B*</u>. Google will not provide information about legal holds in other litigation

24  matters as they are irrelevant.

25                                    12

1    **INTERROGATORY NO. 5:**

2       For each Custodian, state whether during the time periods for the Custodian identified in

3 response to Interrogatory No. 4 the Custodian preserved any Google Chats by enabling a history

4 function or turning off an auto-delete function.

5    **RESPONSE TO INTERROGATORY NO. 5:**

6       Google incorporates by reference all General Objections into this Interrogatory as if

7 stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

8 with respect to the undefined terms "history function" and "auto-delete function." Plaintiffs have

9 no right to discovery of information that is not relevant to a party's claims or defenses. *See* Fed.

10 R. Civ. P. 26(b)(1); *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), 2020 WL

11 7779017, at *1 (N.D. Cal. Dec. 31, 2020); *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF

12 (VKD), 2020 WL 5106707, at *2 (N.D. Cal. Aug. 31, 2020). Google further objects to this

13 Interrogatory as ambiguous as to time; to the extent the Interrogatory references the term

14 "Custodial Period" from Interrogatory No. 4, Google objects to that term as overly broad, unduly

15 burdensome, and ambiguous, particularly to the extent that it purports to require that Google

16 preserve documents for the entire "agreed timeframe for which Google has agreed to collect,

17 search for, and produce documents for that Custodian." Despite the fact that Google's obligation

18 to preserve began only when it could have reasonably anticipated that documents and files would

19 be the subject of litigation, i.e., no earlier than the date that Plaintiffs filed their complaints,

20 Google will respond to this request based on Plaintiffs' definition of Custodial Period. Google

21 also objects to this Interrogatory as overbroad, vague, and ambiguous with respect to the term

22 "any Google Chats" to the extent it seeks discovery of information not relevant to the subject

23 matter of the litigation and disproportionate to the needs of this litigation, particularly to the

24 extent that it purports to suggest that Google is obligated to preserve "any Google Chat"

25 <div align="center">13</div>

<span style="color:red">CONFIDENTIAL</span>

1   regardless of whether or not it is relevant to this litigation. The Federal Rules of Civil Procedure

2   do not require that a party preserve such a vast scope of documents.

3        Subject to and without waiving the foregoing General and Specific Objections and

4   without conceding that Google had an obligation to preserve "any Google Chat" regardless of

5   subject matter during Plaintiffs' broadly defined "Custodial Period", Google responds that

6   Google has no way to systematically track which individual in a Chat turned "history on." A list

7   of Custodians who recall that they have preserved Google Chats by turning "history on" during

8   their Custodial Period is set forth in <u>Exhibit *C*</u>. Google further responds, however, that Google

9   had collected chats from each and every agreed-upon custodian through its standard ESI

10  preservation and collection method, totaling over 127K chats, and that a participant in those

11  chats must have taken the step of turning "history on." In addition, Chats that occur in what are

12  known as Threaded Rooms / Spaces always have "history on," and threads the custodian

13  participated in are preserved indefinitely while a custodian is subject to a legal hold. Chats can

14  also be preserved by other means, such as by copying and pasting the text of the Chat into

15  another document and/or by saving screenshots. Google reiterates that it is willing to discuss a

16  possible non-waiver agreement with Plaintiffs that would allow all parties to exchange specified

17  legal hold instructions without the risk that another party may claim that such a disclosure

18  waives any privilege or work product protections.

19  **INTERROGATORY NO. 6:**

20       For each Custodian, state (a) whether the Custodian preserved any Google Chats in any

21  manner during the Custodial Period for that Custodian, (b) whether the Custodian provided such

22  Google Chats to counsel, (c) whether the Custodian provided such Google Chats to in-house

23  counsel or to outside counsel, and (d) the Bates number of any produced Google Chat files.

24  **RESPONSE TO INTERROGATORY NO. 6:**

25                                                      14

CONFIDENTIAL

1    Google incorporates by reference all General Objections into this Interrogatory as if

2    stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

3    with respect to the term "any Google Chat" to the extent it seeks discovery of information not

4    relevant to the subject matter of the litigation and disproportionate to the needs of this litigation,

5    particularly to the extent that it purports to suggest that Google is obligated to preserve "any

6    Google Chat" regardless of whether it is relevant to this litigation. The Federal Rules of Civil

7    Procedure do not require that a party preserve such a vast scope of documents. Plaintiffs have no

8    right to discovery of information that is not relevant to a party's claims or defenses - particularly

9    so when "the discovery sought is collateral to the relevant issues (i.e. discovery on discovery)."

10   *See* Fed. R. Civ. P. 26(b)(1); *Perez v. DirecTV Grp. Holdings, LLC*, SA CV 16-01440-JLS

11   (DFMX), 2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020); *see also Epic Games, Inc. v.*

12   *Apple Inc.*, No. 20-cv-05640-YGR (TSH),2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020).

13   Google further objects to the use of the term "Custodial Period" as overly broad, unduly

14   burdensome, and ambiguous, particularly to the extent that it purports to require that Google

15   preserve documents for the entire "agreed timeframe for which Google has agreed to collect,

16   search for, and produce documents for that Custodian." Despite the fact that Google's obligation

17   to preserve began only when it could have reasonably anticipated that documents and files would

18   be the subject of litigation, i.e., no earlier than the date that Plaintiffs filed their complaints,

19   Google will respond to this request based on Plaintiffs' definition of Custodial Period. Google

20   also objects to this Interrogatory as overbroad, vague, and ambiguous with respect to the

21   undefined term "any manner." Google also objects to this Interrogatory to the extent that it seeks

22   information protected by the attorney-client privilege and/or work product doctrine or is

23   otherwise privileged or protected from discovery. *See, e.g., Fish v. Air & Liquid Sys. Corp.*, No.

24   CV GLR-16-496, 2017 WL 697663, at *6 (D. Md. Feb. 21, 2017) ("[T]he manner in which [a

25

USDOJ-GOOGEX-000361

CONFIDENTIAL

1  party] and its attorneys conducted discovery (e.g. who was involved and 'all documents

2  concerning same')—'discovery on discovery'—is not an appropriate topic of discovery and

3  numerous courts have disallowed such discovery.").

4         Subject to and without waiving the foregoing General and Specific Objections and

5  without conceding that Google had an obligation to preserve "any Google Chat" regardless of

6  subject matter during Plaintiffs' broadly defined "Custodial Period", Google responds that, as

7  described in response to Interrogatory 5, Google has no way to systematically track which

8  Custodians preserved Chats by turning "history on" or in any other manner, such as by copying

9  and pasting the text of the Chat into another document and/or by saving screenshots. However,

10 Google Chats may be and are preserved by such methods, and Google has, in fact, collected

11 chats from each and every agreed-upon custodian totaling over 127K chats, through its standard

12 ESI preservation and collection methods. With that in mind, Google responds that the list of

13 Custodians who recall that they have preserved at least one Google Chat in any manner,

14 including by turning "history on", during their Custodial Period is set forth in <u>Exhibit *D*</u>.[1]

15 Google further responds that Custodians did not, in most instances, affirmatively "provide" such

16 Google Chats to counsel–either in-house or outside counsel–but such Google Chats were

17 preserved and collected through standard ESI preservation and collection methods. The Bates

18 numbers of produced Google Chats that Google has been able to identify as responsive to

19 Plaintiffs' previously served requests for production are set forth in <u>Exhibit *E*</u>

20 **INTERROGATORY NO. 7:**

21

22

23 [1] For the avoidance of doubt, Google further responds that, as described in response to
    Interrogatory 5, Chats that occur in what are known as Threaded Rooms / Spaces always have
    "history on," and threads in Threaded Rooms in which the custodian participated are preserved

24 indefinitely while a custodian is subject to a legal hold; the preservation of such Chats are not
    captured in Google's response to this Interrogatory.

25                                                        16

USDOJ-GOOGEX-000362

CONFIDENTIAL

1       For each Custodian, state whether any of the Custodian's Google Chat files were

2  destroyed or otherwise deleted (a) on or after August 13, 2020; or (b) while the Custodian was

3  subject to a litigation hold (or any other form of document preservation hold) during the

4  Custodial Period for that Custodian; and if the answer to either (a) or (b) is "yes", whether all the

5  Custodian's Google Chat files were destroyed or otherwise deleted.

6  **RESPONSE TO INTERROGATORY NO. 7:**

7       Google incorporates by reference all General Objections into this Interrogatory as if

8  stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

9  with respect to the term "any of the Custodian's Google Chat files" to the extent it seeks

10  discovery of information not relevant to the subject matter of the litigation and disproportionate

11  to the needs of this litigation. Plaintiffs have no right to discovery of information that is not

12  relevant to a party's claims or defenses, particularly so when "the discovery sought is collateral

13  to the relevant issues (i.e. discovery on discovery)." *See* Fed. R. Civ. P. 26(b)(1); *Perez v.*

14  *DirecTV Grp. Holdings, LLC*, No. SA CV 16-01440-JLS (DFMX), 2020 WL 5875026, at *2

15  (C.D. Cal. Aug. 17, 2020); *see also Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR

16  (TSH), 2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020). Google further objects to the used of

17  the term "Custodial Period" as overly broad, unduly burdensome, and ambiguous, particularly to

18  the extent that it purports to require that Google preserve documents for the entire "agreed

19  timeframe for which Google has agreed to collect, search for, and produce documents for that

20  Custodian." Despite the fact that Google's obligation to preserve began only when it could have

21  reasonably anticipated that documents and files would be the subject of litigation, i.e., no earlier

22  than the date that Plaintiffs filed their complaints, Google will respond to this request based on

23  Plaintiffs' definition of Custodial Period. Google also objects to this Interrogatory as irrelevant to

24  the extent it purports to seek information related to preservation obligations for investigations or

25

**CONFIDENTIAL**

1  litigations that are separate and distinct from the preservation obligations of the current litigation.

2  Google also objects to this Interrogatory as overbroad, vague, and ambiguous with respect to the

3  undefined terms "destroyed" and "otherwise deleted." Google also objects to this Interrogatory

4  to the extent that it seeks information protected by the attorney-client privilege and/or work

5  product doctrine or is otherwise privileged or protected from discovery. *See, e.g.*, *Fish v. Air &*

6  *Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL 697663, at *6 (D. Md. Feb. 21, 2017) ("[T]he

7  manner in which [a party] and its attorneys conducted discovery (e.g. who was involved and 'all

8  documents concerning same')—'discovery on discovery'—is not an appropriate topic of

9  discovery and numerous courts have disallowed such discovery.").

10        Subject to and without waiving the foregoing General and Specific Objections and

11  without conceding that Google had an obligation to preserve "any" Google Chat files regardless

12  of subject matter during Plaintiffs' broadly defined "Custodial Period", Google responds as

13  follows: Google's default settings for Google Chats is set for its entire organization as "history

14  off." When a chat is set to "history off" messages are no longer available to the user after 24

15  hours, and Google has no available method or tool to hold, retain, or search for those messages,

16  even during the 24-hour period. Thus, the Google Chats that are available are (a) one-on-one or

17  group chat messages that had "history on," or (b) Threaded Rooms / Spaces, which always have

18  "history on." For purposes of preservation for custodians subject to a legal hold, the "history on"

19  one-on-one or group chats and the threads in which a custodian participated in Threaded Rooms /

20  Spaces are preserved indefinitely while the custodian is subject to a legal hold. To be clear,

21  however, Chats may also be available if an individual took another action to preserve them, such

22  as copying and pasting Chats into a document, or forwarding the Google Chat to Gmail.

23  Reiterating Google's objection as to relevance and overbreadth, Google understands that

24  Custodians did not turn "history on" for every single chat on any subject on or after August 13,

25

18

CONFIDENTIAL

1   2020. Google further responds that it is willing to discuss a possible non-waiver agreement with

2   Plaintiffs that would allow all parties to exchange specified legal hold instructions without the

3   risk that another party may claim that such a disclosure waives any privilege or work product

4   protections.

5   **INTERROGATORY NO. 8:**

6        Identify all Chat Rooms in which at least one Custodian sent or received business-related

7   chats during the applicable Custodial Period and for each identified Chat Room, state whether

8   any contents of the Chat Room have been destroyed or otherwise deleted while the relevant

9   Custodian was subject to a litigation hold during the Custodial Period.

10   **RESPONSE TO INTERROGATORY NO. 8:**

11        Google incorporates by reference all General Objections into this Interrogatory as if

12   stated fully herein. Plaintiffs have no right to discovery of information that is not relevant to a

13   party's claims or defenses, particularly so when "the discovery sought is collateral to the relevant

14   issues (i.e. discovery on discovery)." *See* Fed. R. Civ. P. 26(b)(1); *Perez v. DirecTV Grp.*

15   *Holdings, LLC*, No. SA CV 16-01440-JLS (DFMX), 2020 WL 5875026, at *2 (C.D. Cal. Aug.

16   17, 2020); *see also Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), 2020 WL

17   7779017, at *1 (N.D. Cal. Dec. 31, 2020). Google objects to Plaintiffs' request for "all Chat

18   Rooms and "business-related chats" as not relevant, overly broad, ambiguous, and

19   disproportionate to the needs of this litigation, particularly to the extent that it purports to suggest

20   that Google is obligated to preserve all such chats regardless of their subject matter. The Federal

21   Rules of Civil Procedure do not require that a party preserve such a vast scope of documents.

22   Despite Google's objection to the scope of this request, Google will interpret the term "business-

23   related" to mean "anything related to work," as Plaintiffs' counsel defined the functionally

24   identical term "business purposes" in the deposition of Tian Lim (Lim Dep. Tr. 448:6-8),

25

19

CONFIDENTIAL

1  including logistical communications. Google further objects to the used of the term "Custodial

2  Period" as overly broad, unduly burdensome, and ambiguous, particularly to the extent that it

3  purports to require that Google preserve documents for the entire "agreed timeframe for which

4  Google has agreed to collect, search for, and produce documents for that Custodian." Despite the

5  fact that Google's obligation to preserve began only when it could have reasonably anticipated

6  that documents and files would be the subject of litigation, i.e., no earlier than the date that

7  Plaintiffs filed their complaints, Google will respond to this request based on Plaintiffs'

8  definition of Custodial Period. Google also objects to this Interrogatory as overbroad, vague, and

9  ambiguous with respect to the undefined terms "destroyed" and "otherwise deleted." Google also

10  objects to this Interrogatory to the extent that it seeks information protected by the attorney-client

11  privilege and/or work product doctrine or is otherwise privileged or protected from discovery.

12  Finally, Google objects to this Interrogatory as overbroad, unduly burdensome, and

13  disproportionate to the needs of this Case to the extent it asks Google to "[i]dentify all Chat

14  Rooms in which at least one Custodian sent or received business-related chats during the

15  applicable Custodial Period," which response would require Google to undertake a burdensome

16  manual review of individual Chat Rooms for chats that may be irrelevant to the subject matter of

17  the litigations and without the benefit of agreed-upon search terms.

18      Subject to and without waiving the foregoing General and Specific Objections and

19  without conceding that Google had an obligation to preserve all "business-related chats"

20  regardless of subject matter during Plaintiffs' broadly defined "Custodial Period," Google

21  responds that Google has taken steps to preserve all threads in Threaded Rooms / Spaces of

22  which a Custodian participated and are being preserved indefinitely. Google is collecting all

23  threads within Threaded Rooms / Spaces that an agreed-upon Custodian participated in, will run

24

25        20

CONFIDENTIAL

1  the agreed-upon search terms on those collected Threaded Rooms / Spaces, and will produce

2  non-privileged, responsive chats for each custodian's Custodial Period.

3  **INTERROGATORY NO. 9:**

4     State whether Google has any Data Source within its possession, custody or control that

5  may provide a mechanism to recover or access destroyed or otherwise deleted Google Chat files

6  and Chat Room contents.

7  **RESPONSE TO INTERROGATORY NO. 9:**

8     Google incorporates by reference all General Objections into this Interrogatory as if

9  stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

10  with respect to the terms "any Data Source," "Google Chat files," and "Chat Room contents."

11  Google also objects to this Interrogatory as overbroad, vague, and ambiguous with respect to the

12  undefined terms "destroyed" and "otherwise deleted."

13     Subject to and without waiving the foregoing General and Specific Objections, Google

14  responds as follows: Google's legal hold implementation tool, which is available to all Google

15  Workspace customers, preserves indefinitely while a custodian is subject to a hold all Google

16  Chats where history is on and threads in Threaded Rooms / Spaces in which the custodian

17  participated. Google has used this tool to collect and review chats for responsiveness for this

18  litigation. For Chats where history is off, Google does not have a Data Source within its

19  possession, custody or control that may provide a mechanism to recover or access destroyed or

20  otherwise deleted Google Chat files and Chat Room contents.

21  **INTERROGATORY NO. 10:**

22     State Google's Text Message retention policy and any other related policies You had in

23  place during the date ranges identified in response to Interrogatory No. 4.

24  **RESPONSE TO INTERROGATORY NO. 10:**

25                                          21

USDOJ-GOOGEX-000367

CONFIDENTIAL

1      Google incorporates by reference all General Objections into this Interrogatory as if

2   stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

3   with respect to the terms "Text Message retention policy" and "any other related policies."

4   Google also objects to this Interrogatory to the extent that it seeks information protected by the

5   attorney-client privilege and/or work product doctrine or is otherwise privileged or protected

6   from discovery. *See, e.g.*, *Fish v. Air & Liquid Sys. Corp.*, No. CV GLR-16-496, 2017 WL

7   697663, at *6 (D. Md. Feb. 21, 2017) ("[T]he manner in which [a party] and its attorneys

8   conducted discovery (e.g. who was involved and 'all documents concerning same')—'discovery

9   on discovery'—is not an appropriate topic of discovery and numerous courts have disallowed

10   such discovery.").

11      Subject to and without waiving the foregoing General and Specific Objections, Google

12   responds that Google does not have a specific Text Message retention policy. Google is also

13   willing to discuss a possible non-waiver agreement with Plaintiffs that would allow all parties to

14   exchange specified legal hold instructions without the risk that another party may claim that such

15   a disclosure waives any privilege or work product protections.

16   **INTERROGATORY NO. 11:**

17      Identify all Custodians who used text messages for business purposes during the

18   Custodial Period for each such Custodian.

19   **RESPONSE TO INTERROGATORY NO. 11:**

20      Google incorporates by reference all General Objections into this Interrogatory as if

21   stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

22   with respect to the terms "business purposes" and "text messages." Plaintiffs have no right to

23   discovery of information that is not relevant to a party's claims or defenses. *See* Fed. R. Civ. P.

24   26(b)(1); *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), 2020 WL 7779017, at

25                                                    22

CONFIDENTIAL

1   *1 (N.D. Cal. Dec. 31, 2020); *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF (VKD),

2   2020 WL 5106707, at *2 (N.D. Cal. Aug. 31, 2020). Thus, Google objects to Plaintiffs' use of

3   the undefined term "business purposes" as not relevant, overly broad, ambiguous, and

4   disproportionate to the needs of this litigation, particularly to the extent that it purports to suggest

5   that Google is obligated to preserve all text messages used for "business purposes" regardless of

6   its subject matter. The Federal Rules of Civil Procedure do not require that a party preserve such

7   a vast scope of documents. Despite Google's objection to the scope of this request, Google will

8   interpret the term "business purposes" to mean "anything related to work," as Plaintiffs' counsel

9   defined the term in the deposition of Tian Lim (Lim Dep. Tr. 448:6-8), including logistical

10  communications. Google further objects to the used of the term "Custodial Period" as overly

11  broad, unduly burdensome, and ambiguous, particularly to the extent that it purports to require

12  that Google preserve documents for the entire "agreed timeframe for which Google has agreed to

13  collect, search for, and produce documents for that Custodian." Despite the fact that Google's

14  obligation to preserve began only when it could have reasonably anticipated that documents and

15  files would be the subject of litigation, i.e., no earlier than the date that Plaintiffs filed their

16  complaints, Google will respond to this request based on Plaintiffs' definition of Custodial

17  Period.

18       Subject to and without waiving the foregoing General and Specific Objections and

19  without conceding that Google had an obligation to preserve all text messages used "for business

20  purposes" regardless of subject matter during Plaintiffs' broadly defined "Custodial Period",

21  Google responds that Custodians who recall that they may have used text messages for business

22  purposes, meaning anything related to work and/or logistical text messages, during their

23  Custodial Period are identified in Exhibit F.

24  **INTERROGATORY NO. 12:**

25                                    23

**CONFIDENTIAL**

1    For each Custodian, explain how You determined whether or not the Custodian used Text

2   Messages for business purposes during the Custodial Period for each such Custodian.

3   **RESPONSE TO INTERROGATORY NO. 12:**

4    Google incorporates by reference all General Objections into this Interrogatory as if

5   stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

6   with respect to the terms "business purposes" and "text messages." Plaintiffs have no right to

7   discovery of information that is not relevant to a party's claims or defenses, particularly so when

8   "the discovery sought is collateral to the relevant issues (i.e. discovery on discovery)." *See* Fed.

9   R. Civ. P. 26(b)(1); *Perez v. DirecTV Grp. Holdings, LLC*, No. SA CV 16-01440-JLS (DFMX),

10   2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020); *see also Epic Games, Inc. v. Apple Inc.*, No.

11   20-cv-05640-YGR (TSH), 2020 WL 7779017, at *1 (N.D. Cal. Dec. 31, 2020). Thus, Google

12   objects to Plaintiffs' use of the undefined term "business purposes" as not relevant, overly broad,

13   ambiguous, and disproportionate to the needs of this litigation, particularly to the extent that it

14   purports to suggest that Google is obligated to preserve all text messages used for "business

15   purposes" regardless of its subject matter. The Federal Rules of Civil Procedure do not require

16   that a party preserve such a vast scope of documents. Despite Google's objection to the scope of

17   this request, Google will interpret the term "business purposes" to mean "anything related to

18   work," as Plaintiffs' counsel defined the term in the deposition of Tian Lim (Lim Dep. Tr. 448:6-

19   8), including logistical communications. Google further objects to the used of the term

20   "Custodial Period" as overly broad, unduly burdensome, and ambiguous, particularly to the

21   extent that it purports to require that Google preserve documents for the entire "agreed timeframe

22   for which Google has agreed to collect, search for, and produce documents for that Custodian."

23   Despite the fact that Google's obligation to preserve began only when it could have reasonably

24   anticipated that documents and files would be the subject of litigation, i.e., no earlier than the

25                                          24

CONFIDENTIAL

1   date that Plaintiffs filed their complaints, Google will respond to this request based on Plaintiffs'

2   definition of Custodial Period. Google also objects to this Interrogatory to the extent that it seeks

3   information protected by the attorney-client privilege and/or work product doctrine or is

4   otherwise privileged or protected from discovery. *See, e.g.*, *Fish v. Air & Liquid Sys. Corp.*, No.

5   CV GLR-16-496, 2017 WL 697663, at *6 (D. Md. Feb. 21, 2017) ("[T]he manner in which [a

6   party] and its attorneys conducted discovery (e.g. who was involved and 'all documents

7   concerning same')—'discovery on discovery'—is not an appropriate topic of discovery and

8   numerous courts have disallowed such discovery.").

9          Subject to and without waiving the foregoing General and Specific Objections and

10   without conceding that Google had an obligation to preserve all text messages used "for business

11   purposes" regardless of subject matter during Plaintiffs' broadly defined "Custodial Period",

12   Google responds that it determined whether or not Custodians may have used text messages for

13   business purposes, meaning anything related to work and/or logistical text messages, during their

14   Custodial Period through a reasonable and diligent investigation, including, but not limited to,

15   custodial interviews.

16   **INTERROGATORY NO. 13:**

17          State whether Google has any Data Source within its possession, custody or control that

18   may provide a mechanism to access any Text Messages for the Custodians identified in response

19   to Interrogatory No. 11, or to recover any such Text Messages that have been destroyed or

20   otherwise deleted.

21   **RESPONSE TO INTERROGATORY NO. 13:**

22          Google incorporates by reference all General Objections into this Interrogatory as if

23   stated fully herein. Google also objects to this Interrogatory as overbroad, vague, and ambiguous

24   with respect to the terms "any Data Source" and "any Text Messages." Plaintiffs have no right to

25                                          25

CONFIDENTIAL

1  discovery of information that is not relevant to a party's claims or defenses. *See* Fed. R. Civ. P.

2  26(b)(1); *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), 2020 WL 7779017, at

3  *1 (N.D. Cal. Dec. 31, 2020); *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF (VKD),

4  2020 WL 5106707, at *2 (N.D. Cal. Aug. 31, 2020). Google also objects to this Interrogatory as

5  not relevant, disproportionate to the needs of this litigation, and overly burdensome to the extent

6  it purports to seek discovery of information from Data Sources that are merely duplicative of

7  Text Messages already collected or available through less burdensome means. Accordingly,

8  Google will limit its Response to Data Sources within Google's possession, custody or control

9  that are not duplicative of Text Messages already collected or available through less burdensome

10  means.

11       Subject to and without waiving the foregoing General and Specific Objections, after a

12  reasonable and diligent investigation, Google responds that Google does not have any back-up

13  Data Source within its possession, custody, or control that would provide a mechanism to access

14  or recover any text messages identified in response to Interrogatory No. 11. However, Google is

15  taking reasonable efforts to collect and produce text messages that are relevant to the issues in

16  this Case and the lack of a back-up Data Source does not imply that any relevant text messages

17  were improperly destroyed or otherwise deleted.

18

19  Dated: January 14, 2021          **MORGAN, LEWIS & BOCKIUS LLP**
                                      Brian C. Rocca
20                                    Richard S. Taffet
                                      Sujal J. Shah
21                                    Michelle Park Chiu
                                      Minna Lo Naranjo
22                                    Rishi P. Satia

23                                    Respectfully submitted,

24                                    By:    */s/ Brian Rocca*

25                                                26

1        Brian C. Rocca

2

3    **O'MELVENY & MYERS LLP**
     Ian Simmons
4    Daniel M. Petrocelli
     Benjamin G. Bradshaw
5    Stephen J. McIntyre

6    Respectfully submitted,

7    By:    /s/ *Ian Simmons*
8           Ian Simmons

     **MUNGER, TOLLES & OLSON LLP**
9    Glenn D. Pomerantz
     Kuruvilla Olasa
10   Kyle W. Mach
     Justin P. Raphael
11   Emily C. Curran-Huberty
     Jonathan I. Kravis
12   Marianna Y. Mao

13   By:    /s/ *Glenn Pomerantz*
            Glenn Pomerantz
14

15

16

17

18

19

20

21

22

23

24

25               27

USDOJ-GOOGEX-000373

CONFIDENTIAL

# EXHIBIT A

CONFIDENTIAL

| Custodian | Date of first litigation hold notice |
|---|---|
| Paul Bankhead | 2020-09-11 |
| Patrick Brady | 2020-10-21 |
| Eric Chu | 2020-09-11 |
| Christian Cramer | 2020-10-21 |
| Edward Cunningham | 2020-10-08 |
| Paul Feng | 2020-09-11 |
| Suzanne Frey | 2020-09-22 |
| Paul Gennai | 2020-09-11 |
| Kobi Glick | 2020-10-28 |
| Jon Gold | 2021-04-20 |
| Ben Goodger | 2021-08-11 |
| Adam Gutterman | 2020-09-11 |
| Don Harrison | 2020-09-11 |
| Greg Hartrell | 2020-11-09 |
| Sagar Kamdar | 2020-09-11 |
| David Kleidermacher | 2020-09-11 |
| Purnima Kochikar | 2020-09-11 |
| Lawrence Koh | 2020-09-11 |
| Jim Kolotouros | 2020-09-11 |
| Chris Li | 2020-09-11 |
| Tian Lim | 2020-09-11 |
| Hiroshi Lockheimer | 2020-09-11 |
| Mrinalini Loew | 2020-09-11 |
| Michael Marchak | 2020-09-11 |
| Justin Mattson | 2021-09-20 |
| Larry Page | N/A - departed Google prior to complaint filing |
| Sundar Pichai | 2020-11-09 |
| Ashish Pimplapure | 2020-10-28 |
| Ruth Porat | 2021-06-15 |
| Sebastian Porst | 2020-09-11 |
| Jamie Rosenberg | 2020-09-11 |
| Andy Rubin | N/A - departed Google prior to complaint filing |
| Cliff Samaniego | 2020-09-11 |
| Sameer Samat | 2020-09-11 |
| Eric Schmidt | N/A - departed Google prior to complaint filing |
| Hal Varian | 2021-06-15 |
| Kevin Wang | 2020-09-22 |

CONFIDENTIAL

# EXHIBIT B

USDOJ-GOOGEX-000376

CONFIDENTIAL

| Custodian | Date of Initial Legal Hold Notice Related to *Epic Games, Inc. v. Google, In Re: Consumer Google Play Consumer Antitrust Litigation*, and *In Re: Google Play Developer Antitrust Litigation* | Date of Updated Legal Hold Notice Related to *Epic Games, Inc. v. Google, In Re: Consumer Google Play Consumer Antitrust Litigation*, and *In Re: Google Play Developer Antitrust Litigation* | Date of Initial Legal Hold Notice Related to *State of Utah, et al. v. Google* | Date of Updated Legal Hold Notice Related to *Epic Games, Inc. v. Google, In Re: Consumer Google Play Consumer Antitrust Litigation*, and *In Re: Google Play Developer Antitrust Litigation* | End Dates for All Legal Hold Notices |
|---|---|---|---|---|---|
| Paul Bankhead | 2020-09-11 | 2021-03-23 | 2021-07-29 | N/A - departed | Ongoing |
| Patrick Brady | 2020-10-21 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Eric Chu | 2020-09-11 | 2021-03-23 | 2021-07-29 | N/A - departed | Ongoing |
| Christian Cramer | 2020-10-21 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Edward Cunningham | 2020-10-08 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Paul Feng | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Suzanne Frey | 2020-09-22 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Paul Gennai | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Kobi Glick | 2020-10-28 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Jon Gold | 2021-04-20 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Ben Goodger | N/A - not yet identified | 2021-08-11 | 2021-08-12 | 2022-01-12 | Ongoing |
| Adam Gutterman | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Don Harrison | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Greg Hartrell | 2020-11-09 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Sagar Kamdar | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| David Kleidermacher | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Purnima Kochikar | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Lawrence Koh | 2020-09-11 | 2021-03-23 | N/A - departed | N/A - departed | Ongoing |
| Jim Kolotouros | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Chris Li | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Tian Lim | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Hiroshi Lockheimer | 2020-09-11 | 2021-03-23 | 2021-08-17 | 2022-01-12 | Ongoing |
| Mrinalini Loew | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Michael Marchak | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Justin Mattson | N/A - not yet identified | 2021-09-20 | 2021-09-20 | 2022-01-12 | Ongoing |
| Larry Page | N/A - departed | | | | |
| Sundar Pichai | 2020-11-09 | 2021-03-23 | 2022-01-12 | 2022-01-12 | Ongoing |
| Ashish Pimplapure | 2020-10-28 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Ruth Porat | N/A - not yet identified | 2021-06-15 | 2021-08-17 | 2022-01-12 | Ongoing |
| Sebastian Porst | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Jamie Rosenberg | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Andy Rubin | N/A - departed | | | | |
| Cliff Samaniego | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Sameer Samat | 2020-09-11 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |
| Eric Schmidt | N/A - departed | | | | |
| Hal Varian | N/A - not yet identified | 2021-06-15 | 2021-07-29 | 2022-01-12 | Ongoing |
| Kevin Wang | 2020-09-22 | 2021-03-23 | 2021-07-29 | 2022-01-12 | Ongoing |

USDOJ-GOOGEX-000377

CONFIDENTIAL

# EXHIBIT C

USDOJ-GOOGEX-000378

CONFIDENTIAL

| Custodian |
|-----------|
| Patrick Brady |
| Edward Cunningham |
| Paul Gennai |
| Kobi Glick |
| Jon Gold |
| Adam Gutterman |
| Greg Hartrell |
| David Kleidermacher |
| Purnima Kochikar |
| Mrinalini Loew |
| Ashish Pimplapure |

CONFIDENTIAL

# EXHIBIT D

USDOJ-GOOGEX-000380

CONFIDENTIAL

| Custodian |
| --- |
| Patrick Brady |
| Edward Cunningham |
| Paul Feng |
| Suzanne Frey |
| Paul Gennai |
| Kobi Glick |
| Jon Gold |
| Adam Gutterman |
| Greg Hartrell |
| Sagar Kamdar |
| David Kleidermacher |
| Purnima Kochikar |
| Lawrence Koh |
| Jim Kolotouros |
| Chris Li |
| Tian Lim |
| Mrinalini Loew |
| Ashish Pimplapure |
| Jamie Rosenberg |
| Cliff Samaniego |
| Sameer Samat |

CONFIDENTIAL

# EXHIBIT F

USDOJ-GOOGEX-000382

CONFIDENTIAL

| Custodian |
| --- |
| Adam Gutterman |
| Don Harrison |
| David Kleidermacher |
| Purnima Kochikar |
| Chris Li |
| Hiroshi Lockheimer |
| Justin Mattson |
| Sundar Pichai |
| Ashish Pimplapure |
| Jamie Rosenberg |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **VERIFICATION**

I, Andre Golueke, am a Senior Legal Operations Manager at Google LLC ("Google"). On behalf of Google, I have read the foregoing interrogatories and responses, and I verify that the responses are true according to the best of my knowledge, information, and belief based on a reasonable inquiry. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of January, 2022, in Orinda, California.

_Andre Golueke_
Andre Golueke

USDOJ-GOOGEX-000384

## PROOF OF SERVICE BY ELECTRONIC MAIL

I am a citizen of the United States and employed in San Francisco County, California. I am

over the age of eighteen years and not a party to the within-entitled action. My business

address is 560 Mission Street, 27th Floor San Francisco, California 94105.

On January 14, 2022, I served a copy of the within documents:

**DEFENDANTS GOOGLE LLC, GOOGLE IRELAND LIMITED, GOOGLE**

**COMMERCE LTD., GOOGLE ASIA PACIFIC PTE. LTD. AND GOOGLE**

**PAYMENT CORP.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'**

**DOCUMENT PRESERVATION INTERROGATORIES**

by transmitting via electronic mail the document(s) listed above to each of the person(s) set forth

below.

Christine A. Varney (*pro hac vice*)
Katherine B. Forrest (*pro hac vice*)
Gary A. Bornstein (*pro hac vice*)
Yonatan Even (*pro hac vice*)
Lauren A. Moskowitz (*pro hac vice*)
M. Brent Byars (*pro hac vice*)
Eric Zepp (*pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
epic-mobileapps@cravath.com
cvarney@cravath.com
kforrest@cravath.com
gbornstein@cravath.com
yeven@cravath.com
lmoskowitz@cravath.com
mbyars@cravath.com
ezepp@cravath.com

Paul J. Riehle (SBN 115199)
**FAGRE DRINKER BIDDLE &**
**REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
paul.riehle@faegredrinker.com

*Counsel for Plaintiff in Epic Games, Inc. v.*
*Google LLC, et al.*

Eamon P. Kelly
Alberto Rodriguez
Martin Amaro
**SPERLING & SLATER, P.C.**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
ekelly@sperling-law.com
arodriguez@sperling-law.com
mamaro@sperling-law.com

Steve W. Berman
Robert F. Lopez
Ted Wojcik
1301 Second Ave., Suite 2000
Seattle, WA 98101
**HAGENS BERMAN SOBOL**
**SHAPIRO LLP**
steve@hbsslaw.com
robl@hbsslaw.com
tedw@hbsslaw.com

Benjamin J. Siegel
**HAGENS BERMAN SOBOL**
**SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
bens@hbsslaw.com
*Co-Lead Counsel for the Proposed Class in*
*In re Google Play Developer Antitrust*
*Litigation and Attorneys for Pure Sweat*

1

USDOJ-GOOGEX-000385

Hae Sung Nam
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
hnam@kaplanfox.com

Karma M. Giulianelli
**BARTLIT BECK LLP**
1801 Wewetta St., Suite 1200
Denver, CO 80202
karma.giulianelli@bartlitbeck.com

*Co-Lead Counsel for the Proposed Class in
In re Google Play Consumer Antitrust
Litigation*

Peggy J. Wedgworth
**MILBERG PHILLIPS
GROSSMAN LLP**
One Penn Plaza, Suite 1920
New York, New York 10119
pwedgworth@milberg.com

George A. Zelcs
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
gzelcs@koreintillery.com

Nanci Eiko Nishimura
**COTCHETT PITRE &
MCCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
nnishimura@cpmlegal.com

*Interim Steering Committee Members for
Plaintiffs and the Proposed Class in In re
Google Play Consumer Antitrust Litigation*

Brendan Glackin
**OFFICE OF THE UTAH ATTORNEY
GENERAL**
160 E 300 S, 5th Floor
PO Box 140872

*Basketball, Inc.*
Elizabeth Pritzker
**PRITZKER LEVINE LLP**
1900 Powell Street, Suite 450
Emeryville, CA 94608
ecp@pritzkerlevine.com

*Interim Liaison Counsel for Plaintiffs and the
Proposed Class in In re Google Play Consumer
Antitrust Litigation*

Bonny E. Sweeney (SBN 176174)
Samantha J. Stein (SBN 302034)
**HAUSFELD LLP**
600 Montgomery Street, Suite
3200 San Francisco, CA 94104
DevelopersvGoogle@hausfeld.com
bsweeney@hausfeld.com
sstein@hausfeld.com

Melinda R. Coolidge (*pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006
mcoolidge@hausfeld.com

Katie R. Beran (*pro hac vice*)
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
kberan@hausfeld.com

Scott A. Martin (*pro hac vice*)
Irving Scher (*pro hac vice*)
33 Whitehall Street, 14th Floor
New York, NY 10004
smartin@hausfeld.com

*Co-Lead Counsel for the Proposed Class in
In re Google Play Developer Antitrust
Litigation and Attorneys for Peekya App
Services, Inc.*

2

USDOJ-GOOGEX-000386

1    Salt Lake City, UT 84114-0872
     bglackin@agutah.gov
2

3    Sarah G. Boyce (*pro hac vice*)
4    **NORTH CAROLINA DEPARTMENT**
     **OF JUSTICE**
5    PO Box 628
     Raleigh, NC 27602
6    sboyce@ncdoj.gov

7    *Counsel for the Plaintiff States*

8

9         Executed on January 14, 2022, in San Francisco, California. I declare under penalty of

10   perjury under the laws of the State of California that the above is true and correct.

11                                              /s/  Emily Curran-Huberty

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                          3

# Exhibit 2

USDOJ-GOOGEX-000388

Civil Investigative Demand—Documentary Material and Written Interrogatories

# United States Department of Justice

**Antitrust Division**
**Washington, DC 20530**

To:   Alphabet, Inc.
      1600 Amphitheatre Parkway
      Mountain View, CA 94043

Civil Investigative
Demand Number: -30120

This civil investigative demand is issued pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311-1314, in the course of an antitrust investigation to determine whether there is, has been, or may be a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 by conduct, activities, or proposed action of the following nature: Monopolization, Attempted Monopolization, and/or Monopoly Maintenance of Online Search, Digital Advertising, or related products and services.

You are required by this demand to produce all documentary material described in the attached schedule that is in your possession, custody, or control, and to make it available at your address indicated above for inspection and copying or reproduction by a custodian named below. You are also required to answer the interrogatories on the attached schedule. Each interrogatory must be answered separately and fully in writing, unless it is objected to, in which event the reasons for the objection must be stated in lieu of an answer. Such production of documents and answers to interrogatories shall occur on the _6th_ day of _November_, 2019 at 5:00 p.m.

The production of documentary material and the interrogatory answers in response to this demand must be made under a sworn certificate, in the form printed on the reverse side of this demand, by the person to whom this demand is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production and/or responsible for answering each interrogatory.

For the purposes of this investigation, the following are designated as the custodian and deputy custodian(s) to whom the documentary material shall be made available and the interrogatory answers shall be submitted: Aaron Hoag, Chief (custodian) and Ryan Struve, Attorney (deputy custodian), U.S. Dept. of Justice, Antitrust Division, Technology and Financial Services Section, 450 Fifth Street NW, Suite 7100, Washington, DC 20530.

Inquiries concerning compliance should be directed to Ryan Struve at 202-514-4890.

Your attention is directed to 18 U.S.C. § 1505, printed in full on the reverse side of this demand, which makes obstruction of this investigation a criminal offense.

Issued in Washington, D.C., this _7th_ day of _October_, 2019.

_Assistant Attorney General_

Civil Investigative Demand—Documentary Material and Written Interrogatories

**18 U.S.C. § 1505. Obstruction of proceedings before departments, agencies, and committees**

Whoever, with intent to avoid, evade, prevent, or obstruct compliance, in whole or in part, with any civil investigative demand duly and properly made under the Antitrust Civil Process Act, willfully withholds, misrepresents, removes from any place, conceals, covers up, destroys, mutilates, alters, or by other means falsifies any documentary material, answers to written interrogatories, or oral testimony, which is the subject of such demand; or attempts to do so or solicits another to do so; or

Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress -

Shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both.

**Form of Certificate of Compliance\***

I/We have read the provisions of 18 U.S.C. § 1505 and have knowledge of the facts and circumstances relating to the production of the documentary material and have responsibility for answering the interrogatories propounded in Civil Investigative Demand No. _____. I/We do hereby certify that all documentary material and all information required by Civil Investigative Demand No. _____ which is in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to a custodian named therein.

If any documentary material otherwise responsive to this demand has been withheld or any interrogatory in the demand has not been fully answered, the objection to such demand and the reasons for the objection have been stated in lieu of production or an answer.

Signature _____

Title _____

Sworn to before me this _____ day of

_____, 20___.

_____
            Notary Public

\*In the event that more than one person is responsible for producing the documents and answering the interrogatories, the certificate shall identify the documents and interrogatories for which each certifying individual was responsible. In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided by 28 U.S.C. § 1746.

USDOJ-GOOGEX-000390

# CIVIL INVESTIGATIVE DEMAND FOR
## DOCUMENTS AND INFORMATION
### ISSUED TO ALPHABET, INC.

Unless otherwise indicated or modified by the Department of Justice, each specification of this Demand requires a complete search of the Company. In the Department's experience, modifications to this Demand may reduce the burden of searching for responsive documents and information in a way that is consistent with the Department's needs. The Company is encouraged to propose such modifications, but all modifications must be agreed to in writing by the Department.

## SPECIFICATIONS

1. Submit:

   a. one copy of each organization chart and personnel directory for the Company as a whole and for each of the Company's facilities or divisions involved in any activity related to any Relevant Product or Service;

   b. a list of persons most knowledgeable about the Company's electronic data systems and policies or practices regarding responsive electronically stored information, including each responsive database or data set within the Company;

   c. a list of persons most knowledgeable about the Company's electronic data systems and policies or practices regarding responsive electronically stored information, including each database or data set responsive to Specification 2;

   d. a description of each database or data set responsive to Specification 2, including: (1) its software platform; (2) its type (e.g., flat, relational, or enterprise); (3) the sources (e.g., other databases or individuals) used to populate the database; (4) a Data Dictionary; (5) for relational or enterprise databases, documents specifying the relationships among tables (e.g., an entity relationship diagram); (6) any query forms; and (7) any regularly prepared reports produced from that database; and

   e. for each Collaborative Work Environment formerly or currently maintained by the Company that contains responsive documents or information, a description of the environment and a list of the employees who have access to the environment.

2. Submit each database or data set used or maintained by the Company since 2007 related to each Relevant Product or Service that contains information related to the Company's:

   a. products or services;

   b. prices, revenues, costs, or margins;

   c. sales;

   d. consumer switching and multi-homing;

    e.   search queries, search results, and click-through rates;

    f.   bids, asks, and transactions on advertising platforms;

    g.   customers or customer relationships; or

    h.   competitors.

3.  List separately for each subpart below each federal judicial district in which the Company:

    a.   has an agent to receive service of process (include each agent's name, current business and home addresses, and telephone numbers);

    b.   has an office or a facility; for each office or facility, list the address and the individual in charge (with his or her title), and if the office or facility is in the District of Columbia, indicate whether the office or facility's sole purpose is to contact federal governmental agencies; and

    c.   inhabits, is found, or transacts business, and is incorporated or licensed.

    The Company may respond to this specification by agreeing to personal jurisdiction and to accept service of process in all federal judicial districts.

4.  Submit documents sufficient to show (and to the extent not reflected in such documents, describe) the Company's policies and practices related to (a) the retention and destruction of documents, and the retention, storage, deletion, and archiving of electronically stored information, including e-mail, and (b) the use of personal electronic devices for work purposes.

5.  List the persons responsible for preparing the response to this Civil Investigative Demand and submit a copy of all instructions prepared by the Company related to the steps taken to respond to this Demand. Where oral instructions were given, list the person who gave the instructions and describe the content of the instructions and the persons to whom the instructions were given. For each specification, list the persons who assisted in the preparation of the response and list, by name and corporate title or job description, the persons whose files were searched.

6.  Submit all documents related to the Company's mergers and acquisitions strategy and how that strategy affects its Internet Search or any Advertising Technology Product business including, but not limited to, any documents like those described in Items 4(c) and 4(d) in the Notification and Report Form for Certain Mergers and Acquisitions pursuant to 16 C.F.R. Appendix A to Part 803.

7.  Submit all documents related to any plans of, interest in, or efforts undertaken by the Company or any other person for any acquisition, divestiture, joint venture, alliance, or merger of any kind involving the sale of any Relevant Product or Service.

USDOJ-GOOGEX-000392

8.  Submit all documents related to any allegation that the Company, its employees, or any of its current or potential competitors is behaving in an anticompetitive manner, including customer and competitor complaints, Congressional inquiries, or threatened, pending, or completed lawsuits.

9.  State the name and business address of each of the Company's competitors in any Relevant Product or Service.

10. List each Relevant Product or Service provided by the Company, and for each:

    a.  describe any identifying information such as brand name or catalog number, and end-uses; and

    b.  identify the business unit of the Company that provides or has provided it.

11. For each Relevant Product or Service state, separately for each month from January of 2015 to the present, state the revenue the Company received and the sources of that revenue, including, but not limited to revenue derived from advertisements, distribution agreements, and syndication agreements.

12. For each Relevant Product or Service state, and submit all documents related to:

    a.  the date that development of the product or service began, and the date that the product or service was first provided or will be provided;

    b.  the total development costs incurred by the Company to date, and the total costs projected for any continuing development of the product or service (including any planned upgrades or expansions of the product or service);

    c.  the total person-years (or person-months) the Company has expended to date and the total person-years (or person-months) projected for any continuing development of the product or service (including any planned upgrades or expansions of the product or service); and

    d.  the total sunk costs incurred to date, as well as all sunk costs projected for any continuing development of the product or service (including any planned upgrades or expansions of the product or service).

13. Submit all documents related to the Company's or any other person's plans related to any Relevant Product or Service, including, but not limited to:

    a.  business plans;

    b.  short-term and long-term strategies and objectives;

    c.  budgets and financial projections;

– 3 –

USDOJ-GOOGEX-000393

    d.   entry, expansion, or retrenchment plans;

    e.   research and development efforts;

    f.   plans to reduce costs, increase quality, expand inventory, increase scale, improve products or services, introduce new products or services, or otherwise become more competitive; and

    g.   presentations to management committees, executive committees, and boards of directors.

For regularly prepared budgets and financial projections, the Company need only submit one copy of final year-end documents and cumulative year-to-date documents for the current year.

14. Submit all documents created or received by the Company related to the Company's or any other person's transaction prices, price lists, pricing plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, and pricing decisions related to any Relevant Product or Service.

15. State the name and address of each person that has entered or attempted to enter into, or exited from, the provision of each Relevant Product or Service or sale of each Relevant Product or Service from 2006 to the present. For each such person, identify the Relevant Product or Service it sells or sold, and the date of the entry into or exit from the market.

16. For each Relevant Product or Service, list any likely new entrants into the sale of the Relevant Product or Service.

17. Submit all documents related to any Relevant Product or Service that use any of the following terms: moat, wall, pricing power, market power, monopoly, monopsony, competitive edge, efficient scale, entry barriers, entrench, dominant, market leader, market position, or network effects.

18. Submit all documents related to the protection or preservation of the market shares of any of the Company's Relevant Products or Services by modifying existing products or services, or by creating or developing other products or services.

19. Submit all documents related to the Company's plans to develop products or services that support, interoperate, or rely on any of the Company's Relevant Products or Services.

20. Submit all documents related to any economic analyses performed by the Company related to any Relevant Product or Service.

21. Submit all documents or data related to competition in any Relevant Product or Service, including, but not limited to:

USDOJ-GOOGEX-000394

a. documents related to the Company's past, current, and contemplated (whether consummated or not) Search Syndication contracts or agreements, and any policies related to any such contract or agreements;

b. documents related to the Company's efforts to be included as a default or optional Internet Search provider for any Web Browser or Mobile Operating System;

c. documents related to the Company's efforts to create an index for its search engine;

d. documents related to the Company's efforts to produce competitive Organic Search Results for the Internet Search market;

e. documents related to the sales, market share, or competitive position of the Company or any of its competitors;

f. documents related to the relative strength or weakness of companies providing any Relevant Product or Service;

g. documents related to the relative quality of the products or services offered by competitors, or features thereof, including, but not limited to technology, performance, privacy and security, user experience, customizability, inventory, publishers, suppliers, data, and customer service;

h. documents related to supply and demand conditions;

i. documents related to comparisons or analysis of any Relevant Product or Service;

j. data showing the propensity of users of the Company's products and services to use default applications, including any default Web Browser, Search Engine, or Mobile Wireless Application;

k. data showing how often users of the Company's products and services multi-home or switch from one Web Browser, Search Engine, or Mobile Operating System to another, and what they switch to and away from (or multi-home with);

l. data on bids by competing Search Engines to be pre-installed or set as default on any website, Web Browser, or Mobile Device; and

m. documents related to any actual or potential effect on the supply, demand, cost, scale, available inventory, or price of any Relevant Product or Service as a result of competition from any competing product or service, or any possible substitute product or service.

22. Submit all contracts related to any Relevant Product or Service that:

a. reference any competitor of the Company;

b. have any exclusive terms or most-favored nations (MFN) terms;

– 5 –

USDOJ-GOOGEX-000395

    c.  relate to more than one product or service, or to a bundle of products or services, or that reference or condition the purchase or use of one product or service with respect to the purchase or use of another product or service;

    d.  prevent, prohibit, or affect the ability of any customer from working with or using the products or services of any competitor;

    e.  prevent, prohibit, or affect the ability of any competitors from crawling the webpages of any website;

    f.  permit or mandate the restoration of any Relevant Product or Service as the default product or service; and

    g.  prohibit competitors from using any data collected and maintained by the Company.

23. Submit all documents related to the Company's support for, justification of, or any complaints regarding Accelerated Mobile Pages.

24. Submit all documents related to the Company's analysis of and decisions made about the design or layout of, and placement of features on, Google's Search Engine Results Page.

25. Submit all documents related to the Company's sale, commercialization, or other monetization of user data acquired or derived from any Relevant Product or Service.

26. Submit all documents related to the Company's decisions, plans, or policies restricting the ability of third parties to use Google Maps with non-Google products or services.

27. Submit all documents related to any contract or other agreement, or any potential agreement, between the Company and any (a) Mobile Device manufacturers that produce devices to be sold in the United States or (b) mobile network operators in the United States.

28. Submit all documents created since 2007 related to the Company's Android business unit, including, but not limited to documents relating to:

    a.  prices, terms of sale, pricing plans, pricing strategies, or profitability;

    b.  business plans or short-term or long-term strategies or objectives;

    c.  annual budgets and financial projections;

    d.  procedures for release of software updates, including whether updates reset default options;

    e.  expansion or retrenchment plans;

    f.  research and development efforts;

USDOJ-GOOGEX-000396

    g.  acceptance or rejection of applications that compete with the Company's products in any Relevant Product or Service; and

    h.  acceptance or rejection of advertising for apps that compete with the Company's products in any Relevant Product or Service.

29. Submit all documents related to the formation, membership, and purpose of any organization related to the Android Mobile Operating System, including, but not limited to the Open Handset Alliance.

30. Submit all documents regarding any benefits to the Company's other products and services, including, but not limited to its Search and Advertising businesses, from the Company's efforts to develop, maintain, or enhance any Mobile Operating System.

31. Submit all documents related to advertising on webpages using Accelerated Mobile Pages.

32. Submit all documents related to acquisitions the Company made or is considering to expand, augment, or support the Android Mobile Operating System.

33. Submit documents sufficient to show what data the Company collects, plans to collect, has considered collecting, or can collect on mobile users, including, but not limited to data from use of the Company's Mobile Wireless Applications or through the Android Mobile Operating System.

34. Submit all documents related to contracts or other agreements, past, present, or current, with Android application developers, including, but not limited to terms of service, the Company's review of application updates, and fees the Company charges for distribution or in-app purchases.

35. Submit all documents related to competition between the Company's Android Mobile Operating System and other Mobile Operating Systems, including, but not limited to other Android Mobile Operating Systems that are compatible with the Company's Mobile Wireless Applications (i.e., compatible Android forks) and Android Mobile Operating Systems that are not compatible with the Company's Mobile Wireless Applications (i.e., incompatible Android forks).

36. Submit all documents related to competition between the Google Play Store and other Mobile Wireless Application stores or individual applications, including, but not limited to documents related to the costs to developers of developing and distributing applications.

37. Submit all documents related to the decision to make AV1 video codec the default in Android Mobile Devices, including, but not limited to the decision to require royalty-free grant backs of intellectual property rights as a condition of using AV1 on Android devices.

USDOJ-GOOGEX-000397

38. Submit, for each of the Company's Web Browsers, all documents related to the Company's procedure for release of software updates, including whether updates reset default options.

39. Submit all documents created since 2006 discussing the Company's or any other person's plans related to Web Browsers, including, but not limited to:

  a.  business plans;

  b.  short-term and long-term strategies and objectives;

  c.  entry, expansion, or retrenchment plans; and

  d.  research and development efforts.

40. Submit all documents related to any benefits to the Company's other products and services from the Company's efforts to develop, maintain, or enhance any Web Browser or Web Browser code, including, but not limited to benefits to the Company's Search and Advertising businesses.

41. Submit all documents related to the Company's collection and use of user data from or through any Web Browser for purposes of sale, commercialization, or advertising, or to improve any of the Company's products or services.

42. Submit all documents related to the performance, display, compatibility, or interoperability of the Company's products and services in competing Web Browsers, including, but not limited to the Company's websites, applications, and technology.

43. Submit all documents related to the distribution of any Web Browser (either standalone or as part of a bundle) on any desktop or laptop computer or mobile device.

44. Submit all documents related to any constraints imposed by any Web Browser on user access to, performance of, or display of any website, including the Company's websites.

45. Submit all documents related to Content-Blocking Software, extensions, applications, or other similar technology for Web Browsers, including, but not limited to:

  a.  the Company's development of its own Content-Blocking Software;

  b.  the effects on Content-Blocking Software of updates or changes, such as Manifest v3, to the Company's Web Browsers;

  c.  the effects of any Content-Blocking Software on user behavior, including, but not limited to, how a user interacts with features on a webpage;

  d.  the effects of any Content-Blocking Software on revenues from the Company's Advertising Technology Products; and

– 8 –

USDOJ-GOOGEX-000398

    e.   communications with other Content-Blocking Software companies.

46. Submit all documents related to cookie management in Web Browsers, including, but not limited to developments, updates, or changes to the Company's cookie management policies; the Privacy Sandbox; and comparisons to cookie management in competing Web Browsers.

47. Submit all documents related to the Company's past or future implementation of DNS-over-HTTPS or DNS-over-TLS, including, but not limited to:

    a.   the Company's participation in the Internet Engineering Task Force's development of the DNS-over-HTTPS and DNS-over-TLS standards;

    b.   any communication between the Company and any other person regarding the implementation of DNS-over-HTTPS or DNS-over-TLS;

    c.   the Company's business plans or short-term or long-term strategies or objectives with regard to DNS-over-HTTPS or DNS-over-TLS; and

    d.   the Company's business plans or short-term or long-term strategies or objectives regarding any data collected after implementation of DNS-over-HTTPS or DNS-over-TLS.

48. Submit all documents related to the licensing, sharing, distribution, maintenance, and updating of Application Programming Interfaces for the Company's Web Browsers, including, but not limited to:

    a.   all documents related to digital rights management encryption services for Web Browsers such as Widevine, FairPlay, PlayReady, or similar technology; and

    b.   all documents related to the interoperability of Google Hangouts, including screen sharing functions, with competing Web Browsers.

49. Submit all documents related to any action by the Company to modify the results of its Organic Search Results, including, but not limited to:

    a.   promotion of the Company's owned websites and services above the placement determined by the Google search algorithm;

    b.   demotion of other websites and services below the placement determined by the Google search algorithm;

    c.   any decision to modify or discontinue creating a PageRank score for the Company's owned websites; and

    d.   signaling to users that a result is not an Organic Search Result.

USDOJ-GOOGEX-000399

50. Submit all agreements with Web Browsers regarding the optional or default Search Engine used by that Web Browser, all documents related to those agreements, and all communications with Web Browsers that have agreements with the Company.

51. Submit all documents related to the Company's Search business, including, but not limited to:

    a.  business plans or short-term or long-term strategies or objectives;

    b.  annual budgets and financial projections;

    c.  documents related to decision-making regarding the design and layout of the Search Engine Results Page, including, but not limited to:

        i.  the number of advertisements shown and the portion of screen size occupied by the advertisements;

        ii.  any decision by the Company to modify how search results are displayed, including, but not limited to, design decisions about whether to include a feature or service (whether Google-owned or otherwise) at or near the top of the page; and

        iii.  whether to include or to modify the placement, size, or design of a featured snippet, answer box, map, carousel, or other infographic; and

    d.  documents related to research and development efforts.

52. Submit all documents since 2007 related to the Company's development of Universal Search, including, but not limited to:

    a.  business plans or short-term or long-term strategies or objectives;

    b.  annual budgets and financial projections; and

    c.  documents related to research and development efforts.

53. Submit all documents related to competition between Google's search engine (including any portion of the Search Engine Results Page) and other Vertical Search companies.

54. Provide the name and address of and a contact person for all of the Company's competitors for Advertising Technology Products.

55. For each of the Company's Advertising Technology Products, submit all documents related to the Company's:

    a.  prices, terms of sale, pricing plans, pricing strategies, or profitability;

USDOJ-GOOGEX-000400

    b.   business plans or short-term or long-term strategies or objectives;

    c.   annual budgets and financial projections;

    d.   expansion or retrenchment plans; and

    e.   research and development efforts.

56. For each year since 2007, separately for each Advertising Technology Product sold by the Company, identify and describe all revenue sharing and fees associated with the service.

57. Submit all documents related to Google's development, introduction, and management of:

    a.   Real-Time Bidding;

    b.   Dynamic Allocation;

    c.   Enhanced Dynamic Allocation;

    d.   Exchange Bidding Dynamic Allocation;

    e.   Unified Pricing; and

    f.   each other material change made to the Company's Advertising Technology Products since 2011.

58. Submit all documents related to the Company's integrations of third-party Advertising Technology Products with its own Advertising Technology Products, including all contracts with third-party providers of Advertising Technology Products.

59. Submit all documents related to the importability of information and data to, or exportability of information and data from, the Company's Advertising Technology Products by customers.

60. Submit all documents or analysis estimating how many customers of the Company's Advertising Technology Products also use non-Google advertising products.

61. Submit all documents related to Header Bidding, the PreBid Standard, and propriety implementations of Header Bidding.

62. For each of the Company's Advertising Technology Products, state the name and address of and a contact person for its top 50 customers by volume and revenue and submit all contracts and communication with that firm related to Advertising Technology Products.

63. Submit one copy of each form contract the Company utilizes related to Advertising Technology Products.

– 11 –

USDOJ-GOOGEX-000401

64. Submit documents sufficient to show the Company's Privacy Policy, including:

    a. use of personal information in the serving of advertisements, either on the Company's property or on third-party websites;

    b. limitations on data transfers to third-party companies;

    c. any exceptions made to the Company's Privacy Policy and the reasons for those exceptions; and

    d. any changes made to the Company's Privacy Policy over the past ten years and the reasons for those changes.

65. Describe the Company's policies and practices related to allowing third-party Advertising Technology Products to integrate with the Company's owned properties, including, but not limited to YouTube (i.e., to buy or to serve ads on YouTube), including:

    a. the Company's general policies and any exceptions to the general policies in existence in 2007;

    b. all subsequent changes to the Company's policies, any impact on prior exceptions, and any new exceptions;

    c. when each change occurred;

    d. the rationale for each change; and

    e. the impact of each change on advertising revenue generated by YouTube.

66. Submit all documents related to actual or proposed changes to the Company's policies and practices on allowing third-party ad servers or ad exchanges to integrate with the Company's owned properties, including, but not limited to YouTube (i.e., to buy or to serve ads on YouTube).

## DEFINITIONS

The following definitions apply for the purposes of this Demand:

1. The terms "**the Company**," or "**Google**" mean Alphabet, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control between the Company and any other person.

2. The term "**Accelerated Mobile Pages**" means the open-source library of web components and specifications that speed up page load times.

– 12 –

USDOJ-GOOGEX-000402

3.  The term "**Advertising Technology Product**" means any technology, product, or service that facilitates the sale, purchasing, management, analytics, or optimization of advertising inventory and advertisements. Advertising Technology Product includes, but is not limited to, Google Ad Manager, Google Market Platform, Google Ad Sense, Google Ad Mob, Google Ads, and all subsidiary products, predecessor products, and like abandoned products.

4.  The term "**agreement**" means any understanding, formal or informal, written or unwritten.

5.  The term "**Ad Serving**" means the technology and service that places advertisements on websites.

6.  The term "**Application Programming Interface**" or "API" means any routines, protocols, commands, rules, or specifications that a software program follows to access and make use of the services and resources provided by any software or hardware that also implements that API.

7.  The term "**Collaborative Work Environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include Google Drive, Microsoft Sharepoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems (CMS) (e.g., Drupal), wikis, and blogs.

8.  The term "**Content-Blocking Software**" means any software (including any Web Browser extension) that prevents a Web Browser from displaying, playing, loading, receiving, or transmitting any content, including, but not limited to webpages in whole or in part, advertisements, adult material, malware, trackers, or personal information.

9.  The term "**Data Dictionary**" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Department, including, for each table of information: (a) the size (number of records and overall volume); (b) a general description; (c) a list of field names; (d) a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values; (e) the format, including variable type and length, of each field; and (f) the primary key in a given table that defines a unique observation.

10. The term "**documents**" means all written, printed, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on social media accounts like Twitter or Facebook, chats, instant messages, text messages, messaging applications, and documents contained in Collaborative Work Environments and other document databases. "Documents" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document. Unless otherwise specified, "documents" excludes bills of lading, invoices in non-electronic form, purchase orders, customs declarations, and other similar

– 13 –

USDOJ-GOOGEX-000403

documents of a purely transactional nature; architectural plans and engineering blueprints; and documents solely relating to environmental, tax, human resources, OSHA, or ERISA issues.

11. The term "**documents sufficient to show**" means documents sufficient to provide the Department with a true and correct disclosure of the factual matter requested.

12. The term "**Header Bidding**" refers to an advanced programmatic technique wherein publishers offer inventory to multiple ad exchanges simultaneously before making calls to their ad servers.

13. The term "**Internet Search**" means the results of an entry into a search engine that yields both paid and non-paid (also called organic) results.

14. The term "**Mobile Operating System**" means system software for a mobile wireless device (e.g., Android, iOS) that manages device hardware and supports application software.

15. The term "**Mobile Wireless Application**" means a computer program that enables one or more functions on a mobile wireless device running a Mobile Operating System.

16. The term "**Mobile Device**" means a device (e.g., phone, tablet, smartwatch) suitable for use with any telecommunications service using radio transmission between mobile or fixed stations that allows customers to conduct telephone calls or data sessions wirelessly when traveling.

17. The term "**Organic Search Results**" means non-advertisement results from an entry into a search engine.

18. The term "**person**" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust. The term "**person**" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

19. The term "**plans**" includes preliminary proposals, recommendations, or considerations, whether finalized or adopted.

20. The term "**PreBid Standard**" refers to a free and open source suite of software products designed to enable publishers to implement Header Bidding on their websites and from within their apps.

21. The term "**Relevant Product or Service**" means, *and submit information separately for each product or service offered by the Company within one or more of the following categories*:

    a.  Advertising Technology Products;

    b.  Mobile Operating Systems;

    c.  Web Browsers;

– 14 –

USDOJ-GOOGEX-000404

    d.   Internet Search;

    e.   YouTube;

    f.   Google Maps; and

    g.   G Suite.

22. The term "**sales**" means net sales, *i.e.*, total sales after deducting discounts, returns, allowances, and excise taxes. "Sales" includes sales of the relevant product whether manufactured by the Company itself or purchased from sources outside the Company and resold by the Company.

23. The term "**Search Engine Results Page**" means the page (or pages) displayed by search engines in response to a query.

24. The term "**Search Syndication**" means the provision of a search engine's services to an approved third party.

25. The term "**Vertical Search**" means a search on a specific topic area or a specific segment of an overall search.

26. The term "**Web Brower**" means any software that allows the user of a desktop or laptop computer, mobile device, tablet, or similar technology to access or interact with information on the World Wide Web. The term Web Browser includes but is not limited to Chrome, Chromium, Firefox, Safari, Opera, Puffin, Dolphin, Baidu, Samsung Internet, Yandex, Cheetah, Vivaldi, Internet Explorer, Edge, Lynklet, Brave, Ghostery, UC Web, and all versions, subsidiary products, predecessor products, and like abandoned products.

## INSTRUCTIONS

*Timing*

1. All references to year refer to calendar year. Unless otherwise specified, this Demand calls for documents, data, and other information created, altered, or received by the Company since 2014.

*Production Format*

2. Department representatives must approve the format and production method of any documents, data, or other information before the Company makes an electronic production in response to this Demand. Before preparing its production, the Company must contact the Department to explain what materials are available and how they are stored. This discussion must include Company personnel who are familiar with its electronically stored information and databases/data sets.

USDOJ-GOOGEX-000405

3. Before using software or technology (including search terms, predictive coding, de-duplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this Demand, the Company must submit a written description of the method(s) used to conduct any part of its search. In addition, for any process that relies on search terms to identify or eliminate documents, the Company must submit: (a) a list of proposed terms; (b) a tally of all the terms that appear in the collection and the frequency of each term; (c) a list of stop words and operators for the platform being used; and (d) a glossary of industry and company terminology. For any process that instead relies on predictive coding to identify or eliminate documents, you must include (a) confirmation that subject-matter experts will be reviewing the seed set and training rounds; (b) recall, precision, and confidence-level statistics (or an equivalent); and (c) a validation process that allows for Department review of statistically-significant samples of documents categorized as non-responsive documents by the algorithm.

4. If the Department agrees to narrow the scope of this Demand to a limited group of custodians, a search of each custodian's files must include files of their predecessors; files maintained by their assistants or under their control; and common or shared databases or data sources maintained by the Company that are accessible by each custodian, their predecessors, or assistants.

5. Submit responses to this Demand in a reasonably usable format as required by the Department in the letter sent in connection with the investigation of the Transaction. Documents must be complete and unredacted, except for privilege. Documents must be submitted as found and ordered in the Company's files and must not be shuffled or otherwise rearranged. The Company is encouraged to submit copies of hard-copy documents electronically (with color hard copies where necessary to interpret the document) in lieu of producing original hard-copy documents. Absent a Department request, produce electronic documents in electronic form only. Electronic productions must be free of viruses. The Department will return any infected media for replacement, which may delay the Company's date of compliance with this Demand.

6. Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") before discussing the information with the Department representatives. If any document responsive to a particular request contains Sensitive PII or SHI that is not responsive to that request, redact the unresponsive Sensitive PII or SHI before producing the document. To avoid any confusion about the reason for the redaction, produce a list of such redacted documents by document control number.

Sensitive PII includes a person's Social Security Number; or a person's name, address, or phone number in combination with one or more of their: (a) date of birth; (b) driver's license number or other state identification number, or a foreign country equivalent; (c) passport number; (d) financial account number; or (e) credit or debit card number.

Sensitive Health Information includes medical records and other individually identifiable

– 16 –

USDOJ-GOOGEX-000406

health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

7. Provide any index of documents prepared by any person in connection with your response to this Demand. If the index is available in electronic form, provide it in that form.

8. Data called for by this Demand must be submitted electronically in a reasonably useable compilation that will allow the Department to access the information it contains. Producing a database or data set in its entirety often does not satisfy this requirement. For the Department to be able to access and interpret data, the Company must provide, for each database, a description of each database or data set to be produced, including: (1) its software platform; (2) its type (e.g., flat, relational, or enterprise); (3) the sources (e.g., other databases or individuals) used to populate the database; (4) for relational or enterprise databases, documents specifying the relationships among tables (e.g., an entity relationship diagram); (5) any query forms; (6) any regularly prepared reports produced from that database; and (7) a Data Dictionary that includes, for each table in the database:

    a. the name of the table;

    b. a general description of the information contained;

    c. the size in both number of records and megabytes;

    d. a list of fields;

    e. the format, including variable type and length, of each field;

    f. a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values;

    g. the fields that are primary keys for the purpose of identifying a unique observation;

    h. the fields that are foreign keys for the purpose of joining tables; and

    i. an indication of which fields are populated.

It is likely that only a subset or compilation of the contents of any particular database or data set will need to be produced. After providing the information above, counsel and knowledgeable personnel from the Company should discuss with Department representatives what constitutes a sufficient production from the database or data set in a reasonably useable format.

9. The Company must continue to preserve documents or data contained in disaster recovery systems or back-up media that may contain information responsive to this

USDOJ-GOOGEX-000407

Demand. Please contact the Division's representative to discuss your obligation to preserve back up media.

10. Produce all non-privileged portions of any responsive document (including non-privileged or redacted attachments) for which a privilege claim is asserted. Each document withheld in whole or in part from production based on a claim of privilege must be assigned a unique privilege identification number and separate fields representing the beginning and ending document control numbers and logged as follows:

    a. Each log entry must contain, in separate fields: privilege identification number; beginning and ending document control numbers; parent document control numbers; attachments document control numbers; family range; number of pages; all authors; all addressees; all blind copy recipients; all other recipients; date of the document; an indication of whether it is redacted; the basis for the privilege claim (e.g., attorney-client privilege), including the anticipated litigation for any work-product claim and the underlying privilege claim if subject to a joint-defense or common-interest agreement; and a description of the document's subject matter sufficiently detailed to enable the Department to assess the privilege claim and the facts relied upon to support that claim.

    b. Include a separate legend containing an alphabetical list (by last name) of each name on the privilege log, identifying titles, company affiliations, the members of any group or email list on the log (e.g., the Board of Directors) and any name variations used for the same individual.

    c. On the log and the legend, list all attorneys acting in a legal capacity with the designation ESQ after their name (include a space before and after the "ESQ").

    d. Produce the log and legend in electronic form that is both searchable and sortable. Upon request, the Company must submit a hard copy of the log and legend.

    e. Department representatives will provide an exemplar and template for the log and legend upon request.

    f. Any document created by the Company's in-house counsel or the Company's outside counsel that has not been distributed outside the Company's in-house counsel's office or the Company's outside counsel's law firm does not have to be logged. But if the document was distributed to any attorney who does not work exclusively in the Company's in-house counsel's office or who has any business responsibilities, it must be logged. Unlogged documents are subject to any preservation obligations the Company or counsel may have.

11. If the Company is unable to answer a question fully, it must supply all available information; explain why such answer is incomplete; describe the efforts made by the Company to obtain the information; and list the sources from which the complete answer may be obtained. If the information that allows for accurate answers is not available, submit best estimates and describe how the estimates were derived. Estimated data

– 18 –

USDOJ-GOOGEX-000408

should be followed by the notation "est." If there is no reasonable way for the Company to estimate, provide an explanation.

12. If documents, data, or other information responsive to a particular request no longer exists for reasons other than the Company's document retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost, list the specifications to which it was responsive, and list persons with knowledge of such documents, data, or other information.

13. To complete this Demand, the Company must submit the certification on the reverse of the Civil Investigative Demand form, executed by the official supervising compliance with this Demand, and notarized.

Direct any questions the Company has relating to the scope or meaning of anything in this Demand or suggestions for possible modifications thereto to Ryan Struve at 202-514-4890. The response to this Demand must be addressed to the attention of Mr. Ryan Struve and delivered between 8:30 a.m. and 5:00 p.m. on any business day to 450 Fifth Street, NW, Suite 7100, Washington, DC 20001. If the Company wishes to submit its response by U.S. mail, please call Ryan Struve for mailing instructions.

USDOJ-GOOGEX-000409

# Exhibit 4

USDOJ-GOOGEX-000410

Message
_____

| | |
|---|---|
| **From:** | David Riphagen [davidriphagen@google.com] |
| **Sent:** | 11/27/2018 5:03:00 PM |
| **To:** | Patrick Davis [patdav@google.com]; Jeremy Frank [jeremyfrank@google.com]; Winston Mok [wmok@google.com]; Larry Yang [lryang@google.com]; Darshini Thiagarajan [darshinit@google.com]; Angela Ying [angelaying@google.com]; Paul Feng [pfeng@google.com]; Manish Bhargava [mbhargava@google.com]; Mrinalini Loew [mloew@google.com]; Meghdutt Brahmachari [meghdutt@google.com]; Austin Shoemaker [awshoemaker@google.com]; Vivek Gandhi [vivekgandhi@google.com]; Amber Barlament [abarlament@google.com]; Calvin Ling [cling@google.com] |
| **Subject:** | ??PF-Team? |

- **David Riphagen**, `2018-11-27 09:03:00`

<a href="https://www.google.com/url?q=https://stratechery.com/2018/antitrust-the-app-store-and-apple/&amp;sa=D&amp;source=hangouts&amp;ust=1543424580782000&amp;usg=AFQjCNHmMAsrwBsbtJyHZgS8VBfeDhpNwg">https://stratechery.com/2018/antitrust-the-app-store-and-apple/</a>

- **David Riphagen**, `2018-11-27 09:03:04`

https://chat.google.com/api/get_hangouts_attachment_url?url_type=FIFE_URL&attachment_token=AOe91x326ZkfmhGdVs_NvNn2kO6iEIGFyNHU6K vqxFxQ6PDB6Zz02nmTXDv-zmM8KE3oi-f9ZCXPVzEQxy_yqgJ_6avsLW7wWfjBtAZED2mGq6FU_0_TM3Gi4LtJqYaDZc3KW3sqkXpX2ruk1_VWOzu7ZxIA5oIumr1uuUh4LKq29ogFv7fdX870lUJJN9YOrZ89TLerokSitGoJGXUabioQezmMoTEtx_G_vtuhf2SIvFe4VmbcYUlcE4NVn3-5Eak

- **David Riphagen**, `2018-11-27 09:03:22`

Ben Thompson is writing about the Apple case. Haven&#39;t read it yet, send me Tldr if you have

- **Larry Yang**, `2018-11-27 09:15:08`

Reminder: do not speculate on legal matters over email or (saved) chat

CONFIDENTIAL

# Exhibit 5

USDOJ-GOOGEX-000412

Message

| | |
|---|---|
| **From**: | Purnima Kochikar [kochikar@google.com] |
| **Sent**: | 8/13/2020 9:04:49 PM |
| **To**: | Adam Carpenter [adamcarpenter@google.com] |
| **CC**: | playapps-bd-leads [playapps-bd-leads@google.com]; Tia Arzu [tiaa@google.com] |
| **Subject**: | Re: Privileged and Confidential - Policy |

Thanks for checking, Adam.

P

On Thu, Aug 13, 2020 at 2:04 PM Adam Carpenter <adamcarpenter@google.com> wrote:
Privileged and Confidential

@Purnima Kochikar message history for chat in rooms is officially "Always on and retained according to your organization's policy".  In our case, messages appear to persist for at least 2+ years as my GC team channel has messages from July 2018.


On Thu, Aug 13, 2020 at 2:30 PM Purnima Kochikar <kochikar@google.com> wrote:
Privileged and Confidential +Tia Arzu for guidance

Hi Leads - a couple of updates on the policy front

one, the payment policy clarification is further delayed until Sundar has the opportunity to review our readiness plans in a bit more detail.

two, we are actively working on our response to the Fortnite situation, and will keep you posted.


I also heard that the conversations in Rooms on Meet remain in perpetuity so please don't discuss either topics in Rooms.  (could someone please confirm that this is the case?)

P
--
Purnima Kochikar
Google Play, Apps & Games
kochikar@google.com
+17813548147
--
You received this message because you are subscribed to the Google Groups "playapps-bd-leads" group.
To unsubscribe from this group and stop receiving emails from it, send an email to playapps-bd-leads+unsubscribe@google.com.
To view this discussion on the web visit https://groups.google.com/a/google.com/d/msgid/playapps-bd-leads/CAHLT3aPYCUbNWkbYQB2vRoKNG_yiHdp%2BVB4xL2bNzgbO6S2xNw%40mail.gmail.com.



--
- Adam


CONFIDENTIAL                                                                              GOOG-PLAY-011126651

--
Purnima Kochikar
Google Play, Apps & Games
kochikar@google.com
+17813548147
--
You received this message because you are subscribed to the Google Groups "playapps-bd-leads" group.
To unsubscribe from this group and stop receiving emails from it, send an email to playapps-bd-leads+unsubscribe@google.com.
To view this discussion on the web visit https://groups.google.com/a/google.com/d/msgid/playapps-bd-leads/CAHLT3aP5nVq2GZDy9b%2B2%3DpnZLjdK4JLip%2B7C5wS%3DUVZsnLLtBw%40mail.gmail.com
.

CONFIDENTIAL

GOOG-PLAY-011126652

USDOJ-GOOGEX-000414