**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| State of Colorado, *et al.*, | | | |
| | Plaintiffs, | | Case No. 1:20-cv-03715-APM |
| v. | | | HON. AMIT P. MEHTA |
| Google LLC, | | | **FILED UNDER SEAL** |
| | Defendant. | | |

**PLATINTIFF STATES' RESPONSE TO GOOGLE'S STATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

**TABLE OF CONTENTS**

I.    Google Search ........................................................................................................4

    A.    Origin and Evolution of Google Search.........................................................4

    B.    Google's Search Results Design ..................................................................... 8

    C.    Google's Evaluation and Launch Process ..................................................... 20

II.    Challenged Specialized Search Results Designs ............................................... 33

    A.    Hotels .........................................................................................................33

            1.    Origin and Evolution....................................................................36

            2.    How Google's Hotels Unit Works ................................................ 55

    B.    Flights .........................................................................................................63

            1.    Origin and Evolution....................................................................65

            2.    How Google's Flights Unit Works ................................................ 77

    C.    Local .........................................................................................................81

            1.    Origin and Evolution....................................................................83

            2.    How Google's Local Unit Works ...................................................97

    D.    Local Services Ads .....................................................................................101

            1.    Origin and Evolution....................................................................104

            2.    How Local Services Ads Work.................................................... 110

    E.    Movies ...................................................................................................... 114

            1.    Origin and Evolution....................................................................115

            2.    How Google's Movies Unit Works .............................................. 120

    F.    Events.......................................................................................................123

            1.    Origin and Evolution....................................................................124

            2.    How Google's Events Unit Works ................................................130

III.    Challenged Data Agreements .............................................................................132

IV.    General Search Engine Specialized Search Results and Partnerships ............................ 138

    A.    Other General Search Engines Offer Specialized Search Results .................... 138

    B.    GSE-SVP Partnerships................................................................................ 141

V.    Advertisers' Options for Buying Online Advertising ................................................ 144

VI.    Google's SA360 and Other SEM Tools................................................................ 150

    A.    Advertisers' Search Advertising Spend on SA360 ............................................ 153

    B.    Requirements for SEM Tool Providers and Other Parties to Access Search Engine APIs ...............................................................................................157

VII.   Google's Development of Microsoft Advertising Features for SA360 .......................... 159

    A.   Timeline of Microsoft's Feature Requests to SA360 ............................................159

    B.   Microsoft's Feature Requests to Other SEM Tools ...............................................166

    C.   Google's Launch of a New Version of SA360 ...................................................... 170

    D.   SA360's Work to Integrate Auction-Time-Bidding ..............................................173

    E.   Other Reasons for Timing of SA360's Development of Microsoft Ads Features ................................................................................................................... 175

VIII.   Microsoft Ads Features at Issue............................................................................... 176

    A.   Auction-Time Bidding (aka Automated or Autobidding) .................................. 176

    B.   ███████████████████████████████████████████ ███████ .................................................................................... 181

Plaintiff States respectfully submit this Response to Google's Statement of Material Facts as to Which There is No Genuine Issue ("Google SMF"). The response is being submitted in support of Plaintiff States' Opposition to Google's Motion for Summary Judgment as to the additional forms of anticompetitive conduct alleged in *State of Colorado, et al v. Google LLC*, No. 120-cv-03715-APM.[1]

## I.   Google Search

### A.   Origin and Evolution of Google Search

**1.**   Google launched its search engine in 1998.  GOOG-DOJ-09300673 at -684 (Ex. 1).

**Plaintiff States' Response**: Undisputed.

**2.**   Google displays relevant results for all types of user queries on its search engine results page (SERP). *See* GOOG-DOJ-09300673 at -682 (Ex. 1).

**Plaintiff States' Response**: Undisputed.

**3.**   In the early days of Google Search, Google surfaced on its SERP only web results, also known as the "ten blue links"—plain text hyperlinks to webpages for which Google does not receive any payment, ranked according to relevancy and quality. GOOG-DOJ-03209307 at -308 (Ex. 2).

**Plaintiff States' Response**: Undisputed.

**4.**   In 2000, Google introduced text ads, which are paid advertisements relevant to a

---

[1] Plaintiff States incorporate by reference herein its response filed jointly with U.S. Plaintiffs to Google's Statement of Material Facts As To Which There Is No Genuine Issue In Support of Its Motion for Summary Judgment as to Plaintiff States' claims regarding Google's search distribution agreements.

query that has been entered, that appear on the SERP and contain a link to the advertiser's website. GOOG-DOJ-09300673 at -684 (Ex. 1); *About Text Ads*, https://support.google.com/google-ads/answer/1704389?hl=en (last accessed Dec. 10, 2022) (Ex. 3).

**Plaintiff States' Response**: Undisputed.

5.      Beginning in the early 2000s, in addition to web results and text ads, Google developed and began to show specialized results in a variety of different formats on the SERP, including specialized or "vertical" units for certain categories of information. *See* GOOG-DOJ-03209307 at -309 (Ex. 2); Reid (Google) Decl. ¶ 7 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

6.      "Vertical" units refer to results organized around "particular segments of queries or intent that the user has around particular lines of business or particular interests that they have." Holden (Google) Tr. 36:18-37:4 (Ex. 5). For example, Google offers a hotels unit organized around hotel listings in a specified location in response to the query. *See* Holden (Google) Decl. ¶¶ 8, 11 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

7.      Google's unpaid search results, including any specialized units, are triggered and ranked by Google's algorithms according to relevance based on the user's intent as expressed through their query, the quality of the result, and other signals. GOOG-DOJ-09300673 at -681 (Ex. 1); Google's Resp. to Colo. Pls. 3rd Interrogs. at 14-16 (Ex. 7).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that certain of Google's unpaid search results, like its web results, are triggered and

ranked by Google's algorithms according to relevance.  Disputed in part because Google's specific algorithms used to determine the relevance of the results within certain specialized units, such as Google's flights unit, hotels unit, and local search unit, are prohibited from considering the relevance of SVPs in returning unpaid results.  Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Elzinga (Google Expert) Opening Report ¶ 140 (Ex. 30) (indicating that only hotel suppliers can appear in the hotels unit), 187 (indicating that only airlines and not SVPs can appear in the flights unit); Amaldoss Opening Report ¶¶ 133-38 (hotels), ¶¶ 139-43 (flights) (Ex. 5); Spalding (Google) Tr. 122:3-21 (Ex. 169).

      **8.**     For example, for the query "hotels in Washington DC," Google may show a SERP with the following:

      **a.**     Search text ads, often at the top of the page, with hyperlinks to the advertisers' websites,

**b.**     A specialized unit known as a hotels unit,[2] and



**c.**     Web results. Web results today can include snippets of text from the website, hyperlinks to specific pages in the website, and other information such as photos where applicable.



*See generally* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BA.1.a (Ex. 9).

**<u>Plaintiff States' Response</u>**: Undisputed.

**9.**     Each time the user enters a query, Google's SERP may look different, including which specialized units appear, based on what information Google's algorithms determine is

---

[2] Google often refers to the elements of its specialized results that appear on its SERP as "units," which contain structured information in summary form from a specific category. *See* Google's 2nd Supp. Resp. to Colo. Pls. 3rd Interrogs. at 2-8 (Ex. 8).

most relevant to the user's query. *How Google organizes information to find what you're looking for*, https://blog.google/products/search/how-google-organizes-information/ (last accessed Dec. 10, 2022) (Ex. 10).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Google's SERP may look different depending upon a user's query.  Disputed in part because Google's specific algorithms used to determine the relevance of the results within certain specialized units, such as Google's flights unit, hotels unit, and local search unit, are prohibited from considering the relevance of SVPs in returning unpaid results.  Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Elzinga (Google Expert) Opening Report ¶ 140 (Ex. 30) (indicating that only hotel suppliers can appear in the hotels unit), 187 (indicating that only airlines and not SVPs can appear in the flights unit); Amaldoss Opening Report ¶¶ 133-38 (hotels), ¶¶ 139-43 (flights) (Ex. 5); Spalding (Google) Tr. 122:3-21 (Ex. 169).

B.    **Google's Search Results Design**

10.    Over the past twenty years, Google has developed and introduced specialized results in subject areas as varied as weather, sports, language, education, civics, events, media (movies, TV, music, lyrics), books, travel, local, shopping, and more. Fox (Google) Tr. 262:14-263:4; 267:4-12 (Ex. 11); GOOG-DOJ-09300673 at -684 (Ex. 1).

**Plaintiff States' Response**: Undisputed.

11.    Google launched its specialized units to provide users with information related to a specific category of information Google interprets the user to be seeking, beyond links to webpages or snippets of crawled content from the web. Reid (Google) Decl. ¶ 8 (Ex. 4); *see also*

Raghavan (Google) Tr. 610:1-8 (Ex. 12).

    **Plaintiff States' Response**: Undisputed that Google Exhibit 4 indicates that one reason that Google launched its specialized units was to provide users with information related to a specific category.  Disputed to the extent that Statement 11 suggests that providing users with information was Google's only motivation for introducing specialized units.  Google also considered introducing specialized units when it determined that the specialized unit had the potential to generate revenue.  Fox (Google) Tr. 280:2-24 (Google Ex. 11).

    12.    As an example, the impetus behind Google's 2002 launch of News, Google's first specialized unit, was the 9/11 terrorist attacks. This innovation was motivated by the difficulty Google users experienced in finding breaking news about the 9/11 terrorist attacks, during which Google's search results mainly displayed results to webpages with general information about the World Trade Center. *Search Through Time*,

https://www.google.com/search/howsearchworks/our-history/ (last accessed Dec. 10, 2022).

    **Plaintiff States' Response**: Undisputed.

    13.    To address this, Google created specialized results that offered a better way to present news to users by, among other things, emphasizing fresh results or a sudden change in information about a topic that might reflect a significant news event. *Search Through Time*, https://www.google.com/search/howsearchworks/our-history/ (last accessed Dec. 10, 2022).

    **Plaintiff States' Response**: Disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited material does not support that specialized results offered "a better way" to present news to users.

14.     In 2007, Google transitioned to "universal search," where it surfaced, in dynamic positions, different specialized units such as videos, images, books, and news, on the same SERP alongside web results and other elements. GOOG-DOJ-09300673 at -696 (Ex. 1); GOOG-DOJ- 03209307 at -310 (Ex. 2); Reid (Google) Decl. ¶ 9 (Ex. 4). Prior to that, specialized units were located in fixed positions on the SERP. Reid (Google) Decl. ¶ 9 (Ex. 4). A key innovation in universal search was that it enabled specialized units to dynamically "float" on the page in positions alongside web results and other elements. Reid (Google) Decl. ¶ 9 (Ex. 4).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence. Undisputed that in 2007 Google transitioned to "universal search" and that Google Exhibit 4 indicates that universal search enabled specialized units to dynamically "float" on the SERP. Disputed to the extent that Statement 14 is suggesting that universal search evaluated the content of a particular SERP features, including the exclusion of SVPs from particular specialized units.


15.     Whether a specialized unit triggers at all, and where it is displayed on a SERP, is algorithmically determined based on many signals, including relevance to the user versus other information that Google has determined may be responsive to the user's query. Google's Resp. to Colo. Pls. 3rd Interrogs. at 14-16 (Ex. 7); *see* Reid (Google) Decl. ¶ 10 (Ex. 4). Other signals include the quality of the data provided. Holden (Google) Tr. 90:9-17 (Ex. 5).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence. Undisputed that whether a specialized unit triggers at all is determined based upon many signals.  Disputed to the extent that Statement 15 suggests that Google's algorithms are

allowed to properly determine the relevance of the results within specialized units.  Google's specific algorithms used to determine the relevance of the results within certain specialized units, such as Google's flights unit, hotels unit, and local search unit, are prohibited from considering the relevance of SVPs in returning unpaid results.  Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Elzinga (Google Expert) Opening Report ¶ 140 (Ex. 30) (indicating that only hotel suppliers can appear in the hotels unit), 187 (indicating that only airlines and not SVPs can appear in the flights unit); Amaldoss Opening Report ¶¶ 133-38 (hotels), ¶¶ 139-43 (flights) (Ex. 5); Spalding (Google) Tr. 122:3-21 (Ex. 169). Therefore, Google's algorithms specific to the contested specialized units are limited by Google's contested business practices.

16.     Google's specialized units present users with structured information about a specific topic. In the case of Google's Weather vertical (first launched in 2006), for example, structured information is in the form of temperature associated with current time, instead of just a weblink to a website about the weather. Reid (Google) Tr. 12:20-13:8 (Ex. 13); GOOG-DOJ-09300673 at -684 (Ex. 1).

**Plaintiff States' Response**: Undisputed.

17.     Presenting structured information to users makes it easier, in certain instances, for users to "glance and understand" the information they seek. Reid (Google) Tr. 12:20-13:8 (Ex. 13).

**Plaintiff States' Response**: Disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that "in the case of weather, you have a set of information like what is the temperature at the current time...[a]nd

presenting it in that way makes it easy for a user to glance and understand." Reid (Google) Tr. 13:4-8 (Google Ex. 13). Disputed as not supported by the cited materials to the extent that Statement 17 is intended to expand beyond structured information in the weather vertical.

18.     Google engineer and Senior Vice President for Search and Ads Prabhakar Raghavan explained that this sort of structured or "packaged" information "enjoys a much better user approval" than just seeing "blue link after blue link after blue link" for certain queries, Raghavan (Google) Tr. 610:1-14 (Ex. 12), and that consistent and extensive user research indicates that when users come to Google with a specific query, in many cases, they prefer to see the answer itself to the query. Raghavan (Google) Tr. 608:1-19 (Ex. 12).

**Plaintiff States' Response**: Undisputed that Statement 18 includes accurate quotes from Google Exhibit 12.

19.     Emily Moxley, Google engineer and former Senior Director of Product Management for Search, testified that Google determined that including specialized units on the SERP in addition to web results satisfies user intent[3] by answering multiple informational needs in one place. Moxley (Google) Tr. 92:15-21, 164:12-23 (Ex. 15).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Emily Moxley testified that she believed that Google created specialized units to satisfies user intent by answering multiple informational needs in one place. Disputed to the extent that Statement 19 ignores that Google also considered introducing specialized units when it determined that the specialized unit had the potential to generate revenue. Fox (Google) Tr.

---

[3] "User intent" refers to the goal or intention of the user when entering a query. Fitzpatrick (Google) Tr. 188:11-18 (Ex. 14).

280:2-24 (Google Ex. 11).  Disputed further because specialized results where Google excludes

SVPs are likely providing lower quality information than if they included SVPs.  Google's web

results (which are ranked by Google's search results algorithm) and its text ads (which are

selected by Google's algorithm that takes into account a prediction of the value of the ad to the

search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).


20.     Certain specialized units link to associated "immersive" pages that provide further

information about that particular topic. Google shows the immersive when the user clicks on

certain aspects of a unit (for instance, a link to display more hotel or flight results), and it is

designed to provide users more information about that particular topic. Moxley (Google) Tr.

79:14-16 (Ex. 15); *see also* Google's 2nd Supp. Resp. to Colo. Pls. 3rd Interrogs. at 2-8 (Ex. 8).

**Plaintiff States' Response**: Undisputed.


21.     Google engineer Emily Moxley testified that Google designs immersive pages

where Google's user research shows that user intents include to browse or search over a corpus

of information about that particular topic. Moxley (Google) Tr. 79:25-80:24 (Ex. 15).

**Plaintiff States' Response**: Undisputed that Statement 21 includes an accurate depiction

of testimony from Google Exhibit 15.


22.     Certain specialized units and immersives may also link to "detail pages" or

"placesheets" containing additional information associated with the vertical, as appropriate, such

as about particular hotels, flight options, local entities, or local service providers. *See* Google's

2nd Supp. Resp. to Colo. Pls. 3rd Interrogs. at 2-8 (Ex. 8).

**Plaintiff States' Response**: Undisputed.

23.     Google continues to develop additional specialized units with the aim of further improving the user experience. GOOG-DOJ-09300673 at -684 (Ex. 1); Moxley (Google) Tr. 15:17-23, 169:17-23 (Ex. 15).

**Plaintiff States' Response**: Disputed as not supported by the cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited exhibits reference Google's historical development of specialized units but does not support that Google "continues" to develop additional specialized units.

24.     Vice President of Search Nick Fox explained that in determining whether to launch a new specialized unit, Google considers, among other factors, the degree of user need around that information category, how well the existing experience is serving users, whether there is potential to better improve the user experience, and revenue potential. Fox (Google) Tr. 280:2-24 (Ex. 11); *see also* Raghavan (Google) Tr. 568:1-569:3 (Ex. 12).

**Plaintiff States' Response**: Undisputed that Statement 24 includes an accurate depiction of testimony from Google Exhibit 11.

25.     Richard Holden, Vice President of Product Management for Travel, testified that Google launched its vacation rentals unit because it saw a "growth in users considering other forms of lodging content" and wanted to "remain relevant to users and offer them information for queries related to vacation rental content." Holden (Google) Tr. 161:8-15 (Ex. 5).

**Plaintiff States' Response**: Disputed as incomplete and contradicted by other evidence.  Undisputed that Statement 25 includes accurate quotes from Google Exhibit 5.

14

Disputed as incomplete and contradicted by other evidence █████████████

███████████████████████████████████████████████████

███████████████████████. Further, Google's Vice President of Search Nick Fox

explained that revenue potential is one factor Google uses to determine whether to launch a

specialized unit.  Fox (Google) Tr. 280:2-24 (Google Ex. 11).  Thus, Google's ability to

potentially monetize its vacation rentals unit and create revenue was an additional reason that

Google launched its vacation rentals unit.


26.     Any time Google introduces a new unit to the SERP, it has to consider myriad

factors like, for example, how to most effectively use limited "real estate" (a user's device

does not provide unlimited space in which to present information) and how to minimize any

additional latency resulting from the unit. Moxley (Google) Decl. ¶ 5 (Ex. 16); Gomes

(Google) Tr. 348:20-349:18 (Ex. 17).

**Plaintiff States' Response**: Disputed as incomplete and contradicted by other

evidence.  Undisputed that Google considers a myriad of factors when introducing a new

specialized unit to the SERP.  Disputed to the extent Statement 26 does not reflect that one

such consideration is Google's ability to generate revenue with the new specialized unit.

Google's Vice President of Search Nick Fox explained that revenue potential is one factor

Google uses to determine whether to launch a specialized unit.  Fox (Google) Tr. 280:2-24

(Google Ex. 11).


27.     Google designs its specialized results and presentation of content to serve user

needs in that specific information category; this may lead to different designs for different

information categories. Moxley (Google) Decl. ¶ 4 (Ex. 16).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that different specialized results appear differently on the SERP.  Disputed in part because Google does not allow SVPs to participate in certain specialized units and Google has cited to no tests supporting the conclusion that users prefer specialized units that do not include SVPs.  Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Elzinga (Google Expert) Opening Report ¶ 140 (Ex. 30) (indicating that only hotel suppliers can appear in the hotels unit), 187 (indicating that only airlines and not SVPs can appear in the flights unit); Amaldoss Opening Report ¶¶ 133-38 (hotels), ¶¶ 139-43 (flights) (Ex. 5); Spalding (Google) Tr. 122:3-21 (Ex. 169).  Specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Thus, it is disputed that Google designs its specialized results and presentation of content to serve user needs in that specific information category.

28.    For example, in 2006, Google started showing live sports scores and schedule information as part of its sports specialized unit alongside web results in response to queries for score information for an ongoing game. Moxley (Google) Tr. 30:2-8 (Ex. 15); GOOG-DOJ-09300673 at -684 (Ex. 1).

**Plaintiff States' Response**: Undisputed.

29.    Similarly, Google determined that showing price and availability information for hotel stays would better satisfy the needs of users searching for hotels than weblinks and

text ads alone. Holden (Google) Decl. ¶ 15 (Ex. 6).

**Plaintiff States' Response**: Disputed in part as not supported by the cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed to the extent Google determined that showing price and availability information, in addition to weblinks and text ads, would better satisfy the needs of users searching for hotels than weblinks and text ads alone.  Disputed in part as not supported by the cited materials to the extent that Statement 29 implies that showing the price and availability information better satisfies the needs of users searching for hotels than weblinks or text ads.  Indeed, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████ ████████████████████████████████████████████████████████████████████.  Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).  As such, there is a material dispute about whether specialized units satisfy users better than weblinks and text ads and whether the prohibition on SVPs appearing in the specialized units advances user satisfaction.

30.     Sources of information for Google's specialized results include third-party data feeds, user and merchant generated content, markups submitted by webmasters,[4] and crawled websites. *See* Fitzpatrick (Google) Tr. 146:8-147:2 (Ex. 14); Moxley (Google) Decl. ¶ 4 (Ex. 16).

  a.  Third-party data feeds refer to structured data (*i.e.*, data that is in a standardized format that allows for easier importation and use) from third parties submitted to Google via a feed-based infrastructure. Moxley (Google) Decl. ¶ 4 (Ex. 16).

  b.  User-generated content refers to content contributed by a Google user directly to

---

[4] A "webmaster" refers to the person(s) responsible for maintaining a website.

Google; for example, providing a photo of a park nearby. *See* Moxley (Google) Tr. 73:13-18 (Ex. 15).

    **c.** Merchant-generated content refers to content submitted by businesses directly to Google via Business Profile (formerly known as Google My Business); for example, a restaurant could update its hours or delivery information. Fitzpatrick (Google) Tr. 45:12-23 (Ex. 14).

    **d.** Markups refer to information submitted by webmasters via schema.org, which creates structured information on a webpage that can be identified by search engines for display including in certain specialized results. *See* Moxley (Google) Tr. 81:11-16 (Ex. 15).

    **e.** Crawled websites refer to websites that Google's crawler had "crawled" for possible use in Google's index. Fitzpatrick (Google) Tr. 145:6-16 (Ex. 14).

    **Plaintiff States' Response**: Undisputed that Statement 30 describes the ways that Google sources information for its specialized results, including from data feeds from third parties, including SVPs.


    **31.** Google has developed specific algorithms to determine the relevance of the results within a specialized unit. Google's Resp. to Colo. Pls. 3rd Interrogs. at 14-16 (Ex. 7); Moxley (Decl. ¶ 6 (Ex. 16).

    **Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Google has developed specific algorithms to rank results within a specialized unit.  Disputed in part because Google's specific algorithms used to determine the relevance of the results within certain specialized units, such as Google's flights unit, hotels unit, and local

search unit, are subject to Google's prohibition against SVPs appearing directly in the specialized unit.  Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Elzinga (Google Expert) Opening Report ¶ 140 (Ex. 30) (indicating that only hotel suppliers can appear in the hotels unit), 187 (indicating that only airlines and not SVPs can appear in the flights unit); Amaldoss Opening Report ¶¶ 133-38 (hotels), ¶¶ 139-43 (flights) (Ex. 5); Spalding (Google) Tr. 122:3-21 (Ex. 169).  Therefore, Google's algorithms specific to the contested specialized units are limited by Google's contested business practices.

Further, Google has avoided testing the effect of limiting the ability of SVPs to appear in specialized units.  Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts throughout its Statement of Undisputed Facts.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

**32.**     Some of Google's specialized units contain advertising products where Google has determined a specialized advertising format would be useful to users and advertisers. *See, e.g.*, Spalding (Google) Tr. 18:12-15; 104:7-16 (Ex. 18) (describing Local Services Ads); Holden (Google) Decl. ¶ 17 (Ex. 6) (Hotel Ads); Reid (Google) Decl. ¶ 18 (Ex. 4) (Local Search Ads).

**Plaintiff States' Response**: Undisputed that the statement is accurate; disputed to the

extent that Google does not recognize its own financial interests are served by the sale of additional ads.

### C.     Google's Evaluation and Launch Process

33.     Google strives to continue to improve upon its SERP. Google engineer and former Senior Vice President of Geo Jen Fitzpatrick explained that "Google search is under constant need to evolve and improve" in response to "changing user expectations, changing nature of what's possible with technology, changing . . . behavior and capabilities." Fitzpatrick (Google) Tr. 84:13-22 (Ex. 14).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Statement 33 includes accurate quotes from Google Exhibit 14. Disputed in part because Google has avoided testing the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1).

34.     Google engineer Jen Fitzpatrick explained that Google "absolutely need[s] to keep innovating in Search, and that's something we work very, very hard to do all the time." Fitzpatrick (Google) Tr. 84:13-85:4 (Ex. 14).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence.

Undisputed that the quoted language from Google's engineer is accurate.  Disputed that the

need to innovate is as great as it would be in a competitive market.  Baker (Plaintiff States) Tr.

251:2-21 (Ex. 200).

35.     Google engineer and Vice President of Search Elizabeth Reid explained that

when Google builds products, it tries to make sure that its products will serve users. Reid

(Google) Tr. 260:2-9 (Ex. 13); GOOG-DOJ-09300673 at -684 (Ex. 1).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence.

Undisputed that Google engineer and Vice President of Search Elizabeth Reid testified that

"[w]hen we build product experiences, we are trying to actually make sure we are helping

users."  Disputed in part because evidence exists to support that specialized results where

Google excludes SVPs are likely providing lower quality information than if they included

SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its

text ads (which are selected by Google's algorithm that takes into account a prediction of the

value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 &

29 (Ex. 1).

36.    Before launching a change Google analyzes whether the potential launch will,

based on Google's metrics, improve the search experience for Google's users. GOOG-DOJ-

09300673 at -686 (Ex. 1); GOOG-DOJ-29791115 at -116 (Ex. 19); Nayak (Google) Tr.

34:18- 35:8 (Ex. 20).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and

immaterial.  Undisputed that Google analyzes potential launches based upon its own

metrics.  Disputed in part because Google has avoided testing the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 36. Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Further disputed as immaterial.  Plaintiff States have not challenged Google's inclusion of specialized units on the SERP.  Plaintiff States challenge Google's decision to prohibit SVPs from appearing in certain specialized units.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in those units.  To the extent Google has tested users' satisfaction with launches not impacted by the challenged conduct is immaterial to Plaintiff States' claims.

**37.**   Google employs over 10,000 human Search Quality Raters. Nayak (Google) Tr. 130:9-12 (Ex. 20).

**Plaintiff States' Response**: Undisputed.

**38.**   In 2021 alone, Google conducted over 750,000 search quality tests, 72,000 side-by-side experiments, 11,000 live traffic experiments, and 4,300 launches. *See Improving Search with rigorous testing*, https://www.google.com/search/howsearchworks/how-search-works/rigorous-testing/ (last accessed Dec. 10, 2022) (Ex. 21).

**Plaintiff States' Response**: Undisputed that Google conducted over 750,000 search quality tests, 72,000 side-by-side experiments, 11,000 live traffic experiments, and 4,300 launches in 2021.  In performing these tests, experiments, and launches, Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in certain specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 38.

39.    Google evaluates a potential launch using both qualitative and quantitative inputs including (as appropriate and relevant to the launch) feedback from external Search Quality Raters, live user tests, and traffic analyses. GOOG-DOJ-09300673 at -686 (Ex. 1); GOOG-DOJ- 29791115 at -116 (Ex. 19).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Google uses both qualitative and quantitative inputs of some kind to evaluate a potential launch.  Disputed, however, to the extent Statement 39 means that Google has tested the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 39.

Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad

to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

40.    For example, Google will send side-by-side comparisons of the existing results and the results with the proposed launch to its external Search Quality Raters. GOOG-DOJ-09300673 at -686 (Ex. 1); Nayak (Google) Tr: 52:1-23, 136:10-138:9 (Ex. 20).

**Plaintiff States' Response**: Disputed in part as not supported by the cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that Google will send side-by-side comparisons of existing results and the results of a proposed launch to its external Search Quality Raters.  For example, a side-by-side that compares a SERP with a universal next to a SERP for the same search without a universal. Disputed in part as not supported by the cited materials because Google has offered no evidence that it tests a side-by-side of a SERP feature that includes SVPs on one side and excludes SVPs on the other.  In other words, Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 40.

41.    The Search Quality Raters evaluate the results according to Google's search quality rater guidelines. GOOG-DOJ-09300673 at -688 (Ex. 1); GOOG- DOJ-17681606 (Ex. 22); Nayak (Google) Tr. 128:6-129:4 (Ex. 20).

**Plaintiff States' Response**: Disputed in part as not supported by the cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that Google's Search Quality Raters evaluate the results of launches according to Google's

search quality rater guidelines.  Disputed in part as not supported by the cited materials to

the extent that Statement 41 implies that guidelines instruct a rater to consider the impact of

the presence or absence of an SVP in a SERP feature.


42.    Search Quality Raters evaluate changes to Google's search results in the

context of the other results on the page and are instructed by Google that "the most

important consideration is how helpful each result set is *as a whole*." GOOG-DOJ-

17681606 at -609 (Ex. 22) (emphasis added).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence.

Undisputed that Search Quality Raters evaluate changes to Google's search results in the

context of the other results on the page and that Statement 42 includes an accurate quote

from Exhibit 22.  Disputed in part because Google has presented no evidence that the

challenged visibility limitations imposed upon specialized units were subject to the

ordinary-course testing and review process of which it boasts generally and in Statement 42.

Evidence exists, however, to support that specialized results where Google excludes SVPs

are likely providing lower quality information than if they included SVPs.  Google's web

results (which are ranked by Google's search results algorithm) and its text ads (which are

selected by Google's algorithm that takes into account a prediction of the value of the ad to

the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).


43.    Google further instructs its Search Quality Raters, among other things, that

"[u]sers should find what they are looking for" and "[u]sers should get the best results in the

most helpful order." Google further instructs about the importance of the SERP providing

users with a "Diversity of results": "[t]he results in the set should work together to address

different aspects of query interpretation/user intent and provide a helpful collection of resources for users," while true duplicate results "may be useless" and near duplicates "may or may not add value." GOOG-DOJ-17681606 at -609, -610 (Ex. 22).

**Plaintiff States' Response**: Undisputed that Statement 43 includes accurate quotes from Google Exhibit 22.

44.    The Search Quality Raters provide feedback on Google's search results by assigning ratings or scores to the results. Nayak (Google) Tr. 139:13-140:3 (Ex. 20); GOOG- DOJ-17681606 (Ex. 22).

**Plaintiff States' Response**: Undisputed that Search Quality Raters provide feedback.  Disputed in part as not supported by the cited materials to the extent that Statement 44 suggests that Search Quality Raters evaluate the effect of limiting the ability of SVPs to be visible in specialized units.

45.    Another way in which Google evaluates whether to implement a change to its search results is live user tests, whereby Google sends search results that include the change to a fraction of its existing users and evaluates how those changes perform with those users. GOOG-DOJ-09300673 at -686 (Ex. 1); Nayak (Google) Tr. 136:25-138:17 (Ex. 20).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Google utilizes live user tests to evaluate whether to implement a change to its search results.  Disputed in part because Google has avoided testing the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 45.

Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs. Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1).

46.    Google aggregates the feedback from Search Quality Raters and user testing (as applicable) in a launch report. Nayak (Google) Tr. 136:25-138:17 (Ex. 20); *see*, *e.g.*, GOOG- DOJ-00515037 (Ex. 23) (example of a launch report); *see also* GOOG-DOJ-29791115 at -116 (Ex. 19).

**Plaintiff States' Response**: Undisputed that Google aggregates feedback in a launch report. A launch report, however, is limited to evaluating specific launches and thus cannot consider whether a different display of content in a launch feature would perform more favorably than the version that was launched. *see*, *e.g.*, GOOG- DOJ-00515037 (Google Ex. 23) (example of a launch report); *see also* GOOG-DOJ-29791115 at -116 (Google Ex. 19).

47.    Key metrics Google uses for launches, including for new specialized units, include metrics indicating an improved whole-page experience, such as how users interact with the entire results page as well as individual parts of the page. GOOG-DOJ-29791115 at -126, -142 (Ex. 19); Reid (Google) Decl. ¶ 11 (Ex. 4); Moxley Decl. ¶ 8 (Ex. 16); *see also* Reid (Google) Tr. 144:18-145:2 (Ex. 13).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Google considers certain key metrics when evaluating launches. Disputed

to the extent that Statement 47 indicates a complete list of metrics considered.  Indeed, Google's Vice President of Search Nick Fox explained that revenue potential is one factor Google uses to determine whether to launch a vertical unit.  Fox (Google) Tr. 280:2-24 (Google Ex. 11).

Further, Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units. Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 47.  Thus, without testing challenged conduct material to this case, Google's ability to evaluate whether the whole-page experience is improved for a user is incomplete.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

It is further disputed that users actually find Google's specialized units where SVPs are prohibited from participating as useful.  Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ████████████████████████████████ ████████████████████████████████████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2) ████████████████████████████████████████ ████████████████████████████.

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

48.    Google has a Launch Committee that is responsible for approving launches.
The Launch Committee includes engineer, Google Fellow and Vice President of Search
Pandu Nayak, the lead of Google's ranking team, and other Google search engineers. Nayak
(Google) Tr. 33:25-35:8 (Ex. 20).

**Plaintiff States' Response**: Undisputed.

49.    Google's Launch Committee reviews the results of Google's quality tests in
light of Google engineers' experience in evaluating search quality, and decides whether to
launch the change. Nayak (Google) Tr. 33:25-35:8, 136:10-138:24 (Ex. 20).

**Plaintiff States' Response**: Disputed in part as not supported by the cited materials
as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed
that Google's Launch Committee reviews the results of Google's quality tests.  Disputed in
part as not supported by the cited materials to the extent Statement 49 is meant to imply that
Google's Launch Committee has reviewed quality tests regarding Google's decision to
exclude SVPs from specialized units. Google has conspicuously avoided testing the
challenged conduct material to this case – the effect of limiting the ability of SVPs to be
visible in specialized units.  Google has presented no evidence that the challenged visibility
limitation imposed upon specialized units were presented to the launch committee.

50.    As part of the launch process, the team advocating for the launch must "prove

that [the launch] actually is beneficial to our users in some way." Nayak (Google) Tr. 34:18-24 (Ex. 20). As a Google "How Search Works" presentation put it, "[u]nless we can show a change is actually better for users, we don't launch it." GOOG-DOJ-09300673 at -687 (Ex. 1).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Statement 50 accurately quotes from Google Exhibits 1 and 20.  Disputed in part because Google has avoided testing the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to any launch evaluation.

Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

████████████████████████████████████████████████████████

████████████████.  Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).  Evidence also supports that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

51.   Google measures whether its launches lead to growth in Google Search

usership. GOOG-DOJ-29791115 at -135 (Ex. 19). Google's analyses have "confirmed good

correlation between user experience and growth." *Id.*; *see also id.* at -133-34.

**Plaintiff States' Response**: Undisputed that Statement 51 accurately includes

quotes from Google Exhibit 19. However, Google has presented no evidence that the

company has evaluated the effect of limiting the ability of SVPs to be visible in Google's

specialized units. ███████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████. GOOG-DOJ-29791115 at -133

(Google Ex. 19).


52.   After a launch, Google often conducts tests and surveys to understand how

helpful its users find the change. Moxley (Google) Tr. 118:6-25 (Ex. 15).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence.

Undisputed that Google conducts tests and surveys to understand how users view a given

change made to its SERP. Disputed in part because Google has avoided testing the effect of

limiting the ability of SVPs to be visible in Google's specialized units. Google has

presented no evidence that the challenged visibility limitation imposed upon specialized

units were subject to the ordinary-course testing and review process of which it boasts

generally and in Statement 52.

Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

████████████████████████████████████████████████████

█████████████. Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2). Evidence also

supports that specialized results where Google excludes SVPs are likely providing lower

quality information than if they included SVPs. Google's web results (which are ranked by

Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

**53.**    One type of test Google uses is called an "ablation study," in which Google turns off or removes a feature from its search results in order to measure the difference in quality between its search results with that feature and its search results without it. *See* Nayak (Google) Tr. 175:18-176:1 (Ex. 20).

**<u>Plaintiff States' Response</u>**: Disputed in part as not supported by the cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that Google uses ablation studies to measure the difference in quality between its search results and certain proposed changes.  Disputed in part as not supported by the cited materials to the extent Statement 53 implies Google's ablation studies have tested the presence or absence of an SVP in a SERP feature. Google has conspicuously avoided using ablation studies to measure the quality between search results including SVPs in specialized units and the quality of results limiting the ability of SVPs to be visible in specialized units. Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 53.

**54.**     Google uses the results of the user tests and ablation studies to assess how a change affects the user experience. Moxley Decl. ¶ 10 (Ex. 16).

**<u>Plaintiff States' Response</u>**: Undisputed, however, the value of any user tests and studies are limited to the choices they examine, and Google has proffered no evidence that the presence or absence of SVPs in specialized units was part of any such study or test.

## II.     Challenged Specialized Search Results Designs

### A.     Hotels

**55.**     When Google's algorithms detect, based on the user's query, that the user is looking for information about hotels, Google may serve a SERP containing a hotels unit, among other SERP elements (such as text advertisements and web results). *See* Para. 56 (image of hotels unit); Holden (Google) Decl. ¶ 8 (Ex. 6).

**<u>Plaintiff States' Response</u>**: Undisputed.

56.     The design of the SERP may vary depending on the query, but the hotels unit

depicted below is typical like "hotels in" a location, from a desktop computer.[5]Holden (Google)

Decl. ¶ 9 (Ex. 6).

**Plaintiff States' Response**: Undisputed.



57.     For such hotel-related queries, the web results, as well as the text advertisements

(if any), on the SERP may include SVPs. Holden (Google) Decl. ¶ 10 (Ex. 6).

**Plaintiff States' Response**: Disputed as incomplete and misleading.  Undisputed that

SVPs may appear in text advertisements and web results served in response to hotel-related

queries.  Disputed as incomplete as Google prohibits SVPs from appearing in its hotels unit.

Google does not permit SVPs to appear in the hotels unit. *See* Baker Opening Report ¶ 279 (Ex.

1); Baker Rebuttal Report ¶ 19 (Ex. 2); Amaldoss Opening Report § VI.D.2.b.i. (hotels) (Ex. 5);

*see* Elzinga (Google Expert) Opening Report ¶ 140 (Ex. 30) (indicating that only hotel suppliers

can appear in the hotels unit). As such, if SVPs want to maintain prominent placement on

---

[5] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BA.1.f (Ex. 9) for image of hotels unit on a mobile device.

Google's SERP, they are forced to purchase additional text ads from Google.  Baker Opening Report ¶ 332 (Ex. 1) (explaining that SVPs as advertisers can respond to the demotion of the web results by "purchasing search advertising.").

58.	Google's design of the hotels unit like the one pictured above provides users with near-instantaneous structured information about hotels, including:

- a.	A map of hotel properties in the specified location

- b.	A list of up to four hotel properties as determined by Google's algorithms;

- c.	An image, price, star rating, and other information about the hotel property that correspond to the dates; and

- d.	Options to refine the search (dates, "top rated," "budget," etc.) and links to Google's hotels immersive, where users can find further information and refine their hotel search.

Holden (Google Decl. ¶ 11 (Ex. 6).

**Plaintiff States' Response**: Disputed as incomplete.  It is undisputed that Google's hotel unit can provide users with the structured information about hotels identified in Statement 58.  However, Statement 58 fails to indicate that SVPs provide Google much of the structured data used in its hotels unit, including, hotel prices, availability, booking links, reviews and photos, and other hotel information.  *See* Elzinga (Google Expert) Rebuttal Report, Ex. 5 (Ex. 214); Google's Third Supplemental Responses to Plaintiffs' November 1, 2021 Notice of Deposition, Topic 9(c) (Ex. 222).  And for certain information, like hotel prices in the hotel unit, Google fails to show attribution to the SVP providing the data.  *Id.*

### 1.    Origin and Evolution

**59.**     Google began developing hotel search results using structured data in approximately 2009, GOOG-DOJ-16094322 at -323 (Ex. 24), and launched an early version of its hotels unit, then known as Hotel Finder, in 2011. GOOG-DOJ-25917044 at -044 (Ex. 25); Holden (Google) Decl. ¶ 17 (Ex. 6).

<u>**Plaintiff States' Response**</u>: Undisputed.

**60.**     Google determined that it could provide a better search experience to users than only displaying text ads, web results, and the limited information about hotels available in the local unit[6]-- from which users would need to further search for hotel availability and pricing. Holden (Google) Tr. 41:15-42:8 (Ex. 5); GOOG-DOJ-25917044 at -044 (Ex. 25); GOOG-DOJ-16094322 at -325 (Ex. 24).

<u>**Plaintiff States' Response**</u>: Disputed in part as contradicted by other evidence. Undisputed that Google was only displaying text ads, web results and limited information about hotels in the local unit.  Disputed because Google also determined that it needed to develop vertical offerings to avoid continuing to lose queries and risk becoming irrelevant.  ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████.  Further disputed to the extent Statement 60 ignores that Google considered its ability to monetize verticals once developed.  *See* GOOG-DOJ-25917044 at -044 (Google Ex. 25).

---

[6] The local unit is described below in Part II.C, Paragraphs 130-134, 157-162.

61.     In 2009, Google recognized that "[u]ser needs [were] not being met," and that there was "[n]o current solution." GOOG-DOJ-16094322 at -348 (Ex. 24). Google observed that it "takes 25-50 websites to do research for one vacation," and Google was "add[ing] little value" because on Google at that time, users were just "search[ing] for a place to search." *Id.*

**Plaintiff States' Response**: Disputed in part as contracted by other evidence. Undisputed that the quoted material is cited correctly and that Google' local unit was adding little value to a user's search for a vacation.  It is disputed that a user would need to visit 25-50 websites to do research for one vacation.  SVPs allow users learn about and select products or services provided by multiple sellers, and have relationships with those sellers that allow them to benefit financially when users make purchases, get quotes, make reservations, or otherwise engage in transactions with the SVP.  Baker Opening Expert Report ¶ 12 (Ex. 1); Baker (Plaintiff States) Tr. 31:1-12 (Ex. 200).  Many SVPs focused on travel existed in 2009 and allowed its users to compare vacation options.  *See e.g.,* https://www.expediagroup.com/who-we-are/our-story/default.aspx#module-tabs_item--1 (Ex. 238) ("Expedia.com debuts on web in 1996 as one of the first online travel agencies:

Microsoft Expedia Travel Services").


62.     Google thus recognized there was "lots of space for innovation" for travel search, and that it could "transform the travel experience" with user benefits including "[i]mprovements in speed" and "[i]mproved user experience." GOOG-DOJ-16094322 at -326, -333 (Ex. 24).

**Plaintiff States' Response**: Undisputed that Statement 62 contains accurate quotes from Google Exhibit 24.

63.     In developing its hotels unit and immersive, Google confronted the engineering

challenge of data "fragmentation," and sought to "build out a caching layer that intelligently

pre-computes all the various permutations [of hotel stays], and make all of this queryable at

Google speed." GOOG-DOJ-04353653 at -354 (Ex. 26).

**Plaintiff States' Response**: Disputed in part as immaterial.  Undisputed that Statement

63 contains accurate quotes from Google Exhibit 26.  Disputed as immaterial as Plaintiff States

have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the

inclusion of the hotels unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge

Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no

evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or

not.


64.     In 2011, as part of the early development of Google's hotels unit, Google

introduced the ability to provide users hotel prices in its local unit.  Google's analyses

demonstrated that 65.7% of users found the prices in the local unit "very useful" and an

additional 28.5% of users found them "somewhat useful."  GOOG-DOJ-00298158 at -158 (Ex.

27).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and

immaterial.  Disputed in part because Google prohibits SVPs from appearing in its hotels unit.

*See* Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Amaldoss

Opening Report § VI.D.2.b.i. (hotels) (Ex. 5); Elzinga (Google Expert) Opening Report ¶ 140

(Ex. 30) (indicating that only hotel suppliers can appear in the hotels unit).  Google has avoided

testing the effect of limiting the ability of SVPs to be visible in specialized units.  Google has

presented no evidence that the challenged visibility limitations imposed upon specialized units

were subject to the ordinary-course testing and review process of which it boasts generally.

Evidence exists, however, to support that specialized results where Google excludes SVPs are

likely providing lower quality information than if they included SVPs.  Google's web results

(which are ranked by Google's search results algorithm) and its text ads (which are selected by

Google's algorithm that takes into account a prediction of the value of the ad to the search user)

often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Further disputed as immaterial, Plaintiff States have not challenged the creation of the

hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.

Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from

appearing in the hotels unit.  Google has offered no evidence that it tested whether users would

prefer the inclusion of SVPs in the hotels unit or not.

65.     Members of the Google Travel team observed in 2011 that "[h]otel searchers tend

to care about some set of attributes (location, class/stars, certain amenities, etc) and the search

process is about trading off those prioritized attributes against cost."  GOOG-DOJ-04353653

at -657 (Ex. 26).

**Plaintiff States' Response**: Undisputed that Statement 65 contains accurate quotes from

Google Exhibit 26.

66.     Google also recognized that it could offer users a better advertising format for

hotel search. Holden (Google) Decl. ¶ 17 (Ex. 6). Accordingly, later in 2011, Google launched

an early form of Hotel Ads, which enabled advertisers to display a hotel room with specific

dates and pricing in response to a user search, allowing the user to make a purchase decision

more quickly. *Id.*

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that Google launched an early form of Hotel Ads in 2011, which enabled advertisers to display a hotel room with specific dates and pricing in response to a user search. Disputed in part because Google prohibits SVPs from appearing or purchasing ads in its hotels unit. *See* Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Amaldoss Opening Report § VI.D.2.b.i. (hotels) (Ex. 5); Elzinga (Google Expert) Opening Report ¶ 140 (Ex. 30) (indicating that only hotel suppliers can appear in the hotels unit). Google has avoided testing the effect of limiting the ability of SVPs to be visible in specialized units. Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally. Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs. Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1).

67.     In 2013, Hotel Finder was launched on mobile devices, after Google's analyses reflected that its "[w]hole page and ad click quality metrics show a significant improvement compared to [the] control." GOOG-DOJ-24656522 at -525 (Ex. 28).

**Plaintiff States' Response**: Disputed in part as immaterial. Undisputed that Google launched Hotel Finder on mobile devices in 2013. Further, undisputed that Statement 67 includes accurate quotes from Google Exhibit 28. Disputed as immaterial as Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP. Google MSJ at 16. Instead, Plaintiff States challenge

Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

68.     In 2014, Google replaced Hotel Finder with Rich List. GOOG-DOJ-30117105 at -106 (Ex. 29). Rich List introduced the hotel search user interfaces that exist today (the hotels unit, immersive, and detail pages), then referred to as the "3-pack," "full list," and "item view." GOOG-DOJ-30117105 at -107 (Ex. 29). Contemporaneous documents reflect that Rich List "solves major SERP pain points," including "[d]uplication" on the SERP. GOOG-DOJ-30117105 at -106 (Ex. 29). At launch, Google viewed Rich List as "bring[ing] together [the] best of existing products," GOOG-DOJ-30117105 at -107 (Ex. 29), and observed that "[k]ey metrics look good." GOOG-DOJ-30117105 at -108 (Ex. 29).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Statement 68 includes accurate quotes from Google Exhibit 29. Disputed in part as contradicted by other evidence because specialized units where Google excludes SVPs are likely providing lower quality information than if they included SVPs. Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex.

1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found



███████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2) ████████████

████████████████████████████████████████████████████████.

        Also disputed as evidence from Google's testing of immersives and similar features

supports that users prefer the inclusion of SVPs.  ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

███████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

        Further disputed as immaterial, Plaintiff States have not challenged the creation of the

hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.

Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from

appearing in the hotels unit.  Google has offered no evidence that it tested whether users would

prefer the inclusion of SVPs in the hotels unit or not.


        **69.**    In early 2015, Google analyses of the user feedback for this new Rich List hotels

unit interface showed "[o]verall very positive feedback![,]" particularly with respect to the

"[a]bility to see/interact with the map in tandem with the details of a selected hotel and

switching to a different hotel very easily." GOOG-DOJ-27641523 at -538 (Ex. 30).

        <u>**Plaintiff States' Response**</u>: Disputed in part as contradicted by other evidence and as

immaterial.  Undisputed that Statement 69 includes accurate quotes from Google Exhibit 30.

Disputed in part because specialized units where Google excludes SVPS are likely providing

lower quality information than if they included SVPs.  Google's web results (which are ranked

by Google's search results algorithm) and its text ads (which are selected by Google's algorithm

that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ████████████████████ ████████████████████████████████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2) ████████████████████████████████ ████████████████████████.

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ████████████████████████ ████████████████████████████████████████ ████████████████████████████████ ████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Disputed as immaterial, Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

70.     Prior to launching the hotels unit, Google conducted quality testing to evaluate whether the hotels unit would improve user experience. Holden (Google) Decl. ¶ 5 (Ex. 6).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Google conducted certain quality testing prior to launching the hotels unit.  Disputed in part because Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation

imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 70.  Evidence exists, however that specialized units excluding SVPs from participating, like Google's hotels unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ████████████████████████ ██████████████████████████████████████████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2) ████████████████████████████████████████ ██████████████████████████.

Also, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████ ████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial, Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP. Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

**71.**     Google's analyses confirmed that the hotels unit benefitted users by improving the user experience on the SERP. Holden (Google) Decl. ¶ 5 (Ex. 6).

**Plaintiff States' Response**:  Disputed as contradicted by other evidence and immaterial. Disputed because evidence exists showing that specialized units excluding SVPs from participating, like Google's hotels unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████████████████████████████ ████████████████████████████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2) ████████████████████████████████████████████ ████████████████.

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ███████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████ ██████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP. Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

**72.**      Google's hotels unit now enables Google users to search for hotels, including for a specific date range if desired, across thousands of destinations, and obtain pricing and

availability information nearly instantaneously. Holden (Google) Decl. ¶ 15 (Ex. 6).

**Plaintiff States' Response**: Disputed in part as incomplete.  Undisputed that Google allows users to search for hotels in a manner described in Statement 72.  However, disputed in part as incomplete because Statement 72 fails to indicate that SVPs provide Google some of the structured data used in its hotels unit, including, hotel prices, availability, booking links, reviews and photos, and other hotel information.  *See* Elzinga (Google Expert) Rebuttal Report Ex. 5 (Ex. 214); Google's Third Supplemental Responses to Plaintiffs' November 1, 2021 Notice of Deposition, Topic 9(c) (Ex. 222).  And for certain information, like hotel prices in the hotel unit, Google fails to show attribution to the SVP providing the data.  *Id.*


73.    Google has launched many improvements over the years to its hotels unit and immersive based on the results of user testing. Holden (Google) Decl. ¶ 15 (Ex. 6).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and immaterial.  Undisputed that Google has made many changes to its hotels unit and immersive. Disputed in part because Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units. Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 73.  Evidence exists, however, supporting that specialized units, like Google's hotels unit, where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1).



Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

██████████████████████████████████████████████████████

█████████████. Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2)████████████

██████████████████████████████████████████████████████.

Further disputed as evidence from Google's testing of immersives and similar features

supports that users prefer the inclusion of SVPs. ████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

█████████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the

hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.

Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from

appearing in the hotels unit.  Google has offered no evidence that it tested whether users would

prefer the inclusion of SVPs in the hotels unit or not.

74.     For example, in 2017, Google introduced a project referred to as "Mayflower," a

redesign of the hotels unit and immersive to provide a richer experience for users, "driven by

extensive user research and requirements gathering." GOOG-DOJ-04471923 at -924 (Ex. 31);

Holden (Google) Tr. 80:8-21 (Ex. 5); Holden (Google) Decl. ¶ 19 (Ex. 6). "Plymouth" was the

accompanying change that improved the technical infrastructure underlying the hotel search

experience design, including the engineering capability to cluster data relating to a single hotel

(i.e., to group price, availability, and booking information from multiple sources like SVPs and

hoteliers to a single hotel). GOOG-DOJ-04471923 at -925-26 (Ex. 31).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and as

immaterial.  Undisputed that Google introduced projects called "Mayflower" and "Plymouth" in

2017.  Also undisputed that Statement 74 includes accurate quotes from Google Exhibit 31.

Disputed in part because Google has conspicuously avoided testing the challenged conduct

material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.

Google has presented no evidence that the challenged visibility limitation imposed upon

specialized units were subject to the ordinary-course testing and review process of which it

boasts generally and in Statement 74.  Evidence exists, however, supporting that specialized

units, like Google's hotels unit, where Google excludes SVPs are likely providing lower quality

information than if they included SVPs.  Google's web results (which are ranked by Google's

search results algorithm) and its text ads (which are selected by Google's algorithm that takes

into account a prediction of the value of the ad to the search user) often rank SVPs highly.

Baker Opening Report Table 28 & 29 (Ex. 1).

Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis

and found 

. Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2)

. Also disputed as evidence from Google's testing of immersives and similar

features supports that users prefer the inclusion of SVPs.

. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial, Plaintiff States have not challenged the creation of the

hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.

Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from

appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

     **75.**     Google surveyed its travel users in 2020 and found that ██ of users on desktop and ██ on mobile were "very/somewhat satisfied" with the "Mayflower Immersive."  GOOG-DOJ-20745877 at -892 (Ex. 32).

     **Plaintiff States' Response**:  Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Statement 75 contain accurate quotes from Google Exhibit 32.  Disputed in part because evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ██████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

     **76.**     A Google Travel Strategy 2020 document described the launches of Plymouth and Mayflower as putting Google "well down the path of building an excellent hotel search product." GOOG-DOJ-25917044 at -045 (Ex. 25).

     **Plaintiff States' Response**: Disputed in part as immaterial.  Undisputed that Statement 76 accurately quotes Google Exhibit 25.  Disputed as immaterial as Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

77.     Another recent improvement to Google's hotel results was the 2021 launch of Hotel Unpaid Booking Links (HUBL), which included unpaid booking links to SVPs and hotels on the hotel detail page (i.e., booking links for which Google receives no payment, sometimes also referred to as "free booking links").  Google launched this change "out of the recognition that the current booking module experience could be improved to provide more comprehensive hotel booking information to users." GOOG-DOJ-20739516 at -519 (Ex. 33). Prior to the HUBL launch, Google had offered only paid booking links in the form of Hotel Ads. Holden (Google) Tr. 222:24-223:12 (Ex. 5); Holden (Google) Decl. ¶ 20 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

78.     Google user-tested various designs for HUBL prior to launch to determine how best to display its new unpaid booking links and what information to include (e.g., price). GOOG-DOJ-20739516 at -516-49 (Ex. 33).

**Plaintiff States' Response**: Undisputed.

79.     Google's user testing showed, among other things, that the HUBL change led to a ▮▮▮ increase in "very satisfied users" on desktop.  GOOG-DOJ-22645229 at -236 (Ex. 34). Google's analyses also showed that the HUBL launch resulted in ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  GOOG-DOJ-22645229 at -236 (Ex. 34).

**Plaintiff States' Response**: Undisputed.

80.     Google continues to evaluate whether users are finding value in travel search results, Holden (Google) Tr. 32:23-33:16 (Ex. 5), including through user feedback, Holden

(Google) Tr. 57:5-8 (Ex. 5) ("We get feedback from consumers all the time across various services about what the user flow is. Some of it is qualitative; some of it is quantitative.").

**Plaintiff States' Response**:  Disputed as immaterial. Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

81.     For example, Google has conducted multiple ablation studies to measure quality improvements to its hotels unit and immersive, including analyzing the usefulness of displaying diverse booking links, displaying price information, and including hotel suppliers alongside SVPs. *E.g.*, GOOG-DOJ-20745036 (Ex. 35); GOOG-DOJ-29801589 (Ex. 36).

**Plaintiff States' Response**: Disputed as incomplete and immaterial.  Undisputed that Google has conducted multiple ablation studies to evaluate perceived improvements to its hotels unit and immersive.  Disputed as incomplete as Google has avoided conducting ablation studies to evaluate the effect of limiting the ability of SVPs to be visible in specialized units. Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 81.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Also, Plaintiff States' expert, Jonathan Baker, performed an empirical

analysis and found ████████████████████████████████████████

██████████████████████. Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2)

████████████████████████████████████████████████████████

████████.

Further disputed as immaterial. Plaintiff States have not challenged Google's inclusion

of specialized units on the SERP.  Plaintiff States challenge Google's decision to prohibit SVPs

from appearing in certain specialized units.  Google has offered no evidence that it tested

whether users would prefer the inclusion of SVPs in those units.  To the extent Google has

tested users' satisfaction with launches not impacted by the challenged conduct is immaterial to

Plaintiff States' claims.


**82.**     Google has also conducted surveys to measure its users' satisfaction with its

hotel and travel search results. *E.g.*, GOOG-DOJ-20745877 (Ex. 32); GOOG-DOJ-04474464 at

-492- 510 (Ex. 37).

**Plaintiff States' Response**:  Disputed in part as contradicted by other evidence and

immaterial.  Undisputed that Google has conducted some surveys to measure users' satisfaction

with its hotel and travel search results.  Disputed in part because Google has conspicuously

avoided testing the challenged conduct material to this case – the effect of limiting the ability of

SVPs to be visible in specialized units.  Google has presented no evidence that the challenged

visibility limitation imposed upon specialized units were subject to the ordinary-course testing

and review process of which it boasts generally and in Statement 82.  Evidence exists, however,

supporting that specialized units, like Google's hotels unit, where Google excludes SVPs are

likely providing lower quality information than if they included SVPs.  Google's web results

(which are ranked by Google's search results algorithm) and its text ads (which are selected by

Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████████████████████████████████████████████████ ████████████████████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2) ████████████████████████████████████████████████████ ████████████.  Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  █████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the hotels unit. Google Exhibits 32 and 37 do report results on whether users would prefer the inclusion of SVPs in the hotels unit or not.  Indeed, Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

83.      Google's analyses show that users are generally satisfied with its hotel search results. For example, a 2016 "Hotel Happiness Tracking Survey" shows that most users were either very satisfied or somewhat satisfied with their hotel search experience on Google. GOOG-DOJ-20742777 at -788, -796, -807 (Ex. 38). Google also surveyed its travel users in 2020 and found that ████ of users on desktop and ████ of users on mobile were

"very/somewhat satisfied" with the Hotels Placesheet.[7] GOOG-DOJ-20745877 at -881 (Ex. 32).

**Plaintiff States' Response:** Disputed in part as contrary to other evidence and as immaterial.  Undisputed that Statement 83 includes accurate quotes from Google Exhibits 32 and 38.  Disputed in part because Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████████████████████████████████████ ██████████████████████████████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2)████████████████████████████████████████████ ████████████████.  Further, specialized units where Google excludes SVPS are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████ ████████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial as Plaintiff States have not challenged the creation of the hotels unit, nor have Plaintiff States challenged the inclusion of the hotels unit on the SERP. Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the hotels unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the hotels unit or not.

---

[7] The Hotels Placesheet is another term for the hotels detail page.

### 2.      How Google's Hotels Unit Works

**84.**      Google obtains hotel information, price and availability, photos, and reviews from a variety of sources, including a hotel's own business profile, data Google obtains from crawling and indexing the content of websites, user generated content (such as reviews and ratings), and third parties including SVPs and suppliers pursuant to agreements. Holden (Google) Decl. ¶ 16 (Ex. 6); Google's 3rd Supp. Resp. to Colo. Pls.' Nov. 1, 2021 30(b)(6) Notice at 10-11 (Ex. 39).

**Plaintiff States' Response**: Undisputed.

**85.**      Much of the information displayed in the hotels unit is not available from web crawling alone, and thus would not appear elsewhere on the SERP. Holden (Google) Decl. ¶ 16 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

**86.**      The hotels unit as shown on the SERP does not include any advertisements. Holden (Google) Tr. 89:22-90:4, 93:21-94:1 (Ex. 5).

**Plaintiff States' Response**: Undisputed.

**87.**      The hotels listed in the hotels unit as shown on the SERP link to "hotel detail pages," and do not link to the websites of hoteliers or SVPs. Google's 2nd Supp. Resp. to Colo. Pls. 3rd Interrogs. at 4 (Ex. 8).

**Plaintiff States' Response**: Undisputed.

88.     The hotels unit is built on Google's Maps and Geo infrastructure, which classifies entities based on what they are. Holden (Google) Tr. 97:12-102:05 (Ex. 5).

**Plaintiff States' Response**: Undisputed.

89.     SVPs not appear in the hotels unit on the SERP because they are not hotels associated with a physical location. Holden (Google) Tr. 97:12-107:14 (Ex. 5). As discussed below, SVPs may appear in the hotels immersive and hotel detail pages reached via the hotels unit.

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that SVPs may appear in the hotels immersive, which a user reaches by clicking in the hotels unit.  It is also undisputed that SVPs may appear in the hotel detail page, which a users reaches by clicking in the hotels unit and then clicking on a hotel in the hotel immersive. It is also undisputed that Google prohibits SVPs from appearing in its hotels unit on the SERP. However, the reason for this exclusion is disputed.  It is Google's decision and not a lack of a physical location that prohibits SVPs from appearing in the hotels unit on the SERP. Holden (Google) Tr. 100: 3-18.  (Google Ex. 5)  Further, Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally.  Evidence exists, however that specialized units excluding SVPs from participating, like Google's hotels unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening

Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ████████████████████████████████████. Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2)████████████████████████████████████████ ████████████.

90.     In the hotels context, Google has "clustered" information about a given hotel—meaning that it is able to understand that a hotel associated with a physical location is the same hotel across all websites that provide Google with booking information at that hotel. Holden (Google) Tr. 165:13-166:3 (Ex. 5). This enables Google to "cluster" many booking links, usually including both the hotel and SVPs, for any given hotel. Holden (Google) Decl. ¶ 20 (Ex.6).

**Plaintiff States' Response**: Undisputed that Google has clustered information received from hotels and SVPs.

91.     By contrast, Google's vacation rentals unit[8] serves results listing vacation rentals association with specific vacation rental providers because, unlike hotels which are standalone public businesses that Google can independently verify, it is harder to accurately determine whether multiple vacation rental providers are offering the same lodging. Holden (Google) Tr. 164:13-166:3 (Ex. 5).

**Plaintiff States' Response**: Undisputed.

---

[8] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. 21 (Ex. 9) for image of Google's vacation rentals unit.

**92.**     The user may access the hotels immersive by interacting with the hotels unit, including by clicking on the "view hotels" link. *See* Para. 56 (image of hotels unit); Holden (Google) Decl. ¶ 11 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

**93.**     As depicted below, Google's hotels immersive provides additional hotel listings, information, and search capabilities—including the ability to filter a hotel search by, inter alia, location, price, class, user ratings, and amenities.

**Plaintiff States' Response**: Undisputed.



*See* Amaldoss (Colo. Pls' Expert) Opening Rep. Fig. BA.1.b & BA1.d (Ex. 9)[9]

**94.**     The listing of hotels in the hotels immersive may contain "property promotion" ads that can be purchased by hotels or SVPs that direct users to book with the hotelier or SVP that purchased the ad. *See* Para. 93 (image of hotels immersive); *see also* Holden (Google) Tr.

---

[9] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BA.1.g (Ex. 9) for image of hotels immersive on a mobile device.

128:9-24, 274:6-275:3 (Ex. 5).

**Plaintiff States' Response**: Undisputed.

95.     The user may click on a hotel listing from either the hotels unit or immersive to view the detail page for that hotel. Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BA.1.c. & BA.1.d (Ex. 9).

**Plaintiff States' Response**: Undisputed.

96.     The detail page displays additional information, such as contact information for the hotel, information about the location, user reviews, photos and (where available) booking links (both paid and unpaid), including links to SVPs. *See* Amaldoss (Colo. Pls.' Expert) Tr. 181:14-182:10 (Ex. 40); Amaldoss (Colo. Pls.' Expert) Dep. Ex. 6 (Ex. 41); Amaldoss (Colo. Pls.' Expert) Dep. Ex. 7 (Ex. 42). In the screenshots below, paid booking links are labeled as "Ads" and unpaid booking links are listed under "All options." Clicking on "view more options" will show a user all booking links Google has available. *See* Amaldoss (Colo. Pls.' Expert) Tr. 189:6-190:2 (Ex. 40); Amaldoss (Colo. Pls.' Expert) Dep. Ex. 7 (Ex. 42).

**Plaintiff States' Response**: Undisputed that the detail page, which a user may view by clicking on a hotel listing in either the hotels unit or immersive, displays the additional information described in Statement 96.



97.     The diversity of booking links enables users to choose among an array of options to book a hotel room—usually including a booking link from the hotel itself as well as SVPs. Holden (Google) Decl. ¶ 20 (Ex. 6).

**<u>Plaintiff States' Response</u>**: Undisputed that the booking links contained on the hotel details page, which a user may view by clicking on a hotel listing in either the hotels unit or immersive, enables users to choose among an array of options to book a hotel room.

**98.**     If a Google user searches for a specific hotel name, the SERP may display a hotel knowledge panel that includes both paid and unpaid booking links, in which SVPs can appear. Amaldoss (Colo. Pls.' Expert) Opening Rep. ¶ 138 (Ex. 9).

**Plaintiff States' Response**: Dispute as incomplete.  It is undisputed that Google may display a hotel knowledge panel that includes both paid and unpaid booking links, in which SVPs can appear. ██████████████████████████

████████████████████████.  Baker Opening Report ¶ 280 n.399 (Ex. 1).



*See also* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BA.2.a (Ex. 9).

**B.      Flights**

**99.**      When a Google user enters a query that Google's algorithm detect as relating to air travel, Google may serve a SERP containing a "flights unit," depicted below, among other SERP elements (such as text advertisements and web results).  Holden (Google) Decl. ¶ 21 (Ex.6).

**Plaintiff States' Response**: Undisputed

**100.**      The design of the SERP may vary depending on the query, but the flights unit depicted below is typical for queries like "flights to" a location, from a desktop computer.[10] Holden (Google) Decl. ¶ 22 (Ex. 6). *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BB.1.a (Ex. 9).

**Plaintiff States' Response**: Undisputed.



---

[10] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BB.1.d (Ex. 9) for image of flights unit on a mobile device.

**101.**     The web results that are served, as well as the text advertisements (if any) that appear, for this type of query along with the flights unit on the SERP may include SVPs. Holden (Google) Decl. ¶ 23 (Ex. 6).

**Plaintiff States' Response**: Disputed as vague and confusing.  Undisputed that SVPs can appear in the web results and text advertisement that may appear on the SERP. Disputed to the extent that Statement 101 intends to convey that SVPs can appear in the flights unit on the SERP.  It is undisputed that SVPs cannot appear in the flights unit.  Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Elzinga (Google Expert) Opening Report ¶ 187 (indicating that only airlines and not SVPs can appear in the flights unit) (Ex. 30); Amaldoss Opening Report § VI.D.2.b.ii. (flights) (Ex. 5).

**102.**     Google's design of the flights unit provides its users with near-instantaneous structured information about flights, including:

    **a.**   A graph of flight prices for a specific destination-origin pair on a range of dates;

    **b.**   A list of flights, organized by carrier, associated with a specific destination-origin pair and date, with information including flight duration and starting price;

    **c.**   The ability for the user to filter by certain criteria (including flight class, nonstop flights only, and flights that are low emission) on the SERP;

    **d.**   A link to Google's flights immersive, where users can find further information and further refine their flight search.

Holden (Google) Decl. ¶ 24 (Ex. 6).

**Plaintiff States' Response**: Disputed as incomplete.  Undisputed that Google's flights unit can provide users with the structured information identified in Statement 102. However,

Statement 102 fails to indicate the material fact that SVPs provide Google some of the structured data used in its flights unit, including, prices, availability and, in certain instances, booking links.  *See* Elzinga (Google Expert) Rebuttal Report Ex. 5 (Ex. 214); Google's Third Supplemental Responses to Plaintiffs' November 1, 2021 Notice of Deposition, Topic 9(c) (Ex. 222).  And for certain information, flight prices, in the flights unit, Google fails to show attribution to the SVP providing the data.  *Id.*

### 1.    Origin and Evolution

**103.**    Prior to the launch of its flight unit, Google would show web results, as well as text ds (if any), in response to a query associated with air travel. Holden (Google) Tr. 41:11-42:8 (Ex. 5).

<u>**Plaintiff States' Response**</u>: Undisputed.

**104.**    In 2006, Google launched a flights "onebox" that offered only basic flight schedule information without any price and availability information, links to book, or other interactive search features. Holden (Google) Decl. ¶ 27 (Ex. 6).

<u>**Plaintiff States' Response**</u>: Undisputed.

**105.**    Even with this offering, Google determined that it was losing queries because it did not offer pricing and availability information for flights. Holden (Google) Decl. ¶ 27 (Ex. 6); *see also* GOOG-DOJ-04353653 at -655 (Ex. 26) (noting, in 2011, that its results "provided little useful information for queries like [flights to Minneapolis]").

<u>**Plaintiff States' Response**</u>: Undisputed.

106.    As with hotel search, Google confronted engineering challenges relating to the magnitude of flight data and the need to return search results nearly instantaneously. Members of the Google Travel team observed that "a simple BOS/SFO round-trip may have 25M+ valid solutions out of a search space 10B+. This processing is currently done while the user waits and very little parallelism is applied to the task." GOOG-DOJ-04353653 at -654 (Ex. 26).

**Plaintiff States' Response**: Disputed in part as immaterial.  Undisputed that Statement 106 accurately quotes portions of Google Exhibit 26.  Disputed as immaterial as Plaintiff States have not challenged the creation of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flights unit or not.

107.    Google also recognized that speed was an engineering challenge in delivering flights results, so, like for hotel stays, Google precomputed itineraries, which, while "technically challenging," helped "pave the way for real innovation around the user experience." GOOG-DOJ-04353653 at -654 (Ex. 26).

**Plaintiff States' Response**: Disputed in part as immaterial.  Undisputed that Statement 107 accurately quotes portions of Google Exhibit 26.  Disputed as immaterial as Plaintiff States have not challenged the creation of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flights unit or not.

**108.**     In 2011, after completing its acquisition of travel software company ITA, Google launched its flights unit, which at that time provided users with the ability to search for flight schedule information for direct flights between two points. GOOG-DOJ-04353653 at -655-56, -659 (Ex. 26).

**Plaintiff States' Response**: Undisputed.

**109.**     Prior to launching its flights unit, Google conducted quality testing to evaluate whether the flights unit would improve user experience. Holden (Google) Decl. ¶¶ 4-5 (Ex. 6).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Disputed in part because Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 109.  Evidence exists, however that specialized units excluding SVPs from participating, like Google's flights unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████████████ ███████████████████████████████████.  Baker Rebuttal Report Table 1 (Ex. 2) ███████████████████████████████████ ███████████████████████████.

Also disputed as evidence from Google's testing of immersives and similar features

supports that users prefer the inclusion of SVPs. ██████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████.

GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial. Plaintiff States have not challenged the introduction of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flight unit or not.

**110.** Google's analyses confirmed that its flights unit improved the flight search user experience on the SERP. Holden (Google) Decl. ¶ 5 (Ex. 6).

**Plaintiff States' Response**: Disputed as contradicted by other evidence and immaterial. Disputed in part because specialized units excluding SVPs from participating, like Google's flights unit, are likely providing lower quality information than if they included SVPs. Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

███████████████████████████████████████████████████████

███████. Baker Rebuttal Report Table 1 (Ex. 2) ████████████████████

██████████████████████████████████████████████████████.

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ████████████████████

██████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial. Plaintiff States have not challenged the introduction of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP. Google MSJ at 16. Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit. Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flight unit or not.

111.    For example, an August 2011 Google experiment, in which Search Quality Raters compared Google's new post-ITA acquisition "flights mode" results to web results concluded that the flight results were "more useful for the query" 53.4% of the time, compared to 17.3% for the web results. GOOG-DOJ-01239619 at -620 (Ex. 43). And prior to launching the "Flights Universal in US" unit, Google conducted an experiment in which 62.9% of the Search Quality Raters found the unit "very useful," and an additional 24.8% found it "somewhat useful." GOOG-DOJ-23875896 at -898 (Ex. 44).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and immaterial. Undisputed that Statement 111 accurately includes partial quotes from Google Exhibits 43 and 44. Disputed in part Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ████████████████████████████. Baker Rebuttal Report Table 1 (Ex. 2) ████████████████████████████. Further, specialized units excluding SVPs from participating, like Google's flights unit, are likely providing lower quality information than if

they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ███████████████

█████████████████████████████████████████

██████████████████████████████████████

████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial. Plaintiff States have not challenged the introduction of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flight unit or not.

**112.** Google's flights unit and immersive now enables users to search for flights for a specific date range across hundreds of airlines and thousands of destinations and receive results nearly instantaneously. Holden (Google) Decl. ¶ 26 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

**113.** Google has launched many improvements over the years to its flight search results based on user testing. Holden (Google) Decl. ¶ 30 (Ex. 6).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and immaterial.  Undisputed that Google has launched many changes to its flights search results

based upon user testing.  Disputed in part because Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 113.  Further, specialized units excluding SVPs from participating, like Google's flights unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ████████████████████████████ ██████████████████████████████████.  Baker Rebuttal Report Table 1 (Ex. 2) ███████████████████████████████████████████████████████████ ██████████████████████████████████

    Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

    Finally, disputed as immaterial. Plaintiff States have not challenged the introduction of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flight unit or not.

**114.**     For example, beginning in 2018, Google experimented with altering the

placement of the flights unit so that it was not statically positioned on the SERP, in order to

improve user experience and after determining that it improved the user experience based on

user research, implemented that improvement.  GOOG-DOJ-03098047 at -053-65 (Ex. 45).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and

immaterial.  Undisputed that Google experimented with altering the placement of the flights

unit beginning in 2018.  Disputed in part because Google has conspicuously avoided testing the

challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible

in specialized units.  Google has presented no evidence that the challenged visibility limitation

imposed upon specialized units were subject to the ordinary-course testing and review process

of which it boasts generally and in Statement 114.  Further, specialized units excluding SVPs

from participating, like Google's flights unit, are likely providing lower quality information

than if they included SVPs.  Google's web results (which are ranked by Google's search results

algorithm) and its text ads (which are selected by Google's algorithm that takes into account a

prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening

Report Table 28 & 29 (Ex. 1).  Moreover, Plaintiff States' expert, Jonathan Baker, performed

an empirical analysis and found ███████████████████████████████████

█████████████████████████████.  Baker Rebuttal Report Table 1 (Ex. 2)

███████████████████████████████████████████████

███████████████████████████.

Also disputed as evidence from Google's testing of immersives and similar features

supports that users prefer the inclusion of SVPs.  ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████.

GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial. Plaintiff States have not challenged the introduction of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flight unit or not.

**115.**    In 2019, Google determined through pre-launch experiments that a "Price Graph" (i.e., the graphic representation of flight prices over time that helps users identify low-cost dates to fly) would enhance the user experience. GOOG-DOJ-03667739 at -744-49 (Ex. 46) ("[w]e think users are getting answers faster on the SRP"); GOOG-DOJ-03667739 at -762-64 (Ex. 46). Thereafter, Google added the Price Graph to the flights unit. Holden (Google) Decl. ¶ 30 (Ex. 6).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and immaterial.  Undisputed that Google added a "Price Graph" to its flights unit in 2019.  Disputed in part because Google has conspicuously avoided pre-launch experiments the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 115.  Further, specialized units excluding SVPs from participating, like Google's flights unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening

Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found 

. Baker Rebuttal Report Table 1 (Ex. 2)

.

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.

. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial. Plaintiff States have not challenged the introduction of the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the flight unit or not.

**116.**    Google studies whether users are satisfied by its flights results. Holden (Google) Decl. ¶ 7 (Ex. 6). Through its user testing, Google determined that 84% of users surveyed on desktop and 82% on mobile were "very/somewhat satisfied" with Google's flight search. GOOG-DOJ-04474464 at -496 (Ex. 37).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and immaterial.  Undisputed that Google studies whether users are satisfied with the flights comparisons that they are shown and that Statement 116 accurately quotes Google Exhibit 37. Disputed in part because specialized units excluding SVPs from participating, like Google's

74

flights unit, are likely providing lower quality information than if they included SVPs.

Google's web results (which are ranked by Google's search results algorithm) and its text ads

(which are selected by Google's algorithm that takes into account a prediction of the value of

the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex.

1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

████████████████████████████████████████████████████████

████████.  Baker Rebuttal Report Table 1 (Ex. 2) ████████████████████████████████

████████████████████████████████████████████████████████.

Moreover, disputed as evidence from Google's testing of immersives and similar

features supports that users prefer the inclusion of SVPs.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Finally, disputed as immaterial.  Plaintiff States have not challenged the introduction of

the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the

SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit

SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether

users would prefer the inclusion of SVPs in the flight unit or not.


**117.**    Vice President of Product Management for Travel Richard Holden testified that

the value of offering the flights unit was being able to offer relevant results to Google users to

satisfy the user need with a well-designed, differentiated product. Holden (Google) Tr. 151:21-

152:9 (Ex. 5).

**Plaintiff States' Response**: Disputed in part as contrary to other evidence and

immaterial.  Undisputed that Richard Holden testified that Google's "objective is we offer

something that's good, differentiated, well designed, and that serves a user need."  Holden

(Google) Tr. 152:1-3.  Disputed in part because specialized units excluding SVPs from

participating, like Google's flights unit, are likely providing lower quality information than if

they included SVPs.  Google's web results (which are ranked by Google's search results

algorithm) and its text ads (which are selected by Google's algorithm that takes into account a

prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening

Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an

empirical analysis and found ████████████████████████████████

████████████████████████.  Baker Rebuttal Report Table 1 (Ex. 2)

████████████████████████████████████████████████████

████████████████████████████.

     Also disputed as evidence from Google's testing of immersives and similar features

supports that users prefer the inclusion of SVPs.  ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

     Finally, disputed as immaterial. Plaintiff States have not challenged the introduction of

the flights unit, nor have Plaintiff States challenged the inclusion of the flights unit on the

SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit

SVPs from appearing in the flights unit.  Google has offered no evidence that it tested whether

users would prefer the inclusion of SVPs in the flight unit or not.

2.      **How Google's Flights Unit Works**

**118.**      Google's contracts with airline carriers and SVPs to obtain flight price and availability information. Google's 3rd Supp. Resp. to Colo. Pls.' Nov. 1, 2021 30(b)(6) Notice at 11 (Ex. 39).

**Plaintiff States' Response**: Undisputed.

**119.**      Much of the information displayed in the flights unit is not available from web crawling alone, and thus would not appear elsewhere on the SERP. Holden (Google) Decl. ¶ 26 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

**120.**      The flights unit that appears on the SERP does not include any advertisements. *See* Para. 100 (image of flights unit); Holden (Google) Decl. ¶ 25 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

**121.**      The flights unit that appears on the SERP does not include any links to airline or SVP websites. *See* Para. 100 (image of flights unit); Holden (Google) Decl. ¶ 25 (Ex. 6).

**Plaintiff States' Response**: Undisputed that Google does not include any links in its flights unit that will take a user to airline or SVP websites.  If a user clicks on a link in the flights unit, the user is taken to Google's flight immersive.  Amaldoss Opening Report ¶ 140 (Ex. 5).:

**122.**      SVPs do not appear in the flights unit on the SERP because they are not flights

associated with a specific itinerary. Holden (Google) Tr. 156:7-20 (Ex. 5).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence.  It is undisputed that Google prohibits SVPs from appearing in its flights unit on the SERP.  However, the reason for this exclusion is disputed.  It is Google's decision and not a lack of a specific itinerary that prohibits SVPs from appearing in the flights unit on the SERP.  ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ .

123.    From the flights unit, a Google user may click on a particular flight or "show flights" to view the Flights immersive, which is depicted below. *See* Para. 100 (image of flights unit); Holden (Google) Decl. ¶ 24 (Ex. 6).

**Plaintiff States' Response**: Undisputed.



*See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BB.1.b (Ex. 9).[11]

**124.** Google has designed its flights immersive to identify the "Best departing flights" for users, which Google's algorithms rank based on price and convenience. Holden (Google) Decl. ¶ 28 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

**125.** The flights immersive provides additional filters through which a Google user can refine their search, including airline, bags, price, times, emissions, connecting airports, and duration. *See* Para. 123 (image of flights immersive); Holden (Google) Decl. ¶ 24 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

**126.** The flights immersive gives users additional search options beyond what is available on the flights unit, including a search calendar that helps users find the lowest-cost dates to fly a particular route. Holden (Google) Decl. ¶ 28 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

---

[11] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BB.2.d (Ex. 9) for image of flights immersive on a mobile device

**127.**    After the user refines their flight search and selects specific flights, the flights

immersive is designed to display a detail page where the complete flight itinerary is displayed.

Holden (Google) Decl. ¶ 29 (Ex. 6).

> **Plaintiff States' Response**: Undisputed.



*See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BB.2.b (Ex. 9).[12]

**128.**    Google has designed its detail page to display unpaid booking links to airlines, as

well as to SVPs when permitted by the airline. Holden (Google) Decl. ¶ 29 (Ex. 6).

> **Plaintiff States' Response**: Disputed in part as misleading.  Undisputed that Google has

---

[12] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BB.2.e (Ex. 9) for image of flights detail page on a mobile device.

designed its detail page to display unpaid booking links to airlines and SVPs. ████████

████████████████████████████████████████████████

████████████████████████████████████

**129.**   ████████████████████████████████████████

████████████████████████████████████████

**Plaintiff States' Response**: ████████████████████████████

████████████████████████████████████████

████████████████████

## C.   Local

130.    When a Google user enters queries that Google's algorithms detect as relating to
local entities, Google typically serves a SERP containing a "local unit," (also referred to as the
"local universal unit") among other SERP elements (such as text advertisements and web
results). Reid (Google) Decl. ¶ 14 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

**131.**    The exact appearance of the local unit on the SERP may vary depending on the query, but the local unit depicted below is typical for queries like "delivery tacos near me" that Google detects as relating to local places, from a desktop computer.[13] Reid (Google) Decl. ¶ 15 (Ex. 4).

**Plaintiff States' Response**: Undisputed.



Amaldoss (Colo. Pls.' Expert) Opening Rep. ¶ 87 & Fig. BE.1.a (Ex. 9).

**132.**    The web results, as well as text advertisements (if any), that Google serves for these types of queries along with the local unit on the SERP may include SVPs. Reid (Google) Decl. ¶ 16 (Ex. 4).

**Plaintiff States' Response**: Disputed as vague and confusing.  It is undisputed that SVPs can appear in the web results and text advertisement that may appear on the SERP. Disputed to the extent that Statement 132 conveys that SVPs can appear in the local unit on the SERP.  It is undisputed that SVPs cannot appear in the local unit.  Baker Opening Report ¶ 280

---

[13] *See* Amaldoss (Colo. Pls.' Expert) Opening Report Fig. BE.1.d for image of local unit on a mobile device.

(Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); Elzinga (Google Expert) Opening Report ¶ 288

(indicating SVPs can only purchase local ads in the local unit to promote local business) (Ex.

30).

133.    Google's design of the local unit provides its users with structured information

about local entities, including:

   **a.**   A map of local entities in the specific location

   **b.**   A list of up to three local entities as determined by Google's algorithms;

   **c.**   An image, star rating, address, and description about the local entity;

   **d.**   A link to Google's local immersive where users can find further information and

         further refine their local search.

Reid (Google) Decl. ¶ 17 (Ex. 4); *see* Para. 131 (image of local unit).

   **Plaintiff States' Response**: Undisputed

134.    The unit may also provide advertisements for such entities. Reid (Google) Decl.

¶ 18 (Ex. 4).

   **Plaintiff States' Response**: Undisputed that Google's local unit on the SERP may

include advertisements for local entities.

   **1.      Origin and Evolution**

135.    Google first launched its local unit in 2004. Reid (Google) Decl. ¶ 24 (Ex. 4).

   **Plaintiff States' Response**: Undisputed.

136.    Prior to the launch of the local unit, Google would generally surface only text ads

and web results in response to a query associated with a local entity; meaning that if a Google user was interested in looking for a restaurant in New York City, the user would generally only see ads or links to individual restaurants, restaurant-focused SVPs, or to other websites with information about restaurants in New York City. To compare restaurants, users would need to click through some or many of these individual links. Reid (Google) Decl. ¶ 22 (Ex. 4).

**Plaintiff States' Response**: Disputed in part.  Undisputed that prior to the launch of the local unit, Google would generally surface only text ads and web results in response to a query associated with a local entity.  Disputed that a user would need to click through some or many of the text ads or web results to compare restaurant.  Statement 136 admits that prior to the launch of Google's local unit, a user would see text ads or web results from restaurant-focused SVPs.  SVPs allow users learn about and select products or services provided by multiple sellers, and have relationships with those sellers that allow them to benefit financially when users make purchases, get quotes, make reservations, or otherwise engage in transactions with the SVP.  Baker Opening Report ¶ 12 (Ex. 1); Baker (Plaintiff States) Tr. 31:1-12 (Ex. 200).  If a user clicked on a restaurant-focused SVP, the user could utilize the services of the restaurant-focused SVP to compare restaurants.


137.    In creating its local unit, Google wanted to offer users a more expansive, comprehensive, and diverse set of local entities than just providing them with a limited list of local entities from sources such as yellow pages and local business listings. Reid (Google)Decl. ¶ 23 (Ex. 4).

**Plaintiff States' Response**: Disputed as incomplete and contradicted by other evidence. Google's Vice President of Search Nick Fox explained that revenue potential is one factor Google uses to determine whether to launch a vertical unit.  Fox (Google) Tr. 280:2-24 (Google

Ex. 11).

**138.** One of Google's goals in creating its local unit "is to have one local business listing for each and every local business that exists in the world." Fitzpatrick (Google) Tr. 77:3-78:1 (Ex. 14).

**Plaintiff States' Response**: Undisputed that Statement 138 accurately quotes testimony from Google Exhibit 14.

**139.** The challenge in providing users with a comprehensive and up-to-date set of results for local places was collecting data on local entities because, if Google lacked information that a local place existed, it could not surface it in its search results. Reid (Google) Decl. ¶ 25 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

**140.** Google thus began a years' long, and still ongoing, engineering effort to collect information from every local place; and not just geographic location and address, but information on hours, photos, reviews, ratings, and descriptions. Reid (Google) Decl. ¶ 25 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

**141.** Google designed and engineered the local unit to include functionality allowing the user to enter only a keyword and a location like "pizza palo alto" to view results including local pizza restaurants with accompanying information such as a phone number, address, and related websites. Reid (Google) Decl. ¶ 24 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

142.    Google has learned from its user research that Google's users are interested in seeing specific local businesses in the local unit. Reid (Google) Tr. 97:2-98:5 (Ex. 13).

**Plaintiff States' Response**: Disputed as contradicted by other evidence.  Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 142.

Evidence exists, however that specialized units excluding SVPs from meaningfully participating, like Google's local unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████████████████████████ ██████████████████████████████. Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).  As such, it is disputed that users are interested in seeing specific local business in lieu of SVPs in Google's local unit.

143.    Google has launched many improvements over the years to its local unit. Reid (Google) Decl. ¶ 26 (Ex. 4).

**Plaintiff States' Response**: Disputed as immaterial. Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of

the local unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the local unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the local unit or not. Specialized units excluding SVPs from participating, like Google's local unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ███████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████.

GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

**144.**    As with all changes to Google's search results, Google tests proposed changes to the local unit prior to introducing them. Reid (Google) Decl. ¶ 26 (Ex. 4).

**Plaintiff States' Response**: Disputed as immaterial. Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the local unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the local unit or not.

**145.**    Subsequent to the launch of the local unit, Google offered users access to additional relevant information such as integrated local search results, detailed driving

directions, and other features. Reid (Google) Decl. ¶ 27 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

146. In 2007, Google introduced the local universal unit (sometimes referred to as the local "3-pack" or "onebox"). In its current form, it may provide users with results from up to three local businesses, along with ratings, access to reviews, and a map. Reid (Google) Decl. ¶ 28 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

147. Prior to launching its local unit, Google conducted quality testing to evaluate whether the local unit would improve user experience. Reid (Google) Decl. ¶¶ 11-12 (Ex. 4).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Google conducted certain quality testing prior to launching the local unit.  Disputed in part because Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 147.

Evidence exists, however, that specialized units excluding SVPs from meaningfully participating, like Google's local unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an

88

empirical analysis and found ███████████████████████████████████

███████████████████████████. Baker Rebuttal Report Table 1 & Figure 2 (Ex.

2).

Further, disputed as evidence from Google's testing of immersives and similar

features supports that users prefer the inclusion of SVPs. ████████████████



████████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the local

unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google

MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from

prominently appearing in the local unit.  Google has offered no evidence that it tested whether

users would prefer the inclusion of SVPs in the local unit or not.

**148.**      Google determined based on feedback from trained Search Quality Raters that

users found the local unit beneficial and that it improved overall user experience. Reid (Google)

Decl. ¶ 12 (Ex. 4).

**<u>Plaintiff States' Response</u>**: Disputed as contradicted by other evidence and immaterial.

Disputed in part because specialized units excluding SVPs from meaningfully participating, like

Google's local unit, are likely providing lower quality information than if they included SVPs.

Google's web results (which are ranked by Google's search results algorithm) and its text ads

(which are selected by Google's algorithm that takes into account a prediction of the value of

the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex.

1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

████████████████████████████████████████████████

███████. Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

███████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from prominently appearing in the local unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the local unit or not.

**149.**    Google's 2007 launch report evaluating the introduction of the new user interface summarizes an experiment showing that nearly 80% of users ranked the local unit "quite useful" or "totally awesome." GOOG-DOJ-00515037 at -038 (Ex. 23).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Statement 149 includes accurate quotes from Google Exhibit 23.  Disputed in part because specialized units excluding SVPs from meaningfully participating, like Google's local unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

██████████████████████████████████████████████████

████████. Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ███████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP. Google MSJ at 16. Instead, Plaintiff States challenge Google's decision to prohibit SVPs from prominently appearing in the local unit. Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the local unit or not.

**150.** Google recognized that it faced challenges in the accuracy and coverage of its local search results. Fitzpatrick (Google) Tr. 153:20-155:8 (Ex. 14). In 2009, Google launched a multi-year effort to acquire data directly from users and merchants in order to provide higher quality data, fresher updates, and better coverage of local businesses. *Id.* ("And so the primary motivation was to get Google to a point where the quality coverage, freshness, et cetera, of our local business listing data was better than what we were able to attain with the third-party feed approach."); Reid (Google) Decl. ¶ 25 (Ex. 4).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial. Undisputed that Statement 150 includes accurate quotes from Google Exhibit 24. Further, undisputed that Google recognized that it faced challenges with its local unit. Disputed in part because specialized units excluding SVPs from meaningfully participating, like

Google's local unit, are likely providing lower quality information than if they included SVPs. Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

███████████████████████████████████████████████████████

███████.  Baker Rebuttal Report Table 1 and Figure 2 (Ex. 2).

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  █████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from prominently appearing in the local unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the local unit or not.

**151.**    As an example of Google initiating changes in response to user research, in 2017, Google's user feedback and query analyses demonstrated that users had different information needs for different types of local places; for example, rather than the same basic information (e.g., phone number, hours) from each local business, users would prefer to see menu options from a restaurant or manicure options from a nail salon. Fitzpatrick (Google) Tr. 164:19-167:10 (Ex. 14).

**Plaintiff States' Response**: Disputed as immaterial. Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the local unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the local unit or not.

152.   Thereafter, Google broadened its efforts to incorporate more bespoke information into its local unit depending on the type of local entity. Fitzpatrick (Google) Tr. 164:19-166:4 x. 14) (Google collected and surfaced "more relevant and pertinent information that would apply to more specific types of local businesses.").

**Plaintiff States' Response**: Disputed as immaterial. Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the local unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the local unit or not.

153.   Google's local unit now enables users to search for millions of local entities and services, even if these entities do not have a website, across thousands of locations, and receive results nearly instantaneously in the local unit. Reid (Google) Decl. ¶ 29 (Ex. 4).

**Plaintiff States' Response**: Undisputed.

154.   Google continuously studies whether users are satisfied by its local unit, meaning (among other things) that their information needs are met. Reid (Google) Decl. ¶ 13 (Ex. 4).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and

immaterial.  Undisputed that Google studies whether users are satisfied by its local units.

Disputed in part because Google has conspicuously avoided testing the challenged conduct

material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.

Google has presented no evidence that the challenged visibility limitation imposed upon

specialized units were subject to the ordinary-course testing and review process of which it

boasts generally and in Statement 154.

Evidence exists, however, that specialized units excluding SVPs from meaningfully

participating, like Google's local unit, are likely providing lower quality information than if

they included SVPs.  Google's web results (which are ranked by Google's search results

algorithm) and its text ads (which are selected by Google's algorithm that takes into account a

prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening

Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an

empirical analysis and found ████████████████████████████████

████████████████████████.  Baker Rebuttal Report Table 1 (Ex. 2).

Also disputed as evidence from Google's testing of immersives and similar features

supports that users prefer the inclusion of SVPs.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).


**155.**    Google has conducted ablation studies to determine the impact of ablating the

local unit. *See* GOOG-DOJ-29263566 at -566, -570 (Ex. 47) (2017 Google ablation study

finding that ablating the local unit on "where-to-buy" queries was "bad for users" in live in-

product experimentation); Reid (Google) Decl. ¶ 13 (Ex. 4).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and as immaterial.  Undisputed that Google has conducted ablation studies to determine the impact of ablating the local unit.  Disputed in part because Google has conspicuously avoided conducting ablation studies related to the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 155.  Evidence exists, however, that specialized units excluding SVPs from meaningfully participating, like Google's local unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

███████████████████████████████████████████████████████████████

████████.  Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).

Also disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Disputed as immaterial.  Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the local unit.  Google has offered no evidence that it tested whether users would

prefer the inclusion of SVPs in the local unit or not.

      **156.** The metrics that Google uses in the ordinary course of business confirm that users generally find satisfaction with the local unit. Reid (Google) Decl. ¶ 13 (Ex. 4).

      **Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial. Undisputed that Google uses metrics to evaluate whether users are satisfied with the local unit. Disputed in part because specialized units excluding SVPs from meaningfully participating, like Google's local unit, are likely providing lower quality information than if they included SVPs. Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1). Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████████████████████████████████████ ███████████████████████████████████. Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).

      Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ███████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

      Also disputed as immaterial, Plaintiff States have not challenged the creation of the local unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP. Google MSJ at 16. Instead, Plaintiff States challenge Google's decision to prohibit SVPs from prominently appearing in the local unit. Google has offered no evidence that it tested whether

users would prefer the inclusion of SVPs in the local unit or not.

### 2.      How Google's Local Unit Works

**157.**      The photos, address, user reviews, website, and other information about the place

or business in Google's local unit comes from licensed data feeds, crawling, user generated

content, and information based on Google's interactions with a local place or business. Google's

3rd Supp. Resp. to Colo. Pls.' Nov. 1, 2021 30(b)(6) Notice at 5-6 (Ex. 39).

**Plaintiff States' Response**: Undisputed.  Information about the place or business in

Google's local unit comes, in part, from SVPs, such as OpenTable and Resy who provide

reservation links through data feeds and review information through crawling.  Google's Third

Supplemental Responses to Plaintiffs' November 1, 2021 Notice of Deposition at 5-6 (Ex. 222).

The data Google receives from SVPs is used to display results in the Local Universal, *Id.*,

despite Google's decision to exclude SVPs from the local unit when it appears on the SERP.


**158.**      Much of the information displayed in the local unit is not available from web

crawling alone, and thus would not appear elsewhere on Google's SERP. Reid (Google) Decl. ¶

21 (Ex. 4).

**Plaintiff States' Response**: Undisputed.


**159.**      SVPs do not appear in the local unit on the SERP because they are not local

places associated with "a local area of relevance." Reid (Google) Tr. 90:16-91:2; 92:3-5; 93:9-

94:8 (Ex. 13) (explaining that to appear in the local unit any entity would need "a local area of

relevance" such as a "physical address" or "area it serves").

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence.

Undisputed that Google excludes SVPs from appearing in the local unit, and that Google has a stated criteria that entities need "a local area of relevance," such as a "physical address" or "area it serves" to appear in the local unit.  Disputed that SVPs are not local places associated with "local area of relevance" and fail to meet Google's criteria to display in the local unit. Stein (HomeAdvisor) Tr. 197:16-20 (Ex. 188) (Q. "And can – does homeadvisor.com provide consumers with access to plumbers that can serve the consumer in a given location? A. Yes.").

        Further, Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally.  Evidence exists, however that specialized units excluding SVPs from participating, like Google's local unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████████████████████████████████████████████████████ ██████████████████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2)


        **160.**    For a query relating to food delivery, for example, Google shows specific restaurants offering delivery in its local unit. Reid (Google) Tr. 144:18-146:8 (Ex. 13); Reid (Google) Decl. ¶ 20 (Ex. 4).

        **<u>Plaintiff States' Response</u>**: Undisputed.

**161.**    As reflected in the images below, for a query relating to food delivery, the user may navigate within the local immersive to view additional information, such as restaurant details, busyness, and weblinks to order delivery online through various food-delivery providers, including SVPs. Reid (Google) Decl. ¶ 20 (Ex. 4).[14]

**Plaintiff States' Response**: Disputed in part as misleading and contradicted by other evidence.  Undisputed that users may navigate within the local immersive to view additional information, such as restaurant details, busyness, and weblinks to order delivery online through various food-delivery providers including SVPs.  Disputed that the image below provides a fair and accurate depiction of the user journey from the SERP to find restaurant details, business, and weblinks to order delivery online through various food-delivery providers, including SVPs.  The images below remove any indicia of the search term used to access the page and lack any date by which the pages were accessed.  Furthermore, the images fail account for multiple clicks the user must take before reaching the images.  The vast majority of users do not ultimately reach a SVP once they enter the immersive. Elzinga (Google Expert) Tr. 333:17-336:4 (Ex. 11)

---

[14] *See* Amaldoss (Colo. Pls.' Expert) Opening Report Figs. BD.1.e & BD.1.f for images of the local immersive and a detail page on a mobile device.



Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BE.2.b (Ex. 9).



Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BE.2.e (Ex. 9).

**162.**   If a user searches directly for a specific local entity (*e.g.*, "Rasika West End"), the SERP may display a knowledge panel with local information for that place instead of the unit.

**Plaintiff States' Response**: Undisputed.



Screenshot of a SERP for the query "Rasika West End" (accessed on November 30, 2022).

### D.   Local Services Ads

**163.**   When a Google user enters certain queries relating to local services, such as "electricians near me," Google may surface a Local Services Ads carousel, as depicted below for desktop queries, at the top of the SERP among other SERP elements (such as text advertisements and web results). Amaldoss (Colo. Pls.' Expert) Opening Rep. ¶ 118 & Fig. BD.1.a. (Ex. 9).[15]

---

[15] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BD.1.d. (Ex. 9) for image of Local Services Ads unit on a mobile device.

**Plaintiff States' Response**: Undisputed.



164.    The categories of local services providers who can advertise in the Local

Services Ads carousel include electricians, plumbers, locksmiths, and HVAC service

providers, among others. Spalding (Google) Tr. 105:19-106:24 (Ex. 18).

**Plaintiff States' Response**: Undisputed.


165.    The web results, as well as text advertisements (if any), that Google serves for

these types of queries along with Local Services Ads on the SERP may include SVPs. Amaldoss

(Colo. Pls.' Expert) Tr. 157:13-157:17 (Ex. 40); Amaldoss (Colo. Pls.' Expert) Dep. Ex. 3 (Ex.

48).

**Plaintiff States' Response**: Disputed in part as vague and ambiguous.  Undisputed that

web results and text advertisements may include SVPs regardless of whether Local Services Ads

are served by Google in response to a query. Disputed to the extent this is meant to imply that

SVPs have an equal opportunity to participate in Local Services Ads.  Baker Opening Report ¶

280 (Ex. 2) (SVPs "cannot appear prominently in the tile of local services ads (e.g., as a guide to

home services) on Google's SERP.  Rather, it must purchase an ad in the name of a single one of

its providers, limit its name to a much less prominent position than the individual provider's

name, and accept that the traffic from the ad it has purchased goes to a Google page (not, as with

a text ad, to the SVP's own website."); *see also* Defendant Google LLC's Supplemental

Responses and Objections to Colorado Plaintiffs' Third Set of Interrogatories, May 20, 2022,

Response to Interrogatory No. 9 (Ex. 222).

166.    Google's design of the Local Services Ads unit may provide users, among other

things:

   a.   Ads for up to three local service providers;

   b.   Name of provider, hours of operation, service location, and a star rating from user
        reviews;

   c.   For those providers appearing in the Local Services Ads unit as a result of an
        SVP's participation in Google's Local Services Ads Partner Program, the name of
        the SVP;

   d.   An indication whether the provider is "Google guaranteed", meaning the provider
        has passed Google's verification process (including, for example, verification that
        the provider maintains proper licenses) and that Google may reimburse customers
        who are dissatisfied with the quality of the work from that provider; and

   e.   A link to Google's local services immersive where users can find further
        information and further refine their search for local service providers in the user's
        geographic area.

*See* Para. 163 (image of Local Services Ads unit); Para. 183 (image of Local Services Ad);

Amaldoss (Colo. Pls.' Expert) Opening Rep. ¶¶ 118-21 & Fig. 13 (Ex. 9); *Understand the Google

Guarantee*, https://support.google.com/localservices/answer/7125526hl=en&ref_topic=6250184

(last accessed Nov. 27, 2022) (Ex. 49).

**Plaintiff States' Response**: Disputed in part as vague and ambiguous.  Undisputed subparts a, b, d, and e. Disputed subsection c as vague and ambiguous. SVPs participating in Google's Local Services Ads Partner Program are permitted to show their name at the bottom of the advertisement, Amaldoss Opening Report, Fig. BD.1.d (Ex. 5).  The SVP is not eligible to include a link to their website in the advertisement, nor are they eligible for any other attribution, including inside the local services immersive.  Baker Opening Report ¶¶ 280 & 282 (Ex. 1); Amaldoss Opening Report ¶¶ 18-21 (Ex. 5).

### 1.      Origin and Evolution

**167.**     In 2014, Google sought to improve its offerings for both users and for local service providers by exploring the development of an offering called Services Express, which was originally conceived of as a "one-stop solution" for searching and booking local services. GOOG-DOJ-06095362 at -365 (Ex. 50); Spalding (Google) Tr. 99:6-104:16 (Ex. 18). Google sought to develop an offering in the local services space to help users find quality, trusted service providers and because the industry presented a large financial opportunity. GOOG-DOJ-06095362 at -366 (Ex. 50); Spalding (Google) Tr. 99:6-104:16 (Ex. 18).

**Plaintiff States' Response**: Dispute in part as contradicted by other evidence. Undisputed that in 2014 Google explored the development of an offering called Services Express that was described as a "one-stop solution" for searching and booking local services. Disputed as contradicted by other evidence to the extent Statement 167 implies that Google only sought to develop an offering in the local services space to help users find quality, trusted service providers and because the industry presented a large financial opportunity.  Google Local Service Ads were also developed to protect Google against disintermediation by SVPs, such as Homeadvisor and Thumbtack.  GOOG-DOJ-12436033 (Ex. 231) ████████████

███████████████████████████████████████

████████████████████████████

**168.**     At that time, Google observed that "[t]here's a real pain point - finding a trustworthy service provider is an arduous process. A disproportionate amount of work that each user has to repeat each time. . . Looking for a plumber is a 9-step process." GOOG-DOJ-06095362 at -366 (Ex. 50). Google conducted a user survey, which found that users were seeking an "easy/fast [way] to find trusted provider who's not overly expensive." GOOG-DOJ- 06095362 at -378 (Ex. 50).

     **Plaintiff States' Response**: Undisputed that Google Exhibit 50 includes the quotation included in Statement 168 and that Google Exhibit 50 refers to a user survey Google conducted.


**169.**     One challenge with local services is that many service professionals are small local businesses without a quality online presence and without the know-how to effectively market their services online, making it difficult for users to locate and assess local service providers via weblinks or text ads. Spalding (Google) Tr. 99:23-101:14 (Ex. 18).

     **Plaintiff States' Response**: Undisputed.


**170.**     Another challenge in the local services industry is fraud in advertising for local services. GOOG-DOJ-04166187 at -187 (Ex. 51) ("Bad actors are motivated, savvy and know how to make their operation appear legitimate. Without a more involved business verification process and trust signals like reviews, consumers remain vulnerable.").

     **Plaintiff States' Response**: Undisputed.  *See also* Varian (Google) Tr. 583:19-584:3 (Ex. 49) ("Well, again, I want to emphasize I'm not really familiar with this issue.  But I will say

there's some horror stories published about people who are fraudulent, incompetent, not capable,

et cetera, causing damage to -- to Google customers.  So, for example, there's the locksmith

story.  If you look at The New York Times, years ago, there was a long story about locksmiths,

where people would pose as locksmiths in order to charge exorbitant fees for doing minor

repairs.").


171.     In the summer of 2015, Google launched a local services pilot experiment in the

Bay Area. GOOG-DOJ-23326660 at -661 (Ex. 52).

**Plaintiff States' Response**: Undisputed.


172.     The goal of the pilot experiment was to "(a) improve user experience on

Google.com for home service queries and (b) generate value for home service providers by

sending them customer leads." GOOG-DOJ-23326660 at -661 (Ex. 52).

**Plaintiff States' Response**: Undisputed that Google Exhibit 52 includes the quotation as

shown above.


173.     Prior to launching the Local Services Ads product, Google conducted quality

testing to evaluate whether the unit would improve user experience. GOOG-DOJ-23326660 at -

662 (Ex. 52) (explaining pilot experiment analysis and noting "we received positive qualitative

feedback about the product features").

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and as

immaterial.  Undisputed that prior to launching the Local Services Ads product, Google

conducted testing to evaluate whether the unit would improve user experience.  Disputed to the

extent Statement 173 purports to say that the pilot experiment analysis *only* "received positive qualitative feedback about the product feature."  Other feedback on the experiment analysis included bad user experience ████████████████████████████.  GOOG-DOJ-23326660 at -662 (Google Ex. 52).  Further disputed as specialized results where Google excludes or limits SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).

Disputed as immaterial because Plaintiff States have not challenged the creation of the Local Services Ads, nor have Plaintiff States challenged the inclusion of the Local Services Ads on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's undisputed decision by Google to prohibit SVPs from advertising in their own name in the Local Services Ads.  Google has offered no evidence that it tested whether user preferences are consistent with its business decision to exclude SVPs from the Local Services Ads.

**174.**  ████████████████████████████
████████████████████████████████████████
████████████████████████████████  GOOG-DOJ-04166187 at -187 (Ex. 51); GOOG-DOJ-26930689 at -692-693 (Ex. 53). Google also introduced, in 2016, its "Google Guarantee" for consumers, described at the time as a "money-back guarantee, represented by the Google-guarantee badge." GOOG-DOJ-26930689 at -690 (Ex. 53).

**Plaintiff States' Response**: Disputed in part as not supported by the cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that

Google Exhibit 51 includes the quotation as shown above and that Google introduced "Google Guarantee" in 2016, which is described with the quotation shown above in Google's Exhibit 53. Disputed that "Google developed criteria to assess the benefits of its Local Services Ads product, including ████████████████████████████████████████ ████████████████████████████████████ to the extent Statement 174 implies these criteria applied to tests beyond the test described in Google Exhibit 51. The cited materials only demonstrate that Google developed the aforementioned criteria to assess the benefits of its Local Services Ads product regarding Google's "paid local test in LA in Q3." GOOG-DOJ-04166187 at 187 (Google Ex. 52).

**175.** As of August 2016, Google deemed the launch of its Local Services Ads product "sufficiently successful" that it planned to expand the product to other regions. GOOG-DOJ-26930689 at -690 (Ex. 53).

**Plaintiff States' Response**: Undisputed that Google Exhibit 53 describes the launch of its Local Services Ads product in the "Bay Area" as "sufficiently successful" that it planned to expand the product to Sacramento and San Diego. GOOG-DOJ-26930689 (Google Ex. 53) ("Home Services expanded to Sacramento…It's now time to test even bolder plans, which is why we're launching in San Diego with a model that's much more ambitious and addresses a much broader range of consumer needs.").

**176.** In October 2017, Google announced the national launch of its Local Services Ads product, having seen "successful user engagement," "[g]reat user experiences," and "[e]ngaging SERP units" during the product rollout. GOOG-DOJ-14418354 at -355-57 (Ex. 54) (reflecting that "key metrics" included "[d]elight our users with a useful experience when they

search for home services"). Over time, Google has also added new service categories to its

Local Services Ads offerings. GOOG-DOJ-06902634 at -637 (Ex. 116).

**Plaintiff States' Response**: Disputed in part as immaterial.  Undisputed that Google

Exhibit 54 self-describes its Local Services Ads product with phrases such as "successful user

engagement," "[g]reat user experience," and "[e]ngaging SERP units." GOOG-DOJ-14418354

at 355-57.  Undisputed that Google has added new service categories to its Local Services Ads

offerings.

Disputed as immaterial that Google launched its Local Services Ads product "having

seen 'successful user engagement,' '[g]reat user experiences,' and '[e]ngaging SERP units'

during the product rollout."  Plaintiff States have not challenged Google's inclusion of

specialized units on the SERP.  Plaintiff States challenge Google's decision to prohibit SVPs

from appearing in certain specialized units.  Google has offered no evidence that it tested

whether users would prefer the inclusion of SVPs in those units.  To the extent Google has

tested users' satisfaction with launches not impacted by the challenged conduct is immaterial to

Plaintiff States' claims.


**177.**     Google continues to evaluate whether users are satisfied with Local Services

Ads, and its analyses show that users are generally satisfied with Local Services Ads. For

example, in 2017 Google conducted a user survey that showed that user satisfaction for different

aspects of Local Service Ads ranged from ███████. GOOG-DOJ-14418354 at -359 (Ex.

54).  In 2019, Local Services Ads had a ███ customer satisfaction rate. GOOG-DOJ-06902634

at -666 (Ex. 116).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and

immaterial.  Undisputed that Google uses metrics to evaluate whether users are satisfied with the

Local Services Ads.  Disputed in part because Plaintiff States' expert, Jonathan Baker,

performed an empirical analysis and found ████████████████████████████████

██████████████████████████████.  Baker Rebuttal Report Table 1 & Figure

(Ex. 2).  Furthermore, disputed as contradicted by other evidence that users were satisfied with

the restrictions Google imposed on how SVPs could display in Local Services Ads. Stein

(HomeAdvisor) Tr. 203:3-204:13 (Ex. 188).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the local

unit, nor have Plaintiff States challenged the inclusion of the local unit on the SERP.  Google

MSJ at 16.  Instead, Plaintiff States challenge Google's decision to place prohibit SVPs from

prominently appearing in the local unit.  Google has offered no evidence that it tested whether

users would prefer the inclusion of SVPs in the Local Services Ads without these restrictions.

Therefore, Plaintiff States dispute the term "evaluate" to the extent it is meant to imply that

Google has evaluated the challenged conduct: Google's restrictions imposed on SVPs

purchasing Local Services Ads.

## 2. How Local Services Ads Work

**178.**    The providers who appear in the Local Services Ads on the SERP are currently

chosen based on an auction that accounts for the advertiser bid and quality. Spalding (Google)

Tr. 129:24-130:9 (Ex. 18).

**Plaintiff States' Response**: Undisputed.

**179.**    Google conducts quality verification checks by, for example, ensuring a business

possesses the proper licenses before marking a provider as "Google Guaranteed," which provides a money-back guarantee and a "[s]trong signal of trust for both consumers and providers." Spalding (Google) Tr. 105:6-18, 108:14-109:12 (Ex. 18); GOOG-DOJ-06902634 at -664-65 (Ex. 116).

**Plaintiff States' Response**: Disputed in part as not supported by the cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). Undisputed that service providers go through a verification process by, for example, ensuring they possess the proper licenses before being marked as "Google Guaranteed," which Google Exhibit 116 says is a "[s]trong signal of trust for both consumers and providers." GOOG-DOJ-06902634 at -664-65 (Google Ex. 116).

Disputed that Google conducts all verification checks." Spalding (Google) Tr. 107:19-109:6 ("there are other cases where an agency or partner might be doing the verification...So Google either conducts or evaluates the screening or works with a partner who does.").

180.    Only service providers may be featured in Local Services Ads on the SERP, as well as in Google's local services immersive and provider detail pages, because the unit is intended to connect consumers and providers of the particular service. Spalding (Google) Tr. 122:3-21 (Ex. 18); Google's 2nd Supp. Resp. to Colo. Pls. 3rd Interrogs. at 6-7 (Ex. 8).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence. Undisputed that only service providers may be featured in Local Services Ads on the SERP, as well as in Google's local services immersive and provider detail pages. Disputed in part because Google has offered no evidence to support its business decision of prohibiting SVPs from purchasing Local Services Ads on their own behalf. Indeed, Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of

111

SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally.

Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ███████

███████████████████████████████████████████████████████████

███████.  Baker Rebuttal Report ¶ 25, Table 1 & Figure 2 (Ex. 2).

**181.**     Through Google's Local Services Ad Partnership Program, SVPs may purchase Local Services Ads to advertise the services of particular service providers that are customers of the SVP. Spalding (Google) Tr. 110:10-112:25 (Ex. 18); *Grow your business with the Local Services Ads partner program*, https://ads.google.com/local-services-ads/partners/ (last accessed Dec. 9, 2022).

**Plaintiff States' Response**: Undisputed.

**182.**     Google obtains data regarding a local service provider's services, location, phone number and other information from the local service provider via the provider's ad campaign or an SVP's API. Google's 3rd Supp. Resp. to Colo. Pls.' Nov. 1, 2021 30(b)(6) Notice at 7 (Ex. 39).

**Plaintiff States' Response**: Undisputed.

**183.** SVPs who purchase Local Services Ads for their providers may appear by name in the ad on the SERP as reflected below (where "Your business name" appears), in the immersive, and on the provider detail page. Amaldoss (Colo. Pls.' Expert) Opening Rep. ¶ 121 (Ex. 9).

**Plaintiff States' Response**: Undisputed.



*See Grow your business with the Local Services Ads partner program*, https://ads.google.com/local-services-ads/partners/ (last accessed Dec. 9, 2022).

**184.** From both the Local Services Ads immersive and the provider's detail page, Google provides users with information enabling them to contact the provider directly or book a service with the provider. Spalding (Google) Tr. 118:16-119:12 (Ex. 18).

**Plaintiff States' Response**: Disputed as vague and ambiguous and as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). Undisputed that Google provides users phone numbers from the local service provider via the provider's ad campaign or an SVP's API, which enable users to contact the provider directly. Undisputed that some service providers have booking enable with Google, which permit a consumer to book a service provider directly through Google. Spalding (Google) Tr. 118:16-119:12 (Google Ex. 18). Disputed to the extent Statement 184 implies anything more, which is not supported by the cited materials.

**185.**     Google receives a payment from the provider for lead generation—i.e., when the user, in fact, contacts or books a provider through Google Local Services. Spalding (Google) Tr. 120:16-24 (Ex. 18).

**Plaintiff States' Response**: Undisputed.

E.     **Movies**

**186.**     When Google's algorithms detect, based on the user's query, that the user is looking for information about movies, such as "popular movies," or "movie showtimes," Google may surface a movies unit among other SERP elements (such as text advertisements and web results). Moxley (Google) Decl. ¶¶ 11-13 (Ex. 16).

**Plaintiff States' Response**: Undisputed.



Screenshot of a Google SERP for the query "movies" (accessed Nov. 11, 2022).

**187.**     Google's design of the movies unit and immersive provides users with structured information, if applicable, including:

    **a.**   A carousel of movies currently in theaters,

    **b.**   Reviews and ratings,

    **c.**   Theaters at which movies may be screened,

    **d.**   Third-party links from which the user can book a ticket for a particular showtime at a particular theater, and

    **e.**   Streaming services on which the user can view the movie.

Moxley (Google) Decl. ¶ 12 (Ex. 16).

    **<u>Plaintiff States' Response</u>**: Disputed as incomplete and immaterial.  Undisputed that Google's movies unit provide users with the structured information about movies identified in Statement 187.  Disputed as incomplete because Statement 187 fails to indicate that SVPs provide Google much of the structured data used in its movies unit.  Google's Third Supplemental Responses to Plaintiffs' November 1, 2021.  Notice of Deposition, Topic 9(c) (Ex. 222).

### 1.       Origin and Evolution

    **188.**    Prior to the launch of Google's movies unit, Google would surface web results and text ads (if any) in response to a movie-related query, and users would need to click through to various individual theaters or other websites or service providers to get information about movies and showtimes. Moxley (Google) Decl. ¶ 14 (Ex. 16).

    **<u>Plaintiff States' Response</u>**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h), and as contradicted by other evidence.  Undisputed that "[p]rior to the launch of Google's movies unit, Google would surface web results and text ads (if any) in response to a movie-related query."  Disputed that by displaying web results and text ads, users would need to click through to various

individual theaters or other websites or service providers to get information about movies and showtimes.  SVPs allow users learn about and select products or services provided by multiple sellers, and have relationships with those sellers that allow them to benefit financially when users make purchases, get quotes, make reservations, or otherwise engage in transactions with the SVP.  Baker Opening Report ¶ 12 (Ex. 1); Baker (Plaintiff States) Tr. 31:1-12 (Ex. 200).  Fandango is an example of an SVP operating within the movies vertical.  Plaintiff States' Third Supplemental Responses to Google's First Set of Interrogatories at 19 (Ex. 222).  "Fandango is the ultimate digital network for all things movies and TV... with best-in-class movie and TV information, movie ticketing, trailers and original video, and home entertainment." https://www.fandango.com/about-us [accessed on January 12, 2023].  Therefore, users may be able to click through to single SVP, such as Fangando, to get comprehensive information about movies and showtimes.

189.     Prior to launching its movie unit, Google conducted testing to evaluate whether its movies unit would improve user experience. Moxley (Google) Decl. ¶ 9 (Ex. 16).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Google conducted certain quality testing prior to launching the movies unit.  Disputed in part because Google has avoided testing the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes

into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1).

Further disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ███████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████ .

GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the movies unit, nor have Plaintiff States challenged the inclusion of the movies unit on the SERP. Google MSJ at 16. Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the movies unit. Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the movies unit or not.

**190.** Google's analyses confirmed that the addition of its movies unit to the SERP improved the overall user experience for users with certain movie-related queries. Moxley (Google) Decl. ¶ 9 (Ex. 16).

**<u>Plaintiff States' Response</u>**: Disputed in part as contradicted by other evidence and immaterial. Undisputed that Google conducted certain quality testing prior to launching the movies unit. Disputed that Google fully tested whether the movies unit would improve user experience and that the addition of the movies unit to the SERP improved the overall user experience. Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units. Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and

in Statement 190.  Evidence exists, however that specialized units excluding SVPs from

participating, like Google's movies unit, are likely providing lower quality information than if

they included SVPs.  Google's web results (which are ranked by Google's search results

algorithm) and its text ads (which are selected by Google's algorithm that takes into account a

prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening

Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an

empirical analysis and found ███████████████████████████████████

████████████████████████████████.  *See* Baker Rebuttal Report Table 1 & Figure 2

(Ex. 2).

Moreover, disputed as evidence from Google's testing of immersives and similar

features supports that users prefer the inclusion of SVPs.  █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the

movies unit, nor have Plaintiff States challenged the inclusion of the movies unit on the SERP.

Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from

appearing in the movies unit.  Google has offered no evidence that it tested whether users

would prefer the inclusion of SVPs in the movies unit or not.


**191.**    Google has launched many improvements to its movies search results over the

years, including adding streaming options when available. Moxley (Google) Decl. ¶ 19 (Ex. 16).

**<u>Plaintiff States' Response</u>**: Disputed as immaterial.  Plaintiff States have not challenged

the creation of the movies' unit, nor have Plaintiff States challenged the inclusion of the movies'

unit on the SERP.  Google MSJ at 16.  Instead, Plaintiff States challenge Google's undisputed decision by Google to prohibit SVPs from appearing in the movies unit as it is displayed on the SERP.  Plaintiff States' Third Supplemental Response to Google's First Set of Interrogatories at 17 (Ex. 222).  Google has offered no evidence that it tested whether user preferences are consistent with its business decision to exclude SVPs from the movies' unit.

**192.**     Google continues to evaluate whether users are satisfied by its movies unit. Moxley (Google) Decl. ¶ 10 (Ex. 16).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that the attached declaration claims that Google continues to conduct certain quality testing of its movies unit.  Disputed to the extent the term "evaluate" implies Google's quality testing fully tests whether the movies unit improves user experience.  Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 192. Evidence exists, however that specialized units excluding SVPs from participating, like Google's movies, are likely providing lower quality information than if they included SVPs. Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found

███████████████████████████████████████████████████████

██████ .  *See* Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ██████████████

████████████████████████████████████████

████████████████████████████████████

██████████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the movies unit, nor have Plaintiff States challenged the inclusion of the movies unit on the SERP. Google MSJ at 16. Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the movies unit. Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the movies unit or not.

### 2. How Google's Movies Unit Works

**193.** The movies unit that Google surfaces on a SERP depends on the user's query. Moxley (Google) Decl. ¶ 16 (Ex. 16).

**Plaintiff States' Response**: Undisputed.

**194.** If Google's algorithm perceives the user's intent is to find movies currently in theaters, Google's SERP may display a carousel of those movies. SVPs do not appear in this movies unit on the SERP because they are not movies. Moxley (Google) Decl. ¶ 16 (Ex. 16).

**Plaintiff States' Response**: Undisputed.

**195.** If a user clicks on a movie currently in theaters, Google shows the user additional information about the film, including reviews, showtimes at theaters, and links to purchase tickets (including on SVPs such as Fandango). Moxley (Google) Decl. ¶ 16 (Ex. 16).

**Plaintiff States' Response**: Disputed in part as misleading.  Undisputed that "[I]f a user clicks on a movie currently in theaters, Google shows the user additional information about the film, including reviews, showtimes at theaters, and links to purchase tickets (including on SVPs such as Fandango)."  Disputed as misleading to the extent the image below showing the movie detail page for the movie "Smile" is intended to provide a fair and accurate depiction of the user journey from the SERP to the movies immersive, showing links to purchase tickets, including on SVPs such as Fandango.  The images below remove any indicia of the search term used to access the subsequent pages, nor is there indicia of when the page was accessed.  Furthermore, the images fail account for multiple clicks the user must take before reaching the images below.  The vast majority of users do not ultimately reach an SVP once they enter the immersive.  Elzinga (Google Expert) Tr. 333:17-336:4 (Ex. 11).



196.     If Google's algorithm perceives the user's intent is to find a movie not currently in theaters, Google's SERP may display information about the film, weblinks to websites where the user can learn more about the film, and options for streaming the film. Moxley (Google) Decl. ¶ 17 (Ex. 16).

**Plaintiff States' Response**: Undisputed.



Screenshot of a Google SERP page for a query of "Shawshank Redemption" (accessed November 11, 2022).

197.     For queries with movie-related intent, SVPs may appear in text ads, web results, and within the movies immersive and movie detail pages. Moxley (Google) Decl. ¶ 18 (Ex. 16).

**Plaintiff States' Response**: Disputed as vague and ambiguous and as misleading. Undisputed that web results and text advertisements may include SVPs regardless of whether the movies' unit is served by Google in response to a query. Disputed to the extent this is meant to imply that SVPs have an opportunity to appear in the movies' unit.  SMF ¶ 194 ("SVPs do not appear in this movies unit on the SERP because they are not movies.").

F.     Events

198.    When Google's algorithms detect, based on the user's query, that the user is looking for information about events, such as "events in seattle" Google typically displays a SERP containing an "events unit" among other SERP elements (such as text advertisements and web results), as depicted below from a desktop computer.[16] Moxley (Google) Tr. 75:3-8 (Ex. 15); Moxley (Google) Decl. ¶¶ 20-22 (Ex. 16).

**Plaintiff States' Response**: Undisputed.



*See* Amaldoss (Colo. Pls.' Expert) Opening Rep. ¶ 150 & Appx. B Fig. BF.1.a (Ex. 9).

199.    Google's design of the events unit provides users with structured information including:

---

[16] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BF.1.d (Ex. 9) for image of events unit on a mobile device.

     **a.**   A list of relevant upcoming events activities from sites across the web;

     **b.**   Images, dates, times, and locations for the events; and

     **c.**   A link to an events immersive where users can find further information and

     further refine their events search.

Moxley (Google) Decl. ¶ 21 (Ex. 16).

    <u>**Plaintiff States' Response**</u>: Disputed as incomplete.  Undisputed that Google's events

unit provide users with the structured information about events identified in Statement 199.

Disputed as incomplete because Statement 199 fails to indicate that SVPs provide Google much

of the structured data used in its events unit.  Google's Third Supplemental Responses to

Plaintiffs' November 1, 2021. Notice of Deposition, Topic 9(c) (Ex. 222).


    **200.**   For such queries with events-related intent, SVPs may appear in text ads, web

results, and within the events immersive and events detail pages. Moxley (Google) Decl. ¶ 26

(Ex. 16).

    <u>**Plaintiff States' Response**</u>: Disputed in part as vague and ambiguous and misleading.

Undisputed that web results and text advertisements may include SVPs regardless of whether

the events unit is served by Google in response to a query.  Disputed to the extent this is meant

to imply that SVPs have an opportunity to appear in the events unit.  Google SMF ¶ 208 ("SVPs

do not appear in the events unit on the SERP because they are not events.").


     **1.**    **Origin and Evolution**

    **201.**   Prior to the launch of Google's events unit, Google would generally surface only

text ads and web results in response to an events-related query, and users would need to click

through to other sites, including various SVPs, to find an event and ticket purchasing options. Moxley (Google) Decl. ¶ 23 (Ex. 16).

**Plaintiff States' Response**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h), and as contradicted by other evidence.  Undisputed that "[p]rior to the launch of Google's movies unit, Google would surface web results and text ads (if any) in response to a events-related query." Disputed that by displaying web results and text ads, "users would need to click through to other sites, including various SVPs, to find an event and ticket purchasing options."  SVPs allow users to learn about and select products or services provided by multiple sellers, and have relationships with those sellers that allow them to benefit financially when users make purchases, get quotes, make reservations, or otherwise engage in transactions with the SVP.  Baker Opening Report ¶ 12 (Ex. 1); Baker (Plaintiff States) Tr. 31:1-12  (Ex. 200).  SeatGeek, LiveNation/Ticketmaster, and Stubhub are examples of SVPs operating within the events vertical.  Plaintiff States' Third Supplemental Responses to Google's First Set of Interrogatories at 19.  Therefore, users may be able to click through to a single SVP, such as SeatGeek, to find an event and ticket purchasing options.

202.     In 2017, Google launched its events unit to provide users with a clear summary of upcoming events to make it easier for users to find events. Moxley (Google) Decl. ¶ 24 (Ex. 16).

**Plaintiff States' Response**: Undisputed.

203.     Prior to launching its events unit, Google conducted testing to evaluate whether the unit would improve user experience. Moxley (Google) Decl. ¶ 9 (Ex. 16).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Google Exhibit 16 says "Similarly, Google launched its events unit only after it determined based on testing that the events unit improved the overall user experience."  Disputed in part because Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 203.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ██████████████████

███████████████████████████████████

████████████████████████████████

████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the events unit, nor have Plaintiff States challenged the inclusion of the events unit on the SERP. Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the events unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the events unit or not.

**204.**    Google's analyses confirmed that its events unit improved the overall user experience on the SERP. Moxley (Google) Decl. ¶ 9 (Ex. 16).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that Google conducted certain quality testing prior to launching the movies unit.  Disputed in part because Google has avoided testing the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitations imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally.  Evidence exists, however, to support that specialized results where Google excludes SVPs are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly. Baker Opening Report Table 28 & 29 (Ex. 1).

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ███████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the events unit, nor have Plaintiff States challenged the inclusion of the events unit on the SERP. Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the events unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the events unit or not.

**205.**  For example, feedback from human evaluation raters and users indicated the usefulness of the events unit. Moxley (Google) Tr. 75:13-19 (Ex. 15).

**Plaintiff States' Response**: Disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h), as contradicted by other evidence, and as immaterial.  The evidence Google cites does not show that feedback from human evaluation raters and users indicated the usefulness of the events unit.  Rather, the evidence Google cites to refers to testimony in which Ms. Moxley generally describes how Google determines for which queries the events unit is triggered and displayed to the user.  Moxely Tr. 75:3-19 (Google Ex. 15).

Disputed in part because Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 205.  Evidence exists, however that specialized units excluding SVPs from participating, like Google's events unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ██████████████████ ████████████████████████████████.  Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs.  ██████████████████ ████████████████████████████████████████████ ████████████████████████████████████

████████.  GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the events unit, nor have Plaintiff States challenged the inclusion of the events unit on the SERP. Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the events unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the events unit or not.

**206.**    Google continues to evaluate whether users are satisfied with its events unit. Moxley (Google) Decl. ¶ 10 (Ex. 16).

**<u>Plaintiff States' Response</u>**: Disputed in part as contradicted by other evidence and immaterial.  Undisputed that the attached declaration claims that Google continues to conduct certain quality testing of its events unit.  Disputed in part because Google has conspicuously avoided testing the challenged conduct material to this case – the effect of limiting the ability of SVPs to be visible in specialized units.  Google has presented no evidence that the challenged visibility limitation imposed upon specialized units were subject to the ordinary-course testing and review process of which it boasts generally and in Statement 206.  Evidence exists, however that specialized units excluding SVPs from participating, like Google's events unit, are likely providing lower quality information than if they included SVPs.  Google's web results (which are ranked by Google's search results algorithm) and its text ads (which are selected by Google's algorithm that takes into account a prediction of the value of the ad to the search user) often rank SVPs highly.  Baker Opening Report Table 28 & 29 (Ex. 1).  Further, Plaintiff States' expert, Jonathan Baker, performed an empirical analysis and found ████████

██████████████████████████████████████████████████████.

Baker Rebuttal Report Table 1 & Figure 2 (Ex. 2).

Moreover, disputed as evidence from Google's testing of immersives and similar features supports that users prefer the inclusion of SVPs. ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████. GOOG-DOJ-26452172 (Ex. 209); *see also* GOOG-DOJ-32477235 (Ex. 237).

Also disputed as immaterial, Plaintiff States have not challenged the creation of the events unit, nor have Plaintiff States challenged the inclusion of the events unit on the SERP. Google MSJ at 16.  Instead, Plaintiff States challenge Google's decision to prohibit SVPs from appearing in the events unit.  Google has offered no evidence that it tested whether users would prefer the inclusion of SVPs in the events unit or not.

### 2.    How Google's Events Unit Works

207.    For queries with events-related intent, along with the events unit, search text ads, web results, Google's local unit, and other elements may also appear on an events-related SERP. Moxley (Google) Decl. ¶ 25 (Ex. 16).

**Plaintiff States' Response**: Disputed as vague and ambiguous and misleading. Undisputed that web results and text advertisements may include SVPs regardless of whether the events unit is served by Google in response to a query.  Disputed to the extent this is meant to imply that SVPs have an opportunity to appear in the events unit.  Google SMF ¶ 208 ("SVPs do not appear in this events unit on the SERP because they are not events.").

208.    SVPs do not appear in the events unit on the SERP because they are not events. Moxley (Google) Decl. ¶ 26 (Ex. 16).

**Plaintiff States' Response**: Undisputed that Google does not permit SVPs to appear in

the events unit.

209.     For such queries with events-related intent, SVPs may appear in text ads, web results, and within the events immersive and events detail pages.  Moxley (Google) Decl. ¶ 26 (Ex. 16).

**Plaintiff States' Response**: Disputed as vague and ambiguous and as misleading. Undisputed that web results and text advertisements may include SVPs regardless of whether the events' unit is served by Google in response to a query.  Disputed to the extent this is meant to imply that SVPs have an opportunity to appear in the events' unit.  Google SMF ¶ 208 ("SVPs do not appear in the events unit on the SERP…").

210.     If the user clicks on a particular event or on the "Search more events" link, Para. 198 (image of events unit), the user is taken to the events immersive page, which allows users to further search and filter for events, and see additional information about events such as the date and time of the event, the location of the event, a brief description of the event. Moxley (Google) Decl. ¶ 27 (Ex. 16).

**Plaintiff States' Response**: Disputed as immaterial what information is presented to users inside the Google events unit. Plaintiff States' contention is that Google excludes SVPs, such as those allowing users to book a ticket for a particular event, which are not permitted to participate in the events unit as it appears on the SERP.  Google's expert agrees that very little traffic comes from links provided within Google immersives.  *See* Elzinga (Google Expert) Tr. 333:17-336:4 (Ex. 11).

211.     In the events immersive page, the user is also presented with a detail page for

each event that includes unpaid weblinks to third-party websites, which often include SVPs such as Ticketmaster or Live Nation, where the user could further explore the event and/or purchase tickets. Moxley (Google) Decl. ¶ 28 (Ex. 16).[17]

**Plaintiff States' Response**: Undisputed.



### III. Challenged Data Agreements

212.    For certain information categories, Google receives data from third parties for use in these results and related advertising offerings. Holden (Google) Decl. ¶ 32 (Ex. 6).

**Plaintiff States' Response**: Undisputed

213.    Google enters into agreements with third parties to receive data in order to create

---

[17] *See* Amaldoss (Colo. Pls.' Expert) Opening Rep. Fig. BF.1.e (Ex. 9) for image of events immersive on a mobile device.

relevant, useful results that respond to user queries quickly and comprehensively. Holden

(Google) Decl. ¶ 33 (Ex. 6).

    **Plaintiff States' Response**: Undisputed.


214.    Structured data, as opposed to data obtained from crawling the open web,

enables Google to, for example, provide users with accurate hotel room pricing, availability, and

booking information nearly instantaneously from a variety of sources. Holden (Google) Decl. ¶

33 (Ex. 6).

    **Plaintiff States' Response**: Undisputed.


215.    The type of data Google contracts for differs depending on the information

category. Holden (Google) Decl. ¶ 35 (Ex. 6).

    **Plaintiff States' Response**: Undisputed.


216.    For example, in Google's specialized hotel results, Google contracts for

information including price information, availability, and lodging features. Google also uses

hotels-related data to display unpaid and paid links to book hotels on hotel suppliers and SVPs'

websites. Holden (Google) Decl. ¶¶ 32-33 (Ex. 6); Google's 3rd Supp. Resp. to Colo. Pls.' Nov.

1, 2021 30(b)(6) Notice at 10-11 (Ex. 39).

    **Plaintiff States' Response**: Disputed in part as incomplete and misleading.  Undisputed

that "Google contracts for information including price information, availability, and lodging

features." Disputed that, while Google uses hotels-related data to display unpaid and paid links

to book hotels on hotel suppliers and SVPs' websites, Google does not display unpaid or paid

links to book on SVPs' websites in the hotel unit.  Google SMF at ¶ 89.  Moreover, Google uses

the aforementioned information for additional purposes beyond displaying unpaid and paid links to book hotels on hotel suppliers and SVPs' websites, including to display hotel results in Google Search.  Google's Third Supplemental Responses to Plaintiffs' 11/1/21 Notice of Deposition, Topics 10 & 11 (Ex. 222); Elzinga (Google Expert) Rebuttal Report Ex. 5 (Ex. 214);



217.    Google also uses data from food-delivery SVPs to display links so that consumers can order food delivery using the SVP's service. Google's 3rd Supp. Resp. to Colo. Pls' Nov. 1, 2021 30(b)(6) Notice at 7 (Ex. 39).

**Plaintiff States' Response**: Disputed in part as incomplete and misleading.  Undisputed that Google "uses data from food-delivery SVPs to display links so that consumers can order food delivery using the SVP's services."  Disputed that, while Google uses data from food-delivery SVPs to display links so that consumers can order food delivery using the SVP's service, Google does not display unpaid or paid links to book on SVPs' websites in the local unit.  Google SMF ¶ 159.  Moreover, Google has the capability of using the aforementioned

information for additional purposes beyond displaying links so that consumers can order food delivery using the SVP's services, including in the local unit where SVPs are ineligible to appear.  Elzinga Rebuttal Report Ex. 5 (Ex. 214).

> **218.**    Google also uses flights-related data to display unpaid links to book flights on airline websites and on SVPs' websites, to the extent permitted by airlines. Google's 3rd Supp. Resp. to Colo. Pls.' Nov. 1, 2021 30(b)(6) Notice at 11 (Ex. 39).

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence, incomplete misleading.  Undisputed that Google "uses flights-related data to display unpaid links to book flights on airline websites and on SVPs' websites." ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

Disputed that, while Google uses flights-related data – including data from SVPs – to display links so that consumers can book flights on airline websites and SVPs' websites, Google does not display unpaid links to book on SVPs' websites in the flights unit.  Google SMF ¶ 120.  Moreover, Google uses flights-related data, including data obtained from SVPs, beyond using it to display unpaid links to book flights on airline websites and on SVPs' websites, including to display flights results in Google Search.  Google's Third Supplemental Responses to Plaintiffs' 11/1/21 Notice of Deposition, Topics 11 & 12 (Ex.

222); Elzinga Rebuttal Report Ex. 5 (Ex. 214).

219.    Google also uses data from SVPs who participate in the Local Services Ads

partnership program to display advertisements for the local service provider being marketed by

the SVP. Google's 3rd Supp. Resp. to Colo. Pls' Nov. 1, 2021 30(b)(6) Notice at 7 (Ex. 39).

**Plaintiff States' Response**: Undisputed.

220.    Content license agreements do not pertain to a third party's ability to appear in

Google's web results or text ads. A third party such as a travel SVP, airline, or hotel can appear

in Google's web results or text ads without providing any structured data to Google (such as

pricing or availability). Holden (Google) Decl. ¶ 36 (Ex. 6).

**Plaintiff States' Response**: Undisputed.

221.    For certain specialized ad formats, for example Hotel Ads, if third parties

(including both SVPs and hotels) wish to appear in an ad, they must provide data necessary to

surface the ad. Holden (Google) Decl. ¶ 34 (Ex. 6).

**Plaintiff States' Response**: Disputed as incomplete and misleading.  Disputed to the

extent Statement 221 implies that third parties must provide data necessary to surface on only

specialized ad formats.  Third parties are also required to provide data to appear in free hotel

unit booking links and free shopping listings.  Elzinga Opening Report, ¶¶ 140, 515 (Ex. 30).

222.    Google has entered into content license agreements with a number of SVPs.

Google's Resp. to Colo. Pls. 3rd Interrogs. at 13-14, 24-36 (Ex. 7).

**Plaintiff States' Response**: Undisputed.

**223.**     Some SVPs have chosen not to license or provide certain data to Google. ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

**Plaintiff States' Response**: Disputed as incomplete and misleading.  Undisputed that

"[s]ome SVPs have chosen not to license or provide certain data to Google." ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████

224.     Google abides by any provision in its content license agreements governing the usage or retention of data provided pursuant to the license. Google's 1st Supp. Resp. to Colo. Pls. 3rd Interrogs. at 5 (Ex. 57).

**Plaintiff States' Response**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that Google has content license agreements governing the usage or retention of data provided pursuant to the license. Disputed in part because nothing in the cited material indicates that Google abides by or complies with the terms in its content licensing agreements.

**IV.     General Search Engine Specialized Search Results and Partnerships**

    **A.     Other General Search Engines Offer Specialized Search Results**

225.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

**Plaintiff States' Response**: Undisputed.

226.   ████████████████████████████████████████

████████████████████████████████████████████

██

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 226 is accurate and ████████████████████████████████████████

227.   ████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

██████

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 227 is accurate.

228.   ████████████████████████████████████████

████████████████████████████████████

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 228 is accurate.

229.   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 229 is accurate.

230.   ███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 230 is accurate.

231.   ███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 231 is accurate.

232.   ██████████████████████████████████████████

████████████████████████████████████████████

████████████

**Plaintiff States' Response**: Disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited passage from the transcript nowhere mentions ███████████████████████ .  The transcript refers to

████████████████████████████████████████████████████

██████████████████████████████████

**B.**    **GSE-SVP Partnerships**

**233.**   ██████████████████████████████████████████

████████████████████████████████████████████████████

**Plaintiff States' Response**: Undisputed.

**234.**   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████

**Plaintiff States' Response**: Undisputed.

**235.**   ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

**Plaintiff States' Response**: Undisputed.

**236.**   ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

**Plaintiff States' Response**: Undisputed.

237.   ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

**Plaintiff States' Response**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that the quoted testimony in Statement 237 is accurate and that ████████████████████████

████████████████████████████████████████

███████████████████████████████████████ .

238.   ████████████████████████████████████████

████████████████████████████████████████

████████████

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 238 is accurate and that ██████████████████████████████ .

239.    For certain information categories, like hotels, Bing does not link to any hotel or SVP website from the specialized unit on its initial search results page.

**Plaintiff States' Response**: Undisputed.



Screenshot of the Bing hotels unit on a Bing SERP for the query "hotels in NYC" (accessed November 14, 2022).

240.    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**Plaintiff States' Response**: Undisputed, however, ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

241. ████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████

**Plaintiff States' Response**: Undisputed that ███████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████

242. ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

**Plaintiff States' Response**: Undisputed that the quoted testimony in Statement 242 is accurate.

## V.    Advertisers' Options for Buying Online Advertising

243.    Advertisers have choices when it comes to buying online ads. For example, advertisers can buy online advertising:

a.    Directly from online content publishers, for example, The New York Times. New York Times Advertising, *Display Units*, available at

https://advertising.nytimes.com/products/display-units/ (last accessed Dec. 9, 2022).

b.    Directly from online platforms like Google, Amazon, Facebook, and Microsoft.

Dischler (Google) Tr. 419:8-421:24 (Ex. 63); see also Amazon, Amazon Ads, available at https://advertising.amazon.com/explore- products ref_=a20m_us_gw_exp_ap_c (last accessed Dec. 9, 2022); Meta, Facebook Ads, available at https://www.facebook.com/business/ads (last access Dec. 5, 2022) (Ex. 64); Heath (Microsoft) Tr. 17:8-21 (Ex. 65); Utter (Microsoft) Tr. 74:9-76:7 (Ex. 66). Advertisers may purchase advertisements from these "native tools" or "user interface" ("UI") tools without using a search engine management tool ("SEM tool"). Dischler (Google) Tr. 419:8-421:24 (Ex. 63); Heath (Microsoft) Tr. 17:8-21 (Ex. 65).

**c.** Using SEM tools. SEM tools allow advertisers to manage ad campaigns across multiple channels (e.g., more than one search engine or social media platform). Lowcock (Interpublic) Tr. 168:10-169:10 (Ex. 67); Booth (Home Depot) Tr. 107:11-108:9 (Ex. 68); Utter (Microsoft) Tr. 21:4-17 (Ex. 66). Search Ads 360 ("SA360"), Marin, Skai (formerly known as "Kenshoo"), and Adobe are examples of SEM tools. Heath (Microsoft) Tr. 29:3-10 (Ex. 65); *see also* Lien (Marin) Tr. 33:6-34:2 (Ex. 69).

**Plaintiff States' Response**: Disputed as contradicted by other evidence and misleading. Undisputed that advertisers may purchase general search text advertising and general search advertising directly from general search engines, such as Google or Microsoft from their "native tools" or "user interface" ("UI") or using SEM tools.

Disputed because, while advertisers may purchase advertising directly from online content publishers, Plaintiff States allege that this form of advertising is not a reasonable substitute for general search text advertising or general search advertising, which is supported by advertiser documents in the record. ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Google has not challenged

Plaintiff States markets in this motion and they should therefore be presumed accurate for

purposes of this motion.  Google MSJ at 14-5.  Therefore, it is contradicted by other evidence

and misleading to suggest advertisers have choices when it comes to buying online ads, such as

display ads when those ads are not considered substitutes.

Further disputed because, while advertisers may purchase advertising directly from

online platforms, Plaintiff States allege that advertising directly on "online platforms

like...Amazon[] [and] Facebook." are not reasonable substitutes for general search text

advertising or general search advertising. ███████████████████████████

███████████████████████ GOOG-DOJ-03181743 at –751 (Ex. 241);

███████████████████████ Again, Google has not challenged Plaintiff States

markets in this motion and they should therefore be presumed accurate for purposes of this

motion.  Google MSJ at 14-15.  Therefore, it is contradicted by other evidence and misleading

to suggest advertisers have choices when it comes to buying online ads, such as on "online

platforms like...Amazon[] [and] Facebook."

**244.**    Advertisers may buy advertising through a mix of these options. Lowcock

(Interpublic) Tr. 170:19-171:5 (Ex. 67); Booth (Home Depot) Tr. 110:8-111:16 (Ex. 68). This

practice is known in the industry as "multi-homing."

**Plaintiff States' Response**: Disputed in part by other evidence and not supported by the

cited materials as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).

Undisputed that advertisers may buy advertising through a mix of native tools offered by

Google or Bing and SEM tools because advertisers often buy these as complements in a

portfolio of advertising products. Amaldoss (Plaintiff States' Expert) Opening Report at 15

("Marketers use a portfolio of media channels to influence consumers at different stages of the

consumer decision-making process."); ███████████████████ GOOG-DOJ-01399616

(Ex. 244). Disputed as not supported by the cited materials as required by Federal Rule of Civil

Procedure 56(c)(1) and Local Rule 7(h) that this practice is known in the industry as "multi-

homing." Nowhere in the cited materials is the term "multi-homing" used.


246. Microsoft Advertising (or "Microsoft Ads" or "Bing Ads") is "a pay-per-click

advertising platform used to display ads based on the keywords used in a user's search query."

MSFT-LIT-0000000320 at -020 (Ex. 70). Advertisers can use Microsoft Ads to place ads on the

search results page of Bing, AOL and Yahoo owned and operated sites, as well as Bing, AOL

and Yahoo syndicated search partner sites. *Id.* at -021.

**Plaintiff States' Response**: Undisputed.


246. Microsoft Ads allows advertisers to buy and manage online search ads on the

Bing search engine. Utter (Microsoft) Tr. 74:9-76:7 (Ex. 66); *see also* Microsoft, *About

Microsoft Advertising*, available at https://ads.microsoft.com/?fdmkt=enus&fdiso=us&fdtz=-5

(last accessed Dec. 9, 2022).

**Plaintiff States' Response**: Undisputed.


247. Advertisers can access Microsoft Ads features directly through the Microsoft

Ads user interface (a "native tool"). Heath (Microsoft) Tr. 15:5-13 (Ex. 65) ███████████



██████████████████████████████████████████████; Alberts (Dentsu) Tr. 322:13-21 (Ex. 71); Amaldoss (Colo. Pls. Expert) Tr. 245:20-21, 302:9-13 (Ex. 40)████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████; Utter (Microsoft) Tr. 75:6-76:7 (Ex. 66) ████████ ██████████████████████████████████; 100:2-24 ████████████████; 262:19-265:4 ████████████████; 266:3-7 ██████████████████; ███████████ ████████████████████████████████████████.

**Plaintiff States' Response**: Disputed as contradicted by other evidence and as misleading. Undisputed that advertisers can access Microsoft Ads features directly through the Microsoft Ads user interface but disputed that evidence in the record demonstrates that advertisers are deterred from doing so. Baker (Plaintiff States' Expert) Tr. 234:13-237:6 (Ex. 200); ██████████████████████████ (Ex. 28); ████████████████████████ ████ (Ex. 19).

**248.** In addition to Microsoft Ads' native tool, advertisers can also buy search ads on Microsoft online properties using a SEM tool or from other "channel partners" of Bing that "facilitate[] advertising." Heath (Microsoft) Tr. 17:22-19:6 (Ex. 65).

**Plaintiff States' Response**: Undisputed.

**249.** Advertisers can use multiple SEM tools via ad agencies. For example, IPG has historically used Skai or Marin, and has also purchased ads using SA360. Lowcock (Interpublic) Tr. 170:19-171:5 (Ex. 67). Home Depot used "multiple" SEM tools—both Marin

and Adobe— before switching to SA360. Booth (Home Depot) Tr. 110:8-111:16 (Ex. 68).

**Plaintiff States' Response**: Disputed as contradicted by other evidence.  Using multiple SEM tools is ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ One of the reasons for this is ████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████

250.     SA360, Marin, Skai, and Adobe offer differing levels of support for Microsoft Ads and other ad platforms. Vallez (Skai) Tr. 54:6-56:22 (Ex. 73); Vallez (Skai) Dep. Ex. 5 (Ex. 74); Skai, *Paid Search*, available at https://skai.io/search/ (last accessed Dec. 5, 2022) (Ex. 75); Lien (Marin) Tr. 35:13-36:7, 39:18-41:22, 49:24-52:6, 112:5-113:12 (Ex. 69); Marin, *MarinOne Paid Search,* available at https://www.marinsoftware.com/solutions/paid-search (last accessed Dec. 8, 2022) (Ex. 76); Collison (Adobe) Decl. ¶¶ 1-4 (Ex. 77); Adobe, *Adobe Advertising Cloud Features,* available at https://business.adobe.com/products/advertising/adobe-advertising-cloud-features.html (last accessed Dec. 8, 2022) (Ex. 78); Google, *Search Ads 360 Help*, *Supported Engines,* available at https://support.google.com/searchads/answer/6073010?hl=en (last accessed Dec. 7, 2022) (Ex. 79).

**Plaintiff States' Response**: Undisputed.

251.     Advertisers that use a SEM tool can (1) evaluate other alternative options for buying and managing online ads, and (2) switch to a native tool (*e.g.*, Microsoft's native tool) or another SEM tool. Booth (Home Depot) Tr. 110:8-113:7 (Ex. 68); Alberts (Dentsu) Tr. 95:25-

96:8 (Ex. 71); Indacochea (Google) Tr. 126:9-20 (Ex. 72) ███████████████████

████████████████████.

**Plaintiff States' Response**: Disputed as vague and ambiguous and contradicted by other

evidence. Disputed as vague and ambiguous in its reference to "alternative options for buying

and managing online ads."  To the extent these alternative options refer to other advertising

formats outside of Plaintiff States' markets, these online advertising products are not reasonable

substitutes for general search text advertising or general search advertising. ████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Google has not

sought to challenge Plaintiff States' markets and therefore they must be presumed correct for

purposes of this motion.  Google MSJ at 14-15.  While it is possible that advertisers are capable

of switching to native tools or another SEM tool, evidence shows significant costs deter them

from doing so. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Amaldoss Opening Report ¶ 257 (Ex. 5);

Amaldoss Reply Report ¶ 125 (Ex. 6).


## VI.    Google's SA360 and Other SEM Tools

252.    Google provides a SEM tool called Search Ads 360 or "SA360," which allows

agencies and marketers to manage search marketing campaigns across multiple search engines,

including Google Ads, Microsoft Ads, Yahoo! Japan, and Baidu. *See* Indacochea (Google)

Decl. ¶ 4 (Ex. 80); Google, *Search Ads 360 Help, What's Search Ads 360?*, available at

https://support.google.com/searchads/answer/1187512hl=en#:~:text=Search%20Ads%20360%2

0is%20a,multiple%20engines%20and%20media%20channels (last accessed Dec. 9, 2022);

Google, *Search Ads 360 Help*, *Supported engines*, available at

https://support.google.com/searchads/answer/6073010?hl=en (last accessed Dec. 7, 2022) (Ex.

79). SA360 does not currently integrate with Pinterest or Amazon, and can only report metrics

and conversions for Facebook, Instagram, and Twitter. *Id.*; *see also* Google, *Search Ads 360*

*Help, Facebook and Instagram features in Search Ads 360*, available at

https://support.google.com/searchads/answer/9000911?hl=en&ref_topic=9000809 (last accessed

Dec. 7, 2022) (Ex. 81); Google, *Search Ads 360 Help, Twitter features in Search Ads 360*,

available at https://support.google.com/searchads/answer/9000912?hl=en&ref_topic=9000809

(last accessed Dec. 7, 2022) (Ex. 82). SA360 was formerly called "Doubleclick Search" or "DS,"

and was rebranded as "Search Ads 360" in 2018. *See* GOOG-DOJ-11662108, at -114 (Ex. 83).

**Plaintiff States' Response**: Undisputed.


253.    Other SEM tools, such as Skai, Marin, and Adobe, allow advertisers to buy

search ads across "general" search engines like Google and Bing.  Vallez (Skai) Tr. 50:12-52:10

(Ex. 73), Vallez (Skai) Dep. Ex. 5 (Ex. 74); Lien (Marin) Tr. 39:12-41:11 (Ex. 69); Collison

(Adobe) Decl. ¶ 3 (Ex. 77).

**Plaintiff States' Response**: Undisputed.


254.    Skai, Marin, and Adobe also allow advertisers to buy online advertising across

sites such as Apple Search Ads, Twitter, TikTok, Amazon, Facebook, Instacart, Snapchat, LinkedIn, and Pinterest. Vallez (Skai) Tr. 50:12-52:10 (Ex. 73), Vallez (Skai) Dep. Ex. 5 (Ex. 74); Lien (Marin) Tr. 39:12-41:22 (Ex. 69); Decl. (Collison Adobe) ¶ 2 (Ex. 77).

**Plaintiff States' Response**: Undisputed.

255.  ████████████████████████████████████

████████████████████████████████████████████

███████▋ ████████████████████████████████

███████████████████████████▌

**Plaintiff States' Response**: Undisputed.

256.  ██████████████████████████████

████████████████████████████████████████████

███████████████████████▐ ████████████████

████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████

**Plaintiff States' Response**: Undisputed.

257.  ████████████████████████████████████

████████████████████████████

**Plaintiff States' Response**: Undisputed.

**258.**    The Home Depot switched from Marin and Adobe to SA360 based on usability, feature preferences, and price. Booth (Home Depot) Tr. 110:8-111:16 (Ex. 68).

**Plaintiff States' Response**: Undisputed.

**A.     Advertisers' Search Advertising Spend on SA360**

**259.**    ███████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

**Plaintiff States' Response**: Disputed as contradicted by other evidence and misleading. ███████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████. GOOG-DOJ-24771373 at -

373 (Ex. 245) ███████████████████████████████████████

███████████████████████████████.  Moreover, ██████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

Advertisers have also seen significant increases in the productivity of their spend when

using auction-time bidding. ████████████████████████████████

https://support.google.com/google-ads/answer/9526545?hl=en (accessed on January 17,

2023) ("hundreds of Search Ads 360 advertisers enabled Google Ads auction-time bidding

and saw an average conversion increase of 15% to 30% at the same or better ROI").


**260.**    Rukmini Iyer, Corporate Vice President of Microsoft Advertising, testified that

██████████████████████████████████████████████████

██████████████████████████████████.  Iyer (Microsoft) Tr. 172:16-

173:5, 183:14-25, 185:7-10 (Ex. 89)

**Plaintiff States' Response**: Disputed as contradicted by other evidence and as

misleading.  Undisputed that Rukmini Iyer, Corporate Vice President of Microsoft Advertising,

testified that ████████████████████████████████████████

██████████████████████████████████████████.  Disputed

in part as misleading because the two factual assertions are related.  Rukmini Iyer testified that

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████  In addition, internal Microsoft documents

154

**261.** ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████

**Plaintiff States' Response**: Disputed as contradicted by other evidence and immaterial.

Internal Microsoft documents describe ███████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

155

███ *see also* GOOG-DOJ-29518150 (Ex. 246); ████████████████████

███

Plaintiff States claim that Google has harmed competition through the totality of its conduct, which include Google's delay of the incorporation of ████████████████

████████ Baker Reply Report ¶ 172 (Ex. 3).  It is therefore immaterial whether Microsoft ███████████████████████████████████

██████████████████████████████ Baker (Plaintiff States) Tr. 52:4-15 (Ex. 200) ("So the – my testimony about competitive harm is about all of Google's conduct taken together, the exclusive defaults and the SVP-related conduct and the SA360-related conduct taken together.  It's not about each piece by piece, the way your question is supposing, so I don't have a different answer for you from what I just gave – the answer I gave before.")

**262.** ████████████████████████

████████████████████████████

███████████████████████████

████████████████████████████

█████████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

████████████████████████████

███████████████

**Plaintiff States' Response**:  Disputed as contradicted by other evidence and as

immaterial.  Internal Microsoft documents describe ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████    ████████

████████████████████    *see also* GOOG-DOJ-29518150 (Ex. 246); █████████████

██████████████████

Moreover, disputed as immaterial because Plaintiff States claim that Google has harmed

competition through the totality of its conduct, which include Google's delay of the

incorporation of ████████████████████████████    Baker Reply Report ¶ 172 (Ex.

3).  It is therefore immaterial whether Microsoft has ██████████████████████████████

█████████████████████████████████████████████████████████

████████    Baker (Plaintiff States) Tr. 152:4-15 ("So the – my testimony about competitive harm

is about all of Google's conduct taken together, the exclusive defaults and the SVP-related

conduct and the SA360-related conduct taken together.  It's not about each piece by piece, the

way your question is supposing, so I don't have a different answer for you from what I just gave

– the answer I gave before.") (Ex. 200).


**B.    Requirements for SEM Tool Providers and Other Parties to Access Search Engine APIs**

**263.**    Google Ads publishes certain "Required Minimum Functionality" (also known

as "RMF") standards for SEM tools and other platforms connecting to the Google Ads API. *See*

Google Advertising Policies Help, *Google Ads API (AdWords API) Policies*, available at

https://support.google.com/adspolicy/answer/6169371hl=en#:~:text=Required%20Minimum%0Functionality%20(RMF)%20refers,See%20the%20RMF%20rules (last accessed Dec. 9, 2022). RMF "refers to the features and other functionality that certain tool developers must offer when using the Google Ads API (AdWords API)." *Id.*

**Plaintiff States' Response**: Undisputed.

264.     Other advertising platforms, like Microsoft Ads, also have requirements for accessing their API. Vallez (Skai) Tr. 164:9-166:9 (Ex. 73); Heath (Microsoft) Tr. 100:4-101:5 (Ex. 65).

**Plaintiff States' Response**: Disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). The cited materials in Statement 264 do not support that Microsoft Ads has requirements that are conditions for accessing their API. ████████████████████████████████████ ████████████████████████████████████████████████ (Google Ex. 65).

265.     ███████████████████████████████████
████████████████████████████████████████████
████████████████████████

**Plaintiff States' Response**: Undisputed.

266.     ███████████████████████████████████
████████████████████████████████

**Plaintiff States' Response**: Undisputed.

**267.**    SA360 offers advertisers a range of engine-specific features for Microsoft Ads. The available features for Microsoft Ads can be viewed (a) on the advertiser's user interface ("UI") in SA360, and (b) help pages available online that list the available feature. Indacochea (Google) Decl. ¶ 6 (Ex. 80)*; see also* Search Ads 360 Help, *Microsoft Advertising features in Search Ads 360*, available at https://support.google.com/searchads/answer/2592341?hl=en (last updated May 17, 2022) (listing features for legacy SA360 platform) (last accessed Dec. 7, 2022) (Ex. 93); *compare with* Search Ads 360 Help, *Microsoft Advertising features in Search Ads 360*, available at

https://web.archive.org/web/20201204032028/https://support.google.com/searchads/answer/259 2341?hl=en&ref_topic=2592040 (last updated November 17, 2020) (listing features for legacy SA360 platform) (last accessed Dec. 7, 2022) (Ex. 94).

    **Plaintiff States' Response**: Undisputed.


**VII.    Google's Development of Microsoft Advertising Features for SA360**

   **A.    Timeline of Microsoft's Feature Requests to SA360**

**268.**    "Feature parity" is a term that was used in Microsoft's requests to SA360 in 2019 and 2020, and in that context, refers to parity between Google Ads features and Microsoft Ads features offered by SA360.[18] GOOG-DOJ-12678310 at -311 (Ex. 87). Microsoft's Shirley Heath testified that "[i]f Google Ads and Microsoft Ads have both launched a feature, our ask and expectation is that equal access would be provided in the platform." Heath (Microsoft) Tr.

---

[18] Google's internal documents refer to "feature parity" in other contexts to mean parity between its legacy SA360 product and the new SA360 platform it launched in February 2022.

51:15- 52:2 (Ex. 65).

**Plaintiff States' Response**: Disputed as incomplete and misleading.  Undisputed that Microsoft used the term "feature parity" in requests to SA360 in 2019 and 2020.  Disputed as incomplete and misleading because the term "feature parity" is also used by Microsoft and other SEM tool providers, such as █████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████

269.    In November 2019, Microsoft asked Google to develop 27 Microsoft Ads features on SA360. *See* GOOG-DOJ-12678310 at -310-13 (Ex. 87). Specifically, Shirley Heath and Jim LaForce of Microsoft emailed employees of Google's SA360 product team a list of 27 (of 54) features that Microsoft believed were not supported by SA360 based on their review of public documentation, and seeking "the same level of access to Microsoft Advertising features that [customers] have to Google Ads features." *Id.* at -310-11.

**Plaintiff States' Response**: Undisputed.

270.    ███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

**Plaintiff States' Response**: Undisputed.

271.    █████████████████████████████████████████████



**Plaintiff States' Response**: Disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h), and as contradicted by other evidence.  The testimony cited in Para. 271 does not support that assertion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Google Ex. 72).

Furthermore, The Court should disregard Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex. 80) to the extent it purports to declare facts or events having occurred after June 17, 2022.  Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex. 80) refers to Google's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and was signed on Dec. 9, 2022.  The discovery cut-off entered by the Court, ECF No. 357, prohibits Parties from relying upon affidavits or declarations submitted pursuant to Fed. R. Civ. P. 56(c) based upon events having occurred after to June 17, 2022.

**272.**   Of the 27 Microsoft Ads features requested by Microsoft in November 2019, Plaintiffs have identified five features that they allege Google either delayed support for, or failed to support: auction-time bidding, call extensions, dynamic search ads, responsive search ads, and local inventory ads. Colo. Pls.' Compl. (ECF No. 1-2) ¶¶ 152, 160; Amaldoss (Colo.

Pls.' Expert) Opening Report at 130 Tbl. 2 (Ex. 9). ███████████████████

███████████. *See* Indacochea (Google) Decl. ¶¶ 7, 10 (Ex. 80).

**Plaintiff States' Response**: Disputed as not supported by the cited material as required

by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h) and contradicted by other

evidence.  Plaintiff States have identified 27 features that they allege Google either delayed

support for, or failed to support.  Plaintiff States' Third Supplemental Response to Google's

First Set of Interrogatories at 17 (Ex. 222).  Professor Amaldoss merely identifies "certain key

features offered by both Google Ads and Microsoft Advertising" that SA360 either only

recently provided support for or for which SA360 still does not offer parity for between Google

Ads and Microsoft Advertising.  In addition, it remains disputed whether Google has provided

parity between Google Ads and Microsoft Advertising for responsive search ads and dynamic

search ads.  Those features remain partially supported on SA360 for Microsoft Advertising.

https://support.google.com/searchads/answer/2592341?hl=en [accessed on January 13, 2023];

Amaldoss Opening Report Table 2 (Ex. 5).


273.    Microsoft's automated bidding is a ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ Iyer (Microsoft) Tr. 157:10-158:1 (Ex. 89);

*see also* Heath (Microsoft) Tr. 84:21-85:22 (Ex. 65). In its November 2019 feature development

request, Microsoft included each of these automated bid strategies, plus a separate "Auction

Time Bidding" strategy. GOOG-DOJ-12678310 at -312 (Ex. 87). Microsoft does not offer a

standalone "auction time bidding" strategy; rather, it is integrated into certain bid strategies. *See*

Microsoft Ads, *Automated Bidding*, available at https://about.ads.microsoft.com/en-

us/solutions/tools/automated-bidding (last accessed Dec. 5,

2022) (Ex. 95).

> **Plaintiff States' Response**: Undisputed.

274.    Microsoft's November 2019 feature requests, including the request for Microsoft Ads' automated bidding, followed the launch of Google Ads auction-time bidding feature on SA360 in September 2019. *See* Google, *Google Ads auction-time bidding comes to Search Ads 360*, dated September 18, 2019, available at https://www.blog.google/products/marketingplatform/360/google-ads-auction-time-bidding-comes-search-ads-360/ (last accessed Dec. 9, 2022).

> **Plaintiff States' Response**: Undisputed.



> **Plaintiff States' Response**: Undisputed.

. Utter (Microsoft) Tr. 276:2-277:19 (Ex. 66). Microsoft rejected this timeline as too slow. at 277:20-278:19

██████████████████  ████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

█████████████████  ████████████████████; Google, *Google*

*Ads auction-time bidding comes to Search Ads 360*, dated September 18, 2019, available at

https://www.blog.google/products/marketingplatform/360/google-ads-auction-time-bidding-

comes-search-ads-360/ (last accessed Dec. 9, 2022).

**Plaintiff States' Response**: Disputed in part as not supported by the cited material as

required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h), and as contradicted

by other evidence.  Undisputed that Microsoft █████████████████████████

████████  ██████████████████████████████.  Disputed in

part because Microsoft ████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

███████████ (Google Exhibit 66).  Microsoft █████████████████

███████████████████████████████████████████

█████████████████████████████████████  *Id*. at

279:3-24.  Moreover, ██████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████

277.    From November 2019 onward and into 2021, Google and Microsoft engaged in a

dialogue about building features on SA360 for Microsoft Ads, during which proposals were exchanged, but no agreement was reached. During this time, Google did not refuse to develop the features Microsoft requested. *See* GOOG-DOJ-29186281 at -282-83 (Ex. 97) (September 17, 2020 email from Joan Braddi of Google to Chris Weinstein of Microsoft noting "commit[ment] to working with Microsoft in good faith on a potential integration of Microsoft Advertising's automated bidder into SA360 bid strategies[]"); MSFT-LIT2_0009965153 at -154 (Ex. 99) ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████. Microsoft's Shirley Heath ████████████████████████████████

████████████████████████████████████████. Heath (Microsoft) Tr. 196:2-197:11 (Ex. 65).

**Plaintiff States' Response**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h), and as contradicted by other evidence.  Undisputed that Google never outright refused to build auction-time bidding in SA360 for Microsoft. However, more than three years after Microsoft made its request ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Disputed in part because Google did refuse to agree to develop priority features if Microsoft agreed to Google's offer to develop, ████████████████████ features Microsoft requested. Utter (Microsoft) Tr. 276:2-277:19 (Google Ex. 66).

278. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

**Plaintiff States' Response**: Disputed in part as contradicted by other evidence.

Undisputed that Google ████████████████████████████████

██████████████. Disputed in part because responsive search ads and dynamic search ads

remain only partially supported on SA360 for Microsoft Advertising.

https://support.google.com/searchads/answer/2592341?hl=en [accessed on January 13, 2023];

Amaldoss Opening Report Table 2 (Ex. 5).

Furthermore, The Court should disregard Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex.

80) to the extent it purports to declare facts or events having occurred after June 17, 2022.

Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex. 80) refers to Google's ████████████

████████████████████████ for Microsoft and was signed on Dec. 9, 2022.  The

discovery cut-off entered by the Court, ECF No. 357, prohibits Parties from relying upon

affidavits or declarations submitted pursuant to Fed. R. Civ. P. 56(c) based upon events having

occurred after to June 17, 2022.

**B.     Microsoft's Feature Requests to Other SEM Tools**

279. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████████████████

**Plaintiff States' Response**: Disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h), and as contradicted by other evidence.  The testimony cited in Statement 279 does not support ███████████████████████ ██████████████████████████████████ Mr. Indacochea testified ██████████████████████████████████████ ██████████████████████████████████ ████████████████ Moreover, the citation to ██████████████████████ ████████████████████████████ Google cites to no evidence to support its assertion that ██████████████████████████████ ██████████████████

To the contrary, ████████████████████████████████ ██████████████████████████████████████ ████████████████████████

280.   ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

**Plaintiff States' Response**: Undisputed.

281.    Microsoft employees ████████████████████████████████████ ████████████████████████, telling SA360 employees that they "believe[d] no later than 90 days following Google Ads [was] reasonable" for building "new [Microsoft Ads] features that are aligned with Google Ads features." GOOG-DOJ-12678310 at -310 (Ex. 87).

**Plaintiff States' Response**: Disputed as contradicted by other evidence and misleading. Undisputed that Google Exhibit 87 does not include a ████████████████████ ███████████████████████████ GOOG-DOJ-12678310 at -310 (Google Ex. 87).  However, Statement 281 improperly compares requests from ████████████████ ████████████████████████████████████████ To the contrary, when ██████████████████████████████████ █████████████████████████████████ ████████████████████████. ████████████████████ (Google Exhibit 66).

282.    Skai launched its integration with Microsoft Ads' automated bidding feature in the first quarter of 2020. SKAI-00002350 (Ex. 96).████████████████████ ████████████████████████████████████ ██████████████████████████████████████ ██████████████████████

**Plaintiff States' Response**: Undisputed.

283.    ████████████████████████████████████ ████████████████████████████████████

██████████████████

**Plaintiff States' Response**: ███████████████████████

████████████████████████████████

████████████████████████████████

███

**284.** ███████████████████████████

████████████████████████████████

██████████████████

**Plaintiff States' Response**: Disputed in part as disputed by other evidence and misleading.  Undisputed that Exhibit 77 includes the quotation in Statement 284. However ███

███████████████████████████████

███████████████████████████████

█████████████████████████ Baker Reply Report ¶ 180 (Ex. 3) ("the exclusive default agreements lower the cost of Google's SA360-related conduct by allowing Google to limit the capabilities of SA360 without losing as many SA360 advertisers to other SEM tools as would otherwise occur and by making it less attractive for those advertisers (including SVPs) to substitute advertising on other general search firms for advertising on Google.").

Moreover, other evidence contradicts Statement 284. ███████████████

██████████████████████████████████

███████████████████████████████

██████████████████████████

**285.**     Marin has not built the full automated bidding feature for Microsoft Ads. Heath

(Microsoft) Tr. 84:5-16 (Ex. 65), ██████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

**Plaintiff States' Response**: Undisputed.

**286.**     ██████████████████████████████████████████

████████████████████████████████████████████

**Plaintiff States' Response**: Undisputed.

**287.**     ██████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

**Plaintiff States' Response**: █████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

**C.**     **Google's Launch of a New Version of SA360**

**288.**     ██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████

**Plaintiff States' Response**: Disputed as immaterial and misleading.  Undisputed that

██████████████████████████████████████████████████████████

███████████. However, more than three years after ██████████ request for full feature

parity, Google has still not agreed to ████████████████ for full feature parity and priority

features, such as dynamic search ads, responsive search ads, and automated bidding ████████

████████████████████████████████████

https://support.google.com/searchads/answer/2592341?hl=en [accessed on January 13, 2023];

Amaldoss Opening Report Table 2 (Ex. 5)

**289.** ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

**Plaintiff States' Response**: Undisputed.

**290.** ████████████████████████████████████████

██████████████████████████████████████

**Plaintiff States' Response**: Undisputed.

**291.**    The culmination of Project Amalgam—the new version of SA360—launched in

February 2022. *See* Indacochea (Google) Decl. ¶ 5 (Ex. 80); Google, *Introducing the new*

*Search Ads 360*, February 8, 2022, available at:

https://blog.google/products/marketingplatform/360/introducing-new-search-ads-360/ (last

accessed Dec. 8, 2022) (Ex. 102). Google's launch of the new version of SA360 included added

support for over 10 additional Microsoft Ads features, including call extensions, dynamic search

ads, responsive search ads, and local inventory ads. *Id.*; Indacochea (Google) Decl. ¶ 7 (Ex. 80).

    **Plaintiff States' Response**: Disputed in part as not supported by the cited material as

required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Disputed whether

Google has provided parity between Google Ads and Microsoft Advertising for responsive

search ads and dynamic search ads.  Those features remain partially supported on SA360 for

Microsoft Advertising. https://support.google.com/searchads/answer/2592341?hl=en (Ex. 249);

Amaldoss Opening Report Table 2 (Ex. 5).

    Furthermore, The Court should disregard Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex.

80) to the extent it purports to declare facts or events having occurred after June 17, 2022.

Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex. 80) refers to Google's ███████████████

█████████████████████████████████████ and was signed on Dec. 9, 2022.  The

discovery cut-off entered by the Court, ECF No. 357, prohibits Parties from relying upon

affidavits or declarations submitted pursuant to Fed. R. Civ. P. 56(c) based upon events having

occurred after to June 17, 2022.

    **292.** ████████████████████████████████████████████████

████████████████████████████

    **Plaintiff States' Response**: Undisputed.

**D.**      **SA360's Work to Integrate Auction-Time-Bidding**

**293.** ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

**Plaintiff States' Response**: Disputed as misleading.  Undisputed that ███████████

████████████████████████████████████████████

████████████████████████████████████████.  However, any ████████████

████████████████████████████████████ is attributable to Google's

exclusive default agreements with mobile device manufacturers, mobile network operators, and

browsers.  Baker Reply Report ¶ 180 (Ex. 3) ("the exclusive default agreements lower the cost

of Google's SA360-related conduct by allowing Google to limit the capabilities of SA360

without losing as many SA360 advertisers to other SEM tools as would otherwise occur508 and

by making it less attractive for those advertisers (including SVPs) to substitute advertising on

other general search firms for advertising on Google.").

**294.** ████████████████████████████████████████████

████████████████████████████████████████████

**Plaintiff States' Response**: Undisputed.

**295.**      The auction-time bidding integration between SA360 and Google Ads did not

launch until September 2019. *See* Google, *Google Ads auction-time bidding comes to Search*

*Ads 360*, dated September 18, 2019, available at

https://blog.google/products/marketingplatform/360/google-ads-auction-time-bidding-comes-

search-ads-360/ (last accessed Dec. 9, 2022).

**Plaintiff States' Response**: Undisputed.


296.  ███████████████████████████████████████

████████████████████████████████████████████

██████████

**Plaintiff States' Response**: Undisputed.


297.     Microsoft compiled its November 2019 list of requested features based on "a

side by side view of the feature support for MSA and Google Ads from SA 360 based on their

public documentation." Utter (Microsoft) Dep. Ex. 14 (Ex. 103); *see also* GOOG-DOJ-

12678310 at - 311 (Ex. 87) ("This is our best view based on your public documentation").

**Plaintiff States' Response**: Undisputed.


298.  ███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████

**Plaintiff States' Response**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Undisputed that as of November 2019, Microsoft did not provide Google a list of advertisers requesting features, but ████

████████████████████████████████████████████. Amaldoss Opening Report ¶ 261 (Ex. 5); Varia (Google) Tr. 148:8-149:3 (Ex. 137);

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ GOOG-DOJ-24807903, -903 (Ex. 147); ████████████████████

████████████████ GOOG-DOJ-24813184, -184 (Ex. 162).

Furthermore, Plaintiff States have identified 27 features that they allege Google either delayed support for, or failed to support, not 5. Plaintiff States' Third Supplemental Responses to Google's First Set of Interrogatories at 13 (Ex. 222).

### E.   Other Reasons for Timing of SA360's Development of Microsoft Ads Features

**299.**   Microsoft Ads features are not always available at the time parallel features are released for Google Ads, which results in support on SA360 for those Microsoft features lagging behind support on SA360 for the parallel Google features. Vallez (Skai) Tr. 124:25-125:13 (Ex. 73); Lien (Marin) Tr. 108:7-17 (Ex. 69). A Bing feature equivalent was not always available when SA360 integrated each Google Ads feature it supports. Utter (Microsoft) Tr. 39:24-44:16 (Ex. 66). For example, Microsoft Ads launched dynamic search ads after Google Ads launched dynamic search ads. *See id*.

**Plaintiff States' Response**: Undisputed.

**300.**     Some delay in developing Microsoft features after launch of parallel Google Ads

features was common among SEM tool providers. Lien (Marin) Tr. 108:7-17 (Ex. 69); ███████

███████████████████████ .

**Plaintiff States' Response**: Undisputed.

## VIII.   Microsoft Ads Features at Issue

### A.     Auction-Time Bidding (aka Automated or Autobidding)

**301.**     At Google, "Auction-Time Bidding" refers to a specific feature of Google Ads

that was built and launched for SA360 in September 2019. *See* Google, *Google Ads auction-*

*time bidding comes to Search Ads 360*, dated September 18, 2019, available at

https://www.blog.google/products/marketingplatform/360/google-ads-auction-time-bidding-

comes-search-ads-360/ ("Smart Bidding in Google Ads uses machine learning to set bids at

auction-time by factoring in a wide range of signals that help predict performance. Now you can

take advantage of Google Ads auction-time bidding in your Search Ads 360 bid strategy.") (last

accessed Dec. 9, 2022).

**Plaintiff States' Response**: Undisputed.

**302.**     Microsoft uses several terms interchangeably to mean the same set of its own

bidding features, "automated bidding," "autobidding," and "auction-time bidding." *See* Heath

(Microsoft) Tr. 13:3-19 (Ex. 65) ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ ; *see also*

Microsoft, *Microsoft Automated Bidding*, available at https://about.ads.microsoft.com/en-

us/solutions/tools/automated-bidding (last accessed Dec. 5, 2022) (Ex. 95).

    **Plaintiff States' Response**: Undisputed.

    **303.**    Auction-time or "automated" bidding is a certain type of bidding for ads.
Microsoft's automated bidding enables advertisers to set campaign parameters and allow the
platform to adjust bids in response to "near real-time" signals. *See supra* ¶ 273; Utter
(Microsoft) Tr. 100:2-24 (Ex. 66) 

. The default setting for Microsoft Ads' automated bidding (what
Microsoft calls "Enhanced CPC") automatically adjusts bids in real-time. *See* Microsoft Ads,
*Let Microsoft Advertising manage your bids with bid strategies,* available
at https://help.ads.microsoft.com/apex/index/3/en/56786 (last accessed Dec. 5, 2022) (Ex. 104).

    **Plaintiff States' Response**: Undisputed.

    **304.**    "Non-last click attribution" or "fractional conversions" refers to an attribution
model that gives partial credit to multiple clicks by a user. *See* Krueger (Google) Tr. 201:17-
203:17 (Ex. 86) (comparing "last click only" attribution to "non-last click" attribution).

. In the context of building out feature
support for Microsoft's automated bidding technology on SA360, Google requested that

Microsoft develop fractional conversions.  Indacochea (Google) Tr. 109:11-111:2 (Ex. 72) ("It was requested to Microsoft to build certain aspects to get closer to Google, like fractional conversions. And the fractional conversion means not every conversion belongs to a specific action that it takes. Sometimes you're interested in that user by more than one. Microsoft didn't support that before, so they needed to support it to be in a similar feature set than Google Ads."); ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

█████████████████████████████████.

**Plaintiff States' Response**: Disputed as contradicted by other evidence and misleading. Undisputed that non-last click attribution or fractional conversions refers to an attribution model that gives partial credit to multiple clicks by a user.  Undisputed that Krueger (Google) Dep. Ex. 7 (Google Ex. 105) includes the quoted language.  Undisputed that Google requested that Microsoft develop fractional conversions as part of discussions over support for automated bidding technology on SA360, but the feature called "fractional conversions" was not required in order for Google to integrate Microsoft Advertising support for auction-time bidding into SA360.  GOOG-DOJ-24813895, -896 (Ex. 164): ██████████████████████

█████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

**305.**   ████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

**Plaintiff States' Response**: ████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

**306.** ████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████

**Plaintiff States' Response**: Undisputed.

**307.** ████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

**Plaintiff States' Response**: Undisputed that ███████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

**308.**   ████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

**Plaintiff States' Response**: Undisputed that Google ███████████████████████

████████████████████████████████████████████████

███████████████████████████

**309.**   ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████

**Plaintiff States' Response**: Disputed in part because the evidence cited in support is in violation of the discovery cut-off entered by the Court.  Moreover, disputed as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). Undisputed that GOOG-DOJ-31390748 (Google Ex. 109), dated November 12, 2021, says that Google ██████████████████████████████████████████████. However, the Court should disregard Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex. 80) to the extent it

purports to declare facts or events having occurred after June 17, 2022.  Indacochea (Google) Decl. ¶¶ 7-8 (Google Ex. 80) refers to Google's ████████████████████████ ████████████████████ and was signed on Dec. 9, 2022.  The discovery cut-off entered by the Court, ECF No. 357, prohibits Parties from relying upon affidavits or declarations submitted pursuant to Fed. R. Civ. P. 56(c) based upon events having occurred after to June 17, 2022.

Therefore, Statement 309 is disputed to the extent Statement 309 refers to the present tense ████████████████████████ because it is not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).

**B.  Call Extension, Local Inventory Ads, Dynamic Search Ads, & Responsive Search Ads**

310.   

**Plaintiff States' Response**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). Disputed whether Google has provided parity between Google Ads and Microsoft Advertising for responsive search ads and dynamic search ads.  Those features remain partially supported on SA360 for Microsoft Advertising. https://support.google.com/searchads/answer/2592341?hl=en [accessed on January 13, 2023]; Amaldoss Opening Report at 130 Table 2 (Ex. 5).

311.   Google publicly announced the new version of SA360 via a blog post in February 2022, including descriptions of support for responsive search ads, call extensions, and

local inventory ads on Microsoft Ads in the new version of SA360. *See* Google, *Introducing the new Search Ads 360*, available at

https://blog.google/products/marketingplatform/360/introducing-

new-search-ads-360/ ("[T]he new Search Ads 360 introduces support for . . . over ten additional Microsoft Ads features including responsive search ads, call extensions, local inventory ads and additional Microsoft audience types like customer match") (last accessed Dec. 8, 2022) (Ex. 102).

 **Plaintiff States' Response**: Undisputed.


312. Dynamic search ads for Microsoft Ads is supported in the new version of SA360. Indacochea (Google) Decl. ¶¶ 7, 10 (Ex. 80); see also Search Ads 360 (new experience) Help, Dynamic Search Ads for Microsoft Advertising, available at https://support.google.com/sa360/answer/9838683 (last accessed Dec. 9, 2022).

 **Plaintiff States' Response**: Disputed in part as not supported by the cited material as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Disputed whether Google has provided parity between Google Ads and Microsoft Advertising for dynamic search ads. Those features remain partially supported on SA360 for Microsoft Advertising. https://support.google.com/searchads/answer/2592341?hl=en [accessed on January 13, 2023]; Amaldoss (Colo. Pls.' Expert) Opening Report at 130 Tbl. 2 (Ex. 9).


313. Google will migrate customer data to the new product, and notify customers when migration is ready to occur. *See* Search Ads 360 (new experience) Help, *Welcome to the new Search Ads 360 Experience*, available at

https://support.google.com/sa360/answer/9359572?hl=en-AU (last accessed Dec. 9, 2022).



. Indacochea (Google) Decl. ¶ 9 (Ex. 80).

Advertisers using the new SA360 platform can use call extensions, dynamic search ads,

responsive search ads, and local inventory ads for Microsoft Ads. Indacochea (Google) Decl. ¶

10 (Ex. 80).

   **Plaintiff States' Response**: Disputed in part as not supported by the cited material as

required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).

   Disputed whether Google has provided parity between Google Ads and Microsoft

Advertising for responsive search ads and dynamic search ads.  Those features remain partially

supported on SA360 for Microsoft Advertising.

https://support.google.com/searchads/answer/2592341?hl=en [accessed on January 13, 2023];

Amaldoss (Colo. Pls.' Expert) Opening Report at 130 Tbl. 2 (Ex. 9).

Dated: January 26, 2023                    Respectfully submitted,


                                           FOR PLAINTIFF STATE OF COLORADO:

                                           PHILIP WEISER
                                           Attorney General

                                           Jonathan B. Sallet
                                           Special Assistant Attorney General

                                           /s/ Jonathan B. Sallet
                                           Jonathan B. Sallet, DC Bar No. 336198
                                           Jon.Sallet@coag.gov
                                           Steven M. Kaufmann,  DC Bar No. 1022365
                                           (inactive)
                                           Steve.Kaufmann@coag.gov
                                           Carla Baumel
                                           Carla.Baumel@coag.gov
                                           Elizabeth W. Hereford
                                           Elizabeth.Hereford@coag.gov
                                           Conor J. May
                                           Conor.May@coag.gov
                                           Colorado Office of the Attorney General
                                           1300 Broadway, 7th Floor
                                           Denver, CO 80203
                                           Tel: 720-508-6000

                                           William F. Cavanaugh , Jr.
                                           PATTERSON BELKNAP WEBB & TYLER
                                           LLP
                                           1133 Avenue of the Americas
                                           Suite 2200
                                           New York, NY 10036-6710
                                           212-335-2793
                                           Email: wfcavanaugh@pbwt.com

                                           *Counsel for Plaintiff Colorado*

FOR PLAINTIFF STATE OF NEBRASKA:

MIKE HILGERS
Attorney General

Joseph M. Conrad, Assistant Attorney General
Colin P. Snider, Assistant Attorney General
Matthew K. McKinley, Special Assistant
Attorney General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3840
Joseph.Conrad@nebraska.gov
Colin.snider@nebraska.gov
Matt.Mckinley@nebraska.gov

William F. Cavanaugh , Jr.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
Suite 2200
New York, NY 10036-6710
212-335-2793
Email: wfcavanaugh@pbwt.com

*Counsel for Plaintiff Nebraska*


FOR PLAINTIFF STATE OF ARIZONA:

KRISTIN K. MAYES
Attorney General

Robert A. Bernheim, Unit Chief Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-315
Tucson, Arizona 85701
Tel: (520) 628-6507
Robert.bernheim@azag.gov

*Counsel for Plaintiff Arizona*

FOR PLAINTIFF STATE OF IOWA:

BRENNA BIRD
Attorney General

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Tel: (515) 725-1018
Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff Iowa*


FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General

Elinor R. Hoffmann
Morgan J. Feder
Michael Schwartz
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff New York*

FOR PLAINTIFF STATE OF NORTH
CAROLINA:

JOSH STEIN
Attorney General

Kunal Janak Choksi
Joshua Daniel Abram
Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
kchoksi@ncdoj.gov
jabram@ncdoj.gov
jmarx@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*


FOR PLAINTIFF STATE OF TENNESSEE:

JONATHAN SKRMETTI
Attorney General

J. David McDowell
Chris Dunbar
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville.TN 37202
(615) 741-8722
David.McDowell@ag.tn.gov
Chris.Dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

FOR PLAINTIFF STATE OF UTAH:

SEAN D. REYES
Attorney General

Scott R. Ryther
Tara Pincock
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 142320
Salt Lake City, Utah 84114
385-881-3742
sryther@agutah.gov
tpincock@agutah.gov

*Counsel for Plaintiff Utah*


FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
Attorney General

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100
Jeff.pickett@alaska.gov

*Counsel for Plaintiff Alaska*

FOR PLAINTIFF STATE OF CONNECTICUT:
WILLIAM TONG
Attorney General

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
860-808-5202
Nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*


FOR PLAINTIFF STATE OF DELAWARE:

KATHY JENNINGS
Attorney General

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
Michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*


FOR PLAINTIFF DISTRICT OF COLUMBIA:

BRIAN SCHWALB
Attorney General

Elizabeth Gentry Arthur
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

FOR PLAINTIFF TERRITORY OF GUAM:

DOUGLAS MOYLAN
Attorney General

Fred Nishihira, Chief, Consumer Protection
Division
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671) 475-3324

*Counsel for Plaintiff Guam*

FOR PLAINTIFF STATE OF HAWAI'I:

ANNE E. LOPEZ
Attorney General

Rodney I. Kimura
Department of the Attorney General, State of
Hawai'i
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawai'i*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL LABRADOR
Attorney General

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
208-334-4114
Brett.delange@ag.idaho.gov
John.olson@ag.idaho.gov

*Counsel for Plaintiff Idaho*


FOR PLAINTIFF STATE OF ILLINOIS:

KWAME RAOUL
Attorney General

Elizabeth Maxeiner
Brian Yost
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
773-590-7935
Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov

*Counsel for Plaintiff Illinois*

FOR PLAINTIFF STATE OF KANSAS:

KRIS W. KOBACH
Attorney General

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue., 2nd Floor
Topeka, KS 66612
Tel: (785) 296-3751
Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*


FOR PLAINTIFF STATE OF MAINE:

AARON M. FREY
Attorney General

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
207-626-8800
Christina.moylan@maine.gov

*Counsel for Plaintiff Maine*


FOR PLAINTIFF STATE OF MARYLAND:

ANTHONY G. BROWN
Attorney General

Schonette J. Walker
Gary Honick
Office of the Attorney General of Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*

FOR PLAINTIFF COMMONWEALTH
MASSACHUSETTS:

ANDREA CAMPBELL
Attorney General

William T. Matlack
Michael B. MacKenzie
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
William.matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*


FOR PLAINTIFF STATE MINNESOTA:

KEITH ELLISON
Attorney General

Zachary William Biesanz
Office of the Minnesota Attorney General
Consumer, Wage, and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
651-757-1257
Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General

Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
775-684-1164
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

FOR PLAINTIFF STATE OF NEW
HAMPSHIRE:

JOHN FORMELLA
Attorney General

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*

FOR PLAINTIFF STATE OF NEW  JERSEY:

MATT PLATKIN
Attorney General

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
973-648-7819
Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff New Jersey*


FOR PLAINTIFF STATE OF NEW MEXICO:

RAUL TORREZ
Attorney General

Judith E. Paquin
Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505-490-4885
jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*

FOR PLAINTIFF STATE NORTH DAKOTA:

DREW WRIGLEY
Attorney General

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of the Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
701-328-5570
ealm@nd.gov

*Counsel for Plaintiff North Dakota*


FOR PLAINTIFF STATE OHIO:

DAVE YOST
Attorney General

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

FOR THE PLAINTIFF STATE OKLAHOMA:

GENTNER DRUMMOND
Attorney General

Caleb J. Smith
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*


FOR PLAINTIFF STATE OREGON:

ELLEN ROSENBLUM
Attorney General

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
503-934-4400
Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*

FOR PLAINTIFF COMMONWEALTH
PENNSYLVANIA:

MICHELLE HENRY
Attorney General

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*


FOR PLAINTIFF TERRITORY PUERTO
RICO:

DOMINGO HERNANDEZ
Attorney General

Guarionex Diaz Martinez
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Tel: (787) 721-2900, ext. 1201
gdiaz@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*

FOR PLAINTIFF STATE RHODE ISLAND:

PETER NERONHA
Attorney General

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
SProvazza@riag.ri.gov

*Counsel for Plaintiff Rhode Island*


FOR PLAINTIFF STATE SOUTH DAKOTA:

MARTY J. JACKLEY
Attorney General

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
605-773-3215
Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*


FOR PLAINTIFF STATE VERMONT:

CHARITY R. CLARK
Attorney General

Christopher J. Curtis
Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
Ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

FOR PLAINTIFF COMMONWEALTH
VIRGINIA:

JASON S. MIYARES
Attorney General

Tyler T. Henry
thenry@oag.state.va.us
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Tel: (804) 692-0485

*Counsel for Plaintiff Virginia*


FOR PLAINTIFF STATE WASHINGTON:

BOB FERGUSON
Attorney General

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
Amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

FOR PLAINTIFF STATE WEST VIRGINIA:

PATRICK MORRISEY
Attorney General

Douglas Lee Davis
Office of the Attorney General, State of West
Virginia
1900 Kanawha Boulevard, East
Building 6, Suite 402
P.O. Box 1789
Charleston, WV 25305
304-558-8986
Douglas.l.davis@wvago.gov

*Counsel for Plaintiff West Virginia*

FOR PLAINTIFF STATE WYOMING:

BRIDGET HILL
Attorney General

Benjamin Peterson
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
Benjamin.peterson2@wyo.gov

*Counsel for Plaintiff Wyoming*