# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| United States of America, *et al.*, | Case No. 1:20-cv-03010-APM |
| Plaintiffs, | HON. AMIT P. MEHTA |
| v. | ███████████ |
| Google LLC, | |
| Defendant. | |
| State of Colorado, *et al.*, | Case No. 1:20-cv-03715-APM |
| Plaintiffs, | HON. AMIT P. MEHTA |
| v. | ███████████ |
| Google LLC, | |
| Defendant. | |

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD A. FOX**

February 27, 2023

## Table of Contents

Table of Authorities ...................................................................................................... ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.    Prof. Fox's Opinions Are Unreliable Because He Failed To Validate An Experiment He Did Not Perform, Design, Direct, Or Supervise .................................................... 3

    A.    Prof. Fox Did Not Direct, Design, Or Supervise The 2022 DRE ................................. 4

        1.    Prof. Fox's Billed Hours And His General Expertise Alone Cannot Prove That He Designed Or Supervised The 2022 DRE ................................... 4

        2.    Withheld Documents And Post-Dated Experiment Summaries Cannot Prove The 2022 DRE Was Designed And Conducted At The Direction Of Prof. Fox .......... 6

        3.    Prof. Fox Admitted That He Could Not Supervise The 2022 DRE...................... 8

    B.    Prof. Fox Failed To Validate The Work Of Google Search Engineers ....................... 9

        1.    Prof. Fox Admitted He Did Not Validate Vital Parts Of The 2022 DRE............. 9

        2.    Prof. Fox Cannot Rely On The Work Of Google Engineers Without Independent Validation .................................................................................... 10

        3.    Google, As The Proffering Party, Must Demonstrate That  Prof. Fox's Opinions Are Reliable; It Cannot Shift The Burden ............................................ 13

    C.    The 2022 DRE Does Not Validate Itself ................................................................. 14

II.    Prof. Fox's Opinions Are Inadmissible Because The 2022 DRE Cannot Be Tested ....... 15

    A.    *Daubert* Requires That Plaintiffs Be Able To Replicate The 2022 DRE .................. 16

    B.    Without The Ability To Replicate The 2022 DRE, Plaintiffs Cannot Meaningfully Test The Reliability Of Prof. Fox's Opinions...................................................... 19

    C.    The Backup Materials Are Deficient And Insufficient To Test The Reliability Of Prof. Fox's Opinions ........................................................................................... 20

III.    Prof. Fox Impermissibly Extrapolates From Google-Specific Results To Reach Conclusions About Google's Current And Potential Competitors ................................... 21

    A.    Prof. Fox's Opinions Are Not Relevant To Plaintiffs' Scale Allegations ................. 22

    B.    Prof. Fox Impermissibly Extrapolates Beyond Google-Specific Data ...................... 24

CONCLUSION ............................................................................................................... 25

## Table of Authorities

**Cases**

*Agnew v. Cater*,
  2022 U.S. Dist. LEXIS 18734 (N.D. Ill. Feb. 2, 2022) .................................................. 10, 11

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
  752 F.3d 82, 94 (1st Cir. 2014)........................................................................... 16, 20

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) ............................................................................. 16, 18

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)............................................................................................... 3, 19

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
  285 F.3d 609 (7th Cir. 2002) ...................................................................................... 13

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997)............................................................................................... 6, 24

*Korsing v. United States*,
  2017 U.S. Dist. LEXIS 231046 (S.D. Fla. Aug. 16, 2017)............................................. 5

*Mooring Capital Fund, LLC v. Phx. Cent., Inc.*,
  2009 U.S. Dist. LEXIS 117799 (W.D. Okla. Feb. 12, 2009) ........................................ 6

*Pascal v. Nissan N. Am., Inc.*,
  2022 U.S. Dist. LEXIS 230117 (C.D. Cal. Dec. 21, 2022) .................................... 20, 21

*Selliken v. Country Mut. Ins. Co.*,
  2013 WL 4759083 (E.D. Wash. Sept. 4, 2013) ......................................................... 25

*Shankar v. ACS-GSI*,
  258 F. App'x 344 (D.C. Cir. 2007) ............................................................................. 25

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  2008 U.S. Dist. LEXIS 124780 (N.D. Cal. May 22, 2008) ............................................ 3

*United States v Morgan*,
  45 F.4th 192 (D.C. Cir. 2022)..................................................................... 2, 16, 17

*United States v. Batchelor-Robjohns*,
  2005 U.S. Dist. LEXIS 13552 (S.D. Fla. June 2, 2005) ........................................... 4, 21

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) .............................................................................. 3, 24

*United States v. Gissantaner*,
  990 F.3d 457 (6th Cir. 2021) ................................................................................. 16, 20

*United States v. Mejia*,
  545 F.3d 179, 197 (D.C. Cir. 2008) ............................................................................ 13

*United States v. Mitchell*,
  365 F.3d 215 (3d Cir. 2004).......................................................................................... 18

*United States v. Nelson*,
   533 F. Supp. 3d 779 (N.D. Cal. 2021) ................................................................. 17

*United States v. Rite Aid Corp*,
   2020 WL 3970201 (E.D. Cal. July 14, 2020) ...................................................... 18

*United States v. Robinson,*
   2018 U.S. Dist. LEXIS 178824 (E.D. Mich. Oct. 18, 2018) ................................ 17

*Washington v. Boudreau,*
   2022 WL 4599708 (N.D. Ill. Sept. 30, 2022) ...................................................... 11

*Wyatt Tech. Corp. v. Malvern Instruments, Inc*.,
   2010 WL 11505684 (C.D. Cal. Jan. 25, 2010) .............................................. 2, 15

*Zenith Elecs. Corp. v. WH-TV Broad. Corp*.,
   395 F.3d 416 (7th Cir. 2005) ............................................................................... 16

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................. 4

Fed. R. Evid. 702 ............................................................................................................ 3

Fed. R. Evid. 703 ............................................................................................................ 3

# INTRODUCTION

For almost two decades, Google employees have recognized that scale gives Google a significant competitive advantage.[1] Seeking to downplay this evidence—and Google's routine use of ██████████ of queries to train its search engine algorithms—Google offers an untestable, made-for-litigation experiment conducted by its employees which it has shrouded in secrecy (*i.e.*, the 2022 DRE).

Plaintiffs' Motion argues that the Court should exclude Prof. Edward A. Fox's opinions because they fail to meet *Daubert*'s reliability requirements. *See generally* ECF No. 443 ("Pls. Br."). Prof. Fox's opinions are excludable for three separate reasons: (1) they are based on an experiment that Prof. Fox did not conduct or validate, (2) the experiment cannot be recreated or tested, and (3) Prof. Fox's opinions impermissibly extrapolate beyond the experimental results. *Id*. In response, Google fails to address the fundamental problem with Prof. Fox's analysis: it is based on an unreliable experiment, which neither the Court nor Plaintiffs can properly assess.

***First***, Google asserts that Prof. Fox designed, supervised, and validated the 2022 DRE. ECF No. 475 ("Def. Br."), at 22–33. Google, however, has failed to identify any specific evidence to support its claims. It is undisputed that Prof. Fox has never had access to Google's system and received "no detail" about its internal operations. Pls. Ex. P, Edward Fox Dep., Nov. 14–15, 2022, 117:2–118:1. Moreover, Prof. Fox testified that he did not validate critical aspects

---

[1]  *See, e.g.,* ██████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████

1

of the 2022 DRE. *See, e.g.*, *id.* at 138:7–139:2. In the face of these facts, Google relies on Prof. Fox's general expertise, his billed hours, and hollow citations to his reports and testimony. Def. Br. at 14–15, 25–26, 33. Irrelevant assertions and generic references to Prof. Fox's "signed reports and his sworn testimony," Def. Br. at 23 (emphasis omitted), do not address the basic point: Prof. Fox's opinions rely on a party-conducted experiment he did not validate. Google has foregone scientific reliability in favor of a "trust us" mantra. *Id.* at 29–32. Such superficial appeals do not survive *Daubert*.

 ***Second***, Google concedes the 2022 DRE "was run on a proprietary system and thus cannot be re-run" by Plaintiffs, but argues that, under *Daubert*, Plaintiffs do not need to replicate the 2022 DRE in order to test whether it is reliable. *Id.* at 33–35. This is wrong. Replicability enables litigants to "test the veracity of [an expert's] conclusion," ensuring reliability and a full presentation of evidence. *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *7 (C.D. Cal. Jan. 25, 2010). To claim otherwise, Google relies on cases holding that *Daubert* does not bar experts from using "technological tools" (*i.e.*, programs such as mapping tools) as an aid even if the expert lacks a "a sophisticated understanding of the software underlying" those tools. *United States v Morgan*, 45 F.4th 192, 203 (D.C. Cir. 2022); *see also* Def. Br. at 37–39. These cases are inapposite because, in them, (1) the moving party could replicate the analysis, and (2) the tools at issue were simply an aid to the expert's work; here, the subject of Prof. Fox's opinions are Google's proprietary systems.

 ***Finally***, Google admits that Prof. Fox had to extrapolate beyond the 2022 DRE results to reach conclusions about Google's rivals. Def. Br. at 17. Google, however, provides no substantive support for these extrapolations beyond Prof. Fox's general expertise. *Id*. But Google fails to establish, as it must, *"how* that experience leads to the conclusion reached, why that

experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.) (emphasis in original)).

Accordingly, the Court should exclude the 2022 DRE from evidence, as well as Prof. Fox's extrapolations from that experiment.[2]

### ARGUMENT

The Court should exclude Prof. Fox's opinions. Google has not carried its "burden of establishing the ultimate fact of reliability" of Prof. Fox's testimony by a preponderance of the evidence. *Id.* at 1274 (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 & n.10 (1993)); *see also* Fed. R. Evid. 702, 703. First, Prof. Fox did not design, direct, supervise, or validate the 2022 DRE, and therefore he cannot testify about its methodology or reliability as required under the Federal Rules. Second, because the 2022 DRE is not replicable, the experiment cannot satisfy *Daubert*'s testability requirement and must be excluded. Third, the results of the 2022 DRE are Google-specific and Prof. Fox's extrapolations beyond them are unsupported and therefore inadmissible under *Daubert* and its progeny.

**I.     Prof. Fox's Opinions Are Unreliable Because He Failed To Validate An Experiment He Did Not Perform, Design, Direct, Or Supervise**

To rely on the 2022 DRE as the basis for his opinions, Prof. Fox must have either (1) effectively performed the experiment or (2) validated it. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 U.S. Dist. LEXIS 124780, *17–18 (N.D. Cal. May 22, 2008) (stating that where the experiment is conducted by the client it should be subject to higher scrutiny by the

---

[2]  Google sprinkles inflammatory irrelevancies and *ad hominem* attacks throughout its Opposition. The company "suggests" improprieties by Plaintiffs' counsel and misrepresents Plaintiffs' scale expert Prof. Douglas Oard's testimony. Def. Br. at 40. These accusations are false and have no bearing on the issues before this Court, so we will not address them here.

expert). Here, despite Google's blank assertions and make-weight citations, Prof. Fox has done

neither. The Court should also reject as nonsensical Google's argument that the experiment is

self-validating. Accordingly, the Court should reject Prof. Fox's opinions as unreliable.

> **A.** **Prof. Fox Did Not Direct, Design, Or Supervise The 2022 DRE**

Prof. Fox did not perform the experiment at the center of his reports (the 2022 DRE).

Google does not argue otherwise, but instead asserts that Prof. Fox directed, designed, and

supervised the 2022 DRE. That assertion is belied by the record. Google attempts to justify this

fundamental problem by instead pointing to (1) Prof. Fox's billed hours and general expertise,

(2) a claim of privilege over the documents that Google argues would prove the design point—if

only they were disclosed, and (3) generic citations to Prof. Fox's reports and testimony. Def. Br.

at 22–27. The Court should exclude Prof. Fox's opinions because Google cannot prove by a

preponderance of the evidence that Prof. Fox performed or supervised the 2022 DRE's

implementation, and without validation, Prof. Fox cannot testify about its methodology and

reliability.

> 1. *Prof. Fox's Billed Hours And His General Expertise Alone Cannot Prove That He Designed Or Supervised The 2022 DRE*

The fact that Prof. Fox billed Google for hundreds of hours of work and has general

expertise in the field of information retrieval cannot support Google's claim that Prof. Fox

designed or supervised the 2022 DRE. *See*, *e.g.*, Def. Br. at 22–23, 25–26. *Daubert* and the

Federal Rules require Prof. Fox to disclose ***all*** of the materials he relied upon to form the basis of

his opinions. *See United States v. Batchelor-Robjohns*, 2005 U.S. Dist. LEXIS 13552, at *11

(S.D. Fla. June 2, 2005); *see also* Fed. R. Civ. P. 26(a)(2)(B).[3] Google does not argue otherwise.

---

[3]  Google argues without citation that the use of ▮▮▮▮ queries in the 2022 DRE satisfies FRE
702's requirement that Prof. Fox's "testimony is based on sufficient facts or data." Def. Br.
at 19–20. In essence, Google asserts that a dataset's size alone will satisfy FRE 702(b)'s

This disclosure requirement allows the opposing party and the court to assess the foundation of an expert's opinions. *Korsing v. United States*, 2017 U.S. Dist. LEXIS 231046, at *23–25 (S.D. Fla. Aug. 16, 2017) ("Without [the underlying relied-upon] information the Court cannot perform the required exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." (internal citations omitted)).

Instead of meeting its disclosure requirements, Google asserts that Prof. Fox's total billed hours, without more, "confirms" the work that "he personally devoted to designing the experiment, supervising its execution and analyzing the results." Def. Br. at 26. Elsewhere, Google asserts that Prof. Fox spent a third of those billed hours reviewing "hundreds" of documents to prepare for the experiment. *See e.g.*, Def. Br. at 25. But neither Google nor Prof. Fox support those statements by identifying the specific documents used to design the experiment or an explanation of *how* he supervised employees working in a different location on a system he did not have access to. In place of evidence, Google relies on nothing more than Prof. Fox's billed hours. Def. Br. at 22, 25. But a proffered expert's billed hours cannot substitute for evidence showing the basis of knowledge an expert relied on to carry out the steps necessary to satisfy *Daubert*, otherwise the entire *Daubert* analysis could be resolved with a spreadsheet and receipts.

Google's reliance on Prof. Fox's "expertise in the field" is also unavailing. Def. Br. at 26. Google does not proffer any support, as required by the caselaw, for Prof. Fox's alleged understanding of Google's systems. As the Eleventh Circuit explained, "[i]f the [expert]witness is relying solely or primarily on experience, then the witness must explain *how* that experience

---

requirement. Size does not prove reliability; the 2022 DRE's dataset is infinitesimally small compared to the ███████ queries Google receives every day. Moreover, this data is an insufficient basis for Prof. Fox to opine about scale effects on Google's rivals. *See* § III.

leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See Frazier*, 387 F.3d at 1260–61 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.) (emphasis in original)).

Here, Google cites Prof. Fox's belief that he is "'one of the most qualified people in the world to do this experiment and to design it,'" Def. Br. at 26–27, but the company fails to explain how Prof. Fox's general expertise overcomes his lack of experience with Google's proprietary systems.[4] The inner workings of Google Search are not shared outside of the company—as evidenced by Google's refusal to grant Prof. Fox access to those systems. Google's arguments thus fail because under *Daubert*, "it is clear that an expert's opinions are not admissible merely because the expert says, in effect, 'trust me, I know.'" *Mooring Capital Fund, LLC v. Phx. Cent., Inc.*, 2009 U.S. Dist. LEXIS 117799, at *17–20 (W.D. Okla. Feb. 12, 2009) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Put simply, that (even a well-credentialed expert like) Prof. Fox billed significant time to this engagement does not respond to the fundamental deficiencies in what he did—and more importantly, did not do. The Court should conclude that these irrelevant facts are insufficient to show that Prof. Fox directed, designed, supervised, or validated the 2022 DRE.

> 2. *Withheld Documents And Post-Dated Experiment Summaries Cannot Prove The 2022 DRE Was Designed And Conducted At The Direction Of Prof. Fox*

In showing that Prof. Fox did not design the 2022 DRE, Plaintiffs noted the absence of any evidence that Prof. Fox provided specifications to Google engineers before they conducted the 2022 DRE. Pls. Br. at 12. Google does not contend otherwise. Instead, Google (1) generally points to Prof. Fox's reports and testimony which postdate the experiment, and (2) suggests that

---

[4]  Google claims that Prof. Fox "spent years studying Google's systems" but only points to a single event he attended 20 years ago. Def. Br. at 15.

the company might have withheld evidence supporting its contentions on privilege claims. Def. Br. at 23.[5] These arguments do not—and cannot—prove that the 2022 DRE was designed and conducted at the direction of Prof. Fox.

First, Prof. Fox's reports and testimony cannot by themselves demonstrate that Google engineers conducted the 2022 DRE pursuant to specifications from Prof. Fox. Both, of course, postdate the experiment. Google asserts Appendix A contains the specifications. *Id.* Google, however, offers no evidence that Appendix A was anything other than an after-the-fact summary of what was conveyed to Prof. Fox about what Google's engineers ultimately did.[6] Nothing in the reports, including its appendixes, prove what directions (if any) Prof. Fox gave Google's engineers *before* those engineers conducted the entire experiment out of Prof. Fox's view.[7] Nothing in Appendix A answers the basic question: did Google's engineers perform the 2022 DRE pursuant to a before-the-experiment written set of specifications from Prof. Fox?

Second, Google notes that it would not produce any specifications for the 2022 DRE— the company is vague about whether these exist—because such documents would be privileged work product. Def. Br. at 23 ("[A]n expert's drafts and interim work papers are exempted from production under the Case Management Order."). But the CMO does not authorize withholding *relied upon* materials based on a claim of privilege. *See* ECF No. 108-1, § 23(a). In any event, Google cannot prove its assertions with documents it has withheld as privileged—shield or sword, not both.

---

[5] "The actual question that prompted a *privilege objection* asked about documents created before the 2022 experiment was performed." Def. Br. at 23 (emphasis added).

[6] Appendix A contains no citations to source material. Thus, Google's assertion that Prof. Fox need not cite every line in his reports is a strawman. Def. Br. at 32–33. Plaintiffs' argument is that Prof. Fox has failed to support technical assertions about the experiment.

[7] Google has, indeed, claimed privilege over those communications. Def. Br. at 23.

There is no actual evidence before the Court that demonstrates Prof. Fox designed the 2022 DRE, or what the contents of that initial design contained. Any conjecture about what might or could exist cannot patch this foundational issue.

### 3. *Prof. Fox Admitted That He Could Not Supervise The 2022 DRE*

Prof. Fox's testimony and reports show that he did not—and could not—supervise the 2022 DRE. *See generally* Pls. Br. at 8, 12–15. In response, Google deflects by pointing to Prof. Fox's summary assertions that he "directed" the experiment, mischaracterizing his contradictory testimony on the issue, and again appealing to his billed hours and generalized expertise.

First, Prof. Fox testified that with regard to the 2022 DRE "[j]ust as in many other studies that have been published with a proprietary system and proprietary datasets, *there was no detail about the particular details inside the operations at Google*." Pls. Ex. P, Fox. Dep., 117:16–118:1 (emphasis added). Prof. Fox explained that the "inside operations at Google" included "[t]he behavior of the staff and running experiments." *Id.* at 118:2–15. Google does not explain how with "no detail" about "the inside operations at Google," particularly with respect to the "staff and running experiments," Prof. Fox was able to supervise and validate the 2022 DRE. *Id.* at 117:16–118:15. Instead, Google characterizes Prof. Fox's deposition testimony as nothing more than him not being able to "recite—from memory . . . which Google engineer handled exactly which aspect of the technological execution of the experiment." Def. Br. at 26.

Second, Prof. Fox's reports and testimony prove that he did not have sufficient information to properly supervise the 2022 DRE. In his Initial Report, Prof. Fox cites a one-day, off-the-record interview of Google Engineer Eric Lehman for critical aspects of Prof. Fox's technical understanding of Google's systems and experimental design choices. *See* Pls. Ex. A (ECF No. 425-1), Fox Initial Report, nn.48, 49, 101, 103, 114, 118 (each citing "Interview with Eric Lehman (June 1, 2022)"). This interview, however, *occurred two days before the report was*

*filed, many weeks after the experiment was performed. Id.* This interview is the only cited source for Prof. Fox's technical understanding of six retrained components at the heart of the 2022 DRE[8] and the decision not to test the actual Google systems and instead use a frozen model. *Id.* at nn.49, 118. Thus, the timing and need for the Lehman interview actually proves the opposite of what Google argues here: it shows Prof. Fox's limited knowledge, and limited confidence in that knowledge, of how Google's systems operate and how the experiment was performed.

### B. Prof. Fox Failed To Validate The Work Of Google Search Engineers

Because Prof. Fox did not perform or supervise the 2022 DRE, his testimony cannot rely on it without independent validation. *Therasense*, 2008 U.S. Dist. LEXIS at *17–18. This validation did not occur. Prof. Fox testified not only that he did not validate critical work by Google engineers on the 2022 DRE, but also that he did not know how he would validate that work. Pls. Ex. P, Fox Dep., 115:10–116:1. Google offers three responses: (1) Prof. Fox's admissions were not significant, (2) FRE 703 permits Prof. Fox to rely on Google's engineers, and (3) exclusion under *Daubert* is not warranted because Plaintiffs and the Court should trust Google's engineers. Def. Br. at 28–31. Google's arguments find no basis in the law and, as such, the Court should reject Prof. Fox's proffered testimony.

#### 1. Prof. Fox Admitted He Did Not Validate Vital Parts Of The 2022 DRE

Google argues that Prof. Fox's failure to validate the 2022 DRE is "superficial."[9] This is false. "The ability of a testifying expert to understand and validate the work of an expert upon whom he or she relies is critical to the admissibility of the testifying expert's opinion." *Agnew v.*

---

[8]  As explained in our Motion, Google did not retrain all of Google Search with less data as part of the 2022 DRE. Instead, it selected only six ranking components (used to score the relevance of a result to query) for retraining as part of the experiment. Pls. Br. at 5–6.

[9]  Def. Br. at 30 ("The supposed 'failure to validate' instances that Plaintiffs identify highlight the superficiality of their argument.").

*Cater*, 2022 U.S. Dist. LEXIS 18734, at *7 n.4 (N.D. Ill. Feb. 2, 2022) (citation omitted). "This problem is not new, and courts have consistently refused proffered expert testimony infected with that problem." *Id.*

Prof. Fox admittedly failed to validate critical steps in the experiment: (1) the retraining of six ranking components with less data,[10] (2) the querysets used as inputs to generate results,[11] and (3) the use of human raters to score those results.[12] For example, almost every step of the experiment is dependent on the use of the selected querysets,[13] yet Prof. Fox testified that he "didn't think it was necessary" to check whether the experiment's querysets had been "cherrypicked" by Google's employees. Pls. Ex. P., Fox Dep., 138:7–139:2. Thus, Prof. Fox's unquestioning reliance on the work performed by Google's engineers is fatal to his testimony.

> 2.  *Prof. Fox Cannot Rely On The Work Of Google Engineers Without Independent Validation*

Next, Google argues that "Rule 703 permits reliance on assistants to carry out the analysis or experiment upon which the expert relies." Def. Br. at 28. Although experts may rely on assistants in certain circumstances, Google's reading of the rule is untenably broad; it would allow parties to shield their expert work by having it performed by assistants.

First, Google fails to cite a single case where a court allowed an expert to opine on an experiment carried out by the proffering parties' employees. Instead, Google cites several cases that stand for the unremarkable proposition that FRE 703 allows experts to rely on rudimentary

---

[10] *See* Pls. Ex. P, Fox Dep., 115:10–116:1 (stating that he did not validate the retraining of the six components, and did not know how he would be able to validate their retraining: "[i]t would take some thought to figure out exactly the process to check that," and that at best he could "speculate" about how to go about it).

[11] *Id.* at 138:7–139:2.

[12] *Id.* at 178:19–179:10 (conceding that he did not interview Google engineers to clarify his understanding of the human rater evaluation process until *after* submitting his initial report).

[13] Pls. Ex. A, Fox Initial Report, § 5.3.2.

analysis done by their nonpartisan assistants. For example, in *Washington v. Boudreau*, the court allowed an expert to rely on a spreadsheet that was compiled by his assistant. 2022 WL 4599708, at *28–30 (N.D. Ill. Sept. 30, 2022). In *McReynolds v. Sodexho Marriott Services*, the court allowed the expert to rely on a regression created by his assistant on STATA, a commercially available statistical software tool. 349 F. Supp. 2d 30, 37 n.2 (D.D.C. 2004). Neither case is similar to what Prof. Fox has done here.

Google's systems are "very complex" and not available to the general public (or Prof. Fox for that matter). Pls. Ex. A, Fox Initial Report, § 3.2. Google engineers, not third-party assistants, compiled the querysets (i.e., the input) used in the 2022 DRE, and retrained the six components that were the experiment's subject. Google used its human-evaluation process to measure the search results generated by the "retrained" system. *Id.* at 53. This is not rudimentary work, akin to compiling data on an excel spreadsheet. In addition, unlike in *Boudreau* and *McReynolds*, Google's systems were not just a "tool" Google engineers used to conduct an analysis but were the very subject of the experiment. Moreover, Google's systems are not commercially available and as such the work of Prof. Fox's "assistants" (i.e., Google engineers) cannot be tested by Plaintiffs or anyone.

Thus, Prof. Fox's opinions are impermissible under FRE 703 and the caselaw because experts cannot rely on their assistants to do more than rudimentary work without independent validation. *See Agnew*, 2022 U.S. Dist. LEXIS 18734, at *19–22 (compiling cases). To hold otherwise undermines the significance of an expert reaching independent opinions and calls into question whether proffered opinions are those of the expert who signed the report or instead those of an unnamed delegee—here, Google's own employees.

Google also cites *Therasense*. Def. Br. at 28. But *Therasense* does not endorse Google's approach here. To the contrary, the *Therasense* court excluded an expert's opinions that relied on three "client-prepared" experiments he "did not participate in, observe, or supervise," and where the proffering party had "conceal[ed] all of the tests from discovery during all phases of discovery under a claim of privilege." *Therasense*, 2008 U.S. Dist. LEXIS 124780, at *18–19. Under those circumstances, the *Therasense* court held the proffering party had failed to establish a proper foundation. *Id.* at *19.

The same result is warranted here because Prof. Fox "did not participate in, observe, or supervise" the 2022 DRE and Google has concealed the 2022 DRE during all phases of discovery.[14] For example, Google argues that Prof. Fox's inquiry into the 2022 DRE's results was satisfied when "Google engineers confirm[ed] the [experiment's results were] also consistent with [its] ordinary-course experiments." Def. Br. at 24. Yet, Google witnesses consistently denied that similar experiments were conducted in the ordinary course,[15] as did Google, in response to Plaintiffs' scale interrogatory.[16] Further, under claims of privilege, Google has withheld supposed design specifications as well as any notes between Prof. Fox and its engineers,[17] and Google attorneys instructed Prof. Fox not to answer questions about his

---

[14] ████████████████████████████████████████████████████████████████

[15] Pls. Br. at 16–17.

[16] Pls. Ex. R, Def. Google LLC's Resp. and Objs. to DOJ Pls' Fourth Set of Interrogs. at 21 ████████████████████████████████████████████████████████████████

[17] Google did set up a system for Prof. Fox to pose questions and receive notes from engineers. Pls. Ex. P, Fox Dep., 50:1–6 ("[A Google engineer] responded to questions I posed and he wrote notes in documents that we shared.").

communications with Google engineers.[18] Thus, by its own making—having shrouded the 2022 DRE in a cloak of secrecy—Google cannot proffer Prof. Fox's opinions because they lack foundation.[19]

### 3. Google, As The Proffering Party, Must Demonstrate That Prof. Fox's Opinions Are Reliable; It Cannot Shift The Burden

Finally, Google argues there is "not a shred of evidence" that Google personnel "may have, in bad faith, intentionally manipulated the data to skew Prof. Fox's results." Def. Br. at 31. This sleight of hand misunderstands the nature of a *Daubert* challenge. It is not necessary to infer malice, incompetence, or mistakes on the part of Google engineers to conclude that Prof. Fox's lack of validation is contrary to *Daubert*. Under *Daubert* and the Federal Rules, it was incumbent upon Prof. Fox to "form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." *United States v. Mejia*, 545 F.3d 179, 197 (D.C. Cir. 2008) (internal quotation marks omitted). That obligation exists as a threshold matter of admissibility, and operates separate and apart from the behavior of Google engineers.

---

[18] *See*, *e.g.*, Pls. Ex. P, Fox Dep., 47:20–48:15 ("So object. This is getting into the protected information under the CMO paragraph 23, which obviously protects the back and forth between the Google engineers and Mr. Fox."); *supra* note 7.

[19] The *Therasense* court left open the question of "[w]hether or not curative discovery" would be sufficient to cure the foundational defects in the expert's testimony. 2008 U.S. Dist. LEXIS, at *19. Google has not requested such relief here, but even if it had, curative discovery and potential modifications to Plaintiff's expert's reports would improperly allow Google to benefit from what appears to be a strategic decision not to provide a proper foundation. *See, e.g.*, *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 616 (7th Cir. 2002) (affirming the exclusion of expert testimony without foundational support: "Dura is a substantial firm rather than a hapless individual. Its reticence about disclosing the [assistants' work] may have been strategic. At all events, in the circumstances the district judge could refuse to exercise lenity without being thought to have acted unreasonably.").

Instead of forming his own opinions, Prof. Fox testified that he chose to trust Google's employees.[20] Prof. Fox's confidence in Google's employees—without actual validation—cannot satisfy *Daubert*. Because Prof. Fox cannot testify about the reliability of methodologies actually used by Google engineers, his opinions are excludable. Thus, Prof. Fox's failure to validate the 2022 DRE—performed entirely by the Defendant's employees—renders his reliance on the results of that experiment impermissible, and any appeal to FRE 703 must fail.

### C.      The 2022 DRE Does Not Validate Itself

The Court should reject Google's circular argument that the experiment's reliability is evidenced by the experiment itself. Using technical language and "internal cross checks," Google argues that the 2022 DRE's results are self-validating. This is nonsense. For example, Google argues that the three "chosen" querysets all revealed consistent results and, thus, prove that the experimental results are reliable. Def. Br. at 29. This is bad science. Google "chose" which three querysets to disclose; their consistency proves nothing. Did Google also run other querysets and withhold those results? Plaintiffs and the Court have no information. Nor can Plaintiffs or the Court address whether the "chosen" querysets are all similarly biased to yield consistently misleading results. The same is true for Google's similar arguments regarding the chosen "impact" formula and "quality metrics."[21] Each of those required a method to be chosen and Plaintiffs have no way of knowing if other possibly withheld methods showed inconsistent

---

[20] *See, e.g.*, Pls. Ex. P, Fox Dep., 138:7–16 ("Q. Okay. So just if Google had cherrypicked that query set, you wouldn't – given your role, you wouldn't have had an ability to test that for your 2022 DRE; is that right? A. So I think I've already stated that I am not aware of any nefarious activities by Google or misleading activities. I do have the queries to look at. The risk to Google of doing nefarious things to me would be not worthwhile and not necessary to play that risk.").

[21] *See, e.g.*, Pls. Ex. A, Fox Initial Report, App. A, at 7 (admitting that "[t]here are different ways to quantify the importance and impact of each component regarding the final ranking of search results . . . .").

results. Moreover, as explained in the following Section, it is impossible for the Plaintiffs to test what different parameters would have revealed about the experimental results because the 2022 DRE is not replicable.

Google cannot hide behind scientific or technical jargon to avoid the fact that its expert admitted that he did not validate critical aspects of the 2022 DRE. Google's theory of self-validating reliability should be rejected: hand-selected analyses cannot prove an experiment's reliability. Certainly, a basic consistency among Google's disclosed results cannot cure Prof. Fox's failure to design, perform, supervise, or validate the 2022 DRE. It should, accordingly, be excluded from evidence.

## II.   Prof. Fox's Opinions Are Inadmissible Because The 2022 DRE Cannot Be Tested

The 2022 DRE also fails under *Daubert* because the experiment cannot be replicated and, therefore, cannot be tested. *See* Pls. Br. at 19–25. Google concedes "the experiment was run on a proprietary system and thus cannot be re-run by the opposing side." Def. Br. at 33. This should end the inquiry. "[W]hen an expert's experiments are conducted in a way that does not allow any other expert to replicate them, the expert's conclusions are unreliable and should be excluded." *Wyatt*, 2010 WL 11505684, at *6.

Instead, Google makes an argument that finds no support in the law: that Prof. Fox's experiment and calculations need not be *replicable* to be *testable* under *Daubert*. Def. Br. at 33–40. In support of its novel claim, Google (1) reads the replicability requirement out of *Daubert*; (2) argues that Plaintiffs' ability to "challenge" some parts of the experiment's design suffices; and (3) argues that Plaintiffs have attempted to manufacture an additional *Daubert* requirement. Google's arguments are contrary to established caselaw, misstate facts, and cannot remedy the fundamental issue with Prof. Fox's reliance on the 2022 DRE: it is an experiment conducted entirely within the Google complex that nobody can replicate or test.

A.    *Daubert* **Requires That Plaintiffs Be Able To Replicate The 2022 DRE**

*Daubert*'s testability requirement means a relied-upon experiment must be replicable.

*See, e.g.*, *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014) ("Under

*Daubert*'s testability factor, the primary requirement is that '[s]omeone else using the same data

and methods . . . be able to *replicate* the result[s].'" (quoting *Zenith Elecs. Corp. v. WH-TV*

*Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (alterations in original) (emphasis added)))

(cited in Def. Br. at 34).[22]

Replicability affords the opposing party meaningful scrutiny and cross-examination.

*United States v. Gissantaner*, 990 F.3d 457 (6th Cir. 2021)—a case Google relies on—proves the

point. *See* Def. Br. at 34–35, 38. *Gissantaner* explicitly conditioned its finding that the reliability

of commercial DNA-sorting software could be "hashed out through cross-examination or

testing," 990 F.3d at 468, on the fact that the proffering party had not objected to the other side's

having access "to the program's source code or to their ability to run their own tests at different

parameters as well as to observe how the laboratory operates" the software. *Id*. Here, Google

relies on its *own* proprietary systems to shield the 2022 DRE from meaningful testing. Thus,

Plaintiffs cannot "run their own tests at different parameters" or fully perform the "cross-

examination or testing" approved in *Gissantaner*. *Id*.

Google's heavy reliance on the D.C. Circuit's decision in *Morgan*, 45 F.4th at 203,

suffers from similar flaws. In *Morgan*, an expert performed a "drive test" to identify a cell phone

tower's range and, after doing so, used a third-party mapping program known as ESPA to

---

[22] *See also Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 94 (1st Cir. 2014) (explaining that "repeating [an expert's] study under the same conditions" will "test[] a particular theory [and] either reproduce consistent results, thus confirming the theory, or inconsistent results, thus casting doubt on it").

display the results. *Id.* at 198. The *Morgan* defendant sought to exclude the expert because he could not testify about EPSA's algorithm. *Id.* at 203. The D.C. Circuit noted that *Daubert* does not require "an expert to have a sophisticated understanding of the software underlying her technological tools." *Id*. This is axiomatic—a software user ordinarily need not possess detailed understanding of the programs inner workings when used for its intended purpose.

Google, however, argues that the D.C. Circuit's unremarkable observation in *Morgan* is "devastating[]" for Plaintiffs. Def. Br. at 3. Google's reliance is misplaced and ignores two dispositive factors. *First*, and critically, the caselaw shows that the movant in *Morgan* did not need access to the third-party EPSA software to replicate and therefore test the expert's analysis *because the movant could repeat the drive test without the software*. *Morgan* relied on *United States v. Nelson*, 533 F. Supp. 3d 779 (N.D. Cal. 2021), (as does Google), which also analyzed the ESPA program. *Nelson* concluded EPSA merely offered a "mapping function . . . that can be performed manually or with publicly available software such as Google Maps," noting the defendants did not explain how they were unable to adequately repeat the analysis using that available software. 533 F. Supp. 3d at 797–98; *Morgan*, 45 F.4th at 203 (analogizing ESPA to Microsoft Excel).[23] Thus, the *Morgan* and *Nelson* defendants each had alternate means to replicate and test the maps created using ESPA. In contrast, both Google and Prof. Fox concede neither Plaintiffs nor anyone else reviewing the experiment can replicate it.

*Second*, the subject of the 2022 DRE *is* Google's proprietary systems; the systems are not a "technological tool" aiding Prof. Fox's analysis. Indeed, Prof. Fox purports to test alterations to the inner workings of Google's search systems—a far cry from the *Morgan* expert's use of a

---

[23] *See also United States v. Robinson,* 2018 U.S. Dist. LEXIS 178824, at *11 (E.D. Mich. Oct. 18, 2018) ("One can perform the same function as ESPA using the call detail records, tower locations, and maps.").

mapping program for its intended purpose. As Prof. Fox explained in his initial report, "I was retained to test the extent to which Google's search quality is affected by the volume of user interaction data available to train its ranking algorithms." Pls. Ex. A, Fox Initial Report, 5. Thus, unlike *Morgan*, the "proprietary algorithm[s]" here are precisely what Prof. Fox claims to test, and access to them was entirely one-sided: Google had access, and Plaintiffs did not.[24]

Google also cites *City of Pomona*, 750 F.3d 1036, and *United States v. Rite Aid Corp*, 2020 WL 3970201 (E.D. Cal. July 14, 2020), which do more harm than good to Google's positions. Def. Br. at 34–35. Both of those cases acknowledge *Daubert*'s requirement that "[s]omeone else using the same data and methods . . . be able to replicate the result[s]." *City of Pomona*, 750 F.3d at 1047 (alterations in original) (internal quotation marks omitted); *Rite Aid Corp*, 2020 WL 3970201, at *13 (internal quotation marks omitted). Thus, both *City of Pomona* and *Rite Aid* denied *Daubert* motions only after finding the expert's analysis *was* replicable.[25]

Google's arguments, thus, fail to support its contention that Plaintiffs need not be able to replicate the 2022 DRE to test it. As such, the Court should exclude Prof. Fox's opinions.

---

[24] Google's citations to three criminal cases, Def. Br. at 38 & n.20, are distinguishable for similar reasons. *Gissantaner* (described above) involved freely testable commercially available software. *See* 990 F.3d at 467–68. *United States v. Chiaradio* addressed whether an FBI agent could testify about his use of modified file-sharing software to identify individuals downloading child pornography, despite unfamiliarity with its source code. *See* 684 F.3d 265, 271, 276–78 (1st Cir. 2012). *United States v. Springstead* is an unreported affirmation of admission of expert testimony on forensic computer analysis over an objection the agent lacked familiarity with the software he used, and contains virtually no analysis. *See* 520 F. App'x 168, 169–70 (4th Cir. 2013).

[25] Google cites *United States v. Mitchell*, 365 F.3d 215 (3d Cir. 2004)—originally cited by Plaintiffs, Pls. Br. at 20—which Google claims held that "*Daubert*'s '[t]estability' factor does not require there to be 'directed, specific actual testing' of the expert's technique," Def. Br. at 36 (quoting *Mitchell*, 365 F.3d at 235, 238). Google misreads *Mitchell*: the "testing" discussed in Google's cited passage refers to whether the expert's analysis adequately tested his hypothesis using "real-world conditions," *not* whether the opposing party could replicate that analysis. *Mitchell*, 365 F.3d at 238.

**B.      Without The Ability To Replicate The 2022 DRE, Plaintiffs Cannot Meaningfully Test The Reliability Of Prof. Fox's Opinions**

In lieu of a replicability requirement, Google argues that "testability" requires only that "'the expert's theory can be challenged in some *objective sense*.'" Def. Br. at 34 (emphasis added) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). Under this standard, Google asserts that the 2022 DRE is testable because Plaintiffs can challenge aspects of the experiment's design. *Id*. at 35. According to Google, and without much explanation, Plaintiffs can purportedly challenge two aspects of the 2022 DRE's design: (1) "which ranking components he selected for retraining, the reasons for their selection, and a calculation of their impact of ranking"; and (2) the "metric by which querysets were selected to test the resulting search quality." *Id*.[26] But *Daubert* does not allow Google to dictate which aspects of its 2022 DRE Plaintiffs may challenge and Google's contrary position conflicts with the caselaw.

Indeed, the idea that an expert's proponent could select the limited methods by which the challenging party might examine the expert's work conflicts with *Daubert's* entire premise. Google's approach would remove the Court as the gatekeeper of expert evidence, *Daubert*, 509 U.S. at 597, and place Google there in its place.

Google does not, and cannot, argue the limited testing it proposes could enable Plaintiffs to replicate Prof. Fox's analysis. Plaintiffs thus cannot re-run the 2022 DRE "under the same conditions that [Google] did" to check for consistent or inconsistent results. *Bricklayers*, 752

---

[26] Google fails to disclose that these design choices were reached by Google engineers, not Prof. Fox. Because Google has refused to produce information about any discussion between Prof. Fox and Google staff, there is no way to scrutinize these decisions and assess their reliability. Pls. Ex. P, Fox Dep., 425:10–426:1 (stating that Google engineers identified which ranking components to retrain); *id*. at 429:4–430:16 (stating that his answers about "impact calculation" were based on what he "remember[ed] from discussions with Google staff"); *id*. at 134:2–135:19 (noting that Google prepared the querysets).

F.3d at 94. Google's proposal also would not permit Plaintiffs to "run their own tests at different parameters" as discussed in *Gissantaner*. 990 F.3d at 468. Without the ability to test different parameters, Plaintiffs are unable to properly challenge Prof. Fox's positions. *See Pascal v. Nissan N. Am., Inc*., 2022 U.S. Dist. LEXIS 230117, at \*25–26 (C.D. Cal. Dec. 21, 2022) ("There is no way to determine [reliability], other than the say-so of the expert himself, if one party prevents the other from subjecting the testing to scrutiny.").

    **C.**    **The Backup Materials Are Deficient And Insufficient To Test The Reliability Of Prof. Fox's Opinions**

Google's claims regarding its CMO obligations and Prof. Fox's backup materials fail to challenge, or even mention, the many deficiencies in Prof. Fox's backup production outlined in Plaintiffs' opening brief. Pls. Br. at 22. In particular, much of the code Google produced is useless to Plaintiffs because it cannot be run outside Google's systems. *Id.* Other code produces different results than those reported in Prof. Fox's reports.[27] Moreover, Google nowhere contends Prof. Fox's backup can be used to replicate his experiment (unsurprising, given its concession that Prof. Fox's experiment cannot be replicated).

At the start, Google contends that the CMO is irrelevant to *Daubert*. Def. Br. at 39. However, the CMO contains the parties' agreement as to what productions were necessary to recreate an expert's analysis and, thus, informs the *Daubert* analysis. Specifically, the CMO requires production of "all data and programs underlying the [expert's] calculations, including all programs and codes necessary to recreate the calculations from the initial ('raw') data files."[28] Google further argues that Plaintiffs waived any challenge to Prof. Fox's backup productions.

---

[27] Pls. Ex. S, USDOJ-GOOGFX-000001, July 19, 2022 Letter from Franklin M. Rubinstein, at -006.

[28] *See* Am. Scheduling and Case Management Order, ¶ 24(e), Feb. 3, 2021, ECF No. 108-1.

Def. Br. at 39–40. This ignores *Daubert's* appointment of this Court as a gatekeeper and Google's affirmative burden to demonstrate Prof. Fox's reliability to the Court: the Court, like Plaintiffs, is unable to test the reliability of Prof. Fox's opinions. *See Batchelor-Robjohns*, 2005 U.S. Dist. LEXIS 13552, at *11 (citing *Daubert*, 509 U.S. at 579).

Google also misstates the scope of its production. Google claims it produced the "proprietary code" used to compute the quality scores reported in Prof. Fox's Report. Def. Br. at 40. This is false. Instead, Google admits in correspondence it produced only "code closely approximating Google's internal systems," which does not actually compute the quality scores in Prof. Fox's reports.[29] Google itself cannot explain the deficiency, militating further in favor of exclusion. *Id.*; *see also Pascal*, 2022 U.S. Dist. LEXIS 230117, at *31–32 (inconsistent testing results, "absent an adequate explanation," amplify *Daubert* concerns.).

Finally, Google deflects, resorting to baseless attacks, arguing that Plaintiffs were somehow derelict in not relying on these produced materials that could not be used. Def. Br. at 40. This misdirection cannot change the central point: Google has failed to meet its burden and show that Prof. Fox's opinions are reliable.

## III.   Prof. Fox Impermissibly Extrapolates From Google-Specific Results To Reach Conclusions About Google's Current And Potential Competitors

Google has also failed to show that Prof. Fox can reliably extrapolate beyond the Google-specific 2022 DRE to opine about the effect of scale on Google's current or potential rivals.

---

[29] Pls. Ex. S, USDOJ-GOOGFX-000001, July 19, 2022 Letter from Franklin M. Rubinstein, at -006 ("Google's internal systems are highly complex and not externally reproducible, and it is not feasible here to fully describe every aspect of Google's systems that may potentially affect the values output by those systems. Nevertheless, the workbooks produced to DOJ Plaintiffs provide reproducible code closely approximating Google's internal systems.").

Along with challenging the fundamental problems with the 2022 DRE, Plaintiffs also moved to exclude Prof. Fox's opinions because they are based on improper inferences from the experiment's results. Specifically, our initial brief explained that Prof. Fox impermissibly extrapolated from the results of a Google-specific experiment to reach conclusions about the effects of scale on Google's current and potential rivals. Pls. Br. at 25–28. In its Opposition, Google does not remedy this defect. Instead, Google parrots Prof. Fox's unjustifiable extrapolations and argues that his "unquestioned" expertise allows him to extrapolate beyond the Google-specific underlying data. Def. Br. at 17–18. The Court should reject Google's arguments.

### A.    Prof. Fox's Opinions Are Not Relevant To Plaintiffs' Scale Allegations

In an attempt to make Prof. Fox's opinions relevant, Google misrepresents Plaintiffs' scale allegations. Plaintiffs do not contend, nor are they obligated to prove, that there is "some unspecified minimum amount of data from users' interactions with a search engine . . . necessary for a general search engine rival to . . . 'compete effectively' with Google." Def. Br. at 1. Rather, Plaintiffs claim that general search is an industry where the use of the product itself serves to improve its quality.[30] And as a result of Google's monopolistic distribution practices, Google is able to maintain its scale advantage while simultaneously depriving its current and potential rivals the benefits of scale. Am. Compl., ECF No. 94, at ¶ 8. Thus, to appreciate the full scope of effects caused by Google's anticompetitive conduct, Plaintiffs describe how Google's

---

[30] Google incorrectly asserts that Plaintiffs "postulated a relationship between user interaction data and search quality in their complaints and thenceforth presumed it true." Def. Br. at 31–32. Our allegations are well-founded. *See, e.g.*, *supra* note 1; Pls. Ex. T, Joan Braddi CID Dep., July 28, 2020, 77:21–78:3 ("Q. Does having more users help Google to improve its search engine? A. . . . [C]ertainly volume of searches helps to refine and improve the search quality, yes."); Pls. Ex. U, Benedict Gomes CID Dep., Sept. 24, 2020, 115:16–116:4 (Q. So having click and query data helps you deliver better search results? A. Yes.").

competitors have been harmed by their lack of access to scale for well over a decade.[31]

The 2022 DRE does not address that issue. As an initial matter, it is uncontested that the 2022 DRE tested the effect of some scale on a frozen version of Google's systems *today*. *See* Pls. Ex. A, Fox Initial Report, 5 ("Specifically, I was retained to test the extent to which Google's search quality is affected by the volume of user interaction data available to train its ranking algorithms.").

The two principal opinions disclosed in Prof. Fox's initial report are carefully worded to address only that inquiry. Pls. Ex. A, Fox Initial Report, 7–8 (stating that his conclusions apply to "a search provider with Google's technology," and "[t]he [DRE] demonstrates that even without changing its methods to compensate for having less data, Google would maintain a considerable search quality lead"). Prof. Fox's central conclusions, thus, are that *Google* today is at the stage where scale beyond what Microsoft currently possesses has a comparatively small effect on Google's search quality. *See id*. And while Plaintiffs disagree with the specific findings of the 2022 DRE, it is not surprising that after a decade-long search reign, the marginal benefit Google derives from additional scale is not quite as robust as it has been.[32]

Prof. Fox's observations about the effect scale has on Google's systems today, however, says nothing about how Google's anticompetitive conduct has harmed competitors by depriving rivals of meaningful scale for well over a decade, as Plaintiffs alleged in their Complaint.

---

[31] *See* ECF 476, Pls' Memo. In Opp. to Def. Google's Mot. For Summary Judgment, at § I. B.

[32] Google's appeals to *EpiPen* are misplaced. Def. Br. at 18. Google intimates that its current quality advantage is proof that it is deserving of its place in the market. This ignores how Google has benefited from a long stranglehold on scale while simultaneously depriving its current and potential competitors of those benefits.

### B.     Prof. Fox Impermissibly Extrapolates Beyond Google-Specific Data

The 2022 DRE yielded only Google-specific results, but Prof. Fox extrapolated these results to form conclusions about Google's current and potential search competitors. Google does not dispute this. Def. Br. at 17 ("The second principal opinion reflects an extrapolation . . .").[33] Google asserts that Prof. Fox's "unquestioned expertise" allows him to make such an extrapolation. *Id.* This is wrong.

Prof. Fox's "unquestioned expertise" alone does not allow him to extrapolate beyond the experiment's Google-specific results. *See Joiner*, 522 U.S. at 144–47. "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Frazier*, 387 F.3d at 1260–61. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* "Quite simply, under Rule 702, the *reliability* criterion remains a discrete, independent, and important requirement for admissibility." *Id.* (emphasis in original).

Here, Google fails to explain, as required by both caselaw and Federal Rule, *how* Prof. Fox's expertise allows him to extrapolate beyond the 2022 DRE's Google-specific results to reach conclusions about other search engines. *Id.* at 1260–61 (quoting FRE 702). Instead, Google simply restates Prof. Fox's conclusory assertion that the Google-specific 2022 DRE "test[ed] Plaintiffs' hypothesis that rivals could not compete on search quality without a volume of user interaction data above what is currently available to Microsoft." Def. Br. at 18.

Google, however, fails to remedy the analytical gap between what the 2022 DRE purportedly shows, if anything, about Google, and what that means for other competitors, whether Microsoft or other new entrants. In fact, Prof. Fox readily conceded that "[n]o two

---

[33]     The "extrapolation" as written in Google's Opposition is not found in Prof. Fox's reports.

search engine companies are the same." Pls. Ex. G (ECF No. 425-7), Fox Reply Report, ¶ 104.

Moreover, Prof. Fox admitted that he "was not in the position" to test the effect of additional

data on the "infrastructure at Bing." Pls. Ex. P, Fox Dep., 79:11–81:3. Prof. Fox also conceded

that he lacked the data necessary to draw a comparison of Google's systems to those of other

general search engines. Pls. Ex. P, Fox Dep., 78:1–7 ("So a direct comparison would require

some kind of measure of search quality of these other organizations. I did not have access to that

data.").

Further because Google's response only focuses on search engines with Microsoft's

scale, Google completely ignores Plaintiffs' argument that Prof. Fox also impermissibly

extrapolates to reach conclusions about other competitors, new entrants (e.g., search engines with

less scale than Microsoft), and barriers to entry. Pls. Br. at 25–28. Google's failure to address

this point concedes the issue and renders Prof. Fox's testimony on this point inadmissible. *See*

*Selliken v. Country Mut. Ins. Co.*, 2013 WL 4759083, at *3 (E.D. Wash. Sept. 4, 2013) (holding

that opposing party "effectively concede[s]" issue by failing to respond to moving party's

argument); *see also Shankar v. ACS-GSI,* 258 F. App'x 344, 345 (D.C. Cir. 2007) (holding that

plaintiff conceded an issue by "not respond[ing] in any way to [the] argument") (citing Local

Civil Rule 7(b)).

Because Google has failed to demonstrate how Prof. Fox used his expertise to extrapolate

beyond a Google-specific experiment, Prof. Fox's opinions about Google's current competitors

"with Microsoft's scale" should be excluded.

## CONCLUSION

For the reasons articulated above and in our Motion, Plaintiffs respectfully request that

the Court exclude Prof. Fox's opinions in their entirety.

Dated: February 27, 2023                    Respectfully submitted,

By:     */s/ Kenneth M. Dintzer*

Kenneth M. Dintzer
Diana A. Aguilar Aldape
Karl E. Herrmann (D.C. Bar # 1022464)
Michael G. McLellan (D.C. Bar # 489217)
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer2@usdoj.gov
*Counsel for Plaintiff United States of America*

By:     */s/ Margaret Sharp*
Ken Paxton, Attorney General
James Lloyd, Chief, Antitrust Division
Margaret Sharp, Assistant Attorney General
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Margaret.Sharp@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:     */s/ Matthew Michaloski*
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Matthew.Michaloski@atg.in.gov

*Counsel for Plaintiff State of Indiana*

By: ___/s/ Keaton Barnes___
Keaton Barnes
Arkansas Bar No. 2022161
Assistant Attorney General
Office of Tim Griffin, Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Keaton.Barnes@ArkansasAG.gov

*Counsel for Plaintiff State of Arkansas*


By: ___/s/ Brian Wang___
Rob Bonta, Attorney General
Ryan J. McCauley, Deputy Attorney General
Brian Wang, Deputy Attorney General
Henry Cornillie, Deputy Attorney General
Paula Blizzard, Supervising Deputy Attorney
General
Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Brian.Wang@doj.ca.gov

*Counsel for Plaintiff State of California*


By: ___/s/ Lee Istrail___
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By: ___ */s/ Daniel Walsh* ___
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: ___ */s/ Philip R. Heleringer* ___
Daniel Cameron, Attorney General
J. Christian Lewis, Commissioner of the Office of
Consumer Protection
Philip R. Heleringer, Executive Director of the
Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive Director
of the Office of Consumer Protection
Office of the Attorney General, Commonwealth
of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By: ___ */s/ Christopher J. Alderman* ___
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By:___/s/ Scott Mertens_____
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*


By:___/s/ Stephen M. Hoeplinger_____
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*


By:___/s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

By: ___ */s/ Anna Schneider* ___
Anna Schneider
Bureau Chief
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*


By: ___ */s/ Mary Frances Jowers* ___
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Rebecca M. Hartner, Assistant Attorney General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*


By: ___ */s/ Gwendolyn J. Lindsay Cooley* ___
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant
Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

FOR PLAINTIFF STATE OF COLORADO:

PHILIP WEISER
Attorney General

Jonathan B. Sallet
Special Assistant Attorney General

/s/ Jonathan B. Sallet
Jonathan B. Sallet, DC Bar No. 336198
Jon.Sallet@coag.gov
Steven M. Kaufmann,  DC Bar No. 1022365
*(inactive)*
Steve.Kaufmann@coag.gov
Carla Baumel
Carla.Baumel@coag.gov
Elizabeth W. Hereford
Elizabeth.Hereford@coag.gov
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Tel: 720-508-6000

William F. Cavanaugh , Jr.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
Suite 2200
New York, NY 10036-6710
212-335-2793
Email: wfcavanaugh@pbwt.com

*Counsel for Plaintiff Colorado*

FOR PLAINTIFF STATE OF NEBRASKA:

MIKE HILGERS
Attorney General

Joseph M. Conrad, Assistant Attorney General
Colin P. Snider, Assistant Attorney General
Matthew K. McKinley, Special Assistant
Attorney General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3840
Joseph.Conrad@nebraska.gov
Colin.snider@nebraska.gov
Matt.Mckinley@nebraska.gov

William F. Cavanaugh , Jr.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
Suite 2200
New York, NY 10036-6710
212-335-2793
Email: wfcavanaugh@pbwt.com

*Counsel for Plaintiff Nebraska*


FOR PLAINTIFF STATE OF ARIZONA:

KRISTIN K. MAYES
Attorney General

Robert A. Bernheim, Unit Chief Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-315
Tucson, Arizona 85701
Tel: (520) 628-6507
Robert.bernheim@azag.gov

*Counsel for Plaintiff Arizona*

FOR PLAINTIFF STATE OF IOWA:

BRENNA BIRD
Attorney General

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Tel: (515) 725-1018
Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff Iowa*


FOR PLAINTIFF STATE OF NEW YORK:

LETITIA JAMES
Attorney General

Elinor R. Hoffmann
Morgan J. Feder
Michael Schwartz
Office of the Attorney General of New York
28 Liberty Street, 21st Floor
New York, NY 10005
212-416-8513
Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff New York*

FOR PLAINTIFF STATE OF NORTH
CAROLINA:

JOSH STEIN
Attorney General

Kunal Janak Choksi
Joshua Daniel Abram
Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
919-716-6000
kchoksi@ncdoj.gov
jabram@ncdoj.gov
jmarx@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff North Carolina*


FOR PLAINTIFF STATE OF TENNESSEE:

JONATHAN SKRMETTI
Attorney General

J. David McDowell
Chris Dunbar
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville.TN 37202
(615) 741-8722
David.McDowell@ag.tn.gov
Chris.Dunbar@ag.tn.gov

*Counsel for Plaintiff Tennessee*

FOR PLAINTIFF STATE OF UTAH:

SEAN D. REYES
Attorney General

Scott R. Ryther
Tara Pincock
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 142320
Salt Lake City, Utah 84114
385-881-3742
sryther@agutah.gov
tpincock@agutah.gov

*Counsel for Plaintiff Utah*

FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
Attorney General

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Tel: (907) 269-5100
Jeff.pickett@alaska.gov

*Counsel for Plaintiff Alaska*

FOR PLAINTIFF STATE OF CONNECTICUT:
WILLIAM TONG
Attorney General

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
860-808-5202
Nicole.demers@ct.gov

*Counsel for Plaintiff Connecticut*


FOR PLAINTIFF STATE OF DELAWARE:

KATHY JENNINGS
Attorney General

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
302-577-8924
Michael.undorf@delaware.gov

*Counsel for Plaintiff Delaware*


FOR PLAINTIFF DISTRICT OF COLUMBIA:

BRIAN SCHWALB
Attorney General

Elizabeth Gentry Arthur
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
202-724-6514
Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

FOR PLAINTIFF TERRITORY OF GUAM:

DOUGLAS MOYLAN
Attorney General

Fred Nishihira, Chief, Consumer Protection
Division
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Tel: (671) 475-3324

*Counsel for Plaintiff Guam*


FOR PLAINTIFF STATE OF HAWAI'I:

ANNE E. LOPEZ
Attorney General

Rodney I. Kimura
Department of the Attorney General, State of
Hawai'i
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
808-586-1180
Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff Hawai'i*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL LABRADOR
Attorney General

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
208-334-4114
Brett.delange@ag.idaho.gov
John.olson@ag.idaho.gov

*Counsel for Plaintiff Idaho*


FOR PLAINTIFF STATE OF ILLINOIS:

KWAME RAOUL
Attorney General

Elizabeth Maxeiner
Brian Yost
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
773-590-7935
Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov

*Counsel for Plaintiff Illinois*

FOR PLAINTIFF STATE OF KANSAS:

KRIS W. KOBACH
Attorney General

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue., 2nd Floor
Topeka, KS 66612
Tel: (785) 296-3751
Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff Kansas*


FOR PLAINTIFF STATE OF MAINE:

AARON M. FREY
Attorney General

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
207-626-8800
Christina.moylan@maine.gov

*Counsel for Plaintiff Maine*

FOR PLAINTIFF STATE OF MARYLAND:

ANTHONY G. BROWN
Attorney General

Schonette J. Walker
Gary Honick
Office of the Attorney General of Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6480
swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff Maryland*


FOR PLAINTIFF COMMONWEALTH
MASSACHUSETTS:

ANDREA CAMPBELL
Attorney General

William T. Matlack
Michael B. MacKenzie
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Fl.
Boston, MA 02108
Tel: (617) 727-2200
William.matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff Massachusetts*

FOR PLAINTIFF STATE MINNESOTA:

KEITH ELLISON
Attorney General

Zachary William Biesanz
Office of the Minnesota Attorney General
Consumer, Wage, and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
651-757-1257
Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff Minnesota*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General

Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
775-684-1164
mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff Nevada*

FOR PLAINTIFF STATE OF NEW
HAMPSHIRE:

JOHN FORMELLA
Attorney General

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
603-271-1217
Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff New Hampshire*


FOR PLAINTIFF STATE OF NEW  JERSEY:

MATT PLATKIN
Attorney General

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
973-648-7819
Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff New Jersey*

FOR PLAINTIFF STATE OF NEW MEXICO:

RAUL TORREZ
Attorney General

Judith E. Paquin
Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Tel: 505-490-4885
jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff New Mexico*


FOR PLAINTIFF STATE NORTH DAKOTA:

DREW WRIGLEY
Attorney General

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of the Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
701-328-5570
ealm@nd.gov

*Counsel for Plaintiff North Dakota*

FOR PLAINTIFF STATE OHIO:

DAVE YOST
Attorney General

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
614-466-4328
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff Ohio*

FOR THE PLAINTIFF STATE OKLAHOMA:

GENTNER DRUMMOND
Attorney General

Caleb J. Smith
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Tel: (405) 522-1014
Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff Oklahoma*

FOR PLAINTIFF STATE OREGON:

ELLEN ROSENBLUM
Attorney General

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
503-934-4400
Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff Oregon*


FOR PLAINTIFF COMMONWEALTH
PENNSYLVANIA:

MICHELLE HENRY
Attorney General

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Pennsylvania*

FOR PLAINTIFF TERRITORY PUERTO
RICO:

DOMINGO HERNANDEZ
Attorney General

Guarionex Diaz Martinez
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Tel: (787) 721-2900, ext. 1201
gdiaz@justicia.pr.gov

*Counsel for Plaintiff Puerto Rico*


FOR PLAINTIFF STATE RHODE ISLAND:

PETER NERONHA
Attorney General

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
SProvazza@riag.ri.gov

*Counsel for Plaintiff Rhode Island*

FOR PLAINTIFF STATE SOUTH DAKOTA:

MARTY J. JACKLEY
Attorney General

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
605-773-3215
Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff South Dakota*


FOR PLAINTIFF STATE VERMONT:

CHARITY R. CLARK
Attorney General

Christopher J. Curtis
Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
802-828-3170
Ryan.kriger@vermont.gov

*Counsel for Plaintiff Vermont*

FOR PLAINTIFF COMMONWEALTH
VIRGINIA:

JASON S. MIYARES
Attorney General

Tyler T. Henry
thenry@oag.state.va.us
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Tel: (804) 692-0485

*Counsel for Plaintiff Virginia*


FOR PLAINTIFF STATE WASHINGTON:

BOB FERGUSON
Attorney General

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-5419
Amy.hanson@atg.wa.gov

*Counsel for Plaintiff Washington*

FOR PLAINTIFF STATE WEST VIRGINIA:

PATRICK MORRISEY
Attorney General

Douglas Lee Davis
Office of the Attorney General, State of West
Virginia
1900 Kanawha Boulevard, East
Building 6, Suite 402
P.O. Box 1789
Charleston, WV 25305
304-558-8986
Douglas.l.davis@wvago.gov

*Counsel for Plaintiff West Virginia*


FOR PLAINTIFF STATE WYOMING:

BRIDGET HILL
Attorney General

Benjamin Peterson
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
(307) 777-6397
Benjamin.peterson2@wyo.gov

*Counsel for Plaintiff Wyoming*