# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINION OF PLAINTIFFS' EXPERT MICHAEL A. M. DAVIES**

Plaintiffs' Opposition[1] attempts to recast Mr. Davies' opinions in ways inconsistent with his expert reports. Plaintiffs admit, as they must, that Mr. Davies cannot testify about ***why*** any of the five major U.S. smartphone vendors ("OEMs") and wireless carriers ("Carriers") entered into the Android Agreements, or ***how*** those agreements affected their smartphone product strategy, as these opinions constitute improper expert testimony about motive. *See* Opp. at 25.[2] Plaintiffs assert that Mr. Davies instead proposes only to testify about "industry incentives" and "commercial realities" that affect OEM and Carrier decisions. Opp. at 2–3. But these reformulated topics are not what Mr. Davies' reports address, and are a transparent effort to put a new label on impermissible expert testimony about why the OEMs and Carriers relevant to this case entered into agreements with Google. And in any case, to offer testimony about parties' commercial or economic incentives, an expert must demonstrate that he or she has relevant experience to do so. Mr. Davies—who is neither an economist nor an expert on the Android Agreements—can point to none.

Plaintiffs seek to establish Mr. Davies' purported expertise to substitute his testimony for that of the OEMs and Carriers who were deposed in this case by relying on general industry experience he refuses to disclose. But Mr. Davies' unwillingness to provide any meaningful detail about the key experiences that supposedly qualify him as an expert leaves the Court unable to determine his qualifications. And while Plaintiffs claim that Mr. Davies does not rely on any confidential experience

---

[1] DOJ Plaintiffs' ("Plaintiffs'") Memorandum in Opposition to Defendant Google's Motion to Exclude the Opinions of Plaintiffs' Expert Michael A. M. Davies (the "Opposition" and "Motion," respectively).

[2] Mr. Davies' June 6, 2022 Expert Report (the "Report") and September 26, 2022 Reply Expert Report (the "Reply Report") are Exhibits 1 and 2 to the Motion, respectively. Mr. Davies' October 26 and 27, 2022 deposition transcripts (the "Deposition") are Exhibit 3 to the Motion. This Reply also adopts the Motion's definition of Android Agreements, as well as its definitions of smartphone vendors and wireless carriers. *See* Mot. at 3.

as the basis for his opinions, their Opposition actually concedes the opposite by citing the very same (undisclosed or nondescript) experience as the supposed foundation of Mr. Davies' expertise.

Lastly, Mr. Davies' repackaged anticipated testimony is irrelevant and flunks *Daubert*'s "fit" requirement. Plaintiffs admit that Mr. Davies offers no opinion regarding the impact of any Google conduct on general search engine competition. And his proffered testimony is duplicative of fact witness testimony.

Plaintiffs have accordingly failed to carry their burden of establishing that Mr. Davies' testimony is admissible under *Daubert*. His testimony should be excluded.

I.   **MR. DAVIES' PROFFERED TESTIMONY ABOUT THE MOTIVES OF OEMS AND CARRIERS, AND THE IMPACT OF THE ANDROID AGREEMENTS ON THEIR CONDUCT, IS NOT RELIABLE**

In their Opposition, Plaintiffs concede that an expert may not offer opinions on the intent, motive, or state of mind of a party or others. *See* Opp. at 25 ("As [Mr. Davies] would readily concede, he was not in the room when these contracts were negotiated and does not foreclose actor-specific factors . . . playing a role."). Indeed, "[i]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1088 (10th Cir. 2000). At bottom, an expert "may not explicitly *or implicitly* opine on the intent, motivations, or state of mind" of others. *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 443 (E.D.N.Y. 2011) (emphasis added).

Plaintiffs claim that "Mr. Davies does not opine on specific smartphone vendors' or wireless carriers' intent or motivation when entering [into] Google's [Android] Agreements," but instead only on "the *industry incentives* that affect smartphone vendors' and wireless carriers' decision-making[.]" Opp. at 25 (emphasis added). Not so. Mr. Davies' Report explicitly states that he was retained to opine on "***why*** smartphone vendors and wireless carriers agree to [certain] terms and the ***impact*** these contracts have on smartphone vendors, wireless carriers, and

consumers." Rep. ¶ 10 (emphasis added). Those out-of-bounds topics are precisely what his reports cover, as they repeatedly opine on the intent, motive, or state of mind of smartphone vendors and wireless carriers. For example:

- "Because smartphone vendors *perceive* certain core apps in the GMS bundle to be important to the success of their smartphones, they accept these terms and preload apps they do not necessarily want on their smartphones." Rep. ¶ 70 (emphasis added).

- "In particular, wireless carriers *believe* that preinstallation of some core apps that Google has made part of its GMS app bundle, such as the Play Store and Google Maps, are critical . . . ." *Id.* ¶ 83 (emphasis added).

- "Like smartphone vendors, wireless carriers *want and value* the ability to preload their services and customize the OOBE of smartphones to meet consumer demands." *Id.* ¶ 106 (emphasis added).

- "Google's contracts make it more difficult for smartphone vendors to innovate and differentiate their products in ways that are *vital to them*." Reply Rep. ¶ 49 (emphasis added).

- "[S]martphone vendors *consider* the contracts in their totality . . . the ambiguity of the – that is inherent in the AFA is necessarily part of their consideration." Dep. 254:8–22(emphasis added).[3]

To the extent that Plaintiffs suggest that Mr. Davies' opinions are admissible because he does not opine on any single firm's motivations, *see* Opp. at 24–25, they ignore the very facts he cites. As Mr. Davies acknowledges, *two* major smartphone vendors offer Android smartphones in the U.S. today: Samsung and Motorola. Rep. ¶ 63 n.110. And there are three major wireless carriers: Verizon, AT&T, and T-Mobile. Rep. ¶ 86 & n.159. When Mr. Davies offers views about what "smartphone vendors *perceive*" or what "wireless carriers *believe*," there is no mystery as to *whose* state of mind he purports to unpack.

---

[3] Materials accompanying Plaintiffs' opposition to Google's summary judgment motion also lay bear Plaintiffs' intent to use Mr. Davies to offer assertions about what "motivated" Google. *See* Pls.' Statement of Genuine Issues, ECF No. 476-1, ¶ 367.

Even if Mr. Davies' opinions could be recast as testimony on economic incentives, those opinions remain unreliable. To the extent opinions about economic incentives or impact of conduct is permissible expert testimony, it is exclusively the province of expert *economists*. But Mr. Davies is *not* an economist by training and has no relevant experience that would qualify him to offer expert economic opinions. *See* Dep. 77:9–21, 395:16–18. That he may purport to be an expert in something does not qualify him to offer reliable opinions about economic incentives to enter into, or the impact of, any Android Agreements.

The court's decision in *In re Titanium Dioxide Antitrust Litigation*, No. CV-10-0318, 2013 WL 1855980 (D. Md. May 1, 2013), is on point. There the court excluded in full an expert who intended to testify "that certain conduct [wa]s more consistent with collusion than competition[.]" *Id..* at *7. The proffered expert was a professor of law and economics at Yale and had testified numerous times in antitrust cases. *Id.* at *6. But the court nonetheless found that he was "not an economist" by training and thus was not "the right expert to give [an] opinion" about incentives to collude. *Id.* at *7. The right experts for such an opinion, according to the court, were economists who could "opine on this economic matter." *Id.*

Mr. Davies also lacks expertise to opine on OEMs' and Carriers' "incentives" to enter into the Android Agreements, and the impact of those agreements, for yet another, distinct reason: Plaintiffs admit he is *not* an expert in those agreements. *See* Opp. at 2, 18–19. Indeed, Plaintiffs concede that Mr. Davies neither "personally reviewed" the Android Agreements prior to this engagement nor has he ever "spoken at length to any counterparties about their contents[.]" *Id.* at 19. And Mr. Davies points to no other experience in analyzing similar contractual incentives that might inform his analysis. Dep. 77:9–21. Simply stated, Mr. Davies lacks any reliable basis to opine about the impact that entering into the Android Agreements has on entities from whom this

Court will already hear—OEMs and Carriers—much less their "incentives" to do so. *See United States v. Farrad*, 895 F.3d 859, 883 (6th Cir. 2018) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." (citation omitted)); *see also United States v. Stagliano*, 729 F. Supp. 2d 222, 230 (D.D.C. 2010) ("Under *Daubert*, presenting an expert's qualifications, conclusions, and assurances of reliability are not enough.").

The principal case on which Plaintiffs rely, *Sitts v. Dairy Farmers of Am., Inc.*, No. 2:16-CV-00287, 2020 WL 3467993 (D. Vt. June 24, 2020) (cited in Opp. at 24, 26), is inapposite. The expert in that case was, unlike Mr. Davies, a "co-author of several leading treatises on antitrust law and economics," who opined on "economic incentives" in an antitrust case. *Sitts*, 2020 WL 3467993, at *1, 7.[4] Plaintiffs also invoke *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, No. 05-MD-1720, 2022 WL 15044626 (E.D.N.Y. Oct. 26, 2022) (cited in Opp. at 24), for the proposition that an expert can opine on "why a particular action would be inconsistent with normal market incentives." Opp. at 25. But the *Payment Card* court actually *precluded* expert testimony concerning the "likely reason why the [credit card] networks created" certain market rules and pricing structures. 2022 WL 15044626, at *32. Such testimony was impermissible because it "respresent[ed] an inference about the intent or motive of parties or others," namely Visa and MasterCard. *Id.* (citation, brackets, and internal quotation omitted). So too here. Mr. Davies seeks to explain the reasons "why smartphone vendors and wireless carriers agree to" certain terms found in Google's Android Agreements. Rep. ¶ 10. Just as the *Payment Card* court precluded an expert from testifying about the "likely reason why the networks" took

---

[4] Plaintiffs' invocation of *United States v. Dunn*, 846 F.2d 761 (D.C. Cir. 1988) is also unavailing. *Dunn* concerned the application of FRE 704(b), which prohibits experts from opining on legal conclusions in a criminal case.

certain actions because it encroached on the motives of Visa and MasterCard, the Court here should exclude Mr. Davies' opinions about why smartphone vendors and wireless carriers sign the Android Agreements. *See Deutsch*, 768 F. Supp. 2d at 443 (expert "may not explicitly or implicitly opine on the intent, motivations, or state of mind").

## II. PLAINTIFFS CANNOT ESTABLISH MR. DAVIES' QUALIFICATIONS BASED ON EXPERIENCE HE REFUSES TO DISCLOSE

Plaintiffs claim that Mr. Davies is qualified to offer his proffered opinions by pointing to a lengthy list of vaguely identified industry experiences. *See* Opp. at 12–14. But those are the ***very same*** experiences about which Mr. Davies repeatedly refused to disclose any specific information during his deposition—including the names of the clients, the subject matter of the work, and how they qualified him to offer opinions about the Android Agreements in this case. *See* Mot. at 10–11. Plaintiffs cannot have it both ways. When an expert relies "primarily on experience," the expert "must explain how that experience leads to the conclusion reached" and "why that experience is a sufficient basis for the opinion." *Est. of Gaither ex rel. Gaither v. D.C.*, 831 F. Supp. 2d 56, 68 (D.D.C. 2011) (citation omitted). Because Mr. Davies has not done so, Plaintiffs have not met their burden of "show[ing] by a preponderance of the evidence that [Mr. Davies] is qualified" to render his proffered opinions in this case. *Sykes v. Napolitano*, 634 F. Supp. 2d 1, 6 (D.D.C. 2009).

Plaintiffs' Opposition contends that Mr. Davies is qualified to opine on "the commercial reality and industry incentives faced by smartphone vendors and wireless carriers." Opp. at 3. But as recounted in detail in Google's Motion, when asked about the experiences through which he claims to have developed this expertise, Mr. Davies refused to provide any measure of relevant detail, or even to identify the names of any U.S. OEMs he had worked for in the last five years. *See* Mot. at 10–11. The Opposition attempts to downplay Mr. Davies' refusal to answer these and other straightforward, relevant questions, asserting that he "did not rely upon any proprietary or

confidential information learned in the course of those engagements when *formulating his opinions*[.]" Opp. at 14 (emphasis added). But Plaintiffs then point to the same information when *establishing his expertise*. Consider the following example:

- *In his Report,* Mr. Davies repeatedly references experience with Samsung as a basis for his expertise. *See* Rep. ¶¶ 4, 6 (stating that he has worked for "leading mobile phone vendors . . . including . . . Samsung" and that "[t]hrough these experiences, I have developed extensive expertise"); *see also id.,* Attach. A at 3, 9, 10.

- *In his deposition*, however, when asked "[w]hat work related to smartphones have you performed for Samsung," Mr. Davies responded "[t]he specific nature of the work that we performed is certainly covered by NDA." Pressed for details, Mr. Davies reiterated that the work was performed "[u]nder a variety of NDA's" and was "extraordinarily sensitive." Dep. 35:8–36:8.

- *In Plaintiffs' Opposition*, Plaintiffs claim that Mr. Davies does "not rely upon any proprietary or other confidential information he learned in the course of engagements covered by an NDA," Opp. at 8, so it would seem that Mr. Davies' opinions are not based on any work for Samsung "related to smartphones."

- *But in the very same Opposition*, Plaintiffs repeatedly cite Mr. Davies' work for Samsung related to smartphones as a basis for his expertise. *See id.* at 1 ("Dozens of leading smartphone vendors and wireless carriers—including Samsung, . . .have sought out his expertise"); 4 ("Mr. Davies has been engaged by . . . Samsung . . . on the design of smartphones . . . ."); 12 (claiming that Mr. Davies "lifetime of industry experience" includes being "retained by many of the leading smartphone vendors" including Samsung).

These are not isolated examples. The Report also cites Mr. Davies' work for Motorola as a basis for his expertise. Rep. ¶ 4, Attach. A at 3, 9. Like the questions about Samsung, Mr. Davies declined to provide any relevant detail about this work for Motorola, stating that "[m]ost of what was involved was covered by NDA" and disclosing only that he worked on what he called "the Moto mods strategy[,] which were a set of modular compl[e]ments," and Motorola's "physical retail presence using pop-up stores in malls." Dep. 38:14–39:17, 73:1–12. But once again, Plaintiffs cite Mr. Davies' work for Motorola in attempt to establish his expertise (and with no indication that they are only referring to Mr. Davies' work on "Moto mods" and pop-up stores in malls). Opp. at 1, 4, 12–13.

-7-

In all, Mr. Davies declined to answer dozens of questions about his experience on confidentiality grounds, nearly all of which pertained to the basis for his expertise, and nearly all of which Plaintiffs ignore by continuing to rely on those same experiences in attempting to establish Mr. Davies' qualifications.[5]  Plaintiffs cannot wave away Mr. Davies' refusal to answer questions about his experience by claiming irrelevance on one page of their brief but relying on that same experience in seeking to meet their burden under *Daubert* on the next.  *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997) (affirming exclusion because the expert's "testimony about his prior experiences with conveyors was [] vague" and "[w]here an expert bases his opinion in part on his experience with similar machines, we cannot fault the court for demanding a more detailed recollection of the expert's review and understanding of similar machines").[6]

Without meaningful information about Mr. Davies' industry experiences, Plaintiffs cannot satisfy their burden under *Daubert* to show he has a "reliable basis in the knowledge and experience of [the relevant] discipline" to offer his proffered opinions.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  Neither the Court nor Google have available to it any substantive detail about Mr. Davies' supposed experience with OEMs and Carriers since the alleged onset of Google's anticompetitive conduct.  For anticipated testimony that focuses on ***why***

---

[5] Plaintiffs' contention that Mr. Davies only refused to answer 15 questions, Opp. at 7–8, reflects a selective tabulation of Mr. Davies' responses.  A cursory review of the first 100 pages of Mr. Davies' 400-plus page deposition transcript alone reveals nearly twice as many refusals to answer as Plaintiffs identified.  *See, e.g.*, Dep. 15:21–16:2, 18:20–19:1, 19:2–5, 21:3–13, 21:14–20, 22:10–13, 22:17–22, 30:13–19, 30:20–31:6, 35:8–11, 36:3–8, 38:17–39:4, 55:20–56:2, 56:15–17, 56:18–57:1, 64:2–5, 64:6–8, 65:2–8, 65:9–13, 71:8–15, 73:1–12, 73:17–22, 80:18–21, 80:22–81:3, 81:4–7, 81:8–10.

[6] Contrary to Plaintiffs' contention, Opp. at 17, Professor Bucklin's position is inapposite.  Mr. Davies refused to give any information about experiences ***he cited***.  By contrast, Plaintiffs asked Professor Bucklin about engagements ***beyond*** those he invoked.  Ex. 11, Excerpts of the Deposition of Randolph E. Bucklin (Oct. 26–27, 2022) at 47:16–48:5.

two OEMs and three Carriers entered into certain agreements and the impact of those agreements on them, information about Mr. Davies' prior experience with the very OEMs and Carriers from whom this Court will hear is critical to evaluating his qualifications. Without it, Plaintiffs are left to rely on Mr. Davies' prior work for Mercator Partners and BellSouth International, engagements that concluded 14 and 27 years ago, respectively—long before 2014, the date Plaintiffs' economic expert asserts anticompetitive effects from the Android Agreements began. Opp. at 13; Rep., Attach. A at 5–6; Ex. 12, Excerpts of the Deposition of Michael D. Whinston (Nov. 9–10, 2022) at 48:6–11. Mr. Davies' educational experience cannot bridge this gap. Mr. Davies' formal education—which concluded over 30 years ago—alone cannot establish expertise in a rapidly changing industry. *See, e.g.*, *United States v. Frabizio*, 445 F. Supp. 2d 152, 162 (D. Mass. 2006) (explaining that because basis for expertise may be "constantly in flux" due to "rapidly changing" technology, "the court should be an especially vigilant gatekeeper" (citation omitted)).[7]

Plaintiffs therefore have not carried their burden "to show by a preponderance of the evidence that [Mr. Davies] is qualified" to offer his opinions in this particular case. *Sykes*, 634 F. Supp. 2d at 6.[8]

---

[7] The cases Plaintiffs cite—both of which involved experts with recent and relevant experience, and neither of which involved the expert refusing to disclose details of that experience—do nothing to remedy this deficiency. *See Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*, 315 F. Supp. 3d 101, 111–12 (D.D.C. 2018) (finding expert qualified to opine on real estate financing based on over 50 years of experience that "directly related to the agreement at issue" (brackets and internal quotation omitted)); *Groobert v. President & Directors of Georgetown Coll.*, 219 F. Supp. 2d 1, 4, 7–8 (D.D.C. 2002) (finding expert qualified to evaluate stock photography income where expert "work[ed] with at least six agencies and ha[d] earned 100 percent of his income for the last 12 years from stock photography").

[8] Plaintiffs' Rule 26 argument, Opp. at 14–15, likewise fails. Google does not contend that Mr. Davies violated his disclosure obligations under Rule 26; rather, Mr. Davies' refusal to disclose crucial background information precludes Plaintiffs from establishing his expertise under *Daubert*.

### III. PLAINTIFFS HAVE NOT ESTABLISHED THAT MR. DAVIES' REPACKAGED OPINIONS ARE RELEVANT

Plaintiffs' Opposition concedes that Mr. Davies offers no opinion on search competition or that any particular Google conduct is anticompetitive. *See* Opp. at 27–28. Their argument for relevance is instead that Mr. Davies' proffered opinions concern "commercial realities." *Id.* at 28. But such testimony plainly turns on impermissible inferences about the "intent or motive" of the five OEMs and carriers who allegedly were "coerced" or "force[d]" to enter into Android Agreements. *See id.*; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."). Plaintiffs cannot cure the inadmissibility of Mr. Davies' impermissible opinions by giving them a different name. *See In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding expert from testifying where she "conceded" that her expertise "does not give her the ability to read minds" but "[n]evertheless, her report [was] replete with such conjecture").

Plaintiffs add that Mr. Davies' opinions will help the Court understand "how terms in Google's agreements adversely affect [OEMs]' product development cycles." Opp. at 28. These OEMs, however, have already been deposed on this topic, and their testimony will be available to the Court at trial.[9] As even Mr. Davies admits, these fact witnesses are better suited to testify to the "effect" of the Android Agreements, as opposed to Mr. Davies' speculative conjecture. *See, e.g.,* Dep. 330:15–20 ("[I]f I want to figure out whether or not carriers think customer experience

---

[9] *See, e.g.,* ███████████████████████████████████████████

is the reason that they, in their view, put Google services on devices, then the right people to ask whether or not the reason that carriers do that is the carriers."). Because Mr. Davies can only offer an uninformed gloss on their testimony, any resulting opinion is both superfluous and irrelevant. *See United States ex rel. Landis v. Tailwind Sports Corp.*, No. 10-CV-00976, 2017 WL 5905509, at *14–15 (D.D.C. Nov. 28, 2017) (excluding expert testimony seeking to explain the actions of fact witnesses because expert's methodology "consist[s] entirely of reading the [fact witnesses'] deposition transcripts" and the fact finder is "entirely capable of reviewing the testimony of [the] witnesses and drawing conclusions"); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-cv-7242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (explaining testimony from fact witness familiar with documents would be "far more appropriate" than an expert's "secondhand knowledge" (citation omitted)).

Remarkably, Plaintiffs seek to salvage a "fit" between Mr. Davies' anticipated testimony and this matter by arguing that his assessment of the motives of OEMs and Carriers ought to be admitted even if based merely on assumptions or if it conflicts with the testimony of those OEMs and Carriers. Opp. at 26. But "[a]n expert who fails to review relevant data, and can offer no good reason for it," cannot establish the requisite "fit"; his opinions are therefore both unreliable and irrelevant. *See United States ex rel. Raggio v. Jacintoport Int'l, LLC*, No. CV 10-01908, 2015 WL 13708452, at *11 (D.D.C. Oct. 26, 2015) (quoting *Moore v. Napolitano*, 926 F. Supp. 2d 8, 24 n.11 (D.D.C 2013)); *see also id.* at *12 (opinion that is unreliable because it fails to "consider facts and testimony important to [a particular] case" is also irrelevant because it lacks the requisite "fit").

Finally, Plaintiffs say that Mr. Davies will also opine that Google's expert economist Kevin M. Murphy's "analysis of AFAs and ACCs is flawed because Prof. Murphy overstates the risks fragmentation poses to the success of mobile OSs[.]" *See* Opp. at 7. As further explained in

-11-

Google's forthcoming reply in support of its Motion for Summary Judgment, Plaintiffs advance no argument, let alone evidence, that AFAs/ACCs harm search competition or are exclusionary. Plaintiffs challenge, insofar as Android is concerned, only "Distribution Agreements." Pls.' Counterstatement of Material Facts, ECF No. 476-2, ¶ 468 n.2. So this proposed testimony is irrelevant. It is also based on the same impermissible effort by Mr. Davies to substitute his views for the motives and incentives of Google's partners. Reply Rep. ¶ 25; Dep. 256:14–257:6. For the same two reasons, this Court should exclude any testimony with respect to Google's decisions as to which features to include in open-source Android. Plaintiffs, as their summary judgment opposition makes plain, do not challenge such conduct as anticompetitive or exclusionary. And to the extent Mr. Davies seeks to testify as to how Google's design of Android impacted its partners' incentives and conduct, such testimony would again intrude upon OEMs' and Carriers' motives and thus be impermissible as discussed in Section I above.

Given Plaintiffs' admissions in their Opposition, there is simply nothing left of Mr. Davies' proffered opinions that is both reliable and relevant. His testimony should be excluded in full.

## CONCLUSION

For all of the reasons set forth above and in the Motion, Google respectfully requests that the Court exclude Mr. Davies' testimony.

Dated: February 24, 2023                    Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*