IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| State of Colorado, *et al.*, | | |
| | Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | | HON. AMIT P. MEHTA |
| Google LLC, | | ▇▇▇▇▇▇▇▇▇▇ |
| | Defendant. | |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS
MOTION TO PARTIALLY EXCLUDE THE OPINION OF
<u>PLAINTIFFS' EXPERT JONATHAN BAKER</u>**

Plaintiffs' Opposition repeatedly states that Professor Baker will offer economic opinions based on factual *assumptions* that he has made.  Opp. 3–4, 7, 9–10, 12–13.  If his opinions were thus limited, the dispute on this motion would be relatively narrow:  does his presentation of those assumptions veer into improper, duplicative summary narration, as Google contends?  But because Plaintiffs appear unwilling to disclaim Professor Baker's ability to offer ultimate opinions (not just recount factual assumptions) on the impact of the availability of user interaction data (or "scale") on search engine quality and Google's performance in data privacy, this brief explains why those opinions must be excluded as well.

Given his acknowledged lack of expertise in these technical areas, Professor Baker's testimony regarding scale and privacy consists entirely of factual narration disguised as expert opinion.  Whether offered as assumptions or opinions as to truth, such testimony is unhelpful to the Court, and will only serve to lengthen the trial.  There is no need to have Professor Baker recount testimony or documents with only Plaintiffs' gloss added.

Likewise, Plaintiffs' attempt to use Professor Baker to rebut the technical study performed by Google's computer science expert, Professor Fox, should be rejected.  Plaintiffs wrongly suggest that Professor Baker is actually rebutting Professor Murphy's *reliance* on Professor Fox.  This is an obvious pretext—Professor Murphy properly issued economic opinions, expressly relying on Professor Fox's technical study.  That Plaintiffs declined to hire their own computer scientist does not justify having an economist offer an opinion outside his expertise.  And Professor Baker's reliance on an interview with a Microsoft witness who could not review Professor Fox's study renders his opinion unreliable and unhelpful.

Plaintiffs have accordingly failed to carry their burden of establishing that Professor Baker's testimony on scale and privacy is admissible under Rule 702.  His testimony on these topics should be excluded.

## ARGUMENT

**I.     Professor Baker's Opinions About Search Engine Scale Should Be Excluded.**

As discussed in Google's opening brief, Professor Baker's opinions regarding the impact of search engine scale on search quality fail to meet Rule 702 for multiple reasons.  First, Professor Baker has no relevant experience regarding scale's impact on search quality, a highly technical question.  Mot. 9–11.  Second, Professor Baker's scale opinions consist mainly of unhelpful narration.  Mot. 11–13.  Third, Professor Baker is not qualified to rebut the opinion of a computer scientist, Professor Fox, and his narration of record facts and his interview with a fact witness is unreliable and not an appropriate subject of expert economist testimony.  Mot. 13–14.

**A.     Professor Baker's opinions on the effect of scale on search quality are not limited to "factual assumptions."**

Through much of their Opposition, Plaintiffs attempt to recast Professor Baker's opinions to avoid the obvious deficiencies in his qualifications.  Most of Plaintiffs' arguments center on their view that Professor Baker should be permitted to make factual *assumptions* about the evidence in this case and apply economic theory to those assumptions.  Time and time again, Plaintiffs assert that Professor Baker will only "make[] *the factual assumption* that the scale gap matters because user side data can have a substantial effect on search quality."  Opp. 3 (emphasis added); *see also* Opp. 4, 7, 9–10, 12–13.  Those assertions serve as implicit acknowledgment that non-technical economic experts are not qualified to independently gauge the impact of scale on search engine quality, and are therefore limited to relying on "assumptions" that must be independently proven.

2

As part of their recasting of Professor Baker's opinions, Plaintiffs mischaracterize the basis on which Google moves to exclude them. While Google will show at trial that Plaintiffs' theory regarding scale of user interaction data lacks factual support, Google's current Motion is not based on "challenges [to] the factual *assumption* that scale matters to search quality." Opp. 5 (emphasis added); *see also* Opp. 10 ("Google merely disputes the factual support for Prof. Baker's economic opinions.").[1] What Google argues is that Professor Baker is not qualified to opine that those assumptions are correct.

Plaintiffs' own cited cases support this distinction. For instance, in *In re Urethane Antitrust Litigation*, an economic expert was permitted to make factual assumptions in order to opine on the economic question of whether independent conduct was consistent with collusion, but the court was clear that the expert could not opine on the *accuracy* of the facts underlying those assumptions. *See* 2012 WL 6681783, at *3 ("[The expert's] opinion is essentially that particular events, *assuming* they occurred, are consistent with a conspiracy. Certainly, he may not give any opinion concerning the credibility of witnesses or whether a particular event actually occurred[.]" (emphasis added)). Similarly, in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 292 F. Supp. 3d 14 (D.D.C. 2017), the court permitted an economist to "review the factual record and

---

[1] Plaintiffs' citations to cases dealing with disagreements with the facts, rather than challenges to expert qualifications, are therefore inapposite. Opp. 10–11, citing *Bocoum v. Daimler Trucks N. Am. LLC*, 2022 WL 902465, at *16 (S.D.N.Y. Mar. 28, 2022) (rejecting argument that the opinion was unreliable despite "factual assumptions" being contradicted by other evidence in the record); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 372–73 (M.D. Fla. 2018) (rejecting argument that the opinion was unreliable because it was unsupported by the record); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *13 (D. Md. May 1, 2013) (rejecting argument that the opinion was unreliable because the expert "disregarded alternative explanations" for his conclusion); *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) (rejecting argument that the opinion was unreliable because the expert did not "consider[] contrary evidence in forming that opinion"); *United States v. H&R Block, Inc.*, 831 F. Supp. 2d 27, 32–33 (D.D.C. 2011) (rejecting argument that the opinion was unreliable because the expert used a challenged survey "as a datum in reaching her conclusions").

3

*formulate a hypothesis* that can be tested using economic theory," but the court rejected the witness's "*conclusions* based on the documentary record" regarding issues "beyond the scope of [his] expertise as an economist." *Id.* at 53 (emphases added) (internal quotation marks omitted). The court excluded such opinions as unreliable, and said that "[t]he Court will conduct its own review of the documentary record in this case" as to those issues. *Id.*

      Plaintiffs' brief confirms that Professor Baker has not limited his opinions regarding the impact of scale on search quality to the realm of assumptions. For instance, in the same breath, Plaintiffs claim that "Prof. Baker makes *the factual assumption* that the scale gap matters because user side data can have a substantial effect on search quality," and that "Prof. Baker notes that '[g]*reater scale, in terms of the number of users and search queries, ultimately helps a general search firm improve the quality of the search results* it provides in response to specific search queries,' because greater scale allows the general search firm to more quickly accumulate information on what users are looking for." Opp. 3 (emphases added) (quoting Mot. Ex. 1, June 6, 2022 Expert Report of Jonathan B. Baker ¶¶ 20, 142). Plaintiffs also state that "Prof. Baker further *opines* that the increase in Google's scale attributable to Google's exclusive search default agreements *would not have improved the quality of Google's own search results by much* because of diminishing returns." Opp. 5 (emphases added) (citing Mot. Ex. 1 ¶ 62). And they suggest Professor Baker intends to "rely[] on the factual record and his expertise as an economist *to reach the conclusion* that 'search result quality increases with firm scale' and that this effect can compound over time." Opp. 6 (emphasis added) (quoting Mot. Ex. 3, September 26, 2022 Expert Reply Report of Jonathan B. Baker ¶¶ 123, 126 & n.317). Thus, by their own account, Plaintiffs seek to have Professor Baker go outside the permissible bounds of positing opinions that are *based* on "assumptions" about the impact of scale on search quality, and instead have him offer

4

*substantive expert opinions* on those very same issues, for which he lacks any relevant qualifications.

> **B.      Professor Baker is not qualified to opine on the impact search engine scale has on search quality.**

Plaintiffs do not dispute that Professor Baker lacks experience in any computer engineering field. Plaintiffs instead argue that Professor Baker is a "qualified economist." Opp. 9. But being an economist "does not provide [Professor Baker] with *carte blanche* to opine on every issue in the case." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 305 (S.D.N.Y. 2015) (internal quotation marks omitted).

Professor Baker's experience may qualify him to opine on search engine *economics*, but it does not qualify him to opine on how increases or decreases in the availability of user search data impacts search engine *quality*. The effect of search volume on search quality is simply not an economic opinion. Rather, as the fact witnesses made clear, it is a technical question. *See* Mot. Ex. 5, ▮▮▮▮▮▮▮▮▮▮ Mot. Ex. 7, Excerpts of the Deposition of John Giannandrea (Apr. 22, 2022) at 57:16–58:25 (testifying that the importance of user data "depend[s] on the details of the implementation of your search algorithm").

Plaintiffs cite cases, Opp. 9, for the unremarkable proposition that economists do not need industry experience to offer *economic opinions* as applied to an industry.[2] None of these cases undermine Google's motion, for Google has not challenged Professor Baker's ability to testify on

---

[2] *Premier Comp Sols. LLC v. UPMC*, 2019 WL 480480, at *5 (W.D. Pa. Feb. 7, 2019) (economist can testify about relevant market without specialized expertise); *Am. Soc'y for Testing & Materials v. Public.Resource.org, Inc.*, 2016 WL 7839128 (D.D.C. Sept. 21, 2016) (economist "qualified to opine on the economic impact of copyright infringement").

5

economic concepts, despite his conceded lack of industry experience.  Instead, Google challenges Professor Baker's ability to conclude that his "factual assumption" about the effect of search engine scale on search quality is true—that is not an economic opinion, but a computer science opinion.

Plaintiffs attempt to bridge their scale arguments with traditional notions of "economies of scale" and "network effects," but that only serves to show how different economic scale is from search engine scale and search quality.  *See, e.g.*, Opp. 10 ("Prof. Baker applies the economic concepts of scale economies and network effects to the factual assumptions drawn from the case record[.]").  Other than using the word "scale," there is nothing that connects traditional economies of scale—how costs decrease at higher volumes of output, Opp. 4—with the question of whether and how the availability of user search data impacts the technical quality of a search engine based on its use in training search algorithms.

## C. Professor Baker's narration opinions are improper even in a bench trial.

Because Professor Baker does not have any experience that would allow him to offer an opinion about how search quality is impacted by scale, his opinions consist mainly of cherry-picking statements from documents and fact witnesses and adding Plaintiffs' gloss.  Plaintiffs' Opposition is illustrative.  In their description of Professor Baker's opinion about "the factual assumption that the scale gap matters because user side data can have a substantial effect on search quality," they state that "[i]n support of this assumption, Prof. Baker cites to multiple sources of record evidence."  Opp. 3–4; *see also* Opp. 4–5 (citing document and deposition of Google witness as "support" for opinion that "search advertising business benefits from its scale advantage in search"); Opp. 6–7 & n.2 ("he relies on the testimony of multiple witnesses" for opinion rebutting Professor Fox).  The Court is "entirely capable of reviewing the testimony" and documents Professor Baker cites and "drawing conclusions" itself.  *United States ex rel. Landis v. Tailwind*

6

*Sports Corp.*, 2017 WL 5905509, at *15 (D.D.C. Nov. 28, 2017) (citing *United States v. Mitchell*, 49 F.3d 769, 780 (D.C. Cir. 1995)). After the Court hears this testimony the first time, it does not need an economist to repeat it again with Plaintiffs' gloss. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).

Plaintiffs do not identify any independent analyses that Professor Baker performed to assess how scale impacts search quality. Instead, Plaintiffs suggest that the "factual record Prof. Baker discusses supports his economic opinion" that "Google's exclusionary course of conduct prevented other search firms from obtaining the necessary scale they needed to be competitive." Opp. 15. But labeling this opinion "economic" does not make it so; the question of how much scale is technically "necessary" to have a quality search engine is not a matter of economics. Unsurprisingly, in each of the cases highlighted by Plaintiffs, Opp. 14–15, the expert's description of the factual record was a basis for the expert's opinion on a subject squarely *within their area of expertise*.[3]

In a last attempt to save Professor Baker's narration opinions, Plaintiffs suggest that "the court's gatekeeper role under Rule 702 is greatly diminished in a bench trial." Opp. 15. Plaintiffs cite the Court's opinion in *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 34 (D.D.C. 2015), and argue that "this court has previously found no issue with an economic expert describing the factual record that supports his opinions in a bench trial." Opp. 16. Plaintiffs are not offering Professor Baker

---

[3] *See In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 2022 WL 15044626, at *28–29, *49 (E.D.N.Y. Oct. 26, 2022) (payments industry expert could recount factual bases for his opinions on digital wallets and the impact of challenged conduct on digital wallets); *Furnituredealer.net, Inc. v. Amazon.com, Inc.*, 2022 WL 891462, at *18 (D. Minn. Mar. 25, 2022) (expert could provide factual bases for opinions that the Court found admissible); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3*, 313 F. Supp. 2d 213, 236–37 (S.D.N.Y. 2004) (economist could recount "deposition testimony of various parties . . . to provide background information on the nature of the electrical installation market. . . . to show economic indicators of market dominance and monopoly leveraging").

as a summary fact witness, but instead filed a set of disclosures under Fed. R. Civ. P. 26(a)(2) to have him testify as an expert under Federal Rule of Evidence 702.  Google respectfully submits that having Professor Baker (or anyone else) repeat the testimony of numerous other fact and expert witnesses to add Plaintiffs' gloss will do nothing but lengthen the trial.

In any event, "Rule 702 applies whether the trier of fact is a judge or a jury." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020).  And courts in bench trials have applied the same prohibition that "[a]n expert . . . may not merely recite a factual narrative that does not draw technical or scientific conclusions." *In re Lyondell Chem. Co.*, 558 B.R. 661, 667–68 (Bankr. S.D.N.Y. 2016) ("Such cherry-picking and editorializing is exactly the type of factual narrative that courts routinely exclude because it invades the province of the factfinder by merely regurgitating the evidence." (alterations and internal quotation marks omitted)).  Whether before a jury or the court, narration opinions are not helpful, because the "selection, organization, and characterization of excerpts from the discovery record is no more than counsel will do in argument."  *Id.* at 668 (ellipses and internal quotation marks omitted).

D. **Professor Baker is not qualified to provide a rebuttal to Professor Fox.**

Unlike DOJ Plaintiffs and Google, Plaintiffs here have not retained any computer science expert.  Mot. 5.  In an attempt to plug that hole in Plaintiffs' case, Professor Baker offers a rebuttal opinion to Google's computer science expert, Professor Edward Fox.  Plaintiffs acknowledge that the opinion of Professor Fox, as "a computer scientist," relates to a "technical study" on the impact of additional search volume on search quality.  Opp. 5–6.  But Plaintiffs argue that such a rebuttal is fair game because "Prof. Kevin Murphy, one of Google's retained economists, relies on Prof. Fox's technical study as an assumption underlying his opinion that in the but-for world, additional search volume (i.e., scale) that rivals would receive would not have enhanced their ability to compete."  Opp. 6; *see also* Opp. 7 ("Google cannot have it both ways – it proffered Prof. Murphy's

8

opinion relying upon Prof. Fox and cannot now deny Prof. Baker the opportunity to critique Prof. Murphy's use of that study as a part of his economic analysis.").

Plaintiffs misunderstand the roles each of Google's experts play. Unlike Professor Baker, Professor Murphy does not seek to offer an opinion evaluating the impact of scale on search engine quality. Instead, Professor Murphy takes *assumptions* about how search volume impacts quality from an actual expert in the field (Professor Fox) and separately applies his own economic analysis. In particular, Professor Fox created a data reduction experiment ("DRE") to "assess the extent to which the quality of Google's search results depends on the volume of click-and-query data used to train Google's algorithms." Ex. 14, Excerpts of the June 6, 2022 Expert Report of Kevin M. Murphy at 375. That study measured the impact on the quality of Google's search results when reducing the volume used to train the algorithms to a level approximating Bing's scale, and found that "Google would maintain a considerable search quality lead over Microsoft even with access to greatly reduced click and query data." *Id.* at 377. Professor Murphy used this DRE as a basis for offering an opinion about competition in the marketplace—that Google's agreements have not, contrary to Plaintiffs' allegations, denied rivals the scale necessary to compete on search quality with Google. *Id.* at 53–54 & nn.121–22. Plaintiffs do not challenge Professor Murphy's qualifications to opine on competitive conditions, and his reliance upon Professor Fox's *technical* opinion on the impact of search query volume on search result quality is entirely appropriate.[4] In contrast, without a computer science expert of their own, Plaintiffs impermissibly seek to use

---

[4] Professor Murphy has other ancillary economic opinions about scale. For example, he seeks to opine that, contrary to Plaintiffs' view that scale is critical to search engine competitiveness, "Google competed successfully against competitors who possessed the very advantages that Plaintiffs incorrectly claim are necessary for search competitors to thrive." Ex. 14 at 7.

9

Professor Murphy's proper economic opinion as pretext to have their economist rebut a computer scientist's technical study.

In addition to lacking qualifications to rebut a computer science opinion, Professor Baker's rebuttal of Professor Fox is unreliable and unhelpful. Professor Baker seeks to opine that "search result quality increases with firm scale," that "this effect can compound over time," and that Professor Fox's "study fails to account for the fact that Google's search algorithm has benefitted from a long series of improvements over many years." Opp. 6–7 (internal quotation marks omitted). Plaintiffs confirm that this opinion is based on (1) narration from the factual record and (2) an interview with ▮▮▮▮▮. Opp. 12–13. The Court is perfectly able of reviewing the factual record and evaluating testimony from ▮▮▮▮▮ without Professor Baker's gloss.

Professor Baker's reliance on his interview with ▮▮▮▮▮ is especially unreliable and unhelpful because, under the protective order, ▮▮▮▮▮ is not permitted to view Professor Fox's study. As a result, ▮▮▮▮▮ does not have the necessary foundation or knowledge to rebut Professor Fox's analysis. Mot. 13–14. Tellingly, Plaintiffs fail to address this substantial issue raised in Google's Motion. Plaintiffs instead address strawmen, suggesting that "Google is well aware that ▮▮▮▮▮ fact testimony is highly relevant to this case" and that "Rule 703 allows an expert witness" to rely on hearsay interviews. Opp. 13, 14 n.5. But neither of those responses answer the clear deficiencies with relying on ▮▮▮▮▮ to rebut Professor Fox. Nor is this something that can be addressed in cross-examination of ▮▮▮▮▮ at trial, as Plaintiffs suggest. Opp. 13. Even at trial, ▮▮▮▮▮ will not be permitted to review Professor Fox's study (which reveals confidential information about Google's

10

algorithm). If Plaintiffs wanted a computer scientist to rebut Professor Fox's study, they should have hired one to bring them under the protective order.

\*   \*   \*

Because Plaintiffs have failed to connect Professor Baker's opinions on scale with his "knowledge, skill, experience, training, or education," Fed. R. Evid 702, and because they consist entirely of improper narration, those opinions should be excluded.

## II.     Professor Baker's Opinions About Privacy Should Be Excluded.

Professor Baker's opinions on privacy should be excluded for the same reasons—he has no specialized experience from which to qualitatively evaluate Google Search privacy features, and as a result his opinions consist of improper narration. Mot. 14–15. Tellingly, Plaintiffs devote only one paragraph in their argument section to rebutting this part of Google's motion. Opp. 15. Plaintiffs do not even address Google's argument that Professor Baker "has no expertise in data privacy" or computer science and therefore has "no specialized experience from which to gauge DuckDuckGo's or Google's offerings in privacy." Mot. 14.

As to Google's narration arguments, Plaintiffs again recast Professor Baker's opinion, suggesting he will only testify that privacy is an axis of competition among search engines, and will "illustrate[] this point by referring" to record evidence. Opp. 15. But their summation of Professor Baker's opinion goes further. They say that Professor Baker "offers the economic opinion that, given that some search firms market themselves as offering more privacy protections than Google, *they could likely 'compete more on privacy in a more competitive market*.'" Opp. 7 (quoting Mot. Ex. 3 ¶ 190). Again, labeling Professor Baker's statement an "economic opinion" does not make it so. Google does not object to Professor Baker stating that privacy is an aspect of

11

quality and competition. But with no experience in this field,[5] Professor Baker cannot go further and testify to the actual performance of Google's or its competitors' search engine privacy features, or the privacy offerings that would be expected in a but-for world. Professor Baker does not discuss—and he does not have the experience to assess—the technical tradeoffs that would allow an equally efficient competitor to increase privacy, all while maintaining relevancy and other aspects of search quality, in a but-for world. Mot. 4, 15.

Because Professor Baker lacks any relevant experience with privacy, his opinion assessing Google's performance in that area should be excluded.

## **CONCLUSION**

For the reasons set forth above and in its Motion, Defendant respectfully requests that the Court exclude Professor Baker's testimony regarding scale and privacy.

---

[5] To be sure, Google's expert Catherine Tucker is also an economist, but she has spent her career focused on "digital economics, and especially questions of how the increasing use of digital technologies has transformed advertising and questions of privacy." Mot. 5.

Dated: February 24, 2023                  Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: *John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Kenneth C. Smurzynski (D.C. Bar No. 442131)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
ksmurzynski@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

13