███████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | ███████████████ |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | ███████████████ |
| Defendant. | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFFS' COUNTERSTATEMENT OF MATERIAL FACTS**

█████████████████████

Defendant Google LLC ("Google") respectfully submits the following Response to Plaintiffs' Counterstatement of Material Facts (ECF No. 476-2) (the "Counterstatement"). The Response is being submitted in connection with Google's Reply in Support of Its Motion for Summary Judgment in *United States, et al. v. Google LLC*, No. 1:20-cv-3010-APM and *State of Colorado, et al. v. Google LLC*, No. 1:20-cv-03715-APM.

The Counterstatement contains 261 paragraphs of purported factual assertions. The overwhelming majority of them are not material to Google's motion for summary judgment, and many are not factual statements at all, but rather vague, ambiguous and/or abstract statements or conclusory expert opinions. A significant number of the immaterial statements are flatly inaccurate or the subject of heated factual dispute, and Plaintiffs' recitation rests on their selective interpretation of the record. Google therefore strongly disagrees with many of the assertions made by Plaintiffs in the Counterstatement. For the purposes of Google's motion for summary judgment, however, the Court need not wade into these disputes. Even assuming for purposes of this motion only that Plaintiffs' purported factual assertions (to the extent that they can be understood) are credited, Plaintiffs' arguments in opposition to Google's summary judgment motion fail. Google therefore has responded to many of Plaintiffs' statements as "Undisputed for purposes of this motion only." In doing so, Google expressly reserves its right to dispute the statement at trial or in any other proceeding. *See* Fed. R. Civ. P. 56(g) & Advisory Committee's Note to 2010 Amendment (noting "a party's ability to accept a fact for purposes of the [summary judgment] motion only").

██████████████████

## I.   OVERVIEW OF MARKETS[1]

### A.   General Search Services Market

400.    General search services are offered by general search engines, which are "one-stop shops" consumers can use to search the internet for answers to a wide range of queries. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 177, 197–216; Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 90.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

401.    General search services are a unique, relevant product market. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 127–242.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

402.    A relevant geographic market for general search services consists of general search services provided to consumers in the United States. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 247–264.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

403.    After a user enters a query on a general search engine, results appear on a search engine results page (SERP). Pls. Ex. 133, Google Search website, How results are automatically generated.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is

---

[1] Google repeats Plaintiffs' headings for convenience, but Google does not understand the headings to contain statements of fact requiring a response.

immaterial to the resolution of the motion.

404.    Google and Bing are the only significant U.S. general search engines that crawl and index the web, while other U.S. general search engines syndicate results. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 46–48.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

405.    The two leading U.S. general search engine companies today are Google and Bing, with smaller players including Yahoo!, DuckDuckGo, Brave, Ecosia, and Neeva. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 63, ¶¶ 46–48; Pls. Ex. 23, Rangel (DOJ Pls.' Expert) Initial Report, ¶ 124.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

406.    Since 2010, Google has had an average annual market share of 80% or more in the U.S. market for general search services. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 66.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

407.    In 2020, Google's share of the U.S. general search services market was nearly 90%, with an even higher share of 94% on mobile devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 433, Figs. 63, 66, 68.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

408.    Bing, Google's closest competitor, has a U.S. general search services market

███████████████████████████

share of roughly 6%, and it has not exceeded a 10% market share since 2015. Pls. Ex. 22, Whinston

(DOJ Pls.' Expert) Initial Report, Figs. 63, 66.

**Google's Response**: Undisputed for purposes of this motion only. This statement is

immaterial to the resolution of the motion.

409.    On U.S. mobile devices, Bing's market share is even smaller at roughly 1% in

2021, and it has not exceeded a 2% share since 2016. Pls. Ex. 22, Whinston (DOJ Pls.' Expert)

Initial Report, Fig. 68.

**Google's Response**: Undisputed for purposes of this motion only. This statement is

immaterial to the resolution of the motion.

### B.    Search Advertising And General Search Text Advertising

410.    Most general search engines do not charge consumers a fee. Pls. Ex. 22, Whinston

(DOJ Pls.' Expert) Initial Report, ¶¶ 26, 82, 129, 527, 1380.

**Google's Response**: Undisputed.

411.    When a consumer uses Google, the consumer provides Google data and attention

in exchange for search results. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 125 &

n.154, 1223.

**Google's Response**: Undisputed for purposes of this motion only. This statement is

immaterial to the resolution of the motion.

412.    Google monetizes a consumer's data and attention by selling ads served in

response to the consumer's real-time query. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial

Report, ¶ 82.

**Google's Response**: Undisputed for purposes of this motion only. This statement is

immaterial to the resolution of the motion.

███████████████████

413.    There is a search ads market that consists of advertising that is displayed on the SERP that general or specialized search engines return in response to consumer real-time queries. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 27–29 & § III.D.2.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

414.    There is a general search text ads market that is a narrower market wholly contained within the search ads market. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 30 & § III.D.3; Pls. Ex. 134, Jerath (DOJ Pls.' Expert) Initial Report, ¶¶ 113–123.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

415.    There is a relevant geographic market for search ads served in response to queries from users located in the United States. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 382–387.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

416.    There is a relevant geographic market for general search text ads served in response to queries from users located in the United States.  Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 417.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

417.    General search text ads appear on the SERP of a general search engine and look much like the organic (non-advertising) search result links, i.e., they consist primarily of text and contain little or no pictures or other graphics. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial

Report, ¶¶ 30, 85.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

418.    Google has a market share of roughly 74% in the U.S. search ads market and has had a share over 70% since 2015. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 468, Fig. 79.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

419.    Google has a market share of roughly 88% in the U.S. general search text ads market and has had a share of over 80% since at least 2016. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 474, Fig. 81.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

420.    Bing, Google's closest competitor, has held a market share of less than 9% in the market for U.S. general search text ads since 2016. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 81.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

421.    Google earned approximately ██████ in revenue worldwide from the sale of search ads in 2021. Pls. Ex. 135, Hammer (DOJ Pls.' Expert) Initial Report, Fig. 7 & Appendix D, Schedule A.2.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

██████████████████████████████

422.     Google generated approximately ████████ in operating profits worldwide from the sale of search ads in 2021. Pls. Ex. 135, Hammer (DOJ Pls.' Expert) Initial Report, Fig. 16 & Appendix D, Schedule A.2.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

### C.     Scale In General Search Services

423.     In the context of general search services, scale generally refers to the size of data a search engine cumulatively has access to when users interact with the search engine. Pls. Ex. 245, ████ (Microsoft) Dep., 49:10–52:16 ███████████████████████████████ ████████████; Pls. Ex. 155, Giannandrea (Apple) Dep., 65:5–15 (stating that one way to describe scale "would be the number of queries that you have access to").

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

424.     Google's scale in the general search services market exceeds its rivals by many multiples. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, § VII.B.1; Pls. Ex. 295, Oard (DOJ Pls.' Expert) Frieder Rebuttal Report, ¶ 105 ███████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████████████.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

425.     Since at least 2006, Google's employees have recognized that its scale gives it a significant competitive advantage. ██████████████████████████████ ██████████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ .

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

426.     Search engines rely on continuous flows of user data to improve search quality including ranking, search features, and the ability to experiment and innovate. Pls. Ex. 295, Oard (DOJ Pls.' Expert) Frieder Rebuttal Report, § II.C; Pls. Ex. 236, Google presentation: Google is magical (*Oct. 2017), GOOG-DOJ-22859493, at -503 ("With every query, [Google gives] some

knowledge, and get[s] a little back. Then we give some more, and get a little more back. These bits add up. After ████████████████, [Google] start[s] lookin' pretty smart! ██████



; Pls. Ex. 241, Braddi (Google) CID Dep., 77:21–78:23 (explaining how "volume of searches helps to refine and improve the search quality"); Pls. Ex. 10, ▓▓▓ (Microsoft) Dep., 30:15–31:4, 183:2–190:3; Pls. Ex. 245, ▓▓▓ (Microsoft) Dep., 146:23–149:3; Pls. Ex. 156, Ramaswamy (Neeva) Dep., 118:5–120:7; Pls. Ex. 165, Weinberg (DuckDuckGo) Dep., 120:5–129:5, 316:17–318:9, 328:17–329:4, 350:6–351:21.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

427.     In general search, user data fuels a feedback loop that affects product quality and competitiveness. Pls. Ex. 295, Oard (DOJ Pls.' Expert) Frieder Rebuttal Report, § II.C; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, § VII.B; Pls. Ex. 246,



; Pls. Ex. 10, ▮ (Microsoft) Dep., 298:4–299:24, 330:18–332:4, 333:9–334:19.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

428.    Google's scale advantage is particularly significant on mobile. Pls. Ex. 249, Booking.com document: Google, DOJ_BKNG-00001768, at 3 ("Google dominates the search landscape, particularly on mobile with 95% market share. Google's global market share across all platforms as of August 2019 was 92%."), at 5 ("Almost 1/3 of all mobile searches are related to location."); Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 441, Figs. 68, 176; Pls. Ex. 9, ▮ (Microsoft) Dep., 44:9–45:7 (▮ ▮); Pls. Ex. 245, ▮ (Microsoft) Dep., 234:12–235:8 ▮ ▮ ▮ ; Pls. Ex. 10, ▮ (Microsoft) Dep., 345:11–346:12 ▮ ▮ ▮ ▮ , 398:11–399:15.

[REDACTED]

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

429.     Mobile queries are substantively different than desktop queries. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]; Pls. Ex. 245, [REDACTED] (Microsoft) Dep., 52:17–54:1

[REDACTED]

[REDACTED].

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

430.     Mobile queries often have a location component. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]; Pls. Ex. 248, Varian (Google) Dep., 199:21–23 ("Q.·Local queries

████████████████████████████████████████████████

are more prevalent on mobile devices than on desktops; is that right? A. Yes."); Pls. Ex. 245, ████

(Microsoft) Dep., 232:17–234:4 ████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████; Pls.

Ex. 10, ████████ (Microsoft) Dep., 323:12–326:14 ████████████████████████

█████████████████████████████████████████████████.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

431.    Desktop user data is not a full substitute for mobile user data because user data

(including search intent and interaction patterns) are substantially different when the consumer is

searching on a mobile device than when the consumer is searching on a computer (i.e., a desktop

or laptop). ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████; Pls. Ex. 10, ████████ (Microsoft) Dep., 323:12–326:14; Pls. Ex.

245, ████████ (Microsoft) Dep., 50:17–54:1; Pls. Ex. 295, Oard (DOJ Pls.' Expert) Frieder Rebuttal

Report, ¶¶ 192–193.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

432.    Google's scale advantage is particularly significant for answering tail queries. Pls.

Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 983, 987–988, 1004–1009.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is

███████████████████████████████

immaterial to the resolution of the motion.

433.　　Tail queries are queries that occur rarely on general search engines. █████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████ ; Pls.

Ex. 242, Lehman (Google) Dep., 240:21–241:12 ("A long-tail concept would be one that in our

query stream as a whole, regardless of how it's processed, it's -- it's a concept that's not often

mentioned.·For example, a popular celebrity would be a -- not a long-tail concept.·It would be sort

of -- some people call it a 'head concept.'·On the other hand, like an obscure telegraph system

from 1925, or something like that might be a long-tail concept.").

**Google's Response**: Undisputed for purposes of this motion only.　This statement is

immaterial to the resolution of the motion.

434.　　Tail queries and mobile queries tend to overlap because, like tail queries, mobile

queries tend to seek uncommon, granular, location-based information. Pls. Ex. 10, ████████

(Microsoft) Dep., 319:15–322:5 ██████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████ , 322:18–323:11 ███████

██████████████████████████████████████

███████████████████████████

█████████████████████████████████

████████████████████████████ ; Pls. Ex. 9, █████ (Microsoft) Dep., 234:17–235:22

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

██████

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

435.    Access to user feedback for tail queries has a substantial effect on improving the search quality for tail queries. Pls. Ex. 10, █████ (Microsoft) Dep., 239:10–241:11 █████

█████████████████████████████████

█████████████████████████████████

██████ ; Pls. Ex. 295, Oard (DOJ Pls.' Expert) Frieder Rebuttal Report, ¶¶ 32–33, 93–94.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

436.    The scale gap between Google and its competitors makes it difficult for the competitor search engines to match Google's search quality. ████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████



**Google's Response**: Undisputed for purposes of this motion only, with clarification.  None of the cited portions of the exhibits purport to describe how difficult it is for a competitor to match Google's search quality.  This statement is immaterial to the resolution of the motion.

437.    The scale gap between Google and its competitors makes it difficult for the competitor search engines to compete for users (increase scale). Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 968–1136; ███████████████████

███████████████████████████████████

███████████████████████████████████;

Pls. Ex. 9, ██████ (Microsoft) Dep., 227:11–228:17 ████████████████

████████████████████████; Pls. Ex. 10, ██████ (Microsoft) Dep., 254:8–255:11 ████████████████████████████████████

████████████████████, 263:21–264:6 (same).

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  None of the cited portions of the exhibits purport to describe how difficult it is for a competitor to attract users.  This statement is immaterial to the resolution of the motion.

437.1.    "Because of diminishing returns to scale, Google benefits less from additional queries, than its rivals." Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, ¶ 531; ██████



**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). The quotation appears in neither cited exhibit. This statement is immaterial to the resolution of the motion.

438. Search engines with greater scale attract more advertisers. ██████████

; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, § VII.B.3; Pls. Ex. 256, Lowcock (IPG) Dep., 97:1–12 ("Q. So does the fact that Google has more users and more queries make the platform more -- more attractive to advertisers? A. Yes. Q. And is one of the reasons advertisers don't purchase more text ads or search ads on Bing because it doesn't have as many queries or users? A. Yes. Q. So is scale an important factor that advertisers consider when picking a search advertising platform? A. Yes."); Pls. Ex. 7, ████████ (Microsoft) Dep., 50:6–51:2

; Pls. Ex. 245, ████ (Microsoft) Dep., 49:15–50:10 ████

; Pls. Ex. 165, Weinberg (DuckDuckGo) Dep., 323:4–25 ("[T]he more volume we have in the marketplace, you think more advertisers will be attracted to the marketplace in general and that will increase the RPM."); Pls. Ex. 246,

███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

438.1.    Having more user-side data (i.e., more scale) allows search engine to better monetize ads. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████; Pls. Ex. 258, Google presentation: Search Ads Boot Camp (Day 1) (*Q4 2019), GOOG-DOJ-23855303, at -539 (stating "Search Ads [heart] Data"); Pls. Ex. 146,

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████Pls. Ex. 246, ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 1070–1118, § VII.B.3.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

439.    Greater scale tends to increase advertising revenue. Pls. Ex. 146, ████████████

███████████████████████████████████████████



; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, § VII.B.3; Pls. Ex. 245, ▮ (Microsoft) Dep., 49:13–50:10 ▮

; Pls. Ex. 316, Gomes, (Google) CID Dep., 77:6–24 ("[T]here was a belief that, as we improve the overall search experience, there is hope people come back to Google overall better, more often. So if we target overall growth, for instance, a search gets faster, if we are providing a better user experience, then people come back to us more often. And that includes for things like commercial queries."); Pls. Ex. 10, ▮ (Microsoft) Dep., 136:20–138:4 ▮

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

439.1.    Earning more from each query allows search engines to pay more for distribution

██████████████████████████████

deals. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 1071–1072, 1177.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

439.2.    This allows search engines to secure distribution on browsers, desktop computers, and mobile devices, which, in turn, serves to capture even more search queries for the feedback loop. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 1165–1166, 1177.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The statements attributed to ████████████ at paragraphs 1165–66 of the cited report do not appear to relate to this assertion, and paragraph 1177 of the cited report does not describe the assertion or provide any supporting evidence for it.  This statement is immaterial to the resolution of the motion.

440.    With less revenue, rivals are predictably less able to invest in quality improvements that benefit consumers and advertisers. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 1071–1072; Pls. Ex. 246, ████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

## II.    OVERVIEW OF SEARCH DEFAULTS AND PREINSTALLATION

441.    The most common way users access general search engines is through preinstalled search access points. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 100.

███████████████████████

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited figure does not purport to describe how users access general search engines or what constitutes a preinstalled search access point. This statement is immaterial to the resolution of the motion.

442.    A search access point is a place on a device where a user can enter a search query. Pls. Ex. 70, Kolotouros (Google) Dep., 96:09–13, 97:18–98:16.

**Google's Response**:  Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

443.    In 2005, OEMs had little interest in distributing Google search without financial incentives. Pls. Ex. 285, Google presentation: GPS – Mobile Topics (*June 16, 2005), GOOG-DOJ-01731480, at 2–4.

**Google's Response**:  Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

444.    In 2005, OEMs demanded revenue share to distribute Google search. Pls. Ex. 285, Google presentation: GPS – Mobile Topics (*June 16, 2005), GOOG-DOJ-01731480, at 2–4.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The cited document indicates, among other things, that █████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████. This statement is immaterial to the resolution of the motion.

445.    Being the preset default search engine for a search access point on a preinstalled and prominently placed app is the most efficient and effective way for a search engine to reach



users. Pls. Ex. 23, Rangel (DOJ Pls.' Expert) Initial Report, ¶¶ 9–12, 37–39, 54–55, 59–62;

; *see also* COMF ¶¶ 441–444, 446–470; Am.

Compl., ECF No. 94, Jan. 15, 2021, ¶ 47 ("Google admits that attaining a preinstalled search access

point, depending on the setting, can encourage utilization of a service").

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule

of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited evidence does not address what other

strategies search engines have pursued or might pursue to reach users, nor does it explain why

those strategies would be less efficient or effective.  The cited evidence further notes, for instance,

that

.  This statement is immaterial to the resolution of the motion.

446.     In the United States, device distributors (e.g., Apple, OEMs, carriers) decide what

apps—and therefore what search access points—to preinstall and where to place those apps on

their devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 737, 810.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  It is

unclear what Plaintiffs intend to convey through the use of the term "device distributors" and

████████████████████████████

which entities are encompassed by that term.  Google understands this statement to be positing that companies that make and/or sell devices—including Apple, OEMs, and carriers—decide what apps to preinstall on their devices and where to place those apps on their devices.

447.     Before a device is sold to the consumer, a given preinstalled search access point on the device can be assigned a preset default search engine to which it will send queries entered by the consumer.  ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████ .

**Google's Response**: Undisputed.

448.     When a user purchases an Apple iPhone, it comes with Apple's Safari browser preinstalled, which has Google as the preset default search engine for queries that users enter in the URL address bar. Pls. Ex. 155, Giannandrea (Apple) Dep., 28:25–29:5, 106:19–22.

**Google's Response**: Undisputed, with clarification.  The statement does not specify a country or region, while the questions in the cited passages of deposition testimony refer specifically to the United States. Pls. Ex. 155, Giannandrea (Apple) Dep., 28:25–29:5, 106:19–22.

449.     Most consumers stick with the preset default search engine that is assigned to

██████████████████████████████████████████████

each respective search access point on their device (also known as the default out of the box).██

██████████████████████████████████████████████

████████████████████; Pls. Ex. 10,███████ (Microsoft) Dep., 261:13– 262:17; Pls. Ex.

165, Weinberg (DuckDuckGo) Dep., 314:22–315:13; Pls. Ex. 156, Ramaswamy (Neeva) Dep.,

70:4–72:2, 94:9–24; ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████; Pls. Ex. 23, Rangel (DOJ Pls.' Expert) Initial Report, ¶¶ 131–132; Pls.

Ex. 87, Murphy (Def.'s Expert) Dep., 94:17–95:3 (explaining that "default status generally will

lead to some increase in usage"); *see also* COMF ¶¶ 441–448, 450–470.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule

of Civil Procedure 56(c)(1) and Local Rule 7(h).  None of the cited exhibits purports to address

what "[m]ost consumers" have done or would do in relation to "each respective search access point

on their device," and to the extent that the cited exhibits address particular access points with a

particular preset default setting, they do not uniformly support this assertion as written.  For

example, one of the cited exhibits—Exhibit 23—indicates that ███████████████████

███████████████████████████████████████  Pls. Ex. 23,

Rangel (DOJ Pls.' Expert) Initial Report, Figure 14.  Another cited exhibit—Exhibit 166—refers

to defaults but does not appear to be discussing search defaults at all.  ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

This statement is immaterial to the resolution of the motion.

450.     Consumers rely on habit in searching the internet. Pls. Ex. 23, Rangel (DOJ Pls.'

███████████████████████

Expert) Initial Report, ¶¶ 9, 54–66 ("Given that consumers carry out these searches using familiar interfaces and devices, and that these searches provide immediate feedback, users' search patterns become strongly habituated."), 67–68; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 847.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

451.    Consumers often do not make (or even know that they can make) an explicit choice about which general search engine to use for a given search access point. ███████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  None of the cited exhibits supports the proposition that consumers do not "know that they can make[] an explicit choice about which general search engine to use."  This statement is immaterial to the resolution of the motion.

452.    Even where search users might want to change the preset default search engine for a given search access point, the effort and complexity involved with switching—referred to as "choice friction" by Plaintiffs' expert Professor Antonio Rangel, PhD—biases users to stick with the default option. Pls. Ex. 23, Rangel (DOJ Pls.' Expert) Initial Report, ¶¶ 37–39, 78–97, 131.

**Google's Response**: This statement sets forth an expression of abstract opinion that is not

███████████████████████████████

a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  This statement is immaterial to the resolution of the motion.

453.     Google's Chief Economist, Hal Varian, regularly reminded Google employees of the "power of defaults." Pls. Ex. 248, Varian (Google), Dep., 267:6–16; Pls. Ex. 219, Email from Varian (Google), Re: Power of defaults (Mar. 27, 2007), GOOG-DOJ-05756465, at -465 (referring to Prof. Varian's "'power of defaults' idea").

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

454.     Search defaults drive user traffic. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 846–965, § VII.A; Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 94:17–95:3 (explaining that "default status generally will lead to some increase in usage").

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The phrase "[s]earch defaults drive user traffic" is vague and ambiguous, and Google interprets the statement to mean that search defaults can increase search volume for the default search provider.

455.     Search defaults for search access points tend to be "stickier" on mobile devices than on PCs. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████; Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 465, Fig. 40.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is

███████████████████████████

immaterial to the resolution of the motion.

456.     Google routinely hires or contracts with behavioral economists to consider the impact of defaults. Pls. Ex. 23, Rangel (DOJ Pls.' Expert) Initial Report, ¶¶ 25, 57; Pls. Ex. 286, █████████ presentation: 2015 Round Up Full Deck (UNDATED), ███████████, at 1–3; Pls. Ex. 287, █████████ presentation: Work on Mobile Growth (UNDATED), ███████, at 1–3; Pls. Ex. 288, Google document: Maya Shanker Top-Line (UNDATED), GOOG-DOJ-27097514, at -514–515; Pls. Ex. 289, Google presentation: Google's Behavioral Science Team: 2018 Google Ads Results (Dec. 2018), GOOG-DOJ-27097279, at -279.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  None of the cited exhibits indicates that Google hires or contracts with behavioral economists "routinely" or addresses default search engines specifically. This statement is immaterial to the resolution of the motion.

457.     [Intentionally Left Blank]

**Google's Response**: No response required.

458.     [Intentionally Left Blank]

**Google's Response**: No response required.

459.     [Intentionally Left Blank]

**Google's Response**: No response required.

460.     ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

███████████████████████

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

461.     Users are unlikely to switch away from a device's preset default search service. Pls. Ex. 23, Rangel (DOJ Pls.' Expert) Initial Report, ¶ 131; Pls. Ex. 10, ███████ (Microsoft) Dep., 261:13–262:17; Pls. Ex. 165, Weinberg (DuckDuckGo) Dep., 314:22–315:13; Pls. Ex. 156, Ramaswamy (Neeva) Dep., 70:4–72:2, 94:9–24; *see also* Pls. Ex. 290, Miller (Google) Dep., 76:24–77:24.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  None of the cited exhibits purports to address what "[u]sers" as a whole are "unlikely" to do in every instance involving a "preset default search service," and to the extent that the cited exhibits address specific instances where a particular search service has been the preset default, they do not uniformly support this assertion as written.  For example, one of the cited exhibits—Exhibit 23—indicates that ██████████ ████████████████████████████████████████████████████████ Pls. Ex. 23, Rangel (DOJ Pls.' Expert) Initial Report, Figure 14.  This statement is immaterial to the resolution of the motion.

462.     Bing's share of search queries is much higher on devices (such as Windows PCs and Amazon Fire tablets) where it is the preset default search engine for search access points. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 850–852, Fig. 142.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

463.     In Russia, Google's agreement with regulators to introduce a search engine choice screen on Android devices caused Google's share of Android searches to decline ██████████

███████████████████████

██ Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 953, Fig. 168.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

464.    Paying to have Google as the preset default search engine for search access points is the highest cost but highest value way to acquire users. Pls. Ex. 171, Google presentation: iOS Distribution- BD Opportunities (*July 2017), GOOG-DOJ-04279956, at -960.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited document does not address preset default search engines generally or Google Search specifically, but rather the use of other Google applications such as Gboard and Photos on Apple iOS devices.  Pls. Ex. 171, Google presentation: iOS Distribution- BD Opportunities (*July 2017), GOOG-DOJ-04279956, at -957–62.  This statement is immaterial to the resolution of the motion.

465.    Organic downloads, paid marketing, and app promotion/integration do not match the likelihood of success that being the preset default search engine has in getting consumers to use Google's search engine. Pls. Ex. 171, Google presentation: iOS Distribution- BD Opportunities (*July 2017), GOOG-DOJ-04279956, at -960.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited document does not address preset default search engines generally or Google Search specifically, but rather the use of other Google applications such as Gboard and Photos on Apple iOS devices.  Pls. Ex. 171, Google presentation: iOS Distribution- BD Opportunities (*July 2017), GOOG-DOJ-04279956, at -957–62.  This statement is immaterial to the resolution of the motion.

466.    Google's revenue share payments to device and browser distributors enable

███████████████████████████

Google to reach more users. Pls. Ex. 317, Porat (Google) Dep. 26:13–30:1.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. The statement that "revenue share payments to device and browser distributors enable Google to reach more users" is vague and ambiguous, and whether revenue share payments "enable Google to reach more users" depends upon numerous factors, such as the product or service in question and the opportunities provided in exchange for the payments. Google interprets the statement to mean that under some circumstances making a revenue share payment to a device manufacturer or browser developer can be a component of an arrangement that enables Google to reach more users. This statement is immaterial to the resolution of the motion.

467.    Reaching more users is a key part of Google's consideration for the revenue share payment. Pls. Ex. 317, Porat (Google) Dep. 26:13–30:1.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. The statement that "[r]eaching more users is a key part of Google's consideration for the revenue share payment" is vague and ambiguous, and what constitutes "a key part of Google's consideration" depends upon numerous factors, such as the product or service in question and the opportunities provided in exchange for the payments. Google interprets the statement to mean that under some circumstances reaching more users can be a key part of the consideration for a revenue share payment. This statement is immaterial to the resolution of the motion.

468.    If rivals won the defaults currently secured by the challenged terms of Google's Distribution Agreements,[2] ██████ of Google's U.S. general search market share would shift to

---

[2] As used herein, "Distribution Agreements" comprises, individually and collectively, Google's Information Services Agreement, as discussed in Section III.B.2 herein; Google's Mobile Application Distribution Agreements, as discussed in Section III.D.3 herein; and Google's Revenue Share Agreements, as discussed in Section III.D.4. and Section III.E.2 herein.

████████████████████████████████████

rivals. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 105, App. D, at D-16.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited table provides a conclusory expert opinion regarding "[p]otential search traffic effects of a shift in search access point defaults for Apple, Android, and third-party browsers, excluding Safari bookmark queries (US)," but it does not purport to be a factual assertion regarding what "would" occur.  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 105, App. D, at D-16.  For example, "Plaintiffs' experts have not opined" that in the absence of the challenged agreements "a particular Android OEM or a particular carrier would have selected a search engine other than Google to be the exclusive preloaded search engine on a particular Android device," let alone that every company that is presently party to a "Distribution Agreement" (as defined by Plaintiffs) would set another search engine as the default and that the "shift" identified in Statement 468 would then occur.  Plaintiffs' Statement of Genuine Issues ("SOGI") ¶ 254 (ECF No. 476-1).  This statement is immaterial to the resolution of the motion.

469.    Under its Android RSAs, ██████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████; Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, ¶¶ 403–405.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  ██████████████████████
████████████████████████████████████████████████████

███████████████████████████

███████████████████████████████████████

████████████████████████.   Exhibit 89, in pertinent part, is Professor Whinston's interpretation of that email.  This statement is immaterial to the resolution of the motion.

470.     The size of the default effect is likely smaller on Mozilla's Firefox browser than in other contexts because Firefox is a non-default browser, necessarily used only by people who are technologically savvy enough and motivated enough to override Windows' default. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 472.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

## III.   GOOGLE'S DISTRIBUTION AGREEMENTS

### A.   Scope Of Google's Distribution Agreements

471.     In the United States, almost 50% of all queries made on general search engines are covered by the challenged terms of Google's Distribution Agreements.[3]  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 100.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

472.     In the United States, ████ of all queries made on general search engines are issued through the default on Chrome on Windows desktops and Apple desktops and mobile devices. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 100.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The

---

[3] ████████████████████████████████████████████

████████████████████████.  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 100.

███████████████████████████████

cited Figure 100 indicates that ██████████ corresponds to Chrome queries "entered into a user-downloaded version of Chrome."  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 100.  This statement is immaterial to the resolution of the motion.

473.    In the United States, roughly 70% of all mobile phone queries made on general search engines (a growing category of searches) are covered by the challenged terms of Google's Distribution Agreements.[4]  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 101.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

474.    In the United States, ██████████ of all mobile phone queries made on general search engines are issued through the default on Chrome for mobile Apple devices. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 101.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

475.    In 2020, ██████ of all U.S. general searches went to Google Search through Google's search default in the Safari browser address bar. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 104.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

476.    In 2020, ██████████ of all U.S. general searches went to Google Search under its Distribution Agreements with carriers and Android OEMs. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 160.

---

[4] ███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 101.

███████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

477.    In 2020, ████████ of all U.S. general searches went to Google Search under its Distribution Agreements with third-party browser companies (i.e., Mozilla, Opera, and UCWeb). Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 161.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

478.    Google's share of all U.S. queries on Android phones is ████████████ Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 142.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

479.    The Google search widget accounts for ████████████ of Google's query share on Android phones. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 741.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

480.    The Google search widget accounts for ████████████ of all U.S. Android queries ███████████████ COMF ¶¶ 478–479.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

481.    Chrome's address bar accounts for ████████████ of Google's Android query share. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 742.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

██████████████████████████████████

482.     Chrome's address bar accounts for ████████ of all U.S. Android queries ████████████. COMF ¶¶ 478, 481.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

483.     In 2020, the challenged terms of Google's Distribution Agreements drove roughly ██████ queries to Google.[5]  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 90.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. Google interprets the word "drove" to refer to total search queries sent to Google through search access points that are the subject of the so-called "Distribution Agreements," rather than the incremental search queries attributable to those agreements—an analysis that the cited Figure 90 does not purport to conduct.  This statement is immaterial to the resolution of the motion.

484.     Google's control of search access points through its ownership of Chrome and Android, and its Distribution Agreements are significant barriers to entry and expansion by rivals and potential rivals. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 506–510.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Statement 484 merely restates an expert conclusion contained in Professor Whinston's expert report, *see* Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, § IV.B.2.a.iv, and does not constitute a statement of material fact for purposes of summary judgment.  This statement is immaterial to the resolution of the motion.

485.     As a result of Google's Distribution Agreements, consumers are left with less choice than what they would see in a more competitive market. Pls. Ex. 22, Whinston (DOJ Pls.'

---

[5] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply

███████████████████████████

Expert) Initial Report, § VIII.A.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).   Statement 485 merely restates an expert conclusion contained in Professor Whinston's expert report and does not constitute a statement of material fact for purposes of summary judgment.  This statement is immaterial to the resolution of the motion.

486.     As a result of Google's Distribution Agreements, consumers are left with less innovation than what they would see in a more competitive market. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, § VIII.A.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).   Statement 486 merely restates an expert conclusion contained in Professor Whinston's expert report and does not constitute a statement of material fact for purposes of summary judgment.  This statement is immaterial to the resolution of the motion.

487.     As a result of Google's Distribution Agreements, consumers are left with lower-quality search offerings than what they would see in a more competitive market. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, § VIII.A.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).   Statement 487 merely restates an expert conclusion contained in Professor Whinston's expert report and does not constitute a statement of material fact for purposes of summary judgment.  This statement is immaterial to the resolution of the motion.

488.     ███████████████████████████████████████



; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 1222–1238.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).

. This statement is immaterial to the resolution of the motion.

489.     The absence of competition allows Google to raise the prices and reduce the quality of its search ads products. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 1332–1359.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).   Statement 489 merely restates an expert conclusion contained in Professor Whinston's expert report and does not constitute a statement of material fact for purposes of summary judgment.  This statement is immaterial to the resolution of the motion.

490.     In the United States, the challenged terms of Google's Distribution Agreements

███████████████████████████

cover roughly 36% of all U.S. search ad revenue.[6]  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 102.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

491.   In the United States, default searches on Chrome on Windows desktops and Apple desktops and mobile devices account for ████ of all U.S. search ad revenue. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 102.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

492.   In the United States, the challenged terms of Google's Distribution Agreements cover roughly 45% of all general search text ad revenue.[7]  Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 103.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

493.   In the United States, default searches on Chrome on Windows desktops and Apple desktops and mobile devices account for ████ of all general search text ad revenue. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 103.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is

---

[6] ████████████████████████████████████
████████████████████. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 102.

[7] ████████████████████████████████████
████████████████████. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 103.

██████████████████████████

immaterial to the resolution of the motion.

### B. Google's Distribution Agreements With Apple

#### 1. Apple's Search Share And The Safari Browser

494. In 2020, ████████████ Google search queries in the United States were performed on Apple devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 134.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

495. Roughly 60% of all mobile phones in the United States are iPhones. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 2.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

496. Roughly 27% of all desktop computers in the United States are Macs. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 4.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

497. Apple's Safari browser is the only preinstalled browser on Apple devices. Pls. Ex. 25, Cue (Apple) Dep., 126:3–14.

**Google's Response**: Undisputed.

498. Apple has never preinstalled third-party browsers, third-party search apps, or any other third-party apps on its devices. Pls. Ex. 25, Cue (Apple) Dep., 118:15–18 ("We don't install any third-party apps. Never have on iOS."), 126:7–10, 128:10–15; Pls. Ex. 3, Apple 30(b)(6) (Cue) Dep., 90:21–24 (stating with respect to Apple preloading third-party apps: "There are none. We would never do"), 92:15–22; Pls. Ex. 165, Weinberg (DuckDuckGo) Dep., 218:25–219:12.

39

████████████████████████

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

499.    Apple █████████████████████████████████████████

██████████████████████. Pls. Ex. 25, Cue (Apple) Dep., 118:15–18, 126:7–10, 128:10–15; Pls. Ex. 3, Apple 30(b)(6) (Cue) Dep., 90:21–24, 92:15–22.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

500.    In 2020, ████████████████ of Google's total U.S. search query volume came from searches performed using the Safari browser's address bar. Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, Fig. 90.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

### 2.    Google As Search Default On The Safari Browser

501.    The Information Services Agreement (ISA) between Google and Apple, as amended, ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The quoted provision █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████.

502. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██ .

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ██

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████ . This statement is immaterial to the resolution of the motion.

503. ██████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████ .

**Google's Response**: Undisputed, with clarification. ████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[8] Siri is Apple's voice assistant. Pls. Ex. 25, Cue (Apple) Dep., 44:9–13.

[9] Spotlight is Apple's universal search service that is used primarily to search on-device content, but also gives consumers the option of searching the internet. Pls. Ex. 155, Giannandrea (Apple) Dep., 89:10–91:6, 96:19–98:7; Pls. Ex. 25, Cue (Apple) Dep., 58:7– 58:18.

████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████.

504.   ████████████████████████████

████████████████████████████████████

████████████████████.

**Google's Response**: Undisputed, with clarification. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████.

505.   ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████.

**Google's Response**: Undisputed, with clarification. ████████████████

████████████████████████████████████

██████████.

506.   ████████████████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████ .

**Google's Response**: Undisputed, with clarification. ████████████████████

██████████████████████████████████ .

507.   ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ .

**Google's Response**: Undisputed for purposes of this motion only.

508.   ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ .

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ .

509.   Because Google is the preset search default on the Safari browser, a consumer

██████████████████████████

using Safari can perform a query on a rival search engine only by either (a) navigating to that rival's website, or (b) changing the default search engine in Safari's settings. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 412.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  A consumer using Safari may navigate to a rival search engine's website by, among other things, clicking a bookmark in Safari, including a preset default bookmark (*e.g.*, for Bing or Yahoo). SOGI ¶¶ 70-71, 79-80.

510.   ███████████████████████████████

████████████████████████████████████

██████████████████████████████████.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ███

████████████████████████████████████

████████████████████████████████████

███████████████████████████  ████████

███████████████████████████████. This statement is immaterial to the resolution of the motion.

### 3.   Google's Payments To Apple

511.   Since ████, Google has made payments to Apple to guarantee that it will be the exclusive preset default search engine for the Safari browser on Apple devices. ████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. Google understands Plaintiffs' use of the phrase "payments to Apple to guarantee that it will be the exclusive preset default search engine" to refer only to the payments specified in the cited agreements.  Google further understands Plaintiffs' use of the phrase "exclusive preset default search engine in Safari" to refer only to the setting of the "Default" as that term is used in the cited agreements.  ██████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████

512.   ██████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████.

███████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ███

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████.

513.    ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ███

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████.

514.    In 2021, pursuant to the ISA, as amended, Google paid Apple approximately ███

████ for searches in the United States. Pls. Ex. 313, Decl. of Schmalbach (DOJ) (Jan. 26, 2023),

Appendix A, Table 2.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

515.    ██████████████████████████████████████

███████████████████████████████████████████. Pls.

███████████████████████████████

Ex. 313, Decl. of Schmalbach (DOJ) (Jan. 26, 2023), Appendix A, Table 1.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

516.     In 2021, Google's payments to Apple to be the preset default search engine for the Safari address bar pursuant to the ISA, as amended, constituted ████████ of Apple's total operating income for the United States that year. Pls. Ex. 313, Decl. of Schmalbach (DOJ) (Jan. 26, 2023), Appendix A, Table 1 (indicating ████████ in payments to Apple); Pls. Ex. 318, Apple 2021 Form 10-K, at 29 (indicating $53.4 billion in operating income for the Americas).

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

517.     In 2020, Google's payments to Apple pursuant to the ISA comprised ████████
██████████████████████████████ Pls. Ex. 175, ████
██████████████████████████████; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 718 & Fig. 122.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

518.     Defendant's economic expert Prof. Murphy acknowledged that ████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████

███████████████████████████████████

███████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. In the cited excerpt, Professor Murphy stated, among other things: ███████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████ This statement is immaterial to the resolution of the motion.

519.    In 2021, the total global revenue for Microsoft's "search and news advertising" business, which includes Microsoft Bing, was approximately $9.3 billion. Pls. Ex. 176, Microsoft 2022 10-K, at 95.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

520.    ███████████████████████████

███████████████████████████████████

Pls. Ex. 9, █████ (Microsoft) Dep., 239:4–244:22.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. █

███████████████████████████████████

███████████████████████████████████

███████████ ████████████████ ██████████

████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████ This statement is immaterial to the resolution of

the motion.

521.    ████████████████████████████████

███████████████████████████████ Pls. Ex. 9, ████ (Microsoft)

Dep., 239:4–244:22.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ████

████████████████████████████████████

██████████████████████████████ This statement is

immaterial to the resolution of the motion.

### 4.   Consideration Of The Value Of The Safari Search Default During Negotiations With Apple

522.    During negotiations with Apple ████, Google's search finance team modeled

the value of Google being the search default for the Safari browser. █████████████

████████████████████████████████████

██████████████████.

**Google's Response**: Undisputed for purposes of this motion only.   This statement is

immaterial to the resolution of the motion.

523.    During negotiations with Apple ████, when modeling the value of Google

being the search default for the Safari browser, Google's search finance team predicted that Google

would recover (or "claw back") ████████ of the revenue that it had previously earned from

queries conducted through the Safari search default if it lost this position, representing a potential

loss to Google of ███████████████████ in net revenue. █████████████

███████████████████████████████

███████████████████████████████████████████

██████████████████.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ This statement is immaterial to the resolution of the motion.

524.    After conducting negotiations with Apple ████, Google to agree to share ████ of its revenue with Apple to secure Safari's search default. ███████████████

███████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ██

███████████████████████████████████████████

███████████████████████████

525.    Google is not currently aware of a better estimate for the impact of losing the Safari browser search default than the one conducted during Google's ████ negotiations with Apple. Pls. Ex. 209, Google 30(b)(6) (Roszak) Dep., 93:15–94:17, 99:5–11.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

526.    ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████

**Google's Response**: Undisputed.

527.   ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ███

███████████████████████████████████████████

████████████   ████████████████████████████

███████████████████████████████████████████

███████████████████████████████   This statement is

immaterial to the resolution of the motion.

528.   ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ███

███████████████████████████████████████████

███████████████████████████████████████████

████████████████   █████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████,



██████████████████████████

███████████████████████████████████

██████████ This statement is immaterial to the resolution of the motion.

529. ████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████ This statement is immaterial to the resolution of the motion.

530. ████████████████████████████

███████████████ Pls. Ex. 5, ████ (Microsoft) Dep. (Vol. I), 96:10–99:5, 133:12– 134:8; Pls. Ex. 6, ████ (Microsoft) Dep. (Vol. II), 88:21–92:8, 259:22–261:15; Pls. Ex. 7, ████ (Microsoft) Dep., 59:25–61:7, 85:6–85:16, 111:5–115:9, 140:1–142:9, 162:3–163:24, 193:9– 196:17, 246:3–247:4; Pls. Ex. 8, ████ (Microsoft) Dep., 128:15–132:21, 134:16– 136:6, 138:10–144:16, 159:15–160:1, 281:15–283:11, 311:02–323:23, 343:18–345:25; Pls. Ex. 9, ████ (Microsoft) Dep., 10:12–11:13, 44:9–47:12, 50:7–59:8, 68:4–69:5, 88:5–90:15, 106:6– 107:12, 114:17–115:1, 132:23–135:8, 137:11–141:11, 146:16–151:14, 233:14–235:22, 237:2– 238:25 Pls. Ex. 10, ████ (Microsoft) Dep., 91:22–95:23, 102:2–105:23, 121:11–129:6, 243:2–

██████████████████████████████

252:7.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

531.    ███████████████████████████████████████████████

███████████████████████████████████████ Pls. Ex. 5, ████ (Microsoft) Dep. (Vol. I), 96:10–99:5, 133:12–134:8; Pls. Ex. 6, ████ (Microsoft) Dep. (Vol. II), 83:13–92:8, 259:22–261:15; Pls. Ex. 7, ████████ (Microsoft) Dep., 59:25–61:7, 111:5–115:9, 140:1–142:9, 162:3–163:24, 193:9–196:17, 246:3–247:4; Pls. Ex. 8, ██████ (Microsoft) Dep., 129:15–132:21, 134:15–136:6, 138:10–144:16, 281:15–283:11, 311:1–323:23, 343:18–345:25; Pls. Ex. 9, ██████ (Microsoft) Dep., 10:11–11:13, 44:9–47:12, 50:7–59:8, 68:4–69:5, 88:5–90:15, 106:6–107:12, 114:17–115:1, 132:23–135:8, 137:11–141:11, 146:16–151:14, 233:10–235:22, 237:1–238:25 Pls. Ex. 10, ██████ (Microsoft) Dep., 91:22–95:23, 102:2–105:23, 121:11–129:6, 243:2–252:7.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

532.    If Google had lost the Safari search default to another general search engine in 2020, this would have led to a shift of ████████ of all U.S. search traffic, with Google losing ████████ of the U.S. queries that it had previously captured through the Safari search default on Apple's mobile devices, and losing ████████ of the U.S. queries that it had previously captured through the Safari search default on Apple's macOS devices (desktops and laptops). Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 888–901 & Fig. 158; Pls. Ex. 89, Whinston (DOJ Pls.' Expert) Reply Report, App. D, at D-16, Fig. 104.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule

of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited excerpts provide a conclusory expert opinion regarding "[p]otential search traffic effects of a shift in search access point defaults for Safari on Apple devices (US)," but they do not purport to be a factual assertion regarding what "would" occur, as Professor Whinston explained in his testimony regarding the cited Figure 158. Pls. Ex. 88, Whinston (DOJ Pls.' Expert) Dep., 385:8-387:1 ("So as I said in my report, and I think it – I think stated in later reports, you know, my aim here is really to give the Court a sense of the significance of defaults.  So I'm not saying that – you know, this – this number is an estimate – an estimate of, well, what if all of the Safari exclusive defaults were to shift to rivals.")   This statement is immaterial to the resolution of the motion.

533.     Prof. Murphy contends that Prof. Whinston's estimate of the impact of the Safari default is flawed. Pls. Ex. 139, Murphy (Def.'s Expert) Rebuttal Report, ¶¶ 154–158.

**Google's Response**: Undisputed.  This statement is immaterial to the resolution of the motion.

534.     In his deposition, Prof. Murphy described Google's ordinary-course projections regarding the impact of defaults as representing "somebody's estimate" that may be "seat-of-the-pants ideas" or "a way of justifying what they felt they needed to do," and stated that if Google "relied upon" these projections in negotiating its distribution agreements, this would not change his willingness to accept them if he believes they were "mistaken." Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 366:3–368:6.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The cited excerpts include, among other things, Professor Murphy's testimony that "if there's a clear mistake in those numbers, I would say it doesn't change my opinion, because if they – if they made a mistake, they made a mistake.  The fact that they relied on them doesn't change if they're

█████████████████████████████████████████

mistaken.  It depends on the nature of, you know, the – the evidence that they use.  You want to evaluate how they put it together and see whether they correspond to an economic analysis."  Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 367:20–368:6.  This statement is immaterial to the resolution of the motion.

535.    When Google has considered how Apple thinks about the Safari default to inform Google's negotiation strategy, Google has analyzed the financial implications to Apple. Pls. Ex. 178, Google presentation: NYC [Apple] Overview, Risks, and Opportunities (Oct. 2017), GOOG-DOJ-09093108, at -114–115.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

536.    Prof. Murphy claims that "Apple in essence acts as a collective bargaining agent for consumers" when negotiating with Google. Pls. Ex. 67, Murphy (Def.'s Expert) Initial Report, ¶ 238.

**Google's Response**: Undisputed, with clarification.  The cited sentence states in full that "Apple in essence acts as a collective bargaining agent for consumers, █████████████████████ ███████████████████████████████████████."  Pls. Ex. 67, Murphy (Def.'s Expert) Initial Report, ¶ 238.  This statement is immaterial to the resolution of the motion.

537.    ██████████████████████████████████████████ ██████████████████████████████████████████ Pls. Ex. 25, Cue (Apple) Dep., 217:9–220:2.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The cited testimony does not indicate ███████████████████████████████████ ████████████   ███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████  This statement is immaterial to the resolution of the motion.

538.  ██████████████████████████████████

██████████████████████████████████  Pls. Ex. 25, Cue (Apple) Dep., 217:2–

220:2.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The

cited testimony does not indicate ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████  This statement is immaterial to the resolution of the motion.

539.  ██████████████████████████████████

███████████████████████████████████████  Pls. Ex. 3, Apple

30(b)(6) (Cue) Dep., at 26:8–28:3.

███████████████████████████

**Google's Response**: Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

540.   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████ This statement is immaterial to the resolution of the motion.

541.   ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ This statement is immaterial to the

resolution of the motion.

542.   ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The

cited document refers to ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████ This

███████████████████████████████

statement is immaterial to the resolution of the motion.

543.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The

cited document refers to ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████  This statement is immaterial to the resolution of the

motion.

████████████████████████████████

544.   ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████

**Google's Response**: Undisputed.  This statement is immaterial to the resolution of the motion.

545.     At various points in negotiating the ISA and its amendments, █████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████  ██████████████

██████████████████  (████████████████████████████

███████████████████  ███████████████████████████

████████████████████).

████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  It is unclear what the statement intends to convey in using the term ███████████████████

██████████████████████████████████

████████████████████████████ This statement is immaterial to the resolution of the motion.

546.       During ████ negotiations with Google, Apple's lead negotiator communicated to Google's CEO that Apple ████████████████ ████████████ ███████████████

█████████████████████████████ Pls. Ex. 3, Apple 30(b)(6) (Cue) Dep., 140:7–19.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

C.       **Economic Principles Related To Google's Distribution Agreements**

547.       A contract between a dominant search supplier and a search distributor may reduce competition even if both parties find the agreement to be in their self-interest. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 285–297.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

548.       Search distributors do not act as collective bargaining agents for other distributors or search consumers. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 291–292.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

549.     A dominant search supplier will enter into an exclusionary contract because it stands to benefit from reducing the threat posed by competing suppliers. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 293.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

550.     A search distributor will be guided by its own financial incentives when determining whether to agree to an exclusionary contract. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 291–293.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

551.     A search distributor may profit from an exclusionary contract with a dominant search supplier, even as the contract reduces competition to the detriment of the distributor's consumers, because a dominant supplier may be willing to pay more for a distribution contract than a competing firm would or could. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 293–296.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

552.     There is a basic asymmetry between the outcome if a dominant firm wins or if rivals win an exclusionary contract. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 296; Pls. Ex. 267, Baker (Colo. Pls.' Expert) Reply Report ¶ 130 & n.325.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

553.    When a dominant search supplier wins an exclusionary contract with a search distributor, its market power is strengthened, and it may gain or protect monopoly profits. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 296.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

554.    If a dominant search supplier's rival wins an exclusionary contract and gains strength as a competitor, the most it can hope for is competitive profits. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 296.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

555.    As a result of the asymmetry between the outcome if a dominant search supplier wins or if rivals win an exclusionary contract, even if the dominant supplier and the rival are equally efficient, profits are greater when the dominant supplier wins than when a rival wins, and therefore the dominant supplier can offer the distributor more than rivals for the exclusionary contract. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 296.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

556.    A "public good" is a commodity or service that is made available to all members of a society. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 291 n.400.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

557.    Preservation of competition in general search is a public good. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 291.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

558.    Consumers experience the benefits of competition in the form of lower prices and increased quality. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 291 & n.400.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

559.    A search distributor's decision to enter into an exclusionary contract affects the competitive process as a whole, meaning the interests of all consumers are at stake. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 291–293.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

560.    Even if a distributor were viewed as a "collective bargaining agent" for its own customers, the distributor would not factor in the interests of all consumers when entering into an

████████████████████████████

exclusionary contract. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 291–293.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

561.    No party fully factors in the harm that consumers as a whole stand to incur as a result of a reduction in general search competition. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 291–293.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

562.    Because no party fully factors in the harm that consumers as a whole stand to incur as a result of a reduction in general search competition, each party is individually more willing to sign an exclusionary contract with Google than would otherwise be the case. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 291–293.

**Google's Response**: This paragraph sets forth an expression of abstract economic opinion that is not a "fact" pursuant to Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

563.    Prof. Murphy has written that "competition by a dominant supplier for exclusivity sometimes may result in harm to consumers." Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶ 297 (quoting Klein, Benjamin & Kevin Murphy, "How Exclusivity Is Used To Intensify Competition For Distribution -- Reply To Zenger," Antitrust Law Journal 77, no. 2 (2011): 691–699).

**Google's Response**: Undisputed for purposes of this motion only. This statement is

immaterial to the resolution of the motion.

564.    In his deposition, Prof. Murphy testified that the presence of multiple bidders for a contract is not sufficient to demonstrate that conduct should be deemed permissible competition on the merits. Pls. Ex. 24, Whinston (DOJ Pls.' Expert) Rebuttal Report, ¶¶ 296– 297; Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 414:20–415:14 ("Q. If there are multiple bidders for a contract and one wins, will that always represent competition on the merits? A. No. I think you have to look at other things, and I looked at other things here.").

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

564.1.    In his Rebuttal Report, Prof. Whinston quoted Prof. Murphy, who had stated, "Plaintiffs appear to equate foreclosure with the 'coverage' of Google's arrangements. But the queries that those arrangements 'cover' is not an economically sensible measure of foreclosure." Pls. Ex. 24, Whinston (Pls.' Expert) Rebuttal Report, ¶ 322 (quoting Pls. Ex. 67, Murphy (Def.'s Expert) Initial Report, ¶ 57). Prof. Whinston stated that he agreed with the quotation only "[t]o the extent that" Prof. Murphy was arguing that absent Google's contracts, rivals would not have won "*all* of the search traffic that the contracts cover." *Id.*

**Google's Response**: Undisputed for purposes of this motion only, with clarification. Paragraph 322 of Prof. Whinston's Rebuttal Report states (with a footnote omitted): "In the present case, however, one can reasonably argue that Google securing these contracts does not make unavailable to rivals *all* of the search traffic that the contracts cover because Google would have served some of this search traffic even without the contracts. To the extent that this is the point that Prof. Murphy is making when he states that '[p]laintiffs appear to equate foreclosure with the "coverage" of Google's arrangements.  But the queries that those arrangements "cover" is not an

economically sensible measure of foreclosure,' I agree with him." Pls. Ex. 24, Whinston (Pls.'
Expert) Rebuttal Report, ¶ 322. This statement is immaterial to the resolution of the motion.

564.2.    Prof. Murphy's reports contain no citation for his assertion that "the extent of
potential foreclosure should be limited to the share of sales for which (1) rivals are
anticompetitively denied the ability to compete in the actual world and (2) would be able to
compete successfully in the but-for world." Pls. Ex. 67, Murphy (Def.'s Expert) Initial Report, ¶
732.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is
immaterial to the resolution of the motion.

564.3.    When asked in his deposition to provide a source to support his assertion that "the
extent of potential foreclosure should be limited to the share of sales for which (1) rivals are
anticompetitively denied the ability to compete in the actual world and (2) would be able to
compete successfully in the but-for world," Prof. Murphy "[could not] think of a specific cite for
it." Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 393:5–394:6 (discussing Pls. Ex. 67, Murphy (Def.'s
Expert) Initial Report, ¶ 732).

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  In
the cited deposition excerpt Professor Murphy testified, among other things, that "I don't have a
specific cite, but that's the standard approach.  If you want to know what the impact of foreclosure
is, you look at what would happen in a but-for world without the alleged terms that led to that
foreclosure.  That's just a standard method…. I think it's so standard that I don't – I can't think of
a specific cite for it."  Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 393:5–395:6.  In response to
follow-up questions, Professor Murphy provided examples of expert work in which he has used
the approach described.  *Id.*  This statement is immaterial to the resolution of the motion.

███████████████████████████

**D.      Google's Android Distribution Agreements**

565.      In 2020, ████████████████ of all Google search queries in the United States were performed on Android devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 829, Fig. 134.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

566.      In the United States, the vast majority of Android devices are sold to consumers by carriers. Pls. Ex. 121, Google presentation: Android Agreements Explainer - ACC, MADA, RSA, DCB (Feb. 2, 2018), GOOG-DOJ-28380959, at -968, -977.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

567.      In the United States, carriers purchase Android devices from OEMs. Pls. Ex. 121, Google presentation: Android Agreements Explainer - ACC, MADA, RSA, DCB (Feb. 2, 2018), GOOG-DOJ-28380959, at -968, -977.

**Google's Response**: Undisputed. This statement is immaterial to the resolution of the motion.

568.      For more than a decade, Google has used Mobile Application Distribution Agreements (MADAs), along with Revenue Share Agreements (RSAs), to distribute the Google search engine on Android devices in the United States. ████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  It is unclear what the statement intends to convey in asserting that the referenced agreements have been used "to distribute the Google search engine," and the cited "Revenue Share Agreements" do not support that assertion.

569.    The MADAs and RSAs are a "belt and suspenders" approach to distributing Google Search on Android devices. ████████████████████████

████████████████████████████████████

███████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. It is unclear what the statement intends to convey in referencing an "approach to distributing Google Search," and the cited document does not indicate that RSAs entail "distributing Google Search on Android devices."  This statement is immaterial to the resolution of the motion.

### 1.    Android Operating System And Devices

570.    Android is a mobile operating system that Google acquired in 2005. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 725.

**Google's Response**: Undisputed for purposes of this motion only.

571.    In 2008, Google released the Android operating system code for free, creating the Android Open Source Project (AOSP). Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 725.

**Google's Response**: Undisputed for purposes of this motion only.

572.    Any manufacturer can use AOSP for its mobile devices. Pls. Ex. 121, Google presentation: Android Agreements Explainer - ACC, MADA, RSA, DCB (Feb. 2, 2018), GOOG-DOJ-28380959, at -963.

**Google's Response**: Undisputed for purposes of this motion only.

573.      Since releasing AOSP, over time Google has placed newly developed features exclusively within its proprietary apps and services (collectively, referred to as Google Mobile Services (GMS)), and has not made those features available through AOSP. Pls. Ex. 121, Google presentation: Android Agreements Explainer - ACC, MADA, RSA, DCB (Feb. 2, 2018), GOOG-DOJ-28380959, at -966.

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  The cited page of Plaintiffs' Exhibit 121 does not discuss "features" contained within GMS and does not support the assertion that that Google has "exclusively" developed new features within GMS rather than through AOSP.  This statement is immaterial to the resolution of the motion.

574.      Within GMS, Google Play Services (GPS) helps support the functionality of all Android apps, e.g., enabling cloud messaging and location manager functionalities. Pls. Ex. 64, Google presentation: Android Review (*Nov. 5, 2019), GOOG-DOJ-06465054, at -066; Pls. Ex. 99, Jung (Google) Dep., 62:25–63:20.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

575.      GPS is used by hundreds of thousands of third-party apps. Pls. Ex. 64, Google presentation: Android Review (*Nov. 5, 2019), GOOG-DOJ-06465054, at -066; Pls. Ex. 99, Jung (Google) Dep., 62:25–63:20.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

576.      Google's proprietary version of the Android operating system (Android), which includes GMS, is the only licensable mobile operating system in common use in the United States.

██████████████████████████

Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 54, Figs. 2–3 (StatCounter Global Stats).

**Google's Response**: Undisputed for purposes of this motion only, with clarification.  It is unclear what this statement intends to convey in referencing "Google's proprietary version of the Android operating system (Android)," and the cited excerpts of Professor Whinston's report do not support any such characterization. This statement is immaterial to the resolution of the motion.

577.    The only viable Android app store in the United States is Google's Play Store, which OEMs and carriers deem necessary for producing a sellable mobile device. ████████

████████████████████████████████████

████████████████████    Pls. Ex. 61, Christensen (Motorola) Dep., 157:11–158:2.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  None of the cited exhibits indicates that the Play Store is "[t]he only viable Android app store in the United States" or that it is "necessary for producing a sellable mobile device." This statement is immaterial to the resolution of the motion.

578.    Unlike Android, AOSP does not have an app store. Pls. Ex. 56, Davies (DOJ Pls.' Expert) Initial Report, ¶ 57; Pls. Ex. 121, Google presentation: Android Agreements Explainer - ACC, MADA, RSA, DCB (Feb. 2, 2018), GOOG-DOJ-28380959, at -966.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. It is unclear what this statement intends to convey in implying that "Android" has an app store, and the cited document does not indicate that any operating system has or "does not have" any particular app store. This statement is immaterial to the resolution of the motion.

579.    Unlike Android, AOSP does not have the GPS application programming interfaces that many third-party Android apps require. Pls. Ex. 64, Google presentation: Android Review (*Nov. 5, 2019), GOOG-DOJ-06465054, at -066–067; Pls. Ex. 99, Jung (Google) Dep.,

████████████████████████████████

62:25–63:20.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. It is unclear what this statement intends to convey in contrasting "Android" and "AOSP," and the cited excerpts do not support any such characterization. This statement is immaterial to the resolution of the motion.

580.     Other than Apple devices, phones and tablets with the Android operating system make up nearly the entire remaining mobile device marketplace in the United States. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 54, Figs. 2–3 (StatCounter Global Stats).

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

### 2.     Google's Chrome Browser

581.     In the United States, Google's Chrome browser accounts for roughly 50% of browser usage and 60% of desktop browser usage. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 6.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

582.   ████████████████████████████████

████████████████████████████████

███

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ███

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████████████████████ This

statement is immaterial to the resolution of the motion.

### 3.    Google's Mobile Application Distribution Agreements (MADA)

583.    Virtually all Android devices sold in the United States have GMS preinstalled and are built under the MADA. Pls. Ex. 158, Email from Braddi (Google), Re: assistant (Aug. 7, 2018), GOOG-DOJ-06446636, at -636; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 727; Pls. Ex. 70, Kolotouros (Google) Dep., 31:7–10.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

584.    Under the MADA, if an OEM preinstalls any Google app on an Android device, the OEM must: (1) put on the device's home screen (a) Google's search widget (a search bar or box), (b) the Play Store, and (c) an icon labeled "Google" that provides direct access to preinstalled Google apps; and (2) preinstall 11 Google apps, including the Google Search App (GSA) and Google's Chrome browser. *See, e.g.*, ████████████████████████

████████████████████████████████

████████████████████████ ; Pls. Ex. 160, Def.'s Resp. to Pls.' Second Set of Contention Interrogatories (Apr. 27, 2022), at 20–21 (response to Contention Interrogatory No. 19).

**Google's Response**: Undisputed for purposes of this motion only.

585.    ████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████

██████████████████████

**Google's Response**: Undisputed for purposes of this motion only.

586.     The search widget is the single most important search access point on an Android device. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 741.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

587.     The default search engine on the Google search widget cannot be changed from Google. Pls. Ex. 209, Google 30(b)(6) (Roszak) Dep., 58:22–59:20.

**Google's Response**: Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

588.     The home screen is the most prominent and valuable real estate on an Android phone. ███████████████████████████; Pls. Ex. 61, Christensen (Motorola) Dep., 98:1–10; ██████████████████████████████; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 754.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

589.     Under the MADA, the Google search widget to occupy an entire row (three-to-five slots) on the home screen. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 754.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

590.     ████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████



Pls. Ex. 61, Christensen (Motorola) Dep., 98:1–10, 202:8–203:2; 204:8–205:2; ███

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). None of the cited materials indicates that ████████████████████████████████ This statement is immaterial to the resolution of the motion.

591. In the past three years, no manufacturer has sold an Android phone into the United States, preinstalled with Google's search widget and an additional search widget for a different general search engine. Pls. Ex. 70, Kolotouros (Google) Dep., 95:8–96:7, 96:14–21; Pls. Ex. 75, Google presentation: Android Agreements, Summary of Current MADA + RSA (May 10, 2018), GOOG-DOJ-04257815, at -819; ████████████████████; Pls. Ex. 61, Christensen (Motorola) Dep., 204:17–205:2, 205:18–25; ████████████ ███████

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

592. In the United States, Android devices have only one search widget preinstalled. Pls. Ex. 75, Google presentation: Android Agreements, Summary of Current MADA + RSA (May 10, 2018), GOOG-DOJ-04257815, at -819; ████████████████████; Pls. Ex. 70, Kolotouros (Google) Dep., 96:17–21; Pls. Ex. 67, Murphy (Def.'s Expert) Initial

██████████████████████████████████

Report, ¶ 757 ("Plaintiffs focus on the fact that OEMs may be unlikely to place multiple search widgets on a device.").

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

593.    The Chrome browser is the second most important search access point on an Android device and defaults to Google out of the box. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 739–742.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

594.    Google is the preset default search engine on Chrome when OEMs preinstall the browser on Android devices. Pls. Ex. 70, Kolotouros (Google) Dep., 89:1–5.

**Google's Response**: Undisputed.

595.    Although still disfavored, secondary browsers on Android devices are not unprecedented—Samsung Android devices, for example, come with both Chrome and S- Browser, Samsung's proprietary browser. Pls. Ex. 72, Google presentation: Healthy Android (Oct. 2017), GOOG-DOJ-03505506, at -518; ███████████████████████████

██████████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to resolution of the motion.

596.    Samsung is a leading manufacturer of Android devices sold in the United States. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 79, Fig. 8.

**Google's Response**: Undisputed.

597.    Samsung has a MADA. ██████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████

**Google's Response**: Undisputed.

598.    Motorola is a leading manufacturer of Android devices sold in the United States. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 79 Fig. 8.

**Google's Response**: Undisputed.

599.    Motorola has a MADA. ████████████████████████████

████████████████

**Google's Response**: Undisputed.

600.    LG, which used to be a leading Android OEM, also had a MADA, but LG exited the smartphone business in 2020. ████████████████████████████

████████; Pls. Ex. 70, Kolotouros (Google) Dep., 144:5–12; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 79 Fig. 8; Pls. Ex. 159, Google presentation: Android Staples (Aug. 2021), GOOG-DOJ-30356083, at -092.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

601.    Having two browsers (Chrome and S-Browser) already preinstalled on its Android devices deters Samsung from preinstalling a third-party browser, ████████████

████████████████████████████████████████

███████████████████████████████████     ████

████████████████████████████████████████

████████████████     ████████████████████

████████████████████; ████████████████████

███████████████████████████████

█████████████████████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only.   This statement is immaterial to resolution of the motion.

### 4.      Google's Revenue Share Agreements (RSA)

602.      Under its RSAs with carriers and OEMs, Google makes monthly payments to the counterparty in exchange for Google being (1) the exclusive general search engine preinstalled on Android devices covered by the RSA, as well as (2) the search default for all search access points on such devices. Pls. Ex. 55, Pichai (Google) Dep., 199:8–11; Pls. Ex. 212, Barton (Google) Dep., 136:3–19; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 761–762, 786.

**Google's Response**: Undisputed for purposes this motion only.

603. ████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to resolution of the motion.

604. ████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████

**Google's Response**: Undisputed for purposes of this motion only.

███████████████████████████

605.    ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only.

606.    Google's RSAs with carriers cover Android devices that the carriers purchase from OEMs and sell to consumers. Pls. Ex. 121, Google presentation: Android Agreements Explainer - ACC, MADA, RSA, DCB (Feb. 2, 2018), GOOG-DOJ-28380959, at -968; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 767.

**Google's Response**: Undisputed for purposes of this motion only.

607.    Google's RSAs with OEMs cover Android devices that OEMs sell directly to U.S. consumers. Pls. Ex. 213, ████████████████████████████████████

████████████████████████; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 767.

**Google's Response**: Undisputed for purposes of this motion only.

608.    ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████

██████

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

609.    Some RSAs have allowed the counterparty to earn Google revenue share on a device-by-device basis. ███████████████████████████████████

███████████████

**Google's Response**: Undisputed. This statement is immaterial to the resolution of the motion.

610.    █████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████  █  ██  ████  ████████  ███  █████  █████  ███

█████████

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.



611.

. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 77, 79–81, 786;

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to resolution of the motion.

### 5.  Google's Payments To Android Partners Under RSAs

612.   In 2020, pursuant to its RSAs, Google paid ▮▮▮▮▮▮ to carriers for Google to be the exclusive preset default search engine on Android devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 718, Fig. 122.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to resolution of the motion.

613.   In 2020, pursuant to its RSAs, Google paid ▮▮▮▮▮▮▮ to OEMs for Google to be the exclusive preset default search engine on Android devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 718, Fig. 122.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to resolution of the motion.

### 6.  Consideration Of The Value Of The Search Default On Android Devices

614.   Google recognizes the "power of the defaults" to drive search traffic to a particular search engine. Pls. Ex. 219, Email from Varian (Google), Re: Power of defaults (Mar. 27, 2007), GOOG-DOJ-05756465, at -465.

███████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. The cited exhibit does not indicate that Google "recognizes" the "power of the defaults" or any other concept; it is an email exchange between two Google employees regarding, among other things, personalized homepage and toolbar installation initiatives. Pls. Ex. 219, Email from Varian (Google), Re: Power of defaults (Mar. 27, 2007), GOOG-DOJ-05756465, at -465. This statement is immaterial to the resolution of the motion.

615.   [Intentionally Left Blank]

**Google's Response**: No response required.

616.   ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ This statement is immaterial to the resolution of the motion.

617.   A search engine having preset default status leads to increased usage of that search engine. Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 94:21–95:3 ("I think, in general, what we've seen, and from the empirical evidence, as well as the underlying economics, would be that default status generally will lead to some increase in usage.").

**Google's Response**: Undisputed for purposes of this motion only.

618.    Google's employees recognize that default behavior influences some users and brings more searches to Google. Pls. Ex. 290, Miller (Google) Dep., 76:24–77:24.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

619.    Prof. Murphy claims that, if rivals were preset as the search defaults on Android devices, they would receive an additional ▆▆▆▆ of the queries on those devices. Pls. Ex. 87, Murphy (Def.'s Expert) Dep., 533:17–534:12; Pls. Ex. 301, Murphy (Def.'s Expert) Reply Report, ¶¶ 20, 87, 226.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

620.    ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

████████████████████████

████████████████████████████████████

████████████████████ This statement is immaterial to the resolution of the motion.

621.   ████████████████████ if Google were to lose the preset search defaults on all U.S. Android devices, Google would lose between 11.6% and 13.5% of all U.S. search traffic. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 160.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). The referenced percentages reflect assumptions and calculations made by Professor Whinston. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 902-05 & Fig. 160.  The assumptions and calculations incorporate, among other things, ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ but "Plaintiffs' experts have not opined" that in the absence of the challenged agreements ████████ any "particular Android OEM … would have selected a search engine other than Google to be the exclusive preloaded search engine on a particular Android device," let alone that the companies that make or sell "all U.S. Android devices" would set another search engine as the default. SOGI ¶ 254. This statement is immaterial to the resolution of the motion.

622.   Google is a public company and pays ████████████ pursuant to its RSAs to secure search defaults on Android devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 718, Fig. 122.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

███████████████████████████████

623.     Preset search defaults on desktops are easier to change than preset search defaults on mobile devices due to the large screen sizes on desktops. ███████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████ █████████████

████████████████████████████████████

██████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. None of the cited exhibits discusses the ease of changing preset search defaults on mobile devices versus desktops.  This statement is immaterial to the resolution of the motion.

624.     Bing's share of search traffic on Windows PCs (desktops and laptops), where it is the default search service, is ████████████████ higher than its share on macOS devices (desktops and laptops), where Google is the default. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 142; *see also* Pls. Ex. 266, Baker (Colo. Pls.' Expert) Initial Report, ¶ 260 & Table 22; Pls. Ex. 267, Baker (Colo. Pls.' Expert) Reply Report, ¶ 117 & n.294.

**Google's Response**: Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

625.     The poor performance of the Internet Explorer browser likely contributed to a higher rate of users switching to alternative browsers on Windows than on other platforms. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 459–462.

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). The cited paragraphs of Plaintiffs' Exhibit 22 do not discuss the "poor performance of the Internet Explorer browser" or whether it

██████████████████████████████████

"contributed to a higher rate of users switching to alternative browsers on Windows than on other platforms." This statement is immaterial to the resolution of the motion.

626.     Google was able to benefit from shortcomings in the Internet Explorer browser through its distribution agreements with nearly every alternative browser used on Windows as well as its ownership of the Chrome browser. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 462; ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

**Google's Response**: Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited paragraphs of Plaintiffs' Exhibit 22 do not discuss the "poor performance of the Internet Explorer browser" or whether it "contributed to a higher rate of users switching to alternative browsers on Windows than on other platforms."  Further, Defendant's Exhibit 42 and Plaintiffs' Exhibits 45, and 49 do not discuss the Internet Explorer browser.  This statement is immaterial to the resolution of the motion.

627.     [Intentionally Left Blank]

**Google's Response**: No response required.

628.     ██████████████████████████████████████

███████████████████████████████████████

████████ ████████████. Pls. Ex. 244, Email from ████████████, NO SUBJECT (July 26, 2019), ████████-00057003, at -003–004 (describing ██████████████████████ ████████).

**Google's Response**: Undisputed for purposes of this motion only, with clarification. The

██████████████████████████████████████████████

cited  document  refers  to  ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████. *E.g.*, SOGI ¶ 227.  This statement

is immaterial to the resolution of the motion.

629.     Google is  ████████████  in its demands for search exclusivity on Android devices

sold by Verizon. Pls. Ex. 63, ███████████████, 148:12–21.

**Google's Response**: Undisputed for purposes of this motion only, with clarification. In

the  cited  deposition  excerpt,  the  examiner  asked  ██████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████  This statement is immaterial to the resolution of the motion.

630.  ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ██

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████  This statement is immaterial to the resolution of the motion.

███████████████████████████

631.   ████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

**Google's Response**:  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The single cited document does not purport to ████████████████████████████████████

███████████████████████████████████████

██████████████████████ This statement is immaterial to the resolution of the motion.

632.   ████████████████████████████████████

███████████████████████████████████████

████████

**Google's Response**: Undisputed for purposes of this motion only, with clarification. ██

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ This statement is immaterial to the resolution of the motion.

### E.   Google's Browser Distribution Agreements

633.   Since the early 2000s, Google has entered into revenue share agreements with third-party browser companies, such as Opera (2001), Mozilla (2004), and UCWeb (████). Def. Ex. 32, 2004 Mozilla Browser RSA (Nov. 8, 2004), MOZ-LIT-037219; Pls. Ex. 28, Baker

██████████████████████████████████████████

(Mozilla) Dep., 62:1–18; Pls. Ex. 226, Opera Press Release, "Opera and Google renew search agreement" (Dec. 20, 2021) ("Opera has had a search distribution agreement with Google (NASDAQ: GOOGL) since 2001."); ████████████████████████████████████████

██████████████████████  *see also* Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 813–822 (cataloguing Google's contracts with third-party browsers).

**Google's Response**: Undisputed.

## 1.   Third-Party Browsers

634.  As of December 2021, third-party browsers accounted for approximately 5% of U.S. browser usage across all devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 6.

**Google's Response**:  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Figure 6 of Professor Whinston's opening report, labeled "StatCounter browser shares (US)," does not purport to identify a category of "third-party browsers," and it is unclear what Plaintiffs intend to convey in using that phrase in Statement 634.  Other passages of Professor Whinston's Initial Report refer to, *e.g.*, Apple Safari and Samsung Internet as "third-party browsers," but they do not appear to be included in Statement 634. *E.g.*, Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report ¶ 813 (████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████).  This statement is immaterial to the resolution of the motion.

635.   As of December 2021, Mozilla's Firefox was the most popular third-party browser. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, Fig. 6.

**Google's Response**:  Disputed as not supported by the evidence as required by Federal

███████████████████████████

Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Figure 6 of Professor Whinston's opening report, labeled "StatCounter browser shares (US)," does not purport to identify a category of "third-party browsers," and it is unclear what Plaintiffs intend to convey in using that phrase in Statement 635.  The preceding paragraph of Professor Whinston's report states that ███████████

█████████████████████████████████████

████████████  Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 57, which indicates that Safari "was the most popular third-party browser" as that phrase is used elsewhere in Professor's Whinston's Initial Report, *e.g.*, *id.* at ¶ 813.  This statement is immaterial to the resolution of the motion.

636.    [Intentionally Left Blank]

**Google's Response**:  No response required.

637.    [Intentionally Left Blank]

**Google's Response**:  No response required.

638.    [Intentionally Left Blank]

**Google's Response**:  No response required.

639.    [Intentionally Left Blank]

**Google's Response**:  No response required.

640.    [Intentionally Left Blank]

**Google's Response**:  No response required.

641.    [Intentionally Left Blank]

**Google's Response**:  No response required.

642.    Although third-party browsers account for only approximately 5% of U.S. browser usage, they represent the largest distribution vehicle for general search engines, after

accounting for distribution channels controlled by Google, Apple, and Microsoft. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 739–744, Figs. 6, 134.

**Google's Response**:  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  None of the cited paragraphs or figures identifies a category of "third-party browsers," describes what it means to be a "distribution vehicle for general search engines," or indicates which "vehicle[s]" purportedly are "controlled by Google, Apple, and Microsoft."  This statement is immaterial to the resolution of the motion.

643.    Searches on Mozilla's Firefox browser are conducted almost entirely on computers, rather than mobile devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 865 n.1129; *see also* Pls. Ex. 28, Baker (Mozilla) Dep., 134:9–20.

**Google's Response**:  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

644.    Third-party browsers like Mozilla generally do not come preinstalled on devices (which come with a different preinstalled browser out of the box). Pls. Ex. 28, Baker (Mozilla) Dep., 136:11–15, 137:8–23; Pls. Ex. 182, Mozilla presentation: Protecting the Open Web: Threats to Browser Competition (Dec. 18, 2019), MOZ-002390, at -403.

**Google's Response**:  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited deposition excerpt indicates that Mozilla's Firefox generally does not come preinstalled on certain devices, but neither the cited testimony nor the cited document identifies a category of "third-party browsers," and it is unclear what Statement 644 intends to convey in using that phrase.  This statement is immaterial to the resolution of the motion.

645.    It is difficult for third-party browsers to compete with preinstalled browsers on

███████████████████████████████████

mobile devices because if third-party browsers are not preinstalled on a device out of the box, users must find the browser, obtain it, and install it. Pls. Ex. 28, Baker (Mozilla) Dep., 139:20–140:24.

**Google's Response**:  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited deposition excerpt does not identify a category of "third-party browsers," and it is unclear what Statement 645 intends to convey in using that phrase.  For example, neither the statement nor the cited excerpt indicate whether Google Chrome is a "third-party browser" in relation to an Apple iPhone or a Microsoft Windows PC.  This statement is immaterial to the resolution of the motion.

### 2.  Google's RSAs With Third-Party Browsers

646.    Google's revenue share agreements with third-party browser companies guarantee that Google will be the preset default search engine across all search access points on the respective browser (namely the URL address bar), for nearly all instances when the browser is installed by users on their devices. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████; *see also* Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 815–822.

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.

███████████████████████████████████

███████████████████████████████████

████████████████████████████

647.    ███████████████████████████████████

██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

**Google's Response**:  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

648.   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

**Google's Response**:  Undisputed for purposes of this motion only, with clarification. ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████

649.   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

██████████████████████

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

### 3.   Google's Payments To Third-Party Browsers

650.   In 2020, Google paid third-party browser companies approximately ████████

████ pursuant to revenue share agreements concerning Google preset default search placements

on the counterparties' browsers. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 718,

Fig. 122.

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.  The

cited excerpts of Professor Whinston's initial report do not purport to identify a category of "third-

party browsers," and it is unclear what Plaintiffs intend to convey in using that phrase in Statement

650.  The cited paragraph and figure indicate that in 2020 ███████████████████████

████████████████████ in "Google payments under RSAs," and the corresponding

███████████████████████████████

figure distinguishes those "partner type[s]" from Apple, MNOs, and operating systems.  Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶ 718, Fig. 122.  This statement is immaterial to the resolution of the motion.

651.     Roughly ████ of Mozilla's annual revenue comes from its revenue share agreement with Google, in exchange for making Google the preset default search engine on Firefox. Pls. Ex. 28, Baker (Mozilla) Dep., 41:18–24.

**Google's Response**:  Undisputed for purposes of this motion only.

652.     Google's revenue share agreement with Mozilla concerning Google preset default search placements on Firefox accounted for roughly ████ of Mozilla's royalty revenues in 2018 and 2019. Pls. Ex. 230, Mozilla document: Mozilla 2019 and 2018 Consolidated Financial Statements (Oct. 16, 2020), MOZ-LIT-000263, at -291.

**Google's Response**:  Undisputed for purposes of this motion only.

653.     Mozilla has recognized what it described as the ████████████████████ in search, has expressed concern about its ████████████████ and has sought to find ████████████████ Pls. Ex. 231, Mozilla presentation: Strategic Development: Search Negotiations (Oct. 2014), MOZ-LIT-000903, at 5–6; *see also* Pls. Ex. 234, Email from Bautista (Mozilla), Should we invest ████████████ (Apr. 6, 2020), MOZ-LIT-009028, at -028

████████████████████████████████

███████████████████████████

**Google's Response**:  Undisputed for purposes of this motion only, with clarification. Neither the cited presentation nor the cited email purport to describe ███████████████

████████████████████████████████

████████████ This statement is immaterial to the resolution of the motion.

██████████████████████████

### 4.      Consideration Of The Value Of The Search Default On Third-Party Browsers

654.      If Google lost the preset default search position on third-party browsers, Google would lose between ████████████ of the search traffic that it had previously captured through those defaults on desktop computers. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 908–911, Fig. 161.

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.  It is unclear what Statement 654 intends to convey in using the phrase "third-party browsers."  Based on the cited excerpts of Professor Whinston's report it appears to refer to Mozilla, Opera, and UCWeb, and Google has interpreted the phrase accordingly in responding to Statement 654.  This statement is immaterial to the resolution of the motion.

655.      If Google lost the preset default search position on third-party browsers, Google would lose between ████████████ of the search traffic that it had previously captured through those defaults on mobile devices. Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 908–911, Fig. 161.

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.  It is unclear what Statement 655 intends to convey in using the phrase "third-party browsers."  Based on the cited excerpts of Professor Whinston's report it appears to refer to Mozilla, Opera, and UCWeb.  Google has interpreted the phrase accordingly in responding to Statement 655.  This statement is immaterial to the resolution of the motion.

656.      Google estimates that losing its position as the preset default search engine on the Opera browser would put ████████████████████ from Opera at risk.  Pls. Ex. 232, Google presentation: Search Headwinds & Challenges (May 2015), GOOG-DOJ-13128963, at -989.

███████████████████████████████

**Google's Response**:  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

657.    ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████  Def. Ex. 43, Mozilla document: Project Waldo – Phase 1 Final Review (Mar. 2, 2022), MOZ-LIT-045096, at -102–103; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 875–876; Pls. Ex. 67, Murphy (Def.'s Expert) Initial Report, ¶¶ 299–305.

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.  The cited page of the referenced document states (with a footnote omitted) that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

658.    The year after Mozilla switched the search default on Firefox from Google to Yahoo in 2014, Google lost approximately ████ of the search traffic that it had previously captured through the Firefox search default, which cost Google approximately ████████ in search ad revenue. Pls. Ex. 168, Google presentation: UNTITLED (*Apr. 2019) (Assistant conjoint analysis), GOOG-DOJ-02800065, at -071; Pls. Ex. 233, Google presentation: Firefox/Yahoo (May 2015), GOOG-DOJ-04248388, at -389; Pls. Ex. 22, Whinston (DOJ Pls.' Expert) Initial Report, ¶¶ 862–864, 869 & Figs. 145–147.

**Google's Response**:  Undisputed for purposes of this motion only.

659.    When Mozilla switched the search default on Firefox from Google to Yahoo in 2014, Mozilla made the change ████████████████████████████████████████

███████████████████████████████████

████████████████████ Pls. Ex. 231, Mozilla presentation: Strategic Development: Search Negotiations (Oct. 2014), MOZ-LIT-000903, at 5–6.

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.  The cited presentation purports to list various factors that were considered in comparing potential deals with Google and Yahoo in October 2014, but it does not purport to state why Mozilla "made the change."  This statement is immaterial to the resolution of the motion.

660.    When Mozilla switched the search default on Firefox from Google to Yahoo in 2014, Mozilla believed that ████████████████████████████████████████ and hoped to use this event as an ███████████████████████ Pls. Ex. 243, Mozilla document: Mozilla Opening Mediation Brief in *Yahoo v. Mozilla* (July 17, 2019), MOZ- LIT-000296, at -302; Pls. Ex. 231, Mozilla presentation: Strategic Development: Search Negotiations (Oct. 2014), MOZ-LIT-000903, at 6.

**Google's Response**:  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

661.    Sometime after switching the search default on Firefox from Google to Yahoo in 2014, Mozilla ceased to view Yahoo as a viable search default for Firefox and switched that default back to Google. Pls. Ex. 28, Baker (Mozilla) Dep., 81:6–22, 271:8–272:2; *see also id.* at 224:23– 225:4.

**Google's Response**:  Undisputed for purposes of this motion only, with clarification.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

███████████████████████

Dated: February 27, 2023

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted _pro hac vice_)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

_Counsel for Defendant Google LLC_