# Exhibit 132

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                    Plaintiff,

      v.

MICROSOFT CORPORATION,

                  Defendant.

Civil Action No. 98-1232 (CKK)

Next Court Deadline:
     May 17, 2006 Status Conference

## JOINT STATUS REPORT ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232 (CKK), and the Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa, Kansas, Massachusetts, Minnesota, Utah, and the District of Columbia (the "California Group") (collectively "Plaintiffs"), together with Defendant Microsoft, hereby file a Joint Status Report on Microsoft's Compliance with the Final Judgments, pursuant to this Court's Order of May 14, 2003.

## I.     INTRODUCTION

At the February 14, 2006 Status Conference, the Court directed the Plaintiffs to file a Status Report updating the Court on activities relating to Microsoft's compliance with the Final Judgments entered in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), and in *United States v. Microsoft*, CA No. 98-1232 (CKK).[1]

The last Status Report, filed February 8, 2006, served as an interim report, containing information on selected activities relating to enforcement of the Final Judgments. The current report is the sixth of the six-month reports requested by the Court and contains information that the Court has requested in each six-month report.  Order at 1-3 (May 14, 2003).  Section II of this Report discusses Plaintiffs' efforts to enforce the Final Judgments;[2] this section was authored by Plaintiffs.  Section III discusses Microsoft's efforts to comply with the Final Judgments; this section was authored by Microsoft.  Neither Plaintiffs nor Microsoft necessarily adopts the views expressed by the other.

---

[1] Plaintiffs filed previous reports on April 17, 2003, July 3, 2003, October 17, 2003, January 16, 2004, April 14, 2004, July 9, 2004, October 8, 2004, January 25, 2005, June 1, 2005, October 19, 2005, and February 8, 2006 to inform the Court as to the Plaintiffs' efforts to enforce the Final Judgments and Microsoft's efforts to comply with the Final Judgments.  Plaintiffs also filed a Supplemental Joint Status Report on November 18, 2005.

[2] This report outlines Plaintiffs' enforcement efforts relating to Sections III.C, E, and H. Although Plaintiffs continue to monitor Microsoft's efforts to comply with Sections III.A, B, D, and G, Plaintiffs do not have any matters relating to those Sections to report to the Court at this time.

## II.     UPDATE ON PLAINTIFFS' EFFORTS TO ENFORCE THE FINAL JUDGMENTS

### A.     Section III.E (Communications Protocol Licensing)

Plaintiffs' work concerning Section III.E and the Microsoft Communications Protocol Program ("MCPP") continues to focus on efforts to improve the technical documentation provided to licensees.  As will be clear from the discussion below, the parties' efforts concerning the technical documentation have reached a watershed.  We therefore first summarize developments as they have evolved over the past several months.  After that, we will outline the plan that Plaintiffs and Microsoft have developed for going forward.  We conclude by discussing the need to extend the Final Judgments insofar as they relate to Section III.E, and for additional related measures going forward.

### 1.     *Microsoft's Response to Technical Documentation Issues: The Current State of Activity*

As described in the February 8, 2006 Joint Status Report, Plaintiffs believed that Microsoft's willingness to make its Windows server source code available to MCPP licensees at no additional cost was a constructive proposal that was responsive to Plaintiffs' concerns that Microsoft was unable to translate the work of the Technical Committee ("TC") into improved technical documentation for MCPP licensees in a timely fashion.

Accordingly, Plaintiffs agreed to revise the Service Level Guidelines ("SLGs") that impose deadlines on Microsoft for responding to issues submitted by the TC.  The original SLGs included a sequence of short and specific deadlines — varying with the assigned "priority" of the issue — to govern each stage of the interactions between the TC and Microsoft.   In the February Joint Status Report, Plaintiffs and Microsoft announced a new structure that required Microsoft to

3

resolve within 60 days — to the satisfaction of the TC — all issues blocking the TC's projects that the TC could not readily solve by reference to the source code or public information. For all other issues, Microsoft agreed to use its best efforts to resolve the issues and to make any required changes to the documentation. The goal was to minimize the cases where the TC's work was impeded by outstanding requests for information, while allowing Microsoft sufficient time to engage in any necessary dialogue with the TC and to consult with the required technical experts in the company.

In February, the TC reclassified all previously submitted technical documentation issues and determined that 71 outstanding technical documentation issues should be governed by the new 60-day deadline. Microsoft's initial performance in resolving these technical documentation issues was disappointing. As described in Microsoft's monthly status report dated April 17, 2006, when the TC reviewed Microsoft's initial proposed fixes to 58 of these 71 issues, the TC found that only five of those responses completely resolved the issue. Microsoft described in that report that it had added senior engineers and enhanced quality controls to its internal process in an effort to increase the acceptance rate of its proposed fixes. Although this revamped process has only begun to produce a new stream of responses within the last two weeks, there does appear to be an improvement in the results. As noted above, about 9% of the initial 58 60-day responses successfully resolved the issue; about 35% of the next group of 17 responses fully resolved the issue. However, of the most recent 37 responses submitted since Microsoft put its new process into effect, about 66% appear to resolve the issue. This trend is encouraging and confirms that Microsoft's recent process is significantly improving the quality of the responses. As of May 8,

there were 57 open technical documentation issues for which the 60-day time period has already expired and Microsoft had only closed 18 of the 60-day issues submitted by the TC.

Microsoft's initial performance in resolving the remaining outstanding technical documentation issues — the so-called "non-60-day issues" — was also not very encouraging. While Microsoft has "closed" a significant number of these issues, when the TC analyzed a sample of these replies submitted earlier this year it found that slightly less than one-third of the fixes fully resolved the issues. Over the last month Microsoft focused its engineers on responding to the 60-day issues and on developing in that context a revised and more effective process that could be applied more generally. To the extent appropriate given Microsoft's new documentation rewrite project discussed below, Microsoft intends to apply the same revised process for responding to non-60-day issues as that described above for handling 60-day issues. While this process has not yet produced enough replies to make any conclusive determinations, Plaintiffs are encouraged by the progress Microsoft has made in improving the quality of its replies to 60-day issues and hope that this will translate into higher quality replies to the non-60-day issues. The TC has retained a consultant to audit Microsoft's responses to the non-60-day issues until it is satisfied either that the quality of Microsoft's replies is adequate or that Microsoft's documentation rewrite project has rendered the issue moot.

While Plaintiffs find Microsoft's recent progress in addressing the outstanding 60-day issues encouraging, Microsoft's difficulty in improving the technical documentation has led Plaintiffs to conclude that a new approach is needed.

### 2. *Microsoft's Project to Rewrite the Technical Documentation*

In light of its continuing difficulty in addressing open issues with the technical documentation, Microsoft assigned one of its most senior executives — Robert Muglia, Senior Vice President of Microsoft's Server and Tools Business — to conduct a thorough analysis of the problem and determine the most efficient method for producing technical documentation that is of a sufficiently high quality to assure Plaintiffs and the TC that Microsoft is meeting its obligations to licensees. Mr. Muglia and his team ultimately concluded that the current process of trying to fix issues identified by the TC one at a time was unlikely, in the foreseeable future, to result in documentation that is satisfactory. Microsoft therefore has concluded that a broader "reset" would be much more effective and efficient, meaning that Microsoft will rewrite substantial portions of the documentation, taking advantage of what it has learned during the last several years, including all of the specific reports from the TC.

Plaintiffs, after consulting with the TC and Craig Hunt, the California Group's technical expert,[3] were impressed by Mr. Muglia's analysis of the current predicament and share his view that a rewrite of the documentation may well prove more successful in resolving Plaintiffs' concerns with the documentation than the current approach.[4] Plaintiffs and Microsoft have

---

[3] Plaintiffs would like to emphasize that the TC is working closely with Mr. Hunt on all of these technical documentation issues. For ease of writing, whenever reference is made to Microsoft working with the TC in this section, this should be taken to include Mr. Hunt as well.

[4] With the Court's indulgence, Plaintiffs would like to offer their own quote from Machiavelli's *The Prince* on this point: "He who has not first laid his foundations may be able with great ability to lay them afterwards, but they will be laid with trouble to the architect and danger to the building." Essentially, Microsoft has concluded that the current "foundation" that it built should be set aside and replaced by one that is more sturdily built. As Machiavelli suggests, this may indeed be a case where the more sensible approach is to write a new, high quality version of the documentation rather than to continue with the current process of trying to "fix" the

agreed to proceed with a project for rewriting the technical documentation that involves four key steps: (1) the parties must agree on a specification for the new documentation; (2) the parties must agree on a project schedule for all the protocols; (3) Microsoft must rewrite the documentation for each protocol according to this schedule; and (4) the resulting new documentation must be tested and validated to ensure its completeness and accuracy. As it is clear that this project to rewrite the technical documentation will require a significant amount of time to complete, and as explained more fully below, Plaintiffs have informed Microsoft that an extension of portions of the Final Judgments will be necessary, and Microsoft has consented to such an extension.

The first step in this plan calls for Microsoft to work with the TC to develop a specification for the new documentation. As the Court may recall, there are substantial overlaps in the technology being licensed under the United States and European programs. Microsoft has recently begun a process of rewriting the European documentation by agreeing to a specification with the Monitoring Trustee of the European Commission ("EC"). The TC completed its review of two of the first three examples of this new protocol documentation and found these documents to be of vastly improved quality compared to the current documentation; review of the third document is still underway. The documentation for these two protocols is more understandable and usable while simultaneously resolving most of the critical 60-day issues that the TC had

---

existing documentation line by line and issue by issue.

identified with the existing documentation.  Microsoft and the TC will build on this groundwork

and develop a specification that will be used to rewrite the MCPP documentation.[5]

     After Microsoft and the TC agree upon a new MCPP document specification, Microsoft

will rewrite the MCPP documentation to conform to it.  Microsoft and the Plaintiffs will also

work together to establish a project schedule, including the order in which the protocols will be

rewritten.  Microsoft will then implement this project schedule on a rolling basis, providing the

TC with the revised documents as they are completed.  In this process, Microsoft will take

account of the TC's feedback on each protocol, both to finalize the documentation for the specific

protocol and more generally to assist its work on those documents that remain.

     The TC will continue its current prototype implementation activity on a provisional basis.

However, Microsoft will focus its energy on the rewrite effort.  Consequently, the number of

outstanding issues in the existing technical documentation may be expected to rise in the

upcoming weeks even if Microsoft is making every bit of progress that Plaintiffs could hope for.

Nevertheless, because the TC's issues already are reported to Microsoft by protocol, Microsoft's

engineers should be able to take them into account as the revised documentation for individual

protocols is developed.  The TC expects that Microsoft will address all the outstanding issues

relating to a given protocol concurrent with the delivery of the relevant revised protocol

documentation.  The TC will subsequently audit all the 60-day issues and a reasonable sampling of

the non-60-day issues thus closed.  Thus, if the Microsoft rewrite project is successful, the issues

---

[5] While there is no guarantee that the US and EC specifications will be identical, the parties share the goal of ensuring that they will be largely consistent, so that the technical documentation relating to the overlapping technology is as close to the same as is reasonably practical.  Plaintiffs and the TC will work with the EC and its Trustee to try to achieve this goal.

identified by the TC through its prototype implementation project should be addressed over time by Microsoft in the new documentation.

The TC's work on identifying issues in the existing technical documentation will continue at least until Microsoft has established a track record of producing high quality rewrites of the documentation. While this TC work continues, Microsoft will respond on a case-by-case basis to a subset of the 60-day issues that the TC deems to be of a critical nature. Plaintiffs and Microsoft will work together to determine the most logical way for Microsoft to report on its progress in improving the technical documentation in its future monthly reports to this Court.

Parallel to Microsoft's rewrite process, Plaintiffs and Microsoft will re-assess the most appropriate approach to the testing and validation of the technical documents. At this point, the TC has considerable experience with these matters. The current MCPP approach relies on a combination of the TC prototype implementation project, the TC's validation project, and the release of protocol parsers for licensees. Plaintiffs anticipate that Microsoft's protocol parser project will continue as scheduled. It may be possible to adjust the scope or nature of the TC's projects depending on the quality of the documentation and any alternative validation plans that Microsoft develops with the TC's input.[6]

_____

[6] The parties' recognized need to validate the revised version of the technical documentation will take into account the TC's experience to date in attempting to programmatically validate the existing documents. By way of summary, the TC has analyzed the data captured earlier this year in Microsoft's test labs in India and Redmond. The overall coverage of the MCPP protocols in this test data has turned out to be quite low. If the TC were to continue this project as originally planned, the TC would need to try to identify alternative sources of test data that would ensure adequate coverage of the complete set of protocols. Before deciding whether to pursue this approach, however, Plaintiffs wish to evaluate Microsoft's progress in rewriting the technical documentation. If Microsoft's approach proves viable, it is likely that Microsoft and the TC would work together to identify alternate validation efforts to replace the current plan, which emerged from Microsoft's original Troika project.

Microsoft will also move forward this year to create a new interoperability lab in which licensees can test and debug their protocols and obtain easy access to on-site Microsoft engineering assistance.  The lab will provide a testing facility, training, best practices, trouble-shooting and technical support for licensees working on the implementation of protocols using the MCPP documentation.  Microsoft will also sponsor "plug-fest" events, which take place regularly in the information technology sector and at which a variety of companies can test and debug their protocol implementations with the goal of improving interoperability.  Plaintiffs and Microsoft agree that these steps can promote interoperability.

3.    *Extension of the Final Judgments and Related Matters*

Even under the most optimistic scenario the proposed rewrite of the technical documentation will take a substantial period of time to complete.  In light of the protracted delays in resolving Plaintiffs' concerns with the technical documentation, Plaintiffs are convinced that it is necessary to extend the term of the Final Judgments as they relate to communications protocol licensing.  Microsoft has agreed to consent to a two-year extension of this part of the Final Judgments, which is of course subject to the Court's approval.[7]  Microsoft has also agreed that Plaintiffs may, in their sole discretion, apply to the Court in Fall 2009 for an additional extension of all or part of the extended provisions of the Final Judgments for a period of up to three

---

[7] Specifically, Sections I, II, III.E, III.I, III.J, IV, V, VI, VII, and VIII of the United States' and New York Group's Final Judgments, and the corresponding sections of the California Group's Final Judgment.

additional years (that is, potentially through November 11, 2012), and that Microsoft will not oppose such an extension.[8]

The extension should ensure that all necessary work on the documentation can be completed and that current and future MCPP licensees will have a substantial period of time to make use of the revised documentation. In that regard, Microsoft has also agreed that even if the Final Judgments expire completely in November 2009, it will continue, through November 11, 2012, to make the protocols included in the MCPP available for license on reasonable and non-discriminatory terms with a term of at least five years.[9] Thus, industry members will effectively have the ability to license protocols through at least November 11, 2017.

The parties are currently discussing the logistics of this extension of the Final Judgments and will in short order submit the necessary papers to the Court for its consideration. Plaintiffs wish to be clear that this agreed-upon extension is not a result of any belief on Plaintiffs' part that Microsoft has "engaged in a pattern of willful and systematic violations" of the Final Judgments as that term is used in Section V.B. Rather, the purpose of the extension is to ensure that Section III.E is given the opportunity to succeed for the period of time it was intended to cover.

Finally, Microsoft has agreed on two additional points that Plaintiffs believe will help ensure completion of Microsoft's rewrite of the technical documentation as quickly as possible.

---

[8] Plaintiffs' decision regarding this additional extension will be based upon an evaluation of Microsoft's performance in meeting its obligations under Section III.E and the extent to which the overall goals of Section III.E's communications protocol licensing program have been achieved. In making this decision, Plaintiffs will confer with each other and Microsoft prior to making any request to the Court to further extend the Final Judgments.

[9] Microsoft has advised Plaintiffs that it intends on a voluntary basis to make these and future Windows client/server protocols available for license as an ongoing part of Microsoft's regular product development and business processes.

First, as described above, Microsoft has informed the Plaintiffs that Robert Muglia, Senior Vice President for Microsoft's Server and Tools Business, has been assigned direct responsibility for managing the project to rewrite the technical documentation. Microsoft has further agreed that Mr. Muglia will continue in this capacity until the project is completed, and will be available to the Court to report on the effort at status conferences. Plaintiffs consider it very important that this project have the continuing attention of Mr. Muglia, who is an experienced, senior level engineer. Accordingly, with Microsoft's consent, the Plaintiffs intend to submit a proposed Order embodying this commitment. The proposed Order would direct Microsoft to maintain Mr. Muglia as the engineer responsible for the technical documentation rewrite project until further order of the Court or until the project is completed. The proposed Order would also require Microsoft to make Mr. Muglia available to update the Court on the project at Status Conferences and as otherwise needed.

Second, at Plaintiffs' request, Microsoft has agreed to offer an amendment to the MCPP license agreement containing an interim royalty credit for licensees. Under this amendment, beginning April 1, 2006, and continuing until the quarter in which Plaintiffs conclude that the technical documentation for all protocols licensed by a particular company is "substantially complete," Microsoft will provide that licensee with a 100% credit against all royalties owed prospectively under the MCPP. Licensees will still be required to report royalties accrued during this period, but will receive a full credit against the amount due. Under this amendment, during this period of the interim royalty credit licensees will also be asked to provide feedback and report any errors or technical deficiencies with the documentation that they uncover during their development processes, so that Microsoft will be able to improve the documentation; however, a

12

licensee's entitlement to this royalty credit will not be conditioned on actually finding any such issues with the documentation, only on reporting those issues that it does discover.

### B.  Section III.C and III.H (Competing Middleware and Defaults)

Plaintiffs, with the assistance of the TC and Mr. Hunt, continue to monitor developments regarding Windows Vista, Microsoft's successor to the Windows XP operating system, and Internet Explorer 7, to assure compliance with the Final Judgments.  This includes extensive testing by the TC of developmental builds and betas of these products.  This work also includes evaluating whether Vista may contain additional middleware applications subject to the relevant requirements of the Final Judgments, a subject that the TC is planning to discuss with Microsoft in the near future.  As reported in previous Joint Status Reports, the TC continues to discuss a number of middleware- and default-related matters with Microsoft, including: (1) the Set Program Access and Defaults feature currently contained in Windows XP and Windows 2000; (2) a new Vista feature knows as Program Defaults, which will, among other things, permit users to more easily select default applications for file types and manage their default middleware programs; and (3) the Most Frequently Used section of the Windows Start menu.  The TC is reviewing draft versions of the Windows Vista OEM Preinstallation Kit ("OPK"), which Microsoft provides to OEMs and which includes information on how OEMs may customize Vista.  The TC is also reviewing Microsoft's API disclosures.  Finally, the TC is revising its ISV middleware tool so that it will work with Windows Vista.

Plaintiffs studied the new search feature in Internet Explorer 7 and discussed its implications with Microsoft months before it was included in the beta versions released to consumers.  Internet Explorer 7 will include a new search box where users enter a query and then

view the search results in the web browser using the selected search engine (e.g. Google, Yahoo, MSN Search, or a host of others).  OEMs are allowed, under the Windows OPK, to set the default search engine when the machine is first sold to a user, and Internet Explorer 7 itself includes a relatively straightforward method for the user to select a different search engine from the initial system default.  Recent news reports, however, have focused on the selection of the default search engine when a user upgrades an existing computer to Internet Explorer 7.  Because Internet Explorer 6 does not contain such a prominent search engine box, in some cases the user or OEM may never have set a default search engine; in other cases, the OEM may have set the default search engine to Google, Yahoo, MSN Search, or another provider, or the user may have done so by installing one of the toolbars offered by these companies.  In this upgrade situation, Internet Explorer 7 preserves the user's existing search engine default or else uses MSN Search if no default has been set.  As Microsoft's implementation of the search feature respects users' and OEM's default choices and is easily changed, Plaintiffs have concluded their work on this matter.

Plaintiffs reported in the February 8, 2006 Joint Status Report that they had received a complaint regarding the ability of OEMs to customize the first-boot experience in Windows Vista. While Plaintiffs were still investigating the matter, Microsoft reached an accommodation that gives all OEMs additional flexibility to customize the first-boot experience and to promote non-Microsoft middleware.  Since this addressed the complainant's concerns and resolved any possible issue under the Final Judgments, Plaintiffs have closed their investigation of this complaint.

### C.    Complaints

Since the prior full Status Report, filed on October 19, 2005, twenty-one complaints have been received by the United States.  Twenty of the complaints were non-substantive and did not raise any issues regarding Microsoft's compliance with, or the United States' enforcement of, the Final Judgment.  Each of the non-substantive complaints received a simple response acknowledging their receipt.  The one complaint that could be considered substantive — relating to OEM customization of the first-boot experience in Windows Vista — is discussed above and was resolved by subsequent developments. The New York and California Groups do not believe that they have received any additional substantive complaints since the prior full Status Report.

## III.    UPDATE ON MICROSOFT'S COMPLIANCE WITH THE FINAL JUDGMENTS

In this section of the report, Microsoft focuses on its compliance work relating to Section III.E.  Also, as discussed by the Plaintiffs above, this section provides Microsoft's monthly update on its progress with the parser project and in supporting the TC's prototype implementation and validation projects.  In addition, this section briefly summarizes the activities of the compliance officers under the Final Judgments, as well as the complaints and inquiries received by Microsoft since the February 8, 2006 Joint Status Report.

### A.    Section III.E (Communications Protocols Licensing)

#### 1.    *MCPP Status Update*

One additional firm has executed a MCPP license since the February 8, 2006 Joint Status Report, bringing the total number of licensees to 26.  The new licensee, F5 Networks, Inc., has signed a license for the Proxy/Firewall/NAT task with restricted protocols.  F5 Networks, which is a globally recognized provider of application delivery networking technology, will be

able to use the protocols to enhance the performance and security of its systems.

In addition to these 26 licensees, two additional companies, Intel Corporation and Rapid7, Inc., have taken advantage of the royalty-free protocol license offered on MSDN, bringing the total number of royalty-free licensees to five. This brings the total number of companies making use of the program to 31, of which 12 are shipping products that currently require the payment of royalties under the MCPP.

2.    *Technical Documentation*

a.    *Current Status of Microsoft's Progress in Resolving Outstanding Bugs (through May 8, 2006)*

The following chart represents Microsoft's progress in resolving bugs on a monthly basis, beginning in February and through May 8, 2006.

| Bugs Opened-Closed-Outstanding | | | | |
|---|---|---|---|---|
| | Period Ended 2/8/2006 | Period Ended 3/16/2006 | Period Ended 4/14/2006 | Period Ended 5/8/2006 |
| **60-day bugs submitted by TC** | | | | |
| Submitted this period | | 3 | 11 | 14 |
| Closed this period | | 0 | 6 | 11 |
| Outstanding | 68 | 71 | 76 | 79 |
| **Other bugs submitted by TC** | | | | |
| Submitted this period | | 16 | 81 | 125 |
| Closed this period | | 287 | 79 | 28 |
| Outstanding | 507 | 236 | 238 | 335 |
| **TC subtotal outstanding** | 575 | 307 | 314 | 414 |
| **Bugs identified by MS** | | | | |
| Identified this period | | 182 | 155 | 118 |
| Closed this period | | 133 | 150 | 127 |
| Outstanding | 42 | 91 | 96 | 87 |
| **Total Outstanding** | 617 | 398 | 410 | 501 |

As of May 8, 2006, Microsoft had submitted 40 additional proposed fixes for 60-day bugs that the TC had not closed.  Since May 8, 2006, the TC has reviewed 30 of the proposed fixes, and has approved 20 of the fixes, closing the corresponding 60-day bugs.  As a result, the total number of outstanding 60-day bugs, which have been the main focus of Microsoft's bug resolution efforts, is now 58.  In addition, since May 8, Microsoft has closed 21 non-60-day bugs and 15 bugs identified by Microsoft.  As of the date of this report, the total number of outstanding bugs is now 450.

### b.  *Microsoft's Ongoing Documentation Efforts*

As described in the Plaintiffs' section of this report, the Plaintiffs, with the assistance of the TC and Mr. Hunt, have been focused on enhancing the level of quality and usability of technical information for MCPP licensees.  This has included a focus both on improving the quality of the MCPP technical documentation and the provision of additional technical assistance.  Microsoft supports these commitments.  The documentation efforts have included most recently a concentrated effort to address various design issues in the documents – termed "bugs" by Microsoft – and a broad range of testing and validation exercises.  The technical assistance steps have included offers by Microsoft to provide certain technical support free of charge and access to Windows source code.

While the parties have continued to pursue all of these efforts, Microsoft has concluded in recent weeks that an alternative approach would better improve the quality of the technical documentation.  As the Plaintiffs describe in greater detail, this would be to establish among all the parties and under the review of the TC and Mr. Hunt an over-arching specification that would govern the way in which all of the documents are written.  Such an approach, which would

involve new revisions of the documents to conform to such a specification, would enhance the quality and comprehensiveness of the documentation, perhaps most especially for current or potential licensees that are less familiar with features in Windows.

As indicated in the Plaintiffs' section of this report, it would also be desirable to achieve greater convergence among other elements of the MCPP and WSPP programs, such as technical testing and validation. Given the benefits that would flow for all concerned from a more common approach, the Plaintiffs and the TC will meet with the European Commission and the monitoring trustee, as well as with Microsoft. Microsoft strongly endorses an effort to create a common specification, or at least two specifications that are as consistent as possible, and it will make its senior engineers available to provide whatever information is needed to achieve this result. Microsoft's obligations and plans under the MCPP will not be dependent in any way on Plaintiffs' ability to reach such agreement with the European Commission.

In addition to the more immediate efforts discussed in the Plaintiffs' section of this report, the parties have also discussed the longer-term approach to Microsoft's documentation and licensing of Windows desktop communications protocols, in part with an eye to the expiration of the Judgments in November 2007. This discussion has focused on three elements. First, Microsoft is developing a new and ongoing engineering approach that will incorporate the documentation of new protocols as part of the process of creating new versions of Windows. One of the challenges associated with the MCPP documents has been the difficulty of documenting this technology after the fact, often after engineers who worked on the technology have stopped working on the protocols or even have left the company. Microsoft is developing an approach for new protocols that will incorporate the engineering work for protocol

18

documentation as an integrated part of the overall approach for software product development. This will enhance both the quality and efficiency of this work.

Second, Microsoft has indicated to the Plaintiffs that even after the expiration of the Judgments it will continue on a voluntary basis to document and license all the communications protocols in the Windows desktop operating system that communicate with the Windows server operating system. As the Court knows, Microsoft previously had committed to the Plaintiffs that it would license these protocols through November 2009. Microsoft has now committed to the Plaintiffs that it will continue to make the then-current and future protocols available for license through 2012 (with a license term of at least five years), and indicated that it intends on a voluntary and ongoing basis even after 2012 to continue to document and license future such protocols. This in effect will make this aspect of protocol licensing an ongoing part of Microsoft's regular product development and business processes.

As the Plaintiffs have described, Microsoft will also move forward this year to create – and after the decree's expiration will continue – a new interoperability lab in which licensees can test and de-bug their protocols and obtain easy access to on-site Microsoft engineering assistance. Microsoft will also sponsor regular "plug-fest" events at which companies can test and de-bug their protocol implementations. Plaintiffs and Microsoft agree that the effective and ongoing establishment of interoperability in practice requires more than solely the use of document specifications. This is especially true when, as is the case here, the goal is not to achieve interoperability with an overall specification, but rather with the specific Windows implementation of that specification.

Third, Microsoft recognizes that added time will be required to revise the technical

19

documentation and conform them to a new specification standard.  The Company also recognizes

the benefits associated with continued work by the plaintiffs, the TC, and Mr. Hunt, under the

Final Judgments of this Court, to assess and finalize an approach before the Final Judgments

expire and Microsoft continues this work on a voluntary basis.  As described in the Plaintiffs'

section of this report, Microsoft has therefore agreed to extend those sections of the Final

Judgments that are relevant to communications protocols and the associated work of the TC.

3.      *Technical documentation team staffing*

As discussed in the previous Monthly Status Report, and as referenced above in the

Plaintiffs' section of this report, Microsoft has augmented the executive oversight and

coordination and consultation with Microsoft's internal product development engineers.  This

involves, most notably, the direct involvement and oversight of Robert Muglia, the Senior Vice

President for Microsoft's Server and Tools Business.  As the Plaintiffs have indicated, Mr. Muglia

will continue to manage, oversee, and devote significant attention to the documentation effort on

a going forward basis.

In addition, Microsoft has also assigned additional senior product engineering team

managers to the project.  Altogether, more than 210 Microsoft employees and contingent staff are

involved in work on the technical documentation.  Of these, more than 150 product team

engineers and program managers are actively involved in the creation and review of the technical

content of the documentation.  In addition, there are 26 full-time employees and 29 contingent

staff working as technical writers, editors, and production technicians.  There are also more than

20 other technical architects, managers and other employees from the Windows product

development organization and the Competitive and Regulatory Affairs team who devote a

substantial amount of time and effort to the technical documentation and the MCPP in general. Significant attention and involvement in the technical documentation and the MCPP extend through all levels of the Microsoft organization and draw upon the resources of numerous product engineering, business, technical, and legal groups, as well as company management.

### 4. *Parser development efforts*

Microsoft's parser development and delivery efforts remain on schedule.  On April 28, 2006, Microsoft shipped the final version of Cluster One parsers and the preliminary version of Cluster Three parsers to the licensees.  In addition, Microsoft remains on schedule for the delivery of the remaining clusters of protocol parsers in pre-release (test) and final form.  Microsoft now has successfully delivered pre-release versions of the Netmon application and the pre-release versions of Cluster One, Cluster Two, and Cluster Three parsers, as well as the final version of Cluster One parsers, in accordance with the parser delivery schedule.

Based on its work to date, the Netmon team expects that the remaining parsers also will be delivered on time, according to the schedule below:[10]

---

[10] As described in the previous reports, several protocols have been moved between clusters due to various dependencies, a small number of protocols have been dropped for technical reasons, and we have now added two protocols.  Specifically, Rights Management Services, which was inadvertently omitted from the original schedule that was compiled by Microsoft and the TC, was added to Cluster Three.  Similarly, Direct Play v.4 was deemed to be in scope, and a parser for it has been added to Cluster Four. ActiveDataTablegram was moved from Cluster Three to Cluster Four.  Because of the changes, there are 21 protocols now planned for delivery in Cluster Four.

| Release Date | Pre-Released Protocols | Final Protocols |
|---|---|---|
| February 2006 | 21 | - |
| March 2006 | 23 | - |
| April 2006 | 19 | 21 |
| May 2006 | 19(21) | 23 |
| June 2006 | - | 19 |
| July 2006 | - | 19(21) |

The parser development and Netmon development teams now have a total of 40 members working at Microsoft's headquarters in Redmond, Washington, and its facilities in China.

     5.    *Microsoft's Cooperation with the TC's projects*

Microsoft remains on schedule to produce versions of the technical documentation containing changes to the XML markup in accordance with the schedule presented by Microsoft in the November 18, 2005 Supplemental Joint Status Report. Under that schedule (restated below), Microsoft delivered the latest round of technical documentation containing changes to the XML markup to the TC on May 1, 2006. Microsoft is on schedule to meet the remaining target dates.

| Target Date | Microsoft Deliverable | Date Delivered |
|---|---|---|
| End of January | 10% of MCPP protocols | February 1, 2006 |
| End of February | 25% of MCPP protocols | February 28, 2006 |
| End of March | 40% of MCPP protocols | March 14, 2006 |
| End of April | 60% of MCPP protocols | May 1, 2006 |
| End of May | 80% of MCPP protocols | N/A |
| End of June | 100% of MCPP protocols and 100% of the royalty-free documents | N/A |

Microsoft has five employees (including vendors) working full time on the XML markup.

B.      **Compliance Officers**

Since the Initial Status Report was filed on July 3, 2003, the compliance officers have

continued to ensure that newly-appointed Microsoft officers and directors receive copies of the

Final Judgments and related materials (ongoing), that Microsoft officers and directors receive

annual briefings on the meaning and requirements of the Final Judgments (annual training sessions

have been held for the most recent year in March and April 2006) and complete the required

certifications (completed February 2006), and that required compliance-related records are

maintained (ongoing).  In addition, the compliance officers are actively engaged in Microsoft's

extensive and ongoing training programs and commit to monitor matters pertaining to the Final

Judgments.

C.      **Complaints and Inquiries Received by Microsoft**

Microsoft has received five complaints or inquiries since the February 8, 2006 Status

Report.  None of these complaints or inquiries were related to any of Microsoft's compliance

obligations under the Final Judgments.

23

Dated: May 12, 2006

Respectfully submitted,

FOR THE STATES OF NEW YORK,
OHIO, ILLINOIS, KENTUCKY,
LOUISIANA, MARYLAND, MICHIGAN
NORTH CAROLINA, AND WISCONSIN

FOR THE UNITED STATES
DEPARTMENT OF JUSTICE'S
ANTITRUST DIVISION

_____

ELIOT SPITZER
*Attorney General of New York*
JAY L. HIMES
*Chief, Antitrust Bureau*
*Assistant Attorney General*
120 Broadway
New York, New York 10271
212/416-6229

_____

RENATA B. HESSE
PATRICIA A. BRINK
PHILIP A. GIORDANO
AARON D. HOAG
ADAM T. SEVERT
*Trial Attorneys*
U.S. Department of Justice
Antitrust Division
600 E Street, N.W.
Suite 9500
Washington, D.C. 20530
202/514-8276

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MASSACHUSETTS, MINNESOTA,
UTAH, AND THE DISTRICT OF COLUMBIA

_____

KATHLEEN FOOTE
*Senior Assistant Attorney General*
Office of the Attorney General of California
455 Golden Gate Avenue
Suite 11000
San Francisco, California 94102-3664
415/703-5555

24

FOR DEFENDANT MICROSOFT
CORPORATION


BRADFORD L. SMITH
MARY SNAPP
DAVID A. HEINER, JR.
Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052
425/936-8080

_____

CHARLES F. RULE
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania, Avenue, N.W.
Washington, DC 20004
202/639-7300

STEVE L. HOLLEY
RICHARD C. PEPPERMAN II
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
212/558-4000

*Counsel for Defendant*
*Microsoft Corporation*