**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | ███████████████ |
| Defendant. | |

**GOOGLE LLC'S RESPONSE TO PLAINTIFF STATES'**
**STATEMENT OF MATERIAL FACTS**
<u>**AS TO WHICH THERE IS NO GENUINE ISSUE**</u>

Defendant Google LLC ("Google") respectfully submits the following Response to Plaintiff States' Statement of Material Facts as to Which There is No Genuine Issue (ECF No. 465-1 (the "Statement"). The Response is being submitted in support of Google's Reply in Support of Its Motion for Summary Judgment in *State of Colorado, et al. v. Google LLC*, No. 120-cv-03715-APM.

Plaintiffs' Statement contains 199 paragraphs of purported factual assertions. Many are not material to Google's motion for summary judgment, and a number are not factual statements at all, but rather vague, ambiguous and/or abstract statements or conclusory expert opinions. A significant number of the immaterial statements are flatly inaccurate or the subject of heated factual dispute, and Plaintiffs' recitation rests on their selective interpretation of the record. Google therefore strongly disagrees with many of the assertions made by Plaintiffs. For the purposes of Google's motion for summary judgment, however, the Court need not wade into these disputes. Even assuming for purposes of this motion only that Plaintiffs' purported factual assertions are credited, Plaintiffs' arguments in opposition to Google's summary judgment motion fail. Google therefore has responded to many of Plaintiffs' statements as "Undisputed for purposes of this motion only." In doing so, Google expressly reserves its right to dispute the statement at trial or in any other proceeding. *See* Fed. R. Civ. P. 56(g) & Advisory Committee's Note to 2010 Amendment (noting "a party's ability to accept a fact for purposes of the [summary judgment] motion only").

## I.     INDUSTRY BACKGROUND[1]

### A.     U.S. General Search Markets

1.     Google Search is a general search engine, a website that responds to user queries

---

[1] Google repeats Plaintiffs' headings for convenience, but Google does not understand the headings to contain statements of fact requiring a response.

on any topic and provides results from a wide range of publicly available online information. Baker Opening Report ¶ 76 (Ex. 1); Gomes (Google) 9/24/20 Tr. 51:22-53:3 (Ex. 7); Gomes (Google) 12/10/21 Tr. 60:16-61:7 (Ex. 8); Google, "How Search works," https://www.google.com/search/howsearchworks/howsearch-works/organizing-information/ ("Every time you search, there are thousands, sometimes millions, of webpages or other content that might be a match."); Google SMF ¶ 2.

**Google's Response:**  Undisputed for purposes of this motion only.

2.      According to Google, Google Search "makes it easy to discover a broad range of information from a wide variety of sources." Google, Our approach to Search, https://www.google.com/search/howsearchworks/our-approach/ (Ex. 10).

**Google's Response:**  Undisputed.

3.      The "buyers" of general search services are users who provide their attention, data, and potential spending dollars to advertisers. Baker Opening Report ¶¶ 148-50, 193 (Ex. 1); Elzinga (Google Expert) Tr. 337:22-338:1 (Ex. 11).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

4.      The four leading U.S. general search firms today, based on user queries, are Google, Bing, Yahoo!, and DuckDuckGo. Others include AOL, Brave, Ecosia and Neeva. Baker Opening Report ¶¶ 86, 213 (Ex. 1); Gomes (Google) 12/10/21 Tr. 60:16-61:7 (Ex. 8).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

5.      Google market share in the U.S. general search services market, measured by either search queries or page views, is nearly 90% and has been more than 80% since 2012. Bing,

Google's closest competitor, has never had more than 11% market share since 2012. Baker Opening Report ¶¶ 220-21 & Table 16 (Ex. 1).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

6.      The information on a general search engine ("GSE") is collected by crawling and indexing websites throughout the internet, or by syndicating this data from another general search service that crawls and indexes. Google and Bing crawl and index the internet to generate their content, whereas DuckDuckGo and Yahoo! syndicate their search results from Bing. Baker Opening Report ¶¶ 76, 86, 214, 215 (Ex. 1); Answer to States' Complaint ¶¶ 63-64 (ECF No. 110); Nayak (Google) 10/28/21 Tr. 61:6-62:22 (Ex. 12); Google, "How Search works," https://www.google.com/search/howsearchworks/how-search-works/organizing-information/ (Ex. 9); Bing, "Why is My Site Not in the Index?," https://www.bing.com/webmasters/help/why-is-my-site-not-in-the-index-2141dfab (Ex. 13).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

7.      General search services supplement this information with "structured data" (*e.g.*, data indicating a hotel's availability and prices on different dates, or a plumber's service area and the hours when its office is open) acquired from third parties that is not available on the open internet. Baker Opening Report ¶¶ 76, 90, 215 (Ex. 1); ████████████████████████ (Ex. 14); Google, "How Search works," https://www.google.com/search/howsearchworks/ howsearch-works/organizing-information/ (Ex. 9); Google, "In-depth guide to how Google Search works," https://developers.google.com/search/docs/advanced/guidelines/how-search-works (Ex. 15).

**Google's Response:**   Undisputed for purposes of this motion only.

8.      The major general search companies derive nearly all of their search-related revenue from advertising. The only exception is Neeva, which is ad-free and generates revenue by selling subscriptions. Baker Opening Report ¶¶ 106, 218 (Ex. 1).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

9.      Most ads that appear on the search engine results page ("SERP") of the four leading U.S. general search companies are served by Google or Bing. Yahoo! and DuckDuckGo (the third and fourth largest GSEs) use Bing to serve their ads and share the resulting revenue with Bing. Baker Opening Report ¶ 111 (Ex. 1); Carlson, Nicholas, "Marissa Mayer redoes Yahoo's search deal with Microsoft, makes huge changes," *Business Insider*, April 16, 2015, https://www.businessinsider.com/yahoo-renews-microsoft-search-partnership-2015-4 (Ex. 16); Ramalingam (Yahoo!) 4/26/22 Tr. 160:13-18 (Ex. 17).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

10.     Google's market share of advertising revenue on general search services is over 91% and has been over 80% every year since at least 2012. Bing, Google's closest competitor, has held less than 10% share every year. Baker Opening Report ¶¶ 225-26 & Table 17 (Ex. 1).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

**B.      The Importance of Scale for Google**

11.     Today, Google's search engine typically receives more than ███████████ ████████████ in the U.S. and 89% of all search queries on general search firms ("GSFs") in the

4

U.S. Baker Opening Report ¶¶ 77, 220 & Table 16 (Ex. 1).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

12.   The vast number of search queries that Google receives provides it with scale, which helps it to better respond to future queries and to provide information faster and more accurately and to improve its algorithms. Baker Opening Report ¶ 142 (Ex. 1); Baker Reply Report ¶¶ 123-28 (Ex. 3); ██████████████████████████████████████ ██████ (Ex. 18).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

13.   More users running more queries also makes Google more appealing to advertisers because there is an increased likelihood that there are users who will be interested in the advertiser's product or service. Baker Opening Report ¶¶ 143-44 (Ex. 1); Elzinga (Google Expert) Tr. 337:22-338:10 (Ex. 11).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

14.   Many advertisers do not find it cost-effective to advertise on smaller GSEs with significantly smaller user bases due to the fixed costs of creating and managing an ad campaign. Baker Opening Report ¶ 145 (Ex. 1); ████████████████████████████ (Ex. 19); Competition & Markets Authority, "Online platforms and digital advertising, Market study final report," https://www.gov.uk/cma-cases/online-platforms-and-digital-advertising-market-study, p. 215 (Ex. 20).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is



immaterial to the resolution of the motion.

15.  ████████████████████████████████████████

████████████████████████████████████████████

████████████████ Baker Opening Report ¶ 147 (Ex. 1); ████████████████

████████████████ (Ex. 21); ████████████████████████ (Ex. 22); ████████████

████████████████ (Ex. 14).

**Google's Response:**  It is undisputed for purposes of this motion only ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

### C.     Google's Reliance on its Search Advertising Business

16.     In 2019, about ████ billion of Google's $74.8 billion total revenue in the U.S. (████)

was generated from Google Search advertising. Baker Opening Report ¶ 106 (Ex. 1); Baker

Rebuttal Report ¶ 67 n.173 (Ex. 2).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

17.     The vast majority of Google's ad revenue is from text ads, accounting for ████ of

all U.S. general search advertising spending on Google. Baker Opening Report ¶ 106 & Figure 7

(Ex. 1).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

18.   Google's search and search advertising operations have ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ Hammer (DOJ Expert) Opening Report ¶¶ 86-87 (Ex. 23).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

19.   For the last few years, Google reported operating profit margins of over ███ from its worldwide search business and projects ██████████████████████████ Hammer (DOJ Expert) Opening Report ¶ 89 (Ex. 23).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

20.   In 2020, Google's operating profits from general search advertising ██████████ ████████████████████████████████████████████████████ Hammer (DOJ Expert) Opening Report ¶ 72 (Ex. 23).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

21.   If users no longer came to Google Search to research and discover online destinations, then the sale of ads would collapse, threatening the search business with, as a Google document says, "irrelevance." GOOG-DOJ-02860873, -881-85 (Ex. 24).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is

immaterial to the resolution of the motion.

## II.      ELEMENTS OF GOOGLE'S SEARCH ENGINE RESULTS PAGE

22.      The below Figure 1 shows different elements that can appear on Google's SERP, in this example, for the query "plumbers chicago." *See* Baker Opening Report ¶ 96 (Ex. 1).

**Google's Response:**  Undisputed.

23.      The top of the SERP in Figure 1 displays paid ads specific to the local services commercial segment (or "vertical"). Baker Opening Report ¶¶ 96, 119-20 (Ex. 1). In this example, there are local services ads for three local plumbers. Beneath those, the SERP shows a paid text ad that takes a user to the advertiser's website when clicked. Below that is an example of Google's "universal" feature offering information (obtained from third parties) specific to the local search query. Baker Opening Report ¶¶ 6, 78, 82-84, 88, 91, 99, 126 & Figures 1-4 (Ex. 1); Holden (Google) Dep. Ex. 4 (Ex. 25); Holden (Google) Dep. Ex. 9 (Ex. 26); Fitzpatrick (Google) Dep. Ex. 14 (Ex. 27). Finally, near the bottom of the SERP is a familiar unpaid link (here for Yelp.com) commonly referred to as "blue links." Baker Opening Report ¶¶ 78, 89 (Ex. 1); Google SMF ¶ 3.

## Figure 1



**Google's Response:** Undisputed for purposes of this motion only, with the clarification that information in the local universal *may* be obtained from third parties. *See* Pls.' RSMF ¶ 157 (undisputed that information in the local universal "comes from licensed data feeds, crawling, user generated content, and information based on Google's interactions with a local place or business").

24.     The local services ads depicted in Figure 1 above are an example of Google's

9

vertically-focused search ads. Unlike text ads, vertically-focused search ads look less like algorithmic results and may include photos and information such as prices, customer ratings, and business hours. Baker Opening Report ¶ 101, 193 & Figure 3 (Ex. 1); Google SMF ¶¶ 5-6.

**Google's Response:**  Undisputed for purposes of this motion only.

25.     Google's vertically-focused search ads include product listing ads (also known as PLAs or shopping ads), local search ads, and hotel ads. Baker Opening Report ¶¶ 6, 104 (Ex. 1); █████████████████████████ (Ex. 28); Dischler (Google) Tr. 17:1-12 (Ex. 29); Google SMF ¶ 6.

**Google's Response:**  Undisputed for purposes of this motion only.

26.     Google has universals that can appear on its SERP for hotels, flights, shopping, and vacation rentals, among others. Baker Opening Report ¶¶ 6, 91, 99, 126 & Figures 1-4 (Ex. 1); Holden (Google) Dep. Ex. 4 (Ex. 25); Holden (Google) Dep. Ex. 9 (Ex. 26); Fitzpatrick (Google) Dep. Ex. 14 (Ex. 27); Google SMF ¶¶ 55, 99, 130, 186, 198.

**Google's Response:**  Undisputed for purposes of this motion only.

27.     Google has also developed its own specialized vertical sites that are separate but reachable from the SERP, such as the immersive and business listing (or detail) pages. Baker Opening Report ¶¶ 99, 126 (Ex. 1); Elzinga (Google Expert) Opening Report ¶¶ 146-47 (Ex. 30); Redeam, "A Timeline of Google's Advances in Travel," https://redeam.com/google-travel-timeline/ (Ex. 31); Google SMF ¶¶ 20-21.

**Google's Response:**  Undisputed for purposes of this motion only.

28.     According to Google's own expert, the immersive and detail pages are less prominent than the SERP's universals. Elzinga (Google Expert) Tr. 330:15-331:12, 333:7-16 (Ex. 11).

**Google's Response:**  Undisputed for purposes of this motion only.  *See* Elzinga (Google Expert) 11/8/22 Tr. 331:3-331:17 (Pls.' Ex. 11) ("Q:  I'm just wondering if there might be an area of agreement that in general pages linked to what I call the SRP have less prominence than the page that I call the SRP, and I mean by that, for example, the immersives, the property detail pages, the booking modules, and similar pages that are linked?  A:  Well, if by 'less prominence' you simply mean it takes one more click to get there, then that's consistent with my understanding.  By 'less prominence' I would not want to be locked into the view that the information on the immersive or what you claim to be off the SRP is not important to users.  It could be the most important information to users.").

29.    Users can reach Google's immersive page by clicking on the search universal. Baker Opening Report ¶¶ 13, 99 (Ex. 1); Holden (Google) 9/30/21 Tr. 86:21-87:6, 107:21-108:7, 252:15-253:3 (Ex. 32); Holden (Google) Dep. Ex. 4 (Ex. 25); Holden (Google) Dep. Ex. 5 (Ex. 33); Fitzpatrick (Google) Tr. 63:8-64:16 (Ex. 34); Fitzpatrick (Google) Dep. Ex. 2 (Ex. 35); Fitzpatrick (Google) Dep. Ex. 3 (Ex. 36); Google SMF ¶¶ 92 (hotels), 123 (flights).

**Google's Response:**  Undisputed for purposes of this motion only.

30.    In the hotels vertical, the immersive page displays ads alongside a map of the properties. An example of Google's hotel immersive is shown in Figure 2 below. Elzinga (Google) Opening Report ¶ 148 & Ex. 13 (Ex. 30); Holden (Google) 9/30/21 Tr. 107:21-108:21 (Ex. 32); Holden (Google) Dep. Ex. 5 (Ex. 33); Baker Opening Report ¶ 99 & Figure 5 (Ex. 1).

**Figure 2**



**Google's Response:**  It is undisputed that Figure 2 shows an example of Google's hotels immersive.  It is disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h) that the hotels immersive *necessarily* displays ads alongside a map of the properties.  It is undisputed that the hotel immersive *may* display ads, in addition to unpaid results.

31.     The business listing (or "detail") page (which, for hotels, offers additional

information and booking links such as links to the hotel site and to SVPs) is reachable from the immersive page or from the SERP itself. An example of a business listing page for a hotel is shown in Figure 3 below. Elzinga (Google Expert) Opening Report ¶¶ 146-47, 149 (Ex. 30); Redeam, "A Timeline of Google's Advances in Travel," https://redeam.com/google-travel- timeline/ (Ex. 31); Baker Opening Report ¶¶ 13, 99, 106 (Ex. 1); Holden (Google) 9/30/21 Tr. Ex. 116:23-117:22 (Ex. 32); Holden (Google) Dep. Ex. 5 (Ex. 33); Holden (Google) Dep. Ex. 6 (Ex. 37); Answer to States' Complaint ¶ 184 (ECF No. 110); Google SMF ¶¶ 95-96.

### Figure 3



**Google's Response:** Undisputed for purposes of this motion only.

32.     Google's SERP features also include information boxes, such as knowledge panels, that provide information on specific topics. An example of a knowledge panel is shown in Figure 4 below. Elzinga (Google Expert) Opening Report Exhibit 53 (Ex. 30); Baker Opening Report ¶¶ 6, 78 & Figure 4 (Ex. 1); Google, "About knowledge panels," https://support.google.com/knowledgepanel/answer/9163198?hl=en (Ex. 38); Google SMF ¶ 162.

**Figure 4**



**Google's Response:** Undisputed.

33.     Over time, Google has altered its SERP for commercial queries to increasingly

display Google's own search universals above the unpaid blue links. Baker Opening Report ¶¶ 284-285 & Table 23 & Figures 26-27 (Ex. 1); GOOG-DOJ-07548313, -314 (Ex. 39); Tinuiti.com, "Google Algorithm Updates History & Timeline (2000-2021)," https://tinuiti.com/blog/seo/google-algorithm-updates-history-timeline/ (Ex. 40); ████████ ████████ (Ex. 41); Google Ads and Commerce Blog, "Google Hotel Ads joins Google Ads," https://www.blog.google/products/ads/hotel-campaigns/ (Ex. 42); RevLocal, "What's Up With Google's Local Services Ads?" https://www.revlocal.com/resources/library/blog/whats-up- with-googles-local-service-ads (Ex. 43); BlueCorona.com, "What are Google Local Service Ads? Everything You Need to Know," https://www.bluecorona.com/blog/google-local-services- ads/ (Ex. 44); ████████ (Ex. 45).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

34.     For many commercial searches, blue links appear "below the fold," meaning a user must scroll down to see the links. Braddi (Google) Tr. 296:16-25 (Ex. 46); Baker Opening Report ¶ 82, n. 17 (Ex. 1); Baker Rebuttal Report ¶ 54 n. 136 (Ex. 2).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

35.     Search users read the SERP from top down and are less likely to click links that appear lower on the page, particularly when they are below the fold. Baker Opening Report ¶ 286 & Table 24 (Ex. 1); Baker Rebuttal Report ¶ 54, n. 136 (Ex. 2); GOOG-DOJ-15860312, - 331-38 (Ex. 47).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

36.  ███████████████████████████████████████████████████

███████████.  Baker Rebuttal Report ¶¶ 21-26, 54, Table 1 & Figure 2 (Ex. 2).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  The "click-through" rates as calculated by Professor Baker are not an accurate proxy for user satisfaction.  As Professor Baker conceded, they do not, for example, reflect whether the user received the information they were looking for from the specialized unit on the SERP, without having to interact further with (*i.e.*, click on) the unit.  Google's Ex. 117 (Baker Tr.) at 166:3-168:19.  This statement is immaterial to the resolution of the motion.

37.  ███████████████████████████████████████████████████

███████████████████.  Baker Opening Report ¶¶ 287-88 & Table 25 (Ex. 1).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

38.  Google's own expert admits uncertainty as to the accuracy of his analysis of the extent to which users click on the universals. Elzinga (Google Expert) Tr. 145:2-16 ("What's the real number? I'm not sure . . . Could it appear somewhere in between Professor Baker's estimates and mine? Perhaps it does.") (Ex. 11).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  This statement is immaterial to the resolution of the motion.

## III.  GOOGLE'S SEARCH DISTRIBUTION AGREEMENTS

39.  For years, Google has entered into a series of contracts with smartphone manufacturers (most notably Apple), mobile carriers (including ███████ and ███████), and companies that provide Internet browsers to ensure that Google is the default GSE. Baker

16

Opening Report ¶¶ 248-49 & Table 20 (Ex. 1); Baker Reply Report ¶ 113 (Ex. 3); Answer to

States' Complaint ¶ 43 (ECF No. 110).

    **Google's Response:**  Undisputed for purposes of this motion only.

    40.    Google has exclusive Revenue Share Agreements (RSAs) with manufacturers and

carriers to pre-install Google as the default search on search access points. Baker Opening Report

¶ 249 (Ex. 1); Davies (DOJ Expert) Opening Report ¶¶ 77-80 (Ex. 48); Varian (Google) 3/1/22 Tr.

268:12-25 (Ex. 49); Rosenberg (Google) 12/13/21 Tr. 39:11-40:18 (Ex. 50);



    **Google's Response:**  Undisputed for purposes of this motion only.

    41.    Google has had an exclusive pre-installation default arrangement with ▮▮▮ since

at least 2005 and has had exclusive pre-installation default arrangements with ▮▮▮ and ▮▮▮

since at least 2010. Baker Opening Report ¶ 250 (Ex. 1); Answer to States' Complaint ¶ 107 (ECF

No. 110); GOOG-DOJ-02696817, 817-19 (Ex. 54); ▮▮▮▮▮▮▮▮▮▮ (Ex. 55);

▮▮▮▮▮▮▮ (Ex. 56); ▮▮▮▮▮▮▮▮▮ (Ex. 57).

    **Google's Response:**  Undisputed for purposes of this motion only.

    42.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████ (Ex. 56).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

43.     Google has Mobile Application Distribution Agreements (MADAs) with manufacturers of Android devices that license a suite of Google applications. Baker Opening Report ¶ 249 (Ex. 1); Rosenberg (Google) 12/13/21 Tr. 37:3-38:5 (Ex. 50). Examples of MADAs include GOOG-DOJ-02697863 (Ex. 60), GOOG-DOJ-02698052 (Ex. 61), GOOG-DOJ-02697939 (Ex. 62).

**Google's Response:**  Undisputed for purposes of this motion only.

44.     MADAs require a full bundle of Google applications to be present on the default home page screen in specified locations as a condition for permission to distribute devices with any of those applications. Baker Opening Report ¶ 249 (Ex. 1); Davies (DOJ Expert) Opening Report ¶¶ 67-70 (Ex. 48); Answer to States' Complaint ¶¶ 118-21 (ECF No. 110); Rosenberg (Google) Tr. 29:19-37:8 (Ex. 50); Pichai (Google) 4/5/22 Tr. 52:3-6, 169:17-170:10 (Ex. 63); GOOG-DOJ-02698052, -055, -057-58 (████████████████████) (Ex. 61); GOOG-DOJ-02697863, -867-68, -871-72 (████████████████████) (Ex. 60); GOOG-DOJ-02697939, -944, -948-49 (████████████████████) (Ex. 62).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

45.     The MADAs require smartphone manufacturers to sign an Anti-Fragmentation Agreement (AFA) or its successor Android Compatibility Commitment (ACC). This contract prohibits manufacturers from distributing devices that do not comply with detailed hardware and software specifications, which Google can unilaterally alter. Davies (DOJ Expert) Opening Report

¶ 63 (Ex. 48); Answer to States' Complaint ¶¶ 115-16 (ECF No. 110); GOOG-DOJ- 02698052, -055 (███████████████████████) (Ex. 61); GOOGDOJ-02697863, -867–68 (███ ███████████████████) (Ex. 60); GOOG-DOJ-02697939, -944 (█████████████████ ██) (Ex. 62); GOOG-DOJ-02698102, -107 (████████████████████) (Ex. 64); GOOG-DOJ-02697362, -362-63 (███████████████████) (Ex. 65); GOOG-DOJ-10988553, -553-544 (██████████████████) (Ex. 66); GOOG-DOJ-28380959, -967 (Ex. 67).

    **Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

    46.   ████████████████████████████████████████████████████ ████████████████. Davies (DOJ Expert) Opening Report ¶ 63 (Ex. 48); Answer to States' Complaint ¶¶ 116 (ECF No. 110); GOOG-DOJ-12878269 (█████████) (Ex. 68); GOOG-DOJ-02698257 (█████████████) (Ex. 69); GOOG-DOJ-02697362 (████████████████) (Ex. 65); GOOG-DOJ-20955686 (██████████████████████) (Ex. 70).

    **Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

    47.   Since 2014, Google paid almost ████████ to smartphone manufacturers, mobile carriers, browsers and other Android partners to ensure that Google Search is the pre-installed default, including ████████████ alone. Baker Opening Report ¶ 251 & Table 21 (Ex. 1); Rangel (DOJ Expert) Opening Report ¶ 112 (Ex. 71); Porat (Google) Tr. 28:21-25 (Ex. 72); █████████████████████ (Ex. 73); GOOG-DOJ-28350201, -204 (Ex. 74); ████ ██████████████ (Ex. 56); █████████████████ (Ex. 55).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

48.     The largest payments were to ███████, to which Google paid over ████████ ████████████████████████████.  Baker Opening Report ¶ 251 & Table 21 (Ex. 1); Answer to States' Complaint ¶ 108 (ECF No. 110).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

49.     Google makes these ████████ payments each year to lock in Google's default pre-installation status because, as Google's own documents confirm, consumers tend to retain defaults settings. Baker Opening Report ¶ 256 (Ex. 1); Rangel (DOJ Expert) Opening Report ¶¶ 61-97 (Ex. 71); Answer to DOJ Pls.' Complaint ¶ 47 (ECF No. 87) ("Google admits that attaining a preinstalled search access point, depending on the setting, can encourage utilization of a service"); Varian (Google) Tr. 268:4-269:19 (Ex. 49).

**Google's Response:**  Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

50.     For example, a Google study of default home pages found that "[m]ost users stay with pre-configured home page settings" and "do not always make an active, deliberate choice of a [search engine]." Google found that if it lost home page settings, it could lose "a big share" to competitors. Baker Opening Report ¶ 257 (Ex. 1); Rangel (DOJ Expert) Opening Report ¶¶ 68, 96 (Ex. 71); GOOG-DOJ-05756467, -482, -484, -485 (Ex. 75); Varian (Google) Tr. 282:9-286:3 (Ex. 49).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

51.     Likewise, another Google analysis predicted that Google would lose ███████

████████████████████████████████████████████████████████████████████████

████████. Baker Opening Report ¶ 259 (Ex. 1); GOOG-DOJ-17461385, -412 (Ex. 76).

**Google's Response:**   Disputed as not supported by the evidence as required by Federal
Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).   The cited document includes a slide
reflecting calculations based on assumptions including, among other things, ██████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

This statement is immaterial to the resolution of the motion.

52.     There are numerous examples of this effect: ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████ Baker Opening Report ¶ 259 (Ex. 1); Rangel (DOJ Expert) Opening Report ¶¶ 104-
11 (Ex. 71); Roszak (Google) 1/11/22 Tr. 69:22-70:16, 92:10-95:14 (Ex. 77); GOOG-DOJ-
09088910, -921 (Ex. 78).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is
immaterial to the resolution of the motion.

53.     Microsoft projected that if Apple changed its pre-installed default search engine
from Google to Bing, then ██████ of search queries would stay on Bing. Baker Opening Report ¶¶
258 (Ex. 1); ███████████████████████████████████ (Ex. 22); ████████████████████████

████████████████ (Ex. 18).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

54.   It would be irrational for Google to pay ████████████ a year for default placement if it did not believe that being the default had a powerful effect of steering users to Google and away from competitors, and was a profitable business decision.  Rangel  (DOJ Expert) Opening Report ¶¶ 112-13 (Ex. 71); Israel (Google Expert) Tr. 448:16-22 (Ex. 79); Levine (Google) Tr. 233:18-240:6 (Ex. 80); Porat (Google) Tr. 27:9-28:4, 29:19-30:1 (Ex. 72).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

55.   In  2021,  ████  of  mobile  general  search  queries  were  covered  by  Google's agreement with Apple. This figure increased ████████████████ as has the overall percentage of search queries that are made on mobile devices. Baker Opening Report ¶ 252 & Figure 16 (Ex. 1); Answer to DOJ Complaint ¶ 121 (ECF No. 87).

**Google's Response:**   Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

56.   ███████████████████████████████████████████████
███████████████████████████████████ (Ex. 81); ███████████
███████████████████████ (Ex. 82); ██████████████████ (Ex. 83); Baker Reply Report ¶ 111 (Ex. 3).

**Google's Response:**   Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

57.   ███████████████████████████████████████████████
███████████████████████████████████████████████

███ (Ex. 82); Baker Reply Report ¶ 111 (Ex. 3).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████  This statement is immaterial to the resolution of the motion.

58.     Faced with the prospect of entry of a new, credible competitor, ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████.  Baker Reply Report ¶¶ 6, 111 & Figure 5 (Ex. 3).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  The

cited evidence does not support the notion that ████████████████████████████

████████████████████

59.     Apple has worked with specialized vertical provider ("SVP") partners in the past to

provide SVP-branded travel and local content for Apple Maps. Apple Maps showing TripAdvisor,

Booking.com reviews in search results (Apr. 6, 2015) https://appleinsider.com/articles/15/04/06/ apple-maps-showing-tripadvisor-bookingcom-reviews-in-search-results   (Ex.   84);   Verifying Information on Yelp for Apple Maps (Feb. 24, 2022) https://newmediaretailer.com/verifying-information-on-yelp-for-apple-maps/   (Ex.   85);   Apple   Maps   integrating   TripAdvisor   and Booking.com hotel reviews in results (Mar. 1, 2018) https://www.imore.com/apple-maps-integrating-tripadvisor-and-bookingcom-reviews-results (Ex. 86); ███████████████████████ ████ (Ex. 87).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

60.   ████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████ Baker Reply Report ¶ 190 (Ex. 3); DuckDuckGo, "Anonymous Localized Results," https://help.duckduckgo.com/duckduckgo-help-pages/privacy/anonymous-localized-results/ (Ex. 88); GOOG-DOJ-13115029, -039 (Ex. 89); GOOG-DOJ-17642826, -827 (Ex. 90); ████████████████████████ (Ex. 91); █ ██████████████████████ (Ex. 82); Harrison (Google) 3/10/22 Tr. 312:3-25 (Ex. 92).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

61.   Between the Apple agreement and Android agreements, ████ of mobile general search queries in 2021 were covered by Google's agreements. Baker Opening Report ¶ 253 & Figure 17 (Ex. 1).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

62.    Adding queries made through Google's Chrome browser and its Search App, which also use Google as the default, brings the percentage of all mobile and desktop general search queries controlled by a Google default to ███ as of 2021. Baker Opening Report ¶ 255 & Figure 19 (Ex. 1).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

63.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  Baker Reply Report ¶ 188 (Ex. 3); █████████████

████ (Ex. 93).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

64.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████  ██████████████  (Ex. 94); ███████████  (Ex. 95).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

65.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ (Ex. 96); ██████████ (Ex. 97).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

66.    OEMs (e.g., ████) and carriers (e.g., ████████ and ████) sought to install ████ on their devices, because, in the words of ██████████████ ████████████████████████████ (Ex. 56); ████ ████████████████████ (Ex. 93); ████████████████ ████ (Ex. 55) (considered partnership with ████ and Bing together); ████████ ████████ (sought ████ partnership because it would ██████████ ████) (Ex. 98); ████████████ viewed ██████████████) (Ex. 99).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

67.    As early as 2015, Google recognized that ████ technology could "unseat them" Google. GOOG-DOJ-07896399, -408 (Ex. 100).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  The quoted language is from a *New York Times* article that is quoted in a Google document.  This statement is immaterial to the resolution of the motion.

68.    Google understood that ████ could address ██████████████ ████ GOOG-DOJ-21824751 (Ex. 101).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

69.    Google used the importance of its revenue share agreements to hamper ████ potential partnerships. ████ understood from Google that installing ████ would jeopardize their revenue share payment. ██████████████████ (Ex. 55).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

70.    When ███████ sought to include ███████ technology on its phones, ███████ ██████████████████████████████████████████████████████████████████ ████████████████████████████ Baker Reply Report ¶ 189 (Ex. 3); *compare* GOOG-DOJ-21716020, -021 (████████████████████████████████████████) *with* GOOG-DOJ-21682392, -394 (████████████████████████████████████) (Ex. 51); ██████████████ (Ex. 102); ████████████████ (Ex. 103); ████████████ (Ex. 104).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

71.    Google insisted that ███████ partnering with ███████ would violate the revenue share agreements if ███████ technology had *any* access to content on the internet. Google also indicated to ███████ it wanted this restriction to apply retroactively and refused to allow any carve-out for ███████. ████████████████ (Ex. 103).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

72.    According to ███████, Google ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ (Ex. 103); ████████████ (Ex. 105).

**Google's Response:**  It is undisputed that Statement 72 accurately quotes from Plaintiffs' Exhibits 103 and 105.  This statement is immaterial to the resolution of the motion.

73.    Other manufacturers and carriers installed a similarly restricted version of ███████ technology to avoid violating Google RSAs. ████████████████ (Ex. 106); ████████████

███████████ (Ex. 107); ███████████████ (Ex. 108); █████████████████████

██████████████ (Ex. 109); ████████████████████ (Ex. 110); ██████████████

██████ (Ex. 111).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

74.   To avoid revenue share concerns, those mobile devices with ██████████████████

████████████████████████████████████████████████████████████████████████

(Ex. 93).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

## IV.   GOOGLE'S SEM TOOL SA360

75.   Advertisers use two primary methods to bid in ad auctions and place search ads: native advertising tools and search engine marketing (SEM) tools.  Native advertising tools allow advertisers to place ads with one specific GSE.  Google's native tool is Google Ads and Bing's is Microsoft Ads.  Baker Opening Report ¶¶ 111, 113 (Ex. 1); Amaldoss Opening Report ¶¶ 245 (Ex. 5); ██████████████████████ (Ex. 112); Answer to States' Complaint ¶ 146 (ECF No. 110); Google SMF ¶ 243(b)-(c).

**Google's Response:**  Undisputed for purposes of this motion only.

76.   SEM tools allow advertisers to plan and manage search advertising campaigns across multiple GSEs.  Baker Opening Report ¶ 113 (Ex. 1); Amaldoss Reply Report ¶¶ 123-25 (Ex. 6); █████████████████████ (Ex. 28); Answer to States' Complaint ¶¶ 49, 145 (ECF   No.   110);   Google,   "Product   Overview:   Search   Ads   360,"

https://services.google.com/fh/files/misc/search_ads_360_product_overview.pdf     (Ex.     113);

Google SMF ¶¶ 252-53.

**Google's Response:**  Undisputed.

77.    Google's SEM tool is called SA360; other competitors are Marin, Skai (formerly

Kenshoo) and Adobe.  Amaldoss Opening Report ¶¶ 249-50 (Ex. 5); Google SMF ¶¶ 243(c), 252.

**Google's Response:**  Undisputed.

78.    When an advertiser places ads through an SEM tool, including SA360, the tool

earns a commission on the dollars it manages.  Baker Opening Report ¶ 115 (Ex. 1).

**Google Response:**  Undisputed for purposes of this motion only.

79.    In 2020, about one-third of the revenues from the sale of general search ads flow

through the four major SEM tools (SA360, Marin, Skai and Adobe).  Baker Opening Report ¶ 118

(Ex. 1).

**Google Response:**  Undisputed for purposes of this motion only.

80.    SA360 is by far the most used SEM tool. In 2020, SA360 accounted for ████ of

general search ad revenue from SEM tools, up from ████ in 2016.  Baker Opening Report ¶ 118,

Table 4 (Ex. 1); Amaldoss Opening Report ¶¶ 249-51 (Ex. 5); GOOG-NE-02536183, -187, -194

(Ex. 114) ("SA360 is the #1 SEM tool and larger than all other tools combined"); GOOG-DOJ-

24816888, -888 (Ex. 115); ████████████████████████████ (Ex. 21); GOOG-DOJ-

06262890, -892 (Ex. 116); ███████████████████ (Ex. 117).

**Google Response:**  Undisputed for purposes of this motion only.

81.    SEM tools are popular because they save advertisers time and effort by allowing

them to use a single product to manage and compare ad campaigns across multiple native tools,

evaluate the relative performance of ad campaigns across multiple platforms, and use powerful tools

to assist with ad placement and bidding strategies.  Baker Opening Report ¶ 144 (Ex. 1); Amaldoss

Opening Report ¶¶ 249, 253-54 (Ex. 5); Answer to States' Complaint ¶ 157 (ECF No. 110); ██████

███████████████████████████ (Ex. 28); ███████████████████ (Ex. 118);

██████████████████ (Ex. 112); ███████████████████ (Ex. 117); Krueger

(Google) Tr. 141:11-142:1 (Ex. 119); Kachachi (Google) Tr. 62:1-13 (Ex. 120); GOOG-DOJ-

23028616, -616 (Ex. 121); █████████████████ (Ex. 122).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.



**Google's Response:**  Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

83.    SEM tools, and particularly SA360, are also competitively important for rival

general search firms because they provide an efficient means to attract advertisers that would not

otherwise invest in using the rival general search firm's native tool to place ads. ████████████

████████████ (Ex. 117); ██████████████████████████████ (Ex. 22).

**Google's Response:**  It is undisputed for purposes of this motion only that Microsoft views

SEM tools as important, and that SEM tools provide a means to attract advertisers that would not

otherwise invest in using a rival search firm's native tool to place ads, but disputed whether SEM

tools provide an "efficient" means to do so as not supported by the evidence as required by Federal

Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).

84.     Advertisers rarely switch between SEM tools because it requires significant investments of time, effort and expense.  Amaldoss Opening Report ¶¶ 257, 291 (Ex. 5); ███████ ███████████████████████████████ (Ex. 117).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Neither of the sources cited provide record support for the statement that advertisers "rarely switch between SEM tools because it requires significant time, effort and expense," nor do Plaintiffs cite any evidence from advertisers declining to switch from one SEM tool to another for these reasons.  *See* Amaldoss (Colo. Pls.' Expert) Opening Report ¶ 257 n.478 (Pls.' Ex. 5) (██████████████████████████████ ███████████████████████████████████████████); *see also id.* n.483 (████████████████████████████████████████████ ██████████; *id.* ¶ 291 (Amaldoss opining that "[n]otwithstanding that some the SA360 customers described above have . . . switched away from SA360 to another SEM tool . . .").  ███ ███████████████████████████████████████████████████████ ████████████████████████████████████████████. *See also* Pls.' Resp. to Google's SMF ("Pls.' RSMF") ¶¶ 257-58 (undisputed evidence of specific advertisers that have switched between SEM tools).

85.     ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████ (Ex. 124).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  Statement 85 omits relevant content from Plaintiffs' Exhibit 124, ████████████████████████ ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

86. ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████ (Ex. 28).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████

87.    For ████████████████████████████████████████████████

██████████████████████████████████ (Ex. 118); Amaldoss Opening Report ¶ 257 (Ex. 5); Amaldoss Reply Report ¶ 125 (Ex. 6).

**Google's Response:**  Undisputed for purposes of this motion only.

88.    In addition, it is costly for an advertiser to use an SEM tool other than SA360 exclusively because Google integrates all Google Ad features into SA360, but not necessarily into competing SEM tools.  GOOG-NE-02536183, -188 (Ex. 114); ████████████████████████

████████████████ (Ex. 125); Kachachi (Google) Tr. 155:7-156:6 (Ex. 120); ████████████████

██████████████████████████████████████████████████████████

████████████ (Ex. 126).

**Google's Response:**  It is undisputed for purposes of this motion only that an advertiser that uses SA360 and another SEM tool may pay an additional fee for using that second tool, with

the clarification that the sources cited by Plaintiffs do not estimate that cost. Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h) that "Google integrates all Google Ads features into SA360." ████████████████



89.    It is nearly impossible for online marketers to avoid advertising on Google due to Google's dominance in general search, making use of SA360 vital. Baker Opening Report ¶¶ 227, 303 (Ex. 1); GOOG-DOJ-24793794, -801 (Ex. 127); ██████████████████████ (Ex. 128); ███████████████████ (Ex. 129); ██████████████████████ ████████ (Ex. 130); ████████████████ (Ex. 131); ████████████████ ████████ (Ex. 28); ██████████████████████████ (Ex. 21).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  None of the sources cited supports the claim that the use of SA360 is "vital."  *See* Pls.' RSMF ¶ 243 (undisputed that "advertisers may purchase general search text advertising and general search advertising directly from general search engines, such as Google or Microsoft from their 'native tools' or 'user interface' ('UI') or using SEM tools").

90.    Using  multiple  SEM  tools  concurrently  is  ████████████████████ ██████████████████████████████████████████

 (Ex. 28); Amaldoss Reply Report ¶ 127 (Ex. 6); ▮▮▮▮▮▮▮▮▮▮▮ (Ex. 126).

**Google's Response:**  It is undisputed for purposes of this motion only that there may be some cost associated with using multiple SEM tools concurrently, with clarification. ▮▮▮▮▮▮

91.    The use of multiple SEM tools contravenes the tools' very purpose, which as Google explains is to "allow[] buyers to manage and track digital campaigns across a single platform."                Google,         "Search         Ads         360         Overview," https://support.google.com/searchads/answer/1187512 (Ex. 132).

**Google's Response:**  It is undisputed for purposes of this motion only that Plaintiffs' Exhibit 132 contains the quoted language.  The remainder of the statement is unsupported by any cited evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  This statement is immaterial to the resolution of the motion.

A.      **Google's Conflicted Position in the U.S. Advertising Market**

92.      SA360 was previously called DoubleClick, which Google acquired in 2008. News from Google, Google Closes Acquisition of DoubleClick (Ex. 133); Google SMF ¶ 252.

**Google's Response:**   Undisputed, with clarification that SA360 was previously called DoubleClick Search.  *See* Pls.' RSMF ¶ 252.

93.      Through its ownership of SA360, Google has conflicting interests, *i.e.* Google's SEM tool purports to assist advertisers in optimizing their purchase of ads, including ads that Google itself is selling.  No other SEM tool provider has this conflict.  Amaldoss Opening Report ¶ 252 (Ex. 5); Israel (Google Expert) Tr. 321:20-322:3 (Ex. 79); Kachachi (Google) Tr. 68:24-69:7 (Ex. 120); ▉▉▉▉▉▉▉▉▉▉▉▉ (Ex. 112).

**Google's Response:**   It is undisputed that Marin, Skai, and Adobe do not operate search engines, ▉▉▉▉▉▉▉▉▉▉.  Statement 93 is otherwise disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  This statement is immaterial to the resolution of the motion.

94.      In the years after Google acquired DoubleClick, ▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉; *see also id.* ▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉ (Ex. 134); Amaldoss Opening Report ¶ 259 (Ex. 5); GOOG-DOJ-27571830, -031 (Ex. 135) (2011 Google sales presentation: "We believe in

analytics-based marketing – on Google, Bing, Yahoo, ███████████████████████ ”);
GOOG-DOJ-11574718, -721 (Ex. 136).

**Google's Response:** Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

95. Google has represented repeatedly that SA360 offers functionality and interoperability across ad platforms in an attempt to avoid the perception that it was favoring its own GSE over competitors. Amaldoss Opening Report ¶¶ 260-61 (Ex. 5); ██████████████ ███████████████ (Ex. 134); GOOG-DOJ-24873894, -905, -908 (Ex. 251).

**Google's Response:** It is undisputed that SA360 allows advertisers to manage ad campaigns across ad platforms. Statement 95 is otherwise disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). None of the cited sources addresses the reasons or rationales for any of Google's representations about SA360, and none suggests that Google has made any representations "to avoid the perception that it was favoring its own GSE over competitors." Plaintiffs also fail to cite any record evidence that Google "favor[s] its own GSE over competitors." This statement is immaterial to the resolution of the motion.

96. By Google's own admission, it "prioritizes Google features" on SA360 and ensures that "SA360 is first to market on key Google Ads features," while failing or delaying integration of these key features on competing search platforms including Microsoft Ads. GOOG-NE-02536183, -186 (Ex. 114); GOOG-DOJ-24814854, -856 (Ex. 252); Amaldoss Opening Report ¶ 280 & Table 2 (Ex. 5); ████████████████ (Ex. 125).

**Google's Response:** It is undisputed that Plaintiffs' Exhibit 114 contains the quoted text in the first sentence of Statement 96. It is disputed that Google admits "failing or delaying

integration of these key features on competing search platforms including Microsoft Ads," as a result of prioritization of Google's features on SA360 as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  *See also* Pls.' RSMF ¶ 299 (undisputed that "Microsoft Ads features are not always available at the time parallel features are released for Google Ads, which results in support on SA360 for those Microsoft features lagging behind support on SA360 for the parallel Google features.  A Bing feature equivalent was not always available when SA360 integrated each Google Ads feature it supports.  For example, ████████████████████████████████████████████████████████████████) (internal citations omitted).  This statement is immaterial to the resolution of the motion.

97. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

**Google's Response:**  It is undisputed that Plaintiffs' Exhibits 137 and 139 contain the phrase "day zero support," with clarification.  In February 2022, Google launched its new SA360 platform, which provides immediate support for most new Google features.  ████████████████
████████████████████████████████████████████  This statement is immaterial to the resolution of the motion.

98. ████████████████████████████████████  ████████████
████████████████████████████████████████

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.
████████████████████████████████████████████████
████████████████████████████  This statement is immaterial to the resolution of the motion.

99.   ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

**Google's Response:**   It is undisputed that Plaintiffs' Ex. 114 reflects the statement that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████   GOOG-NE-02536183, -186 (Pls.' Ex. 114).  It is undisputed that Plaintiffs' Ex. 114

also states ████████████████████████████████████  *Id.* at -195.  It is

undisputed that Plaintiffs' Ex. 115 reflects the statement ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████   GOOG-DOJ-24816888, -888 (Pls.'

Ex. 115) (emphasis added).  It is undisputed that Plaintiffs' Ex. 115 states ██████████████

████████████████████████████████████████████████████

███████████████████████████   *Id.*  It is undisputed that Plaintiffs' Ex. 142

states that Google offers the platform "to manage large accounts across multiple search engines,"

and that "a number of other companies provide similar solutions."  It is undisputed that Plaintiffs'

Ex. 143 states ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████   GOOG-DOJ-24764237, -237 (Pls.' Ex. 143).  Statement 99 is

otherwise disputed as not supported by the evidence as required by Federal Rule of Civil Procedure

56(c)(1) and Local Rule 7(h).

100.     Major advertisers have expressed 

Amaldoss Opening Report ¶ 287 (Ex. 5); GOOG-DOJ-31491195, -195 (Ex. 144); Indacochea (Google) Tr. 141:14-142:2 (Ex. 145); ███████████████████ (Ex. 28); ███████████ (Ex. 146); GOOG-DOJ-24807903, -903, - 904, -906 (Ex. 147); GOOG-DOJ-31541191, -193 (Ex. 148); ███████████ (Ex. 255); GOOG-DOJ-24765189, -189 (SA360 does not support "Basic bing functions") (Ex. 149).

**Google's Response:**   Undisputed for purposes of this motion only, with regard to two advertisers (█████████████).

### B.     SA360 Feature Disparity for Auction-Time Bidding

101.     Since 2019, SA360 has supported a key feature called auction-time bidding on Google Ads, but not on Microsoft Ads.  Amaldoss Opening Report ¶ 280 (Ex. 5); Israel (Google Expert) Tr. 325:18-326:9 (Ex. 79); Google SMF ¶¶ 301, 309.

**Google's Response:**   Undisputed for purposes of this motion only. *See also infra* ¶ 111 (citing undisputed evidence that █████████████████████████ █████████████).

102.     Auction-time bidding is the most efficient form of automated ad bidding, in which an ad campaign's performance is analyzed in real-time, followed by automated adjustments to bidding strategy.  Amaldoss Opening Report ¶¶ 271, 270 (Ex. 5); ███████████ (Ex.      117);     Google,     "Setting     Smarter     Search     Bids," https://services.google.com/fh/files/blogs/search_automated_bidding_guide.pdf     (Ex.     150); Answer to States' Complaint ¶ 155 (ECF No. 110); Google Response to States' Third Set of

Interrogatories, Interrogatory No. 17 (Ex. 151) ("Search Ads 360 auction-time bidding strategies are informed by data generated from a search user's query, such as device type, browser type, location, time of day, and the search user's relation to remarketing lists. An auction-time bidding strategy analyzes different contextual signals (such as device, browser type, location, time of day, remarketing list, and more) to set each keyword bid to show ads in the best position and maximize performance"); Google Response to States' Second Set of Requests for Admission, Request No. 54 (Ex. 152); Google SMF ¶¶ 301-03.

**Google's Response:**  It is undisputed for purposes of this motion only that Google's auction-time bidding on SA360 is designed to maximize performance.  Plaintiffs' cited evidence does not support the contention that "auction-time bidding is the most efficient form of automated ad bidding" with regard to Microsoft Ads' automated bidding features (referred to by Plaintiffs as "auction-time bidding") or auction-time bidding generally on SEM tools or other platforms, as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).

103.    With auction-time bidding, bids are automatically set at the time of each individual ad auction, rather than only a few times a day.  Amaldoss Opening Report ¶¶ 270-73 (Ex. 5); Google, "Setting Smarter Search Bids," https://services.google.com/fh/files/blogs/search automated bidding guide.pdf (Ex. 150); Answer to States' Complaint ¶¶ 152-54 (ECF No. 110); Google SMF ¶¶ 301-03.

**Google's Response:**  Undisputed for purposes of this motion only.

104.    This greatly improves productivity of ad spending.  By Google's own calculation, auction-time bidding results in a 15-30% increase in conversions and ad revenue, and was

██████████████████████████████████  GOOG-NE-10860013, -028 (Ex. 153); GOOG-DOJ-24764237, -238 (Ex. 143); GOOG-DOJ-22526606, -607

(Ex. 154); Krueger (Google) Tr. 99:11-100:24 (Ex. 119); Amaldoss Opening Report ¶ 283 (Ex. 5); Baker Opening Report ¶ 310 (Ex. 1); ▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 117); Google Response to States' Third Set of Contention Interrogatories, Contention Interrogatory No. 34 (Ex. 155) ("Google admits that advertising customers may experience increased performance when enabling Google auction-time bidding for Google Ads campaigns managed in Search Ads 360.").

**Google's Response:**   It is undisputed that in beta testing, advertisers using Google's "auction-time bidding" saw between 15-30% increase in conversions while maintaining the same cost per conversion efficiency.  It is also undisputed that one Google employee estimated that the Google auction-time bidding feature was ▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇   The cited Google analyses relate to Google Ads auction-time bidding, however, and not any other search engine's advertising features.

105.    Numerous advertisers—such as ▇▇▇▇▇▇▇▇—determined that the lack of SA360 support for auction-time bidding on Microsoft Ads resulted in less efficient Bing ad campaigns.  Amaldoss Opening Report ¶¶ 289-90 (Ex. 5); Baker Opening Report ¶ 310 (Ex. 1); Krueger (Google) Tr. 192:24-193:14, 205:17-206:5 (Ex. 119); ▇▇▇▇▇▇▇▇ ▇▇ (Ex. 156); GOOG-DOJ-24807903, -904 (Ex. 147); ▇▇▇▇▇▇▇▇ (Ex. 28), GOOG-DOJ-24807759, -759 (Ex. 157).

**Google's Response:**   Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited documents and testimony do not show any results, data, or analyses from Home Depot, ▇▇▇▇▇▇ concluding that the lack of SA360 support for auction-time bidding on Microsoft Ads resulted in less efficient Bing ad campaigns.

One email cited is a Google internal email indicating that ▇▇▇▇▇▇▇▇

███████████████████████████████████████████████████

██████████████████████████████████████   *See*   GOOG-DOJ-

24807903, -904-05 (Pls.' Ex. 147).   ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████   *See* GOOG-DOJ-24807759, -759-60 (Pls.' Ex. 157).   Moreover, Mr. Booth testified

that he "would anticipate" a decline in the effectiveness of their ads without access to auction-time

bidding, without reference to Microsoft Ads, specifically.   Booth (Home Depot) Tr. 137:18-138:5

(Pls.' Ex. 28).   The Amaldoss Opening Report ¶¶ 289-90 (Pls.' Ex. 5) and Baker Opening Report

¶ 310 (Pls.' Ex. 1) merely cite the same evidence above.   Finally, neither the testimony of Jason

Kreuger, Google employee, nor the testimony of ████████, Microsoft employee, supports

Statement  105.    Krueger  (Google)  Tr.  192:24-193:14,  205:17-206:5  (Pls.'  Ex.  119);  ████

█████████████████████████████████.

106.   ████████████████████████████████████████████

██████████████████████████████████████████████ Amaldoss

Opening Report ¶ 273 (Ex. 5); GOOG-DOJ-24796266, -270 (Ex. 158); Krueger (Google) Tr. 53:4-

15 (Ex. 119).

**Google's Response:**  Undisputed for purposes of this motion only.

107.   Google  integrated  auction-time  bidding  support  for  Google  Ads  into  SA360  in

September 2019.  Google SMF ¶ 276.

**Google's Response:**  Undisputed.

108.   ██████████████████████████████████████  █████████████

███████████████████████████████████████████████. Google

SMF ¶¶ 302, 303, 309; ████████████████████ (Ex. 159); ████████████████████

███ (Ex. 160); Google SMF ¶ 309.

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  It is

undisputed for purposes of this motion only that at least some of the automated bidding features

have been available on Microsoft Ads' native platform since at least 2016.

109.   ████████████████   ██████████████████████████████

████████████████████████████████████████. Google SMF

¶¶ 268-69, 272-74; ██████████████████████ (Ex. 19); Google Response to States'

Third Set of Contention Interrogatories, Contention Interrogatory No. 35 (Ex. 155).

**Google's Response:**  Undisputed for purposes of this motion only.

110.   For years, Google has been aware of customer demand for auction-time bidding in

Microsoft Ads.  Amaldoss Opening Report ¶ 261 (Ex. 5); Varia (Google) Tr. 148:8-149:3 (Ex.

137); ████████████████████ (Ex. 21); ████████████████████

█ (Ex. 22); ████████████████████ (Ex. 117); ████████████████████

██ (Ex. 156); GOOG-DOJ-24807903, -903 (Ex. 147); ████████████████ (Ex. 161);

GOOG-DOJ-24813184, -184 (Ex. 162).

**Google's Response:**  It is undisputed that ████████████████████

████████████████████████████████████████████████

████████. *See* Pls.' RSMF ¶ 306 (undisputed that "[s]everal months after Microsoft's request

for full feature parity, ████████████████████████████████████

████████████████████████████████████████████████

████████). Plaintiffs cite no evidence of any specific advertiser interest prior to ████████.

111.    Nonetheless, Google admits that it has still not released auction-time bidding support for Microsoft Ads.  Google SMF ¶ 309; Indacochea (Google) Decl. ¶ 7 (Google SMF Ex. 80).

**Google's Response:**  It is undisputed that ███████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████. *See* Pls.' RSMF ¶ 309 ("[u]ndisputed that

GOOG-DOJ-31390748 (Google's Ex. 109), dated November 12, 2021, says that ███████

████████████████████████████████████); *see also* Indacochea (Google)

Tr. 109:11-112:9 (Google's Ex. 118) (as of Indacochea's May 2, 2022 deposition, Google's ████

████████████████████████████████████████████████████████████████████

████████████████████████.").

112.    In contrast, Google admits that ████, a smaller company, developed auction-time bidding support for Microsoft Ads in no more two years and launched the feature in early 2020.  Google SMF ¶ 282.

**Google's Response:**  Undisputed for purposes of this motion only, with clarification. ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████

113.    ████ integration of auction-time bidding support for Microsoft Ads resulted in a

████████████████████████. Indacochea (Google [sic]) Tr. 71:2-16 (Ex. 145).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification. ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

114. ████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

115. ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

**Google's Response:**  Undisputed for purposes of this motion only.

116.   The feature called "fractional conversions" was not required in order for Google to integrate Microsoft Ads support for auction-time bidding into SA360.  GOOG-DOJ-24813895, -896 (Ex. 164); ████████████████████ (Ex. 112) ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████.

**Google's Response:**  Undisputed for purposes of this motion only.

**C.**     **SA360 Feature Disparity for Other Current and Future Features**

117.    Google admits that a years-long disparity has existed between Google Ads and Microsoft Ads for several other important SA360 features, including dynamic search ads, responsive search ads, and local inventory ads.  Amaldoss Opening Report ¶ 280 & Table 2 (Ex.

5); Google SMF ¶ 311; Varia (Google) Tr. 99:16-25 (Ex. 137); ███████████████

(Ex. 165); ██████████████████████ (Ex. 156).

      **Google's Response:**   Disputed as not supported by the evidence as required by Federal

Rule of Civil Procedure 56(c)(1) and Local Rule 7(h) to the extent that Plaintiffs are asserting that

dynamic search ads, responsive search ads, and local inventory ads are not currently available for

Microsoft Ads in the new SA360 platform.  *See* Pls.' RSMF ¶ 310 (citing GOOG-DOJ-31390748

at -748-49 (Google's Ex. 109) (November 2021 document states: "I'm excited to announce that

we've launched a suite of 12 Microsoft and other engine features in Amalgam . . . What's new in

Amalgam? . . . Customers can now create, manage, and report on responsive search ads . . .

Amalgam now supports full management of dynamic search ads (which continue to be read-only

in the previous SA360) for both Microsoft and Yahoo! Japan.")))  *See also* Pls.' RSMF ¶ 311

("Undisputed" that "[t]he new Search Ads 360 introduces support for . . . over ten additional

Microsoft Ads features including responsive search ads, call extensions, local inventory ads . . .").

The only evidence cited by Plaintiffs (in Statement 118 below and in their Response to Google's

Statement of Material Facts) to argue dynamic search ads and responsive search ads "remain only

partially supported on SA360 for Microsoft Advertising" is an outdated webpage relating to the

***legacy*** version of the platform.   Pls.' RSMF ¶¶ 272, 278, 291, 310, 312, and 313 (citing

https://support.google.com/searchads/answer/2592341?hl=en).  Their expert, Professor Amaldoss,

relies on that same page. *Id.*; Amaldoss Opening Report ¶ 280 n.544 & Table 2 (Pls.' Ex. 5).  This

page does not relate to the new platform, launched in February 2022.  *See* GOOG-DOJ-31390748

at -748-49 (Google's Ex. 109) (announcing support for "full management of dynamic search ads

(which continue to be read only in the previous SA360) for both Microsoft and Yahoo! Japan").

Instead, it is undisputed that the page to which Plaintiffs cite refers to the legacy version of SA360.

Pls.' RSMF ¶ 267; GOOG-DOJ-31390748 at -749 (Google's Ex. 109).

It is undisputed for purposes of this motion that these features were developed for Microsoft Ads ████████████████████████████, and are supported in the new SA360 platform.  Pls.' RSMF ¶¶ 278, 289-91, 310-12.  Certain reporting functions for Microsoft Ads' dynamic search ads were previously supported in the legacy SA360 platform.  *See*, *e.g.*, Pls.' RSMF ¶¶ 267, 310.

118.   In early 2022, Google announced a new version of SA360 with Microsoft Ads integration for some of these features, ████████████████████████████. Amaldoss Opening Report ¶ 280 & Table 2 (Ex. 5).

**Google's Response:**  It is undisputed that Google publicly announced the new version of SA360 via a blog post in February 2022 with descriptions of support for responsive search ads, call extensions, and local inventory ads on Microsoft Ads in the new version of SA360.  *See* Pls.' RSMF ¶ 311.  The statement that "████████████████████████████" is disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The only citation offered for this proposition is Plaintiffs' expert report, which cites to an outdated webpage referring to the ***legacy*** version of SA360.  Amaldoss Opening Report ¶ 280 & Table 2, n. 544 (Pls.' Ex. 5), citing *Google,* Microsoft Advertising Features in Search Ads 360, available at: https://support.google.com/searchads/answer/2592341?hl=en.  Plaintiffs cite no other evidence to dispute that dynamic search ads for Microsoft Ads was launched on the new SA360 platform.  *See* Google SMF ¶ 310 (citing GOOG-DOJ-31390748 at -749 (Google's Ex. 109) (announcing support for "full management of dynamic search ads (which continue to be read-only in the previous SA360) for both Microsoft and Yahoo! Japan")); *compare* Search Ads 360 (new experience) Help, *Dynamic Search Ads for Microsoft Advertising*, available at

https://support.google.com/sa360/answer/9838683?hl=en, last visited February 18, 2023 (Google's Ex. 119) (help page with instructions for adding and managing Microsoft Ads dynamic search ads campaigns on the new SA360) *with* Search Ads 360 Help, *Microsoft Advertising features in Search Ads 360*, available at https://support.google.com/searchads/answer/2592341?hl=en (last updated May 17, 2022) (separate page listing Microsoft Ads features for legacy SA360 platform, including "reporting only" capability for dynamic search ads) (last accessed Dec. 7, 2022) (Google's Ex. 93).

119.   ████████████████████████████████████████████
████████████████████████████████████████████████

**Google's Response:** Undisputed for purpose of this motion only.

120.   The primary purpose of the new SA360 is to integrate SA360 into the Google Stack, meaning that any new feature will be immediately integrated for Google Ads, but not for competing ad platforms—thereby exacerbating the disparity between Google and its competitors for any future feature. Google, "Introducing the new Search Ads 360," https://blog.google/products/marketingplatform/360/introducing-new-search-ads-360/ ("You'll now have immediate support for most new Google Ads features and improved support for other channels and search engines, like Microsoft Ads and Yahoo! Japan. We've also built new enterprise features that are only available in the new Search Ads 360 which will give you new ways to centralize and scale your day-to-day tasks across engines and accounts") (Ex. 166); GOOG-NE-03419547, -550 (Ex. 139); Kachachi (Google) Tr. 155:7-156:6 (Ex. 120); ████████ ████████████ (Ex. 125); Google Response to States' Second Set of Requests for Admission, Request No. 55 (Ex. 152) ("Google's new Search Ads 360 platform will offer immediate support

for most new Google Ads features . . . The legacy Search Ads 360 platform did not provide immediate support for Google Ads features . . .").

**<u>Google's Response:</u>**   It is undisputed that Plaintiffs accurately quote from Plaintiffs' Exhibits 166, a blog post announcing Google's new SA360 platform, and 152, Google's responses to Plaintiffs' interrogatories in this case.  Google's new Search Ads 360 platform offers immediate support for most new Google Ads features.

Statement 120 is otherwise disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The evidence does not support the statements that "[t]he primary purpose of the new SA360 is to integrate SA360 into the Google Stack" or that the launch of the new version of SA360 will "exacerbat[e] the disparity between Google and its competitors for any future feature."  The testimony of former Google employee Bashar Kachachi states that it is ███ ███████████████████████████████████████████
████████████████████████████████████████████████████████ Kachachi (Google) Tr. 155:20-23 (Pls.' Ex. 120) (emphasis added).  With regard to this support for Google Ads features on the new SA360 platform, Skai employee Paul Vallez testified that "[a]nd so we raised it as a question, but we just don't know yet if it's a true issue until we get the answers around when [the new version of SA360] launches."  Vallez (Skai) Tr. 78:21-24 (Pls.' Ex. 125).  Exhibit 139 reflects another purpose of Project Amalgam was ███████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████ GOOG-NE-03419547, -550 (Pls.' Ex. 139).

121.    Google's preferential treatment of its own ad platform over that of its chief competitor causes ad campaigns on Bing to be less efficient than they could have been and less efficient than campaigns on Google.  Amaldoss Opening Report ¶ 285 (Ex. 5); Baker Opening

Report ¶¶ 310-11 (Ex. 1); Krueger (Google) Tr. 204:8-206:5 (Ex. 119); 

(Ex. 156); GOOG-DOJ-24807903, -904 (Ex. 147);

(Ex. 28), GOOG-DOJ-24807759, -759 (Ex. 157);                          (Ex. 167).

**Google's Response:** Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  None of the deposition testimony or documents cited by Plaintiffs supports the proposition that the challenged conduct by Google causes campaigns on Bing to be "less efficient than they could have or less efficient than campaigns on Google."  There is no data, analyses, or conclusions from particular advertiser campaigns or spend on either SA360 or any other platform on which advertisers manage Google Ads and Microsoft Ads spend in any of the cited sources.

122.

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  Dr. Israel's testimony does not address the "steer" of spend caused by SA360.  He offered no opinion or conclusion on what happens in the aggregate in a campaign with spend on Google and Bing. He testified: "I mean, I guess for a given campaign it's deciding where to move stuff.  So dollars towards Bing in that campaign -- or dollars to Google would not go to Bing.  I don't know what's happening in the aggregate."  Israel (Google Expert) Tr. 351:17-352:3 (Pls.' Ex. 79).  This statement is immaterial to the resolution of the motion.

123.    This conduct also harms advertisers, by

(Ex. 22).

**Google's Response:** It is undisputed that Microsoft employee ███████ gave the testimony quoted in Statement 123.

124. ████████████████████████████████████████

████████████████████████████ ███████████████████████

██████████████████ (Ex. 168); ███████████████████████ (Ex. 112); ███████████████████ (Ex. 21) ████████████████████

████████████████████████████████████████

██████████████████████

**Google's Response:** Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



This statement is immaterial to the resolution of the motion.

125.   Google thus prevents its rivals from competing more effectively and prevents advertisers from efficiently spending their advertising dollars, harming competition and protecting Google's search monopolies.  Baker Opening Report ¶¶ 334-35 (Ex. 1); ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (Ex. 117); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 21); ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (Ex. 112); GOOG-DOJ-24807903, -904, -906 (Ex. 147).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  This Statement sets forth Plaintiffs' theory of the case and expert conclusion, instead of undisputed facts in the record.  None of the record evidence cited in Statement 125 supports the proposition that Google "prevents its rivals from competing more effectively and prevents advertisers from efficiently spending their advertising dollars."  The cited record evidence also does not establish "Google's search monopolies."

126.   This SA360-specific conduct contributes to the overall harm to competition by impeding the ability of Google's actual or potential competitors to compete for advertising dollars,

thereby further entrenching Google's search monopolies.  Baker Opening Report ¶¶ 334-35 (Ex. 1).

**Google's Response:** Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  This Statement sets forth Plaintiffs' theory of the case and expert conclusion, instead of undisputed facts in the record.  None of the record evidence cited in Statement 126 supports the propositions that the alleged conduct by Google amounts to "harm to competition" or that Google has "search monopolies."  Plaintiffs' sole basis for the propositions in Statement 126 is the opinion in paragraphs 334 and 335 of Professor Baker's Opening Report, which cite no record evidence other than a Google document that reports "stable or a little increased" spending on Bing after auction-time bidding for Google Ads was launched on SA360.  Baker Opening Report ¶¶ 334-35 (Pls.' Ex. 1).

## V.    GOOGLE'S CONDUCT REGARDING SPECIALIZED VERTICAL PROVIDERS

127.    Specialized Vertical Providers ("SVPs") are websites or applications that focus on one or a limited number of commercial segments (also called "verticals") that serve a similar function or a common group of customers. Baker Opening Report ¶¶ 119-120, 124 (Ex. 1); Amaldoss Opening Report ¶¶ 20 & 91 (Ex. 5); Foundation, "Verticals," https://foundationinc.co/learn/verticals/ (Ex. 253); Holden (Google) 9/30/21 Tr. 36:18-37:4 (Ex. 32); Spalding (Google) Tr. 86:15-87:19 (Ex. 169); GOOG-DOJ-03368147, -148 (Ex. 170).

**Google's Response:**  Undisputed for purposes of this motion only.

128.    Amazon, eBay, and Etsy are examples of SVPs that sell products to shoppers. Expedia and Booking are examples of SVPs that sell airline tickets or hotel reservations in the flights and hotels verticals. Angi, Thumbtack, and OpenTable are examples of SVPs that provide consumers with the ability to book local service providers, like plumbers, or make a restaurant

reservation. Baker Opening Report ¶ 124 & Table 5 (Ex. 1); Baker Rebuttal Report ¶ 78 & Table 2 (Ex. 2); Amaldoss Opening Report ¶ 90 (Ex. 5); ███████████████ (Ex. 171); GOOG-DOJ-29831927, -930 (Ex. 172); GOOG-DOJ-04140385, -388, -392 (Ex. 173).

**Google's Response:**  Undisputed for purposes of this motion only.

129.    SVPs differ from GSFs because of their much narrower commercial focus and because many of them afford users the convenience of completing transactions on their websites, such as purchasing a pair of shoes (Amazon) or reserving a hotel room (Booking). Baker Opening Report ¶¶ 120-21 (Ex. 1); GOOG-DOJ-03368147, -148 (Ex. 170) (referring to SVPs as "special purpose search engines").

**Google's Response:**  Undisputed for purposes of this motion only.

130.    SVPs are often highly ranked by the Google search results algorithm that generates its blue links, which Google claims are designed to serve users the most relevant and highest quality search results. Baker Opening Report ¶¶ 80, 328-330, Tables 28 & 29 (Ex. 1); Google, "How Search     Algorithms     Work,"     https://www.google.com/search/howsearchworks/algorithms/ (Ex.174); Nayak (Google) 10/28/21 Tr. 116:5-18 (Ex. 12); Gomes (Google) 9/24/20 Tr. 258:7-263:5 (Ex. 7); Google SMF ¶ 43 ("[u]sers should get the best results in the most helpful order").

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

131.    In addition, SVPs are highly ranked by the algorithm that selects text advertising, which similarly takes into account a prediction of ad value to the search user. Baker Opening Report ¶¶ 328-330 & Table 28 (Ex. 1); GOOG-DOJ-13123748, -761 (Ex.175); GOOG-DOJ-01187998, 31-33 (Ex. 176).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

132.    Google recognizes that search results that include SVPs are valuable to search users. Baker Opening Report ¶¶ 52, 276, n. 387 (Ex. 1); Silverman (Google) Tr. 52:3-53:4 (Ex. 177); Holden (Google) 9/30/21 Tr. 196:18-197:12 (Ex. 32).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

### A.    SVPs Rely on Google for User Traffic

133.    Google describes itself as a place for research and discovery—including discovering SVPs relevant to a user's need. Reid (Google) Tr. 273:20-274:17 (Ex. 178); Moxley (Google) 1/28/22 Tr. 49:8-19 (Ex. 179); Israel (Google Expert) Tr. 90:14-91:7, 157:18-158:14 (Ex. 79).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

134.    General search is a significant source of user traffic for SVPs, accounting for as much as ███ of traffic for some of the largest SVPs. Baker Opening Report ¶ 270 & Figure 23 (Ex. 1); ████████████████████ (Ex. 131); ██████████████████████ (Ex. 129); ████████████████ (Ex. 180); ████████████████ (Ex. 181); Holden (Google) 9/30/21 Tr. 244:4-22 (Ex. 32); ████████████████ (Ex. 182); AngiHomeservices Inc., 2019 Form 10-K at 12 (Ex. 183).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

135.    A user may learn of a place to buy a needed product through general search, then journey to an SVP's site to conduct further research and/or make a purchase. Baker Reply Report

¶¶ 63, 76 (Ex. 3); Israel (Google Expert) Tr. 157:18-158:14, 385:10-386:1 (Ex. 79).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

136.    Consequently, SVPs are heavily reliant on Google to attract customers. Baker Opening Report ¶¶ 220-21, 270-74 & Figures 20-23 (Ex. 1); Amaldoss Opening Report ¶ 94 (Ex. 5); ████████████████████████ (Ex. 184); ████████████████████ (Ex. 129); ████████████████ (Ex. 185); ████████████████ (Ex. 186); ████████████████ (Ex. 187); ████████████████ (Ex. 182); ████████████████ (Ex. 131); ████████████████ (Ex. 188); Holden (Google) 9/30/21 Tr. 244:4-22 (Ex. 32); Elzinga (Google Expert) Tr. 337:22-338:3 ("Google has lots of users[,] and advertisers [like SVPs] look upon users as potential customers. So the fact that there's many people using the Google Search engine itself makes it attractive") (Ex. 11).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

137.    ████████ estimates that ████████ of its user traffic comes from Google. ████ ████████████████████ (Ex. 129). ████ currently has no ████████████ ████████ to Google ████████████████ (Ex. 187)) and ████ (which owns ████) considers Google to be ████████████████████████████ ████████████████ (Ex. 188)).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

138.    New customer acquisition is important to SVPs both in terms of revenue and

customer loyalty. , for example, relies on traffic from Google for ████████████ ████████████████████████████████████████████████████████████ ██ (Ex. 185).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

139.   Customers who develop loyalty to a specific SVP generally do so through their experience using that SVP's services. Baker Rebuttal Report ¶ 43 (Ex. 2); ████████████ ████████████ (Ex. 186); Baker Opening Report ¶¶ 272-73 (Ex. 1); ████████████ ████████████ (Ex. 184). Indeed, ██████ found that ████ of its customers acquired through general search became repeat customers ████████. Baker Rebuttal Report ¶ 43, n. 111 (Ex. 2); ████████████████████ (Ex. 189).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

140.   Given the importance of general search to customer acquisition, SVPs are among Google's largest advertisers. Baker Opening Report ¶ 274 & Table 2 (Ex. 1); Elzinga (Google Expert) Opening Report ¶ 117 (Ex. 30); Elzinga (Google Expert) Dep. Ex. 9 (Ex. 259); Elzinga (Google Expert) Tr. 337:3-14 (Ex. 11).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

141.   Google knows this. As stated in one internal Google document, ████████  ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Amaldoss Opening Report ¶ 95 (Ex. 5); GOOG-DOJ-12527423, -423 (Ex. 190).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

### B.   Google Restricts SVP Visibility in Strategically Important Verticals

142.   Google considers the hotels, flights, shopping, and local services verticals to be strategically important for its business. Baker Opening Report ¶¶ 124, 241, 279 & Table 5 (Ex. 1); Holden (Google) Tr. 12:11-13:9, 247:16-23 (Ex. 32); Fitzpatrick (Google) Tr. 91:13-92:3 (Ex. 34); GOOG-DOJ-29831927-930 (Ex. 172); GOOG-DOJ-04140385-387 (Ex. 173); GOOG- DOJ-03034316, -337 (Ex. 256).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

143.   Google admits that it restricts SVP visibility on its SERP in these strategically important verticals. Baker Opening Report ¶ 279 (Ex. 1); Baker Rebuttal Report ¶ 19 (Ex. 2); *Compare* Baker Opening Report ¶¶ 280, 284 (Ex. 1) *with* Elzinga (Google) Opening Report ¶¶ 132-33 & Ex. 10 (hotels), ¶¶ 181-82 & Ex. 15-16 (flights), ¶¶ 251-52, 257 & Ex. 22 (local services) (Ex. 30); Holden (Google) 9/30/21 Tr. 247:13-248:24 (hotels & flights) (Ex. 32); Amaldoss Opening Report ¶¶ 133-49 (Ex. 5); Spalding (Google) Tr. 122:3-21 (Ex. 169).

**Google's Response:**  It is undisputed that certain of the specialized units that appear on the SERP are not designed to include references to SVPs.  Although there is no dispute about the SERP design, Google does not agree with Plaintiffs' characterization of that design as "restrict[ing] SVP visibility."

144.   The names of SVPs cannot appear on Google's SERP in its hotel universal and flights universal (see Figures 5 & 6 below) or in the local universal triggered by searches for nearby businesses (as in Figure 1 above). Baker Opening Report ¶¶ 279-82 (Ex. 1); Fitzpatrick (Google)

Tr. 217:20-218:22 (local search) (Ex. 34); Fitzpatrick (Google) Dep. Ex. 14 (local search) (Ex. 27);

Amaldoss Opening Report ¶¶ 133-48 (Ex. 5); Ready (Google) Tr. 193:2-16 (hotels) (Ex. 192);

Silverman (Google) Tr. 85:15-86:2 (hotels) (Ex. 177); Reid (Google) Tr. 94:9-95:12 (local search)

(Ex. 178); ███████████████████████████ (Ex. 186); Google SMF ¶¶ 89 (hotels

unit/universal), ¶ 122 (flights unit/universal), ¶ 159 (local unit/universal).

     **Google's Response:**  Undisputed for purposes of this motion only.

     145.    Figure 5 below depicts a Google Hotel Universal (or Unit). *See* Amaldoss Opening

Report Figure 16 (Ex. 5).

**Figure 5**



**Google's Response:** Undisputed.

146. Figure 6 below depicts a Google Flights Universal (or Unit). *See* Amaldoss Opening Report Figure 17 (Ex. 5).

### Figure 6



**Google's Response:** Undisputed.

147. SVPs cannot purchase local services ads in their own name and cannot appear prominently in the tile of local services ads on Google's SERP. Rather, it must purchase an ad in the name of one of its providers and limit its name to a much less prominent position than the provider's name. Additionally, when a user clicks on an ad paid for by the SVP, the user is directed

to another Google site, not the SVP's site. In commercial segments in which Google shows local information on its SERP, an SVP often cannot buy a local search ad showing their own brand names in Google's local universal. Baker Opening Report ¶¶ 280-81 (Ex. 1); Amaldoss Opening Report ¶¶ 22, 118-24 (Ex. 5); Google Response to States' Second Set of Requests for Admission, Request No. 44 at 7 (Ex. 152); Google Response to States' Third Set of Interrogatories, Interrogatory 9 at 10 (Ex. 151); ███████████████ (Ex. 193); ███████████████ ███████████████ (Ex. 188); ███████████████ (Ex. 194); ███████████ (Ex. 195); ███████████████ (Ex. 186); Google SMF ¶¶ 166, 181, 183.

**Google's Response:** Undisputed for purposes of this motion only.

148.    Below (Figure 7) is an image displaying local services ads in which the SVP (Thumbtack) is limited to a much less prominent position than the supplier for whom the SVP purchased the ad. *See* Elzinga (Google Expert) Opening Report Exhibit 1 (Ex. 30).

**Figure 7**



**Google's Response:** It is undisputed for purposes of this motion only that Figure 7 is an image displaying local services ads, in which references to SVPs are included. Although there is no dispute about the design of Google's specialized results, Google does not agree with Plaintiffs' characterization of that design as limiting the SVP "to a much less prominent position."

149.     Figure 8 below depicts a local services immersive page linked to a local services ad. *See* Amaldoss Opening Report, Figure BD.2.a at 195 (Ex. 5).

**Figure 8**



**Google's Response:**  Undisputed.

150.    Beyond the SERP, Google applies restrictions to SVPs in Google sites, like the immersive pages that a user can reach by clicking on a hotel, flight, or local universal. Baker Opening Report ¶ 282 (Ex. 1); Amaldoss Opening Report ¶¶ 144-49 (Ex. 5); Fitzpatrick (Google) Tr. 64:16-65:22, 215:6-216:14, 218:1-219:10 (Ex. 34); Reid (Google) Tr. 94:9-95:12, 97:3-98:10 (Ex. 178); Google Response to States' First Set of Contention Interrogatories, Contention Interrogatory 2 at 9-12 (Ex. 196); ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 186).

**Google's Response:**  It is undisputed that certain fields within the hotel, flight, or local immersives are not designed to include references to SVPs.  Although there is no dispute about the design of Google's specialized results, Google does not agree with Plaintiffs' characterization of

that design as "applying restrict[ions] to SVPs."

151.     It is also notable that SVPs in the Movies Vertical are not listed in the Movies Carousel and Movies Unit. Clicking on a movie in the Carousel takes the user to the Showtimes tab in the Movies Unit and not an SVP website, and Google does not display SVP affiliation with its movie and showtime results. Elzinga (Google Expert) Opening Report ¶ 476 & Exs. 45-46 (Ex. 30); Google SMF ¶ 194.

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  This statement refers to Google's "results," which Google understands Plaintiffs to mean, in the context of this statement only, the results that appear on the first page of the SERP.

152.     Likewise, SVPs in the Events Vertical cannot appear in the Events Unit. Clicking on the Events Unit takes users to Google's Events immersive and not to the page of an SVP, and Google does not display SVP affiliation with its events results. Elzinga (Google Expert) Opening Report ¶ 450 & Exs. 42-43 (Ex. 30); Google SMF ¶ 208.

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  This statement refers to Google's "results," which Google understands Plaintiffs to mean, in the context of this statement only, the results that appear on the first page of the SERP.

153.     In his deposition, Google's own expert did not identify a single experiment, study, or test upon which he relied that assessed the difference in user satisfaction between the presence or absence of an SVP in any SERP feature. *See*, *e.g.*, Elzinga (Google Expert) Tr. 271:13- 275:12, 321:13-322:13, 327:5-16 (Ex. 11); Elzinga (Google Expert) Dep. Ex. 9 (Ex. 259); *see also* Elzinga (Google Expert) Tr. 310:18-315:18 (Ex. 11); Elzinga (Google Expert) Dep. Ex. 13 (Ex. 260).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  The cited testimony does not reflect any question regarding the existence of an experiment, study, or

test upon which Professor Elzinga relied that specifically assessed the effect of the presence of an SVP on user satisfaction. Rather, the cited testimony only reflects questions about certain specific citations and accompanying exhibits in Professor Elzinga's report.

154. Google gives disparate treatment to SVPs across different commercial segments. Indeed, Google credits and includes SVPs in its universals for shopping, vacations, and jobs. Baker Opening Report ¶ 283 & Figure 24 (Ex. 1); Holden (Google) 9/30/21 Tr. 163:7-164:12 (Ex. 32); Holden (Google) Dep. Ex. 9 (Ex. 26); Holden (Google) Dep. Ex. 10 (Ex. 254) (vacations); Ready (Google) Tr. 198:14-201:25 (vacations) (Ex. 192); Amaldoss Opening Report ¶¶ 153-60, 175-76 & Figure 22 (Ex. 5); Moxley (Google) 1/27/22 Tr. 44:1-5, 45:16-23 (jobs) (Ex. 197); Elzinga (Google Expert) Opening Report ¶ 504 & Ex. 50 (shopping) (Ex. 30); Google SMF 91 (vacation rentals).

**Google's Response:** It is undisputed that whether SVPs are among the categories of information displayed in the unit on the SERP, and how SVP information is displayed, varies from unit to unit.

155. For example, as depicted in Figure 9 below, vacation rental SVP Vacasa appears in a universal on Google's SERP in response to a query for "vacation rentals smoky mountains." Baker Opening Report ¶ 283 & Figure 24 (Ex. 1); *see also* Holden (Google) Dep. Ex. 9 (Ex. 26).

**Figure 9**



**Google's Response:** Undisputed.

156.   Shopping SVPs can buy vertically-focused ads on Google's SERP and appear in SERP features like the free product listings with their brand names and website links. Elzinga (Google Expert) Opening Report ¶¶ 504, 525 & Ex. 50 (Ex. 30); Ready (Google) Tr. 36:13-19, 37:14-21 (Ex. 192); Ready (Google) Dep. Ex. 12 (Ex. 198).

**Google's Response:** Undisputed.

157.   Although Google attempts to distinguish vacation rentals by arguing that they are so unlike hotels as to preclude monetization (Elzinga (Google Expert) Opening Report ¶¶ 217- 219 (Ex. 30)), ████████████████████████████████████████████████ █

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ ) (Ex. 199); Holden (Google) 9/30/21 Tr. 161:16-22 (Ex. 32).

**Google's Response:** The statement that "Google attempts to distinguish vacation rentals

66

by arguing that they are so unlike hotels as to preclude monetization" is disputed as unsupported

by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).    As

Professor Elzinga explains in the paragraphs cited by Plaintiffs, "[t]he key difference [between

vacation rentals and hotels] stems from the fact that it is much harder to consolidate listings for the

same entity across different SVPs for vacation rentals as compared to hotels. . . . [V]acation rental

suppliers are small (often individual owners), often lack Internet presence, tend not to offer direct

online booking, and often partner with a specific SVP."  Elzinga (Google Expert) Opening Report

¶¶ 217-218 (Pls.' Ex. 30); *see also* Pls.' RSMF ¶ 91 (undisputed that "Google's vacation rentals

unit serves results listing vacation rentals' association with specific vacation rental providers

because, unlike hotels which are standalone public businesses that Google can independently

verify, it is harder to accurately determine whether multiple vacation rental providers are offering

the same lodging.").  Undisputed for purposes of this motion only as to all other portions of

Statement 157.

158.    And, while Google also launched free hotel booking links, those links only appear

on the SERP when the query triggers a knowledge panel (see Figure 10 below), which it does

infrequently. Baker Opening Report ¶ 280, n. 399 (Ex. 1); Ready (Google) Tr. 37:14-25 (Ex. 192);

Baker (Colo. Expert) Tr. 179:10-180:5 (Ex. 200); Elzinga Reply Report Ex. 1 (Ex. 261); Elzinga

Workpaper 7 (Ex. 257).

**Figure 10**



**Google's Response:**   Undisputed as to the statement that Google "launched free hotel booking links, those links only appear on the SERP when the query triggers a knowledge panel." It is undisputed for purposes this motion only that the Knowledge Panel is triggered infrequently on travel queries.  This statement is immaterial to the resolution of this motion.

159.    That SVPs may appear more prominently on the SERPs of Google's rivals reinforces the point. As shown in Figure 11 below, Bing gives TripAdvisor visibility by putting its name and mark near tiles showing hotel properties for which TripAdvisor provides the data. Baker Opening Report ¶ 283 & Figure 25 (Ex. 1); ███████████████████████ (Ex. 14); ███████████████████████ (Ex. 202); Google SMF ¶ 241.

**Figure 11**



**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  It is

undisputed that Bing identifies TripAdvisor as the source for *user ratings* from reviews that appear

on Bing's SERP, as reflected in Figure 11.

69

160.    DuckDuckGo likewise provides attribution to TripAdvisor for data it supplies, as shown in Figure 12 below (*see*, *e.g.*, ███████████████████████ (Ex. 129); ██████ ██████████████████ (Ex. 236)):

**Google's Response:**    Undisputed for purposes of this motion only, with clarification.    It is undisputed that DuckDuckGo identifies TripAdvisor as the source for *user ratings* from reviews that appear on DuckDuckGo's SERP, as reflected in Figure 12.

**Figure 12**

161.    Similarly, Neeva credits Yelp as a source of information for restaurant results on its SERP. ████████████████████████████ (Ex. 134).

**Google's Response:**  Undisputed for purposes of this motion only.

C.    **Google's Restrictions on SVP Visibility Harm SVPs, Including Decreased Traffic and Increased Customer Acquisition Costs**

162.    Professor Baker's statistical analysis of the click-through rates on various search features demonstrates that the loss of visibility has fueled an increase in customer-acquisition costs of the affected SVPs. Baker Opening Report ¶¶ 286-88, 292 & Tables 24-25 (Ex. 1); ███████████ ███████████ (Ex. 41); ████████████ (Ex. 131); ████████ (Ex. 193); ██████████████████ (Ex. 188).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

163.    The impact of Google's visibility-limitation practices is magnified by the fact that the highly relevant blue links have been pushed towards the bottom of a SERP, or "below the fold." Baker Opening Report ¶¶ 284-86 & Tables 23-24 & Figures 26-27 (Ex. 1); Baker Rebuttal Report ¶ 54, n. 136 (Ex. 2); GOOG-DOJ-15860312, -331-38 (Ex. 47).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

164.    Numerous SVPs have observed a decline in traffic from blue links and attribute this decline to Google's repeated demotion of the blue links to lower parts of the SERP. Baker Opening Report ¶ 289 (Ex. 1); ████████████████ (Ex. 204); ███████████ ████ (Ex. 41); ███████████████ (Ex. 180); ███████ ██████ (Ex. 129); ██████████████ (Ex. 171); ████████████████ (Ex. 186); █████████████ (Ex. 131); Amaldoss Opening Report ¶¶ 164-71 (Ex. 5).



**Google's Response:**  Undisputed for purposes of this motion only.  This statement is

immaterial to the resolution of the motion.

165.    Even a seemingly small change in visibility on Google's SERP can make a substantial difference in the traffic SVPs receive. Baker Opening Report ¶ 290 (Ex. 1); ████████████████████████ (Ex. 41); ████████████████████ (Ex. 45); Baker Rebuttal Report ¶ 52 (Ex. 2); GOOG-DOJ-15860312, -319 (trying to understand why "small UI [user interface] changes in font size, spacing, image etc cause big movements in live traffic metrics") (Ex. 47).

**Google's Response:**    Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

166.    The demotion of blue links has forced SVPs to purchase more ads from Google to maintain visibility, resulting in increased customer acquisition costs. Baker Opening Report ¶ 292 (Ex. 1); Amaldoss Opening Report ¶¶ 162-63 (Ex. 5); ████████████████████ (Ex. 180); ████████████████████████████ (Ex. 188); ██████████ (Ex. 205); Baker Rebuttal Report ¶¶ 59-60, 67-69 (Ex. 2); ████████████████████ (Ex. 41); ████████████████ (Ex. 131); ████████████████ (Ex. 193); Miller (Google) Tr. 71:9-72:1 (Ex. 206); GOOG-DOJ-04166485, -488 (Ex. 207); ████████████████████ (Ex. 187); ████████████████████ (Ex. 203).

**Google's Response:**    Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

167.    For example, ██████ reported that its customer acquisition costs rose by ██ ████████████████████████████████████████████████████ ████████████████████████ Baker Opening Report ¶ 297 & Figure 29 (Ex. 1); ████████████████████ (Ex. 41).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

168.   In addition, ███████  average cost per visitor ████████████████████
████████████████████████████████████████████████. Baker Rebuttal Report ¶¶ 59-60 & n.148, Figures 4-5; Baker Supplemental Materials, Figure 1, Table 4 (Ex. 4).

**Google's Response:**   Undisputed for purposes of this motion only.   This statement is immaterial to the resolution of the motion.

169.   Notably, ████████████████████████████████████████
████████████████████████████████████████ (Ex. 181).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification.  The cited testimony reflects only that, in Europe, Google made an unspecified "change," Yelp's "traffic dropped and never recovered," and that if Yelp was "growing in Europe, [Yelp] would have continued investing in Europe."  Stoppelman (Yelp) Tr. 250:13-251:14 (Pls.' Ex. 181).   This statement is immaterial to the resolution of the motion.

170.   That the burdened SVPs have (limited) visibility on the immersive pages does not compensate for their lack of visibility on the SERP. As Google's own expert admits, the percentage of SVP traffic originating from Google's immersive page is "relatively small." Elzinga (Google Expert) Tr. 334:14-22 (Ex. 11).

**Google's Response:**   It is undisputed for purposes of this motion only that Professor Elzinga testified that he believes "[t]he evidence in the record indicates that the fraction of SVPs' traffic originating from Google immersives and detail pages is relatively small."  Elzinga (Google

Expert) Tr. 334:14-22 (Pls.' Ex. 11). The remainder of Statement 170 sets forth Plaintiffs' theory of the case, instead of undisputed facts in the record, and is disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). This statement is immaterial to the resolution of the motion.

171.    Google recognizes in other contexts that travel SVPs provide price competition, for example, by offering discounts. Elzinga (Google Expert) Tr. 287:4-288:10, 294:3-13 (Ex. 11); GOOG-DOJ-27912467 (Ex. 208); GOOG-DOJ-26452172, -176 (Ex. 209).

**Google's Response:**    Undisputed for purposes of this motion only. This statement is immaterial to the resolution of the motion.

172.    Without the ability to display their prices on the SERP in their own names in the restricted universals, trusted SVPs have more limited ability to compete by offering pricing on the SERP. ████████████ ████████████ (Ex. 187); ████████████████████████ ████████ (Ex. 14); ████████████████ ████████████ (Ex. 129).

**Google's Response:**    It is undisputed that *no* third-party entity (whether SVP or direct supplier such as hotel or airline) displays the prices that they are offering in their own names in the hotels unit or the flights unit on the SERP. The statement that "trusted SVPs have more limited ability to compete by offering pricing on the SERP" is disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h). As noted above, no third-party entity displays the prices they are offering in their own names in the hotels unit or the flights unit on the SERP. In addition, the testimony cited does not pertain specifically to SVPs' ability to compete by displaying their prices in their own name on the SERP. ██████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

█████████████████████████████ This statement is immaterial to the resolution of the motion.

**D.      Google Requires SVPs to Provide Access to Valuable Structured Data Without Adequate Compensation**

173.     SVPs make substantial investments in gathering information about suppliers, including pricing and availability, keeping that information current, and organizing the information in a searchable format on their websites or apps. This information is valuable to general search users and also very valuable to Google, since it is not otherwise available through Google's internet crawling and indexing. Baker Opening Report ¶¶ 123, 127-28, 276 & n. 387 (Ex. 1); Amaldoss Opening Report ¶ 91-92, 177-79 (Ex. 5); Elzinga (Google Expert) Tr. 408:2- 410:6 (Ex. 11); Silverman (Google) Tr. 52:3-14, 157:8-13 (Ex. 177); Holden (Google) 9/30/21 Tr. 196:18-197:6 (Ex. 32); ████████████████████████████████████ (Ex. 188); █████████████ ███████████████████ (Ex. 187); ██████████████████████ (Ex. 180); ███████ █████████████ (Ex. 210); GOOG-NE-00069104, -105-08 (Google sought "to create ecosystems that encourage[d] 3rd parties to give [Google] data"; "some very valuable data will never be fully modelable in a general structure …") (Ex. 211); GOOG-DOJ- 23492669, -671 (Ex. 212); Google SMF ¶¶ 85, 119, 158.

**Google's Response:**  Undisputed for purposes of this motion only.

174.     Initially, Google tried to appropriate this structured data from SVPs. ████████ ████████████████████████████████████ (Ex. 181).

**Google's Response:**  It is undisputed for purposes of this motion only that Yelp has previously accused Google of appropriating its data in the approximately 2009 - 2011 time period. *See* Stoppelman (Yelp) Tr. 22:12-23:3; 161:21-162:2, 236:25-238:15 (Ex. 181).  This statement is

immaterial to the resolution of the motion.

175.    Today, as a condition of participating in its vertically-focused search advertising, Google requires certain SVPs to provide access to their data. Holden (Google) 9/30/21 Tr. 206:6-20 (Google "requiring" data from ███████ "to be able to serve ads") (Ex. 32); ████████████████████████████████████████████████████████████████ ███████ (Ex. 187); Amaldoss Opening Report ¶ 180 (Ex. 5); Google Supplemental Response to States' Third Set of Interrogatories, Interrogatory No. 10 (Ex. 213); Silverman (Google) Tr. 197:23-199:7 (Ex. 177); Elzinga (Google Expert) Rebuttal Report, Ex. 5 (Ex. 214); GOOG-DOJ-18192970 (Ex. 215).

**Google's Response:**  Undisputed for purposes of this motion only.

176.    Google's vertically-focused ads are important to SVPs because the users who navigate through the unit can be of great commercial interest. *See*, *e.g.*, ███████████████ ██████ (Ex. 187).

**Google's Response:**  Undisputed for purposes of this motion only.

177.    Google has employed these data-sharing agreements since at least 2010.  GOOG-DOJ-29344264, -266, -269 (Ex. 216); ███████████████████████ (Ex. 217).

**Google's Response:**  Undisputed for purposes of this motion only.

178.    Google agrees to very few limitations on its use of SVP data. Baker Opening Report ¶ 277 (Ex. 1); Baker Rebuttal Report ¶ 39 (Ex. 2); *e.g.*, ████████████████████████████ (Ex. 224); GOOG-DOJ-29344264, -265-66 (Ex. 216); █████████████████████ (Ex. 217).

**Google's Response:**  Undisputed for purposes of this motion only.

179.    Shopping SVPs are an exception. For those SVPs, Google agrees to greater limitations on the type of data it receives as a condition of advertising and on its use of that data.

Baker Rebuttal Report ¶ 39 (Ex. 2); ███████████████████████ (Ex. 219); GOOG-

DOJ-31509915, -917-18 (Ex. 220); GOOG-DOJ-25762376, -377 (Ex. 221).

> **Google's Response:**  Undisputed for purposes of this motion only.

180.    Google uses SVP data for its own purposes in its hotels, flights, and local universals,

in local services ads, and in the hotel and flights immersive pages. Elzinga (Google Expert)

Rebuttal Report Ex. 5 & n.4 (Ex. 214); Google's Third Supplemental Responses to Pls.' 11/1/21

Notice of Deposition, Topic 9 (Ex. 222); Google SMF ¶¶ 84 (hotels), 182 (local services ads), 218

(flights).

> **Google's Response:**  Undisputed for purposes of this motion only.

181.    Google also uses ████████████████████████████████

████████████████████████████████████████ Baker

Opening Report ¶ 276 & n.388 (Ex. 1); Google Response to Plaintiffs States' Third Set of

Interrogatories, Interrogatory No. 10 (Ex. 151); Silverman (Google) Tr. 184:24-188:1 (Ex. 177);

██████████████████ (Ex. 223).

> **Google's Response:**  Disputed as not supported by the evidence as required by Federal
>
> Rule of Civil Procedure 56(c)(1) and Local Rule 7(h) with respect to the statement that "████
>
> ████████████████████████████████████████████"
>
> which finds no support in the cited evidence.  Undisputed for purposes of this motion only with
>
> respect to the statement that "███████████████████████████████
>
> ████████"  This statement is immaterial to the resolution of the motion.

182.    Google often does not compensate SVPs in return for allowing Google to use SVP

data, including SVPs that place hotel ads and local services ads. Baker Opening Report ¶ 277 (Ex.

1); Silverman (Google) Tr. 52:21-53:10 (Ex. 177); ████████████████████ (Ex. 223);

███████████████████████████ (Ex. 224); ██████████████████████████ (Ex. 186);

█████████████████████ (Ex. 225).

    **Google's Response:**  Undisputed for purposes of this motion only, with clarification. While Google does not provide cash payments to SVPs in connection with data license agreements, SVPs may receive business via links that are surfaced as a result of their data (which may be paid and/or unpaid, depending on the specialized unit).

    183.   Google also mandates that SVPs, such as ██████████████████████████ ███████████████████████████████, thus restricting SVPs' control over their valuable data. Baker Reply Report ¶¶ 166-67 & Figure 6 (Ex. 3); GOOG-DOJ-29344264, - 266 (██████ ████████████████████████████) (Ex. 216); ██████████████████████████ (█████████ ██████████████████████████████) (Ex. 218); GOOG-DOJ- 32223814, -817 ████████████████████████████████ (Ex. 258).

    **Google's Response:**  Undisputed for purposes of this motion only.

    184.   Some SVPs (████████ for example) have complained about the requirement to surrender their valuable structured data to Google. Holden (Google) 9/30/21 Tr. 211:8-12 ████████████████████████████████████████████████████ ████████████████████████████████████ (Ex. 32); █████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ (Ex. 215); *see also* ███████████████████████████████████████████████████ ██████████████████████████ (Ex. 187).

    **Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

185.    They have also registered official objections. 

(Ex. 223).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

### E.    By Harming SVPs, Google Protects its Monopolies and Limits Innovation

186.    Visibility limitations necessarily harm SVPs' brand recognition. Baker Rebuttal Report ¶¶ 72-73 ("reductions in traffic from Google to the SVP . . . will also tend to reduce SVP customer loyalty . . .") (Ex. 2).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Statement 186 merely restates an expert conclusion contained in Professor Baker's report and does not constitute a statement of material fact for purpose of summary judgment.  The cited paragraphs from Plaintiffs' expert report do not provide evidentiary support for this statement.

187.    And Google's data restrictions disincentivize SVPs from investing in their data further, as they cannot appropriate the value of these investments fully. Baker Reply Report ¶¶ 165

(Ex. 3).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Statement 187 merely restates an expert conclusion contained in Professor Baker's report and does not constitute a statement of material fact for purpose of summary judgment.  The cited paragraph from Plaintiffs' expert report does not provide evidentiary support for this statement.

188.    The overall effect of Google's conduct directed at SVPs is to make SVPs less attractive and less valuable partners for rival general search firms. Baker Opening Report ¶ 325 (Ex. 1); Baker Rebuttal Report ¶¶ 62-66 (Ex. 2).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  Statement 188 merely restates an expert conclusion contained in Professor Baker's report and does not constitute a statement of material fact for purpose of summary judgment.  The cited paragraphs from Plaintiffs' expert report do not provide evidentiary support for the statement.

189.    In the other direction, Google's conduct has made rivals less attractive to SVPs. Microsoft, for example, recognizes that



(Ex. 14); Baker Reply Report ¶ 179 (Ex. 3).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h) that "Google's conduct has made rivals less attractive to SVPs."  The cited testimony does not support the assertion that

██████████████████████████████████████████

██████████████████████████████████████████

████████████████     The cited expert report further provides no record evidence establishing any

connection between Google's conduct vis-à-vis SVPs ██████████████████████

█████████████████     *See also* Pls.' RSMF ¶ 235 (undisputed that ██████████████

███████████████████████████████████████████);

*id*. ¶ 237 (undisputed that ██████████████████████████

██████████████████████████████████████████

██████████).

190.     Moreover, ████████     recognizes   the   benefits   of   working   with   SVPs   whose

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████     (Ex. 14). As a result, █████     finds that, ██████████████

██████████████████████████████████████████

████████     (Ex. 14).

**Google's Response:**  Undisputed for purposes of this motion only, with clarification. ███

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

191.    The importance of SVP partnerships is demonstrated by ████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████ (Ex. 227).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

192.    Google cites the importance of partnering with ████████████████████

███████████████████████████████████████

████████████ (Ex. 227).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

193.    Google also emphasizes that, ██████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████.

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

194.   Google recognizes that increased SVP visibility can shift consumer behavior and result in elimination of Google as a necessary intermediary.  Thus, for example, ███

███████████████████████████████

███████████████████████████████

███████████████████████   GOOG-DOJ-02860873, -880-85

(Ex. 24); GOOG-NE-02291567 (recognizing the "existential fear" within Google that the "verticalization of the web" would "obviat[e] search") (Ex. 230).

**Google's Response:**   Undisputed for purposes of this motion only.  This statement is immaterial to the resolution of the motion.

195.   Google acknowledges that building visibility for SVPs risks disintermediation. Baker Rebuttal Report ¶¶ 70, 73 (Ex. 2); GOOG-DOJ-12436033, -034 (discussing concern with commercial effects of direct access and discussing initiatives to protect against disintermediation by local services SVPs) (Ex. 231); GOOG-DOJ-29831927, -930-31 (Ex. 172); GOOG-DOJ-11367339, -342 (identifying disintermediation risk from travel SVPs) (Ex. 232); GOOG-NE-11062391, -395, -402 (Ex. 233).

**Google's Response:**   Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  While the cited evidence refers to "disintermediation," it does not support the claim that "Google acknowledges that building visibility for SVPs risks disintermediation."  This statement merely sets forth Plaintiffs' expert conclusion.  This statement is immaterial to the resolution of the motion.

196.   Disintermediation would deprive Google of future ad revenues, decrease Google's scale, and reduce its leverage in bargaining to obtain SVP data. Baker Rebuttal Report ¶ 70, n. 178 ("SVP customers that reach it directly do not see or click on general search ads along their journey

to the SVP") & Fig. 3, ¶ 66, n. 165 (Ex. 2); ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ (Ex. 234).

**Google's Response:**  Undisputed for purposes of this motion only.  This statement merely sets forth Plaintiffs' theory of the case and expert conclusion.  This statement is immaterial to the resolution of the motion.

197.    Thus, Google is incentivized to limit SVP brand recognition to ensure that users continue using Google Search to find SVP content. Baker Rebuttal Report ¶¶ 70-75 (Ex. 2); GOOG-DOJ-29831927, -931 (Ex. 172); GOOG-DOJ-12436033, -034 (Ex. 231); GOOG-DOJ-11367339, -342 (Ex. 232); GOOG-NE-11062391, -395, -402 (Ex. 233).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited evidence does not support the stated claim, and this statement merely sets forth Plaintiffs' theory of the case and expert conclusion.  This statement is immaterial to the resolution of the motion.

198.    Notably, when designing the visibility of hotel SVP branding in Hotel Search, Google viewed users ignoring SVPs as "easy and not imprudent." GOOG-NE-04000767, -771 (Ex. 235).

**Google's Response:**  Disputed as not supported by the evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).  The cited evidence does not support the statement that "Google viewed users ignoring SVPs as 'easy and not imprudent.'"  This statement is immaterial to the resolution of the motion.

199.    Consumers would benefit from stronger partnerships in a competitive world. Indeed, as a senior SVP executive opined: ██████████████████████████████████

███████████████████████████████████████████████████████

█████████ (Ex. 187). ████████████████████████████████████

██████████████████████████. ████████████████████ (Ex. 187).

**Google's Response:**   The  statements  that  ██████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ are  disputed  as  not  supported  by  the

evidence as required by Federal Rule of Civil Procedure 56(c)(1) and Local Rule 7(h).   The only

evidence upon which Plaintiffs rely is a ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

        ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

 With respect to the third sentence of the statement, the cited testimony does not relate to potential partnerships between ▮▮▮▮ and search engines.  *Id.* at 252:24-255:19; 283:4-284:10.

[SIGNATURES ON NEXT PAGE]

Dated: February 27, 2023               Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*