# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                    Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>██████████████ |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>                    Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>██████████████ |

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR SANCTIONS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND .............................................................................................4

     A.     The Google Chat Product..........................................................................4

     B.     Google's Document Preservation, Collection, and Production ...........................5

     C.     The Parties' Correspondence Regarding Chats Before DOJ's Lawsuit .................7

     D.     The Parties' Correspondence Regarding Chats Since DOJ Filed Its Search Lawsuit....................................................................................................11

LEGAL STANDARD .......................................................................................................18

ARGUMENT ...................................................................................................................18

I.     Plaintiffs' Unreasonable Delay in Raising Any Objection Bars Their Motions................19

     A.     Plaintiffs Have Known About the Very Practices They Now Challenge for at Least Two Years. ................................................................................20

     B.     Plaintiffs Never Before Brought Any Objection to Either Google or the Court ........................................................................................................23

     C.     Plaintiffs Sat On Any Objection Until Long After the Close of Fact Discovery. ..................................................................................................23

II.     Google Took Reasonable Steps to Preserve Relevant Documents. ...................................25

III.     Plaintiffs Were Not Prejudiced. ........................................................................29

IV.     Google Did Not Act With an "Intent to Deprive." ............................................34

V.     No Additional Discovery is Required or Appropriate. ........................................39

CONCLUSION.................................................................................................................42

# TABLE OF AUTHORITIES

## CASES

*Al-Sabah v. Agbodjogbe*, 2019 WL 4447235 (D. Md. Sept. 17, 2019) .........................................23

*Ala. Aircraft Indus., Inc. v. Boeing Co*., 319 F.R.D. 730 (N.D. Ala. 2017), *aff'd*, 2022 WL 433457 (11th Cir. Feb. 14, 2022)..............................................................................................27

*Am. Nat'l Prop. & Cas. Co. v. Campbell Ins., Inc*., 2011 WL 3021399 (M.D. Tenn. July 22, 2011) ..........................................................................................................................................24

*Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976 (N.D. Cal. 2012) ...............................28, 32

*Apple Inc. v. Samsung Elecs. Co*., 881 F. Supp. 2d 1132 (N.D. Cal. 2012) ...................................28

*Auer v. City of Minot*, 896 F.3d 854 (8th Cir. 2018).........................................................................35

*Barbera v. Pearson Educ., Inc*., 906 F.3d 621 (7th Cir. 2018).........................................................35

*Best Payphones, Inc. v. City of N.Y.*, 2016 WL 792396 (E.D.N.Y. Feb. 26, 2016)..................31, 32

*Bethel v. Rodriguez*, 2022 WL 2157065 (D.D.C. June 15, 2022) ....................................................30

*Borum v. Brentwood Village, LLC*, 332 F.R.D. 38 (D.D.C. 2019)....................................... *passim*

*Brittney Gobble Photography v. Sinclair Broad. Grp., Inc.*, 2020 WL 1809191 (D. Md. Apr. 9, 2020)......................................................................................................................35, 36

*Bulies v. MSC Cruises, S.A*., 2022 WL 2340959 (S.D. Fla. Mar. 14, 2022) .................................27

*Burns v. Medtronic Inc.*, 2017 WL 11633269 (M.D. Fla. Aug. 9, 2017) ........................28, 30, 33

*Dickerson v. D.C.*, 2022 WL 656172 (D.D.C. Mar. 3, 2022).....................................................30, 33

*Doe v. Wesleyan Univ*., 2022 WL 2656787 (D. Conn. July 8, 2022)...............................................38

*Does 1-15 v. City of Chicago*, 2019 WL 2994532 (N.D. Ill. July 9, 2019) ..............................31, 32

*DR Distribs., LLC v. 21 Century Smoking, Inc*., 513 F. Supp. 3d 839 (N.D. Ill. 2021) ..........27, 29

*Easterwood v. Carnival Corp*., 2020 WL 6781742 (S.D. Fla. Nov. 18, 2020) ...............................28

*Eisenband v. Pine Belt Auto., Inc.*, 2020 WL 1486045 (D.N.J. Mar. 27, 2020)............................30

*Emery v. Harris*, 2014 WL 710957 (E.D. Cal. Feb. 21, 2014).......................................................23

*Equate Media, Inc. v. Suthar*, 2022 WL 2101710 (C.D. Cal. Feb. 2, 2022) .................................22

*Flores v. AT&T Corp.*, 2018 WL 6588586 (W.D. Tex. Nov. 8, 2018) ..........................................35

*FTC v. DirectV, Inc.*, 2016 WL 7386133 (N.D. Cal. Dec. 21, 2016)..........................................32

*Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161 (D.C. Cir. 2013) .................................31, 32

*Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116 (N.D. Ga. 2007)..........................................40

*GMS Indus. Supply, Inc. v. G&S Supply, LLC*, 2022 WL 853626 (E.D. Va. Mar. 22, 2022) ..........................................................................24

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009) ..........................................24

*In re Dynex Cap., Inc. Sec. Litig.*, 2011 WL 2581755 (S.D.N.Y. Apr. 29, 2011).........................40

*La Belle v. Barclays Cap. Inc.,* 340 F.R.D. 74 (S.D.N.Y. 2022)..................................................26

*Larios v. Lunardi*, 442 F. Supp. 3d 1299 (E.D. Cal. Mar. 5, 2020), *aff'd*, 856 F. App'x 704 (9th Cir. 2021)..........................................................................24

*Laughlin v. Stuart*, 2020 WL 4747665 (D. Minn. Aug. 17, 2020), *aff'd*, 2020 WL 5799497 (D. Minn. Sept. 29, 2020) ..........................................................27

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ..................................................32

*Long v. Howard Univ.*, 561 F. Supp. 2d 85 (D.D.C. 2008) .................................................. *passim*

*Marshall v. Dentfirst, P.C.*, 313 F.R.D. 691 (N.D. Ga. 2016).................................................31, 33

*Martin v. D.C.*, 78 F. Supp. 3d 279 (D.D.C. 2015)..........................................19, 23, 24

*Mkrtchyan v. Sacramento County.*, 2021 WL 5284322 (E.D. Cal. Nov. 12, 2021) ....................36

*Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410 (W.D.N.Y. 2017) ..........................................38

*Muro v. Target Corp.*, 250 F.R.D. 350 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) ..........................................................................40

*Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urb. Dev.*, 19 F. Supp. 3d 1 (D.D.C. 2013) ..........................................................................40

*O'Berry v. Turner*, 2016 WL1700403 (M.D. Ga. Apr. 27, 2016) ..................................................38

*Olson v. Shawnee Cnty. Bd. of Comm'rs*, 7 F. Supp. 3d 1162 (D. Kan. 2014) ............................24

*Perez v. U.S. Postal Serv.*, 2014 WL 10726125 (W.D. Wash. July 30, 2014) ..............................32

*Pietrangelo v. Refresh Club, Inc.*, 2022 WL 17616353 (D.D.C. Dec. 13, 2022) ..........................35

*Pugh-Ozua v. Springhill Suites*, 2020 WL 6562376 (S.D.N.Y. Nov. 9, 2020) ............................31

*Rhabarian v. Cawley*, 2014 WL 546015 (E.D. Cal. Feb. 11, 2014), *aff'd*, 701 F. App'x 676 (9th Cir. 2017)....................................................................................................24

*Russell v. Univ. of Tex.*, 234 Fed. App'x 195 (5th Cir. 2007) (per curiam)..................................35

*Sherwood Inv. Overseas Ltd., Inc. v. Royal Bank of Scotland N.V.*, 2015 Bankr. LEXIS 2513 (Bankr. M.D. Fla. Jul. 22, 2015), *aff'd*, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016) .......................................................................................................................23

*Simon v. City of N.Y.*, 2017 WL 57860 (S.D.N.Y Jan. 5, 2017) ....................................................30

*Sines v. Kessler*, 2021 WL 4943742 (W.D. Va. Oct. 22, 2021) ....................................................38

*Steves & Sons Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96 (E.D. Va. 2018) ..........................................30

*Stovall v. Brykan Legends, LLC*, 2019 WL 480559 (D. Kan. Feb. 7, 2019) ................................35

*THEC Int'l-Hamdard Cordova Grp.-Nazari Constr. Co. Joint Venture v. Cohen Mohr, LLP*, 301 F. Supp. 3d 1 (D.D.C. 2018) ............................................................................19

*Trading Places Int'l, LLC v. Summerwinds Resort Servs., LLC*, 2017 WL 6383983 (W.D. Mo. May 12, 2017) .........................................................................................................31

*Trs. of Elec. Workers Loc. No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.*, 266 F.R.D. 1 (D.D.C. 2010)...........................................................................................................41

*Ungar v. City of N.Y.*, 329 F.R.D. 8 (E.D.N.Y. 2018) ..................................................................39

*United States ex rel. Scutellaro v. Capitol Supply, Inc.*, 2017 WL 1422364 (D.D.C. Apr. 19, 2017) .......................................................................................................................39

*USI Ins. Servs. LLC v. Bentz*, 2020 WL 7753690 (D.N.D. Dec. 29, 2020), *aff'd*, 2021 WL 9666616 (D.N.D. Feb. 4, 2021) .................................................................................26

*Vasser v. Shulkin*, 2017 WL 5634860 (D.D.C. Nov. 22, 2017)....................................................28

*Walker v. Geico Indem. Co.*, 2018 WL 7917655 (M.D. Fla. Oct. 11, 2018)................................31

*Williams v. Johnson*, 747 F. Supp. 2d 10 (D.D.C. 2010)..............................................................41

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003)...............................................28

## OTHER AUTHORITIES

Fed. R. Civ. P. 37 ................................................................................................... *passim*

Federal Rule of Evidence 502......................................................................................41

**INTRODUCTION**

Plaintiffs' motions concern Google's long-standing approach to the preservation of instant messages created through Google's commercial product Google Chat (formerly Google Hangouts).  At issue is a subset of those "chats"—specifically, "history off" messages sent after a document custodian was placed on legal hold.  Nine months after the close of fact discovery and with summary judgment motions briefed, Plaintiffs now take issue with Google's preservation methodology for this narrow category of ESI—in a case in which Plaintiffs have had the benefit of more than 31 million pages of document discovery from Google, the depositions of more than 50 Google witnesses, and the production of all responsive "history on" chats.  Indeed, all the more striking, Plaintiffs have known *for years* of the very approach to chat preservation that they now contend warrants sanctions.  Plaintiffs should not be heard to complain at this late hour.

Nor do their motions have merit for multiple other reasons:  Google's preservation practices both were reasonable and are easily distinguishable from those in the cases they cite.  And Plaintiffs cannot demonstrate prejudice, much less an intent by Google to destroy evidence necessary for the adjudication of their claims given the nature of the issues in this case and the voluminous discovery Plaintiffs have received.  The motions should be denied.

As part of its regular data retention practices, Google has long followed a tiered approach with respect to chats.  Google's approach was designed to distinguish between those messages more likely to contain substantive communications (and thus more likely to be subsequently searched for and referred to by employees in the ordinary course of business), on the one hand, and those less likely to be substantive, on the other (and thus not retained on a routine basis).  While "history on" messages are retained longer (and indefinitely preserved when on legal hold), those messages that are less likely to contain substantive communications, *i.e.*, "history off" chats, are not retained longer than 24 hours.  When there is litigation, Google instructs employees on legal

1

hold not to use messaging apps like Google Chat to discuss the subjects at issue in the litigation and, if they must, to switch their settings to "history on" for chats regarding the subjects at issue in the litigation, so that any such messages are preserved.

Plaintiffs now challenge Google's judgment as to how to approach prospective preservation for this specific category of chats—*i.e.*, those generated on a going-forward basis after the issuance of the legal hold and long after the central events at issue occurred.  In essence, Plaintiffs contend that the Federal Rules specifically mandate that Google should have applied a forced history on setting for *all* custodians for *all* chats created while the custodian was on legal hold, regardless of the possible relevance of the message to the litigation.  But Rule 37(e) does not mandate that.  It "only calls for reasonable steps to preserve" discoverable ESI.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Google's vast preservation efforts here— and specifically its methodology with respect to history-off chats—were "reasonable steps" under the Rule.

Moreover, Plaintiffs cannot show any prejudice, as they have not been denied access to material information needed to prosecute these cases and they have offered no evidence that Google intentionally destroyed such evidence.  *See* Fed. R. Civ. P. 37(e)(1)–(2).  Google's collection and production of documents encompassed millions upon millions of documents from more than 100 custodians.  And Google collected over half a million chats that were preserved from relevant custodians; yet only *637* were deemed responsive to Plaintiffs' extraordinarily broad document requests and not a single one of these chats has been used in any way in this litigation to date.

That chats have not had any evidentiary significance in this litigation is unsurprising.  These cases are about the terms of and circumstances surrounding long-standing

Google agreements with third parties and Google product designs that are publicly observable by anyone with a connection to the Internet—conduct which predates by many years the investigations that led to these lawsuits. There is little reason to believe that material new information would be found in any chat that was not preserved given the tens of millions of documents that Google collected for purposes of document review and the over four million documents that were actually produced, not to mention the terabytes of data, voluminous third-party productions, and many dozens of depositions that also comprise the massive discovery record in these cases.

Further, Plaintiffs' criticism of Google's chat preservation methodology comes *years* after Plaintiffs were informed by Google of the very approach that Plaintiffs now contend warrants sanctions. As detailed below, Plaintiffs' own correspondence with Google includes, for example, 2021 correspondence from DOJ memorializing that "*chats not marked 'on-the-record' are not collected and produced to the Division*" and 2020 correspondence with co-Plaintiff Texas showing the same. Plaintiffs' silence throughout the entire course of discovery in this litigation is all the more notable given that the plaintiffs in the *Google Play* litigation raised this very issue beginning in December 2021, arguing in a public filing that they had concerns about Google's reliance on custodians to turn history on, and pursuing (and subsequently receiving) interrogatory responses from Google regarding these policies. Every one of the 37 States that is a plaintiff in the *Google Play* litigation is a Plaintiff here: Eight are co-Plaintiffs in DOJ's lawsuit, and the remaining 29 are co-Plaintiffs in the Colorado Plaintiffs' lawsuit. Yet no party brought any question or any concern regarding chat preservation to the attention of either Google or the Court throughout the entire course of discovery in this case. Now is not the time to turn back the clock to revisit long-settled discovery, and Plaintiffs' motions present no reason to do so.

3

## FACTUAL BACKGROUND

### A.      The Google Chat Product

Google Chat is an instant messaging service offered by Google to the public as part of its "Google Workspace" solution, a cloud-based system that also includes email (Gmail), document storage/management (Drive), and other productivity applications (*e.g.*, Sheets, Slides, Docs).[1] Google's Chat product allows for both one-on-one instant messaging and group messaging.  The product also enables a variation of group chat, called "Spaces" (previously called "Rooms"), which is intended to facilitate "collaborat[ion] on long-term projects with teams or specific groups."  Ex. 1, https://support.google.com/chat/answer/7659784?hl=en.

For each conversation type, corporate information technology administrators may choose from two default settings, "history on" or "history off," and additionally may choose whether the default may be changed by the employee.[2]   *Id.*, Ex. 1, https://support.google.com/chat/answer/7659784?hl=en; *see also* Ex. 2, https://support.google.com/chat/answer/7664687?hl=en.  Messages sent with "history on" are able to be retained via Google Vault, an information governance and eDiscovery tool that Google offers as part of Google Workspace; Google Vault allows the corporate administrator to select the retention period for history-on chats.  Ex. 3, https://support.google.com/a/answer/7664184?hl=en; *see also* Ex. 4, https://support.google.com/vault/answer/2462365.  Messages sent with "history off" are deleted 24 hours from when the message is sent, and cannot be retained via Google Vault.  Ex. 3,  https://support.google.

---

[1]  The predecessor product to Google Chat was Google Hangouts, and thus the parties' correspondence discussed herein contains references to "Hangouts."  For purposes of this brief, Google uses "Chat" to refer to Google Chat and Google Hangouts.

[2] The exception to the history on/off functionality is for spaces organized by conversation topic, where history is always on and cannot be changed. *Id.*, Ex. 1, https://support.google.com/chat/answer/7659784?hl=en.

com/a/answer/7664184?hl=en; *see also* Ex. 4, https://support.google.com/vault/answer/2462365. These settings are static attributes of the Google Chat product, applicable to all third-party customers who license the product, and not specific to Google's own use.

For Google Chat as used by its own employees, Google has chosen "history off" by default for one-on-one conversations and all group conversations that occur outside of threaded spaces. Ex. 5, Google Play Hearing Tr. at 53. Threaded spaces are always set to "history on," and employees cannot toggle to "history off." *Id.* For one-on-one and group conversations outside of those contexts, as well as flat (*i.e.*, non-threaded) spaces, the employee may change the history setting in that conversation by simply clicking on a button. *Id.*

## B.    Google's Document Preservation, Collection, and Production

Google has devoted enormous resources to preserving, collecting, reviewing, and producing relevant documents and data in this litigation and the investigations that preceded it. Plaintiffs obtained an incredible breadth of document discovery from Google—whether measured in terms of date range (spanning nearly 20 years), number of custodians (129 in the litigation alone), the number and scope of search strings utilized to identify responsive documents (more than 140 search strings, many of which included hundreds of search term permutations), or the sheer number of documents collected (tens of millions) and produced (approximately 4.3 million documents, comprising approximately 31 million pages).

All of the Google employees who have been identified as document custodians in this litigation were placed on legal hold as they were identified during the investigation and litigation, and they all remain on hold today. Google's legal hold involves a combination of automated back-end preservation for certain ESI types, as well as instructions to the custodians. With respect to chats specifically, the legal hold notice instructed the custodians not to use Google Chat (or any other messaging apps) to discuss those topics covered by the legal hold. And the notice further

instructed the custodians that if they do use Google Chat (or any other messaging app) to discuss any topic covered by the legal hold, then they must make sure the settings preserve the messages, such as by switching to "history on" for chats. Google has reminded custodians of their preservation obligations on a regular basis throughout the investigations and litigation.

Plaintiffs' motions only concern "history-off" chats generated by document custodians after the custodian was placed on legal hold. The preservation practice that is now the focus of Plaintiffs' motions—Google instructing custodians on legal hold to, on a going forward basis, either avoid having relevant conversations using Google Chat or to ensure that they preserve those communications by turning the setting to "history on"—is Google's long-standing practice. There are two principal reasons for Google's historical reliance on custodial compliance. The first is the nature of the Google Chat product. Google calibrates the length of time records are retained to the likely importance and usefulness of the record. In the ordinary course, for example, email is retained for 18 months; on-the-record/history-on chats are retained for 18 months where they occur in group conversations, flat spaces, and threaded spaces, and 30 days where they occur in a one-on-one conversation. Ex. 5, Google Play Hearing Tr. at 18, 27, 31; *see also* DOJ Ex. 3 at -67, -68, -77; DOJ Ex. 25 at -12652. By contrast, history-off chats are not retained and are deleted within 24 hours from when the message was sent. Ex. 5, Google Play Hearing Tr. at 52; *see also* DOJ Ex. 25 at -12652. This calibration reflects Google's determination that history-off chats are less likely to be substantive and less likely to be referred to by Google employees in the ordinary course of business as compared to other categories of ESI such as email and history-on chats that occur in formal group spaces, informal groups, and one-on-one. Ex. 5, Google Play Hearing Tr. at 15–18, 27–28, 31–33, 45–46.

The second reason for Google's approach is technological.  As explained on its public website, messages sent with the history-off setting are deleted within 24 hours and are not able to be retained by the Google Workspace eDiscovery tool.  *See* Ex. 4, https://support.google.com/vault/answer/2462365 ("Vault is an information governance and eDiscovery tool for Google Workspace…. You can use Vault for the following data: … Google Chat messages (history turned on) … Classic Hangouts messages (history turned on); Ex. 3, https://support.google.com/a/answer/7664184?hl=en ("If you turn history Off, messages are deleted after 24 hours. Vault can't hold, retain, or search direct messages that are sent with history turned off.").  Google was able to extend the retention period for history-on chats, and did so, such that any chats sent with history on are retained indefinitely throughout the legal hold.  DOJ Ex. 3 at -77.  But Google's Vault tool did not have the same capability with respect to history-off chats, without a product redesign.

## C.    The Parties' Correspondence Regarding Chats Before DOJ's Lawsuit

Google engaged in extensive discussions with DOJ and various State AGs in response to pre-suit investigative demands issued in Fall 2019 and early 2020, and submitted to wide-ranging document and deposition discovery.  As detailed below, Google employees' use of chats and Google's policies and practices around the retention of chats were discussed, and both DOJ and numerous State AGs were aware of Google's practices as a result of correspondence and deposition discovery.

**Google's Response to DOJ's ESI Questionnaire.**  Google responded to DOJ's ESI Questionnaire in November 2019, in the early months of DOJ's investigation.  DOJ Ex. 3.  Google enclosed with its responses to the questionnaire its two primary written policies in effect at the time related to document retention, noting that they had been in place since 2013.  DOJ Ex. 3 at -65, -75, -76, -77, -78.  Google explained that it "primarily uses the Google-developed 'G Suite'

solution for workplace productivity.  G Suite is a cloud-based system that includes email (Gmail), chats (Hangouts/Hangouts Chats), storage/management (Drive), and other productivity applications (e.g., Sheets, Slides, Docs)." *Id.* at -67.[3]  In response to a question about the "use of text and other messaging applications including Instant Messaging ('IM') programs, and the period for which these messages are retained," Google responded, "G Suite has messaging capabilities, including Google Hangouts.  Google Hangouts messages are generally retained for a period of 30 days *if they have been marked on-the-record*, and potentially longer if on-the-record messages are on legal hold." *Id.* at -68 (emphasis added).  In the section titled "Preservation Efforts," *id.* at -73, Google explained that it "has put a legal hold in place," *id*. at -74.  Google stated, "The legal hold suspends auto-deletion.  Documents, including version history, are preserved as of the collection date." *Id.*  Google further noted, "The hold notice also instructs custodians to preserve relevant documents." *Id*.

The enclosed retention policies provided further detail on Google's practices.  The Gmail retention policy, which at the time "applie[d] to Gmail, Chats, and Hangouts," contained a section titled "Exceptions." *Id*. at -77, -78.  There, it listed "Exceptions to the 18-month (540-day) retention period," and as relevant to chats, stated, "On the record chats, and Hangouts with 'history' checked on, will be retained for 30 days." *Id*.  It further noted that "Email, on the record Chats, and Hangouts with 'History' checked on, that are subject to a Legal Hold, will be preserved for the duration of the Legal Hold." *Id*. at -77.

Additional information about chats was (and is today) publicly available.  Google Chat, and its predecessor product Google Hangouts, has always had the functionality for the user or administrator to determine whether messages are saved or deleted after 24 hours.  Google's public

---

[3] "G Suite" is now "Google Workspace."

product pages specify that the message tool allows for chats to be sent with either history on or off, and *that the latter is not retained and is not able to be searched or retrieved by Google's e-discovery tool*.  *See*  Ex. 4, https://support.google.com/vault/answer/2462365 ("Vault is an information governance and eDiscovery tool for Google Workspace…. You can use Vault for the following data: … Google Chat messages (history turned on) … Classic Hangouts messages (history turned on)"); Ex. 3, https://support.google.com/a/answer/7664184?hl=en ("If you turn history Off, messages are deleted after 24 hours. Vault can't hold, retain, or search direct messages that are sent with history turned off.").[4]

**Google's Response to Texas's Inquiry Regarding Chat Retention.**  Google was also responding to civil investigative demands from a multi-state group led by the Texas AG (one of DOJ's co-Plaintiffs in this case, and among the co-Plaintiffs that has participated in the parties' many discovery communications over the course of this litigation).  In January and February 2020, Google and Texas discussed Google's chat retention policies and preservation practices at length.  Google's January 16, 2020 letter provided some of the same information previously provided to DOJ.[5]  The parties then participated in two meet-and-confers regarding chats and a

---

[4] To the extent DOJ suggests that Google's subsequent standalone chats policy reflected a change in how history-off messages are treated (*see* Mot. at 9, describing the November 2020 policy as "calling for the destruction of history-off chats after 24 hours"), that is wrong.  As the November 2020 policy expressly states, there was no change with respect to the retention of history-off chats.  DOJ Ex. 25 at -12654.  And as DOJ acknowledges elsewhere, this is a function of the static product settings and is the case for all who use Google Chat.

[5] Ex. 6 at 4 (Jan. 16, 2020 Letter from Google to Texas) ("Google primarily uses the Google-developed 'G Suite' solution for workplace productivity. G Suite is a cloud-based system that includes email (Gmail), chats (Hangouts/Hangouts Chats), storage/management (Drive), and other productivity applications (e.g., Sheets, Slides, Docs).  Google Hangouts messages are generally retained for a period of 30 days *if they have been marked on-the-record*, and potentially longer if the custodian of the on-the-record messages are on legal hold.  To the extent that a custodian has on-the-record responsive Hangout chat messages retained while on a legal hold or that were still

number of other topics.  Following those calls, Texas wrote to Google "to memorialize our agreements from the two calls and to highlight the outstanding issues."  Ex. 7 at 1 (Feb. 4, 2020 Letter from Texas to Google).  Texas's description of the parties' calls reflected its express understanding that chats "are not retained in any way," *including for users on legal hold*, "unless they are marked on-the-record":

> The parties further discussed chat and text messages.  As we understand your description of this type of communication, Google Hangouts messages are akin to instant messages between Google employees.  *These messages are not retained in any way unless they are marked on-the-record by the user.*  If marked on-the-record, they are maintained for thirty days and then deleted.  *If the user is on a legal hold, the user is told to mark all chats as on-the-record.  If the user does not take this action for every conversation, the unmarked ones will be deleted immediately.*  If a person on legal hold marks the chats as on-the-record, the marked records are retained indefinitely.

Ex. 7 at 2 (Feb. 4, 2020 Letter from Texas to Google (emphases added)).  Google's response to this letter further confirmed that chats that are not on-the-record are not retained, and further clarified that the default setting is off-the-record: "Google Hangout messages by default are set to be 'off-the-record.'  Off-the-record messages are not retained by Google."  Ex. 8 at 4 (Feb. 7, 2020 Letter from Google to Texas).

At no point following these communications did Texas tell Google that it considered Google's approach to chat preservation to violate the Federal Rules or constitute sanctionable conduct.

During the investigations, Google had agreed to the States' and DOJ's requests that the States and DOJ be permitted to share information produced by Google to other States and to DOJ.  Ex. 10 at ¶ 6 (Rubinstein Declaration).

---

retained pursuant to the 30-day retention policy at the time documents were collected pursuant to the CID, those messages will be included in productions to OAG.") (emphasis added).

### D. The Parties' Correspondence Regarding Chats Since DOJ Filed Its Search Lawsuit

On October 20, 2020, DOJ (joined by eleven states, including Texas) filed its lawsuit challenging Google's search distribution contracts.[6] DOJ's investigation to that point had focused on both Google's search distribution contracts and its ad tech business.[7]

**State AGs' Questioning of Google Witness Regarding Chat Retention.** A separate consortium of States continued their investigation of Google's Search business, ultimately filing a lawsuit two months later on December 17, 2020. In an investigative deposition taken on November 16, 2020 by Colorado (and attended by attorneys representing Utah, Nebraska, California, Iowa, and Tennessee), the questioner asked a Google executive specifically about Google's chat retention policy. In response, the Google witness testified that the default is 24 hours and that to save the conversation for a longer period, the user may toggle a switch:

Q.   Okay. And how are those Google Chat functions archived?

A.   That depends on the settings. I don't know the details of how they are archived. But some of them save and some of them are more like 24 hours.

Q.   And what -- what determines whether something is saved or it is just gone in 24 hours?

A.   There's not an automatic thing in the background. You are either marked as, in the 24-hour mode, or you're in the saving mode.

Q.   And is that -- is that based upon what the users do in terms of designating it as a -- in a saved mode?

A.   A user designates it, yes. There's a default on it.

Q.   Default, whether to save or -- or to not save?

---

[6] Three additional States subsequently joined DOJ's case. ECF No. 94 at 2.

[7] Years later, on January 24, 2023, DOJ with a number of States filed a complaint challenging certain conduct related to Google's ad tech business in federal court in the Eastern District of Virginia.

A.    Yeah.  And then a user can change the setting.

Q.    I see.  And -- and in terms of the users, are there instructions generally given to people as to how certain types of chats should be saved or not or how the -- the settings should be set as a default?

A.    I think in general, rather than trying to give the instruction, the company just sets the default.

Q.    And what is the default?

A.    I believe the default now is the 24 hours, but I don't know if that's true across the whole company.

. . .

Q.    And if there is a Chat that someone says I want to keep this, this is important information, how does -- how does someone do that?

A.    It can say they can toggle a switch.  And then it will save it.

Ex. 9 at 55:5–56:12, 56:25–57:5 (E. Reid CID Tr., Nov. 16, 2020).[8]

At no point did the Plaintiffs in the Colorado case (either during the investigation or at the time the litigation was filed one month after this deposition) tell Google that they considered Google's approach to chat preservation to violate the Federal Rules or constitute sanctionable conduct.

**Google's Response to DOJ's Inquiry Regarding Chat Retention in the Ad Tech Investigation.**  Meanwhile, DOJ's ad tech investigation was continuing, and DOJ and Google expressly discussed the preservation of Hangouts/Chats.  On a December 3, 2020 meet-and-confer call, counsel for Google explained to DOJ that a Hangouts user has the ability to go on the record or off the record, and if a conversation is off the record, then it is not being retained.  Ex. 10 at ¶

---

[8] The same Google executive was re-deposed again in this litigation on January 11, 2022 by both the Colorado Plaintiffs and DOJ; undersigned counsel presumes that DOJ reviewed the investigative deposition transcript in preparation for that deposition, if DOJ had not previously reviewed it.

11a (Rubinstein Declaration). DOJ's subsequent letter reflects that it understood that the preservation of chats was not done as an automated back-end system setting but rather depended on the custodian on legal hold complying with the hold notice by marking the message as on the record. Ex. 11 at 1-2 (Dec. 23, 2020 Letter from DOJ to Google ("The Division requests that the Company identify . . . any steps taken by the Company to ensure employees comply with the preservation notice, including whether employees properly preserve responsive conversations from chats . . . as 'on the record.'")); *see also* Ex. 12 at 2 (Jan. 28, 2021 Letter from Google to DOJ (Google's response, advising that "[f]or chats, employees are instructed to keep all potentially responsive conversations as 'on the record,' and are sent a reminder approximately every six months")).

At no point during the parties' discussions did DOJ tell Google that it considered Google's approach to chat preservation to violate the Federal Rules or constitute sanctionable conduct.

**Google's Responses to Plaintiffs' Questions Regarding Chats Collection and Production in the Search Litigation.** The exchanges with DOJ in the ad tech investigation regarding chat preservation occurred at the same time document discovery was beginning in this litigation. DOJ served its first requests for production on January 5, 2021, and its second on January 11, 2021. Other than in a deposition at the end of discovery (described *infra*), the parties did not discuss chat preservation in the context of the present litigation. Plaintiffs sought confirmation from Google that chats were among the types of ESI it would be reviewing and producing (*i.e.*, that Google was not excluding that file type from its collection), *see* DOJ Exs. 28, 32, and further sought information regarding the mechanics of how chats would be identified for responsiveness review—specifically, which search terms would be run across the collected chats and the method of how they would be applied (*i.e.*, whether a single message would have to contain

the complete search string to be captured in the collection or whether the search string would be run across multiple messages), *see* DOJ Exs. 29, 30, 31, 32.  As addressed in more detail *infra* p. 37, Google did not understand these discussions in the manner that DOJ now construes them—as somehow representing that all chat messages, including those sent with history off, were being preserved.  DOJ Mot. at 10, 28–29.  Counsel for Google had already expressly informed DOJ and Texas (who was a regular participant on the parties' meet-and-confer calls in the Search litigation) that chats were not retained for custodians on legal hold unless the chat was on the record; thus, there was no reason to think that Google's practices were not well-known and understood by DOJ and their co-Plaintiffs.[9]  And with respect to the Colorado Plaintiffs, they had already obtained witness testimony on the matter, including the fact that whether off-the-record chats were saved beyond 24 hours depended on how the message is designated by the user.

**DOJ's Questioning of Ad Tech Witnesses Regarding Chat Preservation and Request for Additional Custodial Data Reflecting Chat Preservation.**  Concurrently with these conversations in Spring and Summer 2021, DOJ was taking the investigative depositions of Google witnesses in its ad tech investigation.  DOJ questioned Google employees specifically about the purposes for which they used Google Chat and whether they marked chats on the record.  *See, e.g.*, Ex. 13 at 34:23–35:7, 282:19–283:23 (██████).  DOJ also requested that Google provide "the number of 'on the record' chats collected from each [specified]

---

[9] The same outside counsel for Google who had led its response to document collection and production in response to the 2019 DOJ CIDs continued to lead the response to the follow-on 2020 ad tech CID through December 2020, before transitioning the day-to-day CID response work to another law firm currently leading defense of that case.  Ex. 10 at ¶¶ 3–8 (Rubinstein Declaration).  Thus, the same lawyers for Google who had communicated with DOJ lawyers regarding the 2019 CIDs, and who were continuing to communicate with DOJ regarding the Search litigation, were also communicating with DOJ over the continuing ad tech investigation.  In addition, at least one DOJ attorney participated in meet-and-confer calls about both the 2019 DOJ CIDs and the 2020 ad tech CID.  Ex. 10 at ¶ 9 (Rubinstein Declaration).

custodian." Ex. 14 at 2 (June 1, 2021 Letter from DOJ to Google). DOJ's June 1, 2021 letter reflected its understanding that only on-the-record chats are collected: "[W]e understand from you that relevant 'on the record' chats are collected and produced as part of Alphabet's document productions, but that *chats not marked 'on the record' are not collected and produced to the Division*." Ex. 14 at 2 (June 1, 2021 Letter from DOJ to Google). The following month, DOJ reiterated its request for custodial-level document collection information, citing deposition testimony and its review of chats produced where "a chat participant requests to have a conversation with history off." Ex. 15 at 2 (July 23, 2021 Letter from DOJ to Google). Google provided the requested data on July 28, 2021, identifying the total number of chats collected from the requested custodial groups, as well as the number collected for each individual custodian. Ex. 16 at 2–6 (July 28, 2021 Letter from Google to DOJ). Following these exchanges, DOJ continued to question Google witnesses who sat for ad tech investigative depositions regarding the purposes for which they used chat.

At no point during the remainder of DOJ's ad tech investigation, which continued for another 18 months, did DOJ ever inform Google that it considered Google's chat retention practices (including its reliance on instructions to custodians to place relevant chats on the record) to violate the Federal Rules or constitute sanctionable conduct.

***Google Play* Plaintiffs Litigate Google's Chat Retention Policies.** During this same time period, Google was simultaneously litigating antitrust claims in the Northern District of California brought by a number of States and private plaintiffs regarding Google's policies on the *Google Play* Store (an app store found on Android mobile devices). The first private case was filed on August 13, 2020, and a consortium of 37 States (each of which is also a plaintiff in the Search cases before this Court) filed suit on July 7, 2021; the cases are proceeding as part of an MDL

before Judge Donato.  The plaintiffs in the *Google Play* litigation questioned Google witnesses regarding their use of Google Chat, along the same lines as DOJ's questioning of witnesses in its ad tech investigation.  The *Google Play* plaintiffs first raised an issue regarding "Google's preservation of relevant Google Chats and text messages" to that court in December 2021.  The Joint Case Management Statement, filed on the public docket, contained an 8-page recitation of the parties' respective positions.  Ex. 17 (Case No. 3:21-md-02981-JD, ECF No. 233) at 6–14.  Plaintiffs cited Google's chat retention policy (which was first memorialized in a standalone document in November 2020) and deposition testimony explaining that by default certain chats would "disappear after 24 hours" unless a participant turned history on.  *Id.* at 6–9.  Google's responsive statement explained that "any deletion of Chats was based on Google's usual course retention of chats for 24 hours" and that custodians on legal hold are asked to preserve any conversation about the topics covered by the hold.  *Id.* at 10–14.

**Discussions at the Close of the Search Litigation Fact Discovery Period.**  Following discussions in Spring/Summer 2021 about the methodology by which Google would apply the agreed search terms to chats (and text messages), the parties did not discuss chats again in the Search litigation until the final months of fact discovery.  On March 30, 2022, DOJ requested specific information about the volume of produced chats.  DOJ Ex. 33 at -31, -32 (March 30, 2022 Email from DOJ to Google).  Google provided the requested information, including identifying the Bates numbers of chats produced during the investigation and litigation.  DOJ Ex. 33 at -30 (April 13, 2022 Email from Google to DOJ).  In response, DOJ requested that Google apply broader search terms to the collected chats.  DOJ Ex. 34 at -34 (April 26, 2022 Letter from Google to DOJ).  Google declined to run DOJ's proposed new set of terms because, among other things, discovery was set to close in a matter of days, the search terms had been negotiated extensively

and productions completed months earlier, and the low search-term hit rate for chats confirmed their limited relevance.  DOJ Ex. 35 at -35, -36 (May 2, 2022 Letter from Google to DOJ).  Google had already produced more than 30 million pages of documents, and there was no indication that chats were a material source of unique information relevant to the litigation.  *Id.*  Indeed, Plaintiffs have not used *any* of the produced chats as a deposition exhibit at *any* of the depositions of the 52 current or former Google employees.  DOJ did not further pursue its request, and fact discovery closed.

During this same time, Spring 2022, the *Google Play* plaintiffs were questioning Google witnesses about their use of chats.  In one of the last depositions in the Search litigation, DOJ asked a witness whether she used instant messaging, and when she responded that she used Google Chat, followed up with the question, "Do you know if those Chat histories are saved?"  The witness responded, "I think there are settings, and so users can choose whether to save them or not."  Ex. 18 at 37:14–38:8 (A. Kartasheva Tr., May 3, 2022).  DOJ did not inquire further or raise any concerns with Google.

**Motion for Sanctions in *Google Play* Litigation.**  On November 23, 2022, more than six months after fact discovery closed in this litigation, DOJ belatedly requested additional information about chat retention.  This untimely request came approximately six weeks after the plaintiffs in the *Google Play* litigation filed a motion for sanctions.

Google opposed the motion in *Google Play* and explained, among other things, that its preservation practices for chats were reasonable.  While Google continues to believe that its practices were reasonable and resulted in the appropriate retention and production of relevant information to the full extent required by the Federal Rules, in light of the proceedings in *Google Play*, Google developed and implemented a technological process for turning history on for

17

custodians on legal hold in this case.  On February 8, Google's counsel confirmed to Plaintiffs that it had implemented that procedure.  Nonetheless, in the midst of summary judgment briefing, Plaintiffs filed these motions.

## LEGAL STANDARD

Under Rule 37(e), sanctions may only be sought when "electronically stored information that should have been preserved . . . is lost because a party failed to take reasonable steps to preserve it"—and when the information "cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e).  In addition, before a court can determine that sanctions are to be imposed under Rule 37(e)(1), there must be a "finding" of "prejudice . . . from the loss of the information."  *Id.*  If a court finds prejudice, it may only order "measures no greater than necessary to cure the prejudice."  *Id.*  The specified measures set out in Rule 37(e)(2) may not be invoked unless there is a "finding that the party acted with the intent to deprive another party of the information's use in the litigation."  *Id.*  Further, like other discovery motions, sanctions motions under Rule 37 must be timely filed.  *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008).

## ARGUMENT

Plaintiffs' motions should be denied for multiple independent reasons.  As a threshold matter, the motions are untimely and should be denied on that basis alone.  Plaintiffs have long known about the chat preservation practices about which they now complain.  Plaintiffs further fail to demonstrate that sanctions are warranted under Rule 37, both because (1) Google's preservation efforts were reasonable, and (2) Plaintiffs were not prejudiced from any purported loss of chat messages at issue here.  Additionally, it is meritless to suggest that Google, with its extensive collection and production of documents, "acted with the intent to deprive" Plaintiffs of the information necessary to litigate these cases.  Finally, there is no need for the additional "discovery on discovery" that Plaintiffs seek in order for the Court to deny Plaintiffs' motions.  The

pertinent facts regarding Google's preservation efforts regarding chats are already known to Plaintiffs, and the Court is well aware of the massive discovery record afforded Plaintiffs in this case, such that no prejudice can be established.  In sum, nothing more is needed to resolve the question of whether Google has engaged in sanctionable conduct.

## I.  Plaintiffs' Unreasonable Delay in Raising Any Objection Bars Their Motions.

Plaintiffs sat on any objection they had to Google's approach to preserving chats for the entire course of discovery in this litigation.  They raised the issue for the first time in this litigation in November 2022—*two years* after they were informed that history-off chats are not automatically preserved, *eleven months* after the parties in the *Google Play* litigation first publicly raised the issue, and *six months* after the close of fact discovery.  Plaintiffs claim that Google's November 2019 disclosures did not suffice to notify them that history-off chats are not automatically retained, DOJ Mot. at 7–9, but regardless of the merits of that claim, it makes no difference here because they were informed of this soon after the Complaints in these cases were filed, just as discovery was getting off the ground.  As noted above, Plaintiffs' own words confirm that they well understood the policies to which they only now object.

It is well-established that "unreasonable delay may render such a [sanctions] motion untimely." *Long*, 561 F. Supp. 2d at 91; *see also, e.g.*, *THEC Int'l-Hamdard Cordova Grp.-Nazari Constr. Co. Joint Venture v. Cohen Mohr, LLP*, 301 F. Supp. 3d 1, 11–12 (D.D.C. 2018); *Martin v. D.C.*, 78 F. Supp. 3d 279, 291 (D.D.C. 2015).  In assessing the "timeliness of a motion for sanctions," courts consider "such factors as when the movant learned of the discovery violation, how long he waited before bringing it to the court's attention, and whether discovery has been completed." *Long*, 561 F. Supp. 2d at 91.  Applying those factors, Plaintiffs' motions here are "clearly untimely under the unreasonable delay standard," *id.*, and should be denied for that reason alone.

### A.   Plaintiffs Have Known About the Very Practices They Now Challenge for at Least Two Years.

While DOJ complains about Google's November 2019 disclosures in an ESI Questionnaire, those disclosures show that the distinction between "on-the-record" and other chats was apparent to anyone who wanted to pursue the matter from the outset of DOJ's investigation.  For instance, the ESI Questionnaire response specifies that chat "messages are generally retained for a period of 30 days *if they have been marked on-the-record*, and potentially longer *if on-the-record messages* are on legal hold."  DOJ Ex. 3 at -68 (emphases added).  The Gmail retention policy produced at the same time, which covered Google Chat in addition to Gmail, similarly specifies that "*On the record* Chats" are retained for 30 days.  *Id*. at -77 (emphasis added).  And, of course, it is no secret how Google's Chat product operates.  It is a publicly available product.  Google's product website explains how one can "Turn history on or off in Google Chat"—that is, a user "can choose to save your conversation or have it automatically deleted after 24 hours."  Ex. 2, https://support.google.com/chat/answer/7664687?hl=en.

Regardless, there can be no question that Plaintiffs have been well aware—since the outset of discovery in this litigation at the latest—of the fact that there was a subset of chats not automatically retained.  As explained above in detail, *see supra* pp. 9–17, Plaintiffs were expressly informed of Google's approach to chat retention through correspondence with the various Plaintiffs in the course of their investigations.  The State of Texas AG's office—which has participated in every aspect of discovery in this litigation, and is among the State AGs who regularly attend the parties' meet-and-confer calls and participate in discovery correspondence— confirmed their clear understanding of how chat preservation worked *in February 2020*.  They summarized Google's disclosures to them as follows:  (1) "[Chats] are not retained in any way unless they are marked on-the-record by the user"; (2) "If the user is on a legal hold, the user is

told to mark all chats as on-the-record"; and (3) "If the user does not take this action for every conversation, the unmarked ones will be deleted immediately."  Ex. 7 at 2 (Feb. 4, 2020 Letter from Texas to Google).

Likewise, DOJ years ago participated in meet-and-confers, exchanged correspondence, and took testimony from Google witnesses concerning chat retention in connection with its ad tech investigation.  *Supra* pp. 12-13, 14-15.  As memorialized in June 2021 correspondence, DOJ acknowledged that "we understand from [Google] that relevant 'on the record' chats are collected and produced as part of Alphabet's document productions, but that *chats not marked 'on the record' are not collected and produced to the Division*."  Ex. 14 at 2 (June 1, 2021 Letter from DOJ to Google) (emphasis added).  And DOJ's prior correspondence confirmed its understanding that the preservation of chats was not done as a back-end system setting, but rather depended on the custodian on legal hold complying with the hold notice by marking the message as on the record.  *See* Ex. 11 at 2 (Dec. 23, 2020 Letter from DOJ to Google).  Finally, as noted above, Colorado's counsel specifically elicited deposition testimony from a Google witness as to how chat preservation functions.  *Supra* pp. 11–12.

Plaintiffs invoke the *Google Play* litigation, but that litigation only confirms Plaintiffs' long-held knowledge of the practices they now belatedly challenge.  The *Google Play* MDL includes a lawsuit brought by 37 States Attorneys General.  ***Every single one of those States is a Plaintiff in the Search litigation***.  The *Google Play* plaintiffs first challenged Google's Chat retention policies in a position statement filed on the public docket in December 2021. Ex. 17 ECF No. 233 at 6–7 (outlining their "concerns" about Google's Chat retention practices, in particular, "a litigation hold predicated on each employee's individual determination of relevance").  Those plaintiffs requested that Google answer interrogatories regarding, *inter alia*,

the manual retention of chats, which Google subsequently did, and continued to pursue their challenge throughout 2022, ultimately filing a motion for sanctions in October 2022.

Plaintiffs' motions also cite internal Google documents, characterizing them as a revelation regarding Google's use of Chat.  DOJ Mot. at 3–6.  But the very documents that Plaintiffs now cite have been in their hands for years—produced by Google in this litigation and the investigation that preceded it.  Of the twenty-one documents cited by DOJ (*see* DOJ Mot. at 3–6, "Google's Use of Chats"), all but two were produced in this matter: fifteen were produced *in 2019 and 2020* during the investigation*, and the remaining four were produced *in 2021* during document discovery in the litigation.[10]  As a result, far from supporting Plaintiffs' motions, their citation only further evidences Plaintiffs' untimeliness in bringing this motion now.[11]  Underscoring the point, Plaintiffs' counsel did not ask a single Google witness about any of those documents during the dozens of days of depositions in the investigation and litigation.  *See, e.g.*, *Equate Media, Inc. v. Suthar*, 2022 WL 2101710, at *3 (C.D. Cal. Feb. 2, 2022) (denying sanctions, including because "Plaintiffs' own lack of diligence caused their dilemma"); *Emery v. Harris*, 2014 WL 710957, at *6 (E.D. Cal. Feb. 21, 2014) (denying sanctions when movant "fail[ed] to demonstrate any degree

---

[10] The production dates are as follows:  Exhibits 10 and 11 were produced in October 2019; Exhibits 2, 5, 6, 7, 9, 12, 13, 18, 19, and 22 were produced between January and June 2020; Exhibits 17, 20, and 21 were produced in August and September 2020; Exhibits 8 and 16 were produced in March 2021; and Exhibits 14 and 15 were produced in November 2021.

[11] DOJ misconstrues a number of the cited documents, including the training presentation they highlight.  DOJ Mot. at 5, citing DOJ Ex. 1, PX-120.  The "Communicate with Care" presentation provides a number of guidelines; DOJ focuses on the guideline "Avoid Communicating When Angry or Tired."  The hypothetical exercise counsels employees that the best option in the circumstance of late-night frustration over ongoing engineering problems is to get a good night's sleep and talk to the team lead in the morning, rather than sending a middle-of-the-night email or chat message while angry and frustrated.  DOJ Ex. 1, PX-120 at -259-264.

of diligence" by waiting to file motion for destroyed videotape over a year after being on notice of potential spoliation).

### B.      Plaintiffs Never Before Brought Any Objection to Either Google or the Court

Not only were Plaintiffs long ago on notice of Google's chat retention practices, they never raised any objection.  At no point before now did DOJ or any of the Plaintiff States register any concern in this case—not in the eighteen months of discovery, with its monthly status conferences; not by the close of fact discovery in May 2022; and not even in the six months between the close of fact discovery and Google's filing of its motion for summary judgment.  That renders Plaintiffs' misgivings untimely.  *See Martin*, 78 F. Supp. 3d at 320; *Long*, 561 F. Supp. 2d at 91; *Al-Sabah v. Agbodjogbe*, 2019 WL 4447235, at *4–5 (D. Md. Sept. 17, 2019) (denying sanctions motion as untimely because movant was "fully apprised of the issue long before they brought it to the Court's attention" and "gave no explanation for their tardiness"); *Sherwood Inv. Overseas Ltd., Inc. v. Royal Bank of Scotland N.V.*, 2015 Bankr. LEXIS 2513, at *5–6 (Bankr. M.D. Fla. Jul. 22, 2015) (denying a spoliation motion as untimely when movant waited over a year after discovering facts underlying its spoliation motion before filing it, and noting that "courts view spoliation motions filed near a dispositive motion deadline . . . with extreme skepticism"), *aff'd*, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016).

### C.      Plaintiffs Sat on Any Objection Until Long After the Close of Fact Discovery.

It also is indisputable that Plaintiffs' motions were filed well after "discovery has been completed." *Long*, 561 F. Supp. 2d at 91; *see also Martin*, 78 F. Supp. 3d at 291 (citation omitted).

In fact, Plaintiffs' motions were filed more than *nine months* after the close of fact discovery—in the midst of briefing on case-dispositive summary judgment motions—a fact that

clearly weighs in favor of finding their motions untimely. *See, e.g.*, *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1306 (E.D. Cal. Mar. 5, 2020) (motion untimely where party waited to raise spoliation claim until "after discovery closed and the dispositive motion deadline passed"), *aff'd*, 856 F. App'x 704 (9th Cir. 2021); *Olson v. Shawnee Cnty. Bd. of Comm'rs*, 7 F. Supp. 3d 1162, 1200 (D. Kan. 2014) (spoliation argument untimely when raised after defendant moved for summary judgment); *Am. Nat'l Prop. & Cas. Co. v. Campbell Ins., Inc*., 2011 WL 3021399, at *3 (M.D. Tenn. July 22, 2011) (denying spoliation motion as untimely when it was brought four months after the close of discovery); *Rhabarian v. Cawley*, 2014 WL 546015, at *3 (E.D. Cal. Feb. 11, 2014) ("the time to raise these issues [of alleged spoliation] was during discovery, and not after the deadline for dispositive motions"), *aff'd*, 701 F. App'x 676 (9th Cir. 2017).  This factor should weigh especially heavily in the context of this case, where the parties were held to a strict discovery schedule and had the opportunity to expeditiously raise discovery disputes with the Court on a monthly basis.[12]

\*       \*       \*

In short, Plaintiffs' motions are barred at the outset because they were on notice of Google's approach to chats for years, yet did not object until well after the close of discovery.  Those tactics should not be countenanced.  *Martin*, 78 F. Supp. 3d at 291; *Long*, 561 F. Supp. 2d at 91.

---

[12]  Plaintiffs cite two cases where courts permitted Rule 37 motions to be filed after the close of discovery.  DOJ Mot. at 29.  But those cases both expressly recognized that the late filing of the motions weighed against timeliness; they found that the circumstances presented outweighed that factor in those cases.  *See GMS Indus. Supply, Inc. v. G&S Supply, LLC*, 2022 WL 853626, at *4 (E.D. Va. Mar. 22, 2022); *Goodman v. Praxair Servs., Inc*., 632 F. Supp. 2d 494, 508 (D. Md. 2009).  That is not the situation here.

## II.      Google Took Reasonable Steps to Preserve Relevant Documents.

Plaintiffs' motions also fail because they have not met the requirements of Rule 37.  Rule 37 provides that sanctions for lost ESI may only be awarded if a party "failed to take *reasonable* steps" in its preservation.  Fed. R. Civ. P. 37(e) (emphasis added).  "This rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Indeed, "perfection in preserving all relevant electronically stored information is often impossible."  Here, Google's vast efforts at preserving documents relevant to Plaintiffs' claims cannot be deemed unreasonable.

As described earlier, Google undertook an extraordinary scope of preservation here.  To begin, Google issued written preservation notices to document custodians and proceeded to collect documents from *129 current and former employees* during the litigation, running *141 search strings*—adding up to *tens of thousands* of search term permutations.  Google additionally collected text messages from dozens of custodians, in response to Plaintiffs' requests.  The ensuing collection totaled tens of millions of documents.

As part of its ESI efforts, it is indisputable that Google in fact preserved and collected chats.  As noted above, Google collected *hundreds of thousands* of chats that were preserved among the data retrieved for the agreed-upon document custodians.  These included not only those chats occurring in threaded spaces, which were automatically set to "history on," but also one-on-one and group chats where individuals toggled the setting to "history on" to maintain them.  To the extent Plaintiffs seek to leave the impression that Google's preservation efforts bypassed chats altogether, that would be demonstrably incorrect.  At issue in Plaintiffs' motions are just one sub-category of chats:  those sent with history off.

And as for that category, the only such chats at issue would be those created *going forward*, *after the issuance of Google's legal hold*—years after the principal events at issue over which

Plaintiffs brought suit.  As described above, history-off chats disappear within 24 hours.  It is uncontested that there was no requirement to maintain such chats before Google issued its litigation hold.  Plaintiffs expressly recognize as much.  *See* DOJ Mot. at 17 ("Google thus had a duty to preserve chat messages *since 2019*, which the company acknowledged when it issued a litigation hold") (emphasis added); Colo. Pls. Mot. at 5–6 (Google's duty to preserve began upon receipt of investigative demands in 2019 and 2020); *see also* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("[t]he rule does not apply when information is lost before a duty to preserve arises").  As a result, the only history-off chats at issue are those that may have been exchanged by custodians after the legal hold was implemented.

Google's preservation efforts did not ignore those chats.  Rather, Google took specific steps to address them.  Google explicitly instructed its employees on legal hold to not use messaging apps going forward, including Google Chat, to discuss topics covered by the legal hold—and additionally instructed them, if they did still use such apps, to ensure that the messages were preserved, such as by turning history "on."  *See La Belle v. Barclays Cap. Inc.,* 340 F.R.D. 74, 84 (S.D.N.Y. 2022) (court was "not prepared to find that Barclays acted unreasonably in assuming that its employees complied with" policy against discussing company business on personal devices— "notwithstanding [plaintiff's] claim that employees frequently violated the policy"); *see also USI Ins. Servs. LLC v. Bentz*, 2020 WL 7753690, at *7 (D.N.D. Dec. 29, 2020) (court "[did] not find anything sanctionable" in litigant's decision to rely on employees to search their own text messages and emails for documents relevant in litigation), *aff'd*, 2021 WL 9666616 (D.N.D. Feb. 4, 2021).

Moreover, Google's approach must be understood not only in the context of its broader preservation efforts, but its understanding that this subset of history-off chats are typically to be

used by its employees for short communications, not more substantive analyses of issues relevant to the litigation.  Ex. 5, Google Play Hearing Tr. at 45–46.  Accordingly, the probability that they would contain substantive, relevant communications was far less than other sources of potentially relevant documents.  *See Laughlin v. Stuart*, 2020 WL 4747665, at *2 (D. Minn. Aug. 17, 2020) ("Rule 37(e) requires the preserving party to maintain only relevant evidence, *as viewed from that party's perspective*." (emphasis added)), *aff'd*, 2020 WL 5799497 (D. Minn. Sept. 29, 2020); *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740–41 (N.D. Ala. 2017) ("[E]ven when litigation is reasonably foreseeable, '[a] corporation under a duty to preserve is not required to keep every shred of paper, every e-mail or electronic document, and every backup tape . . . In essence, the duty to preserve evidence extends to those employees likely to have relevant information—the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary.'" (alterations in original) (citation omitted)), *aff'd*, 2022 WL 433457 (11th Cir. Feb. 14, 2022).  In other words, as the Advisory Committee notes to Rule 37(e) state, "proportionality" must be considered in evaluating reasonableness.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Bulies v. MSC Cruises, S.A.*, 2022 WL 2340959, at *3 (S.D. Fla. Mar. 14, 2022) ("The mere fact that a party had the ability to preserve more ESI does not necessarily mean that a decision to preserve less is evidence of a breach of a duty. . . Rather, the determination of what is reasonable focuses on the nature, significance, and proportionality of the ESI preserved.").

In contrast to history-off chats, Plaintiffs rely on cases where litigants failed to preserve ESI with the most relevance to the legal claims at issue.  *See, e.g.,* DOJ Mot. at 18–19; *Vasser v. Shulkin*, 2017 WL 5634860, at *5–6 (D.D.C. Nov. 22, 2017) (defendant destroyed hiring files that "would clearly have shed light on the truth of [Plaintiff's] claim" for her employment claim); *DR*

*Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 981–2 (N.D. Ill. 2021) (unsearched email accounts "were used for nearly every facet of Defendants' business" and other missing "ESI went right to the core of Plaintiff's unclean hands defense"); *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1148 (N.D. Cal. 2012) (Samsung "did not produce any emails" from multiple key custodians, including crucial emails on product design relevant to the patent dispute) *mot. for relief from judgment granted in part by Apple Inc. v. Samsung Elec. Co.*, 888 F. Supp. 2d 976, 999–1000 (N.D. Cal. 2012).  Plaintiffs also repeatedly cite cases that do not even apply the standard from the 2015 amendment to Rule 37 that is at issue here.[13]  DOJ Mot. at 17–20.

Even if in hindsight Plaintiffs now argue that Google "*could have* done more" with respect to history-off chats, that is decidedly *not* the standard under Rule 37.  As the Advisory Committee notes emphasize, "The rule calls for only reasonable steps to preserve."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  In other words, "perfection" is not only not the standard, but is recognized to be "often impossible."  *Id.*; *see Burns v. Medtronic Inc.*, 2017 WL 11633269, at *4–5 (M.D. Fla. Aug. 9, 2017) (finding, in context of allegedly missing text messages, that while company "certainly *could have* done more to ensure that no relevant ESI was lost," there was "no basis to conclude that Defendants, even a sophisticated party like Medtronic,

---

[13] Plaintiffs move under Rule 37(e), a provision that was added to the Federal Rules in 2015, replacing the prior provision.  That amendment was partly motivated by the reality that modern discovery involves such a high volume of ESI and that the rule should only require reasonable steps—"it does not call for perfection."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The new rule's commentary further emphasized the importance of carefully considering whether prejudice actually resulted from any lapse.  *See id.*  Plaintiffs cite cases applying the prior provision, when the rule did not explicitly require a reasonableness analysis or focus on the need for a more flexible standard.  *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); *Vasser*, 2017 WL 5634860, at *2; *Samsung*, 888 F. Supp. 2d at 985.

were *required* to take additional measures to ensure preservation"); *see also, e.g.*, *Easterwood v. Carnival Corp.*, 2020 WL 6781742, at *8 (S.D. Fla. Nov. 18, 2020) ("Defendant's failure to preserve all relevant ESI is not fatal where it has undertaken reasonable steps and . . . preserved the most pertinent CCTV footage.").[14]

Indeed, the massive preservation undertaking by Google in this case stands in stark contrast to, for example, what occurred in *Borum v. Brentwood Village, LLC*, 332 F.R.D. 38 (D.D.C. 2019), a case cited repeatedly by Plaintiffs. There, "[f]or almost two years after the litigation began, the entirety of [an organization's] efforts to protect against the loss of evidence consisted of, at most, an oral warning that 'might have been mentioned at a staff meeting.'" *Id*. at 46. Likewise in *DR Distribs., LLC.*, 513 F. Supp. 3d at 889, 911, 915, the defendant did not issue a written litigation hold; in fact, no one searched the main custodian's primary email account for seven years after being on notice of litigation despite the account's auto-deletion policy. Here Google undertook a sweeping effort to preserve, collect, and produce tens of millions of pages of documents to Plaintiffs. The differences are striking—and should be dispositive here.

## III.   Plaintiffs Were Not Prejudiced.

Separate and apart from the question of whether preservation efforts were reasonable, Rule 37(e)(1) additionally requires a specific "finding" of "prejudice . . . from loss of the information" before any sanction may be issued. Fed. R. Civ. Pro. 37(e)(1). Likewise, any sanction ordered by

---

[14] Contrary to the Colorado Plaintiffs' suggestion, *see* Colo. Pls. Mot. at 2, the Court's ESI order does not help Plaintiffs' position. The Colorado Plaintiffs omit that the ESI Order actually provides that "Each Party will *continue its retention practices* with regards to all Documents and ESI in compliance with duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 37(e)." ECF No. 99 at 4 (emphasis added). The Colorado Plaintiffs misleadingly quote a portion of the next sentence, which says in full, "*Upon mutual agreement of the Parties*, a Party will modify its retention practices to ensure the preservation of potentially responsive Documents and ESI." *Id*. (emphasis added). Here, Google did not modify its retention practices.

a court must be "no greater than necessary to cure the prejudice." *Id*. And, further, the ability to order sanctions "does not require the court to adopt measures to cure every possible prejudicial effect." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Plaintiffs cannot demonstrate *any* prejudice here from the asserted loss of chats, let alone prejudice of such significance that sanctions are required.

While Rule 37 does not place the "burden of proving or disproving prejudice on one party or the other," Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment, Rule 37(e)(1) does expressly require an affirmative "finding" of prejudice. Such prejudice to the moving party cannot be "speculative." *See, e.g.*, *Eisenband v. Pine Belt Auto., Inc.*, 2020 WL 1486045, at *9 (D.N.J. Mar. 27, 2020); *Simon v. City of N.Y.*, 2017 WL 57860, at *7 (S.D.N.Y Jan. 5, 2017). It is not enough for a plaintiff to posit, for example, that it is "possible that there could have been a . . . message containing some type of 'smoking gun' to prove . . . intent or pretext." *Burns*, 2017 WL 11633269, at *6 (denying sanctions motion regarding text messages).

And, importantly, any "evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Bethel v. Rodriguez*, 2022 WL 2157065, at *5 (D.D.C. June 15, 2022) (denying sanctions motion, finding no prejudice based on lack of "importan[ce]" (alteration in original) (citation omitted)); *Dickerson v. D.C.*, 2022 WL 656172, at *7 (D.D.C. Mar. 3, 2022) (same, and explaining in an employment discrimination case that "even assuming . . . the District failed to properly preserve [plaintiff's] performance evaluations . . . doing so did not cause any prejudice to the plaintiff").

In undertaking this evaluation, courts carefully consider the context of both (1) the documents and other discovery that *were* produced in the litigation and (2) the relation of the

purportedly missing ESI to the *material factual disputes* between the parties.  *See, e.g.*, *Dickerson*, 2022 WL 656172, at *7; *Does 1-15 v. City of Chicago*, 2019 WL 2994532, at *8 (N.D. Ill. July 9, 2019) (denying motion, noting that lost recording "provides limited value compared to other evidence in the record that goes directly to the" claim at issue); *Steves & Sons Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 110 (E.D. Va. 2018) (denying sanctions motion, explaining that the record "does not indicate that the ESI lost . . . would have significantly improved" the moving party's ability to prove its claim and was "nowhere near" a "unique and vital role" (internal quotation marks omitted)); *Marshall v. Dentfirst, P.C.*, 313 F.R.D. 691, 697–98 (N.D. Ga. 2016) (denying motion, explaining that plaintiff failed to show "that the evidence was crucial" to being able to prove her case).  In other words, even where the missing evidence may be "relevant," that does not suffice to demonstrate a party is "prejudiced by its destruction" within the meaning of Rule 37.  *Best Payphones, Inc. v. City of N.Y.*, 2016 WL 792396, at *6 (E.D.N.Y. Feb. 26, 2016); *Pugh-Ozua v. Springhill Suites*, 2020 WL 6562376, at *4 (S.D.N.Y. Nov. 9, 2020) ("[t]he mere fact that deleted materials were relevant does not itself establish prejudice").[15]

Here, for all of Plaintiffs' rhetoric, their motions fail to articulate how they have been prejudiced.  In particular, there is no reason to believe that history-off chats created after 2019 and not otherwise preserved and produced are the "only evidence available to prove [their] claim," *Pugh-Ozua*, 2020 WL 6562376, at *4 (denying motion), or "crucial" to litigating the liability phase of these cases, *Marshall*, 313 F.R.D. at 697–98 (same).  Plaintiffs' cited cases discussing what

---

[15] *See also, e.g.*, *Trading Places Int'l, LLC v. Summerwinds Resort Servs., LLC*, 2017 WL 6383981, at *2 (W.D. Mo. May 12, 2017) (denying motion, holding that the court "is not persuaded that any of the lost emails relate to the issues that remain relevant" and the moving party was able to depose individuals to seek information); *Walker v. Geico Indem. Co.*, 2018 WL 7917655, at *3 (M.D. Fla. Oct. 11, 2018) (denying motion, explaining that plaintiff did not establish missing document "is crucial to her claims" and "there is evidence other than the missing document" that may be used to prove her case).

constitutes prejudice likewise do not provide support, as they involve markedly different circumstances. *See, e.g.*, DOJ Mot. at 21–23; *Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 169 (D.C. Cir. 2013) (destruction of "all" records)[16]; *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959–60 (9th Cir. 2006) (thousands of files "at the heart of IDX's defense" with "obvious relevance"); *Perez v. U.S. Postal Serv.*, 2014 WL 10726125, at *4 (W.D. Wash. July 30, 2014) (evidence, deemed "critical," that "compromised Plaintiff's ability to argue pretext" in employment action); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d at 982, 994 (email from company's "default email system" used by key witnesses—and even then "resulting prejudice is not particularly strong"); *see also Borum*, 332 F.R.D. at 47 (deletion of all email by central witness).

Indeed, Plaintiffs' motions fail to acknowledge that any evaluation of prejudice must take into account the extraordinary volume of discovery already made available to Plaintiffs here—through both pre-complaint investigations and the litigation itself. *See, e.g., FTC v. DirectTV, Inc.*, 2016 WL 7386133, at *4–5 (N.D. Cal. Dec. 21, 2016) (denying FTC's motion for sanctions, explaining that while DirectTV "could have been more forthcoming . . . and/or more proactive," FTC failed to demonstrate that the information produced "is inadequate for its purposes"); *see also Does 1-5*, 2019 WL 2994532, at *8 (same, noting the extent of evidence obtained); *Best Payphones*, 2016 WL 792396, at *7 (same).

As detailed earlier, the discovery record here includes more than 4 million Google documents comprising *31 million pages*, collected from *more than 100 custodians*, as well as tremendous volumes of data. It includes more than fifty depositions of present and former Google employees, spanning *89 days of testimony*. It includes *5 million* additional documents from

---

[16] Notably, like many of the cases cited by Plaintiffs, *Gerlich* pre-dates the 2015 adoption of present Rule 37(e). It does not apply the Rule 37(e) standard. 711 F.3d at 170.

approximately 125 third parties—including their communications with Google. And it includes the depositions of 58 third parties across *70 days of testimony*. Under these circumstances, there is no evidence that Plaintiffs have been denied material information that is somehow completely missing from this massive record and that could actually alter the course of these cases. *See, e.g.*, *Burns*, 2017 WL 11633269, at *6 (denying motion, holding that, even if relevant text messages were lost, "Plaintiff has had ample opportunity to depose the custodians and the decision-makers in this case"); *Marshall*, 313 F.R.D. at 699 (holding that "any claimed prejudice Plaintiff suffered by the alleged spoliation is mitigated by her opportunity to depose" defendant's employees).

The lack of cognizable prejudice here is reinforced by the context of what is actually at issue in these cases. *See, e.g.*, *Dickerson*, 2022 WL 656172, at *7. Here, DOJ Plaintiffs' Complaint centers on the terms and operation of search distribution agreements with third-party browsers, manufacturers of computers and mobile devices, and mobile carriers that have been in existence for many years preceding this litigation. The voluminous production of contracts, communications with agreement partners, negotiation documents, and internal discussions, evaluations and analyses of these contracts found in emails, word processing documents and slides (not to mention the extraordinarily voluminous financial and search revenue data associated with these contracts) provides more than all the information necessary to adjudicate this case—on top of voluminous productions of documents from every third party whose contract with Google is at issue in this case, as well as every rival search engine that Plaintiffs claim competes with Google for these contracts. The Colorado Plaintiffs' Complaint focuses on these very same search distribution agreements, as well as Google's product designs involving specialized search units and its SA360 search advertising tool. Again, Plaintiffs have obtained extensive discovery from Google about these products and services that have existed for many years prior to the filing of the

Complaints, as well as certain third-party Specialized Vertical Providers and Microsoft—the primary complainants about these aspects of the case.

It is therefore unsurprising that although Google collected over half a million chats for review during the discovery process, and ran over 100 search strings with tens of thousands of search term permutations to locate potentially responsive documents, only 637 chats were produced as responsive to Plaintiffs' broad discovery—basically one in every one thousand chats collected.  And from this universe of produced chats, not a single one was marked as an exhibit at a deposition, cited by any expert witness in any report, or cited by any party in the briefing on the motions for summary judgment.  This confirms that Google Chat is not a mode of communication likely to contain unique or critical relevant information for this litigation—a factor pertinent to assessing the reasonableness of Google's preservation efforts in the first place, as well as the lack of prejudice to the extent individual custodians did not preserve every arguably responsive chat even though they were instructed to do so.

This case does not involve the type of demonstrable "prejudice" that Rule 37 is designed to address.  There is no basis to make a "finding" that Plaintiffs have been prejudiced, *see* Fed. R. Civ. P. 37(e)(1), let alone that the prejudice is significant enough to warrant sanctions.

## IV.    Google Did Not Act With an "Intent to Deprive."

In a bid to avoid Rule 37(e)(1)'s prejudice requirement, Plaintiffs also invoke Rule 37(e)(2) and assert that Google acted with "intent to deprive" them of "the information's use in the litigation," DOJ Mot. at 25.  Given Google's numerous disclosures to Plaintiffs, as well as its efforts to preserve relevant documents (including any chat messages), this argument is patently meritless.

Rule 37(e)(2) imposes a uniquely "stringent" standard.  *Borum*, 332 F.R.D. at 48–49 (emphasizing that this "intent standard is stringent and does not parallel other discovery standards"

(citation and internal quotation marks omitted)).  This is a "serious and specific sort of culpability" demanding "intentional, bad-faith misconduct." *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018).  "Negligent or even grossly negligent behavior" does not suffice to meet this standard, Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment, nor does even "recklessness," *Stovall v. Brykan Legends, LLC*, 2019 WL 480559, at *4 (D. Kan. Feb. 7, 2019).  Indeed, "[t]he Rule itself makes clear that the party must do more than intend to destroy the evidence; it must do so with an 'intent to deprive another party of the information's use in the litigation." *Brittney Gobble Photography v. Sinclair Broad. Grp., Inc.*, 2020 WL 1809191, at *9 (D. Md. Apr. 9, 2020) (explaining that plaintiff "would have to show that [the defendant] failed to institute a litigation hold because it wanted its emails to be deleted so that [the plaintiff] could not use them in litigation against it").

For that reason, courts do not find the requisite evidence of intent where documents are "purged as a matter of course pursuant to the company's routine document retention policy." *Brittney Gobble Photography*, 2020 WL 1809191, at *9; *see also, e.g., Russell v. Univ. of Tex.*, 234 Fed. App'x 195, 208 (5th Cir. 2007) (per curiam) ("Typically, we do not draw an inference of bad faith when documents are destroyed under a routine policy."); *Flores v. AT&T Corp.*, 2018 WL 6588586, at *9 (W.D. Tex. Nov. 8, 2018) (documents destroyed as part of the "negligent continuation of [a] routine policy").  Indeed, courts routinely find that Rule 37(e)(2)'s standard is not met even in cases involving a failure to "take basic steps necessary to find and preserve files." *Auer*, 896 F.3d at 858; *see also, e.g., Pietrangelo v. Refresh Club, Inc.*, 2022 WL 17616353, at *7 (D.D.C. Dec. 13, 2022); *Borum*, 332 F.R.D. at 48–49.  This includes even failing to issue a litigation hold at all.  *See, e.g., Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 627–28 (7th Cir. 2018) (affirming finding of no intent under Rule 37(e)(2), where no litigation hold was

issued); *Brittney Gobble Photography,* 2020 WL 1809191, at *9 (no Rule 37(e)(2) violation, even though defendant failed to institute any litigation hold); *Mkrtchyan v. Sacramento County*., 2021 WL 5284322, at *11 (E.D. Cal. Nov. 12, 2021) (same).

Plaintiffs cannot come close to demonstrating the specific intent that is required with respect to Google here. As described above, Google embarked on a mammoth scope of preservation, collection, and production in this case that directly rebuts any suggestion that the company intentionally sought to destroy evidence. It provided specific, written instructions to employees, including expressly to preserve chats discussing topics relevant to the litigation—and reminded them every six months that they were on litigation hold. It collected tens of millions of documents, including over half a million chat messages. And it ultimately produced millions of documents. There simply was no "intent to deprive" Plaintiffs of the information necessary for this litigation. Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.

Plaintiffs' assertions that they were deliberately misled by Google's disclosures as to its preservation steps are likewise incorrect. DOJ Mot. at 28–29. Google's disclosures in connection with the DOJ's investigation specified that "on-the-record" chats are retained—Google never represented that all chats are retained, and Google's subsequent communications with Plaintiffs identified both the existence of "off-the-record" chats and the fact that they are not retained. Plaintiffs point in isolation to a portion of Google's response to one question in the ESI questionnaire. As part of Google's response, it noted that "[t]he legal hold suspends auto-deletion," DOJ Mot. at 2, but that statement came in the context of a document that earlier asked Google to describe its retention of instant messages, where Google explained that chats are retained "*if they have been marked on-the-record*, and potentially longer *if on-the-record* messages are on legal hold." DOJ Ex. 3 at -68 (emphases added). The policies that Google attached to the

questionnaire reiterated the same. *See id.* at -77 ("*[O]n the record Chats*, and Hangouts *with 'History' checked on*, that are subject to a Legal Hold, will be preserved for the duration of the Legal Hold.") (emphasis added).  Specifically, Google implements the legal hold suspension of auto deletion through the Google Vault tool, and it did so for history-on chats and other forms of ESI retained through Google Vault (*e.g.*, email, slides, word processing documents).  This function was not applicable, however, for history-off chats which were not available for preservation in Google Vault.  Plaintiffs also ignore that Google expressly pointed out in its response that "[t]he hold notice . . . instructs custodians to preserve relevant documents," which is precisely what it did, including specifically as to chats generated on a going-forward basis after the issuance of the legal hold notice.  *Id.* at -74.  And, of course, Google's subsequent disclosures made plain that off-the-record chats were not retained, and that Google relied on legal hold custodians to turn history on for the chat to be retained.

Further, Plaintiffs' citation to discovery correspondence in this litigation misconstrues the subject and context of those exchanges.  DOJ Mot. at 28–29.  At no point during these exchanges did DOJ or the States ask questions about retention of "on the record" or "off the record" chats.  Ex. 10 at ¶ 15 (Rubinstein Declaration).  The discussions on these calls focused on the mechanics of collection and production of chats.  *Id.*  By this time, Google had disclosed its preservation practices to DOJ, including during the ongoing ad tech investigation that occurred contemporaneously with the commencement of fact discovery in this litigation.  And DOJ had not raised any objection to or concern about that practice other than to request confirmation about Google's instructions to custodians.  Under these circumstances, there was no further information on preservation practices to provide.

Moreover, the cases Plaintiffs rely upon are wholly inapposite. If anything, they underscore that Rule 37(e)(2) is inapplicable here. Plaintiffs rely extensively, for example, on *Sines v. Kessler*, 2021 WL 4943742 (W.D. Va. Oct. 22, 2021). DOJ Mot. at 26–27. In that case, the litigant—a neo-Nazi planner of the 2017 white supremacist rally in Charlottesville, Virginia, being sued for conspiracy to commit racial violence—"took no steps at all" to protect any devices or social media accounts he used to communicate with other attendees at the rally, was unable to "recall almost any fact about the steps he took" to preserve, and also "ignore[d] outright the court's orders," "stonewall[ed]" discovery "from the very beginning," and "demonstrate[d] a contempt" for his discovery obligations evidencing a pattern of "misconduct over several years." 2021 WL 4943742, at *5, *6, *10–11 (emphasis and citations omitted). Plaintiffs also cite *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 236–37 (D. Minn. 2019), where the litigants affirmatively "wiped and discarded their phones" (twice, in one case) after the suit was filed, even though the phones were used for their recording business, and lost text messages would pertain to the allegedly stolen song recordings. DOJ Mot. at 27. Indeed, the court there specifically distinguished a situation where the missing ESI was just the result of a "failure to disengage the auto-delete function." *Paisley Park Enters.*, 330 F.R.D. at 236–37. Plaintiffs further rely on decisions where case-dispositive evidence was destroyed by a party. *See, e.g.*, DOJ Mot. at 25–28; *Doe v. Wesleyan Univ.*, 2022 WL 2656787, at *4, *12 (D. Conn. July 8, 2022) (plaintiff strategically destroyed evidence because it was "the most direct proof of Plaintiff's cheating"); *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430–31 (W.D.N.Y. 2017) (litigant failed to preserve "the most important objective evidence" in the case, which was "critical and irreplaceable," despite "knowing they had a duty to preserve" it); *O'Berry v. Turner*, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016)

+

(rather than issuing a written litigation hold, defendant printed a single paper copy of the driver logs in a vehicle collision litigation, then lost the only copy).[17]

In sum, there is no basis for Plaintiffs' invocation of Rule 37(e)(2).  That should be rejected out of hand.

## V.   No Additional Discovery Is Required or Appropriate.

Finally, Plaintiffs' request for "discovery on discovery"—from a Rule 30(b)(6) deposition, to requiring declarations from scores of individual custodians, to the production of privileged hold notices, to an evidentiary hearing before the Court, DOJ Mot. at 29–31—is unnecessary and inappropriate here for multiple reasons.

*First*, there is no need for an additional factual record to address Plaintiffs' motions.  The Court has before it extensive briefing by both Plaintiffs and Google that sets forth the pertinent facts regarding Google's process for preserving chats and the facts surrounding the information provided to Plaintiffs about those practices.  The Court also has ample evidence regarding the massive discovery produced by Google and third parties in these cases.  There are no additional material facts necessary to resolve whether Google's chat preservation practices are sanctionable, considering the timeliness of Plaintiffs' motions, the prior disclosures made to Plaintiffs about

---

[17] Plaintiffs also cite to cases where courts held that litigants did *not* have the requisite intent for a Rule 37(e)(2) sanction.  *Ungar v. City of N.Y.*, 329 F.R.D. 8, 12, 14 (E.D.N.Y. 2018) (no intent, despite finding of "gross negligence"); *see also Borum,* 332 F.R.D. at 49 (same). And Plaintiffs cite a case where the court ruled under its inherent authority, rather than using the more stringent Rule 37(e)(2) standard applicable here.  *United States ex rel. Scutellaro v. Capitol Supply, Inc.,* 2017 WL 1422364, at *10 (D.D.C. Apr. 19, 2017) ("Rule 37(e) does not govern the instant spoliation motions"); *see also* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment (new Rule 37(e) "forecloses reliance on inherent authority").

these practices, the reasonableness of Google's preservation efforts, and the lack of prejudice to Plaintiffs' ability to prosecute these cases.[18]

**Second**, Plaintiffs' proposed "discovery on discovery" demonstrates a disregard for the significant burden on Google that is disproportionate to any asserted rationale for seeking the information.  For instance, Plaintiffs propose ordering Google to obtain "signed declarations from each of Google's document custodians in this case," DOJ Mot. at 30, but ignore that this includes *more than 100* custodians (including numerous individuals who no longer work at Google).  Likewise, the topics Plaintiffs propose for another Rule 30(b)(6) deposition, including the company's "document preservation policies" and "any litigation hold or holds that Google issued with respect to the Investigation or this Litigation," DOJ Ex. 52 at 4, are unnecessary.  Google already has provided the necessary evidence of its preservation policies, including the fact that custodians were instructed to preserve chats if they were relevant to the subject matters at issue in these cases.

**Third**, Plaintiffs seek documents that are privileged on their face—namely the legal hold notice and associated reminders issued by Google's in-house counsel to the company's employees.  Plaintiffs do not argue otherwise.  *See* DOJ Mot. at 30.[19]  And this is not, as Plaintiffs suggest, a "sword and shield" situation.  *Id.*  Google is not opting as a matter of strategy to rely on

---

[18] In fact, the Plaintiffs' own cited case*, In re Dynex Cap., Inc. Sec. Litig*., 2011 WL 2581755, at *3, *5 (S.D.N.Y. Apr. 29, 2011), expressly recognizes that "no such hearing is required" and *declined to hold a hearing* in the circumstances presented there.

[19] As numerous courts have held, such communications are protected by the attorney-client privilege and work product doctrine.  *See, e.g.*, *Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urb. Dev*., 19 F. Supp. 3d 1, 22 (D.D.C. 2013) ("To be sure, litigation hold letters are generally privileged."); *Muro v. Target Corp*., 250 F.R.D. 350, 360 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009); *Gibson v. Ford Motor Co*., 510 F. Supp. 2d 1116, 1124 (N.D. Ga. 2007).

communications to advance a reliance-on-counsel defense to the Plaintiffs' antitrust theories. Rather, Google discussed these communications, to a limited extent, to respond to Plaintiffs' inquiries about its preservation practices. Indeed, when the same issue was raised in the *Google Play* litigation, the court assured Google that it would *not face a* waiver by describing in general its practices (and not requiring production of the actual hold notices). *See* DOJ Ex. 1 at 42–44 (stating that the court was giving Google "the biggest blanket I can give you" to discuss the relevant provisions of the hold notice).[20]

*Finally*, Plaintiffs' bid for additional discovery is itself clearly untimely. Fact discovery in this matter closed in May 2022, and with it the Court's June 2022 deadline for parties to file any motions to compel regarding discovery. *See* Order Regarding Production Deadline, Mot. to Compel Deadline, and Evidentiary Cut-Off Date, ECF No. 357 (May 25, 2022). Plaintiffs' request for additional discovery not obtained during the discovery period, which essentially constitutes a dressed-up motion to compel, is thus eight months late. As explained above, Plaintiffs' entire motion should be denied as untimely. And Plaintiffs' attempt to reopen discovery—when it was firmly shut more than nine months ago—should be denied as well. *See, e.g.*, *Williams v. Johnson*, 747 F. Supp. 2d 10, 17–18 (D.D.C. 2010) (holding that after "the Court expressly informed the

---

[20] At the very least, Plaintiffs' request for production of the entire legal hold and all reminder notices is inappropriate and overly broad because the instruction on chats is the only provision at issue here. The commentary to Federal Rule of Evidence 502 is clear that "a voluntary disclosure in a federal proceeding . . . generally results in a waiver *only of the communication or information disclosed*." Fed. R. Evid. 502 advisory committee's note to 2007 amendment (emphasis added); *see also id*. ("subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary"); *Trs. of Elec. Workers Loc. No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc*., 266 F.R.D. 1, 15–16 (D.D.C. 2010) (under Federal Rule of Evidence 502, waiver may only extend to undisclosed information when "the disclosed and undisclosed information concern the same subject matter" and "ought in fairness be considered together").

parties that discovery would close" on a date certain, "Plaintiff cannot be heard to complain of alleged discovery failures at this late date").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motions should be denied.

Dated: March 10, 2023

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted _pro hac vice_)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

_Counsel for Defendant Google LLC_