**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| | HON. AMIT P. MEHTA |
| v. | |
| | ███████████████ |
| GOOGLE LLC, | |
| Defendant. | |

**THE UNITED STATES' REPLY IN SUPPORT OF ITS
MOTION FOR SANCTIONS AGAINST GOOGLE, LLC AND
AN EVIDENTIARY HEARING TO DETERMINE THE APPROPRIATE RELIEF**

March 24, 2023

# TABLE OF CONTENTS

I.    The United States' Motion For Sanctions Is Timely ................................................**4**

  A.   Rule 37(e) Focuses On Conduct, Not Timing ................................................. 4

  B.   Google Did Not Disclose Its Chat Destruction Policy Until January 2023 ...................... 6

II.   Google's Chat Destruction Policy Was Not Reasonable And Prejudiced
      The United States ....................................................................................**10**

  A.   Google's Instruction To Its Employees To Turn "History On" Is Not Reasonable ........ 11

    i.   Delegating Its Preservation Obligations To Employees Was Unreasonable ................. 11

    ii.  Auto-Deletion Was Unreasonable ................................................................ 14

  B.   The United States Was Prejudiced ................................................................... 15

    i.   The United States Was Presumptively Prejudiced Because Google Acted With
         An Intent To Deprive ............................................................................ 16

    ii.  Google's Spoliation Prejudiced The United States ........................................... 18

III.  An Evidentiary Hearing To Determine The Scope Of Sanctions Against Google Is
      Appropriate .......................................................................................**20**

CONCLUSION ...............................................................................................**22**

Google employees routinely direct sensitive business conversations to "off the record" chats to ensure those conversations evade discovery, as occurred here. Google does not dispute this. Nor does Google disagree that it automatically destroyed these "history off" chats every 24 hours for nearly four years. During that time, Google was not only under investigation by the Department of Justice, but was also in active litigation against a variety of plaintiffs across the country. Google finally ceased its daily deletion of these "off the record" chats on the eve of the United States filing its Motion for Sanctions (ECF No. 495). But this is too late; Google has already spoliated significant and important evidence in this case.

Unable to counter the troubling facts related to its four years' long practice spoliation, Google responds to the United States' Motion in two ways. First, rather than accept responsibility for its actions, Google blames the United States for not deciphering sooner the fact and scope of Google's spoliation. Second, Google argues that its longstanding auto-deletion of "history off" chats, including for all 129 custodians identified for this litigation, was "reasonable." Neither argument sanitizes Google's conduct nor survives legal scrutiny.

Google's timing argument is a red herring. As an initial matter, Google's primary focus on timing betrays what is now apparent: Google violated its document retention and discovery obligations in material and irrecoverable ways. To now claim that the United States should have raised this issue earlier does not respond to the question of whether Google violated its obligations under the Federal Rules of Civil Procedure. It did. Google violated Rule 37(e) for nearly four years starting in May 2019 (when it reasonably anticipated litigation and began asserting privilege over withheld documents) through February 2023 (when Google finally began to preserve all chats for employees on litigation hold, after disclosing the entirety of its chat policy to the United States weeks prior and being faced with a sanctions motion).

Thus, *when* the United States brought its Motion is not dispositive of *whether* Google violated Rule 37(e); instead, Google's conduct answers that question. As to timing, the record is clear that after Google disclosed its chat-specific retention policy in January 2023, the United States timely moved for relief. Google's suggestion that the United States should have more quickly pieced together Google's insufficient and misleading disclosures, made to many parties in various places, rings hollow. The Federal Rules of Civil Procedure direct parties to behave in specific ways with respect to their preservation obligations in each case. That Google routinely failed to adhere to those obligations is Google's responsibility alone.

Second, Google's decision to systematically delete an entire category of documents based on its own "determination that history-off chats are less likely to be substantive" is not reasonable and prejudiced the United States. *See* ECF No. 529 ("Def. Br."), at 6. Companies cannot tailor their preservation practices based on a subjective, unilateral determination of what categories of evidence should be disclosed in discovery. This is not an onerous burden to put on Google; it is a basic tenet of the Federal Rules of Civil Procedure.

The lack of reasonability is made even more apparent from a recent production from Google. On March 17, 2023, after our Motion was filed, Google produced some of the materials previously provided to the *Epic* plaintiffs.[1] The United States is still reviewing this production of nearly 20,000 chats.[2] So far, these materials further confirm that (1) some of the destroyed chats

---

[1]  *Epic Games, Inc. v. Google, LLC*, No. 3:20-cv-5671 (N.D. Cal), as consolidated, *In Re: Google Play Store Antitrust Litig.*, No. 3:21-md-2981 (N.D. Cal) (together, "*Epic*"). Days after the United States filed its motion, Google was ordered in *Epic* to search preserved chats, as well as deleted chats temporarily retained in backup files, for chat (1) responsive to agreed-upon search strings and (2) Court ordered terms such as "off the record" and "history off." *See* Reply Exhibit ("Rep. Ex.") 53, *Epic* Docket, ECF No. 454 (Feb. 15, 2023); Rep. Ex. 54 (Mar. 17, 2022 letter from Google providing materials on request).

[2]  The United States promptly began review of these materials and its review is ongoing. Rather than delay this reply, the United States simply notes that should completion of its review

were highly relevant to the issues in this case and (2) many Google employees intentionally moved chats "off the record" to evade discovery. For example, the head of Platforms & Ecosystems Strategy for Android wrote in a recently produced chat that she discussed Revenue Share Agreements ("RSAs")—one of the contracts at the core of this case—"all day" with "history off," despite knowing that she is subject to multiple legal holds. Rep. Ex. 55, GOOG1-00012951, at -952. In another, Google's Finance Director (and a deponent in this case) noted that "the DOJ case is making the content very sensitive to share via email these days." Rep. Ex. 56, GOOG-DOJ-32681229, at -229; *see* ECF No. 495-1 ("Mot."), at 5–6.

Indeed, even Sundar Pichai, Google's CEO, sought to move his substantive conversation with other executives to history off. Rep. Ex. 57, GOOG1-00012933, at -934. This is unsurprising because, as Google recognized, its employees used "history off" chats to "communicate with less care than you might with email," Rep. Ex. 58, GOOG1-00013057, at -060, and regularly turned "history off so that we can speak (more) freely." Rep. Ex 59, GOOG1-00012944, -945.

Notwithstanding a lack of relevant legal support for its position, Google effectively requests that this court endorse its improper conduct. Accordingly, the United States respectfully requests that the Court (1) hold that Google has engaged in spoliation in violation of Rule 37(e); (2) order an evidentiary hearing to assess the appropriate sanctions to remedy Google's spoliation; and (3) order Google to provide further information about custodians' "history off" chat practices, through written declarations and oral testimony, in advance of the requested hearing.

---

warrant discussion of any additional materials facts, it may seek leave of the Court to supplement this brief with those limited additional facts and related argument.

## I.      The United States' Motion For Sanctions Is Timely

As an initial matter, the United States' Motion is timely. Its timing is a direct result of Google's failure to properly and fully disclose its chat practices and sanctionable conduct.

Google spends much of its response blaming the United States for not recognizing Google's misconduct earlier and arguing that the Motion's timing shields Google from sanctions. *See* Def. Br. at 19, 23. This argument is twice wrong. First, the Federal Rules do not contemplate a deadline for Rule 37(e) spoliation motions. Second, had Google fully disclosed its chat retention policy to the United States, the pending Motion would have undoubtedly been filed earlier. Any purported delay is properly attributable to Google's misconduct, evidenced by Google's failure to fully disclose its chat auto-deletion policy until January 2023.

Google's timeliness arguments thus boil down to the proposition that the United States should have known earlier that the company's statements regarding chat preservation in this case were false. That is not the law. *See In re Facebook, Inc. Cons. Priv. User Profile Litig.*, 2023 WL 1871107, at *28 (N.D. Cal. Feb. 9, 2023) ("Discovery—and the court system as a whole—depend on the good faith of the parties.").

### A.      Rule 37(e) Focuses On Conduct, Not Timing

Rule 37(e) focuses on whether a party's conduct is sanctionable, not on the timing of when that sanctionable conduct is identified. FED. R. CIV. P. 37(e); *see GMS Indus. Supply, Inc. v. G&S Supply, LLC*, 2022 WL 853626, *4 (E.D. Va. Mar. 22, 2022) ("Rule 37 'does not contain any specific reference to the timing of the filing of a motion seeking spoliation sanctions.'" (quoting *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 506 (D. Md. 2009)).

The lack of a timing requirement for Rule 37(e) makes sense. An explicit timing requirement would provide a windfall to a spoliating party who obscures destruction of evidence

4

until discovery closed. And enabling parties to benefit from evidence destruction is inconsistent with the Federal Rules and their underlying intent. None of the cases that Google cites reflect otherwise.[3]

Google seems to suggest that the United States should have rushed to the Court at the first hint of any potential issue. Notwithstanding that Google's preferred approach would flood courts with sanctions motions over what are often routine discovery conflicts, it is sensible that "a party need not file a motion at the first inkling of spoliation but is entitled to gather evidence . . . before filing a motion." *Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*, 2016 WL 7115911, *1 (D. Alaska Dec. 6, 2016). Filing a motion "as soon as reasonably possible" after discovering necessary facts regarding Google's spoliation, as the United States did, renders the Motion timely. *Goodman*, 632 F. Supp. 2d at 509.

That fact discovery is closed and summary judgment motions fully briefed—the primary facts tied to Google's timing argument—does not make Google's conduct defensible. The United States does not seek further fact discovery: the chats are destroyed and cannot be restored. Nor does the United States seek to extend summary judgment deadlines or the trial date, as delay only benefits Google and again does not restore the destroyed information. *See* Mot. at 29 n.26. Further, the case is bifurcated, and both the parties and the Court contemplated additional discovery related to remedies—a point that Google does not dispute. *See* Mot. at 17, 27 n.25.[4]

---

[3]   Barring one out-of-circuit case, none of the cases to which Google cites for its "unreasonable delay" arguments are decided under Rule 37(e). *See* Def. Br. at 23–24. In the sole case under Rule 37(e), *Al-Sabah v. Agbodjogbe*, 2019 WL 4447235 (D. Md. Sept. 17, 2019), the court found defendants' motion, filed 14 months after the close of discovery, to be both untimely and frivolous, as defendants had other versions of the allegedly spoliated materials. *Id*. at *4–5; see* Def. Br. at 23. Google does not dispute that the destroyed chats were never produced and are now unrecoverable; ample evidence shows the relevance of the spoliated chats.

[4]   The timing of the United States' motion is consistent with the factors considered by courts when assessing the timing of a Rule 37(e) motion, such as how close in time the filing was to

Finally, Google asserts no prejudice by the timing of the United States' Motion, emphasizing that filing the Motion after the close of discovery is not dispositive. Rather, as the proceedings in *Epic* make clear, even had the United States learned of and raised the issue to Google previously, the company would not have altered its behavior sooner. Indeed, the fact that Google established an auto-delete policy to avoid the preservation of chats in multiple litigations—a policy successful until just recently—only underscores that Google's policy was difficult to detect, let alone remediate. *See, e.g.*, Mot. Ex. 41, at -310 (Google's admission that it has "never" preserved all chats for relevant individuals by turning "history on").

### B.      Google Did Not Disclose Its Chat Destruction Policy Until January 2023

Google did not fully disclose its chat retention policy until January 2023. Following that disclosure, the United States timely moved for relief. The Federal Rules do not absolve Google's spoliation because it previously provided partial information about its chat preservation policies.

Google averred that it "put a legal hold in place" which "suspends auto-deletion" in November 2019.[5] Mot. Ex. 3, at -074. The United States relied on that assertion. Google tries to minimize its representations by pointing to information Google provided the United States in a *different* investigation. Def. Br. at 12–15. Materials from that investigation show that Google disclosed some, but not all, components of its chat preservation policy over multiple years and across multiple matters.[6] Yet none of these communications explained that (1) chats were set *by*

---

the close of discovery, dispositive motions, or trial; whether a case's scheduling order sets a deadline for spoliation motions; and why the moving party did not earlier file. *See GMS*, 2022 WL 853626, at *4; *Gruenstein v. Browning*, 2022 WL 3213261, *3 (N.D. Ill. June 21, 2022).

[5]   The ESI Questionnaire instructed that responses "should reflect an inquiry into actual employee practices, and not just the organization's policies." Mot. Ex. 3, at -064.

[6]   Google's focus on what the United States learned in the conduct of another investigation is noteworthy given Google's insistence of the separation of investigations. For example, Google refused to agree that materials produced in that investigation were deemed as produced in this case as well. Rep. Ex. 60 (Aug. 4, 2022 letter from D. Aguilar to G. Safty)

*default* to "off the record"; (2) Google had a policy of deleting, every 24 hours, those "off the record" chats; (3) even if an employee turned "history on," prior chats in that same thread would be destroyed; and (4) nearly all custodians regularly used "off the record" chats for substantive conversations.[7] The analysis should end there.

Nevertheless, it was only after the *Epic* sanctions motion was filed in October 2022 that the United States began to learn the full scope of Google's chat preservation policies and its employees' chat practices—all while significant spoliation was continuing in this case. The United States then promptly questioned Google regarding its chat preservation practices, and repeatedly followed up even when Google refused to respond. *See* Mot. Exs. 38, 39. In January 2023, Google finally produced its chat-specific retention policy—which it did not separately document until November 2020—and admitted that "[a]ll chats that are not on the record are subject to deletion within 24 hours and are not automatically preserved by a legal hold." *See* Mot. Exs. 27, 40. Thereafter, the United States timely filed its Motion.

There is no dispute that Google should have disclosed its chat-specific retention policy earlier. As Google recognizes, the parties engaged in discussions about ESI from 2019 through 2021, Def. Br. at 10–15, reinforcing that Google ignored multiple opportunities to fully disclose its chat preservation policies, to include at least providing a copy of that policy. *See* Def. Ex. 10,

---

n.2 (explaining that Google's expert relied on materials produced in another investigation); Rep. Ex. 61 (Aug. 9, 2022 email from G. Safty to D. Aguilar) (responding that Google disagreed materials produced in one case can be used in another).

[7]   *See* Def. Ex. 11 (asking what steps Google takes to ensure it is preserving "responsive conversations from chats . . . as 'on the record,'"); Def. Ex. 12 (referring back to Google's November 2019 responses to the ESI Questionnaire); Def. Ex. 13 (testifying that she did not receive substantive information "as much [on] chat. It's usually other communication forms"); Def. Ex. 14 (noting that "chats not marked 'on the record' are not collected and produced to the Division" and asking for the number of "on the record" chats preserved); Def. Ex. 15 (following up regarding the number of preserved "on the record" chats); Def. Ex. 16 (stating that Google "has collected a total of 57,739 chats" from custodians).

¶ 12 (United States inquired about Google's chat collection process at meet and confers after the complaint was filed); *id.* ¶ 15 (documenting uncertainty about scope of chat-related inquiries).

Still, Google asserts that the United States should have somehow considered information available in other ways, whether through other plaintiffs in other cases, from separate state investigators in other investigations, or from online sources. Neither the facts nor the law support Google's assertion that the United States had a burden to ferret out Google's disregard of its preservation obligations.

First, Google points to a December 2021 joint case management statement filed in *Epic*. Def. Br. at 15–16; Def. Ex. 17. That statement from an unrelated lawsuit documents plaintiffs' concerns regarding Google's document preservation, based in part on testimony and chat productions of Tian Lim, who was never a custodian in this matter. Def. Ex. 17. Further, the *Epic* joint case management statement sets out the questions that those plaintiffs requested the court order Google to answer—many of the same questions asked by the United States in November 2022 and again through its Motion—such as further information regarding Google's litigation hold and the chat practices of individual custodians. *See id.* at 8–9.

Second, Google refers to letters exchanged during the State of Texas investigation written months before this suit was filed, and also points to a deposition that the United States did not attend. Def. Br. 9–11. Google's Exhibit 6, a letter from Google, shows that it told the state that the company retained "on-the-record" messages if a custodian is on a legal hold, Def. Ex. 6, at 3; Google's Exhibit 7, the state's response, shows that the state understood "[i]f the user is on a legal hold, the user is told to mark all chats as on-the-record." Def. Ex. 7, at 3. Google's Exhibit 8, another letter sent by Google, shows its explanation of certain chat settings but also its failure to explain others, such as the fact that if a custodian turned "history on" midway through

8

a conversation, prior chats in the thread would still be deleted after 24 hours. Def. Ex. 8, at 4. Nothing in the correspondence referenced by Google acknowledges that its custodians' regular practice was to conduct "history off" conversations. Instead, Google incorrectly asserts that it was "taking reasonable and appropriate steps to ensure its custodians' compliance" with a litigation hold. *Id.* at 5.

Finally, Google cites support pages for its Google Chat product. *See* Def. Br. at 20. This website states nothing about Google's own settings or its litigation hold policies in this case— which Google said suspended auto-deletion. *See, e.g.*, *Mobile Telecomms., Techs., LLC v. Blackberry Corp.*, 2015 WL 12698061, at *4 (N.D. Tx. May 19, 2015) (holding defendant had "no reason" to "search for documents in the public record" given plaintiff's discovery representations). Google's attempts to foist its discovery obligations onto its counterparty to detect and investigate for itself, through other litigations and the public domain, Google's compliance with those obligations upends the Federal Rules of Civil Procedure.

Nowhere in its 42-page response does Google point to any affirmative representation made by the United States indicating that it agreed to Google's destruction of an entire category of relevant documents. And nowhere in its response does Google contend that it provided the entirety of its chat policy to the United States prior to January 2023. Not only did the United States lack full knowledge of Google's policies until then, but the full scope of Google's chat abuse is still being revealed. For example, recently produced chats show that Google discusses substantive business over chats *with third parties*—also instructing those third parties to communicate with care. *See, e.g.*, Rep. Ex. 62, GOOG-DOJ-32662145, at -146 (discussing ███ ███ test features and noting that "[h]istory is on now . . . Please communicate with care given this."). Moreover, even if the United States had long known of Google's chat retention

policies, and it did not, the company never revealed that Google employees regularly avoided their preservation obligations by moving sensitive conversations "off the record" to avoid the very discovery obligations that Google continues to assert were met.

Google's timing arguments seek to take the Court and the law governing discovery obligations far afield from the good faith and transparency required by the Federal Rules. This attempt to recast and shift Google's burden should be rejected.

## II.   Google's Chat Destruction Policy Was Not Reasonable And Prejudiced The United States

Google does not dispute that, beginning in 2019, it had a duty to preserve evidence potentially relevant to this litigation. Def. Br. at 25–29.[8] Nor does Google dispute that it left in place its chat destruction policy, *i.e.*, that "history-off chats [would] disappear within 24 hours," *id*. at 26, until January 2023.

Rule 37(e) provides that a court may sanction a party that fails to "take reasonable steps" to preserve ESI. Google claims that its chat destruction policy was reasonable and that, regardless, the United States was not prejudiced. Def. Br. § II–III. The Court should reject both arguments. It was inherently unreasonable for Google to default most chats to "history off" and then automatically delete those chats for custodians under a litigation hold. That is especially true because Google recognized its employees' use of "history off" chats "to discuss sensitive topics" and avoid discovery. *See* Mot. Ex. 2, at -652; Mot. Ex. 9, at -829.[9] Indeed, Google

---

[8]   While admitting it had a duty to preserve potentially relevant evidence beginning in 2019, Google suggests that the duty was triggered "after the litigation hold was implemented." Def. Br. at 29. That is not correct: Google's duty to preserve began when it reasonably anticipated litigation, no later than May 2019. *See* Mot. at 6–7. Google offers no response to this point.

[9]   *See also, e.g.*, Rep. Ex. 63, GOOG-DOJ-32681572, at -575 (discussing how a conversation ▇▇▇▇▇▇▇ should not be shared over email nor copied to additional individuals "so you do not get found in discovery . . . and called to courts by mistake").

empowered and encouraged them to do so. *See* Mot. at 1; Mot. Ex. 1, PX-120, at -264.

As for prejudice, the Court can infer prejudice because the few preserved "off the record" chats produced recently through the *Epic* proceedings show that four years of Google's "off the record" chats would have revealed significant relevant evidence. Google's repeated references to the volume of its production of other categories of documents to suggest a lack of prejudice also rings hollow. *See, e.g.,* Def. Br. at 3, 5, 29. It is unsurprising that in a case of this magnitude, the universe of potentially relevant documents is substantial. But neither the quantity of potentially relevant materials nor the size of its document production authorizes Google to pick and choose which written communications it prefers to retain and produce. The Federal Rules do not countenance the type of self-interested systems designs that Google adopted here.

### A.  Google's Instruction To Its Employees To Turn "History On" Is Not Reasonable

Google's decisions to turn preservation responsibilities over to its employees without also ensuring compliance and its failure to suspend the auto-delete function were unreasonable.

### i.    Delegating Its Preservation Obligations To Employees Was Unreasonable

Because Google cannot dispute that it automatically deleted "history off" chats even after anticipating litigation in this case, the company argues that its "explicit instructions" regarding the use of chat in its legal hold were sufficient to show that the company complied with its discovery obligations. Def. Br. at 26. But Google cannot divest its obligations to its employees, particularly where it knows that employees routinely use "history off" chats for sensitive business communications. *Apple Inc. v. Samsung*, 881 F. Supp. 2d 1132, 1137 ("[I]t generally is recognized that when *a company or organization* has a document retention policy, *it* is obligated to suspend that policy . . . ." (cleaned up and italics added)); *see also DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 933 (N.D. Ill. 2021) ("A litigation hold—whether

verbal or written—that fails to instruct a party to disable autodeletion functions is not much of a litigation hold."); *Youngevity Int'l v. Smith*, 2020 WL 7048687, *3 (S.D. Cal. July 28, 2020) ("a litigation hold is only reasonable to the extent it facilitates preservation of ESI") (citing cases).

Google's decision to abdicate its own preservation responsibilities is particularly problematic given that its employees made clear their incentives to hide conversations from legal scrutiny. *See, e.g.*, Rep. Ex. 64, GOOG1-00013039, at -045 ("I prefer not to be deposed for the contents of kappa chat . . . It needs to be history off"). Indeed, these incentives were sometimes discussed within the broader context of Google's "Communicate with Care" policies. Rep. Ex. 65, GOOG1-00013021, at 022–023 ("should we have history off for this? . . . our chats about google products are more likely to come up in court [laugh emoji] . . . just communicate with care."); Rep. Ex. 62, at -146 (instructing chat participants to "communicate with care" after history was turned on); *see also* ECF No. 317. Knowing this, Google nevertheless delegated to its employees complete control as to whether their "off the record" chats would be deleted.

Even when Google employees attempted to preserve substantive chats, they faced pushback from coworkers or managers who wanted their chats deleted. *See, e.g.*, Rep. Ex. 66, GOOG1-00012954, at -955 (employee advising of turning history to on to discuss RSAs and being immediately asked to turn history to off). Indeed, company management encouraged employees to use "history off" chats for sensitive conversations, modeled this behavior themselves, and intentionally set the default retention setting—even for individuals under a legal hold—to "history off." *See, e.g.*, Rep. Ex. 58, at -058 (responding to "the motivation for" turning history off in a group chat, a user explained that "managers get skittish"). As described above, *see infra* at 3, this practice existed throughout Google, from its CEO to a variety of teams and professionals.

The unreasonableness of Google's conduct is further evidenced by the work required for an employee who wanted to comply with the litigation hold. To comply with a litigation hold, when an employee started a new one-on-one chat, she would first have to recall that the hold may have described certain circumstances in which default chat settings, as distinct from email and other forms of communications, needed to be adjusted. She then had to confirm her chat history setting. Then she would have to determine whether the conversation she was about to have might concern a topic covered by a legal hold because turning "history on" only applies prospectively, not to any prior chats in the chain. *See* Mot. at 1–2. Throughout the course of any chat, she would also have to ensure that her chat partner did not change the setting to "history off." If the partner changed the setting and she became aware of that fact, she would need to— within 24 hours—forward that "history off" portion of the chat to email or otherwise copy and paste it into a document before it was permanently deleted. *See* Mot. Ex. 25.

Google is, of course, the architect of the chat platform at issue and, as conceded by its response, made decisions about the user settings and defaults. *Burns v. Medtronic, Inc.*, 2017 WL 11633269, at *4 (M.D. Fla. Aug. 9, 2017) ("The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts . . . ." (quoting FED. R. CIV. P. 37(e), advisory committee's notes to 2015 amendment)). Thus, once Google reasonably anticipated litigation, it could have, as it had already done for other categories of chats, simply automatically defaulted one-on-one chats to "history on" to ensure preservation of potentially relevant materials. At an even more fundamental level, had Google wanted to assess the reasonability and defensibility of its delegated processes, it could have monitored or audited compliance with its litigation hold, which would have made clear that the risk of non-compliance was real. *See* Mot. at 14 (citing Mot. Ex. 1, Tr. 46:8–17, 132:22–24); *see, e.g.*, Rep. Ex. 67,

13

GOOG-DOJ-32662132, at -132 ("Is there no way to turn history off for these spaces? . . . I don't even see the option as an administrator. I'll deprecate this group so we can use the other.").

### ii.    Auto-Deletion Was Unreasonable

Google fails to cite a single case that approved of a party automatically deleting an entire category of potentially relevant written communications.

Instead, Google cites cases showing that companies need not always search their employees' personal devices during discovery. *See* Def. Br. at 26. Because the chat platform at issue here always belonged to Google, these cases are inapposite. For example, the company's reliance on *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74 (S.D.N.Y. 2022) is misplaced. *La Belle* did not address spoliation and did not concern an auto-delete policy. In that case, the court held that the company was not required to search employees' personal devices when (1) the company had a policy against using personal devices for work and (2) there was insufficient evidence that any such texts on personal devices actually existed. *Id.* at 84. *USI Ins. Services LLC v. Bentz*, 2020 WL 7753690 (D.N.D. Dec. 29, 2020), is also inapposite: the defendant was not required to seize and search personal devices because there was no evidence that employees conducted work on them. *Id.* at *5–6. Here, given the widespread use of chats for work-related discussions, Google clearly had a duty to preserve "off the record" chats.[10]

Similarly, the Court should reject Google's argument that auto-deleting chat records was reasonable because "off the record" chats were supposed to be used "for short communications" rather than substantive discussions. Def. Br. at 26–27. Google employees regularly used "history

---

[10]   For that same reason, the Court should summarily reject Google's observation that, of the chats Google actually produced, few were responsive to Plaintiffs' discovery requests, and none were cited in any reports, depositions, or motions. *See* Def. Br. at 34. Google employees knew "off the record" chats would be destroyed yet did not change their "history off" default. *See* Mot. at 14. It is unsurprising that preserved chats were less relevant than those deleted.

14

off" chats for candid business discussions. And, of course, the Federal Rules do not authorize Google to delete relevant documents simply because they are conversational or short. *FTC v. Noland*, 2021 WL 3857413, *9–10 (D. Ariz. Aug. 30, 2021) (reasonably foreseeable that deleted Signal and ProtonMail messages were relevant); *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 45 (D.D.C. 2019) (a party is required to preserve evidence potentially "useful to an adversary").

To the extent that Google—a firm that has built its business around collecting and preserving data—argues proportionality and burden, it should have raised those concerns years ago and negotiated its preservation obligations with the United States accordingly.[11] Regardless, Google's complaint that the amended Rule 37(e) does not require "perfection" is a strawman. Def. Br. at 25, 28. Disabling auto-delete is not perfection; it is a basic obligation of civil discovery in the ESI era. *See, e.g., DR Distributors,* 513 F. Supp. 3d at 979. *Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, 2016 WL 4485568, at *9 (S.D. Cal. Aug. 19, 2016) (party cannot preemptively destroy evidence based on proportionality).

Google's limited efforts to meet its obligations to preserve chats are not reasonable.

### B.     The United States Was Prejudiced

The United States was prejudiced by Google's actions. Google intended to deprive the United States of relevant evidence, so a presumption of prejudice is warranted. Even without a presumption, evidence of substantial prejudice is plain.

---

[11] Google's cases on proportionality, Def. Br. at 27, are inapposite. For example, in *Bulies v. MSC Cruises, S.A.*, 2022 WL 2340959, at *1, *3 (S.D. Fla. Mar. 14, 2022), the court held that a cruise ship reasonably preserved a sufficient amount of video footage, showing the time before and after a slip-and-fall, in light of similar cases about video preservation—a question not presented here. Here instead Google deleted an entire category of documents.

i.    **The United States Was Presumptively Prejudiced Because Google Acted With An Intent To Deprive**

Whether Google acted passively or intentionally, because Google consciously failed to meet its clear duty to preserve "potentially valuable information," the Court can presume prejudice. FED. R. CIV. P. 37(e)(2)(A); *Borum*, 332 F.R.D. at 47; *see* Mot. at 26–29; *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, 2019 WL 5694256, at *11 (E.D.N.Y. July 22, 2019) ("conscious dereliction of a known duty to preserve" ESI, whether "passive or active," suffices), *report & recommendation adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019).

For more than a year, Google has engaged with counsel in other matters regarding destruction of "off the record" chats. Yet, Google never disclosed its chat destruction practices to the United States (or other parties' concerns about those practices), but instead continued destroying chats of custodians in this case. Indeed, despite multiple inquiries by the United States over the course of this matter, Google never corrected its misrepresentations as to the scope of the company's preservation and use of chat. *See* Mot. 6–11.

Google looks for support in caselaw concerning negligence with respect to a party's preservation; that precedent cannot save Google's conduct here.[12] None feature a course of conduct akin to Google's, which includes (1) its choice to keep the auto-delete enabled for "off the record" chats, despite anticipated and then actual litigation; (2) misrepresentations about and failure to disclose this policy; (3) failure to monitor the ongoing preservation of relevant records; and (4) regular exploitation of "history off" chats by employees to conduct sensitive discussions

---

[12] Def. Br. at 34–39; *see, e.g., Flores v. AT&T Corp.*, 2018 WL 6588586, at *9 (W.D. Tex. Nov. 8, 2018) (evidence showed a "negligent continuation of its routine policy"); *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, 2020 WL 1809191, at *9 (D. Md. Apr. 9, 2020) (negligent failure to institute litigation hold after receiving third-party subpoena).

16

free from civil discovery. *See* Mot. at 25–29. Google's suggestion that any failure to suspend auto-deletion of "off the record" chats is negligent is further contradicted by the fact that even after the *Epic* sanctions motion was filed, this practice continued. *See, e.g.*, Def. Br. at 35.

Google lists its preservation efforts with respect to other categories of documents. *See, e.g.*, Def. Br. at 5, 36. These efforts do not alter the analysis here. The fact that Google did not destroy more documents does not protect the company from the consequences of its spoliation. Given the numerous chats showing that employees explicitly moved conversations "off the record" to avoid legal discovery, Google's intentional decision to outsource its preservation obligations to those employees deprived the United States of the "unique, relevant evidence that might be useful to" the United States—here, "history off" chat messages. *See* Def. Br. at 27 (citing *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740–41 (N.D. Ala. 2017).[13]

Google also argues, without evidence, that its auto-deletion was not intentional because it was a function of product design. Def. Br. at 36–37. But Google itself designed the product and configured all of its settings, including the retention period for the various types of chats. *See, e.g.*, Def. Br. 4–5. Google had the power to change these settings—including defaults and auto-deletion—at any time, but chose not to. In fact, sworn testimony at the *Epic* hearing established that Google could have preserved all chats for all employees on legal hold. Mot. at 13 (citing Mot. Ex. 1, Tr., 43:22–46:17). It was not until immediately before the United States filed its sanctions motion that Google finally started preserving all chats for custodians on litigation hold,

---

[13]   In *Alabama Aircraft*—which Google relies on, Def. Br. at 27—the court sanctioned Boeing under Rule 37(e)(2) after an employee deleted potentially relevant emails and the company offered no "credible explanation" for why that evidence was not preserved in accordance with the company's stated preservation measures. 319 F.R.D. at 746 ("unexplained, blatantly irresponsible behavior" supports a finding of "intent to deprive.").

thereby demonstrating the ability to do what it should have done four years ago. *See* Mot. at 2–3 (citing Mot. Ex. 4, at -415).

### ii.      Google's Spoliation Prejudiced The United States

Even absent a presumption, there is overwhelming evidence of prejudice. By routinely and systematically destroying "history off" chats after Google's employees moved responsive and relevant conversations to that forum to avoid discovery, Google prejudiced the United States. Accordingly, curative sanctions, of a character and scope to be resolved through evidentiary hearing, are warranted under Rule 37(e)(1). *See* Mot. at 20–24.

At bottom, Google's rejoinders to the United States' prejudice arguments assume away the significance of the volume of destroyed chats and indulge, without a legal basis, every assumption against the relevance of the destroyed chats. Cases that Google cites on prejudice are distinguishable because they involve narrow pieces of lost or allegedly lost evidence, Def. Br. at 30–31, a sharp contrast to the across-the-board destruction of an entire category of materials for all 129 document custodians that Google admits occurred for nearly four years.[14] The fact that the overall volume of destroyed materials is, because of Google's actions, unknowable is not an argument against prejudice.

In large part, Google again argues that the United States was not prejudiced because the company produced four million documents in this case. Def. Br. at 3, 25, 32–33. As noted above, there is no production-volume defense to spoliation. Google also notes that the Plaintiffs took

---

[14] *See, e.g.*, *Dickerson v. D.C.*, 2022 WL 656172, at *7 (D.D.C. Mar. 3, 2022) (performance reviews irrelevant to legal issues); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 108, 110 (E.D. Va. 2018) (narrow category of allegedly lost "notes or memoranda," where the employee at issue was "steadfast" that he never actually took any notes). Other cases cited by Google are inapplicable for other reasons. For example, the court in *Marshall v. Dentfirst, P.C.*, 313 F.R.D. 691, 697 (N.D. Ga. 2016), found no prejudice because the lost documents were irrelevant as a matter of law under the applicable legal standard.

depositions of more than 50 Google witnesses, *see id.* at 32, but the prejudice actually grew during these depositions: the United States had no opportunity to confront those witnesses with documents that Google destroyed. *See, e.g.*, *Jones v. Hirschbach Motor Lines, Inc.*, 2022 WL 4354856, at *4 (D.S.D. Sept. 20, 2022) (holding that "the evidence Hirschbach produced and the depositions conducted are not suitable replacements for the recordings Hirschbach erased"). Moreover, the United States may have elected to depose different custodians, had their "off the record" chats been produced.

More fundamentally, the record is clear that many of Google's employees consciously exploited the company's 24-hour chat destruction policy, providing a ready forum for sensitive discussions that employees wanted to shield from scrutiny. Indeed, employees discussed sensitive topics via chat because they knew other communication methods were subject to production. *See, e.g.*, Rep. Ex. 68, GOOG1-00013031, at -032–33 ("Since history is turned on, be mindful of putting anything discoverable here . . ."). Thus, Google overreaches in relying upon *FTC v. DirecTV, Inc.*, 2016 WL 7386133 (N.D. Cal. Dec. 21, 2016), which concerns a technical dispute over the format in which DirecTV preserved backup materials. *See* Def. Br. at 32. That is far afield from the spoliation that occurred here.

Google's argument that there is no "cognizable" prejudice in "the context of what is actually at issue in these cases" is also wrong. *See* Def. Br. at 33. As the United States' summary judgment opposition papers make clear, there are an array of disputed factual issues to resolve at trial. *See generally* ECF No. 476. Given just the examples cited in this reply, "history off" chats could have been a fruitful source of unguarded, candid conversations among Google employees that could bear on credibility, motive, bias, as well as a host of substantive issues. Although Google discusses its distribution agreements as an example where "history off" chats purportedly

would have shed little light, *see* Def. Br. at 33, that is also wrong: distribution agreements illustrate the type of issue that Google told its employees to avoid discussing over email and that they discussed over history-off chat instead. *See* ECF No. 317-1, at 4–6 (slide deck reminding Google attendees to "communicate with care" and "always keep in mind" that "**any written communication** regarding Rev Share and MADA should include Legal" (emphasis in original)); *see also* Rep. Ex. 69, GOOG-DOJ-32674007, at -010 (discussing RSA and noting that "'competitive' is NOT a word you should use").

Google's routine destruction of written communications was not reasonable and the company's failure to preserve documents prejudiced the United States. Accordingly, Google's conduct is sanctionable.

## III.  An Evidentiary Hearing To Determine The Scope Of Sanctions Against Google Is Appropriate

The United States' Motion seeks an evidentiary hearing and additional materials in advance of the hearing. Mot. at 29–31. Both of these requests are necessary and reasonable.

In particular, the United States' requests seek information specific to what Google has (or has not) done as part of its discovery obligations in this case. There is not, for example, specific information regarding all custodians' chat practices in this case—information that the United States could not obtain without deposing each of the 129 custodians in the case. The recently produced chats contain a subset of the custodians in this case (those 72 custodians that overlap with *Epic* and who had chats responsive to the recent *Epic* searches); substantively, any chats reflect searches performed on issues relevant in *Epic*. Thus, although directionally instructive and helpful, production of these chats does not ameliorate the prejudice to the United States in this case. Nor do the recently produced *Epic* chats provide any type of relief here, as they do not substitute for chats that Google destroyed, daily, over the last four years; include all of the

custodians identified in this matter and whose documents were searched; or substitute for chats that would have been identified using search strings customized to *this* case.

Furthermore, because Google refuses to produce its litigation hold, the United States cannot determine which custodians received the hold and when, what they were instructed to do, or how they were reminded of their preservation obligations. Considering that Google uses its litigation hold as a defense, a 30(b)(6) deposition about that hold will develop the appropriate record in support of curative sanctions.[15] The Google employee designated to testify as to Google's litigation hold in *Epic* had no knowledge of the case's specific litigation hold and was not aware of how that hold was "rolled [] out." Rep. Ex. 70 (excerpt from Jan. 12, 2023 *Epic* Evidentiary Hr'g) Tr., 37:17–38:18. And now that Google has chosen to end its chat destruction policy for those custodians on litigation hold, a process that occurred only after the *Epic* evidentiary hearing and on the eve of the filing of the United States' Motion, understanding the circumstances around that process will help bring to light the scope and rationale behind Google's current and prior policies. *See* Mot. Ex. 52 (proposed 30(b)(6) schedule).[16]

For these same reasons, the *Epic* evidentiary proceedings are no substitute for this Court's own hearing. By providing the requested materials in advance, moreover, the proposed proceeding can be efficient and tailored to address any outstanding questions regarding what

---

[15] Litigation holds are not per se privileged, contrary to Google's suggestion. *See* Def. Br. at 40–41; *see, e.g.*, *Roytlender v. D. Malek Realty, LLC*, 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022) ("[L]itigation hold letters may indeed be discoverable where there has been a preliminary showing of spoliation.") (citing cases). Particularly where a litigant, such as Google, attempts to use its hold as a sword and a shield, the Court can and should order production of the hold.

[16] In lieu of requesting declarations and a 30(b)(6) deposition, the United States offered to stipulate to custodians' use of "history off" chats. Google declined. Mot. Ex. 4, at -416.

steps Google took in this case to preserve documents, and the impact of Google's preservation failures on the issues in this case.

Accordingly, the Court should reject Google's argument that the United States seeks "discovery on discovery." Def. Br. at 39–42. The information that the United States requests in conjunction with its Motion does not go to the underlying facts of this litigation, and is certainly not a "dressed-up motion to compel." *Id.* at 41. Rather, the information is sought as a preemptive attempt to focus the issues at an evidentiary hearing, with the goal of reducing the burden on the Court.

## CONCLUSION

The United States respectfully requests that the Court (1) hold that Google has engaged in spoliation in violation of Rule 37(e); (2) order an evidentiary hearing to assess the appropriate sanctions to remedy Google's spoliation; and (3) order Google to provide further information about custodians' history-off chat practices, through written declarations and oral testimony, in advance of the requested hearing.

Dated: March 24, 2023                                Respectfully submitted,

                                                     By:___*/s/ Kenneth M. Dintzer*_____
                                                     Kenneth M. Dintzer
                                                     Erin Murdock-Park (D.C. Bar #1019993)
                                                     Joshua Hafenbrack (D.C. Bar #1017128)
                                                     Veronica Onyema (D.C. Bar #979040)
                                                     Jeremy M. P. Goldstein
                                                     U.S. Department of Justice, Antitrust Division
                                                     Technology & Digital Platforms Section
                                                     450 Fifth Street NW, Suite 7100
                                                     Washington, DC 20530
                                                     Telephone: (202) 227-1967
                                                     Kenneth.Dintzer2@usdoj.gov

                                                     *Counsel for Plaintiff United States of America*