# Exhibit A

█████████████████

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | ▬▬▬▬▬▬▬ |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | ▬▬▬▬▬▬▬ |
| Defendant. | |

**GOOGLE LLC'S SUR-REPLY IN FURTHER OPPOSITION
TO PLAINTIFFS' MOTIONS FOR SANCTIONS
AND RESPONSE TO NOTICE OF *PLAY* LITIGATION ORDER**

**INTRODUCTION**

For all of the reasons explained in its Opposition, Google disputes nearly every aspect of Plaintiffs' reply briefs (ECF Nos. 571, 572). But two facets of that briefing, as well as Plaintiffs' recent submission of an order in the *Play* litigation (ECF No. 573-1), require an additional brief response because they raise issues that Google has not had the opportunity to address.

First, in a striking admission, and in marked contrast to the *Play* litigation, Plaintiffs here do not contest that they had knowledge of Google's approach to chats preservation from the very outset of discovery. Far from a "red herring," DOJ Reply at 1, this concession is dispositive. Plaintiffs' long-standing knowledge not only renders Plaintiffs' motions untimely as a threshold matter, but also belies the fundamental premise of their motions—that chats were such a likely source of unique relevant evidence that Plaintiffs would have further pursued chats during discovery had they only known Google's preservation practice. It further undermines any argument that Google acted with an intent to subvert the discovery process here; rather, Google disclosed its approach to chats to these Plaintiffs.

Second, Plaintiffs' selective quotation in their reply briefs of a handful of newly-produced chats from the *Play* litigation confuses the issues before the Court. The majority of the cited messages—cherry-picked from the many thousands produced—do not involve document custodians from this case, let alone any content relating to material issues in this case. If anything, they confirm how inconsequential chats are to this litigation.

Third, while Google respectfully disagrees with the court's order in the *Play* litigation, the ruling does not advance Plaintiffs' motions here because Plaintiffs' conceded knowledge of Google's approach to chats preservation here stands in sharp contrast to the court's finding of a lack of knowledge in *Play*. This confirms that Plaintiffs have not demonstrated actual prejudice

or intent on the facts here, regardless of the conclusions reached in the *Play* case based on the different record there.

## ARGUMENT

I.  **Plaintiffs' Concession of Their Long-Standing Knowledge of Google's Approach to Chats Preservation Is Dispositive for Multiple Reasons.**

Plaintiffs' reply briefs confirm that these parties have been on notice *for years* of the same approach to chats preservation that they now contend warrants the extraordinary imposition of sanctions. This is dispositive of Plaintiffs' motions for multiple reasons.

Rather than contesting their knowledge, Plaintiffs now pivot and assert that Google did not "*fully* disclose its chat practices." DOJ Reply at 4 (emphasis added). But that assertion appears to be based more on a quibble than anything of substance—that Plaintiffs purportedly recently learned "the fact that if a custodian turned 'history on' midway through a conversation, prior chats in the thread would still be deleted after 24 hours." *Id.* at 8-9. Plaintiffs do not contest that they understood every material aspect of Google's approach to chats preservation for years. Indeed, DOJ itself long-ago memorialized that "chats not marked 'on-the-record' are not collected and produced to the Division." Opp. Ex. 14 at 2. Furthermore, DOJ does not dispute that Google previously informed it both that off-the-record chats are not retained, Opp. Ex. 10 at ¶ 11a (Rubinstein Declaration), and that the preservation of chats was not done as an automated back-end system setting but rather depended on the custodian on legal hold marking the message as on the record, Opp. Ex. 11 at 1-2. DOJ's co-Plaintiff Texas was similarly informed years ago that it is up to the custodian to mark the chat on the record, and that "[i]f the user does not take this action for every conversation, the unmarked ones will be deleted immediately." Opp Ex. 7 at 2.[1]

---

[1] Plaintiffs focus on their recent receipt of Google's chat retention policy, but do not identify any material information contained in that policy that was not already within their knowledge.

Plaintiffs' conceded knowledge confirms that their motions are untimely and should be denied on that basis alone. Plaintiffs assert there is a "lack of a timing requirement for Rule 37(e)." DOJ Reply at 4. But while Rule 37 does not provide a specific deadline for the filing of sanctions motions, it is well-established that "unreasonable delay may render such a [sanctions] motion untimely." *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008); *see also* Opp. at 19, 22-24 (collecting cases). None of Plaintiffs' cited cases hold otherwise. To the contrary, they specifically recognize that courts *do* consider timeliness. One of Plaintiffs' cited cases explains, for instance, that "there is a particular need for these [sanctions] motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009) (cited in DOJ Reply at 4, 5). As a result, "[c]ourts are justifiably unsympathetic to litigants who, because of inattention, neglect, or purposeful delay . . . use such a [sanctions] motion to try to reopen or prolong discovery beyond the time allotted in the pretrial order." *Id.*; *see also GMS Indus. Supply, Inc. v. G&S Supply, LLC*, 2022 WL 853626, at *4 (E.D. Va. Mar. 22, 2022) (explaining that courts "have identified several 'factors that can be used to assess the timeliness of spoliation motions,'" including whether the motion was made in a late stage of litigation) (citation omitted) (cited in DOJ Reply at 4); *Sec. Alarm Fin. Enters., L.P. v. Alarm Prot. Tech., LLC*, 2016 WL 7115911, at *1 (D. Alaska Dec. 6, 2016) (noting that the court "must answer" if the motion is timely, holding it was where defendant moved for sanctions one month after plaintiff admitted recordings were erased), (cited in DOJ Reply at 5).[2]

---

[2] Contrary to Plaintiffs' assertion, DOJ Reply at 5, Google cited multiple cases where courts found unreasonable delay in denying a Rule 37(e) motion. *See, e.g.*, *Larios v. Lunardi*, 442 F. Supp. 3d 1299, 1306 (E.D. Cal. Mar. 5, 2020); *Equate Media, Inc. v. Suthar*, 2022 WL 2101710, at *3 (C.D. Cal. Feb. 2, 2022); *Al-Sabah v. Agbodjogbe*, 2019 WL 4447235, at *4-5 (D. Md. Sept. 17, 2019). To the extent Plaintiffs seek to distinguish cases addressing the timeliness of motions

3

It is further meritless to suggest that Google suffered "no prejudice by the timing" of Plaintiffs' motions. DOJ Reply at 6. As Google emphasized, Plaintiffs would seek to "turn back the clock to revisit long-settled discovery" here, Opp. at 3, just as the parties and the Court are addressing case-dispositive motions and preparing for a potential trial. Moreover, had Plaintiffs raised the issue at the outset of litigation, the parties could have presented to the Court the issue of whether Google had an obligation to employ a different preservation methodology at the outset of the case.

Plaintiffs' long-standing knowledge of Google's methodology for chats preservation is much more than a procedural matter, however. It refutes the very premise of their motions, that they would have insisted upon a different chats preservation practice had they only known of Google's approach. Plaintiffs' only response is to claim that they now have *additional* information about custodial conduct, but their attack on Google's policies goes beyond any argument regarding custodial conduct—they contend that the fact the back-end settings were not changed as part of the litigation hold process is itself sanctionable.

Plaintiffs' admitted knowledge also refutes any suggestion that Google acted with the "stringent," bad-faith intent required to establish a violation under Rule 37(e)(2). *See, e.g.*, *Borum v. Brentwood Village, LLC*, 332 F.R.D. 38, 48 (D.D.C. 2019); Opp. at 34-39. Google's approach to preservation reflected its judgment as to how to address one subset of documents in the context of a mammoth document collection effort, and it explained that methodology to

---

arising under other provisions of Rule 37, that is a distinction without a difference on this point. *See, e.g., Long*, 561 F. Supp. 2d at 91 (evaluating the timeliness of a Rule 37(c) motion and citing to decisions on Rule 37(a), (b), and (d) to support the uncontroversial contention that "unreasonable delay may render such [sanction] motion untimely"). Indeed, under Plaintiffs' reasoning, their citation to *Goodman* would be inapplicable, since that court ruled on a spoliation sanction under its inherent authority "rather than from any sanction prescribed by the Federal Rules of Civil procedure." 632 F. Supp. 2d at 506.

4

Plaintiffs. Particularly in light of those conceded disclosures, there cannot possibly be a finding of the "serious and specific sort of culpability" demanded under Rule 37(e)(2) requiring "intentional, bad-faith misconduct." *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018).

In short, Plaintiffs' concession in their reply briefing is fatal to their motions for multiple reasons. It confirms that they should be barred as a procedural matter and it undermines the very core of their asserted basis for seeking sanctions.

## II.   Plaintiffs' Selective Quotation of Chats from the *Play* Litigation Does Not Support Their Arguments.

Plaintiffs cite and quote portions of chat messages from a recent production in the *Play* litigation, contending that those messages show that "some of the destroyed chats were highly relevant to the issues in this case." DOJ Reply at 2-3. Nowhere, however, do Plaintiffs explain how any of those chats is relevant to the issues in this litigation, and Plaintiffs' reliance on these messages ignores that the majority do not even involve custodians in this litigation.

Unable to dispute the extraordinarily low responsiveness rate of chats collected for this litigation (approximately one in every thousand), and the fact that no produced chat has been used in any meaningful way in the case, Opp. at 2, Plaintiffs speculate that "preserved chats were less relevant than those deleted." DOJ Reply at 14, n.10. Plaintiffs offer no basis for such speculation. Plaintiffs do not even attempt to identify material, unique information that they believe could have been contained in unpreserved chats. They instead speculate that "'history off' chats should have been a fruitful source of unguarded, candid conversations among Google employees that could bear on credibility, motive, bias, as well as a host of substantive issues." DOJ Reply at 19. Again, this is pure speculation—Plaintiffs offer not a single shred of evidence that a chat would somehow provide new unique information about Google's long-standing contracts with third parties or the design of its publicly accessible search results page.

Of the 16 chat messages cited by Plaintiffs in their reply briefing, only six involve custodians in these cases as participants.[3] And of those six messages, none address any matter of significance to this litigation.[4] Plaintiffs point, for example, to a chat involving Google CEO Sundar Pichai. That chat message is without relevance to this litigation. Mr. Pichai asks Emily Singer, a communications and public policy executive who is not a custodian, to send him "the link" (*i.e.*, a link to a live document) for a "leader's circle" public talk regarding Google Cloud he was scheduled to deliver; he then asks her to edit a portion of the document, which was not produced in this litigation because it is not responsive to any of Plaintiffs' discovery requests. DOJ Ex. 57; Co. Ex. B. Plaintiffs seize on Mr. Pichai's request to "change the setting of this group to history off," but there is no indication that the message string has any relevance to this (or any other) litigation.

The remaining chats involving custodians from the present litigation (DOJ Exs. 56, 62, 63, 67, and 69) likewise shed no substantive light on issues being litigated here, and Plaintiffs do not argue otherwise. Nor do they support the claim that any custodian engaged in history-off chats in an effort to avoid discovery. Plaintiffs point to DOJ Exhibits 56 and 63, but both of those chats reference caution surrounding what information is transmitted by *email—not history-on chats—* on issues involving current litigation, a sensible concern for a host of reasons. Specifically, in DOJ Ex. 56, the chat participants reference that they are waiting on input from (in-house) counsel on what they are able to share more broadly, noting that "the DOJ case is making the content very

---

[3] Plaintiffs obfuscate this point in their briefing, highlighting the titles of selected chat participants but failing to note that they are not custodians in these cases. *See, e.g.*, DOJ Reply at 3 (describing Ex. 55 as sent by "the head of Platforms & Ecosystems Strategy for Android" but failing to note that the individual is not a document custodian here).

[4] Nor do the messages from individuals who are not custodians in this litigation involve matters of significance to this litigation.

sensitive to share via email these days"; and in DOJ Ex. 63, the chat participants discuss setting up a number of different calls and note that with respect to one call, given that it involves a "litigation issue" (unrelated to the present cases), it should not be discussed by email and distribution should be limited "so that you do not get found in discovery" and "called to courts by mistake." Nothing in these chats reflects the intentional use of history-off chats to shield otherwise discoverable material from production in these cases.

Ultimately, the cited chat messages only underscore just how immaterial chats are to the issues in this case. And it bears emphasis that any sanctions ruling must be based on the facts and circumstances of the specific case at hand. *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, 2019 WL 5694256, at *12 (E.D.N.Y. July 22, 2019), report and recommendation adopted, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020) (denying sanctions even though plaintiff's conduct was "far from the model preservation of ESI," because defendants failed to specify how missing evidence would help in particular case) (cited in DOJ Reply at 16). Indeed, principles of Due Process bar discovery sanctions that are not specifically calibrated to what is at issue in the litigation. *See Serra Chevrolet, Inc. v. Gen. Motors Corp*., 446 F.3d 1137, 1152 (11th Cir. 2006) (finding that discovery sanction violated Due Process where it was not "specifically related to the particular 'claim' which was at issue" in discovery); *Gen. Ins. Co. of Am. v. E. Consol. Utils., Inc*., 126 F.3d 215, 220 (3d Cir. 1997) (explaining that, under Due Process, sanctions must be just and specifically related to the particular claim at issue in discovery).

### III. The Play Litigation Ruling Underscores the Lack of Prejudice and Is Inapplicable.

Finally, Google respectfully disagrees with the conclusions reached in the *Play* litigation sanctions ruling. Moreover, the decision is based on a different factual record and did not address any of the cases raised in Google's Opposition here, including from this District, that this Court

should consider in connection with this motion. And the *Play* opinion does not demonstrate that Plaintiffs here have been prejudiced.

Unlike here, the *Play* plaintiffs did *not* concede long-standing knowledge of Google's chats preservation methodology. Indeed, Judge Donato specifically referenced concerns about what he found to be Google's failure to "have advised plaintiffs about its preservation approach early in the litigation." Op. at 17 (ECF No. 573-1). For the reasons addressed above, this presents a different factual record from the one before this Court, where Plaintiffs were on notice of exactly the preservation methodology about which they now complain.

Further, the *Play* ruling underscores the lack of prejudice to Plaintiffs here. While the ruling references a finding of prejudice, it does not articulate how the plaintiffs there actually were prejudiced, let alone in any material way. *See* Op. at 18. Stressing "[p]roportionality" as the "governing concept," it rejected a terminal sanction out of hand. *Id*. at 19. And even after the production of thousands of chats and an evidentiary hearing, the court explained that before making any final ruling on sanctions "the Court would like to see the state of play of the evidence at the end of fact discovery. At that time, plaintiffs will be better positioned to tell the Court what might have been lost in the Chat communications." *Id*. Discovery, of course, has long concluded here—not to mention summary judgment briefing. If ever Plaintiffs can articulate prejudice, they are "positioned" to do so now. But still Plaintiffs here do not and cannot demonstrate that any purportedly missing chat would have changed the factual record in these cases or substantively altered the manner in which Plaintiffs litigated these cases.

## CONCLUSION

For these reasons and those explained in Google's Opposition, Plaintiffs' motions should be denied.

8

Dated: April 5, 2023                    Respectfully submitted,

                                                          WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

9