**EXHIBIT A**

**Excerpt from January 12, 2023 Hearing Transcript in**

*Epic Games, Inc. v. Google, LLC*, No. 3:20-cv-5671 (N.D. Cal), *as consolidated*, *In Re: Google Play Store Antitrust Litig.*, No. 3:21-md-2981 (N.D. Cal)

```
                                          Volume 1

                                          Pages 1 - 144

            UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE GOOGLE PLAY STORE              )
ANTITRUST LITIGATION                 )   NO. 21-md-02981-JD
_____)
                                     )
                                     )
THIS DOCUMENT RELATES TO:            )
                                     )
Epic Games, Inc. vs. Google LLC, et al.,  )
Case No. 3:20-cv-05671-JD            )
                                     )
In Re Google Play Consumer Antitrust )
Litigation, Case No. 3:20-cv-05761-JD)
                                     )
State of Utah, et al. v. Google LLC, )
et al., Case No. 3:21-cv-05227-JD    )
                                     )
Match Group, LLC, et al. vs. Google LLC, )
et al., Case No. 3:22-cv-02746-JD    )
                                     )
_____)

                                     San Francisco, California
                                     Thursday, January 12, 2023

                  TRANSCRIPT OF PROCEEDINGS

         IN RE EVIDENTIARY HEARING ON CHAT PRESERVATION

APPEARANCES:

For Plaintiff Epic Games in C 20-05671 JD:
                       CRAVATH SWAINE AND MOORE LLP
                       825 Eighth Avenue
                       New York, New York 10019
                 BY:   LAUREN ANN MOSKOWITZ, ATTORNEY AT LAW
                       GARY A. BORNSTEIN, ATTORNEY AT LAW

         (APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter
```

1  refer back to that information because it's, you know, relevant
2  to some other project that they're working on.
3  BY MR. ROCCA:
4  Q.  Now, Mr. Lopez, so far we've been talking about Google's
5  retention policies in the absence of a legal hold.
6      I'd like to now ask you about retention and preservation
7  policies that come into play when a legal hold is in place.
8      Do you have any role in implementing legal holds for
9  specific matters?
10 A.  No.
11 Q.  Do you have a general understanding of how Google
12 approaches this from a standard practice perspective?
13 A.  Yes.
14 Q.  Is there any general guidance available to Google
15 employees related to the preservation of chats that may be
16 subject to a legal hold?
17 A.  Yes.
18 Q.  Where is that guidance maintained?
19 A.  That's maintained in a FAQs page that accompanies our
20 Chat retention policy.
21 Q.  Please turn to Exhibit 2, DXCH-2 in the binder.
22      Are you with me?
23 A.  Yep.
24 Q.  What is this document?
25 A.  This is the page of the FAQs that I just described.

1  Q.  Is this a true and correct copy of the Chat retention
2  FAQs?
3  A.  Yes.
4  Q.  Is this a document that's maintained in the normal course
5  of business at Google?
6  A.  Yes.
7  Q.  Midway down, Mr. Lopez, there is a question that says,
8  quote (as read):
9       "Under what circumstances should history
10      settings be turned on in Chat?"
11      Do you see that?
12 A.  Yep.
13 Q.  What is the response?
14 A.  Yeah.  We outline two specific scenarios where history
15 should be on.
16      One of them is, if you are on legal hold and there's a
17 topic that comes up in your conversation that's related to that
18 hold, you are expected to turn history on at that point if it's
19 not already on.
20      And then also, if the subject matter of your conversation
21 is of substantive business value, you are expected to also turn
22 history on at that point for longer-term archiving.
23 Q.  And, again, is this FAQ document available internally at
24 Google to all employees who are looking for information on chat
25 retention?

1   **A.**   Yes.  It's a live page.  It's available 24/7.

2   **Q.**   Now let's turn to this particular case.

3        Do you have an understanding of how Google's standard

4   approach for chats was implemented specifically for the

5   employees on legal hold for this case?

6   **A.**   Yes.

7        **MR. ROCCA:**  Your Honor, before moving on to the next

8   series of questions, we would like the Court's guidance on an

9   attorney-client privilege issue.

10       We're prepared to provide testimony from Mr. Lopez on the

11  specific Chat preservation instructions that were included in

12  the litigation hold notice for employees for this specific

13  case.  We think that that testimony may be helpful for

14  the Court because the Court asks about guidelines for chat

15  content as part of this hearing.

16       **THE COURT:**  Just talk to me.  You don't have to -- so

17  what's the issue?  You have a litigation hold that a lawyer

18  wrote, and you're worried about sharing it.  Is that the issue?

19       **MR. ROCCA:**  The issue is, Your Honor, the legal hold

20  notice itself is privileged.  We want to provide testimony to

21  you, if it would be helpful to the Court, about the specific

22  preservation practices for chats.

23       **THE COURT:**  Is it in here?

24       **MR. ROCCA:**  It is not -- the legal hold is not in there,

25  Your Honor.  It's a privileged document.

```
 1         And what we would like is an order or clarification that
 2   by providing the testimony, we are not waiving any privilege.
 3         THE COURT:  That's fine, but let me ask you a question.  I
 4   thought this witness had nothing to do with legal holds.
 5         MR. ROCCA:  He is aware -- that's not what the testimony
 6   was, Your Honor.
 7         THE COURT:  He said:  I have no role in implementing legal
 8   holds.  That was his testimony.
 9         So did he do this one?  I'm just asking.  Did he do this
10   one for some reason?
11         MR. ROCCA:  He did not do this specific one, but he's
12   aware as information governance.
13         THE COURT:  Are we going to hear from somebody who did
14   this one?
15         MR. ROCCA:  We're aware of somebody that -- we have two
16   witnesses who are aware of the specific instructions in this
17   case.  And Mr. Lopez can provide --
18         THE COURT:  You say "aware of," though.  Who actually --
19   who is the point person in the company?  Are we going to hear
20   from that person?
21         MR. ROCCA:  Your Honor, Google has a large legal
22   department.  There's a large team working on these cases,
23   inside counsel and outside counsel.
24         Mr. Lopez is familiar with the legal hold notice in this
25   case and can provide the general -- both the general guidance
```

1  that's applicable across matters but, also, how it was
2  implemented in this case.
3       THE COURT:  Well, okay.  I'm just asking.  Is there anyone
4  who actually worked on this, that had the job inside of Google
5  to work with the legal team to disseminate all this?
6       MR. ROCCA:  I do not believe that Mr. Lopez -- Mr. Lopez
7  did not work as a litigator on this case.
8       THE COURT:  All right.  When you say he's "aware of," if
9  all he did was just read the policy before coming in -- is that
10 what you're saying?  That's all he knows?  He just read it
11 before he came in?  He didn't actually do anything in the
12 company?
13      MR. ROCCA:  Mr. Lopez is aware of the general policy that
14 applies for legal matters, and we're prepared to provide that
15 information to the Court, provided it's not a waiver of
16 privilege.
17      THE COURT:  Mr. Rocca, just one building block at a time.
18 How is Mr. Lopez aware of this?  Did he just read the policy
19 before he came in to testify?  Is that how he's aware of it?
20      MR. ROCCA:  May I ask the witness, Your Honor?
21      THE COURT:  Oh, sure.  Yeah.
22 How do you know about this policy?  I'll ask you.
23      THE WITNESS:  Yeah.  So this specific policy, my team owns
24 and manages.
25      THE COURT:  Let me just step back.  You just heard our

```
 1   discussion.  Look, this is a bench trial.  We don't have to
 2   worry -- or a bench hearing.
 3          How do you know anything about the hold for this case?
 4          THE WITNESS:  It's -- yeah.  I've read what the notice
 5   says that's provided to custodians.
 6          THE COURT:  When did you read that?
 7          THE WITNESS:  I don't know the exact date, but it was at
 8   some point -- at some point after this matter commenced.
 9          THE COURT:  All right.  So in preparation -- basically, in
10   preparation for this hearing; is that right?
11          THE WITNESS:  Not specifically in perception.  Just as my
12   general duties of being aware of what we're doing internally.
13          THE COURT:  When was that?  Last month?  Six months ago?
14          THE WITNESS:  Oh, I would say a year ago, at least.
15          THE COURT:  A year ago.  Okay.  So who in the company
16   actually rolled this out to people?  Who did the groundwork?
17          THE WITNESS:  That's a great question.  I wasn't involved
18   in that, and so I couldn't answer.
19          THE COURT:  All right.  Well, we can do what we can do.
20          Go ahead.
21          MS. MOSKOWITZ:  Your Honor, can I lodge an objection to
22   this whole line of questioning, both for the foundational
23   aspect that Your Honor raised, but also based on the fact that
24   Google is expressly asking to use privilege as both a sword and
25   a shield.
```

```
 1        We were expressly refused production of this litigation
 2   hold.  And we repeatedly asked and Google said "no."  And now
 3   they want to use that and Mr. Lopez's reading of that in court
 4   when we've never had the benefit of that.  So that's just
 5   classic sword/shield, and they shouldn't be able to do it.
 6        THE COURT:  Well, you had not provided it to your
 7   colleagues?
 8        MR. ROCCA:  Your Honor, it's attorney-client privileged.
 9   We offered multiple times, time and time again, to a non-waiver
10   agreement where we would provide it on the condition that they
11   wouldn't argue "Oh, you've waived privilege."  They declined
12   that.  They also said repeatedly that it's irrelevant to any of
13   these issues.
14        So now they're saying that they're objecting --
15        THE COURT:  Let me -- I'm sorry.  Let me just jump in.
16        Did you actually give it to them or not?
17        MR. ROCCA:  No.  They do not have the privileged legal
18   hold notice.  We offered it to them repeatedly.
19        THE COURT:  What is the waiver concern?  What are you
20   worried about for waiver?
21        MR. ROCCA:  Your Honor, we're worried about respecting the
22   privilege in a situation where if we reveal information in a
23   hearing, that the plaintiffs will assert that we've opened the
24   door in ways that we don't understand before we were providing
25   the testimony.  So we just want a very simple clar- --
```

1    **THE COURT:**  I understand that.  But what subject-matter
2 waiver are you worried about?  It's clearly not going to be all
3 the legal work you're doing.
4    I'm having trouble understanding, even if there were a
5 waiver -- and remember, I'm going to decide that; so you don't
6 have that much to worry about -- what is the waiver?  I mean,
7 it's just a document retention policy; right?
8    **MR. ROCCA:**  It's a litigation hold notice that uniformly
9 across the case law is privileged.
10    Mr. Lopez is prepared to testify about the chat retention
11 instruction, what custodians were expected to do.  And we don't
12 want to waive all topics in the legal hold, the lawyers'
13 attorney work product in evaluating the case and how they
14 describe the case to the custodians.  We want to provide
15 the Court, if the Court would find it helpful, the litigation
16 hold language with respect to chats.
17    **THE COURT:**  Well, of course I have to see it.  This whole
18 thing is about did you preserve this properly or not.
19    Why didn't you work this out before you came in?
20    **MS. MOSKOWITZ:**  Your Honor, we --
21    **MR. ROCCA:**  We tried to.
22    **THE COURT:**  Why are we doing this on the fly?
23    **MS. MOSKOWITZ:**  Your Honor, we assumed, when they refused
24 to produce it to us, that they would not be using it.
25    **THE COURT:**  I'm sorry.  I have to jump in.

```
 1          Your colleague here says they --
 2      MS. MOSKOWITZ:  That's wrong.
 3      THE COURT:  -- offered it to you on a silver platter and
 4  you said "no."
 5      MS. MOSKOWITZ:  I'm sorry, Your Honor.  That's not right.
 6      So what happened was, we asked for it.
 7      They said, only if you agree that they are not waiving the
 8  privilege, which, of course, we will not agree because you
 9  cannot use privileged documents as both a sword and a shield.
10      They also insisted that the plaintiffs give our litigation
11  hold, even though that's not at issue at all.
12      We never said their litigation hold was irrelevant.  We
13  asked for it, and we tried to get discovery on it for purposes
14  of this hearing, and they said "no."
15      We assumed it wasn't going to come up.  We asked them
16  yesterday to confirm it after Mr. Lopez's summary made it sound
17  like they were going to do it.  They wouldn't confirm that they
18  weren't, obviously, because they intended to all along.
19      And we did file that submission.  Understanding that
20  Your Honor didn't want to hear from the parties on any filings,
21  we did try to raise it as soon as we realized it was an issue.
22      THE COURT:  That actually is not the issue.  What I don't
23  like -- and no judge likes -- is getting a raft of motions
24  functionally less than 12 business hours before a hearing.
25  That's all I'm saying.  Okay?  It's not that I don't want to
```

1   hear from you.  I don't want to hear from you when I have ten
2   minutes to prepare, figuratively speaking.  That's the issue.
3       MS. MOSKOWITZ:  Understood.
4       THE COURT:  All right.  Look, why don't you ask your
5   questions without showing him the hold.  You should be able to
6   ask him questions about the hold without showing him the hold.
7       MR. ROCCA:  And just --
8       MS. MOSKOWITZ:  And, Your Honor, we will take the position
9   that that just -- you'll decide it, but that that is a waiver
10  of all of the instructions that they provided.
11      THE COURT:  Not a waiver.  You can ask the questions.
12  What happened?  What did the company do?  What were people
13  told?  That's fine.  Okay?  But you don't have to show him the
14  thing you're worried about.
15      MR. ROCCA:  Your Honor, counsel just said they're going to
16  take the position that it's a waiver of all privilege.  She
17  admitted exactly the issue.
18      THE COURT:  Can I share something with you?  It's my
19  position that counts.
20      MR. ROCCA:  And so --
21      THE COURT:  And I'm taking the position that you can ask
22  the questions and you're not going to face a waiver because I
23  will decide the waiver issue.  Okay?
24      MR. ROCCA:  Thank you, Your Honor.
25      THE COURT:  I've given you the biggest blanket I can give

1  you to wrap yourself in.  So just go ahead and do it.
2  All right?
3      MR. ROCCA:  Very well, Your Honor.
4  Q.  Mr. Lopez, in this litigation specifically, the
5  Google Play cases, what specific actions did Google instruct
6  custodians to take with respect to Google Chats?
7      MS. MOSKOWITZ:  Your Honor, I will object again, just on
8  foundation, for him being able to talk about the specific steps
9  that anyone took.
10     THE COURT:  Let's see what he says and we'll go from
11 there.
12     Go ahead.
13     THE WITNESS:  Yeah.  So in the legal hold notice, there
14 are two specific instructions related to chats.
15     One is that folks on legal hold are asked not to use the
16 product to discuss any topics that are related to their legal
17 hold.  And also, if they do find themselves in a conversation
18 that strays into a topic related to the legal hold, they're
19 asked to turn history on at that point to make sure that those
20 messages are properly preserved.
21 BY MR. ROCCA:
22 Q.  Mr. Lopez, does Google have the technical ability to set
23 "History on" as the default for all employees on legal hold?
24 A.  Yes.
25 Q.  Why don't you do that?