**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| State of Colorado, *et al.*,<br><br>                                        Plaintiffs,<br><br>    v.<br><br>Google LLC,<br><br>                                        Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>██████████████ |

**GOOGLE'S RESPONSE TO PLAINTIFF STATES' SUPPLEMENTAL**
**RESPONSE TO CERTAIN QUESTIONS OF THE COURT AT ORAL ARGUMENT**

Plaintiff States' ("Plaintiffs") "Supplemental Response" further confirms that Google's motion for summary judgment should be granted with regards to Plaintiffs' Section 2 claim as it relates to conduct purportedly involving Specialized Vertical Providers ("SVPs")—namely Google's design of its search engine results page ("SERP") for certain of its specialized search units and Google's data sharing agreements with SVPs.  Plaintiffs' stated explanation for their post-hearing submission is that two specific questions at the April 13 hearing were never specifically raised during the summary judgment briefing.  The Court's questions were directed at the issue of harm to competition in the alleged relevant markets—an issue at the heart of Google's motion for summary judgment.

As explained below, Plaintiffs' "supplemental response," like Plaintiffs' counsel's non-responses to the Court's questions at the summary judgment hearing, provides no evidence that Google's product design decisions and data agreements with SVPs have impacted any SVP's ability to partner with a general search engine, much less that they resulted in harm to competition between a general search engine and Google in any proffered relevant market.

I.     **PLAINTIFFS' NEWLY PROFFERED "EVIDENCE" DOES NOT PROVE HARM TO COMPETITION IN THE ALLEGED RELEVANT MARKETS.**

At the April 13 hearing, the Court engaged Plaintiffs' counsel in an extended colloquy regarding Plaintiffs' purported evidence that Google's conduct regarding its specialized search unit designs harmed *any* SVP in a manner that translated into harm to any partnership with a general search engine—a necessary first step in Plaintiffs' convoluted theory of harm to competition.  Indeed, the Court repeatedly questioned why Google would even have an incentive to harm SVPs, and thus their ability to advertise on Google, given that SVPs are significant advertisers on Google.  April 13, 2023 Hearing Transcript ("Tr.") at 183, 188.  Plaintiffs' counsel tellingly offered no coherent response to these questions.

The Court similarly pressed Plaintiffs' counsel for evidence that Google's data sharing agreements harmed SVPs' ability to partner with general search engines.  *Id.* at 190-98.  Again, Plaintiffs' counsel had no such evidence.  *Id.* at 193-194, 198-199.  In their summary judgment opposition and at the hearing, Plaintiffs have failed to identify a single instance where (a) a general search engine wanted to enter into a partnership with an SVP but was unable to do so based on any data sharing agreements with Google, or (b) a general search engine was unable to acquire any category of data because SVPs who had that data were somehow weakened by Google's conduct or were prevented from sharing data by Google's agreement with the SVP.  Indeed, as the Court noted, Microsoft has entered into many SVP partnerships over the years.  *Id.* at 194.

Plaintiffs' supplemental response focuses on three SVPs.  None of the evidence referenced by Plaintiffs addresses the Court's questions about how any impact on SVPs evidences harm to competition in the alleged relevant markets.

**Angi:**   Plaintiffs  reference  ███████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████.  Google's LSA unit is shown in response to queries for local service providers such as "house cleaners Anchorage" and displays information about actual service providers—not links to aggregators or SVPs.  *See* Slide 30 from Google's Summary Judgment Presentation.  SVPs like Angi can participate in Google's LSA unit through the LSA Partner Program, which allows an SVP to purchase LSA ads on behalf of its service providers.  If a service provider from a participating SVP is responsive to a user query, an ad for the service provider may be shown in the LSA unit, along with attribution to the SVP that placed the ad.  *Id.* (showing advertisements purchased by SVP Thumbtack).[1]  If the user clicks on the advertisement, rather than sending the user to an SVP webpage, Google sends the user to a details page for the service provider that provides more information and booking options, as Google determined that benefitted users.  *Id.* at Slide 31 (exemplar details page).

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[1] ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████



████████████████████████████████████████

████████████████████████████████████████

█████████████████████████

**Yelp:**  In 2017, Yelp launched an extension on Google's Chrome browser that, if the user implemented it, would result in a different presentation of search results for local search queries than would be generated using Google's design of its Local Search unit.  Yelp subsequently asked Google to redesign its Local Search unit algorithms in a manner allegedly consistent with the Chrome extension promoted by Yelp, but Google disagreed that it was a superior user experience and did not implement Yelp's preferred product redesign.  This episode says nothing about any impact that Google's Local Search unit has had on Yelp, especially since Yelp can appear in ads at the top of the SERP and in organic search results on the SERP as well.  *See* Slide 24 (depicting ad for SVP DoorDash at top of SERP and organic search results for SVPs Grubhub and Uber Eats below the Local Search unit).  Nor does it provide evidence of any inability to partner with general search engines, a required step in Plaintiff's multi-step theory.  In any event, ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

████  Plaintiffs again cite to ████  generalized complaints about not being paid by Google for the data that ██████ provides in connection with ████████████████████ ██████████████████  Pls.' Br. 2 (citing Pls.' SMF ¶ 184).  This complaint has nothing to do with Google's design of its specialized units, nor does it relate to ████████ ability

or incentive to partner with other general search engines (it has provided data to Microsoft for many years, just as it has provided data to Google).  *See* Google's Reply In Support of Summary Judgment (ECF No. 523) at 22-23.  Indeed, the Court observed at the hearing that this was unrelated to Plaintiffs' SVP harm to competition theory.  Tr. at 198-200.

*        *        *        *

As the *Microsoft* court made clear, Plaintiffs must provide evidence of substantial anticompetitive effects *in the relevant markets* in order to make a *prima facie* Section 2 case.  *United States v. Microsoft Corp.*, 253 F.3d 34, 71 (D.C. Cir. 2001) (en banc) (per curiam) (finding no liability regarding agreements with ICPs because "plaintiffs failed to demonstrate" a "substantial effect upon competition").  In *Microsoft*, the court found substantial evidence that certain Microsoft conduct intentionally and significantly reduced the distribution of Netscape Navigator and Sun's Java—products that Microsoft understood threatened its monopoly position in the relevant market for Intel-compatible PC operating systems.  *See e.g.*, *id.* at 62 (OEM agreement restrictions), 65-66 (integration of IE and Windows), 70-71 (IAP agreement restrictions); 75 (ISV agreement restrictions); 76-77 (Java deception).  By contrast, Plaintiffs' SVP evidence does not demonstrate that any SVP's ability to partner with a rival search engine was diminished (let alone substantially so), or that any partnership was in fact blocked from substantially enhancing competition in the alleged general search engine and search ads markets.  For these reasons, Google's motion for summary judgment should be granted on Plaintiffs' claim as it pertains to the alleged SVP-related conduct.

Dated: April 28, 2023

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

6