**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF BENEFITS OUTSIDE RELEVANT MARKETS**

At trial, Google will show that the agreements challenged by Plaintiffs in this case promote, rather than harm, competition. Without identifying any specific exhibits or testimony it seeks to exclude, Plaintiffs' motion (ECF No. 622) seeks to prevent Google from showing the Court evidence of the agreements' procompetitive benefits in markets other than those Plaintiffs advance.

Plaintiffs' motion should be denied for three independent reasons. *First*, Plaintiffs' motion is not a proper motion *in limine* because the motion fails to identify *any* specific exhibits or testimony that Plaintiffs seek to exclude, and instead seeks to argue a legal issue on the merits of the case, better resolved in post-trial briefing with the benefit of actual trial evidence. *Second*, Plaintiffs' concession that out-of-market procompetitive benefits that also promote in-market competition are admissible resolves this motion. At trial, Google will show how procompetitive benefits related to browsers, wireless services, and smartphones created by the challenged agreements are output enhancing and benefit competition in Plaintiffs' alleged search and search advertising markets. *Third*, Plaintiffs are wrong on the law that the Court cannot consider procompetitive conduct that only benefits markets other than the markets Plaintiffs allege.

## ARGUMENT

### I. Plaintiffs' Motion Is Not a Proper Motion *in Limine*, Particularly in a Bench Trial

Plaintiffs' motion is an improper motion *in limine* because it lacks specificity and seeks to prematurely resolve a substantive legal dispute in advance of trial. As to specificity, Plaintiffs do not point to any specific evidence they seek to exclude. Parties proposing motions *in limine* must "direct the district court to specific evidence in the record that would . . . disfavor the introduction of [] particular categories of evidence." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010). Plaintiffs have not done so. They identify no specific exhibits, deposition designations, or other testimony that should be excluded. Instead, Plaintiffs seek a broad order

that "evidence that Google's conduct results in out-of-market benefits is inadmissible." Pls.' Mot. at 6. The Court should deny Plaintiffs' request because it "lacks the necessary specificity with respect to the evidence to be excluded." *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

Plaintiffs' motion is also infirm because it seeks to resolve a substantive legal issue regarding the merits of the case. *See City of South Miami v. DeSantis*, 2020 WL 7074644, at *5 (S.D. Fla. Dec. 3, 2020) (motions *in limine* are "not an appropriate mechanism for testing the law, narrowing the issues to be tried, or attempting to resolve substantive issues"); *NRDC v. Rodgers*, 2005 WL 1388671, at *1 n.2 (E.D. Cal. June 9, 2005) ("Motions in limine are not to be used as a sweeping means of testing issues of law." (cleaned up)); *cf. Whiteru v. WMATA*, 2022 WL 1618735, at *1 (D.D.C. May 23, 2022) ("Motions *in limine* are a means for arguing why evidence should or should not, for evidentiary reasons, be introduced at trial." (internal quotation marks omitted)). Here, the parties disagree on whether antitrust law permits procompetitive effects in one market to offset anticompetitive effects in another market, *infra* Part III. While resolving this legal issue is certainly not necessary now in light of the conceded relevance of procompetitive benefits in-market from conduct that also produces out-of-market benefits, *infra* Part II, to the extent the Court believes resolving this issue is necessary to its ultimate decision, the proper time to address it is following post-trial briefing on the merits.

Plaintiffs' motion is especially misplaced in a bench trial. Plaintiffs' only argument is that evidence of out-of-market procompetitive benefits should be excluded because it is "irrelevant." But "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994). And, as explained below, Plaintiffs concede

that evidence of out-of-market procompetitive benefits may be relevant if offered for a particular purpose. *Infra* Part II. Courts routinely deny motions *in limine* that are "better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Herbert v. Architect of Capitol*, 920 F. Supp. 2d 33, 38 (D.D.C. 2013) (internal quotation marks omitted). That consideration is particularly weighty in a bench trial, where there is no concern that a jury will be prejudiced by, for example, expert testimony that the Court subsequently rules inadmissible. Therefore, the Court can and should wait for trial to understand the purposes for which Google will offer its evidence, and which (if any) specific evidence Plaintiffs argue is "irrelevant." Given that Plaintiffs seek to exclude unidentified evidence relevant to a disputed legal issue, the Court should deny Plaintiffs' motion *in limine* and reserve judgment on the legal issue until after trial should such resolution be necessary.

## II. Plaintiffs' Concession That Out-of-Market Procompetitive Benefits That Also Promote In-Market Competition Are Admissible Resolves This Motion in Google's Favor

Plaintiffs concede that the Court can "potentially" consider evidence of out-of-market procompetitive benefits "[t]o the extent it provably benefits competition in a relevant market." Pls.' Mot. at 5. That concession resolves this motion, because Google intends to show exactly that. Specifically, at trial, Google will show how the challenged agreements' procompetitive benefits related to browsers, wireless services, and smartphones also are output enhancing and benefit competition *in Plaintiffs' alleged search and search advertising markets*.[1] Such in-market procompetitive benefits are clearly relevant to the legal issues in this

[1] Google submits that the Court can consider out-of-market procompetitive benefits under the Sherman Act when they flow from the challenged conduct irrespective of benefits in Plaintiffs' alleged markets. The Court need not resolve that issue now given the relevance of the evidence Google plans to present relating to Plaintiffs' alleged markets.

case, and are not excludable merely because the same conduct also produces benefits in markets other than those Plaintiffs allege.

As the Ninth Circuit recently recognized in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), proffered procompetitive benefits to competition in some other market are properly considered in-market when they also "relate to" benefits to competition in the market where anticompetitive harm supposedly occurred. There, Epic alleged that Apple's conduct had an anticompetitive "impact [on] the market for mobile-game transactions." *Id.* at 989. Epic argued that the proposed procompetitive benefits proffered by Apple occurred not in the alleged relevant market, but instead in the "market for smartphone operating systems (or the market for smartphones)." *Id.* The court determined that it did not need to decide whether out-of-market procompetitive benefits could be considered by themselves, because the out-of-market procompetitive benefits "***relate[d] to***" the app-transactions market, through increasing both "the total number of iOS device users" and "App Store output." *Id.* at 990 (first emphasis added). Specifically, the Ninth Circuit recognized that the challenged security and privacy-related restrictions helped Apple successfully compete for smartphone customers (which increased App Store output by increasing the total number of iOS users) and encouraged iOS users and developers to transact more frequently, "increasing the per-user average number of app transactions." *Id.* Put simply, the same conduct created procompetitive benefits in multiple markets, including the market Plaintiffs asserted.

Similarly here, Google will present evidence that the conduct at issue created cognizable procompetitive benefits in the purported search markets Plaintiffs define. *See generally* Surrebuttal Report of Professor Kevin M. Murphy (Sept. 26, 2022) ¶ 308 n.460 (explaining that identified efficiencies "relate to competition in search").

*Internet Browsers*. Google's agreements with browser developers expand overall search output and enhance competition in Plaintiffs' alleged search markets. Google's revenue share payments for default promotion provide important revenues for browser developers, resulting in increased browser innovation and quality, which enhances consumer use and output of search on these browsers. Expert Report of Professor Kevin M. Murphy (Corrected June 30, 2022) ("Murphy Report") ¶ 70. Setting Google as the default search engine on a browser also has improved users' browser experience, which in turn also increases search usage and output. *Id.* ¶ 133. Moreover, revenue share payments to browser developers enhance competition in Plaintiffs' alleged search markets by increasing the number of browsers which serve as search access points for users. These revenue share payments have enabled independent browsers to compete with Microsoft's Internet Explorer (now Edge), which has historically been preinstalled (with Bing as the default search engine) on almost all Windows PCs in the United States. *Id.* ¶¶ 39, 175, 178, 183. Providing more and better browsing options on Windows devices has grown search engine usage on that platform, thereby expanding search output.

*Smartphones*. Google's Android agreements, including MADAs and RSAs, help OEMs provide high-quality, lower-priced Android smartphones to compete with Apple's mobile devices. These procompetitive benefits to smartphone competition also create procompetitive benefits (enhanced output and competition) in Plaintiffs' alleged search and search ads markets. Google's Android agreements greatly reduce the costs of developing mobile devices, resulting in lower priced mobile devices, and leading to more consumers having the ability to purchase smartphones and use search on mobile devices. Murphy Report ¶¶ 35, 130, 345; *see Epic* 67 F.4th at 990 (describing procompetitive "ways of increasing App Store output," including "increasing the total number of iOS device users"). The Android agreements also

incentivize OEMs developing higher-quality mobile devices with enhanced functionality, which has been shown to increase the use of search. Murphy Report ¶¶ 48, 70, 131-32. And the agreements make Google Search easier to access (*i.e.*, by default in a browser, through a search widget on the home screen, etc.), resulting in more searches. *Id.* ¶ 133. Moreover, Google's agreements with OEMs enhance competition in the search market, by ensuring that Apple is not the only avenue to distribute search services on mobile in the U.S. *Id.* ¶ 354-55, 363.

*Wireless Services (Carriers)*. Like with OEMs, Google's payments to carriers through RSAs to promote Google Search on Android phones incentivize carriers to provide lower prices for devices, provide better device upgrades and security features, and promote Android over iOS, each of which promotes search competition and search usage. *Id.* ¶¶ 359-60, 364, 492, 531-34.

## III. The Court Can Consider Procompetitive Benefits in Markets Other than Plaintiffs' Alleged Markets

Plaintiffs are wrong that the Court cannot consider procompetitive benefits in markets other than the markets Plaintiffs allege. Both the Supreme Court and the D.C. Circuit have considered such evidence in the past, and Plaintiffs' case law fails to establish that the evidence cannot be considered.

"[T]he Supreme Court has considered cross-market rationales in Rule of Reason and monopolization cases." *Epic*, 67 F.4th at 989 (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482-84 (1992), and *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 104-08, 115-17 (1984)). In *Eastman Kodak*, the defendant offered a procompetitive justification in the photocopier market for alleged anticompetitive conduct in the Kodak-brand photocopier parts and service markets. 504 U.S. at 483. The Supreme Court held that factual disputes remained on whether the procompetitive justification was valid and not pretextual, necessitating a trial. *Id.* at 484. Contrary to Plaintiffs' position here, the Court did not hold that an out-of-

market procompetitive justification was out-of-bounds. In *NCAA v. Board of Regents*, the defendant offered a procompetitive justification in the market for live college football tickets to justify alleged anticompetitive conduct in the market for televised college football games. 468 U.S. at 115. The Supreme Court agreed with the district court that the procompetitive justification was invalid, but not on grounds that an out-of-market procompetitive justification cannot be considered; rather the Court held that "there was no evidence to support" the procompetitive justification "in today's market" and, regardless, the particular justification failed as a legal matter because it "limit[ed] output" and thus was not procompetitive. *Id.* at 116-17. Although the alleged out-of-market procompetitive benefits were rejected on other grounds in each of these cases, the Supreme Court has never said that these benefits could not be considered. As Plaintiffs recognize (Pls.' Mot. at 5 n.2), the Supreme Court "express[ed] no view[]" on the issue as recently as 2021. *NCAA v. Alston*, 594 U.S. ___, 141 S. Ct. 2141, 2155 (2021).

Moreover, the D.C. Circuit and other courts have considered out-of-market procompetitive benefits in Sherman Act cases, such as those involving tying. In *United States v. Microsoft Corp.*, 253 F.3d 34, 93-96 (D.C. Cir. 2001) (en banc) (per curiam), the court directed the district court on remand to consider whether the procompetitive benefit in one market (operating systems) could justify Microsoft's restrictions in the tied market (browsers). *Id.* at 67, 96. The court said that the procompetitive technical benefit of Windows 98's "override of a consumer's choice of default web browser"—benefits found in the distinct "operating system market"—could be balanced against the "the anticompetitive effect" of such a design "in the browser market." *Id.* at 96. Other circuits are in accord. *See, e.g.*, *Grappone, Inc. v. Subaru of New England, Inc.*, 858 F.2d 792, 793-94 (1st Cir. 1988) (Breyer, J.) (anticompetitive effects in

replacement parts market did not outweigh procompetitive business justifications in market promoting sales of cars). While Plaintiffs have ostensibly disclaimed an explicit tying claim here, their theory of anticompetitive conduct with respect to the Android agreements depends on Google possessing a "must-have" product (Google Play) in another product market. Complaint ¶ 62, ECF No. 1.[2] And *Microsoft*'s logic applies outside the tying context where, as here, the same conduct that is alleged to be anticompetitive in the search market creates significant procompetitive benefits in markets for internet browsers, smartphones, and wireless services, among others.

Plaintiffs' case law does not establish that out-of-market procompetitive benefits cannot be considered. Contrary to Plaintiffs' contention (Pls.' Mot. at 2), the Supreme Court has not ruled that out-of-market procompetitive benefits are inadmissible in Sherman Act cases. As the Ninth Circuit recently put it: "The Supreme Court's precedent on this issue is not clear." *Epic*, 67 F.4th at 989. Plaintiffs cite *United States v. Philadelphia National Bank*, 374 U.S. 321, 370 (1963), Pls.' Mot. at 2, but that was not a monopolization case under the Sherman Act; it was a merger case under Clayton Act § 7. 374 U.S. at 323-24. Plaintiffs argue that *Philadelphia National Bank* applies equally in the Sherman Act § 2 context because the statute's text shares some common elements with Clayton Act § 7. Pls.' Mot. at 3. However, Clayton Act § 7 "is much broader than the Sherman Act." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 491 (5th Cir. 1984); *see also Fraser v. Major League Soccer, LLC*, 284 F.3d 47 (1st

---

[2] Notably, Plaintiff's expert Dr. Whinston at times describes the MADA as a "tie" involving the "Play store." Rebuttal Expert Report of Michael D. Whinston, PhD (Corrected Oct. 28, 2022) ¶ 42. Accordingly, while Plaintiffs have chosen to characterize the MADA as *de facto* exclusive dealing, justifications applicable to tie-ins are relevant here. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 44-45 (1984) (O'Connor, J., concurring in the judgment) (analyzing an alleged tie-in not found *per se* illegal under exclusive dealing rule of reason principles).

Cir. 2002) (noting that Clayton Act § 7 "requires much less" to prove a claim than Sherman Act § 2 requires). As one scholar has noted, "*Philadelphia National Bank* did not create a rule applicable in Sherman Act cases, and no subsequent merger decision by the [Supreme] Court has been cited as authority" for a rule against consideration of cross-market procompetitive benefits. Gregory J. Werden, *Cross-Market Balancing of Competitive Effects: What Is the Law, and What Should It Be?*, 43 J. Corp. L. 119, 126 (2017).

Plaintiffs also cite *United States v. Topco Associates*, 405 U.S. 596 (1972), for the proposition that weighing anticompetitive conduct in one part of the economy against procompetitive benefits of such conduct in another portion "is properly left for Congress," not courts. Pls.' Mot. at 2. However, as the Ninth Circuit has explained, the statement Plaintiffs cite is pure "[d]icta." *Epic*, 67 F.4th at 989. *Topco* involved a *per se* violation of Sherman Act § 1, and the Supreme Court has long held that procompetitive benefits (whether in- or out-of-market) cannot be considered to excuse horizontal conduct that is *per se* illegal (something Plaintiffs do not allege here). 405 U.S. at 608-12.

Finally, contrary to Plaintiffs' argument and to analysis in *Microsoft*, *supra*, the D.C. Circuit has never held that out-of-market procompetitive justifications cannot be considered. *Smith v. Pro Football, Inc.*, 593 F.2d 1173 (D.C. Cir. 1978), instead held that *non-economic* procompetitive benefits—in that case, equalizing competition "on the playing field" between professional sports teams—cannot be balanced with *economically* anticompetitive conduct. *Id.* at 1186. Here, Plaintiffs do not seek to exclude arguments or evidence that Google's conduct has had non-economic procompetitive benefits in other markets.

**CONCLUSION**

For those reasons, the Court should deny Plaintiffs' motion *in limine* to exclude out-of-market procompetitive benefits.

Dated: August 15, 2023

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*