IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>▬▬▬▬▬▬▬▬▬ |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>▬▬▬▬▬▬▬▬▬ |

**DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE CONCERNING MICROSOFT CORP.'S PURPORTED ESTIMATE OF REVENUE FROM <u>SEM TOOL FEATURE DEVELOPMENT</u>**

Google LLC ("Google") respectfully moves to exclude three e-mails produced by Microsoft Corp. ("Microsoft"), and related testimony about Microsoft's ▬▬▬▬▬ of potential future revenue from Microsoft features on Search Ads 360 ("SA360") and Skai (formerly Kenshoo). Colorado Plaintiffs' ("Plaintiffs") summary judgment briefing and initial trial exhibit lists make clear that they intend to introduce these e-mails to establish a ▬▬▬▬▬ guess of these Microsoft employees at a revenue figure for certain features if adopted on SA360

and Skai platforms. As set forth below, these e-mails do not amount to competent evidence and therefore should not be admitted at trial.

**First**, there is no foundation for the purported ▮▮▮▮▮▮▮ estimate noted in the e-mails. Not one of the five Microsoft witnesses who are on these e-mails who were deposed about them could explain where the numbers came from or who supposedly calculated them. Plaintiffs' expert offered no explanation of where the numbers came from either or how they were calculated. As a result, there is no witness to say what these numbers represent, how they were calculated (if at all), and what methodology (if any) was used for any such calculation. The e-mails therefore do not come close to being competent evidence, and should be excluded under at least Federal Rules of Evidence 401, 402, 602, and 701.

**Second**, the e-mails and any related testimony are plainly hearsay, and therefore should be excluded under Federal Rule of Evidence 802. Specifically, there is no witness who can authenticate the estimate in the e-mails or otherwise provide the necessary evidence to qualify these e-mails for admission as exceptions to the hearsay rule. Accordingly, and as explained below, the Court should enter the proposed order precluding the admission of the three Microsoft e-mails regarding the ▮▮▮▮▮▮▮ figure, and any live or expert testimony and any deposition designations relating thereto.

## BACKGROUND

In support of their SA360-related claims, Plaintiffs intend to rely, *inter alia*, on three e-mails and the testimony of current and former Microsoft employees in an attempt to establish purported harm from delays by Google in integrating five Microsoft-specific features into its

SA360 search engine marketing tool.[1]  According to Plaintiffs, alleged delays in development time caused harm to Microsoft, and "Microsoft itself estimated that the feature disparity for auction-time bidding, dynamic search ads, and responsive search ads cost it as much as ▮▮▮▮▮▮▮ per year in lost revenue."[2]

This motion challenges this ▮▮▮▮▮▮▮ figure, as the only source for that amount is three iterations of the same e-mail conversation among several Microsoft employees in April and May 2020.  See MSFT-LIT-0000016225 (Ex. A),[3] MSFT-LIT-0000015326 (Ex. B),[4] and MSFT-LIT-0000022255 (Ex. C).[5]  The e-mails themselves contain no reference to supporting data or any methodology that was used to come up with this figure.  Nor have Plaintiffs, the proponents of these e-mails, identified any witness—fact or expert—who can explain the basis for the figures in the e-mails.

---

[1] Those features are:  Microsoft automated bidding (also referred to as auto-bidding or auction-time bidding), dynamic search ads (DSA), responsive search ads (RSA), call extensions, and local inventory ads.

[2] Colo. Pls.' Mem. in Opp. to Def. Google LLC's Mot. for Summ. J., ECF 465, at 15-16.

[3] PSX00746.

[4] PSX00745.

[5] PSX00754.

Indeed, from the face of the e-mails themselves, it appears that there was no methodology used to generate these numbers. ▮

▮

▮ *See* MSFT-LIT-0000022255 at -255 (Ex. C).

▮

▮[6] MSFT-LIT-0000022255 at -255 (Ex. C).

---

[6] ▮

██████████████████████████████

████████████████████████

████████████████ *See* MSFT-LIT-0000016225 at -225-26 (Ex. A).



████████████████████████████

████████████████████████████████████████ *Id.* at -225.  His e-mail refers to both SA360 and Skai features contributing to the ████████ figure.  *See id.* ████████

████████████████████████

████████████████████████

████████████████ MSFT-LIT-0000015326 at -326-27 (Ex. B).

████████████████████████████████████████████, all of whom were copied on one or more of the e-mails about the estimate, were deposed in this case.

Not one of them could explain how the figures in these e-mails were derived or who (if anyone) had undertaken any analysis. Each witness testified at deposition that they had no explanation about the supposed analyses that supported these figures and did not know where the number came from or who, if anyone, had done a calculation. ██████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████ Plaintiffs' expert, Professor Wilfred Amaldoss, also was unable to explain the estimated figures or vouch for them. Amaldoss 11/8/22 Tr. 321:8-323:12 (Ex. H) ("So it could be about SA 360; it could be about Kenshoo. So it's not clear, to me at least. I would not stick my neck out and say it's for this firm or that firm, how much it would be.").

██████████████████████████████████████

██████████████████ We understand that Plaintiffs intend to elicit testimony from one

or more of these witnesses concerning these figures. Any such testimony should be precluded, as should any reliance by Plaintiffs' experts on these unsubstantiated figures.

## ARGUMENT

The Court has discretion to grant a motion *in limine* to preclude categories of evidence at trial. Ruling on discrete evidentiary issues before trial is appropriate when it will help "narrow the evidentiary issues for trial." *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir.1990)). This is so even in bench trials. *America v. Mills*, 2010 WL 11590714, at *2 (D.D.C. Feb. 9, 2010) (granting in part motion *in limine* in bench trial); *Barry v. Trs. of Int'l Ass'n Full-Time Salaried Officers & Emps. of Outside Loc. Unions & Dist. Counsel's (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91, 101, 107 (D.D.C. 2006) (same). The Court should do so here.

I. **Testimony and E-mails Related to Microsoft's Revenue Estimate are Not Competent Evidence and Should be Excluded for Lack of Any Foundation**

   a. **Witness Testimony Regarding Microsoft's Revenue Estimate Has No Foundation**

Any live testimony of ███████████████████████████████ ███████████████████████████████ about the purported revenue estimate should be excluded. "Federal Rule of Evidence 602 limits a witness's testimony to matters for which he has personal knowledge." *Beyene v. Hilton Hotels Corp.*, 2012 WL 13214662, at *3 (D.D.C. Nov. 13, 2012); Fed. R. Evid. 602. In addition, Federal Rule of Evidence 701 provides that any lay witness testimony must be based on first-hand observation and knowledge. Fed. R. Evid. 701; *United States v. Philip Morris USA, Inc.*, 2004 WL 5916877, at *1 (D.D.C. Aug. 17, 2004) ("Historically, it has always been the rule that lay opinion testimony may be elicited only if it is based on the witness's first-hand knowledge or observations") (internal quotations omitted). The deposition testimony of these five witnesses reveals that none of them has personal knowledge of

7

the basis for or underlying methodology for the purported revenue estimate. ██

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████ MSFT-LIT-0000016225 (Ex. A); MSFT-LIT-0000015326 (Ex. B); MSFT-LIT-0000022255 (Ex. C).

None of these witnesses prepared or had even basic knowledge about the estimate. ██ ██████████████████████████████████████████████████████████████████████ ██ ██████████████████████████████████████████████ ██ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

Nor did any these five witnesses identify who else might have prepared the estimate, explain how it was prepared, or point to any underlying data. ████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████

The totality of this deposition testimony makes clear that none of these five witnesses have a basis or foundation to testify on this topic.  Indeed, the person cited by the other three witnesses as the person most knowledgeable, ████████████, had no recollection of the estimate during her deposition and in a prior e-mail within Microsoft had indicated any feature-by-feature estimate ████████████████ MSFT-LIT-0000015326 at -326 (Ex. B).  The testimony of any of these witnesses at trial would therefore be entirely speculative and lacking any foundation in personal knowledge.  The testimony should therefore be excluded under Federal Rules of Evidence 602 and 701.

      **b.  The E-mails Containing Microsoft's Purported Revenue Estimate Lack any Foundation and are Irrelevant**

The three e-mails should also be excluded under Federal Rule of Evidence 602 for lack of foundation, and under Federal Rules of Evidence 401 and 402 for lack of relevance.  Under Federal Rules of Evidence 401 and 402, relevant evidence "has a tendency to make a fact more or less probable than it would be without the evidence" or is of consequence in determining the action, Fed. R. Evid. 401, and irrelevant evidence is inadmissible, Fed. R. Evid. 402.

The e-mails themselves describe the revenue number as ████████████ and the product of ████████████ analyses.  *See, e.g.*, MSFT-LIT-0000015326 at -327 (Ex. B).  On their face, the e-mails contain no explanation of how the ████████████ estimate was derived, and do not cite any analysis or underlying data.  Moreover, as described above, no fact or expert witness deposed in the case had any knowledge either.  Indeed, although Plaintiffs' expert Professor Wilfred

9

Amaldoss cited MSFT-LIT-0000016225 (Ex. A) in his opening report,[7] Professor Amaldoss admitted in his deposition that he was unable to clearly interpret the estimate and said "[he] would not stick [his] neck out" to say which "firm" it applied to, as between SA360 or Skai.  Amaldoss Tr. 321:8-323:12 (Ex. H).  Finally, in response to Google's motion for summary judgment that expressly identified these e-mails as lacking in any basis or methodology, Def.'s Mem. of P. & A. in Supp. of its Mot. for Summ. J., ECF 427, at 40, Plaintiffs failed to identify any witness or other evidence that could cure this dearth of foundation.  *See also* Reply in Supp. of Def.'s Mot. for Summ. J., ECF 523, at 28-29; Google LLC's Resp. to Pl. States' Statement of Material Facts As To Which There is No Genuine Issue, ECF 523-1, ¶ 124.  These e-mails are pure speculation on potential revenue from specific SA360 and Skai features, and should accordingly be excluded under Federal Rules of Evidence 602, 401, and 402.

## II. Testimony and E-Mails Related to Microsoft's Revenue Estimate Should also be Excluded as Inadmissible Hearsay

The three e-mails and any related testimony from these five witnesses are also inadmissible hearsay—"statements being offered for the truth of the matters asserted that are made by individuals who have not testified, and will not testify at trial." *Boca Investerings P'shp. v. United States.*, 128 F. Supp. 2d 16, 17, 21 (D.D.C. 2000) (granting motion *in limine* to exclude documents on hearsay grounds where the party seeking to admit the evidence "failed to identify the actual sources of the information and the bases for the sources' information"); Fed. R. Evid. 801, 802.

Any trial testimony from ▮▮▮▮▮▮▮▮▮▮▮▮ about Microsoft's revenue estimate cannot be admitted for the truth of the matter asserted, *i.e.*, to prove alleged harm in the amount of the revenue estimate.  Assuming *arguendo* that there was ever a basis or analysis

---

[7] Amaldoss Opening Report ¶ 285 n.561.

done to support the estimate—which is doubtful based on the deposition testimony of Microsoft witnesses—any testimony by ▮▮▮▮▮▮▮▮▮▮ would be a second- or third-hand recitation of information from an as-yet unidentified person or team employing an unidentified methodology. Their depositions make clear that none of them prepared the estimate. This completely unreliable hearsay should be excluded under Federal Rule of Evidence 802. As a result, the estimates are not competent evidence and should not be admitted.

The three e-mails should also be excluded on hearsay grounds. *See Boca*, 128 F. Supp. 2d at 17; Fed. R. Evid. 801, 802. On the face of the e-mails, the only two individuals who comment in any substance on the estimate are ▮▮▮▮▮▮▮▮▮▮, *see* MSFT-LIT-0000016225 (Ex. A); MSFT-LIT-0000015326 (Ex. B); MSFT-LIT-0000022255 (Ex. C), but neither knows the basis for the estimates and thus they are simply repeating statements made by other unidentified individuals. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ The content of the e-mails, which Plaintiffs seek to introduce as a specific amount of harm caused by the alleged SA360 conduct, are plainly hearsay and do not satisfy any exception to the hearsay rule.[8]

## **CONCLUSION**

Based on the foregoing, Google respectfully requests that this Court enter an order granting this Motion. *See* Proposed Form of Order.

---

[8] For example, the e-mails cannot qualify as a Microsoft business record as there is no witness with knowledge of the estimates, no witness who can say that such estimates were a regularly conducted activity of Microsoft, and no witness to say that the making of these estimates was a regular practice at Microsoft.

Dated: August 1, 2023                                    Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

12