# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br>       Defendant. | Case No. 1:20-cv-03010-APM<br>HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br>       Defendant. | Case No. 1:20-cv-03715-APM<br>HON. AMIT P. MEHTA |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY PETITIONERS PATRICK CHANG AND SAMSUNG NEXT LLC'S MOTION TO QUASH TRIAL SUBPOENAS**

Pursuant to Federal Rule of Civil Procedure 45, Non-Parties Patrick Chang and Samsung Next LLC ("Samsung Next") respectfully submit this memorandum of law in support of their motion to quash the trial subpoenas that Plaintiffs served on Mr. Chang.

## PRELIMINARY STATEMENT

Patrick Chang is a former employee of Non-Party Samsung Next, an entity which has never negotiated nor entered a search agreement with Defendant Google LLC ("Google").[1] During his videotaped deposition, Mr. Chang repeatedly testified that he had no involvement in the negotiations between Google and Samsung Electronics Co., Ltd. ("SEC"), which is a Korean corporation and the Samsung entity that has search agreements with Google. Indeed, Mr. Chang testified that he has never even seen SEC's search agreements with Google.

In addition, Mr. Chang testified that the documents he authored commenting on whether SEC's current Google search agreement was a factor considered when Samsung opted not to further integrate the deep linking technology of a Samsung Next portfolio company, ███████, in Samsung mobile devices were not based on his personal knowledge, but instead solely conveyed "secondhand" information that was primarily relayed by an unnamed "junior" person on SEC's Google partnership team in Korea. Mr. Chang also testified that these documents reflected pure "speculation" about the direction of the negotiations between SEC and Google, which changed over the course of 2019 and 2020, and the terms that could potentially be contained in the final contract, which, again, he never reviewed in draft or final form.

---

[1] Samsung Next is a Samsung entity based in the San Francisco, California area that focuses on investing in early stage and startup technology companies. Chang. Decl. ¶ 7; *see also* https://www.samsungnext.com/. As an investment entity, Samsung Next does not sell products that use the Android operating system or include the Google suite of services. Chang Decl. ¶ 7.

Nonetheless, Plaintiffs are now seeking to force Mr. Chang to travel across the country from San Francisco, California to Washington, D.C. to provide live testimony that will simply reiterate his lack of personal knowledge about the negotiations, terms, interpretation, and implementation of SEC's search agreements with Google. Moreover, any testimony that Plaintiffs would likely seek to elicit from Mr. Chang regarding Samsung's ▮▮▮▮▮ decision would constitute the textbook definition of inadmissible hearsay because it would be based entirely on other individuals' reports of perceptions and recollections of discussions, meetings, and correspondence that did not involve Mr. Chang and may not have even involved the person relaying the information to him.

While the probative value of Mr. Chang's live testimony would be minimal, at best, the burden imposed on Mr. Chang and Samsung Next would be great. For example, Mr. Chang founded his own venture capital firm last year, which requires his full attention and the investment of long hours. Chang Decl. ¶¶ 9-11, 16. In fact, Mr. Chang's firm recently launched an initial $40 million investment fund, which he is actively managing (including the investments in over 20 portfolio companies) due to its importance to the future of his firm. *Id.* at ¶ 11. As the sole breadwinner in his family, Mr. Chang cannot afford to take significant time away from operating his new firm (the primary source of income for his family) in these critical early stages to prepare for and provide testimony at a trial nearly 3,000 miles away from his home. *Id.* at ¶ 12. Furthermore, Mr. Chang has two preexisting business trips that will require him to travel to Asia and Europe for approximately one month during September and October 2023, which will make his trial preparation significantly more burdensome and complicated. *Id.* at ¶ 15. Incredibly, Plaintiffs have chosen to add to this burden and complexity by planning to call Mr. Chang as a witness within days of his return from a nearly three-week business trip in Asia.

Finally, there is no need for Plaintiffs to call Mr. Chang as a live witness. Despite being a former Samsung Next employee, Mr. Chang took time out of his busy schedule to sit for a videotaped deposition where the parties were afforded up to 11 hours to question Mr. Chang about his Samsung Next employment, including his work related to ▮▮▮▮▮ and the decision not to further integrate ▮▮▮▮▮ technology in Samsung mobile devices. Mr. Chang fully answered both sides' questions and neither side has ever raised any concerns about the adequacy of his deposition testimony. Thus, Plaintiffs can easily present videoclips from Mr. Chang's deposition, as well as the Samsung Next documents that have been designated as trial exhibits. In addition, Plaintiffs can present evidence from Google and other non-parties, such as ▮▮▮▮▮ and mobile device carriers, related to Samsung's ▮▮▮▮▮ decision.

The absence of any need to force Mr. Chang to travel cross country during a critical stage for his new firm is crystalized by the fact that Plaintiffs have said their live examination will cover the "same general topics" and "very similar questions" as Mr. Chang's full-day deposition. As confirmed by his sworn declaration, Mr. Chang has nothing new to add to these topics and questions, or any other matters that may be relevant to this litigation. *Id.* at ¶ 14.

## ARGUMENT

Under Federal Rule of Civil Procedure 45, a court "must quash or modify a subpoena that . . . subjects a person to undue burden."[2] Fed R. Civ. P. 45(d)(3)(A)(iv). The protections that Rule 45 affords non-parties against "undue burden" apply with equal force to trial subpoenas. *See, e.g.*, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund*

---

[2] Although the Court's Case Management Order permits Plaintiffs to issue nationwide trial subpoenas under 15 U.S.C. § 23, *see* ECF No. 108-1 at ¶ 29, Plaintiffs still have a statutory obligation to show "cause" as to why Mr. Chang, a former Samsung Next employee who resides in San Francisco, should be required to appear at trial in Washington, D.C. *See* 15 U.S.C. § 23; *United States v. Wyeth*, Civil Action Nos. 03-12366-DPW, 06-11724-DPW, 2015 WL 8024407, at *4 (D. Mass. Dec. 4, 2015).

("*AFSCME*"), Miscellaneous No. 21-0133 (PLF), 2022 WL 3655277, at *3, *6-7 (D.D.C. Aug. 25, 2022).

In determining whether a subpoena imposes undue burden on a non-party, "[c]ourts 'must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Id.* at *4 (citation omitted).  In the context of trial subpoenas, this balancing test requires courts to "'consider a number of factors potentially relevant to the question of undue burden,'" which include whether: (i) the testimony would be "'unreasonably cumulative or duplicative;'" (ii) the testimony is "'obtain[able] from some other source that is more convenient, less burdensome, or less expensive;'" and (iii) whether the testimony sought is "proportional to the needs of the case," taking into account, among other things, "the parties' relative access to the relevant information" and whether the "burden or expense of the [testimony] outweighs its likely benefit.'" *Id.* at *3-4 (citation omitted).

Importantly, the D.C. Circuit has made clear that this balancing test also requires courts to be "generally sensitive to the costs imposed on third parties" and to afford "'special weight'" to "'the concern for the unwanted burden thrust upon non-parties[.]'" *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) (quoting *Cusamano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).

Here, there can be no doubt that Plaintiffs' subpoenas would subject Mr. Chang and Samsung Next to undue burden and that this burden would far outweigh any potential benefit of Mr. Chang's live testimony.

*First*, Mr. Chang's sworn deposition testimony clearly establishes that he lacks any personal knowledge regarding the Samsung-related matters that may be pertinent to the resolution of this litigation: the negotiations, terms, interpretation, and implementation of SEC's

search agreements with Google. For example, Mr. Chang – who has never been employed with SEC – repeatedly and consistently testified that he was not involved in SEC's negotiations with Google and that he has never even seen SEC's search agreements with Google:

- "I mean, if we're talking about the business agreements between Samsung and Google, you know, I was not involved in the business agreements between Samsung and Google." Arteaga Decl., Ex. A (Chang Tr.) at 148:11-15.
- "You know, again, as I mentioned, like, you know, I wasn't part of any of these, you know, Google agreement discussions or, you know, actually seen any of these agreements." *Id.* at 159:15-18.
- "I had no responsibility on [the 2020] agreement between Samsung and Google. The only thing I know about it is from a generalized high level since – and what I was told secondhand from [SEC's Google partnership] team." *Id.* at 185:11-15.
- "Yeah, I did not see the agreement itself, just copy-and-pasted snippets, very, very small – like a sentence or two, or paragraph." *Id.* at 193:18-21.
- "You know, again, I – I was not part of any of these Google agreements or negotiations, nor have I, you know, seen the agreement in its entirety or [final] form." *Id.* at 198:18-21.
- "I have not seen a fully executed contract [between Google and SEC]." *Id.* at 257:15.

*Second*, Mr. Chang's sworn deposition testimony makes clear that any live testimony he could provide regarding the decision not to further integrate ▮▮▮▮▮▮▮▮ technology in Samsung mobile devices during the 2019 and 2020 period would involve classic inadmissible hearsay because it would be based on second or thirdhand information primarily provided by an unnamed "junior" person on SEC's Google partnership team. *See, e.g.*, *id.* at 185:11-15, 275:1-8 (testifying that information regarding potential implications of ongoing Google search negotiations to possible further integration of ▮▮▮▮▮▮▮▮ technology was based on "what I was told secondhand from [SEC's Google partnership] team" and that such information was "primarily" provided by an unidentified "junior" person on the team); *Howard v. Fed. Ex. Corp.*, Case No. 16-cv-02514 (APM), 2019 WL 2103126, at *3 (D.D.C. May 14, 2019) (finding that testimony regarding matters for which the witness "had no first-hand knowledge" and that was

5

"told [to] him" is "pure hearsay and is not admissible"); *Hammel v. Marsh USA Inc.*, Civil Action No. 14-943 (CKK), 2017 WL 7058844, at *1 (D.D.C. Dec. 5, 2017) (holding that "witnesses cannot be allowed to testify about events or conversations that occurred outside of their presence, which they have no personal knowledge of, and which were merely relayed to them" because such testimony "likely constitutes hearsay").[3]

      The fact that Plaintiffs' live questioning of Mr. Chang will largely, if not exclusively, focus on inadmissible hearsay is shown by the significant amount of time they spent during his deposition asking about a ▇▇▇▇▇▇ produced document, which Plaintiffs presumably have designated as a trial exhibit. In this document, Mr. Chang described an internal meeting attended by one of his Samsung Next colleagues and members of SEC's Google partnership team where the status of SEC's ongoing search agreement negotiations with Google and Samsung Next's support for further integrating ▇▇▇▇▇▇ technology in Samsung mobile devices were discussed. When questioned about this document, Mr. Chang testified that: (i) "I was not at this meeting;" (ii) his information about the meeting came from a colleague who, in turn, was relaying what he was told about SEC's negotiations with Google; (iii) "I personally have . . . no context" regarding the positions taken during the negotiations given that the information included in this email "was solely based on what we were hearing from [SEC's Google partnership] team;" and (iv) "I am only speculating based on the feedback we got from the [SEC

---

[3] *See also Poullard v. Smithkline Beecham Corp.*, No. Civ.A. 02-1590 (CKK), 2005 WL 3244192, at *18 (D.D.C. Nov. 30, 2005) (holding that testimony "based on second or third-hand statements, rather than personal knowledge, . . . consists of inadmissible hearsay"); *Matta v. Snow*, No. Civ.A. 02-862 (CKK), 2005 WL 3454334, at *19 n.7 (D.D.C. Dec. 16, 2005) (same); *BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 184 F.R.D. 3, 7-8 (D.D.C. 1999) (determining that a "statement is hearsay" where the witness "lacks personal knowledge of the matters" and instead "has only secondary personal knowledge").

(continued…)

Google partnership] team[.]"[4] Arteaga Decl., Ex. A (Chang Tr.) at 185:11-221:2; *see also id.* at 279:13-280:14 ("Q. And so the information that's contained in [this email] is coming to you via Mr. Yoon, via [SEC's Google partnership] team[?] . . . THE WITNESS: This is a combination of [SEC's Google partnership team's] junior person telling me, plus Mr. Yoon telling me.").

      The fact that Plaintiffs' live questioning of Mr. Chang will focus on inadmissible hearsay is further shown by the deposition testimony that he provided regarding several of the Samsung Next documents that Plaintiffs have designated as trial exhibits. For example:

**NEXT-DOJ-LIT-00002083**
  Q. Were you at this meeting with Won Jin [ ] that you describe?
  A. No, I was not at this meeting.
  Q. And where did you get this information?
  A. I got this information from Won Jin's team. . . .
  Q. And did you ever talk about ▮▮▮▮▮ in your conversations with Won Jin?
  A. Yes. . . . Well, you know, I mean, my conversations with Won Jin [ ] were extremely high level. We didn't get into context. He did not indicate to me personally one way or another [whether he supported further integrating ▮▮▮▮▮ in Samsung mobile devices]. *Id.* at 220:22-222:10.

**NEXT-DOJ-LIT-00003305**
  Q. Why did you put the word "complete" in all caps?
  A. You know . . . I put "complete" in all caps [ ] because I heard other news, which was secondhand knowledge from [SEC's Google partnership] team that Google's reaction was the opposite of what Brandon Hoffman had hoped for. . . .
  Q. And what did you mean by a new redline?
  A. I just meant a new draft [agreement]. . . .
  Q. And where did you get that information?
  A. I got that from [SEC's Google partnership] team. . . .
  Q. What did you mean by "that went backwards in all negotiations with Samsung"?

---

[4] The same is true with respect to another ▮▮▮▮▮ produced document, where Mr. Chang was questioned about information he received regarding conversations between Samsung personnel in India and Korea concerning ▮▮▮▮▮. Arteaga Decl., Ex. A (Chang Tr.) at 228:3-234:14. Plaintiffs have presumably designated this document as a trial exhibit and would likely seek to once again question Mr. Chang about it even though any testimony would clearly be inadmissible hearsay.

(continued…)

A. You know, so I also got that from [SEC's Google partnership] team. Again, I was not in these negotiations, so I only had these – secondhand knowledge. *Id.* at 239:15-241:6.[5]

*Third*, Mr. Chang would undoubtedly suffer undue burden if forced to dedicate significant time preparing for and testifying at a trial that will take place nearly 3,000 miles away from his home. Last year, Mr. Chang founded his own venture capital firm (Dispersion Capital) that specializes in investing in early stage and startup technology companies. Chang Decl. ¶ 9. As the founder and CEO, Mr. Chang is heavily involved in all aspects of the firm's business, including personnel matters, fundraising, negotiating transactions, managing investment funds, and advising and assisting portfolio companies. *Id.* at ¶ 10. Consequently, Mr. Chang has a demanding schedule which requires him to work long hours and weekends. *Id.*

Earlier this year, Mr. Chang's firm launched its initial investment fund: a $40 million fund that already has active investments in over 20 portfolio companies. *Id.* at ¶ 11. Given the importance of this fund to the future of Mr. Chang's new firm, he is personally investing significant time ensuring that the fund is successful and meets investors' expectations. *Id.*

In his capacity as founder and CEO, Mr. Chang is also required to travel extended periods for business meetings. For example, Mr. Chang has two preexisting business trips scheduled to Asia and Europe that will require him to be overseas for almost an entire month between September and October (Asia: September 4 – 22, 2023; Europe: October 20 – 25, 2023).

---

[5] *See also* Arteaga Decl., Ex. A (Chang Tr.) at 153:21-155:2 (testimony regarding SEA-DOJ-LIT-0093400 stating that "I have not ever seen or know, really, about" Google's agreements with mobile device carriers, "my contact with carriers were very minimal" because "the main point of contacts to carriers were people like David Hwang and his team," and "I can only speculate on what David Hwang believed were sticky points" in the discussions with carriers regarding ▮▮▮▮▮▮▮▮); *id.* at 159:13-161:14 (testimony regarding NEXT-DOJ-LIT-0006093 stating "I wasn't part of any . . . Google agreement discussions, or you know, actually seen any of these agreements" and that "I cannot speculate on [whether the Samsung launch of ▮▮▮▮▮▮ in India] could or could not have happened [in the U.S.]").

*Id.* at ¶ 15. The fact that Mr. Chang will be traveling overseas in different time zones for an extended period right before and during the trial will make his trial preparation significantly more burdensome and complicated. *Id.* Plaintiffs have inexplicably chosen to add to this burden and complication by planning to call Mr. Chang, who lives in San Francisco, as a witness within days of his return from a nearly three-week long business trip in Asia. *Id.* at ¶ 17.

Given Mr. Chang's important role and responsibilities as founder and CEO, neither he, his firm, investors, nor portfolio companies can afford to have him take significant time away from his duties to prepare, travel and sit for live testimony during the early stages of his firm's life, which are critical to its ability to succeed in a highly competitive and dynamic industry. *Id.* at ¶ 16. Likewise, Mr. Chang's family cannot afford for him to be distracted from ensuring the success of his firm because (i) he is the family's sole breadwinner, (ii) his firm represents the family's primary source of income, and (iii) his compensation is dependent entirely on the performance of the firm and its investments, *i.e.,* Mr. Chang does not have any guaranteed compensation.[6] *Id.* at ¶ 12.

*Fourth*, Plaintiffs' live examination will simply result in testimony that is cumulative and duplicative of Mr. Chang's deposition testimony. Plaintiffs have stated that their live examination will cover the "same general topics" and "very similar questions" as Mr. Chang's deposition. Mr. Chang's sworn declaration confirms that he has nothing new to add to these topics and question, or any other matters that may be relevant to this litigation. *Id.* at ¶ 14.

*Finally*, Plaintiffs' demand for live testimony is not proportional to the needs of the case. Plaintiffs can easily and effectively present any evidence related to Samsung's ███

---

[6] In addition to the undue burden on Mr. Chang, Plaintiffs' subpoenas will subject Samsung Next to unnecessary costs, which would be in addition to the significant expenses that Samsung Next has already incurred in connection with this litigation.

9

decision without Mr. Chang's live testimony. For instance, Plaintiffs had a full opportunity to question Mr. Chang during his day-long deposition – both before and after he was questioned by Google's counsel – and can play videoclips of his testimony. In addition, Plaintiffs will be able to present to the Court the Samsung Next documents that the parties have designated as trial exhibits. Furthermore, Plaintiffs will be able to present testimonial (either live or by designation) and documentary evidence on this topic through the witnesses and documents produced by Google and other relevant third parties, including ▇▇▇▇▇▇▇ and mobile phone carriers.

In light of the above facts, the Court "must quash" Plaintiffs' subpoenas because they will "subject[ ] [Mr. Chang and Samsung Next] to undue burden" while providing minimal, if any, assistance to the resolution of the issues in this litigation. Fed R. Civ. P. 45(d)(3)(A)(iv); *see also AFSCME*, 2022 WL 3655277, at *6-7 (quashing trial subpoena issued to non-party union's president because (i) the union would suffer "substantial burden" by having its leader preoccupied with trial testimony, and (ii) "'the evidentiary interest'" in the union president's testimony was "'at best, negligible'" due to his lack of personal involvement and knowledge and the "'cumulative [and] duplicative'" nature of his testimony); *Gilliam v. Bertie Cnty. Bd. of Ed.*, No. 2:20-cv-00016-D, 2022 WL 6251966, at *2-3 (E.D.N.C. Oct. 7, 2022) (quashing trial subpoena because non-party's testimony "would provide a 'marginal benefit'" given that "she has had no hand in crafting, revising, or applying" the policies at issue); *Young v. Pleasant Valley Sch. Dist.*, No. 3:07-CV-854, 2011 WL 3651796, at *2 (M.D. Pa. Aug. 18, 2011) (quashing subpoena because, among other things, non-party's testimony "would constitute hearsay").

## CONCLUSION

For the foregoing reasons, Non-Parties Patrick Chang and Samsung Next respectfully request that the Court grant their motion to quash Plaintiffs' trial subpoenas to Mr. Chang.

10

Dated: August 18, 2023                    Respectfully submitted,

**CROWELL & MORING LLP**

By: */s/ Juan A. Arteaga*
     Juan A. Arteaga (*pro hac vice*)
     Rosa Morales (*proc hac vice pending*)
     590 Madison Avenue
     New York, New York 10022
     (212) 223-4000
     jarteaga@crowell.com
     rmorales@crowell.com

*Attorneys for Non-Party Petitioners Patrick Chang and Samsung Next LLC*