**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>       Defendant. | CASE No.: 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>       Defendant. | CASE No.: 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**NON-PARTY PETITIONER APPLE INC.'S REPLY IN SUPPORT OF
MOTION TO QUASH TRIAL SUBPOENAS**

Non-Party Apple Inc. ("Apple") respectfully submits this reply in support of its Motion to Quash Trial Subpoenas, ECF No. 643 (the "Motion"). Plaintiffs' Opposition to Apple's Motion, ECF No. 662 (the "Opposition") only further underscores the need to quash Plaintiffs' trial subpoenas to Apple senior executives Eduardo Cue, John Giannandrea, and Adrian Perica. The Opposition ignores the undue burden Apple and Messrs. Cue, Giannandrea, and Perica would face if required to testify again in this action. It makes no attempt to articulate what new ground (if any) Plaintiffs intend to cover at trial, casts a spotlight on the cumulative nature of the testimony Plaintiffs seek, and drastically undersells the considerable effort Messrs. Cue, Giannandrea, and Perica have already dedicated to this case by not even mentioning the many

1

days they spent preparing and sitting for their depositions. The central fact is undisputed—three of Apple's top executives sat for more than 21 hours of deposition on the exact topics the Department of Justice ("DOJ") posits for testimony at trial. The only topic DOJ lists which was not covered in the depositions is a credibility assessment. In fact, the Opposition even previews DOJ's plan to invoke decade-old prior testimony by one of Apple's executives—exposing the true intentions of publicly harassing Apple's executives on the stand, not of eliciting substantive relevant evidence beyond the deposition examinations that could be helpful to this Court. Any questions or documents designed to test Apple's executives' credibility could and should have been part of the deposition process.

There is no legal basis for calling them to a bench trial to testify on the same topics covered at deposition. The Opposition relies on decades-old case law from before videotaped depositions became commonplace and otherwise inapposite case law involving jury trials. Beyond that, the Opposition mischaracterizes Apple's Motion and the law by misleading the Court about Apple's request to quash Mr. Perica's trial subpoena and erroneously claiming that the potential disclosure of Apple's most sensitive confidential commercial information has no relevance to this motion—notwithstanding the plain text of Rule 45 that provides exactly such a basis to quash. The Court should grant Apple's Motion. At a minimum, given Plaintiffs' evident intention to harass Apple's witnesses and the inherently cumulative and duplicative nature of the testimony the parties seek, the Court should preclude the parties from raising irrelevant harassment material and limit their examination to substantive topics not covered in the witnesses' depositions.

## ARGUMENT

As Apple set out in its Motion, the trial subpoenas would pose an undue burden, and Plaintiffs have not articulated a need for further testimony implicating Apple's highly sensitive

commercial information, after already obtaining more than 20 hours of testimony from Apple's witnesses for use in this bench trial. Plaintiffs' Opposition does not suggest otherwise.

*First*, the Opposition completely disregards the undue burden that Apple and Messrs. Cue, Giannandrea, and Perica would face if required to testify again in this action and fails to articulate any topic that was not covered by their existing testimony. Plaintiffs concede that the Apple witnesses would face a burden if required to testify, but state that it is a burden faced by other non-parties. Opp'n 6. That misleadingly minimizes the significant efforts that Apple has undertaken as a non-party and the considerable burden to which Apple has been subjected in connection with the parties' prosecution and defense of this case. Plaintiffs disregard the *21.5 hours* Messrs. Cue, Giannandrea, and Perica collectively sat for depositions on the record in a personal and corporate capacity. Of course, the time on the record does not capture the many days Messrs. Cue, Giannandrea, and Perica set aside to prepare to testify in their personal capacity and as corporate representatives in response to DOJ's overbroad corporate deposition notice, which sought an expansive amount of information concerning 18 wide-ranging topics and subtopics for up to 17 years.[1] The Opposition also disregards the considerable burden placed on Apple in protecting its confidential commercial information, a fact only underscored by the documents DOJ identified pursuant to the Court's August 11 Order.[2] *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (permitting a court to quash a subpoena where the subpoena would require disclosure of "confidential . . . commercial information").

---

[1] As Apple noted in its Motion, Apple designated each of the three executives here as corporate designees for Plaintiffs' 30(b)(6) topics, requiring extensive preparation from both Apple and its executives. Mot. 4 & nn.4–5. Despite the fact that Apple undertook the burden of preparing all of its witnesses for such testimony, the parties declined to ask Mr. Giannandrea any questions in his corporate capacity during his deposition. *Id.*

[2] For example, after the Court noted that it did not need to be shown the text of the provisions in Apple's agreements, Plaintiffs disclosed to Apple their intention to rely on nearly the entirety of an agreement at trial. Aug. 11, 2023 Hearing Tr. 44:5–10.

Plaintiffs' Opposition also provides no justification for imposing this burden on Apple and its executives. Only now in response to this Motion, after Apple inquired on three previous occasions about areas of examination, *see* Mot. 5, does DOJ explain that it seeks further testimony from Apple about, among other things, "the meaning of the ISA's provisions and their impact on search competition," Apple's "engagement with Google's competitors," the "importance of scale for search engines," and "Apple's search efforts," Opp'n 2–3. This list of topics is just more of the same and proves the point. Apple's executives already testified in great detail about *all* of these topics in a personal capacity. *See* Mot. 6–7. In a fantastically overbroad corporate deposition—from which both Plaintiffs and Google have designated extensively—Apple squarely testified to its "internet search service agreements with Google," "[t]he agreements' terms," how it "implemented, monitored, and enforced the agreements," and its "negotiations with *any* internet search engine other than Google." Mot. 4 (citations omitted). And to the extent Plaintiffs seek testimony concerning the meaning of a contract's provisions, such an examination calls for irrelevant legal conclusions. The contract ultimately speaks for itself and lack of clarity in contractual terms is not an issue in this litigation.

In fact, nowhere does the Opposition explain what new ground not covered at the depositions Plaintiffs intend to explore at trial through live testimony (if any at all). Instead, the Opposition notes only that "a fraction of the [Apple] documents on the parties' exhibit lists were used during depositions." Opp'n 6. This is simply misdirection, as *dozens* of the Apple documents on the parties' exhibit lists have no nexus at all to Messrs. Cue, Giannandrea, or Perica, which just demonstrates that Plaintiffs have no basis for using these documents in their examinations of the Apple witnesses. In any event, the Court has instructed the parties that exhibits entered into the record need not be sponsored by a witness, *see* Aug. 28, 2023 Order, ECF No. 666, and Apple has already provided declarations to both parties authenticating the 118

Apple documents they seek to use in this case. Plaintiffs wholly disregard the fact that the Apple witnesses' testimony would be cumulative and duplicative of existing testimony and documentary evidence in the record.

The Opposition's attempts to distinguish the cases Apple cites in its Motion fall flat. The Opposition notes that the court in *American Federation of State, County & Municipal Employees, AFL-CIO v. Project Veritas Action Fund*, 2022 WL 3655277 (D.D.C. Aug. 25, 2022), quashed a subpoena issued to the non-party petitioner's president in part because the president's testimony would be cumulative and duplicative of another witnesses' testimony and the evidentiary value of that testimony was "at best, negligible." Opp'n 5 (citing *AFL-CIO*, 2022 WL 3655277, at *6–7). Yet, they ignore the court's conclusion that the trial subpoena in that case placed a "substantial burden" on the non-party petitioner precisely because the witness whose testimony the subpoena sought served the "highest leadership position in the organization." *AFL-CIO*, 2022 WL 3655277, at *6. Here, as noted above, the Apple witnesses' testimony is cumulative and duplicative of their videotaped deposition testimony—from which the parties have already extensively designated and which would be of great assistance to the Court.[3] Mot. 6. Plaintiffs seek to elicit duplicative testimony from *at least two* of Apple's highest-ranking executives, when Plaintiffs are wholly able to rely upon the existing deposition testimony.

The Opposition similarly suggests that a court's decision to quash a trial subpoena in *Reddick v. Dillard Store Services*, 2010 WL 3025205 (S.D. Ill. Aug. 2, 2010), turned in part on a party's "attempt to circumvent the 100-mile" service "limit on trial subpoenas" and breach of a pre-trial order. Opp'n 7 (citing *Reddick.*, 2010 WL 3025205, at *1). But they ignore the court's observation that, regardless of whether the witness was within the prescribed 100-mile radius

---

[3] Google designated extensively to Mr. Cue's deposition transcript and Mr. Giannandrea's deposition transcript. Mot. 4–5 & nn. 6–7. Meanwhile, both parties designated extensively to Mr. Perica's deposition transcript and Apple's 30(b)(6) transcript. *Id.*

when he was served, the fact that enforcement of the subpoena would have obligated him to travel from Oregon to the Southern District of Illinois itself "impose[d] undue burden and expense" in contravention of Rule 45, "particularly when his deposition was videotaped." *Reddick.*, 2010 WL 3025205, at *1. Here, while this Court has permitted nationwide *service* of the subpoenas under the Clayton Act, the fact remains that *enforcement* of the subpoenas would impose undue burden on the Apple witnesses by obligating each of them to travel an even longer distance, across the country—all while the parties could have shown the Court the witnesses' videotaped depositions.

And the Opposition claims that the court in *Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006), rejected arguments that a subpoena should be quashed where "information . . . [was] readily available" from other sources. Opp'n 7 (quoting *Gonzales*, 234 F.R.D. at 685–86). But that misstates the court's analysis. As an initial matter, the court explained that Rule 45 requires parties seeking "trade secret or confidential commercial information from a nonparty" to establish a "substantial need" for that information "that cannot be otherwise met without undue hardship," which demands a showing that the requested information is "essential to a judicial determination of the case." *Gonzales*, 234 F.R.D. at 684–85 (citation omitted). It then allowed discovery of only "*some* information" because the remainder of the information sought was cumulative and duplicative. *Id.* at 686 (emphasis added) (explaining that the party seeking discovery did not have "a substantial need for *both*" of the overlapping categories of materials requested (emphasis in original)). Here, Apple's Motion explained that Plaintiffs' trial subpoenas seek live testimony regarding, and risk disclosure of, "Apple's most highly competitively sensitive information." Mot. 10. And Plaintiffs cannot demonstrate a substantial need for that information given its availability from other sources. *See Gonzales*, 234 F.R.D. at 685–86; *see also People for Ethical Treatment of Animals, Inc. v. Vital Farms, Inc.*, 2023 WL 2933303, at *4 (E.D. Va. Apr. 13, 2023) ("In assessing need, a court should consider not only whether the

information sought will likely (not just theoretically) have marginal benefit in litigating important issues, but also whether the information is available from other sources." (citation omitted)).

Apple has been subjected to significant burdens and has provided substantial discovery that the parties can use to present their case. Requiring the Apple witnesses to testify once more at trial is unnecessary and would only amplify that burden. Ultimately, in light of the numerous alternative sources of evidence from Apple already in the record, being compelled to testify would subject the Apple witnesses to undue burden, and Plaintiffs lack a substantial need for the additional highly sensitive confidential commercial information they seek to elicit from the Apple witnesses on the stand.

***Second***, the Opposition relies on generalized language from decades-old, inapposite cases to support the notion that a preference for live testimony is "well established." Three of the four cases the Opposition cites are almost four decades or more old, from a time well before videotaped deposition testimony became as widespread as it is today—with *Napier v. Bossard,* 102 F.2d 467 (2d Cir. 1939), dating all the way back to Judge Learned Hand's time on the bench. The fourth, *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*, while more recent, involved a *jury* trial. 262 F.R.D. 293 (S.D.N.Y. 2009). Against this backdrop, the Opposition offers no explanation at all as to why video deposition testimony would not give the Court the same ability to judge the credibility of the witnesses as live testimony. Nor can it, as courts today recognize the benefits of video deposition testimony and often admit such testimony in lieu of live testimony. *See, e.g.*, *Sherrod v. Breitbart*, 304 F.R.D. 73, 77 (D.D.C. 2014) ("[A] videotaped oral deposition may well obviate the need for the Secretary to testify at any future trial in this matter."); *Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213, 219 (E.D. La. 2008) (noting that the defendant could "present the video deposition testimony and transcripts of nine out-of-state" witnesses whom it had attempted

to subpoena, notwithstanding the principle that "live testimony is often preferable"); *Reddick*, 2010 WL 3025205, at *1.

Left without such an explanation, the Opposition resorts to *ad hominem* attacks. Plaintiffs latch onto testimony in another, inapposite case in a purported attempt to preemptively impugn credibility—both laying bare their true intentions of harassing and burdening the Apple witnesses and insulting the Court's ability to assess the many hours of existing testimony from Apple witnesses on its own, based on the facts *in this case*. Far from seeking "to deprive the Court of valuable trial evidence," Opp'n 10, Apple seeks efficient and appropriate treatment of its non-party witnesses and confidential information and to alleviate the Court of the burden attendant to "navigat[ing] the risks of inadvertent disclosure of [a non-party's] most competitively sensitive information," Mot. 8. Accordingly, to the extent this Court requires live testimony from the Apple witnesses, Apple requests that it preclude the parties from raising irrelevant harassment material and limit the testimony to substantive topics not covered in the underlying depositions.

***Third***, the Opposition mischaracterizes Apple's Motion and the law more broadly in an unfounded attempt to cast Apple as relitigating issues already decided by this Court earlier this month. Plaintiffs ask the Court to deny Apple's request to quash Mr. Perica's subpoena because the Court "expressly deferred ruling on subpoenas to witnesses who Plaintiffs do not presently intend to call to trial." Opp'n 10–11. But Apple's request to quash Mr. Perica's subpoena is consistent with the Court's instruction. As Apple noted in its Motion, "the Court instructed the parties that they would not be permitted to call witnesses for whom they intend to rely on deposition designations but to whom they have also issued trial subpoenas unless they can establish unexpected circumstances in the course of trial." Mot. 4–5 n.6. Notwithstanding the parties' ability to establish unexpected circumstances, Apple has moved to quash *all* the subpoenas Plaintiffs served on its witnesses in light of the inherently duplicative and cumulative

8

nature of any Apple testimony, when weighed against the considerable amount of Apple information already in the factual record.

Plaintiffs further (incorrectly) suggest that Apple seeks to revisit confidentiality issues from the Court's August 11 conference, stating that "Apple's purported concerns about disclosure of confidential information are not an appropriate basis to quash a trial subpoena." Opp'n 10. Yet Rule 45 itself provides such a basis. Under Rule 45, a court "may, on motion, quash or modify [a] subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). As noted above, DOJ's communication to Apple regarding information it intends to use at trial demonstrates that DOJ failed to heed the Court's guidance and seeks unnecessary and harmful disclosure of Apple's confidential information in open court. Where, as here, a subpoena requires disclosing confidential commercial information, the issuing party must "show[] a substantial need for the testimony or material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(C)(i). Courts often quash subpoenas in whole or in part where parties fail to establish a substantial need for a non-party's confidential commercial information. *See, e.g.*, *Gonzales*, 234 F.R.D. at 685–86; *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *4–6 (W.D. Wash. Aug. 17, 2009). Particularly here, where any need for the testimony can otherwise be met through the videotaped depositions, Plaintiffs have failed to demonstrate why the subpoenas should not be quashed.

## CONCLUSION

For these reasons, Apple respectfully requests that the Court quash the subpoenas issued to Eduardo Cue, John Giannandrea, and Adrian Perica. In the alternative, should the Court decide not to quash the subpoenas in full, Apple respectfully requests that it preclude irrelevant

harassment material and limit the scope of the parties' examination to substantive topics not covered in the witnesses' depositions.

Dated: August 31, 2023                                  Respectfully submitted,

/s/ Steven C. Sunshine
Steven C. Sunshine
D.C. Bar # 450078
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
(202) 371-7860
steve.sunshine@skadden.com

Karen Hoffman Lent (*pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
(212) 735-3276
karen.lent@skadden.com

*Counsel for Non-Party Petitioner Apple Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2023, I electronically filed the foregoing documents using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the CM/ECF system.

Dated: August 31, 2023                                        Respectfully submitted,

/s/ Steven C. Sunshine
Steven C. Sunshine
D.C. Bar # 450078
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
(202) 371-7860
steve.sunshine@skadden.com