IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                     Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                     Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>                     Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                     Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S RESPONSE TO UNITED STATES PLAINTIFFS'
SUBMISSION IN ADVANCE OF PRETRIAL CONFERENCE ON CONFIDENTIALITY**

Google respectfully submits the following response to the DOJ Plaintiffs' "Submission in Advance of Pretrial Conference on Confidentiality," filed on August 31, 2023 at ECF No. 673.

## I. Background

On August 18, Plaintiffs collectively asked Google to conduct a confidentiality review of 356 exhibits—256 of which were identified by the DOJ Plaintiffs.[1] The 256 exhibits identified by the DOJ Plaintiffs consisted of 314 distinct documents (including emails and attachments). That is a significant number by any measure, and all the more so given that the Court's Order directed Plaintiffs to identify for Google's further review only "those portions of their exhibits that they intend to rely upon at trial." Aug. 14, 2023 Order (ECF No. 640). With respect to 112 of their 256 exhibits, the DOJ Plaintiffs declined to do so, insisting that Google should review the exhibit in its entirety.

Despite the overbreadth of the DOJ Plaintiffs' request, Google promptly determined whether disclosure of each passage of each document would harm its competitive standing in accordance with the principles articulated by the Court at the August 11 hearing. The process involved the input of numerous Google employees who examined these often-voluminous documents to assess the commercial sensitivity of the material based on their experience with the products, agreements, or decisions at issue.

After receiving Google's position on the 256 exhibits, the DOJ Plaintiffs asked Google to participate in a meet-and-confer on August 29. At the beginning of the conferral, the DOJ Plaintiffs indicated for the first time that the next day they would be submitting to the Court a set of approximately 20 challenged exhibits. Although the DOJ Plaintiffs indicated that they would

---

[1] The Colorado Plaintiffs identified 100 exhibits on August 18, but on August 24 they withdrew their request as to 22 after Google pointed out that many of them were rendered irrelevant by the Court's summary judgment opinion.

1

provide the 20 exhibits they planned to submit so that Google could assess Plaintiffs' position and provide its own views in advance of a court filing, they never did so. Google first learned of the 20 exhibits presently at issue when the DOJ Plaintiffs filed and served their submission during the early hours of August 31. Only 7 of these exhibits were among those identified for discussion at the August 29 meet-and-confer.[2]

## II. Argument

The DOJ Plaintiffs' challenge to Google's confidentiality designations suffers two pervasive flaws, in addition to a number of category-specific issues addressed in the subsections below.

First, the DOJ Plaintiffs' cursory assertions about the centrality of certain documents or issues amount to little more than a rehash of the arguments they made in their August 9 submission. In response, Google provided a detailed brief—supported by five declarations— regarding the types of competitive harm likely to result from disclosure of the materials in question. *See* Aug. 9, 2023 JSR (ECF No. 636) at 26-46. As Google explained in its August 9 position statement, where it is not yet feasible to fully balance all of the *Hubbard* factors or they do not yield a clear result, it is well within the Court's discretion to defer the decision whether to unseal particular exhibits or testimony until after trial. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 28. The parties can always submit a redacted version of an exhibit or transcript after they

---

[2] Because the DOJ Plaintiffs elected to disclose their challenges overnight, one business day before the September 1 pretrial conference, it was not feasible for Google to provide further declarations in support of its position with respect to each of these documents. As discussed below, however, certain of the documents at issue were addressed by the declarations Google provided to the Court on August 10, and all of the categories in dispute were addressed by those declarations in general terms and in the context of specific documents that include comparably sensitive information. Google is prepared to supplement the record with further declarations to the extent necessary.

2

have a more complete picture of the factors' application, but once commercially sensitive information is disclosed in open court, the resulting harm to the party's competitive standing cannot be undone.

Second, the DOJ Plaintiffs ignore the fact that Google has accounted for the *Hubbard* factors to the full extent possible at this juncture, including by agreeing to unseal reams of legitimately confidential material to maximize the openness of the proceedings. Although Google will not burden the Court by submitting all of the confidential documents identified by Plaintiffs that it agreed to unseal, it bears mention that even among some of the exhibits that the DOJ Plaintiffs challenge, Google has already agreed to unseal the vast majority of the information it was asked to review. In a number of instances, the DOJ Plaintiffs' only quibble involves a limited redaction to a particular number or detail within a voluminous document, which should in no way impede Plaintiffs' ability to present their case.

A. **Google's Agreements**

The five agreements with Apple and certain Android OEMs identified by the DOJ Plaintiffs should remain sealed.

As explained in Google's August 9 position statement and the accompanying declarations of Elizabeth Daly and Sang Eun Lee, disclosure of the precise substantive terms of the agreements would harm Google's competitive standing by allowing competitors to negotiate with the same counterparties with knowledge of the terms they reached with Google. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 37-39; Aug. 7, 2023 Declaration of Elizabeth Daly (Daly Decl.) ¶¶ 5-6 (addressing UPX5314); Aug. 8, 2023 Declaration of Sang Eun Lee (Lee Decl.) ¶¶ 5-8 (addressing UPX5530). Disclosure would also harm Google's competitive standing in future negotiations with all of its current partners by giving them access to the party-specific terms agreed to with counterparties such as Apple and Samsung. As Ms. Daly's declaration

3

explained, these kinds of details are commercially sensitive and generally are not even shared among the different groups of Google employees who negotiate with Apple, on the one hand, or Samsung, on the other.  *See, e.g.*, Daly Decl. ¶ 8.  Confidential commercial negotiations are commonplace, and there is no basis for effectively inhibiting Google's ability to engage in them going forward.  *See* Aug. 9, 2023 JSR (ECF No. 636) at 37-39.

Furthermore, unsealing the agreements is by no means necessary to facilitate the public's right to access judicial proceedings.  As the Court observed in addressing a similar request from the DOJ Plaintiffs on August 11, "the general terms are a matter of public record," and the Court "know[s] what the provision says and what we're fighting over and what it means."  Aug. 11, 2023 Hr'g Tr. 43:8-24.  Moreover, to facilitate Plaintiffs' presentation of their case, Google has agreed at Plaintiffs' request to unseal numerous documents characterizing the agreements.  And if Plaintiffs need to direct a witness's attention to a particular term or obtain confirmation that a document is in fact the agreement at issue, they can do that without displaying the agreement publicly or reading from it verbatim.  The dispute essentially boils down to whether the DOJ Plaintiffs can publicize the precise language of individually negotiated terms with different counterparties.  To the extent that is even a line of inquiry they want or need to pursue, the harm to Google's competitive standing would be significant and would outweigh any countervailing considerations.

**B.     The Negotiation of Google's Agreements**

Disclosure of internal Google documents reflecting the negotiation of specific agreements would present all of the same competitive harms described in the preceding section in relation to Google's competitors and its other partners.  In addition, such disclosure would unjustifiably harm Google's competitive standing in relation to future negotiations with the party that is the subject of the analysis or proposal.  As Google explained in its response to Plaintiffs' prior round

of exemplars, Google's ability to engage in standard business negotiations with a current partner in the future would be unjustifiably compromised by disclosure of the proposals or potential responses that its employees deliberated about internally. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 39-40; Daly Decl. ¶ 9.

With that said, Google has individually reviewed the hundreds of documents identified by Plaintiffs and applied targeted redactions to the extent possible, which is evident from the very documents the DOJ Plaintiffs submitted. For example, Google left unredacted the vast majority of UPX0560, an internal email exchange about negotiations with Apple over the agreement at issue in this case. The highly targeted redactions address only specific financial information that, if disclosed, could harm Google's competitive standing in relation to competitors and counterparties, including Apple. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 39-40; Daly Decl. ¶ 9.

      C.     **Summaries of Agreements and Strategy**

For the reasons Google has already provided, disclosure of Google employees' internal considerations of possible strategic courses of action or potential points of discussion with partners present all of the same unjustified risks to Google's competitive standing. For example, an internal consideration of how to respond to a partner's questions (such as UPX0309) raises the same kinds of competitive concerns as an internal consideration of which contract terms to propose or how best to negotiate them. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 39-40; Daly Decl. ¶¶ 9-10; Lee Decl. ¶ 9.

Again, however, Google has undertaken an individualized assessment and unredacted much of the information that the DOJ Plaintiffs apparently seek to introduce at trial. For example, Google agreed to unredact essentially all of the 14 pages of UPX0123 that Plaintiffs asked it to review, including specific estimates and metrics. Its targeted redactions applied only

to a couple of non-public financial metrics that do not impede Plaintiffs' ability to examine a witness with the document in open court. Similarly, in UPX0134, Google redacted only a short passage relating to confidential contract terms that differed among particular partners, which again enables the DOJ Plaintiffs to conduct an open-court examination using the document. As Google has previously indicated, it has unsealed many examples of what Plaintiffs characterize as "summaries and strategy" of the agreements at issue. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 39. The balance tips the other way, however, when the document reflects a Google employee's discussion of considerations or strategies specific to a particular competitor or counterparty. *E.g., id.* (describing the same approach to UPX0574, which was submitted to the Court on August 10 with Ms. Lee's declaration).

D.  **Search Advertising Auction Descriptions**

As Google explained in its prior submission, many of the inner workings of its ads auction should remain confidential to guard against unjustified harm to its competitive standing. Google has invested in its own proprietary techniques, and neither competitors nor entities seeking to disrupt the orderly operation of the ads auction should have access to such information. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 33-35; Aug. 9, 2023 Declaration of Michael Zwibelman (Zwibelman Decl.) ¶¶ 9, 11-12.

For example, UPX0010 is a confidential briefing submitted to a foreign regulator for the express purpose of describing certain non-public and sensitive aspects of the search ads auction. Formulas and descriptions of the kind that appear on the pages ending -061 through -063 are the product of Google's proprietary research and development, and its competitive standing would be harmed by public disclosure to companies such as Microsoft and Meta that also engage in the confidential development of digital ad auction technology.

As with every other category, however, Google has conducted a passage-by-passage review for the purpose of unredacting higher-level information. Based on further consultation with an author of UPX0010, Google will unredact several additional passages that do not pose the same risk described in the prior paragraph. And in response to the DOJ Plaintiffs' request (made for the first time in their submission to the Court), Google will unredact the page ending -388 of UPX0012 because it does not contain the kind of commercially sensitive non-public financial information that appears on the page ending -384 (and which is therefore properly redacted). *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 41-42.

### E.      Non-Confidential or Public Information

Finally, Plaintiffs' characterization of their last three challenged documents as "non-confidential or public" misses the mark.

First, Google reviewed every page of UPX0001 at the DOJ Plaintiffs' request and agreed to leave every passage unredacted with the exception of two specific numbers that Google has not disclosed to the general public, namely, the number of queries Google received at a point in time and the number of webpages it crawled each day at a point in time. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 41-42; Aug. 9, 2023 Declaration of Erin Simon (Simon Decl.) ¶¶ 15-16. As with a number of the other documents submitted by the DOJ Plaintiffs, these highly targeted redactions are reasonable and do not impede an open-court examination.

Second, UPX0408 is a confidential, internal assessment of certain competitive market conditions and opportunities as well as a description of potential product ideas. As Google's previous submission explained, recent internal evaluations of potential responses to a competitor's marketing tactics or product development decisions are often sealed, even if they are based on publicly available information about the competitor. *See, e.g.*, Aug. 9, 2023 JSR (ECF No. 636) at 35-36. And as one of Google's declarants explained, disclosure of such

7

internal assessments would allow competitors to copy Google's proposals or attack its reputation based on partial disclosures of an employee's internal evaluations. *See* Simon Decl. ¶¶ 10, 12. However, with respect to this particular document (which the DOJ Plaintiffs did not raise with Google prior to their filing), Google is in the process of rereviewing the document to remove the redactions to portions that consist solely of compilations of publicly accessible material about Google and competitors.

    Third, UPX0697 is an internal Google document that contains commercially sensitive material, but Google's response was based on an apparently mistaken interpretation of which specific pages the DOJ Plaintiffs sought to unseal. Google has no objection to unsealing the pages ending -658 and -666, notwithstanding the fact that the latter is irrelevant to the issues in the case.

Dated: August 31, 2023　　　　　　　　　　Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800

screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*