```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA, ET AL.,  )
                                   )
          Plaintiffs,              )
                                   )   CV No. 20-3010
      vs.                          )   Washington, D.C.
                                   )   September 1, 2023
GOOGLE LLC,                        )   3:00 p.m.
                                   )
          Defendant.               )
_____)



                       TRANSCRIPT OF
              PRETRIAL CONFERENCE PROCEEDINGS
            BEFORE THE HONORABLE AMIT P. MEHTA
               UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For DOJ Plaintiffs:              Kenneth M. Dintzer
                                 U.S. DEPARTMENT OF JUSTICE
                                 1100 L Street, NW
                                 Washington, D.C.
                                 (202) 307-0340
                                 Email:
                                 kenneth.dintzer2@usdoj.gov

                                 Jeremy M.P. Goldstein
                                 U.S. DEPARTMENT OF JUSTICE
                                 450 Golden Gate Avenue
                                 Room 10-101
                                 San Francisco, CA 94102
                                 (415) 934-5300
                                 Email:
                                 Jeremy.Goldstein@usdoj.gov

                                 Karl Edward Herrmann
                                 U.S. DEPARTMENT OF JUSTICE
                                 Technology &
                                 Financial Services Section
                                 450 Fifth Street, NW
                                 Washington, DC 20001
                                 202-476-0316
                                 Email: karl.herrmann@usdoj.gov

                                 Sarah Bartels
                                 U.S. DEPARTMENT OF JUSTICE
                                 Antitrust Division
                                 450 Fifth Street, NW
                                 Washington, D.C. 20530
                                 (202) 710-0047
                                 Email: sarah.bartels@usdoj.gov

                                 David E. Dahlquist
                                 UNITED STATES
                                 DEPARTMENT OF JUSTICE
                                 Antitrust Division
                                 209 South LaSalle Street
                                 Suite 600
                                 Chicago, IL 60604
                                 (202) 805-8563
                                 Email:
                                 david.dahlquist@usdoj.gov

```
APPEARANCES CONTINUED:

For Plaintiff
State of Colorado:              Jonathan Bruce Sallet
                                COLORADO DEPARTMENT OF LAW
                                Consumer Protection Section,
                                Antitrust Unit
                                Ralph L. Carr
                                Colorado Judicial Center
                                1300 Broadway
                                Suite 7th Floor
                                Denver, CO 80203
                                (720) 508-6000
                                Email: jon.sallet@coag.gov

                                William F. Cavanaugh, Jr.
                                PATTERSON BELKNAP
                                WEBB & TYLER LLP
                                1133 Avenue of the Americas
                                Suite 2200
                                New York, NY 10036-6710
                                (212) 335-2793
                                Email: wfcavanaugh@pbwt.com

For Defendant Google:           John E. Schmidtlein
                                Graham Safty
                                WILLIAMS & CONNOLLY LLP
                                725 12th St., NW
                                Washington, D.C. 20005
                                (202) 434-5000
                                Email: jschmidtlein@wc.com

For Non-Party Petitioner
Patrick Chang
Samsung Next LLC:               Juan Arteaga
                                CROWELL & MORING LLP
                                590 Madison Avenue
                                New York, NY 10022
                                (212) 803-4053
                                Email: jarteaga@crowell.com
```

APPEARANCES CONTINUED:

Court Reporter:                 William P. Zaremba
                                Registered Merit Reporter
                                Certified Realtime Reporter
                                Official Court Reporter
                                E. Barrett Prettyman CH
                                333 Constitution Avenue, NW
                                Washington, D.C. 20001
                                (202) 354-3249

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

2         COURTROOM DEPUTY:  Good afternoon, Your Honor.

3    This is Civil Action 20-3010, United States of America,

4    et al., versus Google LLC.

5              Kenneth Dintzer for the DOJ Plaintiffs.

6              Jonathan Sallet and William Cavanaugh for

7    Plaintiff States.

8              And John Schmidtlein on behalf of Google LLC.

9              THE COURT:  All right, good afternoon, everyone.

10             I think this room has kicked up the D.C. economy a

11   little bit.

12             All right.  So we are here for our Pretrial

13   Conference after, how many months has it been, folks?

14             All right.  We're on the cusp of trial, which is

15   very exciting.

16             All right.  So we have got a number of matters we

17   need to take care of this afternoon.  I think we had -- we

18   did forward sort of an order of operations of what needs to

19   be discussed.

20             Just to reiterate it, I've sort of got five

21   things, but none of this is to the exclusion of what you all

22   want to raise and discuss, but there are a handful of

23   matters in the parties' joint submission.  There are,

24   I think, four pending motions in limine, the motions to

25   quash filed by Apple and Samsung, there's a confidentiality

1   issues, and then I've just got a short list of trial

2   logistics matters that I want to discuss with everybody,

3   okay?

4              So why don't we just start with the joint

5   submission issues.  There are --

6              Bear with me.

7              Sorry, everyone.  Just bear with me.

8              Okay.  Here we go.

9              All right.  So in terms of the pretrial disputes,

10  we just got communications with witnesses while they're on

11  the stand, additional exhibits, adverse witnesses, and then

12  Google's disclosures.

13             So let me just -- I'm going to just essentially

14  either rule or give you my views on this and then tell me if

15  you've got a problem with it.

16             So with respect to communications with witnesses

17  on the stand, you know, my ordinary rule in most cases, and,

18  frankly, I don't think we ought to deviate from it here, is

19  the sort of ordinary rule on witnesses.

20             Once somebody is on the witness stand, there is to

21  be no contact about the witness' testimony, past or

22  anticipated, unless leave of court is sought to do so.

23             So if there is a good reason, if there's good

24  cause to communicate with a witness who's on the stand about

25  substantive matters, you can ask me and we can discuss it.

1    But as the default, the rule is, you may not do so, okay?

2            Anybody got any questions or concerns about that?

3            MR. SCHMIDTLEIN:  Your Honor, I guess, in light of

4    your ruling, we will raise it if we think that there are,

5    like, a particular circumstance.

6            The one that I think, you know, we envision it

7    could or it may not come up so we don't sort of need to deal

8    with it in advance, let's say we've got a witness because,

9    for the reasons we've discussed, we're trying to get these

10   witnesses in and out in one sitting.  If they're on direct

11   or cross or whatever with a witness, it's Friday afternoon,

12   you know, we're going to put them on really on a direct that

13   may be unrelated.

14           THE COURT:  Right.

15           MR. SCHMIDTLEIN:  The fact that I can't talk to

16   them all weekend about tweaking my direct of them, I might

17   come to you and ask for that dispensation.

18           Also, obviously, in the ordinary course, that's

19   not going to be an issue for us.

20           THE COURT:  Right.

21           That's why I thought we'll leave the default rule

22   to be the ordinary rule and if there's a reason to seek

23   exception, you'll let me know.

24           MR. SCHMIDTLEIN:  We like defaults, Your Honor.

25   Thank you.

1          THE COURT:  That's really funny.  I hope everybody

2     caught that.  I think that now will be in the opening, by

3     the way, of the plaintiffs.

4          MR. DINTZER:  We'll stipulate to that.

5          THE COURT:  All right.

6          In terms of additional exhibits, on this one I do

7     agree with Google.  I'm not going to sort of just give carte

8     blanche and give you 150 additional exhibits that you want

9     to introduce that aren't on your list.  The list is the

10    list.  I understand there are vagaries that happen during

11    trial.  And also no matter how carefully you might prepare

12    for witnesses and to make sure your exhibits are all on your

13    list, there may be reasons why you've left something off.

14    I can't imagine there are 150 of those reasons.

15         So I'll treat this in the same way that we'll

16    treat the rule on witnesses, that if there are issues that

17    come up, if there are exhibits that you've, after further

18    reflection, given what somebody has said, you want to

19    introduce that's not on the exhibit list, I will be flexible

20    about that, but let's all operate from the same play sheets

21    without sort of leaving open-ended numbers like 150 or

22    whatever the case may be, okay?

23         Mr. Dintzer.

24         MR. DINTZER:  Just a clarification, Your Honor.

25         So do we understand the Court saying that, as of

1  right now, there won't be any more additions to the exhibit

2  list unless they're brought to the Court's attention?

3         THE COURT:  What I don't know is -- I can't

4  remember, and you'll forgive me -- is there a deadline by

5  which -- there is a deadline, I presume, by which the --

6         MR. DINTZER:  We've already passed the deadline.

7         THE COURT:  We're past.

8         MR. DINTZER:  Yeah.

9         THE COURT:  So I think the short answer is yes.

10        MR. DINTZER:  Okay.

11        THE COURT:  And let's just -- and, again, I'm not

12  going to be -- well, let's just put it this way:  I'll be

13  flexible; I'll hear you out.

14        MR. DINTZER:  The current --

15        I take it back, Your Honor.  I've been corrected.

16  The current deadline is -- expires on the 5th.

17        THE COURT:  Okay.

18        MR. DINTZER:  And I think that that was what was

19  represented by both parties in the order so that we would --

20  we would be comfortable sticking with that, and then, as

21  Your Honor says, and so we just wanted to clarify that.

22        THE COURT:  Sure.

23        So the 5th is the deadline to finalize exhibit

24  lists, and then we'll take it as it comes after that.

25        MR. DINTZER:  We appreciate that.  Thank you,

```
 1    Your Honor.
 2              THE COURT:  All right.
 3              In terms of examination of adverse witnesses, let
 4    me make sure I understand, first of all, Google's
 5    positions -- position with respect to its former employees
 6    and not that what was in the footnote was just a --
 7    something that you had proposed but something that you still
 8    agree on; and that is, you have agreed to allow
 9    cross-examination by the plaintiffs of former Google
10    employees on topics relating to their employment, correct?
11    Employment at Google?
12              MR. SCHMIDTLEIN:  Yes, Your Honor.
13              There's, I think, a relatively small number of
14    witnesses that may be at issue here.
15              We've got two former employees who are --
16    relatively recently left the company.  They were employees
17    at the time they were deposed.  We have no issue with
18    respect to those folks.
19              THE COURT:  Right.
20              MR. SCHMIDTLEIN:  But there are several witnesses
21    that sort of fall outside that category.  There's one
22    witness who left Google in 2011.
23              THE COURT:  Right.
24              MR. SCHMIDTLEIN:  We have another --
25              THE COURT:  Well, let me interrupt you,
```

1   Mr. Schmidtlein, because I think I can short-circuit this.

2           If you agree that formal employees, particularly

3   those who are employees at the time of their deposition, can

4   be crossed, then that helps us a lot.

5           Am I correct in terms of -- are you putting a time

6   limit on, in your own mind, in terms of when an employee

7   left as to whether they can be crossed about their work at

8   the time they were at Google?

9           MR. SCHMIDTLEIN:  Yes.  An employee who left

10  Google in 2011 and who has no relationship with the company,

11  we don't think they should be able to cross.

12          THE COURT:  Okay.

13          MR. SCHMIDTLEIN:  They've also got a witness who

14  is now working at Apple, and we don't think the witness

15  should be presumed adverse as well.

16          THE COURT:  Right, yeah.  Okay.

17          Do you want to be heard, Mr. Dintzer?

18          MR. DINTZER:  Thank you, Your Honor.

19          So just to put some names so we'll make sure we're

20  all talking about the same people.

21          As I understand what counsel has said, we started

22  with five.  I believe they've taken Mr. Yu and Mr. Leeman

23  off the table.

24          THE COURT:  Is that correct?

25          MR. SCHMIDTLEIN:  That's correct.

1          MR. DINTZER:  So that leaves Mr. Barton, who I'll

2     start with.

3          During the deposition of Mr. Barton, the

4     defendants asserted the common interest privilege between

5     them and Mr. Barton, and our take is that they have

6     basically -- I mean, as the Court itself has held in the

7     Molock case, that privilege requires a common adversary,

8     that's the basis of cross or leading questions on direct.

9          THE COURT:  And can you just give me some color on

10    who he is and when he left the company?

11         MR. DINTZER:  Yes, Your Honor.

12         He is a former Google employee.  He -- one of his

13    responsibilities was working through and negotiating

14    distribution agreements.  He will be examined about his time

15    at the company.

16         THE COURT:  Which was when?

17         MR. DINTZER:  It led up to 2012.  It was for a

18    number of years.

19         MR. SCHMIDTLEIN:  He left in 2011.

20         MR. DINTZER:  And I don't -- for a number of years

21    before that.

22         THE COURT:  And let me just interject again.

23         I mean, Mr. Schmidtlein, have you asserted common

24    interest privilege with respect to all former Google

25    employees?

1          MR. SCHMIDTLEIN:  Not all former Google employees.

2    They've got a former Google employee who worked for and

3    started a competing search engine.

4          THE COURT:  Maybe I should be -- I'm sorry,

5    I should be more precise.

6          With respect to the three that I'm about to hear

7    about:  Barton -- who were the other two?

8          MR. DINTZER:  So it's Mr. Barton and

9    Mr. Giannandrea they have asserted.

10          THE COURT:  Okay.

11          MR. DINTZER:  We're going to withdraw our request

12    for Mr. Ramaswamy, so we'll take that off the table.  So

13    that would leave us --

14          So they have withdrawn their claim on Mr. Yu and

15    Mr. Leeman, and they have asserted common interest for

16    Mr. Barton and Mr. Giannandrea.

17          THE COURT:  Okay.

18          So, Mr. Schmidtlein, if you had asserted common

19    interest with these particular witnesses, why shouldn't they

20    be treated as essentially aligned with Google?

21          MR. SCHMIDTLEIN:  I mean, the common interest was

22    asserted so that we could at least have a privileged

23    conversation about their -- in advance of their depositions

24    with them so we could sort of work with them, provide

25    documents to their counsel -- they are both independently

1   represented by separate counsel -- and to be able to work

2   through potential privilege issues with them in advance of

3   their deposition.

4        So we did have a common interest with their

5   individual counsel to allow us to have those communications

6   without the Department inquiring into all these

7   communications.

8        THE COURT:  Okay.

9        MR. DINTZER:  And, I mean, along with the fact

10  that they are former Google employees, we're going to ask

11  them about the time they prepped with Google counsel.

12  We believe that that's enough to check that box, Your Honor.

13       THE COURT:  So here's where I come out.  I mean,

14  and this will be apparent in a moment.

15       It is my preference, unless the rule clearly calls

16  otherwise, is to hear direct examination of witnesses that

17  are called by a particular party.

18       And so even though these are former employees of

19  your adversary, my preference is that we would -- you would

20  direct them.  If for reasons that become apparent on the

21  stand they're not cooperating in terms of their answers and

22  you're finding it difficult to get answers from them, I'll

23  permit you to then cross at that point.

24       MR. DINTZER:  Thank you, Your Honor.

25       THE COURT:  Okay?

1           Let's -- while you're there, Apple, you're going

2    to have to direct those witnesses.  The fact that Google and

3    Apple, in your view, have financial interests aligned,

4    I don't think gets you there.  So "no" on Apple witnesses.

5           Here's my separate question, which you all haven't

6    raised, which is:  What have you all talked about, if at

7    all, about Google's examination on cross as to its own

8    witnesses -- as to its own employees, excuse me?

9           MR. DINTZER:  Google hasn't raised the issue.

10          And we don't know -- we assume since they're going

11   to be preparing those witnesses; that they wouldn't have a

12   need to cross their own witnesses.  And so if they do --

13          THE COURT:  Well, I think that's probably not a

14   good assumption.  I think they're going to cross every

15   witness from Google that you call, they're going to want to

16   cross-examine, and then in some cases, because it's not

17   within the scope of your direct, direct them.

18          MR. DINTZER:  I'm sorry, I meant with leading

19   questions.

20          THE COURT:  Yes, that's what I mean.

21          MR. DINTZER:  Okay.

22          So we would object if they're going to use leading

23   questions with witnesses that they've prepared, then we

24   would object to them using leading questions because they've

25   prepared the witnesses.

1          We do have an issues about them "directing," we'll

2    get to that.  But with respect to them using leading

3    questions to examine their own employees who they've

4    prepped, we would object to that.

5          THE COURT:  Okay.

6          Mr. Schmidtlein, your view.

7          MR. SCHMIDTLEIN:  I think, as a general matter,

8    our intention is to direct our employees.

9          Just as a matter of expediting things and making

10   things efficient, to the extent that we, at the conclusion

11   of their examination, we sort of want to cross, if you will,

12   or sort of go back and point to really specific issues or,

13   you know, kind of go back over some very particular things,

14   Your Honor is well aware, like that line between sort of

15   leading or sort of trying to get somebody to address

16   something very particular that was already addressed, we

17   would hope we would get a little bit of flexibility in doing

18   that type of thing.

19         THE COURT:  Okay.

20         MR. SCHMIDTLEIN:  But we fully intend to direct

21   our witnesses.

22         THE COURT:  Okay.

23         And just to be clear, you're going to direct your

24   witnesses that are called by plaintiffs?

25         MR. SCHMIDTLEIN:  That's correct.

1          THE COURT:  On what is otherwise your

2    cross-examination of their calling witnesses?

3          MR. SCHMIDTLEIN:  Again, with a little bit of

4    leeway to try to do those types of things --

5          THE COURT:  Right.

6          MR. SCHMIDTLEIN:  -- our plan or anticipation

7    would be to do direct.

8          THE COURT:  I just wanted to clarify that because

9    I think people have different views of how the rule

10   operates.

11         I share the view you do which is, if an

12   adversary -- if an employee of -- is called by the adversary

13   and the sort of cross by the employer should be done through

14   a direct examination instead of a cross-examination -- or

15   through leading questions, I should say.

16         Okay.  All right.

17         And then the last issue is this paragraph 2 issue

18   of the August 4th order and the order of Google's witnesses.

19         So where are we on that issue?  It sounds like

20   Google has provided a list of the witnesses, there's some

21   uncertainty as to how long and subject matters.  Is that

22   where we are?

23         MR. DINTZER:  Your Honor, the concern is that what

24   Google has provided simply doesn't meet what the Court

25   asked.

1          The Court asked Google to -- after they saw our

2    list, is to come back and tell us which of these witnesses

3    they are going to direct so that we -- I mean, among other

4    things, so we can plan for time and the like and how long

5    they needed to direct them.  They did that with one witness.

6          And with the rest they said, "Not having seen

7    plaintiffs' directs, it is possible that our examination of

8    some witnesses may exceed the eventual scope of plaintiffs'

9    direct.  We reserve our rights in that regard."  So they

10   basically punted and didn't give us that information.

11         As Mr. Schmidtlein likes to say, this has been

12   going on a while, this case.  They know what we know, they

13   know what we've seen in depositions.  If they plan to direct

14   witnesses, then they should tell us and they should give us

15   a reasonable approximation of time.

16         Instead what they've said is, on the approximation

17   of time, and this is really important, Your Honor, is they

18   have said basically, we should expect that they'll take the

19   same amount of time that we take.  So for every single

20   witness -- so, for example, the first witness, we've

21   allocated three hours.  They've told us expect three hours.

22   That's not tell -- up to three hours.  That's not telling us

23   how long they're going to take, which makes it almost

24   impossible for us to schedule a weeks' worth of witnesses --

25   I mean, these are all executives, and give them some kind of

1    confidence about when they're going to go on the stand.

2              And the Court's order was specific that they

3    should tell us, are they directing and how much time they're

4    going to take, and if not, presumably they're going to take

5    a good deal less than they've asked us to set aside.

6              MR. SCHMIDTLEIN:  Your Honor, here's the real

7    issue.  They have provided time estimates that are far

8    longer than I think is reasonable.

9              In light of that, our reaction is, gee, we're

10   probably going to be -- the testimony we would probably

11   elicit from these people, if they're really going to go that

12   long, I assume it's going to be within the scope of, you

13   know, however many hours they're going to go.  We may wind

14   up going a lot less than that, but having been given two and

15   a half, three and a half, between both sides, hours for some

16   of these witnesses, we don't know.

17             But I thought the point of this -- I thought the

18   point of what our conversation previously was, if they give

19   you a witness and they say, we're going to take an hour with

20   them, and, you know, Google, that you've got a much longer

21   presentation in mind, you have to tell them you're going to

22   take three hours with the witness.

23             And that's -- as it turned out, once we got their

24   list, there's one witness who falls into that category, and

25   we've identified that witness.  The rest of them, we're

1    going to take either at or, frankly, less, hopefully, of the

2    time, and that's really kind of where we are.  We're not

3    trying to hide anything, but there's a lot of uncertainty

4    created by their estimates.

5                THE COURT:  Sure.

6                I think the question in my mind is whether at this

7    point there are witnesses on their list that you -- some of

8    this is difficult from the perspective of being the

9    defendant, because the precise scope of their direct

10   examination won't be evident until it happens.  And so what

11   you might otherwise think, well, if this doesn't come out on

12   direct, or it's not within the scope of the plaintiff's

13   direct, then we're going to have to have a direct.  So I can

14   understand why Google's at a slight disadvantage.

15               I think the question -- the most important

16   question in my mind is whether there are witnesses on that

17   list, and you've identified one, where are there others who

18   you have a strong belief at this point that whatever their

19   examination, you expect that you're going to want to keep

20   that person on the stand for some period of time longer than

21   what they're going to do, in addition to your

22   cross-examination of that witness.

23               MR. SCHMIDTLEIN:  Yeah.

24               And the answer to that is no.

25               There's one witness that clearly stands out.

```
 1    We've identified that witness, and we've told them how much
 2    time we expect to take with that witness.
 3              As to the other witnesses, we expect to be cross
 4    and direct; however, you sort of cut that up, to be no
 5    longer than the amount of time they take, and, candidly, it
 6    could be much shorter depending on what they do and how the
 7    testimony goes.
 8              So that's -- we thought that was the spirit of
 9    what you were asking for and that's how we've responded.
10              THE COURT:  Okay.
11              Mr. Dintzer.
12              MR. DINTZER:  Thank you, Your Honor.
13              It's important that the Court understand that
14    Google has reserved more time in our case than we have.
15              And so they -- I mean, we have -- in a typical
16    case of this type, you know, you assume about half as much
17    time on cross as on direct.  They've now said basically
18    they're going to take the same amount of time on direct, and
19    with one witness, longer on direct.
20              So if they take all the time that they say, they
21    are, I mean, vastly exceeding any reasonable approximation
22    that we would have made to allocate for them for cross.  And
23    so the time is going to push.  I have no idea -- since they
24    haven't given us any information except for what we've told
25    you, I have no idea if they're actually going to take that.
```

1        But we have done -- we've sharpened our pencil, we

2   came in with good-faith estimates on these witnesses, we've

3   pushed as many as we can into witness designations so we're

4   not calling them.  But we -- I mean -- and a lot of this is,

5   we have witnesses, important people to their organizations

6   who say, when am I going on, and our answers is, we can't

7   even tell you the week.

8        THE COURT:  Right.

9        Look, here's what I would say, which is, no matter

10  how much I asked you all to script this out, it is

11  unrealistic to ask you to do so at this point.  I mean, the

12  demands are greater on the plaintiffs because you go first,

13  and so I think appropriately the demands are greater on you

14  than the defense because they are in a reactive position.

15       Look, I am going to ensure that whatever

16  examination is done by both sides is done efficiently and

17  hits the salient points.  If it starts getting repetitive,

18  if it starts trotting over ground that seems irrelevant to

19  me, I will let you know and we will get things moved on.

20       If there are issues concerning when your witnesses

21  are coming and going that you can flag in advance, then

22  we will do everything to make sure we can accommodate that.

23       But the reality is it's a trial, and I'm

24  sympathetic to the third parties in particular who are being

25  called and come here live.  And, yes, there's some

1    uncertainty, but there are other interests here, and it

2    seems to me those interests, in my view, counterbalance the

3    modest imposition it is creating for them.

4             So I think we'll all work together to make sure

5    that we're doing this in an efficient manner, that we're not

6    putting anybody out in a way that's truly unduly burdensome,

7    and I think we'll just do the best we can.

8             MR. DINTZER:  I appreciate that, Your Honor.

9             THE COURT:  Okay.

10            MR. DINTZER:  Thank you, Your Honor.

11            THE COURT:  All right.

12            So I think that, in a sense, maybe I ought to just

13   skip over the motions in limine and let's go to the motions

14   to quash the trial subpoenas.

15            I don't know if Mr. Sunshine is here.  There he

16   is.

17            MR. SUNSHINE:  I am, Your Honor.

18            THE COURT:  I'm happy to hear from you,

19   Mr. Sunshine, if you'd like to be heard.

20            I'll do as I often do in these matters is to share

21   my views with you.  And I don't think it will come as a

22   surprise what I'm about to say, which is as much as

23   I understand, there is an imposition on these individuals to

24   come across the country to testify.  I know it takes out of

25   their day, distracts from the business.  I recognize that

1   burden.

2          But I will just say the following:  Live testimony

3   is important to me because I'm the trier of fact.  And so

4   I have the opportunity, which juries don't usually get to

5   do, which is to ask questions, which I plan to do, and

6   I can't do that if I permit what the plaintiffs have

7   described as key witnesses to simply sit on the sidelines

8   and let me look at their deposition testimony.

9          MR. SUNSHINE:  I understand that, Your Honor.  Not

10  at all surprised to hear it.

11         I think what presents here is perhaps a little bit

12  of an unusual situation, given how much time the Apple

13  executives already put in.

14         So to my mind the question is what's the

15  incremental advantage of presenting this testimony live

16  versus seeing videotaped depositions compared to the

17  probative value on that piece.

18         And I think that our witnesses will, take Mr. Cue,

19  for example, Mr. Cue, who is a very senior executive at

20  Apple, runs pretty much half the company, reports directly

21  to Mr. Cook.  He's already given more than five days of his

22  professional time to this matter, being asked every possible

23  question by five different capable attorneys from the

24  plaintiffs, and requiring him to come here will be at least

25  three more days between prep and travel and testimony.  And

1    for what is the incremental probative value?

2           Your Honor, we pushed the plaintiffs as hard as we

3    could to say, what is it that you expect Mr. Cue to testify

4    that he hasn't already testified about, and the answer was

5    basically nothing, it was the same set of issues.

6           There's one sub issue nested into that problem,

7    which is the only thing that plaintiffs actually said to us

8    that was new was they want to use a credibility

9    determination by another Federal District Court Judge over

10   ten years ago who had an opinion about Mr. Cue's credibility

11   in another case, to use that to try and impeach him.

12          Your Honor, you'll make that your own credibility

13   determination.  They've already now cited to you the case,

14   so it's no secret.  We think that the purpose there is

15   really just to embarrass Mr. Cue.

16          THE COURT:  So I appreciate that.

17          I mean, look, I'm not going to allow anybody to be

18   called in just to embarrass them.  Plaintiffs here have

19   represented to me that he is a key witness for them.  The

20   reality is in cases like this, which you have been on the

21   other side of, you are, no doubt, interested in bringing

22   folks in who are third parties to try your case.

23          And we will do the best we can to make sure his

24   time is minimized.  We'll work with plaintiffs to make sure

25   he knows exactly when he's being called, he's called on the

1    day he's here, and to minimize the time he's on the stand

2    and do so efficiently.

3            I mean, I'll just say, you know, just to make a

4    clean record here, I'm not -- it's not 100 percent clear to

5    me that Rule 45 is the right standard.  I know you all have

6    cited it; District Courts seem to have relied on it.  Those

7    are mainly cases involving discovery subpoenas, and I think

8    trial subpoenas are, at least my mind, in a different

9    category, particularly when the judge is the trier of fact.

10           And so, again, I have weighed what the parties

11   have said and, ultimately, I think the benefit of having

12   live testimony and hearing from him, given his extensive

13   knowledge, I'm going to benefit from that far greater from

14   live testimony, with the ability to follow-up questions,

15   than not.

16           And so you can tell him that -- not to be mad at

17   you, you're just delivering the news, not creating it.

18           MR. SUNSHINE:  I'll let you know, Your Honor, if

19   that works.

20           Two very small points:

21           One is, I think we have agreement with the DOJ

22   that Mr. Cue would testify on the 26th of September and be

23   on and off in one day.  That would be greatly appreciated.

24           And then the last piece, Your Honor, is our third

25   witness, Mr. Perica, who fell into the same bucket that

1    Google and DOJ were talking about, about witnesses not

2    called.

3             We think, as a third party and as somebody who has

4    sat for depositions, there's deposition testimony available,

5    that DOJ should just let him go at this point.  I know you

6    set a high standard, but there really is no reason to keep

7    Mr. Perica on the hook.

8             THE COURT:  Okay.

9             But his deposition has been designated, correct?

10            And is -- I mean, look, what is the likelihood and

11   prospect of really needing him?  Because anybody that is

12   under subpoena, even if you're not going to call them,

13   has -- is affected in some way by the mere prospect that you

14   might call them.  And so the question is, how realistic do

15   you think it is you're going to call this gentleman?

16            MR. DINTZER:  Your Honor, at this time, he's not

17   on our lists that we've given Google of people we will call,

18   so he's not somebody that we expect to call as part of our

19   plans.

20            Historically, we found that having the best live

21   subpoena out for each of the potential witnesses is

22   something that's protected for us and keeps them -- if his

23   testimony for some reason becomes central, somebody says,

24   like, he did this, and we all agree that this is somebody

25   who the Court needs to hear from, then the existence of a

1   subpoena means that that's something that can happen without

2   everybody saying, well, whoa, this is a big seat change.  So

3   I mean, he's not on our schedule, we've told this to Apple.

4           THE COURT REPORTER:  Mr. Dintzer, please approach

5   a microphone if you're going to continue.

6           MR. DINTZER:  Thank you.

7           And as long as I'm on my feet, Your Honor, I just

8   want to make -- we would never tell a witness that we would

9   promise them to get him off the stand on a certain day,

10  because that, of course, is the province of the Court and

11  not us.

12          And so while we have said that we would call

13  Mr. Cue on the 26th, we have -- obviously we can't make any

14  promises because that's beyond -- given the other parties'

15  ability to cross and the Court's calendar, we obviously

16  couldn't promise something like that, so we have not.

17          THE COURT:  Okay.

18          So, look, I think we'll leave it here, which is,

19  I think we've got a standard in place of folks who are in

20  Mr. Perica's position.

21          If for whatever reason he is requested, I'll take

22  a hard look at it.  If it is extremely inconvenient, not

23  probable for him to get here, we'll figure it out.

24          You know, we can beam people in with not a whole

25  lot of advanced notice.  So I think you can tell him that it

1  is unlikely he is going to be needed live and so he should

2  go about his personal and professional life under that

3  assumption.  There is the possible but highly unlikely

4  chance that he could -- his testimony could be needed, but

5  he ought not to plan with that in mind, I'll just leave it

6  at that.

7            MR. SUNSHINE:  Thank you, Your Honor.

8            THE COURT:  Okay.

9            All right.  Let's talk about Samsung.

10           Is Juan Arteaga here?

11           There he is.  How you doing?

12           MR. ARTEAGA:  Good afternoon, Your Honor.

13           THE COURT:  Good afternoon.

14           My question is not for you first but for the

15  plaintiffs.

16           And I think it's really the states, maybe it's

17  DOJ, I don't know who's planning on calling Mr. Chang.

18           MR. DINTZER:  Yes, Your Honor.

19           THE COURT:  How much of his testimony is really

20  going to be the subject of hearsay objections?  I mean,

21  that's my concern.

22           If he's being brought in here -- and this is true

23  with any witness, not just him.  You know, he really ought

24  to be here testifying about things that are within his

25  personal knowledge.  I don't want to be fighting here about

1    whether, you know, something he's going to testify about is

2    an excited utterance because it was a really interesting

3    moment that happened in a negotiation.

4            MR. DINTZER:  We will not be digging that deep

5    into the hearsay bag, Your Honor, no.

6            These are -- I mean, there is a related question,

7    but we don't need to do it in the middle of this.

8            These are things he was directly involved with.

9            He was directly involved with a specific

10   investment and he will explain why he was involved and why

11   the investment was important and he was directly involved

12   with the extensive steps to make the investment work.  He

13   will be talking about things from personal knowledge.

14           He will also be talking, to some extent, about how

15   things he was told impacted what he did, and so not for the

16   truth but there are -- the two primary ones are first

17   person, personal knowledge.

18           THE COURT:  Okay.

19           I mean, as I say, as I understand it, the

20   sequencing of this is that he was involved in this venture

21   from an investment identification sort of startup, if you

22   will, seed-money standpoint and developing it, maybe I'm

23   mischaracterizing it; however, to the extent there were

24   decisions made about it, that wasn't his -- that wasn't him.

25           And then what I hear you saying is that to the

```
 1    extent he was told whatever the reasons were that were made

 2    for that business decision, it impacted what he did going

 3    forward.

 4              MR. DINTZER:  Yes, Your Honor.

 5              And we will have others who will talk, Google

 6    employees and employees of the startup, will talk about

 7    other aspects of it.  But he is an essential joinder and

 8    person to talk about -- to lay the groundwork for these

 9    items.

10              THE COURT:  Okay.

11              MR. DINTZER:  And so, I mean, yes, he's only

12    listed for an hour and we expect to take that hour with him

13    and we expect it to be productive for the Court.

14              THE COURT:  Okay.

15              MR. ARTEAGA:  Your Honor, if I can briefly

16    respond.

17              Everything that Mr. Dintzer just listed as

18    justifying and imposing this burden on Mr. Chang was fully

19    covered during his daylong deposition.  Plaintiffs still

20    have not identified anything, let alone any important topic

21    that was not covered during his daylong deposition.

22              Mr. Dintzer's comment that they will have others

23    testifying about these topics proves our point, that they

24    don't need him live, for someone to fly across the country

25    within days of coming back from a nearly three-week trip in
```

1    Asia, business trip, during a critical time for his new

2    company, to ask him about things that can be fully covered

3    through his videotape deposition, documents, other

4    witnesses, presumably they're going to call the executives

5    from this investment company.

6              And so I would submit that those witnesses are

7    much more better positioned to explain the capabilities of

8    their technology and what capabilities were not integrated

9    into Samsung's devices.  And the fact that they're only

10   going to call him for an hour proves that he's not critical

11   to this case.

12             So they want him to take out all this time during

13   a critical time for his new company, which is a sole source

14   of income for his family, to fly down here for an hour's

15   worth of testimony, Your Honor.  We just don't think that

16   justifies the burden that they're seeking to impose on a

17   former employee of a non-party that never had an agreement

18   with Google.

19             THE COURT:  Got you.

20             Look, I'll reiterate what I said earlier with

21   Mr. Sunshine.  You know, my preference is for live

22   testimony.  I'm relying on the good faith of plaintiffs'

23   counsel to identify the witnesses that really matter to

24   them, and they've identified yours, and -- so your client.

25   And, you know, I just -- I'm not going to, absent compelling

1    circumstances and compelling reasons, essentially dictate to

2    them how they want to present their case.

3              And I appreciate the challenges that he may face,

4    but I also suspect he is more than capable of working

5    wherever he needs to, and often is used to traveling.

6              And I'm sorry to take him away from his family,

7    but I think on balance, again, my preference is for live

8    testimony.  They've identified him as somebody who's an

9    important witness, even if only for an hour.  There may be

10   important testimony he needs to give for an hour.

11             And so, you know, again, absent what I think are

12   really compelling circumstances that I think have not been

13   met here, I'm not inclined to relieve him of the obligation

14   of being here.

15             And, again, we'll do everything we can to make

16   sure he's in and out quickly, but, again, this is the nature

17   of litigation.

18             MR. ARTEAGA:  Your Honor, we understand the

19   Court's position.

20             The one thing we would ask is, and I hope that

21   plaintiffs would be open to this, is working with us on when

22   he is called, because they have proposed calling him within

23   days of him returning from a three-week trip to Asia, and

24   that just enhances the burden and complexity.  So hopefully

25   we can work together to try to find a date that's less

 1   burdensome.

 2            THE COURT:  Okay.  Sure, I would appreciate that,

 3   and I'm sure they will.

 4            MR. DINTZER:  Your Honor, we're working to --

 5   we're trying to thread the needle between his two trips, and

 6   so we have been talking to them and working with them.

 7            Part of the challenge with not knowing exactly

 8   what the defense is going to do is, we're here, we're doing

 9   our best.

10            And so we will do our best with -- and also we've

11   done a lot of c-suite executives and the like where we're

12   trying to accommodate everybody.  We will do our best to

13   accommodate this witness as well, Your Honor.

14            THE COURT:  Okay.

15            Well, look, if there are issues, disputes, I don't

16   want to really get involved in scheduling.  But if it really

17   presents an extraordinary challenge for your client, then

18   you'll let me know.

19            MR. ARTEAGA:  All right.  Thank you.

20            THE COURT:  I guess these were the motions to

21   quash the trial subpoenas, those motions have been denied.

22            Let's turn back to the motions in limine.

23            So starting with Google's motion in limine to

24   preclude evidence, testimony, or argument concerning

25   abandoned conduct allegations.

1           So let me just share with you my thoughts and then

2    I'm happy to hear from you.

3           So the plaintiffs' desire to present evidence

4    concerning the compatibility agreement or the -- are -- make

5    sense to me.  I mean, that has been part of the complaint.

6    During the presentation, this was presented as sort of a

7    three-legged stool set of contracts, and so it makes some

8    sense to me to hear about that.

9           The Android design, I'm a little bit more

10   skeptical of and here's why, because it -- the explanation

11   that's been given is that this, essentially, the gap, as

12   I understand it the government contends, or plaintiffs

13   contend, between Google's development of the Android

14   operating system and what's available as an open source, the

15   gap is wide enough that it's forcing or compelling OEM's to

16   sign MADAs that they might otherwise not sign if there was

17   greater sync between the two open-source designs -- or

18   between the two Android designs.  That seems to me and feels

19   to me like a conduct that was not at least argued at summary

20   judgment.

21          You know, there certainly was discussion about --

22   you know, I know it was in the complaint, Google had raised

23   this issue in its motion, plaintiffs had not really

24   responded.  And so my initial reaction is that this feels

25   like a new type of conduct that, although it may be alleged,

```
 1    really it was not addressed at summary judgment and I am
 2    viewing as perhaps something different than what -- a
 3    different type of an alleged anti-competitive conduct, okay,
 4    that is resulting in what you claim are anti-competitive
 5    effects.
 6          The Google Assistant, I think my view is, it falls
 7    a little bit somewhere in between in the sense that since
 8    it's actually part of the MADA itself and occupies a fairly
 9    narrow, if even perceptible distribution channel, I don't
10    know what the exact numbers are, maybe I'm wrong about that,
11    but you're shaking your head or yes, no.
12          MR. SCHMIDTLEIN:  Tiny.
13          THE COURT:  Right.  That's what I would have
14    figured.  I think most people use it to set their alarms and
15    play music.
16          And so, you know, I see this as a, you know,
17    something that is probably okay with me and, frankly, is not
18    going to really occupy much of our time.
19          So with that in mind, I'm happy to hear from you
20    and get your reactions.
21          Why don't we start with you, Mr. Dintzer, and why
22    don't we start with the Android.
23          MR. DINTZER:  I'm just going to introduce
24    Mr. Goldstein from our team will be addressing this,
25    Your Honor.
```

```
1              THE COURT:  All right, Mr. Goldstein, welcome.
2              MR. GOLDSTEIN:  Good afternoon, Your Honor.
3    I'll be brief.
4              I mean, to be, I think, blunt, none of these areas
5    are going to take a lot of time.
6              We're talking about a handful of questions on AOSP
7    in particular.
8              You know, there is an expert who may testify about
9    the options that smartphone vendors have when choosing which
10   operating system to license.  One thing he might mention is
11   that because of, you know, decisions that Google's made,
12   vis-à-vis AOSP, there's one fewer viable compelling
13   alternative to Google's proprietary apps and APIs.
14             THE COURT:  So you've described it consistent at
15   least with what my understanding is.
16             And would you agree with me then that this was
17   not -- you did not respond with the facts that you've just
18   proposed setting forth in your opposition in the motions for
19   summary judgment?
20             MR. GOLDSTEIN:  I mean, I don't think we needed
21   to.
22             I mean, this is --
23             THE COURT:  They moved for summary judgment on the
24   open-source claims that were in the complaint.
25             MR. GOLDSTEIN:  Yeah, I was going to say, you
```

1    know, as I think the summary judgment order understands,

2    it's never been -- an independent basis of liability.

3    I mean, this is sort of the part of commercial realities in

4    the background that explain why some of these contracts were

5    recorded.

6              THE COURT:  Okay.

7              I mean, look, yes and no.

8              I mean, if you're going to come in here into court

9    and suggest that there are certain types of conduct that are

10   causing anti-competitive effects in the market, you ought to

11   be pretty clear on what those are.

12             MR. GOLDSTEIN:  Yeah.

13             THE COURT:  And not sort of shift back and forth

14   between market realities and actual conduct that you are

15   claiming, because, at the end of the day, if you're right

16   about it or you have to convince me, then you're going to

17   turn around in the remedies stage and ask me to do something

18   about it.

19             So, you know, I am highly disinclined, based on

20   the description you've given me, even if it's a small part

21   of the case, to grant the motion on it, because, you know,

22   again, Google did move, and that was your opportunity to

23   come back and say, no, there is this testimony from our

24   expert that would suggest that this is another way in which

25   Google is creating anti-competitive effects, but you didn't

1    do that.

2            MR. GOLDSTEIN:  Yeah, I mean, I understand what

3    you're getting at.

4            I mean, just one more time:  It's not an

5    independent basis of liability.  So we're not saying that

6    this is nefarious, we're not saying this is bad conduct,

7    we're not saying that it's -- what basis of liability in

8    this case.

9            THE COURT:  Right.

10           MR. GOLDSTEIN:  It just is sort of commercial

11   realities that help explain why smartphone vendors might do

12   X instead of Y.

13           THE COURT:  Got you.  Okay.  All right.

14           MR. SCHMIDTLEIN:  Your Honor, let me just start

15   right there with that part of your discussion.

16           You are right, obviously, the ASOP stuff was in

17   the complaint.  It was also included in interrogatory

18   answers.  We asked them contention interrogatories to nail

19   down what is the anti-competitive conduct that you say is

20   the subject of these claims, and that was in the

21   interrogatories, which is why we moved for summary judgment.

22           They have an expert who wants to talk about

23   this -- I mean, they have an expert who wants to talk about

24   this.  It's awfully unusual to have an expert out there sort

25   of giving you little side -- interesting side notes.  This

1    is a significant portion of what this expert supposedly is

2    going to testify to.  We had moved for *Daubert* on that

3    expert and on this testimony.

4           So there is absolutely no basis at this point in

5    time to hear any more -- hear any more evidence about this

6    supposed conduct because they haven't shown it has any

7    anti-competitive effect.

8           THE COURT:  I'm going to exclude it because it

9    hasn't been raised.

10          It was a subject of summary judgment, plaintiffs

11   did not respond, and it seems to me in particular, because

12   this is "expert testimony" -- I might feel a little

13   different if you were to walk somebody in here who actually

14   works in the real world and explains this.  But to have a

15   professor come in here and pontificate that because of this

16   gap, this might happen, you know, I'm not so sure that's

17   really going to sway me.

18          But more importantly, you know, again, this was

19   teed up as a matter of complaint, discovery, summary

20   judgment, there was no response, I granted summary judgment

21   on it, and so I will grant the motion in limine as to that

22   issue.

23          And what do you think about the other two?

24          MR. SCHMIDTLEIN:  You know, the Google Assistant

25   allegations are really the exact same.

1          I mean, this was -- at the beginning of this case,

2     they were talking about the Google Assistant as some major

3     aspect of delivering search, and that, you know, it was

4     going to be, you know, a nascent new way that impacted

5     search and everything else.

6          Well, once we took all the discovery we found out

7     that, in fact, these products -- and, you know, we took

8     discovery from Apple with Siri and Amazon with Alexa and

9     Google Assistant, and what the evidence showed was a very,

10    very tiny, tiny sliver of web search is actually going on on

11    these devices.

12         And so Google's distribution of those devices or,

13    you know, whether it's included in the MADA or any other

14    type of agreement, can't possibly be anti-competitive, and

15    that's why we moved on it.  They didn't contest it.

16         So now they seem to be saying, well, we want to

17    come in and sort of show that, like, you know, you were able

18    to sort of get people to take that and somehow it's intent

19    evidence having to do with search or something else.

20         It's almost like, I don't know if it's 404(b) or

21    whatever it is they're going to try and -- whatever they've

22    sort of called an alternative audible as to what's the

23    relevance of this is, after they've failed to establish this

24    as anti-competitive conduct.

25         And, again, we think that's precisely why we moved

```
 1    for summary judgment and why we've moved in limine on it.
 2    This stuff is no longer relevant.
 3              And it doesn't matter if they have five questions
 4    about it or 25 questions or 105 questions, it shouldn't come
 5    into the case and it shouldn't be part of the trial.
 6              The ACC, you know, they had an independent
 7    anti-competitive conduct theory relating to the ACC as well,
 8    and that fell away in discovery.
 9              They had expert witnesses who sort of tried to
10    opine a little bit around it as well.  It wasn't credible,
11    and they walked away from it at summary judgment.
12              So, again, we're a little bit mystified as to why
13    all of a sudden do we still have dozens of ACCs on the
14    exhibit list and what exactly do they have in mind for sort
15    of trying to claim that the ACCs have some sort of
16    anti-competitive effect, because Your Honor's found they
17    don't.
18              THE COURT:  Yeah, I mean, look, I don't --
19    I understand.
20              Look, I think where I come out on the ACC is as
21    follows, which is, as I've always understood it, that the
22    contract itself, it's not clear to me the plaintiffs are
23    claiming that the contract, the ACC itself, is
24    anti-competitive, but, rather, that contract, in combination
25    with the other two, creates an anti-competitive effect.
```

1          And so, you know, that's certainly how it was

2   presented to me at the tutorial.  I don't know that the ACC

3   was discussed very much in summary judgment except to the

4   extent you brought it up.

5          And I've never understood it to be an independent

6   allegation of anti-competitive conduct, that particular

7   contract itself creates anti-competitive -- now, they may

8   have tried to do that --

9          MR. SCHMIDTLEIN:  They did.

10         THE COURT:  -- but I don't think that's the

11  position they're taking now.

12         MR. SCHMIDTLEIN:  They did.

13         THE COURT:  They're all shaking their head and

14  saying that's not the position they're taking, at trial at

15  least.

16         MR. SCHMIDTLEIN:  Yeah, that was their song at the

17  beginning of this case, and now they're sort of saying

18  something different that wasn't disclosed, you know, as part

19  of the complaint or as part of interrogatories or anything

20  else.

21         Anyway, we'll deal with it, but it really is not

22  the bases for what this case was originally filed on.

23         THE COURT:  Got you.

24         MR. SCHMIDTLEIN:  And if we're going to have to

25  bring in people to talk about the ACC and to get into sort

```
 1   of all of the pro-competitive benefits of it, we're going to
 2   have an extension of the trial.
 3            THE COURT:  Okay.
 4            Well, let's just wait and see.
 5            I mean, as I said, my understanding is that this
 6   is more of a -- this really does fall into the market
 7   reality bucket, as opposed to actual anti-competitive
 8   conduct, and so I'll deny it on -- as to the ACC.
 9            And then in terms of the Assistant, let me go back
10   and take a look, I'll do a closer look at how that has --
11   how that was treated at summary judgment.
12            You know, at the end of the day, I understand why,
13   you know, sort of within the Microsoft framework, they might
14   think this is useful, but it sounds like it's such a small
15   distribution channel that it really is -- isn't really going
16   to move the dial very much.
17            All right.  So I think that takes care of that.
18            All right.  Then there is the in-limine motion
19   from Google concerning the revenue estimate.  It won't come
20   as a surprise to you, Mr. Schmidtlein, I'm going to deny
21   that motion.  I'll take the evidence, I'll weigh it
22   accordingly, and I'm confident you will cross-examine those
23   witnesses about how confident they are in the numbers and
24   the basis for the numbers.
25            All right.  Purported benefits of outside relevant
```

 1  markets.

 2          My reaction is as follows:

 3          It's not clear to me exactly what role this is

 4  playing in the case, if any.

 5          What limited understanding I have of this legal

 6  issue is that it is, particularly in the D.C. Circuit, a

 7  little bit of an open one, particularly in a Section 2 case.

 8          I mean, I know there's additional case law in

 9  Section 1 context about this.  I gather academics are doing

10  some discussion about this in the Section 2 context.

11          And what I wonder is, to the extent that this is

12  something Google is going to bring forward, whether that is

13  not better treated as a post-trial legal issue that we need

14  to sort out, rather than something that you're asking me to

15  deal with on summary judgment.  Now -- excuse me, as a

16  motion in limine.

17          Now, if this is going to become a big feature of

18  Google's case, I think perhaps that's all the more reason to

19  push it.

20          So there's a -- I know that sounds sort of not

21  quite right, but if it's going to be a part of their case, I

22  would rather have a great deal -- I would have more

23  confidence -- I would rather has more confidence that as a

24  matter of law it's just not relevant, and I'm not sure I'm

25  in a position to make that conclusion right now based on my

1    limited understanding of what the record is going to look

2    like.

3              So, Mr. Schmidtlein, you want to enlighten me in

4    terms of what this is going to look like in your case?

5              MR. SCHMIDTLEIN:  Yes, Your Honor.

6              There are a couple of different, I think, aspects

7    of the conduct here that we claim advanced competition in a

8    variety of markets.

9              We will, I think, not surprising to Your Honor,

10   we're going to argue that the browser default agreements

11   actually help, and you will get evidence from Apple and

12   Mozilla that those actually generate competition in the

13   browser market.

14             They're not only -- a feature of the competition

15   to be the default search engine is pro-competitive in the

16   search market, but it actually enhances competition in the

17   browser market, and enhancing that competition actually

18   rebounds to better search.

19             You know, more innovation, better competition

20   amongst browsers gives consumers this key technology that

21   they use to search and they will search better and they will

22   search more and that is output enhancing in browsers, for

23   example.

24             So we see that conduct as enhancing competition in

25   multiple markets, and our position is Your Honor can take

1    all of that into consideration and that you should weigh the

2    DOJ's case saying, no, no, you're not allowed to do that in

3    that market, that that's going to harm not only search, it's

4    going to harm browsers.

5         But the bottom line, I think, for purposes of

6    today is, all of these instances that we are arguing about

7    having pro-competitive benefits in other markets, in each of

8    those, they will circle back and also have pro-competitive

9    effects in the search market.

10        And the law is clear that if you have this in both

11   markets, and I think the *Epic* decision is probably the most

12   recent one that touches on this, then there's no question

13   that it's admissible for Your Honor to take into

14   consideration.

15             THE COURT:  Okay.

16             Mr. Dintzer, thoughts, or whoever would like to be

17   heard.

18             MR. DINTZER:  Actually my colleague is going to be

19   addressing this one as well.

20             THE COURT:  Okay.

21             MR. GOLDSTEIN:  I mean, in brief, Your Honor,

22   I think we agree with Google that to the extent they can

23   show out-of-market effects boomerang back into the search

24   market or one of the related advertising markets, that is

25   cognizable and that is totally fine.

1          What we are concerned about is eliciting evidence

2    that stays in the browser market or stays in the smartphone

3    market.

4          If Google cannot show that that conduct spills

5    back, then they have not established a justification for

6    their conduct.

7          THE COURT:  Okay.  All right.

8          Well -- all right.

9          Well, look, I've heard a proffer from Google that,

10   at least at a minimum, they intend to attempt to show that

11   there is -- collateral is not the right word, but a sort of

12   boomerang effect that enhances competition in the browser

13   market -- excuse me, in the market for search, and we'll

14   just have to wait and see whether that turns out to be

15   accurate or not.

16         MR. GOLDSTEIN:  Okay.  Thank you.

17         THE COURT:  And if turns out not that they're just

18   limiting it to -- their argument just ends up -- they fall

19   short on that, then we'll have to have a legal discussion

20   about whether they can argue to me that if there is a

21   benefit to the browser market, that's something I can

22   appropriately consider.

23         MR. GOLDSTEIN:  Okay.

24         And just so we're clear, by denying the motion, we

25   don't hear this to be denying it with prejudice, as in we

1    can object, we can raise this in post-trial briefings.

2    You're just, for the time being, saying that's not the time

3    to raise it.

4             THE COURT:  Well, what I'm saying is that it comes

5    in as an evidentiary matter and then we can fight over its

6    significance after the fact.

7             MR. GOLDSTEIN:  Understood.

8             THE COURT:  All right.

9             So then there's the motion Google's -- excuse me,

10   plaintiffs' motion in limine to limit Google's ability to

11   use evidence of product quality.

12            So the plaintiffs are going to have to help me out

13   here because it's not clear to me what you're asking me to

14   do since there's -- it seems more like a general argument

15   than an actual request to exclude evidence.

16            MR. DAHLQUIST:  Sure.

17            On behalf of the United States, David Dahlquist.

18   I've not had an opportunity to address the Court previously.

19   Thank you for spending your Friday afternoon in advance of a

20   holiday weekend with us; we appreciate the time on all these

21   important issues.

22            We fully recognize this may not be your

23   traditional motion in limine seeking to exclude specific

24   documents, testimony, et cetera.  We understand that.

25   However, we do believe this is a proper motion in limine,

1    which it's intended to be raised at the threshold of trial,

2    which is where we are, in order to properly limit the use of

3    evidence that we fully believe, have good-faith belief will

4    be coming in or defendants will offer at trial.

5           I will also acknowledge that we filed this on

6    August 1st, three days before we got your summary judgment

7    motion.  And -- your summary judgment order.  And in that at

8    pages 36 and 37, we, as you would expect, we fully agree

9    with you, where there you stated that the competition for

10   the contract was not an issue that could be resolved in

11   step 1, in the prima facie part of the case, but needed to

12   be resolved in step 2, where the pro-competitive effects

13   piece is.

14          This is the same request, Your Honor; that any

15   evidence, to the extent that defendants intend to provide

16   it, related to product quality -- and we believe they're

17   going to say that word a lot, Your Honor, we believe you're

18   going to hear that in spades.  We believe all of that

19   evidence, similar to your ruling, is not a panacea that we

20   don't have to go any further, we stop there, we can stop at

21   the prima facie case, stop at step 1 of the burden-shifting

22   analysis under Microsoft.  In fact, it must be considered

23   under step 2, which is the pro-competitive effects.

24          That is why we raised it now.  We fully appreciate

25   that, similar to the other motion in limine, this may be an

1    issue that is better addressed at the end of the trial and

2    in post-trial briefings.  But we wanted to spend time now to

3    preview it now as opposed to us getting up every single time

4    they say the word "quality," which will be perhaps ad

5    nauseam, in order to address this issue with you today,

6    Your Honor.

7              THE COURT:  Okay.  All right.

8              Look, I'm not sure what there would be to discuss

9    at a trial when that evidence is being introduced.

10             In other words, you've admitted to its relevancy,

11   it's not objectionable where it fits in the burden-shifting

12   framework, we can take that up at the appropriate time.  But

13   it's certainly something that is -- you've just told me you

14   agree it's relevant; maybe you disagree about what stage

15   it's relevant.

16             I mean, I guess I really didn't address the

17   product quality issue when it came to the SERP design, but

18   in a sense, I kind of think we're past that, but we'll see

19   where we are at the end of it all.

20             MR. DAHLQUIST:  Understood, Your Honor.  Thank you

21   for the time.

22             THE COURT:  All right.  So what does that leave?

23             All right.  I think that's all the motions in

24   limine.  Have I missed anything?

25             All right.  Okay.

1           We've talked the motions to quash.  We have

2     talked -- let's then turn to confidentiality.

3           So here's my question.

4           In terms of what's left and what's in dispute, how

5     much of it relates to portions of those documents that you

6     really want to show in trial?  Because that's all I really

7     care about right now.  If we're fighting about stuff that

8     you're not going to want to put in front of me and talk

9     about with a witness, the rest of it we can push off.

10          But as I said, what really matters is, and as a

11    practical matter what is in front of us, I think what I said

12    last time, and I'll reiterate, which is, it's a public

13    proceeding.  And, yes, there's access to public records, but

14    *Hubbard* doesn't tell me when there is access to those public

15    records or when the appropriate time is to make them public

16    records.  So, you know, this marries up ultimately with my

17    interest in minimizing the number of times we need to empty

18    the courtroom and go into a closed session.

19          So the question then is to the plaintiffs, at

20    least at this point.  So how many of these documents really

21    concern disputes about -- and maybe some of the emails, I

22    get, maybe it's certainly those, that concern actual

23    portions of records you want me to actually look at and

24    eyeball while somebody is talking about it?

25          MR. HERRMANN:  Good afternoon, Your Honor.

1          THE COURT:  Good afternoon.

2          MR. HERRMANN:  Karl Herrmann for the United

3    States.

4          THE COURT:  Mr. Herrmann.

5          MR. HERRMANN:  May I approach and deliver a

6    hyperlinked version of our pretrial brief?  I know it's not

7    relevant.

8          THE COURT:  Sure, I love hyperlinked briefs.

9          MR. HERRMANN:  Also, we have also prepared binders

10   of these exhibits if you would like those.

11         THE COURT:  I do not want those.

12         MR. HERRMANN:  Your Honor, I think we are learning

13   that you do not like our binder gifts.

14         THE COURT:  This is a case involving a tech

15   company.  I mean, we don't need a lot of paper.

16         MR. HERRMANN:  Your Honor, to answer your

17   question, we identified to Google the narrow portions of

18   exhibits that we intend to rely upon at trial.

19         When they proposed their redactions to us, we took

20   a careful look at them and we thought about, okay, what do

21   we -- based on their positions and the fights that are worth

22   having over the most important parts that really need to be

23   publicly disclosed, what do we really need to push back on

24   that we know we're going to use in trial and we don't need

25   to be disclosed.

1              So with that, we accepted many redactions that,

2       frankly, Your Honor, do not meet the *Hubbard* standard, but

3       we were able to resolve over half.  We accepted Google's

4       positions on over half of the exhibits.

5              The remaining ones, to answer your question, we do

6       intend to use at trial and, you know, it's not just emails.

7              THE COURT:  To be clear, when I say "use at

8       trial," I get you're going to use the document, but are you

9       going to use the portion that's in dispute as to each of

10      those documents?  And if you are, you know, look, I'll have

11      to take a harder look at these, I suppose, and provide you

12      with some rulings.

13             But, you know, here's a for-example.

14             I've looked at the contracts, and Google, for

15      reasons that are not clear to me, would like sort of the

16      preamble of the contracts to be maintained in

17      confidentiality, as well as the signature blocks.

18             You're not going to show me those, are you?

19      I don't know, unless there's something really important

20      about who signed it or what's in the preamble, I'm not sure

21      I really am too concerned about having to deal with that

22      right now.

23             But if there is, for example, a particular clause

24      that you're going to want to highlight and have somebody

25      talk about, then that makes a difference, because I'd rather

```
 1    do that in open session unless there's a real reason not to.
 2              MR. HERRMANN:  Yes, Your Honor.
 3              First to address the preamble and the signature
 4    part, we believe Google agrees with us it's not
 5    confidential, and it just presents a burden to us to be able
 6    to ask about portions of the exhibits in open court if they
 7    are under seal.
 8              But with respect to specific clauses -- oh.
 9              THE COURT:  Go ahead.
10              No, finish up.
11              MR. HERRMANN:  Yes, Your Honor.
12              With respect to specific clauses, I could direct
13    you to one of the exhibits and I could talk about an example
14    of how we might use it.
15              If you could pull up UPX5317.
16              I'm sorry, Your Honor, that's dealing with the
17    preamble and signatures.  UPX5416 is the right number.
18              THE COURT:  Hang on one second.  Let me just get
19    to where it is.
20              Almost there.
21              All right.  Give me the number again.
22              MR. HERRMANN:  UPX5416.
23              THE COURT:  All right.
24              Does Google have this in front of it?
25              MR. HERRMANN:  And I'll focus on the third page,
```

```
 1   Your Honor.

 2             THE COURT:  Okay.

 3             MR. HERRMANN:  A quick note on reading these

 4   exhibits.

 5             If it's yellow highlighting, that means Google's

 6   proposed redacting and we oppose.  If it's green, we've

 7   accepted -- we have not opposed their proposal to seal.

 8             Those two definitions that you see right there,

 9   Your Honor, these are what -- these are consistent

10   definitions across all of Google's agreements with

11   manufacturers, as this is one agreement with a manufacturer.

12             The basis Google tells us for sealing contracts is

13   that they're worried that disclosing terms that might differ

14   could harm them if disclosing those terms -- if those terms

15   were disclosed.

16             These terms are identical in all of their

17   manufacturer contracts, Your Honor.

18             And by being able to ask a witness, who can then

19   say what these actual terms are, we could then talk about

20   how those terms apply and how Google's contracts are

21   enforced.

22             Whereas, if we need to black out everything and

23   talk about everything in the ether, it's going to lead to a

24   rather obtuse line of questioning that can lead to great

25   confusion, unnecessarily.
```

1          THE COURT:  Okay.

2          So, for example, what is marked as 1.6 is

3   something that you would propose to actually introduce, show

4   somebody, and ask them to testify about it?

5          MR. HERRMANN:  Your Honor, if I may clarify, 1.12

6   and 1.14.

7          THE COURT:  All right.  I'm looking at --

8          MR. HERRMANN:  1.6 is an example of where we've

9   thought about Google's redactions and we've decided, it's

10  not worth it to oppose it.

11         THE COURT:  I got you.

12         MR. HERRMANN:  Because, for example, we might

13  understand their sensitivity or don't believe we really need

14  to bring it up in open court.

15         We've -- if you look through the bulk of the

16  contracts, Your Honor, there are actually only a few yellow

17  boxes.  We've really cut it down to really slim portions,

18  and Google has not even provided its basis that makes sense

19  for redacting any of this, certainly to -- certainly in a

20  way that would overcome the presumption of public access

21  under *Hubbard.*

22         THE COURT:  Okay.

23         I mean, I'm not going to spend everybody's time

24  here going document by document and redaction by redaction.

25         But since we're on the subject, Mr. Schmidtlein,

```
 1    any thoughts and insight you can give me about these
 2    particular requested redactions?
 3              MR. SCHMIDTLEIN:  My partner, Graham Safty, will
 4    address these issues, Your Honor.
 5              MR. SAFTY:  Your Honor, if I may start by
 6    answering the question you asked the Department of Justice.
 7              We received two weeks ago today, pursuant to your
 8    Court's August 14th order, 356 exhibits that they
 9    purportedly intend to use at trial.  I think that's more
10    than they could use if the trial went on for two or three
11    times as long as it's actually scheduled for on your court's
12    calendar.
13              Just from the Department of Justice, we received
14    256 exhibits.
15              We painstakingly went through those line by line
16    with our client, because as we indicated at the August 11th
17    hearing, a lot of these decisions have to be made by
18    individuals who are familiar firsthand with the
19    negotiations, with the products, with the decisions, because
20    they know what's commercially sensitive and what's not.  Of
21    course, they were fully advised of the standards for sealing
22    and Your Honor's guidance at the last hearing.
23              Where we came out from that is dozens upon dozens
24    of exhibits of the 256 where Google has no redactions
25    whatsoever, and plaintiffs from day one of this trial will
```

1    show confidential and, frankly, commercially sensitive

2    Google information in open court because we're doing the

3    *Hubbard* balancing in advance.

4              We then have a bucket of dozens of --

5              THE COURT:  If I can just interrupt you --

6              MR. SAFTY:  Yes, sir.

7              THE COURT:  -- because it's late in the afternoon,

8    it's been a long week, the two particular paragraphs that

9    have been cited, can you just sort of give me some insight

10   as to why these definitions might be considered particularly

11   sensitive?

12             MR. SAFTY:  Sure.

13             And, Your Honor, we've agreed to the unsealing of

14   probably on the order of dozens of slides that describe

15   what's in these paragraphs, describe what the MADA does.

16   It's no secret.  It's in Your Honor's summary judgment

17   opinion.  It's in our briefing.

18             Our position is not that every last line of every

19   contract contains sensitive material.  It's that we

20   understood plaintiffs' intention to be that they were trying

21   to get information from us about where to draw the line with

22   respect to permissible questions in open court.

23             If they're going to question witnesses about the

24   bespoke provisions of contracts, many of which are, even if

25   the two that are pointed are not, then that's something that

```
 1    likely is subject to sealing, as Ms. Zahid from Verizon, for
 2    example, previewed with Your Honor a couple of weeks ago.
 3    That doesn't mean that these two provisions are, doesn't
 4    mean that the signature block is, but I'm not sure --
 5    I'm sorry, go ahead.
 6              THE COURT:  You'll forgive me.
 7              But if these two provisions, for example, or the
 8    signature block, for example, are not portions of these
 9    records that you're seeking to maintain confidential, then
10    why do they have the yellow highlight?  Shouldn't they then
11    be not highlighted and we can just present those at trial?
12    That was the whole point of the exercise that, I know it was
13    burdensome and difficult, but asked you to undertake.
14              And clearly you've done a lot of work and I don't
15    mean to be difficult, but, you know, I'm looking at two
16    contract definitions here and -- look, it's hard for me to
17    know, but if, for example, 1.12 there's something
18    particularly unique about that definition and what the
19    constituent parts are of that definition, then it's not
20    apparent to me.  And if what you're telling me is it's not a
21    big deal to talk about it in open court, then we ought to
22    have it as an unredacted document or portion of document.
23              MR. SAFTY:  And I appreciate that, Your Honor.
24              And we will go back and look at the contracts with
25    that in mind.
```

1          For many of the contracts, including the exemplars

2     that DOJ submitted yesterday, there are bespoke provisions

3     that, in Google's view, would cause substantial competitive

4     harm if discussed in open court.

5          And that's also the view of the third parties

6     who've weighed in on plaintiffs' requests, including some of

7     the third parties who were the subject of the motion that

8     DOJ filed yesterday and some who are not here but have asked

9     us to seal all of their contracts to the extent they're

10    introduced into evidence.

11         But I think you are right, Your Honor, that if we

12    were to go through, we could find particular provisions that

13    do not pose that risk of harm, and we'll do that with

14    respect to the contracts, which is something that we've

15    already done with respect to the hundreds upon hundreds of

16    other documents, we just had contracts in kind of a separate

17    bucket for those purposes.

18         THE COURT:  Okay.

19         While you're here, let's talk about just a couple

20    of these other categories.

21         You know, here's a for-example.

22         On page 4 of the government's submission, they've

23    cited four -- I guess three emails and one presentation

24    concerning contract negotiations.  The second half of that

25    page or bottom half of that page are very long emails that

1    clearly reveal the internal thought processes of Google

2    executives in terms of agreements and strategy.

3         Just starting with the top category, the one

4    concerning negotiations of Google agreements, I mean, for

5    example, of the three -- three out of the four are --

6    predate 2010, so they're 13-plus years old.  The other one

7    is ten years old.

8         So is there something about those emails and

9    what's contained in those emails such that they would be

10   disclosed now two plus decades later or something like that

11   that would cause a problem for Google?

12        MR. SAFTY:  Yes, Your Honor.

13        They all relate to ongoing relationships with

14   counterparties who are either witnesses in this case or who

15   gave deposition testimony in this case.

16        And, you know, again, I think as you observed at

17   the last hearing, you're not a businessperson, I'm not a

18   businessperson, but I can kind of put myself in their shoes.

19   And when businesspeople or people who work with them at the

20   company are looking at these documents, they're always

21   thinking about what is the other side going to use to get an

22   edge.

23        And disclosure of Google's internal thought

24   processes, even from 10 or 15 years ago, could still be

25   pertinent to, and, in fact, often are, to negotiations

63

```
 1    happening today, because those agreements have been in place

 2    for a long time.

 3              THE COURT:  So you think somebody from the company

 4    that's identified at UPX559 in an email that was drafted

 5    18 years ago, if my math is right, that that company is

 6    going to come back at Google and use it against them?

 7              MR. SAFTY:  I think, Your Honor, with ongoing

 8    partnerships, there isn't really the sort of staleness

 9    consideration that sometimes permeates other categories of

10    information.

11              I'll also note, though, as I indicated, we've

12    unsealed in their entirety dozens upon dozens of documents

13    often based on that very consideration.

14              THE COURT:  I'm trying not to be difficult, but I

15    really want to get to brass tacks.

16              Again, it's hard for me to do this, so I take what

17    you're telling me at face value to some degree.  But it is

18    hard to believe that a 20 -- an 18-year-old email is going

19    to cause Google a lot of harm if it's disclosed.  You know,

20    I can understand something that's a little closer in time,

21    perhaps on a particularly sensitive subject, but it's 18

22    years old.  The next one is 16 years old.  The next one is,

23    it says presentation from 2009.  It cannot -- just -- it's

24    hard for me to believe that if this comes out and the

25    competitor gets ahold of it, they're going to be able to use
```

1    it to their advantage in some way.

2         MR. SAFTY:  I understand the concern, Your Honor,

3    and we can take another look at these with the date

4    consideration more firmly in mind.

5         We, again, wanted to convey to the government as

6    clearly as possible in order to maintain efficiency at trial

7    where the lines are, and we filed a large brief on August

8    11th with supporting declarations for that reason.

9         THE COURT:  Right.

10        MR. SAFTY:  We don't want to be interjecting when

11   they shift from the 2011 agreement to the 2016 agreement and

12   say, now you're getting into sensitive negotiations because

13   the rev share percentage in 2016 is sensitive even though

14   it's stale in 2011.  I don't think it quite brightlines that

15   way, and so that's why we're trying to categorize in this

16   manner.

17        But Your Honor's point is taken, and we have, you

18   know, revised.

19        THE COURT:  To your point -- I'm sorry to

20   interrupt you, but, for example, the rev share, you know,

21   that changes over time, you'll have to -- I can't remember

22   whether that's something that is being contested or not.

23        That is the kind of discrete category of

24   information that I can actually get my arms around, right.

25        I mean, these broader categories, and I appreciate

1    the difficult in categorizing these materials, but, you

2    know, a rev share percentage, you know, even a non-business

3    person like me can get my head around understanding why you

4    wouldn't want that in a public space.  Sure, I get it.  But

5    some of this is a little harder.  And so I think that's why

6    I'm raising some of the questions I am.

7              And the same goes, you know, with these emails

8    that are under Category 3.  I mean, again, you've got

9    presentation from '07, email from '11, you know, '16, now

10   we're getting a little closer in time, '18, '19, '20, okay.

11             MR. SAFTY:  Your Honor, I do want to be very

12   clear, though, abut these, that DOJ's highlighting scheme,

13   which took me a little time to figure out, these are not

14   documents in many cases that Google seeks to seal in their

15   entirety.  But something like Exhibit 123, they asked us to

16   review 14 pages, we unsealed, by my estimate, 99 percent of

17   the content.  It's full of internal Google metrics, it's

18   full of nonpublic information.  We redacted a couple of

19   nonpublic financial figures that could be used in a way that

20   would allow for certain extrapolations that the company

21   would prefer to keep confidential.

22             THE COURT:  Right.

23             MR. SAFTY:  There is nothing in the targeted

24   redactions that impedes the government's ability to examine

25   a witness with this document.

1          And so really what we're fighting about oftentimes

2     is whether a redaction of a number that they probably have

3     no intention to use or could easily talk around with a

4     witness on the stand can be redacted.

5               THE COURT:  Okay.

6               MR. SAFTY:  So I take Your Honor --

7               THE COURT:  So let me -- with something like that,

8     I mean, I'll just share my, at least my impression, which is

9     that numbers, in my view, are probably of the kind of

10    sensitive information, obviously not categorically but

11    probably are more likely to be sensitive than other

12    material, than, for example, the definition in a contract.

13    You know, the older that number is, the more stale it is, it

14    seems to me to be the kind of thing that's less likely to

15    cause a competitive disadvantage.

16          And then in terms of presentation at trial, look,

17    it's not going to be the kind of thing that we need to empty

18    the courtroom for.  I mean, you can -- we'll keep it off the

19    public screen, you can point to it, and unless there's a

20    real good reason to articulate what the number is, testify

21    about it, and we can keep going.

22          I mean, you know, the stuff that we really want to

23    close the courtroom for is really the highly sensitive

24    materials that are rightly so, either, you know, are trade

25    secrets.

1          I mean, you know, for example, the next category,

2     the search advertising auction descriptions, you know, I

3     look at what you've asked to be redacted and I think, yeah,

4     that should be redacted.  I mean, it's got math, so it looks

5     like, you know, it's got formulas and, I don't know,

6     somebody else would tell me this is not a big deal and it's

7     pretty elementary, but I don't know that.

8               MR. SAFTY:  You're absolutely right, Your Honor.

9          And that document, which is a confidential

10    submission that contains business secrets to a foreign

11    regulator, is full of commercially sensitive information.

12         To be doubly sure, though, we interrupted

13    yesterday one of the authors of the document who was on

14    vacation and confirmed that we can peel back a few of the

15    redactions, that a few of them that another person input

16    were a little overbroad, and so we're going to do that.

17              THE COURT:  Okay.

18              MR. SAFTY:  The government has asked us to do that

19    for 356 documents.

20         There may be occasional imprecision in the

21    redactions and we will take a look at that consistent with

22    Your Honor's instruction.

23         But I'm not sure that the government has focused

24    on the exhibits that they intend to use at trial, and I'm

25    certain that the government is not doing the *Hubbard*

```
1    balancing that we're doing.  They're just trying to unseal
2    everything.
3             So we would ask that going forward it, we'll take
4    another look with your comments in mind that will hopefully
5    cover the ground.
6             THE COURT:  I would pay somebody to do the Hubbard
7    balancing; I'm going to outsource that.
8             I think where we are is as follows:
9             I'm going to ask you again, and I keep coming
10   to -- go back to, sort of look -- take another hard look,
11   let's hope we can narrow the disputes.
12            My goal here is really to get to a point where the
13   ultimate goal here is to get to a point where we are very
14   efficient in terms of the presentation of evidence.  If
15   there are discrete numbers, discrete percentages and the
16   like, we can easily breeze through that by taking the
17   screen, the public screen down, and just having the witness
18   testify sort of obliquely about the number without revealing
19   it.  That's pretty easy to do.
20            You know, if there's something that occupies a
21   more substantial category, then we can talk about that, but,
22   you know, my limited experience in this sort of area is that
23   those kind of categories tend to be rare.
24            MR. SAFTY:  And with contracts, too, Your Honor,
25   envisioning instances where counsel and Your Honor and the
```

1   witness can see the contract, but there's no reason to read

2   verbatim what it says.

3           THE COURT:  All right, I agree.  I said that the

4   other day.  Unless, for example, it does matter what this

5   definition is.  I don't know whether it does or not.  Maybe

6   if there's one other item in that list, it makes a

7   difference to the government's case; maybe it does, maybe it

8   doesn't.

9           But so, in any event, I guess where we'll leave

10  this is, again, I'll ask you to go back -- I know this is a

11  burden in the eve of trial, but sort of take another hard

12  look at this, and then, you know, I think we'll just take

13  it -- for the most part, we'll take it as it comes and

14  hopefully we can minimize the disruption, okay?

15          MR. SCHMIDTLEIN:  Your Honor, one question, just a

16  broad question as to how you want to handle anticipated

17  testimony that we might need to close the courtroom over or

18  there might be disagreements about that.

19          Do you want us to alert you to that sort of just

20  day of?  Because I do think, you know, the Apple witnesses,

21  I think, are a good example.  The two witnesses that, you

22  know, will be coming live to testify at trial, I would

23  expect that the overwhelming majority of Google's questions

24  of those witnesses should be done in a closed courtroom.

25          THE COURT:  Okay.

1          MR. SCHMIDTLEIN:  That the nature of the types of

2     internal and other commercial dealings that they had that

3     are relevant to this case are going to be very, very

4     sensitive and they're going to be recent --

5          THE COURT:  Right.

6          MR. SCHMIDTLEIN:  -- or relatively recent.

7          THE COURT:  I mean, the short answer is yes.

8     I mean, the more information the better, and the earlier the

9     better so we can just work it out.

10          You know, it's helpful to know right now what

11     you're expecting in terms of the Apple witnesses.

12          And so the short answer is, if that's what you

13     expect, better to let me know so that we can, you know,

14     coordinate appropriately.

15          MR. HERRMANN:  Your Honor, I would like to ask for

16     a little bit of clarification on the process moving forward

17     for confidentiality.

18          Specifically, returning to what Mr. Safty said

19     about redacting recent revenue shares, we're in agreement,

20     you can see that, we've proposed redacting those.

21     We believe those are also easy ones to redact.

22          And then with respect to the idea that 256

23     documents was too many, that's 64 documents per week, that's

24     12 documents per day, not too many.  We believe that's a

25     reasonable number, and we made it -- again, we went through

1    a good-faith process.

2            And then finally, we found it very helpful, the

3    deadlines the Court set this past week, in getting Google's

4    response to us.

5            You know, going through the list of 20 here,

6    I think Google has said, either yesterday or today, that

7    they're either withdrawing or going to look at again 12 of

8    those.

9            You know, everyone makes mistakes.  That's a

10   pretty high hit rate, but -- so I think we need to get

11   Google's response quickly.  We are less than two weeks out

12   from trial, we need to understand what we can and can't say

13   in opening, and -- with our first -- especially our first

14   few witnesses, and we need to have that process in advance

15   on our own end.

16           So we would ask if you could order Google to get

17   back us to very, very quickly, within 48 or maybe 72 hours

18   on our recent proposal.  Thank you, Your Honor.

19           THE COURT:  I take it you don't mean 48 or 72

20   business hours?

21           MR. HERRMANN:  Your Honor, I think that might take

22   us after the trial started.

23           MR. SAFTY:  Your Honor, if I may briefly be heard

24   on the proposal that Mr. Herrmann's referencing, I don't

25   know which proposal that is.  We have these 20 exemplars.

1    We will take these back to our client immediately.

2    Realistically it will be next week before we can get a

3    response because of the number of people who have to weigh

4    in who have Labor Day plans.

5            THE COURT:  Sure.

6            MR. SAFTY:  Since this is not an outside counsel

7    decision.

8            Separately from these 20 exemplars, we received on

9    Wednesday a purported challenge to essentially every

10   document that we redacted or said should be sealed in full.

11           When Mr. Herrmann alluded to the fact that there

12   were agreement on a big chunk of documents, that's because

13   Google just said, yes, this is confidential, but we're not

14   seeking to seal it.

15           So we need to know from DOJ what is it that you

16   really want us to do, rather than just raise --

17           THE COURT:  Right.

18           MR. SAFTY:  -- boilerplate objections because you

19   can't understand the articulation of why this passage is

20   redacted, because we should not be compelled, on the eve of

21   trial, to re-review all the documents.

22           We take Your Honor's guidance with respect to age

23   and with respect to non-bespoke contract terms.

24           THE COURT:  Right.

25           MR. SAFTY:  If there are any other discrete issues

1    that DOJ wants to raise with us, we're happy to address

2    those in good faith, but the process and the results of that

3    process already satisfy *Hubbard.*

4              THE COURT:  Okay.

5              MR. SAFTY:  Thank you, Your Honor.

6              THE COURT:  So I guess here's what I envision, and

7    it is a two-sided street.

8              I mean, I really -- and I know you all have done

9    this, but -- to some extent.  But if, you know, to the

10   extent that you are in a position to identify specific

11   portions of documents that you genuinely want to show a

12   witness, particularly the witnesses that are going to be in

13   the first two weeks, we don't have to have all of this

14   resolved by September 12th, but, you know, this is really

15   sort of a court management issue from my perspective

16   primarily.

17             So if you can identify those documents that you

18   think are going to come in the first week, two weeks, what

19   you might want to show in opening, and what portions of

20   those documents you really care about that you want to talk

21   to a witness about, and then if that's still the subject of

22   a dispute based upon on what you've received so far, you

23   know, go to Google and say, this is what matters.  And at

24   the same time, I think Google needs to be looking at some of

25   what you've done in terms of the dates.

1          Now, you know, time is running short, so -- and

2    I know I'm putting the burden initially on the plaintiffs,

3    but, again, you go first.

4          So to the extent that you are in a position

5    quickly to present -- to identify the disputed records, the

6    ones that you're going to introduce and what portions you'd

7    like to introduce that are still in dispute, that would

8    probably be a good first step.

9          MR. HERRMANN:  Yes, Your Honor, we can highlight

10   to Google documents in the opening in the first two weeks so

11   we can particularly expedite those.

12         Just to say something, you know, we really have

13   narrowed these down to the portions we will use.

14         THE COURT:  I know you have.

15         I'm not being critical of anybody here.  This is a

16   case that started with like eight figures' worth of

17   documents and untold amounts of data.  So as we talked

18   about, it's all going to come down to a few hundred docs

19   that really matter, and that's what we're here to talk

20   about.

21         MR. HERRMANN:  Your Honor, as far as our

22   challenges, we challenge Google's redactions to only 77 in

23   part, and we challenge all of their full redactions on 49.

24   I think once we get clarification from Google on dates, and

25   if they just, frankly, begin their review of all the

1    challenging parts, the 77, we can probably find resolution

2    on many of those if they can begin that now.

3            THE COURT:  Here's what I'm going to do.

4    I'm going to order both sides to do what I've just asked you

5    to do, which is for the plaintiffs to identify their

6    documents and the order -- not the precise order, but the

7    estimated order in which you're going to present them,

8    including your opening.

9            Google is going to go back and look at your

10   exemplars with my comments in mind and take a look at that,

11   and then you all need to have a meet-and-confer by Wednesday

12   of next week, I assume you're going to be working, so by

13   Wednesday of next week, and hopefully we'll be able to close

14   the gap.  And to the extent there are issues still left --

15   yeah, I don't even have time Monday.

16           Just why don't you do this.  Why don't you contact

17   chambers after you've met and conferred and let me know if

18   you need me, because, you know, look, if I really need to

19   resolve some things, for example, about opening exhibits,

20   exhibits for the first few witnesses, I'll do that, I'll

21   carve out time.  I'm in trial again starting next Tuesday,

22   and so I'll do that, okay?

23           MR. HERRMANN:  Thank you, Your Honor.

24   We appreciate it.

25           THE COURT:  If you would just get in touch with

1    chambers.  If there's something you need, we'll figure out a

2    time on either Thursday or Friday, or whenever the case may

3    be, to talk this through, okay?

4              MR. HERRMANN:  Thank you, Your Honor.

5              THE COURT:  All right.

6              Okay.  So I think that takes care of that.

7              Let's talk trial logistics.

8              So this is my list and this is not to the

9    exclusion of anything you all have on yours.  I think the

10   government has forwarded -- plaintiffs have forwarded to me

11   their anticipated order of witnesses.  What I am -- and

12   maybe you've sent this already, but I'd like to know who the

13   experts are, if there are experts coming, sort of Tuesday or

14   Wednesday through Friday of that week --

15             MR. DINTZER:  First week.

16             THE COURT:  -- first week, can you please tell me

17   those so I can make sure I set aside time to get ready.  So

18   that's one.

19             While we're on the topic of experts, I'll lead

20   with an apology again, it's been -- there's been a lot going

21   on, so I'm sorry I haven't gotten to those *Daubert* motions

22   yet.  The hope is to do that and I hope to get that, if not

23   by the weekend, shortly thereafter.

24             All right.  There was a motion filed regarding a

25   public access to trial.  Now, let me just set the stage, and

1    I actually was going to raise this issue before we even got

2    the motion.

3            So my understanding is that sort of -- well,

4    first, the baseline is this.  I am not permitted by rule to

5    broadcast these proceedings.  And I consider attaching a

6    public line a broadcast of the proceedings.

7            Now, as a result of the pandemic and some of the

8    efforts we've made to create public access, as you all know,

9    we've had authorization to conduct matters remotely, and

10   that continues to apply with respect to civil matters, but

11   only through September 21st, as of right now.  As I

12   understand it, it's still something that is under

13   discussion, but even if this is something we would do, right

14   now it could only last until September 21st as far as my --

15   how I read the rules.

16           So we have the ability to connect a public line,

17   it would not be a video feed, it would be simply a public

18   line that if -- I guess, JC, would it be through Zoom or I

19   don't know what we use as the public line.

20           COURTROOM DEPUTY:  Teleconference.

21           THE COURT:  It's just a teleconference number that

22   you can dial into, just like an earnings call, and people

23   could listen in.

24           They would not be able to do more.  They wouldn't

25   be able to see exhibits.  They wouldn't -- unless they're

1     here in the courtroom, they wouldn't be able to do anything

2     more than just hear what's transpiring.  So I welcome your

3     thoughts on that proposal.

4               And I'm not taking a position on it; I want to

5     hear from you first.

6               MR. SCHMIDTLEIN:  Your Honor, this is a little bit

7     of a follow-on to the last discussion about confidentiality.

8               THE COURT:  Right.

9               MR. SCHMIDTLEIN:  I think we are going to have,

10    you know, even under the best circumstances here, I think

11    we're going to have some non-insubstantial chunks or

12    portions --

13              THE COURT:  Right.

14              MR. SCHMIDTLEIN:  -- of the trial that are going

15    to have to be in closed court.  I think we're probably going

16    to have probably arguments about various either

17    admissibility of exhibits that could touch on these issues,

18    we may wind up arguing about what parts of the trial should

19    be in closed session.

20              I think it's going to become administratively

21    very, very difficult to be, with everything else that's

22    going on in a trial of this complexity, to be, is the line

23    on, is the line closed, you know, all these types of things.

24              And so from our perspective for that reason alone,

25    and obviously third parties have this interest as well, you

1   know, we're opposed to it because we just think, as a matter

2   of administrative feasibility, it's going to be really,

3   really difficult, and it's just one more thing that we need

4   to be worrying about as a risk factor of information coming

5   out.

6              THE COURT:  Right.

7              I should add one other fact, and that is, at least

8   for the openings, and I don't know how much longer, the

9   media has requested that we pipe the proceedings into a

10  media room that we do have on the first floor of the

11  courthouse.  That is both an audio and video feed.  So I was

12  prepared to, at least for the openings, allow there to be a

13  media room feed, and hopefully you all will avoid needing to

14  show confidential material to me or to the public during the

15  openings, because I think that will sort of be the zenith of

16  public interest.

17             MR. SCHMIDTLEIN:  Yeah.

18             And I think -- I can just tell you from Google's

19  perspective, to the extent that we need to do that, we will

20  do in it the way that we have done, I think, previously at

21  summary judgment, and I think the tech, which is we'll have

22  a version of our slide deck --

23             THE COURT:  Right.

24             MR. SCHMIDTLEIN:  -- that is sort of a public

25  redacted version, and then we'll have a version for

1    Your Honor and we'll work around it.

2                  THE COURT:  Okay.

3                  Mr. Dintzer, Mr. Sallet, or Cavanaugh, do you have

4    any thoughts on this issue?

5                  And then I don't know if whether plaintiffs'

6    counsel is here.

7                  Is there a counsel on behalf of the plaintiffs?

8                  MS. VAN DYCK:  Yes, Your Honor.

9                  THE COURT:  Let me hear from government and then

10   I'm happy to hear from you.

11                 MR. DINTZER:  Very briefly, Your Honor, we -- on

12   August 11th, we had separately made our own request

13   regarding a public-access line be available during trial.

14                 THE COURT:  Oh, okay.

15                 MR. DINTZER:  And we don't take any position on

16   the motion that was filed, but we had our own outstanding

17   request on that.

18                 Just generally, we believe -- I mean, we believe

19   that managing a telephone line, to turn it on and off if we

20   have closed sessions, is probably the least of our concerns,

21   so --

22                 THE COURT:  It won't be your concern, it will be

23   his.

24                 MR. DINTZER:  No, no.

25                 I just have confidence in the Court itself, and

1    I'm sure they'd monitor it, that it would be turned off

2    during these sessions.  I -- we take their confidentiality

3    concerns, when properly refined, very seriously.

4             And so --

5             THE COURT:  Just not otherwise.

6             MR. DINTZER:  Well, in 2005 -- as Your Honor said,

7    when they assert things about 2005, then we have to look at

8    it with a careful eye -- but, anyway, that's our position

9    about the line.

10            THE COURT:  All right.

11            Mr. Cavanaugh.

12            MR. CAVANAUGH:  Your Honor, our clients would

13   strongly support a public line.

14            THE COURT:  Okay.

15            All right.  Let me -- if Counsel for the

16   plaintiffs wishes to be heard, I'm happy to hear from you,

17   and I'll grant your motion for intervention so we'll take

18   care of that at least.

19            MS. VAN DYCK:  Thank you, Your Honor, very much,

20   Your Honor.

21            I'm Katherine Van Dyck, I represent American

22   Economic Liberties Project, Demand Progress, Revolving Door

23   Project, and Open Markets Institute today.  We really

24   appreciate you taking this under consideration, given that

25   we filed it last night.

1          Your Honor said a few things today that I really

2    took to heart and appreciated about the importance of live

3    testimony and the importance of hearing that testimony as it

4    plays out.

5          This is a case of immense public interest as

6    I'm sure you're well-aware.  And I think it's important to

7    remember that even today, there was a public -- or not a

8    public line, but a line available to accommodate

9    out-of-state lawyers so they could hear -- listen in and

10   hear what's happening.

11         There's a very strong public right of access; it's

12   embedded in the First Amendment.  And to the extent this

13   Court has a telephone line that it can easily use, I agree

14   with Mr. Dintzer that hitting mute is probably a lot easier

15   than clearing the courtroom and refilling it multiple times

16   a day.

17         THE COURT:  Do you agree with me, in my assessment

18   that, let's leave aside the authorization issue, that

19   connecting a public line would constitute broadcasting of

20   the proceedings that's otherwise prohibited?

21         MS. VAN DYCK:  That's a good question, and I was

22   looking at the Court's procedures and rules before I came

23   here today and I did think about that.

24         The general order says "television and radio

25   broadcast," which this wouldn't be.

1          THE COURT:  Yeah, I'm referring to the rules

2     themselves.  I can't remember which rule it is that, you

3     know, one of the Civil Rules prohibits broadcasting.  It

4     doesn't -- maybe there's some discussion of what that means

5     in the --

6          MS. VAN DYCK:  As I -- the way I interpret

7     "broadcast" is I think would be a television or radio

8     broadcast.  I think that's fundamentally different from an

9     audio feed that people can simply dial into.

10          You know, I just want to reiterate this isn't

11    something where we're challenging -- we're not seeking

12    access to sealed portions of the trial for the public, we're

13    not trying to challenge any of the very complicated

14    confidentiality issues that are before this Court.  We're

15    simply seeking access to what will be public to people who

16    come in here.

17          Our position about public interest is not

18    something that's drummed up or exaggerated.  These -- there

19    have been several other antitrust cases recently that have

20    been made publicly available through dial-in lines, such as

21    the Microsoft Activision case in the Northern District of

22    California, the American Airlines Jet Blue case in Boston.

23    And in those cases, there were limits on -- I think, in

24    Microsoft Activision, it was a thousand people could dial in

25    and it was full.  I tried to dial in and was never able to

1     successfully access the line.  So this isn't something

2     that's imagined, it's a very, very real public interest.

3                THE COURT:  Okay.

4                Okay.  I'll just read, I mean, Rule 53 of the --

5                We've got some conversations I need to have with

6     people here in the front office, and let me talk to them and

7     we'll consider it.

8                MS. VAN DYCK:  Certainly.  Thank you, Your Honor.

9                THE COURT:  All right.  Thank you.

10               Okay.  So that takes care of that matter.

11               We issued an order, I think it was ECF 654, in

12    response to the parties' most -- or the last joint statement

13    that talked about the presentation of documents and how that

14    ought to be done.  And I was, if -- I'm sorry, the order was

15    at 666, ECF 666, and I was wanting to give you all the

16    opportunity to comment on that and get your thoughts on it.

17               MR. SCHMIDTLEIN:  I don't think we have any

18    questions, Your Honor.

19               THE COURT:  Okay.  That's easy.

20               How about from the plaintiffs?

21               MR. DINTZER:  Actually, we did have one question

22    about it, Your Honor.

23               THE COURT:  Okay.

24               MR. DINTZER:  And it involves the process of

25    admitting exhibits.

1          Our ask, Your Honor, is that, for documents where

2    there have been no objections by Google, that we move those

3    in at the beginning of the case.  We have 1,074 where there

4    are no objections.

5          And part of it is that that -- I mean, a lot of

6    these are contracts that are sort of the basis of this whole

7    action.  There's a lot of contracts over a number of years

8    that need to be in the record so that we can rely on them as

9    this is the misconduct that we've described.

10          THE COURT:  Could I -- I'm sorry, just to get

11   clarity.

12          MR. DINTZER:  No, please.

13          THE COURT:  Because I tried to distinguish between

14   the two types of documentary evidence, that which you will

15   present to witnesses and seek to introduce live versus that

16   which you're going to, as it I've --

17          MR. DINTZER:  The push.

18          THE COURT:  -- to push in.

19          And the thousand plus that you're talking about,

20   which category does it fall in and maybe it's both?

21          MR. DINTZER:  Those would be the push.

22          THE COURT:  Okay.

23          MR. DINTZER:  If we would ask the Court.

24          I mean, there's no objection, so we don't have to

25   worry.  There's others that are objected to, we can deal

1    with that at a different time.

2           But we know that these have no objections.  And so

3    us knowing at the beginning that they've been pushed in,

4    lets us know that there's not going to be a fight or

5    anything else later on, and so we can start with that.

6           THE COURT:  So let me just say this.

7           If there is not an objection to the exhibit in a

8    typical civil case, I consider any objections waived.

9           This is not the typical civil case.  So if there

10   are not objected-to exhibits, I would just as well have all

11   those admitted, whether it's just to be pushed in or whether

12   these are exhibits you're going to present to a witness.  So

13   we don't have to go through the song and dance of asking me

14   to admitted it, et cetera, et cetera, and we can just move

15   forward with the testimony and not worry about foundational

16   questions.

17          MR. DINTZER:  That would be terrific.

18          If we could do that, we can submit a list before

19   the trial starts then, I mean, along with any of the ones

20   that we wouldn't have used.

21          THE COURT:  Right.

22          MR. DINTZER:  We'd start with the first witness,

23   I don't have to do the thing that we have all seen a million

24   times, but I don't have to do that, that would be terrific.

25          THE COURT:  Right.

1        And obviously when Google gets to its case, when

2   the Colorado Plaintiffs get to their case, I urge you to do

3   just that.  If, again, there's not documents that you object

4   to, there's nothing to fight about, you know, just move them

5   into evidence.  And if there are documents that are

6   presented that are drawing objections during trial, we can

7   talk about it before trial or during trial or after trial.

8        MR. DINTZER:  We appreciate that, Your Honor.

9        One -- while I'm up here, one objection that, if

10  we get resolved, would help us in our planning is, we've

11  asked the Court about whether the business records exception

12  takes care of emails from third parties, and a resolution of

13  that, I mean, just allows a plan and also saves us time in

14  dealing with the third parties when they're on the stand.

15       THE COURT:  So here's what I would say to you.

16  The case law says that an email is not a business record

17  just because it's an email that a company retains.

18       On the other hand, if you give me a business

19  record certification from a third party indicating that

20  their emails are business records, they will presume to be

21  business records unless I get an objection otherwise.

22       MR. DINTZER:  Understood, Your Honor.

23       THE COURT:  Okay?

24       MR. DINTZER:  Thank you, Your Honor.

25       THE COURT:  Now, to be clear, they could come into

```
 1    evidence, we may still have obviously hearsay within hearsay
 2    issues that may crop up.  But I'll obviously be cognizant of
 3    that and you'll let me know if and when that's true for any
 4    particular email or other record.
 5                MR. DINTZER:  We appreciate that.  Thank you,
 6    Your Honor.
 7                THE COURT:  Okay.
 8                MR. CAVANAUGH:  Your Honor, I don't think it will
 9    matter to the Court, but since we'll be questioning some
10    witnesses in DOJ's case, we would probably do our push at
11    the same time that DOJ does.
12                THE COURT:  Yeah, that's fine.
13                MR. SCHMIDTLEIN:  The only thing, I think
14    everybody is in agreement on this, for the exhibits to get
15    pushed, those are not public records.  If and when those may
16    need to be dealt with in your opinion or some other use in
17    court, you know, all these confidentiality issues that may
18    or may not exist around those, we will address at a later
19    time.
20                THE COURT:  Yes to your first question or the
21    first statement; no, not necessary to the first.
22                In other words, they could become public.  But
23    I'm not looking to resolve that issue now, and so I think
24    we're on the same page now that I think about it, yes, you
25    know, we'll push them in, we're not going to worry about
```

```
1    confidentiality designations.  If it becomes an issue down
2    the road, we'll deal with it down the road.  You know,
3    again, because they are now exhibits, they're just in a
4    different category obviously but --
5                MR. SCHMIDTLEIN:  Right.
6                I just want to make sure that we're all agreed
7    that just because they've all been pushed in, these are not
8    now going to end up on the public record.
9                THE COURT:  No.
10               MR. SCHMIDTLEIN:  Thank you.
11               MS. BARTELS:  Your Honor, Sarah Bartels for the
12   United States.  Very briefly, we have two follow-up
13   questions.
14               The first is regarding the confidentiality.  We
15   have just two third party outstanding disputes.  There were
16   three that were in our filing this week.  We've been able to
17   resolve one of them since then.
18               And we would just ask that we have the same
19   deadlines that the Court has set for next Wednesday for the
20   meet-and-confers for those two outstanding ones.
21               THE COURT:  I'm happy to set that.
22               MS. BARTELS:  And then the final item is that, as
23   far as going back to some of these numbers that you were
24   highlighting with the confidentiality issues, whether any of
25   the topline revenue numbers could be shared in open court so
```

1    it wouldn't be any of the inputs that get there.  But, you

2    know, for example, the revenue from a certain year of a

3    certain contract, that would help us prepare for these first

4    couple of weeks.

5              THE COURT:  I don't know.  I mean, I don't know.

6              I mean, when you say "topline," I thought you were

7    going to talk about -- well, I mean, those are publicly

8    available numbers.  But numbers that might be in SEC filings

9    and the like, those are obviously public.  But if there are

10   otherwise confidentially held numbers, I think I'd have to

11   determine what's a topline number versus not and it's hard

12   to give you a blanket decision on that.

13             MS. BARTELS:  Okay.

14             So we will continue to consider whether those

15   total revenue numbers can be shared.

16             THE COURT:  Yep.  Okay.

17             MS. BARTELS:  Thank you, Your Honor.

18             THE COURT:  All right.

19             Just a couple of other things on my list; these

20   are very much logistics.

21             I understand that you all would like two rows

22   reserved for your teams; is that right?

23             MR. DINTZER:  And, Your Honor, if we could have

24   those not only reserved but deemed part of the counsel area

25   so that our people could use electronics in those rows,

1    please.

2            THE COURT:  Okay.

3            So that would include the row that's inside the

4    well and then the first row after, I mean, in the gallery?

5            MR. DINTZER:  We would ask that, Your Honor.

6            THE COURT:  Okay.

7            Is Google requesting the same?

8            MR. SCHMIDTLEIN:  That's fine, Your Honor, yes.

9            THE COURT:  Okay.

10           So we'll make sure our court security officers

11   understand that those areas are designated for each side and

12   are not to be -- seat anybody in the public in those rows,

13   given that those will be considered to be members of the

14   trial team, so there's that.  And if attendance starts to

15   wane on either side as we move forward, that could change.

16           All right.  You all have rooms now that have been

17   designated in the courthouse, so we've got that.

18           You've done the tech run in the courtroom, I think

19   we've got that checked off.

20           And we have our schedule.

21           Regrettably, I have to add one date to the date we

22   are not sitting, and that is October 13.  I need to attend

23   one of these -- anyway, I can't be here.  I have to be at a

24   judicial committee meeting that is going to be three hours

25   right in the middle of the day.  So anyway, that's where we

1  are.

2          Just again remember, presumptively, we're only

3  going to sit half-days Friday.  If for whatever reason my

4  schedule enables and Friday afternoon opens up, I'll let you

5  know so what we can use the time if it becomes available.

6  But as of now, we're trying to push all of our sentencings

7  and other matters into the afternoon on Fridays.

8          MR. DINTZER:  Your Honor, on that note, is the

9  Court planning on sitting on Columbus Day or Veterans Day?

10          THE COURT:  No.  We won't be sitting on federal

11  holidays.

12          And you've requested Yom Kippur on the 25th?

13          MR. DINTZER:  Yes, Your Honor.

14          THE COURT:  Anyway, the days I have for not

15  sitting are the 25th, the 29th.

16          I'm adding the 13th.

17          And then the 20th and 23rd, I advised you about

18  because I've got a pre-existing commitment to be out of

19  town.

20          MR. DINTZER:  Thank you, Your Honor.

21          THE COURT:  Okay.  All right.

22          Mr. Cavanaugh.

23          MR. CAVANAUGH:  Your Honor, what time do you plan

24  to start, at least for the first week?  Could you give us an

25  idea of what time?

1           THE COURT:  I typically start at 9:30.

2           And the way I'm trying to schedule, we may have --

3    I may personally have matters, other matters at 9:00.

4           I'm going to do the same thing.  I ask in every

5    trial, which is if there are pretrial matters, I may ask the

6    parties to come in earlier than 9:30, just so we can use the

7    9:30 to 5:00 hours for as much testimony as we can get in.

8    I've been known to call parties in before 9:00, so just keep

9    that in mind if you do want to have conversations in

10   advance.

11          MR. CAVANAUGH:  Your Honor, do you have a standard

12   time when you take breaks and when you break for lunch?

13          THE COURT:  Yeah.

14          So we usually go about 9:30 to 11, we'll take

15   about 15 minutes or so, 15, 20 minutes, and then we'll go

16   till 12:30; an hour lunch from 12:30 to 1:30.  And then

17   essentially the same pattern in the afternoon.  We'll go

18   about 90 minutes, break, and then go until the end of the

19   day.

20          MR. CAVANAUGH:  Thank you, Judge.

21          THE COURT:  And you all have worked out with

22   Mr. Zaremba realtime feeds and daily transcripts or whatever

23   it is that you all are seeking from him and whoever, I don't

24   know who will be his afternoon.  He'll be only be here in

25   the mornings and then we'll have another reporter in the

 1  afternoon.

 2          MR. DINTZER:  We have, Your Honor.

 3          THE COURT:  Okay.  All right.

 4          Okay.  That's what I've got on my list.  Is there

 5  anything else?

 6          MR. DINTZER:  Just a few, Your Honor, if I may.

 7          THE COURT:  Sure.

 8          MR. DINTZER:  Regarding joint exhibits,

 9  Your Honor, the CMO requires us to meet and confer on a

10  joint exhibit list.  We have provided numerous emails to

11  Google trying to do this.  They've been non-responsive.  We

12  have -- all we're really trying to do is get a set of JXs

13  for the overlapping exhibits for the two -- there should be

14  really pretty straightforward stuff.  We haven't been able

15  to get them without creating a big -- they haven't been

16  really very responsive, and we'd like a nudge there so that

17  we can get that done so that we don't have the compilation

18  of duplicate exhibits coming into court.

19          THE COURT:  Okay.

20          Is there anything else?

21          MR. DINTZER:  Yes, Your Honor.

22          The process for closing the courtroom.

23          So we've identified two means and we want to know

24  what the Court prefers.

25          For example, if witness X is up there and I have

```
 1    both an open portion and a closed portion, should I complete
 2    the open portion, Counsel will get up, do the open portion
 3    of their cross, and then we close and we do it again where I
 4    do the closed portion and they do the closed portion; or
 5    does the Court envision basically me completing my exam
 6    first on the open and then on the closed and then proceeding
 7    with presumably the closed portion and then opening for
 8    the --
 9              THE COURT:  The former.
10              MR. DINTZER:  The former.  Thank you.
11              THE COURT:  The former.
12              Again, we want to minimize the number of times
13    we're having to ask people to leave.
14              And so ideally what you all should work towards is
15    completing all questioning of closed matters in one session
16    per -- for a witness.
17              We're not going to do a direct open session, then
18    close the direct, then do your cross, direct, open, then
19    close the courtroom for the -- for that portion; otherwise
20    it's going to get very cumbersome, it seems to me.
21              MR. DINTZER:  We'll work with the defense for
22    that, Your Honor.
23              THE COURT:  Mr. Schmidtlein, you look skeptical.
24              MR. SCHMIDTLEIN:  Yeah.
25              No, I mean, so now he's going to get back up after
```

1    I've -- after he's seen my cross and he still has, I guess,

2    a direct portion that he wants to do in the -- I could

3    imagine there being more efficiency to let them get done, we

4    can then assess how much do we really need to go back on our

5    examination, public versus closed.

6            THE COURT:  That's a fair point in the sense

7    that -- I mean, look, I think -- I mean the other way to do

8    it is this:  Complete the open direct, complete the closed

9    direct.  If you think there is a closed cross, do that

10   first.

11           MR. SCHMIDTLEIN:  Right.

12           THE COURT:  And then we'll re-open things for the

13   open portion of your examination.

14           MR. SCHMIDTLEIN:  That's what I would prefer,

15   Your Honor.

16           THE COURT:  I think that makes more sense.

17           MR. SCHMIDTLEIN:  Yep.

18           THE COURT:  And if there is a rebuttal issue,

19   we'll just have to deal with that in rebuttal, I guess.

20           Does that make sense, Mr. Dintzer?

21           MR. DINTZER:  I want to make sure I'm tracking

22   Your Honor.

23           So I examine Mr. X, I complete, if I have some

24   closed questions, we kick everybody out, I finish my closed.

25           They then get up and do they do their --

1          THE COURT:  Cross only on the closed portions of

2     the questions that you've asked.

3          MR. DINTZER:  Okay.

4          And then we re-open and they finish their cross on

5     the open.

6          And if I need to do redirect, then we deal with it

7     at that time as to when things need to be open or closed.

8          THE COURT:  Hopefully minimize it, but I think,

9     yes.

10          MR. DINTZER:  We understand.  We can work with

11     that, Your Honor.

12          THE COURT:  Mr. Cavanaugh.

13          MR. CAVANAUGH:  And to further complicate

14     things --

15          MR. DINTZER:  Of course.

16          MR. CAVANAUGH:  -- when we ask questions of the

17     same witness, it will be -- I'll do -- Mr. Dintzer will do

18     his open direct and his closed direct, I could then start

19     with the closed direct and then go to open?  No?

20          THE COURT:  I think it makes more sense for the

21     plaintiffs to do the open portions consecutively.

22          MR. CAVANAUGH:  In their entirety.

23          THE COURT:  Right.

24          MR. CAVANAUGH:  Fine.

25          THE COURT:  And then you do your closed in their

1    entirety.

2              MR. CAVANAUGH:  He would do his and then I would

3    do mine.

4              THE COURT:  And Mr. Schmidtlein or Google will do

5    its examination for the closed session in response to both

6    plaintiffs, the scope of both plaintiffs' directs, and then

7    we'll re-open, and they will then complete their examination

8    in the open session.

9              MR. CAVANAUGH:  Okay.  Thank you, Your Honor.

10             MR. DINTZER:  Thank you, Your Honor.

11             THE COURT:  And it would be helpful just when a

12   witness is called, to just let me know and let the defense

13   know whether you both will be -- whether both sets of

14   plaintiffs will be questioning the witness.

15             MR. CAVANAUGH:  We have already told them --

16             THE COURT:  Okay.  Great.

17             MR. CAVANAUGH:  -- about those witnesses.

18             MR. DINTZER:  In answer to an earlier question,

19   Professor Rangel will be our first expert, and he will

20   definitely appear during the first week.

21             And Ms. Hammer will be our second expert.

22             THE COURT:  I'm sorry, Hammer?

23             MR. DINTZER:  Hammer.

24             And I believe it's unlikely that she'll appear

25   during our first week, but she might so that we would want

1    the Court to be aware.

2              THE COURT:  Okay.  Terrific.  Thank you.

3    I appreciate that.

4              MR. DINTZER:  Of course.

5              And the last issue I have on my list, Your Honor,

6    is with respect to the spoliation witnesses.  As part of an

7    earlier order, the Court said we have five, and we had

8    identified them.

9              One of those five we have determined not to call,

10   and one of the five is appearing not in our case-in-chief

11   but in the defense case.  And so we would ask to identify

12   two others, understanding that these are people who are

13   specific about our spoliation motion, not just any

14   spoliation questions, but our spoliation motion, and we

15   would ask to be able to redesignate those two for other

16   witnesses.

17             THE COURT:  Well, let me ask you.  Do you think

18   you need them?  I mean --

19             MR. DINTZER:  To be honest, Your Honor, the way we

20   view the spoliation is that it's a relevant issue in the

21   case.

22             THE COURT:  Right.  No, I understand.

23             MR. DINTZER:  So we can ask any question -- any

24   witness about spoliation to the effect it affects their

25   state of mind and the like.

1            The way we understood the Court's order, we can

2    then take -- in our post-trial briefs, we could put a circle

3    around five of them and say, these are the ones that we want

4    the Court to think about for our spoliation motion.

5            And so we'd -- if the Court would rather, we can

6    wait until after trial and say -- we can have this

7    discussion after trial and say, look, these two others add

8    depth to what the three that we've already identified are

9    about, but --

10            THE COURT:  I guess what I would say to you,

11   Mr. Dintzer, is, get back to me if you really need two more.

12            MR. DINTZER:  Okay.

13            THE COURT:  Think about it.

14            And if you think you cannot present what you want

15   to present on spoliation alone through three witnesses,

16   you'll let me know.

17            MR. DINTZER:  Okay.  Thank you, Your Honor.

18            THE COURT:  Mr. Cavanaugh, same thing.

19            MR. CAVANAUGH:  Yes, Your Honor.

20            There are two witnesses we've identified on

21   spoliation where we will also have substantive questions.

22            THE COURT:  Okay.

23            MR. CAVANAUGH:  Savar and Ms. -- Ryan Krueger.

24            THE COURT:  Okay.

25            I think we may not have had a fulsome discussion

1    about this.

2           I am not treating somebody as a "spoliation"

3    witness.  If you are going to ask a fact witness, did you

4    save any of the chats, or if they're going to have some

5    questions about the extent to which they used the chats to

6    conduct business, did they save it, et cetera, I don't

7    consider that somebody a spoliation witness.  If there is

8    somebody who's a tech person who has no testimony regarding

9    the disputed issues that are relevant to the case, then

10   that, in my estimation, is somebody who is a sort of

11   spoliation witness, I guess.

12          MR. DINTZER:  We appreciate that, Your Honor.

13   That clarifies it for us.

14          MR. SCHMIDTLEIN:  Your Honor, they don't have any

15   such witness.

16          I think what I'm hearing today is they want to

17   reserve the right to ask every single Google witness about

18   chats and spoliation, and the witnesses that they've

19   asked -- that they originally asked Your Honor for all were

20   fact witnesses in the case.

21          THE COURT:  Okay.

22          MR. SCHMIDTLEIN:  So I guess the question is, are

23   we really going to -- are they really going to be permitted

24   to ask each and every witness about these issues during the

25   case.  When they were asking for an evidentiary hearing and

1  trying to litigate this motion pretrial, they were limited

2  to five.

3           And I'm not sure I understand why they need two

4  extras if one of the witnesses is coming in in our case,

5  but --

6           THE COURT:  Yeah, well, that's why I asked him if

7  he really needed them.

8           So, look, look, it's a feature of the case, it's

9  something I reserved on.

10          If it's the intention of the plaintiffs to ask

11  each Google employee a limited number of questions, I think

12  we can all live with that and I'll hear what they have to

13  say.  And I don't think I can preclude them from doing it,

14  is the bottom line since it is an outstanding issue, okay?

15          MR. DINTZER:  Thank you, Your Honor.  We have no

16  further issues -- I should check.

17          We do have one last one.

18          At this point, we do not have intention of showing

19  video of depositions.  But if we choose to, the procedure,

20  if -- we would ask for, is that we give Google 48 hours'

21  notice and then we have that available if we choose to show

22  some portion to the Court.

23          And I do have one more thing after that,

24  I'm sorry.  That's why I check, Your Honor.

25          MR. SCHMIDTLEIN:  They didn't list any video

1    witnesses on their witness list, so I'm a little bit

2    surprised to hear that they're now reserving the right to,

3    within 48 hours' notice, call some new witness that they're

4    actually going to show live.  Obviously there's objections

5    and there's other things that may need to be resolved --

6                THE COURT:  Right.

7                MR. SCHMIDTLEIN:  -- around that.

8                To the extent we've identified video testimony

9    that we anticipate calling, I think we've identified that in

10   our witness list, so I'm a little surprised to hear that for

11   the first time today.

12               THE COURT:  Could I just make the following

13   observation?

14               I mean, if you are intending to -- if either side

15   wants to show video, I would urge you to think about how

16   important it is to use the trial day to show a video.

17               Just like you all, I don't intend to work 9:00 to

18   5:00.  And so if there's video I can see outside those

19   hours, I will watch it outside those hours.  I just don't

20   want to waste everybody's time with me staring at a screen

21   when we can instead have a witness here in the box and move

22   things forward.

23               MR. DINTZER:  We will take that advice,

24   Your Honor.

25               THE COURT:  Okay?

1          MR. DINTZER:  The one last thing that I needed to

2     ask about, Your Honor, the rebuttal case.

3          We have --

4          THE COURT:  It's so far away.

5          MR. DINTZER:  It is so far away, and yet it will

6     be here.

7          And we have specific -- the way it was presented

8     in the Court's order, we have specific rebuttal witnesses.

9     And so those are witnesses that we're not planning on

10    calling in our case, but we wanted to make sure we know that

11    there will be a rebuttal case for us to call them in, and

12    that's the only thing we wanted to raise.

13         THE COURT:  Okay.

14         I mean, plaintiffs get a rebuttal case, and we'll

15    get there when we get there.

16         MR. DINTZER:  I appreciate that.  Thank you,

17    Your Honor.

18         THE COURT:  All right.

19         Mr. Schmidtlein, anything you'd like to add to the

20    list?

21         MR. SCHMIDTLEIN:  Just two quick things.

22         One, they made reference to Ms. Hammer, who's

23    going to be, I think, the second expert witness, not in

24    the -- I guess not the first week, the second week of trial.

25         We do have a *Daubert* motion directed at her.

1          THE COURT:  Okay.

2          MR. SCHMIDTLEIN:  And so just a heads-up on that,

3    because I know you've got a lot of other balls in the air.

4          The second issue is, we have -- I think you heard

5    at the last conference, I think Mr. Cavanaugh gave me -- or

6    Mr. Sallet gave me a little bit of a hard time, but we had

7    emailed them promptly after getting the summary judgment

8    ruling asking them to remove exhibits from their exhibit

9    list and they have just recently gotten back to us removing

10   some, not as many as we think they should.  In terms of

11   exhibits, we may have some objections to certain testimony

12   that they seem like they may be persisting on trying to

13   elicit during the trial which we think is covered by those.

14         The other thing we did do also, is we sent them

15   very early on, afterwards, correspondence saying, we think

16   in light of this ruling, the following paragraphs of your

17   two experts' reports are out, and we don't believe any

18   testimony or opinions offered in connection with those

19   paragraphs are, you know, admissible on the case anymore.

20         They haven't responded to that email.  We've got a

21   while before the state's experts are going to come on.  But

22   if we're going to have a fight over that, we need to know,

23   and we need to get a response from them very soon.

24         THE COURT:  Okay.

25         And before you -- Mr. Schmidtlein, do you have

 1   a -- can you give us a date on responding to the joint

 2   exhibit issue?

 3           MR. SCHMIDTLEIN:  We will respond by next

 4   Wednesday.

 5           THE COURT:  Okay.

 6           MR. CAVANAUGH:  Your Honor, on the issue of

 7   experts, we're perfectly mindful of the Court's summary

 8   judgment ruling.  Our experts' testimony will be consistent

 9   with that ruling.  We cut about 20 percent of our exhibits.

10   We filed them yesterday as the Court directed.

11           Going through a paragraph-by-paragraph review of

12   our expert reports, which they've objected to completely

13   going into evidence, seems like a completely needless

14   exercise on the eve of trial.

15           MR. SCHMIDTLEIN:  That's why we sent it to them

16   the day after your summary judgment opinion so it wasn't

17   going to be on the eve of trial.

18           And this was the central feature of their case.

19   The vertical, the specialized vertical search providers is

20   the central feature of Professor Baker's opinions or one of

21   the major features.  And we need clarity on whether we're

22   not going to have to deal with those at trial.

23           And same with Dr. Amaldoss.

24           MR. CAVANAUGH:  Your Honor, we lay out in our

25   pretrial brief why special vertical providers remain

```
 1   relevant in this case.  They are the largest advertisers
 2   providing billions and billions of dollars to a monopolist,
 3   and that testimony remains relevant.
 4             THE COURT:  Okay.
 5             All right.  Well, look, it's one of what
 6   undoubtedly will be additional skirmishes we may have to
 7   deal with in the coming weeks, and we'll just -- we'll keep
 8   an eye on it and we'll get to it.
 9             And if you're not getting responses,
10   Mr. Schmidtlein, then I'll deal with it at that point.
11   There's a lot between now and then.
12             All right.  So with that, is there anything else
13   we ought to discuss before we adjourn?
14             MR. DINTZER:  Not for the Plaintiffs States, not
15   for the DOJ Plaintiffs, Your Honor.
16             MR. CAVANAUGH:  Not for us, Your Honor.
17             MR. SCHMIDTLEIN:  Nothing for Google, Your Honor.
18             THE COURT:  I guess I do -- I have one more thing,
19   and that is, what are your expectations in terms of the
20   length of openings on the 12th?
21             MR. SCHMIDTLEIN:  I think you have already --
22             THE COURT:  Did I already do that?
23             MR. SCHMIDTLEIN:  You already dealt with that.
24             THE COURT:  Great.  Okay.  Then I have nothing
25   else.
```

1            All right.  Thank you, all, very much.  We'll see

2   you soon.

3            COURTROOM DEPUTY:  All rise.

4            THE COURT:  Don't wait for me, please.

5            COURTROOM DEPUTY:  This court stands in recess.

6            (Proceedings concluded at 5:18 p.m.)

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__September 2, 2023____    

                  William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [4]** 5/2 77/20 108/3 108/5
**MR. ARTEAGA: [4]** 29/12 31/15 33/18 34/19
**MR. CAVANAUGH: [18]** 81/12 88/8 92/23 93/11 93/20 97/13 97/16 97/22 97/24 98/2 98/9 98/15 98/17 100/19 100/23 106/6 106/24 107/16
**MR. DAHLQUIST: [2]** 49/16 51/20
**MR. DINTZER: [80]** 8/4 8/24 9/6 9/8 9/10 9/14 9/18 9/25 11/18 12/1 12/11 12/17 12/20 13/8 13/11 14/9 14/24 15/9 15/18 15/21 17/23 21/12 23/8 23/10 27/16 28/6 29/18 30/4 31/4 31/11 34/4 36/23 47/18 76/15 80/11 80/15 80/24 81/6 84/21 84/24 85/12 85/17 85/21 85/23 86/17 86/22 87/8 87/22 87/24 88/5 90/23 91/5 92/8 92/13 92/20 94/2 94/6 94/8 94/21 95/10 95/21 96/21 97/3 97/10 97/15 98/10 98/18 98/23 99/4 99/19 99/23 100/12 100/17 101/12 102/15 103/23 104/1 104/5 104/16 107/14
**MR. GOLDSTEIN: [10]** 37/2 37/20 37/25 38/12 39/2 39/10 47/21 48/16 48/23 49/7
**MR. HERRMANN: [20]** 52/25 53/2 53/5 53/9 53/12 53/16 55/2 55/11 55/22 55/25 56/3 57/5 57/8 57/12 70/15 71/21 74/9 74/21 75/23 76/4
**MR. SAFTY: [19]** 58/5 59/6 59/12 60/23 62/12 63/7 64/2 64/10 65/11 65/23 66/6 67/8 67/18 68/24 71/23 72/6 72/18 72/25 73/5
**MR. SCHMIDTLEIN: [56]** 7/3 7/15 7/24 10/12 10/20 10/24 11/9 11/13 11/25 12/19 13/1 13/21 16/7 16/20 16/25 17/3 17/6 19/6 20/23 36/12 39/14 40/24 43/9 43/12 43/16 43/24 46/5 58/3 69/15 70/1 70/6 78/6 78/9 78/14 79/17 79/24 84/17 88/13 89/5 89/10 91/8 95/24 96/11 96/14 96/17 101/14

104/21 105/2 106/3 106/15 107/17 107/21 107/23
**MR. SUNSHINE: [4]** 23/17 24/9 26/18 29/7
**MS. BARTELS: [4]** 89/11 89/22 90/13 90/17
**MS. VAN DYCK: [5]** 80/8 81/19 82/21 83/6 84/8
**THE COURT REPORTER: [1]** 28/4
**THE COURT: [207]**

**,**

**'07 [1]** 65/9
**'11 [1]** 65/9
**'16 [1]** 65/9
**'18 [1]** 65/10
**'19 [1]** 65/10
**'20 [1]** 65/10

**0**

**0047 [1]** 2/17
**0316 [1]** 2/13
**0340 [1]** 2/4

**1**

**1,074 [1]** 85/3
**1.12 [2]** 57/5 60/17
**1.14 [1]** 57/6
**1.6 [2]** 57/2 57/8
**10 [1]** 62/24
**10-101 [1]** 2/7
**100 [1]** 26/4
**10022 [1]** 3/19
**10036-6710 [1]** 3/11
**101 [1]** 2/7
**105 [1]** 42/4
**11 [1]** 93/14
**1100 [1]** 2/3
**1133 [1]** 3/10
**11th [3]** 58/16 64/8 80/12
**12 [2]** 70/24 71/7
**123 [1]** 65/15
**12:30 [2]** 93/16 93/16
**12th [3]** 3/14 73/14 107/20
**13 [1]** 91/22
**13-plus [1]** 62/6
**1300 [1]** 3/5
**13th [1]** 92/16
**14 [1]** 65/16
**14th [1]** 58/8
**15 [3]** 62/24 93/15 93/15
**150 [3]** 8/8 8/14 8/21
**16 [1]** 63/22
**18 [1]** 63/21
**18 years [1]** 63/5
**18-year-old [1]** 63/18
**1:30 [1]** 93/16
**1st [1]** 50/6

**2**

**20 [6]** 63/18 71/5 71/25

**20-3010 [2]** 1/4 5/3
**20001 [2]** 2/13 4/5
**20005 [1]** 3/15
**2005 [2]** 81/6 81/7
**2009 [1]** 63/23
**2010 [1]** 62/6
**2011 [5]** 10/22 11/10 12/19 64/11 64/14
**2012 [1]** 12/17
**2016 [2]** 64/11 64/13
**202 [5]** 2/4 2/17 2/22 3/15 4/5
**202-476-0316 [1]** 2/13
**2023 [2]** 1/5 109/7
**20530 [1]** 2/17
**209 [1]** 2/21
**20th [1]** 92/17
**212 [2]** 3/11 3/20
**21st [2]** 77/11 77/14
**2200 [1]** 3/10
**23rd [1]** 92/17
**25 [1]** 42/4
**256 [3]** 58/14 58/24 70/22
**25th [2]** 92/12 92/15
**26th [2]** 26/22 28/13
**2793 [1]** 3/11
**29th [1]** 92/15

**3**

**3010 [2]** 1/4 5/3
**307-0340 [1]** 2/4
**3249 [1]** 4/5
**333 [1]** 4/4
**335-2793 [1]** 3/11
**354-3249 [1]** 4/5
**356 [2]** 58/8 67/19
**36 [1]** 50/8
**37 [1]** 50/8
**3:00 [1]** 1/6

**4**

**404 [1]** 41/20
**4053 [1]** 3/20
**415 [1]** 2/8
**434-5000 [1]** 3/15
**45 [1]** 26/5
**450 [3]** 2/7 2/12 2/16
**48 [4]** 71/17 71/19 102/20 103/3
**49 [1]** 74/23
**4th [1]** 17/18

**5**

**5000 [1]** 3/15
**508-6000 [1]** 3/7
**53 [1]** 84/4
**5300 [1]** 2/8
**590 [1]** 3/19
**5:00 [2]** 93/7 103/18
**5:18 [1]** 108/6
**5th [2]** 9/16 9/23

**6**

**600 [1]** 2/21
**6000 [1]** 3/7
**60604 [1]** 2/22
**64 [1]** 70/23

**666 [2]** 84/15 84/15
**6710 [1]** 3/11

**7**

**710-0047 [1]** 2/17
**72 [2]** 71/17 71/19
**720 [1]** 3/7
**725 [1]** 3/14
**77 [2]** 74/22 75/1
**7th [1]** 3/6

**8**

**80203 [1]** 3/6
**803-4053 [1]** 3/20
**805-8563 [1]** 2/22
**8563 [1]** 2/22

**9**

**90 [1]** 93/18
**934-5300 [1]** 2/8
**94102 [1]** 2/8
**99 [1]** 65/16
**9:00 [3]** 93/3 93/8 103/17
**9:30 [4]** 93/1 93/6 93/7 93/14

**A**

**abandoned [1]** 34/25
**ability [5]** 26/14 28/15 49/10 65/24 77/16
**able [15]** 11/11 14/1 41/17 54/3 55/5 56/18 63/25 75/13 77/24 77/25 78/1 83/25 89/16 94/14 99/15
**about [126]**
**above [1]** 109/4
**above-titled [1]** 109/4
**absent [2]** 32/25 33/11
**absolutely [2]** 40/4 67/8
**abut [1]** 65/12
**academics [1]** 45/9
**ACC [7]** 42/6 42/7 42/20 42/23 43/2 43/25 44/8
**accepted [3]** 54/1 54/3 56/7
**access [10]** 52/13 52/14 57/20 76/25 77/8 80/13 82/11 83/12 83/15 84/1
**accommodate [4]** 22/22 34/12 34/13 82/8
**accordingly [1]** 44/22
**ACCs [2]** 42/13 42/15
**accurate [1]** 48/15
**acknowledge [1]** 50/5
**across [3]** 23/24 31/24 56/10
**action [2]** 5/3 85/7
**Activision [2]** 83/21 83/24
**actual [5]** 38/14 44/7 49/15 52/22 56/19
**actually [18]** 21/25 25/7 36/8 40/13 41/10

**1** 46/12 46/16 46/17 47/18 52/23 57/3 57/16 58/11 64/24 77/1 84/21 103/4
**ad [1]** 51/4
**add [4]** 79/7 91/21 100/7 104/19
**adding [1]** 92/16
**addition [1]** 20/21
**additional [5]** 6/11 8/6 8/8 45/8 107/6
**additions [1]** 9/1
**address [8]** 16/15 49/18 51/5 51/16 55/3 58/4 73/1 88/18
**addressed [3]** 16/16 36/1 51/1
**addressing [2]** 36/24 47/19
**adjourn [1]** 107/13
**administrative [1]** 79/2
**administratively [1]** 78/20
**admissibility [1]** 78/17
**admissible [2]** 47/13 105/19
**admitted [3]** 51/10 86/11 86/14
**admitting [1]** 84/25
**advance [8]** 7/8 13/23 14/2 22/21 49/19 59/3 71/14 93/10
**advanced [2]** 28/25 46/7
**advantage [2]** 24/15 64/1
**adversary [4]** 12/7 14/19 17/12 17/12
**adverse [3]** 6/11 10/3 11/15
**advertisers [1]** 107/1
**advertising [2]** 47/24 67/2
**advice [1]** 103/23
**advised [2]** 58/21 92/17
**affected [1]** 27/13
**affects [1]** 99/24
**after [17]** 5/13 8/17 9/24 18/1 41/23 49/6 71/22 75/17 87/7 91/4 95/25 96/1 100/6 100/7 102/23 105/7 106/16
**afternoon [16]** 5/2 5/9 5/17 7/11 29/12 29/13 37/2 49/19 52/25 53/1 59/7 92/4 92/7 93/17 93/24 94/1
**afterwards [1]** 105/15
**again [29]** 9/11 12/22 17/3 26/10 33/7 33/11 33/15 33/16 38/22 40/18 41/25 42/12 55/21 62/16 63/16 64/5 65/8 68/9 69/10 70/25 71/7 74/3 75/21 76/20 87/3 89/3 92/2 95/3 95/12

**A**

against [1] 63/6
age [1] 72/22
ago [5] 25/10 58/7 60/2 62/24 63/5
agree [11] 8/7 10/8 11/2 27/24 37/16 47/22 50/8 51/14 69/3 82/13 82/17
agreed [3] 10/8 59/13 89/6
agreement [10] 26/21 32/17 35/4 41/14 56/11 64/11 64/11 70/19 72/12 88/14
agreements [6] 12/14 46/10 56/10 62/2 62/4 63/1
agrees [1] 55/4
ahead [2] 55/9 60/5
ahold [1] 63/25
aided [1] 4/6
air [1] 105/3
Airlines [1] 83/22
al [2] 1/3 5/4
alarms [1] 36/14
alert [1] 69/19
Alexa [1] 41/8
aligned [2] 13/20 15/3
all [106] 5/9 5/12 5/14 5/16 5/21 6/9 7/16 8/5 8/12 8/20 10/2 10/4 11/20 12/24 13/1 14/6 15/5 15/6 15/7 17/16 18/25 21/20 22/10 23/4 23/11 24/10 26/5 27/24 29/9 32/12 34/19 37/1 39/13 41/6 42/13 43/13 44/1 44/17 44/18 44/25 45/18 47/1 47/6 48/7 48/8 49/8 49/20 50/18 51/7 51/19 51/22 51/23 51/25 52/6 55/21 55/23 56/10 56/16 57/7 61/9 62/13 69/3 72/21 73/8 73/13 74/18 74/23 74/25 75/11 76/5 76/9 76/24 77/8 78/23 79/13 81/10 81/15 84/9 84/15 86/10 86/23 88/17 89/6 89/7 90/18 90/21 91/16 91/16 92/6 92/21 93/21 93/23 94/3 94/12 95/14 95/15 101/19 102/12 103/17 104/18 107/5 107/12 108/1 108/1 108/3
all right [6] 5/9 10/2 23/11 37/1 48/8 57/7
allegation [1] 43/6
allegations [2] 34/25 40/25
alleged [2] 35/25 36/3
allocate [1] 21/22
allocated [1] 18/21
allow [5] 10/8 14/5 25/17 65/20 79/12
allowed [1] 47/2

alluded [1] 72/11
almost [3] 18/23 41/20 55/20
alone [3] 31/20 78/24 100/15
along [2] 14/9 86/19
already [14] 9/6 16/16 24/13 24/21 25/4 25/13 61/15 73/3 76/12 98/15 100/8 107/21 107/22 107/23
also [17] 7/18 8/11 11/13 30/14 33/4 34/10 39/17 47/8 50/5 53/9 53/9 61/5 63/11 70/21 87/13 100/21 105/14
alternative [2] 37/13 41/22
although [1] 35/25
always [2] 42/21 62/20
am [11] 11/5 22/6 22/15 23/17 36/1 38/19 54/21 65/6 76/11 77/4 101/2
Amaldoss [1] 106/23
Amazon [1] 41/8
Amendment [1] 82/12
AMERICA [2] 1/3 5/3
American [2] 81/21 83/22
Americas [1] 3/10
AMIT [1] 1/10
among [1] 18/3
amongst [1] 46/20
amount [3] 18/19 21/5 21/18
amounts [1] 74/17
analysis [1] 96/4
Android [4] 35/9 35/13 35/18 36/22
another [10] 10/24 25/9 25/11 38/24 64/3 67/15 68/4 68/10 69/11 93/25
answer [8] 9/9 20/24 25/4 53/16 54/5 70/7 70/12 98/18
answering [1] 58/6
answers [4] 14/21 14/22 22/6 39/18
anti [15] 36/3 36/4 38/10 38/25 39/19 40/7 41/14 41/24 42/7 42/16 42/24 42/25 43/6 43/7 44/7
anti-competitive [15] 36/3 36/4 38/10 38/25 39/19 40/7 41/14 41/24 42/7 42/16 42/24 42/25 43/6 43/7 44/7
anticipate [1] 103/9
anticipated [3] 6/22 69/16 76/11
anticipation [1] 17/6
antitrust [4] 2/16 2/20 3/4 83/19
any [34] 7/2 9/1 21/21

31/20 40/5 40/5 40/6 41/13 45/4 50/14 50/20 57/19 58/1 69/9 72/25 80/4 80/15 83/13 84/17 86/8 86/19 88/3 89/24 90/1 99/13 99/23 99/23 101/4 101/14 102/25 105/17
anybody [6] 7/2 23/6 25/17 27/11 74/15 91/12
anymore [1] 105/19
anything [11] 20/3 31/20 43/19 51/24 76/9 78/1 86/5 94/5 94/20 104/19 107/12
anyway [5] 43/21 81/8 91/23 91/25 92/14
AOSP [2] 37/6 37/12
APIs [1] 37/13
apology [1] 76/20
apparent [3] 14/14 14/20 60/20
appear [2] 98/20 98/24
APPEARANCES [3] 1/11 2/24 3/21
appearing [1] 99/10
Apple [12] 5/25 11/14 15/1 15/3 15/4 24/12 24/20 28/3 41/8 46/11 69/20 70/11
apply [2] 56/20 77/10
appreciate [16] 9/25 23/8 25/16 33/3 34/2 49/20 50/24 60/23 64/25 75/24 81/24 87/8 88/5 99/3 101/12 104/16
appreciated [2] 26/23 82/2
approach [2] 28/4 53/5
appropriate [2] 51/12 52/15
appropriately [3] 22/13 48/22 70/14
approximation [3] 18/15 18/16 21/21
apps [1] 37/13
are [164]
area [2] 62/22 90/24
areas [2] 37/4 91/11
aren't [1] 8/9
argue [2] 46/10 48/20
argued [1] 35/19
arguing [2] 47/6 78/18
argument [3] 34/24 48/18 49/14
arguments [1] 78/16
arms [1] 64/24
around [9] 38/17 42/10 64/24 65/3 66/3 80/1 88/18 100/3 103/7
Arteaga [2] 3/18 29/10
articulate [1] 66/20
articulation [1] 72/19
as [123]
Asia [2] 32/1 33/23

ask [34] 6/25 7/17 14/10 22/11 24/5 32/2 33/20 38/17 55/6 56/18 57/4 68/3 68/9 69/10 70/15 71/16 85/1 85/23 89/18 91/5 93/4 93/5 95/13 97/16 99/11 99/15 99/17 99/23 101/3 101/17 101/24 102/10 102/20 104/2
asked [18] 17/25 18/1 19/5 22/10 24/22 39/18 58/6 60/13 61/8 65/15 67/3 67/18 75/4 87/11 97/2 101/19 101/19 102/6
asking [6] 21/9 45/14 49/13 86/13 101/25 105/8
ASOP [1] 39/16
aspect [1] 41/3
aspects [2] 31/7 46/6
assert [1] 81/7
asserted [6] 12/4 12/23 13/9 13/15 13/18 13/22
assess [1] 96/4
assessment [1] 82/17
Assistant [5] 36/6 40/24 41/2 41/9 44/9
assume [5] 15/10 19/12 21/16 75/12
assumption [2] 15/14 29/3
attaching [1] 77/5
attempt [1] 48/10
attend [1] 91/22
attendance [1] 91/14
attention [1] 9/2
attorneys [1] 24/23
auction [1] 67/2
audible [1] 41/22
audio [2] 79/11 83/9
August [6] 17/18 50/6 58/8 58/16 64/7 80/12
authorization [1] 77/9 82/18
authors [1] 67/13
available [8] 27/4 35/14 80/13 82/8 83/20 90/8 92/5 102/21
Avenue [4] 2/7 3/10 3/19 4/4
avoid [1] 79/13
aware [3] 16/14 82/6 99/1
away [5] 33/6 42/8 42/11 104/4 104/5
awfully [1] 39/24

**B**

back [26] 9/15 16/12 16/13 18/2 31/25 34/22 38/13 38/23 44/9 47/8 47/23 48/5 53/23 60/24 63/6 67/14 68/10 69/10 71/17 75/9 89/23

105/25 96/4 100/11 105/9
background [1] 38/4
bad [1] 39/6
bag [1] 30/5
Baker's [1] 106/20
balance [1] 33/7
balancing [3] 59/3 68/1 68/7
balls [1] 105/3
Barrett [1] 4/4
Bartels [1] 2/15
Bartles [1] 89/11
Barton [6] 12/1 12/3 12/5 13/7 13/8 13/16
based [5] 38/19 45/25 53/21 63/13 73/22
baseline [1] 77/4
bases [1] 43/22
basically [6] 12/6 18/10 18/18 21/17 25/5 95/5
basis [8] 13/18 22/3 39/5 39/7 40/4 44/24 56/12 57/18 85/6
be [188]
beam [1] 28/24
bear [2] 6/6 6/7
because [47] 7/8 11/1 15/16 15/24 17/8 20/9 22/12 22/14 24/3 27/11 28/10 28/14 30/2 33/22 35/10 37/11 38/15 38/21 40/6 40/8 40/11 40/15 42/16 49/13 52/6 54/25 57/12 58/16 58/19 59/2 59/7 63/1 64/12 69/20 72/3 72/12 72/18 72/20 75/18 79/1 79/15 85/13 87/17 89/3 91/12 92/18 105/3
become [4] 14/20 45/17 78/20 88/22
becomes [3] 27/23 89/1 92/5
been [29] 5/13 9/15 18/11 19/14 25/20 27/9 33/12 34/6 34/21 35/5 35/11 38/2 40/9 59/8 59/9 63/1 76/20 76/20 83/19 83/20 85/2 86/3 89/7 89/16 91/16 93/8 94/11 94/14 94/15
before [13] 1/10 12/21 50/6 72/2 77/1 82/22 83/14 86/18 87/7 93/8 105/21 105/25 107/13
begin [2] 74/25 75/2
beginning [4] 41/1 43/17 85/3 86/3
behalf [3] 5/8 49/17 80/7
being [12] 20/8 22/24 24/22 25/25 29/22 33/14 49/2 51/9 56/18 64/22 74/15 96/3
belief [2] 20/18 50/3
believe [17] 11/22

**B**

believe... [16] 14/12
49/25 50/3 50/16 50/17
50/18 55/4 57/13 63/18
63/24 70/21 70/24
80/18 80/18 98/24
105/17
BELKNAP [1] 3/9
benefit [3] 26/11 26/13
48/21
benefits [3] 44/1 44/25
47/7
bespoke [3] 59/24 61/2
72/23
best [7] 23/7 25/23
27/20 34/9 34/10 34/12
78/10
better [9] 32/7 45/13
46/18 46/19 46/21 51/1
70/8 70/9 70/13
between [12] 12/4
16/14 19/15 24/25 34/5
35/13 35/17 35/18 36/7
38/14 85/13 107/11
beyond [1] 28/14
big [6] 28/2 45/17
60/21 67/6 72/12 94/15
billions [2] 107/2 107/2
binder [1] 53/13
binders [1] 53/9
bit [13] 5/11 16/17 17/3
24/11 35/9 36/7 42/10
42/12 45/7 70/16 78/6
103/1 105/6
black [1] 56/22
blanche [1] 8/8
blanket [1] 90/12
block [2] 60/4 60/8
blocks [1] 54/17
Blue [1] 83/22
blunt [1] 37/4
boilerplate [1] 72/18
boomerang [2] 47/23
48/12
Boston [1] 83/22
both [13] 9/19 13/25
19/15 22/16 47/10 75/4
79/11 85/20 95/1 98/5
98/6 98/13 98/13
bottom [3] 47/5 61/25
102/14
box [2] 14/12 103/21
boxes [1] 57/17
brass [1] 63/15
break [2] 93/12 93/18
breaks [1] 93/12
breeze [1] 68/16
brief [5] 37/3 47/21
53/6 64/7 106/25
briefing [1] 59/17
briefings [2] 49/1 51/3
briefly [4] 31/15 71/23
80/11 89/12
briefs [1] 53/8 100/2
brightlines [1] 64/14
bring [3] 43/25 45/12
57/14
bringing [1] 25/21

broadcast [5] 77/5
77/6 82/25 83/7 83/8
broadcasting [2] 82/19
83/3
broader [1] 64/25
Broadway [1] 3/5
brought [3] 9/2 29/22
43/4
browser [6] 46/10
46/13 46/17 48/2 48/12
48/21
browsers [3] 46/20
46/22 47/4
Bruce [1] 3/2
bucket [4] 26/25 44/7
59/4 61/17
bulk [1] 57/15
burden [5] 24/1 31/18
32/16 33/24 50/21
51/11 55/5 69/11 74/2
burden-shifting [2]
50/21 51/11
burdensome [3] 23/6
34/1 60/13
business [12] 23/25
31/2 32/1 65/2 67/10
71/20 87/11 87/16
87/18 87/20 87/21
101/6
businesspeople [1]
62/19
businessperson [2]
62/17 62/18

**C**

c-suite [1] 34/11
CA [1] 2/8
calendar [2] 28/15
58/12
California [1] 83/22
call [14] 15/15 27/12
27/14 27/15 27/17
27/18 28/12 32/4 32/10
77/22 93/8 99/9 103/3
104/11
called [11] 14/17 16/24
17/12 22/25 25/18
25/25 25/25 27/2 33/22
41/22 98/12
calling [6] 17/2 22/4
29/17 33/22 103/9
104/10
calls [1] 14/15
came [4] 22/2 51/17
58/23 82/22
can [90] 6/25 6/25 11/1
11/3 11/7 12/9 18/4
20/13 22/3 22/21 22/22
23/7 25/23 26/16 28/1
28/24 28/25 31/15 32/2
33/15 33/25 46/25
47/22 48/20 48/21 49/1
49/1 49/5 50/20 51/12
52/9 56/18 56/24 58/1
59/5 59/9 60/11 62/18
62/20 64/3 64/24 65/3
66/4 66/18 66/19 66/21

68/21 69/1 69/14 70/9
70/13 70/20 71/12 72/2
73/17 74/9 74/11 75/1
75/2 76/16 76/17 77/22
79/18 82/13 83/9 85/8
85/25 86/5 86/14 86/18
87/6 90/15 92/5 93/6
93/7 94/17 96/4 97/10
99/23 100/1 100/5
100/6 102/12 102/13
103/18 103/21 106/1
can't [12] 7/15 8/14 9/3
22/6 24/6 28/13 41/14
64/21 71/12 72/19 83/2
91/23
candidly [1] 21/5
cannot [5] 48/4 63/23
100/14
capabilities [2] 32/7
32/8
capable [2] 24/23 33/4
care [8] 5/17 44/17
52/7 73/20 76/6 81/18
84/10 87/12
careful [2] 53/20 81/8
carefully [1] 8/11
Carr [1] 3/4
carte [1] 8/7
carve [1] 75/21
case [57] 8/22 12/7
18/12 21/14 21/16
25/11 25/13 25/22
32/11 33/2 38/21 39/8
41/1 42/5 43/17 43/22
45/4 45/7 45/8 45/18
45/21 46/4 47/2 50/11
50/21 53/14 62/14
62/15 69/7 70/3 74/16
76/2 82/5 83/21 83/22
85/3 86/8 86/9 87/1
87/2 87/16 88/10 99/10
99/11 99/21 101/9
101/20 101/25 102/4
102/8 104/2 104/10
104/11 104/14 105/19
106/18 107/1
cases [7] 6/17 15/16
25/20 26/7 65/14 83/19
83/23
categorically [1] 66/10
categories [4] 61/20
63/9 64/25 68/23
categorize [1] 64/15
categorizing [1] 65/1
category [10] 10/21
19/24 26/9 62/3 64/23
65/8 67/1 68/21 85/20
89/4
Category 3 [1] 65/8
caught [1] 8/2
cause [5] 6/24 61/3
62/11 63/19 66/15
causing [1] 38/10
Cavanaugh [3] 3/8 5/6
80/3 81/11 92/22 97/12
100/18 105/5
Center [1] 3/5

certain [7] 28/9 38/9
65/20 67/25 90/2 90/3
105/11
certainly [7] 35/21 43/1
51/13 52/22 57/19
57/19 84/8
certification [1] 87/19
Certified [1] 4/3
certify [1] 109/2
cetera [4] 49/24 86/14
86/14 101/6
CH [1] 4/4
challenge [6] 34/7
34/17 72/9 74/22 74/23
83/13
challenges [2] 33/3
74/22
challenging [2] 75/1
83/11
chambers [2] 75/17
76/1
chance [1] 29/4
Chang [3] 3/17 29/17
31/18
change [2] 28/2 91/15
changes [1] 64/21
channel [2] 36/9 44/15
chats [3] 101/4 101/5
101/18
check [3] 14/12 102/16
102/24
checked [1] 91/19
Chicago [1] 2/22
chief [1] 99/10
choose [2] 102/19
102/21
choosing [1] 37/9
chunk [1] 72/12
chunks [1] 78/11
circle [2] 47/8 100/2
circuit [2] 11/1 45/6
circumstance [1] 7/5
circumstances [3]
33/1 33/12 78/10
cited [4] 25/13 26/6
59/9 61/23
civil [5] 5/3 77/10 83/3
86/8 86/9
claim [4] 13/14 36/4
42/15 46/7
claiming [1] 38/15
42/23
claims [2] 37/24 39/20
clarification [3] 8/24
70/16 74/24
clarifies [1] 101/13
clarify [3] 9/21 17/8
57/5
clarity [2] 85/11 106/21
clause [1] 54/23
clauses [2] 55/8 55/12
clean [1] 26/4
clear [12] 16/23 26/4
38/11 42/22 45/3 47/10
48/24 49/13 54/7 54/15
65/12 87/25

clearing [1] 82/15
clearly [5] 14/15 20/25
60/14 62/1 64/6
client [4] 32/24 34/17
58/16 72/1
clients [1] 81/12
close [6] 66/23 69/17
75/13 95/3 95/18 95/19
closed [23] 52/18
69/24 78/15 78/19
78/23 80/20 95/1 95/4
95/4 95/6 95/7 95/15
96/5 96/8 96/9 96/24
96/24 97/1 97/7 97/18
97/19 97/25 98/5
closer [3] 44/10 63/20
65/10
closing [1] 94/22
CMO [1] 94/9
CO [1] 3/6
coag.gov [1] 3/7
cognizable [1] 47/25
cognizant [1] 88/2
collateral [1] 48/11
colleague [1] 47/18
color [1] 12/9
Colorado [3] 3/2 3/3
3/5 87/2
COLUMBIA [1] 1/1
Columbus [1] 92/9
combination [1] 42/24
come [24] 7/7 7/17
8/17 14/13 18/2 20/11
22/25 23/21 23/24
24/24 38/8 38/23 40/15
41/17 42/4 42/20 44/19
63/6 73/18 74/18 83/16
87/25 93/6 105/21
comes [4] 9/24 49/4
63/24 69/13
comfortable [1] 9/20
coming [10] 22/21
31/25 50/4 68/9 69/22
76/13 79/4 94/18 102/4
107/7
comment [2] 31/22
84/16
comments [2] 68/4
75/10
commercial [3] 38/3
39/10 70/2
commercially [3]
58/20 59/1 67/11
commitment [1] 92/18
committee [1] 91/24
common [7] 12/4 12/7
12/23 13/15 13/18
13/21 14/4
communicate [1] 6/24
communications [4]
6/10 6/16 14/5 14/7
company [14] 10/16
11/10 12/10 12/15
24/20 32/2 32/5 32/13
53/15 62/20 63/3 63/5
65/20 87/17
compared [1] 24/16
compatibility [1] 35/4

**C**

compelled [1] 72/20
compelling [5] 32/25 33/1 33/12 35/15 37/12
competing [1] 13/3
competition [9] 46/7 46/12 46/14 46/16 46/17 46/19 46/24 48/12 50/9
competitive [23] 36/3 36/4 38/10 38/25 39/19 40/7 41/14 41/24 42/7 42/16 42/24 42/25 43/6 43/7 44/1 44/7 46/15 47/7 47/8 50/12 50/23 61/3 66/15
competitor [1] 63/25
compilation [1] 94/17
complaint [6] 35/5 35/22 37/24 39/17 40/19 43/19
complete [5] 95/1 96/8 96/8 96/23 98/7
completely [2] 106/12 106/13
completing [2] 95/5 95/15
complexity [2] 33/24 78/22
complicate [1] 97/13
complicated [1] 83/13
computer [1] 4/6
computer-aided [1] 4/6
concern [6] 17/23 29/21 52/21 52/22 64/2 80/22
concerned [2] 48/1 54/21
concerning [6] 22/20 34/24 35/4 44/19 61/24 62/4
concerns [3] 7/2 80/20 81/3
concluded [1] 108/6
conclusion [2] 16/10 45/25
conduct [19] 34/25 35/19 35/25 36/3 38/9 38/14 39/6 39/19 40/6 41/24 42/7 43/6 44/8 46/7 46/24 48/4 48/6 77/9 101/6
confer [2] 75/11 94/9
conference [1] 1/9 5/13 105/5
conferred [1] 75/17
confers [1] 89/20
confidence [4] 19/1 45/23 45/23 80/25
confident [2] 44/22 44/23
confidential [7] 55/5 59/1 60/9 65/21 67/9 72/13 79/14
confidentiality [11] 5/25 52/2 54/17 70/17 78/7 81/2 83/14 88/17

confidentially [1] 90/10
confirmed [1] 67/14
confusion [1] 56/25
connect [1] 77/16
connecting [1] 82/19
connection [1] 105/18
CONNOLLY [1] 3/14
consecutively [1] 97/21
consider [6] 48/22 77/5 84/7 86/8 90/14 101/7
consideration [6] 47/1 47/14 63/9 63/13 64/4 81/24
considered [3] 50/22 59/10 91/13
consistent [4] 37/14 56/9 67/21 106/8
constituent [1] 60/19
constitute [1] 82/19
Constitution [1] 4/4
Consumer [1] 3/3
consumers [1] 46/20
contact [2] 6/21 75/16
contained [1] 62/9
contains [2] 59/19 67/10
contend [1] 35/13
contends [1] 35/12
content [1] 65/17
contention [1] 39/18
contest [1] 41/15
contested [1] 64/22
context [2] 45/9 45/10
continue [2] 28/5 90/14
CONTINUED [2] 3/1 4/1
continues [1] 77/10
contract [12] 42/22 42/23 42/24 43/7 50/10 59/19 60/16 61/24 66/12 69/1 72/23 90/3
contracts [17] 35/7 38/4 54/14 54/16 56/12 56/17 56/20 57/16 59/24 60/24 61/1 61/9 61/14 61/16 68/24 85/6 85/7
conversation [2] 13/23 19/18
conversations [2] 84/5 93/9
convey [1] 64/5
convince [1] 38/16
Cook [1] 24/21
cooperating [1] 14/21
coordinate [1] 70/14
correct [7] 10/10 11/5 11/24 11/25 16/25 27/9 109/3
corrected [1] 9/15
correspondence [1] 105/15
could [37] 7/7 13/22

29/4 50/10 55/12 55/13 55/15 56/14 56/19 58/10 61/12 62/24 65/19 66/3 71/16 77/14 77/23 78/17 82/9 83/24 85/10 86/18 87/25 88/22 89/25 90/23 90/25 91/15 92/24 96/2 97/18 100/2 103/12
couldn't [1] 28/16
counsel [13] 11/21 13/25 14/1 14/5 14/11 32/23 72/6 80/6 80/7 81/15 90/24 95/2
counterbalance [1] 23/2
counterparties [1] 62/14
country [2] 23/24 31/24
couple [6] 46/6 60/2 61/19 65/18 90/4 90/19
course [5] 7/18 28/10 58/21 97/15 99/4
court [45] 1/1 4/2 4/3 6/22 8/25 12/6 17/24 18/1 21/13 25/9 27/25 28/10 31/13 38/8 49/18 55/6 57/14 59/2 59/22 60/21 61/4 71/3 73/15 78/15 80/25 82/13 83/14 85/23 87/11 88/9 88/17 89/19 89/25 91/10 92/9 94/18 94/24 95/5 99/1 99/7 100/4 100/5 100/22 106/10 108/5
court's [10] 9/2 19/2 28/15 33/19 58/8 58/11 82/22 100/1 104/8 106/7
courthouse [2] 79/11 91/17
courtroom [10] 52/18 66/18 66/23 69/17 69/24 78/1 82/15 91/18 94/22 95/19
Courts [1] 26/6
cover [1] 68/5
covered [3] 14/19 31/21 32/2 105/13
create [1] 77/8
created [1] 20/4
creates [2] 42/25 43/7
creating [2] 23/3 26/17 38/25 94/15
credibility [3] 25/8 25/10 25/12
credible [1] 42/10
critical [4] 32/1 32/10 32/13 74/15
crop [1] 88/2
cross [25] 7/11 10/9 11/11 12/8 14/23 15/7 15/12 15/14 15/16 16/11 17/2 17/13 17/14 20/22 21/3 21/7 21/22

96/1 96/9 97/1 97/4
cross-examination [4] 10/9 17/2 17/14 20/22
cross-examine [2] 15/16 44/22
crossed [2] 11/4 11/7
CROWELL [1] 3/18
crowell.com [1] 3/20
CRR [2] 109/2 109/8
Cue [2] 24/18 24/19
Cue's [5] 25/3 25/15 26/22 28/13
Cue's [1] 25/10
cumbersome [1] 95/20
current [2] 9/14 9/16
cusp [1] 5/14
cut [3] 21/4 57/17 106/9
CV [1] 1/4

**D**

D.C [6] 1/5 2/3 2/17 3/15 4/5 5/10
D.C. [1] 45/6
D.C. Circuit [1] 45/6
Dahlquist [2] 2/19 49/17
daily [1] 93/22
dance [1] 86/13
data [1] 74/17
date [6] 33/25 64/3 91/21 91/21 106/1 109/7
dates [2] 73/25 74/24
Daubert [3] 40/2 76/21 104/25
David [2] 2/19 49/17
david.dahlquist [1] 2/23
day [18] 23/25 26/1 26/23 28/9 38/15 44/12 58/25 69/4 69/20 70/24 72/4 82/16 91/25 92/9 92/9 93/19 103/16 106/16
daylong [2] 31/19 31/21
days [7] 24/21 24/25 31/25 33/23 50/6 92/3 92/14
DC [1] 2/13
deadline [5] 9/4 9/5 9/6 9/16 9/23
deadlines [2] 71/3 89/19
deal [15] 7/7 19/5 43/21 45/15 45/22 54/21 60/21 67/6 85/25 89/2 96/19 97/6 106/22 107/7 107/10
dealing [2] 55/16 87/14
dealings [1] 70/2
dealt [2] 88/16 107/23
decades [1] 62/10
decided [1] 57/9
decision [4] 31/2 47/11 72/7 90/12
decisions [4] 30/24

deck [1] 79/22
declarations [1] 64/8
deemed [1] 90/24
deep [1] 30/4
default [4] 7/1 7/21 46/10 46/15
defaults [1] 7/24
defendant [1] 1/7 3/13 20/9
defendants [3] 12/4 50/4 50/15
defense [5] 22/14 34/8 95/21 98/12 99/11
definitely [1] 98/20
definition [4] 60/18 60/19 66/12 69/5
definitions [4] 56/8 56/10 59/10 60/16
degree [1] 63/17
deliver [1] 53/5
delivering [2] 26/17 41/3
Demand [1] 81/22
demands [2] 22/12 22/13
denied [1] 34/21
Denver [1] 3/6
deny [2] 44/8 44/20
denying [2] 48/24 48/25
DEPARTMENT [9] 2/2 2/6 2/11 2/15 2/20 3/3 14/6 58/6 58/13
depending [1] 21/6
deposed [1] 10/17
deposition [10] 11/3 12/3 14/3 24/8 27/4 27/9 31/19 31/21 32/3 62/15
depositions [5] 13/23 18/13 24/16 27/4 102/19
depth [1] 100/8
describe [2] 59/14 59/15
described [3] 24/7 37/14 85/9
description [1] 38/20
descriptions [1] 67/2
design [2] 35/9 51/17
designated [2] 27/9 91/11 91/17
designations [2] 22/3 89/1
designs [2] 35/17 35/18
desire [1] 35/3
determination [2] 25/9 25/13
determine [1] 90/11
determined [1] 99/9
developing [1] 30/22
development [1] 35/13
deviate [1] 6/18
devices [3] 32/9 41/11 41/12
dial [6] 44/16 77/22

**D**

dial... [4] 83/9 83/20 83/24 83/25
dial-in [1] 83/20
dictate [1] 33/1
did [17] 5/18 14/4 18/5 27/24 30/15 31/2 37/17 38/22 40/11 43/9 43/12 82/23 84/21 101/3 101/6 105/14 107/22
did you [1] 101/3
didn't [5] 18/10 38/25 41/15 51/16 102/25
differ [1] 56/13
difference [2] 54/25 69/7
different [11] 17/9 24/23 26/8 36/2 36/3 40/13 43/18 46/6 83/8 86/1 89/4
difficult [8] 14/22 20/8 60/13 60/15 63/14 65/1 78/21 79/3
digging [1] 30/4
Dintzer [14] 2/2 5/5 8/23 11/17 21/11 28/4 31/17 36/21 47/16 80/3 82/14 96/20 97/17 100/11
Dintzer's [1] 31/22
direct [36] 7/10 7/12 7/16 12/8 14/16 14/20 15/2 15/17 15/17 16/8 16/20 16/23 17/7 17/14 18/3 18/5 18/9 18/13 21/4 21/17 21/18 21/19 55/12 95/17 95/18 95/18 96/2 96/8 96/9 97/18 97/18 97/19
directed [2] 104/25 106/10
directing [2] 16/1 19/3
directly [4] 24/20 30/8 30/9 30/11
directs [2] 18/7 98/6
disadvantage [2] 20/14 66/15
disagree [1] 51/14
disagreements [1] 69/18
disclosed [6] 43/18 53/23 53/25 56/15 62/10 63/19
disclosing [2] 56/13 56/14
disclosure [1] 62/23
disclosures [1] 6/12
discovery [5] 26/7 40/19 41/6 41/8 42/8
discrete [4] 64/23 68/15 68/15 72/25
discuss [5] 5/22 6/2 6/25 51/8 107/13
discussed [4] 5/19 7/9 43/3 61/4
discussion [9] 35/21 39/15 45/10 48/19

100/25
disinclined [1] 38/19
dispensation [1] 7/17
dispute [4] 52/4 54/9 73/22 74/7
disputed [2] 74/5 101/9
disputes [5] 6/9 34/15 52/21 68/11 89/15
disruption [1] 69/14
distinguish [1] 85/13
distracts [1] 23/25
distribution [2] 12/14 36/9 41/12 44/15
DISTRICT [6] 1/1 1/1 1/10 25/9 26/6 83/21
Division [2] 2/16 2/20
do [114]
do you [2] 82/17 92/23
do you have [3] 80/3 93/11 105/25
docs [1] 74/18
document [9] 54/8 57/24 57/24 60/22 60/22 65/25 67/9 67/13 72/10
documentary [1] 85/14
documents [26] 13/25 32/3 49/24 52/5 52/20 54/10 61/16 62/20 63/12 65/14 67/19 70/23 70/23 70/24 72/12 72/21 73/11 73/17 73/24 74/10 74/17 75/6 84/13 85/1 87/3 87/5
does [11] 44/6 51/22 55/24 59/15 69/4 69/5 69/7 85/20 88/11 95/5 96/20
doesn't [8] 17/24 20/11 42/3 52/14 60/3 60/3 69/8 83/4
doing [9] 16/17 23/5 29/11 34/8 45/9 59/2 67/25 68/1 102/13
DOJ [12] 2/2 5/5 26/21 27/1 27/5 29/17 61/2 61/8 72/15 73/1 88/11 107/15
DOJ's [3] 47/2 65/12 88/10
dollars [1] 107/2
don't [67] 6/4 6/18 7/7 9/3 11/11 11/14 12/20 15/4 15/10 19/16 23/15 23/21 24/4 29/17 29/25 30/7 31/24 32/15 34/15 36/9 36/21 36/22 37/20 41/20 42/17 42/18 43/2 43/10 48/25 50/20 53/15 53/24 54/19 57/13 60/14 64/10 64/14 67/5 67/7 69/5 71/19 71/24 73/13 75/15 75/16 75/16 77/19 79/8 80/5 80/15

86/23 86/24 88/8 90/5 90/5 93/23 94/17 101/6 101/14 102/13 103/17 103/19 105/17 108/4
done [15] 17/13 22/1 22/16 22/16 34/11 60/14 61/15 69/24 73/8 73/25 79/20 91/18 94/17 96/3
Door [1] 81/22
doubly [1] 67/12
doubt [1] 25/21
down [8] 32/14 39/19 57/17 68/17 74/13 74/18 89/1 89/2
dozens [7] 42/13 58/23 58/23 59/4 59/14 63/12 63/12
Dr. [1] 106/23
Dr. Amaldoss [1] 106/23
drafted [1] 63/4
draw [1] 59/21
drawing [1] 87/6
drummed [1] 83/18
duplicate [1] 94/18
during [16] 8/10 12/3 31/19 31/21 32/1 32/12 35/6 79/14 80/13 81/2 87/6 87/7 98/20 98/25 101/24 105/13
Dyck [1] 81/21

**E**

each [6] 27/21 47/7 54/9 91/11 101/24 102/11
earlier [5] 32/20 70/8 93/6 98/18 99/7
early [1] 105/15
earnings [1] 77/22
easier [1] 82/14
easily [3] 66/3 68/16 82/13
easy [3] 68/19 70/21 84/19
ECF [2] 84/11 84/15
Economic [1] 81/22
economy [1] 5/10
edge [1] 62/22
Edward [1] 2/10
effect [5] 40/7 42/16 42/25 48/12 99/24
effects [7] 36/5 38/10 38/25 47/9 47/23 50/12 50/23
efficiency [2] 64/6 96/3
efficient [3] 16/10 23/5 68/14
efficiently [2] 22/16 26/2
efforts [1] 77/8
eight [1] 74/16
either [10] 6/14 20/1 62/14 66/24 71/6 71/7 76/2 78/16 91/15 103/16

elementary [1] 67/7
elicit [2] 19/11 105/13
eliciting [1] 48/1
else [10] 41/5 41/19 43/20 67/6 78/21 86/5 94/5 94/20 107/12 107/25
email [16] 2/4 2/9 2/14 2/18 2/23 3/7 3/12 3/16 3/20 63/4 63/18 65/9 87/16 87/17 88/4 105/20
emailed [1] 105/7
emails [10] 52/21 54/6 61/23 61/25 62/8 62/9 65/7 87/12 87/20 94/10 105/17
embarrass [2] 25/15 25/18
embedded [1] 82/12
employee [7] 11/6 11/9 12/12 13/2 17/12 32/17 102/11
employees [15] 10/5 10/10 10/15 10/16 11/2 11/3 12/25 13/1 14/10 14/18 15/8 16/3 16/8 31/6 31/6
employer [1] 17/13
employment [2] 10/10 10/11
empty [2] 52/17 66/17
enables [1] 92/4
end [7] 38/15 44/12 51/1 51/19 71/15 89/8 93/18
ended [1] 8/21
ends [1] 48/18
enforced [1] 56/21
engine [2] 13/3 46/15
enhances [3] 33/24 46/16 48/12
enhancing [3] 46/17 46/22 46/24
enlighten [1] 46/3
enough [2] 14/12 35/15
ensure [1] 22/15
entirety [4] 63/12 65/15 97/22 98/1
envision [3] 7/6 73/6 95/5
envisioning [1] 68/25
Epic [1] 47/11
especially [1] 71/13
essential [1] 31/7
essentially [6] 6/13 13/20 33/1 35/11 72/9 93/17
establish [1] 41/23
established [1] 48/5
estimate [2] 44/19 65/16
estimated [1] 75/7
estimates [3] 19/7 20/4 22/2
estimation [1] 101/10
et [1] 1/3 5/4 49/24

et al [1] 5/4
et cetera [3] 49/24 86/14 101/6
ether [1] 56/23
eve [4] 69/11 72/20 106/14 106/17
even [16] 14/18 22/7 27/12 33/9 36/9 38/20 57/18 59/24 62/24 64/13 65/2 75/15 77/1 77/13 78/10 82/7
event [1] 69/9
eventual [1] 18/8
every [10] 15/14 18/19 24/22 51/3 59/18 59/18 72/9 93/4 101/17 101/24
everybody [6] 6/2 8/1 28/2 34/12 88/14 96/24
everybody's [2] 57/23 103/20
everyone [3] 5/9 6/7 71/9
everything [8] 22/22 31/17 33/15 41/5 56/22 56/23 68/2 78/21
evidence [20] 34/24 35/3 40/5 41/9 41/19 44/21 46/11 48/1 49/11 49/15 50/3 50/15 50/19 51/9 61/10 68/14 85/14 87/5 88/1 106/13
evident [1] 20/10
evidentiary [2] 49/5 101/25
exact [2] 36/10 40/25
exactly [4] 25/25 34/7 42/14 45/3
exaggerated [1] 83/18
exam [1] 95/5
examination [17] 10/3 10/9 14/16 15/7 16/11 17/2 17/14 17/14 18/7 20/10 20/19 20/22 22/16 96/5 96/13 98/5 98/7
examine [5] 15/16 16/3 44/22 65/24 96/23
examined [1] 12/14
example [23] 18/20 24/19 46/23 54/13 54/23 55/13 57/2 57/8 60/7 60/22 60/7 60/8 60/17 61/21 62/5 64/20 66/12 67/1 69/4 69/21 75/19 90/2 94/25
exceed [1] 18/8
exceeding [1] 21/21
except [2] 21/24 43/3
exception [2] 7/23 87/11
excited [1] 30/2
exciting [1] 5/18
exclude [3] 40/8 49/15 49/23
exclusion [2] 5/21 76/9
excuse [4] 15/8 45/15

115

## E

**excuse... [2]** 48/13 49/9
**executive [1]** 24/19
**executives [5]** 18/25 24/13 32/4 34/11 62/2
**exemplars [4]** 61/1 71/25 72/8 75/10
**exercise [2]** 60/12 106/14
**exhibit [9]** 8/19 9/1 9/23 42/14 65/15 86/7 94/10 105/8 106/2
**exhibits [30]** 6/11 8/6 8/8 8/12 8/17 53/10 53/18 54/4 55/6 55/13 56/4 58/8 58/14 58/24 67/24 75/19 75/20 77/25 78/17 84/25 86/10 86/12 88/14 89/3 94/8 94/13 94/18 105/8 105/11 106/9
**exist [1]** 88/18
**existence [1]** 27/25
**existing [1]** 92/18
**expect [12]** 18/18 18/21 20/19 21/2 21/3 25/3 27/18 31/12 31/13 50/8 69/23 70/13
**expectations [1]** 107/19
**expecting [1]** 70/11
**expedite [1]** 74/11
**expediting [1]** 16/9
**experience [1]** 68/22
**expert [13]** 37/8 38/24 39/22 39/23 39/24 40/1 40/3 40/12 42/9 98/19 98/21 104/23 106/12
**experts [5]** 76/13 76/13 76/19 105/21 106/7
**experts' [2]** 105/17 106/8
**expires [1]** 9/16
**explain [4]** 30/10 32/7 38/4 39/11
**explains [1]** 40/14
**explanation [1]** 35/10
**extension [1]** 44/2
**extensive [2]** 26/12 30/12
**extent [17]** 16/10 30/14 30/23 31/1 43/4 45/11 47/22 50/15 61/9 73/9 73/10 74/4 75/14 79/19 82/12 101/5 103/8
**extraordinary [1]** 34/17
**extrapolations [1]** 65/20
**extras [1]** 102/4
**extremely [1]** 28/22
**eye [2]** 81/8 107/8
**eyeball [1]** 52/24

## F

**face [2]** 33/3 63/17
**facie [2]** 50/11 50/21

24/3 26/9 32/9 41/7 49/6 50/22 62/25 72/11 79/7 101/3 101/20
**factor [1]** 79/4
**facts [1]** 37/17
**failed [1]** 41/23
**fair [1]** 96/6
**fairly [1]** 36/8
**faith [5]** 22/2 32/22 50/3 71/1 73/2
**fall [4]** 10/21 44/6 48/18 85/20
**falls [2]** 19/24 36/6
**familiar [1]** 58/18
**family [2]** 32/14 33/6
**far [8]** 19/7 26/13 73/22 74/21 77/14 89/23 104/4 104/5
**feasibility [1]** 79/2
**feature [5]** 45/17 46/14 102/8 106/18 106/20
**features [1]** 106/21
**federal [2]** 25/9 92/10
**feed [4]** 77/17 79/11 79/13 83/9
**feeds [1]** 93/22
**feel [1]** 40/12
**feels [2]** 35/18 35/24
**feet [1]** 28/7
**fell [2]** 26/25 42/8
**few [8]** 57/16 67/14 67/15 71/14 74/18 75/20 82/1 94/6
**fewer [1]** 37/12
**Fifth [2]** 2/12 2/16
**fight [4]** 49/5 86/4 87/4 105/22
**fighting [3]** 29/25 52/7 66/1
**fights [1]** 53/21
**figure [3]** 28/23 65/13 76/1
**figured [1]** 36/14
**figures [1]** 65/19
**figures' [1]** 74/16
**filed [9]** 5/25 43/22 50/5 61/8 64/7 76/24 80/16 81/25 106/10
**filing [1]** 89/16
**filings [1]** 90/8
**final [1]** 89/22
**finalize [1]** 9/23
**finally [1]** 71/2
**financial [2]** 2/12 15/3 65/19
**find [3]** 33/25 61/12 75/1
**finding [1]** 14/22
**fine [4]** 47/25 88/12 91/8 97/24
**finish [3]** 55/10 96/24 97/4
**firmly [1]** 64/4
**first [35]** 10/4 18/20 22/12 29/14 30/16 55/3 73/11 73/13 73/13 73/11 74/3 74/8 74/10

78/5 79/10 82/12 86/22 88/20 88/21 88/21 89/14 90/3 91/4 92/24 95/6 96/10 98/19 98/20 98/25 103/11 104/24
**First Amendment [1]** 82/12
**firsthand [1]** 58/18
**fits [1]** 51/11
**five [10]** 5/20 11/22 24/21 24/23 42/3 99/7 99/9 99/10 100/3 102/2
**flag [1]** 22/21
**flexibility [1]** 16/17
**flexible [2]** 8/19 9/13
**floor [2]** 3/6 79/10
**fly [2]** 31/24 32/14
**focus [1]** 55/25
**focused [1]** 67/23
**folks [4]** 5/13 10/18 25/22 28/19
**follow [3]** 26/14 78/7 89/12
**follow-on [1]** 78/7
**follow-up [2]** 26/14 89/12
**following [3]** 24/2 103/12 105/16
**follows [4]** 42/21 45/2 68/8
**footnote [1]** 10/6
**forcing [1]** 35/15
**foregoing [1]** 109/3
**foreign [1]** 67/10
**forgive [2]** 9/4 60/6
**formal [1]** 11/2
**former [13]** 10/5 10/9 10/15 12/12 12/24 13/1 13/2 14/10 14/18 32/17 95/9 95/10 95/11
**formulas [1]** 67/5
**forth [2]** 37/18 38/13
**forward [8]** 5/18 31/3 45/12 68/3 70/16 86/15 91/15 103/22
**forwarded [2]** 76/10 76/10
**found [4]** 27/20 41/6 42/16 71/2
**foundational [1]** 86/15
**four [3]** 5/24 61/23 62/5
**framework [2]** 44/13 51/12
**Francisco [1]** 2/8
**frankly [6]** 6/18 20/1 36/17 54/2 59/1 74/25
**Friday [6]** 7/11 49/19 76/2 76/14 92/3 92/4
**Fridays [1]** 92/7
**front [4]** 52/8 52/11 55/24 84/6
**full [6]** 65/17 65/18 67/11 72/10 74/23 83/25
**fully [6]** 16/20 31/18 32/2 49/22 50/3 50/8

**fulsome [1]** 100/25
**fundamentally [1]** 83/8
**funny [1]** 8/1
**further [4]** 8/17 50/20 97/13 102/16

## G

**gallery [1]** 91/4
**gap [4]** 35/11 35/15 40/16 75/14
**Gate [1]** 2/7
**gather [1]** 45/9
**gave [3]** 62/15 105/5 105/6
**gee [1]** 19/9
**general [3]** 16/7 49/14 82/24
**generally [1]** 80/18
**generate [1]** 46/12
**gentleman [1]** 27/15
**genuinely [1]** 73/11
**get [54]** 7/9 14/22 16/2 16/15 16/17 22/19 24/4 28/9 28/23 34/16 36/20 41/18 43/25 46/11 52/22 54/8 55/18 59/21 62/21 63/15 64/24 65/3 65/4 68/12 68/13 71/10 71/16 72/2 74/24 75/25 76/17 76/22 84/16 85/10 87/2 87/10 87/21 88/14 90/1 93/7 94/12 94/15 94/17 95/2 95/20 95/25 96/3 96/25 100/11 104/14 104/15 104/15 105/23 107/8
**gets [3]** 15/4 63/25 87/1
**getting [8]** 22/17 39/3 51/3 64/12 65/10 71/3 105/7 107/9
**Giannandrea [2]** 13/9 13/16
**gifts [1]** 53/13
**give [18]** 6/14 8/7 8/8 12/9 18/10 18/14 18/25 19/18 33/10 55/21 58/1 59/9 84/15 87/18 90/12 92/24 102/20 106/1
**given [12]** 8/18 19/14 21/24 24/12 24/21 26/12 27/17 28/14 35/11 38/20 81/24 91/13
**gives [1]** 46/20
**giving [1]** 39/25
**go [29]** 6/8 16/12 16/13 19/1 19/11 19/13 22/12 23/13 27/15 29/2 44/9 50/20 52/18 55/9 60/5 60/24 61/12 68/10 69/10 73/23 74/3 75/9 86/13 93/14 93/15 93/17 93/18 96/4 97/19
**go ahead [2]** 55/9 60/5
**goal [2]** 68/12 68/13
**goes [2]** 21/7 65/7

**going [144]** 
**Golden [1]** 2/7
**Goldstein [3]** 2/6 36/24 37/1
**good [20]** 5/2 5/9 6/23 6/23 15/14 19/5 22/2 29/12 29/13 32/22 37/2 50/3 52/25 53/1 66/20 69/21 71/1 73/2 74/8 82/21
**good-faith [3]** 22/2 50/3 71/1
**GOOGLE [73]** 1/6 3/13 5/4 5/8 8/7 10/9 10/11 10/22 11/8 11/10 12/12 12/24 13/1 13/2 13/20 14/10 14/11 15/2 15/9 15/15 17/20 17/24 18/1 19/20 21/14 27/1 27/17 31/5 32/18 35/22 36/6 38/22 38/25 40/24 41/2 41/9 44/19 45/12 47/22 48/4 48/9 53/17 54/14 55/4 55/24 56/12 57/18 58/24 59/2 62/1 62/4 62/11 63/6 63/19 65/14 65/17 71/6 71/16 72/13 73/23 73/24 74/10 74/24 75/9 85/2 87/1 91/7 94/11 98/4 101/17 102/11 102/20 107/17
**Google LLC [2]** 5/4 5/8
**Google's [25]** 6/12 10/4 15/7 17/18 20/14 34/23 35/13 37/11 37/13 41/12 45/18 49/9 49/10 54/3 56/5 56/10 56/20 57/9 61/3 62/23 69/23 71/3 71/11 74/22 79/18
**got [29]** 5/16 5/20 6/1 6/10 6/15 7/2 7/8 10/15 11/13 13/2 19/20 19/23 28/19 32/19 39/13 43/23 50/6 57/11 65/8 67/4 67/5 77/1 84/5 91/17 91/19 92/18 94/4 105/3 105/20
**gotten [2]** 76/21 105/9
**government [7]** 35/12 64/5 67/18 67/23 67/25 76/10 80/9
**government's [3]** 61/22 65/24 69/7
**Graham [2]** 3/13 58/3
**grant [3]** 38/21 40/21 81/17
**granted [1]** 40/20
**great [4]** 45/22 56/24 98/16 107/24
**greater [4]** 22/12 22/13 26/13 35/17
**greatly [1]** 26/23
**green [1]** 56/6
**ground [2]** 22/18 68/5
**groundwork [1]** 31/8
**guess [14]** 7/3 34/20 51/16 61/23 69/9 73/6

**G**

guess... [8] 77/18 96/1 96/19 100/10 101/11 101/22 104/24 107/18
guidance [2] 58/22 72/22

**H**

had [19] 5/17 10/7 13/18 25/10 32/17 35/22 35/23 40/2 42/6 42/9 49/18 61/16 70/2 77/9 80/12 80/16 99/7 100/25 105/6
half [9] 19/15 19/15 21/16 24/20 54/3 54/4 61/24 61/25 92/3
half-days [1] 92/3
Hammer [4] 98/21 98/22 98/23 104/22
hand [1] 87/18
handful [2] 5/22 37/6
handle [1] 69/16
Hang [1] 55/18
happen [3] 8/10 28/1 40/16
happened [1] 30/3
happening [2] 63/1 82/10
happens [1] 20/10
happy [7] 23/18 35/2 36/19 73/1 80/10 81/16 89/21
hard [10] 25/2 28/22 60/16 63/16 63/18 63/24 68/10 69/11 90/11 105/6
harder [2] 54/11 65/5
harm [6] 47/3 47/4 56/14 61/4 61/13 63/19
has [28] 5/10 5/13 8/18 11/10 11/21 12/6 17/20 17/24 18/11 21/14 27/3 27/9 27/13 35/5 40/6 44/10 45/23 57/18 58/24 67/18 67/23 71/6 76/10 79/9 82/13 89/19 96/1 101/8
hasn't [3] 15/9 25/4 40/9
have [190]
haven't [7] 15/5 21/24 40/6 76/21 94/14 94/15 105/20
having [10] 18/6 19/14 26/11 27/20 41/19 47/7 53/22 54/21 68/17 95/13
he [42] 12/10 12/10 12/12 12/12 12/14 12/19 23/15 25/4 25/19 25/25 27/24 28/21 29/1 29/1 29/4 29/5 29/11 29/23 30/8 30/9 30/10 30/10 30/11 30/12 30/14 30/15 30/20 31/1 31/2 31/7 33/3 33/4 33/5 33/10

he'll [1] 93/24
he's [15] 24/21 25/25 25/25 26/1 26/1 27/16 27/18 28/3 29/22 30/1 31/11 32/10 33/16 95/25 96/1
head [3] 36/11 43/13 65/3
heads [1] 105/2
heads-up [1] 105/2
hear [24] 9/13 13/6 14/16 23/18 24/10 27/25 30/25 35/2 35/8 36/19 40/5 40/5 48/25 50/18 78/2 78/5 80/9 80/10 81/16 82/9 82/10 102/12 103/2 103/10
heard [7] 11/17 23/19 47/17 48/9 71/23 81/16 105/4
hearing [7] 26/12 58/17 58/22 62/17 82/3 101/16 101/25
hearsay [4] 29/20 30/5 88/1 88/1
heart [1] 82/2
held [2] 12/6 90/10
help [5] 39/11 46/11 49/12 87/10 90/3
helpful [3] 70/10 71/2 98/11
helps [1] 11/4
her [1] 104/25
here [47] 5/12 6/8 6/18 10/14 22/25 23/1 23/15 24/11 24/24 25/18 26/1 26/4 28/18 28/23 29/10 29/22 29/24 29/25 32/14 33/13 33/14 34/8 38/8 40/13 40/15 46/7 49/13 57/24 60/16 61/8 61/19 68/12 68/13 71/5 74/15 74/19 78/1 78/10 80/6 82/23 83/16 84/6 87/9 91/23 93/24 103/21 104/6
here going [1] 57/24
here's [11] 14/13 15/5 19/6 22/9 35/10 52/3 54/13 61/21 73/6 75/3 87/15
Herrmann [4] 2/10 53/2 53/4 72/11
Herrmann's [1] 71/24
hide [1] 20/3
high [2] 27/6 71/10
highlight [3] 54/24 60/10 74/9
highlighted [1] 60/11
highlighting [3] 56/5 65/12 89/24
highly [3] 29/3 38/19 66/23
him [23] 24/24 25/11 26/12 26/16 27/5 27/11 28/9 28/23 28/25 29/23

32/10 32/12 33/6 33/8 33/13 33/22 33/23 93/23 102/6
his [25] 12/12 12/14 24/21 25/23 26/12 27/9 27/22 29/2 29/4 29/19 29/24 30/24 31/19 31/21 32/1 32/3 32/13 32/14 33/6 34/5 80/23 93/24 97/18 97/18 98/2
Historically [1] 27/20
hit [1] 71/10
hits [1] 22/17
hitting [1] 82/14
holiday [1] 49/20
holidays [1] 92/11
honest [1] 99/19
Honor [140]
Honor's [6] 42/16 58/22 59/16 64/17 67/22 72/22
HONORABLE [1] 1/10
hook [1] 27/7
hope [6] 8/1 16/17 33/20 68/11 76/22 76/22
hopefully [7] 20/1 33/24 68/4 69/14 75/13 79/13 97/8
hour [7] 19/19 31/12 31/12 32/10 33/9 33/10 93/16
hour's [1] 32/14
hours [12] 18/21 18/21 18/22 19/13 19/15 19/22 71/17 71/20 91/24 93/7 103/19 103/19
hours' [2] 102/20 103/3
how [33] 5/13 8/11 17/9 17/21 18/4 18/23 19/3 21/1 21/6 21/9 22/10 24/12 27/14 29/11 29/19 30/14 33/2 43/1 44/10 44/11 44/23 52/4 52/20 55/14 56/20 56/20 69/16 77/15 79/8 84/13 84/20 96/4 103/15
however [4] 19/13 21/4 30/23 49/25
Hubbard [7] 52/14 54/2 57/21 59/3 67/25 68/6 73/3
hundred [1] 74/18
hundreds [2] 61/15 61/15
hyperlinked [2] 53/6 53/8

**I**

I also [1] 33/4
I am [8] 22/15 23/17 36/1 38/19 65/6 76/11 77/4 101/2
I appreciate [1] 99/3

100 78/15 78/20
79/15 79/18 79/20 79/21 82/6 83/7 83/8 83/23 84/11 88/13 88/24 90/10 91/18 96/7 96/16 97/20 100/25 101/16 102/11 103/9 104/23 105/4 105/5 107/21
I thought [3] 7/21 19/17 90/6
I understand [12] 8/10 10/4 11/21 23/23 24/9 30/19 35/12 39/2 42/19 44/12 64/2 90/21
I want [2] 6/2 96/21
I was [5] 37/25 79/11 82/21 84/14 84/15
I will [6] 8/19 22/19 24/2 40/21 50/5 103/19
I would [1] 22/9
I'd [3] 54/25 76/12 90/10
I'll [33] 8/15 9/12 9/13 12/1 14/22 23/20 26/3 26/18 28/21 29/5 32/20 37/3 44/8 44/10 44/21 44/21 52/12 54/10 55/25 63/11 66/8 69/10 75/20 75/20 75/22 76/19 81/17 84/4 88/2 92/4 97/17 102/12 107/10
I'll be [1] 37/3
I'm [76] 6/13 8/7 9/11 13/4 13/6 15/18 22/23 23/18 23/22 24/3 25/17 26/4 26/13 28/7 30/22 32/22 32/25 33/6 33/13 34/3 35/2 35/9 36/10 36/19 36/23 40/8 40/16 44/20 44/22 45/24 45/24 49/4 51/8 54/20 55/16 57/7 57/23 60/4 60/5 60/15 62/17 63/14 64/19 65/6 67/23 67/24 68/7 68/9 74/2 74/15 75/3 75/4 75/21 76/21 78/4 80/10 81/1 81/16 81/21 82/6 83/1 84/14 85/10 87/9 88/23 89/21 92/16 93/2 93/4 96/21 98/22 101/16 102/3 102/24 103/1 103/9
I should [5] 13/4 13/5 17/15 79/7 102/16
I think [81] 5/10 5/17 5/24 7/6 8/2 9/18 10/13 11/1 15/13 15/14 16/7 17/9 19/8 20/6 20/15 23/7 24/11 24/18 26/7 26/11 26/21 28/19 29/16 33/7 33/11 33/12 36/6 36/14 38/1 42/20 44/17 45/18 46/6 46/9 47/5 47/11 47/22 51/23 52/11 53/12 58/9 61/11 62/16 63/7 67/3 68/8 69/12 69/21 71/6 71/21 73/24 74/24 76/9 78/9
I'm going [7] 26/13 40/8 44/20 68/9 75/3 75/4 93/4
I'm just [1] 36/23
I'm not [8] 9/11 25/17 26/4 32/25 40/16 57/23 62/17 88/23
I'm not sure [5] 45/24 51/8 54/20 67/23 102/3
I'm sorry [9] 13/4 15/18 33/6 55/16 60/5 76/21 84/14 85/10 102/24
I'm sure [2] 81/1 82/6

I believe [1] 11/22
I can [10] 11/1 20/13 48/21 62/18 63/20 64/24 76/17 79/18 102/13 103/18
I can't [3] 7/15 8/14 24/6
I did [1] 82/23
I don't [14] 6/18 12/20 15/4 23/21 37/20 42/18 43/10 54/19 64/14 75/15 84/17 88/8 101/6 103/17
I don't have [2] 86/23 86/24
I guess [13] 7/3 34/20 51/16 61/23 69/9 73/6 77/18 96/1 96/19 101/11 101/22 104/24 107/18
I have [11] 21/23 21/25 24/4 26/10 45/5 91/21 92/14 94/25 99/5 107/18 107/24
I haven't [1] 76/21
I hope [3] 8/1 33/20 76/22
I just [8] 17/8 28/7 32/25 80/25 83/10 89/6 103/12 103/19
I know [13] 23/24 26/5 27/5 35/22 45/8 45/20 53/6 60/12 69/10 73/8 74/2 74/14 105/3
I mean [59] 12/6 12/23 13/21 14/9 14/13 15/20 18/3 18/25 21/15 21/21 22/4 22/11 25/17 26/3 27/10 28/3 29/20 30/19 31/11 35/5 37/20 38/3 38/7 38/8 39/2 39/4 39/23 41/1 42/18 44/5 45/8 47/21 51/16 57/23 62/4 64/25 65/8 66/8 66/18 66/22 67/1 67/4 70/7 70/8 73/8 80/18 84/4 85/5 86/19 90/5 90/6 90/7 91/4 95/25 96/7 96/7 99/18 103/14 104/14

**I**

**I've [14]** 5/20 6/1 9/15 42/21 43/5 48/9 49/18 54/14 75/4 85/16 92/18 93/8 94/4 96/1
**idea [4]** 21/23 21/25 70/22 92/25
**ideally [1]** 95/14
**identical [1]** 56/16
**identification [1]** 30/21
**identified [14]** 19/25 20/17 21/1 31/20 32/24 33/8 53/17 63/4 94/23 99/8 100/8 100/20 103/8 103/9
**identify [6]** 32/23 73/10 73/17 74/5 75/5 99/11
**IL [1]** 2/22
**imagine [2]** 8/14 96/3
**imagined [1]** 84/2
**immediately [1]** 72/1
**immense [1]** 82/5
**impacted [3]** 30/15 31/2 41/4
**impeach [1]** 25/11
**impedes [1]** 65/24
**importance [2]** 82/2 82/3
**important [14]** 18/17 20/15 21/13 22/5 24/3 30/11 31/20 33/9 33/10 49/21 53/22 54/19 82/6 103/16
**importantly [1]** 40/18
**impose [1]** 32/16
**imposing [1]** 31/18
**imposition [2]** 23/3 23/23
**impossible [1]** 18/24
**imprecision [1]** 67/20
**impression [1]** 66/8
**inclined [1]** 33/13
**include [1]** 91/3
**included [2]** 39/17 41/13
**including [3]** 61/1 61/6 75/8
**income [1]** 32/14
**inconvenient [1]** 28/22
**incremental [2]** 24/15 25/1
**independent [4]** 38/2 39/5 42/6 43/5
**independently [1]** 13/25
**indicated [2]** 58/16 63/11
**indicating [1]** 87/19
**individual [1]** 14/5
**individuals [2]** 23/23 58/18
**information [1]** 18/10 21/24 59/2 59/21 63/10 64/24 65/18 66/10 67/11 70/8 79/4
**initial [1]** 35/24
**initially [1]** 74/2
**innovation [1]** 46/19

**input [1]** 90/1
**inputs [1]** 90/1
**inquiring [1]** 14/6
**inside [1]** 91/3
**insight [1]** 58/1 59/9
**instances [2]** 47/6 68/25
**instead [4]** 17/14 18/16 39/12 103/21
**Institute [1]** 81/23
**instruction [1]** 67/22
**insubstantial [1]** 78/11
**integrated [1]** 32/8
**intend [8]** 16/20 48/10 50/15 53/18 54/6 58/9 67/24 103/17
**intended [1]** 50/1
**intending [1]** 103/14
**intent [1]** 41/18
**intention [5]** 16/8 59/20 66/3 102/10 102/18
**interest [12]** 12/4 12/24 13/15 13/19 13/21 14/4 52/17 78/25 79/16 82/5 83/17 84/2
**interested [1]** 25/21
**interesting [2]** 30/2 39/25
**interests [3]** 15/3 23/1 23/2
**interject [1]** 12/22
**interjecting [1]** 64/10
**internal [4]** 62/1 62/23 65/17 70/2
**interpret [1]** 83/6
**interrogatories [3]** 39/18 39/21 43/19
**interrogatory [1]** 39/17
**interrupt [3]** 10/25 59/5 64/20
**interrupted [1]** 67/12
**intervention [1]** 81/17
**introduce [7]** 8/9 8/19 36/23 57/3 74/6 74/7 85/15
**introduced [2]** 51/9 61/10

**J**

**jarteaga [1]** 3/20
**JC [1]** 77/18
**Jeremy [1]** 3/16
**Jeremy.Goldstein [1]** 2/9
**Jet [1]** 83/22
**John [2]** 3/13 5/8
**John Schmidtlein [1]** 5/8
**joinder [1]** 31/7
**joint [6]** 5/23 6/4 84/12 94/8 94/10 106/1
**jon.sallet [1]** 2/21
**Jonathan [2]** 3/2 5/6
**Jonathan Sallet [1]** 5/6
**Jr [1]** 3/8
**jschmidtlein [1]** 3/16
**Juan [2]** 3/18 29/10
**judge [4]** 1/10 25/9 26/9 93/20

102/14 105/4 106/2 106/6
**issued [1]** 84/11
**issues [21]** 6/1 6/5 8/16 14/2 16/1 16/12 22/20 25/5 34/15 49/21 58/4 72/25 75/14 78/17 83/14 88/2 88/17 89/24 101/9 101/24 102/16
**it [226]**
**it would be [2]** 81/1 98/11
**it's [88]** 7/11 13/8 15/16 19/12 20/12 21/13 22/23 25/14 26/4 29/16 29/16 35/15 36/8 38/2 38/20 39/4 39/7 39/24 41/13 41/18 41/20 41/20 42/22 44/14 45/3 45/21 45/24 47/3 47/13 49/13 50/1 51/11 51/13 51/14 51/15 52/12 52/22 53/6 54/6 55/4 56/5 56/6 56/23 57/9 58/11 59/7 59/8 59/16 59/16 59/17 59/19 60/16 60/19 60/20 63/16 63/19 63/21 63/23 64/14 65/17 65/17 66/17 67/4 67/5 67/6 70/10 74/18 76/20 77/12 77/21 78/20 79/2 79/3 82/6 82/11 84/2 85/20 86/11 87/17 90/11 95/20 98/24 99/20 102/8 102/8 102/10 104/4 107/5
**item [2]** 69/6 89/22
**items [1]** 31/9
**its [9]** 10/5 15/7 15/8 35/23 49/5 51/10 57/18 87/1 98/5
**itself [6]** 12/6 36/8 42/22 42/23 43/7 80/25

**J**

**judicial [2]** 3/5 91/24
**juries [1]** 24/4
**just [116]**
**JUSTICE [7]** 2/2 2/6 2/11 2/15 2/20 58/6 58/13
**justification [1]** 48/5
**justifies [1]** 32/16
**justifying [1]** 31/18
**JXs [1]** 94/12

**K**

**Karl [2]** 2/10 53/2
**karl.herrmann [1]** 2/14
**Katherine [1]** 81/21
**keep [8]** 20/19 27/6 65/21 66/18 66/21 68/9 93/8 107/7
**keeps [1]** 27/22
**Kenneth [2]** 2/2 5/5
**kenneth.dintzer2 [1]** 2/5
**key [3]** 24/7 25/19 46/20
**kick [1]** 96/24
**kicked [1]** 5/10
**kind [6]** 16/13 18/25 20/2 51/18 61/16 62/18 64/23 66/9 66/14 66/17 68/23
**Kippur [1]** 92/12
**know [141]**
**knowing [2]** 34/7 86/3
**knowledge [4]** 26/13 29/25 30/13 30/17
**known [1]** 93/8
**knows [1]** 25/25
**Krueger [1]** 100/23

**L**

**Labor [1]** 72/4
**large [1]** 64/7
**largest [1]** 107/1
**LaSalle [1]** 2/21
**last [14]** 17/17 26/24 52/12 58/22 59/18 62/17 77/14 78/7 81/25 84/12 99/5 102/17 104/1 105/5
**late [1]** 59/7
**later [3]** 62/10 86/5 103/18
**law [5]** 3/3 45/8 45/24 47/10 87/16
**lawyers [1]** 82/9
**lay [2]** 31/8 106/24
**lead [3]** 56/23 56/24 76/19
**leading [7]** 12/8 15/18 15/22 15/24 16/2 16/15 17/15

**learning [1]** 53/12
**least [14]** 13/22 24/24 26/8 35/19 37/15 43/15 48/10 52/20 66/8 79/7 79/12 80/20 81/18 92/24
**leave [9]** 6/22 7/21 13/13 28/18 29/5 51/22 69/9 82/18 95/13
**leaves [1]** 12/1
**leaving [1]** 8/21
**led [1]** 12/17
**Leeman [2]** 11/22 13/15
**leeway [1]** 17/4
**left [9]** 8/13 10/16 10/22 11/7 11/9 12/10 12/19 52/4 75/14
**legal [3]** 45/5 45/13 48/19
**legged [1]** 35/7
**length [1]** 107/20
**less [6]** 5/19 15/14 20/1 33/25 66/14 71/11
**let [30]** 6/13 7/23 10/3 10/25 12/22 22/19 24/8 26/18 27/5 31/20 34/18 35/1 39/14 44/9 55/18 66/7 70/13 75/17 76/25 80/9 81/15 84/6 86/6 88/3 92/4 96/3 98/12 98/12 99/17 100/16
**let's [14]** 7/8 8/20 9/11 9/12 15/1 23/13 29/9 34/22 44/4 52/2 61/19 68/11 76/7 82/18
**lets [1]** 86/4
**liability [3]** 38/2 39/5 39/7
**Liberties [1]** 81/22
**license [1]** 37/10
**life [1]** 29/2
**light [3]** 7/3 19/9 105/16
**like [42]** 7/5 7/24 8/21 16/14 17/19 18/4 23/19 25/20 27/24 28/16 34/11 35/19 35/25 41/17 41/20 44/14 44/6 46/4 47/16 49/14 53/10 53/13 54/15 62/10 65/3 65/15 66/7 67/5 68/16 70/15 74/7 74/16 76/12 77/22 90/9 90/21 94/16 99/25 103/17 104/19 105/12 106/13
**likelihood [1]** 27/10
**likely [3]** 60/1 66/11 66/14
**likes [1]** 18/11
**limine [1]** 5/24 23/13 34/22 34/23 40/21 42/1 44/18 45/16 49/10 49/23 49/25 50/25 51/24
**limit [3]** 11/6 49/10 50/2
**limited [5]** 45/5 46/1

**L**

limited... [3] 68/22
102/1 102/11
limiting [1] 48/18
limits [1] 83/23
line [23] 16/14 47/5
56/24 58/15 58/15
59/18 59/21 77/6 77/16
77/18 77/19 78/22
78/23 80/13 80/19 81/9
81/13 82/8 82/8 82/13
82/19 84/1 102/14
lines [2] 64/7 83/20
list [26] 6/1 8/9 8/9
8/10 8/13 8/19 9/2
17/20 18/2 19/24 20/7
20/17 42/14 69/6 71/5
76/8 86/18 90/19 94/4
94/10 99/5 102/25
103/1 103/10 104/20
105/9
listed [2] 31/12 31/17
listen [2] 77/23 82/9
lists [2] 9/24 27/17
litigate [1] 102/1
litigation [1] 33/17
little [21] 5/11 16/17
17/3 24/11 35/9 36/7
39/25 40/12 42/10
42/12 45/7 63/20 65/5
65/10 65/13 67/16
70/16 78/6 103/1
103/10 105/6
live [15] 22/25 24/2
24/15 26/12 26/14
27/20 29/1 31/24 32/21
33/7 69/22 82/2 85/15
102/12 103/4
LLC [4] 1/6 3/18 5/4
5/8
LLP [3] 3/9 3/14 3/18
logistics [3] 6/2 76/7
90/20
long [9] 17/21 18/4
18/23 19/12 28/7 58/11
59/8 61/25 63/2
longer [7] 19/8 19/20
20/20 21/5 21/19 42/2
79/8
look [44] 22/9 22/15
24/8 25/17 27/10 28/18
28/22 32/20 34/15 38/7
42/18 42/20 44/10
44/10 46/1 46/4 48/9
51/8 52/23 53/20 54/10
54/11 57/15 60/16
60/24 64/3 66/16 67/3
67/21 68/4 68/10 68/10
69/12 71/7 75/9 75/10
75/18 81/7 95/23 96/7
100/7 102/8 102/8
107/5
looked [1] 54/14
looking [6] 57/7 60/15
62/20 73/24 82/22
88/23
looks [1] 67/4
lot [18] 11/4 19/14 20/3

50/17 53/15 58/17
60/14 63/19 76/20
82/14 85/5 85/7 105/3
107/11
love [1] 53/8
lunch [2] 93/12 93/16

**M**

M.P [1] 2/6
mad [1] 26/16
MADA [3] 36/8 41/13
59/15
MADAs [1] 35/16
made [10] 21/22 30/24
31/1 37/11 58/17 70/25
77/8 80/12 83/20
104/22
Madison [1] 3/19
mainly [1] 26/7
maintain [2] 60/9 64/6
maintained [1] 54/16
major [2] 41/2 106/21
majority [1] 69/23
make [23] 8/12 10/4
11/19 22/22 23/4 25/12
25/23 25/24 26/3 28/8
28/13 30/12 33/15 35/4
45/25 52/15 76/17 89/6
91/10 96/20 96/21
103/12 104/10
makes [8] 18/23 35/7
54/25 57/18 69/6 71/9
96/16 97/20
making [1] 16/9
management [1] 73/15
managing [1] 80/19
manner [2] 23/5 64/16
manufacturer [2]
56/11 56/17
manufacturers [1]
56/11
many [12] 5/13 19/13
22/3 52/20 54/1 59/24
61/1 65/14 70/23 70/24
75/2 105/10
marked [1] 57/2
market [15] 38/10
38/14 44/6 46/13 46/16
46/17 47/3 47/9 47/23
47/24 48/2 48/3 48/13
48/13 48/21
markets [7] 45/1 46/8
46/25 47/7 47/11 47/24
81/23
marries [1] 52/16
material [3] 59/19
66/12 79/14
materials [2] 65/1
66/24
math [2] 63/5 67/4
matter [17] 8/11 16/7
16/9 22/9 24/22 32/23
40/19 42/3 45/24 49/5
52/11 69/4 74/19 79/1
84/10 88/9 109/4
matters [15] 5/16 5/23
6/2 6/25 17/21 23/20

92/7 93/3 93/3 93/5
95/15
may [36] 7/1 7/7 7/13
8/13 8/22 10/14 18/8
19/13 33/3 33/9 35/25
37/8 43/7 49/22 50/25
53/5 57/5 58/5 67/20
71/23 76/2 78/18 88/1
88/2 88/15 88/17 88/18
93/2 93/3 93/5 94/6
100/25 103/5 105/11
105/12 107/6
maybe [15] 13/4 23/12
29/16 30/22 36/10
51/14 52/21 52/22 69/5
69/7 69/7 71/17 76/12
83/4 85/20
me [92] 6/6 6/7 6/13
6/14 6/25 7/23 9/4 10/4
10/25 12/9 12/22 15/8
22/19 23/2 24/3 24/8
25/19 26/5 34/18 35/1
35/5 35/8 35/18 35/19
36/17 37/16 38/16
38/17 38/20 39/14
40/11 40/17 42/22 43/2
44/9 45/3 45/14 45/15
46/3 48/13 48/20 49/9
49/12 49/13 49/13
51/13 52/8 52/14 52/23
54/15 54/18 55/18
55/21 58/1 59/9 60/6
60/16 60/20 60/20
63/16 63/17 63/24 65/3
65/13 66/7 66/14 67/6
70/13 75/17 75/18
76/10 76/16 76/25
79/14 80/9 81/15 82/17
84/6 86/6 86/13 87/18
88/3 95/5 95/20 98/12
99/17 100/11 100/16
103/20 105/5 105/6
108/4
mean [69] 12/6 12/23
13/21 14/9 14/13 15/20
18/3 18/25 21/15 21/21
22/4 22/11 25/17 26/3
27/10 28/3 29/20 30/6
30/19 31/11 35/5 37/4
37/20 37/22 38/3 38/7
38/8 39/2 39/4 39/23
41/1 42/18 44/5 45/8
47/21 51/16 53/15
57/23 60/3 60/4 60/15
62/4 64/25 65/8 66/8
66/18 66/22 67/1 67/4
70/7 70/8 71/19 73/8
80/18 84/4 85/5 85/24
86/19 87/13 90/5 90/6
90/7 91/4 95/25 96/7
96/7 99/18 103/14
104/14
means [4] 28/1 56/5
83/4 94/23
meant [1] 15/18
mechanical [1] 4/6
media [3] 79/9 79/10

meet [5] 17/24 54/2
75/11 89/20 94/9
meeting [1] 91/24
MEHTA [1] 1/10
members [1] 91/13
mention [1] 37/10
mere [1] 27/13
Merit [1] 4/2
met [2] 33/13 75/17
metrics [1] 65/17
microphone [1] 28/5
Microsoft [4] 44/13
50/22 83/21 83/24
middle [2] 30/7 91/25
might [20] 7/16 8/11
20/11 27/14 35/16
37/10 39/11 40/12
40/16 44/13 55/14
56/13 57/12 59/10
69/17 69/18 71/21
73/19 90/8 98/25
million [1] 86/23
mind [15] 11/6 19/21
20/6 20/16 24/14 26/8
29/5 36/19 42/14 60/25
64/4 68/4 75/10 93/9
99/25
mindful [1] 106/7
mine [1] 98/3
minimize [4] 26/1
69/14 95/12 97/8
minimized [1] 25/24
minimizing [1] 52/17
minimum [1] 48/10
minutes [3] 93/15
93/15 93/18
mischaracterizing [1]
30/23
misconduct [1] 85/9
missed [1] 51/24
mistakes [1] 71/9
modest [1] 23/3
Molock [1] 12/7
moment [2] 14/14 30/3
Monday [1] 75/15
money [1] 30/22
monitor [1] 81/1
monopolist [1] 107/2
months [1] 5/13
more [34] 9/1 13/5
21/14 24/21 24/25 32/7
33/4 35/9 39/4 40/5
40/5 40/18 44/6 45/18
45/22 45/23 46/19
46/22 49/14 58/9 64/4
66/11 66/13 68/21 70/8
77/24 78/2 79/3 96/3
96/16 97/20 100/11
102/23 107/18
MORING [1] 3/18
mornings [1] 93/25
most [7] 6/17 20/15
36/14 47/11 53/22
69/13 84/12
motion [24] 34/23
35/23 38/21 40/21
44/18 44/21 45/16

60/24 49/9 49/10 49/23
49/25 50/7 50/25 61/7
76/24 77/2 80/16 81/17
99/13 99/14 100/4
102/1 104/25
motions [11] 5/24 5/24
22/13 23/13 34/20
34/21 34/22 37/18
51/23 52/1 76/21
move [7] 38/22 44/16
85/2 86/14 87/4 91/15
103/21
moved [7] 22/19 37/23
39/21 40/2 41/15 41/25
42/1
moving [1] 70/16
Mozilla [1] 46/12
Mr [1] 96/20
Mr. [68] 8/23 11/1
11/17 11/22 11/22 12/1
12/3 12/5 12/23 13/8
13/9 13/12 13/14 13/15
13/16 13/16 13/18 16/6
18/11 21/11 23/15
23/19 24/18 24/19
24/21 25/3 25/10 25/15
26/22 26/25 27/7 28/4
28/13 28/20 29/17
31/17 31/18 31/22
32/21 36/21 36/24 37/1
44/20 46/3 47/16 53/4
57/25 70/18 71/24
72/11 80/3 80/3 81/11
82/14 92/22 93/22
95/23 96/23 97/12
97/17 98/4 100/11
100/18 104/19 105/5
105/6 105/25 107/10
Mr. Barton [5] 12/1
12/3 12/5 13/8 13/16
Mr. Cavanaugh [5]
81/11 92/22 97/12
100/18 105/5
Mr. Chang [2] 29/17
31/18
Mr. Cook [1] 24/21
Mr. Cue [6] 24/18
24/19 25/3 25/15 26/22
28/13
Mr. Cue's [1] 25/10
Mr. Dintzer [11] 8/23
11/17 21/11 28/4 31/17
36/21 47/16 80/3 82/14
97/17 100/11
Mr. Dintzer's [1] 31/22
Mr. Giannandrea [2]
13/9 13/16
Mr. Goldstein [2]
36/24 37/1
Mr. Herrmann [2] 53/4
72/11
Mr. Herrmann's [1]
71/24
Mr. Leeman [2] 11/22
13/15
Mr. Perica [2] 26/25
27/7
Mr. Perica's [1] 28/20

**M**

Mr. Ramaswamy [1] 13/12
Mr. Safty [1] 70/18
Mr. Sallet [2] 80/3 105/6
Mr. Schmidtlein [13] 11/1 12/23 13/18 16/6 18/11 44/20 46/3 57/25 95/23 98/4 104/19 105/25 107/10
Mr. Sunshine [3] 23/15 23/19 32/21
Mr. X [1] 96/23
Mr. Yu [2] 11/22 13/14
Mr. Zaremba [1] 93/22
Ms [1] 100/23
Ms. [3] 60/1 98/21 104/22
Ms. Hammer [2] 98/21 104/22
Ms. Zahid [1] 60/1
much [21] 19/3 19/20 21/1 21/6 21/16 22/10 23/22 24/12 24/20 29/19 32/7 36/18 43/3 44/16 52/5 79/8 81/19 90/20 93/7 96/4 108/1
multiple [2] 46/25 82/15
music [1] 36/15
must [1] 50/22
mute [1] 82/14
my [51] 6/14 6/17 7/16 14/15 14/19 15/5 20/6 20/16 23/2 23/21 24/14 26/8 28/7 29/14 29/21 32/21 33/7 35/1 35/24 36/6 37/15 44/5 45/2 45/25 47/18 52/3 52/16 58/3 63/5 64/24 65/3 65/16 66/8 66/8 66/9 68/12 68/22 73/15 75/10 76/8 77/3 77/14 82/17 90/19 92/3 94/4 95/5 96/1 96/24 99/5 101/10
myself [1] 62/18
mystified [1] 42/12

**N**

nail [1] 39/18
names [1] 11/19
narrow [3] 36/9 53/17 68/11
narrowed [1] 74/13
nascent [1] 41/4
nature [2] 33/16 70/1
nauseam [1] 51/5
nearly [1] 31/25
necessary [1] 88/21
need [39] 5/17 7/7 15/12 30/7 31/24 45/13 52/17 53/15 53/22 53/23 53/24 56/22 57/13 66/17 69/17 71/10 71/12 71/14 72/15 75/11 75/18

84/5 85/8 88/16 91/22 96/4 97/6 97/7 99/18 100/11 102/3 103/5 105/22 105/23 106/21
needed [7] 18/5 29/1 29/4 37/20 50/11 102/7 104/1
needing [2] 27/11 79/13
needle [1] 34/5
needless [1] 106/13
needs [5] 5/18 27/25 33/5 33/10 73/24
nefarious [1] 39/6
negotiating [1] 12/13
negotiation [1] 30/3
negotiations [5] 58/19 61/24 62/4 62/25 64/12
nested [1] 25/6
never [5] 28/8 32/17 38/2 43/5 83/25
new [8] 3/11 3/19 25/8 32/1 32/13 35/25 41/4 103/3
news [1] 26/17
next [10] 3/18 63/22 63/22 67/1 72/2 75/12 75/13 75/21 89/19 106/3
night [1] 81/25
no [44] 1/4 6/21 8/11 10/17 11/10 15/4 20/24 21/4 21/23 21/25 22/9 25/14 25/21 27/6 30/5 36/11 38/7 38/23 40/4 40/20 42/2 47/2 47/2 47/12 55/10 58/24 59/16 66/3 69/1 80/24 80/24 85/2 85/4 85/12 85/24 86/2 88/21 89/9 92/10 95/25 97/19 99/22 101/8 102/15
non [6] 3/17 32/17 65/2 72/23 78/11 94/11
non-bespoke [1] 72/23
non-business [1] 65/2
non-insubstantial [1] 78/11
non-party [2] 3/17 32/17
non-responsive [1] 94/11
none [2] 5/21 37/4
nonpublic [2] 65/18 65/19
Northern [1] 83/21
not [174]
note [3] 56/3 63/11 92/8
notes [1] 39/25
nothing [5] 25/5 65/23 87/4 107/17 107/24
notice [3] 28/25 102/21 103/3
now [37] 8/2 9/1 11/14 21/17 25/13 41/16 43/7 43/11 43/17 45/15

51/3 52/7 54/22 62/10 64/12 65/9 70/10 74/1 75/2 76/25 77/7 77/11 77/14 87/25 88/23 88/24 89/3 89/8 91/16 92/6 95/25 103/2 107/11
nudge [1] 94/16
number [18] 5/16 10/13 12/18 12/20 52/17 55/17 55/21 66/2 66/13 66/20 68/18 70/25 72/3 77/21 85/7 90/11 95/12 102/11
numbers [12] 8/21 36/10 44/23 44/24 66/9 68/15 89/23 89/25 90/8 90/8 90/10 90/15
numerous [1] 94/10
NW [5] 2/3 2/12 2/16 3/14 4/4
NY [2] 3/11 3/19

**O**

object [5] 15/22 15/24 16/4 49/1 87/3
objected [3] 85/25 86/10 106/12
objected-to [1] 86/10
objection [4] 85/24 86/7 87/9 87/21
objectionable [1] 51/11
objections [9] 29/20 72/18 85/2 85/4 86/2 86/8 87/6 103/4 105/11
obligation [1] 33/13
obliquely [1] 68/18
observation [1] 103/13
observed [1] 62/16
obtuse [1] 56/24
obviously [12] 7/18 28/13 28/15 39/16 66/10 78/25 87/1 88/1 88/2 89/4 90/9 103/4
occasional [1] 67/20
occupies [2] 36/8 68/20
occupy [1] 36/18
October [1] 91/22
OEM's [1] 35/15
off [10] 8/13 11/23 13/12 26/23 28/9 52/9 66/18 80/19 81/1 91/19
offer [1] 50/4
offered [1] 105/18
office [1] 84/6
officers [1] 91/10
Official [1] 4/3
often [4] 23/20 33/5 62/25 63/13
oftentimes [1] 66/1
oh [2] 55/8 80/14
okay [90] 6/3 6/8 7/1 8/22 9/10 9/17 11/12 14/16 13/10 13/17 14/8 14/25 15/21 16/5 16/19

27/8 28/17 29/8 30/18 31/10 31/14 34/4 34/14 36/3 36/17 38/6 39/13 44/3 47/15 47/20 48/7 48/16 48/23 51/7 51/25 53/20 56/2 57/1 57/22 61/18 65/10 66/5 67/17 69/14 69/25 73/4 75/22 76/3 76/6 80/2 80/14 81/14 84/3 84/4 84/10 84/19 84/23 85/22 87/23 88/7 90/13 90/16 91/2 91/6 91/9 92/21 94/3 94/4 94/19 97/3 98/9 98/16 99/2 100/12 100/17 100/22 100/24 101/21 102/14 103/25 104/13 105/1 105/24 106/5 107/4 107/24
old [5] 62/6 62/7 63/18 63/22 63/22
older [1] 66/13
once [4] 6/20 19/23 41/6 74/24
one [55] 7/6 7/10 8/6 10/21 12/12 18/5 19/24 20/17 20/25 21/19 25/6 26/21 26/23 33/20 37/10 37/12 39/4 45/7 47/12 47/19 47/24 55/13 55/18 56/11 58/25 61/23 62/3 62/6 63/22 63/22 67/13 69/6 69/15 76/18 79/3 79/7 83/3 84/21 87/9 87/9 89/17 91/21 91/23 95/15 99/9 99/10 104/2 102/17 102/17 102/23 104/1 104/22 106/20 107/5 107/18
ones [7] 30/16 54/5 70/21 74/6 86/19 89/20 100/3
ongoing [2] 62/13 63/7
only [16] 25/7 31/11 32/9 33/9 46/14 47/3 57/16 74/22 77/11 77/14 88/13 90/24 92/2 93/24 97/1 104/12
open [32] 8/21 33/21 35/14 35/17 37/24 45/7 55/1 55/6 57/14 59/2 59/22 60/21 61/4 81/23 89/25 95/1 95/2 95/2 95/6 95/17 95/18 96/8 96/12 96/13 97/4 97/5 97/7 97/18 97/19 97/21 98/7 98/8
open-ended [1] 8/21
open-source [2] 35/17 37/24
opening [7] 8/2 71/13 73/19 74/10 75/8 75/19 95/7
openings [4] 79/8 79/12 79/15 107/20
opens [1] 92/4

operate [1] 8/20
operates [1] 17/10
operating [2] 35/14 37/10
operations [1] 5/18
opine [1] 42/10
opinion [4] 25/10 59/17 88/16 106/16
opinions [2] 105/18 106/20
opportunity [4] 24/4 38/22 49/18 84/16
oppose [2] 56/6 57/10
opposed [4] 44/7 51/3 56/7 79/1
opposition [1] 37/18
options [1] 37/9
order [24] 5/18 9/19 17/18 17/18 19/2 38/1 50/2 50/7 51/5 58/8 59/14 64/6 71/16 75/4 75/6 75/6 75/7 76/11 82/24 84/11 84/14 99/7 100/1 104/8
ordinary [4] 6/17 6/19 7/18 7/22
organizations [1] 22/5
originally [2] 43/22 101/19
other [38] 13/7 18/3 21/3 23/1 25/21 28/14 31/7 32/3 40/23 41/13 42/25 47/7 50/25 51/10 61/16 61/20 62/6 62/21 63/9 66/11 69/4 69/6 70/2 72/25 79/7 83/19 87/18 88/4 88/16 88/22 90/19 92/7 93/3 96/7 99/15 103/5 105/3 105/14
others [6] 20/17 31/5 31/22 85/25 99/12 100/7
otherwise [9] 14/16 17/1 20/11 35/16 81/5 82/20 87/21 90/10 95/19
ought [8] 6/18 23/12 29/5 29/23 38/10 60/21 84/14 107/13
our [71] 5/12 12/5 13/11 16/8 16/8 16/21 17/6 18/1 18/7 18/9 19/9 19/18 21/14 22/1 22/6 24/18 26/24 27/17 27/18 28/3 31/23 34/9 34/10 34/12 36/18 36/24 38/23 46/25 53/6 53/13 58/16 59/17 59/18 71/13 71/13 71/15 71/18 72/1 74/21 74/24 79/22 80/12 80/16 80/20 81/8 81/12 83/17 85/1 87/10 88/10 89/16 90/25 91/10 91/20 92/6 96/4 98/19 98/21 98/25 99/10 99/13 99/14 100/2

**O**

our... [8] 100/4 102/4 103/10 104/10 106/8 106/9 106/12 106/24
out [38] 7/10 9/13 14/13 19/23 20/11 20/25 22/10 23/6 23/24 27/21 28/23 32/12 33/16 39/24 41/6 42/20 45/14 47/23 48/14 48/17 49/12 56/22 58/23 62/5 63/24 65/13 70/9 71/11 75/21 76/1 79/5 82/4 82/9 92/18 93/21 96/24 105/17 106/24
output [1] 46/22
outside [5] 10/21 44/25 72/6 103/18 103/19
outsource [1] 68/7
outstanding [4] 80/16 89/15 89/20 102/14
over [12] 16/13 22/18 23/13 25/9 49/5 53/22 54/3 54/4 64/21 69/17 85/7 105/22
overbroad [1] 67/16
overcome [1] 57/20
overlapping [1] 94/13
overwhelming [1] 69/23
own [9] 11/6 15/7 15/8 15/12 16/3 25/12 71/15 80/12 80/16

**P**

p.m [2] 1/6 108/6
page [5] 55/25 61/22 61/25 61/25 88/24
pages [2] 50/8 65/16
painstakingly [1] 58/15
panacea [1] 50/19
pandemic [1] 77/7
paper [1] 53/15
paragraph [3] 17/17 106/11 106/11
paragraphs [4] 59/8 59/15 105/16 105/19
part [18] 27/18 34/7 35/5 36/8 38/3 38/20 39/15 42/5 43/18 43/19 45/21 50/11 55/4 69/13 74/23 85/5 90/24 99/6
particular [14] 7/5 13/19 14/17 16/13 16/16 22/24 37/7 40/11 43/6 54/23 58/2 59/8 61/12 88/4
particularly [9] 11/2 26/9 45/6 45/7 59/10 60/18 63/21 73/12 74/11
parties [11] 9/19 22/24 25/22 26/10 61/5 61/7 78/25 87/12 87/14 93/6 93/8
parties' [3] 5/23 28/14

partner [1] 58/3
partnerships [1] 63/8
parts [4] 53/22 60/19 75/1 78/18
party [6] 3/17 14/17 27/3 32/17 87/19 89/15
passage [1] 72/19
passed [1] 9/6
past [4] 6/21 9/7 51/18 71/3
Patrick [1] 3/17
pattern [1] 93/17
PATTERSON [1] 3/9
pay [1] 68/6
pbwt.com [1] 3/12
peel [1] 67/14
pencil [1] 22/1
pending [1] 5/24
people [19] 11/20 17/9 19/11 22/5 27/17 28/24 36/14 41/18 43/25 62/19 72/3 77/22 83/9 83/15 83/24 84/6 90/25 95/13 99/12
per [3] 70/23 70/24 95/16
percent [3] 26/4 65/16 106/9
percentage [2] 64/13 65/2
percentages [1] 68/15
perceptible [1] 36/9
perfectly [1] 106/7
perhaps [5] 24/11 36/2 45/18 51/4 63/21
Perica [2] 26/25 27/7
Perica's [1] 28/20
period [1] 20/20
permeates [1] 63/9
permissible [1] 79/2
permit [1] 14/23 24/6
permitted [2] 77/4 101/23
persisting [1] 105/12
person [6] 20/20 30/17 31/8 65/3 67/15 101/8
personal [4] 29/2 29/25 30/13 30/17
personally [1] 93/3
perspective [4] 20/8 73/15 78/24 79/19
pertinent [1] 62/25
Petitioner [1] 3/17
piece [3] 24/17 26/24 50/13
pipe [1] 79/9
place [2] 28/19 63/1
Plaintiff [3] 2/5 7/
plaintiff's [1] 20/12
plaintiffs [37] 1/4 2/2 5/5 8/3 10/9 16/24 22/12 24/6 24/24 25/2 25/7 25/18 25/24 29/15 31/19 33/21 35/12 35/23 40/10 42/22 49/12 52/19 58/25 74/2 75/5 76/10 80/7 81/16

98/14 102/10 104/14 107/14 107/15
plaintiffs' [9] 18/7 18/8 32/22 35/3 49/10 59/20 61/6 80/5 98/6
plan [7] 17/6 18/4 18/13 24/5 29/5 87/13 92/23
planning [4] 29/17 87/10 92/9 104/9
plans [2] 27/19 72/4
play [2] 8/20 36/15
playing [1] 45/4
plays [1] 82/4
please [5] 28/4 76/16 85/12 91/1 108/4
plus [2] 62/6 62/10 85/19
point [20] 14/23 16/12 19/17 19/18 20/7 20/18 22/11 27/5 31/23 40/4 52/20 60/12 64/17 64/19 66/19 68/12 68/13 96/6 102/18 107/10
pointed [1] 59/25
points [2] 22/17 26/20
pontificate [1] 50/13
portion [14] 40/1 54/9 60/22 95/1 95/1 95/2 95/2 95/4 95/4 95/7 95/19 96/2 96/13 102/22
portions [14] 52/5 52/23 53/17 55/6 57/17 60/8 73/11 73/19 74/6 74/13 78/12 83/12 97/1 97/21
pose [1] 61/13
position [15] 10/5 22/14 28/20 33/19 43/11 43/14 45/25 46/25 59/18 73/10 74/4 78/4 80/15 81/8 83/17
positioned [1] 32/7
positions [3] 10/5 53/21 54/4
possible [4] 18/7 24/22 29/3 64/6
possibly [1] 41/14
post [4] 45/13 49/1 51/2 100/2
post-trial [4] 45/13 49/1 51/2 100/2
potential [2] 14/2 27/21
practical [1] 52/11
pre [1] 92/18
pre-existing [1] 92/18
preamble [4] 54/16 54/20 55/3 55/17
precise [1] 13/5 20/9 75/6
precisely [1] 41/25
preclude [2] 34/24 102/13
predate [1] 62/6

preference [4] 14/15 14/19 32/21 33/7
prefers [1] 94/24
prejudice [1] 48/25
prep [1] 24/25
prepare [2] 8/11 90/3
prepared [4] 15/23 15/25 53/9 79/12
preparing [1] 15/11
prepped [2] 14/11 16/4
present [9] 33/2 35/3 60/11 74/5 75/7 85/15 86/12 100/14 100/15
presentation [8] 19/21 35/6 61/23 63/23 65/9 66/16 68/14 84/13
presented [4] 35/6 43/2 87/6 104/7
presenting [1] 24/15
presents [3] 24/11 34/17 55/5
presumably [3] 19/4 32/4 95/7
presume [2] 9/5 87/20
presumed [1] 11/15
presumption [1] 57/20
presumptively [1] 92/2
pretrial [7] 1/9 5/12 6/9 53/6 93/5 102/1 106/25
pretty [6] 24/20 38/11 67/7 68/19 71/10 94/14
Prettyman [1] 4/4
preview [1] 51/3
previewed [1] 60/2
previously [3] 19/18 49/18 79/20
prima [2] 50/11 50/21
primarily [1] 73/16
primary [1] 30/16
privilege [4] 12/4 12/7 12/24 14/2
privileged [1] 13/22
pro [6] 44/1 46/15 47/7 47/8 50/12 50/23
pro-competitive [6] 44/1 46/15 47/7 47/8 50/12 50/23
probable [1] 28/23
probably [16] 15/13 19/10 19/10 36/17 47/11 59/14 66/2 66/9 66/11 74/8 75/1 78/15 78/16 80/20 82/14 88/10
probative [2] 24/17 25/1
problem [3] 6/15 25/6 62/11
procedure [1] 102/19
procedures [1] 82/22
proceeding [2] 52/13 95/6
proceedings [8] 1/9 4/6 77/5 77/6 79/9 82/20 108/6 109/4
process [7] 70/16 71/1 71/14 73/2 73/3 84/24

processes [2] 62/1 62/24
produced [1] 4/6
product [3] 49/11 50/16 51/17
productive [1] 31/13
products [2] 41/7 58/19
professional [2] 24/22 29/2
professor [3] 40/15 98/19 106/20
Professor Rangel [1] 98/19
proffer [1] 48/9
Progress [1] 81/22
prohibited [1] 82/20
prohibits [1] 83/3
Project [2] 81/22 81/23
promise [2] 28/9 28/16
promises [1] 28/14
promptly [1] 105/7
proper [1] 49/25
properly [3] 50/2 81/3
proposal [5] 56/7 71/18 71/24 71/25 78/3
propose [1] 57/3
proposed [6] 10/7 33/22 37/18 53/19 56/6 70/20
proprietary [1] 37/13
prospect [2] 27/11 27/13
protected [1] 27/22
Protection [1] 3/3
proves [2] 31/23 32/10
provide [3] 13/24 50/15 54/11
provided [5] 17/20 17/24 19/7 57/18 94/10
providers [2] 106/19 106/25
providing [1] 107/2
province [1] 28/10
provisions [5] 59/24 60/3 60/7 61/2 61/12
public [34] 52/12 52/13 52/14 52/15 57/20 65/4 66/19 68/17 76/25 77/6 77/8 77/16 77/17 77/19 79/14 79/16 79/24 80/13 81/13 82/5 82/7 82/8 82/11 82/19 83/12 83/15 83/17 84/2 88/15 88/22 89/8 90/9 91/12 96/5
public-access [1] 80/13
publicly [3] 53/23 83/20 90/7
pull [1] 55/15
punted [1] 18/10
purported [2] 44/25 72/9
purportedly [1] 58/9
purpose [1] 25/14
purposes [2] 47/5

**P**

purposes... [1] 61/17
pursuant [1] 58/7
push [10] 21/23 45/19
52/9 53/23 85/17 85/18
85/21 88/10 88/25 92/6
pushed [6] 22/3 25/2
86/3 86/11 88/15 89/7
put [7] 7/12 9/12 11/19
24/13 52/8 62/18 100/2
putting [3] 11/5 23/6
74/2

**Q**

quality [4] 49/11 50/16
51/4 51/17
quash [4] 5/25 23/14
34/21 52/1
question [24] 15/5
20/6 20/15 20/16 24/14
24/23 27/14 29/14 30/6
47/12 52/3 52/19 53/17
54/5 58/6 59/23 69/15
69/16 82/21 84/21
88/20 98/18 99/23
101/22
questioning [4] 56/24
88/9 95/15 98/14
questions [26] 7/2
12/8 15/19 15/23 15/24
16/3 17/15 24/5 26/14
37/6 42/3 42/4 42/4
59/22 65/6 69/23 84/18
86/16 89/13 96/24 97/2
97/16 99/14 100/21
101/5 102/11
quick [2] 56/3 104/21
quickly [4] 33/16 71/11
71/17 74/5
quite [2] 45/21 64/14

**R**

radio [2] 82/24 83/7
raise [8] 5/22 7/4 49/1
49/3 72/16 73/1 77/1
104/12
raised [6] 15/6 15/9
35/22 40/9 50/1 50/24
raising [1] 65/6
Ralph [1] 3/4
Ramaswamy [1] 13/12
Rangel [1] 98/19
rare [1] 68/23
rate [1] 71/10
rather [8] 42/24 45/14
45/22 45/23 54/25
56/24 72/16 100/5
re [4] 72/21 96/12 97/4
98/7
re-open [3] 96/12 97/4
98/7
re-review [1] 72/21
reaction [3] 19/9 35/24
45/2
reactions [1] 36/20
reactive [1] 22/14
read [3] 69/1 77/15
84/4

reading [1] 76/3
ready [1] 76/17
real [5] 19/6 40/14 55/1
66/20 84/2
realistic [1] 27/14
Realistically [1] 72/2
realities [3] 38/3 38/14
39/11
reality [3] 22/23 25/20
44/7
really [63] 7/12 8/1
16/12 18/17 19/11 20/2
25/15 27/6 27/11 29/16
29/19 29/23 30/2 32/23
33/12 34/16 34/16
35/23 36/1 36/18 40/17
40/25 43/21 44/6 44/15
44/15 51/16 52/6 52/6
52/10 52/20 53/22
53/23 54/19 54/21
57/13 57/17 57/17 63/8
63/15 66/1 66/22 66/23
68/12 72/16 73/8 73/14
73/20 74/12 74/19
75/18 79/2 79/3 81/23
82/1 94/12 94/14 94/16
96/4 100/11 101/23
101/23 102/7
realtime [2] 4/3 93/22
reason [12] 6/23 7/22
27/6 27/23 28/21 45/18
55/1 64/8 66/20 69/1
78/24 92/3
reasonable [4] 18/15
19/8 21/21 70/25
reasons [7] 7/9 8/13
8/14 14/20 31/1 33/1
54/15
rebounds [1] 46/18
rebuttal [6] 96/18
96/19 104/2 104/8
104/11 104/14
received [4] 58/7 58/13
72/8 73/22
recent [5] 47/12 70/4
70/6 70/19 71/18
recently [3] 10/16
83/19 105/9
recess [1] 108/5
recognize [2] 23/25
49/22
record [8] 26/4 46/1
85/8 87/16 87/19 88/4
89/8 109/3
recorded [2] 4/6 38/5
records [10] 52/13
52/15 52/16 52/23 60/9
74/5 87/11 87/20 87/21
88/15
redact [1] 70/21
redacted [7] 65/18
66/4 67/3 67/4 72/10
72/20 79/25
redacting [4] 56/6
57/19 70/19 70/20
redaction [3] 57/24
57/24 66/2
redactions [10] 53/19

redactions [9] 54/3
65/24 67/15 67/21
74/22 74/23
redesignate [1] 99/15
redirect [1] 97/6
reference [1] 104/22
referencing [1] 71/24
referring [1] 83/1
refilling [1] 82/15
refined [1] 81/3
reflection [1] 8/18
regard [1] 18/9
regarding [5] 76/24
80/13 89/14 94/8 101/8
Registered [1] 4/2
Regrettably [1] 91/21
regulator [1] 67/11
reiterate [5] 5/20 32/20
52/12 83/10
relate [1] 62/13
related [3] 30/6 47/24
50/16
relates [1] 52/5
relating [2] 10/10 42/7
relationship [1] 11/10
relationships [1] 62/13
relatively [3] 10/13
10/16 70/6
relevance [1] 41/23
relevancy [1] 51/10
relevant [11] 42/2
44/25 45/24 51/14
51/15 53/7 70/3 99/20
101/9 107/1 107/3
relied [1] 26/6
relieve [1] 33/13
rely [2] 53/18 85/8
relying [1] 32/22
remain [1] 106/25
remaining [1] 54/5
remains [1] 107/3
remedies [1] 38/17
remember [5] 9/4
64/21 82/7 83/2 92/2
remotely [1] 77/9
remove [1] 105/8
removing [1] 105/9
repetitive [1] 22/17
reporter [5] 4/2 4/2 4/3
4/3 93/25
reports [3] 24/20
105/17 106/12
represent [1] 81/21
represented [3] 9/19
14/1 25/19
request [5] 13/11
49/15 50/14 80/12
80/17
requested [4] 28/21
58/2 79/9 92/12
requesting [1] 91/7
requests [1] 61/6
requires [2] 12/7 94/9
requiring [1] 24/24
reserve [2] 18/9 101/11
reserved [4] 21/14
90/22 90/24 102/9
reserving [1] 103/2

resolution [2] 71/20
87/12
resolve [4] 54/3 75/19
88/23 89/17
resolved [5] 50/10
50/12 73/14 87/10
103/5
respect [16] 6/16 10/5
10/18 12/24 13/6 16/2
55/8 55/12 59/22 61/14
61/18 70/22 72/22
72/23 77/10 99/6
respond [4] 31/16
37/17 40/11 106/3
responded [3] 21/9
35/24 105/20
responding [1] 106/1
response [7] 40/20
71/4 71/11 72/3 84/12
98/5 105/23
responses [1] 107/9
responsibilities [1]
12/13
responsive [2] 94/11
94/16
rest [3] 18/6 19/25 52/9
result [1] 77/7
resulting [1] 36/4
results [1] 73/2
retains [1] 87/17
returning [2] 33/23
70/18
rev [3] 64/13 64/20
65/2
reveal [1] 62/1
revealing [1] 68/18
revenue [5] 44/19
70/19 89/25 90/2 90/15
review [4] 65/16 72/21
74/25 106/11
revised [1] 64/18
Revolving [1] 81/22
right [89] 5/9 5/12 5/14
5/16 6/9 7/14 7/20 8/5
9/1 10/2 10/19 10/23
11/16 17/5 17/16 22/8
23/11 26/5 29/9 34/19
36/13 37/1 38/15 39/9
39/13 39/15 39/16
44/17 44/18 44/25
45/21 45/25 48/7 48/8
48/11 49/8 51/7 51/22
51/23 51/25 52/7 54/22
55/17 55/21 55/23 56/8
57/7 61/11 63/5 64/9
64/24 65/22 67/8 69/3
70/5 70/10 72/17 72/24
76/5 76/24 77/11 77/13
78/8 78/13 79/6 79/23
81/10 81/15 82/11 84/9
86/21 86/25 89/5 90/18
90/22 91/16 91/25
92/21 94/3 96/11 97/23
99/22 101/17 103/2
103/6 104/18 107/5
107/12 108/1
rightly [1] 66/24
rights [1] 18/9

risk [1] 108/3
risk [2] 61/13 79/4
RMR [2] 109/2 109/3
road [2] 89/2 89/2
role [1] 45/3
room [4] 2/7 5/10
79/10 79/13
rooms [1] 91/16
row [2] 91/3 91/4
rows [3] 90/21 90/25
91/12
rule [13] 6/14 6/17 6/19
7/1 7/21 7/22 8/16
14/15 17/9 26/5 77/4
83/2 84/4
rules [4] 77/15 82/22
83/1 83/3
ruling [6] 7/4 50/19
105/8 105/16 106/8
106/9
rulings [1] 54/12
run [1] 91/18
running [1] 74/1
runs [1] 24/20
Ryan [1] 100/23

**S**

Safty [3] 3/13 58/3
70/18
said [21] 8/18 11/21
18/6 18/16 18/18 21/17
25/7 26/11 28/12 32/20
44/5 52/10 52/11 69/3
70/18 71/6 72/10 72/13
81/6 82/1 99/7
salient [1] 22/17
Sallet [4] 3/2 5/6 80/3
105/6
same [20] 8/15 8/20
11/20 18/19 21/18 25/5
26/25 40/25 50/14 65/7
73/24 88/11 88/24
89/18 91/7 93/4 93/17
97/17 100/18 106/23
Samsung [3] 3/18 5/25
29/9
Samsung's [1] 32/9
San [1] 2/8
Sarah [2] 2/3 89/11
sarah.bartels [1] 2/18
sat [1] 27/4
satisfy [1] 73/3
Savar [1] 100/23
save [2] 101/4 101/6
saves [1] 87/13
saw [1] 18/1
say [31] 7/8 17/15
18/11 19/19 21/20 22/6
22/9 23/22 24/2 25/3
26/3 30/19 37/25 38/23
39/19 50/17 51/4 54/7
56/19 64/12 71/12
73/23 74/12 86/6 87/15
90/6 100/3 100/6 100/7
100/10 102/13
saying [13] 8/25 28/2
30/25 39/5 39/6 39/7
41/16 43/14 43/17 47/2

**S**

saying... [3] 49/2 49/4
105/15
says [6] 9/21 27/23
63/23 69/2 82/24 87/16
schedule [5] 18/24
28/3 91/20 92/4 93/2
scheduled [1] 58/11
scheduling [1] 34/16
scheme [1] 65/12
Schmidtlein [15] 3/13
5/8 11/1 12/23 13/18
16/6 18/11 44/20 46/3
57/25 95/23 98/4
104/19 105/25 107/10
scope [6] 15/17 18/8
19/12 20/9 20/12 98/6
screen [4] 66/19 68/17
68/17 103/20
script [1] 22/10
seal [5] 55/7 56/7 61/9
65/14 72/14
sealed [2] 72/10 83/12
sealing [3] 56/12 58/21
60/1
search [17] 13/3 41/3
41/5 41/10 41/19 46/15
46/16 46/18 46/21
46/21 46/22 47/3 47/9
47/23 48/13 67/2
106/19
seat [2] 28/2 91/12
SEC [1] 90/8
second [6] 55/18 61/24
98/21 104/23 104/24
105/4
secret [2] 25/14 59/16
secrets [2] 66/25 67/10
Section [5] 2/12 3/3
45/7 45/9 45/10
Section 1 [1] 45/9
Section 2 [2] 45/7
45/10
security [1] 91/10
see [11] 36/16 44/4
46/24 48/14 51/16 56/8
69/1 70/20 77/25
103/18 108/1
seed [1] 30/22
seed-money [1] 30/22
seeing [1] 24/16
seek [2] 7/22 85/15
seeking [7] 32/16
49/23 60/9 72/14 83/11
83/15 93/23
seeks [1] 65/14
seem [3] 26/6 41/16
105/12
seems [8] 22/18 23/2
35/18 40/11 49/14
66/14 95/20 106/13
seen [4] 18/6 18/13
86/23 96/1
senior [1] 24/19
sense [10] 23/12 35/5
35/8 36/7 51/18 57/18
96/6 96/16 96/20 97/20
sensitive [12] 58/20

64/12 64/13 66/10
66/11 66/23 67/11 70/4
sensitivity [1] 57/13
sent [3] 76/12 105/14
106/15
sentencings [1] 92/6
separate [3] 14/1 15/5
61/16
separately [2] 72/8
80/12
September [6] 1/5
26/22 73/14 77/11
77/14 109/7
sequencing [1] 30/20
seriously [1] 81/3
SERP [1] 51/17
Services [1] 2/12
session [7] 52/18 55/1
78/19 95/15 95/17 98/5
98/8
sessions [2] 80/20
81/2
set [11] 19/5 25/5 27/6
35/7 36/14 71/3 76/17
76/25 89/19 89/21
94/12
sets [1] 98/13
setting [1] 37/18
several [2] 10/20 83/19
shaking [2] 36/11
43/13
share [7] 17/11 23/20
35/1 64/13 64/20 65/2
66/8
shared [2] 89/25 90/15
shares [1] 70/19
sharpened [1] 22/1
she [1] 98/25
she'll [1] 98/24
sheets [1] 8/20
shift [2] 38/13 64/11
shifting [2] 50/21
51/11
shoes [1] 62/18
short [7] 6/1 9/9 11/1
48/19 70/7 70/12 74/1
shorter [1] 21/6
shortly [1] 76/23
should [24] 11/11
11/15 13/4 13/5 17/13
17/15 18/14 18/14
18/18 19/3 27/5 29/1
47/1 67/4 69/24 72/10
72/20 78/18 79/7 94/13
95/1 95/14 102/16
105/10
shouldn't [4] 13/19
42/4 42/5 60/10
show [15] 41/17 47/23
48/4 48/10 52/6 54/18
57/3 59/1 73/11 73/19
79/14 102/21 103/4
103/15 103/16
showed [1] 41/9
showing [1] 102/18
shown [1] 40/6

39/25 62/21 91/11
91/15 103/14
sided [1] 73/7
sidelines [1] 24/7
sides [3] 19/15 22/16
75/4
sign [2] 35/16 35/16
signature [4] 54/17
55/3 60/4 60/8
signatures [1] 55/17
signed [1] 54/20
significance [1] 49/6
significant [1] 40/1
similar [2] 50/19 50/25
simply [5] 17/24 24/7
77/17 83/9 83/15
since [9] 15/10 21/23
36/7 49/14 57/25 72/6
88/9 89/17 102/14
single [3] 18/19 51/3
101/17
sir [1] 59/6
Siri [1] 41/8
sit [2] 24/7 92/3
sitting [5] 7/10 91/22
92/9 92/10 92/15
situation [1] 24/12
skeptical [2] 35/10
95/23
skip [1] 23/13
skirmishes [1] 107/6
slide [1] 79/22
slides [1] 59/14
slight [1] 20/14
slim [1] 57/17
sliver [1] 41/10
small [4] 10/13 26/20
38/20 44/14
smartphone [3] 37/9
39/11 48/2
so [193]
so I think [9] 9/9 22/13
23/4 23/12 28/25 65/5
71/10 76/6 88/23
so it's [2] 13/8 25/14
So this isn't [1] 84/1
sole [1] 32/13
some [44] 11/19 12/9
15/16 16/13 17/20 18/8
18/25 19/15 20/7 20/20
22/25 27/13 27/23
30/14 35/7 38/4 41/2
42/15 45/10 52/21
54/12 59/9 61/6 61/8
63/17 64/1 65/5 65/6
73/9 73/24 75/19 77/7
78/11 83/4 84/5 88/9
88/16 89/23 96/23
101/4 102/22 103/3
105/10 105/11
somebody [19] 6/20
8/18 16/15 27/3 27/18
27/23 27/24 33/8 40/13
52/24 54/24 57/4 63/3
67/6 68/6 101/2 101/7
101/8 101/10
somehow [1] 41/18

something [37] 8/13
10/7 10/7 16/16 27/22
28/1 28/16 30/1 36/2
36/17 38/17 41/19
43/18 45/12 45/14
48/21 51/13 54/19 57/3
59/25 60/17 61/14 62/8
62/10 63/20 64/22
65/15 66/7 68/20 74/12
76/1 77/12 77/13 83/11
83/18 84/1 102/9
sometimes [1] 63/9
somewhere [1] 36/7
song [2] 43/16 86/13
soon [2] 105/23 108/2
sorry [12] 6/7 13/4
15/18 33/6 55/16 60/5
64/19 76/21 84/14
85/10 98/22 102/24
sort [47] 5/18 5/20 6/19
7/7 8/7 8/21 10/21
13/24 16/11 16/12
16/14 16/15 17/13 21/4
30/21 35/6 38/3 38/13
39/10 39/24 41/17
41/18 41/22 42/9 42/14
42/15 43/17 43/25
44/13 45/14 45/20
48/11 54/15 59/9 63/8
68/10 68/18 68/22
69/11 69/19 73/15
76/13 77/3 79/15 79/24
85/6 101/10
sought [1] 6/22
sounds [3] 17/19 44/14
45/20
source [4] 32/13 35/14
35/17 37/24
South [1] 2/21
space [1] 65/4
spades [1] 50/18
special [1] 106/25
specialized [1] 106/19
specific [10] 16/12
19/2 30/9 49/23 55/8
55/12 73/10 99/13
104/7 104/8
Specifically [1] 70/18
spend [2] 51/2 57/23
spending [1] 49/19
spills [1] 48/4
spirit [1] 21/8
spoliation [13] 99/6
99/13 99/14 99/14
99/20 99/24 100/4
100/15 100/21 101/2
100/7 101/11 101/18
St [1] 3/14
stage [3] 38/17 51/14
76/25
stale [2] 64/14 66/13
staleness [1] 63/8
stand [11] 6/11 6/17
6/20 6/24 14/21 19/1
20/20 26/1 28/9 66/4
87/14
standard [5] 26/5 27/6

69/19 54/2 93/11
standards [1] 58/21
standpoint [1] 30/22
stands [2] 20/25 108/5
staring [1] 103/20
start [11] 6/4 12/2
36/21 36/22 39/14 58/5
86/5 86/22 92/24 93/1
97/18
started [4] 11/21 13/3
71/22 74/16
starting [3] 34/23 62/3
75/21
starts [4] 22/17 22/18
86/19 91/14
startup [2] 30/21 31/6
state [3] 3/2 82/9 99/25
state's [1] 105/21
stated [1] 50/9
statement [2] 84/12
88/21
states [11] 1/1 1/3 1/10
2/19 5/3 5/7 29/16
49/17 53/3 89/12
107/14
stays [2] 48/2 48/2
stenography [1] 4/6
step [5] 50/11 50/12
50/12 50/21 50/23 74/8
step 1 [1] 50/11
steps [1] 30/12
sticking [1] 9/20
still [10] 10/7 31/19
42/13 62/24 73/21 74/7
75/14 77/12 88/1 96/1
stipulate [1] 8/4
stool [1] 35/7
stop [3] 50/20 50/20
50/21
straightforward [1]
94/14
strategy [1] 62/2
street [5] 2/3 2/12 2/16
2/21 73/7
strong [2] 20/18 82/11
strongly [1] 81/13
stuff [5] 39/16 42/2
52/7 66/22 94/14
sub [1] 25/6
subject [9] 17/21 29/20
39/20 40/10 57/25 60/1
61/7 63/21 73/21
submission [4] 5/23
6/5 61/22 67/10
submit [2] 32/6 86/18
submitted [1] 61/2
subpoena [3] 27/12
27/21 28/1
subpoenas [4] 23/14
26/7 26/8 34/21
substantial [2] 61/3
68/21
substantive [2] 6/25
100/21
successfully [1] 84/1
such [4] 44/14 62/9
83/20 101/15
sudden [1] 42/13

S

**suggest [2]** 38/9 38/24
**suite [4]** 2/21 3/6 3/10 34/11
**summary [21]** 35/19 36/1 37/19 37/23 38/1 39/21 40/10 40/19 40/20 42/1 42/11 43/3 44/11 45/15 50/6 50/7 59/16 79/21 105/7 106/7 106/16
**Sunshine [3]** 23/15 23/19 32/21
**support [1]** 81/13
**supporting [1]** 64/8
**suppose [1]** 54/11
**supposed [1]** 40/6
**supposedly [1]** 40/1
**sure [33]** 8/12 9/22 10/4 11/19 20/5 22/22 23/4 25/23 25/24 33/16 34/2 34/3 40/16 45/24 49/16 51/8 53/8 54/20 59/12 60/4 65/4 67/12 67/23 72/5 76/17 81/1 82/6 89/6 91/10 94/7 96/21 102/3 104/10
**surprise [2]** 23/22 44/20
**surprised [3]** 24/10 103/2 103/10
**surprising [1]** 46/9
**suspect [1]** 33/4
**sway [1]** 40/17
**sympathetic [1]** 22/24
**sync [1]** 35/17
**system [2]** 35/14 37/10

T

**table [2]** 11/23 13/12
**tacks [1]** 63/15
**take [52]** 5/17 9/15 9/24 12/5 13/12 18/18 18/19 18/23 19/4 19/4 19/19 19/22 20/1 21/2 21/5 21/18 21/20 21/25 24/18 28/21 31/12 32/12 33/6 37/5 41/18 44/10 44/21 46/25 47/13 51/12 54/11 63/16 64/3 66/6 67/21 68/3 68/10 69/11 69/12 69/13 71/19 71/21 72/1 72/22 75/10 80/15 81/2 81/17 93/12 93/14 100/2 103/23
**taken [2]** 11/22 64/17
**takes [5]** 23/24 44/17 76/6 84/10 87/12
**taking [5]** 43/11 43/14 68/16 78/4 81/24
**talk [24]** 7/15 29/9 31/5 31/6 31/8 39/22 39/23 43/25 52/8 54/25 55/13 56/19 56/23 60/21 61/19 66/3 68/21 73/20 74/19 76/3 76/7 84/6 87/7 90/7

52/2 74/17 84/13
**talking [9]** 11/20 27/1 30/13 30/14 34/6 37/6 41/2 52/24 85/19
**targeted [1]** 65/23
**team [2]** 36/24 91/14
**teams [1]** 90/22
**tech [4]** 53/14 79/21 91/18 101/8
**technology [3]** 2/11 32/8 46/20
**teed [1]** 40/19
**teleconference [2]** 77/20 77/21
**telephone [2]** 80/19 82/13
**television [2]** 82/24 83/7
**tell [14]** 6/14 18/2 18/14 18/22 19/3 19/21 22/7 26/16 28/8 28/25 52/14 67/6 76/16 79/18
**telling [3]** 18/22 60/20 63/17
**tells [1]** 56/12
**ten [2]** 25/10 62/7
**tend [1]** 68/23
**terms [23]** 6/9 8/6 10/3 11/5 11/6 14/21 44/9 46/4 52/4 56/13 56/14 56/14 56/16 56/19 56/20 62/2 66/16 68/14 70/11 72/23 73/25 105/10 107/19
**terrific [3]** 86/17 86/24 99/2
**testified [1]** 25/4
**testify [10]** 23/24 25/3 26/22 30/1 37/8 40/2 57/4 66/20 68/18 69/22
**testifying [2]** 29/24 31/23
**testimony [34]** 6/21 19/10 21/7 24/2 24/8 24/15 24/25 26/12 26/14 27/4 27/23 29/4 29/19 32/15 32/22 33/8 33/10 34/24 38/23 40/3 40/12 49/24 62/15 69/17 82/3 82/3 86/15 93/7 101/8 103/8 105/11 105/18 106/8 107/3
**than [21]** 19/5 19/8 19/14 20/20 21/5 21/14 22/14 24/21 26/15 33/4 36/2 45/14 49/15 58/10 66/11 66/12 71/11 72/16 78/2 82/15 93/6 89/17 94/15 96/3 98/15 99/8 99/18 100/3 102/7 102/13 104/11 105/7 105/8 105/14 105/23 106/10 106/15
**Thank [33]** 7/25 9/25 11/18 14/24 21/12 23/10 28/6 29/7 34/19 48/16 49/19 51/20 71/18 73/5 75/23 76/4 81/19 84/8 84/9 87/24 88/5 89/10 90/17 92/20 93/20 95/10 98/9 98/10

104/16 108/1
**Thank you [26]** 7/25 9/25 11/18 14/24 21/12 29/7 34/19 49/9 71/18 73/5 75/23 76/4 81/19 84/8 84/9 87/24 88/5 89/10 90/17 92/20 98/9 98/10 99/2 100/7 102/15 104/16
**that [607]**
**that's [77]** 7/18 7/21 8/1 8/19 11/25 12/8 14/12 15/13 15/20 16/25 18/22 18/22 19/23 20/22 21/8 21/9 23/6 27/22 28/1 28/14 29/21 33/25 35/11 36/13 40/16 41/15 41/25 43/1 43/10 43/14 45/18 47/3 48/21 49/2 51/23 52/6 54/9 55/16 58/9 59/25 61/5 63/4 63/20 64/15 64/22 65/5 66/14 68/19 70/12 70/23 70/23 70/24 71/9 72/12 73/21 74/19 76/18 78/21 81/8 82/20 82/21 83/8 83/18 84/2 84/19 88/3 88/12 91/3 91/8 91/25 94/4 96/6 96/14 102/6 102/24 104/12 106/15
**their [57]** 10/10 11/3 11/7 13/14 13/23 13/23 13/25 14/3 14/4 14/21 15/12 16/3 16/11 17/2 19/23 20/4 20/7 20/9 20/18 22/5 23/25 24/8 32/8 33/2 36/14 43/13 43/16 45/21 48/6 48/18 53/19 53/21 56/7 56/16 57/13 61/9 62/18 63/12 64/1 65/14 74/23 74/25 75/5 76/11 81/2 87/2 87/20 95/3 96/25 97/4 97/22 97/25 98/7 99/24 103/1 105/8 106/18
**them [62]** 7/12 7/16 7/16 12/5 13/24 13/24 14/2 14/11 14/20 14/22 15/17 15/24 16/1 16/2 18/5 18/25 19/20 19/21 19/25 21/1 21/22 22/4 23/3 25/18 25/19 27/12 27/14 27/22 28/9 32/24 33/2 34/6 34/6 39/18 52/15 53/20 56/14 57/4 62/19 63/6 67/15 75/7 84/6 85/8 87/4 88/25 89/17 94/1 96/3 98/15 99/8 99/18 100/3 102/7 102/13 104/1 105/8 105/14 105/23 106/10 106/15
**themselves [1]** 83/2
**then [82]** 6/1 6/11 6/14 9/20 9/24 11/4 14/23

18/14 20/13 22/1 26/24 27/25 30/25 34/17 35/1 37/16 38/16 44/9 44/18 47/12 48/5 48/19 49/5 49/9 52/2 52/19 54/25 56/18 56/19 59/4 59/25 60/9 60/10 60/19 60/21 66/16 68/21 69/12 70/22 71/2 73/21 75/11 79/25 80/5 80/9 81/7 86/19 89/17 89/22 91/4 92/17 93/15 93/16 93/18 93/25 95/3 95/6 95/6 95/7 95/17 95/18 95/18 96/4 96/12 96/25 97/4 97/6 97/18 97/19 97/25 98/2 98/6 98/7 100/2 101/9 102/21 107/10 107/11 107/24
**theory [1]** 42/7
**there [94]** 5/22 5/23 6/5 6/20 6/23 7/4 8/10 8/13 8/14 8/16 8/17 9/1 9/4 9/5 10/20 15/1 15/4 20/7 20/16 20/17 22/20 23/1 23/15 23/23 25/14 27/6 29/3 29/11 30/6 30/16 30/23 33/9 34/15 35/16 35/21 37/8 38/9 38/23 39/15 39/24 40/4 40/20 44/18 46/6 48/11 48/20 50/9 50/20 51/8 52/14 54/23 55/20 56/8 57/16 61/2 62/8 63/8 65/23 67/20 68/15 69/18 72/11 72/25 75/14 76/13 76/24 79/12 80/7 82/7 83/18 83/23 85/2 85/3 86/7 86/9 87/5 89/15 90/1 90/9 93/5 94/4 94/13 94/16 94/20 94/25 96/3 96/9 96/18 100/20 101/7 104/11 104/15 104/15 105/14 107/12
**there's [41]** 5/25 6/23 7/22 10/13 10/21 17/20 19/24 20/3 20/25 22/25 25/6 27/4 37/12 45/8 45/20 47/12 49/9 49/14 52/13 54/19 55/1 60/17 66/19 68/20 69/1 69/6 76/1 76/20 82/11 83/4 85/7 85/24 85/25 86/4 87/3 87/4 91/14 103/4 103/5 103/18 107/11
**thereafter [1]** 76/23
**these [69]** 7/9 13/19 14/6 14/18 18/2 18/25 19/11 19/16 22/2 23/20 23/23 30/6 30/8 31/8 31/23 34/20 37/4 38/4 39/20 41/7 41/11 47/6 49/20 52/20 53/10 54/11 56/3 56/9 56/9 56/19 56/19 58/1 58/4

17 59/10 59/15 60/3 60/7 60/8 61/20 62/20 64/3 64/25 65/1 65/7 65/12 65/13 71/25 72/1 72/8 74/13 77/5 78/17 78/23 81/2 83/18 85/6 86/2 86/12 88/17 89/7 89/23 90/3 90/19 91/23 99/12 100/3 100/7 101/24
**they [128]**
**They did [1]** 43/9
**they'd [1]** 81/1
**they'll [1]** 18/18
**they're [43]** 6/10 7/10 9/2 14/21 15/10 15/14 15/15 15/22 18/23 19/1 19/3 19/4 19/11 19/13 20/21 21/18 21/25 32/4 32/9 32/16 41/21 43/11 43/13 43/14 43/17 46/14 48/17 50/16 56/13 59/23 61/9 62/6 62/20 63/25 68/1 70/4 71/7 77/25 87/14 89/3 101/4 103/2 103/23
**they've [21]** 11/13 11/22 13/2 15/23 15/24 16/3 18/16 18/21 19/5 21/17 25/13 32/24 33/8 41/21 41/23 61/22 86/3 89/7 94/11 101/18 106/12
**thing [16]** 16/18 25/7 33/20 37/10 66/14 66/17 79/3 86/23 88/13 93/4 100/18 102/23 104/1 104/12 105/14 107/18
**things [23]** 5/21 16/9 16/10 16/13 17/4 18/4 22/19 29/24 30/8 30/13 30/15 32/2 75/19 78/23 81/7 82/1 90/19 96/12 97/7 97/14 103/5 103/22 104/21
**think [128]**
**thinking [1]** 62/21
**third [12]** 22/24 25/22 26/24 27/3 55/25 61/5 61/7 78/25 87/12 87/14 87/19 89/15
**this [165]**
**those [70]** 8/14 10/18 11/3 14/5 15/2 15/11 17/4 23/2 26/6 32/6 34/21 38/11 41/12 44/22 46/12 47/8 52/5 52/14 52/22 53/10 53/11 54/10 54/18 56/8 56/14 56/14 56/20 58/15 60/11 61/17 62/8 62/9 63/1 68/23 69/24 70/20 70/21 71/8 73/2 73/17 73/20 74/11 75/2 76/17 76/21 83/23 85/2 85/21 86/11 88/15 88/15 88/18 89/20 90/7

**T**

those... **[16]** 90/9 90/14 90/24 90/25 91/11 91/12 91/13 98/17 99/9 99/15 103/18 103/19 104/9 105/13 105/18 106/22

though **[5]** 14/18 63/11 64/13 65/12 67/12

thought **[9]** 7/21 19/17 19/17 21/8 53/20 57/9 62/1 62/23 90/6

thoughts **[6]** 35/1 47/16 58/1 78/3 80/4 84/16

thousand **[2]** 83/24 85/19

thread **[1]** 34/5

three **[19]** 13/6 18/21 18/21 18/22 19/15 19/22 24/25 31/25 33/23 35/7 50/6 58/10 61/23 62/5 62/5 89/16 91/24 100/8 100/15

three-legged **[1]** 35/7

three-week **[2]** 31/25 33/23

threshold **[1]** 50/1

through **[19]** 12/13 14/2 17/13 17/15 32/3 57/15 58/15 61/12 68/16 70/25 71/5 76/3 76/14 77/11 77/18 83/20 86/13 100/15 106/11

Thursday **[1]** 76/2

till **[1]** 93/16

time **[66]** 10/17 11/3 11/5 11/8 12/14 14/11 18/4 18/15 18/17 18/19 19/3 19/7 20/2 20/20 21/2 21/5 21/14 21/17 21/18 21/20 21/23 24/12 24/22 25/24 26/1 27/16 32/1 32/12 32/13 36/18 37/5 39/4 40/5 49/2 49/2 49/20 51/2 51/3 51/12 51/21 52/12 52/15 57/23 63/2 63/20 64/21 65/10 65/13 73/24 74/1 75/15 75/21 76/2 76/17 86/1 87/13 88/11 88/19 92/5 92/23 92/25 93/12 97/7 103/11 103/20 105/6

times **[5]** 52/17 58/11 82/15 86/24 95/12

tiny **[3]** 36/12 41/10 41/10

titled **[1]** 109/4

today **[11]** 47/6 51/5 58/7 63/1 71/6 81/23 82/1 82/7 82/23 101/16 103/11

together **[2]** 23/4 33/25

told **[8]** 18/21 21/1 21/24 28/3 30/15 31/1 51/13 98/15

70/23 70/24

took **[5]** 41/6 41/7 53/19 65/13 82/2

top **[1]** 62/3

topic **[2]** 31/20 76/19

topics **[2]** 10/10 31/23

topline **[3]** 89/25 90/6 90/11

total **[1]** 90/15

totally **[1]** 47/25

touch **[2]** 75/25 78/17

touches **[1]** 47/12

towards **[1]** 95/14

town **[1]** 92/19

tracking **[1]** 96/21

trade **[1]** 66/24

traditional **[1]** 49/23

transcript **[3]** 1/9 4/6 109/3

transcription **[1]** 4/6

transcripts **[1]** 93/22

transpiring **[1]** 78/2

travel **[1]** 24/25

traveling **[1]** 33/5

treat **[2]** 8/15 8/16

treated **[3]** 13/20 44/11 45/13

treating **[1]** 101/2

trial **[58]** 5/14 6/1 8/11 22/23 23/14 26/8 34/21 42/5 43/14 44/2 45/13 49/1 50/1 50/4 51/1 51/2 51/9 52/6 53/18 53/24 54/6 54/8 58/9 58/10 58/25 60/11 64/6 66/16 67/24 69/11 69/22 71/12 71/22 72/21 75/21 76/7 76/25 78/14 78/18 78/22 80/13 83/12 86/19 87/6 87/7 87/7 87/7 91/14 93/5 100/2 100/6 100/7 103/16 104/24 105/13 106/14 106/17 106/22

tried **[4]** 42/9 43/8 83/25 85/13

trier **[2]** 24/3 26/9

trip **[3]** 31/25 32/1 33/23

trips **[1]** 34/5

trotting **[1]** 22/18

true **[2]** 29/22 88/3

truly **[1]** 23/6

truth **[1]** 30/16

try **[5]** 17/4 25/11 25/22 33/25 41/21

trying **[17]** 7/9 16/15 20/3 34/5 34/12 42/15 59/20 63/14 64/15 68/1 83/13 92/6 93/2 94/11 94/12 102/1 105/12

Tuesday **[2]** 75/21 76/13

turn **[4]** 34/22 38/17 52/2 80/19

turned **[2]** 19/23 81/1

turns **[2]** 48/14 48/17

tweaking **[1]** 7/16

two **[40]** 10/15 13/7 19/14 26/20 30/16 34/5 35/17 35/18 40/23 42/25 56/8 58/7 58/10 59/8 59/25 60/3 60/7 60/15 62/10 69/21 71/11 73/7 73/13 73/18 74/10 85/14 89/12 89/15 89/20 90/21 94/13 94/23 99/12 99/15 100/7 100/11 100/20 102/3 104/21 105/17

two-sided **[1]** 73/7

TYLER **[1]** 3/9

type **[5]** 16/18 21/16 35/25 36/3 41/14

types **[5]** 17/4 38/9 70/1 78/23 85/14

typical **[2]** 21/15 86/8 86/9

typically **[1]** 93/1

**U**

U.S **[4]** 2/2 2/6 2/11 2/15

ultimate **[1]** 68/13

ultimately **[2]** 26/11 52/16

uncertainty **[3]** 17/21 20/3 23/1

under **[10]** 27/12 29/2 50/22 50/23 55/7 57/21 65/8 77/12 78/10 81/24

understand **[26]** 8/10 8/25 10/4 11/21 20/14 21/13 23/23 24/9 30/19 33/18 35/12 39/2 42/19 44/12 49/24 57/13 63/20 64/2 71/12 72/19 77/12 90/21 91/11 97/10 99/22 102/3

understanding **[7]** 37/15 44/5 45/5 46/1 65/3 77/3 99/12

understands **[1]** 38/1

understood **[7]** 42/21 43/5 49/7 51/20 59/20 87/22 100/1

undertake **[1]** 60/13

undoubtedly **[1]** 107/6

unduly **[1]** 23/6

unique **[1]** 60/18

Unit **[1]** 3/4

UNITED **[8]** 1/1 1/3 1/10 2/19 5/3 49/17 53/2 89/12

United States **[1]** 89/12

United States of **[1]** 5/3

unless **[9]** 6/22 9/2 14/15 54/19 55/1 66/19 69/4 77/25 87/21

unlikely **[3]** 29/1 29/3 98/24

unnecessary **[1]** 56/25

unrealistic **[1]** 22/11

unredacted **[1]** 60/22

unrelated **[1]** 7/13

unseal **[1]** 68/1

unsealed **[2]** 63/12 65/16

unsealing **[1]** 59/13

until **[4]** 20/10 77/14 93/18 100/6

untold **[1]** 74/17

unusual **[2]** 24/12 39/24

up **[29]** 5/10 7/7 8/17 12/17 18/22 19/14 21/24 26/14 40/19 43/4 48/18 51/3 51/12 52/16 55/10 55/15 57/14 78/18 83/18 87/9 88/2 89/8 89/12 92/4 94/25 95/2 95/25 96/25 105/2

upon **[5]** 53/18 58/23 61/15 63/12 73/22

UPX5317 **[1]** 55/15

UPX5416 **[2]** 55/17 55/22

UPX559 **[1]** 63/4

urge **[2]** 87/2 103/15

us **[47]** 7/19 11/4 13/13 14/5 18/2 18/10 18/14 18/14 18/21 18/22 18/24 19/3 19/5 21/24 25/7 27/22 28/11 33/21 49/20 51/3 52/11 53/19 55/4 55/5 56/12 59/21 61/9 65/15 67/18 69/19 71/4 71/17 71/22 72/16 73/1 86/3 86/4 87/10 87/13 90/3 92/24 94/9 101/13 104/11 105/9 106/1 107/16

usdoj.gov **[5]** 2/5 2/9 2/14 2/18 2/23

use **[28]** 15/22 25/8 25/11 36/14 46/21 49/11 50/2 53/24 54/6 54/7 54/8 54/9 55/14 58/9 58/10 62/21 63/6 63/25 66/3 67/24 74/13 77/19 82/13 88/16 90/25 92/5 93/6 103/16

used **[4]** 33/5 65/19 86/20 101/5

useful **[1]** 44/14

using **[2]** 15/24 16/2

usually **[2]** 24/4 93/14

utterance **[1]** 30/2

**V**

vacation **[1]** 67/14

vagaries **[1]** 8/10

value **[3]** 24/17 25/1 63/17

Van **[1]** 81/21

variety **[1]** 46/8

various **[1]** 78/16

vastly **[1]** 21/21

vendors **[2]** 37/9 39/11

venture **[1]** 30/20

verbatim **[1]** 69/2

Verizon **[1]** 60/1

version **[4]** 53/6 79/22 79/25 79/25

versus **[5]** 5/4 24/16 85/15 90/11 96/5

vertical **[3]** 106/19 106/19 106/25

very **[34]** 5/15 16/13 16/16 24/19 26/20 41/9 41/10 43/3 44/16 61/25 63/13 65/11 68/13 70/3 70/3 71/2 71/17 71/17 78/21 78/21 80/11 81/3 81/19 82/11 83/13 84/2 84/2 89/12 90/20 94/16 95/20 105/15 105/23 108/1

Veterans **[1]** 92/9

viable **[1]** 37/12

video **[8]** 77/17 79/11 102/19 102/25 103/8 103/15 103/16 103/18

videotape **[1]** 32/3

videotaped **[1]** 24/16

view **[9]** 15/3 16/6 17/11 23/2 36/6 61/3 61/5 66/9 99/20

viewing **[1]** 36/2

views **[3]** 6/14 17/9 23/21

vis **[2]** 37/12 37/12

vis-à-vis **[1]** 37/12

vs **[1]** 1/5

**W**

wait **[4]** 44/4 48/14 100/6 108/4

waived **[1]** 86/8

walk **[1]** 40/13

walked **[1]** 42/11

wane **[1]** 91/15

want **[44]** 5/22 6/2 8/8 8/18 11/17 15/15 16/11 20/19 25/8 28/8 29/25 32/12 33/2 34/16 41/16 46/3 52/6 52/8 52/23 53/11 54/24 63/15 64/10 65/4 65/11 66/22 69/16 69/19 72/16 73/11 73/19 73/20 78/4 83/10 89/6 93/9 94/23 95/12 96/21 98/25 100/3 100/14 101/16 103/20

wanted **[6]** 9/21 17/8 51/2 64/5 104/10 104/12

wanting **[1]** 84/15

wants **[5]** 39/22 39/23 73/1 96/2 103/15

was **[71]** 9/18 9/18 10/6 10/6 12/13 12/16 12/17 13/21 16/16 19/2 19/18 21/8 25/4 25/5 25/8 25/8 30/2 30/8

**was... [53]** 30/9 30/10 30/11 30/11 30/15 30/20 31/1 31/18 31/21 35/6 35/16 35/19 35/21 35/22 36/1 37/16 37/25 38/22 39/16 39/17 39/20 40/10 40/18 40/20 41/1 41/3 41/9 43/1 43/3 43/16 43/22 44/11 50/10 60/12 60/12 63/4 67/13 70/23 76/24 77/1 79/11 80/16 82/7 82/21 83/24 83/25 83/25 84/11 84/14 84/14 84/15 104/7 106/18

**Washington [6]** 1/5 2/3 2/13 2/17 3/15 4/5

**wasn't [5]** 30/24 30/24 42/10 43/18 106/16

**waste [1]** 103/20

**watch [1]** 103/19

**way [18]** 8/3 8/15 9/12 23/6 27/13 38/24 41/4 57/20 64/1 64/15 65/19 79/20 83/6 93/2 96/7 99/19 100/1 104/7

**wc.com [1]** 3/16

**we [383]**

**We appreciate [1]** 75/24

**we believe [9]** 14/12 50/16 50/17 50/18 55/4 70/21 70/24 80/18 80/18

**we will [19]** 7/4 22/19 22/22 25/23 27/17 30/4 31/5 34/10 34/12 46/9 60/24 67/21 72/1 79/19 88/18 90/14 100/21 103/23 106/3

**we would [1]** 77/13

**we'd [3]** 86/22 94/16 100/5

**we'll [47]** 7/21 8/4 8/15 9/24 11/19 13/12 16/1 23/4 23/7 25/24 28/18 28/23 33/15 43/21 48/13 48/19 51/18 61/13 66/18 68/3 69/9 69/12 69/13 75/13 76/1 79/21 79/25 80/1 81/17 84/7 88/9 88/25 89/2 91/10 93/14 93/15 93/17 93/25 95/21 96/12 96/19 98/7 104/14 107/7 107/7 107/8 108/1

**we're [63]** 5/14 7/9 7/12 9/7 11/19 13/11 14/10 19/9 19/19 19/25 20/2 20/13 22/3 23/5 23/5 34/4 34/5 34/8 34/8 34/11 37/6 39/5 39/6 39/7 42/12 43/24 44/1 46/10 48/24 51/18 52/7 53/24 57/25 59/2

68/1 70/19 72/13 73/1 74/19 76/19 78/11 78/15 79/1 83/11 83/11 83/12 83/14 88/24 88/25 89/6 92/2 92/6 94/12 95/13 95/17 104/9 105/22 106/7 106/21

**we've [42]** 7/8 7/9 9/6 10/15 18/13 18/20 19/25 21/1 21/1 21/9 21/24 22/1 22/2 27/17 28/3 28/19 34/10 42/1 52/1 56/6 57/8 57/9 57/15 57/17 59/13 61/14 63/11 70/20 77/8 77/9 84/5 85/9 87/10 89/16 91/17 91/19 94/23 100/8 100/20 103/8 103/9 105/20

**web [1]** 41/10

**WEBB [1]** 3/9

**Wednesday [6]** 72/9 75/11 75/13 76/14 89/19 106/4

**week [19]** 22/7 31/25 33/23 59/8 70/23 71/3 72/2 73/18 75/12 75/13 76/14 76/15 76/16 89/16 92/24 98/20 98/25 104/24 104/24

**weekend [3]** 7/16 49/20 76/23

**weeks [8]** 58/7 60/2 71/11 73/13 73/18 74/10 90/4 107/7

**weeks' [1]** 18/24

**weigh [3]** 44/21 47/1 72/3

**weighed [2]** 26/10 61/6

**welcome [2]** 37/1 78/2

**well [29]** 9/12 10/25 11/15 15/13 16/14 20/11 28/2 34/13 34/15 41/6 41/16 42/7 42/10 44/4 47/19 48/8 48/9 49/4 54/17 77/3 78/25 81/6 82/6 86/10 90/7 91/4 99/17 102/6 107/5

**well-aware [1]** 82/6

**went [3]** 58/10 58/15 70/25

**were [32]** 10/16 10/17 11/8 13/7 21/9 27/1 30/23 31/1 31/1 32/8 34/20 37/24 38/4 40/13 41/2 41/17 54/3 56/15 58/21 59/20 61/7 61/12 67/16 72/12 83/23 89/15 89/16 89/23 90/6 101/19 101/25 102/1

**wfcavanaugh [1]** 3/12

**what [114]**

**what's [13]** 24/14 35/14 41/22 52/4 52/4 54/20 58/20 58/20 59/15 62/9 78/2 82/10

**whatever [10]** 7/11 8/22 20/18 22/15 28/21 31/1 41/21 41/21 92/3 93/22

**whatsoever [1]** 58/25

**when [35]** 11/6 12/10 12/16 19/1 22/6 22/20 25/25 26/9 33/21 37/9 51/9 51/17 52/14 52/15 53/19 54/7 62/19 64/10 72/11 81/3 81/7 87/1 87/1 87/14 88/3 88/15 90/6 93/12 93/12 97/7 97/16 98/11 101/25 103/21 104/15

**whenever [1]** 76/2

**where [29]** 14/13 17/19 17/22 20/2 20/17 34/11 42/20 50/2 50/9 50/12 51/11 51/19 55/19 57/8 58/23 58/24 59/21 64/7 68/8 68/12 68/13 68/25 69/9 83/11 85/1 85/3 91/25 95/3 100/21

**Whereas [1]** 56/22

**wherever [1]** 33/5

**whether [20]** 11/7 20/6 20/16 30/1 41/13 45/12 48/14 48/20 64/22 66/2 69/5 80/5 86/11 86/11 87/11 89/24 90/14 98/13 98/13 106/21

**which [45]** 5/14 9/5 9/5 12/16 15/5 15/6 17/11 18/2 18/23 22/9 23/22 24/4 24/5 24/5 25/7 38/24 39/21 42/1 50/1 50/2 50/23 51/4 52/12 59/24 61/14 65/13 66/8 67/9 71/25 75/5 75/7 79/21 82/25 83/2 85/14 85/16 85/20 93/5 101/5 105/13 106/12

**while [9]** 6/10 15/1 18/12 28/12 52/24 61/19 76/19 87/9 105/21

**who [45]** 10/15 10/22 11/3 11/9 11/10 11/13 12/1 12/10 13/2 13/7 16/3 19/24 20/17 22/6 22/24 24/19 25/10 25/22 26/25 27/3 27/25 28/19 31/5 37/8 39/22 39/23 40/13 42/9 54/20 56/18 58/18 61/7 61/8 62/14 62/14 62/19 67/13 72/3 72/4 76/12 83/15 93/24 99/12 100/5 101/17

**who's [5]** 6/24 29/17 33/8 101/8 104/22

**who've [1]** 61/6

**whoa [1]** 28/2

**whoever [2]** 47/16 93/23

**why [32]** 6/4 7/21 8/13 13/19 20/14 30/10 30/10 35/10 36/21 36/21 38/4 39/11 39/21 41/15 41/25 42/1 42/12 44/12 50/24 59/10 60/10 64/15 65/3 65/5 72/19 75/16 75/16 102/3 102/6 102/24 106/15 106/25

**wide [1]** 35/15

**will [78]** 7/4 8/2 8/19 12/14 14/14 16/11 22/19 22/19 22/22 23/21 24/2 24/18 24/24 25/23 27/17 30/4 30/10 30/13 30/14 30/22 31/5 31/5 31/6 31/22 34/3 34/10 34/12 36/24 40/21 44/22 46/9 46/11 46/21 46/21 47/8 50/3 50/4 50/5 51/4 58/3 58/25 60/24 67/21 68/4 69/22 72/1 72/2 74/13 79/13 79/15 79/19 80/22 83/15 85/14 87/20 88/8 88/18 90/14 91/13 93/24 95/2 97/17 97/17 98/4 98/7 98/13 98/14 98/19 98/19 98/21 100/21 103/19 103/23 104/5 104/11 106/3 106/8 107/6

**William [5]** 3/8 4/2 5/6 109/2 109/8

**William Cavanaugh [1]** 5/6

**WILLIAMS [1]** 3/14

**wind [2]** 19/13 78/18

**wishes [1]** 81/16

**withdraw [1]** 13/11

**withdrawing [1]** 71/7

**withdrawn [1]** 13/14

**within [10]** 15/17 19/12 20/12 29/24 31/25 33/22 44/13 71/17 88/1 103/3

**without [5]** 8/21 14/6 28/1 68/18 94/15

**witness [55]** 6/20 6/24 7/8 7/11 10/22 11/13 11/14 15/15 18/5 18/20 18/20 19/19 19/22 19/24 19/25 20/22 20/25 21/1 21/2 21/19 22/3 25/19 26/25 28/8 29/23 33/9 34/13 52/9 56/18 65/25 66/4 68/17 69/1 73/12 73/21 86/12 86/22 94/25 95/16 97/17 98/12 98/14 99/24 101/3 101/3 101/7 101/11 101/15 101/17 101/24 103/1 103/3 103/10 103/21 104/23

**witness'** [1] 6/21

**witnesses [67]** 6/10 6/11 6/16 6/19 7/10 8/12 8/16 10/3 10/14 10/20 13/19 14/16 15/2 15/4 15/8 15/11 15/12 15/23 15/25 16/21 16/24 17/2 17/18 17/20 18/2 18/8 18/14 18/24 19/16 20/7 20/16 21/3 22/2 22/5 22/20 24/7 24/18 27/1 27/21 32/4 32/6 32/23 42/9 44/23 59/23 62/14 69/20 69/21 69/24 70/11 71/14 73/12 75/20 76/11 85/15 88/10 98/17 99/6 99/16 100/15 100/20 101/18 101/20 102/4 103/1 104/8 104/9

**won't [5]** 9/1 20/10 44/19 80/22 92/10

**wonder [1]** 45/11

**word [3]** 48/11 50/17 51/4

**words [2]** 51/10 88/22

**work [15]** 11/7 13/24 14/1 23/4 25/24 30/12 33/25 60/14 62/19 70/9 80/1 95/14 95/21 97/10 103/17

**worked [2]** 13/2 93/21

**working [7]** 11/14 12/13 33/4 33/21 34/4 34/6 75/12

**works [2]** 26/19 40/14

**world [1]** 40/14

**worried [1]** 56/13

**worry [3]** 85/25 86/15 88/25

**worrying [1]** 79/4

**worth [5]** 18/24 32/15 53/21 57/10 74/16

**would [82]** 9/19 9/20 13/13 14/19 14/19 15/22 15/24 16/4 16/17 16/17 17/7 19/10 21/22 22/9 26/22 26/23 28/8 28/8 28/12 32/6 33/20 33/21 34/2 36/13 37/16 38/24 45/22 45/22 45/23 47/16 50/8 51/8 53/10 54/15 57/3 57/20 61/3 62/9 62/11 65/20 65/21 67/6 68/3 68/6 69/22 70/15 71/16 74/7 75/25 77/13 77/17 77/17 77/18 77/24 81/1 81/12 82/19 83/7 85/21 85/23 86/10 86/17 86/24 87/10 87/15 88/10 89/18 90/3 90/21 91/3 91/5 96/14 98/22 98/2 98/11 98/25 99/11 99/15 100/5 100/10 102/20 103/15

**wouldn't [8]** 15/11

**wouldn't...** [7]  65/4
77/24 77/25 78/1 82/25
86/20 90/1
**wrong** [1]  36/10

## Y

**yeah** [16]  9/8 11/16
20/23 37/25 38/12 39/2
42/18 43/16 67/3 75/15
79/17 83/1 88/12 93/13
95/24 102/6
**year** [2]  63/18 90/2
**years** [10]  12/18 12/20
25/10 62/6 62/7 62/24
63/5 63/22 63/22 85/7
**yellow** [3]  56/5 57/16
60/10
**Yep** [2]  90/16 96/17
**yes** [28]  9/9 10/12 11/9
12/11 15/20 22/25
29/18 31/4 31/11 36/11
38/7 46/5 52/13 55/2
55/11 59/6 62/12 70/7
72/13 74/9 80/8 88/20
88/24 91/8 92/13 94/21
97/9 100/19
**yesterday** [5]  61/2 61/8
67/13 71/6 106/10
**yet** [2]  76/22 104/5
**Yom** [1]  92/12
**York** [2]  3/11 3/19
**you** [326]
**you know** [1]  41/17
**you'd** [3]  23/19 74/6
104/19
**you'll** [8]  7/23 9/4
25/12 34/18 60/6 64/21
88/3 100/16
**you're** [40]  14/22 15/1
15/1 16/23 19/21 20/19
26/17 27/12 27/15 28/5
36/11 38/8 38/15 38/16
39/3 45/14 47/2 49/2
49/13 50/17 52/8 54/8
54/18 54/24 60/9 60/20
61/19 62/17 63/17
64/12 67/8 70/11 74/6
75/7 75/12 82/6 85/16
85/19 86/12 107/9
**you've** [21]  6/15 8/13
8/17 19/20 20/17 37/14
37/17 38/20 51/10
51/13 60/14 65/8 67/3
73/22 73/25 75/17
76/12 91/18 92/12 97/2
105/3
**your** [195]
**Your Honor** [133]
**Your Honor's** [6]  42/16
58/22 59/16 64/17
67/22 72/22
**yours** [2]  32/24 76/9
**Yu** [2]  11/22 13/14

## Z

**Zahid** [1]  60/1
**Zaremba** [4]  4/2 93/22

**zenith** [1]  79/15
**Zoom** [1]  77/18