**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　　　　Defendant. | CASE No.: 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　　　　Defendant. | CASE No.: 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**NON-PARTY PETITIONER APPLE INC.'S STATEMENT REGARDING THE PARTIES' EXAMINATION OF EDDY CUE**

Non-party Apple Inc. ("Apple") respectfully submits this position statement requesting to seal certain portions of the September 26 examination of Eddy Cue to prevent the Department of Justice ("DOJ") from disclosing in open court certain highly sensitive confidential information related to its agreement with Google. DOJ's insistence on questioning Mr. Cue about this information in open court represents a substantial risk of revealing non-public, market-moving information pertaining to Apple, not a party to DOJ's suit, and affecting Apple's ongoing business relations and contract negotiations. It is in contravention of prior agreements between the parties and is unsupported by the legal standard for public disclosure of confidential information.

Apple requests that the Court seal the parties' examination of Mr. Cue regarding: (1) Apple's negotiation and interpretation of the Information Services Agreement (the "ISA") with Google; and (2) the monetary terms and financial results of the agreement. Public examination about these topics is likely to reveal commercially and competitively sensitive confidential information which would substantially harm Apple. DOJ has offered no compelling reason why it cannot question Mr. Cue about these topics in closed session to preserve Apple's valid competitive interests.

## BACKGROUND

On September 13, Apple sent a letter to the parties seeking clarity regarding the scope of topics about which they expected to question its witnesses in open court. Apple outlined several areas of examination that must be conducted in a closed session to protect the company from commercial and competitive harm, including areas related to the negotiation of the ISA, the monetary terms of the ISA, Apple's negotiations with other search providers, and Apple's development of its own search capabilities. On September 21, DOJ sent a letter to Apple stating that it would not elicit testimony on those topics in open court from the first Apple witness who testified in this case, John Giannandrea. It then unilaterally chose to close the courtroom for all of Mr. Giannandrea's testimony the next day—not just on those topics.

In contradiction to the approach it took with Mr. Giannandrea, DOJ took the broad and categorical position that it would "oppose any attempts to conduct questioning" of Mr. Cue "regarding Apple and Google's distribution agreements in confidential session."[1] DOJ's only justification for doing so was the conclusory statement that "Google's search distribution

---

[1] DOJ did state, however, that it would "not oppose Apple's request to maintain confidentiality related to: (1) Apple's internal assessment of alternatives to its agreement with Google; (2) Apple's development of its internal search capabilities; (3) Apple's technical evaluation of Google's search competitors; and (4) specific revenue percentages and dollar figures." And it further explained that it would "not oppose conducting any examination of Mr. Cue" on the first three of those topics "in closed session."

agreements with Apple are central to this case." DOJ also sent Apple proposed redactions to documents that it anticipated raising with Mr. Cue in open court, including a version of the ISA that left numerous sensitive terms unredacted—notwithstanding DOJ's prior stated position during a meet-and-confer on September 6, 2023 that it would not oppose sealing references to the ISA aside from the document's preamble, signature pages, and a limited number of headings.

On September 25, Apple met and conferred with DOJ and Google about the topics they anticipated raising in their public examination of Mr. Cue. DOJ stated that it would not oppose Apple's request for the parties to question Mr. Cue about Apple's agreements with Microsoft and other search partners in a closed session. But it reiterated that it would continue to seek to question Mr. Cue about Apple's agreement with Google in open court—clarifying that it plans to ask Mr. Cue questions in open court about any portions of the ISA that it proposed leaving unredacted, which includes numerous sensitive terms and numerous additional substantive headings that have not been disclosed to the public.

Furthermore, Apple has serious and justified concerns about DOJ's ability to conduct an examination on these topics in open court without disclosing confidential information. Even when attempting to present or examine "around" confidential information, DOJ has proven unable to do so, to very public and damaging effect. In DOJ's opening statement, Mr. Dintzer proclaimed and ultimately misrepresented revenue and other figures in open court that purported to reflect the payments from Google to Apple pursuant to their search agreement. Mr. Dintzer did not cite sources for those figures, which were in fact erroneous. But in confidently stating figures without reference, Mr. Dintzer created a misimpression that those figures were accurate *and* that they came from Apple confidential information. While Mr. Dintzer admitted his "slip" the next day, the damage was done. The media, with no ability to ascertain the veracity of the information, ran with the figures. Just days later, during an examination of Google's Jerry Dischler, DOJ counsel

again blurted out confidential figures[2] and also displayed unredacted confidential documents on the public monitors.[3]  And prior to the examination of Mr. Giannandrea, Mr. Dintzer again exposed confidential information—this time about Apple's evaluation of its search partners—when conjuring a dispute for the Court, despite the fact that Apple and the parties had *already agreed* that Mr. Giannandrea's examination concerning that topic would occur in a closed session.[4]  Even if DOJ has the best intentions, Apple cannot trust that DOJ will not disclose confidential information.

## ARGUMENT

The information Apple seeks to seal from public examination is clearly confidential and should be protected.  As the Court is aware, courts in this Circuit weigh six "generalized" factors, enumerated in *United States v. Hubbard*, and any relevant "particularized" factors, in assessing whether to maintain a party's or non-party's information under seal.  650 F.2d 293, 317, 322–24 (D.C. Cir. 1980).[5]  A court also must consider "particularized" interests that specific contexts make relevant where the generalized factors do not adequately account for such interests.  *See Hubbard*, 650 F.2d at 322–24.

"Protecting an entity's 'competitive standing' through retained confidentiality in business information" is "an appropriate justification for the restriction of public or press access" to

---

[2] Trial Tr. 1217: 16-18 (Sept. 18, 2023).

[3] Trial Tr. 1215: 17-23 (Sept. 18, 2023).

[4] Ex. A at 4, Email from S. Bartels to R. Travers (2023.09.15) (explaining that "for most of Mr. Giannandrea's testimony, we do not anticipate opposing Apple's request to conduct the examination in a confidential session"); *see also* Ex. A at 1, Email from K. Lent to M. Rosengart (2023.09.21) (noting that DOJ did not respond to counsel for Apple's statement that "[w]e understand that the parties have agreed to seal the courtroom during Mr. Giannandrea's examination for the topics outlined in Apple's September 13 correspondence").

[5] The six generalized *Hubbard* factors are "(1) the need for public access to the [information] at issue; (2) the extent of previous public access to the [information]; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the [information was] introduced during the judicial proceedings." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citation omitted).

4

confidential commercial information. *State of New York v. Microsoft Corp.*, No. CIV.A. 98-1233 (CKK), 2002 WL 818073, at *1 (D.D.C. Apr. 29, 2002) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Courts recognize that the need for such protection is "especially great" under *Hubbard* "where a third party's property and privacy rights are at issue." 650 F.2d at 319; *see also U.S. v. ISS Marine Svcs*, 905 F. Supp. 2d 121, 141 (D.D.C. 2012). And they further recognize that the need for protection is important where parties produce information "in reliance on continuing confidentiality." *See Mokhiber v. Davis*, 537 A.2d 1100, 1116 (D.C. 1988) (per curiam).

The *Hubbard* factors weigh in favor of sealing Mr. Cue's testimony. As to the first *Hubbard* factor, DOJ has offered only the conclusory statement that "Google's search distribution agreements with Apple are central to this case." But DOJ does not, and cannot, explain why Apple's internal assessment of the agreement or Apple's negotiations with Google regarding the agreement that it now seeks to disclose are central to the case. The fact that DOJ submits, without explanation, that Apple's assessment of the agreement and negotiating strategy regarding the agreement may be important to their case against Google does not mean that Apple, a third party, forfeits its confidentiality interest in that information. As for the agreement itself, DOJ already agreed not to oppose sealing many of the portions of the ISA about which it now hopes to question Mr. Cue. DOJ's reversal on its earlier position is unexplained and, as noted below, ignores more narrowly tailored ways in which to conduct the examination.

The remaining *Hubbard* factors also weigh heavily in favor of sealing. Apple has a strong interest in maintaining the confidentiality of this information, which has been vigorously protected from public disclosure in this case and more generally, and Apple would be seriously harmed were the information to be publicly disclosed. In their examination of Mr. Cue, DOJ seeks to disclose almost all aspects of Apple's search agreement with Google, including specific terms and details

of its negotiations with Google. Courts regularly recognize the harm in disclosing the terms of confidential contracts to the public, concluding that such disclosure via testimony or display would result in "clearly defined and very serious injury" to business interests. *Microsoft*, 2002 WL 818073, at *2 (quoting *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C. 1981) (sealing non-party agreement with defendant)). In particular, disclosure of the commercially sensitive terms of Apple's agreement with Google would give Apple's search partners a one-sided advantage in future negotiations, as they would be placed in the unusual situation of knowing which bargains Apple has struck. There is no sound basis for allowing Apple's other search partners to negotiate with full or partial knowledge of the compromises that Apple has reached in its negotiations with Google. To date, it is Apple's understanding that the courtroom has been sealed for examinations on current contracts, including the examinations of Google's Android lead James Kolotouros, as well as Verizon's Brian Higgins.[6] There is no reason to treat Apple's contract with Google any differently than Google's contracts with Android manufacturers and cellular carriers, and DOJ has provided none.

DOJ also seeks to conduct public examination regarding Apple's negotiations with Google, including about wholly internal Apple communications related to such negotiations—which will necessarily disclose Apple's negotiating strategy to Google, other commercial partners, and the public. Disclosing Apple's internal decision-making processes and negotiating strategy would provide both Google and Apple's other search partners with "unfair insight into [Apple's] business strategy," which they could use to leverage Apple's confidential information in carrying out future negotiations or in developing competing products or services. *United States v. Anthem, Inc.*, No.

---

[6] Trial Tr. 860: 11-13 (Sept. 14, 2023) (discussing need for a "closed session [to] discuss some contractual provisions that we can't discuss in open court" for James Kolotouros's examination); Trial Tr. 1019: 20-23 (Sept. 18, 2023) (discussing need for a "closed session pursuant to the Court's practices due to confidentiality designations" for Brian Higgins's testimony related to Verizon contracts).

6

1:16-CV-01493 (ABJ), 2016 WL 11164059, at *2–3 (D.D.C. Nov. 20, 2016) (sealing party's internal strategies for negotiations and its analyses of commercial partners).  Apple's negotiations with Google and its other search partners would be profoundly affected if they were to obtain access to Apple's internal assessments of its negotiations and agreement with Google.  Whatever importance DOJ places on these negotiations for its case, it does not justify requiring Apple to forfeit confidentiality and provide Google and other search partners—all highly sophisticated counterparties—with insight into Apple's internal deliberations and negotiating strategy.

In view of these substantial harms, questioning in open court about these limited topics—Apple's negotiations with Google, Apple's interpretation of the meaning of the ISA, and the monetary terms of the ISA—is not justified.  Objections to protect disclosure, even if made in time, are likely to disrupt any examination.

While DOJ seems less concerned with an efficient and substantive examination and more concerned with their public relations effort, there are alternatives to the broad public examination that Plaintiffs seek.  Of course, portions of Mr. Cue's examination may be incorporated into the Court's ruling, which may mean they become public, depending on their level of sensitivity.  At the time of that judgment, the public's need for the information will be greater than it is now—only two weeks into a 10-week trial.  Alternatively, the examination could proceed in a closed session and then could be reviewed and redacted within 21 days for public dissemination of information that did not require sealing.  That would still permit prompt public disclosure, without requiring Apple to be faced with the unfair burden of seeking to protect against the disclosure of confidential information that would harm its commercial and competitive standing on the fly.

## CONCLUSION

For the foregoing reasons, the Court should seal the parties' examination of Mr. Cue regarding: (1) Apple's negotiations regarding, and interpretation of, the ISA; and (2) the monetary

7

terms and financial results of the ISA.  Apple is prepared to address these issues and any questions the Court has before Mr. Cue's testimony on September 26.

Dated: September 25, 2023                                Respectfully submitted,

/s/ Steven C. Sunshine
Steven C. Sunshine
D.C. Bar # 450078
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
(202) 371-7860
steve.sunshine@skadden.com

Karen Hoffman Lent (*pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
(212) 735-3276
karen.lent@skadden.com

*Counsel for Non-Party Petitioner Apple Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2023, I electronically filed the foregoing documents using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the CM/ECF system.

Dated: September 25, 2023　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ Steven C. Sunshine
　　　　　　　　　　　　　　　　　　　　　Steven C. Sunshine
　　　　　　　　　　　　　　　　　　　　　D.C. Bar # 450078
　　　　　　　　　　　　　　　　　　　　　Skadden, Arps, Slate, Meagher & Flom LLP
　　　　　　　　　　　　　　　　　　　　　1440 New York Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　Washington, DC 20005
　　　　　　　　　　　　　　　　　　　　　(202) 371-7860
　　　　　　　　　　　　　　　　　　　　　steve.sunshine@skadden.com