IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>**GOOGLE, LLC**,<br><br>  Defendant. | Case No. 1:20-cv-3010<br><br>HON. AMIT P. MEHTA |
| **STATE OF COLORADO**, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>**GOOGLE, LLC**,<br><br>  Defendant. | Case No. 20-cv-03715<br><br>HON. AMIT P. MEHTA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION TO INTERVENE BY NON-PARTIES JON SCHWEPPE OF THE AMERICAN PRINCIPLES PROJECT AND ADAM CANDEUB OF THE CENTER FOR RENEWING AMERICA FOR THE LIMITED PURPOSE OF SEEKING TO ENSURE PUBLIC ACCESS TO TRIAL EXHIBITS AND TESTIMONY CONCERNING DEFENDANT'S RELATIONSHIP WITH APPLE, INC.**

Proposed intervenors Jon Schweppe is policy director of the American Principles Project and Adam Candeub is senior fellow of the Center for Renewing America ("Movants"). By and through counsel, Movants respectfully request leave to intervene pursuant to Fed. R. Civ. P. 24(b) in the above-captioned matter for the limited purpose of objecting to the sealing of any trial exhibits and testimony concerning the relationship between Google, LLC and Apple, Inc. Movants submit that there should not be any secret evidence at the public trial in the above-captioned case, and in

1

particular, the evidence concerning the relationship between Google and Apple should not be sealed. Alternatively, Movants respectfully request for the Court to allow them to intervene to participate in any proceedings where parties contest the public disclosure of evidence. Specifically, it is Movants' understanding that the Court is allowing Google and Apple (and others) to object to public disclosure at trial of certain trail exhibits and testimony that concern Google's relationship with Apple.

The issues the Court will decide in this matter will determine how the Internet will operate for at least the next two decades and Google and Apple are the two most important actors in this space, which makes it critical for the public to have full access to the evidence upon which the Court will rely concerning these entities. Because of this clear and substantial public interest, the Court should not seal any evidence concerning the relationship between Google and Apple.

## I.     BACKGROUND

Movants are members of two independent nonprofit research and advocacy organizations based in the Washington, D.C. area. Both organizations are dedicated to formulating and promoting public policies based on the principles of free enterprise, individual freedom, and traditional American values. Both organizations have researched and advocated in myriad *fora* on the role of tech companies in digital markets and the resulting effect on our individual liberty and democracy. Such advocacy includes filing of *amicus curiae* briefs, the submission of comments in response to public rulemaking proceedings, engagement in public policy debates and legislative efforts, and grassroots organizing. These proceedings will decide the legality of Google's undisputed monopoly over a number of internet search-related markets that the public accesses every day—a matter that affects nearly every American. Thus, our democracy and jurisprudence demand transparency here.

Plaintiffs have aptly noted in this proceeding that Google's opaque relationships with other tech companies, specifically Apple, demonstrate how Google has taken centralized control over nearly every aspect of our Internet experience. It is why the public deserves the opportunity to be well-informed on the arrangement between Google and Apple to understand the nature and importance of the case at issue and the impact that arrangement has on how we access information.

I.  ARGUMENT

    A.  **Intervention is necessary and appropriate in this case.**

It is well-settled that nonparties have standing to intervene to seek public access to sealed court records and proceedings, and "must be given an opportunity to be heard." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (citation omitted). Rule 24(b) governs intervention and provides that, "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "[T]he putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Because Movants seek intervention for the limited purpose of securing access to judicial proceedings, it does not require "[a]n independent jurisdictional basis…." *Id.* at 1047. Thus, Movants have met its first burden articulated by the D.C. Circuit under *E.E.O.C.*

Movants' motion is timely. "[T]he appropriate inquiry is when the intervenor became aware that its interest in the case would no longer be adequately protected by the parties." *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 785 (1st Cir. 1988). Movants just became aware this week, on September 23, 2023, of Google's and Apple's ability to seek widespread sealing of trial evidence. Third party Apple submitted its memorandum on September 25, 2023 petitioning the

3

Court to keep portions of the examination of Eddy Cue sealed. Doc. No. 717.  Moreover, providing access to exhibits and the transcript of Eddy Cue's testimony increase transparency of our government action and will shed light on the extent of Google's Herculean grip on information. Neither of the primary parties represent Movants' specific interest to seek public disclosure of these documents at this time.

The Court's recent ruling giving Google and other third parties, such as Apple, the opportunity to identify and object to public disclosure of any evidence that Plaintiffs seeks to admit at trial does little to address the concern raised by Movants. Plaintiffs' focus, understandably, is to prevail on its case at trial.  It will not be focused on defending the public's right to access trial evidence in the case.

Courts have routinely allowed intervention with much longer timeframes. *See Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 19 (D.D.C. 2010) (finding timely intervention "more than one year after the routine briefing was completed on the motion for summary judgment, and some six months after the last hearing" in the case). Additionally, the Ninth Circuit found that "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records." *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1101 (9th Cir. 1999).

As the D.C. Circuit held in *E.E.O.C.*, Rule 24(b)'s timeliness requirement only seeks "to prevent prejudice in the adjudication of the rights of the existing parties…." *E.E.O.C.*, 146 F.3d at 1047 (quoting *United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)). Here, Movants are not disputing or relitigating a settled issue. Rather, Movants seek to intervene for the collateral purpose of ensuring transparency throughout the proceeding, which does not implicate concerns typically barred by this element of Rule 24(b). *Id*. Given that this is a

bench trial as opposed to a jury trial, disclosure of the evidence to the public does not implicate fair trial concerns nor will it prejudice the parties in any other manner in the litigation. It only sheds light on the increasing opacity of Defendant's management of information. Hence, the parties at bar are not prejudiced in any discernable way.

As for the third element, the Court has considerable discretion as to what constitutes a claim or defense that has a question of law or fact in common with the main action. The D.C. Circuit noted that "courts have afforded this requirement considerable breadth when the movant seeks to intervene for the collateral purpose of challenging a confidentiality order." *E.E.O.C.*, 146 F.3d at 1048. It went on to say that "[o]ther courts have gone so far as to hold that the issue of the scope or need for the confidentiality order itself presents a common question that links the movant's challenge with the main action." *Id.* at 1047 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777-78 (3rd Circuit 1994)). Much like the confidentiality order in *E.E.O.C.*, this motion challenges Defendant's (and third party's) attempts to seal exhibits and testimony, including Apple's request to seal Eddy Cue's testimony. Hence, there are sufficient grounds to find that Movants have met this element.

Courts in this jurisdiction consistently have granted motions to intervene to allow for public disclosure of judicial records.  For example, in *In re Guantanamo Bay Detainee Continued Access to Counsel*, the court granted a reporter's motion to intervene for the purpose of asserting the public's right to access a sealed declaration. 968 F. Supp. 2d 222, 224 (D.D.C. 2013). This Court did so again in *In re Fort Totten Metrorail Cases* where it found that "a nonparty newspaper, may 'permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order.'" 960 F. Supp. 2d 2, 5 n.3 (D.D.C. 2013). Simply put, Rule 24(b) recognizes "the need for 'an effective mechanism

5

for third-party claims of access to information generated through judicial proceedings.'" *E.E.O.C.*, 146 F.3d at 1045 (quoting *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d at 783). Here, Movants are petitioning the Court for no greater treatment or transparency than what it has consistently provided others seeking transparency in proceedings that have a significant public interest as were the ones in the cases above.

In sum, this motion is timely, there is no danger of delay or disruption to this case that might prejudice the parties, and Movants make a claim or defense on a question of law or fact in common with the main action. Thus, they meet all requirements for permissive intervention under Rule 24(b).

**B.     The public has a right of access to these exhibits and testimony.**

As the D.C. Circuit has recognized, there is a "strong presumption in favor of public access to judicial proceedings." *E.E.O.C. v. Nat'l Childrens Ctr. Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). Public access to critical information within court exhibits can outweigh any prejudice that may arise. *See In re Application for Access to Video Exhibits*, 575 F.Supp.3d 101, 110 (D.D.C. 2021) (ordering public disclosure of videos even though defendant argued that disclosure would taint the jury pool and prejudice his fair trial rights). In determining whether the presumption of access should be overcome, the Court should consider the following factors articulated by the D.C. Circuit: 1) the need for public access for the exhibits; 2) the extent to which the public has previously accessed the content within the exhibits; 3) the privacy interests of third parties; 4) the strength of the asserted property and privacy interest asserted; 5) the possibility of prejudice to those opposing disclosure; and 6) the purpose for which the documents were introduced during judicial proceedings. *Id.* at 109 citing *U.S. v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) (the "*Hubbard* factors"). "[A] strong showing on one *Hubbard* factor can outweigh several other factors." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 11 (D.D.C. 2013) (finding minors'

settlement records should be disclosed based on a single factor, even though most *Hubbard* factors weighed in favor of nondisclosure). Here, the *Hubbard* factors weigh in favor of disclosure or otherwise do not apply.

*First*, there is a strong need for public access to the exhibits pertaining to Google's relationship with Apple. This Court is charged with making critical decisions about whether Google's business practices have violated federal antitrust laws. Together with Apple, these companies have market capitalizations totaling over $4.6 trillion and they directly or indirectly impact every American and billions of people worldwide. Their effect on society, on culture, and on national and international affairs cannot be overstated. For the public to fully understand the evidence in this case and, in turn, this Court's factual and legal findings based on that evidence, there needs to be complete and unfettered public access to that evidence, especially as it concerns the relationship between Google and Apple.

Moreover, Google has arranged for Internet service providers, browsers, and device manufacturers to make its "Search" the default engine. For example, it has been widely reported that Google pays Apple over $15 billion per year to make Search the default search engine for Safari—a direct competitor to Google's browser Chrome. *See, e.g.,* Ayush Jalan, *Why Google Pays Apple Billions of Dollars Every Year*, Forbes (Mar. 1, 2023), http://bit.ly/45asgEy. This is incredibly significant given that Apple controls nearly half the mobile device market in the United States. As some reports indicate, if Apple switched its default search engine to a competing search engine (*e.g.*, DuckDuckGo or Microsoft's Bing), "Google would immediately lose hundreds of millions of users, severely affecting its ads business." *Id.* Given that the Google has taken centralized control over every aspect of our Internet experience, the relationship between Google and Apple is imperative for members of the public to understand so that they are better able to

7

contextualize not only the importance of this case but also Defendant's enveloping influence in their everyday lives. This is compounded by the fact that another consequential election is approaching, and the public will be relying on Google's and Apple's services to become informed on the issues. Hence, there is a strong public interest in ensuring that the public has access to information to allow for an ample understanding on how Defendant concentrates and controls information through various dealings.

*Second*, the fact that Google has previously gone to extreme lengths to successfully prevent disclosure of this evidence does not and should not weigh in favor of continued secrecy at a public trial. Prior to this point, the evidence was not being weighed by a fact finder. Now that the Court must examine and weigh the evidence and ultimately reach a decision that will have broad, public consequences, the information should no longer be kept secret.

*Third*, the "the privacy interests of third parties," are not such that the presumption of disclosure should be overcome because this is not a situation where "the need for minimizing intrusion is especially great,'" at least with respect to Apple. *In re Application for Access to Video Exhibits*, at 111 (quoting *United States v. Jackson*, Case No. 21 mj 115, 2021 WL 1026127, at * 7 (D.D.C. March 17, 2021)). Apple is not an innocent bystander in this case, and as a publicly traded and multinational company, its finances and business practices, including its financial arrangements with Google, have been widely covered by myriad news outlets. During the prosecution of the co-conspirators of the January 6th insurrection, this Court did not hesitate to disclose intimate details of every plaintiff through previously sealed videos of the event with significantly more third-party privacy interests present. *See, e.g., U.S. v. Puma*, Case No. 2021 CR 0454, 2023 WL 2727755 at *7 (D.D.C. March 31, 2023); *Jackson*, 2021 WL 1026127 at *8; *In re Application for Access to Video Exhibits*, 575 F.Supp.3d at 110. It would be wholly inconsistent

to find that corporations such as Google and Apple have superior privacy rights over individual human beings. Given this Court's previous rulings, the weighing of the equities favor disclosure of those exhibits over whatever privacy right these multi-trillion-dollar public companies have in their surreptitious dealings relating to Google's default status on Safari.

*Fourth*, the Court is to consider "the objecting party's privacy interest in the particular material at issue." *Jackson*, 2021 WL 1026127, at *7.  But here, there are no privacy interests for a corporation and thus no "possibility of 'public humiliation and degradation' that would 'constitute an unconscionable invasion of privacy' to innocent third persons." *Id.* (quoting *In re Application of Nat'l Broad. Co.*, 653 F.2d at 620). Google claims that it has property interests to protect, but it has not articulated why disclosure of the evidence would adversely affect any such property interests.  Significantly, Movants do not seek either Google or Apple to disclose source codes or other trade secrets, which are the only cognizable property interests both might have here. Hence, there is no threat that disclosure will amount to any harm warranting secrecy at trial.

*Fifth*, there can be no prejudice to Google in this case if there is public disclosure of the evidence relating to Apple.  While "[t]he possibility of prejudice to the defendant[ ] by sensational disclosure is a factor which may weigh in favor of denying immediate public access," *Hubbard*, 650 F.2d at 320–21; *see also Jackson*, 2021 WL 1026127, at *8, there is no risk of such prejudice here because this matter is being tried by the Court, not before a jury.  Nor will disclosure impede Google from presenting its defense.

*Sixth*, the Court is to examine the purpose for which a party is introducing the evidence subject to potential sealing.  This Court has held that there is "a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them." *U.S. v. All Assets Held at Bank Julius Baer & Co., Ltd*, 520 F.Supp.3d 71, 86 (D.D.C. 2020). There is

no question that the exhibits and testimony are critical to both parties' case. Indeed, one plaintiff makes it a focal point on how Google leveraged potentially restrictive deals to monopolize the search engine market. ECF Dkt. Entry 1 at 4. Additionally, Google's corresponding exhibits theoretically seek to contradict the claim that such an agreement with Apple is restrictive and may even enhance consumer welfare. Either way, both parties intend for the Court to rely on evidence that Google and Apple apparently seek to keep under seal and evidence that forms the basis of a judicial ruling should be fully disclosed and transparent to the public.

***

The *Hubbard* factors all weigh in favor of public disclosure of the evidence related to Apple's dealings with Google.

### III. CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court (1) grant their motion to intervene in this matter and (2) order that all exhibits and testimony concerning Google's relationship with Apple be entered into the public record at trial or, in the event the Court does not order full disclosure of such exhibits and testimony, permit Movants to participate in any proceedings where parties contest the public disclosure of such trial evidence.

Dated: September 28, 2023               Respectfully submitted,

                                        */s/ Mark I. Bailen*
                                        Mark I. Bailen PC
                                        (DC Bar No. 459623)
                                        1250 Connecticut Ave, NW
                                        Suite 700
                                        Washington, DC 20036
                                        202-656-0422
                                        mb@bailenlaw.com

>Joel Thayer
>(DC Bar No. 1047724)
>(*Application for Admission to be filed*)
>Thayer, PLLC
>1255 Union Street NE, 7th Floor
>Washington, DC 20002
>(760) 668-0934
>JThayer@thayer.tech
>
>*Counsel for Movants*