IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Google LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Google LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S MEMORANDUM REGARDING THE CONFIDENTIALITY OF THE TESTIMONY OF GOOGLE EMPLOYEE JIM KOLOTOUROS AND VERIZON EMPLOYEE BRIAN HIGGINS**

Google respectfully submits the following statement regarding the parties' proposed redactions to the sealed testimony of Google witness Jim Kolotouros and Verizon witness Brian Higgins, which DOJ delivered to the Court by email Friday and Monday, respectively. There are four categories for which Google seeks redaction and DOJ opposes. As to each, Google's proposal is consistent with the *Hubbard* standard and the Court's guidance.

***First***, while Google has not objected to open-court testimony regarding high-level explanations of the terms of confidential agreements with its Android partners, Google has sought redaction of the specific terms of recent agreements with Samsung, Motorola, and Verizon.[1] *E.g.* Kolotouros Tr. 886:22-888:2, 889:9-890:2, 909:9-911:5, 917:3-919:10, 921:10-922:3, 924:21-926:9, 929:2-21, 937:8-13, 939:2-11; Higgins Tr. 1036:11-1037:7, 1040:19-20, 1055:7-1056:3, 1111:10-13. As the Court previously observed in addressing a request to seal portions of testimony regarding certain terms of the Information Services Agreement with Apple, "disclosure of those specific terms . . . could create a public disadvantage, competitive disadvantage for Google and any future negotiations with potential partners." Oct. 4, 2023 Trial Tr. 4368:4-13. The same is true here. Google's agreements with its OEM and carrier partners contain bespoke terms based on each company's preferences and objectives. Aug. 8, 2023 Declaration of Sang Eun (Kate) Lee ("Lee Decl.") ¶ 7.[2] "If every company that Google negotiates with had access to Google's agreements with all of its other partners, then Google's ability to conduct a standard commercial negotiation would be undermined, and its competitive standing would likely suffer significant harm." *Id.*

---

[1] These partners have also sought sealing of specific deal terms.

[2] Google is not re-submitting Ms. Lee's declaration with this filing because portions of it contain confidential information regarding internal Google documents, but it was hand delivered to the Court on a thumb drive on August 10.

1

***Second*,** Google seeks redaction of competitively sensitive internal business discussions among executives regarding Google's assessments of the rationales for and competitive dynamics related to certain search distribution deals. *E.g.*, Kolotouros Tr. at 893:5-17, 895:3-22, 900:25-901:12, 913:13-914:1, 933:8. The Court previously noted that "high-level discussions between senior executives about potential partnerships" may warrant sealing because "given the sensitivity of those communications, . . . on balance [] their release would be potentially prejudicial." Oct. 4, 2023 Trial Tr. 4367:9-12. DOJ appears to agree that parties' internal discussions evaluating search distribution deals can merit sealing, but it provides no explanation for why other internal discussions should be unsealed. *Compare* Higgins Tr. 1099:3-15 (DOJ agreeing to seal internal assessment of payment amount) *with* Higgins Tr. 1064:7-12 (DOJ challenging sealing of internal assessment of payment amount).[3] Publicly disclosing to partners and competitors Google's internal assessments of strategic considerations and recent negotiations will harm Google's competitive position in future negotiations.[4] *Cf.* Lee Decl. ¶ 6 (discussing different agreement: "The harm would be especially severe if the forced disclosure only affected Google, *i.e.*, if all of Google's competitors knew what Google was willing to agree to in its current deal . . . while Google continued to have no non-public knowledge of what other companies have offered or agreed to in exchange for promoting their search services.").

---

[3] The portions that DOJ agrees may be sealed relate to Google's questioning of the witness, while it seeks to unseal portions of its own examination on the same subjects.

[4] Notably, Mr. Kolotouros testified that the proposal being discussed at 893:5-17, 895:3-22 (GDAF) was predominately focused on contracts with partners outside the United States, *see* Kolotouros Tr. 942:8-24, further minimizing the relevance of this testimony when weighing the *Hubbard* factors. If the confidential portions of this testimony are disclosed, numerous partners not at issue in this case will be given a view of Google's confidential internal decision making on agreements not challenged in this case.

*Third*, while DOJ agrees to redact *some* numbers regarding distribution agreements, they do not agree to redact certain other numbers regarding Google's assessments of the agreements' coverage in the United States and search traffic flowing through specific search access points. Kolotouros Tr. 904:11-906:6, 907:2, 909:2, 911:11-25, 921:6, 922:6, 924:1-4, 941:6-20, 945:3. These are the types of specific, proprietary data points that routinely merit sealing. *See, e.g.*, Oct. 4, 2023 Trial Tr. at 4366:24-4367:4. There is no basis to treat these numbers differently.

*Finally*, Google seeks to keep sealed a discussion of the demonstrative showing potential strategies competitors could employ on MADA-compliant devices. Kolotouros Tr. 948:1-953:16. Google should not be required to disclose to its competitors or partners strategies that impact Google's placement on any device covered by the MADA. That is precisely the type of one-sided disclosure that merits sealing, as parallel information about partners' or competitors' evaluation of strategies that impact Google's placement on MADA-compliant devices is not public, thereby harming Google's competitive positions in future negotiations. *Cf.* Lee Decl. ¶ 6, *supra*.

Dated:  October 10, 2023                    Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*