**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 1:20-cv-3010<br><br>HON AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 1:20-cv-3010<br><br>HON AMIT P. MEHTA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE AND FOR
ACCESS TO JUDICIAL RECORDS**

The New York Times Company ("The Times") moves to intervene in this action for the limited purpose of seeking access to judicial records that are sealed or have otherwise not been made publicly available.[1]

## **PRELIMINARY STATEMENT**

The need for openness in this case — arguably the most important antitrust trial in decades, with far-reaching consequences for the future of the tech industry — is both obvious and hard to overstate. Yet much of the testimony has taken place behind closed doors, and much other evidence remains out of public view. Though the Court has taken steps to make the trial more open, in several respects the degree of public access still falls short of what the law requires. The most serious and pressing problem is that as the trial enters its sixth week, reporters at The Times and other outlets still do not have consistent and complete access to admitted trial exhibits. The Court can and should rectify that by amending its existing order on posting trial materials. Other records have been sealed without adequate explanation; the Court should unseal these unless the parties or interested third parties carry their burden to show that the sealing is consistent with the *Hubbard* factors. And, to the extent the Court plans to close the courtroom going forward, The Times asks that the Court provide the public with meaningful notice and an opportunity to be heard.

---

[1] While The Times is the sole movant here (as it is represented by its in-house lawyers), its application is fully supported by Bloomberg L.P., Dow Jones & Company, Inc. (publisher of *The Wall Street Journal*), MLex US Inc. (publisher of MLex), NYP Holdings, Inc. (publisher of the *New York Post*), and Portfolio Media, Inc. (publisher of Law360).

**BACKGROUND**

I.       **The Process for Posting and Disseminating Trial Exhibits**

On September 28, 2023, with the parties' consent, the Court entered an order establishing a process for the public dissemination of admitted trial exhibits[2] used in open court. *See* Dkt. 725. The Court entered the order after learning the week before that the DOJ had been posting exhibits online without having notified the Court in advance.[3] Sept. 19, 2023, PM Tr. at 1549:1-10, 1574:22-25. The Court, though surprised, did not order the DOJ to take down the exhibits; to the contrary, it recognized that "once [an exhibit is] in evidence, it's a presumptively public record." *Id.* at 1576:2-3; *see also id.* at 1549:5-7. The Court's chief concern was "to make sure that all the guardrails are in place to do it right." *Id.* at 1576:16-17. Nonetheless, the DOJ promptly took down the webpage where it had been posting exhibits.[4]

The next time the Court meaningfully discussed the subject of public access to exhibits was on September 26, 2023. The Court emphasized its desire for exhibits to be made public as soon as possible: "I would like both sides to be in a position where they can . . . post [exhibits] as soon as it is reasonable to do so." Sept. 26, 2023, PM Tr. at 2687:24–2688:3; *see also id.* at 2692:7-9 ("So the sooner you get [exhibits] over to them, the sooner we can be in a position to get all of what's been admitted so far back up online and publicly available."). The Court also suggested a straightforward process for the parties to follow for posting exhibits and objecting to their release — one that would not impose a serious burden on the parties and would provide for

---

[2] As used in this brief, the term "exhibits" includes demonstratives.

[3] A Bloomberg reporter in the gallery unsuccessfully attempted to make herself heard during this discussion. *See* Sept. 19, 2023, PM Tr. at 1574:17-21.

[4] Leah Nylen and Davey Alba, *Google Emails, Memos Hidden From Web as DOJ Caves at Trial*, Bloomberg (Sept. 20, 2023), https://www.bloomberg.com/news/articles/2023-09-21/google-googl-emails-memos-hidden-from-web-as-doj-caves-to-pressure.

prompt resolution of disputes so that exhibits could be publicly shared in a timely fashion. Sept. 26, 2023, PM Tr. at 2687:24–2693:11.

The September 28 order sets out this process in detail. Dkt. 725. To post or otherwise make available an admitted exhibit used in open court, a party must first redact the exhibit for confidential material and personally identifying information, and then provide a proposed redacted version of the exhibit to the other party and any third parties with a confidentiality interest by 6 pm ET that day. *Id.* The party may proceed with the posting unless the receiving party or third party raises an objection within three hours, in which case the parties "should be prepared to raise the dispute with the court on the immediate next trial day." *Id.* Importantly, however, the order does not command parties to make trial exhibits publicly available; it says only that parties "may" follow the process if they wish to publicly disseminate exhibits. *Id.* The order also notes that certain types of exhibits — those objected to or used solely in closed session, as well as exhibits "pushed" into evidence without being used in open court — cannot be posted without the Court's authorization. *Id.*

Despite the September 28 order, The Times and other media outlets covering this case still do not have full and timely access to admitted trial exhibits. In fact — and this may be because the September 28 order uses the word "may" rather than "must" — <u>none</u> of the parties has provided consistent access to exhibits used in open court:

- The DOJ has posted some of the exhibits it has used to a website,[5] but not all exhibits it used in open court appear there. By The Times's count, as of this writing, a total of <u>68</u> DOJ exhibits do not appear on the website — a figure that does not include exhibits from the latest week of trial or from sessions of court that were later unsealed. Reporters' attempts to obtain these exhibits from DOJ

---

[5] Department of Justice, *U.S. and Plaintiff States v. Google LLC [2020] - Trial Exhibits*, https://www.justice.gov/atr/us-and-plaintiff-states-v-google-llc-2020-trial-exhibits. The DOJ has conveyed to at least one reporter that it does not have the capability to post more than one or two exhibits a day, and it selects the exhibits that it considers most important to the case that day.

3

- directly have been unsuccessful. The DOJ has not claimed that these exhibits are confidential.

- The States just recently began posting online admitted exhibits used in open court.[6] As of this writing, the States' website lists only seven exhibits. Reporters have asked for 18 other exhibits, which the States have neither provided nor said are confidential.

- Google, for its part, requires the press and public to request exhibits by email.[7] It has generally required that the requester specifically identify, by exhibit number, each exhibit sought.[8] In some cases, Google has provided the exhibits within several days; in other cases, it has not responded at all, even to say that the requested exhibits contain confidential information. And when Google has provided exhibits, it often does not provide the exhibit in its entirety; instead it responds with only the particular page(s) of the exhibit shown to a given witness.

And there are other access problems. Though the Court has now released partially redacted transcripts of witness testimony that took place in a closed session, it has not ordered the release of exhibits that were presented to witnesses during the now-public portions of their testimony. And, in at least one instance, counsel for Google has in open court quoted from an exhibit that has been treated as confidential in its entirety and not been made publicly available in any form. Oct. 10, 2023, PM Tr. at 5075:6–5077:9 (discussing exhibit JX33). At least one reporter asked the parties to provide the relevant portions of this exhibit, citing the Court's observation that "[w]hat the public has a right of access to -- and the Supreme Court is very clear on this -- is the portions of records that are presented at a trial." Sept. 29, 2023, PM Tr. at 3444:22-24. The parties have yet to respond to that request.

---

[6] The States apparently set up this website on October 12, 2023. Before then, none of the States' exhibits were available, except for two listed on the DOJ website.

[7] Notably, Google maintains a webpage about this case and has posted certain filings there. Google, *Search trial media center*, https://blog.google/competition/media-center-us-v-google. It has not posted exhibits there.

[8] Google appears to have recently changed this policy, though it has not shared that information with all reporters who have been regularly attending the trial and in contact with Google to request access to exhibits.

## II. The Court Partially Unseals Transcripts from Closed Sessions

To date, seven days of trial have involved some degree of witness testimony given in secret; on one day, the Court excluded the public from the courtroom for the entire day. The Court has since taken steps to partially unseal transcripts of this testimony. *See* Sept. 28, 2023, PM Tr. at 3376:22–3377:9. On October 4, 2023, the Court released redacted transcripts of testimony of witnesses John Giannandrea and Gabriel Weinberg. The Court explained in some detail how it weighed the factors enumerated in *United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980), and why it kept "limited categories" of information under seal. Oct. 4, 2023, PM Tr. at 4363:9–4368:25. Yet, when the Court released redacted transcripts of testimony given by witnesses Eddy Cue and Jerry Dischler, it provided no similar explanation of what material it kept sealed. Oct. 6, 2023, AM Tr. at 4803:17-22 (Cue transcript).[9]

As of this writing, the Court has yet to release transcripts for testimony given by Jim Kolotouros and Brian Higgins, among other witnesses. Google has filed a brief opposing unsealing of certain information in the transcripts of testimony of Mr. Kolotouros and Mr. Higgins, Dkt. 729, and Verizon has done the same for Mr. Higgins' testimony, Dkt. 730. The Times is not aware of whether the parties or interested third parties have submitted briefs directly to the Court (*i.e.*, that do not appear on the docket) regarding the sealing of transcripts, though Google's opposition brief refers to one such declaration. *See* Dkt. 729 at 1 n.2 (citing declaration that was "hand delivered to the Court on a thumb drive on August 10," but does not appear on the docket).

---

[9] The Court said only the following: "So just to close the loop on the transcript issue, we have concluded our review of Mr. Cue's transcripts, so those will be made available, at least the public portions will be made available or will be made available this afternoon after we're done here today."

5

**ARGUMENT**

I. **The Court Should Permit The Times to Intervene**

The Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The D.C. Circuit has held that third parties, including news organizations, "may be allowed to permissively intervene under Rule 24(b) for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The Court should therefore grant The Times's motion to intervene in this matter for the limited purpose of seeking access to judicial records. *E.g.*, *In re Application of Chodiev*, 2021 U.S. Dist. LEXIS 90103, at *9-10 (D.D.C. Mar. 23, 2021) (granting news organization leave to intervene for such purpose).

II. **The Court Should Order the Parties to Provide Contemporaneous Public Access to Trial Exhibits**

"A trial is a public event," and "[w]hat transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). For that reason — and as the Court itself has recognized in this case — the public has a weighty common law right of access to admitted trial exhibits. Sept. 19, 2023, PM Tr. at 1576:2-3 ("[O]nce [an exhibit is] in evidence, it's a presumptively public record."); *see, e.g.*, *United States v. Pagett*, 2022 U.S. App. LEXIS 15883, at *11 (2d Cir. June 8, 2022) (noting that "[t]he public has an especially strong common law right of access to evidence introduced in trials" and finding that lower court properly allowed prosecutors to release to press evidence that was admitted at trial and shown to jury) (quoting

6

*United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (cleaned up)). The First Amendment independently confers a right of access to judicial records, including trial exhibits.[10]

Given the democratic values served by an open court system, there is a "strong presumption in favor of public access" to judicial records, which is displaced only by a showing that sealing is justified by "competing interests." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (cleaned up). A court assesses whether the presumption of access is overcome by applying the *Hubbard* factors, 650 F.2d at 317-21,[11] and it must provide a "full explanation" for its decision — one that is "detailed enough to permit 'review of the district court's exercise of its discretion." *In re L.A. Times Commc'ns. LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996) (cleaned up)). At all times, "[t]he burden is on the party seeking to restrict disclosure to come forward with specific reasons why the record, or any part thereof, should remain under seal." *FTC v. Match Grp., Inc.*, 2023 U.S. Dist. LEXIS 75470, at *24 (D.D.C. May 1, 2023) (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991) (cleaned up)).

---

[10] *See, e.g.*, *Pagett*, 2022 U.S. App. LEXIS 15883, at *11 ("The public also has a qualified First Amendment right of access to trial exhibits because they are derived from the relevant proceedings and are a necessary corollary of the capacity to attend the trial." (cleaned up)). The Court need not address the constitutional access right since the common law right provides the complete relief sought here. *See, e.g.*, *Chodiev*, 2021 U.S. Dist. LEXIS 90103, at *28 (finding that the "requested relief can be granted by applying the *Hubbard* factors to evaluate CNN's claim under the common law right of access to records" and therefore declining to reach First Amendment arguments).

[11] Those factors are: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *MetLife, Inc.*, 865 F.3d at 665 (cleaned up).

Important here, the right of access to trial exhibits and other judicial records is a contemporaneous one. *See, e.g.*, *Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991) (recognizing "the critical importance of *contemporaneous* access to plea agreements to the public's role as overseer of the criminal justice process"); *see also In re Associated Press*, 172 F. App'x 1, 2 (4th Cir. 2006) (granting news organizations' mandamus petition seeking contemporaneous access to exhibits admitted into evidence at criminal trial); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 126 (2d. Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of immediate access where a right to access is found."). Even where timely public access entails some degree of administrative burden on the court or the parties, courts have not found a justification for denying or seriously delaying public access. *See, e.g.*, *In re Associated Press*, 172 F. App'x at 6-7.

In this case, as noted above, the impediments to timely access to exhibits have been numerous and substantial. Reporters at The Times and other outlets do not have consistent access to exhibits used in open court, nor have they been provided with exhibits used in previously closed but now-unsealed sessions of court. The Times accordingly asks the Court to amend its September 28 order as follows:

- The parties "must" (not "may") post admitted exhibits online or otherwise make them publicly available using the process outlined in the order;
- The process outlined in the order applies to exhibits used in sessions of court that were closed but have now become public through the unsealing of transcripts;
- To the extent a party makes exhibits available by email rather than by posting them online, it shall endeavor to provide exhibits as soon as possible after requested, and in no case more than 24 hours after the request is made, notwithstanding redactions for genuinely confidential or personally identifying information;
- To the extent a party in open court quotes from, or discusses the substance of, portions of an exhibit that are otherwise properly sealed, it waives the confidentiality interests in the quoted or discussed portions of the exhibit and shall make them publicly available;

- A party must provide a full copy of an exhibit rather than only the portion of the exhibit shown to a witness, apart from redactions for genuinely confidential or personally identifying information;

- To the extent a party determines that an exhibit it used should be kept sealed in its entirety, it must notify the other party of that determination using the process outlined in the order, so that the Court may resolve any objections on the following trial day; and

- To the extent a party seeks to keep an exhibit under seal in full or in part and the other party does not object to the sealing, the party seeking the sealing must notify the Court of that fact the following trial day and make a showing that the sealing is justified under the *Hubbard* factors.

Among other things, these amendments will permit The Times and other outlets to understand which exhibits have been withheld on grounds of confidentiality and what the basis for the sealing is, and to assert challenges to sealing where appropriate.

In addition, at this juncture The Times seeks the unsealing of redactions in two specific exhibits: UPX137 and UPX552.[12] It is unclear why the exhibits have been redacted, particularly since they date to 2007 and relate to a version of an agreement between Apple and Google that has not been operative for more than a decade. It may be that Google (and perhaps Apple) believes the material, if disclosed, would cause it competitive harm. But Google has not made that showing, at least on the public record. *See, e.g.*, *King & Spalding, LLP v. HHS*, 2020 U.S. Dist. LEXIS 60949, at *7 (D.D.C. Apr. 7, 2020) ("To carry its burden under *Hubbard*, a party must specifically identify the commercially sensitive information and explain why its disclosure would harm its competitive standing." (cleaned up)). Rather than shadowbox against arguments not yet made, The Times respectfully requests the right to address any rationale for sealing more fully upon reply.

---

[12] Both exhibits are available on the DOJ's website. https://www.justice.gov/d9/2023-10/417053.pdf; https://www.justice.gov/d9/2023-10/417055.pdf.

9

### III. The Court Should Unseal Certain Transcripts and Related Filings

The common law right of access likewise applies to transcripts of trial testimony. *See, e.g.*, *United States v. Madzarac*, 2023 U.S. Dist. LEXIS 85047, at *5 (D.D.C. Mar. 6, 2023). Here, however, the Court has upheld redactions to certain transcripts in the absence of a showing by the parties on the public record that the sealing is justified and without providing its own "full explanation" of the basis for the redactions. *See FTC*, 2023 U.S. Dist. LEXIS 75470, at *24; *In re L.A. Times*, 28 F.4th at 297. This is so even though some of the redactions have been applied to material that is both of great public interest and goes to the core of the litigation.[13] Given the absence of any justification for these redactions, the transcripts of testimony given by Mr. Cue and Mr. Dischler should be unsealed in their entirety. As with the exhibits discussed above, The Times requests the right to address any rationale for sealing on reply.

The Times makes two additional requests. First, to the extent the parties or third parties have submitted briefs or other papers on sealing matters directly to the Court without filing them on the docket, those papers should be posted on the docket and unsealed to the extent possible. *Cf. CNN, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021) (agency declaration filed in FOIA litigation to justify redaction of records was "judicial record" presumptively subject to disclosure). That includes the declaration cited by Google in its recent brief in opposition to certain unsealing. *See* Dkt. 729 at 1 n.2. Second, The Times respectfully requests that when the Court unseals a transcript, it posts a notice to the docket to that effect (to make the public aware

---

[13] In Mr. Cue's transcript, for instance, it appears that redactions have been applied to testimony about Google's revenue sharing with Apple pursuant to the 2016 ISA, Sept. 26, 2023, AM Tr. at 2493:10– 2494:13, 2494:17– 2496:4, the terms of Microsoft's offer to Apple to make Bing the default search engine, *id.* at 2517:3–2518:2, 2518:5-24, and a 2014 Apple email about its own strategy regarding search, *id.* at 2534:17–2535:3, 2535:6-19, 2536:15-22, 2537:10–2538:23.

of the unsealing) and order the court reporter to post the transcript to PACER (so that the transcript is immediately accessible in the Clerk's office).

## IV. The Court Should Provide the Public with an Opportunity to be Heard Before Court Closures

Sealing the courtroom is an extraordinary step in any case. In this litigation, perhaps the most important antitrust trial in decades, the stakes are especially high. Excluding the public from the courtroom not only impedes its ability to understand how this consequential case is being litigated — it also undermines the public's faith in its justice system. *See Richmond Newspapers v. Virginia.*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). And when press and public are wrongfully excluded, the provision of a transcript after the fact does not remedy the initial injury:

> Documentary access is not a substitute for concurrent access, and vice versa. Where a right of access exists, a court may not deny access to a live proceeding solely on the grounds that a transcript may later be made available. Such a transcript would not fully implement the right of access because some information, concerning demeanor, non-verbal responses, and the like, is necessarily lost in the translation of a live proceeding to a cold transcript.

*ABC, Inc. v. Stewart*, 360 F.3d 90, 99-100 (2d Cir. 2004) (quoting *United States v. Antar*, 38 F.3d 1348, 1360 n.13 (3d Cir. 1994) (cleaned up)).

Going forward, The Times asks that the Court provide the press and public with notice and an opportunity to be heard on closure before it occurs. *See, e.g.*, *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 609 n.25 (1982) (observing that for "a case-by-case approach [to closure] to be meaningful, representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" (cleaned up)). Specifically, The Times proposes that at the end of each trial day, the Court advise the press in the gallery whether it anticipates closing the courtroom the following trial day; if the Court so anticipates, it could

receive any argument on the subject from the press the following morning. In cases where the Court decides that closure is necessary, The Times asks that it explain the basis for the closure and make it as limited as possible. *See, e.g.*, *New York v. Microsoft Corp.*, 2002 U.S. Dist. LEXIS 7680, at *6 (D.D.C. Apr. 16, 2002) (finding in advance of testimony that limited closure of courtroom was justified, but that closure would be "narrowly tailored to include only the specific information which, if released, would be detrimental to [the non-party's] business interest").

## CONCLUSION

For the foregoing reasons, the Court should grant The Times's motion to intervene and for access to the sealed records.

Dated: October 16, 2023          Respectfully submitted,

/s/ *Al-Amyn Sumar*
Al-Amyn Sumar (#1614655)
David McCraw (#NY0200)
Dana R. Green (#1005174)
The New York Times Company
1627 I Street NW, Suite 700
Washington, DC 20006
Telephone: (646) 306-4201
Facsimile: (212) 556-4634
al-amyn.sumar@nytimes.com
mccraw@nytimes.com
dana.green@nytimes.com

*Counsel for The New York Times Company*