IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>**FILED UNDER SEAL** |
| State of Colorado, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>**FILED UNDER SEAL** |

**DECLARATION OF SANG EUN (KATE) LEE**

I, Sang Eun Lee (using Kate as my first name at Google), declare as follows:

1. I am currently employed by Google LLC (Google) as a legal director. I graduated from the University of New Hampshire Franklin Pierce School of Law in 1998 and have been an in-house counsel for Google since 2010. I am a member of the State of New York Bar.

2. Since late 2017, my responsibilities have included providing legal support to the Google product and business teams that develop and distribute the Android mobile operating system and Google applications that are developed to run on the Android operating system. During that time, I have also received information from Google employees regarding the

1

negotiation and analysis of agreements between Google and a range of partners who participate in the Android ecosystem, including original equipment manufacturers (OEMs) that make smartphones and other Android devices as well as wireless carriers that sell those devices to consumers.

3. My work as in-house counsel sometimes involves determining the commercial sensitivity of information relating to the Android ecosystem and evaluating whether disclosing the information would harm Google's competitive standing. That includes, for example, determining whether to seek confidential treatment for materials submitted to regulators and deciding whether information shared with business partners should be subject to a non-disclosure agreement.

4. I understand that the plaintiffs in this case have sought Google's views on whether particular documents should be made public at trial in this matter, and I have reviewed certain of those documents because they relate to the Android ecosystem, apps developed by Google for Android devices, or agreements with Android OEMs and carriers.

5. I have reviewed UPX5336 (GOOG-DOJ-27553741), which appears to be a copy of the current Mobile Revenue Share Agreement between Google and AT&T Mobility LLC (AT&T) dated June 1, 2021. The agreement is confidential and includes a substantial amount of the partner's highly sensitive and confidential information. AT&T is one of our top Android partners and disclosing such sensitive and confidential information would not only disrupt our partnership but also the Android ecosystem. For a number of reasons, public disclosure of the agreement is likely to cause significant harm to Google's competitive standing.

6. For example, disclosure of the agreement would give Google's competitors knowledge of the structure of the incentives that Google agreed to with AT&T, which would

allow competitors an unearned advantage in formulating proposals to provide services that Google presently provides under the agreement. *E.g.*, UPX5336 (GOOG-DOJ-27553741) at -765 and -766. The harm would be especially severe if the forced disclosure only affected Google, *i.e.*, if all of Google's competitors knew what Google was willing to agree to in its current deal with AT&T, while Google continued to have no non-public knowledge of what other companies have offered or agreed to in exchange for promoting their search services.

7. Furthermore, Google's competitive standing would be harmed by disclosure of the document in question because it separately negotiates agreements with other wireless carriers to promote Google Search on Android devices sold by those carriers. The terms of those agreements differ from each other as each company has its own preferences and objectives, leading to different commercial compromises. If every company that Google negotiates with had access to Google's agreements with all of its other partners, then Google's ability to conduct a standard commercial negotiation would be undermined, and its competitive standing would likely suffer significant harm.

8. I have reviewed UPX5530 (GOOG-DOJ-21682392), which appears to be a copy of the current Mobile Revenue Share Agreement between Google and Samsung Electronics Co., Ltd. (Samsung) dated July 1, 2020. All of the statements above about the commercial sensitivity of Google's agreement with AT&T also apply to this agreement with Samsung, and I have all the same concerns about how disclosure would affect Google's competitive standing.

9. I have reviewed UPX0574 (GOOG-DOJ-09042971 and GOOG-DOJ-09042942), which appears to be a January 2015 email thread with subject line "Invitation: OEM Partnership Deep Dive – Jim – Philipp – PS's Office 1098 @ Tue Feb 3, 2015 4pm – 5:30pm (Jim Kolotouros)" and a deck titled "Overview of OEM Android Agreements / DRAFT / July 2014."

This document is confidential and includes information that is highly commercially sensitive, including the revenue share percentages negotiated with a range of different Android OEMs and wireless carriers across a number of different countries.  *E.g.*, UPX0574 (GOOG-DOJ-09042971 and GOOG-DOJ-09042942) at -953, -954, and -968.  If Google's competitors had knowledge of the financial terms that Google has negotiated with OEMs and carriers, then those competitors would have a significant one-sided advantage in bidding against Google in future negotiations to provide services that Google has agreed to provide under the agreements.  Furthermore, the revenue share percentages, payment amounts, and other data at issue implicate the confidentiality interests of the numerous OEMs and carriers referenced in the document.  Many of those third parties have not been involved in this case, and therefore have not had an opportunity to object to the disclosure of the terms of their agreements with Google or confidential information generated in connection with those agreements.

        10.      I have reviewed UPX0170 (GOOG-DOJ-31861518 and GOOG-DOJ-12478970), which appears to be a December 2019 email thread with subject line "Privileged & Confidential – Android in Russia – *Dec 2019 Update*" and a deck titled "Update: Android in Russia / December 2019 / 6 months since last update."  This document is confidential and includes information that is highly commercially sensitive, including non-public financial results and projections for the Russian market, proprietary data relating to the use of Android devices in Russia, and a Google employee's proposals for responding to actions taken by a competitor in Russia.  *E.g.*, UPX0170 (GOOG-DOJ-31861518 and GOOG-DOJ-12478970) at -972, -977, -980, -981.  Public disclosure is likely to cause significant harm to Google's competitive standing, including by allowing competitors that offer smartphones or search engines to base their own strategic planning on Google's non-public financial and product usage metrics and

projections. Furthermore, given the ongoing sensitive political climate between the U.S. and Russia, and Russia's current regulations and policies towards Google and other U.S. companies, public disclosure of this sensitive document about competition with a Russian company in Russia could be used against the interests of Google and other U.S. companies in that market.

*   *   *   *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this \_\_\_\_ day of August 2023, in _____.

DocuSigned by:<br>
*Sang Eun (kate) Lee*<br>
10BA72D3CE0D4CE...<br>
Sang Eun (Kate) Lee