**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**DEFENDANT GOOGLE LLC'S RESPONSE TO THE OCTOBER 17, 2023
<u>PROPOSED ORDER ON POSTING TRIAL MATERIALS</u>**

Google respectfully submits the following response regarding the Proposed Order on Posting Trial Materials filed by The New York Times on October 17, 2023 at ECF 737. As explained below, Google believes that the Court's September 28, 2023 Order on Posting Trial Materials (ECF 725) is sufficient in all respects and should remain in place without modification.

### A. Preamble and Paragraphs 2, 3, and 8

Google does not believe it is necessary or prudent to order each party to post on the internet or otherwise disseminate every admitted trial exhibit or demonstrative used in open court as soon as it is admitted. Google does not presently intend to create a dedicated website for posting exhibits it introduces, and both the DOJ Plaintiffs and the Plaintiff States are posting online at least some of the exhibits they have introduced. Google has not objected to the posting of any exhibits or demonstratives identified by Plaintiffs pursuant to the September 28, 2023 Order on Posting Trial Materials.

To date Google has not systematically distributed demonstratives or exhibits to the public for two reasons. First, Google did not perceive any obligation to supplement the processes that Plaintiffs have established for disseminating exhibits introduced and used in open court during their cases-in-chief, nor is Google aware of any legal authority that obligates it to do so (particularly in a complex case such as this one). Second, many of the exhibits that Google has introduced and used in open court during Plaintiffs' cases-in-chief were produced by third parties, and Google has encountered resistance when it has provided notice to certain third parties of its intention to disseminate exhibits pursuant the September 28, 2023 Order.

Although Google opposes the modifications proposed by The New York Times, it understands the desire of the Times and other media outlets to obtain in a timely manner the exhibits and demonstratives (or portions thereof) that are subject to disclosure. During its case-

in-chief, Google will work expeditiously to make available the exhibits and demonstratives it introduces to the extent they are subject to disclosure under the Court's prior orders. Because of the trial schedule and the number of requests, however, it may not always be feasible to respond to a request within 24 hours. And if there are any objections to disclosure, Google does not believe it is reasonable to confer about any disagreements between a 9pm ET response deadline and the start of the next trial day, which may be the very next morning. To the extent that Google receives an objection from Plaintiffs or a third party to a request for disclosure, it will promptly convey that objection to the entity requesting the document.

### B. Paragraphs 4 and 5

The parties, non-parties, and the Court have made the substantive assessments contemplated by proposed paragraphs 4 and 5 on an ongoing basis before and during trial. Pursuant to the Court's August 14, 2023 Order (ECF 640), Plaintiffs have requested Google's confidentiality review of part or all of more than 500 documents produced by Google, and the parties collectively have requested redactions to part or all of many hundreds more documents produced by third parties. Each party and non-party has attempted in good faith to apply the *Hubbard* factors in determining which material warrants redaction, and on a near-daily basis throughout the trial, the parties have corresponded or conferred with each other and non-parties about these determinations. On some occasions, the Court has overruled a claim by Google or a non-party that portions of exhibits or testimony should remain sealed. It is neither necessary nor feasible to repeat the *Hubbard* balancing process at the start of every trial day with respect to demonstratives and exhibits introduced the prior day. *See In re Reporters Committee for Freedom of the Press*, 773 F.2d 1325, 1341 (D.C. Cir. 1985) (rejecting a "categorical rule that no

claim for confidentiality of trial exhibits can be sustained unless accompanied by a document-by-document justification" as "simply unworkable" and "utterly infeasible").

In short, the redactions applied to the portions of exhibits introduced for the Court's consideration on any given day are themselves the product of a fair and comprehensive process and are subject to the Court's ongoing scrutiny and guidance. The Court need not duplicate that process on a daily basis, and given the volume and sensitivity of material at issue in this case, if each party and non-party were required to formally articulate the basis for each redaction to an exhibit, the amount of time dedicated to that topic could quickly exceed the amount of time devoted to witness testimony.

### C. Paragraphs 6 and 9

The related proposals reflected in paragraphs 6 and 9 of the proposed order are untenable for two reasons.

First, on several occasions (often involving third-party testimony), a confidential exhibit has been shown to a witness but not displayed on the public screen to facilitate an open court examination of the subject matter addressed in the document. This practice has maximized public access by allowing the examining party to address commercially sensitive material without closing the courtroom, and it should not automatically lead to publication of any portion of an exhibit that merits sealing. *See, e.g.*, *Syngenta Crop Protection, LLC v. Willowood, LLC*, 2017 WL 6001818, at *5-6 (M.D.N.C. Dec. 4, 2017) (concluding that "the public's interest is higher" with regard to figures disclosed in witness testimony, while "the weighing process leads to a different result" with regard to the underlying exhibits because they include "details that were not referenced during testimony … and the risk of harm is enhanced if the exhibits are viewed in connection with the trial testimony").

Second, on several other occasions, an attorney or witness has inadvertently read into the record a number or phrase that should have remained sealed. While it may not always be possible to undo the damage of an inadvertent disclosure in open court, it should not be exacerbated by public posting of the inadvertently disclosed material.

With that said, Google agrees that neither a party nor a non-party should object to disclosure of a passage of an exhibit solely on the basis that the passage in question was quoted in a sealed session that subsequently was unsealed. To the extent that the Court's unsealing of the testimony indicates that the passage of an exhibit read into the record during a closed session is not properly sealed, then the parties and non-parties should take that into account when making or responding to a request to disseminate an exhibit. Again, Google will inform the requesting entity of the source of any outstanding objection to dissemination.

### D.  Paragraphs 7 and 11

The Court should reject any request to modify the process embodied in its August 14, 2023 Order, pursuant to which the parties identify for confidentiality review only "those portions of their exhibits that they intend to rely upon at trial." This passage-specific process—which allows the parties and non-parties to carve out portions of exhibits that are not necessary to review for confidentiality—has facilitated the open court examination of numerous witnesses regarding documents that are full of trade secrets and confidential business information. Under any other realistic approach, the public would have less access to live witness testimony and exhibits that a party deems central to its case.

The fact that a record has been offered as an exhibit at trial does not entitle the public to access the entire record. Even assuming that *Hubbard* balancing is required with respect to the portions of the exhibits not reviewed for confidentiality, "[a] district court weighing the first

4

factor [*i.e.*, the need for public access to the documents at issue] should consider the public's need to access the information that remains sealed, not the public's need for other information sought in the overall lawsuit." *Cable News Network, Inc. v. Federal Bureau of Investigation*, 984 F.3d 114, 119 (D.C. Cir. 2021). The portions of exhibits not reviewed for confidentiality are by definition the portions that no party has indicated it intends to examine a witness about. The observation that there is a strong public interest in the case as a whole, or even the portions of the exhibit that have been reviewed for confidentiality, cannot justify disclosure of the unreviewed passages. *Id.* ("[T]he proper inquiry is whether the public needs access to the remaining information redacted from the Archey Declaration, not whether the public needs to access the Comey Memos as a whole or even the Archey Declaration as a whole.").

It is by no means unprecedented for parties to redact portions of a record before introducing it as an exhibit and potentially subjecting it to public access. As one district court put it, "[i]n general, if information in a document is not relevant to the issues in the case, *and no party asks the Court to consider it*, the parties may—**and should**—redact the information without leave of Court to obviate any concerns about public access." *In re Citibank Aug. 11, 2020 Wire Transfers*, 2020 WL 6782213, at *2 n.3 (S.D.N.Y. Nov. 18, 2020) (second emphasis added). Put another way, the admission of an exhibit does not automatically trigger a public right to access the entire exhibit. *E.g.*, *Masimo Corp. v. Apple Inc.*, 2022 WL 20746529, at *3 (C.D. Cal. July 26, 2022) (agreeing that "'[t]here is a fundamental difference between disclosing a sentence or two from a confidential document in open court—particularly when necessary to preserve the public's ability to see and understand the trial—and waiving all confidentiality rights to portions of documents that were never shown or discussed and that are irrelevant to the

issues before the jury,'" and concluding that "[t]he Court will apply this distinction to future requests to seal trial exhibits").

None of the cases cited by The New York Times in its October 17, 2023 filing casts any doubt on the process established by the August 14, 2023 Order and relied upon by the parties and non-parties ever since. To begin with, the cases cited by the New York Times (*see* ECF 737 at 1-2) generally involve public access to records that "were submitted to a jury as part of a jury's deliberations." *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, 2021 U.S. Dist. LEXIS 110020, at *5 (S.D.N.Y. June 11, 2021); *see also, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 6124, at *270 (D. Ariz. Jan. 11, 2019). To the extent that the portions of exhibits not reviewed for confidentiality will *ever* play any "role … in the adjudicatory process" in this bench trial, *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997), they certainly bear no resemblance at this juncture to materials submitted in full to a jury for use in its deliberations.

Furthermore, the cases cited by the New York Times acknowledge the parties' right to seal the records in question, notwithstanding the determination that a public right of access applied to the exhibits at issue in those cases. *See, e.g.*, *Littlejohn v. Bic Corp.*, 851 F.2d 673, 679 n.12 (3d. Cir. 1988) (explaining that the defendant "might have objected to the admission of undiscussed portions of the plaintiff's exhibits at trial, but it failed to do so"); *Syntel Sterling*, 2021 U.S. Dist. LEXIS 110020, at *5-6 (directing the parties to "submit a proposed joint sealing order related to their request to seal trial exhibits" after concluding that they were judicial documents "because they were submitted to the jury as part of the jury's deliberations"). In this case, the parties and non-parties already have a sealing order that addresses the portions of the admitted exhibits not reviewed for confidentiality. As discussed, that Order was entered more

than two months ago following a public hearing, and it has facilitated the public presentation of large volumes of formerly confidential information while simultaneously allowing the parties to present their cases on the merits. The parties and non-parties have relied on the August 14 Order in determining which evidence they will present and which confidentiality determinations they will argue. There is no basis on which to insist that parties, non-parties, or the Court retroactively or prospectively review and redact each of the passages not reviewed for confidentiality. *See In re Reporters Committee for Freedom of the Press*, 773 F.2d at 1341.

Dated: October 18, 2023                                   Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078) 1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No.

454213) 2099 Pennsylvania Avenue,
NW Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*