IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                        Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                        Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>**FILED UNDER SEAL** |
| State of Colorado, *et al.*,<br><br>                        Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                        Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>**FILED UNDER SEAL** |

### **DECLARATION OF ERIN SIMON**

I, Erin Simon, declare as follows:

      1.     I am currently employed by Google LLC (Google) as a Senior Corporate Counsel. I graduated from New York University School of Law in 2009 and have been an in-house counsel for Google since December 2013. I am a member of the State Bar of California.

      2.     Since joining Google, I have been one of the Google in-house counsel principally responsible for supporting the product teams that develop and operate Google Search. I frequently receive information from Google employees regarding proposed changes to Google Search as well as evaluations of competitors' search products and strategic objectives.

1

3.  In my role as product counsel for Google Search, I periodically evaluate the commercial sensitivity of information relating to the Search product and assess whether disclosing particular information would harm Google's competitive standing. For example, I have assisted in determining which information about the operation of Google Search should be disclosed in speeches and publications by Google and its employees, and which materials submitted to regulators should be subject to confidential treatment.

4.  I understand that the plaintiffs in this case have sought Google's views on whether particular documents should be made public at trial in this matter, and I have reviewed a number of those documents because they relate to Google Search. I have five general observations regarding why the information included in these documents is commercially sensitive and would harm Google's competitive standing if released. Each of the documents I have reviewed ties back to at least one, and often several, of these observations.

5.  *First*, many of the techniques that Google Search uses to rank search results are highly commercially sensitive because of the potential divergence of interests between users, who want to see the most relevant results in response to their query, and some website operators, who may want to attract users to their site even if it is not especially relevant or high quality. In particular, there are many web pages written by humans or machines (*i.e.*, through generative artificial intelligence) that are inaccurate or of low informational value but have been designed to rank near the top of a Google search results page based on assumptions about how Google ranks results. And there are many "search engine optimization" firms that attempt to elevate their clients' websites on the Google search results page, even if they are not as relevant to the user's query as other sites. Google invests heavily in distinguishing between the quality of superficially similar webpages, and it keeps many ranking techniques secret in order to ensure that results

remain relevant to users despite attempts by certain actors to elevate spam, misinformation, less relevant websites, or other content that users would find dissatisfying.  The disclosure of Google's confidential ranking information would significantly harm its competitive standing by making it easier for those actors to elevate their low-quality webpages and diminish the usefulness of the Search product.  At a minimum, Google would experience further harm due to the need to invest in changing its ranking algorithms to counteract the negative effects of the forced disclosure.

6.      I have reviewed UPX0213 (GOOG-DOJ-16015714), which appears to be a document titled "Outline of Ranking Newsletters."  The document is confidential and contains commercially sensitive information, including descriptions of ranking signals that Google has used as inputs to determine the order in which webpages appear on Google's search results page in response to user queries. Through its discussion of the topics selected as important by Google's ranking teams, it provides a roadmap as to some of the most critical areas of focus in Google's development of its ranking algorithms.  *E.g.*, UPX0213 (GOOG-DOJ-16015714) at -722, -724, and -725.  Disclosure of the document would likely cause the kinds of competitive harms outlined above for the reasons stated above, and for the reasons stated in my second observation immediately below.

7.      *Second*, many of the techniques that Google Search uses to rank search results are highly commercially sensitive because they are the product of innovation by Google computer scientists and engineers conducting confidential research and experimentation for the purpose of improving Google Search.  The disclosure of Google's confidential ranking information would significantly harm its competitive standing by making it easier for competitors to copy Google's

innovations, without having to make their own investments in talented employees and a research program that involves trial-and-error.

8. I have reviewed UPX0239 (GOOG-DOJ-29470636), which appears to be a document titled "Overview of ML in Search / Challenges and Opportunities / Dec. 3, 2019 / Search SRE Study Group."  The document is confidential and contains commercially sensitive information, including data relating to the impact of machine learning on certain models used in ranking search results and the features and objectives of certain proprietary machine learning models developed by Google, as well as architectural choices used to deploy them efficiently within Google's datacenter network.  *E.g.*, UPX0239 (GOOG-DOJ-29470636) at -648, -654, -655, -656, and -676.  The development and deployment of machine learning models of the kind described in this document is an area of significant competitive sensitivity, and disclosure of the document would likely cause the kinds of competitive harms outlined above for the reasons stated above in connection with my first and second observations.

9. I have reviewed UPX0806 (GOOG-DOJ-19593661), which appears to be a December 13, 2013 email with the subject line "Search Features Newsletter – The Latency Edition."  The document is confidential and contains commercially sensitive information, including techniques for measuring and reducing latency and improving the quality of voice queries.  E.g., UPX0806 (GOOG-DOJ-19593661) at -662 and -663.  The techniques Google uses to analyze and reduce latency generally are considered highly commercially sensitive within the Search organization, and disclosure of the document would likely cause the kinds of competitive harms outlined above for the reasons stated in connection with my first and second observations above and my third observation below.

10.     *Third*, Google employees sometimes conduct analyses of other search engines, including by hiring human raters to evaluate search results pages generated by competitors' products or studying the features of competitors' products.  These analyses generally are highly commercially sensitive because they often reflect judgments of Google employees about the relative effect of different ranking models used by Google, or analyses of areas where the Google employees perceive strategic advantages or opportunities in their effort to satisfy consumer demand.  The disclosure of Google's confidential assessments would significantly harm its competitive standing by allowing competitors to make strategic judgments based on Google's investments in these competitive evaluations, including its conclusions about which features or techniques improve search quality or are otherwise likely to resonate with users.  Disclosure would also harm Google's competitive standing by allowing competitors to attack Google's reputation by using confidential competitive assessments that may be incomplete or lack appropriate context.

11.     I have reviewed UPX0190 (GOOG-DOJ-02797740), which appears to be an April 2018 email thread with the subject line "Gap with Bing."  The document is confidential and contains commercially sensitive information, including Google's internal measurement of its quality advantage over Microsoft Bing, descriptions of particular ranking models along with their estimated impact based on specific experiments, and summaries of how measurable ranking quality improvements lead to user perception improvements.  *E.g.*, UPX0190 (GOOG-DOJ-02797740) at -740 and -741.  Disclosure of the document would likely cause the kinds of competitive harms outlined above for the reasons stated above in connection with my first, second, and third observations.

12.     I have reviewed UPX0794 (GOOG-DOJ-19837975 and GOOG-DOJ-09284136), which appears to be an April 2019 email thread with the subject line "AGSA Incognito" and a deck titled "DuckDuckGo" / "'The search engine that doesn't track you'" / "Overview of privacy policies, messaging, and user perceptions." The document is confidential and contains commercially sensitive information, including descriptions of Google's methods of policing abusive behavior such as ad fraud on its sites, summaries of responses to a confidential survey conducted by Google relating to impressions about search engines, and evaluations of potential strategic responses to a competitor's marketing tactics. *E.g.*, UPX0794 (GOOG-DOJ-19837975 and GOOG-DOJ-09284136) at -146, -147, -150, -151, and -165. Disclosure of the document would likely cause the kinds of competitive harms outlined above for the reasons stated above in connection with my first, second, and third observations.

13.     *Fourth,* Google employees routinely conceive of and test potential changes to Google Search. In some instances, they decide not to launch the contemplated change or to pursue an alternative design instead. These analyses of potential changes to Google Search generally are highly commercially sensitive because they reflect deliberations about product designs that are not publicly visible. In much the same way that an implemented change to Google's ranking algorithms may include proprietary techniques that could not be disclosed to competitors without harming Google's competitive standing, a proposed change that Google decides is not presently viable or in its users' interest might nevertheless reflect innovations that are valuable to Google or are implemented later in a somewhat different form. Moreover, Google's internal consideration of the range of options for potentially improving Search or the disadvantages that may result from a contemplated change is itself commercially sensitive information. The disclosure of that kind of information would significantly harm Google's

competitive standing by making it easier for competitors to copy Google's innovations and strategic thinking, without having to make their own investments in talented employees and a research program that involves trial-and-error.

14. I have reviewed UPX0811 (GOOG-DOJ-11452651 and GOOG-DOJ-09024407), which appears to be an August-September 2019 email thread with the subject "Understanding search ads revenue for signed out/Incognito users" and a deck titled "Private Searching on Google / Prep for product council, June 2019." The document is confidential and contains commercially sensitive information, including specific product designs contemplated by Google employees and potential impacts of those product designs on Google's ability to detect fraudulent and abusive behavior that affects its Search and Search Ads products. *E.g.*, UPX0811 (GOOG-DOJ-11452651 and GOOG-DOJ-09024407) at -408, -411, -425, and -426. Disclosure of the document would likely cause the kinds of competitive harms outlined above for the reasons stated above in connection with my first, second, third, and fourth observations.

15. *Fifth,* Google employees regularly consider how best to focus the company's substantial but ultimately finite investments in its Search product. That includes, for example, deciding whether to increase the number of engineers devoted to improving responses to a particular category of queries or to launch a marketing campaign in a particular country. These analyses generally are highly commercially sensitive because they are often based on Google's proprietary data regarding which efforts are likely to be most impactful and because they tend to reveal strategic judgments about areas where Google employees have identified opportunities for improvement. Disclosure of these details would harm Google's competitive standing by giving competitors an unfair advantage in making their own strategic judgments. It would, for example, facilitate copying of Google's findings regarding the impact of certain investments or product

improvements, or allow competitors to allocate their own resources with advance knowledge of Google's plans.

16. I have reviewed UPX0749 (GOOG-DOJ-04373081 GOOG-DOJ-12085275), which appears to be a July 12, 2019 email with the subject "Go Big in Europe: Ruth meeting 9:30 AM PT 7/19" and a deck titled "Go big in Europe." The document is confidential and contains commercially sensitive information, including internal financial projections relating to the relationship between contemplated investments and the resulting revenue opportunities as well as contemplated changes to Google Search for certain categories of queries and estimates of the corresponding costs. *E.g.*, UPX0749 (GOOG-DOJ-04373081 and GOOG-DOJ-12085275) at -282, -289, -291, and -293. The document also includes highly sensitive financial information relating to negotiations with certain content providers in Europe, some of which are ongoing. *E.g.*, UPX0749 (GOOG-DOJ-04373081 and GOOG-DOJ-12085275) at -297, -301, and -302. Disclosure of the document would likely cause the kinds of competitive harms outlined above for the reasons stated above in connection with my third, fourth, and fifth observations, in addition to giving counterparties with whom Google is negotiating access to its internal financial information relating to those negotiations.

*   *   *   *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ____ day of August 2023, in _____.

DocuSigned by:<br>
*Erin Simon*<br>
98CC7EBC64CB4E4...<br>
Erin Simon