DocuSign Envelope ID: 8CC5CE76-7BB0-4308-86B6-EDA0D2F01398

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | **FILED UNDER SEAL** |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | **FILED UNDER SEAL** |
| Defendant. | |

### DECLARATION OF ELIZABETH DALY

I, Elizabeth Daly, declare as follows:

1.     I am currently employed by Google LLC (Google) as a Director within Google's Legal organization. I graduated from the University of Michigan Law School in 2007 and have been an in-house counsel for Google since 2011. I am a member of the New York State Bar.

2.     Since 2015, I have been the Google in-house counsel principally responsible for supporting the legal aspects of Google's negotiation and analysis of the Information Services Agreement (ISA) with Apple Inc. (Apple). I also frequently receive information from Google

1

DocuSign Envelope ID: 8CC5CE76-7BB0-4308-86B6-EDA0D2F01398

employees regarding Google's evaluation of Apple's strategic objectives and Google's efforts to market its products and services to consumers who use Apple devices.

3.      In my role as in-house counsel, I periodically evaluate the commercial sensitivity of information relating to these subjects and assess whether disclosing particular information would harm Google's competitive standing.  That includes, for example, determining whether to seek confidential treatment for materials submitted to regulators and deciding whether information shared with business partners should be subject to a non-disclosure agreement.

4.      I understand that the plaintiffs in this case have sought Google's views on whether particular documents should be made public at trial in this matter, and I have reviewed certain of those documents because they relate to Google's relationship with Apple and other topics I am familiar with from my work at Google.

5.      I have reviewed UPX5314 (GOOG-DOJ-02696793), which appears to be a copy of the amendment to the ISA between Google and Apple dated                    2016.  Although the agreement has subsequently been amended, that amendment was primarily an extension of the existing terms of the 2016 amendment and, consequently, the majority of the terms of this 2016 amendment remain in effect today.  The agreement is non-public and its terms are highly commercially sensitive.  Public disclosure of the agreement is likely to cause significant harm to Google's competitive standing by, for example, giving Google's competitors insight into how Google structures this deal with Apple, which Google queries result in a revenue share payment to Apple, and the commercial terms of the partnership.  That kind of disclosure would, among other things, give competitors a one-sided advantage in preparing their own bids to provide services that Google presently provides under the agreement.  Additionally, Google has similar arrangements to promote Google Search with other third party browsers.  Public disclosure of the

DocuSign Envelope ID: 8CC5CE76-7BB0-4308-86B6-EDA0D2F01398

agreement is likely to cause significant harm to Google's competitive standing by, for example, giving Google's competitors insight into how Google might have structured similar deals with other partners beyond Apple, which would, among other things, give competitors a one-sided advantage in preparing their own bids to provide services that Google presently providers under these other third party browser agreements.

6.      As noted, Google separately negotiates agreements with a number of companies to promote Google Search in those companies' browsers.  The terms of those agreements differ from each other (and from the 2016 amendment referenced above) as each partner expresses its own preferences and objectives, leading to different commercial compromises.  Google's competitive standing would likely be harmed significantly if all of Google's current and potential partners were aware of the terms that Apple negotiated with Google.  The harm to Google's competitive standing would be especially severe if only Google, and not its competitors, were required to disclose an agreement like the one in question.  Under those circumstances, Google's competitors would be able to continue engaging in ordinary confidential commercial negotiations with Apple and other browser developers, yet all involved would know the outcome of Google's negotiation.

7.      I have reviewed UPX5308 (GOOG-DOJ-02696678), which appears to be a copy of the original ISA between Google and Apple dated December 20, 2002.  Although the agreement has subsequently been amended many times, certain terms of the original ISA have carried through and remain relevant today.  As with the 2016 amendment to the original ISA referenced above, the agreement is non-public and its terms are highly commercially sensitive, and public disclosure of the agreement is likely to cause significant harm to Google's competitive standing.

DocuSign Envelope ID: 8CC5CE76-7BB0-4308-86B6-EDA0D2F01398

8.      Due to the commercial sensitivity of the ISA and amendments thereto, access to the agreements is limited within Google.  These restrictions generally exist to ensure compliance with confidentiality obligations to Apple relating to the agreements and to provide separation between the Google employees responsible for negotiating agreements with third party browser partners (such as Apple and Mozilla) and the Google employees who negotiate agreements with Android partners (such as Samsung and Motorola).  The fact that Google generally restricts access to the agreements in this way further informs my conclusion that publicly disclosing these agreements with Apple would affect Google's competitive standing in relation to its competitors and many of its partners.

9.      I have reviewed UPX0148 (GOOG-DOJ-22075801), which appears to be a slide deck titled "What Would Apple Do? / Search & Ads Perspective / January 2021."  The document is confidential, and public disclosure of it is likely to cause significant harm to Google's competitive standing by giving Apple insight into how particular Google employees have assessed Apple's strategic motivations and the likelihood that Apple would pursue a range of options available to it.  In my experience supporting commercial transactions and product teams, members of the business occasionally assess the likelihood that another company will pursue various strategic alternatives, make assumptions regarding product usage patterns, and examine potential product launches or policy changes.  *E.g.*, UPX0148 (GOOG-DOJ-22075801) at -823, -826, and -829.  These kinds of internal analyses are not shared with the other company, however, because Google would be at a significant disadvantage in future negotiations if its counterparty had one-sided access to the internal thoughts or assumptions of Google employees.  Furthermore, disclosure of the document would give Apple knowledge of confidential assessments of the impact Apple's decisions had or may have on Google, which could in turn

DocuSign Envelope ID: 8CC5CE76-7BB0-4308-86B6-EDA0D2F01398

inform Apple's own product development and strategic decision-making across a range of areas, including search, smartphones, advertising, and music.  *E.g.*, UPX0148 (GOOG-DOJ-22075801) at -818, -826, -829, -830.

10.    In addition to affecting Google's competitive standing in relation to Apple, disclosure would give Google's other competitors an unfair advantage.  For example, Google's competitive standing would likely be harmed if other companies that currently provide search services to Apple (or wish to do so) had access to Google's proprietary data regarding the monetization of certain query types or the subjective assessment of Google employees regarding which products or services Apple may offer in the future.  *E.g.*, UPX0148 (GOOG-DOJ-22075801) at -818 and -835.  Again, the damage to Google's competitive standing would be particularly severe if the compelled disclosure applied only to Google, and not the other companies that would benefit from access to documents that Google would not disclose under any other circumstance.

11.    I have reviewed UPX00002 (GOOG-DOJ-21350390), which appears to be a document titled "The Strategic Value of Marketing iGSA."  The document is confidential, and public disclosure of it is likely to cause significant harm to Google's competitive standing by giving Apple insight into how particular Google employees have attempted to estimate the revenue and expense associated with promoting Google Search on Apple devices.  Both Apple and other search engines would likely gain an unjustified competitive advantage from having access to information such as internal estimates of the cost of developing particular kinds of search services, proprietary data regarding the consumer use of Google Search through Apple's Safari browser and the Google Search App on Apple devices (iGSA), and assumptions regarding the revenue that may be generated by consumers who choose to use certain Google products

DocuSign Envelope ID: 8CC5CE76-7BB0-4308-86B6-EDA0D2F01398

such as iGSA.  *E.g.*, UPX0002 (GOOG-DOJ-21350390) at -394 and -395.  For example, Google's competitive standing with respect to Apple would be harmed in future negotiations if Apple had access to confidential Google data regarding ways in which Google employees have attempted to estimate the value of reaching certain users on Apple devices.  And Google's competitive standing with respect to other search engines that wish to provide services that Google presently provides under the ISA would be harmed if those competitors had access to internal documents reflecting Google's analyses of various contractual and product development scenarios.

12.     I have reviewed UPX0143 (GOOG-DOJ-09088822 and GOOG-DOJ-09088910), which appears to be a January 2016 email thread with the subject line "NYC – One slide Summary" and a deck titled "NYC Scenarios / 2016.01.15."  These documents are confidential, and public disclosure of them is likely to cause significant harm to Google's competitive standing.  The emails and presentation include various financial terms and other contractual provisions that Google employees contemplated or evaluated in negotiating the 2016 amendment to the ISA referenced above.  In my experience supporting commercial transactions, the negotiating team will often deliberate internally about various constructs and generate models that reflect potential alternatives before making a proposal to the counterparty, which in this case was Apple.  If Apple had access to these materials in advance of future negotiations regarding whether to renew or amend the ISA, then it would have a one-sided advantage by virtue of having seen the range of financial terms and other scenarios that certain Google employees modeled.

13.     Furthermore, disclosure would cause significant competitive harm in relation to competitors that wish to provide services that Google presently provides under the ISA.  Other

DocuSign Envelope ID: 8CC5CE76-7BB0-4308-86B6-EDA0D2F01398

search engines would not only have access to terms that Google agreed to in a recent agreement with Apple, but also a range of terms and scenarios that were analyzed internally based on confidential Google information.  That includes, by way of example, proprietary Google data relating to the ways in which consumers use Google Search on Apple devices, potential points of negotiation with Apple, and non-public financial data regarding revenue challenges and opportunities in different markets. *E.g.*, UPX0143 (GOOG-DOJ-09088910) at -912, -922, and -941.  And as discussed above in connection with the ISA with Apple, disclosure of these confidential documents would also likely undermine Google's competitive standing by affecting negotiations with its other partners, who would be able to use Google's internal analyses of terms and scenarios that were evaluated in negotiations with Apple to assess how Google may be approaching its negotiations with those other partners.

*     *     *     *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th  day of August 2023, in   Manhasset, New York                    .

Elizabeth Daly