IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>                                Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>                                Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

**DOJ PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO
PRECLUDE REBUTTAL TESTIMONY OF MICHAEL A. M. DAVIES**

DOJ Plaintiffs oppose Google's motion to preclude the rebuttal testimony of Michael Davies—a motion that Google waited until the eve of rebuttal to file, nearly ***seven weeks*** after learning that DOJ Plaintiffs may call Mr. Davies as a rebuttal witness. *See* ECF No. 754 (Def. Mot.). As demonstrated below, Google's motion runs counter to the facts and finds no support in case law.

DOJ Plaintiffs may call Mr. Davies, an expert in the smartphone industry, to refute the possible testimony of Professor Kevin Murphy, one of Google's expert witnesses. To that end, Mr. Davies' opinions are highly relevant, as evidenced by the fact that he and Prof. Murphy cite each other's reports. Furthermore, Google cites no case law for its novel proposition that DOJ Plaintiffs are prohibited from offering Mr. Davies in rebuttal because we initially listed him as an affirmative expert. In any event, because Google has known since September 17, 2023, that DOJ Plaintiffs might call Mr. Davies in our rebuttal case, the Court should reject Google's motion arguing that his testimony was required to occur during DOJ Plaintiffs' case-in-chief.

I.      **Mr. Davies' Rebuttal Testimony Is Relevant**

Mr. Davies' anticipated rebuttal testimony is relevant to the issues in this case and will aid the Court in adjudicating Plaintiffs' monopoly maintenance claim. DOJ Plaintiffs retained Mr. Davies to opine on how commercial realities within the smartphone industry compel companies—particularly original equipment manufacturers, or OEMs—to enter into mobile application distribution agreements (MADAs) and other search distribution agreements, such as revenue share agreements (RSAs), with Google.

To that end, Mr. Davies' core opinions relate to the MADAs and the RSAs. *See*, *e.g.*, Davies Initial Report at ¶ 12 (June 6, 2022) (summarizing conclusions). For example, Mr. Davies' initial expert report described the evolution of the Android Ecosystem, explained how commercial realities in the industry provide smartphone vendors with little choice but to accept Google's terms for app distribution so that the OEMs can access Google's proprietary applications and services, and further explained that these vendors must accept Google's terms to access payments from Google. *See id*. at ¶¶ 32–38, 53–62, 77–87. Further, Mr. Davies' reply report opined on why Prof. Murphy's analysis of the MADA is flawed and demonstrated why Prof. Murphy's discussion of existing differentiation in Android fails to show that Google's contracts are not restrictive. *See* Davies Reply Report at ¶¶ 34–49, 52–55 (Sept. 26, 2022). For example, Mr. Davies explained:

- Prof. Murphy purports to respond to my conclusions in his rebuttal report, but his analysis includes both errors and misleading characterizations [as he] ignores the practical reality that smartphone vendors have no viable alternative to Google's proprietary apps and APIs and consequently, their weak bargaining position during MADA contract negotiations.

- Prof. Murphy claims that the MADA reflects "an 'exchange' or a 'barter'" in which Google simply provides a license for its proprietary Android OS, apps, and APIs in exchange for the

- preinstallation and prominent placement of Google apps. But in doing so Prof. Murphy fails to acknowledge Google's negotiating leverage when partnering with smartphone vendors.

- Prof. Murphy also asserts that there can be no element of coercion in the MADA because smartphone vendors also entered into MADA agreements at Android's inception, 'when Android clearly lacked any purported market power ... and its success was far from certain.' As he notes, however, the market dynamics were very different in 2008.

*Id*. ¶¶ 35–36, 38. Accordingly, Mr. Davies' opinions are relevant and should be considered if the DOJ Plaintiffs call him during rebuttal.

Google argues that Mr. Davies' testimony is no longer relevant following the Court's decision on summary judgment. *See* Def. Mot. at 6–7 (contending that the "irrelevance of Mr. Davies' opinions has only become more pronounced" given the Court's ruling on the ACCs and AFAs). But this is a red herring: DOJ Plaintiffs long ago informed Google that we do not intend to call Mr. Davies to speak to these issues. *See* Email from Karl Herrmann (attached as Ex. 1) at 1 (Aug. 16, 2023) ("Plaintiffs provide notice of their intent to withdraw opinion 5 from the expert report of Michael Davies."). If Prof. Murphy raises any of the points addressed in Mr. Davies' report, then Mr. Davies' response will, of course, be relevant. Thus, the Court should reject Google's claim that Mr. Davies' analysis is not relevant.

**II.    Mr. Davies' Rebuttal Testimony Will Respond To Expert Testimony**

In a related argument, Google contends that Mr. Davies' anticipated rebuttal testimony should be barred because it will only respond to fact witnesses. Def. Mot. at 4–5. In support of this argument, Google references the September 17, 2023 email from DOJ Plaintiffs to the Court noting that Mr. Davies intends to "respond[] to fact witnesses on OEM and carrier options." Def. Mot. at 1–2 (citing ECF No. 754-1 (Def. Mot. Ex. 1) at 2–3). Unfortunately, this email was incomplete, as Google understood given that Mr. Davies' reply report directly addresses Prof.

3

Murphy's opinions. Indeed, Prof. Murphy and Mr. Davies each reference the other numerous times in their respective reply and rebuttal reports, showing the extensive connection between their opinions. *See* Murphy Rebuttal Report (Aug. 5, 2022) (referencing Mr. Davies 133 times); *see also* Davies Reply Report (referencing Prof. Murphy 160 times).

Accordingly, the Court should reject Google's efforts to prevent the DOJ Plaintiffs from fully addressing Prof. Murphy's contemplated testimony.

### III. Mr. Davies Is A Proper Rebuttal Witness

The Court should also reject Google's assertion that Mr. Davies is not a proper rebuttal witness as unsupported and untimely. *See* Def. Mot. at 3–4. Google takes issue with the fact that DOJ Plaintiffs may call Mr. Davies in our rebuttal case, arguing that his testimony "was the precise topic of his affirmative opinions in this case." *Id*. at 3 (emphasis removed). Thus, Google posits, Mr. Davies' opinions should have been offered in Plaintiffs' case-in-chief. *Id*. As an initial matter, even if DOJ Plaintiffs did as Google proposes and called Mr. Davies in our case-in-chief, we nonetheless might still need to call him in rebuttal—similar to our approach with Prof. Michael Whinston—to respond to any testimony that Prof. Murphy provides.

Notably, however, Google cites no case law holding that an expert witness who was initially designated as an affirmative witness is barred from providing rebuttal testimony. Instead, Google relies on *Settling Devotional Claimants v. Copyright Royalty Bd.*, 797 F.3d 1106, 1108 (D.C. Cir. 2015), to argue that DOJ Plaintiffs "should not be permitted to re-label affirmative opinions as 'rebuttal.'" Def. Mot. at 2. But *Settling* does not address whether a party may shift an expert from its case-in-chief to rebuttal. *Settling* merely addressed the contents of "written direct statements" in proceedings before Royalty Judges. 797 F.3d at 1111. Other cases

4

that Google cites are readily distinguishable.[1] Indeed, binding case law in the D.C. Circuit makes clear that "a district court has 'broad discretion in determining whether to admit or exclude expert testimony' and no *per se* rule exists that new expert testimony is inappropriate rebuttal testimony." *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 416 (D.D.C. 2017) (citing *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996)). Because Mr. Davies' testimony would go "directly to refuting" Dr. Murphy's opinions, raised for the first time at the end of Google's defensive case, Mr. Davies' testimony would be proper. *See United States v. Philip Morris USA, Inc.*, 2022 U.S. Dist. LEXIS 68522, *31–32 (D.D.C. Apr. 13, 2022) (holding that the expert's analysis "squarely 'contradict[s] or rebut[s] evidence' discussed by Dr. [Kevin] Murphy and therefore qualif[ies] as proper rebuttal testimony.") (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)).

Furthermore, Google's own delay (and resulting prejudice to DOJ Plaintiffs) cuts against granting Defendant's motion. On September 17, 2023—at the beginning of trial and well before the close of our case-in-chief—DOJ Plaintiffs notified the Court and Google that we no longer intended to call Mr. Davies in our case-in-chief but reserved the right to call him as a rebuttal witness if needed. *See* Def. Mot. Ex. 1, at 2–3. Notably, Google did not lodge an objection at that

---

[1] *See* Def. Mot. at 3–4 (citing *Upshur v. Shepherd*, 538 F. Supp. 1176, 1179–80) (E.D.Pa. 1982), *aff'd*, 707 F.2d 1396 (3d Cir. 1983) (the excluded expert rebuttal testimony was not offered to rebut the testimony of another expert and was, among other things, cumulative of plaintiff's testimony on direct); *Braun v. Lorillard Inc.*, 84 F.3d 230, 236–37 (7th Cir. 1996) (plaintiff's lawyers delayed in locating the expert and "first announced their intention to call the witness ten days before the trial," which resulted in the district court denying their request to call him during plaintiff's affirmative case; the district court also denied their subsequent request to call the expert in rebuttal); *Faigin v. Kelly*, 184 F.3d 67, 85–86 (1st Cir. 1999) (district court did not abuse its discretion in denying rebuttal when plaintiff knew that the quality of investments would be "hotly contested" in the case and failed to offer an expert to opine on investment losses in its case-in-chief; as a result, "nothing new or unanticipated surfaced during the defense case that even arguably changed the topography of the battlefield.")).

time. If Google believed that DOJ Plaintiffs were required to call Mr. Davies as an affirmative expert witness, Google should (and could) have raised its challenge then, which would have provided the parties with an opportunity to raise the issue when DOJ Plaintiffs still had an opportunity to call Mr. Davies in our case-in-chief. The Court should not allow Google to benefit from its strategic decision to sit on its motion until DOJ Plaintiffs completed our case-in-chief and a mere days before we are scheduled to begin rebuttal. Indeed, such a result would prejudice DOJ Plaintiffs.

## CONCLUSION

For the above reasons, the Court should deny Google's motion to preclude Mr. Davies from testifying in DOJ Plaintiffs' rebuttal case.

Dated: November 6, 2023

Respectfully submitted,

*/s/ Kenneth M. Dintzer*
Kenneth M. Dintzer
*/s/ Veronica N. Onyema*
Veronica N. Onyema (D.C. Bar #979040)
Jeremy M. P. Goldstein
Sara T. Gray

U.S. Department of Justice
Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff*
*United States of America*

By: */s/ Margaret Sharp*
James Lloyd, Chief, Antitrust Division
Margaret Sharp, Assistant Attorney General
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Margaret.Sharp@oag.texas.gov

*Counsel for Plaintiff State of Texas*


By: */s/ Matthew Michaloski*
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Matthew.Michaloski@atg.in.gov

*Counsel for Plaintiff State of Indiana*


By: */s/ Keaton Barnes*
Keaton Barnes
Arkansas Bar No. 2022161
Assistant Attorney General
Office of Tim Griffin, Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Keaton.Barnes@ArkansasAG.gov

*Counsel for Plaintiff State of Arkansas*

By: */s/ Brian Wang*
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney General
Brian Wang, Deputy Attorney General
Carolyn Jeffries, Deputy Attorney General

Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Brian.Wang@doj.ca.gov

*Counsel for Plaintiff State of California*


By: */s/ Lee Istrail*
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex Enforcement Chief, Antitrust Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*


By: */s/ Daniel Walsh*
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: ⎯⎯/s/ *Philip R. Heleringer*⎯⎯
Daniel Cameron, Attorney General
J. Christian Lewis, Commissioner of the Office of Consumer Protection
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
Office of the Attorney General, Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*


By: ⎯⎯/s/ *Christopher J. Alderman*⎯⎯
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*


By: ⎯⎯/s/ *Scott Mertens*⎯⎯
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By: */s/ Stephen M. Hoeplinger*
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*


By: */s/ Hart Martin*
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*


By: */s/ Anna Schneider*
Anna Schneider
Bureau Chief
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

By: /s/ *Mary Frances Jowers*
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy Attorney General
Mary Frances Jowers, Assistant Deputy Attorney General
Rebecca M. Hartner, Assistant Attorney General
Office of the Attorney General, State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*


By: /s/ *Gwendolyn J. Lindsay Cooley*
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, I caused the foregoing document to be filed with the Clerk of Court using the Court's Electronic Document Filing System, which served copies on all counsel of record.

*/s/ Veronica N. Onyema*
Veronica N. Onyema

*Counsel for Plaintiff United States of America*