IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | Redacted |

**UNITED STATES PLAINTIFFS' SUBMISSION REGARDING
THE PUBLIC POSTING OF JX0024 AND JX0033**

Pursuant to the Court's orders governing the posting of trial materials (*see* ECF Nos. 640, 647, 725, and 750), Plaintiffs respectfully request the Court's resolution of disputed issues regarding the public posting of the portions of JX0024 and JX0033 that were introduced at trial for judicial consideration. In response to a request from the press pursuant to ECF No. 750 ¶ 8.a., Plaintiffs seek to publicly post redacted versions of JX0024 (Exhibit A) and JX0033 (Exhibit B) that reflect information appropriate for public disclosure. As demonstrated below, *United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980), supports the immediate public disclosure of both documents in the form reflected in the exhibits to this submission. Counsel for Google and Apple indicate that they oppose this request. Plaintiffs enclose as Exhibit C and Exhibit D versions of JX0024 and JX0033, respectively, indicating the additional redactions Apple seeks (shown in yellow highlighting) and Google seeks (indicated with red boxes). Plaintiffs do not oppose redactions shown in green highlighting.

## ARGUMENT

A court must consider six factors before sealing part of a judicial record over the strong presumption of public access to judicial proceedings: (1) the need for public access to the material at issue; (2) the extent of previous public access to the material at issue; (3) the fact of objection and the identity of the objector; (4) the strength of property and privacy interest asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the material was introduced during the judicial proceedings. *Hubbard*, 650 F.2d at 317–21; *see also* Tr. 4363:17–4364:1. As the Court has recognized, the first and the sixth factors favor public disclosure in this case because the strength of the public interest is high for material that was introduced at trial in a government enforcement action for purposes of the Court's consideration in factual and legal determinations. *See, e.g.*, Tr. 4364:2–9; 4365:3–8. Plaintiffs have carefully considered the additional factors to offer proposed public disclosure of portions of JX0024 and JX0033, which also weigh in favor of disclosure.

I. **The *Hubbard* Factors Support The Public Disclosure Of JX0024 As Proposed By Plaintiffs**

JX0024 is the Joint Cooperation Agreement (JCA) entered between Google and Apple in 2014. The parties' impasse concerns Paragraphs 3 and 4 of Section 1, entitled Commercial Deal. These two paragraphs describe exclusions for individual countries if certain conditions are met. Consistent with the Court's previous direction, Plaintiffs do not oppose maintaining redaction over the specific usage share percentage and length of the condition.

Google executive Joan Braddi has already publicly confirmed the crux of Paragraph 4.[1] Neither Google nor Apple objected to Plaintiffs' questions to Ms. Braddi. Apple executive

---

[1] *Compare* Tr. 4934:19–4935:2 ("Q. And focusing on No. 4, what that provision contemplates, just at a high level, is that Apple can ask Google exclude individual countries from the

2

Eduardo Cue's public and unsealed testimony also describes these JCA provisions. Tr. 2477:11–2478:8 (open-court testimony during Plaintiffs' direct examination); Tr. 2579:12–17 (unsealed Cue testimony during Google's closed-court cross-examination). Because the public, without objection from Apple or Google, is already aware of the essence of these provisions, the second, fourth, and fifth *Hubbard* factors favor public disclosure of JX0024 as proposed by Plaintiffs.

## II. The *Hubbard* Factors Support The Public Disclosure Of JX0033 As Proposed by Plaintiffs

JX0033 is the Amendment to the Information Services Agreement entered between Google and Apple on September 30, 2016 (2016 ISA). The parties' impasse concerns Section 1(a) and portions of Sections 1(c), 2, and 4.

### A. Sections 1(a), 1(c), and 4 of JX0033

The parties dispute public disclosure of two sentences in Section 1(a), one sentence in Section 1(c), and one definition in Section 4, which all concern the "Permissible Software Default Use." This defined term refers to the 2016 ISA's restriction that Apple's implementation of Google as default in Safari must remain "substantially similar" to its implementation in 2016.

Redacted

---

agreement if certain conditions are met. Is that fair? A. Yes. Q. And the condition that Apple and Google agreed upon is a measure of market share in a general search market by country; is that right? A. Yes."), *with* JX0024 at -6822    Redacted

Redacted

Google and Apple agree that the definition of the term "Permissible Software Default Use" and the corresponding general restriction in Section 1(a) of the 2016 ISA may be unsealed. However, they seek to maintain redaction Redacted

Redacted

Redacted

Redacted

Redacted

The Court has already recognized that the Permissible Software Default Use term represents [Redacted] and has therefore allowed examination about this term generally. Tr. 2430:13–21. Plaintiffs have followed this directive, while in fact *Google's* counsel read the second paragraph of Section 1(a)—the first clause listed above—into the record. Tr. 5076:5–20 (By Mr. Schmidtlein: "Q: And if you look at the next paragraph, it says: "Subject to the permissible software default use, Apple shall not be limited in its ability to alter, modify and innovate its browser software."). Google's counsel also characterized the second clause listed above, from the definition of [Redacted] in Section 1(a). Tr. 5076:1–9 (By Mr. Schmidtlein: "does this provision give Apple the ability to answer any query, divert any query to itself to provide its own search result so long as Apple believes it provides a superior user experience?")

Despite this disclosure, Google and Apple have sought to redact much of these portions of the 2016 ISA. Yet as the Court has already recognized, passages read into the record during a public or unsealed session have been made public. Tr. 5965:13–18. Accordingly, at a minimum, the second and fifth *Hubbard* factors compel public disclosure of the first two disputed clauses, from Section 1(a) of JX0033.[2]

The course of trial has heightened the need to publicly disclose the 2016 ISA's use of the Permissible Software Default Use because Google and Apple witnesses have introduced confusion or testified incorrectly about the term's competitive effect. Most recently, Mr. Pichai testified in response to his counsel's questions that the "substantially similar" language in the Permissible Software Default Use clause does not limit Apple's ability to answer queries on its

---

[2] Although the Court previously indicated that these terms should not be disclosed during Mr. Cue's testimony, *see* Tr. 2420:18–2421:8, 2430:22–2431:23, the subsequent statements by Google's counsel and testimony from Google witnesses warrant disclosure at this stage.

own.[3] On cross, Mr. Pichai testified incorrectly that the provision in the ISA that allows Apple to improve the user experience is not subject to the Permissible Software Default Use. *Cf* Tr. 7704:12–20[4] *with* Section 1(a) of JX033. Ms. Braddi, Google's partner advisor for Apple, *recanted prior sworn testimony* claiming that the term affected the rate at which Apple triggered its own Suggestions. *Compare* Tr. 5017:20–5018:23 (reviewing deposition testimony confirming that the Permissible Software Default Use required Apple "to keep their trigger for offering more and more suggestions to the user limited to what the trigger rates that they were doing as of September 2016."), *with* Tr. 5075:6–5076:11 (recanting deposition testimony). Ms. Braddi instead offered two additional explanations for this term's meaning. Both of these differed from the explanation she offered in her deposition, but each described ways that the provision limits the scope of Apple's permissible conduct.[5] The Court and the public have also seen contemporaneous documents illustrating these limitations.[6]

---

[3] Tr. 7664:7–22 ("Q. Did Google seek to have this new language included in the 2016 agreement to restrict Apple's ability to directly answer queries from Apple's own index of information? ...THE WITNESS: No… I think the agreement captures that clearly so that Apple can continue to improve their services the way they see fit, and they've continued to do that.")

[4] "Q. And Apple's ability to improve the user experience on iPhones is subject to this substantially similar provision, correct? A. That's not my understanding. My understanding is that the substantially similar provisions….has nothing to do with -- and we clearly called it out in the agreement, that Apple can improve its own services, and so they can choose whatever they want to do with it."

[5] Tr. 5016:25–5017:3 ("THE COURT: Just so I understand what you're saying, the substantially in use language, that in your view is a reference to quality of the suggestions? THE WITNESS: Well, it's quality and presentation."); Tr. 5078:7–15 ("Q. And can you explain what Mr. Arora is referring to? A. And do a revenue share deal with them. It's the economics of selling off the traffic to other bidders and leaving the default with nothing left. Q. Is this concern that Mr. Arora is articulating here the same concern that motivated Google's inclusion of the permissible software default use language in the 2016 agreement? A. Yes it is.").

[6] *See, e.g.*, UPX0309, at -823 ("However, ~2+ yrs ago we saw them increasingly offer the user other suggested redirections. This concerned us which is why we added into the agmt that

In short, Google and Apple have created a significant dispute about the meaning of this material term and the subsequent clauses that specify ways in which it applies. This has itself generated public interest. *See* Exhibits E & F.[7] Google and Apple should not be permitted to disclose their position but deny the public the opportunity to independently assess the full record, including the actual terms that Plaintiffs offer as evidence. Accordingly, the second, fourth, and fifth *Hubbard* factors support disclosure of the Permissible Software Default Use term and subsequent references to it in the 2016 ISA.

B.     **The First Sentence of Section 2 of JX0033**

The first sentence of Section 2 obligates ⬛ Redacted ⬛ Plaintiffs' expert

---

they could not expand farther what they were doing in Sept 2016 (as we did not wish for them to bleed off traffic)" (unredacted and posted online)); UPX0895, at -904 ("[Apple] has agreed not to implement any changes to the Safari Suggest product that could meaningfully change or divert the Safari traffic they refer to Google.com beginning in Sept 2016. . . . We wish to go back an[d] categorize the search queries in Sept 2016 and measure the changes since to determine if they are meeting the obligations." (unredacted and posted online)); UPX2014, at -896 ("We need to re-evaluate the changes to the % of non-conversion against the 'suggest' pattern that Apple Safari exhibit back in Sept 2016 to identify where they may not have 'remain substantially similar in use'" (unredacted and posted online)); UPX2050, at -652 ("We have been concerned for some time that search traffic cannibalization may be occurring on Apple devices via a few factors, primarily by Safari 'Suggest' but possibly also through Siri[.] Google has been vocal to Apple about query cannibalization concerns for the past two years[.] We even included a provision in the most recent agreement to protect against further cannibalization." (unredacted and posted online)). And other key witnesses have also offered disputed explanations for the term. Tr. 2345:11–15 (John Giannandrea); Tr. 2601:3–2602:13 (Eduardo Cue, sealed testimony).

[7] Exhibit E, Jon Victor, *How Google Kept Apple's Search Ambitions in Check*, The Information (Oct. 25, 2023), https://www.theinformation.com/articles/how-google-kept-apples-search-ambitions-in-check ("By 2016, however, Google and Apple had changed their agreement to ensure that the iPhone maker kept its search product 'substantially similar' to how it was in September 2016, according to court testimony and newly published internal emails."); Exhibit F, Nico Grant, *Inside Google's Plan to Stop Apple From Getting Serious About Search*, The New York Times, Oct. 26, 2023) (describing Google's concerns about Apple using Suggestions to siphon queries away from Google).

7

Professor Michael D. Whinston testified in open court that the 2016 ISA gives Google "a right of first refusal should Apple decide to run ads on Siri or Spotlight." Tr. 5714:8–17. Google's counsel cross-examined Prof. Whinston on this term as well and displayed two successive slides (first used by Plaintiffs) on the public screen on this point for several minutes. Tr. 6063:1–13. Apple's counsel was present in the courtroom but did not object to Google's disclosure and public display of this information. Apple also withdrew its objection to disclosing this language following the conclusion of Prof. Whinston's examination. Apple and Google's consent to this open-court testimony supports public disclosure of this term in JX0033. Therefore, the second, third, fourth, and fifth *Hubbard* factors favor public disclosure.

        C.        **Additional Language in Section 4 of JX0033**

The language Plaintiffs seek to disclose in Section 4 of JX0033 shows that Google and Apple share revenue, a fact well-known to the public and central to this case. The second *Hubbard* factor thus strongly favors the public disclosure proposed by Plaintiffs. Further, Plaintiffs do not oppose redaction of the revenue-share percentages, consistent with the Court's direction during trial, and also do not presently seek to disclose definitions and implementation terms that have not been shown to the Court as part of either party's examination.[8] These concessions eliminate any argument Google or Apple might raise as to the fourth and fifth *Hubbard* factors.

---

[8] Plaintiffs reserve the right to seek to publicly post the entirety of Google's anticompetitive agreements without redaction at a later date, consistent with prior precedent in this Circuit. *See, e.g.*, US v. Microsoft Corporation [Browser and Middleware] Trial Exhibits, https://www.justice.gov/atr/us-v-microsoft-corporation-browser-and-middleware-trial-exhibits (posting 50+ Microsoft agreements without redaction).

## **CONCLUSION**

For the above reasons, the Court should allow the public posting of JX0024 and JX0033 as described in this submission and the accompanying exhibits.

Dated: November 6, 2023

Respectfully submitted,

*/s/ Karl E. Herrmann*
Kenneth M. Dintzer
Meagan K. Bellshaw
Matthew Jones (D.C. Bar #1006602)
Karl E. Herrmann (D.C. Bar #1022464)
Veronica N. Onyema (D.C. Bar #979040)
Michael A. Rosengart (D.C. Bar #1671047)
U.S. Department of Justice
Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff*
*United States of America*

By: */s/ Margaret Sharp*
James Lloyd, Chief, Antitrust Division
Margaret Sharp, Assistant Attorney General
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Margaret.Sharp@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By: */s/ Matthew Michaloski*
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director, Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Matthew.Michaloski@atg.in.gov

*Counsel for Plaintiff State of Indiana*


Matthew M. Ford
Arkansas Bar No. 2013180
Assistant Attorney General
Office of Attorney General Tim Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@ArkansasAG.gov

*Counsel for Plaintiff State of Arkansas*


By: */s/ Brian Wang*
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney General
Brian Wang, Deputy Attorney General
Carolyn Jeffries, Deputy Attorney General

Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Brian.Wang@doj.ca.gov

*Counsel for Plaintiff State of California*

10

By: /s/ Lee Istrail
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex Enforcement Chief, Antitrust Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*


By: /s/ Daniel Walsh
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*


By: /s/ Philip R. Heleringer
Daniel Cameron, Attorney General
J. Christian Lewis, Commissioner of the Office of Consumer Protection
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
Office of the Attorney General, Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

By: */s/ Christopher J. Alderman*
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*


By: */s/ Scott Mertens*
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*


By: */s/ Stephen M. Hoeplinger*
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

12

By: */s/ Hart Martin*
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*


By: */s/ Anna Schneider*
Anna Schneider
Bureau Chief
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*


By: */s/ Mary Frances Jowers*
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney General
C. Havird Jones, Jr., Senior Assistant Deputy Attorney General
Mary Frances Jowers, Assistant Deputy Attorney General
Rebecca M. Hartner, Assistant Attorney General
Office of the Attorney General, State of South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

By: */s/ Gwendolyn J. Lindsay Cooley*
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

14