IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>      Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>      Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S RESPONSE TO UNITED STATES PLAINTIFFS'
SUBMISSION REGARDING THE PUBLIC POSTING OF JX0024 AND JX0033**

Google respectfully submits the following response to the DOJ Plaintiffs' Submission Regarding the Public Posting of JX0024 and JX0033 (ECF No. 759), which seeks to unseal several current provisions of the Information Services Agreement (ISA) between Google and Apple.

Notably, the DOJ Plaintiffs do not contend that the disclosure of these commercially sensitive provisions is necessary to facilitate an open court examination of any of the remaining witnesses scheduled to testify at trial.  Nor could they make such an argument, given that the witnesses familiar with the ISA have already been examined about its terms without any need to publish the precise language at issue, and without the DOJ Plaintiffs seeking or securing permission in advance of the examination to disclose these particular terms.

The DOJ Plaintiffs' submission instead suggests that there is some incremental benefit to posting on the Internet the particular language negotiated by the parties to the agreement, along with the open court testimony and other documents that are already publicly accessible.  The DOJ Plaintiffs have not demonstrated that the public's interest in access to these proceedings supports the additional disclosure of the particular contractual language at issue, in addition to all of the other formerly confidential information that has entered the public domain.  And in all events, any such interest in public access is outweighed by the strength of Google's and third party Apple's interests in the confidentiality of the provisions and the possibility of prejudice resulting from disclosure.  *United States v. Hubbard*, 650 F.2d 293, 320-21 (D.C. Cir. 1980).

As Google has previously indicated, further disclosure of the precise terms of the ISA would unreasonably undermine Google's competitive standing in relation to both competitors and other counterparties.  *See, e.g.*, Google's Oct. 3, 2023 Memo. Regarding the Confidentiality of the Testimony of Apple Employees (ECF No. 727) at 1-3.  Allowing competitors access to the

particular provisions that Google and Apple have negotiated in a confidential commercial agreement would give those competitors a one-sided advantage in renegotiating their own confidential agreements with Apple and preparing their own proposals to provide the services that Google currently offers under the ISA. Aug. 7, 2023 Declaration of Elizabeth Daly (ECF No. 740-4) ("Daly Decl.") at ¶ 5 (addressing the commercial sensitivity of the 2016 ISA Amendment); *see, e.g.*, Oct. 2, 2023 Trial Tr. at 3500:9-3501:9 (testimony of Microsoft CEO Satya Nadella) (confirming in response to questions regarding Microsoft's efforts "to get default positions on mobile devices" that "the one that we tried and continue to try, quite frankly, is the Apple default … and we've had a series of dialogues with them over the years on it"). Moreover, disclosure of the terms that Google and Apple have reached in their current agreement would affect Google's future negotiations with browser developers and other counterparties whose agreements reflect a range of different compromises based on the partners' own objectives. Daly Decl. at ¶ 6.

Although the DOJ Plaintiffs' submission is predicated in large part on the observation that some of the terms in question have been addressed to some degree in open court, the precise scope and terms of the agreements have not been disclosed and the more generalized access that has already been afforded to the public cuts against further disclosure rather than in favor of it. That is particularly true here because the precise language agreed upon by Google and Apple is of greatest interest to sophisticated businesspeople and attorneys who negotiate these kinds of contracts. In other words, the competitive harm of disclosure increases materially when it involves the specific bespoke terms of a confidential agreement, in addition to the witness testimony about those terms that is already public as a consequence of this trial.

Consistent with the Court's guidance and Google's commitment to public access to the proceedings, Google did not seek to seal any portion of the recent testimony regarding the ISA by witnesses such as Joan Braddi, Sundar Pichai, or Professor Michael Whinston. That approach reflected a reasonable balancing of the *Hubbard* factors by simultaneously maximizing public access to the proceedings and shielding Google to some extent from the unjustified competitive harm that would result from publishing the precise terms of the agreements. *See* Oct. 4, 2023 Trial Tr. at 4368:4-14 (denying a number of requests to seal following a line-by-line review of transcripts, but granting a request "that specific deal terms" in the Google-Apple ISA "be kept under seal" because if disclosed they could create a "competitive disadvantage for Google and any future negotiations with potential partners"). There is no basis for the DOJ Plaintiffs to retroactively upend this balance and exploit Google's willingness to conduct its examinations about competitively sensitive provisions in open court by using that transparency to harm Google's ability to engage in ordinary commercial negotiations going forward.

**I.     JX0024 (the 2014 JCA)**

  **A.     Sections 1.3 and 1.4**

The sections of JX0024 (the 2014 JCA) that DOJ seeks to unseal remain in effect today. After evaluating the *Hubbard* factors, Google notified the DOJ Plaintiffs that it does not seek to seal the historical fact that Apple negotiated the option to select a different default search engine in three countries specified in Section 1.3 of the 2014 JCA. Rather, Google only seeks to seal what the DOJ Plaintiffs have characterized as an additional provision "describ[ing] exclusions for individual countries if certain conditions are met." DOJ Br. at 2. Disclosure of this provision would harm Google's competitive standing by informing competitors in certain countries of the standards that do (and do not) apply to determining any such "exclusions." And disclosure

3

would also affect future negotiations with other counterparties, whose agreements differ in this respect and others. *See* Daly Decl. at ¶¶ 5-6.

The DOJ Plaintiffs' assertion that open court testimony in this case has "already publicly confirmed the crux" of this paragraph demonstrates that there is little or no marginal benefit to disclosing the precise terms, which would only serve to undermine Google's competitive standing. Furthermore, the disclosure of this term by DOJ during Ms. Braddi's examination occurred without any advance notice to Google, notwithstanding Plaintiffs' obligation to notify Google of their "intention to publicly disclose information previously identified as confidential information during the discovery phase." Aug. 15, 2023 Order (ECF No. 647) at ¶ 1. If the DOJ Plaintiffs disagreed with the redactions to the 2014 JCA that Google provided pursuant to this process, they should have raised the issue with Google and, if necessary, the Court rather than eliciting testimony about what they now attempt to characterize as the "crux" or "essence" of the sealed provision. DOJ's decision to disregard the Court's order and Google's expressly stated confidentiality interests cannot be a basis for disclosing the provision *in haec verba*.[1]

## II.   JX0033 (the 2016 ISA Amendment)

### A.   Section 1(a), Section 1(c), and the Fourth Paragraph of Section 4

Google opposes the DOJ Plaintiffs' request to unseal the precise language of the second paragraph of Section 1(a), which the parties and the Court addressed in advance of Mr. Cue's

---

[1] To be clear, Google does not oppose the unsealing of the portions of Section 1.3 of the 2014 JCA described in the excerpts of Eduardo Cue's testimony cited by the DOJ Plaintiffs. *See* DOJ Br. at 2-3 (citing Trial Tr. 2477:11-2478:8 and Trial Tr. 2579:12-17). Google's request is limited to the dates in Section 1.3 and the particular language of Section 1.4. *See* Ex. C to DOJ's Br. (ECF 759-3).

testimony on September 26. Following review of the parties' submissions on the issue,[2] the Court addressed the sealing of certain provisions of the ISA, including Section 1(a). Based on the Court's guidance, *e.g.*, Sept. 26, 2023 Trial Tr. at 2430:12-2431:23, Google agreed to unseal the entirety of the first paragraph of Section 1(a) and certain defined terms in that paragraph. With respect to the second paragraph of Section 1(a), however, the Court observed that "[t]his particular term … is the kind of commercially sensitive term that ought to be discussed in closed session and not be made part of the public record in whatever documents get released." *Id.* at 2431:18-23. Google has applied that guidance in seeking to seal the second paragraph of Section 1(a) and three other paragraphs that present the same degree of commercial sensitivity insofar as they incorporate language relating to ███████████████████████████████ ███████████████████████████████████ *Id.* at 2430:22-25.

The DOJ Plaintiffs' contention that counsel has quoted or paraphrased short excerpts of the 2016 ISA Amendment does not support their assertion that the identified provisions ought to be unsealed. As discussed, Google has made extensive efforts to keep the courtroom open throughout its examinations, even when addressing highly sensitive agreements. That is indicative of the *Hubbard* balancing that has occurred on an ongoing basis, and does not mean that an entire provision—or series of provisions—should "be made part of the public record in whatever documents get released." *Id.* at 2431:18-23.[3]

---

[2] *E.g.*, Google's Sept. 26, 2023 Memo. Regarding the Confidentiality of JX0033, UPX0586, UPX0588, and UPX0594 (ECF No. 718).

[3] This principle is not unique to a provision of the 2016 ISA Amendment, as there have been a number of instances throughout trial where public testimony has been facilitated by Google's counsel referring on cross-examination to a document or portion of a document that a non-party contends should remain sealed and has remained sealed.

Even setting aside the specific phrases quoted by the DOJ Plaintiffs in their submission, the paragraphs at issue are commercially sensitive because they contain bespoke definitions of the kinds of terms that are individually negotiated with other browser developers as well as Android OEMs and carriers. More specifically, the parties to agreements with Google negotiate which search queries are subject to revenue share payments, and the definitions of the terms that the DOJ Plaintiffs seek to unseal—████████████████████████████████████—are not uniform across agreements. Disclosure of these terms would unjustifiably impact Google's individualized negotiations while giving competitors who enter similar agreements an unwarranted insight into the terms that Google and Apple agreed on. *See* Daly Decl. at ¶¶ 5-6.

      **B.**    **The First Sentence of Section 2**

The DOJ Plaintiffs seek to unseal the first sentence of Section 2 of the 2016 ISA Amendment on the basis that their expert witness testified about it in open court. *See* DOJ Br. at 7-8. Again, however, that testimony occurred without any advance notice to Google. In yet another instance of Plaintiffs failing to comply with the August 15, 2023 Order (ECF No. 647), the DOJ Plaintiffs included reference to Section 2 of the ISA in the demonstratives used with Professor Whinston even though both Google and Apple had expressly indicated that the provision should remain redacted, and even though Plaintiffs had never followed up on that position or raised the provision with the Court during the parties' prior exchange regarding the 2016 ISA Amendment.

After Apple's counsel immediately objected in writing to the unauthorized disclosure, DOJ replied "that Plaintiffs may reveal high-level descriptions of [the] agreements" and "have not revealed the specific language of the agreement." Oct. 16, 2023 Email from Sarah Bartels. Having drawn a distinction between "high-level descriptions" and "the specific language of the agreement" with regard to the very provision at issue, the DOJ Plaintiffs should not be permitted

6

to use their own impermissible disclosure of a "high-level description" to justify unsealing the precise language of the contract. While there can be no justification for DOJ's unauthorized disclosure during Professor Whinston's direct examination, revealing the exact terms of a provision to competitors and other counterparties does create a greater risk of competitive harm, which is precisely why this provision (and the others addressed in the DOJ Plaintiffs' submission) should remain sealed.

      **C.**      **Second Paragraph of Section 4**

Finally, the DOJ Plaintiffs seek to unseal a specific provision of Section 4 of the 2016 ISA Amendment that they do not contend has been disclosed in any form in the public testimony to date. Google has explained that the provision is commercially sensitive, *see* Google's Oct. 3, 2023 Memo. Regarding the Confidentiality of the Testimony of Apple Employees (ECF No. 727) at 2, and even DOJ has previously indicated that "we don't intend to elicit that fact in open court" and "did not propose unredacting that part of the ISA." Sept. 26, 2022 Trial Tr. at 2442:1-3, 22-24.

The DOJ Plaintiffs' brief obscures the issue by asserting that the language in question merely "shows that Google and Apple share revenue, a fact well-known to the public and central to this case." DOJ Br. at 8. That is why neither Google nor Apple seeks to seal the first sentence of Section 4 (with the exception of the revenue share percentage itself, which no one seeks to unseal). *See* ECF No. 759-4 at 5 ("Effective September 1, 2016 Google will pay Apple [a redacted percentage] of its Net Ad Revenue for the remainder of the Term."). The provisions that follow, however, set forth the manner of calculating the revenue share owed, and like the revenue share percentage itself, they are a commercially sensitive part of the financial terms of an agreement currently in effect. Sept. 26, 2023 Trial Tr. at 2442:1-3 ██████████

██████████████████████████████████████

████████████████████████

The financial terms of Google's agreements with Apple and the other counterparties referenced throughout this case are individually negotiated and therefore differ from each other. *See* Daly Decl. ¶¶ 6, 8.  A provision such as the second paragraph of Section 4 is a paradigmatic example of a contractual term that should be sealed to prevent harm to the parties' competitive standing.  *See, e.g.*, *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (sealing information such as the "pricing terms, royalty rates, and guaranteed minimum payment terms" of a license agreement because, among other things, these terms are information that "plainly falls within the definition of 'trade secrets'").  Google's ability to engage in standard business negotiations would be significantly impaired if portions of the financial terms of its current agreement with Apple were unsealed, just as they would be if its confidential agreements with other partners were made public.  *See* Daly Decl. ¶ 6; *United States v. Anthem Inc.*, 2017 WL 8893757, at *2-3 (D.D.C. Jan. 18, 2017) (sealing trial materials where "providers and customers would have an unfair advantage when negotiating contracts with [the defendant]" if public disclosure occurred).  And competitors who seek to displace Google as the default search engine in Safari would obviously receive an unjustified advantage by knowing the financial terms Google has negotiated with Apple, including those that the DOJ Plaintiffs now seek to unseal. Daly Decl. ¶ 6; Oct. 2, 2023 Trial Tr. at 3656:8-13 (testimony of Microsoft CEO Satya Nadella) (indicating that Microsoft will keep trying to persuade Apple to switch the default on Safari from Google to Bing).

Dated:  November 8, 2023

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*