IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>██████████████ |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>██████████████ |

**DEFENDANT GOOGLE LLC'S RESPONSE TO COLORADO PLAINTIFFS'
EVIDENTIARY PROFFER RELATED TO SPECIALIZED VERTICAL PROVIDERS**

From the beginning of their case, Colorado Plaintiffs ("Plaintiffs") pursued a claim that Google's treatment of SVPs—in particular, purportedly limiting visibility of SVPs on the Google Search Engine Results Page ("SERP") and unfairly using SVP data—constituted anticompetitive conduct that harmed competition in purported general search engine and search advertising relevant markets. Plaintiffs lost that claim at summary judgment. Summary Judgment Op., ECF No. 624 at 46, 53.

In an eve-of-trial filing styled as an "Evidentiary Proffer Related to Specialized Vertical Providers," ECF No. 691, Plaintiffs announced their intention to introduce evidence relating to the very same SVP-related claim they lost at summary judgment. In particular, Plaintiffs say that they will solicit factual testimony and expert opinion relating to Google's design of specialized units appearing on the SERP, which Plaintiffs argue harms SVPs by pushing organic links down the page and increasing the number of text ads that the SVPs purportedly have to purchase. *Id.* at 2-9.[1] Consistent with this, Plaintiffs in their opening statement referenced harm to SVPs caused by the "lack of visibility through the introduction of universals by Google." Trial Transcript (Day 1) at 50:8-51:17.

Plaintiffs' proffer also signals their intention to examine their expert Dr. Wilfred Amaldoss about "Google's decision to limit the visibility of certain categories of SVPs on these [specialized SERP] features" and how this has "raised costs for these SVPs." Colo. Pls. Evidentiary Proffer, ECF No. 691 at 3 (citing Amaldoss Rep. ¶¶ 75-117, found in Section VI, "Google limits the visibility of SVPs on the Google SERP, making it harder for SVPs to effectively reach consumers."). They likewise intend to examine Dr. Jonathan Baker on how

---

[1] Plaintiffs have abandoned their claims about Google's purported misuse of SVP data. Colo. Pls. Evidentiary Proffer, ECF No. 691 at 3-4.

"SVPs in targeted verticals rely heavily on Google for user traffic, despite practices that increase their customer acquisition costs." *Id.* at 4 (citing, *inter alia*, Dr. Baker's opinions that "Google's restrictions on how SVPs appear and advertise, on their own and in combination with Google's demotion of algorithmic results, have in general increased SVP customer acquisition costs," Baker Rep. ¶ 292, which "has made SVPs less valuable potential partners for general search firms other than Google," *id.* at ¶ 300). And they cite a number of fact witnesses whose testimony will address how Google's SERP design allegedly pushes the SVPs' organic links down the page, resulting in less free traffic to the SVPs. *See, e.g.*, Colo. Pls. Evidentiary Proffer, ECF No. 691 at 5 (Arjan Dijk (Booking.com), "Google has made blue links 'unfindable.'"); *id.* at 6 (Jeff Hurst (Vrbo), "'squeez[ing] out' the blue links beneath the SERP unit"); *id.* (Matt Dacey (TripAdvisor), "lower location of the organic listings"); *id.* at 7 (Mark Stein (IAC/ANGI), "ANGI's results have been pushed further down the Google results page as a result of Google's introduction of Local Services Ads . . . and the local universal.").[2]

This proposed evidence is the exact same evidence that Plaintiffs relied on in their opposition to summary judgment. *See, e.g.*, Colo. Pls. Stmt. of Mat. Facts as to Which There is No Genuine Issue, ECF No. 465-1, ¶¶ 162-72, ("Google's Restrictions on SVP Visibility Harm SVPs, Including Decreased Traffic and Increased Customer Acquisition Costs"). The Court held on summary judgment that Plaintiffs did not make a *prima facie* showing that this very same conduct harmed competition in Plaintiffs' identified antitrust markets. Summary Judgment Op., ECF No. 624 at 50-53. This ruling therefore forecloses any argument from Plaintiffs that

---

[2] Notably, the fact witness testimony identified by Plaintiffs attributes the shift of organic links down the SERP and the consequent increase in SVPs' customer acquisition cost to Google's ***introduction*** of the specialized units on the SERP, a design choice that Plaintiffs did not challenge. *See* Colo. Pls. Mem. in Opp'n to Def.'s Mot., ECF No. 465, at 29-30 (acknowledging that Plaintiffs do not challenge Google's introduction of specialized units on its SERP).

Google's design of its SERP harms competition. *See id.* at 53 ("[T]he court holds that Plaintiffs have not shown that there is a genuine dispute of material fact that would warrant a trial to determine whether Google's treatment of SVPs has anticompetitive effects in the general search and related general-search ad markets.").

Plaintiffs now attempt to recast their SERP design arguments as relevant to monopoly power and market definition. *See* Colo. Pls. Evidentiary Proffer, ECF No. 691 at 2. This is a new theory which was not pleaded, about which Plaintiffs asked no questions at deposition, and about which Google had no clear notice and was thus unable to conduct its own discovery. Notably, the expert opinions cited in Plaintiffs' "proffer" regarding Google's SERP design or SVPs' increased customer acquisition costs are not found in the market power or market definition section of its experts' reports. Instead, consistent with Plaintiffs' litigation of the case up through summary judgment, the proffered opinions are in the conduct and anticompetitive effects sections. Allowing Plaintiffs to proceed on this new theory now will truly be trial by ambush.

Moreover, Google's SERP design and the consequences of that design to SVPs are not relevant to issues of monopoly power or market definition. Plaintiffs suggest they may introduce evidence that SVPs are among Google's biggest ad buyers, and that SVPs have no meaningful alternative to purchasing search ads on Google. While Google may dispute those points and the conclusions that Plaintiffs wish to draw from them, those arguments are fair game for trial. But Plaintiffs should not be allowed to reargue that Google's SERP design was anticompetitive or otherwise harmful to SVPs. *See* Colo. Pls. Evidentiary Proffer, ECF No. 691 at 2-3. Plaintiffs have never before suggested that those facts support Plaintiffs' relevant market or monopoly power allegations. There is no need for SVP witnesses to discuss Google's SERP design in

3

order to testify (as Plaintiffs proffer they will) that the SVP believes that it cannot replace Google with other marketing channels, *id.* at 6, or that the SVP cannot replace Google advertising with Bing advertising. *Id.* Allowing Plaintiffs to present a sideshow about conduct that the Court has already found does not present a triable issue of fact on the issue for which it was offered will lengthen an already extraordinarily long trial.

This raises a final issue. Google rightfully understood that the issues regarding its SERP design were out of the case following the Court's entry of summary judgment and has structured its trial presentation accordingly over the past month, including its preparations of key witnesses for their testimony. Google will be prejudiced if it has to switch course now to address Plaintiffs' new twist on previously-dismissed theories. To be clear, Google tried diligently to avoid this result. The Court entered its order on Thursday, August 3, 2023. On Friday, August 4, 2023, and again Tuesday, August 7, 2023 Google sent emails to Plaintiffs' counsel identifying fact witness and expert opinion testimony that it believed were no longer relevant to the case. Plaintiffs never responded to those emails. Google's first indication that Plaintiffs had a new theory as to the relevance of the SERP design issues came in Plaintiffs' August 28, 2023 pre-trial brief, which argued those issues were relevant to monopoly power. Google promptly raised the issue with the Court in the September 1, 2023 pre-trial hearing, which presumably has led to Plaintiffs' proffer. But for essentially the entire month of August, a critical pre-trial period, Plaintiffs sat silently while Google reasonably relied on the summary judgment ruling in preparing its case.

For these reasons, Google respectfully requests the Court preclude Plaintiffs from introducing evidence relating to Google's treatment of SVPs.[3]

Dated: September 18, 2023

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)

---

[3] Plaintiffs also state in their proffer and argued in their opening statement that they will seek to offer evidence in support of a claim that Google's distribution agreements weaken Microsoft such that it is a less attractive partner for SVPs and SEM tool providers. *See* Colo. Pls. Evidentiary Proffer, ECF No. 691 at 2; Trial Transcript (Day 1) at 64:7-15. Notably, this was never a claim Plaintiffs advanced in their Complaint, nor was it a subject that Plaintiffs explored in discovery. As a result, Google was never on notice of any such claim and therefore had no reason or opportunity to explore such a claim with witnesses during discovery. The first witness through whom Plaintiffs may seek to advance this claim is not expected for several weeks. In the interim, Google will meet and confer with Plaintiffs to try to resolve this issue, and will advise the Court should the parties reach an impasse.

2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*