# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRAD D. GREENSPAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9567-VCG |
| | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| CORPORATION, NEWS AMERICA | ) | |
| CORPORATION, WASHINGTON POST | ) | |
| CORPORATION, SONY CORPORATION, | ) | |
| SONY CORPORATION AMERICA, SONY | ) | |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) | |
| MEDIA VENTURES, INC., SONY BROADBAND | ) | |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) | |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) | |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) | |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) | |
| INC., JP MORGAN CHASE CORPORATION, | ) | |
| REDPOINT PARTNERS CORPORATION and | ) | |
| ARENT FOX LAW LLC INC., | ) | |
| | ) | |
| Defendants, | ) | |

## MOTION FOR TEMPORARY RESTRAINING ORDER (TRO)

Petitioner hereby moves this Honorable Court, pursuant to Rule 65, for a

temporary restraining order (TRO) to enjoin Respondents, News Corp[1], their officers,

agents, employees and anyone acting in active concert or participation,  and Sony Corp.[2]

---

[1] For purposes herein, "News Corp" shall mean: i) "News Corporation", ii) "21st Century Fox Inc.", iii) "Twenty-First Century Fox Inc.", iv) "21st Century Fox", v) "News America Corporation" vi) "21st Century Fox America", viii) "News Corporation, NI Group Limited f/k/a News International Limited, News Group Newspapers Limited"  ix) "Remainco", x)  "New Newscorp Inc" xi) "New News Corporation", xii) "NewCorp Holdings UK & Ireland",  xiii)  "NCH", xiv) eUniverse, Inc., xv) Intermix, Inc., xvi) Myspace, Inc., xvii) Intermix Media LLC, xviii) Myspace LLC)  XIV) Fox Interactive XV) Hulo, XVI) Entertainment Universe, Inc.

1

Plaintiff seeks a TRO:

I.      To enjoin News Corp and Sony Corp continuing to breach their duty to defend Plaintiff as described in concurrently filed Motion for Preliminary Injunction.

1.      Defendant & indemnifying parties attorneys Richards, Layton & Finger, ('RLF') and Jenner & Block's Stone and Shepard ('JB') , is "inappropriate due to"[3] both "actual" and "potential conflicting interests" between Plaintiff an "indemnified party" and News Corp "represented by such counsel". Actual conflicting interests include i) that such indemnifying party is not only an indemnifying party by way of being the successor to the corporation which is party to the 1999 Registration Rights Agreement but that such indemnifying party is also named in the verified complaint as having taken one or more unlawful or illegal actions that damaged Plaintiff after the September 30, 2005 acquisition of Intermix and further also allegedly aided and abetted other defendant's unlawful or illegal acts which damaged Plaintiff or were breaches of agreements such parties violated that damaged Plaintiff. ii) RLF and MNAT were law firms retained by

---

[2] For purposes herein, "Sony Corp" shall mean: i) Sony Corporation, incorporated in Japan ii) Sony Corporation America, a Delaware corporation iii)  Sony Music Entertainment Inc., a Delaware Corporation iv) 550 Digital Media Ventures, Inc. ("550 DMV"), a Delaware Corporation v)  Sony Broadband Entertainment, Inc., vi) Sony Entertainment Inc.,vii)  Sony Music Holdings Inc., viii) Eric Seiler ix) Michael S. Palmieri x) FRIEDMAN KAPLAN SEILER & ADELMAN LLP xi) Kevin M. Coen, xii) David Teklits xiii) MORRIS, NICHOLS, ARSHT & TUNNELL LLP

[3] "an indemnified party shall have the right to retain its own counsel, with the reasonably incurred fees and expenses of one such counsel to be paid by the indemnifying party, if representation of such indemnified party by the counsel retained by the indemnifying party would be inappropriate due to actual or potential conflicting interests between such indemnified party and any other party represented by such counsel in such proceeding." (eUniverse, Inc. (Ex 10.08) "Entertainment Universe, Inc. Registration Rights Agreement, dated as of April 1999" (FORM 10) (June 11, 1999))

and indemnified by Intermix, the same party that is indemnifying party to indemnified party Plaintiff,  that took and represented such company in adverse actions and matters against Plaintiff before being acquired by the successor indemnifying party on September 30, 2005. iii) RLF, JB, MNAT are all actual defendants[4] that participated in the unlawful activities described in the verified complaint and Motion To Supplement Pleadings

2.     Defendant & indemnifying party Sony Corp attorneys Morris, Nichols, Arshet & Tunnell LLP ('MNAT'), cannot represent Plaintiff because "there may be one or more legal or equitable defenses available to such indemnified party"[5], Plaintiff, "which are in addition to or may conflict with those available to another indemnified party", eUniverse and Orrick Law, "with respect to such claim" detailed in the verified complaint. Other conflicting interests include i) that such indemnifying party is not only an indemnifying party by way of being the successor to the corporation which is party to the 1999 Registration Rights Agreement but that such indemnifying party is also named in the verified complaint as having taken one or more unlawful or illegal actions that damaged Plaintiff after the September 30, 2005 acquisition of Intermix and further also allegedly aided and abetted other defendant's unlawful or illegal acts which damaged Plaintiff or were breaches of agreements such parties violated that damaged Plaintiff.

## **CONCLUSION**

Without  TRO Orders included herein as Exhibit #1 and #2 granted immediately to

---

[4] Only but for the refusal by Vice Chancellor Glasscock to consider Plaintiff's Motion To Supplement and Motion For Joinder have these parties not been officially added as defendants.

[5] See page 7 of Motion For Preliminary Injunction ('Sony is in Breach of Duty to Defend)

protect Plaintiff's rights until the preliminary injunction motion can be ruled on, then

Plaintiff will continue to suffer prejudice, be damaged, be prevented from having a fair

day in court, and have no recourse.


/s/ Brad D. Greenspan
Brad D. Greenspan, Plaintiff in Pro Per
2995 Woodside Rd.
Suite 400
Woodside, CA 94062   / Ph: Ph: 408-599-3340 ext: 454

Dated:        December 23, 2015

EXHIBIT #1

# **<u>TEMPORARY RESTRAINING ORDER</u>**

Defendants, News Corporation and Twenty-First Century Fox Inc., its subsidiaries, officers, agents, employees, attorneys and anyone acting in active concert or participation with any of the foregoing (excluding RLF, JB, or MNAT), are hereby  RESTRAINED under DEL CODE § 4A-503

i)      From issuing any further payment order to initiate a funds transfer to law firms: RLF, JB, or MNAT ii) Such parties bank RESTRAINED from executing any payment order or funds transfer for beneficiary RLF, JB, or MNAT iii) the banks used by

RLF, JB, or MNAT are RESTRAINED from releasing existing funds received since Case

No. 9567 "proceeding" began that have been transmitted from News Corporation and

Twenty-First Century Fox, Inc. to such beneficiaries.

IT IS HEREBY ORDERED this _____day of ____, 2015 at the hour

of_____that the Motion is GRANTED;


A hearing on the Motion for Preliminary Injunction will be held by the Court on _____,

2015 in _____, Delaware

_____

Vice Chancellor

EXHIBIT #2

## **TEMPORARY RESTRAINING ORDER**

Defendants Sony Corporation of America, Sony Music Entertainment, Inc., 550 Digital Media Ventures, and  its subsidiaries, officers, agents, employees, attorneys and anyone acting in active concert or participation with any of the foregoing, are hereby RESTRAINED  under DEL CODE § 4A-503

i)      From issuing any further payment order to initiate a funds transfer to law firms: Morris Nichols Arsht & Tunnell   ii) Such parties bank RESTRAINED from executing any payment order or funds transfer for beneficiary Morris Nichols Arsht & Tunnell iii)  the banks used by Morris Nichols Arsht & Tunnell are RESTRAINED from releasing existing funds received since Case No. 9567 "proceeding" began  that have been transmitted from the above cited Defendants to such beneficiaries.

IT IS HEREBY ORDERED this _____day of ____, 2015 at the hour of_____that the Motion is GRANTED;

A hearing on the Motion for Preliminary Injunction will be held by the Court on _____, 2015 in _____, Delaware

_____

                                                                              Vice Chancellor

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRAD D. GREENSPAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9567-VCG |
| | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| CORPORATION, NEWS AMERICA | ) | |
| CORPORATION, WASHINGTON POST | ) | |
| CORPORATION, SONY CORPORATION, | ) | |
| SONY CORPORATION AMERICA, SONY | ) | |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) | |
| MEDIA VENTURES, INC., SONY BROADBAND | ) | |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) | |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) | |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) | |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) | |
| INC., JP MORGAN CHASE CORPORATION, | ) | |
| REDPOINT PARTNERS CORPORATION and | ) | |
| ARENT FOX LAW LLC INC., | ) | |
| | ) | |
| Defendants, | ) | |

**DECLARATION IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

I, Brad D. Greenspan, have first-hand, personal knowledge of the facts set forth

In the Motion for TRO and Motion For Preliminary Injunction and if called as a witness,

I could and would testify competently hereto under oath. I certify such Motions are being

presented in good faith and not for purpose of delay.

/s/ Brad D. Greenspan
Brad D. Greenspan, Plaintiff in Pro Per
2995 Woodside Rd.
Suite 400
Woodside, CA 94062 / Ph: Ph: 408-599-3340 ext: 454
Dated: December 23, 2015

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

BRAD D. GREENSPAN,                                        )
                                                         )
        Plaintiff,                                   )
                                                         )
        v.                                           )     C.A. No. 9567-VCG
                                                         )
NEWS CORPORATION, 21st CENTURY FOX                     )
CORPORATION, NEWS AMERICA                                )
CORPORATION, WASHINGTON POST                             )
CORPORATION, SONY CORPORATION,                           )
SONY CORPORATION AMERICA, SONY                           )
MUSIC ENTERTAINMENT, INC., 550 DIGITAL                   )
MEDIA VENTURES, INC., SONY BROADBAND                     )
ENTERTAINMENT, INC., EUNIVERSE, INC.                     )
NEWS CORPORATION, 21st CENTURY FOX                     )
EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT                )
VENTURE PARTNERS, ORRICK HERRINGTON                      )
LAW LLC, EMI MUSIC, WARNER MUSIC GROUP,                  )
IAC CORPORATION, MYSPACE, INC., ASKJEEVES,               )
INC., JP MORGAN CHASE CORPORATION,                       )
REDPOINT PARTNERS CORPORATION and                        )
ARENT FOX LAW LLC INC.,                                  )
                                                         )
        Defendants,                                  )

## SECOND MOTION FOR PRELIMINARY INJUNCTION

      Plaintiff seeks Rule 65 relief thru this honorable Court: i) Enjoining further

continuing damages Plaintiff is suffering thru being victim of a malicious defamatory

and libel scheme being carried out in Delaware by and thru defendant Sony Corp's

coercion and bribery of Morris Nichols (VC Noble pleading) & Advancement fees. that

make it impossible for Plaintiff to get any matter heard equitably in the Court of

Chancery. iii) Enjoining a defendant's continued  false entries related to 2004

Proxy. The following are fully incorporated by reference herein:

i) April 22, 2014 Complaint

ii) Motion To Supplement Pleadings (March 21, 2015)

iii)  Motion of Joinder  (March 21, 2015)

iv) Amended February 14, 2015 Motion To Take Judicial Notice (March 21, 2015)

 v) Motion For Recusal[1] (February 14, 2015)

vi) Second Motion To Supplement The Pleadings  (June 19, 2015)

vii) Plaintiff's Motion For Second Partial Summary Judgment (June 19, 2015)

viii) Motion For Preliminary Injunction (June 19, 2015)

ix) Motion For Default Judgment[2] (December 14, 2015)

x) Motion 60(b)[3] (December 14, 2015)

xi) Motion To Compel Arbitration (December 14, 2015)

xii) Motion To Supplement Pleadings (December 23, 2015).

xiii) Motion Rule 70 (December 23, 2015)

xiv) Motion To Supplement Pleadings (December 23, 2015)

xv) Motion TRO (December 23, 2015)

## STATEMENT OF FACTS

1.    Defendants Sony Corp and News Corp have indemnified non appearing

Defendants[4] Orrick Law and VantagePoint Venture Associates IV, L.L.C ('VPV'),.

2.    Orrick Law was VPV's attorney during 2003-2005 transactions with

eUniverse, Sony Corp and News Corp. In 2004 and 2005, Orrick Law retained Morris

Nichols and Richards Layton, Finger as local counsel for eUniverse and was also

represented by both Delaware law firms.

3.    Orrick Law is currently defending Sony Corp in California Federal District

Court in an antitrust class action case where News Corp is co-defendant.

4.    Orrick Law is currently representing VPV in Plaintiff's California Superior

Court filed complaint where Orrick Law and Sony Corp are listed co-defendants.

_____

[1] Which includes as exhibit #1: April 12, 2011 Potter Anderson;Morris Nichols letter to Vice Chancellor Noble.

[2] Which includes as exhibit #3: "VantagePoint Defendants' Answer To Unverified Complaint"  Superior Court of The State of California Case No. EC064259

[3] Which includes as exhibit #1: California Federal District Court Case 5:14-cv-04187-RMW's Document #83 "Order Re Costs And Expenses"

[4] Motion Default Judgment's  Defaultee #1 and #2

**LEGAL STANDARD**

5.    The three elements for preliminary injunction are: 1) Whether or not the movant has demonstrated a reasonable probability that he or she will ultimately be successful after a final hearing on the merits. 2) The presence of imminent, irreparable injury. 3) The public interest. Emerald Partners v. Berlin, 726 A.2d 1215, 1227 n.18 (Del. 1999);

**INJUNCTIVE RELIEF**

6.    On or around August 20, 2015, Sony Corp[5] directed Orrick to file an Answer to a complaint Plaintiff filed in the Superior Court  of the State of California on behalf of VPV, Sony Corp, Orrick Law, and other defendants in California Superior Court.[6]

7.    Plaintiff seeks to enjoin continuing breaches by defendants News Corporation and Sony Corp of their contractual duty to defend Plaintiff, an indemnified party from new counterclaims included in such Answer pleading filed by similar indemnified parties Orrick Law and VPV, after both defendants were given written notice no later then December 14, 2015.

8.    Sony Corp's attorney Orrick Law on behalf of themselves and "certain

_____

[5] For purposes herein, "Sony Corp" shall mean: i) Sony Corporation, incorporated in Japan ii) Sony Corporation America, a Delaware corporation iii)  Sony Music Entertainment Inc., a Delaware Corporation iv) 550 Digital Media Ventures, Inc. ("550 DMV"), a Delaware Corporation v)  Sony Broadband Entertainment, Inc., vi) Sony Entertainment Inc.,vii)  Sony Music Holdings Inc., viii) Eric Seiler ix) Michael S. Palmieri x) FRIEDMAN KAPLAN SEILER & ADELMAN LLP xi) Kevin M. Coen, xii) David Teklits xiii) MORRIS, NICHOLS, ARSHT & TUNNELL LLP

[6] Exhibit #3 included in Motion For Default Judgment (December 11, 2015)

individuals that VantagtePoint  may owe indemnity obligations and who may also be

considered "VantagePoint Defendants" asserted over nineteen counterclaims "on their

behalf"  as "affirmative defenses" include: Estoppel, Waiver, Unclean Hands, fraudulent

acts and self-dealing, breach of contract, in pari delicto, failure to mitigate, neglect,

causing harm, willful misconduct, set-off, wrongdoing, waiver, and hindering the

performance of contracts.

9.    Defendant News Corp must comply with Covenant 9c of the 1999

registration rights agreement because News Corp acquired eUniverse, Inc. the public

company where Plaintiff served as an Officer, Director, and Holder of Registrable

securities making Plaintiff an indemnified party under such contract which states News

Corp, the indemnifying party, must provide "reasonably incurred fees and expenses of

one such counsel to be paid by the indemnifying party,"

10.    Further, Defendant News Corporation must be restrained from further

breaches of Section 9© of the 1999 Agreement covenant:[7]

> "an indemnified party shall have the right to retain its own counsel, with the
> reasonably incurred fees and expenses of one such counsel to be paid by the
> indemnifying party, if representation of such indemnified party by the counsel
> retained by the indemnifying party would be inappropriate due to actual or
> potential conflicting interests between such indemnified party and any other party
> represented by such counsel in such proceeding. "

11.    In addition, until News Corporation fulfills its obligation and provides at

least one such counsel to Plaintiff, this Court must  enjoin the indemnifying party from

assuming "the defense" as defined in Section 9c unless "counsel" is "satisfactory" to

Plaintiff.   News Corporation has assumed the defense with Richards, Layton Law

_____

[7] such covenants of the 1999 Agreement are fully included and Plaintiff's rights detailed
on page 10 & 37-38 of the Motion For Preliminary Injunction (June 2015)

which is not satisfactory to Plaintiff and further is conflicted and adverse to Plaintiff.

12.    Defendant & indemnifying party attorneys Richards, Layton & Finger and Jenner & Block is "inappropriate due to" both "actual' and "potential conflicting interests" between Plaintiff an "indemnified party" and News Corporation and Twenty-First Century Fox, Inc. both "represented by such counsel". Actual conflicting interests include i) that such indemnifying party is not only an indemnifying party by way of being the successor to the corporation which is party to the 1999 Registration Rights Agreement but that such indemnifying party is also named in the verified complaint as having taken one or more unlawful or illegal actions that damaged Plaintiff after the September 30, 2005 acquisition of Intermix and further also allegedly aided and abetted other defendant's unlawful or illegal acts which damaged Plaintiff or that were breaches of agreements such parties violated that damaged Plaintiff. ii) Richards, Layton & Finger was a law firm retained by Intermix that took and represented such company in adverse actions and matters against Plaintiff before being acquired by the successor indemnifying party on September 30, 2005.

13.    Plaintiff seeks preliminary injunction under DEL CODE § 4A-503 to: i) restrain News Corporation and Twenty-First Century Fox, Inc. from issuing any further payment order to initiate a funds transfer to law firms: Richards, Layton & Finger or Jenner & Block ii) Restrain News Corporation and Twenty-First Century Fox, Inc.'s bank from executing any payment order or funds transfer for beneficiary Richards, Layton & Finger iii) Restrain the banks used by Richards, Layton & Finger and Jenner & Block from releasing existing funds received since Case No. 9567 "proceeding"

began that have been transmitted from News Corporation and Twenty-First Century Fox, Inc. to such beneficiaries.

14.    Plaintiff seeks preliminary injunction restraining News Corporation and Twenty-First Century Fox, Inc. from continuing to retain and compensate Richards, Layton & Finger or Jenner & Block until at least the final disposition of this proceeding has been completed.

Specific Performance of covenant 9 ( c ) thru Injunctive Relief

15.    Plaintiff seeks this Court to issue order to compel indemnifying parties, News Corporation and Twenty-First Century Fox, Inc. to immediately comply with  9 ( c) Provision thru i) making payment to Plaintiff of each corporation's "incurred fees and expenses" paid by each corporation to Richards, Layton & Finger and Jenner & Block since the proceeding began and ii) granting order for future "reasonably incurred fees" billed monthly by each Plaintiff counsel to each indemnifying party be paid by wire within 48 hours of receipt of such bill by each indemnifying party.

16.    Plaintiff is likely to succeed on the merits because in addition to the aforementioned agreement that News Corp is in breach of, News Corp is also in breach of a second agreement in the same manner which is the 1999 Subscription Agreement which states:

"8. Indemnification.

The Company and Brad Greenspan agree, jointly and severally, to indemnify and hold harmless Subscriber and the Escrow Agent and each of their respective officers, directors, employees and agents, and each person who controls Subscriber or the Escrow Agent within the meaning of the Act or the Exchange Act (each, a "Subscriber Indemnified Party") against any losses, claims, damages

or liabilities, joint or several, to which it, they or any of them, may become subject and not otherwise reimbursed arising from any material breach of any representation or warranty made by the Company or the Public Entity contained in this Agreement, in writing to the Subscriber, in any statements contained in the Disclosure Documents or otherwise disclosed. Subscriber agrees to indemnify and hold harmless the Company and the Escrow Agent and each of their respective officers, directors, employees and agents, and each person who controls Company or the Escrow Agent within the meaning of the Act or the Exchange Act (each, a "Company Indemnified Party") (a Subscriber Indemnified Party or a Company Indemnified Party may be hereinafter referred to singularly as "Indemnified Party") against any losses, claims, damages or liabilities, joint or several, to which it, they or any of them, may become subject and not otherwise reimbursed arising from any material breach of any representation or warranty made by Subscriber contained in this Agreement. Promptly after receipt by an Indemnified Party of notice of the commencement of any action pursuant to which indemnification may be sought, such Indemnified Party will, if a claim in respect thereof is to be made against the other party (hereinafter "Indemnitor") under this Section 8, deliver to the Indemnitor a written notice of the commencement thereof and the Indemnitor shall have the right to participate in and to assume the defense thereof with counsel reasonably selected by the Indemnitor, provided, however, that an Indemnified Party shall have the right to retain its own counsel, with the reasonably incurred fees and expenses of such counsel to be paid by the Indemnitor, if representation of such Indemnified Party by the counsel retained by the Indemnitor would be inappropriate due to actual or potential conflicts of interest between such Indemnified Party and any other party represented by such counsel in such proceeding. The failure to deliver written notice to the Indemnitor within a reasonable time of the commencement of any such action, if prejudicial to the Indemnitor's ability to defend such action, shall relieve the Indemnitor of any liability to the Indemnified Party under this Section 8, but the omission to so deliver written notice to the Indemnitor will not relieve it of any liability that it may have to any Indemnified Party other than under this"

Further, News Corp is in violation and breach of the 2005 indemnity agreement in the same fashion as aforementioned duty to defend obligations. Except the 2005 agreement is governed by California law. (see page page 26 of Preliminary Injunction for detailed description of covenant breached in "J. NEWS CORP 2005 VOTING AGREEMENT").

**SONY IS IN BREACH OF DUTY TO DEFEND**

16.     Sony Corp owes a duty to defend Plaintiff which its also in breach of.

Sony is in breach of multiple agreements, including:

i.      Section G of the 2000 eUniverse Registration Rights Agreement[8] which states:

"(unless such indemnified party reasonably objects to such assumption on the grounds that there may be defenses available to it which are different from or in addition to such indemnifying party in which event the indemnified party shall be reimbursed by the indemnifying party for the expenses incurred in connection with retaining one separate legal counsel)."

Because Sony Corp has breached Section G by refusing to reimburse Plaintiff for the expenses incurred in connection with retaining one separate legal counsel while simultaneously defending the Delaware matter with counsel that Plaintiff has "reasonably" objected to because the "defenses" "are different from or in addition to Sony Corp, "such indemnifying party".

**ii.**     The 2001 Share Purchase Agreement section 10.1/10.3[9]

"The Indemnifying Party may take control of the defense, settlement or compromise of such claim, action or proceeding at the Indemnifying Party's own expense and with the assistance of the Indemnifying Party's own counsel, which counsel shall be reasonably acceptable to the Indemnitee."

Sony Corp is in breach of Section 10.1 and 10.3 because Sony Corp's counsel, Morris Nichols and Orrick Law are not "reasonably acceptable" to indemnitee, Plaintiff.

        Therefore, Sony Corp must be enjoined and prevented from continuing to control the defense with unacceptable counsel to the Indemnitee while also refusing to pay for an acceptable counsel to defend Plaintiff in the

_____

[8] such covenants of the 2000 Agreement is fully included and Plaintiff's rights detailed on page 14-26 & 37-39 of the Motion For Preliminary Injunction (June 2015)
[9] such covenants of the 2001 Agreement is fully included and Plaintiff's rights detailed on page 15-26 & 37-39 of the Motion For Preliminary Injunction (June 2015)

California and Delaware proceedings.

iii.    The 2001 Registration Rights Agreement Section 8 (c ):[10]

© "An indemnifying party who is not entitled to, or elects not to, assume the defense of a claim shall not be obligated to pay the fees and expenses of more than one counsel for all parties indemnified by such indemnifying party with respect to such claim, unless in the reasonable judgment of any indemnified party there may be one or more legal or equitable defenses available to such indemnified party which are in addition to or may conflict with those available to another indemnified party with respect to such claim."

Sony Corp is in breach of Section 8 of the 2001 Registration Rights agreement because Sony Corp has not assumed the defense of counterclaims against Plaintiff in California,  and because Plaintiff's legal or equitable defenses conflict with those available to Orrick Law and VPV who are both indemnified by Sony Corp with respect to the California counterclaims and the Delaware proceeding. Sony Corp is in further breach because Sony Corp is obligated to pay the fees and expenses of at least one counsel of Plaintiff, an indemnified party, but Sony Corp has refused to do so.

**CONTINUING VIOLATION OF CA  SECTION 2860 DUTY TO DEFEND**

17.  Both News Corp and Sony Corp Defendants are in further violation of Section 2860[11] of what popularly known as the California Cumis lawyer obligations. Sony Corp. 2001 and 2000 agreements have their legal jurisdiction, specifically California State. Defendants violated section 8 of the same 1999 agreement in which they were bound to pay Plaintiff's legal fees but refused even after being notified of a new claim again in 20102, via communication and notice by Plaintiff to Sony

---

[10] such covenants of the 2001 Agreement is fully included and Plaintiff's rights detailed on page 15-26 & 37-39 of the Motion For Preliminary Injunction (June 2015)
[11] Included as Exhibit #1

Corporation of America CFO who acknowledged email received in 2010 and received

the notice of claim later sent, Defendants failed to take action, refused to honor

agreement and provide legal fees for Plaintiff to hire attorney to defend Peer Music,

Federal Class action security fraud case that was ongoing at time.[12]

**ENJOINING SONY CORP FROM FURTHER PREJUDICING PLAINTIFF IN THE COURT OF CHANCERY THRU CONTINUING INJURY CAUSED BY DEFAMATION AND LIBEL AGENT COERCION SCHEME**

18.    Plaintiff seeks the Court to enjoin Sony Corp from continuing to

prejudice and destroy Plaintiff's legal rights and matters before the Court of Chancery

by restraining Sony Corp scheme coercing agent Morris Nichols from withdrawing its

defamatory false libel letter before Vice Chancellor Noble. The facts are further detailed

and laid out in Plaintiff's concurrently filed Motion To Supplement page 2: "COUNT

THIRTY FOUR – DEFAMATION AND LIBEL", "COUNT THIRTY FIVE –

VIOLATION DEL CODE § 871", "COUNT THIRTY SIX – VIOLATION DEL CODE §

877", "COUNT THIRTY SEVEN – PERJURY, VIOLATION U.S.C. § 1001
, OR 18 U.S.C. §

1341"

19.  Plaintiff should be granted this relief based on Delaware Bill of Rights:

There are two applicable provisions of the Delaware Bill of Rights set forth in Article I

*177 of the 1897 Constitution. The first is Section 5. The second is Section 9.

"Section 5 establishes generally the right of freedom of expression for citizens, provided that they are "responsible for the abuse of that liberty." That section

---

[12] See Exhibit #3 of December 11, 2015 Motion To Compel Arbitration disclosing emails sent by Plaintiff to CFO Sony Corporation of America Rob Weisenthal for claim notices in 2010. Weisenthal had replied to earlier email communications in 2010 with Plaintiff but did not reply to these later claim notices.

10

specially provides for a free press "to examine the official conduct of men acting in a public capacity," an issue not involved in this case. That section also provides for truth as a defense and for jury trials "as in other cases" for "all indictments for libels."

"Section 9 is a version of the "open courts" or "remedies" clauses appearing in at least thirty-seven state constitutions.[9] Section 9, in our view, establishes a strong state constitutional basis for remedies to recompense damage to one's reputation. In our view, the protection afforded to reputations by the Delaware Constitution weighs heavily in the balance of the analysis involving constitutionally protected speech."

20.     In Kanaga v. Gannett Co., Inc. 687 A.2d 173 (1996) No. 466, 1995.

DEL. CONST. art. I, § 5 (emphasis added).the Court ruled

"Article I, Section 9, of the Delaware Constitution, provides:

§ 9. Courts shall be open; remedy for injury; suits against State.

Section 9. All courts shall be open; and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense. Suits may be brought against the State, according to such regulations as shall be made by law.

DEL. CONST. art. I, § 9 (emphasis added).
"as the opinion of Chief Justice Rehnquist for the majority in Milkovich noted in quoting Justice Potter Stewart in his concurring opinion in Rosenblatt v. Baer:

"The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being a concept at the root of any decent system of ordered liberty. . . . . . The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored."

"The law of defamation embodies the public policy that, generally, individuals must be protected so as to enjoy their good reputations unimpaired by defamatory statements. The general rule is that the publisher and republisher of defamatory matter are strictly accountable and liable in damages to the person defamed, and

neither good faith nor honest mistake constitutes *182 a defense, serving only to mitigate damages."

21.    Plaintiff seeks a preliminary injunction enjoining Respondents, Sony Corp their officers, agents, employees and anyone acting in active concert or participation, from directing or aiding and abetting the ongoing coercion of Morris Nichols that is preventing Morris Nichols from taking corrective action and withdrawing the libel defamatory April 2011 letter to Vice Chancellor Noble after Sony Corp and Morris Nichols received notice of the true facts by way of Plaintiff's March 2015 amended Motion for Judicial Notice.

22.    Plaintiff also seeks a preliminary injunction enjoining Respondents, Sony Corp their officers, agents, employees and anyone acting in active concert or participation, from directing or aiding and abetting the ongoing coercion of Morris Nichols that is preventing Morris Nichols from taking corrective action and withdrawing the false eUniverse business records, and concealing past falsified business records, or filing inaccurate or misleading Delaware Court of Chancery pleadings regarding the dates in which Delaware corporations filed for Federal Bankruptcy or the dates Delaware public corporation Director nominees worked as principal executive officers of Delaware corporations that filed for Federal Bankruptcy.

23.    Sony Corp must be enjoined from further violations of DEL CODE § 871 and DEL CODE § 877. Facts are further detailed in the concurrently filed Motion To Supplement Pleadings

24.    Plaintiff seeks this honorable Court issue a Preliminary Injunction enjoining Defendant Sony Corp and News Corp from coercing agents or indemnitees

including Morris Nichols Arsht from taking corrective actions including withdrawing or amending the defective eUniverse, Inc. July 2004 Proxy. Therefore, Sony Corp and News Corp have failed to correct or fully disclose their violation of Item 401 Rule SK as of today.

## **CONCLUSION**

Plaintiff is likely to prevail on the merits of these cited matters and therefore, the relief requested and sought in this Motion for Preliminary Injunction should be granted as soon as the Court can schedule a hearing to rule on the matter. Plaintiff also seeks indemnification for these new liabilities[13] and violations of law that are continuing.[14]


/s/ Brad D. Greenspan
Brad D. Greenspan, Plaintiff in Pro Per
2995 Woodside Rd.
Suite 400
Woodside, CA 94062   / Ph: Ph: 408-599-3340 ext: 454

Dated:        December 23, 2015

---

[13] Duthie, 2008 WL 4173850, at *1 (plaintiffs entitled to advancement of fees necessary to defend against fraud and breach of contract claims, as well as claims in connection with their affirmative contention that public statements concerning such claims constituted defamation).
[14] Including injunctive relief for Federal Court's Order re: Bill of Costs that became liability for Plaintiff on November 10, 2015

EXHIBIT #1

Section 2860 states:

"2860. (a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section.

(b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

(c) When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. This subdivision does not invalidate other different or additional policy provisions Pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute. "

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BRAD D. GREENSPAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9567-VCG |
| | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| CORPORATION, NEWS AMERICA | ) | |
| CORPORATION, WASHINGTON POST | ) | |
| CORPORATION, SONY CORPORATION, | ) | |
| SONY CORPORATION AMERICA, SONY | ) | |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) | |
| MEDIA VENTURES, INC., SONY BROADBAND | ) | |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) | |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) | |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) | |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) | |
| INC., JP MORGAN CHASE CORPORATION, | ) | |
| REDPOINT PARTNERS CORPORATION and | ) | |
| ARENT FOX LAW LLC INC., | ) | |
| | ) | |
| Defendants, | ) | |

**MOTION TO SUPPLEMENT PLEADINGS**

If not specified 'defendants' means all in verified complaint and Motion of Joinder

directly or thru aiding and abetting. Fully incorporated by reference herein:

    i) April 22, 2014 Complaint
    ii) Motion To Supplement Pleadings (March 21, 2015)
    iii) Motion of Joinder  (March 21, 2015)
    iv) Amended February 14, 2015 Motion To Take Judicial Notice (March 21, 2015)
    v) Motion For Recusal[1] (February 14, 2015)
    vi) Second Motion To Supplement The Pleadings  (June 19, 2015)
    vii) Plaintiff's Motion For Second Partial Summary Judgment (June 19, 2015)

---

[1] Which includes as exhibit #1: April 12, 2011 Potter Anderson;Morris Nichols letter to
Vice Chancellor Noble.

viii) Motion For Preliminary Injunction (June 19, 2015)
ix) Motion For Default Judgment[2] (December 14, 2015)
x) Motion 60(b)[3] (December 14, 2015)
xi) Motion To Compel Arbitration (December 14, 2015)
xii) Motion For Preliminary Injunction (December 23, 2015).

## COUNT THIRTY FOUR – DEFAMATION AND LIBEL

1.    Plaintiff incorporates by reference and realleges each allegation set forth above.

2.    The Sony Corp[4] defendants are guilty of libel against Plaintiff thru sending a defamatory letter to the Court of Chancery in April 2011 while concurrently directing the  publishing of an Answers Corporation press release containing false statements about Plaintiff's work experience.  The facts regarding the defamatory statements proving libel are set forth in the following pleadings which are hereby fully incorporated herein i) Motion For Recusal[5] (February 14, 2015) and ii)  Amended February 14, 2015 Motion To Take Judicial Notice (March 21, 2015)

3.    Further, Defendant Sony Corp is guilty of a continuing violation by currently coercing agents or indemnitees including  Morris, Nichols, Arsht, & Tunnell

---

[2] Which includes as exhibit #3: "VantagePoint Defendants' Answer To Unverified Complaint"  Superior Court of The State of California Case No. EC064259

[3] Which includes as exhibit #1: California Federal District Court Case 5:14-cv-04187-RMW's Document #83 "Order Re Costs And Expenses"

[4] For purposes herein, "Sony Corp" shall mean: i) Sony Corporation, incorporated in Japan ii) Sony Corporation America, a Delaware corporation iii)  Sony Music Entertainment Inc., a Delaware Corporation iv) 550 Digital Media Ventures, Inc. ("550 DMV"), a Delaware Corporation v)  Sony Broadband Entertainment, Inc., vi) Sony Entertainment Inc.,vii)  Sony Music Holdings Inc., viii) Eric Seiler ix) Michael S. Palmieri x) FRIEDMAN KAPLAN SEILER & ADELMAN LLP xi) Kevin M. Coen, xii) David Teklits xiii) MORRIS, NICHOLS, ARSHT & TUNNELL LLP

[5] Which includes as exhibit #1: April 12, 2011 Potter Anderson;Morris Nichols letter to Vice Chancellor Noble.

LLP from taking corrective actions including withdrawing the defamatory April 2011

pleading filed in the Court of Chancery.

4.      Article I, Section 9, of the Delaware Constitution, provides:

"All courts shall be open; and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense. "

5.   In Kanaga v. Gannett Co., Inc. 687 A.2d 173 (1996), the Delaware

Supreme Court opined:

> "The law of defamation embodies the public policy that, generally, individuals must be protected so as to enjoy their good reputations unimpaired by defamatory statements."  and

6.      The Sony defendant's April 2011 letter pleading to Vice Chancellor Noble

supports a cause of action for libel based on its false statement analogous to

 "This Court in Riley went on to analyze the opinion jurisprudence as follows:

"[A] defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.... "

"To support a cause of action for libel, the underlying facts must be false as well as defamatory."

7. Plaintiff's injury is irreparable because of its interference with a legal right

which cannot be adequately compensated for by an award of damages.[6]

---

[6] State v. Delaware State Educational Asso., 326 A.2d 868, 875 (Del. Ch. 1974). See also Hollinger Intern. Inc. v. Black, 844 A.2d 1022, 1090 (Del. Ch.), app. denied mem., 856 A.2d 1066 (Del. 2004) (injury is irreparable where money damage would involve speculation); Bayard v. Martin, 101 A.2d 329, 334 (Del. 1953), cert. denied, 347 U.S. 944 (1954).

8.      In Delaware, a prima facie claim for Defamation requires 1) a false and

defamatory communication concerning the plaintiff. Morris, Nichols, Arsht & Tunnell

satisfied this thru the April 12, 2011 letter pleading to Vice Chancellor Noble stating:

"(iii) significant concerns regarding Mr. Greenspan himself and his past history,"

which included Morris, Nichols, Arsht & Tunnell client Answers Corporation's

April 11, 2011 SEC Form 8-k stating:

> "§ Based upon publicly available information, it appears that Mr. Greenspan has
> never concluded an acquisition of a public company. In fact, based upon publicly
> available information, it appears that on at least two occasions, Mr. Greenspan
> made offers to acquire a public company but was unable to complete or
> consummate those offers."

> 9. The other elements are met which include:

> 2) publication of the communication to third parties; 3) understanding of the
> defamatory nature of the communication by the third party, 4) fault on the part of
> the publisher, and 5) injury to the plaintiff.

As long as the above elements are met a plaintiff has plead a prima facie case of

defamation whether the defamatory conduct occurs in a boardroom or a courtroom.

10.     Del Code § 3919 shifts burden on Defendants when "the truth is pleaded

and given in evidence" which Plaintiff satisfied thru evidence included in March 21, 2015

Judicial Notice.

11.     Defendants must prove "that the same was written or published properly for

public information, and with no malicious or mischievous motives".

12.     Further, that based on such evidence submitted Plaintiff has a right for the

Court below to make a determination in regards to the factual issue of Plaintiff's work

experience against a potential aiding and abetting or joint defamation claim against both

Defendant Sony Corp and its current counsel Morris Nichols. Because if the Court below makes a determination on the facts in favor of Plaintiff then Plaintiff may also further be successful in proving a claim of defamation and perjury. Since Defendant Sony Corp and its counsel have been aware of Plaintiff's claims since at least March 2005 and opted not to take any corrective actions, then if the Court below finds for Plaintiff factually, its also likely Plaintiff will be able to prove that Defendant Sony Corp at the very least thru gross negligence aided and abetted or induced additional damages caused by prolonging the defective defamatory record that continues to exist as of today in the public domain and in the Court of Chancery.

**COUNT THIRTY FIVE – VIOLATION DEL CODE § 871**

Plaintiff incorporates by reference and realleges each allegation set forth above.

1. Defendants have received the benefit of reviewing the following information and evidence in the verified complaint since at least September 2014:

> i. "51. Angwin, Hinton, News Corporation, Hogan Lovell, RGRD, and eUniverse Defendants violate 18 U.S.C. § 1512(c)(1) and 18 U.S.C. § 1519 by hiding evidence of Edells two resignations on his bio that were really his last two jobs instead of submitting an accurate bio, defendants stretched the job of Edell that was actually 3 jobs prior, and increased this 3rd job by another 2 years, to the year 2002 (from 2000). Edell both omits to accomplish his end goal of making detection and disclosure of his true track record and financial history as difficult as possible.

> > i. Angwin, News Corporation, Hinton, Murdoch, RGRD, eUniverse and Orrick Conceal the false revised BIO of Edell filed in July 2004 SEC filings:

> > "Mr. Edell was the Chief Executive Officer of Showorks Entertainment Group. Inc., a Delaware corporation that later changed its name to Media Technology Source of Delaware, Inc. Within two years of the time that Mr. Edell resigned from that company, it filed a petition for relief under the United States Bankruptcy Code." (page 21 #9567 verified complaint)

ii.    "I. DEFENDANTS FAIL TO CURE RULE S-K ITEM 401 (F) VIOLATION

27. Rule S-K Item 401 (f) states the requirement for information disclosed in Intermix's January 2004 & July 2004 Proxy filings for Director's "Involvement in certain legal proceedings" stating,

"Describe any of the following events that occurred during the past ten years and that are material an evaluation of the ability or integrity of any director, person nominated to become a director or executive officer of the registrant:

"A petition under the Federal bankruptcy laws or any state insolvency law was filed by or against, or a receiver, fiscal agent or similar officer was appointed by a court for the business or property of such person, or any partnership in which he was a general partner at or within two years before the time of such filing, or any corporation or business association of which he was an executive officer at or within two years before the time of such filing;"

28. To make Proxy not defective under 14a or Delaware security laws, issuer would have to disclose that,

"Our former Chairman who resigned effective December 2003 was replaced by Jeffrey S. Edell. Edell was most recently President and CEO of Showorks Entertainment Group, Inc. from  January 2001 thru April 2002. Sometime in 2002, Showorks Entertainment Group, Inc.  underwent a name change to MTS, Inc. Sometime in September of 2002 Edell learned that MTS,  Inc. had filed for bankruptcy under Chapter 7. Edell was not there at the time of filing. Edell has informed the company Edell was never personally named or contacted as part of the bankruptcy under Chapter 7 or subsequent proceedings. Edell was from 1995 thru December 31, 2000,President and CEO of Soundelux Entertainment Group., Inc." (page 55 #9567 verified complaint)

iii.    "22. Edells two resignations on his bio that were really his last two jobs instead of submitting an accurate bio, defendants stretched the job of Edell that was actually 3 jobs prior, and increased this 3rd job by another 2 years, to the year 2002 (from 2000). Edell both omits to accomplish his end goal of making detection and disclosure of his true track record. (EXHIBIT #1, pg. 29, EXHIBIT #2, pg. 31, EXHIBIT #3 pg. 33-36, EXHIBIT #5,pg.41-42)"
(page 62 #9567 verified complaint)

iv. "i. On the first page, in the first paragraph, there is information to read for the questionnaire submission. The third line from the bottom states,

**"Accordingly, great care should be exercised in completing this questionnaire.
You should be aware that if the Proxy Statement contains any false or
misleading statements, the Company and those in control of the Company
could be subject to liability under federal securities laws."**
(page 67 #9567 verified complaint)

v.       "a. On the second page of the document titled,

"EUNIVERSE, INC. QUESTIONNAIRE FOR DIRECTORS AND OFFICERS",
the first section is labeled:

"I. Employment, Occupation, and Business Experience."

And it lists information submitted by "Jeffrey S. Edell, 11/10/57".

b. Under section ©, document states,

"Please Indicate all positions and offices which you hold or have held during the
past five(5)years"

c. Edell's 'Questionnaire For Directors And Officers' lists 3 submissions under

'Positions/Office':

"President/CEO & Director Showorks Entertainment Group, Inc."
from "January 2001- April 2002" and notes he "resigned April 2002".

"President/CEO/Director, Soundelux Entertainment Grp., Inc."
from "November 1995- 12/31/2000".

"President/CEO/Director, Enterprise Entertainment Grp, LLC".
From "November 2002-May2003"

and the next line in parenthesis immediately below states,

"resigned May 2003, after working on severe turnaround situation."

d. On page 14 of Edell's 'Questionnaire For Directors And Officers', Edell checks
'YES' for section (a) when asked if "any of the following events has occurred
since April 1, 1998, please provide a brief description of the event".

e. Section (a) states:

"A petition under the Federal bankruptcy laws or any states insolvency law was

filed by or against you, or any corporation or business association of which you were an executive officer at or within two years before the time of such filing."

f. Edell discloses under "Description:":

"Showorks Entertainment Group, Inc. underwent a name change in 2002 to MTS, Inc. I resigned as President and CEO of this company in April of 2002. Subsequent to my leaving, sometime in September of 2002, I learned that they had filed bankruptcy under Chapter 7."

39. Therefore, Edell's scheme to defraud the eUniverse Directors is effected by changing the time frame and term of his Soundelux employment from the factual end of 12/31/2000, to the fabricated and false claim that Edell's end of his work tenure being thru 2002. This allows Edell to effectively cover up or disguise his true historical work performance and mislead Petitioner & shareholders that need accurate and true professional experience to determine if someone is qualified to be a Director of a public company.

i. As part of scheme, Edell omits his January 2001-April 2002 true employment where he was

"President/CEO & Director Showorks Entertainment Group, Inc." that he had disclosed in a prior D&O Questionaire.

ii. Edell also omits his November 2002-May 2003 professional experience as

"President/CEO/Director, Enterprise Entertainment Grp, LLC",

resigning after just five months, blaming a "severe turnaround". (EXHIBIT #3, pg. 33-36)" (page 67 #9567 verified complaint)

2.      Page 80 of complaint contains eUniverse July 2004 Proxy information:

"The false and defective July 2004 Proxy (EXHIBIT #7, pg. 48-49)

110. Edell's July 2004 Proxy disclosure totally omits any notion of bankruptcy. Edell and defendants later after using the fabricated Edell to win the January 2004 Proxy contest, attempt thru a footnote, in second Proxy distributed in July 2004, to avail themselves of the disclosure requirements they know exists by concealing Edell's true background by disclosing:

"Mr. Edell was the Chief Executive Officer of Showorks Entertainment Group. Inc., a Delaware corporation that later changed its name to Media Technology Source of Delaware, Inc. Within two years of the time that Mr. Edell resigned

from that company, it filed a petition for relief under the United States Bankruptcy Code."

111. However, even with this disclosure of a bankruptcy Edell does not disclose the year that he works for Showorks in his main bio area. Combined with fabricating the year Edell concluded his job at Soundelux to 2002, An informed investor would not be able to deduce that Edell worked for Showorks as CEO in 2001 before its bankruptcy in 2001. Edell misled investors, omitting fact that in 2001 & 2002 he was Showorks CEO.

112. Defendants are guilty of the destruction or altering of the true Edell background information and work experience and bankruptcy by omission violating 18 U.S.C. §1512(c)(1) and 18 U.S.C. § 1519."

3.     Page 65 of the verified complaint describes July 2004 Proxy scheme that:

i.     "falsely creates the appearance and assumption that 'Soundelux Entertainment Group' has been the sole Professional Experience of Edell's as a full time Executive since '2002'.

"ii. Edell's fabricated 'Professional Experience' section creates the appearance that Edell, "Successfully initiated, negotiated and closed sale of the Hollywood postproduction division of SEG (Soundelux) to the Liberty Media Group" and Edell lists he was President/CEO/Director of Soundelux Entertainment Group from 1995-2002, then the reader of the fabricated document would assume Edell departed as CEO after Soundelux was sold in 2002. Brewer, Edell, Orrick, VantagePoint, Harroch, Carlick, Rosenblatt, Sheehan, DeWolfe, Latham, and Sony Corp violate 18 U.S.C. § 1519 because they have altered records of a Board candidate during the SEC restatement inquiry that ended October 2004.

"iii. Defendants specifically violated Section 1512© and U.S.C. § 1519 by destroying and altering Edell's true background and work experience which should have truthfully disclosed:

> **"i) ShoWorks, where Edell was CEO starting April 2001 thru 2002 (name changed immediately prior to bankruptcy in September 2002)" and**

> **"ii) Enterprise Entertainment Group LLP at which Edell was President/CEO/Director for less then a year before he resigned from company citing his resignation came after "working on severe turnaround situation" in May of 2003. "** (EXHIBIT #3,. Pg. 33-36)

4.  Del Code § 863 definition of "Written instrument" means:

"any instrument or article containing written or printed matter or the equivalent thereof, used for the purpose of reciting, embodying, conveying or recording information or constituting a symbol or evidence of value, right, privilege or identification."

5. DEL CODE § 871 states:   "A person is guilty of falsifying business records when, with intent to defraud, the person:

(1) Makes or causes a false entry in the business records of an enterprise; or

(2) Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or

(3) Omits to make a true entry in the business records of an enterprise in violation of a duty to do so which the person knows to be imposed by law or by the nature of the person's position; or

(4) Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise."

6.   During December 2003 and January 2004, Sony Corp, its agent Morris, Nichols, Arsht & Tunnell, its nominee to the Board of Directors of eUniverse Jeffrey Edell, VPV, and Orrick Law violated § 871 when they failed and did omit to make a true entry in the business records of eUniverse, Inc. including its proxy statements and press releases by omitting the Federal Bankruptcy contained in Edell's work experience.

7.   Further, all such persons violated their fiduciary duties in making the omissions and preventing the making of a true entry by not taking action to correct such omission thru filing amended SEC filings

8.  During July 2004, Sony Corp, its agent Morris, Nichols, Arsht & Tunnell, its nominee to the Board of Directors of eUniverse Jeffrey Edell, VPV, and Orrick Law violated § 871 by making or causing a false entry in the business records of eUniverse's annual Proxy including:

10

9.     FALSE ENTRY #1, #2, #3:

"Mr. Edell was employed as President and Chief Executive Officer and a director of Soundelux Entertainment Group, Inc., a provider of entertainment content and technologies, from 1995 until 2002.

i.     False Entry #1 altered, removed, deleted, and erased "2000" which was the true entry of the final year Edell was employed by Soundelux Entertainment Group, Inc. (see Exhibit #5)

ii.     False Entry #2 was the making of the false entry of "until 2002" in the above sentence included in eUniverse's July 2004 proxy business record.

iii.     False Entry #3 was the omission of the true entry of Edell's year 2000-2002 employment which Edell disclosed in his application provided to eUniverse's Director Nominating Committee.

10.   FALSE ENTRY #4

"Jeffrey Edell 46
Past President and Chief Executive Officer,
Showorks Entertainment Group, Inc. October 14, 2003"

i.     False Entry #4  was the making of the false entry of "October 14, 2003" for the date in which the individual legally was nominated as a Director when Vice Chancellor Strine had concluded that Edell had not been validly nominated as a Sony Series B Director anytime in October 2003. In fact, Sony and Coen's June 2015 pleading contains the undisputed fact that Edell became a Director in January 2004:

"The testimony at trial confirmed what had been learned in discovery – Jeffrey Edell was never validly appointed as a Series B director. Once it became apparent at trial that defendant's position on Edell would likely fail, counsel for he Company mooted Plaintiff's claims by contacting Sony and soliciting a consent to appoint Edell as a Series B director."

"Nevertheless, in a letter to the Court dated January 14, 2004, Defendants produced a consent from Sony dated January 13, 2004 that appointed Edell as the Series B director for the Annual Meeting."
(Exhibit G, July 8, 2004, Case No. 106-N "Plaintiff's Opening Brief in Support of His Motion To Dismiss The Action as Moot And For An Award of Attorneys Fees and Costs., " page 62)

11.   Sony Corp and Coen in 2015 violate § 871 yet again or aid and abet the

original violations thru their misleading false statements in the June 2015 pleading:

i)      "Even assuming that there was, at some point, a failure to disclose Mr. Edell's connection with the Showorks bankruptcy – which the Sony Entities do not admit – the relevant information was publicly known by no later than 2004."
(page 53 of Coen and Sony Corp June 2015 Motion To Dismiss)

ii)     "Thus, the fact of Mr. Edell's connection to the Showorks bankruptcy was known a decade before Greenspan filed this suit. It was also disclosed before November 2004"(page 54 of Sony Corp June 2015 Motion To Dismiss)

iii)    "Greenspan's assertion that Morris Nichols "failed to fix the defective disclosure they swore would be fixed" is specious. Mot. to Disqualify. ¶ 5. "
(page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

iv)     "As Greenspan acknowledges, Mr. Edell's connection with the Showorks bankruptcy was publicly disclosed no later than July 2004, while the 2003 Chancery Action was still pending. Compl. ¶ 51(i); Coen Decl. Ex. J"
(page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

Because Coen and Sony Corp have omitted to make a true entry in the business records

of an enterprise in violation of Coen's duty to do so as the former Delaware counsel for

eUniverse which Coen and Sony know exists under Federal and State security laws.

Further, Sony's decision in 2015 to claim the July 2004 proxy provides accurate

information regarding Edell's work experience and accurately discloses Edell's

connection with the showorks bankruptcy further violates § 871 because such Defendants

are taking action that "prevents the making of a true entry" in the business records of an

enterprise.  Because Sony is preventing eUniverse's former counsel Coen from

contacting the SEC and restating or amending the July 2004 proxy disclosure because

12

such action would create adverse consequences in Case #9567.

## COUNT THIRTY SIX – VIOLATION DEL CODE § 877

Plaintiff incorporates by reference and realleges each allegation set forth above.

1. DEL CODE § 877 states:

"A person is guilty of offering a false instrument for filing when, knowing that a written instrument contains a false statement or false information, and intending to defraud the State, a political subdivision thereof or another person, the person offers or presents it to a public office or a public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of the public office or public servant. "

2. Sony Corp, Morris, Nichols, Arsht, & Tunnell, and Kevin Coen violated Del

Code § 877 by filing or aiding and abetting the filing of the July 2004 eUniverse Proxy

because they knew it "contains a false statement".

3.      Sony Corp, Morris, Nichols, Arsht, & Tunnell, and Kevin Coen violated Del

Code § 877 by filing or aiding and abetting the filing of the June 2015 Motion To

Dismiss pleading because they knew it contained at least one "false statement" or "false

information", specifically the following:

i)      "Even assuming that there was, at some point, a failure to disclose Mr. Edell's connection with the Showorks bankruptcy – which the Sony Entities do not admit – the relevant information was publicly known by no later than 2004." (page 53 of Coen and Sony Corp June 2015 Motion To Dismiss)

ii)     "Thus, the fact of Mr. Edell's connection to the Showorks bankruptcy was known a decade before Greenspan filed this suit. It was also disclosed before November 2004"(page 54 of Sony Corp June 2015 Motion To Dismiss)

iii)    "Greenspan's assertion that Morris Nichols "failed to fix the defective disclosure they swore would be fixed" is specious. Mot. to Disqualify. ¶ 5. " (page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

iv)     "Mr. Edell's connection with the Showorks bankruptcy was publicly disclosed no later than July 2004, while the 2003 Chancery Action was still pending. Compl. ¶ 51(i); Coen Decl. Ex. J" (page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

Because such statements are false in that Mr. Edell's "connection with the Showorks bankruptcy" was not publicly disclosed in the July 2004 proxy, because:

i)   such bankruptcy occurred in 2002  after Edell worked at Showorks during 2001 and 2002.

ii)   the July 2004 proxy falsely states Mr. Edell worked at Soundelux during 2001 and 2002.

iii)   the July 2004 proxy lists false 2001-2002 employment information for Mr. Edell

iii)   the July 2004 proxy omits true 2001-2002 employment information for Mr. Edell

Therefore, the July 2004 proxy obstructs the public from learning the accurate and true "connection" between "Mr. Edell" and the "Showorks bankruptcy".

3.  Sony Corp, Morris, Nichols, Arsht, & Tunnell, and Kevin Coen sought for the false information and statements made in the June 2015 pleadings to be filed with and recorded and become part of the public record.

**COUNT THIRTY SEVEN - PERJURY, VIOLATION U.S.C. § 1001, OR 18 U.S.C. § 1341**

Plaintiff incorporates by reference and realleges each allegation set forth above.

1. The following Sony Corp[7] Defendants statements in their June 2015 Motion To Dismiss pleading violated U.S.C 1001, 18 U.S.C 1341, or were acts of perjury:

i.   "Even assuming that there was, at some point, a failure to disclose Mr. Edell's connection with the Showorks bankruptcy – which the Sony Entities do not admit – the relevant information was publicly known by no later than 2004." (page 53 of Coen and Sony Corp June 2015 Motion To Dismiss)

---

[7] For purposes herein, "Sony Corp" shall mean: i) Sony Corporation, incorporated in Japan ii) Sony Corporation of America, a Delaware corporation iii)  Sony Music Entertainment Inc., a Delaware Corporation iv) 550 Digital Media Ventures, Inc. ("550 DMV"), a Delaware Corporation v)  Sony Broadband Entertainment, Inc., vi) Sony Entertainment Inc.,vii)  Sony Music Holdings Inc., vii) Sony Pictures Animation Inc. viii) Sony Pictures Imageworks Inc. ix) New Technology Holdings, x) Agent Morris, Nichols, Arsht & Tunnell LLP, xi) Kevin Coen, xii) Eric Seiler xiii) Michael S. Palmieri xiv) Friedman Kaplan Seiler & Adelman LLP xv) David Teklits

ii.     "Thus, the fact of Mr. Edell's connection to the Showorks bankruptcy was
        known a decade before Greenspan filed this suit. It was also disclosed before
        November 2004"
            (page 54 of Coen and Sony Corp June 2015 Motion To Dismiss)

iii.    "Greenspan's assertion that Morris Nichols "failed to fix the defective
        disclosure they swore would be fixed" is specious. Mot. to Disqualify. ¶ 5. "
        (page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

iv.     "As Greenspan acknowledges, Mr. Edell's connection with the Showorks
        bankruptcy was publicly disclosed no later than July 2004, while the 2003
        Chancery Action was still pending. Compl. ¶ 51(i); Coen Decl. Ex. J"
        (page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

2.  Such statements were knowingly false when made by Defendants as explained in

detail as set forth above.


/s/ Brad D. Greenspan
Brad D. Greenspan, Plaintiff in Pro Per
2995 Woodside Rd.
Suite 400
Woodside, CA 94062 / Ph: Ph: 408-599-3340 ext: 454
Dated: December 23, 2015

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BRAD D. GREENSPAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9567-VCG |
| | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| CORPORATION, NEWS AMERICA | ) | |
| CORPORATION, WASHINGTON POST | ) | |
| CORPORATION, SONY CORPORATION, | ) | |
| SONY CORPORATION AMERICA, SONY | ) | |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) | |
| MEDIA VENTURES, INC., SONY BROADBAND | ) | |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) | |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) | |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) | |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) | |
| INC., JP MORGAN CHASE CORPORATION, | ) | |
| REDPOINT PARTNERS CORPORATION and | ) | |
| ARENT FOX LAW LLC INC., | ) | |
| | ) | |
| Defendants, | ) | |

## <u>MOTION RULE 70</u>

Plaintiff seeks relief under Rule 70(a) or 70(b) against Defendants News Corp, Sony

Corp, Morris Nichols, and Kevin Coen for continuing to violate this Court's 2004 order

and ruling in Case No.106-N, 106-VCS, and 107-VCS. To be held in contempt, a party

must be bound by an order, have notice of it, and nevertheless violate it.[1]

      1.     Plaintiff fully incorporates herein Plaintiff's August 27, 2014 "Plaintiff's

Motion and Memorandum Points And Authorities In Support Of Motion For Contempt

---

[1] Aveta Inc. v Bengoa, 986 A.2d 1166, 1181 (Del. Ch. 2009) (citing Arbitrium (Cayman Islands)
Handels AG v. Johnson, 1997 WL 589030, at *3 (Del. Ch. Sept.17, 1997).

70(B)'.

2.      Defendants cited and part of the August 27, 2014 70(B) motion are still in

contempt.

3.      However, Defendant Morris Nichols, Arsht, & Tunnell has further violated

the Court's order thru its false claims made in the June 2015 Motion To Dismiss pleading

which is detailed in the concurrently filed Motion To Supplement Pleadings which is

hereby fully incorporated herein.

4.      First, to help defendants, Plaintiff provides the type of disclosure which is

required to be true and accurate in regards to Mr. Edell's work experience:

> "Our former Chairman who resigned effective December 2003 was replaced by
> Jeffrey S. Edell. Edell was most recently President and CEO of Showorks
> Entertainment Group, Inc. from  January 2001 thru April 2002. Sometime in 2002,
> Showorks Entertainment Group, Inc.  underwent a name change to MTS, Inc.
> Sometime in September of 2002 Edell learned that MTS,  Inc. had filed for
> bankruptcy under Chapter 7. Edell was not there at the time of filing. Edell has
> informed the company Edell was never personally named or contacted as part of
> the bankruptcy under Chapter 7 or subsequent proceedings. Edell was from 1995
> thru December 31, 2000,President and CEO of Soundelux Entertainment Group.,
> Inc." (page 55 #9567 verified complaint)

5.      Sony  Corp and Coen in 2015 are in contempt of Vice Chancellor's ruling

and orders and further violate § 871 thru their misleading false statements in the June

2015 pleading:

> i)      "Even assuming that there was, at some point, a failure to disclose Mr. Edell's
>         connection with the Showorks bankruptcy – which the Sony Entities do not
>         admit – the relevant information was publicly known by no later than 2004."
>         (page 53 of Coen and Sony Corp June 2015 Motion To Dismiss)
>
> ii)     "Thus, the fact of Mr. Edell's connection to the Showorks bankruptcy was
>         known a decade before Greenspan filed this suit. It was also disclosed before
>         November 2004"(page 54 of Sony Corp June 2015 Motion To Dismiss)
>
> iii)    "Greenspan's assertion that Morris Nichols "failed to fix the defective
>         disclosure they swore would be fixed" is specious. Mot. to Disqualify. ¶ 5. "

(page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

iv)   " , Mr. Edell's connection with the Showorks bankruptcy was publicly disclosed no later than July 2004, while the 2003 Chancery Action was still pending. Compl. ¶ 51(i); Coen Decl. Ex. J"
(page 61 of Coen and Sony Corp June 2015 Motion To Dismiss)

Because Coen and Sony Corp have omitted to make a true entry in the business records of an enterprise in violation of Coen's duty to do so as the former Delaware counsel for eUniverse which Coen and Sony know exists under Federal and State security laws.

Further, Sony's decision in 2015 to claim the July 2004 proxy provides accurate information regarding Edell's work experience and accurately discloses Edell's connection with the showorks bankruptcy further violates § 871 because such Defendants are taking action that "prevents the making of a true entry" in the business records of an enterprise.  Because Sony is preventing eUniverse's former counsel Coen from contacting the SEC and restating or amending the July 2004 proxy disclosure because such action would create adverse consequences in Case #9567.

6.    Sony Corp, Morris, Nichols, Arsht, & Tunnell, and Kevin Coen violated Del Code § 877 by filing or aiding and abetting the filing of the June 2015 Motion To Dismiss pleading because they knew it contained at least one "false statement" or "false information",

Because such statements are false in that Mr. Edell's "connection with the Showorks bankruptcy" was not publicly disclosed in the July 2004 proxy, because:

i)    such bankruptcy occurred in 2002  after Edell worked at Showorks during 2001 and 2002.

ii)   the July 2004 proxy falsely states Mr. Edell worked at Soundelux during 2001 and 2002.

3

iii)    the July 2004 proxy lists false 2001-2002 employment information for Mr. Edell

iii)    the July 2004 proxy omits true 2001-2002 employment information for Mr. Edell

Therefore, the July 2004 proxy obstructs the public from learning the accurate and true "connection" between "Mr. Edell" and the "Showorks bankruptcy".

7.   Sony Corp, Morris, Nichols, Arsht, & Tunnell, and Kevin Coen sought for the false information and statements made in the June 2015 pleadings to be filed with and recorded and become part of the public record, all in violation of violated Del Code § 877

CONCLUSION

For the aforementioned reasons, this Motion should be granted and the contempt hearing set immediately to force Defendants to cease  their improper conduct. Further as part of its broad remedial powers, the Court may impose a fine[2], for example, to coerce a non-complying party to cease improper conduct.[3]

/s/ Brad D. Greenspan
Brad D. Greenspan, Plaintiff in pro per
2995 Woodside Rd.
Suite 400
Woodside, CA 94062 / Ph: Ph: 408‑599‑3340 ext: 454
Dated: December 23, 2015

---

[2] Magness v. Krewson, 2004 WL 87734, at *3 (Del. Ch. Apr. 15, 2004).
[3] Mother African Union First Colored Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church, 1992 WL 83518, at *6 (Del. Ch. Apr. 22, 1992) (citing Del. State Bar Ass'n v. Alexander, 386 A.2d 652, 665 (Del. 1978)).

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BRAD D. GREENSPAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9567-VCG |
| | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| CORPORATION, NEWS AMERICA | ) | |
| CORPORATION, WASHINGTON POST | ) | |
| CORPORATION, SONY CORPORATION, | ) | |
| SONY CORPORATION AMERICA, SONY | ) | |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) | |
| MEDIA VENTURES, INC., SONY BROADBAND | ) | |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) | |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) | |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) | |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) | |
| INC., JP MORGAN CHASE CORPORATION, | ) | |
| REDPOINT PARTNERS CORPORATION and | ) | |
| ARENT FOX LAW LLC INC., | ) | |
| | ) | |
| Defendants, | ) | |

**EX PARTE MOTION TO STAY MOTION TO DISMISS PROCEEDINGS**

Petitioner seeks to stay the current Motion To Dismiss Proceedings under

Rule 62 until after Plaintiff's Second Motion TRO and Second Preliminary

Injunction are disposed of.

Its  only equitable to dispose of these urgent matters causing Plaintiff great

prejudice and damages before making Plaintiff reply to the Motion to Dismiss

complaint.

DATED: December 23, 2015
Respectfully submitted,

*/s/ Brad D. Greenspan*
Brad Greenspan
Signature for Plaintiff Pro Se
2995 Woodside Rd.
Suite 400
Woodside, CA 94062
Ph: 408-599-3340 ext: 454
Brad D. Greenspan

1

EX PARTE MOTION TO STAY MOTION TO DISMISS PROCEEDINGS

CERTIFICATE OF SERVICE

I, _____Brad D. Greenspan _ __, hereby certify that   Copies of the

PLAINTIFF'S Motion TRO & Declaration in Support, Motion Preliminary Injunction, Motion To Supplement Pleadings, Motion To Continue, Motion Rule 70  were sent by_ first class mail  on this  24th day of December 2015 upon the following person(s):

Attorneys for Defendants.

c/o Gregory V. Varallo
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
*Attorneys for Defendants News Corporation, News Corp, Twenty-First Century Fox Inc., News America Corporation, 21ˢᵗ Century Fox,  eUniverse Inc., Myspace, Inc., Intermix Media LLC, VantagePoint Partners, Redpoint Partners,*

c/o Kevin Coen
Morris, Nichols, Arsht & Tunnell
1201 North Market Street, 16th Floor
Wilmington, DE 19899-1347
*Attorneys for Defendants Sony Corporation, Sony Corporation America, Sony Music Entertainment Inc., 550 Digital Media Ventures, Inc., Sony Broadband Entertainment, Inc.*

 c/o Rebecca L. Butcher
Landis, Rath & Cobb LLP
919 N Market St Ste 1800,
Wilmington, DE 19801
 *Attorneys for JPMorgan Chase & Co.,*

c/o Robert M. Vrana
Young Conaway Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
*Attorneys for Washington Post Corporation and Graham Industries*


Date: 12/24/2015__


(Signed)_____ */s/ Brad D. Greenspan_____*
                              Brad D. Greenspan, Plaintiff in pro per
                              2995 Woodside Rd., Suite 400
                              Woodside, CA 94062,
                              Ph: 408-599-3340 ext: 454

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| BRAD D. GREENSPAN, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 9567-ML |
| | ) |
| NEWS CORPORATION, 21st CENTURY FOX | ) |
| CORPORATION, NEWS AMERICA | ) |
| CORPORATION, WASHINGTON POST | ) |
| CORPORATION, SONY CORPORATION, | ) |
| SONY CORPORATION AMERICA, SONY | ) |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) |
| MEDIA VENTURES, INC., SONY BROADBAND | ) |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) |
| NEWS CORPORATION, 21st CENTURY FOX | ) |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) |
| INC., JP MORGAN CHASE CORPORATION, | ) |
| REDPOINT PARTNERS CORPORATION and | ) |
| ARENT FOX LAW LLC INC., | ) |
| Defendants, | ) |

## AMENDED FEBRUARY 14, 2015 MOTION TO TAKE JUDICIAL NOTICE

This amended pleading fixes inadvertent numbering and formatting errors and omissions from

February 14, 2015 dated pleading.  Petitioner seeks Judicial Notice of following facts under

D.R.E. 201 or alternatively under D.R.E 202.[1]

1. April 11, 2011 Answers Corporation SEC Form 8-K included statement:

"§ Based upon publicly available information, it appears that Mr. Greenspan has never concluded an acquisition of a public company. In fact, based upon publicly available information, it appears that on at least two occasions, Mr. Greenspan made offers to acquire a public company but was unable to complete or consummate those offers."
http://www.sec.gov/Archives/edgar/data/1283073/000118811211000966/t70339a_8k.htm

2. i. June 11, 1999 eUniverse, Inc. SEC Form 10 included statements:

"Item 1 Business

---

[1] see also Dreiling v. Am. Express Co., 458 F.3d 942, 946 n. 2 (9th Cir.2006) (courts "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings").

1

The registrant, eUniverse, Inc., is a Nevada corporation engaged in developing, acquiring and operating a network of web sites which provide entertainment-oriented products and services. At the present time, the registrant is engaged in the retail sale of audio CDs, videotapes, digital video disks ("DVDs") and related services. The registrant intends to expand its offerings into the areas of online gaming and other forms of web-based entertainment programming."
*****OMISSION**

"The Company was founded in February 1999 by Brad D. Greenspan when he incorporated Entertainment Universe, Inc. ("EUI"). On April 14, 1999, EUI sold 1,832,812 shares of Series A Convertible Preferred Stock in a private offering under Regulation D of the Securities Act of 1933 (the "Securities Act") (See "Item 10, Recent Sales of Unregistered Securities") and used a portion of the proceeds to acquire CD Universe, Inc. ("CD Universe"). CD Universe is a Connecticut corporation engaged in the business of selling audio CDs and videotapes over the internet. Also on April 14, 1999, EUI merged with and into a public company, Motorcycle Centers of America, Inc. ("MCA"), a Nevada corporation with limited business transactions and deriving no current revenue, whose shares were traded on the OTC Bulletin Board, which then changed its name to eUniverse, Inc. The Company is the surviving entity of that merger. "

ii. June 11, 1999 eUniverse, Inc. SEC Form 10 included the following statement:

"Item 4 Security Ownership of Certain Beneficial Owners and Management
The following tables set forth certain information regarding beneficial ownership of the Company's common stock and preferred stock as of May 11, 1999 by (i) each person known by the Company to own beneficially more than 5% of the Company's common stock, (ii) each of the Company's executive officers and directors and (iii) all directors and executive officers as a group:Common Stock: Name of Beneficial Owner Shares Beneficially Percentage Beneficially Owned(1)Owned(2)

| | | |
|---|---|---|
| Brad D. Greenspan | 8,061,000 | 57.2% |
| Charles Beilman | 2,425,000 | 17.2% |
| Joseph Abrams(3) | 1,539,000 | 10.9% |
| Leland N. Silvas | 358,334(4) | 2.5% |
| William R. Wagner | 8,333(5) | nm |
| Directors and Executive | 10,852,667 | 77.0%   Officers as a Group" |

http://www.sec.gov/Archives/edgar/data/1088244/000095013099003623/0000950130-99-003623.txt

iii. July 3, 2002  eUniverse, Inc. SEC Form 10-K/A included the following statement:

"On April 14, 1999, the reorganization was completed. As a result of the reorganization, Entertainment Universe shareholders owned 92% of Motorcycle Center's shares common stock***OMISSION***"

3. The December 10, 2004 eUniverse, Inc. (renamed Intermix Media, Inc.)
    SEC Form 8-K included the following statements:

"**Item 1.01 Entry into a Material Definitive Agreement.**
On December 7, 2004, affiliates of Redpoint Ventures (collectively "Redpoint Ventures") agreed to invest $4 million in Intermix Media, Inc. (the "Company" or the "Registrant") in exchange for 1 million shares of Company common stock and a five-year warrant to purchase 150,000 shares of Company common stock at $4 per share. "****Omission****
"**Item 5.02 Departure of Directors or Principal Officers; Election of Directors**; Appointment of Principal Officers.

On December 7, 2004, Jeffrey Edell, Chairman of the Company's Board of Directors, resigned from the Company's Board of Directors. Mr. Edell did not

AMENDED FEBRUARY 14, 2015 MOTION TO TAKE JUDICIAL NOTICE

resign from the Board of Directors because of a disagreement with the Registrant on any matter relating to the Registrant's operations, policies or practices.

On December 7, 2004, Thomas Flahie, Chief Financial Officer of the Company, informed the Company's Board of Directors of his intent to resign from the Company. Mr. Flahie has agreed to remain with the Company as Chief Financial Officer until a transition plan is put into place.***OMISSION***

Item 7.01 Regulation FD Disclosure.
On December 7, 2004, the Company, Redpoint Ventures and MySpace Ventures LLC signed a non-binding term sheet that contemplates the investment by Redpoint Ventures in a newly formed Company subsidiary that will own the Company's MySpace.com business. The current owners of the MySpace.com business, including the Company, will receive a portion of the proceeds to be invested by Redpoint Ventures and the Company will continue to retain a majority interest in the new entity. MySpace Ventures LLC, an entity that currently owns a one-third interest in the MySpace.com business, also agreed to invest $300,000 in the Company in exchange for 75,000 shares of Company common stock and a five-year warrant to purchase 11,250 shares of Company common stock at $4 per share. The owners of MySpace Ventures LLC are Company employees. The MySpace Ventures LLC $300,000 investment in the Company is conditioned on the completion of the transactions contemplated by the non-binding term sheet. On December 8, 2004, a press release was issued by the Company announcing the signing of the non-binding term sheet. ***OMISSION***
http://www.sec.gov/Archives/edgar/data/1088244/000119312504210928/d8k.htm

   4.  The December 8, 2004 eUniverse, Inc. (renamed Intermix Media, Inc.)
       SEC Form 8-K EXHIBIT 99.1 Press release contained the following statement:

"Intermix has rapidly emerged as a leading online media and entertainment player with the extraordinary success of the Intermix Network and the tremendous growth of Alena. MySpace has developed a leadership position in the social networking space, and we believe in its vision and ability to provide real value to users and advertisers," said Geoff Yang, partner of Redpoint Ventures.
http://www.sec.gov/Archives/edgar/data/1088244/000119312504210928/dex991.htm

   5.  The December 10, 2004 eUniverse, Inc. (renamed Intermix Media, Inc.) SEC
       Form 8-K EXHIBIT 10.23 contains the following signature page:

      "Redpoint Ventures II, L.P. by its General Partner
       Redpoint Ventures II, LLC
       By:   W. Allen Beasley, Manager

       Redpoint Associates II, LLC, as nominee
       By:   W. Allen Beasley, Manager
       Address for all:
       3000 Sand Hill Road
       Building 2, Suite 290
       Menlo Park, CA 94025 Attn: Allen Beasley"

http://www.sec.gov/Archives/edgar/data/1088244/000119312504210928/dex102.htm

DATED: March 21, 2015, respectfully submitted,

/s/ Brad D. Greenspan
Brad D. Greenspan
2995 Woodside Rd., Suite 400
Woodside, CA 94062, Ph: 408-827-9656 ext: 454

AMENDED FEBRUARY 14, 2015 MOTION TO TAKE JUDICIAL NOTICE

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| BRAD D. GREENSPAN, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 9567-ML |
| | ) |
| NEWS CORPORATION, 21ST CENTURY FOX | ) |
| CORPORATION, NEWS AMERICA | ) |
| CORPORATION, WASHINGTON POST | ) |
| CORPORATION, SONY CORPORATION, SONY | ) |
| CORPORATION AMERICA, SONY MUSIC | ) |
| ENTERTAINMENT INC., 550 DIGITAL MEDIA | ) |
| VENTURES, INC., SONY BROADBAND | ) |
| ENTERTAINMENT, INC., EUNIVERSE, INC., | ) |
| NEWS CORPORATION, 21ST CENTURY FOX, | ) |
| EUNIVERSE, INC., RGRD LAW LLC, | ) |
| NTAGEPOINT VENTURE PARTNERS, ORRICK | ) |
| HERRINGTON LAW LLC, EM1 MUSIC, WARNER | ) |
| MUSIC GROUP, IAC CORPORATION, MYSPACE, | ) |
| INC., ASKJEEVES, INC., JP MORGAN CHASE | ) |
| CORPORATION, REDPOINT PARTNERS | ) |
| CORPORATION, and ARENT FOX LAW LLC INC., | ) |
| Defendants. | ) |

**MOTION FOR RECUSAL**

1.       Master Abagail Legrow should recuse herself .  The clear conflict of

interest stems from her employment at POTTER ANDERSON Law Firm during April 2011. While

she was working at Potter Anderson her law firm was counsel to Answers Corporation's  false

statement April 11, 2011 via 8k, specifically, that

> "§ Based upon publicly available information, it appears that Mr. Greenspan has never
> concluded an acquisition of a public company."

(See February 14, 2015 Motion To Take Judicial Notice #1: Page 5 of the April 11, 2011: ANSWERS
CORPORATION UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC") FORM 8-K)

2.       Such statement is false because the plaintiff did conclude an acquisition of a

public company, specifically publicly traded Motorcycles Center of America in 1999, which

was renamed eUniverse. Further, proof of this fact is that  the plaintiff owned 57.2% of the

public company's common stock after the acquisition.  (See February 14, 2015 Motion To Take
Judicial Notice #2,  Page 1 & 14 of the June 11, 1999: eUNIVERSE, INC. SEC FORM 10).

3.       That Defendant's statement was made with scienter and is defamatory because

defendant Beasley made two private placement investments in the same public company after the

plaintiff concluded his acquisition in 1999, using his private equity fund that Beasley is a

principal of co-defendant Redpoint Partners. (See February 14, 2015 Motion To Take Judicial

Notice #3, Page 1 of the December  10, 2004 Intermix Media, Inc. SEC FORM 8-K)

4.      Further, defendant's false statement was made in bad faith because Beasley's

Redpoint Partners is quoted in a press release regarding the transaction.

(See February 14, 2015 Motion To Take Judicial Notice #4, Page 1 of December 8, 2004 INTERMIX
MEDIA INC. SEC FORM 8-K EXHIBIT 99.1 Press release: )

5.      Further, Beasley is the signatory on the transaction documents.

(See February 14, 2015 Motion To Take Judicial Notice #5, Page 4 & 7 of December 10, 2004
INTERMIX MEDIA INC. SEC FORM 8-K EXHIBIT 10.2 3 –INVESTOR RIGHTS AGREEMENT)

6.      On April 12, 2011, Master Legrow's law firm Potter Anderson sent a letter

pleading to Chancellor Noble (Exhibit #1, page 2) that made the following statement about plaintiff

based on the April 11, 2011 false claim in the public Form 8-K by defendant Answers Corporation:

 "(iii) significant concerns regarding Mr. Greenspan himself and his past history,"

Despite Plaintiff contacting Answers Corporation on April 12th with information proving the

April 11, 2011 claims by Answers Corporation in its Form 8k were false, neither Answers Corporation

nor Potter Anderson corrected or withdrew their false statements. Answers Corporation then published

an additional 8k on April 14, 2011, repeating its false claims about Plaintiff which was underpinned by

the false claims of Potter Anderson in its April 12, 2011 letter pleading to Chancellor Noble. Potter

Anderson's letter pleading was made with scienter because the Plaintiff was a client of Potter

Anderson's between 2003 and 2004 and paid 100% of the legal fees Potter Anderson billed Plaintiff.

Respectfully submitted

Date:   February 14, 2015

/s/  Brad D. Greenspan
Brad D. Greenspan
2995 Woodside Rd.
Suite 400
Woodside, CA 94062
Ph: 408-827-9656 ext: 454
*Pro Se*

EXHIBIT #1



EFiled:  Apr 12 2011 11:05AM EDT
Transaction ID 36982074
Case No. 6170-VCN

Berton W. Ashman
Attorney at Law
bashman@potteranderson.com
302 984-6180  Direct Phone
302 778-6180  Fax

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984-6000

www.potteranderson.com

April 12, 2011

<u>VIA E-FILE</u>

The Honorable John W. Noble
Vice Chancellor
Court of Chancery
417 South State Street
Dover, Delaware  19901

Re:    *In re Answers Corp. S'holder Litig.*, C.A. No. 6170-VCN

Dear Vice Chancellor Noble:

On behalf of Answers Corporation ("Answers" or the "Company") and the defendant directors, we respectfully write to oppose plaintiffs' request by letter dated April 11, 2011 for an injunction adjourning the Answers stockholders meeting from April 14 to April 22. Plaintiffs' letter does not come remotely close to the showing required for the extraordinary relief of a temporary restraining order, and granting that relief would frustrate the stockholders' right to vote now on the merger proposal unanimously recommended by the Answers Board of Directors.

The principal basis for plaintiffs' letter request to extend the shareholder meeting date by eight days is that Brad Greenspan sent a letter over the weekend -- three days before the stockholder meeting -- purporting to propose a transaction whereby certain Greenspan-affiliated companies would pay $13.50 offer for Answers and "a two-day adjournment of the meeting is insufficient time for the shareholders to digest the information in the Offer and the Company's response and to consider how to vote or to change a vote already cast."  As set forth in the press release submitted to Your Honor yesterday morning and the enclosed SEC Form 8-K, it is the Board's considered judgment, weighing Mr. Greenspan's letter, the Board's response, and the current status of AFCV's offer and the stockholder vote, that an adjournment to Thursday, April 14 -- three full days after Mr. Greenspan's letter and the Board's response were made public -- is more than sufficient time for the Answers stockholders to reflect upon and react to Mr. Greenspan's vague, speculative and highly conditional proposal and the Board's response.  Nothing in plaintiffs' letter suggests that eight additional days are necessary -- particularly in light of the weakness in and lack of credibility of Mr. Greenspan's letter.

The Honorable John W. Noble
April 12, 2011
Page 2

        Indeed, plaintiffs cite no law or facts in support of their conclusory claims or the extraordinary relief they seek.   The cases they cite address situations in which the Court issued an injunction adjourning a meeting because the proxy disclosures in question were false and misleading -- not our facts, where there is no claim that the facts have not been fully disclosed.   To the contrary, the Company included Mr. Greenspan's full letter as an exhibit to its filings on Monday, and the letter and the Board's response have been widely reported in the press.

        The only apparent reason for the delay now requested by plaintiffs is that Mr. Greenspan waited until three days before the stockholder meeting (and two months after the merger was publicly announced) to make his deficient proposal. Not surprisingly, plaintiffs cite no case in which an injunction has been granted under such circumstances, and it cannot be the law that simply because someone sends a letter proposing an alternative transaction on the eve of a shareholder meeting that the meeting must be extended by 10 days. Furthermore, the uncertainty created by the unreasonably long extension sought by plaintiffs might very well harm Answers and its stockholders and jeopardize the stockholders' right to a prompt vote on the AFCV merger proposal and the substantial premium conferred on stockholders by that merger.

        Plaintiffs also assert that "[a]n extension would also give the Competing Bidder a chance to respond to the rejection by Defendants." This argument is likewise meritless. Answers announced the merger agreement with AFCV's subsidiary on February 3, more than two months ago. Mr. Greenspan did not see fit to submit his letter to Answers until more than two months later, after this Court's hearing on the preliminary injunction motion and just two business days before the stockholders meeting. If Mr. Greenspan were serious, he would not have waited until the eve of the meeting to submit his proposal. Indeed, based on the form, substance and timing of Mr. Greenspan's letter, it is the Board's considered judgment that his proposal lacks credibility and is not likely to result in a transaction that is superior to the definitive merger with AFCV and its attendant premium. *See In re Dollar Thrifty S'holder Litig.*, 2010 WL 5648895, at *17 (Del. Ch.) ("directors are generally free to select the path to value maximization, so long as they choose a reasonable route to get there").

        In their letter, plaintiffs also take issue with one of the reasons for the Board's rejection of Mr. Greenspan's proposal -- the Board's conclusion that Answers could not support leverage of $55 million, the size of the loan that Mr. Greenspan apparently would intend to secure. Plaintiffs' letter ignores, however, that the nature of that loan was just one of numerous factors cited by the Board for its decision and described in detail in the enclosed Form 8-K. These include (i) the absence of any written funding commitments and other questions concerning financing, (ii) the disparate treatment of Redpoint's preferred stock, (iii) significant concerns regarding Mr. Greenspan himself and his past history, (iv) the suspect timing of the letter, (v) the lack of information in Mr. Greenspan's letter, and (vi) the numerous inconsistencies and ambiguities in and general unprofessional nature of the letter.  In any event, plaintiffs' comparison of Mr. Greenspan's proposed $55 million loan with the $50 million in financing obtained by AFCV from Wells Fargo is not well taken. Based on Mr. Greenspan's letter, the borrower is proposed to be either Answers itself or Mr. Greenspan's fund, which is capitalized with just $5 million (Singapore), or less than $4 million U.S.  By contrast, the borrower in the AFCV transaction is

The Honorable John W. Noble
April 12, 2011
Page 3

an affiliate of AFCV, which has a far more robust capital structure than Answers or Mr. Green-span's fund.  Although plaintiffs in their letter state that they have been "unable to find" the Wells Fargo loan agreement "as an exhibit to any Answers.com SEC filing," Answers produced that agreement (ANSW0001035) as part of the discovery in the litigation.

The remaining arguments raised by plaintiffs' letter are moot in light of the Court's decision yesterday denying plaintiffs' motion for a preliminary injunction.

In accordance with Your Honor's April 11 letter to counsel, we will be prepared to further address these issues during the teleconference scheduled for 4:15 this afternoon.

Respectfully submitted,

*/s/  Berton W. Ashman, Jr.*

Berton W. Ashman, Jr. (No. 4681)

1008647

cc:     Register in Chancery (*via e-Filing*)
        Jessica Zeldin, Esquire (*via e-Filing*)
        William M. Lafferty, Esquire (*via e-Filing*)

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| BRAD D. GREENSPAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 9567-VCG |
| | ) |
| NEWS CORPORATION, 21st CENTURY FOX | ) |
| CORPORATION, NEWS AMERICA | ) |
| CORPORATION, WASHINGTON POST | ) |
| CORPORATION, SONY CORPORATION, | ) |
| SONY CORPORATION AMERICA, SONY | ) |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) |
| MEDIA VENTURES, INC., SONY BROADBAND | ) |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) |
| NEWS CORPORATION, 21st CENTURY FOX | ) |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) |
| INC., JP MORGAN CHASE CORPORATION, | ) |
| REDPOINT PARTNERS CORPORATION and | ) |
| ARENT FOX LAW LLC INC., | ) |
| | ) |
| Defendants, | ) |

## **MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Rule 65 Plaintiff hereby moves the Court to set an oral hearing date as soon

as possible for the Preliminary Injunction. Plaintiff seeks injunctive relief and specific

performance for indemnification, contribution, recission, reformation, constructive trust

owed Plaintiff under certain contracts for relief as "Holder" of "Registrable Securities"

under Entertainment Universe, Inc.'s  ('EUI') 1999 Registration Rights Agreement.

Dated:       June 17,  2015       /s/ Brad D. Greenspan
                                  Brad D. Greenspan
                                  2995 Woodside Rd., Suite 400
                                  Woodside, CA 94062 / Ph: 408-827-9656 ext: 454

1

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

BRAD D. GREENSPAN,                                    )
                                                      )
          Plaintiff,                                )
                                                      )
             v.                              )      C.A. No. 9567-VCG
                                                      )
NEWS CORPORATION, 21st CENTURY FOX                    )
CORPORATION, NEWS AMERICA                             )
CORPORATION, WASHINGTON POST                          )
CORPORATION, SONY CORPORATION,                        )
SONY CORPORATION AMERICA, SONY                        )
MUSIC ENTERTAINMENT, INC., 550 DIGITAL                )
MEDIA VENTURES, INC., SONY BROADBAND                  )
ENTERTAINMENT, INC., EUNIVERSE, INC.                  )
NEWS CORPORATION, 21st CENTURY FOX                    )
EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT             )
VENTURE PARTNERS, ORRICK HERRINGTON                   )
LAW LLC, EMI MUSIC, WARNER MUSIC GROUP,               )
IAC CORPORATION, MYSPACE, INC., ASKJEEVES,            )
INC., JP MORGAN CHASE CORPORATION,                    )
REDPOINT PARTNERS CORPORATION and                     )
ARENT FOX LAW LLC INC.,                               )
                                                      )
          Defendants,                               )


**PLAINTIFF'S OPENING BRIEF IN ITS MOTION FOR SPECIFIC
PERFORMANCE INJUNCTIVE RELIEF AND PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………………..4

PRELIMINARY STATEMENT…………………………………………………………...5

NATURE AND STAGE OF THE PROCEEDINGS………………………………………6

FACTUAL BACKGROUND…………………………………………………………..…7

I-     SPECIFIC PERFORMANCE OR INJUNCTIVE RELIEF:…………………………..8

A.    15(a): "ANY" "JOINT OR SEVERAL" 1999 AGREEMENT……………………………...8

B.    SPECIFIC PERFORMANCE RIGHT OF RECISSION…………………………….......11

C.    Plaintiff Guaranteed "Equal" Advancement Terms" ………………….……….  …12

D.    Section (14) grants "converted into securities" Specific Performance:…………..……...14

E.    2001 SONY REGISTRATION RIGHTS AGREEMENT……………………………..……...15

F.    SONY 2001 STOCK AGREEMENT SPECIFIC PERFORMANCE…………………….……...20

G.    SONY 2001 SHARE PURCHASE AGREEMENT …………………………….……........23

H.    SONY IS IN BREACH OF ITS 2001 "GUARANTY…………………………..………...25

I.    2003 REGISTRATION RIGHTS AGREEMENT ("2003 Regi Agreement")……………….26

J.    NEWS CORP   2005 VOTING AGREEMENT ……………………………………….26

K.    BREACH OF NEWS CORP GUARANTEE AGREEMENT………………..………..………...28

ARGUMENT……………………………………………………….....................28

I.    DELAWARE LAW REQUIRES GIVING EFFECT TO ALL PROVISIONS..29.
        A. Summary Judgment: Proper Framework for Contract Interpretation………..............29
        B. The Agreements Should Not Be Interpreted To Nullify Any Provisions……………31

II.    AGREEMENTS PLAIN LANGUAGE COMPEL SPECIFIC PERFORMANCE.32
        A. The Contract Expressly Provides For Specific Performance…………………….30
        B. Plaintiff's Interpretation Harmonizes Contract Provisions………………………30

A.    PRELIMINARY INJUNCTION…………………………….....................31

FRAUDULENT MAY 19, 2014 "EX PARTE APPLICATION"………………33

CONCLUSION…………………………………………………………….…..........37

B. Declaratory Relief…………………………………………….…......46

C.    SPECIFIC PERFORMANCE RELIEF: …………………………………....50
        iii.     Reformation or Recission……………………………………53

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*See* Stifel Fin. Corp. v. Cochran, 809 A.2d 555 (Del. 2002)…………………………..6

*Pellaton v. Bank of N.Y.,* 592 A.2d 473, 478 (Del. 1991)..………………..……………30

*Seidensticker v. Gasparailla Inn, Inc.*
No. 2555-CC, 2007 WL 1930428, at *3 (Del. Ch. June 19, 2007) …..……………..30

*E.I du Pont de Nemours & Co. v. Shell Oil Co.,498 A.2d* 1108, 1113 (Del 1985) …....30

*Cerebus Int'l, Ltd v. Apollo Mgmt, L.P.*, No.
16425, 1999 WL 33236239, at *4 (Del. Ch. 1999)…….……………………………....30

*Council of the Dorset Condo. Apts v. Gordon,* 801 A. 2d 1, 7 (Del. 2002) …………..30

*Raffman v. Wilmington Hous. Auth,* 179 A. 2d 99, 102 (Del. 1962)…………………..31

*In re Blue Rock Manor Civic Ass;n v. Hartline*
Civ. A. No. 11802, 1992 WL 251381, at *3 (Del. Ch. Sept 29, 1992) …………………31

Emerald P'rs v. Berlin, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003)………….31

*Gildor v. Optical Solutions, Inc.,* No.
No. Civ. A 1416-N, 2006 WL 1596678, at *10 (Del. Ch. June 5, 2006) ……………....31

*True North Comm'ns, Inc. v. Publicis S.A.,*
711 A. 2d 34, 38 (Del. Ch. 1997) (Chandler, C.), *aff'd* 705 A. 2d 244 (Del 1997) …....31

Donald J. Wolfe, Jr.& Michael A. Pittenger,
*Corporate and Commercial Practice in the Delaware Court of Chancery*, 12-3 (2007).31

*Hough Assocs., Inc. v. Hill*, No. Civ. A 2385-N, 2007 WL 148751,
at *18 (Del. Ch. Jan 17, 2007)
………………………………………………………………………………....32
........................................................................................................................31

*See Hogg v. Walker*, 622 A. 2d 648,654 (Del. 1993) …………………………………32

*Kenyon v. Millard,*  104 A. 778 (Del. Ch. 1918) …………………………………....32

## **PRELIMINARY STATEMENT**

Pursuant to Rule 65 Plaintiff hereby moves the Court for an Order preliminarily enjoining Defendants[1] News Corp and their designees, agents, and assigns, from:

i.   Filing a pleading like the May 19, 2014 "Ex Parte" Application made in any Federal or Delaware Court, which misidentifies or misstates to Judges, the status, nature, details, causes of action existing in Plaintiff's Court of Chancery Case No. 9567 verified complaint causes of action or misidentify and missate causes of actions stated in Federal pleadings,. This then creates significant unexpected disadvantages for Plaintiff in such cases and prejudices, damages, and destroys Plaintiff's legal claims and assets.

ii. Plaintiff also moves the Court for injunctive relief enjoining Defendants from further violations of Del Statue 1701 including harassing and discriminating against a whistleblower who initiated multiple Protected Acts under Statue 1703.

iii.    Additionally, Plaintiff seeks injunctive relief and specific performance for

---

[1] For purposes herein, "News Corp" shall mean: i) "News Corporation", ii) "21st Century Fox Inc.", iii) "Twenty-First Century Fox Inc.", iv) "21st Century Fox", v) "News America Corporation" vi) "21st Century Fox America", viii) "News Corporation, NI Group Limited f/k/a News International Limited, News Group Newspapers Limited"  ix) "Remainco", x) "New Newscorp Inc" xi) "New News Corporation", xii)      "NewCorp Holdings UK & Ireland",  xiii)  "NCH", xiv) eUniverse, Inc., xv) Intermix, Inc., xvi) Myspace, Inc., xvii) Intermix Media LLC, xviii) Myspace LLC)  XIV) Fox Interactive XV) Hulo, XVI) Entertainment Universe, Inc.

"Sony" shall mean: i) "Sony Corporation", ii) "Sony Corporation America", iii) "Sony Music Entertainment, Inc.", iv) "550 Digital Media Ventures" ,v) "New Technology Holdings, Inc.", vi) "Sony Broadband Entertainment, Inc.", vii) "Sony Entertainment, Inc.", viii) "Sony Music Holdings, Inc." "Defendants" used herein shall include all (i) and (ii) listed entities

indemnification[2] (See Stifel Fin. Corp. v. Cochran, B09 A.2d 555 (Del. 2002) and related contractual rights owed Plaintiff as set out herein.

## **NATURE AND STAGE OF THE PROCEEDINGS**

Opening brief in support of Plaintiff's Motion for a Preliminary Injunction[3] and to enforce contractual Specific Performance in six agreements thru injunctive relief.

On April 13, 2015, The Delaware Supreme Court reviewed Defendant's January pleading seeking to dismiss Plaintiff's claims including Motion 70b: [4]

"Based on our review of the docket in that matter, however, Mr. Greenspan does not appear to have filed his motion under Rule 70(b)" Richards Layton Finger's Varallo, September 11, 2014 pleading:

Plaintiff sought among other relief from the Delaware Supreme Court, affirmation such claims including the right to have issued an "Order for the hearing on the properly filed Motion 70b."[5] were still pending. The Delaware Supreme Court rejected Defendant's efforts to eliminate "pending" motions and ruled affirming Plaintiff's right to several motions "on the substantive issues below" including "(v) order a hearing on his "Motion 70b."[6] The Supreme Court implicitly rejected Defendant's ploy to add a new

---

[2] The supreme court determined that the language in the indemnification statute did not require the director to make a demand and allow the corporation to determine if indemnification was appropriate. It "allows for the possibility that the Court of Chancery will order indemnification, thus negating the responsibility of the corporation to determine the propriety of the request in the first instance."

[4] "(2) Defendants below, News Corporation" defendants, Sony Entertainment, Inc., Sony Music Holdings, Inc., and 550 Digital Media Ventures, Inc., have filed motions seeking to dismiss"

[5] February 24, 2014, Petition for Extraordinary Writ of Mandamus

[6] page 2., O R D E R, IN THE SUPREME COURT OF THE STATE OF DELAWARE IN THE MATTER OF THE PETITION OF BRAD D. GREENSPAN FOR A WRIT OF MANDAMUS § No.

defense for failure to properly serve, claimed January 20, 2015, more then six months

after filing its 12b6 that Co-Defendant "21st Century Fox" had not been served and was

not a Defendant.  In Defendant's January 16 and January 20 pleadings, Defendants only

challenged Plaintiff's right to Advancement by way of eUniverse Delaware Charter

rights and thru arguing Plaintiff was never an employee of Sony. Herein, Plaintiff

provides proof that he is owed indemnification, contribution, reimbursement, and

advancement relief under specific performance rights as a Holder of "Registrable

Securities" under 1999 Agreement and evidence cited herein increases the likelihood of

success on the merits which is prerequisite for granting a Preliminary Injunction. Its

further underpinned by the fact Plaintiff served as a Director and Officer of eUniverse

before the company re-incorporated to Delaware in January 2003 and has indemnification,

contribution, reimbursement, and advancement rights under Plaintiff's Nevada

Article XII of Bylaws.

## FACTUAL BACKGROUND

Plaintiff Brad Greenspan, former Chairman, CEO, and majority common

stock shareholder of Delaware incorporated eUniverse, Inc. are parties to nine agreements

that grant Plaintiff contractual specific performance and bind Defendants News Corp and

Sony, also parties to agreements. The nine agreements include:

    i.    Nevada Charter Bylaws Article XII[7] ("Nevada Charter")

_____

102, 2015, Decided: April 13, 2015 Before STRINE, Chief Justice; HOLLAND, and VAUGHN,
Justices.)

[7] (eUniverse, Inc., Item 6. Indemnification of Directors and Officers: BYLAWS Article XII (FORM S-8) (January 17, 2002))

    ii.     1999 Registration Rights Agreement[8] ("1999 Agreement")
    iii.    2000 Sony Registration Rights Agreement[9] ("2000 Regi Agreement")
    iv.    2001 Sony Registration Rights Agreement[10] ("2001 Regi Agreement)
    v.     2001 Stock Purchase Agreement[11] ("2001 SPA")
    vi.    2001 Share Purchase Agreement[12] ("2001 SHA")
    vii.   2003 Series C Preferred Stock Agreement[13] ("2003 Agreement")
    viiii.  2003 Form of Director Indemnification[14] ("2003 FDI")
    ix.    July 18, 2005 Voting Agreement with News Corp[15] ("2005 VAG")

## I-    SPECIFIC PERFORMANCE OR INJUNCTIVE RELIEF:

    Plaintiff incorporates all Specific Performance section rights stated, breaches claimed and rights asserted listed in Plaintiff's: i)  May 26, 2015 Final Reply Brief and Motion 60(b)(3).

    The Court may further take notice that Plaintiff under eUniverse Nevada indemnification Bylaw Article XII allows for advancement and legal fee reimbursement which is yet another fact Defendants omit knowing its another fatal blow to their scheme to delay payment of legal fee reimbursement, advancement and other rights owed:

    "The foregoing right to indemnification shall be in addition to and not in limitation of all other rights which such person may be entitled as a matter of law, and shall

---

[8] (eUniverse, Inc. (Ex 10.08) "Entertainment Universe, Inc. Registration Rights Agreement, dated as of April 1999" (FORM 10) (June 11, 1999))

[9] (Sony Corporation of America,(Ex 1): SECURED NOTE & WARRANT PURCHASE AGMT (SC 13D)(September6,2000)

[10] (SONY MUSIC ENTERTAINMENT INC(SC 13D).Issuer eUniverse (Ex: 99.3) (November 11, 2001)

[11] (SONY MUSIC ENTERTAINMENT INC (FORM SC 13D).Issuer eUniverse, Inc. (November 11, 2001)

[12] (SONY MUSIC ENTERTAINMENT INC (FORM SC 13D).Issuer eUniverse, Inc. (November 11, 2001)

[13] (VantagePoint Venture Associates IV, L.L.C., (Ex 10): "Series C Preferred Purchase Agreement, dated as of October 31, 2003" (FORM SC 13D/A) (November 3, 2003))

[14] (eUniverse, Inc.,(Ex-99.8): DIRECTOR INDEMNIFICATION AGREEMENT (FORM 8-K)(November 6, 2003))

[15] (News Corporation,Ex  2): "Stockholder Voting Agreement" (FORM 13D) (July 28, 2005))

inure to his legal representatives' benefit."

"Section 2. Indemnification. Each Director and Officer of the Corporation"

"against all reasonable costs, expenses and liabilities (including reasonable attorneys' fees) actually and necessarily incurred by or imposed upon him in connection with, or resulting from any claim, action, suit, proceeding, investigation, or inquiry of whatever nature in which he may be involved as a party or otherwise by reason of his being or having been a Director or Officer of the Corporation or such director or officer of such other corporation, whether or not he continues to be a Director or Officer of the Corporation or a director or officer of such other corporation, at the time of the incurring or imposition of such costs, expenses or liabilities, "

The Court of Chancery is more then justified based on the strong evidence herein of Plaintiff's rights to advancement and legal feee reimbursement together with the extreme bad faith and dilatory tactics of Defendants, to order the equitable relief owed to Plaintiff expeditiously without need of an oral hearing on this matter to mitigate further damages to Plaintiff. *See* Stifel Fin. Corp. v. Cochran, 809 A.2d 555 (Del. 2002).[16]

Plaintiff admits co-Defendant Sony became "Holder" of "Registrable Securities" in both the year 2000 and thru a second series of agreements in 2001 whereby eUniverse acquired Sony's "Indimi LLC" division, a company that owned consumer brands such as "InfoBeat.com" and focused on email content delivery operations and consumer subscriptions of over 10,000,000 online email opt in users receiving daily or weekly entertainment, music, news, and sports content. 1,950,000 eUniverse Series B Preferred Shares issued to Sony qualify and require compliance with 1999 Registration Rights

---

[16] The supreme court determined that the language in the indemnification statute did not require the director to make a demand and allow the corporation to determine if indemnification was appropriate. It "allows for the possibility that the Court of Chancery will order indemnification, thus negating the responsibility of the corporation to determine the propriety of the request in the first instance."

Agreement. In addition: 3,350,000 eUniverse common stock issued to Sony qualify and

require compliance with 1999 Registration Rights Agreement:

A.    15(a): "ANY" "JOINT OR SEVERAL" 1999 AGREEMENT.

> "15(a) Remedies.  Each Holder of Registrable Securities or the Company **in addition** to being entitled to exercise all rights provided herein, or granted by law, including recovery of damages, **will be entitled to specific performance of its rights under this Agreement.**  The Company and each Holder of Registrable Securities agrees that monetary damages would not be adequate compensation for any loss incurred by reason of a breach by the Company of the provisions of this Agreement and hereby agrees to **waive the defense in any action for specific performance that a remedy at law would be adequate."**

News Corp as successor to eUniverse and alternatively Sony and News Corp each a

"Holder" "waive the defense in any action for specific performance that a remedy at

law would be adequate". Plaintiff, "Holder", is owed "joint or several" indemnification

and specific performance under 9(a):

> "(a) To the extent permitted by law, the Company will indemnify and hold harmless each Holder, the officers, directors, members, partners, attorneys, agents and employees of each Holder, any underwriter (as defined in the Act) for such Holder and each person, if any, who controls such Holder or underwriter within the meaning of the Act or the Securities Exchange Act of 1934, as amended (the "1934 Act"), **against any losses, claims, damages, liabilities, judgments, actions and expenses** (including without limitation and as incurred, reimbursement of all reasonable costs of investigating, preparing, pursuing or defending any claim or action, or any investigation or proceeding by any governmental agency or body, commenced or threatened, including the reasonable fees and expenses of counsel**), joint or several,** to which they may become subject under the Act, the 1934 Act or other federal or state law, insofar as such losses, claims, damages, or liabilities (or actions in respect thereof) arise out of or are based upon: (i) any untrue statement or alleged untrue statement of a material fact contained in any Registration Statement, including any preliminary prospectus or final prospectus contained therein or any amendments or supplements thereto, or in any registration statement on Form 10-SB or (ii) the omission or alleged omission to state therein a material fact required to be stated therein, or necessary to make the statements therein not misleading, or (iii) any other material violation of the Federal or state securities laws, and the Company

will reimburse each such Holder, officer, director, member, partner, attorney, agent, employee, underwriter or controlling person for any legal or other expenses reasonably incurred by them in connection with investigating or defending any such loss, claim, damage, liability, or action; provided, however, the Company shall not be liable in any such case for any such loss, claim, damage, liability, or action to the extent that it is caused by a violation which occurs in reliance upon and in conformity with written information furnished expressly for use in connection with such registration by any such Holder, officer, director, member, partner, attorney, agent, employee, underwriter or controlling person."

9(b) grants Plaintiff as "Director", "Officer", and "Person" "who controls the

Company" "joint or several" indemnification by "each selling Holder":

"(b) To the extent permitted by law, **each selling Holder, severally and not jointly, will indemnify and hold harmless the Company, each of its directors, each of its officers who have signed the registration statement, each person, if any, who controls the Company** within the meaning of the Act, any underwriter and **any other Holder** selling securities in such registration statement or any of its directors or officers or any person who controls such Holder, against any losses, claims, damages, liabilities, judgments, actions and **expenses** (including without limitation and as incurred, reimbursement of all reasonable costs of investigating, preparing, pursuing or defending any claim or action, or any investigation or proceedings by any governmental agency or body, commenced or threatened, including the reasonable fees and expenses of counsel), **joint or several, to which the Company or any such director, officer, controlling person, or underwriter or controlling person, or other such Holder** or director, officer or controlling person may become subject, under the Act, the 1934 Act or other federal or state law, insofar as such losses, claims, damages, or liabilities (or actions in respect thereto) arise out of or are based upon any statement or omission in each case to the extent (and only to the extent) that such statement or omission is made in reliance upon and in conformity with written information furnished by such Holder expressly for use in  connection with the Registration Statement or in any registration statement on Form 10-SB and each such Holder will reimburse any legal or other expenses reasonably incurred by the Company and any such director, officer, controlling person, underwriter or controlling person, other Holder, officer, director, or controlling person in connection with investigating or defending any such loss, claim, damage, liability, or action; provided, however, that the indemnity agreement contained in this subsection 9(b) shall not apply to amounts paid in settlement of any such loss, claim, damage, liability or action if such settlement is effected without the consent of the Holder, which consent shall not be unreasonably withheld. "

Plaintiff's "Holder" "Registrable Securities" "losses, claims, damages, liabilities,

11

judgments, actions and expenses" under 9(a) are indemnified by News Corp.

Plaintiff's "Director", "Officer", and "Person" "who controls the Company"

"losses, claims, damages, liabilities, judgments, actions and expenses" under 9(b)

are indemnified by Sony and News Corp, each "Holders", bound to 1999 Agreement

which is "governed" and "construed" by "laws of the State of Delaware" (Section 16).
Defendant claims of Time-Bar are futile under 9(e):

> "9(e) The obligations of the Company and Holders under this Section 9 shall
> survive the redemption, exercise or conversion, if any, of the Preferred
> Stock,the completion of any offering of Registrable Securities in a Registration
> Statement under this Agreement, and otherwise."

## C.  Plaintiff Guaranteed "Equal" Advancement Terms"

Amending or waiving 1999 Agreement, required Plaintiff's consent:[17]

> "11.  Amendment of Registration Rights.   Any provision of this Agreement may be
> amended and the observance thereof may be waived (either generally or in a
> particular instance and either retroactively or prospectively), **only with the written
> consent of the Company and the Holders of a majority of the Registrable
> Securities provided that the amendment treats all Holders equally**.  Any
> amendment or waiver effected in accordance with this paragraph shall be binding
> upon each Holder, each future Holder, and the Company."

Plaintiff was 54% majority "Holder" of 8,061,000 of 12,984,000 eUniverse

Common Stock shares that were "Registrable Securities".[18] Approximately 40

"Holders" held 1,832,812 Series A Preferred Stock shares convertible into "Registrable

Securities".[19] The agreement lists under "Section 1(b). Definitions.":

---

[17] Plaintiff only gave consent to 2001 Series B Registration Rights. Even IF written consent
had been given for 2003 Series C Registration Rights such amendment would only be
effective if such amendment or waived provision "treats all Holders equally."

[19] After the Agreement was executed and the related April 1999 transactions were
completed according to eUniverse's June 11, 1999 SEC Form 10 "Approximately

"term "Registrable Securities" means the shares of the Company's Common Stock together with any capital stock issued in replacement of, in exchange for or otherwise in respect of such Common Stock (the "Common Stock"), issuable or issued upon conversion of the Preferred Stock."

"any Registrable Securities resold in a public transaction shall cease to constitute Registrable Securities."

"(c) The number of shares of "Registrable Securities then outstanding" shall be determined by the number of shares of Common Stock which have been issued or are issuable upon conversion of the Preferred Stock."

"(d) **The term "Holder**" means **any person owning** or having the right to acquire **Registrable Securities** or any permitted assignee thereof."

## D.  Section (14) grants "converted into securities" Specific Performance:

"14.  Assignment.    No assignment, transfer or delegation, whether by operation of law or otherwise, of any rights or obligations under this Agreement by the Company or any Holder, respectively, shall be made without the prior written consent of the majority in interest of the Holders or the Company, respectively; provided that the rights of a Holder may be transferred to a subsequent holder of the Holder's Registrable Securities (provided such transferee shall provide to the Company, together with or prior to such transferee's request to have such Registrable Securities included in a Required or Piggyback Registration, a writing executed by such transferee agreeing to be bound as a Holder by the terms of this Agreement); and provided further that the Company may transfer its rights and obligations under this Agreement to a purchaser of all or a substantial portion of its business if the obligations of the Company under this Agreement are assumed in connection with such transfer, either by merger or other operation of law (which may include without limitation a transaction whereby the Registrable Securities are converted into securities of the successor in interest) or by specific assumption executed by the transferee."

Sony violated Section 14 by assigning its rights and obligations of eUniverse

common stock and Series B Preferred Stock it acquired in 2000 and 2001 to

VantagePoint in 2003 and 2004 without "prior written consent". VantagePoint violated

---

12,984,000 shares of the Company's common stock (approximately 92% of the shares outstanding) are restricted shares";"Registrable Securities then outstanding" as of June 11, 1999 including common and preferred stock was 14,816,812 shares.

Section 14 by assigning its rights and obligations of the Sony common stock and Series B stock in 2005 to News Corp under July 18, 2005 Voting Agreement without "prior written consent". Plaintiff argues in the complaint that the VantagePoint transaction is void. If not void, News Corp is a "Holder" under Section 1(d) of 1999 agreement and per Section 14 the 9(b) obligations have transferred to News Corp.

Its undisputed that Defendants violated and breached Section 11 of the 1999 Registration Rights Agreement via the 2003: Series C Preferred Purchase Agreement, Registration Rights Agreement, the Indemnification Agreement, and the 2005 Voting Agreement, thru issuing themselves superior rights related to Indemnification and Advancement as compared to the 1999 Registration Rights Agreement. News Corp has confirmed via its actions after receipt of Undertaking in 2013 that it has also violated or aided and abetted such breach of Section 11 thru i) its actions in issuing Advancement to the "Holders" of Series B and Common Stock by way of the 2005 Voting Agreement and ii) refusing to provide Advancement to Plaintiff, and other action that do not "treat all Holders equally". If such transactions are not void and the amendment of the 1999 Registration Rights Agreement is found by the Court to have occurred, then all the more favorable indemnification and advancement related rights Defendants granted to themselves are required to have been incorporated by amendment or granted to Plaintiff to comply with Section 11.

**Defendants Breach "Upon Request" "Reimbursement" In 2000 Agreement**

On or about August 2000, Sony purchased a Warrant for 1,101,260 shares of eUniverse Common Stock. Sony as "Holder" and "its successors and assigns"

14

agreed to be bound "to the terms of" the 1999 Registration Rights Agreement:[20]

> "14.  The rights and obligations of the Company, of the holder of this Warrant and holder of shares of Common Stock issued upon exercise of this Warrant, referred to in Section 9, shall survive the exercise of this Warrant."
> "15.  This Warrant shall be binding upon the Company and its successors and assigns and shall inure to the benefit of the Holder and its successors and assigns"

Sony and News Corp are in breach of the advancement obligation under Section F.[21]

## E.   2001 SONY REGISTRATION RIGHTS AGREEMENT ("2001 Regi Agreement")

October 24, 2001, "Registrations Rights Agreement by and between eUniverse,

Inc. and 550 Digital Media Ventures Inc. (Section "1. Certain Definitions."):

News Corp and Sony owe Plaintiff Specific Performance of 8(a) & 8(b) per 11(l):

> "(l) Equitable Relief. The parties hereto agree that legal remedies may be inadequate to enforce the provisions of this Agreement and that equitable relief, i**ncluding specific performance and injunctive relief,** may be used to enforce the provisions of this Agreement."

 Plaintiff, as "Holder of Registrable Common Stock", owed 8(a) indemnification:

> "(a) The Company agrees to indemnify, to the fullest extent permitted by law, each Holder, its officers, directors and affiliates and each Person who controls such Holder (within the meaning of the Securities Act)

---

[20]"this Agreement, together with Annex A attached hereto, are subject to the terms of existing registration rights obligations of the Company as of the date hereof"

Annex A is the "2000 Registration Rights Agreement".

[21]"the Holder will indemnify, to the extent permitted by law, the Company, controlling persons of the Company under Section 15 of the Securities Act and its directors and officers against any and all losses, claims, damages, liabilities and expenses resulting, and to reimburse them, from time to time upon request, for any legal or other expenses reasonably incurred by them in connection with investigating any claims"

"against all losses, claims, damages, liabilities and expenses arising out of or based upon":

"any untrue or alleged untrue statement of material fact contained in any Registration Statement, Prospectus or preliminary Prospectus or any amendment thereof or supplement thereto or any omission or alleged omission of a material fact required to be stated therein or necessary to make the statements therein not misleading or any violation or alleged violation by the Company of the Securities Act, the Exchange Act or applicable "blue sky" laws,"

Also indemnified as Director, Officer, "Person who controls the Company" under 8(b):

"(b) In connection with any Registration Statement in which a Holder of Registrable Common Stock is participating, each such Holder shall furnish to the Company in writing such information and affidavits as the Company reasonably requests for use in connection with any such Registration Statement or Prospectus and, to the extent permitted by law,

"shall indemnify the Company, its directors and officers and each Person who controls the Company (within the meaning of the Securities Act)"

"against any losses, claims, damages, liabilities and expenses arising out of or based upon any untrue or alleged untrue statement of material fact contained in the Registration Statement, Prospectus or preliminary Prospectus or any amendment thereof or supplement thereto or any omission or alleged omission of a material fact required to be stated therein or necessary to make the statements therein not misleading,

"obligation to indemnify shall be several, not joint and several, among such Holders and the liability of each such Holder shall be in proportion to and limited to the net amount received by such Holder from the sale of Registrable Common Stock pursuant to such Registration Statement."

2001 Regi Agreement's 11(b) annuls statue of limitation defenses, Section 11 (c )

makes obligations binding on successors, cannot be invalidated or impaired under

11(j), and "shall survive the transfer of securities" in "full force" per 8(d) from

Sony to VantagePoint Partners to News Corp[22]:

> "8(d) The indemnification provided for under this Agreement shall remain in full force and effect regardless of any investigation made by or on behalf of the indemnified party or any officer, director or controlling Person of such indemnified party and shall survive the transfer of securities."

If the Court finds Indemnification is not due under 8(a) or 8(b) then Sony and News

corp owe contribution under 8(e):

> "8(e) If the indemnification provided for in or pursuant to this Section 8 is due in accordance with the terms hereof, but is held by a court to be unavailable or unenforceable in respect of any losses, claims, damages, liabilities or expenses referred to herein, then each applicable indemnifying party, in lieu of indemnifying such indemnified party, shall contribute to the amount paid or payable by such indemnified person as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative fault of the indemnifying party on the one hand and of the indemnified party on the other in connection with the statements or omissions which result in such losses, claims, damages, liabilities or expenses as well as any other relevant equitable considerations. The relative fault of the indemnifying party on the one hand and of the indemnified person on the other shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the indemnifying party or by the indemnified party, and by such party's relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission. In no event shall the liability of any selling Holder be greater in amount than the amount of net proceeds received by such Holder upon such sale or the amount for which such indemnifying party would have been obligated to pay by way of indemnification if the indemnification provided for under Section 8(a) or 8(b) hereof had been available under the circumstances.

> "11(b) No Waivers. No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or

---

[22] Plaintiff  due additional protections and rights including: "11(j) Severability",  "11(b) No Waivers.", "11(c) "binding upon" the "subsequent Holders of the Registrable Common Stock are intended third party beneficiaries hereof" (Motion to Take Judicial Notice, Exhibit #6)

partial exercise thereof preclude any other or further exercise thereof or the  exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided  by law.

"11(c) Successors and Assigns. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, it being understood that subsequent Holders of the Registrable Common Stock are intended third party beneficiaries hereof.

"11(j) Severability. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction or other authority  to be invalid, void or unenforceable, the remainder of the terms, provisions,         covenants and restrictions of this Agreement shall remain in full force and         effect and shall in no way be affected, impaired or invalidated so long as the         economic or legal substance of the transactions contemplated hereby is not         affected in any manner materially adverse to any party. Upon such a determination, the parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as       possible in an acceptable manner in order that the transactions contemplated         hereby be consummated as originally contemplated to the fullest extent possible. If the Court finds Indemnification is not due under 8(a) or 8(b) then Sony and News corp owe contribution under 8(e):

2001 Regi Agreement's 2(f):

"(f) Other Registration Rights. The Company shall not grant to any Person the right, other than as set forth herein and except to employees of the Company with respect to registrations on Form S-8 (or any successor forms thereto), to request the Company to register any securities of the Company except such rights as are not more favorable than or inconsistent with the rights granted to the Holders herein.

"The stock transfer restriction imposed on the shares of the Company's Capital Stock held by Brad Greenspan (the "Greenspan Restrictions") are not more favorable than or inconsistent with the stock transfer restrictions contained in this Agreement.  In the event the Company grants rights which are more favorable or relaxes the Greenspan Restrictions, the Company will make such provisions available to the Holders and will enter into any amendments necessary to confer such rights on the Holders."

Defendants have further breached the provision in Section 10., which states

"10.     Rule 144.

> The Company covenants that it will file the reports required to be filed by it under the Securities Act and the Exchange Act and the rules and regulations adopted by the SEC thereunder, and it will take such further action as any Holder may reasonably request to make available adequate current public information with respect to the Company meeting the current public information requirements of Rule 144(c) under the Securities Act"

## F. SONY 2001 STOCK AGREEMENT SPECIFIC PERFORMANCE

Plaintiff is signatory to July 13, 2001 agreement titled "STOCK PURCHASE

AGREEMENT"  whereby Sony acquired 1.9 million shares of Series B Preferred

stock thru wholly owned subsidiary 550 Digital Media Ventures Inc., Under Section 12.

"Enforcement", Plaintiff, a signatory has remedies for both: i) "untrue or misleading"

"representations" "made by or on behalf of any party" "as of the date it was made" ii) "any

covenant made by a party hereto" breached Section 12.1 of 2001 Sony Stock Purchase

Agreement granting  Specific Performance and injunctive relief :

> "12.1 Remedies at Law or in Equity. If any representation or warranty made by or on behalf of any party hereto, in this Agreement or in any certificate, report or other instrument delivered under or pursuant to any term hereof shall be untrue or misleading as of the date of this Agreement or as of the Closing Date or as of the date it was made, furnished or delivered, or any covenant made by a party hereto shall be breached by such party, the other party or parties may proceed to protect and enforce its rights by suit in equity or action at law, whether for the **specific performance of any term contained in this Agreement, the Certificate of Designation or any other Transaction Document or for an injunction against the breach** of any such term or in aid of the exercise of any power granted in this Agreement, any other Transaction Document or the Certificate of Designation, or to enforce any other legal or equitable right of such party, or to take any one or more of such actions."

> "Conversion Shares" means any of (x) the shares of Common Stock owned by the Stockholder, (y) the shares of Common Stock issued or issuable upon conversion of the Series B Preferred Stock or (z) any securities issued or issuable with respect to the Common Stock or Series B Preferred Stock by way of stock dividend or stock split or in connection with a combination of

19

shares, recapitalization, merger, consolidation or other reorganization or otherwise.

"Holder" means any holder of record of Registrable Common Stock (as defined below) and any transferees of such Registrable Common Stock from such Holders (or in the case of a Holder of Series B Preferred Stock, the transferees of such Holder).

"Registrable Common Stock" means the Conversion Shares. All references herein to a "Holder" or "Holder of Registrable Common Stock" shall include the holder or holders of Series B Preferred Stock to the extent of the Conversion Shares then underlying such Series B Preferred Stock.

"Prospectus" means the prospectus or prospectuses included in any Registration Statement, as amended or supplemented by any prospectus supplement with respect to the terms of the offering of any portion of the Registrable Common Stock covered by such Registration Statement and by all other amendments and supplements to the prospectus, including post-effective amendments and all material incorporated by reference in such prospectus or prospectuses.

"Registration Statement" means any registration statement of the Company which covers any of the Registrable Common Stock pursuant to the provisions of this Agreement, including the Prospectus, amendments and supplements to such Registration Statement, including post-effective amendments, all exhibits and all materials incorporated by reference in such Registration Statement.

"Affiliate" of any Person means any other Person which directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common control with such Person. The term "control" (including the terms "controlled by" and "under common control with") as used with respect to any Person means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise."

"7.8 Indemnification of the Board of Directors; Directors and Officers Insurance Policy.7.9 (a) From the date hereof through the Closing, and thereafter reimburse all directors of the Company for their reasonable out-of-pocket expenses in connection with attending meetings of the Company's Board of Directors and all committees thereof and all reasonable out-of-pocket expenses otherwise incurred in fulfilling their duties as directors. The Company, the Company's Articles of Incorporation, or the Company's By-Laws if no provisions in the Articles of Incorporation relate to directors' liability or indemnification, shall at all times (i) eliminate the liabilities of directors to the

maximum extent permitted by the law, and (ii) require the indemnification of all of the Company's directors against liability for actions and omissions to act in their capacity as directors of the Company to the maximum extent that such individuals may lawfully be so indemnified by the Company."

"13.1 Waivers and Amendments. Upon the approval of the Company and the written consent of the Purchaser (a) the obligations of the Company and the rights of the Purchaser under this Agreement may be waived (either generally or in a particular instance, either retroactively or prospectively and either for a specified period of time or indefinitely), and (b) the Company may enter into a supplementary agreement for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement, or of any supplemental agree-ment or modifying in any manner the rights and  hereunder or thereunder of the Purchaser and the Company.

The foregoing notwithstanding, no such waiver or supplemental agreement shall affect any of the rights of any holder of a Security created by the Certificate of Designation or by the Nevada Revised Statutes without compliance with all applicable provisions of the Certificate of Designation and the Nevada Revised Statutes

Neither this Agreement, nor any provision hereof, may be changed, waived, discharged or terminated orally or by course of dealing, but only by a statement in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought, except to the extent provided in this Section 13.1.

"13.4 Indemnification The Company shall indemnify, save and hold harmless the Purchaser, its directors, officers, employees, partners, representatives and agents from and against (and shall promptly reimburse such indemnified Persons for) any and all liabilities, losses, costs, damages, reasonable attorneys' and accountants' fees and expenses, court costs and all other out-of-pocket expenses incurred in connection with or arising from any claim, suit, action or similar claim by any Person (other than the Purchaser) related to (i) the status or conduct of the Company, (ii) the execution, delivery and performance of this Agreement or the Transaction Documents or the transactions contemplated hereby or thereby, (iii) any breach of any representation of the Company, or (iv) the Purchaser's role with the Company or such transactions. This indemnification provision shall be in addition to the rights of the Purchaser to bring an action against the Company for breach of any term of this Agreement and the Transaction Documents.

In the event that the Purchaser elects to terminate this Agreement pursuant to

21

clause (b) or (c) of Section 13.3, it shall give written notice of such termination to the Company in accordance with the provisions of Section 13.2.

If this Agreement is terminated pursuant to Section 13.3, this Agreement shall become void and of no effect with no liability on the part of any party hereto, except that the agreements contained in this Section 13.4, and in Section 13.10, shall survive the termination hereof."

"13.5 Survival of Representations and Warranties, etc. All representations and warranties made in, pursuant to or in connection with this Agreement shall survive the Closing Date, notwithstanding any investigation at any time made by or on behalf of the Purchaser, and the sale and purchase of the Securities and payment therefor; and all statements contained in any certificate or schedule delivered or to be delivered to the Purchaser by or on behalf of the Company at the Closing pursuant to this Agreement or in connection with or contemplation of the transactions herein contemplated shall constitute representations and warranties by the Company hereunder."

"13.6 No Implied Waivers. No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

"13.7 Successors and Assigns. All the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective parties hereto, the successors and assigns of the Purchaser and the successors of the Company, whether so expressed or not. None of the parties hereto may assign any of its rights or obligations hereunder without the prior written consent of the other parties hereto.

Section 12  allows enforcement of "any other legal or equitable right of such party, or to take any one or more of such actions.", giving Plaintiff both Nevada and Delaware Director and Officer, Indemnification and Advancement, specific performance remedies as well as additional separate remedies for Plaintiff's then held "Registrable Securities" under the 1999 SPA or under the 2001 Sony "Registrations Rights Agreement"

## G.  SONY 2001 SHARE PURCHASE AGREEMENT

Grants Plaintiff Specific Performance in regards to "transfer shares"

Plaintiff is signatory to July 13, 2001 agreement titled "SHARE PURCHASE

AGREEMENT"[23]. "Section  10.1 Obligation of the Seller to Indemnify." "after

closing", Guarantor guaranteed to Plaintiff an EUI Officer and Director to:

> "indemnify, defend and hold harmless EUI, together with
> its officers, members, managers, directors, employees,"

> "from and against any and all losses, judgments, claims, awards, damages,
> settlements, costs and expenses, including, without limitation, attorney's fees,
> resulting from, imposed upon, sustained or incurred by EUI,
> directly or indirectly, as a result or arising out of the breach of any
> representation, warranty or covenant of LLC or the Seller"

> "11.1 Successors and Assigns. This Agreement shall be binding
> upon and shall inure to the benefit of each of the parties hereto and their
> respective heirs, legal representatives, successors and assigns."

Section 11.6 and 11.15 of the 2001 Sony  agreements grants specific  enforcement:

"11.9 Waivers."…  " breach shall be a continuing breach until the same has been cured. "

> "as if said provision had never been a part of this Agreement"

> "11.13 Modification or Waiver. Neither this Agreement nor any
> provision hereof may be modified, waived or discharged except pursuant to a
> written instrument signed by the party against whom enforcement of such
> modification, waiver or discharge is sought."

> "11.14 Severability. Any provision of this Agreement held or determined by a
> court (or other legal authority) of competent jurisdiction to be illegal, invalid,
> or unenforceable in any jurisdiction shall be deemed separate,
> distinct and independent, and shall be ineffective to the extent of such holding
> or determination and this Agreement shall be interpreted as if said provision
> had never been a part of this Agreement without (i) invalidating the remaining

---

[23] "  to acquire Indimi, L.L.C., an email marketing company. eUniverse paid over 3 million
common stock shares to Sony Music Entertainment and wholly owned subsidiary 550
Digital Media Ventures Inc.,  (eUniverse July 16, 2001, Form 10-K Exhibit 10.53).

provisions of this Agreement in that jurisdiction or (ii) affecting the legality, validity or enforceability of such provision in any other jurisdiction. "

"11.15 Remedies. All rights, remedies or powers hereby conferred shall, to the extent not prohibited by law, be deemed cumulative and not exclusive of any other thereof, or of any other rights, remedies or powers available. No single or partial exercise of any right, remedy or power by a party shall preclude further exercise thereof. No delay or omission to exercise any right, power or remedy accruing to a party upon the occurrence of any breach of any warranty, covenant or agreement contained in this Agreement shall impair any such right, power or remedy or be construed to be a waiver of any such breach or any acquiescence therein or to any similar breach thereafter occurring. In addition to such other rights and remedies as each party may have at equity or in law with respect to any breach of this Agreement, if any party commits a breach of any of the restrictive covenants contained herein, each other party shall have the right and **remedy to have such provisions specifically enforced** by any court having equity jurisdiction."

"11.6 Enforcement. In the event that either party hereto commits a breach of that party's obligations hereunder, the non-breaching party damaged thereby shall be entitled to recover from the party in breach the reasonable costs and expenses incurred, including reasonable attorney's fees and disbursements, in connection with enforcing the provisions hereof. **The obligation of any Person to transfer shares in accordance with the terms of this Agreement may be specifically enforced** by any court of competent jurisdiction, it being acknowledged and agreed that money damages will not provide an adequate remedy for the breach of any such obligation. The rights and remedies set forth in this section 11.6 shall be on addition to, and not in lieu of, any other rights and remedies avaliable at law or in equity."

"11.9 Waivers. No waiver by a party, or by anyone claiming by, through or under such party, of any right or of the breach of any representation, warranty, covenant, agreement, condition or duty, shall ever be held or construed as a waiver of the same or any other right or waiver of any other breach of the same or of any representation, warranty, covenant, agreement, condition, or duty.

In the event of a breach by a party of any representation, warranty, covenant, agreement, condition or duty, the failure by any other party to take action on account of such breach or to enforce any rights resulting therefrom shall not be deemed a waiver, and such breach shall be a continuing breach until the same has been cured. No waiver of any of the provisions of this Agreement

shall be deemed or shall constitute a continuing waiver unless otherwise
expressly provided therein."

## H.    SONY IS IN BREACH OF ITS 2001 "GUARANTY"

Sony has breached Section 7 of the July 13, 2001 Share Purchase Agreement

Agreement thru: i) refusing to honor its advancement obligation ii) misleading the

Court of Chancery by denying the obligations exists in its Motion to Dismiss

pleading iii) Triggering or causing one or more "Material Adverse Effects"  by

blocking or preventing EUI, Sony, and any "Holder" of the Series B Preferred

Stock from performing their respective obligations in regards to the Indemnification

provisions, Amendment provisions, transfer obligations of 1999, 2000, and 2001

Registration Rights Agreements. Additionally by executing unlawful "other

agreements" including the 2003 and 2004 Series C Preferred Stock documents, the void

option agreement, and by unlawful Series B Preferred Stock transfer. Further, Sony's

nomination of Jeffrey Edell in 2004 to their Series B Preferred Board seat as detailed in

the Complaint. Such actions individually and in the aggregate had a negative "Material

Adverse Effect" on Plaintiff's "EUI Common Stock".

> **"7. Guaranty.** SONY hereby unconditionally and irrevocably guarantees to EUI, all
> of the obligations, when due, of Seller, LLC, and Indimi, and the full and prompt
> performance of all such obligations of LLC, Seller and Indimi under this Agreement
> (the "Guaranteed Obligations"), whether now in existence or hereafter arising,
> provided however, SONY's liability shall in no event be greater than that for which
> any of the LLC, Seller or Indimi could be primarily liable under this Agreement and
> SONY shall be entitled to all defenses available to any of LLC, Seller or Indimi and
> all defenses available to a surety or a guarantor under the common law. SONY
> understands, agrees, and confirms that upon any default by LLC, Seller and/or
> Indimi upon the Guaranteed Obligations, EUI may, at its option, proceed directly
> and at once, without notice, against the Guarantor to collect and recover the full
> amount of the liability hereunder or thereunder, or any portion thereof, without

25

proceeding against LLC, Seller and/or Indimi or against any other security for the Guaranteed Obligations. **The foregoing guaranty of the Guarantor is an absolute, continuing, primary and unconditional guaranty of performance** and not of collection. This Guaranty shall continue in full force and effect until all Guaranteed Obligations are fully performed, and discharged."

"Material Adverse Effect" shall mean any material adverse effect on (i) either the EUI Common Stock or the LLC Shares, as appropriate (ii) the ability of either EUI or Seller to perform their respective obligations under this Agreement, the Stock Purchase Agreement of even date, the Registration Rights Agreement of even date, and any other agreements between the parties as may be executed in connection with this Agreement, or (iii) the condition (financial), properties, assets, liabilities, business, prospects or operations of either EUI or Seller and any of their respective subsidiaries."

## I.    2003 REGISTRATION RIGHTS AGREEMENT ("2003 Regi")

Indemnification and Contribution also due Plaintiff by Section 8(d) of eUniverse

2003 Registration Rights Agreement executed by VantagePoint fund purporting to create a

valid Series C Preferred eUniverse stock later sold and/or an attempted transfer to News

Corporation providor of "Guaranty" in July 2005, after Sony Series B approval:

"(d) The indemnification provided for under this Agreement shall remain in full force and effect regardless"

## J.    NEWS CORP   2005 VOTING AGREEMENT

2005 Voting Agreement Section 3.6 Guaranties indemnification to Plaintiff based

on News Corp and Sony's eUniverse Series B Preferred and common shares.    Per

Section 3.5, Plaintiff was a "respective director" of eUniverse an "Affiliate" of

Stockholder, VantagePoint Partners, so "Parent shall indemnify":

**"Section 3.5**  (a) Parent shall indemnify, defend and hold harmless each Stockholder and all of its members, Affiliates, partners, and their respective directors, managing directors, members, partners, attorneys, representatives, officers, and employees (the "Indemnified Parties"), "

Plaintiff is also "former officer, director" thus 3.5(a) affirms Parent is:

> "providing for indemnification of each present and **former officer, director and employee of the Company** and its Subsidiaries (collectively, the "<u>Merger Agreement Indemnified Parties</u>"), with respect to facts and circumstances occurring at or prior to the Effective Time,"

Section 3.5(a) also binds Defendant into assumption of the "Series C

Preferred Stock" obligations. Prior holders of the Series C Preferred owe Plaintiff

indemnification thru i) Plaintiff's status and rights as "Holder" of "Registrable

Securities" under 1999 Registration Rights Agreement and ii) Plaintiff's status as

former Director and Officer of eUniverse receiving rights under related transaction

documents including: 2003 Registration Rights Agreement, Series C Preferred

Stock Purchase Agreement, Series C Certificate of Designation,

> "From and after the Effective Time, Parent shall, and shall cause the Surviving Corporation to, keep in full force and effect, and comply with the terms and conditions of, any agreement listed on Section 6.9 of the Ivory Disclosure Schedule (including, without limitation, the Series C Preferred Stock Purchase Agreement, dated as of October 31, 2003, among the Company and the Stockholders who purchased Series C Convertible Preferred Stock pursuant thereto)."

Plaintiff notified Defendants of "involvement in" "new actions, suits,

proceedings "well within the six year window that Defendant cites in 3.5(a) ,

including in 2009 and 2011, but Defendant's refused to honor their contractual

obligations and instead retaliated against Plaintiff as detailed in the Complaint.

> "For six (6) years after the Effective Time, Parent shall cause the Surviving Corporation to maintain" [and continue] "providing for indemnification"

Section 11 of 1999 Agreement provides an additional protection, if advancement solely

granted to Series B & C Preferred Stock Holders, Defendants admit Plaintiff

is not being treating "equally" in breach of Section 11 of 1999 Agreement, and

specific performance is available as remedy for Plaintiff.

## K. BREACH OF NEWS CORP GUARANTEE AGREEMENT

Specific performance relief also needed for News Corp's 2005 Voting Agreement Section

3.6 indemnification Guaranty breach:

> **"Section 3.6 Guarantee.**  News, hereby irrevocably and unconditionally guarantees to the Stockholders, as primary obligor and not merely as surety, the performance of all obligations hereunder of Parent and the due and punctual payment by Parent in full of any amounts payable by Parent pursuant to this Agreement.  To the fullest extent permitted by applicable Law, News waives presentment to, demand of payment"

> "News agrees that the guarantee pursuant to this Section 3.6 constitutes an absolute, unconditional, present and continuing guarantee of payment and not of collection, and waives any right to require that any resort be had by the Stockholders to (i) the Stockholder's rights against any other person, including Parent, or (ii) any other right or remedy available to the Stockholders by contract, applicable Law or otherwise.  It is the intent of the guarantee pursuant to this Section 3.6 that the Stockholders shall have resort to News without asserting or resorting to any remedy against Parent and without demand to it, as though News were primarily liable for any payment due hereunder.

> "(d) If Parent or any of its successors or assigns (i) consolidates with or merges into any other Person and shall not be the continuing or surviving corporation or entity" then "in each such case, to the extent necessary, proper provision shall be made so that the successors and assigns of Parent shall assume the obligations set forth in this Section 3.5."

> "(e) These rights shall survive consummation of any acquisition of the Company by Parent and are intended to benefit, and shall be enforceable by, each Indemnified Party."

## ARGUMENT

## I.    DELAWARE LAW REQUIRES GIVING EFFECT TO ALL PROVISIONS

### A. Summary Judgment: Proper Framework for Contract Interpretation.

The proper interpretation of a contract's language is a question of law. *Pellaton*

*v. Bank of N.Y.,* 592 A.2d 473, 478 (Del. 1991). A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings. Stated differently, ambiguity does not exist where the court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Seidensticker v. Gasparailla Inn, Inc.* No. 2555-CC, 2007 WL 1930428, at *3 (Del. Ch. June 19, 2007) (Chandler, C.) (citations omitted).

**B. The Agreements Should Not Be Interpreted To Nullify Any Provisions**

A court must interpret the contract in its entirety, "giving effect to all provisions therein." *E.I du Pont de Nemours & Co. v. Shell Oil Co., 498 A.2d* 1108, 1113 (Del 1985) (referring to this proposition as "the cardinal rule of contract construction").

A court must therefore construe a contract, "where possible, so that all of its provisions may be read together and harmonized." *Cerebus Int'l, Ltd v. Apollo Mgmt, L.P*., No. 16425, 1999 WL 33236239, at *4 (Del. Ch. 1999); *Council of the Dorset Condo. Apts v. Gordon,* 801 A. 2d 1, 7 (Del. 2002) ("A court *must* interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible *reconciles* all of the provisions of the instrument when read as a whole") (emphasis added). "If two constructions are possible, one of which denies effect to one provision of the … [contract] and the other which would give effect to all of the provisions, Necessarily [courts] must accept that which effectuates all of the…[contract] provisions." *Raffman v. Wilmington Hous. Auth*, 179 A. 2d 99, 102 (Del. 1962). This principle is applied by

29

Delaware courts to grant summary judgment or other dispositive motions as a matter of law. *See, e.g., In re Blue Rock Manor Civic Ass;n v. Hartline* Civ. A. No. 11802, 1992 WL 251381at *3 (Del. Ch. Sept 29,1992) (Chandler,V.C.)(granting summary judgment).

II.   AGREEMENTS PLAIN LANGUAGE COMPEL SPECIFIC PERFORMANCE

A.   **The Contract Expressly Provides For Specific Performance**

The 1999 Registration Rights Agreement is plain, unambiguous and speaks directly to this situation. Section 15(a) invests Plaintiff with an express right to prevent breaches of, or specifically enforce compliance with, the covenants requiring Defendant to: In section 15(a), the parties also agreed that "irreparable damage would occur in the event any of the provisons were not performed".
The parties have agreed that there is no adequate remedy at law for Defendants' breaches:

Section 15(a) is enforceable under Delaware law, establishes irreparable harm, and warrants specific performance and an injunction. *Gildor v. Optical Solutions, Inc.,* No. Civ. A 1416-N, 2006 WL 1596678, at *10 (Del. Ch. June 5, 2006 (upholding irreparable injury stipulation and specifically enforcing contract); *True North Comm'ns, Inc. v. Publicis S.A.,* 711 A. 2d 34, 38 (Del. Ch. 1997) (Chandler, C.), *aff'd* 705 A. 2d 244 (Del 1997) ("[h]aving carefully negotiated this contract, both Publicis and True North are bound by its terms. And in this case, those terms stipulate that a breach of 1.1 by Publicis entitled True North to seek injunctive relief."; *see also* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, 12-3 (2007) ("[i]n the context of applications for interim injunctive relief, the Court of Chancery consistently has held that contractual stipulations of irreparable

injury resulting from breach are sufficient in and of themselves to establish the element

of irreparable harm…"); *Hough Assocs., Inc. v. Hill*, No. Civ. A 2385-N, 2007 WL

148751, at *18 (Del. Ch. Jan 17, 2007). The parties were aware of the "specific

performance" remedy and could have expressly eliminated it.

The agreement did not, so, instead, it explicitly makes specific performance available.


## A. PRELIMINARY INJUNCTION

Plaintiff seeks Preliminary Injunction enjoining Defendants from making

misleading false "Ex Parte" Applications or Motions in any Federal Court filings that

misrepresent and mislead Federal Judges such as Defendants did with the May 19, 2014

pleading Defendants filed in Los Angeles Huthart case.

## IV.   FRAUDULENT FABRICATED MAY 19, 2014 "EX PARTE APPLICATION"

Defendant "News Corporation" in late 2013 purportedly splits into multiple new

entities thru a "SEPARATION AND DISTRIBUTION AGREEMENT":

"by and among News Corporation, a Delaware corporation ("Remainco"), New
Newscorp Inc, a Delaware corporation and a wholly owned subsidiary of Remainco ("New
News Corporation") and, solely for the purposes of Sections 4.06, 9.08 and 9.09 hereof,
News Corp Holdings UK & Ireland, a U.K. unlimited company ("NCH," and, together
with Remainco and New News Corporation, each a "Party" and collectively the "Parties").

October 7, 2013, News Corporation's attorney Alston & Bird filed a

"NOTICE OF INTERESTED PARTIES" in the Huthart case stating:

"Plaintiff sued "News Corporation" prior to the company's June 28, 2013 separation
into two independent publicly traded companies (the "Separation"). The company

31

that was then known as "News Corporation" prior to the Separation has since been renamed Twenty-First Century Fox, Inc. ("21st Century Fox")." (Case 2:13-cv-04253-Document 43 Page 2)

Defendant's attorneys represented themselves not as attorneys for "21st Century Fox", but:

"Counsel for Defendants News Corporation, NI Group Limited f/k/a News International Limited, News Group Newspapers Limited"Alston & Bird attorney,

Cherminsky, made an appearance on same day, October 7, 2013 thru filing a "Notice of

Interested Parties", identifying clients as "Defendants News Corporation, NI Group

Limited, and News Group  Newspapers Limited".

Alston & Bird's filing was misleading because they purported to be entering the

case representing companies that did not exist after the June 28, 2013 "Separation and

Distribution Agreement".

News Corp was seeking dismissal of the Huthart claims under forum non

conveniens doctrine and by May 2014, pleadings had been completed.

April 22, 2014, Plaintiff filed verified Complaint #9567 concurrently with

a Motion to Expedite Summary Judgment. The Court of Chancery served the

summons thru Sheriff no later then May 16, 2014 according to Court docket:

"Return served upon Amy McLaren, a representative for the Registered Agent of Corporation Trust Company on May 16, 2014.
(entities listed News  Corporation and 21st Century Fox Corporation)"

32

Delaware complaint #9567 included sixteen claim counts listed below:

| | |
|---|---|
| i.   §1503(a) | ix.  DE Statue 1304 |
| ii.  §1503(b) | x.   Dodd-Frank Section 922 & 18 U.S.C §1513(e) |
| iii. §1503(c) | xi.  Blasisus |
| iv. §1503(d) | xii. Contempt |
| v.  §1505(f) | xiii. Ruling certain transactions post October 17, 2003 Void |
| vi. Breach of Agreement | xiv. Defendants right to exculpation under 102(b)(7) void |
| vii.Inseparable Fraud | xv.  Ruling certain transactions post October 17, 2003 Void |
| viii.Parexel Type Fraud Violation | xvi. Indemnification & Advancement Claims |

Plaintiff also filed a pro se Motion to Intervene and Complaint in Intervention in

ongoing Huthart Case No. CV-13-04253 on May 2, 2014 in Los Angeles Federal

| Huthart's 2013 complaint causes of action: No. 2:13-cv 04253 |
|---|
| i.  The Stored Communications Act, 18 U.S.C. 2701 & 2707 |
| ii. Wiretap Act, 18 U.S.C. 2510, 2511 & 2520 |
| iii. Article I, Section I Of The California State Constitution |
| iv. California Penal Code 630, 631, 632, 632.7 & 637(2)(a) |
| v.  California Civil Code 1708.8(b), 1708.8(d) & 1708.8(e) |
| vi. Intrusion Into Private Affairs – California Common Law |

District Court. Eunice Huthart pled six causes of action in her 2013 complaint:

Plaintiff 's May 2, 2014 Complaint in Intervention and Huthart's 2013 complaint shared

six identical causes of action, pled in the same exact order:[24]

| 5/2/2014: Complaint in Intervention causes of action: No. 2:13-cv03253 |
|---|
| ~~vi. Intrusion Into Private Affairs – California Common Law~~ |
| i.  The Stored Communications Act, 18 U.S.C. 2701 & 2707 |
| ii. Wiretap Act, 18 U.S.C. 2510, 2511 & 2520 |
| iii. Article I, Section I Of The California State Constitution |
| iv. California Penal Code 630, 631, 632, 632.7 & 637(2)(a) |
| v.  California Civil Code 1708.8(b), 1708.8(d) & 1708.8(e) |

---

[24] Plaintiff's Complaint in Intervention had 7th claim of CA Statue 17200 not pled by Huthart.

On May 6, 2014, the Federal Court granted Plaintiff a 6/30/2014 Motion to Intervene hearing:

> "Docket Text: NOTICE OF MOTION to Intervene filed by inventor Brad Greenspan. Motion set for hearing on 6/30/2014 at 10:00 AM before Judge Michael W. Fitzgerald. Lodged Proposed Order and Complaint. (jp)"

May 16, 2014, Alston & Bird LLC and Williams & Connolly Law purportedly tried to

Give Plaintiff 3 days notice prior to filing an "Ex Parte Application" seeking a

continuance of the June 30, 2014 Motion to Intervene hearing via hand delivering a

letter to Plaintiff's former Los Angeles mailing address which states:[25]

> "We represent Defendants News Corporation, NI Group Limited, and News Group Newspapers Limited (collectively "Defendants") in the above-referenced matter. We are writing to advise that Defendants will be filing an ex parte application on Monday, May 19, 2014, seeking a continuance of the June 30, 2014 hearing presently set for the motion to intervene.

> "The principal basis for the application is that Defendants have filed a motion to dismiss Ms. Huthart's lawsuit that is presently under submission before Judge Fitzgerald, and dismissal of the underlying matter would render your intervention motion moot. A continuance of the June 30 hearing date may thus avoid the necessity of Defendants filing opposition papers to the intervention motion, or the court considering such motion, and would therefore promote judicial economy."

> "Though Defendants do not seek to adjudicate the merits of your motion to intervene through the ex parte papers, Defendants' position is that the motion to intervene and accompanying papers are both procedurally and substantively defective and provide no basis for any intervention."

Its notable that Defendants in May 16, 2014 letter do not cite Plaintiff's Delaware

#9567 as the reason for their objection. However, after News Corp is served verified

complaint #9567 on May 16, 2014 in Delaware, its included as an Exhibit and used as

---

[25] The letter was not received by Plaintiff but was included in the May 19, 2014 "Ex Parte Application" as an exhibit.

central evidence in the  May 19, 2014 News Corp files "Ex Parte Application" in Huthart case titled:

> "DEFENDANTS' EX PARTE APPLICATION TO CONTINUE MOTION
> FOR INTERVENTION OF BRAD GREENSPAN PENDING THE COURT'S
> DETERMINATION ON DEFENDANTS' MOTION TO DISMISS"

Defendant's filing includes copy of Plaintiff's 5/2/2014 Complaint in Intervention. (See June 8, 2015 Motion To Take Judicial Notice #4 and Exhibit #4)[26]. The May 19, 2014 pleading also includes as exhibit, Delaware Case No. #9567 verified Complaint (See Id. but  #3 and Exhibit #3). After the Defendants are served with the May 16, 2014 Delaware #9567 verified complaint, The Defendants then determine to mislead the Federal Judge thru the May 19, 2014 claims that Delaware #9567 and Plaintiff's Huthart Complaint in Intervention have identical causes of action.

PLAINTIFF HUTHART IS MISLED

Defendant's Karasik declaration submitted in support of May 19, 2014 "Ex Parte Application" raises issues of providing inaccurate information to Plaintiff Huthart on May 15, 2014, and then failing to update Plaintiff Huthart later after May 15, 2014 when Defendant received for instance, the May 16, 2014 service of Delaware verified complaint #9567 which Defendants actually include in the May 19, 2014 pleading.

> "Notice of this Application was provided to Plaintiff's counsel by telephone call on May 15, 2014, and Plaintiff's counsel advises that Plaintiff does not joint the ex

---

[26] "Greenspan's motion papers consist of a Notice to Intervene (Dkt. No 61), a Memorandum in Support (Dkt. No. 62), Declaration of Brad Greenspan in Support (Dkt. No. 63), and a Proof of Service by Mail (Dkt. No. 64), all filed on May 2, 2014. Greenspan additionally served on Defendants local counsel a **proposed Complaint in Intervention, attached to the Karasik Declaration, that has not been filed with the Court."** (05/19/14, "Ex Parte Application",Pg6)

parte and intends to oppose the motion to intervene. (Declaration of Louis A. Karasik ("Karasik Decl."), "

Therefore, since Defendants did not re-contact Plaintiff after Defendants were served on May 16, 2014 with verified complaint #9567, at which time Defendants determined to create a new argument/defense/claim that justified Ex Parte relief and sought to make false facts in order to create the belief by the Federal Court and other parties including outside media and government officials, that Plaintiff's claims and causes of action were frivolous and made not in good faith by Plaintiff.

FEDERAL JUDGE IS MISLED

After Defendant's fraudulent "Ex Parte" Application, the misled Federal Judge dismissed the Huthart complaint May 21, 2014, concurrently ruling such dismissal made Plaintiff's Motion to Intervene moot because of mistaken belief Plaintiff's causes of actions contained in Complaint in Intervention were the same as the causes of action in Plaintiff's Court of Chancery verified complaint #9567. Plaintiff notified News Corp of the substantial errors contained in its May 19, 2014 "Ex Parte Application" thru filing a belated Motion For Sanctions June 3, 2014  in Los Angeles Federal District Court but News Corp took no remedial action.(See June 8, 2015 Motion To Take Judicial Notice, Exhibit #6)

On June 5, 2014, News Corp filed two identical Notice of 12b6 Motions in Court of Chancery which purported to respond to Plaintiff's verified complaint #9567 served on "News Corporation" and "21st Century Fox" on May 16, 2014.[27]

---

[27] However News Corp did not file Motions of Opposition or otherwise timely respond to Plaintiff's concurrently served MOTION TO EXPEDITE RIGHT TO ADVANCEMENT SUMMARY HEARING AND LEGAL FEE REIMBURSEMENT SUMMARY JUDGMENT

**Plaintiff's Interpretation Harmonizes Contract Provisions**

The Court has ample power to ensure that Defendants do not defy this Court's

order but rather performs its obligations, *See Hogg v. Walker*, 622 A. 2d 648,654 (Del.

1993) (a court of equity "has broad latitude to exercise its equitable powers to craft

a remedy")_Kenyon v. Millard, 104 A. 778 (Del. Ch. 1918), Id. Rather to defeat a

specific performance the contract would need a "direct statement that [one] party

may…default and be relieved of any obligation to perform by paying the other party

$100." Id (specific performance is available unless there is "a provision clearly showing

that a party to the contract may either perform it or pay a sum of money"). There is no

such statement in the agreement here. Judgment in Plaintiff's favor is warranted.

## <u>CONCLUSION</u>

ii.    Plaintiff seeks Order from the Court enforcing an injunction that forces

Defendants to no longer breach agreement Notice covenants covering: The 1999

Agreement's Section 9( c ), 2001 Regi Agreement's Section 8(c ),   2001 Share

Purchase Agreement's Section 10.3 , 2003 Regi Agreement's 8(c ), 2005 News Corp

Voting Agreement Section 3.5(b). Plaintiff also requires at least five attorney units for

Litigation and maintenance of following:

Breach #1: Both News Corp and Sony have breached 9© by assuming the defense

with counsel that is not satisfactory to Plaintiff, the indemnified party.

Breach #2:   Both News Corp and Sony have Breach of 9© by preventing

"indemnified party" Plaintiff, a right to retain its own counsel", refusing to provide "fees

and expenses of one such counsel" after receipt of "notice of the commencement" of  a)

Action #1: Greenspan v. News Corporation San Jose Federal District Court verified

complaint September 16, 2014 by News Corp b) Action #2: Huthart v. News Corporation

Los Angeles Federal District Court Motion To Intervene and Complaint In Intervention in

2014 by News Corp c) Action #3: Court of Chancery verified complaint #9567 in 2014 by

News Corp and Sony d) Action #4: Undertaking dated November 24, 2013 and Court of

Chancery VCS-106 & VCS-107 Motion 70b, Motion to Conform, Motion Judgment

on Pleadings by News Corp e) Action #5: Brown v. Brewer Motion to Intervene in

2009, 2011, and 2012 by News Corp f) Action #6: Peermusic v. LiveUniverse, Inc.

verified complaint in 2010 by Sony Corp g) Action #7:

> "9(c) Promptly after receipt by an indemnified party under this Section 9 of
> notice of the commencement of any action (including any governmental action),
> such indemnified  party will, if a claim in respect thereof is to be made against any
> indemnifying party under this Section 9, deliver to the indemnifying party a written
> notice of the commencement thereof and the indemnifying party shall have the right
> to participate in, and, to the extent the indemnifying party so desires, jointly with
> any other indemnifying party similarly noticed, to assume the defense thereof with
> counsel mutually satisfactory to the parties; provided, however, that an indemnified
> party shall have the right to retain its own counsel, with the reasonably incurred fees
> and expenses of one such counsel to be paid by the indemnifying party, if
> representation of such indemnified party by the counsel retained by the
> indemnifying party would be inappropriate due to actual or potential conflicting
> interests between such indemnified party and any other party represented by such
> counsel in such proceeding. "

> "8(c) Any Person entitled to indemnification hereunder shall (i) give prompt
>  written notice to the indemnifying party of any claim with respect to which it
> seeks indemnification and (ii) unless in such indemnified party's reasonable
> judgment a conflict of interest between such indemnified and indemnifying parties
> may exist with respect to such claim, permit such indemnifying party to assume the
> defense of such claim with counsel reasonably satisfactory to the indemnified party.
> If such defense is assumed, the indemnifying party shall not be subject to any

liability for any settlement made by the indemnified party without its consent (but such consent will not be unreasonably withheld).

An indemnifying party who is not entitled to, or elects not to, assume the defense of a claim shall not be obligated to pay the fees and expenses of more than one counsel for all parties indemnified by such indemnifying party with respect to such claim, unless in the reasonable judgment of any indemnified party there may be one or more legal or equitable defenses available to such indemnified party which are in addition to or may conflict with those available to another indemnified party with respect to such claim. Failure to give prompt written notice shall not release the indemnifying party from its obligations hereunder.

 "10.3 Notice to Indemnifying Party. If any indemnified party (the "Indemnitee") receives notice of any third-party claim or of the commencement of any action or proceeding or becomes aware of the occurrence of any event with respect to which any other party (or parties) (the "Indemnifying Party") is required to provide indemnification pursuant to Section 10.1 or 10.2, the Indemnitee shall promptly give the Indemnifying Party notice thereof.

The Indemnifying Party may take control of the defense, settlement or compromise of such claim, action or proceeding at the Indemnifying Party's own expense and with the assistance of the Indemnifying Party's own counsel, which counsel shall be reasonably acceptable to the Indemnitee.

If the Indemnifying Party chooses to defend any claim, the Indemnitee shall make available to the Indemnifying Party any books, records or other documents within its control that are necessary or appropriate for such defense, and shall otherwise cooperate fully with the Indemnifying Party.

The Indemnitee shall also have the right to participate in any defense and/or settlement of a claim at the Indemnitee's expense and may, if the Indemnifying Party shall not choose to defend or resist said claim within twenty (20) days after notice thereof from the Indemnitee (or such shorter time specified in the notice as the circumstances of the matter may dictate), dispose of the matter at the reasonable cost of the Indemnifying Party in any way it reasonably deems to be in its best interest."

"8(c) Any Person entitled to indemnification hereunder shall (i) give prompt written notice to the indemnifying party of any claim with respect to which it seeks indemnification and (ii) unless in such indemnified party's reasonable judgment a conflict of interest between such indemnified and indemnifying parties may exist with respect to such claim, permit such indemnifying party to assume the defense of such claim with counsel reasonably satisfactory to the indemnified party. If such defense is assumed, the indemnifying party shall not be subject to any liability for

any settlement made by the indemnified party without its consent (but such consent will not be unreasonably withheld). An indemnifying party who is not entitled to, or elects not to, assume the defense of a claim shall not be obligated to pay the fees and expenses of more than one counsel for all parties indemnified by such indemnifying party with respect to such claim, unless in the reasonable judgment of any indemnified party there may be one or more legal or equitable defenses available to such indemnified party which are in addition to or may conflict with those available to another indemnified party with respect to such claim. Failure to give prompt written notice shall not release the indemnifying party from its obligations hereunder."

"3.5(b) Promptly after receipt by an Indemnified Party of notice of its involvement in any new action, suit, proceeding, arbitration or investigation arising after the date hereof, the Indemnified Party shall, if a claim for indemnification in respect thereof is to be made against Parent pursuant to Section 3.5(a), notify Parent of such involvement. Failure by an Indemnified Party to so notify Parent shall relieve Parent from the obligation to indemnify the Indemnified Party pursuant to this Section 3.5 only to the extent that Parent suffers actual prejudice as a result of such failure. Parent shall be entitled to assume the defense of any such action, suit, proceeding, arbitration or investigation as well as any action, suit, proceeding, arbitration or investigation existing prior to the date hereof and subject to indemnification pursuant to Section 3.5(a), with counsel satisfactory to the Indemnified Party. Without limiting Parent's obligation to indemnify, defend and hold harmless the Indemnified Party pursuant to Section 3.5(a), upon assumption by Parent of the defense of any such action, suit, proceeding, arbitration or investigation, the Indemnified Party shall have the right to participate in such action, suit, proceeding, arbitration or investigation and to retain its own counsel at Parent's expense; provided, however, that Parent shall not, in connection with any one such action, suit, proceeding, arbitration or investigation or separate but substantially similar actions, suits, proceedings, arbitrations or investigations arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Parties, except to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action, suit, proceeding, arbitration or investigation. Parent shall not consent to the terms of any compromise or settlement of any action, suit, proceeding, arbitration or investigation defended by Parent in accordance with the foregoing without the prior written consent of the Indemnified Party, unless such compromise or settlement (i) includes an unconditional release of the Indemnified Party from all liability arising out of such action, suit, proceeding, arbitration or investigation and (ii) does not include a statement as to or an admission of fault, culpability or a failure to act, by or on behalf of any Indemnified Party. "

iii.    Specific performance to cure breach of Section 1(d) of 2003 Form of Director

Indemnification agreement by way of Preliminary Injunction against law firms and lawyers including any of: Varallo, Coen, Jenner & Block, Stone from serving as attorneys on verified complaint case #9567 matters.  Defendants are in breach of Section 1(d) because they have retained Counsel to represent them in current Indemnification related matter that Defendants know does not qualify under Section 1(d) of the eUniverse 2003 Form of Director Indemnification agreement that Plaintiff is party and beneficiary of.

"1(d) The term "Independent Legal Counsel" shall mean any firm of attorneys reasonably selected by the Board of Directors of the Company, so long as such firm has not represented the Company, the Indemnitee, any entity controlled by the Indemnitee, or any party adverse to the Company, within the preceding five years. Notwithstanding the foregoing, the term "Independent Legal Counsel" shall not include any person who, under applicable standards of professional conduct then prevailing, would have a conflict of interest in representing either the Company or the Indemnitee in an action to determine the Indemnitee's right to indemnification or advancement of expenses under this Agreement, the Company's Certificate of Incorporation or Bylaws, applicable law or otherwise.

"1(e) The term "Proceeding" shall mean any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, or any other proceeding (including, without limitation, an appeal therefrom), formal or informal, whether brought in the name of the Company or otherwise, whether of a civil, criminal, administrative or investigative nature, and whether by, in or involving a court or an administrative, other governmental or private entity or body (including, without limitation, an investigation by the Company or its Board of Directors), by reason of (i) the fact that the Indemnitee is or was a director of the Company, or is or was serving at the request of the Company as an agent of another enterprise, whether or not the Indemnitee is serving in such capacity at the time any liability or expense is incurred for which indemnification or reimbursement is to be provided under this Agreement, (ii) any actual or alleged act or omission or neglect or breach of duty, including, without limitation, any actual or alleged error or misstatement or misleading statement, which the Indemnitee commits or suffers while acting in any such capacity, or (iii) the Indemnitee

41

attempting to establish or establishing a right to indemnification or advancement of expenses pursuant to this Agreement, the Company's Certificate of Incorporation or Bylaws, applicable law or otherwise."

iv.    Preliminarily enjoin Defendants from delaying, blocking, obstructing, harassing, and discriminating against Plaintiff and the terms of Plaintiff's contractual indemnification, reimbursement, advancement, and contribution  rights. Preliminarily enjoin Officers, Directors, and Agents of Defendants from further discrimination and harassment by enjoining  any further advancement, indemnification, legal fee reimbursement, or related payments unless on terms no more favorable then on terms Defendant have provided for Plaintiff . This includes Defendants waiting a minimum number of days after receipt of Undertaking before paying anyone (at least as many days as Plaintiff is forced to wait which has now reached over 12 months and counting currently as the delay in payment to Plaintiff of Plaintiff's legal fee related advancement, reimbursement, or indemnification monies owed continues).

### Injunctive Relief Regarding Jurisdictional Claim by Defendants under § 476

News Corp's ridiculous claims made in January 20, 2015 pleading:

"Although Plaintiff named "21st Century Fox Corporation" as a Defendant here, and a Mr. R. Cradock has claimed to own that corporation, see Letter from Mr. R. Cradock dated Sept, 20, 2014 (D.I. 38), it appears that the entity against which Plaintiff seeks to pursue his claims is actually Twenty-First Century Fox, Inc., the corporation that was formerly known as News Corporation. "

"The undersigned counsel initially moved to dismiss on behalf of News Corporation and  "21st Century Fox Corporation but in light of Mr. Cradock's letter (and without waiving any trademark rights of Twenty-First Century Fox with respect to the name "21st Century Fox"), **has now moved to withdraw its appearance on behalf of "21st Century Fox Corporation"** and submits this brief only on behalf of defendants News Corporation and Intermix Media

42

LLC. **Twenty-First Century Fox has not been named as a defendant or served with process in this action.**

Contain two claims which Plaintiff seeks injunctive relief against:

      **i.** **"**Twenty-First Century Fox has not been named as a defendant or served with process in this action."

      i. "The undersigned counsel" has now "moved to withdraw its appearance on behalf of "21st Century Fox Corporation"

      Reason #1: Valid service was made thru Notice of Motion 70B

On or around December 24, 2013 "News Corporation & 21st Century Fox, Inc." were served thru their Registered Agent The Corporation Trust Company in Wilmington Delaware a "Notice Motion In Contempt" under 70B.  Plaintiff identified "21st Century Fox" as "21st Century Fox, Inc." (see June 15, 2015 Motion To Take Judicial Notice at #12 and Exhibit #12). Defendants admit receipt by "21st Century Fox, Inc." of late 2013 Pleadings.

      Plaintiff's service and News Corp's acceptance and acknowledgment in September 11, 2014 pleading of 2013 Motion 70b pleading served in the name of "21st Century Fox, Inc." and the Undertaking in the name of "21st Century Fox" should clearly be grounds for estopping their effort to dismiss themselves from the jurisdiction of this Court. Later, Plaintiff only added or modified the name to "21st Century Fox Corporation" because Defendants did not respond to initial service using the "21st Century Fox Inc.".

      Reason #2:  Defendant's adopted use of "21st Century Fox":

      i.     January 24, 2014, Co-defendant issues press release calling itself  "21st Century Fox" and does not refer to itself as "Twenty-First Century Fox":

"21st Century Fox to acquire Majority Stake in YES Network"

"21st Century Fox (NASDAQ: FOX, FOXA, ASX: FOX, FOXLV) today announced"

"will become a consolidated entity of 21st Century Fox."

"About 21st Century Fox"

"21st Century Fox is the world's premier portfolio"

"Contacts: 21st Century Fox" (See Id. At #10 and Exhibit #10)

 ii. September 10, 2014, Co-defendant issues press release calling itself:

"("21st Century Fox" or the "Company")" (See Id. At #11 and Exhibit #11)

 Reason #3:  April 22, 2014 complaint captioning is sufficient:

The April 22, 2014 complaint #9567 is captioned: "NEWS CORPORATION",

"21ST CENTURY FOX", and "21ST CENTURY FOX CORPORATION".  The

"Motion to Expedite Right to Advancement Summary Hearing Legal Fee

Reimbursement Summary Judgment", is captioned: "21ST CENTURY FOX"..and

states on first page: "Defendant News Corporation aka 21st Century Fox".

 Reason #4: Defendant's own attorney accepted and acknowledged "21st

Century Fox Corporation" as acceptable for service on "Twenty-First Century Fox,

Inc.". Defendant's September 11, 2014 pleading is proof:

 i.  "I write on behalf of my clients News Corporation and 21st Century Fox
Corporation in respect of a matter assigned to Your Honor"

 ii.  "The plaintiff in this matter," "served my clients on May 16, 2014 via their
registered agents in Delaware (Trans. ID 55475515; D.I. 14)."

 iii. "On June 5, 2014, my clients filed motions to dismiss the action for failure to state
a claim (Trans. ID 55546765; D.I. 15-16)."[28]

---

[28] Listed "Of Counsel" is Richard L. Stone of Jenner & Block, and the pleading is

signed by Gregory V. Varallo for Kevin M. Gallagher and Richards, Layton & Finger,

Defendant's September 23, 2014 pleading is further proof:

      i.     "I write on behalf of my clients News Corporation and 21st Century Fox Corporation regarding the above-referenced action"

      ii.     "News Corporation and 21st Century Fox Corporation respectfully renew their request that the Court convene a case management conference"

Further, Varallo, during December 11, 2014 telephonic conference does not claim either of his clients "News Corporation" or "21st Century Fox" were not named as defendants or not served with process. Nor does Varallo mention the "Mr. R. Cradock" letter dated Sept, 20, 2014.

      Reason #5: § 476(a) stops defendant from dismissing itself:

Defendants  and all of their parts Must be enjoined from vacating jurisdiction of the Court since the #9567 verified complaint is a prosecution under Chapter 15, per § 476(a) and (b), co-defendants cannot claim to dismiss themselves by statue.

      Reason #8: It is settled Delaware law that a party waives an argument by not including it in its brief. See Emerald P'rs v. Berlin, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003).

      Reason #9:  Defendant's attempt to dismiss itself is harassment and a violations of § 1701. Defendant's attempt to dismiss itself from this litigation at this late stage under the circumstances, including its own attorney's culpability in the error if any exists, must be rejected. The Court may as a remedy to allow Plaintiff's specific performance or injunctive relief, under  § 4101 or  § 4102,  amend the name in records to "Twenty-

---

P.A., as "Attorneys for Defendant 21st Century Fox Corporation".

First Century Fox, Inc.  because clearly such an amendment "will tend to the

furtherance of Justice".

Under 12(h)(2), Plaintiff prays the Court grant the motion to strike

### B. DECLARATORY RELIEF

i.      Declaratory ruling that Plaintiff per Specific Performance will receive all

Indemnification prayed for in verified complaint subject to a hearing being set to

determine damages on each entry.  In the alternative, a declaratory ruling affirming an

advancement at the oral hearing of a partial amount of the total   Indemnification Plaintiff

seeks.  Plaintiff has met requirements for Court to grant all or at least partial

ii.      Alternatively, Indemnification by way of specific performance

contractual rights, including but not limited to Plaintiff's rights under 2003  "Form of

Director Indemnification" which Plaintiff seeks Declaratory Relief that Plaintiff has

satisfied Section 5(b) qualification being met thru the March 2012 Federal Settlement

of Security Fraud causes of action against eUniverse, Intermix, Director/Officer group

that Plaintiff.

iii.    Defendants are in breach for non payment of their obligations owed under

eUniverse's 2003 Form of Director Indemnification Agreement's Section 5:[29]

    "5. Indemnification for Costs, Charges and Expenses of Witness or Successful Party
Notwithstanding any other provision of this Agreement (except as set forth in
subparagraph 9(a) hereof), and without a requirement for determination as required by
Paragraph 8 hereof, to the extent that the Indemnitee (a) has prepared to serve or has
served as a witness in any Proceeding in any way relating to (i) the Company or any of

---

[29] Plaintiff shall provide additional examples of breaches in the subsequent reply briefing however the
number is significant and often repetitive. However, between the breaches incorporated by reference
herein from the Verified April 22, 2014 complaint, and the May 26, 2015 Final Reply for Motion To
Expedite, these may include sufficient examples sufficient for the preliminary judgment ruling standard.

the Company's subsidiaries, affiliates, employee benefit or welfare plans or such plan's participants or beneficiaries or (ii) anything done or not done by the Indemnitee as a director of the Company or in connection with serving at the request of the Company as an agent of another enterprise, or (b) has been successful in defense of any Proceeding or in defense of any claim, issue or matter therein, on the merits or otherwise, including the dismissal of a Proceeding without prejudice or the settlement of a Proceeding without an admission of liability, the Indemnitee shall be indemnified against all Expenses actually and reasonably incurred by the Indemnitee in connection therewith to the fullest extent permitted by applicable law."

iv.    Defendants are in breach for non payment of their obligations owed under

eUniverse's 2003 Form of Director Indemnification Agreement's Section 6:

6. Partial Indemnification . If the Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for a portion of the Expenses, judgments, fines, interest or penalties, or excise taxes assessed with respect to any employee benefit or welfare plan, which are actually and reasonably incurred by the Indemnitee in the investigation, defense, appeal or settlement of any Proceeding, but not, however, for the total amount of the Indemnitee's Expenses, judgments, fines, interest or penalties, or excise taxes assessed with respect to any employee benefit or welfare plan, then the Company shall nevertheless indemnify the Indemnitee for the portion of such Expenses, judgments, fines, interest penalties or excise taxes to which the Indemnitee is entitled.

v.    Defendants are in breach for non payment of their obligations owed under

Plaintiff has provided a new Undertaking (see Exhibit #4) which contains the

language required by way of eUniverse's 2003 Form of Director Indemnification

Agreement Section 7 to get expenses which "have been incurred" paid by Defendants.

Plaintiff has further met "reasonable evidence" criteria by providing summaries of all

invoices, most recently in October 2014 Plaintiff's Amended Reply to 12b6 Motion:

"7. Advancement of Expenses . The Expenses incurred by the Indemnitee in any Proceeding shall be paid promptly by the Company in advance of the final disposition of the Proceeding at the written request of the Indemnitee to the fullest extent permitted by applicable law; provided, however , that the Indemnitee shall set forth in such request reasonable evidence that such Expenses have been incurred by the Indemnitee in connection with such Proceeding, a statement that such Expenses

do not relate to any matter described in subparagraph 9(a) of this Agreement, and an undertaking in writing to repay any advances if it is ultimately determined as provided in subparagraph 8(b) of this Agreement that the Indemnitee is not entitled to indemnification under this Agreement."

vi.   Defendants are in breach for non payment of their obligations owed under

eUniverse's 2003 Form of Director Indemnification Agreement's Section 8:

"8. Indemnification Procedure; Determination of Right to Indemnification . (a) Promptly after receipt by the Indemnitee of notice of the commencement of any Proceeding, the Indemnitee shall, if a claim for indemnification or advancement of Expenses in respect thereof is to be made against the Company under this Agreement, notify the Company of the commencement thereof in writing. The omission to so notify the Company will not relieve the Company from any liability which the Company may have to the Indemnitee under this Agreement unless the Company shall have lost significant substantive or procedural rights with respect to the defense of any Proceeding as a result of such omission to so notify.

(b) The Indemnitee shall be conclusively presumed to have met the relevant standards of conduct, if any, as defined by applicable law, for indemnification pursuant to this Agreement and shall be absolutely entitled to such indemnification, unless a determination by clear and convincing evidence is made that the Indemnitee has not met such standards by (i) the Board of Directors by a majority vote of a quorum thereof consisting of Disinterested

vii.   Defendants are in breach for non payment of their obligations owed under

eUniverse's 2003 Form of Director Indemnification Agreement's Section 3,4,5,6:

"3. Proceeding Other Than a Proceeding By or In the Right of the Company . The Company shall indemnify the Indemnitee if the Indemnitee is a party to or threatened to be made a party to or is otherwise involved in any Proceeding (other than a Proceeding by or in the right of the Company), by reason of the fact that the Indemnitee is or was a director of the Company, or is or was serving at the request of the Company as an agent of another enterprise, against all Expenses, judgments, fines, interest or penalties, and excise taxes assessed with respect to any employee benefit or welfare plan, which are actually and reasonably incurred by the Indemnitee in connection with such a Proceeding, to the fullest extent permitted by applicable law; provided, however , that any settlement of a Proceeding must be approved in advance in writing by the Company (which approval shall not be unreasonably withheld).

4. Proceedings By or In the Right of the Company . The Company shall indemnify the Indemnitee if the Indemnitee is a party to or threatened to be made a party to or is otherwise involved in any Proceeding by or in the right of the Company to procure a judgment in its favor by reason of the fact that the Indemnitee is or was a director of the Company, or is or was serving at the request of the Company as an agent of another enterprise, against all Expenses, judgments, fines, interest or penalties, and excise taxes assessed with respect to any employee benefit or welfare plan, which are actually and reasonably incurred by the Indemnitee in connection with the defense or settlement of such a Proceeding, to the fullest extent permitted by applicable law."

5. Indemnification for Costs, Charges and Expenses of Witness or Successful Party . Notwithstanding any other provision of this Agreement (except as set forth in subparagraph 9(a) hereof), and without a requirement for determination as required by Paragraph 8 hereof, to the extent that the Indemnitee (a) has prepared to serve or has served as a witness in any Proceeding in any way relating to (i) the Company or any of the Company's subsidiaries, affiliates, employee benefit or welfare plans or such plan's participants or beneficiaries or (ii) anything done or not done by the Indemnitee as a director of the Company or in connection with serving at the request of the Company as an agent of another enterprise, or (b) has been successful in defense of any Proceeding or in defense of any claim, issue or matter therein, on the merits or otherwise, including the dismissal of a Proceeding without prejudice or the settlement of a Proceeding without an admission of liability, the Indemnitee shall be indemnified against all Expenses actually and reasonably incurred by the Indemnitee in connection therewith to the fullest extent permitted by applicable law.

6. Partial Indemnification . If the Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for a portion of the Expenses, judgments, fines, interest or penalties, or excise taxes assessed with respect to any employee benefit or welfare plan, which are actually and reasonably incurred by the Indemnitee in the investigation, defense, appeal or settlement of any Proceeding, but not, however, for the total amount of the Indemnitee's Expenses, judgments, fines, interest or penalties, or excise taxes assessed with respect to any employee benefit or welfare plan, then the Company shall nevertheless indemnify the Indemnitee for the portion of such Expenses, judgments, fines, interest penalties or excise taxes to which the Indemnitee is entitled."

viii.   Defendants are in breach for both unlawful ongoing use of "Independent Legal Counsel" in violation of Section 8 and for  non payment of their obligations owed under eUniverse's 2003 Form of Director Indemnification Agreement

"8. Indemnification Procedure; Determination of Right to Indemnification .

(a) Promptly after receipt by the Indemnitee of notice of the commencement of any Proceeding, the Indemnitee shall, if a claim for indemnification or advancement of Expenses in respect thereof is to be made against the Company under this Agreement, notify the Company of the commencement thereof in writing. The omission to so notify the Company will not relieve the Company from any liability which the Company may have to the Indemnitee under this Agreement unless the Company shall have lost significant substantive or procedural rights with respect to the defense of any Proceeding as a result of such omission to so notify.

(b) The Indemnitee shall be conclusively presumed to have met the relevant standards of conduct, if any, as defined by applicable law, for indemnification pursuant to this Agreement and shall be absolutely entitled to such indemnification, unless a determination by clear and convincing evidence is made that the Indemnitee has not met such standards by (i) the Board of Directors by a majority vote of a quorum thereof consisting of Disinterested   Indemnitee.

Plaintiff's rights and protections are extended thru "Savings Clause" in Section 15 and 17:

"15. Savings Clause . If this Agreement or any paragraph, sentence, term or provision hereof is invalidated on any ground by any court of competent jurisdiction, the Company shall nevertheless indemnify the Indemnitee as to any Expenses, judgments, fines, interest or penalties, or excise taxes assessed with respect to any employee benefit or welfare plan, which are incurred with respect to any Proceeding to the fullest extent permitted by any (a) applicable paragraph, sentence, term or provision of this Agreement that has not been invalidated or (b) applicable law."

"17. Amendments . No amendment, waiver, modification, termination or cancellation of this Agreement shall be effective unless in writing signed by the party against whom enforcement is sought. The indemnification rights afforded to the Indemnitee hereby are contract rights and may not be diminished, eliminated or otherwise affected by amendments to the Certificate of Incorporation, Bylaws or by other agreements, including directors' and officers' liability insurance policies, of the Company."

## C.   SPECIFIC PERFORMANCE RELIEF:

This list of relief sought shall supersede and supplements all prior motions:

    i.     Reimbursement of prior legal fees thru granting of specific performance to

Plaintiff under the 1999 Agreement including Section 9's reimbursement, contribution, and indemnification, or any right due Plaintiff by covenant listed herein from any one of the nine agreements cited herein.[30]   Including paying Undertaking amount that was part of April 22, 2014 Motion to Expedite.

ii.     Award of multiple attorney units to provide sufficient coverage of Plaintiff's Multiple  rights to have legal expenses paid by Defendants, "as incurred".

1 "Attorney Unit" is equal to the greater of the gross 5 year compensation agreed to be paid by News Corp to hire a lawyer from a top law firm and retain such talent for the duration of what News Corp determined thru the free market was a 5 year term.

Each Unit of an attorney that is awarded or deemed owed by the Court, shall be an

i)     amount no less then Defendant's reported 8k September 29, 2014 costs including forecast duration. See Exhibit #1 which is evidence of News Corp's cost per unit which shall be used as a minimum cost to be advanced to Plaintiff in each case for each future awarded unit of lawyer service owed under Plaintiff's specific performance contractual rights.[31]

---

[30] and additionally Plaintiff served as fiduciary and additionally as signatory on seven of nine such agreements listed on page 7-8 herein.

[31] While Defendant has disclosed thru Exhibit #1, a partial cost of 1 lawyer unit (gross compensation pro rated over 5 year term), Defendant has not disclosed the total yet paid under Exhibit #2 which is evidence of that to sum up the total cost, compensation paid to Zweifach from 21st Century Fox" must be added with compensation paid by News Corporation and all other subsidiaries of News Corp.

Plaintiff seeks Court to award relief of a total of 9 attorney units as defined herein: 2 attorney units over 5 years for the 1999 Registration Rights Agreement, 1 attorney unit over 5 years for the 2000 Sony related agreements, 1 attorney unit over 5 years for the 2001 Sony related agreements, 1 attorney unit over 5 years for the 2003 Sony related agreements, 1 attorney unit over 5 years for the 2003 Series C related agreements, 1 attorney over 5 years for the 2005 News Corporation Voting Agreement, 1 attorney over 5 years focused on supplemental pleading matters, 1 attorney over 5 years focused and specialized in whistleblower federal and state law, and 1 attorney over 5 years focused on appellate, and 1 attorney over 5 years which will be for non-Delaware matters where outside counsel is needed to be retained. The number of attorney units Plaintiff is seeking is a relatively small number when considering the Litigation includes specific performance matters and regular contract law breaches and related damages for at least nine agreements, not including the verified complaint claims or supplementary claims, representing different positions, interests and rights of Plaintiff will require multiple attorney units awarded to Plaintiff. Further, there are two indemnifying parties with different claims, breaches, counter-defenses, counter-claims, and that the litigation already includes a significant specific performance preliminary injunction round before main trial, and then indemnification final disposition after appeals are finished.

Further, Plaintiff seeks each attorney unit would receive a unit of non-lawyer litigation expenses per 5 year term of coverage and underwriting (available for payment before being incurred) per the 2003 Form of Director Indemnification agreement is

included herein (see Exhibit #5). [32]

iii.        Reformation or Recission

1999 Agreement's Section 15(b) and (c) provides for recission of 2003 Series C

Preferred Stock transaction including 2003 Registration Rights and 2005 News

Corp Voting Agreement:

> "(b) No Inconsistent Agreements.  The Company shall not enter into any agreement with respect to its securities that is inconsistent with the rights granted to the holders of Registrable Securities in this Agreement or otherwise conflicts with the provisions hereof."
>
> "(c) No Piggyback on Registrations.  The Company shall not include and shall not grant to any of its securities holders, including, without limitation, any Placement Agents (other than the Holders of Registrable Securities in such capacity) the right to include any of its securities in any Registration Statement other than Registrable Securities, except any such rights that exist as of the date hereof.  Notwithstanding the foregoing, nothing shall prevent the Company from filing a registration statement simultaneously with the Registration Statement so long as the Holders of Registrable Securities have full priority with respect to the removal of any restrictive legend upon the resale by such Holder of the Registrable Securities."

Plaintiff shall describe the specific sequence and format of the reformation relief sought in

more detail at the oral hearing and then based on any questions the Court has, the Plaintiff

will provide a written follow up proposed order with the additional information on the

reformation relief including copies of proposed post reformatted agreements for the Court

to consider.

---

[32] Plaintiff has worked with prospective outside counsel to come up with the good faith estimate provided and requested to be approved under any single covenant of nine agreements cited in the Judicial Notice section, but using template provided from 2003 agreement to be more fair to Defendants who created the document and explicit rights to be available for Plaintiff.

Plaintiff seeks specific performance of Recission   voiding certain agreements and issuances of stock of eUniverse, Inc. and Myspace, Inc. and other properties to be provided in further detail in the Final reply briefing, including Sony's Series B Preferred stock by recission of the Certificate of Designation, and the Series B Purchase Agreement, and the Series C shares,  Additionally, Plaintiff stood to gain full or partial benefit of July 2003 Option Agreement if not breached or not performed to default by Sony. Relief will result in share count reduced and reduced dilution to Plaintiff from recission or reformation of: News Corp transaction, Sony Series B, Series C, Myspace Stock issued, common stock issued. Plaintiff seeks equitable relief thru recission and reformation to return Plaintiff to pre-Sony investment ownership percentage of "Registrable Securities".[33]   Plaintiff % ownership will increase after the reduction, cancellation of Preferred Shares and Common Shares.   News Corp and Sony are "Jointly" and "severally" liable to Plaintiff.

Plaintiff further seeks recission of Defendant's May 19, 2014 "Ex Parte Application".
And other equitable relief by specific performance to be presented at oral hearing.

iv.        Plaintiff seeks specific performance of  Constructive Trust

Including appointment of a Special Master by the Court to help with issues related to required uptick in communications and reporting with the Court including discovery and monitoring of post-Preliminary Injunction matters. Specifically, that a constructive trust be formed based on liability and damages owed to the A, B, and C Subclasses defined in Plaintiff's May 2, 2014 Complaint In Intervention that were damaged and had their claims

54

terminated or lost by and as a result of the May 19, 2014 "Ex Parte Application". Further

that a constructive trust be held on Defendant's equity ownership stake in Hulo.com or its

parent corporation.

      v.    Plaintiff seeks specific performance of.Special Damages, Replivin,

Disgorgement, Contempt,     Including appointment of a Special Master by

the Court to help with issues related to required uptick in communications and reporting

with the Court including discovery and monitoring of post-Preliminary Injunction matters.

      vi.    Consolidation. Further, that Exhibit #4, which contains the causes of action

filed as part of Plaintiff's May 2, 2014 Federal Los Angeles Complaint In Intervention, be

consolidated with and as partof this Motion under Rule 65 and further that the Vice

Chancellor consider if the May 19, 2014 "Ex Parte Application" triggered equitable or

judicial estoppel.

      Plaintiff has provided a new additional Undertaking (see Exhibit #3) that conforms

with the language the 2003 Form of Director Indemnification states is required prior to

obligation of Defendants to pay such stated monies is owed. Further, Plaintiff seeks to

have the Motion Rule 65 Preliminary Injunction oral hearing set as soon as possible.

DATED: June 17, 2015, respectfully submitted,

 /s/  Brad D. Greenspan
Brad D. Greenspan
2995 Woodside Rd., Suite 1400
Woodside, CA 94062, Ph: 408-827-9656 ext: 454

EXHIBIT #1:– "21st Century Fox",  September 29, 2014 8K ITEM 5.02 Departure of

Directors or Certain Officers; Election of Directors; Appointment of Certain Officers;

Compensatory Arrangements of Certain Officers.

On September 26, 2014, 21st Century Fox America, Inc. ("21CFA"), a wholly owned subsidiary of Twenty-First Century Fox, Inc. (the "Company"), entered into a letter agreement (the "Letter Agreement") with Mr. Gerson Zweifach, Senior Executive Vice President and Group General Counsel of the Company, effective July 1, 2014. The Letter Agreement, among other things, amends Mr. Zweifach's employment agreement dated as of February 1, 2012 (the "Employment Agreement") to extend the term of employment through June 30, 2017.

Pursuant to the terms of the Letter Agreement, Mr. Zweifach's annual bonus target for the fiscal years ending June 30, 2015, June 30, 2016 and June 30, 2017 will be no less than $2.5 million with a maximum of $5 million. In addition, beginning with the fiscal 2015-2017 performance period through the fiscal 2017-2019 performance period, the target amount of Mr. Zweifach's award of performance stock units ("PSUs") under the Company's 2013 Long-Term Incentive Plan shall be no less than $2.5 million.

The PSU awards for these performance periods shall be subject to the same treatment upon termination as his PSU awards for the fiscal 2013-2015 and fiscal 2014-2016 performance periods as described in Mr. Zweifach's Employment Agreement. All other substantive terms of Mr. Zweifach's Employment Agreement, including Mr. Zweifach's base salary, remain unchanged.

In connection with Mr. Zweifach's execution of the Letter Agreement, Mr. Zweifach received from the Company a payment of $1 million.

SIGNATURES
Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

TWENTY-FIRST CENTURY FOX, INC.
(REGISTRANT)
By: /s/ Janet Nova
Janet Nova
Executive Vice President and
Deputy Group General Counsel
Dated: September 29, 2014

Exhibit #2   EX-99.1: **David Pitofsky Named News Corp General Counsel**

**New York, NY (February 12, 2015)** — News Corp announced today that David Pitofsky has been named General Counsel and Chief Compliance Officer.

Mr. Pitofsky succeeds Gerson Zweifach. Mr. Zweifach, who remains Group General Counsel and Chief Compliance Officer of 21st Century Fox, was retained as the General Counsel of News Corp on a transitional basis following the separation of the two companies in June 2013.

Mr. Pitofsky has been Deputy General Counsel and Deputy Chief Compliance Officer of News Corp since 2013.

"I am grateful to Gerson for his steadfast leadership during the separation of our two companies and this time of transition for the new News Corp," said Rupert Murdoch, Executive Chairman of News Corp.  "Gerson has been a consistent source of wise counsel and strategic thinking, and he will be missed, though I am glad he will continue to lead the legal team at 21st Century Fox."

Mr. Murdoch continued, "Over the past two years I have worked with David, he has proven himself to be a first-rate lawyer whose insights and advice have been invaluable. We feel very fortunate to have him as our new General Counsel, where I am sure he will provide great leadership and support to our businesses around the world."

"David's the ideal person to slip into Gerson's large legal shoes, ensuring a seamless transition in a major leadership position here at News Corp," said Robert Thomson, Chief Executive of News Corp. "His impeccable integrity, legal insight and collaborative spirit will serve us all well in the years ahead."

"All of us at News Corp appreciate Gerson's very effective service as our General Counsel during this crucial start-up period," said Mr. Thomson. "We knew from the outset that this day was inevitable, but Gerson's efficacious impact will echo for many years to come."

EXHIBIT #3 – New Undertaking

"7. Advancement of Expenses . The Expenses incurred by the Indemnitee in any Proceeding shall be paid promptly by the Company in advance of the final disposition of the Proceeding at the written request of the Indemnitee to the fullest extent permitted by applicable law; provided, however , that the Indemnitee shall set forth in such request reasonable evidence that such Expenses have been incurred by the Indemnitee in connection with such Proceeding, a statement that such Expenses do not relate to any matter described in subparagraph 9(a) of this Agreement, and an undertaking in writing to repay any advances if it is ultimately determined as provided in subparagraph 8(b) of this Agreement that the Indemnitee is not entitled to indemnification under this Agreement."

–   UNDERTAKING #004

I, Brad D. Greenspan, hereby agree that I will immediately repay News Corp (News Corp shall mean: one or more of the following: i) News Corp" shall mean: i) "News Corporation", ii) "21st Century Fox Inc.", iii) "Twenty First Century Fox Inc.", iv) "21st Century Fox" , v) "News America Corporation". " vi) "21st Century Fox America" viii) "News Corporation, NI Group Limited f/k/a News International Limited, News Group Newspapers Limited" ix) "Remainco", x) "New Newscorp Inc" xi) "New News Corporation") xii) "NewCorp Holdings UK & Ireland" xiii) "NCH" , xiv) eUniverse, Inc., xv) Intermix, Inc., xvi) Myspace, Inc., xvii) Intermix Media LLC, xviii) Myspace LLC) XIV) Fox Interactive ) their successors any payment it has advanced to me to cover my attorney's fees and other expenses. I pledge to repay all amounts so advanced if it shall ultimately be determined as provided in subparagraph 8(b) of the 2003 Directors Form of Indemnification that I the indemnitee am not entitled to be indemnified or advanced such expenses.

I understand that this means, among other things, that as defined under applicable law I am only entitled to be indemnified by Sony or its successor if I acted in good faith and in a manner I reasonably believed to be in or not opposed to the best interests of other Holders of common and preferred stock and I had no reasonable cause to believe my conduct was unlawful. (emphasis added).

Further, the expenses do not relate to any matter described in subparagraph 9(a) of the 2003 Directors Form of Indemnification.

Dated June 16, 2015

Brad D. Greenspan

EXHIBIT #4

"PRELIMINARY STATEMENT

1. This is a civil action brought against Defendants for damages for violations of Plaintiff's right to privacy; for the unlawful access to stored communications and for the intrusion into, interception of, email and other wire communications while Plaintiff was living in Los Angles in violation of 18 U.S.C. 2701, 2707; 18 U.S.C. 2510, 2511, 2520; Article I, Section 1of the California State Constitution; 630- 637.0 of the California Penal Code; 1708.8 of the California Civil Code; and California common law."

"JURISDICTION AND VENUE

This action is brought pursuant to 18 U.S.C. 2701 and 2707, 18 U.S.C. 2510, 2511 and 2520. This Court has jurisdiction of the action pursuant to 28 U.S.C. 1331, as this is a civl action arising under the laws of the United States. This Court has jurisdiction over the supplemental claims arising under the Constitution of the State of California, California State law and California common law pursuant to 28 U.S.C. 1367(a).

Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C 1391(a) and (b)(2) because the claims arose in this district."

"CLASS ACTION ALLEGATIONS

23. Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). "

"PRELIMINARY STATEMENT 1. This is a civil action brought against Defendants for damages for violations of Plaintiff's right to privacy; for unlawful access to stored communications and for the intrusion into, interception of, email and other wire

communications while Plaintiff was living in Los Angeles in violation of 18 U.S.C. 2701, 2707; 18 U.S.C. 2510,2511, 2520; Article I, Section 1 of the California State Constitution; 630-637.0 of the California Penal Code; 1708.8 of the California Civil Code; and California common law."

"FIRST CLAIM FOR RELIEF (Violation Of The Stored Communications Act, 18 U.S.C. 2701 and 2707- All Defendants)

Plaintiff repeats and realleges each and ever allegation contained herein

The Stored Communications Act (the "SCA") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photoptical system that affects interstate or foreign commerce ..." 18 U.S.C. 2711(1); 18 U.S.C. 2510(12).

The SCA broadly defines a "wire communication" as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce..." 18 U.S.0 2711 (1); 18 U.S.C. 2510(1).

Pursuant to the SCA, "electronic storage" means (a) "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof," and

(b) "any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

16  178 U.S.0 2711(1); 18 U.S.0 2510(17)(A)(B). This type of electronic storage includes communications in intermediate electronic storage that have not yet been delivered to their recipient.Congress enacted the SCA to prevent "unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." Senate Report No. 99-541, S. REP. 99- 541, 35, 1986 U.S.C.C.A.N. 355, 3589.

45. As such, the SCA mandates, among other thing, that it is unlawful for a person to obtain access without authorization to stored communications, including communications sent to and temporarily stored on a cellular telephone's voice-mail system. 18 U.S.C. 2701(a).

46. Defendants violated 18 U.S.C. 2701 (a)(1), in that they accessed a "facility through which electronic communication service is provided." (18 U.S.C. 2701(a)) by intentionally accessing Plaintiff's voicemails without authorization and obtaining and/or altering authorized access to a wire or electronic communication while in electronic storage by collecting and accessing temporarily stored voicemails or those maintained for purposes of backup protection."

SUB-CLASS A: EUNICE & SIMILAR SITUATED;

This occurred while Plaintiff or Plaintiffs relatives and/or Spouse visited and traveled in or through Los Angeles in 2004 and 2005 Defendants had actual knowledge of, participated in, directed and/or approved of, and benefitted from, this practice.

61

"47. Additionally, Defendants violated 18 U.S.C. 2701(a)(2) because they intentionally exceeded or had no authorization to access Plaintiff's communications and obtained, altered, or prevented authorized access to a wire or electronic communication while in electronic storage by interfering with Plaintiff's temporarily stored voicemails, as disclosed herinabove. Defendants had actual knowledge of, participated in, directed and/or approved of, and benefitted from, this practice."

As a result of Defendants' conduct described herein, and their violation of 2701, Plaintiff has suffered injuries and seeks an award of the maximum statutory actual damages, including profits made by Defendants, plus reasonable attorneys' fees and costs pursuant to 18 U.S.C. 2707.

SECOND CLAIM FOR RELIEF

(Violation of Wiretap Act, 18 U.S.C. 2510, 2511 & 2520 .All Defendants)

49. Plaintiff repeats and realleges each and every allegation contained herein

U.S.C. § 2511 provides, in relevant part, that any person who intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

The Wiretap Act generally prohibits the "interception" of "wire,oral,or electronic communications." 18 U.S.C. 251 1(1)

The Wiretap Act provides a private right of action against any person who "intentionally

intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," be subject to [civil liability]. See 18 U.S.C. § 251 1(1) (West Supp. 1999) (emphasis added)18 U.S.C. 251 1(1)(a), or who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication,knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [the Wiretap Act.] 2511 (1)(c) ("intentionally discloses, or endeavors to disclose, to any other person the contents...").

The statue prohibits "interceptions" of electronic communications and defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through  any electronic, mechanical, or other device." 25 10(4).

The "contents" of a communication, in turn, are defined in the statues as "any information concerning the substance, purport, or meaning of that communication." 2510 (8). "Any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce," with certain exceptions, qualifies as an "electronic communication." 2510(12). "Content" includes information the user intended to communicate, such as the words spoken during a phone call that are preserved in voice-mail messages, which were wrongfully hacked and intercepted.

SUB-CLASS A: UK & EUNICE

"54. Defendants intercepted "wire, oral or electronic communications" and used or
 disclosed their contents, by contemporaneously hacking into Plaintiff's cellular telephone

system. Defendants captured and obtained voice-mail messages intended for Plaintiff before Plaintiff could access them. Defendants listened to these messages, copied their contents and/or disseminated them in violation of the Wiretap Act. This occurred while Plaintiff or Plaintiff's relatives and/or spouse visited and traveled in or through Los Angeles in 2004 and 2005 Defendants had actual knowledge of, participated in, direct and/or approved of, and benefited from, this practice."

As a direct result of Defendants' actions as alleged here, Plaintiff suffered irreparable harm in his personal and professional life and is entitled to the greater of actual damages and any profits made by Defendants due to their violations of 18 U.S.C. 2520 and 2511 or statutory damages, pursuant to 18 U.S.C. 2520.As a result of Defendants' actions as alleged here, Plaintiff is also entitled to punitive damages, as well as reasonable attorneys' fees and costs, pursuant to 18 U.S.C. 2520.

SUB-CLASS B: NELSON, MEMBER FEDERAL JUDGE KING PLAINTIFF CLASS

SUB-CLASS C: Employees or opportunity seekers who interviewed With at least 1 officer

THIRD CLAIM FOR RELIEF

Violation of Article I, Section I Of The California State Constitution - All Defendants)

Plaintiff repeats and realleges each and every allegation contained herein The aforementioned wrongful actions and practices of Defendants violated Plaintiff's rights under Article I, Section 1 of the California State Constitution which provides:

> "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety, happiness and privacy." (Emphasis added.)

58. The California State Constitution was amended to add the constitutional right to privacy following a 1972 ballot initiative. The California Supreme Court has since suggested the State Constitution's enumerated right to privacy is sometimes greater than the United States Constitution's unenumerated right to privacy.

SUB CLASS A: EUNICE/UK

"59. During 2004 and 2005, Defendants repeatedly intercepted, accessed and listened to voice-mail messages intended solely for Plaintiff's private cellular telephone system. Further, Defendants knew and/or should have known that the voice mail messages were intended solely for Plaintiff, and yet they continued to intercept, access and listen to them. Defendants' actions rendered Plaintiff unable to retrieve voice-mail messages intended solely for him, which were on Plaintiff's cellular telephone system.

61. Defendants published information, including articles in The Sun and News Of The World, using sensitive, private and confidential information intended solely for Plaintiff. Defendants' unauthorized interceptions of Plaintiff\'s voice-mail messages were an egregious breach of well-established social norms that recognize the need to maximize individual control over the dissemination and use of such information in order to prevent unjustified embarrassment and indignity, and violated Plaintiff's reasonable expectation of privacy.As a result of Defendants' actions, Plaintiff was unable to make intimate decisions or conduct personal activities relating to both his family and career without observation, intrusion, or interference.Defendants' actions violated

Plaintiff's specific, legally protected privacy interest and reasonable expectation of privacy through conduct that was sufficiently serious in its nature, scope and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.As a result of Defendants' action as alleged here, Plaintiff was caused irreparable harm in his personal and professional life and is entitled to general and specific damages. Pursuant to 28 U.S.C. 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

SUB-CLASS A: UK & EUNICE

Defendants intercepted "wire, oral or electronic communications" and used or disclosed their contents, by contemporaneously hacking into Plaintiff's cellular telephone system. Defendants captured and obtained voice-mail messages intended for Plaintiff before Plaintiff could access them. Defendants listened to these messages, copied their contents and/or disseminated them in violation of the Wiretap Act. This occurred while Plaintiffor Plaintiff's relatives and/or Spouse visited and traveled in or through Los Angeles in 2004 and 2005 Defendants had actual knowledge of, participated in, directed and/or approved of, and benefitted from, this practice. As a direct result of Defendants' actions as alleged here, Plaintiff suffered irreparable harm in his personal and professional life and is entitled to the greater of actual damages and any profits made by Defendants due to their violations of 18 U.S.C. 2520 and 2511 or statutory damages, pursuant to 18 U.S.C. 2520.As a result of Defendants' actions as alleged here, Plaintiff is also entitled to punitive damages, as well as reasonable attorneys' fees and costs, pursuant to 18 U.S.C. 2520.

SUB-CLASS B: NELSON, MEMBER FEDERAL JUDGE KING PLAINTIFF CLASS

SUB-CLASS C: Employees or opportunity seekers who interviewed With at least 1 officer

"THIRD CLAIM FOR RELIEF (Violation of Article I, Section I Of The California State Constitution  - All Defendants)"

"59. During 2004 and 2005, Defendants repeatedly intercepted, accessed and listened to voice-mail messages intended solely for Plaintiff's private cellular telephone system. Further, Defendants knew and/or should have known that the voice mail messages were intended solely for Plaintiff, and yet they continued to intercept, access and listen to them."

Defendants' actions rendered Plaintiff unable to retrieve voice-mail messages intended solely for him, which were on Plaintiff's cellular telephone system.

"61. Defendants published information, including articles in The Sun and News Of The World, using sensitive, private and confidential information intended solely for Plaintiff. Defendants' unauthorized interceptions of Plaintiff's voice-mail messages were an egregious breach of well-established social norms that recognize the need to maximize individual control over the dissemination and use of such information in order to prevent unjustified embarrassment and indignity, and violated Plaintiff's reasonable expectation of privacy.

As a result of Defendants' actions, Plaintiff was unable to make intimate decisions or conduct personal activities relating to both his family and career without observation, intrusion, or interference.Defendants' actions violated Plaintiff's specific, legally protected privacy interest and reasonable expectation of privacy through conduct that was sufficiently serious in its nature, scope and actual or potential impact to constitute an

egregious breach of the social norms underlying the privacy right.

As a result of Defendants' action as alleged here, Plaintiff was caused irreparable harm in his personal and professional life and is entitled to general and specific damages. Pursuant to 28 U.S.C. 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

"62. Defendants' unauthorized interceptions of Plaintiff\'s voice-mail messages were an egregious breach of well-established social norms that recognize the need to maximize individual control over the dissemination and use of such information in order to prevent unjustified embarrassment and indignity, and violated Plaintiff's reasonable expectation of privacy."

SUB CLASS A: EUNICE/UK

"FOURTH CLAIM FOR RELIEF (Violation of California Penal Code 630, 631, 632, 632.7 & 637(2)(a) – All Defendants)"

Plaintiff repeats and realleges each and every allegation contained herein.

"67. The actions and practices of Defendants violated Plaintiff's rights under The California Penal Code 630, 631, 632, 632.7 and 637.2(a). The purpose of the California Penal Code 630 is to protect private communications in an era of ever improving technology. California Penal Code 630 begins as follows:

"The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free

exercise of personal liberties and cannot be tolerated in a free and civilized society."

"70. While Plaintiff or spouse or relatives traveled thru or visited California in 2004 and 2005, Defendants and/or their agents, employees or representatives intentionally intercepted, interfered with, accessed and hacked Plaintiff's voice-mail messages on his cellular telephone system or directed, caused, permitted, and/or conspired for Plaintiff's cellular telephone voice-mail to be intercepted, interfered with, accessed and hacked, Defendants intentionally made unauthorized connections to the voice-mail on Plaintiff's cellular telephone system without the consent of Plaintiff or any other party to the voice-mail communications.

71. Defendants also made unauthorized attempts to learn the contents of confidential communications contained in the voice-Mail of Plaintiff's cellular telephone system. Defendants used or attempted to use and/or communicated information that was obtained through such activities. Defendants' actions were thus in violation of 631 of the California Penal Code. Defendants had actual knowledge or, participated in, directed and/or approved of, and benefitted form, this practice."

"74. Whle Plaintiff traveled thru or visited California in 2004 and 2005, Defendants and/or their agents, employees or representatives intentionally, and without the consent of all parties to the communications, used an electronic devise to access and to record Plaintiff's voice-mail messages on his cellular telephone system, including voice-mail messages generated by calls from other cellular phones and landlines. Defendants then used or attempted to use the information obtained in this manner. The voice-mail messages

left and stored on Plaintiff's cellular telephone system were private and confidential because at least one party to the communication reasonably expected the communication to be limited to the parties. Defendants' actions were thus in violation of 631, 632, and 632.7 of the California Penal Code. Defendants had actual knowledge of, participated in, directed and/or approved of, and benefitted from, this practice."

CA Statue 637.2 states,

"(a) Any person who has been injured by a violation of this chapter may bring an action against theperson who committed the violation for the greater of the following amounts:

(1) Five thousand dollars ($5,000). (2) Three times the amount of actual damages, if any, sustained by the plaintiff."

California Penal Code 631(a) defines the acts that violate the law as follows: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done

any of the acts or things mentioned above in this section,"

A violator of California Penal Code 632(a) is defined as "Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio,"        California Penal Code 632 (b) defines "person" in this context as including any "individual, business association, partnership, corporation, limited liability company...

SUBCLASS C: HiTech employees

California Penal Code 632(c) defines the term "confidential communication" to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto," excluding public proceedings or other instances where there would not be an expectation of privacy.

A Violator of California Penal Code 632.7(a) is defined as "every person who, without the consent of all parties to a communication, intercept or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone..."

As a result of Defendants' actions as alleged here, Plaintiff was caused irreparable harm in his personal and professional life. Plaintiff's actual damages include but are not limited to, emotional distress, anxiety, embarrassment, humiliation, the deterioration of family

relationships, and the fear of, or actual loss of, professional credibility and integrity.

Defendants' actions were a substantial factor in causing this harm. Under 637.2(a) of the

California Penal Code, "any person who has been injured by a violation of this chapter

may bring an action against the person who committed the violation."By reason of the

foregoing, Plaintiff is entitled to the greater of statutory damages, pursuant to 637.2(a)(1),

or three times the actual damages suffered for each instance in which Defendants violated

631, 632, and 632.7 of the California Penal Code, pursuant to 637.2(a)(2).

Pursuant to 28 U.S.C. 1367, this Court has pendent or supplemental -jursidction to hear-

and adjudicate such claims..     Any person who trespasses on property for the purpose of

committing any Every person not a party to a telegraphic or telephonic communication

who willfully discloses the contents of a telegraphic or telephonic message, or any part

thereof, addressed to another person, without the permission of that person, unless directed

so to do by the lawful order of a court, is punishable by imprisonment pursuant to

subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by fine not

exceeding five thousand dollars

($5,000), or by both that fine and imprisonment. Every person not connected with any

telegraph or telephone office who, without the authority or consent of the person to whom

the same may be directed, willfully opens any sealed envelope enclosing a telegraphic or

telephonic message, addressed to another person, with the purpose of learning the contents

of such message, or who fraudulently represents another person and thereby procures to be

delivered to himself any telegraphic or telephonic message addressed to such other person,

with the intent to use, destroy, or detain the same from the person entitled to receive such

message, is punishable as provided in Section 637."

FIFTH CLAIM FOR RELIEF

(Violation of California Civil Code 1708.8(b), 1708.8(d) & 1708.8(e)- All Defendants)

Plaintiff repeats and realleges each and every allegation contained herein

The actions and practices of Defendants violated Plaintiffs rights under the California Civil

Code 1708.8(b), 1708.8(d) & 1708.8(e).California Civil Code 1708.8(b) states:

> "A person is liable for constructive invasion of privacy when the defendant attempts
> to capture, in a manner that is offensive to a reasonable person, any type of visual
> image, sound recording, or other physical impression of the plaintiff engaging in a
> person or familial activity under circumstances in which the plaintiff had a
> reasonable expectation of privacy, through the use of a visual or auditory enhancing
> device, regardless of whether there is a physical trespass, if this image, sound
> recording, or other physical impression could not have been achieved without a
> trespass unless the visual or auditory enhancing device was used."

California Civil Code 1708.8(e) states:

> 'A person who direct, solicits, actually induces, or actually causes another person,
> regardless of whether there is an employer-employee relationship, to violate any
> provision of subdivision (a) ; (b); or (c) is liable for any general, special, and
> consequential damages resulting from each said violation...

Defendants constructively invaded Plaintiff's privacy when they and/or their agents,

employees, or representatives, directed, induced, caused, or employed others to attempt or

themselves attempted to capture a sound recording, in a manner that was offensive to a

reasonable person. The sound recording that Defendant captured or attempted to capture

involved matters related to Plaintiffs personal and/or familial activity and otherwise could

not have been captured without trespass. In doing so, Defendants and/or their agents,

employees, or representatives violated California Civil Code 1708.8(b) and 1708.8(e).

73

Defendants invaded Plaintiff's privacy for a commercial purpose, with the intention of selling, publishing, or otherwise transmitting these records for financial gain or other consideration. As a result of Defendants' actions alleged here, Plaintiff was caused irreparable harm in his personal and professional life.

By reason of the foregoing, pursuant to California Civil Code 1708.8(d) Plaintiff is entitled to up to three times his general and specific damages, as well as punitive damages, as a result of the violations of 1708.8(b). Under California Civil Code 1708.8(d), Defendants are also subject to disgorgement upon a demonstration that Defendants committed the invitation of privacy "for a commercial purpose." Because Defendants committed the invasion of privacy primarily for commercial purposes, including publishing articles in the publications The Sun and News Of The World, Defendants are subject to disgorgement of "any proceeds or other consideration obtained as a result of [these violations' ."Pursuant to 28 U.S.C. 1367, this Court has pendent or supplemental jurisdiction to hear and adjusdicate such claims.

"SIXTH CLAIM FOR RELIEF (Intrusion Into Private Affairs – California Common Law-All Defendants)"

Plaintiff repeats and realleges each and every allegation contained herein

"93.While Plaintiff was living, traveling thru, and visiting Los Angeles in 2004 to 2005, he had a reasonable expectation of privacy concerning his voice-mail messages on his cellular telephone system. However, Defendants intercepted, interfered with, accessed and hacked his voice-mail messages on his cellular telephone system. In so doing, Defendants surreptitiously intruded upon Plaintiff's private affairs, concerns and communications."

74

.     "94. Defendants' actions and conduct in intentionally and willfully intercepting, interfering with, intruding upon, accessing and hacking Plaintiff's voice-mails on his cellular telephone system even though Plaintiff had clearly never authorized Defendants to do so, was highly offensive and highly objectionable to Plaintiff and to a reasonable person of ordinary sensibilities."

Defendants acted with reckless disregard of Plaintiff's privacy rights and for the fact that a reasonable person of ordinary sensibilities would find such invasion and intrusion highly offensive. Defendants had actual knowledge of, participated in, directed and/or approve of, and benefited from this practice. Defendants' actions were highly offensive because the degree of intrusion into Plaintiff's personal and professional life was significant, the context, conduct and circumstances surrounding the intrusion revealed a complete disregard of Plaintiff's privacy rights, and the Defendant's motives and objectives were for financial profit at Plaintiff's expense.

"97. Defendants' intercepting, interfering with, intruding upon, accessing and hacking Plaintiff's voicemails on his cellular telephone was malicious and served no legitimate public interest."  The facts publicly disclosed and published by Defendant s were private and confidential matters- involving Plaintiff, and Plaintiff's close friends and business associates - which were offensive and objectionable to a reasonable person and not of legitimate public concern, and which Plaintiff was entitled to keep private and confidential .

Defendants were motivated for financial profit and gain and to exploit Plaintiff's private and confidential information for their own ends without regard to Plaintiff's privacy

75

rights.As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered

emotional distress, an invasion of his rights of privacy and other incidental and

consequential damages Plaintiff was harmed and Defendants' conduct was a substantial

factor in causing such harm.

By reason of the foregoing, Plaintiff is entitled to actual damages in an amount to be

determined by the Court. By reason of Defendants' actions, which constituted outrageous

conduct, were reckless, showed a callous indifference to, and willful disregard, of

Plaintiff's rights of privacy, and were contrary to the public policy of the State of

California, Plaintiff is also entitled to punitive damages in an amount to be determined by

the Court.Pursuant to 28 U.S.C. 1367, this Court has pendent or supplemental jurisdiction

to hear and adjudicate such claims.

SEVENTH CLAIM FOR RELIEF

(Violation of 17200 2006 Consent Decree with California State Attorney, after consent by
News Corporation Director Perkins was required after its December 7, 2006 filing and
being entered into– All Defendants-)

PRAYER FOR RELIEF

On the First Claim for Relief:

An award of the maximum statutory actual damages, including profits made by

Defendants, pursuant to 18 U.S.C. 2707;Punitive damages, pursuant to 18 U.S.C.

2707(b)(3);Reasonable attorney's fees and costs, pursuant to 18 U.S.C. 2707(b)(3)l and

Such other and further relief as the Court may deem just, proper and equitable.

On the Second Claim for Relief.

The greater of actual damages and any profits made by Defendants by their violations of

18 U.S.C. 2520 and 2511, or statutory damages, pursuant to 18 U.S.C. 2520. Punitive

damages, pursuant to 18 U.S.C. 2520

Reasonable attorneys' fees and costs, pursuant to 18 U.S.C. 2520

Such other and further relief as the Court may deem just, proper and equitable.

On the Third Claim for Relief

General and specific damages, in an amount to be determined by the Court; and

The greater of statutory damages, pursuant to 637(2)(a)(1) or three times the actual

damages Plaintiff suffered for each instance in which Defendants violated 631 and 632 of

the California Penal Code, pursuant to 637(2)(a)(2)l and Such other and further relief as

the Court may deem just, proper and equitable.

On the Fourth Claim for Relief

An award of three times Plaintiff's general and specific damages

On the Fifth Claim for Relief.

An award of three times Plaintiff's general and specific damages, pursuant to 1708.8(d) of

the California Civil Code;

Disgorgement of any proceeds or other consideration obtained by Defendants as a result of

their violations of Plaintiff's rights under 1708.8(d) of the California Civil Code;

Punitive damages by reason of Defendants' violations of Plaintiff's rights under 1708.8(d)

of the California Civil Code; and Such other and further relief as the Court may deem just,

proper and equitable.

On the Sixth Claim for Relief:

1. Actual damages in an amount to be determined by the court;

2. Punitive Damages in an amount to be determined by the Court; and

3. Such other and further relief as the Court may deem just, proper and equitable."

Plaintiff demands trial by jury

On the Seventh Claim for Relief

An award of three times Plaintiff's general and specific damages"

EXHIBIT #5 – Proposed Order granting specific performance for 1© right to receive prior to incurring expenses based on estimates of Plaintiff and guaranteed no higher then Defendant's 5 year costs for each legal service providor.

1(c) The term "Expenses" shall mean, without limitation,

| | | |
|---|---|---|
| i. | " retainers, " | $100,000 |
| ii. | accounting - | $5,000,000 ($1,000,000 per year) |
| iii. | "and witness fees" - | $1,000,000 ($200,000 per year) |

expenses related to the preparation or service as a witness,

iv.     "travel"                    $1,500,000 ($300,000 per year)

v.      "and deposition costs,"  $1,000,000 ($200,000 per year)

vi.     "expenses of investigations,"  $1,000,000 ($200,000 per year)

vii.    "costs of attachment or similar bonds, " - $5,000,000

viii.   "any expenses of attempting to establish or establishing a right to indemnification or advancement of expenses, under this Agreement, the Company's Certificate of Incorporation or Bylaws, applicable law or otherwise, "          (To be Determined at Oral Hearing)

ix.     "and reasonable compensation for time spent by the Indemnitee in connection with the investigation, defense or appeal of a Proceeding or action for indemnification for which the Indemnitee is not otherwise compensated by the Company or any third party."[34]  (final accounting approved at Oral Hearing)

Sub-Total:          $8,600,000 in non legal fees over 5 year term of duration per 1 lawyer unit over that same time

---

[34] ( -pro rata for period of time per year in terms of days that Plaintiff was not compensated by the Company or any third party since the early of the first of: i)  Undertaking received by Indemnifying party or ii) notification of a legal claim received by Indeminfying party. ) (Same unit rate billed to News Corp by outsourced legal providor via  September 29, 2014 8k 26,)

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRAD D. GREENSPAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9567-VCG |
| | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| CORPORATION, NEWS AMERICA | ) | |
| CORPORATION, WASHINGTON POST | ) | |
| CORPORATION, SONY CORPORATION, | ) | |
| SONY CORPORATION AMERICA, SONY | ) | |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) | |
| MEDIA VENTURES, INC., SONY BROADBAND | ) | |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) | |
| NEWS CORPORATION, 21st CENTURY FOX | ) | |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) | |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) | |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) | |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) | |
| INC., JP MORGAN CHASE CORPORATION, | ) | |
| REDPOINT PARTNERS CORPORATION and | ) | |
| ARENT FOX LAW LLC INC., | ) | |
| | ) | |
| Defendants, | ) | |

## MOTION FOR DEFAULT JUDGMENT

## I - INTRODUCTION

1.     Petitioner seeks Court's entry of a default judgment under Rule 55(b) after amending the names of five defendants thru Rule 15 ( c ) that have not answered the verified complaint but have received notice of the proceeding and knew but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

## II - STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

2.     Defendants were served with the verified Complaint between May 1, 2014 and September 23, 2014 thru the Sheriff of New Castle County.

3.     On or around October 6, 2014, Defendant Sony Corp made its appearance in Case No. #9567 thru Delaware law firm Morris, Nichols, Arsht &

1

4.  On or around October 15, 2014, Defendant Sony Corp retained verified complaint Case No. 9567 co-defendant Orrick Law to defend Sony in Federal antitrust class action Case 5:14-cv-04062 'In re Nitsche' brought by employees of such defendants in Northern District of San Jose CA for unlawful fraudulently concealed "no employee poach" agreements and continuing violations of Sherman Act 1.

iii.  Orrick Law since September 2014 has served as Sony Corp's[1] attorney in the Northern District, San Jose, California (see Exhibit #   ).

iv.  Sony Corp, Orrick's client, is aware of Case No. #9567 as a defendant that has appeared.

v.  News Corp[2] is a co-defendant with Sony Corp in the same case in the Northern District.

## III – LEGAL ARGUMENT AND STANDARD OF REVIEW

5.  This Motion seeks entry of a final judgment for the matters, claims, and causes of action set out in the verified complaint for Case No. 9567 by way of Rule 55(b) Default Judgment which states:

> " (b) Judgment. -- When a party against whom a judgment for affirmative relief is sought, has failed to appear, plead or otherwise defend as provided by these Rules, and that fact is made to appear, judgment by default may be entered as follows: The party entitled to a judgment by default shall apply to the Court therefor; "

6.  Plaintiff's position is that default judgment under 55(b) may be entered on certain parties A) as the complaint was pled because:

---

[1]

[2] For purposes herein, "News Corp" shall mean: i) "News Corporation", ii) "21st Century Fox Inc.", iii) "Twenty-First Century Fox Inc.", iv) "21st Century Fox", v) "News America Corporation" vi) "21st Century Fox America", viii) "News Corporation, NI Group Limited f/k/a News International Limited, News Group Newspapers Limited" ix) "Remainco", x)  "New Newscorp Inc" xi) "New News Corporation", xii) "NewCorp Holdings UK & Ireland",  xiii)  "NCH",xiv) "Blue Sky Studios, Inc."

i)   the parties were served with summons by the end of October 2014 and have "failed to appear, plead or otherwise defend" or

ii)   received notification of the institution of Case No. #9567 and have "failed to appear, plead or otherwise defend" or

iii) the parties were served with summons by the end of October 2014 and have "failed to appear, plead or otherwise defend" and the parties received notification of the institution of Case No. #9567 and "failed to appear, plead or otherwise defend" or B) as the complaint was pled subject to minor amendment under Rule 15 ( c ) because the requirements under 15( c ) (3)(A) and 15( c ) (3)(B) have been met to allow amendment to make minor changes to the names of such parties mistakenly entered in the verified complaint. to:

**<u>Defaultee #1</u>**:

"15. Orrick Herrington Law LLC, a California LLC" (p3 verified complaint)

i. Amended identity:   "Orrick, Herrington & Sutcliffe LLP[3]"

ii.  Served with summons:  September 8, 2014[4]

_____

[3] For purposes herein "Orrick Law"

[4] Case No. 9567 Docket Entry #21 & #65: "09/08/2014    Summonses issued to Sheriff of New Castle County for service through The Corporation Trust Company on the following: Orrick Herrington Law, LLC, RGRD Law, LLC, Vantagepoint Venture Partners, Redpoint Partners, eUniverse, Inc., MySpace, Inc., Warner Music Company, JP Morgan Chase Company, Washington Post Company, and AskJeeves, Inc. Original and 10 copies sent to Sheriff of NCC on September 8, 2014." And

    "65    10/07/2014  Sheriff Return of New Castle County for service through The Corporation Trust Company on the following: Orrick Herrington Law, LLC, RGRD Law, LLC, Vantagepoint Venture Partners, Redpoint Partners, eUniverse, Inc., MySpace, Inc., Warner Music Company, JP Morgan Chase Company, Washington Post Company, and AskJeeves, Inc"

3

iii. Received Notification (including under 15 ( c ) ):

    a) Notification #1:
Date: June 18, 2015
Evidence: Exhibit #1

    On June 18, 2015, at time Defaultee #1 filed pleading in Federal Court Northern

District of California Federal antitrust class action titled IN RE ANIMATION

WORKERS ANTITRUST LITIGATION Case 5:14-cv-04062-LHK on behalf of Sony

Corp[5], non-Defaultee and Co-Defendant in Court of Chancery Case No. 9567.

    b)    Notification #2:
Date: July 31, 2015
Evidence: Exhibit #2

    On July 31, 2015, Defaultee #1 filed pleading in Superior Court for the State of

California County of Los Angeles. Defaultee #1 cited Case No. 9567, claimed to have

reviewed such Case No.'s  claims, cited the name of Case No., and fact it was assigned

to "VCG".[6]

    c) Notification #3:
    Date: Unknown day but predating date of Notification #2

---

[5] For purposes herein, "Sony Corp" shall mean: i) Sony Corporation, incorporated in Japan ii) Sony Corporation America, a Delaware corporation iii)  Sony Music Entertainment Inc., a Delaware Corporation iv) 550 Digital Media Ventures, Inc. ("550 DMV"), a Delaware Corporation v)  Sony Broadband Entertainment, Inc., vi) Sony Entertainment Inc.,vii)  Sony Music Holdings Inc., vii) Sony Pictures Animation Inc. viii) Sony Pictures Imageworks Inc.

[6] Orrick Law filed pleading as "Attorneys for Defendants VantagePoint Venture Associates IV, L.L.C " in California State Superior Court, Case No. ES019019 titled "Defendants VantagePoint Venture Associates IV, L.L.C. And VP Alpha Holdings IV, L.L.C. Response In Opposition To Petition To Compel Arbitration And Request For Stay of Proceedings" stating:

"Greenspan's claims in this action echo those he's made in the past, most recently in the Northern District of California and the Delaware Court of Chancery"

and explicitly naming the verified complaint's title and case no as Footnote #2:

"2 Greenspan v. News Corp, et al C.A. No 9567 VCG (Del Ch)"

4

Date prior to July 31, 2015, when Defaultee #1 was engaged as attorney to make July 31, 2015 court filing.

   d)  Notification #4:
Date: July 31, 2015

After Defaultee #1 was engaged as attorney to make the July 31, 2015 court filing and during which Defaultee #1 reviewed Case No. 9567 verified complaint, and drafted, transmitted such draft July 31,2015 pleading for client's review which containted three citations to Case No. 9567, and revised such draft pleading as required prior to filing.

e)Notification #5:
Date: August 20, 2015
Evidence: Exhibit #3

Orrick Law files Answer to Plaintiff's California Superior Court complaint on August 20, 2015, demonstrating awareness of the Delaware Court matter while claiming as a defense that California is improper venue while opting to knowingly avoid appearing in Delaware Court of Chancery Matter:

> "SIXTEENTH AFFIRMATIVE DEFENSE- Jurisdiction/Venue
> The Court lacks jurisdiction to enter a judgment as to certain of the causes of action in this case. The Court is an improper venue for certain of Plaintiff's causes of action."

f) Notification #6
Date: November 17, 2015
Evidence: Exhibit #4

   More then 90 days later, on November 17, 2015, both Orrick Law and Defaultee #2 in the same Court filed a Case Management Statement again citing explicit knowledge of Case #9567 and its claims:

> "Greenspan's claims in this action echo those he's made in the past, most recently in …… the Delaware Court of Chancery (Greenspan v. News Corp., et al., C.A. No. 9567-VCG)."

AskJeeves Inc, a Delaware corporation (IAC Corp acquired in 2005

**Default #2:** "14. VantagePoint Venture Partners, a California LLC" (ibid)

i. Amended identity:   "VantagePoint Venture Associates IV, L.L.C"

ii. Served with summons: September 8, 2014[7]

iii. Received Notification (including under 15 ( c ) ):

Notification #2:
Date: July 31, 2015
Evidence: Exhibit #2

    1. On July 31, 2015, Defaultee #2 filed pleading in Superior Court for the State of California County of Los Angeles.

    2. Defaultee #2 cited Case No. 9567, claimed to have reviewed such Case No.'s claims, cited the name of Case No., and fact it was assigned to "VCG".[8]

---

[7] Case No. 9567 Docket Entry #21 & #65: "09/08/2014   Summonses issued to Sheriff of New Castle County for service through The Corporation Trust Company on the following: Orrick Herrington Law, LLC, RGRD Law, LLC, Vantagepoint Venture Partners, Redpoint Partners, eUniverse, Inc., MySpace, Inc., Warner Music Company, JP Morgan Chase Company, Washington Post Company, and AskJeeves, Inc. Original and 10 copies sent to Sheriff of NCC on September 8, 2014." And

"65   10/07/2014   Sheriff Return of New Castle County for service through The Corporation Trust Company on the following: Orrick Herrington Law, LLC, RGRD Law, LLC, Vantagepoint Venture Partners, Redpoint Partners, eUniverse, Inc., MySpace, Inc., Warner Music Company, JP Morgan Chase Company, Washington Post Company, and AskJeeves, Inc"

[8] Orrick Law filed pleading as "Attorneys for Defendants VantagePoint Venture Associates IV, L.L.C " in California State Superior Court, Case No. ES019019 titled "Defendants VantagePoint Venture Associates IV, L.L.C. And VP Alpha Holdings IV, L.L.C. Response In Opposition To Petition To Compel Arbitration And Request For Stay of Proceedings" stating:

"Greenspan's claims in this action echo those he's made in the past, most recently in the Northern District of California and the Delaware Court of Chancery"

and explicitly naming the verified complaint's title and case no as Footnote #2:

"2 Greenspan v. News Corp, et al C.A. No 9567 VCG (Del Ch)"

6

c) Notification #3:
Date: Unknown day but predating date of Notification #2

Date prior to July 31, 2015, when Defaultee #2 engaged attorney to make July 31,

2015 court filing.

d) Notification #4:
Date: August 20, 2015
Evidence: Exhibit #3

Defaultee #2 files Answer to Plaintiff's California Superior Court complaint on August

20, 2015, demonstrating awareness of the Delaware Court matter while claiming as a

defense that California is improper venue while opting to knowingly avoid appearing in

Delaware Court of Chancery Matter:

> "SIXTEENTH AFFIRMATIVE DEFENSE- Jurisdiction/Venue
> The Court lacks jurisdiction to enter a judgment as to certain of the causes of
> action in this case. The Court is an improper venue for certain of Plaintiff's
> causes of action."

f) Notification #5
Date: November 17, 2015
Evidence: Exhibit #4

More then 90 days later, on November 17, 2015, VPV in the same Court filed a

Case Management Statement again citing explicit knowledge of Case #9567:

> "Greenspan's claims in this action echo those he's made in the past, most
> recently in …… the Delaware Court of Chancery (Greenspan v. News Corp., et
> al., C.A. No. 9567-VCG)."

## **Default #3**

 "19. IAC Corporation"

i. Amended identity: "IAC/Interactive Corp[9]"

ii. Served with summons: : September 8, 2014[10]

---

[9] For purposes Herein "IAC"
[10] Case No. 9567 Docket Entry #21 & #65: "09/08/2014   Summonses issued to Sheriff

iii. Additional Notifications:

Notification #2:
Date: 2/02/2015
Evidence: Exhibit #5

Defaultee #3 filed pleading in Federal Court Northern District of California on

2/02/2015. Defaultee #3 claims specific knowledge of Case No. 9567:

> "Greenspan filed a new complaint in April 2014 in the Delaware Court of Chancery against numerous defendants, including News Corp., IAC,"

and  "Greenspan's convoluted Delaware complaint takes a scattershot approach"

Notification #3:
Date: 10/02/2015

Defaultee #3 reviewed Plaintiff's Reply to Bill of Costs by Defaultee #3 that Defaultee

filed and mailed by US Postal service to Defaultee #3, which referenced the Delaware

Court of Chancery Case No. 9567. Defaultee #3 is claiming and requesting the Federal

Court force Plaintiff to pay in order for Federal Class of shareholders Rule 60(b) relief

be granted reinstating antitrust class action

against Defaultee #3, Defaultee #4, Defaultee #1, and Defaultee #2, and Defaultee #5.

## **Default #4:**

"5. News America Corporation"

---

of New Castle County for service through The Corporation Trust Company on the following: Orrick Herrington Law, LLC, RGRD Law, LLC, Vantagepoint Venture Partners, Redpoint Partners, eUniverse, Inc., MySpace, Inc., Warner Music Company, JP Morgan Chase Company, Washington Post Company, and AskJeeves, Inc. Original and 10 copies sent to Sheriff of NCC on September 8, 2014." And

"65    10/07/2014  Sheriff Return of New Castle County for service through The Corporation Trust Company on the following: Orrick Herrington Law, LLC, RGRD Law, LLC, Vantagepoint Venture Partners, Redpoint Partners, eUniverse, Inc., MySpace, Inc., Warner Music Company, JP Morgan Chase Company, Washington Post Company, and AskJeeves, Inc"

i. Amended identity:   "News Corporation, NI Group Limited, and News Group Newspapers Limited (collectively "Defendants")"

ii.  Served with summons:  5/08/2015 Docket #13

"Summonses issued to Sheriff of New Castle County for service on New Corporation and 21st Century Fox  Corporation. Original and two copies sent by mail from RIC office to Sheriff of NCC on May 8, 2014"

iii.Recieved notifications:

Notification #2:
Date:  5/19/2014
Evidence: See Motion For Preliminary Injunction & TRO

Defaultee #4 was notified about DE Court of Chancery Case No. 9567 when Defendants

attorney in May 19, 2014 pleading filed in Federal Court Central District of California

Case. Defaultee #4 lawyers Alston & Bird LLC and Williams & Connolly Law state:

> "We represent Defendants News Corporation, NI Group Limited, and News Group Newspapers Limited (collectively "Defendants") in the above-referenced matter. We are writing to advise that Defendants will be filing an ex parte application on Monday, May 19, 2014, seeking a continuance of the June 30, 2014 hearing presently set for the motion to intervene."

Notification #3:
Date: 6/05/2014

Defaultee #4 was notified about Case No. 9567 on or around June 5, 2014 when affiliate

Filed pleading Docket #15: "21st Century Fox Corporation's Motion to Dismiss".

Notification #4:
Date: 6/05/2014

Defaultee #4 was notified about Case No. 9567 on or around June 5, 2014 when affiliate

Filed pleading Docket #16: "News Corporation's Motion to Dismiss"

**Default #5:**
"4. 21st Century Fox Corporation, a Delaware Corporation"

9

i. Amended identity:  Twenty-First Century Fox, Inc.

ii. Served with summons: : May 8, 2014

iii. Additional Notifications:

Notification #2:
Date: 6/05/2014

Defaultee #5 was notified about Case No. 9567 on or around June 5, 2014 when its

Lawyer filed pleading Docket #15: "21st Century Fox Corporation's Motion to Dismiss".

Notification #3:
Date: 9/11/2014

Defaultee #5 Lawyer filed letter pleading to Master and identified client demanded

expedited scheduling conference.

Notification #4:
Date:  9/23/2014

Defaultee #5 Lawyer filed additional letter pleading to Master and identified client

demanded expedited scheduling conference.

## IV  - CONCLUSION

Petitioner respectfully requests this Court grant the relief requested that's

available and due Plaintiff for making this request in good faith, and grant

Defaults on these 5 Defaultees.

DATED: December 11, 2015

Respectfully submitted,


/s/ Brad D. Greenspan
Brad D. Greenspan
Signature for Pro Se
2995 Woodside Rd.
Suite 400
Woodside, CA 94062
Ph: 408-599-3340 ext: 454

10

EXHIBIT #1

| | |
|---|---|
| 1 | EMILY JOHNSON HENN (SBN 269482) | DANIEL G. SWANSON (SBN 116556) |

1  EMILY JOHNSON HENN (SBN 269482)          DANIEL G. SWANSON (SBN 116556)
2  COVINGTON & BURLING LLP                  ROD J. STONE (SBN 145405)
   333 Twin Dolphin Drive, Suite 700        GIBSON, DUNN & CRUTCHER LLP
3  Redwood Shores, CA 94061                 333 South Grand Avenue
   Telephone: 650-632-4700                  Los Angeles, CA 90071-3197
4  Facsimile: 650-632-4800                  Telephone: 213-229-7256
   Email: ehenn@cov.com                     Facsimile: 213-229-6256
5                                           Email: rstone@gibsondunn.com
   Attorneys for Defendants
6  The Walt Disney Company, Lucasfilm Ltd., Attorneys for Defendant
   LLC, Pixar, and Two Pic MC LLC           DreamWorks Animation SKG, Inc.
7  STEPHEN V. BOMSE (SBN 40686)             JOHN E. SCHMIDTLEIN (SBN 163520)
8  DAVID M. GOLDSTEIN (SBN 142334)          JONATHAN B. PITT (pro hac vice)
   ORRICK, HERRINGTON & SUTCLIFFE LLP       WILLIAMS & CONNOLLY LLP
9  405 Howard Street                        725 Twelfth Street, N.W.
   San Francisco, CA 94105-2669             Washington, D.C. 20005
10 Telephone: 415-773-4145                  Telephone: 202-434-5901
   Facsimile: 415-773-5759                  Facsimile: 202-434-5029
11 Email: sbomse@orrick.com                 Email: jschmidtlein@wc.com

12 Attorneys for Defendants                 Attorneys for Defendant
   Sony Pictures Animation Inc.             Blue Sky Studios, Inc.
13 Sony Pictures Imageworks Inc.

14 Additional counsel listed on signature page

15                UNITED STATES DISTRICT COURT

16           FOR THE NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

19 IN RE ANIMATION WORKERS             Master Docket No. 14-cv-4062-LHK
20 ANTITRUST LITIGATION
                                       DEFENDANTS' REPLY IN SUPPORT
21                                     OF MOTION TO DISMISS THE
                                       SECOND CONSOLIDATED
22 THIS DOCUMENT RELATES TO:           AMENDED COMPLAINT

23 ALL ACTIONS                         Date:        September 17, 2015
                                       Time:        1:30 p.m.
24                                     Courtroom:   8
                                       Judge:       Hon. Lucy H. Koh
25

26

27

28

DEFS.' REPLY ISO MOT. TO DISMISS THE SAC
Master Docket No. 14-cv-4062-LHK

Exhibit #1

11

EXHIBIT #2



ORIGINAL

1  JAMES N. KRAMER (SBN 154709)
   ALEXANDER TALARIDES (SBN 268068)
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
3  405 Howard Street
   San Francisco, CA  94105-2669
4  Telephone:   415-773-5700
   Facsimile:    415-773-5759
5
   Attorneys for Defendants VantagePoint Venture Associates IV,
6  L.L.C. and VP Alpha Holdings IV, L.L.C.

7

8

9                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  IN AND FOR THE COUNTY OF LOS ANGELES

11

12  BRAD D. GREENSPAN,                    CASE NO.  ES019019

13           Plaintiff,                   DEFENDANTS VANTAGEPOINT
                                          VENTURE ASSOCIATES IV, L.L.C.
14       v.                               AND VP ALPHA HOLDINGS IV,
                                          L.L.C. RESPONSE IN OPPOSITION
15  VANTAGEPOINT VENTURE                  TO PETITION TO COMPEL
    ASSOCIATES IV, L.L.C., VP ALPHA       ARBITRATION AND REQUEST FOR
16  HOLDINGS IV, L.L.C., et al.,          STAY OF PROCEEDINGS

17           Defendants.

18

19

20

21

22

23

24

25

26

27

28
                                          CASE NO.  ES019019

RESPONSE IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PROCEEDINGS

FAXED

**FILED**
AUG 11 2015
Superior Court Of California
County Of Los Angeles
JUL 31 2015
Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy

12

1   Pursuant to Code of Civil Procedure ("C.C.P.") sections 1290 and 1290.6, defendants

2   VantagePoint Venture Associates IV, L.L.C. ("VP Venture Associates") and VP Alpha Holdings

3   IV, L.L.C ("VP Alpha Holdings," and together with VP Venture Associates, "VantagePoint"),

4   hereby respond in opposition to Plaintiff Brad D. Greenspan's ("Greenspan") Petition to Compel

5   Arbitration and Request for Stay in Proceedings (the "Petition").

6   I.     **INTRODUCTION AND OVERVIEW**

7          This case is another futile attempt by Plaintiff Brad Greenspan to revive a decade-old

8   dispute that he lost long ago.  In late 2003, Greenspan, a former shareholder of eUniverse (later

9   renamed Intermix), was ousted from his position as Chairman and CEO of eUniverse, amidst a

10  battle for control of the company.  Following his removal, Greenspan embarked on a campaign of

11  vexatious litigation that has lasted for over a decade, and involved Greenspan filing or otherwise

12  attempting to participate in multiple lawsuits asserting outlandish conspiracy theories against an

13  ever-increasing group of targets.

14         This is now his sixth lawsuit as part of his decade-long quest to sue seemingly every

15  person and entity associated with eUniverse.  Greenspan's claims in this action echo those he's

16  made in the past, most recently in the Northern District of California[1] and the Delaware Court of

17  Chancery.[2]  The complaint's allegations are sprawling, disorganized, and difficult to decipher,

18  and, at times, incomprehensible.  However, as in his other related lawsuits, Greenspan appears to

19  take issue with the circumstances surrounding his ouster from eUniverse in 2003-2004, as well as

20  subsequent events at the company -- which was renamed Intermix in 2004 -- including dealings

21  concerning its MySpace property and Intermix's 2005 sale to News Corp.  Greenspan also alleges

22  a vast antitrust conspiracy among IAC, Google, News Corp., and others, designed to depress

23  employee wages and to diminish the value of MySpace, among other conspiracy theories.

24         Having had no luck convincing the courts that his conspiracy theories have any merit,

25  Greenspan now wants a panel of five arbitrators to consider them.  His Petition to Compel

26  Arbitration asks the Court to compel VP Venture Associates and VP Alpha Holdings to

27  _____

28  [1] *Greenspan v. IAC/Interactive Corp., et al.*, Case No. 14-cv-04187-RMW (N.D. Cal.).
    [2] *Greenspan v. News Corp., et al.*, C.A. No. 9567-VCG (Del. Ch.)

MOTION FOR DEFAULT JUDGEMENT



ORIGINAL

FILED
Superior Court Of California
County of Los Angeles

AUG 20 2015

_____ Depu...

1    JAMES N. KRAMER (SBN 154709)
     ALEXANDER TALARIDES (SBN 268068)
2    ORRICK, HERRINGTON & SUTCLIFFE LLP
     The Orrick Building
3    405 Howard Street
     San Francisco, CA 94105-2669
4    Telephone:   415-773-5700
     Facsimile:   415-773-5759
5
     Attorneys for VantagePoint Defendants
6

7

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                IN AND FOR THE COUNTY OF LOS ANGELES

11                                              EC064259

12   BRAD D. GREENSPAN,                CASE NO. ES019019

13            Plaintiff,               VANTAGEPOINT DEFENDANTS'
                                       ANSWER TO UNVERIFIED
14        v.                           COMPLAINT

15   VANTAGEPOINT VENTURE
     ASSOCIATES IV, L.L.C., et al.,
16
              Defendants.
17

18

19

20

21

22

23

24

25

26

27

28
                                                  CASE NO. ES019019

            VANTAGEPOINT DEFENDANTS' ANSWER TO UNVERIFIED COMPLAINT

FAXED

14

MOTION FOR DEFAULT JUDGEMENT

1   Defendants VantagePoint Venture Associates IV, L.L.C., VP Alpha Holdings IV, L.L.C.,

2   VantagePoint Capital Partners, VantagePoint Venture Partners IV Principals Fund, L.P.,

3   VantagePoint Venture Partners IV (Q), L.P., VantagePoint Venture Partners III (Q), L.P.,

4   VantagePoint Venture Partners III, L.L.C., VantagePoint Venture Partners III, L.P., VantagePoint

5   Venture Partners IV, L.P., VantagePoint Venture Partners IV Partners Principals Fund, L.P.,

6   VantagePoint Venture Associates III, L.L.C., Alan E. Salzman, James D. Marver, and Richard

7   Harroch (collectively, the "VantagePoint Defendants" or "VantagePoint"), hereby conditionally

8   submit this answer, with affirmative defenses, to Plaintiff Brad D. Greenspan's unverified

9   complaint (the "Complaint").

10      The VantagePoint Defendants do not believe they are obligated, at this time, to respond to

11   the Complaint.  This is because Plaintiff (1) has styled his Complaint as both a Complaint and a

12   Petition to Compel Arbitration, (2) has petitioned the Court to compel certain VantagePoint

13   Defendants to arbitration, (3) has moved the Court to stay this action in its entirety pending the

14   completion of arbitration, and (4) pursuant to California Civil Procedure Code ("C.C.P.") §

15   1281.4, "[i]f an application has been made to a court of competent jurisdiction . . . for an order to

16   arbitrate a controversy which is an issue involved in an action or proceeding pending before a

17   court of this State and such application is undetermined, the court in which such action or

18   proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action

19   or proceeding until the application for an order to arbitrate is determined."  However, because no

20   order staying this action has been entered, out of an abundance of caution, the VantagePoint

21   submit this answer, with affirmative defenses, to the Complaint, without waiver of their right to

22   demur to the Complaint, on a date set by the Court, should the Court determine that, pursuant to

23   C.C.P. § 1281.4, all deadlines in this action, including deadlines to respond to the Complaint,

24   were stayed.

25      In addition, because the Complaint names as defendants certain individuals that

26   VantagePoint may owe indemnity obligations and who may also be considered "VantagePoint

27   Defendants," and because it is unclear whether these individuals have been served with the

28   summons and Complaint, in order to protect their interests and preserve their rights, the

- 1 -

CASE NO. ES019019

VANTAGEPOINT DEFENDANTS' ANSWER TO UNVERIFIED COMPLAINT

MO1

1  VantagePoint Defendants hereby submit this answer, with affirmative defenses, to the Complaint,

2  on their behalf as well.

### I.  ANSWER TO UNVERIFIED COMPLAINT

4       Pursuant to C.C.P. § 431.30, the VantagePoint Defendants generally deny each and every

5  material allegation of the Complaint and further deny that Plaintiff has been damaged in the

6  manner or amount alleged or in any manner or amount.

### II.  AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE -- Demurrer

9       The Complaint does not state facts sufficient to allege a cognizable cause of action against

10 the VantagePoint Defendants.  Plaintiff fails to plead multiple elements of the alleged causes of

11 action against the VantagePoint Defendants.

### SECOND AFFIRMATIVE DEFENSE – Estoppel, Waiver, Unclean Hands

13      Plaintiff is estopped to assert any right to relief because of his tortious conduct, his

14 waivers, his unconscionable conduct, and his unclean hands, including his own fraudulent acts

15 and self-dealing.

### THIRD AFFIRMATIVE DEFENSE – Breach of Contract

17      Plaintiff has breached his contracts with the VantagePoint Defendants (and others) and, by

18 reason of such breaches of contract, the VantagePoint Defendants were excused from any alleged

19 breach of a duty following Plaintiff's breaches.

### FOURTH AFFIRMATIVE DEFENSE – in pari delicto

21      All of Plaintiff's causes of action against the VantagePoint Defendants are barred because

22 Plaintiff engaged in acts and courses of conduct which render him in pari delicto.

### FIFTH AFFIRMATIVE DEFENSE – Full Performance

24      The VantagePoint Defendant's full performance of any alleged agreements fulfilled all of

25 their duties and obligations to Plaintiff.  Plaintiff accepted this performance, and no other duty or

26 obligation to remains.

### SIXTH AFFIRMATIVE DEFENSE – Failure to Mitigate

28      Plaintiff failed and neglected to mitigate his damages, if any, and failed to reduce harm.

- 2 -                                    CASE NO. ES019019

1

**SEVENTH AFFIRMATIVE DEFENSE – Causation**

2      To the extent Plaintiff suffered any harm, the VantagePoint Defendants were not the

3  proximate cause of such harm.  Plaintiff himself was the cause of the harm he is alleging.

4

**EIGHTH AFFIRMATIVE DEFENSE – Willful Misconduct**

5      Plaintiff is guilty of willful misconduct and proximately contributed to the occurrence of

6  the events complained of in its Complaint.

7

**NINTH AFFIRMATIVE DEFENSE – Set Off**

8      Plaintiff's claims are subject to set-off based on his own acts and wrongdoing.

9

**TENTH AFFIRMATIVE DEFENSE – Acts of Others**

10      Plaintiff complains about harm suffered by the acts and conduct of third parties that the

11  VantagePoint Defendants do not control.

12

**ELEVENTH AFFIRMATIVE DEFENSE – Good Faith**

13      The VantagePoint Defendants' acts alleged in the Complaint were all performed in good

14  faith, with proper motive, without any unlawful intent, or with the lawful intent of carrying out

15  the instructions of others.

16

**TWELFTH AFFIRMATIVE DEFENSE – Lack of Standing/Capacity**

17      The VantagePoint Defendants' acts alleged in the Complaint were all performed in their

18  capacity as corporate representatives of entities whom Plaintiff alleges committed the underlying

19  breaches or wrongful acts.  Accordingly, the VantagePoint Defendants are not proper defendants

20  and Plaintiff lacks standing, derivative or otherwise, to sue the VantagePoint Defendants.  In

21  addition, Plaintiff was not a party to the various contracts alleged in the Complaint and, to the

22  extent he was not, Plaintiff lacks standing to assert causes of actions arising out of such contracts.

23  Furthermore, the causes of action alleged in the Complaint do not belong to Plaintiff, but to

24  corporate entities, and the injuries alleged in the Complaint were suffered directly by those

25  corporate entities, not Plaintiff.  Accordingly, Plaintiff lacks standing to assert the causes of

26  action alleged in the Complaint.

27

**THIRTEENTH AFFIRMATIVE DEFENSE – Lack of Injury or Damage**

28      Plaintiff fails to allege cognizable grounds for recovering any cognizable damages or for

- 3 -

MOTION

1  obtaining any injunctive or non-monetary relief, including punitive damages.

2  FOURTEENTH AFFIRMATIVE DEFENSE – Statute of Limitations/Laches

3  Plaintiff's causes of action are barred by the applicable causes of action, periods of repose,

4  or equitable doctrine of laches.

5  FIFTEENTH AFFIRMATIVE DEFENSE – Collateral Bars

6  Plaintiff's causes of action are barred by prior actions, including settlements and releases

7  arising from prior actions.

8  SIXTEENTH AFFIRMATIVE DEFENSE – Jurisdiction/Venue

9  The Court lacks jurisdiction to enter a judgment as to certain of the causes of action in

10 this case.  The Court is an improper venue for certain of Plaintiff's causes of action.

11 SEVENTEENTH AFFIRMATIVE DEFENSE – Consent/Waiver

12 Plaintiff consented to the acts that they allege give rise to actionable causes of action and

13 otherwise waived his ability to seek a remedy from the VantagePoint Defendants, including by

14 knowingly accepting benefits from them.

15 EIGHTEENTH AFFIRMATIVE DEFENSE – Hindrance of Contract

16 Plaintiff hindered the performance of the alleged contracts and thus cannot recover for

17 alleged damages arising out of breach of such contracts.

18 NINETEENTH AFFIRMATIVE DEFENSE – Failure to Join Necessary or

19 Indispensable Parties

20 Plaintiff has failed to name parties necessary to the adjudication of some or all of the

21 causes of action.

22 PRAYER FOR RELIEF

23 WHEREFORE, based on the foregoing, the VantagePoint Defendants pray for the

24 following relief:

25 1.  Dismissal of all causes of action against them and entry of judgment in favor of the

26 VantagePoint Defendants and against Plaintiff on all causes of action.

27 2.  For attorneys' fees and such other and further relief as the Court deems

28 appropriate.

- 4 -

CASE NO. ES019019

18

EXHIBIT #4

MC-025

| SHORT TITLE: Greenspan v. VantagePoint Venture Associates IV, LLC, et al. | CASE NUMBER: EC064259 |
|---|---|

ATTACHMENT (Number): 8

(This Attachment may be used with any Judicial Council form.)

The trial counsel for defendants VantagePoint Venture Associates IV, LLC and VP Alpha Holdings IV LLC is James N. Kramer, Alex Talarides and Blake L. Osborn of Orrick, Herrington & Sutcliffe LLP, 405 Howard Street, San Francisco, California 94105, Telephone (415) 773-5700, Facsimile (415) 773-5759. Mr. Kramer's email address is jkramer@orrick.com. Mr. Talarides's email address is atalarides@orrick.com. Mr. Osborn's email address is bosborn@orrick.com.

MC-0

| SHORT TITLE: Greenspan v. VantagePoint Venture Associates IV, LLC, et al. | CASE NUMBER: EC064259 |
|---|---|

ATTACHMENT (Number): 4

(This Attachment may be used with any Judicial Council form.)

4.a. Description of the Case

Action for damages and/or injunctive relief for alleged breach of agreement, explicit indemnification, breach of fiduciary duty or duty of loyalty, breach of the implied covenant of good faith and fair dealing, contribution, fraud, conversion, specific performance, unjust enrichment, and tortious interference, and for alleged violations of unfair business practices and the Cartwright Act.

4.b. Brief Statement of the Case

This case is an attempt by Plaintiff Brad Greenspan to revive a decade-old dispute that he lost long ago. In late 2003, Greenspan, a former shareholder of eUniverse (later renamed Intermix), was ousted from his position as Chairman and CEO of eUniverse, amidst a battle for control of the company. Following his removal, Greenspan embarked on a campaign of vexatious litigation that has lasted for over a decade, and involved Greenspan filing or otherwise attempting to participate in multiple lawsuits asserting outlandish conspiracy theories against an ever-increasing group of target

This is now Greenspan's sixth lawsuit as part of his decade-ling quest to sue seemingly every perso and entity associated with eUniverse. Greenspan's claims in this action echo those he's made in th past, most recently in the North District of California (Greenspan v. IAC/Interactive Corp., et al., Cas No. 14-cv-04187-RMW) and the Delaware Court of Chancery (Greenspan v. News Corp., et al., C.A No. 9567-VCG). Similar to his other related lawsuits, Greenspan takes issue with the circumstance surrounding his ouster from eUniverse in 2003-04, as well as subsequent events at the company - which was renamed Intermix in 2004 - including dealings concerning its MySpace property and Intermix's 2005 sale to News Corp. Greenspan also alleges a vast antitrust conspiracy among IAC, Google, News Corp., and others, designed to depress employee wages and to diminish the value o MySpace, among other conspiracy theories that have no merit.

Defendants VantagePoint Venture Associates IV, LLC and VP Alpha Holdings IV, LLC will vigorous defend this case and demur to plaintiff's First Amended Complaint or answer and file a motion for judgment on the pleadings.

1   KURT A. KAPPES (SBN 146384)
     GREENBERG TRAURIG, LLP
2   1201 K Street, Suite 1100
     Sacramento, CA  95814-3938
3   Telephone:  (916) 442-1111
     Facsimile:  (916) 448-1709
4   kappesk@gtlaw.com

5

6   Attorneys for Defendant
     IAC/InterActive Corp

7   Additional Counsel Listed on Signature Page

8

9                **UNITED STATES DISTRICT COURT**

10          **FOR THE NOTHERN DISTRICT OF CALIFORNIA**

11                   **SAN JOSE DIVISION**

12

| | |
|---|---|
| 13  Brad Greenspan, on behalf of himself and all others similarly situated, | ) CASE NO.  5:14-cv-04187-RMW |
| 14 | ) |
| 15       Plaintiff, | ) **DEFENDANT IAC/INTERACTIVE CORP'S** |
|   | ) **MOTION TO DISMISS FOR FAILURE TO** |
| 16  v. | ) **STATE A CLAIM** |
| 17  IAC/InterActive Corp, a Delaware corporation; Google, Inc. a Delaware corporation; News Corp, a Delaware corporation; | ) |
| 18 | ) Date:  March 20, 2015 |
|   | ) Time:  9:00 am |
| 19      Defendants. | ) Place:  Courtroom 6, 4th Floor |
|   | ) Judge:  Honorable Ronald M. Whyte |

20

21

22

23

24

1  Greenspan sought to intervene anew and continued to make his own filings in that action, drawing

2  repeated reprimands from the District Judge, who struck Greenspan's filings from the docket given that

3  he was not a party. *See id.* (Dkt. Nos. 408, 409, 414, 421, 432, 450).

4      More than eight years after he filed his initial lawsuit, Greenspan filed a new complaint in April

5  2014 in the Delaware Court of Chancery against numerous defendants, including News Corp., IAC,

6  various other corporations, law firms, and financial institutions.   Kappes Decl. Ex. 5.   Greenspan's

7  convoluted Delaware complaint takes a scattershot approach and alleges sixteen separate counts,

8  including, *inter alia*, for violations of Delaware's state anti-racketeering statute as well as the "Dodd-

9  Frank whistleblower statute," all related to the theory that the "Defendants launch series [sic] of schemes

10 and frauds to take control of publicly traded MySpace and its parent corporation eUniverse (later

11 renamed Intermix) and oust Founder/CEO Brad Greenspan." *Id.* ¶ 34.   Shortly thereafter, Greenspan

12 also sought to intervene and introduce similar theories into an unrelated litigation in California federal

13 court that involved alleged violations of privacy by News Corp.   Kappes Decl. Ex. 6.   That effort was

14 also denied.  Kappes Decl. Ex. 7.

21

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BRAD D. GREENSPAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 9567-VCG |
| | ) | |
| NEWS CORPORATION, 21ˢᵗ CENTURY FOX | ) | |
| CORPORATION, NEWS AMERICA | ) | |
| CORPORATION, WASHINGTON POST | ) | |
| CORPORATION, SONY CORPORATION, | ) | |
| SONY CORPORATION AMERICA, SONY | ) | |
| MUSIC ENTERTAINMENT, INC., 550 DIGITAL | ) | |
| MEDIA VENTURES, INC., SONY BROADBAND | ) | |
| ENTERTAINMENT, INC., EUNIVERSE, INC. | ) | |
| NEWS CORPORATION, 21ˢᵗ CENTURY FOX | ) | |
| EUNIVERSE, INC., RGRD LAW LLC, NTAGEPOINT | ) | |
| VENTURE PARTNERS, ORRICK HERRINGTON | ) | |
| LAW LLC, EMI MUSIC, WARNER MUSIC GROUP, | ) | |
| IAC CORPORATION, MYSPACE, INC., ASKJEEVES, | ) | |
| INC., JP MORGAN CHASE CORPORATION, | ) | |
| REDPOINT PARTNERS CORPORATION and | ) | |
| ARENT FOX LAW LLC INC., | ) | |
| | ) | |
| Defendants, | ) | |

**MOTION TO COMPEL ARBITRATION**

**I.   INTRODUCTION**

Plaintiff petitions the Court for an order compelling Arbitration and for an order staying all proceedings in this matter pending completion of the Arbitration Demand Notices attached as Exhibit #4 which are concurrently being sent by US Mail to respondents: Kevin Coen, Morris Nichols, Arsht & Tunnell LLP, and Sony Corporation of America.

**II.   STATEMENT OF FACTS**

1.   Petitioner was party or beneficiary of certain attached agreements which are available in public SEC filings for public issuer plaintiff was former shareholder of.

MOTION TO COMPEL ARBITRATION          1

2.   True and correct copies of these agreements are attached filed and served

herewith as Exhibits to the Declaration in support of this Petition and incorporated

herein by reference.

3.     On or about August 2015, a new controversy arose between Petitioner and

one or more defendants that refused to arbitrate despite receiving notice.

4.     These defendants were obligated under agreements to indemnify Plaintiff

for certain legal fees and expenses under certain conditions to also provide

reimbursement upon demand or other conditions. Defendants that received notice

of the arbitration demand under contract, refused to proceed to arbitrate and further,

would not agree to any terms regarding costs of legal services and a violation of

Plaintiff's Cumis lawyer rights under CA law then took place and is a continuing breach

by Defendants against Plaintiff's rights under CA and DE state laws.

A.     BECAUSE PETITIONER HAS PRESENTED PRIMA FACIE EVIDENCE
PROVING EXISTENCE OF AN AGREEMENT TO ARBITRATE IT HAS
MET IT'S BURDEN UNDER THE LAW

5.   Defendant is in default and has breached its agreement as Successor

Corporation or Holder or Contribution party or aiding and abetting such a party

of arbitration covenant Section 6.9 (Exhibit #1) of 1999 Entertainment Universe

agreement Subscription Agreement which the Court may take on judicial notice[1]

---

[1] The following are Incorporated by reference to the Company's Form 10 filed on June 14, 1999
(Registration File No. 0-26355).

"10.06        Agreement and Plan of Reorganization by and among Motorcycle
              Centers of America, Inc., Entertainment Universe, Inc. and the principal
              officers of Entertainment Universe, Inc., dated April 9, 1999./(1)/

10.07              Entertainment Universe, Inc. Regulation D Subscription
                   Agreement, dated as of April ___, 1999./(1)/

6.     The Petitioner has proven by a preponderance of the evidence the existence of a written agreement to arbitrate. Thus Petitioner has met its burden under the law and the Court should compel the Respondent to Arbitrate the controversy as herein alleged as provided for in the Arbitration agreement.

B.  Violation of "Obligation to Defend Action - California Civil Code Section 2860

7.     Defendants after rejecting arbitration demand in California State Court are in violation of Section 2860 of what popularly known as the  California Cumis lawyer obligations. triggering Arbitration right for settlement of legal fee disputes which is where Sony Corp. agreements have their legal jurisdiction, specifically California State and Federal Courts.  Defendants violated section 8 of the same 1999 agreement in which they were bound to pay Plaintiff's legal fees but refused even after being notified of a new claim again in 2010[2], via communication and notice by Plaintiff to Sony Corporation of America CFO who acknowledged email received in 2010 and received the notice of claim later sent, Defendants failed to take action, refused to honor agreement and provide legal fees for Plaintiff to hire attorney to defend Peer Music, Federal Class action security fraud case that was ongoing, and arbitrations that Plaintiff had right to make use of and demand to cover losses, liability and to seek reimbursement. Section 2860 states:

"2860.  (a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the

---

10.08  Entertainment Universe, Inc. Registration Rights Agreement, dated as of April 1999./(1)/

10.09            Assignment and Assumption Agreement by and between Entertainment Universe, Inc. and Motorcycle Centers of America, Inc., dated as of April 14, 1999./(1)/

[2] See Exhibit 3 disclosing emails sent by Plaintiff to CFO Sony Corporation of America Rob Weisenthal for claim notices in 2010. Weisenthal had replied to earlier email communications in 2010 with Plaintiff but did not reply to these later claim notices.

insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section.

(b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

(c) When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. This subdivision does not invalidate other different or additional policy provisions Pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute. "

8.    Plaintiff seeks to invoke precedential arbitration provision Plaintiff was also

a party to, settling in 2002. (see public issuer SEC filing excerpts Exhibit #2)

## III.   CONCLUSION

9.    That the Court order the Section 6.9 arbitration to proceed under the terms

of and pursuant to the arbitration provision set forth in the agreements. That all

proceedings in this matter be stayed pending completion of the Arbitration.

Dated:      December 10, 2015

/s/ Brad D. Greenspan
Brad D. Greenspan, in pro per
2995 Woodside Rd., Suite 1400
Woodside, CA 94062  / Ph: 408-599-3340 ext: 454

MOTION TO COMPEL ARBITRATION        4

Exhibit #1 – 1999 Entertainment Universe, Inc. Regulation D Subscription Agreement

"6.9  Arbitration. Any controversy or claim arising out of or related to
this Agreement or the breach thereof, shall be settled by binding arbitration in
Chicago, Illinois in accordance with the Expedited Procedures (Rules 53-57) of
the Commercial Arbitration Rules of the American Arbitration Association
("AAA"). A proceeding shall be commenced upon written demand by Company or any
Subscriber to the other.

The arbitrator(s) shall enter a judgment by default against any party which fails or refuses
to appear in any properly noticed arbitration proceeding.

The proceeding shall be conducted by one (1) arbitrator, unless the amount alleged to be
in dispute exceeds two hundred fifty thousand dollars ($250,000), in which case three (3)
arbitrators shall preside.  The arbitrator(s) will be chosen by the parties from a list
provided by the AAA, and if they are unable to agree within ten (10) days, the AAA shall
select the arbitrator(s).

The arbitrators must be experts in securities law and financial transactions. The
arbitrators shall assess costs and expenses of the arbitration, including all attorneys' and
experts' fees, as the arbitrators believe is appropriate in light of the merits of the parties'
respective positions in the issues in dispute.

Each party submits irrevocably to the jurisdiction of any state court sitting in Chicago,
Illinois or to the United States District Court sitting in Chicago for purposes of
enforcement of any discovery order, judgment or award in connection with such
arbitration.

The award of the arbitrator(s) shall be final and binding upon the parties and may be
enforced in any court having jurisdiction. The arbitration shall be held in
such place as set by the arbitrator(s) in accordance with Rule 55."


"8.  Indemnification.
        ----------------
        The Company and Brad Greenspan agree, jointly and severally, to
indemnify and hold harmless Subscriber and the Escrow Agent and each of their
respective officers, directors, employees and agents, and each person who
controls Subscriber or the Escrow Agent within the meaning of the Act or the
Exchange Act (each, a "Subscriber Indemnified Party") against any losses,
claims, damages or liabilities, joint or several, to which it, they or any of
them, may become subject and not otherwise reimbursed arising from any material
breach of any representation or warranty made by the Company or the Public

Entity contained in this Agreement, in writing to the Subscriber, in any statements contained in the Disclosure Documents or otherwise disclosed.

Subscriber agrees to indemnify and hold harmless the Company and the Escrow Agent and each of their respective officers, directors, employees and agents, and each person who controls Company or the Escrow Agent within the meaning of the Act or the Exchange Act (each, a "Company Indemnified Party") (a Subscriber Indemnified Party or a Company Indemnified Party may be hereinafter referred to singularly as "Indemnified Party") against any losses, claims, damages or liabilities, joint or several, to which it, they or any of them, may become subject and not otherwise reimbursed arising from any material breach of any representation or warranty made by Subscriber contained in this Agreement.

Promptly after receipt by an Indemnified Party of notice of the commencement of any action pursuant to which indemnification may be sought, such Indemnified Party will, if a claim in respect thereof is to be made against the other party (hereinafter "Indemnitor") under this Section 8, deliver to the Indemnitor a written notice of the commencement thereof and the Indemnitor shall have the right to participate in and to assume the defense thereof with counsel reasonably selected by the Indemnitor, provided, however, that an Indemnified Party shall have the right to retain its own counsel, with the reasonably incurred fees and expenses of such counsel to be paid by the Indemnitor, if representation of such Indemnified Party by the counsel retained by the Indemnitor would be inappropriate due to actual or potential conflicts of interest between such Indemnified Party and any other party represented by such counsel in such proceeding. The failure to deliver written notice to the Indemnitor within a reasonable time of the commencement of any such action, if prejudicial to the Indemnitor's ability to defend such action, shall relieve the Indemnitor of any liability to the Indemnified Party under this Section 8, but the omission to so deliver written notice to the Indemnitor will not relieve it of any liability that it may have to any Indemnified Party other than under this"

MOTION TO COMPEL ARBITRATION          6

EXHIBIT #2

ii.) Euniverse december 10Q 2001: ITEM 1.  LEGAL PROCEEDINGS.

" As previously disclosed, on April 23, 2001, EP Opportunity Fund LLC and EP Opportunity Fund International, Ltd. (the "EP Funds") filed a Demand for Arbitration against Entertainment Universe, Inc. ("EUI"), a wholly owned subsidiary of the Company, and Brad Greenspan, Chairman and CEO of the Company, with the American Arbitration Association in Chicago, Illinois ("AAA Arbitration"). The EP Funds asserted breach of contract, fraud and related claims, alleging that the Company and Greenspan breached a fully executed Series A preferred stock subscription agreement and related agreements by (i) failing to register the common stock underlying the preferred stock held in the EP Funds' names and (ii) refusing to issue unrestricted common shares to the EP Funds pursuant to notices of conversion of preferred stock delivered to the Company. The EP Funds claim in excess of $250,000.00 in damages. The EP Funds' preferred stock has since been converted into common shares. The AAA Arbitration hearing has been scheduled to begin on April 30, 2002.

On December 6, 2001, the Company filed a lawsuit against the EP Funds in Los Angeles Superior Court (the "California Action") for, among other things, breach of an agreement by the EP Funds to arbitrate any dispute arising out of their investment in the Company in a location of the Company's choice and in accordance with the dispute resolution rules of the National Association of Securities Dealers ("NASD"). On January 29, 2002, the Court denied the Company's motion to compel the EP Funds to arbitrate their dispute in Los Angeles under NASD rules and to stay the AAA Arbitration. The Company will, therefore, vigorously defend itself in the AAA Arbitration while maintaining its objection to the AAA's jurisdiction over this matter. With respect to the California Action, the EP Funds have challenged the jurisdiction of the Los Angeles Superior Court over the Funds and the Company has opposed the EP Funds' motion to quash service of summons based on the alleged lack of jurisdiction. Whether and how the California Action will proceed will be determined upon resolution of the issue of jurisdiction. In any event, and as previously stated, the Company disputes the EP Funds' alleged claims and believes that they are without merit. The Company also intends to vigorously pursue its claims against the EP Funds in the most expedient and effective forum available.

b) As previously disclosed, on April 23, 2001, EP Opportunity Fund LLC and EP Opportunity Fund International, Ltd. (the "EP Funds") filed a Demand for Arbitration against Entertainment Universe, Inc. ("EUI"), a wholly owned

subsidiary of the Company, and Brad Greenspan, Chairman and CEO of the Company, with the American Arbitration Association in Chicago, Illinois ("AAA Arbitration"). The EP Funds asserted breach of contract, fraud and related claims, alleging that the Company and Greenspan breached a fully executed Series A preferred stock subscription agreement and related agreements by (i) failing to register the common stock underlying the preferred stock held in the EP Funds' names and (ii) refusing to issue unrestricted common shares to the EP Funds pursuant to notices of conversion of preferred stock delivered to the Company. The EP Funds claim in excess of $250,000.00 in damages. The EP Funds' preferred stock has since been converted into common shares. The AAA Arbitration hearing has been scheduled to begin on April 30, 2002.

"As previously disclosed, (i) on April 23, 2001, EP Opportunity Fund LLC and EP Opportunity Fund International, Ltd. (the "EP Funds") filed a Demand for Arbitration against Entertainment Universe, Inc. ("EUI"), a wholly owned subsidiary of the Company, and Brad Greenspan, Chairman and CEO of the Company, with the American Arbitration Association in Chicago, Illinois ("AAA Arbitration"), and (ii) on December 6, 2001, the Company filed a lawsuit against the EP Funds in Los Angeles Superior Court (the "California Action"). The AAA Arbitration and the California Action arose out of disputes related to the EP Funds Series A Preferred investment in the Company in or about April of 1999. On April 22, 2002, the parties to the AAA Arbitration and the California Action entered into a Settlement Agreement pursuant to which (i) the Company made a one-time cash payment to the EP Funds, (ii) the EP Funds received 43,000 shares of the Company's common stock from an unrelated, unaffiliated third-party by virtue of compromise by Mr. Greenspan of an unmatured right to receive such shares, and (iii) the parties exchanged mutual general releases and agreed to dismiss the AAA Arbitration and California Litigation with prejudice. The Company does not expect the terms of the settlement to have any material adverse effect on the Company."

MOTION TO COMPEL ARBITRATION          8

EXHIBIT #3

On Oct 25, 2010, at 7:47 PM, Brad Greenspan wrote:

Hi Rob-

See below. New discovery that ties SonyMusic non-competition behavior
against LiveUniverse, Inc. where thru GraceNote, Inc. (starting in at least 2008) its currently
orchestrating and benefitting from the current Nmpa complaint (2009)  directly to
SonyMusic bright line aiding and abetting of securities fraud also
leading to fraud against Mr. Greenspan and eUniverse during 2004 Proxy(2004).

Therefore, as you know there is current class action federal action ongoing with defendants
VantagePoint which is the fund that paid millions to SonyMusic to create and result in Sony's
securities violations thru its Series B Nominee- Jeff Edell's fraud on the market thru not
disclosing in violation of Item 402. Rule SK- Violation of Obligation to Disclose any material
work events specifically any bankruptcies  as CEO that occurred in last 10 years. (SEE
EDELL'S ATTEMPT TO DISCLOSE BANKRUPTCY AFTER IN THE SUBSEQUENT PROXY
FILINGS AS A REGULAR DIRECTOR, AND THEREFORE ADMIT THE FRAUD DONE IN
2004 PROXY WHERE SONY CAN SUE EDELL FOR DEFRAUDING SONY, WHILE OR
AFTER EVERYONE FILES SUIT AGAINST SONY FOR CPL BILLION (WE LOST 33% OF
MYSPACE BECAUSE OF SONY NOMINEE'S ADDITONAL FRAUD).

Rob- The reason for us to have phone chat amongst these undeniable pieces of evidence that
you can find below and thru review of SEC filings is that Sony Corp was gross negligent or
negligent or working in bad faith. So I think this stuff sucks obviously and I am willing to bet you
were not part of this bad behavior because you cant be everywhere at once in a big company
like Sony.

But today has to be the day you review this matter yourself and determine you want to do the
right thing and help clear it up and fix Sony Music to be better operated in the future.

The good news is you already transitioned out the BAD GUYS.

So read below view of the world and facts that have just FLIPPED UP INTO a group of playing
cards and now its how to play these out knowing that clearly I am going to put out my side of
story (which has not been done), and perhaps we can resolve matter even as we disclose
REMEDIAL STEPS BY SONY CORP AND DISCLOSURE OF LIABILITIES AND POTENTIAL
LIABILITIES FOR SONY CORP AS THESE MATTERS NOW ARE UNWOUND OR LAID OUT
ON TABLE.

So hope we can talk about this stuff and happy to hear any bona fide defenses or merits as I
respect you as businessman and like I said. I see this as bad actors Eisenberg and Gewecke.

Brad (see below for full background)

"-Sony Corp in exchange for this agreed to nominate in its Series B board seat, Jeff Edell.

MOTION TO COMPEL ARBITRATION          9

-Jeff Edell defrauded the shareholders in the 2004 Proxy by failing to disclose
his bankruptcy under Item 402 Rule SK.

-Edell disclosed it months later after already using the fraudulent omission combined
with Sony's support and backing to ensure himself control of eUniverse Board with
VantagePoint. (using footnote disclosure see below in subsequent SEC filing)

-Sony's nominee and therefore Sony defrauded Intermix shareholders by Edell/VantagePoint
scheme, and then defamed and slandered Brad Greenspan who told Sony Edell was con artist
but Sony Music execs did not like Greenspan and decided to bet on Edell and Vantage and
agreed to defraud shareholders by supporting Edell and also failing to do BASIC
BACKGROUND CHECK on EDELL before nominating him to Sony Series B board seat, and
ensuring Edell could not be voted out.

Example of how Sony's nominee- Jeff Edell attacked Greenspan with slander and defamation
to win control of Board for VantagePoint and shift value away from shareholders.

http://www.sec.gov/Archives/edgar/data/1088244/000119312504002038/ddefa14a.htm"


**From:** Brad Greenspan <bspan@earthlink.net>
**Date:** November 13, 2011 2:04:46 AM PST
**To:** robert_wiesenthal@sonyusa.com
**Cc:** antitrust@ftc.gov, liberties@nytimes.com, grmorgenson@nytimes.com,
gretchen@nytimes.com, carr@nytimes.com, national@nytimes.com, public@nytimes.com,
president@nytimes.com, publisher@nytimes.com, nytnews@nytimes.com, kavier@nytimes.com,
bizday@nytimes.com, magazine@nytimes.com, letters@nytimes.com, circuits@nytimes.com,
onthejob@nytimes.com, viewpts@nytimes.com, yourmind@nytimes.com, mediabiz@nytimes.com,
dcarr@nytimes.com, abelson@nytimes.com, abramson@nytimes.com, ambrose@nytimes.com,
frandrew@nytimes.com, apcar@nytimes.com, peappl@nytimes.com, randya@nytimes.com,
barbanel@nytimes.com, dabarry@nytimes.com, barstow@nytimes.com, goldbehr@nytimes.com,
belluck@nytimes.com, jabenn@nytimes.com, berenson@nytimes.com, miblum@nytimes.com,
tbodkin@nytimes.com, gboyd@nytimes.com, brinkley@nytimes.com, brooke@nytimes.com,
charney@nytimes.com, fclines@nytimes.com, adclym@nytimes.com, gcollins@nytimes.com,
ancron@nytimes.com, bcrosset@nytimes.com, cushman@nytimes.com, daley@nytimes.com,
dewan@nytimes.com, dicke@nytimes.com, suedge@nytimes.com, stenge@nytimes.com, fass@nytimes.com,
fstone@nytimes.com, fisheri@nytimes.com, jwesley@nytimes.com, nickfox@nytimes.com, frantz@nytimes.com,
french@nytimes.com, gearyd@nytimes.com, gefter@nytimes.com, glabe@nytimes.com, ligree@nytimes.com,
hardenb@nytimes.com, harland@nytimes.com, jonhicks@nytimes.com, stholm@nytimes.com,
davidk@nytimes.com, slabaton@nytimes.com, lewin@nytimes.com, markoff@nytimes.com, Kyle Massey
<massey@nytimes.com>, onishi@nytimes.com, orme@nytimes.com, rpear@nytimes.com, raines@nytimes.com,
reissc@nytimes.com, editorial@nytimes.com, executive-editor@nytimes.com, darose@nytimes.com,
andyr@nytimes.com, dasang@nytimes.com, kseeley@nytimes.com, sommer@nytimes.com,
stanley@nytimes.com, jothomas@nytimes.com, rotone@nytimes.com, vtoy@nytimes.com,
vannatta@nytimes.com, hevero@nytimes.com, mattwald@nytimes.com, tiwein@nytimes.com,
thecity@nytimes.com
**Subject: Adding Sony and yourself individually to securities fraud antitrust charges in
Federal Court - Brown v. Brewer - Judge King accepted my 60b3 Fraud upon court &
Next week will add new RICO claims**

Rob-

I gave you a chance to investigate and come clean. You failed to take any action.

MOTION TO COMPEL ARBITRATION          10

EXHIBIT #4



**AMERICAN ARBITRATION ASSOCIATION®** INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Name of Respondent: SEE ATTACHED Sony Corporation OF AMERICA | | | Name of Representative (if known): Kevin Coen |
| --- | --- | --- | --- |
| Address: | | | Name of Firm (if applicable): MNAT |
| | | | Representative's Address: 1201 North Market Street |
| City: | State: | Zip Code: | City: Wilmington | State: DE | Zip Code: 19801 |
| Phone No.: | Fax No.: | | Phone No.: 302 658 9200 | Fax No.: |
| Email Address: | | | Email Address: kcoen@mnat.com |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

# breach of agreement, in pari delicto, setoff, unclean hands, willful misconduct

| Dollar Amount of Claim: $ 1,000,000+ | Other Relief Sought: ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs ☑ Punitive/ Exemplary ☑ Other |
| --- | --- |
| Amount enclosed: $ | In accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule |

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

# experts in securities law and financial transactions

| Hearing locale: Chicago | (check one) ☐ Requested by Claimant ☑ Locale provision included in the contract |
| --- | --- |
| Estimated time needed for hearings overall: _____ hours or _____ days | Type of Business: Claimant: individual Respondent: |

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?

| Signature (may be signed by a representative): | Date: 12/14/2015 |
| --- | --- |
| Name of Claimant: Brad Greenspan | Name of Representative: Jarod Bona |
| Address (to be used in connection with this case): 2885 Sanford Ave SW #33395 | Name of Firm (if applicable): Bona Law PC |
| | Representative's Address: 4275 Executive Square, #200 |
| City: Grandville | State: MI | Zip Code: 49418 | City: La Jolla | State: CA | Zip Code: 92037 |
| Phone No.: 408-599-3340 ext: 454 | Fax No.: | Phone No.: 858 964 4589 | Fax No.: 858 964 2301 |
| Email Address: | | Email Address: jarod.bona@bonalawpc.com |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*



| AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION® | **COMMERCIAL ARBITRATION RULES** **DEMAND FOR ARBITRATION** |

*For Consumer or Employment cases, please visit **www.adr.org** for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Name of Respondent: MORRIS, NICHOLS, ARSHT & TUNNELL LLP | Name of Representative (if known): |

| Address: **1201 North Market Street** | Name of Firm (if applicable): |
| | Representative's Address: |

| City: Wilmington | State: DE | Zip Code: 19801 | City: | State: | Zip Code: |

| Phone No.: 302-658-9200 | Fax No.: | Phone No.: | Fax No.: |

| Email Address: kcoen@mnat.com | Email Address: |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

**breach of agreement, in pari delicto,setoff,unclean hands,willful misconduct**

| Dollar Amount of Claim: $ 1,000,000+ | Other Relief Sought: ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs ☑ Punitive/ Exemplary ☑ Other |

| Amount enclosed: $ | In accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule |

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

**experts in securities law and financial transactions**

| Hearing locale: Chicago | (check one) ☐ Requested by Claimant ☑ Locale provision included in the contract |

| Estimated time needed for hearings overall:  hours or  days | Type of Business: Claimant: individual   Respondent: Corporation |

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?

| Signature (may be signed by a representative): | Date: 12/14/2015 |

| Name of Claimant: Brad Greenspan | Name of Representative: Jarod Bona |

| Address (to be used in connection with this case): 2885 Sanford Ave SW #33395 | Name of Firm (if applicable): Bona Law PC |
| | Representative's Address: 4275 Executive Square, #200 |

| City: Grandville | State: MI | Zip Code: 49418 | City: La Jolla | State: CA | Zip Code: 92037 |

| Phone No.: 408-599-3340 ext: 454 | Fax No.: | Phone No.: 858 964 4589 | Fax No.: 858 964 2301 |

| Email Address: | Email Address: jarod.bona@bonalawpc.com |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*



AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Name of Respondent: Kevin M. Coen | Name of Representative (if known): |
|---|---|

Address:
# 1201 North Market Street

Name of Firm (if applicable):

Representative's Address:

| City: Wilmington | State: DE | Zip Code: 19801 | City: | State: | Zip Code: |
|---|---|---|---|---|---|
| Phone No.: 302-658-9200 | Fax No.: | | Phone No.: | Fax No.: | |
| Email Address: kcoen@mnat.com | | | Email Address: | | |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

## breach of agreement, in pari delicto, setoff, unclean hands, willful misconduct

| Dollar Amount of Claim: $ 1,000,000+ | Other Relief Sought: ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs ☑ Punitive/ Exemplary ☑ Other |
|---|---|

| Amount enclosed: $ | In accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule |
|---|---|

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

# experts in securities law and financial transactions

| Hearing locale: Chicago | (check one) ☐ Requested by Claimant ☑ Locale provision included in the contract |
|---|---|

| Estimated time needed for hearings overall: hours or days | Type of Business: Claimant: individual   Respondent: individual |
|---|---|

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?

| Signature (may be signed by a representative): | Date: 12/14/2015 |
|---|---|
| Name of Claimant: Brad Greenspan | Name of Representative: Jarod Bona |
| Address (to be used in connection with this case): 2885 Sanford Ave SW #33395 | Name of Firm (if applicable): Bona Law PC |
| | Representative's Address: 4275 Executive Square, #200 |

| City: Grandville | State: MI | Zip Code: 49418 | City: La Jolla | State: CA | Zip Code: 92037 |
|---|---|---|---|---|---|
| Phone No.: 408-599-3340 ext: 454 | Fax No.: | | Phone No.: 858 964 4589 | Fax No.: 858 964 2301 | |
| Email Address: | | | Email Address: jarod.bona@bonalawpc.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*