**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
|      Plaintiffs, | Case No. 1:20-cv-3010 |
| v. | HON AMIT P. MEHTA |
| GOOGLE LLC, | |
|      Defendant. | |

| | |
|---|---|
| STATE OF COLORADO, *et al.*, | |
|      Plaintiffs, | Case No. 1:20-cv-3010 |
| v. | HON AMIT P. MEHTA |
| GOOGLE LLC, | |
|      Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
NEW YORK TIMES COMPANY'S MOTION FOR ACCESS TO JUDICIAL RECORDS**

The New York Times Company ("The Times") hereby moves for access to judicial records that are sealed or have otherwise not been made publicly available.[1]

## PRELIMINARY STATEMENT

Now that the trial is over, and in advance of the deadline for the parties to propose a process for handling the sealing of trial materials, *see* Dkt. 647 ¶ 6, The Times moves for access to records that are either under seal or, though apparently not subject to a sealing order, have not been released to the public. In particular, The Times seeks access to six categories of records: (i) the 2016 contract between Apple and Google (known as the "2016 ISA") and other key Google agreements at the center of this case; (ii) certain third-party exhibits that are fully sealed or extensively redacted; (iii) exhibits containing information already released in court proceedings; (iv) deposition testimony that was either played or provided to the Court at trial; (v) certain expert reports, which have been filed on the docket or otherwise provided to the Court in full, excerpt, or summary form; and (vi) records that are now dated (*i.e.*, at least ten years old as of the date of this motion), for which the passage of time has likely diminished the need for sealing. Finally, in the event the Court believes that closure of the courtroom may be necessary during closing arguments, The Times asks that the Court provide the public with notice and opportunity to be heard before making that decision.

---

[1] The Court previously granted The Times's motion for intervention for the limited purpose of seeking access to judicial records. Dkt. 750. While The Times is again the sole movant here (as it is represented by its in-house lawyers), its application is fully supported by Bloomberg L.P., *The Capitol Forum*, MLex US Inc. (publisher of MLex), and Portfolio Media, Inc. (publisher of Law360).

## BACKGROUND[2]

### I.        The Court Orders Near-Contemporaneous Disclosure of Trial Exhibits

The Times's prior motion sought, among other things, contemporaneous access to exhibits used at trial. Dkt. 731-1 at 6-9. In an order dated October 25, 2023, the Court partly granted that request. Dkt. 750. The Court appointed a "designated press representative" to make requests for trial exhibits on behalf of the press and required the parties to make good faith efforts to provide copies of those exhibits within a certain timeframe, depending on the type of exhibit. Dkt. 750 at 1-2. For exhibits produced by a third party or containing third-party confidential information, the October 25 order gave the parties four business days to provide such exhibits to the press. *Id*. at 2. The order also required the parties to notify the third party that a request for the exhibit was made and obligated the third party to respond within two business days. *Id.* If the third party did not respond or "otherwise fail[ed] to comply with a request," the parties were to release the exhibit. *Id.*

The October 25 order, however, did not address the handling of exhibits to whose disclosure a third party objected. That omission would prove to be significant: some 28 exhibits requested by the designated press representative were not released after third parties objected to their disclosure and remain under seal in their entirety. *See* Sumar Decl. Ex. A (listing exhibit numbers, objecting third party, corresponding witness, date used, and document type). Neither the designated press representative nor The Times has been given an explanation as to why the records have been withheld. Notably, only four of the exhibits were used during closed sessions of court; some are dated (*i.e.*, at least ten years old), and at least one (PSX761) is an agreement

---

[2] The Times assumes familiarity with the background set out in its prior motion papers.

that is no longer in force. *Id.* One of the exhibits contains the information of third-party Branch; the other 27 exhibits are Microsoft's. *Id.*

## II.     Subsequent Sealing Disputes and Disclosures at Trial

Following The Times's motion and the October 25 order, the Court resolved two other sealing disputes at trial, both largely in favor of public access. On October 27, 2023, the Court rejected Google's request to seal portions of a trial exhibit showing the total TAC (traffic acquisition cost) associated with Search — that is, the amount of money Google paid to other companies to make its search engine the default on web browsers and mobile phones. Oct. 27, 2023, AM Tr. at 7572:10–7574:18. Noting that related information was already in the public domain, the Court stated, "it's not clear to me why revealing that particular number is going to somehow disadvantage Google with respect to its negotiations with distribution partners." *Id.* at 7574:10-12. The extensive news reporting and commentary that followed disclosure of that figure — $26.3 billion in 2021 — spoke to the immense public interest in the information and trial generally. *See, e.g.*, Leah Nylen, *Google Paid $26 Billion to Be Default Search Engine in 2021*, Bloomberg (Oct. 27, 2023), https://bloom.bg/3SiVAVl; Lauren Feiner, *Google paid $26 billion in 2021 to become the default search engine on browsers and phones*, CNBC (Oct. 27, 2023), https://cnb.cx/3U0k08l.

Then, on November 14, 2023, the Court largely denied two requests by Google to keep certain information under seal. First, the Court rejected Google's post hoc effort to redact three figures from the November 7 trial transcript — the past and current revenue shares Google paid to Verizon to be the default search engine on Verizon's Android phones — that had been regarded as confidential but were then revealed in open court by a Google witness. Nov. 14, 2023, PM Tr. at 10211:23–10214:21. Second, the Court largely sided with the DOJ in a dispute over the propriety of continued sealing of portions of exhibits JX24 (the 2014 Joint Cooperation

Agreement between Google and Apple, or "2014 JCA") and JX33 (the 2016 ISA). *Id.* at

10214:23–10219:2. The Court agreed with the DOJ that the provisions at issue were largely not

sensitive and/or had been discussed in open court, though it upheld redactions to one section of

the 2016 ISA that addressed "ad revenue share" on the ground that the information had not been

publicly disclosed. *Id.* at 10217:14–10218:10. As it turns out, the revenue share number itself —

36 percent — had been disclosed in open court the day before. Nov. 13, 2023, AM Tr. at

9785:15.

## ARGUMENT

### I.    The Public's Right of Access to Judicial Records

*General Principles.* The common law creates a "strong presumption in favor of public

access" to judicial records, which can be set aside only upon a showing that sealing is justified

by "competing interests." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665

(D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980))

(cleaned up). Whether the presumption of access is overcome turns on the so-called *Hubbard*

factors:

> (1) [T]he need for public access to the documents at issue; (2) the extent of previous
> public access to the documents; (3) the fact that someone has objected to disclosure, and
> the identity of that person; (4) the strength of any property and privacy interests asserted;
> (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for
> which the documents were introduced during the judicial proceedings.

*CNN, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021); *see Hubbard*, 650 F.2d at 317-21. In

applying the factors, a court must provide a "full explanation" for its decision to seal a record —

one that is "detailed enough to permit review of the district court's exercise of its discretion." *In

re L.A. Times Commc'ns. LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (quoting *EEOC v. Nat'l

Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996)) (cleaned up). The proponent of

sealing bears the burden "to come forward with specific reasons why the record, or any part

thereof, should remain under seal." *FTC v. Match Grp., Inc.*, No. 22-mc-54, 2023 U.S. Dist. LEXIS 75470, at *24 (D.D.C. May 1, 2023) (quoting *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991)) (cleaned up).

As The Times noted in its prior motion papers, the First Amendment independently confers a right of access to judicial records. Dkt. 731-1 at 7 & n.10; *see, e.g.*, *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011). But the Court need not address the constitutional access right if it agrees with the argument set forth here that the common law provides complete relief. *See, e.g.*, *In re Application of Chodiev*, No. 18-mc-13, 2021 U.S. Dist. LEXIS 90103, at *28 (D.D.C. Mar. 23, 2021) (finding that the "requested relief can be granted by applying the *Hubbard* factors to evaluate CNN's claim under the common law right of access to records" and therefore declining to reach First Amendment arguments).

*The Scope of the Right of Access to Trial Exhibits.* The Times's prior briefing also discussed the specific access principles that apply to trial exhibits. *See* Dkt. 731-1 at 6-8; Dkt. 737 at 1-2. As pertinent here, the public's right of access under the common law extends to the entirety of a trial exhibit admitted into evidence, rather than just to the portions shown to a trial witness, displayed in court, or, as in this case, reviewed by the parties for confidentiality in advance of trial. Dkt. 737 at 2-3 (quoting *In re Bard IVC Filters Prods. Liab. Litig.*, No. 15-mdl-2641, 2019 U.S. Dist. LEXIS 6124, at *268-70 (D. Ariz. Jan. 11, 2019); *United States v. Usher*, No. 17-cr-19, 2021 U.S. Dist. LEXIS 1974, at *3-4 (S.D.N.Y. Jan. 6, 2021); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, No. 15-cv-211, 2021 U.S. Dist. LEXIS 110020, at *5 (S.D.N.Y. June 11, 2021); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 679 n.12, 681 (3d Cir. 1988)).[3]

---

[3] Though The Times raised this issue during trial, it agreed to withdraw the argument without prejudice to focus on the more immediate and critical question of contemporaneous

A party admits a document into evidence "to influence [a judge or jury's] decisionmaking," and that itself converts the whole document into a "judicial record." *CNN, Inc*, 984 F.3d at 118; *see also id.* ("This Court has even said that 'every part of every brief filed to influence a judicial decision qualifies as a judicial record.'"); *In re Bard IVC Filters Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 6124, at *269 (noting that "courts have found that [exhibits admitted into evidence] become, simply by virtue of that event, judicial records subject to the public right of access") (cleaned up).

To be clear, The Times does not ask that the Court require the parties to re-review every single exhibit admitted into evidence in this case. The Times asks only that, for the discrete categories of documents identified in this motion — materials in which the public has a clear interest and/or for which the need for sealing has likely elapsed — the Court consider the documents in their entirety as judicial records and require the parties to provide compelling reasons to justify any sealing.[4]

In prior briefing Google has disputed whether the presumption of access applies at all to portions of trial exhibits not reviewed by the parties for confidentiality, *see* Dkt. 738 at 4-7, but all of its arguments miss the mark:

First, the fact that portions of exhibits not reviewed for confidentiality may contain "trade secrets and confidential business information," *id.* at 4, even if true, is not germane to the existence of the access right. It may be relevant to whether the public's right of access is

---

access to the portions of trial exhibits already reviewed by the parties for confidentiality. Oct. 19, 2023, PM Tr. at 6682:5-12.

[4] The Times's understanding is, in fact, that the Court admitted documents into evidence in their entirety. *See* Oct. 16, 2023, PM Tr. at 5957:13-14 ("In other words, the exhibit is being presented in its entirety.").

ultimately overcome, but not to whether it applies in the first place. *See, e.g.*, *CNN, Inc.*, 984 F.3d at 118.

Second, the suggestion that the public does not have a "need" for access to portions of exhibits not reviewed by the parties for confidentiality prior to trial, Dkt. 738 at 5, is mistaken. The public interest in such material derives from the basic fact that it is submitted into evidence to sway the Court's adjudication of the claims in this case. *See, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 6124, at *269 (rejecting the argument that "the public has no interest in confidential information contained in the trial exhibits because the information has only minimal relevance to claims in the . . . trials," given the "legal significance" of "the Court's orders admitting the exhibits into evidence"). And even if the public had a reduced need for portions of exhibits not reviewed by the parties for confidentiality, this is but one factor in the *Hubbard* analysis. Google has not argued, for instance, that withholding material in exhibits that is not commercially sensitive is consistent with the *Hubbard* factors as a whole.

Third, Google misreads the handful of cases on which it relies. Dkt. 738 at 4-7. Google cites *In re Citibank August 11, 2020 Wire Transfers*, No. 20-cv-6539, 2020 U.S. Dist. LEXIS 216009 (S.D.N.Y. Nov. 18, 2020), to justify its broad withholdings. But that case allowed the parties to redact information in trial exhibits "not relevant to the issues in the case" only when "*no party asks the Court to consider it.*" *Id.* at 4 n.3 (emphasis in original). The parties here have essentially done the opposite by putting documents in their entirety into evidence. Google also cites the court's observation in *Masimo Corp. v. Apple Inc.*, No. 20-cv-48, 2023 U.S. Dist. LEXIS 187703 (C.D. Cal. July 26, 2023) that a party does not "waiv[e] all confidentiality rights to portions of documents" not shown or discussed to a jury. *Id.* at *8. The Times does not disagree. While a party may ultimately show that a document or portions of a document are

properly sealed, these decisions do not support Google's contention that the presumption of access does not apply at all and that the *Hubbard* analysis is foreclosed from the start.

Fourth, Google has no real answer to the weight of authority cited by The Times for the proposition that the entirety of a trial exhibit admitted into evidence is a judicial record subject to a presumption of access. Google notes that these cases "generally involve" juries, Dkt. 738 at 6, but never explains why that distinction makes a difference. Google also observes that the cases cited by The Times "acknowledge the parties' right to seal the records in question," but goes on to concede that those courts "determin[ed] that a public right of access applied to the exhibits at issue." *Id.*

## II.     The Court Should Unseal the 2016 ISA and Other Key Contracts

The documents at the core of this case are Google's allegedly illegal contracts with web browser developers, original equipment manufacturers and wireless carriers, pursuant to which these companies make Google the default search engine in exchange for a share of advertising revenue generated by Google searches. *United States v. Google LLC*, No. 20-cv-3010, 2023 U.S. Dist. LEXIS 136338, at *17-18 (D.D.C. Aug. 4, 2023). Yet these documents still contain extensive redactions that appear to go beyond what is necessary to prevent competitive harm to Google. *See, e.g.*, *King & Spalding, LLP v. HHS*, No. 15-cv-1616, 2020 U.S. Dist. LEXIS 60949, at *7 (D.D.C. Apr. 7, 2020) ("To carry its burden under *Hubbard*, a party must specifically identify the commercially sensitive information and explain why its disclosure would harm its competitive standing.") (cleaned up). The Times seeks a small subset of these records: the 2014 JCA (JX24), the 2016 ISA (JX33), a 2017 Google-Samsung Agreement

(JX37), a 2020 Google-Samsung Agreement (JX71), a Motorola agreement (JX99), and another agreement that the DOJ's expert testified contained anticompetitive language (JX91).[5]

Unsealing is warranted for two reasons. Frist, to The Times's knowledge, and setting aside portions of the documents whose sealing was disputed by the parties, Google and the relevant third parties have not provided concrete justifications for the extensive sealing of these records. They have, to be sure, made general, high-level claims about the sensitivity of these agreements. *See, e.g.*, Dkts. 740-1; 740-4; 740-5. But these broad explanations contrast with the close scrutiny that the parties and Court have applied to other records — for instance, certain trial testimony that was initially under seal. *See, e.g.*, Oct. 18, 2023, PM Tr. at 6476:17-19 ("We did conduct a line-by-line evaluation of [the parties'] proposals [for redactions to transcripts of witnesses Jonathan Yoo, Michael Roszak, and Eric Lehman] and applied the *Hubbard* factors to those proposals."); Oct. 4, 2023, PM Tr. at 4365:9-11 ("[W]e have done a line-by-line consideration of the sealed testimony [of witnesses Gabriel Weinberg and John Giannandrea] and have concluded that much of it will be unsealed."). And there is no question that the sealing here is extensive: in the 2014 JCA, for example, all but one of the contract's provisions is redacted. More is required to justify this degree of sealing, especially given the centrality of these agreements to this case. *See, e.g.*, *Delta Air Lines, Inc. v. Bombardier, Inc.*, 462 F. Supp. 3d 354, 358 (S.D.N.Y. 2020) (claim that disclosure of contract would put parties "at a decided disadvantage in negotiation transactions with other purchasers," though "compelling," did "not override the extraordinary substantial weight this Court accords to the presumption of public access given the centrality of nearly all the proposed redactions to the parties' dispute").

---

[5] To the extent exhibits have been released to the press, they are available at this link: https://drive.google.com/drive/folders/1WTtoIJAC3sPpU_k8lKnjIZAPMy8XUYat.

Second, the disclosures at trial — both here and in another antitrust case against Google — undermine the claim that the degree of sealing of the 2016 ISA and other contracts is justified. As noted, the trial in this case led to disclosures of the revenue share in the 2016 ISA, Nov. 13, 2023, AM Tr. at 9785:15; the revenue shares (past and present) in Google's agreements with Verizon, Nov. 7, 2023, PM Tr. at 9373:18, 9380:8; Nov. 14, 2023, PM Tr. at 10211:23–10214:21; and the total amount Google paid in 2021 for default status, Oct. 27, 2023, AM Tr. at 7576:16-17. Important disclosures were also made in the other antitrust case against Google, brought by Epic Games over Google's operation of the Google Play app store and Google Play Billing service as illegal monopolies. *Epic Games, Inc. v. Google LLC*, 3:20-cv-05671-JD (N.D. Cal.). At that trial, which followed this one, witnesses not only confirmed the revenue share figure in the 2016 ISA (36%) but also disclosed the amount paid to Apple under that agreement ($18 billion) and the year of the agreement's termination (2031), *see* Sumar Decl. Ex. C (excerpts of transcripts from Epic trial) — information that in this case has been sealed. A trial exhibit in the Epic case also revealed the revenue share paid by Google to Samsung under a 2020 agreement (16%). *See* Sumar Decl. Ex. J. At a minimum, the Court should now unseal this particular information in the contracts. *See infra* at 12-14. But it should also require Google to show why these disclosures do not effectively waive Google's entitlement to seal related provisions in the agreements, such as paragraph 4 of the 2016 ISA (regarding "ad revenue share").

III.   **The Court Should Unseal Third-Party Trial Exhibits**

The Court should also unseal certain third-party exhibits, which fall broadly into two categories. In the first category are third-party exhibits requested by the designated press representative but not yet made available. *See* Sumar Decl. Ex. A (listing exhibits). As noted, the exhibits are sealed in their entirety, withheld simply on the ground that the third party

(Microsoft, in almost all cases) objected to their release. That is not sufficient on the law; the proponent of sealing, whether Google or a third party, must carry its burden to justify nondisclosure. *See, e.g.*, *Match Grp., Inc.*, 2023 U.S. Dist. LEXIS 75470, at \*24; Oct. 16, 2023, PM Tr. at 5966:14-20 ("Nobody has a veto over this. And so if there is a document that you're being told is not being released that's been introduced into evidence because a third-party or somebody else is refusing to do it, then I need to know that because that's not what the order says and nobody has a veto over the release or non-release of any document in full or in part. That's my decision.").

Given that The Times does not know the basis on which these records are sealed, it respectfully requests the right to address any rationale for sealing upon reply. The Times notes, however, that both the first and sixth *Hubbard* factors strongly favor unsealing of the records given their status as trial exhibits, for the same kinds of reasons the Court has given in the past. *See, e.g.*, Oct. 4, 2023, PM Tr. at 4364:4-8, 4365:8 (reviewing redactions to trial testimony and finding that first *Hubbard* factor, which "aligns with" the sixth, "weighed heavily" in favor of disclosure because the evidence was "presented at a trial" and because the nature of the case, a "government enforcement action," "heightens the public interest in the [evidence] that's being presented to the Court").

In the second category are redacted third-party exhibits concerning the relationship between Google and Apple at issue in this litigation. *See* Sumar Decl. Ex. B (listing exhibits). The Court has observed that this kind of information "goes to the heart of the case." Oct. 4, 2023, PM Tr. at 4365:19. Yet many of the records are redacted to such a degree that they have little to no value, and to The Times's knowledge neither Google nor Apple has provided specific,

concrete justifications for the sealing of these records. Again, The Times respectfully requests the right to address any rationale for sealing upon reply.

IV.     **The Court Should Unseal Exhibits to the Extent They Contain Information Already Officially Released**

When information is officially released by its owner or made public in a judicial proceeding, there is no basis for sealing it. This proposition is well-recognized in various areas of the law, from the unsealing of judicial records to disclosure under the Freedom of Information Act ("FOIA"). *See, e.g.*, *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) (judicial records); *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (FOIA). Here, numerous exhibits beyond the agreements discussed above contain information that has been made public in court proceedings. All of it should be unsealed.

This unsealing is required by the *Hubbard* factors. As the D.C. Circuit noted in *Hubbard*, "[p]revious access is a factor which may weigh in favor of subsequent access." 650 F.2d at 318; *see also In re Application of NBC*, 653 F.2d 609, 614 (D.C. Cir. 1981) (holding NBC had right to inspect and copy tapes played at trial); *United States v. Munchel*, 567 F. Supp. 3d 9, 17 (D.D.C. 2021) ("Generally, when 'much of the critical information is already in the public forum,' this factor weighs in favor [of] greater disclosure.") (quoting *In re Application of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008)). The other *Hubbard* factors also support disclosure: there is a compelling public need for information contained in trial exhibits (which goes to the first and sixth factors) and the fact that the information is in the public domain means it cannot prejudice Google or any third party (which goes to the fourth and fifth factors).

Some information sealed in this case has been made public in trial exhibits docketed in Epic's antitrust suit against Google, where trial recently concluded. *Epic Games, Inc.*, 3:20-cv-

05671-JD (N.D. Cal.), ECF 622-23. Specifically, The Times seeks to unseal information in the

following exhibits:

- UPX129 — an August 2019 Google presentation titled "MADA & RSA: Android Commercial Agreements" (available with no redactions at ECF No. 622-42, and attached as Sumar Decl. Ex. D);

- UPX161 — a June 2019 Google presentation titled "Google Distribution on Android Framework" (available with no redactions at ECF No. 622-44, and attached as Sumar Decl. Ex. E);

- Unknown Exhibit — a February 2020 Google-OnePlus Revenue Share Agreement (available with nearly no redactions at ECF No. 622-45, and attached as Sumar Decl. Ex. F);

- Unknown Exhibit — the 2020 Google-Motorola Mobile Incentive Agreement (available with nearly no redactions at ECF No. 622-75, and attached as Sumar Decl. Ex. G);

- JX33 — the 2016 ISA (available with some redactions at ECF No. 623-1, and attached as Sumar Decl. Ex. H);

- UPX617 — an email thread between Google employees titled "Tim Briefing Feedback" (available with nearly no redactions at ECF No. 623-76, and attached as Sumar Decl. Ex. I).

Since these records "are already readily accessible on the internet[,] . . . sealing . . . is both

pointless and unwarranted." *United States v. Jackson*, No. 21-mj-115, 2021 U.S. Dist. LEXIS

49841, at *18 (D.D.C. Mar. 17, 2021).

        In addition, portions of documents that were discussed in open court in the instant case

but remain sealed should be unsealed. Several exhibits fall into this category:

- Exhibits discussed in open-court sessions of trial in detail and on the record, specifically UPX929 (Nov. 9, 2023, AM Tr. at 9641:10-9642:12) and UPX1100 (Nov. 9, 2023, AM Tr. at 9650:6-9651:20);

- Exhibits excerpted in demonstratives that were shown in open court (PSX314); and

- Exhibits used during expert testimony in open court, specifically UPX050, UPX6024, UPX1126, UPX892, and UPX469.

In the case of all of these exhibits, their use or discussion in open court weighs heavily in favor of disclosure. *See Hubbard*, 650 F.2d at 318.

## V.   The Court Should Order the Parties to Release or Publicly Docket Certain Deposition Testimony

Five depositions played at trial in open court — those of witnesses Eric Christensen, Mitchell Baker, Jeffrey Gilard, Daniel Levy, and Jeffrey Ezell — have not been made public, and they do not appear in the trial transcripts. *See* Nov. 1, 2023, PM Tr. at 8353:14; *id.* at 8355:25; Nov. 8, 2023, PM Tr. at 9591:21; Nov. 9, 2023, AM Tr. at 9626:25; *id.* at 9628:24. In addition, The Times understands that depositions of two witnesses, who were originally slated to testify in person but were unable to, were submitted by the parties directly to the Court but not placed on the public docket. (The Times does not know the identities of the witnesses.) The Court should either publicly docket these depositions or order the parties to release them.

There can be no real dispute that both categories are subject to the common law right of access. To the extent deposition testimony was played in open court in the course of a trial, it should be treated as any other trial testimony. *See, e.g.*, *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property."). Nor is there a material distinction, for purposes of the presumption of access, between depositions played at trial and those handed directly to the Court. In either case, the purpose of the material is "to influence a judge's decisionmaking." *CNN*, 984 F.3d at 118.

Under *Hubbard*, moreover, disclosure is required. The fact that deposition testimony was played in open court weighs heavily in favor of access. *Hubbard*, 650 F.2d at 318-19; *In re Application of NBC*, 653 F.2d at 614 ("[S]uch previous access is a factor which lends support to subsequent access."). Both categories of testimony constitute evidence presented to the Court at trial (which goes to *Hubbard* factors one and six), and to The Times's knowledge the parties

14

have not identified any prejudice that would result from the testimony's disclosure (which goes to *Hubbard* factors four and five). They should be released by the parties or publicly docketed.

**VI.**     **The Court Should Unseal Expert Reports and their Summaries**

The Times also seeks unsealing of the expert reports of Michael Whinston, Jonathan Baker, Antonio Rangel, Mark Israel, and Kevin Murphy, all of whom testified at trial. Based on The Times's understanding, these reports — either in excerpt, summary, or full form — were provided to the Court in three ways: as attachments to summary judgment motions; Dkts. 477-15 (Whinston); 477-16 (Rangel); 477-17 (Whinston); 478-4 (Murphy); 478-24 (Whinston); 479-33 (Murphy); 492-15 (Baker); 492-16 (Baker); as exhibits to *Daubert* motions, Dkts. 418-1 (Whinston); 419-1 (Baker); and directly to the bench during or prior to trial, without being publicly docketed.[6] None of these materials is publicly available, even in redacted form.

There is no basis for this blanket sealing. As with the documents above, there is no serious dispute that the documents are judicial records subject to a right of public access, given that the parties submitted them to influence the Court's decisions on, respectively, the motions for summary judgment, the *Daubert* motions, and the merits of the claims at trial. *See, e.g. United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 86 (D.D.C. 2020) (unsealing deposition testimony attached to summary judgment motion); *In re Pub. Def. Serv.*, 607 F. Supp. 3d 11, 24 (D.D.C. 2022) (acknowledging right of access to "exhibits to motion in limine to exclude expert testimony").[7]

---

[6] The Times understands that the parties provided summaries of the expert reports to the Court at its behest, though it does not know when or how this occurred.

[7] There is a consensus among other courts that the common law right of access extends to motions *in limine*, *Daubert* motions, and their related attachments. *See United States v. Nelson*, 801 F. App'x 652, 667 (10th Cir. 2020); *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig. v. Allianz Life Ins. Co. of N. Am.*, 686 F.3d 1115, 1119-20 (9th Cir. 2012); *Hispanic Nat'l Law Enf't Ass'n NCR v. Prince George's County*, No. 18-cv-3821, 2021 U.S.

And the *Hubbard* factors favor unsealing as well, for some of the same reasons as the documents above. The summaries of the expert reports, if in fact submitted to the Court during trial, constitute trial evidence — meaning there is a compelling need for access under the first and sixth *Hubbard* factors. These factors also favor access to the reports or excerpts of them attached to the summary judgment and *Daubert* motions. On the sixth factor (the purpose for which documents are introduced in the proceeding), courts recognize that summary judgment motions and *Daubert* motions are key adjudications in a litigation, which heightens the importance of public access to such motions and materials attached to them. *See, e.g.*, *Herron v. Fannie Mae*, No. 10-cv-943, 2016 U.S. Dist. LEXIS 200984, at *11 (D.D.C. June 20, 2016) (finding that sixth *Hubbard* factor favored access to documents "introduced at the summary judgment stage" as they pertained to "the parties' direct claims and defenses in this litigation," and noting that "[t]ransparency and access to these documents is central to the integrity of these proceedings"); *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 2023 U.S. Dist. LEXIS 8010, at *30 (noting that weight of common law presumption of access "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts," and that "[a] significant presumption of access . . . exists for filings related to *Daubert* motions"). The first *Hubbard* factor, the need for public access, is more pronounced in any case where the Government is a party, *see, e.g.*, *All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d at 81, and it is especially compelling in the context of this unique, consequential litigation.

---

Dist. LEXIS 26546, at *17 (D. Md. Feb. 10, 2021). At least one court has even held that "*Daubert* motions are subject to the qualified First Amendment right of access," a more rigorous access standard than the common law right. *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, No. 14-mc-2542, 2023 U.S. Dist. LEXIS 8010, at *42 (S.D.N.Y. Jan. 17, 2023).

Moreover, to the extent any of the sealed material overlaps with the experts' testimony in open court, the third *Hubbard* factor (the extent of previous public access to the documents) also favors disclosure.

**VII.**   **The Court Should Unseal Dated Trial Exhibits**

In its prior motion, The Times sought access to two specific trial exhibits that had been sealed on dubious grounds, since they date to 2007 and relate to a version of an agreement between Apple and Google that has not been operative for more than a decade. Dkt. 731-1 at 9; Dkt. 739 at 1-3. Both exhibits were subsequently released. *See* Oct. 27, 2023, PM Tr. at 7610:1–7611:11. But their initial sealing raises the possibility that the parties have more broadly redacted material that is no longer sensitive given its age. *See also* Dkt. 694 at 3 (rejecting proposed redactions to summary judgment opinion for material related to 2005 agreement on the basis that "the passage of time likely has diminished any prejudice from disclosure"). The Times asks, accordingly, that the Court require the parties to justify sealing of trial exhibits that are now dated. The Times suggests that the Court limit this category to records more than ten years old as of the date of this motion, as these records largely (if not entirely) pre-date the operative agreements at issue in this case and contain information that would presumably be far less valuable and revealing for Google's current competitors. *See, e.g.*, *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 2023 U.S. Dist. LEXIS 8010, at *35 ("[T]he older the information is, the less appropriate it is to seal that information, particularly when the party does not explain with specificity why, despite the passage of time, the information should still be sealed.").

**VIII.** **The Court Should Provide the Public with Notice and Opportunity to Be Heard Before Closing the Courtroom for Closing Arguments**

The Times has received no indication that any of the parties intends to seek closure of the courtroom during closing arguments. But in the event such an application is made, The Times renews its request, which the Court granted for the duration of the trial, that the Court provide the public with notice and opportunity to be heard before rendering a decision.

**CONCLUSION**

For the foregoing reasons, the Court should grant The Times's motion for access to records that are sealed or have otherwise not been made publicly available.

Dated: January 19, 2024    Respectfully submitted,

/s/ *Al-Amyn Sumar*
Al-Amyn Sumar (#1614655)
David McCraw (#NY0200)
Dana R. Green (#1005174)
The New York Times Company
1627 I Street NW, Suite 700
Washington, DC 20006
Telephone: (646) 306-4201
Facsimile: (212) 556-4634
al-amyn.sumar@nytimes.com
mccraw@nytimes.com
dana.green@nytimes.com

*Counsel for The New York Times Company*