# Exhibit D

LAW OFFICES

WILLIAMS & CONNOLLY LLP

COLETTE CONNOR
(202) 434-5170
cconnor@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 31, 2023

<u>Via Email</u>

Karl Herrmann
U.S. Department of Justice
450 Fifth Street, NW
Washington, DC 20001
karl.herrmann@usdoj.gov

   Re: *United States, et al. v. Google LLC*, No. 20-cv-3010-APM (D.D.C.) & *State of Colorado, et al. v. Google LLC*, No. 20-cv-3715-APM (D.D.C.)

Dear Karl,

  I write in response to your letter of July 21, 2023 and further to our meet-and-confers of July 21 and July 27, 2023.

  As we have discussed with you, there are a number of serious issues with the approach DOJ Plaintiffs (hereinafter "Plaintiffs") have proposed for identifying sealable material in the Google documents included on the exhibit lists. Plaintiffs' proposal would result in significant and unwarranted harm to Google's competitive standing through the disclosure of its commercially sensitive information, and the proposal would also be nearly impossible to administer given the positions Plaintiffs have taken.

  At Plaintiffs' request, we reviewed the 30 "exemplar" trial exhibits that Plaintiffs identified and provided our position with respect to each of them. We have accepted your position regarding the unsealing in full or in part of seven of the exemplars (UPX099, UPX0140, UPX0178, UPX0251, UPX0452, UPX0465, UPX0483), and we understand that you have accepted our position regarding one document (UPX7002, which we understand you have agreed to seal based on the reference in your July 21 email to USDOJ-GOOG-00189260). With respect to the remaining exemplars, we have provided our position regarding the need to seal the exemplars in full or in part based on consideration of the contents of each document and the applicable case law. In addition, we answered your questions regarding the bases for seeking to seal particular exemplar documents during our July 27 meet-and-confer, and also described a process for dealing with the remainder of the exhibits during our July 21 and July 27 meet-and-confers.

WILLIAMS & CONNOLLY LLP

July 31, 2023
Page 2

You asked during the July 27 meet-and-confer that we describe our proposed process in writing and articulate general categories of information that merit sealing. We respond to both of your requests below.

I.     **Process for Identifying Sealed Exhibits and Preparing Redaction Versions**

As we discussed at the July 21 meet-and-confer, Google will undertake to categorize the Google-produced documents on the parties' exhibit lists into two categories based on whether they contain material that merits sealing or whether they may be unsealed in their entirety. That process requires either agreement of the parties or guidance from the Court on which categories potentially merit sealing, and at your request we have described further below the categories that will generally arise in this trial. We understand from our calls that you agree that it does not make sense for this categorization exercise to occur before we reach agreement or, failing that, receive Court guidance.

With respect to redactions: as we have previously explained, our position with regard to Plaintiffs' exemplars and the process more generally is informed by the fact that some documents are not susceptible to being redacted, and in some instances the parties' ability to conduct an examination in open court does not benefit from having a redacted version. In addition, DOJ Plaintiffs have identified nearly 1,400 Google-produced documents on their exhibit list, exceeding by many multiples the number of documents that Plaintiffs will actually be able to present via a witness at trial.[1] That said, for those documents that contain material that merits sealing but for which Plaintiffs believe that having a redacted version of the particular document would facilitate keeping the courtroom open during an examination or otherwise make their presentation more efficient, Google is willing to prepare a redacted version.

We proposed on our July 21 call that the DOJ Plaintiffs and Colorado Plaintiffs collectively identify a reasonable number of exhibits for which they request redacted versions. We proposed 50 exhibits in the first instance; you indicated that the number would need to be larger. To avoid dispute, we are willing to double that, to 100 documents. In addition, if Plaintiffs wish to seek redacted versions of a reasonable number of additional exhibits during trial as their plans change, we will of course accommodate that request as long as we are given adequate time to review the documents with our client to make an informed determination.

After trial, the parties can evaluate the extent to which it is necessary to revisit certain sealing determinations with knowledge of whether and how the documents were actually used.

---

[1] Colorado Plaintiffs have identified 569 Google-produced documents on their exhibit list.

WILLIAMS & CONNOLLY LLP®

July 31, 2023
Page 3

## II. Categories of Sealed Material

In response to your request during our July 27 meet-and-confer, we are briefly describing the recurring categories of information reflected in Google's documents that generally merit sealing.

### A. Confidential Contracts

Confidential contracts should remain sealed because Google's competitive standing in relation to competitors and counterparties would be unreasonably harmed by disclosure of a number of different types of provisions, including financial terms (such as a revenue share percentage or a provision specifying which queries qualify for a revenue share); the expiration or option dates of agreements; and the terms of substantive commitments that vary among counterparties. Exemplar documents in this category include, for example, UPX5308, UPX5314, UPX5336, and UPX5530.

Google generally seeks to seal these agreements rather than redact them because the provisions that Plaintiffs presumably would use in their examinations typically are the same ones that should be sealed. There is no benefit to redacting a commercially sensitive provision that Plaintiffs wish to ask a witness about while leaving unredacted, for example, a standard choice-of-law or indemnification clause that Plaintiffs have conceded is irrelevant (and thus would not be referring to during the trial). There is also no merit to Plaintiffs' misguided proposal to redact the irrelevant portions of each agreement while leaving numerous commercially sensitive provisions unredacted, as that burdensome exercise will do nothing to reduce the unnecessary harm to Google's competitive standing that the law guards against.

The parties may of course question witnesses about sealed agreements in open court by referencing particular provisions without revealing their specific terms and without displaying them on the screen that will be visible to members of the public. And consistent with the parties' prior practice, including at the summary judgment hearing, the parties may describe the general nature of the agreements (or purported characterizations of their general nature reflected in other documents). For example, in UPX0574, Google proposed redacting the slides at pages ending -968 and -969 because they reflect financial terms of particular agreements with specific counterparties, while it proposed leaving unredacted the slide at page ending -970 even though it purports to characterize confidential agreements because it does not contain information specific to a particular counterparty.

### B. Internal Discussions of a Negotiating Position or Potential Contract Terms

Confidential negotiating positions or contemplated deal terms should remain sealed, as should internal analyses of how to negotiate aspects of an agreement or how particular agreements or provisions might be evaluated financially. Google's competitive standing in relation to competitors and counterparties would be unreasonably harmed by disclosure of its

**WILLIAMS & CONNOLLY**LLP®

July 31, 2023
Page 4

internal deliberations about these strategic matters. Documents in this category include, for example, UPX0143.

On the other hand, Google generally is not seeking to seal statements regarding an intention to negotiate or analyze an agreement, or high-level characterizations of the contemplated structure of a relationship. In UPX0140, for example, Google agreed to unseal relatively recent confidential statements about an employee's "goal" with respect to a specific negotiation (see page ending -986) because the statements do not contain the same degree of specificity about proposals or provisions.

Plaintiffs' position that these deliberations do not merit sealing ignores the strategic sensitivities surrounding these materials. The fact that a document addresses terms that ultimately were not agreed to or a negotiation that happened several years ago does not diminish the significant effect disclosure of such internal analyses could have on future negotiations regarding these agreements.

    **C.**    **Non-public Algorithms and Techniques Used by Google**

Google seeks to seal descriptions of confidential algorithms, techniques, and designs used by Google, including in Search and Search Ads. Documents in this category include, by way of example, UPX0190, UPX0213, UPX0239, UPX0456, UPX0457, UPX0509, and UPX0806. Disclosure would harm Google's competitive standing in relation to competitors who cannot otherwise discern which techniques Google uses (or considered and decided not to use), and disclosure could also have a significant negative effect on Google Search and Google Search Ads by enabling malicious or strategic behavior that interferes with their ordinary operation.

Google generally seeks to seal rather than redact these documents because it is often not possible to determine what competitors already know or have tried. And of course the fact that there is some public-facing aspect of the product—such as a Google help page or an academic research paper about techniques that could be used in a search engine or ads auction—does not diminish the commercial sensitivity of non-public Google discussions and analyses.

As you know, Google is assessing each document individually and is by no means seeking to seal every confidential document relating to its Search or Search Ads products that Plaintiffs have included on their lists, as reflected in Google's offer to unseal UPX0178 and UPX0251.

    **D.**    **Consideration of Potential Changes to a Product or Assessments of a Competitor's Product Design or Strategic Options**

For many of the same reasons, Google's competitive standing would be unreasonably harmed if it were forced to disclose to competitors the changes Google has considered making to its own products or its assessment of the products or business strategies of other industry participants. Disclosure of the internal reasons that Google has chosen not to pursue certain

**WILLIAMS & CONNOLLY**LLP

July 31, 2023
Page 5

product designs or strategic options may provide just as much of an unfair advantage to competitors as knowing which non-public techniques Google has chosen to implement.  And disclosure of an internal evaluation of the strengths or weaknesses of another company's products or a potential response to its actions could of course give the company in question an unfair advantage in its own planning.  Documents within this category include, for example, UPX0002, UPX0058, UPX0148, UPX0749, UPX0794, UPX0811.

Again, Google is evaluating each document individually to determine whether the analysis is sufficiently dated or non-specific that the commercial sensitivity may have diminished, as evidenced by Google's offer to unseal UPX0099 and its willingness to agree to Plaintiffs' proposed redactions to UPX0483.

### E. Non-public Financial, Pricing, or Product Usage Data

Google should not be compelled to disclose confidential information regarding investments in and performance of products or business units, non-public data regarding how customers use its products, or internal assessments of the value employees have placed on business opportunities or product changes.  *E.g.*, UPX0143, UPX0456, UPX0457, UPX0486, and UPX0749.  This kind of information is routinely sealed because of the way in which disclosure unfairly benefits competitors in making their own strategic decisions about where and how to invest.

As with every other category addressed above, Google is considering each document individually and generally is not seeking to seal confidential statements by Google employees about publicly available financial information or general economic concepts.  We note, for example, Google's willingness to unseal UPX0452 and its offer to unredact page ending -978 of UPX0170 even though much of the document contains information that merits sealing.

* * *

Please advise whether Plaintiffs are amenable to the process outlined above.  In addition, please advise whether Plaintiffs are willing to reconsider their position on any of the exemplar documents in light of our explanations above.  If Plaintiffs are not, we will need to seek the Court's guidance on these matters at the August 11 hearing.

Sincerely,

*/s/ Colette Connor*
Colette Connor