IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                            Plaintiffs,<br><br> v.<br><br>Google LLC,<br><br>                            Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>                            Plaintiffs,<br><br> v.<br><br>Google LLC,<br><br>                            Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT'S RESPONSE TO THE NEW YORK TIMES COMPANY'S
<u>MOTION FOR ACCESS TO JUDICIAL RECORDS</u>**

As the New York Times' Motion for Access to Judicial Records concedes, the Court has taken numerous significant steps to ensure public access in this case. *See, e.g.*, Br. at 2 (describing the process for promptly distributing to the press portions of exhibits used with witnesses at trial); *id.* at 3-4 (referencing examples of sealing determinations resolved "largely in favor of public access"). Consistent with that commitment, almost every day of the 10-week trial involved the public disclosure of Google's formerly confidential business and technical information. All of the trial testimony by the parties' experts and the overwhelming majority of trial testimony by Google employees is publicly accessible, with the only exceptions consisting of a limited number of targeted redactions to trade secrets and other commercially sensitive details identified by the Court after a careful line-by-line review of the trial transcripts. Moreover, the applicable portions of hundreds of Google-produced documents have been published online or otherwise distributed to the press in accordance with the Court's orders on posting trial materials. Looking forward, Google has proposed that the parties structure closing arguments to ensure they remain open to the public while also providing for the public posting or distribution to the press of applicable portions of visual presentations and exhibits used at closing argument. *See* Jan. 26, 2024 Joint Status Rep. (ECF 808) at 10-11. And in proposing any necessary redactions to the parties' post-trial submissions and materials used at closing arguments, Google will continue to apply the Court's guidance regarding sealing.

While Google's efforts and commitments regarding public access resolve certain aspects of the Times' Motion as they relate to Google, the Motion also seeks several forms of relief that Google respectfully submits should be denied. In particular, (1) there is presently no need to reconsider redactions to the six agreements identified by the Times (Br. at 8-10); (2) no further order is required in response to the Times' contentions regarding information subsequently

released in another case (*id.* at 12-14); (3) all deposition designations that should have been released are already available to the public (*id.* at 14-15); (4) the expert reports and summaries requested by the Times are not subject to public access (*id.* at 15-17); and (5) no relief is warranted with regard to trial exhibits that the Times characterizes as "dated" (*id.* at 17).

1.  **The 2016 ISA and Other Agreements Specified in the Motion**

Google respectfully requests that the Court deny the Times' request for further unsealing of the six agreements identified in its brief. *See* Br. at 8-10.[1] Google has detailed the commercial sensitivity of these negotiated agreements on a number of occasions, including in filings and exchanges with the Court before and during trial. *See, e.g.*, Google's Resp. to DOJ's Submission Re. JX0024 & JX0033 (ECF 769) (addressing the unsealing of additional provisions of the Apple agreements identified in the Times' filing); Daly Decl. (ECF 740-4) ¶¶ 5-6 (addressing the 2016 Apple agreement); Lee Decl. (ECF 734-3) ¶¶ 5-8 (addressing the Samsung and AT&T agreements identified in the Times' filings). The parties and the Court considered the extent to which the terms of these agreements should be redacted at the pre-trial hearing regarding confidentiality. *See* Aug. 11, 2023 Hr'g Tr. at 18:2-10 (observing that these "are lengthy contracts in certain cases in which it may be that only a few clauses are really pertinent here," such that there are "clauses that have nothing to do with the disputed evidence in the case that have the potential of compromising trade secrets or competitive interests"); *id.* at 41:9-44:10 (addressing arguments from a non-party wireless carrier regarding the "competitively sensitive terms" of its RSA, including in relation to the non-party's "own competitors in the market"). The parties and the Court then revaluated the redaction of particular provisions throughout trial. With

---

[1] Two of the agreements are with Apple, two with Samsung, one with Motorola, and one with AT&T.

respect to the two Apple agreements identified by the Times, for example, the Court evaluated redaction proposals from Plaintiffs, Google, and Apple as recently as the final week of trial. *See* Nov. 14, 2023 Trial Tr. at 10214:23-10219:2 (ordering the unsealing of certain provisions of the 2014 and 2016 agreements, but concluding with respect to another provision of the 2016 agreement that the Times seeks to unseal that "the public interest in learning about these specifics" does not "outweigh[] the potential prejudice to both Google and Apple").

This is not an instance where "the disclosures at trial … undermine the claim that the degree of sealing of the 2016 ISA and other contracts is justified." Br. at 10. As indicated, the Court addressed this point in the context of the very agreement cited by the Times when it unsealed some but not all of the provisions at issue based in part on disclosures at trial. *See* Nov. 14, 2023 Trial Tr. at 10214:23-10219:2. The fact that the public has received access to a significant amount of commercially sensitive information does not increase the need for other information about the agreements, even when it appears in the same document. *See, e.g.*, *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 119 (D.C. Cir. 2021) (explaining that "the proper inquiry is whether the public needs to access the remaining information redacted from" the record at issue); Aug. 11, 2023 Hr'g Tr. at 18:2-10. To the contrary, the extensive disclosures that have already occurred can heighten the prejudice that would result from unjustifiably offering competitors an even more comprehensive view when negotiating their own confidential agreements with these same four counterparties. *See, e.g.*, Daly Decl. (ECF 740-4) ¶¶ 5-6; Lee Decl. (ECF 734-3) ¶¶ 5-8.

There is no basis at this time to reconsider the redactions to the six agreements at issue, which reflect a reasonable balance of the pertinent factors. As Google has previously indicated, however, to the extent that the balance is affected by the Court's final ruling, Google will

3

reevaluate the redactions in light of that additional information and further guidance from the Court. *See, e.g.*, Aug. 11, 2023 Hr'g Tr. 14:19-24 (describing the "continuum" of "the public's need for access," which is "at its apex when the Court is actually citing a document in a memorandum opinion").

### 2. Exhibits That Purportedly Contain Information Already Released

The Times' brief identifies two distinct categories of exhibits that purportedly contain information that has already been publicly released. The first such category is a list of six documents that were subsequently disclosed in a trial involving different factual and legal issues with redactions that differ in some instances from the ones previously applied in this case. *See* Br. at 12-13. No further action is necessary on this front, as the Times has access to the documents in question, and going forward Google does not intend to use a more heavily redacted version of a document that was subsequently disclosed to the public in a different case.

The second category consists of eight additional documents (six of which were produced by Google) that the Times contends were discussed in open court. *See* Br. at 13. Portions of one of those documents (UPX6024) were used by Plaintiffs to cross-examine a witness, though it was not among the exhibits identified for Google to review for confidentiality before or during trial. Google will review the applicable portions, apply any redactions that are warranted under the governing standards, and provide the document to the designated press representative. *See* Supp. Order on Posting of Trial Materials (ECF 750) at 1-2. Google has not been able to identify any record of the other five Google-produced documents identified in the Times' brief as having been used with a witness at trial, *id.* at 1, but it has proposed a further process for public dissemination of materials including the parties' post-trial submissions and portions of exhibits used at closing argument, *see* Jan. 26, 2024 Joint Status Rep. (ECF 808) at 10-11, 14-15.

### 3. The Deposition Designations Referenced by The New York Times

At least a portion of the Times' request for certain deposition testimony has already been resolved. As part of Google's case-in-chief, it played in open court excerpts of the videotaped depositions of five witnesses and then filed the corresponding transcripts on the public docket on November 3, 2023 at ECF 757 (for Mr. Christensen and Ms. Baker) and November 10, 2023 at ECF 772 (for Mr. Giard, Mr. Levy, and Mr. Ezell). Plaintiffs did not play any deposition testimony in their cases and therefore did not file any transcripts.[2]

To the extent that the Times' request extends to deposition designations that were not played for the Court, Google has already proposed that Google and all applicable non-parties review the portions of designated deposition testimony that are quoted or characterized on the face of the voluminous post-trial submissions, used by the parties in their closing arguments, or cited in the Court's ruling. *See* Jan. 26, 2024 Joint Status Rep. (ECF 808) at 13-14. Any redactions to this limited testimony will be applied only to specific portions that warrant sealing under the applicable standards. *See id.*

Plaintiffs likewise have not proposed unsealing any deposition designations "that were not cited in the Parties' Post-Trial Submissions, closing arguments, or the Court's final opinion on the merits." Pls.' Proposed Confidentiality Mgmt. Order (ECF 808-1) at 3. And even were a deposition designation not played in court or cited for any purpose somehow subject to a presumption of access, there would be no sound basis for disclosure of unused designations, particularly in a bench trial where there is no screening of designations based on length, relevance, or any other ground. *See, e.g.*, *Hubbard*, 650 F.2d at 321 (emphasizing, among other

---

[2] The parties also disclosed on the public docket the list of individuals whose deposition testimony they designated. *See* ECF 775 (Google's notice); ECF 780 (DOJ Plaintiffs' notice); ECF 785 (Plaintiff States' notice); ECF 786 (joint notice).

things, that the records sought "were not used in the subsequent 'trial'; nor were they described or even expressly relied upon by the trial judge in his decision on the suppression motion"); Aug. 11, 2023 Hr'g Tr. at 16:13-17:12 (explaining that "[t]he purpose for which the evidence is being admitted at trial … may be the most significant consideration" and observing with respect to exhibits that there "are two fundamentally different categories of exhibits" in a case with "hundreds and hundreds of exhibits just pushed into evidence"). In any event, trial courts certainly have discretion to draw reasonable distinctions in managing large volumes of unused designations given their "refus[al] to permit their files to serve … as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see, e.g.*, *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1341 (D.C. Cir. 1985) (describing the need "to accord the district judge a reasonable degree of discretion" in managing large volumes of confidential material while adding that "the difficulties encountered in the present case are as nothing compared with those that a major antitrust trial would present").[3]

---

[3] *See, e.g.*, *FTC v. Sysco Corp.*, No. 1:15-cv-256, ECF 206 at 3 (noting that "throughout the Memorandum Opinion, the court cited to deposition testimony," and "[a]lthough the cited excerpts are presumptively available to the public, the same is not true of the remainder of the transcript, which may contain sensitive business information"); *SMD Software, Inc. v. EMove, Inc.*, 2013 WL 1091054, at *6 (E.D.N.C. Mar. 15, 2013) (sealing "full transcripts of depositions … [w]here not all of the information in these complete transcripts is directly relevant to the court's evaluation of the pending motions," while noting "that should [the Court] rely in its decisional process upon portions of these transcripts which are not filed elsewhere as excerpts, it will re-examine whether there is a need to publicly file those portions in light of the public's interest in accessing them"); *Sandeen v. Paul Revere Life Ins.*, 2022 WL 2448275, at *5 (E.D. Tenn. Mar. 7, 2022) (precluding Plaintiff from filing "portions of [a] deposition designated … as confidential which are not specifically cited by Plaintiff").

### 4. The Request Regarding Certain Expert Reports and Summaries

The Court should deny the Times' request for copies of five experts' reports and summaries of those reports. *See* Br. at 15-17. It is undisputed that "these reports and summaries are not evidence and were not admitted as part of the trial record, and the Court has made clear that the focus of its decision-making will not include these expert reports and summaries." Jan. 26, 2024 Joint Status Rep. (ECF 808) at 19; *see, e.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctr. of Am.*, 474 F. Supp. 2d 75, 81 (D.D.C. 2007) (explaining that "the Rule 26(a)(2) expert disclosure is neither testimony nor a pleading," and "[a]n expert report is not meant to be admissible as evidence"). A number of the reports requested by the Times were never filed on the docket, and even those that were filed as exhibits to pre-trial motions or otherwise provided to the Court (in full or in summary form) are not automatically subject to a presumption of access, particularly in light of their role in the proceedings (or lack thereof). *See, e.g.*, *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3-4 (D.C. Cir. 2013) ("[T]hough filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite.").[4]

The Times' request cannot be justified by any role that certain expert reports may have played in the parties' arguments regarding summary judgment or *Daubert* motions. The reports are voluminous and full of commercially sensitive Google and non-party information that is

---

[4] *See, e.g.*, *NuVasive, Inc. v. Kormanis*, 2019 WL 9633643, at *1 (M.D.N.C. Apr. 12, 2019) ("Documents that are not considered by a court in adjudicating the underlying motion are not judicial records and thus are not subject to a public right of access."); *Hall v. Cnty. of Fresno*, 2016 WL 374550, at *10 (E.D. Cal. Feb. 1, 2016) ("[T]he public's interest in understanding this litigation and its underlying issues will not be meaningfully hampered or harmed by keeping the expert reports under seal."); *see also Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 167-68 (2d Cir. 2013) (rejecting argument that the public had a First Amendment right to access an internal affairs investigation report where "the Report did not need to be, and was not, entered into evidence, nor did the court rely on any portion of the Report that was not testified about in open court").

often intertwined in ways that would make it impracticable, if not impossible, for each affected non-party to even examine the portions it is permitted to view for the purpose of identifying necessary redactions. The summary judgment and *Daubert* motions, by contrast, involved discrete arguments and issues that, at most, addressed only specific excerpts that made up a very small fraction of the reports. And even if there were a presumption of access to those specific excerpts stemming from the pre-trial filings, that would not justify unsealing the underlying passages of the reports in light of the extensive public argument and testimony that has already occurred.[5]

### 5. The Request Regarding Records Created More Than 10 Years Ago

Finally, the Court should deny the Times' request relating to trial exhibits that are more than 10 years old. *See* Br. at 17. Google accounted for the age of the information at issue in specifying redactions to materials used at trial, and it will continue to do so going forward in connection with the parties' post-trial submissions and closing arguments.[6]

As Google has previously explained, however, the records produced by Google and certain non-parties in this case are full of proprietary technical information and other details that are quintessential trade secrets, which by their nature do not have a fixed expiration date. *See, e.g.*, Oct. 18, 2023 Trial Tr. 6477:13-6478-17 (describing the sealing of "particular inputs"

---

[5] *See, e.g.*, *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, 2019 WL 3778090, at *6, 31 (W.D. Pa. May 31, 2019) (evaluating only the specific pages of exhibits cited in Plaintiff's briefing "[f]or the purposes of making sealing recommendations" where "the[] two exhibits were over 600 pages and Plaintiff had cited only nine of those pages in its briefs"); *Smithkline Beecham Corp. v. Abbott Labs.*, 2017 WL 11552659, at *5-6 (M.D.N.C. Mar. 7, 2017) (sealing excerpts of expert reports attached to motion papers where the "brief has been publicly filed with narrow redactions," which is "a reasonable alternative").

[6] The only confidentiality redactions applied to the two exhibits from 2007 referenced in the Times' brief were to revenue share percentages and other financial terms, which were then removed following the Court's ruling on the issue, and have been publicly accessible since.

8

relating to Google Search that "were more aligned with trade secrets that, if disclosed, could result in competitive harm"); Oct. 4, 2023 Trial Tr. at 4366:16-23 (concluding that "trade secrets of Apple … will remain under seal"). With respect to search engines and ads auctions in particular, the disclosure of proprietary techniques can lead to significant harm even if they are older or no longer of primary importance because these systems face constant pressure from actors who attempt to "game" them based on assumptions about how they might operate behind the scenes. *See, e.g.*, Simon Decl. (ECF 740-2) ¶¶ 5-6 (explaining why the disclosure of search ranking techniques can diminish the usefulness of Google Search to the detriment of Google and its users); Zwibelman Decl. (ECF 740-3) ¶ 11 (explaining why the disclosure of ads auction techniques can lead to conduct detrimental to Google and its advertising customers). Even outside the realm of technical subject matter, the records produced by Google and non-parties include confidential contract terms and related materials from years ago that remain in effect and retain a high degree of commercial sensitivity. *See, e.g.*, *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."). Google respectfully requests that the Court deny the request for any further relief relating to trial exhibits that are more than 10 years old.

Dated: February 2, 2024

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024

Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*