**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**PLAINTIFF STATES' RESPONSIVE PROPOSED CONCLUSIONS OF LAW**

**REDACTED**

## <u>TABLE OF CONTENTS</u>

I.      The Recent Decision in *FTC v. IQVIA* Demonstrates Why General Search Advertising is a Relevant Product Market ............................................................................................1

II.     Google's SA360 Conduct Harms Competition....................................................................4

III.    The "Refusal to Deal" Doctrine Does Not Apply To Google's SA360 Conduct ...............4

IV.     Google's Distribution Contracts Harm Competition by Raising Rivals' Costs to Enter Into SVP Content Partnerships ...........................................................................................8

V.      Google's Quality Advantage Arises from Its Anticompetitive Conduct and Thus Cannot Qualify as a Procompetitive Justification............................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016) ................................. 5

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ...................................................... 3

*Covad Comm. Co. v. Bell Atlantic Corp.*, 398 F.3d 666 (D.C. Cir. 2005) ............................... 5, 6

*Fotobom, Inc. v. Google LLC*, No. 22-cv-00712, Dkt. 27 (D.D.C. Feb. 27, 2024). ..................... 8

*FTC v. Indiana Fed. of Dentists*, 476 U.S. 447 (1996) ...................................................... 10

*FTC v. IQVIA Holdings Inc.*, No. 23-cv-06188, 2024 WL 81232 (S.D.N.Y. Jan. 8, 2024)... 1, 2, 3

*FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ............................................................ 5

*FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27 (D.D.C. 2018) ............................ 3

*Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023) ......................................................... 4

*McWane, Inc. v. FTC*, 783 F.3d 814 (11th Cir. 2015) ..................................................... 3, 8

*Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc.*, 919 F.2d 1517
    (11th Cir. 1990) ........................................................................................ 5

*Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679 (1978) ...................................... 10

*NCAA v. Alston*, 594 U.S. 69 (2021) ......................................................................... 9

*New York v. Facebook, Inc.*, 549 F. Supp. 3d 6 (D.D.C. 2021) ........................................... 7

*New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) ....................................... 5

*Nobody in Particular Presents, Inc. v. Clear Channel Comm., Inc.*, 311 F. Supp. 2d 1048
    (D. Colo. 2004) ........................................................................................ 3

*Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013) ..................................... 5, 6, 7

*Pacific Bell Telephone Co. v. linkLine Comm., Inc.*, 555 U.S. 438 (2009) .............................. 5

*United States v. Anthem, Inc.*, 855 F.3d 345 (D.C. Cir. 2017) ........................................... 10

*United States v. Bazaarvoice, Inc.*, No. 13-cv-133, 2014 WL 203966 (N.D. Cal. Jan. 8, 2014) ... 2

*United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36 (D.D.C. 2011) ................................... 4

*United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001) .............................................................. 8

*United States v. Sungard Data Sys., Inc.*, 172 F. Supp. 2d 172 (D.D.C. 2001) ............................. 3

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ............ 5, 6

*Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020) .......................................... 7, 8, 10

*Wilk v. Amer. Medical Ass'n*, 895 F.2d 352 (7th Cir. 1990) ......................................................... 10

**Other Authorities**

Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their
  Application ¶ 1435h (Fifth Ed. 2023) ...................................................................................... 10

I.    **The Recent Decision in *FTC v. IQVIA* Demonstrates Why General Search Advertising is a Relevant Product Market**

1.      General search advertising is a relevant product market because general search ads serve a unique function and have distinct features, purchasing methods, and prices.  States Br. 7-17; SFOF ¶¶ 1-65.[1]  The recent decision in *FTC v. IQVIA Holdings Inc.*, No. 23-cv-06188, 2024 WL 81232 (S.D.N.Y. Jan. 8, 2024) ("*IQVIA*"), addressed these same factors in a similar product market for a distinct type of digital advertising, illustrating why Google is wrong to characterize general search advertising as "too narrow" a relevant market.  GCOL ¶¶ 19, 25-26.

2.      In *IQVIA*, the FTC challenged a proposed merger of two leading platforms for purchasing healthcare professional ("HCP") programmatic advertising, which are display ads targeted to HCPs.  *IQVIA* at *1, *3.  A central dispute was whether HCP programmatic advertising was a relevant product market (as the FTC argued) or whether (as defendants argued) the FTC improperly excluded other types of digital ads that reach HCPs, such as social media ads, display ads on healthcare websites like WebMD (called "endemic website ads"), and Google display ads.  *Id.* at *12, *17-18.

3.      The *IQVIA* court held that "HCP programmatic advertising is a relevant product market" because "social media and endemic websites—and Google [display ads]—are not reasonably interchangeable alternatives."  *Id.* at *24.  In that case, as here, Dr. Israel testified that the proposed digital ad markets were "overly narrow and define[] away important competition."

---

[1] "SFOF" refers to Plaintiff States' Proposed Findings of Fact (Dkt. 825), "JFOF" refers to Plaintiffs' Proposed Findings of Fact (Dkt. 822), "GFOF" refers to Google's Proposed Findings of Fact (Dkt. 828), "SRFOF" refers to Plaintiff States' Responsive Proposed Findings of Fact, and "JRFOF" refers to Plaintiffs' Proposed Responsive Findings of Fact.  "States Br." refers to Plaintiff States' Post-Trial Brief (Dkt. 823), "Joint Br." refers to Plaintiffs' Post-Trial Brief (Dkt. 820), and "Google Br." refers to Google's Post-Trial Brief (Dkt. 826).  "GCOL" refers to Google's Proposed Conclusions of Law (Dkt. 827) and "SCOL" refers to Plaintiff States' Proposed Conclusions of Law (Dkt. 824).

*Compare id.* at \*27 *with* Tr. 8378:14-8380:2 (Israel) (opining that "plaintiffs define away what is actually the strongest and very strong competition that Google faces").  The *IQVIA* court concluded that it did "not find Dr. Israel's conception of the market persuasive." *IQVIA* at \*31.

4.     The *IQVIA* court rejected Google's principal argument here, *i.e.*, that different kinds of ads are substitutes because advertisers move portions of their budget between those different kinds of ads to maximize their overall return on investment.  GCOL ¶¶ 20-24.  The court explained: "the fact that an agency might shift money around during a campaign does not establish that these alternative channels are substitutes for the distinct features that programmatic advertising provides." *IQVIA* at \*17.  Like the *IQVIA* defendants, Google ignores the established rule that it is "improper to group complementary goods into the same relevant market just because they occasionally substitute for one another." *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 31 (D.D.C. 2015).  As the *IQVIA* court explained, "the fact that many companies are competing in a broad market for advertising dollars does not prove that the FTC's proposed market here is unduly narrow." *IQVIA* at \*22.

5.     Here, like in *IQVIA*, advertisers buy different, complementary ad types and sometimes shift money between them as part of an "overall advertising strategy" with complementary "components." *Id.*; SFOF ¶¶ 24-32; JFOF ¶¶ 407-12, 488-92; *see also United States v. Bazaarvoice, Inc.*, No. 13-cv-133, 2014 WL 203966, at \*24 (N.D. Cal. Jan. 8, 2014). Both in *IQVIA* and here, advertisers testified that they would not "take their business to [alternate ad channels] in response to a price increase" of as much as five percent.  *IQVIA* at \* 17; SFOF ¶ 9; SRFOF ¶¶ 6-8; JFOF ¶ 498.  That shows that advertisers do not substitute general search ads for any other ad type in response to a "small but significant and non-transitory increase in price," which "is usually defined as five percent or more." *FTC v. Wilh. Wilhelmsen Holding ASA*, 341

2

F. Supp. 3d 27, 47 (D.D.C. 2018); *see also* SCOL ¶ 8.

6.  *IQVIA*'s conclusions were also supported by the *Brown Shoe* "practical indicia," which are equally relevant here.  370 U.S. 294, 325 (1962).  Both HCP programmatic ads and general search ads: (i) have distinct characteristics and uses, *compare IQVIA* at *14-19 *with* States Br. 9-14; (ii) are unlike ads that appear on "walled garden" websites (like Amazon, Walmart, or other SVPs), *compare IQVIA* at *15 *with* Tr. 3858:4-21 (Lowcock) & States Br. 15; (iii) are purchased by advertisers with "separate budget[s]" and separate "teams within ad agencies and brands," *compare IQVIA* at *19 *with* SFOF ¶¶ 12-13; (iv) have unique importance to customers, *compare IQVIA* at *17-18 (describing functional limits of Google display ads) *with* SFOF ¶¶ 8, 11, 26-27, 40-43, 46-48 (describing reasons why advertisers cannot use SVP search ads) [2]; and (v) have distinct pricing, *compare IQVIA* at *23 *with* States Br. 16-18.

7.  In reaching its conclusions, the *IQVIA* court relied heavily on testimony from ad agencies because, as buyers of ads, their expenditures are tangible evidence of market behavior. *Id.* at *15, *17, *19; SCOL ¶ 9.  Plaintiff States likewise rely principally on testimony from ad buyers.  SFOF ¶¶ 22-29, 32, 35-38, 40-41, 44-65.  Google responds mainly by citing self-serving testimony from its employees and its expert, and its minimal citation to advertiser testimony confirms that advertisers view different ad formats as complements serving distinct purposes. SRFOF ¶ 2.  For these reasons, general search ads is a properly defined relevant market. [3]

---

[2] *See also United States v. Sungard Data Sys., Inc.*, 172 F. Supp. 2d 172, 191-92 (D.D.C. 2001); *Sysco*, 113 F. Supp. 3d at 29 (distinguishing different products that "simply cannot and do not serve as wide an array of customers").

[3] Contrary to Google's suggestion (GCOL ¶ 22), an econometric study is not required to define a relevant market.  *McWane, Inc. v. FTC*, 783 F.3d 814, 829-30 (11th Cir. 2015); *Nobody in Particular Presents, Inc. v. Clear Channel Comm., Inc.*, 311 F. Supp. 2d 1048, 1082 (D. Colo. 2004) ("a plaintiff may, through sufficient evidence of other indicia of market definition, define a relevant market without economic study of cross-elasticity of demand") (collecting cases).

## II.   Google's SA360 Conduct Harms Competition

8.      Google's delayed support for Microsoft Ads features on SA360 have and continue
to cause significant anticompetitive harm.  SFOF ¶¶ 256-80; SRFOF ¶¶ 42-59.  As the Court
delineated at summary judgment, Google engaged in actionable "delay [that] was intended to
harm competition," not "mere transitory delay."  Dkt. 624 at 57; *see also Illumina, Inc. v. FTC*,
88 F.4th 1036, 1053 (5th Cir. 2023) (anticompetitive conduct can include "late deliveries" (as
opposed to not delivering at all) and "subtly reducing the level of support services" (as opposed
to significantly reducing or eliminating the services); *United States v. H&R Block, Inc.*, 833 F.
Supp. 2d 36, 82 (D.D.C. 2011) (harm to competition includes "limit[ing] the functionality" of
rival's product and "reserving special features or innovations" for defendant's own products).

9.      It is proper for the Court to consider the combined impact of the harm caused by
Google's distribution contracts and its operation of SA360.  Consist with *Microsoft*, the Court
can "aggregate conduct that is itself deemed anticompetitive (even if minimally so)."  Dkt. 624 at
26; JCOL at 26-27; JRCOL at 10-11.  Google's SA360 conduct caused significant, independent
harm to customers, competitors, and the competitive process, all enabled by Google's
longstanding monopoly power.  SFOF ¶¶ 256-80; SRFOF ¶¶ 42-59.

## III.   The "Refusal to Deal" Doctrine Does Not Apply To Google's SA360 Conduct

10.     Dealing with rivals is the premise of SA360.  Cross-platform support is SA360's
central value, which is why Google promises to operate it as a "neutral" platform for advertising
on Google and on rival general search engines ("GSEs").  SFOF ¶ 149.  As Mr. Ramaswamy of
Neeva explained, there is an obvious conflict of interest between selling Google ads on the one
hand and operating SA360 as a platform that supports Google's competitors.  *Id.*; GFOF ¶ 1752.
Google nonetheless argues that its SA360 conduct is immune from antitrust scrutiny because its
conduct should be understood as a "refusal to deal."  Google Br. 97.

4

11.     In fact, Google never refused to deal and has consistently asserted that it never refused to develop any Microsoft Ads features.  At summary judgment, Google told the Court that "Google did not refuse to build the Microsoft Advertising features at issue."  Dkt. 427 at 42.  And in its Post-Trial Brief, Google asserts that its "conduct … was delayed dealing, not a refusal to deal."  Google Br. 109.  Google also entered into a dispute-resolution process with Microsoft focused on specific Microsoft Ads features and, even while continuing to delay support in 2020, continued to assert its willingness to someday support the specific features at issue.  SFOF ¶¶ 233-35.

12.     Google relies on cases that are different, in which a monopolist either never supplied the relevant product to the third party, had ceased supplying the product, or was forced by law to supply the product.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004) (Verizon had not "voluntarily engaged in a course of dealing with its rivals" and was not alleged to "ever have done so absent statutory compulsion"); *Pacific Bell Telephone Co. v. linkLine Comm., Inc.*, 555 U.S. 438, 450 (2009) (same); *Covad Comm. Co. v. Bell Atlantic Corp.*, 398 F.3d 666, 673 (D.C. Cir. 2005) (same); *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 305-06 (D.C. Cir. 2023) (Facebook "forbid" use of its platform by certain new apps and "banned" certain existing apps); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1068-69 (10th Cir. 2013) (Microsoft ceased dealing with Novell in the provision of key APIs); *FTC v. Qualcomm*, 969 F.3d 974, 994 (9th Cir. 2020) (Qualcomm "ceased" prior dealing providing licenses to rival chip suppliers); *Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc.*, 919 F.2d 1517, 1519 (11th Cir. 1990) (Barclays consistently refused to deal with plaintiff).[4]

---

[4] Google also cites *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016).

13.    The factors discussed in *Trinko* and its progeny are thus inapt, inapplicable, and unenlightening.  *Trinko* itself distinguished circumstances in which "the defendant was already in the business of providing a service to certain customers … and refused to supply the same service to other customers."  540 U.S. at 410.  By contrast, in *Trinko*, "the services allegedly withheld are not otherwise marketed or available to the public."  *Id*.  All of the cases cited by Google show that a challenge to harm inflicted through a voluntary, ongoing course of dealing does not implicate the principle that companies are generally free to determine with whom they deal.  *Trinko*, 540 U.S. 585 at 408; *Covad*, 398 F.3d at 675.  That is undeniably true here since Google's dealings with Microsoft through the operation of SA360 are voluntary and ongoing.

14.    In other words, Google's analysis avoids the initial inquiry: is there, in fact, any kind of refusal to deal that would require this Court to consider factors justifying an exception to *Trinko*?  Google Br. 99-100.  There is not.  Indeed, Google does not cite any case (nor are Plaintiff States aware of any case) in which a court applied the "refusal to deal" doctrine to circumstances where, as here, the very product or service supplied by the monopolist exists precisely to support a competitor's access to the marketplace.

15.    The harm to competition here arises from dealing, not refusing to deal.  Google decided to directly disadvantage its own advertiser-customers as a means of discouraging their use of rival GSEs.  Google consistently and constantly deals with the advertisers that are harmed by Google's operation of SA360—and it is that harm that allows Google to protect its advertising monopolies.  *See Novell*, 731 F.3d at 1072 (distinguishing conduct "involv[ing] some

---

There, the plaintiff asserted that the defendant had refused to deal with it in order to invoke *Aspen Skiing*.  In rejecting that assertion the court began with the simple fact that the plaintiff could not show a "refusal to deal" because there had not been a refusal.  *Id.* at 1183.  Here, Plaintiff States do not allege a refusal to deal and do not invoke *Aspen Skiing*.  Ultimately, the *Aerotec* court looked past the claimed refusal and evaluated whether plaintiffs had shown harm to competition, which is exactly what Plaintiff States submit the Court should do here.  *Id.*

assay by the monopolist into the marketplace—to limit the abilities of third parties to deal with rivals" to which the "refusal to deal" analysis does not apply). Here, Google's operation of SA360 directly and severely "limit[s] the abilities of [advertisers] to deal with [Google's GSE] rivals." *Id.*; SRFOF ¶¶ 57-59 ████████████████████████████████ ████████ *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 32 (D.D.C. 2021) (a "refusal to deal" claim is premised on "unilateral conduct that involves only the monopolist's competitors").

16.      Google posits two further arguments in trying to avoid liability for its SA360 conduct. *First*, Google claims that Plaintiff States assert that "the mere fact that Google offers SA360 as a cross-search engine advertising tool to advertisers creates an obligation for Google to build all of the features Microsoft (and other rivals) want, on their timetable, and regardless of legitimate business considerations." Google Br. 102. Not so. Plaintiff States contend that Google—as both a longstanding monopolist in search ad markets and the owner of the principal tool to place its own search ads and rival search ads in those markets—may not operate that tool to harm competition. The record demonstrates that Google consistently operates SA360 with degraded support for rival GSEs, having delayed support features for Microsoft Ads that are beneficial to SA360's customers, beyond all reasonable timetables (including Google's own), without any legitimate business rationales, and with the intent to harm competition. SRFOF ¶¶ 22-62.

17.      *Second*, Google argues it cannot be liable for its anticompetitive conduct because any ruling in favor of Plaintiff States would inevitably require the Court to engage in "central planning" for which it is "ill suited." Google Br. 102. That is an attempt to use the prospect of a remedies phase to defeat a liability verdict, which was expressly rejected in *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 480 (7th Cir. 2020). There, the plaintiff, an ad seller, alleged that

Comcast used its monopoly power in a market for one type of advertising services to force its smaller retail cable television competitors to stop doing business with the plaintiff in the market for a different type of advertising services.  *Id.* at 434.  Like Google, Comcast argued that it should prevail on liability because any remedy would require the court to act as a "central planner[]." *Id.* at 480.

18.     The Seventh Circuit emphatically rejected Comcast's argument because it "puts the cart before the horse." *Id.*  The court explained: "If Comcast is found liable, the district court will then face a decision about appropriate remedies.  That will be the time to face the practical problems Comcast hypothesizes." *Id.*  Such reasoning is particularly applicable here since the Court bifurcated adjudication of liability and remedy.  Only after its liability ruling should the Court entertain Google's arguments as to the administrability of proposed remedies.

## IV.    Google's Distribution Contracts Harm Competition by Raising Rivals' Costs to Enter Into SVP Content Partnerships

19.     Google's distribution contracts deprive GSE rivals of the scale they need to improve their quality.  JFOF ¶¶ 985-1066.  Limited user scale in turn makes Google's rivals less attractive partners for SVPs, causing Google's rivals to incur greater costs to enter into competitively-important partnerships.  SFOF ¶¶ 285-301; SRFOF ¶¶ 63-71.

20.     Harm to competition premised on raising rivals' costs is well established.  *See McWane*, 783 F.3d at 832; *Viamedia*, 951 F.3d at 448-49; *United States v. Microsoft*, 253 F.3d 34, 102 (D.C. Cir. 2001).  The Court's recent decision in *Fotobom, Inc. v. Google LLC*, No. 22-cv-00712, recognized the type of harm alleged here.  There, this Court granted Google's motion to dismiss due in part to plaintiff's failure to plead harm to competition, explaining that plaintiff had not alleged "that increased use of its technology would enable other search engines to better compete with Google." *Id.* Dkt. 27 at 14.  That is what Plaintiffs alleged and proved here:

greater use of SVP content by Bing and other rival GSEs would allow them to improve their results pages and better compete with Google.

**V.**  **Google's Quality Advantage Arises from Its Anticompetitive Conduct and Thus Cannot Qualify as a Procompetitive Justification**

21.   Google's argument that its superior search quality qualifies as a procompetitive justification fails as a matter of law.  *See* Google Br. 49.  The quality benefits that Google attributes to the challenged distribution contracts do not result from a healthy, competitive market, but rather from the contracts' harm to competition itself through an enduring scale gap. *See NCAA v. Alston*, 594 U.S. 69, 101 (2021) (a firm cannot "relabel a restraint as a product feature and declare it immune from § 1 scrutiny") (internal citation omitted).

22.   Google argues that even if its distribution contracts caused anticompetitive harm, that harm would be justified by the search quality improvements that come from the contracting process.  Google Br. 49.  This argument relies on an illusion, *i.e.*, that the playing field for quality competition is level, and that rivals are free to succeed or fail based on the strength of their ingenuity and investment in their products.  To the contrary, Google's distribution contracts ensure an uneven playing field by securing for Google—and denying its rivals—the most significant sources of search traffic that are essential to achieving scale.  JFOF ¶¶ 163-207.

23.   Because scale is a key input to the creation and testing of quality improvements, the distribution contracts keep rivals perpetually behind Google in their ability to effectively improve their product quality and compete on that basis.  Joint Br. 29-33; JRFOF ¶ 2110.  By maintaining a scale gap, Google is able to maintain a quality gap between itself and its rivals that is not simply a function of superior engineering or greater investment.  Joint Brief at 29-33. Google's distribution contracts make that quality gap self-perpetuating, with increased scale leading to quality advantages leading to winning contracts that in turn secure a continued scale

advantage.  *Id.* at 31-33, 49-51.

24.    Thus, Google's claim that partners like Apple and Mozilla viewed Google as having higher quality search results than competitors in 2018, 2020 or ██ (Google Br. 56-60) is not a procompetitive justification, but rather the fruit of the poisonous tree.  Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 1435h (Fifth Ed. 2023) (describing the continuing effects of an antitrust conspiracy as "fruit of the poisonous tree"); *Viamedia*, 951 F.3d at 446 (rejecting argument that customers chose to partner with monopolist Comcast "on the merits of its offered services" because Comcast's superiority derived from its anticompetitive conduct); *United States v. Anthem, Inc.*, 855 F.3d 345, 369 (D.C. Cir. 2017) (Millet, J., concurring) ("[T]o have any legal relevance, a proffered efficiency cannot arise from anticompetitive effects").

25.    The Supreme Court in *National Society of Professional Engineers v. U.S.* rejected quality as a procompetitive justification for a rule prohibiting engineers from competing on price. 435 U.S. 679 (1978).  So too here, Google improperly defends its anticompetitive distribution contracts by relying on improved quality derived from them.  Google Br. 49-50; *See FTC v. Indiana Fed. of Dentists*, 476 U.S. 447, 463 (1996) (rejecting a "quality of care" defense to anticompetitive conduct); *Wilk v. Amer. Medical Ass'n*, 895 F.2d 352, 361 (7th Cir. 1990). Google's claim that it continues to win these contracts by virtue of its quality ignores the fact that it maintains that quality advantage by stacking the competitive deck.  That is the opposite of a procompetitive justification.

Dated: March 22, 2024        Respectfully submitted,

FOR PLAINTIFF STATE OF COLORADO

PHILIP WEISER
Attorney General of Colorado

Jonathan B. Sallet
Special Assistant Attorney General

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann, DC Bar No. 1022365 (inactive)
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas Suite 2200
New York, NY 10036-6710
Telephone: (212) 335-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

11

FOR PLAINTIFF STATE OF NEBRASKA

MIKE HILGERS
Attorney General of Nebraska

Colin P. Snider, Assistant Attorney General
Matthew K. McKinley, Special Assistant Attorney General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3840
E-Mail: Colin.Snider@nebraska.gov
Matt.Mckinley@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas Suite 2200
New York, NY 10036-6710
Telephone: (212) 335-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

FOR PLAINTIFF STATE OF ARIZONA

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.bernheim@azag.gov
        Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

12

FOR PLAINTIFF STATE OF IOWA

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

FOR PLAINTIFF STATE OF NEW YORK

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the Attorney General of New York
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH CAROLINA

JOSHUA STEIN
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov
jmarx@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff State of North Carolina*

FOR PLAINTIFF STATE OF TENNESSEE

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Chris Dunbar
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
Chris.Dunbar@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

FOR PLAINTIFF STATE OF UTAH

SEAN REYES
Attorney General of Utah

Scott R. Ryther
Tara Pincock
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 142320
Salt Lake City, Utah 84114
Telephone: (385) 881-3742
E-Mail: sryther@agutah.gov
tpincock@agutah.gov

*Counsel for Plaintiff State of Utah*

FOR PLAINTIFF STATE OF ALASKA

TREGARRICK TAYLOR
Attorney General of Alaska

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

FOR PLAINTIFF STATE OF CONNECTICUT

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF DELAWARE

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 577-8924
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

FOR PLAINTIFF DISTRICT OF COLUMBIA

BRIAN SCHWALB
Attorney General of the District of Columbia

Elizabeth Gentry Arthur
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

FOR PLAINTIFF TERRITORY OF GUAM

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira, Chief, Consumer Protection Division
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324

*Counsel for Plaintiff Territory Guam*

FOR PLAINTIFF STATE OF HAWAI'I

ANNE E. LOPEZ
Attorney General of Hawai'i

Rodney I. Kimura
Department of the Attorney General, State of Hawai'i
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawai'i*

FOR PLAINTIFF STATE OF IDAHO

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Floor
P.O. Box 83720 Boise, ID 83720
Telephone: (208) 334-4114
E-Mail:  John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF ILLINOIS

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
         Brian.yost@ilag.gov
         Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

17

FOR PLAINTIFF STATE OF KANSAS

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

FOR PLAINTIFF STATE OF MAINE

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

FOR PLAINTIFF STATE OF MARYLAND

ANTHONY G. BROWN
Attorney General of Maryland

Schonette J. Walker
Gary Honick
Office of the Attorney General of Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

FOR PLAINTIFF COMMONWEALTH OF
MASSACHUSETTS

ANDREA CAMPBELL
Attorney General of Massachusetts

William T. Matlack
Michael B. MacKenzie
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
E-Mail: William.matlack@mass.gov
Michael.Mackenzie@mass.gov

*Counsel for Plaintiff State of Massachusetts*

FOR PLAINTIFF STATE OF MINNESOTA

KEITH ELLISON
Attorney General of Minnesota

Zachary William Biesanz
Office of the Minnesota Attorney General
Consumer, Wage, and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

FOR PLAINTIFF STATE OF NEVADA

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker
Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NEW HAMPSHIRE

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New Hampshire*

FOR PLAINTIFF STATE OF NEW JERSEY

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

20

FOR PLAINTIFF STATE OF NEW MEXICO

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

FOR PLAINTIFF STATE OF NORTH DAKOTA

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of the Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North Dakota*

FOR PLAINTIFF STATE OF OHIO

DAVID YOST
Attorney General of Ohio

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail: Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

FOR THE PLAINTIFF STATE OF OKLAHOMA

GENTNER DRUMMOND
Attorney General of Oklahoma

Caleb J. Smith
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-1014
E-Mail: Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

FOR PLAINTIFF STATE OF OREGON

ELLEN ROSENBLUM
Attorney General of Oregon

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff State of Oregon*

FOR PLAINTIFF COMMONWEALTH OF
PENNSYLVANIA

MICHELLE HENRY
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of Pennsylvania*

FOR PLAINTIFF TERRITORY OF PUERTO RICO

DOMINGO EMANUELLI HERNANDEZ
Attorney General of Puerto Rico

Guarionex Diaz Martinez
Assistant Attorney General Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

FOR PLAINTIFF STATE OF RHODE ISLAND

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

23

FOR PLAINTIFF STATE OF SOUTH DAKOTA

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

FOR PLAINTIFF STATE OF VERMONT

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov

*Counsel for Plaintiff State of Vermont*

FOR PLAINTIFF COMMONWEALTH OF VIRGINIA

JASON S. MIYARES
Attorney General of Virginia

Tyler T. Henry
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

FOR PLAINTIFF STATE OF WASHINGTON

ROBERT FERGUSON
Attorney General of Washington

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

FOR PLAINTIFF STATE OF WEST VIRGINIA

PATRICK MORRISEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of West Virginia
1900 Kanawha Boulevard
East Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

FOR PLAINTIFF STATE OF WYOMING

BRIDGET HILL
Attorney General of Wyoming

Benjamin Peterson
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building Cheyenne, WY 82002
Telephone: (307) 777-6397
E-Mail: Benjamin.peterson2@wyo.gov

*Counsel for Plaintiff State of Wyoming*

25

## **CERTIFICATE ON SERVICE**

On March 22, 2024, I served this Plaintiff States' Responsive Proposed Conclusions of Law by email on counsel for Google and counsel for DOJ Plaintiffs in the above-captioned matters.


March 22, 2024                                  /s/ Matthew McKinley
                                         _____

                                         Matthew McKinley

                                         *Counsel for Plaintiff States*