**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC,<br>　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br>HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC,<br>　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br>HON. AMIT P. MEHTA |

**NON-PARTY SAMSUNG ELECTRONICS CO., LTD.'S POSITION STATEMENT
REGARDING INTERVENOR THE NEW YORK TIMES COMPANY'S
<u>MOTION FOR ACCESS TO JUDICIAL RECORDS</u>**

Pursuant to the Court's March 15, 2024 Order, Non-Party Samsung Electronics Co., Ltd. ("SEC") respectfully submits this position statement, along with the Declaration of Kyu Sung Lee, dated April 9, 2024, regarding the disputes related to the redactions to the SEC contracts that are the subject of Intervenor The New York Times Company's (the "NY Times") Motion for Access to Judicial Records.

## PRELIMINARY STATEMENT

While there is a "strong presumption in favor of public access to judicial proceedings," the D.C. Circuit has long held that the "'right to inspect and copy judicial records is not absolute.'" *United States v. Hubbard*, 650 F.2d 293, 316 (D.C. 1980) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  Indeed, the D.C. Circuit has recognized several "time-honored exceptions" to the right of access, which include ensuring that judicial records do not become "'sources of business information that might harm a litigant's competitive standing.'" *Id.* at 315 (quoting *Nixon*, 435 U.S. at 598).  Moreover, the D.C. Circuit has made clear that "where a third party's property and privacy rights are at issue the need for minimizing intrusion [through the public disclosure of judicial records] is especially great[.]" *Id.* at 319.

Ignoring this controlling precedent, the NY Times asserts that the highly confidential and competitively sensitive revenue share agreement between non-party SEC and Google LLC ("Google") (the "SEC RSA") must be disclosed in its entirety simply because this contract was introduced during trial as an exhibit (JX0071).[1]  The NY Times has taken this absolutist position even though many of the contract's provisions are wholly irrelevant to any issue in this case, as

---

[1] Two other SEC contracts that were the subject of the NY Times' motion are no longer at issue because the NY Times has (i) received a complete copy of one of these contracts (JX0037), which was previously disclosed in the recent trial between Google and Epic Games, Inc. ("Epic"), and (ii) withdrawn its request for the other contract (DX1036).

evidenced by the fact that these provisions were not identified by the parties during the confidentiality designation process established by the Court, utilized during any witness examination, or cited in the parties' voluminous post-trial submissions.

In addition to being contrary to the case law, the NY Times' position disregards the clear guidance that the Court provided before trial regarding the process for admitting trial exhibits and designating confidential information within those exhibits.  Recognizing that large portions of lengthy contracts and documents would be irrelevant to the issues in this case, the Court sought to avoid unnecessary delay and the waste of scarce judicial and party resources by instructing the parties and third parties to focus their review on the portions of trial exhibits that were likely to be used during witness examinations.  In doing so, the Court rightly questioned any need to disclose contractual provisions that have no bearing on the issues in this case simply because the contract was admitted as a trial exhibit:

> You know, from looking at what you all presented to me, there are lengthy contracts in certain cases in which it may be that only a few clauses are really pertinent here.  It's not clear to me why, just because a contract needs to be admitted in trial, that clauses that have nothing to do with the disputed evidence in the case that have the potential of compromising trade secrets or competitive interests need to be disclosed.

8/11/23 Hearing Tr. at 18:3-10.  Relying on the Court's "imprimatur" for how admissibility and confidentiality objections should be addressed, where "the premium art in admitting evidence was going to involve efficiency," SEC and other Samsung third parties solely focused their review of Samsung-related trial exhibits to the portions that the parties identified as likely to be used during trial because they did not believe that "the presentation of an exhibit necessarily made all of it subject to public disclosure." 3/11/24 Hearing Tr. at 16:1-12.  As the Court has observed, "[h]ad . . . the parties . . . and [ ] third parties viewed it differently, the exhibits themselves would look very different than what they look like today." *Id.* at 16:12-15.

In sharp contrast to the NY Times' inflexible position, SEC has sought to draw the appropriate balance between the public's right of access to judicial records and the heightened protection that must be afforded to a third party's confidential business information by agreeing to disclose all contractual provisions cited in the parties' post-trial submissions with the limited exception of non-public, highly competitively sensitive revenue share percentages and related payment amounts.  This approach is fully consistent with the Court's prior guidance and rulings regarding confidentiality, as well as the Court's recent observation that focusing on the contractual provisions cited in the parties' post-trial submissions—which provide the greatest indicia of the information that is pertinent to understanding the proceedings in this case—"is going to be helpful in terms of potentially narrowing . . . what may be of greater public interest than what is not going to be a public interest or less public interest potentially in the remaining parts of the agreement." *Id.* at 52:14-22.  In fact, SEC's approach is similar to the approach employed by this Court in another antitrust enforcement action.[2]

The approach taken by SEC is also fully consistent with the past positions of the U.S. Department of Justice ("DOJ") and several State Attorneys General, which have recognized that, despite "the strong presumption favoring the openness and transparency of the judicial process," the "sealing or redacting of confidential information is the norm in civil antitrust trials" and that third parties' confidential business information must be protected because, among other things, third parties "were 'never in a position to accept or reject the risk of disclosure'" and "reasonably

---

[2] *See FTC v. Sysco Corp.*, No. 1:15-cv-00256 (APM), ECF No. 206, Order on Confidentiality of Exhibits at 1-3 (D.D.C. Aug. 4, 2015) (Mehta, J.) (hereinafter, "Sysco Confidentiality Order") (limiting unsealing of trial exhibits in FTC enforcement action to portions used in open court or cited in the Court's decision).

relied on the Protective Orders in the course of complying with discovery[.]"[3] Plaintiffs' decision to depart from these well-settled principles by supporting the NY Times' untenable position is surprising because a precedent establishing that trial exhibits must be disclosed in their entirety "would hinder the public interest by hindering the [DOJ's] and the States' ability to collect material evidence [during future investigations]" and would "frustrate the antitrust laws' goal of preserving competition" by resulting in the public disclosure of "the very information that antitrust law forbids competitors to exchange[.]"[4]

Finally, as detailed below, the application of the D.C. Circuit's *Hubbard* test compels the denial of the NY Times' motion because the full disclosure of the SEC RSA would cause significant harm to SEC's business and competitive standing while failing to promote the public's understanding of the parties' claims and defenses or the Court's ultimate decision.

## ARGUMENT

In ruling on requests to protect judicial records from public disclosure, courts in this District apply the D.C. Circuit's *Hubbard* test, which considers: (i) the need for public access to the documents at issue; (ii) the extent of previous public access to the documents; (iii) the fact that someone has objected to disclosure, and the identity of that person; (iv) the strength of any property and privacy interests asserted; (v) the possibility of prejudice to those opposing disclosure; and (vi) the purposes for which the documents were introduced during the judicial proceedings. *See, e.g.*, *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016)

---

[3] *United States et al. v. Oracle Corp.*, No. C 04-0807 VRW, ECF No. 180, Plaintiffs' Response to Third Parties' Motion Supplementing Existing Protective Order at 2-4 (May 19, 2004) (citations omitted) (hereinafter, "DOJ Oracle Brief").

[4] DOJ Oracle Brief at 3; *see also* Sysco Confidentiality Order at 1 (noting "FTC's asserted interest in keeping confidential the identities of third parties who submitted declarations and evidence, to ensure that witnesses in future investigations will not be deterred from coming forward and cooperating because of the specter of public disclosure").

4

(reversing district court decision requiring disclosure of various judicial records and ordering that material be sealed).  None of these factors weigh in favor of disclosing the SEC RSA in its entirety as requested by the NY Times.

> **(1) The Public Does Not Have An Interest In Accessing Contractual Provisions That Are Irrelevant To Understanding The Proceedings In This Case**

"The presumption in favor of public access to court documents is based on 'promoting the public's understanding of the judicial process and of significant public events.'" *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013) (citation omitted).  Consequently, the public has "minimal interest" in information contained within judicial records that "is not necessary to the public's understanding of the case[.]" *Id.*

Here, there is no public interest in accessing provisions in the SEC RSA that were neither the subject of any witness examination nor cited in the parties' post-trial submissions because such provisions are irrelevant to the parties' arguments and almost certainly will not influence the Court's decision-making.  *Id.* (holding that district court abused its discretion by ordering the unsealing of financial information that was not "essential" to the court's rulings on pre-trial motions or the jury's damages award); *see also Hubbard*, 650 F.2d at 319 (concluding that "the public interest in access to materials which have never been judicially determined to be relevant to the crimes charged is especially small"); *Syngenta Crop. Prot., LLC v. Willowood, LLC*, 2017 WL 6001818, at *7 (M.D.N.C. Dec. 4, 2017) ("The public has little interest in having access to information in the many pages of these [trial] exhibits as to which there was no testimony and that do not appear to have any particular relevance to the case.").

Indeed, the Court has already raised significant skepticism regarding the NY Times' position that any contract marked as a trial exhibit automatically must be disclosed in its entirety

regardless of whether the redacted portions have no bearing on the issues in this case. *See, e.g.*, 3/11/24 Hearing Tr. at 16:17-25, 30:19-22, 32:6-9; 8/11/23 Tr. 18:3-10, 20:15-21.

Moreover, while the revenue share percentages in the RSA were cited in the parties' post-trial submissions, the redaction of these competitively sensitive percentages—which is consistent with how similar percentages in other contracts have been handled and which Plaintiffs do not oppose—will in no way impede the public's understanding of these proceedings. *See* 1/26/24 JSR at 17 (stating that Plaintiffs do not oppose sealing non-public revenue share percentages contained in agreements entered within the past seven years).

### (2) The Redacted Portions Of The SEC RSA Have Not Been Previously Disclosed

As a general matter, SEC treats its mobile device partnership agreements, such as the SEC RSA, as "highly confidential and limits access to these agreements to employees whose responsibilities require such access." Lee Decl. at ¶ 4. Consequently, the redacted portions of the SEC RSA have not been previously disclosed to the public. *Id.* at ¶ 3. For example, the version of the SEC RSA that was publicly used during trial and subsequently posted on the DOJ's website did not contain any of the provisions that SEC has proposed redacting. *See* Trial Version of PX0071, *available at* https://www.justice.gov/d9/2023-11/418307.pdf.

In its motion, the NY Times argues that the revenue share percentages in the SEC RSA should be unsealed because these percentages were supposedly disclosed during the recent trial between Google and Epic. However, the document cited by the NY Times—an internal Google report summarizing the ***non-final*** terms of the SEC RSA—contains revenue share percentages that are different from those contained in the final SEC RSA. *Compare* NY Times Mot., Sumar Aff. at Ex. J, pp. -102, -105, *with* PX0071 at Attachment A; *see also* Lee Decl. at ¶ 9. Indeed, if

6

these revenue share percentages had been publicly disclosed, Plaintiffs certainly would not have agreed to their redaction as part of the post-trial confidentiality designation process.

### (3) The Fact That SEC Is A Third Party Heightens The Need To Avoid Harmful And Unnecessary Disclosures

In establishing its *Hubbard* test, the D.C. Circuit made clear that where, as here, the public disclosure of a judicial record implicates "a third party's property and privacy rights . . . the need for minimizing intrusion is especially great[.]"  650 F.2d at 319.  Thus, SEC's status as a third party strongly supports granting SEC's proposed redactions, especially given the fact that SEC (i) has agreed to disclose all contractual provisions cited in the parties' post-trial submissions with the limited exception of revenue share percentages and related payment amounts (the redaction of which Plaintiffs do not oppose); (ii) relied on the confidentiality process and standards established by the Court, which in no way suggested that "the presentation of an exhibit necessarily made all of it subject to public disclosure," 3/11/23 Hearing Tr. at 16:1-12;[5] and (iii) will suffer significant harm to its business and competitive standing, as detailed below, if the SEC RSA is fully disclosed.

### (4) SEC Has A Strong Interest In Protecting The Confidentiality Of The Redacted Terms In The SEC RSA

As this Court has recognized in other antitrust enforcement actions, third parties such as SEC have a strong interest "in maintaining the confidentiality of their proprietary business information."  Sysco Confidentiality Order at 1.  Thus, this factor favors granting SEC's proposed redactions, which, again, will in no way impede the public's understanding of the parties' arguments or the Court's rulings.

---

[5] *Cf.* DOJ Oracle Br. at 4 ("Courts are more willing to seal confidential financial information if a party reasonably relied on a protective order.").

### (5) The Full Disclosure Of The SEC RSA Will Significantly Harm SEC's Business And Competitive Standing

As detailed in the accompanying declaration, "the full disclosure of the SEC RSA would undermine SEC's ability to negotiate the best terms possible in future search agreements" because it will limit SEC's ability to play Google and its search competitors against each other. Lee Decl. at ¶ 5.  By "gain[ing] direct knowledge of the most recent terms that Google was willing to offer and that SEC was willing to accept," Google's rivals will be able "to avoid offering terms and incentives that they otherwise may have believed would be necessary to win SEC's business, as well as . . . more confidently push back against SEC's requests and positions."  *Id.*  In turn, "SEC's negotiating position vis-à-vis Google [will] be weakened if other search providers are able to reduce their bids for SEC's business due to their knowledge of the SEC RSA's terms and enhanced ability to predict the contents of Google's competing bid."[6]  *Id.*

Similarly, "[t]he full disclosure of the SEC RSA would also undercut SEC's position during future negotiations with its mobile device carrier partners."  *Id.* at ¶ 6.  "In the United States, Samsung and mobile device carriers heavily negotiate the preloading and placement of applications on Samsung devices because, among other things, the resolution of these issues can significantly impact their respective revenue streams, including their search revenue."  *Id.* Consequently, "[i]f mobile device carriers are provided an unfettered view into SEC's current arrangement with Google, they will be able to use this information to better develop and implement strategies during future negotiations with SEC and Google that seek to maximize

---

[6] For example, "the disclosure of the revenue share percentages in the SEC RSA would hurt SEC's ability to secure the highest revenue share percentages in future search agreements because Google's rivals will know exactly the most recent percentages that SEC was willing to accept and will be better able to project the percentages in Google's competing proposals." Lee Decl. at ¶ 8.  "In turn, SEC's ability to negotiate the greatest revenue share percentages from Google will be weakened if the percentages in the competing bids have been tampered down due to the disclosure of the revenue share percentages in the SEC RSA."  *Id.*

their search revenue on Samsung devices at the expense of SEC." *Id.* "In stark contrast, SEC will continue to have to negotiate with mobile device carriers (as well as Google) without any insights into the terms of their current contracts with Google." *Id.*

Furthermore, the full disclosure of the SEC RSA will harm SEC's competitive position by granting its mobile device manufacturer competitors "insights into SEC's business and negotiating strategies as well as learn the exact terms that Google was willing to offer SEC." *Id.* at ¶ 7. "This information will allow SEC's rivals to more effectively develop and implement negotiating strategies that result in their securing equal or better terms from Google and/or other search providers, including terms that they may have never considered pursuing absent being granted full access to the SEC RSA." *Id.* "On the other hand, SEC would continue negotiating search agreements with Google and other search providers without any non-public information about the search deals of its competitors . . . ." *Id.*

Importantly, courts have granted motions to seal judicial records where, as here, disclosure would undermine a company's position during future contract negotiations and provide competitors with unfair insights into its business strategies. *See, e.g.*, Sysco Confidentiality Order at 1-3 (sealing portions of third party trial exhibits in FTC enforcement action that were not used in open court or cited in the Court's decision because third parties have an interest "in maintaining the confidentiality of their proprietary business information"); *United States v. Anthem, Inc.*, 2016 WL 11164035, at *1-*2 (D.D.C. Dec. 11, 2016) (Special Master granting motion to seal in DOJ antitrust enforcement action where third party argued that disclosure of documents "would give [counter-parties] an advantage in negotiations with [the third party]"); *United States v. Aetna Inc.*, 2016 WL 8738427, at *1-*8 (D.D.C. Dec. 2, 2016) (Special Master granting eleven third party motions to seal in DOJ antitrust enforcement action

9

because, among other things, disclosure would provide competitors with unfair insights into the third parties' business strategies).[7]

### (6)   SEC's Proposed Redactions Do Not Impede The Public's Understanding Of The SEC RSA's Role In This Litigation

While the NY Times has characterized the SEC RSA as a "key" contract, it has conspicuously failed to explain why provisions that have not been utilized in this case are important to the public's understanding of the proceedings.  In any event, SEC's proposed redactions do not undermine the public's understanding of the SEC RSA's relevance to this case and are fully consistent with how the Court and parties have approached confidentiality designations, including the redaction of non-public revenue share percentages.

---

[7] *See also FTC v. OSF Healthcare Sys.*, 2012 WL 1144620, at *2-*11 (N.D. Ill. Apr. 5, 2012) (stating that "burden [to seal judicial records] is less demanding on non-parties" and granting motions to seal various exhibits used in preliminary injunction hearing because, among other things, the disclosure of contract terms would harm companies' competitive standing and position in future negotiations); *Kentucky v. Marathon Petroleum Co. LP*, 2019 WL 4452956, at *2-*3 (W.D. Ky. Sept. 17, 2019) (stating that "[t]he privacy interests of innocent third parties should weigh heavily in the court's balancing equation" when granting motion to seal portions of summary judgment motion and certain supporting exhibits because the "revelation" of contract terms and negotiation documents "would harm both [defendant's] and the third parties' ability to enter into supply agreements with other suppliers or maintain a competitive market position" (quotation marks and citation omitted)); *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2020 WL 1062949, at *2 (S.D. Cal. 2020) (same); *DeMartini v. Microsoft Corp.*, 2023 WL 4205770, at *2, *4 (N.D. Cal. June 26, 2023) (noting that "[t]he Court also considers a more lenient approach when sealing non-party information" and granting third party's motion to seal material in private antitrust litigation that would assist "prospective and current business partners in negotiating with [the third party]" (quotation marks and citation omitted)); *Apple*, 727 F.3d at 1225 (rejecting arguments of press groups, which included the NY Times, seeking disclosure of exhibits in pre- and post-trial briefs because, among other things, the documents contained information that "could give suppliers an advantage in contract negotiations, which they could use to extract price increases for components"); *Pulse Electrons, Inc. v. U.D. Elec. Corp.*, 530 F. Supp. 3d 988, 1031 (S.D. Cal. 2021) (granting parties' motion to seal portions of briefs and accompanying exhibits because the disclosure of this information "might allow competitors to use that information to their advantage in their own contract negotiations, resulting in harm to Plaintiff").

## CONCLUSION

For the foregoing reasons, Non-Party SEC respectfully requests that the Court deny the NY Times' motion to unseal the SEC RSA in its entirety.

Dated: April 10, 2024                    Respectfully submitted,

**CROWELL & MORING LLP**

By: /s/ Juan A. Arteaga
    Juan A. Arteaga (*pro hac vice*)
    Rosa Morales (*proc hac vice*)
    Two Manhattan West
    375 Ninth Avenue
    New York, New York 10001
    (212) 223-4000
    jarteaga@crowell.com
    rmorales@crowell.com

*Attorneys for Non-Party Samsung Electronics Co., Ltd.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 10, 2024, I electronically filed the foregoing Non-Party Samsung Electronics Co., Ltd.'s Position Statement Regarding Intervenor The New York Times Company's Motion for Access to Judicial Records with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to counsel for all parties.

                                                        */s/ Juan A. Arteaga*
                                                        Juan A. Arteaga