IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 1:20-cv-03010-APM <br><br> HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 1:20-cv-03715-APM <br><br> HON. AMIT P. MEHTA |

**DECLARATION OF KYU SUNG LEE**

I, Kyu Sung Lee, declare as follows:

1. I have been employed with Samsung Electronics Co., Ltd. ("SEC")—a Korean corporation headquartered in Suwon-si, South Korea—since 2001 and currently serve as an Executive Vice President for Global Legal Affairs. My responsibilities include advising SEC executives and business teams in connection with the negotiation and implementation of agreements with various Samsung partners, including Google LLC ("Google"). In performing my responsibilities, I have become very familiar with SEC's treatment of its trade secrets and other proprietary information. For example, my work includes determining the commercial sensitivity of information relating to SEC's partnership agreements and evaluating whether disclosing such information would harm SEC's business and competitive standing. My work

also includes determining whether to seek confidential treatment for SEC-related material submitted to government agencies and courts throughout the world.

2. I understand that Intervenor The New York Times Company ("NY Times") has filed a motion in the above captioned actions which seeks to unseal in its entirety the current Mobile Revenue Share Agreement between SEC and Google (the "SEC RSA"), which was marked by the parties as trial exhibit JX0071. I also understand that SEC has agreed to disclose the provisions in the SEC RSA that have been cited in the parties' post-trial submissions with the limited exception of specific revenue share percentages and related payment amounts. I further understand that the NY Times has been provided a copy of the SEC RSA which fully reflects SEC's agreement to disclose the aforementioned provisions with the exception of certain instances where Google has requested to seal additional information.

3. I have reviewed the SEC RSA and submit this declaration in support of SEC's request to seal the portions that were not cited in the parties' post-trial submissions, which, to my knowledge, have never been publicly disclosed. I also submit this declaration in support of SEC's request to seal the revenue share percentages and related payment amounts contained in the SEC RSA, which were cited in the parties' post-trial submissions but are very competitively sensitive and, to my knowledge, have not been previously disclosed.

4. As a general matter, SEC treats its mobile device partnership agreements as highly confidential and limits access to these agreements to employees whose responsibilities require such access. This standard business practice reflects SEC's concerted effort to avoid the commercial harm that SEC and its partners would suffer if the confidential and sensitive information in these agreements were publicly disclosed. This standard business practice also reflects SEC's commitment to honoring its contractual confidentiality obligations, as well as

SEC's recognition that its business relationships and ability to successfully negotiate future partnership agreements would be significantly undermined if its agreements and their terms were publicly disclosed.

5.  The disclosure of the SEC RSA in its entirety would significantly harm SEC's business and competitive standing in several ways. For example, the full disclosure of the SEC RSA would undermine SEC's ability to negotiate the best terms possible in future search agreements. If a full copy of the SEC RSA is made publicly available, Google's rivals will gain direct knowledge of the most recent terms that Google was willing to offer and that SEC was willing to accept. This roadmap would allow Google's competitors to avoid offering terms and incentives that they otherwise may have believed would be necessary to win SEC's business, as well as enable them to more confidently push back against SEC's requests and positions. Conversely, SEC's negotiating position vis-à-vis Google would be weakened if other search providers are able to reduce their bids for SEC's business due to their knowledge of the SEC RSA's terms and enhanced ability to predict the contents of Google's competing bid.

6.  The full disclosure of the SEC RSA would also undercut SEC's position during future negotiations with its mobile device carrier partners. In the United States, Samsung and mobile device carriers heavily negotiate the preloading and placement of applications on Samsung devices because, among other things, the resolution of these issues can significantly impact their respective revenue streams, including their search revenue. If mobile device carriers are provided an unfettered view into SEC's current arrangement with Google, they will be able to use this information to better develop and implement strategies during future negotiations with SEC and Google that seek to maximize their search revenue on Samsung devices at the expense

of SEC. In stark contrast, SEC will continue to have to negotiate with mobile device carriers (as well as Google) without any insights into the terms of their current contracts with Google.

7.  Furthermore, the full disclosure of the SEC RSA would provide SEC's mobile device manufacturer rivals an unfair competitive advantage. By being able to review a complete copy of the SEC RSA, which includes provisions that are specific to Samsung products and services, SEC's mobile device competitors will gain insights into SEC's business and negotiating strategies as well as learn the exact terms that Google was willing to offer SEC. This information will allow SEC's rivals to more effectively develop and implement negotiating strategies that result in their securing equal or better terms from Google and/or other search providers, including terms that they may have never considered pursuing absent being granted full access to the SEC RSA. On the other hand, SEC would continue negotiating search agreements with Google and other search providers without any non-public information about the search deals of its competitors and the competitive advantages that possessing such information would offer.

8.  To provide a specific example, the disclosure of the revenue share percentages in the SEC RSA would hurt SEC's ability to secure the highest revenue share percentages in future search agreements because Google's rivals will know exactly the most recent percentages that SEC was willing to accept and will be better able to project the percentages in Google's competing proposals. In turn, SEC's ability to negotiate the greatest revenue share percentages from Google will be weakened if the percentages in the competing bids have been tampered down due to the disclosure of the revenue share percentages in the SEC RSA.

9.  I have been informed that the NY Times has taken the position that the revenue share percentages in the SEC RSA should be unsealed because they were supposedly disclosed

in the case captioned *Epic Games, Inc. v. Google LLC, et al.*, No. 3:20-cv-05671-JD (N.D. Cal.) (the "Epic Litigation"). However, the revenue share percentage cited by the NY Times (16%) as having been disclosed in the Epic Litigation is different from the percentages contained in the SEC RSA. To my knowledge, the revenue percentages in the SEC RSA have never been publicly disclosed, including during the Epic Litigation.

10. While they were not cited in the parties' post-trial submissions, there are other redacted provisions in the SEC RSA that are competitively sensitive, which, if disclosed, would harm SEC's business. For example, certain provisions contain information related to the division of search revenue among SEC and mobile device carriers, which, if disclosed, would hurt SEC's position during future negotiations with carriers and search providers. *See* Sections 2.4 & 3.1. In addition, certain provisions address the treatment of Samsung proprietary software, such as the S browser and Bixby voice assistant, while other provisions address issues specific to Samsung devices outside the United States. *See* Sections 2.5, 7.2, 8.1, 9.1, 9.3 10.2(d). The disclosure of such provisions would impede SEC's ability to negotiate equal or better terms in future agreements with search providers while enabling other mobile device manufacturers, as well as mobile device carriers, to better develop and implement negotiating strategies related to their search agreements, which could result in SEC's competitive position being harmed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of April, 2024, in Seoul, Korea.

_____
Kyu Sung Lee

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, I electronically filed the foregoing Declaration of Kyu Sung Lee in support of Non-Party Samsung Electronics Co., Ltd.'s Position Statement Regarding Intervenor The New York Times Company's Motion for Access to Judicial Records with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to counsel for all parties.

/s/ Juan A. Arteaga
Juan A. Arteaga