**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, et al., | |
| Plaintiff, | Case No. 1:20-CV-03010-APM |
| v. | |
| Google LLC, | Judge:    HON. AMIT P. MEHTA |
| Defendant. | |

| | |
|---|---|
| State of Colorado, et al., | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | |
| Google LLC, | Judge:    HON. AMIT P. MEHTA |
| Defendant. | |

**NON-PARTY AT&T INC.'S POSITION STATEMENT ON THE NEW YORK TIMES COMPANY'S MOTION FOR ACCESS TO JUDICIAL RECORDS AND DISPUTED PROPOSED REDACTIONS TO PLAINTIFFS' POST-TRIAL BRIEF**

In response to The New York Times Company's ("New York Times") Motion for Access to Judicial Records, ECF No. 800, and the Court's Stipulated Confidentiality Management Order, ECF No. 850, non-party AT&T Inc. ("AT&T") submits this position statement in support of its redactions to Trial Exhibit No. JX0091 and redactions referencing this exhibit in the United States of America's Proposed Findings of Fact, ECF No. 822.[1]

---

[1] ECF No. 822 references paragraph 1.65 of JX0091 (GOOG-DOJ-27553748), a redacted provision relating to the definition of "Search Access Point."

Trial Exhibit No. JX0091 is the currently operative Revenue Share Agreement (the "Agreement") between AT&T and Defendant Google LLC.  AT&T, like other wireless carriers, has entered a revenue sharing arrangement with Google in exchange for preloading certain Google services on Android devices.  The Agreement is the product of intense negotiations, and its highly tailored terms detail the pricing, payment, and other substantive obligations of the signatory parties.  *See* Declaration of Jeffrey Ezell ("Ex. 1") ¶ 3.  In contrast to the prejudice that would be caused to AT&T, the New York Times's motion contains no substantive argument that the factors articulated in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980), support disclosure of AT&T's Agreement.  Indeed, its motion says nothing *at all* about AT&T's Agreement, other than to refer to it as "another agreement" that the DOJ's expert referenced in their testimony.  ECF No. 800 at 9.  Weighed against AT&T's interest in the protection of this non-public, commercially sensitive information, none of the *Hubbard* factors weigh in favor of disclosure of the redacted portions of the Agreement.

### 1.    The Need for Public Access and Extent of Prior Access Weigh Against Further Disclosure

The first two *Hubbard* factors are "(1) the need for public access to the documents at issue" and "(2) the extent of previous public access to the documents."  *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016) (citations omitted).  Neither of these factors supports unsealing the Agreement.

As this Court has recognized, the right of public access is not absolute, particularly where non-parties such as AT&T have a strong interest in maintaining the confidentiality of their proprietary business information.  *See FTC v. Sysco Corp.*, 15-cv-00256 (APM), ECF No. 206 at 1 (D.D.C. Aug. 4, 2015).  And while there is a "presumption in favor of public access to court

documents," *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1226 (Fed. Cir. 2013), the question is not whether there is *general interest* in the document, but rather, whether the public needs access to the portions of the documents that remain under seal. *See Cable News Network Inc., v. Fed. Bureau of Investigation*, 984 F.3d 114,119 (D.C. Cir. 2021) ("A district court weighing the first [*Hubbard]* factor should consider the public's need to access the information that remains sealed, and not the public's need for other information sought in the overall lawsuit.").

Here, the vast majority of this thirty-six-page Agreement does not concern the disputed issues in this case. *See* Aug. 11, 2023, Hearing Tr. 18:2-10 (observing that these "are lengthy contracts in certain cases in which it may be that only a few clauses are really pertinent here," such that there are "clauses that have nothing to do with the disputed evidence in the case that have the potential of compromising trade secrets or competitive interests."). Numerous provisions are irrelevant to the underlying litigation, such as technical requirements, commercial terms like payment and limitations of liability, and even the names, addresses, and contact information of certain AT&T employees. *See* Ex. 1 ¶ 5. There is no legitimate public interest in access to portions of the document that have no bearing on the case. *See Hubbard,* 650 F.2d at 321 (emphasizing that the records sought "were not used in the subsequent 'trial'; nor were they described or even expressly relied upon by the trial judge in his decision on the suppression motion").

Additionally, the Agreement's precise terms and contractual language have never been made public. *See* Ex. 1 ¶ 6. Nor has any prior Revenue Share Agreement between AT&T and Google been made publicly available in its entirety. *Id.* at ¶ 6.[2] Indeed, given that the Agreement's

---

[2] The fact that Revenue Share Agreements with *other* entities may have been produced in unrelated litigation in unredacted form (ECF No. 800 at 12-13) is irrelevant. *See Hubbard,* F.2d at 318. During the meet and confer, the New York Times referred to Exhibit 624 from *Epic Games, Inc. v. Google LLC et al.* (Case No. 3:20-cv-05671-JD) as support for disclosing the revenue share amounts in the Agreement. But that document is a Google slide deck describing the generic framework for a revenue share agreement and specifically indicates the "framework . . . can be customized for individual partner[s]." *See* Case No 3:20-cv-05671-JD., ECF. No 622-44 at 8. It does not even

terms are competitively sensitive and highly negotiated, AT&T has treated them as confidential. *Id.* at ¶ 3.  The lack of previous disclosure also supports keeping the Agreement sealed.  *See Hubbard,* 650 F.2d at 317–18.

Nonetheless, AT&T understands that the Court must balance multiple interests, and thus AT&T does not seek to withhold the Agreement in its entirety.  The key aspects of the Agreement that are relevant to the lawsuit have already been discussed at length in open court, including in the deposition testimony of an AT&T witness that was played during trial, without revealing the Agreement's most competitively sensitive details.  And AT&T's counsel has met and conferred with the New York Times's counsel and proposed redactions to the Agreement which would allow more of the Agreement's terms to be made public, while also keeping both its irrelevant and/or most sensitive terms under seal.  Further disclosure, however, is not needed to meet any public interest in the Court's proceedings, especially when weighed against the prejudice that would result to AT&T, as further discussed below.

### 2.    Non-Party AT&T Will Be Prejudiced by Full Disclosure of the Agreement

The next three *Hubbard* factors consider "(3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; [and] (5) the possibility of prejudice to those opposing disclosure."  *Hardaway,* 843 F.3d at 980.  Courts recognize that the need for sealing is "especially great" "where a third party's property and privacy rights are at issue." *Hubbard,* 650 F.2d at 319.

Disclosure of the terms of the Agreement would result in significant competitive harm to AT&T—a non-party subpoena recipient—because it would undermine competition among the

---

describe the Agreement at issue here specifically, much less reveal anything from the redacted portions of the Agreement.

wireless carriers and compromise AT&T's negotiation position for similar contracts in the future. *See State of New York v. Microsoft Corp.*, No. CIV.A. 98-1233 (CKK), 2002 WL 818073, at *1 (D.D.C. Apr. 29, 2002) ("Protecting an entity's 'competitive standing' through retained confidentiality in business information" is "an appropriate justification for the restriction of public or press access" to confidential commercial information[.]") (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  AT&T competes against other wireless carriers—as its customers expect and the antitrust laws require.  Disclosure of the Agreement's specific terms to AT&T's competitors would put AT&T at a disadvantage since its competitors could use that information in future negotiations with Google.  *See* Ex. 1 ¶ 3.  Similarly, other search or mobile service providers that AT&T is interested in entering into similar agreements with will gain unfair insights into AT&T's negotiation position.  If the terms that AT&T negotiated with Google become publicly known, the unfair insight gained from the Agreement's full disclosure could result in other companies demanding similar or more favorable treatment from AT&T.  *See id.*

Further, the terms of the Agreement have additional sensitivity due to their recency.  The Agreement was negotiated in 2020 and is still in effect, and agreements such as these are routinely renewed.  *See* Ex. 1 ¶ 4.  Thus, the Agreement is still highly relevant in the current marketplace and remains of sensitive competitive value for AT&T for future negotiations.  *See State of New York*, 2002 WL 818073, at *1.  Thus, the *Hubbard* factors concerning prejudice against a non-party also weigh against full disclosure of the Agreement.

### 3.    The Public Record Already Contains Sufficient Detail About the Google-AT&T Relationship to Support the Court's Decision

The last *Hubbard* factor—the purpose for which the document was introduced—weighs against disclosure as well.  The Court has already stated that to the extent its decision will

ultimately rely on aspects of the trial exhibits, it is important that those aspects are available to the public.  Aug. 11, 2023 Hr'g Tr. 14:19-24 (describing the "continuum" of "the public's need for access," which is "at its apex when the Court is actually citing a document in a memorandum opinion.").  AT&T does not disagree.  However, the Court has also stated it does not support the categorical unsealing of the Agreement, most of which is irrelevant.  The portions of the Agreement that are relevant have been highlighted, described, or quoted directly in the parties' post-trial papers and thus there is no public need for further disclosure.

## CONCLUSION

For the foregoing reasons, AT&T respectfully requests the Court rule against the full unsealing of the Agreement.


Dated:  April 10, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Kristen C. Limarzi*
    Kristen C. Limarzi

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:   202.955.8500
Facsimile:   202.467.0539
Email:  klimarzi@gibsondunn.com

Christian Dibblee

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:   202.777.9568
Facsimile:   202.530.9672
Email:  CDibblee@gibsondunn.com

*Attorneys for Non-Party AT&T*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, the foregoing document was electronically submitted with the clerk of the court for the United States District Court, District of Columbia, using the electronic case file system of the court. The electronic case file system sent a "Notice of Electronic Filing" to all counsel of record.

By:   /s/ *Christian Dibblee*
Christian Dibblee