IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Google LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Google LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S SUBMISSION REGARDING REDACTIONS TO THE PARTIES' POST-TRIAL SUBMISSIONS AND CERTAIN EXHIBITS**

As the Court observed at the most recent status conference, the Court, the parties, and non-parties have "taken fairly robust measures to ensure that these proceedings have been as open as they can be, consistent both with confidentiality interests but also the demands that are being put on the parties." Mar. 11, 2024 Hr'g Tr. 12:18-24.  This has occurred under circumstances that are unusual due to both the volume and commercial sensitivity of the evidence, which includes recent non-public financial data, trade secrets relating to the development and operation of search and search ads technologies, and confidential agreements with numerous non-parties.  As Google has explained previously and summarizes briefly below, these forms of confidential information regularly merit sealing in light of courts' "refus[al] to permit their files to serve as … sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see, e.g.*, ECF Nos. 769 at 1-8; 740-1 at 32-43; 732 at 1-3; and 729 at 1-3.

Notwithstanding the commercially sensitive nature of many of the subjects addressed in the parties' post-trial submissions, Google does not seek to seal the vast majority of information quoted or characterized on the face of those submissions.  Instead, Google seeks only pinpoint redactions to particular confidential numbers, specific contractual provisions, and other descriptions of trade secrets.  These targeted redactions—which cover only a tiny fraction of the parties' 1,800-plus pages of post-trial submissions—do not impede public access to the parties' legal arguments and preserve the confidentiality of specific factual details only to the extent necessary to prevent harm to Google's competitive standing.

**I.     Materials Enclosed with Google's Submission**

Pursuant to the Court's instructions at the March 11, 2024 status conference and the March 15, 2024 Order (ECF No. 850), Google is enclosing the following materials to

substantiate its request to redact portions of the parties' post-trial submissions and certain exhibits sought by The New York Times.

*First*, Google is enclosing sworn declarations from five Google employees, each of whom addresses particular redactions to the parties' post-trial submissions and, in some instances, the exhibits requested by The New York Times:

- Irene Bondar, whose responsibilities as a Director, Strategy & Operations for Google Search & Ads Finance include oversight of the financial performance of Google's Search and Advertising businesses.

- David Price, whose responsibilities as a Legal Director at Google include providing legal advice to the product teams that develop and operate Google Search.

- Michael Zwibelman, whose responsibilities as a Senior Product Counsel at Google include providing legal advice to the product and engineering teams that develop and operate the ads that run on Google.com.

- Elizabeth Daly, whose responsibilities as a Director within Google's Legal organization include supporting the legal aspects of Google's negotiation and analysis of Google's Information Services Agreement with Apple.

- Sang Eun (Kate) Lee, whose responsibilities as a Legal Director at Google include providing legal support to the Google product and business teams that develop and distribute the Android mobile operating system and Google applications that are developed to run on devices that use the Android operating system.

*Second*, Google is enclosing two sets of charts listing the following redactions to the parties' post-trial submissions:

- A set of charts listing Google's redactions to its own post-trial submissions and the redactions provided to Google by non-parties (Ex. A).

- A set of charts listing Google's redactions to Plaintiffs' post-trial submissions (Ex. B).[1]

---

[1] Plaintiffs have separately contacted third parties regarding their requested redactions to the applicable portions of Plaintiffs' post-trial submissions, and it is Google's understanding that Plaintiffs will be conveying those third-party redactions to the Court.

2

*Third*, Google is enclosing the sealed copies of the parties' post-trial submissions with Google's redactions indicated by red boxes, redactions Plaintiffs have indicated they do not oppose indicated by green highlighting, and redactions specified by third parties to Google's filings indicated by yellow highlighting:

- Google's Post-Trial Brief (Ex. C).
- Google's Proposed Conclusions of Law (Ex. D).
- Google's Proposed Findings of Fact (Ex. E).
- Google Responsive Proposed Conclusions of Law (Ex. F).
- Google's Responsive Proposed Findings of Fact (Ex. G).
- Plaintiffs' Post-Trial Brief (Ex. H).
- Plaintiff States' Post-Trial Brief (Ex. I).
- Plaintiffs' Proposed Findings of Fact (Ex. J).
- Plaintiff States' Proposed Findings of Fact (Ex. K).
- Plaintiffs' Responsive Proposed Findings of Fact (Ex. L).
- Plaintiff States' Responsive Proposed Findings of Fact (Ex. M).

*Fourth*, Google is enclosing sealed copies of the agreements requested by The New York Times that have been provided in redacted form, with redactions indicated by red boxes:

- JX0024 – 2014 Joint Cooperation Agreement with Apple (Ex. N).
- JX0033 – 2016 Amendment to the Information Services Agreement with Apple (Ex. O).
- JX0071 – 2020 Mobile Revenue Share Agreement with Samsung (Ex. P).
- JX0091 – 2021 Mobile Revenue Share Agreement with AT&T (Ex. Q).
- JX0099 – 2020 Amendment No. 1 to Mobile Application Distribution Agreement with Motorola (Ex. R).

**II.     Google's Redactions to the Post-Trial Submissions and Certain Exhibits Requested by The New York Times**

Generally speaking, Google's redactions are directed to three categories of commercially sensitive material: recent confidential financial information, search technologies or search ads auction techniques or experiments, and current or recent confidential agreements. As discussed below and in Google's prior submissions regarding confidentiality, these forms of information are frequently sealed in order to prevent the competitive harms described in the enclosed declarations.

**A.     Recent Confidential Financial Information**

In several instances, Google seeks to redact specific confidential financial information (*i.e.*, dollar amounts or percentages) tied to particular products, services, launches, proposals, or agreements. *See, e.g.*, Bondar Decl. ¶¶ 3-12; Zwibelman Decl. ¶¶ 12-14; Daly Decl. ¶ 15. While the enclosed declarations describe the specific harms that Google in particular will experience if these details are disclosed, numerous courts have sealed the confidential financial information of public companies or their subsidiaries because of the risk of competitive harm.[2]

---

[2] *E.g.*, *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (sealing "confidential information about Microsoft's business models, including details of Microsoft's sources of revenue and the amounts of its revenue and sales; quantitative details about Microsoft's user base for certain offerings; quantitative details about usage of specific product features; [and] specific revenue amounts from certain offerings" because "if that information were to be disclosed, it could indeed harm Microsoft or advantage its competitors"); *Gearsource Holdings, LLC v. Google LLC*, 2020 WL 3833258, at *15 (N.D. Cal. July 8, 2020) (explaining that "[e]xamples of trade secrets include 'pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage,'" and sealing "Google's detailed revenue, expense, profit, and sales information associated with specific products in its Cloud Apps business line"); *Boehringer Ingelheim Pharma GmbH & Co. KG v. Mylan Pharms., Inc.*, 2015 WL 4715307, at *2 (D. N.J. Aug. 7, 2015) (sealing "financial data, including sales and revenue, of [Mylan Pharmaceuticals] and its parent company" because it "is nonpublic business information, disclosure of which will pose a risk of harm to Mylan's competitive position in the marketplace").

Most of the confidential financial information that Google seeks to redact is recent, with Plaintiffs characterizing many of the figures at issue as either "forecasted" results for 2021 or 2022, or results "actually generated" in those years. *E.g.*, Pls.' Proposed Findings of Fact (ECF No. 822) ¶¶ 598-600.  The commercial sensitivity is apparent, with even Plaintiffs having acknowledged shortly before trial that "[n]on-public financial information from 2020 and later" is a form of "[c]ompetitively sensitive information" that they "would presumptively agree to seal."  Aug. 9, 2023 Joint Status Rep. (ECF No. 636) at 11.  Moreover, the information that Plaintiffs now seek to unseal encompasses not only financial data relating to search and search ads, but also data for products and services not at issue here such as Google Display and Video Ads.  *E.g.*, Pls.' Proposed Findings of Fact (ECF No. 822) ¶¶ 599-600.  And as Google's declarants explain, the disclosure of this information combined with Google's public financial statements would facilitate the calculation of the financial performance of other Google products and services, which would further harm Google's competitive standing.  *E.g.*, Bondar Decl. ¶¶ 8, 12.  Any public interest in the referenced financial information—much of which was not presented at trial—is outweighed by the harm of disclosure, particularly given that Google's redactions are limited to the specific numbers that competitors will find most valuable, and do not obscure any of Plaintiffs' assertions regarding the purported significance of the redacted figures.

Finally, none of these commercially sensitive figures were previously disclosed, including through the unsealing of the "Booked Revenue" and "TAC" lines of UPX7002A following the Court's review of that exhibit on October 27, 2023.  Plaintiffs previously sought to unseal only those two financial metrics, not the gross margins, operating profits, and expenses that they now seek to disclose.  *See* Tr. 7523:4-7524:11 (Oct. 27, 2023).  And that prior

5

disclosure did not encompass any financial information for 2022 or for areas outside of Search+, such as the data for Google Display and Video Ads that Plaintiffs now expressly seek to disclose, or the commercially sensitive financial performance of other products and services that could be inferred from disclosure of the figures at issue.  *See, e.g.*, Bondar Decl. ¶¶ 3-12.  Nor did those prior disclosures involve granular financial information such as expenditures attributable to a specific agreement in a recent year, or revenue attributable to a particular quality improvement, which are addressed through highly targeted redactions necessary to avoid harm to Google's competitive standing.  *See, e.g.*, Daly Decl. ¶ 15; Zwibelman Decl. ¶¶ 9-10; Price Decl. ¶ 9.

### B.     Confidential Search or Search Ads Techniques or Experiments

A number of Google's requested redactions are directed to characterizations of techniques for ranking search results or conducting ads auctions, or consist of related characterizations of the results of particular Google experiments or launches.  Google has agreed to unseal the vast majority of information about search and search ads that appears on the face of the parties' post-trial submissions, just as it did at trial, where multiple fact and expert witnesses testified in open court about aspects of the operation of these systems.  Google's redactions are limited to characterizations of the kinds of technical details and experimental findings that are regularly sealed because of the risk they pose to competitive standing if disclosed.[3]

---

[3] *E.g., 3D Sys., Inc. v. Wynne*, 2024 WL 1122377, at *3 (S.D. Cal. Mar. 14, 2024) (observing that "the potential disclosure of trade secrets constitutes a compelling reason to seal a court record," and adding that "even if [the party's] development tools and technology were not sealable as trade secrets, sources of business information that might harm a litigant's competitive standing often warrant protection under seal" (quotation marks omitted)); *Rivera v. Amazon Web Servs., Inc.*, 2023 WL 5670052, at *3 (W.D. Wash. Sept. 1, 2023) (sealing "technical information about [the defendant's] machine learning models and [product] design and operation" because disclosure could "allow [the defendant's] competitors to gain insight into how [its] proprietary models and API systems function … [a]nd outside actors having access to information about [the product's] structure could use that information to launch malicious attacks on [the defendant]"); *Vista India, Inc. v. Raaga, LLC*, 2008 WL 834399, at *2 (D. N.J. Mar. 27, 2008) (explaining that

As Google's declarants explain, certain redactions have been applied because disclosure would result in adversarial conduct by automated systems that diminish the quality of Google's search results or ads. *See, e.g.*, Price Decl. ¶¶ 5-6; Zwibelman Decl. ¶ 7. Plaintiffs' arguments regarding search and search ads have been aired extensively in open court and the post-trial submissions, and Google should not be compelled to disclose granular details that will undermine the effectiveness of its systems, which harms Google and potentially diminishes quality for both users and advertisers. In several other instances, Google seeks to redact specific numbers or experimental results that would be of strategic value to other competing search services and digital ads platforms seeking to attract the same users' queries and advertisers' dollars. These targeted redactions are necessary to avoid giving competitors an unearned advantage. *See, e.g.*, Price Decl. ¶¶ 8-11; Zwibelman Decl. ¶¶ 10-13.

### C.  Current or Recent Confidential Agreements

#### 1.  Redactions to Contract Terms Generally

As with the other categories of information that Google seeks to redact, courts commonly seal the terms of confidential contracts to avoid the harms to competitive standing detailed by Google's declarants.[4] Those harms include the one-sided advantage that other search engines

---

"[c]ourts will generally grant motions to seal when the materials contain trade secrets or other confidential research, development, or commercial information to prevent harm to a litigant's standing in the marketplace" (quotation marks omitted)).

[4] *E.g., United States v. Anthem Inc.*, 2017 WL 8893757, at *3 (D.D.C. Jan. 18, 2017) (recommending the sealing of trial exhibits where "disclosure of this information will grant [a party's] competitors an unfair advantage in obtaining customers and may grant providers and potential customers an unfair advantage in negotiating contracts with [the party]"); *Mars, Inc. v. JCM Am. Corp.*, 2007 WL 496816, at *2-3 (D. N.J. Feb. 13, 2007) (explaining that a party "should not have to sacrifice its competitive negotiating position in its business" by disclosing confidential agreements and concluding that "the actual contract documents at issue and the specific language used therein should be sealed"); *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (approving redactions to an

7

will receive from having access to the terms Google has negotiated, and the impairment of Google's ability to engage in ordinary individualized negotiations with each counterparty. *See, e.g.*, Daly Decl. ¶¶ 4-21, 24-25; Lee Decl. ¶¶ 4-13.

Google respectfully submits that its redactions to particular provisions of current and recent agreements comport with not only what is necessary to prevent harm to its competitive standing, but also with determinations made when many of these same issues were addressed during trial. For example, near the end of trial Plaintiffs sought to unseal provisions of the 2014 and 2016 agreements between Google and Apple. *See* Pls.' Nov. 6, 2023 Submission (ECF No. 759). The Court granted in part and denied in part Plaintiffs' request, which included a determination that a particular provision should remain redacted after a consideration of all pertinent factors because "notwithstanding the fact that it's been introduced at trial … the public interest in learning about these specifics" does not "outweigh[] the potential prejudice to both Google and Apple in having that particular provision disclosed." Tr. 10217:14-10219:1 (Nov. 14, 2023). Nothing has changed that would justify Plaintiffs' (or The New York Times') request for reconsideration of that determination, which was made during the final week of trial in view of all the testimony that had occurred in the preceding two months. None of the portions of the agreement that Plaintiffs or The New York Times seek to unseal were disclosed in *Epic Games, Inc. v. Google, LLC*, No. 20-cv-5671-JD (N.D. Cal.), where the plaintiff filed a redacted version of a two-page excerpt of the agreement. *See* ECF No. 800-11 (originally filed at ECF No. 623-1 in *Epic Games*); *see also Epic Games*, ECF No. 621 (ordering the sealing of portions of certain exhibits "to the extent the portions requested for sealing were not shown in open court").

---

agreement, with the exception of portions disclosed in the court's opinion on the merits, because "it contains information about terms and conditions of the distributorship arrangement that the licensing agreement creates that might give other firms an unearned competitive advantage").

8

To offer another representative example, Google sought to redact certain portions of the transcript of a brief closed session that occurred during the second to last week of trial, on November 7, 2023. After receiving the parties' positions, the Court granted in part and denied in part Google's request, which included applying narrow redactions to certain competitively sensitive provisions of revenue share agreements (RSAs) with three wireless carriers referenced in the testimony. *E.g.*, Tr. 9334:19 (Nov. 7, 2023). Google generally has applied the same targeted redactions entered by the Court to the same information in the parties' proposed findings of fact. *E.g.*, Google's Proposed Findings of Fact (ECF No. 828) ¶ 1499. Again, nothing has changed that would justify a reconsideration of the balancing that was performed with respect to this particular redaction and numerous others, where Google is applying determinations made during trial to the corresponding passages of the parties' post-trial submissions after having considered whether any subsequent developments in this case or others warrant disclosure.

Google's redaction requests are not undermined by the subsequent disclosure in *Epic Games* of certain Mobile Application Distribution Agreements (MADAs) and RSAs with original equipment manufacturers (OEMs) and certain documents characterizing proposals for or negotiation of those agreements. While Google does not seek to redact specific agreements or provisions that have already been made public, the disclosure of one agreement (*e.g.*, a Mobile Incentive Agreement with Motorola, *see* ECF No. 800-10) does not support the public disclosure of other agreements that were not disclosed in *Epic Games* (*e.g.*, the Mobile Revenue Share Agreement with AT&T sought by The New York Times, *see* Ex. Q). These are different contracts with numerous different provisions, which is apparent from a comparison of the two—including a comparison of the portions that neither Google nor AT&T seeks to redact in light of the applicable standards and have already provided to the Times.

9

The harm to Google's competitive standing is compounded by each subsequent disclosure of an agreement that is the product of individualized negotiations with each counterparty. For example, Google's ability to engage in future negotiations with AT&T would be harmed by disclosure to competitors of its RSA with AT&T, notwithstanding the fact that competitors already have access to a different agreement with a different counterparty such as Motorola. *See, e.g.*, Lee Decl. ¶¶ 4-13; *see also* Daly Decl. ¶¶ 4-21, 24-25. Moreover, Google's ability to engage in future negotiations with each current and potential counterparty would be further harmed by the disclosure of additional party-specific arrangements, beyond those already revealed in this case or *Epic Games*. The disclosure of a few data points has impacted Google's ability to engage in ordinary commercial negotiations, and the disclosure of even more data points reflecting the outcome of other negotiations would exacerbate that effect. *See, e.g.*, Lee Decl. ¶¶ 6-12; *see also* Daly Decl. ¶¶ 7, 14, 24-25.

Finally, the disclosure of characterizations of an agreement in documents or testimony does not support disclosure of the agreement in its entirety. For example, The New York Times has cited the publication in *Epic Games* of an "Executive Summary" of certain agreements then under negotiation with Samsung (*see* ECF No. 800-13) in connection with its request for the 2020 Mobile Revenue Share Agreement with Samsung (Ex. P). But the summary does not disclose additional commercially sensitive details that Google seeks to redact, such as certain individually negotiated provisions and revenue share percentages (which differ from those that appear in the summary). And as indicated, the disclosure of a summary of agreements under negotiation with a particular counterparty does not diminish the harm that would result from compelled disclosure of other contracts with other counterparties.

### 2. The Process Regarding the Agreements Requested by The New York Times

In response to The New York Times' request for certain agreements, *see* Mar. 15, 2024 Order (ECF No. 850) ¶ 3(a)(i), Google reviewed the provisions that were used by the parties in their trial presentations or post-trial submissions and either released those provisions (to the extent the counterparty consented to release) or applied redactions necessary to avoid the kinds of harm to its competitive standing described above and by its declarants. *See, e.g.*, Daly Decl. ¶¶ 4-21, 24-25; Lee Decl. ¶¶ 4-13.

The portions of each agreement that were not used at trial or in the parties' post-trial submissions remained redacted unless they had already been made public. As Google has previously indicated, it is not apparent why there would be any presumption of access to portions that no party has asked the Court to review in considering how to resolve the issues before it. *E.g.*, *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (explaining that "whether something is a judicial record depends on 'the role it plays in the adjudicatory process'"). But even if the portions that no party has relied upon were characterized as judicial records, application of the pertinent factors would support redacting them because they are not asserted to be relevant to the merits and were not used at trial. *E.g.*, *United States v. Hubbard*, 650 F.2d 293, 321 (D.C. Cir. 1980) (emphasizing that the materials sought "were not determined by the trial judge to be relevant to the crimes charged; they were not used in the subsequent 'trial'; nor were they described or even expressly relied upon by the trial judge in his decision on the suppression motion"). Google has an interest in preserving the confidentiality of the entirety of its negotiated commercial agreements, and even if provisions addressing, *e.g.*, limitations on liability or the

operationalization of security updates for devices are not among the most commercially sensitive portions of the agreements, they are also not at issue here and therefore should not be disclosed.[5]

In all events, the parties and non-parties have focused on the portions of exhibits used at trial—as opposed to the portions not used—pursuant to the process established at a public pre-trial hearing and embodied in subsequent orders.[6] That process did not draw an objection or request for reconsideration from Plaintiffs (who have advocated zealously to publicize Google's confidential information) or any member of the public or media (which covered the pre-trial proceedings in this case). If any objection had been raised at the time, then the parties and non-parties could have taken any number of other approaches, such as admitting exhibits one at a time through witnesses with a redacted version provided upon admission, or creating excerpts of exhibits that included only the portions they were asking the Court to consider.[7]

---

[5] *E.g.*, *In re Citibank Aug. 11, 2020 Wire Transfers*, 2020 WL 6782213, at *2 & n.3 (S.D.N.Y. Nov. 18, 2020) (establishing a process for "public access to trial exhibits" whereby "if information in a document is not relevant to the issues in the case, and no party asks the Court to consider it, the parties may—and should—redact the information without leave of Court to obviate any concerns about public access" (emphasis omitted)); *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 95 F. Supp. 3d 860, 883 (D. Md. 2015) (approving a "significant number of redactions" to the defendants' agreement even though it "generally is relevant to th[e] dispute" because "it is evident how … [the defendant] could suffer significant harm to its business dealings if the full terms of the … contract were released, giving its competitors and other distributors information that could cause a competitive disadvantage to [the defendant]" and "not every provision of the … [c]ontract is germane to adjudicating the current dispute").

[6] *E.g.*, Aug. 11, 2023 Hr'g Tr. 13:3-58:25 (conducting a public hearing regarding "the redaction process and the confidentiality designations"); Aug. 14, 2023 Order (ECF No. 640) (requiring the parties to identify for each other and third parties "those portions of their exhibits that they intend to rely upon at trial that may contain confidential business information or trade secrets"); Sept. 28, 2023 Order on Posting Trial Materials (ECF No. 725) (formalizing a procedure "to post on the internet or otherwise disseminate to the public an admitted trial exhibit that was used in open court" whereby "[t]he Posting Party shall include any redactions pursuant to the court-ordered confidentiality process").

[7] *E.g.*, *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, 2019 WL 3386448, at *1-2 (D. Del. July 18, 2019) (describing the court's procedure in a jury trial whereby "[a]t the

The bottom line is that The New York Times has now received updated versions of the requested agreements that account for provisions used in the parties' post-trial submissions in addition to portions used at trial and, with respect to those provisions, has access to all terms except those that Google and/or a non-party contend should be redacted under the applicable standards in light of the competitive harm that will result from disclosure. Google respectfully requests that the Court apply its requested redactions to those agreements and the parties' post-trial submissions.

Dated: April 10, 2024	Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)

---

pretrial conference, the Court explained that the 'preferable process' for dealing with confidential documents is for the parties to use excerpts and demonstratives during trial and to make 'specific requests' to "enter [the documents] into evidence on a sealed basis,'" and even where a party failed to follow that procedure, granting the party's request to "expunge from the public record all portions of [an exhibit] that were not displayed in open Court" because only "limited portions of the lengthy document were testified about or called out to the jury"); *In re All Matters Related to N. Am. Refractories Co.*, 645 B.R. 833, 840 (Bankr. W.D. Pa. 2022) (explaining that "there is no general requirement that a party must introduce a complete copy of a document into evidence as an exhibit," just as there is "nothing improper about parties to litigation tailoring their submission of exhibits so as to avoid the disclosure of information they would prefer to keep from public access if they do not believe the inclusion of such information is necessary to prove their case").

13

Wendy Huang Waszmer (D.C. Bar No. 1631078)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com
wwaszmer@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

14