IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                Plaintiffs,<br><br>     v.<br><br>Google LLC,<br><br>                Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>                Plaintiffs,<br><br>     v.<br><br>Google LLC,<br><br>                Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DECLARATION OF IRENE BONDAR**

I, Irene Bondar, declare as follows:

1.     I am currently employed by Google LLC (Google) as a Director, Strategy & Operations for Google Search & Ads Finance, where I have worked since 2022.

2.     My responsibilities include oversight of the financial performance of Google's Search and Advertising businesses, and I have been involved with financial planning and analysis.  In my day-to-day work I frequently deal with financial information that Google discloses publicly as well as information that it keeps confidential.  I am generally familiar with

1

how financial data can inform strategic business decisions and the commercial sensitivity surrounding Google's non-public financial information.

3. I understand that recent court filings in this case include characterizations of confidential information about the expenses allocated to certain Google products or services, including expenses attributed to research and development for search, expenses attributed to search ads, and expenses attributed to search. These statements appear at pages 1 and 52 of Plaintiffs' Post-Trial Brief; paragraphs 582 and 597 of Plaintiffs' Proposed Findings of Fact; and paragraph 222 of Google's Proposed Findings of Fact.

4. Disclosure of these confidential financial figures from recent years would damage Google's competitive standing by giving a unique insight to Google's competitors that would inform their strategies in competing with Google. In my experience, companies attempt to estimate or predict how much their competitors spend to offer a particular product or service and the extent to which their costs are changing over time. These competitive analyses are used to inform strategic decision-making, including which products or services the company should pursue and where additional investments may or may not be beneficial.

5. In most instances, these analyses are based on estimates because Google and many other companies keep confidential their expenditures (including research and development expenditures) for particular accounting areas, products, or services. Google's parent company reports its operating expenses and research and development expenses, but not in a way that attempts to attribute portions of those expenses to search, search ads, or other specific products or services that these court filings seek to disclose. If competitors were provided with characterizations of how research and development and other expenses are confidentially allocated to particular accounting units, then they would no longer be in Google's position of

needing to rely on estimates or guesses in making strategic judgments because they would have these confidential data points to use as inputs to their competitive analyses.  Meanwhile, Google would need to continue relying on estimates or guesses because, as noted, many other companies (such as Meta, Amazon, and Microsoft) do not report research and development or other expenditures associated with particular products or services (such as Instagram, Amazon's advertising business, or Bing).

6. I understand that recent court filings in this case also include characterizations of confidential information about the profits or profit margins attributed to certain Google products or services, including the Google Search+ accounting area (which the filings sometimes appear to refer to as "Google Search" or "Google Search Ads"), Google Display and Video Ads (which the filings appear to refer to as "display ads"), and YouTube.  These statements appear at pages 15, 16, 27, and 85 of Plaintiffs' Post-Trial Brief; paragraphs 561, 590, 595, 598, 599, and 600 of Plaintiffs' Proposed Findings of Fact; and paragraph 2225 of Plaintiffs' Responsive Proposed Findings of Fact.

7. Disclosure of these confidential financial figures from recent years would damage Google's competitive standing for all of the reasons described above.  In my experience, profits and profit margins are among the financial metrics that companies attempt to estimate when evaluating performance in relation to competitors and considering whether to pursue and how to position a product or service.  Disclosure of these figures to competitors would give them strategic insights into the profitability of the areas characterized in the filing (including Google Search+, Google Display and Video Ads, and YouTube), which would benefit competitors' strategic decision-making relative to Google, given that Google generally does not have comparable information on its competitors' margins for specific products or services.

8.	Furthermore, disclosure of the profits and profit margins characterized in the filings would have the effect of disclosing the profits and profit margins for other Google Services, which is the business segment reported in Google's public financial statements. Google Services includes not only the areas referenced above (such as Search+ and YouTube), but also other areas such as devices, Google Play, and Google Maps. Google keeps confidential the financial performance of these products and services in order to avoid giving a one-sided advantage to competitors in their strategic planning. But a comparison of the information that Plaintiffs seek to disclose about certain areas (such as Search+ and YouTube) with Google's publicly reported profits and profit margins for Google Services would facilitate a calculation of the financial performance of the remainder of Google Services. This would damage Google's competitive standing in several areas (such as smartphones, app stores, and digital mapping services) by enabling competitors to more accurately identify margins for these other components of Google Services as part of their strategic analyses of which products or services to develop and how to position them in relation to Google's offerings. As noted, this would uniquely disadvantage Google because its competitors generally do not report profit margins for particular products or services, just as they do not generally report expenditures at that level of detail.

9.	I understand that recent court filings in this case also include characterizations of the revenue attributed to the Google products or services referenced above, namely the Google Search+ accounting area (which the filings sometimes appear to refer to as "Google Search" or "Google Search Ads"), Google Display and Video Ads (which the filings appear to refer to as "display ads"), and YouTube. These statements appear at pages 16 of Plaintiffs' Post-Trial Brief, and paragraphs 598, 599, and 600 of Plaintiffs' Proposed Findings of Fact.

10. Disclosure of these revenue figures from recent years would cause all of the competitive harms described above. As with expenditures and margins, revenue figures for areas such as Google Display and Video Ads and YouTube are kept confidential. Disclosing them would provide valuable insights to competitors in their strategic analyses of these services and others within Google Services, given that the revenue for other areas within Google Services could be calculated based on the disclosure of the several areas identified in this filing.

11. Disclosure of these figures would also harm Google's competitive standing by revealing confidential internal forecasts. For example, paragraph 598 of Plaintiffs' Proposed Findings of Fact includes characterizations of what "Google forecasted" for 2022. Disclosing elements of Google's internal financial forecasting for a recent year would further harm its competitive standing by revealing to its competitors a characterization of how aspects of its business are performing in relation to a confidential internal projection, which would further inform competitors' strategic analyses of areas including Search+, Display and Video Ads, and YouTube.

12. I understand that recent court filings in this case also include characterizations of the percentage of Search+ revenue attributed to Search Ads, as opposed to other advertising formats within the Google Search+ accounting area, some of which are identified by name in the filing. This percentage appears in pages 16 and 27 of Plaintiffs' Post-Trial Brief and paragraph 593 of Plaintiffs' Proposed Findings of Fact. Disclosure of this figure would harm Google's competitive standing by revealing to competitors the revenue attributable to those other advertising formats, given that competitors will have access to characterizations of total Search+ revenue and the percentage that is not attributed to Search Ads. For the reasons discussed above, giving competitors access to non-public revenue figures for specific products and services

enables them to prepare more accurate competitive analyses and identify areas where they would or would not benefit from changing their strategy in relation to Google.

*   *   *   *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ____ day of April 2024, in _____.

DocuSigned by:

*Irene Bondar*

6BC53437F981471...

Irene Bondar