IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>        Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>        Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DECLARATION OF DAVID PRICE**

I, David Price, declare as follows:

  1.  I am currently employed by Google LLC (Google) as a Legal Director. I graduated from Stanford Law School in 2006 and have been an in-house counsel for Google since 2010. I am a member of the State Bar of California.

  2.  Since 2016, I have been the Google in-house counsel principally responsible for providing legal advice to the product teams that develop and operate Google Search. I frequently receive information from Google employees regarding many facets of Google Search, including

the development of new search features and ranking models, and the risks or tradeoffs to search quality encountered by the Google Search team.

3. On numerous occasions I have evaluated the commercial sensitivity of information relating to Google Search to determine whether disclosing particular information would harm Google's competitive standing. For example, I have assessed which materials used in litigation and regulatory submissions should be subject to confidential treatment and assisted with determining which information about the operation of Google Search should be disclosed in public presentations by Google employees.

4. Google routinely contributes to the advancement of the public understanding of how search works, including through the development of popular videos intended for a general audience, materials designed to educate website operators on how to improve the quality of their webpages so they are more likely to appear on the search results page as appropriate in response to relevant user queries, and technical papers from Google researchers that advance academic understanding and introduce cutting-edge innovations.

5. At the same time, however, Google needs to keep confidential certain details about how Google Search works behind the scenes, including aspects of the algorithms used to rank search results, so that it can continue delivering the highest quality results to users. For example, while there are many signals that affect the ranking of any given webpage in response to any given query, it is important that Google not disclose the ways it has or does use signals that can be intentionally manipulated by bots (*i.e.*, automated software programs), which are capable of entering a significant number of search queries in a short amount of time. This is a challenge that Google devotes substantial resources to addressing every day, and without

Google's continuous efforts, users would find it more difficult to locate the information they are seeking.

6. Google's competitive standing would be harmed without Google's proposed redactions to paragraphs 991, 1003, and 1008 of Plaintiffs' Proposed Findings of Fact. Disclosure of these specific passages likely would affect the intensity and focus of the forms of intentional manipulation described above, by providing a roadmap to site operators who seek to impersonate real users and send to Google artificial traffic in an effort to improve their sites' search ranking at the expense of other, higher-quality sites whose operators are unwilling to similarly violate Google's terms of service. That roadmap would be more detailed than public disclosures at trial already make possible. The consequences of disclosure would include lower quality results, which directly harm Google, its users, and non-abusive site operators; consumption of Google's datacenter resources by that artificial traffic; and the need to deploy additional engineering resources to counteract attempts at manipulation.[1]

7. Google also needs to keep confidential certain details about Google Search so that competitors do not copy Google's proprietary insights or otherwise gain a strategic advantage without investing in their own research, competitive evaluations, or product development. Google employees have published many research papers about information retrieval techniques and machine learning models applicable to search in order to advance the overall rate of progress in the field. But there are different considerations when it comes to disclosing specific details about techniques or training data that Google currently uses or has used in production versions of Google Search, as those disclosures can undermine the work of Google's scientists and engineers while providing a valuable shortcut to other companies trying to solve the same problems.

---

[1] The portions of paragraph 991 that are not redacted reference testimony by Plaintiffs' expert that occurred without Google's consent to disclosure and differ from what is reflected in the confidential portions that Google seeks to redact.

8. Google's competitive standing would be harmed without Google's proposed redactions to paragraphs 176, 186, and 189 of Plaintiffs' Proposed Findings of Fact; paragraphs 135, 314, 315, 316, 318, 319, and 320 of Google's Proposed Findings of Fact; and paragraph 2025 of Plaintiffs' Responsive Proposed Findings of Fact. Each of these paragraphs discloses the author's characterization of the ranking component in question and redacts only specific details about inputs and outputs, such as volumes of data expressed as numbers or percentages. Given the disclosure in this case of the characterizations of these particular ranking components, the redactions are necessary to ensure that competitors do not also have access to more specific details about, *e.g.*, the amount of training data Google has used with a particular component. These training data sizes are the result of a balance between resources, availability, and diminishing returns on data scale, which Google has discovered following significant engineering effort and insight.

9. Google's competitive standing would be harmed by disclosure of the specific numbers redacted in paragraphs 372 and 1068 of Plaintiffs' Proposed Findings of Fact, which reflect confidential internal estimates of how search quality may affect the usage of Google Search and the revenue resulting from users clicking ads displayed in response to queries. This information is commercially sensitive in relation to Google's competitors, who would receive a one-sided insight into Google's internal financial estimates that may affect their own investment decisions, while Google does not have access to comparable internal estimates prepared by competitors of how quality changes may affect usage or revenue. In addition, Google routinely confronts adversarial attempts to reduce the quality of Google Search, and it would damage Google's competitive standing to disclose to adversarial actors the estimated effect on Google's usage and revenue of particular changes in quality.

10. Google's competitive standing would be harmed by disclosure of the specific numbers redacted in paragraph 240 of Google's Proposed Findings of Fact. I am aware of disclosures in this case of Google's evaluation of the information satisfaction (IS) gap between Google Search and Bing in the U.S., but disclosure of the numbers redacted in this paragraph would give Microsoft additional information about Google's internal evaluation of search quality in other languages.

11. Google's competitive standing would be harmed by disclosure of the specific numbers redacted in paragraph 15 of Plaintiff States' Proposed Findings of Fact and paragraph 2082 of Plaintiffs' Responsive Proposed Findings of Fact. Disclosure of Google's internal estimates of the percentage of Google Search queries that fall into a particular category (such as shopping or travel) would give competitors who focus on categories of queries (such as shopping queries or travel queries) a one-sided insight into Google's traffic patterns and corresponding business opportunities. Similarly, disclosure of a specific internal estimate of the percentage of queries that result in a particular composition of the search engine results page (SERP) would offer a strategic insight to other search services in designing their SERPs in competition with Google.

\*   \*   \*   \*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ____ day of April 2024, in _____.

_____
David Price