**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**<u>DECLARATION OF ELIZABETH DALY</u>**

I, Elizabeth Daly, declare as follows:

1.      I am currently employed by Google LLC (Google) as a Director within Google's

Legal organization.  I graduated from the University of Michigan Law School in 2007 and have

been an in-house counsel for Google since 2011.  I am a member of the New York State Bar.

2.      Since 2015, I have been the Google in-house counsel principally responsible for

supporting the legal aspects of Google's negotiation and analysis of the Information Services

Agreement (ISA) with Apple Inc. (Apple).  In addition, since 2016, I have provided legal advice

to the Google employees responsible for negotiating agreements relating to Google Search with other web browser developers, including Mozilla Corp. (Mozilla).

3.        In my role as in-house counsel, I periodically evaluate the commercial sensitivity of information relating to these subjects and assess whether disclosing particular information would harm Google's competitive standing.  That includes, for example, determining whether to seek confidential treatment for materials submitted to regulators and deciding whether information shared with business partners should be subject to a non-disclosure agreement.

4.        I am familiar with JX0024, which is a Joint Cooperation Agreement between Google and Apple dated May 15, 2014 (JCA) that, among other things, amends the Information Services Agreement (ISA) between Google and Apple dated December 20, 2002.  I am also familiar with JX0033, which is an Amendment to the ISA between Google and Apple dated September 30, 2016 (2016 ISA Amendment).  Although Google and Apple extended the term of the ISA through an amendment in 2021, many of the provisions of the JCA and 2016 ISA Amendment remain in effect today.

5.        With the exception of certain terms that have been made public in connection with this case and other litigation (and therefore are no longer subject to Google's redaction request), the terms of the JCA and 2016 ISA Amendment are confidential.  Distribution of the JCA and 2016 ISA Amendment continues to be tightly restricted within Google because of their confidential nature and commercial sensitivity.

6.        Disclosure of the redacted terms of the agreements will harm Google's competitive standing in at least two distinct ways.  First, further disclosure of the terms of these agreements will give a strategic advantage to other search engines that seek to be the default in Apple's Safari browser.  Google negotiated and entered these agreements under a non-disclosure

agreement with the understanding that Apple also confidentially negotiates and potentially enters agreements with other search engines.  If the terms are disclosed to those other search engines, then they will have a one-sided advantage in future negotiations with Apple because they will know exactly which terms Google has accepted and can prepare their proposals accordingly. Google will be uniquely disadvantaged in negotiations that have occurred confidentially for many years under circumstances where other search engines are able to enter confidential agreements with Apple and numerous other counterparties, including other web browser developers and original equipment manufacturers (*e.g.*, companies that make Windows PCs, Android smartphones, and other devices that consumers use to search for information).

7.      Second, further disclosure of the terms of these agreements will impair Google's competitive standing by undermining its ability to negotiate commercial agreements with other counterparties who currently promote Google Search or may wish to do so in the future.  In my experience providing legal advice to the businesspeople who negotiate agreements with browser developers such as Apple and Mozilla, the terms are addressed individually and may become the subject of a compromise because different counterparties have different interests and priorities. Google's ability to conduct these individualized commercial negotiations and reach compromises that work for both sides would be impaired if the precise terms it agreed to with Apple were used against it by another counterparty or by other search engines negotiating for the same opportunity with that counterparty.  Again, Google would be uniquely unable to engage in these ordinary commercial negotiations because agreements between search engines and counterparties such as browser developers and original equipment manufacturers generally are confidential.

8.      Google's competitive standing would be harmed by disclosure of the "Default Bookmark" provision of the JCA on pages -822 and -823.  It is publicly observable that other companies—including various search engines—have the same kind of "Default Bookmark" in Safari that is the subject of this provision, but I do not have access to any confidential contracts relating to those arrangements.  Disclosing the terms negotiated by Apple and Google would provide a one-sided advantage to competitors, who could use the information in formulating proposals to diminish or displace the promotion of Google in Safari or to affect Google's separate negotiations with other browser developers who have introduced or may introduce a similar feature.  Paragraphs 2171, 2396, and 2477 of Plaintiffs' Responsive Proposed Findings of Fact include characterizations of the confidential and commercially sensitive provisions that Google seeks to redact from pages -822 and -823 of the JCA.  For the same reasons, Google seeks to redact the corresponding portions of these passages.

9.      Google's competitive standing would also be harmed by disclosure of the two remaining redacted numbers in paragraph 4 under Section (1) on page -822 of the JCA.  These specific details would provide a strategic insight to other companies seeking to replace Google as the default search engine in Safari and would also affect Google's ability to engage in individualized negotiations of similar provisions with other counterparties.  For these reasons, Google also seeks to redact the same specific details from paragraphs 217, 218, and 358 of Plaintiffs' Proposed Findings of Fact.

10.     Sections (2) and (3) of the confidential JCA do not relate to Google Search.  As indicated in the preamble of the JCA, they address "a litigation dismissal and executive escalation mechanism" and "a collaboration framework regarding patent policy and reform."

The final section, titled "Miscellaneous," contains negotiated commercial terms that are generally applicable to the agreement but are not specific to Google Search.

11.     With regard to the 2016 ISA Amendment, Google's competitive standing would be harmed by disclosure of the "Spotlight" and "Siri" provisions on pages -794 and -795, which are negotiated provisions that include details specific to the referenced Apple services. Disclosing the negotiated terms to competitors such as Microsoft—which was the default search results provider for Spotlight and Siri for several years until 2017—would provide those competitors with a tactical advantage in future negotiations with Apple.

12.     The remaining subsections on page -795 and the section titled "Audit" on pages -801 and -802 are provisions that detail processes for the exchange of information about Google's compliance with its payment obligations under the agreement.  These provisions are commercially sensitive because Google individually negotiates information-sharing obligations with each counterparty based on the parties' priorities and a consideration of factors such as user privacy, technical feasibility, and administrative cost.  Disclosing the specific terms Google was willing to accept in the 2016 ISA Amendment would impair its ability to engage in individualized negotiations with other browser developers going forward.

13.     Pages -796 to -799 of the 2016 ISA Amendment include commercially sensitive provisions detailing which search queries are subject to revenue share payments, the manner of calculating the payments owed, and what happens if a party fails to perform under the agreement.  These terms would be especially valuable to competitors who also negotiate and potentially enter confidential agreements with Apple, and therefore the harm to Google's competitive standing from disclosure would be especially acute.  While I understand that certain current and historical revenue share percentages for qualifying queries have been disclosed

publicly (and therefore are not subject to Google's redaction requests), the additional detail that remains confidential would provide a precise roadmap to competitors bidding for the same opportunity to be the default search engine in the Safari browser.

14.     Furthermore, disclosure would impair Google's ability to engage in ordinary commercial negotiations with other counterparties because each negotiation involves its own consideration of how the revenue share payments are calculated, including how revenue share payments are calculated and which costs are deducted.  Publicizing the terms negotiated by Apple and Google would affect Google's negotiations with other counterparties, in addition to providing valuable one-sided insights to competitors who also negotiate with counterparties other than Apple.

15.     The contents of the confidential and commercially sensitive provisions that Google seeks to redact from pages -796 to -799 of the 2016 ISA Amendment are characterized in page 47 (footnote 13) of Plaintiffs' Post-Trial Brief; paragraphs 225 and 226 of Plaintiffs' Proposed Findings of Fact; and paragraph 2373 of Plaintiffs' Responsive Proposed Findings of Fact.  They are also reflected in the confidential and commercially sensitive payment amounts included in paragraphs 12 and 935 of Plaintiffs' Proposed Findings of Fact and paragraph 2372 of Plaintiffs' Responsive Proposed Findings of Fact.  For all of the reasons stated above, Google seeks to redact the corresponding portions of these passages.

16.     The final paragraph of Section 5 on page -799 and Section 7 on page -800 each contain confidential detail regarding potential termination dates for the 2016 ISA Amendment, which in turn informed the potential termination dates reflected in the 2021 amendment to the ISA. While I understand that two potential termination dates have been made public, the terms of the 2016 ISA Amendment reflect additional detail regarding the circumstances under which

various dates may apply.  These details would be strategically valuable to competitors seeking to provide the default search service that Google presently provides under the ISA by notifying those competitors when the agreement may expire, and disclosure therefore would harm Google's competitive standing in relation to those future negotiations.

17.     The potential termination dates of the 2016 ISA Amendment are included in paragraphs 1265 and 1272 of Google's Proposed Findings of Fact, and the potential termination dates currently in effect following the 2021 extension are included in page 38 of Plaintiffs' Post-Trial Brief, paragraph 220 of Plaintiffs' Proposed Findings of Fact, and paragraph 1273 of Google's Proposed Findings of Fact.  Both sets of dates are included in paragraph 2328 of Plaintiffs' Responsive Findings of Fact.  For all of the reasons stated above, Google also seeks to redact the corresponding portions of those passages.

18.     The redacted portion of Section 9 of the 2016 ISA Amendment (and certain redactions to pages -796 to -799 addressed above) contain additional information about the potential termination of the agreement or alteration of payment obligations under the ISA. Disclosure of this information would harm Google's competitive standing because of the possibility that third parties could seek to bring about conditions that result in termination or alteration in order to deprive Google of the expected benefits of the agreement.

19.     Sections 6, 8, and 14 are individually negotiated provisions addressing limitations of liability between the parties, the branding and presentation of Google's results, and any applicable tax obligations—subjects that also tend to be negotiated in agreements with other browser developers.  Disclosure of the particular terms that Google agreed to in the 2016 ISA Amendment would undermine Google's competitive standing by affecting its ability to engage in individualized negotiations with other counterparties going forward.

20.     Section 12 contains commercially sensitive provisions detailing which search queries are subject to revenue share payments and the manner of calculating the payments owed, disclosure of which would harm Google's competitive standing for the reasons discussed in connection with the redactions to pages -796 to -799 of the 2016 ISA addressed above.

21.     Sections 11 and 13 contain negotiated commercial terms that are generally applicable to the agreement but do not specifically address Google Search.

22.     The following pages and paragraphs of the filings contain characterizations of confidential documents hypothesizing what might happen if Apple no longer set Google as the default search engine in Safari at certain points in time: Pages 44, 45, 50 and 66 of Plaintiffs' Post-Trial Brief; paragraphs 733, 917, 918, 919, 924, 927, 928, 941, 1099, and 1266 of Plaintiffs' Proposed Findings of Fact; and paragraph 132 of Google's Responsive Proposed Findings of Fact.  The specific numbers that Google seeks to redact from these passages would harm Google's competitive standing if released due to the likelihood that Apple and other counterparties with whom Google negotiates would use them against Google in future negotiations, and the likelihood that Google's competitors would use the numbers to undermine Google's interests in their own future negotiations with the same counterparties.  In my experience providing legal advice to the businesspeople who negotiate commercial agreements, finance employees sometimes contemplate various potential worst-case scenarios because the outcome of the negotiations are uncertain and complete information is not available.  Particular internal hypotheses about what a competitor may be willing to pay for an opportunity or what might happen if a deal is not reached are kept confidential because sharing them with the counterparty or other bidders would undermine the ability to engage in ordinary arms-length negotiations.

23.    Paragraph 2374 of Plaintiffs' Responsive Findings of Fact contains a characterization of the percentage of queries on Apple iOS devices that originate from particular access points.  While Google does not seek to redact certain estimates referenced by Plaintiffs from earlier years, disclosure of these more recent data points would harm Google's competitive standing by giving other firms a strategic advantage in understanding how consumers use Google Search on specific device types and in preparing competing offers to replace Google as the default in Apple's Safari browser.

24.    Google seeks redactions to page 70 of Plaintiffs' Post-Trial Brief; paragraphs 311 and 348 of Plaintiffs' Proposed Findings of Fact; and paragraph 2351 of Plaintiffs' Responsive Proposed Findings of Fact because they contain confidential and commercially sensitive details from Google's agreement with Mozilla, namely revenue share percentages (and a comparison to another counterparty's percentage) and the definition of a term specific to the agreement with Mozilla.  As with the Apple agreement discussed above, these particular terms are individually negotiated and not shared with competitors or other counterparties.  Disclosing the terms would harm Google's competitive standing by giving one-sided insights to other search engines seeking to be the default in Mozilla's Firefox browser and by impairing Google's ability to engage in individualized negotiations with other browser developers going forward.

25.    Paragraphs 317 and 318 of Plaintiffs' Proposed Findings of Fact contain revenue share percentages paid by Google under an agreement to be the default search engine in Opera's browser and the duration of agreements to be the default search engine in Opera and UC Web's browsers.  As discussed, disclosure of revenue share percentages and term lengths harms Google's competitive standing by giving commercially sensitive information to competitors who negotiate and enter confidential agreements with these same counterparties or others, and by

hindering Google's ability to engage in the kind of individualized commercial negotiations with each counterparty that are commonplace in my experience.

\*       \*       \*       \*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this \_\_\_\_ day of April 2024, in _____.

DocuSigned by:

*Elizabeth Daly*
CA
[497D4DDC42F4F7...

Elizabeth Daly