**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*,<br><br>                              Plaintiffs,<br><br>    v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>                              Plaintiffs,<br><br>    v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

<u>**DECLARATION OF SANG EUN (KATE) LEE**</u>

I, Sang Eun Lee (using Kate as my first name at Google), declare as follows:

1.      I am currently employed by Google LLC (Google) as a legal director.  I graduated from the University of New Hampshire (formerly known as Franklin Pierce) School of Law in 1998 and have been an in-house counsel for Google since 2010.  I am a member of the State of New York Bar.

2.      Since late 2017, my responsibilities have included providing legal support to the Google product and business teams that develop and distribute the Android mobile operating system and Google applications that are developed to run on the Android operating system.

1

During that time, I have also received information from Google employees regarding the negotiation and analysis of agreements between Google and a range of partners who participate in the Android ecosystem, including original equipment manufacturers (OEMs) that make smartphones and other Android devices as well as wireless carriers that sell those devices to consumers.

3.      My work as in-house counsel sometimes involves determining the commercial sensitivity of information relating to the Android ecosystem and evaluating whether disclosing the information would harm Google's competitive standing.  That includes, for example, determining whether to seek confidential treatment for materials submitted to regulators and deciding whether information shared with business partners should be subject to a non-disclosure agreement.

4.      I am familiar with JX0091, which is a Google Mobile Revenue Share Agreement with AT&T Mobility LLC (AT&T) effective June 1, 2021 (the 2021 AT&T RSA), and JX0071, which is a Google Mobile Revenue Share Agreement with Samsung Electronics Co., Ltd. (Samsung) effective July 1, 2020 (the 2020 Samsung RSA).  Disclosure of these agreements would harm Google's competitive standing in relation to various competitors and counterparties, including other search engines, OEMs, and wireless carriers.  Much of the information that Google seeks to redact from the filings discussed in further detail below also consists of individually negotiated terms from current or recent RSAs with Android OEMs or carriers. There are several reasons why the terms of these agreements are commercially sensitive from Google's perspective.

5.      First, disclosure of the RSA terms that Google seeks to redact would harm Google's competitive standing by giving other search providers a unique advantage in

negotiating for the forms of elevated promotion described in the RSAs.  In my experience providing legal advice to the business teams that negotiate with OEMs and carriers, this kind of confidentiality is expected among Google and its counterparties.  For example, I do not have access to confidential contracts between Microsoft and OEMs such as Lenovo, which is party to an Android RSA with Google and also a leading manufacturer of Windows PCs, where my understanding is that Microsoft's Edge browser and Bing search engine are preinstalled. Similarly, I do not have access to confidential contracts between Microsoft and Samsung, which is party to an Android RSA with Google and preinstalls its own browser where Bing is among the prepopulated options that users can select instead of Google for searches entered in the browser's address bar.

6.      Disclosure of the RSA terms that Google seeks to redact would also harm Google's competitive standing by undermining Google's ability to negotiate with each of its partners individually.  For example, even with RSAs entered around the same time in the same country (such as the RSAs with U.S. wireless carriers), there are differences among the agreements because each counterparty has its own preferences and objectives, and the negotiations result in different compromises.  Google's ability to conduct ordinary commercial negotiations and reach compromises that work for both sides will be harmed if each counterparty has access to formerly confidential provisions from agreements with other counterparties.

7.      Because many companies participate in the Android ecosystem, the disclosure of RSA terms harms Google's competitive standing in many different negotiations.  For example, if Google's confidential RSA with a U.S. wireless carrier is made public, that directly affects negotiations with other U.S. wireless carriers who are party to RSAs.  But it also affects Google's RSA negotiations with OEMs that make the devices sold by U.S. wireless carriers

because Google also negotiates RSAs with OEMs, and because agreements with carriers have provisions addressing device configuration requirements which can be a commercial negotiation object between OEMs and carriers, and also with Google.

8.    The harms described above have already started occurring as a result of certain disclosures made in late 2023, including the release of certain RSAs with Android OEMs in a different litigation.  In recent months some counterparties have taken positions in discussions with Google employees that are based on the public disclosures of the terms of those other agreements.  The disclosure of more RSAs with different terms would make it even more difficult for Google to reach mutually beneficial compromises with individual partners such as those addressed here, and would provide even more information to competitors on how to structure their own proposals.

9.    With respect to the 2021 AT&T RSA and the 2020 Samsung RSA, the revenue share percentages in Attachment A to the agreements are commercially sensitive and disclosure would harm Google's competitive standing for all of the reasons stated above.  The revenue share percentages from other agreements that were disclosed in late 2023 have already harmed Google's competitive standing by affecting Google's discussions with certain counterparties, and these additional percentages would provide valuable information to search engines competing for the same opportunities.  For all of the same reasons, the current or recent revenue share percentages or similar payment-related terms should also be redacted from page 41 of Plaintiffs' Post-Trial Brief; paragraphs 268, 273, 276, 278, 283, 285, 296, 298, 802, 823, 824, 827, 828, and 1286 of Plaintiffs' Proposed Findings of Fact; paragraphs 1485, 1488, 1489, 1490, 1493, 1494, 1495, 1499, 1500, 1505, 1506, 1573, 1578, 1580, and 1691 of Google's Proposed Findings of

Fact; paragraph 2440 of Plaintiffs' Responsive Proposed Findings of Fact; and paragraphs 217

and 248 of Google's Responsive Proposed Findings of Fact.

10.     Google also seeks to redact the end dates of the 2021 AT&T RSA, the 2020

Samsung RSA, and other current and recent agreements, as indicated in paragraphs 239, 255,

274, 281, 286, and 300 of Plaintiffs' Findings of Fact.  Disclosure of the end dates of specific

agreements would harm Google's competitive standing by notifying competitors exactly when

the agreements expire so that they can prepare competing offers accordingly, even though

Google does not have access to the same kind of information about competitors' agreements.

Disclosure would also affect Google's ability to conduct individualized negotiations, as the

duration of the RSAs varies, and the negotiating positions of a carrier or OEM can be affected by

knowledge of the status of Google's agreement with other carriers or OEMs with which it

competes.

11.     The 2021 AT&T RSA and 2020 Samsung RSA also contain certain definitions

that would harm Google's competitive standing if disclosed because they tend to be individually

negotiated based on each counterparty's priorities and preferences.  In particular, the definitions

of the terms that are part of "Alternative Service" (such as "Alternative Search Service") and the

definitions of "Search Access Point" fall into this category.  Some but not all negotiations with

OEMs and carriers involve revisions to proposed definitions of these terms, and in some

instances the negotiations result in significant variation (e.g., 2021 AT&T RSA Section 1.5 and

1.7; 2020 Samsung RSA Section 1.5 and Attachment E).  Google's ability to reach agreement on

a specific request from a particular counterparty for a different construct would be undermined if

all of the collective compromises with many counterparties were made public.  For all of the

same reasons, Google seeks to redact the definitions in paragraphs 262, 263, 357, 359, and 861

of Plaintiffs' Proposed Findings of Fact; paragraphs 1638, 1640, 1643, 1644, 1648, 1656, 1658,

1659 of Google's Proposed Findings of Fact; paragraphs 2458 of Plaintiffs' Responsive

Proposed Findings of Fact; and paragraph 279 of Google's Responsive Proposed Findings of

Fact.

12.     Additional provisions of the RSAs also tend to be individually negotiated in this

manner, such that disclosure of the compromise reached with one counterparty would have a

detrimental effect on Google's ability to reach mutually beneficial agreements with many OEMs

and carriers, which would harm its competitive standing.  In particular, specific

browser-placement implementations and agreements regarding security and letter updates vary

for a number of reasons, including the priorities expressed by different counterparties.  In order

to continue to engage in individualized commercial negotiations regarding these provisions,

redactions have been applied to portions of the agreements discussed above (e.g., Section 4.4 and

Attachment B to the 2021 AT&T RSA); paragraphs 266 and 277 of Plaintiffs' Proposed Findings

of Fact; and paragraphs 1493, 1494, 1499, 1505, 1596 of Google's Proposed Findings of Fact.

For much the same reason, Google seeks to redact the description of a provision of a provision of

a Mobile Services Incentive Agreement with AT&T, which is separate from the AT&T RSA, in

paragraph 230 of Google's Responsive Proposed Findings of Fact.

13.     Other provisions of the RSAs are also kept confidential because they reflect the

specific bargain reached by Google and a particular counterparty, and Google's competitive

standing would be harmed by allowing competitors to strategize based on the precise

compromises reached and by allowing other counterparties to negotiate from data points that are

themselves the result of a balance of interests.  That includes, for example, the way that Google

has agreed to operationalize security update agreements or address limitations of liability (e.g.,

Attachment C to the 2021 AT&T RSA and Section 14 of the 2021 AT&T RSA).

14.     In addition, Google seeks to redact limited portions of paragraphs 294 and 784 of

Plaintiffs' Proposed Findings of Fact; paragraphs 1480 and 1654 of Google's Proposed Findings

of Fact; and paragraph 117 of Google's Responsive Proposed Findings of Fact because they

contain confidential characterizations of the RSAs with particular counterparties, including the

percentage of revenue share payments attributable to specific partners.  Disclosure would harm

Google's competitive standing by affecting its relationship with the referenced counterparties and

other counterparties with whom Google negotiates, since they are generally not familiar with

each other's negotiating positions or amounts received through particular agreements.  It would

also reveal commercially sensitive details to competitors about the precise payment amounts to

particular partners.

15.     For similar reasons, Google seeks to redact characterizations of revenue

projections for the Play Store, including characterizations tied to specific counterparties, which

appear at page 71 of Plaintiffs' Post-Trial Brief; paragraphs 239 and 1313 of Plaintiffs' Proposed

Findings of Fact; and paragraph 300 of Google's Responsive Proposed Findings of Fact.  These

characterizations would harm Google's competitive standing by revealing commercially

sensitive financial projections to competing app stores, which generally would not be expected to

disclose specific numbers associated with forward-looking forecasts because it would reveal

assumptions about how particular services are expected to perform.  Disclosure would also harm

Google's negotiations with individual OEMs by revealing characterizations of revenue that the

author of the filing associates with devices sold by a particular OEM.

16.     Google seeks to redact characterizations of granular data or estimates regarding search usage on Android devices, including the percentage of search revenue that originates from specific access points.  These redactions appear at paragraphs 793, 794, 795, and 803 of Plaintiffs' Proposed Findings of Fact; paragraphs 1565, 1567, 1573, 1592, and 1635 of Google's Proposed Findings of Fact; and paragraphs 248 and 288 of Google's Responsive Proposed Findings of Fact.  Several of these characterizations are specific to particular devices (such as Samsung smartphones, particular Samsung models, or the Google Pixel), and disclosure would harm Google's competitive standing in negotiations with other counterparties by revealing proprietary details about the sources of revenue from one partner's devices that would not be available to other counterparties.  The release of these data points, as well as those that reference Android devices generally, would also harm Google's competitive standing in relation to competitors, who would benefit strategically in competing for placement on devices if they had additional proprietary information about the relative share of revenue attributable to particular configurations or access points (e.g., the Google Search Application preloaded in a folder of Google applications).

17.     Google seeks to redact characterizations of a document regarding Samsung changing the default search engine in its browser, which appear at page 45 of Plaintiffs' Post-Trial Brief and paragraph 926 of Plaintiffs' Proposed Findings of Fact.  Disclosure of these characterizations would harm Google's competitive standing in future negotiations with RSA counterparties by providing internal Google estimates of usage in other browsers (such as Microsoft Edge).  Disclosure would also harm Google's competitive standing by providing characterizations of an internal Google document to competitors seeking the same promotional

opportunities, which they could use against Google in a one-sided manner in future negotiations with Samsung and other current or future Google partners.

18.     Google seeks to redact characterizations of the sales volumes of Google's Pixel smartphone in relation to other Android smartphones in paragraph 1315 of Plaintiffs' Proposed Findings of Fact and paragraph 301 of Google's Responsive Proposed Findings of Fact.  While there are varying third-party estimates of sales of particular smartphone models, characterizations of internal Google information would harm Google's competitive standing in relation to other smartphone OEMs by providing a non-public data point on the relative sales performance of Pixel.  And given that the characterizations are expressed in percentage terms, disclosure could also divulge sales volumes of other OEMs' devices.

19.     Google seeks to redact the percentage of selections of particular search engines on the choice screen implemented on Android devices in certain European countries reflected in paragraphs 570, 1427, 1428, 1429, and 1430 of Google's Proposed Findings of Fact, and paragraph 87 of Google's Responsive Proposed Findings of Fact.  My understanding is that information relating to choice screen selections is provided on a confidential basis to regulators in Europe, and each participating search engine also receives information about its own selections but not information relating to other search engines' selections.  Google's competitive standing could be harmed by disclosure of information prepared confidentially for a regulator, and Google does not seek to affect the competitive standing of other search engines by releasing information to their competitors that Google provides to each of them individually.

*       *       *       *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _____ day of April 2024, in _____.

9

Sang Eun (Kate) Lee