**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-3010 |
| v. | HON AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

| | |
|---|---|
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-3010 |
| v. | HON AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**MEMORANDUM IN RESPONSE TO COURT'S MARCH 15, 2024, ORDER**

Pursuant to the Court's March 15, 2024, order, Dkt. 850, The New York Times Company ("The Times") files this memorandum stating its position on disputes with Google and non-parties regarding the sealing of trial exhibits and other records.[1] The Times submits its position statements without the benefit of seeing the declarations of Google and non-parties in support of sealing, which will be filed today. The Times also incorporates its prior briefing in support of its motion for access to judicial records. *See generally* NYT Br. at 8-12; NYT Reply Br. at 2-6.

**The Court Should Grant The Times's Motion**

The records still in dispute fall primarily into three buckets: (i) the allegedly anticompetitive contracts between Google and third parties that are at the heart of this case; (ii) trial exhibits produced by Microsoft; and (iii) trial exhibits produced by Apple.[2] Each category of documents is discussed in detail below. At the outset, though, several points are worth highlighting:

*The Hubbard Factors Favor Disclosure of Trial Exhibits, Absent a Showing of Competitive Harm*.[3] As The Times — and the Court — has said before, trial exhibits are subject

---

[1] This memorandum uses the following abbreviations: "NYT Br." for The Times's opening brief in support of the motion for access to judicial records (Dkt. 800-1); "Sumar Decl." for the declaration of Al-Amyn Sumar submitted in support of the motion (Dkt. 800-3); "JSR" for the joint status report filed by the parties on January 26, 2024 (Dkt. 808); "Apple Br." for the brief submitted by Apple in opposition to the motion (Dkt. 812); "Google Br." for the brief submitted by Google in opposition to the motion (Dkt. 813); "Microsoft Br." for the brief submitted by Microsoft in opposition to the motion (Dkt. 814); "NYT Reply Br." for The Times's reply brief in support of the motion (Dkt. 836); "Gandhi Decl." for the declaration of Maya Gandhi that The Times is contemporaneously filing with this memorandum.

[2] The Times is submitting copies of the records still in dispute with a contemporaneously filed declaration. *See* Gandhi Decl. Ex. A, B, C, D.

[3] The *Hubbard* factors are: "(1) [T]he need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *CNN, Inc.*

to a strong presumption of access. The first and sixth *Hubbard* factors favor disclosure, given the "heighten[ed]" public interest in evidence presented to a court in a "government enforcement action" and the basic fact the records were, by definition, "presented at a trial." NYT Br. at 11 (quoting Oct. 4, 2023, PM Tr. at 4364:4-8, 4365:8). Factor two varies by document, but as discussed below, prior public access to information in many of the documents bolsters the case for disclosure. To the extent the documents at issue are Google's, a party to the case, the third factor also favors disclosure. *See United States v. James*, No. 21-cr-28-12, 2021 U.S. Dist. LEXIS 235358, at *6 (D.D.C. Aug. 23, 2021) (Mehta, J.). Together these factors create a strong presumption of access that can be overcome only if Google or a third party shows that factors four and five win the day — *i.e.*, that disclosure of the redacted material would actually do them competitive harm. *See* NYT Br. at 8; *see, e.g.*, *King & Spalding, LLP v. HHS*, No. 16-cv-1616, 2020 U.S. Dist. LEXIS 60949, at *7 (D.D.C. Apr. 7, 2020) (Mehta, J.) (noting that "a weak inference of competitive harm . . . cannot overcome the strong public interest in disclosure"). That burden is a heavy one.

*The Right of Access Applies to the Entirety of a Trial Exhibit.* The Times has made its position on this issue clear: the right of access applies to a trial exhibit in its entirety, not merely to the portions used with a witness, discussed on the record, or reviewed for confidentiality. *See, e.g.*, NYT Br. at 5-8; NYT Reply Br. at 3-4 & n.3. But two specific points warrant emphasis. First, the principle that the access right applies to the entirety of a trial exhibit has special force for the Google contracts. The Court has suggested that the public has no (or a very limited) right of access to provisions in these contracts that are not specifically at issue in this litigation. *See,*

---

*v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021); *see United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980).

*e.g.*, Mar. 11, 2024, Tr. at 32:4-14. But these are not run-of-the-mill exhibits: they are themselves the allegedly illegal conduct on which the entire case rests. As to these records, then, the presumption of access is at its apex.

Second, Microsoft and Apple's position that no right of access applies to the portions of emails not "publicly presented or substantively discussed" during public testimony, Microsoft Br. at 4; *see also* Apple Br. at 6, is not merely wrong — it is also directly at odds with what the Court has said in this case. At the August 11, 2023, pretrial conference, the Court discussed the factors that in its view determine the weight of the access right to a given document. One of these factors is the nature of the exhibit — "what the exhibit is." Aug. 11, 2023, Tr. at 18:2-3. The Court went on to distinguish "lengthy contracts" and "slide decks," on one hand, from emails, on the other:

> At the other end of the spectrum is email, right? You've got a single email between a handful of people. You know, that's a different kettle of fish, it seems to me. That's the kind of record that probably is less likely to be subject to heavy redaction, because most of the email, presumably, because it's being presented, is something that's going to have greater relevance as a percentage of the overall document, if you understand where I'm coming from.

*Id.* at 18:22–19:5.[4] In other words, even if the right of access to the entirety of a trial exhibit turns on the nature or length of a document (a premise The Times disputes), the Court has already expressed its view that the entirety of an email is presumptively public — even if only a portion of the document is used with a witness or discussed on the record.

*The Times Does Not Dispute Redactions for Personal Information.* To be clear, The Times does not seek to unseal personal information, like email addresses and phone numbers, in any of the exhibits.

---

[4] The Times no longer disputes redactions to exhibits containing slide decks. It also does not dispute redactions to DX1036, an agreement between nonparties Samsung and Branch.

**The Contracts**

The Times continues to oppose the redactions applied to the key contracts identified in its previous briefing: JX24, JX33, JX71, JX91, and JX99.[5] As documents that reflect the allegedly anticompetitive conduct at the core of this case, these agreements are a paradigmatic case for disclosure under *Hubbard*, 650 F.2d at 317-21. Plaintiffs support The Times's efforts to unseal these agreements in full, with the exception of "current revenue shares or those in effect within the prior 7 years that have not [been] previously disclosed publicly." JSR at 17;[6] *see also* Mar. 11, 2024, Tr. at 49:23–50:3 ("We're supportive of The New York Times' motion to disclose the entirety of the agreements. These form the very core of Google's anti-competitive conduct." (cleaned up)). In short, the disclosures since the Court's assessment of these redactions during trial — combined with the significant burden to overcome the public's right of access, which becomes "correspondingly higher" as this case approaches a decision — Mar. 11, 2024, Tr. at 17:21–18:7 — merit unsealing of these records, with any redactions requiring justification in the form of a concrete demonstration of competitive harm.

<u>2016 Apple-Google ISA (JX33) & 2014 Apple-Google JCA (JX24).</u> Perhaps no documents are more central to this case than the 2016 ISA and the 2014 JCA, which was superseded by the 2016 ISA in some respects. These agreements, and the others discussed below, "are at the heart of Google's illegal conduct." JSR at 17. But both agreements remain redacted in significant part. Google and Apple have claimed that disclosure of at least some of the redacted

---

[5] JX37 has been released in near-full, with only personal information redacted. Thus, The Times does not consider this exhibit to be at issue.

[6] However, Plaintiffs caveated, "[t]o the extent a non-party's current revenue shares have been disclosed, Plaintiffs object to redacting historic revenue shares, as disclosure of such information would not injure the parties to such an agreement." *Id.*

4

material would cause them serious commercial harm. Google Br. at 2-4; Apple Br. at 3-5. But this notion is belied by disclosures elsewhere — related to both the 2016 ISA and similar agreements — as well as other courts' treatment of major agreements like these.

In the *Epic* case, for example — another suit against Google for antitrust violations — Judge Donato unsealed, in full, many of the allegedly anticompetitive contracts between Google and third parties, including agreements at issue in this case. *See Epic Games, Inc. v. Google LLC*, 3:20-cv-05671-JD (N.D. Cal.), Ex. 5399 (2018 Google-Motorola MADA, ECF No. 623-40); Ex. 1231 (2020 Google-Motorola MIA, ECF No. 622-75) (JX62); Ex. 5255 (2017 Google-Samsung MADA, ECF 623-39) (JX37).[7] At the very least, this unsealing reflects his view that disclosure of these central agreements was unlikely to cause commercial harm to either Google or the contracting non-party. But Judge Donato also articulated, on the record, a key principle that undermines many of Google and the third parties' objections: the mere fact that a contract term is heavily negotiated or unique to a particular agreement is not enough to establish commercial harm. *See* Nov. 7, 2023, Tr. at 336:6-14, *Epic Games, Inc.*, 20-cv-05671-JD ("[Y]ou've got a million contracts with developers, and . . . if each one has its own unique terms and that's the hook for sealing . . . I can't do that. It's just going to be too much sealing. So I'll take a look at it, but I'm inclined to let you do the ones that are currently actively being negotiated but not the ones that are already on the page and signed."). Here, moreover, as in *Epic*, "disclosure of these agreements will not only facilitate public understanding [of the issues] but also serve as an example to other companies as to what types of conduct are illegal." JSR at 17. Though Judge

---

[7] As Judge Donato said, "[t]he public has a right of access. That is particularly true in antitrust cases which affect our economy and the daily lives of people and their pocketbooks. We are not going to have a shroud of secrecy in this case." Nov. 7, 2023, Tr. at 330:4-10, *Epic Games, Inc.*, 20-cv-05671-JD.

Donato upheld some redactions to the 2016 ISA (his reasons for doing so are unclear), that agreement was not at the center of the *Epic* case, as it is here.

The *Epic* litigation is relevant in another sense: Google and non-parties here continue to redact information that has already become public through that case. As to the 2016 ISA, for instance, testimony in the *Epic* case confirmed the revenue share (36%), contract price ($18 billion), and termination date (2031). NYT Br. at 10.[8] Yet, these terms remain under seal in the version of the 2016 ISA released by Google here. The entire "Term & Termination" paragraph (p. 8) remains redacted, for example, even though the central term is already public.[9] Though one figure in the ISA has been unredacted (the 40% revenue share figure on p. 5), the surrounding terms remain under seal.

The absence of any justification for the redactions to the 2016 ISA also underscores the need to unseal the 2014 JCA, which covers many of the same terms and which the ISA superseded in part. Some terms that remain redacted — such as the required threshold for additional country exclusions — are central to Google's allegedly impermissible conduct as demonstrations of Google's immense negotiating power, a function of its market dominance. Their redaction, then, elides the point of *Hubbard* and public access: to give the public the context necessary to understand the government's case.

2020 Google-Samsung RSA (JX71). The 2020 Revenue Share Agreement between Google and Samsung has also been the subject of disclosures that undermine the potential commercial harm from unsealing. In the *Epic* litigation, for example, the Court admitted into

---

[8] The revenue share in the 2016 ISA was also disclosed in this trial. Nov. 13, 2023, AM Tr. at 9785:15.

[9] The previous iteration of this provision is also unredacted in the 2014 JCA, further undermining the case for sealing here.

evidence a detailed summary of the 2020 RSA, with no redactions. *See* Samsung 2020 Mobile Incentive Agreement(s) Executive Summary, *Epic Games, Inc.*, 3:20-cv-05671-JD, ECF No. 622-73 (attached as Gandhi Decl. Ex. E). That document reflects all of the agreement's key terms, including the contract price and the revenue share. *Id.* at 3-4. Google's CEO Sundar Pichai also testified to that revenue share figure in the *Epic* trial. Sumar Decl. Ex. C at 1359. The Times has seen no evidence that those disclosures have caused commercial harm to either Google or Samsung. At the very least, then, the Court should unseal the two portions of the 2020 RSA that are available elsewhere on the record: Attachment A to the agreement, which is exclusively about the now-public Samsung revenue share, and the definition of "alternative search service." That term, which refers to potential substitute products, is highly relevant to the allegedly monopolistic conduct at issue, and the equivalent definition has been disclosed in other negotiated agreements, such as the 2020 Motorola MIA. *See* JX62.

<u>2021 Google-AT&T RSA (JX91).</u> As above, the broad sealing of the Google-AT&T RSA is unjustified given both its centrality to this case and prior disclosures about the agreement. First, a presentation publicly docketed in the *Epic* case (and now made available in this litigation) discusses Google's three-tiered deal framework and details Google's offer to AT&T. *See* UPX1077 at 7. In her testimony, Google's Adrienne McCallister, who negotiated the agreements with the carriers, confirmed the 20% figure. Nov. 7, 2023, PM Tr. at 9380: 4-8. Yet, the revenue share figures remain redacted in Attachment A to the agreement. Second, and as above, the definition of "alternative assistive search" remains redacted, despite its unsealing elsewhere and its relevance to this case.

<u>2020 Google-Motorola MADA Amendment (JX99).</u> This agreement, too, remains redacted in large part. Notably, the 2018 Google-Motorola MADA — the document that this

7

agreement amends, and which is presumably just as commercially sensitive — was disclosed in full in *Epic*. *See Epic Games, Inc.*, 3:20-cv-05671-JD, Ex. 5399 (2018 Google-Motorola MADA, ECF No. 623-40) (attached as Gandhi Decl. Ex. G). In other words, Motorola's negotiated terms have been repeatedly disclosed, both in the 2018 MADA and the 2020 Motorola MIA.

### **The Microsoft Exhibits**

The Times does not dispute the redactions in the following Microsoft exhibits: DX423, DX466, DX500A, DX501, DX533, DX535, DX673, DX2013, and UPX116. The Times also does not dispute the redactions to the attachments in the following exhibits, though it continues to seek the underlying email: DX452, DX455, DX679, UPX246, and UPX797.

The Times addresses each of the remaining documents below. As a general matter, though, the degree of sealing in these exhibits appears to be indefensible. In some cases — for instance, DX455 and DX472 — the redactions, even if unwarranted, are at least targeted. But most exhibits contain broad swaths of redactions that seem to go beyond what is necessary to prevent competitive harm to Microsoft. The harm is made more implausible by the fact that many of the exhibits are dated — often ten years old, and in some cases even older. The relevant inquiry is not whether disclosure could have caused Microsoft harm at some point in the past, but whether release could cause harm <u>today</u>. *See, e.g.*, *Berlanga v. Polaris Indus., Inc.*, No. 21-cv-949, 2023 U.S. Dist. LEXIS 74303, at *4-5 (E.D. Cal. Apr. 28, 2023) (stating that "[i]t is unclear why a five year-old presentation would risk competitive harm today" and denying joint request to seal) (Moss, J.); *Dawson v. Merck & Co.*, No. 21-cv-1876, 2021 U.S. Dist. LEXIS 12725, at *28 (E.D.N.Y. Jan. 24, 2021) (noting that "[d]efendants fail to show how [disclosure] would result in harm today" and granting motion to unseal). Notably, Plaintiffs also support a fresh

review of trial exhibits used with a witness that were reviewed for confidentiality prior to October 16, 2023. JSR at 3 & n.3.

On the specific exhibits in dispute, The Times contends as follows:

- DX434. This email from Jon Tinter is from November 2009 — a full 14 years old. No plausible harm could flow from the email's release. Yet the document contains extensive redactions; of the document's five pages, four and a half are sealed. The discussion of the email in Mr. Tinter's testimony is redacted. Sept. 28, 2023, PM Tr. at 3285. But it is indisputable that the email goes to a central issue in the case — the relationship between Apple and Google. It should be unsealed.

- DX452 (email only). This document, a three-page email from January 2013 (over 11 years ago), is a discussion of "a pitch that Microsoft made to Samsung to be the default search engine on Tizen devices." *See* Sept. 28, 2023, PM Tr. at 3359:10-11. The email is discussed at some length in Mr. Tinter's testimony, both on direct and cross. *See* Sept. 29, 2023, AM Tr. at 3420:9–3421:13; Sept. 28, 2023, PM Tr. at 3359:6–3360:25. Yet nearly all of the document is redacted. Given the age of the document, and the fact that it concerns a proposal that never materialized into a deal, its release could do no harm to Microsoft. It should be unsealed.

- DX454. Like the documents above, this email is dated (nearly 11 years old) and almost entirely redacted. Though Mr. Tinter's discussion of the email is redacted, *see* Sept. 28, 2023, PM Tr. at 3287, we know from what has been unredacted in the email that it bears on issues at the core of the case: the contractual relationship between Google and Apple, and Microsoft's attempt to supplant Google as the default search option on iOS.

9

- DX455 (email only). This 2013 email thread, prompted by the release of search market share data, was the subject of extensive testimony by Mr. Tinter. Sept. 28, 2023, PM Tr. 3323:15–3331:4. Yet the email contains two redactions, one to the name of an OEM that Mr. Tinter was told not to reveal in court. *Id.* at 3325:22-23. The nature of the information in the second redaction is not clear. But given the age of the document and the absence of any plausible harm to Microsoft, the redactions should be unsealed.

- DX457. This document is much like DX434 and DX454: an email that is (i) dated, (ii) largely redacted, and (iii) clearly concerns issues central to the case, even though its discussion by Mr. Tinter is entirely redacted. *See* Sept. 28, 2023, PM Tr. at 3289. Though the email contains the words "legally privileged," Microsoft did not say in its prior brief, or otherwise communicate to The Times, that it is claiming privilege over the redactions. The email should be unsealed.

- DX472. This email, concerning "a potential change of the default on Mozilla's Firefox browser in 2014," was again the subject of much testimony by Mr. Tinter. Sept. 28, 2023, PM Tr. at 3334:2–3339:23. It contains numerous redactions for financial projections and other information that is now almost ten years old. Given the lack of plausible harm from release of this dated information, the redactions should be unsealed.

- DX500. Both this email and the attachment (DX500A, which The Times is not seeking), contain an estimate of "Google's capital expenditures versus Microsoft's during the period 2005 to 2015." Oct. 2, 2023, AM Tr. at 3563:6-9. The document is discussed at length during Satya Nadella's testimony. *Id.* at 3563:2–3564:10. Because of the age of the estimates and the email, the discussion in the thread could not plausibly cause Microsoft competitive harm today.

- DX524. This email from 2018, which contains a discussion "comparing the size of Google's search engineering versus Microsoft's search engineering," Oct. 2, 2023, AM Tr. at 3556:16–3559:18, contains certain targeted redactions for figures related to this issue. It also contains more extensive redactions, presumably because Microsoft does not believe the material to be pertinent to the case. The former redactions are not necessary since the information is out of date, while the latter redactions are improper as a matter of law, for reasons The Times has stated above. The email should be unsealed.

- DX538. This 2021 email regarding a Microsoft project "to dramatically increase index scale," Sept. 27, 2023, AM Tr. at 2756:12-13, stands on similar footing: it contains a broad swath of redactions (covering nine and a half of ten pages) along with more targeted redactions. Even if there is some basis for the targeted redactions (and The Times has not seen that), the blanket redactions are unwarranted.

- DX679 (email only). Most of this email thread, which consists of five and a half pages and dates to November 2017, has been redacted. (The Times does not seek the attachment.) The email apparently concerns a possible deal between Microsoft and Mozilla, but the discussion of the email during Mr. Tinter's testimony has been entirely redacted. *See* Sept. 28, 2023, PM Tr. at 3294. As with other documents, the age of the email makes it implausible that the extensive sealing is necessary.

- DX680. The main email in this thread, authored by Microsoft CTO Kevin Scott and sent to Mr. Nadella and Bill Gates, was discussed in some depth during Mr. Nadella's testimony. *See* Oct. 2, 2023, PM Tr. at 3637:17–3641:1. As that testimony indicates, the email goes to a central issue in the case: whether Google would be able to use its monopoly in search, and its related infrastructure might, to secure a dominant

11

position in the development of AI technology. Though Mr. Nadella discusses the substance of the email in general terms, essentially the entire email is redacted. Certainly, the portions of the email that are quoted or discussed in the transcript must be unsealed. But the rest of the email should also be unredacted, since its disclosure could not plausibly harm Microsoft vis-à-vis Google. Much has changed since June 2019, when the email was authored: AI technology has developed at an incredibly rapid pace, Microsoft and Google (among other companies) have released new AI tools and products, and much more information has emerged about the nature of Microsoft's investment in and relationship with OpenAI. *See, e.g.*, Charles Duhigg, *The Inside Story of Microsoft's Partnership with OpenAI*, New Yorker (Dec. 1, 2023), https://bit.ly/3TLj5GY; Karen Weise, *How Microsoft's Satya Nadella Kept the 'Best Bromance in Tech' Alive*, N.Y. Times (Nov. 22, 2023), https://nyti.ms/4aPzlhm. In light of these changes, there is no serious reason to believe that disclosing Microsoft's assessment of Google as a competitor in AI technology five years ago could do any harm to Microsoft today.

- <u>DX688.</u> This two-page email from 2021 has largely been redacted. The email refers to improvements in Microsoft's search quality, but its broader subject is not clear and is not obviously sensitive. Microsoft has conveyed to The Times that the email touches on some matters that are purely personnel issues, and The Times does not seek those. But the balance of the document must be unsealed, absent a showing of competitive harm from disclosure.

- DX963.[10] This document is redacted even in full, even though some of its contents have been discussed in testimony that is public. Eddy Cue identified the document as an agreement "with Microsoft related . . . to Bing search." Sept. 26, 2023, PM Tr. at 2628:4-5. He went on to discuss the substance of some of the contract's provisions and their implications. *See id.* at 2628:6–2630:16. Yet even these portions of the agreement have been redacted. Even if some provisions of the agreement are commercially sensitive (and both Microsoft and Apple have yet to explain those harms), it is inconceivable that all 30 pages need to be under seal, especially given the extensive on-the-record discussion of the agreement.

- PSX761. This document is redacted in full, and little has been disclosed about it in this litigation — only that it is an agreement between Google and Microsoft "to try to work cooperatively to deal with business disagreements." Sept. 28, 2023, AM Tr. at 3084:2-4. But thanks to news reporting, the public has known about the existence of the agreement and its broad contents for some time. Aoife White & Stephanie Bodoni, *Microsoft and Google Make Peace After Decade of Fighting*, Bloomberg (Apr. 22, 2016), https://bloom.bg/4cUmzja; Dina Bass & Nico Grant, *Google and Microsoft End Their Five-Year Cease-Fire*, Bloomberg (June 29, 2021), https://bit.ly/4cQXYMa. As Plaintiffs explained, the agreement is pertinent to the litigation, as interactions between Microsoft and Google at issue in the case took place pursuant to the agreement. Sept. 28, 2023, AM Tr. at 3084:2-8. Given that the substance of the agreement has been covered in news reporting and the agreement expired three years ago, commercial harm to Microsoft is

---

[10] Apple also objects to the disclosure of this document.

13

highly implausible. This is even more so because of the agreement's unique and one-off nature, which means that Microsoft could not be harmed in negotiating similar contracts: none exist.

- UPX246 (email only). This is a short 2016 email from Mr. Tinter to Apple executives following up on a meeting between the two companies and addressing Apple's questions about the economics of switching the default from Google to Bing. Mr. Tinter was asked about the document during direct examination. Sept. 28, 2023, PM Tr. at 3128:13–3133:24. The Times does not seek the attachment, but the email itself contains significant redactions — even though the document is now eight years old and contains only information that Microsoft felt comfortable disclosing externally without any apparent guarantee of confidentiality.

- UPX301. This email concerns Samsung's contractual relationship with Google and Microsoft's related negotiations with Samsung. Mr. Tinter discussed the email — and these subjects — in both his direct and cross-examination. *See* Sept. 28, 2023, PM Tr. at 3248:4–3252:6; 3355:13–3358:19. The basis for the redactions, which cover roughly half the email, are unclear. But given the email's age and the fact that the subject was much discussed by Mr. Tinter, the redactions should be lifted.

- UPX736. Like DX524 and DX538, this 2018 email thread contains redactions that are both targeted and sweeping. The email was discussed during the testimony of Mr. Nadella, who authored one email in the chain (the only one that is at least partially visible), which is broadly about "the conversations [Microsoft was] having with Apple at that time." Oct. 2, 2023, AM Tr. at 3524:21-22. It is unclear why the figures redacted in

14

Mr. Nadella's email could plausibly be sensitive more than five years later, and the extensive redactions have no basis. The email should be unsealed.

- UPX797 (email only). This is a 2018 email and attachment (which The Times does not seek) from Mr. Tinter to Apple executives regarding a "strategic playbook or strategic investment plan that Microsoft provided to Apple" on search quality issues, Sept. 28, 2023, PM Tr. at 3255:9-10, and it was discussed in open court, *see id.* at 3255:4–3258:13. As with UPX246, the document is dated (more than five years old) and contains information that Microsoft disclosed externally, with no indication of a guarantee of confidentiality.

**The Apple Exhibits**

The Times also opposes the proposed redactions to six of the seven exhibits produced by Apple: UPX625, UPX626, UPX618, UPX1123, UPX494, and UPX659, all of which are email threads. (The Times does not oppose the redactions to UPX1109.) As noted, Plaintiffs support a renewed review of any exhibits used with a witness that were reviewed for confidentiality prior to October 16, 2023, which includes all of these emails. JSR at 3 & n.3.

- UPX625 & UPX626. These exhibits consist of two related email threads from 2014 between Apple executives Eddy Cue and Bill Stasior discussing "future plans for search for the next year," among other topics. Both were introduced at trial during Mr. Cue's testimony, with UPX626 used specifically to discuss Apple's future search plans, a topic directly relevant to a core question in the case: the competition, or lack thereof, in the market for search. Sept. 26, 2023, AM Tr. at 2538:24–2540:7 (discussing UPX625); *id.* at 2532:11–2538:23 (discussing UPX626). Though the emails are each only a page or two, an entire paragraph in each email, along with key figures and bullet points, remains

15

redacted. Given that both emails are nearly ten years old, the possibility of prejudice seems remote. *See, e.g.*, *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, No. 14-mc-2542, 2023 U.S. Dist. LEXIS 8010, at *35 (S.D.N.Y. Jan. 17, 2023) ("[T]he older the information is, the less appropriate it is to seal that information, particularly when the party does not explain with specificity why, despite the passage of time, the information should still be sealed."). These emails should be unsealed.

- UPX618. This exhibit is a one-page 2019 email among Apple executives giving an "[u]pdate on Google search changes." It was introduced at trial during John Giannandrea's testimony in reference to Apple's displacement of search queries, and Google's interest in it. Sept. 22, 2023, AM Tr. at 2280:10–2283:20. The email's discussion of Google's search market dominance could be inferred from the subject, but the discussion in Mr. Giannandrea's testimony makes even clearer "Google's . . . financial interest in Apple not displacing its queries." Sept. 22, 2023, AM Tr. at 2282:10-12. Given the level of detail present in the testimony and the age of the email (more than five years), the level of redaction cannot withstand renewed scrutiny.

- UPX1123. This exhibit, another 2019 email among an Apple team, concerns "Stats for Search V2 Goals" and attaches a single slide. It was introduced at trial with Mr. Giannandrea to discuss Apple's search strategy. Sept. 22, 2023, AM Tr. at 2225:17–2230:22. Given its length, its age, its presentation at trial, and its discussion on the record, the email and slide should be released absent a concrete showing of commercial harm.

- UPX494. This exhibit is a two-page 2020 email among Apple employees on the topic of "Siri assistant fallback web search." It was introduced at trial with Mr. Giannandrea and discussed at length on the record to elicit testimony about Google's

16

provision of search to undergird Siri, Apple's voice assistant, and the limitations imposed by the 2016 ISA. Sept. 22, 2023, AM Tr. at 2235:14–2242:4. UPX494 is a paradigmatic example for broad unsealing — a brief email "less likely to be subject to heavy redaction" that reflects one of the key relationships of the case and was discussed at length in unsealed, on-point testimony. Yet, three sentences of this short, substantive, four-year-old exchange remain redacted.

- <u>UPX659.</u> This exhibit is a three-page 2020 email exchange, largely consisting of Mr. Giannandrea's answers to questions raised during an all-hands meeting of his team, and used during his testimony. *See* Sept. 22, 2023, AM Tr. at 2242:8–2246:10. In his testimony, Mr. Giannandrea was asked about Question #3: "In terms of [REDACTED] search, and web search particularly, are we trying to seriously compete with Google?" Mr. Giannandrea engaged in an extended discourse with Plaintiffs' counsel about the first sentence of his answer: "We front all information queries, including all those that eventually go to a search partner." Yet, significant portions of this email — including portions of this specific answer — remain redacted. Given the on-the-record discussion of the email and the age of the information, the likelihood of commercial harm seems implausible.

**<u>The Deposition Designations</u>**

The Times does not dispute the redactions to the designations from the deposition of Shirley Heath. The Times likewise does not dispute the redactions to the designations from the deposition of Mike James, subject to Amazon filing a declaration (i) stating that all of the redacted material is non-public and commercially sensitive information, (ii) stating that

17

disclosure of this information would cause significant competitive harm to Amazon, and (iii) explaining the nature of this harm in reasonable specificity.

## CONCLUSION

For the foregoing reasons, and those stated in The Times's prior briefing, the Court should grant The Times's motion for access to judicial records and unseal the above records.

Dated: April 10, 2024

Respectfully submitted,

/s/ *Al-Amyn Sumar*
Al-Amyn Sumar (#1614655)
David McCraw (#NY0200)
Dana R. Green (#1005174)
Maya Gandhi (#NY0584)
The New York Times Company
1627 I Street NW, Suite 700
Washington, DC 20006
Telephone: (646) 306-4201
Facsimile: (212) 556-4634
al-amyn.sumar@nytimes.com
mccraw@nytimes.com
dana.green@nytimes.com
maya.gandhi@nytimes.com

*Counsel for The New York Times Company*