# EXHIBIT A

EXECUTION COPY

## Joint Cooperation Agreement (JCA)

*This JCA between Apple and Google includes three parts: (i) a commercial agreement relating to search, that amends the Information Services Agreement (ISA) between the parties dated December 20, 2002, as amended, (ii) a litigation dismissal and executive escalation mechanism, and (iii) a collaboration framework regarding patent policy and reform.*

### Term & Termination

10-year initial term effective upon date of signature by both parties with automatic renewals for additional, successive 10-year terms.

As of July 31, 2015, either party may terminate this JCA at-will on 18 months notice provided in writing to the General Counsel of the other party.

### (1) COMMERCIAL DEAL

Apple and Google wish to extend the ISA beyond the present termination date of July 31, 2015 to be co-terminus with this JCA.

### Search Rev Share

1. Rev share will become 37.5% effective July 31, 2015.
2. Subject to the options in point #3 below, Google shall remain the default search engine in all Geo's.
3. Apple will have the option to select a different default search engine in China and S. Korea on or after July 31, 2014, and in Russia on or after July 31, 2016.
4. Google will consider, in good faith, additional single country exclusions in countries where Google's usage share compared with other general search engines only declines to ▮% or less for ▮ consecutive years.

### Default Bookmark



Ex. No.
JX0024
1:20-cv-03010-APM

1

                                    GOOG-DOJ-02696822

**EXECUTION COPY**



**(2) LITIGATION NOTICE AND ESCALATION**

**Existing Litigation and Disputes**

2

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696823

EXECUTION COPY



**(3) COLLABORATION ON PATENT POLICY AND ADVOCACY**



**(4) MISCELLANEOUS**

This JCA is subject to the Mutual Non-Disclosure Agreement between us.



3

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696824

**EXECUTION COPY**

Agreed:

**GOOGLE INC.**

By:

    (signature)

Printed Name: _LARRY PAGE_

Title: _CEO_

Date: _May 15, 2014_

**APPL**

By:

Printed Name: _TIM COOK_

Title: _CEO_

Date: _MAY 15, 2014_

4

GOOG-DOJ-02696825

## AMENDMENT TO THE INFORMATION SERVICES AGREEMENT

This AMENDMENT TO THE INFORMATION SERVICES AGREEMENT (this "**Agreement**") is entered into effective as of September 30, 2016 ("**Execution Date**") by and among Apple Inc., Apple Distribution International ("**ADI**"), and Apple South Asia Pte. Ltd. ("**ASA**" and collectively with Apple Inc., ADI and their respective subsidiaries, "**Apple**"), on the one hand, and Google Inc., Google Ireland Limited ("**GIL**"), and Google Asia Pacific Pte. Ltd. ("**GAP**" and collectively with Google Inc., GIL and their respective subsidiaries, "**Google**"), on the other hand, amending that certain Information Services Agreement dated December 20, 2002 between Apple, Inc. and Google Inc. (as amended or otherwise modified prior to the Execution Date and as amended by this Agreement, the "**ISA Agreement**"). The provisions of this Agreement are effective as of the Execution Date, and the remaining provisions of the ISA Agreement remain unchanged and in full force and effect.

## 1.   Use and Implementation of Google Services in Apple Software

### *(a)   Safari (Web Browser Software)*

Apple will pre-set and use the Services as the Default search service for Search Queries in Apple's web browser software (e.g., Safari or successor versions) designed for use on (i) one or more of the following Apple operating systems: iOS, watchOS, tvOS, macOS or any other operating system software made generally available by Apple during the Term, or (ii) the Microsoft Windows operating system (such web browser software, the "**Web Browser Software**").  During the Term, Apple's use of the Services as Default in the Web Browser Software will remain substantially similar to its use (including, without limitation, vis-a-vis other providers of internet services) as of the Execution Date of this Agreement (such use, the "**Permissible Software Default Use**").

Subject to the Permissible Software Default Use, Apple shall not be limited in its ability to alter, modify and innovate its Web Browser Software, and Google shall not be limited in its ability to control branding, presentation, and use of the Services.

"**Default**" means the Services will automatically be used for responding to Search Queries initiated from the Web Browser Software, unless the End User selects a different third-party search service.

"**Search Query**" means any textual, voice, image or other input entered by an End User in the Web Browser Software or Siri or Spotlight (or successor versions) that requests information; provided however, that subject to the Permissible Software Default Use, Apple may determine an End User's input is not a Search Query so long as Apple's determination is based exclusively on its intent to provide a superior user experience.

1

*Confidential – Subject to Party NDA*

Ex. No.
JX0033
1:20-cv-03010-APM

GOOG-DOJ-02696793

"**Services**" means Google's search services made generally available at www.google.com and the applicable international equivalents thereof (or successor versions) that handle Search Queries initiated from the Web Browser Software in accordance with the ISA Agreement.

"**End User**" means a user of the Web Browser Software, Spotlight, or Siri.

### (b) Spotlight



### (c) Siri



2

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696794



Subject to the Permissible Software Default Use, Apple will not use Siri in response to Search Queries from the Web Browser Software, unless Apple's use is based exclusively on its intent to provide a superior user experience.

*(d)*  *Provision of Query Set*

*(e)*  *Reporting*

3

*Confidential -- Subject to Party NDA*

HIGHLY CONFIDENTIAL



**2.    Advertising and Monetization**

Following the initial implementation of the Spotlight Services or Siri Services, if Apple includes ads or paid listings in Siri or Spotlight (or successor versions), Apple will offer Google the opportunity to supply such ads or paid listings under the financial terms set forth in Section 4 of this Agreement and on equivalent implementation terms.

4

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL



## 4. Ad Revenue Share

Effective September 1, 2016 Google will pay Apple 40% of its Net Ad Revenue for the remainder of the Term.

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696797



6

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696798



### 5.    CEO Check-Ins

*Agreement Purpose*

Both parties agree they are entering into this Agreement for the following purposes (collectively, the "**Agreement Purpose**"): (1) to create tangible and intangible value for each party, (2) to increase the revenue performance of each party, and (3) to improve the search experience and performance of the Services, the Spotlight Services and the Siri Services for End Users on Apple products.

*Annual CEO Check-In*

At the end of each contract year, or earlier if reasonably requested by a party, Chief Executive Officers from each party will meet to review and discuss in good faith the performance of the ISA Agreement vis-a-vis the Agreement Purpose, and, upon request, to confirm each party's compliance with the terms of the ISA Agreement ("**Annual CEO Check-In**"). The parties mutually agree to address and resolve in good faith any issues identified during the Annual CEO Check-In that are interfering or have interfered with the Agreement Purpose. If a particular issue is under the reasonable control of Apple, then Apple will have primary responsibility for addressing and resolving such issue in good faith, with input from Google. If a particular issue is under the reasonable control of Google, then Google will have primary responsibility for addressing and resolving in good faith such issue, with input from Apple. The parties will have joint responsibility for addressing and resolving in good faith any other issues identified during the Annual CEO Check-Ins that are not under the reasonable control of one party.



### 6.   Limitation of Liability



7

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696799



7.   **Term & Termination**

8.   **Branding, Presentation and Usage**

8

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

### 9. Regulatory and Government Actions

Apple and Google will cooperate to support and defend the ISA Agreement, work in good faith to modify it if necessary to resolve regulatory concerns, and not intentionally delay or prevent implementation of the ISA Agreement.



### 10. Audit



9

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL



**11. Assignment**



**12. Parties and Affiliates**

10

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL



**13. Amendment**

**14. Tax**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*[Remainder of page intentionally blank; Signature page follows]*

11

*Confidential – Subject to Party NDA*

This Agreement may be executed in counterparts, including facsimile counterparts.

| Google Inc. | Apple Inc. |
|---|---|
| By: ███████████ | By: _____ |
| Print Name: DANIEL ALEGRE | Print Name: _____ |
| Title: President | Title: _____ |
| Date: Sept 30, 2016 | Date: _____ |
| 1600 Amphitheatre Parkway<br>Mountain View, CA  94043<br>Tel:  (650) 330-0100<br>Fax:  (650) 618-1711 | 1 Infinite Loop, MS 301-4GC<br>Cupertino, CA  95014<br>Tel:  (408) 996-1010<br>Fax:  (408) 966-0275 |

| Apple Distribution International | Apple South Asia Pte. Ltd. |
|---|---|
| By: _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
| Hollyhill Industrial Estate<br>Hollyhill, Cork, Ireland<br>Tel:  (353) 21 4284000 | No. 7 Ang Mo Kio Street 64<br>Singapore 569086<br>Tel:  (65) 6481 5511 |

| Google Ireland Limited | Google Asia Pacific Pte. Ltd. |
|---|---|
| By: _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
| Gordon House, Barrow Street<br>Dublin 4, Ireland | 8 Marina View, Asia Square 1 #30-01<br>Singapore 018960 |

12

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

This Agreement may be executed in counterparts, including facsimile counterparts.

**Google Inc.**

By: _____

Print Name: _____

Title: _____

Date: _____

1900 Amphitheatre Parkway
Mountain View, CA 94043
Tel: (650) 330-0100
Fax: (650) 618-1711

**Apple Inc.**

By: _____

Print Name: _____Eddy Cue_____

Title: SVP Internet Software & Svcs

Date: ___9/29/16___

1 Infinite Loop, MS 301-4GC
Cupertino, CA 95014
Tel: (408) 996-1010
Fax: (408) 966-0275

**Apple Distribution International**

By: _____

Print Name: _____

Title: _____

Date: _____

Hollyhill Industrial Estate
Hollyhill, Cork, Ireland
Tel: (353) 21 4284000

**Apple South Asia Pte. Ltd.**

By: _____

Print Name: _____

Title: _____

Date: _____

No. 7 Ang Mo Kio Street 64
Singapore 569086
Tel: (65) 6481 5511

**Google Ireland Limited**

By: _____

Print Name: _____

Title: _____

Date: _____

Gordon House, Barrow Street
Dublin 4, Ireland

**Google Asia Pacific Pte. Ltd.**

By: _____

Print Name: _____

Title: _____

Date: _____

8 Marina View, Asia Square 1 #30-01
Singapore 018960

12

*Confidential – Subject to Party NDA*

GOOG-DOJ-02696805

This Agreement may be executed in counterparts, including facsimile counterparts.

**Google Inc.**                                      **Apple, Inc.**

By: _____                          By: _____

Print Name: _____                  Print Name: _____

Title: _____                        Title: _____

Date: _____                         Date: _____

1900 Amphitheatre Parkway                            1 Infinite Loop, MS 301-4GC
Mountain View, CA 94043                              Cupertino, CA 95014
Tel: (650) 330-0100                                  Tel: (408) 996-1010
Fax: (650) 618-1711                                  Fax: (408) 966-0275


**Apple Distribution International**                 **Apple South Asia Pte. Ltd.**

By: ██████                                           By: _____

Print Name: MICHELE SULLIVAN                         Print Name: _____

Title: DIRECTOR                                       Title: _____

Date: 29th SEPT 2016                                 Date: _____

Hollyhill Industrial Estate                          No. 7 Ang Mo Kio Street 64
Hollyhill, Cork, Ireland                             Singapore 569086
Tel: (353) 21 4284000                                Tel: (65) 6481 5511


**Google Ireland Limited**                           **Google Asia Pacific Pte. Ltd.**

By: _____                           By: _____

Print Name: _____                   Print Name: _____

Title: _____                         Title: _____

Date: _____                          Date: _____

Gordon House, Barrow Street                          8 Marina View, Asia Square 1 #30-01
Dublin 4, Ireland                                    Singapore 018960

12

*Confidential – Subject to Party NDA*

This Agreement may be executed in counterparts, including facsimile counterparts.

| **Google Inc.** | **Apple, Inc.** |
|---|---|
| By: _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
| 1900 Amphitheatre Parkway | 1 Infinite Loop, MS 301-4GC |
| Mountain View, CA 94043 | Cupertino, CA 95014 |
| Tel: (650) 330-0100 | Tel: (408) 996-1010 |
| Fax: (650) 618-1711 | Fax: (408) 966-0275 |

| **Apple Distribution International** | **Apple South Asia Pte. Ltd.** |
|---|---|
| By: _____ | By: _____ |
| Print Name: _____ | Print Name: Poh Hwee Hwee |
| Title: _____ | Title: Director |
| Date: _____ | Date: 9/29/16 |
| Hollyhill Industrial Estate | No. 7 Ang Mo Kio Street 64 |
| Hollyhill, Cork, Ireland | Singapore 569086 |
| Tel: (353) 21 4284000 | Tel: (65) 6481 5511 |

| **Google Ireland Limited** | **Google Asia Pacific Pte. Ltd.** |
|---|---|
| By: _____ | By: _____ |
| Print Name: _____ | Print Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |
| Gordon House, Barrow Street | 8 Marina View, Asia Square 1 #30-01 |
| Dublin 4, Ireland | Singapore 018960 |

12

*Confidential   Subject to Party NDA*

HIGHLY CONFIDENTIAL

This Agreement may be executed in counterparts, including facsimile counterparts.

**Google Inc.**

By: _____

Print Name: _____

Title: _____

Date: _____

1600 Amphitheatre Parkway
Mountain View, CA  94043
Tel:  (650) 330-0100
Fax: (650) 618-1711

**Apple Inc.**

By: _____

Print Name: _____

Title: _____

Date: _____

1 Infinite Loop, MS 301-4GC
Cupertino, CA  95014
Tel:  (408) 996-1010
Fax: (408) 966-0275

**Apple Distribution International**

By: _____

Print Name: _____

Title: _____

Date: _____

Hollyhill Industrial Estate
Hollyhill, Cork, Ireland
Tel:  (353) 21 4284000

**Apple South Asia Pte. Ltd.**

By: _____

Print Name: _____

Title: _____

Date: _____

No. 7 Ang Mo Kio Street 64
Singapore 569086
Tel:  (65) 6481 5511

**Google Ireland Limited**

By: ___[redacted]___

Print Name: _RONAN  HARRIS_

Title: _DIRECTOR_

Date: _30/09/2016_

Gordon House, Barrow Street
Dublin 4, Ireland

**Google Asia Pacific Pte. Ltd.**

By: _____

Print Name: _____

Title: _____

Date: _____

8 Marina View, Asia Square 1 #30-01
Singapore 018960



*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696808

This Agreement may be executed in counterparts, including facsimile counterparts.

**Google Inc.**

By: _____

Print Name: _____

Title: _____

Date: _____

1600 Amphitheatre Parkway
Mountain View, CA 94043
Tel: (650) 330-0100
Fax: (650) 618-1711

**Apple Inc.**

By: _____

Print Name: _____

Title: _____

Date: _____

1 Infinite Loop, MS 301-4GC
Cupertino, CA 95014
Tel: (408) 996-1010
Fax: (408) 966-0275

**Apple Distribution International**

By: _____

Print Name: _____

Title: _____

Date: _____

Hollyhill Industrial Estate
Hollyhill, Cork, Ireland
Tel: (353) 21 4284000

**Apple South Asia Pte. Ltd.**

By: _____

Print Name: _____

Title: _____

Date: _____

No. 7 Ang Mo Kio Street 64
Singapore 569086
Tel: (65) 6481 5511

**Google Ireland Limited**

By: _____

Print Name: _____

Title: _____

Date: _____

Gordon House, Barrow Street
Dublin 4, Ireland

**Google Asia Pacific Pte. Ltd.**

By: ▮▮▮▮▮▮▮▮

Print Name: MARCO BERLA

Title: DIRECTOR

Date: SEP 30, 2016

8 Marina View, Asia Square 1 #30-01
Singapore 018960

12

*Confidential -- Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696809

**EXHIBIT A**



13

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696810



14

*Confidential – Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696811



15

*Confidential -- Subject to Party NDA*

HIGHLY CONFIDENTIAL

GOOG-DOJ-02696812

Google Confidential

## GOOGLE MOBILE
### REVENUE SHARE AGREEMENT

| | | |
|---|---|---|
| G○○gl | **Google LLC**<br>**Google Asia Pacific Pte. Ltd.**<br>**Google Ireland Limited**<br><br>*Address for Legal Notices:*<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | **Mobile Partnerships:** Jim Kolotouros, Christopher Li, Jinyoung Baik<br><br>**Google Legal:** Kate Lee, Richard Lee, Marie Mackey |

### COMPANY CONTACT DETAILS

| | Company Contact Information: | Company Legal Notices to: |
|---|---|---|
| **Attention:** | Jay Kim, Seung Song | Steve Lee, Yuna Hong |
| **Title:** | Strategic Partnership Group (Mobile) | Legal Support & Compliance Group (Mobile) |
| **Address, City, State, Postal Code, Country:** | 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, Korea 16677 | 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, Korea 16677 |
| **Email:** | ███████████ | ███████████ |

<u>**Effective Date:**</u> July 1, 2020
<u>**Term:**</u> Starting on the Effective Date and continuing through ████████ (inclusive) ("Term")
<u>**Renewal Term:**</u> None

> **Ex. No.**
> **JX0071**
> 1:20-cv-03010-APM

1

Google Mobile Revenue Share Agreement

GOOG-DOJ-21682392

Google Confidential

This Google Mobile Revenue Share Agreement, including all attachments (collectively referred to as this "**Agreement**"), effective as of the date noted above (the "**Effective Date**"), is made between:

**GOOGLE LLC**, organized in the state of Delaware, **GOOGLE ASIA PACIFIC PTE. LTD.**, organized in Singapore, and **GOOGLE IRELAND LIMITED**, organized in Ireland (in this Agreement, "**Google**" will mean Google LLC, Google Asia Pacific Pte. Ltd., and/or Google Ireland Limited, as the context requires), on the one hand; and

**SAMSUNG ELECTRONICS CO., LTD.**, a company existing under the laws of the Republic of Korea ("**Company**"), on the other hand.

<u>BACKGROUND</u>

A.    Company desires to receive, and Google wishes to share, portions of Ad Revenue (as defined below) from Company's Android phones and tablets, as set out in this Agreement;

B.    Company is willing to implement on its Android phones and tablets a certain search and assistive experience for end users, which results in monetization opportunities for Company, as set out in this Agreement; and

C.    Nothing in this Agreement is intended to restrict Company from entering into revenue sharing agreements with other parties that are not in violation of this Agreement, or to restrict end users from installing or using alternatives to the Google Applications on Company's Android phones and tablets.

<u>AGREEMENT</u>

1.    DEFINITIONS



2



Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**                                                                 **GOOG-DOJ-21682393**

Google Confidential

**1.5**    "**Alternative Search Service**" means



**1.16**    "**Client ID(s)**" means the range of unique alphanumeric code(s) that Google provides to Company pursuant to this Agreement or the Prior Agreements that are used to identify Ad Revenue on Devices or Installed Base Devices, including Ad Revenue from particular access points on Devices or Installed Base Devices (e.g., Chrome Browser, Bixby, etc.).





Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**                                                                   **GOOG-DOJ-21682394**

Google Confidential



Google Mobile Revenue Share Agreement

HIGHLY CONFIDENTIAL

GOOG-DOJ-21682395

Google Confidential



5



HIGHLY CONFIDENTIAL

GOOG-DOJ-21682396

Google Confidential



1.48    "**Minus One Screen**" means the screen accessed by the End User by swiping their finger once from left to right on the Default Home Screen (excluding the lock screen and the notification tray).



6

Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**                                                        **GOOG-DOJ-21682397**

Google Confidential

**1.58** "**Query**" means any End User query input through a Service Access Point.



7



Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**

GOOG-DOJ-21682398

Google Confidential



2. **DEVICE SCOPE**

2.1 **Core Qualified Devices.** Company will ensure that all Devices that are not Telecom Operator Client ID Devices and sold or distributed by Company or its Affiliates in the Territories meet the requirements of a Core Qualified Device (as set forth in Section 4.1); provided, however, that:

    (a)    for Devices sold or distributed in the EEA, Russia or Turkey, Company may choose on a Device-by-Device basis whether to configure such Devices as Core Qualified Devices; and

    (b)    the parties may mutually agree in writing (including via e-mail) on other Devices that do not need to meet the requirements of a Core Qualified Device.

2.2 **Enhanced Qualified Devices.** Company may choose on a Device-by-Device basis to configure a Core Qualified Device to meet the additional requirements of an Enhanced Qualified Device (as set forth in Section 5.1). For the avoidance of doubt, Company is under no obligation to configure any Core Qualified Device to be an Enhanced Qualified Device.



8

**HIGHLY CONFIDENTIAL**    **GOOG-DOJ-21682399**

Google Confidential



Google Mobile Revenue Share Agreement

HIGHLY CONFIDENTIAL

GOOG-DOJ-21682400

Google Confidential



## 4.    CORE QUALIFIED DEVICE

4.1    **Device Requirements.**  For a Device to qualify and remain as a Core Qualified Device, and for Company to receive any Shared Net Core Ad Revenue under this Agreement in accordance with Section 13 and Attachment A, Company must comply with the following conditions with respect to such Device:

    (a)    Company and the Device must comply with Sections 3, and 4.2; and

    (b)    (i) For a Device sold or distributed in Territories other than Turkey, the Device must comply with the Search Access Point requirements set forth in Attachment B-1 and (ii) for a Device sold or distributed in Turkey, the Device must comply with the Search Access Point requirements set forth in Attachment B-2.

4.2    **Google Assistant.**

    (a)    For Core Qualified Devices that are sold or distributed in a Territory other than the EEA, Company agrees that during the Term and except as specified in Section 9, Company and its Affiliates (1) will not, (2) will not direct or authorize any third party on Company's behalf to, (3) will not encourage any third party to, and/or (4) will not enter into an agreement with any third party to, treat any Alternative Assistive Service (other than Bixby or a Company-owned Alternative Assistive Service) on such Core Qualified Devices more favorably than Google Assistant, including any treatment of such Alternative Assistive Service (other than Bixby or a Company-owned Alternative Assistive Service) with respect to: (i) discoverability (including Hotword implementation) and placement; (ii) hardware button or other physical affordances; (iii) quick settings; (iv) add-on features (including features on ambient mode, "always-on" screens or lock-screens), and/or (v) promotions.

    (b)    For Core Qualified Devices that are sold or distributed in the EEA, Company agrees that during the Term and except as specified in Section 9, Company and its Affiliates (1) will not, (2) will not direct or authorize any third party on Company's behalf to, (3) will not encourage any third party to, and/or (4) will not enter into an agreement with any third party to, include or do in any manner (including via over-the-air prompt, out-of-box experience,

10



**HIGHLY CONFIDENTIAL**                                                   **GOOG-DOJ-21682401**

Google Confidential

or non-End User-initiated download or update) any of the following on such Core Qualified Devices:

(i)     include any Gestures or hardware buttons or affordances that invokes an Alternative Assistive Service;

(ii)    include any Alternative Assistive Service on the Default Home Screen or the Minus One Screen;

(iii)   enable any add-on features (including features relating to ambient mode, "always-on" screens or lock-screens) for or within any Alternative Assistive Service;

(iv)    place any Alternative Assistive Service within the quick settings menu; or

(v)     include any Hotword setup screens or prompts for any Alternative Assistive Service; or

(vi)    promote any Alternative Assistive Service to an End User, unless such promotion is by a third party that purchases ad space on any Company-owned property (e.g., Galaxy Store).

provided, however, that the foregoing will not apply to Bixby or a Company-owned Alternative Assistive Service so long as Bixby or such Company-owned Alternative Assistive Service does not use a third party Alternative Service to obtain results or perform actions.

(c)     For clarity, Sections 4.2(a) and 4.2(b) do not: (1) apply to Core Qualified Devices that do not preload the Google Search Application; (2) restrict or preclude Company from preloading Alternative Services on a Core Qualified Device; (3) prevent Company from implementing or configuring any internal hardware (e.g., pre-wiring, chipsets, etc.) on Core Qualified Devices so that a third party Hotword may activate an Alternative Assistive Service; or (4) require Company to preclude a third party retail channel operator from promoting its owned and operated Alternative Assistive Service on Core Qualified Devices being distributed through its retail channel.

## 5.    ENHANCED QUALIFIED DEVICE

5.1     **Device Requirements.** For a Core Qualified Device to qualify and remain as an Enhanced Qualified Device, and for Company to receive Shared Net Enhanced Ad Revenue under this Agreement in accordance with Section 13 and Attachment A, Company must comply with the following conditions with respect to such Core Qualified Device:

(a)     All requirements set out in Section 4 must be satisfied;

(b)     The Core Qualified Device must comply with one (1) of the following:

(i)     all requirements set forth in Attachment C-1 (a "**Search Enhanced Qualified Device**");

(ii)    all requirements set forth in Attachment C-2 (a "**Chrome Enhanced Qualified Device**"); or

(iii)   all requirements set forth in both Attachment C-1 and Attachment C-2 (a "**Search/Chrome Enhanced Qualified Device**"); and

11



**HIGHLY CONFIDENTIAL**                                                  **GOOG-DOJ-21682402**

Google Confidential

    (c)    Company and the Core Qualified Device must comply with Sections 5.2 and 5.3.

**5.2**    **Google Search and Assistant.**  The Company agrees the following will apply to Enhanced Qualified Devices that are either Search Enhanced Qualified Devices or Search/Chrome Enhanced Qualified Devices:

    (a)    During the Term, Company and its Affiliates (1) will not, (2) will not direct or authorize any third party on Company's behalf to, (3) will not encourage any third party to, or (4) will not enter into an agreement with any third party to do any of the following (including via over-the-air prompt, out-of-box experience, or non-End User-initiated download or update) except as specified in Section 9:

        (i)    Implement, preload or postload on an Enhanced Qualified Device any: (A) Alternative Service anywhere on the Enhanced Qualified Device, including on the Default Home Screen, Minus One Screen, or lock screen, or through a notification shade, quick setting, or "mode" (e.g., ambient mode); or (B) application, hardware affordance, bookmark, service, icon, Launcher, third party Hotword or feature that is an Alternative Service or has the primary purpose of providing access to an Alternative Service, except as specified in this Section 5.2(a)(i). Notwithstanding the foregoing, Company may implement, preload or postload (including via over-the-air prompt, out-of-box experience, or non-End User-initiated download or update) anywhere on an Enhanced Qualified Device (including on the Default Home Screen, Minus One Screen, or lock screen, or through a notification shade, quick setting, or "mode" (e.g., ambient mode)) any service, application, Launcher, Hotword, feature, bookmark, or icon (in the case of bookmarks or icons, subject to the requirements in Attachments B-1, B-2, C-1, C-2, D and E, as the case may be) that is a Company-owned Alternative Assistive Service (e.g., Bixby) or that has the primary purpose of providing access to a Company-owned Alternative Assistive Service (e.g., Bixby), provided that such Company-owned Alternative Assistive Service does not use a third party Alternative Service to obtain results or perform actions.

        (ii)    Implement or install on an Enhanced Qualified Device a: (A) Hotword or Gesture in connection with any third party Alternative Assistive Service or third party Alternative Assistive Service that is Company-branded; or (B) hardware button or other physical affordance that invokes any third party Alternative Assistive Service or third party Alternative Assistive Service that is Company-branded.

        (iii)    Promote on an Enhanced Qualified Device (including from an over-the-air prompt) a third party Alternative Service to an End User except as specified in Section 9.2 or unless such promotion is by a third party that purchases ad space on any Company-owned property (e.g., Galaxy Store).

    (b)    Except as specified in Section 9, Company agrees that to the extent that a search box is implemented in any manner on the Minus One Screen of an Enhanced Qualified Device, Google Search will be set as the default search provider for such search box.

**5.3**    **Pre-Favorite Google Applications.**  From time-to-time during the Term, Google may notify Company in writing (including via e-mail) of an Entitled Application/Service. Company will then Pre-Favorite such Entitled Application/Service on Enhanced Qualified Devices where the Device Model of such Enhanced Qualified Devices are Launched ninety (90) or more calendar days after such notice. For illustration purposes only, Attachment F includes examples of how an Entitled Application/Service may be Pre-Favorited.

12



Google Mobile Revenue Share Agreement

Google Confidential

6.   **QUALIFIED INSTALLED BASE DEVICE**

6.1   **Device Requirements.** For an Installed Base Device to qualify and remain as a Qualified Installed Base Device, and for Company to receive Shared Net Installed Base Ad Revenue under this Agreement in accordance with Section 13 and Attachment A, Company must comply with the following conditions with respect to such Installed Base Device:

    (a)   The Installed Base Device must comply with all requirements set forth in Attachment D; and

    (b)   Company and the Installed Base Device must comply with Section 6.2.

7.   **TELECOM OPERATOR CLIENT ID QUALIFIED DEVICE**

7.1   **Device Requirements.** For a Telecom Operator Client ID Device to qualify and remain as a Telecom Operator Client ID Qualified Device, and for Company to receive Shared Net Telecom Operator Client ID Ad Revenue under this Agreement in accordance with Section 13 and Attachment A, Company must comply with the following with respect to such Telecom Operator Client ID Device:

    (a)   Company and the Telecom Operator Client ID Device must comply with Section 3.1 and Section 7.2; and

    (b)   The Telecom Operator Client ID Device must comply with one (1) of the following:

        (i)   all requirements set forth in Attachment C-2 (a "**Chrome Telecom Operator Client ID Qualified Device**");

        (ii)   all requirements set forth in Sections 8.1(a) and 8.1(b) (except that all references to "Core Qualified Device" in such Sections shall be read as "Telecom Operator Client ID Device" solely for the purpose of this Section 7.1(b)(ii)) (a "**Bixby Telecom Operator Client ID Qualified Device**"); or

        (iii)   all requirements set forth in Attachment C-2, as well as Sections 8.1(a) and 8.1(b) (except that all references to "Core Qualified Device" in such Sections shall be read as "Telecom Operator Client ID Device" solely for the purpose of this Section 7.1(b)(iii)) (a "**Chrome/Bixby Telecom Operator Client ID Qualified Device**").



Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**                                                                 **GOOG-DOJ-21682404**

Google Confidential



14

Google Mobile Revenue Share Agreement

HIGHLY CONFIDENTIAL

GOOG-DOJ-21682405

Google Confidential



10.      COMPANY AND GOOGLE OBLIGATIONS

10.1     **MADA, EMADA and TMADA.** During the Term, Company must have an effective MADA, EMADA and TMADA and be a licensee in good standing under the MADA, EMADA and TMADA; underline provided, underline however, that any termination of this Agreement for the reason of non-compliance with the foregoing shall made pursuant to underline Section 14.2 or underline Section 14.3, and underline further, that in case of any non-compliance with respect to TMADA, such termination shall be effectuated for devices distributed in Turkey only.



15

**HIGHLY CONFIDENTIAL**                                                                                 **GOOG-DOJ-21682406**

Google Confidential



16



HIGHLY CONFIDENTIAL

GOOG-DOJ-21682407

Google Confidential



17



HIGHLY CONFIDENTIAL

GOOG-DOJ-21682408

Google Confidential



14. **TERM AND TERMINATION**

14.2 **Termination of this Agreement.**  Either Google or Company may suspend or terminate this Agreement with immediate effect by giving written notice to the other party if such other party:

(a)   materially breaches this Agreement where the breach cannot be remedied;

(b)   materially breaches this Agreement (other than <u>Sections 3.1</u>, <u>10.2(a)</u>, <u>10.2(b)</u>, <u>10.2(c)</u> or <u>10.2(d)</u>) where the breach can be remedied, but such other party fails to remedy such breach within thirty (30) calendar days after receiving written notice of such breach;

(c)   breaches <u>Sections 3.1</u>, <u>10.2(a)</u>, <u>10.2(b)</u>, <u>10.2(c)</u> or <u>10.2(d)</u> and fails to remedy such breach within sixty (60) calendar days after receiving written notice of such breach;

(d)   notwithstanding <u>Section 14.2(c)</u>, immediately by Google, if Company breaches any of <u>Section 3.1</u> (provided, that, a breach with respect to a Device Model that occurs within sixty (60) calendar days of the most recent breach with respect to such Device Model shall not be deemed a separate breach), <u>Section 10.2(a)</u>, <u>Section 10.2(b)</u>, <u>Section 10.2(c)</u> or <u>Section 10.2(d)</u> more than three (3) times during the Term;

(e)   notwithstanding <u>Section 14.2(c)</u>, immediately by Google, if Company breaches <u>Section 6.2</u> more than three (3) times during the Term where the underlying cause of such breach is a

18



**HIGHLY CONFIDENTIAL**                                                                 **GOOG-DOJ-21682409**

Google Confidential

breach of any of the following sections in either Prior Agreement: (i) <u>Section 2.4</u> (provided, that, a breach with respect to a Device Model that occurs within sixty (60) calendar days of the most recent breach with respect to such Device Model shall not be deemed a separate breach); (ii) <u>Section 3.2(a)</u>; (iii) <u>Section 3.2(b)</u>; (iv) <u>Section 3.2(c)</u>; or (v) <u>Section 3.2(d)</u>; or

(f)   ceases its business operations or becomes subject to insolvency proceedings and the proceedings are not dismissed within ninety (90) calendar days.



19



Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**

**GOOG-DOJ-21682410**

Google Confidential



20

HIGHLY CONFIDENTIAL

GOOG-DOJ-21682411

Google Confidential



21

HIGHLY CONFIDENTIAL

GOOG-DOJ-21682412

Google Confidential



22

Google Mobile Revenue Share Agreement

HIGHLY CONFIDENTIAL   GOOG-DOJ-21682413

Google Confidential



[Signature Page Follows]

23



Google Mobile Revenue Share Agreement

HIGHLY CONFIDENTIAL

GOOG-DOJ-21682414

Google Confidential

IN WITNESS WHEREOF, the parties have executed this Agreement by persons duly authorized as of the Effective Date.

| COMPANY: | GOOGLE LLC |
|---|---|
| By _Jay Kim_ | By _____ 2020.11.10 10:11:39 -08'00' |
| Name _VP_ | Na _____ Jamie Rosenberg / Authorized Signatory |
| Title _____ | Title _____ |
| Date _Nov 9, 2020_ | Date _____ |
| | GOOGLE ASIA PACIFIC PTE. LTD. |
| | By _S. Lavanya_ 2020.11.11 10:17:04 +08'00' |
| | Nam Lavanya Swetharanyan / Director / Google Asia Pacific Pte. Ltd |
| | Title _____ |
| | Date _____ |
| | GOOGLE IRELAND LIMITED |
| | By _____ |
| | Name _____ |
| | Title _____ Luciane Moreto / For, Nick Leeder (Director) 2020.11.10 10:25:44 Z |
| | Date _____ |

24



HIGHLY CONFIDENTIAL

GOOG-DOJ-21682415

Google Confidential

## ATTACHMENT A

## REVENUE SHARE

1.  Subject to the terms and conditions of this Agreement, Google will pay Company revenue share during the Term as follows:

(a)  <u>Core Qualified Devices</u>.  Google will pay Company the following percentage of Qualified Net Ad Revenue with respect to the following Core Qualified Device categories and Service Access Points (collectively, "**Shared Net Core Ad Revenue**"):

| % of Qualified Net Ad Revenue | Core Qualified Device Category | Service Access Points |
|---|---|---|
| ■ | Core Qualified Devices sold or distributed in Territories other than Turkey | - Search Access Points under <u>Attachment B-1</u>; and <br> - Assistant Access Points |
| ■ | Core Qualified Devices sold or distributed in Turkey | - Search Access Points in <u>Attachment B-2</u>; and <br> - Assistant Access Points |

For clarity, Shared Net Core Ad Revenue does not include any Ad Revenue generated from Ads on a Results Page displayed in response to a Valid Query from any access points from the Google Search Application or Chrome Browser, unless it is from (x) an Assistant Access Point or (y) Core Qualified Devices sold or distributed in Turkey.

(b)  <u>Enhanced Qualified Devices</u>.  In addition to the Shared Net Core Ad Revenue, for those Core Qualified Devices that are configured to meet the additional requirements for Enhanced Qualified Devices, Google will pay Company the following percentage of Qualified Net Ad Revenue with respect to the following Enhanced Qualified Device categories and Service Access Points (collectively "**Shared Net Enhanced Ad Revenue**"):

| % of Qualified Net Ad Revenue | Enhanced Qualified Device Category | Service Access Points |
|---|---|---|
| ■ | Search Enhanced Qualified Devices | Search Access Points in <u>Attachment C-1</u> |
| ■ | Chrome Enhanced Qualified Devices (for clarity, this does not include any Telecom Operator Client ID Qualified Devices) | Search Access Points in <u>Attachment C-2</u> |
| ■ | Search/Chrome Enhanced Qualified Devices (for clarity, this does not include any Telecom Operator Client ID Qualified Devices) | Search Access Points in both <u>Attachment C-1</u> and <u>Attachment C-2</u> |

(c)  <u>Telecom Operator Client ID Qualified Devices</u>.  Google will pay Company the following percentage

25



**HIGHLY CONFIDENTIAL**

Google Confidential

of Qualified Net Ad Revenue with respect to the following Telecom Operator Client ID Qualified Devices categories and Service Access Points ("**Shared Net Telecom Operator Client ID Ad Revenue**"):

| % of Qualified Net Ad Revenue | Telecom Operator Client ID Qualified Device Category | Service Access Points |
|---|---|---|
| ▉ | Chrome Telecom Operator Client ID Qualified Devices and Chrome/Bixby Telecom Operator Client ID Qualified Devices | Search Access Points in <u>Attachment C-2</u> |
| ▉ | Bixby Telecom Operator Client ID Qualified Devices and Chrome/Bixby Telecom Operator Client ID Qualified Devices | Bixby, and any Company-owned application enabled with the Bixby Q&A Service |

For clarity, Chrome/Bixby Telecom Operator Client ID Qualified Devices are eligible for both Qualified Net Ad Revenues set forth in the preceding table.

Notwithstanding anything to the contrary, Shared Net Telecom Operator Client ID Ad Revenue from the Search Access Points in <u>Attachment C-2</u> for Chrome Telecom Operator Client ID Qualified Devices and Chrome/Bixby Telecom Operator Client ID Qualified Devices ("**Shared Chrome Telecom Operator Client ID Ad Revenue**") will not become payable until the accrued amount reaches ▉ ("**Initial Shared Chrome Telecom Operator Client ID Ad Revenue**"), which will then be paid by the last day of the calendar month following the second calendar month in which the Initial Shared Chrome Telecom Operator Client ID Ad Revenue was achieved, <u>provided</u>, that any accrued and not paid Shared Chrome Telecom Operator Client ID Ad Revenue shall be promptly paid in full upon any expiration or termination of this Agreement.

(d)   <u>Qualified Installed Base Devices</u>.  Google will pay Company the following percentage of Qualified Net Ad Revenue with respect to the following Qualified Installed Base Device categories and Service Access Points ("**Shared Net Installed Base Ad Revenue**"):

| % of Qualified Net Ad Revenue | Qualified Installed Base Device Category | Service Access Points |
|---|---|---|
| ▉ | Qualified Installed Base Devices | - Search Access Points under <u>Attachment D</u>; and<br><br>- Assistant Access Points |

(e)   <u>Bixby Core Qualified Devices</u>.  In addition to the Shared Net Core Ad Revenue, for those Core Qualified Devices that are configured to meet the additional requirements for Bixby Core Qualified Devices, Google will pay Company the following percentage of Qualified Net Ad Revenue with respect to the following Bixby Core Qualified Device categories and Service Access Points ("**Shared Net Bixby Ad Revenue**"):

| % of Qualified Net Ad Revenue | Bixby Core Qualified Device Category | Service Access Points |
|---|---|---|

26



**HIGHLY CONFIDENTIAL**                                    GOOG-DOJ-21682417

Google Confidential

| | Bixby Core Qualified Devices | Bixby, and any Company-owned application enabled with the Bixby Q&A Service |
|---|---|---|
| ██████ | | |

2.   For all Devices and Installed Base Devices, Google may send uncompensated test Queries and traffic to Google Search or Google Assistant or make uncompensated clicks on Ads or generate uncompensated impressions of or actions regarding Ads at any time.

3.   Google will in good faith estimate the volume of revenue from the Assistant Access Points that is not already recognized under Ad Revenues, and is: (a) derived either from End User transactions conducted directly within the Results Page or within the Assistant Access Points; (b) is derived from audio Ads (e.g., advertisements or promotions delivered via audio and without accompanying text, images or video) played in response to an End User's interaction with an Assistant Access Point; or (c) is derived from any other advertising implementation. When such estimated volume exceeds USD ████ Google will pay Company ████████ and the parties will in good faith negotiate the amendment terms by which such subsequent revenue may be shared.

27



**HIGHLY CONFIDENTIAL**                                        GOOG-DOJ-21682418

Google Confidential

## ATTACHMENT B-1

### SEARCH ACCESS POINTS FOR VALID QUERIES ON CORE QUALIFIED DEVICES SOLD OR DISTRIBUTED IN TERRITORIES OTHER THAN TURKEY

Subject to Section 9 (Permitted Activities), each of the below-listed Search Access Points must meet the Minimum Usage and Placement Requirements.

For purposes of this Attachment B-1, "implemented, preloaded or otherwise installed" will not be deemed to include any user-initiated downloads or actions.

| Search Access Point | Minimum Usage and Placement Requirements |
|---|---|
| Browser frame on S-Browser, if implemented, preloaded or otherwise installed on the Core Qualified Device (aka Omnibox, address bar, in-frame search box) | Set to Google.com, or if applicable set to send invalid URLs as Queries to Google.com, and may not include any visible pointer to an Alternative Service (e.g., icons to Alternative Services when tapping or typing on the browser frame, unless such icon appears as part of an autocomplete function by the search provider, etc.). |
| Default home page/start page on S-Browser, if implemented, preloaded or otherwise installed on the Core Qualified Device | Set to Google.com or another domain owned by Google or its Affiliates at which a similar service is offered. |
| | With respect to Company customers that are Telecom Operators, set to such applicable Telecom Operator's requested page, provided, that there are no Alternative Services on such site, provided, further, that, (i) if such applicable Telecom Operator modifies such homepage after Launch of applicable Core Qualified Devices to include Alternative Services on such site, such modification shall not be deemed a breach of this Minimum Usage and Placement Requirement; and (ii) for Core Qualified Devices distributed in Korea or Japan, Alternative Services may be included in such site. |
| | Alternatively, set to Samsung.com or Company-owned and operated site, provided that there is no Alternative Service on such site. |
| New tab page on S-Browser, if implemented, preloaded or otherwise installed on the Core Qualified Device | Set to Google.com or another domain owned by Google or its Affiliates at which a similar service is offered (or an implementation as mutually agreed by the parties). |
| | If the new tab page is set to the default home page/start page, the same requirements applied to the default home page/start page will apply. |

28



Google Mobile Revenue Share Agreement

                          GOOG-DOJ-21682419

Google Confidential

| Quick Access Panel / Drop Down Menu / Bookmarks / Add-Ons on S-Browser, if implemented, preloaded or otherwise installed on the Core Qualified Device | Set pursuant to Attachment E. |
|---|---|

29



Google Mobile Revenue Share Agreement

HIGHLY CONFIDENTIAL

GOOG-DOJ-21682420

Google Confidential

## ATTACHMENT B-2

### SEARCH ACCESS POINTS FOR VALID QUERIES ON CORE QUALIFIED DEVICES SOLD OR DISTRIBUTED IN TURKEY



30



Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**

**GOOG-DOJ-21682421**

Google Confidential

## ATTACHMENT C-1

### SEARCH ACCESS POINTS FOR VALID QUERIES ON SEARCH ENHANCED QUALIFIED DEVICES

Subject to <u>Section 9</u> (Permitted Activities), each of the below-listed Search Access Points must meet the Minimum Usage and Placement Requirements.

For purposes of this <u>Attachment C-1</u>, "implemented, preloaded or otherwise installed" will not be deemed to include any user-initiated downloads or actions.

| Search Access Point | Minimum Usage and Placement Requirements |
|---|---|
| Google-provided widget | Set pursuant to MADA |
| Google Search Application | Set pursuant to MADA |
| (a) All search intents on the Enhanced Qualified Device, which may include "search" and "Web search" intents, and (b) any application or service that is implemented, preloaded or otherwise installed on the Enhanced Qualified Device that has the ability to search using Google Search or be powered by the Google Search Application (e.g., search backfill), including the query search box on the Minus One Screen (if the Enhanced Qualified Device supports such screen), but (c) excluding any search access points from any Google Application or service (including the Chrome Browser and any Assistant Access Points), S-Browser, Bixby, Company-owned application enabled with the Bixby Q&A Service ("**In-Scope Search Access Points**"), or any search access point that Google elects not to add under the "Process for adding new Search Access Points" below.<br><br>For the avoidance of doubt, third party applications or services pre-loaded or otherwise installed by Company which are not Alternative Services shall not be obligated to meet the Minimum Usage and Placement Requirements. | <u>For search intents:</u> Set to Google Search Application<br><br><u>For applications and services that have the ability to search</u>: Set to Google Search Application<br><br><u>For applications and services that have the ability to be powered by the Google Search Application (e.g., search backfill)</u>:  Powered by the Google Search Application |



Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**                                                                 **GOOG-DOJ-21682422**

Google Confidential

**Process for adding new Search Access Points**

i.      If Company wants to add any new In-Scope Search Access Points on an Enhanced Qualified Device, it will notify Google thereof in writing or via e-mail, along with the location and behavior of the proposed search access point(s).

ii.     Upon receipt of Company's notice, the parties will engage in good faith discussions in connection with such proposed search access point(s) for no more than thirty (30) calendar days.  At such point the aforementioned discussions conclude, Google will respond within ten (10) business days thereafter by notifying in writing or via e-mail Company of its choice whether it wants to be the default search provider with respect to the proposed search access point.

iii.    If Google chooses to be the default search provider with respect to the proposed search access point or does not otherwise respond within the aforementioned ten (10) business days, then such search access point shall be deemed as a Search Access Point.

iv.     If Google chooses not to be the default search provider with respect to the proposed Search access point, then <u>Section 9.3(b)</u> shall apply.

32



**HIGHLY CONFIDENTIAL**                                                              **GOOG-DOJ-21682423**

Google Confidential

### ATTACHMENT C-2

### SEARCH ACCESS POINTS FOR VALID QUERIES AND CONFIGURATION REQUIREMENTS ON CHROME ENHANCED QUALIFIED DEVICES AND TELECOM OPERATOR CLIENT ID QUALIFIED DEVICES

Subject to Section 9 (Permitted Activities), each of the below-listed Search Access Points must meet the Minimum Usage and Placement Requirements.

| Search Access Point | Minimum Usage and Placement Requirements |
|---|---|
| Chrome Browser | Set as the default system browser intent and no disambiguation screen is ever presented to the end user out-of-the-box;<br><br>Chrome Browser icon is placed on the Application Dock; and<br><br>Other requirements pursuant to MADA. |

33



**HIGHLY CONFIDENTIAL**

GOOG-DOJ-21682424

Google Confidential



34



HIGHLY CONFIDENTIAL                         GOOG-DOJ-21682425

Google Confidential

## ATTACHMENT E

### REQUIREMENTS FOR QUICK ACCESS PANEL/ DROP DOWN MENU/ BOOKMARKS/ADD-ONS ON COMPANY PROPRIETARY BROWSER (S-BROWSER OR SUCCESSOR)

| QUICK ACCESS PANEL | DROP DOWN MENU | BOOKMARKS |
|---|---|---|
| Set in substantially the same manner as described in the below screenshot, with country/carrier variations. | Set in substantially the same manner as described in the below screenshot, with country/carrier variations. | Set in substantially the same manner as described in the below screenshot, with country/carrier variations. |
| 1. No Alternative Service shall be added on the Quick Access Panel, except for Core Qualified Devices distributed in Korea on which Alternative Services may be included. | 1. Google Search shall be the default in the drop down menu while Alternative Services may be present.<br><br>2. Selecting items in the drop down menu shall not change default. | 1. No Alternative Service shall be added on the bookmarks, except for Core Qualified Devices distributed in Korea on which Alternative Services may be included. |

35



Google Mobile Revenue Share Agreement

Google Confidential



| ADD-ONS |
|---|
| Set in substantially the same manner as described in the below screenshot, with country/carrier variations. |

12:43

< Add-ons

Get more features in Samsung Internet with add-ons. You can tap each add-on to see its permissions.

Ad blockers

WOT Web of Trust, Website Reputation Ratings

Get more add-ons

1. No Alternative Service shall be added on the add-ons of the Company proprietary browsers

36

HIGHLY CONFIDENTIAL                                GOOG-DOJ-21682427

Google Confidential





Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**

**GOOG-DOJ-21682428**

Google Confidential



38



Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**

Google Confidential





Google Mobile Revenue Share Agreement

**HIGHLY CONFIDENTIAL**

**GOOG-DOJ-21682430**

Google Confidential

## GOOGLE MOBILE
## REVENUE SHARE AGREEMENT

| Google | Google LLC<br>Google Asia Pacific Pte. Ltd.<br>Google Ireland Limited<br><br>*Address for Legal Notices:*<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043 | Mobile Partnerships: Kesh Patel<br>Partner Engineering: Sarika Mittal<br>Google Legal: Marie Mackey |
|---|---|---|

### COMPANY CONTACT DETAILS

| | Company Contact Information: | Company Technical Contact: | Company Legal Notices to: |
|---|---|---|---|
| **Attention:** | David Leverett | Lynne MacKinney | Fredrik Cederqvist |
| **Title:** | AVP, BD | Lead Product Marketing Manager | AVP, Senior Legal Counsel |
| **Address, City, State, Postal Code, Country:** | 2260 E Imperial HWY El Segundo, CA 90245 | 1055 Lenox Park Blvd NE, 04D46 Atlanta, GA 30319 | 208 S Akard St Dallas, TX 75202 |
| **Phone:** | ███ | ███ | ███ |
| **Email:** | ███@att.com | ███@att.com | ███@att.com |

**Effective Date:** June 1, 2021
**Term:** Starting on the Effective Date and continuing through ███ (inclusive) ("Term")
**Renewal Term:** None.

1

Google Mobile Revenue Share Agreement

Ex. No.
JX0091
1:20-cv-03010-APM

Google Confidential

This Google Mobile Revenue Share Agreement, including all attachments (collectively referred to as the "**Agreement**"), effective as of the date noted above (the "**Effective Date**"), is made between:

**GOOGLE LLC**, organized in the state of Delaware, **GOOGLE ASIA PACIFIC PTE. LTD.**, organized in Singapore, and **GOOGLE IRELAND LIMITED**, organized in Ireland (In this Agreement, "**Google**" will mean Google LLC, Google Asia Pacific Pte. Ltd., and/or Google Ireland Limited, as the context requires.), on the one hand; and

**AT&T MOBILITY LLC**, a Delaware limited liability company, whose registered office is at 1055 Lenox Park Boulevard, Atlanta, Georgia 30319, on behalf of itself and Cricket (as defined in Section 1.21 below) (collectively, "**Company**"), on the other hand.

Google and Company may be referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## BACKGROUND

A.   Company desires to receive, and Google wishes to share, portions of Ad Revenue (as defined below) from Android phones and tablets sold or distributed by Company, as set out in this Agreement; and

B.   Nothing in this Agreement is intended to restrict Company from entering into revenue sharing agreements with other parties that are not in violation of this Agreement, or to restrict End Users (as defined below) from installing or using alternatives to Google Applications (as defined below) on Android phones and tablets sold or distributed by Company.

## AGREEMENT

**1.   DEFINITIONS**



1.4   "**Alternative Assistive Service**" means

2

CONFIDENTIAL

GOOG-DOJ-27553742

Google Confidential



**1.5** **"Alternative Search Service"** means



**1.6** **"Alternative Service"** means any Alternative Search Service, Alternative Visual Search Service, or Alternative Assistive Service.

**1.7** **"Alternative Visual Search Service"** means

**1.8** **"Android"** means the open-source application framework, libraries, runtime, and kernel which are published at http://android.googlesource.com (or successor sites as notified in writing by Google to Company upon Company request) as integrated in accordance with the instructions published at https://source.android.com (or successor sites as notified in writing by Google to

3



Google Mobile Revenue Share Agreement

GOOG-DOJ-27553743

Google Confidential

Company upon Company request), and any software development kits (SDK) made available at http://developer.android.com (or successor sites as notified in writing by Google to Company upon Company request).

1.9     **"Android Compatible Device(s)"** means an Android OEM's smartphones and tablets (including mobile smartphones and tablets branded by Company or any of its Affiliates) that use Android as an operating system and that comply with the then-current Android Compatibility Definition document, which can be found at the Android compatibility website (http://source.android.com/compatibility) (or successor sites) and which may be updated from time to time).

1.10    **"Application Dock"** means the collection of applications on the bottom row of the Default Home Screen that is also visible in the same location and format on screens that can be accessed from the Default Home Screen via one or more swipes to the left or right by an End User (other than the Minus One Screen). As of the Effective Date, the Application Dock is sometimes referred to in common parlance as the "hotseat."



1.15    **"Chrome Browser"** means Google's Chrome browser.

1.16    **"Client Application"** means any application, plug-in, helper, component, or other executable code that runs on an End User's Preferred Device, Lab Device or Qualified Device (as applicable).

1.17    **"Client ID(s)"** means the unique alphanumeric code(s) that Google provides to Company pursuant to this Agreement (or in the case of Qualified Devices, pursuant to the Previous Agreement) that is (but is not limited to be) used to identify Ad Revenue on Devices and Qualified Devices.

4



Google Mobile Revenue Share Agreement

Google Confidential



**1.24** "**Default Home Screen**" means the layout(s) of icons and widgets (prior to any changes made by End User) that are visible across all display(s) on a Device immediately after a Launcher starts, including the lock screen and/or the notification tray. For clarity, if a Device has multiple displays, then such Device has (a) multiple Default Home Screens if it has multiple layouts such as a foldable device; and (b) only one Default Home Screen if it only has a single layout across multiple displays.



**1.26** "**Device**" means each Android Compatible Device that (a) that has a Launch Date on or after the Effective Date of this Agreement (or as otherwise provided through advance notice from Company to Google in writing, including over email), (b) that is manufactured by an Authorized OEM, (c) that is sold or distributed by Company or a Company Affiliate in the Territory during the Term, and (d) that is subject to the terms of this Agreement. For the sake of clarity, Device does not include any device whose primary function is to serve as a smart speaker or a smartwatch.

**1.27** "**Device Controls**" refers to "Device controls" as described at https://developer.android.com/guide/topics/ui/device-control, as may be updated from time to time by Google or any successor URL.

**1.28** "**Device Model**" refers to "Product" as defined in the Google Mobile Services (GMS) Requirements found at https://docs.partner.android.com/gms/policies/domains/introduction, as may be updated from time to time by Google or any successor URL.

**1.29** "**End User**" means any human end user of a Device or Qualified Device.



Google Mobile Revenue Share Agreement

GOOG-DOJ-27553745

Google Confidential



**1.32**   "**Google Applications**" means the machine-readable binary code version of the Google applications found at https://docs.partner.android.com/gms/policies/overview/geo-availability (or such other URL as may be provided by Google from time to time).

**1.33**   "**Google Assistant**" means the assistive service offered by Google that may be accessed or invoked from a Device via the Assistant Access Points.

**1.35**   "**Google Folder**" means a folder on the Default Home Screen that contains certain Google Applications (as specified by Google).

**1.40**   "**Google Product Geo-Availability Chart**" means the list of Google Applications and associated information (including geo-availability) set out at https://docs.partner.android.com/gms/policies/overview/geo-availability?authuser=1 (as such URL may be changed or replaced by Google at its sole discretion from time to time).

**1.42**   "**Google Search Application**" means the Google application that includes the following services or features (which Google may update from time to time in its sole discretion): (a) access to Google Search via the Google Search service icon and Google Discover and/or any of their successors; (b) handling of voice searches and search intents; and (c) access to the Google Assistant.

6



Google Mobile Revenue Share Agreement

Google Confidential



**1.50** "**Letter Upgrades**" means installation of the then latest version of Android made available by Google at http://source.android.com (or any successor sites).

**1.52** "**MADA**" means a current and effective Mobile Application Distribution Agreement entered into between Google or a Google Affiliate and an OEM (including any related amendments, extensions or successor agreements).

**1.53** "**Minus One Screen**" means the screen accessed by the End User by swiping their finger once from left to right on the Default Home Screen.

**1.57** "**Previous Agreement**" means that certain Google Mobile Search Revenue Share Agreement between Google LLC and Company effective as of February 1, 2018 (as amended), which expired immediately prior to the Effective Date.

7

GOOG-DOJ-27553747

Google Confidential



1.55    "Search Access Point" means

Google Mobile Revenue Share Agreement

CONFIDENTIAL

Google Confidential



**1.71** "**Shared Net Ad Revenue**" means Shared Net Preferred Ad Revenue and Shared Net Qualified Ad Revenue.

**1.72** "**Shared Net Preferred Ad Revenue**" has the meaning set forth in Attachment A.

**1.73** "**Shared Net Qualified Ad Revenue**" has the meaning set forth in Attachment A.

**2.  SCOPE**

**2.1  Geographic Scope.** This Agreement applies only to Devices and Qualified Devices sold or distributed in the Territory.

**2.2  Preferred Devices.** Subject to Section 9.1, Company may choose on a device-by-device basis to configure any Device so that it meets the requirements to qualify as a Preferred Device (as set forth in Section 4.1).

**2.3  Qualified Devices.**

(a)     Prior to the Effective Date, Company has been receiving revenue share for Qualified



9

CONFIDENTIAL

Google Confidential

Devices in accordance with the terms of the Previous Agreement (as defined in Section 1.56), which expired as of immediately prior to the Effective Date. In order for Company to continue receiving revenue share under this Agreement (in accordance with Section 9 and Attachment A) for Qualified Devices, such Qualified Devices must (a) comply with the terms and conditions of the Previous Agreement, including, for the avoidance of doubt, with all configuration and placement obligations of the Previous Agreement; and (b) meet the requirements of Section 6 and Attachment C of this Agreement.

(b)    If during the Term of this Agreement, Company or its Affiliates perform any act or omission with respect to Qualified Devices such that they would no longer be considered Qualified Devices under the terms of the Previous Agreement (notwithstanding the fact that the Previous Agreement has expired), it will be deemed a breach of this Section 2.3 and such device will cease to be a Qualified Device. For the avoidance of doubt, Qualified Devices no longer qualify for the revenue share rate set forth under the Previous Agreement and are only eligible for the revenue share rate set forth under this Agreement.

2.4    **Lab Devices.**

(a)    Notwithstanding anything to the contrary set forth herein, Google will pay Company Shared Net Qualified Ad Revenue for a Lab Device as set forth in Exhibit A of this Agreement during the Term of this Agreement; provided that Company must comply with all of the following conditions:

(i)    Company must include a Qualified Device Client ID on such Device;

(ii)    Company and the Device must comply with all the terms and conditions applicable to Qualified Devices under the Previous Agreement, except as expressly modified by subsection (iii) directly below; and

(iii)    Company must comply with Section 6 (Company Obligations) and Attachment C of this Agreement.

(b)    Company will not implement a Qualified Device Client ID on any Lab Device that does not comply with all of the conditions set forth in Section 2.4(a), except as mutually agreed in writing by the Parties.

2.5    **Company Affiliates.**

3.    **SETUP REQUIREMENTS**



10

Google Mobile Revenue Share Agreement

Google Confidential



**4.    PREFERRED DEVICE**

**4.1    Device Requirements.** For any Qualified Device or Device to qualify and remain as a Preferred Device, and for Company to receive Shared Net Preferred Ad Revenue for such Device under this Agreement in accordance with Section 9 and Attachment A, Company must comply with all conditions set forth in this Section 4.1



(a)    Company must comply with all Setup Requirements (as set forth in Section 3.1);

(b)    The Device must comply with all requirements set forth in Attachment B (Service Access Points and Other Google Applications for Preferred Devices);

(c)    The Device must comply with Section 4.2 (Configuration);

(d)    Company must implement the Preferred Device Improvement Plan for Preferred Devices (as set forth in Section 4.3); and

11



CONFIDENTIAL

GOOG-DOJ-27553751

Google Confidential

(e) Company must meet the Security Updates and Letter Upgrades requirements as set forth in Section 4.4 and Attachment C.

## 4.2   Configuration.

(a) **Prohibitions.**  Except as specified in Section 5 (Permitted Activities), Company, its Affiliates and their service providers or agents acting on their behalf will not do, and will not direct, authorize or actively encourage any third party to do, any of the following with respect to Preferred Devices:

(i) include in any manner on a Preferred Device (including via over-the-air prompt, out-of-box experience, or non-End User-initiated download or update and including on the Default Home Screen, Minus One Screen, or lock screen, or through a notification shade, quick setting, or "mode" (e.g., ambient mode)): (A) any Alternative Service or (B) any application, hardware buttons or other physical affordance, bookmark, quick settings link (the area on Devices where an End User can swipe down from the top of the Device screen to access quick links to applications, services and Device settings), product, service, icon, launcher, Hotword, Gesture, or feature (x) that is an Alternative Service or (y) that has the primary purpose of providing access to an Alternative Service, including by any Hotword or Gesture;

(ii) introduce, promote, or suggest (including via on-Device ads or SMS) the use or installation of an Alternative Service on a Preferred Device; or

(iii) with respect to any Google Applications that are preloaded on a Preferred Device, (A) alter, adjust or change in any manner the default settings from initial factory settings, or (B) engage in any on-Device promotion or campaign that suggests to End Users that they alter, adjust or change in any manner such default settings from initial factory settings, or (C) engage in any off-Device organized promotion or campaign targeted to any group that is comprised of all or substantially all End Users of Preferred Devices that suggests to End Users that they alter, adjust or change in any manner such default settings from initial factory settings on such Preferred Devices.

## 4.3   Preferred Device Improvement Plan.



12



Google Mobile Revenue Share Agreement

GOOG-DOJ-27553752

Google Confidential



**4.4** **Security Updates and Letter Upgrades.**  For a period of ▮▮▮▮▮▮ after the applicable Launch Date, unless otherwise approved by Google in writing, and subject to Company's standard, generally applicable acceptance process with OEMs, a copy of which will be provided to Google upon request, Company will not block (a) any updates to the Android operating system that are provided by the applicable Authorized OEM for Preferred Devices; and (b) any Security Updates and Letter Upgrades that are provided by the applicable Authorized OEM for Preferred Devices.

**5.** **PERMITTED ACTIVITIES**

**5.1** **End Users.** For the sake of clarity, nothing in this Agreement restricts End Users from choosing for themselves to download, install or use Alternative Services or alternatives to Google Applications.



13



Google Mobile Revenue Share Agreement

Google Confidential



**6.    COMPANY OBLIGATIONS**

14



Google Mobile Revenue Share Agreement

Google Confidential



**7.    MANAGEMENT**



Google Mobile Revenue Share Agreement

Google Confidential



8.    DATA COLLECTION AND REPORTS



9.    PAYMENT AND TAXES



16

Google Mobile Revenue Share Agreement

Google Confidential



17

Google Mobile Revenue Share Agreement

CONFIDENTIAL

GOOG-DOJ-27553757

Google Confidential



10.  **TERM AND TERMINATION**

10.1  **Term.**  This Agreement will commence on the Effective Date and will continue until the end of the Term as stated on page 1 of this Agreement, unless earlier terminated as provided in this Agreement, including but not limited to Section 10.

10.2  **Termination of this Agreement.** Either Google or Company may suspend or terminate this Agreement with immediate effect by giving written notice to the other Party if such other Party:

(a)  is in material breach of this Agreement where the breach cannot be remedied;

(b)  is in material breach of this Agreement where the breach can be remedied, but such other Party fails to remedy that breach within thirty (30) calendar days after receiving written notice of such breach;

(c)  is in material breach of the same provision of this Agreement more than twice for which

18



Google Mobile Revenue Share Agreement

GOOG-DOJ-27553758

Google Confidential

        written notice of each breach is given regardless of whether the third or subsequent breach can be remedied; or

(d)    ceases its business operations or becomes subject to insolvency proceedings and the proceedings are not dismissed within ninety (90) calendar days.



19

Google Mobile Revenue Share Agreement

GOOG-DOJ-27553759

Google Confidential



**11.   CONFIDENTIALITY AND PUBLICITY**



20

CONFIDENTIAL

GOOG-DOJ-27553760

Google Confidential



**12.    INTELLECTUAL PROPERTY RIGHTS**



**13.    REPRESENTATIONS AND WARRANTIES; COVENANTS**



**14.    LIMITATION OF LIABILITY**



21



Google Mobile Revenue Share Agreement

Google Confidential



15.    GENERAL



22

Google Mobile Revenue Share Agreement

CONFIDENTIAL

Google Confidential



[Signature Page Follows]



23

Google Mobile Revenue Share Agreement

CONFIDENTIAL

Google Confidential

IN WITNESS WHEREOF, the Parties have executed this Agreement by persons duly authorized as of the Effective Date.

**COMPANY: AT&T MOBILITY LLC, on behalf of itself and Cricket Wireless LLC**

By _____

Name _David L. Christopher__

Title _EVP + GM, AT&T Mobility_

Date _6/1/21_

**GOOGLE LLC**

2021.06.02
09:42:38
-07'00'

Hiroshi Lockheimer
Authorized Signatory

Title _____

Date _____

**GOOGLE ASIA PACIFIC PTE. LTD.**

By _S. Lavanya_

2021.06.0
2 14:26:19
+08'00'

Name _Lavanya Seetharaman_

Title _Director_
_Google Asia Pacific Pte. Ltd_

Date _____

**GOOGLE IRELAND LIMITED**

By _____

2021.06.02
17:03:31
+01'00'

Name _Needel_

Title _Luciano Moreso_
_For, Nick Leeder (Director)_

Date _____

24

Google Mobile Revenue Share Agreement

GOOG-DOJ-27553764

Google Confidential

## ATTACHMENT A

### REVENUE SHARE

**1.     Revenue Share.** Subject to the terms and conditions of this Agreement (including Section 9 (Payment and Taxes)), Google will pay Company revenue share during the Term as follows:

(a)     **Preferred Devices.** Google will pay Company ⬛⬛⬛⬛⬛⬛ of Net Ad Revenue generated from Ads on a Results Page displayed on a Preferred Device in response to a Valid Query from the Search Access Points in the table in Attachment B and from Assistant Access Points (for clarity, those Service Access Points Identified in Attachment B as "Not Used in the Calculation of Shared Net Preferred Ad Revenue" will not be included), provided Company meets all the requirements set forth in Sections 4 (Preferred Device) and 6 (Company Obligations) of this Agreement (**"Shared Net Preferred Ad Revenue"**).

(b)     **Qualified Devices.** Google will pay Company ⬛⬛⬛⬛⬛⬛ of Net Ad Revenue generated from Ads on a Results Page displayed on a Qualified Device (sold or distributed during the term of the Previous Agreement) in response to a Valid Query from the Search Access Points and from the Assistant Access Points specified in the Previous Agreement, provided Company meets all the requirements set forth in Sections 2.3 (Qualified Devices) and 6 (Company Obligations) of this Agreement (**"Shared Net Qualified Ad Revenue"**).

(c)     **Lab Devices.** Google will pay Company ⬛⬛⬛⬛⬛⬛ of Net Ad Revenue generated from Ads on a Results Page displayed on a Lab Device in response to a Valid Query from the Search Access Points and from the Assistant Access Points specified in the Previous Agreement, provided Company meets all the requirements set forth in Sections 2.4 (Lab Devices) and 6 (Company Obligations) of this Agreement (**"Shared Net Qualified Ad Revenue"**).

**2.     No Duplicate Payments.** For the avoidance of doubt, Company is only eligible to receive Shared Net Qualified Ad Revenue for Qualified Devices and Lab Devices (as applicable), as set out in Section 1(b) of this Attachment A, and will not also receive revenue share under the Previous Agreement.

**3.     Test Queries.** For all Preferred Devices, Qualified Devices and Lab Devices, Google may, at any time, send uncompensated test Queries and traffic to Google Search or Google Assistant; make uncompensated clicks on Ads; or generate uncompensated impressions of, or actions regarding, Ads.

25



CONFIDENTIAL

Google Confidential

## ATTACHMENT B

## SERVICE ACCESS POINTS AND OTHER GOOGLE APPLICATIONS FOR PREFERRED DEVICES

Subject to Section 5 (Permitted Activities), (i) all Assistant Access Points and Search Access Points on Preferred Devices must utilize Google Assistant and Google Search, and (ii) each of the below-listed Service Access Points and Google Applications must meet the Minimum Usage and Placement Requirements.

For purposes of this Attachment B, the terms "preloaded," "implemented, preloaded or otherwise installed" and the like do not include any End User-initiated downloads or actions.

| Service Access Point Used in the Calculation of Shared Net Preferred Ad Revenue in Attachment A | Minimum Usage and Placement Requirements |
|---|---|
| Google Search widget. Google Assistant and Google Lens are accessible via Google Search widget subject to product availability as determined by Google in its sole discretion. | Placed on the Default Home Screen as configured and specified by Google. |
| Browser frame on all implemented, preloaded, or otherwise installed third-party browsers (aka Omnibox, address bar, in-frame search box) | Set to Google.com. |
| Default home page/start page on all implemented, preloaded, or otherwise installed third-party browsers | Set to Google.com. Alternatively, for users of any AT&T Service, the default home page/start page on all preloaded browsers (other than on Chrome Browser) may be set to (1) att.net (or its successor) or (2) the URL for Cricket's home page; provided, that in each case for (1) and (2), such default home page/start page (i) is powered by Google.com above the fold and (ii) is in compliance with Google's brand guidelines (e.g., search box directly under the Company logo). |
| New tab page on all implemented, preloaded, or otherwise installed third-party browsers | Set to Google.com. |
| All search intents actions on the Preferred Device, as determined by Google, including "search" and "Web search" intents | Set to Google Search Application. |
| Google Assistant app (including Voice search) | Google Assistant app is preloaded and icon is placed on the Default Home Screen outside of Google Folder; provided, however, that this is not required for Preferred Devices that are Samsung Devices. |
| Chrome Browser | Placed on Application Dock and set as the default browser; ███████████████ |

26



Google Mobile Revenue Share Agreement

GOOG-DOJ-27553766

Google Confidential



| | |
|---|---|
| Query search box on Minus One Screen (if Preferred Device supports a Minus One Screen and Google includes a query search box) | Minus One Screen is reserved for either (1) Google Discover or (2) a shared experience between Google Discover and Company and/or Authorized OEM experience in accordance with Attachment D, with Google Discover set as default. Google reserves the right to change from Google Discover experience to another Google service or experience by providing Company with written notice. No other non-Google services or features will be included. |
| Web search functionality in any keyboard or launcher (if such web search functionality is available) | Set to Google.com. |



27



CONFIDENTIAL

GOOG-DOJ-27553767

Google Confidential



28



Google Mobile Revenue Share Agreement

CONFIDENTIAL

Google Confidential

## <u>ATTACHMENT C</u>

### <u>SECURITY UPDATE REQUIREMENTS FOR PREFERRED DEVICES, LAB DEVICES AND QUALIFIED DEVICES</u>



29

Google Mobile Revenue Share Agreement

Google Confidential



30

Google Mobile Revenue Share Agreement

CONFIDENTIAL

GOOG-DOJ-27553770

Google Confidential





3

Google Mobile Revenue Share Agreement

GOOG-DOJ-27553771

Google Confidential

## <u>ATTACHMENT D</u>

### <u>MINUS ONE SCREEN EXPERIENCE ON PREFERRED DEVICES</u>



32

Google Mobile Revenue Share Agreement

GOOG-DOJ-27553772

Google Confidential



33

CONFIDENTIAL

Google Confidential



34



Google Mobile Revenue Share Agreement

Google Confidential

## SCHEDULE 1

### ILLUSTRATIVE EXAMPLE OF MINUS ONE SCREEN EXPERIENCE



35



Google Mobile Revenue Share Agreement

CONFIDENTIAL

GOOG-DOJ-27553775

Google Confidential

## ATTACHMENT E

### LAB DEVICES

As of the Effective Date, the following is a list of the code names (each, a "**Code Name**") for all Lab Devices under this Agreement. For each Code Name, Company will provide Google with: (a) the name of the Authorized OEM, (b) device marketing name and (c) device model for each Code Name below when that information may be shared. Following the Effective Date, this list may be updated by mutual written agreement of the Parties (email being sufficient).

**Code Name**



36



Google Mobile Revenue Share Agreement

**AMENDMENT NO. 1**

This Amendment No. 1 ("**Amendment**") is entered into by:

**Google LLC**, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, California 94043, USA ("**Google**"); and

**Motorola Mobility LLC and Affiliates** ("**Motorola**") and **Lenovo Group Ltd** ("**Lenovo**" and, together with Motorola, "**Company**") with offices at 222 W. Merchandise Mart, Suite 1800 Chicago, Illinois, 60654, USA.

This Amendment is effective on the date it is signed by Google ("**Amendment Effective Date**").

**INTRODUCTION**

(A)     Company and Google are parties to the Mobile Application Distribution Agreement with an effective date of January 1, 2018 (the "**Agreement**").

(B)     The parties wish to amend the Agreement.

**AGREED TERMS**

1.     **Definitions.**  The following definitions are added to or revised from the Agreement.  Except as specified below, the Agreement's defined terms apply to this Amendment.



GOOGLE CONFIDENTIAL

1

Ex. No.
JX0099
1:20-cv-03010-APM

GOOG-DOJ-13137996



1.8    The following are added as new definitions under Sections 1.39 through 1.41 of the Agreement:

    **1.39**    "**Launcher**" means a user interface that is (1) initiated by the KEYCODE_HOME key event in Android (e.g. pressing on the "home" button or any applicable gesture intended to invoke the Default Home Screen), or (2) started after initial boot-up or subsequent power up of the Device.

    **1.40**    "**Software Build**" means the software configuration for a Device Model identified by a unique build fingerprint.

    **1.41**    "**EEA**" means those countries set forth in https://support.google.com/androidpartners_gms/answer/9071728 (or such other URL as may be provided by Google from time to time)."

2.    **Amendments.**  From the Amendment Effective Date, the Agreement is amended as follows:

2.2    The "Term" is extended for one year from January 1, 2020 ("New Term").  Upon expiration of the New Term, the Agreement will automatically renew for a single additional year unless either party provides 60 days' notice in writing.

GOOGLE CONFIDENTIAL

2

GOOG-DOJ-13137997

DocuSign Envelope ID: 3FBDD1F5-DEC9-49DF-B8C8-F2764849DF84

2.5      The following is added as Section 2.3(r) of the Agreement: "(r) implement a Launcher that after the initial boot up or a subsequent power up of a Device, is not in compliance with this Agreement, including Section 4 (Device Implementation Requirements); or"

2.6      The following is added as Section 2.3(s) of the Agreement: "(s) promote, direct or suggest the implementation, preload, or installation of, any Launcher that would cause the Device to not be in compliance with this Agreement, including Section 4 (Device Implementation Requirements)."



2.9      The following is added as Section 4.4(i)(v) of the Agreement: "(v) not include any processes, instructions, promotions, or other means that directs, instructs or encourages the End User to change the Device from being in compliance with this Agreement, including this Section 4.4."



GOOGLE CONFIDENTIAL

HIGHLY CONFIDENTIAL

GOOG-DOJ-13137998



GOOGLE CONFIDENTIAL

**Signed by the parties' authorized representatives on the dates below.**

| MOTOROLA MOBILITY LLC | GOOGLE LLC |
|---|---|
| By: *Paul pitarra*<br>E1ECFBBB050C439... | By: *[signature]* 2020.01.10 16:09:25 -08'00'<br>Jamie Rosenberg<br>Authorized Signatory |
| Name: Paul pitarra | Name: |
| Title: Executive Director, Procurement | Title: |
| Date: 1/8/2020 | Date: |

| LENOVO GROUP LTD |
|---|
| By: *Paul pitarra*<br>E1ECFBBB050C439... |
| Name: Paul pitarra |
| Title: Executive Director, Procurement |
| Date: 1/8/2020 |

GOOGLE CONFIDENTIAL

5