# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| | HON. AMIT P. MEHTA |
| v. | █████████████████ |
| GOOGLE LLC, | |
| Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| | HON. AMIT P. MEHTA |
| v. | █████████████████ |
| GOOGLE LLC, | |
| Defendant. | |

## PLAINTIFFS' CONFIDENTIALITY POSITION STATEMENT

Pursuant to ECF No. 850 at 2(d), Plaintiffs submit the below position statement regarding confidentiality disputes with: Google, non-party Apple, and three non-party Android partners: AT&T, T-Mobile, and Verizon.

## I.      Introduction

Plaintiffs oppose the redactions to the parties' post-trial briefs, proposed findings of fact, and responsive briefing (collectively, "post-trial submissions"[1]) sought by Google, Apple, AT&T, T-Mobile, and Verizon.[2] *See generally* Exhibit A. As an initial matter, there is no dispute that the entirety of the parties' post-trial submissions constitutes "judicial records." *League of Women Voters of the United States v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) ("[E]very part of every brief filed to influence a judicial decision qualifies as a 'judicial record.'"). Therefore, the D.C. Circuit applies a "strong presumption" in favor of disclosing such records because "[a]ccessing judicial records is 'fundamental' to 'the rule of law.'" *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021). When a party seeks to overcome this presumption, the D.C. Circuit has set forth six factors, first identified in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980):

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing 650 F.2d at 317-22).

---

[1] Plaintiffs identify disputes over confidentiality in ECF Nos. 820, Plaintiffs' Post-Trial Brief ("PPTB," enclosed as Exhibit B); 822, Plaintiffs' Proposed Findings of Fact ("PPFOF," enclosed as Exhibit C); 828, Google's Proposed Findings of Fact ("GPFOF"); 855, Plaintiffs' Response to Defendant's Proposed Findings of Fact ("PRPFOF," enclosed as Exhibit D); and 856, Google's Responsive Proposed Findings of Fact ("GRPFOF"). Plaintiffs do not include in these exhibits the redactions sought by non-parties over which there are no disputes.

[2] One non-party, The North Face, has not responded to Plaintiffs' notifications pursuant to ECF No. 850. Plaintiffs respectfully request that these materials be disclosed. Ex. D, PRPFOF at ¶ 2227.

Plaintiffs apply the first and sixth *Hubbard* factors—which apply globally to all confidentiality disputes regarding the parties' post-trial submissions—in Section II. In Sections III-VI, Plaintiffs apply the remaining *Hubbard* factors to each dispute or category of disputes.[3]

## II.     The First And Sixth *Hubbard* Factors Weigh Strongly In Favor Of Disclosing Information In The Parties' Post-Trial Submissions

The first and sixth *Hubbard* factors—the need for public access to the documents at issue and the purposes for which the documents were introduced during the judicial proceedings—weigh strongly in favor of disclosure of the information in the parties' post-trial submissions. As an initial matter, where a public agency is party to a lawsuit and objects to sealing, it "strengthens the already strong case for access." *Nat'l Childrens' Ctr.*, 98 F.3d at 1409; *see also In re Press Application for Access to Judicial Records in Case No. 23-SC-31*, _ F. Supp. 3d _, No. 23-84-JEB, 2023 WL 8254630 at *4 (D.D.C. Nov. 29, 2023) ("[T]he presumption of transparency is 'accentuated in cases' like this one 'where the government is a party.'" (quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 81 (D.D.C. 2020))).

These post-trial submissions contain what the parties have identified as the most important information from a 10-week trial. As the Court noted in its pretrial order on the admissibility of evidence, the "focus of the court's decision-making will be the trial testimony, exhibits, and deposition designations cited in the parties' proposed findings of fact and conclusions of law." ECF No. 666. In the D.C. Circuit, "[t]he more relevant [information] is to the central claims of the litigation, the stronger the presumption of unsealing the [information]

---

[3] Google and Apple refused to provide Plaintiffs with a copy of the declarations they intend to file in support of their confidentiality submissions. To the extent Google and/or Apple raise new bases not previously disclosed to Plaintiffs for seeking to redact information, Plaintiffs reserve the right to seek to address these bases before the Court.

becomes." *In re Press Application*, at \*7 (second and third alteration in original) (citing *U.S. v. Harris*, 204 F. Supp. 3d 10, 17-18 (D.D.C. 2016)). Indeed, "[t]he public interest in these documents is heightened because they allow the public to understand the rulings as well as the contours of the disputes between the parties." *Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017). Even if the Court does not ultimately rely on all the information contained in the parties' post-trial submissions in its final opinion, "the public also has a transparency interest in knowing what record evidence the Court saw fit to exclude from its explanation of the reasons underlying its ultimate decision." *Vanda Pharm., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 53 (D.D.C. 2021) (citing *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017) ("Without access to the sealed materials, it is impossible to know which parts of those materials persuaded the court and which failed to do so (and why).")).

For these reasons, the first and sixth *Hubbard* factors weigh strongly in favor of disclosure.

## III.   Plaintiffs Oppose The Disputed Redactions To Google's Anticompetitive Agreements At The Core Of This Case

As an initial matter, there is no dispute that Google's agreements are central to this case. In a case brought by a federal and state agencies on behalf of the public in federal court about anticompetitive agreements, the public should see the language of the actual agreements. Nevertheless, Google and its non-party partners seek to seal from the public quotations from—as well as general descriptions of—these agreements that the parties have identified to the Court as important evidence.

### A.   Disputes With Google And Its Android Partners AT&T, T-Mobile, And Verizon

Google seeks to seal the key terms of its Android contracts listed in Exhibit A at III.A.

Specifically, with respect to its Android agreements, Google seeks to redact (1) the term lengths; (2) the definition of "Alternative Search Service;" (3) how the definitions of "Alternative Search Service" and "Search Access Point" are to be interpreted; (4) limitations to S-Finder's functionality; (5) default browser and placement requirements; (6) which devices qualify for revenue share; (7) an AT&T-specific requirement; and (8) a clause specific to one Android partner.

In addition to the first and sixth *Hubbard* factors, the second *Hubbard* factor supports disclosure of categories (1)-(6) above. Identical or near-identical contract terms were disclosed in *Epic Games, Inc. v. Google LLC*, 3:20-cv-05671-JD (N.D. Cal.). In that case, the entirety of Google's February 1, 2020, Mobile Incentive Agreement, save for personal contact information, was published on the docket as ECF No. 622-75 (enclosed as Exhibit E); *see also Epic Games*, at ECF No. 622-73 (publishing in full a detailed summary of Google's 2020 Mobile Incentive Agreement with Samsung) (enclosed as Exhibit F).

Additionally, Google has failed to identify actual prejudice should information in categories (1) through (6) be disclosed. The fifth *Hubbard* factor thus supports disclosure. Google has argued repeatedly that its contracts may not be disclosed because of how the "bespoke" terms differ from partner to partner. Sept. 1, 2023 Pre-Trial Conference at 61:1-4. Yet, a simple review of the terms in categories (1) through (6) above show that these are near-standard—not bespoke—contract terms. Unsurprisingly, these near-identical terms show how Google imposed terms on its partners so that it could maintain its monopoly at the lowest cost to itself. *See* Exhibit A at III.A. And, while categories (7) and (8) above may be unique, Google has failed to provide any specific prejudice that could befall Google from disclosure of these clauses.

Finally, the third *Hubbard* factor considers the identity of those who object to disclosure.

Although Google objects to disclosure, its non-party partners largely do not. *See* Exhibit A at III.A. ("Additional Information" column). Indeed, Motorola and Samsung do not object to any information that Plaintiffs seek to disclose. AT&T (one dispute), T-Mobile (one dispute), and Verizon (three disputes) have limited and narrow disputes with Plaintiffs. That Google's non-party partners largely do not object to disclosure of this information undermines Google's argument that the third *Hubbard* factor weighs in its favor.

### B.      Dispute With Google Regarding Its Browser Agreement

Google seeks to seal one contract provision that allows Google to limit where Mozilla may send search queries entered into Mozilla's navigation bar. Exhibit A at III.B. The second *Hubbard* factor supports disclosure of this information, as it may be readily observed by any user of Mozilla's Firefox browser who enters queries into the navigation bar. Additionally, Mozilla does not oppose disclosure of this information.

### C.      Disputes With Google And Apple

Google also seeks to seal key terms of the Information Services Agreement (ISA) with Apple, which are listed in Exhibit A at III.C. Specifically, Google seeks to redact the following provisions: (1) one of the geographic areas in which its ISA with Apple applies; (2) the term lengths and issues relating to termination and revision of the ISA; (3) that ██████████████ ████████████████████████████████████████████████████████; (4) that ████████████████████████████████████████████████████████████████ ████████████████████████████████; and (5) that █████████████████████████ ████████████████████████████████. The *Hubbard* factors weigh in favor of disclosing this information.

With respect to provisions (1) and (2), the fact that Apple does not object to disclosing

one of the geographic areas to which the ISA applies should be considered under the third *Hubbard* factor. Additionally, the fifth *Hubbard* factor, which requires a specific demonstration of prejudice, weighs in favor of disclosing both the geographic area to which the ISA applies and the ISA's term length, as Google and Apple face little prejudice if such information is disclosed. To the contrary, Apple could benefit from competition if other rival search providers knew when Apple and Google's contract expires and were thus able to submit bids for distribution on Apple's devices.

The second *Hubbard* factor also supports disclosure of provisions (3) and (4). At trial, the Court initially redacted portions of these of provisions, related to █████████████████████ ████████, based on Google's arguments that such information was not well known to the public (second *Hubbard* factor) and that the provisions did not have a large probative value (first *Hubbard* factor). Tr. 10217:17–10218:10. Yet, these factors now support disclosure, not sealing. First, information related to ██████████████████████████████████████ has now been disclosed: during the examination of Plaintiffs' expert Prof. Whinston, the Court noted that disclosing this information does not create a "real problem" and allowed Prof. Whinston to testify that "I excluded things that one might arguably have said aren't -- even if paid, aren't -- even if paid under the contract, are not kind of exclusionary. And so I excluded iGSA and the bookmarks. And, of course, Chrome is not in here at all. User-downloaded Chrome is not in here at all." Tr. 5761:16–5763:5. Second, as Prof. Whinston's testimony makes clear, this information is material to this case: Prof. Whinston's foreclosure figures conservatively do not include searches on Chrome and iGSA, ████████   ████████████████. Moreover, Google claims that "unconditional revenue share is not a result that would occur in any economically valid but-for world." GPFOF at 199 (capitalization omitted). Google argues the economics of a "but-for

world" because the economics of the real world are inconsistent with Google's claim: Google, in

fact, ███████████████████████████████████████████████████████████████

████████████████████████.

Finally, with respect to provision (5), the requirement that ███████████████████

█████████████████████████████, the second *Hubbard* factor favors disclosure of this

provision, as this fact is apparent to any member of the public ████████████████████.

## IV.   Plaintiffs Oppose The Redaction Of High-Level Financial Information

Plaintiffs oppose the redaction of high-level financial information. As this information is

often aggregated and very similar to information that is disclosed in public filings, there is little

risk of prejudice. Therefore, the second, fourth, and fifth *Hubbard* factors do not support sealing

high-level financial information from the public.

### A.   Disputes With Google

Google seeks to seal three types of high-level financial information: (1) its revenues,

costs, and margins; (2) its R&D spending for Search; and (3) its revenue share payments to

Apple (discussed *infra* IV.B). To date, Google's sole explanation to Plaintiffs of its privacy

interest in sealing high-level financial information in categories (1) and (2) is that it does not

typically disclose this information publicly. Google has thus failed to identify any "specific

privacy interests" required for sealing under the fourth *Hubbard* factor. *Guttenberg v. Emery*, 26

F. Supp. 3d 88, 94 (D.D.C. 2014) ("[U]nder this factor, the party seeking to avoid disclosure

must identify specific privacy interests in the documents at issue."). Additionally, even if Google

could demonstrate some cognizable privacy interest, Google has not identified to Plaintiffs how

the disclosure of high-level financial information could harm Google outside of "speculative and

generalized" arguments that are not enough to support the fifth *Hubbard* factor. *Id.* at 95.

The second *Hubbard* factor also supports disclosure. Indeed, the Court squarely addressed Google's proposal to seal from the public its Search revenues, balancing the *Hubbard* factors and concluding that, because Google discloses similar revenue figures in its 10-K, these figures are "essentially already [] public number[s]." 7572:18-7574:18. The same analysis should apply to the aggregated costs and margins regarding Google's Search segment that Google also seeks to seal. Indeed, in *Epic Games*, disaggregated costs were publicly disclosed along with revenues and profit margins for Google's Android and Play business segments. Exhibit G, *Epic Games* at ECF No. 622-34 at -006, -011-012.

Finally, Plaintiffs note that, although Google seeks to redact mostly numbers and figures under this category, this does not lessen the need for public access under the first *Hubbard* factor. For example, Google seeks to seal information regarding its investment into research and development for Google Search. There is no doubt that this information is important: both parties address it in the first page of their post-trial briefs. Google describes its spend as "significant[]," GPFOF at ¶ 223, and argues that its innovations excuse its monopolization. ECF No. 826 (Defendant's Post-Trial Brief) at 1. Yet, as Plaintiffs note, Google's actual spending belies its public argument: it spends far more on defaults and restrictive contracts than research and development each year. PPTB at 1 (listing Google's actual R&D spending on Google Search). Without knowledge of the actual figures, the public can only speculate what the truth may be. Disclosure will solve this problem. Further, Google has not explained how disclosing R&D spend for Google Search could harm Google, especially when it already discloses company-wide R&D in public filings. *See* Exhibit A at IV.A (referencing Google's 2023 10-K, enclosed as Exhibit H).

### B.       Disputes With Apple

Apple seeks to seal information regarding the amount of Google's revenue share payments to Apple. Exhibit A at IV.B. Google seeks to seal only some of this information. *Id.* Apple argues broadly that Google's revenue share payments are confidential and/or reflect internal revenue figures and projections and public disclosure would cause injury to Apple. To date, Apple has not identified the "specific privacy interests" regarding the disclosure of Google's 2022 revenue share payment to Apple or the disclosure of previous and desegregated revenue share payments to Apple outside of "speculative and generalized" arguments, which are not enough to support the fifth *Hubbard* factor. *Guttenberg*, 26 F. Supp. 3d at 95.

Second, the second *Hubbard* factor supports disclosure. Google's 2021 revenue share payment figure is "essentially already a public number." 7572:18-7574:18. While not disclosed in case documents, The New York Times previously reported on Google's 2021 $18 billion revenue share payment to Apple, Ex. I at 1. Additionally, in *Epic Games*, Google's CEO, Sundar Pichai, admitted that he would not be surprised by a revenue share payment in the amount of $18 billion. Ex. J at Tr. 1358:15-22. Google's 2022 revenue share payment is ███████████ ███████████████████████████, and disclosure of the 2022 figure here would be ████████████ ███████████████████████████████████████████████████████████.

Third, the strength of the asserted privacy interest, the fourth *Hubbard* factor, is weakened because The New York Times previously disclosed Google's revenue payment figure from 2021. Thus, no further injury will result in disclosing Google's 2022 revenue share payment to Apple or disclosure of previous and desegregated revenue share payments, which are

just different ways to view Google's revenue share payments, to Apple.[4]

Finally, the need for public access under the first *Hubbard* factor is critical to understanding Plaintiffs' case. Apple seeks to seal information regarding Google's payments. Without knowledge of the actual size of the figures, the public can only speculate regarding degree of alignment and shared interest between Google and its partners. Disclosure will provide the public meaningful insight. Further, Apple has not explained how disclosing these payments could harm Apple, especially when The New York Times already disclosed Google's 2021 revenue share payment, Ex. I, and Google's CEO did not deny it when asked publicly, Ex. J at Tr. 1358:15-22.

## V.   Plaintiffs Oppose The Redaction Of Generic Or Public Information

Plaintiffs oppose the redaction of information listed in this category because this information is either publicly accessible or so generic that its disclosure would not reveal any information that would prejudice the party opposing disclosure. Therefore, the second, fourth, and fifth *Hubbard* factors do not favor sealing this information.

### A.   Disputes With Google

Google seeks to seal information that is either public or so generic that its disclosure could not harm Google. Specifically, Google seeks to redact the following categories: (1) its Pixel OEM market share; (2) user data that Google collects and how Google generally uses it; (3) generic launch experiment information; (4) general query composition information; (5) general revenue composition; (6) general price comparison information; (7) the relative value

---

[4] Plaintiffs' post-trial submissions contain various iterations of Google's revenue share payments to Apple, including, for example, calendar year payments, fiscal year payments, and payments for just searches done in Safari in the United States. *See* Exhibit A at IV.B. (¶ 935). The *Hubbard* analysis discussed here applies to each of these figures.

of mobile and desktop defaults; and (8) other public or publicly accessible information. The second *Hubbard* factor in particular supports disclosure of each of these categories of information.

First, with respect to category (1), the Court has made clear that market shares are not appropriate to redact in this case. Tr. 9947:1-25 (noting the Court's "questions" as to "why some of these terms were redacted," particularly "market shares"). Moreover, OEM market shares are widely reported.

Second, with respect to category (2), at trial it was established that Google "use[s] user feedback data, clicks, in evaluation of our search systems." Tr. 1799:1-2. Moreover, despite Google seeking to redact generic information about the use of user data in its systems, it was established at trial that Google's "public position" on the use of data is undermined by the fact that "everybody knows Google uses clicks in ranking." Tr. 1799:8-12. With respect to the specific information Google seeks to redact, Dr. Lehman testified publicly about the impact of click duration on ranking at trial. 1769:1-1770:3.

Third, with respect to categories (3) through (7), Google seeks to redact general information that, if disclosed, would not likely prejudice Google. This information is non-specific and directional information (i.e., noting figures are similar), aggregated information, or reflects large ranges.

Finally, with respect to category (8), Plaintiffs note that this information is either public or easily publicly accessible. For example, that ███████████████████████████ ████████████████████████████████████████████████. See Exhibit K at -007 (*Epic Games*, ECF No. 622-42).

B.      **Disputes With Apple**

Apple seeks to seal several types of generic or publicly available information: (1) general industry-related information; (2) Apple's ability to build its own GSE and/or ███████ ████ ; (3) high-level information and non-specific information regarding the number of Safari queries or default traffic rates; (4) Apple's estimate of Google market share; (5) limitations on Apple due to Google's contracts; (6) factors not considered by Apple when pricing its smartphones; (7) rejected requests or suggestions from Google; (8) possible scenarios absent Google's contracts; and (9) generic and high-level mentions of varying term-lengths.

Much of the information Apple seeks to redact is based not on internal revenue figures or projections but on an employee's general knowledge of the industry. Therefore, the fourth and fifth *Hubbard* factors favor disclosure. For example, one of Apple's senior vice presidents (who is also a former Google senior executive) explained, using a range that spanned billions of dollars, that building a search engine would require a significant investment. Ex. A at V.B.(2). Such information was not based on internal Apple metrics or projections, but on a general and broad understanding of the industry. Also, Apple has failed to explain how disclosing the estimated investment, an investment any GSE competitor would understand, would cause it injury.

Similarly, Apple seeks to redact information that publicly known or available and discussed by well-known news organizations. The second, fourth, and fifth *Hubbard* factors support disclosure here. For example, Apple seeks to redact general, non-specific information regarding its ability to build a GSE.[5] Ex. A at V.B.(2). Bloomberg has reported both on Apple's

---

[5] In addition, much of the information Apple seeks to seal is stale and refers to plans Apple considered nearly a decade ago and two years before it entered into the 2016 ISA with Google. Ex. A at V.B.(2).

ability to build a GSE and other specific efforts. Ex. L at 2 and 4. Further, Apple fails to describe

any specific privacy interest or injury that would befall because of disclosure. Therefore, the

*Hubbard* factors weigh in favor of disclosure of this information.

In addition, Apple seeks to seal generic and high-level information related to broad topic

areas such as: (1) the number of Safari queries and default traffic rates, Ex. A at V.B.(3)

(describing a range of queries and a general traffic rate); (2) Apple's estimate of Google's market

share, *id*. at V.B.(4) (while DOJ Plaintiffs do not oppose redaction of specific Apple figures, the

remaining information Apple seeks to seal is not Apple's confidential information);[6] and (3)

other non-specific or non-actualized considerations (or lack of considerations), *id*. at V.B.(6)

(stating that a certain factor is not the basis of smartphone pricing); *id*. at V.B. (7) (describing

rejected requests or suggestions from Google), *id*. at V.B.(8) (describing a scenario that never

materialized in the face of Google's contracts); *id*. at V.B.(9) (generic and high-level mentions of

contract terms). The fourth and fifth *Hubbard* factors apply here. Apple has not articulated a

specific privacy interest beyond the general assertion that the information it seeks to seal

contains confidential information or reflects internal business strategy or forward-looking

opportunities. Indeed, most of the information Apple seeks to seal is backward-looking. Thus, no

possible injury could harm Apple by its disclosure.

## VI.     Plaintiffs Oppose The Redaction Of Stale Information That Explains Google's Anticompetitive Conduct That Has Taken Place For Over A Decade

Plaintiffs oppose the redaction of stale information that provides non-specific information

and an accounting of Google's monopolization efforts for over a decade. Information in this

category is historic and would not create significant harm to Google today. Thus, under the

---

[6] Moreover, the Court previously determined that market share percentages should be disclosed particularly when a third party is not involved. Tr. 9947:1-9949:17.

fourth *Hubbard* factor, Google's and Apple's interest in sealing this information is minimal. Additionally, because the information is stale, Google and Apple cannot demonstrate any prejudice should this information be disclosed beyond mere speculation. Therefore, the fifth *Hubbard* factor does not favor sealing this information.

### A.     Disputes With Google

Google seeks to seal information leading up to its 2016 and 2020 negotiations with Apple. The earliest Google's agreement with Apple could expire is ███████████ ████████████, and thus information disclosed in this category would be ████████ years old when it could be of use. Google has not demonstrated how specifically it would be harmed by the disclosure of such dated information.

### B.     Disputes With Apple

Apple seeks to seal dated and non-specific information regarding its decision to stay with Google in 2016. The information Apple seeks to seal includes estimates from 2016 and reveals no internal strategy; thus, no prejudice exists, and the information should be disclosed.

For instance, Apple seeks to seal the dollar figure of ███████████ from Microsoft in 2016 (and which ultimately Microsoft did not provide). As an initial matter, Microsoft does not request redaction of this information. Moreover, Apple cannot rely on the fifth *Hubbard* factor where, as here, the ███████████ is now dated. Further, the fact that Apple decided to stay with Google in 2016 is no secret. For these reasons, disclosure of the information Apple seeks to seal cannot prejudice it today.

Finally, the need for public access under the first *Hubbard* factor is critical to understanding Plaintiff's case. Apple seeks to seal general information regarding its decision to stay with Google. Without knowledge of how large the figures it sought from Microsoft in 2016

15

were, the public is left in the dark and can only speculate regarding what barriers and the strength

of those barriers competitors face then and now when trying to enter the market. Disclosure will

shed light on this issue. Additionally, Apple has not explained how disclosing this information

from 2016 could harm Apple today.

## VII.   Conclusion

For these reasons, Plaintiffs oppose the proposed redactions identified in Exhibit A from

Google, Apple, AT&T, T-Mobile, and Verizon. Plaintiffs respectfully request that the Court

deny the requests to seal this information from the public.


Dated: April 10, 2024                              Respectfully submitted,

By:____*/s/ Karl Herrmann*_____
Kenneth M. Dintzer
Karl E. Herrmann (D.C. Bar #1022464)
Sara Trent
U.S. Department of Justice, Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer2@usdoj.gov

*Counsel for Plaintiff United States of America*


By:____*/s/ Margaret Sharp*____
James Lloyd, Chief, Antitrust Division
Margaret Sharp, Assistant Attorney General
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Margaret.Sharp@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:___/s/ Matthew Michaloski_____
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Matthew Michaloski, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Matthew.Michaloski@atg.in.gov

*Counsel for Plaintiff State of Indiana*


By:___/s/ Keaton Barnes_____
Keaton Barnes
Arkansas Bar No. 2022161
Assistant Attorney General
Office of Tim Griffin, Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Keaton.Barnes@ArkansasAG.gov

*Counsel for Plaintiff State of Arkansas*


By:_____/s/ Brian Wang___
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Brian Wang, Deputy Attorney General
Carolyn Jeffries, Deputy Attorney General

Office of the Attorney General,
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Brian.Wang@doj.ca.gov

*Counsel for Plaintiff State of California*

By: ___/s/ Lee Istrail___
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Nicholas D. Niemiec, Assistant Attorney General
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*


By: ___/s/ Daniel Walsh___
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Daniel Walsh, Senior Assistant Attorney General
Charles Thimmesch, Assistant Attorney General
Office of the Attorney General, State of Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*


By: ___/s/ Philip R. Heleringer___
Daniel Cameron, Attorney General
J. Christian Lewis, Commissioner of the Office of
Consumer Protection
Philip R. Heleringer, Executive Director of the
Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive Director
of the Office of Consumer Protection
Office of the Attorney General, Commonwealth
of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of Kentucky*

18

By:    */s/ Christopher J. Alderman*
Jeff Landry, Attorney General
Christopher J. Alderman, Assistant Attorney
General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
AldermanC@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*


By:    */s/ Scott Mertens*
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*


By:    */s/ Stephen M. Hoeplinger*
Stephen M. Hoeplinger
Assistant Attorney General
Missouri Attorney General's Office
815 Olive St., Suite 200
St. Louis, Missouri 63101
Stephen.Hoeplinger@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

By:____/s/ Hart Martin_____
Lynn Fitch, Attorney General
Hart Martin, Special Assistant Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Hart.Martin@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*


By:____/s/ Anna Schneider____
Anna Schneider
Bureau Chief
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*


By:____/s/ Mary Frances Jowers____
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy Attorney
General
Rebecca M. Hartner, Assistant Attorney General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

20

By: ___*/s/ Gwendolyn J. Lindsay Cooley*___
Joshua L. Kaul, Attorney General
Gwendolyn J. Lindsay Cooley, Assistant
Attorney General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
Gwendolyn.Cooley@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

FOR PLAINTIFF STATE OF COLORADO

Jonathan B. Sallet
Special Assistant Attorney General

*/s/ Jonathan B. Sallet*

Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann, DC Bar No. 1022365
(inactive) Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney
General 1300 Broadway, 7th
Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mails: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the
Americas Suite 2200
New York, NY 10036-6710
Telephone: (212) 335-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

21

FOR PLAINTIFF STATE OF NEBRASKA

Joseph M. Conrad Assistant Attorney General
Colin P. Snider
Assistant Attorney General Matthew K.
McKinley
Special Assistant Attorney General Nebraska
Department of Justice Office of the Attorney
General 2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3840
E-Mails: Joseph.Conrad@nebraska.gov
            Colin.Snider@nebraska.gov
            Matt.Mckinley@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas Suite 2200
New York, NY 10036-6710
Telephone: (212) 335-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

FOR PLAINTIFF STATE OF ARIZONA

Robert A. Bernheim, Unit Chief Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-315
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.bernheim@azag.gov

*Counsel for Plaintiff State of Arizona*

FOR PLAINTIFF STATE OF IOWA

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa 1305 E.
Walnut St., 2nd Floor
Des Moines, IA 50319 Telephone: (515) 725-
1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

FOR PLAINTIFF STATE OF NEW YORK

Elinor R. Hoffmann
Morgan J. Feder
Michael Schwartz
Office of the Attorney General of New
York
28 Liberty Street, 21st Floor
New York, NY 10005
Telephone: (212) 416-8513
E-Mails: Elinor.hoffmann@ag.ny.gov
          Morgan.feder@ag.ny.gov
          Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH CAROLINA

Kunal Janak Choksi
Joshua Daniel Abram
Jonathan R. Marx
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mails: kchoksi@ncdoj.gov
          jabram@ncdoj.gov
          jmarx@ncdoj.gov
          jsutton2@ncdoj.gov

*Counsel for Plaintiff State of North Carolina*

FOR PLAINTIFF STATE OF TENNESSEE

J. David McDowell
Chris Dunbar
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville.TN 37202
Telephone: (615) 741-8722
E-Mails: David.McDowell@ag.tn.gov
          Chris.Dunbar@ag.tn.gov
          austin.ostiguy@ag.tn.gov
          Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

FOR PLAINTIFF STATE OF UTAH

Scott R. Ryther
Tara Pincock
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 142320
Salt Lake City, Utah 84114
Telephone: (385) 881-3742
E-Mail: sryther@agutah.gov
          tpincock@agutah.gov

*Counsel for Plaintiff State of Utah*

FOR PLAINTIFF STATE OF ALASKA

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

FOR PLAINTIFF STATE OF CONNECTICUT

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF DELAWARE

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 577-8924
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

FOR PLAINTIFF DISTRICT OF COLUMBIA

Elizabeth Gentry Arthur
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

FOR PLAINTIFF TERRITORY OF GUAM

Fred Nishihira, Chief, Consumer Protection Division
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324

*Counsel for Plaintiff Territory Guam*

FOR PLAINTIFF STATE OF HAWAIʻI

Rodney I. Kimura
Department of the Attorney General, State of Hawaiʻi
Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawaiʻi*

FOR PLAINTIFF STATE OF IDAHO

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 334-4114
E-Mails: Brett.delange@ag.idaho.gov
          John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF KANSAS

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue., 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

FOR PLAINTIFF STATE OF
MARYLAND

Schonette J. Walker
Gary Honick
Office of the Attorney General of Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mails: swalker@oag.state.md.us
          ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

FOR PLAINTIFF STATE OF ILLINOIS

Elizabeth Maxeiner
Brian Yost
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mails: Elizabeth.maxeiner@ilag.gov
          Brian.yost@ilag.gov

*Counsel for Plaintiff State of Illinois*

FOR PLAINTIFF STATE OF MAINE

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

FOR PLAINTIFF COMMONWEALTH
MASSACHUSETTS

William T. Matlack
Michael B. MacKenzie
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Fl.
Boston, MA 02108
Telephone: (617) 727-2200
E-Mails: William.matlack@mass.gov
          Michael.Mackenzie@mass.gov

*Counsel for Plaintiff State of Massachusetts*

FOR PLAINTIFF STATE MINNESOTA

Zachary William Biesanz
Office of the Minnesota Attorney General
Consumer, Wage, and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

FOR PLAINTIFF STATE OF NEVADA

Michelle Christine Newman
Lucas J. Tucker
Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mails: mnewman@ag.nv.gov
          ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NEW
HAMPSHIRE

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

FOR PLAINTIFF STATE OF NEW JERSEY

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

FOR PLAINTIFF STATE OF NEW
MEXICO

Judith E. Paquin
Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mails: jpaquin@nmag.gov
          ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

FOR PLAINTIFF STATE NORTH DAKOTA

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of the Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North Dakota*

FOR PLAINTIFF STATE OHIO

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mails:
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

FOR THE PLAINTIFF STATE OKLAHOMA

Caleb J. Smith
Office of the Oklahoma Attorney General
313 NE 21st St
Oklahoma City, OK 73105
Telephone: (405) 522-1014
E-Mail: Caleb.Smith@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

FOR PLAINTIFF STATE OREGON

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff State of Oregon*

FOR PLAINTIFF COMMONWEALTH
PENNSYLVANIA

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mails: jbetsko@attorneygeneral.gov
         twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of Pennsylvania*

FOR PLAINTIFF TERRITORY PUERTO
RICO

Guarionex Diaz Martinez
Assistant Attorney General
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

FOR PLAINTIFF STATE RHODE ISLAND

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

27

FOR PLAINTIFF STATE SOUTH
DAKOTA

Yvette K. Lafrentz
Office of the Attorney General of South
Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

FOR PLAINTIFF COMMONWEALTH
VIRGINIA

Tyler T. Henry
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

FOR PLAINTIFF STATE WEST
VIRGINIA

Douglas Lee Davis
Office of the Attorney General, State of
West Virginia
1900 Kanawha Boulevard, East
Building 6, Suite 402
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

FOR PLAINTIFF STATE VERMONT

Christopher J. Curtis
Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: Ryan.kriger@vermont.gov

*Counsel for Plaintiff State of Vermont*

FOR PLAINTIFF STATE WASHINGTON

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

FOR PLAINTIFF STATE WYOMING

Benjamin Peterson
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-6397
E-Mail: Benjamin.peterson2@wyo.gov

*Counsel for Plaintiff State of Wyoming*