### *USA v. Google* (20-cv-3010)

### New York Times' Motion to Unseal Ruling Script

Before the court is a Motion for Access to Judicial Records filed by Intervenor The New York Times Company, which seeks more fulsome public release of 29 trial exhibits in this matter.  The Times argues that disclosure of these records is warranted under the six-factor test set forth by the D.C. Circuit in *United States v. Hubbard.*  It contends that the records carry a strong presumption of access and that many of them contain information that is dated or has been revealed elsewhere, diminishing any privacy interests or prejudice that would result from disclosure.

The court will begin by summarizing the process that it ordered with respect to the disclosure of trial exhibits; then articulate the legal principles that govern this motion; and conclude with its analysis of the disputed records.

## **Background**

The court has entered numerous orders regarding the confidentiality of trial evidence.

### *Pretrial*

On August 15, 2023, prior to trial, the court entered the parties' Stipulated Order on the Use of Confidential Information at Trial.  ECF No. 647.  That order, among other things, directed the parties to "endeavor to prepare their presentations and examinations to maximize keeping the courtroom open."  *Id.* at 2.  The court also directed the parties to attempt to resolve any confidentiality disputes within 48 hours or otherwise bring them before the court.

On August 28, 2023, the court entered a pretrial order clarifying that "[u]ltimately, the 'record' that will be the focus of the court's decision-making will be the trial testimony, exhibits, and deposition designations cited in the parties' proposed findings of fact and conclusions of law[.]"  ECF No. 666, at 2.

On September 4, 2023, and pursuant to the pretrial conference held on September 1, 2023, the court ordered the parties to meet and confer to resolve outstanding disputes as to the confidentiality of exhibits to be used in the Plaintiffs' case.  ECF No. 682, at 1–2.

The purpose of these orders was (1) to minimize the need for closed trial testimony to discuss confidential matters and (2) to promote efficient preparation and presentation of trial evidence, including identifying and promptly resolving disputes over confidentiality designations.

### *Trial*

Trial began on September 12, 2023.  On October 25, 2023, the court issued an order directing Google to disclose to Plaintiffs any exhibit in its case-in-chief that it believed contained confidential information 48 hours in advance of the exhibit's presentation.  ECF No. 748.  This, too, was also an effort to resolve any potential confidentiality disputes.

Four weeks into trial, on October 16, 2023, the Times sought intervention to increase public access to the trial exhibits and testimony.  *See* Mot. to Intervene & for Access to Judicial Records, ECF No. 731.  The court granted in part and denied in part the relief requested, and entered a Supplemental Order.  *See* ECF No. 750.  That order created a process for the press to request and receive trial records, including those

containing Google and third-party confidential information, which were subject to redactions.  *See id.*

*Post-Trial*

Following trial, the Times filed the instant motion to unseal additional trial exhibits that it had not received pursuant to the aforementioned process.  *See* ECF No. 800. The parties and non-parties whose information was implicated in these records filed responses stating their positions.  *See* ECF Nos. 808 (Plaintiffs), 812 (Apple), 813 (Google), 814 (Microsoft).

Around the same time, the parties set forth their positions as to a process for posting public, redacted versions of their voluminous post-trial filings.  *See* Hr'g Tr., ECF No. 832, at 30–33; Order, ECF No. 831 (setting forth schedule for addressing disputes in opening post-trial filings).

On March 11, 2024, the court convened the parties, nonparties, and the Times to discuss both the Times' motion and the redactions to post-trial filings.  *See generally* Hr'g Tr., ECF No. 846.

After hearing from all interested parties, the court instituted an expedited process to resolve confidentiality disputes related to both the post-trial filings and the exhibits requested by the Times, so that those issues could be decided before closing arguments.  *See* ECF No. 850.  That process required Google and third parties to meet and confer with the Times regarding the scope and justification for proposed redactions to the requested records.  *Id.* at 3.  The Times, parties, and relevant third parties then submitted updated position statements regarding the outstanding disputes to the court.  *See* ECF Nos. 880 (Times), 870 (States), 874 (Google), 878 (USA), 869 (Motorola), 871 (Samsung), 872 (Amazon), 875-2 (Apple), 877 (AT&T), 881 (Microsoft).

As to the parties' post-trial submissions, the court ordered the parties to file "first-cuts" of the redacted versions within a week of their sealed submissions.  Those redacted versions have all been posted to the public docket.  *See* ECF Nos. 833–842, 861–866.  The parties and third parties were ordered to meet and confer to narrow those redactions and submit their outstanding disputes to the court.  *See* (Sealed) ECF Nos. 874-1 & 878-1 (summarizing disputes).

Google and several third parties also submitted declarations attesting to the rationale for withholding the claimed confidential information.

The court has exhaustively reviewed all of these filings and has conducted a page-by-page and, in some cases, line-by-line review of every disputed exhibit sought by the Times, as well as the disputed redactions in each post-trial filing. Where necessary, the court has also carefully compared the redacted versions to the sealed, unredacted records and filings.

## Legal Standard

"[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted). Judicial records carry "a strong presumption in favor of public access[.]" *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (internal quotation marks omitted). A party seeking to seal such records bears the burden to demonstrate sealing is warranted. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 96 (D.D.C. 2014).

But "not all documents filed with courts are judicial records," and even if they are, "the right to inspect and copy judicial records is not absolute." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013); *Nixon*, 435 U.S. at 598. This Circuit takes a "functional approach to judicial records." *In re Application for Access to Certain Sealed Video Exhibits*, 546 F. Supp. 3d 1, 6 (D.D.C. 2021).

Whether a document is a "judicial record" depends on "the role the document plays in the adjudicatory process." *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997). "Something 'intended to influence' a court's pending decision—such as a party's brief—is most likely a judicial record, while a document would not qualify if it is one that the court 'made no decisions' about and did not 'otherwise rel[y].'" *In re New York Times*, 2021 WL 5769444 (JEB), *3 (D.D.C. 2021) (citations omitted).

The Times has taken the position that a trial exhibit, if offered and admitted in its entirety, qualifies as a "judicial record" subject to the presumption of public access. The D.C. Circuit has not resolved this question. But I will restate, as I have said before, that I disagree with the Times' position and, based on the Circuit's "functional approach," do not think that the entirety of a trial exhibit is a "judicial record" merely because such exhibit was presented in its entirety for admission into evidence.

That view is certainly consistent with how the court directed the parties to prepare for trial and confer with third parties as it relates to confidential information. The court has said throughout that the evidentiary record in this case would be the testimony plus those parts of an exhibit *actually presented* to the court during trial. That approach was meant to relieve the parties and third parties of the burden of either heavily redacting or excising pages of irrelevant material before submitted them into evidence. The court therefore directed the parties and third parties to focus their confidentiality reviews on those portions of exhibits that would be presented through witnesses during trial. It was those portions that were meant to influence the court's decision-making; not the remaining portions of an exhibit.

As a much-contested example, the entirety of the challenged contracts in this case were admitted into evidence. The Times argues that because these agreements are at the heart of Plaintiffs' allegation of anticompetitive conduct, the entirety of the agreements—regardless of relevance—should be made public. The court does not concur with that view. It is those contractual provisions that are relevant to allegations and defenses that constitute judicial records, and it is those provisions that receive the presumption in favor of public access.

In any event, the court's review has not rested merely on that understanding of Circuit precent and its view of what constitutes a "judicial record." Rather, the court has done a document-by-document analysis of each of the disputed agreements and emails under the D.C. Circuit's *Hubbard* test. *Hubbard* sets forth a six-factor test that courts must use to evaluate whether the presumption in favor of access is "outweighed by competing interests." *Leopold*, 964 F.3d at 1127 (citing 650 F.3d 293 (D.C. Cir. 1980)).

Those factors are: (1) the need for public access, (2) the extent of prior public access, (3) any objections to disclosure and identity of the objector, (4) relevant property or privacy interests, (5) prejudice to objectors from disclosure, and (6) the record's purpose in the overall proceedings. *Hubbard*, 650 F.3d at 317–33.

The first and sixth factors overlap here, and generally speaking, counsel in favor of disclosure. The need for public access "is at its apex when the government is a party to the litigation. Indeed, the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation." *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014). What's more, public access is all the more important the closer the proceedings advance to a decision, given the increased likelihood that "the documents at issue

will be specifically referred to in the trial judge's public decision." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (cleaned up).

That said, in undertaking the *Hubbard* balancing the court has not treated all parts of an agreement or email the same. Portions of records that were presented to the court at trial or are cited in the parties' post-trial filings have been given greater weight in favor of disclosure. On the other hand, portions that were not presented at trial and were either not cited (or of marginal relevance to the claims and defenses) have been given less weight because those portions either were not presented to assist the court in deciding this matter or are unlikely to be reflected in the court's final decision. There is little or need for public access to such portions because they have little, if any, adjudicatory purpose or contain information that will not shed light on the proceedings.

As to the second *Hubbard* factor, what is left in dispute are those portions of agreements or emails that have *not* already been made public. I will note that some portions of the agreements were disclosed in the *Epic v. Google* case, and those portions have been released already.

As to the third factor, the objectors are either Google or a third party with an interest in the record. When a disputed portion of a record was purely that of a third party— for example, an internal Apple or Microsoft email—that fact, consistent with Circuit precedent, weighed against public disclosure in the court's evaluation, except when the communication was dated. The same is true for records concerning communications between third parties. Greater weight was given to public access if the disputed portion of the record was purely a Google record or an agreement between Google and a third party.

Factors four and five, the privacy and property interests, as well as prejudice from disclosure, will be addressed on a document-by-document basis. In weighing these factors, the court has reviewed and considered each of the declarations submitted by Google and third parties to justify their confidentiality interests.

## Rulings

The Times' motion seeks access to three categories of trial exhibits.  First, the Times aims to unseal the entirety of multiple allegedly anticompetitive contracts between Google and a number of third parties, including Apple, Samsung, AT&T, and Motorola.  Second, it requests full access to certain records produced by third party Microsoft, including emails and contracts to which it is a party.  Third, the Times seeks several records produced by Apple, all of which are email threads involving Apple executives.  The court discusses each category of documents in turn.

### *Contracts*

1. **Joint Exhibit 24 (JX24)** is the Joint Cooperation Agreement between Apple and Google, dated 2014.

   - The percentage figure and the number of years in paragraph 4 of Section 1 shall remain redacted.  They constitute bespoke contract terms that, if disclosed, could disadvantage Google in negotiations with other partners.

   - The Default Bookmark provision on pages 1–2 must be disclosed.  The provision would further public understanding as to the search access points on Apple devices for which Google pays revenue share, which is core to the Plaintiff's case.  The court discerns no substantial competitive disadvantage to Google or Apple from disclosure of this provision, at least when weighed against the interest in public access.

   - Sections 2–4, with the exception of the first sentence of Section 2, shall remain redacted.  The need for public access is minimal because the provisions have nothing to do with the issues in dispute here, and those provisions have not been submitted by the parties for the purposes of influencing the court. The first sentence in Section 2 should be disclosed, because it has relevance to understanding the nature of the Apple-Google relationship and collaboration.

2. **Joint Exhibit 33 (JX33)** is the 2016 Apple-Google ISA. At the outset, the Times's characterization of what Judge Donato released in the *Epic* litigation left the court with the impression that all of the contract was released, but Judge Donato clearly approached the task of public disclosure with a scalpel, as much of the agreement remains nonpublic.

- Sections 1(b), 1(c), and 8 should be disclosed.  These are the terms that Google has required of Apple to, according to Plaintiffs, maintain its monopoly on search.  The parties' rationale that their future negotiations would be harmed by disclosure is weaker here in comparison to the strong public interest.  The "substantially similar" clause is not only central to the government's case, but also was discussed at trial.

- Sections 1(d) and 1(e): These provisions should remain redacted.  They are not relevant to the challenged conduct here and have not been put before the court.

- Section 2 should be unredacted. This "right of first refusal" provision is a core term that goes to the heart of the government's theory as to how the alleged conduct is inhibiting competition in the relevant markets.

- Sections 3 and 4: These provisions should remain redacted.  They contain bespoke terms, the content of which is clearly harmful to the parties' future negotiating positions, and which have not been previously disclosed in any form.   These sections also contain revenue share percentages and information that would essentially act as a "roadmap" to competitors, in the words of Google's declarant.

- Section 5 should be disclosed.  Although this detail may not have been disclosed at trial, the incremental information revealed through disclosure will not create sufficient harm to warrant sealing.  The court notes that Apple has not objected to the disclosure of termination dates for this agreement, diminishing the weight of the third factor.

- Sections 6 and 10–14 should be redacted.  These terms are not relevant.

- The first paragraph of Section 9 should be unredacted, because it provides information that may help the public understand Apple and Google's relationship and positions taken in this litigation.  The rest of Section 9 should be redacted as irrelevant.

- Section 7: The first paragraph of this section should remain redacted, as it contains information that concerns international markets not at issue in this case.  So too should roman numeral (ii) in the fifth paragraph, until "in those jurisdictions," for the same reason.  The rest of Section 7 should be unredacted.

3. **Joint Exhibit 71 (JX71)** is the 2020 Samsung-Google RSA.

- As a threshold matter, before releasing this exhibit, the parties shall identify the defined terms in this exhibit (JX71) and in Joint Exhibits 91 and 99 (JX91 & JX99) that are used in the portions of the agreements that the court is ordering be made public. The definitions should be unredacted.

- Section 2.2 shall remain redacted. The court can discern how this level of detail would create competitive disadvantage for Google if released. Higher-level information of the same kind has been released elsewhere in this record.

- Section 2.3 shall be unredacted in light of Section 6.1, which covers the same information and is unredacted.

- Sections 2.4 and 2.5 shall remain redacted, as they are not relevant to this litigation.

- Section 3.3 shall be unredacted. The default settings required under the RSA are the foundation of Plaintiff's case.

- Sections 6.2, 7.2, and 9.4 are not relevant, and the latter two deal with markets outside the United States.

- Section 9.3 shall remain redacted, because this provision could clearly harm Google's competitive standing if it were disclosed. If released, this provision could create a "roadmap" to Google's negotiating counterparts in future contract discussions.

- All the redactions on pages 16, 19, and 21–23 can be kept, as they concern irrelevant and pro forma contract terms.

- The same is true with page 17, which can remain fully redacted, except for Section 13.1, which concerns the revenue share paid under the contract, and should be disclosed. The high-level description of revenue share is unlikely to cause any harm to protected interests.

- Section 14.1 shall be unredacted. It contains termination dates, whose disclosure the court deems necessary for the public to understand Plaintiffs' position on the anticompetitive effects of the agreements. The court recognizes that there is some prejudice to Google from disclosure of the termination date, but not so much as to outweigh the public right of

access.  The remaining redactions on page 18 may remain as those terms are irrelevant.

- Section 14.5 should be unredacted, because it addresses the parties' obligations in the face of regulatory inquiry and action.  The court discerns no prejudice from its release.  The remaining redactions on the page may remain as those terms are irrelevant.

- The tailored redactions in the attachments may remain, as they contain revenue share percentages, the disclosure of which could harm Google in its RSA negotiations with other third parties.

- Attachments B-2, D, E, and F all pertain to markets outside of the United States and are not relevant.

4. **Joint Exhibit 91 (JX91)** is the 2021 Google-AT&T RSA.  The court reiterates that the defined terms used in those portions ordered disclosed also should disclosed.

- Sections 2.5, 3, 4.1, and 4.3–5.3, as well as pages 15, 17–19, and 21–23 shall remain redacted as irrelevant contract terms.

- Section 7.2 should be unredacted, as it contains the "alternative search service" provision, a key term that, according to Plaintiffs, results in anticompetitive effects.  The first sentence of Section 9.1(a) should be unredacted, as it simply acknowledges the payment of revenue share under the contract. The high-level description is unlikely to cause any harm to protected interests.

- In Section 10.5, the line "Neither Party . . . discovery processes with respect to this Agreement," should be unredacted as it relates to the parties' obligations in the event of regulatory inquiry and the court discerns no prejudice from its release.

- As to the attachments, the revenue shares redacted in Attachment A are current and their disclosure could prejudice Google and AT&T if disclosed with respect to negotiations of future revenue sharing agreements; all of

- Attachment B must be unredacted to allow the public to understand how the MADA works in practice.

- Attachment C may stay redacted as irrelevant.

- Attachment D, Section 5 should be unredacted to allow for practical understanding of the effects of the MADA/RSA, although the illustrative example may be withheld as it would provide a roadmap to the parties' competitors.

- The code names in Attachment E and elsewhere may be redacted, as their commercial significance is clear.

5. **Joint Exhibit 99 (JX99)**: This is the 2020 amendment to the Google-Motorola MADA.  Again, the defined terms that appear in the portions that the court orders unredacted should be unredacted as well.

- Sections 2.1, 2.3, 2.4, 2.7, and 2.8 should remain redacted, as they contain information about a third party and the parties' obligations under the contract that are not relevant to the issues in this litigation.  The same is true with respect to all of pages 4 and 5.

- Section 2.13 and the first paragraph of Section 4.9 should be unredacted, because terms relating to RSA-eligible devices is central to this litigation.  The subheadings need not be disclosed because they contain information not relevant to this litigation.

*Microsoft and Apple Records*

The court now turns to the Microsoft and Apple records.  Those records, with the exception of two contracts, are all emails.  The Times has suggested that the court has already conveyed its view as to how *Hubbard* applies to all emails.  It has not. The portion of the prior proceeding that the Times quoted was simply an illustration of how the *Hubbard* factors might apply to different types of records.  It was never meant as a ruling that any and all portions of emails must be made public.

The court thus has done a careful review of the information contained in each email, and applied the *Hubbard* factors to each record to make its rulings.

1. **DX434**: This internal email contains Microsoft's internal strategy and thinking concerning the Apple default.  Whatever competitive interests Microsoft may have in the email is substantially diminished by its age— 14 years—and is outweighed by the first and sixth *Hubbard* factors.  It should be disclosed.

11

2. **DX452**: This is a third-party document that contains proposed deal terms that Microsoft sought to pitch to Apple.  Whatever competitive interests Microsoft may have in the email is substantially diminished by its age—11 years—and is outweighed by the first and sixth *Hubbard* factors.   It should be disclosed.

3. **DX454**: This decade-old email concerns the potential Bing backfill of Siri's web results. Not only did this deal actually happen, and then terminate, but it was discussed in Microsoft CEO Satya Nadella's testimony.  The court cannot discern the competitive disadvantage to Microsoft of revealing the beginnings of a deal that was effectuated and has concluded.  It should be disclosed.

4. **DX455 (cover email)**: This 11-year-old email contains only two redactions. The second, on page .002 after "e.g., the" should remain.  It contains third party confidential information that is not of great relevance to this matter, and the competitive interests are easily discernable by the court.

5. **DX457**: This is a decade-plus old email that contains Microsoft's internal thinking about a potential deal with Apple. As with DX434, this is an internal strategy document of a third party.  Its age, however, diminishes Microsoft's competitive interests relative to the first and sixth *Hubbard* factors, as the subject matter concerns Microsoft's ability to compete for the Apple default. It should be disclosed.

6. **DX472**: This document should be disclosed in full. The incremental information revealed by lifting these redactions would not harm Microsoft's contemporary competitive interests.

7. **DX500 (cover email)**: This email contains nonpublic information about Microsoft's own finances and projections.  These specific numbers are highly sensitive and could result in competitive disadvantage to Microsoft if disclosed.   The two graphics in this record may be redacted.

8. **DX524:** Similar to DX500, this record contains nonpublic third-party information regarding investments and staffing.  The graphic and numbers of estimated Microsoft teams (specifically "I'm getting XXX per the table below," "e.g. XXX Bing vs. 6800 G" on .001 and "Bing Engg team (~XXXX)" on .002) may be redacted. The estimate of 6800 Google personnel should be unredacted, as it is a projection not based on any sensitive data. And the magnitude estimate in the third paragraph, "5x," should be disclosed because it helps understand the relative investment of the parties, which sheds

light on Google's defense, and the competitive disadvantage to Microsoft from disclosure is not evident.

9. **DX538:** This appears to be a detailed list of Microsoft's engineering initiatives and projects, including staffing and specific programmatic plans and outcomes. This is third-party product information that, if disclosed, could be leveraged by a competitor to Microsoft's detriment. Pages 1 and 2 of this email are high-level commentary that may be released. The rest should remain redacted.

10. **DX679**: The numbers and figures redacted in this email include proposed and estimated revenue shares that might result from a contracting relationship between Mozilla and Microsoft. Although they are sensitive, they are projections that go to the heart of Microsoft's ability to compete, which is central to this case. This record should be disclosed.

11. **DX680**: This email is from Microsoft's CTO, Kevin Scott, and contains his thoughts about AI and traditional search. There are sensitive statements in the email concerning Microsoft's business strategies that weigh against disclosure. That said, there are statements in the email that the court finds, on balance, should be disclosed because they shed light on Google's defense concerning relative investments by Google and Microsoft in search. With these interests in mind, Paragraphs 2 ("The thing that's interesting ….") and 3 ("Turns out, …") in Scott's email on page .001 should be unredacted. Also, in the first full paragraph on .002, the sentence starting with "We have very smart ML people . . ." until end of the paragraph should also be unredacted.

12. **DX688**: This email is basically a performance review for one employee. The privacy interests are very strong, and the relevance to this case is minimal, if any. It should not be disclosed.

13. **DX963**: This is an agreement between Apple and Microsoft that is fully withheld. Although dated (2010), the fact that it is between two non-parties weighs in favor of non-disclosure and releasing the entirety of the agreement is not necessary for the public's understanding. That said, Section 2.5 of the agreement should be disclosed, because it was discussed in public testimony at trial.

14. **PSX761**: This is a settlement agreement between Google and Microsoft. Only one section of this agreement (Section 6.2) is cited in the parties' post-trial

filings, with respect to the Plaintiff States' SA360 claims. The Times asserts that the parties' proprietary interests are diminished because there has been press coverage of the agreement, but its specific terms have not been publicly disclosed. The court will require the parties to release the text of Section 6.2 only.

15. **UPX246 (cover email)**: This is an eight-year-old email that should be disclosed in full. This email contains two bullet points that summarize information presented by Microsoft to Apple at a very high level. Any competitive disadvantage from its disclosure is minimal.

16. **UPX301:** This email refers to a potential Microsoft-Samsung collaboration. Though it is between two third parties, the mere contemplation of collaboration, without more, is not sufficient to present a risk of competitive harm if disclosed. The paragraph beginning "Discussion started . . .," however, should be redacted because it could lead to competitive disadvantage given its nature. The rest of the record should be disclosed.

17. **UPX736:** This is a six-year-old Microsoft-internal email summarizing conversations with Apple. Mr. Nadella testified about this email in his trial testimony, and this goes to the heart of the case: whether Microsoft is able to compete with Google for the Apple default. Everything but the last paragraph on page 2415 ("We also …") should be disclosed, because that paragraph references nonpublic strategy between two nonparties that also implicates product interests.

18. **UPX797**: This document should remain redacted. It contains descriptions of potential collaborations between two nonparties that could create competitive disadvantage if disclosed.

19. **UPX625:** The bullets under the heading "Disruptive search" up to and including "revenue opportunity" may be unredacted, as it provides the public with an understanding of Apple's thinking about entering search and competing with Google. And given the email's age, the competitive harm to Apple is diminished. The rest of the record pertains to Apple's product and privacy interests and should not be disclosed.

20. **UPX626**: The last line, "What else would be helpful to discuss how we disrupt Google Search?" should be unredacted. The rest should be redacted for the same reasons as UPX625.

21.**UPX618, UPX1123, UPX494, UPX659:** These records are narrowly redacted, and the redactions are justified. They seal confidential business plans and strategies of third parties' product interests and would reveal Apple's internal strategy if disclosed. None of this information is public and it contains code names and other similarly sensitive commercial information.

## Conclusion

The parties are hereby directed to disclose the specific portions of the requested exhibits (including those portions of records that must be re-reviewed) no later than **April 30, 2024**.

## Additional Matters

The confidentiality issues relating to the post-trial filings are addressed in paper orders that will be filed this afternoon.