No. 1:20-cv-03010

# United States District Court
## for the
## District of Columbia

Case 1:20-cv-03010

Karen Leslie
Executive Director
The Pet Fund
2747 14th Street
Sacramento, CA 95818
info@thepetfund.com
(916) 503-0550
April 21, 2024

*LET THIS BE FILED*
Signature: *Amit Mehta*
Date: 5/13/24

The Honorable Judge Amit P. Mehta
The U.S. District Court for the District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

U.S. Department of Justice

950 Pennsylvania Avenue NW

Washington, DC 20530

STATE OF ARKANSAS

323 Center Street, Suite 200

**RECEIVED**
APR 29 2024
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Little Rock, AR 72201

STATE OF FLORIDA

PL-01, The Capitol

Tallahassee, FL 32399

STATE OF GEORGIA

40 Capitol Square SW

Atlanta, GA 30334

STATE OF INDIANA

302 West Washington Street

IGCS – 5th Floor

Indianapolis, IN 46204

COMMONWEALTH OF KENTUCKY

1024 Capital Center Drive, Suite 200

Frankfort, KY 40601

STATE OF LOUISIANA

1885 North Third Street

Baton Rouge, LA 70802

STATE OF MISSISSIPPI

P.O. Box 220

Jackson, MS 39205

STATE OF MISSOURI

P.O. Box 899

Jefferson City, MO 65102

STATE OF MONTANA

P.O. Box 200151

Helena, MT 59620

STATE OF SOUTH CAROLINA

1000 Assembly Street

Rembert C. Dennis Building

P.O. Box 11549

Columbia, SC 29211-1549

and

STATE OF TEXAS

P.O. Box 12548

Austin, TX 78711

Plaintiffs,

v.

GOOGLE LLC

1600 Amphitheatre Parkway

Mountain View, CA 94043

Defendant

Dear Honorable Judge Mehta,

I am writing to submit this amicus curiae brief in support of the Plaintiffs in the above-mentioned case. I am the Executive Director of The Pet Fund, a national nonprofit organization which will be directly impacted by the decisions made in this case.

## I. Introduction

The Pet Fund is a national nonprofit which helps to keep thousands of companion animals out of shelters by funding veterinary care for pet owners who are unable to afford it. Currently a website link on Google which is placed near our organization's website is posting libelous content. The website refuses to take the content down, and the positive reviews on the website are not selected by Google's algorithm. The result is that our Google link is in very close proximity to a website's review claiming that our organization is fraudulent.

Google currently functions as a default search engine, effectively monopolizing search results. All nonprofit organizations as well as for-profit organizations are subject to Google's algorithmic rankings and associations, and both non-profit and for-profit entities have no choice but to appear on Google to be searchable. Both entities are at the mercy of Google's search algorithms, potentially resulting in false and libelous content which is closely associated with those entities.

Allowing Google to exist as a default search engine essentially enables the largest search engine on the internet to exist as "the company store" at the expense of all organizations listed on Google. Google asserts that they are at once not responsible for their own algorithmic decisions while maintaining that no other

search engine is comparable. We would argue that if Google understands itself to be a default search engine that they are very much responsible for damage done to entities listed on its search results – not in monitoring every website – but in designing algorithms which are intended to highlight slanderous content.

## II. Interest of Amicus Curiae

The Pet Fund, like all nonprofit organizations, depends on the appearance on Google's search results to be able to function as a charity. Both donors and pet owners seeking help from our nonprofit mainly find our website through Google. Our nonprofit has been directly and very negatively affected by Google's monopoly on search results as Google refuses to acknowledge the harm done by its algorithmic selection.

Our nonprofit organization has repeatedly asked that what Google terms a disavow request be implemented that would separate libelous content from the search results involving our nonprofit's Google listing. We have thus far been dismissed by both automated and human Google Team members.

An explanation of the libelous content currently supported by Google's algorithms follows.

The Pet Fund is a national nonprofit which helps to keep thousands of companion animals out of shelters by funding veterinary care for pet owners needing access to medical care for their companion animals. Currently a website on Google which is linked near our organization's website listing is posting libelous content.

The website in question is Greatnonprofits.org (which also operates as Greatnonprofits.com). A cat hoarder left a review in 2015 on the site which called our nonprofit fraudulent. We have repeatedly asked Google to honor what they call a disavow request, which would separate the libelous links from our

organization's link on Google. So far, Google has refused to honor our disavow request.

The Court's decision in this case will directly impact our nonprofit organization as well as all nonprofit and for-profit entities by ending Google's ability to force listed entities to both appear on Google and be subject to slanderous and libelous content. Google's current position holds a monopoly on search engine results, which essentially forces all entities listed on its search results to exist on Google with no recourse to be able to affect libelous results algorithmically placed near their Google listing.

## III. Legal Argument

We want to be clear that we are not asking Google to remove content from a website. Rather, we have asked that the links and domains that currently promote libelous content be disavowed and removed from the search results for our nonprofit links.

David Graff, Google's VP of Trust and Safety, publicly stated in an interview with The Verge in 2021 that Google intended to redesign its algorithms to reduce – not to empower – slanderous content. That interview is linked here:

https://www.theverge.com/2021/6/10/22527481/google-search-results-slander-industry-individuals-nyt-report

Presumably that algorithmic change was intended to both improve search results for the global community as well as to avoid the threat of burdensome regulatory efforts regarding Google's liability for libel and slander in general. Mr. Graff's statement also supports the fact that Google is perfectly well aware that their algorithm currently causes significant damage, enough so that they are corporately willing to change their algorithm for that reason.

The CEO of Microsoft, Satya Nadella, has argued that Google essentially owns the internet: "Everybody talks about the open

web, but there is really the Google web:"

https://www.cnbc.com/2023/10/02/microsoft-ceo-testifies-about-competing-with-google-in-antitrust-trial.html

In the original complaint filed against Google, Attorney General Merrick Garland argued, "Today's complaint alleges that Google has used anticompetitive, exclusionary, and unlawful conduct to eliminate or severely diminish any threat to its dominance over digital advertising technologies:"

https://www.justice.gov/opa/pr/justice-department-sues-google-monopolizing-digital-advertising-technologies.

Google attempts to argue two things simultaneously: one, that they have a superior product with which no other search engine compares, and two, that they are not responsible for the fact that entities have no choice but to both be listed on Google search results and have no recourse to defend against Google's slander-enabling search algorithms. Google therefore asserts that it has market dominance while at the same time denying responsibility for the damage done by their algorithm to entities listed on search results. Google has publicly stated that they aim to eliminate slanderous content in its own algorithms, demonstrating that Google is aware that it currently functions as a damaging entity to many.

The second section of Section 230(c)(2) of the Communications Decency Act states: "No provider or user of an interactive computer service shall be held liable on account of…any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected…"

And yet Google's representative Mr. Graff has publicly admitted that their own algorithms intentionally favor libelous and slanderous results. If this were mere random occurrence, there

would be no need to publicly vow to change the algorithm as there would be no problem to solve by doing so. Once Google has admitted to designing search algorithms to favor negative results, they are no longer acting in good faith, but are in fact a developer of slanderous and libelous search results. They should therefore not be protected by Section 230.

Additionally, as Google is – by their own admission – the default search engine on which all entities must appear if they wish to be found by anyone, their algorithmic placement of entities has taken the place of company scrip. We are all compelled to appear on Google, but Google as the company store provides only such benefit as will profit the company, comparable to scrip which can only be spent at the company store. The company store profits by boosting libelous and slanderous content which forces all entities to engage further with Google and which adds to the overall search content. The only way Google has provided to refute libelous or slanderous content is to build positive links to search results to "push down" negative listings. This in turn grows the size of Google's search results into a giant default search engine that cannot be matched. Google has therefore transformed itself into the company store whose scrip can only benefit itself, not those who engage with it. This is the definition of a monopolistic institution.

Our nonprofit – like any other nonprofit or for-profit business – has no choice but to appear on Google, as it is the main source from which the public is able to find our organization. The existence of this one-sided relationship, where we are compelled to appear on the search engine and at the same time forced to accept damaging and libelous content linked near our organization's name is further harmed by the fact that our organization has no recourse to be able to enable disavowal of the damaging content.

We are in no way arguing that Google should be responsible for adjudicating the content of every website. However, Google is very much responsible for algorithms that link libelous and slanderous content with legitimate organizations' links without providing any avenue for libeled organizations to be able to defend

themselves and to continue to exist (not just on Google, but to be able to exist at all). The absence of any effective pathway by which slandered organizations can work with Google to be able to disavow libelous and damaging links undermines Google's argument that Google's dominance as a platform is both helpful and necessary for consumers.

This amounts to a kind of extortion, whereby entities are compelled to exist on Google but are unable to defend against damage to their organization through intentionally designed negative search engine algorithms.

## IV. Policy Implications

The decision of this Court will determine whether or not Google can continue to exist as a default search engine which dominates the market, and which determines the fate of entities listed on its search engine. Currently, Google's algorithm, which they themselves acknowledge skews towards libelous content, forces all entities listed on the search engine to be potentially permanently damaged through negative search algorithms. If this court forces Google to acknowledge the damage which is currently being done to both nonprofit and for-profit entities, Google will no longer be able to exist as the only meaningful search engine and as a designer of an algorithm which is designed to highlight slander and libel in exchange for the online survival of those participating by necessity in its listings.

If this Court prohibits Google from functioning as the "company store," both nonprofit and for-profit entities will no longer be subject to damage for appearing on a search engine with which they have no choice but to engage. This decision is therefore critical to enabling all entities participating in Google's search results to be free from intentionally damaging algorithmic association.

## V. Conclusion

Our nonprofit organization has worked for over 20 years to provide help to pet owners in need, and the damage done to our nonprofit through Google's algorithm is not at all unique. This Court has the opportunity to stop Google from continuing to force entities to participate in being listed on a search engine which has intentionally designed negative search results to damage those entities.

The Plaintiffs in this case are right to argue that Google's long dominance as a search engine has resulted in a forced relationship with any entity that needs to be found by the public on the internet. Appearance on any other search engine is not sufficient to be able to continue to exist as a searchable entity, and yet all are compelled to exist on Google and be subject to libelous damage by association with no recourse for defense.

I respectfully urge this Honorable Court to consider the arguments presented herein and to recognize the significance of The Pet Fund as amicus curiae in this matter.

Thank you for considering this brief. Please feel free to contact me if the court requires any additional information.

Sincerely,

*[signature]*

Karen Leslie
Executive Director
The Pet Fund
(916) 503-0550
info@thepetfund.com