```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
     United States of America,    )
 3   et al.,                      )
                                  )
 4                  Plaintiffs,   )
                                  ) CV No. 20-3010
 5              vs. )  Washington, D.C.
                                  ) September 29, 2023
 6   GOOGLE LLC,                  ) 9:00 a.m.
                                  )
 7                  Defendant.    )
     _____)
 8

 9                 TRANSCRIPT OF BENCH TRIAL
             BEFORE THE HONORABLE AMIT P. MEHTA
10                UNITED STATES DISTRICT JUDGE

11   APPEARANCES:
     For DOJ Plaintiffs:        Kenneth M. Dintzer
12                              U.S. DEPARTMENT OF JUSTICE
                                1100 L Street, NW
13                              Washington, D.C.
                                (202) 307-0340
14                              Email:  Kenneth.dintzer2@usdoj.gov

15                              Meagan Bellshaw
                                U.S. DEPARTMENT OF JUSTICE
16                              450 Fifth Street, NW
                                Suite 4000
17                              Washington, DC  20001
                                (202) 598-2307
18                              Email:  Meagan.bellshaw@usdoj.gov

19                              David E. Dahlquist
                                U.S. Department of Justice
20                              209 South LaSalle Street
                                Suite 600
21                              Chicago, IL  60604
                                (202) 805-8563
22                              Email:  David.dahlquist@usdoj.gov

23

24

25
```

```
 1      For Plaintiff States:      Jonathan Bruce Sallet
                                   COLORADO DEPARTMENT OF LAW
 2                                 Consumer Protection Section,
                                   Antitrust Unit
 3                                 Ralph L. Carr
                                   Colorado Judicial Center
 4                                 1300 Broadway
                                   Seventh Floor
 5                                 Denver, CO 80203
                                   (720) 508-6000
 6                                 Email:  Jon.sallet@coag.gov

 7
        For Plaintiff States:      William J. Cavanaugh, Jr.
 8                                 Patterson Belknap Webb & Tyler LLP
                                   1133 Avenue of the Americas
 9                                 Suite 2200
                                   New York, NY 10036
10                                 (212) 335-2793
                                   Email:  Wfcavanaugh@pbwt.com
11

12      For Defendant Google:      John E. Schmidtlein
                                   Benjamin M. Greenblum
13                                 WILLIAMS & CONNOLLY LLP
                                   725 12th St., NW
14                                 Washington, D.C. 20005
                                   (202) 434-5000
15                                 Email:  Jschmidtlein@wc.com
                                   Email:  Bgreenblum@wc.com
16

17      Court Reporter:        Janice E. Dickman, RMR, CRR, CRC
                               Official Court Reporter
18                             United States Courthouse, Room 6523
                               333 Constitution Avenue, NW
19                             Washington, DC  20001
                               202-354-3267
20                                     *   *   *

21

22

23

24

25
```

```
 1    *  *  *  *  *  *  *P R O C E E D I N G S*  *  *  *  *  *

 2            THE COURTROOM DEPUTY:  Good morning, Your Honor.

 3    This is civil action 20-3010, *United States of America, et al.*

 4    *versus Google LLC*.  Kenneth Dintzer for the DoJ plaintiffs,

 5    Jonathan Sallet and William Cavanaugh for plaintiff states.

 6    John Schmidtlein on behalf of Google.

 7            THE COURT:  Good morning, everyone.  So, ready to

 8    start with Mr. Tinter.  But before we do, could I just ask

 9    Mr. Larrabee to come up for a moment?  If you could come to the

10    bench, Mr. Larrabee.

11            (Off-the-record discussion at the bench.)

12            THE COURT:  All right.  We are ready to get started

13    with Mr. Tinter.  Is he outside?

14            THE WITNESS:  Good morning.

15            THE COURT:  Mr. Tinter, good morning.  Welcome back.

16            THE WITNESS:  How are you?

17            THE COURT:  I'm good.  Hope you had a nice evening.

18            MR. GREENBLUM:  Good morning, Mr. Tinter.

19            May I proceed, Your Honor?

20            THE COURT:  You may.

21                         CROSS-EXAMINATION

22    BY MR. GREENBLUM:

23    Q.  Mr. Tinter, yesterday morning you were asked some questions

24    by Mr. Sallet --

25    A.  Make sure you're hitting the microphone.
```

1    Q.  Sure.  You know, I have a daughter who also wears a hearing

2    aid, but she prefers really not to hear what I'm saying.  So

3    have a little bit of a hard time adjusting.  The point is well

4    taken.

5         You were asked some questions about SA360 by Mr. Sallet.

6    Do you recall those questions?

7    A.  I don't remember the specifics, but I remember the general

8    questions.

9    Q.  You recall the discussion about SA360.

10        I think you indicated that there were others at

11   Microsoft that were sort of involved in the day-to-day

12   negotiations around that process, is that correct?

13   A.  Correct.

14   Q.  And you mentioned, I think, in response to some questions

15   from Mr. Sallet, that there were others who were involved, in

16   particular, with discussions with Joan Braddi at Google about

17   this topic, correct?

18   A.  Correct.

19   Q.  And one of the individuals you identified on the Microsoft

20   side of those discussions was Chris Weinstein?

21   A.  That's correct.

22   Q.  And Chris Weinstein is in business development at

23   Microsoft?

24   A.  Yeah, he works on my team.

25   Q.  I would like you to ask to open up in the binder -- that

1    one, that's the right one -- to DX2013.

2    A.  I'm sorry.  You said 2013?

3    Q.  Yes, sir.

4         And while you're familiarizing yourself with that --

5         MR. GREENBLUM:  Let me just ask if there's an

6    objection to the admission of DX2013.

7         MR. SALLET:  No objection.

8    BY MR. GREENBLUM:

9    Q.  So, Mr. Tinter, I want to direct your attention to -- if

10   you look at the bottom of the first page -- we're not going to

11   put this on the screen -- if you look at the bottom of the

12   first page, there's an email from Ms. Braddi to Mr. Weinstein

13   dated July 23rd, 2020 at 3:24 p.m.  Do you see that?

14   A.  Yes, I do.

15   Q.  And Miss Braddi writes to Mr. Weinstein, "Chris, what we've

16   discussed over the past several months is building support for

17   the standalone Microsoft bidder in SA360."  Do you see that?

18   A.  Yes.

19   Q.  I want you to -- if you could turn the page with me.  A few

20   paragraphs down, the paragraph that begins, "Your note from

21   last evening."

22   A.  Yes.

23   Q.  And Mr. Braddi wrote to Mr. Weinstein, "Your note from last

24   evening suggests something very different.  You share a

25   different article describing an integration of the Google ads

1    bidder into SA360 bid strategies, not support from your bidder

2    that is, 'separate from,' in lieu of SA360 bid strategies.

3    That's a different and much more complex new feature than what

4    Microsoft requested during this process."

5          Do you see that Ms. Braddi described that to

6    Mr. Weinstein?

7    A.  Yes.

8    Q.  Now, if you come back to the first page with me, there's a

9    few emails from Mr. Weinstein.  And I want to direct you to the

10   one that day at 4:08 p.m. to you and Mr. Dahlin.  Do you see

11   that?

12   A.  Yes.

13   Q.  And Mr. Weinstein pluses you in -- that little @ symbol, he

14   adds you to the thread -- and where he does so, he says, "Jon,

15   I expect Google will complain about this as a late ask.  That

16   wouldn't be wholly unfair, but I see this as a refinement of

17   our general ask on auto bidding versus something totally new,

18   notwithstanding Joan's description below.  So maybe a late

19   refinement, but not a new ask."

20         Do you see Mr. Weinstein reported that to you?

21   A.  Yes.

22   Q.  And then, finally, further up in the thread, Mr. Weinstein

23   wrote you again, several hours later -- rather, the next day,

24   on July 24th, and Mr. Weinstein said, "My recommendation and

25   plan is to take a hard stance on this with Joan, recognizing

1    that doing so might delay things more."

2        Do you see that?

3    A.  Yes.

4    Q.  That's what was reported to you by Mr. Weinstein in

5    connection with your role in the escalation process around

6    SA360?

7    A.  Correct.

8    Q.  Thank you.  You can put that document aside.

9        You were asked some questions yesterday, sir, about the

10   Duo device.  Do you recall those questions?

11   A.  The general topic, yes.

12   Q.  You described the device as a compromise between Google and

13   Microsoft, correct?

14   A.  Correct.

15   Q.  Edge was the default browser on the device?

16   A.  Correct.

17   Q.  Bing was the default search engine in the default browser?

18   A.  Correct.

19   Q.  And you mentioned that you wanted to have the Google Play

20   Store on the device, correct?

21   A.  Correct.

22   Q.  And I take it that for its marketing of that Android

23   product in the United States, Microsoft paid Google nothing to

24   license the Play Store, correct?

25   A.  There was no direct economic payment, though there was

1    certainly gives and takes in the context of the trade and the

2    relationship that we did things for Google that we believe they

3    provided economic benefit that they had asked us for.

4    Q.  There was no license fee for the Play Store in the

5    United States, correct?

6    A.  Again, there was no direct license fee, but there was

7    certainly economic value provided to Google through the

8    relationship.

9         MR. GREENBLUM:  Your Honor, I gather there's some --

10   my colleagues want me to confirm DX2013 is in evidence, the

11   document we used before?

12        THE COURT:  It will be admitted.

13        MR. GREENBLUM:  Thank you, Your Honor.

14   BY MR. GREENBLUM:

15   Q.  Sorry, Mr. Tinter.  Coming back to the Duo, yesterday in

16   your direct you described a slogan for the Duo device as,

17   quote, The Android you know, the Microsoft you love.  Do you

18   recall saying that?

19   A.  Yeah.  Again, I don't remember if that was a -- the exact

20   words are correct or if that was an external slogan or just

21   internal.  I focused more on concept than specific words.

22   Q.  In terms of external slogans or external marketing, do you

23   recall some executives at Microsoft described the device as,

24   quote, The best of Microsoft with the best of Google?

25   A.  I don't recall that specifically.

```
 1            MR. GREENBLUM:  May I approach the witness, Your

 2    Honor?

 3            THE COURT:  Sure.

 4    A.  Thank you for leaving the magnifying glass.

 5    BY MR. GREENBLUM:

 6    Q.  Did we not leave it up there?

 7    A.  Yeah, you did.  I was thanking you for it.

 8    Q.  Oh, we did.  Okay.

 9            MR. GREENBLUM:  I'm not moving the admission of this

10    document at this time, Your Honor.  This is just to refresh the

11    witness's recollection.

12    BY MR. GREENBLUM:

13    Q.  Mr. Tinter, this is an article from the publication

14    Technica, dated October 2nd, 2019.  Do you see that?

15    A.  Yes.

16    Q.  And if you look in about the fourth paragraph below the

17    graphic, do you see the paragraph that begins, "Microsoft's

18    chief product officer"?

19    A.  Correct.  Yes.

20    Q.  And so, what paragraph was publicly reported as is,

21    "Microsoft's chief product officer for the devices group, Panos

22    Panay, said the device was designed to bring together the 'best

23    of Microsoft' with 'the best of Google.'  This means the Duo is

24    a fully Google-approved Android device with a full suite of

25    Google apps, plus preloaded Microsoft apps."
```

1           Do you zoo that?

2    A.  Yes.

3    Q.  The best of Google obviously includes Google Search?

4    A.  I don't know.  You would have to ask Panos what he intended

5    what he said that.

6    Q.  Mr. Panay was the person responsible for building this

7    device on the devices team at Microsoft?

8    A.  He led the team that built it, yes.

9    Q.  And at this time he was the chief product officer at

10   Microsoft?

11   A.  Correct.

12   Q.  You can put that document aside, sir.

13           Microsoft also decided to launch the Duo in Europe,

14   correct?

15   A.  Correct.

16   Q.  Can I ask you to turn to DX535 in your binder.

17   A.  So you said 535?

18   Q.  Yes, sir.

19   A.  This is the email from Niraj Patel?

20   Q.  Yes.  I don't believe that you looked at this on direct

21   yesterday.

22   A.  I don't think I've seen this yet.

23   Q.  I'm just going to ask you a few questions about it.

24   A.  Let me just familiarize myself with it, please.

25           (Pause.)

3418

1                Yep.  Okay.

2    Q.  So you received this from your colleague Niraj Patel?

3    A.  Yeah.  He worked for me at that time.

4    Q.  Mr. Patel asked you to write your counterpart at Google to

5    negotiate a license to sell the Duo in Europe?

6    A.  Correct.

7    Q.  In Europe Microsoft had the option to license the Google

8    Play Store without putting Google search or Chrome on the

9    device, correct?

10   A.  Yeah, if I remember correctly, the way it was licensed in

11   Europe was subtly different from the United States, which is

12   there was a license that included a license fee, if I remember

13   correctly, to license it, and then you could separately --

14   there was a separate agreement where you could agree to ship

15   Chrome, ship some other Google services and receive an offset

16   to the license that netted it out to free.

17   Q.  Let me unpack that.  There was a license fee in Europe for

18   the Play Store, correct?

19   A.  Yes.

20   Q.  You could license the Play Store without taking Google

21   Search and/or Chrome on the device, correct?

22   A.  That's correct.

23   Q.  You could take Search and Chrome separately for free,

24   correct?

25   A.  Yeah, I believe so.

1    Q.  But you would get offsets to decrease the cost to Microsoft

2    of the license to the Play Store for promotional placement of

3    Google Search and Chrome on the device in Europe?

4    A.  I don't remember -- promotional placement as a relatively

5    specific concept to me and I don't remember the specific, sort

6    of, requirements.  But in general, the concept was you paid a

7    license fee.  If you took some combination of Chrome and Search

8    with some conditions that I don't specifically remember, you

9    could earn economic credits that offset the license fee.

10   Q.  The license fee on the Play Store?

11   A.  Correct.

12   Q.  Okay.  Thank you.

13   A.  Well, the license fee for Play Store, Google Play Services,

14   Google Mobile Services.  Essentially, effectively the suite of

15   services, not just not the app store itself, if I remember

16   correctly.

17   Q.  So Microsoft decided to ship the duo in the European Union

18   with the same experience as in the United States, meaning

19   Google Search and Chrome would be included on the device?

20   A.  That's what this says, yes.

21   Q.  So you took those offsets to the license fee --

22   A.  Yes, that's correct.

23   Q.  -- for including the Search and Chrome?

24   A.  Correct.

25              MR. GREENBLUM:  I have no further questions and pass

 1    the witness.  Thank you, Your Honor.

 2             THE COURT:  All right.  Thank you, counsel.

 3             MS. BELLSHAW:  Just a few points, Your Honor.

 4                      REDIRECT EXAMINATION

 5    BY MS. BELLSHAW:

 6    Q.  Good morning, Mr. Tinter.

 7             Megan Bellshaw for the United States.

 8    A.  Microphone adjust.

 9    Q.  Is that good?  Mr. Tinter, you were shown DX452 in your big

10    binder yesterday.  Could I direct your attention back there?

11    A.  You said 452?

12    Q.  452.

13    A.  That's the --

14    Q.  It's the --

15    A.  -- email from Chris Nelson?

16    Q.  Yes, the discussion of the Tizen?

17    A.  Correct.  Yes.

18    Q.  So we're not going to put this one on the screen, but could

19    I direct your attention back to page 3 of 452?

20    A.  That's the date that says, "Detail when I'm back in the

21    office on Monday"?

22    Q.  Yes.  So about a third of the way down, kind of at the end

23    of this first long paragraph under Tizen, counsel directed your

24    attention yesterday to the sentence starting with, "I do think

25    that our existing Bing experience -- "

1          Do you see that?

2    A.  Yes.

3    Q.  Could you -- I can't read the whole sentence here out loud,

4    but could you read that whole sentence to yourself?

5    A.  Yes.

6    Q.  Do you see the reference to the Bing experience?

7    A.  Yes.

8    Q.  In 2013, at the time of this email, how did the Bing

9    experience differ in Korea than in the United States, if at

10   all?

11   A.  I don't remember.

12   Q.  You don't recall?

13   A.  No.

14   Q.  Okay.  Counsel asked you a few questions about the Play

15   Store and the Duo a moment ago.

16   A.  Yes.

17   Q.  Is the Play Store available for license in the

18   United States?

19   A.  Yes, I think -- I mean, Duo we have a license.

20   Q.  Sorry.  Can Microsoft license the Google Play Store on its

21   own, pay for a license for just the Google Play Store, in the

22   United States?

23   A.  Not that I am aware of.

24   Q.  If Microsoft felt that the Play Store was necessary for the

25   commercial success of the Duo, did it have to sign a MADA and

1    preload Google Search on the Duo?

2    A.  Yes, we had to sign the MADA in order to have the license

3    to Play Store and GMS and that MADA included requirements to

4    preload Google Search.

5    Q.  Do you consider Google Search to be a must-have Google

6    application for the Duo?

7    A.  I don't know, personally.

8    Q.  Would you consider Chrome to be a must-have Google

9    application for the Duo?

10    A.  Again, not personally.

11             MS. BELLSHAW:  Thank you.  No further questions, Mr.

12    Tinter.

13             Thank you, Your Honor.

14                      REDIRECT EXAMINATION

15    BY MR. SALLET:

16    Q.  Mr. Tinter, could you look back at the document DX2013?

17    A.  I'm sorry.  Can you adjust the microphone, please?

18    Q.  Sorry.  I'm sorry.  If there's anybody in the courtroom who

19    should have been aware of the need to do that, it should have

20    been me.

21             Mr. Tinter, could you look at the -- Defendant

22    Exhibit --

23    A.  2013, yes.

24    Q.  -- 2013.  Do you see that?

25    A.  Yes.

3423

1    Q.  Okay.  I would like to take you through some of the emails

2    on this exhibit.  Could you turn to page 2, please.

3    A.  Yes.

4    Q.  And do you see there, on the bottom half of the page, an

5    email from Chris Weinstein, July 22nd, 2020, at 7:07 p.m.?

6    A.  Yes.

7    Q.  And it starts, "Hi, Joan," correct?

8    A.  Yes, I see that.

9    Q.  You believe that's Joan Braddi?

10   A.  I assume so, given the back and forth of the thread, yes.

11   Q.  And looking at the first bullet, it says, "Today, SA360

12   customers who select that their campaigns have auction time

13   bidding will have the SA306 autobidding objectives sent to

14   Google ads' autobidding solution and the SA360 floodlight

15   conversion goals and data for all campaigns sent to the Google

16   ads' autobidding solution;" is that correct?

17   A.  That's what it says, yes.

18   Q.  And the second bullet says, "The Bing advertising

19   autobidding solution should have the same access as the Google

20   ads, one."  Excuse me.  I misread that.  "The Bing advertising

21   auto bidding solution should have the same access as the Google

22   ads one.  Specifically, that when SA360 customers select

23   auction time bidding, the SA360 autobidding objectives are sent

24   to the Bing advertising autobidding solution and the SA360

25   floodlight conversion goals and data for all campaigns are sent

1    to the Bing advertising autobidding solution, just like they

2    are sent to Google."

3        That's what that says, correct?

4    A.  That is what it says.

5    Q.  And then in his next sentence he says, "I believe your

6    engineering team is aware of this implementation, as our team

7    has been discussing with Amit Varia to implement a test last

8    year."

9        That's what that says, correct?

10   A.  That's what it says.

11   Q.  Is Amit Varia an employee of Google?

12   A.  I do not know.  In context, I would assume so, but I don't

13   know.

14   Q.  Now I would like you to go back to page 1.  And there's an

15   email, you asked about before, that Mr. Weinstein sends to you

16   and to a Mr. -- is it Mr. Dahlin?

17   A.  Yes.

18   Q.  Who is he?

19   A.  He was -- Mr. Dahlin actually reported directly to me, Mr.

20   Weinstein was a member of Mr. Dahlin's team.

21   Q.  Got it.  That's at 4:08 p.m. on July 23rd, correct?

22   A.  Correct.

23   Q.  The second paragraph says, "I'm syncing with Eduardo to

24   confirm the importance of this issue."

25       That's what it says, yes?

```
 1    A.  Yes.
 2    Q.  Now, could you turn to page 5 of this document?  This is a
 3    separate email thread that's attached to the last email that
 4    Mr. Weinstein sends to you.  And there's an email from Eduardo
 5    Indacochea, Thursday, July 23rd, 2020, at 4:19 p.m.  Do you see
 6    that?
 7    A.  Yes.
 8            MR. LARRABEE:  Sorry to interrupt.  We ask this be
 9    taken down.
10            MR. SALLET:  I didn't know it was a redacted
11    document.  So of course we'll take it down.
12            MR. LARRABEE:  Sorry.
13            MR. SALLET:  No, no, it's on us, Mr. Larrabee.
14    MR. SALLET:
15    Q.  So 11 minutes after an email we just looked at from
16    Mr. Weinstein, 11 minutes after the one that Google counsel
17    asked you about, Mr. Indacochea writes to Mr. Weinstein,
18    correct?
19    A.  I'm not following.  You said 11 minutes and I --
20    Q.  Sure.  You see the email --
21    A.  I've lost track of what you're referring to.
22    Q.  Sure.  Let me try it again.
23            Do you Mr. Indacochea, at 4:19 p.m., sends an email to
24    Mr. Weinstein?
25    A.  Correct.
```

1    Q.  And in it he said -- he has three numbered bullets.  Do you

2    see that?

3    A.  Yes.

4    Q.  And in the first one he says, "They cannot say that we

5    didn't request.  We have always been talking about SA360

6    auction time bidding with her team, so it isn't" -- "it isn't a

7    surprise.  In fact, they design it for us for a test."

8         That's what it says, yes?

9    A.  That's what it says.

10   Q.  And then in the second bullet it begins, "We have always

11   said that we want auto time bidding parity to Google ads."

12        That's what that says, correct?

13   A.  That is what it says.

14   Q.  And in his third bullet he says, "We cannot afford them

15   confusing it.  This is probably the single most important one

16   in this discussion -- includes conversions and bidding," is

17   that correct?

18   A.  Yes, that's correct.

19   Q.  And then Mr. Weinstein responds in the next email up --

20        MR. SCHMIDTLEIN:  Your Honor, we're going to have a

21   conversation, obviously, when we're done here about why we're

22   so far behind in this trial.  Having -- reading in emails that

23   he's not even on, with no questions and just asking him, Is

24   that what the email says? that's why we are behind.

25        MR. SALLET:  Your Honor, the state's use of time has

1    been very prudent in this case.

2            THE COURT:  Can I ask everybody to sit down and

3    continue so we can get done.

4    BY MR. SALLET:

5    Q.  In the email Mr. Indacochea sends at 11:04 the next day --

6    I apologize.  I'm wrong.  No, I'm wrong.

7            The second email on the same page, the second from the

8    top is from Mr. Weinstein to Mr. Indacochea on the next day,

9    correct?

10   A.  Correct.

11   Q.  And it starts off by saying, "Thanks, Eduardo, I'm aligned

12   with you that this issue is important and that Joan is being

13   disingenuous in her argument."

14           That's what it says, correct?

15   A.  That is what it says.

16   Q.  And then in the next paragraph the words appear, "Would you

17   delay this deal further and potentially not close it over this

18   issue?"  That's what it says, correct?

19   A.  That's what it says.

20   Q.  And then Mr. Indacochea responds, latter that day, "This

21   one is worth a lot.  Getting conversions from them to run

22   autobidding is worth holding ground, even if it means risk to

23   the agreement.  I wouldn't sign the agreement without it."

24           Correct?

25   A.  Correct.

3428

1    Q.  And if you go back to the first page, there's an email

2    that's at the very top of the page that's sent later that day,

3    the 24th, by Mr. Weinstein to you and Mr. Dahlin, and it says,

4    "I" -- the first sentence, Mr. Tinter, "I confirmed with

5    Eduardo that this is a significant issue," parens, "attached,"

6    parens.

7            Correct?

8    A.  Yes.

9    Q.  This exhibit contains all of the emails we've just

10   reviewed, correct?

11   A.  Yeah.  We've been flipping back and forth and looking at

12   them.

13           MR. SALLET:  Thank you.  No further questions, Your

14   Honor.

15           THE COURT:  All right.  Terrific.

16           MR. GREENBLUM:  Your Honor, just before we let the

17   witness leave, I want to make sure -- I didn't, I think,

18   formally move the admission of DX535.  I apologize.  I don't

19   think there's an objection.  I'll let Ms. Bellshaw speak to

20   that.

21           MS. BELLSHAW:  No objection, Your Honor.

22           THE COURT:  All right.  So 535 will be admitted.

23           MR. GREENBLUM:  Thank you, Your Honor.

24           THE COURT:  All right.  Mr. Tinter, appreciate your

25   time and your testimony.  Safe travels home.

```
 1              THE WITNESS:  I won't say it was fun.

 2              THE COURT:  We don't make that promise.

 3              MS. BELLSHAW:  Your Honor, we have one housekeeping

 4   matter.  Just, at the end of Mr. Tinter's testimony, we wanted

 5   to pass up the excerpt from --

 6              THE COURT:  This is the full deposition excerpt we

 7   talked about yesterday?

 8              MS. BELLSHAW:  Yes, Your Honor.

 9              THE COURT:  Okay.  All right.  Everyone, let's take a

10   couple minutes just to talk about the schedule and where we are

11   and the parties' filings over the last couple days.  So, based

12   on the schedule that was handed to me, I think earlier this

13   week, looks like DOJ and the states are expecting to conclude

14   or wrap up their case around December -- excuse me, October 24,

15   give or take.

16              MR. DINTZER:  Yes, Your Honor, give or take.  But,

17   yes, Your Honor.

18              THE COURT:  Remind me again where that is relative to

19   where we had originally expected plaintiffs' combined case to

20   end.

21              MR. DINTZER:  When the Court entered the order -- I

22   would be happy to hand up a copy, if the Court would like.

23              THE COURT:  It would be helpful.  I don't know that I

24   have the original order.

25              Okay.
```

1            MR. DINTZER:  As the Court can see from II.E on the

2       second page, we are -- we're going to be on or about zone.

3            MR. SCHMIDTLEIN:  Your Honor, if I may.  We're not in

4       the "on or about zone" because the zone switched when you

5       granted summary judgment.  And what occurred after that -- and

6       I think -- if you may recall, maybe you don't, I raised the

7       issue at one of our status conferences of, hey, we need a

8       revised witness list.  And we got that.  And they promised us,

9       they said, We're getting it to you, We're getting it to you.

10      And then they told us, the states did, that their case would be

11      done probably in the range of October 18th to 19th.  And then

12      based on that, we have scheduled all of our witnesses.

13           We have worked, you know, around all the schedules on

14      our end and put all of our witnesses lined up off of when the

15      Colorado plaintiffs signaled they were going to be done in

16      light of the court's summary judgment ruling.  That is the

17      calendar that we have all been operating on since before the

18      trial, when we made these subsequent witnesses exchanges.  And

19      now the Department is saying, No, Google, you're not starting

20      your case on -- after this October, you know, 18, 19, you know

21      the week of October 16th.  You're going to start it at the end

22      of the following week.  And this creates all sorts of potential

23      problems on my end and is completely inconsistent with the way

24      in which we've been operating since before this trial started.

25           THE COURT:  Just, let's be precise.  And at least

1    according to their estimate, it's ending up either the 24 or --

2    so, the 25th.  So in theory, Google could begin its case on the

3    26th.  But I take your point.

4         Look, I think the question -- look, what's clearly

5    happened here, and let's not mince words, is DOJ has slid some

6    witnesses in into the time that was otherwise -- the time for

7    the Colorado plaintiff's case, and that's what's happened here.

8    And the question is, in my mind -- go ahead.

9         MR. SCHMIDTLEIN:  It's not the case that the Colorado

10   plaintiffs told us they were behind --

11        THE COURT:  No, I understand.

12        MR. SCHMIDTLEIN:  -- schedule.

13        THE COURT:  No, I understand.  I'm not sure that

14   their case is any different than the one they told you that

15   they were going to schedule, it just sounds like the timing of

16   it has been pushed a few days in light of the additional

17   witnesses the Department of Justice wants --

18        MR. SCHMIDTLEIN:  It's being pushed about eight days.

19   They indicated to us that they had two witnesses they were

20   going to call the week of October the 16th.  Those were their

21   experts, the last two witnesses, that they had a couple of

22   hours each, which we figured they would wrap up probably on

23   October the 17th.

24        THE COURT:  Let me ask you this:  When do you have

25   your witnesses -- if things held according to plan, when do you

1    have your first witness scheduled on your current --

2         MR. SCHMIDTLEIN:  October the 18th.

3         THE COURT:  The 18th.  Okay.

4         MR. SCHMIDTLEIN:  I took them at their word, that the

5    last two experts were going to be done probably the 16th and

6    17th and I was going to be ready to go on October the 18th.

7    And I have disclosed to them -- I think September 5th was the

8    date I had to do so -- the witnesses that were going to follow

9    in the following weeks.  And now they're saying, you know,

10   you're going to start your case eight days later.

11        THE COURT:  Okay.  Mr. Dintzer, let me ask you --

12   well, first, let me just get your thoughts and then figure out

13   a way forward here.

14        MR. DINTZER:  No, I appreciate that, Your Honor.

15   Starting with where Mr. Schmidtlein ended, they never went to

16   the Court to ask the Court to adjust the schedule.  So that's

17   just as a starting point.  We've never committed to anything,

18   other than -- and they've had the list of our witness, so they

19   saw exactly where we're at.

20        For -- just to keep track, so we're all on the same

21   page, we -- by our estimate, we've cover 16 witnesses, we've

22   used about 64 hours.  When I say "us," I mean all of us,

23   including their time and argument time and all the

24   confidentiality time, we're at about 64 hours of court time.

25   The court's order -- I mean, no bright lines, we all understood

1    that, but around 105, give or take.

2           We are on schedule, projected from what we've got, to

3    be about 108.5.  And given the amount of time that we've all

4    dedicated to confidentiality and being careful in court with

5    the witnesses, for everybody's side, takes extra time.  We are

6    doing our best to stay in the zone.  We've cut at least one

7    expert -- or, at least pushed that off, possibility of that

8    expert.

9           We've narrowed our case to make sure that the Court

10   hasn't been hearing duplicative testimony.  I like to think

11   we're been pretty good about that.  Next week we're going to be

12   talking about -- we need to talk to Mr. Braddi, who negotiated

13   the Apple contracts for Google, and we need to do our ads case,

14   which the Court hasn't seen yet.  And that's going to be a big

15   part of next week.  And then we have our -- we have an expert

16   regarding advertising and then our primary expert, Professor

17   Whinston.

18          The schedule that we've proposed takes all that into

19   account and keeps us on the Court's original schedule and

20   brings us in about the amount of time.  Google has always had

21   our list of witnesses, so they've always known that there were

22   more witnesses in the pipeline.  And so their shock here about

23   gambling in Casablanca is a little overstated.  They knew who

24   we had to put on.  And so if they wanted to come to the Court

25   earlier and say there should be some bright line -- so,

1    obviously, to cut is back and not let us put on our ad case

2    next week would be deeply prejudicial.

3            We have been as careful as we could about the Court's

4    time.  We're very sensitive about that.  But this is a very

5    significant trial and it's important for the witnesses that the

6    Court needs to see, to make sure the Court gets the full

7    picture, especially on the ads case, and then, of course, our

8    two experts.

9            So we will work with Google to make sure that, you

10   know -- everybody, I believe, that they're calling, almost

11   everybody, is a Google witness.  So we're talking about their

12   experts, their fact witnesses -- I don't know exactly because

13   they don't tell us very much about their case.  I can't say

14   that with absolute certainty.  But they're their people.  We

15   have third-party advertisers coming in next week.  And so

16   that's -- that is sort of where we're at.

17           Our ask for the court is to keep us on -- I can't

18   promise to bring it in at 105, but, give or take, 105, plus or

19   minus, hours.  And quite honestly, we've had some -- I mean,

20   scheduling this has been particularly challenging.  Our

21   advertising expert, who was scheduled to testify next week, had

22   a death in the family and is traveling to India as part of his

23   family obligations and we're going to have to -- as the Court

24   can see, I believe you have that written on the schedule that

25   the Court has, is that right?  Professor Jerath on week October

1    2nd.  Does the one that the Court has reflect that?  If not, I

2    can hand that up.  If I may approach, Your Honor.

3         THE COURT:  So, I'm sorry, the one I have had him

4    scheduled to be second next week.

5         MR. DINTZER:  It is.

6         MR. SCHMIDTLEIN:  He was supposed to be this week.

7    If they'd been on time, he would have testified and he wouldn't

8    have this problem.

9         MR. DINTZER:  As we've pointed out, Your Honor, the

10   time is actually -- we are completely on time.  As far as the

11   days, the days are what they are and we are trying to make time

12   fit into the days as we've had them.  And, so, this is -- this

13   is an extremely important case, obviously, for the

14   United States, for the American people, and we are on time.

15        THE COURT:  Mr. Cavanaugh?

16        MR. CAVANAUGH:  Your Honor, I would just add two

17   things:  One, I think, as the Court has seen, the states have

18   gone out of their way -- we have a -- we have the same search

19   claim DOJ has.  We have gone out of our way not to get up and

20   ask duplicative questions; many times not questioning witnesses

21   at all.  Could I come up with a basis to question some of these

22   witnesses?  Absolutely.  But we've got out of our way not to do

23   that.

24        The other thing, Your Honor, is when we were looking

25   at how to schedule this, you know, originally we didn't know we

1    weren't sitting -- the Court had -- you originally said we'd

2    start our case on or about the 9th.  The 9th is Columbus Day,

3    so we weren't going to start then.  We're not sitting the 13th.

4    The week of the 16th we're not sitting the 20th, and the 23rd.

5    So when Google says, well, you know, it's eight days, well,

6    we're not sitting a number of those days, so it's really not.

7            And, so, you know, look, we're working with DoJ to

8    make this schedule work.  We have a couple witnesses who have

9    fixed times they have to appear, but we're shifting other

10   witnesses around in order to get this done.  The plaintiffs are

11   moving as efficiently as possible for a case of this magnitude.

12           Thank you, Your Honor.

13           THE COURT:  Okay.  So, look, I mean, some of this has

14   been built into the schedule.  I'm just looking back at the

15   calendar now.  We weren't going to sit on the 20th and 23rd, in

16   any event, as Mr. Cavanaugh reminds me.  I've got out-of-town

17   commitments on those days.  And I think the question is whether

18   it is realistic for the plaintiffs to wrap up by the 19th.  And

19   under your current schedule, it looks like you've got -- at

20   least your estimation is you've got two additional witnesses

21   the following week, wouldn't start until the 24th.  And in

22   reality, while, you know, Google would say that that's a

23   week -- or, at least a five-, six-day difference, it's really

24   only a one-trial-day difference.

25           MR. SCHMIDTLEIN:  I mean, Your Honor, if we were --

```
 1    if we were close, we obviously would show some flexibility.  I
 2    mean, we had multiple witnesses the first week who were
 3    supposed to go on who didn't, who were held over the following
 4    week.  I had other witnesses who were here who were supposed to
 5    have gone, they sent them away, they didn't get called this
 6    week, now they want them next week.  She's not available next
 7    week.  So, I mean, and we've had third parties held over.  You
 8    remember Mr. Higgins was held over the weekend.
 9         We need to impose some discipline on these folks,
10    otherwise it's a -- it's really a mess for us.  And I
11    understand that my witnesses in my case I have some control
12    over, but they actually have day jobs and I can't tell them, as
13    Your Honor recognized very early on, can't have these people
14    just sitting, kind of on call for a month at a time.  And
15    that's basically what we're doing here.  So if it slips a few
16    days, that's fine.  But if it's slipping a week and a half,
17    that's a problem.
18         MR. CAVANAUGH:  Your Honor, the two witnesses for,
19    basically, the 24th and 25th, they're our two experts, we've
20    moved to the end, Amaldoss and Baker.  Because, as Mr. Dintzer
21    indicated, we're putting -- during our case DoJ witnesses are
22    being slotted in.  You know, we've confirmed their availability
23    for those days.  And, again, because of the days we're off,
24    this is not -- you know, we're not fundamentally moving this
25    schedule around.
```

```
1            MR. DINTZER:  So, Mr. Schmidtlein is conjoining a
2    bunch of different things; inconvenience of the trial, the --
3    some of the inconvenience, unfortunately, is that they have
4    refused to give us any precise times on their cross.  So we've
5    had -- to make sure that we never have dead time for the Court,
6    we have had to have people lined up so that there's always the
7    next person, if they go short on their cross.  Obviously,
8    that's something we can't control.  It's important for us to
9    have somebody.  That has nothing to do with how expeditious
10   we've been in presenting witnesses and getting them on and off
11   and addressing the Court's -- and walking through our case.
12           So we do ask the Court to give us the time that we've
13   set aside in this schedule.  We will continue to be careful of
14   the Court's time and make sure that we present our case the way
15   that it should be.
16           THE COURT:  All right.  So this is what we're going
17   to do:  To the extent the plaintiffs have estimated a schedule
18   through the 25th, that's fine.  However, with the following
19   caveat:  If there is a Google witness that was expected to
20   testify on either the 18th or 19th, or the 24th or 25th that
21   cannot be rescheduled, Google can put that witness on on those
22   days.  And plaintiffs will just have to figure it out.  Okay?
23           MR. DINTZER:  Understood, Your Honor.  With the
24   understanding that if Google does that, we get a little bit
25   more --
```

 1          THE COURT:  You all will have to coordinate.  But the

 2     bottom line is, if there are Google witnesses who otherwise

 3     would not be available at the very end of the plaintiffs' case,

 4     that have made plans to be available the 18th, 19th,

 5     et cetera -- and hopefully that's not all of them -- we can,

 6     you know, slot some of those witnesses in early and just

 7     move -- and move everybody back accordingly.

 8          MR. DINTZER:  Absolutely.

 9          THE COURT:  I understand that creates some issues for

10     Google's case.  But we are essentially on track from -- with

11     the original schedule.

12          Now, the original schedule is based upon a broader

13     plaintiffs' case, in fairness.  But, we are essentially on

14     track and do want to make sure that both sides have full

15     opportunity.  Nobody wants to -- I shouldn't say that -- but,

16     we all have an interest in getting this done as expeditious in

17     manner as possible.  And I will -- we'll continue to strive to

18     do that.  And if I need to be a little bit more on top of

19     things in terms of length of time of witnesses, I'll do that.

20          MR. DINTZER:  One of the things that would help, Your

21     Honor is, is Google has said -- I mean, as the Court can see,

22     we had planned on bringing Ms. Braddi next week.  And Google,

23     they haven't given us any reason, they've just said she's not

24     coming next week.  To keep us on schedule because, obviously,

25     we had her scheduled, if she has any way to be available, or if

1  there's a reason why she can't, then we need to talk about it.

2  But, especially with having to change the schedule for

3  Professor Jerath, keeping Ms. Braddi in that slot will help

4  keep us on schedule.

5          THE COURT:  Was she originally scheduled this week?

6          MR. SCHMIDTLEIN:  Last week.  Early last week.  She

7  was here two weekends ago and stayed here all last week.  And

8  we sent her home.  And she had a longstanding -- because of

9  this trial.  She has a longstanding family vacation next week

10  and they're now saying, we've now -- having sent her home, we

11  would like her to come back.

12          THE COURT:  I'm not going to -- she's got vacation

13  that's been longstanding and planned, then --

14          MR. DINTZER:  We'll work with Google to make sure

15  that she can have her vacation and we get her back here when we

16  need her.

17          THE COURT:  I don't want to do this, ideally, it's

18  not optimal, but we can, if the circumstances require, do

19  remote testimony.  And that is an option.  It's not optimal.

20          MR. SCHMIDTLEIN:  We don't want to do that.

21          THE COURT:  I agree.  But if it really is an issue,

22  it's an option for a witness that was expected to be scheduled

23  on a particular day but now just cannot make it for whatever

24  the reason may be --

25          MR. DINTZER:  I think both parties --

 1          THE COURT:  -- in particular, given the travel time,

 2     likely, from the West Coast.

 3          MR. DINTZER:  I think both parties would prefer that

 4     the Court see her in person.  So we will work with Google --

 5          THE COURT:  I wasn't being specific to Miss Braddi.

 6     That was a broader statement as to all witnesses, except the

 7     experts.

 8          MR. DINTZER:  We appreciate that, Your Honor.  We'll

 9     work with Google with Ms. Braddi to make sure the Court gets a

10     chance sees her in person.

11          We appreciate this, Your Honor.  Thank you.

12          THE COURT:  Okay.  All right.  The last matter that I

13     have is that there was filed, yesterday afternoon, a motion to

14     intervene with respect to making certain exhibits available.  I

15     did invite -- Mr. Bailen, is it?

16          MR. THAYER:  Your Honor, Mr. Thayer.

17          THE COURT:  What's your name, sir?

18          MR. THAYER:  Joel Thayer.  I'm co-counsel.

19          THE COURT:  So, Mr. Thayer, hang on.  I'm not --

20          MR. THAYER:  Sure.

21          THE COURT:  I wanted to set the table -- you can have

22     a seat -- about the motion that was filed.  Actually, I did not

23     even see this motion until after court was concluded yesterday.

24     So, let me just set the table on a couple of things here, just

25     to make sure we're all operating on the same script and the way

1    things have unfolded over the course of trial.

2           There was a request early on, pretrial, to have there

3    be a public line of this trial.  There was no request to post

4    exhibits publicly, either by the plaintiffs, the defendants, or

5    any third party.  So, therefore, I did not put in place any

6    process to make exhibits available to the public as they were

7    being admitted.  Okay?  That was the state of play before trial

8    began.

9           With respect to the public line, we were in a

10   difficult position in the sense that although it was something

11   that could have been done for the first week or so of trial, it

12   was clear to me it was something that could not be done for the

13   entirety of the trial.  And to be clear about this, I have no

14   discretion on this.  It is a judiciary policy to not permit the

15   a public line of any kind for civil trials involving witness

16   testimony.  It's not my decision.  Take it up with the judicial

17   conference.  Not my decision.

18          With respect to the exhibits:  It only became

19   apparent to me that this was an issue -- this being the public

20   posting of exhibits -- when I learned for the first time that

21   the Department of Justice had been doing it.  I was not aware

22   of that.  As I said at the time, I did not have a problem in

23   practice with doing it, but I did want there to be a process in

24   place, for two reasons.  One:  Yes, these are public records,

25   but they are also court records, and the court -- not just

1    me -- but the courts do not just simply allow court records to

2    be publicly put out on the internet or elsewhere without

3    ensuring that certain controls are in place.  And for good

4    reason.

5         And the second reason is because these are documents

6    that are both not only business sensitive, but they do contain

7    people's privately identifiable information and there has to be

8    a process in place to make sure that those types of

9    information -- for which I do have discretion in ensuring they

10   not be put into the public -- is followed.  And so there is

11   naturally going to have to be a delay.

12        Now, the delay was compounded in this case because,

13   again, at the start of trial no one had made the request to

14   post public exhibits.  That only became an issue when -- when I

15   learned about it for the first time, and at that point I asked

16   the parties to come up with a process to do it.  And that's

17   where we find ourselves today.

18        The parties have now negotiated a process for the

19   public posting of exhibits.  It has now started, I believe.

20   And I don't know where we are in terms of past exhibits.  And

21   you can provide an update.

22        But, I just want that to be clear in terms of how

23   things have unfolded here and how we have gotten to where we

24   are today.  It has not been because of some effort to prevent

25   the public from having access to both the testimony and to the

 1    exhibits.  So that's where we are.

 2          Now, given that, happy to hear from counsel who has

 3    filed this motion, in terms of what you're seeking in addition

 4    to what already has been put in place.  So why don't you come

 5    on up.

 6          MR. THAYER:  Thank you very much for taking this up.

 7    The only thing I -- that our motion would address, that it's in

 8    line, I guess, with the proceeding that's already taken place,

 9    is we would like -- our clients, I represent both Adam Candeub

10    and John Schweppe -- would be to have one other person being

11    able to participate in this process who is as has an interest

12    in getting these documents, to ensure the public's interest is

13    at least represented, outside of just the parties' interest,

14    which is why we sought intervention in the first place.

15          THE COURT:  Forgive me, but I'm not aware of any

16    circumstance or any case in which a nonparty is able to provide

17    input about what becomes public in terms of the evidence that

18    is presented at a trial.

19          MR. THAYER:  Well --

20          THE COURT:  Let's be clear here, as I said at the

21    beginning, public has a right to access to the records.  And

22    they are court records.  What the public has a right of access

23    to -- and the Supreme Court is very clear on this -- is the

24    portions of records that are presented at a trial.  Not all of

25    the record.  The portions of the records that are presented to

1    the Court at trial that are likely to be part of the evidence

2    that the Court will consider.

3           Just because a case comes to trial and there's public

4    interest in the trial and there are documents introduced, does

5    not mean that all of those documents in their entirety become

6    public records.  That is the law.  And that's the law I'm

7    following.  And so this idea that a third-party would come in

8    to ask to have a say is highly unusual.

9           MR. THAYER:  And, again, Your Honor, I think that's

10   precisely why we've narrowed our motion to only the

11   relationship between defendant and Apple.  We're not looking

12   for --

13          THE COURT:  If I give you that, you know,

14   opportunity, how do I say no to the next motion for

15   intervention that wants all the records regarding the

16   relationship with Microsoft or with DuckDuckGo?  How do you

17   expect me to draw the line there?

18          MR. THAYER:  Well, given that the plaintiff has made

19   this, basically, a seminal aspect of their case, I think that

20   the circumstances allow for, given some of the decisions on

21   these issues, to have at least some public --

22          THE COURT:  What decisions are you referring to?

23          MR. THAYER:  So specifically, *EEOC v. National*

24   *Children's*.  And I can give you the --

25          THE COURT:  When you say "decisions," you mean case

1    law.

2              MR. THAYER:  Yeah.  Apologies.  So, the court -- as

3    you are well aware, Your Honor, the courts have taken certain

4    levels of public interest when allowing for these types of

5    motions to be granted, and I -- just the way the defense has --

6              THE COURT:  Let's be -- you should understand how

7    this generally works.  Okay?  You cite a case like *EEOC*, that

8    law is controlling upon me.  *EEOC*, however, is not a case that

9    dictates to a trial court when records become public and in

10   what way.  What it says is that there's a presumption of

11   access, there's a presumption that materials that are presented

12   to a court are public records.

13             There are exceptions.  And the Court is asked to do a

14   balancing.  And sometimes that balancing can be done during

15   trial, sometimes that balancing has to wait until the end of a

16   case.  And it has been requested by the plaintiffs for me to do

17   that balancing now and for the parties to do that balancing

18   now.  And that is not typical.  We're doing it, but it's not

19   the usual course.

20             You know, as I said at the beginning, when I said --

21   actually, when this was first raised, in my time here, the only

22   time it's been done is with respect to the January 6 cases.

23   And we've done that.  The reason we've done that is that the

24   United States has presented orders to each individual judge in

25   this courtroom -- courthouse about a process for posting

1      exhibits, including video exhibits, that ensure the very things

2      that I'm talking about; ensuring people's personal privacy is

3      not violated, ensuring that other considerations are taken into

4      account before things are simply publicly posted.  And that's

5      what we're doing here.  That's what we're doing here.

6                  MR. THAYER:  And, Your Honor, there's no doubt that

7      we appreciate the efforts made by you, the parties, to attempt

8      to make this far more public than is usual.  But, I -- our

9      client is very -- is not just adamant, we also believe that the

10     public -- because it's been made so public, because of the

11     nature of the case, because of how large this is and, frankly,

12     how public it has been, there is a certain -- there is a

13     certain level of public interest that I think that -- well, I

14     don't just think --

15                 THE COURT:  So let me ask you this:  How would your

16     clients propose -- if they did get to participate, are you

17     saying that they should get access to portions of documents

18     that haven't been presented to me?

19                 MR. THAYER:  No, no, Your Honor.  The way the motion

20     is constructed -- and I apologize if it's not totally clear --

21     is to participate in the decision as to whether or not the DoJ

22     can publicly publish or -- and at least hearing the pushback

23     from -- apology --

24                 THE COURT:  I want to make one other thing clear.

25     The process that is in place is the following, and everybody

1    should be clear about this:  Prior to the case beginning, I

2    asked the parties to confer about confidentiality of records.

3    They did that.  They spent a lot of time and effort doing

4    that -- plaintiffs did it, Google did it, third parties did

5    it -- in an effort to ensure that what was presented at trial,

6    and presented publicly, was nonconfidential information.

7            Now, I will say, now that the case has begun, maybe

8    there was some over designation.  Fine.  That happens.  But

9    that was the state of play at the beginning of trial as this

10   trial proceeded.  Now, the additional protection I am offering

11   that is part of this process, which amounts to four hours of

12   time.  For Google or any third party to review a document is

13   simply to ensure that whatever agreement there was in advance

14   of trial has, A, not been modified by what happened at trial

15   and, two, to make sure the documents are released with an eye

16   toward the things they may not have been looking for

17   previously, such as personally identifiable information,

18   aspects of a document that were not redacted previously because

19   they weren't going to be introduced at a trial.

20           So that is why there has been this additional buffer

21   of time before the documents go out.  And that is why third

22   parties and Google have made the request, and I've granted it.

23   They wanted 24 hours, I gave them four.

24           MR. THAYER:  And, again, Your Honor, I don't think my

25   clients would argue that you haven't -- you haven't weighed the

1    equities, it's more of a question of whether or not the public

2    would have at least some understanding as to why a -- outside

3    of issues that are fairly obviously, like you don't want trade

4    secrets let out, you certainly don't want source code let out.

5    But I think the big issue that my clients point out is that

6    when this Court heard the issues of January 6, there was a lot

7    of -- there was little discretion --

8              THE COURT:  There was what?

9              MR. THAYER:  There was little discretion on behalf of

10   the parties as to, you know, what went out, or went out to the

11   public.  And my --

12             THE COURT:  I'm not sure that's true.  But, okay.  I

13   don't know what you're talking about.  I've presided over more

14   January 6 trials, in terms of hours, than any judge in this

15   courthouse.  And every single exhibit, every single exhibit,

16   for example, in the Oath Keepers case, was available and could

17   be made available to the public on a government sponsored

18   website.  So I'm not sure what you're talking about.

19             MR. THAYER:  I think there's a disruption in

20   communication here between what I'm saying and what -- what my

21   clients are alleging, the four-hour period seems more like a

22   veto.

23             THE COURT:  It is not a veto.

24             MR. THAYER:  It seems like there is --

25             THE COURT:  I can't be more clear.  It's not a veto.

1    It is an opportunity to remove things in a record that

2    otherwise should not be out in the public, like personally

3    identifying information, and even the material you've talked

4    about; trade secrets, confidential information, those are the

5    two big categories that the parties understand I have said can

6    be redacted.  And the case law allows me to do so.  It is

7    appropriate to do so, the circuit has said.

8         MR. THAYER:  With respect, Your Honor, I think it

9    also allows the public at least some ability -- or at least --

10   or -- let me rephrase.  The case law is fairly clear, as well,

11   that you do have discretion to allow for a third party that

12   represents the public interest here, at least hear those

13   redactions, as it were.

14        THE COURT:  I'm not aware of any case that stands for

15   that proposition.

16        MR. THAYER:  Specifically, we do --

17        THE COURT:  It is true that parties have intervened

18   to request public disclosure of records.  I'm not aware of any

19   case that authorizes a party to participate in -- a third party

20   to participate in the determination of what becomes public.

21        MR. THAYER:  The case I'm specifically referring to

22   is *Globe Newspaper Co. v. Superior Court*.  And in that --

23        THE COURT:  I'm sorry, what case?

24        MR. THAYER:  *Globe Newspaper Co. v. Superior Court*.

25   And in that case it was pretty well settled that the public

1    does have a right to seek access to sealed documents.  And

2    so -- and again, I --

3                THE COURT:  Is there any dispute about that?

4                MR. THAYER:  Well, the dispute comes into play of

5    what actually gets into the public and what's actually able --

6    what's actually accessible.  So in that four-hour timeframe,

7    it's not necessarily clear --

8                THE COURT:  Let me -- we don't need to talk about

9    this very much more.  I want to be 100 percent clear.  Okay?

10   To the extent a document is being put on a public website, it

11   is a document that has been presented at trial -- not just the

12   document, but the portions of a document presented at trial,

13   the relevant portions of a document presented at trial,

14   stripped of two things:  Personally identifying information and

15   trade secrets, and confidential financial information.  That is

16   what is not going out to the public.  And I have a right to

17   balance the factors to carve that kind of material out.  And

18   that's exactly what is happening here.

19               Google and the third parties are being given an

20   opportunity to review a record to ensure that that line is

21   being followed.  And I am trusting them, just as I'm trusting

22   the plaintiffs, to follow that line.

23               And so that's the state of play.  It is not a veto on

24   anything.  Because, by the way, if there is a disagreement, I

25   make the final decision.  Not them.

1          MR. THAYER:  And again, Your Honor, I think the issue

2      really comes down to, for our clients, is, the question is to

3      that particular disagreement, as to what constitutes

4      confidential information, what constitutes a trade secret.  And

5      admittedly, there is, like, well-established law as to what a

6      trade secret is.  But in the realm of confidentiality, as you

7      are well aware, it's not necessarily clear as to what the scope

8      of that is in relationship to this trial.

9          And I -- our clients have -- has raised a concern

10     that that might be a little bit overbroad and that might --

11     that in -- that I think is the real concern, that the -- our

12     clients have is what constitutes a -- when -- if Google were to

13     say, you know, a specific thing that the Court will rely on in

14     order to make its decision it's confidential, well, it's --

15     it's sort of like asking us to prove a negative and -- from the

16     respect of the public, where we're -- I mean, if we can't have

17     access to at least what was discussed because it is

18     confidential based on the parties, that's a very difficult --

19          THE COURT:  Your client gets to look at the

20     confidential information to determine it's confidential, is

21     that what you're saying?

22          MR. THAYER:  Well, if we were intervenors, yeah, we

23     would -- yeah, we would be able to do that.

24          THE COURT:  That's what you're saying?

25          MR. THAYER:  Yeah.

1          THE COURT:  I'm not aware of any circumstance in

2     which that has been permitted.

3          MR. THAYER:  So, again, by the time it would have

4     gotten to that conference, as you've articulated, our

5     perspective is, okay, well, how could -- how could such

6     detrimental confidential information get seeped into these

7     records without having gone through the process already of

8     being vetted?  This seems like a second bite at the apple.

9     Excuse the pun.

10         THE COURT:  Sorry, for whom?

11         MR. THAYER:  For both Google --

12         THE COURT:  I just told you, it's not a second bite

13    at the apple.  It is a final check to ensure that what was

14    presented at trial does not contain the things that I said

15    ought not to be in the public sphere.  That's what it is.  It

16    is a four-hour opportunity to review a record that already has

17    been looked at quite closely by the parties.  That's all it is.

18    It is not a veto, it's not a second bite at the apple.  It's

19    simply a process.

20         I dare say, I don't think anybody should want to know

21    what somebody's phone number is, what their email is.  The

22    public doesn't have a right to know that stuff, so they get a

23    chance to make sure the document doesn't say that.  That's all

24    it is.

25         MR. THAYER:  And again, Your Honor, the --

 1              THE COURT:  Okay.  I think we're done.  So I'm going

 2     to let your motion to intervene, I'll deny the request to

 3     participate in the process that I've just described.  But I

 4     appreciate you coming in to raise the issues, they're

 5     important.  So thank you.  Thank you for coming in at the last

 6     minute.  I know we only advised you of this first thing this

 7     morning, so appreciate you getting to court.

 8              MR. THAYER:  Thank you for hearing the motion, Your

 9     Honor.  Appreciate it.

10              THE COURT:  Is there anything else we need to discuss

11     before we adjourn for the day?

12              MR. DINTZER:  Not for the DoJ public.

13              MR. CAVANAUGH:  No, Your Honor.

14              MR. SCHMIDTLEIN:  Nothing.  Thank you for taking time

15     to finish up.  I know you've done this before, and all the

16     parties are very grateful.

17              THE COURT:  That's what I'm here for.

18              See the parties on Monday.  Have a nice weekend.

19                            *   *   *

20

21

22

23

24

25

1

2                CERTIFICATE OF OFFICIAL COURT REPORTER

3

4       I, JANICE DICKMAN, do hereby certify that the above and

5    foregoing constitutes a true and accurate transcript of my

6    stenographic notes and is a full, true and complete transcript

7    of the proceedings to the best of my ability.

8                        Dated this 30th day of September, 2023

9

10

11                    _____

12                    Janice E. Dickman, CRR, CMR, CCR
                      Official Court Reporter
13                    Room 6523
                      333 Constitution Avenue, N.W.
14                    Washington, D.C.  20001

15

16

17

18

19

20

21

22

23

24

25

```
 1                               INDEX

 2
     WITNESS:
 3
         Jonathan Tinter
 4            Cross Examination By Mr. Greenblum...............3410
              Redirect Examination By Ms. Bellshaw.............3420
 5            Redirect Examination By Mr. Sallet...............3422

 6
     EXHIBITS ADMITTED:
 7
         DX535............................................3428
 8       DX2013..........................................3415

 9                            *   *   *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**'**

**'best** [1] - 3416:22
**'separate** [1] - 3413:2
**'the** [1] - 3416:23

**1**

**1** [1] - 3424:14
**100** [1] - 3451:9
**10036** [1] - 3409:4
**105** [3] - 3433:1, 3434:18
**108.5** [1] - 3433:3
**11** [3] - 3425:15, 3425:16, 3425:19
**1100** [1] - 3408:12
**1133** [1] - 3409:8
**11:04** [1] - 3427:5
**12th** [1] - 3409:13
**1300** [1] - 3409:4
**13th** [1] - 3436:3
**16** [1] - 3432:21
**16th** [4] - 3430:21, 3431:20, 3432:5, 3436:4
**17th** [2] - 3431:23, 3432:6
**18** [1] - 3430:20
**18th** [6] - 3430:11, 3432:2, 3432:3, 3432:6, 3438:20, 3439:4
**19** [1] - 3430:20
**19th** [4] - 3430:11, 3436:18, 3438:20, 3439:4

**2**

**2** [1] - 3423:2
**20-3010** [2] - 3408:4, 3410:3
**20001** [3] - 3408:17, 3409:19, 3455:14
**20005** [1] - 3409:14
**2013** [4] - 3412:2, 3421:8, 3422:23, 3422:24
**2019** [1] - 3416:14
**202** [4] - 3408:13, 3408:17, 3408:21, 3409:14
**202-354-3267** [1] - 3409:19
**2020** [3] - 3412:13, 3423:5, 3425:5
**2023** [2] - 3408:5, 3455:8
**209** [1] - 3408:20

**20th** [2] - 3436:4, 3436:15
**212** [1] - 3409:10
**2200** [1] - 3409:9
**22nd** [1] - 3423:5
**23rd** [5] - 3412:13, 3424:21, 3425:5, 3436:4, 3436:15
**24** [3] - 3429:14, 3431:1, 3448:23
**24th** [5] - 3413:24, 3428:3, 3436:21, 3437:19, 3438:20
**25th** [4] - 3431:2, 3437:19, 3438:18, 3438:20
**26th** [1] - 3431:3
**29** [1] - 3408:5
**2nd** [2] - 3416:14, 3435:1

**3**

**3** [1] - 3420:19
**307-0340** [1] - 3408:13
**30th** [1] - 3455:8
**333** [2] - 3409:18, 3455:13
**335-2793** [1] - 3409:10
**3:24** [1] - 3412:13

**4**

**4000** [1] - 3408:16
**434-5000** [1] - 3409:14
**450** [1] - 3408:16
**452** [3] - 3420:11, 3420:12, 3420:19
**4:08** [2] - 3413:10, 3424:21
**4:19** [2] - 3425:5, 3425:23

**5**

**5** [1] - 3425:2
**508-6000** [1] - 3409:5
**535** [2] - 3417:17, 3428:22
**598-2307** [1] - 3408:17
**5th** [1] - 3432:7

**6**

**6** [3] - 3446:22, 3449:6, 3449:14
**600** [1] - 3408:20
**60604** [1] - 3408:21
**64** [2] - 3432:22, 3432:24

**6523** [2] - 3409:18, 3455:13

**7**

**720** [1] - 3409:5
**725** [1] - 3409:13
**7:07** [1] - 3423:5

**8**

**80203** [1] - 3409:5
**805-8563** [1] - 3408:21

**9**

**9:00** [1] - 3408:6
**9th** [2] - 3436:2

**A**

**a.m** [1] - 3408:6
**ability** [2] - 3450:9, 3455:7
**able** [4] - 3444:11, 3444:16, 3451:5, 3452:23
**absolute** [1] - 3434:14
**absolutely** [2] - 3435:22, 3439:8
**access** [9] - 3423:19, 3423:21, 3443:25, 3444:21, 3444:22, 3446:11, 3447:17, 3451:1, 3452:17
**accessible** [1] - 3451:6
**according** [2] - 3431:1, 3431:25
**accordingly** [1] - 3439:7
**account** [2] - 3433:19, 3447:4
**accurate** [1] - 3455:5
**action** [1] - 3410:3
**ad** [1] - 3434:1
**Adam** [1] - 3444:9
**adamant** [1] - 3447:9
**add** [1] - 3435:16
**addition** [1] - 3444:3
**additional** [4] - 3431:16, 3436:20, 3448:10, 3448:20
**address** [1] - 3444:7
**addressing** [1] - 3438:11
**adds** [1] - 3413:14
**adjourn** [1] - 3454:11
**adjust** [3] - 3420:8, 3422:17, 3432:16

**adjusting** [1] - 3411:3
**admission** [3] - 3412:6, 3416:9, 3428:18
**ADMITTED** [1] - 3456:6
**admitted** [3] - 3415:12, 3428:22, 3442:7
**admittedly** [1] - 3452:5
**ads** [6] - 3412:25, 3423:20, 3423:22, 3426:11, 3433:13, 3434:7
**ads'** [2] - 3423:14, 3423:16
**advance** [1] - 3448:13
**advertisers** [1] - 3434:15
**advertising** [6] - 3423:18, 3423:20, 3423:24, 3424:1, 3433:16, 3434:21
**advised** [1] - 3454:6
**afford** [1] - 3426:14
**afternoon** [1] - 3441:13
**ago** [2] - 3421:15, 3440:7
**agree** [2] - 3418:14, 3440:21
**agreement** [4] - 3418:14, 3427:23, 3448:13
**ahead** [1] - 3431:8
**aid** [1] - 3411:2
**al** [2] - 3408:3, 3410:3
**aligned** [1] - 3427:11
**alleging** [1] - 3449:21
**allow** [3] - 3443:1, 3445:20, 3450:11
**allowing** [1] - 3446:4
**allows** [2] - 3450:6, 3450:9
**almost** [1] - 3434:10
**Amaldoss** [1] - 3437:20
**America** [2] - 3408:2, 3410:3
**American** [1] - 3435:14
**Americas** [1] - 3409:8
**Amit** [2] - 3424:7, 3424:11
**AMIT** [1] - 3408:9
**amount** [2] - 3433:3, 3433:20
**amounts** [1] - 3448:11
**Android** [3] - 3414:22,

3415:17, 3416:24
**Antitrust** [1] - 3409:2
**apologies** [1] - 3446:2
**apologize** [3] - 3427:6, 3428:18, 3447:20
**apology** [1] - 3447:23
**app** [1] - 3419:15
**apparent** [1] - 3442:19
**appear** [2] - 3427:16, 3436:9
**APPEARANCES** [1] - 3408:11
**apple** [3] - 3453:8, 3453:13, 3453:18
**Apple** [2] - 3433:13, 3445:11
**application** [2] - 3422:6, 3422:9
**appreciate** [8] - 3428:24, 3432:14, 3441:8, 3441:11, 3447:7, 3454:4, 3454:7, 3454:9
**approach** [2] - 3416:1, 3435:2
**appropriate** [1] - 3450:7
**approved** [1] - 3416:24
**apps** [2] - 3416:25
**argue** [1] - 3448:25
**argument** [2] - 3427:13, 3432:23
**article** [2] - 3412:25, 3416:13
**articulated** [1] - 3453:4
**aside** [3] - 3414:8, 3417:12, 3438:13
**aspect** [1] - 3445:19
**aspects** [1] - 3448:18
**assume** [2] - 3423:10, 3424:12
**attached** [2] - 3425:3, 3428:5
**attempt** [1] - 3447:7
**attention** [4] - 3412:9, 3420:10, 3420:19, 3420:24
**auction** [3] - 3423:12, 3423:23, 3426:6
**authorizes** [1] - 3450:19
**auto** [3] - 3413:17, 3423:21, 3426:11
**autobidding** [8] - 3423:13, 3423:14, 3423:16, 3423:19, 3423:23, 3423:24, 3424:1, 3427:22

**B**

**Bailen** [1] - 3441:15
**Baker** [1] - 3437:20
**balance** [1] - 3451:17
**balancing** [5] - 3446:14, 3446:15, 3446:17
**based** [4] - 3429:11, 3430:12, 3439:12, 3452:18
**basis** [1] - 3435:21
**became** [2] - 3442:18, 3443:14
**become** [2] - 3445:5, 3446:9
**becomes** [2] - 3444:17, 3450:20
**BEFORE** [1] - 3408:9
**began** [1] - 3442:8
**begin** [1] - 3431:2
**beginning** [4] - 3444:21, 3446:20, 3448:1, 3448:9
**begins** [3] - 3412:20, 3416:17, 3426:10
**begun** [1] - 3448:7
**behalf** [2] - 3410:6, 3449:9
**behind** [3] - 3426:22, 3426:24, 3431:10
**Belknap** [1] - 3409:8
**Bellshaw** [1] - 3408:15, 3420:7, 3428:19
**BELLSHAW** [6] - 3420:3, 3420:5, 3422:11, 3428:21, 3429:3, 3429:8
**Bellshaw..............**
**3420** [1] - 3456:4
**below** [2] - 3413:18, 3416:16

**BENCH** [1] - 3408:9
**bench** [2] - 3410:10, 3410:11
**benefit** [1] - 3415:3
**Benjamin** [1] - 3409:12
**best** [6] - 3415:24, 3416:23, 3417:3, 3433:6, 3455:7
**between** [3] - 3414:12, 3445:11, 3449:20
**bgreenblum@wc.**
**com** [1] - 3409:15
**bid** [2] - 3413:1, 3413:2
**bidder** [3] - 3412:17, 3413:1
**bidding** [7] - 3413:17, 3423:13, 3423:21, 3423:23, 3426:6, 3426:11, 3426:16
**big** [4] - 3420:9, 3433:14, 3449:5, 3450:5
**binder** [3] - 3411:25, 3417:16, 3420:10
**bing** [1] - 3414:17
**Bing** [7] - 3420:25, 3421:6, 3421:8, 3423:18, 3423:20, 3423:24, 3424:1
**bit** [4] - 3411:3, 3438:24, 3439:18, 3452:10
**bite** [3] - 3453:8, 3453:12, 3453:18
**bottom** [4] - 3412:10, 3412:11, 3423:4, 3439:2
**Braddi** [11] - 3411:16, 3412:12, 3412:15, 3412:23, 3413:5, 3423:9, 3433:12, 3439:22, 3440:3, 3441:5, 3441:9
**bright** [2] - 3432:25, 3433:25
**bring** [2] - 3416:22, 3434:18
**bringing** [1] - 3439:22
**brings** [1] - 3433:20
**broader** [2] - 3439:12, 3441:6
**Broadway** [1] - 3409:4
**browser** [2] - 3414:15, 3414:17
**Bruce** [1] - 3409:1
**buffer** [1] - 3448:20
**building** [2] - 3412:16, 3417:6

**built** [2] - 3417:8, 3436:14
**bullet** [4] - 3423:11, 3423:18, 3426:10, 3426:14
**bullets** [1] - 3426:1
**bunch** [1] - 3438:2
**business** [2] - 3411:22, 3443:6
**BY** [6] - 3410:22, 3412:8, 3415:14, 3416:5, 3420:5, 3427:4

**C**

**calendar** [2] - 3430:17, 3436:15
**campaigns** [3] - 3423:12, 3423:15, 3423:25
**Candeub** [1] - 3444:9
**cannot** [4] - 3426:4, 3426:14, 3438:21, 3440:23
**careful** [3] - 3433:4, 3434:3, 3438:13
**Carr** [1] - 3409:3
**carve** [1] - 3451:17
**Casablanca** [1] - 3433:23
**case** [44] - 3427:1, 3429:14, 3429:19, 3430:10, 3430:20, 3431:2, 3431:7, 3431:9, 3431:14, 3432:10, 3433:9, 3433:13, 3434:1, 3434:7, 3434:13, 3435:13, 3436:2, 3436:11, 3437:11, 3437:21, 3438:11, 3438:14, 3439:3, 3439:10, 3439:13, 3443:12, 3444:16, 3445:3, 3445:19, 3445:25, 3446:7, 3446:8, 3446:16, 3447:11, 3448:1, 3448:7, 3449:16, 3450:6, 3450:10, 3450:14, 3450:19, 3450:21, 3450:23, 3450:25
**cases** [1] - 3446:22
**categories** [1] - 3450:5
**Cavanaugh** [4] - 3409:7, 3410:5, 3435:15, 3436:16
**cAVANAUGH** [1] -

3459

3454:13
**CAVANAUGH** [2] - 3435:16, 3437:18
**caveat** [1] - 3438:19
**CCR** [1] - 3455:12
**Center** [1] - 3409:3
**certain** [5] - 3441:14, 3443:3, 3446:3, 3447:12, 3447:13
**certainly** [3] - 3415:1, 3415:7, 3449:4
**certainty** [1] - 3434:14
**CERTIFICATE** [1] - 3455:2
**certify** [1] - 3455:4
**cetera** [1] - 3439:5
**challenging** [1] - 3434:20
**chance** [2] - 3441:10, 3453:23
**change** [1] - 3440:2
**check** [1] - 3453:13
**Chicago** [1] - 3408:21
**chief** [3] - 3416:18, 3416:21, 3417:9
**Children's** [1] - 3445:24
**Chris** [5] - 3411:20, 3411:22, 3412:15, 3420:15, 3423:5
**Chrome** [9] - 3418:8, 3418:15, 3418:21, 3418:23, 3419:3, 3419:7, 3419:19, 3419:23, 3422:8
**circuit** [1] - 3450:7
**circumstance** [2] - 3444:16, 3453:1
**circumstances** [2] - 3440:18, 3445:20
**cite** [1] - 3446:7
**civil** [2] - 3410:3, 3442:15
**claim** [1] - 3435:19
**clear** [13] - 3442:12, 3442:13, 3443:22, 3444:20, 3444:23, 3447:20, 3447:24, 3448:1, 3449:25, 3450:10, 3451:7, 3451:9, 3452:7
**clearly** [1] - 3431:4
**client** [2] - 3447:9, 3452:19
**clients** [8] - 3444:9, 3447:16, 3448:25, 3449:5, 3449:21, 3452:2, 3452:9, 3452:12
**close** [2] - 3427:17,

3437:1
**closely** [1] - 3453:17
**CMR** [1] - 3455:12
**Co** [2] - 3450:22, 3450:24
**co** [1] - 3441:18
**CO** [1] - 3409:5
**co-counsel** [1] - 3441:18
**Coast** [1] - 3441:2
**code** [1] - 3449:4
**colleague** [1] - 3418:2
**colleagues** [1] - 3415:10
**COLORADO** [1] - 3409:1
**Colorado** [4] - 3409:3, 3430:15, 3431:7, 3431:9
**COLUMBIA** [1] - 3408:1
**Columbus** [1] - 3436:2
**combination** [1] - 3419:7
**combined** [1] - 3429:19
**coming** [5] - 3415:19, 3434:15, 3439:24, 3454:4, 3454:5
**commercial** [1] - 3421:25
**commitments** [1] - 3436:17
**committed** [1] - 3432:17
**communication** [1] - 3449:20
**complain** [1] - 3413:15
**complete** [1] - 3455:6
**completely** [2] - 3430:23, 3435:10
**complex** [1] - 3413:3
**compounded** [1] - 3443:12
**compromise** [1] - 3414:12
**concept** [3] - 3415:21, 3419:5, 3419:6
**concern** [2] - 3452:9, 3452:11
**conclude** [1] - 3429:13
**concluded** [1] - 3441:23
**conditions** [1] - 3419:8
**confer** [1] - 3448:2
**conference** [2] - 3442:17, 3453:4

**conferences** [1] - 3430:7
**confidential** [8] - 3450:4, 3451:15, 3452:4, 3452:14, 3452:18, 3452:20, 3453:6
**confidentiality** [4] - 3432:24, 3433:4, 3448:2, 3452:6
**confirm** [2] - 3415:10, 3424:24
**confirmed** [2] - 3428:4, 3437:22
**confusing** [1] - 3426:15
**conjoining** [1] - 3438:1
**connection** [1] - 3414:5
**CONNOLLY** [1] - 3409:13
**consider** [3] - 3422:5, 3422:8, 3445:2
**considerations** [1] - 3447:3
**constitutes** [4] - 3452:3, 3452:4, 3452:12, 3455:5
**Constitution** [2] - 3409:18, 3455:13
**constructed** [1] - 3447:20
**Consumer** [1] - 3409:2
**contain** [2] - 3443:6, 3453:14
**contains** [1] - 3428:9
**context** [2] - 3415:1, 3424:12
**continue** [3] - 3427:3, 3438:13, 3439:17
**contracts** [1] - 3433:13
**control** [2] - 3437:11, 3438:8
**controlling** [1] - 3446:8
**controls** [1] - 3443:3
**conversation** [1] - 3426:21
**conversion** [2] - 3423:15, 3423:25
**conversions** [2] - 3426:16, 3427:21
**coordinate** [1] - 3439:1
**copy** [1] - 3429:22
**Correct** [3] - 3414:16, 3417:11, 3428:7

**correct** [45] - 3411:12, 3411:13, 3411:17, 3411:18, 3411:21, 3414:7, 3414:13, 3414:14, 3414:18, 3414:20, 3414:21, 3414:24, 3415:5, 3415:20, 3416:19, 3417:14, 3417:15, 3418:6, 3418:9, 3418:18, 3418:21, 3418:22, 3418:24, 3419:11, 3419:22, 3419:24, 3420:17, 3423:7, 3423:16, 3424:3, 3424:9, 3424:21, 3424:22, 3425:18, 3425:25, 3426:12, 3426:17, 3426:18, 3427:9, 3427:10, 3427:14, 3427:18, 3427:24, 3427:25, 3428:10
**correctly** [3] - 3418:10, 3418:13, 3419:16
**cost** [1] - 3419:1
**counsel** [6] - 3420:2, 3420:23, 3421:14, 3425:16, 3441:18, 3444:2
**counterpart** [1] - 3418:4
**couple** [5] - 3429:10, 3429:11, 3431:21, 3436:8, 3441:24
**course** [4] - 3425:11, 3434:7, 3442:1, 3446:19
**court** [12] - 3432:24, 3433:4, 3434:17, 3441:23, 3442:25, 3443:1, 3444:22, 3446:2, 3446:9, 3446:12, 3454:7
**COURT** [66] - 3408:1, 3410:7, 3410:12, 3410:15, 3410:17, 3410:20, 3415:12, 3416:3, 3420:2, 3427:2, 3428:15, 3428:22, 3428:24, 3429:2, 3429:6, 3429:9, 3429:18, 3429:23, 3430:25, 3431:11, 3431:13, 3431:24, 3432:3, 3432:11, 3435:3, 3435:15, 3436:13, 3438:16, 3439:1,

3439:9, 3440:5,
3440:12, 3440:17,
3440:21, 3441:1,
3441:5, 3441:12,
3441:17, 3441:19,
3441:21, 3444:15,
3444:20, 3445:13,
3445:22, 3445:25,
3446:6, 3447:15,
3447:24, 3449:8,
3449:12, 3449:23,
3449:25, 3450:14,
3450:17, 3450:23,
3451:3, 3451:8,
3452:19, 3452:24,
3453:1, 3453:10,
3453:12, 3454:1,
3454:10, 3454:17,
3455:2

**Court** [31] - 3409:17,
3409:17, 3429:21,
3429:22, 3430:1,
3432:16, 3433:9,
3433:14, 3433:24,
3434:6, 3434:23,
3434:25, 3435:1,
3435:17, 3436:1,
3438:5, 3438:12,
3439:21, 3441:4,
3441:9, 3444:23,
3445:1, 3445:2,
3446:13, 3449:6,
3450:22, 3450:24,
3452:13, 3455:12

**Court's** [4] - 3433:19,
3434:3, 3438:11,
3438:14

**court's** [2] - 3430:16,
3432:25

**courthouse** [2] -
3446:25, 3449:15

**Courthouse** [1] -
3409:18

**courtroom** [2] -
3422:18, 3446:25

**COURTROOM** [1] -
3410:2

**courts** [2] - 3443:1,
3446:3

**cover** [1] - 3432:21

**CRC** [1] - 3409:17

**creates** [2] - 3430:22,
3439:9

**credits** [1] - 3419:9

**Cross** [1] - 3456:4

**CROSS** [1] - 3410:21

**cross** [2] - 3438:4,
3438:7

**CROSS-
EXAMINATION** [1] -

3410:21

**CRR** [2] - 3409:17,
3455:12

**current** [2] - 3432:1,
3436:19

**customers** [2] -
3423:12, 3423:22

**cut** [2] - 3433:6,
3434:1

**CV** [1] - 3408:4

## D

**D.C** [4] - 3408:5,
3408:13, 3409:14,
3455:14

**Dahlin** [4] - 3413:10,
3424:16, 3424:19,
3428:3

**Dahlin's** [1] - 3424:20

**Dahlquist** [1] -
3408:19

**dare** [1] - 3453:20

**data** [2] - 3423:15,
3423:25

**date** [2] - 3420:20,
3432:8

**Dated** [1] - 3455:8

**dated** [2] - 3412:13,
3416:14

**daughter** [1] - 3411:1

**David** [1] - 3408:19

**David.dahlquist@
usdoj.gov** [1] - 3408:22

**day-to-day** [1] -
3411:11

**days** [14] - 3429:11,
3431:16, 3431:18,
3432:10, 3435:11,
3435:12, 3436:5,
3436:6, 3436:17,
3437:16, 3437:23,
3438:22

**DC** [2] - 3408:17,
3409:19

**dead** [1] - 3438:5

**deal** [1] - 3427:17

**death** [1] - 3434:22

**December** [1] -
3429:14

**decided** [2] - 3417:13,
3419:17

**decision** [5] - 3442:16,
3442:17, 3447:21,
3451:25, 3452:14

**decisions** [3] -
3445:20, 3445:22,
3445:25

**decrease** [1] - 3419:1

**dedicated** [1] - 3433:4

**deeply** [1] - 3434:2

**default** [3] - 3414:15,
3414:17

**Defendant** [3] -
3408:7, 3409:12,
3422:21

**defendant** [1] -
3445:11

**defendants** [1] -
3442:4

**defense** [1] - 3446:5

**delay** [4] - 3414:1,
3427:17, 3443:11,
3443:12

**Denver** [1] - 3409:5

**deny** [1] - 3454:2

**DEPARTMENT** [3] -
3408:12, 3408:15,
3409:1

**Department** [4] -
3408:19, 3430:19,
3431:17, 3442:21

**deposition** [1] -
3429:6

**DEPUTY** [1] - 3410:2

**described** [5] -
3413:5, 3414:12,
3415:16, 3415:23,
3454:3

**describing** [1] -
3412:25

**description** [1] -
3413:18

**design** [1] - 3426:7

**designation** [1] -
3448:8

**designed** [1] -
3416:22

**Detail** [1] - 3420:20

**determination** [1] -
3450:20

**determine** [1] -
3452:20

**detrimental** [1] -
3453:6

**development** [1] -
3411:22

**device** [13] - 3414:10,
3414:12, 3414:15,
3414:20, 3415:16,
3415:23, 3416:22,
3416:24, 3417:7,
3418:9, 3418:21,
3419:3, 3419:19

**devices** [2] - 3416:21,
3417:7

**Dickman** [2] -
3409:17, 3455:12

**DICKMAN** [1] - 3455:4

**dictates** [1] - 3446:9

**differ** [1] - 3421:9

**difference** [2] -
3436:23, 3436:24

**different** [6] - 3412:24,
3412:25, 3413:3,
3418:11, 3431:14,
3438:2

**difficult** [2] - 3442:10,
3452:18

**Dintzer** [4] - 3408:11,
3410:4, 3432:11,
3437:20

**DINTZER** [15] -
3429:16, 3429:21,
3430:1, 3432:14,
3435:5, 3435:9,
3438:1, 3438:23,
3439:8, 3439:20,
3440:14, 3440:25,
3441:3, 3441:8,
3454:12

**direct** [8] - 3412:9,
3413:9, 3414:25,
3415:6, 3415:16,
3417:20, 3420:10,
3420:19

**directed** [1] - 3420:23

**directly** [1] - 3424:19

**disagreement** [2] -
3451:24, 3452:3

**discipline** [1] - 3437:9

**disclosed** [1] - 3432:7

**disclosure** [1] -
3450:18

**discretion** [5] -
3442:14, 3443:9,
3449:7, 3449:9,
3450:11

**discuss** [1] - 3454:10

**discussed** [2] -
3412:16, 3452:17

**discussing** [1] -
3424:7

**discussion** [4] -
3410:11, 3411:9,
3420:16, 3426:16

**discussions** [2] -
3411:16, 3411:20

**disingenuous** [1] -
3427:13

**dispute** [2] - 3451:3,
3451:4

**disruption** [1] -
3449:19

**DISTRICT** [3] - 3408:1,
3408:1, 3408:10

**document** [15] -
3414:8, 3415:11,
3416:10, 3417:12,
3422:16, 3425:2,

3461

3425:11, 3448:12, 3448:18, 3451:10, 3451:11, 3451:12, 3451:13, 3453:23

**documents** [8] - 3443:5, 3444:12, 3445:4, 3445:5, 3447:17, 3448:15, 3448:21, 3451:1

**DoJ** [5] - 3410:4, 3436:7, 3437:21, 3447:21, 3454:12

**DOJ** [4] - 3408:11, 3429:13, 3431:5, 3435:19

**done** [15] - 3426:21, 3427:3, 3430:11, 3430:15, 3432:5, 3436:10, 3439:16, 3442:11, 3442:12, 3446:14, 3446:22, 3446:23, 3454:1, 3454:15

**doubt** [1] - 3447:6

**down** [6] - 3412:20, 3420:22, 3425:9, 3425:11, 3427:2, 3452:2

**draw** [1] - 3445:17

**DuckDuckGo** [1] - 3445:16

**duo** [1] - 3419:17

**Duo** [12] - 3414:10, 3415:15, 3415:16, 3416:23, 3417:13, 3418:5, 3421:15, 3421:19, 3421:25, 3422:1, 3422:6, 3422:9

**duplicative** [2] - 3433:10, 3435:20

**during** [3] - 3413:4, 3437:21, 3446:14

**DX2013** [4] - 3412:1, 3412:6, 3415:10, 3422:16

**dX2013......................
..........................3415**
[1] - 3456:8

**DX452** [1] - 3420:9

**DX535** [2] - 3417:16, 3428:18

**dX535......................
......................3428** [1]
- 3456:7

## E

**early** [4] - 3437:13, 3439:6, 3440:6, 3442:2

**earn** [1] - 3419:9

**economic** [4] - 3414:25, 3415:3, 3415:7, 3419:9

**edge** [1] - 3414:15

**Eduardo** [4] - 3424:23, 3425:4, 3427:11, 3428:5

**EEOC** [3] - 3445:23, 3446:7, 3446:8

**effectively** [1] - 3419:14

**efficiently** [1] - 3436:11

**effort** [3] - 3443:24, 3448:3, 3448:5

**efforts** [1] - 3447:7

**eight** [3] - 3431:18, 3432:10, 3436:5

**either** [3] - 3431:1, 3438:20, 3442:4

**elsewhere** [1] - 3443:2

**email** [19] - 3409:10, 3412:12, 3417:19, 3420:15, 3421:8, 3423:5, 3424:15, 3425:3, 3425:4, 3425:15, 3425:20, 3425:23, 3426:19, 3426:24, 3427:5, 3427:7, 3428:1, 3453:21

**Email** [6] - 3408:14, 3408:18, 3408:22, 3409:6, 3409:15, 3409:15

**emails** [4] - 3413:9, 3423:1, 3426:22, 3428:9

**employee** [1] - 3424:11

**end** [9] - 3420:22, 3429:4, 3429:20, 3430:14, 3430:21, 3430:23, 3437:20, 3439:3, 3446:15

**ended** [1] - 3432:15

**ending** [1] - 3431:1

**engine** [1] - 3414:17

**engineering** [1] - 3424:6

**ensure** [6] - 3444:12, 3447:1, 3448:5, 3448:13, 3451:20, 3453:13

**ensuring** [4] - 3443:3, 3443:9, 3447:2, 3447:3

**entered** [1] - 3429:21

**entirety** [2] - 3442:13, 3445:5

**equities** [1] - 3449:1

**escalation** [1] - 3414:5

**especially** [2] - 3434:7, 3440:2

**essentially** [3] - 3419:14, 3439:10, 3439:13

**established** [1] - 3452:5

**estimate** [2] - 3431:1, 3432:21

**estimated** [1] - 3438:17

**estimation** [1] - 3436:20

**et** [3] - 3408:3, 3410:3, 3439:5

**Europe** [6] - 3417:13, 3418:5, 3418:7, 3418:11, 3418:17, 3419:3

**European** [1] - 3419:17

**evening** [3] - 3410:17, 3412:21, 3412:24

**event** [1] - 3436:16

**evidence** [3] - 3415:10, 3444:17, 3445:1

**exact** [1] - 3415:19

**exactly** [3] - 3432:19, 3434:12, 3451:18

**EXAMINATION** [3] - 3410:21, 3420:4, 3422:14

**Examination** [3] - 3456:4, 3456:4, 3456:5

**example** [1] - 3449:16

**except** [1] - 3441:6

**exceptions** [1] - 3446:13

**excerpt** [2] - 3429:5, 3429:6

**exchanges** [1] - 3430:18

**excuse** [3] - 3423:20, 3429:14, 3453:9

**executives** [1] - 3415:23

**Exhibit** [1] - 3422:22

**exhibit** [4] - 3423:2, 3428:9, 3449:15

**exhibits** [11] - 3441:14, 3442:4, 3442:6, 3442:18, 3442:20, 3443:14, 3443:19, 3443:20, 3444:1, 3447:1

**EXHIBITS** [1] - 3456:6

**existing** [1] - 3420:25

**expect** [2] - 3413:15,

3445:17

**expected** [3] - 3429:19, 3438:19, 3440:22

**expecting** [1] - 3429:13

**expeditious** [2] - 3438:9, 3439:16

**experience** [4] - 3419:18, 3420:25, 3421:6, 3421:9

**expert** [5] - 3433:7, 3433:8, 3433:15, 3433:16, 3434:21

**experts** [6] - 3431:21, 3432:5, 3434:8, 3434:12, 3437:19, 3441:7

**extent** [2] - 3438:17, 3451:10

**external** [3] - 3415:20, 3415:22

**extra** [1] - 3433:5

**extremely** [1] - 3435:13

**eye** [1] - 3448:15

## F

**fact** [2] - 3426:7, 3434:12

**factors** [1] - 3451:17

**fairly** [2] - 3449:3, 3450:10

**fairness** [1] - 3439:13

**familiarize** [1] - 3417:24

**familiarizing** [1] - 3412:4

**family** [3] - 3434:22, 3434:23, 3440:9

**far** [3] - 3426:22, 3435:10, 3447:8

**feature** [1] - 3413:3

**fee** [9] - 3415:4, 3415:6, 3418:12, 3418:17, 3419:7, 3419:9, 3419:10, 3419:13, 3419:21

**felt** [1] - 3421:24

**few** [7] - 3412:19, 3413:9, 3417:23, 3420:3, 3421:14, 3431:16, 3437:15

**Fifth** [1] - 3408:16

**figure** [2] - 3432:12, 3438:22

**figured** [1] - 3431:22

**filed** [3] - 3441:13, 3441:22, 3444:3

3462

**filings** [1] - 3429:11
**final** [2] - 3451:25, 3453:13
**finally** [1] - 3413:22
**financial** [1] - 3451:15
**fine** [3] - 3437:16, 3438:18, 3448:8
**finish** [1] - 3454:15
**first** [17] - 3412:10, 3412:12, 3413:8, 3420:23, 3423:11, 3426:4, 3428:1, 3428:4, 3432:1, 3432:12, 3437:2, 3442:11, 3442:20, 3443:15, 3444:14, 3446:21, 3454:6
**fit** [1] - 3435:12
**five** [1] - 3436:23
**fixed** [1] - 3436:9
**flexibility** [1] - 3437:1
**flipping** [1] - 3428:11
**floodlight** [2] - 3423:14, 3423:25
**Floor** [1] - 3409:4
**focused** [1] - 3415:21
**folks** [1] - 3437:9
**follow** [2] - 3432:8, 3451:22
**followed** [2] - 3443:10, 3451:21
**following** [8] - 3425:19, 3430:22, 3432:9, 3436:21, 3437:3, 3438:18, 3445:7, 3447:25
**FOR** [1] - 3408:1
**foregoing** [1] - 3455:5
**forgive** [1] - 3444:15
**formally** [1] - 3428:18
**forth** [2] - 3423:10, 3428:11
**forward** [1] - 3432:13
**four** [5] - 3448:11, 3448:23, 3449:21, 3451:6, 3453:16
**four-hour** [3] - 3449:21, 3451:6, 3453:16
**fourth** [1] - 3416:16
**frankly** [1] - 3447:11
**free** [2] - 3418:16, 3418:23
**full** [5] - 3416:24, 3429:6, 3434:6, 3439:14, 3455:6
**fully** [1] - 3416:24
**fun** [1] - 3429:1
**fundamentally** [1] - 3437:24

**G**

**gambling** [1] - 3433:23
**gather** [1] - 3415:9
**general** [4] - 3411:7, 3413:17, 3414:11, 3419:6
**generally** [1] - 3446:7
**given** [8] - 3423:10, 3433:3, 3439:23, 3441:1, 3444:2, 3445:18, 3445:20, 3451:19
**glass** [1] - 3416:4
**Globe** [1] - 3450:22
**globe** [1] - 3450:24
**GMS** [1] - 3422:3
**goals** [2] - 3423:15, 3423:25
**Google** [64] - 3409:12, 3410:4, 3410:6, 3411:16, 3412:25, 3413:15, 3414:12, 3414:19, 3414:23, 3415:2, 3415:7, 3415:24, 3416:23, 3416:24, 3416:25, 3417:3, 3418:4, 3418:7, 3418:8, 3418:15, 3418:20, 3419:3, 3419:13, 3419:14, 3419:19, 3421:20, 3421:21, 3422:1, 3422:4, 3422:5, 3422:8, 3423:14, 3423:15, 3423:19, 3423:21, 3424:2, 3424:11, 3425:16, 3426:11, 3430:19, 3431:2, 3433:13, 3433:20, 3434:9, 3434:11, 3436:5, 3436:22, 3438:19, 3438:21, 3438:24, 3439:2, 3439:21, 3439:22, 3440:14, 3441:4, 3441:9, 3448:4, 3448:12, 3448:22, 3451:19, 3452:12, 3453:11
**GOOGLE** [1] - 3408:6
**Google's** [1] - 3439:10
**Google-approved** [1] - 3416:24
**government** [1] - 3449:17
**granted** [3] - 3430:5, 3446:5, 3448:22

**graphic** [1] - 3416:17
**grateful** [1] - 3454:16
**GREENBLUM** [14] - 3410:18, 3410:22, 3412:5, 3412:8, 3415:9, 3415:13, 3415:14, 3416:1, 3416:5, 3416:9, 3416:12, 3419:25, 3428:16, 3428:23
**Greenblum** [1] - 3409:12
**Greenblum.............. 3410** [1] - 3456:4
**ground** [1] - 3427:22
**group** [1] - 3416:21
**guess** [1] - 3444:8

**H**

**half** [2] - 3423:4, 3437:16
**hand** [2] - 3429:22, 3435:2
**handed** [1] - 3429:12
**hang** [1] - 3441:19
**happy** [2] - 3429:22, 3444:2
**hard** [2] - 3411:3, 3413:25
**hear** [3] - 3411:2, 3444:2, 3450:12
**heard** [1] - 3449:6
**hearing** [4] - 3411:1, 3433:10, 3447:22, 3454:8
**held** [4] - 3431:25, 3437:3, 3437:7, 3437:8
**help** [2] - 3439:20, 3440:3
**helpful** [1] - 3429:23
**hereby** [1] - 3455:4
**Hi** [1] - 3423:7
**Higgins** [1] - 3437:8
**highly** [1] - 3445:8
**hitting** [1] - 3410:25
**holding** [1] - 3427:22
**home** [3] - 3428:25, 3440:8, 3440:10
**honestly** [1] - 3434:19
**Honor** [44] - 3410:2, 3410:19, 3415:9, 3415:13, 3416:2, 3416:10, 3420:1, 3420:3, 3422:13, 3426:20, 3426:25, 3428:14, 3428:16, 3428:21, 3428:23, 3429:3, 3429:8, 3429:16, 3429:17,

3430:3, 3432:14, 3435:2, 3435:9, 3435:16, 3435:24, 3436:12, 3436:25, 3437:13, 3437:18, 3438:23, 3439:21, 3441:8, 3441:11, 3441:16, 3445:9, 3446:3, 3447:6, 3447:19, 3448:24, 3450:8, 3452:1, 3453:25, 3454:9, 3454:13
**HONORABLE** [1] - 3408:9
**Hope** [1] - 3410:17
**hopefully** [1] - 3439:5
**hour** [3] - 3449:21, 3451:6, 3453:16
**hours** [8] - 3413:23, 3431:22, 3432:22, 3432:24, 3434:19, 3448:11, 3448:23, 3449:14
**housekeeping** [1] - 3429:3

**I**

**idea** [1] - 3445:7
**ideally** [1] - 3440:17
**identifiable** [2] - 3443:7, 3448:17
**identified** [1] - 3411:19
**identifying** [2] - 3450:3, 3451:14
**II.E** [1] - 3430:1
**IL** [1] - 3408:21
**implement** [1] - 3424:7
**implementation** [1] - 3424:6
**importance** [1] - 3424:24
**important** [6] - 3426:15, 3427:12, 3434:5, 3435:13, 3438:8, 3454:5
**impose** [1] - 3437:9
**IN** [1] - 3408:1
**included** [3] - 3418:12, 3419:19, 3422:3
**includes** [2] - 3417:3, 3426:16
**including** [3] - 3419:23, 3432:23, 3447:1
**inconsistent** [1] -

3463

3430:23
**inconvenience** [2] - 3438:2, 3438:3
**Indacochea** [6] - 3425:5, 3425:17, 3425:23, 3427:5, 3427:8, 3427:20
**INDEX** [1] - 3456:1
**India** [1] - 3434:22
**indicated** [3] - 3411:10, 3431:19, 3437:21
**individual** [1] - 3446:24
**individuals** [1] - 3411:19
**information** [11] - 3443:7, 3443:9, 3448:6, 3448:17, 3450:3, 3450:4, 3451:14, 3451:15, 3452:4, 3452:20, 3453:6
**input** [1] - 3444:17
**integration** [1] - 3412:25
**intended** [1] - 3417:4
**interest** [8] - 3439:16, 3444:11, 3444:12, 3444:13, 3445:4, 3446:4, 3447:13, 3450:12
**internal** [1] - 3415:21
**internet** [1] - 3443:2
**interrupt** [1] - 3425:8
**intervene** [2] - 3441:14, 3454:2
**intervened** [1] - 3450:17
**intervenors** [1] - 3452:22
**intervention** [2] - 3444:14, 3445:15
**introduced** [2] - 3445:4, 3448:19
**invite** [1] - 3441:15
**involved** [2] - 3411:11, 3411:15
**involving** [1] - 3442:15
**issue** [10] - 3424:24, 3427:12, 3427:18, 3428:5, 3430:7, 3440:21, 3442:19, 3443:14, 3449:5, 3452:1
**issues** [5] - 3439:9, 3445:21, 3449:3, 3449:6, 3454:4
**itself** [1] - 3419:15

## J

**Janice** - 3409:17, 3455:12
**JANICE** [1] - 3455:4
**January** [3] - 3446:22, 3449:6, 3449:14
**Jerath** [2] - 3434:25, 3440:3
**Joan** [5] - 3411:16, 3413:25, 3423:7, 3423:9, 3427:12
**Joan's** [1] - 3413:18
**jobs** [1] - 3437:12
**Joel** [1] - 3441:18
**John** [3] - 3409:12, 3410:6, 3444:10
**Jon** - 3413:14
**jon.sallet@coag.gov** [1] - 3409:6
**jonathan** [1] - 3456:3
**Jonathan** [2] - 3409:1, 3410:5
**Jr** [1] - 3409:7
**jschmidtlein@wc.com** [1] - 3409:15
**JUDGE** [1] - 3408:10
**judge** [2] - 3446:24, 3449:14
**judgment** [1] - 3430:5, 3430:16
**judicial** [1] - 3442:16
**Judicial** [1] - 3409:3
**judiciary** [1] - 3442:14
**July** [5] - 3412:13, 3413:24, 3423:5, 3424:21, 3425:5
**JUSTICE** [2] - 3408:12, 3408:15
**Justice** [3] - 3408:19, 3431:17, 3442:21

## K

**keep** [4] - 3432:20, 3434:17, 3439:24, 3440:4
**Keepers** [1] - 3449:16
**keeping** [1] - 3440:3
**keeps** [1] - 3433:19
**Kenneth** [2] - 3408:11, 3410:4
**kenneth.dintzer2@usdoj.gov** [1] - 3408:14
**kind** [4] - 3420:22, 3437:14, 3442:15, 3451:17
**known** [1] - 3433:21
**Korea** [1] - 3421:9

## L

**large** [1] - 3447:11
**LARRABEE** [2] - 3425:8, 3425:12
**Larrabee** [3] - 3410:9, 3410:10, 3425:13
**LaSalle** [1] - 3408:20
**last** [12] - 3412:21, 3412:23, 3424:7, 3425:3, 3429:11, 3431:21, 3432:5, 3440:6, 3440:7, 3441:12, 3454:5
**late** [2] - 3413:15, 3413:18
**latter** [1] - 3427:20
**launch** [1] - 3417:13
**law** [7] - 3445:6, 3446:1, 3446:8, 3450:6, 3450:10, 3452:5
**LAW** [1] - 3409:1
**learned** [2] - 3442:20, 3443:15
**least** [13] - 3430:25, 3433:6, 3433:7, 3436:20, 3436:23, 3444:13, 3445:21, 3447:22, 3449:2, 3450:9, 3450:12, 3452:17
**leave** [2] - 3416:6, 3428:17
**leaving** [1] - 3416:4
**led** [1] - 3417:8
**length** [1] - 3439:19
**level** [1] - 3447:13
**levels** [1] - 3446:4
**license** [22] - 3414:24, 3415:4, 3415:6, 3418:5, 3418:7, 3418:12, 3418:13, 3418:16, 3418:17, 3418:20, 3419:2, 3419:7, 3419:9, 3419:10, 3419:13, 3419:21, 3421:17, 3421:19, 3421:20, 3421:21, 3422:2
**licensed** [1] - 3418:10
**lieu** [1] - 3413:2
**light** [2] - 3430:16, 3431:16
**likely** [3] - 3441:2, 3445:1
**line** [9] - 3433:25, 3439:2, 3442:3, 3442:9, 3442:15, 3444:8, 3445:17,

3451:20, 3451:22
**lined** [2] - 3430:14, 3438:6
**lines** [1] - 3432:25
**list** [3] - 3430:8, 3432:18, 3433:21
**LLC** [2] - 3408:6, 3410:4
**LLP** [2] - 3409:8, 3409:13
**longstanding** [3] - 3440:8, 3440:9, 3440:13
**look** [10] - 3412:10, 3412:11, 3416:16, 3422:16, 3422:21, 3431:4, 3436:7, 3436:13, 3452:19
**looked** [3] - 3417:20, 3425:15, 3453:17
**looking** [6] - 3423:11, 3428:11, 3435:24, 3436:14, 3445:11, 3448:16
**looks** [2] - 3429:13, 3436:19
**lost** [1] - 3425:21
**loud** [1] - 3421:3
**love** [1] - 3415:17

## M

**MADA** [3] - 3421:25, 3422:2, 3422:3
**magnifying** [1] - 3416:4
**magnitude** [1] - 3436:11
**manner** [1] - 3439:17
**marketing** [2] - 3414:22, 3415:22
**material** [2] - 3450:3, 3451:17
**materials** [1] - 3446:11
**matter** [2] - 3429:4, 3441:12
**Meagan** - 3408:15
**meagan.bellshaw@usdoj.gov** [1] - 3408:18
**mean** [12] - 3421:19, 3432:22, 3432:25, 3434:19, 3436:13, 3436:25, 3437:2, 3437:7, 3439:21, 3445:5, 3445:25, 3452:16
**meaning** - 3419:18
**means** [2] - 3416:23, 3427:22
**Megan** [1] - 3420:7

3464

**MEHTA** [1] - 3408:9
**member** [1] - 3424:20
**mentioned** [2] -
3411:14, 3414:19
**mess** [1] - 3437:10
**Microphone** [1] -
3420:8
**microphone** [2] -
3410:25, 3422:17
**Microsoft** [20] -
3411:11, 3411:19,
3411:23, 3412:17,
3413:4, 3414:13,
3414:23, 3415:17,
3415:23, 3415:24,
3416:25, 3417:7,
3417:10, 3417:13,
3418:7, 3419:1,
3419:17, 3421:20,
3421:24, 3445:16
**Microsoft'** [1] -
3416:23
**Microsoft's** [2] -
3416:17, 3416:21
**might** [3] - 3414:1,
3452:10
**mince** [1] - 3431:5
**mind** [1] - 3431:8
**minus** [1] - 3434:19
**minute** [1] - 3454:6
**minutes** [4] - 3425:15,
3425:16, 3425:19,
3429:10
**misread** [1] - 3423:20
**Miss** [2] - 3412:15,
3441:5
**Mobile** [1] - 3419:14
**modified** [1] - 3448:14
**moment** [2] - 3410:9,
3421:15
**Monday** [2] - 3420:21,
3454:18
**month** [1] - 3437:14
**months** [1] - 3412:16
**morning** [8] - 3410:2,
3410:7, 3410:14,
3410:15, 3410:18,
3410:23, 3420:6,
3454:7
**most** [1] - 3426:15
**motion** [10] - 3441:13,
3441:22, 3441:23,
3444:3, 3444:7,
3445:10, 3445:14,
3447:19, 3454:2,
3454:8
**motions** [1] - 3446:5
**move** [3] - 3428:18,
3439:7
**moved** [1] - 3437:20

**moving** [3] - 3416:9,
3436:11, 3437:24
**MR** [80] - 3410:18,
3410:22, 3412:5,
3412:7, 3412:8,
3415:9, 3415:13,
3415:14, 3416:1,
3416:5, 3416:9,
3416:12, 3419:25,
3422:15, 3425:8,
3425:10, 3425:12,
3425:13, 3425:14,
3426:20, 3426:25,
3427:4, 3428:13,
3428:16, 3428:23,
3429:16, 3429:21,
3430:1, 3430:3,
3431:9, 3431:12,
3431:18, 3432:2,
3432:4, 3432:14,
3435:5, 3435:6,
3435:9, 3435:16,
3436:25, 3437:18,
3438:1, 3438:23,
3439:8, 3439:20,
3440:6, 3440:14,
3440:20, 3440:25,
3441:3, 3441:8,
3441:16, 3441:18,
3441:20, 3444:6,
3444:19, 3445:9,
3445:18, 3445:23,
3446:2, 3447:6,
3447:19, 3448:24,
3449:9, 3449:19,
3449:24, 3450:8,
3450:16, 3450:21,
3450:24, 3451:4,
3452:1, 3452:22,
3452:25, 3453:3,
3453:11, 3453:25,
3454:8, 3454:12,
3454:14
**MS** [6] - 3420:3,
3420:5, 3422:11,
3428:21, 3429:3,
3429:8
  **multiple** [1] - 3437:2
**must** [2] - 3422:5,
3422:8
  **must-have** [2] -
3422:5, 3422:8

**N**

**N.W** [1] - 3455:13
**name** [1] - 3441:17
**narrowed** [2] - 3433:9,
3445:10
**National** [1] - 3445:23

**naturally** [1] - 3443:11
**nature** [1] - 3447:11
**necessarily** [2] -
3451:7, 3452:7
**necessary** [1] -
3421:24
**need** [10] - 3422:19,
3430:7, 3433:12,
3433:13, 3437:9,
3439:18, 3440:1,
3440:16, 3451:8,
3454:10
  **needs** [1] - 3434:6
**negative** [1] - 3452:15
**negotiate** [1] - 3418:5
**negotiated** [2] -
3433:12, 3443:18
**negotiations** [1] -
3411:12
**Nelson** [1] - 3420:15
**netted** [1] - 3418:16
**never** [3] - 3432:15,
3432:17, 3438:5
**New** [1] - 3409:9
**new** [3] - 3413:3,
3413:17, 3413:19
**Newspaper** [2] -
3450:22, 3450:24
**next** [19] - 3413:23,
3424:5, 3426:19,
3427:5, 3427:8,
3427:16, 3433:11,
3433:15, 3434:2,
3434:15, 3434:21,
3435:4, 3437:6,
3438:7, 3439:22,
3439:24, 3440:9,
3445:14
  **nice** [2] - 3410:17,
3454:18
**Niraj** [2] - 3417:19,
3418:2
**nobody** [1] - 3439:15
**nonconfidential** [1] -
3448:6
**nonparty** [1] - 3444:16
**note** [2] - 3412:20,
3412:23
  **notes** [1] - 3455:6
**nothing** [3] - 3414:23,
3438:9, 3454:14
**notwithstanding** [1] -
3413:18
**number** [2] - 3436:6,
3453:21
**numbered** [1] - 3426:1
**NW** [4] - 3408:12,
3408:16, 3409:13,
3409:18
**NY** [1] - 3409:9

**O**

**Oath** [1] - 3449:16
**objection** [4] - 3412:6,
3412:7, 3428:19,
3428:21
**objectives** [2] -
3423:13, 3423:23
**obligations** [1] -
3434:23
**obviously** [8] - 3417:3,
3426:21, 3434:1,
3435:13, 3437:1,
3438:7, 3439:24,
3449:3
  **occurred** [1] - 3430:5
**October** [10] -
3416:14, 3429:14,
3430:11, 3430:20,
3430:21, 3431:20,
3431:23, 3432:2,
3432:6, 3434:25
**OF** [6] - 3408:1,
3408:9, 3408:12,
3408:15, 3409:1,
3455:2
  **off-the-record** [1] -
3410:11
**offering** [1] - 3448:10
**office** [1] - 3420:21
**officer** [3] - 3416:18,
3416:21, 3417:9
**OFFICIAL** [1] - 3455:2
**Official** [2] - 3409:17,
3455:12
**offset** [2] - 3418:15,
3419:9
**offsets** [2] - 3419:1,
3419:21
**one** [24] - 3411:19,
3412:1, 3413:10,
3420:18, 3423:20,
3423:22, 3425:16,
3426:4, 3426:15,
3427:21, 3429:3,
3430:7, 3431:14,
3433:6, 3435:1,
3435:3, 3435:17,
3436:24, 3439:20,
3442:24, 3443:13,
3444:10, 3447:24
  **one-trial-day** [1] -
3436:24
**open** [1] - 3411:25
**operating** [3] -
3430:17, 3430:24,
3441:25
**opportunity** [5] -
3439:15, 3445:14,
3450:1, 3451:20,

3453:16
**optimal** [2] - 3440:18, 3440:19
**option** [3] - 3418:7, 3440:19, 3440:22
**order** [6] - 3422:2, 3429:21, 3429:24, 3432:25, 3436:10, 3452:14
**orders** [1] - 3446:24
**original** [4] - 3429:24, 3433:19, 3439:11, 3439:12
**originally** [4] - 3429:19, 3435:25, 3436:1, 3440:5
**otherwise** [4] - 3431:6, 3437:10, 3439:2, 3450:2
**ought** [1] - 3453:15
**ourselves** [1] - 3443:17
**out-of-town** [1] - 3436:16
**outside** [3] - 3410:13, 3444:13, 3449:2
**overbroad** [1] - 3452:10
**overstated** [1] - 3433:23
**own** [1] - 3421:21

## P

**p.m** [6] - 3412:13, 3413:10, 3423:5, 3424:21, 3425:5, 3425:23
**page** [14] - 3412:10, 3412:12, 3412:19, 3413:8, 3420:19, 3423:2, 3423:4, 3424:14, 3425:2, 3427:7, 3428:1, 3428:2, 3430:2, 3432:21
**paid** [2] - 3414:23, 3419:6
**Panay** [2] - 3416:22, 3417:6
**Panos** [2] - 3416:21, 3417:4
**paragraph** [7] - 3412:20, 3416:16, 3416:17, 3416:20, 3420:23, 3424:23, 3427:16
**paragraphs** [1] - 3412:20
**parens** [2] - 3428:5,

3428:6
**parity** [1] - 3426:11
**part** [4] - 3433:15, 3434:22, 3445:1, 3448:11
**participate** [6] - 3444:11, 3447:16, 3447:21, 3450:19, 3450:20, 3454:3
**particular** [4] - 3411:16, 3440:23, 3441:1, 3452:3
**particularly** [1] - 3434:20
**parties** [18] - 3437:7, 3440:25, 3441:3, 3443:16, 3443:18, 3446:17, 3447:7, 3448:2, 3448:4, 3448:22, 3449:10, 3450:5, 3450:17, 3451:19, 3452:18, 3453:17, 3454:16, 3454:18
**parties'** [2] - 3429:11, 3444:13
**party** [7] - 3434:15, 3442:5, 3445:7, 3448:12, 3450:11, 3450:19
**pass** [2] - 3419:25, 3429:5
**past** [2] - 3412:16, 3443:20
**Patel** [3] - 3417:19, 3418:2, 3418:4
**Patterson** [1] - 3409:8
**pause** [1] - 3417:25
**pay** [1] - 3421:21
**payment** [1] - 3414:25
**people** [4] - 3434:14, 3435:14, 3437:13, 3438:6
**people's** [2] - 3443:7, 3447:2
**percent** [1] - 3451:9
**period** [1] - 3449:21
**permit** [1] - 3442:14
**permitted** [1] - 3453:2
**person** [5] - 3417:6, 3438:7, 3441:4, 3441:10, 3444:10
**personal** [1] - 3447:2
**personally** [5] - 3422:7, 3422:10, 3448:17, 3450:2, 3451:14
**perspective** [1] - 3453:5
**phone** [1] - 3453:21

**picture** [1] - 3434:7
**pipeline** [1] - 3433:22
**place** [8] - 3442:5, 3442:24, 3443:3, 3443:8, 3444:4, 3444:8, 3444:14, 3447:25
**placement** [2] - 3419:2, 3419:4
**plaintiff** [2] - 3410:5, 3445:18
**Plaintiff** [2] - 3409:1, 3409:7
**plaintiff's** [1] - 3431:7
**plaintiffs** [11] - 3410:4, 3430:15, 3431:10, 3436:10, 3436:18, 3438:17, 3438:22, 3442:4, 3446:16, 3448:4, 3451:22
**Plaintiffs** [2] - 3408:4, 3408:11
**plaintiffs'** [3] - 3429:19, 3439:3, 3439:13
**plan** [2] - 3413:25, 3431:25
**planned** [2] - 3439:22, 3440:13
**plans** [1] - 3439:4
**play** [4] - 3442:7, 3448:9, 3451:4, 3451:23
**Play** [16] - 3414:19, 3414:24, 3415:4, 3418:8, 3418:18, 3418:20, 3419:2, 3419:10, 3419:13, 3421:14, 3421:17, 3421:20, 3421:21, 3421:24, 3422:3
**plus** [2] - 3416:25, 3434:18
**pluses** [1] - 3413:13
**point** [5] - 3411:3, 3431:3, 3432:17, 3443:15, 3449:5
**pointed** [1] - 3442:10
**points** [1] - 3420:3
**policy** [1] - 3442:14
**portions** [5] - 3444:24, 3444:25, 3447:17, 3451:12, 3451:13
**position** [1] - 3442:10
**possibility** [1] - 3433:7
**possible** [2] - 3436:11, 3439:17
**post** [2] - 3442:3, 3443:14

**posted** [1] - 3447:4
**posting** [3] - 3442:20, 3443:19, 3446:25
**potential** [1] - 3430:22
**potentially** [1] - 3427:17
**practice** [1] - 3442:23
**precise** [2] - 3430:25, 3438:4
**precisely** [1] - 3445:10
**prefer** [1] - 3441:3
**prefers** [1] - 3411:2
**prejudicial** [1] - 3434:2
**preload** [2] - 3422:1, 3422:4
**preloaded** [1] - 3416:25
**present** [1] - 3438:14
**presented** [12] - 3444:18, 3444:24, 3444:25, 3446:11, 3446:24, 3447:18, 3448:5, 3448:6, 3451:11, 3451:12, 3451:13, 3453:14
**presenting** [1] - 3438:10
**presided** [1] - 3449:13
**presumption** [2] - 3446:10, 3446:11
**pretrial** [1] - 3442:2
**pretty** [2] - 3433:11, 3450:25
**prevent** [1] - 3443:24
**previously** [2] - 3448:17, 3448:18
**primary** [1] - 3433:16
**privacy** [1] - 3447:2
**privately** [1] - 3443:7
**problem** [3] - 3435:8, 3437:17, 3442:22
**problems** [1] - 3430:23
**proceed** [1] - 3410:19
**proceeded** [1] - 3448:10
**proceeding** [1] - 3444:8
**proceedings** [1] - 3455:7
**process** [15] - 3411:12, 3413:4, 3414:5, 3442:6, 3442:23, 3443:8, 3443:16, 3443:18, 3444:11, 3446:25, 3447:25, 3448:11, 3453:7, 3453:19, 3454:3

**product** [4] - 3414:23, 3416:18, 3416:21, 3417:9
**professor** [1] - 3434:25
**Professor** [2] - 3433:16, 3440:3
**projected** [1] - 3433:2
**promise** [2] - 3429:2, 3434:18
**promised** [1] - 3430:8
**promotional** [2] - 3419:2, 3419:4
**propose** [1] - 3447:16
**proposed** [1] - 3433:18
**proposition** [1] - 3450:15
**Protection** [1] - 3409:2
**protection** [1] - 3448:10
**prove** [1] - 3452:15
**provide** [2] - 3443:21, 3444:16
**provided** [2] - 3415:3, 3415:7
**prudent** [1] - 3427:1
**public** [40] - 3442:3, 3442:6, 3442:9, 3442:15, 3442:19, 3442:24, 3443:10, 3443:14, 3443:19, 3443:25, 3444:17, 3444:21, 3444:22, 3445:3, 3445:6, 3445:21, 3446:4, 3446:9, 3446:12, 3447:8, 3447:10, 3447:12, 3447:13, 3449:1, 3449:11, 3449:17, 3450:2, 3450:9, 3450:12, 3450:18, 3450:20, 3450:25, 3451:5, 3451:10, 3451:16, 3452:16, 3453:15, 3453:22, 3454:12
**public's** [1] - 3444:12
**publication** [1] - 3416:13
**publicly** [6] - 3416:20, 3442:4, 3443:2, 3447:4, 3447:22, 3448:6
**publish** [1] - 3447:22
**pun** [1] - 3453:9
**pushback** [1] - 3447:22
**pushed** [3] - 3431:16,
3431:18, 3433:7
**put** [13] - 3412:11, 3414:8, 3417:12, 3420:18, 3430:14, 3433:24, 3434:1, 3438:21, 3442:5, 3443:2, 3443:10, 3444:4, 3451:10
**putting** [2] - 3418:8, 3437:21

**Q**

**questioning** [1] - 3435:20
**questions** [14] - 3410:23, 3411:5, 3411:6, 3411:8, 3411:14, 3414:9, 3414:10, 3417:23, 3419:25, 3421:14, 3422:11, 3426:23, 3428:13, 3435:20
**quite** [2] - 3434:19, 3453:17
**quote** [2] - 3415:17, 3415:24

**R**

**raise** [1] - 3454:4
**raised** [3] - 3430:6, 3446:21, 3452:9
**Ralph** [1] - 3409:3
**range** [1] - 3430:11
**rather** [1] - 3413:23
**read** [2] - 3421:3, 3421:4
**reading** [1] - 3426:22
**ready** [3] - 3410:7, 3410:12, 3432:6
**real** [1] - 3452:11
**realistic** [1] - 3436:18
**reality** [1] - 3436:22
**really** [6] - 3411:2, 3436:6, 3436:23, 3437:10, 3440:21, 3452:2
**realm** [1] - 3452:6
**reason** [6] - 3439:23, 3440:1, 3440:24, 3443:4, 3443:5, 3446:23
**reasons** [1] - 3442:24
**receive** [1] - 3418:15
**received** [1] - 3418:2
**recognized** [1] - 3437:13
**recognizing** [1] - 3413:25
**recollection** [1] - 3416:11
**recommendation** [1] - 3413:24
**record** [5] - 3410:11, 3444:25, 3450:1, 3451:20, 3453:16
**records** [14] - 3442:24, 3442:25, 3443:1, 3444:21, 3444:22, 3444:24, 3444:25, 3445:6, 3445:15, 3446:9, 3446:12, 3448:2, 3450:18, 3453:7
**redacted** [3] - 3425:10, 3448:18, 3450:6
**redactions** [1] - 3450:13
**rEDIRECT** [1] - 3422:14
**REDIRECT** [1] - 3420:4
**Redirect** [2] - 3456:4, 3456:5
**reference** [1] - 3421:6
**referring** [3] - 3425:21, 3445:22, 3450:21
**refinement** [2] - 3413:16, 3413:19
**reflect** [1] - 3435:1
**refresh** [1] - 3416:10
**refused** [1] - 3438:4
**regarding** [2] - 3433:16, 3445:15
**relationship** [5] - 3415:2, 3415:8, 3445:11, 3445:16, 3452:8
**relative** [1] - 3429:18
**relatively** [1] - 3419:4
**released** [1] - 3448:15
**relevant** [1] - 3451:13
**rely** [1] - 3452:13
**remember** [11] - 3411:7, 3415:19, 3418:10, 3418:12, 3419:4, 3419:5, 3419:8, 3419:15, 3421:11, 3437:8
**remind** [1] - 3429:18
**reminds** [1] - 3436:16
**remote** [1] - 3440:19
**remove** [1] - 3450:1
**rephrase** [1] - 3450:10
**reported** [4] - 3413:20, 3414:4, 3416:20, 3424:19
**Reporter** [3] -
3409:17, 3409:17, 3455:12
**REPORTER** [1] - 3455:2
**represent** [1] - 3444:9
**represented** [1] - 3444:13
**represents** [1] - 3450:12
**request** [7] - 3426:5, 3442:2, 3442:3, 3443:13, 3448:22, 3450:18, 3454:2
**requested** [2] - 3413:4, 3446:16
**require** [1] - 3440:18
**requirements** [2] - 3419:6, 3422:3
**rescheduled** [1] - 3438:21
**respect** [6] - 3441:14, 3442:9, 3442:18, 3446:22, 3450:8, 3452:16
**responds** [2] - 3426:19, 3427:20
**response** [1] - 3411:14
**responsible** [1] - 3417:6
**review** [3] - 3448:12, 3451:20, 3453:16
**reviewed** [1] - 3428:10
**revised** [1] - 3430:8
**risk** [1] - 3427:22
**RMR** [1] - 3409:17
**role** [1] - 3414:5
**Room** [2] - 3409:18, 3455:13
**ruling** [1] - 3430:16
**run** [1] - 3427:21

**S**

**SA306** [1] - 3423:13
**SA360** [12] - 3411:5, 3411:9, 3412:17, 3413:1, 3413:2, 3414:6, 3423:11, 3423:14, 3423:22, 3423:23, 3423:24, 3426:5
**safe** [1] - 3428:25
**Sallet** [5] - 3409:1, 3410:5, 3410:24, 3411:5, 3411:15
**SALLET** [8] - 3412:7, 3422:15, 3425:10, 3425:13, 3425:14, 3426:25, 3427:4,

3428:13

**Sallet...............3422**
[1] - 3456:5
  **saw** [1] - 3432:19
  **schedule** [21] -
3429:10, 3429:12,
3431:12, 3431:15,
3432:16, 3433:2,
3433:18, 3433:19,
3434:24, 3435:25,
3436:8, 3436:14,
3436:19, 3437:25,
3438:13, 3438:17,
3439:11, 3439:12,
3439:24, 3440:2,
3440:4
  **scheduled** [7] -
3430:12, 3432:1,
3434:21, 3435:4,
3439:25, 3440:5,
3440:22
  **schedules** [1] -
3430:13
  **scheduling** [1] -
3434:20
  **Schmidtlein** [4] -
3409:12, 3410:6,
3432:15, 3438:1
  **SCHMIDTLEIN** [12] -
3426:20, 3430:3,
3431:9, 3431:12,
3431:18, 3432:2,
3432:4, 3435:6,
3436:25, 3440:6,
3440:20, 3454:14
  **Schweppe** [1] -
3444:10
  **scope** [1] - 3452:7
  **screen** [2] - 3412:11,
3420:18
  **script** [1] - 3441:25
  **sealed** [1] - 3451:1
  **Search** [10] - 3417:3,
3418:21, 3418:23,
3419:3, 3419:7,
3419:19, 3419:23,
3422:1, 3422:4, 3422:5
  **search** [1] - 3414:17,
3418:8, 3435:18
  **seat** [1] - 3441:22
  **second** [11] - 3423:18,
3424:23, 3426:10,
3427:7, 3430:2,
3435:4, 3443:5,
3453:8, 3453:12,
3453:18
  **secret** [2] - 3452:4,
3452:6
  **secrets** [3] - 3449:4,
3450:4, 3451:15

**Section** [1] - 3409:2
  **see** [24] - 3412:13,
3412:17, 3413:5,
3413:10, 3413:16,
3413:20, 3414:2,
3416:14, 3416:17,
3421:1, 3421:6,
3422:24, 3423:4,
3423:8, 3425:5,
3425:20, 3426:2,
3430:1, 3434:6,
3434:24, 3439:21,
3441:4, 3441:23,
3454:18
  **seek** [1] - 3451:1
  **seeking** [1] - 3444:3
  **seeped** [1] - 3453:6
  **sees** [1] - 3441:10
  **select** [2] - 3423:12,
3423:22
  **sell** [1] - 3418:5
  **seminal** [1] - 3445:19
  **sends** [4] - 3424:15,
3425:4, 3425:23,
3427:5
  **sense** [1] - 3442:10
  **sensitive** [2] - 3434:4,
3443:6
  **sent** [9] - 3423:13,
3423:15, 3423:23,
3423:25, 3424:2,
3428:2, 3437:5,
3440:8, 3440:10
  **sentence** [5] -
3420:24, 3421:3,
3421:4, 3424:5, 3428:4
  **separate** [2] - 3418:14,
3425:3
  **separately** [2] -
3418:13, 3418:23
  **September** [3] -
3408:5, 3432:7, 3455:8
  **services** [2] - 3418:15,
3419:15
  **Services** [2] - 3419:13,
3419:14
  **set** [3] - 3438:13,
3441:21, 3441:24
  **settled** [1] - 3450:25
  **Seventh** [1] - 3409:4
  **several** [2] - 3412:16,
3413:23
  **share** [1] - 3412:24
  **shifting** [1] - 3436:9
  **ship** [3] - 3418:14,
3418:15, 3419:17
  **shock** [1] - 3433:22
  **short** [1] - 3438:7
  **show** [1] - 3437:1
  **shown** [1] - 3420:9

**side** [2] - 3411:20,
3433:5
  **sides** [1] - 3439:14
  **sign** [3] - 3421:25,
3422:2, 3427:23
  **signaled** [1] - 3430:15
  **significant** [2] -
3428:5, 3434:5
  **simply** [4] - 3443:1,
3447:4, 3448:13,
3453:19
  **single** [3] - 3426:15,
3449:15
  **sit** [2] - 3427:2,
3436:15
  **sitting** [5] - 3436:1,
3436:3, 3436:4,
3436:6, 3437:14
  **six** [1] - 3436:23
  **six-day** [1] - 3436:23
  **slid** [1] - 3431:5
  **slipping** [1] - 3437:16
  **slips** [1] - 3437:15
  **slogan** [2] - 3415:16,
3415:20
  **slogans** [1] - 3415:22
  **slot** [2] - 3439:6,
3440:3
  **slotted** [1] - 3437:22
  **solution** [6] - 3423:14,
3423:16, 3423:19,
3423:21, 3423:24,
3424:1
  **sometimes** [2] -
3446:14, 3446:15
  **sorry** [11] - 3412:2,
3415:15, 3421:20,
3422:17, 3422:18,
3425:8, 3425:12,
3435:3, 3450:23,
3453:10
  **sort** [4] - 3411:11,
3419:5, 3434:16,
3452:15
  **sorts** [1] - 3430:22
  **sought** [1] - 3444:14
  **sounds** [1] - 3431:15
  **source** [1] - 3449:4
  **South** [1] - 3408:20
  **specific** [5] - 3415:21,
3419:5, 3441:5,
3452:13
  **specifically** [6] -
3415:25, 3419:8,
3423:22, 3445:23,
3450:16, 3450:21
  **specifics** [1] - 3411:7
  **spent** [1] - 3448:3
  **sphere** [1] - 3453:15
  **sponsored** [1] -

**3449:17**
  **St** [1] - 3409:13
  **stance** [1] - 3413:25
  **standalone** [1] -
3412:17
  **stands** [1] - 3450:14
  **start** [7] - 3410:8,
3430:21, 3432:10,
3436:2, 3436:3,
3436:21, 3443:13
  **started** [3] - 3410:12,
3430:24, 3443:19
  **starting** [4] - 3420:24,
3430:19, 3432:15,
3432:17
  **starts** [2] - 3423:7,
3427:11
  **state** [3] - 3442:7,
3448:9, 3451:23
  **state's** [1] - 3426:25
  **statement** [1] - 3441:6
  **states** [4] - 3410:5,
3429:13, 3430:10,
3435:17
  **STATES** [2] - 3408:1,
3408:10
  **States** [15] - 3408:2,
3409:1, 3409:7,
3409:18, 3410:3,
3414:23, 3415:5,
3418:11, 3419:18,
3420:7, 3421:9,
3421:18, 3421:22,
3435:14, 3446:24
  **status** [1] - 3430:7
  **stay** [1] - 3433:6
  **stayed** [1] - 3440:7
  **stenographic** [1] -
3455:6
  **store** [1] - 3419:15
  **Store** [15] - 3414:20,
3414:24, 3415:4,
3418:8, 3418:18,
3418:20, 3419:2,
3419:10, 3419:13,
3421:15, 3421:17,
3421:20, 3421:21,
3421:24, 3422:3
  **strategies** [2] -
3413:1, 3413:2
  **Street** [3] - 3408:12,
3408:16, 3408:20
  **stripped** [1] - 3451:14
  **strive** [1] - 3439:17
  **stuff** [1] - 3453:22
  **subsequent** [1] -
3430:18
  **subtly** [1] - 3418:11
  **success** [1] - 3421:25
  **suggests** [1] -

3468

3412:24
**suite** [2] - 3416:24,
3419:14
**Suite** [3] - 3408:16,
3408:20, 3409:9
**summary** [2] - 3430:5,
3430:16
**Superior** [2] -
3450:22, 3450:24
**support** [2] - 3412:16,
3413:1
**supposed** [3] -
3435:6, 3437:3, 3437:4
**Supreme** [1] - 3444:23
**surprise** [1] - 3426:7
**switched** [1] - 3430:4
**symbol** [1] - 3413:13
**syncing** [1] - 3424:23

## T

**table** [2] - 3441:21,
3441:24
**team** [7] - 3411:24,
3417:7, 3417:8,
3424:6, 3424:20,
3426:6
**Technica** [1] - 3416:14
**terms** [7] - 3415:22,
3439:19, 3443:20,
3443:22, 3444:3,
3444:17, 3449:14
**terrific** [1] - 3428:15
**test** [2] - 3424:7,
3426:7
**testified** [1] - 3435:7
**testify** [2] - 3434:21,
3438:20
**testimony** [6] -
3428:25, 3429:4,
3433:10, 3440:19,
3442:16, 3443:25
**thanking** [1] - 3416:7
**thayer** [2] - 3441:16
**THAYER** [26] -
3441:18, 3441:20,
3444:6, 3444:19,
3445:9, 3445:18,
3445:23, 3446:2,
3447:6, 3447:19,
3448:24, 3449:9,
3449:19, 3449:24,
3450:8, 3450:16,
3450:21, 3450:24,
3451:4, 3452:1,
3452:22, 3452:25,
3453:3, 3453:11,
3453:25, 3454:8
**Thayer** [2] - 3441:18,
3441:19

**THE** [71] - 3408:1,
3408:1, 3408:9,
3410:2, 3410:7,
3410:12, 3410:14,
3410:15, 3410:16,
3410:17, 3410:20,
3415:12, 3416:3,
3420:2, 3427:2,
3428:15, 3428:22,
3428:24, 3429:1,
3429:2, 3429:6,
3429:9, 3429:18,
3429:23, 3430:25,
3431:11, 3431:13,
3431:24, 3432:3,
3432:11, 3435:3,
3435:15, 3436:13,
3438:16, 3439:1,
3439:9, 3440:5,
3440:12, 3440:17,
3440:21, 3441:1,
3441:5, 3441:12,
3441:17, 3441:19,
3441:21, 3444:15,
3444:20, 3445:13,
3445:22, 3445:25,
3446:6, 3447:15,
3447:24, 3449:8,
3449:12, 3449:23,
3449:25, 3450:14,
3450:17, 3450:23,
3451:3, 3451:8,
3452:19, 3452:24,
3453:1, 3453:10,
3453:12, 3454:1,
3454:10, 3454:17
**theory** [1] - 3431:2
**therefore** [1] - 3442:5
**they've** [3] - 3432:18,
3433:21, 3439:23
**third** [12] - 3420:22,
3426:14, 3434:15,
3437:7, 3442:5,
3445:7, 3448:4,
3448:12, 3448:21,
3450:11, 3450:19,
3451:19
**third-party** [2] -
3434:15, 3445:7
**thoughts** [1] - 3432:12
**thread** [4] - 3413:14,
3413:22, 3423:10,
3425:3
**three** [1] - 3426:1
**Thursday** [1] - 3425:5
**timeframe** [1] - 3451:6
**timing** [1] - 3431:15
**Tinter** [16] - 3410:8,
3410:13, 3410:15,
3410:18, 3410:23,

3412:9, 3415:15,
3416:13, 3420:6,
3420:9, 3422:12,
3422:16, 3422:21,
3428:4, 3428:24,
3456:3
**Tinter's** [1] - 3429:4
**Tizen** [2] - 3420:16,
3420:23
**Today** [1] - 3423:11
**today** [2] - 3443:17,
3443:24
**together** [1] - 3416:22
**took** [3] - 3419:7,
3419:21, 3432:4
**top** [3] - 3427:8,
3428:2, 3439:18
**topic** [2] - 3411:17,
3414:11
**totally** [2] - 3413:17,
3447:20
**toward** [1] - 3448:16
**town** [1] - 3436:16
**track** [4] - 3425:21,
3432:20, 3439:10,
3439:14
**trade** [6] - 3415:1,
3449:3, 3450:4,
3451:15, 3452:4,
3452:6
**transcript** [2] - 3455:5,
3455:6
**TRANSCRIPT** [1] -
3408:9
**travel** [1] - 3441:1
**traveling** [1] - 3434:22
**travels** [1] - 3428:25
**TRIAL** [1] - 3408:9
**trial** [31] - 3426:22,
3430:18, 3430:24,
3434:5, 3436:24,
3438:2, 3440:9,
3442:1, 3442:3,
3442:7, 3442:11,
3442:13, 3443:13,
3444:18, 3444:24,
3445:1, 3445:3,
3445:4, 3446:9,
3446:15, 3448:5,
3448:9, 3448:10,
3448:14, 3448:19,
3451:11, 3451:12,
3451:13, 3452:8,
3453:14
**trials** [2] - 3442:15,
3449:14
**true** [4] - 3449:12,
3450:17, 3455:5,
3455:6
**trusting** [2] - 3451:21

**try** [1] - 3425:22
**trying** [1] - 3435:11
**turn** [4] - 3412:19,
3417:16, 3423:2,
3425:2
**two** [13] - 3431:19,
3431:21, 3432:5,
3434:8, 3435:16,
3436:20, 3437:18,
3437:19, 3440:7,
3442:24, 3448:15,
3450:5, 3451:14
**Tyler** [1] - 3409:8
**types** [2] - 3443:8,
3446:4
**typical** [1] - 3446:18

## U

**U.S** [3] - 3408:12,
3408:15, 3408:19
**under** [2] - 3420:23,
3436:19
**understood** [2] -
3432:25, 3438:23
**unfair** [1] - 3413:16
**unfolded** [2] - 3442:1,
3443:23
**unfortunately** [1] -
3438:3
**Union** [1] - 3419:17
**Unit** [1] - 3409:2
**United** [12] - 3409:18,
3410:3, 3414:23,
3415:5, 3418:11,
3419:18, 3420:7,
3421:9, 3421:18,
3421:22, 3435:14,
3446:24
**UNITED** [2] - 3408:1,
3408:10
**united** [1] - 3408:2
**unpack** [1] - 3418:17
**unusual** [1] - 3445:8
**up** [21] - 3410:9,
3411:25, 3413:22,
3416:6, 3426:19,
3429:5, 3429:14,
3429:22, 3430:14,
3431:1, 3431:22,
3435:2, 3435:19,
3435:21, 3436:18,
3438:6, 3442:16,
3443:16, 3444:5,
3444:6, 3454:15
**update** [1] - 3443:21
**usual** [2] - 3446:19,
3447:8

## V

**vacation** [3] - 3440:9, 3440:12, 3440:15
**value** [1] - 3415:7
**Varia** [2] - 3424:7, 3424:11
**versus** [2] - 3410:4, 3413:17
**veto** [5] - 3449:22, 3449:23, 3449:25, 3451:23, 3453:18
**vetted** [1] - 3453:8
**video** [1] - 3447:1
**violated** [1] - 3447:3
**vs** [1] - 3408:5

## W

**wait** [1] - 3446:15
**walking** [1] - 3438:11
**wants** [3] - 3431:17, 3439:15, 3445:15
**Washington** [6] - 3408:5, 3408:13, 3408:17, 3409:14, 3409:19, 3455:14
**wears** [1] - 3411:1
**Webb** [1] - 3409:8
**website** [2] - 3449:18, 3451:10
**week** [29] - 3429:13, 3430:21, 3430:22, 3431:20, 3433:11, 3433:15, 3434:2, 3434:15, 3434:21, 3434:25, 3435:4, 3435:6, 3436:4, 3436:21, 3436:23, 3437:2, 3437:4, 3437:6, 3437:7, 3437:16, 3439:22, 3439:24, 3440:5, 3440:6, 3440:7, 3440:9, 3442:11
**weekend** [2] - 3437:8, 3454:18
**weekends** [1] - 3440:7
**weeks** [1] - 3432:9
**weighed** [1] - 3448:25
**Weinstein** [22] - 3411:20, 3411:22, 3412:12, 3412:15, 3412:23, 3413:6, 3413:9, 3413:13, 3413:20, 3413:22, 3413:24, 3414:4, 3423:5, 3424:15, 3424:20, 3425:4, 3425:16, 3425:17,

3425:24, 3426:19, 3427:8, 3428:3
**welcome** [1] - 3410:15
**well-established** [1] - 3452:5
**West** [1] - 3441:2
**Wfcavanaugh@pbwt .com** [1] - 3409:10
**Whinston** [1] - 3433:17
**whole** [2] - 3421:3, 3421:4
**wholly** [1] - 3413:16
**William** [2] - 3409:7, 3410:5
**WILLIAMS** [1] - 3409:13
**WITNESS** [4] - 3410:14, 3410:16, 3429:1, 3456:2
**witness** [11] - 3416:1, 3420:1, 3428:17, 3430:8, 3432:1, 3432:18, 3434:11, 3438:19, 3438:21, 3440:22, 3442:15
**witness's** [1] - 3416:11
**witnesses** [30] - 3430:12, 3430:14, 3430:18, 3431:6, 3431:17, 3431:19, 3431:21, 3431:25, 3432:8, 3432:21, 3433:5, 3433:21, 3433:22, 3434:5, 3434:12, 3435:20, 3435:22, 3436:8, 3436:10, 3436:20, 3437:2, 3437:4, 3437:11, 3437:18, 3437:21, 3438:10, 3439:2, 3439:6, 3439:19, 3441:6
**word** [1] - 3432:4
**words** [4] - 3415:20, 3415:21, 3427:16, 3431:5
**works** [2] - 3411:24, 3446:7
**worth** [2] - 3427:21, 3427:22
**wrap** [3] - 3429:14, 3431:22, 3436:18
**write** [1] - 3418:4
**writes** [2] - 3412:15, 3425:17
**written** [1] - 3434:24
**wrote** [2] - 3412:23, 3413:23

## Y

**year** [1] - 3424:8
**yesterday** [9] - 3410:23, 3414:9, 3415:15, 3417:21, 3420:10, 3420:24, 3429:7, 3441:13, 3441:23
**York** [1] - 3409:9
**yourself** [2] - 3412:4, 3421:4

## Z

**zone** [4] - 3430:2, 3430:4, 3433:6
**zoo** [1] - 3417:1