IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

## JOINT STATUS REPORT

Pursuant to the Court's Order, ECF No. 1043, the Parties submit the following Joint Status Report regarding the status of discovery and preparation of Plaintiffs' Proposed Final Judgment. The Parties have been proceeding with discovery as ordered and request assistance from the Court on a limited number of discovery disputes identified below.

## I.    Status

### A.    Discovery

All Parties issued requests for production on September 26, 2024, the day fact discovery commenced. On October 10, the Parties exchanged responses and objections to requests for production. On October 15, the Parties met and conferred regarding the various requests for productions and responses and objections. On October 18, Plaintiffs issued a joint set of

interrogatories and a 30(b)(6) deposition notice to Google, as well as document subpoenas to six third parties.

As detailed below, the Parties have reached an impasse on several issues and respectfully request the Court's guidance to resolve these issues.

### B.       Preparation of Plaintiffs' Proposed Final Judgment

Plaintiffs have continued working towards the November 20 deadline to file their Proposed Final Judgment. As discussed at the September 6 status conference, Plaintiffs have interviewed, and continue to engage with, a variety of third parties including, among others, industry participants, customers, potential entrants, and advertisers. Hr'g Tr. at 10:21—11:7 (Sept. 6, 2024).

## II.       DOJ And Colorado Plaintiffs' Position Statement

Generative AI is changing how users interact with and access search. As the Court is aware, by the time the Court hears evidence related to remedies, it will have been almost three years since liability fact discovery closed. During this time, the features and services associated with Google's search product have continued to evolve, even as the harm related to Google's conduct continues. Since the close of fact discovery in 2022, artificial intelligence has become a notable search feature; so notable that at trial Google repeatedly touted the emergence of artificial intelligence as a check on its market power and anticompetitive conduct. As this Court found "AI cannot replace the fundamental building blocks of search, including web crawling, indexing, and ranking," *see* August 5, 2024 Mem. Op. (ECF No. 1033) at p. 163; however, without an appropriate remedy, Google can leverage its search dominance to maintain the status quo.; *see also* ¶ 114 ("AI has not supplanted the traditional ingredients that define general search….And it is not likely to do so anytime soon.").

After hearing from numerous witnesses, the Court in its liability determination concluded that "AI technologies have the potential to transform search" and can "advance[e] search quality." *See* Mem. Op. at ¶¶ 109–12 (citing testimony from Google executives including E. Reid (Trial Tr. at 8272) and P. Raghavan (Trial Tr. at 7403–05) as well as other market participants, such as S. Ramaswamy (Trial Tr. at 3781–83, 3696–97) and S. Nayak (Trial Tr. at 6341–42)). This potential for artificial intelligence to transform the user experience not only affects search quality but would also impact network effects across all levels of the search ecosystem—from crawling, to indexing, to search results, to the sale and display of advertisements. *See* Plaintiffs' Proposed Remedy Framework, ECF No. 1052 at 2.

Google itself views artificial intelligence as integrated with its general search and general search text advertisement products. As recently as September 20, 2024, Google's CEO Sundar Pichai stated that "part of what has helped us keep search above everyone else is by incorporating a lot of AI in how we do search." Bloomberg, *The David Rubenstein Show: Sundar Pichai* 5:11–5:19 (aired Oct. 10, 2024, from an interview recorded on Sept. 20, 2024), https://www.bloomberg.com/news/videos/2024-10-10/the-david-rubenstein-show-sundar-pichai-video [hereinafter Bloomberg Pichai Interview]. That is why it is essential to the forthcoming remedy proceedings to have discovery and an evidentiary record explaining how Google has, in the words of its own CEO, "incorporate[ed] a lot of AI" into search, and what future plans Google has for artificial intelligence and search. A full factual record is necessary for Plaintiffs and this Court to obtain a complete understanding of the factual landscape that exists today, against which a remedy will be imposed. Controlling law on remedies doctrine also teaches that obtaining a full understanding of the ways in which Google can and does integrate artificial intelligence into its general search engine are highly relevant to Plaintiffs' (and the Court's)

efforts to craft a comprehensive and unitary remedy that will "prevent future violations and eradicate existing evils." *United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001); *see also* Plaintiffs' Proposed Remedy Framework at 1–3 (citing cases).

With those market dynamics and legal framework in mind, Plaintiffs have engaged with Google to resolve discovery disputes (including those that concern artificial intelligence). Despite best efforts, several disputes remain. Plaintiffs therefore respectfully request the Court's guidance given the truncated schedule for remedies discovery in this phase of the litigation. The need for intervention at this early stage is particularly apt now as Google is resisting basic discovery in this new phase of the proceedings: namely, that it has been found to be liable for two violations of the Sherman Act and the Court is engaged in the important and consequential exercise of how to remedy these longstanding violations to unfetter the market for the benefit of the public. *See* Plaintiffs' Proposed Remedy Framework at p. 3.

For example, Google appears to take the position that discovery related to artificial intelligence is largely irrelevant to crafting an effective remedy. Google takes this position even though artificial intelligence was not the focus of discovery during liability (as Google did not bring generative AI to the forefront of search until 2024), fact discovery closed over two years ago, and, remarkably, Google itself affirmatively sought to elicit facts from multiple trial witnesses related to artificial intelligence to ward off a liability finding. *See*, *e.g.*, Mem. Op. at p. 161–63 ("finding that AI "has not significantly eroded barriers to entry"). Plaintiffs properly seek discovery on these issues related to Google's search product and seek the Court's guidance to resolve the existing disputes related to this discovery.

To the extent generative AI is as transformative a technology as industry-wide investments may suggest, any remedy must ensure there are no barriers to competition during the

next "paradigm shift" or "window" of opportunity for Google's potential search rivals. Trial Tr. 3489:3–3490:20 (Nadella (Microsoft)); *see also* Bloomberg Pichai Interview ("[T]he current moment around generative AI is what's captured people's imagination. [[W]e are incorporating that in search it in a deep way….I just feel like we are at very very early stages of what is probably the most profound shift in technology we will ever see as humanity.")[1]

For the Court's convenience, Plaintiffs have briefly summarized the disputes in four categories detailed below and will be prepared to further address each topic during the October 24 Status Hearing. These requests are critical to identification of the right remedial tools for the anticompetitive conduct at hand.

1.    **Scope of Artificial Intelligence and Gemini Discovery**: Plaintiffs' requests seek documents and information sufficient to show "current and future product development efforts related to generative artificial intelligence," *see* Plaintiffs' First Joint Request for Production of Documents at 5, Ex. A) [hereinafter Pl. Request], including documents related to the "integration of Google's generative artificial intelligence products (e.g. Gemini) into Google's general search products." (Pl. Request at 10). Google objects to these discovery requests and instead proposes a path forward that is counterproductive in at least two significant respects:

*First*, Google defines the term "Gemini" to include only large language models ("LLMs") that Google internally labels as "Gemini models." *See* Google's Responses and Objections at 3, Ex. B [hereinafter Google Response]. Google's position elevates form over substance. The completeness of the evidentiary record should not depend on something as transient and imprecise as an internal naming convention, whether "Gemini," "Bard," or some

---

[1] *See* Bloomberg; The David Rubenstein Show: Sundar Pichai aired October 10, 2024 at 5:19 (interview recorded on September 20, 2024). https://www.bloomberg.com/news/videos/2024-10-10/the-david-rubenstein-show-sundar-pichai-video (visited October 21, 2024).

other name that is not known outside of Google. The trial record proves this point. As this Court is aware, Google rebranded its Bard offering as Gemini in 2024. Mem. Op. at 41. Plaintiffs do not know whether future name changes are contemplated or if materials related to generative artificial intelligence products are only labeled as "Gemini," (or previously, "Bard") when those materials have reached a particular point of formality. This is why Google should be required to produce documents related to generative artificial intelligence products that relate to search notwithstanding any specific labeling, "Gemini" or otherwise. Plaintiffs are willing to engage with Google on a list of its various LLMs and generative AI products, including the purpose and use of each product, in an effort to potentially narrow the requests. However, it is premature and contrary to the purpose of discovery to draw artificial lines based on unknown labels.

*Second*, Google seeks to limit discovery into the company's generative artificial intelligence products to only those products that "have launched or [are] currently scheduled to launch," rather than Google's efforts into generative artificial intelligence as they relate to search. Google Response at 8, 21. All indications are that artificial intelligence is evolving rapidly and thus Google's "reasonable expectations" may be a moving target. However, the Court's remedy must be more durable than best laid plans for new technologies. Thus, Plaintiffs require discovery about this important innovative catalyst in the search market. Google's generative artificial intelligence plans will help the Court better understand how Google intends to integrate generative artificial intelligence into general search. *See* Pl. Request at 5, 10; Google Response at 8, 21. Plaintiffs respectfully propose that in response to Request 5 of Plaintiffs' First Joint RFP, Google produce documents sufficient to identify all of Google's generative artificial intelligence products related to search in development. In response to Request 24, Plaintiffs are willing to meet and confer with Google regarding the appropriate custodians.

2.      **Distribution of Artificial Intelligence Products on Smartphones**:  Plaintiffs
have requested documents related to the "distribution of Google's generative artificial
intelligence products" on "smartphones." Pl. Request at 10. Google refuses to produce any
documents in response to Plaintiffs' request on the basis that such documents are not relevant to
this matter. Google Response at 22. Google's position runs counter to both the Court's liability
opinion—which discusses the importance of generative artificial intelligence to search (Mem.
Op. at 40–41) and devices as a significant mode of distribution (Mem. Op. at 28–29) as well as
many of the company's recent public statements regarding the importance of artificial
intelligence as it relates to general search. *See, e.g.,* "Generative AI in Search:  Let Google do the
searching for you" ("Now, with generative AI, Search can do more than you ever
imagined….This is all made possible by a new Gemini model customized for Google Search. It
brings together Gemini's advanced capabilities — including multi-step reasoning, planning and
multimodality — with our best-in-class Search systems.")
(https://blog.google/products/search/generative-ai-google-search-may-2024/ (visited October 21,
2024).  Plaintiffs respectfully propose that, in response to Request 25, Google produce
documents from a set of relevant custodians so that the Parties can work together to further refine
this request.

3.      **Competitor Entry Into Search**:  Plaintiffs have requested a refresh of any
documents from the close of discovery in 2022 until the present related to "the possible entry of
Apple into general search," a topic that was discussed at trial, as well as potential entry from
other market participants. (Pl. Request 10–11; Mem. Op. at 103–104). Google refuses to produce
any refreshed documents, claiming that Plaintiffs' requests are duplicative and burdensome as
Plaintiffs made substantially similar requests during the liability phase. Pl. Request at 10; Google

Response at 19–20, 22–24. Plaintiffs' requests seek to refresh a category of documents that were relevant during the liability phase of this litigation, informed the Court's liability opinion (*see* Mem. Op. at 22) and are critical to crafting an effective remedy. One of the goals of the remedy process is to unfetter the market of Google's abuse of its monopoly power such that entry is possible in the future. (*See* Plaintiffs' Proposed Remedy Framework at 2). As a result, refreshed discovery from Google on the topic of competitor entry is highly relevant and important to designing a remedy in this matter. Plaintiffs respectfully request that, in response to Requests 23, 26, and 27, Google produce documents regarding potential entry by Apple and others created after the close of fact discovery in the liability phase.

    **4.**    **International Regulatory Filings:**  Google has engaged with international competition authorities about regulatory compliance and remedies for alleged unlawful conduct that is similar to the conduct raised in this litigation. Thus, the types and formats of remedies considered and/or implemented in other jurisdictions—and their effects on Google's business— are relevant to remedies. As a result, Plaintiffs requested detailed information from Google about the remedies considered around the world. (*See* Pl. Request at 4).

    In response, Google has agreed to produce only official filings to various international regulatory agencies, thus omitting documents that describe Google's internal analysis of the effects of possible remedies or laws against it. Pl. Request at 4; Google Response at 5–6. Obtaining access not only to the public filings, but also Google's own internal analysis about those remedies, will help Plaintiffs propose a remedy that will achieve the goal of restoring competition to the relevant United States markets. Plaintiffs respectfully propose that, in response to Request 3, Google produce documents from a set of relevant custodians. Plaintiffs also request a detailed privilege log for any withheld documents.

III.     **Google's Position Statement**

In response to Plaintiffs' September 26, 2024 Requests for Production, Google has agreed to conduct searches that are appropriately calibrated to this remedies discovery process.  With the exception of three requests addressed below (Nos. 23, 26, and 27) that improperly retread the same ground covered during the liability phase, Google will produce documents or data in response to each of the twenty-four remaining individual requests.  In some instances, Google will produce documents located by applying search terms to emails and other custodial records. In other instances, that is not an appropriate search methodology in view of the scope of the request and the compressed timeline for completing discovery, but Google nevertheless will produce documents sufficient to satisfy the request—whether in the form of voluminous regulatory submissions, executed contracts, or documents identified through targeted searches. Google made its first production today—consisting of more than 130 agreements responsive to Plaintiffs' Request No. 2—and will continue to make substantial productions in the days and weeks ahead.

With respect to each disputed request, as detailed below, Google respectfully asks the Court to deny Plaintiffs' attempt to secure more document discovery than is justified.

A.     **Request No. 3**

Plaintiffs' RFP No. 3 is a multi-part request for "all documents, including advocacy, proposals, studies, or analyses," relating to the "remedies, potential remedies, compliance, or contemplated or implemented product changes or modifications" in response to "*any* competition authority's action, investigation, enacted law or decision related to Google's general search and search ads products" *from 2014 to present* (emphasis added).  Google has agreed to produce its responses submitted to the European Commission relating to the 2022 Digital Markets Act ("DMA") Articles regarding (i) data sharing for Search and Search Ads (Article 6(11)); (ii) price

transparency for Search Ads and access to ad performance measuring tools (Articles 5(9), 5(10), 6(8)); and (iii) app uninstallation, changing defaults and choice screens (Article 6(3)), insofar as those submissions are directed to Google Search and Google Search Ads, and the workshop presentations to third parties and the European Commission for the Articles specified.  Those submissions contain hundreds of pages of detailed analyses of Google's views on the proposed rules, Google's proposed and actual compliance, and the effects—both contemplated and actual—of the rules imposed under the DMA.  Google has further agreed to produce the requested 2024 Commitment Plan submitted to the Japanese Fair Trade Commission.[2]

Plaintiffs demand that Google run custodial searches for responsive documents.  There is no sound basis for further discovery—and certainly no basis for a burdensome custodial collection and review—for the following reasons:

*RFP No. 3 is overbroad, unduly burdensome, and disproportionate to the needs of the remedies phase.*  RFP No. 3 is overbroad in seeking "all documents" created since 2014 in connection with regulatory inquiries and legislation around the world.  A custodial search for these documents would create substantial burden because it would implicate different custodians for different regulatory matters in different regions of the world, many of whom have little or nothing to do with the proceeding at hand.  Plaintiffs have failed to articulate why they need *any* documents beyond what Google has proposed to provide, let alone "all documents" as requested.

Moreover, Plaintiffs have failed to justify the burden of requiring Google to search for and produce its *internal* studies or analyses relating to foreign regulatory inquiries and legislation.  To be clear, Google has agreed to produce documents and data that will show the

---

[2] Google informed Plaintiffs that because the United Kingdom's Digital Markets Competition and Consumers Act has not come into effect, no firms have yet been designated, and no conduct requirements have been published, there are no documents to produce in response to subpart (e) of RFP No. 3.

real-world effects foreign legislation and court orders have had on Google's business.  For example, Google has agreed to produce choice screen data in response to RFP Nos. 4 and 8.  In addition, Google's responses to the European Commission regarding the DMA reflect Google's "studies or analyses" of the rules under the DMA, Google's proposed and actual compliance with the legislation, and the effects of the legislation.  Plaintiffs have not established the relevance of internal drafts and analyses nor provided adequate justification for custodial searches in view of the submissions Google has agreed to provide.

*The burden imposed by RFP No. 3 is especially high given the involvement of in-house and outside counsel in foreign investigatory and compliance work*.  Aspects of the request are overwhelmingly directed to materials that are subject to the attorney-client privilege or work-product doctrine.  In particular, Plaintiffs' request for Google's internal documents relating to its contemplated compliance with legislation and investigations squarely seeks documents created by or at the direction of lawyers who oversaw those efforts.  It would be unreasonable in the compressed discovery period for Google to conduct a large-scale privilege review of every internal analysis and compliance effort sought by Plaintiffs' request.

*RFP No. 3 is duplicative and cumulative.*  RFP No. 3's request for documents relating to the 2015 Russian FAS decision and the 2018 European Union Android Decision is duplicative and cumulative of documents produced during the liability phase and of the testimony presented through depositions and at trial.  For example, during the liability phase, Plaintiffs propounded requests for "all documents, including all projections, forecasts, reports, studies, or analyses, relating to the impacts of the (1) 2015 Russian FAS Decision, and (2) 201[8] European Union Android Decision, on Google's search and search advertising business," including "documents sufficient to show Google's strategic responses, both actual and contemplated, to the

aforementioned regulatory actions."  DOJ Second RFP No. 52.  And at trial, fact and expert witnesses testified about the impact of both of these decisions.  Accordingly, Google should not be compelled to produce any documents in response to RFP No. 3(a)-(b).

### B.    Request Nos. 5, 24, and 25

Plaintiffs have propounded several requests for production that relate to generative artificial intelligence ("GenAI").  Google has endeavored to accommodate Plaintiffs' requests, and the parties accordingly have reached agreement on several points.  However, a dispute remains as to Request Nos. 5, 24, and 25, given Plaintiffs' continued insistence on documents with respect to every usage, current or future, of any large language model at Google.[3]

Plaintiffs' Requests Nos. 5, 24, and 25 are closely related, with Request No. 25 the broadest articulation of the request on the subject.  Plaintiffs' Request No. 25 seeks, "[f]rom May 2022 to the present, … all documents analyzing, addressing or discussing the distribution of Google's generative artificial intelligence products (e.g., Gemini) …."[4]  The request extends far beyond those "matter[s] … relevant to [the] claim[s] [and] defense[s] and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  By its terms—including its definition of "Gemini" as every large language model ever developed, or to be developed by Google, including any usage of such a model in any Google product—Request No. 25 seeks discovery into *all* generative artificial intelligence products, whatever their purpose.

---

[3] The breadth of the requests arises, in part, from Plaintiffs' definition of "Gemini" in their Requests as *every* multimodal large language model developed by Google, present or future, including their usage in *any* Google product.

[4] Plaintiffs' request expressly includes "documents discussing or analyzing plans or potential plans for the preinstallation of Google's generative artificial intelligence products on smartphones, plans or potential plans to distribute Google's generative artificial intelligence products through Chrome, or enter into distribution agreements with OEMs for the distribution of generative artificial intelligence products."

Google is actively working to develop a range of generative artificial intelligence technologies, across a wide variety of product areas, many of which have nothing to do with Google Search or Google Search Ads.  To illustrate the breadth of Google's generative artificial intelligence efforts, earlier this month, Google researchers won the Nobel Prize in Chemistry for their work developing an AI system that predicts the 3D structure of proteins from their amino acid sequences.[5]  Google is also, for example, developing AI solutions as disparate as analyzing traffic data in Google Maps, translating languages on Pixel devices, suggesting drafts of email replies in Gmail, organizing photographs in Google Photos, and improving wildfire detection.  Plaintiffs cannot justify a request for custodial searches of *all* of Google's generative artificial intelligence technologies—whatever their functionality and intended use—as part of this remedies proceeding.

Plaintiffs served a separate request for all agreements that Google has entered with identified third parties[6] related to Google's Gemini application, and Google agreed to produce all responsive documents.  Google submits that approach appropriately balances Plaintiffs' need for discovery with the bounds set by Rule 26(b)(1), particularly in light of the case schedule.  At a minimum, however, Plaintiffs have come nowhere near discharging their "burden of establishing that the information sought in … RFP [No. 25] is relevant and proportional to the needs of the case," *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 6 (D.D.C. 2022), and so their request for broader discovery should be denied.

---

[5] *See, e.g.*, *Demis Hassabis & John Jumper awarded Nobel Prize in Chemistry*, Google DeepMind (Oct. 9, 2024), *available at* https://deepmind.google/discover/blog/demis-hassabis-john-jumper-awarded-nobel-prize-in-chemistry/.

[6] Those third parties (identified in Plaintiffs' Request No. 2) are Apple, Mozilla, Samsung, Motorola/Lenovo, AT&T, Verizon, T-Mobile, Xiaomi, Sony, and Huawei.

A similar issue remains with respect to the other two GenAI requests.  *First*, as modified in the conferral process, Request No. 5 seeks "all documents sufficient to identify all GenAI products under development," without regard to the extent of the product's development. Google submits that discovery should be limited to those generative artificial intelligence products and technologies (1) that have GenAI as their predominant feature and (2) that have reached a sufficient stage of development that Google has launched them or reasonably foresees doing so.  Plaintiffs have not articulated any relevance for discovery beyond what Google is providing.

*Second*, Plaintiffs' Request No. 24 seeks, "[f]rom May 2022 to the present, … all documents analyzing, addressing or discussing the integration of Google's generative artificial intelligence products (e.g., Gemini) into each of Google's general search, Chrome, Android or Google's Core Apps, including documents discussing how the integration of generative artificial intelligence impacts user behavior or affects competitors."  This request likewise seeks discovery that lies beyond Rule 26(b)(1)'s limits.  For example, Request No. 24 expressly seeks documents discussing the integration of generative artificial intelligence into products such as Gmail and YouTube (both "Core Apps"), even though neither application is so much as mentioned in Plaintiffs' Proposed Remedy Framework.  *See generally* Dkt. No. 1052.  Google therefore proposes (1) to produce documents sufficient to show the products and technologies related to GenAI that Google has launched or reasonably expects to launch with respect to each of Google's general search, Chrome, Android, or Google's Core Apps and (2) to conduct a custodial search for documents sufficient to show how GenAI has been incorporated into Search.

### C.  Request Nos. 23, 26, and 27

Google should not be compelled to produce documents in response to Request Nos. 23, 26, or 27 because each request is an "unreasonably cumulative or duplicative" attempt to conduct

discovery on subjects already addressed through liability-phase discovery.  Fed. R. Civ. P. 26(b)(2)(C).

Request No. 23 seeks "all documents addressing or discussing the possible entry of Apple into general search services or general search text advertising and efforts by Apple to crawl the web or otherwise index websites."[7]  Plaintiffs already conducted broad discovery concerning this same information during the liability phase.  For example, DOJ Plaintiffs' Second Request for Production No. 4 requested "[f]rom January 1, 2002 … all documents addressing or discussing … [t]he possible entry of Apple … into general search services … [or] general search text advertising" and "[e]fforts by Apple … to crawl the web or otherwise index websites."  Moreover, Apple witnesses such as John Giannandrea testified at trial about the company's activities and plans in these areas, and it is Apple that would be the source of information about Apple's "possible entry" into an alleged market or the extent of "efforts by Apple to crawl the web."  There is no sound justification for renewed document discovery on the issue during this compressed remedies proceeding given that Plaintiffs already received ample document discovery and testimony during the liability phase.

The same is true of Request No. 26, which seeks "[f]rom May 2022 to present … all documents discussing the potential impact of any terms (including payment terms) in Google's revenue share agreements or Mobile Application Distribution Agreements on the likelihood or ability of current or potential rivals entering or expanding in the general search services or general search text advertising markets."  During the liability phase, Plaintiffs conducted extensive discovery on this subject, including through requests such as DOJ Plaintiffs' Second

---

[7] The request does not specify a start date, but Plaintiffs clarified during the conferral process that they seek responsive documents since May 2022.

Request for Production No. 16, which sought "[f]rom January 1, 2007 … [a]ll documents addressing or discussing the impact … of application preinstallation, application placement, or preset defaults on devices." Plaintiffs also propounded requests for documents relating to the "purpose" and "effect" of RSAs and MADAs during the liability phase.  And the Court heard testimony on the subject from both Google witnesses and the parties to the agreements in question, including Apple, Mozilla, T-Mobile, Verizon, AT&T, and Motorola.  Again, Plaintiffs should not be permitted to conduct cumulative and duplicative discovery on top of the many years of documents and information already obtained from Google.

Request No. 27 likewise retreads the same ground by seeking "[f]rom May 2022 … all documents addressing or discussing the impact on Google Search usage if Google used alternatives to exclusive default agreements for search distribution."  Plaintiffs conducted extensive document discovery on the matter during the liability phase.  For example, DOJ Plaintiffs' Second Request for Production No. 28 requested for the period "[f]rom January 1, 2007… [a]ll documents addressing or discussing incremental revenue from search distribution deals" and "Google's rationale for entering into RSAs, including those agreements' expected effects on search market share."  The purported effects of the agreements and potential alternatives were also the subject of both fact and expert witness testimony throughout trial.  As with the other two requests referenced above, Plaintiffs seek discovery that is unreasonably cumulative and duplicative of the information already available to them—including through the production of millions of documents spanning more than a decade, and the testimony of more than 100 deponents and dozens of trial witnesses.

The justification for the requests offered by Plaintiffs during the conferral process is that they do not have documents from the last couple years because discovery ended in May 2022.

But Plaintiffs are not entitled to every last document addressing topics that have already been the subject of extensive discovery spanning a decade or more.  *See, e.g.*, *Donohoe v. Bonneville Int'l Corp.*, 602 F. Supp. 2d 1, 8-9 (D.D.C. 2009) (explaining that "[w]hile evidence of [a subject] may be admissible at trial, it does not follow that [the plaintiff] is entitled to all of his proposed discovery relating to [that subject]" because "[w]here such proposed discovery would be more burdensome then beneficial or merely cumulative of other relevant evidence, a court may properly limit such discovery").  Relatedly, Plaintiffs argued during the conferral process that the most recent documents responsive to these requests are important because Plaintiffs need to examine how competitive conditions have changed in what they now characterize as highly dynamic markets. That characterization flatly contradicts Plaintiffs' position at trial regarding the alleged markets and challenged agreements, and they should not be able to obtain cumulative discovery by backtracking on their positions on the merits.

Plaintiffs argued at the last status conference that they "need discovery to figure out what has Google done with these distribution contracts since the time … discovery closed," including "[w]hat do the contracts look like" and "[w]hat new contracts have they implemented."  Sept. 6, 2024 Hr'g Tr. 10:5-10.  Google has agreed to produce the requested distribution agreements entered since May 2022.  It is an entirely different matter, however, for Plaintiffs to seek additional burdensome document discovery on the purported effects of agreements that have been in place for years when those alleged effects were already the subject of extensive discovery.

Dated: October 21, 2024

Respectfully submitted,

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

*/s/ Karl E. Herrmann*

David E. Dahlquist
Adam T. Severt
Travis R. Chapman
Karl E. Herrmann (D.C. Bar #1022464)
Veronica N. Onyema (D.C. Bar #979040)
Ryan S. Struve (D.C. Bar #495406)

U.S. Department of Justice
Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 805-8563
David.Dahlquist@usdoj.gov
Adam.Severt@usdoj.gov

*Counsel for Plaintiff*
*United States of America*

By:     /s/ Christoper A. Knight
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Christopher A. Knight, Assistant Attorney
General
Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com
Christopher.Knight@myfloridalegal.com

*Counsel for Plaintiff State of Florida*


By:     /s/ Diamante Smith
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant Attorney
General
James Lloyd, Deputy Attorney General for
Civil Litigation
Ryan Baasch, Associate Deputy Attorney
General for Civil Litigation
Trevor Young, Deputy Chief, Antitrust
Division
Diamante Smith, Assistant Attorney General,
Antitrust Division
Office of the Attorney General, State of Texas
300 West 15th Street
Austin, Texas 78701
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*


By:     /s/ Carolyn D. Jeffries
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General
Brian Wang, Deputy Attorney General

Carolyn D. Jeffries, Deputy Attorney General
(DC Bar No. 1600843)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*


By:    */s/ Matthew M. Ford*
Matthew M. Ford
Arkansas Bar No. 2013180
Senior Assistant Attorney General
Office of the Arkansas Attorney General Tim
Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*


By:    */s/ Charles Thimmesch*
Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney General
Ronald J. Stay, Jr., Senior Assistant Attorney
General
Charles Thimmesch, Senior Assistant Attorney
General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*


By:    */s/ Jesse Moore*
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General

Office of the Attorney General, State of Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*


By:   */s/ Philip R. Heleringer*
Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the Office
of Consumer Protection
Philip R. Heleringer, Executive Director of the
Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive Director
of the Office of Consumer Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of
Kentucky*


By:   */s/ Patrick Voelker*
Liz Murrill, Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
voelkerp@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*


By:   */s/ Scott Mertens*
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909

MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*


By:___*/s/ Michael Schwalbert*_____
Michael Schwalbert
Missouri Bar No. 63229
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Counsel for Plaintiff State of Missouri*


By:___*/s/ Crystal Utley Secoy*_____
Lynn Fitch, Attorney General
Crystal Utley Secoy, Assistant Attorney General
Office of the Attorney General, State of Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Crystal.Utley@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*


By:___*/s/ Anna Schneider*___
Anna Schneider
Bureau Chief
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

23

By: ___*/s/ Mary Frances Jowers*___
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*


By: ___*/s/ Laura E. McFarlane*___
Joshua L. Kaul, Attorney General
Laura E. McFarlane, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
mcfarlanele@doj.state.wi.us

*Counsel for Plaintiff State of Wisconsin*

FOR PLAINTIFF STATE OF COLORADO

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann, DC Bar No. 1022365
(inactive)
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

FOR PLAINTIFF STATE OF NEBRASKA

MIKE HILGERS
Attorney General of Nebraska

Colin P. Snider, Assistant Attorney General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3840
E-Mail: Colin.Snider@nebraska.gov

William F. Cavanaugh, Jr.

PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

FOR PLAINTIFF STATE OF ARIZONA

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

FOR PLAINTIFF STATE OF IOWA

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

FOR PLAINTIFF STATE OF NEW YORK

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder

Michael D. Schwartz
Office of the Attorney General of New York
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

FOR PLAINTIFF STATE OF NORTH
CAROLINA

JOSHUA STEIN
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff State of North Carolina*

FOR PLAINTIFF STATE OF TENNESSEE

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Christopher Dunbar
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
Chris.Dunbar@ag.tn.gov
austin.ostiguy@ag.tn.gov

27

Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

FOR PLAINTIFF STATE OF UTAH

SEAN REYES
Attorney General of Utah

Matthew Michaloski
Marie W.L. Martin
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140830
Salt Lake City, Utah 84114
Telephone: (801) 440-9825
E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

FOR PLAINTIFF STATE OF ALASKA

TREGARRICK TAYLOR
Attorney General of Alaska

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

FOR PLAINTIFF STATE OF CONNECTICUT

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202

E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

FOR PLAINTIFF STATE OF DELAWARE

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 577-8924
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

FOR PLAINTIFF DISTRICT OF COLUMBIA

BRIAN SCHWALB
Attorney General of the District of Columbia

Elizabeth Gentry Arthur
Office of the Attorney General for the District of
Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

FOR PLAINTIFF TERRITORY OF GUAM

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org

*Counsel for Plaintiff Territory Guam*

FOR PLAINTIFF STATE OF HAWAI'I

ANNE E. LOPEZ
Attorney General of Hawai'i

Rodney I. Kimura
Department of the Attorney General, State of
Hawai'i Commerce & Economic Development
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawai'i*

FOR PLAINTIFF STATE OF IDAHO

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 334-4114
E-Mail:  John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF ILLINOIS

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov

Brian.yost@ilag.gov
Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

FOR PLAINTIFF STATE OF KANSAS

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

FOR PLAINTIFF STATE OF MAINE

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

FOR PLAINTIFF STATE OF MARYLAND

ANTHONY G. BROWN
Attorney General of Maryland

Schonette J. Walker
Gary Honick
Office of the Attorney General of Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
ghonick@oag.state.md.us

31

*Counsel for Plaintiff State of Maryland*

FOR PLAINTIFF COMMONWEALTH OF
MASSACHUSETTS

ANDREA CAMPBELL
Attorney General of Massachusetts

William T. Matlack
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
E-Mail: William.matlack@mass.gov

*Counsel for Plaintiff State of Massachusetts*

FOR PLAINTIFF STATE OF MINNESOTA

KEITH ELLISON
Attorney General of Minnesota

Zachary William Biesanz
Office of the Minnesota Attorney General
Consumer, Wage, and Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

FOR PLAINTIFF STATE OF NEVADA

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker
Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mnewman@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NEW
HAMPSHIRE

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New Hampshire*

FOR PLAINTIFF STATE OF NEW JERSEY

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

FOR PLAINTIFF STATE OF NEW MEXICO

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

FOR PLAINTIFF STATE OF NORTH
DAKOTA

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of the Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North Dakota*

FOR PLAINTIFF STATE OF OHIO

DAVID YOST
Attorney General of Ohio

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail: Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

FOR PLAINTIFF STATE OF OKLAHOMA

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson
Office of the Oklahoma Attorney General
313 NE 21st Street

34

Oklahoma City, OK 73105
Telephone: (405) 522-1014
E-Mail: Robert.carlson@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

FOR PLAINTIFF STATE OF OREGON

ELLEN ROSENBLUM
Attorney General of Oregon

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff State of Oregon*

FOR PLAINTIFF COMMONWEALTH OF
PENNSYLVANIA

MICHELLE HENRY
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

FOR PLAINTIFF TERRITORY OF PUERTO
RICO

DOMINGO EMANUELLI HERNANDEZ
Attorney General of Puerto Rico

Guarionex Diaz Martinez
Assistant Attorney General Antitrust Division

Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

FOR PLAINTIFF STATE OF RHODE ISLAND

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

FOR PLAINTIFF STATE OF SOUTH
DAKOTA

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

FOR PLAINTIFF STATE OF VERMONT

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609

Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov

*Counsel for Plaintiff State of Vermont*

FOR PLAINTIFF COMMONWEALTH OF
VIRGINIA

JASON S. MIYARES
Attorney General of Virginia

Tyler T. Henry
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

FOR PLAINTIFF STATE OF WASHINGTON

ROBERT FERGUSON
Attorney General of Washington

Amy Hanson
Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

FOR PLAINTIFF STATE OF WEST
VIRGINIA

PATRICK MORRISEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of West
Virginia
1900 Kanawha Boulevard
East Building 6, Suite 401
P.O. Box 1789

Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

FOR PLAINTIFF STATE OF WYOMING

BRIDGET HILL
Attorney General of Wyoming

Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-6397
E-Mail: amy.pauli@wyo.gov

*Counsel for Plaintiff State of Wyoming*