# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'**
**FIRST JOINT REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Google LLC ("Google") hereby submits these responses and objections to Plaintiffs' First Joint Request for Production of Documents to Defendant Google LLC (the "RFP"), dated September 26, 2024.

**GENERAL RESPONSES AND OBJECTIONS**

Google makes the following general objections to the RFP, which form a part of Google's response to each and every request, and are set forth here to avoid repetition and duplication.

1.      Google objects to the RFP to the extent that it seeks documents or information protected by the attorney-client privilege, the work product doctrine, common interest privilege

and/or any other applicable privilege or immunity. Regardless of whether privilege objections are specified for any given requests, Google will not produce privileged material. Google's responses and objections to the RFP are not intended to and do not waive any applicable privilege or protection.

2.      Google objects to the RFP to the extent that it purports to require Google to search for or produce documents, data, or information that are not in Google LLC's possession, custody, or control. Google will only search for and produce information and materials that are in its possession, custody, or control.

3.      Google objects to the RFP to the extent that it is unjustifiably duplicative of Plaintiffs' prior requests for production of documents or of discovery that already occurred during the liability phase of the litigation.

4.      These responses and objections and any documents or information produced are provided without waiver of any objections as to the competency, relevance, materiality, privileged status, or admissibility of any document or information as evidence.

Google expressly reserves the right to amend, revise, or supplement these responses and objections.  The general objections above are incorporated by reference as though fully set forth in each response of the Responses and Objections to Requests for Production below.

**OBJECTIONS TO THE INSTRUCTIONS AND DEFINITIONS**

1.      Given that Plaintiffs incorporated by reference their prior instructions and definitions, Google incorporates by reference all objections made to the instructions and definitions in Plaintiffs' prior requests for production of documents to Google issued on January 5, January 11, June 21, July 28, August 13, August 20, September 30, December 9, 2021, March 2, March 18, March 24, and March 31, 2022.

2.      Google objects to the definition of "Gemini" on the grounds that the phrase "a family of multimodal large language models developed by Google" is vague and ambiguous. Google will interpret the term "Gemini" as used in the RFP with respect to multimodal large language models ("MLLMs") as the MLLMs identified within Google as "Gemini" models. Google further objects to this definition as overly broad, unduly burdensome, and not proportional to the needs of this case on the grounds that the Gemini MLLMs are used in a variety of products that are irrelevant to this matter.

3.      Google objects to the definition of "Gemini access points" on the grounds that the phrase "capable of using or invoking Gemini" is vague and ambiguous. Google further objects to this definition as overly broad, unduly burdensome, and not proportional to the needs of this case as there are a variety of applications, software, and services that are capable of using or invoking Gemini that are irrelevant to this matter.

4.      Google objects to the definition of "Gemini interactions" on the grounds that the phrase "any interaction between a user and any product that incorporates Gemini" is vague and ambiguous. Google further objects to this definition as overly broad, unduly burdensome, and not proportional to the needs of this case as there are a variety of products that incorporate Gemini that are irrelevant to this matter.

5.      Google objects to the instructions and definitions as overly broad, unduly burdensome, and not proportional to the needs of this case because they purport to require Google, without any limitations "[u]nless otherwise specified," to produce "all documents" in its possession, custody, or control back to January 1, 2020.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

From May 2022 to the present, produce all minutes, recordings, summaries, or reports of meetings, whether formal or informal, of your company's (and each of its divisions' or subsidiaries') board of directors (including committees or subgroups), addressing or discussing:
   a. Search distribution;
   b. Competition, competitors, strategy, or market analysis in features, paid or unpaid, that appear on a Google SERP;
   c. Competition, competitors, strategy, or market analyses in generative artificial intelligence,
   d. Competition, competitors, strategy, or market analyses in search advertising; or
   e. Competition, competitors, strategy, or market analyses in digital advertising.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case.  This Request is overly broad and unduly burdensome because it purports to require Google to search for all "informal" board meeting "minutes, recordings, summaries, or reports" pertaining to broad topics covering much of Google's search, advertising, and generative artificial intelligence businesses.

Subject to and without waiving its objections, Google will produce one copy of non-privileged responsive minutes and formal reports of meetings of Alphabet's board of directors (including committees or subgroups) from May 2022 to the present.  Google states that it does not record such meetings.

### REQUEST FOR PRODUCTION NO. 2:

From May 2022 to the present, produce each of the following agreements between Google and Apple, Mozilla, Samsung, Motorola/Lenovo, AT&T, Verizon, T-Mobile, Xiaomi, Sony, or Huawei, including any amendments thereto:
   a. search revenue sharing agreements;
   b. go-to-market or mobile incentive agreements;
   c. Mobile Application Distribution Agreements, including regional variations, such as European Mobile Application Distribution Agreements;

    d.  Search European License Agreements;
    e.  Chrome European License Agreements;
    f.  Search and Chrome European Placement Agreements; and
    g.  any agreements related to Google's Gemini.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Google incorporates its general objections as though set forth fully herein. Google further

objects to this Request on the grounds that it seeks information not relevant to any party's claim

or defense, including insofar as it seeks "any agreements related to Google's Gemini" or any

agreements with counterparties that do not sell Android devices in the United States.

Subject to and without waiving the foregoing objections, Google will produce all final,

signed agreements responsive to this Request that are located following a reasonable search.

## REQUEST FOR PRODUCTION NO. 3:

From 2014 to the present, produce all documents, including advocacy, proposals, studies,
or analyses, relating to the remedies, potential remedies, compliance, or contemplated or
implemented product changes or modifications, in response to any competition authority's
action, investigation, enacted law or decision related to Google's general search and search ads
products, including software, such as Chrome, that facilitates general search queries. Documents
responsive to this request should include documents sufficient to show Google's strategic
responses, both actual and contemplated, to the aforementioned regulatory inquiries. These
regulatory inquiries include but are not limited to:
    a.  the EU's 2022 Digital Markets Act;
    b.  the 2015 Russian FAS Decision;
    c.  the 2017 European Union Android Decision, on Google's search and search
       advertising business;
    d.  The 2024 Commitment Plan submitted to the Japanese Fair Trade Commission;
    e.  The United Kingdom's Digital Markets Competition and Consumers Act

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Google incorporates its general objections as though set forth fully herein.  Google

objects to this Request as overly broad, unduly burdensome, and seeking information not

relevant to any party's claim or defense nor proportional to the needs of this case, including

because it would require Google to produce "all" documents relating to the "remedies, potential

remedies, compliance, or contemplated or implemented product changes or modifications" in response to virtually any form of governmental action worldwide.  Such governmental action encompasses a scope far broader than any of the conduct challenged here or any potential remedy.  Google further objects to the Request (including the requested timeframe) as overly broad, unduly burdensome, and seeking information not relevant to any party's claim or defense nor proportional to the needs of this case because it seeks documents that are cumulative of information that could have been or was requested during the liability phase of the litigation, including documents relating to the 2015 Russian FAS decision and the 2018 European Union Android Decision.  The matters encompassed by this Request relating to the 2015 Russian FAS decision and the 2018 European Union Android Decision were also the subject of deposition and trial testimony from numerous witnesses. A further request for "all documents" relating to these decisions is not proportional to the needs of this remedies proceeding.

Subject to and without waiving its objections, Google will produce (i) its submissions to the European Commission relating to the 2022 Digital Markets Act Articles 5(9), 5(10), 6(3), 6(8), and 6(11), insofar as those submissions are directed to Google Search and Google Search Ads and (ii) the 2024 Commitment Plan submitted to the Japanese Fair Trade Commission. Google responds that the United Kingdom's Digital Markets Competition and Consumers Act has not come into effect, no firms have yet been designated, and no conduct requirements have been published.  There are therefore no documents to produce in response to subpart (e) of this Request.

## REQUEST FOR PRODUCTION NO. 4:

From May 2022 to the present, for each month, separately for each EEA Country, produce data sufficient to show:
   a. The number of new Android phone activations;
   b. The number of choice screen activations;

c. The choice screen wave in which the month was included;
d. The number of choice screen selections;
e. The number of times each search engine appeared in each choice screen position;
f. The number of times each search engine was selected in aggregate and separately by its position on the choice screen (e.g., the number of times Google was selected when in the first position on choice screen, the number of times Google was selected when in the second position on choice screen);
g. For each search engine in total and also separately by its position in the choice screen (e.g., for Google in total, for when Google is in the first position, when Google is in the second position);
h. the number of searches performed in total; and
i. the number of searches performed through access points affected by the choice menu.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it seeks data on all activations for each carrier and OEM, by country, including the number of searches associated with each activation.

Subject to and without waiving its objections, Google will respond to this request by refreshing the data previously produced in response to Plaintiffs' Fourth RFP, Request 3. Consistent with the previously produced data, Google is not able to provide data responsive to subparts (g)-(i).

**REQUEST FOR PRODUCTION NO. 5:**

Produce documents sufficient to show all current and future product development efforts related to generative artificial intelligence products including plans related to the introduction, creation, distribution, monetization, and release of generative artificial intelligence agents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and seeking information not relevant to any party's claim or defense nor proportional to the needs of this case, including because it would require Google to produce documents sufficient to show "all" current and

7

future product development efforts related to generative artificial intelligence products. Google

uses generative artificial intelligence in connection with numerous products, many unrelated to

general search services and general search text ads. Further, with respect to the timeframe

covered by this Request (January 1, 2020, to the present), Google objects to the Request as

seeking documents that are cumulative of information that could have been or was requested

during the liability phase of the litigation. To the extent that generative artificial intelligence is

relevant to a claim or defense relating to general search services and general search text ads,

Plaintiffs' previously served requests for production could and did cover the topic.

Google further objects to this Request as vague and ambiguous with respect to the

phrases "generative artificial intelligence products" and "generative artificial intelligence

agents," neither of which Plaintiffs define. Google will construe "generative artificial

intelligence products" and "generative artificial intelligence agents" to refer to any Google

product that has generative artificial intelligence as its primary functionality.

Subject to and without waiving its objections, Google will produce documents sufficient

to show the products and technologies related to generative artificial intelligence that Google has

launched or is currently scheduled to launch.

### REQUEST FOR PRODUCTION NO. 6:

From January 2023 to the present, separately by month, operating system, and device
type, produce documents or data sufficient to show the total number of Gemini interactions, both
in aggregate and performed through each type of Gemini access point, including whether an
access point is subject to a Google distribution agreement.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Google incorporates its general objections as though set forth fully herein, including with

respect to the definitions of "Gemini interactions" and "Gemini access points." Google further

objects to these definitions as overly broad, unduly burdensome, and not proportional to the needs of this case.

Subject to and without waiving its objections, Google will produce data responsive to this Request to the extent that Google maintains it.

## REQUEST FOR PRODUCTION NO. 7:

Produce all actual and projected profit-and-loss statements for each product area within the Google Services segment (and any combination of these product areas), including all documents that contain detailed profit-and-loss information, estimates of the lifetime value of an Android device or other Google product or contribution margins for any Google product, and estimates of the lifetime value of an Apple device, as well as all documents that contain summary views of this information.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and seeking information not relevant to any party's claim or defense nor proportional to the needs of this case,  because it seeks "all actual and projected profit-and-loss statements for each product area within the Google Services segment," "all documents that contain detailed profit-and-loss information, estimates of the lifetime value of an Android device or other Google product or contribution margins for any Google product, and estimates of the lifetime value of an Apple device," and "all documents that contain summary views of this information" for several years.  "Contribution margins for any Google product" is also vague, overly broad, unduly burdensome, and disproportionate to the needs of this case as it encompasses numerous products bearing little, if any, relationship to the issues in this case.  Google objects to this Request as duplicative of documents and data Google has previously produced, including but not limited to Google's responses to DOJ's Second Set of RFPs, Request 65; DOJ's Eighth Set of RFPs, Requests 9 and 11; and DOJ's Ninth Set of RFPs, Request 2. With respect to the timeframe covered by this Request (January 1, 2020, to the

present), Google objects to the Request as seeking documents that are cumulative of information

that could have been or was requested during the liability phase of the litigation. Google also

objects to this Request as seeking documents that are irrelevant to this remedies proceeding.

Google accordingly responds that it will not search for and produce documents

responsive to this Request.

**REQUEST FOR PRODUCTION NO. 8:**

For each month since the start of the relevant choice screen, separately for each instance
of the EC Search Choice Screen and the EC Browser Choice Screen, produce data sufficient to
show:
a. the date;
b. the country;
c. the device type;
d. the device model;
e. the operating system;
f. whether the device is new;
g. the choice screen type (i.e., search engine or browser);
h. the choice screen wave in which the month was included;
i. the number of choice screen selections;
j. each search engine or browser, as relevant, appearing in each choice screen by
position; and
k. the search engine or browser, as relevant, selected.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Google incorporates its general objections as though set forth fully herein.

Subject to and without waiving its objections, Google will produce data responsive to this

Request to the extent that Google maintains it.

**REQUEST FOR PRODUCTION NO. 9:**

From January 2017 to the present, on a monthly basis, produce data, broken out for the
United States, each country in the EEA, the UK, Switzerland, and total worldwide and separately
by device type (e.g., desktop, tablet, mobile phone), and each client ID associated with a
Revenue Share Agreement (RSA), comprising the following:
a. Partner or counterparty;
b. Search access point, if relevant;
c. Ad revenue, billed ad revenue, or gross advertising revenue;
d. Net ad revenue;

    e. Shared net ad revenue or Google payments to any third party;
    f. Number of queries, if relevant;
    g. Number of valid queries (as defined in the RSA), if relevant;
    h. Number of queries that were performed from the search access point that were not part of an RSA, if relevant; and
    i. Number of devices that fall under the agreement.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case because it would require Google to collect and align data from separate systems, involving manual calculations in connection with each RSA (for each partner in the world), and would require complex estimations of the information requested in subparts (c)-(e) for each RSA clientID by country, device type, and access point.  Google spent approximately six months collecting and producing data in response to Request 66 of DOJ Plaintiffs' Second RFP that covered similar data.  A refresh of Request 66 limited to the United States can be done in a reasonable timeframe, i.e., approximately 1-2 months.

Subject to and without waiving its objections, Google will produce a refresh of the data produced in response to Request 66 of DOJ Plaintiffs' Second RFP limited to the United States for January 2022 to September 2024.

## REQUEST FOR PRODUCTION NO. 10:

From July 2018 to the present, on a monthly basis, produce data, broken out for each country in the EEA, the UK, and Switzerland, and separately by device type (e.g., tablet, mobile phone), and each client ID, compromising the following for each EMADA, Search European License Agreement, Chrome European License Agreement, and each Search and Chrome European Placement Agreement:
    a. Partner or counterparty;
    b. Number of devices that fall under the agreement;
    c. License fees paid by partner to Google, if relevant;
    d. Bounty payments received by the partner from Google, if relevant;
    e. Number of devices on which the Google Search App and Google Search Widget have

premium placement, if relevant;
- f. Number of devices on which Chrome has premium placement, if relevant; and
- g. Number of devices that fall into each tier (e.g., Tier 1, Tier 2, Tier 3, Tablet) and each country group (e.g., Country Group 1, Country Group 2, and Country Group 3) as defined in the agreement, if relevant; and
- h. Number of devices that fall under the agreement.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as vague and ambiguous with respect to the phrase "premium placement," which Plaintiffs do not define. Google further objects to this Request to the extent that subparts (b) and (h) purport to request different data.

Subject to and without waiving its objections, Google will produce data responsive to this Request to the extent that Google maintains it.

## REQUEST FOR PRODUCTION NO. 11:

For each go-to-market or mobile incentive agreement between Google and an Android partner (carrier or manufacturer), from January 2017 to the present, on a monthly basis, produce data, broken out for the United States, each country in the EEA, the UK, and Switzerland, and total worldwide, compromising the following:
- a. Partner or counterparty;
- b. Total amount paid by Google to the partner;
- c. Number of devices that fall under the agreement;
- d. Number of devices that fall under each tier of the agreement, if relevant; and
- e. If the partner received any one-time, non-recurring payments under the agreement, provide the amount and date of those payments.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it purports to require Google to collect information for all partners worldwide and in countries outside the United States and would require Google to manually associate partner payments by country even where the partner payments are tracked worldwide.

Subject to and without waiving its objections, Google will produce data responsive to this Request for the United States to the extent that Google maintains it in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 12:**

Produce data sufficient to show the number of general search queries performed through each type of search access point, separately by month from January 2022 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Google incorporates its general objections as though set forth fully herein.

Subject to and without waiving its objections, Google will produce a refresh of data previously produced in response to Request 10 of DOJ Plaintiffs' Second RFP by month, limited to January 2022 through September 2024 for Google search queries in the United States by operating system, browser, device type, and access point.

**REQUEST FOR PRODUCTION NO. 13:**

Produce (1) all agreements between Google and Yahoo! Japan (or any related entity) in effect from 2011 to the present and relating to general search or text ads and (2) to the extent different than (1), all agreements between Google and any entity relating to general search or text ads appearing on Yahoo! Japan or syndicated by Yahoo! Japan to a third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case, including because the Request for "all agreements between Google and any entity relating to general search or text ads appearing on Yahoo! Japan or syndicated by Yahoo! Japan to a third party" is vague and ambiguous and, depending upon how interpreted, could be extremely broad.  Google further objects with respect to the timeframe covered by this Request

(2011 to the present) as seeking documents that are cumulative of information that could have been or were requested during the liability phase of the litigation.

Subject to and without waiving its objections, Google will produce agreements between Google and Yahoo! Japan entered into between May 6, 2022 to the present relating to the syndication of general search or search text ads.

## REQUEST FOR PRODUCTION NO. 14:

Produce documents sufficient to show (1) the nature of any keyword match type (including those related to negative keywords) currently available to purchasers of search text ads, including the launch reports for each match type; (2) the information currently available to advertisers in Search Query Reports or similar reports, including the criteria necessary for a query to be included (i.e. any limitations on impressions or keywords before inclusion) and information regarding the position in which an ad appeared; and (3) other information available to advertisers related to the performance or ranking of search text ads, including Ad Rank, LTV, and similar metrics Google uses in its internal search ads ranking algorithms.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Google incorporates its general objections as though set forth fully herein.  Google further objects to this Request as vague and overly broad because it asks for "other information available to advertisers related to the performance or ranking of search text ads[.]"  This broad formulation could be interpreted as all public statements by Google or by third parties which provide any information on the ranking of search text ads or how to measure the performance of search text ads, which would be overly burdensome for Google to produce.

Subject to and without waiving its objections, Google will produce currently publicly available Google Ads Help Center pages describing (1) keyword match types (including negative keywords), (2) Search Query Reports, and (3) other reports on ad performance available to all advertisers on the Google Ads platform.  Google will further provide documents sufficient to show the currently available performance reports and metrics most commonly used by advertisers on the Google Ads platform.

**REQUEST FOR PRODUCTION NO. 15:**

Produce all documents relating to any communication between Google and any Third Party relating to the present litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it purports to require Google, without any limitations, to produce "any communication" with "any Third Party" regarding the present litigation.  Such communications with "any Third Party" over several years would be of limited, if any, relevance.

Subject to and without waiving its objections, Google will produce responsive non-privileged communications with the partners identified in Request No. 2, Microsoft, and DuckDuckGo, since August 5, 2024.

**REQUEST FOR PRODUCTION NO. 16:**

Produce all documents, data, or other information provided by, made available by, or obtained from Third Parties pursuant to, in connection with, or in the course of this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, vague, and seeking information not relevant to any party's claim or defense nor proportional to the needs of this case because it purports to require Google, without any limitations, to produce "all documents, data, or other information" with "Third Parties" "pursuant to, in connection with, or in the course of this litigation." Google also objects to this Request as duplicative of Request No. 15, above.

Subject to and without waiving its objections, Google refers Plaintiffs to the documents it has agreed to provide in response to Request No. 15.

15

**REQUEST FOR PRODUCTION NO. 17:**

From May 2022 to the present, produce all documents addressing or discussing any plans or potential plans for Google's sale, divesture, or spin-off of the Android Open Source Project, Chrome, or Google Play, or any combination thereof.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Google incorporates its general objections as though set forth fully herein.

Subject to and without waiving any objection it might otherwise have, Google responds that it has had no such plans to sell, divest, or spin off the Android Open Source Project, Chrome, or Google Play (or any combination thereof), and thus has no documents to produce in response to this Request.

**REQUEST FOR PRODUCTION NO. 18:**

Produce all documents addressing or discussing the open sourcing of any of Google large language models.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks information not relevant to any party's claim or defense nor proportional to the needs of this case, including because it purports to seek "all" documents addressing or discussing the open sourcing of "any" Google large language models.

Further, with respect to the timeframe covered by this Request (January 1, 2020, to the present), Google objects to the Request as seeking documents that are cumulative of information that could have been or was requested during the liability phase of the litigation.

Subject to and without waiving its objections, Google will produce non-privileged documents sufficient to show any Google large language models that Google has released on an open-source basis.

**REQUEST FOR PRODUCTION NO. 19:**

From May 2022 to the present, produce all documents addressing or discussing Google's plans or potential plans to license, syndicate or otherwise share its search index with third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Google incorporates its general objections as though set forth fully herein.

Subject to and without waiving any objection it might otherwise have, Google responds

that it has had no plans from May 2022 to present to license, syndicate, or otherwise share its

search index with third parties, and thus has no documents to produce in response to this

Request.

**REQUEST FOR PRODUCTION NO. 20:**

From January 2018 to the present, produce all documents analyzing, addressing or discussing Google's plans or potential plans to license, syndicate, or otherwise share its search and search ad results, including any underlying search or search ad data, with third parties, including documents comparing the quality of search engine results generated for Google's syndication product with the search engine results generated for google.com, and documents analyzing the potential drawbacks related to data sharing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Google incorporates its general objections as though set forth fully herein.  Google

objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of

this case to the extent it purports to seek "all" documents analyzing, addressing, or discussing

Google's plans or potential plans to license, syndicate, or otherwise share its search and search

ad results, including any underlying search or search ad data, with third parties.  Google further

objects to this Request as vague and ambiguous with respect to the phrase "otherwise share."

Google further objects to this Request as seeking information not relevant to any party's claim or

defense to the extent the Request seeks documents comparing the quality of search engine results

17

generated for Google's syndication product with the search engine results generated for google.com.

Further, with respect to the timeframe covered by this Request (January 2018 to the present), Google objects to the Request as seeking documents that are cumulative of information that could have been or was requested during the liability phase of the litigation.

Subject to and without waiving its objections, Google agrees to produce:

(a) agreements to license or syndicate Google's search and search ad results in the United States for direct partners entered into between May 6, 2022 to present;

(b) the terms of service for AdSense for Search and Programmable Search in effect from May 6, 2022 to present;

(c) with respect to documents analyzing the potential drawbacks related to data sharing, Google refers Plaintiffs to the documents it has agreed to provide in response to Request No. 3.

## REQUEST FOR PRODUCTION NO. 21:

From January 2018 to the present, produce all agreements related to the licensing or syndication of general search or AdSense for Search ("AFS") or otherwise related to the sharing of search and search ad data with third parties.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it purports to seek "all" agreements related to the licensing or syndication of general search or AdSense for Search ("AFS") or otherwise related to the sharing of search and search ad data with third parties.  Google further objects to this Request on the grounds that "otherwise related to the sharing of search and search ad data" is vague and ambiguous.

Further, with respect to the timeframe covered by this Request (January 2018 to the present), Google objects to the Request as seeking documents that are cumulative of information that could have been or was requested during the liability phase of the litigation.

Subject to and without waiving its objections, Google refers Plaintiffs to the documents it has agreed to provide in response to Request No. 20.

**REQUEST FOR PRODUCTION NO. 22:**

From January 2018 to the present, produce all documents related to monetization differences between search text ads on google.com and search text ads on search engines using Google's "Ad Sense for Search" product including the rationales for differences in monetization.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as seeking information not relevant to any party's claim or defense. Google further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case because it purports to require Google, without any limitations, to produce "all documents" addressing or discussing a broad topic area.  Google also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of documents from custodial files.  Google further objects to this Request as vague and ambiguous because it does not specify the meaning of "monetization differences."

Google accordingly responds that it will not search for and produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 23:**

Produce all documents addressing or discussing the possible entry of Apple into general search services or general search text advertising and efforts by Apple to crawl the web or otherwise index websites.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks information not relevant to any party's claim or defense nor proportional to the needs of this case, including because of the timeframe of the Request and because it duplicates discovery already conducted during the liability phase of the litigation. For example, Plaintiffs sought and obtained document discovery on these matters through DOJ Plaintiffs' Second Request for Production No. 4, which requested for the period "[f]rom January 1, 2002… all documents addressing or discussing … [t]he possible entry of Apple, or any other third party, into general search services …, general search text advertising, or search advertising" and "[e]fforts by Apple, or any other third party, to crawl the web or otherwise index websites." The matters encompassed by this Request were also the subject of deposition and trial testimony from numerous witnesses, including Apple executives.  A further request for "all documents addressing or discussing" these matters is not proportional to the needs of this remedies proceeding.

Google accordingly responds that it will not search for and produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 24:**

From May 2022 to the present, produce all documents analyzing, addressing or discussing the integration of Google's generative artificial intelligence products (e.g., Gemini) into each of Google's general search, Chrome, Android or Google's Core Apps, including documents discussing how the integration of generative artificial intelligence impacts user behavior or affects competitors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Google incorporates its general objections as though set forth fully herein.  Google objects to this Request as overly broad, unduly burdensome, and seeking information not relevant to any party's claim or defense nor proportional to the needs of this case, including because it purports to require Google to produce "all" documents analyzing, addressing, or discussing the integration of Google's generative artificial intelligence products into each of Google's general search, Chrome, Android, or Google's Core Apps.  The Request is also overly broad, unduly burdensome, and seeks information not relevant to any party's claim or defense nor proportional to the needs of this case in that it seeks documents relating to the integration of *any* generative artificial intelligence product into general search, Chrome, Android, or Google's Core Apps; Google uses generative artificial intelligence in connection with numerous products, many unrelated to general search services and general search text ads.

Google further objects to this Request as vague and ambiguous in several respects.  Plaintiffs do not define the phrase "generative artificial intelligence products."  Google will construe "generative artificial intelligence products" to refer to any Google product that has generative artificial intelligence as its primary functionality.  Plaintiffs also do not define "Google's Core Apps."  Google will interpret the phrase "Google's Core Apps" to refer to Google Play, Chrome, Google's search app, Gmail, Maps, and YouTube.  *See* Am. Compl., ECF No. 94, ¶ 134.

Subject to and without waiving its objections, Google will produce documents sufficient to show the products and technologies related to generative artificial intelligence that Google has launched or is currently scheduled to launch with respect to each of Google's general search, Chrome, Android, or Google's Core Apps.

**REQUEST FOR PRODUCTION NO. 25:**

From May 2022 to the present, produce all documents analyzing, addressing or discussing the distribution of Google's generative artificial intelligence products (e.g., Gemini), including documents discussing or analyzing plans or potential plans for the preinstallation of Google's generative artificial intelligence products on smartphones, plans or potential plans to distribute Google's generative artificial intelligence products through Chrome, or enter into distribution agreements with OEMs for the distribution of generative artificial intelligence products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Google incorporates its general objections as though set forth fully herein. Google further objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of this case as it purports to require Google to produce "all documents analyzing, addressing or discussing the distribution of Google's generative artificial intelligence products," a variety of which are irrelevant to this matter.

Subject to and without waiving its objections, Google will produce all final, signed agreements responsive to Request No. 2, including subpart 2(g), that are located following a reasonable search. Google will not otherwise search for and produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 26:**

From May 2022 to present, produce all documents discussing the potential impact of any terms (including payment terms) in Google's revenue share agreements or Mobile Application Distribution Agreements on the likelihood or ability of current or potential rivals entering or expanding in the general search services or general search text advertising markets.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Google incorporates its general objections as though set forth fully herein. Google further objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks information not relevant to any party's claim or defense nor proportional to the needs of this case, including because it duplicates discovery already conducted during the liability phase

of the litigation. For example, Plaintiffs sought and obtained document discovery on these matters through DOJ Plaintiffs' Second Request for Production No. 16, which requested for the period "[f]rom January 1, 2007 … [a]ll documents addressing or discussing the impact … of application preinstallation, application placement, or preset defaults on devices," and DOJ Plaintiffs' Second Request for Production No. 25, which requested for the period "[f]rom January 1, 2007 … all documents addressing or discussing … Mobile Application Distribution Agreements (MADA)" and "Revenue Share Agreements (RSA)," including "the agreements' purpose [and] effect." The matters encompassed by this Request were also the subject of deposition and trial testimony from numerous witnesses. A further request for "all documents addressing or discussing" these matters is not proportional to the needs of this remedies proceeding.

Google accordingly responds that it will not search for and produce documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 27:**

From May 2022, produce all documents addressing or discussing the impact on Google Search usage if Google used alternatives to exclusive default agreements for search distribution.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Google incorporates its general objections as though set forth fully herein. Google further objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks information not relevant to any party's claim or defense nor proportional to the needs of this case, including because it duplicates discovery already conducted during the liability phase of the litigation. For example, Plaintiffs sought and obtained document discovery on these matters through DOJ Plaintiffs' Second Request for Production No. 28, which requested for the period "[f]rom January 1, 2007, to the present … [a]ll documents addressing or discussing

23

incremental revenue from search distribution deals" and "Google's rationale for entering into RSAs, including those agreements' expected effects on search market share." The matters encompassed by this Request were also the subject of deposition and trial testimony from numerous witnesses. A further request for "all documents addressing or discussing" these matters is not proportional to the needs of this remedies proceeding.

Google accordingly responds that it will not search for and produce documents responsive to this Request.

Dated: October 10, 2024

WILLIAMS & CONNOLLY LLP

*/s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI
P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K St, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Google LLC*

**CERTIFICATE OF SERVICE**

I certify that on October 10, 2024, I served all of the Plaintiffs in these matters at the

email addresses identified by counsel to Plaintiffs in a September 25, 2024 email to Google as

sufficient to constitute service on each and every Plaintiff.

*/s/ Natalie Peelish*
Natalie Peelish