**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | |
| | Case No. 1:20-cv-03010-APM |
| v. | |
| | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

| | |
|---|---|
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | |
| | Case No. 1:20-cv-03715-APM |
| v. | |
| | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**EXECUTIVE SUMMARY OF PLAINTIFFS' PROPOSED FINAL JUDGMENT**

## I.    Introduction

For more than a decade, Google has unlawfully maintained its monopolies in general search services and search text advertising through a web of anticompetitive practices. As this Court found after a lengthy trial, "Google is a monopolist, and it has acted as one to maintain its monopoly" over both the general search services and search text advertising markets. *See* Mem. Op., *United States et al. v. Google LLC*, 20-cv-3010 (APM), ECF No. 1032 ("Op."), at 4. Google has manipulated its control of Chrome and Android to benefit itself, while sharing monopoly profits under conditions to induce third parties across the ecosystem to help Google maintain its monopolies. Google's exclusionary conduct has, among other things, made Google the near-universal default for search and ensured that virtually all search access points route users' valuable queries and interaction data to Google. Google's unlawful behavior has deprived rivals not only of critical distribution channels but also distribution partners who could otherwise enable entry into these markets by competitors in new and innovative ways. Google's conduct has resulted in significant anticompetitive effects—causing "market foreclosure," "preventing rivals from achieving scale," and "diminishing the incentives of rivals to invest and innovate." Op. at 216.

The Court's opinion describes the decade-long harm Google inflicted on the markets for general search and search text advertising and the depths of that harm. At the same time, it also provides a roadmap to the components necessary to restore competition to these markets that have "revolutionized how we live" and how search advertisers reach potential customers. *Id.* at 1. While following that map requires a comprehensive remedy, making those changes would unleash a significant opportunity for existing competitors and innovative technologies to offer consumers who use general search services and the advertisers who sell to them meaningful choices and competitive rates for the first time in over a decade. Plaintiffs' proposed remedy is

grounded in longstanding precedent demanding robust remedies for monopolization. Having

found a violation of the law, courts are empowered to "prevent future violations and eradicate

existing evils." *United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001) (quoting

*United States v. Ward Baking Co.*, 376 U.S. 327, 330–31 (1964)). Any remedy requires a

"comprehensive" and "unitary framework" to restore competition with provisions "intended to

complement and reinforce each other." *See New York v. Microsoft Corp.*, 531 F. Supp. 2d 141,

170 (D.D.C. 2008). And a remedy for Google's unlawful monopolization must simultaneously

(1) unfetter these markets from Google's exclusionary conduct, (2) pry them open to

competition, (3) deny Google the fruits of its statutory violations, and (4) prevent Google from

monopolizing these and related markets in the future. *See Microsoft*, 253 F.3d at 103 (quoting

*Ford Motor Co. v. United States*, 405 U.S. 562, 577 (1972) and *United States v. United Shoe

Mach. Corp.*, 391 U.S. 244, 250–51 (1968)); *see also Zenith Radio Corp. v. Hazeltine Rsch.,

Inc.*, 395 U.S. 100, 132–33 (1969) (antitrust remedies can extend to related markets);  *Int'l

Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242, 262 (1959) (same). The Proposed Final

Judgment serves all of these ends.

Plaintiffs' proposed remedy is also grounded in the market realities of general search

services and search text advertising as we find them today. As the Court found, Google's illegal

conduct contributes to a significant (and growing) scale gap that continues to exacerbate the

harms found by the Court. Op. at 34. Search engines rely on user data to improve search

quality—an outcome that drives more users to a search engine. *Id.* at 35. Users attract

advertisers, and advertising dollars fund general search engines, creating a perpetual feedback

loop that further entrenches Google. *Id.* at 230–31. Thus, Google's exclusionary conduct has

ensured not only that rivals are denied distribution but also that rivals are unlawfully

disadvantaged with respect to quality. *Id*. The playing field is not level because of Google's conduct, and Google's quality reflects the ill-gotten gains of an advantage illegally acquired. The remedy must close this gap and deprive Google of these advantages.

Restoring competition to the markets for general search and search text advertising as they exist today will require reactivating the competitive process that Google has long stifled: The remedy must enable and encourage the development of an unfettered search ecosystem that induces entry, competition, and innovation as rivals vie to win the business of consumers and advertisers. To reach this goal, the remedy must address each of the ingredients necessary to create opportunities for competition to emerge. The promise of new technologies, including advances in artificial intelligence ("AI"), may present an opportunity for fresh competition. But only a comprehensive set of remedies can thaw the ecosystem and finally reverse years of anticompetitive effects. A successful remedy requires that Google: stop third-party payments that exclude rivals by advantaging Google and discouraging procompetitive partnerships that would offer entrants access to efficient and effective distribution; disclose data sufficient to level the scale-based playing field it has illegally slanted, including, at the outset, licensing syndicated search results that provide potential competitors a chance to offer greater innovation and more effective competition; and reduce Google's ability to control incentives across the broader ecosystem via ownership and control of products and data complementary to search.

Google's ownership and control of Chrome and Android—key methods for the distribution of search engines to consumers—poses a significant challenge to effectuate a remedy that aims to "unfetter [these] market[s] from anticompetitive conduct" and "ensure that there remain no practices likely to result in monopolization in the future." *Microsoft*, 253 F.3d at 103. To address these challenges, Google must divest Chrome, which has "fortified [Google's]

dominance," Op. at 33, so that rivals may pursue distribution partnerships that this "realit[y] of control," *id*. at 159 (citations omitted), today prevents.

As to Android—a critical platform on which search competitors rely and for which Google has myriad obvious and not-so-obvious ways to favor its own search products—there are two options: one that swiftly, efficiently, and decisively strikes at the locus of some anticompetitive conduct at issue here, and a second option that invites Court and Plaintiff oversight into longer-term behavioral remedies that may be more protracted and less certain due to Google's conduct. The most straightforward solution—the first option—would be to divest Android, which would prevent Google from using Android to exclude rival search providers. But Plaintiffs recognize that such divestiture may draw significant objections from Google or other market participants. As an alternative to the divestiture of Android, Plaintiffs have presented behavioral remedies that would blunt Google's ability to use its control of the Android ecosystem to favor its general search services and search text ad monopolies as well as limit Google's ability to discriminate in favor of its own search and ads businesses. This alternative option would require vigilance and oversight by the Court and Plaintiffs; if such efforts ultimately fail to achieve the high standards for meaningful relief in these critical markets, the Court could require return to the first option. Google is further prohibited from owning or acquiring any interests in search rivals, potential entrants, and rival search or search ads-related AI products, and it must immediately divest any such interests it owns.

Plaintiffs' remedy proposal also ensures efficacy, efficiency, and administrability by deploying a Technical Committee to investigate and examine the issues that will invariably arise relating to Google's implementation of the remedies, similar to the approach approved by the D.C. Circuit in *United States v. Microsoft. See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199,

1243–44 (D.C. Cir. 2004) ("[T]he Government's ability to enforce the decree is clearly strengthened, not diminished, by the existence and composition of the Technical Committee"). Plaintiffs' proposal also provides a streamlined path for the regular evaluation and modification often required of monopolization remedies, including the eventual divestiture of Android if Google chooses to retain ownership but persists in exploiting its control to the detriment of competition. *United Shoe*, 391 U.S. at 250–51.

Moreover, the remedy must restore incentives for innovation and disruptive entry that Google's conduct has—for over a decade—diminished. For example, in recent years "[t]he integration of generative AI is perhaps the clearest example of competition advancing search quality." Op. at 41. AI has the ability to affect market dynamics in these industries today as well as tomorrow. The remedy must prevent Google from frustrating or circumventing the Court's Final Judgment by manipulating the development and deployment of new technologies like query-based AI solutions that provide the most likely long-term path for a new generation of search competitors, who will depend on the absence of anticompetitive constraints to evolve into full-fledged competitors and competitive threats.

## II.    The Proposed Final Judgment

Guided by governing case law, and with these market realities and dynamics in mind, Plaintiffs respectfully submit the Initial Proposed Final Judgment ("PFJ"), which provides the Court with a comprehensive and unitary remedy to address the harms in the general search services and search text advertising markets, ensure that Google cannot further cement its monopolies by engaging in anticompetitive conduct, and prevent Google from circumventing the Court's judgment. To that end, Plaintiffs propose a variety of interconnected and self-reinforcing remedies to: (1) stop and prevent exclusionary agreements with third parties; (2) prevent Google from self-preferencing through its ownership and control of search-related products; (3) prevent

Google from stifling or eliminating emerging competitive threats through acquisitions, minority investments, or partnerships; (4) disclose data critical to restoring competition; (5) increase transparency and control for advertisers; (6) end Google's unlawful distribution; and (7) allow for the enforcement of the PFJ while preventing circumvention. Those remedies are summarized below for the Court's convenience. Further, and to correct for the fact that Google's unchecked monopolies have frozen the general search ecosystem for more than a decade, Plaintiffs' proposed remedies run for a period of 10 years, with some exceptions as detailed below and in the PFJ.

###### A.    Stopping and Preventing Exclusionary Agreements with Third Parties

An effective remedy must prevent Google from entering into contracts that foreclose or otherwise exclude competing general search engines and potential entrants, including by raising their costs, discouraging their distribution, or depriving them of competitive access to inputs. As detailed in Section IV, the PFJ prohibits Google from providing third parties something of value (including financial payments) in order to make Google the default general search engine or otherwise discouraging those third parties from offering competing search products. *See* Op. at 216 (finding "Google's distribution agreements are exclusionary contracts that violate Section 2" and "clearly have a significant effect in preserving [Google's] monopoly.") (citations omitted).

The PFJ also prohibits Google from entering exclusive agreements with content publishers; bundling, tying, or comingling its general search engine or search access points with any other Google product; entering revenue share agreements related to the distribution of general search services; or participating in investments in, collaborations with, or acquisitions of its competitors or potential competitors in the general search services or search text ads markets without prior approval of the United States. The proposed remedies are designed to end Google's unlawful practices and open up the market for rivals and new entrants to emerge.

**B.**     **Prohibited Ownership And Control That Enables Self-Preferencing**

In order to safeguard against the possibility of further foreclosure and exclusion of rivals and potential entrants including via self-preferencing, the PFJ requires Google to divest Chrome. As the Court recognized, "Google's near-complete control of the most efficient search distribution channels is a major barrier to entry," and the Chrome default is "a market reality that significantly narrows the available channels of distribution and thus disincentivizes the emergence of new competition." Op. at 159. Plaintiffs' PFJ addresses this "realit[y] of control," *id.*, and will restore incentives to rivals and potential entrants to compete.

Plaintiffs' PFJ further provides that Google is prohibited from owning not only a browser—following its divestiture of Chrome it may not reenter the browser market for five years—but also from owning or acquiring any investment or interest in any search or search text ad rival, search distributor, or rival query-based AI product or ads technology. Google's financial entanglements with current or future rivals risk compromising the proposed remedy. Investments in or acquisitions of potential rivals would stifle emerging competition or reduce their incentives to challenge Google. Such arrangements frustrate the PFJ's remedial goals of fostering innovation and transforming the general search and search text ads markets over the next decade. Google must disclose any such investments it owns, immediately refrain from using these interests to discourage or disincentivize competing products, and must divest these holdings within six months.

Plaintiffs' PFJ also provides for further contingent structural relief—the divestiture of Android—if Plaintiffs' proposed conduct remedies are not effective in preventing Google from improperly leveraging its control of the Android ecosystem to its advantage, or if Google

attempts to circumvent the remedy package. *See, e.g., United Shoe*, 391 U.S. at 249–51.[1] Similar to *United Shoe*, Plaintiffs propose with respect to Android "that relatively mild remedies should be tried as a first resort, and that the possibility of more drastic measures should be held in abeyance." *Id.* at 249. Indeed, in *United Shoe*, when the initially imposed behavioral remedies failed to establish the decree's goal of "workable competition," the Supreme Court ordered the district court to consider the government's subsequent request to break the defendant into "two fully competing companies." *Id.* at 247, 251–52 ("the time has come to prescribe other, and if necessary more definitive, means to achieve the result"). Alternatively, Google may also choose to divest Android at the outset in lieu of adhering to the requirements of Section V as they relate to Android.

### C.    Conduct Remedies That Prevent Self-Preferencing

An effective remedy must also ensure that Google cannot circumvent the Court's remedy by providing its search products preferential access to related products or services that it owns or controls, including mobile operating systems (e.g., Android), apps (e.g., YouTube), or AI products (e.g. Gemini) or related data. As noted in Section V, the PFJ prohibits, among other things, Google from using any owned or operated asset to preference its general search engine or search text ad products. The PFJ further prohibits Google from engaging in conduct that undermines, frustrates, interferes with, or in any way lessens the ability of a user to discover a rival general search engine, limits the competitive capabilities of rivals, or otherwise impedes user discovery of products or services that are competitive threats to Google in the general search services or search text ads markets. Op. at 119–21, 210 (finding that Google's contractual

---

[1]    As the Court in *Microsoft* recognized, "conduct remedies may be unavailing" in cases such as this, where "years have passed since [Google] engaged in the first conduct." *Microsoft*, 253 F.3d at 49.

requirements that Chrome be preinstalled and the Google Search widget be placed on the home screen of all Android devices was an unlawful exclusive agreement).

D.    **Restoring Competition Through Syndication And Data Access**

Data at scale is the "essential raw material" for "building, improving and sustaining" a competitive general search engine. Op. at 226 (finding that "Google's exclusive agreements…deny rivals access to use queries, or scale, needed to effectively compete."). Through its unlawful behavior, Google has accumulated a staggering amount of data over many years, at the expense of its rivals. *Id*. Plaintiffs' PFJ aims to remedy this anticompetitively acquired advantage. As set forth in Section VI, the PFJ requires Google, among other things, to make its search index available at marginal cost, and on an ongoing basis, to rivals and potential rivals; and also requires Google to provide rivals and potential rivals both user-side and ads data for a period of ten years, at no cost, on a non-discriminatory basis, and with proper privacy safeguards in place. Section VI further requires that Google provide publishers, websites, and content creators with data crawling rights (such as the ability to opt out of having their content crawled for the index or training of large language models or displayed as AI-generated content).

To remove barriers to entry and erode Google's unlawfully gained scale advantages, Section VII requires Google to syndicate (subject to certain restrictions) its search results, ranking signals, and query understanding information for ten years. The PFJ only requires Google to syndicate queries that originate in the United States. Section VII also requires Google to syndicate its search text ads for terms of one year subject to certain restrictions.

E.    **Restoring Competition By Improving Transparency And Reduction Of Switching Costs**

Google's unlawful maintenance of its search text advertising monopoly has undermined advertisers' choice of search providers, as well as rivals' ability to monetize search advertising,

9

and has enabled "Google to profitably charge supracompetitive prices for search text advertisements" while "degrad[ing] the quality of its text advertisements" and the related services and reporting. Op. at 258–65 (finding "Google's text ads products has degraded" and "advertisers receive less information in search query reports."). As set forth in Section VIII, Plaintiffs' PFJ will remedy these harms by providing advertisers with the information, options, and visibility into the performance and cost of Google Text Ads necessary to optimize their advertising across Google and its rivals. In particular, the PFJ requires Google to include fulsome and necessary real-time performance information about ad performance and costs in its search query reports to advertisers, and further requires Google to increase advertiser control by improving keyword matching options to advertisers. Op. at 263–64 (finding Google degraded SQR content and reduced control over keyword matching).

The PFJ also prohibits Google from limiting the ability of advertisers to export search text ad data and information for which the advertiser bids on keywords, and further requires that Google provide to the Technical Committee and Plaintiffs a monthly report outlining any changes to its search text ads auction and its public disclosure of those changes.

## F.    Limitations On Distribution And User Notifications To Restore Competition

A comprehensive and unitary remedy in this case must also undo the effects on search distribution. *See* Op. at 3 ("[M]ost devices in the United States come preloaded exclusively with Google. These distribution deals have forced Google's rivals to find other ways to reach users.").

To remedy these harms, the PFJ requires Google to divest Chrome, which will permanently stop Google's control of this critical search access point and allow rival search engines the ability to access the browser that for many users is a gateway to the internet. In addition, the PFJ contains multiple provisions that will limit Google's distribution of general search services by contract with third-party devices and search access points (e.g., Samsung

devices, Safari, Firefox) and via self-distribution on Google devices and search access points (e.g., Pixel) which will facilitate competition in the markets for general search services and search text advertising. These provisions are designed to end Google's unlawful distribution agreements, ensure that Google cannot approximate its unlawful practices with updated contracts, and eliminate anticompetitive payments to distributors, including Apple. As set forth in Section IV, the PFJ prohibits Google from offering Apple anything of value for any form of default, placement, or preinstallation distribution (including choice screens) related to general search or a search access point. *See* Op. at 238, 240–44 ("Apple, a fierce potential competitor, remains on the sidelines due to the large revenue share payments it receives from Google"). As set forth in Section IX, for non-Apple distributors and third-party devices, the PFJ similarly prohibits—with limited exceptions—Google from offering anything of value for any form of default, placement, or preinstallation distribution (including choice screens) related to general search or a search access point.

The PFJ further prohibits Google from preinstalling any search access point on any new Google device, and requires it to display a choice screen on every new and existing instance of a Google browser where the user has not previously affirmatively selected a default general search engine. The choice screens must be designed not to preference Google and to be accessible, easy to use, and minimize choice friction, based on empirical evidence of consumer behavior, among other requirements.

User choice will be improved when consumers better understand the benefits that Google's rivals can provide. For that reason, Colorado Plaintiff States have included a provision requiring Google to fund a nationwide advertising and education program. The fund's purpose is to enhance the effectiveness of distribution remedies by informing users of the outcome of this

litigation and the remedies in the Final Judgment designed to increase user choice. The program

may include short-term incentive payments to individual users as a further incentive to choosing

a non-Google default on a choice screen.

### G. Administration, Anti-circumvention, and Anti-retaliation

A remedy that prevents and restrains monopoly maintenance will require administration

as well as protections against circumvention and retaliation, including through novel paths to

preserving dominance in the monopolized markets. This is especially important in the types of

markets implicated here. As set forth in Section X, Plaintiffs' PFJ requires Google to appoint an

internal Compliance Officer and establishes a Technical Committee to assist Plaintiffs and the

Court in monitoring Google's compliance. *See United States v. Microsoft Corp*., Civ. No. 98-

1232 (CKK), 2002 U.S. Dist. LEXIS 22864, at *22 (D.D.C. Nov. 12, 2002) (establishing a

Technical Committee "to assist in enforcement of and compliance with this Final Judgment.").

This section of the PFJ provides Plaintiffs tools to investigate complaints about Google's

compliance and prohibits Google from taking retaliatory or circumventing actions.

\*            \*            \*

Plaintiffs' PFJ reflects extensive efforts to engage with market participants, utilize formal

discovery, and collaborate with experts. Given that third-party outreach and discovery on Google

are ongoing, Plaintiffs will continue to investigate and evaluate the remedies necessary to restore

competition to the affected markets. Plaintiffs reserve the right to add, remove, or modify

provisions of the PFJ as needed following further engagement with market participants and

additional remedies discovery. Consistent with the Court's scheduling order governing remedy

proceedings, Plaintiffs will file a Revised PFJ on March 7, 2025. *See* ECF 1043 at 2.

Dated: November 20, 2024                    Respectfully submitted,

                                            */s/ Karl E. Herrmann*
                                            David E. Dahlquist
                                            Adam T. Severt
                                            Veronica N. Onyema (D.C. Bar #979040)
                                            Diana A. Aguilar Aldape
                                            Sarah M. Bartels (D.C. Bar #1029505)
                                            Travis R. Chapman
                                            Grant M. Fergusson (D.C. Bar #90004882)
                                            Meagan M. Glynn (D.C. Bar #1738267)
                                            R. Cameron Gower
                                            Karl E. Herrmann (D.C. Bar #1022464)
                                            Ian D. Hoffman
                                            Elizabeth S. Jensen
                                            Ryan T. Karr
                                            Claire M. Maddox (D.C. Bar #498356)
                                            Michael G. McLellan (D.C. Bar #489217)
                                            Ryan S. Struve (D.C. Bar #495406)
                                            Sara Trent
                                            Jennifer A. Wamsley (D.C. Bar #486540)
                                            Catharine S. Wright (D.C. Bar #1019454)

                                            U.S. Department of Justice
                                            Antitrust Division
                                            Technology & Digital Platforms Section
                                            450 Fifth Street NW, Suite 7100
                                            Washington, DC 20530
                                            Telephone: (202) 805-8563
                                            David.Dahlquist@usdoj.gov
                                            Adam.Severt@usdoj.gov

                                            *Counsel for Plaintiff*
                                            *United States of America*

By:____/s/ Christoper A. Knight_____
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Christopher A. Knight, Assistant Attorney
General
Office of the Attorney General, State of
Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com
Christopher.Knight@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:____/s/ Diamante Smith_____
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant
Attorney General
James Lloyd, Deputy Attorney General for
Civil Litigation
Ryan Baasch, Associate Deputy Attorney
General for Civil Litigation
Trevor Young, Deputy Chief, Antitrust
Division
Diamante Smith, Assistant Attorney
General, Antitrust Division
Office of the Attorney General, State of
Texas
300 West 15th Street
Austin, Texas 78701
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:____/s/ Carolyn D. Jeffries_____
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General

Brian Wang, Deputy Attorney General
Carolyn D. Jeffries, Deputy Attorney
General (DC Bar No. 1600843)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*

Matthew M. Ford
Arkansas Bar No. 2013180
Senior Assistant Attorney General
Office of the Arkansas Attorney General
Tim Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney General
Ronald J. Stay, Jr., Senior Assistant Attorney
General
Charles Thimmesch, Senior Assistant
Attorney General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and
Director, Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of
Indiana
Indiana Government Center South, Fifth
Floor

302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the
Office of Consumer Protection
Philip R. Heleringer, Executive Director of
the Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive
Director of the Office of Consumer
Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of
Kentucky*

Liz Murrill, Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
voelkerp@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Michael Schwalbert
Missouri Bar No. 63229
Assistant Attorney General

Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Counsel for Plaintiff State of Missouri*

Lynn Fitch, Attorney General
Crystal Utley Secoy, Assistant Attorney
General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Crystal.Utley@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

Anna Schneider
Bureau Chief
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General, State of
South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*
Joshua L. Kaul, Attorney General
Laura E. McFarlane, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
mcfarlanele@doj.state.wi.us

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

MIKE HILGERS
Attorney General of Nebraska

Colin P. Snider, Assistant Attorney
General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3840
E-Mail: Colin.Snider@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the Attorney General of New
York
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

JOSHUA STEIN
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff State of North
Carolina*

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

SEAN REYES
Attorney General of Utah

Matthew Michaloski
Marie W.L. Martin
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140830
Salt Lake City, Utah 84114
Telephone: (801) 440-9825
E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

TREGARRICK TAYLOR
Attorney General of Alaska

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of
Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

BRIAN SCHWALB
Attorney General of the District of
Columbia

Elizabeth Gentry Arthur
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org

*Counsel for Plaintiff Territory Guam*

ANNE E. LOPEZ
Attorney General of Hawai'i

Rodney I. Kimura
Department of the Attorney General, State
of Hawai'i
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawai'i*

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 332-3549
E-Mail: John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov
Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

Schonette J. Walker
Gary Honick
Office of the Attorney General of
Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

ANDREA CAMPBELL
Attorney General of Massachusetts

William T. Matlack
Office of the Attorney General of
Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
E-Mail: William.matlack@mass.gov

*Counsel for Plaintiff Commonwealth of
Massachusetts*

KEITH ELLISON
Attorney General of Minnesota

Zach Biesanz
Senior Enforcement Counsel
Office of the Minnesota Attorney General
Antitrust Division
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State
of Minnesota*

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker

Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mbadorine@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885

E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust
Division
Office of the Attorney General of North
Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North
Dakota*

DAVID YOST
Attorney General of Ohio

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail:
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Telephone: (405) 522-1014
E-Mail: Robert.carlson@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

ELLEN ROSENBLUM
Attorney General of Oregon

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff State of Oregon*

MICHELLE HENRY
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

DOMINGO EMANUELLI
HERNANDEZ
Attorney General of Puerto Rico
Guarionex Diaz Martinez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto
Rico*

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney
General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South
Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South
Dakota*

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney
General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov
*Counsel for Plaintiff State of Vermont*

JASON S. MIYARES
Attorney General of Virginia

Tyler T. Henry
Office of the Attorney General of Virginia
202 N. 9th Street

Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

ROBERT FERGUSON
Attorney General of Washington

Amy Hanson
Senior Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

PATRICK MORRISEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of
West Virginia
1900 Kanawha Boulevard
East Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

BRIDGET HILL
Attorney General of Wyoming

Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-6397
E-Mail: amy.pauli@wyo.gov

*Counsel for Plaintiff State of
Wyoming*