IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                              Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**GOOGLE'S STATEMENT REGARDING
DISCOVERY DISPUTE WITH MICROSOFT**

On October 22, 2024, Google issued a subpoena to Microsoft Corporation ("Microsoft"). Pursuant to Section I.F of the Court's September 18, 2024 Order, Google submits the following statement with respect to Microsoft's compliance with Google's subpoena.[1]

**I.    GOOGLE SUBPOENAS MICROSOFT**

As the Court is well aware from the liability phase, there is no third party as central to the present dispute as Microsoft. Microsoft runs the second leading search engine, has a profitable

---

[1] Google requested that Microsoft provide a statement for inclusion in this submission. Microsoft has not provided one.

general search text ads business, and—as the trial evidence showed—has worked for years to help the Department of Justice craft its suit against Google. Given its importance, Microsoft was a full participant in discovery during the liability phase.

In the remedies phase, however, Microsoft has charted a strikingly different course. On October 22, 2024, Google issued a subpoena to Microsoft. As relevant here, Google sought certain discovery into Microsoft's work to develop generative artificial intelligence technologies. Google propounded those requests because it (correctly) predicted that, in their proposed final judgment, Plaintiffs would ask this Court to restrain Google's ability to compete in the generative artificial intelligence space. *See, e.g.*, ECF No. 1062-1 §§ III.B, IV.C, VI.B. Google disputes that any such remedy is warranted and, to support that defense, intends to offer evidence of—among other things—Microsoft's and its business partner OpenAI's success competing in generative artificial intelligence. Perhaps because that success has been so substantial,[2] Microsoft has resisted producing plainly discoverable classes of noncustodial documents.

To date, Microsoft has yet to produce a single document. Microsoft, instead, used its responses and objections as an opportunity to draft an advocacy piece, arguing (gratuitously) about whether Google products (sometimes unmentioned in the subpoena) fit particular definitions. Throughout the companies' conferrals, Microsoft refused to take a firm position regarding the scope of its document production. Microsoft sought further delay up to the date of this filing, embargoing its position until Thursday evening at 7:00 pm, insisting it needed an opportunity to review Plaintiffs' Proposed Final Judgment to inform its position on remedies discovery—as if Microsoft, as the company to whom the Plaintiffs principally seek to force a

---

[2] A December 2023 market research analysis, for instance, estimated that Microsoft and its business partner, OpenAI, held a ***nearly 70%*** global share in generative artificial intelligence. *See* Philipp Wegner, *The Leading Generative AI Companies*, IOT ANALYTICS (Dec. 14, 2023), *available at* https://iot-analytics.com/leading-generative-ai-companies/.

general search text ads business, and—as the trial evidence showed—has worked for years to help the Department of Justice craft its suit against Google. Given its importance, Microsoft was a full participant in discovery during the liability phase.

In the remedies phase, however, Microsoft has charted a strikingly different course. On October 22, 2024, Google issued a subpoena to Microsoft. As relevant here, Google sought certain discovery into Microsoft's work to develop generative artificial intelligence technologies. Google propounded those requests because it (correctly) predicted that, in their proposed final judgment, Plaintiffs would ask this Court to restrain Google's ability to compete in the generative artificial intelligence space. *See, e.g.*, ECF No. 1062-1 §§ III.B, IV.C, VI.B. Google disputes that any such remedy is warranted and, to support that defense, intends to offer evidence of—among other things—Microsoft's and its business partner OpenAI's success competing in generative artificial intelligence. Perhaps because that success has been so substantial,[2] Microsoft has resisted producing plainly discoverable classes of noncustodial documents.

To date, Microsoft has yet to produce a single document. Microsoft, instead, used its responses and objections as an opportunity to draft an advocacy piece, arguing (gratuitously) about whether Google products (sometimes unmentioned in the subpoena) fit particular definitions. Throughout the companies' conferrals, Microsoft refused to take a firm position regarding the scope of its document production. Microsoft sought further delay up to the date of this filing, embargoing its position until Thursday evening at 7:00 pm, insisting it needed an opportunity to review Plaintiffs' Proposed Final Judgment to inform its position on remedies discovery—as if Microsoft, as the company to whom the Plaintiffs principally seek to force a

---

[2] A December 2023 market research analysis, for instance, estimated that Microsoft and its business partner, OpenAI, held a ***nearly 70%*** global share in generative artificial intelligence. *See* Philipp Wegner, *The Leading Generative AI Companies*, IOT ANALYTICS (Dec. 14, 2023), *available at* https://iot-analytics.com/leading-generative-ai-companies/.

shift of market share, is in the dark. Even the limited discovery that Plaintiffs have produced confirms that they have been regularly meeting with Microsoft representatives about the remedies in this matter.

## II. THE COURT SHOULD ORDER COMPLIANCE WITH REQUEST NOS. 13-18.

As described below, each subpoena request at issue on this motion seeks a narrow class of relevant documents that can be retrieved on a "go get" basis with minimal burden. Google respectfully requests the Court's assistance in securing Microsoft's compliance with six narrow requests relevant to Google's anticipated defenses:[3]

### Request No. 13

In pertinent part, Request No. 13 seeks "[c]opies of any agreements and any amendments thereto between Microsoft and any person or entity affiliated with OpenAI, Perplexity AI, Inflection, and G42." Ex. A, at 29. OpenAI is the company behind ChatGPT and whose artificial intelligence models have helped power Bing search since at least 2023. Microsoft's partnership with OpenAI was the subject of testimony at trial adduced by Plaintiffs (and Google), and Plaintiffs have included a (still unnamed) witness from OpenAI on their witness list. Production of Microsoft's and OpenAI's agreements will thus shed light on the extent to which the OpenAI partnership has driven new traffic to Bing and otherwise affected Microsoft's competitive standing. The companies, and their efforts to compete, are widely known to be closely intertwined.

Microsoft's agreements with Perplexity are to similar effect. Founded in August 2022,

---

[3] In order to avoid unnecessary burden and to target its requests to the maximum extent possible consistent with the Court's directives, Google has largely served "sufficient to show"-type requests on third parties. Google has likewise endeavored to raise only narrow, limited disputes in this submission. Google expects that it may need later to bring additional, targeted discovery disputes regarding Microsoft to the Court's attention.

Perplexity offers a "[non-]traditional search engine" designed to "revolutionize the way [users] discover information."[4]  Recent press reports indicate that Perplexity is off to a promising start, having nearly completed a fundraising round at a $9 billion valuation.[5]  Like OpenAI, Perplexity has chosen to partner with Microsoft, and, like OpenAI, a (still unnamed) Perplexity witness appears on Plaintiffs' witness list.[6]  Google therefore has the right to review any agreements between Perplexity and Microsoft, including to determine any terms upon which Bing powers functionality incorporated into Perplexity's search service.

**Request No. 14**

Request No. 14 seeks "[d]ocuments sufficient to show the types and quantity of data used to train [certain OpenAI models] . . . [and] any other model that Microsoft has developed or licensed for use in connection with any potential or actual Generative AI Tool or AI Search Tool."[7]  Ex. A, at 30.  Request No. 14 extends to "documents sufficient to show the extent to which search engine click-and-query data or first-party data is used to train any part of [those models]."  *Id.*  Google has requested this information partly because Google expects that it will show that OpenAI's and Microsoft's models are not as reliant on click-and-query data as Plaintiffs have suggested.  If that is so, that would bear directly on Plaintiffs' (disputed) argument that "Google's ability to leverage its monopoly power to feed artificial intelligence

---

[4] *See, e.g.*, *What is Perplexity?*, PERPLEXITY AI, *available at* https://www.perplexity.ai/hub/faq/what-is-perplexity.

[5] *See, e.g.*, Berber Jin, *AI Startup Perplexity to Triple Valuation to $9 Billion in New Funding Round*, WALL STREET JOURNAL (Nov. 5, 2024), *available at* https://www.wsj.com/tech/ai/ai-startup-perplexity-to-triple-valuation-to-9-billion-in-new-funding-round-f2fb8c2c.

[6] *See, e.g.*, Ted Roduner, *Perplexity powers its 'answer engine' with Azure OpenAI Service*, MICROSOFT FOR STARTUPS (June 15, 2023), *available at* https://www.microsoft.com/en-us/startups/blog/perplexity-ai-powers-its-answer-engine-with-azure-openai-service/ (Microsoft blogpost including an interview with Perplexity's CEO about "how Microsoft gave his company an early competitive edge and what they've learned from the collaboration").

[7] As to several requests, Microsoft has refused to produce documents regarding any product other than its "Copilot" product.  Given the massive purported breadth of the phrase "AI Product" as used in Plaintiffs' Proposed Final Judgment, *see* ECF No. 1062-1 § III.B, Google may need to seek further relief from the Court if Microsoft continues to narrow its compliance in this fashion.  *See supra* n.3.

4

features is an emerging barrier to competition and risks further entrenching Google's dominance." ECF No. 1052, at 7. Microsoft could produce this information with ease: Microsoft's CEO has said publicly OpenAI could "disappear[] tomorrow" and that Microsoft could carry on its work because "[w]e have the people, we have the compute, we have the data, we have everything."[8] There is therefore no serious question that Microsoft possesses the information that this request seeks, and Microsoft should be compelled to produce it.

**Request No. 15**

Request No. 15 seeks "[d]ocuments sufficient to identify any Generative AI Tools and any AI Search Tools for which Microsoft provides or has provided search results or advertising services." Ex. A, at 32. It lies beyond dispute that Microsoft provides search results to third-party Generative AI Tools and AI Search Tools like ChatGPT, ChatGPT Search, and potentially others. If new artificial intelligence tools and technologies have provided Bing a novel mode of distribution—and all indications are that they have—Google is entitled to present that evidence in its defense.

**Request Nos. 16 and 17**

Request No. 16 seeks "[a]greements and any amendments thereto in Microsoft's possession, custody, or control licensing content for use in connection with any Generative AI Tool and any AI Search Tool." Ex. A, at 33. Request No. 17 seeks copies of "any 'exclusive content deals' as that phrase was used in Satya Nadella's October 2, 2023 trial testimony."[9] *Id.* The request is relevant because Plaintiffs have claimed that Google can "leverage its monopoly"

---

[8] *Satya Nadella On Hiring The Most Powerful Man In AI*, INTELLIGENCER (Nov. 21, 2023), *available at* https://nymag.com/intelligencer/2023/11/on-with-kara-swisher-satya-nadella-on-hiring-sam-altman.html.

[9] *See* Trial Tr. 3513:4–9 ("The publisher content can get locked in. And so if there are exclusive content deals which are happening right as we speak, which is scary because what that does is not only lock all that content today, at least, that's crawlable by everyone and usable by large model training, could become exclusive.").

to secure the rights to "content created by third parties" and thereby "feed [Google's] artificial intelligence features." ECF No. 1052, at 7; *see also* ECF No. 1062-1, § IV.C. In reality, public press accounts suggest that it is Microsoft and its partner OpenAI who are securing the lion's share of content-licensing deals. Although Microsoft has agreed to produce "[d]ocuments sufficient to reflect Microsoft's actual licensing content agreements for Copilot," Ex. A, at 33—i.e., Microsoft's consumer-facing AI "digital companion"[10]—Microsoft's proposed production omits the dozens of agreements that it has access to by virtue of its partnership with OpenAI[11] and other content-licensing agreements that Microsoft may have entered into in connection with other artificial intelligence products or in connection with training artificial intelligence models generally (as opposed to the Copilot product specifically).[12]

**Request No. 18**

Request No. 18 seeks "[d]ocuments sufficient to show Microsoft's understanding of the relative competitive position of Generative AI Tools and AI Search Tools," including "documents sufficient to show the relative download or usage rate of ChatGPT and Copilot compared to other Generative AI Tools and/or AI Search Tools." Ex. A, at 34. The request is clearly relevant, inasmuch as Plaintiffs seek to limit how Google may compete with respect to artificial intelligence products. *See, e.g.*, ECF No. 1062-1 § IV.F (proposing that the Court order Google to "divest any . . . interest" in certain "AI Product[s]" within six months). But if, as Google expects, Microsoft's internal documents show that Microsoft's and OpenAI's joint

---

[10] *See, e.g.*, *Frequently Asked Questions*, MICROSOFT COPILOT, *available at* https://www.microsoft.com/en-us/microsoft-copilot/for-individuals/?form=MG0AUO&OCID=MG0AUO#faq-group.

[11] *See, e.g.*, Danny Goodwin, *OpenAI's Growing List of Partnerships*, SEARCH ENGINE LAND (June 5, 2024), *available at* https://searchengineland.com/openais-growing-list-of-partnerships-442974 ("OpenAI has announced 30 significant deals with tech and media brands to date, including three in the past week . . . .").

[12] *See, e.g.*, Emma Roth, *Microsoft Is The Mystery AI Company Licensing HarperCollins Books, Says Bloomberg*, THE VERGE (Nov. 19, 2024), *available at* https://www.theverge.com/2024/11/19/24300893/microsoft-ai-training-deal-harpercollins-report.

efforts to compete in artificial intelligence are succeeding, that would tend to suggest that Plaintiffs' proposed remedy may "chill competition, rather than foster it." *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 136 (D.D.C. 2002) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993)), *aff'd*, 373 F.3d 1199 (D.C. Cir. 2004).

\*           \*           \*

Given the foregoing, Google respectfully requests that the Court order Microsoft to comply with Requests 13–18 of Google's subpoena.

Dated: November 22, 2024

Respectfully submitted,

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com
*Counsel for Defendant Google LLC*