# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| United States of America et al. | ) | State of Colorado et al. | ) | Civil Action No. |
|---|---|---|---|---|
| *Plaintiff* | ) | *Plaintiff* | ) | |
| | ) | | ) | **1:20-cv-03010 (APM)** |
| v. | ) | v. | ) | |
| | ) | | ) | |
| Google LLC | ) | Google LLC | ) | **1:20-cv-03715 (APM)** |
| *Defendant* | ) | *Defendant* | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:      Perplexity AI, Inc., 115 Sansome Street, Suite 900, San Francisco, CA 94104

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached schedule.

| Place: Wilson Sonsini Goodrich & Rosati<br>One Market Plaza, Spear Tower, Suite 3300<br>San Francisco, CA 94105 | Date and Time:<br>11/6/2024 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/23/2024

*CLERK OF COURT*

OR       /s/ John E. Schmidtlein

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Google LLC , who issues or requests this subpoena, are:

John E. Schmidtlein, 680 Maine Avenue SW, Washington, DC 20024, jschmidtlein@wc.com, 202-434-5901

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:20-cv-03010 (APM); 1:20-cv-03715 (APM)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## DEFINITIONS

The terms defined below should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure. These definitions are provided solely for purposes of this Subpoena.

1. "Agreement" means any contract, agreement, or understanding, whether written or oral, formal or informal, express or implicit, including any amendments thereto.

2. "All" and "any" shall be construed to mean each and every.

3. "And" and "or" shall be construed to mean "and/or."

4. "App" or "Application" means any computerized program or software application designed to run on any device for consumer use.

5. "Communication" means any actual or attempted dissemination, disclosure, transfer or exchange of information, and includes oral discussions, written and electronic correspondence, and voice, telephone and other recorded messages.

6. "Customer" or "consumer" means an end user, as opposed to a distribution partner.

7. "Device(s)" means any physical object or device or network of objects or devices, such as a desktop or laptop computer, mobile devices, automotive device, or other physical device, that is capable of running an operating system or connecting to and exchanging data with other devices and systems.

8. "Discussing" means, in whole or in part, analyzing, constituting, summarizing, reporting on, considering, recommending, setting forth, or describing a subject.  Documents that contain reports, studies, forecasts, analyses, plans, proposals, evaluations, recommendations, directives, procedures, policies, or guidelines regarding a subject should be treated as documents

1

that discuss the subject. However, documents that merely mention or refer to a subject without further elaboration should not be treated as documents that discuss that subject.

9. "Digital ad" or "digital advertising" includes all types of ads filled by way of the internet—as opposed to out-of-home, broadcast television, or print—including video ads, display (desktop and mobile) ads, social ads, search ads, in-app ads, native/rich text ads, and any other ad categorized as a type of digital advertising by Perplexity AI in its ordinary course of business. The terms "digital ad" and "digital advertising" shall be construed broadly and shall include at a minimum the various types of advertising described in the DOJ and Colorado complaints.

10. "Document" shall be construed in the broadest possible sense consistent with the Federal Rules of Civil Procedure. "Document" shall mean any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, that is in your possession, custody, or control. The term includes (without limitation) agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs. The term "document" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term "document" includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also

includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations. A document is deemed to be in your control, and must be produced, if you have the right to secure the document or a copy thereof from another person.

11. Documents or data "sufficient to show" means documents or data sufficient to provide a true and correct disclosure of the factual matter requested.

12. "DOJ" means the U.S. Department of Justice and any divisions, employees, agents and representatives, and any other person acting on their behalf.

13. "Each" and "every" shall be construed to mean each and every.

14. "Google" means defendant Google LLC, as well as its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

15. "Including" shall be construed to mean "including, but not limited to."

16. "DOJ lawsuit" or "DOJ complaint" means the lawsuit or complaint filed by the United States of America, and the States of Arkansas, California, Florida, Georgia, Indiana, Kentucky, Louisiana, Michigan, Mississippi, Missouri, Montana, South Carolina, Texas, and Wisconsin against Google and pending in the United States District Court for the District of Columbia, No. 1:20-cv-03010-APM.

17. "Colorado lawsuit" or "Colorado complaint" means the lawsuit or complaint filed by the States of Colorado, Nebraska, Arizona, Iowa, New York, North Carolina, Tennessee, Utah, Alaska, Connecticut, Delaware, Hawaii, Idaho, Illinois, Kansas, Maine, Maryland, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Dakota, Vermont, Washington, West Virginia, and Wyoming; the

Commonwealths of Massachusetts, Pennsylvania, Puerto Rico, and Virginia; the District of Columbia; and the Territory of Guam against Google and pending in the United States District Court for the District of Columbia, No. 1:20-cv-03715-APM.

18. "Lawsuit" or "complaint" without further specification means the DOJ lawsuit/DOJ complaint or the Colorado lawsuit/Colorado complaint.

19. "OpenAI" means OpenAI, Inc., its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf. For clarity, OpenAI includes, but is not limited to, OpenAI, Inc., OpenAI, L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Investment LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas, LLC.

20. "Perplexity AI" means Perplexity AI, Inc., its current and former subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents and representatives, and any other person acting on its behalf.

21. "Perplexity Service" means the service described at the Perplexity webpage entitled "What is Perplexity?," *available at* https://www.perplexity.ai/hub/faq/what-is-perplexity.

22. "Person" shall include any natural person, corporation, partnership, proprietorship, association, business, company, joint venture, government unit, and other public or private entity or organization.

23. "Plans" includes preliminary proposals, recommendations, or considerations,

4

whether finalized or adopted.

24. "Relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

25. "Search engine" means a service that allows consumers to find responsive information on the internet by entering keyword queries. Consumers may use search engines to perform several types of searches, including navigational queries (seeking a specific website), informational queries (seeking knowledge or answers to questions), and commercial queries (seeking to make a purchase). Examples of search engines include Google, Bing, Yahoo, DuckDuckGo, as well as search engines on social media sites (such as Facebook), retail marketplaces (such as Amazon), and specialized search engines (such as Kayak and Yelp).

26. "Sensitive Personally Identifiable Information" or "sensitive PII" means information or data that would identify an individual, including a person's Social Security Number; or a person's name, address, or phone number in combination with one or more of his/her (a) date of birth; (b) driver's license number or other state identification number, or a foreign country equivalent; (c) passport number; (d) financial account number; or (e) credit or debit card number.

27. "Sensitive Health Information" or "SHI" mean information or data about an individual's health, including medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

28. "Third parties" means any person other than you.

5

29. "Generative AI Tool" refers to any product, service, feature, tool, or functionality that involves a software application or web interface that can take a natural language input and generate text, images, videos, or other data using generative artificial intelligence. Generative AI Tools include, but are not limited to, ChatGPT and Gemini.

30. "AI Search Tool" refers to any product, service, feature, tool, or functionality that involves both search engine technology and artificial intelligence capabilities. AI Search Tools include, but are not limited to, Bing Chat, SearchGPT, the Perplexity Service, Andi, and You.

## INSTRUCTIONS

1. In addition to the specific instructions set forth below, these document requests incorporate the instructions set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Columbia, and the Stipulation and Order Regarding Discovery Procedure (ESI Order) on January 21, 2021 (ECF #99 in Case No. 1:20-cv-03010-APM) or the operative version of that order in place at the time production is made. Subject to a valid claim of privilege, the entire document must be produced if any part of that document is responsive.

2. Unless otherwise stated, these requests are for all otherwise responsive documents relating to the United States or any part thereof, regardless of where those documents are kept.

3. Produce a legible copy of each document requested together with all non-identical copies and drafts of that document. You should produce all metadata of electronic documents specified in the ESI Order. You must retain all of the original documents for inspection or copying throughout the pendency of this case, any appeal(s), and any related proceedings.

4. These requests are continuing in nature. Google specifically reserves the right to seek supplementary responses and the additional supplementary production of documents before the Court's evidentiary hearing on remedies.

5.  Where a claim of privilege or other protection from discovery is asserted in objecting to any request or sub-part thereof, and any document is withheld (in whole or in part) on the basis of such assertion, provide a log (Privilege Log) in accordance with the Amended Scheduling and Case Management Order (ECF #108 in Case No. 1:20-cv-03010-APM) and ESI Order (ECF #99 in Case No. 1:20-cv-03010-APM), or the operative versions of those orders in place at the time you provide a log.

6.  If any document responsive to a particular request contains sensitive PII or SHI that is not responsive to that request, redact the unresponsive sensitive PII or SHI before producing the document. To indicate that a redaction is on the basis of PII or SHI, rather than privilege, either mark the redaction "PII/SHI" or provide an index that lists such redacted documents by document control number. If the index is available in electronic form, provide the index in that form.

7.  If documents, data, or other information responsive to a particular request no longer exists for reasons other than your document retention policy, describe the circumstances under which it was lost or destroyed, describe the information lost, list the request to which it was responsive, and list persons with knowledge of such documents, data, or other information.

**DOCUMENTS REQUIRED TO BE PRODUCED**

1.  All documents and other communications between Perplexity AI and any third party proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service. Documents within the scope of this request include, but are not limited to, negotiations over agreements as well as final executed agreements that Perplexity AI has entered into with any third party with respect to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service.

2.  All communications between Perplexity AI and one or more Plaintiffs in this

litigation discussing or relating to Google or this litigation.

3. Documents or data sufficient to show the total number downloads of any Perplexity AI app.

4. Documents or data sufficient to show the daily active users of the Perplexity Service since launch.

5. Copies of any agreements between Perplexity AI and Microsoft as well as copies of any amendments thereto.

6. To the extent not produced in response to Request No. 5, documents sufficient to show the respects in which and the terms upon which Perplexity AI has "[p]artner[ed] with Microsoft." *See* Ted Roduner, *Perplexity powers its "answer engine" with Azure OpenAI Service*, MICROSOFT FOR STARTUPS, *available at* https://startups.microsoft.com/blog/perplexity-ai-powers-its-answer-engine-with-azure-openai-service/.

7. Copies of any agreements between Perplexity AI and OpenAI as well as copies of any amendments thereto.

8. Documents sufficient to show Perplexity AI's revenues, expenses, profits, capital raises, stock sales, and valuation on a quarterly or annual basis since the beginning of 2022.

9. Documents sufficient to show any presentation that Perplexity AI has made regarding any plan to monetize the Perplexity Service.  Documents within the scope of this request include any pitch decks describing a plan or proposal to integrate advertisements into users' queries.  *See* Marty Swant, *Perplexity's Pitch Deck Offers Advertisers A New Vision For AI Search*, DIGIDAY (Aug. 23, 2024), *available at* https://digiday.com/media-buying/perplexitys-pitch-deck-offers-advertisers-a-new-vision-for-ai-search/.

10. Documents sufficient to show the types and quantity of data used to train any model used in the Perplexity Service.  Documents within the scope of this request include

8

documents sufficient to show the extent to which search engine click-and-query data or first-party data is used to train any part of any model used in the Perplexity Service.  Documents within the scope of this request also include documents sufficient to show the operations and functionality of any retrieval augmented generation techniques employed in the Perplexity Service.

11. Copies of any agreements and any amendments thereto in Perplexity AI's possession, custody, or control licensing content for use in connection with the Perplexity Service.

12. Documents sufficient to show Perplexity AI's understanding of the relative competitive position of Generative AI Tools and AI Search Tools.  Documents within the scope of this request include documents sufficient to show the relative download or usage rate of the Perplexity Service compared to other Generative AI Tools and/or AI Search Tools.

13. All minutes, recordings, summaries, or reports of meetings, whether formal or informal, of your company's (and each of its divisions' or subsidiaries') board of directors (including committees or subgroups), addressing or discussing:

    a. Search distribution;

    b. Competition, competitors, strategy, or market analysis in features, paid or unpaid, that appear in a Generative AI Tool or an AI Search Tool;

    c. Competition, competitors, strategy, or market analyses in generative artificial intelligence;

    d. Competition, competitors, strategy, or market analyses in search advertising; or

    e. Competition, competitors, strategy, or market analyses in digital advertising.

14. From January 2023 to the present, separately by month, operating system, and device type, produce documents or data sufficient to show the total number of interactions with the Perplexity Service, both in aggregate and performed through each type of access point.