IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**JOINT STATUS REPORT OF GOOGLE AND OPENAI**

On October 23, 2024, Google issued a subpoena to OpenAI, Inc. ("OpenAI"). Pursuant to Section I.F of the Court's September 18, 2024 Order, Google and OpenAI (collectively, the "Companies") submit the following statements with respect to OpenAI's compliance with Google's subpoena.

I.   **GOOGLE'S POSITION STATEMENT**

   a. **Google Subpoenas OpenAI**

OpenAI is the company behind the popular artificial intelligence chatbot ChatGPT and, more recently, a tool called ChatGPT Search.[1]  Although OpenAI did not provide discovery during the liability phase, it has apparently been in close contact with Plaintiffs regarding the remedies proceedings.  According to documents produced by Plaintiffs, within several weeks of the issuance of the Court's liability opinion, lawyers from the Department of Justice corresponded with multiple in-house and outside antitrust counsel for OpenAI, and, subsequently, Plaintiffs served a witness list that includes a (still unnamed) witness from OpenAI.  Consistent with Plaintiffs' interest in artificial intelligence generally—and, apparently, OpenAI in particular—Plaintiffs have filed a Proposed Final Judgment that contains multiple provisions expressly related to artificial intelligence.  *See, e.g.*, ECF No. 1062-1 §§ III.B, IV.C, VI.B.

On October 23, 2024, Google issued a subpoena to OpenAI.  In its responses and objections, OpenAI refused to produce even a single class of subpoenaed documents.  Following repeated conferrals, OpenAI has, for the most part, persisted in its refusal to produce documents, repeatedly protesting that OpenAI is irrelevant to present proceedings.[2]  It has produced nothing to date.

---

[1] Until recently, ChatGPT Search was known as "SearchGPT," and, accordingly, that is the nomenclature used in Google's subpoena.

[2] To be sure, Google agrees that Plaintiffs have vastly overstated the extent to which artificial intelligence technology is relevant to the Court's task of crafting a decree that remedies the conduct found unlawful.  But to present that defense and others, Google needs discovery no less than Plaintiffs, and some of that discovery is from OpenAI.

As described below, Google seeks the Court's assistance in securing OpenAI's compliance with seven narrow requests for documents.[3]

### b. The Court Should Order Compliance With Request Nos. 1 and 5–10

**<u>Request No. 1</u>**

Request No. 1 seeks "[a]ll documents and other communications between OpenAI and any third party proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution of any Generative AI Tool or AI Search Tool,"[4] including "negotiations over agreements as well as final executed agreements that OpenAI has entered into with any third party since May 6, 2022 with respect to the promotion, preinstallation, syndication, or other distribution of any Generative AI Tool or AI Search Tool." Ex. A, at 7. This request is plainly relevant to Plaintiffs' claims. Plaintiffs' Initial Fact Witness List discloses an intent to call an (unnamed) OpenAI employee "regarding generative AI's relationship with . . . distribution." Ex. B, at 4. The subject of ChatGPT's and ChatGPT Search's distribution therefore falls comfortably within the ambit of testimony that Plaintiffs apparently seek to elicit at the Evidentiary Hearing. Against that backdrop, any argument that Google's request seeks irrelevant discovery is simply untenable.

Moreover, OpenAI's ChatGPT and ChatGPT Search products apparently serve as an

---

[3] In order to avoid unnecessary burden and to target its requests to the maximum extent possible consistent with the Court's directives, Google has largely served "sufficient to show"-type requests on third parties. Google has likewise endeavored to raise only narrow, limited disputes in this Joint Status Report. Google expects that it may need later to bring additional, targeted discovery disputes regarding OpenAI to the Court's attention.

[4] As to several requests, OpenAI has refused to produce documents regarding any product other than its (non-API) ChatGPT and ChatGPT Search product. Given the massive purported breadth of the phrase "AI Product" as used in Plaintiffs' Proposed Final Judgment, *see* ECF No. 1062-1 § III.B, Google may need to seek further relief from the Court if OpenAI continues to narrow its compliance in this fashion. *See supra* n.3.

important distribution channel for Bing.  It is a matter of public record that ChatGPT and ChatGPT Search incorporate Bing Search functionality.  For example, at trial, Microsoft CEO Satya Nadella testified that "ChatGPT today exists with Bing as the index," and, as a result, he testified that he regards ChatGPT as "one entry point, if you will."  Trial Tr. 3528.  More recently, OpenAI Vice President of Engineering Srinivas Narayanan was asked whether ChatGPT uses Bing as a search engine, he responded, "[w]e use a set of services and Bing is an important one."[5]  For that reason, too, Request No. 1 seeks plainly discoverable information.

**Request No. 5**

Request No. 5 seeks "[c]opies of any agreements and any amendments thereto between OpenAI and any person or entity affiliated with Microsoft and/or Perplexity AI."  Ex. A, at 10.  OpenAI has agreed to produce only "agreements between OpenAI and Microsoft in connection with the Bing Search API, and any amendments thereto."  Ex. C, at 2.  Google does not see any basis for OpenAI to produce only the portion of its agreement(s) with Microsoft that pertains to the Bing Search API.  At trial, both sides adduced testimony regarding Microsoft's partnership with OpenAI.  Moreover, because Plaintiffs' Initial Fact Witness List includes witnesses from both Microsoft and OpenAI, it is plain that Plaintiffs intend to adduce further testimony on the partnership.  Google is entitled to receive and examine the entirety of the agreement(s) between Microsoft and OpenAI.  A stringent protective order is in place to ensure that there will be no misuse of that or any other document.

OpenAI's agreement(s) with Perplexity are likewise discoverable.  Founded in August 2022, Perplexity offers a "[non-]traditional search engine" designed to "revolutionize the way

---

[5] Cecily Mauran, *OpenAI's Sam Altman Had An AMA On Reddit: 5 Takeaways About ChatGPT And More*, MASHABLE (Nov. 1, 2024), *available at* https://mashable.com/article/openai-sam-altman-ama-reddit.

[users] discover information."[6]  Recent press reports indicate that Perplexity is off to a promising start, having nearly completed a fundraising round at a $9 billion valuation.[7]  In written correspondence, OpenAI appears to concede that it has an "agreement[] with Perplexity AI [that] relates to [an] OpenAI[] API product."  Ex. C, at 2.  But if OpenAI makes its models available to Perplexity—whether via an API or other means—any related agreements pertain to "generative AI's relationship with . . . distribution," a topic that Plaintiffs, again, intend to explore at the Evidentiary Hearing through a witness from OpenAI.  See Ex. B, at 4.

**Request No. 6**

Request No. 6 seeks "[d]ocuments sufficient to show OpenAI's revenues, expenses, profits, capital raises, stock sales, and valuation on a quarterly or annual basis since the beginning of 2022."  Ex. A, at 11.  The Court's liability opinion expressly notes that "venture capitalists and other investors have stayed away from funding new search ventures."  *United States v. Google LLC*, 2024 WL 3647498, at *13 (D.D.C. Aug. 5, 2024).  Google expects that the record will look very different with respect to companies like OpenAI.  Just last month, OpenAI closed the largest venture capital funding round ***of all time***.[8]  Evidence of the ease with which OpenAI has raised money will provide significant evidence undercutting several of Plaintiffs' overreaching remedies.

---

[6] *See, e.g.*, *What is Perplexity?*, PERPLEXITY AI, *available at* https://www.perplexity.ai/hub/faq/what-is-perplexity.

[7] *See, e.g.*, Berber Jin, *AI Startup Perplexity to Triple Valuation to $9 Billion in New Funding Round*, WALL STREET JOURNAL (Nov. 5, 2024), *available at* https://www.wsj.com/tech/ai/ai-startup-perplexity-to-triple-valuation-to-9-billion-in-new-funding-round-f2fb8c2c.

[8] *See* Ira Fried, *OpenAI Raises $6.6 Billion In Largest VC Round Ever*, AXIOS (Oct. 2, 2024), *available at* https://www.axios.com/2024/10/02/openai-new-funding-round-restructuring.

**Request No. 7**

Request No. 7 seeks documents sufficient to show the types and quantity of data used to train certain models that OpenAI has developed or licensed for use in connection with any potential or actual Generative AI Tool or AI Search Tool. *See* Ex. A, at 12. Request No. 7 extends to documents sufficient to show the extent to which search engine click-and-query data or first-party data is used to train any part of those models. *Id.* Such information will bear on Plaintiffs' claim that "Google's ability to leverage its monopoly power to feed artificial intelligence features is an emerging barrier to competition and risks further entrenching Google's dominance." ECF No. 1052, at 7.

For its part, after initially refusing to produce anything, OpenAI has agreed to provide discovery with respect to only one of those models—i.e., GPT-3. See Ex. C, at 2–3. But there is no principled basis to limit OpenAI's production to that one model. For nearly two years, Microsoft's Bing has been using at least one *successor* to GPT-3, known as GPT-4.[9] To whatever extent OpenAI prefers to produce outdated documents because of competitive sensitivities, a protective order is in place to address that, but OpenAI may not arrogate to itself the right to withhold relevant documents entirely.

**Request No. 8**

Request No. 8 seeks "[c]opies of any agreements and any amendments thereto in OpenAI's possession, custody, or control licensing content for use in connection with any Generative AI Tool and any AI Search Tool." Ex. A, at 13. The request is relevant because Plaintiffs have claimed that Google can "leverage its monopoly" to secure the rights to "content

---

[9] *See* Yusuf Mehdi, *Confirmed: The New Bing Runs On OpenAI's GPT-4*, available at https://blogs.bing.com/search/march_2023/Confirmed-the-new-Bing-runs-on-OpenAI%E2%80%99s-GPT-4.

created by third parties" and thereby "feed [Google's] artificial intelligence features." ECF No. 1052, at 7; *see also* ECF No. 1062-1, § IV.C. Public press accounts suggest that OpenAI has dozens of such agreements, belying the notion that Google has any particular advantage in securing the rights to content in the artificial intelligence space.[10] OpenAI has refused to produce any of these agreements, and should be compelled to produce a full set of them.

### Request No. 9

Request No. 9 seeks "[d]ocuments sufficient to show OpenAI's understanding of the relative competitive position of Generative AI Tools and AI Search Tools," including "documents sufficient to show the relative download or usage rate of ChatGPT compared to other Generative AI Tools and/or AI Search Tools." Ex. A, at 14. The request is relevant because Plaintiffs have sought to limit how Google may compete with respect to artificial intelligence products. *See, e.g.*, ECF No. 1062-1 § IV.F (proposing that the Court order Google to "divest any . . . interest" in certain "AI Product[s]" within six months ). Google expects that OpenAI's documents will tell a very different story than Plaintiffs, and prove that Plaintiffs' proposed remedy would "chill competition, rather than foster it." *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 136 (D.D.C. 2002) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993)), *aff'd*, 373 F.3d 1199 (D.C. Cir. 2004).

### Request No. 10

Request No. 10 seeks "[a]ll minutes, recordings, summaries, or reports of meetings, whether formal or informal, of [OpenAI's] board of directors (including committees or

---

[10] *See, e.g.*, Danny Goodwin, *OpenAI's Growing List of Partnerships*, SEARCH ENGINE LAND (June 5, 2024), *available at* https://searchengineland.com/openais-growing-list-of-partnerships-442974 ("OpenAI has announced 30 significant deals with tech and media brands to date, including three in the past week . . . .").

7

subgroups), addressing or discussing: (a) Search distribution; (b) Competitions, competitors, strategy, or market analysis in features, paid or unpaid, that appear in a Generative AI Tool or an AI Search Tool; (c) Competition, competitors, strategy, or market analyses in generative artificial intelligence; (d) Competition, competitors, strategy, or market analyses in search advertising; or (e) Competition, competitors, strategy, or market analyses in digital advertising." Ex. A, at 15–16.  OpenAI has agreed to "produce non-privileged board minutes relating to SearchGPT or search."  Ex. C, at 3.  Google does not understand the basis for OpenAI's narrow circumscription of this request, which would exclude, for instance, Board minutes and reports relating to "[c]ompetition, competitors, strategy, or market analyses in generative artificial intelligence."  Google, for its part, agreed to produce minutes and formal reports of Alphabet's board of directors relating to this subject matter, and given that Plaintiffs intend to put a thumb on the competitive scale for OpenAI in particular, there is no reason for OpenAI not to do the same.  To the contrary, Plaintiffs' Proposed Final Judgment seeks to restrain Google in a variety of respects relating to artificial intelligence, and Google therefore is entitled to present in its defense the analyses presented to OpenAI's board of directors on the subject.

      c. **The Court May Resolve The Present Dispute**

Google understands that OpenAI intends to argue that this Court may not resolve the present dispute, apparently on the logic that the Federal Rules of Civil Procedure require that Google must "move the court for the district where compliance is required for an order compelling production."  FED. R. CIV. P. 45(d)(2)(B)(i).  But—as Google informed OpenAI during the parties' negotiations—that provision has been modified by the Case Management Order and Section 13 of the Clayton Act (15 U.S.C. § 23).  The CMO is crystal clear: "To assist the Parties in planning discovery, and in view of the geographic dispersion of potential witnesses

8

in this action outside this District, the parties are permitted, under 15 U.S.C. § 23, to issue nationwide discovery and trial subpoenas from this Court." ECF No. 85 ¶ 29.  As courts have recognized, provisions like these and Section 13 of the Clayton Act vest in courts nationwide power not only to issue subpoenas but to *enforce* them too.  *See, e.g.*, *FTC v. Kroger Co.*, 2024 WL 3400098, at *3 (D. Or. July 12, 2024) (enforcing subpoena pursuant to Section 13 of the Clayton Act even though the "subpoena requires compliance in the District of Minnesota"). Thus, whatever might be said of FRCP 45(d)(2)(B)(i) in a non-antitrust case, the Clayton Act vests this Court with authority to resolve this dispute.

Insisting that Google enforce its subpoena in the Northern District of California would be a profound waste of time.  As the Court rightly recognized earlier in this litigation when Yelp insinuated that it would mount a similar argument, it is highly likely that "a judge somewhere else . . . would just boot it back to [this Court]," and, so, asking the Northern District of California to weigh in would "not be the most efficient way to get this taken care of."  Hr'g Tr. 88-89 (Aug. 31, 2021).  The same observation is just as true now, and the Court should order OpenAI's compliance with request nos. 1 and 5–10.

## II. OPENAI'S POSITION STATEMENT

Google's submission presents two separate problems: Google seeks relief in the wrong forum and the dispute is not ripe. On the former point, the Northern District of California is the proper forum for this dispute. On the latter point, despite Google having served a facially overbroad document subpoena in late October, OpenAI has already agreed to produce documents in response to most of Google's document requests. For the remaining requests, OpenAI asked Google to provide its position in writing so that OpenAI may consider it. Google refused, unilaterally declared an impasse, and sprinted here to raise this dispute with the Court for reasons

9

that remain unclear to OpenAI. For either of these reasons, the Court should deny Google's requested relief.

Under Federal Rule of Civil Procedure 45, Google must "move the court for the district ***where compliance is required*** for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i) (emphasis added). This District routinely applies Rule 45's plain language and denies motions to compel where the subpoena directs compliance within another district. *See, e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, 344 F.R.D. 281, 282 (D.D.C. 2023) (denying motion to compel because the proper court to bring the motion, where the subpoena "directs production," was the District of Delaware); *United States v. Preston*, No. CV 13-00265 (RC), 2015 WL 13708609, at *2 (D.D.C. Aug. 24, 2015) (dismissing motion to compel where another court was "the appropriate court to review this motion"). To protect the interests of nonparties, subpoena disputes should be resolved locally absent "exceptional circumstances." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.[11]

Here, nonparty OpenAI is based in the Northern District of California, which is why Google's subpoena requires that OpenAI produce the requested documents in "San Francisco, CA." Google's Subpoena, Ex. D at 1. That ends the inquiry—should Google wish to move to compel, it must do so in the Northern District of California. Google itself has argued that the only court that may resolve nonparty subpoena disputes is the district where compliance is required, which, for Google, is also the Northern District of California. *See American Marriage Ministries v. Google, LLC*, No. 21-MC-80040-SK, 2021 WL 1526757, at *3 (N.D. Cal. Apr. 12,

---

[11] Google may claim that because this is an antitrust action, the Court's Case Management Order confers jurisdiction. Not so. The Clayton Act provides that "subpoenas ***for witnesses*** who are required to attend a court of the United States in any judicial district in any case, civil or criminal, arising under the antitrust laws may run into any other district." 15 U.S.C. § 23 (emphasis added). The statute does not address subpoenas for production of documents like Google's, nor has OpenAI found any court to have so held.

2021) (subpoena directed to Google and requiring performance in Mountain View, California, "falls squarely within this Court's purview under Rule 45").

The Court can rest assured that nonparty OpenAI does not seek to delay or stonewall here. After Google served the document subpoena on October 23, OpenAI served written responses and objections on November 6, where OpenAI agreed to produce certain communications and agreements, and offered to meet and confer on the remaining requests. OpenAI's Responses and Objections, Ex. A at 7-18. OpenAI and Google met and conferred for an hour on November 11, during which Google repeatedly directed OpenAI to Plaintiffs' proposed remedy framework (ECF No. 1052) to establish the relevance of all of the subpoena's requests. Google also asked OpenAI to send a letter describing OpenAI's positions. After reviewing Plaintiffs' proposed remedy framework, OpenAI sent Google a letter on November 19 in which OpenAI agreed to search through and produce even more documents in response to Google's requests. OpenAI's 11/19/24 Letter, Ex. C at 2-3. These documents include OpenAI's most confidential—competitively sensitive data concerning ChatGPT and SearchGPT usage quantities, technical information about training data, and highly sensitive documents like board minutes. *See id.* Despite these compromises, Google failed to offer any further explanation for the so-called impasse. In addition, yesterday, the U.S. DOJ served its own subpoena on OpenAI, and OpenAI has informed both Google and the U.S. DOJ that it intends to produce any documents simultaneously to both parties.

As a nonparty, OpenAI has diligently and expeditiously investigated the issues raised by Google's subpoena, and has now agreed to produce documents in response to seven of Google's 11 requests. OpenAI sincerely believes that if Google shares its rationale on the remaining requests and meaningfully engages in the meet-and-confer process, OpenAI and Google may yet

reach resolution. But Google has come to the wrong forum prematurely, and the Court should not indulge that effort.

Thus, OpenAI respectfully asks the Court to deny Google's requested relief.

Dated: November 22, 2024                Respectfully submitted,

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com
*Counsel for Defendant Google LLC*

By: _____

Ashok Ramani
Serge A. Voronov
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
Tel: 650-752-2000
ashok.ramani@davispolk.com
serge.voronov@davispolk.com

*Counsel for OpenAI, Inc.*