# EXHIBIT C

**Davis Polk**

Serge A. Voronov
+1 650 752 2055
serge.voronov@davispolk.com

Davis Polk & Wardwell LLP
1600 El Camino Real
Menlo Park, CA 94025
davispolk.com

November 19, 2024

Re: *United States of America, et al. v. Google LLC.* (Case No. 1:20-cv-3010-APM, D.D.C.)
   *State of Colorado, et al. v. Google LLC.* (Case No. 1:20-cv-3715-APM, D.D.C.)

Benjamin M. Greenblum
Williams & Connolly LLP
680 Maine Avenue SW
Washington DC 20024

Dear Ben:

We write on behalf of nonparty OpenAI, Inc. to confirm what we discussed during our meet-and-confer on November 11, 2024, about your client Google LLC's document subpoena dated October 23, 2024. Based on our discussion, we are pleased to offer compromises on several of the document requests that we trust will resolve all outstanding disputes. If that is not the case, please provide Google's position in writing so that OpenAI may consider it.

During our call, you mentioned that Google intends to raise any disputes in the upcoming joint status report. But the Court's Order dated September 18, 2024, explains that the "parties"—not third parties like OpenAI—shall file the joint status report. (ECF No. 1043 at 2.) Although Google and OpenAI are not at impasse, if Google decides to seek judicial resolution as to its third-party subpoena to OpenAI, the Federal Rules of Civil Procedure require that Google must "move the court for the district ***where compliance is required*** for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i) (emphasis added); *In re Boeing Co. Aircraft Sec. Litig.*, 344 F.R.D. 281, 282 (D.D.C. 2023) (concluding that "a subpoena 'requires compliance' in the location where it directs production" and dismissing motion to compel); *United States v. Preston*, No. CV 13-00265 (RC), 2015 WL 13708609, at *2 (D.D.C. Aug. 24, 2015) (dismissing motion to compel for lack of jurisdiction where another court was "the appropriate court to review this motion"). Here, because the subpoena requires production of documents in San Francisco, California, the Northern District of California is "where compliance is required."

That said, because OpenAI and Google are not yet at impasse, OpenAI provides its position on the issues discussed during our call, subject to and without waiver of any objections in its responses and objections to Google's subpoena dated November 6, 2024.

OpenAI has interpreted "Generative AI Tool" and "AI Search Tool" to mean OpenAI's consumer-facing products named ChatGPT and SearchGPT, respectively. OpenAI further explains that SearchGPT includes both the prototype called SearchGPT, which OpenAI launched on July 25, 2024, and ChatGPT Search, which OpenAI launched on October 31, 2024. These definitions exclude OpenAI's API, which provides developers with access to OpenAI's models.

Request No. 1: This Request seeks "documents and other communications between OpenAI and any third party proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution" of ChatGPT or SearchGPT. You directed us to Plaintiffs' proposed remedy framework (ECF No. 1052) to establish the relevance of this request. We understand that the government may seek to prohibit Google's

**Davis Polk**

control of "the most popular distribution channels" through "Google's monopoly-funded revenue share payments." (ECF No. 1052 at 5.) OpenAI's promotion, preinstallation, syndication, or other distribution agreements are not relevant to remedying Google's current or prospective anticompetitive conduct. To the extent that you continue to assert that these documents are relevant, OpenAI requests that Google provide a particularized explanation of the relevance. In addition, given that this request would implicate confidential commercial information, please explain why Google has a "substantial need" for such discovery "that cannot be otherwise met without undue hardship." *See* Fed. R. Civ. P. 45(d)(3)(C)(i).

Request Nos. 3, 4, and 11: These Requests seek documents or data concerning ChatGPT or SearchGPT. Having reviewed Plaintiffs' proposed remedy framework, the usage of OpenAI's products is not relevant to remedying Google's current or prospective anticompetitive conduct. Nevertheless, in order to narrow the disputed issues, OpenAI will agree to conduct a reasonable search of reasonably accessible centralized repositories, and produce non-privileged documents in its possession, custody, or control that are sufficient to show OpenAI's estimates of: (1) the total number of downloads of the mobile and desktop applications of ChatGPT within the United States from May 6, 2022, to October 22, 2024 (to the extent that such data exists); (2) the estimated daily active users of ChatGPT or SearchGPT within the United States from May 6, 2022, to October 22, 2024 (to the extent that such data exists); and (3) the total number of user inputs to ChatGPT or SearchGPT within the United States from January 2023 to October 22, 2024, through a browser, mobile, or desktop application (to the extent that such data exists).

Request No. 5: This Request seeks "agreements and any amendments thereto between OpenAI and any person or entity affiliated with Microsoft and/or Perplexity AI." OpenAI has already agreed to produce non-privileged agreements between OpenAI and Microsoft in connection with the Bing Search API, and any amendments thereto, in its possession, custody, or control. When we asked how other agreements, such as those relating to Microsoft's investment in OpenAI are relevant, you asserted that the incentives to invest and Microsoft's decision to invest in the AI space are relevant to the proceeding. However, under Plaintiffs' proposed remedy framework (ECF No. 1052), investments in the AI space are not relevant to remedying Google's current or prospective anticompetitive conduct. You also asserted that Perplexity AI has a partnership with OpenAI that may relate to Microsoft and/or Bing. But OpenAI's agreements with Perplexity AI relates to OpenAI's API product, which is not relevant to this case. To the extent that you continue to assert that these other requested agreements are relevant, OpenAI requests that Google provide a particularized explanation of the relevance. In addition, given that this request would implicate confidential commercial information, please explain why Google has a "substantial need" for such discovery "that cannot be otherwise met without undue hardship." *See* Fed. R. Civ. P. 45(d)(3)(C)(i).

Request No. 6: This Request seeks documents "sufficient to show OpenAI's revenues, expenses, profits, capital raises, stock sales, and valuation." Under Plaintiffs' proposed remedy framework (ECF No. 1052), OpenAI's financial performance is not relevant to remedying Google's current or prospective anticompetitive conduct. To the extent that you continue to assert that these documents are relevant, OpenAI requests that Google provide a particularized explanation of the relevance. In addition, given that this request would implicate confidential commercial information, please explain why Google has a "substantial need" for such discovery "that cannot be otherwise met without undue hardship." *See* Fed. R. Civ. P. 45(d)(3)(C)(i).

Request No. 7: This Request seeks documents sufficient to show the "types and quantity of data used to train" any model that OpenAI has developed in connection with ChatGPT or SearchGPT. We understand that Plaintiffs' proposed remedy framework asserts that "Google's unlawful behavior has enabled it to accumulate and use data at the expense of rivals." (ECF No. 1052 at 6.) OpenAI's own training data is not relevant to remedying Google's current or prospective anticompetitive conduct. In addition, Google has not provided a substantial need for such discovery. Further, as we noted on our call, producing information

**Davis Polk**

about the types and quantity of training data used by OpenAI is extremely burdensome and constitutes OpenAI's core trade secrets and confidential information. Nevertheless, in order to narrow the disputed issues, OpenAI will agree to conduct a reasonable search of reasonably accessible centralized repositories, and produce non-privileged documents in its possession, custody, or control that are sufficient to show the types and quantity of data used to train the GPT-3 model.

Request No. 8: This Request seeks "any agreements and any amendments . . . licensing content for use" in connection with ChatGPT and SearchGPT. Under Plaintiffs' proposed remedy framework (ECF No. 1052), such agreements are not relevant to remedying Google's current or prospective anticompetitive conduct. To the extent that you continue to assert that these agreements are relevant, OpenAI requests that Google provide a particularized explanation of the relevance. In addition, given that this request would implicate confidential commercial information, please explain why Google has a "substantial need" for such discovery "that cannot be otherwise met without undue hardship." *See* Fed. R. Civ. P. 45(d)(3)(C)(i).

Request Nos. 9 and 10: These Requests seek documents concerning "OpenAI's understanding of the relative competitive position" of ChatGPT and SearchGPT as well as board minutes addressing several related topics. Under Plaintiffs' proposed remedy framework (ECF No. 1052), OpenAI's own perception and analysis of its competitive position, to the extent such documents exist, is not relevant to remedying Google's current or prospective anticompetitive conduct. In addition, Google has not provided a substantial need for such discovery. Nevertheless, in order to narrow the disputed issues, OpenAI will agree to conduct a reasonable search of reasonably accessible centralized repositories, and produce non-privileged board minutes relating to SearchGPT or search.

\* \* \*

It is our expectation that Google will respect its responsibility to take reasonable steps to avoid imposing undue burden on OpenAI. As such, we look forward to hearing from Google—in writing, by videoconference, or both as appropriate—on the issues discussed above.

Very truly yours,

*Serge Voronov*

Serge A. Voronov

**Electronic Delivery**