IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**JOINT STATUS REPORT OF GOOGLE AND PERPLEXITY**

Pursuant to the Court's December 10, 2024 Order, Google and Perplexity AI (collectively, the "Companies") submit the following statements with respect to Perplexity AI's compliance with Google's subpoena.

**I.    GOOGLE'S POSITION STATEMENT**

Perplexity has not produced a single document pursuant to the October subpoena. Perplexity served responses and objections to the subpoena on Friday, December 6, in most instances listing boilerplate objections while "invit[ing] Google to meet and confer regarding the scope of [each] Request." *See* Ex. A at RFP Nos. 1, 5, 6, 7, 9, 10, 11, 13 & 14. On December 9, the Companies met and conferred regarding Perplexity's objections.

On December 11, 2024, Perplexity informed Google that it would agree to comply with most of the requests for production. *See* Ex. B. There remain, however, certain disputes between the Companies.

**A. Background**

Perplexity AI is an artificial intelligence company founded in 2022.[1] It offers a "[non-]traditional search engine" designed to "revolutionize the way [users] discover information."[2] It does so by "provid[ing] answers to questions based on information it gathers from searching the web" using artificial intelligence.[3] Press reports indicate that Perplexity finalized a new fundraising round in November 2024 at a $9 billion valuation.

As the Court is aware, Plaintiffs' Proposed Final Judgment contains multiple provisions related to artificial intelligence. Plaintiffs accordingly began meeting with representatives of Perplexity shortly after the Court's liability opinion issued. On the evening of December 10, 2024, further to the Court's Order that Plaintiffs disclose the actual names of the witnesses they intend to call, Plaintiffs disclosed that they will call Dmitry Shevelenko, the Chief Business Officer of Perplexity, as a trial witness.

If Mr. Shevelenko is going to speak even just to some of the broad topics disclosed on Plaintiffs' placeholder disclosure of Perplexity as a witness—"regarding generative AI's relationship with Search Access Points, distribution, barriers to entry and expansion, and data sharing," ECF No. 1072-2, at 4—then Google is entitled to discovery bearing on each of these topics adequate to cross-examine him and to respond to the Plaintiffs' proposed remedies.

---

[1] *See, e.g.*, Berber Jin, *AI Startup Perplexity to Triple Valuation to $9 Billion in New Funding Round*, WALL STREET JOURNAL (Nov. 5, 2024), *available at* https://www.wsj.com/tech/ai/ai-startup-perplexity-to-triple-valuation-to-9-billion-in-new-funding-round-f2fb8c2c.

[2] *See, e.g.*, *What is Perplexity?*, PERPLEXITY AI, *available at* https://www.perplexity.ai/hub/faq/what-is-perplexity.

[3] *See* Jin, *supra* n.1.

The disputes ripe for the Court's resolution as of this status report are as follows:

**Requests Related to Perplexity Agreements [Request Nos. 1, 5–7]**

Request No. 1 seeks "[a]ll documents and other communications between Perplexity AI and any third party proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service," including "negotiations over agreements as well as final executed agreements that Perplexity AI has entered into" in that regard. Ex. A at RFP No. 1. Request Nos. 5–7 seek Perplexity's agreements with Microsoft and OpenAI, specifically. *See* Ex. A at RFP Nos. 5–7. Perplexity has not disputed the relevance of any of these requests, nor could it—inasmuch as "distribution" of its product is expressly within the topics that Perplexity's witness has agreed to cover at trial, *supra*, and its partnerships with Microsoft and OpenAI are indisputably relevant.

*The Agreements Themselves.* After negotiation, Perplexity has agreed to produce the agreements. Perplexity has been unable, however, to commit to any particular timeframe by which it will do so. Given the limited time for the completion of fact discovery—a constraint exacerbated by Perplexity's failure to timely respond to Google's subpoena—Google respectfully requests that the Court order Perplexity to produce these agreements by December 20, 2024.

Google is aware of no conceivable justification for further delay. The agreements are a discrete, easily retrievable set of documents that can be collected with minimal burden. They are foundational documents that will guide other written and deposition discovery, such that they should be produced without delay. In conferral, Perplexity sought to justify delay based on provisions requiring notification to third parties that the agreements would be produced. If Perplexity has not yet notified its counterparties of Google's subpoena—now served nearly two

3

months ago—that is a problem of Perplexity's own making. Besides, with respect to Request Nos. 5–7, the relevant counterparties are Microsoft and OpenAI, both of whom know full well that Google has subpoenaed such agreements, and who are likewise on Plaintiffs' witness list. In short, the time has come and then some for Perplexity to produce these agreements. The Court should order it to do so.

***Communications With Third Parties Regarding the Agreements.*** The Court should likewise reject Perplexity's attempt to withhold communications relating to such agreements. Such communications will shed light on issues likely to arise at the remedies hearing in a way that the final, executed agreements may not. For example, if Perplexity has not sought to negotiate for distribution—or, by contrast, if Perplexity has successfully struck a deal every time it has endeavored to negotiate for distribution—that may suggest a very different competitive landscape than one Plaintiffs will paint at trial. More generally, the Court has made clear that with respect to third party trial witnesses, custodial ESI is not an inappropriate request for Google to make. Hr'g Tr. (Nov. 26, 2024), at 72:9–12 ("it is fair for you to request custodial records of someone that they are anticipating calling to trial or to the remedies hearing"). If a senior Perplexity executive is going to be called to testify at trial, Google is entitled to cross-examine using not only the final agreements Perplexity has reached, but targeted custodial discovery regarding the negotiation of those agreements.

In conferral, Perplexity objected that a custodial search would be burdensome. That is what negotiations over custodians, search terms, and hit reports are for. While the Perplexity witness's identity was only revealed (to Google) last evening, Google will work productively with Perplexity on an appropriately tailored set of custodians and search terms necessary to reach the at-issue topics. Google has no intention of seeking unreasonably burdensome custodial

4

discovery, but the specter of (unsubstantiated) burden is no basis for avoiding custodial ESI altogether. Google therefore respectfully requests Perplexity be ordered to produce communications relating to its agreements.

**Content Licensing [Request No. 11]**

Request No. 11 seeks "[c]opies of any agreements and any amendments thereto in Perplexity AI's possession, custody, or control licensing content for use in connection with the Perplexity Service." Ex. A at RFP No. 11. As the Court is aware, Plaintiffs have claimed that Google can "leverage its monopoly" to secure the rights to "content created by third parties" and thereby "feed [Google's] artificial intelligence features." ECF No. 1052, at 7. And Plaintiffs are seeking remedies related to the licensing of content. *See, e.g.*, ECF No. 1062-1, § IV.C.

For its part, just last week, Perplexity publicly announced that it has entered into revenue-sharing agreements with more than a dozen new media partners, including the *Los Angeles Times* and *The Independent*.[4] The terms of these agreements are directly relevant and can be produced with minimal burden. But Perplexity has agreed to produce copies of licensing content agreements only to the extent "*related to AI training purposes*." Ex. B at 4 (emphasis added). There is no basis for that limitation. If, for instance, Perplexity licenses content to include in its responses to user queries, that agreement is relevant even if Perplexity's position is that such content is not used to train a particular model.

In the hours before this status report was due, Perplexity insisted yet further conferral was necessary on this issue. But Google has sought to confer at every turn, and has been unfairly delayed by Perplexity's ignorance not only of service, but of emails to the same executives that

---

[4] *See* AI Startup Perplexity Adds The Independent, LA Times To Its Publishers' Program, REUTERS (Dec. 5, 2024), *available at* https://www.reuters.com/business/media-telecom/ai-startup-perplexity-adds-independent-la-times-its-publishers-program-2024-12-05/.

met with Plaintiffs back in September, including the executive who has now belatedly been disclosed as a trial witness; and by the fact that as things stand, nearly two months after the subpoena was served, Perplexity has produced nothing. The agreements called for by Request No. 11 are relevant, easily retrieved, and should be produced promptly.

## II.     PERPLEXITY'S POSITION STATEMENT

Perplexity served its Responses and Objections on December 6, 2024, in compliance with the Court's Order, dated November 26, 2024. In those Responses, Perplexity agreed to search for and produce non-privileged documents in response to five of Google's Requests, and invited Google to meet and confer on the scope of the remaining Requests. Perplexity and Google have substantively met and conferred twice already since Monday, December 9, 2024, and have made significant progress over the course of just three days.

Following the parties' latest meet and confer discussions, Perplexity has agreed to produce everything Google has requested with respect to twelve of Google's fourteen Requests. Moreover, Perplexity anticipates beginning its production of responsive documents to Google as soon as this week. The parties' progress—and Perplexity's efforts to accommodate almost every one of Google's demands—are reflected in the chart below, which Perplexity believes speaks for itself.

| RFP | Perplexity's Response/Agreement as of December 11, 2024 |
|---|---|
| Google RFP No. 1: All documents and other communications between Perplexity AI and any third party proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service. Documents within the scope of this request include, but are not limited to, negotiations over agreements as well as final executed agreements that Perplexity AI has entered into with any third | Perplexity has agreed to produce third party agreements regarding the distribution of Perplexity.<br><br>As discussed, *infra*, Perplexity is still evaluating the burden associated with Google's request for all communications between Perplexity and every third party Perplexity has ever discussed the possibility of distributing its products and service |

| RFP | Perplexity's Response/Agreement as of December 11, 2024 |
|---|---|
| party with respect to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service. | with—as well as the request Google raised for the first time this morning regarding an ESI search protocol. |
| Google RFP No. 2: All communications between Perplexity AI and one or more Plaintiffs in this litigation discussing or relating to Google or this litigation. | Perplexity will produce all communications between Perplexity AI and one or more Plaintiffs in this litigation discussing or relating to Google or this litigation from August 5, onward. |
| Google RFP No. 3: Documents or data sufficient to show the total number downloads of any Perplexity AI app. | Perplexity will produce documents or data sufficient to show the total number downloads of any Perplexity AI app. |
| Google RFP No. 4: Documents or data sufficient to show the daily active users of the Perplexity Service since launch. | Perplexity will produce documents or data sufficient to show the daily active users of the Perplexity Service on a monthly basis from May 2022 to present. |
| Google RFP No. 5: Copies of any agreements between Perplexity AI and Microsoft as well as copies of any amendments thereto. | Perplexity will produce copies of Perplexity's agreements with Microsoft, as well as copies of any amendments thereto. |
| Google RFP No. 6: To the extent not produced in response to Request No. 5, documents sufficient to show the respects in which and the terms upon which Perplexity AI has "[p]artner[ed] with Microsoft." See Ted Roduner, Perplexity powers its "answer engine" with Azure OpenAI Service, MICROSOFT FOR STARTUPS, available at https://startups.microsoft.com/blog/perplexity-ai-powersits-answer-engine-with-azure-openai-service/. | Perplexity will produce documents sufficient to show the respect in which and the terms upon which Perplexity has partnered with Microsoft, to the extent not produced in response to RFP No. 5. |
| Google RFP No. 7: Copies of any agreements between Perplexity AI and OpenAI as well as copies of any amendments thereto. | Perplexity will produce copies of Perplexity's agreements with OpenAI, as well as copies of any amendments thereto. |
| Google RFP No. 8: Documents sufficient to show Perplexity AI's revenues, expenses, profits, capital raises, stock sales, and valuation on a quarterly or annual basis since the beginning of 2022. | Perplexity will produce audited financials since the beginning of 2022. |
| Google RFP No. 9: Documents sufficient to show any presentation that Perplexity AI has made regarding any plan to monetize the Perplexity Service. Documents within the scope of this request include any pitch decks | Perplexity will produce decks sufficient to show Perplexity AI's monetization plans. |

| RFP | Perplexity's Response/Agreement as of December 11, 2024 |
|---|---|
| describing a plan or proposal to integrate advertisements into users' queries. See Marty Swant, Perplexity's Pitch Deck Offers Advertisers A New Vision For AI Search, DIGIDAY (Aug. 23, 2024), available at https://digiday.com/media-buying/perplexityspitch-deck-offers-advertisers-a-new-vision-for-ai-search/. | |
| Google RFP No. 10: Documents sufficient to show the types and quantity of data used to train any model used in the Perplexity Service. Documents within the scope of this request include documents sufficient to show the extent to which search engine click-and-query data or first-party data is used to train any part of any model used in the Perplexity Service. Documents within the scope of this request also include documents sufficient to show the operations and functionality of any retrieval augmented generation techniques employed in the Perplexity Service. | Perplexity will produce documents sufficient to show what trains any model used in the Perplexity Service, if any. |
| Google RFP No. 11: Copies of any agreements and any amendments thereto in Perplexity AI's possession, custody, or control licensing content for use in connection with the Perplexity Service. | Perplexity will produce copies of any licensing content agreements related to AI training purposes.<br><br>As discussed, *infra*, Google has demanded that Perplexity agree to produce licensing content agreements unrelated to AI or AI training purposes. Perplexity has asked Google to meet and confer on the relevance of these agreements. |
| Google RFP No. 12: Documents sufficient to show Perplexity AI's understanding of the relative competitive position of Generative AI Tools and AI Search Tools. Documents within the scope of this request include documents sufficient to show the relative download or usage rate of the Perplexity Service compared to other Generative AI Tools and/or AI Search Tools. | Perplexity will produce documents sufficient to show Perplexity's understanding of the relative market positions of generative AI tools or AI search tools (including its own position). |
| Google RFP No. 13: All minutes, recordings, | Perplexity will produce these board notes |

| RFP | Perplexity's Response/Agreement as of December 11, 2024 |
|---|---|
| summaries, or reports of meetings, whether formal or informal, of your company's (and each of its divisions' or subsidiaries') board of directors (including committees or subgroups), addressing or discussing:<br><br>o Search distribution;<br>o Competition, competitors, strategy, or market analysis in features, paid or unpaid, that appear in a Generative AI Tool or an AI Search Tool;<br>o Competition, competitors, strategy, or market analyses in generative artificial intelligence;<br>o Competition, competitors, strategy, or market analyses in search advertising; or<br>o Competition, competitors, strategy, or market analyses in digital advertising. | subject to redactions for nonresponsive confidential information. |
| Google RFP No. 14: From January 2023 to the present, separately by month, operating system, and device type, produce documents or data sufficient to show the total number of interactions with the Perplexity Service, both in aggregate and performed through each type of access point. | Perplexity will produce data sufficient to show the total number of interactions with Perplexity, both in aggregate and performed through each type of access point. |

Thus, Perplexity believes that only two issues remain outstanding, specifically related to RFP Nos. 1 and 11. Despite Perplexity's repeated efforts to work with Google in good faith and to accommodate Google's Requests, Google has responded to Perplexity by repeatedly setting arbitrary deadlines for Perplexity to provide responses, and by accusing Perplexity of intentionally delaying the discovery process. To be clear, Perplexity still sees a clear path toward agreement without the Court's involvement. It simply requires more than three-and-a-half business days to discuss these issues internally and with Google—including as to issues that Google first raised today.

**Google's RFP No. 1[5]**

Perplexity anticipates being able to produce third-party agreements regarding the distribution of Perplexity and is working rapidly to collect such documents and prepare them for production. In full transparency, Perplexity has flagged to Google that there are likely to be various provisions in these agreements that would require Perplexity to provide notice of disclosure to the various counterparties, which may cause a slight delay in their production.

With respect to Google's request for all communications "proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service," Perplexity has explained that it is still evaluating the burden associated with collecting such a potentially expansive universe of documents. Perplexity understands that the Court will be hearing a similar dispute between OpenAI and Google this Friday, December 13, 2024. Agreeing on this matter before then would be premature, and Perplexity respectfully requests that the Court allow the parties to reserve further discussion on this issue until after the Court's ruling on the matter between OpenAI and Google.

**Google's RFP No. 11[6]**

As for Request No. 11, Perplexity has agreed to produce copies of any licensing agreements related to AI training purposes. Google has demanded that Perplexity agree to produce licensing content agreements unrelated to AI or AI training purposes. Perplexity has asked Google to meet and confer on the relevance of these agreements. To the extent Google can explain why agreements licensing content outside of the context of AI or AI training would

---

[5] Google's RFP No. 1 requests "All documents and other communications between Perplexity AI and any third party proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service. Documents within the scope of this request include, but are not limited to, negotiations over agreements as well as final executed agreements that Perplexity AI has entered into with any third party with respect to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service."

[6] Google's RFP No. 11 requests "Copies of any agreements and any amendments thereto in Perplexity AI's possession, custody, or control licensing content for use in connection with the Perplexity Service."

be relevant, Perplexity does not anticipate objecting to their production.

Dated: December 11, 2024                                Respectfully submitted,

By: */s/ John E. Schmidtlein*
    John E. Schmidtlein (D.C. Bar No. 441261)
    Benjamin M. Greenblum (D.C. Bar No. 979786)
    Colette T. Connor (D.C. Bar No. 991533)
    WILLIAMS & CONNOLLY LLP
    680 Maine Avenue, SW
    Washington, DC 20024
    Tel: 202-434-5000
    jschmidtlein@wc.com
    bgreenblum@wc.com
    cconnor@wc.com

    WILSON SONSINI GOODRICH & ROSATI P.C.
    Franklin M. Rubinstein (D.C. Bar No. 476674)
    1700 K Street, NW
    Washington, DC 20006
    Tel: 202-973-8800
    frubinstein@wsgr.com

    ROPES & GRAY LLP
    Mark S. Popofsky (D.C. Bar No. 454213)
    2099 Pennsylvania Avenue, NW
    Washington, DC 20006
    Tel: 202-508-4624
    Mark.Popofsky@ropesgray.com

    Matthew McGinnis (admitted *pro hac vice*)
    Prudential Tower
    800 Boylston Street
    Boston, MA 02199
    Tel: 617-951-7703
    Matthew.McGinnis@ropesgray.com

    *Counsel for Defendant Google LLC*

By: */s/ Grace A. Ramirez*
    Grace A. Ramirez
    gramirez@lewisllewellyn.com
    Lewis & Llewellyn LLP
    601 Montgomery Street, Suite 2000
    San Francisco, CA 94111

(415) 800-0590

*Counsel for Nonparty Perplexity AI, Inc.*