IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Google LLC, <br><br> Defendant. | Case No. 1:20-cv-03010-APM <br><br> HON. AMIT P. MEHTA |

| | |
|---|---|
| State of Colorado, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Google LLC, <br><br> Defendant. | Case No. 1:20-cv-03715-APM <br><br> HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S PROPOSED FINAL JUDGMENT**

WHEREAS, Plaintiffs United States of America, and the States and Commonwealths of Arkansas, California, Georgia, Florida, Indiana, Kentucky, Louisiana, Michigan, Missouri, Mississippi, Montana, South Carolina, Texas, and Wisconsin, by and through their respective Attorneys General, filed their Complaint on October 20, 2020, and their Amended Complaint on January 15, 2021;

AND WHEREAS, Plaintiffs Colorado, Nebraska, Arizona, Iowa, New York, North Carolina, Tennessee, Utah, Alaska, Connecticut, Delaware, District of Columbia, Guam, Hawaii, Idaho, Illinois, Kansas, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Hampshire,

1

New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Vermont, Virginia, Washington, West Virginia, and Wyoming filed their Complaint on December 17, 2020;

AND WHEREAS, the Court conducted a trial and entered Findings of Fact and Conclusions of Law in both actions on August 5, 2024 accepting certain claims and rejecting certain claims of Plaintiffs;

NOW THEREFORE, upon the record at trial and all prior and subsequent proceedings, it is hereby ORDERED, ADJUDGED, AND DECREED:

**I.    JURISDICTION**

This Court has jurisdiction over the subject matter of this action and over Google LLC ("Google").

**II.   APPLICABILITY**

This Final Judgment applies to Google and to each of its officers, directors, agents, employees, subsidiaries, successors, and assigns.

**III.  PROHIBITED CONDUCT**

A.    Google shall not enter into any agreement with a mobile device manufacturer that conditions the licensing of Google Play or any other Google software application on that mobile device manufacturer also distributing, preloading, placing, displaying, using, or licensing the Google Search Application on mobile phones and tablets sold in the United States.

B.    Google shall not enter into any agreement with a mobile device manufacturer that conditions the licensing of Google Play or any other Google software application on that mobile device manufacturer also distributing, preloading, placing, displaying, using, or licensing the Chrome Browser Application on mobile phones and tablets sold in the United States.

C. Google shall not enter into any agreement with a mobile device manufacturer that conditions the licensing of the Google Search Application, the Chrome Browser Application, or Google Play, on the mobile device manufacturer also distributing, preloading, placing, displaying, using, or licensing the Google Assistant Application on mobile phones and tablets sold in the United States.

D. Google shall not enter into any agreement with a mobile device manufacturer that conditions the licensing of the Google Search Application, the Chrome Browser Application, or Google Play, on the mobile device manufacturer also distributing, preloading, placing, displaying, using, or licensing the Gemini Assistant Application on mobile phones and tablets sold in the United States.

E. Google shall not enter into any agreement with a mobile device manufacturer or wireless carrier that conditions (i) Consideration or (ii) the license of Google Play or any Google software application, on that mobile device manufacturer or wireless carrier refraining from developing, distributing, preloading, placing, displaying, using, selling, or licensing any Third-Party General Search Service on mobile phones and tablets sold in the United States.

F. Google shall not enter into any agreement with a mobile device manufacturer or wireless carrier that conditions (i) Consideration or (ii) the license of Google Play or any Google software application, on that mobile device manufacturer or wireless carrier refraining from developing, distributing, preloading, placing, displaying, using, selling, or licensing any Third-Party Browser on mobile phones and tablets sold in the United States.

G. Google shall not enter into any agreement with a mobile device manufacturer or wireless carrier that conditions (i) Consideration or (ii) the license of Google Play or any Google software application, on that mobile device manufacturer or wireless carrier refraining from

developing, distributing, preloading, placing, displaying, using, selling, or licensing any Third-Party Generative AI Assistive Service on mobile phones and tablets sold in the United States.

  H. Google shall not enter any agreement with a mobile device manufacturer or wireless carrier that conditions the payment for preload, placement, or assignment of an access point for the Google Search Application on the preload, placement, or assignment of any other access point to any of Google Search, the Chrome Browser Application, the Google Assistant Application, and/or the Gemini Assistant Application on mobile phones and tablets sold in the United States.

  I. Google shall not enter any agreement with a mobile device manufacturer or wireless carrier that conditions the payment for preload, placement, or assignment of an access point for the Chrome Browser Application on the preload, placement, or assignment of any other access point to any of the Google Search Application, the Google Assistant Application, and/or the Gemini Assistant Application on mobile phones and tablets sold in the United States.

  J. Google shall not enter any agreement with a mobile device manufacturer or wireless carrier that conditions the payment for preload, placement, or assignment of an access point for the Google Assistant Application or the Gemini Assistant Application on the preload, placement, or assignment of any other access point to any of the Google Search Application and/or the Chrome Browser Application on mobile phones and tablets sold in the United States.

  K. Google shall not enter into any agreement requiring a Browser Developer to set Google Search as the Browser Default Search Engine in a Third-Party Browser in the United States unless the agreement (i) permits the Browser Developer on an annual basis to set a different Default Search Engine in the United States for any Operating System Version and/or Privacy Mode offered by the Browser Developer without foregoing any payments attributable to

an Operating System Version or Privacy Mode where Google Search remains set as the Default Search Engine; and (ii) expressly permits the Browser Developer to promote any Third-Party General Search Service.

      L.      Google shall not enter any agreement requiring Apple Inc. ("Apple") to set Google Search as the Default Search Engine in the United States with respect to any proprietary Apple feature or functionality, including Siri and Spotlight, unless the agreement complies with Section K above.

      M.      Nothing in this Final Judgment shall otherwise prohibit Google from providing Consideration to a mobile device manufacturer or wireless carrier with respect to any Google product or service in exchange for such entity's distribution, placement on any access point, promotion, or licensing of that Google product or service.

      N.      Nothing in this Final Judgment shall prohibit Google from distributing the Google Search Application, the Google Assistant Application, and the Gemini Assistant Application through a single Application Programming Kit (APK) as long as the licensee has the option to disable end-user access to any of those applications and services that the licensee declines to license.

## IV.    COMPLIANCE AND ENFORCEMENT PROCEDURES

### A.    Annual Compliance Report and Compliance Inspection

      1.      Without limiting the sovereign enforcement authority of each of the Plaintiff States, the Plaintiff States will form a committee to coordinate their enforcement of this Final Judgment ("Plaintiff States' Committee"). No Plaintiff State shall take any action to enforce this Final Judgment without first consulting with the United States and with the Plaintiff States' Committee.

2. Google will prepare and submit, on an annual basis, a written report describing its compliance with this Final Judgment ("Annual Compliance Report").

3. To determine and enforce compliance with this Final Judgment, upon written request and on reasonable notice to Google and subject to any lawful privilege, a duly authorized representative of the United States (after consultation with the Plaintiff States' Committee) or of the Attorney General of a Plaintiff State (after consultation with the United States and the Plaintiff States' Committee), may:

    a. Request from Google no more than one interim written report per year ("Interim Report"), under oath if requested, regarding Google's compliance with Part III of this Final Judgment.

    b. Make reasonable requests to Google for production of non-privileged documents and records in its possession, custody, or control sufficient to verify the matters contained in Google's Annual Compliance Report or Interim Report; and

    c. Subject to the reasonable convenience of Google and without restraint or interference from it, interview officers, employees, or agents of Google, who may have counsel present, sufficient to verify the matters contained in Google's Annual Compliance Report or Interim Report.

4. No information or documents obtained by the means provided in this section shall be divulged by the United States or the Plaintiff States to any person, except in the course of legal proceedings to which the United States is a party, or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

5. If, at the time information or documents are furnished by Google to the United States or the Plaintiff States, Google identifies in writing the material in any such information or

documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Google marks each pertinent page of such material, "Confidential and Sensitive Commercial Information Subject to Rule 26(c)(1)(G)" then the United States shall give 10 business days' notice prior to divulging such material in any legal proceeding.

6. Google shall have the right to claim protection from public disclosure, under the Freedom of Information Act, 5 U.S.C. § 552, or any other applicable law or regulation, for any material it submits to the United States or the Plaintiff States under this Final Judgment. After appropriate consideration of such claim of protection, the United States or the Plaintiff States, as the case may be, will either assert that the material is protected from disclosure under law or give Google 10 business days' notice of its intent to disclose the material.

**B.     Internal Compliance Officer**

1. Google shall designate, within 30 days of entry of this Final Judgment, an internal Compliance Officer who shall be an employee of Google with responsibility for administering Google's antitrust compliance program and helping to ensure compliance with this Final Judgment.

2. The Compliance Officer shall supervise the review of Google's activities to ensure that they comply with this Final Judgment. The Compliance Officer may be assisted by other employees of Google.

3. The Compliance Officer shall be responsible for performing the following activities:

    a.   within 45 days after entry of this Final Judgment, distributing a copy of this Final Judgment to all officers and directors of Google;

  b. promptly distributing a copy of this Final Judgment to any person who succeeds to a position described in Paragraph IV.B.3.a;

  c. ensuring that those persons designated in Paragraph IV.B.3.a are annually briefed on the meaning and requirements of this Final Judgment and the U.S. antitrust laws and advising them that Google's legal advisors are available to confer with them regarding any question concerning compliance with this Final Judgment or U.S. antitrust law;

  d. obtaining from each person designated in Paragraph IV.B.3.a an annual written certification that he or she: (i) has read and agrees to abide by the terms of this Final Judgment; and (ii) has been advised and understands that his or her failure to comply with this Final Judgment may result in a finding of contempt of court;

  e. maintaining a record of all persons to whom a copy of this Final Judgment has been distributed and from whom the certification described in Paragraph IV.B.3.d has been obtained;

  f. establishing and maintaining the website provided for in Paragraph IV.C.2.b;

  g. preparing the Annual Compliance Report described in Paragraph IV.A.2 and any Interim Report requested as described in Paragraph IV.A.3.a.

  h. receiving complaints from third parties or the Plaintiffs concerning Google's compliance with this Final Judgment and following the appropriate procedures set forth in Section IV.C;

  i. maintaining a record of all complaints received and action taken by Google with respect to each such complaint; and

j.  ensuring employees retain all relevant documents and electronically stored information, regardless of medium or form, regarding all complaints received pursuant to Paragraph IV.C.1 and action taken by Google with respect to any such complaint.

**C.  Voluntary Dispute Resolution**

1. Third parties may submit complaints concerning Google's compliance with this Final Judgment to the Plaintiffs or the Compliance Officer.

2. Submissions to the Compliance Officer.

a. Third parties or Plaintiffs in their discretion may submit to the Compliance Officer any complaints concerning Google's compliance with this Final Judgment. Without in any way limiting their authority to take any other action to enforce this Final Judgment, the Plaintiffs may submit complaints related to Google's compliance with Section III to the Compliance Officer whenever doing so would be consistent with the public interest.

b. To facilitate the communication of complaints and inquiries by parties, the Compliance Officer shall place on Google's corporate website, in a manner reasonably acceptable to the Plaintiffs, the procedures for submitting complaints. To encourage whenever possible the informal resolution of complaints and inquiries, the website must provide a mechanism for communicating complaints and inquiries to the Compliance Officer.

c. Google shall have 30 days after receiving a complaint to attempt to resolve or to reject it.

**V.  EFFECTIVE DATE; TERMINATION**

A. Subject to the outcome of any motion to stay this Final Judgment pending appeal, this Final Judgment shall take effect 120 days after the date on which it is entered.

9

B.      Pursuant to Local Rule 54.2, the deadline for any motion under Federal Rule of Civil Procedure 54(d)(2)(B) and the proceedings as to any such motion shall be held in abeyance pending the conclusion of any appeals from this Final Judgment.

C.      Unless this Court grants an extension, this Final Judgment will expire on the third anniversary of the date on which it takes effect.

## VI.    DEFINITIONS

A.      "Browser Developer" means a developer, owner, or operator of a Third-Party Browser and includes, by way of example, Apple, Mozilla Corp., and Samsung Electronics Co., Ltd.

B.      "Chrome Browser Application" means the mobile browser software application currently marketed by Google as "Google Chrome" and its successors.

C.      "Consideration" means any monetary payment; provision of preferential licensing terms; technical, marketing, and sales support; developer support; or hardware or software certification or approval.

D.      "Default Search Engine" means a search engine that is set by a Browser Developer to respond to user queries if a user takes no action to select a particular search engine.

E.      "Gemini Assistant Application" means the stand-alone user-facing mobile software application currently marketed by Google as the "Google Gemini" application (and that application's functionally equivalent successors) that is a generative artificial intelligence chatbot that has among its principal functions answering information-seeking prompts across a wide variety of topics using a broad range of publicly available information.

F.      "Google Assistant Application" means the user-facing mobile assistive service software application marketed by Google as "Google Assistant" and its successors.

G.  "Google Play" means the user-facing mobile software application distribution service currently marketed by Google as the "Play Store" and its successors.

H.  "Google Search" means the web search and search advertising services offered by Google at Google.com.

I.  "Google Search Application" means the user-facing mobile online search software application currently marketed by Google as the "Google app" or the "Google Search app" (and its successors).

J.  "Operating System Version" means a web browser version designed to be installed and used on a particular desktop or mobile operating system including, by way of example, Microsoft Windows, Apple iOS, Apple Mac OS, Apple iPad OS, or Android.

K.  "Plaintiff States" means the States and Commonwealths of Arkansas, California, Georgia, Florida, Indiana, Kentucky, Louisiana, Michigan, Missouri, Mississippi, Montana, South Carolina, Texas, and Wisconsin, Colorado, Nebraska, Arizona, Iowa, New York, North Carolina, Tennessee, Utah, Alaska, Connecticut, Delaware, District of Columbia, Guam, Hawaii, Idaho, Illinois, Kansas, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Dakota, Vermont, Virginia, Washington, West Virginia, and Wyoming.

L.  "Privacy Mode" means a mode within a web browser that is designed to offer a preconfigured privacy setting and includes, by way of example, Private Browsing in Apple Safari, Private mode in Mozilla Firefox, and Secret mode in Samsung Internet.

M.  "Third-Party Browser" means any web browser that is not Google Chrome or another proprietary Google web browser and includes, by way of example, Apple Safari, Mozilla Firefox, and Samsung Internet.

N.   "Third-Party General Search Service" means a web search service that can respond to a broad range of search query categories and offers functionality that is substantially similar to Google Search, and is not owned by Google or its affiliates.

O.   "Third-Party Generative AI Assistive Service" means a stand-alone mobile software application that is a generative artificial intelligence chatbot that has among its principal functions answering information-seeking prompts across a wide variety of topics using a broad range of publicly available information, and that is not owned by Google or its affiliates.

## VII. THIRD-PARTY RIGHTS

Nothing in this Final Judgment is intended to confer upon any other persons any rights or remedies of any nature.

## VIII. RETENTION OF JURISDICTION

This Court retains jurisdiction for the purpose of enabling any of the parties to this Final Judgment to apply for such further orders or directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, and to enforce compliance.

Dated: _____

                                                                                 Amit P. Mehta
                                                         United States District Court Judge