## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant, <br><br> and <br><br> APPLE INC., <br><br> [Proposed] Intervenor-Defendant. | Case No. 1:20-cv-03010-APM <br><br> HON. AMIT P. MEHTA <br><br> **Oral Argument Requested** |
| STATE OF COLORADO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant, <br><br> and <br><br> APPLE INC., <br><br> [Proposed] Intervenor-Defendant. | Case No. 1:20-cv-03715-APM <br><br> HON. AMIT P. MEHTA |

### APPLE INC.'S MOTION FOR LIMITED INTERVENTION

Apple Inc. ("Apple") hereby moves to intervene as a defendant for the limited purpose of participating in the remedial phase of the above-captioned suit pursuant to Rule of Civil Procedure 24. Counsel for Apple has conferred with counsel for Plaintiffs United States of America, et al.,

counsel for Plaintiffs State of Colorado, et al., and counsel for Defendant Google LLC, pursuant to Local Civil Rule 7(m). Google takes no position on this motion. Plaintiffs do not currently have a position; they anticipate taking one after reviewing Apple's motion and accompanying papers.

The grounds for Apple's motion are set forth in its accompanying memorandum of points and authorities. Apple would be pleased to be heard on this motion, to the extent the Court would find that useful.

Date: December 23, 2024

Respectfully submitted,

*/s/ Alfred C. Pfeiffer, Jr.*
Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Sarah M. Ray (*pro hac vice*)
Aaron T. Chiu (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
Email: al.pfeiffer@lw.com
sarah.ray@lw.com
aaron.chiu@lw.com

Gregory G. Garre (D.C. Bar No. 440779)
Peter E. Davis (D.C. Bar No. 1686093)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: gregory.garre@lw.com
peter.davis@lw.com

*Counsel for [Proposed] Intervenor-Defendant Apple Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:20-cv-03010-APM |
| GOOGLE LLC, | HON. AMIT P. MEHTA |
| Defendant, | |
| and | |
| APPLE INC., | |
| [Proposed] Intervenor-Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:20-cv-03715-APM |
| GOOGLE LLC, | HON. AMIT P. MEHTA |
| Defendant, | |
| and | |
| APPLE INC., | |
| [Proposed] Intervenor-Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF APPLE INC.'S
MOTION TO INTERVENE**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

III.  ARGUMENT ..................................................................................... 6

    A.   The Court Should Grant Intervention As Of Right................................ 7

        1.   Apple Has A Protectable Property Interest In Its Right To Contract With Google ............................................................... 7

        2.   The Disposition Of This Case Will Impair Apple's Contractual Rights In The ISA And In Future Agreements ..................... 8

        3.   Google Will Not Adequately Represent Apple's Interests In Defending The ISA And Future Contractual Arrangements ................. 10

        4.   Apple's Motion Is Timely Because Apple Moved Promptly Once Its Interests Were No Longer Adequately Represented .................................................................... 13

    B.   In The Alternative, The Court Should Grant Permissive Intervention .......................................................................... 16

        1.   Apple Presents A "Claim Or Defense" Concerning The ISA That Supports Permissive Intervention ................................. 16

        2.   Apple's Intervention Would Not Unduly Delay The Proceedings And Is Timely ............................................... 17

    C.   Apple's Participation As An Intervenor Would Assist This Court And Is Critical To Adjudicating The Suitability Of Plaintiffs' PFJ ................... 17

IV.   CONCLUSION ................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*100Reporters LLC v. U.S. Dep't of Just.*,
307 F.R.D. 269 (D.D.C. 2014) ........................................................................ 17

*Amador Cnty. v. U.S. Dep't of Interior*,
772 F.3d 901 (D.C. Cir. 2014) ........................................................................ 13

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006) ....................................................................... 7, 9

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
701 F.3d 938 (3d Cir. 2012) .............................................................. 6, 11, 15

*Children's Health Defense v. FCC*,
25 F.4th 1045 (D.C. Cir. 2022) .................................................................. 7, 8

*Crossroads Grassroots Pol'y Strategies v. FEC*,
788 F.3d 312 (D.C. Cir. 2015) ......................................................................... 7

*Ctr. for Food Safety v. Connor*,
No. C 08-00484-JSW, 2009 WL 4724033 (N.D. Cal. Dec. 2, 2009) ..................... 15

*EEOC v. Nat'l Children's Ctr, Inc.*,
146 F.3d 1042 (D.C. Cir. 1998) ..................................................................... 16

*Farmer v. EPA*,
No. 24-cv-1654 (DLF), 2024 WL 5118193 (D.D.C. Dec. 16, 2024) ..................... 8

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995), *abrogated on other grounds by Wilderness
Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ........................... 6, 9, 16

\*   *Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ............................................... 7, 8, 10, 11

\*   *Hodgson v. United Mine Workers of Am.*,
473 F.2d 118 (D.C. Cir. 1972) .............................................. 2, 6, 13

\*   *Humane Soc'y of U.S. v. U.S. Dep't of Agric.*,
No. 19-cv-2458-BAH, 2023 WL 3433970 (D.D.C. May 12, 2023) .......... 6, 11, 12, 15

*Karsner v. Lothian*,
532 F.3d 876 (D.C. Cir. 2008) .................................................................. 7, 13

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) ........................................................................... 9

\*   *Natural Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) ............................................................................ passim

*NCAA v. Alston*,
    594 U.S. 69 (2021) ............................................................................................ 19, 20

*Nuesse v. Camp*,
    385 F.2d 701 (D.C. Cir. 1967) .................................................................................. 16

*Roane v. Leonhart*,
    741 F.3d 147 (D.C. Cir. 2014) .................................................................................. 13

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ...................................................................................... 9

*Smoke v. Norton*,
    252 F.3d 468 (D.C. Cir. 2001) ...................................................................... 13, 14, 16

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ...................................................................................... 7

*Textile Workers Union of Am., CIO v. Allendale Co.*,
    226 F.2d 765 (D.C. Cir. 1955) ............................................................................ 16, 17

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) .................................................................................................. 10

*U.S. Tr. Co. of New York v. New Jersey*,
    431 U.S. 1 (1977) ........................................................................................................ 7

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977) .................................................................................................. 14

*United States ex rel. Hernandez v. Team Fin., LLC*,
    80 F.4th 571 (5th Cir. 2023) .................................................................................... 16

*Waterkeeper Alliance, Inc. v. Wheeler*,
    330 F.R.D. 1 (D.D.C. 2018) ........................................................................................ 9

## RULES

\*   Fed. R. Civ. P. 24(a)(2) ..................................................................................... 7, 8

\*   Fed. R. Civ. P. 24(b)(1) ........................................................................................ 16

    Fed. R. Civ. P. 24(b)(3) ........................................................................................ 16

## TREATISES

7C Charles Alan Wright et al., *Federal Practice & Procedure* (3d ed. 2007) .............................. 13

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
WASHINGTON D.C.

## I.    INTRODUCTION

Plaintiffs' recently filed proposed final judgment ("PFJ") would directly impinge on Apple's independent business decisions.  It provides that "Google must not offer or provide anything of value to Apple—or offer *any* commercial terms—that in *any* way creates an economic disincentive for Apple to compete in or enter the [General Search Engine] or Search Text Ad markets."  Pls.' Initial Proposed Final Judgment at 7, Nov. 20, 2024, ECF No. 1062-1.  The PFJ would not only terminate the Information Services Agreement ("ISA") between Apple and Google, but it would also broadly limit Apple's ability to enter into new commercial arrangements with Google for the next decade.  Google cannot represent Apple's interests at this stage: By proposing remedies that go well beyond the ISA, Plaintiffs' PFJ implicates concerns unique to Apple.  And Google will necessarily have to choose where to focus its arguments and resources as this Court crafts a remedy.  Apple therefore seeks to intervene on a limited basis in the remedial phase of this litigation to protect its commercial interests.

The PFJ's terms addressed to Apple rest on incorrect assumptions and exceed the bounds of this Court's liability decision.  To the extent Plaintiffs' proposal is before this Court, Apple must be able to present facts and arguments concerning the PFJ's actual effects on competition and defend Apple's ability to manage its business over the next decade.  For instance, Apple is ready to offer evidence dispelling the PFJ's erroneous assumption that, absent the ISA, Apple will enter the general search market.  This includes evidence about Apple's strategic priorities, the enormous start-up resources involved in entering the general search market, and the substantial time that building a general search engine would require—during which the search market will be revolutionized by artificial intelligence ("AI").  And Apple is prepared to present evidence that the PFJ would harm the consumers who this Court's liability decision sought to protect.

Google cannot adequately represent Apple's interests in defending against Plaintiffs' proposed remedies. Plaintiffs' proposed search distribution remedies are just one among many issues Google now faces—with other proposed remedies, such as divestment of Google Chrome, posing an even greater threat to Google. Google therefore is likely to prioritize—and deprioritize—certain of its defenses. Google lacks the same interest in defending *Apple's* ability to receive commercial value for providing its users access to high-quality search providers. Regardless of whether Google continues to defend the ISA, Google cannot represent Apple with respect to a proposed remedy that would limit Apple's future ability to explore, structure, and enter into all kinds of new contractual arrangements. And Apple is uniquely positioned to advocate for its users and provide evidence on how the proposed remedies would affect them.

These circumstances warrant Apple's intervention under Rule 24. Apple's proposed intervention is limited: It seeks to provide testimony of two or three witnesses, relevant documents, and briefing to ensure that this Court has the complete record required to issue a fair and effective remedial decree.[1] Apple moved promptly to protect its interests once it became clear from the PFJ that Google could not adequately do so. And Apple is prepared to proceed on this Court's remedial phase timeline, so granting intervention would not delay or otherwise disrupt the proceedings. Courts frequently have granted limited intervention at the remedial phase in analogous circumstances, even where the asserted interests were less significant. *See, e.g.*, *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129-30 (D.C. Cir. 1972). This Court should do the same.

## II.    BACKGROUND

The ISA. Through hard work, ingenuity, and investment, Apple established a successful platform of devices through which users can access the Internet. Google contracted with Apple

---

[1] Accompanying Apple's intervention motion is a declaration of Eddy Cue, who serves as Senior Vice President of Services for Apple, setting forth facts supporting Apple's interest in limited intervention in the remedial phase of this litigation.

for the deployment of Google Search services on Apple's search access points. The ISA requires Apple to "pre-set and use" Google Search "as the Default search service for Search Queries in Apple's web browser (e.g., Safari or successor versions)." Trial Ex. JX 33 at 1. Like other general search engines ("GSEs") that users can choose on Safari, Google pays Apple a percentage of its net advertising revenue, known as revenue share, generated from searches on Apple access points. *See id.* at 5; Trial Tr. Day 10 (Cue) 2578-79, Sept. 26, 2023, ECF No. 943. These terms are in place through 2026 and can be extended by Apple to 2028. The agreement has gone through several iterations, and it did not always require Apple to pre-set Google as the default. The original ISA contained no such obligation, and Apple sought flexibility in 2009 and 2012 not to make Google the pre-set default general search engine ("GSE"). Mem. Op. at 108-10, Aug. 5, 2024, ECF No. 1033. Google requested exclusive default status as part of the ISA. *Id.*

    This Case. On October 20, 2020, the Department of Justice and several States filed this lawsuit against Google alleging monopolization in the GSE, general search text advertising, and search advertising markets in violation of Section 2 of the Sherman Act. Compl. ¶¶ 1-14, ECF No. 1. Plaintiffs alleged that Google engaged in anticompetitive conduct via exclusionary agreements to "secure default status for its general search engine." *Id.* ¶ 4. According to Plaintiffs, these defaults "foreclosed competition for internet search" by denying competitors "distribution, scale, and product recognition." *Id.* ¶ 6. On December 17, 2020, 38 States (the "Colorado Plaintiffs") filed a separate suit adopting the allegations in the earlier complaint and raising additional allegations against Google under Section 16 of the Clayton Act. Compl. ¶ 1-16, *Colorado v. Google LLC*, No. 1:20-cv-03715-APM, ECF No. 3. This Court consolidated the cases. Mem. Op. at 6.

    Google vigorously contested Plaintiffs' allegations and eventually moved for summary judgment as to all claims. Mem. Op. Sum. J. at 4, Aug. 4, 2023, ECF No. 626. This Court granted

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON D.C.

in part and denied in part summary judgment on August 4, 2023, and the case proceeded to trial. *Id.* During trial, two Apple witnesses, Eddy Cue and John Giannandrea, testified as to the history of the ISA and the reasons underlying Apple's decision not to enter the general search market.

Liability Decision. On August 5, 2024, this Court issued findings of fact and conclusions of law holding that Google had violated Section 2 by unlawfully monopolizing the markets for general search and general search text advertising. Mem. Op. at 4. Recognizing that the "bulk of Plaintiffs' case focuses on the search distribution contracts," *id.* at 197, including the ISA, the Court held that these default browser agreements were "exclusive insofar as they establish Google as the out-of-the-box-default search engine," Mem. Op. at 204. And given this Court's findings on the power of such defaults in influencing consumer behavior—"65% of queries still go through the default" on Apple devices—the default agreements amounted to exclusive deals that foreclose valuable opportunities for competitors. *Id.* at 208. This Court made similar findings as to Google's arrangements with Android device manufacturers and Google's use of the Chrome browser. *Id.* at 210-13. The Court then rejected Google's proffered procompetitive justifications, principally on the ground that Google had failed to show "that *exclusive* defaults" specifically serve the interests Google had advanced. *Id.* at 249.

Plaintiffs' PFJ. On November 20, 2024, Plaintiffs filed their PFJ and served their initial witness list, which they later revised on December 10, 2024. Plaintiffs' PFJ does not merely target the default provision of the ISA or other browser agreements but instead sweeps much more broadly, including by requiring a major structural remedy—the divestiture of Google Chrome— and specifically targeting Google's contractual relationship with Apple. In particular, the PFJ provides:

- "Google must not offer or provide anything of value to Apple—or offer any commercial terms—that in any way creates an economic disincentive to compete in or enter the GSE or Search Text Ad markets," Pls.' PFJ at 7.

- Google must "promptly and fully divest Chrome, to a buyer approved by the Plaintiffs in their sole discretion," *id.* at 9;

- Google may not provide itself "preferential access to Android or Google-owned apps or data" (or, alternatively, divest from Android), *id.* at 10;

- "Google must provide, at marginal cost, ongoing access to its Search Index to Qualified Competitors," *id.* at 12;

- Google may not invest in "any technologies, such as AI Products, that are potential entrants into the GSE or Search Text Ads markets," *id.* at 8.

Despite provisions in the PFJ aimed squarely at foreclosing *Apple's* freedom to enter into new contractual arrangements for commercial value with Google over a period of 10 years, Plaintiffs notably did not include any Apple witnesses on either the November 20 or December 10 initial witness lists.

<u>Google's PFJ</u>.  Google filed its PFJ on December 20, 2024.  *See* Def. Google LLC's Proposed Final Judgment, Dec. 20, 2024, ECF No. 1108-1.  Google broadly opposes Plaintiffs' requests for divestiture of Chrome, significant modification of Google's relationship with Android, and requirements related to AI products.  Exec. Summary of Def. Google LLC's Proposed Final Judgment at 3-5, Dec. 20, 2024, ECF 1108.  On the issue of third-party search distribution, Google's PFJ would permit Google to enter contracts for default status on Apple's (and other browsers') search access points, with several modifications.  Apple would have the option to set a different default search provider on each operating system (e.g., iOS and Mac OS).  Def.'s PFJ at 4-5.  Apple would also have the ability to offer a default general search engine other than Google

for private browsing.  *Id.*  Google's PFJ would also permit Apple (and other search distributors) to continue receiving value for distributing Google Search to users on Apple's search access points. *Id.*

## III.    ARGUMENT

Apple readily meets Rule 24's requirements for both intervention as of right and permissive intervention.  The PFJ threatens to undercut Apple's property interest in its existing contract with Google and in its ability to enter into future contracts with Google across a host of domains, including general search, AI, and other related areas.  Google can no longer adequately represent Apple's interests: Google must now defend against a broad effort to break up its business units; and Google lacks the same incentive to defend *Apple's* ability to obtain value for distributing third party search offerings on its search access points, especially now that Google's default status is in doubt.  Apple also timely moved for intervention once it became clear that Plaintiffs seek a remedy extending far beyond the logical underpinnings and factual findings of this Court's liability decision.  Courts routinely permit limited intervention to allow affected parties to participate in remedial proceedings in similar circumstances. *See, e.g.*, *Hodgson*, 473 F.2d at 129; *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 907-08 (D.C. Cir. 1977); *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 958 (3d Cir. 2012); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1495-96 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1178-79 (9th Cir. 2011); *Humane Soc'y of U.S. v. U.S. Dep't of Agric.*, No. 19-cv-2458-BAH, 2023 WL 3433970, at *7-10 (D.D.C. May 12, 2023).  This Court should allow Apple's limited intervention.[2]

---

[2] To be clear, Apple does not seek leave to become a party to this case for all purposes, but instead to participate in the remedies phase solely for the limited purpose of protecting its contractual interests.  Such "limited" and "forward looking" intervention is commonly granted in analogous cases. *Humane Soc'y*, 2023 WL 3433970, at *8 (citation omitted).

### A.    The Court Should Grant Intervention As Of Right

Intervention as of right has four prerequisites: (1) "the applicant must demonstrate a legally protected interest in the action"; (2) "the action must threaten to impair that interest"; (3) "no party to the action can be an adequate representative of the applicant's interests"; and (4) "the application to intervene must be timely."  *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation omitted); *see* Fed. R. Civ. P. 24(a)(2).  Apple meets these requirements.

### 1.    Apple Has A Protectable Property Interest In Its Right To Contract With Google

Apple satisfies the first requirement due to its contractual rights under the ISA and its rights to enter future contracts with Google.  The first factor requires that a putative intervenor have "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2).  "Contract rights are a form of property."  *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 n.16 (1977).  And so courts consistently hold that "contract rights are traditionally protectable interests" under Rule 24.  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *see also B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006) ("An intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy.").

This Circuit's caselaw is in accord.  The D.C. Circuit has explained that, to satisfy the first prong of Rule 24(a)(2), a putative intervenor need only show that it has "constitutional standing." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003); *see Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015).  Because even the "[p]otential impairment of contractual or property rights" is an "injury in fact" sufficient for standing, the imminent threat to Apple's contractual rights here is enough.  *Child.'s Health Def. v. FCC*, 25 F.4th 1045, 1049 (D.C. Cir. 2022).  Apple also satisfies the remaining two prongs of Article III standing—causation and redressability.  *See Fund for Animals*, 322 F.3d at 732-33 (intervention

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON D.C.

as of right requires "standing under Article III").  As to causation, the threatened impairments to Apple's contractual interests flow directly from Plaintiffs' PFJ and, by extension, the ultimate remedy in this case.  Redressability is likewise clear: If Apple prevails in intervening and defending its contractual rights in the remedial phase, then Apple would avoid the threatened harms requiring its intervention.

Apple's interest in the ISA, as well as its right to enter future contracts with Google, is therefore a protectable property interest under Rule 24(a)(2).  At Google's request, the ISA provides that Apple will make Google Search the "[d]efault search service for Search Queries in Apple's web browser software."  Trial Ex. JX 33 at 1; Mem. Op. at 109.  The ISA also provides that Google (like other GSEs accessible on Apple's search access points) "will pay Apple" a percentage "of its Net Ad Revenue."  Trial Ex. JX 33 at 5.  The ISA has been in place since 2002, and the two companies have repeatedly extended the agreement.  Mem. Op. at 101-02, 108-11.  Apple also maintains an interest in negotiating future contractual arrangements with Google to best serve its users.  These contractual rights are "an interest relating to the property or transaction" at issue in this case.  Fed. R. Civ. P. 24(a)(2).  The impairment of these contractual rights threatens Apple with an injury in fact giving it Article III standing to intervene.  *Child.'s Health Def.*, 25 F.4th at 1049.

### 2. The Disposition Of This Case Will Impair Apple's Contractual Rights In The ISA And In Future Agreements

Apple likewise satisfies the second intervention requirement—that the action's disposition "may as a practical matter impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  In determining whether this requirement is satisfied, courts examine the "'practical consequences' of denying intervention."  *Fund for Animals*, 322 F.3d at 735 (citation omitted).  This requirement is met when the case's resolution would "result in a substantial change to the status quo with respect to [a putative intervenor's] interests."  *Farmer v. EPA*, No. 24-cv-

1654 (DLF), 2024 WL 5118193, at *4 (D.D.C. Dec. 16, 2024) (citation omitted); *see Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 7 (D.D.C. 2018).

Apple satisfies this requirement because Plaintiffs' PFJ threatens a sea change in Apple's contractual relationships with Google and threatens to undermine Apple's ability to serve its users. As noted above, Plaintiffs' PFJ states that "Google must not offer or provide anything of value to Apple—or offer any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the GSE or Search Text Ad markets." Pls.' PFJ at 7. That expansive remedial term would not only undercut the existing ISA, but it would threaten to prevent Apple from receiving "anything of value" from Google as part of commercial arrangements related in any way to search for the next 10 years. *Id.*; *see id.* at 34. Such a remedy would upend the "status quo" in Apple's relationship with Google, *Waterkeeper*, 330 F.R.D. at 7, and undercut Apple's ability to provide the best experience for consumers. Declaration of Eddy Cue ("Cue Decl.") ¶¶ 6-7. The PFJ would thus impair Apple's property interests, both present and future, under Rule 24. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998) (intervention proper given potential impairment of right to "contract in the future").

That commonsense result also follows from a consistent line of decisions finding that "an applicant has a sufficient interest to intervene . . . where the contractual rights of the applicant may be affected by a proposed remedy." *Forest Conservation Council*, 66 F.3d at 1495; *accord B. Fernandez*, 440 F.3d at 545. In *Forest Conservation Council*, for example, the Ninth Circuit held intervention proper where the "broad scope of the injunctive relief sought by plaintiffs" threatened the applicant's existing "contracts." 66 F.3d at 1495. And in *Sierra Club v. Espy*, the Fifth Circuit permitted intervention by an applicant with "legally protectable property interests in existing timber contracts that are threatened by the potential" proposed injunctive relief. 18 F.3d 1202, 1207 (5th Cir. 1994). Apple likewise faces a threat to its present and future contractual interests.

### 3. Google Will Not Adequately Represent Apple's Interests In Defending The ISA And Future Contractual Arrangements

Apple meets Rule 24(a)(2)'s third requirement because Apple's interests will not be "adequately represent[ed]" by "existing parties." This requirement is "not onerous," *Fund for Animals*, 322 F.3d at 735 (citation omitted), and it is met "if the applicant shows that representation of his interest *may* be inadequate." *Id.* (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added). "[T]he burden of making that showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10. One common example is when the applicant can give a "more vigorous presentation" on a particular issue than the existing party can or would provide. *Costle*, 561 F.2d at 912 (citation omitted); *see Fund for Animals*, 322 F.3d at 736 (intervention proper where existing party would not give argument "the kind of primacy" as applicant). It is now clear after Plaintiffs' PFJ that Google will not be able to adequately represent Apple's interest in defending its contractual rights—including the ISA—at the remedial stage. Google's ability to defend Apple's interests is compromised in at least four ways.

*First*, the breadth of Plaintiffs' PFJ makes it impossible for Google to give sufficient attention to defending the ISA. In addition to disrupting Apple and Google's contractual relationship for 10 years, Plaintiffs' 35-page PFJ would (a) require Google to "promptly and fully divest Chrome, to a buyer approved by the Plaintiffs in their sole discretion"; (b) prohibit Google from providing itself "preferential access to Android or Google-owned apps or data" (or, alternatively, divest from Android); (c) provide, at marginal cost, ongoing access to its Search Index to Qualified Competitors; and (d) prohibit Google from investing in "any technologies, such as AI Products, that are potential entrants into the GSE or Search Text Ads markets." Pls.' PFJ at 8-12. These broad threats to Google's business will force it to make judgments about which provisions to contest and how much weight to give different objections. The prospect of divestiture, in particular, indicates that Google may be unable to sufficiently defend the ISA and

revenue share because it will necessarily be focused on existential threats to its underlying business.  Google "is not able to 'afford the movant's discrete and particularized interests the same primacy as movants would themselves.'"  *Humane Soc'y*, 2023 WL 3433970, at *9 (citation omitted).  That is more than enough to establish inadequate representation at this time.  *See Fund for Animals*, 322 F.3d at 736.

     *Second*, Plaintiffs' PFJ goes far beyond the ISA and targets Apple's ability to explore or enter into future commercial arrangements with Google.  Whatever its incentives with regard to the ISA—an existing contract with set terms—Google is not in a position to adequately represent *Apple's* interests in crafting future contractual arrangements.  Apple is uniquely situated to explain the kinds of collaboration it believes will be beneficial to both Apple and its users, how that collaboration fits with Apple's business plans and affects the competitive landscape for general search, and why Plaintiffs' PFJ would jeopardize this competition.  Apple's participation will be a critical "supplement" to Google's arguments against the PFJ.  *Costle*, 561 F.2d at 913.

     *Third*, Google is differently situated than Apple when it comes to the revenue share component of the ISA because Google may prefer not to continue paying Apple a share of revenue from Google Search queries undertaken by Apple users.  *See* Mem. Op. at 110.  Apple, however, maintains revenue-sharing agreements with every GSE it offers users on Safari.  Trial Tr. Day 10 (Cue) 2578-79.  Were the PFJ implemented as written, Apple would be forced to either (1) terminate Google Search as an option for its users or (2) offer Google Search to users *at no cost to Google*.  Cue Decl. ¶ 6.  In either scenario, it is Apple and its users that suffer.  And the latter option would give Google a leg up on all other GSEs, further entrenching Google as the market leader.  *See* Mem. Op. at 13-14.  The PFJ's prohibition of any Apple-Google agreements involving the exchange of commercial value thus uniquely affects Apple's interests.  *Id.* ¶ 5.  This divergence establishes that Google cannot adequately represent Apple's interests.  *See Benjamin ex rel. Yock*,

701 F.3d at 958 (shifting interests establish inadequacy of representation at remedial phase).  At the very least, Apple can provide a "more vigorous presentation" on the issue of revenue share than Google—which is sufficient for intervention at this phase.  *Castle*, 561 F.2d at 912-13 (citation omitted).

*Fourth*, only Apple can ensure that this Court has the complete record necessary to evaluate Plaintiffs' PFJ as it pertains to provisions impacting Apple.  No Apple witness appears on Plaintiffs' initial witness list.  And because Google may call only 12 witnesses during the remedies stage, there is no guarantee that an Apple witness will testify.  Order Setting Discovery Limitations at 2, Sept. 25, 2024, ECF No. 1047.  Even if an Apple witness is called, Apple (as a non-party) would not have the ability to examine the witness.  And testimony from whichever Apple witness appears may not be enough to establish a record on issues central to adjudicating the propriety of the PFJ's broad remedial terms, especially where Apple would have no control over the questioning.  *See infra* at 15-16.  Apple's participation will ensure that the Court has an adequate record to consider issues central to understanding the viability of Plaintiffs' PFJ—including the PFJ's assumptions about and effects on Apple's intentions in the search market, the PFJ's stifling of innovation and collaboration in the rapidly developing AI ecosystem, and the PFJ's ultimate effects on Apple's users.  Cue Decl. ¶¶ 5-8.  Even a "possible benefit to the court from" Apple's "participation" weighs in favor of intervention; here, the benefit is clear.  *Castle*, 561 F.2d at 908.[3]

---

[3] The ISA's requirement that Google and Apple cooperate to defend the agreement, Mem. Op. at 102, does not adequately protect Apple's interests.  That provision does not require Google to give priority to the ISA in its defense in this case, nor does it ensure that Google will give Apple's "discrete and particularized interests the same primacy."  *Humane Soc'y*, 2023 WL 3433970, at *9 (citation omitted).  More fundamentally, Plaintiffs' PFJ goes far beyond the ISA; it threatens to foreclose Apple's right to receive "anything of value" from Google for 10 years.  Pls.' PFJ at 7, 34.  The ISA's cooperation provision does not protect Apple's interests in pursuing future agreements with Google.  Apple is the only party that can do so.

### 4.    Apple's Motion Is Timely Because Apple Moved Promptly Once Its Interests Were No Longer Adequately Represented

Apple's motion also satisfies the remaining prong of Rule 24(a)(2): timeliness.  Courts judge timeliness by considering "all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner*, 532 F.3d at 886 (citations omitted).  "The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting 7C Charles Alan Wright et al., *Federal Practice & Procedure* § 1916 (3d ed. 2007)).  Apple's motion is timely for three reasons.

*First*, Apple moves to intervene now because it has become clear that Apple's interests are no longer adequately represented in the wake of Plaintiffs' PFJ.  The elapsed time is measured from when the "potential inadequacy of representation [comes] into existence." *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) (citation omitted); *accord Amador Cnty. v. U.S. Dep't of Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014).  For that reason, the D.C. Circuit has approved of a party's intervention "seven years" after the action was filed where the putative intervenor "sought only to participate in the remedial, and if necessary the appellate, phases of the case." *Hodgson*, 473 F.2d at 129.

During the liability phase, Google's incentive was to defend the ISA in full.  That was true for revenue share as well, which was part of Google's defense of the ISA as a whole.  So, even though throughout the parties' negotiations Google has historically prioritized its default status while Apple has focused on revenue share, Mem. Op. at 110, 227-29, Google had a strong interest in defeating Plaintiffs' challenges to both.  Given Google's interests in defeating liability, Apple

reasonably believed that Google would adequately represent its interests, but Apple continued to monitor the proceedings in case that changed.

Plaintiffs' filing of the PFJ on November 20 dramatically impacted Apple's assessment of adequate representation. The PFJ threatens to fundamentally alter Apple's contractual relationship with Google—now and in the future. Apple has a unique interest in protecting its freedom and latitude to enter into commercial arrangements, and Google cannot adequately represent Apple's interests in maintaining its future ability to contract. Plaintiffs' PFJ goes so far as to prohibit Apple and Google from agreeing to even standard-fare revenue share agreements that Apple maintains with every other GSE provider—and does so for 10 years. Google may no longer have the same interests in defending the right for Apple to receive commercial value for distributing third-party search to its users, particularly if one possibility is the prospect of avoiding the same revenue share payments that other GSEs pay Apple. Cue Decl. ¶ 6; *see supra* at 11-12.

Google's inability to fairly represent Apple's interests is magnified by the PFJ's threats to reshape Google's business in other ways. As discussed above, Google must now strategically decide which aspects of its business to defend before the Court. Google naturally may focus on provisions targeting the spinoff of its Chrome browser, rather than offer a full-throated defense of Apple's ability to obtain value for providing Google access to Apple's base of users that use Apple's search access points. Google also may conclude that, strategically, it should highlight the flaws in particular remedies proposed by Plaintiffs that may more directly impact its own operations. In short, the adequate representation calculus changed in the remedies phase when Plaintiffs filed an exceptionally broad PFJ just last month.

Because Apple moved promptly—in a matter of a few weeks—after "the potential inadequacy of representation came into existence," its motion is timely. *Smoke*, 252 F.3d at 471 (citation omitted); *see United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (putative

intervenor's motion timely when it moved promptly after it "became clear" its "interests . . . would no longer be protected").  This is consistent with remedial intervention cases such as *Benjamin ex rel. Yock*, where the Third Circuit held that intervention was proper when "circumstances changed . . . after the liability stage of the case was finished and the remedy stage began."  701 F.3d at 950; *accord Ctr. for Food Safety v. Connor*, No. C 08-00484-JSW, 2009 WL 4724033, *2-*3 (N.D. Cal. Dec. 2, 2009).  Given the breadth of Plaintiffs' PFJ and the resulting divergence in Google and Apple's priorities, Apple cannot stand by in the face of a potentially less "vigorous" defense of its interests.  *Costle*, 561 F.2d at 912.

*Second*, Apple's intervention would not prejudice existing parties.  Apple does "not seek to reopen the settled issues in the case," but instead to participate in the "remedial phase of the litigation."  *Id.* at 908.  Apple's proposed intervention is limited and need not delay this Court's schedule: Apple seeks to present only two or three witnesses, engage in limited cross-examination at the remedies proceeding to the extent other witnesses address remedies relating to Apple, and participate alongside Google in briefing and arguing issues before the Court insofar as they impact Apple.  And Apple's participation, as discussed below, is critical to crafting a just and fair remedy.  Rather than "unfairly disadvantag[ing] the original parties," *id.*, Apple's participation would further an orderly disposition of this case.  *See Humane Soc'y*, 2023 WL 3433970, at *8.

*Finally*, intervention is essential to preserving Apple's rights and interests, which are now squarely threatened by Plaintiffs' PFJ.  Absent intervention, there is no guarantee that any Apple witness will be heard.  And even if an Apple witness participates, Apple would have no control over the issues that witness would address, or the ability to call any other witness, if warranted.  Given the divergence of interests discussed above, it is essential that Apple be able to introduce evidence from its own witnesses in this proceeding and weigh in on the proper remedy insofar as the PFJ impacts Apple and its users.  "[T]he need for intervention as a means of preserving"

Apple's rights weighs strongly in favor of intervention. *Smoke*, 252 F.3d at 471 (citation omitted); *see also Forest Conservation Council*, 66 F.3d at 1495 (explaining that "third parties have been granted leave to intervene only in the remedial phase of a case" to protect their rights and collecting cases).

> **B.    In The Alternative, The Court Should Grant Permissive Intervention**

This Court may grant permissive intervention when an applicant's "claim or defense shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In deciding whether permissive intervention is proper, the Court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3). Apple satisfies this standard.

> **1.    Apple Presents A "Claim Or Defense" Concerning The ISA That Supports Permissive Intervention**

The first requirement is satisfied because Apple shares a common "claim or defense" with the main action. The D.C. Circuit has long "eschewed strict readings of the phrase 'claim or defense'" and has instead "allow[ed] intervention even in situations where the existence of any nominate 'claim' or 'defense' is difficult to find." *EEOC v. Nat'l Child.'s Ctr, Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (formatting modified and citation omitted); *see also Nuesse v. Camp*, 385 F.2d 701, 704 (D.C. Cir. 1967) (explaining that "[a]lthough the rule speaks in terms of 'claim or defense' this is not interpreted strictly so as to preclude permissive intervention"). The "claim or defense" element is "construed liberally." *United States ex rel. Hernandez v. Team Fin., LLC*, 80 F.4th 571, 577 (5th Cir. 2023) (citation omitted). Permissive intervention is appropriate where a party has "a real economic stake in the outcome of the litigation." *Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 769 (D.C. Cir. 1955) (en banc). So too where there are "similarities between the issues presented by" the applicant and the existing parties to the case.

*100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 286 (D.D.C. 2014).  That standard is met here.

Apple has a clear interest at issue: the ability to craft commercial arrangements with Google for the next 10 years.  Apple distributes to users high-quality GSEs—including Google under the ISA—in exchange for a share of revenue generated by its users' queries.  Mem. Op. at 102-03.  The PFJ threatens to prohibit not only that term of the ISA but would also broadly limit Apple's ability to craft future commercial arrangements with Google for 10 years—agreements designed to benefit Apple's users.  Pls.' PFJ at 7; Cue Decl. ¶¶ 5-7.  This kind of interest is sufficient to warrant permissive intervention under longstanding D.C. Circuit precedent.  *Textile Workers*, 226 F.2d at 769.

## 2.    Apple's Intervention Would Not Unduly Delay The Proceedings And Is Timely

As explained above, Apple's intervention would not cause any meaningful delay to the proceedings.  Apple seeks to intervene for a limited purpose; it does not seek to reopen issues related to liability; and it will proceed on the same timeline as Google.  The Court's schedule will remain on track.  And Apple's intervention is timely for the reasons already explained.

## C.    Apple's Participation As An Intervenor Would Assist This Court And Is Critical To Adjudicating The Suitability Of Plaintiffs' PFJ

Intervention would not only serve Apple's interests, but it would also help the Court ensure that it has the record necessary to reach a just and effective remedy in this case.  *See Costle*, 561 F.2d at 908 (noting "possible benefit to the court" from applicant's "participation" in support of intervention).  Apple's various search tools receive "about 10 billion user queries per week."  Mem. Op. at 102.  The remedies proposed by Plaintiffs that affect Apple would reshape search for millions of technology users.  And those remedies are premised in part on factual assumptions regarding Apple's investment decisions, economic incentives, and expertise about how to provide

the best product for its users.  Although this Court issued a considered liability order, the existing parties simply do not have the necessary information to enable the Court to make a judgment regarding *Apple's* relationship to the general search market—information that is essential to crafting a fair and thorough remedy that will serve consumers.  To that end, Apple is prepared to offer limited testimony, documents, and briefing on the following issues critical to crafting a remedy in the next phase of this litigation.

Apple's Intentions Regarding General Search.  Apple does not plan to enter the GSE market, and terminating the ISA and revenue share will have no impact on its decision.  This is due to a host of factors about which Apple witnesses can testify.

- *Apple's business priorities*: Apple has committed to other growth areas and has no desire to incur significant costs in an area of substantial risk.  Cue Decl. ¶ 8.

- *The changing search market and AI*: Creating a GSE would require thousands of employees, billions of dollars, and a total commitment.  Critically, any success would be many years away, at the soonest.  But during this same period, AI will continue revolutionizing search.  Apple cannot be expected to invest in general search now, as AI advancements may obviate any efforts before a viable GSE could even be developed.  *Id.* ¶¶ 7-8.

- *Apple's privacy policies*: To build a profitable GSE, Apple would also need to build a platform to monetize the GSE through advertising based on "user data."  Mem. Op. at 232. Development of any such business would have to be balanced against Apple's longstanding privacy commitments to itself and its users.  Cue Decl. ¶ 8.

The Effects on Apple and Google's Commercial Relationship and Consumers.  Prohibiting any commercial agreement between Google and Apple threatens to harm consumers and provide one particular competitor—indeed, the "dominant firm," Mem. Op. at 153—a windfall, creating a

perverse result in the market.  If the Court both ends Google's default status and prohibits any revenue share, Apple will have a choice: (1) include Google as an option for consumers without revenue share (thereby affording Google a windfall and harming Apple); or (2) exclude Google as an option (thereby harming consumers who overwhelmingly prefer Google's product).  Cue Decl. ¶ 6.  Apple can explain that neither option will advance the consumer goals underlying this Court's liability decision and the Sherman Act generally.

The Rapidly Evolving AI Landscape.  The PFJ's broad prohibition on commercial agreements between Apple and Google threatens to stifle the development of AI, which is critical to serving consumers.  Apple can testify about the changing AI landscape and the importance of maintaining flexibility in commercial relationships to serve users and promote competition.  Cue Decl. ¶ 5, 8.

Other.  Apple's limited intervention also ensures that Apple would be ready to respond to any additional points that may arise during the trial of the remedies phase and directly impact Apple's interests.

*      *      *

Crafting a fair, appropriate, and lawful remedy in this case will be exceptionally difficult and will impact Apple's interests.  It is no exaggeration to say that the Court's remedy may shape the development of search technology for decades to come.  That critically important and far-reaching determination can be properly, and fairly, undertaken only with consideration of Apple's evidence and argument.  The Supreme Court recently emphasized that courts must be "sensitive to the possibility that the 'continuing supervision of a highly detailed decree' could wind up impairing rather than enhancing competition."  *NCAA v. Alston*, 594 U.S. 69, 102 (2021) (citation omitted).  Some decrees "may unintentionally suppress procompetitive innovation."  *Id.*  And "[j]udges must be open to reconsideration and modification of decrees in light of changing market

realities, for 'what we see may vary over time.'" *Id.* (citations omitted).  The competitive effects of Plaintiffs' remedial proposal depend in significant part on what Apple will do in response to this Court's order.  The Court must hear directly from Apple to evaluate and decide on the proper remedy.

## IV.    CONCLUSION

Apple's motion for limited intervention should be granted.


Dated:   December 23, 2024

LATHAM & WATKINS LLP


By *s/ Alfred C. Pfeiffer, Jr.*
Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Sarah M. Ray (*pro hac vice*)
Aaron T. Chiu (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
Email: al.pfeiffer@lw.com
           sarah.ray@lw.com
           aaron.chiu@lw.com

Gregory G. Garre (D.C. Bar No. 440779)
Peter E. Davis (D.C. Bar No. 1686093)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: gregory.garre@lw.com
           peter.davis@lw.com

*Counsel for [Proposed] Intervenor-
Defendant Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the United States District Court for the District of Columbia on December 23, 2024, via the Court's CM/ECF system, and that parties and their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

Dated:   December 23, 2024

_____
*s/ Alfred C. Pfeiffer, Jr.*