IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>        Defendant,<br><br>and<br><br>APPLE INC.,<br><br>        [Proposed] Intervenor-Defendant, | Case No. 1:20-cv-3010-APM<br><br>HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>        Defendant,<br><br>and<br><br>APPLE INC.,<br><br>        [Proposed] Intervenor-Defendant. | Case No. 1:20-cv-3715-APM<br><br>HON. AMIT P. MEHTA |

**DECLARATION OF EDDY CUE IN SUPPORT OF APPLE INC.'S
<u>MOTION TO INTERVENE</u>**

Pursuant to 28 U.S.C. § 1746(2), I, Eddy Cue, hereby declare:

      1.     I am Senior Vice President of Services at Apple Inc. ("Apple"). I have been employed by Apple since 1989. In my current role, I oversee the entire range of Apple's services, including Apple's productivity, creativity, media, and payments applications. I report directly to the CEO of Apple, Tim Cook.

      2.     Apple has a web browser for its devices called "Safari." With Safari, a user can enter a search right into the address bar. Under an agreement between Apple and

1

Google, called the Information Services Agreement, Apple distributes Google Search on Safari, which drives traffic to Google when Apple's users enter search queries. Google Search is currently the default search engine on Safari in the United States. This means that when a user enters a question or query into the address bar, Safari searches on Google by default. But users can change that default by choosing an alternative, like Yahoo!, Microsoft Bing, DuckDuckGo, or Ecosia.

3. In exchange for distributing Google Search on Apple devices, Google shares with Apple a percentage of the revenue generated from Apple users' search queries. In 2022, Google paid Apple roughly $20 billion under this deal. Apple also has revenue sharing agreements with other search engines listed above that provide them access to Apple customers' search queries on the Safari address bar.

4. I understand that Plaintiffs seek a remedy that would prevent Apple from receiving any revenue share for distributing Google Search on Apple devices, and that the proposed remedy would be in place for the next 10 years. I also understand that the proposed remedy could prohibit Apple from striking certain other deals with Google, such as in the Artificial Intelligence space.

5. Only Apple can speak to what kinds of future collaborations can best serve its users. Apple is relentlessly focused on creating the best user experience possible and explores potential partnerships and arrangements with other companies to make that happen. If the remedies above were implemented, it would hamstring Apple's ability to continue delivering products that best serve its users' needs.

6. If this Court prohibits Google from sharing revenue for search distribution, Apple would have two unacceptable choices. It could still let users in the United States

choose Google as a search engine for Safari, but Apple could not receive any share of the resulting revenue, so Google would obtain valuable access to Apple's users at no cost. Or Apple could remove Google Search as a choice on Safari. But because customers prefer Google, removing it as an option would harm both Apple and its customers.

7. From what I understand, Plaintiffs' proposed remedies assume that, without a revenue sharing agreement or other commercial terms with Google, Apple would develop its own search engine or enter the Search Text Ad market. Apple witnesses can offer testimony and evidence explaining why that assumption is wrong. That evidence would cover the challenges Apple would face in entering the search engine market, the reasons why Apple has so far chosen not to develop a search engine, and why it is unlikely that Apple will decide to create a search engine in the future, regardless of what remedies are ordered in this case.

8. There are several reasons why Apple does not plan to create a search engine. First, Apple is focused on other growth areas. The development of a search engine would require diverting both capital investment and employees because creating a search engine would cost billions of dollars and take many years. Second, search is rapidly evolving due to recent and ongoing developments in Artificial Intelligence. That makes it economically risky to devote the huge resources that would be required to create a search engine. And third, a viable search engine would require building a platform to sell targeted advertising, which is not a core business of Apple. Apple does not have the volume of specialized professionals and significant operational infrastructure needed to build and run a successful search advertising business. Although Apple does have some

3

niche advertising, such as on the App Store platform, search advertising is different and outside of Apple's core expertise. Building a search advertising business would also need to be balanced against Apple's longstanding privacy commitments.

9. Apple believes that its participation would assist this Court in crafting a fair remedy and is happy to proceed on this Court's existing timeline for the remedial phase of this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2024, at [Cupertino, California].

*Eddy Cue* (signature)
Eddy Cue