# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | |
| | Case No. 1:20-cv-03010-APM |
| v. | |
| | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | |
| | Case No. 1:20-cv-03715-APM |
| v. | |
| | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO APPLE INC.'s MOTION FOR LIMITED INTERVENTION**

## TABLE OF CONTENTS

INTRODUCTION....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................1

PROCEDURAL BACKGROUND ..........................................................................................2

I.      Plaintiffs' Complaints, Liability Discovery, And The Liability Trial...........................2

II.     The Court's Liability Decision And The Remedies Phase Process ................................3

III.    Plaintiffs' and Google's Initial Proposed Final Judgments ............................................4

ARGUMENT ...........................................................................................................................5

I.      Apple Fails To Show It Should Be Permitted to Intervene as Of Right Under Rule
        24(a)...............................................................................................................................6

        A.      Apple's Motion Is Untimely ............................................................................. 6

        B.      Google More Than Adequately Represents Apple's Interests...........................8

                1.      Google And Apple Have A Shared Interest..........................................9

                2.      Apple Cannot Rebut The Presumption Of Adequacy ........................11

II.     The Court Should Deny Permissive Intervention Under Rule 24(b) ...........................14

III.    Apple's Intervention, If Permitted, Should Be Limited, And Would Implicate The
        Court's Liability Findings............................................................................................15

CONCLUSION ......................................................................................................................16

## **<u>TABLE OF AUTHORITIES</u>**

Page(s)

**Cases**

*Alfa International Seafood v. Ross*,
   321 F.R.D. 5 (D.D.C. 2017)......................................................................... 12

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ...................................................................... 9

*Atlantic Refinishing & Restoration, Inc. v. Travelers Casualty & Surety Co. of America*,
   272 F.R.D. 26 (D.D.C. 2010).................................................... 9, 10, 11, 13

*Cobell v. Jewell*,
   No. 96-cv-01285, 2016 WL 10703793 (D.D.C. Mar. 30, 2016) ................ 9

*Cobell v. Jewell*,
   No. 96-cv-01285, 2016 WL 10704595 (D.D.C. Mar. 30, 2016) ................ 9

*Center for Biological Diversity v. Raimondo*,
   No. 18-cv-112, 2021 WL 2823102 (D.D.C. July 7, 2021) ...................... 15

*Deutsche Bank National Trust Co. v. F.D.I.C.*,
   717 F.3d 189 (D.C. Cir.2013) .................................................................. 6, 8

*Equal Employment Opportunity Commission v. National Children's Center, Inc.*,
   146 F.3d 1042 (D.C. Cir. 1998)............................................................... 15

*Environmental Defense v. Leavitt*,
   329 F. Supp. 2d 55 (D.D.C. 2004) ........................................................... 15

*HRH Services LLC v. Travelers Indem. Co.*,
   No. 23-cv-02300, 2024 WL 4699925 (D.D.C. Nov. 6, 2024)............... 9, 11

*Humane Society of the United States v. United States Department of Agriculture*,
   No. 19-cv-2458, 2023 WL 3433970 (D.D.C. May 12, 2023)............... 12, 13

*Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*,
   No. 83-cv-03347, 1988 WL 64960 (D.D.C. June 13, 1988)................... 8, 9

*Karsner v. Lothian*,
   532 F.3d 876 (D.C. Cir. 2008) .................................................................. 6

*League of United Latin American Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ................................................................. 15

*Love v. Vilsack,*
   304 F.R.D. 85 (D.D.C. 2014) ........................................................................... 7

*Medical Liability Mutual Insurance Co. v. Alan Curtis LLC,*
   485 F.3d 1006 (8th Cir. 2007) ....................................................................... 13

*Natural Resources Defense Council v. Costle,*
   561 F.2d 904 (D.C. Cir. 1977) ................................................................... 7, 14

*National Association of Home Builders v. U.S. Army Corps of Engineers,*
   519 F. Supp. 2d 89 (D.D.C. 2007) ................................................................ 14

*Navistar, Inc. v. Jackson,*
   840 F. Supp. 2d 357 (D.D.C. 2012) .............................................................. 13

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland,*
   960 F.3d 603 (9th Cir. 2020) .......................................................................... 9

*Roane v. Leonhart,*
   741 F.3d 147 (D.C. Cir. 2014) ........................................................................ 7

*Roeder v. Islamic Republic of Iran,*
   333 F.3d 228 (D.C. Cir. 2003) ........................................................................ 6

*Security Exchange Commission v. LBRY, Inc.,*
   26 F.4th 96 (1st Cir. 2022) ....................................................................... 9, 10

*South Dakota v. United States Department of Interior,*
   317 F.3d 783 (8th Cir. 2003) ........................................................................ 15

*Telligent Masonry, LLC v. Continental Casualty Co.,*
   No. 19-cv-1078, 2019 WL 13255497 (D.D.C. July 3, 2019) ..................... 9, 13

*United Mexican States v. Lion Mexico Consolidated, L.P.,*
   No. 1:21-cv-03185, 2024 WL 4753800 (D.D.C. Nov. 8, 2024) ................ 12, 15

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.,*
   45 F.4th 426 (D.C. Cir. 2022) ........................................................................ 9

*United States v. British American Tobacco Australian Services Ltd.,*
   437 F.3d 1235 (D.C. Cir. 2006) ...................................................................... 6

*United States v. Microsoft Corp.,*
   253 F.3d 34 (D.C. Cir. 2001) .......................................................................... 7

*United States v. Pitney Bowes, Inc.*,
   25 F.3d 66 (2d Cir.1994)................................................................................ 15

*United States v. Ward Baking Co.*,
   376 U.S. 327 (1964)........................................................................................ 7

**Rules**

*Federal Rule of Civil Procedure 24(a) ........................................................... 6

*Federal Rule of Civil Procedure 24(b)................................................... 14, 15

## INTRODUCTION

For years, Apple has chosen to sit in the back of the courtroom "monitoring the proceedings," as Google defended the companies' agreement. ECF No. 1111 (Apple Mot.) at 14. Apple—one of the largest and most sophisticated companies in the world, represented by equally sophisticated counsel—knew the entire time that a major focus of this case was the companies' agreement. It was clear when the complaints were filed in 2020, during three years of discovery, and during the ten-week trial in 2023, a trial where Apple's own employees testified. Through it all, Apple remained on the sidelines.

On August 5, 2024, this Court found that the tens of billions of dollars Google has paid Apple to split search profits "unquestionably" has the effect of "significantly contributing to keeping Apple on the sidelines of search, thus allowing Google to maintain its monopoly." ECF No. 1032 (Memorandum Opinion) (Op.), at 242. With its lucrative exclusionary agreement in peril, Apple now files an eleventh-hour effort to intervene in this litigation. Apple's motion—coming more than four years after Plaintiffs filed their lawsuit, more than four months after the Court's liability decision, in the midst of expedited discovery, and mere months before the remedies trial—is both untimely and unnecessary given Google's representation of its combined interests in this litigation. Permitting intervention would also prejudice the Plaintiffs and likely result in further delay to the proceedings.

Accordingly, Plaintiffs respectfully request that the Court deny the motion for the reasons set forth below.

## FACTUAL BACKGROUND

The Internet Services Agreement (ISA) is the decades-old agreement between Apple and Google by which Google allows Apple to distribute general search services in exchange for revenue share payments. The first version of the ISA was executed in 2002. Op. at 108. Its

1

present iteration was first executed in 2016 and has been amended several times since then. *Id*. at 101. The ISA provides that both parties must "cooperate to defend the agreement, including in response to regulatory actions." *Id*.at 102.

The ISA requires Apple to set Google as the default search engine for Safari, Siri, and Spotlight on its devices. Op. at 102. In return, Google pays Apple ████████████████ for all queries that are initiated in Safari and Chrome. ECF No. 906 (Plaintiffs' Proposed Findings of Fact) at 79. In 2022, this arrangement resulted in Google paying Apple an estimated $20 billion. Op. at 103. In 2020, these payments accounted for 17.5 percent of all of Apple's operating profit. *Id*. at 102. Google receives huge benefits in return: 28 percent of all queries in the United States are entered into search access points covered by the ISA. *Id.* Google has projected net revenue losses between $28.2 and $32.7 billion (and over double that in gross revenue losses) if Google is no longer the default general search engine (GSE) on Apple devices, as the ISA requires. *Id*. at 30.

## PROCEDURAL BACKGROUND

## I.  Plaintiffs' Complaints, Liability Discovery, And The Liability Trial

In 2020, the United States, its Co-Plaintiff States, and the Colorado Plaintiff States sued Google. From the outset, Apple has known that Plaintiffs were taking direct aim at the ISA. The complaints specifically alleged that the Google–Apple ISA unlawfully maintained Google's monopolies in the general search services and search text advertising markets. *See, e.g.,* ECF No. 1 (DOJ Complaint) at ¶ 85 ("Google has had a series of search distribution agreements with Apple, effectively locking up one of the most significant distribution channels for general search engines"); *Colorado v. Google*, No. 1:20-cv-03715, ECF No. 3 (D.D.C Dec. 17, 2020) (Colorado Plaintiff States Complaint) at ¶ 109 ("[t]he Google-Apple agreement has harmed competition because it has foreclosed rival general search engines from accessing search access—points on a

vital distribution channel—Apple and its devices—for nearly 15 years").

Plaintiffs and Google then engaged in three years of discovery, culminating in a 10-week liability trial in Fall 2023. Apple participated in liability discovery as a non-party, producing documents and providing testimony at depositions, the majority of which focused on the ISA. When both Plaintiffs and Google included Apple employees on their potential witness lists, Apple sought to avoid participating at trial entirely by moving to quash both sides' trial subpoenas—the opposite tactic to what it now attempts. *See* ECF No. 643 (Apple Motion to Quash). At that time, Apple claimed it would be unduly burdensome for its employees to testify at trial because "it would require Apple's executives go through considerable burden and expense of preparing for their trial testimony and traveling 3,000 miles across the country from Northern California to testify at a bench trial." *Id.* at 2. The Court denied Apple's motion to quash. ECF No. 683 (Order on Motion to Quash) at 2.

At trial, Apple executives testified to the nature of the ISA, how it enshrined Google's exclusivity, and how it dampened Apple's incentive to develop its own general search engine. *See, e.g.*, Op. at 31, 103, 104, 108, 113, 121–22, 201 (citing Cue testimony); *id.* at 15, 23, 104, 241 (citing Giannandrea testimony).

Apple's counsel attended every deposition of its employees and every day of the trial. At no time throughout this yearslong litigation and prior to filing its motion to intervene on December 23, 2024, did Apple ever suggest that Google, its partner in the ISA and another sophisticated giant in the tech industry, did not adequately represent Apple's interests.

## II.    The Court's Liability Decision And The Remedies Phase Process

On August 5, 2024, the Court held that Google is a monopolist and unlawfully used that power to maintain its monopolies, finding, among other things, that the ISA was exclusionary and that the exclusion resulted in anticompetitive harm. Op. at 216. Google's payments to Apple

were part and parcel of the competitive harms caused by Google's exclusive distribution contracts. *Id*. at 230, 234.

After the Court's liability finding, Plaintiffs spoke with multiple third parties in connection with the remedy phase. On September 24, 2024, Plaintiffs reached out to counsel for Apple to seek its views on potential remedies and met virtually with them on October 1, 2024. On October 18, 2024, Plaintiffs issued a Rule 45 subpoena to Apple, to which Apple served objections on November 1, 2024. Plaintiffs did not receive any documents from Apple until November 22, 2024, and to date has received 31 documents total in response to their requests.

The Parties began remedy discovery immediately following the Court's liability opinion. There have been months of remedies proceedings between August and December 2024, including six status conferences and multiple remedies-related filings. Nevertheless, despite the Court's holding that the ISA was an essential part of Google's illegal conduct in August, Apple did not seek to intervene or otherwise participate in this case as a party until December 23, 2024.

## III.    Plaintiffs' and Google's Initial Proposed Final Judgments

On November 20, 2024, Plaintiffs filed their Initial Proposed Final Judgment ("Plaintiffs' PFJ"), *see* ECF No. 1062-1, and served on Google an Initial Witness List. Plaintiffs' PFJ was drafted based on the "roadmap to the components necessary to restore competition" contained in the Court's opinion, and the Court's findings and legal holdings concerning the ISA described above. ECF No. 1062 (PFJ Executive Summary) at 2. Consistent with the Court's findings, Plaintiffs' PFJ prohibits Google from paying any third party, including Apple, for making Google the default search engine on its devices. *See* Plaintiffs' PFJ ¶ IV.A.

On December 20, 2024, Google filed its Initial Proposed Final Judgment (Google's PFJ), s*ee* ECF No. 1108-1, and served its Initial Witness List. Google's PFJ proposes only minimal changes to the Google-Apple relationship, such as modest restrictions on Google's ability to

require Apple set Google as the default GSE on Apple's Siri and Spotlight features. *Id.* ¶ III(L). Notably, Google's PFJ would not limit Google's ability to pay Apple any amount of money to continue making Google the default GSE on the Safari browser on all Apple devices.

## ARGUMENT

Apple's untimely request for "limited intervention" at the tail end of a lengthy and complex proceeding in which it had ample opportunity to seek intervention, and in which its interests are robustly defended by Google, should be rejected. Apple argues that it needs to intervene at this late stage due to a sudden misalignment of interests between Google and Apple created by Plaintiffs' PFJ. Apple Mot. at 19. Yet, Apple acknowledges that "Google vigorously contested Plaintiffs' allegations" throughout the liability phase, including the allegations concerning the ISA. *Id.* at 9. And Apple all but concedes that Google's PFJ seeks full preservation of Apple's rights under the ISA since it would "permit Google to enter contracts for default status on Apple's (and other browsers') search access points" and "also permit Apple (and other search distributors) to continue receiving value for distributing Google Search to users on Apple's search access points." *Id.* at 5–6. In other words, Google has interests identically aligned with Apple's, which it has forcefully defended throughout this litigation.

Far from being "limited," Apple's proposal would furthermore add delay and complexity to the proceeding by permitting it to present "two or three witnesses" at the remedies hearing, cross-examine an unspecified number of witnesses for an unspecified amount of time, and participate "alongside Google" in unidentified briefing and future argument. Apple Mot. at 15.[1]

For the reasons demonstrated further below, Apple's motion should be denied.

---

[1] Apple does not identify the witnesses it would like to cross-examine or explain why it needs to cross-examine them and fails to identify any other limits on its potential participation in discovery, trial, or post-trial proceedings.

I.      **Apple Fails To Show It Should Be Permitted to Intervene as Of Right Under Rule 24(a)**

A party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must demonstrate all four of the following requirements: (1) "no party to the action can be an adequate representative of the applicant's interests;" (2) it has "a legally protected interest in the action;" (3) "the action [] threaten[s] to impair that interest;" and (4) "the application to intervene [is] timely." *Deutsche Bank Nat'l Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 192 (D.C. Cir. 2013) (citing *Karsner v. Lothian,* 532 F.3d 876, 885 (D.C. Cir. 2008)). A failure of any one element is fatal. As demonstrated below, Apple cannot show that its application is timely or that Google has not been an adequate representative of its interests and, accordingly, the motion should be denied.

   A.      **Apple's Motion Is Untimely**

As a threshold matter, the time for Apple to seek intervention has long since passed. Courts consider "all the circumstances" in assessing timeliness, focusing on "the time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's right, and the probability of prejudice to those already parties in the case." *Karsner*, 532 F.3d at 886 (internal quotations omitted) (citing *United States v. Brit. Am. Tobacco Austl. Servs. Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006). In this case, none of these factors justify Apple's extreme delay in filing its motion.

Apple has known since the filing of the complaints that Plaintiffs were challenging Google and Apple's ISA, and that Plaintiffs viewed the ISA as a vehicle to further entrench Google's monopolies. *See, e.g.*, Colorado Plaintiff States Complaint ¶¶ 46, 233(b). Thus, Apple's "contractual rights under the ISA" were at issue from the outset, and Apple had ample opportunity and time to seek intervention. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (timeliness to intervene is measured from when the intervenor knew or

should have known that its rights would be affected by the litigation). Instead, by choosing to wait and see until "litigation is quite advanced," Apple made a "strategic choice" not to intervene earlier. *Love v. Vilsack*, 304 F.R.D. 85, 91 (D.D.C. 2014), *aff'd*, No. 14-cv-5185, 2014 WL 6725758 (D.C. Cir. Nov. 18, 2014) (denying intervention). Indeed, Apple went further, actively seeking to *avoid* participation in the liability trial by moving to quash the subpoenas for its employees' testimony. Apple's gamesmanship should not be rewarded at this late stage.

Tellingly, Apple identifies no case in which a party was allowed to intervene at the post-trial, remedial phase of a litigation when it was inextricably involved in the litigation from the filing of the complaint. Indeed, Apple does not rely on a single case where the proposed intervenor was a counterparty to the contract that is the subject of the action. The Court should not entertain this motion from a party as sophisticated and well-resourced as Apple, a company that was deeply involved in the liability phase as a third party, during which the theory of the case remained fundamentally unchanged.

Chief among the considerations for a proposed intervention is also whether it would prejudice the case's existing parties by "unduly disrupting [the] litigation." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Any delay by a would-be intervenor must be weighed against prejudice to the original parties. *Id.* (citing *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977)). Apple's motion suggests it wishes to revisit the merits of the case, further delaying the resolution of merits by protecting the "status quo" and preventing any outcomes that would "undercut" the ISA. Apple Mot. at 15. The harm being caused by Google's monopoly is an ongoing harm. The remedies phase must proceed expeditiously to "eradicate [the] existing evils" and "prevent future violations." *United States v. Microsoft Corp.*, 253 F.3d 34, 101 (D.C. Cir. 2001) (quoting *United States v. Ward Baking Co.*, 376 U.S. 327, 330–31

(1964)). Adding more witnesses, more cross-examination, more briefing, and more oral argument will unfairly burden the Plaintiffs who are already working to meet a "shortened time period" before trial. ECF No. 1103 (Status Hearing Transcript, Dec. 18, 2024) at 18:12–18:25.

Furthermore, Apple is just one of many firms that contracted with Google to deploy general search services within their devices and software. In theory, any company that signed Mobile Application Distribution Agreements, Revenue Share Agreements, and other similar agreements may could make the same arguments that Apple has made here. Granting permission for Apple to intervene would invite all of Google's contract partners to request intervention and would present similar attendant issues and concerns. Opening intervention to a multiplicity of similarly situated intervenors could both complicate current proceedings and set a dangerous precedent for future litigation. *See Deutsche Bank*, 717 F.3d at 192–93 (describing an intervenor's argument as "swimming up river" because, if allowed, there would be no basis to reject a untold multitude of similarly situated others). These interests have been represented throughout the course of the trial by Google, which has relied on these contracts to support its monopoly and continues to argue for the minimum amount of change to the "status quo."

Finally, Apple and any other interested party can submit their views to the Court on remedies through appropriate means: by requesting permission to submit an amicus brief to this Court. Se*e Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, No. 83-cv-3347, 1988 WL 64960, at *3 (D.D.C. June 13, 1988) (denying intervention but permitting a party to appear as amicus curiae).

### B.  Google More Than Adequately Represents Apple's Interests

Apple's motion should also be denied because Google more than adequately represents Apple's interest in this matter. Intervention by right requires that Apple's interest is not adequately represented by existing parties. *See Deutsche Bank,* 717 F.3d at 192. Where, as here,

the interests of two parties are identical or the parties share the "same ultimate objective," the adequacy of representation is presumed. *Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010). *See also Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *SEC v. LBRY, Inc.*, 26 F.4th 96, 99 (1st Cir. 2022); *Cobell v. Jewell*, No. 96-cv-01285, 2016 WL 10703793, at *2 (D.D.C. Mar. 30, 2016).

Apple and Google clearly share the ultimate objective of continuing the ISA that has been so profitable for both companies. And Apple has not made any showing sufficient to rebut the presumption of adequacy based on this shared objective. Apple therefore fails to make a second required showing and the motion to intervene as of right. For this separate and independent reason, Apple's motion should be denied.

### 1.    Google And Apple Have A Shared Interest

Google and Apple share the same "ultimate objective" with respect to the ISA because they "seek precisely the same result in the underlying litigation," *HRH Servs. LLC v. Travelers Indem. Co.*, No. 23-cv-02300, 2024 WL 4699925, at *9 (D.D.C. Nov. 6, 2024) (first quoting *Cobell v. Jewell*, No. 96-cv-01285, 2016 WL 10704595, at *2 (D.D.C. Mar. 30, 2016) and then quoting *Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 112 (D.D.C. 1985)): limiting the scope of the ultimate remedy such that they might continue the "status quo." Apple has not even suggested otherwise. *Cf. United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022) (denying intervention where intervenor does not make any argument not made by an existing party). Courts in this jurisdiction have found that similar mutual commercial interests constituted a shared ultimate interest. *Accord HRH Servs.*, 2024 WL 4699925, at *10 (shared ultimate objective between an insured lessor and the owner of the property); *Telligent Masonry, LLC v. Cont'l Cas. Co.*, No. 19-cv-1078, 2019 WL

13255497, at *2 (D.D.C. July 3, 2019) (shared ultimate objective between a prime contractor and a subcontractor); *Atl. Refinishing & Restoration*, 272 F.R.D. at 30 (shared ultimate objective between a contractor and its surety).

Apple and Google's unified objective is obvious. First and foremost, Google itself told the Court a few weeks ago in its PFJ (*after* the supposed intervening event of Plaintiffs' PFJ), that Google intends to vigorously defend the ISA. Specifically, Google submitted a proposed remedy that would in no way impinge on Apple's ability to contract with Google, and instead would only give Apple "greater flexibility." ECF No. 1108 (Google's PFJ Executive Summary) at 5; *accord* ECF No. 1108 (Google's PFJ) at 3–5. Apple claims that it has a "unique interest in protecting its freedom and latitude to enter into commercial arrangements [with Google]," Apple Mot. at 14, but Google is vigorously pursuing precisely that same interest. Google has thus made clear that it has an identical interest as Apple and intends to pursue the same objectives as Apple itself seeks.

Second, it defies belief that after more than four years of staunchly defending the ISA and its other distribution agreements, Google would suddenly give up the very tool that it has used to maintain its monopoly for years. Google has an enormous financial interest in defending the ISA and its ability to continue paying Apple to make Google the default GSE on Apple devices. Indeed, as the Court has already held, Google's interest in defending its default status on Apple devices is worth *over $28 billion in net revenue*. Op. at 30. Apple for its part receives *over $20 billion a year* from Google, which in one year accounted for 17.5 percent of Apple's operating profit. *Id*. at 103. It is hard to conceive of a stronger alignment of interest.

Third, the economic incentives, as well as the legal obligations, to defend the ISA have been codified in the parties' contract. Apple and Google have long shared a "vision" to work "as

if [they] are one company." UPX0617 at -059. The ISA's Joint Defense Provision specifically requires that Apple and Google "cooperate to support and defend the ISA Agreement." JX0033 at -801. Further, the ISA requires that Apple and Google renegotiate the revenue share provisions of the ISA should a court negatively affect either the ISA itself or the parties' ability to perform under it. *See id.* This contractual provision remains in force.

Accordingly, Google presumptively represents Apple's interest in this litigation, and it falls to Apple to rebut this presumption.

### 2.    Apple Cannot Rebut The Presumption Of Adequacy

Apple cannot rebut the presumption that Google adequately represents its interests, as Google has done for years. *See HRH Servs.*, 2024 WL 4699925, at *9 (presumption of adequacy is rebuttable by certain special circumstances, including adversity of interest, collusion, or nonfeasance). Apple's claims to the contrary ignore the realities of this case and its long history.

First, Apple argues that "the breadth of Plaintiffs' PFJ makes it impossible for Google to give sufficient attention to defending the ISA" because it will force Google to "make judgments about which provisions to contest and how much weight to give different objections." Apple Mot. at 10. As an initial matter, Google—a huge company with a market capitalization in the trillions of dollars—and its representatives are more than capable of handling multiple, simultaneous issues; they have been doing so for years, in this action and in other legal and regulatory matters around the world. Furthermore, Google's own remedy proposal demonstrates that preservation of the ISA and defaults will be at center stage.

Just as it did during the liability trial, Google is well equipped to call multiple witnesses from Apple and conduct direct examinations that will provide the Court with Apple's views. The Court, of course, may ask the Apple witnesses any questions that it believes would be helpful to fashion a remedy in this matter. And as we know from trial, lawyers for Google and Apple are in

constant communication and have helped to jointly prepare witnesses for trial testimony. *See, e.g.,* Trial Tr. at 2166:13–25, Sept. 21. 2023 (John Giannandrea) ("Q. And before your testimony here today, did you meet with Google's lawyers? A. Yes, once.").

The analysis in *Alfa International Seafood v. Ross*, 321 F.R.D. 5 (D.D.C. 2017) (Mehta, J.), *appeal dismissed*, No. 17-cv-5138, 2018 WL 4763179 (D.C. Cir. Feb. 1, 2018), *vacated on other grounds* 320 F. Supp. 3d 184 (D.D.C. 2018), is instructive in this regard. *See* 321 F.R.D. at 8–9. There, this Court considered whether three environmental groups could intervene in an action by a seafood company against the U.S. Secretary of Commerce and other federal defendants, ruling that the proposed intervenors failed to establish that they were not adequately represented by the federal defendants. *Id*. The Court rejected the intervenors' contention that their "narrow focus" was not adequately represented by the federal defendants' "broader set of objectives." *Id.* The Court also rejected the intervenors' other arguments, because they were "speculative" and "portend[ed] no obvious divergence in the course of the litigation." *Id.* at 9. The same is true here. Just like the proposed intervenors in *Alfa,* Apple's interests here are narrow but in no way divergent from Google's. *See also United Mexican States v. Lion Mex. Consol., L.P.*, No. 1:21-cv-03185, 2024 WL 4753800, at *13 (D.D.C. Nov. 8, 2024) (finding that an intervenor's disagreement in litigation strategy was not an inadequately represented interest because the existing litigant was "equally incentivized" to raise the intervenor's proposed argument).

Apple chiefly relies on *Humane Society of the United States v. United States Department of Agriculture*, No. 19-cv-2458, 2023 WL 3433970 (D.D.C. May 12, 2023), to support its contention that its interests are differently situated from Google's. Apple Mot. at 10–11. But that case is readily distinguishable. There, the court explained that a federal agency was not able to

adequately represent a trade association's interest because the agency would not "afford the movant's discrete and particularized interests the same primacy as movants would themselves." *Id.* at *9 (quoting *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 362 (D.D.C. 2012)). The court cited the divergence of interests between the agency's focus on the public interest and the trade associations' focus on its members' interests. *Id.* No such divergence exists here. Apple identifies no way in which its interests are "fundamentally distinct" from Google's interest, nor can it. *Id.* Apple and Google are private parties to a commercial agreement that financially benefits them both, and Google's interest in defending the ISA is as strong as Apple's.

Second, Apple argues that Google cannot adequately represent Apple's interest in "crafting future contractual arrangements" with Google. Apple Mot. at 11. These future interests are generalized, hypothetical, contingent on future events that may or may not occur, and therefore not captured within Rule 24(a)'s ambit. *See Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007). Apple offers no legal authority to suggest otherwise. *Cf Telligent Masonry,* 2019 WL 13255497, at *2 (special circumstances existed where intervenor sought to argue claims and defenses that the existing litigants could not); *Atl. Refinishing & Restoration*, 272 F.R.D. at 30 (special circumstances existed where intervenor sought to enforce a contract term that the existing litigants did not).

Third, Apple argues that it and Google are differently situated because, under those same hypothetical future contractual arrangements, Google may wish to cease paying Apple a share of its revenue. Apple Mot. at 11. Apart from raising conjecture not subject to Rule 24(a), Apple's speculation runs contrary to Google's actual position in this case: a full-court press in defense of continuing to pay revenue shares in exchange for default status on Apple devices. This has been Google's consistent position since filing its Answer over four years ago. ECF No. 87 (Google

13

Answer). Those interests have not changed throughout this litigation. *See generally* Google's
PFJ.

Finally, Apple argues that only it can ensure that the Court "has the complete record
necessary to evaluate Plaintiffs' PFJ as it pertains to provisions impact Apple." Apple Mot. at 12.
Apple takes the untenable position that its interests can only be protected if it can call and
question its own witnesses at the remedy trial, looking to *Natural Resources Defense Council v.
Costle,* 561 F.2d 904 (D.C. Cir. 1977), in search of support. *See* Apple Mot. at 17–19. But that
case also fails to bolster Apple's argument. There, the court considered whether a group of
applicants for intervention were adequately represented by another group of industry parties
already granted intervention. 561 F.2d at 911–13. The court recognized that the proposed
intervenors presented "special and distinct interests" from the industry parties that had already
been granted intervenor status, specifically noting that "none of the existing parties represents the
interests of rubber manufacturers" and that one chemical company might not "have interests that
bear upon" a proposed intervenor. *Id.* at 913 n.48. By contrast, Apple and Google are actual
counterparties to the exact same contract that they both wish to preserve. No special and distinct
interests exist between them regarding a contract that benefits both of them.

For the above reasons, the motion to intervene under Rule 24(a) should be denied.

## II.    The Court Should Deny Permissive Intervention Under Rule 24(b)

Apple also requests permissive intervention under Federal Rule of Civil Procedure 24(b).
Apple Mot. at 22. Permissive intervention requires that Apple demonstrate that it "has a claim or
defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.
24(b)(1)(B). Courts in this jurisdiction consider whether the proposed intervenor "(1) 'has an
independent ground for subject-matter jurisdiction,' (2) has made a timely motion, and (3) has a
'claim or defense that has a question of law or fact in common with the main action.'" *Nat'l*

*Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007)

(quoting *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004)). Permissive intervention is

an "inherently discretionary enterprise," *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042,

1046 (D.C. Cir. 1998), and "requests for permissive intervention [] face heightened timeliness

scrutiny to prevent substantial disruption of the litigation process." *Ctr. for Biological Diversity*

*v. Raimondo*, No. 18-cv-112, 2021 WL 2823102, at \*4 (D.D.C. July 7, 2021) (citing *League of*

*United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997)); *see United Mexican*

*States v. Lion Mexico Consol., L.P.*, No. 21-cv-03185, 2024 WL 4753800, at \*13 (D.D.C. Nov.

8, 2024) ("Courts apply a more lenient standard of timeliness to intervention as of right than to

permissive intervention."). A court's exercise of discretion must therefore include "whether the

intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed.

R. Civ. P. 24(b)(3).

Above all else, the "principal consideration" in resolving a request for permissive

intervention is "whether the proposed intervention would unduly delay or prejudice the

adjudication of the parties' rights." *South Dakota v. United States Dep't of Interior*, 317 F.3d

783, 787 (8th Cir. 2003) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d

Cir.1994)). For the same reasons described with respect to intervention as of right, any proposed

intervention is extremely untimely and threatens significant prejudice to Plaintiffs. *See supra*

Section I.A. Accordingly, Plaintiff respectfully request that the Court deny Apple's motion for

permissive intervention.

## III.    Apple's Intervention, If Permitted, Should Be Limited, And Would Implicate The Court's Liability Findings

Although Plaintiffs strongly oppose intervention in this case, should the Court grant

Apple's motion, Plaintiffs would request strict limits be imposed on Apple to minimize the

resulting prejudice stemming from Apple's untimely motion. Reserving all available rights under the law, Plaintiffs contemplate multiple limitations that would promote efficiency in the proceeding, such as limiting Apple's ability to question any witnesses at the future remedies hearing to only current Apple employees.

In the event that Apple was granted the right to become a party to this proceeding, Plaintiffs would also evaluate additional actions they might seek, such as further revising Plaintiffs' PFJ, requesting that Apple be bound by the Court's final judgment, and other potential relief. For example, Plaintiffs may evaluate potential liability findings against Apple based on the existing liability record as well as the evidence obtained during remedies discovery. Plaintiffs could then seek to amend their complaints pursuant to Rule of Civil Procedure 15 to include Apple as a named defendant for liability purposes, depending on that evaluation.

## CONCLUSION

For all the above reasons, Plaintiffs respectfully request that the Court deny Apple's motion to intervene.

Dated: January 8, 2025                    Respectfully submitted,

                                          _/s/ Ryan Struve_
                                          David E. Dahlquist
                                          Adam T. Severt
                                          Travis R. Chapman
                                          Ryan T. Karr
                                          Veronica N. Onyema (D.C. Bar #979040)
                                          Ryan S. Struve (D.C. Bar #495406)

                                          U.S. Department of Justice
                                          Antitrust Division
                                          Technology & Digital Platforms Section
                                          450 Fifth Street NW, Suite 7100
                                          Washington, DC 20530

By:___/s/ Christoper A. Knight_____
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Christopher A. Knight, Assistant Attorney
General
Office of the Attorney General, State of
Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com
Christopher.Knight@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:___/s/ Diamante Smith_____
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant
Attorney General
James Lloyd, Deputy Attorney General for
Civil Litigation
Ryan Baasch, Associate Deputy Attorney
General for Civil Litigation
Diamante Smith, Assistant Attorney
General, Antitrust Division
Office of the Attorney General, State of
Texas
300 West 15th Street
Austin, Texas 78701
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:___/s/ Carolyn D. Jeffries_____
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General
Brian Wang, Deputy Attorney General
Carolyn D. Jeffries, Deputy Attorney
General (DC Bar No. 1600843)

Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*

Matthew M. Ford
Arkansas Bar No. 2013180
Senior Assistant Attorney General
Office of the Arkansas Attorney General
Tim Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney General
Ronald J. Stay, Jr., Senior Assistant Attorney
General
Charles Thimmesch, Senior Assistant
Attorney General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and
Director, Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of
Indiana
Indiana Government Center South, Fifth
Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov

18

*Counsel for Plaintiff State of Indiana*

Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the
Office of Consumer Protection
Philip R. Heleringer, Executive Director of
the Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive
Director of the Office of Consumer
Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of
Kentucky*

Liz Murrill, Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
voelkerp@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Michael Schwalbert
Missouri Bar No. 63229
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101

michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Counsel for Plaintiff State of Missouri*

Lynn Fitch, Attorney General
Crystal Utley Secoy, Assistant Attorney
General
Lee Morris, Special Assistant Attorney
General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Crystal.Utley@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

Anna Schneider
Special Assistant Attorney General, Senior
Counsel
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General, State of
South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

19

*Counsel for Plaintiff State of South Carolina*

Joshua L. Kaul, Attorney General
Laura E. McFarlane, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
mcfarlanele@doj.state.wi.us

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

MIKE HILGERS
Attorney General of Nebraska

Justin C. McCully, Assistant Attorney
General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
E-Mail: Justin.mccully@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

21

JEFF JACKSON
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff State of North
Carolina*

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

DEREK E. BROWN
Attorney General of Utah

Matthew Michaloski
Marie W.L. Martin
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140830
Salt Lake City, Utah 84114
Telephone: (801) 440-9825
E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

TREGARRICK TAYLOR
Attorney General of Alaska

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of
Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

BRIAN SCHWALB
Attorney General of the District of
Columbia

Elizabeth Gentry Arthur
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org

*Counsel for Plaintiff Territory Guam*

ANNE E. LOPEZ
Attorney General of Hawaiʻi

Rodney I. Kimura
Department of the Attorney General, State
of Hawaiʻi
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawaiʻi*

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 332-3549
E-Mail: John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov
Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

Schonette J. Walker
Gary Honick
Office of the Attorney General of
Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

ANDREA CAMPBELL
Attorney General of Massachusetts

William T. Matlack
Office of the Attorney General of
Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
E-Mail: William.matlack@mass.gov

*Counsel for Plaintiff Commonwealth of
Massachusetts*

KEITH ELLISON
Attorney General of Minnesota

Zach Biesanz
Senior Enforcement Counsel
Office of the Minnesota Attorney General
Antitrust Division
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker
Nevada Office of the Attorney General

100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mbadorine@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov

ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust
Division
Office of the Attorney General of North
Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North
Dakota*

DAVID YOST
Attorney General of Ohio

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail:
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-1014

E-Mail: Robert.carlson@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

DAN RAYFIELD
Attorney General of Oregon

Cheryl Hiemstra, Special Assistant
Attorney General
Gina Ko, Assistant Attorney General
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.Hiemstra@doj.oregon.gov
Gina.Ko@doj.oregon.gov

*Counsel for Plaintiff State of Oregon*

MICHELLE HENRY
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

DOMINGO EMANUELLI
HERNANDEZ
Attorney General of Puerto Rico
Guarionex Diaz Martinez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov
*Counsel for Plaintiff State of Vermont*

JASON S. MIYARES
Attorney General of Virginia

Tyler T. Henry
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

ROBERT FERGUSON
Attorney General of Washington

Amy Hanson
Senior Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

PATRICK MORRISEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of West Virginia
1900 Kanawha Boulevard
East Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

BRIDGET HILL
Attorney General of Wyoming

William T. Young
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-7847

26

E-Mail: William.young@wyo.gov

*Counsel for Plaintiff State of Wyoming*