**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

**JOINT STATUS REPORT**

Pursuant to the Court's December 20 Minute Order, the Parties submit the following Joint Status Report regarding the status of discovery.

**I.    Joint Status Update**

The Parties provide the Court with the following joint update on the status of discovery and request the Court's assistance with the three disputes identified below in the Parties' Position Statements.

Witness List Status

On December 10, 2024, Plaintiffs provided to Google a Supplemental Initial Fact Witness List. On December 20, Google filed its Proposed Final Judgment as ECF No. 1108 and provided its initial fact witness list to Plaintiffs. On December 24, the parties agreed to exchange

anticipated topics of examinations on their initial fact witness lists, and the parties exchanged these lists on January 9, 2025.

<u>Document Discovery Status</u>

On November 27, 2024, Plaintiffs served Google with their Second Joint Requests for Production. On December 11, 2024, Google provided to Plaintiffs its responses and objections. On December 11, 2024, Colorado Plaintiffs served their First Request for Production of Documents. Google provided to Colorado Plaintiffs its responses and objections on December 26, 2024.

On December 18, 2024, the Parties met and conferred but reached impasse and respectfully request the Court's guidance on one dispute related to Plaintiffs' Second Set of Requests for Production (Request 11).

<u>Google's 30(b)(6) Notice to Plaintiffs</u>

On December 10, 2024, Google served notices of Rule 30(b)(6) depositions of DOJ Plaintiffs and Colorado Plaintiffs. On January 2, 2025, DOJ Plaintiffs and Colorado Plaintiffs each provided responses and objections. On January 6, the parties met and conferred regarding these notices but reached impasse and respectfully request the Court's guidance regarding these notices.

<u>Length of Remedies Evidentiary Hearing</u>

On January 9, 2025, Google proposed extending the evidentiary hearing length currently set forth in ECF No. 1043, at I.W., and, on January 11, Plaintiffs offered a counterproposal. The parties respectfully request the Court's guidance regarding this dispute.

**II.    Plaintiffs' Position Statement Regarding Second RFP No. 11**

On November 27, Plaintiffs requested that Google produce information related to its

employee data access policies, which are directly relevant to Plaintiffs' proposed data access

remedies:

> For Google's privacy working groups for (1) Google Search and
> (2) Gemini based products, produce documents sufficient to show,
> as of the date of service of this document, who makes access
> decisions, how access decisions are evaluated and made, including
> additional approval and privacy review requirements referenced in
> Chris Miles' November 14, 2024, deposition, and from January
> 2010 to the present, any summary of Google's approval and denial
> decisions.

Plaintiffs' Second Joint Requests for Production of Documents at 6, Ex. A (hereinafter Pl.

Second Requests) (Req. No. 11). *See also* ECF No. 1062-1 at 11-14 (Plaintiffs' Proposed Final

Judgment). Google refuses to produce this highly relevant and responsive information and has

responded that it will only produce the underlying privacy policies.

As established during the liability trial, Google maintains staggering amounts of user

data, the "essential raw material" for "building, improving and sustaining" a competitive general

search engine, keeping users' search history and activity for 18 months. Op. at 226. Plaintiffs'

remedy seeks to provide rivals and potential rivals access to necessary inputs while

simultaneously safeguarding personal privacy and security. ECF No. 1062-1 (PFJ) at ¶¶ VI(A)–

(F). Google's own actions and conduct related to how it approves and implements its own

employees' access to user information will assist the Court in determining how to implement any

appropriate or necessary privacy protections under Plaintiffs' proposal.

For this reason, Plaintiffs issued a narrow request seeking documents sufficient to show

who makes data access decisions at Google, how such decisions are made, and any summary of

Google's data access approval and denial decisions. Despite the narrow scope of this request,

Google refuses to produce any documents responsive to this request, claiming that: (1) this information is not relevant to the Court's remedy determination; (2) it is burdensome to collect and produce such documents; and (3) Google's agreement to produce the privacy policies themselves are "sufficient to show how access decisions are evaluated and made."[1] These arguments should be rejected for the following reasons:

First, all Parties agree that privacy and Google's implementation of its privacy policies and practices (to merely the policies on their face) are relevant to the remedy phase. Google itself has placed this issue front and center in the remedies phase, stating publicly that Plaintiffs' proposed remedy would (1) "[e]ndanger the security and privacy of millions of Americans," and (2) require "disclosure" of "Americans' personal search queries."[2] Google cannot be permitted to critique Plaintiffs' remedy on these bases and simultaneously deny Plaintiffs the ability to access documents evidencing its own privacy practices.

Second, Plaintiffs have crafted this request to limit Google's burden and ensure timely production of these materials by only requesting "documents sufficient to show" Google's data access approval and denial decisions, and "any summary" of the same. Pl. Second Requests ¶ 11. Plaintiffs do not seek a custodial search, and Google should be able easily to locate this information within its Privacy, Safety, and Security team's documents.

Third, while Google has agreed to produce its privacy policies, these policies will not be sufficient for Plaintiffs' request. They are just that: policies. Without being able to review their

---

[1] Ltr. From C. Connor to K. Herrmann (Jan. 9, 2025) (Exhibit B) at 2.

[2] Google's public relations statements provide a preview of its arguments at the future remedies hearing. *See, e.g.*, Kent Walker, "DOJ's staggering proposal would hurt consumers and America's global technological leadership," Google: The Keyword, *available at* https://blog.google/outreach-initiatives/public-policy/doj-search-remedies-nov-2024/ (Nov. 21, 2024).

implementation, Plaintiffs have no way to determine whether Google's data access decisions and practices conform to those policies. In addition, the key question under Google's data access policy, as described in a 30(b)(6) deposition, is evaluating the business "justification and the need for this data." Dep. of Google (Miles), 51:20-52:8 (Nov. 14, 2024). The business judgment in *applying* the policy is a critical factor in determining an effective remedy and will likely inform the Court's assessment of the "trade-off between search quality and user privacy" that Google argues. Op. at ¶ 120.

For these reasons, Plaintiffs respectfully request that the Court order Google to produce the documents sought by Plaintiffs in Request No. 11.

## III.    Google's Position Statement Regarding Second RFP No. 11

Plaintiffs' Proposed Final Judgment ("PFJ") requires Google to turn over to "Qualified Competitors" *all* user data that Google receives by virtue of a user's interaction with Google Search "while safeguarding personal privacy and security." ECF 1062-1 p. 13, § VI.C ; *see also id.* p. 5, § III.AA (defining "User-Side Data"). To the extent privacy or security concerns preclude Google from releasing this data to an unspecified number of competitors, then Google is itself prohibited from retaining or using that data under Plaintiffs' PFJ. *Id.* Plaintiffs' PFJ thus pits preserving Google user privacy and security against optimizing the search experience for Google's users, including Google's ability to personalize the user's search experience consistent with Google's privacy policies and otherwise improve its search results.

Plaintiffs have in the remedies proceeding sought further discovery into Google's own protocols and protections for user data, including through 30(b)(6) testimony and through follow-on document requests. Plaintiffs' October 18 30(b)(6) notice to Google included a topic on "Google's data storage practices related to its search engine (e.g., user interaction data, index data) and Gemini (e.g., training data), including . . . how Google accesses the data." Plaintiffs

questioned Google's designated witness on these matters, and the witness explained the approval process that engineers must go through prior to receiving access to user data (such as for debugging or understanding user interaction for the purpose of improving the product). The witness further explained the considerations that go into whether to grant access requests, explaining that the Search privacy working group considers the business justification and whether there are alternative means to achieve the end set out in the request. And in response to Plaintiffs' RFP No. 10, Google produced documents sufficient to show Google's policies, protocols, procedures, and tools regarding employee access to databases and logs containing user interaction and user activity data.[3]

What goes beyond the bounds of discovery appropriate for this expedited remedies proceeding, however, is Plaintiffs' further request in RFP No. 11 for (a) documents regarding how Google's privacy working groups evaluate and make employee access decisions and (b) documents summarizing all approval and denial decisions in response to employee requests for access to the databases and logs containing user search data.[4] Plaintiffs' stated need for the documents is to challenge Google's credibility on privacy. While Google has otherwise

---

[3] Plaintiffs' RFP No. 10 requests, "From May 2022 to present, for each database or log of user interaction data or user activity data from the use of (1) Google Search and (2) Gemini-based products, produce documents sufficient to show: a. Google's policies, protocols, procedures, and tools for requesting, granting, and denying employee access to those databases or logs for training, finetuning, and development of its foundation models for a specific application, including Google's policies, protocols, procedures, and tools for requesting, granting, and denying access to the Sawmill database; and b. Google's policies, protocols, procedures, and tools for employees once access is granted including encryption, storage, and handling."

[4] Plaintiffs' RFP No. 11 requests, "For Google's privacy working groups for (1) Google Search and (2) Gemini-based products, produce documents sufficient to show, as of the date of service of this document, who makes access decisions, how access decisions are evaluated and made, including additional approval and privacy review requirements referenced in Chris Miles' November 14, 2024, deposition, and from January 20[2]0 to the present, any summary of Google's approval and denial decisions."

complied with Plaintiffs' discovery requests surrounding internal employee access to user data, there is a world of difference between the matter of how Google handles its user data as an *internal* matter and the ramifications of disclosing that data *externally* to Google's competitors, with whom Google's users have no relationship. In all events, the discovery that Google has already produced provides Plaintiffs the standards by which internal access decisions are evaluated and made. A fishing expedition into the details of how and why the privacy working groups have reached individual approval and denial decisions for any particular employee request over a period of four years is neither feasible nor relevant; as Google's 30(b)(6) witness explained, it is a context-specific inquiry that takes into consideration a number of different considerations. Additionally, any such inquiry is likely to raise a host of privilege issues given the close involvement of lawyers on such matters.

## IV. Plaintiffs' Position Statement Regarding Google's 30(b)(6) Notices

On December 10, 2024, Google served a 30(b)(6) deposition notice on Plaintiffs that seeks testimony regarding: (1) "The meaning, effect and intended implementation" of the language of the Proposed Final Judgment, including all defined terms incorporated therein and 2) "The participation in and contributions to the Proposed Final Judgment by a third party other than counsel to Plaintiffs or experts retained by Plaintiffs for this litigation." *See* Google's Notice of Rule 30(b)(6) Deposition, attached as Exhibit C.[5] Both topics necessitate attorney testimony and are improper. Topic 1 is a thinly veiled attempt to probe the "mental impressions, conclusions, opinions, or legal theories" of Plaintiffs' attorneys, information entitled to near-absolute protection from discovery. FED. R. CIV. P. 26(b)(3)(B). Topic 2 seeks to circumvent the Parties' agreement that prohibits the production of third-party interview notes and, either way,

---

[5] Google served an identical 30(b)(6) deposition notice on the Colorado Plaintiffs.

Plaintiffs provided a full and complete response that no third party participated in the drafting of Plaintiffs' PFJ.

## A.    Topic 1:  Meaning Of PFJ

Google is not seeking discoverable information. In effect, Google seeks a broad-ranging deposition to solicit information akin to a contention interrogatory—a clear attempt to circumvent the Case Management Order (CMO), which expressly precludes the parties from serving contention interrogatories. ECF No. 1047, (Order (Setting Discovery Limits)) at I.A. The PFJ speaks for itself, and to the extent there are questions about its meaning and implementation, those can be answered either through meet and confers by the parties or hearings before the Court, not sworn testimony regarding a legal document drafted and filed by Plaintiffs' counsel. If Google had legitimate questions about the PFJ it would have embraced Plaintiffs' offer to engage in a discussion to obtain information. Instead, Google refused to identify a single question and is pressing forward with defective discovery requests regarding legal documents rather than the underlying facts of this case.

The PFJ was prepared by counsel, as Google is undoubtedly aware, and a deposition regarding its contents would likely require testimony of counsel, not a fact witness in this case. Depositions of trial counsel are highly disfavored and allowed only in limited circumstances. *See, e.g., United States v. Yonkers Bd. of Educ.,* 946 F.2d 180, 185 (2d Cir. 1991)*; Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986); *Theriot v. Par. of Jefferson,* 185 F.3d 477, 491 (5th Cir. 1999)*.* As the Court of Appeals explained in *Shelton*:

> The practice of forcing trial counsel to testify as a witness . . . has long been discouraged . . . and recognized as disrupting the adversarial nature of our judicial system . . . .  It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.

805 F.2d at 1327; *see also Hickman v. Taylor*, 329 U.S. 495, 514 (1947) (discovery rules "do not contemplate that all the files and mental processes of lawyers [are] . . . opened to the free scrutiny of their adversaries."). Courts have rejected attempts to use 30(b)(6) depositions to probe the factual or legal basis for an agency's contentions on the grounds that doing so would be the practical equivalent of deposing trial counsel and would strip the protection for opinion work product. *See*, *e.g.*, *Guantanamera Cigar Co. v. Corporacion Habanos*, S.A., 263 F.R.D. 1, 8 (D.D.C. 2009) (internal citations omitted).

Instead, courts typically permit depositions of opposing counsel in limited circumstances and only where the party seeking the deposition has shown that (1) no other means exist to obtain the information other than to depose opposing counsel, the (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327. None apply here.

First, Google has other means to explore Plaintiffs' contentions. *Shelton*, 805 F.2d at 1327. Google could have presented their questions during a meet and confer or asked Plaintiffs to agree to respond to its questions in writing through an interrogatory. Further, Plaintiffs will proffer expert analysis relevant to the PFJ in Plaintiffs' forthcoming expert reports, and Google will have an opportunity to depose those experts. Under these circumstances, Google has no need for a Rule 30(b)(6) deposition. Plaintiffs' counsel themselves are not fact witnesses, and Google can take depositions and engage in third-party discovery to test the contours of the PFJ, as contemplated by the Court's schedule. Plaintiffs should not be put to the burden and inconvenience of preparing an attorney to explain information that Google has already received or will receive by other means.

Second, Google cannot show that "the information sought is relevant and nonprivileged."

*Shelton*, 805 F.2d at 1327. Questions about the "meaning, effect and intended implementation" of the PFJ will necessarily cross the line into the mental selective process used to develop the proposed remedy, which reflects Plaintiffs' legal theories, thought processes, and trial strategy. The only people with knowledge of the factual and legal bases are Plaintiffs' trial counsel. *See EEOC v HBE Corp.*, 157 F.R.D. 465 (E.D. Mo. 1994) (citing *Shelton*, 805 F.2d at 1329) (rejecting defendant's claim that it was merely seeking to "explore the factual bases of the claims made by Plaintiff," and noting that "[a]s defendant well knows, it is the selection and compilation of the relevant facts that is at the heart of the work product doctrine.").

Tellingly, Google has refused to identify any of its purported deposition questions or provide Plaintiffs with a single question it has regarding the "meaning, effect and intended implementation" of Plaintiffs' PFJ. And if even if Google sought something other than a mere interpretation of the words on the page, its request is so vague and overbroad that it does not allow Plaintiffs to sufficiently prepare a witness to testify.

Third, Google cannot show that this information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327. These requests are inconsistent with the Court's remedies scheduling order, which contemplates the parties serving Revised PFJs after the close of fact discovery, and for those proposals to be tested through the evidentiary hearing and post-hearing briefing (rather than through depositions of counsel). ECF No. 1043.

Google points to the fact that in one state-related *Microsoft* proceeding, an attorney from the State of California (not the Department of Justice) was deposed. *See New York v. Microsoft Corp.*, 224 F.Supp.2d 76, 87 n.7 (D.D.C. 2002). This is irrelevant. One coalition of States in *Microsoft* (apparently represented by some of the same firms who represent Google now) chose not to oppose Microsoft's deposition notice after the Department of Justice settled with

Microsoft. A separate party's tactical decision not to raise a legal defense in a separate case does not preclude Plaintiffs from doing so now.

Moreover, Google's request is unduly burdensome in a case on such an expedited schedule. Whatever Google's intention, the effect will be to burden Plaintiffs' counsel and force them to spend their already limited time for discovery on this unusual and unnecessary deposition request. Any questions regarding the "meaning, effect and intended implementation" of the PFJ raise legal questions and would require attorney testimony. *See SEC v. Buntrock*, 217 F.R.D. 441, 444-445 (N.D. Ill. 2003) (30(b)(6) notice seeking testimony regarding investigative findings that formed the basis of the SEC's securities fraud claim was "an inappropriate attempt to depose opposing counsel and to delve into the theories and opinions of SEC attorneys."). Given that Plaintiffs' attorneys drafted the PFJ, preparing a non-attorney to answer questions on the document is impractical and would be even more burdensome, given the multiple topics contained within Plaintiffs' comprehensive remedies package. *See id*. at 444 (noting that the 30(b)(6) would require "testimony of attorneys assigned to the case, or requires those attorney to prepare other witnesses to testify" before quashing the notice).

The PFJ stands on its own four corners. It is a proposed Court Order—there is no parol evidence available to provide further meaning or interpretation. Any "meaning" is evident on the face of the document and the "effect and intended implementation" is addressed through the preamble paragraphs of the Executive Summary. Indeed, Google's purported misunderstanding of the PFJ is belied by its repeated public statements and declarations to the Court.[6] Google's

---

[6]    *See, e.g.*, Kent Walker, *DOJ's Staggering Proposal Would Hurt Consumers and America's Global Technological Leadership*, Google Blog (Nov. 21, 2024), https://blog.google/outreach-initiatives/public-policy/doj-search-remedies-nov-2024/; Status Conference Tr., Nov. 26, 2024, 42:1–8 (Mr. Schmidtlein: "And as I said, the remedies that have been put forward are very, very

request for 30(b)(6) testimony is unnecessary, burdensome, and a waste of time under an already accelerated schedule. Accordingly, Plaintiffs request that it be quashed.

### B.     Topic 2: Third-Party Participation In PFJ

Google's request for deposition testimony regarding "[t]he participation in and contributions to the Proposed Final Judgment by any third party other than counsel to Plaintiffs or experts retained by Plaintiffs for this litigation" is also improper. Plaintiffs have explained to Google and formally answered that no third parties participated in the preparation and drafting of the PFJ. *See* Plaintiffs' Objection to Google's Notice of Rule 30(b)(6) Deposition, attached as Exhibit D. The PFJ is a legal document that was drafted by attorneys seeking fair and just remedies after undertaking a careful evaluation of this Court's detailed and well-reasoned liability opinion, as well as any other relevant facts and evidence at its disposal.

As part of the remedies process, Plaintiffs have undertaken a lengthy and good faith process of discussions with third parties who have information relevant to potential remedies: this is no different from how Plaintiffs undertake investigations, gather evidence for liability trials, or any other aspect of normal process in the course of enforcing the antitrust laws. In accordance with their discovery obligations, Plaintiffs have then compiled, gathered, and turned over third-party correspondence and presentations as contemplated under the CMO. Colorado Plaintiffs also produced a list of third parties that they have spoken with concerning remedies during the remedies phase.

This request appears to be yet another attempt at circumvention—this time, of the Parties'

---

dangerous and very, very problematic in how AI moves forward. And we very much look forward to putting witnesses up there who will explain and bring to life a lot of these types of innovations and the problems that the plaintiffs' remedies have. So we appreciate your guidance on that, and, yeah, we look forward to engaging on it.").

agreement that the interview notes of discussions with third parties constitute work product and are not discoverable. *See* Ex. E, Letter Agreement between Google and the United States (Mar. 13, 2020) (agreeing that documents "not directly or indirectly furnished to any non-Party, such as internal memoranda, authored by . . . counsel for the United States" need not be produced in discovery); ECF No. 99 at 8-9, ¶ 10 (documents sent "solely between counsel for one or more Plaintiffs" need not be "preserve[d] or produce[d] in discovery"). But this process of speaking to third parties during the remedies phase is no different than the liability discovery process and should not be treated differently. Google is free to ask the third parties directly regarding their positions on remedies. No more is required, nor should it be.

Furthermore, Google's Notice as to Topic 2 would also necessitate attorney testimony, just as Topic 1, and raises the same concerns of attorney work product, deliberative process, and common interest privileges. And as with Topic 1, Google cannot meet its burden under *Shelton,* 805 F.2d at 1327, to compel attorney testimony.

First, Google cannot show that "no other means exist to obtain the information than to depose opposing counsel[,]" *id.,* because it has access to third parties and Plaintiffs' third-party correspondence.[7]

Second, Google cannot show that "the information sought is relevant and nonprivileged," given that no third parties participated in the drafting of the PFJ. *Shelton*, 805 F.2d at 1327. Further, Google has yet to provide any detail on what types of factual questions it may pose that will not delve into Plaintiffs' legal theories, thought processes, and trial strategy.

---

[7] The United States is working towards supplementing its production of third-party correspondence through November 5, 2024.

Third, Google cannot show that this information is crucial to preparing its case. *Shelton*, 805 F.2d at 1327. Instead, its request runs counter to the Court's remedies scheduling order, which contemplates the parties serving Revised PFJs following the benefit of fact discovery. Google has the rest of the fact discovery period to subpoena third parties and to mount a defense.

For these reasons, the Court should deny Google's attempt to compel 30(b)(6) testimony on both topics.

## V.    Google's Position Statement Regarding Google's 30(b)(6) Notices

Google has served a two-topic 30(b)(6) deposition notice on the Plaintiffs to discover factual information related to their proposed remedies.  The depositions were noticed to take place the week of January 6, but Plaintiffs served a raft of objections a few days prior, refused to appear, and will not agree to provide any testimony on those topics absent a Court order.  The Court should order the DOJ Plaintiffs and the Colorado Plaintiffs to promptly designate a witness or witnesses to sit for deposition to respond to these topics.

### A.    Background

Plaintiffs filed a Proposed Final Judgment ("PFJ") in late November.  The PFJ is not limited to the distribution of general search services or search text advertising; rather, it purports to reach several products and markets that were not the subject of discovery or evidence during the liability phase of this litigation.  It would force the sale of Chrome and the Chromium open source browser code, and potentially also the Android operating system and Google proprietary Android services.  It would impose all manner of technical implementations on Google to compel the disclosure of user data; to give rivals a live feed to Google's search index and other intellectual property; to syndicate Google's search and advertising products to anyone who asks; and to permit competitors to pose fake queries to Google's search engine.  And it seeks to

prohibit Google from all kinds of synergies in its own products by prohibiting what Plaintiffs vaguely call "self-preferencing."

That the PFJ is radically overbroad in scope, reaching well beyond the conduct at issue in the case, is certainly plain from its text. What is not plain, and what requires discovery, is the precise meaning of the PFJ's terms and the precise boundaries they would put on innovation, what effect they would have on Google's operations, how exactly they would be implemented, and what range of devices they seek to regulate. In order to understand the full extent and intended implementation of Plaintiffs' several proposals, Google served a two-topic Rule 30(b)(6) deposition notice on Plaintiffs on December 10, 2024. Topic 1 seeks testimony on "[t]he meaning, effect and intended implementation of the language of the Proposed Final Judgment, including all defined terms incorporated therein." Ex. 1 at 1 (Plaintiffs' R&Os). Topic 2 seeks testimony on which third parties sought which provisions of the PFJ; the topic expressly excludes any contributions to the PFJ from any expert retained by Plaintiffs. *Id* at 4.

While Google has produced Rule 30(b)(6) witnesses on more than 30 topics over the course of this litigation, including five topics during the remedies phase alone, Plaintiffs now refuse to produce any witness on these two topics. After declining to confer for several weeks ahead of the noticed date for these depositions, on January 2, Plaintiffs served objections and refused to produce any testimony whatsoever. The noticed dates passed without any motion for a protective order, and Google accordingly raises the issue in this Joint Status Report.

### B.    It Is Not "Unusual" to Depose a Government Agency, Rather Rule 30(b)(6) Explicitly Permits It

Plaintiffs take the position that the subject 30(b)(6) notices are "highly unusual[.]" Ex. 2 (Email from D. Dahlquist to Defense Counsel, Dec. 31, 2024). But in truth, "Rule 30(b)(6) is

express that a party may 'in a subpoena name as the deponent a . . . governmental agency.'" *Yousuf v. Samantar*, 451 F.3d 248, 255 (D.C. Cir. 2006) (citing Fed. R. Civ. P. 30(b)(6)).

Nor it "highly unusual" for the witness to address the meaning of proposed remedies in an antitrust case such as this. In *New York v. Microsoft*, Microsoft noticed such a deposition, and the plaintiffs designated an attorney to testify under Rule 30(b)(6) with respect to their proposed remedies. *See e.g.*, *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 87 n.7 (D.D.C. 2002) (citing the deposition); B. Gates Written Direct Testimony at ¶¶ 78, 147, 198, 207, 210 (referring to the testimony of non-settling States' Rule 30(b)(6) witness, then-California Assistant Attorney General Tom Greene, and describing Greene's testimony on the intent and definitions of particular remedial provisions). The plaintiffs' witness in *Microsoft* provided a full day of testimony on topics ranging from the definition of particular terms in those plaintiffs' proposed judgment, to the proposed remedies' potential impacts (including technical requirements and cost allocation), to which third parties contributed to the proposed remedy. In conferral in advance of this motion, Google inquired of Plaintiffs as to what, if anything, renders that precedent inapplicable in this case; Plaintiffs declined to respond.

What Google asks for is no more but no less of an opportunity to discover facts about Plaintiffs' PFJ, specifically, the meaning, effect and intended implementation of its terms as applied to Google's business units. Google also seeks to understand which third parties sought particular provisions in the PFJ, which will elucidate the impact the remedies are intended to have on different market participants and how they would affect competition between those market participants and Google.

### C.    Plaintiffs' Objections Are Meritless

#### 1.    Topic 1

Plaintiffs essentially concede the relevance of Topic 1, disputing relevance only on the ground that "the eventual final judgment . . . rests with the Court, not with the Plaintiffs[.]"  Ex. 1 at 3.  That the Court will render the final judgment does not inform whether Plaintiffs should provide discovery about the proposed judgment they have asked the Court to enter.  Plaintiffs designed the PFJ, and information about its meaning and implementation is exclusively within their knowledge.

Plaintiffs separately object that the deposition would contravene *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), without acknowledging that several "[c]ourts in [the D.C.] Circuit have clarified that *Shelton* applies . . . *only* if the deposition would reveal litigation strategy in the pending case."  *United States v. Newman*, 531 F. Supp. 3d 181, 192 (D.D.C. 2021) (emphasis in original) (citation omitted) (rejecting the "stringent test" from *Shelton* and allowing the deposition of opposing party's trial counsel because the subject matter of the deposition did not "encroach on litigation strategy").  Google's 30(b)(6) notice does not call for disclosure of litigation strategy.  Google's notice only seeks an explanation of Plaintiffs' PFJ, and it is entitled to this fact discovery under the broad standards of Rule 26, even if the deponent may be opposing counsel.  *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) ("[T]he standards set forth in Rule 26 require a flexible approach to lawyer depositions . . . [T]he fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices[.]").  The same was true in *New York v. Microsoft*, in which plaintiffs' counsel, an attorney employed by a plaintiff state's attorney general, gave Rule 30(b)(6) testimony.

*    *    *

Even if *Shelton* applied, the circumstances here plainly meet its three-part test that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327 (citation omitted).

*First*, Plaintiffs are the only party that can explain the meaning of the PFJ. While Plaintiffs argue that its meaning is "evident on the face of the document," Ex. 1 at 2, the PFJ fails to define various terms, many of its provisions are vague, and the precise contours of what conduct Google could and could not engage in consistent with the proposed decree is not clear. Plaintiffs have pointed to no supporting caselaw where the deposition notice sought facts this crucial to the litigation, and yet, was prohibited. The only analogous case is *Microsoft*, where the defendant was permitted to depose plaintiffs on their proposed remedy. And Plaintiffs' alternative argument that the "Executive Summary" that they filed somehow disposes of the need for a deposition is disingenuous; the summary provides no additional facts on the practical design or effect of the remedies.

*Second*, the meaning of the PFJ, and how it would be implemented, is not privileged. In conferral, Plaintiffs insisted it was off limits for deposition as a "legal document," but of course the meaning and circumstances of legal documents can be discovered. *See, e.g.*, *In re Diet Drugs*, 582 F.3d 524, 536 (3d Cir. 2009) (noting that the court permitted a deposition of lead counsel "regarding the terms and meaning" of various settlement agreements submitted to the court); *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 15 & n.1 (D.D.C. 2002) (allowing deposition of defendant's in-house counsel as a fact witness on a prior settlement agreement); *Doe v. D.C.*, 230 F.R.D. 47, 53 (D.D.C. 2005) (permitting a Rule 30(b)(6) deponent to be questioned on contracts and agreements relating to allegations in the complaint); *Williams v.*

*Trinity Med. Mgmt.*, L.L.C., 2018 WL 1070123, at *3–4 (E.D. La. Feb. 26, 2018) (allowing deposition of opposing party's former counsel on the interpretation of a settlement agreement); *Anserphone of New Orleans, Inc. v. Protocol Commc'ns, Inc.*, 2002 WL 31016572, at *2 (E.D. La. Sept. 10, 2002) (permitting deposition of defendant's former counsel on his involvement drafting an agreement at the center of a breach of contract claim).

If Plaintiffs have appropriate privilege objections to assert in response to specific questions, they can lodge them, but the rules do not provide for a total void of factual information simply because there is adjacent privileged information. Privilege "cannot be wielded as a preemptive shield to quash the depositions in advance." *United States v. Educ. Mgmt. LLC*, 2014 WL 1391179, at *2, *4 (W.D. Pa. Apr. 9, 2014) (permitting a 30(b)(6) deposition of an enforcement attorney who played a "pervasive legal role" in the litigation). And Topic 1 is not directed at litigation strategy; it reads nothing like the topics that were at issue in the case cited by Plaintiffs' objections, where the topics sought the agency's "legal position and how it arrived at that position," as well as "counsel's impressions regarding the significance of the facts." *FTC v. U.S. Grant Resources, LLC*, 2004 WL 1444951, at *9 (E.D. La. June 25, 2004) (subpoena sought information on, *inter alia*, "the results of the FTC's investigation of [defendant], the roles and identification of FTC employees involved in the investigation, the extent of FTC reliance on work product of various employees, [and] the policies and procedures invoked in this particular investigation") (cited by Plaintiffs, Ex. 1 at 2). And this is plainly not a circumstance in which "there is not a single question that could be propounded to [the witness] that would not be objectionable." *Amobi v. District of Columbia Dept. of Corrections*, 262 F.R.D. 45, 50 (D.D.C. 2009) (holding that a court must make such a finding in order "to quash a subpoena for the deposition of an attorney") (citation omitted).

*Third*, the meaning and effect of plaintiffs' Proposed Final Judgment is unquestionably crucial—Google cannot properly defend its case without knowing exactly what it is defending against.  The tactical advantage that Plaintiffs seek from delaying putting further definition around their proposals until expert discovery, or even until trial, is no basis to object to proper discovery requests.  It is plain on the face of Plaintiffs' objections that delay is what they seek:  they claim the deposition is premature because they will revise their PFJ in March.  Ex. 1 at 3.  The fact the parties are permitted to make revisions to their proposals following fact discovery is no excuse to evade questions on the proposals disclosed now; by the point of the amended proposals on March 7, fact discovery will be closed and expert disclosures will be *one week* away.  The strategic advantage Plaintiffs seek from delay—and the prejudice to Google—is manifest.

*     *     *

Plaintiffs separately seek to shroud Topic 1 in the deliberative process privilege.  Ex. 1 at 4.  But Google is not seeking internal, predecisional information of the type that that privilege protects.  *See United States Fish & Wildlife Serv. v. Sierra Club, Inc*., 592 U.S. 261, 268 (2021) (explaining that "documents reflecting a final agency decision and the reasons supporting it" are not protected by that privilege).  Topic 1 does not seek disclosure of who within the departments or offices of the United States or the relevant state attorneys general proposed particular provisions of the PFJ, or internal communications about who argued in support of or in opposition to particular provisions; Topic 1 does not seek any internal communications at all.  Google seeks a factual explanation of Plaintiffs' publicly disclosed PFJ, which plainly falls

outside the deliberative process privilege.[8]  *See, e.g.*, *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 259 (D.D.C. 2004) (explaining that "[m]erely factual material is not exempt" under deliberative process privilege); *Doe*, 230 F.R.D. at 53 (holding that "defendant's assertion of [attorney client and deliberative process privilege] is unavailing" in arguing for a protective order against a deposition, because "[p]laintiff may . . . seek to verify assertions made by defendant by discussing the contracts or other agreements . . . Such inquiry into unprivileged fact is clearly permissible under the rules of discovery").  Moreover, Plaintiffs' insistence that the PFJ is a "draft" that they will revise in March is unavailing: under the deliberative process privilege, "drafts are not presumptively privileged" and any draft that is "used by the agency in its dealings with the public" cannot be privileged given its "exposure . . . to third parties." *Jud. Watch, Inc*., 297 F. Supp. 2d. at 261 (citation omitted).

Finally, Plaintiffs object that "[a]ny questions Defendant's counsel may have about the proposed remedy can and should be addressed through a meet and confer process."  Ex. 1 at 4.  In conferral ahead of this JSR, Plaintiffs conceded that they were not committing to answer questions in writing.  Regardless, given the extensive nature of the PFJ and the iterative nature of the questions that Google seeks to pose regarding its terms, there is no basis to force Google into a back and forth letter campaign over this or that provision of the PFJ, none of which will bind the Plaintiffs as sworn testimony.  The Court will recall from the last status conference that Plaintiffs were unable to answer the Court's questions about their proposed remedies with

---

[8] Plaintiffs' claim that Topic 1 constitutes the "functional equivalent of a contention interrogatory," Ex. 1 at 3, is similarly misguided; on its face, the topic does not call for testimony on the legal bases for the proposed remedies.  It calls instead for answers to the antecedent question of what the PFJ means and how it would be implemented.

respect to artificial intelligence[9]—Google is entitled to press for answers to those questions, and others, in deposition format, with a court reporter taking down testimony.  This is a single deposition topic on which Google seeks foundational testimony, and having taken 30(b)(6) testimony from Google on many topics over the course of this litigation, Plaintiffs can follow the same Rule 30(b)(6) process that Google did.

2.    **Topic 2**

Plaintiffs do not object to the relevance of Topic 2; they could hardly do so.  Testimony about the contributions and participation of third parties in particular provisions of the PFJ is also plainly non-privileged.  Again, in *New York v. Microsoft*, such information was disclosed in a 30(b)(6) deposition.

Nor do Plaintiffs have a valid objection on grounds of the deliberative process privilege.  That privilege does not protect communications "with a non-governmental party outside the agency."  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 259–60 (D.C. Cir. 1977).  Where, as here, third parties communicate with government agencies "to support a claim by the[m] . . . that is necessarily adverse to the interests of competitors," no such privilege applies.  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 14 (2001) (holding that deliberative process privilege does not protect documents submitted by third-party with an interest in the agency's proceedings).

Finally, that Plaintiffs have "disclosed *the names* of third parties that they have spoken with concerning remedies," Ex. 1 at 5 (emphasis added), is insufficient to warrant a protective order on Topic 2.  The document productions of Plaintiffs and third parties have indeed

---

[9] In response to the Court's question "whether that's something that Google is going to have to defend against," Plaintiffs' counsel urged the Court "focus on the proposed final judgment that's in front of us," without answering the question.  12/20/24 Hr'g Tr. at 23–24.

confirmed the *identity* of certain third parties seeking to benefit from the remedies proceeding, but the documents rarely disclose *how*. Save a few instances, third parties have conveyed their proposals to Plaintiffs orally, or have otherwise avoided written memorialization of their proposals. Again, the relevance of these engagements is conceded by Plaintiffs—the only question is how to discover them, and the lack of paper trail leaves a 30(b)(6) deposition as the only available route.[10] That is the same way that Microsoft discovered this information in *New York v. Microsoft*, and there is no reason it oughtn't be available to Google here.

## VI.    Plaintiffs' Position Statement Regarding the Duration of the Hearing

Plaintiffs oppose Google's belated proposal to more than double the length of the evidentiary hearing, seeking nearly as much time as it used during the entire liability phase. Google had notice of the Court's comprehensive opinion—and Plaintiffs' commitment to propose remedies to address Google's illegal conduct—when the parties presented before the Court regarding the duration of the remedies hearing. Google's proposal thus only serves to delay the implementation of remedies designed to restore competition to these markets that continue to be monopolized on an ongoing basis to Google's advantage and profit.

Nonetheless, to find a compromise yet still avoid a repetitive evidentiary hearing, Plaintiffs offered to agree to seek with Google twelve total trial days, six days per side, to address Google's concern. Google has rejected this compromise offer. Plaintiffs request that, should the Court consider extending the evidentiary hearing to accommodate Google's late request, Plaintiffs receive an equal amount of trial time to Google to fairly address Google's defenses.

---

[10] Despite Plaintiffs' insistence, Topic 2 does not effectively require production of attorney notes of meetings with third parties. Ex. 1 at 5. The facts of the subject communications with third parties, which are relevant and non-privileged, are discoverable without regard to the fact that a work product memorialization of them may (or may not) exist elsewhere.

**VII.    Google's Position Statement Regarding the Duration of the Hearing**

At the November 26, 2024 status conference, the Court indicated that it would address the length of the remedies hearing at a future status conference.  In light of the unprecedented breadth of Plaintiffs' proposed remedies, Google informed Plaintiffs that 9 trial days in total was not sufficient for the remedies phase of this case, and that Google needed 10 days for its case (inclusive of Plaintiffs' crosses of the witnesses Google calls), in order to put on the fact and expert witnesses that it anticipates calling.  Plaintiffs have not agreed with Google's position that a longer remedies trial is necessary and have instead proposed 6 trial days per side (12 total).  Plaintiffs' offer is not sufficient for Google to present its defense to the Court.

On September 18, 2024, the Court set the remedies hearing for 9 trial days.  This was before Plaintiffs had served their initial remedies framework or Proposed Final Judgment, and only after Plaintiffs represented multiple times that the remedies they would be seeking would only require a hearing of "one week," or "five trial days."  Sept. 6, 2024 Hrg. Tr. at 18:20-24.  *See also* ECF 1042 (Sept. 13, 2024 JSR) (Plaintiffs seeking Evidentiary Hearing of "1-2 weeks").  When Plaintiffs served their Proposed Final Judgment, however, it became clear that more time would be needed to present testimony and evidence regarding the broad remedies Plaintiffs seek.

Plaintiffs' Proposed Final Judgment contains proposed remedies that are sweeping, technically complicated, and would negatively impact competition across many different markets.  Google expects to present fact and expert testimony on a large number of issues that were not presented to the Court during the liability trial.  Plaintiffs' offer of 12 total trial days does not take into account the expanded scope of their remedies proposal.  Rather than engaging with Google's (and the Court's) concerns with the current schedule, Plaintiffs have largely doubled down on the initial trial estimates, asserting that "Google had notice of Court's

comprehensive opinion—and Plaintiffs' commitment to propose remedies to address Google's

illegal conduct—when it agreed to Plaintiffs' proposed trial length."  Jan. 11, 2025 email from

K. Herrmann to G. Safty.  But neither Google (when negotiating the current schedule), nor the

Court (when entering it), could have reasonably expected Plaintiffs to propose the breadth of

complex remedies they now seek.

Plaintiffs' proposed remedies go far beyond the bounds of the case they presented during

the liability phase and far exceed any remedies entered in any even remotely comparable Section

2 case.  For instance (and by way of many examples[11]), during the liability trial, Plaintiffs

dismissed the threat of AI to disrupt competition in the Search market, arguing that "Generative

AI systems, like ChatGPT, are not reasonable substitutes for GSEs."  ECF 855 at 57.  Now,

Plaintiffs seek broad remedies related to "AI Products" (defined to go far beyond products like

Gemini and ChatGPT), on the theory that "advances in artificial intelligence ('AI'), may present

an opportunity for fresh competition."  ECF 1062 at 3.  Similarly, at the liability phase, Plaintiffs

disclaimed any allegations of anticompetitive behavior related to Google's ownership or

operation of its Chrome Browser.  Yet, Plaintiffs now seek the divestiture of Chrome, apparently

on the theory that Chrome is too popular, and therefore it "poses a significant challenge to

effectuate a remedy."  ECF 1062 at 3.  The Court has heard no testimony and seen no evidence

regarding the operation of Chrome, the enormous technical difficulties with divestiture given

interdependencies within Google, or the competitive effects of changing ownership over one of

the most popular browsers in the country.  And while the Court at trial heard testimony regarding

---

[11] In addition to those discussed here, Plaintiffs' Proposed Final Judgment involves a host of
other issues that were not addressed at trial, including divestiture of Android, investment
prohibitions and divestiture of interests in companies that have AI products and a broad set of
other products, prohibitions on "self-preferencing" related to a number of products and services,
and requirements related to Google Pixel.

the (diminishing) importance of click and query data and the operation of Google's search index, it has heard no testimony and seen no evidence about the feasibility or competitive effects of forcing Google to share its click and query data and index with rivals, let alone forcing Google to syndicate its search results and to share competitively sensitive information about how Google ranks its search results with competitors.

Given the breadth of Plaintiffs' Proposed Final Judgment and the new issues that now require testimony and evidence to be presented, Google respectfully requests 10 trial days to present its case at the remedies hearing.

Dated: January 14, 2025                    Respectfully submitted,

By: */s/ Karl E. Herrmann*
David E. Dahlquist
Adam T. Severt
Travis R. Chapman
Karl E. Herrmann (D.C. Bar #1022464)
Keane M. Nowlan (D.C. Bar #90028063)
Veronica N. Onyema (D.C. Bar #979040)
Ryan S. Struve (D.C. Bar #495406)
Sara Trent

U.S. Department of Justice
Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 805-8563
David.Dahlquist@usdoj.gov
Adam.Severt@usdoj.gov

*Counsel for Plaintiff*
*United States of America*

By:___/s/ Christoper A. Knight_____
Ashley Moody, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Christopher A. Knight, Assistant Attorney
General
Office of the Attorney General, State of
Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com
Christopher.Knight@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:___/s/ Diamante Smith_____
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant
Attorney General
James Lloyd, Deputy Attorney General for
Civil Litigation
Ryan Baasch, Associate Deputy Attorney
General for Civil Litigation
Trevor Young, Deputy Chief, Antitrust
Division
Diamante Smith, Assistant Attorney
General, Antitrust Division
Office of the Attorney General, State of
Texas
300 West 15th Street
Austin, Texas 78701
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:___/s/ Carolyn D. Jeffries_____
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General
Brian Wang, Deputy Attorney General

Carolyn D. Jeffries, Deputy Attorney
General (DC Bar No. 1600843)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*

Matthew M. Ford
Arkansas Bar No. 2013180
Senior Assistant Attorney General
Office of the Arkansas Attorney General
Tim Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney General
Ronald J. Stay, Jr., Senior Assistant Attorney
General
Charles Thimmesch, Senior Assistant
Attorney General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and
Director, Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of
Indiana
Indiana Government Center South, Fifth
Floor
302 West Washington Street
Indianapolis, Indiana 46204

Jesse.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the
Office of Consumer Protection
Philip R. Heleringer, Executive Director of
the Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive
Director of the Office of Consumer
Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of
Kentucky*

Liz Murrill, Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
voelkerp@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Michael Schwalbert
Missouri Bar No. 63229
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office

815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Counsel for Plaintiff State of Missouri*

Lynn Fitch, Attorney General
Crystal Utley Secoy, Assistant Attorney
General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Crystal.Utley@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

Anna Schneider
Special Assistant Attorney General, Senior
Counsel
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General, State of
South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549

mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

Joshua L. Kaul, Attorney General
Laura E. McFarlane, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
mcfarlanele@doj.state.wi.us

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

MIKE HILGERS
Attorney General of Nebraska

Justin C. McCully, Assistant Attorney
General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
E-Mail: Justin.mccully@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the Attorney General of New
York
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

JOSHUA STEIN
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff State of North Carolina*

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

SEAN REYES
Attorney General of Utah

Matthew Michaloski
Marie W.L. Martin
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140830
Salt Lake City, Utah 84114
Telephone: (801) 440-9825
E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

TREGARRICK TAYLOR
Attorney General of Alaska

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

BRIAN SCHWALB
Attorney General of the District of Columbia

Elizabeth Gentry Arthur
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org

*Counsel for Plaintiff Territory Guam*

ANNE E. LOPEZ
Attorney General of Hawaiʻi

Rodney I. Kimura
Department of the Attorney General, State
of Hawaiʻi
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawaiʻi*

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. State St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 332-3549
E-Mail:  John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov
 Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

32

Schonette J. Walker
Gary Honick
Office of the Attorney General of
Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

ANDREA CAMPBELL
Attorney General of Massachusetts

William T. Matlack
Office of the Attorney General of
Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
E-Mail: William.matlack@mass.gov

*Counsel for Plaintiff Commonwealth of
Massachusetts*

KEITH ELLISON
Attorney General of Minnesota

Zach Biesanz
Senior Enforcement Counsel
Office of the Minnesota Attorney General
Antitrust Division
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of
Minnesota*

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker

Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mbadorine@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
33 Capitol Street
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885

E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust
Division
Office of the Attorney General of North
Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North
Dakota*

DAVID YOST
Attorney General of Ohio

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail:
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Telephone: (405) 522-1014
E-Mail: Robert.carlson@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

ELLEN ROSENBLUM
Attorney General of Oregon

Cheryl Hiemstra
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.hiemstra@doj.state.or.us

*Counsel for Plaintiff State of Oregon*

MICHELLE HENRY
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

DOMINGO EMANUELLI
HERNANDEZ
Attorney General of Puerto Rico
Guarionex Diaz Martinez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto
Rico*

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney
General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South
Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South
Dakota*

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney
General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov
*Counsel for Plaintiff State of Vermont*

JASON S. MIYARES
Attorney General of Virginia

Tyler T. Henry
Office of the Attorney General of Virginia
202 N. 9th Street

Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

ROBERT FERGUSON
Attorney General of Washington

Amy Hanson
Senior Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

PATRICK MORRISEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of
West Virginia
1900 Kanawha Boulevard
East Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

BRIDGET HILL
Attorney General of Wyoming

Amy Pauli
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-6397
E-Mail: amy.pauli@wyo.gov

*Counsel for Plaintiff State of
Wyoming*

John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*