# EXHIBIT B

LAW OFFICES

## WILLIAMS & CONNOLLY LLP*

COLETTE T. CONNOR
(202) 434-5170
cconnor@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

January 9, 2025

Via Email

Karl E. Herrmann
450 Fifth Street, N.W.
Suite 1700
Washington, DC  20530

Re:    *United States, et al. v. Google LLC*, No. 20-cv-3010-APM (D.D.C.) & *State of Colorado, et al. v. Google LLC*, No. 20-cv-3715-APM (D.D.C.)

Dear Karl:

I write to follow up on the status of the discovery items we discussed during our December 18, 2024 meet and confer.

### Plaintiffs' Second Set of RFPs No. 4

Google maintains its objections to Request No. 4, including on the basis of relevance and privilege. Plaintiffs have not explained the relevance of communications between Google's management and Google's employees relating to employees commenting internally or externally on the present case, and such documents are likely to be attorney-client privileged and/or work product.

During the December 18 conferral, Plaintiffs limited their request to four categories of documents (1) Kent Walker's memorandum, (2) documents sufficient to show Google's tracking of internal commentary on the case, (3) any instructions Google management sent broadly to Google employees regarding comments on the court's opinion, and (4) any instructions Google management sent broadly to Google employees regarding comments on the Proposed Final Judgment. This limitation does not resolve Google's objections. As to relevance, none of the requested documents, to the extent they exist, are relevant to the court's determination of the appropriate remedy in this case. And as to privilege, each of the documents Plaintiffs mentioned are likely to be covered by the attorney-client privilege and/or work product protection. Indeed, the first document that Plaintiffs specifically mentioned was a communication from Google's General Counsel, Kent Walker, regarding ongoing litigation.

# WILLIAMS & CONNOLLY LLP®

January 9, 2025
Page 2

### *Plaintiffs' Second Set of RFPs No. 6*

At the December 18th conferral, Plaintiffs pointed to a document—bates-stamped GOOG-DOJ-12438322—as an example of the type of document Plaintiffs are seeking. This document does not appear to be an org chart or provide the type of information that Plaintiffs seem to be seeking, which, as we discussed, has already been provided in the form of interrogatory responses.

Plaintiffs' interrogatory did not request organizational information with respect to Google Ads. Nonetheless, Google is willing to provide a written response with respect to Google Ads along the lines of the information it provided in response to Plaintiffs' first interrogatory. If there is other specific information Plaintiffs seek, Google is willing to continue to meet and confer about potential supplementation of its interrogatory responses.

### *Plaintiffs' Second Set of RFPs No. 8*

Plaintiffs provided a modified search string for this request on December 18, and Google agreed on December 19 to apply that modified string. Documents responsive to this request have been included in Google's productions and will be included in additional productions delivered this week and next week.

### *Plaintiffs' Second Set of RFPs No. 11*

Google maintains its objections to Request No. 11 for the reasons stated in Google's responses and objections and on the parties' December 18 conferral. Google has produced its general policies, protocols, and procedures regarding employee access to Gemini user and Search user data, and the Sawmill logs database that were referenced in Chris Miles' November 14, 2024 30(b)(6) deposition. *See* GOOG-DOJ-33759540–550. These documents are sufficient to show how access decisions are evaluated and made. There is no basis for further discovery given the lack of relevance of these documents to the Court's determination of the appropriate remedy in this case; the breadth of the Request, which seeks without limitation for both "Google Search and Gemini-based products," documents as to "who makes access decisions, how access decisions are evaluated and made, including additional approval and privacy review requirements" and "any summary of Google's approval and denial decisions;" and the burden upon Google of searching for and collecting any such documents.

### *Plaintiffs' Second Set of RFPs No. 12*

Google maintains its objections to Request No. 12, including on the basis that this Request duplicates the significant discovery on this very issue conducted during the liability phase of the litigation, and further that the matters encompassed in this Request were the subject of extensive deposition and trial testimony from numerous fact and expert witnesses, including Plaintiffs' expert Professor Douglas Oard.

# WILLIAMS & CONNOLLY LLP®

January 9, 2025
Page 3

While Google objects to redoing the same discovery at issue during the liability phase and trial, to the extent Plaintiffs are able to identify discrete categories of documents they seek in response to this Request, Google is willing to take those under consideration. To that end, following the parties' December 18 conferral, Google confirms that it has investigated the current status of the dashboard referenced at Tr. 98:1 of Eric Lehman's April 2022 deposition and confirms that the dashboard is no longer maintained in the ordinary course of business.

### Plaintiffs' Second Set of RFPs No. 14(c)

During the December 18 conferral, Google understands that Plaintiffs have narrowed Request No. 14(c) to request documents sufficient to show the technical interdependence between the Gemini App and Google Search. Google agrees to conduct a reasonable search for documents sufficient to show the technical interdependence between the Gemini App and Google Search.

### Plaintiffs' Second Set of RFPs Nos. 15 and 16

Plaintiffs contend that AI Core is covered by the definition of GMS, as applied to these Requests, because Plaintiffs' definition of GMS included SDKs made available at https://developers.google.com/. However, AI Core is not an SDK made available at https://developers.google.com/; there is a Google AI Edge SDK, but it is distinct from AI Core.

Notwithstanding the distinction between AI Core and the AI Edge SDK, we understand that Plaintiffs seek documents sufficient to show AI Core's technical dependencies on other parts of Google, and we will conduct a reasonable search for such documents, subject to the objections stated in Google's Responses and Objections.

### Plaintiffs' Second Set of RFPs No. 19

During the December 18 conferral, Google explained that Request No. 19, as worded, could be read to require Google to create new documents "sufficient to show" the information requested. Plaintiffs clarified that Request No. 19 seeks only regular-course documents, to the extent they already exist. Plaintiffs also clarified that they do not seek a custodial collection and review for this request, and instead seek "go gets," located after a reasonable search. Given these clarifications, we will conduct a reasonable search for documents responsive to Request No. 19, subject to the objections stated in Google's Responses and Objections. By producing such documents located after a reasonable search, Google does not represent that such documents are "sufficient to show" the information requested by Request No. 19, and reserves the right to present additional evidence on such topics, including through expert testimony.

# WILLIAMS & CONNOLLY LLP®

January 9, 2025
Page 4

### *Plaintiffs' Second Set of RFPs No. 21*

During the December 18 conferral, Plaintiffs accepted the explanation in Google's responses and objections that this request is encompassed by the search methodology used for First RFP No. 25.

### *Plaintiffs' Second Set of RFPs No. 22*

Google maintains its objections to Request No. 22, including on the basis that this Request duplicates the significant discovery on this very issue conducted during the liability phase of the litigation, and that the matters encompassed in this Request were the subject of extensive deposition and trial testimony from numerous fact and expert witnesses, including Plaintiffs' expert Professor Douglas Oard.

While Google understands that Plaintiffs have agreed to narrow the date range for this Request to May 2022 to present, Plaintiffs have not clarified what information they seek that was not already produced during the liability phase or otherwise disclosed during the liability trial. While Google objects to redoing the same discovery at issue during the liability phase and trial, to the extent Plaintiffs are able to identify discrete categories of documents they seek in response to this request, Google is willing to take those under consideration.

### *Plaintiffs' First Set of RFPs Nos. 20, 23, 24, 25, 26, and 27 and Second Set of RFPs Nos. 8, 18, and 20*

On December 24, 2024, Plaintiffs requested that Google apply the search strings associated with the nine requests listed immediately above to the documents of six additional custodians: Jennifer Fitzpatrick, David Kleidermacher, Aurash Mahbod, Omkar Muralidharan, Phiroze Parakh, Zaheed Sabur, and Parisa Tabriz. That request is untimely and improper because, among other things, the additional custodians exceed the limit on the number of custodians permitted for each request. *See* ECF 1047 at 3. Moreover, many of the search strings are not relevant to the work performed by many of these additional custodians, such that there is no basis for applying the previously negotiated search strings to the documents collected from all of the listed custodians. Nevertheless, in the interest of compromise and completing production as quickly as possible, Google confirms that it has applied the search strings associated with all nine requests listed above to the files of the six custodians requested by Plaintiffs on December 24. Google is currently completing its review of those new documents and is producing the responsive non-privileged documents retrieved by those searches in rolling productions this week and next week.

On January 7, 2025, Plaintiffs asked when Google will produce documents that are hyperlinked in documents it has produced. Google is following the same process with respect to hyperlinked documents that the parties agreed to at the outset of discovery in the liability phase, as reflected in the January 15, 2021 letter from Franklin Rubinstein to Michael Goldstein.

# WILLIAMS & CONNOLLY LLP®

January 9, 2025
Page 5

Google will be producing additional non-privileged hyperlinked documents identified pursuant to that process in rolling productions this week and next week.

Sincerely,

*/s/ Colette T. Connor*
Colette T. Connor