IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**STATUS REPORT OF GOOGLE REGARDING NEWS CORP SUBPOENA COMPLIANCE**

On December 13, 2024, Google issued a subpoena to News Corporation ("News Corp"). Pursuant to Section I.F of the Court's September 18, 2024 Order, Google submits the following statement with respect to News Corp's compliance with Google's subpoena. News Corp has informed Google that News Corp's position is that there is no ripe dispute at this time and refers the Court to the email attached as Exhibit A as reflecting its position.

**I.   GOOGLE'S POSITION STATEMENT**

News Corp "is a global diversified media and information services company focused on creating and distributing authoritative and engaging content and other products and services to

consumers and businesses throughout the world."[1] News Corp publishes "some of the world's most recognizable and respected brands," including *The Wall Street Journal*, *Barron's*, and Dow Jones.[2] Plaintiffs have disclosed that they may call a News Corp lawyer, Martin d'Halluin, Deputy General Counsel, at trial. He supposedly will testify about "[w]eb crawling, publisher opt-out rights, and generative AI/LLMs," presumably to the extent these topics relate to certain publisher-focused provisions in Plaintiffs' Proposed Final Judgement, which seeks to limit Google's ability to contract with publishers and restrict how Google can use publisher content. *See, e.g.*, ECF No. 1062-1 §§ IV.C, VI.B.

On December 13, 2024, Google served a document subpoena on News Corp. The subpoena sought, among other things, News Corp's agreements with third party search engines, generative AI tools, and AI search tools, as well as communications around those agreements. In addition, the subpoena sought documents related to News Corp's views on the proposed publisher remedies and News Corp's assessments of the impact of search engines and AI tools on its business. The subpoena also sought documents related to Mr. d'Halluin's potential testimony in particular, including documents of Mr. d'Halluin related to Plaintiffs' proposed testimony topics, as well as Mr. d'Halluin's previous communications with Plaintiffs related to this litigation.

In its responses and objections served on December 31, 2024, News Corp did not commit to producing any documents, instead indicating it would "meet and confer" on all 14 requests. Ex. B. During subsequent discussions among counsel, it became clear that News Corp would only agree to produce a small number of documents identified through "go-get" searches

---

[1] News Corporation, Annual Report (Form 10-K) (Aug. 13, 2024).

[2] *Id.*

responsive to certain requests, *but zero custodial searches*. News Corp has also refused to produce any documents in response to Request 2, which concerns communications about News Corp's agreements with search engines, generative AI tools, or AI search tools, on the ground that such documents are confidential – this despite the existence of a stringent Protective Order and Google agreeing not to share any such documents with any Google personnel.

Google accordingly seeks the Court's assistance in securing News Corp's compliance with custodial searches and one highly relevant request for documents.

### A. THE COURT SHOULD ORDER NEWS CORP TO CONDUCT CUSTODIAL SEARCHES TO COMPLY WITH GOOGLE'S SUBPOENA

Plaintiffs have proposed several remedies related to website publishers in their November 20, 2024 Initial Proposed Final Judgment. *See* ECF 1062-1 at 7, 12. Mr. d'Halluin is one of two potential third-party witnesses identified by Plaintiffs to testify about those publisher remedies. It is thus imperative that Google receive the documents it requested from News Corp to develop its arguments and defenses to Plaintiffs' proposed publisher-related remedies.

In order to avoid unnecessary burden and to target its Requests to the maximum extent possible, Google's Requests to News Corp can largely be satisfied by go-get searches.[3] That said, Google believes that six of the Requests require custodial searches to fully capture the documents needed for Google to prepare for depositions and trial (Request Nos. 2, 3, 5, 6, 11, and 12), including to cross-examine Mr. d'Halluin on the testimony that Plaintiffs will elicit from

---

[3] News Corp has agreed to produce a small number of go-gets in response to Request Nos. 1, 8, 9, and 10, and has suggested that custodial ESI searches are premature until Google receives these go-gets and reviews them to determine whether they are sufficient. With just six weeks remaining for discovery, it is necessary to resolve the question of custodial searches now to allow adequate time for negotiating search terms, production of documents, and Mr. d'Halluin's deposition. News Corp has had ample time to consider its position on custodial searches following Google's service of the subpoena on News Corp more than a month ago, and the planned go-get production of materials is plainly insufficient.

him.

Google has offered to work with News Corp to identify an appropriately targeted set of custodians for Request Nos. 2, 3, 5, 6, 11, and 12.  These Requests are focused on the topics on which Mr. d'Halluin is likely to testify including, among other things, News Corp's recent efforts to secure licensing deals with rivals that develop AI Products, which are relevant to whether Plaintiffs' proposed publisher remedies are either appropriate or necessary (Request Nos. 2, 5, 6, 11), and Mr. d'Halluin's communications regarding topics directly related to the key issues in this case, such as Google Search and Google's AI tools (Request Nos. 3, 12).  In addition, Google has provided proposed search terms and informed News Corp that it is willing to discuss modifications to those search terms to the extent they yield an unreasonably high number of hits.  Appendix 1.  To date, News Corp has not responded to these offers or made any counterproposal.

In addition, as Mr. d'Halluin is a lawyer at News Corp, News Corp has indicated that the vast majority of his documents are likely to be withheld under attorney-client privilege.  So for Google to adequately prepare for the deposition of Mr. d'Halluin, Google is seeking custodial searches for just three custodians: Mr. d'Halluin and the two primary business people who are knowledgeable about the contract negotiations relevant to Mr. d'Halluin's expected testimony.  Appendix 1.

News Corp maintains that it should not have to do any sort of custodial search in response to any of the Requests because such searches are overly burdensome for a third party like News Corp.  The Court has previously said otherwise, noting that "it is fair for [Google] to request custodial documents of someone that [Plaintiffs] are anticipating calling to trial or to the remedies hearing."  November 26 Status Conference Tr. 72:8-12 (Nov. 26, 2024).  And at the

December 13, 2024 Status Conference, the Court ordered OpenAI, also a third party, to identify five custodians "most involved in the negotiation of relevant agreements." December 13 Status Conference Tr. 15:14-19 (Dec. 13, 2024).

News Corp may also object to searching Mr. d'Halluin's files since he is a lawyer. But Mr. d'Halluin's job title does not alter Google's need to obtain relevant nonprivileged information so that it may prepare to depose and cross examine Mr. d'Halluin. The fact is that Mr. d'Halluin is the News Corp witness that *Plaintiffs* selected after they consulted with News Corp and spoke directly to Mr. d'Halluin. Having proffered Mr. d'Halluin as a knowledgeable witness to Plaintiffs, News Corp cannot now avoid basic pretrial discovery by claiming that his files are simply too burdensome to review.

The Court should order News Corp to conduct custodial searches for Request Nos. 2, 3, 5, 6, 11, and 12, applying the search terms that Google has provided to News Corp.

### B. THE COURT SHOULD ORDER NEWS CORP TO COMPLY WITH REQUEST NO. 2

Request No. 2 seeks "[a]ll Communications relating to News Corp's actual or potential Agreements with Search Engines, Generative AI Tools, or AI Search Tools, including without limitation all Communications discussing News Corp's decisions relating to whether to enter into Agreements with or license Content to a Search Engine, Generative AI Tool, or AI Search Tool." Ex. B at 9. This request seeks materials relating to News Corp's ability to enter into agreements with other companies that provide, among other things, search and AI-related services, a topic that bears directly on Plaintiffs' proposed publisher remedies. Public reporting indicates that News Corp has been in negotiations–and entered into partnerships–with search engines and AI

5

platforms to license News Corp content.[4]  Though such activity suggests that Google has not restricted the ability of publishers like News Corp to license their content to multiple parties, it is also plainly relevant to this action given Plaintiffs' proposed publisher remedies.[5]  To that end, Request No. 2 seeks documents between News Corp and other search engines and AI companies demonstrating that publishers like News Corp are able to enter into agreements not just with Google but also Google's competitors.  Such information is directly relevant to whether Plaintiffs' proposed remedies, which seek to "stop and prevent exclusionary agreements with third parties," are necessary in the publisher space.  ECF No. 1062 at 5-6.

To date, News Corp has refused to produce any documents in response to Request No. 2 due to professed confidentiality concerns surrounding ongoing negotiations with various search engines and AI platforms.  Google has sought to alleviate News Corp's concerns by making several concessions, including not to seek the Court's permission to disclose any highly confidential documents to Google employees, including even in-house counsel designated under the Protective Order, and to consider the possibility of targeted redactions for non-responsive material within documents that would pose a significant risk to ongoing negotiations even if

---

[4] *See* Press Release, News Corp, News Corp and OpenAI Sign Landmark Multi-Year Global Partnership (May 22, 2024), https://investors.newscorp.com/news-releases/news-release-details/news-corp-and-openai-sign-landmark-multi-year-global-partnership.

[5] *See, e.g.*, ECF 1062-1 at 7 ("Google must not enter into a contract or other agreement with any Publisher to license data from any Publisher . . . which provides Google exclusivity or otherwise restricts the Publisher's ability to license or otherwise make available the data to any other GSE or AI Product developer.  This includes, for example, any agreement with a "most favored nation" or any similar provision that would require the Publisher to give Google the best terms it makes available to any other buyer or licensee."), 12 ("Google must provide online Publishers . . . an easily useable mechanism to selectively opt-out of having the content of their web pages or domains used in search indexing; used to train or fine-tune AI models, or AI Products; used in retrieval-augmented generation-based tools; or displayed as AI-generated content on its SERP, and such opt-out must be applicable for Google as well as for users of the Search Index.").

6

produced on an outside-counsel-only basis.

With the promised confidentiality protections in place, there is no genuine reason why News Corp cannot conduct custodial searches and produce documents in response to Request No. 2.

Google thus respectfully requests that the Court order News Corp to conduct custodial searches and to comply with Request No. 2 of Google's subpoena.

Dated: January 14, 2025

Respectfully submitted,

ROPES & GRAY LLP

By: */s/ Matthew McGinnis*
Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

WILLIAMS & CONNOLLY LLP
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

*Counsel for Defendant Google LLC*

## Appendix 1: Proposed Custodians and Search Terms

I. **Proposed Custodians**

   A. Martin d'Halluin, Deputy General Counsel (proposed DOJ witness)

   B. Anoushka Healy, Chief Strategy Officer (knowledgeable about contract negotiations)

   C. Amanda Greenfield, Senior Vice President, Global Partnerships and Strategy (knowledgeable about contract negotiations)

II. **Proposed Search Terms**

| Request # | Text of Request | Proposed Search Strings |
|---|---|---|
| 2 | All Communications relating to News Corp's actual or potential Agreements with Search Engines, Generative AI Tools, or AI Search Tools, including without limitation all Communications discussing News Corp's decisions relating to whether to enter into Agreements with or license Content to a Search Engine, Generative AI Tool, or AI Search Tool. | (Agree* OR partner* OR licens*) /10 (Bing OR DuckDuckGo OR Yahoo OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |
| | | (Consider* OR negotiat* OR counter OR confer OR contract* OR deal OR stipulat* OR transact* OR terms OR discuss*) /10 (Bing OR DuckDuckGo OR Yahoo OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |
| | | ("Letter of Intent" OR "LOI") /25 (Bing OR DuckDuckGo OR Yahoo OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |
| | | "Project [Insert relevant project names]" |
| 3 | All Communications involving any News Corp employee or individual identified by Plaintiffs as a potential witness related to web crawling, Opt-Ins or Opt-Outs, Search Engines, Generative AI Tools, or AI Search Tools, including without limitation all such Communications involving Martin d'Halluin. | "d'Halluin" /20 (crawl* OR (opt /5 in) OR (opt /5 out) OR "search engine" OR "generative AI" or (AI /5 search)) |
| | | (crawl* OR (opt /5 in) OR (opt /5 out) OR "search engine" OR "generative AI" or (AI /5 search)) /20 (Bing OR DuckDuckGo OR Yahoo OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |
| | | Search /20 (Bing OR DuckDuckGo OR Yahoo OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |

| | | |
|---|---|---|
| 5 | All Documents relating to News Corp's assessments of whether News Corp has lost revenue or website traffic due to News Corp Content appearing in AI Search Tools or Generative AI Tools. | ((web* /5 traffic) OR (click* /5 traffic) OR click*) /10 (Bing OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |
| | | (subscrib* OR traffic OR visit* OR user*) /10 (Bing OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |
| | | (Revenue OR income OR net OR fund* OR earn* OR interest* OR proceeds) /10 (Bing OR Google OR Meta OR OpenAI OR Perplexity OR Andi) |
| | | ((web* /5 traffic) OR (click* /5 traffic) OR click*) /10 ("generative AI" or (AI /5 search)) |
| | | (subscrib* OR traffic OR visit* OR user) /10 ("generative AI" or (AI /5 search)) |
| | | (Revenue OR income OR net OR fund* OR earn* OR interest* OR proceeds) /10 ("generative AI" or (AI /5 search)) |
| 6 | All Documents and Communications relating to Opt-In or Opt-Out for Search Engines, Generative AI Tools, or AI Search Tools, including without limitation all Communications about how the publisher opt-out provisions proposed by Plaintiff in this case would impact News Corp. | (opt /2 (in OR out)) /10 ("search engine" OR "generative AI" or (AI /5 search) OR publish* OR impact* OR effect OR affect OR assess* OR consequenc* OR burden* OR significan* OR repercussion*) |
| 11 | All Documents and Communications relating to Dmitry Shevelenko (Perplexity), Nicholas Turley (OpenAI), and Andrew Caples (Meta). | Shevelenko /50 (Google OR licens* OR agree* OR deal* OR partner* OR (opt /2 (in OR out)) OR search) |
| | | Turley /50 (Google OR licens* OR agree* OR deal* OR partner* OR (opt /2 (in OR out)) OR search) |
| | | Caples /50 (Google OR licens* OR agree* OR deal* OR partner* OR (opt /2 (in OR out)) OR search) |

10

| 12 | All non-privileged Documents and Communications sent to (including directly, through CC, or through BCC) or sent by Martin d'Halluin relating to Google. | [d'Halluin email address] AND ("Google Search" OR (anticompet* /20 Google) OR (Google /10 Gemini) OR (Google /10 "AI Overview")) |