UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　*Plaintiff*,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　*Defendant*. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>　　　　　　*Plaintiff*,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　*Defendant*. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**NEWS CORP'S RESPONSE TO GOOGLE'S STATUS REPORT
REGARDING NEWS CORP SUBPOENA COMPLIANCE**

News Corp files this response to correct numerous misrepresentations in Google's premature motion to compel filed on January 14, 2025, which Google styles a "status report." ECF No. 1126. News Corp declined Google's invitation for a joint filing because the parties are in the midst of negotiations and there is no ripe dispute for the Court. However, given Google's incorrect and misleading statements and its request for a court order, News Corp responds and corrects the record.

News Corp accepted service of Google's subpoena on December 17, 2024, and timely served its responses and objections on New Year's Eve.[1]  The basis for Google's subpoena is DOJ's naming Martin d'Halluin, Deputy General Counsel at News Corp, as a potential witness during the upcoming remedies proceeding.  DOJ intends to examine Mr. d'Halluin on three confined topics:  (1) web crawling; (2) publisher opt-out rights; and (3) generative AI/LLMs.  As Google acknowledges (at 2), these topics and Mr. d'Halluin's potential testimony presumably relate to the 2 paragraphs in DOJ's 35-page proposed final judgment that mention publishers.  *See* ECF No. 1062-1 §§ IV.C, VI.B.  Despite the narrow scope of Mr. d'Halluin's proposed testimony, Google's subpoena contains 14 broad requests for, among other things, "[a]ll communications" from January 1, 2010 to the present that in any way relate to "News Corp's actual or potential Agreements with Search Engines"; "[a]ll communications" from January 1, 2010 to the present involving Mr. d'Halluin that in any way relate to "Search Engines"; and "[a]ll non-privileged . . . [c]ommunications" from January 1, 2010 to the present sent to or from Mr. d'Halluin that in any way relate to "Google Search, Google's AI Tools, or any alleged anticompetitive conduct by Google," regardless of whether that conduct is at issue in this action.  *See* ECF Nos. 1126-2 at 9, 10; 1126-1, Email from M. McGinnis (Jan. 9, 2025).  The parties have exchanged correspondence regarding the propriety of these and other requests and met and conferred once, on January 8, 2025.

Google first mischaracterizes (at 4) News Corp's position regarding custodial searches.  Google has not established that its request for custodial searches over 15 years' worth of materials from three News Corp employees, including its Deputy General Counsel, is reasonable

---

[1] Google wrongly states (at 2) that its subpoena was served on December 13.  Service was not accepted until December 17.

2

or necessary. News Corp already produced more than 9,000 documents to Google in this case and will make an additional production responsive to Google's current subpoena by January 17. News Corp's initial large production contains documents that are responsive to Google's requests, including numerous studies and regulatory submissions regarding the impact of Google's search conduct on news websites and dozens of emails involving Mr. d'Halluin relating to traffic News Corp receives from Google search, Google's de-indexing of certain News Corp content, and News Corp's Search Engine Optimization.[2] Despite the relevance of those already-produced materials, Google does not dispute that it failed to account for News Corp's existing production before issuing its current subpoena. That was improper under Rule 45. *See Garrity v. Governance Bd. Of Cariños Charter Sch.*, 2021 WL 3033278, at *7 (D.N.M. Jul. 19, 2021) (quashing subpoena requests when issuer did not make "any effort to exclude . . . documents that she already possesses . . . even though Rule 45 expressly requires her to 'take reasonable steps to avoid imposing undue burden or expense'" on recipients (quoting Fed. R. Civ. P. 45(d)(1))). Google has previously acknowledged that the "burden . . . to collect, review, and produce" a custodial file is "obvious." ECF No. 118 at 25. The burden is greater – and more unreasonable – when imposed on a third party, particularly when one of the three custodians is Deputy General Counsel, necessitating careful and burdensome privilege review of every single document. *See Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3-4 (D.D.C. 2017) (narrowing subpoena that sought

---

[2] Google is therefore wrong in claiming that News Corp's initial production of more than 9,000 documents in this case is non-responsive because it contains documents relevant to "the separate ad tech [antitrust] litigation." ECF No. 1126-1, Email from M. McGinnis (Jan. 14, 2025). Moreover, Google's subpoena seeks all communications involving Mr. d'Halluin that relate in any way to "*any* alleged anticompetitive conduct by Google." Google cannot have it both ways – if it is seeking information regarding "*any* alleged anticompetitive conduct by Google" then all of News Corp's substantial initial production is concededly responsive. If Google is not seeking such documents, then it should say so and refine its document requests.

3

"all" of certain categories of documents from "prior counsel" when most of those documents would be privileged). Rather than imposing those burdens on News Corp now, Google should first review and assess the sufficiency of News Corp's production this week alongside News Corp's substantial existing production.

Google next falsely states (at 4) that the search terms in its Appendix 1 were "provided" to News Corp. Google materially changed one of its proposed search terms before submitting them to the Court and without disclosing that change to News Corp. Google's initial proposal on January 3 requested that News Corp search for every document that included both Mr. d'Halluin's email address and the term "Google." Without telling News Corp, Google amended that proposal in its Appendix 1, replacing it with a request to search for any document containing Mr. d'Halluin's email address and, among other things, the term "Google Search" or the term "anticompet*" within 20 words of the term "Google."

Google's shifting requests confirm that (1) Google's demands are overbroad, and (2) there is no ripe dispute for the Court to resolve. Indeed, Google's amended search term seeks documents responsive to Google's RFP 12, which demands *each and every* email to, from, or copying Mr. d'Halluin over his entire tenure at News Corp that relates in any way to "Google Search, Google's AI Tools, or any alleged anticompetitive conduct by Google," regardless of whether that conduct is at issue in this case. *See* ECF Nos. 1126-2 at 17-18; 1126-1, Email from M. McGinnis (Jan. 9, 2025) (amending RFP 12). The parties are still discussing the propriety of that request. News Corp has repeatedly asked Google to explain why it needs every email to, from, or copying Mr. d'Halluin – an attorney who specializes in antitrust and competition matters at News Corp – that mentions Google Search or any antitrust concern involving Google. Google has not done so. Despite ongoing negotiations over that request, Google asks the Court

4

to compel News Corp to search a decade and a half of materials using a search term designed to capture documents News Corp has said it will not produce and which Google has not sought to compel.

Regarding Google's RFP 2, which seeks "[a]ll Communications" from January 1, 2010 to the present that relate in any way to "News Corp's actual or potential Agreements with Search Engines, Generative AI Tools, or AI Search Tools," Google again mischaracterizes News Corp's position. News Corp has asked Google on multiple occasions to explain why such a request is necessary or proper. Google's status report points (at 6 n.4) to a single public press release which states that News Corp and OpenAI have entered an agreement. News Corp has already agreed to produce that agreement to Google. It is not clear then – and Google's status report does not explain – why Google needs every single communication regarding that agreement or any other actual or potential agreement over the last 15 years. Weighed against Google's unsubstantiated desire for such documents, News Corp has grave confidentiality concerns in light of the fact that Google or the Plaintiffs may seek to introduce such communications at the public remedies proceeding. Publicizing those communications would be disruptive to ongoing sensitive commercial relationships. *Cf. Stena Fin. B.V. v. Sea Containers Ltd.*, 131 F.R.D. 361, 362 (D.D.C. 1989) (recognizing that in the merger and acquisitions context, "[a]n order compelling the disclosure with respect to talks with third parties would hamper negotiations").

| | |
|---|---|
| Date: January 15, 2025 | /s/ *John Thorne* |
| | John Thorne (Bar No. 421351) |
| | Daniel G. Bird (Bar No. 974913) |
| | Eric J. Maier (Bar No. 1738772) |
| | KELLOGG, HANSEN, TODD, |
| |   FIGEL & FREDERICK, P.L.L.C. |
| | 1615 M Street NW, Suite 400 |
| | Washington, DC 20036 |
| | Tel: (202) 326-7900 |
| | Fax: (202) 326-7999 |
| | jthorne@kellogghansen.com |
| | dbird@kellogghansen.com |
| | emaier@kellogghansen.com |
| | |
| | *Counsel for Non-Party News Corp* |