## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:20-cv-03010-APM |
| GOOGLE LLC, | HON. AMIT P. MEHTA |
| Defendant, | |
| and | |
| APPLE INC., | |
| [Proposed] Intervenor-Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:20-cv-03715-APM |
| GOOGLE LLC, | HON. AMIT P. MEHTA |
| Defendant, | |
| and | |
| APPLE INC., | |
| [Proposed] Intervenor-Defendant. | |

## REPLY IN SUPPORT OF APPLE INC.'S MOTION FOR LIMITED INTERVENTION

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .............................................................................................. 1

II.  ARGUMENT .................................................................................................... 2

    A.  Plaintiffs' Objections To Apple's Arguments For Intervention As Of Right Misunderstand The Legal Standards And Disregard The Terms Of Their PFJ ........................................................................................ 2

        1.  Plaintiffs' Timeliness Objections Misconstrue The Relevant Legal Test And Have No Factual Basis ...................................... 3

        2.  Plaintiffs' Adequacy Argument Mischaracterizes The Legal Standard And Disregards The Effects Of Their Own PFJ ...................... 7

        3.  Plaintiff States' Protectable Interest Argument Misreads The Liability Ruling And Contravenes Well-Settled Caselaw ............................................................................................ 13

        4.  Plaintiff States' Impairment Argument Makes The Same Errors As Their Protectable Interest Argument ...................................... 17

    B.  Plaintiffs' Arguments Against Permissive Intervention Rest On The Same Errors As Their Opposition To Intervention As Of Right ................. 18

    C.  Plaintiffs' Threat To Pursue Liability Claims Against Apple Is Baseless And Improper ....................................................................................... 19

III.  CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

<b>Page(s)</b>

## CASES

*Alfa Int'l Seafood v. Ross*,
321 F.R.D. 5 (D.D.C. 2017)......................................................................................10, 11, 12

\* *Amador Cnty., Cal. v. U.S. Dep't of Interior*,
772 F.3d 901 (D.C. Cir. 2014) ........................................................................................1, 3, 5

*Atchinson v. District of Columbia*,
73 F.3d 418 (D.C. Cir. 1996) ................................................................................................20

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
595 U.S. 267 (2022)................................................................................................................4

*Campaign Legal Ctr. v. Fed. Election Comm'n*,
68 F.4th 607 (D.C. Cir. 2023) ................................................................................................4

*Child.'s Health Def. v. FCC*,
25 F.4th 1045 (D.C. Cir. 2022)............................................................................................16

\* *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
788 F.3d 312 (D.C. Cir. 2015) ........................................................................................16, 17

*Deutsche Bank National Trust Co. v. FDIC*,
717 F.3d 189 (D.C. Cir. 2015) ..............................................................................................16

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) ............................................................................................4, 7

*Foman v. Davis*,
371 U.S. 178 (1962)..............................................................................................................20

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) ..........................................................................................17, 18

\* *Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ........................................................................................*passim*

\* *Hodgson v. United Mine Workers of Am.*,
473 F.2d 118 (D.C. Cir. 1972)......................................................................................1, 4, 20

*HRH Services LLC v. Travelers Indemnity Co.*,
No. 23-cv-02300, 2024 WL 4699925 (D.D.C. Nov. 6, 2024)...............................................12

\* *Humane Soc'y of the United States v. U.S. Dep't of Agric.*,
No. 19-cv-2458, 2023 WL 3433970 (D.D.C. May 12, 2023)................................................11

*Karsner v. Lothian,*
    532 F.3d 876 (D.C. Cir. 2008) .................................................................................2

*Kleissler v. U.S. Forest Serv.,*
    157 F.3d 964 (3d Cir. 1998) ..................................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ...............................................................................................16

*Love v. Vilsack,*
    304 F.R.D. 85 (D.D.C. 2014) ..................................................................................4

*N.Y. Pub. Interest Rsch. Grp., Inc. v. Regents,*
    516 F.2d 350 (2d Cir. 1975) ....................................................................................7

\* *Nat. Resources Def. Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977) ...............................................................7, 8, 12, 13

*Roane v. Leonhart,*
    741 F.3d 147 (D.C. Cir. 2014) ................................................................................6

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003) ................................................................................4

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) .................................................................................17

*Sierra Club v. Glickman,*
    82 F.3d 106 (5th Cir. 1996) ...................................................................................15

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001) ................................................................................3

\* *Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .................................................................................15

*United Airlines, Inc. v. McDonald,*
    432 U.S. 385 (1977) .................................................................................................4

*United Mexican States v. Lion Mexico Consolidated, L.P.,*
    No. 21-cv-03185, 2024 WL 4753800 (D.D.C. Nov. 8, 2024) ................................10

## STATUTES

15 U.S.C. § 2 ..........................................................................................................................14

# RULES

Fed. R. Civ. P.

24................................................................................................................................16

24(a)(2) ....................................................................................................2, 13

24(b)(1) ...........................................................................................................18

## I.    INTRODUCTION

Apple's intervention is required to protect its interests from Plaintiffs' sweeping proposed final judgment ("PFJ"), submitted to this Court less than two months ago.  That PFJ threatens a 10-year prohibition against a broad set of contractual arrangements between Apple and Google, including agreements related to AI.  Google and Apple have different incentives when it comes to challenging certain provisions of Plaintiffs' PFJ, including those related to revenue share.  And the efficacy of Plaintiffs' PFJ depends significantly on how Apple will act in response to the ultimate injunction.  Plaintiffs do not meaningfully dispute any of this.  Indeed, they largely ignore their PFJ—refusing even to acknowledge that it targets Apple by name.

Plaintiffs instead argue that Apple's motion is untimely because Apple's contractual rights in the Information Services Agreement ("ISA") have been at issue since Plaintiffs filed this lawsuit in 2020.  But timeliness is measured from the date of the "potential inadequacy of representation." *Amador Cnty., Cal. v. U.S. Dep't of Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014) (citation omitted).  That is why the D.C. Circuit has blessed remedial-phase intervention even "seven years" after an action was filed.  *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129, 130 (D.C. Cir. 1972).  Here, the potential inadequacy of representation crystallized when Plaintiffs filed their PFJ.

Plaintiffs also insist that Google can adequately represent Apple's interests because both share the same "ultimate objective" in preserving the ISA.  But as Plaintiffs' and Google's PFJs lay bare, Google and Apple have distinct interests in defending the ISA's terms at the remedies phase.  As Apple explained, Plaintiffs' PFJ threatens to afford Google a leg up over its competitors—access to Apple's users without making revenue share payments that other general search engines currently pay.  Google and Apple thus have disparate priorities.  Google continues to defend the right to be the pre-set default general search engine on Apple's browser.  Apple focuses instead on ensuring that Apple can continue to receive value for providing its users access

to high-quality search providers.  And only Apple can explain that it has no intention of entering the general search market, regardless of the injunction's terms—a critical premise of Plaintiffs' PFJ that Plaintiffs nowhere acknowledge.  Apple therefore readily satisfies the D.C. Circuit's "'minimal'" burden of showing that Google's representation "'may be' inadequate." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citation omitted).

Because Apple's participation would assist this Court in crafting an effective remedy without prejudicing the parties, this Court should grant Apple limited intervention.  Contrary to Plaintiffs' suggestion, Apple has made clear that it will not attempt to revisit this Court's liability decision.  And Apple's limited participation—no more than three witnesses, and involvement in the proceedings only to the extent the remedy affects Apple—will create no meaningful delay. Instead, Apple has committed to following this Court's schedule for the remedial phase.

This Court's remedial order will not just affect Google and Apple—it is likely to create knock-on effects that will reverberate for years, even as new technologies, like AI, reshape the search market.  Apple's limited intervention will ensure that the Court has a complete record in assessing the risks and benefits of an appropriate remedy, without delaying the resolution of this case.  Apple's request for limited intervention should be granted.

## II.    ARGUMENT

### A.    Plaintiffs' Objections To Apple's Arguments For Intervention As Of Right Misunderstand The Legal Standards And Disregard The Terms Of Their PFJ

Apple's present and future contractual rights are threatened by Plaintiffs' PFJ and can no longer be adequately represented by Google.  And Apple timely moved to intervene once that inadequacy became clear.  *See Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (articulating Rule 24's requirements); Fed. R. Civ. P. 24(a)(2).  U.S. Plaintiffs challenge just two of Rule 24(a)'s four requirements, arguing that Apple waited too long to intervene and that Google adequately

represents Apple's interests.[1]  But they do not grapple with (or even acknowledge) the breadth of their PFJ, which they filed in November 2024, and which precipitated Apple's motion.  As for adequacy, Plaintiffs cannot deny that Google lacks the same incentive to defend Apple's right to receive revenue for distributing Google Search and will be forced to prioritize its defenses during the remedial phase.  Plaintiff States' opposition brief—not joined by U.S. Plaintiffs—asserts that Apple has no legally protectable interest in the current ISA or in future contractual arrangements with Google.  But well-settled caselaw, both in this Circuit and beyond, refutes that misplaced contention.  Both U.S. Plaintiffs and Plaintiff States fail to rebut Apple's arguments for intervention as of right under Rule 24.

### 1.    Plaintiffs' Timeliness Objections Misconstrue The Relevant Legal Test And Have No Factual Basis

Plaintiffs' lead argument is that Apple's intervention motion is untimely because Apple's interests in the ISA were implicated when this case was originally filed.  U.S. Pls.' Opp. at 6-7.  They also assert that Apple's remedies phase intervention would unfairly prejudice them and open the floodgates to additional intervention motions.  *Id.* at 7-8.  None of these arguments withstands scrutiny.

First, Plaintiffs identify the wrong starting point for determining whether an intervention motion is timely.  "[C]ourts measure elapsed time from when the 'potential inadequacy of representation [comes] into existence.'"  *Amador Cnty.*, 772 F.3d at 904 (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)) (alteration in original).  The Supreme Court has explained

---

[1] Plaintiffs have filed two separate opposition briefs to Apple's motion to intervene.  The first, filed by the Department of Justice and joined by all state plaintiffs in this case, is referred to herein as the "U.S. Plaintiffs" brief.  *See* Pls.' Mem. in Opp. to Apple's Mot. for Limited Intervention ("U.S. Pls.' Opp."), ECF No. 1123, Jan. 9, 2025.  The second, filed by the State of Colorado on behalf of only a subset of state plaintiffs, is herein referred to as the "Plaintiff States" brief.  *See* Colo. Pl. States' Supp. Mem. in Opp. to Apple's Mot. for Limited Intervention ("State Pls.' Opp."), ECF 1122, Jan. 8, 2025.  These labels match the labels given by this Court in its liability ruling, *see* Mem. Op. at 5-7.

that a putative intervenor's motion is timely when it moves "promptly" after "it bec[omes] clear" that its "interests . . . w[ill] no longer be protected." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977). The cases articulating and applying this principle are legion. *See, e.g.*, *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279-80 (2022) (calling it "the most important circumstance relating to timeliness"); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023) (same); *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (similar). It is why courts, including the D.C. Circuit, have frequently permitted parties to intervene in the remedies phase of long-running lawsuits notwithstanding the fact that they did not move to intervene in an earlier stage. *See, e.g.*, *Hodgson*, 473 F.2d at 129 (granting intervention seven years after litigation began); *see also* Apple Mot. at 6, Dec. 23, 2024, ECF No. 1111 (collecting cases).

Apple made this point and cited many of these decisions in its motion, and Plaintiffs offer no meaningful response. They cite *Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003), for the proposition that timeliness is measured from when the applicant's rights are first implicated. *See* U.S. Pls.' Opp. at 6-7. But that decision *granted* intervention and did not limit the circumstances when a motion to intervene is timely. *Roeder*, 333 F.3d at 233. Plaintiffs also cite *Love v. Vilsack*, 304 F.R.D. 85 (D.D.C. 2014), U.S. Pls.' Opp. at 7, but there was no argument there that representation by an existing party later became inadequate; and the applicant in that case sought to inject new claims for relief 13 years after the lawsuit was filed, *Love*, 304 F.R.D. at 90-91 & n.9.

Plaintiffs' position would mean that some parties *never* have the opportunity to intervene to protect their property interests: If a party moved to intervene when its interests are first implicated but adequately protected, its motion would be denied; if the party subsequently moved once its interests were no longer protected, its motion would be denied on timeliness grounds. Just

consider the problem here: Had Apple moved to intervene when the case was first filed, this Court might have thought that Google had an incentive to defeat *all* the antitrust claims—and thus adequately represented Apple. But under Plaintiffs' rule, the divergence between Google's and Apple's interests now that Plaintiffs filed their PFJ would be insufficient to allow intervention. That is not how Rule 24 works. This refutes Plaintiffs' invocation of Apple's awareness of (and resistance to subpoenas in) the liability proceeding, which disregards the critical changes wrought by Plaintiffs' PFJ in the remedies phase now that Google's liability is established. *See infra* at 7-13.

Second, Plaintiffs raise erroneous and unsubstantiated claims that Apple's limited intervention would cause unfair prejudice. They start by challenging Apple's representation that it does not seek to undo this Court's liability findings, pointing to one sentence in which Apple stated that Plaintiffs' PFJ would change the "status quo" in Apple's relationship with Google. U.S. Pls.' Opp. at 7 (quoting Apple Mot. at 9). But Apple made clear in its motion and reiterates here that "it does not seek to reopen issues related to liability." Apple Mot. at 17. Apple recognizes that this Court found Google liable for violating Section 2 due in part to its exclusive distribution agreements, including the ISA. Mem. Op. at 204, Aug. 5, 2024, ECF No. 1033. The question now is how broad or narrow the remedy should be in light of the Court's findings. That remedial issue is the *only* one on which Apple seeks to participate, and only then to the extent it affects Apple's interests.

Nor do Plaintiffs identify any other prejudice on account of Apple's intervention. Apple agrees with Plaintiffs that the "remedies phase must proceed expeditiously," U.S. Pls.' Opp. at 7— that is why Apple has made clear it will proceed on the same timeline as Google to avoid delaying resolution of this litigation. Apple Mot. at 17; *cf. Amador Cnty.*, 772 F.3d at 905-06 (unfair prejudice ordinarily means "delay[ed] resolution of the merits"). And Plaintiffs provide no support

for their claim that Apple's very limited participation would make it difficult for Plaintiffs' counsel to "meet a 'shortened time period' before trial," U.S. Pls.' Opp. at 8 (citation omitted), particularly when Plaintiffs have well over 50 attorneys appearing on their opposition briefs. Apple intends to call no more than three witnesses and participate in other aspects of the proceedings only to the extent they affect Apple's specific interests in the proper remedy.

Plaintiffs' prejudice objection rings especially hollow given their implicit recognition that Apple's participation is essential for this Court to craft an effective remedy. As Apple explained in its motion, "[t]he competitive effects of Plaintiffs' remedial proposal depend in significant part on what Apple will do in response to this Court's order." Apple Mot. at 20. Plaintiffs do not dispute, and thus concede, the point. Given the absence of unfair prejudice and the importance of Apple's participation, its motion for intervention would be timely even if Apple "could have intervened sooner." *Roane v. Leonhart*, 741 F.3d 147, 210 (D.C. Cir. 2014) (holding intervention motion timely given absence of unfair "prejudice[]" to "existing parties").

Plaintiffs ultimately fall back on a misguided floodgates concern: that allowing Apple's participation will "[o]pen intervention to a multiplicity of similarly situated intervenors." U.S. Pls.' Opp. at 8. But Apple is not in the same position as any other of "Google's contract partners." *Id.* Plaintiffs' PFJ specifically targets by name only one entity other than Google: Apple. Pls.' PFJ at 7, Nov. 20, 2024, ECF No. 1062-1. The PFJ would impose on Apple a remedial term of extraordinary breadth. *Id.* And Plaintiffs do not dispute that the PFJ is premised in significant part on assumptions about "Apple's intentions in the search market." Apple Mot. at 12. Because Apple is uniquely situated, allowing Apple to intervene would not open the door to others. Indeed, if such a concern were well founded, one would expect other parties to have promptly filed their own intervention motions after Apple filed in December. No such motions have been filed,

suggesting that while other entities may have interests at stake, none are on par with the interests justifying Apple's intervention in the remedial phase of this case.

### 2.     Plaintiffs' Adequacy Argument Mischaracterizes The Legal Standard And Disregards The Effects Of Their Own PFJ

Plaintiffs next ask the Court to deny Apple's motion because Google "adequately represents Apple's interest in this matter."  U.S. Pls.' Opp. at 8.  Citing district court and out-of-circuit cases, they argue that there is a "presumption of adequacy" based on Apple and Google's "shared objective" of defending the ISA.  *Id.* at 8-9.  And, the argument goes, Apple does not rebut this presumption because it does not prove its interests are "'fundamentally distinct'" from Google's.  *Id.* at 13 (citation omitted).  This argument misunderstands both the D.C. Circuit's standard for adequacy and the divergence in Apple's and Google's interests in light of Plaintiffs' PFJ.

At the outset, Plaintiffs incorrectly ratchet up the standard for adequacy of representation in this Circuit.  Apple "need only show that representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate."  *Dimond*, 792 F.2d at 192 (citation omitted); *compare* U.S. Pls.' Opp. at 8 ("Intervention by right requires that Apple's interest is not adequately represented by existing parties.").  The requirement is "'not onerous'"; to reject intervention on this ground, it generally must be "clear that the party will provide adequate representation for the absentee."  *Fund for Animals*, 322 F.3d at 735 (citation omitted).

Applying this rule, the D.C. Circuit has refused to require any kind of fundamental divergence of interests—even where the applicant shares the same overarching objective as the party.  In *Natural Resources Defense Council v. Costle*, for example, the court agreed with the Second Circuit that intervention was proper even when the government "clearly shared the [applicant's] interest" in the outcome—there, upholding a federal rule.  561 F.2d 904, 912 (D.C. Cir. 1977) (citing *N.Y. Pub. Interest Rsch. Grp., Inc. v. Regents*, 516 F.2d 350, 352 (2d Cir. 1975)).

The court recognized that the government was not an adequate representative because (1) the applicant would "make a more vigorous presentation of the economic side of the argument"; (2) the applicant's interest "is more narrow and focused"; and (3) the applicant's participation "may also be likely to serve as a vigorous and helpful supplement to [the government's] defense." *Id.* at 912-13 (citation omitted). Rather than respond to this on-point holding, Plaintiffs cite a different part of *Castle* that held that the applicant *also* was not adequately represented by existing industry intervenors based on their "special and distinct interests." U.S. Pls.' Opp. at 14 (quoting *Castle*, 561 F.2d at 913). Nor do Plaintiffs respond to *Fund for Animals*, which approved intervention notwithstanding the applicant and party's shared desire to argue that the "current [federal] rules and practice are lawful" because the party would not give the applicant's interests the same "kind of primacy." 322 F.3d at 736; *see id.* ("[E]ven 'a shared general agreement . . . does not necessarily ensure agreement in all particular respects.'" (citation omitted)).

But even assuming Plaintiffs correctly state the law, their adequacy argument still fails on the facts. Plaintiffs nowhere grapple with the concrete ways in which their PFJ has caused Google's and Apple's interests to diverge. Whether such a divergence precludes any presumption of adequacy or rebuts it, the result is the same: Google cannot adequately represent Apple's interests in the remedies phase of this litigation.

A Threatened Advantage for Google. As Apple has explained, Plaintiffs' PFJ threatens to afford Google a significant advantage relative to every other search engine on Apple devices. By expressly prohibiting Apple from receiving the same payments from Google for distributing search that Apple receives from other general search engines, the PFJ gives Apple a Hobson's choice: Apple could limit access to Google Search, but that would harm consumer choice given that consumers widely prefer to use Google, Mem. Op. at 46; or Apple could continue providing access to Google Search at no cost, but that would afford Google a financial advantage relative to its

competitors. Cue Decl. ¶ 6. Plaintiffs do not dispute that these are Apple's only two options. Plaintiffs' opposition does not dispute that these options would be harmful to consumers. And Plaintiffs do not explain how Google could adequately defend Apple's right to receive payment for distributing search when the alternative may well be that Google gains a leg up over other search engines. It is no response to incorrectly label the parties' basic economic incentives from Plaintiffs' own PFJ "conjecture," *contra* U.S. Pls.' Opp. at 13.

Plaintiffs claim that Google generally has defended its right to pay Apple revenue share payments and continues to do so. *Id.* at 13-14. But Google's PFJ only underscores the newfound inadequacy of Google's representation. While this Court found that "Google's browser agreements are exclusive insofar as they establish Google as the out-of-the-box default search engine," Mem. Op. at 204, Google continues to defend the right to be the pre-set default browser with certain exceptions. Def. Google LLC's Proposed Final Judgment at 4-5, Dec. 20, 2024, ECF No. 1108-1. As Plaintiffs recognize, "Google has an enormous financial interest in defending . . . [its] default [status] on Apple devices," which is "worth over $28 billion in net revenue." U.S. Pls.' Opp. at 10 (emphasis omitted). Google's PFJ also appears to contemplate the continuation of revenue share only to the extent "Google Search remains set as the Default Search Engine." Google's PFJ at 5. Apple's priority is to provide its users with the best tools available and to receive fair and adequate compensation for distributing search services. Those are Apple's priorities irrespective of whether Google remains the pre-set default. That Google's and Apple's incentives diverge on this score is reflected in the parties' negotiating history. As this Court stated, Apple sought flexibility in 2009 and 2012 not to make Google the pre-set default general search engine, but Google insisted on maintaining its pre-set default status in order for Apple to receive revenue share payments. Mem. Op. at 108-10.

Google's and Apple's distinct incentives also refute Plaintiffs' invocation of Apple's "counterpart[y]" status as a reason to deny intervention. U.S. Pls.' Opp. at 14. Parties on opposite sides of a contract frequently have different incentives to defend different aspects of that contract— particularly if knocking down part of the contract (but not another) could mean one side getting something at no cost. Here, Google's goal may be to preserve both default status and revenue share, but its economic incentives may favor losing both rather than keeping only revenue share. This difference in incentives, and its accompanying effects on Google's prioritization of issues and arguments at the remedies trial and in post-trial briefing, make the ISA's joint defense provision insufficient to protect Apple's interests. It also establishes what was missing in *United Mexican States v. Lion Mexico Consolidated, L.P.*, where the court denied intervention because "the existing litigant was 'equally incentivized' to raise the intervenor's proposed argument," U.S. Pls. Opp. at 12 (quoting *United Mexican States*, No. 21-cv-03185, 2024 WL 4753800, at *13 (D.D.C. Nov. 8, 2024)). Plaintiffs' argument ignores the D.C. Circuit's holding that "interests need not be wholly 'adverse'" to find inadequate representation; "'[t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf.'" *Fund for Animals*, 322 F.3d at 737 (citations omitted).

For these reasons, among others, this Court's decision in *Alfa International Seafood v. Ross*, 321 F.R.D. 5 (D.D.C. 2017), does not apply, *contra* U.S. Pls.' Br. at 12. There, the applicant invoked a "general" difference in emphasis between the applicant and the government—the fact that the applicant had a "'narrow[er] focus on marine conservation.'" *Id.* at 8-9 (citation omitted). The difference here is anything but general: Google and Apple have altogether different incentives in challenging a critical term of Plaintiffs' PFJ. In *Alfa International*, this Court also rejected the applicant's other justifications as unduly "speculative" and presenting "questions [] not at issue in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON D.C.

th[e] case." *Id.* at 9.  Here, by contrast, Google's and Apple's different incentives as to defending revenue share follow from the recently filed PFJs—and they are *directly* at issue.  This is, if anything, a more substantial divergence in interests than the one supporting intervention in *Humane Society of the United States v. U.S. Department of Agriculture*, No. 19-cv-2458, 2023 WL 3433970, at *9 (D.D.C. May 12, 2023), where—although the applicant and existing party "propose[d] exactly the same remedy"—the court was especially concerned that differences in perspective between the government and the trade group could lead to different strategic litigation choices sometime in the future.

        Apple's Intentions as to General Search.  Plaintiffs also do not dispute that the success of their PFJ turns in significant part on how Apple would respond to the PFJ's terms.  Plaintiffs' PFJ prohibits Google from offering "anything of value to Apple—or offer[ing] any commercial terms—that in any way creates an economic disincentive for Apple to compete in or enter the [General Search Engine] or Search Text Ad markets."  Pls.' PFJ at 7.  The assumption underlying this exceptionally broad prohibition is that Apple *would* enter the general search or search text ad markets if it could not receive value from Google for distributing Google Search to Apple's users.  But as Apple intends to explain as an intervenor, Apple has no plan to enter the general search or search text ad markets, and Plaintiffs' PFJ will not change that.  So the only effect of this exceptionally broad term of Plaintiffs' PFJ would be to harm the very consumers it claims to protect by either precluding access to Google Search or affording Google a windfall.  *See supra* at 8-9.

        Despite naming Apple in their PFJ—thereby acknowledging the central importance that Apple plays in the ultimate effectiveness of their remedy—Plaintiffs did not include a single Apple witness on their initial witness list.  Plaintiffs insist that "Google is well equipped to call multiple witnesses from Apple" and that this Court can ask questions of Apple witnesses.  U.S. Pls.' Opp.

at 11.  But Google included only *one* Apple witness on its initial list—and it has no obligation to keep that witness when it reduces its list from 25 to 12 witnesses.  And that one witness, examined by Google with its divergent interests, is not enough to ensure this Court has the record required to evaluate Plaintiffs' PFJ.  Apple's participation would therefore be a "helpful supplement" to the arguments and evidence presented by the parties, and "can reasonably be expected to contribute to the informed resolution[] of these questions when, and if, they arise."  *Costle*, 561 F.2d at 912-13. None of those circumstances supporting intervention existed in Plaintiffs' cases, such as *Alfa International* or *HRH Services LLC v. Travelers Indemnity Co.*, No. 23-cv-02300, 2024 WL 4699925, at *10 (D.D.C. Nov. 6, 2024).

        Apple's Interest in Future Contractual Arrangements.  Plaintiffs object to Apple's invocation of its right to engage in future contractual arrangements with Google with the conclusory suggestion that such rights are "not captured within Rule 24(a)'s ambit" because they are "generalized, hypothetical, [and] contingent."  U.S. Pls.' Opp. at 13.  But U.S. Plaintiffs (unlike Plaintiff States) do not appear to challenge whether Apple has a protectable property interest in future contracts with Google, and they do not address Apple's cases establishing that future contractual interests *are* cognizable under Rule 24.  *See infra* at 15-16 (addressing Plaintiff States' argument).  Nor are these contractual interests speculative.  If the ISA in its current form is invalidated, Apple will seek to renegotiate it consistent with the ISA's provisions and this Court's remedial order.  Ultimately, it is Plaintiffs that chose to propose an exceedingly broad prohibition on future contracts between Google and Apple for a 10-year period.  They can hardly claim that this provision does not implicate Apple's interests when they crafted a remedy targeting Apple by name that prevents Apple from entering *any* contract with Google related to search for a decade. After all, if the prospect of future contracts of this kind were wholly speculative, as Plaintiffs now appear to suggest, then there could be no possible basis for this term.

<u>Google's Need to Prioritize Greater Threats</u>.  Plaintiffs also unsuccessfully assert that Google can fully address Apple's concerns notwithstanding the broad threats to its business posed by Plaintiffs' PFJ.  U.S. Pls.' Opp. at 11.[2]  The problem is not, as Plaintiffs frame it, whether Google has sufficient financial resources or a big enough legal team.  *See id.*  It is that Google will be required to make strategic decisions about what arguments and issues to prioritize—including when navigating limitations on discovery, witnesses, depositions, and trial time.  Like any defendant facing jeopardy, it cannot vigorously and fully raise all potential arguments; it will need to pick and choose.  Apple's point is that Google cannot be expected to spend the same energy defending a portion of the ISA that specifically favors Apple as it does trying to prevent the break up of its company.  That makes this a straightforward case for intervention under D.C. Circuit precedent supporting intervention when a party would not give the applicant's interests the same "kind of primacy," *Fund for Animals*, 322 F.3d at 736, and the applicant's defense would be more "vigorous," *Costle*, 561 F.2d at 912.

### 3. Plaintiff States' Protectable Interest Argument Misreads The Liability Ruling And Contravenes Well-Settled Caselaw

Plaintiff States, but not U.S. Plaintiffs, argue that Apple fails to assert "an interest relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2), because this Court held in its liability decision that Google had violated Section 2 of the Sherman Act, Mem. Op. at 276.  They argue that this "Court has already declared the Google-Apple ISA illegal." State Pls.' Opp. at 2.  Apple therefore lacks a cognizable interest under Rule 24, the argument continues, because "there is no protected interest in benefitting from illegal conduct."  *Id.*  This

---

[2] Apple's motion does not require this Court to address whether Plaintiffs' PFJ exceeds the liability findings or is otherwise an appropriate or lawful remedy.  Apple's point is that Plaintiffs' PFJ—by calling out Apple by name, driving a divergence between Apple's and Google's incentives, and restricting Apple's future contractual arrangements—requires Apple to move to protect its interests.  And for those same reasons, Apple easily meets this Circuit's lenient burden of showing that Google's representation may be inadequate.

argument misunderstands this Court's liability holding, ignores the claims Plaintiffs chose to pursue in this case, and fails to respond to the ample caselaw, cited in Apple's opening brief, holding that contracts give rise to a protectable property interest for purposes of remedial-phase intervention under Rule 24.

Plaintiff States' argument proceeds on the premise that this Court held the ISA illegal in full in its liability opinion. *See* State Pls.' Opp. at 3-4. That is incorrect. The ISA, as it currently stands, is a valid and enforceable contract in which Apple has a substantial monetary interest. The point of the remedial phase of this case is, in part, to determine whether and to what extent the ISA can remain enforceable following this Court's liability decision, which took particular issue with the exclusive distribution provision in the ISA. *See* Mem. Op. at 204, 276. As this Court's Order to Bifurcate Proceedings made clear, the "liability phase . . . address[ed] only the Defendants' liability under the Sherman Act," and "expert discovery and testimony" need not address "specific options regarding particular remedies beyond that necessary to demonstrate liability." ECF No. 264 at 2. Plaintiff States' argument that the ISA is "illegal" and cannot remain in effect in any form thus puts the cart before the horse.

Plaintiff States' argument also misunderstands the nature of their own claims. Plaintiffs did not claim—and this Court did not decide—that the ISA as a whole is illegal under the Sherman Act. Plaintiffs sued Google only under Section 2 of the Sherman Act, which prohibits conduct relating to monopolization. Mem. Op. at 5; *see also* 15 U.S.C. § 2 (making it illegal to "monopolize, or attempt to monopolize"). And this Court's liability decision recognized only that Google violated Section 2. *See* Mem. Op. at 276. It said nothing about whether the ISA as a whole violates the antitrust laws or is otherwise illegal. The Plaintiff States' citations to cases stating that parties lack a cognizable interest in pursuing or continuing illegal conduct are therefore beside the point. *See* State Pls.' Opp. at 3-4. As at it currently stands, the ISA remains a valid and enforceable

contract in which Apple has a monetary interest. It is well established that such an interest is protectable under Rule 24. *See, e.g.*, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (finding that "[c]ontract rights are traditionally protectable interests" under Rule 24; *see also* Apple Mot. at 7 (citing additional cases). Plaintiffs cannot contend otherwise.

As for Apple's "interest in negotiating future contractual arrangements with Google" to best serve its users, State Pls.' Opp. at 4 (citation omitted), Plaintiff States do not dispute that the right to enter into future contractual arrangements can be protectable under Rule 24. *See* Apple Mot. at 8-9; *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998) (recognizing a Rule 24 interest in the right to "contract in the future"); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (reasoning that putative intervenor's members had "existing . . . contracts" and were "entitled to enter into . . . contracts in the future"). They instead complain that Apple's assertion of that right is "sweeping," State Pls.' Opp. at 4, and that Apple's future contractual interests are "contingent, indirect, and generalized," *id.* at 5.

But the record in this case already makes clear the kinds of contractual arrangements Apple would seek to pursue with Google relating to search. Apple has revenue sharing agreements with every general search engine that is available to users on Safari. *See* Trial Tr. Day 10 (Cue) 2578-79; Apple Mot. at 11. Those other general search engines are, of course, not pre-set as the default on Apple's search access points (like Safari) given the existing ISA with Google. Yet Plaintiffs' PFJ threatens to bar Apple from entering into that very same arrangement with Google.

Moreover, as discussed above, Plaintiffs can hardly question Apple's interest in protecting future contractual interests with Google when *Plaintiffs' own PFJ* proposed a remedy that would prohibit all manner of commercial arrangements well beyond the contours of the existing ISA. *See supra* at 12. The PFJ—which Plaintiff States do not cite in their opposition brief—prohibits Google from providing "anything of value to Apple" or "offer[ing] any commercial terms" that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON D.C.

"in any way creates an economic disincentive to compete in or enter the [General Search Engine] or Search Text Ad markets." Pls.' PFJ at 7. And Plaintiffs propose that sweeping provision hang over Apple and Google for the next decade, a time period in which technologies relating to search may substantially evolve. Plaintiffs, in short, criticize Apple for identifying a "generalized desire to contract" with Google, State Pls.' Opp. at 4, while proffering a broad prohibition that can only be grounded in Plaintiffs' view that such future contracts would indeed take place.

Finally, Plaintiff States do not dispute that the "[p]otential impairment of contractual or property rights" can create an "injury in fact" that confers constitutional standing. *Child.'s Health Def. v. FCC*, 25 F.4th 1045, 1049 (D.C. Cir. 2022); *see* State Pls.' Opp. at 6 n.1 (declining to "present argument as to whether Apple would have constitutional standing to sue"). Instead, Plaintiff States cite *Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189 (D.C. Cir. 2015), and argue that Apple is wrong to equate "Rule 24(a)'s legally protected interest requirement" with "constitutional standing." State Pls.' Opp. at 5.

Plaintiff States misread *Deutsche Bank*. In that case, the D.C. Circuit stated it might be "hesitant" to conclude that a putative intervenor with an "economic interest in receivership funds" had an "interest" under Rule 24, "even if sufficient to support Article III standing." *Deutsche Bank*, 717 F.3d at 194-95. But it declined to so hold and instead decided only that the putative intervenor there lacked prudential standing, which is distinct from constitutional standing. *Id.* at 195. Plaintiff States make no argument as to prudential standing, and indeed the D.C. Circuit has since recognized that prudential standing—unlike constitutional standing—is no longer a "jurisdictional requirement." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 319 (D.C. Cir. 2015) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)); *see also id.* at 320 (disclaiming the need "for another layer of judge-made prudential considerations to deny intervention"). More importantly, since *Deutsche*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON D.C.

*Bank*, the D.C. Circuit has reaffirmed that when a party has "constitutional standing, it *a fortiori* has 'an interest relating to the property or transaction which is the subject of the action.'" *Crossroads*, 788 F.3d at 320 (quoting *Fund for Animals*, 322 F.3d at 735). Plaintiff States briefly discuss *Crossroads*, State Pls.' Opp. at 6, but strangely do not acknowledge this on-point holding.

Because Plaintiff States do not deny that Apple has Article III standing based on its future contractual interests, that alone is sufficient reason to find that Apple asserts a legally protectable interest under Rule 24. *See Crossroads*, 788 F.3d at 318 ("For standing purposes, it is enough that a plaintiff seeks relief, which, if granted, would injure the prospective intervenor.").

### 4.    Plaintiff States' Impairment Argument Makes The Same Errors As Their Protectable Interest Argument

In arguing that this action will not impair Apple's contractual rights, Plaintiff States simply rehash their mistaken view that this Court has already declared the ISA in full to be illegal. For instance, they argue that this "Court has *already* found the provisions of the ISA that Apple bases its entitlement in to be unlawful." State Pls.' Opp. at 7; *see also id.* at 8 (attempting to distinguish cases cited by Apple on the ground that it is too late to "defend the legality" of the ISA (emphasis omitted)). That is incorrect for the reasons provided above: Plaintiffs did not bring a claim alleging that the ISA in full is unlawful, and this Court's liability ruling does not establish that point, which remains to be resolved in the remedies phase. *See supra* at 14-15. And besides their errant claim that this Court already adjudicated the legality of the ISA, Plaintiff States offer no basis to distinguish the Ninth Circuit and Fifth Circuit cases recognizing that putative intervenors with contractual interests have a right to intervene. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1495 (9th Cir. 1995) (granting intervention where a putative intervenor had contractual rights at stake and noting that "third parties have been granted leave to intervene only in the remedial phase of a case"); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (granting intervention where a putative intervenor had "legally protectable property interests in existing . . .

contracts"). Indeed, the court in *Forest Conservation Council* underscored that an injunction "will not automatically issue" upon a liability finding. 66 F.3d at 1496. It therefore recognized the putative intervenor was entitled "to present evidence to assist the court in fashioning the appropriate scope of whatever injunctive relief is granted." *Id.*

Plaintiff States' contention that Apple seeks to defend illegal provisions of the ISA is misplaced for a second reason. Although Apple seeks to defend the existing ISA, it has a particularly strong interest in defending the "provision[]" of the ISA that provides Apple revenue share for distributing Google Search to its users. *See* Apple Mot. at 11-12 (defending Apple's ability to collect revenue in exchange for search distribution). By contrast, this Court's liability decision primarily focuses on the "exclusive" nature of Google's "distribution agreements." Mem. Op. at 276; *see also id.* at 204 ("Google's browser agreements are exclusive insofar as they establish Google as the out-of-the-box default search engine."); *id.* at 249 (rejecting procompetitive benefits argument because Google did not show that "exclusivity—as opposed to a host of other market forces—is a substantial cause" of those benefits). And Apple's contractual interest in revenue share—which it receives from every other general search engine available on its devices—exists irrespective of the default provision in the ISA.

## B.    Plaintiffs' Arguments Against Permissive Intervention Rest On The Same Errors As Their Opposition To Intervention As Of Right

Apple also satisfies the requirements for permissive intervention. Plaintiffs do not dispute that Apple "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1); *see* U.S. Pls.' Opp. at 14-15. Instead, Plaintiffs assert that "[f]or the same reasons described with respect to intervention as of right," Apple's intervention is both "untimely and threatens significant prejudice to Plaintiffs." U.S. Pls.' Opp. at 15. That is wrong for the reasons described above. *See supra* at 4-7. Apple moved to intervene promptly upon Plaintiffs' filing of the PFJ, which threatens a sweeping remedy and makes clear that Google can

no longer adequately represent Apple's interests.  And, as Apple has repeatedly explained, it seeks intervention on a limited basis to present just two or three witnesses, addressing only issues that directly affect Apple, and on the same timeline as this Court has already ordered for the remedial phase of the case.  Plaintiffs face no prejudice, and Apple satisfies the conditions for permissive intervention.

**C.    Plaintiffs' Threat To Pursue Liability Claims Against Apple Is Baseless And Improper**

Plaintiffs end their opposition brief with a threat: If Apple intervenes to protect its contractual interests jeopardized by Plaintiffs' broad PFJ, Plaintiffs may "seek to amend their complaints pursuant to Rule of Civil Procedure 15 to include Apple as a named defendant for liability purposes," and "may evaluate potential liability findings against Apple based on the existing liability record."  U.S. Pls.' Opp. at 16.

This threat is inappropriate, misguided, and baseless.  In the four years this case has been litigated, Plaintiffs have never claimed that Apple violated the antitrust laws simply by being a counterparty to the ISA, nor that other counterparties to Google's distribution agreements are similarly liable.  Apple's intervention does nothing to change any of the underlying facts—not the facts that led Plaintiffs to sue only Google for monopolization and not the facts that gave rise to this Court's liability decision against Google.  Moreover, Plaintiffs make no attempt to reconcile their suggestion that they might amend their pleadings after this Court's liability ruling with their unfounded protests that this litigation might be delayed due to Apple's very limited intervention in the remedies phase.

Ultimately, Plaintiffs' statement can be seen only as an improper threat to retaliate against Apple for moving under the Federal Rules of Civil Procedure, on a limited basis, to both protect its commercial interests and aid this court in issuing a remedy in this case.  Rule 15 and due process principles alike foreclose motions to amend based on such "dilatory motive" and "undue delay."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON D.C.

19

*Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see id.* at 427 (affirming denial of leave to amend where motion was made "two years after filing [the] complaint" and "on the eve of trial, when discovery was complete").

\*    \*    \*

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson*, 473 F.2d at 130. This case proves that rule. Apple's interests are squarely implicated, and its participation will ensure this Court has the record and arguments required to craft a fair, appropriate, and lawful remedy in this case.

## III.    CONCLUSION

The Court should grant Apple's motion for limited intervention.

Dated:   January 15, 2025

LATHAM & WATKINS LLP

By *s/ Alfred C. Pfeiffer, Jr.*

Alfred C. Pfeiffer, Jr. (*pro hac vice*)
Sarah M. Ray (*pro hac vice*)
Aaron T. Chiu (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
Email: al.pfeiffer@lw.com
       sarah.ray@lw.com
       aaron.chiu@lw.com

Gregory G. Garre (D.C. Bar No. 440779)
Peter E. Davis (D.C. Bar No. 1686093)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: gregory.garre@lw.com
       peter.davis@lw.com

*Counsel for [Proposed] Intervenor-Defendant Apple Inc.*