IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>       Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>       Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**JOINT STATUS REPORT OF GOOGLE AND PERPLEXITY**

Pursuant to Section I.J of the Court's September 18, 2024 Order, and the Court's December 20, 2024 minute order, Google and Perplexity (collectively, the "Companies") submit the following statements with respect to Perplexity's compliance with Google's subpoenas.

**I. GOOGLE'S POSITION STATEMENT**

Google has issued two subpoenas to Perplexity—one on October 23, 2024, and one on December 20, 2024. The October subpoena has been the subject of numerous JSRs and hearings before this Court. Most recently, on December 18, 2024, the Court ordered Perplexity to identify three custodians whose files would be searched for material responsive to the first Request in the

October subpoena.  Hr'g Tr. (Dec. 18, 2024), at 18:13–19:7.  Because that request sought information relating to the negotiation of agreements, Perplexity was to identify the custodians who were the primary actors in negotiating distribution agreements.  *See id.* at 14:12–16.  Perplexity identified three custodians:  Mr. Shevelenko, Mr. Foutty, and Ms. Jorgens.

Thereafter, when Google issued its second subpoena to Perplexity, it tailored its requests, aiming to seek responsive material with minimal burden.  Specifically, where Google requested custodial ESI, it identified the relevant custodians likely to have responsive information.  Accordingly, for Request 2 in that subpoena, Google sought responsive documents from Mr. Shevelenko, Mr. Foutty, and Ms. Jorgens.  Ex. A, at 5.  For Request 3 in that subpoena, Google sought documents from those three individuals as well as Aravind Srinivas, Denis Yarats, and Johnny Ho—three of Perplexity's co-founders.[1]  Ex. A, at 6.

Despite conferring with Perplexity and proposing to it a potential compromise, Google now seeks the Court's assistance on two points:  custodians and search strings.

1. **Custodians**

At a conferral, Perplexity informed Google that it would not collect documents from Messrs. Srinivas, Yarats, and Ho.  Perplexity did not dispute the relevance of those three co-founders' documents—it instead raised burden concerns.

In an effort to avoid this Court's intervention, Google offered Perplexity a compromise to address any (unsubstantiated) burden concerns.  Google proposed that Perplexity collect documents from Messrs. Srinivas, Shevelenko, and Ho for ***all*** custodial requests, thus sparing the need to produce ***any*** documents from Mr. Yarats, Mr. Foutty, or Ms. Jorgens.  This compromise

---

[1] *See* Amber Jackson, *Perplexity AI: A Startup Backed by Billion-Dollar Investors*, TECHNOLOGY MAGAZINE (June 9, 2024), *available at* https://technologymagazine.com/ai-and-machine-learning/perplexity-ai-a-startup-backed-by-billion-dollar-investors.

was aimed at ensuring that Perplexity would only have to conduct searches of three custodians, while making sure that those three individuals had sufficient involvement in key areas of Perplexity's business and technological decisions.

Perplexity rejected that compromise. Perplexity has not argued that Mr. Srinivas's documents are irrelevant. Nor has it argued that searching his documents would be more burdensome than searching Mr. Yarats's. The sole basis upon which Perplexity objected was that Mr. Srinivas is Perplexity's CEO.

Mr. Srinivas is unquestionably relevant to this litigation. He met with Plaintiffs shortly after the Court's liability opinion issued. And, apparently, he has long seen it as his mission to disrupt Google's core business model. For example, in an interview earlier this year, Mr. Srinivas said that he "want[s] to be remembered as the leader who nudged the giants—be it Google, OpenAI, or any other entity—towards a paradigm shift in how we access information online, moving from mere links to direct answers."[2] His work at Perplexity suggests that he is striving toward that goal. Just three days ago, Mr. Srinivas posted on X (formerly Twitter) that Perplexity will "test[] a new landing page" because—in the contest of "Google vs Perplexity"—the time had come for Perplexity "to go all-in on being the go-to destination for all information."[3] And beyond search alone, Mr. Srinivas has apparently urged his company to compete with Google in digital advertising.[4] In short, Mr. Srinivas appears highly confident that

---

[2] Vikas Shah, *A Conversation with Perplexity Founder & CEO, Aravind Srinivas*, THOUGHT ECONOMICS (Mar. 28, 2024), *available at* https://thougteconomics.com/aravind-srinivas/.

[3] Aravind Srinivas (@AravSrinivas), X (Jan. 11, 2025, 8:30 PM).

[4] *See* Kevin McLaughlin, *Legal Threats, Google Competition Loom Over Perplexity's "Newbie CEO"*, THE INFORMATION (Oct. 25, 2024), *available at* https://www.theinformation.com/articles/legal-threats-google-competition-loom-over-perplexitys-newbie-ceo.

Perplexity can compete and is competing against Google, and his documents are unquestionably relevant to Google's subpoena requests.

This Court should order Perplexity to collect and search Mr. Srinivas's documents for responsive material.

### 2. **Search Strings**

Soon after serving its second subpoena, Google proposed search strings for the various custodial requests. Perplexity has not agreed to run Google's proposed search strings. At this juncture, Google cannot wait any longer. Fact discovery closes in barely six weeks. Perplexity should be ordered to run Google's search strings across Messrs. Srinivas's, Ho's, and Shevelenko's files and make rolling productions to conclude by Friday, January 31.

To facilitate the Court's resolution of the issue, Google briefly summarizes each custodial request below. Google has also provided charts identifying Google's proposed search strings in an appendix attached hereto as Exhibit C.

***October subpoena, RFP No. 1***: This request seeks certain communications relating to the distribution of Perplexity's service. To facilitate Perplexity's production of responsive material, Google proposed a search string last month. On a January 7 meet and confer, counsel for Perplexity reported that it had not yet attempted to run the string but committed to providing a hit report within two days. Perplexity then missed its self-imposed deadline, and, on Friday, January 10, asked Google to revise the search string. Ex. B, at 5–6. Perplexity did not provide a counterproposal of its own. In the spirit of compromise, Google has agreed to make two adjustments that Perplexity requested—*i.e.*, breaking the string up into two shorter strings and removing the root expander on Bing. Ex. B, at 4–5. Google is concerned, however, that Perplexity will, upon finally running the string, object to the string on some other basis—perhaps burden or relevance. If so, that would be manifestly prejudicial. Perplexity (or its registered

4

agent) has had Google's first subpoena since October. Perplexity has had plenty of time to craft a search string of its own, if it wished.

*December subpoena, RFP No. 2*: Request 2 in the December subpoena seeks all documents of the relevant custodians "relating to 'generative AI's relationship with Search Access Points, distribution, barriers to entry and expansion, and data sharing,' ECF 1072-2 at 4, to the extent not produced in response to other requests." Ex. A, at 5. That request is indisputably relevant, as it quoted Plaintiffs' initial fact witness list. Google proposed narrow, targeted search strings tailored to identify responsive documents. Ex. C.[5] Perplexity claims that the search string is unduly burdensome, but that burden concern falls flat. Google's proposed string rendered only 22,478 document hits. Ex. B, at 5–6. That number is far fewer than the number of documents other third parties have *produced* in this litigation—to say nothing of the number of documents hit upon by search terms—and it is reasonable here given that Perplexity did not participate in discovery during the liability phase. On the eve of this filing, Perplexity issued a counterproposal removing all reference to Perplexity's app, service, and models from Google's proposed search string without putting in its place any internal terminology used to describe Perplexity's answer engine or mobile application. Ex. B, at 3–4. That proposal is untenable, as it would exclude the very product that Perplexity seeks to market and distribute.[6] Perplexity's documents are of obvious importance to this case, *see* Hr'g Tr. (Nov. 26, 2024), at 38:12–39:9, and this Court should order it to run Google's proposed search string.[7]

---

[5] Google left placeholders for Perplexity's code names for various models, but Perplexity has since stated that it does not use codenames in ordinary course.

[6] In any event, the word "Perplexity" as used in Google's search string was paired with proximity connectors or other modifiers, and, so, it would not turn any document referring to the company into a hit. Perplexity has not substantiated a burden objection to Google's string.

[7] On the day of this filing, Perplexity informed Google that the hit count, including families, was

***December subpoena, RFP No. 3 (Request Disputed In Its Entirety)***: Request 3 seeks documents regarding Perplexity's "strategy with respect to AI Products and the integration of artificial intelligence into search-related products." Ex. A, at 6.  The request plainly seeks relevant information—the term "AI Products" as used in the request is drawn directly from the Proposed Final Judgment, *see* ECF 1062-1, § III.B, and even Plaintiffs concede that "advances in artificial intelligence . . . may present an opportunity for fresh competition," ECF 1062, at 3. Google can only surmise that the real basis of Perplexity's objection is therefore not relevance but burden—perhaps on the logic that, as a search-focused AI company, Perplexity's documents are highly likely to be responsive.  But even if a high share of Perplexity's documents are responsive, that does not mean that a burden—much less ***undue*** burden—will result. Regardless, because Perplexity has apparently not even collected Mr. Srinivas' or Mr. Ho's documents, much less run Google's search terms, Perplexity's burden arguments are pure conjecture.  "A party resisting a subpoena on undue burden grounds cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena," *Stati v. Republic of Kazakhstan*, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020) (cleaned up), and, so, Perplexity's conjecture is insufficient.  It should be directed to comply.

*          *          *

In sum, Google requests this Court order that Perplexity, for each of the custodial requests (RFP 1 in the October subpoena, and RFPs 2 and 3 in the December subpoena), (1) collect and search custodial ESI of Messrs. Srinivas, Shevelenko, and Ho for all custodial requests; and (2) run each of Google's proposed search strings.

---

in fact 67,513 documents.  Ex. B, at 2.  Perplexity did not inform Google of the hit count absent families or when de-duplicated across custodians and other search strings.

II.     **PERPLEXITY'S POSITION STATEMENT**

Third-party Perplexity provides this submission at Google's request, in response to Google's announced intention to request that the Court compel Perplexity to (1) provide custodial ESI from its CEO and (2) run Google's proposed search terms for three pending requests for production, even if those search terms would produce a document review universe of over 22,000 hits for a single request.

Perplexity respectfully requests that the Court reject Google's unreasonable demands, and instead (1) allow Perplexity to produce custodial ESI from its three highest-ranking executives other than its CEO, and (2) require Google to continue meeting and conferring with Perplexity to narrow its search terms until they produce a reasonable review universe of 10,000 hits total or fewer across Google's three pending ESI requests.

A.      **Relevant Background**

Perplexity responded to Google's first subpoena on December 6, 2024. During a Joint Status Conference on December 18, Google and Perplexity presented a dispute regarding the scope of Perplexity's obligation to produce third-party custodial ESI in this action in response to Google's RFP No. 1, seeking documents "proposing, discussing, or relating to the promotion, preinstallation, syndication, or other distribution of the Perplexity Service." Following the Status Conference, the Court ordered Perplexity to "disclose the names of three custodians who are and/or were most involved in negotiating the distribution agreements sought by Google." *See* December 18, 2024 Minute Order as to Google-Perplexity Subpoena. The Court also ordered Perplexity to substantially complete the production of agreements sought by that request by

December 27, and to substantially complete the rest of Perplexity's non-ESI production in response to Google's first subpoena by January 8.[8]

Per the Court's Order, on December 20 Perplexity identified the three individuals most knowledgeable regarding Perplexity's distribution agreements: Dmitry Shevelenko,[9] Emily Jorgens, and Ryan Foutty.

Later that day, Google served a *second* subpoena on Perplexity, this time requesting six additional categories of documents. Among those requests were two seeking additional ESI from at least seven custodians:

> 2. All documents of Dmitry Shevelenko, Ryan Foutty, and Emily Jorgens, as well as the documents of their direct report(s) and immediate supervisor, relating to "generative AI's relationship with Search Access Points, distribution, barriers to entry and expansion, and data sharing," ECF 1072-2 at 4, to the extent not produced in response to other requests.
>
> 3. All documents of Aravind Srinivas, Dmitry Shevelenko, Ryan Foutty, Emily Jorgens, Denis Yarats, and Johnny Ho regarding Perplexity AI's strategy with respect to AI Products and the integration of artificial intelligence into search-related products, to the extent not produced in response to other requests.

On December 27—before Perplexity's response to the second subpoena—counsel for Google provided proposed search terms for all of its pending requests for ESI from both subpoenas. Google's proposed search terms consist of over 120 clauses combined with Boolean connectors and organized into five distinct search strings, shown below. The search strings also included dozens of placeholders for Perplexity's internal "code names" for various internal and third-party products and services.

---

[8] Perplexity has met both of these deadlines.
[9] Mr. Shevelenko has been placed on both Plaintiffs' and Google's witness lists for the forthcoming hearing regarding remedies in this action.

| Subpoena / RFP | Google's Proposed Search String |
|---|---|
| Subp. 1, RFP No. 1 | ((agreement! OR contract! OR partner! OR redlin! OR negotiat! OR analy! OR "joint venture" OR JV OR "joint development" OR relationship! OR collaborat!) W/12 ((exclusiv! OR DSE OR default! OR pre-install! OR preinstall! OR pre-set! OR preset! OR place OR places OR placed OR placing OR placement OR promot! OR distribut! OR preload! OR syndicat! OR integrat! OR (shar! W/2 rev!) OR revshare) W/8 (Bing! OR Edge OR Microsoft OR MSFT OR Copilot OR Prometheus OR Gemini OR Bard OR Claude OR ChatGPT OR SearchGPT OR Haiku OR Apple OR APPL OR Perplexity OR GPT! Or 4o! OR "You.com" OR Claude! OR Sonnet! Or Sonar! OR Grok! OR xAI! OR {code name for Bing} OR {code name for Edge} OR {code name for Microsoft} OR {code name for Copilot} OR {code name for Prometheus} OR {code name for Gemini/Bard} OR {code name for Claude} OR {code name for Sonar} OR {code name for Grok} OR {code name for xAI} OR {code name for ChatGPT} OR {code name for SearchGPT} OR {code name(s) for Perplexity's models} OR {code name(s) for the Perplexity Service} OR {code name(s) for the Perplexity App} OR Sydney OR {code name for Apple} OR {code name for You.Com})))  OR ((distribution OR integration OR service! OR syndicat! OR licens!) W/2 agreement) OR ((Bing! OR Edge OR Microsoft OR MSFT OR Copilot OR Prometheus OR Gemini OR Bard OR Claude OR ChatGPT OR SearchGPT OR Haiku OR Apple OR APPL OR Perplexity OR GPT! Or 4o! OR "You.com" OR Claude! OR Sonnet! Or Sonar! OR Grok! OR xAI! OR {code name for Bing} OR {code name for Edge} OR {code name for Microsoft} OR {code name for Copilot} OR {code name for Prometheus} OR {code name for Gemini/Bard} OR{code name for Claude} OR {code name for Sonar} OR{code name for Grok} OR {code name for xAI} OR {code name for ChatGPT} OR {code name for SearchGPT} OR {code name(s) for Perplexity's models} OR {code name(s) for the Perplexity Service} OR {code name(s) for the Perplexity App} OR Sydney OR {code name for Apple} OR {code name for You.Com}) AND ("115 Sansome" OR "575 Market" OR 94105 OR 94104) AND (termination! OR definition! OR "witness whereof")). |
| Subp. 2, RFP No. 2 | (Bing! OR Edge OR "search engine" OR GSE OR Google OR Chrome OR browser OR {code name for Bing} OR {code name for Edge} OR {code name for OpenAI browser} OR {code name for Google / Chrome}) W/10 (GPT! OR Claude! OR Sonar! OR 4o! OR Haiku! OR Grok! OR xAI! OR Perplexity OR {code name for xAI} OR {code name for ChatGPT} OR {code name for Claude} OR {code name(s) for Perplexity's models} OR {code name(s) for the Perplexity Service} OR {code name(s) for the Perplexity App}) |
| | [Same as Subp. 1, RFP No. 1] |
| | (investment! OR barrier! OR moat! OR capital! OR cloud!) AND (GPT! OR Claude! OR Sonar! OR 4o! OR Haiku! OR Grok! OR xAI! OR Perplexity OR {code name for xAI} OR {code name for ChatGPT} OR {code name for |

| Subpoena / RFP | Google's Proposed Search String |
|---|---|
| | Claude} OR {code name(s) for Perplexity's models} OR {code name(s) for the Perplexity Service} OR {code name(s) for the Perplexity App}) |
| | ("data sharing" OR API) W/10 (GPT! OR Claude! OR Sonar! OR 4o! OR Haiku! OR Grok! OR xAI! OR Perplexity OR {code name for xAI} OR {code name for ChatGPT} OR {code name for Claude} OR {code name(s) for Perplexity's models} OR {code name(s) for the Perplexity Service} OR {code name(s) for the Perplexity App}) |
| Subp. 3, RFP No. 3 | (strategy OR strategies OR strategic OR roadmap OR vision) w/3 (Bing! OR Edge OR Microsoft OR MSFT OR Copilot OR Prometheus OR Gemini OR Bard OR Claude OR ChatGPT OR SearchGPT OR Haiku OR Apple OR APPL OR Perplexity OR GPT! Or 4o! OR "You.com" OR Claude! OR Sonnet! Or Sonar! OR Grok! OR xAI! OR {code name for Bing} OR {code name for Edge} OR {code name for Microsoft} OR {code name for Copilot} OR {code name for Prometheus} OR {code name for Gemini/Bard} OR {code name for ChatGPT} OR {code name for SearchGPT} OR {code name(s) for Perplexity's models} OR {code name(s) for the Perplexity Service} OR {code name(s) for the Perplexity App} OR Sydney OR {code name for Apple} OR {code name for You.Com}) |

Perplexity responded to Google's second subpoena on January 3, 2025 objecting to the scope of Google's ESI demands and, specifically, Google's demand for ESI collections from Perplexity's five most senior executives, including its CEO Aravind Srinivas. During a meet and confer on January 7, Perplexity offered to provide ESI productions for all three of Google's pending ESI requests from the three custodians the Court had ordered Perplexity to identify on December 20: Dmitry Shevelenko, Ryan Foutty, and Emily Jorgens. Perplexity objected to also producing custodial ESI from its CEO, particularly given the expansiveness of Google's second subpoena's RFP No. 3, which sought "All documents . . . regarding Perplexity AI's strategy with respect to AI Products . . . ."—a request so broad that it would apply to practically every email from an AI company's CEO.

On January 9, counsel for Google narrowed its request for ESI collections to three senior Perplexity executives, including Perplexity's CEO: Dmitry Shevelenko (Chief Business Officer), Johnny Ho (Perplexity's Cofounder & Chief Strategy Officer), and Aravind Srinivas (Perplexity's Cofounder & Chief Executive Officer).

On January 10, Perplexity responded to Google's counterproposal by offering to collect ESI from Mr. Shevelenko and Mr. Ho, and—instead of Perplexity's CEO—it's other Cofounder and Chief Technology Officer Denis Yarats. At the same time, Perplexity also shared initial hit counts for Google's proposed search terms for its second subpoena's RFP No. 3 against its earlier custodial collection, requesting that Google propose narrowed versions of those terms because they resulted in over **22,000 hits** for just RFP No. 3, even without addressing Google's demand for additional place holder terms.

On January 13, counsel for Google rejected Perplexity's proposed compromise and refused to provide narrowed terms for RFP No. 3, stating they did not believe over 22,000 hits for a single RFP was burdensome "particularly given that Perplexity did not produce documents during the liability phase."

### B.     Perplexity's Position

Perplexity has thus far bent over backward to provide Google with everything it has requested across its two subpoenas and twenty separate requests for production. As to the disputes Google now raises, Perplexity requests only that (1) it be permitted to produce custodial ESI from its Chief Business Officer, Chief Technology Officer, and Chief Strategy Officer instead of from its Chief Executive Officer, and (2) that Google work with Perplexity to narrow the review universe for Perplexity's third-party ESI production to 10,000 documents or fewer. Perplexity respectfully submits that these are not unreasonable positions.

1. *Perplexity's Proposed Collection of ESI From Its CTO, CBO, and CSO Is More Than Sufficient*

The only remaining dispute as to ESI custodians is whether Perplexity should be permitted to provide ESI from its Chief Technology Officer instead of its Chief Executive Officer, where Perplexity has already agreed to also provide ESI from its Chief Business Officer and Chief Strategy Officer.

Demands for the collection of custodial ESI directly from a CEO are not favored. In general, Courts only compel the production of ESI from a CEO where the requesting party shows that the CEO possesses relevant information that is unique and not cumulative of other discovery. *See Harris v. Union Pac. R.R. Co.*, No. 8:16CV381, 2018 WL 2729131, at *4 (D. Neb. June 6, 2018) (finding there was not a sufficient showing that CEO possessed information that was "necessary and not cumulative of other materials" where relevant emails likely "would have been included in the production of emails from other custodians."); *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, No. 118CV10364LGSSDA, 2021 WL 5299238, at *1 (S.D.N.Y. Oct. 18, 2021) (applying the "necessary and not cumulative" standard and denying request to compel production of CEO's email); *BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSX), 2019 WL 4544425, at *6 (C.D. Cal. Aug. 19, 2019) (denying request to compel production of CEO's email where moving party failed to show that CEO had "unique or personal knowledge of the subject matter that warrant[ed] [his email] information").

Google has not provided any explanation for why it needs email directly from Perplexity's CEO in this case, or what in his email would be unique and not cumulative of ESI gathered using the exact same search terms from Perplexity's three other highest-ranking executives. Nor could Google make this showing, as the custodians Perplexity is offering are more than sufficient to cover the scope of Google's ESI requests. Those requests cover

documents related to distribution and business partnerships (Subp. 1, RFP No. 1), search access points for generative AI (Sub. 2, RFP No. 2), and documents "regarding Perplexity AI's strategy with respect to AI Products" (Subp. 2, RFP No. 3).  It is no accident that the three custodians Perplexity is offering to collect from are the highest-level non-CEO executives directly responsible for distribution and business partnerships (CBO), generative AI technology itself (CTO), and Perplexity's "strategy" with respect to its products (CSO).[10]

Under these circumstances Google's demand that Perplexity *also* collect custodial ESI from its CEO should be denied.

2. *Google Should Be Required To Negotiate Regarding Its Search Terms To Reach a Reasonable Review Universe of Hit Counts*

Google has thus far demonstrated an unwillingness to work with Perplexity to narrow its proposed search terms.  While the parties are still negotiating over the identity of ESI custodians, Google has indicated that it believes it has no obligation to narrow its search terms even where just one of its search strings, for one of its requests for production, produces a review universe of over ***22,000 hits*** (including families).

As Perplexity has communicated to Google, even without the inclusion of Google's expansive list of placeholders in its proposed search strings, those strings produce over ***73,000 hits*** (including families) when run against the custodial collection Perplexity has offered from Mr. Shevelenko, Mr. Ho, and Mr. Yarats.

Perplexity believes these hit count figures are far, far beyond what is reasonable in the context of third-party ESI discovery.  Perplexity respectfully requests the Court direct Google to

---

[10] At least one Court has disallowed document discovery from executives where the requesting party would "be able to obtain relevant communications involving [the executives] via the counterparties to those communications, who are the persons actually in possession of relevant knowledge." *Allianz*, No. 118CV10364LGSSDA, 2021 WL 5299238, at *1.

meet and confer with Perplexity with the goal of narrowing the review universe resulting from Google's ESI requests to 10,000 total documents or fewer.

Dated: January 14, 2025

Respectfully submitted,

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

By: /s/ Grace A. Ramirez
　Grace A. Ramirez
　gramirez@lewisllewellyn.com
　Lewis & Llewellyn LLP
　601 Montgomery Street, Suite 2000
　San Francisco, CA 94111
　(415) 800-0590

*Counsel for Nonparty Perplexity AI, Inc.*