IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                      Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                      Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>                      Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                      Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**JOINT STATUS REPORT OF GOOGLE AND OPENAI**

Pursuant to Section I.J of the Court's September 18, 2024 Order, and the Court's December 20, 2024 minute order, Google and OpenAI provide the following update with respect to OpenAI's compliance with the subpoena served by Google on October 23, 2024 and the subpoena served by Google on December 20, 2024.

I.      **GOOGLE'S POSITION STATEMENT**

To date, Google has served two subpoenas on OpenAI.[1]  Despite months of meeting and conferring, OpenAI has produced stunningly few documents—just 132 in total.  Even more remarkably, OpenAI has produced just *sixteen* custodial documents, all of which came from the files of an OpenAI in-house competition lawyer relating to scheduling calls with Plaintiffs.  The state of play is thus this: Fewer than forty-five days before the close of fact discovery, Google has essentially no custodial documents from OpenAI (and none from the witness that Plaintiffs have identified on their witness list), severely hampering Google's ability to depose witnesses from a company whose personnel will testify against Google.  Google therefore respectfully requests the Court's assistance with the following three issues.

I.      **Custodial ESI Production**

Google has served four document requests that seek the collection and production of custodial electronically stored information ("ESI").  To facilitate that process, Google provided OpenAI proposed search strings nearly a month ago.  Only on the eve of this filing did OpenAI test Google's proposed search terms—and merely a portion of them at that—and make a counterproposal.[2]

As described below, Google respectfully requests that the Court direct OpenAI to run Google's search strings, using Google's custodians, and make rolling productions to conclude by Friday, January 31.  To facilitate the Court's resolution of the issue, Google briefly summarizes

---

[1] Google issued the second subpoena in order to account for additional disclosures from Plaintiffs as to the remedies they are seeking, the witnesses they will call, and on what subject matters.

[2] OpenAI's January 13, 2025 correspondence containing its counterproposal is attached as Exhibit E.

each custodial request below. Google has also provided charts identifying the relevant custodians and Google's proposed search strings in appendices attached hereto as Exhibits C and D.

*Subpoena No. 1, RFP No. 1*: This request sought certain communications regarding the distribution of certain OpenAI products, including ChatGPT and SearchGPT. *See* Ex. A, at 7. Initially, OpenAI refused to produce any responsive documents. *Id.* at 8. On December 13, the Court ordered "OpenAI [to] disclose the names of five custodians who are and/or were most involved in negotiating the agreements sought by Google." *See* Minute Order (Dec. 13, 2024). OpenAI did so on December 18, disclosing James Dyett, Olivier Godement, Miqdad Jaffer, Brad Lightcap, and Aliisa Rosenthal. Two days later, Google sent OpenAI a proposed search string. Just this past Monday, OpenAI rejected Google's proposed search string, and made a counterproposal that apparently would yield only around 2,100 hits—a fairly insubstantial amount in the context of this litigation. Given the rapidly dwindling time that remains in fact discovery, OpenAI should be ordered to apply Google's search strings and produce responsive documents from Mr. Dyett's, Mr. Godement's, Mr. Jaffer's, Mr. Lightcap's, and Ms. Rosenthal's files, as well as Nick Turley's (OpenAI's trial witness), rather than spending additional time debating refinements to the strings.

*Subpoena No. 2, RFP No. 2*: This request seeks all documents relating to the subject matter of the OpenAI witness's expected trial testimony—i.e., "generative AI's relationship with Search Access Points, distribution, barriers to entry and expansion, and data sharing," ECF 1072-2 at 4[3]—found in the custodial files of Mr. Turley and the five witnesses that OpenAI disclosed

---

[3] On January 9, Plaintiffs identified certain additional topics as to which they intend to examine Mr. Turley at the Evidentiary Hearing. Given that change in scope, Google expects that OpenAI

on December 18 (i.e., Mr. Dyett, Mr. Godement, Mr. Jaffer, Mr. Lightcap, and Ms. Rosenthal). *See* Ex. B, at 9. Google provided a proposed search string on December 20. On the eve of the submission of this Joint Status Report, OpenAI made a counterproposal that, similar as above, would yield only about 2,200 additional hits, drawn almost exclusively from Mr. Turley's files.[4]

Although OpenAI apparently intends to use Mr. Turley's files alone to respond to the majority of this request, that approach would prejudice Google. Mr. Turley is a witness handpicked by Plaintiffs to testify on OpenAI's behalf, and there is no reason to think that his documents alone will suffice to shed light on the issues as to which Plaintiffs will offer proof. With respect to Request No. 1 discussed above, OpenAI has already agreed (albeit at the Court's direction) to supplement its production of Mr. Turley's documents with documents drawn from Mr. Dyett's, Mr. Godement's, Mr. Jaffer's, Mr. Lightcap's, and Ms. Rosenthal's files. OpenAI should do the same with respect to Request No. 2.

Google also understands that OpenAI intends to withhold from production any documents predating the November 2022 launch of ChatGPT. Google believes that is too narrow of a timeframe and that OpenAI, like other third parties, should produce documents dating back to May 6, 2022, i.e., the close of fact discovery in the liability phase. The incremental burden associated with producing documents dated between May 6, 2022 and November 30, 2022 is likely modest, and there is no reason to think that documents predating the commercial launch of ChatGPT are somehow categorically irrelevant. To the contrary,

---

may need to run some additional search strings to ensure that the search covers the subject matter of Mr. Turley's anticipated testimony.

[4] One piece of Google's proposed string relates to distribution; as to that string, OpenAI has agreed to search the files of the custodians disclosed on December 18.

documents reflecting efforts to plan for the commercial launch of ChatGPT may undermine Mr. Turley's testimony regarding barriers to entry in a way that post-launch documents would not.

***Subpoena No. 2, RFP No. 3***: This request seeks documents regarding "OpenAI's strategy with respect to AI Products, the integration of artificial intelligence into search-related products, and the Microsoft partnership" from the files of five specified custodians—i.e., Kevin Weil (OpenAI's Chief Product Officer), Adam Fry (OpenAI's Product Lead for Search), Srinivas Narayanan (an OpenAI Vice President of Engineering who works on search), Greg Brockman (the President of OpenAI), and Sam Altman (the CEO of OpenAI).[5]  *See* Ex. B, at 11.  Each custodian is described at greater length in Exhibit C, but, at a high level, Google expects these custodians' documents will bear on OpenAI's strategy with respect to search and OpenAI's partnership with Microsoft.  To facilitate OpenAI's compliance with this request, Google sent OpenAI a proposed search string on December 20.

Until recently, OpenAI refused to provide ***any*** custodial documents responsive to this request.  Just this past Monday, OpenAI finally agreed to run Google's proposed search string, *but only as to Mr. Turley's files*.  The other custodians identified in Google's request almost certainly have unique visibility into important aspects of OpenAI's strategy.  For example, public records confirm that Mr. Altman and Mr. Brockman are central to the collaboration with Microsoft, that Mr. Weil and Mr. Fry are central to the development of ChatGPT Search, and that Mr. Narayanan has technological knowledge regarding the integration of Bing into ChatGPT Search.  Google is entitled to obtain and review their discovery, notwithstanding the fact that, unlike Mr. Turley, Plaintiffs have not seen fit to bring them to trial.

---

[5] Google's subpoena also refers to a sixth custodian, Dario Amodei.  Google is not requesting that the Court order OpenAI to produce Mr. Amodei's documents.

***Subpoena No. 2, RFP No. 4***: This request seeks "[a]ll documents relating to the integration of ChatGPT into Apple devices or software." *See* Ex. B, at 12. On January 13, OpenAI agreed to run Google's proposed search string, but only upon documents drawn from the files of two of the custodians that OpenAI disclosed on December 18 (i.e., Mr. Dyett and Mr. Godement). OpenAI did not even attempt to justify limiting its proposed production to Mr. Dyett's and Mr. Godement's files. OpenAI's omission is particularly concerning because both Mr. Jaffer and Mr. Lightcap have made public statements or given interviews about the Apple partnership.[6] OpenAI should be ordered to apply Google's search strings and produce responsive documents from the same custodians used for Google's other distribution-related search strings (i.e., Mr. Turley, Mr. Dyett, Mr. Godement, Mr. Jaffer, Mr. Lightcap, and Ms. Rosenthal).

## II.    OpenAI's Development of a Browser and a Smartphone

Plaintiffs seek the divestiture of Google's Chrome browser, a ban on Google releasing any browser product for ten years, and severe restrictions on Google's ability to distribute and promote its search engine on Apple and Android mobile devices. Given the fact that Plaintiffs' proposed remedies will substantially impact competition among browsers and smartphones (adversely), Google should be able to obtain discovery of market dynamics involving the products—particularly as they pertain to third parties like OpenAI who stand to benefit from restrictions on Google's ability to compete on the merits.

---

[6] *See ChatGPT x Apple Intelligence—12 Days of OpenAI: Day 5*, OPENAI (Dec. 11, 2024), *available at* https://www.youtube.com/watch?v=mBhkD0iFf4w; *OpenAI COO Breaks Down Apple Partnership, New AI Models*, CNBC TELEVISION (Oct. 7, 2024), *available at* https://www.youtube.com/watch?v=JgH9ak8Ls2o&t=46s.

Public reports indicate that OpenAI has begun work to develop its own browser and smartphone.[7] Based on those reports, Google served requests for "[d]ocuments sufficient to show any efforts by OpenAI to develop a browser" and "[d]ocuments sufficient to show any efforts by OpenAI to develop a smartphone." *See* Ex. B, at 14–16.  To date, OpenAI has agreed to produce ***nothing*** responsive to these requests.  Given their obvious relevance to Plaintiffs' remedies and the fact that they can be retrieved on a go-get basis, the Court should order OpenAI to comply with these requests.

### III.    OpenAI's Approach to Data Handling

Request No. 9 of Google's second subpoena seeks "[d]ocuments sufficient to show any safeguards that OpenAI implements to protect personal privacy and security when entering into agreements with third parties that provide for the disclosure of third-party proprietary data, user data and/or ads data."  *See* Ex. B, at 18.

The question of how companies handle data privacy and security concerns will unquestionably arise at the Evidentiary Hearing.  Plaintiffs' Proposed Final Judgment would obligate Google to provide qualified competitors with access to user-side data and ads data "while safeguarding personal privacy and security."  ECF No. 1062-1, §§ VI.C, E.  By probing OpenAI's practices and policies, documents responsive to Request No. 9 will shed light on what steps are customary to "safeguard[] personal privacy and security."  *Id.*

---

[7] *See, e.g.*, Darren Allan, *A Chrome-Killing Browser Will Be OpenAI's Next Big Shot At Google, According To A New Report*, TECH RADAR (Nov. 22, 2024), *available at* https://www.techradar.com/computing/artificial-intelligence/a-chrome-killing-browser-will-be-openais-next-big-shot-at-google-according-to-a-new-report; Jess Weatherbed, *Details Emerge On Jony Ive And OpenAI's Plan To Build The "iPhone Of Artificial Intelligence,"* THE VERGE (Sept. 28, 2023), *available at* https://www.theverge.com/2023/9/28/23893939/jony-ive-openai-sam-altman-iphone-of-artificial-intelligence-device.

Google further understands that OpenAI requests that the Court quash Request No. 10, apparently on the basis of relevance and burden. The argument is without merit. Request No. 10 seeks "[d]ocuments sufficient to show OpenAI's rationale for not releasing GPT-4, GPT-4o, OpenAI o1, OpenAI o3, or any subsequent model on an open source or open weight basis." *See* Ex. B, at 19. For context, public accounts describe OpenAI's early models—e.g., GPT-2—as open source, while OpenAI's later models have not been released on an open source basis. Request No. 10 thus seeks documents that account for the shift in strategy. Given Plaintiffs' far-reaching remedies, which seek to force Google to afford competitors broad access to proprietary technologies and supporting data, the Court will need to consider the harms that can result from the widespread sharing of proprietary technology. Documents responsive to Request No. 10 may shed light on that question, and, because Request No. 10 is a "sufficient to show request," compliance entails minimal burden.

*       *       *

Google therefore respectfully requests that the Court direct OpenAI to:

1. Run the search strings identified in Exhibit D across the custodial documents described herein for the time period dating back to May 6, 2022.

2. Produce documents from May 6, 2022 onwards sufficient to show any efforts by OpenAI to develop a browser.

3. Produce documents from May 6, 2022 onwards sufficient to show any efforts by OpenAI to develop a smartphone.

4. Produce documents from May 6, 2022 onwards sufficient to show any safeguards that OpenAI implements to protect personal privacy and security when entering into agreements with third parties that provide for the disclosure of third-party proprietary data, user data and/or ads data.

5. Produce documents from May 6, 2022 onwards sufficient to show OpenAI's rationale for not releasing GPT-4, GPT-4o, OpenAI o1, OpenAI o3, or any subsequent model on an open source or open weight basis.

6. Make rolling productions to conclude by Friday, January 31.

## II.     OPENAI'S POSITION STATEMENT

Nonparty OpenAI moves to quash five requests in Google's second document subpoena. It is rarely appropriate for a party to serve two subpoenas within two months on the same nonparty in the same litigation. Despite the anomaly, in the spirit of cooperation, OpenAI has agreed to produce documents in response to several of Google's second-wave requests. Those that OpenAI seeks to quash—such as **all** documents about OpenAI's strategy from its co-founder and CEO, Sam Altman, and other C-level executives—constitute an unjustified fishing expedition.

OpenAI has hewn to the guidance that the Court provided during the November 2024 status conference, where the Court identified two categories of information on which remedies discovery should focus: 1) the integration of AI technology into search engines and 2) standalone AI tools. *See* Nov. 26 H'rg Tr. 36:18-37:25.

In following the Court's guidance, OpenAI has already undertaken significant efforts to collect and produce documents in response to Google's first subpoena dated October 23, 2024. As of December 20, 2024, OpenAI produced noncustodial documents in response to all of Google's document requests, for a total of 132 documents spanning 1,626 pages. These documents are some of the company's most sensitive, including:

- OpenAI's understanding of its relative competitive position;
- audited financial statements;
- agreements related to the development and distribution of OpenAI's generative AI products; and

- data about the total number of downloads, the daily active users, and user inputs to ChatGPT and SearchGPT.

OpenAI has also now collected ESI from the OpenAI witness who Plaintiffs will subpoena to testify at the hearing, as well as ESI from the five OpenAI custodians most involved in negotiating the distribution agreements sought by Google. OpenAI and Google are currently negotiating search terms for those custodians. The ESI production from these six custodians will ultimately require OpenAI to produce thousands of additional sensitive documents. Despite OpenAI's compliance with Google's October 23 subpoena, Google served a second subpoena on December 20, 2024. *See* Ex. F (Google's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action dated December 20, 2024). If Google's first subpoena made some effort to circumscribe its requests, its second subpoena does the opposite. Google now advances several requests wholly unrelated to the integration of AI technology into search or standalone AI search tools. Google's second subpoena seeks ESI from ***fifty-one custodians***, including not only the six custodians from whom OpenAI will produce ESI, but their direct reports and immediate supervisor, as well as OpenAI's seniormost executives: OpenAI's Chief Executive Officer, President, Chief Product Officer, and Vice President of Engineering. The broad scope of these requests reveals Google's belief that OpenAI should be treated as a party to the case. As detailed below, the Court should quash certain overbroad requests from Google's second subpoena. *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 60 (D.D.C. 2023) (quashing nonparty subpoena requests where they were not "directly relevant to Defendants' defenses" in the underlying litigation and "overbroad on their face and exceed the bounds of fair discovery" for a nonparty);

10

Fed. R. Civ. P. 45(d)(3)(A)(iv) ("[T]he court . . . must quash or modify a subpoena that . . . subjects a person to undue burden.").

**Request No. 3**: *All documents of Sam Altman, Greg Brockman, Kevin Weil, Adam Fry, Srinivas Narayanan, and Dario Amodei regarding OpenAI's strategy with respect to AI Products, the integration of artificial intelligence into search-related products, and the Microsoft partnership, to the extent not produced in response to other requests. This request seeks all responsive, nonprivileged documents in OpenAI's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.* Ex. F at 1-2.

OpenAI agreed to produce ESI related to "OpenAI's strategy with respect to AI Products, the integration of artificial intelligence into search-related products, and the Microsoft partnership" from Plaintiffs' trial witness Nick Turley in response to this request. And, in connection with the Microsoft partnership, OpenAI similarly intends to produce ESI from the five custodians that OpenAI identified as the individuals who are and/or were most involved in negotiating the distribution agreements sought by Google. Further, OpenAI already produced documents related to its plans for distribution and integration of ChatGPT, its understanding of the relative competitive position of ChatGPT and SearchGPT, as well as numerous agreements relating to its Microsoft partnership.

Nevertheless, Google insists on documents from four current senior OpenAI executives, including Sam Altman, Chief Executive Officer and Co-Founder; Greg Brockman, President, Chairman and Co-Founder; Kevin Weil, Chief Product Officer; and Srinivas Narayanan, Vice President of Engineering.[8] Courts have long recognized that discovery of high-level corporate executives "creates a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung*

---

[8] OpenAI also seeks documents from Dario Amodei, former Vice President of Research, and Adam Fry, Product Lead for ChatGPT Search. But Mr. Amodei left OpenAI in 2020 and is the CEO of Anthropic, a different AI company. OpenAI does thus not have any documents from Mr. Amodei from the time relevant to this case. And because Mr. Fry reports to OpenAI witness Nick Turley, his documents would be largely duplicative of those that OpenAI will produce from Mr. Turley.

11

*Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. 2007) (explaining that discovery "directed at an official at the highest level or 'apex' of corporate management . . . creates a tremendous potential for abuse or harassment"). During meet and confer, Google provided no explanation as to why these top OpenAI executives have unique knowledge on this topic, nor sought to identify any substantial need to justify the search.

This request appears to be a Trojan horse intended to harass OpenAI executives. Should the Court order any production, Google will doubtlessly bootstrap that production into a meritless attempt to depose these extremely busy senior executives. Google should not subject OpenAI's apex executives to time consuming and burdensome discovery in a case where OpenAI is not a party. Thus, the Court should deny Google's request for compliance beyond Mr. Turley and the other five document custodians.

**Request No. 2**: *All documents of Nick Turley, James Dyett, Olivier Godement, Miqdad Jaffer, Brad Lightcap, and Aliisa Rosenthal, as well as the documents of their direct report(s) and immediate supervisor relating to "generative AI's relationship with Search Access Points, distribution, barriers to entry and expansion, and data sharing," ECF 1072-2 at 4, to the extent not produced in response to other requests. This request seeks all responsive, non-privileged documents in OpenAI's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.* Ex. F at 1.

OpenAI agreed to produce ESI from Nick Turley, Head of Product for ChatGPT, relating to "generative AI's relationship with Search Access Points, distribution, barriers to entry and expansion, and data sharing." Mr. Turley is the ***only*** witness designated to testify about these topics on Plaintiffs' witness list. OpenAI will also produce ESI from the other five custodians named in this request as to "distribution," because OpenAI identified them as the individuals who are and/or were most involved in negotiating the distribution agreements sought by Google. OpenAI has never suggested that they are appropriate custodians for all topics related to Mr. Turley's hearing testimony.

12

Google insists on the full scope of its request, *i.e.*, documents from these six custodians on all topics ***as well as*** their direct reports and immediate supervisor. Google's search terms for generative AI's relationship with Search Access Points, barriers to entry and expansion, and data sharing for the five distribution custodians would add—based on OpenAI's ESI collections to date—another 32,004 documents for OpenAI to review, which is already unduly burdensome for a nonparty. Extrapolating that document volume, collecting and reviewing documents from the additional 42 custodians Google demands would **add over 250,000 documents** to the review set, which is facially absurd.

Google is well aware that this request would sweep in over forty additional custodians. It had previously asked OpenAI for the reporting lines of the six identified custodians, claiming that it needed the information to evaluate OpenAI's proposed custodians. Although OpenAI disagreed with Google on the relevance of such information, it nevertheless provided the names of the direct reports and immediate supervisors of these six custodians. Google's insistence on compliance with this request only underscores its disregard for any undue burden that OpenAI will suffer as a nonparty.

Google also insists on documents beginning from May 6, 2022. But the May 6, 2022, date is the previous close of fact discovery in this case. It is untethered to what documents from OpenAI would be relevant. ChatGPT first launched on November 30, 2022, and OpenAI agreed to produce responsive documents since that date. Google claims that it needs documents before that time as they may relate to the development leading up to the official launch. But given the rapid pace of development in the field of generative AI, documents that are almost three years old cannot meaningfully represent the current landscape of integration of AI technology into

search or standalone AI search tools. The burden on OpenAI to review the additional documents outweighs the speculative benefit of obtaining any incremental relevant information.[9]

As Google has failed to provide any reason as to why it needs such a drastic expansion beyond the scope of ESI collection that OpenAI has agreed to, the Court should reject compliance with the full scope of Google's request.

**Requests Unrelated to GenAI and Search**

> **Request No. 6**: *Documents sufficient to show any efforts by OpenAI to develop a browser. See, e.g., https://www.techradar.com/computing/artificial-intelligence/a-chrome-killing-browser-will-be-openais-next-big-shot-at-google-according-to-a-new-report. This request seeks all responsive, non-privileged documents in OpenAI's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.* Ex. F at 2.
>
> **Request No. 7**: *Documents sufficient to show any efforts by OpenAI to develop a smartphone. See, e.g., https://www.theverge.com/2023/9/28/23893939/jony-ive-openai-sam-altman-iphone-of-artificial-intelligence-device. This request seeks all responsive, non-privileged documents in OpenAI's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.* Ex. F at 2.
>
> **Request No. 10**: *Documents sufficient to show OpenAI's rationale for not releasing GPT-4, GPT-4o, OpenAI o1, OpenAI o3, or any subsequent model on an open source or open weight basis. This request seeks all responsive, non-privileged documents in OpenAI's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.* Ex. F at 3.

Google Request Nos. 6, 7, and 10 seek documents unrelated to the integration of AI technology into search or standalone AI search tools. Instead, Google claims that these requests are relevant to Plaintiffs' Proposed Final Judgment ("PFJ"), including remedies related to Chrome, Android, and data sharing. ***But those remedies have nothing to do with OpenAI.*** As explained below, Google's requests are fishing expeditions into OpenAI's potential business ventures and business decisions, and are plainly not within the scope of the discovery that the Court identified as animating remedies discovery as to third parties.

---

[9] The November 2022 date should apply to all of Google's disputed document requests at issue.

14

Request No. 6 seeks documents related to OpenAI's efforts to develop a browser, pointing to a public article reporting that OpenAI appears to be making such efforts.[10] To be clear, OpenAI has not released any browser product. Even a cursory read of this article shows that the supposed discussions about a "browser" are hypothetical and have never materialized into any concrete development efforts. *See* Ex. G at 1-2. In fact, the entire article is based on a report that "makes it clear that OpenAI isn't 'remotely close' to launching a browser yet" and that it is still "very much a 'might happen' or 'might not' possibility at this point." *Id*. Google fails to explain how such efforts by OpenAI are relevant to Google's potential divestiture of the Chrome browser. *See* Pls.' PFJ at 9 (ECF No. 1062-1).

The same goes with Request No. 7, where Google seeks documents related to OpenAI's efforts to develop a smartphone. But OpenAI has not released a smartphone. The article Google mentions to justify its request[11]—which was published over a year ago in September 2023—noted that the purported discussions around a consumer device was in "early stages." *See* Ex. H at 2. Is it shocking to anybody that a start-up like OpenAI would have scores of projects in "early stages" at any point? In any case, Google fails to explain how such efforts by OpenAI are relevant to Google's potential divestiture of Android. *See* Pls.' PFJ at 9-10.

Finally, Request No. 10 seeks documents related to "OpenAI's rationale for not releasing GPT-4, GPT- 4o, OpenAI o1, OpenAI o3, or any subsequent model on an open source or open weight basis." OpenAI's rationale for not releasing these models on an open-source or open-

---

[10] Ex. G, Darren Allan, *A Chrome-killing browser will be OpenAI's next big shot at Google, according to a new report*, TechRadar (Nov. 22, 2024), https://www.techradar.com/computing/artificial-intelligence/a-chrome-killing-browser-will-be-openais-next-big-shot-at-google-according-to-a-new-report.

[11] Ex. H, Jess Weatherbed, *Details emerge on Jony Ive and OpenAI's plan to build the 'iPhone of artificial intelligence'*, The Verge (Sep 28, 2023, 2:20 AM PDT), https://www.theverge.com/2023/9/28/23893939/jony-ive-openai-sam-altman-iphone-of-artificial-intelligence-device.

15

weight basis is also wholly unrelated to the Proposed Final Judgment. Plaintiffs have proposed certain remedies related to providing "access to scale-dependent data inputs—for both search and ads—that would otherwise provide Google an ongoing advantage from its exclusionary conduct." Pls.' PFJ at 11–14. But the potential data inputs to generative AI models are unrelated to OpenAI's decision for not releasing its own generative AI models on an open-source or open-weight basis.

Thus, OpenAI respectfully asks the Court to quash Requests Nos. 6, 7, and 10.

**Issues That Are Not Ripe**

The day before the Joint Status Report deadline, Google raised an impasse as to two issues, neither of which is ripe for judicial resolution. OpenAI and Google had met-and-conferred on Friday, January 10, and although Google raised both of these issues, it did not propose any resolution for OpenAI to consider. OpenAI thus expects that it and Google can reach resolution without Court intervention.

**Request No. 9**: *Documents sufficient to show any safeguards that OpenAI implements to protect personal privacy and security when entering into agreements with third parties that provide for the disclosure of third-party proprietary data, user data and/or ads data. This request seeks all responsive, non-privileged documents in OpenAI's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.* Ex. F at 3.

OpenAI has produced all of its executed agreements with third parties related to access to content, which would include any relevant provisions addressing privacy and security. When OpenAI asked Google what other documents it is seeking during meet and confer, Google provided no explanation. OpenAI would be willing to agree to produce its standard form nondisclosure agreements, data-processing agreements, and privacy policies to the extent that these materials are sought by Google in response to this request.

16

**OpenAI's Custodial ESI Production Deadline**: Google and OpenAI are currently in the midst of negotiating ESI search terms. On January 10, Google requested a date certain by which OpenAI intends to complete its ESI production. In response, OpenAI represented that it will produce ESI sufficiently in advance of Google's deposition of OpenAI's hearing witness, and requested dates for scheduling purposes. Google did not provide dates this past Friday or as of today's filing. OpenAI would endeavor to produce custodial ESI a week before this deposition.

Dated: January 14, 2025

Respectfully submitted,

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Susan A. Creighton (D.C. Bar No. 978486)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
screighton@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street

Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com
*Counsel for Defendant Google LLC*

*/s/ Ashok Ramani*

Ashok Ramani
Serge A. Voronov
DAVIS POLK & WARDWELL LLP
900 Middlefield Road, Suite 200
Redwood City, CA 94063
Tel:     (650) 752-2000
ashok.ramani@davispolk.com
serge.voronov@davispolk.com

*Counsel for OpenAI, Inc.*