IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                  Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                  Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>███████████████ |
| State of Colorado, *et al.*,<br><br>                  Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                  Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br>███████████████ |

## JOINT STATUS REPORT OF GOOGLE AND MICROSOFT

Pursuant to Section I.J of the Court's September 18, 2024 Order, and the Court's December 20, 2024 minute order, Google and Microsoft provide the following update with respect to Microsoft's compliance with the subpoena served by Google on October 22, 2024 and the subpoena served by Google on December 20, 2024.

**I.    GOOGLE'S POSITION STATEMENT**

Following months of correspondence and conferrals between Google and Microsoft, Microsoft has yet to produce any meaningful amount of custodial electronically stored information ("ESI"), refuses to produce responsive materials for a number of Google's subpoena

requests, and has to date made only a handful of go-get productions that purport to be responsive to fewer than half of Google's document requests—the majority of which have been outstanding for nearly three months. With the close of fact discovery just six weeks away, and an urgent need to commence its review of Microsoft's custodial ESI and the balance of responsive go-get documents in advance of depositions, Google respectfully requests the Court's assistance in resolving three areas of ongoing dispute between the companies, as outlined below.[1]

### A.     Search Strings and Custodians

Google has proposed search strings and custodians for Request Nos. 2, 4, 5, 7, 15, and 16 in its Second Subpoena[2] and for Request Nos. 1, 2, 4, 5, and 38 in its First Subpoena. With respect to Google's Second Subpoena, Microsoft has agreed to produce next to no custodial ESI. Below, Google summarizes each of the custodial requests and the relief that Google seeks.

<u>Second Subpoena, Request No. 2</u>: Google's Request No. 2 seeks, to the extent not produced in response to other requests, all documents relating to Microsoft's: (a) efforts to distribute generative AI products on Android devices; (b) plans for on-device AI or potential agreements to have Microsoft's on-device AI preinstalled on Android devices; and (c) current and future product development efforts related to (1) the integration of generative AI products and features into Bing or (2) generative AI products including plans related to the introduction, creation, distribution, monetization, and release of generative AI agents. Ex. A, at 10-11.

---

[1] After the companies' mutually agreed upon time for a simultaneous exchange of position statements, Microsoft unilaterally refused to jointly file this status report and, instead, supplemented its statement to include a new paragraph accusing Google of raising disputes not previously disclosed to Microsoft. Google sought clarification from Microsoft as to which portions of Google's statement were, in Microsoft's view, undisclosed. Microsoft did not respond, and Google does not understand the basis for Microsoft's assertion.

[2] Google issued the Second Subpoena in order to account for additional disclosures from Plaintiffs as to the remedies they are seeking, the witnesses they will call, and on what subject matters.

Although Microsoft has conceptually agreed to produce documents responsive to this request, Microsoft has refused to produce responsive documents to the extent that they relate to plans or product development efforts that remain "[un]announced." *Id.* at 12. Microsoft's limitation of the request is without basis. If Microsoft has, for instance, plans in development to incorporate generative AI into Bing in some new manner, there is no reason to withhold such plans simply because they remain unannounced.[3]

Microsoft also has refused to engage with Google on search terms and custodians until such time as Google agrees to Microsoft's position that non-public plans be excluded from the scope of the requests. To hasten the pace of production, Google sent Microsoft proposed search strings and custodians several weeks ago. As far as Google knows, Microsoft has not even collected some of the proposed custodians' documents, much less tested Google's proposed search strings. Google thus has concern that Microsoft will refuse to run Google's proposed strings across the requested custodians. If so, not only would there be no means of evaluating any claims concerning burden but also there would simply not be enough time in the schedule for Google to receive the documents in advance of depositions.

In any event, any objection that Microsoft may make to the search terms or custodians would be without basis. Virtually all of the custodians that Google requested are personnel who Microsoft has already agreed to make a custodian for other requests,[4] personnel who were

---

[3] Microsoft has also proposed to limit its production such that any documents relating to product development efforts must "have some connection to search, search features, or search access points." Ex. A, at 12. As to that limitation, Google has no objection, provided that the same limitation is applied to Plaintiffs' corresponding request.

[4] Shilpa Anand, Charlie Beard, Rob Cromwell, Michael Schechter, and Jonathan Tinter.

document custodians in the liability phase,[5] or who Google understands to be particularly involved in Microsoft's development of artificial intelligence capabilities, including with respect to search.[6] Given the short time that remains in discovery, the Court should direct Microsoft to apply the search strings to the custodial files identified in Exhibits C and D and herein.

Second Subpoena, Request No. 4: Request No. 4 of Google's Second Subpoena seeks all documents "relating to [a] 'Search Access Points, distribution, and barriers to entry and expansion,' [b] 'data sharing,' and [c] 'generative AI's relationship with Search Access Points,'" across the custodial files of seven key Microsoft custodians. Ex. A, at 15. The internal quotation marks surrounding subparts [a], [b], and [c] of the request appear therein because the same language appeared verbatim on *Plaintiffs' list of Microsoft trial witnesses*, as served on November 20, 2024. *See* ECF 1072-2, at 3-4.[7] Nonetheless, Microsoft continues to object to that quoted language as "overbroad, vague, ambiguous, and unduly burdensome," Ex. A, at 15, and refuses to run Google's proposed search strings unless Google first agrees to be more specific about the topics identified in the request, *i.e.*, the topics on Plaintiffs' witness list. But Google must prepare to depose already-identified Microsoft witnesses and custodians on the subjects Plaintiffs themselves disclosed. Given the breadth of Plaintiffs' Proposed Final Judgment and the testimony they will seek to elicit from Microsoft to support it, the solution to

---

[5] Satya Nadella, Mikhail Parakhin, and Jordi Ribas.

[6] This includes (1) Kevin Scott, Microsoft's Chief Technology Officer, who has worked closely with OpenAI, (2) Mustafa Suleyman, the head of Microsoft AI, and (3) Rangan Majumder, Microsoft's vice president of search and artificial intelligence.

[7] On January 9, Plaintiffs refined the topics upon which they plan to examine Microsoft witnesses at the Evidentiary Hearing, albeit with the caveat that they "reserve the right to question any witness on any relevant topic." Given that change in scope, Google expects that Microsoft may need to run some additional search strings to ensure that the search covers the subject matter of the Microsoft witnesses' anticipated testimony.

any perceived overbreadth in Google's request is for Microsoft to engage with Google on search terms. Having refused to do so, Microsoft cannot establish burden, much less a burden so disproportionate as to justify withholding responsive documents.

Moreover, to the extent Microsoft disputes any of Google's proposed custodians for this request, three of the seven (*i.e.*, Charlie Beard, Rob Cromwell, and Michael Schechter) are Plaintiffs' disclosed witnesses, two (Jonathan Tinter and Shilpa Anand) were selected as custodians by Microsoft itself in response to certain requests in Google's First Subpoena, another (Mikhail Parakhin) was a trial witness during the liability phase, and the last (Jordi Ribas) was deposed in the liability phase and is Microsoft's current Head of Search. Google cannot be limited in its list of proposed custodians to only Plaintiffs' hand-picked witnesses where Google is seeking documents that will bear directly on the subjects of testimony Plaintiffs disclosed. As above, Google respectfully requests that the Court order Microsoft to run Google's proposed search string across these seven custodians and provide hit counts so that production can begin without further delay.

Second Subpoena, Request Nos. 5 and 7: Request No. 5 seeks documents "relating to Microsoft's strategy with respect to AI Products, the integration of artificial intelligence into search-related products, and the OpenAI partnership," across a targeted list of six custodians. Ex. A, at 17. Instead of running Google's proposed search strings and providing hit counts, Microsoft suggests that it should be excused from producing responsive documents because it has already agreed to produce documents in response to Request No. 2 above and certain "go-get" documents. The problem with Microsoft's proposal, however, is that it would deny Google the perspective of senior Microsoft personnel with knowledge of artificial intelligence issues. The six custodians that Google has proposed for this request are:

5

- Satya Nadella, the CEO of Microsoft, who already testified at trial about (among other topics) the strategic rationale underlying Microsoft's partnership with OpenAI;

- Kevin Scott, Microsoft's Chief Technology Officer, who partnered closely with OpenAI and whose views on AI competition arose at trial;[8]

- Mustafa Suleyman, the head of Microsoft AI, who oversees Microsoft's work on Copilot and Microsoft's consumer-facing AI products;[9]

- Mikhail Parakhin, who testified at trial and who was, until last year, responsible for both Bing[10] and Copilot's predecessor, BingChat;[11]

- Jordi Ribas, who testified by deposition designation, and who is the Corporate Vice President of Search & AI at Microsoft responsible for the team that released Copilot;[12] and

- Rangan Majumder, the Vice President of Core Search and AI, who has publicly discussed the potential of pretrained models to improve search quality.[13]

By virtue of their responsibilities, these six custodians are particularly likely to have information that sheds light on Microsoft's understanding of how the advent of artificial intelligence has shaped and will shape the competitive landscape that includes search engines, against which the Court will be asked to restrain Google's ability to compete. Microsoft has not disputed the

---

[8] *See, e.g.*, Trial Tr. 3638 (Nadella).

[9] *See, e.g., Mustafa Suleyman, DeepMind and Inflection Co-Founder, Joins Microsoft to Lead Copilot*, MICROSOFT BLOG (Mar. 19, 2024), *available at* https://blogs.microsoft.com/blog/2024/03/19/mustafa-suleyman-deepmind-and-inflection-co-founder-joins-microsoft-to-lead-copilot/.

[10] Trial Tr. 2460 (Parakhin).

[11] Trial Tr. 2667 (Parakhin).

[12] *See, e.g., Jordi Ribas*, MICHIGAN ENGINEERING ADVISORY BOARD, *available at* https://lab.engin.umich.edu/members/jordi-ribas.

[13] Trial Tr. 2737–38 (Parakhin).

relevance of these custodians or their documents with respect to the remedies phase of this litigation.

Request No. 7 is to similar effect. It calls for all documents relating to the "potential or actual acquisition of financial interests in OpenAI or Perplexity," including "any communications between or among Microsoft and OpenAI or Perplexity regarding regulatory, antitrust, or competition considerations associated with Microsoft's potential or actual acquisition of investment interests in OpenAI or Perplexity." Ex. A, at 20-21. The basis of the request is an article in *The Information*, which reports that "Microsoft had expressed interest in acquiring Perplexity and had discussed how to structure a deal that would make it pass regulators." *See* Ex. B, at 5. Plainly, if Microsoft is endeavoring to acquire companies developing AI-focused search tools, that sheds light on the competitive landscape. As with Request No. 5, Google has selected an appropriate set of custodians, consisting of Messrs. Nadella, Parakhin, Scott, and Suleyman, as well as Jonathan Tinter, who served as Microsoft's business development witness at trial. Microsoft, for its part, proposes to produce nothing more than the heavily redacted, incomplete production of OpenAI and Perplexity agreements that it has already provided Google and which do not address any potential acquisitions. That, of course, is insufficient to respond to the request, and Microsoft should be compelled to search Messrs. Nadella's, Parakhin's, Scott's, Suleyman's, and Tinter's files.

Second Subpoena, Request Nos. 15 & 16: Request No. 15 seeks analyses, studies, and documents concerning personalization in Search, and Request No. 16 seeks analyses of potential partnerships, collaborations, and agreements relating to the access to or use of Microsoft's "Search Index," as defined in Plaintiffs' Proposed Final Judgment. Ex. A, at 31-33. Both requests, in other words, seek information relating to the implications of Plaintiffs' proposed

7

data-sharing remedies, which provide, among other things, that "[a]ny User-side Data that Google collects and uses as part of any of its products consistent with this Final Judgement can presumptively be shared with Qualified Competitors consistent with personal privacy and security," and that "Google must provide, at marginal cost, ongoing access to its Search Index to Qualified Competitors."  ECF 1062-1, at 12-13.  Microsoft refuses to run Google's proposed search strings for either request, disputing the relevance and burden associated with each.  But how Bing incorporates user-side data or makes its index available will bear on the merits of Plaintiffs' proposed remedies.  For example, with respect to user-side data, Plaintiffs' Proposed Final Judgment would "prohibit[]" Google "from using and retaining data to which access cannot be provided to Competitors on the basis of privacy or security concerns."  ECF No. 1062-1, § VI.C.  But if Bing uses that type of data to create personalized experiences for its users, then that would indicate that the proposed remedies punitively degrade the Google search experience.  Similarly, if Microsoft shares its index only with select third parties in tightly controlled circumstances, that would counsel against forcing Google to share its index in the manner Plaintiffs propose.  Google's proposed search strings and custodians[14] are designed to elicit this kind of material, and Microsoft should be ordered to run them, provide hit counts, and begin producing documents.

  First Subpoena, Request Nos. 1, 2, 4, 5 and 38:  Google served its First Subpoena on Microsoft on October 22, 2024.  Microsoft first proposed search strings for Request Nos. 1 and 2 on December 12, 2024.  Its initial proposal included a variety of outdated terms and a placeholder: "[enter Copilot/AI agreement name(s)]."  Google sought clarification and provided

---

[14] For Request No. 15, Google proposed Messrs. Cromwell, Majumder, Parakhin, Ribas, and Schechter.  For Request No. 16, Google proposed Ms. Anand and Messrs. Beard, Parakhin, Ribas, Schechter, Scott, and Tinter.

counterproposals on December 16, 2024. Microsoft agreed to Google's counterproposals and provided hit counts on December 19, 2024, as well as a proposed search string for Request No. 38. Google raised concerns the following day that Microsoft's proposals to date had omitted any internal codenames. On December 23, 2024, Microsoft informed Google that it was in the process of confirming codenames, but needed additional input from certain business contacts. This past Monday, Microsoft informed Google that it had (unbeknownst to Google) finalized proposed search terms and begun review. Given this fact, Google respectfully requests that the Court direct Microsoft (1) to provide Google the precise search terms, custodians, date ranges, and hit counts employed in the search so that Google can ascertain whether refinement is needed and (2) to produce any documents located in the course of Microsoft's ongoing review that may be responsive to Google's Second Subpoena.

*       *       *

Given the limited time that remains in fact discovery—and the even tighter window to produce documents before depositions—Google respectfully requests that the Court direct Microsoft to comply with the foregoing custodial requests and to begin making rolling document productions immediately. Google further requests that the Court direct Microsoft to complete its productions by Friday, January 31.

### B. Non-Custodial Documents Regarding Microsoft's Investments in and Partnerships with Search or AI Companies

Plaintiffs' Proposed Final Judgment contains several provisions that would limit Google's ability to invest in certain companies that operate in search or artificial intelligence. Specifically, Section IV.F would require divestiture of "any investment, holding, or interest in any Competitor, any company that controls a Search Access Point or an AI Product, or in any technologies, such as AI Products, that are potential entrants into the GSE or Search Text Ads

9

markets or reasonably anticipated competitive threats to GSEs." ECF No. 1062-1, § IV.F. Section IV.G would obligate Google to seek Plaintiffs' permission before "acquir[ing] any interest in, or part of, any company; enter[ing] into a new joint venture, partnership, or collaboration, including any marketing or sales agreement; or expand[ing] the scope of an existing joint venture, partnership, or collaboration, with any company that competes with Google in the GSE or Search Text Ads markets or any company that controls a Search Access Point or query-based AI Product." *Id.* § IV.G.

In order to show the extent to which investments and partnerships along these lines are routine, Google served two "sufficient to show" requests on Microsoft to ascertain the extent to which Microsoft has entered into or made similar investments–i.e., Request Nos. 9 and 10, modeled on the provisions quoted above. *See* Ex. A, at 24-25. Despite the minimal burden that the requests entail, Microsoft has refused to produce responsive documents, ostensibly on the logic that the Plaintiffs do not seek to restrain **Microsoft** from making such investments. Microsoft overlooks that discovery into its investment and partnership practices will reflect the extent to which Plaintiffs' remedies would hamstring Google's ability to engage in procompetitive conduct that rivals engage in, *harm* competition, and impermissibly "interfere with ordinary commercial practices." *New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 133 (D.D.C. 2002) (internal quotation marks omitted), *aff'd*, 373 F.3d 1199 (D.C. Cir. 2004).

Microsoft has likewise refused to produce documents in response to a related request: Request No. 19 of Google's Second Subpoena seeks documents relating to "Microsoft's relinquishment of a seat on OpenAI's board." According to public press accounts, Microsoft

personnel held a seat on OpenAI's board but relinquished it partly out of antitrust concerns.[15]  If Microsoft exited OpenAI's board for antitrust reasons, that would indicate that they stand the possibility of attaining a dominant position among companies working on artificial intelligence.  And if that is so, then it would suggest that Plaintiffs' proposal to sharply curtail Google's ability to compete in artificial intelligence "might chill competition, rather than foster it."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).  Microsoft should thus produce documents responsive to Request No. 19 as well.

        **C.**        **Non-Custodial Documents Regarding Data Sharing**

Plaintiffs' Proposed Final Judgment would obligate Google to provide qualified competitors with access to user-side data and ads data "while safeguarding personal privacy and security."  ECF No. 1062-1, §§ VI.C, E.  Given those provisions, Google expects that one point of dispute will be what steps are needed to "safeguard[] personal privacy and security" when providing data to third parties.

Request Nos. 12 and 13 of Google's Second Subpoena focus directly on this question.  Request No. 12 seeks "[d]ocuments sufficient to show Microsoft's investment in privacy and security, from any time from May 6, 2022, to present . . . ," and Request No. 13 seeks "[d]ocuments sufficient to show any safeguards that Microsoft implements to protect personal privacy and security when entering into agreements with third parties that provide for the disclosure of third-party proprietary data, user data and/or ads data."  These requests thus probe how one of Google's chief competitors handles issues of privacy and security.  Google has some

---

[15] *See* Kelvin Chan, *Microsoft Quits OpenAI Board Seat As Antitrust Scrutiny Of Artificial Intelligence Pacts Intensifies*, ASSOCIATED PRESS (July 10, 2024), *available at* https://apnews.com/article/microsoft-openai-artificial-intelligence-b5b91accc60ada508278fc1152ced186.

concern that Plaintiffs' proposed remedies could curtail industry-standard steps to protect privacy and security. As with investments in other companies, *see supra*, Microsoft's practices with respect to privacy and security will shed light on what practices qualify as ordinary commercial practices. *See New York*, 224 F. Supp. 2d at 133. Google is therefore entitled to take discovery on the subject.

*          *          *

Google therefore respectfully requests that the Court direct Microsoft to:

1. For Request Nos. 2, 4, 5, 7, 15, and 16 in Google's Second Subpoena, apply Google's proposed search strings to the custodial files of the Microsoft custodians Google has identified for each request;

2. For Request Nos. 1, 2, 4, 5, and 38 in Google's First Subpoena, provide to Google by January 20, 2025, the search strings, custodians, and date ranges it has employed in its custodial searches to date, begin production of responsive documents–including any documents responsive to Google's Second Subpoena;

3. For Request Nos. 9, 10, 12, 13, and 19 in Google's Second Subpoena, produce documents from May 6, 2022 onwards sufficient to show the information sought by each request; and

4. Make rolling productions to conclude by Friday, January 31, 2025.

## II.   MICROSOFT'S POSITION STATEMENT

Microsoft remains committed to complying with the various Parties' subpoenas where those subpoenas seek material relevant to the remedies phase of the above-caption action ("Action"). However, despite Microsoft's cooperation, Google continues to push for increasingly burdensome discovery, much of which has no relevance to these proceedings. This

is most recently evidenced by Google's December 20, 2024 subpoena (the "Second Subpoena"), which demands extensive documentation on generative AI products (untethered to search and search advertising), current and future AI developments, and business and privacy strategies, regardless of their connection to search. Not only is much of this material irrelevant to the remedies phase, but it is some of the most highly confidential and sensitive information within Microsoft.

Further, in its Statement above, Google raises numerous unripe "disputes" of which Microsoft was not previously on notice. Specifically, on January 13, 2025, Google counsel informed Microsoft that it intended to raise three topics in its Statement: "1. Deadline for Microsoft's compliance with Google's custodial ESI requests; 2. Microsoft's refusal to produce documents relating to its interests in search and AI companies (i.e., RFP Nos. 9, 10, and 19 of Google's second subpoena); 3. Microsoft's refusal to produce documents relating to Microsoft's privacy and security measures (i.e., Requests 12 and 13 of Google's second subpoena)." *See* Ex. E. But, in an apparent attempt to game the Joint Status Report process, Google raised numerous additional "disputes," disclosed for the first time in its Statement shared shortly before filing. These issues are not ripe and Microsoft reserves the right to respond to those additional disputes. Microsoft addresses the ripe disputes previously identified by Google in turn below.

### A. Deadline for Compliance with Google's Custodial ESI Requests

During Google and Microsoft's January 13, 2025 meet and confer, Google requested that Microsoft provide a date by which it expected to complete its productions in response to both Google's October 22, 2024 subpoena (the "First Subpoena") and the Second Subpoena.

Microsoft agrees to substantially complete its productions responding to the First Subpoena by January 31, 2025.

With respect to the Second Subpoena, which was served immediately before the winter holidays, Microsoft and Google have just begun negotiations regarding the scope of Google's Requests.[16]  Notably, several of the Requests seek custodial documents from Microsoft employees regarding vague and unbounded topics (e.g., "All documents of the following [seven] current and former Microsoft employees, as well as the documents of their direct report(s) and immediate supervisor, relating to [a] 'Search Access Points, distribution, and barriers to entry and expansion,' [b] 'data sharing' and [c] 'generative AI's relationship with Search Access Points[.]'").  While Microsoft is in the process of testing Google's proposed search terms relevant to the Second Subpoena, the search terms relevant to the Second Subpoena will likely require additional negotiation before a responsiveness and privilege review can begin.  Given these circumstances, it is impractical for Microsoft to complete its custodial productions in response to the Second Subpoena by January 31, 2025.  While it is difficult to provide a date certain for substantial completion given the early stages of our negotiations with Google,

---

[16] Microsoft timely served its responses and objections to Google's Second Subpoena on January 8, 2025, and met and conferred with Google on January 9 and January 13.

Microsoft intends to target February 14, 2025 in order to allow Google two weeks to take depositions of Microsoft employees.[17]

### B. Microsoft's Objections to Request Nos. 9, 10, and 19 in the Second Subpoena

In the Second Subpoena, Google seeks improper discovery into Microsoft's relationship with other third parties.

#### 1. *Second Request Nos. 9 and 10*

Google's Second Requests 9 and 10 are set forth verbatim below:

9. Documents sufficient to show the extent of Microsoft's investments, holdings, or interests in any Competitor, any company that controls a Search Access Point or an AI Product, or in any AI Products or any technologies that are potential entrants into the GSE or Search Text Ads markets or reasonably anticipated competitive threats to GSEs. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.

10. To the extent not produced in response to Request No. 9, documents sufficient to identify any joint venture, partnership, or collaboration, between Microsoft and (a) any company that competes with Google in the GSE or Search Text Ads markets or (b) any company that controls a Search Access Point or query-based AI Product. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.

Critically, Google has failed to articulate any legitimate reason why the broad swaths of information sought by these requests are relevant to the issues being litigated here. Second Requests 9 and 10 go far beyond those categories of information that may be relevant to this Action. These requests seek broad categories of material, including documents related to Microsoft's investments, holdings, or interests, as well as information on any joint ventures, partnerships, or collaborations between Microsoft and various entities. Although Google

---

[17] This date assumes that Microsoft is not required to comply with the full scope of the Second Subpoena. Should the Court order Microsoft to produce all requested documents in the Second Subpoena, the timeline for completion will need to be reassessed.

references Section 4(f) of Plaintiffs' Proposed Final Judgment, which would mandate the divestiture of interests in potential competitors, this does not justify Google's expansive inquiry into the inner dealings—many of which are highly sensitive—of Microsoft's investments and relationships. Microsoft's activities in these areas are not at issue, and the broad scope of Google's requests goes beyond the remedies being sought in this Action.

Microsoft has already produced its agreements with OpenAI, Perplexity AI, and Inflection AI to the extent those agreements relate to: (1) the integration of AI technologies owned by these companies into Microsoft Bing or Microsoft Copilot; (2) the provision of search services or search advertising services to these companies; and (3) the provision of search-related data to these companies. Additionally, Microsoft intends to produce (or already produced during the liability phase of this action), *inter alia*, its syndication and distribution agreements with GSE providers, such as Yahoo! and DuckDuckGo, and browser providers, like Apple and Mozilla. Google is now requesting information on every investment and relationship with these entities, as well as, as an unknown number of other "potential entrants" and "reasonably anticipated competitive threats," regardless of whether these investments or relationships have any connection to the general search and general search text advertising markets at issue in this Action.

Further, Second Requests 9 and 10 are unduly burdensome because they are impossible to comply with: Microsoft does not maintain a list of information in the ordinary course detailing all products and services offered by each company in which Microsoft has a current minority interest. Additionally, Microsoft has numerous business lines that are disconnected from search and search text advertising, including cloud services (e.g., Azure), productivity products (e.g., Microsoft Office), business tools (e.g., Power BI), and gaming (e.g., Xbox), among others.

Partnerships, collaborations, and investments related to these business lines are expressly encompassed within Google's request for "*any* joint venture, partnership, or collaboration," despite their irrelevance to the issues being litigated during the remedies phase of this Action.

### 2. Second Request No. 19

Google's Second Request 19 is set forth verbatim below:

19. All documents regarding Microsoft's relinquishment of a seat on OpenAI's board. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.

Microsoft did not have a "seat on OpenAI's board" but understands Second Request 19 to seek improper discovery regarding Microsoft employee Dee Templeton resigning her position as a non-voting board observer, in July 2024. But that is irrelevant to the issues being litigated during the remedies phase of this Action. This Request has no direct or coherent connection to Plaintiffs' Proposed Final Judgment or relevance to the remedies being sought in this Action.

### C. Microsoft's Objections to Request Nos. 12 and 13 in the Second Subpoena

Google's Second Requests 12 and 13 are set forth verbatim below:

12. Documents sufficient to show Microsoft's investment in privacy and security, from any time from May 6, 2022, to present, including the number of employees on the Microsoft Privacy Team and employees reporting to the Microsoft Data Protection Officer, the amount Microsoft invests in privacy-enhancing technologies such as differential privacy and k-anonymity, and the amount Microsoft invests in the security of storage for queries such as Container Native Storage or Cloud Native Storage.

13. Documents sufficient to show any safeguards that Microsoft implements to protect personal privacy and security when entering into agreements with third parties that provide for the disclosure of third-party proprietary data, user data and/or ads data. This request seeks all responsive, non-privileged documents in Microsoft's possession, custody, or control created, altered, transmitted, or received at any time from May 6, 2022, to present.

Again, Second Requests 12 and 13 are entirely unrelated to the issues being litigated during the remedies phase of this Action. Microsoft is committed to privacy across its many

diverse business lines, many of which have no connection to search or search text advertising. Additionally, Microsoft has produced, or will produce, content licensing agreements, syndication agreements, distribution agreements, and partnership agreements with various third parties, many of these agreements contain privacy and data security provisions.

Dated: January 14, 2025                             Respectfully submitted,

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com
*Counsel for Defendant Google LLC*

By: */s/ Julia Chapman*
Julia Chapman *(pro hac vice)*
**DECHERT LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-2060
Fax: (215) 994-2222
julia.chapman@dechert.com

John (Jay) Jurata, Jr. (DC Bar No. 478602)
**DECHERT LLP**
1900 K Street, NW
Washington, DC 20006
Tel.: (202) 261-3300
Fax: (202) 261-3333
jay.jurata@dechert.com

Russell P. Cohen (*pro hac vice*)
**DECHERT LLP**
45 Fremont Street, 26th Floor
San Francisco, CA 94105
Tel.: (415) 262-4506
Fax: (415) 262-4555
Russ.Cohen@dechert.com

Amy Ray (DC Bar No. 489086)
**ORRICK, HERRINGTON, & SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 239-8698
Fax: (202) 339-8500
amyray@orrick.com

*Counsel for Third Party Microsoft Corporation*