IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                                Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                                Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>                                Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                                Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**JOINT STATUS REPORT OF GOOGLE AND PERPLEXITY**

Pursuant to the Court's guidance at the January 17, 2025 status conference and the Court's January 20, 2025 Order, *see* ECF No. 1144, Google and Perplexity (collectively, the "Companies") submit the following statements with respect to Perplexity's compliance with Google's subpoenas.

    **I.**     **GOOGLE'S POSITION STATEMENT**

In the prior JSR submitted in advance of the last status conference, Google and Perplexity had two outstanding disputes. *First*, the Companies disputed whether Perplexity's three ESI custodians should include (as Google suggested) Perplexity's CEO, Mr. Aravind Srinivas, or (as

1

Perplexity suggested) Perplexity's Chief Technology Officer, Mr. Denis Yarats. *Second*, the Companies disputed what search terms Perplexity should employ to locate potentially responsive ESI. Regarding the latter issue, Google had proposed a set of search strings for Perplexity to use on Google's requested custodians; Perplexity tested those search terms (albeit against Perplexity's preferred custodians) and indicated that they yielded 51,811 documents. Perplexity had not proposed—and still has not proposed—its own comprehensive set of search strings.

On Friday evening, following the status conference, Perplexity tested the 51,811 documents collected to see how many were emails sent to or by Mr. Srinivas. Perplexity reported that there were 7,585 such emails. Based on that representation, Google is no longer pursuing the inclusion of Mr. Srivinas as a separate custodian, and thus, the first dispute described above is resolved.

Google believes that the most efficient way forward would be for Perplexity simply to begin reviewing the 51,811 documents that it has collected, and it informed Perplexity as much on Sunday evening. Google also offered Perplexity a potential alternative: it simultaneously sent Perplexity an alternate, narrower set of search strings to test if it so chose. Google made clear, however, that it could not agree to let Perplexity use those alternate strings unless Perplexity could provide by Monday evening at 8:00 pm EST (1) a de-duplicated hit count for them (to confirm that the hit count was not unduly low), (2) the number of unique emails contained in the set sent by or to Mr. Srinivas (consistent with the discussion, *supra*), and (3) confirmation that use of the alternate search strings would not delay production any further than it has already been delayed. To date, Perplexity has produced no custodial ESI whatsoever on a subpoena served in October.

In response, Perplexity refused to run either set of search strings and, instead, demanded

that Google devote still more time to negotiating search strings. Under Perplexity's approach, the companies would spend additional time negotiating search terms designed to yield hits of somewhere between 10,000 and 15,000 documents—i.e., upwards an 81% reduction from the set already collected. Perplexity has provided no basis for this arbitrary numerical threshold.

Perplexity's putative proposal is really no different from the position that it took in last week's briefing. But the fundamental problem with that position is that, if Perplexity wanted to negotiate for search strings that garnered a particular number of hits, it could have (and should have) crafted its own proposed search terms weeks ago or at least after the Court scheduled today's JSR. Perplexity did not, and Google respectfully submits that the time has come (and then some) for Perplexity to begin reviewing and producing the documents that *it has already collected.*

As far as Google can tell, Perplexity's sole argument against reviewing the 51,811 documents already collected is burden. If so, there are at least two problems with that. *First*, it is hardly clear that 51,811 documents is an inappropriate number in the context of this litigation. Multiple Perplexity employees have spoken to Plaintiffs about this litigation. At least one intends to testify on Plaintiffs' behalf at the remedies hearing. Unlike other third parties, the liability discovery record contains zero Perplexity documents. And, as the Court knows well, third parties in this litigation have routinely reviewed and produced far, far larger volumes of documents than the set Perplexity now refuses to review.

*Second*, Perplexity has no one but itself to blame for the present circumstances. Google served its first subpoena on Perplexity on October 25, 2025.[1] *Perplexity has never proposed*

---

[1] The Court may recall that Perplexity informed the Court that "from what [it] can tell, the subpoena was not properly served." Hr'g Tr., at 45 (Nov. 26, 2024). Google inquired of Perplexity following the hearing, but Perplexity could not substantiate that representation. To the contrary, the records of the California Secretary of State confirm that the entity Google served (CT Corporation) is Perplexity's

*search strings for responding to that subpoena*.  Perplexity did not provide Google a hit count for Google's proposed strings until last week and, even then, artificially inflated them by double-counting duplicate documents.  If Perplexity wished to propose its own search string, the time to have done so would have been many weeks ago.  At this point, the "number one priority . . . is to get Google the information it needs and do so quickly." Hr'g Tr., 28 (Jan. 17, 2025).  In that spirit, Google respectfully requests that the Court direct Perplexity to begin reviewing the 51,811 documents and to make rolling productions to conclude by Friday, January 31, 2025.

## II. PERPLEXITY'S POSITION STATEMENT

There is only one vaguely defined dispute remaining between Google and Perplexity as to Google's ESI demands; it relates to search terms and hit counts.  Perplexity previously requested that Google provide narrowed search terms with the goal of reaching a reasonably sized document review universe.  Google provided narrowed search terms on Sunday afternoon, demanding Perplexity provide detailed hit count information by 5pm PT the next day—Martin Luther King Jr. Day.  As counsel for Perplexity has explained, the discovery vendor capable of providing that information was closed over the holiday weekend.  Perplexity has committed to running Google's proposed terms *today* and to working with Google with the goal of reaching agreement on final search terms *today* that would produce a reasonable document review universe of 20,000 documents or fewer, so that Perplexity can complete its ESI production within the next three weeks.  Google has insisted on submitting this "dispute" to the Court.[2]

---

registered agent.

[2] Perplexity is unclear as to what Google believes the current "dispute" is between the Companies, other than the fact that the Companies need to agree to final search terms.  To the extent Google plans to re-raise past disputes related to either ESI custodians or hit counts, Perplexity incorporates by reference its portion of the Companies' previous joint submission.  *See* Dkt. No. 1127.

A.     **Recent Developments**

On Friday, January 17, 2025, the Court briefly heard argument regarding the dispute between Google and Perplexity as to the following issues:

(1) Whether Perplexity was required to collect and produce custodial ESI from its Chief Executive Officer, instead of its Chief Technology Officer, where Perplexity is already producing custodial ESI from its Chief Strategy Officer and Chief Business Officer; and

(2) Whether Google should be required to continue meeting and conferring with Perplexity to narrow its search terms until they produce a reasonable review universe.

During the January 17 hearing, the Court emphasized that the subject matter of the ESI discovery Google sought was more important than who it came from and questioned whether Perplexity's Chief Executive Officer had any unique information in his possession that would not otherwise be covered by Perplexity's production of custodial email from its Chief Technology Officer, Chief Strategy Officer, and Chief Business Officer. The Court then advised the Parties to attempt to resolve their dispute considering this guidance, and to provide a Joint Status Report on their progress by Tuesday, January 21, 2025.

Following the hearing, on Friday evening counsel for Perplexity sought to allay Google's concerns regarding whether Perplexity's proposed custodial collections would capture any potentially unique information in Perplexity's CEO's possession. Specifically, Perplexity's counsel shared information showing that approximately 15% of the documents hitting on existing versions of Google's proposed search terms reflected email sent directly to or directly from Perplexity CEO Aravind Srinivas. This high percentage of email to and from Mr. Srinivas makes perfect sense, given that Perplexity's custodial collection consisted of three other high-

5

level C-suite executives.

At the same time, Perplexity also offered to work together to iterate on search terms with Google on Tuesday, January 21, with the goal of arriving at terms that produced a reasonable document review universe of 20,000 documents or fewer.

On Sunday, January 19, counsel for Google responded to Perplexity's offer. While Google superficially reiterated its original demand that Perplexity produce custodial ESI from its CEO and review over 50,000 documents, it also stated that Google "would not object in principle if Perplexity were to test the somewhat revised search terms that we've set forth below against Mr. Yarats', Mr. Ho's, and Mr. Shevelenko's files."  Google then provided narrowed versions of its terms, designed to reduce the total document review universe.  However, Google conditioned this proposed compromise on Perplexity providing information regarding hit counts and the percentage of those counts that included Perplexity's CEO by no later than 5pm PT the next day—Martin Luther King Jr. Day.

On the morning of Monday, January 20—Martin Luther King Jr. Day, counsel for Perplexity agreed to Google's outlined compromise, but informed Google that it could not provide search hits and related information on a holiday because its discovery vendor was closed and not able to process requests on a holiday.  Counsel for Perplexity committed to providing Google with the requested information as soon as possible on Tuesday, January 21, and again committed to working with Google to iterate on search terms with the goal of arriving at a reasonable document review universe and to agree on final search terms by the end of the day on Tuesday, January 21.  Finally, Perplexity also committed to being able to substantially complete its ESI production—based on a 20,000 document or fewer review universe—by February 7.

On Monday evening, counsel for Google rejected this offer in lieu of again submitting

this dispute to the Court. *See* Ex. A.

### B. Perplexity's Proposed Path Forward

Perplexity's discovery vendor opens this morning, and Perplexity intends to provide Google with its requested hit count information and to work with Google with the goal of arriving at a reasonable document review universe of 20,000 documents[3] or fewer today, which will allow Perplexity to provide Google with the discovery it seeks well in advance of the close of fact discovery.

Dated: January 21, 2025                                  Respectfully submitted,

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower

---

[3] Google itself proposed a document review of this size on January 16. *See* Ex. A.

800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

By: */s/ Zachary C. Flood*
    Zachary C. Flood
    zflood@lewisllewellyn.com
    Lewis & Llewellyn LLP
    601 Montgomery Street, Suite 2000
    San Francisco, CA 94111
    (628) 300-1525

*Counsel for Nonparty Perplexity AI, Inc.*