# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 20-cv-3010 (APM) |
| GOOGLE LLC, | ) ) ) | |
| Defendant. | ) ) | |

|  |  |  |
|---|---|---|
| STATE OF COLORADO, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 20-cv-3715 (APM) |
| GOOGLE LLC, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On December 23, 2024, Apple Inc. moved to intervene as a defendant for the limited purpose of participating in the remedial phase of this litigation. Apple's Mot. for Limited Intervention, ECF No. 1111 [hereinafter Apple's Mem.]. Apple seeks intervention as of right or, alternatively, permissive intervention to protect its "property interest in its existing contract with Google and in its ability to enter into future contracts with Google." *Id.* at 6. The United States and Colorado Plaintiff States opposed Apple's motion; Google took no position on it. Apple's motion ripened on January 15, 2025, and the court heard argument two days later. *See* Tr. of Jan. 17, 2025 Status Conf. Proc., ECF No. 1147 [hereinafter Jan. 17, 2025 Tr.], at 30–77.

Because Apple's motion is untimely, the court must deny it. The court, however, will permit Apple to participate as *amicus curiae* and file post-hearing submissions to ensure consideration of Apple's views when crafting the remedial decree.

### I.

Federal Rule of Civil Procedure 24 governs intervention as of right and permissive intervention, both of which require a timely motion. *See NAACP v. New York*, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied."); *United States v. Brit. Am. Tobacco Australia Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (describing timeliness as a "threshold" requirement under Rule 24).

The timeliness of a motion to intervene is committed to the "sound discretion" of the district court and must be "judged in consideration of all the circumstances." *NAACP*, 413 U.S. at 366; *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)). When making this determination, the D.C. Circuit has instructed courts to "especially weigh[]" four factors: (1) the "time elapsed since the inception of the suit"; (2) "the purpose for which intervention is sought"; (3) "the need for intervention as a means of preserving the applicant's rights"; and (4) "the probability of prejudice to those already parties in the case." *Smoke*, 252 F.3d at 471 (quoting *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). As discussed below, all four factors weigh against finding that Apple timely sought to intervene in this case.

## II.

A.     **Time Elapsed**

At the threshold, the parties dispute the point from which timeliness is measured. Apple contends that the clock starts ticking "when the 'potential inadequacy of representation [comes] into existence.'" Apple's Mem. at 13 (alteration in original) (quoting *Smoke*, 252 F.3d at 471, and citing *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014)). Applying that standard here, Apple asserts that the relevant starting point is when Plaintiffs filed their Proposed Final Judgment ("PFJ") on November 20, 2024. Apple's Mem. at 14.

Plaintiffs frame the inquiry slightly differently. In their view, "[t]imeliness is measured from when the prospective intervenor knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (internal quotation marks and citation omitted); Pls.' Mem. in Opp'n to Apple's Mot., ECF No. 1121 [hereinafter Pls.' Opp'n], at 6–7. Under that standard, Plaintiffs argue, Apple's motion comes four years too late, because Apple was on notice from the outset of this case, in late 2020, that its contractual rights were implicated. Pls.' Opp'n at 6.

The D.C. Circuit recently articulated a third variation. Quoting Supreme Court precedent, it said that "'[t]he most important circumstance relating to timeliness' is whether a party 'sought to intervene as soon as it became clear' that its 'interests would no longer be protected by the parties in the case.'" *Campaign Legal Ctr. v. FEC*, 68 F.4th 607, 610 (D.C. Cir. 2023) (quoting *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (2022)); *see id.* at 610 (applying *Smoke*'s "potential inadequacy" standard to distinguish the instant action).

Regardless of how the timeliness inquiry is framed, the court finds that Apple unduly delayed filing its motion.

3

*Rights Directly Affected.*  Apple does not dispute that it knew or should have known since this suit's inception that its contractual rights would be directly affected.  *See* Reply in Supp. of Apple's Mot., ECF No. 1135 [hereinafter Apple's Reply], at 3–7 (disputing only the proper standard for measuring timeliness).  Nor could it.  As Apple itself acknowledges, exclusive search distribution agreements, including Apple's Information Services Agreement ("ISA") with Google, are at the heart of this antitrust action, and have been since the beginning.  *See* Apple's Mem. at 7 (asserting a protectable property interest in "its contractual rights under the ISA and its right to enter future contracts with Google"); *id.* at 3 (recognizing that "Plaintiffs alleged [in their complaints] that Google engaged in anticompetitive conduct via exclusionary agreements to 'secure default status for its general search engine'").  Furthermore, Plaintiffs' complaints made clear the risks this litigation posed for Apple.  Plaintiffs indicated that they might seek structural remedies and injunctive relief to put an end to Google's anticompetitive conduct—relief that would limit Apple's ability to contract with Google now and in the future.  *See* United States Compl., Case No. 20-cv-3010, ECF No. 1, ¶ 194 (requesting that the court "[e]nter structural relief" and "[e]njoin Google from continuing to engage in the anticompetitive practices described herein"); Colo. Pl. States Compl., Case No. 20-cv-3715, ECF No. 3, ¶ 233 (seeking "structural divestitures" as well as relief addressing harms from "agreements that limit the distribution to and/or use of potential or competitive general search engines by consumers").

Using the inception of this suit in October 2020 as the relevant starting point, Apple waited over four years before moving to intervene.  Such an extensive delay weighs heavily against timeliness.

*Potential Inadequacy Developed.*  Apple responds that its motion would have been denied had it moved to intervene when this case was first filed (and its interests were first implicated),

because at that point its interests were still adequately represented by Google. Apple's Reply at 4–5. According to Apple, the divergence in interests did not arise until the remedial stage, when Plaintiffs' PFJ revealed that they might seek remedies that "go well beyond the ISA" and "exceed the bounds of this Court's liability decision" "by requiring a major structural remedy—the divestiture of Google Chrome—and specifically targeting Google's contractual relationship with Apple."[1] Apple's Mem. at 1, 4. More specifically, Apple argues that Plaintiffs' PFJ—in "prohibit[ing] Apple and Google from agreeing to even standard-fare revenue share agreements that Apple maintains with every other [general search engine] provider . . . for 10 years" and "threat[ening] to reshape Google's business in other ways," including "the spinoff of its Chrome browser"—may reduce Google's incentive to "defend[] the right for Apple to receive commercial value for distributing third-party search to its users" and prompt Google to focus its efforts on remedies "that may more directly impact its own operations." *Id.* at 14. In short, Google might stop paying Apple, and Google might not "offer a full-throated defense" of the ISA or Apple's right to pursue future agreements with Google. *Id.*

The problem with Apple's argument is that these potential inadequacies materialized a full six weeks earlier, when Plaintiffs filed their Proposed Remedy Framework on October 8, 2024. Pls.' Proposed Remedy Framework, ECF No. 1052. In that document, Plaintiffs identified four broad categories of remedies, one of which—"search distribution and revenue sharing"—encompassed "remedies that would, among other things, limit or prohibit default agreements, preinstallation agreements, and other revenue-sharing arrangements related to search and search-related products[.]" *Id.* at 4–6. Plaintiffs also stated that they were considering "structural remedies that would prevent Google from using products such as Chrome, Play, and Android to

---

[1] The parties' Revised Proposed Final Judgments, which will be the subject of the evidentiary hearing scheduled to begin on April 22, 2025, are due by March 7, 2025. Scheduling Order, ECF No. 1043, at 2.

5

advantage Google search and Google search-related products and features," and observed that "Google's longstanding control of the Chrome browser, with its preinstalled Google search default, significantly narrows the available channels of distribution and thus disincentivizes the emergence of new competition." *Id.* at 6 (internal quotation marks and citation omitted).

Citing Plaintiffs' framework, news outlets widely reported that the Justice Department was weighing a breakup of Google.[2] *See NAACP*, 413 U.S. at 366 (considering "an informative February article in the New York Times discussing the controversial aspect of the suit" when assessing timeliness). Google itself interpreted Plaintiffs' framework that way.[3] Thus, Plaintiffs' Proposed Remedy Framework laid bare the very cleavage that Apple claims is the reason Google can no longer adequately represent its interests in this case. Yet Apple waited 76 days—until December 23, 2024—to seek intervention.

Seventy-six days is lengthy, even under Apple's own cases granting intervention. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 280 (2022) (motion filed two days after learning that the existing party would not continue to defend the challenged law); *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (motion filed two days after the district court clarified the effect of its ruling); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390, 394 (1977) (motion filed 18 days after entry of final judgment and learning that the existing parties did not intend to file an appeal); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904,

---

[2] *See, e.g.*, Eva Dou & Aaron Schaffer, *Justice Dept. Sees Google Breakup as a Possible Remedy in Antitrust Case*, Wash. Post (Oct. 8, 2024), https://www.washingtonpost.com/technology/2024/10/08/justice-department-google-search-monopoly-remedies-antitrust/; Dave Michaels & Jan Wolfe, *Breaking Up Is Hard to Do: Antitrust Officials Weigh Splitting Google, Others*, Wall St. J. (Oct. 8, 2024), https://www.wsj.com/tech/breaking-up-is-hard-to-do-antitrust-officials-weigh-splitting-google-others-712bba46.

[3] *See* Lee-Anne Mulholland, *DOJ's Radical and Sweeping Proposals Risk Hurting Consumers, Businesses, and Developers*, The Keyword (Oct. 9, 2024), https://blog.google/outreach-initiatives/public-policy/doj-search-remedies-framework/ (Google's Vice President of Regulatory Affairs stating that Plaintiffs' proposals "go far beyond the specific legal issues in this case" and listing "[s]plitting off Chrome or Android" as one "of the changes the DOJ is considering").

907 (D.C. Cir. 1977) (motions filed within 23 days of receiving notice of the settlement agreement); *Roeder*, 333 F.3d at 233 (motion filed "less than thirty days" after receiving notice of the potential conflict); *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (motion filed "less than one month" after petition to confirm the stipulated award); *Ctr. for Food Safety v. Connor*, No. 8-cv-484 (JSW), 2009 WL 4724033, at *2 (N.D. Cal. Dec. 2, 2009) (motion filed "less than one month" after decision on the parties' cross-motions for summary judgment and before the remedies portion had begun); *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 950 (3d Cir. 2012) (motions filed after receiving notice of the settlement agreement, which had been preliminarily approved 67 days before the second motion was filed).

Apple's delay is even more pronounced when "cast against the backdrop of" this particular case. *Moten v. Bricklayers, Masons & Plasterers, Int'l Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976). Seventy-six days comprises nearly half (49%) of the remedies-phase fact discovery period, which commenced on September 26, 2024, and will end on February 28, 2025. Scheduling Order, ECF No. 1043 [hereinafter Scheduling Order], at 1–2. And it amounts to nearly one-third (31%) of the remedies phase as a whole. *Id.* at 1 (setting September 26, 2024 start date for fact discovery); Amended Scheduling Order, ECF No. 1145 [hereinafter Am. Scheduling Order], at 1 (setting May 30, 2025 end date for closing arguments).

Furthermore, this court has been clear from the first status conference following the liability decision, held on September 6, 2024, that the remedies phase would need to proceed on a compressed schedule. *See* Tr. of Sept. 6, 2024 Status Conf. Proc., ECF No. 1040, at 6:14–7:3 (stating that the remedies decision must be issued by early August 2025, to preserve the court's

7

institutional knowledge about this case); *id.* at 29:6-18 (stating that closing arguments must be held no later than June 1, 2025, to give the court enough time to write its opinion).

The court's September 18, 2024 Scheduling Order reflected that imperative. The court allotted eight months for the entire remedies phase, from late September 2024 to late May 2025, based on the parties' representations, the court's own schedule, and the public's interest in prompt resolution of this matter. That tight timetable necessarily left little breathing room between deadlines (a fact the parties do not hesitate to mention when raising discovery disputes with the court). And as the court's order clearly indicated, those deadlines were unlikely to move. *See* Scheduling Order at 3 (stating that "[m]otions for extension of time are discouraged").

Since then, the court has told parties and non-parties alike that "we, frankly, just don't have the luxury of [ ] time here" and has ordered them to produce documents on an expedited basis. Tr. of Dec. 13, 2024 Status Conf. Proc., ECF No. 1096, at 13:4-20; *see also* Tr. of Oct. 24, 2024 Status Conf. Proc., ECF No. 1060, at 23:2-6 (considering the "fairly compressed time period" for discovery when resolving discovery disputes). The court has also informed Plaintiffs that, "if there's going to be a reevaluation of the remedies that are being requested" by the new administration, "it needs to be done quickly and promptly; the trial is not going to move for that purpose[.]" Tr. of Nov. 26, 2024 Status Conf. Proc., ECF No. 1081 [hereinafter Nov. 26, 2024 Tr.], at 76:21–77:3.

Despite the court's repeated indications that time is of the essence, Apple did not act expeditiously. As noted, it waited 76 days after Plaintiffs filed their remedies framework before seeking intervention on the eve of Christmas Eve. And when it finally did move to intervene, it did not seek expedited resolution of its motion. Nor did it oppose Plaintiffs' request for more time to file their response given "the multiple intervening federal holidays between Apple's

8

motion and the deadline for Plaintiffs' response." Consent Mot. for Extension of Time, ECF No. 1120, at 1.

To sum up: Apple knew (or should have known) from the outset of this litigation, in late 2020, that this suit would directly affect its contractual rights. Apple knew (or should have known) since October 8, 2024, when Plaintiffs filed their Proposed Remedy Framework, that the remedies sought could be expansive in scope and, consequently, that Google may not be capable of adequately defending Apple's interests during the remedial phase of this litigation. And Apple knew (or should have known) that waiting two-and-a-half months to intervene in a proceeding scheduled to last just eight months altogether would constitute a significant delay. The time elapsed therefore weighs against the timeliness of Apple's motion.

### B. Purpose of Intervention

Apple states that its purpose in intervening is "to ensure that this Court has the complete record required to issue a fair and effective remedial decree." Apple's Mem. at 2; *accord* Jan. 17, 2025 Tr. at 50:11-13 (Apple's counsel affirming that Apple is "really intervening because we think Apple has information that is going to be of service to the Court in reaching a proper remedy"). More specifically, Apple seeks intervention on a "limited" basis "to present only two or three witnesses, engage in limited cross-examination at the remedies proceeding to the extent other witnesses address remedies relating to Apple, and participate alongside Google in briefing and arguing issues before the Court insofar as they impact Apple." Apple's Mem. at 15. Apple's evidence and arguments would cover at least three topics: (1) Apple's intentions regarding general search; (2) the proposed remedies' effects on Apple's commercial relationship with Google and on Apple's customers; and (3) the rapidly evolving artificial intelligence landscape.

*Id.* at 18–19 (leaving open the possibility that Apple would "respond to any additional points that may arise during the trial of the remedies phase and directly impact Apple's interests").

During oral argument, Apple elaborated on the scope of its intervention. Regarding discovery, Apple stated that it "would not be issuing written discovery requests," but "would seek to attend depositions going forward and potentially ask limited questions at the end of the depositions[.]" Jan. 17, 2025 Tr. at 51:3-8. As to witnesses, Apple clarified that it intended to call three in total, including an expert, which would require adding "a couple of additional days" to the evidentiary hearing. *Id.* at 51:9–52:5. Finally, with respect to post-hearing submissions, Apple expressed "definite[] interest[] in proposing a remedy," in addition to filing a post-hearing brief and participating in closing arguments (as stated in its motion). *Id.* at 52:10-14; Apple's Mem. at 15. Apple further represented that it is "not interested in weighing in on the entire breadth of the proposed final judgments" submitted by the parties, but did not specify which remedies it believes would affect Apple's interests and, therefore, which remedies it intends to weigh in on. Jan. 17, 2025 Tr. at 52:14-19.

As a preliminary matter, the court doubts that the scope of Apple's intervention is truly as circumscribed as it believes. Apple insists that its "involvement in the proceedings" would be confined "to the extent the remedy affects Apple," Apple's Reply at 2, but that hardly imposes a meaningful limitation. *See United States v. Heinz*, 790 F.3d 365, 367 (2d Cir. 2015) ("The verb 'to affect' expresses a broad and open-ended range of influences." (alteration and citation omitted)). Is the court to defer to Apple's own judgment as to which witnesses' testimony or PFJ terms "affect" Apple? Or is the court to adjudicate that question each time Apple wishes to participate?

In any event, Apple, by its own telling, seeks to present "evidence and argument." Apple's Mem. at 19; *accord id.* at 1 ("Apple must be able to present facts and arguments concerning [Plaintiffs'] PFJ's actual effects on competition[.]"). That is the very purpose the D.C. Circuit has suggested would render intervention untimely where, as here, the movant "permitted significant time to elapse" before filing its motion. *United States v. AT&T*, 642 F.2d 1285, 1294–95 (D.C. Cir. 1980) (stating that "intervention would be untimely" "[h]ad [the putative intervenor] sought to intervene for the purpose of presenting evidence or argument," rather than "for the limited purpose of taking an appeal").

What's more, Apple has not established that the information it wishes to present is any different than that the court already considered—and largely credited—during the liability phase. To describe the content of its proposed "testimony, documents, and briefing," Apple submitted a declaration from Eddy Cue, Apple's Senior Vice President of Services. Apple's Mem. at 18–19; Decl. of Eddy Cue, ECF No. 1111-1, ¶ 1; *see also* Jan. 17, 2025 Tr. at 51:16 (Apple's counsel confirming that Apple intends to call Cue as a witness if granted intervention). Cue was one of two Apple witnesses to testify at the liability trial (over Apple's vehement opposition), and he is currently included on Google's witness list for the remedies hearing. Apple's Mem. at 4; Jan. 17, 2025 Tr. at 44:18-19; *see* Apple's Mot. to Quash Trial Subpoenas, ECF No. 643, at 3 ("The parties should not be permitted to require Apple's executives or this Court to undergo the burden presented by live testimony in this case when their deposition testimony could be reviewed by the Court *in camera*.").

As the court observed during oral argument, however, the statements in Cue's declaration "tracked perfectly with" Cue's testimony at trial. Jan. 17, 2025 Tr. at 53:16-21. Based in part on his testimony, and the testimony of one other Apple witness, the court found that Apple has

11

business reasons beyond the loss of revenue share to stay out of the general search services market—the very fact Apple seeks to emphasize at the remedial stage. Redacted Mem. Op., ECF No. 1033 [hereinafter Mem. Op.], at 104, 241–42; *see* Apple's Mem. at 1 (asserting that "Apple must be able to present facts and arguments concerning [Plaintiffs'] PFJ's actual effects on competition," including "evidence dispelling the PFJ's erroneous assumption that, absent the ISA, Apple will enter the general search market"); Apple's Reply at 2 (arguing that intervention is warranted because "only Apple can explain that it has no intention of entering the general search market, regardless of the injunction's terms"); Jan. 17, 2025 Tr. at 57:6-12 (Apple's counsel stating that the court's remedies decision "presumably will depend, in not insignificant part, on assumptions about Apple's own behavior with respect to how the remedy would affect its incentives to enter the search market or not into the future," and stressing that "[o]nly Apple is in a position to ensure that the record is complete on that").

Apple responds that the market has changed since the court made its liability determination. Jan. 17, 2025 Tr. at 54:3-17. Maybe so. But Apple offers no reason why party status is necessary to present such evidence, especially when Google is likely to call Cue as a witness.[4]

Apple's case authorities do not help its cause. According to Apple, "[c]ourts routinely permit limited intervention to allow affected parties to participate in remedial proceedings in similar circumstances." Apple's Mem. at 6, 15 (citing cases). But none of the cases Apple cites

---

[4] Nor is the court convinced that Google lacks incentive to make Apple's position known to the court. Google's Proposed Final Judgment specifically authorizes revenue share agreements with Apple (and other browser developers) in exchange for setting Google Search as the default general search engine, while permitting Apple to reevaluate such agreements on an annual basis and even promote rival products across devices and browser settings. Google's Proposed Final Judgment, ECF No. 1108-1, at 4–5. Apple nowhere explains why Google's proposal does not align with its stated interests. *See* Jan. 17, 2025 Tr. at 60:7-15. (Indeed, Google's proposal would arguably put Apple in a *better* position than it is today.) And when given the opportunity at oral argument to articulate how its proposed remedy would differ from Google's, Apple demurred. *See id.* at 59:12–60:25.

involved an antitrust enforcement action, and none involved a remedial phase featuring extensive discovery and a contested evidentiary hearing. *See Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 126, 129–30 (D.C. Cir. 1972) (intervention granted to comment on proposed decree dissolving unlawful trusteeships in labor case); *Costle*, 561 F.2d at 906–08, 906 n.7 (intervention granted to participate in implementation and oversight of EPA settlement agreement, where the court had earlier allowed eight intervenors); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1491–93, 1496 (9th Cir. 1995) (intervention granted, where timeliness was undisputed, to present evidence weighing against proposed injunction prohibiting timber sales and other forest management activities), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Humane Soc'y of the United States v. U.S. Dep't of Agric.*, No. 19-cv-2458 (BAH), 2023 WL 3433970, at *1–2, *8 (D.D.C. May 12, 2023) (intervention granted to submit cross-motion and reply brief addressing whether federal animal welfare rule should be revived); *Ctr. for Food Safety*, 2009 WL 4724033, at *1–3 (intervention granted in NEPA suit to address whether injunction should issue and appropriate scope of injunctive relief, where the court had already permitted 13 intervenors and the remedies portion had not yet begun).

    The closest Apple comes is *Benjamin ex rel. Yock v. Department of Public Welfare of Pennsylvania*, an out-of-circuit case in which the court of appeals held that appellants should have been granted intervention as of right to fully participate in a fairness hearing on a proposed class-action settlement agreement, instead of merely allowed to submit objections and question the parties' witnesses. 701 F.3d 938, 941–42, 946 (3d Cir. 2012). Apple, however, offers no explanation as to how a fairness hearing in a class-action lawsuit is similar to a contested evidentiary hearing in an antitrust case, beyond the fact that both take place at the remedies stage.

13

*See* Apple's Mem. at 6. Moreover, the circumstances in *Benjamin* are clearly distinguishable. No party opposed intervention on timeliness grounds. *Benjamin*, 701 F.3d at 949 (explaining that timeliness was contested only as to class certification, not the settlement agreement). More importantly, there was no finding of prejudice to the existing parties. *Id.* at 951; *see infra* Part II.D (finding prejudice in this case).

For the foregoing reasons, the purpose for which Apple seeks intervention weighs against the timeliness of its motion.

### C. Need for Intervention

The need for intervention to protect Apple's contractual rights likewise weighs against timeliness, as the court will afford Apple an opportunity to be heard through post-hearing submissions.

### D. Prejudice to Existing Parties

The D.C. Circuit has called the probability of prejudice "the most important consideration" in determining timeliness. *Roane*, 741 F.3d at 152. That is because "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Id.* at 151.

In accordance with these principles, courts in this Circuit have consistently denied intervention where it would likely require additional discovery, necessitate further proceedings, or delay resolution of the case. *See, e.g.*, *Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 902, 906 (D.C. Cir. 2014) (holding that the district court did not abuse its discretion in finding that "intervention would cause prejudicial delay" where the putative intervenor sought to intervene for the "limited purpose" of filing a Rule 19 motion because the district court "would need to accept briefing on the [ ] motion, hear argument, and rule on the motion"); *Love v. Vilsack*,

14

304 F.R.D. 85, 91 (D.D.C. 2014) (finding the motion untimely because the "litigation [was] quite advanced" and "[i]ntervention would require further proceedings to address new issues and potentially new factual development"), *aff'd*, No. 14-5185, 2014 WL 6725758 (D.C. Cir. Nov. 18, 2014); *Bethesda Health, Inc. v. Cohran*, No. 18-cv-875 (BAH), 2021 WL 8323602, at *6 (D.D.C. Feb. 16, 2021) (concluding that "JMH's intervention would likely prejudice the existing parties," "[d]espite the purportedly limited remedial purpose for which intervention [was] sought," because "adding JMH as an intervenor-plaintiff at this stage would necessarily require additional documentation and review" and thereby result in delay); *Ctr. for Biological Diversity v. Raimondo*, No. 18-cv-112 (JEB), 2021 WL 2823102, at *4 (D.D.C. July 7, 2021) (ruling that "allowing intervention at this juncture would unduly interfere with the parties' right to a timely resolution of this matter"); *see also Roane*, 741 F.3d at 152 (granting intervention in part because "adding Paul as a party would have required no additional factual development").

All three types of prejudice are likely to occur here. For starters, just because Apple has opted to forgo written discovery does not mean the existing parties will. Jan. 17, 2025 Tr. at 51:3-4. Only one Apple witness (Cue) is included on the parties' initial witness lists—meaning the parties will need to request documents from and depose one additional (unidentified) fact witness. *Id.* at 32:2-5, 44:18-19. What's more, the third witness is an (as-yet-unnamed) expert on "Apple's economic interests," *id.* at 51:9-13, whose designation will generate discovery obligations and demands. Apple will be required to make disclosures under Rule 26(a)(2), which are likely to be substantial, if the liability-phase expert reports are any guide. The parties will then have to devote considerable time and resources to respond to Apple's expert's opinions. At minimum, Apple's expert will have to be deposed, and the parties might also seek to cross-designate a rebuttal expert and demand additional discovery directly from Apple.

15

Apple similarly fails to account for the parties' needs during the evidentiary hearing. At oral argument, Apple estimated that its involvement would add only "a couple of additional days" to the schedule. Jan. 17, 2025 Tr. at 52:5. Apple based that estimate on seven hours for direct examination of its own witnesses plus four hours for cross-examination of "certain" party witnesses (though Apple noted that the extent of its cross-examination, like other aspects of its participation, would depend on which witnesses "implicated" its interests). *Id.* at 51:20–52:4. Apple's estimate, however, does not include the time it will take Plaintiffs and Google to cross-examine Apple's three witnesses. The court has already set aside the maximum number of days it has available for the evidentiary hearing—14 days in total, leaving 7 days per side.[5] Any presentation by Apple will necessarily encroach upon the parties' time to present their own cases.

Thus, while the court appreciates Apple's "commit[ment] to following this Court's schedule for the remedial phase," Apple's Reply at 2, even "limited" intervention would come at the parties' expense. By this point in the litigation—just one month before the close of fact discovery and less than three months until the evidentiary hearing—the parties have structured their discovery, served their written requests, disclosed their initial witness lists, scheduled their witness depositions, and reviewed hundreds of thousands of documents. *See* Scheduling Order. And they have done it all within the strict confines of the court's Scheduling Order—with still more yet to come. *See* Jan. 17, 2025 Tr. at 108:8-9, 108:24–109:8 (parties' counsel stating that numerous document productions are forthcoming and 15 Google witness depositions, plus multiple third-party witness depositions, are scheduled for February 2025); *id.* at 109:13-15

---

[5] Initially, the court set aside nine days for the hearing. Scheduling Order at 3. Midway through discovery and following submission of the parties' Proposed Final Judgments, Plaintiffs sought three additional days, while Google requested 11 more. Joint Status Report, ECF No. 1125, at 23–26. The court added five. Am. Scheduling Order at 1. Even that was challenging. *See* Jan. 17, 2025 Tr. at 101:24–102:13 (describing the court's trial calendar). But that was the most the court could offer without compromising its ability to meet the early August deadline for issuing a remedies decision that it had announced back in September. *Id.* at 102:18–104:1.

(Google's counsel stating that "trying to get this calendar to work has been like air traffic control at National Airport"—"[i]t is very, very difficult").  At this late stage, Apple's request for intervention, if granted, would unfairly prejudice the parties by adding to their already heavy burden.[6]

The alternative, of course, would be to delay the evidentiary hearing, and with it, the resolution of this case.  But not even Apple defends that option, and for obvious reason—it merely swaps one form of prejudice for another.  *See supra* 14–15; Apple's Mem. at 2 (emphasizing that "granting intervention would not delay or otherwise disrupt the proceedings"); Apple's Reply at 5 (stating that "Apple agrees with Plaintiffs that the 'remedies phase must proceed expeditiously'" and recognizing that "delayed resolution of the merits" constitutes "unfair prejudice" (alteration and citations omitted)).  In the context of this case, moreover, such prejudice would likely be considerable.  The court has organized its docket around the remedial proceeding, and it simply does not have the same flexibility now as it did last September, when it first set the schedule.  Jan. 17, 2025 Tr. at 101:25–102:2.  Consequently, the delay from postponing the evidentiary hearing would be months, not weeks.  Given that this case has already been pending for over four years, such a delay would be prejudicial to the parties and contrary to the public's keen interest in prompt resolution of this matter.

Finally, the court cannot turn a blind eye to the potential consequences of granting Apple's motion.  If Apple is entitled to intervene, "there is no apparent reason why" other counterparties to Google's search distribution agreements "could be denied a similar opportunity."  *Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013); *see* Pls.' Opp'n at 8 ("In

---

[6] Plaintiffs represented in both their opposition brief and at oral argument that, in the event Apple is granted intervention, they might seek to amend their complaints under Rule 15 "to include Apple as a named defendant for liability purposes" and "request that Apple be bound by the Court's final judgment." Pls.' Opp'n at 16; *accord* Jan. 17, 2025 Tr. at 33.  If that were to come to pass, this litigation would experience even greater disruption and delay.

17

theory, any company that signed Mobile Application Distribution Agreements, Revenue Share Agreements, and other similar agreements [ ] could make the same arguments that Apple has made here."). Such counterparties include some of the world's largest companies, like Samsung and AT&T, to name just two. Mem. Op. at 101. They also include browser developers, like Mozilla, whose Firefox browser depends on Google's revenue share payments for its very survival. *Id.* at 116 (finding that Google's 2021 revenue share payment to Mozilla amounted to "80% of Mozilla's operating budget"). Plaintiffs have already been contacted by two third parties who are currently contemplating intervention. Jan. 17, 2025 Tr. at 34:4-14.

Apple dismisses this concern as "misguided" in light of Apple's position under Plaintiffs' PFJ—namely, that Apple is the only entity (besides Google) "specifically target[ed] by name" in a provision "of extraordinary breadth." Apple's Reply at 6 (citing Pls.' PFJ, ECF No. 1062-1 [hereinafter Pls.' PFJ], § IV.B). But as Plaintiffs rightly point out, "Plaintiffs' PFJ prohibits Google from paying *any* third party . . . for making Google the default search engine on its devices." Pls.' Opp'n at 4 (emphasis added) (citing Pls.' PFJ, § IV.A). Thus, Apple's contractual interests are not unique. If this court were to open the door to intervention now, halfway through the remedial phase, there is a strong possibility that this litigation would become even more complex and prolonged.

The court therefore finds that the existing parties would suffer substantial prejudice were Apple to intervene at this late stage.

### III.

Because Apple's Motion for Limited Intervention fails to satisfy Rule 24's timeliness requirement, the motion is hereby denied. *NAACP*, 413 U.S. at 365; *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999).

The court hereby grants Apple permission to participate as *amicus curiae* and file a post-hearing brief alongside the parties. If Mr. Cue is called to testify at the evidentiary hearing, Apple may also submit an affidavit from one additional fact witness that addresses facts not covered by Mr. Cue's testimony. If Mr. Cue is not called to testify, Apple may submit two affidavits from fact witnesses, in addition to a post-hearing brief.

This is a final, appealable order.

Dated: January 27, 2025

Amit P. Mehta
United States District Judge