**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 1:20-cv-03010-APM <br><br> HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 1:20-cv-03715-APM <br><br> HON. AMIT P. MEHTA |

**REDACTED**

**MEMORANDUM OF LAW IN SUPPORT OF ANTHROPIC PBC'S
MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE***

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

      A.      Factual Background ............................................................................................ 4

      B.      Procedural History ............................................................................................. 5

ARGUMENT ........................................................................................................................... 7

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Children's Health Def. v. FCC*,
 25 F.4th 1045 (D.C. Cir. 2022) ............................................................................................... 8

*Crossroads Grassroots Pol'y Strategies v. FEC*,
 788 F.3d 312 (D.C. Cir. 2015) ................................................................................................. 8

*Dimond v. District of Columbia*,
 792 F.2d 179 (D.C. Cir. 1986) ............................................................................................... 10

*Foster v. Gueory*,
 655 F.2d 1319 (D.C. Cir. 1981) ......................................................................................... 9, 10

*Fund for Animals, Inc. v. Norton*,
 322 F.3d 728 (D.C. Cir. 2003) ............................................................................................ 9, 10

*Humane Soc'y v. U.S. Dep't of Agric.*,
 2023 WL 3433970 (D.D.C. May 12, 2023) ........................................................................... 12

*Karsner v. Lothian*,
 532 F.3d 876 (D.C. Cir. 2008) ................................................................................................. 8

*Nat. Res. Def. Council v. Costle*,
 561 F.2d 904 (D.C. Cir. 1977) ......................................................................................... 11, 12

*New York v. Microsoft Corp.*,
 224 F. Supp. 2d 76 (D.D.C. 2002) ......................................................................................... 10

*Nuesse v. Camp*,
 385 F.2d 694 (D.C. Cir. 1967) ................................................................................................. 8

*Roane v. Leonhart*,
 741 F.3d 147 (D.C. Cir. 2014) ............................................................................................... 11

*SEC v. Prudential Sec. Inc.*,
 136 F.3d 153 (D.C. Cir. 1998) ................................................................................................. 8

*Spectrum Sports, Inc. v. McQuillan*,
 506 U.S. 447 (1993) ............................................................................................................... 10

*Trbovich v. United Mine Workers*,
 404 U.S. 528 (1972) ............................................................................................................... 10

**Rules**

Fed. R. Civ. P. 24(a)(2) .................................................................................................... 3, 7, 8

**Other Authorities**

Competition & Mkts. Auth.,
  No. ME/7108/24, Alphabet Inc.'s Partnership with Anthropic PBC:
  Decision on Relevant Merger Situation (Dec. 24, 2024),
  *available at* https://assets.publishing.service.gov.uk/media/
  676959bae6ff7c8a1fde9d33/Full_text_decision__.pdf ............................................................... 2

Metz, Cade & Meaghan Tobin,
  *How Chinese A.I. Start-Up DeepSeek Is Competing with Silicon Valley Giants*,
  N.Y. TIMES (Jan. 23, 2025) ........................................................................................................ 1

## INTRODUCTION

Anthropic PBC is a public benefit corporation dedicated to the responsible development and maintenance of advanced artificial intelligence ("AI") for the long-term benefit of humanity. Anthropic seeks to participate as an *amicus curiae* in the remedial phase of this action to address the threat to its business and contractual relationships with the defendant in this case, Google LLC, posed by the portion of Plaintiffs' proposed final judgment that would prohibit Google from acquiring or holding any interest in any company that controls an AI product, including Anthropic. ECF No. 1062-1 at 8.

Since its founding in 2021, Anthropic has developed a family of large language models named Claude that competes with other AI products, such as Google's Gemini, Open AI's ChatGPT, Meta's Llama, and emerging foreign competitors like China's DeepSeek.[1] Unlike its competitors, Anthropic is incorporated as a public-benefit corporation, which allows it to weigh the long- and short-term consequences of its work on society at large alongside the financial interests of its stockholders. To help it compete with larger and better-funded rivals, Anthropic has sought investments from a variety of partners—including Google, which has about a ▮ stake in Anthropic on a fully diluted basis, and just over ▮ of outstanding shares.[2] While those investments are significant to Anthropic's ability to remain competitive, they do not give Google any ability to control Anthropic: Google is a minority investor with non-voting shares, no board

---

[1] *See* Cade Metz & Meaghan Tobin, *How Chinese A.I. Start-Up DeepSeek Is Competing with Silicon Valley Giants*, N.Y. TIMES (Jan. 23, 2025) (reporting that DeepSeek's new AI system "could match the capabilities of cutting-edge chatbots from companies like OpenAI and Google" and threatens efforts by the U.S. government to "maintain the country's lead in the global A.I. race").

[2] Anthropic has moved for leave to file this memorandum and the accompanying declaration under seal. Material that has been redacted from the publicly filed versions of these documents is highlighted in yellow.

representation, and no exclusive rights to any of Anthropic's products or innovations. The UK Competition and Markets Authority recently reached this very conclusion, confirming after an in-depth investigation that it "does not believe that Google has acquired material influence over Anthropic as a result of the" partnership between the companies.[3]

      Until recently, Anthropic had no reason to believe this litigation would affect its interests or its relationship with Google. Plaintiffs' antitrust claims focused on Google's exclusive search-engine distribution agreements with browser developers (including Apple), mobile device manufacturers, and wireless carriers. Plaintiffs did not allege, and the Court did not find, that Google engaged in any anticompetitive conduct in connection with its investments in AI or Anthropic. Indeed, when Plaintiffs filed their suit, Anthropic did not even exist. Anthropic was thus blindsided when Plaintiffs submitted their proposed final judgment, which requires Google to (among other things) divest any interest in any company that controls an "AI Product."

      A remedy that requires Google to terminate its relationship with Anthropic would harm both Anthropic and competition more generally. A forced, expedited sale of Google's stake in Anthropic could depress Anthropic's market value and hinder Anthropic's ability to raise the capital needed to fund its operations in the future, seriously impacting Anthropic's ability to develop new products and remain competitive in the tight race at the AI frontier. Damaging Anthropic's competitiveness would increase the market power of Anthropic's much larger rivals, creating the very injury to competition that Plaintiffs seek to address. It would also risk depriving

---

[3] Competition & Mkts. Auth., No. ME/7108/24, Alphabet Inc.'s Partnership with Anthropic PBC: Decision on Relevant Merger Situation ¶¶ 9, 23 (Dec. 24, 2024), *available at* https://assets.publishing.service.gov.uk/media/676959bae6ff7c8a1fde9d33/Full_text_decision__.pdf.

society of the benefits of AI technology developed under a public-benefit corporate model, and it could undermine the United States' ability to remain the global leader in AI.

This significant threat to Anthropic's business and contractual relationships would justify Anthropic's intervening in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Anthropic is, however, mindful of this Court's concern—expressed in its order denying intervention by Apple—that granting intervention could disrupt the Court's plans for the remedial phase of this litigation. ECF No. 1153 at 18. In light of that concern, the Court granted Apple permission to participate as an *amicus curiae* and authorized Apple to "file a post-hearing brief alongside the parties" and "submit two affidavits from fact witnesses" (or one affidavit if a witness representing Apple is called to testify at the evidentiary hearing). *Id.* at 19.

Out of respect for the Court's preferences and to avoid any unnecessary delay, Anthropic is seeking at this stage only to participate as an *amicus curiae* on the same terms as Apple (*i.e.*, to file a post-hearing brief and submit up to two affidavits from fact witnesses). Permitting Anthropic to participate in this way will avoid delaying or disrupting this Court's proceedings, allow Anthropic to present evidence and briefing to attempt to protect its interests in this matter, and assure that the Court has all relevant information when crafting its remedial decree.[4]

---

[4] Anthropic reserves the right to seek to intervene in this case at a later time if Anthropic's interests are not being adequately protected, if the Court's plans for the remedial phase change, or if the D.C. Circuit reverses this Court's decision not to allow Apple to intervene. Anthropic respectfully submits that, given its interests at stake and the fact that until recently it had no reason to involve itself in this litigation, it is entitled to at least the same rights as Apple with regard to participation in the remedial phase.

3

## BACKGROUND

### A.    Factual Background

In 2021, seven former OpenAI employees founded Anthropic, a public benefit corporation focused on developing transformative yet safe AI systems. Brown Decl. ¶ 2. Building such systems is not cheap. It requires significant funding, especially to provide what the AI industry calls "compute"—the processing power, cloud and local memory, networking, and storage necessary to train AI models. *Id.* ¶¶ 5–7.

Anthropic is an exception in the AI market. Most AI companies depend on NVIDIA's GPU microchips. *Id.* ¶ 6. By contrast, Anthropic has committed extensively to Google's TPU chips and Amazon's Trainium chips, which fosters competition in the AI chip market and helps ensure that Anthropic receives competitive pricing. *Id.* Similarly, rather than buying cloud-computing services from a single provider, Anthropic partners with both Amazon and Google, which compete aggressively against Microsoft and other providers such as Oracle.[5]

Unlike its competitors, Anthropic is not owned or dominated by a single tech giant and has chosen to remain independent. While both Amazon and Google have invested in Anthropic, neither company exercises control over Anthropic. *Id.* ¶¶ 9–10. Google, in particular, owns a minority of the company; ███████████████████████; and it has no voting rights, board seats, or even board observer rights. *Id.* ¶¶ 12–14. Nor does Google have exclusive rights to any of Anthropic's products. *Id.* ¶ 14. Google's investments in Anthropic, which began in 2022, have taken two forms: direct equity purchases and purchases of debt instruments that can be converted

---

[5] Amazon is Anthropic's primary training partner and primary cloud provider. Brown Decl. ¶ 7 n.1.

to equity. This includes ████████████████████████████████████

████████████████████. *Id.* ¶ 12.

B.     **Procedural History**

Until very recently, this litigation had nothing to do with Anthropic. In October 2020, the United States and 11 states (the "U.S. Plaintiffs") sued Google, alleging that it had unlawfully maintained monopoly power in the markets for general search services, search advertising, and general search text advertising by entering into agreements to secure exclusive distribution for its search engine on desktop and mobile devices. *See* ECF No. 1033 at 5. Two months later, 38 other states (the "State Plaintiffs") brought their own suit in which they adopted the U.S. Plaintiffs' allegations but adjusted the definition of one market and alleged additional exclusionary conduct by Google. *Id.* Neither complaint alleged any anticompetitive conduct related to AI, and neither mentioned Anthropic. The only mention of AI in either complaint was a passing reference in the U.S. Plaintiffs' complaint to AI "voice assistants" as one of several "access points" through which mobile-device users could access Google's search services. ECF No. 1 ¶ 44.

As the litigation unfolded, Anthropic had no reason to believe its interests were implicated in any way. Discovery lasted for 27 months, beginning in December 2020 and concluding in March 2023. ECF No. 1033 at 3. During that time, no party sought discovery from Anthropic. This Court then held a nine-week bench trial beginning in September 2023. *Id.* Not a single Anthropic witness was called to testify at the trial.

In August 2024, this Court issued a 286-page opinion concluding that Google had violated the antitrust laws. *See* ECF No. 1033. The Court found that Google had unlawfully maintained monopoly power in the markets for general search services and general search text ads by entering into exclusive distribution agreements with browser developers, mobile device

manufacturers, and wireless carriers to secure default placements for the Google search engine at key search access points. *Id.* at 2–4. The Court did not find (nor had the parties alleged) that Google engaged in any anticompetitive conduct relating to its relationship with Anthropic, or even related to AI more generally. The Court's opinion mentions AI only briefly in concluding that the advent of AI "has not sufficiently eroded barriers to entry" in the market for general search services to undermine the finding that Google is a monopolist in that market. *Id.* at 163. The Court found that "[c]urrently, AI cannot replace the fundamental building blocks of search, including web crawling, indexing, and ranking," and that "AI may someday fundamentally alter search, but not anytime soon." *Id.*; *see also id.* at 41 ("AI has not supplanted the traditional ingredients that define general search. And it is not likely to do so anytime soon." (citation omitted)).

In short, Google's investments in Anthropic—or even in AI more generally—were never part of this case. Anthropic was thus surprised when, in late November 2024, Plaintiffs filed their Initial Proposed Final Judgment ("PFJ") and asked the Court to order Google to terminate its relationship with any company that owns an AI Product, whether or not related to search. Plaintiffs' PFJ would provide that Google "must divest," within six months from entry of final judgment, "any investment, holding or interest in … any company that controls … an AI product." ECF No. 1062-1 at 8. It would also provide that Google "must not, without the prior written consent of the United States, acquire any interest in," or enter into or expand any "joint venture, partnership, or collaboration" with, "any company that controls a … query-based AI Product." *Id.* The PFJ defines "AI Product" broadly to mean "any application, service, feature, tool, or functionality that involves artificial intelligence capabilities," which would include Anthropic's products. *Id.* at 2.

6

If adopted by the Court, Plaintiffs' PFJ would force Google to sell its entire existing stake in Anthropic, prohibit Google from making any future investments in Anthropic, and bar it from undertaking any new or expanded "collaboration" with Anthropic. This would do nothing to remedy the antitrust violations identified in the Court's opinion, which have nothing to do with Anthropic or AI more generally. But it would have serious consequences for Anthropic's ability to continue fostering responsible innovation and competition at the frontiers of artificial intelligence. This would provide an unjustified windfall to Anthropic's much larger competitors in the AI space—including OpenAI, Meta, and ironically Google itself, which (through its DeepMind subsidiary) markets an AI language model, Gemini, that directly competes with Anthropic's Claude line of products. *See* Brown Decl. ¶ 23.

Anthropic has raised these concerns repeatedly with Plaintiffs, first reaching out on November 21, 2024—the day after Plaintiffs filed their proposed final judgment. Anthropic has since met with Plaintiffs repeatedly, including on December 6 and 20, 2024. To date, however, Plaintiffs have not receded from their request that the Court order Google to end its relationship with Anthropic.

## ARGUMENT

Anthropic should be allowed to participate in these proceedings as an *amicus curiae*. Plaintiffs' sweeping PFJ would force Google to divest its existing interest in Anthropic and forgo any future investments. As a result, Anthropic now has the type of direct interest at stake in this litigation that would entitle it to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Anthropic, however, recognizes the case-management concerns this Court expressed in its recent order denying Apple's motion to intervene. *See* ECF No. 1153. To be sure, Anthropic is differently situated from Apple in important ways. Whereas Apple's relationship with Google has been "at the heart of this antitrust action … since the beginning,"

7

*id.* at 4, Anthropic's inclusion in Plaintiffs' PFJ was a bolt from the blue. Anthropic also did not participate in discovery during the liability phase and did not have a witness testify at the liability trial, as Apple did. Nevertheless, out of respect for the Court's view that "open[ing] the door to intervention" could make this litigation "even more complex and prolonged" and prejudice the existing parties, Anthropic is not seeking to intervene as a party at this time, but only to participate in the remedial phase as an *amicus*—the same relief the Court afforded Apple. *See id.* at 18. Granting this request would not only help protect Anthropic's interests, but also assist the Court by ensuring that it has all relevant information before it when crafting its remedial decree.

Although Anthropic is not seeking to intervene as a party at this time, consideration of the requirements for intervention as of right confirms that Anthropic should be permitted, at a minimum, to participate in this case as an *amicus*. To intervene as a matter of right, a movant must demonstrate that it has "a legally protected interest in the action," that the action "threaten[s] to impair that interest," that "no party to the action can be an adequate representative of the applicant's interests," and that the motion is timely. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)); *see also* Fed. R. Civ. P. 24(a)(2). Each of these factors favors granting Anthropic the more limited relief it seeks here.

*First*, Anthropic has a legally protected interest in this action as a result of the overly broad relief Plaintiffs requested in their PFJ. In this Circuit, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). If a movant has constitutional standing, then it also satisfies the interest requirement. *See Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015). "Potential

8

impairment of contractual or property rights can create an injury in fact." *Children's Health Def. v. FCC*, 25 F.4th 1045, 1049 (D.C. Cir. 2022). And when the movant's property "is the subject matter of the suit," the "interest is obvious." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981). The subject matter of this litigation now includes a potential forced divestiture of Google's investments in Anthropic, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This prospect presents a "concrete and imminent injury" that would be traceable to provisions of Plaintiffs' PFJ and is redressable by this Court refusing to enter those provisions. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003). As the recipient of the investments the PFJ would prohibit, "there can be no question that [Anthropic] has the requisite interest." *Id.* at 735.

**Second**, this action now threatens to impair Anthropic's legally protected interest. An interest is "impair[ed]" when an adverse ruling would result in a substantial change with respect to that interest and "reestablishing the status quo" would be "difficult and burdensome." *Id.* Anthropic satisfies this requirement because portions of Plaintiffs' PFJ would terminate Anthropic's relationship with Google and deprive it of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Securing funding sufficient to replace Google's investment presents a significant challenge, as even the largest venture capital firms in the world typically deal in tens or hundreds of millions, not billions, of dollars. Forcing Google to sell its entire existing stake in Anthropic—which amounts to about a ▮▮ stake on a fully diluted basis, and just over ▮▮ of outstanding shares—within a short period of time would flood the market, sating investors who would otherwise fund Anthropic in the future, and thus diminish Anthropic's ability to fund its operations and potentially depress its market value. *See* Brown

9

Decl. ¶¶ 19–20. And this comes at a time when the capital markets are reacting to the increasingly fierce competition between U.S. and Chinese AI labs (such as DeepSeek). *Id.* ¶ 22.

Importantly, harming Anthropic also stands to harm competition more generally. *See New York v. Microsoft Corp.*, 224 F. Supp. 2d 76, 136 (D.D.C. 2002) (courts fashioning antitrust remedies "must be 'careful to avoid constructions of § 2 which might chill competition, rather than foster it'" (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993))). By committing extensively to chips from Google and Amazon, Anthropic supports competitors to NVIDIA's dominant GPU chips and fosters competition in the chip market. Brown Decl. ¶¶ 6, 16, 24. And by purchasing cloud computing services from Amazon and Google, Anthropic fosters competition between those two companies and their rivals (like Microsoft). *Id.* ¶¶ 7, 17, 25.

***Third***, Google cannot adequately protect Anthropic's interest. To satisfy this requirement, the movant need only "show[] that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *accord Foster*, 655 F.2d at 1325. For example, if a party and the movant seek the same result, but the movant has "a more narrow … financial interest not shared by" the party, then the party does not adequately represent the movant's interest. *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986). An existing party's representation is also inadequate when it may not give "primacy" to the same issues as the movant. *Fund for Animals*, 322 F.3d at 736.

Anthropic cannot rely on Google to devote adequate focus to the specific provisions of Plaintiffs' PFJ that will impact Anthropic, much less to afford them the same primacy that Anthropic will give them. Plaintiffs' 35-page PFJ contains numerous provisions that are likely to

10

demand more of Google's attention, such as provisions mandating divestiture of Google's Chrome browser and (potentially) its Android operating system. *See* ECF No. 1062 at 7–8. Against this backdrop, a forced termination of Google's relationship with Anthropic would represent a comparatively small problem for Google—whose parent holding company, Alphabet, is one of the largest public companies in the world, with a market capitalization in excess of $2 *trillion*. Even if Google could be relied on to prioritize the issues affecting Anthropic in its advocacy, Anthropic's unique perspective will provide "a vigorous and helpful supplement to [Google's] defense." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977).

**Fourth** and finally, Anthropic's motion is timely. Because Anthropic is seeking only to participate as an *amicus*, it need not satisfy the same timeliness standard that would apply to a motion to intervene. Indeed, the Court held that Apple's motion to intervene was *not* timely under the standard applicable to such motions, yet it still granted Apple permission to participate as an *amicus curiae*—the same relief Anthropic is seeking here. *See* ECF No. 1153 at 2, 18–19. That makes sense. Even for a motion to intervene, the "most important consideration" in evaluating timeliness is whether granting the motion "will prejudice the existing parties to the case." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quotation marks omitted); *see id.* at 152 (holding that district court abused its discretion by denying intervention based solely on movant's delay without "explaining how any party would be prejudiced"). And as the Court recognized with Apple, allowing Anthropic to file a post-hearing brief and declarations from up to two fact witnesses will not cause any delay or otherwise prejudice the existing parties.

Anthropic had no reason to suspect it had anything at stake in this lawsuit until Plaintiffs filed their PFJ on November 20, 2024. Since then, Anthropic has worked diligently to protect its interests, first by engaging with Plaintiffs—beginning the day after they filed their PFJ—and

11

then by filing this motion. Anthropic will comply with the Court's existing schedule, and its limited participation will "add no additional time to resolution of this proceeding." *Humane Soc'y v. U.S. Dep't of Agric.*, 2023 WL 3433970, at *8 (D.D.C. May 12, 2023). Importantly, Anthropic is not seeking to "reopen" this Court's liability rulings—which concern Google's distribution agreements for its search engine and have nothing to do with Anthropic—but only to "participate in [the] remedial phase of the litigation" to oppose Plaintiffs' overbroad PFJ. *See Costle*, 561 F.2d at 908. As Anthropic will demonstrate, adopting Plaintiffs' PFJ would cause acute harm to Anthropic, impair competition in the AI arena, and provide a windfall to Anthropic's much larger rivals (including emerging rivals in China).

For all these reasons, Anthropic respectfully requests that the Court allow it to participate in the remedial phase of this case as an *amicus curiae*, to file a post-hearing brief alongside the parties, and to submit declarations from up to two fact witnesses. If the Court determines it would be helpful, Anthropic would also welcome the opportunity to present additional evidence or witnesses and otherwise participate in the evidentiary hearing. Granting Anthropic's request will allow the Court to adhere to its schedule without delay, enable Anthropic to protect its unique and otherwise inadequately represented interests, and ensure that the Court has all relevant information before it when crafting its remedial decree.

## CONCLUSION

The Court should grant Anthropic's Motion for Leave to Participate as *Amicus Curiae*.

Dated: February 14, 2025

                                                   Respectfully submitted,

*/s/ Paul Alessio Mezzina*
Veronica Moyé
 (*pro hac vice* application forthcoming)
Benjamin T. Lee
 (*pro hac vice* application forthcoming)
KING & SPALDING LLP
2601 Olive Street
Suite 2300
Dallas, TX 75201
(214) 764-4600
vmoye@kslaw.com
benjamin.lee@kslaw.com

Nema Milaninia
 (*pro hac vice* application forthcoming)
Paul Alessio Mezzina
 DC Bar No. 999325
Sumon Dantiki
 (*pro hac vice* application forthcoming)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
(202) 737-0500
nmilaninia@kslaw.com
pmezzina@kslaw.com
sdantiki@kslaw.com

*Counsel for Movant Anthropic PBC*