# EXHIBIT C

LAW OFFICES
# WILLIAMS & CONNOLLY LLP

GLORIA K. MAIER
(202) 434-5213
gmaier@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

February 27, 2025

<u>Via Email</u>

Karl E. Herrmann
450 Fifth Street, N.W.
Suite 1700
Washington, DC 20530

Re: *United States, et al. v. Google LLC*, No. 20-cv-3010-APM (D.D.C.) & *State of Colorado, et al. v. Google LLC*, No. 20-cv-3715-APM (D.D.C.)

Dear Karl:

I write in response to the parties' meet-and-confer on February 13, 2025, and your related email on February 24, 2025.

***Plaintiffs' 3d RFP Nos. 6 & 7***

Google explained its burden objections to Plaintiffs' Third Set of Requests for Production, Request No. 6, which requests documents sufficient to show all available fields in the GWS Logs and QSessions, and a corresponding data dictionary. On our call, DOJ requested an approximation of how many fields exist in these databases. Google responds that the GWS Logs have over 3,000 fields at the top level, and then many more embedded fields, totaling over 100,000 fields. QSessions has over 1,000 fields. As Google explained in its Responses and Objections, and during the meet and confer, Google does not in the ordinary course of business maintain a "data dictionary" for the data sought by this Request, and it would be burdensome to create such data dictionaries, particularly at this late stage of discovery.

Google also explained its burden objections to Plaintiffs' Third Set of Requests for Production, Request No. 7, which seeks five different categories of detailed information across "all the available fields used for the data used to train or create" seven different Google systems. Your email requests "ballpark" estimates of the number of data fields with respect to the systems identified in 7(b) and 7(g) of Request No. 7. As to 7(b), Google responds that there are several hundred fields for data used to train or create Glue. As to 7(g), Google responds that there are approximately twenty fields for data used to train or create RankEmbedBert. As Google explained in its Responses and Objections, and on the meet and confer, Google does not in the

**WILLIAMS & CONNOLLY LLP**

February 27, 2025
Page 2

ordinary course of business maintain a "data dictionary" for for the data sought by this Request, and it would be burdensome to create such data dictionaries, particularly at this late stage of discovery.

### *Plaintiffs' 3d RFP Nos. 8*

Google stands by its objections that this Request is duplicative of Plaintiffs' Second Joint Requests for Production Nos. 9 and 10, for which Google made an extensive production, including spreadsheets detailing the data used to train AI Overviews, the Gemini Chatbot, Circle to Search, and AI Mode. Google reiterates that it does not in the ordinary course of business maintain a "data dictionary" for the data sought by this Request. Google further responds that it will provide a written response to Plaintiffs' Second Set of Joint Interrogatories, No. 15, which seeks information that substantially overlaps with this Request. Accordingly, Google will not search for and produce additional documents responsive to this Request.

### *Plaintiffs' 3d RFP No. 9*

In response to Plaintiffs' February 24 email, User-Side Data is not used in Google's Knowledge Graph. Please advise if this does not resolve the dispute over this Request.

### *Plaintiffs' 3d RFP No. 13*

At the meet and confer, you agreed to review what Google produces with respect to Request No. 13 and respond with any concerns. Accordingly, Google will proceed with producing its guidelines outlining the general data handling and usage policies of search webcrawl data and ranking signals.

### *Plaintiffs' 3d RFP No. 14*

Google explained its burden objections to Plaintiffs' Third Set of Requests for Production, Request No. 14, which requests documents sufficient to show the resources devoted to "each project" for developing and maintaining Google's web crawling infrastructure, Search Index, and Search Results API. Following additional reasonable investigation, we can confirm that Google's product and engineering teams are not organized in a manner that aligns with these categories and that it is not feasible to provide engineering time data for the years 2022 through 2024. On our call, you proposed an alternative: a breakdown in employee responsibility by sub-team. We are working to prepare a letter response with information regarding the approximate number of full-time engineers currently employed by the primary relevant teams within Knowledge & Information and Core. With respect to Plaintiffs' "Search Results API," please clarify what Plaintiffs are referring to.

### *Plaintiffs' 3d RFP No. 19*

Google explained its burden objections to Plaintiffs' Third Set of Requests for Production, Request No. 19, which requests documents sufficient to show the server capacity, deployment, and resource usage dedicated to Google Search from 2022-present. On our call,

**WILLIAMS & CONNOLLY**LLP

February 27, 2025
Page 3

you indicated that you were interested in charts related to Google Search's deployment and usage. We have confirmed that Google does not maintain such charts in the ordinary course of business. We are able to provide information regarding Google's global data center topography as it relates to Search.

### *Plaintiffs' 3d RFP No. 21*

Following a reasonable search, Google has not located any studies, benchmarks, or internal analyses responsive to the second part of this request.

### *Plaintiffs' 3d RFP No. 22*

At the meet and confer, you agreed to limiting this request to information about Chrome, ChromeOS, and Chrome Enterprise. As noted on our call, we have confirmed that all of the information reflected in GOOG-DOJ-30419395, a document from 2021, is not maintained in Google's finance systems in the ordinary course of business, such that it could be recreated for the present time period. However, as noted during the call, we have reviewed the information contained in that document as it relates to Chrome and ChromeOS, and we will produce recent financial planning documents that contain similar information that have been identified in a reasonable search.

### *Plaintiffs' 3d RFP No. 25*

Following additional reasonable investigation, we can confirm that there are no documents responsive to RFP No. 25.

### *Plaintiffs' 3d RFP No. 29*

Google maintains its objection that this Request is overly broad and unduly burdensome in that it seeks a copy of "each architectural diagram, technical specifications and other documentation" for essentially every system used in the production and serving of search results, which covers an extraordinary amount of data and associated information. Google reiterates that it does not maintain in the ordinary course a collection of all architectural diagrams responsive to this request. During our call, Plaintiffs suggested that a collection of documents similar to other holistic overviews and onboarding materials that Plaintiffs already possess would suffice. We have collected and are producing a number of responsive overview documents; however, given the number and complexity of the systems involved in Google's search stack, it is not feasible to identify a comprehensive set of documents. If there is a particular system for which Plaintiffs seek an overview document, please identify it to us.

### *Plaintiffs' 3d RFP No. 30*

Google explained its burden objections to Plaintiffs' Third Set of Requests for Production, Request No. 30, which requests documents sufficient to show "the technical architecture of *each* material search feature" (emphasis added) with detailed information about essentially every system used in the production and serving of a search feature. The Request

**WILLIAMS & CONNOLLY**LLP

February 27, 2025
Page 4

covers an extraordinary amount of data and associated information. During our call, Google explained that it does not maintain in the ordinary course diagrams for each of these search features, especially in the detail requested. Plaintiffs suggested that a collection of documents similar to other holistic overviews and onboarding materials that Plaintiffs already possess would suffice. Google has collected and will produce an overview document for Knowledge Graph; if there is a particular search feature for which Plaintiffs seek an overview document, please identify it to us, and we can investigate whether there are readily available overview documents.

### *Plaintiffs' 3d RFP No. 32*

Google maintains its objections that this Request is overly broad and unduly burdensome. During our meet and confer, Plaintiffs suggested that it would not be burdensome to locate the appropriate Google employees with knowledge of the data requested in Requests 26 through 31 (which spans a very large breadth of databases and infrastructure across search and ads), who also have knowledge of the technical implementation of "query-based AI Products," then ask these employees to search for or create documentation on whether any of the data and technical infrastructure in Requests 26 through 31 could be "usable" to support a "query-based AI Product." This request is highly complex, particularly in light of the many subparts in Requests 26 through 31, and Google will not search for and produce additional documents responsive to this Request.

### *Plaintiffs' February 24 Request for Conferral*

With respect to Plaintiffs' request to meet and confer to discuss the scope of Google's response to Plaintiffs' Second RFP Nos. 14, 15, and 16, as well as Plaintiffs' Third RFP Nos. 13, 29, 30, and 32, Google responds that it is willing to confer, but in the interest of efficiency, Google notes that it does not believe that direct access to Google's internal intranet is necessary or appropriate to respond to these requests, particularly in light of the hundreds of documents that have already been (and more that are soon to be) produced in response to these requests. If there are specific technical dependencies in response to Plaintiffs' Second RFP Nos. 14, 15, and 16, for which Plaintiffs believe Google has not produced sufficient documentation in response to Plaintiffs' RFPs, please let us know.

Sincerely,

 /s/ Gloria K. Maier

Gloria K. Maier