# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| U.S. Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| U.S. Plaintiffs, | Case No. 1:20-cv-0715-APM |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT**
**GOOGLE LLC'S [FOURTH] SET OF INTERROGATORIES TO PLAINTIFFS**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Local Rule 26.2(d) of the United States District Court for the District of Columbia, and the Court's Orders governing discovery, Plaintiffs provide the following objections and responses to Defendant Google LLC's ("Google") Fourth Set of Interrogatories to Plaintiffs.

**GENERAL OBJECTIONS**

1.      Plaintiffs object to the Interrogatories to the extent that they attempt to impose any obligation greater than those imposed or authorized by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Columbia, or any other applicable rule or order.

2.      Plaintiffs object to Definition #7 ("You") as overly broad, unduly burdensome, not proportional to the needs of the case, and inconsistent with the Court's limitations on the number of interrogatories to the extent Definition #7 purports to require separate responses from each of the Plaintiffs listed in Definition #7. Plaintiffs will respond jointly to each Interrogatory (except for Interrogatory 29 and 30) unless providing a full response requires otherwise.

3.      Plaintiffs object to Google's use of impermissibly compound interrogatories that contain more than one, and in some cases substantially more than one, subject matter. Plaintiffs object that these interrogatories violate the numeric limitations set forth in the Court's January 20, 2025 Order, ECF No. 1144. The Court expressly limited Defendant to 30 interrogatory requests, but Defendant elected to serve 68 requests including all subparts—more than twice the number authorized by the Court. Even after exhausting the 30 interrogatories the Court allocated for this purpose, and the 15 interrogatories Google had remaining under the CMO, Google is still 23 interrogatories over its limit.

4.      Plaintiffs object to the Interrogatories to the extent they seek information protected by the attorney-client, work product, deliberative process, common interest, or any other applicable privilege.

5.      Plaintiffs object to the Interrogatories to the extent they seek a legal conclusion or interpretation of a legal document.

6.      Plaintiffs object and respond to the Interrogatories without implying that the Interrogatories are relevant or material to the subject matter of this action.

7.      Plaintiffs' development of facts and circumstances relating to this action is ongoing. Plaintiffs reserve the right to supplement, clarify, revise, or correct their objections and responses, and to assert additional objections or privileges, in one or more supplemental responses.

8.      Plaintiffs expressly incorporate these objections to Google's Definitions, Instructions, and

Interrogatories into each response below. The failure to repeat any of these objections in a particular response does not waive any objections applicable to that request.

9.    Plaintiffs further object because their initial proposed final judgment was submitted before remedies discovery began.  Since remedies discovery is ongoing, Plaintiffs may learn or obtain additional factual information to further inform or revise its responses below.

10.    Plaintiffs also object to the extent they make revisions or changes to the initial Proposed Final Judgment in connection with the submission of the final Proposed Final Judgment.

**DEFINITIONS**

1.    "Including" means including but not limited to.

**SPECIFIC OBJECTIONS AND RESPONSES
FROM ALL PLAINTIFFS**

1.    Identify the name of each entity that today qualifies as a "Competitor" under the definition set forth in Plaintiffs' Proposed Final Judgment (III.H).

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory to the extent it seeks information that may be more readily known to Google, as it is in the business of providing General Search Engine and Search Text Ads services in the United States.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Currently, the firms that today qualify as a "provider of" a General Search Engine or Search Text Ads in the United States include Google, Microsoft, Yahoo!, DuckDuckGo, IAC/InterActiveCorp, System1 LLC, Brave, and AOL. As established during the liability trial, due to Google's monopolization of the relevant markets, Google has a nearly 90% market share in the relevant markets. Court's Memorandum Opinion of August 5, 2024, ECF 1032, at 13-14, 66. Since the

purpose of Plaintiffs' proposed remedies is to restore competition to the monopolized markets, Plaintiffs anticipate the definition of Competitor to include additional entities over the duration of the remedy term. Although Plaintiffs cannot know at this time who may elect to enter the relevant markets, the list of potential future entrants could include firms engaged in the development of artificial intelligence, including OpenAI, Meta, Perplexity, and Anthropic, and companies involved in the development of web browsers and mobile operating systems, including Apple and others, as well as new entrants that Plaintiffs cannot predict at this time.

2.      Define what Plaintiffs' Proposed Final Judgment means by those "application[s], service[s], feature[s], tool[s], [and] functionalit[ies]" that "involve[] artificial intelligence capabilities" as used in Plaintiffs' definition of "AI Product" (III.B).

        **RESPONSE:**

        Plaintiffs incorporate their general objections as though set forth fully herein.

        Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs mean those terms in their general natural language definition, as used repeatedly in the normal parlance of the tech industry. By its commonplace, natural meaning, the term AI Product means applications, services, features, tools, or functionality that involves artificial intelligence capabilities. Google has defined artificial intelligence as "a set of technologies that enable computers to perform a variety of advanced functions, including the ability to see, understand, and translate spoken and written language, analyze data, make recommendations, and more."[1] If an application, service, feature, tool, or functionality does not involve any artificial intelligence capabilities, then it is not an AI Product.

3.      Define what Plaintiffs' Proposed Final Judgment means by "web browser" as used in Plaintiffs' definition of "Google Browser" (III.L). When answering this interrogatory, state whether

---

[1] https://cloud.google.com/learn/what-is-artificial-intelligence

or not "web browser" includes in-app browsing technologies such as Android System WebView and Android Custom Tabs.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory to the extent it seeks information that is more readily known to Google, as it is the developer and provider of Android System WebView and Android Custom Tabs.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: A "web browser," as used in that definition, is any software application, on a mobile phone or otherwise, that allows a user to access information across the web and navigate the web. Plaintiffs' understanding is that Android System WebView and Android Custom Tabs, while allowing app developers to display information from the web, do not allow the user to navigate the web. If so, based on Plaintiffs' current understanding, those would not be considered a "web browser" as used in that definition.

4.     Identify the name of each product that today qualifies as a "General Search Engine" as that phrase is used in Section III.O of Plaintiffs' Proposed Final Judgment, including whether the following qualify:
   a.  AI chatbots, including the Google Gemini Assistant Application, ChatGPT, Copilot, and Perplexity;
   b.  Vertical search services.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object that this Interrogatory is vague and ambiguous, in that the terms "AI chatbots" and "Vertical search services" are not defined.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Within the United States, the list of products that qualify as a General Search Engine includes

Google, Microsoft, Yahoo!, DuckDuckGo, Ask.com, Info.com, Brave, and AOL. Plaintiffs incorporate the answer to Interrogatory 1 here as well.

AI chatbots are a broad category of software with widely varying capabilities. To the extent Google intends the term "AI chatbot" to encompass software that is intended to have textual or spoken conversations with the user, they would not currently be within the definition of a General Search Engine. To be clear, these types of chatbots could have derived or summarized information from a General Search Engine to formulate their answers to users or may refer or link users to a General Search Engine.

To the extent Google intends for "vertical search services" to encompass "Specialized Vertical Providers," as used in the Court's Memorandum Opinion of August 5, 2024, ECF 1032, at 50-55, those providers would not qualify as a General Search Engine within the meaning used in the Proposed Final Judgment.

5.    State whether any prohibition or requirement in Sections IV, V, VI, VII, VIII, IX, or X of Plaintiffs' Proposed Final Judgment applies outside the United States (including but not limited to devices sold outside the United States), and, if so, specify which prohibition(s) or requirement(s) and the geographic scope of the prohibition or requirement.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: None of the prohibitions in Sections IV-X would directly apply outside the United States, other than any divestiture provisions of Sections V.A or V.B, prohibited investments in Section IV.F, and the anti-circumvention provisions throughout the Proposed Final Judgment.

6.    Explain with specificity how "marginal cost" is to be determined with regards to each provision in Plaintiffs' Proposed Final Judgment in which that term is used.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as calling for information that may be more readily within Google's control and knowledge.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: The term "marginal cost," which is used three times within the Plaintiffs' Proposed Final Judgment (VI.A, VII.A, and VII.B), means the ordinary course definition of "marginal cost," which is the direct total production cost of producing an additional unit of a good or service, and here would be determined by calculating the change in direct total production cost resulting from Google from providing the additional unit(s) of services, *i.e.* by (i) providing ongoing access to its Search Index; or (ii) serving a response to each additional user query via the syndication service as licensed.

7.    Specify whether any of the below conduct would violate any provision of Plaintiffs' Proposed Final Judgment and if so, identify the particular provision(s):

    a.  Google conditioning a free license to a third party in return for preinstallation of Google Search, Google Chrome, or Google Gemini Assistant Application on a device (a) in a place to be determined by the third party, or (b) in a place designated by Google;

    b.  Google offering or providing something of value to a third party in return for Google Search, Google Chrome or Google Gemini Assistant Application being preloaded on a device (a) in a place to be determined by the third party, or (b) in a place designated by Google.

    c.  Google offering or providing something of value to a third party to be a non-default search option in a browser or other search access point (for instance, in Mozilla's "this time search with" function, or Safari's search engine choice menu or bookmarks);

    d.  Google offering or providing something of value to a third party to participate in a choice screen in a browser or device;

    e.  Google entering the Mobile Services Incentive Agreements with AT&T and T- Mobile, the Mobile Framework Service Agreement with Verizon, or a "Go to Market" Agreement with a third party that is based solely on the level of Android activations achieved through a third party's Android device sales;

    f.  Google entering into a marketing agreement with a third party to promote and/or sell any type of Android device, including Google Pixel devices;

    g.  Google purchasing advertising or other promotion in an app store that encourage downloads of the Google Search App, Google Chrome, or Google Gemini Assistant Application; or

h.  Google offering or providing something of value to an original equipment manufacturer (OEM) to place a search-provider agnostic, user-configurable search widget on an Android device.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing eight separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court authorized. Furthermore, Plaintiffs object to these Interrogatories as providing incomplete hypothetical scenarios that cannot be fully evaluated under the Proposed Final Judgment. Plaintiffs state that each of the proposed hypotheticals are fact dependent and any response could change based on unknown fact and circumstances.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Based on the information as presented, and without knowing more, Plaintiffs believe that hypotheticals (a), (b), and (h) would be prohibited by the Proposed Final Judgment under Section IV.A. Based on the information as presented, and without knowing more, Plaintiffs believe that hypotheticals (c), (d), and (g) would be prohibited by a combination of Section IV.B or IX.A. Based on the information as presented, and without knowing more, Plaintiffs believe that hypotheticals (e) and (f) may not violate the Proposed Final Judgment, as long as any payments or other value provided are not "related to a GSE or Search Access Point."

8.    With respect to Section IV.A and IV.B, state the process and standards under which Google should assess whether something of value would "create an economic disincentive to compete in or enter the GSE or Search Text Ad market(s)" or "an economic disincentive for Apple to compete in or enter the GSE or Search Text Ad markets."  Your answer should provide sufficient information to address, at a minimum, the following:
   a.  What economic or other test should be used to determine whether this section is met;
   b.  What information from actual or potential competitors should be used to determine whether such standard is met, and how will Google gain access to such information;

    c.  What level of preparedness to enter the Search or Search Text Ads markets is contemplated of "third parties" or Apple that could experience an "economic disincentive to compete in or enter the GSE or Search Text Ads markets"; and

    d.  Is there a "materiality" or other threshold for whether a payment creates an economic disincentive.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing at least four separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court authorized.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: The phrase "create an economic disincentive to compete in or enter the GSE or Search Text Ad market" in Section IV.A is intended to modify the term "other commercial terms," not "something of value." Thus, to be clear, Sections IV.A prohibits all monetary payments to or the exchange of anything of value with third parties for the enumerated acts in (1)-(3), and Section IV.B prohibits all monetary payments to or the exchange of anything of value with Apple for any purpose. The term "other commercial terms" in Section IV.A is intended to capture situations where Google, through its various commercial dealings with other parties, uses commercial terms (other than money or "something of value") to influence their decision to engage in the enumerated acts in (1)-(3). The term "any commercial terms" in Section IV.B is of a similar nature.

9.    Specify whether any of the below conduct would violate any provision of Plaintiffs' Proposed Final Judgment and if so, identify the particular provision(s):

    a.  Providing a link to Google Search or Google Search functionality in any other Google product (e.g. Google Docs, Gmail, YouTube, Photos, Maps);

    b.  Providing a link to the Google Gemini Assistant Application or Google Gemini functionality in any other Google product (e.g. Google Docs, Gmail, YouTube, Photos, Maps); or

    c.  Distributing the Google Search Application, the Google Assistant Application, and the Google Gemini Assistant Application through a single Application Programming Kit

(APK) as long as the licensee has the option to disable end-user access to any of those applications and services that the licensee declines to license.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing three separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court authorized. Furthermore, Plaintiffs object to these Interrogatories as providing incomplete hypothetical scenarios that cannot be fully evaluated under the Proposed Final Judgment. Plaintiffs state that each of the proposed hypotheticals are fact dependent and any response could change based on unknown facts and circumstances.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Based on the information as presented, and without knowing more, Plaintiffs believe that hypotheticals (a) and (b) would be prohibited by the Proposed Final Judgment under Section V.C. Based on the information as presented, and without knowing more, Plaintiffs cannot evaluate whether hypothetical (c) would violate the Proposed Final Judgment without knowing more about how the license is structured—for example, whether the licensee can pay for one of the products listed without paying for the other products, despite the products being bundled in a single APK.


10.     With respect to Section IV.E, specify what "similar factor[s]" are included in the prohibition on "anything of variable value that is determined or calculated based on the usage of, revenue generated by—or any similar factor for—any particular GSE." Your answer should specify whether any of the below conduct would violate this provision or any other provision of Plaintiffs' Proposed Final Judgment, and if so, identify the particular provision(s):
   a. Google offering or providing a fixed bounty payment to a partner for each device the partner sells irrespective of the number of search queries entered on Google Search on the device;

b. Google offering or providing a variable payment based on the usage of the partner's product (e.g., based on the number of users of a particular browser, not the usage of particular GSE); or

c. Google entering the Mobile Services Incentive Agreements with AT&T and T- Mobile, the Mobile Framework Service Agreement with Verizon, or offering a "Go to Market" agreement that is based solely on the level of Android activations.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing three separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court authorized. Furthermore, Plaintiffs object to these Interrogatories as providing incomplete hypothetical scenarios that cannot be fully evaluated under the Proposed Final Judgment. Plaintiffs state that each of the proposed hypotheticals are fact dependent and any response could change based on unknown facts and circumstances.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Based on the information as presented, and without knowing more, Plaintiffs believe that hypotheticals (a), (b), and (c) may not be prohibited by the Proposed Final Judgment. To be clear, however, Plaintiffs are assuming that none of the payments outlined in the hypotheticals are conditioned, directly or indirectly, on either search usage or the pre-installation or placement of Google search or are otherwise being used to circumvent any provision of the PFJ.

11.    With respect to Section IV.F, address the following:
a. Define what an "interest" means for purposes of Section IV.F and how an "interest" would differ from an "investment" or "holding" in an entity;

b. Identify the name of each entity that today qualifies as a company that controls a Search Access Point or an AI Product as those terms are defined in Plaintiffs' Proposed Final Judgment;

c. Identify each technology that today is a potential entrant in the GSE or Search Text Ads market;

    d.  Identify each technology that today is a reasonably anticipated competitive threat to GSEs; and

    e.  Identify whether the provision applies to any investment, holding or interest that is wholly owned by Google.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing at least five separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court authorized.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: With respect to subpart (a), an "interest" means a financial interest of any kind, which could overlap with "investments" or "holdings" but is also a broader term that encompasses other types of non-equity financial interests, like loan or insurance contracts, joint ventures, or profit-sharing arrangements. With respect to subpart (b), there are many companies that have developed AI technology, rendering it impossible for Plaintiffs to give a comprehensive list. The Court's liability opinion found that Google has for over a decade monopolized, and continues to monopolize, the relevant markets in this matter. As a result, Plaintiffs have proposed remedies intended to restore competition to these monopolized markets, lower entry barriers, and encourage entry. While there is little competitive threat to Google's search and search text ads dominance today, Plaintiffs' proposed remedies are intended to change that fact. Plaintiffs cannot know or define today where the competition from tomorrow will come from. However, in response to subpart (c), potential entrants into GSE or Search Text Ads markets include producers of AI Products and mobile operating systems. With respect to subpart (d), while AI Products are not meaningful competitive constraints on Google search or search text ads today, various AI Products either in production or available today could become GSE competitors or control Search Access Points in the future. In response to subpart

(e), Plaintiffs do not believe that wholly-owned or subsidiary companies would be included within the scope of Section IV.F, however those companies would be subject to the other portions of the decree that govern Google's behavior.

12.     With respect to Section V.A., state whether and how the proposed Chrome divestiture obligation applies to: (i) ChromiumOS; (ii) ChromeOS; (iii) assets used for Chrome features that are also used by other Google products in addition to Chrome (for example, Google Translate, Google Password Manager, Google Account); and (iv) Google personnel essential to maintaining the quality of Chrome.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing four separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court authorized.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs do not believe that the Chrome divestiture in Section V.A would necessarily apply to ChromiumOS or ChromeOS, but Plaintiffs require additional information from remedies discovery in order to provide a complete response. For assets shared between Chrome and other Google products, Plaintiffs do not believe that those assets would necessarily need to be fully divested—however, some form of a transitional services contract may be necessary for the buyer to maintain the proper functioning of Chrome during a transitional period. For Google personnel that are essential to maintaining the quality of Chrome, Plaintiffs believe that the divestiture would apply to those employees, within the bounds of what is typical for a full asset divestiture in any other scenario.

13.     With respect to Section V.B, state the circumstances that would render compliance with or enforcement of the Plaintiffs' Proposed Final Judgment "unadministrable" or "ineffective" and what standards or criteria the Court would apply to determine whether or not to order the divestiture of Android.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs object to this Interrogatory on the ground that it calls for a legal, not factual, conclusion—the legal standards utilized by Plaintiffs and the Court to evaluate a potential future violation of a Final Judgment. Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs do not, and cannot, dictate the standards that the Court would apply in enforcing Section V.B of the Proposed Final Judgment. In the interest of completeness, Plaintiffs believe that the Court should apply this provision if—after a thorough factual examination of competitive conditions at the time as well as Google's conduct relevant to the imposed remedies—the Final Judgment ultimately entered by the Court does not remove the barriers to competition in the GSE or Search Text Ads markets. This could prove to be the case either for administrability reasons (for example, it is too burdensome on the Plaintiffs, Defendant, the Court and/or the Technical Committee to oversee the various remedies) or for effectiveness reasons (for example, regardless of the other remedies in place, Google's continued ownership of Android continues to erect barriers to entry in the relevant markets).

14.     With respect to Sections V. B. and V.C, state whether and how the proposed Android divestiture obligation applies to: (i) WearOS, (ii) AndroidXR, (iii) AndroidAuto, (iv) AndroidTV, (v) ChromeOS; and if it does not, whether and how Google would be able to continue to offer these products. Your answer must state whether devices implementing these platforms are "Device[s]" as used in Plaintiffs' definitions (III.I).

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing five separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court authorized.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: For clarity, the "Android divestiture option" is discussed in Section V.B of the Proposed Final Judgment, not Section V.C. Plaintiffs do not believe the Android divestiture option would apply to any of the products identified in this Interrogatory. Plaintiffs believe Google could continue to offer those products but take no position on "how Google would be able to continue to offer these products," whether it be through a license to Android from the new owner or through some other means. Plaintiffs believe that devices offering the products enumerated in this Interrogatory would, to the extent the user could access general search functionality, be "Devices" within the meaning of III.I.

15.    Identify with specificity any conduct that you claim Google has engaged in or is engaging in today that is prohibited by the provisions of Section V.C, including identifying each "Google-owned or operated asset" implicated and all actions prohibited by Google with respect to each "asset."

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and irrelevant, as Plaintiffs have not taken full discovery on all actions Google has or is taking with respect to all its products. Thus, this Interrogatory is unduly burdensome on Plaintiffs, asking us to have comprehensive knowledge of all of Google's past and present actions and then applying them to our Proposed Final Judgment.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Based on our current knowledge, Plaintiffs believe the current Google actions that violate Section V.C of the Proposed Final Judgment include:

- Self-preferencing of the Google GSE on user-downloaded Chrome

- Agreements to preinstall Google apps on Android phones

- Agreements to preset default of Google apps on Android phones

15

- Gemini interoperability with only Google GSE, Android, and Chrome

16. State whether any of the following conduct is prohibited by the provisions of Section V.C:
   a. Whether Google may use Google Search for grounding in its own AI products;
   b. Whether Google may have Gemini interoperate with a Google product or service (including without limitation Gmail or Google Docs), without offering a non-Google AI Product functionality to interoperate with that same Google product or service;
   c. Whether Google is required to offer equivalent functionality on SA360 and other Google Ads products to Microsoft Ads and other Search Text Ads rivals;
   d. Whether any feature or application available today on Google Pixel devices violates this section, and if so, which; and
   e. Whether Google may have Google Search interoperate with a Google product or service (including without limitation Gmail or Google Docs), without offering a non-Google GSE functionality to interoperate with that same Google product or service.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing five separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what was envisioned by the Court in authorizing these Interrogatories. Furthermore, Plaintiffs object to these Interrogatories as providing incomplete hypothetical scenarios that cannot be fully evaluated under the Proposed Final Judgment. Plaintiffs state that each of the proposed hypotheticals are fact dependent and any response could change based on unknown facts and circumstances.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Based on the information as presented, and without knowing more, Plaintiffs believe that hypotheticals (a), (b), and (e) may all be prohibited by the Proposed Final Judgment under Section V.C. With respect to subpart (c), the initial Proposed Final Judgment prohibits Google from using SA360 to preference Google's GSE or Google's Search Text Ads. To the extent SA360's future

functionality preferences Google's GSE or its own Search Text Ads, such functionality is prohibited by Section V.C of the initial Proposed Final Judgment With respect to subpart (d), Plaintiffs cannot provide an exhaustive list because discovery has not been conducted on all features and applications available on the Pixel. However, the preinstallation and placement on the Pixel of the Google Search App, search widget, Gemini, and Chrome would be prohibited under Section V.C.

17.    With respect to Section V.C, identify the standards Plaintiffs and the Technical Committee will apply to determine whether:
   a.  Google has "undermine[d], frustrate[d], interfere[d] with, or in any way lessen[ed] the ability of a user to discover a rival GSE or of an advertiser to discover or shift its Search Text Ad spending to a rival Search Text Ads provider";
   b.  Google has "limit[ed] the competitive capabilities of a rival GSE or rival Search Text Ads provider; or otherwise impede[d] user discovery of products or services that are competitive threats in the GSE or Search Text Ads markets"; and
   c.  Google has "preference[d] Google's GSE, Search Text Ads, or AI Products" or "provide[d] itself with preferential access to Android or Google-owned apps or data as compared to the access it provides to all other GSEs and AI Products," and identify with specificity any conduct that is prohibited by the foregoing provisions.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs object to this Interrogatory on the ground that it calls for a legal, not factual, conclusion—the legal standards utilized by Plaintiffs to evaluate a potential future violation of a Final Judgment. Plaintiffs further object to this Interrogatory on the ground that it confuses the role of the Court—which determines and applies legal standards—with the role of Plaintiffs, who have discretion to bring conduct that may violate the initial Proposed Final Judgment to the Court's attention.  Plaintiffs further object to this Interrogatory to the extent it suggests that the Technical Committee would be an independent adjudicatory body. Rather, the Technical Committee may make recommendations to Plaintiffs and the Court, for the Court's adjudication. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing three separate Interrogatories into a single inquiry. Thus, this Interrogatory

is unduly burdensome on Plaintiffs, and far beyond the scope of what the Court in authorized. At minimum, this Interrogatory calls for an answer to a question so hypothetical and missing factual bases as to not be answerable.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs cannot answer what standards another body, like a future to-be-created Technical Committee, would use to evaluate whether Google had violated any portion of the Court's ultimate Final Judgment. The Technical Committee will investigate the matter and provide its findings to Plaintiffs. Plaintiffs will then apply the text of Section V.C to those facts and findings, within the context of governing law. Plaintiffs proposed final judgement includes a technical committee which has been demonstrated to "clearly strengthen[]" a decree. *Massachusetts v. Microsoft*, 373 F.3d 1199,1244 (D.C. Cir. 2004). The "technical competence" of the proposed Technical Committee can ensure effective enforcement and "facilitate the resolution of potentially complex and technologically nuanced disputes between [the defendant] and others." *Id.* Indeed, following implementation of the remedy in Microsoft, the district court praised the technical committee as a "lynchpin in the successful effort," which proved "far more effective than the use of a special master." Tr. 29-30, *United States v. Microsoft Corp.*, No. 98-1232 (CKK) (Apr. 27, 2011), ECF No. 930.

18.    State what Plaintiffs' Proposed Final Judgment means by its prohibition in Section V.C on Google "us[ing] its ownership and control of Android, or any other Google product or service, to make any Google GSE, Search Text Ads, or AI Product (including on- device AI) mandatory on Android Devices," in particular specifying what Google may or may not do with respect to preloading and utilizing Google AI (including Gemini products) on Pixel phones  and with respect to incorporating Google AI functionality into Google applications (including Gmail, Maps, and on-device search), and specifying what Google would be required to do with respect to other AI products from Competitors, including:

    a.    Whether the Google Gemini Assistant Application violates Plaintiffs' Proposed Final Judgment to the extent it contains a mechanism to permit a user to conduct follow-on queries via Google Search but has no similar mechanism for, e.g., Bing search;

      b.   Whether Gemini API and Google AI Studio violate Plaintiffs' Proposed Final Judgment to the extent they permit grounding with Google Search but not grounding with, e.g., Bing search;

      c.   Whether Gmail violates Plaintiffs' Proposed Final Judgment to the extent it includes an email-drafting tool that relies on Gemini but contains no similar functionality powered by, e.g., an OpenAI model;

      d.   Whether the Google Gemini Assistant Application violates Plaintiffs' Proposed Final Judgment to the extent it is powered by Google's Gemini models with no mechanism to cause the application to rely on, e.g., OpenAI's models.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing five separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what was envisioned by the Court in authorizing these Interrogatories. Furthermore, Plaintiffs object to these Interrogatories as providing incomplete hypothetical scenarios that cannot be fully evaluated under the Proposed Final Judgment. Plaintiffs state that each of the proposed hypotheticals are fact dependent and any response could change based on unknown facts and circumstances.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: The quoted language from Section V.C of Plaintiffs' Proposed Final Judgment is intended to highlight the fact that, if adopted, Google would still control Android, and by extension the Compatibility Test Suite and Compatibility Definition Document. Therefore, this section is intended to apply to situations where Google, through its control over Android compatibility, would either implicitly or explicitly coerce Android distributors to use Google Search, Google Search Text Ads, or a Google AI product, by failing to certify devices as compatible if they utilized a Google competitor or slowing down the certification process so as to practicably fail to certify those devices.

With respect to "what Google may or may not do with respect to preloading and utilizing Google AI (including Gemini products) on Pixel phones," the current Proposed Final Judgment would prevent Google from preloading the Gemini app (or other Google AI apps) on Pixel phones. With respect to subparts (a)-(d), based on the information as presented, and without knowing more, Plaintiffs believe that all would violate the Proposed Final Judgment.

19.    With respect to Sections VI and VII, specify the criteria that will determine whether a Qualified Competitor is "enabled to . . . understand Google's ranking rationale, and how Google modified or refined the user's query."

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object that fact discovery is still ongoing, which could inform the criteria that would be used in response to this Interrogatory.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: For the sake of clarity, the quoted language in this Interrogatory appears only in Section VII, not VI, and applies to the syndication license envisioned by Section VII.A. Plaintiffs cannot, *ex ante*, determine the criteria (if any beyond those already specified in the Proposed Final Judgment) that would guide our evaluation of whether the syndication license provided the licensee with the information that would allow it to "understand Google's ranking rationale, and how Google modified or refined the user's query." Such an evaluation is highly fact-specific and Plaintiffs would evaluate both subjective and objective evidence. As laid out in Section VII.D, complaints regarding compliance with VII.A would first be raised with the Technical Committee—a body of experts that could more appropriately, at the time, evaluate whether the complaint had merit.

20.     State whether the provision in Section VI.A.4 ("Nothing in this Section VI purports to transfer intellectual property rights of third parties to index users.") modifies Google's obligations under Plaintiffs' Proposed Final Judgment, including specifying whether the data Google would be required to provide to Qualified Competitors includes content that Google licenses from third parties.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows:

Section V.A.4 does not modify Google's obligations under the Proposed Final Judgment. As made clear in Sections V.A.1, the Search Index that Google must make available to Qualified Competitors must be one that is "equally available" to Google. Therefore, to the extent Google licenses data that it includes in its Search Index, it must provide that data to Qualified Competitors. If the license does not allow for such a provision (and Google cannot renegotiate the license to allow it), then Google must not use that data in its Search Index.

21.     With respect to Sections VI.C and VI.E, specify the criteria that will determine whether the "security and privacy safeguards" are sufficient to provide Qualified Competitors access to User-Side Data and Ads Data, and whether such privacy and security safeguards must be at least equal to those provided by Google.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object that fact discovery is still ongoing, which could inform the criteria that would be used in response to this Interrogatory.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs cannot, *ex ante*, determine the criteria (if any beyond those already specified in the Proposed Final Judgment) to evaluate the sufficiency of security and privacy safeguards for a remedy that has not yet been imposed. The Proposed Final Judgment envisions that Plaintiffs will work closely with the Technical Committee to evaluate the circumstances to determine when those

safeguards are sufficient. Parity with Google's own privacy and security safeguards, as well as compliance with other relevant industry standards, would be a significant factor that Plaintiffs would consider in discharging its obligations under Sections VI.C and VI.E.

22.    With respect to VII.A.1.(b), identify the criteria that will determine the "scope of allowable syndication."

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object that fact discovery is still ongoing, which could inform the criteria that would be used in response to this Interrogatory.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs cannot, *ex ante*, determine the criteria (if any beyond those already specified in the Proposed Final Judgment) that would determine the "scope of allowable syndication." However, it is Plaintiffs' goal to allow the minimum amount of syndication necessary to restore competition in the relevant markets—not further entrench Google's monopoly in search through extensive syndication agreements. Furthermore, as is explicit in Section VII.A.1.(b), the scope is expected to change over time, as syndication may no longer be needed by licensees at a later date. Plaintiffs expect to consult with the Technical Committee to determine a reasonable scope of allowable syndication, given the state of the market and capabilities of Google's competitors. As explicit within this section, Plaintiffs expect that the allowable syndication would taper to zero at the end of the 10-year period (and perhaps sooner).

23.    With respect to VI.D, identify the criteria that will determine "[t]he maximum number of allowable synthetic queries."

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object that fact discovery is still ongoing, which could inform the criteria that would be used in response to this Interrogatory.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs cannot, *ex ante*, determine the criteria (if any beyond those already specified in the Proposed Final Judgment) that would determine the "maximum number of allowable synthetic queries." Furthermore, as is implicit in Section VI.D, that number might change over time (for example, the number of allowed synthetic queries going down as Qualified Competitors no longer need the data). Plaintiffs expect to consult with the Technical Committee to determine a reasonable number of allowable synthetic queries, given the state of the market and capabilities of Google's competitors.  Among other factors, Plaintiffs will consider the maximum allowable queries ultimately agreed between Google and Yahoo Japan as an appropriate number to be allowed by Section 2.7 of Google's agreement with Yahoo Japan, as well as the relative size of the United States market, as compared to Japan.

24.    With respect to Sections VII.A & VII.B, identify the standards that Google would be required to use in determining whether "steps" Google "take[s] to protect its brand, its reputation, and security" are "reasonable," including but not limited to whether there is any standard the satisfaction of which would allow Google to place "conditions on how any licensee may use syndicated content."

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs cannot, *ex ante*, identify a set of standards (if any beyond those already specified in the Proposed Final Judgment) that can be applied across all circumstances after the Proposed Final

Judgment is imposed. The evaluation of what is "reasonable" under the circumstances is highly fact-specific, and would include, at a minimum: the scope of actions taken by Google; the relatedness of Google's actions to its brand, reputation, and/or security; and whether Google has taken similar steps in other similar circumstances. Plaintiffs do not believe that the "steps" envisioned by Sections VII.A and VII.B include Google placing "conditions on how any licensee may use syndicated content."

25.    With respect to Section VIII.A, identify "any other metric necessary for the advertiser to evaluate its ad performance" and whether Google can charge advertisers for providing the data described in this section.

    **RESPONSE:**

    Plaintiffs incorporate their general objections as though set forth fully herein.

    Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs cannot identify all metrics that may be available or kept by Google that are necessary for the advertiser to evaluate the performance of its ads. Plaintiffs expect that advertisers would make those metrics known to Google in the regular course and request that data from Google, if it is kept. However, at minimum, the metrics would include all conversion or attribution information, as well as the other metrics identified in VIII.A. Furthermore, as made clear by Section VIII.E, it is the Technical Committee that would, in the first instance, be able to evaluate whether Google has complied with the rest of Section VIII. It is Plaintiffs' position that Google could not charge for the data called for by Section VIII.A beyond what Google currently charges for ads and related data.

26.    With respect to Section VIII.C, identify the "data or information relating to their entire portfolio of ads or advertising campaigns bid on, placed through, or purchased through Google" that is encompassed by this provision, including whether it encompasses data from ad formats that are not Search Text Ads.

    **RESPONSE:**

    Plaintiffs incorporate their general objections as though set forth fully herein.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: Plaintiffs do intend that Section VIII.C would apply to ads that are not Search Text Ads, including an advertiser's entire portfolio of ads with Google. Furthermore, it is impossible for Plaintiffs to identify all "data or information relating to their entire portfolio of ads or advertising campaigns bid on, placed through, or purchased through Google," especially as ad formats and metrics evolve over time. However, at minimum, the data would include all data identified in VIII.A and all data maintained in Google's Ads Data Hub or similar products. To the extent ads data for specific ads or advertisers is logged, maintained, collected, or used by Google, Section VIII.C would prevent Google from limiting that export to the advertiser or entity placing the ads.

27.     With respect to Section VIII.D, describe:
   a.   What constitutes a "change[] made" to Google's Search Text Ads auction (e.g., would a bug fix, or an experiment conducted on some but not all Search Text Ads auctions constitute a "change[] made");
   b.   What criteria will be used to determine whether "public disclosure is necessary"; and
   c.   How Plaintiffs will determine whether a disclosure of a change made to Google's Search Text Ads auction is "inadequate."

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further object to this Interrogatory as overbroad and compound, encompassing three separate Interrogatories into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what was envisioned by the Court in authorizing these Interrogatories. Furthermore, Plaintiffs object to these Interrogatories as providing incomplete hypothetical scenarios that cannot be fully evaluated under the Proposed Final Judgment. Plaintiffs state that each of the proposed hypotheticals are fact dependent and any response could change based on unknown fact and circumstances.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows:

As to subpart (a), Section VIII.D is intended to capture all auction-related "launches," as described in

Jerry Dishler's trial testimony, including Mr. Dischler's testimony that auction tunings and the use of

pricing knobs constitute "launches." Tr. 1205:19–1207:19 (Dischler (Google)).  However, and

relevant to subpart (b), Plaintiffs believe that, to the extent any bug fixes or experiments constitute a

launch, the launch's scope would be relevant to the inquiry on whether public disclosure is necessary.

As to subpart (c), each inquiry is hypothetical and would require a highly fact specific evaluation at

the time to determine whether the notice given was adequate (or required at all). However, as a

general matter, Plaintiffs believe that material changes to the Search Text Ads auction should be

made public to advertisers so that they can make more informed choices, and that a launch would

likely be material if it implemented a change that an advertiser of reasonable sophistication would

consider in optimizing, analyzing, or allocating its search advertising optimization, spend, or bidding

strategies.

28.    With respect to Section IX.A, list all actions Google must affirmatively take to "offer the
Distributor the option to display a Choice Screen" for "every Google Search Access Point that was
preinstalled under a distribution agreement before the date of entry of this Final Judgment." Your
answer must, at a minimum:
   a.  List all current "Google Search Access Point[s]" for which this provision would apply;
   b.  State whether Google must design (and pay engineering costs) of the choice screen and
       state how disputes between the Distributor and Google over design, engineering, and
       resources would be resolved;
   c.  State whether Google or the applicable Distributor would determine which services must
       appear in the choice screen and on what terms.

**RESPONSE:**

Plaintiffs incorporate their general objections as though set forth fully herein. Plaintiffs further

object to this Interrogatory as overbroad and compound, encompassing three separate Interrogatories

into a single inquiry. Thus, this Interrogatory is unduly burdensome on Plaintiffs, and far beyond the scope of what was envisioned by the Court in authorizing these Interrogatories.

Subject to the general and specific objections set forth above, Plaintiffs respond as follows: With respect to subpart (a), the "Google Search Access Point[s]" include the Google Search App, Google Search Widget, and the Chrome browser. With respect to subpart (b), the choice screen must be approved by Plaintiffs to ensure that its design is not biased to favor Google. Google, as the party bound by the Final Judgment, is responsible for ensuring that the Final Judgment is implemented and shall bear all costs associated with that implementation. With respect to subpart (c), the Distributor would ultimately decide what services appear on the applicable choice screen.

## SPECIFIC OBJECTIONS AND RESPONSES
## FROM COLORADO PLAINTIFF STATES

29. With respect to Section IX.F, specify in dollar amounts what are "reasonable, short-term incentive payments to users who voluntarily choose a non-Google default GSE on a Choice Screen" and whether such payments would be made available to users outside the United States.

**RESPONSE:**

Colorado Plaintiff States incorporate their general objections as though set forth fully herein.

Subject to the general objections set forth above, Colorado Plaintiff States respond as follows: Section IX.F of the Proposed Final Judgment states that Google will fund a nationwide advertising and education program. The purpose of that program is to inform users of the outcome of this litigation and the remedies in the Final Judgment, lower entry barriers created by Google's brand recognition, and increase the effectiveness of other remedies. That program may also require Google to fund reasonable, short-term incentive payments to users in the United States. As with all aspects of the program, Colorado Plaintiff States expect to work with the Technical Committee to determine an appropriate approach and amount for incentives sufficient, in combination with the other remedies, to

address Google's artificially enhanced brand recognition. That may include direct payments to consumers, which Colorado Plaintiff States anticipate would be relatively small sums for a relatively short time period.

30.    With respect to Section IX.F, specify the "predicted outcomes, retrospective analyses, and testing" that the State AGs will use to evaluate the Public Education Fund's "expenditures."

**RESPONSE:**

Colorado Plaintiff States incorporate their general objections as though set forth fully herein.

Subject to the general objections set forth above, Colorado Plaintiff States respond as follows: Section IX.F of the Proposed Final Judgment states that Google will fund a nationwide advertising and education program. The purpose of that program is to inform users of the outcome of this litigation and the remedies in the Final Judgment, lower entry barriers created by Google's brand recognition, and increase the effectiveness of other remedies. That program may also require Google to fund reasonable, short-term incentive payments to users who voluntarily choose a non-Google default on a choice screen.

The Proposed Final Judgment authorizes the Technical Committee, in consultation with Colorado Plaintiff States, to conduct experiments regarding the design, implementation, and expenditures of this program. Among other factors, Colorado Plaintiff States may consider the expenditures of other nationwide public education campaigns, including those implemented as a result of litigation or a litigation settlement.

Dated: February 18, 2025     Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA

/s/ Ryan S. Struve
David E. Dahlquist
Adam T. Severt
Travis R. Chapman (D.C. Bar #90031151)
Diana A. Aguilar Aldape
Karl E. Herrmann (D.C. Bar #1022464)
Veronica N. Onyema (D.C. Bar #979040)
Ryan S. Struve (D.C. Bar # 495406)

U.S. Department of Justice
Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-6158
David.Dahlquist@usdoj.gov
Adam.Severt@usdoj.gov

Counsel for Plaintiff
United States of America

By:___/s/ Christoper A. Knight_____
John M. Guard, Acting Attorney General,
Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Christopher A. Knight, Assistant Attorney
General
Office of the Attorney General, State of
Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com
Christopher.Knight@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:____/s/ Diamante Smith_____
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant Attorney
General
Austin Kinghorn, Deputy Attorney General for
Civil Litigation
Diamante Smith, Assistant Attorney General,
Antitrust Division
Office of the Attorney General, State of Texas
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1162
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:____/s/ Carolyn D. Jeffries_____
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General
Brian Wang, Deputy Attorney General
Carolyn D. Jeffries, Deputy Attorney General
(DC Bar No. 1600843)
Office of the Attorney General

California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*

Matthew M. Ford
Arkansas Bar No. 2013180
Senior Assistant Attorney General
Office of the Arkansas Attorney General Tim
Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney General
Ronald J. Stay, Jr., Senior Assistant Attorney
General
Charles Thimmesch, Senior Assistant Attorney
General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and Director,
Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of
Indiana
Indiana Government Center South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the
Office of Consumer Protection
Philip R. Heleringer, Executive Director of the
Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive
Director of the Office of Consumer Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of
Kentucky*

Liz Murrill, Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
voelkerp@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Michael Schwalbert
Missouri Bar No. 63229
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov

Phone: 314-340-7888
Fax: 314-340-7981

*Counsel for Plaintiff State of Missouri*

Lynn Fitch, Attorney General
Crystal Utley Secoy, Assistant Attorney
General
Lee Morris, Special Assistant Attorney
General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Crystal.Utley@ago.ms.gov
Lee.Morris@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

Anna Schneider
Special Assistant Attorney General, Senior
Counsel
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant Deputy
Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General, State of South
Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549

mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

Joshua L. Kaul, Attorney General
Laura E. McFarlane, Assistant Attorney
General

Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
mcfarlanele@doj.state.wi.us

*Counsel for Plaintiff State of Wisconsin*

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

MIKE HILGERS
Attorney General of Nebraska

Justin C. McCully, Assistant Attorney
General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
E-Mail: Justin.mccully@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

JEFF JACKSON
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
Jessica Vance Sutton
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov
jsutton2@ncdoj.gov

*Counsel for Plaintiff State of North
Carolina*

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

DEREK E. BROWN
Attorney General of Utah

Matthew Michaloski, Assistant Attorney
General
Marie W.L. Martin, Deputy Division
Director
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140811
Salt Lake City, Utah 84114
Telephone: (801) 440-9825

E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

TREGARRICK TAYLOR
Attorney General of Alaska

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of
Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

BRIAN SCHWALB

Attorney General of the District of
Columbia

Elizabeth Gentry Arthur
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org

*Counsel for Plaintiff Territory Guam*

ANNE E. LOPEZ
Attorney General of Hawaiʻi

Rodney I. Kimura
Department of the Attorney General, State
of Hawaiʻi
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawaiʻi*

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. Jefferson St., 2nd Floor
P.O. Box 83720

Boise, ID 83720
Telephone: (208) 332-3549
E-Mail:  John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov
Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

Schonette J. Walker
Gary Honick
Office of the Attorney General of
Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

ANDREA CAMPBELL
Attorney General of Massachusetts

Jennifer E. Greaney
Office of the Attorney General of
Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2981
E-Mail: Jennifer, greaney@mass.gov

*Counsel for Plaintiff Commonwealth of
Massachusetts*

KEITH ELLISON
Attorney General of Minnesota

Zach Biesanz
Senior Enforcement Counsel
Office of the Minnesota Attorney General
Antitrust Division
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker
Nevada Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mbadorine@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.

Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust
Division
Office of the Attorney General of North
Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North
Dakota*

DAVID YOST
Attorney General of Ohio

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26ᵗʰ Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail:
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson
Office of the Oklahoma Attorney General

313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-1014
E-Mail: Robert.carlson@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

DAN RAYFIELD
Attorney General of Oregon

Cheryl Hiemstra, Special Assistant
Attorney General
Gina Ko, Assistant Attorney General
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.Hiemstra@doj.oregon.gov
Gina.Ko@doj.oregon.gov

*Counsel for Plaintiff State of Oregon*

MICHELLE HENRY
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

DOMINGO EMANUELLI
HERNANDEZ
Attorney General of Puerto Rico
Guarionex Diaz Martinez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902

Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov
*Counsel for Plaintiff State of Vermont*

JASON S. MIYARES
Attorney General of Virginia

Tyler T. Henry
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

ROBERT FERGUSON
Attorney General of Washington

Amy Hanson
Senior Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

JOHN B. McCUSKEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of West Virginia
1900 Kanawha Boulevard
East Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

BRIDGET HILL
Attorney General of Wyoming

William T. Young
Wyoming Attorney General's Office
2320 Capitol Avenue

Kendrick Building                              E-Mail: William.young@wyo.gov
Cheyenne, WY 82002
Telephone: (307) 777-7847                      *Counsel for Plaintiff State of Wyoming*