## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

                Plaintiffs,

v.

GOOGLE LLC,

                Defendant.

Case No. 1:20-cv-03010-APM

HON. AMIT P. MEHTA

STATE OF COLORADO, *et al.*,

                Plaintiffs,

v.

GOOGLE LLC,

                Defendant.

Case No. 1:20-cv-03715-APM

HON. AMIT P. MEHTA

## EXECUTIVE SUMMARY OF PLAINTIFFS'
## REVISED PROPOSED FINAL JUDGMENT

I.      **Introduction**

Google is the gateway to the internet. Its search engine provides instant results. The importance of those results to modern commerce and communication means that every single day, the American people depend on Google. For their everyday needs. For their emergencies. In their search to find valuable results to minor queries or questions of profound significance, Americans have learned to "Google it."

The American people's reliance on Google's search engine is well-known. Less understood, however, is how Google—through its unlawful and unchecked, monopolistic conduct over the past decade—secured the American people's reliance. Google's anticompetitive conduct has denied users of a basic American value—the ability to choose in the marketplace. Through its sheer size and unrestricted power, Google has robbed consumers and businesses of a fundamental promise owed to the public—their right to choose among competing services. Google's illegal conduct has created an economic goliath, one that wreaks havoc over the marketplace to ensure that—no matter what occurs—Google always wins. American consumers and businesses suffer from Google's conduct. The consumer is deprived of marketplace competition that drives down prices and spurs innovation amongst competitors. Businesses struggle to innovate and survive as they are subjected to the wrath of an unlawful monopolist. The American people thus are forced to accept the unbridled demands and shifting, ideological preferences of an economic leviathan in return for a search engine the public may enjoy. The path to monopolies often begins with free goods and the promise of an exciting future and ends under the control of an economic "autocrat of trade." Simply put, when the product is free, the American people are the product. For years, Google has been allowed to maintain its status as a monopolist without issue.

Yet, monopolies are incompatible with free markets and freedom more generally. The American dream is about higher values than just cheap goods and "free" online services. These values include freedom of speech, freedom of association, freedom to innovate, and freedom to compete in a market undistorted by the controlling hand of a monopolist. Google's conduct presents genuine danger to freedom in the marketplace and to robust competition in our economy. These concerns prompted the United States and Plaintiff States to sue Google in 2020.

And against these market realities, the Court found Google liable under Section 2 of the Sherman Act for maintaining monopolies in U.S. general search services and U.S. general search text advertising. Mem. Op., *United States et al. v. Google LLC*, 20-cv-3010 (APM), ECF No. 1032, at 276 ("Mem. Op."). The Court's detailed liability opinion on August 5, 2024, meticulously describes the harms that Google's unlawful conduct has created in these critical digital marketplaces. *See, e.g.*, Mem. Op. at 3 ("[M]ost devices in the United States come preloaded exclusively with Google. These distribution deals have forced Google's rivals to find other ways to reach users."); *id*. at 25, 226, 236–42 (Google has controlled the most popular distribution channels for more than a decade, leaving rivals with little-to-no incentive to compete for users); *id*. at 233 (rivals cannot compete for these distribution channels because Google's monopoly-funded revenue share payments disincentivize its partners from diverting queries to Google's rivals).

On November 20, 2024, Plaintiffs filed their Initial Proposed Final Judgment ("IPFJ"). Plaintiffs' IPJF focused on restoring competition in the general search services and general search text advertising markets, addressing the scale advantage that Google's unlawful monopoly maintenance afforded it, and preventing Google from circumventing the remedy by other means, such as leveraging the fast-evolving AI space to further entrench its general search services and

general search text advertising monopolies. Those interconnected and self-reinforcing remedies

sought to: (1) stop and prevent exclusion; (2) prevent Google from self-preferencing; (3) disclose

data critical to restoring competition; (4) increase transparency and control for advertisers;

(5) end Google's unlawful distribution; and (6) allow for the enforcement of the proposed

judgment while preventing circumvention.[1] Of particular note, Plaintiffs' IPFJ prohibited Google

from making search-related payments to its search distribution partners, required Google to

divest Chrome—a critical search access point through which more than 30 percent of search

inquiries are routed—and contained a contingent Android divestiture at Google's or the Court's

election.

Now, with the benefit of further remedies discovery, and consistent with the Court's

September 18, 2024 Scheduling Order, *see* ECF No. 1043, Plaintiffs respectfully submit their

Revised Proposed Final Judgment ("RPFJ"), attached as Exhibit A. Plaintiffs' RPFJ maintains

the core components of the initial proposal, namely the prohibition on search-related payments to

distribution partners that have effectively frozen the ecosystem for over a decade, raised

insurmountable barriers to new entry, and created a system dependent on Google's monopoly

payments. The RPFJ reaffirms Plaintiffs' proposal to end such payments, while making minor

clarifications to minimize unintended consequences, and to also allow for Apple to receive

payments unrelated to search. In addition, the RPFJ also reaffirms that Google must divest the

---

[1]    In stark contrast, Google offered a competing Initial Proposed Final Judgment that ignores the
Court's factual findings and legal holdings and instead preserves the status quo—containing
only modest changes to its distribution contracts with Apple, carriers, OEMs and third-party
distributors. Google's proposal falls woefully short of restoring competition to markets that
have been harmed by Google's unlawfully entrenched monopolies and is inconsistent with
remedies caselaw. *See* ECF No. 1108-1.

Chrome browser—an important search access point—to provide an opportunity for a new rival to operate a significant gateway to search the internet, free of Google's monopoly control.

Although the core components of Plaintiffs' final judgment remain, a few significant items have changed. As detailed further below, Plaintiffs no longer seek the mandatory divestiture of Google's AI investments in favor of a prior notification for future investments and have modified the ads syndication remedy to focus on parity, transparency, and control, while removing the query volume limitation and implementing marginal cost pricing only as contingent relief if Plaintiffs' other remedies are not effective at restoring competition. Plaintiffs also make additional clarifying changes to the self-preferencing sections in order to resolve ambiguities, prevent unintended consequences, and address the Court's concern that Plaintiffs' IPFJ lacked sufficient detail in some areas. *See* Jan. 17, 2025 Status Hearing Tr. (attached as Exhibit B) at 39-42, 87-89. For the Court's convenience, a redline to Plaintiffs' IPFJ is attached as Exhibit C.

## II. In Fulfilling Its Duty to Order Effective Relief, This Court Has Broad Discretion To Fashion A Remedy

Under 15 U.S.C. § 4, the United States has the "duty" to institute proceedings in equity to "prevent and restrain" Sherman Act violations, including monopolization. And having found that Google unlawfully monopolized the general search services and general search text advertising markets, "it is the duty of the court to prescribe relief" terminating those monopolies and preventing their recurrence. *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 250 (1968); *see also United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950) (the court has the "duty" to impose a remedy to "cure the ill effects of the illegal conduct, and assure the public freedom from its continuance"). This Court has "broad discretion to enter that relief it calculates will best remedy the conduct it has found to be unlawful." *United States v. Microsoft Corp.*, 253

F.3d 34, 105 (D.C. Cir. 2001). Moreover, "'it is well settled that once the Government has successfully borne the considerable burden of establishing a violation of law, all doubts as to the remedy are to be resolved in its favor.'" *Ford Motor Co. v. United States*, 405 U.S. 562, 575 (1972) (quoting *United States v. E.I. du Pont de Nemours & Co.,* 366 U.S. 316, 334 (1961)).

The "key to the whole question of an antitrust remedy is of course the discovery of measures effective to restore competition." *du Pont,* 366 U.S. at 326. Otherwise, "the Government has won a lawsuit and lost a cause." *Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947). The remedy "should unfetter a market from anticompetitive conduct *and* pry open to competition a market that has been closed by defendants' illegal restraints." *Ford Motor*, 405 U.S. at 577-78 (emphasis added) (quotation marks omitted). The remedy should have a "comprehensive" and "unitary framework" to restore competition with provisions "intended to complement and reinforce each other." *See New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 170 (D.D.C. 2008). The remedy must (1) unfetter the search and related advertising from the harm that Google's exclusionary conduct caused, (2) "terminate the illegal monopol[ies]," (3) "deny to [Google] the fruits of its statutory violations," and (4) ensure there remain no practices in place during the judgment period that are likely to result in Google monopolizing these markets in the future. *See Microsoft*, 253 F.3d at 103 (quoting *Ford Motor*, 405 U.S. at 577, and *United Shoe*, 391 U.S. at 250). This Court "is clothed with 'large discretion'" in adopting remedial provisions that meet these distinct ends. *Ford Motor*, 405 U.S. at 573 (quoting *Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947)).

Because antitrust remedies are not limited to eradicating existing evils, it is "entirely appropriate" for an injunction to "go[] beyond a simple proscription against the precise conduct previously pursued." *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 698 (1978). A

decree can include "forward-looking provisions" to restore competitive conditions, *Mass. v. Microsoft*, 373 F.3d 1199, 1215-25 (D.C. Cir. 2004), and to "eliminat[e] the consequences of the illegal conduct." *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 698.  In addition, the remedy may restrict otherwise lawful conduct "to preclude the revival of the illegal practices," *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 430 (1957), and the court has "'broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed.'" *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 132 (1969) (quoting *N.L.R.B. v. Express Publishing Co*., 312 U.S. 426, 435 (1941)). A remedy going beyond a proscription of the specific exclusionary conduct identified in this Court's liability opinion is necessary to restore competition to the monopolized markets here. "Network effects" and "data feedback loops"— both of which played a prominent role in the Court's liability finding[2]—have amplified the effects of anticompetitive conduct in these markets, entrenching monopoly power. Mem. Op. at 8-9; *see Microsoft*, 253 F.3d at 55 (network effects create a "chicken-and-egg" situation in which the dominant platform becomes difficult to dislodge); *see also Schine Chain Theaters, Inc. v. United States*, 334 U.S. 110, 128 (1948) ("If all that was done was to forbid a repetition of the illegal conduct, those who had unlawfully built their empires could preserve them intact. They could retain the full dividends of their monopolistic practices and profit from the unlawful restraints of trade which they had inflicted on competitors.").

Plaintiffs look forward to engaging further with the Court on the legal standard during trial and in pre- and post-trial briefing.

---

[2]  *See, e.g.*, Mem. Op. at 226 ("Scale is the essential raw material for building, improving, and sustaining a GSE.").

### III.    Plaintiffs' Revised Proposed Final Judgment

On November 20, 2024, Plaintiffs filed their IPFJ. *See generally* ECF Nos. 1062 and 1062-1. Our RPFJ continues to, among other things: prohibit Google (with limited exceptions) from making search-related payments to Apple and non-Apple search distribution partners, *see* RPFJ ¶¶ IV(A)-(B); require Google to divest Chrome—a critical distribution point—to shield against self-preferencing, *see* RPFJ ¶ V(A); contain a contingent Android divestiture provision, *see* RPFJ ¶ V(C); and require Google to share data to offset the scale disadvantage that its unlawful conduct has created, *see* RPFJ ¶ VI. The RPFJ changes insofar as it substitutes notification for prohibition of AI investments, no longer requires immediate marginal-cost pricing for ad syndication or offers Google the option of divesting Android now, and makes additional clarifying changes aimed to resolve ambiguities, prevent unintended consequences, and address the Court's concerns.

### A.    Remedies To Stop And Prevent Exclusionary Third-Party Agreements

An effective remedy must prevent Google from executing contracts that foreclose or otherwise exclude competing general search engines and potential entrants, including by raising their costs, discouraging their distribution, or depriving them of competitive access to inputs. To that end, Plaintiffs' proposed remedies have not changed from the IPFJ as a substantive matter, other than to allow Google to make non-search-related payments to Apple.

As detailed in Section IV, the RPFJ prohibits Google from providing third parties something of value (including financial payments) in order to make Google the default general search engine or otherwise discourage those third parties from offering competing search products. *See* Mem. Op., at 216 (finding "Google's distribution agreements are exclusionary contracts that violate Section 2" and "'clearly have a significant effect in preserving [Google's] monopoly.'") (alteration in original) (quoting *Microsoft Corp.*, 253 F.3d 34 at 79)) (*see also id.*

at 106 ("Absent such causation, the antitrust defendant's unlawful behavior should be remedied by "an injunction against continuation of that conduct."). Based on the Court's input and comments, Plaintiffs have modified and clarified language contained in the initial proposal related to economic incentives that the Court identified as potentially vague. *See* RPFJ ¶ IV(G).

The RPFJ also prohibits Google from entering exclusive agreements with content publishers; bundling, tying, or commingling its general search engine or search access point with any other Google product; entering revenue share agreements related to the distribution of general search services; or participating in investments in, collaborations with, or acquisitions of its competitors or potential competitors in the general search services or general search text ads markets without prior notification to Plaintiffs. Each of these remedies are designed to end Google's unlawful practices and open up the market for rivals and new entrants to emerge.

## B.    Prohibited Ownership And Control That Enables Self-Preferencing

An effective remedy must safeguard against further market foreclosure and the exclusion of rivals through the use of self-preferencing. To that end, the RPFJ continues to require Google to divest Chrome. *See* RPFJ ¶ V(A). *See also* Mem. Op. at 159 (Chrome default is "a market reality that significantly narrows the available channels of distribution and thus disincentivizes the emergence of new competition."). In contrast, evidence gleaned from remedies discovery indicates a risk that prohibiting Google from owning or acquiring any investment or interest in any search or search text ad rival, search distributor, or rival query-based AI product or ads technology could cause unintended consequences in the evolving AI space. Plaintiffs are no longer advocating for this specific remedy; however, they continue to be concerned about Google's potential to use its sizable capital to exercise influence in AI companies. As a result, Plaintiffs included an advance notification provision to permit a review of proposed transactions. *See* RPFJ ¶ IV(I).

Finally, Plaintiffs' RPFJ continues to provide for further contingent structural relief—the divestiture of Android—if Plaintiffs' proposed conduct remedies are not effective in preventing Google from improperly leveraging its control of the Android ecosystem to its advantage, or if Google attempts to circumvent the remedy package. *See* RPFJ ¶ V(C); *United Shoe*, 391 U.S. at 249–51 (If "the decree had not achieved the adequate relief to which the Government is entitled in a § 2 case, it would have been the duty of the court to modify the decree so as to assure the complete extirpation of the illegal monopoly.").[3] However, Plaintiffs are no longer requesting a provision that allows Google to divest Android at the outset in lieu of adhering to the requirements of Section V as they relate to Android. *Compare* IPFJ ¶ V(B) *with* RPFJ ¶ V.

### C.    Conduct Remedies That Prevent Self-Preferencing

An effective remedy must also ensure that Google cannot circumvent the Court's remedy by providing its search products preferential access to related products or services that it owns or controls, including mobile operating systems (e.g., Android), apps (e.g., YouTube), or AI products (e.g., Gemini) or related data. This aspect of Plaintiffs' RPFJ has not substantively changed, although it removes certain language that created ambiguity and could result in unintended consequences. *See* RPFJ ¶ V(B).

As noted in Section V, the RPFJ prohibits, among other things, Google from using any owned or operated asset to preference its general search engine or search text ad products. The RPFJ further prohibits Google from engaging in conduct that undermines, frustrates, interferes with, or in any way lessens the ability of a user to discover a rival general search engine, limits the competitive capabilities of rivals, or otherwise impedes user discovery of products or services that are competitive threats to Google in the general search services or search text ads markets.

---

[3]    As the Court in *Microsoft* recognized, "conduct remedies may be unavailing" in cases such as this, where "years have passed since [Google] engaged in the first conduct." 253 F.3d at 49.

*See* RPFJ ¶ V(B); *see also* Mem. Op. at 210 (finding that Google's contractual requirements that "all Android devices featuring the Google Search Widget and Chrome on the home screen to the exclusion of rivals" was an unlawful exclusive agreement).

### D. Restoring Competition Through Syndication And Data Access

Data at scale is the "essential raw material" for "building, improving and sustaining" a competitive GSE. Mem. Op. at 226 (finding that "Google's exclusive agreements…deny rivals access to user queries, or scale, needed to effectively compete."). Through its unlawful behavior, Google has accumulated a tremendous amount of data over many years, at the expense of its rivals. *Id*. Plaintiffs' RPFJ aims to correct this anticompetitively acquired advantage. Of particular note, the data sharing remedies have not changed as a substantive matter since Plaintiffs filed our IPFJ; however, they contain additional detail, consistent with the Court's observation that the data remedies lacked sufficient detail. *See* RPFJ ¶¶ VI(A)-(F); *see*, *e.g.*, January 17, 2025 Status Hearing Transcript at 39-42, 87-88.

In addition, and as it relates to search text ads, the RPFJ no longer requires Google to immediately price search text ads syndicated to Qualified Competitors at marginal cost, nor does it limit Qualified Competitors to syndicating 25 percent or less of their search text ads from Google. Instead, the RPFJ focuses on providing parity, transparency, and control to Qualified Competitors syndicating search text ads from Google and marginal cost pricing for ad syndication. *Compare* IPFJ ¶ VII(B) *with* RPFJ ¶ VII(D) & VIII(E).

As set forth in Section VI, the RPFJ requires Google, among other things, to make critical portions of its search index available at marginal cost, and on an ongoing basis, to rivals and potential rivals; and also requires Google to provide rivals and potential rivals both user-side and ads data for a period of ten years, at no cost, on a non-discriminatory basis, and with proper privacy safeguards in place. Section VI further requires that Google provide to publishers,

websites and content creators crawling data rights (such as the ability to opt out of having their content crawled for the index or training of large language models or displayed as AI-generated content).

To remove barriers to entry and erode Google's unlawfully gained scale advantages, Section VII requires Google to syndicate (subject to certain restrictions) its search results, ranking signals, and query understanding information for 10 years. *See Mass.*, 373 F.3d at 1218 (disclosure of APIs "represent[ed] a reasonable method of facilitating the entry of competitors into a market from which Microsoft's unlawful conduct previously excluded them" (internal quotation omitted)). The RPFJ only requires Google to syndicate queries that originate in the United States. *See* RPFJ ¶ VII(B).

### E.    Restoring Competition By Improving Text Ad Transparency And Reduction Of Switching Costs

While they contain some additional details, the IPFJ's proposed remedies regarding text ad transparency have not substantively changed since filing our IPFJ. *See* RPFJ ¶ VIII. As noted above, however, Paragraph VIII(E) requires Google to provide Qualified Competitors nondiscriminatory, *pari passu* access to syndicated search text ads and ensuring Qualified Competitors have control over and visibility into the ads appearing on the Qualified Competitor's sites.

Notably, Google's unlawful maintenance of its general search text advertising monopoly has undermined advertisers' choice of search providers as well as rivals' ability to monetize search advertising and has enabled Google to "profitably charge supracompetitive prices for [search] text advertisements" while "degrad[ing] the quality of its text advertisements" and the related services and reporting. Mem. Op. at 258-64 (finding "Google's text ads product has degraded" and "advertisers receive less information in search query reports."). As set forth in

Section VIII, Plaintiffs' RPFJ will help address these harms by providing advertisers with the information and, options providing, visibility into the performance and cost of Google Text Ads necessary to optimize their advertising across Google and its rivals. In particular, the RPFJ requires Google to include fulsome and necessary real-time performance information about ad performance and costs in its search query reports to advertisers and further requires Google to increase advertiser control by improving keyword matching options to advertisers. Mem. Op. at 263–64 (finding Google degraded SQR content and reduced control over keyword matching).

The RPFJ also prohibits Google from limiting the ability of advertisers to export search text ad data and information for which the advertiser bids on keywords and further requires that Google provide to the Technical Committee and Plaintiffs a monthly report outlining any changes to its search text ads auction and its public disclosure of those changes. *See* RPFJ ¶¶ VIII(C)-(D).

### F.    Limitations On Distribution And User Notifications To Restore Competition

A comprehensive and unitary remedy in this case must also undo the effects on search distribution. *See* Mem. Op. at 3 ("[M]ost devices in the United States come preloaded exclusively with Google. These distribution deals have forced Google's rivals to find other ways to reach users."). To that end, Plaintiffs' proposed remedies have not changed from the IPFJ as a substantive matter, as the record evidence continues to support them.

To remedy these harms, the RPFJ requires Google to divest Chrome, which will permanently stop Google's control of this critical search access point and allow rival search engines the ability to access the browser that for many users is a gateway to the internet.[4] In

---

[4]   Once the Court orders divestiture, the Plaintiffs will submit a detailed proposed order setting forth the process by which divestiture can be efficiently accomplished, including through the appointment of a Divestiture Trustee. Such a two-step process has been used in the past. *See,*

addition, the RPFJ contains multiple provisions that will limit Google's distribution of general search services by contract with third-party devices and search access points (e.g., Samsung devices, Safari, Firefox) and via self-distribution on Google devices and search access points (e.g., Pixel) which will facilitate competition in the markets for general search services and search text advertising. These provisions are designed to end Google's unlawful distribution agreements, ensure that Google cannot approximate its unlawful practices with updated contracts, and eliminate anticompetitive payments to distributors, including Apple. As set forth in Section IV, the RPFJ prohibits Google from offering Apple anything of value for any form of default, placement, or preinstallation distribution (including choice screens) related to general search or a search access point. *See* Mem. Op. at 238, 240–44 ("Apple, a fierce potential competitor, remains on the sidelines due to the large revenue share payments it receives from Google"). As set forth in Section IX, for non-Apple distributors and third-party devices, the RPFJ similarly prohibits—with limited exceptions—Google from offering anything of value for any form of default, placement, or preinstallation distribution (including choice screens) related to general search or a search access point.

The RPFJ further prohibits Google from preinstalling any search access point on any new Google device and requires it to display a choice screen on every new and existing instance of a Google browser where the user has not previously affirmatively selected a default general search engine. The choice screens must be designed not to preference Google and to be accessible, easy to use, and minimize choice friction, based on empirical evidence of consumer behavior, among other requirements.

---

*e.g., Steves and Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 722 (4th Cir. 2021) (discussing district court's two-step process).

User choice will be improved when users better understand the benefits that Google's rivals can provide. For that reason, Colorado Plaintiff States have included a provision requiring Google to fund a nationwide advertising and education program designed to encourage informed consumer choices. This provision has not changed substantively from the IPFJ. The fund's purpose is to enhance the effectiveness of distribution remedies by informing consumers of the outcome of this litigation and the remedies in the Final Judgment designed to increase user choice. The program may include short-term incentive payments to individual users as a further incentive to engage with and develop informed views on the merits of different general search engines.

### G.    Administration, Anti-circumvention, and Anti-retaliation

A remedy that prevents and restrains monopoly maintenance will require administration as well as protections against circumvention and retaliation, including through novel paths to preserving dominance in the monopolized markets. As set forth in Section X, Plaintiffs' RPFJ requires Google to appoint an internal Compliance Officer and establishes a Technical Committee to assist Plaintiffs and the Court in monitoring Google's compliance. *See United States v. Microsoft*, Civ. No. 98-1232 (CKK), 2002 U.S. Dist. LEXIS 22864, at \*22 (D.D.C. Nov. 12, 2002) (establishing a Technical Committee to "to assist in enforcement of and compliance with this Final Judgment."). This section of the RPFJ has not changed and provides Plaintiffs tools to investigate complaints about Google's compliance and prohibits Google from taking retaliatory or circumventing actions.

*          *          *

Consistent with remedies case law, Plaintiffs' RPFJ will pry open the markets that Google unlawfully monopolized for more than a decade, while further thwarting Google's ability to circumvent those remedies in the future in this ever and fast-evolving digital space. Plaintiffs

14

look forward to engaging with the Court on their proposal at trial and in pre- and post-trial briefing.

Dated: March 7, 2025

Respectfully submitted,

OMEED A. ASSEFI
Acting Assistant Attorney General for Antitrust

_/s/ Karl E. Herrmann_

David E. Dahlquist
Adam T. Severt
Veronica N. Onyema (D.C. Bar #979040)
Diana A. Aguilar Aldape
Sarah M. Bartels (D.C. Bar #1029505)
Travis R. Chapman (D.C. Bar #90031151)
Grant Fergusson (D.C. Bar #90004882)
Kerrie J. Freeborn (D.C. Bar #503143)
Meagan M. Glynn (D.C. Bar #1738267)
R. Cameron Gower
Karl E. Herrmann (D.C. Bar #1022464)
Ian D. Hoffman
John Hogan
Elizabeth S. Jensen
Ryan T. Karr
Claire M. Maddox (D.C. Bar #498356)
Michael G. McLellan (D.C. Bar #489217)
Keane M. Nowlan (D.C. Bar #90028063)
Sara Trent
Jennifer A. Wamsley (D.C. Bar #486540)
Catharine S. Wright (D.C. Bar #1019454)
Attorneys

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Ave., NW
Washington, DC 20530
Telephone: (202) 805-8563
David.Dahlquist@usdoj.gov
Adam.Severt@usdoj.gov
_Counsel for Plaintiff_
_United States of America_

16

By:      /s/ Christoper A. Knight
James Uthmeier, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Christopher A. Knight, Assistant Attorney
General
Office of the Attorney General, State of
Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com
Christopher.Knight@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By:      /s/ Diamante Smith
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant
Attorney General
Austin Kinghorn, Deputy Attorney General
for Civil Litigation
Diamante Smith, Assistant Attorney
General, Antitrust Division
Office of the Attorney General, State of
Texas
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1162
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By:      /s/ Carolyn D. Jeffries
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General
Brian Wang, Deputy Attorney General
Carolyn D. Jeffries, Deputy Attorney
General (DC Bar No. 1600843)
Office of the Attorney General

California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*

Matthew M. Ford
Arkansas Bar No. 2013180
Senior Assistant Attorney General
Office of the Arkansas Attorney General
Tim Griffin
323 Center Street, Suite 200
Little Rock, AR 72201
Matthew.Ford@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney General
Ronald J. Stay, Jr., Senior Assistant
Attorney General
Charles Thimmesch, Senior Assistant
Attorney General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and
Director, Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of
Indiana
Indiana Government Center South, Fifth
Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the
Office of Consumer Protection
Philip R. Heleringer, Executive Director of
the Office of Consumer Protection
Jonathan E. Farmer, Deputy Executive
Director of the Office of Consumer
Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff Commonwealth of
Kentucky*

Liz Murrill, Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
voelkerp@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

Michael Schwalbert
Missouri Bar No. 63229
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888

Fax: 314-340-7981

*Counsel for Plaintiff State of Missouri*

Lynn Fitch, Attorney General
Crystal Utley Secoy, Assistant Attorney
General
Lee Morris, Special Assistant Attorney
General
Office of the Attorney General, State of
Mississippi
P.O. Box 220
Jackson, Mississippi 39205
Crystal.Utley@ago.ms.gov
Lee.Morris@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

Anna Schneider
Special Assistant Attorney General, Senior
Counsel
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT. 59602-0150
Phone: (406) 444-4500
Fax: 406-442-1894
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy Attorney
General
C. Havird Jones, Jr., Senior Assistant
Deputy Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General, State of
South Carolina
1000 Assembly Street
Rembert C. Dennis Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

Joshua L. Kaul, Attorney General
Laura E. McFarlane, Assistant Attorney
General
Wisconsin Department of Justice
17 W. Main St.
Madison, Wisconsin 53701
mcfarlanele@doj.state.wi.us

*Counsel for Plaintiff State of Wisconsin*

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

MIKE HILGERS
Attorney General of Nebraska

Justin C. McCully, Assistant Attorney
General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
E-Mail: Justin.mccully@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

JEFF JACKSON
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov

*Counsel for Plaintiff State of North Carolina*

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

DEREK E. BROWN
Attorney General of Utah

Matthew Michaloski, Assistant Attorney General
Marie W.L. Martin, Deputy Division Director
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140811
Salt Lake City, Utah 84114
Telephone: (801) 440-9825
E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

TREGARRICK TAYLOR
Attorney General of Alaska

Jeff Pickett
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

BRIAN SCHWALB
Attorney General of the District of Columbia

Elizabeth Gentry Arthur
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

DOUGLAS MOYLAN
Attorney General of Guam

Fred Nishihira
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-3324
E-Mail: fnishihira@oagguam.org

*Counsel for Plaintiff Territory Guam*

ANNE E. LOPEZ
Attorney General of Hawai'i

Rodney I. Kimura
Department of the Attorney General, State
of Hawai'i
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawai'i*

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 332-3549
E-Mail:  John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
100 W. Randolph St.
Chicago, IL 60601
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov
Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

KRIS W. KOBACH
Attorney General of Kansas

Lynette R. Bakker
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: Lynette.bakker@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

Schonette J. Walker
Gary Honick
Office of the Attorney General of
Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
ghonick@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

ANDREA CAMPBELL
Attorney General of Massachusetts

Jennifer E. Greaney
Office of the Attorney General of
Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2981
E-Mail: Jennifer, greaney@mass.gov

*Counsel for Plaintiff Commonwealth of
Massachusetts*

KEITH ELLISON
Attorney General of Minnesota

Zach Biesanz
Senior Enforcement Counsel
Office of the Minnesota Attorney General
Antitrust Division
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker
Nevada Office of the Attorney General

100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mbadorine@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

MATTHEW PLATKIN
Attorney General of New Jersey

Isabella R. Pitt
Deputy Attorney General
New Jersey Attorney General's Office
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (973) 648-7819
E-Mail: Isabella.Pitt@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504
Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov

ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust
Division
Office of the Attorney General of North
Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North
Dakota*

DAVID YOST
Attorney General of Ohio

Jennifer Pratt
Beth Ann Finnerty
Mark Kittel
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail:
Jennifer.pratt@ohioattorneygeneral.gov
Beth.finnerty@ohioattorneygeneral.gov
Mark.kittel@ohioattorneygeneral.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Robert J. Carlson
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 522-1014

E-Mail: Robert.carlson@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

DAN RAYFIELD
Attorney General of Oregon

Cheryl Hiemstra, Special Assistant
Attorney General
Gina Ko, Assistant Attorney General
Oregon Department of Justice
1162 Court St. NE
Salem, OR 97301
Telephone: (503) 934-4400
E-Mail: Cheryl.Hiemstra@doj.oregon.gov
Gina.Ko@doj.oregon.gov

*Counsel for Plaintiff State of Oregon*

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

DOMINGO EMANUELLI
HERNANDEZ
Attorney General of Puerto Rico
Guarionex Diaz Martinez
Assistant Attorney General Antitrust
Division
Puerto Rico Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902
Telephone: (787) 721-2900, Ext. 1201
E-Mail: gdiaz@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov
*Counsel for Plaintiff State of Vermont*

JASON S. MIYARES
Attorney General of Virginia

Tyler T. Henry

Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

NICK BROWN
Attorney General of Washington

Amy Hanson
Senior Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

JOHN B. McCUSKEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of West Virginia
1900 Kanawha Boulevard
East Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

BRIDGET HILL
Attorney General of Wyoming

William T. Young
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-7847
E-Mail: William.young@wyo.gov

*Counsel for Plaintiff State of Wyoming*