IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA, ET AL.,    )
                                     )
          Plaintiffs,                )
                                     )    CV No. 20-3010
      vs.                            )    Washington, D.C.
                                     )    January 17, 2025
GOOGLE LLC,                          )    2:00 p.m.
                                     )
          Defendant.                 )
_____  )


TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For DOJ Plaintiffs:                    David E. Dahlquist
                                       UNITED STATES
                                       DEPARTMENT OF JUSTICE
                                       Antitrust Division
                                       209 South LaSalle Street
                                       Suite 600
                                       Chicago, IL 60604
                                       (202) 805-8563
                                       Email:
                                       david.dahlquist@usdoj.gov

                                       Karl Edward Herrmann
                                       Sara Trent
                                       U.S. DEPARTMENT OF JUSTICE
                                       Technology
                                       & Financial Services Section
                                       450 Fifth Street, NW
                                       Washington, D.C. 20001
                                       (202) 476-0316
                                       Email: karl.herrmann@usdoj.gov

For Plaintiff
State Colorado:                        Jonathan Bruce Sallet
                                       COLORADO DEPARTMENT OF LAW
                                       Consumer Protection Section,
                                       Antitrust Unit
                                       Ralph L. Carr
                                       Colorado Judicial Center
                                       1300 Broadway
                                       Suite 7th Floor
                                       Denver, CO 80203
                                       (720) 508-6000
                                       Email: jon.sallet@coag.gov

```
APPEARANCES CONTINUED:

For Defendant Google:          John E. Schmidtlein
                               Christopher Yeager
                               Colette Connor
                               WILLIAMS & CONNOLLY LLP
                               725 12th St., NW
                               Washington, D.C. 20005
                               (202) 434-5000
                               Email: jschmidtlein@wc.com

                               Matthew L. McGinnis
                               ROPES & GRAY LLP
                               Prudential Tower
                               800 Boylston Street
                               Boston, MA 02199
                               (617) 951-7000
                               Email:
                               matthew.mcginnis@ropesgray.com

For Third-Party Defendant
Microsoft Corporation:         Julia Chapman
                               DECHERT LLP
                               Cira Centre
                               2929 Arch Street
                               Philadelphia, PA 19104
                               (215) 994-2060
                               Email:
                               julia.chapman@dechert.com

For Non-Party Respondent
OpenAI, Inc.:                  Ashok Ramani
                               DAVIS POLK & WARDWELL LLP
                               900 Middlefield Road
                               Suite 200
                               Redwood City, CA 94063
                               (650) 752-2000
                               Email:
                               ashok.ramani@davispolk.com
```

APPEARANCES CONTINUED:

For Non-Party Respondent
News Corp:                      Eric Joseph Maier
                                KELLOGG, HANSEN, TODD,
                                FIGEL & FREDERICK, P.L.L.C.
                                1615 M Street, NW
                                Suite 400
                                Washington, D.C. 20036
                                (202) 326-7923
                                Email:
                                emaier@kellogghansen.com


For Non-Party Respondent
Perplexity AI, Inc.:            Zachary Christian Flood
                                LEWIS & LLEWELLYN LLP
                                601 Montgomery St.
                                Suite 2000
                                94111
                                San Francisco, CA 94610
                                (628) 300-1525
                                Email:
                                zflood@lewisllewellyn.com


For Non-Party Petitioner
Apple Inc.:                     Sarah M. Ray
                                LATHAM & WATKINS LLP
                                505 Montgomery Street
                                Suite 2000
                                San Francisco, CA 94111
                                (415) 391-0600
                                Email: sarah.ray@lw.com

                                Gregory G. Garre
                                LATHAM & WATKINS LLP
                                555 Eleventh Street, NW
                                Suite 1000
                                Washington, D.C. 20004-1304
                                (202) 637-2207
                                Email: gregory.garre@lw.com

APPEARANCES CONTINUED:

Court Reporter:                    William P. Zaremba
                                   Registered Merit Reporter
                                   Certified Realtime Reporter
                                   Official Court Reporter
                                   E. Barrett Prettyman CH
                                   333 Constitution Avenue, NW
                                   Washington, D.C. 20001
                                   (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

P R O C E E D I N G S

1

2          COURTROOM DEPUTY:  All rise.  The Court is now in

3    session; the Honorable Amit P. Mehta now presiding.

4          THE COURT:  Good afternoon.  Please be seated,

5    everyone.

6          COURTROOM DEPUTY:  Your Honor, we're now calling

7    for the record Civil Action 20-3010, United States of

8    America, et al., versus Google LLC.

9          Representing the plaintiffs is David Dahlquist and

10   Jon Sallet.

11         Representing the defendant is John Schmidtlein.

12         THE COURT:  All right.  Good afternoon, everyone.

13   Glad to see everyone was available to get past the barriers

14   and make it in today.

15         All right.  So we've got a fair amount to cover.

16         I understand that we can, hopefully, cross one of

17   these off the list.  I understand that the disputes with

18   Microsoft may be resolved; is that correct?

19         MR. SCHMIDTLEIN:  Yes, Your Honor.

20         And I think we can also take off the list disputes

21   with OpenAI.  I believe those have been resolved as well;

22   but I'll have counsel confirm that.

23         THE COURT:  That's good, because those two were --

24   those were the longest of my notes, so that's fantastic.

25         MS. CHAPMAN:  Yes, that's correct, Your Honor,

 1   with respect to Microsoft, unless there's any questions we

 2   can answer for you.

 3             THE COURT:  No, I'll leave it at resolved.

 4             MS. CHAPMAN:  Thank you.

 5             MR. RAMANI:  Hi, Your Honor.  I'm glad I flew in

 6   from San Francisco.

 7             I'm Ashok Ramani for OpenAI.  All issues resolved.

 8             THE COURT:  Terrific.

 9             I'm sure your presence here is what led to the

10   resolution, so it was not in vain.

11             All right.  Well, terrific.  Thank you, all,

12   I appreciate that.  That makes life a little easier.

13             MR. SCHMIDTLEIN:  And we can talk about

14   Perplexity.  I think we've potentially narrowed some of

15   those issues.  As is often the case, the setting of these

16   conferences and the briefing of these issues sometimes

17   brings clarity to various parties' --

18             THE COURT:  Right.

19             MR. SCHMIDTLEIN:  -- negotiating positions in

20   these.

21             So we appreciate you being available to help with

22   these.

23             THE COURT:  Sure.

24             All right.  Well -- so let's -- I think that then

25   leaves two non-party issues, and why don't we start with

1    Google and News Corp.

2              Where do we stand on that in terms of any further

3    discussions or where the conflict still remains?

4              Sort of counsel for News Corp come on up as well.

5              MR. McGINNIS:  Good afternoon, Your Honor.

6    Matt McGinnis of Ropes & Gray on behalf of Google.

7              THE COURT:  Hi, Mr. McGinnis.

8              MR. McGINNIS:  Nice to see you, Your Honor.

9              MR. MAIER:  Good afternoon, Your Honor.

10             Eric Maier from Kellogg Hansen on behalf of

11   News Corp.

12             THE COURT:  Mr. Maier, welcome.

13             MR. McGINNIS:  Speaking on behalf of Google,

14   Your Honor, I think as outlined in the Status Report and the

15   attachments to that, we have made a proposal with respect to

16   search terms and custodians, and as of today, we have not

17   received a response from News Corp.

18             MR. MAIER:  And from News Corp's perspective,

19   I think we feel we're very much in the midst of negotiating

20   the scope of the 14 requests that Google has propounded.

21             We have asked a few questions about some of those

22   particular ones and haven't received answers yet.  But the

23   parties have met and conferred once already.

24             THE COURT:  I guess the question is, you know,

25   how far apart are we and by what point in time does

1  News Corp think it can begin -- I know you've produced 9,000

2  pages -- or 9,000 pages so far.

3       There's some disputes about scope in terms of time

4  and otherwise.  But it's not clear to me that any custodial

5  searches have begun, and if that's going to be part of this,

6  by when you would expect to be able to start and then

7  complete production.

8       MR. MAIER:  Sure.

9       Just one quick correction.

10      News Corp has actually already produced over 9,000

11  documents --

12      THE COURT:  Documents, okay.

13      MR. MAIER:  -- in this case, so it's quite a

14  substantial production.

15      We also expect to produce a number of go-gets

16  today, and those are things we've already discussed with

17  Google.

18      As far as custodial searches go, I think right now

19  where we're at is we don't feel Google has demonstrated the

20  need for custodial searches.

21      We have not started to collect custodial

22  documents.

23      We've done some initial testing on what the burden

24  might look like for the custodians that Google has proposed,

25  but, as it stands, we feel like Google's requests for

1    custodial searches over 15 years of time for three News Corp

2    employees, their Deputy General Counsel, and two senior

3    executives is just massively overbroad and --

4              THE COURT:  Well, what if I were to agree with

5    you -- and I'm not -- maybe this was purposeful, but I mean,

6    15 years is a long time.

7              MR. MAIER:  Yeah.

8              THE COURT:  But let's say we narrowed that scope

9    to, frankly -- I mean, a lot of this has to do with,

10   you know, agreements with respect to, you know, the sale of

11   intellectual property for purposes of LLMs and the like, and

12   that certainly can't go back 15 years; at most, maybe a

13   couple.

14             What does that then look like in terms of burden?

15   Do you have any sense?

16             MR. MAIER:  Sure.

17             I guess, taking a step back for just a moment,

18   I think it's important to understand the context of this

19   subpoena.

20             We received this subpoena in the middle of

21   December, and the reason Google issued this subpoena is

22   because the Department of Justice listed Mr. d'Halluin,

23   who's News Corp's Deputy General Counsel, as a potential

24   witness.

25             The primary burden, or one of the primary burdens

1    associated with custodial searches in this case is that

2    Google is seeking documents related to Mr. d'Halluin's

3    communications, and the vast, vast majority of those

4    documents are going to be privileged.

5              Now, we've gone through the documents that we

6    think are relevant to the topics that Mr. d'Halluin might

7    testify about as DOJ has disclosed.  And we found, you know,

8    nonprivileged go-gets that we're producing this week.  But

9    to run a custodial search, especially in light of the terms

10   that Google has, you know, sort of started the negotiation

11   with, would be extraordinarily burdensome.

12             THE COURT:  Can I ask how we ended up with

13   Mr. d'Halluin, is it?

14             MR. MAIER:  Uh-huh.

15             THE COURT:  It's a little unusual, it seems to me,

16   to have an in-house General Counsel come in to testify about

17   these matters.  And that does create the complexity that

18   you've identified, fair enough.

19             On the other hand, as I've said in the past,

20   you know, not every email that comes from an in-house

21   counsel is covered by attorney-client privilege.

22             You know, I assume that some of the work he's done

23   is in a pure business capacity or close to it.  I'd rather

24   avoid having to, you know, splice that atom, but maybe we'll

25   have to do that.

1          But anyway, I'm just curious how we ended up with

2     him as opposed to somebody else who's not in a legal

3     capacity.

4          MR. MAIER:  Sure.

5          I just want to make one thing clear because this

6     was stated in Google's Status Report, or a suggestion that

7     we proffered Mr. d'Halluin as a knowledgeable witness for

8     the remedies hearing.  And that's not true.

9          We didn't ask to be -- for Mr. d'Halluin or any

10    News Corp employee to be on the witness list.  And if

11    Mr. d'Halluin does testify, it's going to be pursuant to a

12    trial subpoena.  So I don't know if that answers your

13    question.

14         THE COURT:  It doesn't really, because it doesn't

15    tell me how exactly he's the one on the list as opposed to

16    somebody who's not going to present some of these privilege

17    issues that you've flagged.

18         MR. MAIER:  Right.

19         THE COURT:  Fairly flagged.

20         MR. MAIER:  Yeah.

21         After Your Honor's decision came down,

22    I understand that DOJ reached out to News Corp to discuss

23    what remedies might impact publishers.  And Mr. d'Halluin

24    attended a meeting and spoke at a meeting where those issues

25    were discussed, and I think that's how he ended up sort of

```
 1    on the department's radar.

 2                THE COURT:  Okay.

 3                Mr. Dahlquist, could I ask you, I mean, how locked

 4    in are you on -- two things.

 5                And this is for the benefit of Mr. Maier.

 6                MR. MAIER:  Maier.

 7                THE COURT:  Maier.

 8                MR. MAIER:  That's okay.

 9                THE COURT:  I've said in the past that Google,

10    it seems to me, it's fair to request custodial searches,

11    particularly for witnesses who will be testifying at trial.

12                It doesn't mean it's open season, but, certainly,

13    you know, something more than just a go-get search, I think,

14    is warranted when they're going to be putting somebody up on

15    the witness stand.  You know, whether other custodial

16    searches are done, that's a separate question for a moment.

17                And so I guess, Mr. Dahlquist, in a sense, the

18    plaintiffs have created this vexing situation.  And can you

19    help me understand why he's the one that's been selected and

20    whether there's someone else who's an adequate substitute?

21                MR. DAHLQUIST:  Certainly, Your Honor.

22                Short answer is, no, we're not locked in, and

23    we're happy to talk with News Corp and with Google if

24    there's another one.

25                We're focused on the facts, the facts that
```

```
 1    News Corp has and the facts that they intend to provide to

 2    this Court during the remedies hearing.

 3            If there's a better alternative, we're all ears

 4    and happy to discuss that.

 5            It's really the information that we're guided

 6    towards.

 7            And, again, we're happy to talk further if that

 8    would be helpful.

 9            THE COURT:  I mean, look, it's not my call who you

10    bring to the witness stand, but you can see that he is

11    giving rise to complexities that another witness may not.

12            MR. DAHLQUIST:  Yes.

13            THE COURT:  So I guess with that sort of pin there

14    for a moment, I mean, where then is News Corp in terms of

15    its willingness to conduct custodial searches?

16            I think I heard you say that you're still running

17    hit reports and the like.

18            MR. MAIER:  Well, we've done some initial testing

19    on what the burden might look like just given the sort of

20    time frame and the search terms that Google has asked for.

21            And just to give you a sense of the scope of what

22    we're dealing with, for the two non-attorney custodians that

23    they've proposed, you know, we're talking about

24    750 gigabytes of materials.

25            And when we ran a search --
```

```
 1              THE COURT:  But that's over 15 years, I take it.
 2              MR. MAIER:  Yeah, over 15 years.
 3              And when we run the search term "Google," which
 4   was initially proposed, they've narrowed them slightly to
 5   now just Google within 20 words of search, we get somewhere
 6   in the neighborhood of 140,000 documents just from their
 7   email, and that's just over the last three years.  So you
 8   can imagine over the last 15 years, we're talking about
 9   hundred of thousands of documents.
10              So right now, where News Corp is, is we feel that
11   there is a large corpus of documents that are right in line
12   with what Google has requested in its current subpoena that
13   Google has had for years.
14              Within the 9,000-something documents we produced
15   at the beginning of this case in February of 2021, we ran,
16   for instance, a search for the term "Google Search," which,
17   again, is narrower than what Google has asked for, but it
18   turned up hundreds of documents that seem directly relevant.
19   Those are documents that contain studies of how Google
20   search conduct has impacted publishers, how -- what kind of
21   traffic --
22              THE COURT:  I'm sorry, you did that when?
23              MR. MAIER:  We did that this week.
24              THE COURT:  This week.
25              MR. MAIER:  Yeah.
```

1          THE COURT:  And does Google know that?

2          MR. MAIER:  No.

3          But we had hoped that Google would have considered

4    the substantial production prior to issuing the subpoena.

5          THE COURT:  Right.

6          But just to be clear here, I mean, they've got

7    9,000 documents, and what you've just told me is that you've

8    run some searches that they're not aware of --

9          MR. MAIER:  Correct, yeah.

10          THE COURT:  -- and that have produced some other

11   relevant material.

12          MR. MAIER:  That's correct.

13          THE COURT:  Okay.

14          And when are you -- are you -- what you've just

15   described, are you planning to turn that over, and, if so,

16   when?

17          MR. MAIER:  Sorry, the -- the searches that I just

18   described about the hundreds of documents --

19          THE COURT:  Well, not the hundreds -- the hundreds

20   of documents --

21          MR. MAIER:  Yeah, yeah, yeah.

22          THE COURT:  -- not the hundreds of thousands,

23   right.

24          MR. MAIER:  Oh, the hundreds of thousands of

25   documents --

1          THE COURT:  I'm not talking about that.

2          Just the hundreds.

3          MR. MAIER:  Oh, I'm sorry.

4          The last thing that I just discussed, that's

5    searches within the documents that Google already has, that

6    we produced to Google and that we've mentioned before --

7          THE COURT:  I see.

8          MR. MAIER:  -- the over 9,000 documents we've

9    already produced.

10          THE COURT:  I see.

11          These are not -- these are not in addition to the

12    9,000?

13          MR. MAIER:  Correct.

14          In addition to the 9,000, we are producing a

15    number of documents, we -- we hope to have that production

16    done today.

17          And it's other documents like the documents that

18    Google already has; again, you know, submissions to

19    regulators that discuss the kinds of issues that might come

20    up in Mr. d'Halluin's testimony, presentations about those

21    kinds of issues.

22          And so where we are at is, we think, given the

23    substantial body of documents that Google already possesses

24    that sort of fall in line with what they requested in this

25    current subpoena, and given our additional production to be

1    made this week, we think it makes sense first for Google to

2    consider those documents, and then we can have a more

3    meaningful discussion about whether custodial searches are

4    necessary.

5            I mean, to be candid, the burden of searching

6    Mr. d'Halluin's documents is not going to -- is not going to

7    change.  But what we think we've done is isolated those

8    documents that News Corp possesses that are on point for

9    what his potential testimony might be and we are producing

10   those to -- to Google.  And we're hoping to avoid the burden

11   of, you know -- of a document-by-document privilege review

12   of thousands and thousands of Mr. d'Halluin's documents.

13           THE COURT:  All right.

14           Well, Mr. McGinnis, can you help me understand and

15   tell me where Google is in its review of the 9,000 documents

16   produced so far and how that is lacking, in your estimation,

17   in terms of the information you need.

18           I mean, I will make the observation.  And I -- and

19   I kind of get where some of this is coming from.  But the

20   requests are certainly broad temporally and then some of the

21   text of the requests are incredibly broad.  And I know

22   you've sort of snatched some of the description of the

23   testimony from the plaintiffs and plopped it into a document

24   request, but still.

25

1          MR. McGINNIS:  Yes, Your Honor.

2          So let me sort of take those points in order.

3          First off, on -- on the 9,000 documents that

4    News Corp is referring to, let me explain what that is.

5    That is 9,000 documents that were produced in response to a

6    DOJ investigative subpoena before this lawsuit was filed.

7          The subpoena concerns "ad tech."  I have copies of

8    the subpoena if you want to look at it and see.  There are

9    three requests.  They concern "ad tech" issues.

10          Are there documents in there that refer to Google

11    Search?  Of course.  None of those documents were ever used

12    during the liability phase of this case as far as I know.

13    We haven't seen any of them since then.

14          We have actually done a review for things that are

15    relevant to our subpoena here.  They do not contain any

16    custodial ESI for Mr. d'Halluin, who is the designated

17    witness in this case.

18          So they are there.  But that is in no way a

19    substitute, I think, for the custodial ESI that would be

20    relevant for a News Corp witness in this case.

21          Second point.

22          I heard some discussion there about whether

23    Mr. d'Halluin is the right News Corps witness or perhaps a

24    business witness.

25          What I did not hear from News Corp's counsel is

```
1    any acknowledgment that any custodial ESI search would be

2    performed regardless of who the witness is.

3              I think Your Honor has been very clear that if

4    there is a witness that may be -- testify at this case at

5    the trial in April, that we are entitled to custodial ESI.

6              We've been very clear, we are willing to work with

7    News Corp on the scope of the search.  We have proposed

8    search terms.

9              To be very clear, I am not interested in 15 years

10   of emails.  We are not seeking 15 years of emails.  That was

11   not our intent at all with respect to custodial ESI, and we

12   are absolutely willing to work with them to negotiate that

13   to a reasonable scope.

14             What we asked for two weeks ago today was if our

15   search terms were burdensome, please provide hit reports and

16   a counterproposal.  Today before Your Honor was the first

17   time I heard anything that sort of began to sound like a hit

18   report.

19             If there are terms that are overbroad, we are

20   happy to work with them to narrow those down.  I have --

21   given the short time frame of this case, I frankly have no

22   interest in getting a lot of irrelevant stuff.  What we want

23   is the targeted information.

24             THE COURT:  So let me ask this, and I think this

25   is sort of a three-party issue.
```

1           I mean, Mr. Dahlquist, if the plaintiffs are going

2    to assess or reassess, I should say, whether Mr. d'Halluin

3    is the right witness, how quickly are you able to do that?

4           Because I don't want to be in a position three or

5    four weeks from now where Google says, look, they just

6    changed the witness and now we need to subpoena ESI for that

7    person.

8           So if you're prepared to reconsider or reassess,

9    that needs to happen quickly.

10          MR. DAHLQUIST:  Understood, Your Honor.

11          I will get with the team and figure out the review

12   of those documents.

13          We can review those documents quickly and see if

14   there are other custodians or other witnesses other --

15   that's not a lawyer and see if that's appropriate --

16          THE COURT:  When you say -- the 9,000?

17          Or what documents are you referring to that you

18   need to review?

19          MR. DAHLQUIST:  The core source of the information

20   that has been produced.

21          I guess the information that we already have and

22   perhaps whatever might be forthcoming.

23          But we can review that quickly in order to

24   reassess this and discuss with News Corp at the same time.

25          I'd say if we could have two weeks, perhaps,

1    Your Honor, that might -- that might be sufficient.

2              THE COURT:  Yeah, that's -- I mean, sufficient for

3    you but that's too long.

4              Look, I think this is not hard, folks.

5              I mean, you all ought to be able to go out in the

6    hallway and figure out in short order -- I'm not suggesting

7    that literally, but it shouldn't take too long of a

8    conversation for News Corp to identify a person who is not

9    an in-house counsel who can touch on all of the subjects

10   that you want to have a conversation about.  It shouldn't be

11   that hard.

12             MR. DAHLQUIST:  Understood, Your Honor.

13             THE COURT:  And so that takes care of one issue in

14   terms of ESI.

15             And then, you know, Google has said it should and

16   will -- and you all need to come to some agreement on this

17   and narrow the scope of these terms, narrow the scope

18   certainly temporally, I'm not sure why it was ever 15 years,

19   and figure out what kind of burden this is going to place on

20   News Corps.

21             You know, I don't know who all these folks are.

22   But, you know, if we don't need something from the Deputy

23   General Counsel, it certainly seems to me that the chief

24   strategy officer or the person who is, you know, the

25   senior VP for global partnerships ought to have the kind of

1    knowledge that you're talking about for what's likely to be,

2    you know, 60 to 90 minutes of testimony.

3           So, you know, let's think about this

4    proportionally and not waste any more time on it than we

5    have to, I think.

6           MR. DAHLQUIST:  Understood, Your Honor.

7           With your instruction to move quickly, if we can

8    have till next week, we can get back to Google.

9           THE COURT:  You have till next Wednesday,

10   recognizing that Monday is a holiday and the like.  So let

11   Google know by Wednesday who that witness is going to be.

12          You will then have the name.  And then I will

13   leave it to you all to continue your negotiations about

14   narrowing the terms of the scope and -- both strings and

15   temporally to try and get this down to a manageable number.

16          I mean, I will say to you, Mr. Maier, that,

17   you know, whoever that witness is, I have said before and

18   will say again, I'm going to allow some amount of custodial

19   ESI.  I'm not going to put a number on what that looks like,

20   but I have said in the past and will say again, it's

21   appropriate that some search is done.  So that's where we

22   are, it seems to me.

23          MR. MAIER:  Okay.  Understood, Your Honor.

24          THE COURT:  Okay?  Everybody on the same page

25   about this?

1          MR. McGINNIS:  We are, Your Honor.

2          Could I ask if it would be appropriate to have a

3    date by which we provide a status update so that we can

4    hopefully move this to resolution?

5          THE COURT:  I mean, if you get a name by

6    Wednesday, by Friday of next week.  Does that work?

7          MR. DAHLQUIST:  Thank you, Your Honor.

8          THE COURT:  All right.

9          If you would submit something by Friday of next

10   week, then we'll see where we are.

11         MR. McGINNIS:  Thank you.

12         MR. DAHLQUIST:  Thank you.

13         THE COURT:  Okay.  Great.

14         All right.  So that takes care of the News Corp

15   issue, and that leaves us then with Google and Perplexity

16   before we get to Apple.

17         So, Mr. Schmidtlein, you suggested that things may

18   have moved forward on this topic, and, if so, what's the --

19   what remains to be resolved?

20         MR. SCHMIDTLEIN:  My colleague, Chris Yeager,

21   is going to address the Perplexity issue.

22         THE COURT:  Mr. Yeager.

23         MR. YEAGER:  Thank you, Your Honor.

24         So by way of update, since the parties have

25   submitted their statements, they have continued to confer.

1          Your Honor may have seen in Perplexity's

2     submission a representation that Google Search strings

3     garnered something like 73,000 hits.

4          We have pressure tested that with Perplexity, and

5     we understand that when you remove duplicates, that number

6     drops by 20,000 or so into 50,000.

7          I have an outstanding proposal to Perplexity on

8     how the parties might continue to move things forward, and

9     I want to -- I want to address that with Your Honor.  But

10    before I get there, I want to touch, if I might, on the

11    custodian issue.

12         So as Your Honor probably appreciates from the

13    briefing, there's actually not a dispute about the number of

14    custodians; both Google and Perplexity agree that the right

15    number is three.  The only question is whether or not one of

16    those three should be Perplexity's CEO, Mr. Aravind

17    Srinivas, and Google submits that he should be a custodian.

18         It's quite easy to find public statements that

19    he's made about Google, about how he intends to compete

20    against Google, about the direction he wants to take his

21    company, the way that he -- he sees them as planning to

22    attack Google's core business model.  He's -- he's -- really

23    seems like the man for the job.

24         THE COURT:  Has there been a witness identified

25    who is likely to testify from Perplexity so far?

1          MR. YEAGER:  There -- there has been, Your Honor.

2          He is one of the -- I'll call them the uncontested

3     custodians.  That's Mr. Dmitry Shevelenko.

4          THE COURT:  Okay.

5          MR. YEAGER:  Mr. Shevelenko met with the

6     plaintiffs, as did Mr. Srinivas.  Mr. Srinivas spoke with

7     them too.

8          And so we think that in that respect, they bear

9     some resemblance to one another.  And that's part of the

10    calculus that leads us to think Mr. Srinivas would be right

11    to include among the three.

12         THE COURT:  Okay.

13         Let me ask counsel for Perplexity whether you've

14    had the opportunity to consider the counterproposal and what

15    your current thinking on that is, if you have?

16         MR. FLOOD:  Thank you, Your Honor.

17         We have been thinking about the counterproposal.

18         In addition to, you know, the ongoing dispute

19    about the custodians, Google has offered to -- what we were

20    concerned with is defining the custodial universe and

21    defining a hit-count universe to facilitate our

22    conversations and be on the same page.

23         They've come down to a request that search terms

24    yield approximately 20,000 unique hits.  That is certainly

25    moving in the right direction and -- and we welcome that

```
1   change, but it doesn't change the fact that we still have a
2   fundamental disagreement about whether Perplexity's CEO is
3   an appropriate custodian --
4              THE COURT:  I'm sorry, so 20,000 is of the three
5   custodians that you have identified, minus the CEO;
6   is that correct?
7              MR. FLOOD:  That's correct.
8              THE COURT:  All right.
9              And have you done an internal review of what the
10  CEO's hit count would look like?
11             MR. FLOOD:  We have not looked at -- we have not
12  collected his email yet.
13             MR. MAIER:  Your Honor, if I might, I alluded to a
14  potential compromise that we made to Perplexity earlier.
15  That's, I believe, what Mr. Flood is touching on.  We have
16  corresponded with that, but we don't have his client's
17  position on that.
18             I think what I would submit to Your Honor would be
19  the most efficient way forward is if we could have a couple
20  more business hours to figure out if our proposal is okay
21  with his client, with an understanding that the companies
22  would then jointly submit by Tuesday at noon Eastern an
23  update to let Your Honor know whether or not they have
24  closed out the issue or whether we genuinely require
25  judicial resolution.
```

1          That issue does not implicate the custodian

2    question of whether or not the CEO is appropriate.  That,

3    I think, is a joint issue.

4          But I would submit that when it comes to hit count

5    and burden and the like, you give us just a couple more

6    hours to see if we can work something up and then update

7    Your Honor Tuesday midday Eastern.

8          THE COURT:  Okay.

9          Look, I will just say the following, which is,

10   what my number one priority here is is to get Google the

11   information it needs and do so quickly.  That does not mean

12   that the information necessarily needs to come from the CEO.

13   I understand he's made public statements, but if there is

14   someone else -- put it differently.

15         If you have reason to suspect that the CEO might

16   have something unique, then okay.  But if, among the other

17   three custodians, you can be satisfied that the information

18   you are seeking is going to be among those three custodians,

19   that ought to do the trick, because unless the CEO is not

20   communicating with one of these three folks about something

21   of material significance, it seems to me that the

22   information you need is likely to be contained in what

23   you're going to get.

24         MR. YEAGER:  Understood, Your Honor.

25         The present dispute regarding the CEO is a choice

1    between a CEO or the chief technology officer, who, I would

2    submit, likely has a narrower remit that implicates less

3    Perplexity's competitive position and the like.

4          And so given that we are not sort of disputing

5    burden or a number of custodians as between those

6    custodians, it seems to us that the more sensible selection

7    would be Mr. Srinivas.

8          THE COURT:  Okay.

9          MR. FLOOD:  Your Honor, if I may, I know we

10   pointed this out in the briefing, but I think of the three

11   RFPs that seek ESI collections here, they relate

12   fundamentally to business partnerships and distributions to

13   technology access points and to the company's AI strategy.

14         And the three custodians we're offering here are:

15   Chief Business Officer, who would be in charge of business

16   relationships; the Chief Technology Officer, who would

17   probably have the most vision into access points; and the

18   Chief Strategy Officer.

19         So I find it unlikely to think that those three do

20   not cover the subject matter that Google is interested in in

21   this request.

22         THE COURT:  So I guess what I would say to you,

23   Mr. Flood, is as follows, which is, if you can, through

24   whatever due diligence that you need to perform, you know,

25   convince Mr. Yeager that he will get the information he

```
1    needs, minus the CEO search, I'll hear that out.

2          And, again, my interest here is information and

3    not necessarily the source of it.  Unless, unless,

4    of course, the CEO is going to be called to testify.  That's

5    a different ballgame.

6          So let's see what we can get done between now and

7    whenever you want to submit the Joint Status Report on

8    Tuesday and we'll see where we are.  And if there's still a

9    dispute, we can get together Tuesday afternoon remotely and

10   get it hashed out and move forward, okay?

11         MR. YEAGER:  Thank you, Your Honor.

12         THE COURT:  All right.  Thank you.

13         MR. FLOOD:  Thank you, Your Honor.

14         THE COURT:  Thank you, Mr. Flood.

15         All right.  So I think, other than the parties,

16   that takes care of all of the discovery issues, correct?

17         All right.  Good.  Let's talk about intervention,

18   every judge's favorite topic.

19         All right.  Let me -- all right.  Let me go at it

20   this way.

21         I'm going to ask counsel from Apple to have a seat

22   for a moment, because I want to ask some sort of factual

23   questions before we move forward.

24         And this is both directed to plaintiffs and

25   Google.
```

1          The first is whether you are presently intending

2     to call one or more witnesses from Apple in your

3     case-in-chief.  That's one.

4          Two, I'd like to understand how you believe your

5     preparation for trial would be impacted if Apple were to be

6     permitted to intervene.  So why don't we start there.

7          MR. DAHLQUIST:  Thank you, Your Honor.

8     David Dahlquist on behalf of the United States.

9          Your Honor, to your two questions, first, no, an

10    Apple witness is not presently on plaintiffs' witness list,

11    is on defendant's, one witness, Mr. Cue, who also testified

12    during liability, also submitted a declaration in support of

13    the motion to intervene but he's on their list.

14         THE COURT:  Mr. Cue himself is on the list?

15         MR. DAHLQUIST:  Correct.

16         THE COURT:  Okay.

17         MR. DAHLQUIST:  Second, how will we be impacted?

18    Potentially significantly, Your Honor.

19         And I think this goes to -- obviously in our

20    papers, I'd love to address the timeliness and with regard

21    to the adequacy of representation, but I think this goes to

22    the element of prejudice, which goes to us at Apple coming

23    in at this very late hour as to where we are.

24         But, first of all, we are seriously concerned that

25    Google's presence here is to re-argue liability, to come

1   forward and restate it.

2          They've said they want to call -- they claim

3   narrow but they want to call three witnesses.  We don't

4   know.  We assume one's Mr. Cue.  We don't know who the rest

5   are.  We don't if it's a fact witness or an expert witness.

6          They also state that they intend to participate in

7   other proceedings, this is at page 6 of their reply,

8   participate in other aspects of the proceeding, without any

9   further explanation.

10          There are significant open questions:

11          Do they get to cross witnesses?

12          Do they get to show up at depositions?

13          Do they file motions in limine?

14          THE COURT:  These are questions I have for Apple's

15   counsel that I'd like to -- for them to address when --

16          MR. DAHLQUIST:  We have all those same concerns.

17          And we think that potentially concerns the delay

18   of this proceeding with, I know we'll get there in a little

19   while, Google themselves asking for ten days of their case

20   alone, even putting aside the Apple motion to intervene.

21   So that's first.

22          We're worried about a re-argument of liability

23   issues that have already been discussed.

24          We're worried about a delay of the proceeding

25   itself and the mechanics of how that might work.

1          We're worried, with respect to prejudice,

2     Your Honor, if we're including Apple as a defendant now or

3     Apple as a party now, that is a very different posture than

4     when they should have come in in an intervention in October

5     of 2020 when we filed this complaint.

6          We addressed some of this in our papers.

7     Google -- or, I mean, Apple responded on Wednesday night

8     saying that, we have these threats.  They're not threats,

9     Your Honor.

10          If Apple had been in this case as an intervening

11     party at day one, the United States, and plaintiffs perhaps,

12     would have certainly looked at liability in this case:

13     Would we have pursued a liability finding against Apple?

14          Second, what other evidence would we have procured

15     from them?  What else would we have gone forward with?

16          And the question that I think is significantly

17     before this Court:  Would Apple be bound by this Court's

18     ultimate remedy?

19          We believe that those things are correctly in --

20     could be in front of this Court under Rule 15, which we

21     identify.  We could even do that post Your Honor's decision

22     because it's prejudgment.

23          But if those questions had been posed back in

24     2020, we may be in a very different case than we tried

25     before Your Honor for those ten weeks.  So just as to that

1    fact alone.

2         My final point would be, I'll take Apple's words,

3    the floodgates argument, which is real.

4         We've been contacted by multiple other third

5    parties already that are waiting to see what happens with

6    this motion and have -- are waiting at the precipice to file

7    their own motions.  Now those -- maybe they will, maybe they

8    won't, but we've already been contacted by third parties.

9         We're very worried that this is not just one --

10        THE COURT:  Can you tell how many?

11        MR. DAHLQUIST:  Two, Your Honor.  At present, two.

12        So for those reasons, we are concerned about the

13   prejudice, we're concerned that that puts the whole schedule

14   at risk that we have before Your Honor right now.

15        I'm happy to answer more.

16        THE COURT:  I'll just make the following

17   observation for Apple's benefit, which is, I understand the

18   response to why Apple believes it is differently situated

19   than anyone else.  Yes, it's true Apple's name appears in

20   both parties' proposed final judgment, but that's not the

21   test.

22        The question is one of interest.  And it doesn't

23   seem to me that your interest, Apple, is any -- is really

24   dissimilar than all the other contracting parties that

25   Google has, because, certainly, the government is making

1    requests to limit their ability to contract in the future in

2    certain ways with those counterparties too.

3          So while their names may not appear specifically

4    in these proposed final judgments, certainly, the same

5    rationale that Apple has put forward, it seems to me, if it

6    applies to Apple, should apply to others as well, and my

7    real concern here is opening up the floodgates.

8          We are not in a position to have, you know, two,

9    three, four, five intervenors coming in at this point when

10   there are other ways potentially for those intervenors to

11   present their factual record that they'd like me to

12   consider.  So I will just say that while we're on the topic

13   of floodgates.

14         MR. DAHLQUIST:  If I could parlay onto that last

15   point, Your Honor:  That's where Google can do this on their

16   own.

17         They already have one witness, Apple witness on

18   their list.  They could add more, they certainly could.

19         They currently have 16 of their own employees,

20   more than we're able to depose, so they already have more

21   than those.  They can certainly share a few of those spots

22   with their primary contract partner here; they can present

23   that testimony.

24         But we are worried -- to return to where I started

25   with, we are worried that this is an end run around trying

```
 1   to do a do-over on liability, and that really certainly goes
 2   more towards the adequacy-of-representation point, which I'm
 3   happy to go into right now but I wanted to answer
 4   Your Honor's questions.
 5              THE COURT:  Yeah, let's put a pin on that for a
 6   moment.
 7              Mr. Sallet.
 8              MR. SALLET:  Your Honor, just briefly.
 9              Your point about interest, Apple's name appears,
10   but Apple is not unique.
11              Your Honor is exactly right.  We believe, and we
12   have submitted papers to this effect, that Apple does not
13   have a legally protected interest.
14              THE COURT:  Right.
15              MR. SALLET:  But if the possibility of a future
16   contract Apple comes in and says it has an interest in part
17   because it wishes to negotiate contracts with Google in a
18   "host of domains," if that provides a basis for
19   intervention, then we have all of the contracting parties.
20              And, Your Honor, they were all witnesses at the
21   liability stage, we know who they are, we have the prospects
22   of companies that would like to have contracts.
23              Google says AI is an area in which it has a
24   protected -- Apple says AI is an area in which it has a
25   protected interest that justifies intervention.
```

1            AI, there's lots of AI players.

2            So we believe Apple does not have a legally

3    protected interest, but we absolutely agree that if it does,

4    Apple is not unique in that sense.

5            In two specific ways -- and this mirrors our view

6    about why Apple does not have a legal -- protected legal

7    interest, we think the case would become very difficult to

8    manage if Apple came in.

9            First of all, Apple says it wants to comply,

10   it will comply -- it's not attempting to revisit the

11   liability decision.  But on page 18 of its reply it says,

12   "Although Apple seeks to defend the existing ISA."

13           Now, we think there's no legally protected

14   interest in trying to re-litigate that which has been

15   decided earlier in a case.

16           But if that intervention is allowed, then Apple

17   coming in to defend the existing ISA opens the door to

18   virtually -- well, much, much testimony and the facts on the

19   Apple agreement that were heard in the liability phase.

20           Secondly, as I've mentioned before, Apple says

21   that in addition, it has the legal interest in future

22   contracts in a host of domains, including general search AI

23   and other areas.

24           Now, this is not a legal interest because it's

25   hopelessly conjectural.  And it's -- in fact, we don't even

```
1    know all the areas.  It says, "other related areas."  But it
2    does focus on one.  It focuses on revenue sharing, not the
3    default, but other forms of revenue sharing.
4           But here, Apple runs right into Google.  What
5    Google has said, this is in its findings of fact, paragraph
6    796, "There's no precedent in the search" engine -- "search
7    industry for an unconditional revenue share agreement,
8    meaning one where revenue share is provided regardless of a
9    promotion."
10          Paragraph 799, "An unconditional revenue share is
11   at odds with basic economics."
12          802, "An unconditional revenue share arrangement
13   would be irrational for Google."
14          We have Apple coming in and saying it's got an
15   interest in some future contract that Google says it doesn't
16   want to enter into.  That's hopelessly conjectural.
17          If we allowed any party to imagine any contract it
18   wants without regard to the feasibility that it might
19   actually get that contract, then again, we would be opening
20   ourselves up to a host of issues and hypotheticals.
21          THE COURT:  Well, look, I -- this is a question
22   I have for Google, which is, I read their requests for
23   remedies to, in fact, give them the option to continue to
24   have revenue share contracts with Apple and others, and that
25   the -- at least with respect to browsers, Google has
```

```
 1    proposed that there be two limitations; one is that they
 2    would have an annual right of change, and two is that it
 3    wouldn't be exclusive in the sense that --
 4              MR. SALLET:  Yes.
 5              THE COURT:  -- Apple and Mozilla, for example,
 6    would be free to promote other search engines.
 7              So I guess maybe this is to your -- inures to your
 8    point, which is that Google is not running away from the
 9    idea that they think they should still be able to pay
10    revenue share.
11              MR. SALLET:  Correct.
12              And that, of course, goes to a point that we
13    raised in our joint submission:  Google adequately protects
14    the interest and having a mechanism of revenue flow to Apple
15    and to other organizations.
16              We may disagree with Google's proposed remedies,
17    but that Google is in court taking that position protects
18    the interests of Apple and the others.
19              THE COURT:  So let me ask you while you're here,
20    Mr. Dahlquist, while the plaintiffs are up, look, what you
21    all have proposed in your final judgment as to Apple and
22    that Apple is all -- is worked up about, is that, "Google
23    will be prohibited from entering into any contract for
24    anything of value that in any way creates any economic
25    disincentive for Apple to compete."
```

1          Those are the terms of the final judgment.

2          Can you tell me what that means?

3          MR. DAHLQUIST:  Your Honor --

4          THE COURT:  In other words, can you tell Google

5    and Apple what that means?

6          MR. DAHLQUIST:  Certainly, Your Honor.

7          MR. SCHMIDTLEIN:  That's one of the 30(b)(6)

8    questions, Your Honor.

9          MR. DAHLQUIST:  I'm sure we're going to get there.

10          THE COURT:  We'll get there.

11          MR. DAHLQUIST:  Your Honor, as you heard at trial,

12   those payments have frozen this ecosystem.  They have

13   prevented competition from occurring across a variety of

14   landscapes.

15          That provision is attempting, should Your Honor

16   agree with it, to stop those payments from going from Google

17   to Apple for a period of time, we propose ten years, Google

18   wants far less, in order to allow competition to take foot;

19   in order to allow other competitors to have the opportunity

20   to negotiate and contract with Apple.

21          THE COURT:  Because the way Apple reads it is that

22   essentially Google can no longer contract it -- with it for

23   anything of value; in other words, even if Google came in

24   and said, hey, Apple, you know, we'll pay you, you know, a

25   cent for every search which amounts to half a billion

1   dollars, you know, that is certainly not going to be the

2   kind of incentive that keeps Apple on the sidelines.

3          And to be clear here, I want to just be clear

4   about what the -- what my finding was, which is that -- and,

5   you know, the plaintiffs had essentially set this up as the

6   sole reason or the primary reason that Apple was staying on

7   the sidelines is because of this revenue share payment; and

8   my finding was, look, it's a little bit more complicated

9   than that.  I heard what Mr. Cue had to say, I heard what

10  Mr. Giannandrea had to say, and I credited both of their

11  testimonies that, look, Apple has other priorities.

12         That said, I think the standard was such that the

13  question was, is there some significant -- I can't remember

14  what the exact phraseology is, but it doesn't have to be the

15  sole reason but it has to be a significant one, and I

16  certainly thought $20 billion was a significant reason.

17         MR. DAHLQUIST:  Yeah.

18         THE COURT:  So, you know -- which is why I'm

19  raising this question of what does this mean and is it your

20  intention that there would be no type of a contract between

21  Google and Apple in which there would be anything exchanged

22  of value from Google to Apple?

23         MR. DAHLQUIST:  I think in short, yes, Your Honor.

24         They can have a contract, they can have terms,

25  conditions, they can have those, but as far as the exchange

1  of money, which is of value -- and that's the primary focus

2  of it.

3         But we are worried -- as you've seen, Your Honor,

4  there's other parts that go to the anti-circumvention piece.

5  We are worried about money being exchanged through other

6  means, or -- or something of value, which is where the

7  derivation of that term came from, being exchanged through

8  other means.

9         THE COURT:  All right.

10         I mean, I -- if it had stopped at "anything of

11  value," I would have understood.

12         But then it modified "value" with "that in any way

13  creates an economic disincentive."

14         And so that's what created some ambiguity in my

15  mind as to what -- whether there was a line-drawing exercise

16  that I and others would need to engage in if those were the

17  final terms of the agreement -- of the judgment, excuse me.

18         MR. DAHLQUIST:  I think, Your Honor, it's

19  attempting to be broad, attempting to cover things that we

20  can't foresee, that we can't predict into the future.

21         All of -- this remedy as well as all remedies are

22  forward looking, and I really think it goes really towards

23  the anti-circumvention piece.  So we are worried about them

24  trying to find a way around it, and that's a grave concern.

25         THE COURT:  Okay.

1          MR. SALLET:  Your Honor, if I might just add one

2     word and then just finish an earlier...

3          Yes, the goal is to set a circumstance -- a set of

4     circumstances through which and during which competition can

5     be restored, and that requires lowering barriers to entry,

6     including those that could be created by payments.

7          Now, Your Honor, on the question of what the

8     impact of Apple would be, Mr. Dahlquist noted some of them.

9     But let me just say, we don't know whether Apple intends to

10    question -- presumably, it does direct on its own witnesses,

11    we assume.  But is it crossing other witnesses?  Is it doing

12    direct alongside Google of Google's own witnesses?  We don't

13    know.

14         We don't know whether, once we see the witnesses

15    from Apple, we would need other Apple depositions or other

16    document requests in order to understand the context in

17    which those witnesses would testify.

18         We don't know whether Apple intends to offer its

19    own remedies.  We can't tell from the papers what Apple

20    wants.

21         THE COURT:  These are questions I have --

22         MR. SALLET:  But -- and then perhaps --

23         THE COURT:  -- so we will get the answers to that

24    shortly.

25         But, yes, I have those same questions.

1           MR. SALLET:  Then, Your Honor, perhaps I should

2     sit down and let you proceed to your questions.

3           THE COURT:  That's all right.  We'll get -- we'll

4     get there.

5           MR. SALLET:  But all I am saying is there's a host

6     of practical concerns about the management of the trial and

7     our ability to keep on this very important but very short

8     schedule that we believe would be adversely implicated by

9     Apple's presence as an intervenor.

10          THE COURT:  Okay.  Thank you, Mr. Sallet.

11          All right, Mr. Schmidtlein, let me just reiterate

12    what my two questions were.

13          One is whether you have an Apple witness on your

14    witness list, that may have been answered.

15          And then two is, if Apple were permitted to

16    intervene, how, if at all, do you think that would impact

17    your preparation for trial?

18          MR. SCHMIDTLEIN:  Your Honor, as you've heard, it

19    is correct, we have Mr. Cue on our list right now.

20          I don't know exactly what Apple has in mind in

21    terms of the scope of their participation.  I read too that,

22    you know, two or three witnesses.  If that's what they're

23    talking about, I don't know that that's going to move the

24    ball.  This may pertain to the question that we're hopefully

25    going to talk about later, which is what is a realistic

45

1    length of the proceeding and what you're envisioning here,

2    given the scope of what's at issue.

3              You know, this -- we've heard them talk about this

4    provision that targets Apple specifically and this notion

5    that Google can't provide anything of value to Apple and the

6    Court's observation about the derivation of that provision,

7    I expect.

8              The one thing I guess I could ask the Court to

9    consider is, on the day -- if the day ever comes that

10   Microsoft or some other provider does a default search

11   engine deal with Apple, and under their provision anybody

12   else could, anybody else could pay, and you saw the

13   testimony and the documents and the amount of money that

14   Microsoft offered for that deal, and Mr. Cue explained to

15   you why they didn't take the deal from Microsoft, does that

16   deal disincentivize Apple to enter the search market?

17             Microsoft's money is just as green as Google's

18   money.  And so that provision, to my mind, is among the many

19   that make zero economic sense in the proposed final

20   judgment, and it is among the many provisions we want to ask

21   about in the 30(b)(6) deposition.

22             THE COURT:  While you're -- hang on,

23   Mr. Schmidtlein, before you sit down.

24             Do I have your -- it is my understanding of your

25   proposal with respect to Apple and other browser --

1    browser -- one other -- maybe I guess there's a couple

2    other, but with browser providers, that it is, one, that you

3    would be permitted to continue to compete for a default and

4    pay for a default; two, that the only restriction on that

5    would be, one, that the browser could change that,

6    it wouldn't be locked in for three, four, five years,

7    it would be a one-year opt-out; and, two, that it wouldn't

8    be exclusive; in other words, that same browser in theory

9    could run promotions for other general search engines.

10           Is that what you are ultimately seeking?

11           MR. SCHMIDTLEIN:  I think it's actually that and

12    more, Your Honor, if I can address very briefly.

13           We tried to address the particular issues to the

14    extent we could divine them from Professor Whinston and the

15    government in the case, the length of the agreement,

16    because, as Your Honor I'm sure now knows from reading the

17    law, exclusive agreements that are a year or less are

18    essentially per se lawful even if they're exclusive.

19           What we have proposed is basically making the deal

20    contestable every year.  So you could enter into a

21    multi-year deal where the -- the terms would be locked from

22    Google's perspective, but the browser provider could opt

23    out.

24           THE COURT:  Right.

25

1          MR. SCHMIDTLEIN:  Two, in terms of promotion,

2    you're absolutely right, our agreements didn't -- didn't

3    block that anyway.  And Your Honor heard lots of testimony

4    about the other promotional opportunities that browsers had

5    and took advantage of.

6          But, three, we also addressed the exclusivity

7    finding.  They can set a different default for computers,

8    iPads.  I'm using Apple as an example.

9          THE COURT:  Right, for private-browsing mode.

10         MR. SCHMIDTLEIN:  Yeah, for private-browsing mode.

11         All of those components that we disagreed with

12   vehemently, but the components that we understood caused the

13   finding of "exclusivity."

14         So, yes, we can still compete, and we can compete

15   by offering revenue share.  That is one of the terms of

16   competition.

17         But it's not a, we want to be the default on all

18   of these different points.  We will make it non-exclusive

19   and give the browser provider the control and the ability to

20   make those selections.

21         I hope that's responsive to your question.

22         THE COURT:  It is.

23         And so then the really hard question for you is,

24   do you think that interest -- let me back up.

25         I think that's Apple's interest, and do you think

1    Google can adequately defend it?

2            MR. SCHMIDTLEIN:  I'm always going to say that I'm

3    confident in Google and our ability to defend as we have

4    tried -- as you know, we have vehemently defended that

5    agreement from the very, very beginning of this case, and

6    we will continue to defend the legality of that agreement

7    through the remedies phase and on appeal in this matter.

8            THE COURT:  Okay.

9            All right.  Let me turn to counsel for Apple who's

10   been waiting patiently.

11           And why don't you come on up and just state your

12   names for the record.

13           MS. RAY:  Thank you, Your Honor.  Good afternoon.

14           THE COURT:  Good afternoon.

15           MS. RAY:  I'm Sara Ray with Latham & Watkins.

16   With me is Greg Garre, my colleague, and we are here on

17   behalf of Apple.

18           We first want to --

19           THE COURT:  Go ahead.

20           MS. RAY:  I just want to thank you for turning to

21   this motion so quickly.  Obviously this is very important to

22   our client and so we appreciate the Court's rapid attention.

23           We did anticipate that you would have questions

24   about both the how and the why.  And we've heard a lot about

25   both of those, and so I just wanted to let you know our

49

1    order of operations.

2             Mr. Garre is here to argue the motion and the

3    legal bases and the why as we're talking about Apple's

4    interest and things like that.

5             But I'm more than happy to talk to you about the

6    how, about what we anticipate it would look like going

7    forward and how we do not think it would interrupt or

8    disrupt the Court's schedule.

9             THE COURT:  So let's start there.

10            MS. RAY:  Okay.

11            THE COURT:  Would you sort of color in between the

12   lines for me what you are requesting in terms of the

13   following:

14            Discovery has not concluded.  Would you be wishing

15   to -- are you asking to participate in fact,

16   expert discovery, or both?  That would be one place to

17   start.

18            Two, what is it that you're asking to do at trial?

19   I mean, I know your papers said three Apple witnesses,

20   cross-examine some folks, but that's a little vague.

21            Three, would it be your intention to propose a

22   different final judgment?

23            And, four, I assume the following, is that you

24   would be retaining any right to appeal any disagreement that

25   you had with the final judgment that adversely affects

1    Apple.

2            But if you could answer those four questions, that

3    may help fill in some of the questions that the parties have

4    and that I have.

5            MS. RAY:  Absolutely.

6            Taking discovery first, Your Honor, we are in

7    receipt of a set of RFPs from DOJ.  We are producing

8    documents in response to those.  We're negotiating those.

9    And we are also undertaking some limited custodial review in

10   conjunction with those as well.

11           We're really intervening because we think Apple

12   has information that is going to be of service to the Court

13   in reaching a proper remedy.  So we're not seeking to go on

14   a fishing expedition and serve a bunch of discovery.

15           I think if we were allowed to intervene, I think

16   it's likely we'd not serve any additional discovery

17   requests.

18           THE COURT:  And you'll forgive me.

19           I'm not -- I really need a firm answer in the

20   sense of, it says "opposed to likely."  I need to know

21   whether you are going to issue written discovery requests.

22           Say I grant your intervention motion next week.

23   Are you going to issue written discovery requests?  Are you

24   going to ask to participate in depositions?  Are you going

25   to call your own expert?

1          MS. RAY:  Yeah, so let me take those in terms of

2     written discovery.

3          No, Your Honor, we would not be issuing written

4     discovery requests.

5          We would seek to attend depositions going forward

6     and potentially ask limited questions at the end of the

7     depositions; again, specific uniquely to Apple's interests

8     and on a going-forward basis.

9          We would consider a single expert, again, limited

10    cabin very specifically to Apple's economic interests.

11         If we did, in fact, submit an expert report and

12    seek to bring an expert to trial, that would be one of the

13    three witnesses that Apple would propose to bring to trial.

14         And let me be really --

15         THE COURT:  So is it Mr. Cue plus three or --

16         MS. RAY:  Mr. Cue plus two.

17         THE COURT:  Okay.

18         MS. RAY:  And let me be really clear about what we

19    would anticipate needing at trial.

20         We anticipate three witnesses.  We think we could

21    do direct testimony for those three witnesses in seven

22    hours.

23         We think we would also need --

24         THE COURT:  Including an expert?

25

1          MS. RAY:  Including an expert.

2          We think we would also need about four hours of a

3     cross-examination time, again, only certain witnesses when

4     Apple's interests have been implicated.  We really think

5     this would be a couple of additional days on the schedule.

6          And given the prejudice that we believe our client

7     would face and the need that the Court has for the

8     information that is uniquely in Apple's possession, we think

9     that that is a pretty good balance, Your Honor.

10          THE COURT:  So what about the last two things,

11     would it be the case that you would ask to submit your own

12     final judgment?

13          MS. RAY:  So we would be definitely interested in

14     proposing a remedy that would work, again, not -- we're not

15     interested in weighing in on the entire breadth of the

16     proposed final judgments that we've seen.  But, again, with

17     respect to Apple's interests, yes, we would be willing to

18     and interested in proposing a solution that we think would

19     be appropriate with your Court's merits findings.

20          We're not seeking to re-litigate the merits case.

21     As Mr. Garre will tell you more.  It really is about

22     providing the information that we think you need that we

23     think we uniquely have.

24          I will point out that in the proposed final

25     judgment that you've read, the provision that we are very

1  concerned about, plaintiffs' opposition did not mention

2  that, acknowledge it.  And they also, you know, when they

3  filed that, they then immediately filed a witness list that

4  did not include an Apple witness.  So the proposed final

5  judgment targets Apple and then does not provide for any

6  testimony from anyone at Apple.

7           We're grateful to have Mr. Cue on Google's witness

8  list.  There's no guarantee that they will call him to

9  trial.  They have to go from 24 to 12.  And even if they do,

10  they will be, you know, in charge of his testimony; we would

11  like to be able to present to you the testimony that he

12  needs to bring here.

13           THE COURT:  So let me ask you two questions.

14           One is -- and, Mr. Garre, you can chime in

15  whenever the baton is passed to you.

16           It isn't clear to me what unique testimony Mr. Cue

17  is going to come forward with that I haven't already heard.

18           The affidavit that he submitted tracked perfectly

19  with what I heard during the liability phase, which was,

20  Apple has built a search capacity but doesn't want to enter

21  the search market.

22           Apple would like to focus its interest elsewhere.

23  Apple would rather partner with a general search engine than

24  not.  Apple thinks Google is the best search engine and it

25  has benefited from it, its customers have benefited from it.

1    We both heard from Mr. Cue and Mr. Giannandrea say that over

2    the course of two days at least.

3              So it's not clear to me what unique testimony and

4    evidence that Apple wishes it needs to present to me that

5    I'm not going -- haven't already heard and am not likely to

6    hear when Mr. Cue takes the stand, as I'm sure he will, for

7    however long Google wishes to examine him.

8              MS. RAY:  I think the main thing, Your Honor, is,

9    we're in a different time, and there is different

10   circumstances in the market today than there were for the --

11   for what the Court was evaluating in reaching its

12   conclusions over the course of the last 15 years.

13             And I think you will hear from our witnesses that,

14   going forward from 2025, that there is nothing that this

15   Court could order that would cause Apple to enter into

16   search, and there are reasons for that today that did not

17   exist and that are, in our view, dispositive.

18             THE COURT:  But if that's what you want to tell

19   me, it's now on the record, and Mr. Cue can tell me the same

20   thing.

21             Look, I want to be clear.  I have no dog in the

22   fight whether Apple gets into the action or not.  That's up

23   to Apple, right?  And the only question before me is whether

24   the arrangement with Google was one that I thought,

25   you know, created antitrust, anti-competitive problems.

1    I found that it did.

2            Whatever remedy is issued and whether Apple gets

3    off the sideline or not, I don't really care.  That's not my

4    objective.  My objective is not to get Apple off the

5    sideline.  It may be the plaintiffs', but it's not mine.

6            So I'm still struggling to understand what

7    I'm going to hear from Mr. Cue that is -- or all three of

8    your witnesses that is really going to advance the ball in a

9    way that I'm not already going to hear from Google, because

10   what I'm going to hear from Google, as you heard from

11   Mr. Schmidtlein, is that, we want things to not be too

12   different than the way they are now.  We want to tweak

13   things in a few ways, no longer exclusivity, no longer --

14   you know, no longer a tie-up for three to five plus years,

15   as the current -- I think the current ISA is -- whatever it

16   is, but five years.  So some of those tweaks are on the

17   edges.

18           And it just seems to me that that is exactly what

19   Apple would like -- where Apple would like for me to land.

20   You can still get revenue share, you can still choose

21   Google, you can still put Google in a default position, and

22   you can do so every single year that your opt-out comes up,

23   and you can figure out ways to promote other search engines

24   to benefit Apple.

25           So if that's what they want, what are you going to

```
 1    tell me that's unique to advance that, what I see as the
 2    same exact interest?
 3              MS. RAY:  Okay.
 4              I would love for Mr. Garre to address the
 5    interests that Apple has, because we do believe there's a
 6    divergence of interests, especially -- and we think the law
 7    supports that the divergence here is sufficient for
 8    intervention.  So can I pass it over?
 9              THE COURT:  Mr. Garre.
10              MR. GARRE:  Thank you, Your Honor.
11              Maybe I can talk a little bit about the uniqueness
12    of Apple's interests and how it diverges with Google's
13    interests and how Google is no longer in a position to
14    adequately protect it.
15              I mean, first on the uniqueness of interest,
16    I think there are three things and they've been alluded to
17    before.
18              One, Apple is obviously the only non-party singled
19    out by name and targeted in the plaintiffs' proposed final
20    judgment.
21              Two, the term that we've mentioned that you had a
22    colloquy with the government on is of extraordinarily broad
23    breadth with respect to Apple, its contractural interests
24    and existing contracts, including the ISA, and its
25    contractual interests in future conceivable contracts,
```

1    anything of commercial value, extending out for ten years.

2         I mean, that term in itself is extraordinary.

3    Plaintiffs put that in their own proposed final judgment and

4    yet they didn't even put an Apple witness on their list and

5    now they're saying Apple shouldn't be able to intervene.

6         And, third, as my colleague alluded to, this

7    Court's liability decisions and the remedy decision as well

8    presumably will depend, in not insignificant part,

9    on assumptions about Apple's own behavior with respect to

10   how the remedy would affect its incentives to enter the

11   search market or not into the future.  Only Apple is in a

12   position to ensure that the record is complete on that.

13        And, as my colleague mentioned, I mean, our

14   interests in intervening is not only in just protecting our

15   existing and future contractual interests and property

16   rights, but is ensuring this Court has a complete record to

17   issue a remedy decision that could affect the search market

18   for decades to come.

19        THE COURT:  So, Mr. Garre, I mean, if that is

20   the -- if that is the primary, if not ultimate, objective,

21   then why is it not sufficient to have Mr. Cue come in and

22   testify, Google will call him, and there are ways you can

23   present evidence to me without becoming a party.  I could

24   invite declarations.  I could invite an expert report.

25   I mean, you know, I can do -- I have a lot of flexibility

 1  here.

 2          And it's not clear to me full-party status is

 3  necessary to accomplish what you want to, especially when

 4  I'm not quite hearing how Apple's interests here diverge

 5  from Google's other than Google's got a few more things they

 6  have to worry about than Apple.

 7          MR. GARRE:  Right.

 8          So, I mean, I appreciate that, Your Honor.

 9          I mean, of course, first, to state the obvious,

10  we don't know how the proceeding is going to unfold.

11          I mean, Your Honor asked the government today

12  about the provision affecting Apple in particular, and they

13  stood by that completely, but that is something that

14  presumably will be subject to further testing.

15          We don't know how testimony is going to unfold.

16  Our ability to participate on a limited basis as a party to

17  cross-examine witnesses to supplement the record;

18  where feasible, to add witnesses, potentially an expert

19  would undoubtedly fulfill -- complete the record before this

20  Court in ways that Mr. Cue's testimony would not alone.

21          I mean, with respect to the adequacy of Google to

22  represent Apple's interests at this stage, first of all,

23  there is the important issue of prioritizing arguments in

24  interest.

25          But even with respect to the contractual

1    interests, they diverge.  I mean, there is an aspect of the

2    ISA which involves default status, which is of interest to

3    Google and their aspect of the ISA, which involves revenue

4    share, which is of interest uniquely to Apple.

5           And, of course, to the extent that the parties'

6    interests are -- overlap, that in itself is not a basis to

7    deny intervention.

8           And, you know, for commercial and economic

9    reasons, it's understandable that Google would not have the

10   same interest as Apple in protecting its contractual rights

11   for anything of commercial value into ten years.

12          THE COURT:  So can I ask you how, if you have

13   thought about this, how you would propose the final judgment

14   look as to Apple, how would it differ from Google's

15   proposal?

16          MR. GARRE:  Well, I think -- I don't know that --

17   I mean, Apple is not in a position today to say exactly what

18   that final judgment would say.

19          I mean, our proposal would be with respect to only

20   the extent of the remedy, how it would affect Apple.

21   It would depend on testimony and evidence at the hearing,

22   Your Honor.

23          THE COURT:  Right.

24          The reason I ask the question, Mr. Garre, and

25   you'll appreciate this is, I think, is that, I'm supposed to

1    determine whether Google can adequately represent your

2    interests.

3            If Apple would be satisfied with a remedy, final

4    remedy that aligns with Google's, it's not clear to me why

5    the standard is then satisfied.

6            MR. GARRE:  Well, to be clear --

7            THE COURT:  If Apple were to come in and say,

8    look, what Google is proposing is unacceptable, what the

9    plaintiffs are proposing is unacceptable, okay, maybe your

10   interests might not be adequately represented by either

11   side.

12           But I haven't heard you say that, at least not

13   with respect to Google, that there's anything about what

14   they're proposing that you think is going to tie your hands

15   and your interests in contracting with Google in the future.

16   In fact, I dare say, what Google is recommending would

17   actually improve Apple's position in negotiations with

18   Google.

19           MR. GARRE:  Sure.

20           So, Your Honor, to be clear, our interests are

21   more aligned with Google's proposals than the government's.

22           But we do not stand behind Google's proposal

23   100 percent.  We do not know, any more than Your Honor does

24   today, how the remedy proceeding is going to progress and

25   what remedy you will enter.

1          THE COURT:  But how do you diverge -- I mean,

2    if the answer is "I don't know," I don't know, but is there

3    a way that you diverge today?

4          I mean, you've had Google's proposal for several

5    weeks now, you've had a chance to look at it.  Is there any

6    way that you can identify that you would materially diverge

7    from Google's position as to browser agreements?

8          MR. GARRE:  Well, Your Honor, again, I think the

9    clear divergence is with respect to interests in defending

10   default or with respect to defending revenue share.

11         THE COURT:  But they're going to defend both.

12         In other words, you just heard Mr. Schmidtlein say

13   that whatever remedy I issue, they would like, one, for

14   Google to still be able to get defaults, out-of-the-box

15   defaults, and, two, that they pay revenue share.

16         I mean, that's what Google wants to do.  They

17   want -- plaintiffs don't want that to happen, but that's

18   what Google would like to still have when the dust settles.

19         MR. GARRE:  So, Your Honor, to the extent that

20   that's true as a general matter, that doesn't mean that

21   those interests will be adequately defended with respect to

22   Apple through the course of this proceeding in terms of the

23   evidence that's presented, the record that's created, the

24   questions that are asked on cross-examination, and so on.

25   We don't know.

1          Apple faces this extraordinarily broad provision

2     which is part of the plaintiffs' proposed final judgment

3     today, and that obviously has not gone away.  Plaintiffs

4     stood behind that 110 percent.

5          So Apple is uniquely threatened by that and has

6     unique interest in defending it, whereas Google has many,

7     many things on its plate, including the divestiture of

8     Chrome.

9          And given the limited number of hours that this

10    proceeding would entail can't possibly put Apple's interests

11    and treat them the same way that Apple's participation

12    would.

13         THE COURT:  So help me understand how I can manage

14    this if I allow Apple to come in and -- I'm going to tell

15    you right now, if I let Apple in, there are going to be

16    other people knocking on the door.  Samsung is going to want

17    to have a piece of the action, AT&T, Verizon, all these

18    folks are going to come in and say, you know what, Judge,

19    the terms under which Google is going to be able to

20    negotiate future contracts impacts our interests.  Same way

21    it does yours.

22         So how am I not opening the floodgates if I let

23    Apple in?

24         And that does make the case not manageable.

25

1              MR. GARRE:  Sure.

2              I mean, first, every motion would have to be

3     evaluated on its own.

4              But it's inconceivable that a motion could be as

5     compelling as Apple's, given the way that Apple has been

6     specifically targeted.

7              THE COURT:  I'll be honest with you.

8              If Apple checks the boxes, it's hard for me to see

9     how materially anybody else doesn't in the following sense.

10             Okay, the dollars aren't as high.  Sure, I get it,

11    Apple's revenue share interests are a magnitude

12    substantially higher than anybody else's.

13             But even Mozilla would come in and say, Judge,

14    you know what, we get paid a few, I can't remember what the

15    number is, X million dollars from Google, and unless we are

16    able to contract with them, we're going to go out of

17    business.

18             MR. GARRE:  So, Your Honor --

19             THE COURT:  So I mean, it seems to me Mozilla,

20    in some sense, would have a more compelling argument than

21    you because it's not like Apple is going to go out of

22    business if I don't -- you know, if you can no longer get

23    revenue share.

24             You've got other sources of revenue;

25    Mozilla hardly has any.

1          MR. GARRE:  So Mozilla doesn't face the threat of

2     the type of provision that the plaintiffs have proposed here

3     with respect to Apple that would affect its contractual

4     rights for ten years, Your Honor.

5          THE COURT:  But everybody is subject to -- but

6     everybody is subject to ten years, not just Apple, under

7     their proposal, one.

8          Two, they have proposed that Google could no

9     longer pay defaults -- for defaults.  That's two.

10          Three, that Google could no longer pay revenue

11     based upon, you know, essentially volume of searches.

12          That's exactly how the ISA works, that's exactly

13     how all the other rev share agreements work.

14          So you're not any different than anybody else

15     except for in terms of who Apple is and the quantity, the

16     volume of the rev share.  You're just not.

17          MR. GARRE:  With respect, Your Honor, I would

18     disagree not only because of what's in the proposed final

19     judgment but also because of the unique role that Apple has

20     in this case, given its affect on the potential remedy this

21     Court would adopt.

22          The remedy, as this Court's liability decision,

23     I think, reflects, would depend in part about assumptions

24     about Apple's economic behavior, its interest, its potential

25     for entering, or actually not entering the general search

1  market, and I would think that this Court would be

2  genuinely, uniquely interested in that to ensure that

3  there's a complete record with respect to --

4          THE COURT:  How do I prevent others from coming

5  forward, or how do I deny others the same opportunity?

6          MR. GARRE:  Number one, that interest in itself

7  distinguishes Apple and I think would be a basis for

8  distinguishing an intervention motion.

9          THE COURT:  I don't think that would stand up in

10 the Court of Appeals.

11         I mean, honestly, if I let Apple in for

12 $20 billion, I don't think the Court of Appeals is going to

13 say, Judge, it was okay for you to exclude Samsung because

14 it was a billion.

15         MR. GARRE:  Again, it's not the $20 billion.

16 It's the unique way in which Apple's interests would affect

17 the market going forward, which is, again, reflected in this

18 Court's own liability decision.

19         The other thing I would say, Your Honor, is,

20 our motion, as you know, is based on intervention as of

21 right.

22         I mean, to some degree, the potential for

23 inconvenience or the potential that someone else would file

24 a motion that this Court would have to evaluate differently

25 isn't a basis to deny Apple's motion for intervention

1    wherein it clearly meets each of the factors set forth in

2    the rules.

3            Is there a protectable interest?  Yes, the

4    contractual rights.

5            Is it -- could it be impaired by final judgment in

6    this case?  If you adopt their proposed final judgment,

7    it would be destroyed by that.

8            Is it adequately presented by Google?  No, Google

9    has its own problems.  It's going to direct them separately.

10           Apple has its own interest in defending revenue

11   share and protecting its users, ensuring the best

12   experience.

13           And was the intervention motion timely?

14           Now, my friend said it should have been filed

15   years ago.  That's not right.  It's from the date of

16   divergence of interest.

17           And the filing of plaintiffs' proposed final

18   judgment changed everything, the inclusion of that provision

19   changed everything, from Apple's perspective, and the unique

20   interest that Apple offers compared to Google and Google's

21   ability to defend those interests in this case, and that's

22   why this motion is clearly timely.

23           THE COURT:  Can you cite any other case in which a

24   private party has been permitted to intervene in the manner

25   that you are in an enforcement action?

1          MR. GARRE:  That we are in an enforcement action?

2          THE COURT:  Correct.

3          In an enforcement action such as this one, where a

4   counterparty to a defendant, whether it's an antitrust case

5   or not, has been permitted to intervene?

6          I mean, you've cited a lot of cases involving

7   private disputes involving decisions by the Federal

8   Government that impact property rights among competitors;

9   you know, agency decisions, for example, over particular

10  issues, or the way in which, you know, a NEPA study is done.

11         MR. GARRE:  I don't know that we have that

12  specific case, Your Honor.

13         We cite a number of cases on page 4 of our reply.

14  We cite the *Hodgson* case which involved an instance where a

15  party was allowed to intervene at the remedial stage at

16  seven years after the trial began.

17         I mean, I think the requirements of the rule,

18  which I've walked through, I think, are readily met in this

19  case.  And I don't think that even the absence of that case

20  would be a basis for singling us out to prevent us from

21  intervening to protect clear contractual interests and

22  rights which are threatened through an extraordinarily broad

23  provision.

24         THE COURT:  Let me ask you this.

25         Do you think it would be a basis to deny your

1    motion if six other intervenors then lined up which would

2    double the length of this trial, which I don't have the

3    luxury of doing?

4              MR. GARRE:  So I would say first, it's not

5    conceivable to me that any other intervenor could possibly

6    make the case that Apple is making, and I think that all

7    those petitions could be distinguished for reasons that

8    we've discussed.

9              And, second, Intervention of Right is Intervention

10    of Right.  It's hard for me to imagine a situation in which

11    other people could present that case.  But to the extent

12    that there could be another intervenor, I don't think that's

13    a basis for saying that the Rule 24(a)(2) requirements are

14    not met in this case.

15              But I think, you know, at the end of the day,

16    Apple's situation is unique.  That's why plaintiffs

17    themselves singled us out in their proposed final judgment,

18    that's why this Court itself talked about Apple in its

19    liability decisions, and that's why Apple has chosen and

20    determined that it's necessary to intervene at this point to

21    protect its interests which are now threatened in a uniquely

22    devastating -- potentially devastating way, which would

23    affect not only Apple, its operations and its revenues,

24    but its millions of users.

25

1          THE COURT:  Okay.

2          Thank you, Mr. Garre, I appreciate your remarks.

3          MR. GARRE:  Thank you, Your Honor.

4          Okay.  Do either of the parties wish to be heard

5     in light of what we have just heard from Apple?

6          MR. DAHLQUIST:  I would like to, Your Honor, and

7     I will be brief, as brief as possible.

8          Since counsel for Apple went into a couple of the

9     merits arguments to Intervention as of Right, I'd like to

10    respond to those briefly.

11         As to Intervention of Right, that time passed in

12    2020, and here's why.

13         Counsel stated that his right occurred when the

14    divergence occurred.

15         No, that's not what the law says.

16         The law says -- and these are cases cited by both

17    parties.  "When the potential inadequacy of representation

18    was identified," and that's *Amador*, *Smoke v. Norton*, that's

19    *Deutsche Bank*.  *Deutsche Bank* even says more specifically,

20    "when the action threatens to impair that interest."

21         As Your Honor knows in our complaint in 2020,

22    paragraph 4, the very first page of our complaint stated the

23    following:  "Google pays billions of dollars each year to

24    distributors, including popular device manufacturers such as

25    Apple."

1        At that moment, Apple knew that it had the

2   potential to lose that contract and that all of that revenue

3   was at risk.  That is when that potential occurred.

4        Google, you just asked Mr. Schmidtlein if he --

5   if he believes he adequately represents.  I believe he

6   answered honestly.  I believe Google does adequately

7   represent and can adequately represent Apple in this matter.

8        Even further than any of the cases cited by Apple

9   in any of their briefing, there's one other fact that makes

10  it unique.  That's JX33.  That's a copy of the ISA itself,

11  which has a clause which no other case has that says the

12  following:  "Apple and Google will agree to cooperate" --

13  "cooperate to support and defend the ISA agreement."

14  Google is contractually bound to do so.  I'm sure that's not

15  lost on either of the parties.

16       Apple has a new strategy.  They chose to sit in

17  the back of the courtroom for the last four years.  They

18  even fought involvement in this case.  They filed a motion

19  before Your Honor to quash the appearance of their own

20  witnesses in court.  And here now with new counsel and a new

21  strategy, they try to ignore their own strategic choice, and

22  that was -- that's *Love v. Vilsack*, which is identified in

23  our briefing as well.  They made the strategic choice.  They

24  cannot now change it because their gamble didn't pay off.

25  They put a bet on Google winning and Google lost.

1          If we can go forward to a couple other elements

2    and points that counsel made during the argument.

3          Your Honor is right, there are multiple other ways

4    when Apple can be heard here.  We suggested in our briefing

5    perhaps through an Amicus Brief.  An Amicus Brief can give

6    Your Honor all the information that he needs to know in

7    order to present this.

8          Apple -- or Google is most certainly going to call

9    Apple witnesses.  They will be here.

10         There's other ways to get that testimony before

11   Your Honor.

12         Finally, I'd say that I will turn to my concern

13   about re-litigating liability.

14         Counsel said, and I'm not -- I'm trying to quote

15   but I don't want to misstate, "It is a different time with

16   different circumstances."

17         That to me sounds like they're going to re-argue

18   product market, re-argue competitors, re-argue market

19   shares.  I don't know what else is embedded in that

20   statement.

21         But if we're going to come forward with different

22   times, different -- different circumstances, that's gravely

23   concerning that we're re-litigating liability.  That's what

24   it sounds like to me.

25         Thank you, Your Honor.

```
 1                THE COURT:  Thank you.

 2           Mr. Sallet.

 3                MR. SALLET:  Very briefly, Your Honor, very

 4    briefly, because, as you know, Your Honor, for you to deny a

 5    petition to Intervene as of Right, you can rest that

 6    decision on any one of four different criteria that are

 7    applied under Rule 24(a).  Mr. Dahlquist has talked about

 8    timeliness and adequacy of representation.  I earlier

 9    referenced having a protected legal interest and being able

10    to show a practical impairment of that interest.

11                With reference to the case law, I would just like

12    to very briefly -- since you asked about case law and since

13    there was a brief answer from the Apple counsel, none of the

14    cases Apple cites, and we say this in our pleading, involved

15    a circumstance where a party was trying to come into the

16    case to take issue or claim changed circumstances on the

17    liability ruling that had been handed down.  So a number of

18    the cases are intervention at the merits phase, which Apple

19    chose not to do.

20                Where there was intervention at the remedies

21    phase, nobody was coming in saying, well, we're not sure

22    that the liability ruling is good at all.

23                There are cases we cite very specifically from the

24    Ninth Circuit and the Second Circuit, though, that address

25    to the circumstances here.  When Apple says it seeks to
```

1  defend the existing ISA, that's in light of the Court's

2  liability ruling.

3          And we've cited cases saying that an intervenor

4  does not have an interest in trying to benefit from some

5  action that's invalid.

6          We cited a case -- two cases from the Ninth

7  Circuit in the employment context and one having to do with

8  a constitutional right.

9          So to the extent --

10          THE COURT:  But wouldn't -- I'm sorry, but

11  wouldn't agree that what Apple really is asserting is a

12  right to contract with Google in a way that would be legal?

13          In other words, they're not in here to defend the

14  ISA in its current form.  They are here to say, we would

15  like to be heard about where the line should be drawn

16  between lawful and unlawful contracting with Google.

17          MR. SALLET:  Your Honor, if I might, I'm not sure

18  that's what Apple is saying.  But if it is what Apple is

19  saying, then that brings me to my second point:  The ability

20  to come in on a contract that's not in issue is very limited

21  under the law.

22          Apple wishes to represent its interest in what it

23  says, I quoted this before, "a host of domains, including

24  general search AI and other related areas."  We don't know

25  what those related areas are.

74

```
 1              THE COURT:  Right.
 2              But we do know at its core it's about search,
 3    right?
 4              I mean, so --
 5              MR. SALLET:  That's right.
 6              THE COURT:  -- you know, it's about search.
 7              They want to be in a position at the end of this
 8    to be able to earn revenue share as they do today.
 9              I mean, that's -- let's be honest, that's largely
10    what this comes down to.
11              MR. SALLET:  That is what they focus on, there's
12    no question.
13              They say they will -- this is very important.
14              They will seek to re- -- "If the ISA in its
15    current form is invalidated, Apple will seek to re-negotiate
16    it consistent with the ISA's provisions and this Court's
17    remedial order."
18              That's the kind of interest that has not been
19    recognized as being sufficiently concrete when applied to a
20    future contract.
21              Apple may seek, but it's a bilateral contract.
22    Will Google agree?
23              I read to you earlier, Your Honor, the findings of
24    fact where Google says it would be economically irrational
25    for it to enter into such a revenue share.
```

1          And if one looks at the cases that are cited by

2   Apple to support the notion of a future contract that isn't

3   yet in existence, they're in very different circumstances,

4   very different from this.

5          If I could just note one of them.

6          It's this case we discussed in our memorandum,

7   it's called *Kleissler versus U.S. Forest Service.*

8          Now, this had to do with timber companies,

9   companies that were taking down logs, I believe, on national

10  forest land.

11         So the Court recognized an interest in existing

12  contracts, no problem, in a contract that had been basically

13  negotiated but hadn't gone into effect.  But it also

14  recognized interest in a future contract for two reasons,

15  and it was very specific.

16         This is the Third Circuit.

17         "Because these companies' continued existence

18  might be jeopardized and because the relevant case law

19  indicated a particular interest in safeguarding timber

20  harvesting," the business of the prospective intervenors.

21  That is a very special case that has nothing to do with the

22  kind of circumstances we have here.

23         That case and the other cases Apple cites,

24  for reasons we say in our pleading, are completely

25  distinguishable and do not provide Apple with a sufficient

1    interest in what Your Honor focused on, the possibility that

2    it will seek -- maybe unsuccessfully, seek to negotiate a

3    different form of contract whose terms are not yet

4    determined.

5            THE COURT:  Okay.

6            MR. SALLET:  Thank you, Your Honor.

7            THE COURT:  Thank you, Mr. Sallet.

8            Mr. Schmidtlein, do you want to add anything?

9            MR. SCHMIDTLEIN:  No, Your Honor.

10           THE COURT:  Okay.

11           Mr. Garre, it's your motion, I ought to give you

12   the last word since it's your burden to establish

13   intervention.

14           I'll give you a couple minutes; I want to make

15   sure we give our court reporter a break.

16           MR. GARRE:  Thank you, Your Honor.

17           A few points.

18           I mean, first, just to be clear, the question is

19   whether or not Google may not -- may not adequately protect.

20   It's not a certainty.  It's "may not."  That's from *Fund for*

21   *Animals* and the *Diamond* case.

22           Likewise, the potential overlap in interest with

23   respect to the ISA or anything else does not defeat the --

24   the adequacy point.  The *NRDC versus Costle* and *Fund for*

25   *Animal* cases establishes that.

1           With respect to the protectable interests, I mean,

2    here we have an existing contract, the ISA, and future

3    contracts and a provision.

4           Just to read it again that says, "Google must not

5    offer or provide anything of value to Apple or offer any

6    commercial terms that in any way creates an economic

7    disincentive for Apple to compete in or enter the GSC or

8    search text ad markets."

9           I mean, if that doesn't create a protectable

10   interest that warrants intervention that would wipe out any

11   conceivably commercial relationship for ten years, I don't

12   know what would, Your Honor.

13          Apple's request here is limited.  We've tried to

14   be respectful of this Court's time and the interests in --

15   in resolving this case quickly, but we wish to come in to

16   simply protect our own interests and ensure that this Court

17   has an adequate record to decide the truly momentous

18   question before you.

19               THE COURT:  All right.  Thank you.

20               MR. GARRE:  Thank you, Your Honor.

21               THE COURT:  Thank you, Mr. Garre.

22          All right, everybody.  Look, I'm not going to give

23   you an oral ruling here for obvious reasons.  I want to

24   think about it.  We'll get you a ruling as quickly as we

25   can.

1          Let's take 15 minutes and then we'll finish up

2     with the outstanding issues of the Joint Status Report.

3          MR. DAHLQUIST:  Your Honor?

4          THE COURT:  Yes.

5          MR. DAHLQUIST:  My apologies.

6          Before we lose Apple's counsel, because we may

7     lose them, there is one agreed issue which doesn't require

8     any decision that I think we -- relating to confidentiality,

9     and then I think we can let them go.

10         THE COURT:  Okay.

11         MR. DAHLQUIST:  Apologies for the quick --

12    Mr. Karl Herrmann will deal with it for the United States.

13         THE COURT:  Mr. Herrmann.

14         MR. HERRMANN:  Thank you, Your Honor.

15         I think we have an easy one.  It's regarding

16    confidentiality, and this issue arose following the filing

17    of plaintiffs' opposition to Apple's motion to intervene.

18         The Court instructed plaintiffs to take down our

19    corrected proposed findings of fact and refile with

20    additional redactions.  We, of course, did so.

21         In the meantime, we reached out to counsel for

22    Google and Apple to ask if they opposed our refiling our

23    original corrected PFOF with a certain figure unredacted.

24    Neither Google nor Apple opposed this.  And if the Court

25    would like to see, I have an example of what we intend to

1    post.

2              THE COURT:  I remember what the figure is.

3    If everybody is in agreement to publicly file it, then

4    great.

5              MR. HERRMANN:  Thank you, Your Honor.

6              THE COURT:  All right.  See everybody in

7    15 minutes.  Thank you.

8              COURTROOM DEPUTY:  All rise.  The Court is now in

9    recess.

10             (Recess from 3:34 p.m. to 3:55 p.m.)

11             COURTROOM DEPUTY:  All rise.  This Honorable Court

12   is again in session; the Honorable Amit P. Mehta presiding.

13             THE COURT:  Please be seated.  Thank you,

14   everyone.

15             All right.  Let's turn then to the parties'

16   Joint Status Report.

17             There are a couple of issues that we need to deal

18   with, so why don't we start there.

19             The first is documents for the second RFP

20   Number 11, documents sufficient to show who makes access

21   decisions, et cetera.

22             Any further discussion on that issue, or any

23   efforts to try and bridge the divide, or are we just stuck

24   on it?

25             MR. DAHLQUIST:  I think it's an impasse,

```
 1    Your Honor.
 2              And Mr. Karl Hermann for the United States will be
 3    arguing this one.
 4              THE COURT:  Okay.  All right.
 5              Mr. Herrmann, can you just help me understand what
 6    this is all about.  I don't quite get it.
 7              I mean, it seems to me what you want are documents
 8    that concern whatever internal policies Google has about who
 9    can access its data.  Is that what essentially this is
10    about?  Who and why and under what circumstances?
11              MR. HERRMANN:  Essentially, Your Honor.
12              THE COURT:  Why does that matter?
13              MR. HERRMANN:  Sure, Your Honor.
14              So in a 30(b)(6), the Google witness revealed that
15    Google has limitations to what types of data and the
16    granularity of data it will allow its everyday engineers
17    access to.
18              So you're thinking, sensitive user data,
19    for example.  And so engineers, what they have to do is,
20    under these policies, state of business justification as to
21    why they need to access this data, and then a policy working
22    group or policy lead evaluates that and determines whether
23    they may access it.
24              We think this is particularly relevant to what
25    we're dealing with here as, first, you know, it's an
```

1    application of a privacy decision that assesses the value of

2    the data to Google's search quality and it balances against

3    some kind of privacy interests.

4              Under plaintiffs' proposed final judgment, we

5    demand privacy and security protections for user data for

6    our data access remedies.

7              Second, Google itself is making privacy a primary

8    defense for it.

9              Google is going to say that it is simply

10   impossible to provide data access to rivals, to allow rivals

11   to improve the quality of their products.  And by receiving

12   this, this will allow us to test Google's own application

13   of, you know, outside of the purview of lawyers, ordinary

14   course, how the business team deals with requests for

15   engineers to access users' sensitive data.

16             THE COURT:  So I get all that.

17             What I don't understand is how that translates.

18             And what I mean by that is, look, it's one thing

19   whether you're going to have a group of Google engineers

20   access to data and how much, right?

21             That's a business judgment:  How significant of a

22   project is this, how much data do you need to get a,

23   you know, result.

24             That all is what you would expect Google to do

25   instead of just throw open, you know, their datasets, user

1   data.

2          But I don't understand how that makes any

3   difference as to your remedy, which is that you want third

4   parties to be able to access it in a way.  And okay.  And

5   you said, yes, subject to certain protections, which aren't

6   specified.

7          How what Google does for business operations,

8   I don't understand how that translates at all and what

9   bearing at all that would have on that really difficult and

10  important question is, if I permitted some, required some

11  sort of data sharing, what the conditions would be to ensure

12  user privacy.  I mean, that's a big deal.

13         And so I don't get what you're asking -- how what

14  you're asking for will make one whit of difference in making

15  that determination about conditions to data access by a

16  third party.

17         MR. HERRMANN:  Your Honor, we believe it will be

18  an instructive data point for the Court to look at how

19  Google itself wrestles with these questions of balancing

20  data access with -- and quality with users' privacy

21  interests.

22         THE COURT:  Okay.

23         MR. HERRMANN:  And that it is internal, it is

24  still asking the same question that we might be asked

25  externally.

1          Second, this does speak directly to the

2   credibility of Google's privacy arguments, right.  It might

3   try to say it is simply impossible for us to allow data

4   access.  Well, we can test this against how Google actually

5   applies privacy in the ordinary course.

6          THE COURT:  Yeah, but it's one thing to deal with

7   privacy within the confines of an organization that's

8   protecting it versus making it available to a third party.

9   I mean, that's, you know, apples and oranges.

10         Okay.  I mean, I -- okay.

11         Mr. Schmidtlein, could I ask you the following,

12   which is, are there, to your knowledge, written policies

13   that Google would be able to go get and provide the

14   policies?  Because I have to tell you, I'm not -- if this

15   can be done in a way that, you know, you could pull a few

16   policies off the shelf and share them, okay.

17         But I understood them, for example, to ask for a

18   list of circumstances in which Google has agreed to let

19   projects go forward and access data and so on and so forth.

20   That is too burdensome and, frankly, does not seem at all

21   relevant.

22         MR. SCHMIDTLEIN:  Your Honor, I'm going to try to

23   answer that question at the level of generality that my

24   knowledge will permit.  If you have detailed questions,

25   Ms. Connor will address those.

1          We've already, I think, produced the types of

2     policy documents and the -- describing either the process

3     and/or the things that Google considers in evaluating

4     particular requests.

5          I think Your Honor heard testimony during the

6     trial, Google does a lot of testing, and there's lots of

7     different projects --

8          THE COURT:  Right.

9          MR. SCHMIDTLEIN:  -- and things they're doing to

10    improve.  And so there are, I don't even want to guess how

11    many of these types of requests that have to get done.

12         And for that reason, sort of going after the fact

13    and trying to second-guess or sort of string together

14    whether any particular requests they have an issue with or

15    what they're trying to deduce from where Google granted

16    access versus where Google said "no" or what conditions were

17    put as they were applying the policies, I think you're

18    absolutely right is way beyond what is needed here, and,

19    candidly, the breadth and burden and scope of that is really

20    not feasible given where we are right now.

21         But if you've got more detailed questions, as I

22    said --

23         THE COURT:  No.

24         If Ms. Connor wants to confirm what you believe to

25    be true, that the plaintiffs, in fact, received whatever

1    written policies -- I mean, I assume Google has written

2    policies that contain various criteria and that speak to

3    access but then also policies that speak to how that data

4    should then be treated.

5              MS. CONNOR:  That's absolutely correct, and we

6    have produced those policies.

7              THE COURT:  I'm sorry, say that again.

8              MS. CONNOR:  That's correct, and we have produced

9    those policies.

10             This is something, as you know, Google takes

11   tremendously serious and has built an entire infrastructure

12   in the company to make sure that user data is handled

13   properly internally to the company.

14             So Google absolutely has policies.  We've produced

15   those policies.  But we agree that it is a completely

16   separate and far more problematic question of how you could

17   ever possibly share that data externally.

18             THE COURT:  Okay.

19             MS. CONNOR:  Thank you, Your Honor.

20             THE COURT:  Mr. Herrmann.

21             MR. HERRMANN:  Your Honor, what we're seeking to

22   look at is the difference between the policy and reality.

23             The policies are aspirational, this is the privacy

24   we should protect.

25             The policy doesn't say how, when a request is

1    made, with a great business interest, Google actually weighs

2    that, which is a similar question to what the Court might

3    face, and we believe it could be instructive to the Court,

4    rather, it will be.

5            With respect to burden, Your Honor, this is

6    documents sufficient to show who makes the decisions, how

7    the decisions are made, and a summary or report of those

8    decisions.  We're not seeking to re-litigate every single

9    application.  We're not seeking -- we're not even seeking to

10   see the application itself, merely a summary.

11           If this is truly burdensome, we're happy to limit

12   the time frame of scope, but we've already limited ourselves

13   greatly with the documents sufficient to show three very

14   narrow things.

15           THE COURT:  Okay.

16           MR. HERRMANN:  Thank you, Your Honor.

17           THE COURT:  Thank you.

18           Look, I'm satisfied that you all have what you

19   need.

20           I do not see the relevance, frankly, and the need

21   for specific examples of Google project engineers coming to

22   a data privacy team and saying, hey, we need X amount of

23   data and so on and so forth.  I just don't see it.

24           I mean, at the end of the day, there's going to be

25   a discussion, presumably, about what any data sharing with

1  third-party construct would look like, and that, seems to

2  me, to be a much more complicated question than whether a

3  group of Google engineers can get access to the data, and

4  the two just don't have parallels in my mind for a lot of

5  the reasons I've already talked about.  So to the extent

6  that the request is asking for anything more than what

7  Google has produced, it will be denied.

8         All right.  Let's talk about the 30(b)(6) issue.

9  Is that all that's left?

10         MR. DAHLQUIST:  30(b)(6) and the timing of the

11  hearing, Your Honor.

12         THE COURT:  Yeah.

13         MR. DAHLQUIST:  Small, small issue.  We can end

14  the day on that.

15         THE COURT:  Yeah, sure.

16         I should have sent you all my calendar before we

17  had this discussion.

18         MR. DAHLQUIST:  Apologies in advance.

19         THE COURT:  No.  Go ahead.

20         MR. DAHLQUIST:  Ms. Sara Trent will be arguing

21  30(b)(6) on behalf of the United States.

22         THE COURT:  I'm sorry, who?

23         MR. DAHLQUIST:  Ms. Sara Trent.

24         THE COURT:  Ms. Trent, come on up.

25         Look, here's the basic question I have.  I guess

88

1   I have two questions.  I have one observation and then

2   I have a question.

3           One is, look, I'm not highly inclined to put a

4   lawyer in a chair for a deposition.  I don't like the idea

5   of that unless it's absolutely necessary.  That's one.

6           Two, but as we've talked about today, there are a

7   number of aspects of the proposed final judgment that are

8   ambiguous, and it seems to me that Google ought to have some

9   sense of what you all are thinking about.

10          Here's just an example.

11          You know, as we just talked about, you all want to

12  allow third parties to get access to Google's data.

13          How much?

14          How frequently?

15          What would the terms and conditions be to allow

16  access to ensure that users, you know, do they have to

17  anonymize the data?

18          Do they have to, you know, strip it of anything

19  that could individually identify anybody?

20          And if that's what we're talking about, it seems

21  to me fair for them to get up and say, you know what, that

22  is just not feasible.

23          I'm not saying those particular things, but to

24  come forward with a defense that says what you're asking

25  for, what you're asking for is not feasible and to do it

1    would require X amount of money and would just be entirely

2    impossible.

3            And so, you know, for example, the same thing with

4    the contract terms.

5            And we just talked about what the terms are with

6    respect to Apple.

7            And I think it was news to Google and maybe to

8    Apple that when you say "no exchange of value," you

9    literally mean no exchange of value, period, full stop, end

10   of story, not as to any contract between these two companies

11   that have relationships outside of search.

12           So why shouldn't somebody have to answer those

13   questions before trial?

14           MS. TRENT:  Sure, Your Honor.

15           And what I would say is that Google has the

16   opportunity to talk to third parties to pressure test these

17   terms.

18           At court, the trial attorneys in this case, the

19   U.S. and state prosecutors, aren't fact witnesses, they

20   don't have any facts.  This isn't like a contract case where

21   there's extrinsic or parol evidence that you can get to.

22           THE COURT:  Yeah, but we're not talking about

23   interpreting the contract or the final judgment.  We're

24   trying to get a sense of what some of these things mean and

25   what your -- what the practical implications would be and

1    what you all foresee the practical implications would be.

2         I mean, you've made certain requests of the Court

3    and for reasons.  And, you know, frankly, I'd like to know

4    how some of this stuff would be executed, whether by a

5    technical committee or what have you, and it seems to me

6    that -- I don't much how those questions get answered in the

7    course of a trial.

8         MS. TRENT:  So the way that the notices are framed

9    now, there's no way for us to know what factual question

10   would be proposed that we could answer even in the context

11   of the way that you're speaking.

12        We have asked Google to give us some examples of

13   some of the questions that they would give us that would not

14   infringe on work product.

15        Because a lot of what -- everything that we do as

16   U.S. and state prosecutors are investigate these claims.

17   We talk to third parties, we marshal evidence, we make

18   inferences from that evidence.  And the PFJ is all opinion

19   work product.  I don't know how you -- I tried to think of a

20   question that you could ask that didn't infringe on work

21   product and I couldn't.

22        And we've given Google the opportunity to do so

23   too and haven't gotten an example.

24        So my concern not only is --

25

91

```
 1              THE COURT:  Well, here's an example.

 2              What safeguards are you all contemplating that

 3    would be put in place to allow a third party access to user

 4    data?

 5              There's a question that doesn't require any

 6    opinion or work product.

 7              I mean, you've got to have an answer to that --

 8              MS. TRENT:  Right.

 9              THE COURT:  -- if not now --

10              MS. TRENT:  We don't now because we haven't

11    done -- this is the beginning of discovery and I --

12              THE COURT:  I --

13              MS. TRENT:  I'm sorry, Your Honor.  Go ahead.

14              THE COURT:  I'm sorry.

15              You've got to have some sense of that.

16              I mean, you don't put that in a final judgment

17    unless you have some sense of it.  Maybe you're still trying

18    to figure it out.

19              But, look, it can't be the case that we're at a

20    trial and we still don't know -- you're going to put

21    somebody up and say, look, I have -- I have found that

22    Google's data advantage is a competitive advantage, and it's

23    one that is borne of the fact that they have had these

24    defaults for a decade.  Fine.

25              Your remedy is to let competitors, nascent
```

1    competitors and others -- maybe it's only just nascent

2    competitors, maybe it's Microsoft.  I don't know.  Maybe --

3    I don't know if you're thinking Microsoft, but under what

4    terms can that happen?

5            And unless you're prepared to answer that soon,

6    I don't know how it gets resolved at trial, because Google

7    has to have some opportunity to say, those terms are just

8    not acceptable --

9            MS. TRENT:  Sure, Your Honor.

10            THE COURT:  -- or here's why they don't work.

11            MS. TRENT:  And I think that's going to be done

12    through expert analysis and export reports that support our

13    PFJ, and Google will have the opportunity --

14            THE COURT:  Are you going to have an expert that

15    is going to say, here are the things we think you should --

16    that you, Judge, should put in place?

17            I mean, are you contemplating an expert on privacy

18    who would say, these are the types of restrictions that

19    could be put in place to safely ensure that user data is not

20    misused?

21            MS. TRENT:  If Google puts on the defense that

22    privacy is an issue, we will have to have an expert that

23    talks about privacy and the proper guardrails that can and

24    can't happen.

25

1          THE COURT:  I mean, this just seems like an

2     obvious area for -- that we should have some at least more

3     formed answers on.

4          I mean, I haven't even begun to sort of really

5     think about the details of what you all are proposing, but,

6     you know, there's a lot of this that -- that's, you know --

7     that is glaring in terms of its need for detail and how it's

8     going to be executed.

9          And it does seem to me that some of those

10    questions need to be answered before we swear a witness in.

11         MS. TRENT:  Sure.

12         And if Google would like to propose some examples

13    of those types of questions -- the real concern here is

14    getting to the core work product.

15         And then if you have an attorney sit for

16    deposition, just the practicality of the privilege

17    objections that Your Honor will --

18         THE COURT:  No.  I understand.  That's why I'm

19    reluctant to start there.

20         So let me ask Mr. Schmidtlein.  I mean --

21         MR. SALLET:  Could I just answer?

22         THE COURT:  Sure, Mr. Sallet.

23         MR. SALLET:  There's a separate 30(b)(6) to the

24    Colorado plaintiffs, so I want to just address briefly this

25    point.

1          If Your Honor feels that the process is

2    insufficient at the moment to get Google what it needs --

3    and let's be clear, the process is, we put in an initial

4    proposal, we're going through fact discovery, expert reports

5    which will lead us to a final proposal, it's -- initial and

6    final because of the possibility of change, so we may be

7    considering changes now.

8          Secondly, experts, fact discovery, pretrial

9    briefing, post-trial briefing, closing arguments.  If

10   Your Honor feels that that is not sufficient to get Google

11   what it needs, let me just make one point.

12         The worst way to get it is what Google is asking

13   for, a deposition.  It's going to have to be a lawyer.  The

14   states have literally no one who could appear who isn't a

15   lawyer.

16         What's going to happen is, virtually every

17   question is going to elicit a work product objection.

18         THE COURT:  No, I know.

19         MR. SALLET:  And Google -- Mr. Schmidtlein is

20   going to come in and say, these guys stonewalled, they

21   didn't get what they wanted.

22         THE COURT:  You know what, that's why I said --

23   that was the reasons for my first observation.

24         MR. SALLET:  Yes, Your Honor.

25         And so we say in our Joint Status Report --

95

1    Ms. Trent says, we're having trouble imagining what these

2    would be.  That's true.

3            But we say -- we've offered to have a

4    meet-and-confer.  We have put on the table some

5    interrogatories.  Google has declined to take that offer;

6    wants to have a deposition.

7            My point is, that is the absolute worst way we

8    could proceed to reach the goals that Your Honor has

9    identified.

10            THE COURT:  Okay.

11            Mr. Schmidtlein.

12            MR. SCHMIDTLEIN:  Your Honor, the notion that the

13    PFJ is all opinion work product is absurd.  It is a legal

14    document that has to be understood, and we need to have the

15    objective understanding of it from the plaintiffs so we know

16    how to prepare our defense, we know how to make our

17    critiques and our criticisms, and to explain why it is that

18    they're not feasible.  There are a raft of provisions in

19    there that are vague, ambiguous, uncertain.

20            20 years ago in the *Microsoft* case, Microsoft

21    noticed a 30(b)(6) deposition of an -- of the plaintiffs in

22    the states case there --

23            THE COURT:  Right.

24            MR. SCHMIDTLEIN:  -- and an attorney sat for a

25    deposition and gave answers about the states' proposed final

1    judgment that was litigated.

2            The idea that we can go -- I believe Ms. Trent

3    said I'm supposed to go talk to third parties about their

4    PFJ?

5            Who am I supposed to -- how -- how do they have

6    any better clue as to what it means than they do?

7            How am I supposed to wait -- I'm supposed to ask

8    their expert witnesses what it means?

9            They are hiding the ball from us here, and they

10   should put somebody in the chair so I can ask the questions,

11   and I need that to happen now.

12           We noticed this deposition for last week because

13   we need these bare bones facts about what this means now so

14   I can prepare my witnesses, my fact witnesses and my expert

15   witnesses.

16           They keep talking about this, "It's just an

17   initial" -- it's just an initial one," as if on March 5th,

18   which is, like, five minutes before the first round of

19   expert reports are due in this case -- because the trial

20   starts the end of April, and we're going to do expert

21   discovery right up into it -- up until it.

22           The idea that we're going to all splash around

23   here for two months and then they're going to reveal the

24   real proposed final judgment on March 5th right before the

25   experts, and then, what, we're going to then move -- move

```
 1    heaven and earth to, like, litigate over an entirely

 2    different one.  This is completely unworkable.  I need these

 3    facts now.

 4              And there are lots of provisions in this final

 5    judgment that -- I mean, Your Honor has identified some of

 6    them that are completely absent, completely unknowable to

 7    us.

 8              THE COURT:  Okay.

 9              All right.  Look, here's what I'm going to do.

10    I'm going to let Google ask these questions but in written

11    interrogatories first, okay?

12              I'm not keen -- I don't know why -- I don't know

13    what happened in Microsoft, I don't know whether it was

14    contested, whether it was ordered over objection, I have no

15    idea.  But the bottom line is, I'm not prepared to put a

16    lawyer in a seat to only get, you know, 85 percent

17    objections that I have to then resolve.

18              Let's start with written interrogatories that

19    ought not to draw objections because they are probably

20    seeking factual information and it can be well-thought-out

21    and you can respond to it.

22              And -- Mr. Schmidtlein.

23              MR. SCHMIDTLEIN:  I'd like answers to those in

24    14 days.

25
```

1          THE COURT:  Okay.  Well, they haven't served them

2    yet, so let's --

3          MR. SCHMIDTLEIN:  No, I understand.

4          But they're going to get -- we are now -- we've

5    got people here who are running out the clock.

6          It is January 17th.  We need --

7          THE COURT:  Okay.

8          Why don't you start with telling me by when --

9    well, two things:  One is, by when you could serve

10   interrogatories; and, two, how many you would like to serve?

11         MR. SCHMIDTLEIN:  I don't know how many I want to

12   serve, but we have a lot of questions.

13         And the reason why a deposition was effective in

14   the *Microsoft* case was because it allowed us to follow up

15   based on the answers.

16         You know, I'm going to ask -- we can ask

17   interrogatories, we're going to get an answer, but then

18   we're going to have follow-up questions to -- depending on

19   what the answer is.  That's why interrogatories are --

20   respectfully, Your Honor, are not the right way to proceed

21   here.

22         The deposition of Thomas Greene, who was an

23   Assistant Attorney General for the State of California, who

24   is now an attorney at the Department of Justice.  He sat for

25   that deposition and there were not objections.

1           THE COURT:  I know.

2           I've looked at it, I've seen what the citations

3    were.  And in Judge Kollar-Kotelly, they were not extensive.

4           I mean, there were some citations to his

5    deposition, they largely had to do with some HTML issue, but

6    otherwise, there wasn't much in there about his deposition.

7           MR. SCHMIDTLEIN:  No, understood.

8           But the point, Your Honor, is, is that allows us

9    to understand what the contours are.

10          THE COURT:  I don't disagree with anything you're

11   saying in a general sense.

12          What I have an issue with is the idea of putting a

13   lawyer in a chair where I'm going to get a ton of work

14   product objections at the outset.

15          So let's start with written interrogatories.  If

16   that's not enough, we'll see whether more needs to be done.

17          We can move quickly, but I'm just not going to

18   order somebody to be put in a chair, especially without

19   knowing what the questions are, right?

20          I mean, you want to put them in a chair without

21   knowing what the questions are and then, you know, hold them

22   to it under Oath.

23          That's not fair to me either, because if there are

24   questions you have, they ought to be able to think about

25   them as opposed to having to answer them in the moment,

1    so...

2              MR. SCHMIDTLEIN:  I mean, they wrote this thing;

3    they should know what it means.

4              THE COURT:  I get it.  I get it.  I get it.  But

5    this is where I am.

6              So we'll start with the interrogatories.

7              So do you want to tell me how many you want and by

8    when you can serve them?

9              MR. SCHMIDTLEIN:  I want 100.

10             THE COURT:  Let's live in the real world.

11             I need something that's a real number.  It's not

12   going to be 100.

13             MR. SCHMIDTLEIN:  50.

14             I mean, Your Honor, we are talking about a very

15   long, complicated PFJ.

16             THE COURT:  I know what we're talking about.

17             Mr. Dahlquist.

18             MR. DAHLQUIST:  Your Honor, the parties had agreed

19   to 20 interrogatories to start this whole process.

20             Full wholeheartedly agree that the best place to

21   start is a written response.

22             I would even bet Mr. Sallet that a meet-and-confer

23   might be able to resolve a bunch of these.

24             So maybe we do both.  Maybe we'll meet and confer

25   and/or I propose half of that.  Let's start with another 10

1    interrogatories, see how far we get with that.

2           But I'm hopeful that we can resolve this that way.

3           THE COURT:  Okay.

4           We'll start with 30.

5           I would urge you to not confine this to just

6    written interrogatories.

7           There's no reason you can't get in a conference

8    room to ask these questions, and if they don't have answers

9    then, they'll have answers the next time you ask them.

10   I don't -- it doesn't seem to me that that's unreasonable.

11          And so I'll give you the opportunity for written

12   interrogatories.  But, you know, some of this, if you want

13   to put these questions before him so they can think about

14   them, maybe they haven't thought about the answer yet, and

15   maybe they should, and this is exactly what's going to get

16   them to do it.

17          So let's start there and you'll answer them within

18   two weeks.

19          And if you think it's better to sit down and have

20   a conversation about it so they have an answer, all the

21   better, okay?

22          MR. DAHLQUIST:  Thank you, Your Honor.

23          THE COURT:  All right.

24          Scheduling.

25          Look, it will not come as a surprise to you that I

1    don't have a lot of give in the schedule.  I mean, once we

2    set this schedule down, things got built around it.

3            The week after this is supposed to conclude,

4    I have a bench trial in a case involving

5    a-quarter-billion-dollar eminent domain matter that cannot

6    move.  I've asked the parties to move it; they cannot move

7    it.

8            We're aiming right now for closing arguments on

9    the 29th and 30th, or the 30th.

10           I've asked -- I have a two-week back-to-back

11   bribery case starting the 2nd of June, and I've asked those

12   parties whether they can move things back and they cannot.

13           So I don't have a lot of give here.

14           And what, at a minimum, any additional time would

15   mean is that there would have to be a break in the action.

16           I can't move this trial that's supposed to start

17   on the 6th and end on the 9th.

18           We can -- we're currently scheduled to start on

19   the 22nd.  We could start on the 21st.  That's a day.

20           And we can talk about how many additional days the

21   week of the 12th, but with the caveat of how long you think

22   it's going to take to get your post-trial submissions in.

23   Right now we're scheduled to do so on the 16th, which is two

24   weeks after the evidence is supposed to close.

25           Now, if we came back on the 12th, presumably

1    you've had both throughout the hearing and that additional

2    week of the 5th to continue to write, and that whatever

3    would be left would just be the additional days of testimony

4    and evidence that you'd need to tack on into your papers.

5          But, you know, I had given us, "us" meaning me and

6    my law clerk, two weeks to review your submissions before

7    the oral argument.  I'm prepared to squeeze that a little

8    bit, but I can't very much because I've got other things on

9    my calendar the following week.

10         But I would very much like to keep the oral

11   argument on the 30th, because I can't then do another one --

12   I can't push the oral argument to the week of the 16th.

13   That's just not going to leave me enough time to get this

14   opinion done in the time that I need to get it done.

15         So I guess what I'd like to hear from you all is,

16   if you had additional dates the week of the 12th, how soon

17   you think you could have your -- and we haven't exactly

18   mapped out what those submissions are going to look like,

19   I don't think we have the luxury of responses, especially if

20   we expand the number of trial days.

21         So, you know, we could go to the 14th, to the

22   15th, as long as I can get something no later than the 20th

23   or the 21st, I think really the 20th is probably the day by

24   which we are going to need your post-trial filings, because

25   that gives us ten days, including about ten days to get

1    ready.

2              You know, as you know, I hope you know, I intend

3    to get ready.

4              MR. DAHLQUIST:  Thank you, Your Honor.

5              We will work within whatever schedule works with

6    your calendar.

7              We were prepared to work within the current

8    schedule, still are.

9              We proposed expanding it to 12 within your

10   calendar when possible.  We will take days that you have.

11             But I will note, during the liability trial,

12   Google's entire case-in-chief was 12 days.  They had many

13   half days, they had many ending-early days, and they played

14   videos, five videos for days.  So to argue that they need

15   nearly ten days now when they took 12 days in liability,

16   we question.

17             We understand, Your Honor.  We have no problem

18   with expanding, subject to Your Honor's calendar.

19             Our proposal was 6 and 6, for 12 days total.  With

20   the math that you were doing, I don't even know if we get

21   there, but whatever Your Honor's calendar can give us, we're

22   happy to --

23             THE COURT:  12 days -- I'm sorry to interrupt you,

24   but 12 days would put us at the 13th if we started on the

25   21st.

1          MR. DAHLQUIST:  No objection to starting early,

2    Your Honor.

3          THE COURT:  So that's five business days the week

4    of the 21st and 28th.

5          We'd have to skip the week of the 5th and come

6    back the week of the 12th for two days.  That's 12 days.

7          If Google thinks you need 20 and can't do it in

8    12, it just -- you know, at some point, I think we're

9    probably hitting diminishing returns.

10          And I know what you're going to tell me, which is

11    that they've asked for very broad-based remedies, I get it,

12    but I've also to get this decision written.

13          MR. SCHMIDTLEIN:  Your Honor, what they've asked

14    for threatens the future of Google.

15          THE COURT:  I understand.

16          MR. SCHMIDTLEIN:  It does.

17          THE COURT:  I get it.

18          MR. SCHMIDTLEIN:  It does.

19          THE COURT:  I get it.

20          Trust me, I understand, and I'm confident that you

21    will be able to convey that to me in the time you're going

22    to get.

23          I mean, you've certainly been effective in doing

24    it thus far, so I'm not too concerned that that's going

25    to -- your client is going to be shorted in any way.

1          I'll give you till the 15th.

2          I need post-trial submissions on the 20th.

3          There won't be responsive submissions, we don't

4   have the time for it.

5          And we'll have oral argument presumptively on the

6   30th.  Hopefully we only need a day, I'm certainly hopeful

7   that we don't need two.

8          MR. SCHMIDTLEIN:  Thank you, Your Honor.

9          THE COURT:  Okay?

10         So that gives us -- that's 14 trial days.

11  That should be more than enough time.

12         And I do not plan to, at least right now --

13  the only -- and they will almost all be full days.  We won't

14  be doing half-days Friday.

15         I have to do a Pretrial on the 25th at 3:30 for

16  that bench trial that I have the next week, the 5th.

17         So otherwise you can expect, you know, 9:00 to

18  5:00 every day.

19         We'll stop at around 3:30 on the 25th.

20         The week of the 28th, it will be 9:00 to 5:00.

21         And then the week of the 12th, we'll go 9:00 to

22  5:00 until the 15th, okay?

23         MR. DAHLQUIST:  Thank you, Your Honor.

24         Your Honor did *U.S. v. Sysco* in eight.

25  I'm confident we can do just remedies here in that amount of

 1   time.  Thank you.

 2              THE COURT:  All right.

 3              Okay.  Is there anything else anybody would like

 4   to discuss before we adjourn?

 5              MR. DAHLQUIST:  Some minor things, Your Honor, and

 6   appreciate your indulgence.

 7              One is an agreement.

 8              We wanted to let you know, since your order

 9   said -- we wanted to inform the Court of when -- if we

10   change deadlines or anything like that, there's one that

11   hopefully will not impact anything, but the parties have

12   been working on witness lists, we've exchanged witness

13   lists, we've identified even topics in those lists, we're

14   working to schedule depositions.

15              As I previewed before, there are more witnesses on

16   Google's list than we have depositions.  We have struck an

17   agreement that in the event -- and we've noticed who we want

18   to depose out of those.

19              In the event that on Google's final witness list,

20   a witness appears that we have not deposed and even though

21   we've exceeded our number, Google will not oppose our effort

22   to take a deposition of that individual in advance of trial.

23              THE COURT:  Okay.

24              MR. DAHLQUIST:  So that's just an agreement.

25   We wanted to let you know that technically it may modify the

1    deposition number.

2          So that's an agreement.

3          One dispute I think we may have relates to

4    deposition scheduling.  And I apologize for previewing this

5    with Your Honor; I previewed it with Mr. Schmidtlein before

6    hearing today.

7          We're going to work our best to schedule these

8    depositions; however, at present, the 15 Google witnesses

9    that we've asked to depose, Google has asked us to travel to

10   California to Mountain View for all of them.  Save one.

11   Save one.  They're bringing one international individual to

12   D.C. since we are actually prohibited by law to take the

13   deposition where the person lives.

14         However, we would propose, and we have proposed,

15   to split this in some way, shape, or form.  We've asked to

16   bring people here to D.C. where the case is pending, where

17   all counsel are.  We think that would be convenient for the

18   case.  We understand some witnesses don't have that ability.

19   We understand Mr. Pichai.  We offered Ms. Reed.  We will

20   take others in California.  This is not a positional

21   objection, but we do think there should be meeting in the

22   middle, Your Honor.

23         THE COURT:  Okay.

24         MR. SCHMIDTLEIN:  Your Honor, they have asked for

25   all these depositions to take place in the month of

1  February.

2        We also have lots and lots of third parties that

3  are going to be deposed.  Surprising -- not surprisingly,

4  those two, a lot of those are going to be taken in February

5  because we're trying to get everybody to produce their

6  documents at some point this month and then have an

7  opportunity to review them in advance of taking the

8  depositions.

9        The witnesses and the preparation of these

10 witnesses, these witnesses all reside in California, except

11 for a couple, and we're -- the witnesses are being deposed

12 where they are located.

13       And their preparation, I mean, trying to get this

14 calendar to work has been like air traffic control at

15 National Airport.  It is very, very difficult.  And,

16 candidly, with the prep and everything else, we can't have

17 these people actually ferrying back and forth to Washington,

18 D.C.

19       We're going to be out in California preparing all

20 of these witnesses when we're not running to other places to

21 take third-party depositions.  It's just not going to work

22 if we're required to drag people all the way to D.C.,

23 because, frankly, I'm going to be out there for all of the

24 other -- for various of the other people, as will my

25 colleagues.

1          If they don't want to get on a plane to go to

2     California, they can take them remotely.  They can stay

3     right here in Washington and they can depose them remotely.

4     We did a lot of depositions like that during COVID, during

5     the investigative phase of this case, and even during the

6     litigation phase of this case.  So if they want to take them

7     remotely, they can.

8          But we do not believe we should be having to bring

9     witnesses who reside on the West Coast to Washington.

10    That's never been the rule in this case.  Everybody has

11    produced their witnesses, Google and third party, at the

12    location of the witness.

13          THE COURT:  Okay.

14          Mr. Dahlquist, do you want to add anything?

15          MR. DAHLQUIST:  No, Your Honor.

16          THE COURT:  Okay.

17          Look, I'm not going to put a number on this.

18    If it can be -- if people are prepared to be deposed here,

19    great.

20          But, you know, the plaintiffs, certainly the DOJ

21    Plaintiffs, filed here against a California company.  There

22    are consequences, or there are effects of that, and dragging

23    people across the country, in my estimation, for deposition

24    is not one of them.

25          Trial is different, but you all are going to have

1    to go where they are if they're not prepared to come here.

2              MR. DAHLQUIST:  Thank you, Your Honor.

3              THE COURT:  Mr. Sallet.

4              MR. SALLET:  Your Honor, just one small point.

5              I appreciate Mr. Schmidtlein noting the

6    possibility of remote questioning.

7              As you know, Your Honor, we try not to be

8    duplicative of the DOJ.  We sometimes in depositions would

9    ask 40 minutes of questioning, for example.

10              During the liability phase, at one point a

11    question arose as to whether we would be able to ask

12    questions remotely if DOJ had lawyers present.  It worked

13    out that we were able to do so.

14              We are planning on doing that.  I just want that

15    to be clear, because that's the only way we can cover so

16    many depositions with our number of lawyers.

17              THE COURT:  Okay.

18              MR. SALLETT:  Thank you.

19              THE COURT:  That's certainly fine by me.  I don't

20    see any reason why that can't be done that way.  Okay.

21              All right.  Is there anything else?

22              MR. DAHLQUIST:  Nothing from DOJ, Your Honor.

23    Thank you.

24              MR. SCHMIDTLEIN:  No, Your Honor.  Thank you.

25

1          THE COURT:  All right.  Thank you, all, have a

2  nice weekend.  We will see you -- we have our next hearing

3  set, correct?

4          All right.  We'll see you all soon.  Thank you.

5          COURTROOM DEPUTY:  All rise.  This Court stands in

6  recess.

7          (Proceedings concluded at 4:35 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__January 18, 2025_____    _____

William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [5]** 6/2 6/6 79/8 79/11 112/5
**MR. DAHLQUIST: [41]** 13/21 14/12 21/10 21/19 22/12 23/6 24/7 24/12 31/7 31/15 31/17 32/16 34/11 35/14 40/3 40/6 40/9 40/11 41/7 41/23 42/18 69/6 78/3 78/5 78/11 79/25 87/10 87/13 87/18 87/20 87/23 100/18 101/22 104/4 105/1 106/23 107/5 107/24 110/15 111/2 111/22
**MR. FLOOD: [5]** 26/16 27/7 27/11 29/9 30/13
**MR. GARRE: [19]** 56/10 58/7 59/16 60/6 60/19 61/8 61/19 62/25 63/18 64/1 64/17 65/6 65/15 67/1 67/11 68/4 69/3 76/16 77/20
**MR. HERRMANN: [8]** 78/14 79/5 80/11 80/13 82/17 82/23 85/21 86/16
**MR. MAIER: [27]** 8/9 8/18 9/8 9/13 10/7 10/16 11/14 12/4 12/18 12/20 13/6 13/8 14/18 15/2 15/23 15/25 16/2 16/9 16/12 16/17 16/21 16/24 17/3 17/8 17/13 23/23 27/13
**MR. McGINNIS: [6]** 8/5 8/8 8/13 18/25 24/1 24/11
**MR. RAMANI: [1]** 7/5
**MR. SALLET: [18]** 36/8 36/15 39/4 39/11 43/1 43/22 44/1 44/5 72/3 73/17 74/5 74/11 76/6 93/21 93/23 94/19 94/24 111/4
**MR. SALLETT: [1]** 111/18
**MR. SCHMIDTLEIN: [28]** 6/19 7/13 7/19 24/20 40/7 44/18 46/11 46/25 47/10 48/2 76/9 83/22 84/9 95/12 95/24 97/23 98/3 98/11 99/7 100/2 100/9 100/13 105/13 105/16 105/18 106/8 108/24 111/24
**MR. YEAGER: [5]** 24/23 26/1 26/5 28/24 30/11
**MS. CHAPMAN: [2]** 6/25 7/4
**MS. CONNOR: [3]** 85/5 85/8 85/19
**MS. RAY: [12]** 48/13 48/15 48/20 49/10 50/5 51/1 51/16 51/18 51/25

**MS. TRENT: [9]** 89/14 90/8 91/8 91/10 91/13 92/9 92/11 92/21 93/11
**THE COURT: [179]**

**$**
**$20 [3]** 41/16 65/12 65/15
**$20 billion [1]** 65/12

**0**
**02199 [1]** 3/8
**0316 [1]** 2/11
**0600 [1]** 4/16

**1**
**10 [1]** 100/25
**100 [2]** 100/9 100/12
**100 percent [1]** 60/23
**1000 [1]** 4/19
**11 [1]** 79/20
**110 [1]** 62/4
**12 [9]** 53/9 104/9 104/12 104/15 104/19 104/23 104/24 105/6 105/8
**12th [6]** 3/4 102/21 102/25 103/16 105/6 106/21
**1300 [1]** 2/16
**1304 [1]** 4/19
**13th [1]** 104/24
**14 [2]** 8/20 106/10
**14 days [1]** 97/24
**140,000 [1]** 15/6
**14th [1]** 103/21
**15 [11]** 10/1 10/12 15/1 15/2 15/8 20/10 22/18 33/20 54/12 78/1 108/8
**15 minutes [1]** 79/7
**15 years [2]** 10/6 20/9
**1525 [1]** 4/11
**15th [3]** 103/22 106/1 106/22
**16 [1]** 35/19
**1615 [1]** 4/4
**16th [2]** 102/23 103/12
**17 [1]** 1/5
**17th [1]** 98/6
**18 [2]** 37/11 113/7
**19104 [1]** 3/13

**2**
**20 [4]** 15/5 95/20 100/19 105/7
**20,000 [3]** 25/6 26/24 27/4
**20-3010 [2]** 1/4 6/7
**200 [1]** 3/18
**2000 [3]** 3/19 4/9 4/15
**20001 [2]** 2/10 5/5
**20004-1304 [1]** 4/19
**20005 [1]** 3/4
**20036 [1]** 4/5
**202 [6]** 2/5 2/11 3/5 4/5 4/20 5/5
**2020 [4]** 33/5 33/24 69/12 69/21

**2025 [3]** 1/5 54/14 113/7
**2060 [1]** 3/14
**209 [1]** 2/4
**20th [3]** 103/22 103/23 106/2
**215 [1]** 3/14
**21st [4]** 102/19 103/23 104/25 105/4
**2207 [1]** 4/20
**22nd [1]** 102/19
**24 [3]** 53/9 68/13 72/7
**25th [2]** 106/15 106/19
**28th [2]** 105/4 106/20
**2929 [1]** 3/13
**29th [1]** 102/9
**2:00 [1]** 1/6
**2nd [1]** 102/11

**3**
**30 [9]** 40/7 45/21 80/14 87/8 87/10 87/21 93/23 95/21 101/4
**300-1525 [1]** 4/11
**3010 [2]** 1/4 6/7
**30th [4]** 102/9 102/9 103/11 106/6
**3249 [1]** 5/5
**326-7923 [1]** 4/5
**333 [1]** 5/4
**354-3249 [1]** 5/5
**391-0600 [1]** 4/16
**3:30 [2]** 106/15 106/19
**3:34 [1]** 79/10
**3:55 [1]** 79/10

**4**
**40 [1]** 111/9
**400 [1]** 4/4
**415 [1]** 4/16
**434-5000 [1]** 3/5
**450 [1]** 2/10
**476-0316 [1]** 2/11
**4:35 [1]** 112/7

**5**
**50 [1]** 100/13
**50,000 [1]** 25/6
**5000 [1]** 3/5
**505 [1]** 4/14
**508-6000 [1]** 2/17
**555 [1]** 4/18
**5:00 [3]** 106/18 106/20 106/22
**5th [5]** 96/17 96/24 103/2 105/5 106/16

**6**
**60 [1]** 23/2
**600 [1]** 2/4
**6000 [1]** 2/17
**601 [1]** 4/9
**60604 [1]** 2/5
**617 [1]** 3/9
**628 [1]** 4/11
**637-2207 [1]** 4/20
**650 [1]** 3/19
**6th [1]** 102/17

**7**
**7000 [1]** 3/9
**720 [1]** 2/17
**725 [1]** 3/4
**73,000 [1]** 25/3
**750 gigabytes [1]** 14/24
**752-2000 [1]** 3/19
**7923 [1]** 4/5
**796 [1]** 38/6
**799 [1]** 38/10
**7th [1]** 2/16

**8**
**800 [1]** 3/8
**802 [1]** 38/12
**80203 [1]** 2/17
**805-8563 [1]** 2/5
**85 [1]** 97/16
**8563 [1]** 2/5

**9**
**9,000 [11]** 9/1 9/2 9/10 16/7 17/8 17/12 17/14 18/15 19/3 19/5 21/16
**9,000-something [1]** 15/14
**90 [1]** 23/2
**900 [1]** 3/17
**94063 [1]** 3/18
**94111 [2]** 4/10 4/15
**94610 [1]** 4/10
**951-7000 [1]** 3/9
**994-2060 [1]** 3/14
**9:00 [3]** 106/17 106/20 106/21
**9th [1]** 102/17

**A**
**ability [8]** 35/1 44/7 47/19 48/3 58/16 66/21 73/19 108/18
**able [19]** 9/6 21/3 22/5 35/20 39/9 53/11 57/5 61/14 62/19 63/16 72/9 74/8 82/4 83/13 99/24 100/23 105/21 111/11 111/13
**about [96]** 7/13 8/21 9/3 11/7 11/16 14/23 15/8 16/18 17/1 17/20 18/3 19/22 22/10 23/1 23/3 23/13 23/25 25/13 25/19 25/19 25/20 26/17 26/19 27/2 28/20 30/17 32/22 32/24 34/12 36/9 37/6 39/22 41/4 42/5 42/23 44/6 44/23 44/25 45/3 45/6 45/21 47/4 48/24 48/24 49/3 49/5 49/6 51/18 52/2 52/10 52/21 53/1 56/11 57/9 58/6 58/12 59/13 60/13 64/23 64/24 68/18 71/13 72/7 72/12 73/15 74/2 74/6 77/24 80/6 80/8 80/10 82/15 86/25 87/5 87/8

89/5 89/22 92/23 93/5 95/25 96/3 96/13 96/16 99/6 99/24 100/14 100/16 101/13 101/14 101/20 102/20 103/25
**above [1]** 113/4
**above-titled [1]** 113/4
**absence [1]** 67/19
**absent [1]** 97/6
**absolute [1]** 95/7
**absolutely [8]** 20/12 37/3 47/2 50/5 84/18 85/5 85/14 88/5
**absurd [1]** 95/13
**acceptable [1]** 92/8
**access [22]** 29/13 29/17 79/20 80/9 80/17 80/21 80/23 81/6 81/10 81/15 81/20 82/4 82/15 82/20 83/4 83/19 84/16 85/3 87/3 88/12 88/16 91/3
**accomplish [1]** 58/3
**acknowledge [1]** 53/2
**acknowledgment [1]** 20/1
**across [2]** 40/13 110/23
**action [9]** 6/7 54/22 62/17 66/25 67/1 67/3 69/20 73/5 102/15
**actually [11]** 9/10 19/14 25/13 38/19 46/11 60/17 64/25 83/4 86/1 108/12 109/17
**ad [3]** 19/7 19/9 77/8
**add [5]** 35/18 43/1 58/18 76/8 110/14
**addition [4]** 17/11 17/14 26/18 37/21
**additional [9]** 17/25 50/16 52/5 78/20 102/14 102/20 103/1 103/3 103/16
**address [10]** 24/21 25/9 31/20 32/15 46/12 46/13 56/4 72/24 83/25 93/24
**addressed [2]** 33/6 47/6
**adequacy [5]** 31/21 36/2 58/21 72/8 76/24
**adequate [2]** 13/20 77/17
**adequately [11]** 39/13 48/1 56/14 60/1 60/10 61/21 66/8 70/5 70/6 70/7 76/19
**adjourn [1]** 107/4
**adopt [2]** 64/21 66/6
**advance [5]** 55/8 56/1 87/18 107/22 109/7
**advantage [3]** 47/5 91/22 91/22
**adversely [1]** 44/8 49/25
**affect [7]** 57/10 57/17

**A**

affect... [5] 59/20 64/3 64/20 65/16 68/23
affecting [1] 58/12
affects [1] 49/25
affidavit [1] 53/18
after [5] 12/21 67/16 84/12 102/3 102/24
afternoon [7] 6/4 6/12 8/5 8/9 30/9 48/13 48/14
again [18] 14/7 15/17 17/18 23/18 23/20 30/2 38/19 51/7 51/9 52/3 52/14 52/16 61/8 65/15 65/17 77/4 79/12 85/7
against [5] 25/20 33/13 81/2 83/4 110/21
agency [1] 67/9
ago [3] 20/14 66/15 95/20
agree [9] 10/4 25/14 37/3 40/16 70/12 73/11 74/22 85/15 100/20
agreed [2] 78/7 83/18 100/18
agreement [13] 22/16 37/19 38/7 42/17 46/15 48/5 48/6 70/13 79/3 107/7 107/17 107/24 108/2
agreements [5] 10/10 46/17 47/2 61/7 64/13
ahead [3] 48/19 87/19 91/13
AI [8] 4/8 29/13 36/23 36/24 37/1 37/1 37/22 73/24
aided [1] 5/7
aiming [1] 102/8
air [1] 109/14
Airport [1] 109/15
al [2] 1/3 6/8
aligned [1] 60/21
aligns [1] 60/4
all [96] 6/2 6/12 6/15 7/7 7/11 7/11 7/24 14/3 18/13 20/11 22/5 22/9 22/16 22/21 23/13 24/8 24/14 27/8 30/12 30/15 30/16 30/17 30/19 30/19 31/24 32/16 34/24 36/19 36/20 37/9 38/1 39/21 39/22 42/9 42/21 42/21 44/3 44/5 44/11 44/16 47/11 47/17 48/9 55/7 58/22 62/17 64/13 68/6 70/2 71/6 72/22 77/19 77/22 79/6 79/8 79/11 79/15 80/4 80/6 81/16 81/24 82/8 82/9 83/20 86/18 87/8 87/9 87/16 88/9 88/11 90/1 90/18 91/2 93/5 95/13 96/22 97/9 101/20 101/23 103/15 106/13 107/2 108/10 108/17 108/25 109/10

**All issues [1]** 7/7
All right [6] 27/8 42/9 44/11 77/22 101/23 107/2
allow [11] 23/18 40/18 40/19 62/14 80/16 81/10 81/12 83/3 88/12 88/15 91/3
allowed [5] 37/16 38/17 50/15 67/15 98/14
allows [1] 99/8
alluded [3] 27/13 56/16 57/6
almost [1] 106/13
alone [3] 32/20 34/1 58/20
alongside [1] 43/12
already [19] 8/23 9/10 9/16 17/5 17/9 17/18 17/23 21/21 32/23 34/5 34/8 35/17 35/20 53/17 54/5 55/9 84/1 86/12 87/5
also [15] 6/20 9/15 31/11 31/12 32/6 47/6 50/9 51/23 52/2 53/2 64/19 75/13 85/3 105/12 109/2
alternative [1] 14/3
Although [1] 37/12
always [1] 48/2
am [7] 20/9 44/5 54/5 62/22 96/5 96/7 100/5
Amador [1] 69/18
ambiguity [1] 42/14
ambiguous [2] 88/8 95/19
AMERICA [2] 1/3 6/8
Amicus [2] 71/5 71/5
AMIT [3] 1/9 6/3 79/12
among [6] 26/11 28/16 28/18 45/18 45/20 67/8
amount [6] 6/15 23/18 45/13 86/22 89/1 106/25
amounts [1] 40/25
analysis [1] 92/12
Animal [1] 76/25
Animals [1] 76/21
annual [1] 39/2
anonymize [1] 88/17
anonymize the [1] 88/17
another [6] 13/24 14/11 26/9 68/12 100/25 103/11
answer [20] 7/2 13/22 34/15 36/3 50/2 50/19 61/2 72/13 83/23 89/12 90/10 91/7 92/5 93/21 98/17 98/19 99/25 101/14 101/17 101/20
answered [4] 44/14

**B**

answers [9] 8/22 12/12 43/23 93/3 95/25 97/23 98/15 101/8 101/9
anti [3] 42/4 42/23 54/25
anti-circumvention [2] 42/4 42/23
anti-competitive [1] 54/25
anticipate [4] 48/23 49/6 51/19 51/20
antitrust [2] 2/3 2/14 54/25 67/4
any [47] 7/1 8/2 9/4 10/15 12/9 19/13 19/15 20/1 20/1 23/4 32/8 34/23 38/17 38/17 39/23 39/24 39/24 42/12 49/24 49/24 50/16 53/5 60/23 61/5 63/25 64/14 66/23 68/5 70/8 70/9 72/6 77/5 77/6 77/10 78/8 79/22 79/22 82/2 84/14 86/25 89/10 89/20 91/5 96/6 102/14 105/25 111/20
anybody [7] 45/11 45/12 63/9 63/12 64/14 88/19 107/3
anyone [2] 34/19 53/6
anything [20] 20/17 39/24 40/23 41/21 42/10 45/5 57/1 59/11 60/13 76/8 76/23 77/5 87/6 88/18 99/10 107/3 107/10 107/11 110/14 111/21
anyway [2] 12/1 47/3
apart [1] 8/25
apologies [3] 78/5 78/11 87/18
apologize [1] 108/4
appeal [2] 48/7 49/24
Appeals [2] 65/10 65/12
appear [2] 35/3 94/14
appearance [1] 70/19
APPEARANCES [4] 1/11 2/18 3/21 4/21
appears [3] 34/19 36/9 107/20
Apple [154]
Apple's [30] 32/14 34/2 34/17 34/19 36/9 44/9 47/25 49/3 51/7 51/10 52/4 52/8 52/17 56/12 57/9 58/4 58/22 60/17 62/10 62/11 63/5 63/11 64/24 65/16 65/25 66/19 68/16 77/13 78/6 78/17
apples [1] 83/9
application [4] 81/1 81/12 86/9 86/10
applied [2] 72/7 74/19
applies [2] 35/6 83/5
apply [1] 35/6

**C**

applying [1] 92/7
appreciate [8] 7/12 7/21 48/22 58/8 59/25 69/2 107/6 111/5
appreciates [1] 25/12
appropriate [6] 21/15 23/21 24/2 27/3 28/2 52/19
approximately [1] 26/24
April [2] 20/5 96/20
Aravind [2] 25/16
Arch [1] 3/13
are [163]
area [3] 36/23 36/24 93/2
areas [5] 37/23 38/1 38/1 73/24 73/25
aren't [2] 63/10 82/5 89/19
argue [6] 31/25 49/2 71/17 71/18 71/18 104/14
arguing [2] 80/3 87/20
argument [8] 32/22 34/3 63/20 71/2 103/7 103/11 103/12 106/5
arguments [2] 58/23 69/9 83/2 94/9 102/8
arose [2] 78/16 111/11
around [5] 35/25 42/24 96/22 102/2 106/19
arrangement [2] 38/12 54/24
as [101] 6/21 7/15 8/4 8/14 8/16 9/18 9/18 9/25 10/23 11/7 11/19 12/2 12/7 12/15 19/12 19/12 25/12 25/21 26/6 29/5 29/23 31/23 33/2 33/3 33/10 33/25 35/6 37/20 39/21 40/11 41/5 41/25 41/25 42/3 42/15 42/21 42/21 44/9 44/18 45/17 45/17 46/16 47/8 48/3 48/4 49/3 50/10 52/21 54/6 55/10 55/15 56/1 57/6 57/7 57/13 58/16 59/10 59/14 61/7 61/20 63/4 63/5 63/10 64/22 65/20 65/20 67/3 69/7 69/7 69/9 69/11 69/21 69/24 70/23 72/4 72/5 74/8 74/19 77/24 77/24 80/20 80/25 82/3 84/17 84/21 85/10 86/8 88/11 89/10 90/15 96/6 96/17 99/25 101/25 103/22 103/22 104/2 107/15 109/24 111/7 111/11
as opposed [3] 12/2 12/15 99/25
Ashok [2] 3/16 7/7
ashok.ramani [1] 3/20
aside [1] 32/20
ask [32] 11/12 12/9 13/3 20/24 24/2 26/13

**D**

apply [1] 35/6

**E** (continued right column top)

appreciate [8] ...

**Right-most column**

affect... continued: A through right column entries:

A/1 30/12 39/19 45/8 45/20 50/24 51/6 52/11 53/13 59/12 59/24 67/24 78/22 83/11 83/17 90/20 93/20 96/7 96/10 97/10 98/16 98/16 101/8 101/9 111/9 111/11
asked [19] 8/21 14/20 15/17 20/14 58/11 61/24 70/4 72/12 82/24 90/12 102/6 102/10 102/11 105/11 105/13 108/9 108/9 108/15 108/24
asking [10] 32/19 49/15 49/18 82/13 82/14 82/24 87/6 88/24 88/25 94/12
aspect [2] 59/1 59/3
aspects [2] 32/8 88/7
aspirational [1] 85/23
asserting [1] 73/11
assess [1] 21/2
assesses [1] 81/1
Assistant [1] 98/23
associated [1] 11/1
assume [5] 11/22 32/4 43/11 49/23 85/1
assumptions [2] 57/9 64/23
atom [1] 11/24
attachments [1] 8/15
attack [1] 25/22
attempting [2] 37/10 40/15 42/19 42/19
attend [1] 51/5
attended [1] 12/24
attention [1] 48/22
attorney [6] 11/21 14/22 93/15 95/24 98/23 98/24
Attorney General [1] 98/23
attorney-client [1] 11/21
attorneys [1] 89/18
available [3] 6/13 7/21 83/8
Avenue [1] 5/4
avoid [2] 11/24 18/10
aware [1] 16/8
away [2] 39/8 62/3

**B**

back [12] 10/12 10/17 23/8 33/23 47/24 70/17 102/10 102/10 102/12 102/25 105/6 109/17
balance [1] 52/9
balances [1] 81/2
balancing [1] 82/19
ball [3] 44/24 55/8 96/9
ballgame [1] 30/5
Bank [2] 69/19 69/19
bare [1] 96/13
Barrett [1] 5/4
barriers [2] 6/13 43/5

**based** [4] 64/11 65/20 98/15 105/11
**bases** [1] 49/3
**basic** [2] 38/11 87/25
**basically** [2] 46/19 75/12
**basis** [9] 36/18 51/8 58/16 59/6 65/7 65/25 67/20 67/25 68/13
**baton** [1] 53/15
**be** [190]
**bear** [1] 26/8
**bearing** [1] 82/9
**because** [42] 6/23 10/22 12/5 12/14 21/4 28/19 30/22 33/22 34/25 36/17 37/24 40/21 41/7 46/16 50/11 55/9 56/5 63/21 64/18 64/19 65/13 70/24 72/4 75/17 75/18 78/6 83/14 90/15 91/10 92/6 94/6 96/12 96/19 97/19 98/14 99/23 103/8 103/11 103/24 109/5 109/23 111/15
**become** [1] 37/7
**becoming** [1] 57/23
**been** [29] 6/21 13/19 20/3 20/6 21/20 25/24 26/1 26/17 32/23 33/10 33/23 34/4 34/8 37/14 44/14 48/10 52/4 56/16 63/5 66/14 66/24 67/5 72/17 74/18 75/12 105/23 107/12 109/14 110/10
**before** [31] 1/9 17/6 19/6 20/16 23/17 24/16 25/10 30/23 33/17 33/25 34/14 37/20 45/23 54/23 56/17 58/19 70/19 71/10 73/23 77/18 78/6 87/16 89/13 93/10 96/18 96/24 101/13 103/6 107/4 107/15 108/5
**began** [2] 20/17 67/16
**begin** [1] 9/1
**beginning** [3] 15/15 48/5 91/11
**begun** [2] 9/5 93/4
**behalf** [8] 8/6 8/10 8/13 31/8 48/17 87/21
**behavior** [2] 57/9 64/24
**behind** [2] 60/22 62/4
**being** [6] 7/21 42/5 42/7 72/9 74/19 109/11
**believe** [17] 6/21 27/15 31/4 33/19 36/11 37/2 44/8 52/6 56/5 70/5 70/6 75/9 82/17 84/24 86/3 96/2 110/8
**believes** [2] 34/18 70/5
**bench** [2] 102/4 106/16
**benefit** [4] 13/5 34/17

**benefited** [2] 53/25 53/25
**best** [4] 53/24 66/11 100/20 108/7
**bet** [2] 70/25 100/22
**better** [4] 14/3 96/6 101/19 101/21
**between** [8] 29/1 29/5 30/6 41/20 49/11 73/16 85/22 89/10
**beyond** [1] 84/18
**big** [1] 82/12
**bilateral** [1] 74/21
**billion** [6] 40/25 41/16 65/12 65/14 65/15 102/5
**billions** [1] 49/2
**bit** [3] 41/8 56/11 103/8
**block** [1] 47/3
**body** [1] 17/23
**bones** [1] 96/13
**borne** [1] 91/23
**Boston** [1] 3/8
**both** [13] 23/14 25/14 30/24 34/20 41/10 48/24 48/25 49/16 54/1 61/11 69/16 100/24 103/1
**bottom** [1] 97/15
**bound** [2] 33/17 70/14
**box** [1] 61/14
**boxes** [1] 63/8
**Boylston** [1] 3/8
**breadth** [3] 52/15 56/23 84/19
**break** [2] 76/15 102/15
**bribery** [1] 102/11
**bridge** [1] 79/23
**brief** [5] 69/7 69/7 71/5 71/5 72/13
**briefing** [8] 7/16 25/13 29/10 70/9 70/23 71/4 94/9 94/9
**briefly** [7] 36/8 46/12 69/10 72/3 72/4 72/12 93/24
**bring** [6] 14/10 51/12 51/13 53/12 108/16 110/8
**bringing** [1] 108/11
**brings** [2] 7/17 73/19
**broad** [7] 18/20 18/21 42/19 56/22 62/1 67/22 105/11
**broad-based** [1] 105/11
**Broadway** [1] 2/16
**browser** [8] 45/25 46/1 46/2 46/5 46/8 46/22 47/19 61/7
**browsers** [2] 38/25 47/4
**browsing** [2] 47/9 47/10
**Bruce** [1] 2/13
**built** [3] 53/20 85/11 102/2

**burden** [12] 9/23 10/14 10/25 14/19 18/5 18/10 22/19 28/5 29/5 76/12 84/19 86/5
**burdens** [1] 10/25
**burdensome** [4] 11/11 20/15 83/20 86/11
**business** [16] 11/23 19/24 25/22 27/20 29/12 29/15 29/15 63/17 63/22 75/20 80/20 81/14 81/21 82/7 86/1 105/3

**C**

**CA** [3] 3/18 4/10 4/15
**cabin** [1] 51/10
**calculus** [1] 26/10
**calendar** [7] 87/16 103/9 104/6 104/10 104/18 104/21 109/14
**California** [7] 98/23 108/10 108/20 109/10 109/19 110/2 110/21
**call** [9] 14/9 26/2 31/2 32/2 32/3 50/25 53/8 57/22 71/8
**called** [2] 30/4 75/7
**calling** [1] 6/6
**came** [5] 12/21 37/8 40/23 42/7 102/25
**can** [94] 6/16 6/20 7/2 7/13 9/1 11/12 13/18 14/10 15/8 18/2 18/14 21/13 21/23 22/9 23/7 23/8 24/3 28/6 28/17 29/23 30/6 30/9 34/10 35/15 35/21 35/22 40/2 40/4 40/22 41/24 41/24 41/25 43/4 46/12 47/7 47/14 47/14 48/1 53/14 54/19 55/20 55/20 55/21 55/22 55/23 56/8 56/11 57/22 57/25 59/12 60/1 61/6 62/13 63/22 66/23 70/7 71/1 71/4 71/5 72/5 77/25 78/9 80/5 80/9 83/4 83/15 87/3 87/13 89/21 92/4 92/23 96/2 96/10 96/14 97/20 97/21 98/16 99/17 100/8 101/2 101/13 102/12 102/18 102/20 103/22 104/21 106/17 106/25 110/2 110/2 110/3 110/7 110/18 111/15
**can't** [18] 10/12 41/13 42/20 42/20 43/19 45/5 62/10 63/14 91/19 92/24 101/7 102/16 103/8 103/11 103/12 105/7 109/16 111/20
**candid** [1] 18/5
**candidly** [2] 84/19 109/16
**cannot** [4] 70/24 102/5

**capacity** [3] 11/23 12/3 53/20
**care** [4] 22/13 24/14 30/16 55/3
**Carr** [1] 2/15
**case** [60] 7/15 9/13 11/1 15/15 19/12 19/17 19/20 20/4 20/21 31/3 32/19 33/10 33/12 33/24 37/7 37/15 46/15 48/5 52/11 52/20 62/24 64/20 66/6 66/21 66/23 67/4 67/12 67/14 67/19 67/19 68/6 68/11 68/14 70/11 70/18 72/11 72/12 72/16 73/6 73/6 75/6 75/18 75/21 75/23 76/21 77/15 89/18 89/20 91/19 95/20 95/22 96/19 98/14 102/4 102/11 104/12 108/16 108/18 110/5 110/6 110/10
**cases** [12] 67/6 67/13 69/16 70/8 72/14 72/18 72/23 73/3 73/6 75/1 75/23 76/25
**cause** [1] 54/15
**caused** [1] 47/12
**caveat** [1] 102/21
**cent** [1] 40/25
**Center** [1] 2/15
**Centre** [1] 3/12
**CEO** [11] 25/16 27/2 27/5 28/2 28/12 28/15 28/19 28/25 29/1 30/1 30/4
**CEO's** [1] 27/10
**certain** [5] 35/2 52/3 78/23 82/5 90/2
**certainly** [21] 10/12 13/12 13/21 18/20 22/18 22/23 26/24 33/12 34/25 35/4 35/18 35/21 36/1 40/6 41/1 41/16 71/8 105/23 106/6 110/20 111/19
**certainty** [1] 76/20
**Certified** [1] 5/3
**certify** [1] 113/2
**cetera** [1] 79/21
**CH** [1] 5/4
**chair** [5] 88/4 96/10 99/13 99/18 99/20
**chance** [1] 61/5
**change** [8] 18/7 27/1 27/1 39/2 46/5 70/24 94/6 107/10
**changed** [4] 21/6 66/18 66/19 72/16
**changes** [1] 94/7
**Chapman** [1] 3/11
**charge** [2] 29/15 53/10
**checks** [1] 63/8
**Chicago** [1] 2/5
**chief** [7] 22/23 29/1 29/15 29/16 29/18 31/3

**chime** [1] 53/14
**choice** [3] 28/25 70/21 70/23
**choose** [1] 55/20
**chose** [2] 70/16 72/19
**chosen** [1] 68/19
**Chris** [1] 24/20
**Christian** [1] 4/8
**Christopher** [1] 3/2
**Chrome** [1] 62/8
**Cira** [1] 3/12
**Circuit** [4] 72/24 72/24 73/7 75/16
**circumstance** [2] 43/3 72/15
**circumstances** [10] 43/4 54/10 71/16 71/22 72/16 72/25 75/3 75/22 80/10 83/18
**circumvention** [2] 42/4 42/23
**citations** [1] 99/2 99/4
**cite** [4] 66/23 67/13 67/14 72/23
**cited** [6] 67/6 69/16 70/8 73/3 73/6 75/1
**cites** [2] 72/14 75/23
**City** [1] 3/18
**Civil** [1] 6/7
**claim** [2] 32/2 72/16
**claims** [1] 90/16
**clarity** [1] 7/17
**clause** [1] 70/11
**clear** [21] 9/4 12/5 16/6 20/3 20/6 20/9 41/3 41/3 51/18 53/16 54/3 54/21 58/2 60/4 60/6 60/20 61/9 67/21 76/18 94/3 111/15
**clearly** [2] 66/1 66/22
**clerk** [1] 103/6
**client** [5] 11/21 27/21 48/22 52/6 105/25
**client's** [1] 27/16
**clock** [1] 98/5
**close** [1] 11/23 102/24
**closed** [1] 27/24
**closing** [2] 94/9 102/8
**clue** [1] 96/6
**CO** [1] 2/17
**coag.gov** [1] 2/18
**Coast** [1] 110/9
**Colette** [1] 3/3
**colleague** [4] 24/20 48/16 57/6 57/13
**colleagues** [1] 109/25
**collect** [1] 9/21
**collected** [1] 27/12
**collections** [1] 29/11
**colloquy** [1] 56/22
**color** [1] 49/11
**Colorado** [4] 2/13 2/13 2/15 93/24
**COLUMBIA** [1] 1/1
**come** [26] 8/4 11/16 17/19 22/16 26/23 28/12 31/25 33/4 48/11

117

**C**

**come... [17]** 53/17
57/18 57/21 60/7 62/14
62/18 63/13 71/21
72/15 73/20 77/15
87/24 88/24 94/20
101/25 105/5 111/1
**comes [6]** 11/20 28/4
36/16 45/9 55/22 74/10
**coming [8]** 18/19 31/22
35/9 37/17 38/14 65/4
72/21 86/21
**commercial [5]** 57/1
59/8 59/11 77/6 77/11
**committee [1]** 90/5
**communicating [1]**
28/20
**communications [1]**
11/3
**companies [5]** 27/21
36/22 75/8 75/9 89/10
**companies' [1]** 75/17
**company [5]** 25/21
85/12 85/13 110/21
**company's [1]** 29/13
**compared [1]** 66/20
**compelling [2]** 63/5
63/20
**compete [6]** 25/19
39/25 46/3 47/14 47/14
77/7
**competition [4]** 40/13
40/18 43/4 47/16
**competitive [3]** 29/3
54/25 91/22
**competitors [6]** 40/19
67/8 71/18 91/25 92/1
92/2
**complaint [1]** 33/5
69/21 69/22
**complete [5]** 9/7 57/12
57/16 58/19 65/3
**completely [6]** 58/13
75/24 85/15 97/2 97/6
97/6
**complexities [1]** 14/11
**complexity [1]** 11/17
**complicated [3]** 41/8
87/2 100/15
**comply [2]** 37/9 37/10
**components [2]** 47/11
47/12
**compromise [1]** 27/14
**computer [1]** 5/7
**computer-aided [1]**
5/7
**computers [1]** 47/7
**conceivable [2]** 56/25
68/5
**conceivably [1]** 77/11
**concern [7]** 19/9 35/7
42/24 71/12 80/8 90/24
93/13
**concerned [6]** 26/20
31/24 34/12 34/13 53/1
105/24
**concerning [1]** 71/23
**concerns [4]** 19/7

**conclude [1]** 102/3
**concluded [2]** 49/14
112/7
**conclusions [1]** 54/12
**concrete [1]** 74/19
**conditions [1]** 41/25
82/11 82/15 84/16
88/15
**conduct [2]** 14/15
15/20
**confer [4]** 24/25 95/4
100/22 100/24
**conference [2]** 1/9
101/7
**conferences [1]** 7/16
**conferred [1]** 8/23
**confident [3]** 48/3
105/20 106/25
**confidentiality [2]** 78/8
78/16
**confine [1]** 101/5
**confines [1]** 83/7
**confirm [2]** 6/22 84/24
**conflict [1]** 8/3
**conjectural [2]** 37/25
38/16
**conjunction [1]** 50/10
**CONNOLLY [1]** 3/10
**Connor [3]** 3/3 83/25
84/24
**consequences [1]**
110/22
**consider [5]** 18/2
26/14 35/12 45/9 51/9
**considered [1]** 16/3
**considering [1]** 94/7
**considers [1]** 84/3
**consistent [1]** 74/16
**Constitution [1]** 5/4
**constitutional [1]** 73/8
**construct [1]** 87/1
**Consumer [1]** 2/14
**contacted [2]** 34/4
34/8
**contain [3]** 15/19 19/15
85/2
**contained [1]** 28/22
**contemplating [2]** 91/2
92/17
**contestable [1]** 46/20
**contested [1]** 97/14
**context [4]** 10/18 43/16
73/7 90/10
**continue [6]** 23/13
25/8 38/23 46/3 48/6
103/2
**continued [5]** 3/1 4/1
5/1 24/25 75/17
**contours [1]** 99/9
**contract [26]** 35/1
35/22 36/16 38/15
38/17 38/19 39/23
40/20 40/22 41/20
41/24 63/16 70/2 73/12
73/20 74/20 74/21 75/2
75/12 75/14 76/3 77/2
89/4 89/10 89/20 89/23

**concluding [4]** 9/14
36/19 60/15 73/16
**contracts [9]** 36/17
36/22 37/22 38/24
56/24 56/25 62/20
75/12 77/3
**contractual [7]** 56/25
57/15 58/25 59/10 64/3
66/4 67/21
**contractually [1]** 70/14
**contractural [1]** 56/23
**control [2]** 47/19
109/14
**convenient [1]** 108/17
**conversation [3]** 22/8
22/10 101/20
**conversations [1]**
26/22
**convey [1]** 105/21
**convince [1]** 29/25
**cooperate [2]** 70/12
70/13
**copies [1]** 19/7
**copy [1]** 70/10
**core [4]** 21/19 25/22
74/2 93/14
**Corp [21]** 4/2 8/1 8/4
8/11 8/17 9/1 9/10 10/1
12/10 12/22 13/23 14/1
14/14 15/10 18/8 19/4
19/20 20/7 21/24 22/8
24/14
**Corp's [3]** 8/18 10/23
19/25
**Corporation [1]** 3/11
**Corps [2]** 19/23 22/20
**corpus [1]** 15/11
**correct [16]** 6/18 6/25
16/9 16/12 17/13 27/6
27/7 30/16 31/15 39/11
44/19 67/2 85/5 85/8
112/3 113/3
**corrected [2]** 78/19
78/23
**correction [1]** 9/9
**correctly [1]** 33/19
**corresponded [1]**
27/16
**Costle [1]** 76/24
**could [48]** 13/3 21/25
24/2 27/19 33/20 33/21
35/14 35/18 35/18 43/6
45/8 45/12 45/12 46/5
46/9 46/14 46/20 46/22
50/2 51/20 54/15 57/17
57/23 57/24 63/4 64/8
64/10 66/5 68/5 68/7
68/11 68/12 75/5 83/11
83/15 85/16 86/3 88/19
90/10 90/20 92/19
93/21 94/14 95/8 98/9
102/19 103/17 103/21
**couldn't [1]** 90/21
**counsel [22]** 6/22 8/4
10/2 10/23 11/16 11/21
19/25 22/9 22/23 26/13
30/21 32/15 48/9 69/8
69/13 70/20 71/2 71/14

**concluding [4]** 9/14
108/17
**count [3]** 26/21 27/10
28/4
**counterparties [1]**
35/2
**counterparty [1]** 67/4
**counterproposal [3]**
20/16 26/14 26/17
**country [1]** 110/23
**couple [10]** 10/13
27/19 28/5 46/1 52/5
69/8 71/1 76/14 79/7
109/11
**course [12]** 19/11 30/4
39/12 54/2 54/12 58/9
59/5 61/22 78/20 81/14
83/5 90/7
**court [36]** 1/1 5/2 5/3
6/2 14/2 33/17 33/20
39/17 45/8 50/12 52/7
54/11 54/15 57/16
58/20 64/21 65/1 65/10
65/12 65/24 68/18
70/20 75/1 76/15
77/16 78/18 78/24 79/8
79/11 82/18 86/2 86/3
89/18 90/2 107/9 112/5
**Court's [11]** 33/17 45/6
48/22 49/8 52/19 57/7
64/22 65/18 73/1 74/16
77/14
**courtroom [1]** 70/17
**cover [4]** 6/15 29/20
42/19 111/15
**covered [1]** 11/21
**COVID [1]** 110/4
**create [2]** 11/17 77/9
**created [5]** 13/18 42/14
43/6 54/25 61/23
**creates [1]** 39/24 42/13
77/6
**credibility [1]** 83/2
**credited [1]** 41/10
**criteria [2]** 72/6 85/2
**criticisms [1]** 95/17
**critiques [1]** 95/17
**cross [6]** 6/16 32/11
49/20 52/3 58/17 61/24
**cross-examination [2]**
52/3 61/24
**cross-examine [2]**
49/20 58/17
**crossing [1]** 43/11
**CRR [2]** 113/2 113/8
**Cue [15]** 31/11 31/14
32/4 41/9 44/19 45/14
51/15 51/16 53/7 53/16
54/1 54/6 54/19 55/7
57/21
**Cue's [1]** 58/20
**curious [1]** 12/1
**current [8]** 15/12 17/25
26/15 55/15 55/15
73/14 74/15 104/7
**currently [2]** 35/19
102/18
**custodial [19]** 9/4 9/18

9/10 9/20 10/1 10/1 11/
11/9 13/10 13/15 14/15
18/3 19/16 19/19 20/1
20/5 20/11 23/18 26/20
50/9
**custodian [4]** 25/11
25/17 27/3 28/1
**custodians [13]** 8/16
9/24 14/22 21/14 25/14
26/3 26/19 27/5 28/17
28/18 29/5 29/6 29/14
**customers [1]** 53/25
**CV [1]** 1/4

**D**

**d'Halluin [10]** 10/22
11/6 11/13 12/7 12/9
12/11 12/23 19/16
19/23 21/2
**d'Halluin's [4]** 11/2
17/20 18/6 18/12
**D.C [10]** 1/5 2/10 3/4
4/5 4/19 5/5 108/12
108/16 109/18 109/22
**Dahlquist [11]** 2/2 6/9
13/3 13/17 21/1 31/8
39/20 43/8 72/7 100/17
110/14
**dare [1]** 60/16
**data [31]** 80/9 80/15
80/16 80/18 80/21 81/2
81/5 81/6 81/10 81/15
81/20 81/22 82/1 82/11
82/15 82/18 82/20 83/3
83/19 85/3 85/12 85/17
86/22 86/23 86/25 87/3
88/12 88/17 91/4 91/22
92/19
**datasets [1]** 81/25
**date [3]** 24/3 66/15
113/7
**dates [1]** 103/16
**David [3]** 2/2 6/9 31/8
**David Dahlquist [1]**
31/8
**david.dahlquist [1]** 2/6
**DAVIS [1]** 3/17
**davispolk.com [1]**
3/20
**day [10]** 33/11 45/9
45/9 68/15 86/24 87/14
102/19 103/23 106/6
106/18
**days [25]** 32/19 52/5
54/2 97/24 102/20
103/3 103/20 103/25
103/25 104/10 104/12
104/13 104/13 104/14
104/15 104/15 104/19
104/23 104/24 105/3
105/6 105/6 106/10
106/13 106/14
**deadlines [1]** 107/10
**deal [6]** 45/11 45/14
45/15 45/16 46/19
46/21 78/12 79/17
82/12 83/6
**dealing [2]** 14/22 80/25

**deals** [1] 81/14
**decade** [1] 91/24
**decades** [1] 57/18
**December** [1] 10/21
**DECHERT** [1] 3/12
**dechert.com** [1] 3/15
**decide** [1] 77/17
**decided** [1] 37/15
**decision** [11] 12/21
33/21 37/11 57/7 57/17
64/22 65/18 72/6 78/8
81/1 105/12
**decisions** [8] 57/7 67/7
67/9 68/19 79/21 86/6
86/7 86/8
**declaration** [1] 31/12
**declarations** [1] 57/24
**declined** [1] 95/5
**deduce** [1] 84/15
**default** [9] 38/3 45/10
46/3 46/4 47/7 47/17
55/21 59/2 61/10
**defaults** [5] 61/14
61/15 64/9 64/9 91/24
**defeat** [1] 76/23
**defend** [10] 37/12
37/17 48/1 48/3 48/6
61/11 66/21 70/13 73/1
73/13
**defendant** [6] 1/7 3/2
3/11 6/11 33/2 67/4
**defendant's** [1] 31/11
**defended** [2] 48/4
61/21
**defending** [4] 61/9
61/10 62/6 66/10
**defense** [4] 81/8 88/24
92/21 95/16
**defining** [2] 26/20
26/21
**definitely** [1] 52/13
**degree** [1] 65/22
**delay** [2] 32/17 32/24
**demand** [1] 81/5
**demonstrated** [1] 9/19
**denied** [1] 87/7
**Denver** [1] 2/17
**deny** [5] 59/7 65/5
65/25 67/25 72/4
**DEPARTMENT** [5] 2/3
2/8 2/13 10/22 98/24
**department's** [1] 13/1
**depend** [3] 57/8 59/21
64/23
**depending** [1] 98/18
**depose** [4] 35/20
107/18 108/9 110/3
**deposed** [4] 107/20
109/3 109/11 110/18
**deposition** [18] 45/21
88/4 93/16 94/13 95/6
95/21 95/25 96/12
98/13 98/22 98/25 99/5
99/6 107/22 108/1
108/4 108/13 110/23
**depositions** [14] 32/12
43/15 50/24 51/5 51/7

108/25 109/8 109/21
110/4 111/8 111/16
**Deputy** [3] 10/2 10/23
22/22
**derivation** [2] 42/7
45/6
**described** [2] 16/15
16/18
**describing** [1] 84/2
**description** [1] 18/22
**designated** [1] 19/16
**destroyed** [1] 66/7
**detail** [1] 93/7
**detailed** [2] 83/24
84/21
**details** [1] 93/5
**determination** [1]
82/15
**determine** [1] 60/1
**determined** [2] 68/20
76/4
**determines** [1] 80/22
**Deutsche** [1] 69/19
69/19
**devastating** [2] 68/22
68/22
**device** [1] 69/24
**Diamond** [1] 76/21
**did** [13] 15/22 15/23
19/25 26/6 48/23 51/11
53/1 53/4 54/16 55/1
78/20 106/24 110/4
**didn't** [8] 12/9 45/15
47/2 47/2 57/4 70/24
90/20 94/21
**differ** [1] 59/14
**difference** [3] 82/3
82/14 85/22
**different** [22] 30/5 33/3
33/24 47/7 47/18 49/22
54/9 54/9 55/12 64/14
71/15 71/16 71/21
71/22 71/22 72/6 75/3
75/4 76/3 84/7 97/2
110/25
**differently** [3] 28/14
34/18 65/24
**difficult** [3] 37/7 82/9
109/15
**diligence** [1] 29/24
**diminishing** [1] 105/9
**direct** [4] 43/10 43/12
51/21 66/9
**directed** [1] 30/24
**direction** [2] 25/20
26/25
**directly** [2] 15/18 83/1
**disagree** [3] 39/16
64/18 99/10
**disagreed** [1] 47/11
**disagreement** [2] 27/2
49/24
**disclosed** [1] 11/7
**discovery** [14] 30/16
49/14 49/16 50/6 50/14
50/16 50/21 50/23 51/2
51/4 91/11 94/4 94/8

**discuss** [5] 12/22 14/4
17/19 21/24 107/4
**discussed** [6] 9/16
12/25 17/4 32/23 68/8
75/6
**discussion** [5] 18/3
19/22 79/22 86/25
87/17
**discussions** [1] 8/3
**disincentive** [3] 39/25
42/13 77/7
**disincentivize** [1]
45/16
**dispositive** [1] 54/17
**dispute** [5] 25/13 26/18
28/25 30/9 108/3
**disputes** [4] 6/17 6/20
9/3 67/7
**disputing** [1] 29/4
**disrupt** [1] 49/8
**dissimilar** [1] 34/24
**distinguishable** [1]
75/25
**distinguished** [1] 68/7
**distinguishes** [1] 65/7
**distinguishing** [1] 65/8
**distributions** [1] 29/12
**distributors** [1] 67/9
**DISTRICT** [3] 1/1 1/1
1/10
**diverge** [5] 58/4 59/1
61/1 61/3 61/6
**divergence** [5] 56/6
56/7 61/9 66/16 69/14
**diverges** [1] 56/12
**divestiture** [1] 62/7
**divide** [1] 79/23
**divine** [1] 46/14
**Division** [1] 2/3
**Dmitry** [1] 26/3
**do** [71] 8/2 10/9 10/15
11/25 19/15 21/3 28/11
28/19 29/19 32/11
32/12 32/13 33/21
35/15 36/1 36/1 44/16
45/24 47/24 47/25 49/7
49/18 51/21 53/9 55/22
56/5 57/25 60/22 60/23
61/1 61/16 65/4 65/5
67/25 69/4 70/14 72/19
73/7 74/2 74/8 75/8
75/21 75/25 76/8 80/19
81/22 81/24 86/20
88/16 88/18 88/25
90/15 90/22 96/5 96/6
96/20 97/9 99/5 100/7
100/24 101/16 102/23
103/11 105/7 106/12
106/15 106/25 108/21
110/8 110/14 111/13
**do you** [1] 81/22
**Do you have** [1] 10/15
**do-over** [1] 36/1
**document** [5] 18/11
18/11 18/23 43/16
95/14
**documents** [43] 9/11

11/5 15/6 15/9 15/11
15/14 15/18 15/19 16/18
16/18 16/20 16/25 17/5
17/8 17/15 17/17 17/17
17/23 18/2 18/6 18/8
18/12 18/15 19/3 19/5
19/10 19/11 21/12
21/13 21/17 45/13 50/8
79/19 79/20 80/7 84/2
86/6 86/13 109/6
**does** [32] 8/25 10/14
11/17 12/11 16/1 24/6
28/1 28/11 36/12 37/2
37/3 37/6 38/2 41/19
43/10 45/10 45/15 53/5
60/23 62/21 62/24 70/6
73/4 76/23 80/12 82/7
83/1 83/20 84/6 93/9
105/16 105/18
**doesn't** [16] 12/14
12/14 13/12 27/1 34/22
38/15 41/14 53/20
61/20 63/9 64/1 77/9
78/7 85/25 91/5 101/10
**dog** [1] 54/21
**doing** [7] 43/11 68/3
84/9 104/20 105/23
106/14 111/14
**DOJ** [9] 2/2 11/7 12/22
19/6 50/7 110/20 111/8
111/12 111/22
**dollar** [1] 102/5
**dollars** [4] 41/1 63/10
63/15 69/23
**domain** [1] 102/5
**domains** [3] 36/18
37/22 73/23
**don't** [75] 7/25 9/19
12/12 21/4 22/21 22/22
27/16 31/6 32/3 32/4
32/5 37/25 43/9 43/12
43/14 43/18 44/20
44/23 48/11 55/3 58/10
58/15 59/16 61/2 61/2
61/17 61/25 63/22 65/9
65/12 67/11 67/19 68/2
68/12 71/15 71/19
73/24 77/11 79/18 80/6
81/17 82/2 82/8 82/13
84/10 86/23 87/4 88/4
89/20 90/6 90/19 91/10
91/16 91/20 92/2 92/3
92/6 92/10 97/12 97/12
97/13 98/8 98/11 99/10
101/8 101/10 102/1
102/13 103/19 104/20
106/3 106/7 108/18
110/1 111/19
**done** [19] 9/23 11/22
13/16 14/18 17/16 18/7
19/14 23/21 27/9 30/6
67/10 83/15 84/11
91/11 92/11 99/16
103/14 103/14 111/20
**door** [2] 37/17 62/16
**double** [1] 68/2
**down** [12] 12/21 20/20

72/17 74/10 75/9 78/18
101/19 102/2
**drag** [1] 109/22
**dragging** [1] 110/22
**draw** [1] 97/19
**drawing** [1] 42/15
**drawn** [1] 73/15
**drops** [1] 25/6
**due** [2] 29/24 96/19
**duplicates** [1] 25/5
**duplicative** [1] 111/8
**during** [12] 14/2 19/12
31/12 43/4 53/19 71/2
84/5 104/11 110/4
110/4 110/5 111/10
**dust** [1] 61/18

**E**

**each** [2] 66/1 69/23
**earlier** [5] 27/14 37/15
43/2 72/8 74/23
**early** [2] 104/13 105/1
**earn** [1] 74/8
**ears** [1] 14/3
**earth** [1] 97/1
**easier** [1] 7/12
**Eastern** [2] 27/22 28/7
**easy** [2] 25/18 78/15
**economic** [7] 39/24
42/13 45/19 51/10 59/8
64/24 77/6
**economically** [1] 74/24
**economics** [1] 38/11
**ecosystem** [1] 40/12
**edges** [1] 55/17
**Edward** [1] 7/7
**effect** [2] 36/12 75/13
**effective** [2] 98/13
105/23
**effects** [1] 110/22
**efficient** [1] 27/19
**effort** [1] 107/21
**efforts** [1] 79/23
**eight** [1] 106/24
**either** [5] 60/10 69/4
70/15 84/2 99/23
**element** [1] 31/22
**elements** [1] 71/1
**Eleventh** [1] 4/18
**elicit** [1] 94/17
**else** [15] 12/2 13/20
28/14 33/15 34/19
45/12 45/12 63/9 64/14
65/23 71/19 76/23
107/3 109/16 111/21
**else's** [1] 63/12
**elsewhere** [1] 53/22
**emaier** [1] 4/6
**email** [14] 2/6 2/11
2/18 3/5 3/9 3/14 3/19
4/6 4/11 4/16 4/20
11/20 15/7 27/12
**emails** [2] 20/10 20/10
**embedded** [1] 71/19
**eminent** [1] 102/5
**employee** [1] 10/2
**employees** [2] 10/2

**E**

**employees...** [1] 35/19
**employment** [1] 73/7
**end** [9] 35/25 51/6
68/15 74/7 86/24 87/13
89/9 96/20 102/17
**ended** [3] 11/12 12/1
12/25
**ending** [1] 104/13
**ending-early** [1]
104/13
**enforcement** [3] 66/25
67/1 67/3
**engage** [1] 42/16
**engine** [4] 38/6 45/11
53/23 53/24
**engineers** [6] 80/16
80/19 81/15 81/19
86/21 87/3
**engines** [3] 39/6 46/9
55/23
**enough** [4] 11/18
99/16 103/13 106/11
**ensure** [6] 57/12 65/2
77/16 82/11 88/16
92/19
**ensuring** [2] 57/16
66/11
**entail** [1] 62/10
**enter** [9] 38/16 45/16
46/20 53/20 54/15
57/10 60/25 74/25 77/7
**entering** [3] 39/23
64/25 64/25
**entire** [2] 52/15 85/11
104/12
**entirely** [2] 89/1 97/1
**entitled** [1] 20/5
**entry** [1] 43/5
**envisioning** [1] 45/1
**Eric** [2] 4/2 8/10
**ESI** [9] 19/16 19/19
20/1 20/5 20/11 21/6
22/14 23/19 29/11
**especially** [5] 11/9
56/6 58/3 99/18 103/19
**essentially** [6] 40/22
41/5 46/18 64/11 80/9
80/11
**establish** [1] 76/12
**establishes** [1] 76/25
**estimation** [2] 18/16
110/23
**et** [3] 1/3 6/8 79/21
**et al** [1] 6/8
**et cetera** [1] 79/21
**evaluate** [1] 65/24
**evaluated** [1] 63/3
**evaluates** [1] 80/22
**evaluating** [2] 54/11
84/3
**even** [22] 32/20 33/21
37/25 40/23 46/18 53/9
57/4 58/25 63/13 67/19
69/19 70/8 70/18 84/10
86/9 90/10 93/4 100/22
104/20 107/13 107/20
110/5

**ever** [4] 19/11 22/18
45/9 85/17
**every** [9] 11/20 30/18
40/25 46/20 55/22 63/2
86/8 94/16 106/18
**everybody** [8] 23/24
64/5 64/6 77/22 79/3
79/6 109/5 110/10
**everyday** [1] 80/16
**everyone** [4] 6/5 6/12
6/13 79/14
**everything** [4] 66/18
66/19 90/15 109/16
**evidence** [10] 33/14
54/4 57/23 59/21 61/23
89/21 90/17 90/18
102/24 103/4
**exact** [2] 41/14 56/2
**exactly** [9] 12/15 36/11
44/20 55/18 59/17
64/12 64/12 101/15
103/17
**examination** [2] 52/3
61/24
**examine** [3] 49/20 54/7
58/17
**example** [11] 39/5 47/8
67/9 78/25 80/19 83/17
88/10 89/3 90/23 91/1
111/9
**examples** [3] 86/21
90/12 93/12
**exceeded** [1] 107/21
**except** [2] 64/15
109/10
**exchange** [3] 41/25
89/8 89/9
**exchanged** [4] 41/21
42/5 42/7 107/12
**exclude** [1] 65/13
**exclusive** [5] 39/3 46/8
46/17 46/18 47/18
**exclusivity** [1] 47/6
47/13 55/13
**excuse** [1] 42/17
**executed** [2] 90/4 93/8
**executives** [1] 10/3
**exercise** [1] 42/15
**exist** [1] 54/17
**existence** [2] 75/3
75/17
**existing** [7] 37/12
37/17 56/24 57/15 73/1
75/11 77/2
**expand** [1] 103/20
**expanding** [2] 104/9
104/18
**expect** [5] 9/6 9/15
45/7 81/24 106/17
**expedition** [1] 50/14
**experience** [1] 66/12
**expert** [19] 32/5 49/16
50/25 51/9 51/11 51/12
51/24 52/1 57/24 58/18
92/12 92/14 92/17
92/21 94/4 96/8 96/14

**expert discovery** [1]
49/16
**experts** [2] 94/8 96/25
**explain** [2] 19/4 95/17
**explained** [1] 45/14
**explanation** [1] 32/9
**export** [1] 92/12
**extending** [1] 57/1
**extensive** [1] 99/3
**extent** [7] 46/14 59/5
59/20 61/19 68/11 73/9
87/5
**externally** [2] 82/25
85/17
**extraordinarily** [4]
11/11 56/22 62/1 67/22
**extraordinary** [1] 57/2
**extrinsic** [1] 89/21

**F**

**face** [3] 52/7 64/1 86/3
**faces** [1] 62/1
**facilitate** [1] 26/21
**fact** [19] 27/1 32/5 34/1
37/25 38/5 38/23 49/15
51/11 60/1 61/16 70/9 74/24
78/19 84/12 84/25
89/19 91/23 94/4 94/8
96/14
**factors** [1] 66/1
**facts** [7] 13/25 13/25
14/1 37/18 89/20 96/13
97/3
**factual** [4] 30/22 35/11
90/9 97/20
**fair** [5] 6/15 11/18
13/10 88/21 99/23
**Fairly** [1] 12/18
**fall** [1] 17/24
**fantastic** [1] 6/24
**far** [11] 8/25 9/2 9/18
18/16 19/12 25/25
40/18 41/25 85/16
101/1 105/24
**favorite** [1] 30/18
**feasibility** [1] 38/18
**feasible** [5] 58/18
84/20 88/22 88/25
95/18
**February** [3] 15/15
109/1 109/4
**Federal** [1] 67/7
**feel** [4] 8/19 9/19 9/25
15/10
**feels** [2] 94/1 94/10
**ferrying** [1] 109/17
**few** [7] 8/21 35/21
55/13 58/5 63/14 76/17
83/15
**Fifth** [1] 2/10
**FIGEL** [1] 4/3
**fight** [1] 54/22
**figure** [8] 21/11 22/6
22/19 27/20 55/23
78/23 79/2 91/18
**file** [1] 32/13 34/6
65/23 79/3

**filed** [2] 19/6 20/13
53/3 66/14 70/18
110/21
**filing** [2] 66/17 78/16
**filings** [1] 103/24
**fill** [1] 50/3
**final** [34] 34/2 34/20
35/4 39/21 40/1 42/17
45/19 49/22 49/25
52/12 52/16 52/24 53/4
56/19 57/3 59/13 59/18
60/3 62/2 64/18 66/5
66/6 66/17 68/17 81/4
88/7 89/23 91/16 94/5
94/6 95/25 96/24 97/4
107/19
**Finally** [1] 71/12
**Financial** [1] 2/9
**find** [3] 25/18 29/19
42/24
**finding** [5] 33/13 41/4
41/8 47/7 47/13
**findings** [4] 38/5 52/19
74/23 78/19
**fine** [2] 91/24 111/19
**finish** [2] 43/2 78/1
**firm** [1] 50/19
**first** [22] 18/1 19/3
20/16 31/1 31/9 31/24
32/21 37/9 48/18 50/6
56/15 58/9 58/22 63/2
68/4 69/22 76/18 79/19
80/25 94/23 96/18
97/11
**fishing** [1] 50/14
**five** [7] 35/9 46/6 55/14
55/16 96/18 104/14
105/3
**flagged** [2] 12/17 12/19
**flew** [1] 7/5
**flexibility** [1] 57/25
**Flood** [4] 4/8 27/15
29/23 30/14
**floodgates** [4] 34/3
35/7 35/13 62/22
**Floor** [1] 2/16
**flow** [1] 39/14
**focus** [4] 38/2 42/1
53/22 74/11
**focused** [2] 13/25 76/1
**focuses** [1] 38/2
**folks** [5] 22/4 22/21
28/20 49/20 62/18
**follow** [2] 98/14 98/18
**follow-up** [1] 98/18
**following** [10] 28/9
34/16 49/13 49/23 63/9
69/23 70/12 78/16
83/11 103/9
**follows** [1] 29/23
**foot** [1] 40/18
**foregoing** [1] 113/3
**foresee** [2] 42/20 90/1
**forest** [2] 75/7 75/10
**forgive** [1] 50/18
**form** [4] 73/14 74/15
76/3 108/15
**formed** [1] 93/3

**forth** [4] 66/1 83/19
86/23 109/17
**forthcoming** [1] 21/22
**forward** [20] 24/18
25/8 27/19 30/10 30/23
32/1 33/15 35/5 42/22
49/7 51/5 51/8 53/17
54/14 65/5 65/17 71/1
71/21 83/19 88/24
**fought** [1] 70/18
**found** [3] 11/7 55/1
91/21
**four** [8] 21/5 35/9 46/6
49/23 50/2 52/2 70/17
72/6
**frame** [4] 14/20 20/21
86/12
**framed** [1] 90/8
**Francisco** [3] 4/10
4/15 7/6
**frankly** [6] 10/9 20/21
83/20 86/20 90/3
109/23
**FREDERICK** [1] 4/3
**free** [1] 39/6
**frequently** [1] 88/14
**Friday** [3] 24/6 24/9
106/14
**friend** [1] 66/14
**front** [1] 33/20
**frozen** [1] 40/12
**fulfill** [1] 58/19
**full** [4] 58/2 89/9
100/20 106/13
**full-party** [1] 58/2
**Fund** [2] 76/20 76/24
**fundamental** [1] 27/2
**fundamentally** [1]
29/12
**further** [6] 8/2 14/7
32/9 58/14 70/8 79/22
**future** [15] 35/1 36/15
37/21 38/15 42/20
56/25 57/11 57/15
60/15 62/20 74/20 75/2
75/14 77/2 105/14

**G**

**gamble** [1] 70/24
**garnered** [1] 25/3
**Garre** [12] 4/17 48/16
49/2 52/21 53/14 56/4
56/9 57/19 59/24 69/2
76/11 77/21
**gave** [1] 95/25
**general** [12] 10/2 10/23
11/16 22/23 37/22 46/9
53/23 61/20 64/25
73/24 98/23 99/11
**generality** [1] 83/23
**genuinely** [2] 27/24
65/2
**get** [74] 6/13 13/13
15/5 18/19 21/11 23/8
23/15 24/5 24/16 25/10
28/10 28/23 29/25 30/6
30/9 30/10 32/1 32/12

get... **[56]** 32/18 38/19 40/9 40/10 43/23 44/3 44/4 55/4 55/20 61/14 63/10 63/14 63/22 71/10 77/24 80/6 81/16 81/22 82/13 83/13 84/11 87/3 88/12 88/21 89/21 89/24 90/6 94/2 94/10 94/12 94/21 97/16 98/4 98/17 99/13 100/4 100/4 100/4 101/1 101/7 101/15 102/22 103/13 103/14 103/22 103/25 104/3 104/20 105/11 105/12 105/17 105/19 105/22 109/5 109/13 110/1
**gets [5]** 9/15 11/8 54/22 55/2 92/6
**getting [2]** 20/22 93/14
**Giannandrea [2]** 41/10 54/1
**gigabytes [1]** 14/24
**give [16]** 14/21 28/5 38/23 47/19 71/5 76/11 76/14 76/15 77/22 90/12 90/13 101/11 102/1 102/13 104/21 106/1
**given [13]** 14/19 17/22 17/25 20/21 29/4 45/2 52/6 62/9 63/5 64/20 84/20 90/22 102/5
**gives [2]** 103/25 106/10
**giving [1]** 14/11
**glad [2]** 6/13 7/5
**glaring [1]** 93/7
**global [1]** 22/25
**go [26]** 9/15 9/18 10/12 11/8 13/13 22/5 30/19 36/3 42/4 48/19 50/13 53/9 63/16 63/21 71/1 78/9 83/13 83/19 87/19 91/13 96/2 96/3 103/21 106/21 110/1 111/1
**Go ahead [1]** 48/19
**go-get [1]** 13/13
**go-gets [2]** 9/15 11/8
**goal [1]** 43/3
**goals [1]** 95/8
**goes [6]** 31/19 31/21 31/22 36/1 39/12 42/22
**going [103]** 9/5 11/4 12/11 12/16 13/14 18/6 18/6 21/1 22/19 23/11 23/18 23/19 24/21 28/18 28/23 30/4 30/21 40/9 40/16 41/1 44/23 44/25 48/2 49/6 50/12 50/21 50/23 50/24 50/24 51/5 51/8 53/17 54/5 54/14 55/7 55/8 55/9 55/10 55/25 58/10 58/15 60/14 60/24 61/11 62/14 62/15 62/16 62/18 62/19

65/17 66/9 71/8 71/17 71/21 77/22 81/9 81/19 83/22 84/12 86/24 91/20 92/11 92/14 92/15 93/8 94/4 94/13 94/16 94/17 94/20 96/20 96/22 96/23 96/25 97/9 97/10 98/4 98/16 98/17 98/18 99/13 99/17 100/12 101/15 102/22 103/13 103/18 103/24 105/10 105/21 105/24 105/25 108/7 109/3 109/4 109/19 109/21 109/23 110/17 110/25
**going-forward [1]** 51/8
**gone [4]** 11/5 33/15 62/3 75/13
**good [10]** 6/4 6/12 6/23 8/5 8/9 30/17 48/13 48/14 52/9 72/22
**GOOGLE [163]**
**Google is [1]** 70/14
**Google LLC [1]** 6/8
**Google's [27]** 9/25 12/6 25/22 31/25 39/16 43/12 45/17 46/22 53/7 56/12 58/5 58/5 59/14 60/4 60/21 60/22 61/4 61/7 66/20 81/2 81/12 83/2 88/12 91/22 104/12 107/16 107/19
**got [11]** 6/15 16/6 38/14 58/5 63/24 84/21 91/7 91/15 98/5 102/2 103/8
**gotten [1]** 90/23
**government [5]** 34/25 46/15 56/22 58/11 67/8
**government's [1]** 60/21
**grant [1]** 50/22
**granted [1]** 84/15
**granularity [1]** 80/16
**grateful [1]** 53/7
**grave [1]** 42/24
**gravely [1]** 71/22
**GRAY [2]** 3/7 8/6
**great [4]** 24/13 79/4 86/1 110/19
**greatly [1]** 86/13
**green [1]** 45/17
**Greene [1]** 98/22
**Greg [1]** 48/16
**Gregory [1]** 4/17
**gregory.garre [1]** 4/20
**group [3]** 80/22 81/19 87/3
**GSC [1]** 77/7
**guarantee [1]** 53/8
**guardrails [1]** 92/23
**guess [13]** 8/24 10/17 13/17 14/13 21/21 29/22 39/7 45/8 46/1 84/10 84/13 87/25 103/15

**guys [1]** 94/20

## H

**had [28]** 15/13 16/3 26/14 33/10 33/23 41/5 41/9 41/10 42/10 47/4 49/25 56/21 61/4 61/5 70/1 72/17 75/8 75/12 87/17 91/23 99/5 100/18 103/1 103/5 103/16 104/12 104/13 111/12
**hadn't [1]** 75/13
**half [4]** 40/25 100/25 104/13 106/14
**half-days [1]** 106/14
**hallway [1]** 22/6
**hand [1]** 11/19
**handed [1]** 72/17
**handled [1]** 85/12
**hands [1]** 60/14
**hang [1]** 45/22
**HANSEN [4]** 4/3 8/10
**happen [6]** 21/9 61/17 92/4 92/24 94/16 96/11
**happened [1]** 97/13
**happens [1]** 34/5
**happy [9]** 13/23 14/4 14/7 20/20 34/15 36/3 49/5 86/11 104/22
**hard [5]** 22/4 22/11 47/23 63/8 68/10
**hardly [1]** 63/25
**harvesting [1]** 75/20
**has [75]** 8/20 9/10 9/19 9/24 10/9 11/7 11/10 14/1 14/20 15/12 15/13 15/17 15/20 17/5 17/18 20/3 21/20 22/15 25/24 26/1 26/19 29/2 34/25 35/5 36/16 36/23 36/24 41/11 41/15 44/20 49/14 50/12 52/7 53/20 53/25 56/5 57/16 62/3 62/5 62/6 63/5 63/25 64/19 66/9 66/10 66/24 67/5 68/19 70/11 70/11 70/16 72/7 74/18 75/21 77/17 80/8 80/15 83/18 85/1 85/11 85/14 87/7 89/15 92/7 95/5 95/8 95/14 97/5 108/9 109/14 110/19
**hashed [1]** 30/10
**have [209]**
**haven't [11]** 8/22 19/13 53/17 54/5 60/12 90/23 91/10 93/4 98/1 101/14 103/17
**having [7]** 11/24 39/14 72/9 73/7 95/1 99/25 110/8
**he [19]** 12/25 14/10 25/17 25/19 25/20 25/21 25/21 26/2 29/25 29/25 53/11 53/18 54/6

71/6 98/24
**he's [8]** 11/22 12/15 13/19 25/19 25/22 25/22 28/13 31/13
**hear [8]** 19/25 30/1 54/6 54/13 55/7 55/9 55/10 103/15
**heard [23]** 14/16 19/22 20/17 37/19 40/11 41/9 41/9 44/18 45/3 47/3 48/24 53/17 53/19 54/1 54/5 55/10 60/12 61/12 69/4 69/5 71/4 73/15 84/5
**hearing [8]** 12/8 14/2 58/4 59/21 87/11 103/1 108/6 112/2
**heaven [1]** 97/1
**help [6]** 7/21 13/19 18/14 50/3 62/13 80/5
**helpful [1]** 14/8
**here [46]** 7/9 16/6 19/15 28/10 29/11 29/14 30/2 31/25 35/7 35/22 38/4 39/19 41/3 45/1 48/16 49/2 53/12 56/7 58/1 58/4 64/2 70/20 71/4 71/9 72/25 73/13 73/14 75/22 77/2 77/13 77/23 80/25 84/18 92/15 93/13 96/9 96/23 98/5 98/21 102/13 106/25 108/16 110/3 110/18 110/21 111/1
**here's [6]** 69/12 87/25 88/10 91/1 92/10 97/9
**Hermann [1]** 80/2
**Herrmann [5]** 2/7 78/12 78/13 80/5 85/20
**hey [2]** 40/24 86/22
**Hi [2]** 7/5 8/7
**hiding [1]** 96/9
**high [1]** 63/10
**higher [1]** 90/13
**highly [1]** 88/3
**him [5]** 12/2 53/8 54/7 57/22 101/13
**himself [1]** 31/14
**his [9]** 18/9 25/20 27/12 27/16 27/21 53/10 69/13 99/4 99/6
**hit [6]** 14/17 20/15 20/17 26/21 27/10 28/4
**hit-count [1]** 26/21
**hits [2]** 25/3 26/24
**hitting [1]** 105/9
**Hodgson [1]** 67/14
**hold [1]** 99/21
**holiday [1]** 23/10
**honest [2]** 63/7 74/9
**honestly [2]** 65/11 70/6
**Honor [142]**
**Honor's [5]** 12/21 33/21 36/4 104/18 104/21
**HONORABLE [4]** 1/9

**hope [3]** 17/15 47/21 104/2
**hoped [1]** 16/3
**hopeful [2]** 101/2 106/6
**hopefully [5]** 6/16 24/4 44/24 106/6 107/11
**hopelessly [2]** 37/25 38/16
**hoping [1]** 18/10
**host [5]** 36/18 37/22 38/20 44/5 73/23
**hour [1]** 31/23
**hours [5]** 27/20 28/6 51/22 52/2 62/9
**house [3]** 11/16 11/20 22/9
**how [74]** 8/25 11/12 12/1 12/15 12/25 13/3 15/19 15/20 18/16 21/3 25/8 25/19 31/4 31/17 32/25 34/10 44/16 48/24 49/6 49/7 56/12 56/13 57/10 58/4 58/10 58/15 59/12 59/13 59/14 59/20 60/24 61/1 62/13 62/22 63/9 64/12 64/13 65/4 65/5 81/14 81/17 81/20 81/21 81/22 82/2 82/7 82/8 82/13 82/18 83/4 84/10 85/3 85/16 85/25 86/6 88/13 88/14 90/4 90/6 90/19 92/6 93/7 95/16 95/16 96/5 96/5 96/7 98/10 98/11 100/7 101/1 102/20 102/21 103/16
**how far [1]** 8/25
**however [3]** 54/7 108/8 108/14
**HTML [1]** 99/5
**huh [1]** 11/14
**hundred [1]** 15/9
**hundreds [7]** 15/18 16/18 16/19 16/19 16/22 16/24 17/2
**hypotheticals [1]** 38/20

## I

**I am [1]** 100/5
**I appreciate [1]** 7/12
**I assume [3]** 11/22 49/23 85/1
**I believe [5]** 6/21 27/15 70/5 70/6 96/2
**I can [6]** 56/11 57/25 62/13 96/10 96/14 103/22
**I can't [4]** 102/16 103/8 103/11 103/12
**I couldn't [1]** 90/21
**I did [1]** 19/25
**I don't [27]** 12/12 22/21 44/20 44/23 55/3 59/16 61/2 65/9 65/15 67/11

**I don't... [17]** 67/19 68/12 71/19 80/6 82/8 82/13 84/10 88/4 92/2 92/6 97/12 97/12 97/13 99/10 101/10 103/19 104/20

**I don't have [2]** 68/2 102/13

**I found [1]** 55/1

**I guess [8]** 8/24 10/17 13/17 14/13 29/22 39/7 45/8 46/1 103/15

**I had [1]** 103/5

**I have [25]** 19/7 20/20 23/17 23/20 25/7 32/14 38/22 43/21 45/24 50/4 54/21 57/25 78/25 87/25 88/1 88/1 88/2 91/21 97/14 97/17 99/12 102/4 102/10 106/15 106/16

**I haven't [1]** 93/4

**I hope [2]** 47/21 104/2

**I just [4]** 16/17 17/4 86/23 93/21

**I know [9]** 9/1 18/21 19/12 29/9 32/18 49/19 99/1 100/16 105/10

**I mean [54]** 10/5 10/9 13/3 14/9 14/14 16/6 18/18 21/1 22/2 23/16 24/5 33/7 49/19 56/15 57/2 57/19 57/25 58/8 58/9 58/11 58/21 59/1 59/17 59/19 61/16 63/2 63/19 65/11 67/6 67/17 74/9 76/18 77/1 77/9 80/7 81/18 82/12 83/9 83/10 85/1 86/24 90/2 91/7 91/16 92/17 92/25 93/4 93/20 99/4 99/20 100/14 102/1 105/23 109/13

**I should [3]** 21/2 44/1 87/16

**I think [49]** 6/20 7/14 7/24 8/14 8/19 9/18 10/18 12/25 13/13 14/16 19/19 20/3 20/24 22/4 23/5 27/18 28/3 29/10 31/19 31/21 33/16 41/12 42/18 47/25 50/15 50/15 54/8 54/13 55/15 56/16 59/16 61/8 64/23 67/17 67/18 68/6 68/15 78/8 78/9 78/15 79/25 84/1 84/5 84/17 89/7 92/11 103/23 105/8 108/3

**I thought [1]** 54/24

**I understand [7]** 6/16 6/17 12/22 34/17 98/3 105/15 105/20

**I want [9]** 25/9 25/10 30/22 41/3 54/21 77/23 93/24 98/11 100/9

**I wanted [1]** 36/3

**I'd in PM** 18/23 23/12 23/16 28/9 35/12 52/24 69/7 71/12 104/11

**I would [15]** 27/18 29/1 29/22 42/11 56/4 64/17 65/1 65/19 68/4 69/6 72/11 89/15 100/22 101/5 103/10

**I'd [10]** 11/23 21/25 31/4 31/20 32/15 69/9 71/12 90/3 97/23 103/15

**I'll [10]** 6/22 7/3 26/2 30/1 34/2 34/16 63/7 76/14 101/11 106/1

**I'm [68]** 7/5 7/7 7/9 10/5 12/1 15/22 17/1 17/3 22/6 18/23 23/18 23/19 27/4 30/21 34/15 36/2 40/9 41/18 46/16 47/8 48/2 48/2 48/15 49/5 50/19 54/5 54/6 55/6 55/7 55/9 55/10 58/4 59/25 62/14 70/14 71/14 71/14 73/10 73/17 77/22 83/14 83/22 85/7 86/18 87/22 88/3 88/23 91/13 91/14 93/18 96/3 96/7 97/9 97/10 97/12 97/15 98/16 99/13 99/17 101/2 103/7 104/23 105/20 105/24 106/6 106/25 109/23 110/17

**I'm confident [1]** 106/25

**I'm going [11]** 23/18 30/21 55/7 55/10 62/14 83/22 97/9 97/10 98/16 99/13 109/23

**I'm just [2]** 12/1 99/17

**I'm not [15]** 10/5 22/6 23/19 50/19 54/5 55/9 58/4 77/22 83/14 88/3 88/23 97/12 97/15 105/24 110/17

**I'm sorry [5]** 15/22 73/10 85/7 87/22 91/14

**I'm sure [4]** 40/9 46/16 54/6 70/14

**I've [12]** 11/19 13/9 37/20 67/18 87/5 99/2 99/2 102/6 102/10 102/11 103/8 105/12

**idea [6]** 39/9 88/4 96/2 96/22 97/15 99/12

**identified [8]** 11/18 25/24 27/5 69/18 70/22 95/9 97/5 107/13

**identify [4]** 22/8 33/21 61/6 88/19

**ignore [1]** 70/21

**IL [1]** 2/5

**imagine [3]** 15/8 38/17 68/10

**imagining [1]** 95/1

**immediately [1]** 53/3

**impacted [3]** 15/20 31/5 31/17

**impacts [1]** 62/20

**impair [1]** 69/20

**impaired [1]** 66/5

**impairment [1]** 72/10

**impasse [1]** 79/25

**implicate [1]** 28/1

**implicated [2]** 44/8 52/4

**implicates [1]** 29/2

**implications [2]** 89/25 90/1

**important [6]** 10/18 44/7 48/21 58/23 74/13 82/10

**impossible [3]** 81/10 83/3 89/2

**improve [1]** 60/17 81/11 84/10

**inadequacy [1]** 69/17

**Inc [3]** 3/16 4/8 4/13

**incentive [1]** 41/2

**incentives [1]** 57/10

**inclined [1]** 88/3

**include [2]** 26/11 53/4

**including [10]** 33/2 37/22 43/6 51/24 51/25 56/24 62/7 69/24 73/23 103/25

**inclusion [1]** 66/18

**inconceivable [1]** 63/4

**inconvenience [1]** 65/23

**incredibly [1]** 18/21

**indicated [1]** 75/19

**individual [2]** 107/22 108/11

**individually [1]** 88/19

**indulgence [1]** 107/6

**industry [1]** 38/7

**inferences [1]** 90/18

**inform [1]** 107/9

**information [16]** 14/5 18/17 20/23 21/19 21/21 28/11 28/12 28/17 28/22 29/25 30/2 50/12 52/8 52/22 71/6 97/20

**infrastructure [1]** 85/11

**infringe [2]** 90/14 90/20

**initial [6]** 9/23 14/18 94/3 94/5 96/17 96/17

**initially [1]** 15/4

**insignificant [1]** 57/8

**instance [2]** 15/16 67/14

**instead [1]** 81/25

**instructed [1]** 78/18

**instruction [1]** 23/7

**instructive [2]** 82/18 86/3

**insufficient [1]** 94/2

**intellectual [1]** 10/11

**intending [1]** 78/25 104/2

**intends [3]** 25/19 43/9 43/18

**intent [1]** 20/11

**intention [2]** 41/20 49/21

**interest [45]** 20/22 30/2 34/22 34/23 36/9 36/13 36/16 36/25 37/3 37/7 37/14 37/21 37/24 38/15 39/14 47/24 47/25 49/4 53/22 56/2 56/15 58/24 59/2 59/4 59/10 62/6 64/24 65/6 66/3 66/10 66/16 66/20 69/20 72/9 72/10 73/4 73/22 74/18 75/11 75/14 75/19 76/1 76/22 77/10 86/1

**interested [6]** 20/9 29/20 52/13 52/15 52/18 65/2

**interests [35]** 39/18 51/7 51/10 52/4 52/17 56/5 56/6 56/12 56/13 56/23 56/25 57/14 57/15 58/4 58/22 59/1 59/6 60/2 60/10 60/15 60/20 61/9 61/21 62/10 62/20 63/11 65/16 66/21 67/21 68/21 77/1 77/14 77/16 81/3 82/21 88/23

**internal [3]** 27/9 80/8 82/23

**internally [1]** 85/13

**international [1]** 108/11

**interpreting [1]** 89/23

**interrogatories [12]** 95/5 97/11 97/18 98/10 98/17 98/19 99/15 100/6 100/19 101/1 101/6 101/12

**interrupt [2]** 49/7 104/23

**intervene [12]** 31/6 31/13 32/20 44/16 50/15 57/5 66/24 67/5 67/15 68/20 72/5 78/17

**intervening [4]** 33/10 50/11 57/14 67/21

**intervenor [4]** 44/9 68/5 68/12 73/3

**intervenors [4]** 35/9 35/10 68/1 75/20

**intervention [20]** 30/17 33/4 36/19 36/25 37/16 50/22 56/8 59/7 65/8 65/20 65/25 66/13 68/9 68/9 69/9 69/11 72/18 72/20 76/13 77/10

**inures [1]** 39/7

**invalid [1]** 73/5

**invalidated [1]** 74/15

**investigate [1]** 90/16

**investigative [2]** 19/6

**invite [2]** 57/24 57/24

**involved [2]** 67/14 72/14

**involvement [1]** 70/18

**involves [2]** 59/2 59/3

**involving [3]** 67/6 67/7 102/4

**iPads [1]** 47/8

**irrational [2]** 38/13 74/24

**irrelevant [1]** 20/22

**is [354]**

**is going [1]** 24/21

**is that correct [2]** 6/18 27/6

**is there [3]** 41/13 61/5 66/3

**ISA [14]** 37/12 37/17 55/15 56/24 59/2 59/3 64/12 70/10 70/13 73/1 73/14 74/14 76/23 77/2

**ISA's [1]** 77/6

**isn't [5]** 53/16 65/25 75/2 89/20 94/14

**isolated [1]** 18/7

**issue [25]** 20/25 22/13 24/15 24/21 25/11 27/24 28/1 28/3 45/2 50/21 50/23 57/17 58/23 61/13 72/16 73/20 78/7 78/16 79/22 84/14 87/8 87/13 92/22 99/5 99/12

**issued [2]** 10/21 55/2

**issues [16]** 7/7 7/15 7/16 7/25 12/17 12/24 17/19 17/21 19/9 30/16 32/23 38/20 46/13 67/10 78/2 79/17

**issuing [2]** 16/4 51/3

**it [217]**

**it seems [1]** 13/10

**it will [1]** 37/10

**It would [1]** 59/21

**it would be [5]** 24/2 46/7 66/7 67/25 74/24

**it wouldn't [1]** 46/6

**it's [68]** 9/4 9/13 10/18 11/15 12/11 13/10 13/12 14/5 14/9 17/17 23/20 25/18 32/5 33/22 34/19 37/10 37/24 37/25 38/14 41/8 42/18 46/11 47/17 50/16 54/3 54/19 55/5 58/2 59/9 60/4 63/4 63/8 63/21 65/15 65/16 66/9 66/15 67/4 68/4 68/10 68/20 74/2 74/6 74/21 75/6 75/7 76/11 76/12 76/20 76/20 78/15 79/25 80/25 81/18 83/6 88/5 91/22 92/1 92/2 93/7 94/5 94/13 96/16 96/17 100/11 101/19 102/22 109/21

**It's the [1]** 65/16

122

**I**

its [35] 14/15 15/12
18/15 37/11 38/5 43/10
43/18 53/22 53/25
54/11 56/23 56/24
57/10 59/10 62/7 63/3
64/3 64/20 64/24 64/24
66/9 66/10 66/11 68/18
68/21 68/23 68/23
68/24 73/14 73/22 74/2
74/14 80/9 80/16 93/7
itself [9] 32/25 57/2
59/6 65/6 68/18 70/10
81/7 82/19 86/10

**J**

January [3] 1/5 98/6
113/7
January 17th [1] 98/6
jeopardized [1] 75/18
job [1] 25/23
John [2] 3/2 6/11
John Schmidtlein [1]
6/11
joint [6] 28/3 30/7
39/13 78/2 79/16 94/25
Joint Status [1] 79/16
jointly [1] 27/22
Jon [1] 6/10
jon.sallet [1] 2/18
Jonathan [1] 2/13
Joseph [1] 4/2
jschmidtlein [1] 3/5
JUDGE [6] 1/10 62/18
63/13 65/13 92/16 99/3
judge's [1] 30/18
judgment [28] 34/20
39/21 40/1 42/17 45/20
49/22 49/25 52/12
52/25 53/5 56/20 57/3
59/13 59/18 62/2 64/19
66/5 66/6 66/18 68/17
81/4 81/21 88/7 89/23
91/16 96/1 96/24 97/5
judgments [2] 35/4
52/16
judicial [2] 2/15 27/25
Julia [1] 3/11
julia.chapman [1] 3/15
June [1] 102/11
just [74] 9/9 10/3 10/17
12/1 12/5 13/13 14/19
14/21 15/5 15/6 15/7
16/6 16/7 16/14 16/17
17/2 17/4 21/5 28/5
28/9 33/25 34/9 34/16
35/12 36/8 41/3 43/1
43/2 43/9 44/11 45/17
48/11 48/20 48/25
55/18 57/14 61/12 64/6
64/16 69/5 70/4 72/11
75/5 76/18 77/4 79/23
80/5 81/25 86/23 87/4
88/10 88/11 88/22 89/1
89/5 92/1 92/7 93/1
93/16 93/21 93/24
94/11 96/16 96/17
96/17 101/5 103/3

107/24 109/21 111/4
111/14
JUSTICE [4] 2/3 2/8
10/22 98/24
justification [1] 80/20
justifies [1] 36/25
JX33 [1] 70/10

**K**

Karl [3] 2/7 78/12 80/2
karl.herrmann [1] 2/11
keen [1] 97/12
keep [3] 44/7 96/16
103/10
keeps [1] 41/2
KELLOGG [2] 4/3 8/10
kellogghansen.com [1]
4/6
kind [8] 15/20 18/19
22/19 22/25 41/2 74/18
75/22 81/3
kinds [2] 17/19 17/21
Kleissler [1] 75/7
knew [1] 70/1
knocking [1] 62/16
know [133]
knowing [2] 99/19
99/21
knowledge [3] 23/1
83/12 83/24
knowledgeable [1]
12/7
knows [2] 46/16 69/21
Kollar [1] 99/3
Kollar-Kotelly [1] 99/3
Kotelly [1] 99/3

**L**

lacking [1] 18/16
land [2] 55/19 75/10
landscapes [1] 40/14
large [1] 15/11
largely [2] 74/9 99/5
LaSalle [1] 2/4
last [9] 15/7 15/8 17/4
35/14 52/10 54/12
70/17 76/12 96/12
late [1] 31/23
later [2] 44/25 103/22
LATHAM [3] 4/14 4/18
48/15
law [11] 2/13 46/17
56/6 69/15 69/16 72/11
72/12 73/21 75/18
103/6 108/12
lawful [2] 46/18 73/16
lawsuit [1] 19/6
lawyer [6] 21/15 88/4
94/13 94/15 97/16
99/13
lawyers [3] 81/13
111/12 111/16
lead [2] 80/22 94/5
leads [1] 26/10
least [5] 38/25 54/2
60/12 93/2 106/12
leave [3] 7/3 23/13

leaves [2] 7/25 24/15
led [1] 7/9
left [2] 87/9 103/3
legal [9] 12/2 37/6 37/6
37/21 37/24 49/3 72/9
73/12 95/13
legality [1] 48/6
legally [3] 36/13 37/2
37/13
length [3] 45/1 46/15
68/2
less [3] 29/2 40/18
46/17
let [31] 19/2 19/4 20/24
23/10 26/13 27/23
30/19 30/19 39/19 43/9
44/2 44/11 47/24 48/9
48/25 51/1 51/14 51/18
53/13 62/15 62/22
65/11 67/24 78/9 83/18
91/25 93/20 94/11
97/10 107/8 107/25
let's [18] 7/24 10/8
23/3 30/6 30/17 36/5
49/9 74/9 78/1 79/15
87/8 94/3 97/18 98/2
99/15 100/10 100/25
101/17
let's see [1] 30/6
level [1] 83/23
LEWIS [1] 4/8
lewisllewellyn.com [1]
4/12
liability [23] 19/12
31/12 31/25 32/22
33/12 33/13 36/1 36/21
37/11 37/19 53/19 57/7
64/22 65/18 68/19
71/13 71/23 72/17
72/22 73/2 104/11
104/15 111/10
life [1] 7/12
light [3] 11/9 69/5 73/1
like [52] 9/24 9/25
10/11 10/14 14/17
14/19 17/17 20/17
23/10 23/19 25/3 25/23
27/10 28/5 29/3 31/4
32/15 35/11 36/22 49/4
49/6 53/11 53/22 55/19
55/19 61/13 61/18
63/21 69/6 69/9 71/17
71/24 72/11 73/15
78/25 87/1 88/4 89/20
90/3 93/1 93/12 96/18
97/1 97/23 98/10
103/10 103/15 103/18
107/3 107/10 109/14
110/4
likely [7] 23/1 25/25
28/22 29/2 50/16 50/20
54/5
Likewise [1] 76/22
limine [1] 32/13
limit [2] 35/1 86/11
limitations [2] 39/1
80/15

whites [1] 59/7
51/9 58/16 62/9 73/20
77/13 86/12
line [5] 15/11 17/24
42/15 73/15 97/15
line-drawing [1] 42/15
lined [1] 68/1
lines [1] 49/12
list [16] 6/17 6/20
12/10 12/15 31/10
31/13 31/14 35/18
44/14 44/19 53/3 53/8
57/4 83/18 107/16
107/19
listed [1] 10/22
lists [3] 107/12 107/13
107/13
literally [1] 22/7 89/9
94/14
litigate [4] 37/14 52/20
86/8 97/1
litigated [1] 96/1
litigating [2] 71/13
71/23
litigation [1] 110/6
little [7] 7/12 11/15
32/18 41/8 49/20 56/11
103/7
live [1] 100/10
lives [1] 108/13
LLC [2] 1/6 6/8
LLEWELLYN [1] 4/8
LLMs [1] 10/11
LLP [7] 3/3 3/7 3/12
3/17 4/8 4/14 4/18
located [1] 109/12
location [1] 110/12
locked [4] 13/3 13/22
46/6 46/21
logs [1] 75/9
long [7] 10/6 22/3 22/7
54/7 100/15 102/21
103/22
longer [8] 40/22 55/13
55/13 55/14 56/13
63/22 64/9 64/10
longest [1] 6/24
look [32] 9/24 10/14
14/9 14/19 19/8 21/5
22/4 27/10 28/9 38/21
39/20 41/8 41/11 49/6
54/21 59/14 60/8 61/5
77/22 81/18 82/18
85/22 86/18 87/1 87/25
88/3 91/19 91/21 97/9
101/25 103/18 110/17
looked [3] 27/11 33/12
99/2
looking [1] 42/22
looks [2] 23/19 75/1
lose [3] 70/2 78/6 78/7
lost [2] 70/15 70/25
lot [14] 10/9 20/22
48/24 57/25 67/6 84/6
87/4 90/15 93/6 98/12
102/1 102/13 109/4
110/4
lots [6] 37/1 47/3 84/6

love [3] 31/20 56/4
70/22
lowering [1] 43/5
luxury [2] 68/3 103/19
lw.com [2] 4/16 4/20

**M**

MA [1] 3/8
made [10] 8/15 18/1
25/19 27/14 28/13
70/23 71/2 86/1 86/7
90/2
magnitude [1] 63/11
Maier [7] 4/2 8/10 8/12
13/5 13/6 13/7 23/16
main [1] 54/8
majority [1] 11/3
make [15] 6/14 12/5
18/18 34/16 45/19
47/18 47/20 62/24 68/6
76/14 82/14 85/12
90/17 94/11 95/16
makes [6] 7/12 18/1
70/9 79/20 82/2 86/6
making [6] 34/25 46/19
68/6 81/7 82/14 83/8
man [1] 25/23
manage [2] 37/8 62/13
manageable [2] 23/15
62/24
management [1] 44/6
manner [1] 66/24
manufacturers [1]
69/24
many [3] 34/10 45/18
45/20 62/6 62/7 84/11
98/10 98/11 100/7
102/20 104/12 104/13
111/16
mapped [1] 103/18
March [2] 96/17 96/24
market [9] 45/16 53/21
54/10 57/11 57/17 65/1
65/17 71/18 71/18
markets [1] 77/8
marshal [1] 90/17
massively [1] 10/3
material [2] 16/11
28/21
materially [1] 61/6 63/9
materials [1] 14/24
math [1] 104/20
Matt [1] 8/6
Matt McGinnis [1] 8/6
matter [7] 29/20 48/7
61/20 70/7 80/12 102/5
113/4
matters [1] 11/17
Matthew [1] 3/6
matthew.mcginnis [1]
3/10
may [22] 6/18 14/11
20/4 24/17 25/1 29/9
33/24 35/3 39/16 44/14
44/24 50/3 55/5 74/21
76/19 76/19 76/20 78/6
80/23 94/6 107/25

# M

**may...** [1] 108/3
**maybe** [19] 10/5 10/12
11/24 34/7 34/7 39/7
46/1 56/11 60/9 76/2
89/7 91/17 92/1 92/2
92/2 100/24 100/24
101/14 101/15
**McGinnis** [4] 3/6 8/6
8/7 18/14
**me** [74] 9/4 11/15
12/15 13/10 13/19 16/7
18/14 18/15 19/2 19/4
20/24 22/23 23/22
26/13 28/21 30/19
30/19 34/23 35/5 35/11
39/19 40/2 42/17 43/9
44/11 47/24 48/9 48/16
49/12 50/18 51/1 51/14
51/18 53/13 53/16 54/3
54/4 54/19 54/19 54/23
55/18 55/19 56/11 57/23
58/2 60/4 62/13 63/8
63/19 67/24 68/5 68/10
71/17 71/24 73/19 80/5
80/7 87/2 88/8 88/21
90/5 93/9 93/20 94/11
98/8 99/23 100/7
101/10 103/5 103/13
105/10 105/20 105/21
111/19
**mean** [71] 10/5 10/9
13/3 13/12 14/9 14/14
16/6 18/5 18/18 21/1
22/2 22/5 23/16 24/5
49/19 56/15 57/2 57/13
57/19 57/25 58/8 58/9
58/11 58/21 59/1 59/17
59/19 61/1 61/4 61/16
61/20 63/2 63/19 65/11
65/22 67/6 67/17 74/4
74/9 76/18 77/1 77/9
80/7 81/18 82/12 83/9
83/10 85/1 86/24 89/9
89/24 90/2 91/7 91/16
92/17 92/25 93/4 93/20
97/5 99/4 99/20 100/2
100/14 102/1 102/15
105/23 109/13
**meaning** [2] 38/8 103/5
**meaningful** [1] 18/3
**means** [8] 40/2 40/5
42/6 42/8 96/6 96/8
96/13 100/3
**meantime** [1] 78/21
**mechanical** [1] 5/6
**mechanics** [1] 32/25
**mechanism** [1] 39/14
**meet** [3] 95/4 100/22
100/24
**meeting** [3] 12/24
12/24 108/21
**meets** [1] 66/1
**MEHTA** [3] 1/9 6/3
79/12
**memorandum** [1] 75/6
**mention** [1] 53/1

**mentioned** [4] 12/21
37/20 56/21 57/13
**merely** [1] 86/10
**Merit** [1] 5/2
**merits** [4] 52/19 52/20
69/9 72/18
**met** [4] 8/23 26/5 67/18
68/14
**Microsoft** [12] 3/11
6/18 7/1 45/10 45/14
45/15 92/2 92/3 95/20
95/20 97/13 98/14
**Microsoft's** [1] 45/17
**midday** [1] 28/7
**middle** [2] 10/20
108/22
**Middlefield** [1] 3/17
**midst** [1] 8/19
**might** [23] 9/24 11/6
12/23 14/19 17/19 18/9
21/22 22/1 22/1 25/8
25/10 27/13 28/15
32/25 38/18 43/1 60/10
73/17 75/18 82/24 83/2
86/2 100/23
**million** [1] 63/15
**millions** [1] 68/24
**mind** [4] 42/15 44/20
45/18 87/4
**mine** [1] 55/5
**minimum** [1] 102/14
**minor** [1] 107/5
**minus** [2] 27/5 30/1
**minutes** [6] 23/2 76/14
78/1 79/7 96/18 111/9
**mirrors** [1] 37/5
**misstate** [1] 71/15
**misused** [1] 92/20
**mode** [2] 47/9 47/10
**model** [1] 25/22
**modified** [1] 42/12
**modify** [1] 107/25
**moment** [8] 10/17
13/16 14/14 30/22 36/6
70/1 94/2 99/25
**momentous** [1] 77/17
**Monday** [1] 23/10
**money** [6] 42/1 42/5
45/13 45/17 45/18 64/9
**Montgomery** [2] 4/9
4/14
**month** [2] 108/25
109/6
**months** [1] 96/23
**more** [29] 13/13 18/2
23/4 27/20 28/5 29/6
31/2 34/15 35/18 35/20
35/20 36/2 41/8 46/12
49/5 52/21 58/5 60/21
60/23 63/20 69/19
84/21 85/16 87/2 87/6
93/2 99/16 106/11
107/15
**most** [4] 10/12 27/19
29/17 71/8
**motion** [18] 31/13
32/20 34/6 48/21 49/2
50/22 63/2 63/4 65/8

66/13 66/22 68/1 70/18
76/11 78/17
**motions** [2] 32/13 34/7
**Mountain** [1] 108/10
**move** [14] 23/7 24/4
25/8 30/10 30/23 44/23
96/25 96/25 99/17
102/6 102/6 102/6
102/12 102/16
**moved** [1] 24/18
**moving** [1] 26/25
**Mozilla** [5] 39/5 63/13
63/19 63/25 64/1
**Mozilla hardly** [1]
63/25
**Mr** [3] 8/12 21/2 26/3
**Mr.** [91] 8/7 10/22 11/2
11/6 11/13 12/7 12/9
12/11 12/23 13/3 13/5
13/17 17/20 18/6 18/12
18/14 19/16 19/23 21/1
23/16 24/17 24/22
25/16 26/5 26/6 26/6
26/10 27/15 29/7 29/23
29/25 30/14 31/11
31/14 32/4 36/7 39/20
41/9 41/10 43/8 44/10
44/11 44/19 45/14
45/23 49/2 51/15 51/16
52/21 53/7 53/14 53/16
54/1 54/1 54/6 54/19
55/7 55/11 56/4 56/9
57/19 57/21 58/20
59/24 61/12 69/2 70/4
72/2 72/7 76/7 76/8
76/11 77/21 78/12
78/13 80/2 80/5 83/11
85/20 93/20 93/22
94/19 95/11 97/22
100/17 100/22 108/5
108/19 110/14 111/3
111/5
**Mr. Aravind** [1] 25/16
**Mr. Cue** [15] 31/11
31/14 32/4 41/9 44/19
45/14 51/15 51/16 53/7
53/16 54/1 54/6 54/19
55/7 57/21
**Mr. Cue's** [1] 58/20
**Mr. d'Halluin** [9] 10/22
11/6 11/13 12/7 12/9
12/11 12/23 19/16
19/23
**Mr. d'Halluin's** [1] 11/2
17/20 18/6 18/12
**Mr. Dahlquist** [8] 13/3
13/17 21/1 39/20 43/8
49/5 52/21 58/5 60/21
72/7 100/17 110/14
**Mr. Flood** [3] 27/15
29/23 30/14
**Mr. Garre** [10] 49/2
52/21 53/14 56/4 56/9
57/19 59/24 69/2 76/11
77/21
**Mr. Giannandrea** [2]
41/10 54/1
**Mr. Herrmann** [3]

**Mr. Karl** [2] 78/12 80/2
**Mr. Maier** [2] 13/5
23/16
**Mr. McGinnis** [2] 8/7
18/14
**Mr. Pichai** [1] 108/19
**Mr. Sallet** [7] 36/7
44/10 72/2 76/7 93/22
100/22 111/3
**Mr. Schmidtlein** [14]
24/17 44/11 45/23
55/11 61/12 70/4 76/8
83/11 93/20 94/19
95/11 97/22 108/5
111/5
**Mr. Shevelenko** [1]
26/5
**Mr. Srinivas** [4] 26/6
26/6 26/10 29/7
**Mr. Yeager** [2] 24/22
29/25
**Ms.** [8] 83/25 84/24
87/20 87/23 87/24 95/1
96/2 108/19
**Ms. Connor** [2] 83/25
84/24
**Ms. Reed** [1] 108/19
**Ms. Sara** [2] 87/20
87/23
**Ms. Trent** [3] 87/24
95/1 96/2
**much** [11] 8/19 37/18
37/18 81/20 81/22 87/2
88/13 90/6 99/6 103/8
103/10
**multi** [1] 46/21
**multi-year** [1] 46/21
**multiple** [2] 34/4 71/3
**must** [1] 77/4
**my** [35] 6/24 14/9
24/20 28/10 30/2 34/2
35/6 41/4 41/8 42/14
44/12 45/18 45/24
48/16 55/3 55/4 57/6
57/13 66/14 71/12
73/19 78/5 83/23 87/4
87/16 90/24 94/23 95/7
96/14 96/14 96/14
103/6 103/9 109/24
110/23

# N

**name** [5] 23/12 24/5
34/19 36/9 56/19
**names** [2] 35/3 48/12
**narrow** [5] 20/20 22/17
22/17 32/3 86/14
**narrowed** [3] 7/14 10/8
15/4
**narrower** [2] 15/17
29/2
**narrowing** [1] 23/14
**nascent** [2] 91/25 92/1
**national** [2] 75/9
109/15
**nearly** [1] 104/15
**necessarily** [2] 28/12

**necessary** [4] 18/4
58/3 68/20 88/5
**need** [38] 9/20 18/17
21/6 21/18 22/16 22/22
28/22 29/24 42/16
43/15 50/19 50/20
51/23 52/2 52/7 52/22
79/17 80/21 81/22
86/19 86/20 86/22 93/7
93/10 95/14 96/11
96/13 97/2 98/6 100/11
103/4 103/14 103/24
104/14 105/7 106/2
106/6 106/7
**needed** [1] 84/18
**needing** [1] 51/19
**needs** [10] 21/9 28/11
28/12 30/1 53/12 54/4
71/6 94/2 94/11 99/16
**negotiate** [6] 20/12
36/17 40/20 62/20
74/15 76/2
**negotiated** [1] 75/13
**negotiating** [3] 7/19
8/19 50/8
**negotiation** [1] 11/10
**negotiations** [2] 23/13
60/17
**neighborhood** [1] 15/6
**Neither** [1] 78/24
**NEPA** [1] 67/10
**never** [1] 110/10
**new** [3] 70/16 70/20
70/20
**news** [27] 4/2 8/1 8/4
8/11 8/17 8/18 9/1 9/10
10/1 10/23 12/10 12/22
13/23 14/1 14/14 15/10
18/8 19/4 19/20 19/23
19/25 20/7 21/24 22/8
22/20 24/14 89/7
**News Corp** [18] 8/1
8/4 8/11 9/1 9/10 10/1
12/10 12/22 13/23 14/1
14/14 15/10 18/8 19/4
19/20 21/24 22/8 24/14
**News Corp's** [2] 10/23
19/25
**next** [8] 23/8 23/9 24/6
24/9 50/22 101/9
106/16 112/2
**nice** [2] 8/8 112/2
**night** [1] 33/7
**Ninth** [2] 72/24 73/6
**Ninth Circuit** [1] 72/24
**no** [45] 1/4 7/3 13/22
16/2 19/18 20/21 31/9
37/13 38/6 40/22 41/20
51/3 53/8 54/21 55/13
55/15 55/14 56/13
63/22 64/8 64/10 66/8
69/15 70/11 74/12
75/12 76/9 84/16 84/23
87/19 89/8 89/9 90/9
93/18 94/14 94/18
97/14 98/3 99/7 101/7
103/22 104/17 105/1

no... [2]  110/15 111/24
nobody [1]  72/21
non [8]  3/16 4/2 4/7
4/13 7/25 14/22 47/18
56/18
non-attorney [1]  14/22
non-exclusive [1]
47/18
non-party [6]  3/16 4/2
4/7 4/13 7/25 56/18
none [2]  19/11 72/13
nonprivileged [1]  11/8
noon [1]  27/22
Norton [1]  69/18
not [183]
note [2]  75/5 104/11
noted [1]  43/8
notes [1]  6/24
nothing [3]  54/14
75/21 111/22
noticed [3]  95/21 96/12
107/17
notices [1]  90/8
noting [1]  111/5
notion [5]  45/4 75/2
95/12
now [46]  6/2 6/3 6/6
9/18 11/5 15/5 15/10
21/5 21/6 30/6 33/2
33/3 34/7 34/14 36/3
37/13 37/24 43/7 44/19
46/16 54/19 55/12 57/5
61/5 62/15 66/14 68/21
70/20 70/24 75/8 79/8
84/20 90/9 91/9 91/10
94/7 96/11 96/13 97/3
98/4 98/24 102/8
102/23 102/25 104/15
106/12
NRDC [1]  76/24
number [22]  9/15
17/15 23/15 23/19 25/5
25/13 25/15 28/10 29/5
62/9 63/15 65/6 67/13
72/17 79/20 88/7
100/11 103/20 107/21
108/1 110/17 111/16
Number 11 [1]  79/20
NW [5]  2/10 3/4 4/4
4/18 5/4

O

Oath [1]  99/22
objection [4]  94/17
97/14 105/1 108/21
objections [5]  93/17
97/17 97/19 98/25
99/14
objective [4]  55/4 55/4
57/20 95/15
observation [5]  18/18
34/17 45/6 88/1 94/23
obvious [3]  58/9 77/23
93/2
obviously [4]  31/19
48/21 56/18 62/3
occurred [3]  69/13

occurring [1]  40/13
October [1]  33/4
odds [1]  38/11
off [7]  6/17 6/20 19/3
55/3 55/4 70/24 83/16
offer [4]  43/18 77/5
77/5 95/5
offered [4]  26/19 45/14
95/3 108/19
offering [2]  29/14
47/15
offers [1]  66/20
officer [5]  22/24 29/1
29/15 29/16 29/18
Official [1]  5/3
often [1]  7/15
Oh [2]  16/24 17/3
okay [53]  9/12 13/2
13/8 16/13 23/23 23/24
24/13 26/4 26/12 27/20
28/8 28/16 29/8 30/10
31/16 42/25 44/10 48/8
49/10 51/17 56/3 60/9
63/10 65/13 68/25 69/4
76/5 76/10 78/10 80/4
82/4 82/22 83/10 83/10
83/16 85/18 86/15
95/10 97/8 97/11 97/25
98/7 101/3 101/21
106/9 106/22 107/3
107/23 108/23 110/13
110/16 111/17 111/20
once [3]  8/23 43/14
102/1
one [72]  6/16 9/19 10/25
12/5 12/15 13/19 13/24
22/13 25/15 26/2 26/9
28/10 28/20 31/2 31/3
31/11 33/11 34/9 34/22
35/17 38/2 38/8 39/1
40/7 41/15 43/1 44/13
45/8 46/1 46/2 46/5
46/7 47/15 49/16 51/12
53/14 54/24 56/18
61/13 64/7 65/6 67/3
70/9 72/6 73/7 75/1
75/5 78/7 78/15 80/3
81/18 82/14 83/6 88/1
88/3 88/5 91/23 94/11
94/14 96/17 97/2 98/9
103/11 107/7 107/10
108/3 108/10 108/11
108/11 110/24 111/4
111/10
one's [1]  32/4
one-year [1]  46/7
ones [1]  8/22
ongoing [1]  26/18
only [16]  25/15 46/4
52/3 54/23 56/18 57/11
57/14 59/19 64/18
68/23 90/24 92/1 97/16
106/6 106/13 111/15
open [3]  13/12 32/10
81/25
OpenAI [3]  3/16 6/21
7/7

opening [3]  35/7 62/20
62/22
opens [1]  37/17
operations [2]  49/1
68/23 82/7
opinion [4]  90/18 91/6
95/13 103/14
opportunities [1]  47/4
opportunity [9]  26/14
40/19 65/5 89/16 90/22
92/7 92/13 101/11
109/7
oppose [1]  107/21
opposed [6]  12/2
12/15 50/20 78/22
78/24 99/25
opposition [2]  53/1
78/17
opt [3]  46/7 46/22
55/22
opt-out [2]  46/7 55/22
option [1]  38/23
oral [5]  77/23 103/7
103/10 103/12 106/5
oranges [1]  83/9
order [12]  19/2 21/23
22/6 40/18 40/19 43/16
49/1 54/15 71/7 74/17
99/18 107/8
ordered [1]  97/14
ordinary [2]  81/13 83/5
organization [1]  83/7
organizations [1]
39/15
original [1]  78/23
other [60]  11/19 13/15
16/10 17/17 21/14
21/14 21/14 28/16
30/15 32/7 32/8 33/14
34/4 34/24 35/10 37/23
38/1 38/3 39/6 39/15
40/4 40/19 40/23 41/11
42/4 42/5 42/8 43/11
43/15 43/15 45/10
45/25 46/1 46/2 46/8
46/9 47/4 55/23 58/5
61/12 62/16 63/24
64/13 65/19 66/23 68/1
68/5 68/11 70/9 70/11
71/1 71/3 71/10 73/13
73/24 75/23 103/8
109/20 109/24 109/24
others [8]  35/6 38/24
39/18 42/16 65/4 65/5
92/1 108/20
otherwise [3]  9/4 99/6
106/17
ought [7]  22/5 22/25
28/19 76/11 88/8 97/19
99/24
our [51]  17/25 19/15
20/11 20/14 26/21
27/20 31/19 33/6 37/5
39/13 44/7 44/19 47/2
48/3 48/22 48/25 52/6
54/13 54/17 57/13
57/14 58/16 59/19
60/20 62/20 65/20

70/23 71/4 72/14 75/6
75/24 76/15 77/16
78/18 78/22 78/22 81/6
92/12 94/25 95/16
95/16 95/17 104/19
107/21 107/21 108/7
111/16 112/2
our motion [1]  65/20
ourselves [2]  38/20
86/12
out [32]  12/22 21/11
22/5 22/6 22/19 27/20
27/24 29/10 30/1 30/10
46/7 46/23 52/24 55/22
55/23 56/19 57/1 61/14
63/16 63/21 67/20
68/17 71/10 78/21
91/18 97/20 98/5
103/18 107/18 109/19
109/23 111/13
outlined [1]  8/14
outset [1]  99/14
outside [2]  81/13 89/11
outstanding [2]  25/7
78/2
over [15]  9/10 10/1
15/1 15/2 15/7 15/8
16/15 17/8 36/1 54/1
54/12 56/8 67/9 97/1
97/14
overbroad [2]  10/3
20/19
overlap [2]  59/6 76/22
own [18]  34/7 35/16
35/19 43/10 43/12
43/19 50/25 52/11 57/3
57/9 63/3 65/18 66/9
66/10 70/19 70/21
77/16 81/12

P

P.L.L.C [1]  4/3
p.m [4]  1/6 79/10 79/10
112/7
PA [1]  3/13
page [6]  23/24 26/22
32/7 37/11 67/13 69/22
page 4 [1]  67/13
page 6 [1]  32/7
pages [2]  9/2 9/2
paid [1]  63/14
papers [6]  31/20 33/6
36/12 43/19 49/19
103/4
paragraph [3]  38/5
38/10 69/22
parallels [1]  87/4
parlay [1]  51/19
parol [1]  89/21
part [6]  9/5 26/9 36/16
57/8 62/2 64/23
participate [5]  32/6
32/8 49/15 50/24 58/16
participation [2]  44/21
62/11
particular [8]  8/22
46/13 58/12 67/9 75/19

particularly [2]  13/11
80/24
parties [22]  8/23 24/24
25/8 30/15 34/5 34/8
34/24 36/19 50/3 69/4
69/17 70/15 82/4 88/12
89/16 90/17 96/3
100/18 102/6 102/12
107/11 109/2
parties' [4]  7/17 34/20
59/5 79/15
partner [2]  35/22 53/23
partnerships [2]  22/25
29/12
parts [1]  42/4
party [23]  3/11 3/16 4/2
4/7 4/13 7/25 20/25
33/3 33/11 38/17 56/18
57/23 58/2 58/16 66/24
67/15 72/15 82/16 83/8
87/1 91/3 109/21
110/11
pass [1]  56/8
passed [2]  53/15 69/11
past [6]  6/13 11/19
13/9 23/20
patiently [1]  48/10
pay [8]  39/9 40/24
45/12 46/4 61/15 64/9
64/10 70/24
payment [1]  41/7
payments [3]  40/12
40/16 43/6
pays [1]  69/23
pending [1]  108/16
people [9]  62/16 68/11
98/5 108/16 109/17
109/22 109/24 110/18
110/23
per [1]  46/18
percent [3]  60/23 62/4
97/16
perfectly [1]  53/18
perform [1]  29/24
performed [1]  20/2
perhaps [1]  19/23
21/22 21/25 33/11
43/22 44/1 71/5
period [2]  40/17 89/9
permit [1]  83/24
permitted [6]  31/6
44/15 46/3 66/24 67/5
82/10
Perplexity [10]  4/8
7/14 24/15 24/21 25/4
25/7 25/14 25/25 26/13
27/14
Perplexity's [4]  25/1
25/16 27/2 29/3
person [4]  21/7 22/8
22/24 108/13
perspective [3]  8/18
46/22 66/19
pertain [1]  44/24
petition [1]  72/5
Petitioner [1]  4/13
petitions [1]  68/7

**PFJ [5]** 90/18 92/13 95/13 96/4 100/15
**PFOF [1]** 78/23
**phase [9]** 19/12 37/19 48/7 53/19 72/18 72/21 110/5 110/6 111/10
**Philadelphia [1]** 3/13
**phraseology [1]** 41/14
**Pichai [1]** 108/19
**piece [3]** 42/4 42/23 62/17
**pin [2]** 14/13 36/5
**place [7]** 22/19 49/16 91/3 92/16 92/19 100/20 108/25
**places [1]** 109/20
**Plaintiff [1]** 2/12
**plaintiffs [24]** 1/4 2/2 6/9 13/18 18/23 21/1 26/6 30/24 33/11 39/20 41/5 57/3 60/9 61/17 62/3 64/2 68/16 78/18 84/25 93/24 95/15 95/21 110/20 110/21
**plaintiffs' [8]** 31/10 53/1 55/5 56/19 62/2 66/17 78/17 81/4
**plan [1]** 106/12
**plane [1]** 110/1
**planning [3]** 16/15 25/21 111/14
**plate [1]** 62/7
**played [1]** 104/13
**players [1]** 37/1
**pleading [2]** 72/14 75/24
**please [3]** 6/4 20/15 79/13
**plopped [1]** 18/23
**plus [3]** 51/15 51/16 55/14
**point [23]** 8/25 18/8 19/21 34/2 35/9 35/15 36/2 36/9 39/8 39/12 52/24 68/20 73/19 76/24 82/18 93/25 94/11 95/7 99/8 105/8 109/6 111/4 111/10
**pointed [1]** 29/10
**points [6]** 19/2 29/13 29/17 47/18 71/2 76/17
**policies [14]** 80/8 80/20 83/12 83/14 83/16 84/17 85/1 85/2 85/3 85/6 85/9 85/14 85/15 85/23
**policy [5]** 80/21 80/22 84/2 85/22 85/25
**POLK [1]** 3/17
**popular [1]** 69/24
**posed [1]** 33/23
**position [12]** 21/4 27/17 29/3 35/8 39/17 55/21 56/13 57/12 59/17 60/17 61/7 74/7
**positional [1]** 108/20
**positions [1]** 7/19

**possesses [2]** 100/23 18/8
**possession [1]** 52/8
**possibility [4]** 36/15 76/1 94/6 111/6
**possible [2]** 69/7 104/10
**possibly [3]** 62/10 68/5 85/17
**post [6]** 33/21 79/1 94/9 102/22 103/24 106/2
**post-trial [4]** 94/9 102/22 103/24 106/2
**posture [1]** 33/3
**potential [11]** 10/23 18/9 27/14 64/20 64/24 65/22 65/23 69/17 70/2 70/3 76/22
**potentially [7]** 7/14 31/18 32/17 35/10 51/6 58/18 68/22
**practical [4]** 44/6 72/10 89/25 90/1
**practicality [1]** 93/16
**precedent [1]** 38/6
**precipice [1]** 34/6
**predict [1]** 42/20
**prejudgment [1]** 33/22
**prejudice [4]** 31/22 33/1 34/13 52/6
**prep [1]** 109/11
**preparation [4]** 31/5 44/17 109/9 109/13
**prepare [2]** 95/16 96/14
**prepared [7]** 21/8 92/5 97/15 103/7 104/7 110/18 111/1
**preparing [1]** 109/19
**presence [3]** 7/9 31/25 44/9
**present [12]** 12/16 28/25 34/11 35/11 35/22 53/11 54/4 57/23 68/11 71/7 108/8 111/12
**presentations [1]** 17/20
**presented [2]** 61/23 66/8
**presently [2]** 31/1 31/10
**presiding [2]** 6/3 79/12
**pressure [2]** 25/4 89/16
**presumably [5]** 43/10 57/8 58/14 86/25 102/25
**presumptively [1]** 106/5
**pretrial [2]** 94/8 106/15
**pretty [1]** 52/9
**Prettyman [1]** 5/4
**prevent [2]** 65/4 67/20
**prevented [1]** 40/13
**previewed [2]** 107/15 108/5

**previewing [1]** 108/3
**primary [7]** 10/25 10/25 35/22 41/6 42/1 57/20 81/7
**prior [1]** 16/4
**priorities [1]** 41/11
**prioritizing [1]** 58/23
**priority [1]** 28/10
**privacy [14]** 81/1 81/3 81/5 81/7 82/12 82/20 83/2 83/5 83/7 85/23 86/22 92/17 92/22 92/23
**private [4]** 47/9 47/10 66/24 67/7
**private-browsing [2]** 47/9 47/10
**privilege [4]** 11/21 12/16 18/11 93/16
**privileged [1]** 11/4
**probably [5]** 25/12 29/17 97/19 103/23 105/9
**problem [2]** 75/12 104/17
**problematic [1]** 85/16
**problems [2]** 54/25 66/9
**proceed [3]** 44/2 95/8 98/20
**proceeding [8]** 32/8 32/18 32/24 45/1 58/10 60/24 61/22 62/10
**proceedings [5]** 1/9 5/6 32/7 112/7 113/4
**process [4]** 84/2 94/1 94/3 100/19
**procured [1]** 33/14
**produce [2]** 9/15 109/5
**produced [16]** 5/7 9/1 9/10 15/14 16/10 17/6 17/9 18/16 19/5 21/20 84/1 85/6 85/8 85/14 87/7 110/11
**producing [4]** 11/8 17/14 18/9 50/7
**product [9]** 71/18 90/14 90/19 90/21 91/6 93/14 94/17 95/13 99/14
**production [5]** 9/7 9/14 16/4 17/15 17/25 17/25
**products [1]** 81/11
**Professor [1]** 46/14
**proffered [1]** 12/7
**progress [1]** 60/24
**prohibited [2]** 39/23 108/12
**project [2]** 81/22 86/21
**projects [2]** 83/19 84/7
**promote [2]** 39/6 55/23
**promotion [2]** 38/9 47/1
**promotional [1]** 47/4
**promotions [1]** 46/9
**proper [2]** 50/13 92/23
**properly [1]** 85/13
**property [1]** 10/11

**proportionally [1]** 23/4
**proposal [12]** 8/15 25/7 27/20 45/25 59/15 59/19 60/22 61/4 64/7 94/4 94/5 104/19
**proposals [1]** 60/21
**propose [7]** 40/17 49/21 51/13 59/13 93/12 100/25 108/14
**proposed [31]** 9/24 14/23 15/4 20/7 34/20 35/4 39/1 39/16 39/21 45/19 46/19 52/16 52/24 53/4 56/19 57/3 62/2 64/2 64/8 64/18 66/6 66/17 68/17 78/19 81/4 88/7 90/10 95/25 96/24 104/9 108/14
**proposing [6]** 52/14 52/18 60/8 60/9 60/14 93/5
**propounded [1]** 8/20
**prosecutors [2]** 89/19 90/16
**prospective [1]** 75/20
**prospects [1]** 36/21
**protect [6]** 56/14 67/21 68/21 76/19 77/16 85/24
**protectable [1]** 66/3
**protected [7]** 36/13 36/24 36/25 37/3 37/6 37/13 72/9
**protecting [4]** 57/14 59/10 66/11 83/8
**Protection [1]** 2/14
**protections [2]** 81/5 82/5
**protects [2]** 39/13 39/17
**provide [9]** 14/1 20/15 24/3 45/5 53/5 75/25 77/5 81/10 83/13
**provided [1]** 38/8
**provider [3]** 45/10 46/22 47/19
**providers [1]** 46/2
**provides [1]** 36/18
**providing [1]** 52/22
**provision [12]** 40/15 45/4 45/6 45/11 45/18 52/25 58/12 62/1 64/2 66/18 67/23 77/3
**provisions [4]** 45/20 74/16 95/18 97/4
**Prudential [1]** 3/7
**public [2]** 25/18 28/13
**publicly [1]** 79/3
**publishers [2]** 12/23 15/20
**pull [1]** 83/15
**pure [1]** 11/23
**purposeful [1]** 10/5
**purposes [1]** 10/11
**pursuant [1]** 12/11
**pursued [1]** 33/13

**purview [1]** 81/13
**push [1]** 103/12
**put [25]** 23/19 28/14 35/5 36/5 55/21 57/3 57/4 62/10 70/25 84/17 88/3 91/3 91/16 91/20 92/16 92/19 94/3 95/4 96/10 97/15 99/18 99/20 101/13 104/24 110/17
**puts [2]** 34/13 92/21
**putting [3]** 13/14 32/20 99/12

**Q**

**quality [3]** 81/2 81/11 82/20
**quantity [1]** 64/15
**quarter [1]** 102/5
**quash [1]** 70/19
**question [34]** 8/24 12/13 13/16 25/15 28/2 33/16 34/22 38/21 41/13 41/19 43/7 43/10 44/24 47/21 47/23 54/23 59/24 74/12 76/18 77/18 82/10 82/24 83/23 85/16 86/2 87/2 87/25 88/2 90/9 90/20 91/5 94/7 104/16 111/11
**questioning [2]** 111/6 111/9
**questions [38]** 7/1 8/21 30/23 31/9 32/10 32/14 33/23 36/4 40/8 43/21 43/25 44/2 44/12 48/23 50/2 50/3 51/6 53/13 61/24 82/19 83/24 84/21 88/1 89/13 90/6 90/13 93/10 93/13 96/10 97/10 98/12 98/18 99/19 99/21 99/24 101/8 101/13 111/12
**quick [2]** 9/9 78/11
**quickly [10]** 21/3 21/9 21/13 21/23 23/7 28/11 48/21 77/15 77/24 99/17
**quite [4]** 9/13 25/18 58/4 80/6
**quote [1]** 71/14
**quoted [1]** 73/23

**R**

**radar [1]** 13/1
**raft [1]** 95/18
**raised [1]** 39/13
**raising [1]** 41/19
**Ralph [1]** 2/15
**Ramani [2]** 3/16 7/7
**ran [2]** 14/25 15/15
**rapid [1]** 48/22
**rather [3]** 11/23 53/23 86/4
**rationale [1]** 35/5
**Ray [1]** 4/13 48/15

**R**

re [12] 31/25 32/22 37/14 52/20 71/13 71/17 71/18 71/18 71/23 74/14 74/15 86/8
re-argue [4] 31/25 71/17 71/18 71/18
re-argument [1] 32/22
re-litigate [3] 37/14 52/20 86/8
re-litigating [2] 71/13 71/23
re-negotiate [1] 74/15
reach [1] 95/8
reached [2] 12/22 78/21
reaching [2] 50/13 54/11
read [5] 38/22 44/21 52/25 74/23 77/4
readily [1] 67/18
reading [1] 46/16
reads [1] 40/21
ready [2] 104/1 104/3
real [6] 34/3 35/7 93/13 96/24 100/10 100/11
realistic [1] 44/25
reality [1] 85/22
really [21] 12/14 14/5 25/22 34/23 36/1 42/22 42/22 47/23 50/11 50/19 51/14 51/18 52/4 52/21 55/3 55/8 73/11 82/9 84/19 93/4 103/23
Realtime [1] 5/3
reason [11] 10/21 28/15 41/6 41/6 41/15 41/16 59/24 84/12 98/13 101/7 111/20
reasonable [1] 20/13
reasons [10] 34/12 54/16 59/6 68/7 75/14 75/24 77/23 87/5 90/3 94/23
reassess [3] 21/2 21/8 21/24
receipt [1] 50/7
received [4] 8/17 8/22 10/20 84/25
receiving [1] 81/11
recess [3] 79/9 79/10 112/6
recognized [3] 74/19 75/11 75/14
recognizing [1] 23/10
recommending [1] 60/16
reconsider [1] 21/8
record [12] 6/7 35/11 48/12 54/19 57/12 57/16 58/17 58/19 61/23 65/3 77/17 113/3
recorded [1] 5/6
redactions [1] 78/20
Redwood [1] 3/18
Reed [1] 108/19
refer [1] 19/10
reference [1] 72/11

referenced [1] 12/4
referring [2] 19/4 21/17
refile [1] 78/19
refiling [1] 78/22
reflected [1] 65/17
reflects [1] 64/23
regard [1] 31/20 38/18
regarding [2] 28/25 78/15
regardless [1] 20/2 38/8
Registered [1] 5/2
regulators [1] 17/19
reiterate [1] 44/11
relate [1] 29/11
related [4] 11/2 38/1 73/24 73/25
relates [1] 108/3
relating [1] 78/8
relationship [1] 77/11
relationships [2] 29/16 89/11
relevance [1] 86/20
relevant [8] 11/6 15/18 16/11 19/15 19/20 75/18 80/24 83/21
reluctant [1] 93/19
remains [2] 8/3 24/19
remarks [1] 64/9
remedial [2] 67/15 74/17
remedies [12] 12/8 12/23 14/2 38/23 39/16 42/21 43/19 48/7 72/20 81/6 105/11 106/25
remedy [18] 33/18 42/21 50/13 52/14 55/2 57/7 57/10 57/17 59/20 60/3 60/4 60/24 60/25 61/13 64/20 64/22 82/3 91/25
remember [3] 41/13 63/14 79/2
remit [1] 29/2
remote [1] 111/6
remotely [5] 30/9 110/2 110/3 110/7 111/12
remove [1] 25/5
reply [3] 32/7 37/11 67/13
report [10] 8/14 12/6 20/18 30/7 51/11 57/24 78/2 79/16 86/7 94/18
reporter [5] 5/2 5/2 5/3 5/3 76/15
reports [5] 14/17 20/15 92/12 94/4 96/19
represent [5] 58/22 60/1 70/7 70/7 73/22
representation [5] 25/2 31/21 36/2 69/17 72/8
represented [1] 60/10
Representing [2] 6/9 6/11
represents [1] 70/5
request [7] 13/10

referenced [1] 21/18
77/13 85/25 87/6
requested [2] 15/12 17/24
requesting [1] 49/12
requests [17] 8/20 9/25 18/20 18/21 19/9 35/1 38/22 43/16 50/17 50/21 50/23 51/4 81/14 84/4 84/11 84/14 90/2
require [4] 27/24 78/7 89/1 91/5
required [2] 82/10 109/22
requirements [2] 67/17 68/13
requires [1] 43/5
resemblance [1] 26/9
reside [2] 109/10 110/9
resolution [3] 7/10 24/4 27/25
resolve [3] 97/17 100/23 101/2
resolved [6] 6/18 6/21 7/3 7/7 24/19 92/6
resolving [1] 77/7
respect [25] 7/1 8/15 10/10 20/11 26/8 33/1 38/25 45/25 52/17 56/23 57/9 58/21 58/25 59/19 60/13 61/9 61/10 61/21 64/3 64/17 65/3 76/23 77/1 86/5 89/6
respectful [1] 77/14
respectfully [1] 98/20
respond [2] 69/10 97/21
responded [1] 33/7
Respondent [3] 3/16 4/2 4/7
response [5] 8/17 19/5 34/18 50/8 100/21
responses [1] 103/19
responsive [2] 47/21 106/3
rest [2] 32/4 72/5
restate [1] 32/1
restored [1] 43/5
restriction [1] 46/4
restrictions [1] 92/18
result [1] 81/23
retaining [1] 49/24
return [1] 35/24
returns [1] 105/9
rev [2] 64/13 64/16
rev share [2] 64/13 64/16
reveal [1] 96/23
revealed [1] 80/14
revenue [23] 38/2 38/3 38/7 38/8 38/10 38/12 38/24 39/10 39/14 41/7 47/15 55/20 59/3 61/10 61/15 63/11 63/23 63/24 64/10 66/10 70/2 74/8 74/25
revenues [1] 68/23
review [11] 18/11

referenced [1] 21/13 85/13
21/13 21/18 21/23 27/9 50/9 103/6 109/7
revisit [1] 37/10
RFP [1] 79/19
RFPs [2] 29/11 50/7
right [85] 6/12 6/15 7/11 7/18 7/24 9/18 12/18 15/10 15/11 16/5 16/23 18/13 19/23 21/3 24/8 24/14 25/14 26/10 26/25 27/8 30/12 30/15 30/17 30/19 30/19 34/14 36/3 36/11 36/14 38/4 39/2 42/9 44/3 44/11 44/16 46/24 47/2 47/9 48/9 49/24 54/23 58/7 59/23 62/15 65/21 66/15 68/9 68/10 69/9 69/11 69/13 71/3 72/5 73/8 73/12 74/1 74/3 74/5 77/19 77/22 79/6 79/15 80/4 81/20 83/2 84/8 84/18 84/20 87/8 91/8 95/23 96/21 96/24 97/9 98/20 99/19 101/23 102/8 102/23 106/12 107/2 110/3 111/21 112/1 112/4
rights [6] 57/16 59/10 64/4 66/4 67/8 67/22
rise [5] 6/2 14/11 79/8 79/11 112/5
risk [2] 34/14 70/3
rivals [1] 81/10 81/10
RMR [2] 113/2 113/8
Road [1] 3/17
role [1] 64/19
room [1] 101/8
ROPES [2] 3/7 8/6
ropesgray.com [1] 3/10
round [1] 96/18
rule [5] 33/20 67/17 68/13 72/7 110/10
Rule 24 [2] 68/13 72/7
rules [1] 66/2
ruling [5] 72/17 72/22 73/2 77/23 77/24
run [5] 11/9 15/3 16/8 35/25 46/9
running [4] 14/16 39/8 98/5 109/20
runs [1] 38/4

**S**

safeguarding [1] 75/19
safeguards [1] 91/2
safely [1] 92/19
said [18] 11/19 13/9 22/15 23/17 23/20 32/2 38/5 40/24 41/12 49/19 66/14 71/14 82/5 84/16 84/22 94/22 96/3 107/9
sale [1] 10/10
Sallet [9] 2/13 6/10 36/7 44/10 72/2 76/7 93/22 100/22 111/3

referenced [1] 21/24 23/24
26/22 32/16 35/4 43/25 46/24 56/9 56/12 59/10 62/11 62/20 65/5 82/24 89/3
Samsung [2] 62/16 65/13
San [3] 4/10 4/15 7/6
Sara [4] 2/8 48/15 87/20 87/23
Sarah [1] 4/13
sarah.ray [1] 4/16
sat [2] 95/24 98/24
satisfied [4] 28/17 60/3 60/5 86/18
Save [2] 108/10 108/11
saw [1] 45/12
say [47] 10/8 14/16 21/2 21/16 21/25 23/16 23/18 23/20 28/9 29/22 35/12 41/9 41/10 43/9 48/2 50/22 54/1 59/17 59/18 60/7 60/12 60/16 61/12 62/18 63/13 65/13 65/19 68/4 71/12 72/14 73/14 74/3 75/24 81/9 83/3 85/7 85/25 88/21 89/8 89/15 91/21 92/7 92/15 92/18 94/20 94/25 95/3
saying [12] 33/8 38/14 44/5 57/5 68/13 72/21 73/3 73/18 73/19 86/22 88/23 99/11
says [20] 21/5 36/16 36/23 36/24 37/9 37/11 37/20 38/1 38/15 50/20 69/15 69/16 69/19 70/11 72/25 73/23 74/24 77/4 88/24 95/1
schedule [34] 34/13 44/8 49/8 52/5 102/1 102/2 104/5 104/8 107/14 108/7
scheduled [2] 102/18 102/23
scheduling [2] 101/24 108/4
Schmidtlein [16] 3/2 6/11 24/17 44/11 45/23 55/11 61/12 70/4 76/8 83/11 93/20 94/19 95/11 97/22 108/5 111/5
scope [13] 8/20 9/3 10/8 14/21 20/7 20/13 22/17 22/17 23/14 44/21 45/2 84/19 86/12
se [1] 46/18
search [42] 8/16 11/9 13/13 14/20 14/25 15/3 15/5 15/16 15/16 15/20 19/11 20/1 20/7 20/8 20/15 23/21 25/2 26/23 30/1 37/22 38/6 38/6 39/6 40/25 45/10 45/16 46/9 53/20 53/21 53/23 53/24 54/16 55/23

search... [9] 57/11
57/17 64/25 73/24 74/2
74/6 77/8 81/2 89/11
searches [13] 9/5 9/18
9/20 10/1 11/1 13/10
13/16 14/15 16/8 16/17
17/5 18/3 64/11
searching [1] 18/5
season [1] 13/12
seat [2] 30/21 97/16
seated [2] 6/4 79/13
second [10] 19/21
31/17 33/14 68/9 72/24
73/19 79/19 81/7 83/1
84/13
Second Circuit [1]
72/24
second-guess [1]
84/13
Secondly [2] 37/20
94/8
Section [2] 2/9 2/14
security [1] 81/5
see [26] 6/13 8/8 14/10
17/7 17/10 19/8 21/13
21/15 24/10 28/6 30/6
30/8 34/5 43/14 56/1
63/8 78/25 79/6 86/10
86/20 86/23 99/16
101/1 111/20 112/2
112/4
seek [8] 29/11 51/5
51/12 74/14 74/15
74/21 76/2 76/2
seeking [11] 11/2
20/10 28/18 46/10
50/13 52/20 85/21 86/8
86/9 86/9 97/20
seeks [2] 37/12 72/25
seem [5] 15/18 34/23
83/20 93/9 101/10
seems [16] 11/15
13/10 22/23 23/22
25/23 28/21 29/6 35/5
55/18 63/19 80/7 87/1
88/8 88/20 90/5 93/1
seen [5] 19/13 25/1
42/3 52/16 99/2
sees [1] 25/21
selected [1] 13/19
selection [1] 29/6
selections [1] 47/20
senior [2] 10/2 22/25
senior VP [1] 22/25
sense [15] 10/15 13/17
14/21 18/1 37/4 39/3
45/19 50/20 63/9 63/20
88/9 89/24 91/15 91/17
99/11
sensible [1] 29/6
sensitive [2] 80/18
81/15
sent [1] 87/16
separate [2] 13/16
85/16 93/23
separately [1] 66/9
serious [1] 85/11

seriously [1] 72/8
serve [6] 50/14 50/16
98/9 98/10 98/12 100/8
served [1] 98/1
service [2] 50/12 75/7
Services [1] 2/9
session [2] 6/3 79/12
set [8] 41/5 43/3 43/3
47/7 50/7 66/1 102/2
112/3
setting [1] 7/15
settles [1] 61/18
seven [2] 51/21 67/16
several [1] 61/4
shape [1] 108/15
share [22] 35/21 38/7
38/8 38/10 38/12 38/24
39/10 41/7 47/15 55/20
59/4 61/10 61/15 63/11
63/23 64/13 64/16
66/11 74/8 74/25 83/16
85/17
shares [1] 71/9
sharing [4] 38/2 38/3
82/11 86/25
shelf [1] 83/16
Shevelenko [2] 26/3
26/5
short [5] 13/22 20/21
22/6 41/23 44/7
shorted [1] 105/25
shortly [1] 43/24
should [23] 21/2 22/15
25/16 25/17 33/4 35/6
39/9 40/15 44/1 66/14
73/15 85/4 85/24 87/16
92/15 92/16 93/2 96/10
100/3 101/15 106/11
108/21 110/8
shouldn't [4] 22/7
22/10 57/5 89/12
show [5] 32/12 72/10
79/20 86/6 86/13
side [1] 60/11
sideline [2] 55/3 55/5
sidelines [2] 41/2 41/7
significance [1] 28/21
significant [5] 32/10
41/13 41/15 41/16
81/21
significantly [2] 31/18
33/16
similar [1] 86/2
simply [3] 77/16 81/9
83/3
since [8] 19/13 24/24
69/8 72/12 72/12 76/12
107/8 108/12
single [3] 51/9 55/22
86/8
singled [2] 56/18 68/17
singling [1] 67/20
sit [5] 44/2 45/23 70/16
93/15 101/19
situated [1] 34/18
situation [3] 13/18
68/10 68/16
six [1] 68/1

skip [1] 104/25
slightly [1] 15/4
small [3] 87/13 87/13
111/4
Smoke [1] 69/18
snatched [1] 18/22
so [143]
So I think [1] 30/15
so it's [2] 9/13 54/3
So that's [1] 32/21
sole [2] 41/6 41/15
solution [1] 52/18
some [55] 7/14 8/21
9/3 9/23 11/22 12/16
14/18 16/8 16/10 18/19
18/20 18/22 19/22
22/16 23/18 23/21 26/9
30/22 33/6 38/15 41/13
42/14 43/8 45/10 49/20
50/3 50/9 55/16 63/20
65/22 73/4 81/3 82/10
82/10 88/8 89/24 90/4
90/12 90/13 91/15
91/17 92/7 93/2 93/9
93/12 95/4 97/5 99/4
99/5 101/12 105/8
107/5 108/15 108/18
109/6
somebody [7] 12/2
12/16 13/14 89/12
91/21 96/10 99/18
someone [3] 13/20
28/14 65/23
something [13] 13/13
15/14 22/22 24/9 25/3
28/6 28/16 28/20 42/6
58/13 85/10 100/11
103/22
sometimes [2] 7/16
111/8
somewhere [1] 15/5
soon [3] 92/5 103/16
112/4
sorry [10] 15/22 16/17
17/3 27/4 73/10 85/7
87/22 91/13 91/14
104/23
sort [17] 8/4 11/10
12/25 14/13 14/19
17/24 18/22 19/2 20/17
20/25 29/4 30/22 49/11
82/11 84/12 84/13 93/4
sound [1] 20/17
sounds [2] 71/17 71/24
source [2] 21/19 30/3
sources [1] 63/24
South [1] 2/4
speak [3] 83/1 85/2
85/3
speaking [2] 8/13
90/11
special [1] 75/21
specific [5] 37/5 51/7
67/12 75/15 86/21
specifically [6] 35/3
45/4 51/10 63/6 69/19
72/23
specified [1] 82/6

splash [1] 94/20
splice [1] 11/24
split [1] 108/15
spoke [2] 12/24 26/6
spots [1] 35/21
squeeze [1] 103/7
Srinivas [5] 25/17 26/6
26/6 26/10 29/7
St [2] 3/4 4/9
stage [3] 36/21 58/22
67/15
stand [6] 8/2 13/15
14/10 54/6 60/22 65/9
standard [2] 41/12
60/5
stands [2] 9/25 112/5
start [19] 7/25 9/6 31/6
49/9 49/17 79/18 93/19
97/18 98/8 99/15 100/6
100/19 100/21 100/25
101/4 101/17 102/16
102/18 102/19
started [4] 9/21 11/10
35/24 104/24
starting [2] 102/11
105/1
starts [1] 96/20
state [8] 2/13 32/6
48/11 58/9 80/20 89/19
90/16 98/23
stated [3] 12/6 69/13
69/22
statement [1] 71/20
statements [3] 24/25
25/18 28/13
states [12] 1/1 1/3 1/10
2/2 6/7 31/8 33/11
78/12 80/2 87/21 94/14
95/22
states' [1] 95/25
status [10] 1/9 8/14
12/6 24/3 30/7 58/2
59/2 78/2 79/16 94/25
stay [1] 110/2
staying [1] 41/6
stenography [1] 5/6
step [1] 10/17
still [17] 8/3 14/16
18/24 27/1 30/8 39/9
47/14 55/6 55/20 55/20
55/21 61/14 61/18
82/24 91/17 91/20
104/8
stonewalled [1] 94/20
stood [2] 58/13 62/4
stop [3] 40/16 89/9
106/19
stopped [1] 42/10
story [1] 89/10
strategic [2] 70/21
70/23
strategy [5] 22/24
29/13 29/18 70/16
70/21
Street [7] 2/4 2/10 3/8
3/13 4/4 4/14 4/18
string [1] 84/13
strings [2] 23/14 25/2

strip [1] 88/18
struck [1] 107/16
struggling [1] 55/6
stuck [1] 79/23
studies [1] 15/19
study [1] 67/10
stuff [2] 20/22 90/4
subject [6] 29/20 58/14
64/5 64/6 82/5 104/18
subjects [1] 22/9
submission [2] 25/2
39/13
submissions [6] 17/18
102/22 103/6 103/18
106/2 106/3
submit [8] 24/9 27/18
27/22 28/4 29/2 30/7
51/11 52/11
submits [1] 25/17
submitted [4] 24/25
31/12 36/12 53/18
subpoena [12] 10/19
10/20 10/21 12/12
15/12 16/4 17/25 19/6
19/7 19/8 19/15 21/6
substantial [3] 9/14
16/4 17/23
substantially [1] 63/12
substitute [2] 13/20
19/19
such [4] 41/12 67/3
69/24 74/25
sufficient [9] 22/1 22/2
56/7 57/21 75/25 79/20
86/6 86/13 94/10
sufficiently [1] 91/19
suggested [2] 24/17
71/4
suggesting [1] 22/6
suggestion [1] 12/6
Suite [7] 2/4 2/16 3/18
4/4 4/9 4/15 4/19
summary [2] 86/7
86/10
supplement [1] 58/17
support [4] 31/12
70/13 75/2 92/12
supports [1] 56/7
supposed [8] 59/25
96/3 96/5 96/7 96/7
102/3 102/16 102/24
sure [23] 7/9 7/23 9/8
10/16 12/4 22/18 40/9
46/16 54/6 60/19 62/25
63/10 70/14 72/21
73/17 76/15 80/13
85/12 87/15 89/14 92/9
93/11 93/22
surprise [1] 101/25
Surprising [1] 109/3
surprisingly [1] 109/3
suspect [1] 28/15
swear [1] 93/10
Sysco [1] 106/24

T

table [1] 95/4
tack [1] 103/4

**take [22]** 6/20 15/1
19/2 22/7 25/20 34/2
40/18 45/15 51/1 72/16
78/1 78/18 95/5 102/22
104/10 107/22 108/12
108/20 108/25 109/21
110/2 110/6
**taken [1]** 109/4
**takes [5]** 22/13 24/14
30/16 54/6 85/10
**taking [5]** 10/17 39/17
50/6 75/9 109/7
**talk [13]** 7/13 13/23
14/7 30/17 44/25 45/3
49/5 56/11 87/8 89/16
90/17 96/3 102/20
**talked [6]** 68/18 72/7
87/5 88/6 88/11 89/5
**talking [11]** 14/23 15/8
17/1 23/1 44/23 49/3
88/20 89/22 96/16
100/14 100/16
**talks [1]** 92/23
**targeted [3]** 20/23
56/19 63/6
**targets [2]** 45/4 53/5
**team [3]** 21/11 81/14
86/22
**tech [2]** 19/7 19/9
**technical [1]** 90/5
**technically [1]** 107/25
**technology [4]** 2/9
29/1 29/13 29/16
**tell [14]** 12/15 18/15
34/10 40/2 40/4 43/19
52/21 54/18 54/19 56/1
62/14 83/14 100/7
105/10
**telling [1]** 98/8
**temporally [3]** 18/20
22/18 23/15
**ten [11]** 32/19 33/25
40/17 57/1 59/11 64/4
64/6 77/11 103/25
103/25 104/15
**term [5]** 15/3 15/16
42/7 56/21 57/2
**terms [36]** 8/2 8/16 9/3
10/14 11/9 14/14 14/20
18/17 20/8 20/15 20/19
22/14 22/17 23/14
26/23 40/1 41/24 42/17
44/21 46/21 47/1 47/15
49/12 51/1 61/22 62/19
64/15 76/3 77/6 88/15
89/4 89/5 89/17 92/4
92/7 93/7
**terrific [2]** 7/8 7/11
**test [4]** 34/21 81/12
83/4 89/16
**tested [1]** 25/4
**testified [1]** 31/11
**testify [8]** 11/7 11/16
12/11 20/4 25/25 30/4
43/17 57/22
**testifying [1]** 13/11
**testimonies [1]** 41/11

**testimony [20]**
18/9 18/23 23/2 35/23
37/18 45/13 47/3 51/21
53/6 53/10 53/11 53/16
54/3 58/15 58/20 59/21
71/10 84/5 103/3
**testing [4]** 9/23 14/18
58/14 84/6
**text [2]** 18/21 77/8
**than [29]** 13/13 15/17
23/4 30/15 33/3 33/24
34/19 34/24 35/20
35/21 41/9 49/5 53/23
54/10 55/12 58/5 58/6
60/21 60/23 63/12
63/20 64/14 70/8 87/2
87/6 96/6 103/22
106/11 107/16
**thank [44]** 7/4 7/11
24/7 24/11 24/12 24/23
26/16 30/11 30/12
30/13 30/14 31/7 44/10
48/13 48/20 56/10 69/2
69/3 71/25 72/1 76/6
76/7 76/16 77/19 77/20
77/21 78/14 79/5 79/7
79/13 85/19 86/16
86/17 101/22 104/4
106/8 106/23 107/1
111/2 111/18 111/23
111/24 112/1 112/4
**thank you [37]** 7/4
7/11 24/7 24/11 26/16
30/11 30/12 30/13
30/14 44/10 48/13
48/20 56/10 69/2 69/3
71/25 72/1 76/6 76/16
77/19 77/20 77/21
78/14 79/5 79/7 85/19
86/16 86/17 101/22
104/4 106/23 107/1
111/2 111/18 111/24
112/1 112/4
**that [600]**
**That should [1]** 106/11
**that's [106]** 6/23 6/24
6/25 9/5 12/8 12/25
13/8 13/16 13/19 15/1
15/7 16/12 17/4 21/15
21/15 22/2 22/3 23/21
26/3 26/9 27/7 27/15
30/4 31/3 32/21 34/20
35/15 38/16 40/7 42/1
42/14 42/24 44/3 44/22
44/23 47/21 47/25
49/20 54/18 54/22 55/3
55/25 56/1 61/16 61/17
61/20 61/23 61/23 64/9
64/12 64/12 66/15
66/21 68/12 68/16
68/18 68/19 69/15
69/18 69/18 70/10
70/10 70/14 70/22
71/22 71/23 73/1 73/5
73/18 73/20 74/5 74/9
74/9 74/18 76/20 81/21
82/12 83/7 83/9 85/5
85/8 87/9 88/5 88/20

**their [35]** 10/2 15/6
24/25 31/13 32/7 32/19
34/7 35/1 35/3 35/11
35/15 35/18 35/19
35/22 38/22 41/10
44/21 45/11 57/3 57/4
59/3 64/7 66/6 68/17
70/9 70/19 70/21 70/24
81/11 81/25 96/3 96/8
109/5 109/13 110/11
**them [40]** 15/4 19/13
20/12 20/20 25/21 26/2
26/7 32/15 33/15 38/23
42/23 43/8 45/3 46/14
62/11 63/16 66/9 75/5
78/7 78/9 83/16 83/17
88/21 97/6 98/1 99/20
99/21 99/25 99/25
100/8 101/9 101/14
101/16 101/17 108/10
109/7 110/2 110/3
110/6 110/24
**themselves [2]** 32/19
68/17
**then [49]** 7/24 9/6
10/14 14/14 18/2 18/20
19/13 22/15 23/12
23/12 24/10 24/15
27/22 28/6 28/16 36/19
37/16 38/19 42/12 43/2
43/22 44/1 44/15 47/23
53/3 53/5 57/21 60/5
68/1 73/19 78/1 78/9
79/3 79/15 80/21 85/3
85/4 88/1 93/15 96/23
96/25 96/25 97/17
98/17 99/21 101/9
103/11 106/21 109/6
**theory [1]** 46/8
**there [72]** 14/13 15/11
19/8 19/10 19/10 19/18
19/22 20/4 20/19 21/14
25/10 25/24 26/1 26/1
28/13 31/6 32/10 32/18
35/10 39/1 40/9 40/10
41/13 41/20 41/21
42/15 44/4 49/9 54/9
54/10 54/14 54/16
56/16 57/22 58/23 59/1
61/2 61/5 62/15 66/3
68/12 71/3 72/13 72/20
72/23 78/7 79/17 79/18
83/12 84/10 88/6 93/19
95/18 95/19 95/22 97/4
98/25 99/4 99/6 99/6
99/23 101/17 102/15
104/21 106/3 107/3
107/15 108/21 109/23
110/21 110/22 111/21
**there's [29]** 7/1 9/3
13/20 13/24 14/3 25/13

95/2 98/19 99/16 99/23
100/11 101/10 102/16
102/19 103/13 105/3
105/6 105/24 106/10
107/24 108/21 110/10
111/15 111/19
**these [43]** 6/17 7/15
7/16 7/20 7/22 11/17
12/16 17/11 17/11
22/17 22/21 28/20
32/14 33/8 35/4 43/21
47/18 62/17 69/16
75/17 80/20 82/19
84/11 89/10 89/16
89/24 90/16 91/23
92/18 94/20 95/6 96/13
97/2 97/10 100/23
101/8 101/13 108/7
108/25 109/9 109/10
109/17 109/20
**they [120]**
**they'd [1]** 35/11
**they'll [1]** 101/9
**they're [18]** 13/14 16/8
33/8 44/22 46/18 57/5
60/14 61/11 71/17
73/13 75/3 84/9 84/15
95/18 96/23 98/4
108/11 111/1
**they've [8]** 14/23 15/4
16/6 26/23 32/2 56/16
105/11 105/13
**thing [10]** 12/5 17/4
45/8 54/8 54/20 65/19
81/18 83/6 89/3 100/2
**things [25]** 9/16 13/4
19/14 24/17 25/8 33/19
42/19 49/4 52/10 55/11
55/13 56/16 58/5 62/7
84/3 84/9 86/14 88/23
89/24 92/15 98/9 102/2
102/12 103/8 107/5
**think [102]** 6/20 7/14
7/24 8/14 8/19 9/1 9/18
10/18 11/6 12/25 13/13
14/16 17/22 18/1 18/7
19/19 20/3 20/24 22/4
23/3 23/5 26/8 26/10
27/18 28/3 29/10 29/19
30/15 31/19 31/21
32/17 33/16 37/7 37/13
39/9 41/12 41/23 42/18
42/22 44/16 46/11
47/24 47/25 47/25 49/7
50/11 50/15 50/15
51/20 51/23 52/2 52/4
52/8 52/18 52/22 52/23
54/8 54/13 55/15 56/6
56/16 59/16 59/25
60/14 61/8 64/23 65/1
65/7 65/9 65/12 67/17
67/18 67/19 67/25 68/6
68/12 68/15 77/24 78/8
78/9 78/15 79/25 80/24
84/1 84/5 84/17 89/7
90/19 92/11 92/15 93/5
99/24 101/13 101/19
102/21 103/17 103/19

128

**thinking [5]** 26/15
26/17 80/18 88/9 92/3
**thinks [2]** 53/24 105/7
**third [17]** 3/11 34/4
34/8 57/6 71/16 82/3
82/16 83/8 87/1 88/12
89/16 90/17 91/3 96/3
109/2 109/21 110/11
**Third Circuit [1]** 75/16
**third-party [1]** 3/11
87/1 109/21
**this [176]**
**Thomas [1]** 98/22
**those [73]** 6/21 6/23
6/24 7/15 8/21 9/16
11/3 12/24 15/19 17/20
18/2 18/7 18/10 19/2
19/11 20/20 21/12
21/13 25/16 28/18 29/5
29/19 32/16 33/19
33/23 33/25 34/7 34/12
35/2 35/10 35/21 35/21
40/1 40/12 40/16 41/25
42/16 43/6 43/17 43/25
47/11 47/20 48/25 50/2
50/8 50/8 50/10 51/1
51/21 55/16 61/21
66/21 68/7 69/10 73/25
83/25 85/6 85/9 85/15
86/7 88/23 89/12 90/6
92/7 93/9 93/13 97/23
102/11 103/18 107/13
107/18 109/4 109/4
**though [2]** 72/24
107/20
**thought [5]** 41/16
54/24 59/13 97/20
101/14
**thousands [5]** 15/9
16/22 16/24 18/12
18/12
**threat [1]** 64/1
**threatened [3]** 62/5
67/22 68/21
**threatens [2]** 69/20
105/14
**threats [2]** 33/8 33/8
**three [31]** 10/1 15/7
19/9 20/25 21/4 25/15
25/16 26/11 27/4 28/17
28/18 28/20 29/10
29/14 29/19 32/3 35/9
44/22 46/6 47/6 49/19
49/21 51/13 51/15
51/20 51/21 57/5 55/14
56/16 64/10 86/13
**three-party [1]** 20/25
**through [12]** 11/5
29/23 42/5 42/7 43/4
48/7 61/22 67/18 67/22
71/5 92/12 94/4
**throughout [1]** 103/1
**throw [1]** 81/25
**thus [1]** 105/24
**tie [2]** 55/14 60/14
**tie-up [1]** 55/14

129
T Q A?M v7/1 Decument 114-12 1 Filed 03/07/25 Page 129 of 130
Case 1:20-cv-03010-APM Document 1184-12 Filed 03/07/25 Page 129 of 130

**till [3]** 23/8 23/9 106/1
**timber [2]** 75/8 75/19
**time [24]** 8/25 9/3 10/1 10/6 14/20 20/17 20/21 21/24 23/4 40/17 52/3 54/9 69/11 71/15 77/14 86/12 101/9 102/14 103/13 103/14 105/21 106/4 106/11 107/1
**timeliness [2]** 31/20 72/8
**timely [2]** 66/13 66/22
**times [1]** 71/22
**timing [1]** 87/10
**titled [1]** 113/4
**today [16]** 6/14 8/16 9/16 17/16 20/14 20/16 54/10 54/16 58/11 59/17 60/24 61/3 62/3 74/8 88/6 108/6
**TODD [1]** 4/3
**together [2]** 30/9 84/13
**told [1]** 16/7
**ton [1]** 99/13
**too [9]** 22/3 22/7 26/7 35/2 44/21 55/11 83/20 90/23 105/24
**took [2]** 47/5 104/15
**topic [3]** 24/18 30/18 35/12
**topics [2]** 11/6 107/13
**total [1]** 104/19
**touch [2]** 22/9 25/10
**touching [1]** 27/15
**towards [3]** 14/6 36/2 42/22
**Tower [1]** 3/7
**tracked [1]** 53/18
**traffic [2]** 15/21 109/14
**transcript [3]** 1/9 5/6 113/3
**transcription [1]** 5/7
**translates [2]** 81/17 82/8
**travel [1]** 108/9
**treat [1]** 62/11
**treated [1]** 85/4
**tremendously [1]** 85/11
**Trent [6]** 2/8 87/20 87/23 87/24 95/1 96/2
**trial [33]** 12/12 13/11 20/5 31/5 40/11 44/6 44/17 49/18 51/12 51/13 51/19 53/9 67/16 68/2 84/6 89/13 89/18 90/7 91/20 92/6 94/9 102/22 103/20 103/24 104/11 106/2 106/10 106/16 107/22 110/25
**trick [1]** 28/19
**tried [5]** 33/24 46/13 48/4 77/13 90/19
**trouble [1]** 95/1
**true [5]** 12/8 34/19 61/20 84/25 95/2

**Trust [1]** 105/20
**try [6]** 23/15 70/21 79/23 83/3 83/22 111/7
**trying [12]** 35/25 37/14 42/24 71/14 72/15 73/4 84/13 84/15 89/24 91/17 109/5 109/13
**Tuesday [4]** 27/22 28/7 30/8 30/9
**turn [4]** 16/15 48/9 71/12 79/15
**turned [1]** 15/18
**turning [1]** 48/20
**tweak [1]** 55/12
**tweaks [1]** 55/16
**two [46]** 6/23 7/25 10/2 13/4 14/22 20/14 21/25 31/4 31/9 34/11 34/11 35/8 37/5 39/1 39/2 44/12 44/15 44/22 46/4 46/7 46/25 49/18 51/16 52/10 53/13 54/2 56/21 61/15 64/8 64/9 73/6 75/14 87/4 88/1 88/6 89/10 96/23 98/9 98/10 101/18 102/10 102/23 103/6 105/6 106/7 109/4
**two-week [1]** 102/10
**type [2]** 41/20 64/2
**types [5]** 80/15 84/1 84/11 92/18 93/13

**U**
**U.S [5]** 2/8 75/7 89/19 90/16 106/24
**Uh [1]** 11/14
**Uh-huh [1]** 11/14
**ultimate [2]** 33/18 57/20
**ultimately [1]** 46/10
**unacceptable [2]** 60/8 60/9
**uncertain [1]** 95/19
**unconditional [3]** 38/7 38/10 38/12
**uncontested [1]** 26/2
**under [11]** 33/20 45/11 62/19 64/6 72/7 73/21 80/10 80/20 81/4 92/3 99/22
**understand [25]** 6/16 6/17 10/18 12/22 13/19 18/14 25/5 28/13 31/4 34/17 43/16 55/6 62/13 80/5 81/17 82/2 82/8 93/18 98/3 99/9 104/17 105/15 105/20 108/18 108/19
**understandable [1]** 59/9
**understanding [3]** 27/21 45/24 95/15
**understood [10]** 21/10 22/12 23/6 23/23 28/24 42/11 47/12 83/17 95/14 99/7

**undoubtedly [1]** 58/19
**unfold [2]** 58/10 58/15
**unique [13]** 26/24 28/16 36/10 37/4 53/16 54/3 56/1 62/6 64/19 65/16 66/19 68/16 70/10
**uniquely [7]** 51/7 52/8 52/23 59/4 62/5 65/2 68/21
**uniqueness [2]** 56/11 56/15
**Unit [1]** 2/14
**UNITED [10]** 1/1 1/3 1/10 2/2 6/7 31/8 33/11 78/12 80/2 87/21
**United States [3]** 31/8 33/11 78/12 80/2 87/21
**universe [2]** 26/20 26/21
**unknowable [1]** 97/6
**unlawful [1]** 73/16
**unless [8]** 7/1 28/19 30/3 30/3 63/15 88/5 91/17 92/5
**unlikely [1]** 29/19
**unreasonable [1]** 101/10
**unredacted [1]** 78/23
**unsuccessfully [1]** 76/2
**until [2]** 96/21 106/22
**unusual [1]** 11/15
**unworkable [1]** 97/2
**up [29]** 8/4 11/12 12/1 12/25 13/14 15/18 17/20 28/6 32/12 35/7 38/20 39/20 39/22 41/5 47/24 48/11 54/22 55/14 55/22 65/9 68/1 78/1 87/24 88/21 91/21 96/21 96/21 98/14 98/18
**update [4]** 24/3 24/24 27/23 28/6
**upon [1]** 64/11
**urge [1]** 101/5
**us [25]** 24/15 26/10 28/5 29/6 31/22 67/20 67/20 68/17 81/12 83/3 90/9 90/12 90/13 94/5 96/9 97/7 98/14 99/8 103/5 103/5 103/25 104/21 104/24 106/10 108/9
**usdoj.gov [2]** 2/6 2/11
**used [1]** 19/11
**user [7]** 80/18 81/5 81/25 82/12 85/12 91/3 92/19
**users [3]** 66/11 68/24 88/16
**users' [2]** 81/15 82/20
**using [1]** 47/8

**V**
**vague [2]** 49/20 95/19

**value [14]** 39/24 40/23 41/22 42/1 42/6 42/11 42/12 45/5 57/1 59/11 77/5 81/1 89/8 89/9
**variety [1]** 40/13
**various [3]** 7/17 85/2 109/24
**vast [2]** 11/3 11/3
**vehemently [2]** 47/12 48/4
**Verizon [1]** 62/17
**versus [5]** 6/8 75/7 76/24 83/8 84/16
**very [35]** 8/19 20/3 20/6 20/9 31/23 33/3 33/24 34/9 37/7 44/7 44/7 46/12 48/5 48/5 48/21 51/10 52/25 69/22 72/3 72/3 72/12 72/23 73/20 74/13 75/3 75/4 75/15 75/21 86/13 100/14 103/8 103/10 105/11 109/15 109/15
**vexing [1]** 13/18
**videos [1]** 104/14 104/14
**view [3]** 37/5 54/17 108/10
**Vilsack [1]** 70/22
**virtually [2]** 37/18 94/16
**vision [1]** 29/17
**Vilsack [1]** 70/22
**VP [1]** 22/25
**vs [1]** 1/5

**W**
**wait [1]** 96/7
**waiting [3]** 34/5 34/6 48/10
**walked [1]** 67/18
**want [49]** 12/5 19/8 20/22 21/4 22/10 25/9 25/9 25/10 30/7 30/22 32/2 32/3 38/16 41/3 45/20 47/17 48/18 48/20 53/20 54/18 54/21 55/11 55/12 55/25 58/3 61/17 61/17 62/16 71/15 74/7 76/8 76/14 77/23 80/7 82/3 84/10 88/11 93/24 98/11 99/20 100/7 100/7 100/9 101/12 107/17 110/1 110/6 110/14 111/14
**wanted [6]** 36/3 48/25 94/21 107/8 107/9 107/25
**wants [8]** 25/20 37/9 38/18 40/18 43/20 61/16 84/24 95/6
**WARDWELL [1]** 3/17
**warranted [1]** 13/14
**warrants [1]** 77/10
**was [42]** 6/13 7/10 10/5 12/6 15/4 19/6

**uncertainties [1] 119:12**
**22/18 41/4 41/6 41/8 41/12 41/13 41/16 42/15 53/19 54/11 54/24 65/13 65/14 66/13 67/15 69/18 70/3 70/22 72/13 72/15 72/20 72/21 75/15 89/7 94/23 96/1 97/13 97/14 98/13 98/14 98/22 104/12 104/19
**Washington [9]** 1/5 2/10 3/4 4/5 4/19 5/5 109/17 110/3 110/9
**wasn't [1]** 99/6
**waste [1]** 23/4
**WATKINS [3]** 4/14 4/18 48/15
**way [36]** 19/18 24/24 25/21 27/19 30/20 39/24 40/21 42/12 42/24 55/9 55/12 61/3 61/6 62/11 62/20 63/5 65/16 67/10 68/22 73/12 77/6 82/4 83/15 84/18 90/8 90/9 90/11 94/12 95/7 98/20 101/2 105/25 108/15 109/22 111/15 111/20
**ways [9]** 35/2 35/10 37/5 55/13 55/23 57/22 58/20 71/3 71/10
**wc.com [1]** 3/5
**we [343]**
**we believe [6]** 33/19 36/11 37/2 44/8 82/17 86/3
**we don't [1]** 58/10
**we question [1]** 104/16
**We talk [1]** 90/17
**we think [1]** 56/6
**We wanted [1]** 107/25
**we will [7]** 47/18 48/6 92/22 104/5 104/10 109/19 112/2
**we'd [2]** 50/16 105/5
**we'll [18]** 11/24 24/10 30/8 32/18 40/10 40/24 44/3 44/3 77/24 78/1 99/16 100/6 100/24 101/4 106/5 106/19 106/21 112/4
**we're [67]** 6/6 8/19 9/19 11/8 13/22 13/23 13/25 14/3 14/5 14/7 14/22 14/23 15/8 18/10 29/14 32/22 32/24 33/1 33/2 34/9 34/13 35/12 35/20 40/9 44/24 49/3 50/8 50/11 50/13 52/14 52/20 53/7 54/9 63/16 71/21 71/23 72/21 80/25 85/21 86/8 86/9 86/9 86/11 88/20 89/22 89/23 91/19 94/4 95/1 96/20 96/22 96/25 98/17 98/18 100/16

**we're...** [12] 102/8
102/18 102/23 104/21
105/8 107/13 108/7
109/5 109/11 109/19
109/20 109/22
**we've** [32] 6/15 7/14
9/16 9/23 11/5 14/18
17/6 17/8 18/7 20/6
34/4 34/8 45/3 48/24
52/16 56/21 68/8 73/3
77/13 84/1 85/14 86/12
88/6 90/22 95/3 98/4
107/12 107/13 107/17
107/21 108/9 108/15
**Wednesday** [4] 23/9
23/11 24/6 33/7
**week** [22] 11/8 15/23
15/24 18/1 23/8 24/6
24/10 50/22 96/12
102/3 102/10 102/21
103/2 103/9 103/12
103/16 105/3 105/5
105/6 106/16 106/20
106/21
**weekend** [1] 112/2
**weeks** [8] 20/14 21/5
21/25 33/25 61/5
101/18 102/24 103/6
**weighing** [1] 52/15
**weighs** [1] 86/1
**welcome** [2] 8/12
26/25
**well** [24] 6/21 7/11
7/24 8/4 10/4 14/18
16/19 18/14 35/6 37/18
38/21 42/21 50/10 57/7
59/16 60/6 61/8 70/23
72/21 83/4 90/25 97/20
98/1 98/9
**well-thought-out** [1]
97/20
**went** [1] 69/8
**were** [27] 6/23 6/24
10/4 12/25 19/5 19/11
20/15 26/19 31/5 36/20
37/19 42/16 44/12
44/15 50/15 54/10 60/7
75/9 84/16 84/17 98/25
99/3 99/3 99/4 104/7
104/20 111/13
**West** [1] 110/9
**what** [167]
**what's** [6] 23/1 24/18
45/2 64/18 94/16
101/15
**whatever** [10] 21/22
29/24 55/2 55/15 61/13
80/8 84/25 103/2 104/5
104/21
**when** [35] 9/6 13/14
14/25 15/3 15/22 16/14
16/16 21/16 25/5 28/4
32/15 33/4 33/5 35/9
52/3 53/2 54/6 58/3
61/18 69/13 69/17
69/20 70/3 71/4 72/25
74/19 85/25 89/8 98/8

104/15 107/9 109/20
**whenever** [2] 30/7
53/15
**where** [38] 8/2 8/3 9/19
12/24 14/14 15/10
17/22 18/15 18/19 21/5
23/21 24/10 30/8 33/21
35/15 35/24 38/8 42/6
46/21 55/19 58/18 67/3
67/14 72/15 72/20
73/15 74/24 84/15
84/16 84/20 89/20
99/13 100/5 108/13
108/16 108/16 109/12
111/1
**where feasible** [1]
58/18
**whereas** [1] 62/6
**wherein** [1] 66/1
**whether** [34] 13/15
13/20 18/3 19/22 21/2
25/15 26/13 27/2 27/23
27/24 28/2 31/1 42/15
43/9 43/14 43/18 44/13
50/21 54/22 54/23 55/2
60/1 67/4 76/19 80/22
81/19 84/14 87/2 90/4
97/13 97/14 99/16
102/12 111/11
**which** [59] 15/3 15/16
24/3 28/9 29/23 31/22
33/20 34/3 34/17 36/2
36/23 36/24 37/14
38/22 39/8 40/25 41/4
41/18 41/21 42/1 42/6
43/4 43/4 43/17 44/25
53/19 59/2 59/2 59/3
59/4 62/2 62/19 65/16
65/17 66/23 67/10
67/14 67/18 67/22 68/1
68/2 68/10 68/21 68/22
70/11 70/11 70/22
72/18 78/7 82/3 82/5
83/12 83/18 86/2 94/5
96/18 102/23 103/24
105/10
**while** [6] 32/19 35/3
35/12 39/19 39/20
45/22
**Whinston** [1] 46/14
**whit** [1] 82/14
**who** [31] 13/11 14/9
19/16 20/22 22/8 22/9
22/21 22/24 23/11
25/25 29/1 29/15 29/16
31/11 32/4 36/21 64/15
79/20 80/8 80/10 86/6
87/22 92/18 94/14
94/14 96/5 98/5 98/22
98/23 107/17 110/9
**who's** [5] 10/23 12/2
12/16 13/20 48/9
**whoever** [1] 23/17
**whole** [2] 34/13 100/19
**wholeheartedly** [1]
100/20
**whose** [1] 76/3

22/18 31/6 34/18 37/6
41/18 45/15 48/11
48/24 49/3 57/21 60/4
66/22 68/16 68/18
68/19 69/12 79/18
80/10 80/12 80/21
89/12 92/10 93/18
94/22 95/17 97/12 98/8
98/13 98/19 111/20
**will** [66] 13/11 18/18
21/11 22/16 23/12
23/12 23/16 23/18
23/20 28/9 29/25 31/17
34/7 35/12 37/10 39/23
43/23 47/18 48/6 52/21
52/24 53/8 53/10 54/6
54/13 57/8 57/22 58/14
60/25 61/21 69/7 70/12
71/9 71/12 74/13 74/14
74/15 74/22 76/2 78/12
80/2 80/16 81/12 82/14
82/17 83/24 83/25 86/4
87/7 87/20 92/13 92/22
93/17 94/5 101/25
104/5 104/10 104/11
105/21 106/13 106/20
107/11 107/21 108/19
109/24 112/2
**William** [3] 5/2 113/2
113/8
**WILLIAMS** [1] 3/3
**willing** [3] 20/6 20/12
52/17
**willingness** [1] 14/15
**winning** [1] 70/25
**wipe** [1] 77/10
**wish** [2] 69/4 77/15
**wishes** [4] 36/17 54/4
54/7 73/22
**wishing** [1] 49/14
**within** [8] 15/5 15/14
17/5 83/7 101/17 104/5
104/7 104/9
**without** [5] 32/8 38/18
57/23 99/18 99/20
**witness** [37] 10/24
12/7 12/10 13/15 14/10
14/11 19/17 19/20
19/23 19/24 20/2 20/4
21/3 21/6 23/11 23/17
25/24 31/10 31/10
31/11 32/5 32/5 35/17
35/17 44/13 44/14 53/3
53/4 53/7 57/4 80/14
93/10 107/12 107/12
107/19 107/20 110/12
**witnesses** [38] 13/11
21/14 31/2 32/3 32/11
36/20 43/10 43/11
43/12 43/14 43/17
44/22 49/19 51/13
51/20 51/21 52/3 54/13
55/8 58/17 58/18 70/20
71/9 89/19 96/8 96/14
96/14 96/15 107/15
108/8 108/18 109/9
109/10 109/10 109/11

**won't** [3] 34/8 106/3
106/13
**word** [2] 43/2 76/12
**words** [7] 15/5 34/2
40/4 40/23 46/8 61/12
73/13
**work** [23] 11/22 20/6
20/12 20/20 24/6 28/6
32/25 52/14 64/13
90/14 90/19 90/20 91/6
92/10 93/14 94/17
95/13 99/13 104/5
104/7 108/7 109/14
109/21
**worked** [2] 39/22
111/12
**working** [3] 80/21
107/12 107/14
**works** [2] 64/12 104/5
**world** [1] 100/10
**worried** [9] 32/22
32/24 33/1 34/9 35/24
35/25 42/3 42/5 42/23
**worry** [1] 58/6
**worst** [2] 94/12 95/7
**would** [155]
**wouldn't** [5] 39/3 46/6
46/7 73/10 73/11
**wrestles** [1] 82/19
**write** [1] 103/2
**written** [14] 50/21
50/23 51/2 51/3 83/12
85/1 85/1 97/10 97/18
99/15 100/21 101/6
101/11 105/12
**wrote** [1] 100/2

**Y**

**Yeager** [4] 3/2 24/20
24/22 29/25
**yeah** [17] 10/7 12/20
15/2 15/25 16/9 16/21
16/21 16/21 22/2 36/5
41/17 47/10 51/1 83/6
87/12 87/15 89/22
**year** [6] 46/7 46/17
46/20 46/21 55/22
69/23
**years** [25] 10/1 10/6
10/12 15/1 15/2 15/7
15/8 15/13 20/9 20/10
22/18 40/17 46/6 54/12
55/14 55/16 57/1 59/11
64/4 64/6 66/15 67/16
70/17 77/11 95/20
**yes** [15] 6/19 6/25
14/12 18/25 34/19 39/4
41/23 43/3 43/25 47/14
52/17 66/3 78/4 82/5
94/24
**yet** [7] 8/22 27/12 57/4
75/3 76/3 98/2 101/14
**yield** [1] 26/24
**you** [323]
**you know** [66] 8/24
10/10 11/7 11/10 11/20
11/22 11/24 13/13

22/21 23/3 23/17 26/18
29/24 35/8 40/24 40/24
41/1 41/5 41/18 45/3
48/4 48/25 53/2 54/25
55/14 57/25 59/8 62/18
63/14 63/22 64/11
65/20 67/9 67/10 68/15
72/4 80/25 81/13 81/23
81/25 83/9 83/15 85/10
88/11 88/18 88/21 89/3
90/3 94/22 97/16 98/16
101/12 103/5 103/21
104/2 104/2 104/2
105/8 106/17 107/8
107/25 110/20 111/7
**you'd** [1] 103/4
**you'll** [3] 50/18 59/25
101/17
**you're** [26] 14/16 21/8
23/1 28/23 39/19 45/1
45/22 47/2 49/18 64/14
64/16 80/18 81/19
82/13 82/14 84/17
88/24 88/25 90/11
91/17 91/20 92/3 92/5
99/10 105/10 105/21
**you've** [21] 9/1 11/18
16/7 16/7 16/7 16/14
18/22 26/13 42/3 44/18
52/25 61/4 61/5 63/24
67/6 84/21 90/2 91/7
91/15 103/1 105/23
**your** [199]
**Your Honor** [131]
**Your Honor's** [5] 12/21
33/21 36/4 104/18
104/21
**yours** [1] 62/21

**Z**

**Zachary** [1] 4/8
**Zaremba** [3] 5/2 113/2
113/8
**zero** [1] 45/19
**zflood** [1] 4/12