# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| United States of America, *et al.*,<br><br>                    Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

|  |  |
|---|---|
| State of Colorado, *et al.*,<br><br>                    Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S SUBMISSION REGARDING
REDACTIONS TO POTENTIAL EXHIBITS**

In accordance with the Court's March 28, 2025 Order (ECF 1201), Google has specified

redactions to 25 exemplar documents on the parties' exhibit lists that are necessary "to protect

trade secrets" and similarly sensitive commercial information. *United States v. Hubbard*, 650

F.2d 293, 315 (D.C. Cir. 1980). As Google has explained in prior filings, the applicable factors

"often weigh in favor of sealing" records "containing sensitive business information and trade

secrets, and, as *Hubbard* itself noted, courts commonly permit redaction of that kind of

information." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 671 (D.C. Cir.

2017); *see, e.g.*, ECF 879; ECF 740-1.

Google makes this submission in order to explain why its approach to sealing is

consistent with the case law and the Court's prior rulings regarding redactions to trial exhibits

and other materials, including the parties' post-trial submissions. In further support of its

positions, Google is enclosing seven declarations that describe the information in the exemplars

that Google seeks to seal without divulging the trade secrets or similarly sensitive details.[1] And

in the sections that follow, Google provides a brief overview of the ample legal authority

supporting its application of the *Hubbard* factors to the categories of information that are likely

to recur in the exhibits in this proceeding, particularly (1) trade secrets relating to the technical

design and operation of Google's proprietary systems; (2) confidential financial information,

---

[1] After applying the *Hubbard* factors and the extensive guidance previously provided by the
Court, Google determined that it will not seek any redactions to five of the 20 exemplars
identified by Plaintiffs. And it proposed sealing only two documents in their entirety—in both
instances because the substantive portions of the documents consist overwhelmingly of technical
trade secrets about the design of Google Search and the training of a Google Gemini
model. With the remainder of the exemplars, Google proposed only highly targeted redactions to
specific trade secrets and similarly sensitive "business information" that is likely to impair
Google's "competitive standing" if released. *Hubbard*, 650 F.2d at 315.

such as recent revenue share percentages and internal metrics; and (3) specific forward-looking strategies and undisclosed products or features.

**I.      Trade Secrets Relating to the Technical Design and Operation of Google's Proprietary Systems**

Several of the documents that Google seeks to redact or seal contain precise technical details concerning the design or operation of Google Search or Gemini artificial intelligence models.  For example, one of the proposed exhibits is a schematic from 2024 that details certain components of Google Search's ranking algorithms, *see* Price Decl. ¶¶ 6-7, and another is a 2024 document that describes the data used for training certain large-language models, *see* Torres Decl. ¶¶ 5-8.  These documents are full of paradigmatic examples of trade secrets resulting from Google's research and development efforts, and Google keeps them confidential in order to preserve their value and prevent competitors from copying its proprietary insights.  *E.g.*, Price Decl. ¶¶ 6-7; Torres Decl. ¶¶ 5-8.

It is well established that "the potential disclosure of trade secrets constitutes a 'compelling reason' to seal a court record."  *3D Sys., Inc. v. Wynne*, 2024 WL 1122377, at *3 (S.D. Cal. Mar. 14, 2024).  Accordingly, courts around the country have sealed documents describing the behind-the-scenes design and operation of proprietary software systems.  For example, in one case the court sealed "technical information about [the defendant's] machine learning models and [product] design and operation" because disclosure could "allow [the defendant's] competitors to gain insight into how [its] proprietary models and API systems function."  *Rivera v. Amazon Web Servs., Inc.*, 2023 WL 5670052, at *3 (W.D. Wash. Sept. 1, 2023).  In another case, the court sealed documents in their entirety when they contained "highly sensitive information about the technical design and operation of the [the parties'] services" and also sealed deposition testimony about "non-public aspects of the internal operation of [the

party's] web servers." *In re PersonalWeb Techs., LLC Patent Litig.*, 2019 WL 13033990, at \*2

(N.D. Cal. Dec. 16, 2019). And in another opinion, the trial court sealed numerous exhibits that

consisted of "technical guides, manuals, specification and other product development

updates." *Wisconsin Alumni Research Found. v. Apple, Inc.*, 2015 WL 6453837, at \*2 (W.D.

Wis. Oct. 26, 2015).

Google has tailored its sealing proposals so that they are focused on shielding only the

details that are necessary "to protect trade secrets" and similarly sensitive information. *Hubbard*,

650 F.2d at 315. As a result of this litigation, confidential information about Google's

proprietary systems has entered the public domain, including through open-court testimony from

computer scientists regarding Google Search (*e.g.*, Oct. 31, 2023 and Nov. 15, 2023 Trial Tr.).

The technical information Google seeks to seal here differs from what has previously been

disclosed because it is both recent and highly detailed, such that the unearned advantage to

competitors and corresponding harm to Google would be significantly greater. *E.g.*, Price Decl.

¶¶ 6-7; Torres Decl. ¶¶ 5-8. The potential exhibits at issue contain even more specific and more

recent details than the passages of the parties' post-trial submissions that the Court ordered

should remain redacted because they "describe[] nonpublic aspects of Google's search

technology and whose release could result in clear competitive disadvantage." *E.g.*, Apr. 24,

2024 Order (ECF 893) at 3.

## II.     Recent Confidential Financial Information and Related Metrics

Google also seeks to redact recent, specific financial information that is either internal to

Google (such as the amount spent on a particular project) or known only to Google and a party to

a confidential agreement (such as a revenue share percentage). As Google's declarants explain,

significant competitive harm can be expected from disclosure of precise details such as the

amount of an incentive payment, a price list, the cost of operating a specific product line, or the

projected financial performance of a business unit.  *E.g.*, Lee Decl. ¶¶ 9-14; Daly Decl. ¶¶ 10-13;

Luiten Decl. ¶¶ 3-4; Bondar Decl. ¶¶ 3-13.

In the context of sealing determinations, courts have concluded that protectable

"[e]xamples of trade secrets include" not only technical information about a product, but also

"'pricing, profit, and customer usage information kept confidential by a company that could be

used to the company's competitive disadvantage.'"  *Gearsource Holdings, LLC v. Google LLC*,

2020 WL 3833258, at *15 (N.D. Cal. July 8, 2020) (sealing "detailed revenue, expense, profit,

and sales information associated with specific products").  The financial information that is

frequently sealed by courts includes "details of [a party's] sources of revenue and the amounts of

its revenue and sales; quantitative details about [the party's] user base for certain offerings;

quantitative details about usage of specific product features; [and] specific revenue amounts from

certain offerings."  *Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 1222122, at *6 (S.D.N.Y.

Mar. 31, 2021); *see, e.g.*, *Boehringer Ingelheim Pharma GmbH & Co. KG v. Mylan Pharms.,

Inc.*, 2015 WL 4715307, at *2 (D. N.J. Aug. 7, 2015) (sealing "financial data, including sales and

revenue, of [a party] and its parent company" because it "is nonpublic business information,

disclosure of which will pose a risk of harm to [the party's] competitive position in the

marketplace").

Google's proposed redactions are intended to track those implemented by the Court

following prior rounds of briefing.  For example, one of the documents that Google seeks to

redact includes some of the same non-public "details [of] the costs of Google's investments and

expenses" that remained redacted in Plaintiffs' post-trial submissions because they "would reveal

information that competitors could use to their advantage and Google's disadvantage."  Apr. 24,

4

2024 Order (ECF 893) at 20; *see* Bondar Decl. ¶¶ 3-6.  Other documents include current revenue

share percentages, incentive-payment amounts, or comparable financial terms that resemble

those redacted following review by the Court.  *E.g.*, Lee Decl. ¶¶ 9-14; *see* Apr. 24, 2024 Order

(ECF 893) at 11 (concluding in the context of post-trial submissions that disclosure of "a current

revenue share figure … could cause harm to Google or Google's partners by providing a

nonpublic benchmark for future negotiations").  In short, Google's redactions in this area are

narrowly tailored to specific dollar amounts, percentages, or other numbers that are especially

likely to harm Google's competitive standing if released.

### III.    Specific Forward-Looking Strategies and Unannounced Product Launches

Finally, a number of the potential exhibits identified by the parties contain confidential

descriptions of Google's business strategies in 2025 and beyond, mock-ups of forthcoming

product changes, or similarly specific forward-looking information.  *E.g.*, Price Decl. ¶ 10;

Luiten Decl. ¶¶ 8-10.  These potential plans or strategies are kept confidential because premature

disclosure would give competitors an unjustified advantage in bringing their own products to

market.  *E.g.*, Price Decl. ¶ 10; Luiten Decl. ¶ 10.

Courts have recognized that "[f]uture business planning and competitive strategy are

quintessential business information that may harm a firm's competitive standing if disclosed to

the public."  *ImprimisRx, LLC v. OSRX, Inc.*, 2023 WL 7029210, at *3 (S.D. Cal. Oct. 24,

2023).    Accordingly, "[t]he protection of proprietary business information and prospective

business plans is a compelling reason to permit the filing of documents under seal."  *Morawski v.*

*Lightstorm Entm't, Inc.*, 2013 WL 12122289, at *2 (C.D. Cal. Jan. 14, 2013); *see, e.g., Bauer*

*Bros. LLC v. Nike, Inc.*, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) (concluding that

"public disclosure of … marketing strategies, sales and retailer data, product development plans,

[and] unused prototypes … could result in improper use by business competitors seeking to replicate [the defendant's] business practices and circumvent the considerable time and resources necessary in product and marketing development").

As with the other trade secrets and highly sensitive information that Google seeks to seal, Google's redactions are narrowly tailored.  For example, Google has redacted descriptions of particular product plans or actionable business strategies, not higher-level observations or concepts.  And it has focused on forward-looking information that competitors or other members of the public could not reasonably infer from the products or features presently available.  These targeted redactions will prevent unnecessary harm to Google's competitive standing without unduly impinging on the public's right of access.


Dated:  April 9, 2025                                      Respectfully submitted,

                                                           WILLIAMS & CONNOLLY LLP

                                                           By: */s/ John E. Schmidtlein*
                                                           John E. Schmidtlein (D.C. Bar No. 441261)
                                                           Benjamin M. Greenblum (D.C. Bar No. 979786)
                                                           Colette T. Connor (D.C. Bar No. 991533)
                                                           680 Maine Avenue, SW
                                                           Washington, DC 20024
                                                           Tel: 202-434-5000
                                                           jschmidtlein@wc.com
                                                           bgreenblum@wc.com
                                                           cconnor@wc.com

                                                           WILSON SONSINI GOODRICH & ROSATI P.C.
                                                           Michael Sommer (admitted *pro hac vice*)
                                                           Franklin M. Rubinstein (D.C. Bar No. 476674)
                                                           1700 K Street, NW
                                                           Washington, DC 20006
                                                           Tel: 202-973-8800
                                                           msommer@wsgr.com
                                                           frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*