IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

## DECLARATION OF DAVID PRICE

I, David Price, declare as follows:

　　　　1.　　　　I am currently employed by Google LLC (Google) as a Legal Director. I graduated from Stanford Law School in 2006 and have been an in-house counsel for Google since 2010. I am a member of the State Bar of California.

　　　　2.　　　　I am the Google in-house counsel principally responsible for providing legal advice to the product teams that develop and operate Google Search. I regularly receive confidential information from Google employees about a wide range of matters related to Google

1

Search, including proposed changes to Search, descriptions of strategic objectives, and evaluations of competitors' offerings.

3.  I have evaluated the commercial sensitivity of information relating to Search for the purpose of assessing whether disclosing particular information would harm Google's competitive standing. For example, I have assisted in determining which information about the operation of Google Search should be disclosed in speeches and publications by Google and its employees, and which materials submitted to regulators should be subject to confidential treatment.

4.  As I explained in a declaration I previously submitted in this case, Google contributes to the advancement of the public understanding of how search works, including through the development of popular videos intended for a general audience, materials designed to educate website operators on how to improve the quality of their webpages so they are more likely to appear on the search results page as appropriate in response to relevant user queries, and technical papers from Google researchers that advance academic understanding in the area.

5.  I also explained in a prior declaration I submitted that Google needs to preserve the confidentiality of certain details about how Google Search works behind the scenes in order to protect its competitive standing. That includes, for example, proprietary technical information about the databases Google has designed for storing and serving content and the algorithms used to rank search results. These categories encompass a significant number of trade secrets. Google keeps them confidential in order to prevent competitors from copying Google's proprietary technical insights and to prevent the manipulation of Google's systems by actors who attempt to affect the ranking of Google Search results in ways that negatively impact the user experience.

6. I have reviewed PRX0172 (GOOG-DOJ-34926143), an internal document entitled "Search Quality - Ranking Flow" dated October 2024. This document contains highly sensitive technical descriptions and diagrams of the inner workings of how Google retrieves, ranks, and serves search results in response to user queries. Of the many internal documents I have seen in more than a decade working on Google Search, I have rarely encountered a single document that reveals so many trade secrets. The document depicts proprietary ranking components as well as the flow of data between Google's systems, which are forms of information that Google keeps strictly confidential. The role of the components referenced in the document and the way they are configured are the product of significant research and development efforts, and public disclosure of this document would significantly harm Google's competitive standing by enabling Google's competitors to copy the design of Google's proprietary Search stack.

7. Furthermore, I expect disclosure of PRX0172 (GOOG-DOJ-34926143) would lead to significant efforts to manipulate Google's systems to promote low-quality content or sites that contain misinformation, scams, or other information that will harm users. As part of Google's extensive efforts to display high-quality results in response to each query, it has developed sophisticated techniques to identify sites that superficially appear relevant to the query but in fact are less relevant or contain the kinds of harmful content I have referenced. Disclosure of the intricate ranking details described in this document would allow adversarial actors who seek to degrade the quality of Google Search to focus their efforts to the detriment of Google and its users.

8. I have reviewed PRX0061 (GOOG-DOJ-34917943), an intranet page entitled "Docjoins." The document contains a commercially sensitive description of which data Google

stores with a set of webpages to help facilitate effective retrieval and ranking in response to user queries. Docjoins are confidential data structures that Google does not discuss publicly in order to avoid giving other companies insights into its proprietary innovations. Nevertheless, Google does not seek to redact the document's general descriptions of Docjoins and how they have been used; rather, it seeks to redact only the most sensitive portions of the document that describe certain kinds of data included within Docjoins because disclosure would present a more significant risk of other companies in the field copying Google's proprietary approach.

9. I have reviewed PRX0185 (GOOG-DOJ-34937116), an internal document entitled "Google Common Corpus (GCC): Proposal." Google's competitive standing would be harmed by the public disclosure of certain specific numbers, percentages, and ranking signals referenced in this document that reflect granular details about the extent of Google's web crawling efforts and how information is maintained in its proprietary databases. Google does not seek to redact the vast majority of the document, even though it describes Google's confidential information; rather, the proposed redactions are directed to the particular details that are most likely to harm Google's competitive standing by providing actionable insights to competitors, who could adjust their own crawling and database compilation decisions based on Google's confidential proposals.

10. I have reviewed RDX0304 (GOOG-DOJ-33962227), an internal document entitled "Search Board of Directors Update" dated July 2024. This document describes specific techniques Google recently has implemented behind the scenes to improve the AI Overviews feature of Google Search. Google's competitive standing would be harmed by disclosure of this information because it would give other firms working on generative artificial intelligence insights into how Google has addressed particular challenges in areas such as response quality

and latency. In addition, the document includes mock-ups and descriptions of future product plans that have been analyzed or tested confidentiality within Google but not released or announced. Google's competitive standing would be harmed by disclosure of such forward-looking information because competitors could replicate Google's strategy or time their own launches based on Google's confidential plans.

11. I have reviewed PRX0039 (GOOG-DOJ-34025096), a document entitled "Gemini Launch's Impact on Android Search engagement" dated April 3, 2024. The document contains specific usage metrics and results of user traffic evaluations relating to the Google Search App and Gemini during a recent period. Disclosure of the precise usage metrics and experiment design would harm Google's competitive standing by giving developers of search and generative artificial intelligence services specific insights into how users are interacting with Google Search and Gemini, including how those interactions varied by country, device type, and other factors. This information could be used by competitors in their own strategic planning, including determining whether and how to roll out new generative artificial services and which features to include. Google does not seek to redact the qualitative characterizations of the effect of the launch described in the document, but rather seeks to redact only the recent and granular usage data and experimental design.

*   *   *   *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this  7th  day of April 2025, in  Cambridge, UK                   .

Signed by:<br>
*David Price*<br>
FE9967CBE2A24B8...<br>
David Price

5