IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>　　　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DECLARATION OF MICHAEL ZWIBELMAN**

I, Michael Zwibelman, declare as follows:

　　　　1.　　I am currently employed by Google LLC ("Google") as a senior product counsel for Google Search Ads. I graduated from The University of Chicago Law School in 1999 and have been an in-house counsel for Google since 2010, based in Mountain View (2010-16) and San Francisco (2016-present). I am a member in good standing of the State Bar of California.

　　　　2.　　As part of my role as senior product counsel, I manage a team of product counsel that provides Google product managers and engineers with legal advice and analysis on a number of products, including Ad Sense for Search, Web Search Syndication, Programmable

1

Search Engine, and related search and search advertising syndication products and features. In addition to my management responsibilities, I also have personally served as lead product counsel for these products and features as well.

3. On a number of occasions I have evaluated the commercial sensitivity of information regarding search ads products and determined whether disclosing particular information would harm Google's competitive standing. For example, I have advised internal teams and outside counsel on which materials submitted to regulators should be subject to confidential treatment.

4. I have reviewed PRX0146 (GOOG-DOJ-33893790), which is a slide deck titled "DuckDuckGo Deal Exploration." The document contains revenue share percentages that remain commercially sensitive because they were used for an internal assessment of a particular proposal at a particular point in time. Google has numerous syndication relationships, and the financial terms are not always the same across partners or over time. Disclosure of these percentages could place Google at a competitive disadvantage by informing other partners and other providers of ads syndication services what Google was confidentially considering in this scenario. Google seeks to redact only the internal revenue share percentages, and not any other portion of this document.

5. I have also reviewed RDX0032 (GOOG-DOJ-34933263), which is a document titled "gTech Cases on Search Partner Network." The document summarizes complaints by advertisers about a particular practice observed on certain sites that syndicate search ads from Google. The document includes comments by Google employees about a specific method proposed for resolving the practice that was generating the complaints. This detail could harm Google's competitive standing if disclosed by revealing to the sites in question how to continue

engaging in the practice that generated the complaints, which could lead to dissatisfaction among advertisers who are affected. Google seeks to redact only the description of the specific method proposed and the name of an advertiser, and not any other portion of this document.

6.  I have reviewed PRX0158 (GOOG-DOJ-33773909), which appears to be an internal briefing prepared for members of Google's Search and News organization in connection with a planned meeting with a company that purchases ads and cloud services from Google. The document includes specific dollar amounts and percentages related to the customer's expenditures on Google display ads, YouTube ads, and other products and services. This kind of customer-specific financial information is commercially sensitive because individual Google ads customers often do not want their advertising investments or strategies shared with other advertisers in their industry or the general public. Moreover, Google's ability to compete with other ad and cloud-computing platforms would be undermined if they had access to the amounts spent and results realized with Google in recent years. Google does not seek to redact any aspect of this document beyond the customer-specific financial metrics.

*   *   *   *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of April 2025, in San Francisco, California.

Signed by:<br>
*Michael Zwibelman*<br>
E30216391E03433...<br>
Michael Zwibelman