IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**MOTION OF ANTHROPIC PBC, ENGINE ADVOCACY,
AND TECHNET FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE***

Pursuant to Local Civil Rule 7(o), Anthropic PBC, Engine Advocacy, and TechNet respectfully move this Court for leave to file the attached brief as *amici curiae*. *Amici* contacted Plaintiffs' counsel regarding this motion but did not receive a response. Defendant Google LLC has advised that it takes no position on this motion.

Anthropic is a public benefit corporation dedicated to the responsible development of advanced artificial intelligence ("AI") systems for the long-term benefit of humanity. As one of the leading frontier AI companies, Anthropic develops generative AI models, particularly large language models, that are used across a range of applications, from enterprise software to consumer products. Anthropic is the smallest and most independent of the frontier AI labs, and

its competitive success has required talent, dedication, and collaboration with a variety of other actors—including Google.

Engine Advocacy ("Engine") is a non-profit technology policy, research, and advocacy organization dedicated to bridging the gap between startups and policymakers. Engine operates independently of its funders, and its policy work is guided by ongoing conversations with startups in the network. Engine works with government officials and a community of thousands of high-technology, growth-oriented startups across the nation to support innovation and entrepreneurship through research, policy analysis, and advocacy. Engine's community of startups includes companies developing and deploying AI across all industries and sectors. Many have benefited directly and indirectly from Google's participation in the AI ecosystem, including by using Google AI tools, building on AI tools supported by Google investments, and participating in Google's accelerator programs.

TechNet is a national, bipartisan network of technology CEOs and senior executives that promotes the growth of the innovation economy by advocating a targeted policy agenda at the federal and 50-state level. TechNet's diverse membership includes 100 dynamic American companies ranging from startups to the most iconic companies on the planet. Those companies represent more than 5 million employees and countless customers in the fields of information technology, AI, e-commerce, the sharing and gig economies, advanced energy, cybersecurity, venture capital, and finance. TechNet's members are at the forefront of developing new technologies, including AI, and TechNet has unique expertise regarding the effects of public policy on innovation and competition in the technology industry. While TechNet is a membership-based association, its positions as *amicus curiae* represent only its own views and not necessarily the views of any of its individual members.

*Amici* respectfully submit that they are well-suited to assist the Court in evaluating the competitive implications of Plaintiffs' proposed remedy and should be granted leave to file a traditional *amicus curiae* brief. Anthropic is a significant actor in the emerging competitive landscape that the Revised Proposed Final Judgment ("RPFJ") threatens to reshape. It occupies a distinctive position as the smallest and most independent of the leading frontier AI labs, and it competes vigorously with much larger firms—including Google, Meta, and OpenAI—on the basis of model performance, safety, and technical innovation. At the same time, Anthropic is one of numerous startup AI firms whose growth has been meaningfully supported by strategic investments from established companies, including Google.

That dual role—as both a competitor and recipient of investment—gives Anthropic a concrete, real-world perspective on how provisions like Sections IV.H and IV.I of the RPFJ would operate in practice. Those provisions impose expansive notice requirements on Google's future investments in emerging AI companies like Anthropic and companies much smaller than Anthropic. Anthropic can offer firsthand insight into how these requirements, which are far afield from the antitrust violations the Court found in this case, would deter such investment, disrupting the capital flows and strategic collaborations that are essential to innovation and competition in the nascent AI space—not only for Anthropic, but for countless other AI startups. As Anthropic is one of many AI companies that has benefited from Google's investments in the past and wishes to be able to do so in the future, its interests are directly implicated, and it is well positioned to explain the broader implications of Plaintiffs' proposed remedy.

Anthropic has previously contributed meaningfully to the remedial dialogue in this case. Plaintiffs' original Proposed Final Judgment sought to compel Google to divest all its existing investments in AI startups and to prohibit all future investments. After Anthropic explained that

this divestment remedy would have severely harmed competition, *see* ECF Nos. 1165, 1182, Plaintiffs withdrew the divestiture demand, acknowledging Anthropic's point that the remedy could have caused "unintended consequences in the evolving AI space," ECF No. 1184 at 8. In light of Plaintiffs' change in position, this Court declined to grant Anthropic "evidentiary *amicus* status" (*i.e.*, it declined to permit Anthropic to submit affidavits from fact witnesses) but took "no position on whether it [would] accept from Anthropic a traditional *amicus* brief." ECF No. 1207 at 3.

In addition to Anthropic's industry-specific perspective, Engine Advocacy and TechNet offer valuable insight into the broader startup and innovation ecosystems that would be affected by the RPFJ's notice requirements. Engine has expansive experience working with early-stage companies across the technology sector, including on how they rely on strategic partnerships and investments to scale and compete with incumbents. Its extensive engagement with startup founders and investors provides it with an informed view of how notice requirements, like those in Sections IV.H and IV.I, would introduce uncertainty and delay into funding decisions—particularly for smaller firms that may lack the resources to navigate regulatory ambiguity or withstand protracted negotiations.

TechNet, drawing from the experience of its member companies and engagement with policymakers across all 50 states, can contextualize the RPFJ's provisions within the national policy landscape. TechNet is uniquely positioned to articulate how intrusive notice provisions may create regulatory friction that chills legitimate and procompetitive investment across a range of industries—not only in AI, but in biotechnology, cybersecurity, and other sectors where innovation depends on nimble capital deployment. Together, Engine and TechNet bring institutional expertise that complements Anthropic's real-world experience, providing the Court

4

with a more complete understanding of how the proposed remedy may undermine innovation and competition across the broader economy.

Anthropic, Engine Advocacy, and TechNet now move for leave to file a traditional *amicus* brief, which they respectfully submit will assist the Court in crafting an appropriate remedy in this case.

Dated: May 9, 2025

>                              Respectfully submitted,
>
>                              */s/ Paul Alessio Mezzina*
>                              Veronica Moyé (*pro hac vice*)
>                              Benjamin T. Lee (*pro hac vice*)
>                              KING & SPALDING LLP
>                              2601 Olive Street
>                              Suite 2300
>                              Dallas, TX 75201
>                              (214) 764-4600
>                              vmoye@kslaw.com
>                              benjamin.lee@kslaw.com
>
>                              Nema Milaninia
>                               DC Bar No. 984897
>                              Paul Alessio Mezzina
>                               DC Bar No. 999325
>                              Sumon Dantiki (*pro hac vice*)
>                              KING & SPALDING LLP
>                              1700 Pennsylvania Avenue NW
>                              Washington, DC 20006
>                              (202) 737-0500
>                              nmilaninia@kslaw.com
>                              pmezzina@kslaw.com
>                              sdantiki@kslaw.com
>
>                              *Counsel for Amici Curiae Anthropic PBC,*
>                              *Engine Advocacy, and TechNet*