UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>        Plaintiffs,<br>    v.<br>GOOGLE LLC,<br><br>        Defendant. | No. 1:20-cv-03010-APM |
| STATE OF COLORADO, *et al.*,<br><br>        Plaintiffs,<br>    v.<br>GOOGLE LLC,<br><br>        Defendant. | No. 1:20-cv-03715-APM |

**ADMARKETPLACE, INC.'S MOTION FOR LEAVE TO FILE
BRIEF AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS**

Pursuant to Rule 7(o) of the Local Civil Rules for the U.S. District Court for the District of Columbia, adMarketplace Inc. ("adMarketplace") respectfully requests leave to file the accompanying *amicus curiae* brief. The brief addresses two questions the Court posed during the May 30, 2025 closing arguments regarding: (1) the definition of "Qualified Competitor," May 30, 2025 Hr'g Tr. 4770:10-11; and (2) whether something short of a complete ban on distribution payments by Google to publishers may be implemented, *id.* at 4901:15-4902:1. The parties do not consent to the filing of adMarketplace's proposed *amicus curiae* brief.

**ARGUMENT**

I. **ADMARKETPLACE'S PROPOSED *AMICUS CURIAE* BRIEF IS DESIRABLE AND ADDRESSES MATTERS RELEVANT TO THE DISPOSITION OF THE CASE**

adMarketplace is the market leader in native search advertising: matching advertisers with users searching outside of traditional search engines. It competes actively with Google and plans to avail itself of the remedies this Court orders—if given the opportunity. *See* Apr. 28, 2025 Hr'g Tr. 1785:22-24 (testimony that adMarketplace is "a competitor to Google for text ads"); *id.* at 1786:1-18 (testimony about how adMarketplace "compete[s] with Google in the sale of text ads" and "tr[ies] to differentiate itself from Google"); *id.* at 1864:19-21 (testimony that adMarketplace "[a]bsolutely" "intend[s] to apply to be a qualified competitor"). adMarketplace thus has an interest in providing the Court its views on the remedies necessary to pry open competition to the markets Google has monopolized for decades. *See id.* at 1805:8-18 (testimony that "advertising remedies are necessary in this case" because "advertising is what funds . . . all of the search experiences that we see, and it's where the money comes in").[1]

Generally, adMarketplace agrees with the government's proposals on advertising remedies and believes "a search text ad syndication remedy would be helpful for adMarketplace and others to compete against Google." Apr. 28, 2025 Hr'g Tr. 1806:13-1809:1. However, it believes certain modifications to the government's Revised Proposed Final Judgment are necessary to address concerns that came to light during closing arguments.

---

[1] adMarketplace has engaged actively in the remedies phase of this case. Shortly after this Court's ruling on liability, adMarketplace, through its counsel, submitted a memorandum outlining potential remedies to the United States Department of Justice and certain State Plaintiffs (collectively, "the government"), and its representatives met with the government several times to discuss remedies. *See* Apr. 28, 2025 Hr'g Tr. 1829:10-14. adMarketplace also produced voluminous discovery to Google during the remedies phase, and its Co-CEO and President Adam Epstein provided deposition and trial testimony.

*First*, during closing arguments, the government offered a too-narrow definition of "Qualified Competitor." *See* May 30, 2025 Hr'g Tr. 4770:10-4771:12. That definition differs from the one offered in Plaintiffs' Revised Proposed Final Judgment (Dkt. 1184-1). And it threatens to exclude not only adMarketplace but also publishers (and potential publishers) as well as GenAI companies that need access to Google's syndication assets to compete effectively.[2] The government later clarified its position, offering a more expansive definition of "Qualified Competitor" that would allow sufficient access to Google's syndication assets. *See id.* at 4898:14-4899:16. adMarketplace's proposed *amicus curiae* brief urges the Court to adopt the government's broader definition of Qualified Competitor to allow the necessary market participants access to Google's syndication assets.[3]

*Second*, during closing arguments, the Court engaged the government in a colloquy regarding ways to mitigate the harm that could befall publishers—who are adMarketplace's existing and potential supply partners—if it were to order the government's proposed ban on distribution payments. May 30, 2025 Hr'g Tr. 4901:15-4914:11. adMarketplace offers a proposal regarding how to mitigate that harm in its proposed *amicus curiae* brief. Specifically, it suggests tweaking the Revised Proposed Final Judgment to permit distribution payments from Google to publishers so long as (i) Google does not require publishers to funnel all queries to Google's SERP

---

[2] "Publisher" as used in this motion refers to a "property that is not a general search engine where users are expressing intent [by] entering queries" into "search input boxes." Apr. 28, 2025 Hr'g Tr. 1781:5-11. Examples include, but are not limited to, websites; browsers like Safari, Mozilla, or Opera; and Buy Now Pay Later sites like Klarna, Zip, and Afterpay. *See id.* at 1781:12-21.

[3] As modified, the definition of "Qualified Competitor" would be: a Competitor who meets the government's approved data security standards as recommended by the Technical Committee and agrees to regular data security and privacy audits by the Technical Committee, who makes a sufficient showing to the Plaintiffs, in consultation with the Technical Committee, of a plan to invest and compete with the GSE and/or Search Text Ads markets, and who does not pose a risk to the national security of the United States. *See* May 30, 2025 Hr'g Tr. 4898:14-4899:16; Dkt. 1184-1 (Plaintiffs' Revised Proposed Final Judgment) § III.U.

3

as a condition of receiving those payments and (ii) the financial terms for revenue share on syndicated ads are significantly more favorable than those for distribution. The specifics of that proposal are set out in the proposed *amicus curiae* brief. adMarketplace's proposal—which specifically addresses the concerns the Court raised in closing arguments—is a desirable way to remedy Google's monopolies by incentivizing publishers to provide users with innovative search experiences, without risking putting publishers "out of business" or deterring entry of potential publishers. *Id.* at 4901:15-4902:1.

**II.    ADMARKETPLACE'S INTERESTS ARE NOT ADEQUATELY REPRESENTED BY A PARTY**

While adMarketplace generally supports the government's proposed advertising remedies, adMarketplace offers a unique perspective on the two questions it seeks to address in its proposed *amicus curiae* brief, both of which are highly relevant to the success of the remedies this Court will impose. As an entity that would seek to avail itself of a search text ads syndication license—and as a company with decades of experience competing in search advertising—adMarketplace has valuable insight into which entities need access to Google's syndication assets. Similarly, as a company that competes with Google to connect advertisers to publishers, adMarketplace has a unique perspective on how restrictions on Google's distribution payments would impact its supply partners. In particular, adMarketplace believes that continued payments of revenue share by Google to publishers could be consistent with an effective remedy if—but only if—the Court ensures that publishers are sufficiently incentivized to pursue an alternative path to monetization.

Google's proposed remedies barely mention advertising. Google plainly cannot adequately represent adMarketplace's interests. While the government has proposed syndication—which even Google agrees would be an "elegant solution," May 30, 2025 Hr'g Tr. 4835:19-4836:8—its proposal requires certain minor modifications as described in adMarketplace's proposed *amicus curiae* brief to truly pry open competition.

**III.     THIS COURT SHOULD ACCEPT ADMARKETPLACE'S *AMICUS CURIAE* BRIEF FOR FILING**

adMarketplace recognizes that this Court ordered that "any amicus brief(s) that the court has granted leave to file shall be due by May 9, 2025." Dkt. 1200. adMarketplace did not file an amicus brief by May 9, 2025 because, at that time, it believed its interests would be adequately represented by Plaintiffs and presented to the Court through Mr. Epstein's testimony at the remedies hearing. adMarketplace could not have anticipated that, at closing arguments, the government would offer a definition of "Qualified Competitor" that deviated from what was contained in the Revised Proposed Final Judgment and that threatened to exclude adMarketplace. That is particularly true given that the government elicited testimony from Mr. Epstein at the remedies hearing that adMarketplace intends "to compete in the search text ads market" against Google, has "a history of competing and investing in these markets," and intends to "apply to be a [Q]ualified [C]ompetitor." Apr. 28, 2025 Hr'g Tr. 1864:19-1866:8. Nor could adMarketplace have anticipated the Court's apparent desire to find a middle path between the government's proposal to ban distribution payments altogether and Google's proposal to allow them to continue unabated. *See* May 30, 2025 Hr'g Tr. 4907:19-4909:10, 4911:9-4914:11 (Court suggesting alternatives, including exceptions for independent browsers and mobile phone manufacturers, and a contingent payment ban). Those developments in closing arguments have compelled adMarketplace to seek leave to file an *amicus curiae* brief.

It is beyond dispute that this Court may modify its own orders, including the order setting a deadline for filing *amicus curiae* briefs. *See Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) ("[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case."); *Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 733 (D.C. Cir. 2021) (same). Given the developments at closing arguments, adMarketplace respectfully submits that good cause exists to accept the brief for filing and consider the proposals contained therein. The

filing would not prejudice the parties because they are afforded an opportunity to respond to this motion within 14 days if they so choose. D.D.C. Local Civ. R. 7(o)(2). Given the timing of this filing—more than a month before the Court's anticipated ruling date—accepting the brief would not "unduly delay the Court's ability to rule" on remedies on the timeline it anticipates. *See* Local Civil R. 7(o)(2).

## CONCLUSION

For these reasons, adMarketplace respectfully requests that this Court grant the motion and permit it to participate in this matter as an *amicus curiae* pursuant to Rule 7(o) of the Local Civil Rules for the U.S. District Court for the District of Columbia. adMarketplace simultaneously serves its *amicus curiae* brief, which is attached to this motion as Exhibit A, alongside a proposed order granting this motion, attached as Exhibit B.

Dated: July 11, 2025
Washington, D.C.

   /s/ Lauren M. Weinstein
Lauren M. Weinstein
D.C. Bar # 1035184
Lois S. Ahn (*pro hac vice* forthcoming)
D.C. Bar # 90030717
Harry P. Larson
D.C. Bar # 90032001
MoloLamken LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 556-2018
Fax: (202) 556-2001
lweinstein@mololamken.com

*Counsel for Proposed* Amicus Curiae *adMarketplace, Inc.*