**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | |
| | Case No. 1:20-cv-03010-APM |
| v. | |
| | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |
| STATE OF COLORADO, *et al.*, | |
| Plaintiffs, | |
| | Case No. 1:20-cv-03715-APM |
| v. | |
| | HON. AMIT P. MEHTA |
| GOOGLE LLC, | |
| Defendant. | |

**PLAINTIFFS' FINAL PROPOSED FINAL JUDGMENT**

WHEREAS, Plaintiffs United States of America, and the States and Commonwealths of

Arkansas, California, Georgia, Florida, Indiana, Kentucky, Louisiana, Michigan, Missouri,

Mississippi, Montana, South Carolina, Texas, and Wisconsin, by and through their respective

Attorneys General ("Co-Plaintiff States"), filed their Complaint on October 20, 2020, and their

Amended Complaint on January 15, 2021;

AND WHEREAS, Plaintiffs Colorado, Nebraska, Arizona, Iowa, New York, North

Carolina, Tennessee, Utah, Alaska, Connecticut, Delaware, District of Columbia, Guam, Hawaii,

Idaho, Illinois, Kansas, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Hampshire,

New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico,

Rhode Island, South Dakota, Vermont, Virginia, Washington, West Virginia, and Wyoming (together "Colorado Plaintiff States") filed their Complaint on December 17, 2020;

AND WHEREAS, the Court conducted a trial and entered Findings of Fact and Conclusions of Law in both actions on August 5, 2024;

AND WHEREAS, the Court entered judgment finding Google liable for violating Section 2 of the Sherman Act by unlawfully maintaining its monopolies in the general search services and general search text advertising markets;

AND WHEREAS, the Court conducted a further remedies trial, and entered additional Findings of Fact and Conclusions of Law on September 2, 2025;

NOW THEREFORE, upon the record at trial and all prior and subsequent proceedings, it is hereby ORDERED, ADJUDGED, AND DECREED:

## I.  JURISDICTION

The Court has jurisdiction over the subject matter of this action and over Google.

## II.  APPLICABILITY

This Final Judgment applies to Google and to each of its officers, directors, agents, employees, subsidiaries, successors and assigns; and to all other persons in active concert or participation with Google who have received actual notice of this Final Judgment by personal service or otherwise.

## III.  PROHIBITORY INJUNCTIONS

A.    Google shall not condition the licensing of Google Play or any other Google application on the distribution, preload, placement, display, use, or license of the Google Search Application on any device sold in the United States.

B.      Google shall not condition the licensing of Google Play or any other Google

application on the distribution, preload, placement, display, use, or license of the Chrome

Browser Application on any device sold in the United States.

C.      Google shall not condition the licensing of Google Play or any other Google

application on the distribution, preload, placement, display, use, or license of the Google

Assistant Application on any device sold in the United States.

D.      Google shall not condition the licensing of Google Play or any other Google

application on the distribution, preload, placement, display, use, or license of any Google GenAI

Product on any device sold in the United States.

E.      Google shall not condition (i) Consideration or (ii) the license of Google Play or

any Google software application on a device manufacturer or wireless carrier refraining from

developing, distributing, preloading, placing, displaying, using, selling, or licensing any Third-

Party General Search Service on any device sold in the United States.

F.      Google shall not condition (i) Consideration or (ii) the license of Google Play or

any Google software application on a device manufacturer or wireless carrier refraining from

developing, distributing, preloading, placing, displaying, using, selling, or licensing any Third-

Party Browser on any device sold in the United States.

G.      Google shall not condition (i) Consideration or (ii) the license of Google Play or

any Google software application on a device manufacturer or wireless carrier refraining from

developing, distributing, preloading, placing, displaying, using, selling, or licensing any Third-

Party GenAI Product on any device sold in the United States.

H.      Google shall not condition the payment for preload of, placement of, or

assignment of an access point for the Google Search Application for one device on any other

preload, placement, or assignment of an access point for the Google Search Application, the Chrome Browser Application, the Google Assistant Application, or any Google GenAI Product for that device or any other device sold in the United States.

I.    Google shall not condition the payment for preload of, placement of, or assignment of an access point for the Chrome Browser Application for one device on any other preload of, placement of, or assignment of an access point for the Google Search Application, the Chrome Browser Application, the Google Assistant Application, or any Google GenAI Product for that device or any other device sold in the United States.

J.    Google shall not condition the payment for preload of, placement of, or assignment of an access point for the Google Assistant Application or any Google GenAI Product for one device on any other preload, placement, or assignment of an access point for the Google Search Application, the Chrome Browser Application, the Google Assistant Application, or any Google GenAI Product for that device or any other device sold in the United States.

K.    Google shall not enter or maintain any agreement requiring or conditioning Consideration on the distribution of, preload of, placement of, display of, use of, license of, or assignment of an access point for the Google Search Application, the Chrome Browser Application, the Google Assistant Application, or any Google GenAI Product in the United States unless the agreement terminates no more than one year after the date it is entered.

L.    Google shall not enter or maintain any agreement requiring a Browser Developer to set Google Search as the Browser Default Search Engine in a Third-Party Browser in the United States unless the agreement (i) applies to no more than one Operating System Version and no more than one Privacy Mode, (ii) terminates no more than one year after the date it is entered, and (iii) expressly permits the Browser Developer to promote any Third-Party General

Search Service and Third-Party GenAI Product. For clarity, this provision does not prohibit Google from negotiating multiple such agreements with a Browser Developer as long as no agreement is conditioned on another.

M.      Google shall not enter or maintain any agreement requiring Apple to set Google Search or any Google GenAI Product as the Default Search Engine or default GenAI Product in the United States with respect to any proprietary Apple feature or functionality, including Safari, Siri, and Spotlight, unless the agreement (i) applies to no more than one Operating System Version and no more than one Privacy Mode, (ii) terminates no more than one year after the date it is entered, and (iii) expressly permits Apple to promote any Third-Party General Search Service and Third-Party GenAI Product. For clarity, this provision does not prohibit Google from negotiating multiple such agreements with Apple as long as no agreement is conditioned on another.

N.      Google shall not enter or maintain any exclusive contract relating to the distribution of Google Search, the Google Search Application, the Chrome Browser Application, the Google Assistant Application, and any Google GenAI Product in the United States.

O.      Nothing in this Final Judgment shall prohibit Google from distributing the Google Search Application, the Google Assistant Application, and any Google GenAI Product through a single Application Programming Kit (APK) as long as the licensee has the option to disable end-user access to any of those applications and services that the licensee declines to license.

## IV.    REQUIRED DISCLOSURES OF DATA

A.      <u>Google's Search Index</u>: Within thirty (30) days of a Qualified Competitor's certification pursuant to Section IX.W, Google shall make available to such Qualified Competitor, at marginal cost, to Qualified Competitors the following data related to Google's Search Index:

1.    for each document in the Google Search Index, a unique identifier (DocID) and another notation sufficient to denote all the documents Google considers duplicates of each other;

2.    a DocID to URL map; and

3.    for each DocID, the (A) time that the URL was first seen, (B) time that the URL was last crawled, (C) spam score, and (D) device-type flag.

This information shall be provided for all websites in the full Search Index Google uses for searches on Google.com, the Google Search Application, or any other current or future Google general search products. Nothing in Section IV is intended to transfer intellectual property rights of third parties to index users.

B.    <u>User-Side Data</u>: For the term of this Final Judgment, Google shall make available, at marginal cost, to Qualified Competitors the following User-side Data on a non-discriminatory basis while safeguarding personal privacy and security:

1.    User-side Data used to build, create, or operate the GLUE statistical model(s); and

2.    User-side Data used to train, build, or operate the RankEmbed model(s).

Google shall make this data available to Qualified Competitors at least twice, with the exact number and frequency of such disclosures to be determined by the Court after consultation with Plaintiffs and the Technical Committee (TC). Any cap on the number of such disclosures shall be informed, in part, by the utility of the datasets disclosed after appropriate privacy-enhancing techniques have been applied. For clarity, this Section IV.B shall not require disclosure of intellectual property or trade secrets, such as algorithms, ranking signals, or post-trained LLMs.

C.    <u>User-Side Data Sharing Administration</u>:

6

1.      Plaintiffs, in consultation with the TC, shall promptly determine the
appropriate User-side Data privacy and security safeguards to be applied
before Google shares the data specified in Section IV.B with Qualified
Competitors. Google shall have up to six (6) months from the date that the
Plaintiffs, in consultation with the TC, determine such privacy and
security safeguards to implement the technology and provide any notice
necessary to comply with this Section IV, and Google shall be deemed to
have implemented the technology once Plaintiffs, in consultation with the
TC, determine that the technology, including privacy and security
safeguards, is fully functional.

2.      Google shall provide sufficient information about each dataset such that
Qualified Competitors can reasonably understand what it contains,
including but not limited to a description of what the dataset contains, any
sampling methodology used to create the dataset, and any anonymization
or privacy-enhancing technique that was applied. Plaintiffs, in consultation
with the TC, may impose restrictions on what information Google shares
under this Section IV.C.2 for the purposes of (i) promoting data privacy
and security and (ii) ensuring privacy and security safeguards are
effectively applied.

## V.      REQUIRED SYNDICATION OF SEARCH RESULTS

A.      <u>Search Syndication License</u>: Google shall take steps sufficient to make available
to any Qualified Competitor, on financial terms no worse than those offered to any other user of
Google's search syndication products, a syndication license whose term will be five (5) years
from the date the license is signed, and which shall require Google, via real-time API(s), to make

the following information and data available in response to each query issued or submitted by a Qualified Competitor:

    1.    both desktop and mobile versions of the ranked organic web search results obtained from crawling the web;

    2.    the user-facing query-rewriting features that Google provides under any of its current search syndication agreements as of the date of entry of this Final Judgment, including user-facing Search Features that enable query correction, modification, or expansion; and

    3.    the Local, Maps, Video, Images, and Knowledge Panel Search Feature content that Google provides under any of its current search syndication agreements as of the date of the entry of this Final Judgment.

    B.    <u>Search Syndication License Terms</u>: The search syndication license specified in Section V.A shall have the following additional features:

    1.    Google shall make syndicated content available via an API.

    2.    Google shall provide responses with latency and reliability functionally equivalent to what any other user of Google's search syndication products would receive as of the date of entry of this Final Judgment.

    3.    Google shall provide the license on a non-discriminatory basis to any Qualified Competitor on terms no less favorable than the most favorable terms Google provides under any current search syndication agreements as of the date of entry of this Final Judgment.

    4.    Syndication shall start with significant access to the data required by Section V.A above and decline over the course of five (5) years with an

expectation that Qualified Competitors will become independent of Google over time through investment in their own search capabilities. Qualified Competitors' use of Google's search syndication services in the first year of a syndication license available under Section V.A shall be capped at 40% of the Qualified Competitor's annual queries. The scope of allowable syndication beyond the first year of a syndication license available under Section V.A shall be determined by the Plaintiffs in consultation with the TC.

5. Google may not consent to Qualified Competitors exceeding syndication limits set by Plaintiffs, and Qualified Competitors shall submit to the TC audits of syndication frequency and scope. The frequency and content of these audits shall be determined by the Plaintiffs in consultation with the TC.

6. Google may impose no restrictions or conditions on how a Qualified Competitor uses, displays, or integrates information or services obtained under this Section V beyond the least restrictive terms Google provides under any current search syndication agreements as of the date of entry of this Final Judgment.

7. Qualified Competitors may elect, in their sole discretion, which queries (some or all) for which they will request syndicated results and which syndication components to display or use and may do so in any manner they choose, except that Google may impose restrictions on the display or use of syndication components no less favorable than what it provides

under any current search syndication agreements as of the date of entry of this Final Judgment.

8.    It shall be the Qualified Competitor's sole discretion to determine how much information to share with Google regarding the end-user, except that Google may require a Qualified Competitor to share information with Google regarding the end-user, on terms no less favorable than what any other user of Google's search syndication products would receive as of the date of entry of this Final Judgment, as is necessary for the purposes of (1) basic search syndication functionality; (2) spam and abuse detection; and (3) legal or regulatory compliance.

9.    Google may not retain or use (in any way) syndicated queries or other information it obtains under Section V.A for its own products and services beyond the most limited retention and use permitted under any of Google's current search syndication agreements as of the date of entry of this Final Judgment.

10.    For the avoidance of doubt, this Final Judgment only requires Google to provide syndication for queries that originate in the United States. Synthetic queries are not eligible for syndication under this Final Judgment.

C.    <u>Existing Syndication Agreements</u>: The provisions of this Section V shall have no effect on any existing Google syndication agreements with third parties or on its ability to enter into syndication agreements with third parties other than Qualified Competitors, except that Google shall permit any entity with an existing syndication agreement who becomes a Qualified

Competitor, at the Qualified Competitor's sole discretion, to terminate its existing agreement in favor of the remedies in this Section V.

## VI.    SEARCH TEXT AD AUCTION CHANGES AND SEARCH TEXT ADS SYNDICATION

A.    <u>Search Text Ads Auction Changes</u>: Within a reasonable period of time after the Technical Committee's appointment, Plaintiffs shall submit a proposal to the Court, informed by the Technical Committee's views, by which Google shall periodically provide the Technical Committee and Plaintiffs a report outlining all changes to its Search Text Ads auction meeting certain parameters and, for each such change, (1) Google's public disclosure of that change or (2) a statement why no public disclosure is necessary.  Plaintiffs' proposal shall detail the types of changes that must be disclosed, the frequency of disclosure, the steps to mitigate undue burden on Google, and the steps to ensure any public disclosure of an ad auction change (if not already made by Google) avoids revealing Google's trade secrets, in accord with the Court's instructions in its September 2, 2025, Memorandum Opinion. Plaintiffs have the right to challenge any disclosure they deem inadequate. For the avoidance of doubt, Google need not report on auction experiments, which are generally tested on some fraction of Google's Search Text Ads traffic, but Google shall disclose changes to the Search Text Ads auction that result from any such auction experiments.

B.    <u>Search Text Ads Syndication</u>: Google shall take steps sufficient to make available to any Qualified Competitor a Search Ads Syndication License whose term will be five (5) years from the date the license is signed. The Search Text Ads syndication agreement shall have the following additional features:

1.    Google shall provide latency, reliability, and performance functionally equivalent to what Google provides any other user of Google's Search

Text Ads syndication products, e.g., AdSense for Search, or any other current or future products offering syndicated Seach Text Ads. Search Text Ads syndication licenses to Qualified Competitors shall include all types of Search Text Ads (including any assets, extensions, or similar Search Text Ad variations) available through its syndication products. For the avoidance of doubt, Google shall only provide syndication for queries that originate in the United States.

2.    Google shall provide the Search Ads Syndication License to Qualified Competitors on financial terms no worse than those offered to any other user of Google's Search Text Ads syndication products.

3.    Google shall not require Qualified Competitors to share more information with Google regarding the end-user than it requires from any other user of Google's Search Text Ads syndication products.

4.    The only permitted use of the information and data that Qualified Competitors obtain from Google pursuant to this Section VI is to display the ad results to the end user who submitted the associated query, as further detailed in this section.

5.    Google shall (i) make the purchase of ads syndicated under this Section VI.B available to advertisers on a nondiscriminatory basis comparable to, and no more burdensome than, the availability of Google's other Search Text Ads; (ii) include Qualified Competitors in its Search Partner Network; and (iii) provide advertisers the option to appear on each individual Qualified Competitor's sites on a site-by-site basis (i.e., an

advertiser can choose to appear as a syndicated result on a Qualified Competitor's site regardless of whether it opts into the Search Partner Network or chooses to appear on any other site, including Google.com) to the same extent advertisers have such choice for any Google Search Text Ads Syndicator as of the date of entry of this Final Judgment.

6.     Qualified Competitors shall have the same formatting flexibility available to any other user of Google's Search Text Ads syndication products, shall be free to use other providers of syndicated search ads or display their own ads, and shall not be required to provide Google ads with preferential placement over equivalent ads requested from other sources. Google may place only ordinary-course restrictions on the use or display of syndicated ad content intended to guard against "trick to click" schemes, ensure the proper ordering of ads, guarantee ad quality, protect the advertiser, or prevent ad misuse, and may place restrictions on scraping, indexing, or crawling syndicated results, but such restrictions shall be no more restrictive than those applied to any other user of Google's Search Text Ads syndication products.

7.     Google may only retain or use (in any way) syndicated queries or other information it obtains under this Section VI.B to "build, improve, and maintain" its ad infrastructure in the same manner it used such information as of the date of entry of this Final Judgment.

8.    Google need not grant Qualified Competitors the right to set a minimum

cost per click for syndicated ads unless failing to do so would violate

Section VI.B.1.

9.    For the avoidance of doubt, this Final Judgment only requires Google to

provide syndication for queries that originate in the United States, from

human end users. Synthetic queries are not eligible for syndication under

the Final Judgment.

10.   If Google in good faith believes a Qualified Competitor is in breach of the

terms of its agreement under this Section VI, Google may exercise its

rights under the agreement. Before exercising such rights, Google shall

first provide simultaneous notice to the Technical Committee and the

Plaintiffs of the breach and the actions Google is taking in light of the

breach. Google shall provide this notice in time such that Plaintiffs have a

reasonable period of time to raise objections. If Plaintiffs object and seek a

resolution by the Court, Google may not take any action until the later of

(i) two weeks after Plaintiffs seek Court intervention, if the Court does not

act, or (ii) until further order of the Court, if the Court intervenes.

11.   Google shall be entitled to propose additional terms to the Search Text Ad

syndication agreements with Qualified Competitors as necessary to

guarantee ad quality, protect advertisers, and prevent ad misuse. Qualified

Competitors are free to reject these proposed additional terms. Google

shall provide simultaneous notice to the Technical Committee and the

Plaintiffs of any such term and allow Plaintiffs a reasonable period of time

to raise objections. If Plaintiffs object and seek a resolution by the Court, Google may not modify its Search Text Ad syndication agreements under this Section VI until the later of (i) two weeks after Plaintiffs seek Court intervention, if the Court does not act, or (ii) until further order of the Court, if the Court intervenes.

12. Qualified Competitors may elect, in their sole discretion, which queries (some or all) for which they will request syndicated search text ad results and which syndication components to display or use and may do so in any manner they choose, except that Google may impose restrictions on the display or use of syndication components no less favorable than what it provides under any current search text ad syndication agreements as of the date of entry of this Final Judgment.

C. <u>Existing Syndication Agreements</u>: The provisions of this Section VI shall have no effect on any existing Google search text ad syndication agreements with third parties or on its ability to enter into search text ad syndication agreements with third parties other than Qualified Competitors, except that Google shall permit any entity with an existing search text ad syndication agreement who becomes a Qualified Competitor, at the Qualified Competitor's sole discretion, to terminate its existing agreement in favor of the remedies in this Section VI.

## VII. COMPLIANCE, ADMINISTRATION, AND ENFORCEMENT PROCEDURES

A. <u>Technical Committee</u>:

1. Within sixty (60) days of entry of this Final Judgment, the Court will appoint, pursuant to the procedures below, a five-person Technical Committee ("TC") to assist in enforcement of and compliance with this Final Judgment.

2.    The TC members shall be experts in some combination of software engineering, information retrieval, artificial intelligence, economics, behavioral science, as well as data privacy and data security. No TC member may have a conflict of interest that could prevent them from performing their duties in a fair and unbiased manner. In addition, unless Plaintiffs specifically consent, no TC member:

    a)    may have been employed in any capacity by Google or any Competitor to Google within the six-month period directly predating their appointment to the TC;

    b)    may have been retained by any party as a consulting or testifying expert in this action; or

    c)    may perform any work for Google or any Competitor of Google during the time that they serve on the TC and for one (1) year after ceasing to serve on the TC.

3.    Within thirty (30) days of entry of this Final Judgment, Plaintiff United States (after consultation with the Co-Plaintiff States), the Colorado Plaintiff States, and Google shall each select one member of the TC, and a majority of those three members will then select the remaining two members. Plaintiff United States' appointee shall serve as chair. The selection and approval process shall be as follows:

    a)    As soon as practicable after submission of this Final Judgment to the Court, the Plaintiffs as a group shall identify to Google the individuals they propose to select as their designees to the TC, and

Google shall identify to Plaintiffs the individual it proposes to select as its designee. No party may object to a selection on any ground other than failure to satisfy the requirements of Section VII.A.2 above. Any such objection shall be made within ten (10) business days of receipt of notification of selection.

b)      The Plaintiffs shall apply to the Court for appointment of the persons selected pursuant to Section VII.A.3.a) above. Any objections to the eligibility of a selected person that the parties have failed to resolve between themselves will be decided by the Court based solely on the requirements stated in Section VII.A.2 above.

c)      As soon as practicable after their appointment by the Court, the three members of the TC selected by the Plaintiffs and Google (the "Standing Committee Members") shall identify to the Plaintiffs and Google the persons that they in turn propose to select as the remaining members of the TC. The Plaintiffs and Google shall not object to these selections on any grounds other than failure to satisfy the requirements of Section VII.A.2 above. Any such objection shall be made within ten (10) business days of receipt of notification of the selection and shall be served on the other party as well as on the Standing Committee Members.

d)      The Plaintiffs shall apply to the Court for appointment of the persons selected by the Standing Committee Members. If the

Standing Committee Members cannot agree on the fourth or fifth members of the TC, that member or members shall be appointed by the Court. Any objection by Plaintiffs or Google to the eligibility of the person selected by the Standing Committee Members which the parties have failed to resolve among themselves shall also be decided by the Court based solely on the requirements stated in Section VII.A.2 above.

4. The Standing Committee Members shall serve for an initial term of thirty-six (36) months; the remaining members shall serve for an initial term of thirty (30) months. At the end of a TC member's term, the party that originally selected them may, in its sole discretion, either request re-appointment by the Court to additional terms of the same length, or replace the TC member in the same manner as provided for in Section VII.A.3 above. In the case of the fourth and fifth members of the TC, those members shall be re-appointed or replaced in the manner provided in Section VII.A.3 above.

5. If Plaintiffs determine that a member of the TC has failed to act diligently and consistently with the purposes of this Final Judgment, or if a member of the TC resigns, or for any other reason ceases to serve in their capacity as a member of the TC, the person or persons that originally selected the TC member shall select a replacement member in the same manner as provided for in Section VII.A.3 above.

6.      Promptly after appointment of the TC by the Court, the Plaintiffs shall
enter into a Technical Committee Services Agreement ("TC Services
Agreement") with each TC member that grants the rights, powers, and
authorities necessary to permit the TC to perform its duties under this
Final Judgment. Google shall indemnify each TC member and hold them
harmless against any losses, claims, damages, liabilities or expenses
arising out of, or in connection with, the performance of the TC's duties,
except to the extent that such liabilities, losses, damages, claims, or
expenses result from misfeasance, gross negligence, willful or wanton
acts, or bad faith by the TC member. The TC Services Agreements shall
include the following:

a)      The TC members shall serve, without bond or other security, at the
cost and expense of Google on such terms and conditions as the
Plaintiffs approve, including the payment of reasonable fees and
expenses.

b)      The TC Services Agreement shall provide that each member of the
TC must comply with the limitations provided for in
Section VII.A.2 above.

7.      The TC shall have the following powers and duties:

a)      The TC shall have the power and authority to monitor Google's
implementation of and compliance with its obligations under this
Final Judgement, in the manner describe further herein.

b) The TC shall have the power to recommend reasonable data security standards applicable to Qualified Competitors, which shall be approved by the Plaintiffs.

c) The TC may, on reasonable notice to Google:

(1) interview, either informally or on the record, any Google personnel, who may have their individual counsel present; any such interview will be subject to the reasonable convenience of such personnel and without restraint or interference by Google;

(2) inspect and copy any document in the possession, custody, or control of Google personnel;

(3) obtain reasonable access to any system or equipment to which Google personnel have access;

(4) obtain reasonable access to, and inspect, any physical facility, building or other premises to which Google personnel have access; and

(5) require Google personnel to provide documents, data and other information, and to submit reports to the TC containing such material, in such form as the TC may reasonably direct.

d) The TC shall have access to Google's source code and algorithms, subject to a confidentiality agreement, as approved by the Plaintiffs and to be agreed to by the TC members pursuant to Section

VII.A.8 below, and by any staff or consultants who may have access to the source code and algorithms. The TC may study, interrogate and interact with the source code and algorithms in order to perform its functions and duties, including the handling of complaints and other inquiries from third parties.

e)      The TC shall receive complaints from Google's Compliance Officer (as described in Section VII.B below), third parties, or the Plaintiffs and handle them in the manner specified in Section VII.C below.

f)      The TC shall report in writing to the Plaintiffs, initially every three (3) months for three (3) years and thereafter every six (6) months until expiration of this Final Judgment, the actions it has undertaken in performing its duties pursuant to this Final Judgment, including the identification of each business practice reviewed and any recommendations made by the TC.

g)      Regardless of when reports are due, when the TC has reason to believe that there may have been a failure by Google to comply with any term of this Final Judgment, or that Google is attempting to circumvent any provision of this Final Judgment or the intended purposes of this Final Judgment, the TC shall immediately notify the Plaintiffs in writing setting forth the relevant details.

h)      TC members may communicate with third parties about how their complaints or inquiries might be resolved with Google, so long as

the confidentiality of information obtained from Google is
maintained.

i)  The TC may hire at the cost and expense of Google, with prior
notice to Google and subject to approval by the Plaintiffs, such
staff or consultants (all of whom must meet the qualifications of
Sections VII.A.2.a–c) as are reasonably necessary for the TC to
carry out its duties and responsibilities under this Final Judgment.
The compensation of any person retained by the TC shall be based
on reasonable and customary terms commensurate with the
individual's experience and responsibilities.

j)  The TC shall account for all reasonable expenses incurred,
including agreed upon fees for the TC members' services, subject
to the approval of the Plaintiffs. Google's failure to promptly pay
the TC's accounted-for costs and expenses, including for agents
and consultants, shall constitute a violation of this Final Judgment
and may result in sanctions imposed by the Court. Google may, on
application to the Court, object to the reasonableness of any such
fees or other expenses only if Google has conveyed such
objections to the Plaintiffs and the TC within ten (10) calendar
days of receiving the invoice for such fees or other expenses. On
any such application, (a) Google shall bear the burden to
demonstrate unreasonableness; (b) Google shall establish an
escrow account into which it deposits the disputed costs and

expenses until the dispute is resolved; and (c) the TC members shall be entitled to recover all costs incurred on such application (including reasonable attorneys' fees and costs), regardless of the Court's disposition of such application, unless the Court expressly finds that the TC's opposition to the application was without substantial justification.

8.    Each TC member, and any consultants or staff hired by the TC, shall sign a confidentiality agreement prohibiting disclosure of any information obtained in the course of performing his or her duties as a member of the TC or as a person assisting the TC, to anyone other than another TC member or a consultant or staff hired by the TC, Google, the Plaintiffs, or the Court. All information gathered by the TC in connection with this Final Judgment and any report and recommendations prepared by the TC shall be treated as Highly Confidential under the Protective Order in this case, and shall not be disclosed to any person other than another TC member or a consultant or staff hired by the TC, Google, the Plaintiffs, and the Court except as allowed by the Protective Order entered in the Action or by further order of this Court. No member of the TC may make any public statements relating to the TC's activities.

B.    <u>Internal Compliance Officer:</u>

1.    Google shall designate, within thirty (30) days of entry of this Final Judgment, an employee of Google as the internal Compliance Officer with

responsibility for administering Google's antitrust compliance program
and helping to ensure compliance with this Final Judgment.

2.    Within seven (7) days of the Compliance Officer's appointment, Google
shall identify to the Plaintiffs the Compliance Officer's name, business
address, telephone number, and email address. Within fifteen (15) days of
a vacancy in the Compliance Officer position, Google shall appoint a
replacement and identify to the Plaintiffs the replacement Compliance
Officer's name, business address, telephone number, and email address.
Google's initial or replacement appointment of the Compliance Officer is
subject to the approval of the Plaintiffs.

3.    The Compliance Officer shall supervise the review of Google activities to
ensure that they comply with this Final Judgment. The Compliance
Officer may be assisted by other employees of Google.

4.    The Compliance Officer shall be responsible for performing the following
activities:

a)    within thirty (30) days after entry of this Final Judgment,
distributing a copy of the Final Judgment to all officers and
directors of Google;

b)    distributing a copy of this Final Judgment to any person who
succeeds to a position described in Section VII.B.4.a above within
thirty (30) days of the date the person starts that position;

c)    ensuring that those persons designated in Section VII.B.4.a above
are annually trained on the meaning and requirements of this Final

Judgment and the U.S. antitrust laws and advising them that Google's legal advisors are available to confer with them regarding any question concerning compliance with this Final Judgment or the U.S. antitrust laws;

d)     obtaining from each person designated in Section VII.B.4.a above an annual written certification that he or she: (i) has read and agrees to abide by the terms of this Final Judgment; and (ii) has been advised and understands that his or her failure to comply with this Final Judgment may result in a finding of contempt of court;

e)     maintaining a record of all persons to whom a copy of this Final Judgment has been distributed and from whom the certification described in Section VII.B.4.d above has been obtained;

f)     annually communicating to all employees that they may disclose to the Compliance Officer, without reprisal for such disclosure, information concerning any violation or potential violation of this Final Judgment or the U.S. antitrust laws by Google, and establishing a confidential avenue for any employee to report potential violations;

g)     establishing and maintaining the website provided for in Section VII.C.2.a below;

h)     receiving complaints from third parties, the TC, and the Plaintiffs concerning Google's compliance with this Final Judgment and

following the appropriate procedures set forth in Section VII.C
below;

i)    maintaining a record of all complaints received and action taken by
Google with respect to each such complaint; and

j)    ensuring Google retains all relevant documents and electronically
stored information, regardless of medium or form, related to this
Final Judgment and all complaints received and or action taken by
Google with respect to any complaint.

5.    Google shall within thirty (30) days further appoint a senior business
executive, who has visibility into any Google entity with obligations under
this Final Judgment, whom Google shall make available to update the
Court on Google's compliance at regular status conferences or as
otherwise ordered.

6.    Google shall retain (if it has not already) a licensed attorney in good
standing in California to collect documents and interview employees and
generally review Google's document retention practices and Google's
compliance with its legal discovery obligations under this case and final
judgment. This attorney shall be retained for a term no shorter than
eighteen (18) months. This attorney (and any team this attorney
assembles) shall present to the Audit and Compliance Committee (or any
successor Board Committee) on the retention of documents and Google's
compliance with its discovery obligations.

C.    <u>Voluntary Dispute Resolution</u>:

1.    Third parties may submit complaints concerning Google's compliance with this Final Judgment to the Plaintiffs, the TC, or the Compliance Officer.

2.    Third parties, the TC, or Plaintiffs in their discretion may submit to the Compliance Officer any complaints concerning Google's compliance with this Final Judgment. Without in any way limiting their authority to take any other action to enforce this Final Judgment, the Plaintiffs may submit complaints to the Compliance Officer whenever doing so would be consistent with the public interest.

a)    To facilitate the communication of complaints and inquiries by parties, the Compliance Officer shall place on Google's website, in a manner acceptable to the Plaintiffs, the procedures for submitting complaints. To encourage whenever possible the informal resolution of complaints and inquiries, the website shall provide a mechanism for communicating complaints and inquiries to the Compliance Officer.

b)    Google has thirty (30) days after receiving a complaint to attempt to resolve or to reject it.

c)    Within thirty (30) days of receiving a complaint, the Compliance Officer shall advise the TC and the Plaintiffs of the nature of the complaint and its disposition. The TC may then propose to the

Plaintiffs further actions consistent with this Final Judgment, including consulting with Plaintiffs regarding the complaint.

3.     The Compliance Officer, third parties, or the Plaintiffs in their discretion may submit to the TC any complaints concerning Google's compliance with this Final Judgment.

a)     The TC shall investigate the complaints it receives and shall consult with the Plaintiffs regarding its investigation. At least once during its investigation, and more often when it may help resolve the complaints informally, the TC shall meet with the Compliance Officer to allow Google to respond to the substance of the complaints and to determine whether the complaints can be resolved without further proceedings.

b)     Following its investigation, the TC shall advise Google and the Plaintiffs of its conclusion and its proposal for cure.

c)     Reports and recommendations from the TC may be received into evidence by the Court in connection with any effort by any Plaintiff to enforce this Final Judgment but shall not be otherwise made available in any other court or tribunal related to any other matter. No member of the TC shall be required to testify by deposition, in court, or before any other tribunal regarding any matter related to this Final Judgment.

d)      The TC may preserve the anonymity of any third-party

complainant where it deems it appropriate to do so upon the

request of the Plaintiffs or the third party, or in its discretion.

D.    <u>Compliance Inspection</u>:

1.    Without in any way limiting the sovereign enforcement authority of each

of the Colorado Plaintiff States, the Colorado Plaintiff States shall form a

committee to coordinate their enforcement of this Final Judgment. Neither

a Co-Plaintiff State nor a Colorado Plaintiff State may take any action to

enforce this Final Judgment without first consulting with the United States

and with the Colorado Plaintiff States' enforcement committee.

2.    For the purposes of determining or securing compliance with this Final

Judgment or of determining whether this Final Judgment should be

modified or vacated, upon written request of an authorized representative

of the Assistant Attorney General for the Antitrust Division (after

consultation with the Co-Plaintiff States and the Colorado Plaintiff States'

enforcement committee) or of the Attorney General of a Co-Plaintiff State

or the Attorney General of a Colorado Plaintiff State (after consultation

with the United States and the Colorado Plaintiff States' enforcement

committee), as the case may be, and reasonable notice to Google, Google

shall permit, from time to time and subject to legally recognized

privileges, authorized representatives, including agents retained by any

Plaintiff:

a) to have access during Google's office hours to inspect and copy, or at the option of the Plaintiff, to require Google to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Google relating to any matters contained in this Final Judgment; and

b) to interview, either informally or on the record, Google's officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Google.

3. Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division (after consultation with the Co-Plaintiff States and the Colorado Plaintiff States' enforcement committee) or of the Attorney General of a Co-Plaintiff State or the Attorney General of a Colorado Plaintiff State (after consultation with the United States and the Co-Plaintiff States' enforcement committee), Google shall submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## VIII.  EFFECTIVE DATE AND EXPIRATION OF FINAL JUDGMENT

This Final Judgment will take effect sixty (60) days after the date on which it is entered (the "Effective Date"), and Plaintiffs shall report the date on which Google has substantially implemented all provisions of this Final Judgment, except for Section VII.A, which shall take effect immediately upon entry. Unless the Court grants an extension or early termination is

granted, this Final Judgment will expire six (6) years from the Effective Date. This Final

Judgment may be terminated upon notice by the United States (after consultation with the Co-

Plaintiff States), the Colorado Plaintiff States' enforcement committee, and Google that

continuation of this Final Judgment is no longer necessary to restore competition in the

monopolized markets.

## IX.    DEFINITIONS

As used in this Final Judgment:

A.      "API" or "application programming interface" means a mechanism that allows

different software components to communicate with each other.

B.      "Apple" means Apple Inc., a corporation organized and existing under the laws of

the State of California, headquartered in Cupertino, California, its successors and assigns, and its

subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors,

officers, managers, agents, and employees.

C.      "Browser Developer" means a developer, owner, or operator of a Third-Party

Browser and includes, by way of example, Apple, Mozilla Corp., and Samsung Electronics Co.,

Ltd.

D.      "Chrome Browser Application" means the browser software application currently

marketed by Google as "Google Chrome" and its successors.

E.      "Competitor" means any provider of, or potential entrant in the provision of (i) a

General Search Engine (GSE) in the United States, (ii) Search Text Ads in the United States, or

(iii) a GenAI Product in the United States.

F.      "Consideration" means anything of value, including monetary payment; provision

of preferential licensing terms; technical, marketing, and sales support; developer support; or

hardware or software certification or approval.

31

G.      "Default Search Engine" means a search engine that is set by a Browser

Developer to respond to user queries if a user takes no action to select a particular search engine.

H.      "Device" or "device" means any single smartphone, tablet, laptop, or desktop. For

clarity, any two devices are different devices, even if they are the same make and model (e.g.,

two Samsung Galaxy S25s are two devices; two Apple iPhone 16 Pros are two devices).

I.      "GenAI" or "Generative AI" is a type of artificial intelligence that creates new

content including but not limited to text, images, code, classifications, and other media using

machine learning models.

J.      "GenAI Product" means any application, software, service, feature, tool,

functionality, or product that involves or makes use of Generative AI capabilities or models. It

can include GenAI Search Access Points.

K.      "General Search Engine" or "GSE" means software or a service that produces

links to websites and other relevant information in response to a user query or prompt.

L.      "Google" means (1) Defendant Google LLC, a limited liability company

organized and existing under the laws of the State of Delaware, headquartered in Mountain

View, California; (2) its successors and assigns, subsidiaries, divisions, groups, affiliates,

partnerships, and joint ventures controlling or overseeing Google Search (including syndicated

products), Search Text Ads (including syndicated products) the Chrome Browser Application,

the Google Search Application, the Google Assistant Application, and any related Google GenAI

Product; and (3) the directors, officers, managers, agents, and employees of such entities

specified in this Section IX.L who oversee Google Search (including syndicated products),

Search Text Ads (including syndicated products) the Chrome Browser Application, the Google

Search Application, the Google Assistant Application, and any related Google GenAI Product.

M.    "Google Assistant Application" means (1) the user-facing mobile assistive service software application marketed by Google as "Google Assistant" and its successors and (2) any Google GenAI Product.

N.    "Google GenAI Product" means any GenAI Product offered by Google including by way of example, the stand-alone user-facing mobile software application currently marketed by Google as the "Google Gemini" application (and that application's functionally equivalent successors).

O.    "Google Play" means the user-facing mobile software application distribution service currently marketed by Google as the "Play Store" and its successors.

P.    "Google Search" means the web search and search advertising services offered by Google at Google.com.

Q.    "Google Search Application" means the user-facing mobile online search software application currently marketed by Google as the "Google app" or the "Google Search app" (and its successors).

R.    The terms "include" and "including" should be read as "including but not limited to," and any use of either word is not limited in any way to any examples provided.

S.    "Marginal Cost" or "marginal cost" means the direct total production cost of producing an additional unit of a good or service, which is determined by calculating the change in direct total production cost resulting from Google providing the additional unit(s) of data or services required under this Final Judgment.

T.    "Operating System Version" means a particular desktop or mobile operating system including, by way of example, Microsoft Windows, Apple iOS, Apple Mac OS, Apple iPad OS, or Android.

U.      "Person" or "person" means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

V.      "Privacy Mode" means a mode within a web browser or an Apple product or service such as Siri or Spotlight that is designed to offer a preconfigured privacy setting and includes, by way of example, Private Browsing in Apple Safari, Private mode in Mozilla Firefox, and Secret mode in Samsung Internet.

W.      "Qualified Competitor" means a Competitor who meets the Plaintiffs' approved data security standards as recommended by the Technical Committee and agrees to regular data security and privacy audits by the Technical Committee, who makes a sufficient showing to the Plaintiffs, in consultation with the Technical Committee, of a plan to invest and compete in or with the GSE and/or Search Text Ads markets, and who does not pose a risk to the national security of the United States.

X.      "Search Access Point" means any software, application, interface, digital product, or service where a user can enter a query or prompt and, in response to at least some user queries or prompts, receive (or be directed to a place to receive) a response that includes information from a GSE, including links to websites. Search Access Points include OS-level Search Access Points, browsers (including Search Access Points within browsers such as browser address bars), search apps, and GenAI Products that can retrieve and display information from a GSE, including links to websites.

Y.      "Search Feature" in Google Search means any user-facing content on a SERP that is not an organic link. Search Features include images, featured snippets, hotel units, query expansion features like auto-complete, "did you mean" prompts, spelling corrections, and related searches.

Z.     "Search Index" means any databases that store and organize information about websites and their content that is crawled from the web.

AA.     "Search Text Ad" means a general search text advertisement, which is an ad that resembles an organic link on a SERP. Search Text Ads can include images and often appear at the top of the SERP with a designation indicating that they are paid advertisements. "Search Text Ad" also includes Search Text Ads appearing in or in connection with Google AI Overviews.

BB.     "SERP" or "Search Engine Results Page" means the results provided by a search engine, in response to a user query, including links and other features and content, including from a broad index of the web.

CC.     "Technical Committee" or "TC" means the five-person committee of experts appointed by the Court pursuant to Section VII.A.

DD.     "Third-Party Browser" means any web browser that is not Google Chrome or another proprietary Google web browser and includes, by way of example, Apple Safari, Mozilla Firefox, and Samsung Internet.

EE.     "Third-Party General Search Service" means a web search service that can respond to a broad range of search query categories and offers functionality that is substantially similar to Google Search, and is not owned by Google or its affiliates.

FF.     "Third-Party GenAI Product" means any GenAI Product that is not owned by Google.

GG.     "User-side Data" means all data that can be obtained from users in the United States, directly through a search engine's interaction with the user's Device, including software running on that Device, by automated means. User-side Data includes information Google collects when answering commercial, tail, and local queries.

## X.    THIRD-PARTY RIGHTS

Nothing in this Final Judgment is intended to confer upon any other persons any rights or remedies of any nature whatsoever or by reason of this Final Judgment other than the right to submit complaints to the Compliance Officer and the TC.

## XI.    RETENTION OF JURISDICTION AND ENFORCEMENT OF FINAL JUDGMENT

A.    Jurisdiction is retained by this Court for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of its provisions (including an order to divest any relevant Google business), for the enforcement of compliance with this Final Judgment, and for the punishment of any violation of this Final Judgment. For example, Plaintiffs may request that the Court revisit its decision on a payment ban, including but not limited to a ban on default payments, if competition is not substantially restored by this Order. In any motion to modify this Final Judgment, Plaintiffs need not show any change in circumstances, but need only demonstrate that modification is necessary to achieve the intended purposes of this Final Judgment to restore competition in the monopolized markets. In any action to enforce this Final Judgment, Google must show by a preponderance of the evidence that its actions are in compliance with this Final Judgment.

B.    The Court may act *sua sponte* to issue orders or directions for the construction or carrying out of this Final Judgment, for the enforcement of compliance, and for the punishment of any violation.

C.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the U.S. antitrust laws and to restore the competition the Court found was harmed by Google's illegal conduct.

D.      For a period of four (4) years following the expiration of this Final Judgment, if any Plaintiff has evidence that Google violated this Final Judgment before it expired, that Plaintiff may file an action against Google in this Court requesting that the Court order (1) Google to comply with the terms of this Final Judgment for an additional term of at least four (4) years following the filing of the enforcement action; (2) all appropriate contempt remedies; and (3) additional relief needed to ensure Google complies with the terms of this Final Judgment.

E.      In connection with a successful effort by any Plaintiff to enforce this Final Judgment against Google, whether litigated or resolved before litigation, Plaintiff may request that the Court order Google to reimburse that Plaintiff for the fees and expenses of its attorneys, as well as all other costs, including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

Date: _____

_____
Judge Amit Mehta
United States District Judge