# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Google LLC,<br><br>　　　　　　　　Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>Google LLC,<br><br>　　　　　　　　Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**APPENDIX TO DEFENDANT GOOGLE LLC'S BRIEF IN SUPPORT OF ENTRY OF
ITS PROPOSED FINAL JUDGMENT**

As referenced in Google's Brief in Support of Entry of Its Proposed Final Judgment, for each disputed provision in Sections IV, V, and VI (and the relevant definitions from Section IX) of the parties' Proposed Final Judgments not addressed in Google's brief, Google respectfully submits this appendix identifying the relevant provisions and providing a short explanation of why the Court should adopt Google's language.

**Additional Disputed Definition (Section IX)**

| Google's PFJ § IX.CC<br>"Web Search Index" Definition | Plaintiffs' PFJ § IX.Z<br>"Search Index" Definition |
|---|---|
| "Web Search Index" means databases that store and organize information about websites and their content that is crawled from the web. <u>For the avoidance of doubt, it does not include Google's vertical indexes or its video, images, or other specialized indexes that contain information not crawled from the web.</u> | "Search Index" means any databases that store and organize information about websites and their content that is crawled from the web. |

Google's definition includes clarifying language to implement the Court's instruction to "limit the data shared only to what is contained in Google's *web search index*." Rem. Op. at 141 (emphasis added) (citing testimony regarding "Google's other various indexes that include data not crawled from the web, including video, images, and verticals").

**Additional Disputed Data Disclosure Provisions (Section IV)**

| Google's PFJ § IV.A.4<br>Index Data Provided | Plaintiffs' PFJ § IV.A<br>Index Data Provided |
|---|---|
| This information must be provided for all websites in the Web Search Index Google uses for searches on Google.com, the Google Search App, or future Google general search products. | This information shall be provided for all websites in the full Search Index Google uses for searches on Google.com, the Google Search Application, <u>or any other current</u> or future Google general search products. |

Google's provision ensures that the appropriate "web search index" data is shared. *See* Rem. Op. at 141. Google understands from meet and confers with Plaintiffs that there is no other

1

"current" general search product that Plaintiffs are intending this language to capture, and thus Google's language omits that reference.

| Google's PFJ § IV.B.3<br>Data Not Disclosed | Plaintiffs' PFJ § IV.B<br>Data Not Disclosed |
|---|---|
| For the avoidance of doubt, "User-side Data" for purposes of Section IV includes only the underlying data, not the model itself or any ranking signal or score, spam score, information retrieval score, information satisfaction score, query interpretation information, query suggestion information, query-based salient term, or document salient term. | For clarity, this Section IV.B shall not require disclosure of intellectual property or trade secrets, such as algorithms, ranking signals, or post-trained LLMs. |

Google's provision reflects the Court's language requiring Google to share only User-side Data "underlying" RankEmbed and Glue while excluding specific types of data that Plaintiffs expressly do not seek. *See* Rem. Op. at 157 & n.21 (citing Pls.' RPFOF ¶¶ 1151-52). Plaintiffs' language fails to exclude "proprietary data," which Plaintiffs previously conceded they were not seeking. Rem. Op. at 163 ("Plaintiffs also have made clear that they are not seeking even modest proprietary data."). In addition, Google's language identifies the exempted data specifically, to avoid any dispute regarding what qualifies as "intellectual property" or "trade secrets."

| Google's PFJ § IV.B.4<br>Disclosure Frequency | Plaintiffs' PFJ § IV.B<br>Disclosure Frequency |
|---|---|
| The number of times a Qualified Competitor may receive a dataset will be capped by the Court after consultation with the Technical Committee. | Google shall make this data available to Qualified Competitors at least twice, with the exact number and frequency of such disclosures to be determined by the Court after consultation <u>with Plaintiffs</u> and the Technical Committee (TC). |

2

Google's provision reflects the Court's language stating its intent "to set a cap on the number of such disclosures that can occur during the term of the judgment," following consultation with the Technical Committee. *See* Rem. Op. at 158-59. Plaintiffs' language inserts "consultation with Plaintiffs" into the process.

**Additional Disputed Search Syndication Provisions (Section V)**

| Google's PFJ § V.A<br>Term of Syndication License | Plaintiffs' PFJ § V.A<br>Term of Syndication License |
|---|---|
| Google must take steps sufficient to make available to any Qualified Competitor a syndication agreement whose term will be five (5) years from the date Google's search syndication service, as set forth in this Final Judgment, is made available to the Qualified Competitor, <u>unless there are fewer than five (5) years remaining before expiration of the term of the Final Judgment, in which case the term will be the remainder of the term of the Final Judgment</u>. | Google shall take steps sufficient to make available to any Qualified Competitor, . . . a syndication license whose term will be five (5) years from the date the license is signed . . . . |

Google's proposal clarifies that Google is not required to offer a syndication license that outlasts the term of the Final Judgment.

| Google's PFJ § V.B.2<br>Latency and Reliability | Plaintiffs' PFJ § V.B.2<br>Latency and Reliability |
|---|---|
| Google will provide Qualified Competitors with latency and reliability functionally equivalent to what Google ordinarily provides to other users of Google's search syndication products with respect to queries originating in the United States. For the avoidance of doubt, Google's obligations do not extend to latency and reliability differences that result from differences in product implementation, users, or are otherwise outside of Google's syndication products. | Google shall provide responses with latency and reliability functionally equivalent to what any other user of Google's search syndication products would receive as of the date of entry of this Final Judgment. |

3

Google's proposal provides for latency and reliability functionally equivalent to what Google ordinarily provides other users of its syndication products. Plaintiffs' proposal requires latency and reliability functionally equivalent to what Google provides *any* other user, regardless of the particular unique circumstances of that syndication user. Google's language additionally makes explicit what is implicit—that these obligations do not extend to variables that are outside of Google's control.

| Google's PFJ § V.B.4<br>Query Cap | Plaintiffs' PFJ § V.B.4<br>Query Cap |
|---|---|
| Qualified Competitors' use of Google's syndication services in the first year will be capped at 40% of Qualified Competitors' annual <u>U.S.</u> queries and decline over the course of a 5-year period with an expectation that Qualified Competitors will become independent of Google over time through investment in their own search capabilities. <u>The pace of this tapering, the methods for measuring and determining the percentage, and the application of the percentage will be determined by</u> **the Court** upon consultation with the Technical Committee in a manner that facilitates competition while incentivizing Qualified Competitors to move promptly to become independent of Google. | Syndication shall start with significant access to the data required by Section V.A above and decline over the course of five (5) years with an expectation that Qualified Competitors will become independent of Google over time through investment in their own search capabilities. Qualified Competitors' use of Google's search syndication services in the first year of a syndication license available under Section V.A shall be capped at 40% of the Qualified Competitor's annual queries. The scope of allowable syndication beyond the first year of a syndication license available under Section V.A shall be determined by the Plaintiffs in consultation with the TC. |

Google's proposal clarifies that the cap is tied to "annual <u>U.S.</u> queries" (as opposed to global queries) and calls for the pace of tapering to be determined by the Court upon consultation with the Technical Committee, as opposed to determined by Plaintiffs in consultation with the Technical Committee. *See* Rem. Op. at 177 ("[T]he court will call on the Technical Committee to assist . . . .").

4

| **Google's PFJ § V.B.6**<br>**Syndication Limits; Audits**<br><br>Google may not consent to Qualified Competitors exceeding syndication limits, and Qualified Competitors must submit to the Technical Committee audits of syndication frequency and scope. <u>The Technical Committee will make recommendations regarding the frequency and content of these audits, and the Court will have final authority over their frequency and scope</u>. | **Plaintiffs' PFJ § V.B.5**<br>**Syndication Limits; Audits**<br><br>Google may not consent to Qualified Competitors exceeding syndication limits <u>set by Plaintiffs</u>, and Qualified Competitors shall submit to the TC audits of syndication frequency and scope. <u>The frequency and content of these audits shall be determined by the Plaintiffs in consultation with the TC</u>. |
|---|---|

Google's proposal provides that the Technical Committee will make recommendations regarding the frequency and content of audits, with the Court holding final authority over their frequency and scope. Plaintiffs' proposal provides that they will set syndication limits themselves and determine the frequency and content of audits in consultation with the Technical Committee, with no apparent role for the Court.

| **Google's PFJ § V.B.12**<br>**Breach of Agreement**<br><br>If Google in good faith believes a Qualified Competitor is in breach of the terms of its agreement, it may exercise its rights under the agreement. Google must also provide simultaneous notice to the Technical Committee of the breach and the actions Google is taking in light of the breach. | [No equivalent provision in Plaintiffs' PFJ] |
|---|---|

Google's proposal provides a mechanism by which Google can address, and alert the Technical Committee to, violations of the syndication agreements.

5

**Additional Disputed Auction Disclosure and Search Text Ads Syndication Provisions**
**(Section VI)**

| Google's PFJ § VI.A<br>Search Text Ad Auction Changes | Plaintiffs' PFJ § VI.A<br>Search Text Ad Auction Changes |
|---|---|
| Within a reasonable period of time after the Technical Committee's appointment, <u>Plaintiffs and the Technical Committee</u> shall submit a proposal to the Court, by which Google shall periodically provide the Technical Committee and Plaintiffs a report outlining all changes to its Search Text Ads auction meeting certain parameters and, for each such change, (1) Google's public disclosure of that change or (2) a statement why no public disclosure is necessary. The proposal shall detail the types of changes that must be disclosed, the frequency of disclosure, the steps to mitigate undue burden on Google, and the steps to ensure any public disclosure of an ad auction change (if not already made by Google) avoids revealing Google's trade secrets, in accord with the Court's instructions in its September 2, 2025, Memorandum Opinion. For the avoidance of doubt, Google need not report on auction experiments, which are generally tested on some fraction of Google's Search Text Ads traffic. <u>Should any of these auction experiments result in ad auction launches that fall within the types of changes that must be disclosed under this Section, Google shall disclose such changes to Plaintiffs and the Technical Committee.</u> | Within a reasonable period of time after the Technical Committee's appointment, Plaintiffs shall submit a proposal to the Court, informed by the Technical Committee's views, by which Google shall periodically provide the Technical Committee and Plaintiffs a report outlining all changes to its Search Text Ads auction meeting certain parameters and, for each such change, (1) Google's public disclosure of that change or (2) a statement why no public disclosure is necessary. Plaintiffs' proposal shall detail the types of changes that must be disclosed, the frequency of disclosure, the steps to mitigate undue burden on Google, and the steps to ensure any public disclosure of an ad auction change (if not already made by Google) avoids revealing Google's trade secrets, in accord with the Court's instructions in its September 2, 2025, Memorandum Opinion. Plaintiffs have the right to challenge any disclosure they deem inadequate. For the avoidance of doubt, Google need not report on auction experiments, which are generally tested on some fraction of Google's Search Text Ads traffic, but Google shall disclose changes to the Search Text Ads auction that result from any such auction experiments. |

Google has largely adopted the Plaintiffs' language, with clarification as to the Plaintiffs' role in developing the auction disclosure proposal together with the Technical Committee, and a clarification of the last sentence. First, the Court's opinion contemplates that the Technical Committee and the Plaintiffs would both have a role in developing parameters around what types of auction changes must be brought to their attention, Remedies Op. at 201, yet Plaintiffs'

6

proposed language suggests that Plaintiffs alone will determine the proposal, and can optionally consider the Technical Committee's guidance.  Second, Google's last sentence clarifies that the disclosure obligations for launches resulting from experiments are the same as the disclosure obligations for other launches meeting the Technical Committee's parameters.

| Google's PFJ § VI.B<br>Term of Syndication License | Plaintiffs' PFJ § VI.B<br>Term of Syndication License |
|---|---|
| Google must take steps sufficient to make available to any Qualified Competitor a Search Text Ads syndication agreement whose term will be five (5) years from the date Google's Search Text Ads syndication service, as set forth in this Final Judgment, is made available to the Qualified Competitor, <u>unless there are fewer than five (5) years remaining before expiration of the term of the Final Judgment, in which case the term will be the remainder of the term of the Final Judgment</u>. | Google shall take steps sufficient to make available to any Qualified Competitor a Search Ads Syndication License whose term will be five (5) years from the date the license is signed. |

As above with respect to search syndication, Google's proposal clarifies that Google is not obligated to enter into a search ads syndication license that outlasts the term of the Final Judgment.

| Google's PFJ § VI.B.1<br>Latency, Reliability, and Performance | Plaintiffs' PFJ § VI.B.1<br>Latency, Reliability, and Performance |
|---|---|
| Google will provide latency, reliability, and performance functionally equivalent to what Google ordinarily provides to other users of Google's Search Text Ads syndication products, e.g., AdSense for Search, with respect to queries originating in the United States. For the avoidance of doubt, Google's obligations do not extend to latency, reliability, and performance differences that result from differences in product implementation, users, or are otherwise outside of Google's syndication products. | Google shall provide latency, reliability, and performance functionally equivalent to what Google provides any other user of Google's Search Text Ads syndication products, e.g., AdSense for Search, or any other current or future products offering syndicated Search Text Ads. |

The Court directed Google to provide "'latency, reliability, and performance functionality equivalent to what Google provides to other syndicators of its search text ads," which does not contemplate a most favored nation requirement. Rem. Op. at 185. Google's provision grounds the requirement in what Google ordinarily provides to other syndication users, for queries originating in the United States. Plaintiffs' language would compel ███████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████. As above with respect to Google's PFJ § V.B.2, Google's language additionally makes explicit what is implicit, that these obligations do not extend to variables that are outside of Google's control, for example resulting from differences in the amount of information the Qualified Competitor chooses to provide to Google.

8

| **Google's PFJ § VI.B.4** <br> **Advertiser Opt-In** | **Plaintiffs' PFJ § VI.B.5** <br> **Advertiser Opt-In** |
|---|---|
| Google will make the purchase of ads syndicated under this Section VI available to advertisers on a nondiscriminatory basis comparable to, and no more burdensome than, the availability of Google's other Search Text Ads, and must offer advertisers the choice to opt into showing ads on Qualified Competitors' websites, consistent with Google's ordinary commercial terms, policies, and functionality offered to other users of Google's Search Text Ads syndication products. | Google shall (i) make the purchase of ads syndicated under this Section VI.B available to advertisers on a nondiscriminatory basis comparable to, and no more burdensome than, the availability of Google's other Search Text Ads; (ii) include Qualified Competitors in its Search Partner Network; and (iii) provide advertisers the option to appear on each individual Qualified Competitor's sites on a site-by-site basis (i.e., an advertiser can choose to appear as a syndicated result on a Qualified Competitor's site regardless of whether it opts into the Search Partner Network or chooses to appear on any other site, including Google.com) to the same extent advertisers have such choice for any Google Search Text Ads Syndicator as of the date of entry of this Final Judgment. |

With respect to requirement (iii) of Plaintiffs' PFJ § VI.B.5, Jesse Adkins, Google's Director of Search and Ads Syndication, explained at trial that an advertiser can opt in or out of the "Search Partner Network" (which includes third-party sites on which Google serves display ads), meaning that Google does not permit advertisers the option to appear on each individual partner's website on a site-by-site basis. Rem. Op. 182 (citing Tr. 2959:8-15 (J. Adkins)). Plaintiffs' requirement (iii) is surplusage given that Google does not offer advertisers this choice currently, and the Court was explicit that Google must allow advertisers to opt into showing ads on Qualified Competitors' sites "consistent with Google's current advertiser terms and policies." Rem. Op. at 182. Google's language tracks the Court's instruction.

9

| Google's PFJ § VI.B.8<br>Restrictions on Use and Display | Plaintiffs' PFJ § VI.B.6<br>Restrictions on Use and Display |
|---|---|
| Google may impose its ordinary commercial terms and policies. For the avoidance of doubt, Google is permitted to place its ordinary commercial restrictions on the use and display of its syndicated ads. Google is also permitted to place its ordinary commercial restrictions on scraping, indexing, crawling, or otherwise storing or analyzing the syndicated ads. | Google may place only ordinary-course restrictions on the use or display of syndicated ad content intended to guard against "trick to click" schemes, ensure the proper ordering of ads, guarantee ad quality, protect the advertiser, or prevent ad misuse . . . but such restrictions shall be no more restrictive than those applied to any other user of Google's Search Text Ads syndication products. |

Google's language accords with the Court's explicit directive that "Google may place ordinary-course restrictions on the use or display of syndicated ad content." Rem. Op. at 184. Plaintiffs' language cabins Google's restrictions to the harms that Google's witnesses expressly identified at the hearing, while ignoring the testimony that ad syndicators frequently devise new methods to attempt to circumvent Google's policies. *See* Google's PFOF ¶ 903. Additionally,

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████. Granting these exceptions to Qualified Competitors would invite the types of abuse that the Court permitted Google to continue combatting through its "ordinary-course restrictions." Rem. Op. at 184.

10

| **Google's PFJ § V.B.10**<br>**Use of Qualified Competitors' Data** | **Plaintiffs' PFJ § V.B.9**<br>**Use of Qualified Competitors' Data** |
|---|---|
| Google is permitted to retain or use data collected from Qualified Competitors in provisioning of the service under Section V for Google's own products and services to the same extent Google retains or uses data in the ordinary course from other users of its search syndication service. | Google may not retain or use (in any way) syndicated queries or other information it obtains under Section V.A for its own products and services beyond the most limited retention and use permitted under any of Google's current search syndication agreements as of the date of entry of this Final Judgment. |
| **Google's PFJ § VI.B.9**<br>**Use of Qualified Competitors' Data** | **Plaintiffs' PFJ § VI.B.7**<br>**Use of Qualified Competitors' Data** |
| Google is permitted to retain or use data collected from Qualified Competitors in provisioning of the service under Section VI for Google's own products and services for the purpose of building, improving, and maintaining its ads infrastructure and shared ads systems. Google's use of Qualified Competitors' data for these purposes will be the same as Google's use of data from other users of its Search Text Ads syndication products. | Google may only retain or use (in any way) syndicated queries or other information it obtains under this Section VI.B to "build, improve, and maintain" its ad infrastructure in the same manner it used such information as of the date of entry of this Final Judgment. |

Google's provision on the use of Qualified Competitors' data differs from Plaintiffs' provision in two significant ways. First, Plaintiffs' proposal states that Google may only use Qualified Competitors' data to "'build, improve, and maintain' its ad infrastructure *in the same manner it used such information as of the date of the entry of this Final Judgment*." Pls.' PFJ § VI.B.7 (emphasis added); *see also* Pls.' PFJ § V.B.9 (reflecting a similar provision for search syndication). In contrast, Google's provisions state that Google's retention and use of Qualified Competitors' data will be the same as Google's use of data from other users of its search and ads syndication products. Google's PFJ §§ V.B.10, VI.B.9. The language of Plaintiffs' proposal would prevent Google from innovating its search or ads models to benefit Qualified Competitors.

11

For instance, Google's spam detection models train on both Google.com data and AdSense for Search partner data, and Google's teams are constantly researching new methods to improve the accuracy of these models, including by adjusting how the training data is used. But under Plaintiffs' proposal, Qualified Competitors would not receive the benefit of having their ads data incorporated into Google's spam models, making spam detection on Qualified Competitors' sites less effective. Second, while Plaintiffs' Section VI.B.7 states that Qualified Competitors' data may only be used for "ad infrastructure," Google's proposal would additionally allow Qualified Competitors' data to be used for "shared ads systems." At the hearing, Jesse Adkins, Google's Director of Search and Ads Syndication, explained that Google's ad syndication service is "built on . . . shared infrastructure, the same infrastructure that serves ads on Google.com." Tr. 2993:16-94:15 (J. Adkins). For the avoidance of doubt, and in order to more fully brief the Court on technical feasibility issues, *see* Rem. Op. at 173 n.24, Google seeks to clarify the extent of the shared systems that power both Google.com ads and AdSense for Search ads. In addition to the example Mr. Adkins discussed at the hearing, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Were Google to be prohibited from using those shared models, Google would then need to build new models and separately train them on Google.com data and Qualified Competitor data, requiring significant time and enormous engineering resources.

12

| **Google's PFJ § VI.B.13**<br>**Breach** | **Plaintiffs' PFJ § VI.B.10**<br>**Breach** |
|---|---|
| If Google in good faith believes a Qualified Competitor is in breach of the terms of its agreement, it may exercise its rights under the agreement. Google must also provide simultaneous notice to the Technical Committee of the breach and the actions Google is taking in light of the breach. | If Google in good faith believes a Qualified Competitor is in breach of the terms of its agreement under this Section VI, Google may exercise its rights under the agreement. Before exercising such rights, Google shall first provide simultaneous notice to the Technical Committee and the Plaintiffs of the breach and the actions Google is taking in light of the breach. Google shall provide this notice in time such that Plaintiffs have a reasonable period of time to raise objections. If Plaintiffs object and seek a resolution by the Court, Google may not take any action until the later of (i) two weeks after Plaintiffs seek Court intervention, if the Court does not act, or (ii) until further order of the Court, if the Court intervenes. |
| **Google's PFJ § VI.B.14**<br>**Additional Terms** | **Plaintiffs' PFJ § VI.B.11**<br>**Additional Terms** |
| Google will be entitled to propose additional terms to the Search Text Ad syndication agreements with Qualified Competitors as necessary to guarantee ad quality, protect advertisers, and prevent ad misuse. | Google shall be entitled to propose additional terms to the Search Text Ad syndication agreements with Qualified Competitors as necessary to guarantee ad quality, protect advertisers, and prevent ad misuse. Qualified Competitors are free to reject these proposed additional terms. Google shall provide simultaneous notice to the Technical Committee and the Plaintiffs of any such term and allow Plaintiffs a reasonable period of time to raise objections. If Plaintiffs object and seek a resolution by the Court, Google may not modify its Search Text Ad syndication agreements under this Section VI until the later of (i) two weeks after Plaintiffs seek Court intervention, if the Court does not act, or (ii) until further order of the Court, if the Court intervenes. |

Google has included additional provisions in light of the Court's holding that Google "may place ordinary-course restrictions on the use or display of syndicated ad content . . .

includ[ing] limitations designed to guard against 'trick-to-click' schemes, ensure the proper ordering of ads, guarantee ad quality, protect the advertiser, and prevent ad misuse." Rem. Op. at 184 (quoting Tr. 2972:4-76:3 (J. Adkins)). As Google's Director of Search and Ads Syndication, Jesse Adkins, explained at trial, many ads syndicators engage in practices designed to extract more revenue out of advertisers for low-value clicks, whether from botnets or consumers. Google works diligently to keep pace with these efforts and in the ordinary course, Google will adjust its syndication terms and policies accordingly. Google should not be required to treat Qualified Competitors differently from its other syndication customers. The protracted process that Plaintiffs propose for Google to exercise its rights in the event a Qualified Competitor breaches the agreement (Pls.' PFJ § VI.B.10), or in the event Google needs to impose additional restrictions due to a novel abuse of the ad ecosystem (Pls.' PFJ § VI.B.11), would prevent Google from acting quickly to protect its advertisers. For many of these issues, time is of the essence.

| Google's PFJ § VI.B.15<br>Ad Syndication Components | Plaintiffs' PFJ § VI.B.12<br>Ad Syndication Components |
|---|---|
| Qualified Competitors may elect, in their sole discretion, the queries for which they will request syndicated ad results. | Qualified Competitors may elect, in their sole discretion, which queries (some or all) for which they will request syndicated results and which syndication components to display or use and may do so in any manner they choose, except that Google may impose restrictions on the display or use of syndication components no less favorable than what it provides under any current Search Text Ad syndication agreements as of the date of entry of this Final Judgment. |

Plaintiffs insert an ad syndication provision that parallels its search syndication provision in Plaintiffs' PFJ § V.B.7. While the search syndication version of this provision would allow

14

Qualified Competitors to call for specific search features and not others, it is unclear how this provision could be implemented for ad syndication.  Google's ad syndication product allows the partner to select certain optional ad components to disable before the ad syndication partner requests an ad and triggers Google's ad auction.  After the ad auction has run and Google has sent the syndicated ad to the partner, however, that partner cannot be permitted to show only certain parts of the ad.  Google's ad auction makes a holistic determination of the ad's quality and associated cost-per-click based on the various ad components, and permitting a Qualified Competitor to exclude one of these components would interfere with the purpose of the ad auction.  Additionally, in order to comply with state law, Google needs to ensure that certain ad components are shown to the end user, such as the label indicating a sponsored ad.