## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010 (APM) |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

| | |
|---|---|
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715 (APM) |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

### BRIEF OF *AMICUS CURIAE* DUCK DUCK GO, INC. IN SUPPORT OF PLAINTIFFS' FINAL PROPOSED FINAL JUDGMENT

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(a)(4)(A), *amicus curiae* Duck Duck Go, Inc. ("DuckDuckGo") certifies that DuckDuckGo has no parent corporation and that no publicly held corporation owns 10% or more of DuckDuckGo's stock.

## STATEMENT OF INTEREST

As set forth more fully its motion for leave to file this brief, DuckDuckGo has a strong interest in this litigation because it operates a general search engine that is one of the leading competitors to Defendant Google LLC's ("Google") search engine. The remedies ordered by the Court, and the implementation of the directives set forth in the Court's September 2, 2025, Memorandum Opinion, will have a significant impact on DuckDuckGo's ability to compete effectively against Google.

## STATEMENT OF *AMICUS CURIAE* INDEPENDENCE

Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure (29)(a)(4)(E), DuckDuckGo certifies that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person—other than the *amicus,* its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ....................................................................................................... 2

     I.     THE TECHNICAL COMMITTEE SHOULD HAVE BROAD
           AUTHORITY TO MONITOR GOOGLE'S IMPLEMENTATION OF AND
           COMPLIANCE WITH THE FINAL JUDGMENT. ............................................... 2

     II.    THE FINAL JUDGMENT'S SYNDICATION PROVISIONS SHOULD
           NOT PERMIT GOOGLE TO REQUIRE QUALIFIED COMPETITORS
           TO SHARE END-USER DATA THAT IS NOT SHARED BY ALL OF
           GOOGLE'S EXISTING SYNDICATION PARTNERS. ...................................... 4

     III.   THE FINAL JUDGMENT SHOULD REQUIRE A FIVE-YEAR
           SYNDICATION LICENSE. ................................................................................. 6

CONCLUSION ..................................................................................................... 7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Google Play Store Antitrust Litig.,* 147 F.4th 917 (9th Cir. 2025)..........................................4

*United States v. Microsoft*, 231 F. Supp. 2d 144 (D.D.C. 2002), *aff'd sub nom.*
 *Massachusetts v. Microsoft*, 373 F.3d 1199 (D.C. Cir. 2004) Final J., Dkt. No.
 746, § IV.B.8.a................................................................................................................4

## PRELIMINARY STATEMENT

Among the remedies ordered by the Court in its September 2, 2025, Memorandum Opinion ("Mem. Op.") is that Google syndicate search results and search text advertisements to "Qualified Competitors," as defined in the opinion.  Duck Duck Go, Inc. ("DuckDuckGo"), as an operator of a privacy-focused general search engine and prospective Qualified Competitor, respectfully submits this *amicus curiae* brief to assist the Court in considering the impact of three specific differences between the parties' respective proposed final judgments ("FPFJs") on DuckDuckGo and other potential Qualified Competitors that might consider availing themselves of the syndication remedy.

*First,* Plaintiffs' FPFJ, unlike Google's, includes broad language granting the Technical Committee the power and authority to monitor Google's implementation of and compliance with the final judgment.  DuckDuckGo urges the Court to adopt this language to ensure that the Technical Committee is not precluded from advising on issues that are not enumerated in Google's FPFJ, particularly Google's compliance with its obligation to offer syndication terms to Qualified Competitors comparable to those in its existing syndication agreements.

*Second,* Plaintiffs' FPFJ makes clear that any requirement that Qualified Competitors share end-user data with Google be on terms at least as favorable as those available to "any other user of Google's search syndication products."  This language is necessary to ensure that DuckDuckGo and other privacy-focused search engines can syndicate on the same terms as any private search engine that currently syndicates from Google, and that Google cannot refuse such terms on the ground that they are not "ordinary."

*Third,* Plaintiffs' FPFJ requires Google to make a syndication license available to Qualified Competitors for a five-year term, even if that term extends beyond the period of the

final judgment.  This language will avoid incentivizing prolonged negotiations or other delays in finalizing syndication licenses.

## **ARGUMENT**

### I.    THE TECHNICAL COMMITTEE SHOULD HAVE BROAD AUTHORITY TO MONITOR GOOGLE'S IMPLEMENTATION OF AND COMPLIANCE WITH THE FINAL JUDGMENT.

Plaintiffs' FPFJ provides that "[t]he TC shall have the power and authority to monitor Google's implementation of and compliance with its obligations under [the] Final Judgement." Pl. FPFJ § VII.A.7.a.  This plenary power is critical and should not be limited to particular obligations imposed by the judgment.  The need for such breadth is warranted by the unpredictable nature of the disputes that may arise, the limited visibility of other industry stakeholders into Google's conduct, and the information asymmetry between Google and its competitors regarding Google's existing contracts.

An important example is the Court's requirement that Google offer to Qualified Competitors search and search text ads syndication services on "ordinary commercial terms that are consistent with Google's current syndication services." Mem. Op. at 4, 171-175.  As the parties' briefs in support of their respective FPFJs demonstrate, this requirement leaves substantial room for interpretation—particularly if Google's existing syndication contracts do not contain standard or uniform terms.  *See, e.g.,* Pls. Br.[1] at 19 (interpreting requirement as "most-favored-nation pricing" and noting lack of definition as to proposed "ordinary commercial terms" of text ad syndication agreements); Def. Br. at 25 (arguing against "allowing Qualified Competitors to demand a license with an amalgam of terms cherry-picked from existing

---

[1] "Pls. Br." and "Def. Br." refer, respectively, to the briefs filed by Plaintiffs and Google in support of their FPFJs on September 17, 2025; "Def. App'x" refers to the appendix filed by Google on the same date.

contracts"). It is evident that regardless of how the Court codifies the "ordinary commercial terms" requirement, significant disputes will arise. Because syndication on "ordinary commercial terms" was not proposed by either Plaintiffs or Google, the evidentiary record is insufficient for the Court to anticipate the full extent and nature of those disputes.

Moreover, without the active oversight of the Technical Committee, Qualified Competitors will be at a substantial disadvantage in ensuring that the terms they are offered comply with the final judgment. Because Qualified Competitors are not privy to the terms of Google's existing syndication contracts, they will have little basis on which to object to terms that may seem onerous. The Technical Committee's authority should be sufficiently broad to allow it to review Google's existing syndication contracts, propose standard terms to be offered to Qualified Competitors (including terms applicable to privacy-focused competitors, as discussed more fully in Part II below), and/or review Google's proposed syndication contracts with Qualified Competitors for compliance with the final judgment.

Google's FPFJ arguably does not grant the Technical Committee such authority. Under Google's FPFJ, the Technical Committee's substantive purview appears to be limited to advising on (i) whether a particular entity qualifies as a Qualified Competitor, (ii) data security standards applicable to Qualified Competitors, (iii) caps on User-side Data disclosures, (iv) User-side Data security and privacy safeguards, (v) Qualified Competitors' use of syndication services, (vi) Qualified Competitors' data security and privacy safeguards, (vii) the tapering rate for search syndication, and (viii) Search Text Ads auction changes. Def. FPFJ § VII.A.7.b-i. While the Court's opinion identified these as areas within the Technical Committee's purview, the Court's enumeration should not limit the Technical Committee's role in assisting Plaintiffs and the Court in enforcing the remedies the Court has imposed—particularly where enforcement requires

3

access to Google's nonpublic information that is not available to its competitors.  To limit the

Technical Committee's authority in this manner, rather than allow it to monitor and advise on

*any* disputes that may arise, would risk a scenario similar to the Digital Markets Act enforcement

regime in Europe, in which Google was permitted to interpret high-level obligations while

designing its own compliance measures without effective oversight and transparency.  *See* Rem.

Tr. 739:9-724:7 (Weinberg).

Plaintiffs' proposed language is also supported by antitrust precedent.  It repeats nearly

verbatim the plenary language set forth in the Microsoft-U.S. consent decree. *United States v.*

*Microsoft*, 231 F. Supp. 2d 144 (D.D.C. 2002), *aff'd sub nom. Massachusetts v. Microsoft*, 373

F.3d 1199 (D.C. Cir. 2004) Final J., Dkt. No. 746, § IV.B.8.a ("The TC shall have the power and

authority to monitor Microsoft's compliance with its obligations under this final judgment.");

*Microsoft,* 231 F. Supp. 2d at 196-200 (approving same); *Microsoft*, 373 F.3d at 1243-44

(affirming approval).  Similarly, in *In re Google Play Store Antitrust Litig.,* 147 F.4th 917 (9th

Cir. 2025), the injunction approved by the Ninth Circuit provided for a technical committee to

"review disputes or issues relating to the technology and processes required" by the substantive

provisions of the injunction, without limitation.  Permanent Injunction, *In re Google Play Store*

*Antitrust Litigation,* 21-md-02981-JD (N.D. Cal. Oct. 7, 2024), Dkt. 1017, ¶ 13.  The final

judgment should make clear that the Technical Committee has similar power and authority here.

## II.    THE FINAL JUDGMENT'S SYNDICATION PROVISIONS SHOULD NOT PERMIT GOOGLE TO REQUIRE QUALIFIED COMPETITORS TO SHARE END-USER DATA THAT IS NOT SHARED BY ALL OF GOOGLE'S EXISTING SYNDICATION PARTNERS.

As the Court is aware, DuckDuckGo is a privacy-focused search engine that

anonymizes user click data and does not track users or user sessions.  DuckDuckGo has

differentiated itself from Google largely on this basis.  Accordingly, DuckDuckGo's ability to

4

avail itself of the syndication remedy depends on its ability to do so in a manner consistent with its privacy promise to end users.

In this regard, the syndication provisions of the parties' FPFJs differ with respect to end-user privacy. Plaintiffs' FPFJ includes the following provision:

> It shall be the Qualified Competitor's sole discretion to determine how much information to share with Google regarding the end-user, except that Google may require a Qualified Competitor to share information with Google regarding the end-user, *on terms no less favorable than what any other user of Google's search syndication products would receive as of the date of entry of this Final Judgment,* as is necessary for the purposes of (1) basic search syndication functionality; (2) spam and abuse detection; and (3) legal or regulatory compliance.

Pls. FPFJ, § V.B.8 (emphasis added). Google's language differs in one potentially critical respect: Instead of permitting Google to require information-sharing "on terms no less favorable than what any other user of Google's search syndication products would receive," Google's language provides that "Google *may impose its ordinary commercial terms* as is necessary for the purposes of (1) search syndication functionality; (2) spam and abuse detection; and (3) legal or regulatory compliance." Def. FPFJ § V.B.9 (emphasis added).

DuckDuckGo is aware of at least one private search engine that currently syndicates search results from Google, for which the parties to the agreement negotiated a provision that would ensure that the protection of end-user data met the licensee's privacy standards. Rem. Tr. 3106:11-23 (Adkins). To the extent that Google deems this provision (and potentially similar provisions in other syndication contracts) non-"ordinary," it should not be permitted to withhold similar provisions from Qualified Competitors. To do so would force DuckDuckGo and other private search engines to choose between forgoing the syndication remedy, thereby forfeiting the opportunity "to compete in the short term as they work towards developing a GSE that can independently compete against Google" (*see* Rem. Op. 171), and forgoing their privacy focus,

the key differentiation from Google's product that the Court has acknowledged will be necessary for them to compete. *See, e.g.,* Rem. Op. 146-47 ("For Qualified Competitors to compete, they must innovate to differentiate their product from Google's rather than simply feeding off Google's work.")

Adopting Plaintiffs' proposed language need not require Google to agree to "an amalgam of terms cherry-picked from existing contracts." *See* Def. Br. at 25. But neither should Google be permitted to discriminate with respect to a privacy-related term merely because it has not been universally offered to, or even requested by, its existing syndication partners. To the extent that Google currently has different syndication terms for privacy-focused and non-privacy focused search engines, it should be required to make both sets of terms available under the remedy rather than limit the remedy to non-private search engines. This requirement is consistent with the Court's directive that syndication "shall occur largely on ordinary commercial terms that are consistent with Google's current syndication services." Mem. Op. at 4.[2]

### III.    THE FINAL JUDGMENT SHOULD REQUIRE A FIVE-YEAR SYNDICATION LICENSE.

Finally, the term of the syndicated licenses Google is required to offer Qualified Competitors should be five years as Plaintiffs propose (*see* Pls. FPFJ § V.A) and should not be limited by the remaining duration of the final judgment as Google proposes (*see* Def. FPFJ § V.A). In addition to the reasons set forth in Plaintiffs' brief, *see* Pls. Br. at 17-18, allowing Google to terminate all syndication licenses upon the expiration of the five-year remedy period

---

[2] For the reasons set forth in this section, the Court should also reject Google's proposed § V.B.2 to the extent it would permit Google to discriminate against privacy-focused search engines with respect to latency and reliability of responses. *See* Def. App'x at 8 (suggesting latency and reliability issues might result from "differences in the amount of information the Qualified Competitor chooses to provide to Google").

will improperly incentivize Google to delay negotiating terms and making its syndication service available to the Qualified Competitor.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, DuckDuckGo respectfully submits that the Court's final judgment should incorporate sections V.A, V.B.8 and VII.A.7.a of Plaintiffs' Final Proposed Final Judgment.

Dated: October 1, 2025
Washington, DC

Respectfully submitted,

*/s/ Ronald F. Wick*
**COHEN & GRESSER LLP**

Melissa H. Maxman (D.C. Bar No. 426231)
Ronald F. Wick (D.C. Bar No. 439737)
2001 Pennsylvania Avenue, N.W.
Suite 300
Washington, DC 20006
Phone: (202) 851-2070
Email: mmaxman@cohengresser.com
    rwick@cohengresser.com

*Counsel for* Amicus Curiae *Duck Duck Go, Inc.*