**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*,<br><br>           Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>           Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |

| | |
|---|---|
| State of Colorado, *et al.*,<br><br>           Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>           Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT GOOGLE LLC'S RESPONSE TO PLAINTIFFS'
OCTOBER 15, 2025 NOTICE OF SUBSTITUTE PROVISIONS**

On October 15, 2025, Plaintiffs filed a notice containing "possible substitute language" for Plaintiffs' Final Proposed Final Judgment dated September 17, 2025. The "substitute language" incorporates restrictions that were never proposed by any party and that even Plaintiffs admitted do not reflect a plausible interpretation of the Court's September 2, 2025 opinion. The Court should reject Plaintiffs' belated proposals that were never the subject of fact discovery or examination at the remedies evidentiary proceedings.

Google's Proposed Final Judgment (PFJ) has always provided that an applicable agreement with a browser developer such as Apple or Mozilla must, among other things, "permit[] the Browser Developer on an annual basis to set a different Default Search Engine in the United States for any Operating System Version and/or Privacy Mode offered by the Browser Developer without foregoing any payments attributable to an Operating System Version or Privacy Mode where Google Search remains set as the Default Search Engine." Google's PFJ (ECF No. 1443-2) § III.L; *see also* Google's Orig. PFJ (ECF No. 1108-1) § III.K. This language is based on the testimony of Plaintiffs' own expert economist from the liability trial, who asserted that Google's agreement with Apple "give[s] it exclusive defaults" because "Apple must set Google as the default on all instances of Safari" and "can't offer a different default in Safari's private browsing mode." Liab. Tr. 5713:8-5714:4 (Whinston). Plaintiffs embraced this testimony, arguing that the purported "exclusivity" arose from Apple having agreed for the term of the contract not to "pre-select a different default search engine in Safari's private browsing mode" or "offer a different default search engine on different Apple devices (*e.g.*, ***different defaults on mobile versus desktop devices***)." Pls.' Post-Trial Br. (ECF No. 896) at 36 (emphasis added). Neither Plaintiffs nor any fact or expert witnesses asserted that a browser default agreement was "exclusive" unless it distinguished between each individual copy of the browser

1

(*e.g.*, a single copy of Safari on a single iPhone).  And no browser developer witness ever complained about or pressed for the restrictions that Plaintiffs now seek, either at the liability trial or during the remedies evidentiary proceedings.

Tellingly, Plaintiffs did not advance their new proposal in their September 17, 2025 "Final Proposed Final Judgment," even though they improperly sought to relitigate numerous other issues that the Court resolved in its September 2, 2025 opinion.  Instead, Plaintiffs' provisions tracked Google's PFJ and the Court's opinion by referring to a different "Operating System Version" and "Privacy Mode."  Pls.' PFJ (ECF No. 1442-1) §§ III.L, M.  Plaintiffs also never suggested during the conferral process that the Court's opinion could be interpreted as requiring the hyper-granular optionality reflected in their substitute language.  Google's counsel even asked Plaintiffs on September 10, 2025 whether there are any examples of agreements not covered by Google's PFJ that Plaintiffs contend are "exclusive," and Plaintiffs confirmed on a follow-up call that they had no such examples.  Plaintiffs' substitute language thus seeks to expand **Plaintiffs' own proposal** from last month to prohibit agreements that **not even Plaintiffs** contend are "exclusive."

The supposed basis for Plaintiffs' substitute language is their assertion that "[d]uring the hearing on October 8, 2025, the Court clarified that it did not intend for there to be 'daylight' between the limitations on Google's ability to contract with distribution partners in the Android ecosystem as compared with Apple and third-party browser companies."  Pls.' Notice (ECF No. 1449) at 1.  For at least three reasons, the exchange cited by Plaintiffs does not support their substitute language.

First, Plaintiffs' filing omits that the Court expressly stated that "when [the Court] thought about device by device when it came to Apple, it was across different device types,

iPhone, iPad, Mac. It was not different iPhones." Oct. 8, 2025 Hr'g Tr. 70:17-24. As discussed, the Court's understanding is consistent with Plaintiffs' theory of liability, Google's PFJ, numerous statements in the remedies opinion, and even Plaintiffs' own September 17, 2025 proposal. *See, e.g.*, Rem Op. (ECF No. 1435) at 105 (stating that under Google's PFJ a "Browser Developer … is permitted to set a different GSE on different operating system versions or in a privacy mode"); *id.* at 106 (explaining that the phrase "device-by-device basis" in this context refers to, *e.g.*, "Safari for Mac versus Safari for Windows"). Plaintiffs' October 15, 2025 filing is an attempt to invent new restrictions on browser default agreements that were never previously contemplated, let alone litigated.

Second, Plaintiffs' filing misconstrues the rest of the Court's statement, including its observation "that if there was some understanding of daylight between the Android terms and the browser terms as it relates to browser devices, I mean, companies that both have browsers like Apple and a device, that I didn't intend to, I don't think – I don't think I had conceived that there would be daylight." Oct. 7, 2025 Hr'g Tr. 71:6-11; *see also id.* 71:12-15. As Google's counsel explained at the hearing, ***every*** provision of Google's proposed prohibitory injunction has always applied to agreements with Apple because Apple is plainly a "manufacturer." *See id.* 90:1-91:25. The provisions addressing Apple and other Browser Developers (Section III.L of Google's PFJ) and Apple specifically (Sections III.M and III.N of Google's PFJ) apply ***in addition to***, not instead of, the other provisions in Section III of Google's PFJ that address the licensing of particular Google applications for preload on Covered Devices. To make this abundantly clear, Google's PFJ prohibits Google from entering or maintaining any agreement with Apple "that conditions (i) Consideration or (ii) the license of … any Google software application," on Apple "refraining from developing, distributing, preloading, placing, displaying,

3

using, selling, or licensing any Third-Party General Search Service," "Third-Party Browser," or "Third-Party GenAI Assistive Service" on Apple smartphones, tablets, laptops, or desktops sold in the United States.  Google's PFJ §§ III.E-G; IX.F.  The additional provision applicable to agreements setting Google Search as the Default Search Engine in *a Third-Party Browser* has always differed in some respects from the provisions directed to certain *devices* because a browser default is only one search access point on a device.  There is no logical basis for distinguishing between individual devices or access points in the context of a browser default, which is why no one even suggested such a concept until Plaintiffs raised it this month.

      Third, the exchange with the Court that Plaintiffs cite also does not support their substitute language because it occurred in the context of their false assertion that Google's browser developer proposal allows "all or nothing" agreements or "exclusive dealing."  Oct. 7, 2025 Hr'g Tr. 69:14-70:16; *see also id.* 70:25-71:5.  As Google's counsel explained at the hearing, Google's PFJ has always stated that a Browser Developer can set a non-Google search engine as the default in an Operating System Version or Privacy Mode "without foregoing any payments attributable to an Operating System Version or Privacy Mode where Google Search remains set as the Default Search Engine."  Google's PFJ § III.L; *see* Oct. 7, 2025 Hr'g Tr. 77:14-78:9.  To offer one example: Apple could set Google as the default in Safari on Macs and a different search engine as the default in Safari on iPhones without sacrificing any revenue share payments from Google on Macs.  That is the opposite of an "all or nothing" deal, and no one could plausibly contend that it is "exclusive."

      Plaintiffs suggested at the hearing that they "tried to argue this point through Dr. Chipty," Oct. 7, 2025 Hr'g Tr. 71:16-20, but her testimony did not support it.  Among other things, Dr. Chipty acknowledged that she was not "offering an opinion that the types of agreements that are

4

permitted by Google's remedy would have been deemed exclusive" or "anti-competitive" in a but-for world. Rem. Tr. 2306:10-20. The only example of "flexibility" that Dr. Chipty could come up with that was not encompassed by Google's PFJ involved setting different defaults in "different versions" of an iPhone, such as the iPhone 16 versus the iPhone 17. *Id.* 2304:19-2306:9. And even that strained example could not bear any weight because Google's PFJ requires that the counterparty have the option to change the default on an annual basis, which matches the cadence for the release of new smartphone models. *Id.* 2306:21-2307:25.

Finally, no evidence supports Plaintiffs' October 15, 2025 proposal. Four browser developers that have set Google as the default (Apple, Mozilla, Opera, and Samsung) testified live or by deposition at the evidentiary hearing, and three of them submitted amicus briefs. Yet none of them indicated that the kind of optionality reflected in Plaintiffs' substitute language would promote competition or is otherwise preferable to the language in Google's PFJ (and the same is true with regard to Plaintiffs' other arguments that separate browser developer contracts must be executed for every operating system or browsing mode or that multi-year deals with annual termination clauses should be prohibited). The Court should reject Plaintiffs' improper attempt to impose new and unjustified restrictions after the evidentiary record is closed and after briefing and argument on the parties' PFJs.

Dated: October 16, 2025         Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Michael Sommer (admitted *pro hac vice*)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800
msommer@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*