**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>                              Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC,<br>                              Defendant. | Case No. 1:20-cv-03010-APM<br>HON. AMIT P. MEHTA |
| STATE OF COLORADO, *et al.*,<br><br>                              Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC,<br>                              Defendant. | Case No. 1:20-cv-03715-APM<br>HON. AMIT P. MEHTA |

**BRIEF OF *AMICUS CURIAE* MOZILLA
<u>CORPORATION IN SUPPORT OF NEITHER PARTY</u>**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(a)(4)(A), *amicus curiae* Mozilla Corporation ("Mozilla") certifies that Mozilla is a wholly owned subsidiary of the Mozilla Foundation. The Mozilla Foundation is not publicly traded and has no parent company. No publicly held corporation owns 10% or more of Mozilla's stock.

## STATEMENT OF INTEREST

As the subsidiary of a non-profit organization, Mozilla is a mission driven corporation that seeks to promote an open and healthy internet ecosystem that serves the public good. Consistent with this mission, Mozilla has developed the open source Firebox browser, which prioritizes user choice, privacy and security while fiercely competing with browsers developed by Big Tech and artificial intelligence ("AI") companies. In addition, Mozilla develops and maintains the open source Gecko browser engine, which powers Firefox and other independent browsers and is the only non-Big Tech browser engine. Most recently, Mozilla has been developing AI technology that is based on the principles of human agency, security, and privacy, and is investing in start-up companies focused on AI and other cutting-edge technologies that share these core values.

Mozilla was previously granted leave to file an *amicus* brief after the remedies trial because this Court recognized that the remedies ordered in this case could have a profound impact on Mozilla's business and ability to achieve its public oriented mission. *See* 5/16/25 Minute Order. While this Court did not adopt the remedies that presented the gravest risk to Mozilla's business and mission, Mozilla continues to have a significant interest in this litigation because the Final Judgment implementing this Court's remedies decision will significantly affect Mozilla's ability to continue competing and innovating in the browser and browser engine markets, as well as to continue serving as a necessary counterbalance to profit-driven Big Tech and AI companies that oftentimes fail to prioritize user choice, privacy, and security.

i

Moreover, as the developer of the Firebox browser, Mozilla is well-positioned to assist this Court in evaluating the parties' competing proposed Final Judgments. Indeed, this Court's questions and statements during the October 8, 2025 hearing recognize that Mozilla, as a browser developer that distributes search engines and AI tools, possesses unique information and perspectives that would assist this Court's resolution of the parties' dispute regarding two important issues: (i) whether distribution partners should be limited to entering one-year agreements with Google or have the option to enter multi-year agreements with an annual right of termination; and (ii) whether browser developers should have the option to enter omnibus agreements with Google that cover multiple browser modes and operating systems or instead be required to negotiate and administer separate agreements for each browser mode and operating system. *See, e.g.*, 10/8/25 Hearing Tr. at 78:11-81:22. Accordingly, Mozilla submits the instant *amicus* brief to help this Court resolve these important issues in a manner that best effectuates this Court's remedies decision, which sought to promote search competition while avoiding unintended harm to competition, innovation and consumers in adjacent markets. *See* 9/2/25 Remedies Op. at 119-28.

## STATEMENT OF *AMICUS CURIAE* INDEPENDENCE

Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(a)((4)(E), Mozilla certifies that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person—other than the *amicus*, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

# **TABLE OF CONTENTS**

ARGUMENT .................................................................................................................................1

I.      THE FINAL JUDGMENT SHOULD PROVIDE DISTRIBUTION
PARTNERS THE OPTION TO ENTER MULTI-YEAR AGREEMENTS ...................1

II.    THE FINAL JUDGMENT SHOULD PERMIT BROWSER
DEVELOPERS TO ENTER OMNIBUS DISTRIBUTION
AGREEMENTS.............................................................................................................3

CONCLUSION.............................................................................................................................4

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States v. Google LLC*,
   747 F. Supp. 3d 1 (D.D.C. 2024) ...........................................................................1, 2

## ARGUMENT

I.  **THE FINAL JUDGMENT SHOULD PROVIDE DISTRIBUTION PARTNERS THE OPTION TO ENTER MULTI-YEAR AGREEMENTS**

In their proposed Final Judgment, Plaintiffs seek to limit companies that enter search and/or AI distribution agreements with Google to one-year contracts that must be renegotiated each year. *See* Pls. PFJ §§ III.K, III.L.  In contrast, Google proposes providing search and AI distributors with the option to choose between one-year agreements and multi-year agreements with an annual termination right.  *See* Google PFJ §§ III.K, III.L.  This Court should adopt Google's proposal for several key reasons.

*First*, companies can most effectively operate their businesses and compete in the marketplace when they have greater revenue predictability.  For example, companies can confidently make investments in research and development, product diversification, marketing campaigns, and talent recruitment/retention initiatives when they are able to plan and forecast over a longer period.  Plaintiffs' proposed one-year limit on Google's search and AI agreements would deprive distribution partners of the ability to control and adequately project revenue streams that play a critical role in such investment decisions.  This is especially true for Mozilla because the Google search agreement accounts for the vast majority of the revenue that the company has available to invest in the Firefox browser and Gecko browser engine, and to implement its business strategies for competing with Big Tech and AI companies that have far greater financial resources and significant structural competitive advantages.  *See, e.g.*, *United States v. Google LLC*, 747 F. Supp. 3d 1, 96 (D.D.C. 2024) (noting that Google's search revenue payments represented "about 80% of Mozilla's operating budget" in 2021).  If distribution partners like Mozilla lack the revenue certainty and operational flexibility needed to effectively operate their businesses, competition, innovation and consumers in the browser and browser engine markets will be significantly harmed

because Mozilla will be unable to adequately invest in Firefox and Gecko – which provide consumers and companies with vitally important alternatives to Big Tech browsers and browser engines – and effectively advocate for web standards, legislation and policies that promote an open and healthy internet ecosystem that benefits everyone and serves the public good.

*Second*, under Google's proposal, distribution partners would still have the option to enter a one-year agreement if they determine that doing so best suits their business needs and partnership objectives. And, even if a distribution partner opts to enter a multi-year agreement with Google, this partner would always retain the option to terminate the agreement each year and Google's rivals would be free to make proposals that incentivize the partner to exercise this annual option. As this Court knows, Mozilla has demonstrated the willingness to switch the Firefox search default when it concludes that such a move would enable Mozilla to most effectively implement its business strategies and achieve its public oriented mission. *Id.* at 96-97. In short, the decision to limit distribution partners to one-year agreements will not improve competition for search default deals when compared to multi-year agreements with annual termination rights, but it will negatively impact the ability of distribution partners to compete and innovate.

*Third*, the requirement that distribution partners annually renegotiate their Google search and AI agreements will unnecessarily impose significant costs and burdens on these companies. For example, Mozilla's relatively small business and legal teams would be forced to devote significant time and resources each year toward engaging in months long negotiations with Google and other potential partners. Moreover, the cost and burden associated with these annual negotiations would be compounded by the fact that Mozilla sometimes conducts user search preference experiments and studies to help inform its negotiating strategies and decision-making processes. *Id.* at 97.

*Finally*, this Court can include provisions in the Final Judgment that address Plaintiffs' concerns about potential impediments to distribution partners' ability to freely exercise their annual termination rights.  *See, e.g.*, 10/8/25 Hearing Tr. at 66:3-67:22 (discussing concerns about lengthy termination notice requirements and revenue payment structures that could disincentivize distribution partners from exercising termination rights).

## II.    THE FINAL JUDGMENT SHOULD PERMIT BROWSER DEVELOPERS TO ENTER OMNIBUS DISTRIBUTION AGREEMENTS

As part of the discussion regarding the permissible duration of Google partnership agreements, this Court also addressed whether browser developers should be able to enter into omnibus agreements with Google that cover multiple browser modes and operating systems instead of having to negotiate and administer separate agreements for each browser mode and operating system.  *See, e.g.*, 10/8/25 Hearing Tr. at 78:11-79:8.  Mozilla strongly believes that browser developers should be afforded the opportunity to enter omnibus agreements with Google provided that (i) the browser developer has the ability each year to select a non-Google product as the default for any browser mode and/or operating system, and (ii) the browser developer's decision to set a non-Google product as the default for any browser mode and/or operating system will not result in the partner forfeiting any revenue for another browser mode and/or operating system where a Google product continues to serve as the default.

To the extent there is opposition to this common sense and efficient approach, this Court should reject such opposition.  The above approach would avoid unnecessarily subjecting independent browser developers such as Mozilla to significant costs and administrative burdens while furthering this Court's objective of ensuring that browser developers can freely choose their default partners and that Google's rivals can fairly compete for these distribution opportunities. Without the ability to negotiate an omnibus agreement, Mozilla—a small, mission driven company

that is owned by a non-profit organization—would be required to negotiate and administer numerous default agreements that cover each browser mode and operating system for Firefox. This burden would be compounded should Mozilla's continuous innovation result in the introduction of new Firefox modes and/or the expansion of Firefox onto new operating systems. Importantly, the inefficient, costly and burdensome process of forcing browser developers to negotiate and administer distribution agreements for each browser mode and operating system would not introduce any competitive benefits that do not exist under the above described omnibus agreement approach.

## **CONCLUSION**

For the foregoing reasons, Mozilla respectfully submits that this Court's Final Judgment should provide (i) distribution partners the option to enter multi-year agreements with Google that contain an annual right of termination and (ii) browser developers the option to enter omnibus agreements with Google provided that (a) the partner has the ability each year to select a non-Google product as the default for any browser mode and/or operating system, and (b) the partner's decision to set a non-Google product as the default for any browser mode and/or operating system will not result in the partner forfeiting any revenue for another browser mode and/or operating system where a Google product continues to serve as the default.

Dated: November 6, 2025

Respectfully submitted,

**CROWELL & MORING LLP**

By:  */s/ Juan A. Arteaga*
Juan A. Arteaga (*pro hac vice*)
Angel Prado (*proc hac vice*)
Two Manhattan West, 375 Ninth Avenue
New York, New York 10001   (212) 223-4000
jarteaga@crowell.com
aprado@crowell.com

*Attorneys for Amicus Curiae*
*Mozilla Corporation*

4