IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*,<br><br>                      Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                      Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br><br>                      Plaintiffs,<br><br>  v.<br><br>Google LLC,<br><br>                      Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA |

**DEFENDANT'S OPPOSITION TO MICROSOFT CORPORATION'S
MOTION FOR LEAVE TO FILE A BRIEF OF AMICUS CURIAE**

Google respectfully requests that the Court deny the Motion of Microsoft Corporation for Leave to File a Brief of *Amicus Curiae* filed on November 4, 2025 (ECF No. 1455) because the motion is untimely and does not satisfy the requirements of a proper amicus submission.

## I.     THE MOTION SHOULD BE DENIED BECAUSE IT IS UNTIMELY.

Microsoft's motion is unquestionably untimely for all the reasons set forth in Google's November 3, 2025 opposition to OpenAI's amicus motion (ECF No. 1453).  Google's November 3 brief cited a half dozen opinions from this District and courts around the country holding that an amicus motion is untimely where, as here, it is filed after the parties' briefs.  *See id.* at 1, 2 n.2.  Although Microsoft filed its motion after Google's November 3 brief, Microsoft did not address any of the authorities cited by Google or the numerous other cases explaining why "[a]llowing amici to step in at this late point would not be appropriate."  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 282 F. Supp. 2d 1271, 1274 (D. N.M. 2002) (concluding a "request to enter as *amici* is not timely" where the parties already "prepared numerous briefs" and "also presented evidence and arguments at a lengthy hearing"); *see, e.g.*, *Tatel v. Mt. Lebanon School Dist.*, 2024 WL 4650358, at *1, 3 (W.D. Pa. Apr. 3, 2024) (denying prospective amici's "belated attempt to inject new facts" through a proposed brief filed after "briefing is complete"); *In re Becker*, 2009 WL 2762787, at *1 (E.D. Wis. Aug. 28, 2009) (denying as untimely an amicus motion filed "two months after the" parties' issue "was fully briefed").[1]

---

[1] For avoidance of doubt, examples of previously cited cases explaining why Microsoft's motion should be denied as untimely include *In re Domestic Airline Travel Antitrust Litig.*, 2025 WL 2760374, at *7 (D.D.C. Sept. 29, 2025) (concluding an "Amicus Motion is untimely, as it was filed well after the briefing on summary judgment"); *Hualapai Indian Tribe v. Haaland*, 2024 WL 4475094, at *2 (D. Ariz. Oct. 11, 2024) (denying leave to participate as amicus where "the briefing process was completed before the [prospective amicus] filed its Motion"); *Finkle v. Howard Cty., Md.*, 12 F. Supp. 3d 780, 783 (D. Md. 2014) (denying as untimely a motion for leave to submit an amicus brief that was filed "45 days after" the parties' final brief); *Karuk*

Microsoft cites two cases addressing the timeliness of amicus briefs, but both confirm that Microsoft's motion should be denied. *See* Mot. at 2-3. In the first case, the amicus filed its proposed brief only four days after the party it was supporting and *before* the opposing party's reply brief was due. *Goldstein v. Hochul*, 2022 WL 22915988, at *1-2 (S.D.N.Y. Oct. 19, 2022) (explaining that the opposing party had "a fair amount of time … to respond to … the amicus brief" in its already scheduled reply). Here, by contrast, Microsoft filed its motion *nearly seven weeks* after the parties' briefs addressing the proposed final judgments, and *no* further briefing is scheduled. In the other case cited by Microsoft, the court allowed a county to file an amicus brief after the parties' briefing because the county "first learned of the existence of th[e] lawsuit" when briefing was complete, and the court could not "fault the County for its relatively 'late' discovery of th[e] case as there is no indication that it was well-publicized." *Andersen v. Leavitt*, 2007 WL 2343672, at *3, 6 (E.D.N.Y. Aug. 13, 2007). Microsoft, however, has participated in this well-publicized case *for years* and decided *not* to submit an amicus brief on the Court's May 9, 2025 deadline. *See* Mar. 11, 2025 Order (ECF No. 1186) at 2 ("Amicus brief(s) shall be due by May 9, 2025."). Like OpenAI before it, Microsoft has failed to provide any legal authority (or factual excuse) that could possibly support the Court's acceptance of its proposed brief at this late stage.

Microsoft's suggestion that the Court "expressed an interest" in receiving its submission is baseless. Mot. at 3-4 (referencing Oct. 8, 2025 Hr'g Tr. 80:22-81:16). The Court asked *Plaintiffs* whether they had "heard from *partners*" about whether "*partners* would actually prefer

---

*Tribe of Cal. v. U.S. Forest Serv.*, 2005 WL 8177401, at *2 (N.D. Cal. July 1, 2005) (reasoning that "it is beyond dispute that [a] proposed amicus brief is untimely" when it is filed "after Defendants' only scheduled brief on the merits," and it is "incomprehensibl[e]" that the prospective amicus would expect its motion for leave "to be heard … *after* the scheduled hearing" on the merits issues).

2

the optionality of having a multi-year deal with annual opt-outs." Oct. 8, 2025 Hr'g Tr. 79:10-15; *see id.* 80:22-81:4 ("[C]an I go back to the question I asked, and that was whether … you had conversations with *partner representatives* who have expressed a view on whether they would like to have optionality or would prefer … a world in which … the contract has to be renewed every year?"). The Court did not ask about the views of competitors such as Microsoft at all, and it certainly did not invite an untimely 15-page brief addressing a host of other issues that have nothing to do with the specific question the Court posed.

Accepting Microsoft's untimely proposed brief would be prejudicial for all the reasons stated in Google's November 3 opposition to OpenAI's motion (ECF No. 1453). Among other things, this Court already concluded that Google "would be prejudiced by the court's acceptance of [a] belatedly filed brief" from purported amicus adMarketplace because Google "did not have the opportunity to examine adMarketplace's witness" on the issues in the brief "or present its own evidence at the remedies hearing to respond to adMarketplace's legal and factual contentions." Sept. 2, 2025 Minute Order. These concerns are even more significant with Microsoft's untimely proposed brief.

To offer one example: Microsoft cites five excerpts of inaccurate and inadmissible deposition testimony from "Microsoft's Director of Customer Engagement" in a paragraph asserting that Google has "constrain[ed] GenAI distribution." Proposed Br. at 7-8. But even Plaintiffs *did not designate any of the testimony* in the five passages cited by Microsoft for inclusion in the remedy proceeding record. If Plaintiffs had designated any of those excerpts during the evidentiary hearing, Google would have lodged meritorious objections and presented additional testimony and documents disproving the assertions during the remedies proceedings. At this late stage, it is preposterous that Microsoft would even attempt to introduce new

3

testimony that was readily available to Plaintiffs but that they decided not to submit before the evidentiary record closed.

By seeking to have the final word in a purported amicus brief, Microsoft is circumventing the rules of evidence, reversing the appropriate role of the parties and amici, and violating the Court's prior orders. As the Court observed in March, "a deadline for any amicus filings … needs to be in time for" the parties "to be able to integrate" or otherwise address the amicus briefs in the parties' own scheduled filings. Mar. 10, 2025 Hr'g Tr. 41:6-17. The Court enforced that important principle by denying a request for *a one-business day* extension of time to file an amicus brief, which ensured that the parties had adequate time to address all amicus briefs in their post-hearing submissions. May 8, 2025 Minute Order. If an extra business day is not justified, then Microsoft certainly is not entitled to participate as an amicus *nearly six months* after the close of evidence and *almost seven weeks* after the parties filed briefs addressing their proposed final judgments.[2]

Finally, Microsoft ignores the significant effects of its untimely filing on the Court and the case schedule by asserting that its motion is "timely because it is being filed before any final remedies order has been issued, will not affect any Court deadlines, and will not cause any substantial delay." Mot. at 4. There is *no support* for Microsoft's novel assertion that a

---

[2] In addition to the prejudice to Google, the untimely motions from OpenAI and Microsoft are unfair to the other non-parties with an interest in this action who complied with the Court's May 9 deadline for amicus filings. And while neither OpenAI nor Microsoft has explained why they waited so long after the parties filed their briefs regarding the proposed final judgments on September 17, both motions were filed only days after OpenAI and Microsoft announced the restructuring of their partnership, including exclusivity for the provision of certain OpenAI intellectual property to Microsoft. https://blogs.microsoft.com/blog/2025/10/28/the-next-chapter-of-the-microsoft-openai-partnership/ (explaining that Microsoft will continue to own "roughly 27 percent" of OpenAI, "valued at approximately $135 billion," and that OpenAI will "purchase an incremental $250B of Azure [cloud computing] services" from Microsoft).

4

prospective amicus can pop up any time until the day the Court issues a final judgment. If that were the case, then a party could submit a never-ending stream of sur-replies through "amicus" briefs filed by the party's sponsors or proxies, which is exactly what appears to be happening here with the successive filings from OpenAI and Microsoft. In the case Microsoft cites for this proposition, the amicus motion inherently did not "affect any Court deadlines" or "cause any substantial delay" because it was filed in the middle of the parties' *existing* briefing schedule. *See Goldstein*, 2022 WL 22915988, at *1-2. As Microsoft's cited cases acknowledge, if the Court accepts Microsoft's untimely brief in this case, it will need to allow Google an opportunity to respond to that brief, which could delay issuance of the final judgment. *See, e.g.*, *Andersen*, 2007 WL 2343672, at *6. And that does not account for the fact that other prospective amici will have an incentive to file their own motions if the motions of Microsoft and OpenAI are not immediately denied. *See Cobell v. Norton*, 246 F. Supp. 2d 59, 63 (D.D.C. 2003).

## II.  THE MOTION SHOULD BE DENIED FOR NUMEROUS OTHER REASONS, INCLUDING BECAUSE MICROSOFT'S PROPOSED BRIEF DOES NOT SATISFY THE APPLICABLE AMICUS REQUIREMENTS.

Even a timely filed amicus brief generally is allowed only under particular circumstances, such as when "a party is not represented competently" or "the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008). Microsoft asserts in its cover motion that it has "unique information or perspective" and "firsthand experience," including as the defendant in *United States v. Microsoft*. Mot. at 3. But its proposed brief is not based on any such information; rather, it repeats assertions that either were made by Plaintiffs or that Plaintiffs could have made in support of their own proposed final judgment but chose not to advance. "The term 'amicus curiae' means friend of the court, not friend of a party." *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997). Amicus briefs like this

5

one that "are filed by allies of litigants and duplicate the arguments made in the litigants' briefs … should not be allowed" and "are an abuse." *Id.*[3]  Because none of the circumstances justifying amicus participation is present in Microsoft's motion and proposed brief, "leave to file an *amicus curiae* brief should be denied." *Jin*, 557 F. Supp. 2d at 137.

*First*, Microsoft purports to describe and justify "Plaintiffs' approach" to the definition of the term "GenAI Product." Proposed Br. at 5. Although Google has frequently observed during this case that Plaintiffs' positions are indistinguishable from Microsoft's corporate interests, that does not mean that Microsoft can take the reins from Plaintiffs and attempt to describe what Plaintiffs intend and how their modified proposal purportedly is "grounded in the Court's liability findings." *Id.*  These are lawyers' arguments that were or could have been advanced by Plaintiffs themselves, not matters involving "unique information or perspective" that are properly addressed through an amicus brief. *Jin*, 557 F. Supp. 2d at 137. More specifically, Microsoft has not identified a single example of a product that exists today or has been conceived of by Microsoft (or anyone else) that purportedly should be subject to the final judgment but is not captured by Google's proposed definitions. Microsoft alludes to general and unexplained categories of "AI agents" and "operating system/UI invocation points," Proposed Br. at 5, but there is zero evidence in the record that whatever concepts Microsoft has in mind have ever or could ever even place meaningful competitive pressure on general search services.

---

[3] The usual "abuse" resulting from amicus briefs is that they have the effect of "extending the length of the litigant's brief" by allowing the party to focus on certain points while delegating others to the amici. *Ryan*, 125 F.3d at 1063. These concerns are far more severe with untimely briefs like Microsoft's (and OpenAI's) because accepting them would be tantamount to allowing Plaintiffs an entirely new round of briefing in contravention of the Court's schedule and of Google's right to respond.

6

To the extent Microsoft offers any substantive information at all, it only reinforces why Plaintiffs' proposed definition of "GenAI Product" (and terms incorporating that phrase) must be rejected. In particular, Microsoft asserts that Google's proposal purportedly "would exclude AI agents whose principal function may include task execution (e.g., drafting emails or booking travel) even though such agents routinely invoke web search and present ranked recommendations in response to user queries." *Id.* at 6. This theoretical scenario exposes the overbreadth of Plaintiffs' proposed definitions, which would encompass any product that, among other things, "can fulfill a broad array of information needs." *Id.* at 5 n.1.

For example, Gmail is a service that uses GenAI to help with "drafting emails," *id.* at 6, but there is *no basis* for subjecting Gmail to the final judgment, even if the integration of Gemini into Gmail arguably would allow it to "fulfill a broad array of information needs." *Id.* at 5 n.1, 6. The judgment cannot encompass a service like Gmail because, among other things, there is no evidence that Gmail does or ever will "perform an information-retrieval function that is similar to GSEs [general search engines]" such that it has the "potential to become a viable platform substitute for" GSEs. Rem. Op. at 99, 103; *see* Google's Br. in Support of Its Proposed Final Judgment (ECF No. 1443) at 2-7. As even Microsoft acknowledges, the judgment cannot encompass products unless they are "competitive substitutes" for GSEs that can "principally function as general search." Proposed Br. at 6.

Microsoft's other hypothetical further illustrates the point. Specialized vertical providers (SVPs) such as Booking and Expedia have incorporated GenAI to assist with "booking travel," but there is no argument or evidence that adding a chatbot to their sites should bring Booking or Expedia within the scope of the judgment or render them Qualified Competitors, even if that chatbot "can" return web results or a "broad array" of information. *Id.* at 5 n.1, 6. Indeed,

7

Plaintiffs' liability case was predicated on their argument that neither SVPs nor chatbots are substitutes for GSEs.

Google's proposed definitions are more than sufficient to encompass any hypothetical future "AI agents" that actually fall within the scope of the Court's liability and remedies findings. The proposed definition of "Google GenAI Assistant Application" that Microsoft repeatedly misquotes encompasses "any *future* user-facing software application … that makes use of generative AI capabilities or models and has *among its* principal functions answering information-seeking prompts across a wide variety of topics using a broad range of public available information." Google's Proposed Final Judgment (ECF No. 1443-2) § IX.L. As the definition makes clear, a product can have more than one "principal function." For example, Google's definition expressly covers the Gemini app even though it has use cases unrelated to general search, such as companionship and image generation. And Gemini would still be a "Google GenAI Assistant Application" if it were considered an "AI agent" that also counted "task execution" among its "principal functions." *See* Proposed Br. at 6. In all events, the solution for addressing some theoretical future product that no one can even describe is not to sweep in countless presently existing products that have no effect on the relevant markets and are not grounded in any factual findings.

Microsoft is also off base in asserting that the definition of "Google GenAI Assistant Application" contains a "loophole" because it excludes "Google Search, the Google Search Application, the Chrome Browser Application, or the Google Assistant Application." *Id.* This is not a loophole at all, but rather a straightforward expression of the fact that these other products are separately addressed in the proposed final judgment and subject to equal or *greater* restrictions. For example, it would be nonsensical for the definition of "Google GenAI Assistant

8

Application" to encompass the Google Search Application or the Chrome Browser Application because those latter two applications are subject to *even more restrictions* on distribution. *Compare* Google's Proposed Final Judgment §§ III.A, B *with* § III.D.

Microsoft's assertion that Google has "constrain[ed] GenAI distribution through MADAs, RSAs, and related agreements" is simply not accurate. Proposed Br. at 7. As indicated above, the claim is based entirely on inadmissible and *undesignated* deposition excerpts, *i.e.*, testimony that Plaintiffs could have tried to enter into the record but *intentionally decided not to*. Moreover, that testimony is squarely refuted by the evidence properly before the Court:

- In reference to ▓▓▓▓, Microsoft asserts that an "OEM has a 'complicated RSA agreement with Google' that covers some GenAI products." Proposed Br. at 7. ▓▓▓▓

- In reference to ▓▓▓▓, Microsoft asserts that "Google's RSA with another leading OEM has posed a challenge to Copilot distribution." Proposed Br. at 7. ▓▓▓▓



9



- In reference to ▇▇▇▇, Microsoft asserts that a "major mobile distributor considered the preinstallation of any Microsoft asset (including Copilot) to be a violation of its RSA with Google." Proposed Br. at 7 (emphasis omitted). 

- In reference to ▇▇▇▇, Microsoft asserts that "[a]nother major mobile distributor also considered preinstalling Copilot on its Android devices but conveyed that these devices were covered by Google's MADA and RSA agreements." Proposed Br. at 8. But in *the very next line* after the one cited by Microsoft, its witness confirmed that ▇▇ ▇▇▇▇ "believed they could" preload "Copilot on these devices" even though ▇▇ ▇▇▇▇ is party to a Google RSA. Beard Dep. Tr. 134:18-135:1. And in Microsoft deposition testimony that was properly designated, the same witness ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- In reference to ▇▇▇▇, Microsoft asserts that "a third major mobile distributor … needed to 'check their RSA about any restrictions about having Copilot preinstalled on their devices.'" Proposed Br. at 8. As with the other carriers, the Microsoft witness was 

- Finally, Microsoft's distribution of Copilot is not and will not be "constrain[ed]" because, among other things, Google's proposed final judgment prohibits "any agreement with a manufacturer or wireless carrier that conditions (i) Consideration or (ii) the license of Google Play or any Google software application, on that manufacturer or wireless carrier refraining from developing, distributing, preloading,
10

placing, displaying, using, selling, or licensing" Copilot or any other "Third-Party GenAI Assistive Service on Covered Devices sold in the United States." Google's Proposed Final Judgment § III.G.

It is not surprising that Plaintiffs did not designate any of this testimony that Microsoft belatedly cites because it confirms the sufficiency of Google's proposed final judgment and provides no support for Microsoft's assertion that "a broader, forward-looking definition of GenAI Product is especially important in this case." Proposed Br. at 7. The proposed amicus brief is far too groundless and misleading to "help the court beyond the help that the lawyers for the parties are able to provide." *Jin*, 557 F. Supp. 2d at 137.

*Second*, Microsoft's proposed brief should not be accepted because it "mirrors what was already argued" by the parties. *Domestic Airline Travel Antitrust Litig.*, 2025 WL 2760374, at *7. In particular, the parties already addressed in their briefing and at the hearing whether the final judgment should permit Google to enter multi-year agreements where the partner may opt out annually. *See* Google's Br. in Support of Its Proposed Final Judgment at 13-14. Microsoft's proposed submission adds nothing to this dispute, and the Court expressed interest only in whether "*partners*"—not competitors such as Microsoft—"would actually prefer the optionality of having a multi-year deal with annual opt-outs." Oct. 8, 2025 Hr'g Tr. 79:10-15; *see id.* 80:22-81:4. There is no evidence in the record (or even in Microsoft's untimely proposed brief) for the assertion that "[m]ulti-year frameworks" place "burdens on distribution partners seeking to exercise opt-out provisions" or that "Google will have a greater ability to leverage its defaults in favor of renewal." Proposed Br. at 9. This is hollow jargon that reiterates Plaintiffs' unsupported arguments on the issue.

*Third*, Microsoft's arguments about retaining jurisdiction to enforce and modify the final judgment cannot be useful because they do not engage with any dispute presently before the

11

Court. Microsoft's first argument on this point is that "the Court should explicitly retain jurisdiction to enforce, clarify, and modify the final judgment as market conditions and technologies evolve." Proposed Br. at 11. Microsoft never explains why its participation is necessary to make this point, given that everyone agrees that the Court will "retain[] jurisdiction for the purpose of enabling any of the parties … to apply for such further orders or directions as may be necessary or appropriate to carry out or construe th[e] Final Judgment, to modify or terminate any of its provisions, and to enforce compliance." Google's Proposed Final Judgment § XI; *see* Proposed Br. at 11 (quoting a nearly verbatim version of Google's provision from the final judgment in *International Salt*). Perhaps Microsoft's vague reference to "market conditions" is a half-hearted endorsement of Plaintiffs' proposal that in a "motion to modify th[e] Final Judgment, Plaintiffs need not show any change in circumstances." Pls.' Proposed Final Judgment (ECF No. 1442-1) § XI.A. But Microsoft does not make that point explicitly, and in any event it would be directly contrary to Supreme Court and D.C. Circuit precedent, as *Microsoft itself* previously explained. *See New York v. Microsoft Corp.*, 531 F. Supp. 2d 141, 167-68 (D.D.C. 2008) (describing Microsoft's argument that "'a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree'" (quoting *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 383 (1992)). Nor does Microsoft provide any evidence or argument to support the notion that the final judgment should authorize the Court "to act *sua sponte*" in some respect, as its own negotiated settlement is not indicative of whether this Court should adopt a provision that Plaintiffs have never sought to justify. *See* Proposed Br. at 11. In all events, an amicus brief addressing these issues is unnecessary given that the Court had no questions about them at the

12

hearing and indicated that it need not decide now the standard for any hypothetical future modification. Oct. 8, 2025 Hr'g Tr. 126:7-25.

Microsoft's second argument is that "the Court should include a mechanism that will allow it to monitor real-world outcomes and intervene quickly if competition does not improve." Proposed Br. at 11; *see id.* at 12 (arguing for "ongoing monitoring and expedited intervention authority to identify and remedy shortfalls promptly"). This argument too is so vague that it cannot possibly be helpful to the Court. Microsoft does not cite any provision that has ever been proposed in this case that would provide for such "monitoring and expedited intervention," and it does not explain what that might entail. An amicus brief is not useful when it suggests a half-formed idea that has never been litigated by the parties and was submitted for the first time long after the parties' filed their proposed final judgments. Microsoft's main objective appears to be reiterating its unsurprising desire for a "payment ban" that would allow Microsoft to secure distribution without having to compete—a proposal that all Android OEMs and wireless carriers who were deposed and/or testified at the remedy hearing oppose. *See* Proposed Br. at 10-12. As addressed above, however, it should come as no surprise if Microsoft continues to receive limited distribution outside of Windows—where it exercises overwhelming control—given that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*Fourth*, Microsoft's arguments regarding the Technical Committee (TC) likewise are not the proper subject of an amicus brief. Despite Microsoft's first-hand experience, it provides only contradictory assertions and citations to case law and other public materials, not "unique information or perspective that can help the court." *Jin*, 557 F. Supp. 2d at 137. For example,

13

Microsoft observes that in its case "[m]any issues were resolved by the Technical Committee without having to raise the issue with the court," and sometimes "the parties, 'with the assistance of the TC' were able to negotiate solutions." Proposed Br. at 14-15. That is of course what Google hopes for and will work in good faith to accomplish in this case, and its proposed final judgment is fully consistent with this objective.

Microsoft goes awry, however, in attacking a requirement that *Plaintiffs themselves* agree is necessary, namely that Google "have the right to object to and be heard by the Court on any recommendation from the TC or Plaintiffs as to the interpretations of or substantive requirements of th[e] Final Judgment." Google's Proposed Final Judgment § VII.A.7.a. The Court repeatedly asked Plaintiffs about this at the October 8 hearing, and they were unequivocal: "[W]e understand that the judgment is yours and ultimately you are … the arbiter of last resort, and we agree with that…. [I]f Google thinks that we have made the wrong decision and wants to bring it to Your Honor, we think that they have the right to do so." Oct. 8, 2025 Hr'g Tr. 15:24-17:7. Plaintiffs never explained at any point how a TC imposed over Google's objections could adjudicate Google's substantive rights (or the rights of countless non-parties, including Search users whose private data is at stake). At the last hearing, Plaintiffs stopped trying to defend the indefensible. Although Microsoft has again tried to seize the reins from Plaintiffs, it offers no support whatsoever for rejecting Google's proposed provisions. Microsoft's own experience is inapt because Microsoft agreed to a specific TC as part of a settlement, while the TC here was imposed over Google's objection. *Id.* 4:24-5:2 ("One of the ways in which this case has differed dramatically from *Microsoft* is that in *Microsoft*, on remand, the government and Microsoft actually agreed to a set of terms for remedies.").

14

Moreover, Microsoft (at least in hindsight) describes the TC in its case as "an expert, independent resource." Proposed Br. at 13. If that is how the TC operates here, then there will likely be few issues for the Court to address. But in this case, Plaintiffs have never described the TC that way. Instead, they urged the Court to allow Plaintiffs to appoint four of the five members directly or indirectly (unlike in *Microsoft*), and they continue to seek provisions that will allow *Plaintiffs themselves* to unilaterally make highly consequential decisions even if the TC disagrees with them (unlike in *Microsoft*). *See* Google's Br. in Support of Its Proposed Final Judgment at 31-32. Under these circumstances, not even Plaintiffs believe it is appropriate to deprive Google of judicial review, and Microsoft's unsubstantiated arguments to the contrary are not the proper subject of an amicus brief.

### III. CONCLUSION.

Google respectfully requests that the Court deny Microsoft's motion.

Dated: November 6, 2025

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Michael Sommer (admitted *pro hac vice*)
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-8800

15

msommer@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*