# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA et al.,** | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 20-cv-03010 (APM) |
| **GOOGLE LLC,** | ) ) ) | |
| Defendant. | ) ) | |

|  |  |  |
|---|---|---|
| **STATE OF COLORADO et al.,** | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 20-cv-03715 (APM) |
| **GOOGLE LLC,** | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

The Final Judgment in this case was entered December 5, 2025, and took effect February 3, 2026.[1]  *See* Final Judgment, ECF No. 1462 [hereinafter FJ], § VIII.  Since December, the parties have worked diligently to carry out the Final Judgment's immediate demands—namely, to identify and nominate for appointment members of the Technical Committee's ("TC") three-person Standing Committee.  *See id.* § VII.A.  The court appointed the individuals nominated by the parties, *see* Order, ECF No. 1474, and the parties appear to have largely succeeded in ironing out the details of the TC Services Agreement, *see id.* § VII.A.6, and a source-code confidentiality

---

[1] Google has asked the court to stay aspects of the Final Judgment pending appeal.  *See* Def.'s Mot. for a Partial Stay Pending Appeal, ECF No. 1471.  That motion remains pending.

agreement, *see id.* § VII.A.7.d.  *See* Joint Status Report, ECF No. 1491 [hereinafter JSR], at 1–3. But the parties have asked the court to resolve three outstanding disputes related to the TC Services Agreement: (1) whether the job of the TC shall be considered full-time or part-time, (2) the compensation of the TC, and (3) the term of such compensation.

*Full-time position.*  The court agrees with Plaintiffs that, to maximize the likelihood of successful implementation of the Final Judgment, the work of the TC shall be considered full-time. The TC's role cannot be understated; the remedies are technologically complex, and the TC will be responsible for, among other things, approving Qualified Competitors and auditing their data-security and privacy standards, executing the transfer of Google's web search index and user data to Qualified Competitors with adequate privacy protections and determining how often user-data transfers should occur, creating and updating license templates, evaluating the need for and the sufficiency of any disclosure of ad-auction modifications that raise search text ad prices, monitoring Google's compliance, and handling complaints.  *See, e.g.*, FJ §§ IX.V, IV.B.2, IV.C.3, V.B, VI.A, VII.A.7.a, VII.C.  These obligations will be demanding, especially in these "fast-moving times."  *See United States v. Google LLC* (*Google Remedies*), 803 F. Supp. 3d 18, 160 (D.D.C. 2025).  Attempting to execute the job of the TC on anything less than a full-time basis would not accurately capture its call or import.

Moreover, TC members' priority should be the work of implementing the Final Judgment. A part-time position may incentivize TC members to take on other professional opportunities, which may minimize or distract from the importance of that work.  For this reason, the court also

orders that the TC Services Agreement include a provision prohibiting TC members from taking on any new paid professional opportunities while actively serving their term.[2]

*Compensation.* For similar reasons, compensation of the TC members shall be ▮▮▮▮ per year as Plaintiffs propose. The court finds Plaintiffs' justifications reasonable: Plaintiffs estimate that ▮▮▮▮ would be consistent with the compensation package of an equivalent full-time role in the technology industry, which would include an annual salary, year-end bonus, and additional compensation from equity shares. JSR at 8–9. The compensation figure also reflects the opportunity cost of TC members foregoing other business opportunities. The TC members will be working full-time on a novel, challenging endeavor. And the amount will encourage both successful execution and membership continuity. *See* Hr'g Tr. (Sept. 13, 2026) at 13:6-16. The court thus finds Plaintiffs' proposed amount an appropriate yearly sum. *See United States v. Google LLC* (*Google Judgment*), No. 20-cv-3010 (APM), 2025 WL 3496448, at *3 (D.D.C. Dec. 5, 2025) (noting the deference due to the government once it has successfully established a violation of the antitrust laws).

*Compensation term.* Compensation of ▮▮▮▮ per year shall be fixed for the initial term of each TC members' service—36 months for the Standing Committee members and 30 months for the remaining members, *see* FJ § VII.A.4—and subject to reevaluation thereafter. The Final Judgment's six-year term accounts for the "expectation that it will take one year to establish the [TC] and the processes necessary for execution." *Google Remedies*, 803 F. Supp. 3d at 159. Though it may be true that much of the TC's work will occur at the outset of the judgment period, *see* JSR at 16–17, the TC will continue to play an active role throughout, including by

---

[2] TC members need not be prohibited from continuing or completing any paid professional obligations existing at the time their term begins, unless such ongoing work would prevent them from carrying out their TC duties on a full-time basis.

continuing to evaluate potential Qualified Competitors and assisting with compliance. The court recognizes the possibility that the demands of the role may diminish over time. But the end of the TC members' initial terms of service provides a natural point of reevaluation, at the same time their continued service on the TC is also considered. The Final Judgment also prohibits TC members from working "for Google or any Competitor of Google . . . for one (1) year after ceasing to serve on the TC." *See* FJ § VII.A.2.c. This prohibition is broad, encompassing any firm involved in search or GenAI insofar as it competes with search, which meaningfully impacts the opportunities a TC member may pursue once their term concludes. Reevaluating compensation at the end of the TC members' terms would strike a balance of offering TC members' certainty on one hand and being flexible to the changing demands of the TC over time on the other. The court defers to Plaintiffs' determination that such a balance is necessary. *See* JSR at 11; *Google Judgment*, 2025 WL 3496448, at *3.

For all these reasons, the work of the TC shall be considered full-time, and the members of the TC shall be paid ■■■■■■■ per year for the members' initial term of service. Compensation shall be reevaluated after that point. The TC Services Agreement also shall include a provision prohibiting TC members from taking on any new paid professional opportunities while they serve in that capacity.

Dated: February 17, 2026

Amit P. Mehta
United States District Judge