# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03010-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |
| State of Colorado, *et al.*, | |
| Plaintiffs, | Case No. 1:20-cv-03715-APM |
| v. | HON. AMIT P. MEHTA |
| Google LLC, | |
| Defendant. | |

## JOINT STATUS REPORT

Pursuant to the Court's email dated April 27, 2026, the Parties submit the following Joint Status Report.

## I.      Joint Status Update

On January 21, 2026, the Court entered an order appointing the Parties' nominees to the Technical Committee ("TC"), the three individuals composing the Standing Committee. As of March 30, 2026, all three Standing Committee Members have signed a Technical Committee Services Agreement ("TC Services Agreement"), Confidentiality Agreement, and Indemnity Agreement.

As part of negotiating the terms of the Confidentiality Agreement pursuant to Section VII.A.8 of the Final Judgment, the Parties discussed a number of issues regarding

confidentiality. The Parties agreed that neither Google nor its outside counsel has a right of access under the terms of the Final Judgment to communications between the TC and Plaintiffs regarding enforcement of the Final Judgment. Google also stated that it does not seek access to information submitted by third parties where that information remains in Plaintiffs' possession only. The Parties did, however, have conflicting views regarding the extent to which Google is entitled to access information of third parties submitted to the TC under the Final Judgment. So that this issue would not delay the finalization of the Confidentiality Agreement, the Parties agreed to address these disputes separately.

The Parties now request the Court's assistance with the disputes identified below in the Parties' Position Statements.

**II.    United States and Co-Plaintiff States' Position Statement Regarding Google's Access to Confidential Third-Party Information Submitted to the TC**

The Final Judgment's remedies aim to address over a decade's worth of competitive harm caused by Google's conduct in the markets for general search services and search text ads. The TC will play a vital role in implementing those remedies, serving "to inform and assist the Government in its enforcement efforts." Rem. Op. at 212 (citation omitted).

As part of that work, the TC will receive a range of information provided by third parties. For example, companies seeking to take advantage of the data sharing and syndication remedies will need to submit highly sensitive information as part of their applications to become or be recertified as Qualified Competitors, who will in turn take on Google as emerging or extant competitors. Companies are also expected to approach the TC to report complaints regarding Google's compliance with the Final Judgment, and the TC may also receive other information as it carries out its obligations under the Final Judgment. *See* Final J. §§ VII.A.7, VII.C.3, IX.V.

The very success of the remedies therefore depends on the TC's productive engagement with industry participants—including in particular existing or would-be competitors of Google—and those entities' ability to safely share information with the TC. Accordingly, the Final Judgment makes clear that "*[a]ll* information gathered by the TC in connection with [the] Final Judgment . . . shall be treated as Highly Confidential under the Protective Order in this case." Final J. § VII.A.8 (emphasis added).

Consistent with the Final Judgment's edict, Plaintiffs have proposed limited circumstances in which confidential third-party information submitted to the TC should or may be disclosed to Google's outside counsel and its Designated In-House Counsel, as set forth below. Plaintiffs' positions are consistent with the Final Judgment and Protective Order and recognize the current remedies enforcement posture, including the need to protect the TC's important role under the Final Judgment.

Google's positions, by contrast, effectively boil down to a belief that it "deserves an equal seat at the table"—an assertion this Court has already unequivocally rejected. Rem. Op. at 212. For TC recommendations, Google contends that it is entitled to access any confidential third-party information that the TC considers in the course of forming its recommendations—an overreach that is rife with ambiguity and effectively seeks the same type of access rights that Google had in litigation to third-party productions. Google's position goes well beyond what the Final Judgment permits. Moreover, Google's positions would undermine the success of the remedies by having a chilling effect on actual or potential competitors of Google, who may decline to engage with the TC or Plaintiffs out of fear that any information received by the TC would have to be disclosed to Google or its counsel.

Plaintiffs respectfully request that these issues be addressed on an expedited basis. The Standing Committee Members are already receiving outreach from interested companies as they work to set up the TC's operations and begin the substantive work of the TC. To successfully engage with these third parties, the TC must be able to advise and reassure them as to whether information they provide to the TC will have to be shared with Google and/or its counsel.

> **A.    For TC Recommendations Under Section VII.A.7.k, Google's Counsel May Access Confidential Third-Party Information Provided to the TC In Limited Circumstances**

In the remedies enforcement posture, "all doubts as to the remedy are to be resolved in [the Government's] favor." Final J. Op. at 5 (citing *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 334 & n.18 (1961) (additional citations omitted)). Here, Plaintiffs proposed the terms for when and how the TC may share information with Google. *See id.*, app. at 81–83. None of those terms included Google having a right to receive all third-party information considered by the TC. Google did not oppose Plaintiffs' proposed terms, and the Court entered them into the Final Judgment. *See, e.g.*, *id.*, app. at 81–83 (Google proposing no process for the TC to submit or discuss substance of complaints with the Compliance Officer). The terms of the Final Judgment govern, and at this stage, all doubts regarding the Final Judgment's treatment of confidential third-party information should be resolved in Plaintiffs' favor.

Under the Final Judgment, "any report and recommendations prepared by the TC shall be treated as Highly Confidential under the Protective Order in this case." Final J. § VII.A.8. In addition, "Google may object to and be heard by the Court on any recommendation from the TC or Plaintiffs as to the interpretations or substantive requirements of [the] Final Judgment." *Id.* § VII.A.7.k.

In consideration of Google's right to object and the Parties' discussions, Plaintiffs' position regarding access to a TC recommendation, including any confidential third-party

information disclosed as part of that recommendation, is as follows:

- With respect to the TC's recommendations concerning whether an applicant is or may be recertified as a Qualified Competitor under the Final Judgment, for confidential third-party information submitted by that applicant to the TC as part of a formal application or recertification process and relied upon by the TC in making the recommendation, access is as follows: Google's outside counsel may receive access in full, on reasonable notice to Plaintiffs of Google's intent to object to the recommendation.[1]

- For all other TC recommendations, in consideration of Google's right to object, access to a TC recommendation, including any confidential third-party information disclosed in that recommendation, is as follows: (a) Google's outside counsel may receive access in full; (b) Google's Designated In-House Counsel (as that term is defined in the Protective Order) may receive access in full; and (c) others at Google may view a version of the recommendation in which any confidential third-party information is redacted. This position in no way limits the TC's ability to preserve the anonymity of third-party complainants under Section VII.C.3.d.

Plaintiffs' position reflects the Final Judgment's directive that "*[a]ll* information gathered by the TC in connection with this Final Judgment"—including from third parties—"*shall* be treated as Highly Confidential under the Protective Order in this case." Final J. § VII.A.8. Plaintiffs' position is also consistent with the level of access to such information permitted under the Protective Order. ECF No. 98 ¶¶ 11, 16–17. Section 17 of the Protective Order provided that in certain circumstances, Google's Designated In-House Counsel may have limited access to information designated Highly Confidential. *Id.* ¶ 17. For purposes of the liability and remedies trials in the underlying cases, Google was permitted to have one Designated In-House Counsel who could be present at counsel table during all portions of the trial. ECF No. 647 at 4. As reflected above, with the exception of information provided by Qualified Competitor applicants, Plaintiffs are willing to agree that for purposes of the enforcement phase, Google may identify

---

[1] The United States and Co-Plaintiff States understand that although there is generally alignment between them and the Colorado Plaintiffs with respect to these issues, the Colorado Plaintiffs offer an alternative position below regarding access to information provided by Qualified Competitor applicants concerning the applicant's "plan to invest and compete in" the relevant markets. Final J. § IX(V).

Designated In-House Counsel to have the same access as outside counsel to confidential third-party submitted to the TC, to the limited extent set forth in Plaintiffs' positions herein. Plaintiffs are further willing to agree to Google's request that it be able to identify two Designated In-House Counsel, rather than just one, to have such access.

Google, by contrast, broadly contends that its outside counsel and Designated In-House Counsel should automatically receive access in full to *any* confidential third-party information that the TC considers in the course of forming its recommendation. Google thus essentially claims it is entitled to a "production access right" akin to what it had in the litigation phase. Such a position, however, ignores the remedial posture and is without merit for several reasons.

*First*, permitting Google to have automatic access to all confidential third-party information considered by the TC risks undermining the success of the remedies by chilling third parties from engaging with the TC. Google does not identify what the criteria would be for assessing whether information is deemed "considered." Accordingly, third parties would be in a position of having to assume that any information provided to the TC could be deemed "considered by the TC" and therefore accessible to Google. Third parties would hesitate to provide information or otherwise limit what they provide to the TC if the TC will have to share that information with Google. For the same reasons, third parties may hesitate to come forward to the TC with complaints regarding Google's compliance with the Final Judgment, or to otherwise engage with the TC, knowing that going to the TC means effectively going to Google.

This chilling effect is compounded by the fact that Google's position gives its outside counsel and Designated In-House Counsel unfettered access to confidential third-party information provided to the TC as part of the Qualified Competitor certification process. As noted above, that process will involve third parties providing sensitive information to the TC.

Under Plaintiffs' proposal, access to such information would be limited to Google's outside counsel, on reasonable notice to Plaintiffs of Google's intent to object to the recommendation. Google, on the other hand, recognizes no such limitation.

In short, given the importance of third-party submissions to the success of these remedies, any purported "need" Google may cite in seeking such access to confidential third-party information is outweighed by the risk that such access will have a chilling effect on third parties who wish to become Qualified Competitors, submit complaints, or engage with the TC.

*Second*, the Final Judgment has no provision granting Google such an overarching right to access confidential third-party information. In claiming otherwise, Google relies on a contorted interpretation of Section VII.A.8 as entitling it to access akin to what it had in litigation. That provision, however, is clearly aimed at restricting to whom the TC may disclose such information *if a disclosure is made*, not at requiring disclosure in the first instance:

> Each TC member, and any consultants or staff hired by the TC, shall sign a confidentiality agreement *prohibiting disclosure* of any information obtained in the course of performing his or her duties as a member of the TC or as a person assisting the TC, *to anyone other than* another TC member or a consultant or staff hired by the TC, Google, the Plaintiffs, or the Court. All information gathered by the TC in connection with this Final Judgment and any report and recommendations prepared by the TC shall be treated as Highly Confidential under the Protective Order in this case, and *shall not be disclosed* to any person other than another TC member or a consultant or staff hired by the TC, Google, the Plaintiffs, and the Court *except as allowed by* the Protective Order entered in the Action or by further order of this Court. . . .

Final J. § VII.A.8 (emphasis added). The Final Judgment does not support Google's claim that it is entitled to access all confidential third-party information considered by the TC.

*Third*, Google does not have a valid need to access all confidential third-party information considered by the TC. The only reasons for such information to be submitted to the TC would be related to enforcement of the remedies. Google, however, does not have any enforcement role, nor does it otherwise have any role overseeing the TC's work.

Google's insistence on having such broad access would enable it to second guess and challenge the TC's work beyond the objection right that the Final Judgment grants—a result that would circumvent the Final Judgment, cause even more needless delay, and be antithetical to the remedies enforcement posture more broadly. While the liabilities and remedies were being litigated, it made sense, pursuant to the rules of civil procedure, for each party (at least at the outside counsel level) to have the ability to access all materials submitted by all third parties for purposes of developing and supporting its claims and defenses. But that phase is over: The Court has found that Google unlawfully maintained monopolies in general search and search text advertising and has further ordered remedies to address Google's unlawful conduct, including establishing the TC. Now, the only task remaining is the *enforcement* of the remedies. To that end, Google's primary role is to comply with the Final Judgment, with the right to object to the TC's recommendations regarding the interpretations or substantive requirements of the Final Judgment. Final J. § VII.A.7.k. Google simply does not have any valid need for the access it seeks.

*Fourth*, as reflected above, the TC's role as an "enforcement arm" of Plaintiffs is fundamentally different than Google's role in the enforcement phase. Rem. Op. at 212 (quoting *United States v. Microsoft*, 231 F. Supp. 2d 144, 197 (D.D.C. 2002)). As this Court has made clear, the role of the TC is "to inform and assist the *Government* in its enforcement efforts." *Id.* (emphasis added) (citation omitted). Indeed, the Final Judgment specifically directs the TC to "assist in enforcement of and compliance with [the] Final Judgment." Final J. § VII.A.1. To that end, the TC is tasked with "carry[ing] out important functions" and has significant responsibilities. Rem. Op. at 211–12; *see also* Final J. § VII.A.

Google, by contrast, does not have any enforcement role under the Final Judgment. Whereas the TC makes recommendations, Google only has a right to object "as to the interpretations or substantive requirements of this Final Judgment." Final J. § VII.A.7.k. And whereas both the TC and Google's Compliance Officer are tasked with addressing complaints each may receive regarding Google's compliance, the Compliance Officer must still in all cases report back to the TC and Plaintiffs regarding "the nature of the complaint and its disposition"— at which point the TC has discretion over whether to "propose to the Plaintiffs further actions consistent with [the] Final Judgment." *Id.* § VII.C.2.c. In short, Google's role is nowhere akin to that of the TC; rather, its primary role is to comply.

For at least the reasons stated above, Google is not entitled to broad access to all confidential third-party information considered by the TC.

Nevertheless, Plaintiffs have advised Google that they will consider, in good faith, requests from Google's outside counsel for the following, with Plaintiffs' responses subject to the Final Judgment and Protective Order:

- access by additional individuals to confidential third-party information that may be disclosed in a TC recommendation or included in a Qualified Competitor's application or recertification application, provided that Google's outside counsel identifies: (1) the specific information they would like to distribute; (2) the specific individuals to whom each specific piece of information would be distributed; and (3) the reason(s) for the request; and

- access to additional confidential third-party information not disclosed in the TC recommendation or included in a Qualified Competitor's application or recertification application, to the extent such information exists, provided that Google's outside counsel identifies: (1) the specific subject-matter(s) of the information sought; and (2) the relevance of each piece of information sought to the interpretations or substantive requirements of the Final Judgment.[2]

---

[2] Again, Colorado Plaintiffs' alternative position regarding access to information provided by Qualified Competitor applicants concerning the applicant's "plan to invest and compete in" the relevant markets is included below.

As an example, upon receiving such a request from Google, Plaintiffs could reach out to the relevant third party and inquire whether the third party would be willing to consent to the request in whole or in part. To the extent that the third party consents, the TC would be able to disclose the requested information.

Finally, Plaintiffs recognize that, as the remedies enforcement processes get underway, third parties may raise concerns regarding the scope of access by Google or its counsel to confidential third-party information submitted to the TC. In that event, Plaintiffs may revisit their positions to address any impact of such concerns on third parties' willingness to engage with the TC and the TC's ability to effectively carry out their responsibilities under the Final Judgment.

**B.  For Complaints Submitted To The TC Under Section VII.C.3, Google's Counsel May Access Confidential Third-Party Information As Appropriate To Ensure Compliance**

The Final Judgment provides that "[t]he Compliance Officer, third parties, or the Plaintiffs in their discretion may submit to the TC any complaints concerning Google's compliance with this Final Judgment." Final J. § VII.C.3. Upon receiving such a complaint, the TC is required to meet with the Compliance Officer at least once "to allow Google to respond to the substance of the complaints and to determine whether the complaints can be resolved without further proceedings." *Id.* § VII.C.3.a. The TC must also advise Google and Plaintiffs of the TC's conclusion and its proposal for cure. *Id.* § VII.C.3.b.

Plaintiffs' position on access to complaints submitted to the TC, as well as to the TC's conclusions and proposals for cure, is as follows:

- The TC may communicate with the Compliance Officer regarding the substance of a third-party's complaint to the extent permitted under the Final Judgment and Protective Order, and subject to the anonymization permitted under Section VII.C.3.d of the Final Judgment. For the avoidance of doubt, the TC may not disclose any confidential third-party information to the Compliance Officer. In the event the TC believes that confidential third-party information may need to be separately disclosed

10

to meet its obligation under Section VII.C.3.a, the TC shall consult with Plaintiffs on appropriate steps.

- Access to the information submitted by the TC to the Compliance Officer communicating the "substance of the complaints" is as follows: Plaintiffs take no position and leave the question of access to such information to the discretion of Google and its counsel.

- Access to the TC's conclusions and proposals for cure, including any confidential third-party information disclosed therein, is as follows: Subject to the TC's discretionary right to "preserve the anonymity of any third-party complainant" pursuant to Section VII.C.3.d, (a) Google's outside counsel may receive access in full; (b) Google's Designated In-House Counsel may receive access in full; and (c) others at Google may view a version of the conclusions and proposals for cure in which any confidential third-party information is redacted.

Google's position, by contrast, appears to misunderstand the information to be provided under Section VII.C.3 and how it may be treated, including by conflating confidentiality with anonymity. Under the Final Judgment, the TC is not required to disclose to Google the actual complaints it receives. Instead, the Final Judgment merely requires that the TC meet with the Compliance Officer "to allow Google to respond to the *substance* of the complaints and to determine whether the complaints can be resolved without further proceedings." Final J. § VII.C.3.a (emphasis added); *cf. id.* § VII.C.2 (permitting the TC, in its discretion, to submit complaints to the Compliance Officer). The TC may do this in a manner that does not disclose confidential third-party information. Separately, the TC further has discretion to "preserve the anonymity of any third-party complainant where it deems it appropriate to do so." *Id.* § VII.C.3.d. These disclosure limitations also help to minimize the chilling effect on third parties discussed in Part II.A, *supra*.

As a hypothetical example, say that third-party "Acme" reaches out to the TC and explains how, based on the manner in which Acme's systems operate or some other proprietary information that it has, it has reason to believe that Google is not providing certain data that Google is obligated to provide. The information that Acme provides to the TC is automatically

11

Highly Confidential under Section VII.A.8, i.e., without Acme having to request that treatment. The TC may communicate with the Compliance Officer regarding the substance of Acme's complaint (i.e., Google does not appear to be providing certain data to Acme) without disclosing confidential Acme information about its systems. In its discretion, the TC can also preserve anonymity and communicate the same point to the Compliance Officer without identifying Acme.

To the extent the TC's conclusions and proposals for cure contain confidential third-party information, then Google's access is the same as provided in Part II.B.1 above with respect to other recommendations (i.e., those not related to Qualified Competitors): (a) Google's outside counsel and Designated In-House Counsel should receive access in full; and (b) others at Google may view a version of the recommendation with any confidential third-party information redacted.

In addition, as above, Plaintiffs have advised Google that they will consider, in good faith, requests from Google's outside counsel for the following, with Plaintiffs' responses subject to the Final Judgment and Protective Order:

- access by additional individuals to confidential third-party information that may be disclosed in a TC's conclusion and its proposal for cure, provided that Google's outside counsel identifies: (1) the specific information they would like to distribute; (2) the specific individuals to whom each specific piece of information would be distributed; and (3) the reason(s) for the request; and

- additional confidential third-party information not disclosed in the TC's conclusion and its proposal for cure, to the extent such information exists, provided that Google's outside counsel identifies: (1) the specific subject-matter(s) of the information sought; and (2) the relevance of each piece of information sought to (a) the interpretations or substantive requirements of the Final Judgment or (b) Google's ability to implement the proposed cure.

Plaintiffs position thus balances protecting confidential third-party information with Google's obligations to address compliance issues under the Final Judgment.

C.    **For Complaints Submitted To The Compliance Officer Under Section VII.C.2, The TC May Seek Plaintiffs' Assistance In The Unlikely Event That Confidential Third-Party Information Is Involved**

The Final Judgment provides that "[t]hird parties, the TC, or Plaintiffs in their discretion may submit to the Compliance Officer any complaints concerning Google's compliance with this Final Judgment." Final J. § VII.C.2.

Plaintiffs' position is as follows:

- The TC may submit a complaint to the Compliance Officer to the extent permitted under the Final Judgment and Protective Order, and subject to the anonymization permitted under Section VII.C.3.d of the Final Judgment. For the avoidance of doubt, the TC may not disclose any confidential third-party information to the Compliance Officer. In the event the TC believes that confidential third-party information may need to be separately disclosed as part of submitting a complaint under Section VII.C.2, the TC shall consult with Plaintiffs on appropriate steps.

- Plaintiffs take no position and leave the question of access to such complaints to the discretion of Google and its counsel; provided, however, that the website required by Section VII.C.2.a must state how any information submitted to the Compliance Officer will be handled.

Google's position here is nearly identical to its position regarding complaints under Section VII.C.3, and the flaws discussed in Part II.B, *supra*, apply equally here. In addition, Plaintiffs believe it is highly unlikely that a complaint submitted to the Compliance Officer by third parties, the TC, or Plaintiffs would disclose confidential third-party information that was also provided to the TC, and it is unclear in what circumstances such a scenario would occur. Accordingly, Plaintiffs believe their position above is the appropriate approach, and any outlier scenario can be addressed in good faith consistent with Plaintiffs' positions herein.

D.    **Conclusion**

For the reasons listed above, Plaintiffs respectfully request the Court to order that Google's access to confidential third-party information submitted to the TC be limited in accordance with Plaintiffs' positions as set forth herein.

13

### III.    Colorado States' Position Statement Regarding Google Access to Third-Party Information Provided to the TC

Colorado Plaintiffs agree with all of United States and Co-Plaintiffs States' positions above, except for the handling of documents related to a potential or actual Qualified Competitor's "plan to invest and compete in or with the GSE and/or Search Text Ads markets." Final Judg. § IX(V). Such materials should not be provided to either Google or its outside counsel.

Colorado Plaintiffs agree that, with respect to the certification and re-certification of Qualified Competitors ("QCs"), certain confidential third-party information submitted to the Technical Committee may be shared with Google's outside counsel in consideration of Google's right to object to the certification process. For example, a QC must show its ability to "meet[] Plaintiffs' approved data security standards as recommended by the Technical Committee and agree[] to regular data security and privacy audits by the Technical Committee." *Id.* Providing Google's outside counsel access to confidential third-party materials relied upon to ensure ongoing compliance with these data security and privacy requirements will enable Google to object should it believe that an applicant does not meet the established requirements.[3]

However, confidential information pertaining to a potential or actual QC's "plan to invest and compete in" the relevant markets should be treated differently. A plan of how a new entrant will "compete" against Google could be expected to include detailed descriptions of how the company intends to differentiate itself, including its proposed products and services. As the Court has recognized, the QC criteria are intended to "ensure that the data-sharing and syndication remedies fulfill their intended purpose of increasing competition in the relevant markets." Mem.

---

[3] *See* Oct. 8, 2025 Hearing Tr. (Dkt. 1447) at 26:19-24 (Google's counsel raising concern about objecting if a QC does not meet privacy and security requirements). In addition, Google can separately object to the data security and privacy standards recommended by the Technical Committee. *See* Final Judg. § VII.A.7.k.

Op. (Dkt. 1461) at 10. Giving Google or its lawyers access to actual or nascent competitors' plans to compete with Google could undermine that purpose by discouraging such competitors from seeking QC status at the outset or result in less fulsome submissions. *See* Exhibit 1 (Declaration of Steve Fisher) ¶¶ 5-8 (describing concerns held by DuckDuckGo and applicable to nascent competitors); *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 898 (D.C. Cir. 2006) ("Disclosure of sensitive materials to a [business] adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the [agency's] fact-finding processes.") (alterations in original).

The chill would be particularly acute for future entrants seeking to offer innovative and differentiated products, which may pose the greatest competitive threat to Google. *See* Liability Op. (Dkt. 1033) at 237 ("The loss of nascent competitors is a clear anticompetitive effect"); Rem. Op. (Dkt. 1436) at 146-47 ("For Qualified Competitors to compete, they must innovate and differentiate their product from Google's"). Consider, for example, the historic example of Neeva: No benefit would have come from Google or its outside counsel knowing that a new company was planning to challenge Google's monopoly by relying on new technology to generate search results. Liability Op. at 30. Nascent competitors must likewise be able to use the available remedies and to commercialize without providing advance notice to Google. To restore competition means restoring the ability of new and existing companies to challenge Google head-on. *See* Oct. 8, 2025 Hearing Tr. (Dkt. 1447) at 33:7-23.

Moreover, Google has no need for this highly sensitive information because the Final Judgment does not assign Google a role in determining whether a QC has an adequate "plan to invest and compete." To the contrary, for this requirement alone, the Final Judgment states that an applicant must "make[] a sufficient showing *to the Plaintiffs*, in consultation with the Technical

Committee"—and not to Google. Final Judg. § IX(V) (emphasis added). The Final Judgment thus appropriately assigns to Plaintiffs the responsibility of ensuring that QCs have at the outset and maintain a plan to invest and compete in the relevant markets. Colorado Plaintiffs may reasonably share such plans with the Technical Committee as part of its consultive role. Colorado Plaintiffs take seriously their obligation to ensure that QCs satisfy this requirement and do not, for example, "simply become a white label of Google." Dkt. 1461 at 10. Indeed, Colorado Plaintiffs have pursued this case from the beginning to foster conditions that will increase competition through differentiated products not offered by Google. Colorado Plaintiffs do not question the integrity of Google's outside counsel, but since Google has no legitimate need to see its competitors' business plans, they should receive the highest level of protection. There is no reason for Google's counsel to know a QC's plan to challenge Google before it is implemented.

Google's ability to object to Plaintiffs' certifications does not justify disclosure of pending business plans to Google's outside counsel. Google has a legitimate need to ensure that user privacy and its data are protected. But that is accomplished by the separate requirement that a QC meet approved data security standards and agrees to regular audits. Nor does the concern that QCs are "not real serious entrants" justify disclosure. *See* May 30, 2025 Hearing Tr. (Dkt. 1419) at 4772:6-7. As the Court has suggested, the Technical Committee could "develop a set of standards that would qualify someone as a qualified competitor" to guide the process. *Id.* at 4773:1-5. To be sure, the Court may resolve any disputes that Google may present over whether an applicant satisfies the QC criteria. Should Google present such a dispute, Plaintiffs and the Technical Committee can submit more detailed materials related to an applicant's plan to invest and compete to the Court for *in camera* review.

For these reasons, the Court should hold that a QC's "plan to invest and compete in or with the GSE and/or Search Text Ads markets" will not be provided to Google or its outside counsel.

## IV.    Google's Position Statement Regarding Google Access to Third-Party Information Provided to the TC

### A.    Google's Access to TC Recommendations Under Section VII.A.7.k

**Google's Proposal**

Google's access to a TC recommendation, including any confidential third-party information disclosed in that recommendation, is as follows: (a) Google's outside counsel shall receive access in full; (b) Google's Designated In-House Counsel (as that term is defined in the Protective Order) shall receive access in full; and (c) others at Google may view a version of the recommendation in which any confidential third-party information is redacted. In addition, Google's outside counsel and Designated In-House Counsel shall receive access in full to any third-party information that the TC considers in the course of forming its recommendation.

Plaintiffs will consider, in good faith, requests from Google's outside counsel for access by additional individuals to confidential third-party information that may be disclosed in a TC recommendation or considered by the TC in forming its recommendation, provided that Google's outside counsel identifies: (1) the specific information they would like to distribute; (2) the specific individuals to whom each specific piece of information would be distributed; and (3) the reason(s) for the request.

**Google's Position Statement**

In order to effectively exercise its rights under the Final Judgment, Google needs to be an active participant in proceedings before the Technical Committee and to have insight into what is being submitted to the Technical Committee by third parties. Plaintiffs' proposal would prevent Google and its counsel from having access to key evidence underlying the Technical Committee's decisions and recommendations, directly contradicting what Plaintiffs represented during the remedies proceedings.

During the remedies proceedings, Plaintiffs repeatedly advocated for the resolution of important issues to be reserved for themselves. In defending that structure, they assured the Court that they would rely upon the Technical Committee, and further that Google would have the

17

opportunity to raise to the Court any disagreement with decisions made by the Plaintiffs or the Technical Committee.[4]  Part and parcel of Google's ability to object to this Court with regards to any final recommendations by the Technical Committee was the notion that Google would receive access to the information considered by the Technical Committee.  When the Court put precisely this issue to Plaintiffs, posing the specific question of whether Google would, for example, "get access to [the] plan" submitted by a prospective Qualified Competitor,[5] Plaintiffs confirmed that Google would receive that information:  "*That's the way our proposal is designed.* You're welcome to make it differently. Of course, we want to make sure that Google's employees are not getting access to competitively sensitive information."  Oct. 8, 2025 Hr'g Tr. 18:3-7; *see also* Remedies Trial Tr. 4841:2-16.

Yet Plaintiffs now seek to block even Google's outside and in-house counsel from receiving the information considered by the Technical Committee in issuing its recommendations.  Specifically, with one exception (allowed by DOJ Plaintiffs but not Colorado Plaintiffs), Plaintiffs propose that Google's access to confidential third-party information begins and ends with the information ***contained in the Technical Committee's final written recommendation***; Google (including outside counsel) would not presumptively receive access to the third-party information that was ***considered*** by the Technical Committee in reaching that

---

[4] *See, e.g.*, Remedies Trial Tr. 4722:19-4773:24 (Severt) ("[T]he technical committee will help make recommendations, assess, it will help narrow, ripen, and resolve issues before they ever get to the Court.  But in each case, the ultimate authority would rest with the Court, and Google, of course, would be able to object, if we weren't able to reach resolution."); *id.* 4771:13-4772:2.

[5] The Court's question was:  "So, you know, let's use your example of a qualified competitor. . . .there's a new entrant, and they want to come forward and say, look, . . . we'd like to become a qualified competitor, here's our plan, do you mean to say that Google gets access to that plan and can say, look, we don't think these folks are going to meet the requirements, they're not good enough, they shouldn't have access, and do they then get to come to me to object even though you disagree and the technical committee disagrees?" Oct. 8, 2025 Hr'g Tr. 17:17-18:2.

recommendation. Rather, Google's outside counsel would have to issue specific requests for information, identifying "the specific subject-matter(s) of the information sought" and "the relevance of each piece of information sought to the interpretations or substantive requirements of the Final Judgment," and even then it would be in Plaintiffs' discretion whether to provide outside counsel with access.

The Court should adopt Google's proposal and allow Google's outside counsel and Designated In-House Counsel access to any third-party information that is considered by the Technical Committee in formulating its recommendations "as to the interpretations or substantive requirements of [the] Final Judgment." ECF 1462 at § VII.A.7.k ("Google may object to and be heard by the Court on any recommendation from the TC or Plaintiffs as to the interpretations or substantive requirements of this Final Judgment."). Google is not seeking access to discussions between Plaintiffs and the Technical Committee; nor is Google seeking access to third-party information that does not reach the Technical Committee, i.e., that remains in Plaintiffs' possession only.[6] But given the contemplated role of the Technical Committee to provide expert guidance to the Plaintiffs and the Court on a number of important issues that will likely entail the consideration of information submitted by third parties, Google's proposal seeks access for its outside counsel and designated in-house counsel to that information.

Plaintiffs' proposal departs from their prior positions (as set forth above), the Court's decisions, and the Final Judgment. And as important, it denies Google due process given the substantive role that has been provided to the Technical Committee in making recommendations regarding important property rights owned by Google. Google cannot meaningfully address the

---

[6] Google reserves all rights on its arguments previously raised and further reserves all rights it has to discovery into these matters.

Technical Committee's recommendations and raise objections as necessary without access to the information the Technical Committee considers in the process of deliberating and arriving at its recommendations.  It does not suffice to receive the end product—the final recommendation— with only that information that the Technical Committee and/or Plaintiffs choose to reveal.  Plaintiffs could, for example, present the Technical Committee's recommendation as backed by substantial third-party feedback, and Google would have no ability to evaluate what that feedback was.  Requiring Google to identify specific pieces of information and their relevance is unworkable in this context, as Google has no means by which to know what information has been provided to the Technical Committee.

In apparent acknowledgement of the exchange with the Court cited above, the DOJ Plaintiffs carve out as an exception to this rule recommendations "concerning whether an applicant is or may be recertified as a Qualified Competitor under the Final Judgment."  On that issue specifically, Plaintiffs allow Google's outside counsel to "receive access" to "confidential third-party information submitted by that applicant to the TC as part of a formal application or recertification process and relied upon by the TC in making the recommendation," "on reasonable notice to Plaintiffs of Google's intent to object to the recommendation."  But there is no principled basis on which to treat the certification and recertification of Qualified Competitors differently than all of the other issues on which the Technical Committee may make recommendations.

For all of these reasons, Google seeks the Court's confirmation that its outside counsel and Designated In-House Counsel have a right of access in full to any third-party information that the TC considers in the course of forming any recommendations.

Google also requests that the Court adopt its proposal regarding requests for access by additional individuals at Google.  The only difference between the parties' language is that

20

Plaintiffs' proposal includes the caveat "provided, however, that Plaintiffs' responses are subject to the Final Judgment and Protective Order."  That language swallows the intent of the provision, as the Final Judgment states that "[a]ll information gathered by the TC in connection with this Final Judgment and any report and recommendations prepared by the TC shall be treated as Highly Confidential under the Protective Order in this case," and thus, read literally, could not be disclosed to Google employees "*except . . . by further order of this Court*."  ECF 1462 at § VII.A.8; *see also* ECF 98 at 13-16.

### B.       Google's Access to Complaints Submitted to the TC Under Section VII.C.3

### Google's Proposal

Section VII.C.3.a: Pursuant to Section VII.C.3.a, at least once during its investigation of any third-party complaint, the TC must communicate with the Compliance Officer regarding the substance of a third party's complaint.  Should a third party seek confidentiality of its complaint to the TC, Section VII.C.3.d provides the mechanism and standard for such confidentiality:  "The TC may preserve the anonymity of any third-party complainant where it deems it appropriate to do so upon the request of the Plaintiffs or the third party, or in its discretion."  Google agrees with Plaintiffs that access to information submitted by the TC to the Compliance Officer communicating the "substance of the complaints" is at the discretion of Google and its counsel.

Section VII.C.3.b:  Under Section VII.C.3.b, the TC must advise Google of the TC's conclusions and proposals for cure.  Should a third party seek confidentiality of information that would be disclosed in the TC's conclusions and proposal for cure, Section VII.C.3.d provides the mechanism and standard for such confidentiality:  "The TC may preserve the anonymity of any third-party complainant where it deems it appropriate to do so upon the request of the Plaintiffs or the third party, or in its discretion."  Access to information submitted by the TC to Google regarding the TC's conclusions and proposals for cure is at the discretion of Google and its counsel.

Plaintiffs will consider, in good faith, requests from Google's outside counsel for additional confidential third-party information not disclosed in the TC's conclusion and its proposal for cure, to the extent such information exists, provided that Google's outside counsel identifies: (1) the specific subject-matter(s) of the information sought; and (2) the relevance of each piece of information sought to (a) the interpretations or substantive requirements of the Final Judgment or (b) Google's ability to implement the proposed cure.

**Google's Position Statement**

Google additionally seeks the Court's clarification that the restrictions on Google's access under the operative Protective Order do not prohibit Google from receiving the information it is entitled to under the Final Judgment regarding complaints received by the Technical Committee.

Under Section VII.C.3 of the Final Judgment, third parties are permitted to submit complaints concerning Google's compliance with the Final Judgment to the Technical Committee. In an effort to allow Google to respond to and, if necessary, address the allegations of such complaints, the Final Judgment requires the Technical Committee to provide Google with certain information about each complaint. First, under Section VII.C.3.a, for any complaint received by the Technical Committee, the Technical Committee is obligated to "meet with the Compliance Officer to allow Google to respond to the substance of the complaints and to determine whether the complaints can be resolved without further proceedings." ECF 1462 at § VII.C.3.a. Second, under Section VII.C.3.b, "[f]ollowing its investigation, the TC shall advise Google and the Plaintiffs of its conclusion and its proposal for cure." ECF 1462 at § VII.C.3.b. These provisions recognize that *Google* (including its Compliance Officer, its in-house counsel, and its outside counsel) requires access to information about the substance of third-party complaints and the Technical Committee's conclusions and proposals to cure such complaints so that Google may understand, investigate, and, where necessary, work to resolve any such complaints.

Plaintiffs' proposal acknowledges these required disclosures. However, they again caveat their proposal with reference to the Final Judgment and Protective Order. For example, they state that "[t]he TC may communicate with the Compliance Officer regarding the substance of a third-party's complaint" but only "to the extent permitted under the Final Judgment and Protective Order" and "[f]or the avoidance of doubt, the TC may not disclose any confidential third-party

information to the Compliance Officer." Similarly, while Plaintiffs grant Google's outside counsel and Designated In-House Counsel access to the proposal and conclusion for cure, others at Google—including in-house counsel beyond Designated In-House Counsel and those who are responsible for determining what action Google would take—would only be able to view a version of the conclusions and proposals for cure "in which any confidential third-party information is redacted."

These caveats essentially gut the Technical Committee's ability to communicate to Google the information that is both required under the Final Judgment and necessary to allow Google to respond meaningfully to any third-party complaint. As discussed above, under Section VII.A.8, all information provided to the Technical Committee would be deemed "Highly Confidential," including the *entire* complaint, unless allowed "by further Order of this Court." ECF 1462 at § VII.A.8. Thus, under Plaintiffs' proposal, the Technical Committee would violate the Final Judgment by sharing the "substance of the complaint" with Google's Compliance Officer.[7] Google raised the apparent tension between their proposal and the Final Judgment and Protective Order several times over the course of the parties' meet and confers. Plaintiffs' response is simply to say that if the Technical Committee needs to share third-party information with Google in order to meet its obligations under the Final Judgment, the Technical Committee can go to Plaintiffs, and Plaintiffs will try to work with third parties to get them to agree to share this

---

[7] Plaintiffs suggested during the meet and confer that the "substance of the complaint" could be shared without divulging any information provided by the third party to the Technical Committee. Frankly, it is difficult to understand how the Technical Committee could do so in a way that would allow Google to meaningfully respond to the substance of any complaint and to determine whether the complaint can be resolved without further proceedings. But regardless, Plaintiffs acknowledge there will be instances under their proposal where the Technical Committee would be unable to meet its obligations pursuant to Section VII.C.3.a, and in such instances provide only that "the TC shall consult with Plaintiffs on appropriate steps."

information with Google.  But a third party should not be permitted to control, through designation under the Protective Order, whether the Technical Committee may share the substance of the complaint with Google.  Instead, the Final Judgment makes clear to complainants that Google will be informed of the "substance" of their complaint, the Technical Committee's conclusion, and the proposal to cure, and while they may request "anonymity," the Technical Committee may determine that anonymity is not "appropriate."

Moreover, there is no need to insert a reference to the Protective Order into this process, because Section VII.C.3 of the Final Judgment already contains protection for third-party confidentiality where appropriate.  In particular, under Section VII.C.3, the "the TC *may* preserve the anonymity of any third-party complainant *where it deems it appropriate to do so* upon the request of the Plaintiffs or the third party, or in its discretion."  ECF 1462 at § VII.C.3 (emphasis added).  Plaintiffs' proposal overrides this provision, providing the absolute right of any third party to *require* not just anonymity, but complete confidentiality of the substance of their complaint.  Even in instances where the Technical Committee does not deem it appropriate to provide third-party anonymity, a third party would be permitted to overrule that judgment through designation under the Protective Order.  Plaintiffs' proposal would likewise provide *Plaintiffs* the right to determine what steps are "appropriate" should a third-party seek confidentiality of its complaint.  But Section VII.C.3.d already defines those steps (the Technical Committee may preserve anonymity), allows Plaintiffs to "request" such anonymity, and leaves the ultimate decision of whether it is "appropriate" to the judgment of the Technical Committee, not Plaintiffs. ECF 1462 at § VII.C.3.d.

Finally, Plaintiffs and Google are largely aligned regarding Google's access to information beyond the substance of the complaint and the Technical Committee's conclusion and proposal

24

for cure: In such instances, Google may request access to additional information and Plaintiffs will consider such requests in good faith. However, Plaintiffs' proposal again inserts language regarding the Final Judgment and Protective Order that largely negate this offer to consider such requests in good faith. In particular, Plaintiffs provide "that Plaintiffs' responses are subject to the Final Judgment and Protective Order." Because all information provided to the Technical Committee would be deemed "highly confidential" under Section VII.A.8, unless a third party provides consent, Plaintiffs would be *unable* to even consider Google's request to provide the Compliance Officer or any other employee with the requested information.

### C.    Google's Access to Complaints Submitted to the Compliance Officer Under Section VII.C.2

**Google's Proposal**

Section VII.C.2 provides the TC discretion to submit to the Compliance Officer any complaints concerning Google's compliance with the Final Judgment. Should a third party seek confidentiality regarding any information the TC chooses to disclose, in its discretion, as part of a complaint under Section VII.C.2, Section VII.C.3.d provides the mechanism and standard for such confidentiality: "The TC may preserve the anonymity of any third-party complainant where it deems it appropriate to do so upon the request of the Plaintiffs or the third party, or in its discretion." Google agrees with Plaintiffs that access to information submitted by the TC to the Compliance Officer communicating complaints under Section VII.C.2 is at the discretion of Google and its counsel.

**Google's Position Statement**

Under Section VII.C.2 of the Final Judgment, the Technical Committee "in their discretion may submit to the Compliance Officer any complaints concerning Google's compliance with this Final Judgment." ECF 1462 at § VII.C.2. Plaintiffs and Google largely agree that access to information submitted by the Technical Committee to the Compliance Officer communicating complaints under Section VII.C.2 is at the discretion of Google and its counsel. However, Plaintiffs again add additional caveats that limit the Technical Committee's ability to provide information regarding such complaints to the Compliance Officer.

25

In particular, Plaintiffs state that the "TC may submit a complaint to the Compliance Officer to the extent permitted under the Final Judgment *and Protective Order*," and "[f]or the avoidance of doubt, the TC may not disclose any confidential third-party information to the Compliance Officer."  This additional point limits the Technical Committee's discretion regarding what complaints and what information it can provide to the Compliance Officer.  For instance, if the Technical Committee receives information from a third party that leads the Technical Committee to, in its discretion, provide a complaint to the Compliance Officer, it would be unable to do so without the third party's consent.

Again, to the extent there is any concern regarding third-party confidentiality for such complaints, Section VII.C.3.d already provides a mechanism and standard for such confidentiality:  "The TC *may* preserve the anonymity of any third-party complainant *where it deems it appropriate to do* so upon the request of the Plaintiffs or the third party, or in its discretion."  ECF 1462 at § VII.C.3.d. (emphasis added).

Dated: May 1, 2026

Respectfully submitted,

/s/ Karl E. Herrmann
Claire M. Maddox (D.C. Bar #498356)
Travis R. Chapman (D.C. Bar #90031151)
Danielle Hauck
Grant M. Fergusson (D.C. Bar #90004882)
Karl E. Herrmann (D.C. Bar #1022464)

U.S. Department of Justice
Antitrust Division
Technology & Digital Platforms Section
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 549-7155
Claire.Maddox@usdoj.gov

*Counsel for Plaintiff United States of America*

27

By: /s/ Amanda Wentz
Amanda J. Wentz
Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, Arkansas 72201
Phone: (501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Counsel for Plaintiff State of Arkansas*

By: /s/ Carolyn D. Jeffries
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General
Brian Wang, Deputy Attorney
General
Carolyn D. Jeffries, Deputy Attorney
General (DC Bar No. 1600843)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*

By: /s/ Lee Istrail
James Uthmeier, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of
Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By: /s/ Charles Thimmesch
Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney
General
Ronald J. Stay, Jr., Senior Assistant
Attorney General
Charles Thimmesch, Senior Assistant
Attorney General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: /s/ Jesse Moore
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and
Director, Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of
Indiana
Indiana Government Center South, Fifth
Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

28

By: /s/ Jonathan E. Farmer
Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the
Office of Consumer Protection
Philip R. Heleringer, Executive
Director of the Office of Consumer
Protection
Jonathan E. Farmer, Deputy Executive
Director of the Office of Consumer
Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff*
*Commonwealth of Kentucky*

By: /s/ Asyl Nachabe
Liz Murrill, Attorney General
Asyl Nachabe, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
909 Poydras St. Suite 1850
New Orleans, LA 70112
(225) 326-6435
NachabeA@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By: /s/ Scott Mertens
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By: /s/ Alison Esbeck
Alison Esbeck
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
Alison.esbeck@ago.mo.gov
Phone: 314-340-4977

*Counsel for Plaintiff State of Missouri*

By: /s/ Anna Schneider
Anna Schneider
Special Assistant Attorney General,
Senior Counsel,
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT 59602-0150
Phone: (406) 444-4500
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

By: /s/ Mary Frances Jowers
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy
Attorney General
C. Havird Jones, Jr., Senior Assistant
Deputy Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General
State of South Carolina
1000 Assembly Street
Rembert C. Dennis
Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

By: /s/ Diamante Smith
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant
Attorney General
Austin Kinghorn, Deputy Attorney General
for Civil Litigation
Thomas York, Division Chief, Antitrust
Division
Diamante Smith, Assistant Attorney
General, Antitrust Division
Office of the Attorney General,
State of Texas
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1162
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By: /s/ Caitlin M. Madden
Joshua L. Kaul, Attorney General
Caitlin M. Madden, Assistant
Attorney General
Wisconsin Department of Justice
17 W. Main St.
Post Office Box 7857
Madison, Wisconsin 53707-7857
caitlin.madden@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

MIKE HILGERS
Attorney General of Nebraska

Justin C. McCully, Assistant Attorney
General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
E-Mail: Justin.mccully@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

JEFF JACKSON
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov

*Counsel for Plaintiff State of North Carolina*

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

DEREK E. BROWN
Attorney General of Utah

Matthew Michaloski, Assistant Attorney General
Marie W.L. Martin, Division Director
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140811
Salt Lake City, Utah 84114
Telephone: (801) 440-9825
E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

STEPHEN J. COX
Attorney General of Alaska

Jeff Pickett
Senior Assistant Attorney General
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5275
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

BRIAN SCHWALB
Attorney General of the District of Columbia

32

Elizabeth Gentry Arthur
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

DOUGLAS MOYLAN
Attorney General of Guam

Norman Lee Miller, Jr.
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-2710
E-Mail: nmillerjr@oagguam.org

*Counsel for Plaintiff Territory Guam*

ANNE E. LOPEZ
Attorney General of Hawai'i

Rodney I. Kimura
Department of the Attorney General, State
of Hawai'i
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawai'i*

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 332-3549
E-Mail: John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
115 S. LaSalle St.
Chicago, IL 60603
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov
Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

KRIS W. KOBACH
Attorney General of Kansas

Christopher Teters
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: chris.teters@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

33

Schonette J. Walker
Melissa English
Office of the Attorney General of
Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
menglish@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

ANDREA CAMPBELL
Attorney General of Massachusetts

Jennifer E. Greaney
Office of the Attorney General of
Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2981
E-Mail: Jennifer, greaney@mass.gov

*Counsel for Plaintiff Commonwealth of
Massachusetts*

KEITH ELLISON
Attorney General of Minnesota

Zach Biesanz
Senior Enforcement Counsel
Office of the Minnesota Attorney General
Antitrust Division
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker
Nevada Office of the Attorney General

100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mbadorine@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

JENNIFER DAVENPORT
Acting Attorney General of New Jersey

Yale A. Leber
Abiola G. Miles
Deputy Attorneys General
New Jersey Attorney General's Office
25 Market Street, P.O. Box 106
Trenton, NJ 08625
Telephone: (609) 376-2383
E-Mail: Yale.Leber@law.njoag.gov
Abiola.Miles@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504

34

Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust
Division
Office of the Attorney General of North
Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North
Dakota*

DAVID YOST
Attorney General of Ohio

Beth Ann Finnerty, Section Chief,
Antitrust
Sarah Mader, Assistant Attorney General,
Antitrust
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail: Beth.Finnerty@ohioago.gov
Sarah.Mader@ohioago.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Cameron R. Capps
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Telephone: (405) 522-0858
E-Mail: Cameron.capps@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

DAN RAYFIELD
Attorney General of Oregon

Gina Ko, Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (503) 934-4400
E-Mail: Gina.Ko@doj.oregon.gov

*Counsel for Plaintiff State of Oregon*

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

LOURDES L. GÓMEZ TORRES
Secretary of Justice

TANIA L. FERNÁNDEZ-MEDERO
Assistant Secretary of Justice

SAMUEL WISCOVITCH-CORALI
Deputy Undersecretary

Pablo Tufiño-Soto
Senior Attorney
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192

35

San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900, Ext. 1205
E-Mail: ptufino@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov
*Counsel for Plaintiff State of Vermont*

JAY JONES
Attorney General of Virginia

Tyler T. Henry
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

NICHOLAS W. BROWN
Attorney General of Washington

Amy N.L. Hanson
Senior Managing Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

JOHN B. McCUSKEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of West Virginia
1900 Kanawha Boulevard East
Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

KEITH KAUTZ
Attorney General of Wyoming

36

William T. Young
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-7847
E-Mail: William.young@wyo.gov

*Counsel for Plaintiff State of Wyoming*

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Michael Sommer (admitted *pro hac vice)*
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-880
msommer@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

38