**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>GOOGLE LLC, )<br><br>Defendant. ) | Case No. 20-cv-3010 (APM) |
| STATE OF COLORADO et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>GOOGLE LLC, )<br><br>Defendant. ) | Case No. 20-cv-3715 (APM) |

**<u>ORDER</u>**

**I.**

On December 5, 2025, this court entered the Final Judgment against Defendant Google LLC for unlawfully maintaining a monopoly in the general search services and general search text advertising markets. The Final Judgment (1) prohibits Google from entering into exclusive distribution agreements for its search and search-related products and (2) compels Google to share its search index data and user-side data and to syndicate its search results and search text ads to Qualified Competitors. It also establishes a Technical Committee to assist in Plaintiffs' enforcement efforts and sets a judgment period of six years, among other things.

Google filed a notice of appeal to the D.C. Circuit on January 16, 2026. *See* ECF No. 1472. Plaintiffs then filed notices of cross-appeal on February 3, 2026. *See* ECF Nos. 1484, 1485. The Final Judgment became effective on February 3, 2026.

Now, Google asks the court to partially stay the Final Judgment pending appeal—specifically, those provisions compelling the disclosure of search index and user data and the syndication of search results and search text ads. *See* Def.'s Mot. for a Partial Stay Pending Appeal, ECF No. 1471 [hereinafter Google's Mot.], Mem. of P. & A. in Supp. of Google's Mot., ECF No. 1471-1 [hereinafter Google's Mem.], at 1. Plaintiffs oppose the stay, but only for now, on the basis that compelled data-sharing and syndication are still months away and therefore cannot satisfy the demanding irreparable-harm standard. *See* Pls.' Mem. of P. & A. in Opp'n to Google's Mot., ECF No. 1478 [hereinafter Pls.' Opp'n], at 1–3.

The court agrees with Plaintiffs. Google's Motion for a Partial Stay Pending Appeal, ECF No. 1471, is therefore denied without prejudice.

## II.

Under "long-standing principles governing stays pending appeal," the court considers four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Marin Audubon Soc'y v. FAA*, 129 F.4th 869, 871 (D.C. Cir. 2025); *see Nken v. Holder*, 556 U.S. 418, 427 (2009). The test is "essentially the same" as that for a preliminary injunction. *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 n.5 (D.D.C. 2005) (citing cases); *see also Nken*, 556 U.S. at 434.

Staying a judgment pending its appeal is "extraordinary relief." *Citizens for Resp. & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018). Because "[a] stay is an 'intrusion into the ordinary processes of administration and judicial review,'" *Nken*, 556 U.S. at 427, it "is not a matter of right," *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926). Rather, it is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (quoting *Virginian Ry.*, 272 U.S. at 672–73). And while a stay pending appeal is "a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process, . . . a reviewing court may not resolve a conflict between considered review and effective relief by reflexively holding a final order in abeyance pending review." *Id.* at 427. The traditional stay factors rather "contemplate individualized judgments in each case." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987).

### III.

The court's decision today starts and ends with irreparable harm. A showing of irreparable harm is "a necessary prerequisite for a stay," and the failure to demonstrate such harm is "fatal" to the movant's request, *KalshiEX LLC v. CFTC*, 119 F.4th 58, 64 (D.C. Cir. 2024), "even if the other three factors entering the calculus merit such relief," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The D.C. Circuit "has set a high standard for irreparable injury." *Id.* Specifically, the movant must establish that they will suffer harm that is "both certain and great, actual and not theoretical, . . . and of such imminence that there is a clear and present need for equitable relief to prevent" it. *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (emphasis omitted) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Relief "will not be granted against something merely feared as liable

to occur at some indefinite time." *Wis. Gas Co.*, 758 F.2d at 674 (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)).

Since entry of the Final Judgment, the parties have been working to carry out those parts of the Final Judgment that require immediate action.  They have identified and sought court approval for the three members of the Technical Committee's Standing Committee, and they have largely finalized the terms under which the Technical Committee members will operate. *See* Order, ECF No. 1474; Order, ECF No. 1497; Tr. of Status Conference, ECF No. 1495, at 5:18–6:14.  The Standing Committee also has started to lay the groundwork for its operations.  *See* Pls.' First Status Report on Google's Compliance with the Final J., ECF No. 1512 [hereinafter Pls.' SR], at 4–6.  That progress is commendable.  But as of the date of this order, the Technical Committee is not yet fully staffed—two members remain unappointed—and so the tasks of developing data-sharing and syndication license templates has not begun.  *See* Order, ECF No. 1505; Order, ECF No. 1510.  Nor have Qualified Competitors been comprehensively identified or the privacy safeguards as to the sharing of user data been discussed.  *See* Tr. of Hr'g on Mot., ECF No. 1507 [hereinafter Hr'g Tr.], at 9:6-11.  The parties also continue to work through operational and governing details, some of which have required the court's intervention.  *See* Joint Status Report, ECF No. 1491 (Technical Committee's compensation); Joint Status Report, ECF No. 1511 (Google's access to confidential third-party information).  All of this has in turn required status hearings and extensions of time, *see, e.g.*, Minute Order, Feb. 11, 2026; Minute Order, May 1, 2026; Order, ECF No. 1505; Order, ECF No. 1510.  Plaintiffs estimate that Qualified Competitors may be able to concretely reap the benefits of the Final Judgment, most optimistically, by late fall or early winter of this year.  Hr'g Tr. at 6:6–7:19.

Google argues that it will be irreparably harmed absent a partial stay, because the data-sharing and syndication provisions will result in the disclosure of confidential information. Google's Mem. at 26–30.  From that, they argue, will flow further harms still, including to its right to appeal, competitive standing and reputation, and the way it does business, particularly as to competitors.  *Id.* at 30–35.

As of today, neither the court nor the parties have any concrete point of reference for the harms the data-sharing and syndication provisions may precipitate.  The Final Judgment broadly orders that certain search index and user-side data be disclosed and that search results and search text ads be syndicated on ordinary commercial terms.  *See* Final J., ECF No. 1462, §§ IV.A–B, V, VI.B–C.  But key details such as license terms, security and privacy safeguards, and who the Qualified Competitors will be are far from established.  And discussions as to these details will not meaningfully begin until the Technical Committee is not only fully staffed but also internally organized, which will include hiring staff, assigning responsibilities, establishing procedures, and securing an annual budget.  *See* Pls.' SR at 7–8; Final J. § VII.A.7.  Further, Plaintiffs' rosy estimate of when these remedies will be available to Qualified Competitors likely depends on relatively conflict-free negotiations of licensing terms and certifying competitors, which is far from assured.  The time at which any of the potential harms Google asserts will occur is therefore not imminent, *see Wis. Gas Co.*, 758 F.2d at 674, and what those harms will be are yet "speculative," *see Chaplaincy*, 454 F.3d at 298.

Google lodges many objections to this approach.  First, it cites a string of examples in which courts have granted a stay even where the harm was to occur many months later.  *See* Def.'s Reply in Supp. of Google's Mot., ECF No. 1493 [hereinafter Google's Reply], at 2–4.  But those courts did so presumably because they had enough information to effectively weigh the stay

factors, even months before the purported harms were to take effect.  Second, Google cautions that Plaintiffs' proposal would "create a procedural morass."  *Id.* at 4.  It describes the proposal as requiring Google to "file motions on the eve of implementation of each of the four remedies at issue," such that Google will be made to file multiple emergency motions with the D.C. Circuit if this court does not enter a stay.  *Id.*  To that concern, the court will require Plaintiffs to notify both the court and Google 45 days before the date on which a Qualified Competitor (as certified by Plaintiffs and the Technical Committee) may begin to access a data-sharing or syndication remedy, so that Google can seek a stay at that juncture.  By that time, template license terms, procedures, safeguards, and other important details will presumably have been established as to both the data disclosure and syndication remedies.  The court also thinks it unlikely that Google will have to seek relief before each remedy comes into effect.  The outcome of the first such application may prove dispositive as to others.

Finally, Google contends that its harm is "neither 'speculative' nor 'unrealistic,'" because notwithstanding the nascent stage of their implementation, the remedies expressly and plainly require Google to disclose "its valuable assets and confidential data to competitors."  *Id.* at 1–2. The fundamental harm caused by the data-sharing and syndication provisions is the disclosure of confidential information to a competitor, and neither more time nor further details would change that.  *Id.* at 5–6.  Once that information is disclosed, Google argues, "the cat is out of the bag" and "would irreparably harm Google under *any* circumstance."  *Id.* (emphasis added).

But there is no rule in this circuit that *any* disclosure of information is an irreparable harm sufficient to warrant a stay.  *See Univ. of Cal. Student Ass'n v. Carter*, 766 F. Supp. 3d 114, 121 (D.D.C. 2025) (explaining that, although "disclosure of information generally cannot be 'undone,' . . . that is not sufficient to show irreparable harm").  Nor is there a per se rule in the antitrust

context that the disclosure of information to competitors is an irreparable harm that warrants an automatic stay. There have certainly been instances where a court found irreparable harm because confidential information was to be disclosed to competitors. *See, e.g.*, *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010). But "[w]hat [Google] overlooks is that the context of the dissemination matters." *See Carter*, 766 F. Supp. 3d at 121 (whether the harm of the disclosure of confidential information is irreparable depends in part on the recipient and circumstances of the disclosure (citing cases)). Evaluating whether the disclosure of confidential information would be an irreparable harm "requires looking at (1) the type of information disclosed and (2) the breadth of disclosure and the use of the information disclosed." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Labor*, No. 25-cv-339, 2025 WL 1783899, at *11 (D.D.C. June 27, 2025). Whether there are safeguards protecting the information disclosed can also figure into this determination. *See id.* at *12 (citing cases). The court must therefore account for the contours of the disclosure to assess irreparable harm rather than merely rely on the fact of disclosure itself. *See, e.g.*, *Carter*, 766 F. Supp. 3d at 121; *Am. Fed'n of Lab.*, 2025 WL 1783899, at *11–12; *Ashland Oil, Inc. v. FTC*, 409 F. Supp. 297, 308–09 (D.D.C. 1976); *Kaplan v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 759 F.2d 256, 259–60 (2d Cir. 1985). Specifics as to the "context of the dissemination" in this case, such as the identities of the Qualified Competitors, the ways in which they plan to use the remedies, the security and privacy safeguards, the substance of the license terms, and even the extent to which Google participates in and objects to these decisions, will help inform the irreparable-harm inquiry.

The court thinks it is therefore prudent to let the preparatory work take its course for now. The "circumstances of [this] particular case" warrant seeing the details of these remedies through before deciding whether their execution should be stayed. *See Nken*, 556 U.S. at 433; *id.* at 427

(describing a stay as "an intrusion into the ordinary processes of administration and judicial review"). Plaintiffs also have indicated that they would be "open to talking about how to address this more comprehensively" with Google as the potential harms become more evident. Hr'g Tr. at 8:25–9:4; *see also* Pls.' Opp'n at 1 ("The Plaintiffs . . . offered to work with Google on ways to allow it to raise its stay arguments as to these remedies when they are ripe . . . ."). Giving any harm time to potentially materialize into something "actual and not theoretical, . . . and of such imminence" may bring to light information that could bear on discussions among the parties and the court's evaluation of the stay factors. *See Mexichem*, 787 F.3d 544 at 555. Though the court is loath to kick the proverbial can down the road, it is what the high bar of irreparable harm presently demands.

## IV.

For the foregoing reasons, Google's Motion for a Partial Stay Pending Appeal, ECF No. 1471, is denied without prejudice. Plaintiffs shall notify Google and the court 45 days before the date on which any Qualified Competitor (as certified by Plaintiffs and the Technical Committee) may begin to access a data-sharing or syndication remedy so that Google can renew its request for a stay, if necessary.

Dated: May 7, 2026

Amit P. Mehta
United States District Judge