# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| United States of America, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03010-APM<br><br>HON. AMIT P. MEHTA<br><br>**FILED UNDER SEAL** |
| State of Colorado, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                    Defendant. | Case No. 1:20-cv-03715-APM<br><br>HON. AMIT P. MEHTA<br><br> **FILED UNDER SEAL** |

## JOINT STATUS REPORT

Pursuant to the Court's email dated June 11, 2026, the Parties submit the following Joint Status Report. [1]

---

[1] The TC has requested that information reflecting the TC's staffing plans and employment spend be maintained under seal, including by redacting certain information from the attached exhibits as well as redacting references to staffing levels and employment spend in the text of the Joint Status Report, from which salary information could be estimated. The *Hubbard* factors weigh in favor of non-disclosure, as staffing plans and employment spend are entity-sensitive information that is not disseminated outside the organization, even within the organization such information is shared only on a need-to-know basis, and the public interest in knowing the TC's staffing plans and employment spend is low. *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980). Plaintiffs do not oppose the TC's request.  Google takes no position on the TC's sealing request.

FILED UNDER SEAL

## I.    Joint Status Update

On May 14, 2026, the TC presented Plaintiffs with (a) a proposed annual budget covering this first year of the TC's operations through January 31, 2027 ("Ramp-Up Budget"); and (b) an organizational plan specifying the manner in which the TC will discharge its duties and obligations (the "Organizational Plan").  At that time, the TC also presented Plaintiffs with formal notices to hire staff for the TC ("TC Staff").

On May 18, 2026, Plaintiffs approved the hiring of TC Staff, the Ramp-Up Budget, and the Organizational Plan. That same day, the TC provided Google with a copy of the Ramp-Up Budget as well as notices to hire TC Staff, which are attached hereto as Exhibit 1 ("Notices to Hire").

On May 22, 2026, Google sent a letter to the TC objecting that Google had not received information sufficient for it to evaluate the reasonableness of the funds requested in the Ramp-Up Budget associated with the staff members the TC intended to hire.  *See* Exhibit 2.  Thereafter, the Parties exchanged correspondence and held meet and confers on this point but remained at an impasse.  Plaintiffs did not agree that Google needed the requested information regarding the contemplated TC staff beyond the Notices to Hire.  Google agreed to fully fund the Ramp-Up Budget, including personnel-related costs and expenses, while the Parties submitted their dispute regarding the Notices to Hire to the Court.[2]

The Parties now request the Court's assistance resolving this dispute concerning whether and to what extent Google is entitled to receive additional information regarding TC Staff hiring beyond what is provided in the Notices to Hire.  The Parties' respective Position Statements on this dispute are set forth below.

---

[2] For clarity, the present dispute before the Court does not involve whether compensation or benefit levels for particular positions are appropriate.

FILED UNDER SEAL

## II.    Google's Position Statement

The Final Judgment affords Google an opportunity to evaluate the reasonableness of expenses the Technical Committee ("TC") incurs, including expenses relating to staff the TC hires, and to object where appropriate.  Google cannot meaningfully exercise these rights if it lacks sufficient information to consider the reasonableness of expenses the TC intends to incur.  Here, Plaintiffs informed Google that the TC intends to hire ▮ staff.  But Plaintiffs have denied Google access to substantive information about what these staff will work on or an explanation as to why they are reasonably necessary for the TC to carry out its duties and responsibilities under the Final Judgment.  Google has already provisionally funded the TC's requested budget for the remainder of this fiscal year.  But it respectfully requests that the Court order the disclosure of information sufficient to assess whether the staff the TC intends to hire "are reasonably necessary for the TC to carry out its duties and responsibilities under the Final Judgment."  ECF No. 1462 § VII.A.7(i).

Three provisions of the Final Judgment bear on this dispute.  First, the TC may only hire staff "at the cost and expense of Google" to the extent they "are reasonably necessary for the TC to carry out its duties and responsibilities under th[e] Final Judgment."  ECF No. 1462 § VII.A.7(i).  Second, there must be "prior notice to Google" before the TC hires such staff.  *Id.*  And third, Google has the right to "object to the reasonableness of any . . . fees or other expenses" for which reimbursement is sought from Google.  *Id.* § VII.A.7(j).  These provisions provide Google with the right to object to staff expenses that are not reasonably necessary for the TC to carry out its duties and responsibilities under the Final Judgment.

On April 10, 2026, the TC sent Google an email stating that it "hereby provides notice of its intent to hire full-time employees to begin staffing its operations."  See Ex. 3.  In subsequent conferrals, Plaintiffs disclosed that this notice covered five specific roles: a Financial Controller, Head of Human Resources, Head of Informational Technology and Security, Executive Assistant,

3

**FILED UNDER SEAL**

and Group Program Manager.  On May 18, the TC gave Google notice of an intent to hire an additional ▮ staff: ▮ full-time "Technical Program Managers," ▮ full-time "Analysts," ▮ full-time "Engineers," ▮ full-time "Unit Leads," ▮ full-time "Distinguished Engineers," ▮ full-time "General Administration" staff, and ▮ part-time "Expert Advisors."  Ex. 1.  These Notices to Hire disclosed only in the vaguest terms what the ▮ employees are being hired to do, with generic descriptions of job functions for each category.  The Notices to Hire provided no information as to the TC duties and responsibilities each staff member will support.  For example, the May 18 Notice states that the ▮ Technical Program Managers will be "responsible for overseeing and coordinating technical programs and operational initiatives," but they do not say which technical programs and operational initiatives those are, or which components of the TC's duties under the Final Judgment (e.g., search syndication, privacy measures, data security, etc.) they relate to.  *Id.* at 4.  They state that the ▮ Engineers will be "responsible for designing, developing, implementing, and maintaining technology solutions, systems, and operational platforms that support organizational objectives and program delivery," again without any explanation as to what those organizational objectives and programs are, or which components of the TC's duties under the Final Judgment they relate to.  *Id.* at 6.  And with respect to General Administration staff, the Notices to Hire concede that it is not yet known what responsibilities these staff will have, stating that their "specific duties and competencies will likely change as the organization matures" to "provide[] the organization with maximum flexibility."  *Id.* at 9.

This limited information is insufficient for Google to assess the reasonableness of the funds the TC has requested for the staff it intends to hire.  The little information that has been provided, however, raises questions about whether hiring all ▮ staff now is reasonably necessary.  In its first 19 months of operation, the Microsoft technical committee hired just six staff members, "two

**FILED UNDER SEAL**

of whom perform[ed] administrative functions." Joint Status Report at 9, *United States v. Microsoft Corp.*, No. 1:98-cv-01232-CKK (D.D.C. July 9, 2004), ECF No. 801, at 9. Here, the TC discloses an intent to hire over ███ times as many staff to begin operations.

Additionally, the May 18 Notice describes an intent to hire numerous staff with identical job functions—that is, it lists the same description for each category of staff. *See* Ex. 1. Without more information, Google cannot evaluate whether the number of staff the TC intends to hire in each category (who apparently will perform the same functions) are reasonably necessary.

Given these concerns, and without any further information, Google objected to the ███████ the TC requested for compensation and other anticipated staffing expenses for the 2026 fiscal year unless Plaintiffs could "explain what aspects of the Final Judgment or other Technical Committee responsibilities each of the contemplated staff members will support [and] why the proposed number of staff in each category of roles is reasonably necessary." Ex. 2 at 2. As Google explained to Plaintiffs in conferral, with the benefit of that information Google may have no objection to the staff the TC intends to hire. But without it, Google has no way to assess whether the contemplated staff are reasonably necessary, and thus whether the funds the TC has requested from Google for these staff are reasonable.

This dispute is not holding up the operations of the TC in any respect; Google has already provisionally funded the TC's requested budget for 2026 in its entirety (as well as TC Member compensation) while the Court determines what information Google is entitled to in order to determine whether to exercise its right to object under the Final Judgment. And to be clear, Google is not seeking detailed information about what each staff member will do on a daily basis. But underlying the decision to hire ██ people there is surely information about what these staff are being hired to do and, more specifically, which remedies they will support. That information bears

5

**FILED UNDER SEAL**

directly on whether hiring such staff is reasonably necessary. For example, there is assuredly information regarding the "technology solutions" and "operational platforms" that call for the hiring of ██ Engineers, and what "technical programs and operational initiatives" call for the hiring of ██ Technical Program Managers.

Plaintiffs make four arguments in support of their refusal to disclose that information to Google. First, they claim Google is seeking an approval right equivalent to what the Final Judgment provides Plaintiffs. That is incorrect. The issue here is not whether Google has a unilateral right to approve all staff the TC intends to hire (as Plaintiffs claim they have), but whether Google is entitled to sufficient information to evaluate whether to exercise its right to object, pursuant to Section VII.A.7(j), to the reasonableness of the expenses associated with the TC's hiring proposals. If Google cannot resolve any such objection with Plaintiffs, it must bring the dispute to the Court, and it must "bear the burden to demonstrate unreasonableness." Final Judgment § VII.A.7(j). Plaintiffs' argument that they alone are entitled to information regarding the substantive work that TC staff will perform would effectively erase Google's right to object under Section VII.A.7(j), and it would further strip Google of any ability to carry its burden to justify its objections. Such a reading of the Final Judgment is improper. *See United States v. Greyhound Corp.*, 508 F.2d 529, 535–36 (7th Cir. 1974) (rejecting interpretation of injunction that would render a provision "purposeless").

Second, Plaintiffs argue that providing Google the requested information would delay the work of the TC. But as Google has made clear, it "is fully committed to working cooperatively with the Technical Committee to ensure it has the funds needed to perform its functions." Ex. 2 at 1. For that reason, Google has advanced the TC more than ██████ to cover TC Member compensation and the full amount the TC requested for initial operating expenses. And, as noted,

**FILED UNDER SEAL**

in no circumstance will the dispute briefed herein cause any delay in the TC's operations: Google has committed to advancing the full amount requested for the TC's 2026 budget (more than ███ ███ in total)—including the disputed funds—by the deadline Plaintiffs requested, and to addressing any objections to TC staff expenditures following the Court's resolution of the present dispute. Ex. 4. Plaintiffs' complaints about unspecified "delay" should not obscure their refusal to disclose the requested information, both with respect to this funding request and for future funding requests. Nor should it obscure what Plaintiffs really are complaining about: Google being afforded the ability to evaluate the reasonableness of funding requests associated with TC staff, exactly as the Final Judgment provides.

Third, Plaintiffs argue that Google is attempting to relitigate whether it is entitled, under the Technical Committee Services Agreement ("TCSA"), to a copy of and a right to object to the TC's Organizational Plan. One has nothing to do with the other. Nothing in the language of the TCSA (an agreement to which Google is not a party) alters Google's express rights under the Final Judgment. In any event, Google is not raising a dispute concerning the TC's Organizational Plan. What Google seeks is a narrower set of information—the information necessary for Google to evaluate the reasonableness of the proposed staff-related expenses and costs.

Fourth, Plaintiffs argue there is no basis for Google to dispute that the TC actually needs all the staff it intends to hire because the TC has a "tremendous amount of work" to do. But that framing—which concerns the work Plaintiffs believe the TC needs to perform more broadly— distracts from the relevant question here. Section VII.A.7(i) of the Final Judgment is clear that the TC can only hire staff that "are reasonably necessary for the TC to carry out its duties and responsibilities under th[e] Final Judgment." The question, then, is what specific duties and responsibilities necessitate hiring today the extraordinarily large number of proposed staff—in

**FILED UNDER SEAL**

other words, what role the proposed staff will perform that is reasonably necessary for the TC to carry out its duties and responsibilities under the Final Judgment. It may well be that upon disclosure of that information Google will determine it has no objection to the reasonableness of the TC's staff expenditures. But, at present, Google lacks sufficient information to make that evaluation.

Google respectfully requests that the Court order Plaintiffs to disclose to Google information sufficient to assess whether the staff the TC intends to hire "are reasonably necessary for the TC to carry out its duties and responsibilities under the Final Judgment." ECF No. 1462 § VII.A.7(i).

## III.    Plaintiffs' Position Statement Regarding Information To Be Provided to Google Regarding TC Staff Hiring

As noted in Plaintiffs' position statement in the Joint Status Report filed on May 1, 2026, ECF No. 1511 at 2, the Final Judgment aims to address over a decade's worth of competitive harm caused by Google's conduct in the markets for general search services and search text ads. The TC will play a vital role and undertake significant efforts in implementing those remedies, as this Court again acknowledged in its recent order of May 29, 2026:

> The [TC] plays a crucial role in the execution of the Final Judgment. The Final Judgment empowers the [TC] to receive complaints against Google from third parties and to make recommendations to the court and to Plaintiffs about some of the most consequential aspects of the Final Judgment, including the frequency of user-side data disclosures; the cap on search syndication; data-sharing and syndication license templates; and the certification of Qualified Competitors, to name a few.

ECF No. 1521 at 1–2 (internal citations omitted). To that end, "[t]he TC may hire at the cost and expense of Google, with prior notice to Google and subject to approval by the Plaintiffs, such staff or consultants . . . as are reasonably necessary for the TC to carry out its duties and

**FILED UNDER SEAL**

responsibilities under [the] Final Judgment." Final J. § VII.A.7.i. Plaintiffs further have an approval right as to "all reasonable expenses incurred" by the TC. Id. § VII.A.7.j.

The TC Services Agreement negotiated and agreed upon by the Parties reaffirms Plaintiffs' approval rights as to all hiring of TC Staff and to the TC's budget, and further grants Plaintiffs an approval right as to the TC's Organizational Plan. Neither the Final Judgment nor the TC Services Agreement grants Google approval rights as to the TC's staff hiring, budget, or Organizational Plan. Instead, Google is limited to a right to "object to the reasonableness of any . . . [of the TC's] fees or other expenses," in which event "Google shall bear the burden to demonstrate unreasonableness." *Id.*

The TC's Notices to Hire and Ramp-Up Budget were appropriately approved by Plaintiffs and further provided sufficient notice and information to Google under the Final Judgment. Google nevertheless objected, and in subsequent meet and confers Google claimed to need additional information beyond what was in the Notices to Hire, including justifications for why the staff proposed to be hired are reasonably necessary for the TC to carry out its duties and obligations under the Final Judgment, the components of the Final Judgment or other TC responsibilities that the contemplated staff members will support, and why the proposed number of staff in each category of roles is reasonably necessary.

In essence, Google's position—under the guise of assessing the "reasonableness" of the TC's staffing expenses—is that it may challenge the TC's staffing plans until the TC justifies, to *Google's* satisfaction, the TC's determinations of what staff is needed to execute the Court's Final Judgment, for what functions, and why. Google is not entitled to such information regarding the TC's staffing plans, however, and its demands otherwise are without merit.

FILED UNDER SEAL

### A.    The TC's Notices To Hire Reflect Reasonably Necessary Hiring Needs And Provide Sufficient Notice And Information To Google

In the weeks before submitting the Notices to Hire to Plaintiffs, the TC Members worked diligently to identify their staffing needs. They developed the TC's Organizational Plan, followed by a staffing plan to effectuate the TC's work. The TC Members then presented and discussed their staffing plan with Plaintiffs, in conjunction with the Organizational Plan and Ramp-Up Budget, for the first year of the TC's operations through January 31, 2027 ("Ramp-Up Year").

Pursuant to their obligations under the Final Judgment, Plaintiffs considered the information provided and engaged with the TC Members regarding the Organizational Plan and staffing needs. Plaintiffs determined that the TC made a sufficient showing that its intended hiring is "reasonably necessary for the TC to carry out its duties and responsibilities under [the] Final Judgment." Final J. § VII.A.7.i. Accordingly, Plaintiffs approved the TC's staffing plan.

The TC then promptly provided Google with Notices to Hire and a copy of the Ramp-Up Budget. *See* Ex. 1. Contrary to Google's claims, these notices provided meaningful information to Google regarding the TC's staffing plans, showing the TC's intent to hire by function and including for each function: (a) a description of the function; (b) the number of positions to be filled and at which level(s); (c) the salary and bonus range(s); and (d) the status of the employee (e.g., full-time vs. part-time, W-2 vs. 1099). *See id.* Further, the Ramp-Up Budget reflects that the TC anticipates hiring staff progressively over the coming quarters. This information was more than sufficient notice to Google, meets the notice requirement of Section VII.A.7.i of the Final Judgment, and provided Google with sufficient information to assess the reasonableness of the costs and expenses for TC Staff shown in the Ramp-Up Budget.

FILED UNDER SEAL

   **B.    Google Is Not Entitled To Additional Information Regarding The
           TC's Staffing Plans**

Google is not entitled to additional information regarding the TC's staffing plans beyond what is provided in the Notices to Hire. Google's position otherwise ignores the Final Judgment and the current remedial enforcement posture and is not appropriate for several reasons.

*First*, Google's requests for more detailed information are a blatant attempt to circumvent the Final Judgment and insert an approval right that the Court already rejected. In submitting provisions for the Final Judgment, Google proposed that the TC could hire staff "with prior notice to Google and subject to approval by *the parties*." Final J. Op. app. at 76 (emphasis added). The Court rejected Google having such an approval right, instead adopting Plaintiffs' proposed language that the TC may hire staff "with prior notice to Google and subject to approval by *the Plaintiffs*." *Id.*; Final J. § VII.A.7.i (emphasis added). As stated above, Plaintiffs determined that the TC made a sufficient showing that its intended hiring plan is "reasonably necessary," and Plaintiffs thereafter approved the TC's staffing plan. Final J. § VII.A.7.i. Google, in turn, received timely prior notice, exactly as the Final Judgment requires.

*Second*, Google's requests seek to exert improper control over the TC—the very people tasked by the Court with assisting in the enforcement of and compliance with the Final Judgment—and treat the TC as equivalent to a Google contractor or business unit within Google, effectively rendering the TC answerable to Google. But that is not Google's role here. As this Court has made clear, including as recently as the hearing on May 5, 2026, the TC is an enforcement arm of *Plaintiffs*. Tr. of Status Hr'g (May 5, 2026) at 4:14–10:1; *see also* Rem. Op. at 211–12; Final J. Op. at 47–48. Google does not have any enforcement role, nor does it otherwise have any role overseeing the TC's work. *See* Rem. Op. at 212 (rejecting the notion that Google "deserves an equal seat at the table"). Accordingly, Google is not entitled to information that may have been

11

FILED UNDER SEAL

provided to Plaintiffs for purposes of securing Plaintiffs' approval for hiring, nor does it have an open-ended right to demand information about the TC's staffing strategies until Google decides it is satisfied. Google's requests to the contrary only serve as another attempt to improperly insert itself into and micromanage the inner workings of the TC.

*Third*, Google has already conceded that it does not have a valid reason for seeking such insight into the TC's staffing plans, which effectuate the Organizational Plan and reflect the TC's inner workings and strategy. During negotiations on the TC Services Agreement, Google initially attempted to include language that required the TC or Plaintiffs to provide Google with a copy of the Organizational Plan and gave Google the ability to object to the Organizational Plan's provisions. Plaintiffs stood firm that Google does not have a valid need for such a copy or right to object, and Google ultimately withdrew its proposed language on point. Having previously recognized that it does not have a need for such information, Google fails to explain why it now, once again, claims that it is essential to know detailed information regarding the TC's staffing operations to be able to evaluate the "reasonableness" of the TC's expenditures. Simply put, Google does not need to know what aspects of the Final Judgment or other TC responsibilities each of the contemplated staff members will support, or any of the other information it seeks. And relitigating the very issue that Google had already conceded only serves to frustrate the work of the TC.

*Fourth*, Google's suggestion that the TC does not actually need the staff identified to carry out the TC's duties threatens the tremendous amount of work that the TC must complete to effectuate the remedies in the Final Judgment. The TC Members are standing up an entire organization from scratch to carry out the duties assigned to them, and they are undeniably in the best position to assess what their staffing needs are as they plan for the incredibly complex work

**FILED UNDER SEAL**

ahead. As the defendant in the current remedial enforcement posture, Google has no basis for inserting itself into this TC process or second-guessing the TC Members' staffing determinations, which have been reviewed and approved by Plaintiffs.

For at least the above reasons, Plaintiffs respectfully request that the Court reject Google's position and order that the information provided in Exhibit 1 satisfies the requirement that the TC provide Google with prior notice of its intent to hire TC Staff pursuant to Section VII.A.7.i of the Final Judgment.

Dated: June 16, 2026                     Respectfully submitted,

                                         /s/ Karl E. Herrmann
                                         Claire M. Maddox (D.C. Bar #498356)
                                         Travis R. Chapman (D.C. Bar #90031151)
                                         Danielle Hauck
                                         Grant M. Fergusson (D.C. Bar #90004882)
                                         Karl E. Herrmann (D.C. Bar #1022464)

                                         U.S. Department of Justice
                                         Antitrust Division
                                         Technology & Digital Platforms Section
                                         450 Fifth Street NW, Suite 7100
                                         Washington, DC 20530
                                         Telephone: (202) 549-7155
                                         Claire.Maddox@usdoj.gov

                                         *Counsel for Plaintiff United States of America*

**FILED UNDER SEAL**

By: /s/ Amanda Wentz
Amanda J. Wentz
Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, Arkansas 72201
Phone: (501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Counsel for Plaintiff State of Arkansas*

By: /s/ Carolyn D. Jeffries
Rob Bonta, Attorney General
Paula Blizzard, Senior Assistant Attorney
General
Michael Jorgenson, Supervising Deputy
Attorney General
Brian Wang, Deputy Attorney
General
Carolyn D. Jeffries, Deputy Attorney
General (DC Bar No. 1600843)
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102
Cari.Jeffries@doj.ca.gov

*Counsel for Plaintiff State of California*

By: /s/ Lee Istrail
James Uthmeier, Attorney General
R. Scott Palmer, Special Counsel, Complex
Enforcement Chief, Antitrust Division
Lee Istrail, Assistant Attorney General
Office of the Attorney General, State of
Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Lee.Istrail@myfloridalegal.com
Scott.Palmer@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

By: /s/ Charles Thimmesch
Christopher Carr, Attorney General
Logan B. Winkles, Deputy Attorney
General
Ronald J. Stay, Jr., Senior Assistant
Attorney General
Charles Thimmesch, Senior Assistant
Attorney General
Office of the Attorney General, State of
Georgia
40 Capitol Square, SW
Atlanta, Georgia 30334-1300
cthimmesch@law.georgia.gov

*Counsel for Plaintiff State of Georgia*

By: /s/ Jesse Moore
Theodore Edward Rokita, Attorney General
Scott L. Barnhart, Chief Counsel and
Director, Consumer Protection Division
Jesse Moore, Deputy Attorney General
Christi Foust, Deputy Attorney General
Office of the Attorney General, State of
Indiana
Indiana Government Center South, Fifth
Floor
302 West Washington Street
Indianapolis, Indiana 46204
Jesse.Moore@atg.in.gov

*Counsel for Plaintiff State of Indiana*

14

**FILED UNDER SEAL**

By: /s/ Jonathan E. Farmer
Russell Coleman, Attorney General
J. Christian Lewis, Commissioner of the
Office of Consumer Protection
Philip R. Heleringer, Executive
Director of the Office of Consumer
Protection
Jonathan E. Farmer, Deputy Executive
Director of the Office of Consumer
Protection
Office of the Attorney General,
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Philip.Heleringer@ky.gov

*Counsel for Plaintiff*
*Commonwealth of Kentucky*

By: /s/ Asyl Nachabe
Liz Murrill, Attorney General
Asyl Nachabe, Assistant Attorney General
Office of the Attorney General, State of
Louisiana
Public Protection Division
909 Poydras St. Suite 1850
New Orleans, LA 70112
(225) 326-6435
NachabeA@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

By: /s/ Scott Mertens
Dana Nessel, Attorney General
Scott Mertens, Assistant Attorney General
Michigan Department of Attorney General
P.O. Box 30736
Lansing, Michigan 48909
MertensS@michigan.gov

*Counsel for Plaintiff State of Michigan*

By: /s/ Alison Esbeck
Alison Esbeck
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
Alison.esbeck@ago.mo.gov
Phone: 314-340-4977

*Counsel for Plaintiff State of Missouri*

By: /s/ Anna Schneider
Anna Schneider
Special Assistant Attorney General,
Senior Counsel,
Montana Office of Consumer Protection
P.O. Box 200151
Helena, MT 59602-0150
Phone: (406) 444-4500
Anna.schneider@mt.gov

*Counsel for Plaintiff State of Montana*

By: /s/ Mary Frances Jowers
Alan Wilson, Attorney General
W. Jeffrey Young, Chief Deputy
Attorney General
C. Havird Jones, Jr., Senior Assistant
Deputy Attorney General
Mary Frances Jowers, Assistant Deputy
Attorney General
Office of the Attorney General
State of South Carolina
1000 Assembly Street
Rembert C. Dennis
Building
P.O. Box 11549
Columbia, South Carolina 29211-1549
mfjowers@scag.gov

*Counsel for Plaintiff State of South Carolina*

**FILED UNDER SEAL**

By: /s/ Diamante Smith
Ken Paxton, Attorney General
Brent Webster, First Assistant Attorney
General
Ralph Molina, Deputy First Assistant
Attorney General
Austin Kinghorn, Deputy Attorney General
for Civil Litigation
Thomas York, Division Chief, Antitrust
Division
Diamante Smith, Assistant Attorney
General, Antitrust Division
Office of the Attorney General,
State of Texas
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1162
Diamante.Smith@oag.texas.gov

*Counsel for Plaintiff State of Texas*

By: /s/ Caitlin M. Madden
Joshua L. Kaul, Attorney General
Caitlin M. Madden, Assistant
Attorney General
Wisconsin Department of Justice
17 W. Main St.
Post Office Box 7857
Madison, Wisconsin 53707-7857
caitlin.madden@Wisconsin.gov

*Counsel for Plaintiff State of Wisconsin*

**FILED UNDER SEAL**

PHILIP WEISER
Attorney General of Colorado

*/s/ Jonathan B. Sallet*
Jonathan B. Sallet, DC Bar No. 336198
Steven M. Kaufmann
Elizabeth W. Hereford
Conor J. May
Colorado Office of the Attorney General
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail: Jon.Sallet@coag.gov
Steve.Kaufmann@coag.gov
Elizabeth.Hereford@coag.gov
Conor.May@coag.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Colorado*

MIKE HILGERS
Attorney General of Nebraska

Justin C. McCully, Assistant Attorney
General
Nebraska Department of Justice
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
E-Mail: Justin.mccully@nebraska.gov

William F. Cavanaugh, Jr.
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2793
E-Mail: wfcavanaugh@pbwt.com

*Counsel for Plaintiff State of Nebraska*

KRISTIN K. MAYES
Attorney General of Arizona

Robert A. Bernheim, Unit Chief Counsel
Jayme Weber, Senior Litigation Counsel
Arizona Office of the Attorney General
400 West Congress, Ste. S-215
Tucson, Arizona 85701
Telephone: (520) 628-6507
E-Mail: Robert.Bernheim@azag.gov
Jayme.Weber@azag.gov

*Counsel for Plaintiff State of Arizona*

BRENNA BIRD
Attorney General of Iowa

Noah Goerlitz, Assistant Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St., 2nd Floor
Des Moines, IA 50319
Telephone: (515) 725-1018
E-Mail: Noah.goerlitz@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

LETITIA JAMES
Attorney General of New York

Elinor R. Hoffmann
Morgan J. Feder
Michael D. Schwartz
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8513
E-Mail: Elinor.hoffmann@ag.ny.gov
Morgan.feder@ag.ny.gov
Michael.schwartz@ag.ny.gov

*Counsel for Plaintiff State of New York*

FILED UNDER SEAL

JEFF JACKSON
Attorney General of North Carolina

Kunal Janak Choksi
Joshua Daniel Abram
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Telephone: (919) 716-6000
E-Mail: kchoksi@ncdoj.gov
jabram@ncdoj.gov

*Counsel for Plaintiff State of North Carolina*

JONATHAN SKRMETTI
Attorney General of Tennessee

J. David McDowell
Austin Ostiguy
Tyler Corcoran
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Telephone: (615) 741-8722
E-Mail: David.McDowell@ag.tn.gov
austin.ostiguy@ag.tn.gov
Tyler.Corcoran@ag.tn.gov

*Counsel for Plaintiff State of Tennessee*

DEREK E. BROWN
Attorney General of Utah

Matthew Michaloski, Assistant Attorney General
Marie W.L. Martin, Division Director
Utah Office of Attorney General
160 E 300 S, 5th Floor
P.O. Box 140811
Salt Lake City, Utah 84114
Telephone: (801) 440-9825
E-Mail: mmichaloski@agutah.gov
mwmartin@agutah.gov

*Counsel for Plaintiff State of Utah*

STEPHEN J. COX
Attorney General of Alaska

Jeff Pickett
Senior Assistant Attorney General
State of Alaska, Department of Law
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5275
E-Mail: Jeff.pickett@alaska.gov

*Counsel for Plaintiff State of Alaska*

WILLIAM TONG
Attorney General of Connecticut

Nicole Demers
Office of the Attorney General of Connecticut
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Telephone: (860) 808-5202
E-Mail: Nicole.demers@ct.gov

*Counsel for Plaintiff State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware

Michael Andrew Undorf
Delaware Department of Justice
Fraud and Consumer Protection Division
820 N. French St., 5th Floor
Wilmington, DE 19801
Telephone: (302) 683-8816
E-Mail: Michael.undorf@delaware.gov

*Counsel for Plaintiff State of Delaware*

BRIAN SCHWALB
Attorney General of the District of Columbia

**FILED UNDER SEAL**

Elizabeth Gentry Arthur
Office of the Attorney General for the
District of Columbia
400 6th Street NW
Washington, DC 20001
Telephone: (202) 724-6514
E-Mail: Elizabeth.arthur@dc.gov

*Counsel for Plaintiff District of Columbia*

DOUGLAS MOYLAN
Attorney General of Guam

Norman Lee Miller, Jr.
Office of the Attorney General of Guam
590 S. Marine Corps Drive, Suite 901
Tamuning, Guam 96913
Telephone: (671) 475-2710
E-Mail: nmillerjr@oagguam.org

*Counsel for Plaintiff Territory Guam*

ANNE E. LOPEZ
Attorney General of Hawai'i

Rodney I. Kimura
Department of the Attorney General, State
of Hawai'i
425 Queen Street
Honolulu, HI 96813
Telephone (808) 586-1180
E-Mail: Rodney.i.kimura@hawaii.gov

*Counsel for Plaintiff State of Hawai'i*

RAÚL LABRADOR
Attorney General of Idaho

John K. Olson
Office of the Idaho Attorney General
Consumer Protection Division
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID 83720
Telephone: (208) 332-3549
E-Mail: John.olson@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

KWAME RAOUL
Attorney General of Illinois

Elizabeth Maxeiner
Brian Yost
Jennifer Coronel
Office of the Attorney General of Illinois
115 S. LaSalle St.
Chicago, IL 60603
Telephone: (773) 590-7935
E-Mail: Elizabeth.maxeiner@ilag.gov
Brian.yost@ilag.gov
Jennifer.coronel@ilag.gov

*Counsel for Plaintiff State of Illinois*

KRIS W. KOBACH
Attorney General of Kansas

Christopher Teters
Kansas Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612
Telephone: (785) 296-3751
E-Mail: chris.teters@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

AARON M. FREY
Attorney General of Maine

Christina M. Moylan
Office of the Attorney General of Maine
6 State House Station
August, ME 04333
Telephone: (207) 626-8800
E-Mail: Christina.moylan@maine.gov

*Counsel for Plaintiff State of Maine*

ANTHONY G. BROWN
Attorney General of Maryland

**FILED UNDER SEAL**

Schonette J. Walker
Melissa English
Office of the Attorney General of
Maryland
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6480
E-Mail: swalker@oag.state.md.us
menglish@oag.state.md.us

*Counsel for Plaintiff State of Maryland*

ANDREA CAMPBELL
Attorney General of Massachusetts

Jennifer E. Greaney
Office of the Attorney General of
Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2981
E-Mail: Jennifer, greaney@mass.gov

*Counsel for Plaintiff Commonwealth of
Massachusetts*

KEITH ELLISON
Attorney General of Minnesota

Zach Biesanz
Senior Enforcement Counsel
Office of the Minnesota Attorney General
Antitrust Division
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Telephone: (651) 757-1257
E-Mail: Zach.biesanz@ag.state.mn.us

*Counsel for Plaintiff State of Minnesota*

AARON D. FORD
Attorney General of Nevada

Michelle C. Badorine
Lucas J. Tucker
Nevada Office of the Attorney General

100 N. Carson Street
Carson City, NV 89701
Telephone: (775) 684-1164
E-Mail: mbadorine@ag.nv.gov
ltucker@ag.nv.gov

*Counsel for Plaintiff State of Nevada*

JOHN FORMELLA
Attorney General of New Hampshire

Brandon Garod
Office of Attorney General of New
Hampshire
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-1217
E-Mail: Brandon.h.garod@doj.nh.gov

*Counsel for Plaintiff State of New
Hampshire*

JENNIFER DAVENPORT
Acting Attorney General of New Jersey

Yale A. Leber
Abiola G. Miles
Deputy Attorneys General
New Jersey Attorney General's Office
25 Market Street, P.O. Box 106
Trenton, NJ 08625
Telephone: (609) 376-2383
E-Mail: Yale.Leber@law.njoag.gov
Abiola.Miles@law.njoag.gov

*Counsel for Plaintiff State of New Jersey*

RAÚL TORREZ
Attorney General of New Mexico

Judith E. Paquin Cholla Khoury
Assistant Attorney General
New Mexico Office of the Attorney
General
408 Galisteo St.
Santa Fe, NM 87504

**FILED UNDER SEAL**

Telephone: (505) 490-4885
E-Mail: jpaquin@nmag.gov
ckhoury@nmag.gov

*Counsel for Plaintiff State of New Mexico*

DREW WRIGLEY
Attorney General of North Dakota

Elin S. Alm
Assistant Attorney General
Consumer Protection and Antitrust
Division
Office of the Attorney General of North
Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504
Telephone: (701) 328-5570
E-Mail: ealm@nd.gov

*Counsel for Plaintiff State of North
Dakota*

D. ANDREW WILSON
Attorney General of Ohio

Beth Ann Finnerty, Section Chief,
Antitrust
Sarah Mader, Assistant Attorney General,
Antitrust
Office of the Attorney General of Ohio
30 E Broad Street, 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
E-Mail: Beth.Finnerty@ohioago.gov
Sarah.Mader@ohioago.gov

*Counsel for Plaintiff State of Ohio*

GENTNER DRUMMOND
Attorney General of Oklahoma

Cameron R. Capps
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK 73105

Telephone: (405) 522-0858
E-Mail: Cameron.capps@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

DAN RAYFIELD
Attorney General of Oregon

Gina Ko, Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (503) 934-4400
E-Mail: Gina.Ko@doj.oregon.gov

*Counsel for Plaintiff State of Oregon*

DAVID W. SUNDAY, JR.
Attorney General of Pennsylvania

Tracy W. Wertz
Joseph S. Betsko
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
E-Mail: jbetsko@attorneygeneral.gov
twertz@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of
Pennsylvania*

LOURDES L. GÓMEZ TORRES
Secretary of Justice

TANIA L. FERNÁNDEZ-MEDERO
Assistant Secretary of Justice

SAMUEL WISCOVITCH-CORALI
Deputy Undersecretary

Pablo Tufiño-Soto
Senior Attorney
Antitrust Division
Puerto Rico Department of Justice
P.O. Box 9020192

**FILED UNDER SEAL**

San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900, Ext. 1205
E-Mail: ptufino@justicia.pr.gov

*Counsel for Plaintiff Territory Puerto Rico*

PETER NERONHA
Attorney General of Rhode Island

Stephen Provazza
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400
E-Mail: SProvazza@riag.ri.gov

*Counsel for Plaintiff State of Rhode Island*

MARTIN J. JACKLEY
Attorney General of South Dakota

Yvette K. Lafrentz
Office of the Attorney General of South Dakota
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Telephone: (605) 773-3215
E-Mail: Yvette.lafrentz@state.sd.us

*Counsel for Plaintiff State of South Dakota*

CHARITY R. CLARK
Attorney General of Vermont

Christopher J. Curtis, Assistant Attorney General
Office of the Attorney General of Vermont
109 State St.
Montpelier, VT 05609
Telephone: (802) 828-3170
E-Mail: christopher.curtis@vermont.gov
*Counsel for Plaintiff State of Vermont*

JAY JONES
Attorney General of Virginia

Tyler T. Henry
Senior Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, VA 23219
Telephone: (804) 692-0485
E-Mail: thenry@oag.state.va.us

*Counsel for Plaintiff State of Virginia*

NICHOLAS W. BROWN
Attorney General of Washington

Amy N.L. Hanson
Senior Managing Assistant Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Telephone: (206) 464-5419
E-Mail: Amy.hanson@atg.wa.gov

*Counsel for Plaintiff State of Washington*

JOHN B. McCUSKEY
Attorney General of West Virginia

Douglas Lee Davis
Office of the Attorney General, State of West Virginia
1900 Kanawha Boulevard East
Building 6, Suite 401
P.O. Box 1789
Charleston, WV 25305
Telephone: (304) 558-8986
E-Mail: Douglas.l.davis@wvago.gov

*Counsel for Plaintiff State of West Virginia*

KEITH KAUTZ
Attorney General of Wyoming

**FILED UNDER SEAL**

William T. Young
Wyoming Attorney General's Office
2320 Capitol Avenue
Kendrick Building
Cheyenne, WY 82002
Telephone: (307) 777-7847
E-Mail: William.young@wyo.gov

*Counsel for Plaintiff State of Wyoming*

WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (D.C. Bar No. 441261)
Benjamin M. Greenblum (D.C. Bar No. 979786)
Colette T. Connor (D.C. Bar No. 991533)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com
cconnor@wc.com

WILSON SONSINI GOODRICH & ROSATI P.C.
Michael Sommer (admitted *pro hac vice)*
Franklin M. Rubinstein (D.C. Bar No. 476674)
1700 K Street, NW
Washington, DC 20006
Tel: 202-973-880
msommer@wsgr.com
frubinstein@wsgr.com

ROPES & GRAY LLP
Mark S. Popofsky (D.C. Bar No. 454213)
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: 202-508-4624
Mark.Popofsky@ropesgray.com

Matthew McGinnis (admitted *pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: 617-951-7703
Matthew.McGinnis@ropesgray.com

*Counsel for Defendant Google LLC*

24