IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, ET AL., )
Plaintiffs, )
vs. ) CV No. 20-3010
) Washington, D.C.
GOOGLE LLC, ) June 23, 2026
) 2:30 p.m.
Defendant. )

TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:

Grant Mitchell Fergusson
U.S. DEPARTMENT OF JUSTICE
450 Fifth Street NW
Washington, D.C. 20530
(202) 894-4236
Email:
grant.fergusson@usdoj.gov

Jonathan Bruce Sallet
COLORADO DEPARTMENT OF LAW
Consumer Protection Section,
Antitrust Unit
Ralph L. Carr
Colorado Judicial Center
1300 Broadway
Suite 7th Floor
Denver, CO 80203
(720) 508-6000
Email: jon.sallet@coag.gov

APPEARANCES CONTINUED:

For the Defendant: John E. Schmidtlein
Colette Connor
WILLIAMS & CONNOLLY
680 Maine Avenue, SW
Washington, D.C. 20024
(202) 434-5170
Email: cconnor@wc.com

Court Reporter: William P. Zaremba
Registered Merit Reporter
Certified Realtime Reporter
Official Court Reporter
E. Barrett Prettyman CH
333 Constitution Avenue, NW
Washington, D.C. 20001
(202) 354-3249

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

P R O C E E D I N G S

COURTROOM DEPUTY: Good afternoon. This Honorable Court is now in session; the Honorable Amit P. Mehta presiding.

Your Honor, we're on the record in Civil Case 20-3010, United States of America, et al., verse Google LLC.

Plaintiffs' counsel and defendant's counsel are present by video.

THE COURT: Okay.

Good afternoon, everybody. It's good to be with you all. I hope everybody's doing well.

Thanks for jumping on so quickly on short notice.

I don't think this is going to take that long.

I wanted to just take the opportunity to, frankly, get a little bit more educated about the budgeting and expenditure process, both, that's at issue -- the parties' Joint Status Report and what may be coming in the future.

So what I'd like to just understand is, I gather in the present posture what has happened is that the technical committee has proposed an annual budget. That annual budget has sketched out, among other things, proposed hiring that the technical committee wants to do.

Google has funded that budgetary amount and is objecting to certain -- or I should say reserving the right and seeking information to decide whether they want to

object to certain proposed expenditures. I understand -- and I believe that's where we are.

My questions are sort of related to sort of things going forward, and that is: So how have you all contemplated the budgeting and expenditure process working going forward?

So, for example, how much flexibility does the technical committee have to move funds around among budgeted line items?

You know, say hypothetically they thought, look, we need 5 experts, but they get into it and they say, actually, we need 10.

Are they able to sort of draw from another line item in order to do that? Do they have to go back to Google for that kind of approval?

I'm just sort of curious how you all have contemplated that would work and at what point in that process, if any, Google would have the opportunity to object.

Because at least the way the final judgment is written, in a sense, it almost suggests that, you know, Google would get invoiced for an expense and then have the opportunity to object to whether -- almost reads at that point whether they would actually be -- pay for it or not as opposed to the way it's unfolding now, which is, a large

budgeted -- a large annual budget and Google's contemplating portions of it and whether to object.

So I know that's not a terribly well-articulated question, but these are some of the questions I'm sort of banging around in my head in terms of thinking about what the parties are requesting and what's in dispute.

So I'll start with plaintiffs' counsel and if you can help out on any of those matters.

MR. CHAPMAN: Thank you, Your Honor.

Travis Chapman for the United States.

It's good to see you again and we appreciate your time today.

THE COURT: You, too.

MR. CHAPMAN: Ms. Maddox is unavailable, but my colleague, Grant Fergusson, is prepared to tackle those topics, as well as the additional topics you flagged in your email last night.

THE COURT: Okay.

Mr. Fergusson.

MR. FERGUSSON: Good afternoon, Your Honor.

Grant Fergusson for the United States.

On the point of the mechanics of invoices and expenditures, I'll start with what I hope is some good news, which is that the parties have been actively negotiating those mechanics for annual budgets beyond this first ramp-up

year.

Our intent behind the negotiations here are three-fold: To comport with the final judgment, to minimize disruptions on the TC's operations, and we're hopeful to draw on what worked for the Microsoft technical committee's budgeting processes. While we have not agreed to all terms just yet, I'm hopeful that we will get there soon.

But to give you a sense of the *Microsoft* process, there was a projected annual budget that would be approved by the plaintiffs, go through an objection period, and get funded by Google prior to any expenses being incurred by the technical committee.

That would then be followed by an accounting by the TC and plaintiffs to show that the projected costs and expenses were, in fact, incurred.

If there are additional costs that come up that were not considered as part of this projected annual budget, there is a mechanism to request additional funding.

And, again, if there's also funds that were advanced beyond what the technical committee actually spent, there's a process to either move those funds forward or for Google to remit those funds back -- or for the technical committee to remit those funds back to Google.

Of course, the specifics are still being ironed out, but that is the general sense of the mechanics at the

present stage.

THE COURT: Okay.

And then in terms of, say the budget is proposed, the plaintiffs approve it, Google has no objections or any objections are resolved, is there a mechanism that you all are contemplating whereby Google would have the opportunity to review expenditures, books and records, so to speak, before the next budgeting cycle?

MR. FERGUSSON: Your Honor, we believe that this kind of accounting process that I mentioned earlier would be kind of a retrospective process whereby Google would get access to some accounting information, using some generally available accounting principles, to confirm that the projected costs and expenses were actually the costs and expenses incurred.

To the extent that there is any variation there, we believe that is the moment in the process where that -- those variations would be negotiated between the parties and any disputes would be resolved.

THE COURT: Okay.

And what about, have you all discussed how much discretion the technical committee will have to move things around?

In other words, my hypothetical, for example, they budgeted for 5 experts, turns out they think they need 10;

and so instead of going back to Google for 5 more experts, they say, well, we really don't need 15 engineers anymore, we only need 10, do they have the discretion to make those types of budgetary adjustments without having to go back either to the plaintiffs or to Google for approval?

MR. FERGUSSON: Your Honor, we are getting close to the edge of where the technical committee's internal processes for the coming year and my knowledge are overlapping.

THE COURT: Okay.

MR. FERGUSSON: But I will try to provide the information available, which is, in the present moment, the staffing -- the notice of intent to hire staff by the technical committee is intended to be a full hiring plan. The hope, of course, if things are very efficient, is that the technical committee will not need to hire all staff that is being provided under this budget.

But given the nature of the remedies here, we are anticipating having this be a kind of full staffed budget. And we are continuing to work with the parties, together with the States and Google here, to determine what specific types of information need to be provided in kind of future annual budgets.

So to the extent that that is a question related to kind of general processes, I think that is something that

we're still ironing out.

THE COURT: Okay.

Yeah, I get that.

And I'm probably putting the cart before the horse in many respects.

I just am curious about this one issue in terms of -- oftentimes, there's some sort of materiality threshold in terms of whether budget items can be moved around or money can be moved from one line item to another.

And I'm just curious whether you all are contemplating something like that; in other words if -- as I said, maybe initially they thought they needed 10 experts -- excuse me, 5 experts, turns out that we need 10, but we don't need as many engineers, can the technical committee essentially borrow the budgeted money for the engineers and put it to new experts without coming back to the plaintiffs and to Google?

Do you know whether that's something that you all are contemplating or has that been contemplated, and, if so, what are the current thoughts about that?

MR. FERGUSSON: Your Honor, sitting here today, I'm not sure we have ironed out a specific process for that.

THE COURT: Okay.

MR. FERGUSON: Of course, that is one of many things that we are going to continue to work with Google on

to resolve.

And to the extent that it's helpful to have more information on that, we're happy to provide that once we have it.

THE COURT: Okay.

I was just curious if that's something that had been discussed.

Okay.

So before we talk about the specific ask here, let me see if Mr. Sallet wants to add anything about just how the process has been moving forward and expected budgeting process is moving forward.

MR. SALLET: Just very briefly, Your Honor.

I just wanted to note one distinction which will be important to the next issue we discuss.

Your Honor has asked about processes involving plaintiffs and Google. Of course the processes can be distinct.

The plaintiffs are working with the technical committee, the technical committee are assisting the plaintiffs, and, of course, the Court, and, therefore, conversations about how budgets might be best allocated would be within the kinds of communications the plaintiffs have confidentiality with the technical committee, and one would expect the plaintiffs to be more involved, of course,

than Google because of the very distinctive structural roles that they play in this process.

I just note that distinction, Your Honor.

THE COURT: Okay.

All right. Thank you, Mr. Sallet.

Mr. Schmidtlein, do you want to just add anything in terms of background mechanics about budgeting and expenditures and then Google's role in that and how it views its role in that.

MR. SCHMIDTLEIN: Yes. Thank you, Your Honor.

I agree with Mr. Fergusson that the parties have been trying to work cooperatively to iron out processes to cover a lot of different eventualities here, and to, I think, try to solve for some aspects of the final judgment that didn't, by almost necessity, have the precision to cover every last iteration here.

THE COURT: Right.

MR. SCHMIDTLEIN: Because our goal here is not -- on the one hand, it is not to delay or frustrate the technical committee being up and running and functioning.

On the other hand, as Your Honor has recognized, we do have some right to review and bring objections to you if we think proposed expenses or hires are not reasonably necessary.

So we've really been trying to work cooperatively

with the plaintiffs to try to get that right balance and get some of the details around that, and I think we have, to date, made real progress in doing that, and I hope that sort of we'll continue to do so.

On this one question that you've asked that you've pinpointed, I guess I did want to, I guess, offer at least my immediate observation around, can they move money around, you know, in the event -- in the event that they may have over-requested for some aspect and maybe under-requested for another and that type of thing.

I do think our expectation there would be, and I think it's consistent with the notice requirements, that if they intend to hire more people, regardless of where the money or how much money, you know, would come, I think they do have to technically -- I think they do have to give us notice of that. So I don't think that they could unilaterally decide to re-allocate funds in that regard.

But, you know, obviously to the extent -- and I think Mr. Fergusson made reference to the fact of if, in fact, a certain funding request occurred and they didn't need that funding, then they would probably be obliged to refund that money back to Google if it wasn't necessary.

So I do think that there is still a process that would need to go on there, but, again, I think the parties have worked pretty cooperatively in trying to come up with

mechanisms that will quickly and expeditiously allow these processes to play out and hopefully get the technical committee up and running and expending funds that are reasonably necessary for their operation.

THE COURT: Okay.

Now, all of this is just helpful by way of background, and in terms of moving forward, it's useful to have some of this information.

All right. Well, let's just turn to the matter at hand.

And one of the questions I had and we sort of previewed is just precisely what it is that Google is asking for or believes it needs to make an educated decision about whether to raise concerns about some of these suggested staff hires, and it wasn't clear to me precisely what Google thought it might need to make those decisions.

I mean, I know you've at least made -- offered at least one example, which is, okay, to which projects or to which remedy, for example, are certain staff going to be -- or contemplated to be allocated, and maybe they're a similar type of information, maybe that's the only information you're looking for.

MR. SCHMIDTLEIN: Yes.

So I guess, you know, when we got the notice, and I think it's Exhibit 1 --

THE COURT: Right.

MR. SCHMIDTLEIN: -- to the JSR, that contains the various different positions and the number of people. And, you know, it purports to give sort of descriptions of the job titles.

But, you know, I think candidly, Your Honor, when we read all or nearly all of these, if I didn't know what the purpose of the entity was here, I wouldn't have any idea what this company was doing.

These are very, very vague, high-level descriptions. And we don't really understand, are these literally all, like, sort of internal bureaucratic organizational things? Are these people who are actually going to be working on specific aspects and responsibilities and obligations?

I mean, as Your Honor knows, there's, I don't know, half a dozen, six, seven, eight, I would think you would consider them distinctive buckets of responsibilities, everything from, you know, the data security standards for a qualified competitor to privacy, to the number of times that, you know, user-side data is going to have to be produced, the frequency.

You know, there's a variety of very, very distinct things that are on the menu of things that the technical committee is going to have to work on. Many of these are,

I think of as very distinct, probably requiring specific expertise or, you know, résumé experience.

And we were expecting that we would get more detailed information about, here's the number of people and here's the dollars associated with those people that we believe are necessary to allow us to do our work on category X or category Y or category Z so that we could evaluate those things.

And, again, we just didn't think what was provided in Exhibit 1 gave us that information. We were really left sort of wondering, are these literally all people who are just going to be doing internal stuff? Are they actually working on specific aspects?

And so that's the type of information that we expected and we believe is sort of the bare minimum that we need in order to evaluate reasonableness for our assessment.

THE COURT: Okay.

So, but is there anything more than that?

I mean, I take your point that the descriptions and the titles of the positions don't tell you very much about what any particular category of employee, let alone what any individual employee might be doing.

But is there anything more than kind of a mapping of some of the positions and how the technical committee anticipates they will be allocated on specific projects to

carry out certain remedies?

MR. SCHMIDTLEIN: No.

I think --

THE COURT: That's primarily what you're looking for?

MR. SCHMIDTLEIN: I think that's primarily what we're looking for.

Again, like, you know, I'm not expecting necessarily them to detail every last step of all the different work streams that would be involved --

THE COURT: Of course.

MR. SCHMIDTLEIN: -- but I do think we need to have a better understanding of -- I mean, I heard today that, I think, a suggestion that like this was the entirety of the organization. We couldn't tell if those were, frankly, all just sort of internal bureaucracy positions, and that they were going to come to us with another I don't know how many more people sort of down the road and that this was sort of the ramp-up period.

So I think primarily we need to know how many are internal-only-facing sort of jobs and how many are specifically -- and who specifically -- you know, how many of these positions are allocated to very specific provisions in the final judgment that require technical committee either responsibility or, you know, recommendations,

involvement, things where the special committee is called out specifically as having a role.

THE COURT: Right. Okay.

Mr. Fergusson, your thoughts and reactions to all of that.

MR. FERGUSSON: Just a few points, Your Honor.

Directly in response to this proposal for a kind of categorization of what remedies each TC staff member will be assisting with, it is entirely possible that staff will work cross-functionally across multiple work streams. So to the extent to which Google is suggesting that they must be cabined into a specific remedy is one that I think may not be workable with how the technical committee is hoping to staff up and operate.

More generally, though, Your Honor, we believe the final judgment is remarkably clear as to the limitations on Google's ability to object to staffing expenses.

Section VII.A.7.i grants plaintiffs alone the right to approve TC staffing decisions. And it actually includes some very specific language on the standard of what reasonable staffing expenses are: The compensation of any person retained by the TC shall be based on reasonable and customary terms commensurate with the individual's experience and responsibilities.

So the technical committee has put together a

detailed staffing plan as part of its organizational plan provided to the plaintiffs and negotiated with Google under the TC services agreement. Plaintiffs have reviewed that staffing plan and do believe that it is reasonably necessary to carry out the TC's responsibilities, and so approved it.

The notice --

THE COURT: So can I just -- if I could interrupt you.

I mean, given what has been disclosed, how, if at all, do you think Google is in a position to object to the proposal?

I mean, do you mean to suggest that they can right now say, well, we don't think you need 10 experts, we think 7 will do.

I mean, I don't know that they're asking to or even contemplating that type of objection, but I sort of am sympathetic here that little more than numbers and titles doesn't really provide a lot of information -- I mean, let's put it this way. If Google were to object to any of this and you all were to defend it and then come to me, I wouldn't know how to begin resolving this because there isn't a lot of detail.

And I'm not suggesting that you need to account for every single one of these proposed staff members, but it is fairly thin in terms of what's been described.

MR. FERGUSSON: Two points on that, Your Honor, if I may.

THE COURT: Uh-huh.

MR. FERGUSSON: The first is, the notice of intent to hire the technical committee provided to Google here, our understanding is that is actually more detailed than what the *Microsoft* technical committee provided for their staffing needs. It includes job descriptions, maximum number of potential hires for those roles, projected seniority levels, projected compensation ranges. We think this information is relevant to Google's determination of whether the expenses of staffing up are reasonable.

We're nervous. Our concern here is that Google has, in fact, asked you for information that would permit them to get an approval right over the technical committee's staffing decisions that they have already tried to litigate in their proposed final judgment and Your Honor rejected.

We are concerned because this information reflects some sensitive internal deliberations that the technical committee has made, as well as discussions with the plaintiffs regarding staffing priorities and enforcement that are part of an organizational plan that Google agreed under the TC services agreement they would not receive.

And so this is, in our view, an attempt to kind of re-litigate access to information that Google has repeatedly

been withheld from accessing in the past.

And we are concerned that disclosing this information may hinder the technical committee's ability to actually carry out their duties.

One, because they are hoping to attract top talent, and any delays or confusion over the security of technical committee staff members' job security may hinder their ability to actually hire people.

Relatedly, some of these determinations are based off of their internal decisions around how to approach their obligations under the final judgment that are sensitive and related to conversations that we've had with them.

We don't want to be in a position where Google is getting access to information that may undermine the technical committee's ability to actually recommend remedies under the final judgment and carry out some of the other obligations that they have.

THE COURT: Okay.

I hear the concerns.

You know, at the end of the day, there is a provision here that allows Google to object, and so it's still a little unclear how they're in a position to do that given what they've received. And, frankly, it's not clear to me that what they are asking for is all that much more.

You know, I'm not sure what Google is asking for,

for example, is some firm -- they're not looking to straitjacket, for example, how any one particular employee operates.

In other words, just because an employee is tasked as a person who's working on remedy one doesn't mean they can't then work on remedy two. I don't hear them to say that's the kind of thing they're looking to object to, but, rather, simply just to get a sense of how some of these positions will be allocated to working on the various remedial matters that they're going to have to effectuate. It may not be that much more information, but, you know, it does seem to me a little bit more information would be helpful.

And I'm not suggesting this gives Google some sort of veto. They still have to, one, decide whether they want to object; and, two, convince me that it's worthy of the objection. But, you know, in terms of at least effectuating their ability to sort of kick the tires on reasonableness, I'm not sure they've got quite enough here.

And so what do you think -- without -- let me ask: Do you think it would be feasible to provide a little bit more detail in terms of how the technical committee sees these positions operating relative to the remedies to Google without disclosing the types of internal deliberations, kind of confidential discussions that you have described?

I think at the end of the day what they're looking for is just a little bit of what the output is. Not sort of how the budget was prepared, but why, for example, we've got all of these various positions and how these positions are contemplated to be married up to remedies, I think is what they're asking for.

MR. FERGUSSON: I understand your point, Your Honor.

The short answer is, we may need to go back to the technical committee to confirm what their comfort level is.

Some of this information is based off of an organizational plan that they were under the impression would not be provided to Google.

THE COURT: Okay.

MR. FERGUSSON: So we'll need to iron out what they are comfortable sharing as part of this.

And, of course, happy to continue working with Google to iron out what specific information they would want as part of this process to see if we can work through that together.

THE COURT: Look, I'm not asking this to turn into a prolonged battle royale, because I -- you know, my interest as well as the committee's and everyone's is to finalize this, allow them to begin the hiring process.

And perhaps that can even start already, but,

again, I'm just -- my interest here is to ensure that there is a minimally sufficient amount of information that Google receives to be able to kick the tires more than what they are able to do with the information they've presently been given.

And so -- go ahead.

MR. FERGUSSON: Absolutely, Your Honor.

We will certainly work to provide any additional information that you believe is necessary, and we'll work with Google and the technical committee to make sure that that is possible.

THE COURT: Okay.

Mr. Schmidtlein, your thoughts.

MR. SCHMIDTLEIN: Yeah, I mean, I think this is a step in the right direction obviously.

I'm, frankly, a little mystified as to what the confidentiality concerns are or are all this shrouded secrecy or why they don't want to disclose to us where these resources are going, given that we're writing a check for all the resources.

And I don't see any reasons why they can't do this. They've obviously -- they've drawn up a document that explains all of this and they've given it to the plaintiffs, but they won't give it to us and they won't give any information about it.

And I'm not saying I want or need all of the information in there. But they have all the information at their fingertips to be able to provide to us, and I think that information should be provided.

I also, I guess, would just caution. I don't want the outgrowth of this to be, they come back and say, oh, all 77 of these people could potentially work on all the various different remedies, when, you know, we know that's not actually going to happen.

They've made reference to the *Microsoft* process. They've already outlined hiring multiples of people that were on the technical committee in *Microsoft*.

So we just need more information.

THE COURT: Okay.

MR. SALLET: Your Honor, might I say something?

THE COURT: Sure, Mr. Sallet. Go ahead.

MR. SALLET: In his previous statement today, Mr. Schmidtlein said, "If I didn't know the purpose of the technical committee, I wouldn't know what this was."

But, of course, we do know the purpose. We know there are syndication license templates to be created, user data licenses to be created, processes to qualify qualified competitors, processes to supply data and security safeguards.

We know what the fundamental work of the technical

committee is, and all of this is within that context. One should recall the context. The context is both a series of very important, very well-defined tasks and an importance in getting it done quickly.

So Your Honor raised a question of what would Google want to do with the information. And I think, and forgive me, Your Honor, if I've misremembered this, but, said, well, would Google want to argue whether there should be 10 or 7 people on a task.

But that's, in fact, exactly what Google in its pleadings says. What it says on page 5 is, "Without the information on the number of staff the TC intends to hire in each category, it won't be able to evaluate whether that's the right number of staff in each category." That goes beyond an identification of what someone's working on. It would bring Google into the question of, well, should you have 10 or should you have 7.

And that's the fundamental problem, I think, with the Google proposal, which is that it isn't bounded. We don't know what the boundaries are. And since we don't know what the substantive boundaries of inquiry can be, we don't know how much delay can be interposed.

Delay of two kinds. Of course, delay in hiring. And in the high-tech sector, being able to move quickly to hire people is very important; people often have more than

one job opportunity at a time.

But, secondly, Google says, well, there's no delay because they have the money. The money by itself doesn't tell us what the tapering rate should be or what the privacy safeguards should be. It's these people.

Google said, well, *Microsoft* didn't have this many people. But the measurement of how many people is necessary or what are the tasks, they're right in front of the TC today, and they are very big multiple tasks.

So, Your Honor, of course we will go back and talk to the technical committee and of course we want to provide the kind of information that will allow you, Your Honor, to rule upon any objection.

But our deep concern here is a boundless set of inquiries that lead to delay and disruption of what has to be a speedy and effective process.

THE COURT: Look, all of that is fair.

And I do not want this to become an open-ended series of demands for more and more information.

What I've heard Mr. Schmidtlein say is that he would like -- his client would like a little bit more information that explains how these various positions and the number of people the technical committee is currently contemplating in terms of deploying those resources to those remedies.

It may be, for example, that, you know, of the number of technical program managers, the technical committee thinks right now, well, half will need to go to data sharing and data privacy, et cetera.

That doesn't seem to me like that much additional information and, frankly, may be all that they're looking for at this point. And if it becomes greater than that, then, you know, you can always come back to me.

But at least as of now, what I would ask the plaintiffs to do is to at least provide some greater degree of detail that marries up the various positions and the numbers with the various remedies.

And none of this has to be set in stone. This is a live organic entity that will be getting things off the ground. Things will undoubtedly change.

But at least what the current thinking is, I think is probably something that does need to be disclosed so that Google can, in an educated manner, actually decide whether to object, and, if so, how to object, okay?

So let's just talk timing then, because as I said, I do want to -- it's in everybody's interest to keep moving things along.

Mr. Fergusson, Mr. Sallet, how long do you think you would need to sort of confer with the technical committee and gather that type of information and get it to

Google? Is that something you can do by early next week?

MR. FERGUSSON: Certainly, Your Honor.

We will be in communication with the technical committee as soon as possible and should be able to get a response to Google on the types of information we would be able to provide next week.

THE COURT: Okay.

So why don't we -- today is -- it's hard to keep track of the days of the week. I think today is Tuesday. Why don't we say by next Tuesday the plaintiffs will get back to Google with the additional information. And then you all will just -- you know, if we don't hear from you, we'll assume that things are moving forward. If issues arise, please let us know.

I guess what I would say is by Tuesday, if the plaintiffs make that disclosure, I guess I'd like to know certainly no later than the end of the week whether Google is contemplating either asking for more information or is going to want to raise some objections.

Mr. Schmidtlein, is that something -- is that a timeline that seems reasonable?

MR. SCHMIDTLEIN: I'm hesitating, Your Honor, because I know what next week is in terms of -- and -- in terms of people out on vacations with the 4th of July holiday on Friday.

THE COURT: Oh, right.

MR. SCHMIDTLEIN: So if there's a way that I could get until seven days after that, in other words, the Tuesday after the 4th of July weekend, that would be great.

If we know for sure we've run this to the ground and there's no issues, we will inform the plaintiffs before that for sure.

THE COURT: Okay.

MR. SCHMIDTLEIN: But I don't, sitting here right now, know if I've got the right people who are going to be available to me by the end of next week.

If we were to get this late Tuesday, then I'm on a pretty short clock. That's all.

THE COURT: Yeah. I had not recalled that, yes, we've got a short week next week. So I think that's reasonable.

And, again, I don't think any of this ought to stop the technical committee from moving forward with its determining -- hiring people takes time, and so whatever preliminary steps they need to take in order to advertise these positions, et cetera, it's not clear to me -- well, let me put it differently. I don't see any reason why this additional information Google is seeking should slow that process down, okay? They ought to continue apace with whatever it is they want to do.

In terms of hiring, I suspect we will have answers for them in short order as to whether any of these positions or their descriptions are going to be contested by Google. Hopefully, they'll be satisfied with the information they've received, and if not, you know, we can get it resolved very quickly, okay?

So can I just ask, before we adjourn, so we had our original three members and then the additional two were selected. Are all five now on board and have begun work on what we at least expected was a full-time basis at this juncture?

MR. SALLET: Yes, they have. They are.

THE COURT: Okay.

All right.

I may want to just have a quick chat with them as a group just to -- if for no other reason than to just check in and make myself available to them if there are issues they'd like to raise directly with me.

And so I'll be in touch with plaintiffs' counsel about a possible time to schedule that type of call. I don't think it will be long, but I just would like to -- it's been some time since I spoke with at least the initial three and we're now about six months in and it might be just useful to check in so that they know the judge is still at home and paying attention to everything, okay?

All right. Thank you, all, very much, appreciate your time, and we'll look forward to hearing back from you.

(Proceedings concluded at 3:14 p.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date: June 23, 2026

William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [1]** 4/2
**MR. CHAPMAN: [2]** 6/9 6/14
**MR. FERGUSON: [1]** 10/24
**MR. FERGUSSON: [12]** 6/20 8/9 9/6 9/11 10/21 18/6 20/1 20/4 23/7 23/15 24/7 29/2
**MR. SALLET: [4]** 11/13 25/15 25/17 31/12
**MR. SCHMIDTLEIN: [11]** 12/10 12/18 14/23 15/2 17/2 17/6 17/12 24/14 29/22 30/2 30/9
**THE COURT: [31]** 4/9 6/13 6/18 8/2 8/20 9/10 10/2 10/23 11/5 12/4 12/17 14/5 15/1 16/17 17/4 17/11 18/3 19/7 20/3 21/18 23/14 23/21 24/12 25/14 25/16 27/17 29/7 30/1 30/8 30/14 31/13

**1**

**10 [8]** 5/12 8/25 9/3 10/12 10/13 19/13 26/9 26/17
**1300 [1]** 2/9
**15 [1]** 9/2

**2**

**20-3010 [2]** 1/4 4/6
**20001 [1]** 3/9
**20024 [1]** 3/4
**202 [3]** 2/4 3/4 3/9
**2026 [2]** 1/5 33/7
**20530 [1]** 2/3
**23 [2]** 1/5 33/7
**2:30 [1]** 1/6

**3**

**3010 [2]** 1/4 4/6
**3249 [1]** 3/9
**333 [1]** 3/8
**354-3249 [1]** 3/9
**3:14 [1]** 32/3

**4**

**4236 [1]** 2/4
**434-5170 [1]** 3/4
**450 [1]** 2/3
**4th [2]** 29/24 30/4

**5**

**508-6000 [1]** 2/10
**5170 [1]** 3/4

**6**

**6000 [1]** 2/10
**680 [1]** 3/3

**7**

**720 [1]** 2/10
**77 [1]** 25/7
**7th [1]** 2/9

**8**

**80203 [1]** 2/10
**894-4236 [1]** 2/4

**A**

**ability [5]** 18/17 21/3 21/8 21/15 22/18
**able [8]** 5/13 24/3 24/4 25/3 26/13 26/24 29/4 29/6
**about [17]** 4/15 6/5 8/21 10/6 10/20 11/9 11/10 11/16 11/22 12/7 14/13 14/14 16/4 16/21 24/25 31/20 31/23
**above [1]** 33/4
**above-titled [1]** 33/4
**Absolutely [1]** 24/7
**access [3]** 8/12 20/25 21/14
**accessing [1]** 21/1
**account [1]** 19/23
**accounting [4]** 7/13 8/10 8/12 8/13
**across [1]** 18/10
**actively [1]** 6/24
**actually [13]** 5/12 5/24 7/20 8/14 15/13 16/12 18/19 20/6 21/4 21/8 21/15 25/9 28/18
**add [2]** 11/10 12/6
**additional [8]** 6/16 7/16 7/18 24/8 28/5 29/11 30/23 31/8
**adjourn [1]** 31/7
**adjustments [1]** 9/4
**advanced [1]** 7/20
**advertise [1]** 30/20
**after [2]** 30/3 30/4
**afternoon [3]** 4/2 4/10 6/20
**again [7]** 6/11 7/19 13/24 16/9 17/8 24/1 30/17
**agree [1]** 12/11
**agreed [2]** 7/6 20/22
**agreement [2]** 19/3 20/23
**ahead [2]** 24/6 25/16
**aided [1]** 3/12
**al [2]** 1/3 4/6
**all [39]**
**allocate [1]** 13/17
**allocated [5]** 11/22 14/20 16/25 17/23 22/9
**allow [4]** 14/1 16/6 23/24 27/12
**allows [1]** 21/21
**almost [3]** 5/21 5/23 12/15
**alone [2]** 16/21 18/18
**along [1]** 28/22
**already [3]** 20/16 23/25 25/11
**also [2]** 7/19 25/5
**always [1]** 28/8
**am [2]** 10/6 19/16
**AMERICA [2]** 1/3 4/6
**AMIT [2]** 1/9 4/3
**Amit P [1]** 4/3
**among [2]** 4/21 5/8
**amount [2]** 4/23 24/2
**annual [7]** 4/20 4/21 6/1 6/25 7/9 7/17 9/23
**another [4]** 5/13 10/9 13/10 17/17
**answer [1]** 23/9
**answers [1]** 31/1
**anticipates [1]** 16/25
**anticipating [1]** 9/19
**Antitrust [1]** 2/7
**any [20]** 5/18 6/8 7/11 8/4 8/16 8/19 15/8 16/21 16/22 18/21 19/19 21/6 22/2 24/8 24/21 24/24 27/13 30/17 30/22 31/2
**anymore [1]** 9/2
**anything [4]** 11/10 12/6 16/18 16/23
**apace [1]** 30/24
**APPEARANCES [2]** 1/11 2/12
**appreciate [2]** 6/11 32/1
**approach [1]** 21/10
**approval [3]** 5/15 9/5 20/15
**approve [2]** 8/4 18/19
**approved [2]** 7/9 19/5
**are [63]**
**argue [1]** 26/8
**arise [1]** 29/14
**around [8]** 5/8 6/5 8/23 10/8 13/2 13/7 13/7 21/10
**articulated [1]** 6/3
**as [26]** 5/25 6/16 6/16 7/17 10/11 10/14 12/21 15/16 16/1 18/2 18/16 19/1 20/20 20/20 22/5 23/16 23/19 23/23 23/23 24/16 28/9 28/20 29/4 29/4 31/2 31/15
**as opposed [1]** 5/25
**ask [4]** 11/9 22/20 28/9 31/7
**asked [3]** 11/16 13/5 20/14
**asking [7]** 14/12 19/15 21/24 21/25 23/6 23/21 29/18
**aspect [1]** 13/9
**aspects [3]** 12/14 15/14 16/13
**assessment [1]** 16/16
**assisting [2]** 11/20 18/9
**associated [1]** 16/5
**assume [1]** 29/13
**attempt [1]** 20/24
**attention [1]** 31/25
**attract [1]** 21/5
**available [4]** 8/13 9/12 30/11 31/17
**Avenue [2]** 3/3 3/8

**B**

**back [13]** 5/14 7/22 7/23 9/1 9/4 10/16 13/22 23/9 25/6 27/10 28/8 29/11 32/2
**background [2]** 12/7 14/7
**balance [1]** 13/1
**banging [1]** 6/5
**bare [1]** 16/15
**Barrett [1]** 3/8
**based [3]** 18/22 21/9 23/11
**basis [1]** 31/10
**battle [1]** 23/22
**be [67]**
**because [11]** 5/20 12/1 12/18 19/21 20/18 21/5 22/4 23/22 27/3 28/20 29/23
**become [1]** 27/18
**becomes [1]** 28/7
**been [11]** 6/24 10/19 11/7 11/11 12/12 12/25 19/9 19/25 21/1 24/4 31/22
**before [6]** 1/9 8/8 10/4 11/9 30/6 31/7
**begin [2]** 19/21 23/24
**begun [1]** 31/9
**behind [1]** 7/2
**being [5]** 7/11 7/24

**B**

**being... [3]** 9/17 12/20 26/24
**believe [8]** 5/2 8/9 8/17 16/6 16/15 18/15 19/4 24/9
**believes [1]** 14/13
**best [1]** 11/22
**better [1]** 17/13
**between [1]** 8/18
**beyond [3]** 6/25 7/20 26/15
**big [1]** 27/9
**bit [5]** 4/15 22/12 22/21 23/2 27/21
**board [1]** 31/9
**books [1]** 8/7
**borrow [1]** 10/15
**both [2]** 4/16 26/2
**boundaries [2]** 26/20 26/21
**bounded [1]** 26/19
**boundless [1]** 27/14
**briefly [1]** 11/13
**bring [2]** 12/22 26/16
**Broadway [1]** 2/9
**Bruce [1]** 2/6
**buckets [1]** 15/18
**budget [10]** 4/20 4/21 6/1 7/9 7/17 8/3 9/17 9/19 10/8 23/3
**budgetary [2]** 4/23 9/4
**budgeted [4]** 5/8 6/1 8/25 10/15
**budgeting [6]** 4/15 5/5 7/6 8/8 11/12 12/7
**budgets [3]** 6/25 9/23 11/22
**bureaucracy [1]** 17/16
**bureaucratic [1]** 15/12

**C**

**cabined [1]** 18/12
**call [1]** 31/20
**called [1]** 18/1
**can [17]** 6/8 10/8 10/9 10/14 11/17 13/7 19/7 19/12 23/19 23/25 26/21 26/22 28/8 28/18 29/1 31/5 31/7
**can't [2]** 22/6 24/21
**candidly [1]** 15/6
**Carr [1]** 2/8
**carry [4]** 17/1 19/5 21/4 21/16
**cart [1]** 10/4
**Case [1]** 4/5
**categorization [1]** 18/8
**category [6]** 16/7 16/7 16/7 16/21 26/13 26/14
**category X [1]** 16/7
**caution [1]** 25/5
**cconnor [1]** 3/5
**Center [1]** 2/8
**certain [5]** 4/24 5/1 13/20 14/19 17/1
**certainly [3]** 24/8 29/2 29/17
**Certified [1]** 3/7
**certify [1]** 33/2
**cetera [2]** 28/4 30/21
**CH [1]** 3/8
**change [1]** 28/15
**Chapman [1]** 6/10
**chat [1]** 31/15
**check [3]** 24/19 31/16 31/24
**Civil [1]** 4/5
**clear [4]** 14/15 18/16 21/23 30/21
**client [1]** 27/21
**clock [1]** 30/13
**close [1]** 9/6
**CO [1]** 2/10
**coag.gov [1]** 2/11
**Colette [1]** 3/2
**colleague [1]** 6/15
**COLORADO [2]** 2/6 2/8
**COLUMBIA [1]** 1/1
**come [7]** 7/16 13/14 13/25 17/17 19/20 25/6 28/8
**comfort [1]** 23/10
**comfortable [1]** 23/16
**coming [3]** 4/17 9/8 10/16
**commensurate [1]** 18/23
**committee [37]**
**committee's [6]** 7/5 9/7 20/15 21/3 21/15 23/23
**communication [1]** 29/3
**communications [1]** 11/23
**company [1]** 15/9
**compensation [2]** 18/21 20/10
**competitor [1]** 15/20
**competitors [1]** 25/23
**comport [1]** 7/3
**computer [1]** 3/12
**computer-aided [1]** 3/12
**concern [2]** 20/13 27/14
**concerned [2]** 20/18 21/2
**concerns [3]** 14/14 21/19 24/17
**concluded [1]** 32/3
**confer [1]** 28/24
**CONFERENCE [1]** 1/9
**confidential [1]** 22/25
**confidentiality [2]** 11/24 24/17
**confirm [2]** 8/13 23/10
**confusion [1]** 21/6
**CONNOLLY [1]** 3/3
**Connor [1]** 3/2
**consider [1]** 15/18
**considered [1]** 7/17
**consistent [1]** 13/12
**Constitution [1]** 3/8
**Consumer [1]** 2/7
**contains [1]** 15/2
**contemplated [5]** 5/5 5/17 10/19 14/20 23/5
**contemplating [7]** 6/1 8/6 10/11 10/19 19/16 27/24 29/18
**contested [1]** 31/3
**context [3]** 26/1 26/2 26/2
**continue [4]** 10/25 13/4 23/17 30/24
**CONTINUED [1]** 3/1
**continuing [1]** 9/20
**conversations [2]** 11/22 21/12
**convince [1]** 22/16
**cooperatively [3]** 12/12 12/25 13/25
**correct [1]** 33/3
**costs [4]** 7/14 7/16 8/14 8/14
**could [5]** 13/16 16/7 19/7 25/7 30/2
**couldn't [1]** 17/15
**counsel [4]** 4/7 4/7 6/7 31/19
**course [12]** 7/24 9/15 10/24 11/17 11/21 11/25 17/11 23/17 25/20 26/23 27/10 27/11
**COURT [5]** 1/1 3/6 3/7 4/3 11/21
**cover [2]** 12/13 12/16
**created [2]** 25/21 25/22
**cross [1]** 18/10
**cross-functionally [1]** 18/10
**CRR [2]** 33/2 33/8
**curious [4]** 5/16 10/6 10/10 11/6
**current [2]** 10/20 28/16
**currently [1]** 27/23
**customary [1]** 18/23
**CV [1]** 1/4
**cycle [1]** 8/8

**D**

**D.C [4]** 1/5 2/3 3/4 3/9
**data [6]** 15/19 15/21 25/22 25/23 28/4 28/4
**date [2]** 13/3 33/7
**day [2]** 21/20 23/1
**days [2]** 29/9 30/3
**decide [4]** 4/25 13/17 22/15 28/18
**decision [1]** 14/13
**decisions [4]** 14/16 18/19 20/16 21/10
**deep [1]** 27/14
**defend [1]** 19/20
**Defendant [2]** 1/7 3/2
**defendant's [1]** 4/7
**defined [1]** 26/3
**degree [1]** 28/10
**delay [6]** 12/19 26/22 26/23 26/23 27/2 27/15
**delays [1]** 21/6
**deliberations [2]** 20/19 22/24
**demands [1]** 27/19
**Denver [1]** 2/10
**DEPARTMENT [2]** 2/2 2/6
**deploying [1]** 27/24
**described [2]** 19/25 22/25
**descriptions [5]** 15/4 15/11 16/19 20/8 31/3
**detail [4]** 17/9 19/22 22/22 28/11
**detailed [3]** 16/4 19/1 20/6
**details [1]** 13/2
**determination [1]** 20/11
**determinations [1]** 21/9
**determine [1]** 9/21
**determining [1]** 30/19
**did [1]** 13/6
**didn't [6]** 12/15 13/20 15/7 16/9 25/18 27/6
**different [4]** 12/13 15/3 17/10 25/8
**differently [1]** 30/22
**direction [1]** 24/15
**directly [2]** 18/7

**D**

**directly... [1]** 31/18
**disclose [1]** 24/18
**disclosed [2]** 19/9 28/17
**disclosing [2]** 21/2 22/24
**disclosure [1]** 29/16
**discretion [2]** 8/22 9/3
**discuss [1]** 11/15
**discussed [2]** 8/21 11/7
**discussions [2]** 20/20 22/25
**dispute [1]** 6/6
**disputes [1]** 8/19
**disruption [1]** 27/15
**disruptions [1]** 7/4
**distinct [3]** 11/18 15/23 16/1
**distinction [2]** 11/14 12/3
**distinctive [2]** 12/1 15/18
**DISTRICT [3]** 1/1 1/1 1/10
**do [31]** 4/22 5/14 5/14 9/3 10/18 12/6 12/22 13/4 13/11 13/15 13/15 13/23 16/6 17/12 19/4 19/10 19/12 19/14 21/22 22/20 22/21 24/4 24/21 25/20 26/6 27/18 28/10 28/21 28/23 29/1 30/25
**Do you know [1]** 10/18
**do you think [1]** 28/23
**document [1]** 24/22
**does [3]** 5/7 22/12 28/17
**doesn't [4]** 19/18 22/5 27/3 28/5
**doing [5]** 4/11 13/3 15/9 16/12 16/22
**dollars [1]** 16/5
**don't [25]** 4/13 9/2 10/14 13/16 15/11 15/16 16/20 17/17 19/13 19/15 21/13 22/6 24/18 24/21 25/5 26/20 26/20 26/21 29/8 29/10 29/12 30/9 30/17 30/22 31/21
**done [1]** 26/4
**down [2]** 17/18 30/24
**dozen [1]** 15/17
**draw [2]** 5/13 7/5
**drawn [1]** 24/22
**duties [1]** 21/4

**E**

**each [3]** 18/8 26/13 26/14
**earlier [1]** 8/10
**early [1]** 29/1
**edge [1]** 9/7
**educated [3]** 4/15 14/13 28/18
**effective [1]** 27/16
**effectuate [1]** 22/10
**effectuating [1]** 22/17
**efficient [1]** 9/15
**eight [1]** 15/17
**either [4]** 7/21 9/5 17/25 29/18
**email [4]** 2/4 2/11 3/5 6/17
**employee [4]** 16/21 16/22 22/2 22/4
**end [4]** 21/20 23/1 29/17 30/11
**ended [1]** 27/18
**enforcement [1]** 20/21
**engineers [3]** 9/2 10/14 10/15
**enough [1]** 22/19
**ensure [1]** 24/1
**entirely [1]** 18/9
**entirety [1]** 17/14
**entity [2]** 15/8 28/14
**essentially [1]** 10/15
**et [4]** 1/3 4/6 28/4 30/21
**et al [1]** 4/6
**et cetera [2]** 28/4 30/21
**evaluate [3]** 16/8 16/16 26/13
**even [2]** 19/16 23/25
**event [2]** 13/8 13/8
**eventualities [1]** 12/13
**every [3]** 12/16 17/9 19/24
**everybody [1]** 4/10
**everybody's [2]** 4/11 28/21
**everyone's [1]** 23/23
**everything [2]** 15/19 31/25
**exactly [1]** 26/10
**example [8]** 5/7 8/24 14/18 14/19 22/1 22/2 23/3 28/1
**excuse [1]** 10/13
**Exhibit [2]** 14/25 16/10
**expect [1]** 11/25
**expectation [1]** 13/11
**expected [3]** 11/11 16/15 31/10
**expecting [2]** 16/3 17/8
**expeditiously [1]** 14/1
**expending [1]** 14/3
**expenditure [2]** 4/16 5/5
**expenditures [4]** 5/1 6/23 8/7 12/8
**expense [1]** 5/22
**expenses [8]** 7/11 7/15 8/14 8/15 12/23 18/17 18/21 20/12
**experience [2]** 16/2 18/24
**expertise [1]** 16/2
**experts [7]** 5/11 8/25 9/1 10/12 10/13 10/16 19/13
**explains [2]** 24/23 27/22
**extent [5]** 8/16 9/24 11/2 13/18 18/11

**F**

**facing [1]** 17/21
**fact [5]** 7/15 13/19 13/20 20/14 26/10
**fair [1]** 27/17
**fairly [1]** 19/25
**feasible [1]** 22/21
**Fergusson [8]** 2/2 6/15 6/19 6/21 12/11 13/19 18/4 28/23
**few [1]** 18/6
**Fifth [1]** 2/3
**final [8]** 5/20 7/3 12/14 17/24 18/16 20/17 21/11 21/16
**finalize [1]** 23/24
**fingertips [1]** 25/3
**firm [1]** 22/1
**first [2]** 6/25 20/4
**five [1]** 31/9
**flagged [1]** 6/16
**flexibility [1]** 5/7
**Floor [1]** 2/9
**fold [1]** 7/3
**followed [1]** 7/13
**foregoing [1]** 33/3
**forgive [1]** 26/7
**forward [9]** 5/4 5/6 7/21 11/11 11/12 14/7 29/13 30/18 32/2
**frankly [5]** 4/14 17/16 21/23 24/16 28/6
**frequency [1]** 15/22
**Friday [1]** 29/25
**front [1]** 27/8
**frustrate [1]** 12/19
**full [3]** 9/14 9/19 31/10
**full-time [1]** 31/10
**functionally [1]** 18/10
**functioning [1]** 12/20
**fundamental [2]** 25/25 26/18
**funded [2]** 4/23 7/11
**funding [3]** 7/18 13/20 13/21
**funds [7]** 5/8 7/19 7/21 7/22 7/23 13/17 14/3
**future [2]** 4/17 9/22

**G**

**gather [2]** 4/18 28/25
**gave [1]** 16/10
**general [2]** 7/25 9/25
**generally [2]** 8/12 18/15
**get [19]** 4/15 5/11 5/22 7/7 7/10 8/11 10/3 13/1 13/1 14/2 16/3 20/15 22/8 28/25 29/4 29/10 30/3 30/12 31/5
**getting [4]** 9/6 21/14 26/4 28/14
**give [5]** 7/8 13/15 15/4 24/24 24/24
**given [6]** 9/18 19/9 21/23 24/5 24/19 24/23
**gives [1]** 22/14
**go [9]** 5/14 7/10 9/4 13/24 23/9 24/6 25/16 27/10 28/3
**go ahead [2]** 24/6 25/16
**goal [1]** 12/18
**goes [1]** 26/14
**going [17]** 4/13 5/4 5/6 9/1 10/25 14/19 15/14 15/21 15/25 16/12 17/17 22/10 24/19 25/9 29/19 30/10 31/3
**good [6]** 4/2 4/10 4/10 6/11 6/20 6/23
**GOOGLE [53]**
**Google LLC [1]** 4/6
**Google's [4]** 6/1 12/8 18/17 20/11
**got [5]** 14/24 22/19 23/3 30/10 30/15
**Grant [3]** 2/2 6/15 6/21
**Grant Fergusson [1]** 6/21
**grant.fergusson [1]**

**G**

**grant.fergusson... [1]** 2/5
**grants [1]** 18/18
**great [1]** 30/4
**greater [2]** 28/7 28/10
**ground [2]** 28/15 30/5
**group [1]** 31/16
**guess [6]** 13/6 13/6 14/24 25/5 29/15 29/16

**H**

**had [5]** 11/6 14/11 21/12 30/14 31/7
**half [2]** 15/17 28/3
**hand [3]** 12/19 12/21 14/10
**happen [1]** 25/9
**happened [1]** 4/19
**happy [2]** 11/3 23/17
**hard [1]** 29/8
**has [16]** 4/19 4/20 4/21 4/23 8/4 10/19 11/11 11/16 12/21 18/25 19/9 20/14 20/20 20/25 27/15 28/13
**have [45]**
**having [3]** 9/4 9/19 18/2
**he [1]** 27/20
**head [1]** 6/5
**hear [3]** 21/19 22/6 29/12
**heard [2]** 17/13 27/20
**hearing [1]** 32/2
**help [1]** 6/8
**helpful [3]** 11/2 14/6 22/13
**here [17]** 7/2 9/18 9/21 10/21 11/9 12/13 12/16 12/18 15/8 19/17 20/5 20/13 21/21 22/19 24/1 27/14 30/9
**here's [2]** 16/4 16/5
**hesitating [1]** 29/22
**high [2]** 15/10 26/24
**high-level [1]** 15/10
**high-tech [1]** 26/24
**hinder [2]** 21/3 21/7
**hire [7]** 9/13 9/16 13/13 20/5 21/8 26/12 26/25
**hires [3]** 12/23 14/15 20/9
**hiring [7]** 4/22 9/14 23/24 25/11 26/23 30/19 31/1
**his [2]** 25/17 27/21
**holiday [1]** 29/25
**home [1]** 31/25
**Honor [26]** 4/5 6/9 6/20 8/9 9/6 10/21 11/13 11/16 12/3 12/10 12/21 15/6 15/16 18/6 18/15 20/1 20/17 23/8 24/7 25/15 26/5 26/7 27/10 27/12 29/2 29/22
**HONORABLE [3]** 1/9 4/2 4/3
**hope [4]** 4/11 6/23 9/15 13/3
**hopeful [2]** 7/4 7/7
**hopefully [2]** 14/2 31/4
**hoping [2]** 18/13 21/5
**horse [1]** 10/4
**how [28]** 5/4 5/7 5/16 8/21 11/11 11/22 12/8 13/14 16/24 17/18 17/20 17/21 17/22 18/13 19/9 19/21 21/10 21/22 22/2 22/8 22/22 23/3 23/4 26/22 27/7 27/22 28/19 28/23
**huh [1]** 20/3
**hypothetical [1]** 8/24
**hypothetically [1]** 5/10

**I**

**I agree [1]** 12/11
**I also [1]** 25/5
**I believe [1]** 5/2
**I don't [8]** 4/13 13/16 15/16 17/17 19/15 22/6 30/9 31/21
**I guess [4]** 14/24 25/5 29/15 29/16
**I had [2]** 14/11 30/14
**I hope [3]** 4/11 6/23 13/3
**I just [3]** 10/6 12/3 31/21
**I know [3]** 6/3 14/17 29/23
**I mean [7]** 14/17 15/16 17/13 19/9 19/12 19/15 24/14
**I say [1]** 25/15
**I should [1]** 4/24
**I think [21]** 9/25 12/14 13/2 13/14 13/15 13/19 15/6 16/1 17/3 17/6 17/14 17/20 18/12 23/1 23/5 24/14 25/3 26/6 26/18 28/16 29/9
**I understand [2]** 5/1 23/7
**I want [1]** 25/1
**I will [1]** 9/11
**I would [3]** 15/17 28/9 29/15
**I wouldn't [2]** 15/8 19/21
**I'd [2]** 4/18 29/16
**I'll [3]** 6/7 6/23 31/19
**I'm [17]** 5/16 6/4 7/7 10/4 10/10 10/22 17/8 19/23 21/25 22/14 22/19 23/21 24/1 24/16 25/1 29/22 30/12
**I'm just [1]** 5/16
**I'm not sure [2]** 21/25 22/19
**I've [3]** 26/7 27/20 30/10
**idea [1]** 15/8
**identification [1]** 26/15
**immediate [1]** 13/7
**importance [1]** 26/3
**important [3]** 11/15 26/3 26/25
**impression [1]** 23/12
**includes [2]** 18/20 20/8
**incurred [3]** 7/11 7/15 8/15
**individual [1]** 16/22
**individual's [1]** 18/23
**inform [1]** 30/6
**information [42]**
**initial [1]** 31/22
**initially [1]** 10/12
**inquiries [1]** 27/15
**inquiry [1]** 26/21
**instead [1]** 9/1
**intend [1]** 13/13
**intended [1]** 9/14
**intends [1]** 26/12
**intent [3]** 7/2 9/13 20/4
**interest [3]** 23/23 24/1 28/21
**internal [8]** 9/7 15/12 16/12 17/16 17/21 20/19 21/10 22/24
**internal-only-facing [1]** 17/21
**interposed [1]** 26/22
**interrupt [1]** 19/7
**invoiced [1]** 5/22
**invoices [1]** 6/22
**involved [2]** 11/25 17/10
**involvement [1]** 18/1
**involving [1]** 11/16
**iron [3]** 12/12 23/15 23/18
**ironed [2]** 7/24 10/22
**ironing [1]** 10/1
**is [100]**
**is there [2]** 8/5 16/18
**isn't [2]** 19/22 26/19
**issue [3]** 4/16 10/6 11/15
**issues [3]** 29/13 30/6 31/17
**it [42]**
**it does [1]** 22/12
**it would be [1]** 22/21
**it's [15]** 4/10 5/25 6/11 11/2 13/12 14/7 14/25 21/21 21/23 22/16 27/5 28/21 29/8 30/21 31/22
**item [2]** 5/14 10/9
**items [2]** 5/9 10/8
**iteration [1]** 12/16
**its [4]** 12/9 19/1 26/10 30/18
**itself [1]** 27/3

**J**

**job [4]** 15/5 20/8 21/7 27/1
**jobs [1]** 17/21
**John [1]** 3/2
**Joint [1]** 4/17
**jon.sallet [1]** 2/11
**Jonathan [1]** 2/6
**JSR [1]** 15/2
**judge [2]** 1/10 31/24
**judgment [8]** 5/20 7/3 12/14 17/24 18/16 20/17 21/11 21/16
**Judicial [1]** 2/8
**July [2]** 29/24 30/4
**jumping [1]** 4/12
**juncture [1]** 31/11
**June [2]** 1/5 33/7
**just [34]**
**JUSTICE [1]** 2/2

**K**

**keep [2]** 28/21 29/8
**kick [2]** 22/18 24/3
**kind [12]** 5/15 8/10 8/11 9/19 9/22 9/25 16/23 18/7 20/24 22/7 22/24 27/12
**kinds [2]** 11/23 26/23
**know [49]**
**knowledge [1]** 9/8
**knows [1]** 15/16

**L**

**language [1]** 18/20
**large [2]** 5/25 6/1
**last [3]** 6/17 12/16 17/9
**late [1]** 30/12
**later [1]** 29/17
**LAW [1]** 2/6
**lead [1]** 27/15
**least [10]** 5/20 13/6 14/17 14/18 22/17 28/9 28/10 28/16 31/10 31/22
**left [1]** 16/10
**let [5]** 11/10 16/21 22/20 29/14 30/22
**let me [1]** 11/10
**let's [3]** 14/9 19/19 28/20
**let's put [1]** 19/19
**level [2]** 15/10 23/10
**levels [1]** 20/10
**license [1]** 25/21
**licenses [1]** 25/22
**like [11]** 4/18 10/11 15/12 17/8 17/14 27/21 27/21 28/5 29/16 31/18 31/21
**limitations [1]** 18/16
**line [3]** 5/9 5/13 10/9
**literally [2]** 15/12 16/11
**litigate [2]** 20/16 20/25
**little [8]** 4/15 19/17 21/22 22/12 22/21 23/2 24/16 27/21
**live [1]** 28/14
**LLC [2]** 1/6 4/6
**long [3]** 4/13 28/23 31/21
**look [4]** 5/10 23/21 27/17 32/2
**looking [7]** 14/22 17/4 17/7 22/1 22/7 23/1 28/6
**lot [3]** 12/13 19/18 19/22

**M**

**Maddox [1]** 6/14
**made [5]** 13/3 13/19 14/17 20/20 25/10
**Maine [1]** 3/3
**make [6]** 9/3 14/13 14/16 24/10 29/16 31/17
**managers [1]** 28/2
**manner [1]** 28/18
**many [10]** 10/5 10/14 10/24 15/25 17/18 17/20 17/21 17/22 27/6 27/7
**mapping [1]** 16/23
**married [1]** 23/5
**marries [1]** 28/11
**materiality [1]** 10/7
**matter [2]** 14/9 33/4
**matters [2]** 6/8 22/10
**maximum [1]** 20/8
**may [12]** 4/17 13/8 18/12 20/2 21/3 21/7 21/14 22/11 23/9 28/1 28/6 31/15
**maybe [4]** 10/12 13/9 14/20 14/21
**me [15]** 10/13 11/10 14/15 19/20 21/24 22/12 22/16 22/20 26/7 28/5 28/8 30/11 30/21 30/22 31/18
**mean [11]** 14/17 15/16 16/19 17/13 19/9 19/12 19/12 19/15 19/18 22/5 24/14
**measurement [1]** 27/7
**mechanical [1]** 3/11
**mechanics [4]** 6/22 6/25 7/25 12/7
**mechanism [2]** 7/18 8/5
**mechanisms [1]** 14/1
**MEHTA [2]** 1/9 4/3
**member [1]** 18/8
**members [2]** 19/24 31/8
**members' [1]** 21/7
**mentioned [1]** 8/10
**menu [1]** 15/24
**Merit [1]** 3/6
**Microsoft [6]** 7/5 7/8 20/7 25/10 25/12 27/6
**might [5]** 11/22 14/16 16/22 25/15 31/23
**minimally [1]** 24/2
**minimize [1]** 7/3
**minimum [1]** 16/15
**misremembered [1]** 26/7
**Mitchell [1]** 2/2
**moment [2]** 8/17 9/12
**money [8]** 10/9 10/15 13/7 13/14 13/14 13/22 27/3 27/3
**months [1]** 31/23
**more [23]** 4/15 9/1 11/2 11/25 13/13 16/3 16/18 16/23 17/18 18/15 19/17 20/6 21/24 22/11 22/12 22/22 24/3 25/13 26/25 27/19 27/19 27/21 29/18
**move [5]** 5/8 7/21 8/22 13/7 26/24
**moved [2]** 10/8 10/9
**moving [6]** 11/11 11/12 14/7 28/21 29/13 30/18
**Mr. [14]** 6/19 11/10 12/5 12/6 12/11 13/19 18/4 24/13 25/16 25/18 27/20 28/23 28/23 29/20
**Mr. Fergusson [5]** 6/19 12/11 13/19 18/4 28/23
**Mr. Sallet [4]** 11/10 12/5 25/16 28/23
**Mr. Schmidtlein [5]** 12/6 24/13 25/18 27/20 29/20
**Ms. [1]** 6/14
**Ms. Maddox [1]** 6/14
**much [9]** 5/7 8/21 13/14 16/20 21/24 22/11 26/22 28/5 32/1
**multiple [2]** 18/10 27/9
**multiples [1]** 25/11
**must [1]** 18/11
**my [8]** 5/3 6/5 6/14 8/24 9/8 13/7 23/22 24/1
**myself [1]** 31/17
**mystified [1]** 24/16

**N**

**nature [1]** 9/18
**nearly [1]** 15/7
**necessarily [1]** 17/9
**necessary [7]** 12/24 13/22 14/4 16/6 19/4 24/9 27/7
**necessity [1]** 12/15
**need [25]** 5/11 5/12 8/25 9/2 9/3 9/16 9/22 10/13 10/14 13/21 13/24 14/16 16/16 17/12 17/20 19/13 19/23 23/9 23/15 25/1 25/13 28/3 28/17 28/24 30/20
**needed [1]** 10/12
**needs [2]** 14/13 20/8
**negotiated [2]** 8/18 19/2
**negotiating [1]** 6/24
**negotiations [1]** 7/2
**nervous [1]** 20/13
**new [1]** 10/16
**news [1]** 6/23
**next [8]** 8/8 11/15 29/1 29/6 29/10 29/23 30/11 30/15
**night [1]** 6/17
**no [7]** 1/4 8/4 17/2 27/2 29/17 30/6 31/16
**none [1]** 28/13
**not [28]** 5/24 6/3 7/6 7/17 9/16 10/22 12/18 12/19 12/23 17/8 18/12 19/23 20/23 21/23 21/25 22/1 22/11 22/14 22/19 23/2 23/13 23/21 25/1 25/8 27/18 30/14 30/21 31/5
**note [2]** 11/14 12/3
**notice [7]** 4/12 9/13 13/12 13/16 14/24 19/6 20/4
**now [9]** 4/3 5/25 14/6 19/13 28/3 28/9 30/10 31/9 31/23
**number [8]** 15/3 15/20 16/4 20/9 26/12 26/14 27/23 28/2
**numbers [2]** 19/17 28/12
**NW [2]** 2/3 3/8

**O**

**object [12]** 5/1 5/19 5/23 6/2 18/17 19/10 19/19 21/21 22/7 22/16 28/19 28/19
**objecting [1]** 4/24
**objection [4]** 7/10 19/16 22/17 27/13
**objections [4]** 8/4 8/5 12/22 29/19
**obligations [3]** 15/15 21/11 21/17
**obliged [1]** 13/21
**observation [1]** 13/7
**obviously [3]** 13/18 24/15 24/22
**occurred [1]** 13/20
**off [3]** 21/10 23/11 28/14
**offer [1]** 13/6
**offered [1]** 14/17
**Official [1]** 3/7
**often [1]** 26/25
**oftentimes [1]** 10/7
**oh [2]** 25/6 30/1
**okay [25]** 4/9 6/18 8/2 8/20 9/10 10/2 10/23 11/5 11/8 12/4 14/5 14/18 16/17 18/3 21/18 23/14 24/12 25/14 28/19 29/7 30/8 30/24 31/6 31/13 31/25
**once [1]** 11/3
**one [17]** 10/6 10/9

**O**

**one... [15]** 10/24 11/14 11/24 12/19 13/5 14/11 14/18 18/12 19/24 21/5 22/2 22/5 22/15 26/1 27/1
**only [3]** 9/3 14/21 17/21
**open [1]** 27/18
**open-ended [1]** 27/18
**operate [1]** 18/14
**operates [1]** 22/3
**operating [1]** 22/23
**operation [1]** 14/4
**operations [1]** 7/4
**opportunity [5]** 4/14 5/18 5/23 8/6 27/1
**opposed [1]** 5/25
**order [4]** 5/14 16/16 30/20 31/2
**organic [1]** 28/14
**organization [1]** 17/15
**organizational [4]** 15/13 19/1 20/22 23/12
**original [1]** 31/8
**other [8]** 4/21 8/24 10/11 12/21 21/16 22/4 30/3 31/16
**ought [2]** 30/17 30/24
**our [10]** 7/2 12/18 13/11 16/6 16/16 20/6 20/13 20/24 27/14 31/8
**our understanding [1]** 20/6
**out [17]** 4/21 6/8 7/25 8/25 10/1 10/13 10/22 12/12 14/2 17/1 18/2 19/5 21/4 21/16 23/15 23/18 29/24
**outgrowth [1]** 25/6
**outlined [1]** 25/11
**output [1]** 23/2
**over [3]** 13/9 20/15 21/6
**over-requested [1]** 13/9
**overlapping [1]** 9/9

**P**

**p.m [2]** 1/6 32/3
**page [1]** 26/11
**part [5]** 7/17 19/1 20/22 23/16 23/19
**particular [2]** 16/21 22/2
**parties [6]** 6/6 6/24 8/18 9/20 12/11 13/24
**parties' [1]** 4/16
**past [1]** 21/1
**pay [1]** 5/24
**paying [1]** 31/25
**people [20]** 13/13 15/3 15/13 16/4 16/5 16/11 17/18 21/8 25/7 25/11 26/9 26/25 26/25 27/5 27/7 27/7 27/23 29/24 30/10 30/19
**perhaps [1]** 23/25
**period [2]** 7/10 17/19
**permit [1]** 20/14
**person [2]** 18/22 22/5
**pinpointed [1]** 13/6
**plaintiffs [22]** 1/4 2/2 7/10 7/14 8/4 9/5 10/16 11/17 11/19 11/21 11/23 11/25 13/1 18/18 19/2 19/3 20/21 24/23 28/10 29/10 29/16 30/6
**plaintiffs' [3]** 4/7 6/7 31/19
**plan [6]** 9/14 19/1 19/1 19/4 20/22 23/12
**play [2]** 12/2 14/2
**pleadings [1]** 26/11
**please [1]** 29/14
**point [6]** 5/17 5/24 6/22 16/19 23/7 28/7
**points [2]** 18/6 20/1
**portions [1]** 6/2
**position [3]** 19/10 21/13 21/22
**positions [13]** 15/3 16/20 16/24 17/16 17/23 22/9 22/23 23/4 23/4 27/22 28/11 30/21 31/2
**possible [4]** 18/9 24/11 29/4 31/20
**posture [1]** 4/19
**potential [1]** 20/9
**potentially [1]** 25/7
**precisely [2]** 14/12 14/15
**precision [1]** 12/15
**preliminary [1]** 30/20
**prepared [2]** 6/15 23/3
**present [4]** 4/8 4/19 8/1 9/12
**presently [1]** 24/4
**presiding [1]** 4/4
**pretty [2]** 13/25 30/13
**Prettyman [1]** 3/8
**previewed [1]** 14/12
**previous [1]** 25/17
**primarily [3]** 17/4 17/6 17/20
**principles [1]** 8/13
**prior [1]** 7/11
**priorities [1]** 20/21
**privacy [3]** 15/20 27/4 28/4
**probably [4]** 10/4 13/21 16/1 28/17
**problem [1]** 26/18
**proceedings [4]** 1/9 3/11 32/3 33/4
**process [18]** 4/16 5/5 5/18 7/8 7/21 8/10 8/11 8/17 10/22 11/11 11/12 12/2 13/23 23/19 23/24 25/10 27/16 30/24
**processes [9]** 7/6 9/8 9/25 11/16 11/17 12/12 14/2 25/22 25/23
**produced [2]** 3/12 15/22
**program [1]** 28/2
**progress [1]** 13/3
**projected [6]** 7/9 7/14 7/17 8/14 20/9 20/10
**projects [2]** 14/18 16/25
**prolonged [1]** 23/22
**proposal [3]** 18/7 19/11 26/19
**proposed [7]** 4/20 4/21 5/1 8/3 12/23 19/24 20/17
**Protection [1]** 2/7
**provide [9]** 9/11 11/3 19/18 22/21 24/8 25/3 27/11 28/10 29/6
**provided [8]** 9/17 9/22 16/9 19/2 20/5 20/7 23/13 25/4
**provision [1]** 21/21
**provisions [1]** 17/23
**purports [1]** 15/4
**purpose [3]** 15/8 25/18 25/20
**put [4]** 10/16 18/25 19/19 30/22
**putting [1]** 10/4

**Q**

**qualified [2]** 15/20 25/23
**qualify [1]** 25/22
**question [5]** 6/4 9/24 13/5 26/5 26/16
**questions [3]** 5/3 6/4 14/11
**quick [1]** 31/15
**quickly [5]** 4/12 14/1 26/4 26/24 31/6
**quite [1]** 22/19

**R**

**raise [3]** 14/14 29/19 31/18
**raised [1]** 26/5
**Ralph [1]** 2/8
**ramp [2]** 6/25 17/19
**ramp-up [2]** 6/25 17/19
**ranges [1]** 20/10
**rate [1]** 27/4
**rather [1]** 22/8
**re [2]** 13/17 20/25
**re-allocate [1]** 13/17
**re-litigate [1]** 20/25
**reactions [1]** 18/4
**read [1]** 15/7
**reads [1]** 5/23
**real [1]** 13/3
**really [5]** 9/2 12/25 15/11 16/10 19/18
**Realtime [1]** 3/7
**reason [2]** 30/22 31/16
**reasonable [5]** 18/21 18/22 20/12 29/21 30/16
**reasonableness [2]** 16/16 22/18
**reasonably [3]** 12/23 14/4 19/4
**reasons [1]** 24/21
**recall [1]** 26/2
**recalled [1]** 30/14
**receive [1]** 20/23
**received [2]** 21/23 31/5
**receives [1]** 24/3
**recognized [1]** 12/21
**recommend [1]** 21/15
**recommendations [1]** 17/25
**record [2]** 4/5 33/3
**recorded [1]** 3/11
**records [1]** 8/7
**reference [2]** 13/19 25/10
**reflects [1]** 20/18
**refund [1]** 13/22
**regard [1]** 13/17
**regarding [1]** 20/21
**regardless [1]** 13/13
**Registered [1]** 3/6
**rejected [1]** 20/17
**related [3]** 5/3 9/24 21/12
**Relatedly [1]** 21/9
**relative [1]** 22/23
**relevant [1]** 20/11
**remarkably [1]** 18/16
**remedial [1]** 22/10
**remedies [9]** 9/18

**R**

**remedies... [8]** 17/1 18/8 21/15 22/23 23/5 25/8 27/25 28/12
**remedy [4]** 14/19 18/12 22/5 22/6
**remit [2]** 7/22 7/23
**repeatedly [1]** 20/25
**Report [1]** 4/17
**Reporter [4]** 3/6 3/6 3/7 3/7
**request [2]** 7/18 13/20
**requested [2]** 13/9 13/9
**requesting [1]** 6/6
**require [1]** 17/24
**requirements [1]** 13/12
**requiring [1]** 16/1
**reserving [1]** 4/24
**resolve [1]** 11/1
**resolved [3]** 8/5 8/19 31/5
**resolving [1]** 19/21
**resources [3]** 24/19 24/20 27/24
**respects [1]** 10/5
**response [2]** 18/7 29/5
**responsibilities [4]** 15/14 15/18 18/24 19/5
**responsibility [1]** 17/25
**retained [1]** 18/22
**retrospective [1]** 8/11
**review [2]** 8/7 12/22
**reviewed [1]** 19/3
**right [20]** 4/24 12/5 12/17 12/22 13/1 14/9 15/1 18/3 18/19 19/12 20/15 24/15 26/14 27/8 28/3 30/1 30/9 30/10 31/14 32/1
**RMR [2]** 33/2 33/8
**road [1]** 17/18
**role [3]** 12/8 12/9 18/2
**roles [2]** 12/1 20/9
**royale [1]** 23/22
**rule [1]** 27/13
**run [1]** 30/5
**running [2]** 12/20 14/3
**résumé [1]** 16/2

**S**

**safeguards [2]** 25/24 27/5
**said [5]** 10/12 25/18 26/8 27/6 28/20
**Sallet [5]** 2/6 11/10 12/5 25/16 28/23
**satisfied [1]** 31/4
**say [12]** 4/24 5/10 5/11 8/3 9/2 19/13 22/6 25/6 25/15 27/20 29/10 29/15
**saying [1]** 25/1
**says [3]** 26/11 26/11 27/2
**schedule [1]** 31/20
**Schmidtlein [6]** 3/2 12/6 24/13 25/18 27/20 29/20
**secondly [1]** 27/2
**secrecy [1]** 24/18
**Section [2]** 2/7 18/18
**Section VII.A.7.i [1]** 18/18
**sector [1]** 26/24
**security [4]** 15/19 21/6 21/7 25/23
**see [5]** 6/11 11/10 23/19 24/21 30/22
**seeking [2]** 4/25 30/23
**seem [2]** 22/12 28/5
**seems [1]** 29/21
**sees [1]** 22/22
**selected [1]** 31/9
**seniority [1]** 20/10
**sense [4]** 5/21 7/8 7/25 22/8
**sensitive [2]** 20/19 21/11
**series [2]** 26/2 27/19
**services [2]** 19/3 20/23
**session [1]** 4/3
**set [2]** 27/14 28/13
**seven [2]** 15/17 30/3
**seven days [1]** 30/3
**shall [1]** 18/22
**sharing [2]** 23/16 28/4
**short [5]** 4/12 23/9 30/13 30/15 31/2
**should [10]** 4/24 25/4 26/2 26/8 26/16 26/17 27/4 27/5 29/4 30/23
**show [1]** 7/14
**shrouded [1]** 24/17
**side [1]** 15/21
**similar [1]** 14/20
**simply [1]** 22/8
**since [2]** 26/20 31/22
**single [1]** 19/24
**sitting [2]** 10/21 30/9
**six [2]** 15/17 31/23
**sketched [1]** 4/21
**slow [1]** 30/23
**so [43]**
**So I think [1]** 30/15
**so it's [1]** 21/21
**so this is [1]** 20/24
**solve [1]** 12/14
**some [23]** 6/4 6/23 8/12 8/12 10/7 12/14 12/22 13/2 13/9 14/8 14/14 16/24 18/20 20/19 21/9 21/16 22/1 22/8 22/14 23/11 28/10 29/19 31/22
**someone's [1]** 26/15
**something [8]** 9/25 10/11 10/18 11/6 25/15 28/17 29/1 29/20
**soon [2]** 7/7 29/4
**sort [21]** 5/3 5/3 5/13 5/16 6/4 10/7 13/4 14/11 15/4 15/12 16/11 16/15 17/16 17/18 17/19 17/21 19/16 22/14 22/18 23/2 28/24
**speak [1]** 8/7
**special [1]** 18/1
**specific [11]** 9/21 10/22 11/9 15/14 16/1 16/13 16/25 17/23 18/12 18/20 23/18
**specifically [3]** 17/22 17/22 18/2
**specifics [1]** 7/24
**speedy [1]** 27/16
**spent [1]** 7/20
**spoke [1]** 31/22
**staff [11]** 9/13 9/16 14/15 14/19 18/8 18/9 18/14 19/24 21/7 26/12 26/14
**staffed [1]** 9/19
**staffing [10]** 9/13 18/17 18/19 18/21 19/1 19/4 20/8 20/12 20/16 20/21
**stage [1]** 8/1
**standard [1]** 18/20
**standards [1]** 15/19
**start [3]** 6/7 6/23 23/25
**statement [1]** 25/17
**STATES [7]** 1/1 1/3 1/10 4/6 6/10 6/21 9/21
**STATUS [2]** 1/9 4/17
**stenography [1]** 3/11
**step [2]** 17/9 24/15
**steps [1]** 30/20
**still [6]** 7/24 10/1 13/23 21/22 22/15 31/24
**stone [1]** 28/13
**stop [1]** 30/18
**straitjacket [1]** 22/2
**streams [2]** 17/10 18/10
**Street [1]** 2/3
**structural [1]** 12/1
**stuff [1]** 16/12
**substantive [1]** 26/21
**sufficient [1]** 24/2
**suggest [1]** 19/12
**suggested [1]** 14/14
**suggesting [3]** 18/11 19/23 22/14
**suggestion [1]** 17/14
**suggests [1]** 5/21
**Suite [1]** 2/9
**supply [1]** 25/23
**sure [7]** 10/22 21/25 22/19 24/10 25/16 30/5 30/7
**suspect [1]** 31/1
**SW [1]** 3/3
**sympathetic [1]** 19/17
**syndication [1]** 25/21

**T**

**tackle [1]** 6/15
**take [4]** 4/13 4/14 16/19 30/20
**takes [1]** 30/19
**talent [1]** 21/6
**talk [3]** 11/9 27/10 28/20
**tapering [1]** 27/4
**task [1]** 26/9
**tasked [1]** 22/4
**tasks [3]** 26/3 27/8 27/9
**TC [8]** 7/14 18/8 18/19 18/22 19/3 20/23 26/12 27/8
**TC's [2]** 7/4 19/5
**tech [1]** 26/24
**technical [42]**
**technically [1]** 13/15
**tell [3]** 16/20 17/15 27/4
**templates [1]** 25/21
**terms [15]** 6/5 7/6 8/3 10/6 10/8 12/7 14/7 18/23 19/25 22/17 22/22 27/24 29/23 29/24 31/1
**terribly [1]** 6/3
**than [10]** 12/1 16/18 16/23 19/17 20/6 24/3 26/25 28/7 29/17 31/16
**Thank [4]** 6/9 12/5

**T**

**Thank... [2]** 12/10 32/1
**Thank you [2]** 6/9 12/5
**Thanks [1]** 4/12
**that [168]**
**that's [16]** 4/16 5/2 6/3 10/18 11/6 14/21 16/14 17/4 17/6 22/7 25/8 26/10 26/13 26/18 30/13 30/15
**their [11]** 14/4 20/7 20/17 21/4 21/8 21/10 21/10 22/18 23/10 25/3 31/3
**them [9]** 15/18 17/9 20/15 21/12 22/6 23/24 31/2 31/15 31/17
**then [12]** 5/22 7/13 8/3 12/8 13/21 19/20 22/6 28/8 28/20 29/11 30/12 31/8
**there [19]** 7/7 7/9 7/16 7/18 8/5 8/16 8/16 13/11 13/23 13/24 16/18 16/23 19/21 21/20 24/1 25/2 25/21 26/8 31/17
**there's [8]** 7/19 7/21 10/7 15/16 15/23 27/2 30/2 30/6
**therefore [1]** 11/21
**these [22]** 6/4 14/1 14/14 15/7 15/10 15/11 15/13 15/25 16/11 17/23 19/24 21/9 22/8 22/23 23/4 23/4 24/18 25/7 27/5 27/22 30/21 31/2
**they [54]**
**they'd [1]** 31/18
**they'll [1]** 31/4
**they're [10]** 14/20 19/15 21/22 22/1 22/7 22/10 23/1 23/6 27/8 28/6
**they've [9]** 21/23 22/19 24/4 24/22 24/22 24/23 25/10 25/11 31/4
**thin [1]** 19/25
**thing [2]** 13/10 22/7
**things [14]** 4/21 5/3 8/22 9/15 10/25 15/13 15/24 15/24 16/8 18/1 28/14 28/15 28/22 29/13
**think [43]**
**thinking [2]** 6/5 28/16
**thinks [1]** 28/3
**this [47]**
**those [15]** 6/8 6/15 6/25 7/21 7/22 7/23 8/18 9/3 14/16 16/5 16/8 17/15 20/9 27/24 27/24
**though [1]** 18/15
**thought [3]** 5/10 10/12 14/16
**thoughts [3]** 10/20 18/4 24/13
**three [3]** 7/3 31/8 31/23
**three-fold [1]** 7/3
**threshold [1]** 10/7
**through [2]** 7/10 23/19
**time [7]** 6/12 27/1 30/19 31/10 31/20 31/22 32/2
**timeline [1]** 29/21
**times [1]** 15/20
**timing [1]** 28/20
**tires [2]** 22/18 24/3
**titled [1]** 33/4
**titles [3]** 15/5 16/20 19/17
**today [7]** 6/12 10/21 17/13 25/17 27/9 29/8 29/9
**together [3]** 9/20 18/25 23/20
**too [1]** 6/13
**top [1]** 21/5
**topics [2]** 6/16 6/16
**touch [1]** 31/19
**track [1]** 29/9
**transcript [3]** 1/9 3/11 33/3
**transcription [1]** 3/12
**Travis [1]** 6/10
**tried [1]** 20/16
**try [3]** 9/11 12/14 13/1
**trying [3]** 12/12 12/25 13/25
**Tuesday [5]** 29/9 29/10 29/15 30/3 30/12
**turn [2]** 14/9 23/21
**turns [2]** 8/25 10/13
**two [5]** 20/1 22/6 22/16 26/23 31/8
**type [6]** 13/10 14/21 16/14 19/16 28/25 31/20
**types [4]** 9/4 9/22 22/24 29/5

**U**

**U.S [1]** 2/2
**Uh [1]** 20/3
**Uh-huh [1]** 20/3
**unavailable [1]** 6/14
**unclear [1]** 21/22
**under [7]** 9/17 13/9 19/2 20/23 21/11 21/16 23/12
**under-requested [1]** 13/9
**undermine [1]** 21/14
**understand [4]** 4/18 5/1 15/11 23/7
**understanding [2]** 17/13 20/6
**undoubtedly [1]** 28/15
**unfolding [1]** 5/25
**unilaterally [1]** 13/17
**Unit [1]** 2/7
**UNITED [6]** 1/1 1/3 1/10 4/6 6/10 6/21
**United States [2]** 6/10 6/21
**United States of [1]** 4/6
**until [1]** 30/3
**up [11]** 6/25 7/16 12/20 13/25 14/3 17/19 18/14 20/12 23/5 24/22 28/11
**upon [1]** 27/13
**us [9]** 13/16 16/6 16/10 17/17 24/18 24/24 25/3 27/4 29/14
**usdoj.gov [1]** 2/5
**useful [2]** 14/7 31/24
**user [2]** 15/21 25/22
**user data [1]** 25/22
**user-side [1]** 15/21
**using [1]** 8/12

**V**

**vacations [1]** 29/24
**vague [1]** 15/10
**variation [1]** 8/16
**variations [1]** 8/18
**variety [1]** 15/23
**various [7]** 15/3 22/9 23/4 25/7 27/22 28/11 28/12
**verse [1]** 4/6
**very [17]** 9/15 11/13 12/1 15/10 15/10 15/23 15/23 16/1 16/20 17/23 18/20 26/3 26/3 26/25 27/9 31/5 32/1
**veto [1]** 22/15
**VIA [1]** 1/9
**video [1]** 4/8
**view [1]** 20/24
**views [1]** 12/8
**VII.A.7.i [1]** 18/18
**vs [1]** 1/5

**W**

**want [17]** 4/25 12/6 13/6 21/13 22/15 23/18 24/18 25/1 25/5 26/6 26/8 27/11 27/18 28/21 29/19 30/25 31/15
**wanted [2]** 4/14 11/14
**wants [2]** 4/22 11/10
**was [10]** 7/9 11/6 15/8 15/9 16/9 17/14 17/19 23/3 25/19 31/10
**Washington [4]** 1/5 2/3 3/4 3/9
**wasn't [2]** 13/22 14/15
**way [5]** 5/20 5/25 14/6 19/19 30/2
**wc.com [1]** 3/5
**we [72]**
**we believe [4]** 8/9 8/17 16/15 18/15
**we will [6]** 7/7 24/8 27/10 29/3 30/6 31/1
**we'll [5]** 13/4 23/15 24/9 29/13 32/2
**we're [8]** 4/5 7/4 10/1 11/3 17/7 20/13 24/19 31/23
**we've [5]** 12/25 21/12 23/3 30/5 30/15
**week [8]** 29/1 29/6 29/9 29/17 29/23 30/11 30/15 30/15
**weekend [1]** 30/4
**well [15]** 4/11 6/3 6/16 9/2 14/9 19/13 20/20 23/23 26/3 26/8 26/16 27/2 27/6 28/3 30/21
**well-articulated [1]** 6/3
**well-defined [1]** 26/3
**were [14]** 7/15 7/17 7/19 8/14 16/3 16/10 17/15 17/17 19/19 19/20 23/12 25/12 30/12 31/8
**what [54]**
**what's [2]** 6/6 19/25
**whatever [2]** 30/19 30/25
**when [3]** 14/24 15/6 25/8
**where [7]** 5/2 8/17 9/7 13/13 18/1 21/13 24/18
**whereby [2]** 8/6 8/11
**whether [15]** 4/25 5/23 5/24 6/2 10/8 10/10 10/18 14/14 20/12 22/15 26/8 26/13 28/18 29/17

**W**

**whether... [1]** 31/2
**which [9]** 5/25 6/24 9/12 11/14 14/18 14/18 14/19 18/11 26/19
**While [1]** 7/6
**who [4]** 15/13 16/11 17/22 30/10
**who's [1]** 22/5
**why [6]** 23/3 24/18 24/21 29/8 29/10 30/22
**will [23]** 7/7 8/22 9/11 9/16 11/14 14/1 16/25 18/8 18/9 19/14 22/9 24/8 27/10 27/12 28/3 28/14 28/15 29/3 29/10 29/12 30/6 31/1 31/21
**William [3]** 3/6 33/2 33/8
**WILLIAMS [1]** 3/3
**withheld [1]** 21/1
**within [2]** 11/23 26/1
**without [5]** 9/4 10/16 22/20 22/24 26/11
**won't [3]** 24/24 24/24 26/13
**wondering [1]** 16/11
**words [4]** 8/24 10/11 22/4 30/3
**work [17]** 5/17 9/20 10/25 12/12 12/25 15/25 16/6 17/10 18/10 18/10 22/6 23/19 24/8 24/9 25/7 25/25 31/9
**workable [1]** 18/13
**worked [2]** 7/5 13/25
**working [8]** 5/5 11/19 15/14 16/13 22/5 22/9 23/17 26/15
**worthy [1]** 22/16
**would [39]**
**wouldn't [3]** 15/8 19/21 25/19
**writing [1]** 24/19
**written [1]** 5/21

**Y**

**Yeah [3]** 10/3 24/14 30/14
**year [2]** 7/1 9/8
**yes [4]** 12/10 14/23 30/14 31/12
**yet [1]** 7/7
**you [67]**
**you know [20]** 5/10 5/21 13/8 13/14 13/18 14/24 15/4 15/6 15/21 15/23 16/2 17/8 21/20 21/25 22/11 22/17 25/8 28/1 29/12 31/5
**you're [2]** 14/22 17/4
**you've [3]** 13/5 13/5 14/17
**your [33]** 4/5 6/9 6/11 6/16 6/20 8/9 9/6 10/21 11/13 11/16 12/3 12/10 12/21 15/6 15/16 16/19 18/4 18/6 18/15 20/1 20/17 23/7 23/8 24/7 24/13 25/15 26/5 26/7 27/10 27/12 29/2 29/22 32/2
**Your Honor [24]** 6/9 6/20 8/9 9/6 10/21 11/16 12/3 12/10 12/21 15/6 15/16 18/6 18/15 20/1 20/17 23/8 24/7 25/15 26/5 26/7 27/10 27/12 29/2 29/22

**Z**

**Zaremba [3]** 3/6 33/2 33/8
**ZOOM [1]** 1/9