# Exhibit Q

LAW OFFICES
WILLIAMS & CONNOLLY LLP®

CHRISTOPHER A. YEAGER
(202) 434-5621
cyeager@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 13, 2026

HIGHLY CONFIDENTIAL

Via Electronic Mail

Karl E. Herrmann
Grant M. Fergusson
U.S. Department of Justice
Antitrust Division
Liberty Square Building
450 5th Street, N.W.
Washington, DC 20530

Re: *United States et al. v. Google LLC*, 1:20-cv-03010-APM (D.D.C.)

Dear Karl and Grant:

I write in response to your letters of August 7 and 12 related to the Protected Information Access and Security Plan and the draft Source Code Agreement.

At the outset, I'd like to clarify the negotiation history of the Source Code Agreement. On April 14, Google sent Plaintiffs a draft of the Source Code Agreement, which, among other things, proposed procedures for the Technical Committee's "Access to Google Highly Sensitive Information" (Section 3). It was not until June 30 that we received Plaintiffs' substantive response to those procedures. Plaintiffs' response did not edit Google's proposal but, instead, rewrote it entirely. In response, Google suggested RIDGE as an off-the-shelf solution to facilitate prompt access to Google algorithms and consumer data at the level Google thought the TC was looking for. RIDGE is a secure virtual environment that Google makes available to its own outside experts and has used in connection with its work to comply with Article 6(11) of the Digital Markets Act. To facilitate the Technical Committee's evaluation of RIDGE, we also passed along background documents, and scheduled the call between Yi Liao and the Technical Committee at the first timeslot that the Technical Committee was available.

Last Friday, Plaintiffs sent Google a letter informing Google that RIDGE was "not . . . sufficient for the duties the Court has ordered the Technical Committee (TC) to perform" and proposing an additional call "between the TC and senior engineering experts at Google" to address "engineering-environment access—source, code search and navigation, build/test,

simulation frameworks, and corresponding levels of computational resources, along with the access to sensitive data that is needed to evaluate privacy risks." The letter stated that the Technical Committee was seeking "an environment that reflects the working environment of a senior Google engineer, appropriately scoped and instrumented for oversight" (p. 2), but separately indicated that the Technical Committee may also require "enhanced access to system data beyond the access typically granted to an engineer" (id.).

Plaintiffs have now asked that this discussion occur today or tomorrow. Google remains committed to facilitating appropriate access, but Plaintiffs' recent letters have muddied Google's understanding of what specific Google IP and data sources the TC needs in order to perform its functions and duties. Google cannot identify the right engineers, much less make them available, until it knows what Google IP and data the TC is seeking to access. For this reason, we propose in-house and outside counsel for Google meet with DOJ and the TC to better understand what data, what code, and what systems the TC believes it needs access to (and why) to perform its functions and duties. We have additionally asked an engineering vice president in Google's Core (infrastructure) organization to join so that we can ensure that the discussion can occur at an appropriate level of technical specificity. She is available tomorrow (Friday, Aug. 14) to join a call at 10:00-11:00 am EDT or 12:00-1:00 pm EDT. Once we have had that meeting, we will be better positioned to inform Plaintiffs and the Technical Committee whether Google has any objections and, if not, how we can facilitate technical access.

Lastly, we wish to clarify one additional point: Plaintiffs assert that Google is using the negotiations over the Source Code Agreement to "delay" implementation of the Protected Information Access and Security Plan. That is simply not so. The Source Code Agreement and the Protected Information Access and Security Plan are related documents. Indeed, the Protected Information Access and Security Plan repeatedly refers to the Source Code Agreement, noting, for instance, that "[r]equirements in this Plan derive from the . . . Source Code Agreement," among other sources. (See Part 1, Subsection D.) Moreover, the Protected Information Access and Security Plan governs how the Technical Committee will protect Google's IP and consumers' data once it has that access. Google has made Stephanie Tan available to explain why Google believes the plan fails to meet basic information security standards. Without adequate information security, or a basic understanding of what Google and/or third-party environments the TC envisions working in, it is impossible for Google to consent to the plans presented. Issues thus remain with respect to both the Source Code Agreement and the Protected Information Access and Security Plan. Thus, while we share the desire to finalize both documents as expeditiously as is responsibly possible, we do not think it is a viable solution to implement the Protected Information Access and Security Plan while the scope of the Source Code Agreement remains uncertain, and neither is ready for finalization.

Please confirm your availability for a call tomorrow at one of the two times offered.

Sincerely,

*/s/ Christopher A. Yeager*
Christopher A. Yeager