# EXHIBIT A

**GOOGLE SOURCE CODE, ALGORITHM, AND OTHER SENSITIVE INFORMATION ACCESS AGREEMENT**

This Agreement Regarding Google Source Code, Algorithm, and Other Sensitive Information Access ("Google Source Code, Algorithm, and Other Sensitive Information Access Agreement") is entered into this ___ day of ____, 2026 by and between [NAME] ("**Signatory**") and Google LLC ("**Google**") (collectively, the "**Parties**"). The effective date of this Agreement shall be the date on which Signatory executes this Agreement (the "**Effective Date**").

RECITALS

A. WHEREAS, the United States District Court for the District of Columbia (the "**Court**"), Judge Amit P. Mehta, has entered a Final Judgment (ECF No. 1462, "**Final Judgment**") in *United States of America et al. v. Google LLC* (Civil Action No. 20-3010 (APM)) and *State of Colorado et al. v. Google LLC* (Civil Action No. 20-3715 (APM)) (collectively, "**Underlying Consolidated Cases**"), which, among other things, requires Defendant Google LLC ("**Google**") to take or refrain from taking certain actions and further provides for the appointment of five members of a Technical Committee ("**TC**") to assist in the enforcement of and compliance with the Final Judgment;

B. WHEREAS, Section VII.A.6.d of the Final Judgment provides that "[t]he TC shall have access to Google's source code and algorithms, subject to a confidentiality agreement" agreed to by the TC members pursuant to Section VII.A.8 of the Final Judgment;

C. WHEREAS, Section VII.A.6.d of the Final Judgment contemplates that "any staff or consultants who may have access to the source code and algorithms" ("**TC Staff**") must also agree to the Google Source Code, Algorithm, and Other Sensitive Information Access Agreement pursuant to Section VII.A.8 of the Final Judgment;

D. WHEREAS, Signatory has signed and agrees to abide by the terms of a separate Technical Committee Member and Staff Confidentiality Agreement pursuant to Section VII.A.8 of the Final Judgment;

E. WHEREAS, this Google Source Code, Algorithm, and Other Sensitive Information Access Agreement provides additional protections and restrictions for Google Highly Sensitive Information in addition to that which is already provided by the Technical Committee Member and Staff Confidentiality Agreement, and nothing in this Google Source Code, Algorithm, and Other Sensitive Information Access Agreement is intended to provide broader access than what would be permitted under the Final Judgment and the Technical Committee Member and Staff Confidentiality Agreement;

F. WHEREAS, the Parties intend for this Google Source Code, Algorithm, and Other Sensitive Information Access Agreement to restrict access to Google Highly Sensitive Information in a manner consistent with the forms and procedures to access such information by such Google employees who are authorized to access such information; and

G. WHEREAS, the Parties to this Agreement intend to be legally bound.

NOW, THEREFORE, in consideration of the mutual promises contained herein and pursuant to the Court's Final Judgment, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. **Definitions**: As used in this Agreement, the following terms shall have the following meanings:

"Algorithm" shall mean any specified mathematical process for computation or set of rules that, if followed, will give a prescribed result, including any data or models used as part of the execution of that process or those rules.

"Authorized Persons" means TC members and any staff or consultants retained under Section VII.A.7.i of the Final Judgment, in each case who have executed this Agreement. Such Authorized Persons must be based in the United States, must be United States citizens or permanent residents of the United States, and must have received adequate identity verification commensurate with Google's Basic Identity Verification Procedures. In the event that a TC Member or TC Staff is rejected by or fails the Basic Identity Verification Procedures, Google will fully cooperate with a TC investigation into why the candidate was rejected, including requesting information from any outside vendors used as part of the Basic Identity Verification Procedures. A candidate previously rejected is not barred from applying again, and that prior rejection may not serve as a basis for future rejections. "Google's Basic Identity Verification Procedures" are Google's ordinary course procedures as described by Google to Plaintiffs as of September 15, 2026. Google agrees not to change its Basic Identity Verification Procedures used for TC Members or TC Staff without prior approval by the Plaintiffs and the TC. Plaintiffs and the TC shall respond to any Google request to change its Basic Identity Verification Procedures within 2 business days.

"Competitor" shall be defined as in the Final Judgment.

"Inspection" shall mean the procedure contemplated by this Agreement pursuant to which Signatory accesses Google Highly Sensitive Information.

"Google Highly Sensitive Information" ("**GHSI**") shall include the materials and information that were not previously produced to Plaintiffs in the Underlying Consolidated Cases ("**Plaintiffs**") and that are designated as GHSI by Google pursuant to Section 2 of this Agreement. For the avoidance of doubt, all Google Highly Sensitive Information shall be treated as Protected Information within the meaning of the Technical Committee Member and Staff Confidentiality Agreement (attached hereto as Exhibit __), except that where this Agreement provides additional restrictions or protections not present in the Technical Committee Member and Staff Confidentiality Agreement, the restrictions or provisions of this Agreement shall control. For the avoidance of doubt, GHSI shall include any TC Work Product derived from or that otherwise reveals GHSI.

2. <u>Designation of Google Highly Sensitive Information.</u> The following procedures shall govern the designation of GHSI.

2.1 Designation by Google. Before or at the time that Google produces or provides access to materials or information to TC, TC Staff, Signatory, or anyone else, Google may designate materials or information as GHSI. Google shall designate material as GHSI in good faith and only where the material warrants protection beyond Highly Confidential treatment under the Protective Order.

2.2 Effect of Designation. In the event that Google designates any materials or information as GHSI pursuant to this Agreement (including pursuant to Section 2.1 or in response to an inquiry made under Section 5), Signatory shall handle such GHSI in a manner consistent with the terms of this Agreement and shall exercise reasonable best efforts to ensure others do as well, until such time as Google withdraws such designation or the Court issues an order to the contrary.

2.3 Inadvertent Failure To Designate By Google. In the event that Google concludes in good faith that materials or information already made available to TC, TC Staff, or Signatory should have been designated as GHSI but were not so designated, Google shall promptly inform Signatory and the TC. Signatory shall then handle such materials and information in a manner consistent with the terms of this Agreement and shall exercise reasonable best efforts to ensure others do as well, until such time as Google withdraws such designation or the Court issues an order to the contrary. In the event that Signatory has already disclosed such materials or information to a person whom Signatory does not know to have signed this Google Source Code, Algorithm, and Other Sensitive Information Access Agreement, Signatory shall take all steps reasonably necessary in securing the retrieval or destruction of such materials or information or in securing the execution of this Google Source Code, Algorithm, and Other Sensitive Information Access Agreement by such person(s).

2.4 Challenge To Designation. In the event that Signatory believes Google has improperly designated materials or information as GHSI, Signatory shall raise such concerns with Google. In the event that Signatory and Google cannot resolve the disagreement, the TC may notify Plaintiffs of the dispute and the need for Court resolution. Pending judicial resolution of the dispute, Signatory shall employ reasonable best efforts to treat such material or information in accordance with the procedures and obligations contemplated in this Google Source Code, Algorithm, and Other Sensitive Information Access Agreement, including Sections 3 and 4.

3. Access To Google Highly Sensitive Information. The following procedures shall govern access to GHSI. Nothing in this Section 3 limits, conditions, or otherwise modifies the rights and powers granted to the TC under Section VII of the Final Judgment, including Sections VII.A.7.c–d; in the event of any conflict, the Final Judgment controls.

3.1. Covered Material; Prompt Availability. GHSI includes: (a) source code and Algorithms relating to any product, system, or conduct covered by the Final Judgment; (b) advertising auction data, including Search Text Ad (as defined in the Final Judgment) auction mechanics and design documentation, bidding, pricing, and reserve data, auction logs, and related configuration and experiment data; (c) user data, including User-side Data (as defined in the Final Judgment) and the data used to build, train, or operate the GLUE and RankEmbed model(s); (d) associated documentation, configuration files, build and test environments, and

internal analyses. Google shall make reasonable best efforts to accommodate requests for material necessary to discharge Signatory's responsibilities under the Final Judgment. Material in categories (a)–(d) shall be made available within three (3) business days of the request (or, in the case of material requested prior to the Effective Date, within three business days of the Effective Date), provided that, if Google concludes that it is impracticable to make such material available in those timeframes, Google shall so inform the Technical Committee within three (3) business days and shall provide a brief explanation as to the reason and Google's best estimate as to whether and when such material shall be made available.

3.2. Primary Form of Access: Google Corporate Engineering Environment. Google shall make GHSI available through Google-managed Chromebook computers that are issued to Authorized Persons in the manner necessary to permit Signatory to discharge his or her responsibilities under the Final Judgment (the "**Inspection Environment**"). The Inspection Environment shall be accessible to Authorized Persons on a continuous basis (24 hours per day, 7 days per week, subject to reasonable scheduled maintenance).

3.3. Analytical Capability. Subject to the provisions of Section 3.7, the Inspection Environment shall provide Authorized Persons with full access to the software, tools, and computing resources necessary to discharge such Authorized Person's responsibilities under the Final Judgment, including at a minimum: (a) standard analytical software, including Python and R, with commonly used statistical and machine-learning packages, SQL query tools, and code search and navigation tools; (b) the ability to execute code and run queries against relevant datasets; (c) computing and storage resources scaled to the analytical task and necessary to discharge all applicable responsibilities under the Final Judgment; and (d) other Google-provided tools, software, ancillary data, and computational resources as are reasonably necessary to support the analytic work of the TC. Signatory may request additional or different analytical capabilities. Such capabilities shall be made available within three (3) business days of the request, provided that, if Google concludes that it is impracticable to make such capabilities available in those timeframes, that Google shall so inform Signatory and the TC within three (3) business days and shall provide a brief explanation as to the reason and Google's best estimate as to whether and when such material shall be made available.

3.4. Physical Inspection as Supplement. At the TC's election, Google shall additionally make GHSI available for in-person inspection at a Google office or facility, an office of Google's outside counsel, or another mutually agreed location, on a secured, disk-encrypted, password-protected computer, during normal business hours or other mutually agreeable times. Physical inspection is a supplement to, and not a substitute for or precondition of, access under Sections 3.2 and 3.3 of this Agreement.

3.5 Work Product and Reporting. The following provisions govern the procedures with respect to work product, reporting, and the removal of material from the Inspection Environment.

3.5.1 Work Product Within The Inspection Environment. Within the Inspection Environment, Authorized Persons may take notes and create, retain, and exchange among themselves such analyses, summaries, excerpts, and other derived work product ("TC Work

Product") as are reasonably necessary to perform the TC's duties, including its reporting and notification obligations under Sections VII.A.7.f–g of the Final Judgment.

3.5.2. Removal of Work Product. Signatory may make reasonable requests to Google for permission to remove material (including TC Work Product or GHSI) from the Inspection Environment and to convey it to the TC's environment, including for purposes of sharing with the Court and/or any person employed by Plaintiffs who are allowed to receive such information under the Protective Order and any supplemental Protective Order, including any order issued after the Effective Date. In such circumstances, Signatory shall direct its request to the Clean Team described in Section 3.5.4. No person shall remove material (including TC Work Product or GHSI) from the Inspection Environment without first receiving approval as described in Section 3.5.4.

3.5.3. The Clean Team. As promptly as reasonably possible following the execution of this Agreement, Google shall assemble a "Clean Team" of personnel responsible for evaluating requests made under this subsection. No member of the Clean Team shall have been a witness or a document custodian in this litigation, nor shall any member of the Clean Team have any responsibility for or other involvement in implementing the remedies required under the Final Judgment. Members of the Technical Committee may also propose additional qualifications or restrictions on members of the clean team, which Google shall consider in good faith.

3.5.4. Clean Team Consideration Of Requests. Upon receipt of a request to remove material (including TC Work Product or GHSI) from the Inspection Environment, the Clean Team shall respond within two (2) business days. The Clean Team shall provide to Signatory and the TC a clear statement as to whether Google approves the requested removal or whether it objects and for what basis. The Clean Team shall not withhold its approval to a request made under subsection 3.5.2 except on the basis of a good-faith belief that such request poses an unreasonable risk to the privacy of users, to Google's security, or to Google's intellectual property rights. If the Clean Team concludes that it is impracticable to provide approval or objections within two (2) business days, the Clean Team shall so inform the Technical Committee within that timeframe and shall provide its best estimate for the timing of its response. For avoidance of doubt, such a response does not constitute approval of a request to remove material (including TC Work Product or GHSI). In the event that the Technical Committee reasonably requires prompter clearance from the Clean Team (e.g., to respond to a request from the Court), the Technical Committee shall advise the Clean Team, and the Clean Team will use its best efforts to respond within the time period reasonably directed by the Technical Committee. In the event that neither the Clean Team nor Google provides a response to Signatory either approving of, objecting to, or seeking additional time to respond to a request to remove material (including TC Work Product or GHSI) within two (2) business days, then such a failure to timely respond constitutes approval of Signatory's request.

3.6. Identification of Authorized Persons. The TC shall identify Authorized Persons, and the attendees of any physical inspection, to Google reasonably in advance of any such inspection. Such identification is for notice and logistics only and confers no approval right on Google; Google may object only on the ground that a person does not satisfy Section VII.A.2 of the Final Judgment. For clarity, Google may raise such an objection with the Court if the parties

are unable to resolve such an objection. For further clarity, nothing in this subsection 3.6 exempts Signatory or any Authorized Person from Section 4 of this agreement.

3.7. Security Measures. Google may implement reasonable security measures with respect to the Inspection Environment—including authentication, access logging, device requirements, and prohibitions on copying GHSI out of the environment except as permitted by Section 3.5 of this Agreement—provided such measures do not unreasonably impair or delay the TC's ability to perform its functions and are applied consistently. These reasonable security measures may include a requirement to sign the following agreements: Google's standard export-control Compliance Questionnaire. No agreements beyond these will be a precondition to accessing the Inspection Environment. Google shall not monitor or review the substance, direction, or methodology of the TC's analyses, except automated security-event logging and monitoring information and tools maintained for security purposes only. Google shall deliver a monthly summary of all actual log reviews and the complete reports so generated. Google may redact parameters that compromise its security policies. In the event of an inappropriate access, Google shall disclose such access, including what was accessed, the identity of the individual who gained access, and what steps were taken to remediate such access within five (5) business days of becoming aware of such access. When Signatory or any Authorized Person identifies non-Google software, tools, data, or other material requiring incorporation into the Inspection Environment, Signatory shall seek a consultation with Google. Neither Signatory nor any Authorized Person shall incorporate any non-Google software, tools, data, or other material into the Inspection Environment without Google's prior written consent. For the avoidance of doubt, general use of the Inspection Environment, including typing commands and writing code does not constitute incorporating non-Google software, tools, data or other material into the Inspection Environment. Google shall bear sole responsibility for all security controls of the Inspection Environment.

3.8. Quarterly Attestation of Security Measures. Google shall deliver a quarterly attestation by the Google CISO regarding the Security Measures described in Section 3.7. In particular, the CISO shall provide an attestation that management has reviewed and approved the personnel with authority to review the automated security-event logging and monitoring information and tools maintained for security purposes. The CISO shall provide an attestation that the monthly summaries of all actual log reviews and complete reports so generated provided during the relevant quarter were accurate and complete. The CISO shall provide an attestation that every event of an inappropriate access for which Google has become aware during the relevant quarter has been disclosed accurately and completely.

3.9. No Unilateral Discretion; Disputes. Neither the form of access nor the conditions of access in this Agreement shall be subject to Google's sole discretion. Any objection by Google under this Section 3 shall be raised promptly with the Plaintiffs and, if unresolved, may be submitted to the Court. Pending resolution, Google shall maintain the TC's then-existing access and shall not suspend or condition it by reason of the dispute.

3.10. Modifications Consistent with the Final Judgment. The TC may request to modify the procedures set forth in Section 3 if it believes such modifications are necessary to fulfill its obligations under the Final Judgment. Google shall consider such requests in good faith. Google and the TC, subject to approval by Plaintiffs, may agree to modify this Agreement.

4. Disclosure Of Google Highly Sensitive Information: The following procedures shall govern any disclosure of any Google Highly Sensitive Information by Signatory:

4.1. Disclosure Generally Prohibited. Except as set forth in this Agreement, Signatory shall not disclose any Google Highly Sensitive Information to any person.

4.2. Disclosure To Court Permitted. Signatory may disclose Google Highly Sensitive Information to the Court and its personnel, provided that such Google Highly Sensitive Information is disclosed to the Court only under seal. Notwithstanding the foregoing, it shall not be a violation of this Agreement to disclose Google Highly Sensitive Information to the Court not under seal if the Court has expressly directed that such information must be submitted to the Court not under seal.

4.3. Disclosure Pursuant To Court Order Permitted. Signatory may disclose Google Highly Sensitive Information if ordered to do so by the Court.

4.4. Disclosure To Google Permitted with Authorization. Signatory may disclose Google Highly Sensitive Information to any employee or attorney of Google with authorization by the Google Point of Contact.

4.5. Limited Disclosure To Plaintiffs Permitted. Signatory may disclose Google Highly Sensitive Information to any person employed by Plaintiffs who are allowed to receive such information under the Protective Order and any supplemental Protective Order, including any order issued after the Effective Date.

4.6. Disclosure As Part Of An Inspection. Signatory may disclose Google Highly Sensitive Information during the course of an Inspection to any Authorized Person who is participating in the inspection at the same time.

4.7. Additional Disclosure Permitted Upon Google's Written Consent. Notwithstanding anything else in this Agreement, Signatory may disclose Google Highly Sensitive Information to the extent authorized in writing by Google and permitted by law.

5. Google Point Of Contact. Should Signatory have questions or concerns about the scope of his/her rights, obligations, or commitments pursuant to this Agreement, (s)he may contact DOJSearchNotice-external@google.com and Google's outside counsel by writing to Colette Connor (cconnor@wc.com), Tom Ryan (tryan@wc.com), and Chris Yeager (cyeager@wc.com) or such other counsel as Google may subsequently designate. Notwithstanding the provisions of Section 9.2 of this Agreement, for purposes of informal consultations with Google regarding the scope of Signatory's rights, obligations, or commitments pursuant to this Agreement, there is no need to transmit notice via mail. Google and Plaintiffs shall also agree on an appropriate and primary point of contact, made available to Signatory, pursuant to the Court's instructions at the September 18, 2026, Status Hearing.

6. Disposition of Data Upon Termination. The following provisions shall govern the disposition of Google Highly Sensitive Information by Signatory. Within ten days of the soonest

of (a) expiration of the Final Judgment pursuant to Section VIII of the Final Judgment, or (b) conclusion of Signatory's role as a member of the TC or as a person assisting the TC, Signatory, any person listed in Section 4.5, and any other person participating in an inspection pursuant to Section 4.6 shall return all Google Highly Sensitive Information in their possession to Google or, at Google's election, shall destroy such information in a manner consistent with Google's reasonable instructions. For clarity, the Parties to this Agreement agree to incorporate by reference the Final Judgment in its entirety, including any amendments, modifications, or other alterations thereof imposed by the Court, which shall be deemed to be automatically incorporated by reference upon going into effect.

7. Notification of Breach. In the event that Signatory learns of a breach of any obligation set forth in this agreement, he/she shall immediately notify Google.

8. Other Legal Process. If Signatory is requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any Google Highly Sensitive Information, Signatory shall provide Google with prompt written notice (and, in any event, no fewer than ten (10) calendar days' notice) of any such request or requirement prior to any such disclosure so that Google may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.

9. Additional General Provisions.

9.1. Assignment. This Agreement does not create any agency or partnership relationship. Signatory may not assign his/her rights or obligations under this Agreement to any person or entity without the prior written consent of Google. Subject to the foregoing, this Agreement shall be binding on the respective successors and assigns of the parties hereto.

9.2. Notice. Any notices or other communications required to be given hereunder shall be deemed to have been properly given if sent by mail and email to the applicable party at its addresses below (or to such other address as to which such party shall hereafter notify the other party):

*If to Signatory, to:*

[FILL IN]

*If to the Technical Committee, to:*

[FILL IN]

*If to Google, to*:

Legal Department
Google LLC
1600 Amphitheatre Parkway

Mountain View, CA 94043
Attn: DOJ Search Matter Legal Notices
DOJSearchNotice-external@google.com

With a copy (which shall not constitute notice) to:

Colette Connor
Tom Ryan
Chris Yeager
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, DC 20024

For clarity, nothing in this Section 9.2 permits the disclosure of Google Highly Sensitive Information to any person who is not otherwise eligible to receive such information under this Agreement.

9.3. Waiver. The failure of either party to require performance by the other party of any provision hereof shall not affect the full right to require such performance at any time thereafter, nor shall the waiver by either party of a breach of any provision hereof be taken or held to be a waiver of the provision itself.

9.4. Governing Law and Forum. This Agreement is governed in all respects by the federal common law of the United States of America or, to the extent that the Court deems it necessary to resort to the laws of another jurisdiction, the law of the District of Columbia. All disputes arising under this Agreement shall be brought in the Court, as defined in Recital A, which shall have exclusive jurisdiction over disputes under this Agreement. As to all such disputes, the Parties consent to the personal jurisdiction of such court.

9.5. Severability. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be deemed modified to the extent necessary to make it enforceable under applicable law. If any such provision is not enforceable as set forth in the preceding sentence, the unenforceability of such provision shall not affect the other provisions of this Agreement, but this Agreement shall be construed as if such unenforceable provision had never been contained herein. If any provisions are deemed unenforceable, then any party to this agreement may object to the surviving agreement. If any party elects in such a scenario, the parties shall promptly work towards creating a new agreement consistent with the Final Judgment and applicable law. For clarity, the remaining provisions of the agreement shall remain in force during the pendency of any such work.

9.6. Survival. This Agreement shall survive the termination or expiration of the Technical Committee Services Agreement.

9.7. Construction and Headings. This Agreement reflects the wording accepted by the parties and no rule of construction shall apply against either party. All indices, titles, subject headings, section titles, and similar items contained in this Agreement are provided for the purpose of reference and convenience only and are not intended to be inclusive, definitive, or to affect the meaning, content or scope of this Agreement.

9.8 Counterparts. This Agreement may be executed in any number of counterparts, and each executed counterpart shall have the same force and effect as an original instrument.

9.9 Entire Agreement. This Agreement constitutes the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes any and all other prior or contemporaneous agreements—with the exception of the Technical Committee Services Agreement, the Technical Committee Member and Staff Confidentiality Agreement, and the Indemnification Agreement—whether written or oral, between the parties with respect to the subject matter herein. This Agreement shall not be modified except by a subsequently dated written amendment signed by the parties.

10. Computation of Time. When computing any time period specified in this Agreement: (a) exclude the day of the event that triggers the period; (b) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; provided, however, that in the event of a conflict in deadlines between this Agreement and the Final Judgment, the deadline in the Final Judgment controls.

| GOOGLE LLC | SIGNATORY |
| --- | --- |
| By ____________________________ | By ____________________________ |
| [SIGNATORY] | [SIGNATORY] |
| ____________________________ | ____________________________ |
| Name (Print) | Name (Print) |
| ____________________________ | |
| Title | |