# Exhibit 12

[redacted]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, *et al.*,<br>Plaintiffs,<br>v.<br>Google LLC,<br>Defendant. | Case No. 1:20-cv-03010-APM<br>HON. AMIT P. MEHTA |
| State of Colorado, *et al.*,<br>Plaintiffs,<br>v.<br>Google LLC,<br>Defendant. | Case No. 1:20-cv-03715-APM<br>HON. AMIT P. MEHTA |

**DECLARATION OF YAEL MAGUIRE**

I, Yael Maguire, declare as follows:

1. I am currently employed by Google LLC (Google) as a Vice President and General Manager of Google Maps Platform and Google Earth. I have worked for Google since 2022. I submit this declaration in support of Google's objections to Plaintiffs' proposed template syndication license agreement. The facts set forth herein are within my personal knowledge and if called as a witness, I could and would competently testify to them.

2. As the General Manager of the team that is responsible for Google Maps Platform, my responsibilities include overseeing the geospatial developer products offered

through Google Maps Platform. I am familiar with Google's existing Google Maps Platform products, including the terms that govern their use.

3. I have reviewed the Court's Final Judgment ("FJ") issued on December 5, 2025, and, in particular, Section V.A.3 requiring the syndication of "Local, Maps, Video, Images, and Knowledge Panel Search features content that Google provides under any of its current search syndication agreements[.]"

4. I have also reviewed the Plaintiffs' proposed template syndication license agreement. On September 25, 2026, I met with the TC and Plaintiffs to discuss the proposed template.

**Overview of Google Maps Platform Products**

5. I understand that the Court's Final Judgment requires Google to syndicate "the Local, Maps . . . content that Google provides under any of its current search syndication agreements as of the date of entry of this Final Judgment." FJ § V.A.3.

6. Google Maps Platform offers map-related products to third-party developers to use in their customer applications.

7. The Google Maps Platform products are not part of Google's search syndication services, and never have been a part of those services. Rather, the Google Maps Platform products are completely separate, run by an entirely separate team outside of Search, and intended for very different use cases—the implementation of geospatial services in customer applications. Google Maps Platform products are built using different technical infrastructure than Google's web search syndication service ("WSS"), use different billing systems, and have different technical support infrastructure. The Google Maps Platform team has no involvement

in Google's WSS services, and likewise, the WSS team has no involvement in the Google Maps Platform products.

8. Places UI Kit Query, Places UI Kit Pro, Dynamic Maps, and Maps SDK are among the products offered by Google Maps Platform. Places UI Kit Query and Places UI Kit Pro allow developers to integrate Google Maps places functionality into web and mobile applications. This includes place search, place content (including photos and reviews), and action buttons including filtering. Dynamic Maps and Maps SDK provide interactive, customizable map components that users can pan, zoom, and rotate in real-time on web and mobile. Under Google's Proposed Template, the Places UI Kit Query, Places UI Kit Pro, Dynamic Maps, and Maps SDK could be combined by a Qualified Competitor to offer an experience similar to the local unit on Google.com.

9. The Google Maps Platform products are governed by a Google Maps agreement, which all prospective customers must sign or accept in order to use Google Maps Platform products. Google's standard offline agreement that governs Google Maps Platform, called the Cloud Master Agreement, requires prospective customers to sign General Terms (which contains terms that apply across all Google Cloud and Google Maps Platform products), a Services Schedule (which contains the terms specific to the Google Maps Platform products), and an Order Form (which contains the terms specific to Google Maps Platform pricing).

10. Plaintiffs' proposed template does not incorporate any of the agreements that govern the Google Maps Platform products. These contractual terms are integral to the Google Maps Platform product offering.

11. Making the relevant Google Maps Platform products (Places UI Kit Query, Places UI Kit Pro, Dynamic Maps, and Maps SDK) available to Qualified Competitors under Plaintiffs'

proposed template would require Google to expend significant resources to create product(s) that do not currently exist, and delay the implementation of these products for Qualified Competitors.

**Attribution Required by the Google Maps Platform Products**

12. Unlike Google's web search service, the Google Maps Platform products include third-party licensed data and Google Maps User-Generated Content (*e.g.*, reviews). For that reason, the Google Maps Platform products that provide Google Maps places and maps content require Google attribution.

13. My understanding is that Google attribution would be prohibited in the Plaintiffs' proposed template. [redacted].

14. [redacted].

15. User-Generated Content (UGC), meaning the reviews and photos provided by Google Maps users to Google, is provided by users to appear on and be used across Google services. Google Maps Platform requires Google attribution when a developer displays Google UGC. Without that attribution, the Google users who contribute content could be confused as to why the reviews and photos they submitted to Google are appearing on an unrelated third-party site. Additionally, Google's documentation requires that a developer who displays Google UGC include a link out to the source content within Google Maps, which in turn links to Google's "Report a Problem" procedure. This allows the end user viewer of the UGC to flag inappropriate

or illegal content, a necessary capability in Google's multi-layered approach to preventing harm and keeping the platform safe and helpful.

**Google Maps Platform Billing Infrastructure and Pricing Terms**

16. The Google Maps Platform products do not share the same billing infrastructure as WSS. When a customer uses a Google Maps Platform product, the usage event calls the Google Cloud billing service, which is a separate billing service and charges on a separate basis from web search.

17. The billing structure for Places UI Kit Query, Places UI Kit Pro, and Dynamic Maps is a tiered billing structure that starts with an initial set of queries at no cost. Beyond that initial set, there are five tiers of per-month query usage volumes with a graduated discount rate as volumes increase, which are as follows:

| (All prices are per 1000 billable events and in USD) | Free Usage Cap | Cap to 100,000/ month | 100,001- 500,000/ month | 500,000 - 1,000,000/ month | 1,000,000 - 5,000,000/ month | 5,000,000+ /month |
|---|---|---|---|---|---|---|
| Places UI Kit Pro | 5,000 | $5.00 | $4.00 | $3.00 | $1.50 | $0.38 |
| Places UI Kit Query | 10,000 | $1.00 | $0.80 | $0.60 | $0.30 | $0.08 |
| Dynamic Maps | 10,000 | $7.00 | $5.60 | $4.20 | $2.10 | $0.53 |
| Maps SDK | Unlimited | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

18. With the exception of preview and experimental phases and the Maps SDK—[redacted]—Google has never offered the commercial version of any of these products (Places UI Kit Query, Places UI Kit Pro, Dynamic Maps) [redacted], including most favored nation terms.

19. Google Maps Platform's "quote-to-order" and contract management systems—the infrastructure used to generate the contract, implement pricing, and store the contract—are all connected and managed by Google Cloud's billing infrastructure, and are all different from what is used by WSS. To combine these processes and systems would require time and the technical investment to build new billing infrastructure or integration capabilities, including a myriad of non-standard and manual steps, involving multiple disconnected teams. The significant technical development and administrative burden in merging these processes would necessarily delay the provision of services to the Qualified Competitors.

**Customer Support**

20. Support services for Google Maps Platform products are offered under the current contract structure. If a customer needs a quota increase, to file a bug report, or access reactive support, it is not clear how this would be enabled for the customer without an account and standard access to Cloud Console and Google Maps Platform Support.

**Grounding Terms**

21. Google Maps Platform offers a separate grounding product that is specifically for developers to use to ground LLM responses based on Google Maps content.

22. Grounding Lite and [redacted][1] are Google Maps Platform grounding products, purpose built to be used by customers with compliant third party LLMs.

23. As compared to the other Google Maps Platform products I have referenced, the Grounding products differ in the way they retrieve and provide developers with the ability to render place attributes like hours, ratings, and amenities. For instance, for structured place attributes (including hours, ratings, price ranges, and amenities), the Places UI Kit will render

---

[1] [redacted].

this information to the user in a UI interface. In contrast, Google Maps Platform Grounding Lite returns a pre-synthesized text summary, Place ID, and Google Maps links.

24. [redacted]

**Technical Constraints**

[redacted]

25. Places UI Kit Query, Places UI Kit Pro, Dynamic Maps, and Maps SDK do not allow developers to [redacted].

26. For Google Maps Platform products, [redacted], including to allow Google Maps to adhere to applicable local laws and regulations.

27. Places UI Kit Pro and Places UI Kit Query run directly on the end user's browser or mobile device such that a developer [redacted] Developers can only set explicit request parameters such as region code, language code, location restriction, or location bias (which allows developers to influence search predictions or details based on specific geographic boundaries). [redacted]. This change, however, would impact the quality of the products.

28. In addition, Google uses [redacted] for several key components of the products. [redacted]

[redacted]

*Latency Terms*

29. The Google Maps Platform Service Level Agreement, incorporated into the Services Schedule described above, provides technical requirements for the provision of Maps products to developers. It provides that Google will use reasonable commercial efforts to provide to Customer a "Monthly Uptime Percentage" of at least 99.9% for each Covered Service, meaning at least 99.9% of all covered requests in a given month return a valid response.[2]

30. Exhibit C Section 2.1(b) of Plaintiffs' Proposed Template requires that "Search Service Network Latency will not exceed an average of [redacted] milliseconds over any 10-hour period (excluding any Network Issues)" and Section 1.4 defines "Search Service Network Latency" as "the round-trip time of a TCP/IP ping packet between a peering address owned or operated by Signatory or its Affiliate(s) and Google's peering address." The Google Maps Platform Service Level Agreements do not currently offer any latency guarantees to developers. Google cannot control all aspects of network latency, which can depend on the location of Qualified Competitors' servers or even the end users' devices.

31. [redacted].

32. Plaintiffs' proposal includes additional requirements that have never been imposed for the Google Maps Platform products, such as imposing penalties if any Search

[2] *Google Maps Platform Service Level Agreement*, Google, https://cloud.google.com/maps-platform/terms/sla?hl=en (last visited Oct. 13, 2026).

Service Network Latency exceeds an average of [redacted] milliseconds over any 10-hour period. Plaintiffs' Proposed Template, Exhibit C §§ 2.1(b), 4.1, 4.3.

33. The relevant Google Maps Platform products currently handle significant volume from millions of applications and large enterprise customers globally within its existing latency and reliability standards. It is unclear what benefit there would be, if any, in forcing Google Maps Platform to create new systems from the ground up when the current processes consistently work at high volume for customer critical use cases.

34. Finally, Plaintiffs' proposal includes the following requirement: "Google shall not take any actions that have the effect of slowing Search Service Network Latency, including, without limitation, in circumstances where Search Service Network Latency is below the Search Service Network Latency Threshold, with the intent of approaching or reaching the Search Service Network Latency Threshold, even if doing so would decrease costs for Google." Plaintiffs' Proposed Template, Exhibit C § 2.1(b). I understand this to prohibit ordinary course load-shedding.

35. Load-shedding is an industry standard practice that is important to protect the integrity and continuity of service. [redacted]

36. For the reasons discussed above, if Google is compelled to apply the WSS terms to the Google Maps Platform products, Google would need to essentially construct a new service that it does not have today. Applying entirely different contractual terms would require significant changes to both the product and the internal processes that facilitate delivery of the

product (billing, accounting, etc.), creating significant potential delay and disruption for both Google Maps and any Qualified Competitors seeking to benefit from services under the Final Judgment.

* * * *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of October 2026, in San Francisco, California.

Yael Maguire